# EXHIBIT

# 1

| **LENDER** | **BORROWER** | |
| --- | --- | --- |
| The persons listed on | EQUITYBUILD, INC. | **COMMERCIAL FLAT** |
| **Exhibit A** to the Note | 1083 N COLLIER BLVD. #132 | **RATE PROMISSORY** |
| C/O EQUITYBUILD FINANCE, LLC | MARCO ISLAND, FL 34145 | **NOTE** |
| 5068 WEST PLANO PKWY #300 | | **With Balloon Payment** |
| PLANO, TX 75093 | | **Illinois** |

| Interest Rate | Principal | Funding Date | Maturity Date | Loan Number |
| --- | --- | --- | --- | --- |
| 15%<br>For 12 Months | $1,250,000 | 12/30/2015 | 01/01/2017 | N/A |

THIS LOAN IS PAYABLE IN FULL ON OR BEFORE THE "MATURITY DATE" LISTED HEREIN. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST, AND FEES AND COSTS, THEN DUE TO THE LENDER. **LENDER IS UNDER NO OBLIGATION TO REFINANCE, EXTEND OR MODIFY THE LOAN AT THAT TIME**. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER (WHICH MAY OR MAY NOT BE THE LENDER YOU HAVE THIS LOAN WITH), WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. FOR VALUE RECEIVED, the undersigned Borrower(s), Maker(s) and/or Guarantor(s) (hereinafter the "Borrower") promises to pay **The persons listed on Exhibit A** to this Note C/O EquityBuild Finance, LLC (hereinafter collectively referred to as the "Holder" or "Lender"), at **5068 West Plano Pkwy. #300 Plano, TX 75093**, the principal sum of **ONE MILLION TWO HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($1,250,000.00)**, together with interest from the above date at the interest rate of **FIFTEEN PERCENT (15.0%)** per annum on the unpaid principal balance until paid. The principal of this Note, plus accrued interest at the rate aforesaid, shall be due and payable in **TWELVE (12)** installments as follows:

a) ONE (1) interest payment in the amount of **SIXTEEN THOUSAND ONE HUNDRED FORTY-FIVE and 83/100 DOLLARS ($16,145.83)**, beginning on or before **DECEMBER 30, 2015**; and

b) TEN (10) equal and consecutive interest only payments in the amount of **FIFTEEN THOUSAND SIX HUNDRED TWENTY-FIVE and 00/100 DOLLARS ($15,625.00)**, beginning on or before **MARCH 01, 2016**; and continuing each and every month thereafter; and

c) One (1) final balloon payment on or before **JANUARY 01, 2017**, at which time the entire principal balance, together with accrued but unpaid interest thereon, and any costs and expenses, shall be due and payable.

Anything in this Note contrary notwithstanding, the entire unpaid balance of the principal sum and all unpaid interest accrued thereon shall, unless sooner paid, be and become due and payable on **JANUARY 01, 2017** ("Maturity Date").

1. **Application of Payments**. All payments on this Note shall be made in lawful money of the United States of America and shall be applied first to any late charges due hereunder, second to the payment of accrued but unpaid interest and the remainder to the reduction of principal. The Borrower shall make all payments when due,

without set-offs of any nature.

2. **Late Charge/Dishonored Check.** There shall be a grace period of five (5) days for any payment due under this Note. The Borrower shall pay a late charge of 5% of the monthly payment amount, or $50.00, whichever is greater, if such payment is received by Lender after the grace period. If the Maturity Date of the Note has expired the late fee will be at the rate of 1.5% per month plus the face amount of the Note.

In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $50.00 (but not more than the maximum amount allowed by law) for each such event.

3. **Security.** To secure the payment and performance of obligations incurred under this Note, this Note shall be secured by and subject to the terms of a Mortgage of even date herewith from the Borrower which encumbers real property and improvements located at

**5955 S SACRAMENTO AVE., CHICAGO, IL 60629**, and the maturity hereof is subject to acceleration as therein set forth. Both this Note and the Mortgage are given in consideration of a loan of even date herewith in the amount of the principal sum by the Lender to the Borrower.

In addition to the property described above, Borrower grants Lender a security interest in all of Borrower's right, title and interest in all monies and instruments of Borrower that are now or in the future in Lender's custody or control.

4. **Events of Default.** An Event of Default will occur under this Note in the event that Borrower any guarantor or any other third party pledging collateral to secure this Note:

> a. Fails to make any payment of principal and/or interest or any other sum due hereunder when the same is due pursuant to the terms of this Note;
> b. If Borrower, guarantor or such third party:
>> i. Applies for or consents to the appointment of a receiver, trustee or liquidator of Borrower, guarantor or such third party or of all or a substantial part of its assets;
>> ii. Files a voluntary petition in bankruptcy, whether by the Federal Bankruptcy Act or any similar State stature, or admits in writing its inability to pay its debts as they come due;
>> iii. Makes an assignment for the benefit of creditors;
>> iv. Files a petition or an answer seeking a reorganization or an arrangement with creditors or seeking to take advantage of any insolvency law;
>> v. Performs any other act of bankruptcy; or
>> vi. Files an answer admitting the material allegations of a petition filed against Borrower, guarantor or such third party in any bankruptcy, reorganization or insolvency proceeding; or

c. Permits the entry of any order, judgment or decree by any court of competent jurisdiction adjudicating Borrower, guarantor or such third party a bankrupt or an insolvent, or approving a receiver, trustee or liquidator of Borrower, guarantor or such third party or of all or a substantial part of its assets; or

d. There otherwise commences with respect to Borrower, guarantor or such third party or any of its assets any proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment, receivership or like law or statute, and if the order, judgment, decree or proceeding continues unstayed for any period of 60 consecutive days, or continues in effect for more than 10 days after any stay thereof.

e. Fails to perform or violates any obligations or covenants under the terms of this Note or any Mortgages or any additional loan documents or any other present or future written agreements regarding this Note or any other indebtedness or obligations between Borrower, guarantor or such third party and Lender;

f. Defaults under the terms of any note, mortgage, security instrument, or any other loan documents or written agreements for any other loans secured by the property representing the collateral for this Note;

g. Permits the entry of any judgment or lien, or the issuance of any execution, levy, attachment or

2

Borrower's Initials:

garnishment proceedings against Borrower, guarantor or such third party;

h.    Sells or otherwise conveys any property which constitutes security or collateral for the payment of this Note without the prior written consent of the Lender and/or the destruction, loss or damage to such collateral in any material respect and/or the seizure, condemnation or confiscation of the collateral;

i.    Provides or causes to be provided any false or misleading signature or representation to be provided to Lender;

j.    Has a garnishment, judgment, tax levy, attachment or lien entered or served against Borrower, any guarantor, or any third party pledging collateral to secure this Note or any of their property;

k.    Dies, becomes legally incompetent, is dissolved or terminated, or ceases to operate its business;

l.    Fails to provide Lender evidence of satisfactory financial condition;

m.    Has a majority of its outstanding voting securities sold, transferred or conveyed to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Note;

n.    Causes Lender to deem itself insecure due to a significant decline in the value of any real or personal property securing payment of this Note, or Lender, in good faith believes the prospect of payment or performance is impaired;

o.    Fails to keep an insurance policy in place on the subject property being used as collateral for this loan with Lender as the mortgagee and/or as the loss payee including its successor and/or assigns;

p.    Fails to keep property taxes current on property used as security for this Note.

5.    **Rights of Lender On Event of Default**. In the Event of Default as set forth herein, or in the event of the breach of any covenant or obligation contained in the herein referred to Mortgage or Loan Documents on the part of the undersigned to be kept, observed or performed, the Lender, at its sole and absolute discretion, may exercise one or more of the following remedies without notice or demand (except as required by law):

a.    Declare the entire unpaid balance of principal of this Note, along with accrued and unpaid interest thereon and all other charges, costs and expenses, provided for herein and in the Mortgage immediately due and payable. Such acceleration shall be automatic and immediate in the Event of Default is a filing under the Bankruptcy Code;

b.    Collect the outstanding obligations of Borrower with or without judicial process;

c.    Cease making advances under this Note or any other agreement between Borrower and Lender;

d.    Take possession of any collateral in any manner permitted by law;

e.    require Borrower to deliver and make available to Lender any collateral at a place reasonably convenient to Borrower and Lender;

f.    Sell, lease or otherwise dispose of any collateral and collect any deficiency balance with or without resorting to legal process;

g.    Assume any and all mortgages/deeds of trust in existence at the time of default on all collateral securing loans made to Borrower;

h.    Set-off Borrower's obligations against any amounts due to Borrower including, but not limited to, monies and instruments, maintained with Lender; and

i.    Exercise all other rights available to Lender under any other written agreement or applicable law.

At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the "Default Rate" set forth in this Note. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full. Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any accrued interest remaining past due for 30 days or more shall be added to and become part of the unpaid principal balance and shall bear interest at the rate or rates specified in this Note, and any reference herein to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Borrower shall make all payments of

principal and interest under this Note without relief from valuation and appraisement laws.

Lender's remedies in this Section are in addition to any available at common law and nothing in this Section shall impair any right which the Holder has under this Note, or at law or in equity, to accelerate the debt on the occurrence of any other Event of Default, whether or not relating to this Note. Lender's rights or remedies as provided in this Note shall be cumulative and concurrent and may be pursued singly, successively, or together against Borrower or any guarantor or third party (without first having to proceed against Borrower), at Lender's sole and absolute discretion. Borrower shall pay to Lender on Lender's demand the amount of all expenses incurred by Lender (a) in enforcing it's rights under this Note, or (b) as the result of a default by Borrower under this Note, including but not limited to the cost of collecting any amount owed hereunder, and any reasonable attorney's fees. The failure by Lender to exercise any of its options contained herein shall not constitute a waiver of the right to exercise such option in the event of any subsequent default.

6.    **Costs and Expenses.** To the extent permitted by law, Borrower agrees to pay any and all reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Note, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions. Said collection fees shall be in the minimum amount of Fifteen Percent (15%) of the amount of the judgment as collected (or, if collected without judgment, a minimum fee of Fifteen Percent (15%) of the amount collected), which attorney's fee shall not be diminished by any other fees, costs or damages, but in no event shall the attorney's fees be less than $3,000.00.

7.    **Extensions.** The Borrower shall remain liable for the payment of this Note, including interest, notwithstanding any extension or extensions of time of payment or any indulgence of any kind or nature that the Lender may grant or permit any subsequent owner of the encumbered property, whether with or without notice to the Borrower and the Borrower hereby expressly waives such notice.

8.    **Confessed Judgment.** UPON ANY DEFAULT BY THE BORROWER AS SET FORTH IN THIS NOTE, AND TO THE EXTENT PERMITTED BY LAW, THE BORROWER HEREBY AUTHORIZES ANY ATTORNEY AT LAW TO APPEAR FOR THE BORROWER IN ANY COURT OF COMPETENT JURISDICTION AND WAIVE THE ISSUANCE AND SERVICE OF PROCESS AND CONFESS A JUDGMENT AGAINST THE BORROWER IN FAVOR OF THE LENDER FOR SUCH AMOUNTS AS MAY THEN APPEAR TO BE UNPAID HEREON TOGETHER WITH COSTS, EXPENSES AND ATTORNEY'S FEES IN THE MINIMUM AMOUNT OF FIFTEEN PERCENT (15%) OF THE AMOUNT DUE FOR COLLECTION (BUT IN NO EVENT SHALL SUCH FEES BE LESS THAN $3000.00), AND TO RELEASE ALL PROCEDURAL ERRORS AND WAIVE ALL RIGHTS OF APPEAL. IF THE CONFESSION OF JUDGMENT ABOVE PROVIDED FOR IS AUTHORIZED OR RECOGNIZED BY THE LAW OF THE JURISDICTION CONTROLLING BUT SUCH LAW REQUIRES SPECIAL FORMALITIES AND PROCEDURE, THEN THE SAID ATTORNEY IS EMPOWERED TO EXECUTE THE NECESSARY FORM AND COMPLY WITH SUCH SPECIAL PROCEDURES. THIS POWER OF CONFESSION OF JUDGMENT SHALL NOT BE EXHAUSTED BY ANY ONE OR MORE EXERCISES, AND THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCIED FROM TIME TO TIME AS OFTEN AS LENDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO LENDER UNDER THIS NOTE SHALL HAVE BEEN PAID IN FULL.

9.    **Forbearance.** The Lender shall not by any act or omission to act be deemed to waive any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender and then only to the extent specifically set forth therein. A waiver on one occasion shall not be construed as continuing or as a bar to or waiver of such right or remedy on any other occasion. All remedies conferred upon the Lender by this Note or any other instrument or agreement connected herewith or related hereto shall be cumulative and none is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

10.    **Modification and Waiver.** Borrower and/or every person at any time liable for the payment of the debt evidenced hereby, waives the exercise of all exemption rights which it holds at law or in equity concerning to the debt evidenced by this Note whether under state constitution, homestead laws or otherwise. Borrower and any endorsers or guarantors hereof severally waive valuation and appraisement, presentment and demand for payment, notice of intent to accelerate maturity, notice of acceleration of maturity, protest or notice of protest and nonpayment, bringing of suit

IL: Commercial Flat Rate Promissory Note                          4                          Borrower's Initials: 

and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereof, and trial by jury in any litigation arising out of, relating to, or connected with this Note or any instrument given as security hereof.

From time to time, without affecting Borrower's obligation to pay any sums due under this Note and perform Borrower's covenants herein, without affecting the obligations of any endorser hereto or guarantor hereof, without giving notice to or obtaining the consent of Borrower or any endorser hereto or guarantor hereof, and without liability on the part of the Holder, Holder may, acting it its sole and absolute discretion, extend the Maturity Date or any other time for payment of interest hereon and/or principal hereof, reduce the payments hereunder, release anyone liable under this Note accept a renewal of this Note, modify the terms and time of payment of this Note, join in any extension or subordination or exercise any option or election hereunder, modify the rate of interest or period of amortization or principal due date of this Note, or exercise any option or election hereunder. No one or more such actions shall constitute a novation.

11. **Voluntary and Involuntary Prepayments.**

(a) A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

(i) Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a Notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to Section 11(f) of this Note. For purposes of this Note, a "**Business Day**" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business. For all purposes including the accrual of interest, but excluding the determination of the prepayment date under Section 11(f) of this Note, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month.

(ii) Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "**Partial Prepayment**") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to Section 11(f) of this Note, based on the amount being prepaid, shall be due and payable to Lender upon demand.

(iii) Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) and all other sums due Lender, and (C) the prepayment premium calculated pursuant to Section 11(f) of this Note, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

(iv) Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium. The amount of any such partial prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to Section 11(f) of this Note without Borrower having to pay out-of-pocket any additional amounts.

(b) Notwithstanding the provisions of Section 11(a), no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period (as defined in Section 11(f) of this Note), or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument.

(c) Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(d) Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in Section 11(f) represents a reasonable estimate of the damages Lender will incur because of a prepayment.

(e) Borrower further acknowledges that the prepayment premium provisions of this Note are a material part

5

Borrower's Initials: 

of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

(f)     Any prepayment premium payable under this Section 11 shall be computed as follows:

(i)     If the prepayment is made between the date of the initial funding of the loan evidenced by this Note and the last day of **JANUARY 2016** (the "**Prepayment Premium Period**"), the prepayment premium shall be the interest at the Note rate herein that would be earned on full loan amount for the balance of the Prepayment Premium Period.

(ii)     If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

12.     **Default Rate.** So long as (a) any monthly installment under this Note remains past due for thirty (30) days or more or (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the "**Default Rate**") equal to the lesser of **seven (7)** percentage points above the rate stated in the first paragraph of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the first paragraph of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments. Lender shall impose the Default Rate without any notice requirement to Borrower, guarantor or any third party pledging collateral as security for this Note.

13.     **Loan Charges/Maximum Rate Permitted By Law.** Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note. If Lender reasonably determines that the interest rate (together with all other charges or payments that may be deemed interest) stipulated under this Note is or may be usurious or otherwise limited by law, the unpaid balance of this Note, with accrued interest at the highest rate permitted to be charged by stipulation in writing between Lender and Borrower, at the option of Lender, shall immediately become due and payable.

14.     **Waiver of Jury Trial.** THE BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY DEED OF TRUST/MORTGAGE ARISING FROM THIS NOTE. THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY



OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER, AND THE BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.

15.    **Notices.** Any Notice or other communication required, permitted or desirable under the terms of this Note shall be sufficiently given if sent to each party as follows:

Lender:     The persons listed on Exhibit A to this Note
            C/O EquityBuild Finance, LLC
            5068 West Plano Pkwy, #300
            Plano, Texas 75093
            Fax: 239-244-8666
            Email: shaun.d.cohen@gmail.com

Borrower:   EquityBuild, Inc.
            1083 N Collier Blvd. #132
            Marco Island, FL 34145
            Fax: 202-204-8423
            Email: jerry@equitybuild.com

Any notice, demand, consent, approval, request or other communication or document to be given hereunder to a party hereto shall be (a) in writing, and (d) deemed to have been given (i) on the 3rd business day after being sent as certified or registered mail in the United States mails, postage prepaid, return receipt requested, or (ii) on the next business day after being deposited (with instructions to deliver it on that business day) with a reputable overnight courier service, or (iii) (if the party's receipt thereof is acknowledged in writing) on being sent by telefax or another means of immediate electronic communication, in each case to the party's address set forth above or any other address in the United States of America which it designates from time-to-time by notice to each other party hereto, or (iv) (if the party's receipt thereof is acknowledged in writing) on being given by hand or other actual delivery to the party.

16.    **Entire Agreement/Severability.** The terms and conditions of this Note together with the terms and conditions of the Mortgages which are incorporated herein by reference as if set forth fully herein contain the entire understanding between the Borrower and Lender with respect the indebtedness evidenced hereby. Such understanding may not be modified, amended or terminated except in a written document duly executed by Borrower and Lender. In the event that any one or more of the provisions set forth in this Note or any accompanying Arbitration Agreement is determined by law to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired hereby, and each provision in this Note shall be construed liberally in favor of Lender to the fullest extent of the law.

17.    **Joint and Several Liability/Credit Reporting.** The liability of the undersigned, as well as any endorsers and/or guarantor(s), shall be both joint and several. This Note shall be binding upon the heirs, successors and assigns of Borrower and Lender. Information concerning this Note may be reported to credit reporting agencies and will be made available when requested by proper legal process.

18.    **Governing Law.** This Note is delivered and made in, and shall be construed pursuant to the laws of the State of Illinois Unless applicable law provides otherwise, Borrower consents to the jurisdiction and venue of any court of competent jurisdiction located in **Cook County**, Illinois.

19.    **Construction.** As used herein, Person means a natural person, trustee, corporation, partnership, limited liability company or other legal entity, and all references made (a) in the neuter, masculine or feminine gender shall be deemed made in all genders, (b) in the singular or plural number shall also be deemed made in the plural or singular number, and (c) to any Section, subsection, paragraph or subparagraph shall, unless therein expressly indicated to the contrary, be deemed made to that part of the Note. The headings of those parts are provided only for convenience of reference, and shall not be considered in construing their contents. Each document referred to herein

as being attached hereto as an exhibit or otherwise designated herein as an exhibit hereto shall be a part hereof.

20.     **Time of Essence**. Time shall be of the essence of this Note, but (other than as to payment of principal and/or interest) if the last day for a Person to exercise a right or perform a duty hereunder is a Saturday, Sunday or statutory holiday, it shall have until the next day other than such a day to do so.

21.     **Assignment**. Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion. Borrower agrees that Lender is entitled to assign some or all of its rights and remedies described in this Note without notice to or the prior consent of Borrower.

22.     **Commercial Purpose.** It is expressly stipulated, warranted and agreed that the loan evidenced by this Note and any Loan Documents is a "commercial loan" under applicable State or Federal law, and all proceeds shall be used for business, commercial or investment purposes and expressly not for personal, family or household purposes.

23.     **Extension**. Intentionally omitted.

24.     **Arbitration**. If arbitration has been agreed to, Borrower(s) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated herein and made a part hereof by reference.

25.     **Contingency Funds**. Intentionally omitted.

26.     **Demand Feature**. Intentionally omitted.

27.     **Consent To Relief From Automatic Stay**. Borrower hereby agrees that if any of them shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (ii) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended; (iii) file or be the subject of any petition seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) seek, consent to or acquiesce in the appointment of any trustee, receiver, conservator or liquidator; (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against Borrower for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or from any other stay or suspension of remedies imposed in any other manner with respect to the exercise of the rights and remedies otherwise available to Lender under the Loan Documents.

28.     **Financial Information**. Borrower will at all times keep proper books of record and account in which full, true and correct entries shall be made in accordance with generally accepted accounting principles and will deliver to Lender, within ninety (90) days after the end of each fiscal year of Borrower, a copy of the annual financial statements of Borrower relating to such fiscal year, such statement to include (i) the balance sheet of Borrower as at the end of such fiscal year (ii) the related income statement, statement of retained earnings and statement of cash flow of Borrower for such fiscal year, prepared by such certified public accountants as may be reasonably satisfactory to Lender. Borrower also agrees to deliver to Lender within fifteen (15) days after filing same, a copy of Borrower's income tax returns and also, from time to time, such other financial information with respect to Borrower as Lender may request.

---

**THE PERSONS SIGNING BELOW ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN AMPLE OPPORTUNITY TO READ THIS AGREEMENT AND SEEK INDEPENDENT LEGAL COUNSEL AND ACKNOWLEDGE THEY HAVE COMPLETELY READ AND UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS OF THIS NOTE AND THE ACCOMPANYING ARBITRATION AGREEMENT (IF APPLICABLE), AND FURTHER ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS NOTE AND THE ARBITRATION AGREEMENT.**

DATED: 12/30/15

BORROWER(S): EQUITYBUILD, INC.

_____(SEAL)
JERRY COHEN, President

STATE OF Florida ____, COUNTY OF Manatee ____ : ss:

On this 30th day of December ____, 20 15, before me, a notary public, personally appeared
_____ Jerry Cohen _____, to
me known (or proved to me on the basis of satisfactory evidence) to be the person(s) who executed the foregoing
instrument and acknowledged the same for the purpose therein contained and in my presence signed and sealed the
same.

_____
NOTARY PUBLIC

My Comm. Expires: July 26, 2017

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Diana Johan | $25,000 | 2.00% |
| iPlanGroup Agent for Custodian FBO Alcalli Sabat traditional IRA | $5,000 | 0.40% |
| VIP Plus Money Purchase Plan DTD 02/14/09 | $37,481 | 3.00% |
| Robert A. Demick DDS PA 401k | $29,000 | 2.32% |
| The Moore/Ferrer family 2004 trust | $50,000 | 4.00% |
| Shelton Family Trust | $25,000 | 2.00% |
| 1839 Fund I, LLC | $42,330 | 3.39% |
| Liberty Quest Investment Group, LLC | $210,000 | 16.80% |
| Vartan Tarakchyan, Trustee for Defined Benefits Pension Plan | $50,000 | 4.00% |
| John McDevitt | $20,000 | 1.60% |
| Steven Bald | $40,000 | 3.20% |
| iPlanGroup Agent for Custodian FBO Jacqueline Rowe IRA | $22,000 | 1.76% |
| DVH Investment Trust | $198,500 | 15.88% |
| James Factor | $17,832 | 1.43% |
| Timothy Sharp | $50,000 | 4.00% |
| Matthew T. Boyd | $40,698 | 3.26% |
| Lawrence Daly a married man as his sole and separate property | $50,000 | 4.00% |
| Dennis & Mary Ann Hennefer | $332,334 | 26.59% |
| Arthur Bertrand | $4,825 | 0.39% |