# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES and EXCHANGE COMMISSION, | ) ) ) | No. 18 CV 5587 |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | |
| Defendants. | ) ) | February 13, 2019 |

## MEMORANDUM OPINION and ORDER

Before the court are motions filed by creditors Federal Home Loan Mortgage Corporation ("Freddie Mac"), Liberty EBCP, LLC ("Liberty"), and BC57, LLC ("BC57"), (collectively, "Creditors"), to determine their rights related to rents generated from real properties involved in this case.[1] For the following reasons, the motions are granted in part and denied in part without prejudice:

## Background

On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a complaint accusing Defendants of operating a Ponzi scheme. (R. 1, Compl. ¶ 1.) According to the complaint, since at least 2010 Defendants fraudulently induced over 900 investors to invest more than $135 million in residential properties on Chicago's South Side. (Id. ¶¶ 1-2.) The SEC alleges that

---

[1] At the January 31, 2019 hearing regarding Freddie Mac's motion, counsel for bank creditors other than the current movants also asserted similar interests in rents generated from properties involved in this case.

Defendants did so by "falsely promising investors safe investments, secured by income-producing real estate," which would generate double-digit returns. (Id. ¶ 1.) In reality, Defendants "skimmed" 15 to 30 percent off the investments, "exaggerated property valuations," and failed to disclose "heavy losses," which led Defendants to engage in a Ponzi scheme. (Id. ¶¶ 2-5.) Indeed, according to the SEC, after Defendants' initial investment program failed, Defendants raised funds from new investors by "offering investments in pooled investment funds," without informing them that "most of the properties supposedly being acquired and renovated by new investor proceeds were the very same properties 'securing' the investments of earlier investors." (Id. ¶ 5.)

Shortly after the SEC filed its complaint, the court entered an order appointing Kevin B. Duff ("Receiver") to "marshal[] and preserv[e] all assets" of Defendants and their affiliates ("Receivership Assets"). (R. 16, Receivership Order at 1.) The Receivership Order froze Receivership Assets "until further order" of the court and afforded the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners" of Defendants. (Id. ¶¶ 3-4.) Relevant to the pending motion, the Receivership Order also granted the Receiver "general powers and duties" to "determine the nature, location and value of all property interests of the Receivership Defendants, including . . . rents, profits, dividends, interest, or other income attributable thereto, of whatever kind and wherever located, which the

Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly." (Id. ¶ 8(A).)

Here the Creditors argue that they have secured interests in "rents, revenues and other income" (collectively, "Rents") generated from real properties Defendants used to carry out their Ponzi scheme. (R. 90, Freddie Mac's Mot. at 1; see also R. 101, Liberty's Mot. at 2-3; R. 109, BC57's Mot. at 3.) Given their alleged interests in the subject properties, the Creditors have sought assurance from the Receiver that the Rents for each property are being segregated and used only for the "necessary operation and maintenance of the applicable Property." (R. 90, Freddie Mac's Mot. at 2; see also R. 101, Liberty's Mot. at 2; R. 109, BC57's Mot. at 3.) The Receiver has declined to provide such assurance and is "commingling" the Rents in such a manner that Rents from certain properties are being used to maintain or improve other properties. (R. 90, Freddie Mac's Mot. at 2.) As a result, the Creditors seek an order prohibiting the Receiver from commingling the Rents and requiring a monthly accounting showing all Rents generated by each property. (Id.)

More specifically, Freddie Mac seeks an order directing the Receiver to: "(i) use the Rents for no purpose other than the necessary operation and maintenance of the Properties, or making payments on the Loans, and (ii) separately account for the Rents and provide a monthly accounting of the Rents to the lender for each Loan."[2] (Id.) BC57 seeks the same relief, along with the

_____

[2] In its reply brief Freddie Mac also argues that "[t]he Court can—and should— determine the Movants' entitlement to the Rents as a matter of law based upon the documents already submitted." (R. 140, Freddie Mac's Reply at 5.)

entry of an order "finding that the Rents are not Receivership Assets." (R. 109, BC57's Mot. at 4). Liberty in turn seeks the following "alternative" relief:

(a)     An order deeming [the portfolio to which Liberty allegedly made a secured loan] not a "Receivership Defendant" and the collateral securing Liberty's loan not "Receivership Assets"; or

(b)     An order deeming Liberty's rents not to be Receivership Assets and prohibiting the Receiver from dissipating the rents;

(c)     An order lifting the injunction imposed under Paragraphs 29-31 of the Order Appointing Receiver, to permit Liberty to pursue collection on its loan; or

(d)     If the relief in (a)-(c) is not granted, that the Court enter an order: (i) requiring that the rents associated with Liberty's collateral not be diverted for non-Liberty collateral purposes; (ii) requiring that payment to Liberty, per the terms of Liberty's Loan proceed, as scheduled; (iii) permitting Liberty to utilize the escrows, in accordance with the terms of the loan documents; and (iv) permitting Liberty direct access to the property managers overseeing Liberty's collateral."

(R. 101, Liberty's Mot. at 3-4.)

The SEC and Receiver oppose the motions, arguing that the Rents are Receivership Assets and, as such, may be used to maintain the investment portfolio as a whole, without limitations. (R. 114, SEC's Resp. at 1; R. 115, Receiver's Resp. at 5.) The Receiver further asserts that other investors and/or lenders assert preexisting interests in the subject properties. (R. 115, Receiver's Resp. at 11.) As a result, the Receiver requests that the claims process be permitted to proceed so that each interested investor and lender may present a claim before rights are determined. (Id. at 12.)

## Analysis

The Creditors seek a ruling requiring the Receiver to keep separate all Rents collected for each subject property and to provide the Creditors with a separate accounting for each property in which they assert an interest. In support of its motion, Freddie Mac cites *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1341 (11th Cir. 2017), which also involved an alleged collapse of a Ponzi scheme involving real property. In that case the Eleventh Circuit addressed whether a district court could "extinguish a non-party's preexisting rights to property under the administration of the equity receivership." *Id.* In its ruling the Eleventh Circuit first observed that "a district court has broad powers and wide discretion to determine relief in an equity receivership." *Id.* at 1343-44 (internal citation and quotations omitted). The court then found, however, that a district court "does not have the authority to extinguish a creditor's pre-existing state law security interest." *Id.* at 1344. The court noted that state law determines security interests in real property, and "a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *Id.* (internal citation and quotations omitted).

The parties have not cited any applicable Seventh Circuit precedent addressing the question presented in *Wells Fargo*, but the Seventh Circuit similarly has ruled that "the rights of the receivers can be no greater than those of their predecessors in title." *Guaranty Trust Co. of N.Y. v. Fentress*, 61 F.2d 329, 333 (7th Cir. 1932); *see also SEC v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271,

1277 (D. Utah 2009). And notably, even the Receivership Order recognizes that the Receiver assumes powers and duties with respect to "rents" only insofar as "the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly" those interests. (R. 16, Receivership Order ¶ 8(A).)

Freddie Mac relies upon *Wells Fargo* to argue that this court lacks the power to extinguish preexisting secured interests in the Rents that were properly recorded under Illinois law. (R. 90, Freddie Mac's Mot. at 10.) In Illinois an assignor may assign rents by recording the assignment in the county in which the property is located. *See* 765 ILCS 5/31.5(b) ("If an instrument assigning the interest of the assignor in rents arising from the real property described in the instrument is recorded . . . then the interest of the assignee in those rents is perfected upon that recordation without the assignee taking any other affirmative action."). Here Freddie Mac asserts that Defendant Jerome Cohen, as a principal of certain borrowing entities, obtained loans from Freddie Mac relating to 10 Chicago properties that were secured in part by a multi-family residential property. (R. 90, Freddie Mac's Mot. at 3-4.) At the time the loans originated, a security instrument for each loan was executed and properly recorded with the Cook County Recorder of Deeds. (Id. at 6.) Those security instruments included provisions automatically transferring to Freddie Mac the right to collect all Rents in the event of default. (Id. at 6-7.) When the borrowers defaulted, including by failing to make monthly loan payments on September 1 and October 1, 2018, Freddie Mac contends that the Rents became due and payable to it. (Id. at 7-8.) Accordingly, Freddie Mac asserts

a "present, absolute, and unconditional right to the Rents." (Id. at 8.) The other Creditors make similar arguments. (See R. 101, Liberty's Mot. at 2-3 ("Liberty also asserts that the rents are not 'Receivership Assets' based on the Assignments of Leases and Rents and therefore, cannot be diverted by the Receiver."); R. 109, BC57's Mot. at 3 ("BC57 has a present, absolute, unconditional right to the Rents.").)

Each Creditor asks this court to determine its rights to the Rents as a matter of law based upon evidence submitted with its motion. (See R. 101, Liberty's Mot. at 3; R. 109, BC57's Mot. at 3-4; R. 140, Freddie Mac's Reply at 5.) Freddie Mac's primary concern at this stage, however, is ensuring that all Rents are segregated for each individual property and used only for the necessary operation and maintenance of that specific property. Additionally, while some information about the Rents has been provided to the Creditors, they seek a monthly accounting detailing the separate Rents for each property. (See, e.g., R. 90, Freddie Mac's Mot. at 2, 5.)

The SEC and Receiver oppose the Creditors' motions, arguing that the Rents are Receivership Assets and that the Creditors do not have first priority regarding the Rents or subject properties. (R. 114, SEC's Resp. at 1-6; R. 115, Receiver's Resp. at 5-15.) The SEC asks this court to invoke its "broad equitable power" to ensure an equitable distribution of assets among defrauded investors, including earlier-in-time investors "who never knowingly or voluntarily relinquished their earlier security interests" in the properties. (R. 114, SEC's Resp. at 7.) Additionally, the

SEC contends that "to divert rents at this preliminary stage would decimate the Receivership and cripple the Receiver's efforts to recover assets for the benefit of investors and other creditors." (Id. at 1.) The Receiver similarly seeks a flexing of the court's equitable muscle to deem that the Rents are Receivership Assets, so that the Receiver may maintain or improve the value of the investment portfolio without restricting funds generated from one property from being used to improve another. (R. 115, Receiver's Mot. at 9-11.) However, there is nothing in the submissions to demonstrate that the relief sought by the Creditors is inconsistent with the rights of other defrauded investors.

At this stage the court declines to invoke its inherent powers to fashion the equitable relief requested by the SEC or Receiver. The court is mindful that it has "minimal authority" to extinguish "preexisting state law security interest[s]," should such interests exist here. *See Wells Fargo*, 848 F.3d at 1344. To ensure that any preexisting secured interests are not diminished, the court orders the Receiver: (1) not to commingle the Rents but rather to use the Rents from each property solely for the benefit of that property; and (2) to separately account for the Rents and provide a monthly accounting upon request, to the extent such accounting is not already being undertaken and provided.

All other relief requested by the Creditors is denied without prejudice. The court agrees with the Receiver that it is premature to determine whether the Creditors have preexisting secured interests in the Rents under Illinois law. The court has not yet approved a claims process. And the SEC and Receiver have

alleged that Defendants manipulated secured interests as part of their Ponzi scheme. (R. 114, SEC's Resp. at 1; R. 115, Receiver's Resp. at 7.) Given that defrauded investors and creditors may assert interests in the same Rents and subject properties, the claims process should be implemented to ensure that investors and lenders receive due process. Accordingly, at this time the court does not rule on the extent to which the Creditors have first priority or any other rights to the Rents or properties associated with the alleged Ponzi scheme.[3] Nor does the court rule on whether the Rents are Receivership Assets.

## Conclusion

For the foregoing reasons, the Creditors' motions are granted in part and denied in part. The Receiver must: (1) not commingle the Rents and use the Rents from each property solely for the benefit of that particular property; (2) separately account for the Rents and provide a monthly accounting upon request; and (3) restore the Rents, to the extent that there are enough funds now or later, if they have been used for the benefit of other properties. Furthermore, this ruling applies equally to other creditors similarly situated.

**ENTER:**

_Young B. L_

**Young B. Kim**
**United States Magistrate Judge**

---

[3] Even though Freddie Mac argues that the Receiver does not contest its first priority rights to three properties, (R. 140, Freddie Mac's Reply at 4), the court agrees with the Receiver that priority determinations should not be rendered until a claims process has been approved and implemented, (R. 115, Receiver's Resp. at 12).