UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES and EXCHANGE COMMISSION, | ) ) ) | No. 18 CV 5587 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) ) ) | |
| Defendants. | ) ) | April 8, 2019 |

**MEMORANDUM REPORT and RECOMMENDATION**

Before the court is Receiver Kevin B. Duff's first motion for court approval of the sale of certain real estate and for the avoidance of certain mortgages, liens, claims, and encumbrances. Non-party trustee Wilmington Trust, National Association ("Wilmington Trust") and Defendants Jerome H. Cohen and Shaun D. Cohen ("the Cohens") have objected to the Receiver's motion. For the following reasons, this court respectfully recommends that the Receiver's motion be granted in part and denied in part:

**Background**

On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a complaint against Defendants alleging that they were operating a Ponzi scheme. (R. 1, Compl. ¶ 1.) According to the SEC, Defendants fraudulently

induced more than 900 investors to invest at least $135 million in residential properties on Chicago's South Side. (Id. ¶¶ 1, 2.)

Shortly after the SEC filed the complaint, the court entered an order taking "exclusive jurisdiction and possession" of all assets of Defendants and their affiliates ("Receivership Assets"). (R. 16, Receivership Order ¶ 1.) The Receivership Order granted the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners" of Defendants. (Id. ¶ 4.) The Receivership Order also authorized the Receiver to "take all necessary and reasonable actions" to sell or lease "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (Id. ¶ 38; see also id. ¶ 39 (authorizing the Receiver to "sell, and transfer clear title to, all real property in the Receivership Estate").)

The Receiver then moved the court for approval of a sealed-bid public auction process under which the Receiver, acting with SVN Chicago Commercial, LLC ("SVN"), would market and sell the following multi-family residential apartment buildings in Chicago within the Receivership Estate:

1. 7500-06 South Eggleston;
2. 7549-59 South Essex;
3. 7927-49 South Essex;
4. 5001-05 South Drexel Boulevard;
5. 6160-6212 South King; and
6. 8100-14 South Essex.

2

(R. 230, Receiver's Mot. at 2-3; see also R. 130, Receiver's Mot. to Approve Auction Process at 1-3.) On November 21, 2018, after two hearings discussing the fairness of the Receiver's proposed process, this court granted the Receiver's motion for court approval of the public sale, finding that the sale process "comports with the requirements of 28 U.S.C. §§ 2001 and 2002." (R. 164.)

The Receiver then published notices of the public sales of the properties, and SVN marketed the properties on public websites and to its network of potential buyers. (R. 230, Receiver's Mot. at 4.) The Receiver determined the strongest bid for each property and accepted the following purchase and sale agreement submitted by that bidder:

| Property | Bidder | Price |
|---|---|---|
| 7500-06 South Eggleston | WPD Management, LLC | $960,000 |
| 7549-59 South Essex | WPD Management, LLC | $1,175,000 |
| 7927-49 South Essex | Manage Chicago, Inc. | $875,000 |
| 5001-05 South Drexel Boulevard | Berger Investment Group LLC | $2,800,000 |
| 6160-6212 South King | PRE Holdings 5, LLC | $785,000 |
| 8100-14 South Essex | PRE Holdings 5, LLC | $1,100,000 |

(Id. at 5-6.) The Receiver represents that each strongest bid "was fair and reasonable and in the best interests of the Receivership Estate" and now moves for court approval of the sale of these properties. (Id. at 6.)

The Cohens and Wilmington Trust, as trustee for the registered holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16, object to the Receiver's requested relief. (See R. 233, Wilmington Trust's Obj.; R. 239, Cohens' Obj.)

3

## Analysis

The Cohens and Wilmington Trust object to the sale of certain properties as proposed in the Receiver's motion. The court recommends that the Receiver's motion be granted in part because the Cohens' objection is untimely and unsupported by reliable evidence, and Wilmington Trust's objection is not grounded in any showing that harm would occur if the motion is granted. The court also recommends that the motion be denied to the extent that the Receiver seeks to extinguish Wilmington Trust's preexisting property rights under Illinois law.

**A.    The Cohens' Objection**

As to the Cohens' objection, it is improper and inadequate.[1] The Cohens are parties in this litigation and had notice of hearings conducted by this court on November 16 and November 21, 2018, to address the fairness of the Receiver's proposed sale process for the properties at issue. (Compare R. 155, 162, 164 with R. 239, Cohens' Mot.) Nonetheless, they waited to object until February 19, 2019, three months after this court approved the proposed sale process and after the conclusion of the bidding process. They argue that the Receiver's asking prices for the properties were "far below market value" and should have included "an appraisal or Broker's Price Opinion ["BPO"] to justify a minimum bid amount." (R. 239, Cohens' Obj. at 2.) But they made no such argument when the court considered the sale

---

[1] The parties did not brief any concerns regarding the Cohens' standing to object to the Receiver's current motion. The court presumes that the Cohens have standing to object here because the more funds the Receiver raises through the sales of the Receivership Assets, the less they will end up owing in personal liability to their victims.

4

process before the Receiver commenced, and objecting now to the process the court approved in November 2018 is too late.

Nor have the Cohens offered adequate evidence to justify certain minimum bid amounts. They assert that there are significant discrepancies between building valuations performed between January and June 2018 and asking prices set by the Receiver. (Id. at 2-3.) For example, they attach to their objection a chart listing the properties at 7927-49 South Essex as having a BPO of $1,800,000, as compared with the Receiver's asking price of $750,000. (R. 239-1, Cohens' Obj., Ex. A.) However, the chart includes no analysis or underlying appraisals to support the alleged BPO value for these properties. (Id.) Furthermore, the Cohens did not submit any affidavits or even specific allegations linking the figures contained in the chart to any studies or evaluations conducted by real estate appraisers. The Cohens assert that "CRER, a local real estate services firm owned by Eric Janssen, a well respected court appointed receiver . . . provided [BPOs] for much of [the] portfolio" at issue here. (R. 239, Cohens' Obj. at 2-3.) They state that they do not have the BPOs "in their possession" and ask the court to "subpoena CRER for said documents." (Id. at 3-4.) The court declines the request as it is the objectors', not the court's, obligation to provide a factual basis for their objections. The Cohens therefore failed to provide any reliable information in opposing the Receiver's motion.

Regardless, the Receivership Order in this matter gives the Receiver broad powers to sell or lease the subject properties "either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate,

5

and with due regard to the realization of the true and proper value of such real property." (R. 16, Receivership Order ¶ 38; see also id. ¶ 39.) The Receiver has represented that he "is informed and believes that each of the offers he accepted was fair and reasonable and in the best interests of the Receivership Estate." (R. 230, Receiver's Mot. at 6.) The Cohens disagree, alleging that "this Receiver is either not committed to fulfilling [his] obligation [to maximize the sale prices of the assets for the benefit of all invested parties] or does not possess the skillset to do so." (R. 239, Cohens' Obj. at 4.) But they offer no evidence grounded in fact for support and fail to consider the impact that the pending federal action for fraud and receivership involving the subject properties likely had on the valuations. Simply put, they have not provided sufficient evidence showing that the Receiver acted without "due regard" to the "true and proper value" of the properties. (R. 16, Receivership Order ¶ 38.)

The Cohens further argue that any property manager currently managing buildings within the Receivership Estate should not be permitted to bid on any properties in the portfolio because of "a direct conflict of interest." (R. 239, Cohens' Obj. at 5.) They allege that the property managers "are directly in control of many of the variables that determine value" for the properties and suggest that the managers may seek to influence those variables to purchase the properties for the "lowest price possible." (Id.) Again here, the Cohens offer mere conjecture and no facts to support their allegations. The court therefore recommends that the Cohens' objection be overruled.

6

**B.      Wilmington Trust's Objection**

As to Wilmington Trust's objection, the trustee's primary concern is with recouping the full payoff of indebtedness owed under the loan documents as of the closing date for the properties located at 5001-05 South Drexel. (R. 233, Wilmington Trust's Obj. at 1-3.) Because the sale of the properties did not close by December 15, 2018, Wilmington Trust asserts that the payoff amount initially noted in the settlement statement will be higher. (Id. at 2.) Even so, the agreed-upon sale price of $2,800,000 for the Drexel properties should be more than sufficient to cover the estimated lien payoff of approximately $2 million—in the event that Wilmington Trust is entitled to recover the lien amount.[2] Thus, Wilmington Trust has not shown that it will be harmed if the court grants the Receiver's motion.

Wilmington Trust also argues that the Receiver should not be permitted to commingle proceeds from the sale of these properties with funds for other properties, at least until the trustee has been paid in full. (Id.) On this point, the court agrees. This court has held in the context of creditors' requests in this case that rents collected cannot be commingled because a court "does not have the authority to extinguish a creditor's pre-existing state law security interest." (R. 223, Order at 5 (quoting *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1341 (11th Cir. 2017).) To be sure, "a receiver appointed by the federal court takes property subject to all liens,

---

[2] Wilmington Trust represents that it will provide an updated payoff statement effective as of the closing date of the sale. As suggested during the motion hearing on March 18, 2019, the Receiver should explore ways to stop the accrual of fees, costs, and interest.

7

priorities, or privileges existing or accruing under the laws of the state." (Id. (internal citation and quotations omitted).) The same reasoning applies here. Sale proceeds should not be commingled with funds for other properties where doing so would extinguish preexisting security interests under Illinois law.

Accordingly, the court recommends that the Receiver's motion be granted except to the extent it would extinguish Wilmington Trust's preexisting rights to the subject property. The court further recommends that the Receiver be ordered not to commingle the proceeds from the sale of the properties at 5001-05 South Drexel with funds for other properties until further order of the court.

## Conclusion

For the foregoing reasons, this court recommends that the Receiver's first motion for court approval of the sale of subject properties be granted except as specified above. All interested parties have until April 22, 2019, to file objections to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**