UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES SECURITIES and EXCHANGE COMMISSION, | ) ) ) | No. 18 CV 5587 |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) ) ) | |
| Defendants. | ) ) | May 2, 2019 |

**MEMORANDUM OPINION and ORDER**

Before the court is Receiver Kevin B. Duff's second motion for court approval of the process for public sale of certain real estate through sealed bid. Non-party creditors Liberty EBCP, LLC ("Liberty"), U.S. Bank National Association ("U.S. Bank"), Freddie Mac, and BC57, LLC ("BC57") (collectively, "the Lenders") have objected to the Receiver's motion. For the following reasons, the Receiver's motion is granted as explained herein:

**Background**

On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a complaint against Defendants alleging that they were operating a Ponzi scheme. (R. 1, Compl. ¶ 1.) According to the SEC, Defendants fraudulently induced more than 900 investors to invest at least $135 million in residential properties on Chicago's south side. (Id. ¶¶ 1, 2.)

Shortly after the SEC filed the complaint, the court entered an order taking "exclusive jurisdiction and possession" of all assets of Defendants and their affiliates ("Receivership Assets"). (R. 16, Receivership Order ¶ 1.) The Receivership Order granted the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners" of Defendants. (Id. ¶ 4.) The Receivership Order also authorized the Receiver to "take all necessary and reasonable actions" to sell or lease "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (Id. ¶ 38; see also id. ¶ 39 (authorizing the Receiver to "sell, and transfer clear title to, all real property in the Receivership Estate").)

The Receiver then moved the court for approval of a sealed-bid public auction process under which the Receiver, acting with SVN Chicago Commercial, LLC ("SVN"), would market and sell certain multi-family residential apartment buildings in Chicago within the Receivership Estate. (R. 130, Receiver's Mot. at 2-3.) On November 21, 2018, this court granted the Receiver's motion for court approval of the sealed-bid process for the public sale of those properties, finding that the process comports with the requirements of 28 U.S.C. §§ 2001 and 2002. (R. 164.)

In the current motion, the Receiver seeks the court's approval of the sealed-bid process for the public sale of the following Chicago properties ("Properties"):

1. 2909 East 78th Street;
2. 4520-26 South Drexel;

3. 6749-57 South Merrill (alternative address 2136 East 68th Street);
4. 7110 South Cornell Avenue;
5. 638 North Avers;
6. 701 South 5th Avenue;
7. 7625-33 South East End Avenue;
8. 7635-43 South East End Avenue;
9. 7750-58 South Muskegon (alternative address 2818-36 East 78th Street);
10. 7600 South Kingston Avenue (alternative address 2527 East 76th Street);
11. 7748-50 South Essex Avenue (alternative address 2450-52 East 78th Street; and
12. 8326-58 South Ellis.

(R. 228, Receiver's Mot. at 3.) The Lenders object to this motion. (R. 232, Liberty's Obj.; R. 235, U.S. Bank/Freddie Mac's Ltd. Obj.; R. 240, BC57's Obj.) The court heard the parties' and Lenders' arguments during a hearing held on March 18, 2019. (R. 295, 296.)

**Analysis**

The Lenders object to the Receiver's second motion for the court's approval of a sealed-bid process for the public sale of the Properties. They do so on various grounds. The court addresses each objection in turn. First, Liberty argues that the proposed sealed-bid process violates 28 U.S.C. § 2001. (R. 232, Liberty's Obj. at 2-3.) Section 2001(a) provides:

> Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
>
> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein

3

any such receiver was first appointed, at the courthouse of the county, parish, or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish, or city, as such court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts.

Liberty argues that the proposed process contravenes Section 2001(a) because a public sale must occur either "on the courthouse steps of the county where the property to be sold is located, or on the property itself," and never through a sealed-bid process.[1] (R. 232, Liberty's Obj. at 2.)

The court finds that Section 2001(a) is not as limiting as Liberty suggests. In *United States v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968), the court found that "[t]here can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales." To that end, "[i]t is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof." *Id.*

The Seventh Circuit has cited favorably the *Branch Coal* decision, noting that Section 2001(a) permits the court to set the terms and conditions of judicial sales of real property and that the district court's discretion "will not be disturbed on appeal except for abuse." *United States v. Peters*, 777 F.2d 1294, 1298 n.6 (7th Cir. 1985)

---

[1] Liberty also argues that a sealed-bid process does not satisfy 28 U.S.C. § 2001(b), which allows a private sale of realty, provided that the sale is in "the best interests of the estate." Here the Receiver proposes a *public* sale of realty in accord with 28 U.S.C. § 2002, not a private sale. (See R. 228, Receiver's Mot., Ex. A, Notice of Public Sale of Real Estate).)

4

(also citing *United States v. Heasley*, 283 F.2d 422, 426 (8th Cir. 1960)); *see also United States v. Hunwardsen*, 39 F. Supp. 2d 1157, 1162 (N.D. Iowa 1999). District courts have applied these principles to public sales of real property under a receiver's control. *See Pennant Mgmt., Inc. v. First Farmers Fin., LLC,* No. 14 CV 7581, 2015 WL 5180678, at *7 (N.D. Ill. Sept. 4, 2015) (approving receiver's sale procedures that did not "strict[ly] compl[y]" with Section 2001(a) because the proposed process was targeted toward obtaining a better result than adherence to "the archaic procedures" in Section 2001(a) would have achieved); *United States v. Nipper*, No. 11-460, 2015 WL 4664921, at *1 (D. N.M. July 2, 2015) (approving receiver's sale motion and noting that courts have "broad discretion" to set the terms and conditions of a sale under Section 2001(a)); *SEC v. Billion Coupons, Inc.*, Nos. 09-00068, 09-00069, 2009 WL 2143531, at *3-4 (D. Haw. July 13, 2009) (approving receiver's proposed procedures for public sale of real property, including the retention of a licensed real estate broker to market and sell the property to achieve the "highest and best price" that could be obtained).

In the exercise of its discretion here, the court finds that the Receiver's proposed sale procedures comply with Section 2001(a) for several reasons. As an initial matter, Liberty has not shown that a public sale on the courthouse steps or Properties would result in a better outcome for any party, creditor, or investor than the public auction process proposed here. Nor has Liberty demonstrated that any of the identified properties can actually be "sold" on the courthouse steps. The Receiver is not authorized to sell anything without the court's approval, which cannot take

5

place until after the auction period expires. The Receiver has the authority to "take all necessary and reasonable actions" to sell or lease "all real property in the Receivership Estate." (R. 16, Receivership Order ¶ 38.) While the Receiver must act "with due regard to the realization of the true and proper value of such real property," (id.), neither Liberty nor any other Lender or party has shown that the Receiver has not acted in the best interests of the Receivership Estate. And the Receiver describes measures—including publishing notice of the sale in a number of prominent publications and marketing the public sale on publicly available websites and through social media—that seek to "maximize awareness and interest" in the Properties. *See Pennant Mgmt.*, 2015 WL 5180678, at *7. The court therefore overrules Liberty's objection and approves the sale procedures proposed by the Receiver, except as otherwise provided below.

The Lenders next object that the sale process does not provide them the right to credit bid to secure their interests to the extent that the proposed sale of a Property is for less than the amount owed. (R. 232, Liberty's Obj. at 3-5; R. 235, U.S. Bank/Freddie Mac's Ltd. Obj. at 5-6; R. 240, BC57's Obj. at 1-2.) The Lenders cite Local Rule 66.1(a) for support. That rule provides in relevant part:

> The administration of estates by receivers or other officers shall be similar to that in bankruptcy cases except that the court in its discretion shall—
>
> (1) fix the allowance of compensation of receivers or similar officers, their counsel, and any others appointed to aid in the administration of the estate, and
>
> (2) direct the manner in which the estate shall be administered, including the conduct of its business, the discovery and

6

> acquirement of its assets, and the formation of reorganization plans.

LR 66.1. Based on this rule, the Lenders argue that the court should follow bankruptcy law, which requires secured lenders to be afforded the right to credit bid their secured debt when a property is being sold. (R. 232, Liberty's Obj. at 5; R. 235, U.S. Bank/Freddie Mac's Ltd. Obj. at 5; R. 240, BC57's Obj. at 2.) They further argue that if a sale were to proceed that provided only a discounted payoff, such a process would constitute an unlawful extinguishment of a preexisting state law security interest. (See R. 232, Liberty's Obj. at 4; R. 235, U.S. Bank/Freddie Mac's Ltd. Obj. at 5; R. 240, BC57's Obj. at 2.)

Given this court's prior ruling—which did not disturb the rights and interests of non-institutional lenders—recognizing that it has minimal authority to extinguish preexisting state law security interests, (R. 223), the court sustains the Lenders' credit-bid objection. The court agrees that all lenders have a right to make a credit bid of their lien on a Property that the Receiver proposes to sell. However, if the Receiver identifies a "bona fide dispute" as to the validity of any lender's debt and provides sufficient support[2] for the bona fide nature of the dispute, then the lender seeking to submit a credit bid must post an irrevocable letter of credit drawn on another bank to protect the Receiver and Receivership Assets if the lien is voided or is deemed unenforceable. *See In re Octagon Roofing*, 123 B.R. 583, 590-92 (N.D. Ill.

---

[2] The court recognizes that the Receiver has not performed any adversary discovery against any of the Lenders. However, he must still provide adequate information showing that there are competing liens covering the same property to be sold or that the Lenders' liens may not be enforceable.

1991); *see also* LR 66.1(a) (authorizing the court to direct the manner in which the Receivership Estate shall be administered). The letter of credit will require payment of up to the amount of the credit bid should the court determine that the lien constituted a fraudulent conveyance or that the lenders otherwise engaged in inequitable conduct in securing the debt. *See In re Octagon Roofing*, 123 B.R. at 590-92; *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 928 (N.D. Ill. 1997). And because there may be disputes over the priority of various liens, the letter of credit must require payment of up to the amount of the credit bid should the court ultimately determine that the bidder's lien is inferior to competing liens.

The Lenders further argue that they should be permitted to provide input into and be involved with the sale process and have direct access to the property managers for the Properties. (R. 232, Liberty's Obj. at 6-10; R. 235, U.S. Bank/Freddie Mac's Ltd. Obj. at 5; R. 240, BC57's Obj. at 3-4.) Liberty, for example, would like "access to the property managers to have questions answered, based on substantial changes in occupancy, turnover costs, leasing commissions and property expenditures, between the pre and post-receivership periods."[3] (R. 232, Liberty's Obj. at 6.) The court denies the Lenders' request. The court appointed the Receiver to "take all necessary and reasonable actions" to sell or lease the Properties. (R. 16, Receivership Order ¶ 38.) The court does not intend to dictate the Receiver's every

---

[3] Liberty also seeks to exclude, or at least to require heightened scrutiny over, any property manager that proposes to purchase a Property. In the context of a separate motion and objections thereto, the court has already reported and recommended that such an objection be overruled. (R. 311 at 6.) The assigned district judge adopted that recommendation, (R. 344), and it now stands as the law of the case.

8

move, absent a concrete showing that he is exceeding his authority or otherwise violating the Receivership Order. Accordingly, the court overrules the Lenders' objection.

For the same reason, the court overrules the Lenders' objections that: (1) potential bidders should be afforded more expansive due diligence rights, (R. 232, Liberty's Obj. at 7-8); (2) Lenders should be permitted to preview and approve due diligence materials before they are provided to prospective bidders, (id. at 8-9; R. 240, BC57's Obj. at 3); (3) buyers should be allowed to submit bids as late as the commencement of the court approval hearing, (R. 232, Liberty's Obj. at 9); (4) contingent offers should be considered to attract as many interested buyers as possible, (id.); (5) the Receiver should be compelled to share all offer information with the mortgage holders, (id. at 9-10; R. 240, BC57's Obj. at 3); and (6) the commission structure related to the proposed sale of the Properties should be disclosed before approval of the sale, (R. 232, Liberty's Obj. at 10).[4] The court will not hamstring the Receiver by requiring him to meet and confer on each of these matters with every lender or interested party before he acts, because such a requirement will drain the Receivership Assets. Having said that, if the Receiver wishes to consider these suggestions before finalizing the sale procedures, he is authorized to do so.

U.S. Bank, Freddie Mac, and BC57 further object that the sale process is silent on whether sale proceeds will be segregated on a property-by-property basis. (R. 235,

---

[4] If the commission structure would diminish the sale proceeds such that any Lender's preexisting security interest would be extinguished, then that Lender may petition the court for relief during the approval process.

U.S. Bank/Freddie Mac's Ltd. Obj. at 2; R. 240, BC57's Mot. at 3.) On this point, the court agrees and sustains the objection. This court has held in the context of creditors' requests that rents collected cannot be commingled because a court "'does not have the authority to extinguish a creditor's pre-existing state law security interest.'" (R. 223, Mem. Op. at 5 (quoting *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1341 (11th Cir. 2017).) To be sure, "a receiver appointed by the federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." (Id. (internal citation and quotations omitted).) The same reasoning applies here. Sale proceeds should not be commingled with funds for other properties where doing so would extinguish preexisting security interests.

Finally, U.S. Bank and Freddie Mac object that the sale process does not require a listing price to be higher than the amount needed to pay off the mortgages held. (R. 235, U.S. Bank/Freddie Mac's Ltd. Obj. at 3-4.) These creditors would like the court to impose a condition that the sale price must be sufficient to satisfy the mortgage holder's interest. The court overrules the objection and declines to restrict the Receiver from exercising his sound business judgment, absent concrete evidence showing that the Receiver is acting without "due regard to the realization of the true and proper value of such real property."[5] (R. 16, Receivership Order ¶ 38.) Plus, the Lenders now have the ability to exercise their right to submit a credit bid.

---

[5] If the sale price would extinguish any Lender's preexisting security interest, then that Lender may petition the court for relief before the approval hearing.

## Conclusion

For the foregoing reasons, the Receiver's second motion for court approval of the sale of subject properties is granted as provided herein.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**