UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

Civil Action No. 18-cv-5587

Plaintiff,

Hon. John Z. Lee

v.

Magistrate Judge Young B. Kim

EQUITYBUILD, INC.,
EQUITYBUILD FINANCE, LLC,
JEROME H. COHEN, and
SHAUN D. COHEN, Defendants.
_____/

**NOTIFICATION OF LIBERTY EBCP, LLC REGARDING STATUS OF
NEGOTIATIONS WITH THE RECEIVER REGARDING BID PROCEDURES**

Liberty EBCP, LLC ("*Liberty*"), by its counsel, Jaffe, Raitt, Heuer & Weiss, P.C. provides this *Notification of Liberty EBCP, LLC Regarding Status of Negotiations with the Receiver Regarding Bid Procedures* (the "Notice Regarding Bid Procedures) and in support thereof, states as follows:

Pursuant to this Court's Order dated June 9, 2019 [R 406] the parties were instructed to attempt to negotiate acceptable credit bid procedures with the Receiver and failing the ability to reach agreement, the parties were to file with this Court, by June 17, 2019, a pleading seeking to amend the Court's order dated May 22, 2019.

Liberty has made substantial progress in its negotiations with the Receiver. Attached as **Exhibit A** are the changes to the Bid Procedures proposed by Liberty, redlined against the original version proposed by the Receiver. Attached as **Exhibit B** is a clean version of the changes to the Bid Procedures proposed by Liberty. The Receiver and Liberty are in agreement

1

regarding the changes proposed in **Exhibit A**. However, upon information and belief, the other lenders are not in agreement regarding the changes proposed in **Exhibit A** and/or are seeking additional modifications.

With respect to the June 17, 2019 deadline to seek to amend this Court's order dated May 22, 2019, Liberty previously filed the *Objection of Liberty EBCP, LLC, to Memorandum Opinion and Order Dated May 2, 2019* [R 360] (the "May 2 Objection") and the *Objection of Liberty EBCP, LLC to Order Dated May 22, 2019 Regarding Fifth Motion* [R 398] (the May 22 Objection*"*), each within the fourteen day objection deadline established under Fed. R. Civ. P. 72(b)(2). Both the May 2 Objection and the May 22 Objection are set for hearing on June 18, 2019. Liberty hereby asserts its May 2 Objection and its May 22 Objection as its objections due to be filed by June 17, 2019. In the event this matter is deemed resolved as to all parties, based on the resolution reached between Liberty and the Receiver, then there would be no need for Liberty to proceed to argue its May 2 Objection and May 22 Objection. If the resolution between Liberty and the Receiver is not deemed resolved as to all parties, making the resolution between Liberty and the Receiver ineffective, then Liberty would proceed to argue its May 2 Objection and May 22 Objection.

      Respectfully Submitted,

      /s/ Jay L. Welford

      Jay L. Welford (P34471)
      Jaffe, Raitt, Heuer & Weiss, P.C.
      27777 Franklin Rd., Ste. 2500
      Southfield, MI 48034
      (248) 351-3000
      jwelford@jaffelaw.com
      *Counsel for Liberty EBCP, LLC*

Date: June 17, 2019

# EXHIBIT A

Proposed Bid Procedures (Redlined Against the Original Proposed Procedures)

[See attached]

**Sealed Bid Public Sale of Real Estate**
**Terms and Conditions**

**Property**: [_____] (the "Property")

**Description:** [_____]

**Scheduled Tour Dates**: [_____]

**Offer Due Date:** [_____]

1. <u>Seller</u>:  The Property is being sold by the Receiver for the EquityBuild Receivership Estate (the "Seller") created by that certain Order Appointing Receiver dated August 17, 2018, and entered in the action styled *U.S. Securities and Exchange Commission v. EquityBuild, Inc., et al.*, Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division (the "Receivership Court"). The Receivership Estate includes the ownership and control of [_____.]

2. <u>Offers</u>:  Good faith offers may be made on a cash basis or subject to a financing contingency, in the latter case by completing Rider A to the form Purchase And Sale Agreement to be supplied by the Seller, accompanied by a proof of funds. A good faith offer may also be submitted by credit bid in accordance with Paragraph 11, below. All offers shall be delivered to Jeffrey Baasch ("Broker"), SVN Commercial Real Estate, 940 West Adams, Suite 200, Chicago, IL 60607, *jeffrey.baasch@svn.com*, by no later than 5:00 p.m. CST on [_____] (other than offers submitted by credit bid in accordance with Paragraph 11, which shall be submitted as set forth in Paragraph 11). Offers must be transmitted to the Broker by e-mail or enclosed in a sealed envelope and delivered by U.S. mail, by nationally-recognized overnight courier, or by hand. Untimely and non-conforming offers may be rejected at the sole discretion of the Broker. The Seller strongly recommends that prospective purchasers pre-qualify for financing prior to submitting an Offer. No liability shall attach to Seller, Broker, or any other party for failure to receive or open any Offer.

3. <u>Best and Final</u>:  Although bidders are encouraged to submit their best offer, at the Seller's sole discretion, a best and final round or rounds may be conducted. In that event, the Seller will select the most competitive bids and the corresponding bidders will be invited to participate in the best and final round or rounds to be conducted by the Broker. The best and final bidding process will be conducted by telephone and email.

4. <u>Earnest Money Deposit</u>:  The winning bidder, if not a credit bidder, will be required to make an earnest money deposit in an amount equal to ten percent (10%) of the purchase price by wiring the funds to the designated title company within three (3) business days after acceptance of the Purchase and Sale

4

Agreement. The earnest money deposit shall become non-refundable at the expiration of the due diligence period (see Paragraph 6 below) and applied toward the purchase price at closing.

5. <u>Property Tours</u>: Property tours will be available to all bidders at scheduled times, and the Property may also be shown by appointment. Prospective bidders will be provided a set of bid materials, although the accuracy of the information contained in the bid materials cannot be guaranteed, and prospective bidders are therefore encouraged to complete any desired and non-invasive due diligence at their own expense.

6. <u>Due Diligence</u>: The winning bidder will be entitled to conduct a second due diligence review of the Property within ten days following acceptance of its offer and prior to closing.

7. <u>As-Is Sale</u>: The Property is being sold "as-is," with all faults, as of the closing date. Neither the Seller, the Broker, nor any of their respective agents, contractors, attorneys, officers, or directors ("Agents") makes any representation or warranty with respect to the physical condition of the Property, nor any of the personalty, fixtures, machinery, or equipment located thereon, including any warranty of merchantability or fitness for a particular purpose, or any type of other warranty, express or implied. The Seller, the Broker, and their Agents specifically disclaim any warranty, guaranty, or representation, oral or written, past or present, express or implied, concerning the physical condition of the Property or any of the personalty, fixtures, machinery, or equipment located thereon. Neither the Seller, the Broker, nor any of their respective agents possesses any authority to make any oral or written representation regarding the condition of the Property or its contents, other than as may be set forth in the Purchase and Sale Contract, and no bidder may rely upon any such oral or written representation. The bidders shall conduct their own independent physical inspections of the Property and its contents, shall be charged with full knowledge of all documents made available for inspection, and shall submit offers based solely upon their own independent judgment and conclusions and not in reliance on any information provided by the Seller, the Broker, or their respective Agents.

8. <u>Broker Participation Invited</u>: A cooperating commission will be paid to a qualified, licensed real estate broker that procures the bidder who closes on the Property, provided that (1) said cooperating real estate broker is not prohibited by law from being paid such commission and, additionally, is not a principal or affiliate of the bidder and (2) no commission shall be considered earned or payable unless the broker registers its client on the Buyer Broker Registration form prior to the client's submission of a bid. Oral registrations will not be accepted. Under no circumstances shall any commission be paid if the sale does not close.

9. <u>Closing</u>: The closing shall be held within fifteen (15) days after the Receivership Court grants the Receiver's motion to approve the sale, which motion will be filed as soon as practicable following the Seller's acceptance of the contract submitted by the winning bidder. The Property will be conveyed by receiver's deed, subject to any and all covenants, conditions, and restrictions of record, apparent and actual public utility easements, building lines, if any, encroachments of a minor nature that can be insured over by the purchaser, real estate taxes not yet due and payable, housing court proceedings, building code violations and administrative proceedings, and acts suffered or permitted by the grantee.

10. <u>Other Terms and Conditions</u>:

   a) The Closing shall remain subject to the approval of the Receivership Court.

   b) The Seller and the Broker reserve the right, in their sole and absolute discretion, to postpone or cancel the Sealed-Bid Public Sale of Real Estate with or without notice ~~or to amend or~~ <u>but Seller and the Broker may not</u> modify these Terms and Conditions prior to the submission of bids <u>absent approval of the Court</u>. To the extent of any conflict between these terms and conditions and the Purchase and Sale Agreement, the terms of the Purchase and Sale Agreement shall control.

   c) These terms and conditions do not create any legal obligation on the part of the Seller or the Broker. If the sale fails to comply with any of these terms and conditions for any reason, the Seller and the Broker shall have no liability to any unsuccessful bidder.

11. <u>Special Rules Regarding Credit Bids</u>: ~~Credit bidders are~~ <u>A lender claiming a secured interest in property subject to the Court's approved bid process (a "Credit Bid Lender") is</u> advised that ~~they~~ <u>it</u> will be required to pay, at closing, all closing costs <u>approved by the Court</u>, ~~including~~<u>which may, subject to the Court's ruling, include</u>, but not <u>be</u> limited to, title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage, ~~and any and~~ all other expenses required to be paid by the Seller at closing, ~~as well as any and~~ all amounts advanced for the benefit of the Property which are required to be reimbursed ~~by Receivership Court order and~~ <u>and/or</u> any amount required to discharge any Receiver's lien ~~approved by the Receivership Court~~. ~~The credit bidder~~ <u>Each Credit Bid Lender</u> shall use the Purchase ~~And~~ <u>and</u> Sale Agreement to convey its offer <u>(modifying such form and/or adding one or more riders as to make clear the terms of the offer),</u> and shall submit

6

along with its offer an explanation regarding the computation of the alleged payoff amount as of the date of submission of the credit bid (specifically itemizing principal, contract interest, default rate interest, fees, penalties, or other charges) ~~, even if the alleged payoff amount exceeds the amount of the credit bid. If a credit bidder has submitted a credit bid in accordance with Paragraph 2, above, and such credit bid is not the highest and best offer, then the Receiver will advise the credit bidder~~ if the credit bid includes an amount other than a portion of the principal then due to the Credit Bid Lender.  A Credit Bid Lender must provide its request to be informed of the highest bid and to participate as a Credit Bid Lender to Broker, no later than the date for offers set forth in Paragraph 2.  By requesting such information, a Credit Bid Lender is not obligated to make a credit bid.  If such request has been made, the Receiver and/or Broker will advise the Credit Bid Lender as to the amount of the highest offer received ~~if such highest offer is below the amount of the credit bidder's debt.  In that circumstance, the~~ after completion of the process set forth in Paragraph 2.  The Receiver will then allow the ~~credit bidder to improve its~~ Credit Bid Lender to submit a credit bid, to Broker, which must be at least 2% higher than the highest offer the Receiver has received through the bid process.  If a ~~new~~ credit bid is submitted, the Receiver ~~may~~ shall offer other bidders the opportunity to improve their bids, provided such new bids exceed the credit bid by at least 2%.  The process will continue until either the ~~credit bidder~~ Credit Bid Lender does not submit a credit bid above the highest offer received or another bidder does not outbid the highest credit bid.  In the event that a ~~credit bidder~~ Credit Bid Lender is selected as the winning ~~bid, the credit~~ bidder~~-~~, the Credit Bid Lender will~~-~~ be required under certain circumstances established by the Receivership Court ~~order~~, ~~be required~~ as a condition of closing~~-~~, to post an irrevocable letter of credit in the amount of the bid (minus any and all Court approved sale-related expenses) or such other amount as the Receivership Court shall determine, with time being of the essence. Additional details governing the terms and conditions of credit bids, including a good-faith estimate of the Seller's expenses at closing, will be made available by the Receiver upon request.  A Credit Bid Lender shall not be required to acquire title to the property subject to the credit bid in its own name, but, instead, in its discretion, shall have the right to assign its right to title pursuant to the credit bid to a third party, related or unrelated, prior to or in conjunction with any closing.

# EXHIBIT B

Proposed Bid Procedures (Clean Version)

[See attached]

**Sealed Bid Public Sale of Real Estate**
**Terms and Conditions**

**Property**: [_____] (the "Property")

**Description:** [_____]

**Scheduled Tour Dates**: [_____]

**Offer Due Date:** [_____]

1. Seller:  The Property is being sold by the Receiver for the EquityBuild Receivership Estate (the "Seller") created by that certain Order Appointing Receiver dated August 17, 2018, and entered in the action styled *U.S. Securities and Exchange Commission v. EquityBuild, Inc., et al.*, Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division (the "Receivership Court"). The Receivership Estate includes the ownership and control of [_____.]

2. Offers:  Good faith offers may be made on a cash basis or subject to a financing contingency, in the latter case by completing Rider A to the form Purchase And Sale Agreement to be supplied by the Seller, accompanied by a proof of funds. A good faith offer may also be submitted by credit bid in accordance with Paragraph 11, below. All offers shall be delivered to Jeffrey Baasch ("Broker"), SVN Commercial Real Estate, 940 West Adams, Suite 200, Chicago, IL 60607, *jeffrey.baasch@svn.com*, by no later than 5:00 p.m. CST on [_____] (other than offers submitted by credit bid in accordance with Paragraph 11, which shall be submitted as set forth in Paragraph 11). Offers must be transmitted to the Broker by e-mail or enclosed in a sealed envelope and delivered by U.S. mail, by nationally-recognized overnight courier, or by hand. Untimely and non-conforming offers may be rejected at the sole discretion of the Broker. The Seller strongly recommends that prospective purchasers pre-qualify for financing prior to submitting an Offer. No liability shall attach to Seller, Broker, or any other party for failure to receive or open any Offer.

3. Best and Final:  Although bidders are encouraged to submit their best offer, at the Seller's sole discretion, a best and final round or rounds may be conducted. In that event, the Seller will select the most competitive bids and the corresponding bidders will be invited to participate in the best and final round or rounds to be conducted by the Broker. The best and final bidding process will be conducted by telephone and email.

4. Earnest Money Deposit:  The winning bidder, if not a credit bidder, will be required to make an earnest money deposit in an amount equal to ten percent (10%) of the purchase price by wiring the funds to the designated title company within three (3) business days after acceptance of the Purchase and Sale

Agreement. The earnest money deposit shall become non-refundable at the expiration of the due diligence period (see Paragraph 6 below) and applied toward the purchase price at closing.

5. <u>Property Tours</u>: Property tours will be available to all bidders at scheduled times, and the Property may also be shown by appointment. Prospective bidders will be provided a set of bid materials, although the accuracy of the information contained in the bid materials cannot be guaranteed, and prospective bidders are therefore encouraged to complete any desired and non-invasive due diligence at their own expense.

6. <u>Due Diligence</u>: The winning bidder will be entitled to conduct a second due diligence review of the Property within ten days following acceptance of its offer and prior to closing.

7. <u>As-Is Sale</u>: The Property is being sold "as-is," with all faults, as of the closing date. Neither the Seller, the Broker, nor any of their respective agents, contractors, attorneys, officers, or directors ("Agents") makes any representation or warranty with respect to the physical condition of the Property, nor any of the personalty, fixtures, machinery, or equipment located thereon, including any warranty of merchantability or fitness for a particular purpose, or any type of other warranty, express or implied. The Seller, the Broker, and their Agents specifically disclaim any warranty, guaranty, or representation, oral or written, past or present, express or implied, concerning the physical condition of the Property or any of the personalty, fixtures, machinery, or equipment located thereon. Neither the Seller, the Broker, nor any of their respective agents possesses any authority to make any oral or written representation regarding the condition of the Property or its contents, other than as may be set forth in the Purchase and Sale Contract, and no bidder may rely upon any such oral or written representation. The bidders shall conduct their own independent physical inspections of the Property and its contents, shall be charged with full knowledge of all documents made available for inspection, and shall submit offers based solely upon their own independent judgment and conclusions and not in reliance on any information provided by the Seller, the Broker, or their respective Agents.

8. <u>Broker Participation Invited</u>: A cooperating commission will be paid to a qualified, licensed real estate broker that procures the bidder who closes on the Property, provided that (1) said cooperating real estate broker is not prohibited by law from being paid such commission and, additionally, is not a principal or affiliate of the bidder and (2) no commission shall be considered earned or payable unless the broker registers its client on the Buyer Broker Registration form prior to the client's submission of a bid. Oral registrations will not be accepted. Under no circumstances shall any commission be paid if the sale does not close.

9. <u>Closing</u>: The closing shall be held within fifteen (15) days after the Receivership Court grants the Receiver's motion to approve the sale, which motion will be filed as soon as practicable following the Seller's acceptance of the contract submitted by the winning bidder. The Property will be conveyed by receiver's deed, subject to any and all covenants, conditions, and restrictions of record, apparent and actual public utility easements, building lines, if any, encroachments of a minor nature that can be insured over by the purchaser, real estate taxes not yet due and payable, housing court proceedings, building code violations and administrative proceedings, and acts suffered or permitted by the grantee.

10. <u>Other Terms and Conditions</u>:

    a. The Closing shall remain subject to the approval of the Receivership Court.

    b. The Seller and the Broker reserve the right, in their sole and absolute discretion, to postpone or cancel the Sealed-Bid Public Sale of Real Estate with or without notice but Seller and the Broker may not modify these Terms and Conditions prior to the submission of bids absent approval of the Court. To the extent of any conflict between these terms and conditions and the Purchase and Sale Agreement, the terms of the Purchase and Sale Agreement shall control.

    c. These terms and conditions do not create any legal obligation on the part of the Seller or the Broker. If the sale fails to comply with any of these terms and conditions for any reason, the Seller and the Broker shall have no liability to any unsuccessful bidder.

11. <u>Special Rules Regarding Credit Bids</u>: A lender claiming a secured interest in property subject to the Court's approved bid process (a "Credit Bid Lender") is advised that it will be required to pay, at closing, all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien. Each Credit Bid Lender shall use the Purchase and Sale Agreement to convey its offer (modifying such form and/or adding one or more riders as to make clear the terms of the offer), and shall submit along with its offer an explanation regarding the computation of the alleged payoff amount as of the date of submission of the credit bid

(specifically itemizing principal, contract interest, default rate interest, fees, penalties, or other charges) if the credit bid includes an amount other than a portion of the principal then due to the Credit Bid Lender. A Credit Bid Lender must provide its request to be informed of the highest bid and to participate as a Credit Bid Lender to Broker, no later than the date for offers set forth in Paragraph 2. By requesting such information, a Credit Bid Lender is not obligated to make a credit bid. If such request has been made, the Receiver and/or Broker will advise the Credit Bid Lender as to the amount of the highest offer received after completion of the process set forth in Paragraph 2. The Receiver will then allow the Credit Bid Lender to submit a credit bid, to Broker, which must be at least 2% higher than the highest offer the Receiver has received through the bid process. If a credit bid is submitted, the Receiver shall offer other bidders the opportunity to improve their bids, provided such new bids exceed the credit bid by at least 2%. The process will continue until either the Credit Bid Lender does not submit a credit bid above the highest offer received or another bidder does not outbid the highest credit bid. In the event that a Credit Bid Lender is selected as the winning bidder, the Credit Bid Lender will be required under certain circumstances established by the Receivership Court, as a condition of closing, to post an irrevocable letter of credit in the amount of the bid (minus any and all Court approved sale-related expenses) or such other amount as the Receivership Court shall determine, with time being of the essence. Additional details governing the terms and conditions of credit bids, including a good-faith estimate of the Seller's expenses at closing, will be made available by the Receiver upon request. A Credit Bid Lender shall not be required to acquire title to the property subject to the credit bid in its own name, but, instead, in its discretion, shall have the right to assign its right to title pursuant to the credit bid to a third party, related or unrelated, prior to or in conjunction with any closing.

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 17, 2019, I provided service of the foregoing *Notification of Liberty EBCP, LLC Regarding Status of Negotiations with the Receiver Regarding Bid Procedures* via ECF filing to all counsel of record, and via electronic mail or U.S. mail to the following individuals and entities:

Jerome and Patricia Cohen
1050 8th Avenue N.
Naples, FL 34102
jerryc@reagan.com
*Defendant*

First Bank
Client Contact Center
600 James S. McDonnell Blvd.
St. Louis, MO 63042

                                            /s/ Jay L. Welford

                                            Jay L. Welford (P34471)
                                            Jaffe, Raitt, Heuer & Weiss, P.C.
                                            27777 Franklin Rd., Ste. 2500
                                            Southfield, MI 48034
                                            (248) 351-3000
                                            jwelford@jaffelaw.com
                                            *Counsel for Liberty EBCP, LLC*