UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN<br><br>Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

**OBJECTIONS OF CERTAIN MORTGAGEES TO RECEIVER'S FIRST INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The following mortgagees (collectively, "Mortgagees", and each individually a "Mortgagee") respectfully submit this Objection ("Objection") to the Receiver's First Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals ("Fee Application") [Dkt. 411]: (1) Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; (2) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; (3) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; (4) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; (5) Wilmington Trust, National Association, as Trustee for the Registered Holders of

Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; (6) Federal National Mortgage Association ("Fannie Mae"); (7) Federal Home Loan Mortgage Corporation ("Freddie Mac"); (8) UBS AG; (9) BMO Harris Bank N.A.; and (10) BC57, LLC.  In support of the Objections, the Mortgagees state as follows:

## INTRODUCTION

On August 15, 2018, the U.S. Securities and Exchange Commission filed a securities fraud complaint against EquityBuild, Inc., Equitybuild Finance, LLC, Jerome Cohen, and Shaun Cohen (collectively, "Receivership Defendants").   On August 17, 2018, the Court appointed Kevin B. Duff as the equity receiver ("Receiver") over the estates of the Receivership Defendants ("Receivership Estate").

Despite this Court's order appointing the Receiver [Dkt. 16] ("Receiver Order") and directing the Receiver to file quarterly fee applications (*see* Receiver Order at ¶70), the Receiver elected to wait nearly nine months after his appointment to file his first Fee Application – in clear derogation and violation of the Receiver Order.  Indeed, the Receiver never sought leave from this Court to excuse a tardy filing.  To make matters worse, the first Fee Application only covers the first forty-five (45) days (August 17, 2018 through September 30, 2018) of the Receiver's over ten-month tenure.  This means that there are still several quarterly fee applications that are grossly overdue and have yet to be filed, leaving both the Court and the parties in the dark about what legal fees have accrued – and continue to accrue – during the pendency of this matter.  Such dereliction of duties is inexcusable, particularly given the express provisions of this Court's order.

At the outset and as an overarching matter, the Fee Application highlights the clear and undeniable fact that this receivership is insolvent and should not be continued.  Moreover, the Fee Application flies in the face of established law and prior Court orders requiring the Receiver to

2

restore rents to the Mortgagees and other creditors. At a minimum, the Court should not approve the Fee Application, which is over 192 pages in length and contains approximately 1,000 professional fee time descriptions, until all interested parties have had a chance to receive notice and to thoroughly review the Fee Application.

## ARGUMENT

**I.     THE RECEIVERSHIP ESTATE IS INSOLVENT.**

The Fee Application requests approval of a total of $413,298.44 in fees for a ***45-day period***, $96,681.00 of which goes to the Receiver personally and $273,678.94 of which goes to the Receiver's law firm. The Receiver admits the Receivership Estate had only $210,134.04 cash on hand at the end of this 45-day time period. *See* Fee Application, p. 5. The costs to operate this receivership grossly outweigh the receivership's capital and the possibility of any benefit to the interested parties. This point was also illustrated in the Receiver's Second Status Report ("Second Status Report") [Dkt. 258] filed February 28, 2019 in which the Receiver estimated the Receivership Estate incurred approximately $994,132.62 in fees and expenses through December 31, 2018, but yet only had $307,345.37 cash on hand as of December 31, 2018. If the Receiver included all fees and expenses through December 31, 2018 in his Fee Application (as required by the Order Appointing Receiver [Dkt. 16]), then ***the Receiver and his professional's fees would have accounted for over two-thirds of the entire cash on hand as of May 24, 2019***[1]. This does not even account for the additional fees and costs the Receivership Estate has incurred from January 1, 2019 to present. Basic arithmetic illustrates the gross insolvency of this receivership. This begs the questions why such a grossly insolvent receivership was commenced in the first instance and why it has been allowed to continue, as it is not in the best interests of <u>all</u> parties in

---

[1] The cash on hand as of May 24, 2019 was $1,471,491.86. *See* Fee Application, p. 5, n. 1.

3

interest.  Rather than allowing the parties to exercise their rights in state court proceedings and to litigate as appropriate, the Receiver has materially reduced estate assets with no appreciable benefit to the Receivership Estate.  This point has been made throughout the receivership.  To the extent a property lacks equity and merely serves as a financial drain on the estate (rather than providing recoverable assets), such property should not be administered by the Receiver.  It only forces viable properties with equity to prop up woefully deficient and financial burdensome properties that could have easily been litigated in foreclosure court on a property by property basis by the relative stakeholders without the need for the current crushing administrative overlay and expense.  Indeed, this is axiomatic in a chapter 7 bankruptcy case.  A chapter 7 trustee files a "no asset" report when there are no assets to be provided to unsecured creditors.  Moreover, a chapter 7 trustee does not administer estate assets for the benefit of secured creditors or simply for the sake of administering assets even though there will never be any recovery from those assets.

This Court should consider if the purposes for which this receivership has been filed can still be achieved. *S.E.C. v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1275 (D. Utah 2009) ("[A] receivership must be monitored to ensure it is still serving the function for which it was created.").  The Fee Application illustrates that the majority of any "equity" in the Receivership Estate will be depleted by the Receiver and his professionals' fees, leaving little remaining equity to compensate the parties for whom the receivership was commenced.  Moreover, the sale of real property, the predominate asset of the Receivership Estate, will generate little to no equity for the Receivership Estate because the majority of these assets are encumbered by mortgages that must be satisfied.

The Fee Application further highlights the issue raised by the Mortgagees and other creditors since inception—the Receiver must abandon non-performing properties in the

4

Receivership Estate. Keeping non-performing properties in the estate does nothing but run up fees and costs. Abandoning non-performing properties will free up significant funds previously used to maintain these properties with no return. Further, abandoning non-performing properties would allow a Mortgagee to pursue its own remedies against the property, and address any priority issues that may arise in a separate proceeding, thus eliminating the need to expend Receiver resources or the already limited funds in the Receivership Estate.

Recently, the Court issued a *Memorandum Report and Recommendation* [Dkt. 311] on the Receiver's motion to approve the sale of certain real estate, in which the Court urged the Receiver to "explore ways to stop the accrual of fees, costs, and interest." (Memo. Report and Rec. at 7 n.2.) The Fee Application highlights more now than ever the need to abandon non-performing properties and to rein in the Receiver and his actions. *See In re Cult Awareness Network, Inc.*, 205 B.R. 575, 580 (Bankr. N. D. Ill. 1997) ("Courts do not want to encourage a Trustee to keep burdensome or valueless property in an estate to increase the amount of fees paid to the Trustee and to the various administrative representatives of the Trustee.").

II. **THE RECEIVER MUST RESTORE RENTS TO THE CREDITORS PRIOR TO RECEIVING COMPENSATION AND SHOULD BE REQUIRED TO MAKE PRINCIPAL AND INTEREST PAYMENTS BEFORE BEING COMPENSATED.**

The Fee Application - and the related payment of the Receiver and his professionals' fees – seeks to prime the Mortgagees' security interests – without pointing out to this Court this priming lien request or even providing a detailed analysis how such payment is authorized under the circumstances. As this Court has properly held, the Receiver takes property subject to all liens, and neither the Receiver nor the Court has the authority to extinguish a creditor's pre-existing state law security interest. *See* Memorandum Report and Recommendation [Dkt. 311] (stating "a court does not have the authority to extinguish a creditor's pre-existing state law security interest" and

5

clarifying the issue by stating "[t]o be sure, a receiver appointed by the federal court takes property subject to all liens, properties, or privileges existing or accruing under the laws of the state.") (internal citation omitted); *See also* Magistrate Kim's Memorandum Opinion and Order, pp. 9-10 [Dkt. 352] (reaffirming the foregoing rulings). Payment of the $413,298.44 in fees allows the Receiver to effectively trump the Mortgagees' security interests by putting the Receiver and his professionals in a preferred lien position.

On February 13, 2019, the Court ordered the Receiver to restore to the Mortgagees monies diverted from the Mortgagees' properties to the Receiver's general operating account. *See* Memorandum Opinion and Order, p. 9 [Dkt. 223]. To date, the Receiver has not restored any monies as required by the Court's order. Allowing payment of the Receiver's fees now, without restoration of the rents or even the payment of principal and interest payments where sufficient rents are available, would allow the Receiver to effectively take a preferred and senior position to the Mortgagees' securities interests. Such an outcome is contrary to both this Court's prior rulings and law. *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003) (a receiver "stands in the shoes" of the receivership defendants and "acquires no greater rights in the property" than the receivership defendants.); *S.E.C. v. Credit Bankcorp, Ltd.*, 386 F.3d 438 (2d Cir. 2004) (stating a receiver "takes the property subject to all liens, priorities, or privileges existing or accruing under the laws of the state."); *see also Marshall v. People of New York*, 254 U.S. 380, 385 (1920). Put simply, the rents must be restored before payment is made to the Receiver and his professionals because the Receiver is subject to the Mortgagees' security interest and this Court has previously ordered the Receiver to restore these rents.

6

4850-9057-5258.4

### III. THE FEE APPLICATION FAILS TO COMPLY WITH THE RECEIVER ORDER AND THE BILLING INSTRUCTIONS.

The Receiver Order states the Fee Application may be subject to a 20% holdback. The fees requested in the Fee Application should be subject to the 20% holdback given the insolvency of the Receivership Estate and lack of liquidity. The Fee Application is only for a 45-day period (August 17, 2018 through September 30, 2018) and does not account for the requisite time period. The Receiver Order **_mandates_** that the Receiver file _quarterly_ fee applications. Two full calendar quarters have lapsed since the Receiver's appointment and the Receiver has only just filed his first Fee Application and it only accounts for a 45-day period. The Receiver's total disregard for court orders and statutorily requirements cannot be countenanced. Finally, the Fee Application fails to contain a separate narrative for each project category as required by the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission.

The parties further object to the extent efforts by professionals are unreasonable, duplicative, or provide no appreciable value to the Receivership Estate. Under Local Rule 66.1, receivership estates are to be administered similarly to bankruptcy cases. In bankruptcy cases, courts evaluate whether the services provided were "actual and necessary." _See, In re Wildman_, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987). Professionals retained by a bankruptcy estate (and, by extrapolation, a receivership estate) should avoid routinely recording time under 0.2 hours for things like phone calls and reviewing emails. _Id._ at 708-9. "Attorneys should work independently, without the incessant 'conferring' that so often forms a major part of many fee petitions." _Id._ at 709. Similarly, "[s]enior partner rates will be paid only for work that warrants the attention of a senior partner," and "non-legal work performed by a lawyer which should have been performed by less costly non-legal employees should command a lesser rate." _Id._

7

Here, the billing statements attached as exhibits to the Fee Application demonstrate numerous instances in which the Receivership Estate was charged for 0.1 hours of telephone calls and email correspondence, duplicative efforts, work that could and should have been performed by staff (i.e., overhead), or substantial time in "office conferences" with inadequate detail regarding their contents:

- Numerous RDAPK professionals routinely charged the Receivership Estate for 0.1-0.2 hours for correspondence, emails, and phone calls. For example, on August 20, 2018, Ania Watychowicz charged the Receivership Estate up to **1.3 hours** to review and send emails, faxes, and make copies. Similarly, on August 24, Marion Adler charge the Receivership Estate for a series of phone calls and emails (billed between .1-.2 hours each), adding up to .5 hours.

- The Receiver appeared to make a habit of having multiple "office conferences" throughout the day on a daily basis. For example, from August 20-27, the Receiver's time entries evidence that *multiple* "office conferences" with various professionals from RDAPK were a *daily* occurrence. The Fee Application fails to explain why so many "office conferences" with numerous RDAPK professionals were necessary on a daily basis over the course of several months. (*See, generally*, Rec's Aug. 2018 Billing Stmt.)

- Not only do the time entries themselves fail to demonstrate what value is being provided by so many "conferences," the discrepancies in the time entries of those purportedly involved in them directly undermine their materiality. For instance, on August 27, 2018, the Receiver recorded no less than 2.4 hours of conferences with Andrew Porter and Nicole Mirjanich. (*See* Rec's Aug. 2018 Billing Stmt. at 7.) Meanwhile, Mr. Porter inconsistently recorded, for the same day, only 1.8 hours of conferences with the Receiver and Ms. Mirjanich. (*See* RDAPK's Aug. 2018 Billing Stmt. at 8.) Meanwhile Ms. Mirjanich's time entries show no evidence of any conference with either the Receiver or Mr. Porter for that day.

- RDAPK's Billing Statements also evidence attorneys performing administrative tasks/non-legal work, which could and should have been handled by assistants (i.e., overhead) or paralegals. For example, on August 20, 2018, Ellen Duff, Of Counsel, billed the Receivership Estate 1.2 hours to look up addresses for notice purposes. (*See* RDAPK's Aug. 2018 Billing Stmt. at 3.)

- Similarly, it appears that paralegals have been charging the Receivership Estate for tasks that an assistant should perform. On August 20, 2018, Ania Watychowicz charged the Receivership Estate to send faxes and make copies of documents—tasks which should have been handled by an assistant or office staff at no cost to the Receivership Estate. (*See* RDAPK's Aug. 2018 Billing Stmt. at 4.)

- RDAPK's Billing Statements also evidence duplicative efforts by professionals across the board. On August 23, 2018, a partner, of counsel, paralegal, and a legal assistant all worked on the same task: contacting clerks to confirm local procedures for filing documents. (*See* RDAPK's Aug. 2018 Billing Stmt. at 6.) Not only are such duplicative efforts unwarranted, the fact that a partner (at $390 per hour) charged the Receivership Estate for the same task that was also being handled by a legal assistant (at $110 per hour) is clearly improper.

The Mortgagees did not expend resources conducting a comprehensive review of the Billing Statements. The deficiencies noted above were identified after a review of just *a few weeks* of time entries. These issues seriously draw into question whether all of the services described in the Fee Application were, in fact, "actual and necessary" for the Receivership Estate.

## CONCLUSION

In sum, the Mortgagees object to the Fee Application for the reasons set forth herein and request that: (a) the receivership be dissolved because it is grossly insolvent as evidenced by the accrued fees; (b) the Receiver be directed to abandon non-performing properties; (c) the monies diverted from the Mortgagees' properties be restored before payment of any of the fees in the Fee Application and that the mortgages receive principal and interest payments before any payment to professionals in the Fee Application, as the Receiver has made no legal showing for any kind of priming lien; (d) the hearing on the Fee Application is delayed until all interested parties have had an opportunity to review and respond; (e) the fees in the Fee Application be subject to a 20% holdback; (f) duplicative and unreasonable entries that provide no value to the estate are reduced; and (f) the Receiver be compelled to file all outstanding fee applications within the next 60 days.

Dated: July 3, 2019                  Respectfully submitted,

/s/ Mark Landman
Mark Landman (mlandman@lcbf.com)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271
Ph: (212) 238-4800

/s/ Jill L. Nicholson
Jill Nicholson (jnicholson@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 N. Clark St., Ste. 2800
Chicago, IL 60654

9

Fax: (212) 238-4848
*Counsel for Freddie Mac*

/s/ James P. Sullivan
James P. Sullivan (jsulliva@chapman.com)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Ph: (312)845-3445
Fax: (312)516-1445
*Counsel for BMO Harris Bank N.A.*

/s/ James M. Crowley
James M. Crowley (jcrowley@plunkettcooney.com)
Plunkett Cooney, PC
221 N. LaSalle Street, Ste. 1550
Chicago, IL 60601
Ph: (312) 970-3410
Fax: (248) 901-4040
*Counsel for UBS AG*

/s/ Joseph R. Sgroi
Joseph R. Sgroi (jsgroi@honigman.com)
Scott B. Kitei (skitei@honigman.com)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Ph: (313) 465-7570
Fax: (313) 465-7571
*Counsel for BC57, LLC*

Ph: (312) 832-4500
Fax: (312) 644-7528
*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; and Fannie Mae*

10

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 3, 2019, I provided service of the foregoing **Objections of Certain Mortgagees to Receiver's First Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals**, via ECF filing to all counsel of record, and via U.S. mail to the following individuals and entities:

Jerome and Patricia Cohen
1050 8th Avenue N.
Naples, FL 34102
Defendant

First Bank
Client Contact Center
600 James S. McDonnell Blvd.
St. Louis, MO 63042

                                                /s/ Jill L. Nicholson
                                                Jill Nicholson (jnicholson@foley.com)
                                                Andrew T. McClain (amcclain@foley.com)
                                                Foley & Lardner LLP
                                                321 N. Clark St., Ste. 2800
                                                Chicago, IL 60654
                                                Ph: (312) 832-4500
                                                Fax: (312) 644-7528
                                                *Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington*

11

*Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; and Fannie Mae*