UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| U.S. SECURITIES AND EXCHANGE COMMISSION, | ) ) | |
| | ) | Civil Action No. 18-CV-5587 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Judge Hon. John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendants, | ) | |
| | ) | |

DEFENDANTS RESPONSE TO THE HONORABLE JUDGE KIM'S MINUTE ENTRY DOCUMENT NO. 448

Jerome H. Cohen ("Defendant") respectfully files this Response ("Response") TO THE HONORABLE JUDGE KIM'S MINUTE ENTRY DOCUMENT NO. 448. In support of its Response, the Defendant states as follows:

**BACKGROUND**

The Court has required the Defendant to file an answer explaining why he did not appear at the July 10th, 2019 Evidentiary Hearing.

The Defendant submits the following response.

The Evidentiary hearing was scheduled in response to the original motion of the Receiver asking the Court to transfer a Naples house and a joint personal bank account ending in 3641 to the Receivership estate and the subsequent series of responses and sur responses filed in support or opposition of the Receiver's original motion. The evidentiary hearing was scheduled to

1

facilitate the opposing sides presentation of evidence and testimony. The purpose of the presentation of evidence and testimony was to persuade the Court to recommend a finding either for or against the Receiver's original motion to the presiding Judge. The Court's order scheduling the hearing included an order for each side to submit a list of witnesses and exhibits they may use in their effort to persuade the Court to find in their favor. A finding in favor of the Receiver and against the Defendant meant the Court would recommend the presiding Judge approve the transfer of the Naples house and the joint personal bank account to the Receivership estate. In response to the submission of the Receiver's list of witnesses and evidence which included the introduction of a new case entitled SEC v. Slowinski, the Defendant twice asked the Court to disallow the introduction of the new case and the submission of any supporting exhibits and testimony and to grant a continuance. The grounds for these requests were laid out in the Defendant's motions. The Court is well aware the Defendant is a lay person/pro se litigant having no legal education, training, practice or experience and having no resources to rely on aside from himself and his own time and labor to read, understand and respond to all motions, documents, exhibits and testimony and to generate his own motions, exhibits and witnesses to accomplish the refutation of claims made against him and to prove his own claims and conclusions. There is an enormous disportionality in terms of education, training, experience and resources favoring the Receiver and the SEC that the Defendant can only hope to diminish by investing time. The Defendant also argued that the introduction of the new case was for the purpose of prejudicing the Court. Evidence illustrating this is that the SEC stated it had no intention of introducing any exhibits or testimony and submitted the case only to make the Court aware the case exists. The Court might have responded by either granting the motion to disallow

the introduction of the case or granting the Defendant the appropriate time needed to properly

respond to and refute all aspects of the case the Defendant's research may have shown had any

relevance to the potential finding of the Court. The Court did not find sufficient merit in this

argument and twice denied both the motion to strike/disallow the introduction of the new case

and the motion for continuance. The consequence of the Court's denials was that without

additional time, the Defendant could not produce the exhibits and witness testimony to refute

SEC and Receiver's claims and conclusions and to prove his own claims and conclusions.

Therefore, the Defendant was convinced the Court's inevitable finding would be against the

Defendant whether he attended the hearing or not. Still, this was not the ultimate reason the

Defendant did not appear.

There have been repeated attempts undertaken by the Defendant and/or his wife to settle

this matter and offers and counteroffers have been exchanged on numerous occasions. In the

weeks leading up to the Evidentiary hearing, the Defendant's wife contacted the Receiver's

counsel asking to reopen negotiations and informing counsel that she was seeking only enough

time and money to facilitate the practical requirements of finding and paying for a suitable house

to rent and for packing up personal belongings and relocating and leaving the Naples house

broom clean. The Defendant's wife specified financial terms of $20,000 paid upon court

approval and $20,000 paid upon delivery of possession of the house and timeline terms of

delivery of the house by no later than 8/31/2019. At the very end of the week before the

Evidentiary hearing, the Receiver transmitted his counter proposal which was not seen by the

Defendant's wife because of religious observance until late the following Monday. The counter

proposal contained only one condition that the Defendant and his wife could not agree to as

written because agreeing to it would be in conflict with religious law. However, the change the language needed to bring it into conformity with religious law was minor requiring only the elimination of nighttime entry on one particular night and an adjustment of 3 hours the day before and the Receiver could have no justifiable reason for not agreeing to this minor change the impact on his interest of which would be negligible and the Defendant and his wife were firmly convinced an agreement was inevitable and the matter would be settled and no court appearance would be needed. They were further convinced an agreement was inevitable because it was clear the interest of the Receivership estate was best served by this agreement since it was far less costly to the estate than the current and inevitable future litigation of this matter is and will be. The Defendant and his wife fully expected the next transmission from the Receiver would be the draft agreement they could sign and the matter would be resolved. Late in the day of July 9, 2019, the transmission of the Receiver's draft agreement was received. Rather than the minor change in language anticipated, the draft counter was accompanied by terse language and a radical change in every meaningful term and condition such that signing it would have left the Defendant and his wife much worse off than not signing it. It was then clear just how wrong the Defendant and his wife had been in believing they were in a good faith negotiation that was certain to succeed and resolve this matter. For reasons unfathomable by the Defendant and his wife, the Receiver delivered this unsignable demand late on the day before the hearing. Until that moment, the Defendant and his wife proceeded with total confidence the matter was about to be resolved. The Defendant has advised the Receiver on the boundaries and requirements of this religious obligation a number of times in the past and so had every reason to believe the simple

adjustment required would be accomodated. By the time the Receiver transmitted his radical revision, the trip to the hearing was logistically infeasible and prohibitively expensive.

At this writing, the Defendant's wife still desires to settle this matter for reasons of principle and to relieve the stress on her and consuming focus by her this litigation causes and demands. The settlement is a practical necessity to provide her with the means and time to move out of the house. The settlement is best for the Estate since it would save the estate a lot of money by ending the ongoing cost of litigation and save the Court's and Government's time and resources and put the question of the disposition of these assets to rest.  The Defendant's wife remains willing to quickly and amicably settle this matter and sees no reason the Estate should accrue the extraordinary and unnecessary expense of continuing to litigate a matter that can be quickly settled.

July 17th, 2019

Respectfully submitted,

DEFENDANT JEROME H. COHEN

By:
      Jerome H. Cohen

      _____

5

## CERTIFICATE OF SERVICE

I hereby certify that on July 17th, 2019, a copy of the foregoing **TO THE HONORABLE JUDGE KIM'S MINUTE ENTRY DOCUMENT No. 448** was served by filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.


_____

Shaun D. Cohen


_____

Jerome H. Cohen

6