UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Hon. John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) ) | |

RECEIVER'S FOURTH STATUS REPORT
(Second Quarter 2019)

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen as defined in the Order Appointing Receiver (Docket No. 16) and Order granting the Receiver's Motion to Amend and Clarify Order Appointing Receiver to Specifically Identify Additional Known Receivership Defendants (Docket No. 290) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court entered on August 17, 2018, respectfully submits this Fourth Status Report for the quarter ending June 30, 2019.

I.      SUMMARY OF THE OPERATIONS OF THE RECEIVER

The Receiver, together with his legal counsel, Rachlis Duff Peel & Kaplan, LLC ("RDPK"), accountants BrookWeiner, LLC ("BrookWeiner") and Whitley Penn LLP ("Whitley Penn"), forensic consultant Prometheum Technologies, Inc. ("Prometheum"), asset management

and real estate brokerage services provider SVN Chicago Commercial, LLC ("SVN"), and property tax appeal counsel Lauren D.W. Tatar, Esq., have undertaken, without limitation, the following activities since the filing of his Third Status Report (Docket No. 348, filed April 30, 2019):

a.     <u>Identification and Preservation of Assets</u>

Since the filing of his Third Status Report, the Receiver continued using reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all profits, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly.

There are 115 properties in the Receivership Estate, including 114 properties in Chicago, one in Houston, and not counting properties in Naples, Florida and Plano, Texas that the Defendants have used at times as residences. The Receiver's primary focus has been and continues to be the preservation, operation, maintenance, and sale of the real estate properties within the Receivership Estate.  These properties hold substantial value, which the Receiver estimates exceeds $80 million.  Preserving that value has required, and will continue to require, significant property management efforts and a deliberate approach to liquidating them.

From its inception, the Receivership Estate faced liquidity problems due in large measure to the state of affairs that led to the lawsuit being filed against the Defendants.  Assets seized by the Receiver and rental income from the properties continue to provide only a limited degree of liquidity to preserve, maintain, and operate the Receivership Estate's real estate properties. There are properties in the Receivership Estate that do not have enough operating income to

cover all of their expenses, including for example to meet health and safety needs, to comply with state court orders, to avoid being lost to tax sales, or to address other exigencies, thereby creating some immediate cash shortages.

The Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, worked to improve understanding and planning for cash flow needs for underperforming properties, and controlling expenditures where possible. To that end, the Receiver and his counsel regularly have communicated with property managers relating to necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions. The Receiver and his retained professionals have reviewed monthly financial reporting and analyzing the cash position of the Estate. The Receiver has communicated regularly with his real estate broker regarding prioritization of expenses and repairs on the properties. Consistent with the Liquidation Plan he filed with the Court (Docket No. 166), the Receiver remains committed, in accordance with the advice of his retained professionals, the property managers, and asset management consultants, and subject to availability of necessary funds, to undertake capital improvements that are needed to address health and safety issues and cure outstanding building code violations or that are demonstrably capable of yielding increases in occupancy that would drive commensurate increases in property value.

Prior to the inception of the Receivership, a number of the properties in the Receivership Estate were delinquent in the payment of 2017 Cook County property taxes. Since that time, the Receiver has worked to pay delinquent real estate taxes when possible. In the first instance, the Receiver has looked to the properties themselves to determine whether they have generated sufficient net operating income in order to pay taxes due. There are some properties for which

the institutional lenders are holding funds in reserves for real estate taxes or for other purposes. For certain of these properties that were unable to pay their own taxes, the Receiver has requested the cooperation of the institutional lenders with respect to payment of real estate taxes. In some cases, the Receiver has paid the real estate taxes out of funds in the Receivership Account, giving priority to circumstances in which such a payment is necessary to avoid a property becoming subject to a tax sale.

At the end of the first quarter of 2019, twenty-four properties were delinquent in the payment of 2017 real estate taxes in the collective amount of $406,428.05. In the second quarter of 2019, all delinquent property taxes for 2017 were paid before the deadline after which properties would have become eligible for tax sale. In addition to amounts paid out of operating accounts held by the property managers (for properties with sufficient balances from net operating income), the Receiver paid $230,628.07 from the Receivership Account towards delinquent 2017 property taxes. (*See* **Exhibit 1** Schedule of Receipts and Disbursements, n. 4 (Schedule of 2017 Property Taxes Paid by Receivership Account.))[1]

The Receiver also has made significant payments for 2018 property taxes. As of July 19, 2019, $470,298.72 was paid towards the first installment and $354,758.60 was paid towards the second installment. The outstanding balance for remaining 2018 property taxes on the portfolio was $723,315.94 as of July 19, 2019. (Attached as **Exhibit 2** is a spreadsheet that includes 2018 property taxes on a property-by-property basis as of July 19, 2019.)[2]

---

[1] The Receiver intends to request that funds paid out of the Receivership Account to advance real estate taxes for any properties be reimbursed to the Receivership Account out of sales proceeds when the properties are sold.

[2] On July 24, 2019, property taxes were paid on the following properties: 7109 S. Calumet ($6,982.91), 6751 S. Merrill ($10,159.98), 5618 S. Martin Luther King Drive ($11,711.97), and 6558 S. Vernon ($7,858.59)

Additionally, the Receiver's property tax appeal counsel, Lauren D.W. Tatar, Esq., pursued property tax appeals on 16 properties and achieved reductions in assessed values on a number of the properties in the Receivership Estate, translating to approximately $34,908.38 in projected savings on 2018 property tax liability.[3] (Attached as **Exhibit 3** is a chart of projected savings on 2018 property tax liability)

With respect to the property at 1102 Bingham Street, Houston, TX 77007, which had delinquent taxes of $67,247.76, the Receiver negotiated a partial payment agreement whereby $5,603.98 will be paid monthly for twelve months, beginning on May 31, 2019 with the last payment to be made on April 30, 2020.

The Receiver is maintaining casualty and liability insurance for all assets in the portfolio. The Receiver and his counsel worked with the insurance broker regarding the renewal and replacement of property insurance and liability and umbrella coverage in May 2019. The down payment cost for these insurance renewals was $230,082.80. The monthly installments are currently $41,599.90 and, as properties are sold over time, the monthly costs will be gradually reduced. The Receiver and his counsel also worked with the insurance broker to obtain updated records regarding claims history and pending claims, and addressed certain adjuster inquiries relating to pending claims.

With respect to outstanding water bills, which the Receiver had addressed in the Third Status Report (Docket No. 348 at 21), the Receiver's counsel remained in frequent communication with the City of Chicago during the second quarter of 2019, working to avoid interruptions in service for the delinquent buildings, and met with several attorneys and others

---

[3] Pursuant to the Receiver's contingent fee agreement with his property tax appeal counsel, the Receiver must pay a contingent fee of $3,490.84 (10% of the property tax savings). The Receiver intends on including these professional fees in the fee application covering the Fourth Quarter of 2018.

from the City's finance and water department relating to these accounts. In connection with those efforts, the Receiver's counsel negotiated payment plans to avoid shutoffs for properties with past due balances, pursuant to which the Receiver has been making timely payments on water bills.

A substantial number of properties in the portfolio have code violations that involve conditions pre-existing the establishment of the Receivership. The Receiver and his counsel continue to work closely with the City's corporation counsel for each department (circuit court, buildings, and streets and sanitation) to address all open building code violations, to address life and safety issues, and to preserve the respective properties. The property managers have also been assisting in the defense of a thicket of administrative and housing court actions alleging building code violations of widely varying levels of severity filed by the City of Chicago. The Receiver's counsel appeared on City of Chicago related matters on thirteen occasions during the second quarter 2019. As of June 30, 2019, there were approximately 38 known open code violations involving City of Chicago matters.

During this time period, there were nine known City of Chicago municipal housing court matters. Issues raised in these matters included but are not limited to:

- Replacement of a California-style porch at 8107 S. Ellis and demolition of the same at 7760 S. Coles for which the Receiver paid $24,250 for the required work during the second quarter of 2019. As for the porch at 7760 S. Coles, the demolition and clean up were completed in early June 2019. A porch at 8107 S. Ellis was completed and passed inspection during the third quarter of 2019.

- As stated in previous status reports, one porch replacement was completed and passed inspection at 2453 E. 75th. Other violations cited at this property included electrical work, basement clean up, and a requirement that plans and permits be obtained for work done under previous ownership. Following actions of the Receiver, his counsel, and the property manager, this housing court action was dismissed by the court without prejudice on July 18, 2019. The court's order includes a requirement that the owner must secure as built plans for the entire building by August 1, 2020.

- For the property at 7110 S. Cornell, cited violations relate to masonry and tuck-point work. The Receiver authorized installation of scaffolding to protect the sidewalk and pedestrians, which remains in place. This property is currently listed for sale.

- Three porches at 6751 S. Merrill will require repair and/or replacement. The Receiver has made interim repairs and posted signage regarding porch conditions. This property is currently listed for sale.

- For the property at 7300 S. Saint Lawrence, the Receiver authorized repair of loose bricks pursuant to a May 2, 2019 housing court order. This property also will require installation of an emergency lighting system.

- For the property at 2909-19 E. 78th, during the months of May and June 2019, the Receiver authorized completion of work in connection with the building's parapet, including minor parapet repairs, roof repairs, and cleanup. This property is currently under contract for sale.

- For the property at 7237 S. Bennett, cited violations will require bringing a basement unit that is currently not in use to compliance. The Receiver also authorized the installation of steel doors on the vacant tiers of this property to secure the building. This property is currently under contract for sale.

- During the second quarter of 2019, there also were open housing court matters with respect to the properties at 8100 S. Essex, 6160 S. King Drive, and 7933 S. Essex. These properties have since been sold.

As of June 30, 2019, approximately seventeen City of Chicago administrative proceedings filed by the City of Chicago Buildings Department were known to be pending, approximately eleven administrative proceedings were known to be pending with the Department of Streets and Sanitation, and one administrative proceeding was known to be pending with the Department of Water Debt (which was non-suited for compliance at the July 27, 2019 court date).

b.  Closings on the First Tranche of Properties

The Receiver closed on the sale of six multi-family residential apartment buildings during the second quarter of 2019. The gross sales proceeds from these six properties was $7,695,00.00

and the net sales proceeds were $6,668,396.88  In particular, the properties at 7500-06 S. Eggleston Avenue, Chicago, IL 60620 and 7549-59 S. Essex Avenue, Chicago, IL 60620 closed April 26, 2019.  Proceeds from the same of these properties (in the amount of $868,875.85 for 7500 S. Eggleston and $1,095,800.40 for 7547 S. Essex) were deposited in the Receiver's operating account.  The properties at 8100-14 S. Essex Avenue, Chicago, IL 60617 and 6160-6212 S. King Drive, Chicago, IL 60637 closed April 30, 2019.  The property at 7927-49 S. Essex Avenue, Chicago, IL 60617 closed May 1, 2019.  The property at 5001-05 S. Drexel Boulevard, Chicago, IL 60615 closed May 22, 2019.  The Receiver segregated proceeds from the sale of these properties (in the amount of $887,701.86 for 8100 S. Essex, $532,278.72 for 6160 S. King Drive, $704,568.91 for 7927-49 S. Essex, and $2,579,171.14 for 5001 S. Drexel) in separate subaccounts on a property-by-property basis.

  c.  <u>Sale of the Second and Third Tranches of Properties</u>

   During the first quarter of 2019, the Receiver sought Court approval to list 27 properties for public sale.  (Docket No. 248 at pp. 5-8)  In particular, on February 15, 2019, the Receiver sought court approval to list 12 properties for sale.  (Docket No. 228)  Certain of these properties were not encumbered with any debt, while others had EBF affiliate and/or institutional debt. Several institutional lenders objected to the Receiver's motion on myriad grounds, including that there was no opportunity to credit bid.  (Docket Nos. 232, 235, and 240)  Following a hearing on May 2, 2019, Magistrate Judge Kim granted the Receiver's sales approval motion, after sustaining one objection and affording all lenders a right to credit bid.   (Docket No. 352) Thereafter, several institutional lenders filed objections to the May 2, 2019 Order.  (Docket Nos. 359 and 362)

On April 18, 2019, the Receiver filed three more motions for Court approval to list 15 additional properties for sale. (Docket Nos. 325, 327, and 329) The Receiver also filed an amendment to these motions to account for the Court's May 2, 2019 Order allowing lenders an opportunity to credit bid.  (Docket No. 361) The institutional lenders filed objections to the Receiver's fifth motion to sell properties in which they set forth essentially the same arguments they had raised in response to the second sales process motion.  (Docket Nos. 333, 365, and 370) The Court granted the Receiver's third and fourth motions to list properties for sale, thus allowing the Receiver to list both unencumbered properties and those encumbered with EBF affiliate debt.  (Docket No. 378)  On May 22, 2019, the Court granted the Receiver's fifth motion to sell properties (which included an opportunity to credit bid) thus allowing the Receiver to list the properties encumbered with institutional lender debt.   (Docket No. 382) Additional objections were filed subsequent to May 22, 2019 (*see* Docket Nos. 398, 404, 418, and 430) and further hearings before the Court were scheduled.  Following a series of discussions, Liberty and the Receiver agreed upon certain credit bid procedures, which were later accepted by Magistrate Judge Kim as he overruled other objections pursued by the other institutional lenders.  As such, following the considerable objections, motions, and other activities initiated by the institutional lenders, the Receiver is moving forward with the sale of properties for which the Court has approved listing and incorporating into the sales procedures the credit bid procedures that the Court has approved.

In June 2019, the Receiver listed the following properties for sale: the foregoing properties are either unencumbered or encumbered with EBF affiliate debt.  Notice was published in a paper of general circulation on June 5, June 12, June 19, and June 26, 2019.  The

call for offer date was June 27, 2019 and the Receiver is currently under contract with the purchaser for each property.

- 2909-19 E. 78 Street, Chicago, IL 60649
- 701 S. 5th Avenue / 414 Walnut, Maywood, IL 60153
- 3030 E. 79th Street, Chicago, IL 60649
- 7301-09 S. Stewart Avenue, Chicago, IL 60621
- 8047-55 S. Manistee Avenue, Chicago, IL 60617
- 5955 S. Sacramento Avenue, Chicago, IL 60629
- 6001 S. Sacramento Avenue, Chicago, IL 60629
- 7237-43 S. Bennett, Chicago, IL 60649
- 7834-44 S. Ellis Avenue, Chicago, IL 60649
- 7026-42 S. Cornell Avenue, Chicago, IL 60649

In July 2019, the Receiver listed the following properties for sale: the foregoing properties are encumbered with institutional debt, and certain are also encumbered with EBF affiliate debt. Notice was published (or will be published) in a paper of general circulation on July 19, July 26, August 2, and August 9, 2019 for which the call for offer date is August 14, 2019.

- 638-40 N. Avers Avenue, Chicago, IL 60624
- 4520-26 S. Drexel Blvd, Chicago, IL 60653
- 6751-57 S Merrill Avenue, Chicago, IL 60649
- 6949-59 S. Merrill Avenue, Chicago, IL 60649
- 7109-19 S Calumet Avenue, Chicago, IL 60619
- 7110-16 S Cornell Avenue, Chicago, IL 60649
- 7450 S Luella Avenue, Chicago, IL 60649
- 7546 S Saginaw Avenue, Chicago, IL 60649
- 7600 S Kingston Avenue, Chicago, IL 60649
- 7625-33 S East End Avenue, Chicago, IL 60649
- 7635-43 S East End Avenue, Chicago, IL 60649
- 7656 S Kingston Avenue, Chicago, IL 60649
- 7748-50 S Essex Avenue, Chicago, IL 60649
- 7749 S Yates Boulevard, Chicago, IL 60649
- 7750-58 S Muskegon Avenue, Chicago, IL 60649
- 8201 S Kingston Avenue, Chicago, IL 60617
- 8326-58 S Ellis Avenue, Chicago, IL 60619

The Receiver anticipates soon filing additional motions related to the sale of other properties in the Estate, including but not limited to the single home portfolio.

    d.    <u>Notice of Appointment of Receiver</u>

The Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver continues to deliver notices to, *inter alia*, creditors, government entities, and other individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

    e.    <u>Investor Communications</u>

There are numerous ways for investors to stay informed. To ease the burden and provide basic information, the Receiver established a webpage (http://rdaplaw.net/receivership-for-equitybuild) for investors and other interested parties to obtain information and certain court filings related to the Receivership estate. A copy of this Status Report will be posted on the Receiver's webpage. The Receiver, in connection with Prometheum, is currently exploring improvements and potential ways to redesign this webpage in order to streamline information for investors and other interested parties and improve communications.

In addition, court filings and orders are also available through PACER, which is an electronic filing system used for submissions to the Court. Investors or others seeking court filings and orders can visit www.ilnd.uscourts.gov for information about accessing filings through PACER.

Beyond those avenues, the Receiver has received and responded to thousands of emails and voicemails from investors and others. He and his staff continue to respond to these communications in as timely and practicable a way as possible, but has asked investors for patience during this lengthy process because responding to individual inquiries depletes Receivership assets. The Receiver and his staff also are presently devoting substantial attention to over 2,000 submissions received as part of the claims process. The Receiver will continue to work to ensure that information is available and/or otherwise provided as quickly and completely as practicable.

      f.      <u>Control of Receivership Property and Records</u>

The Receiver has continued efforts to locate and preserve all EquityBuild property and records. Since the Third Status Report, the Receiver and his forensic consultant Prometheum worked to recover and preserve data from two additional records platforms. The Receiver, working with Prometheum, is presently maintaining three platforms of records and data.

      g.      <u>Securing Bank and Investment Accounts</u>

The Receiver notified, contacted, and conferred with the banks and other financial institutions the Receiver identified as having custody or control of funds, accounts, or other assets held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants. The Receiver is still waiting for certain institutions to provide complete information.

      h.      <u>Factual Investigation</u>

The Receiver and his retained professionals have continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild

and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, although some hard copy records); (iv) available underlying transaction documents contained in the files of former Chicago-based EquityBuild counsel received to date; and (v) files produced by former EquityBuild counsel, accountants, and employees.

The Receiver also served subpoenas on the title companies involved in EquityBuild real estate transactions, former EquityBuild attorneys or other counsel involved in EquityBuild matters, and a real estate firm, and received responsive documents from all but one of these third parties.

       i.    <u>Institutional Lenders</u>

Since filing his Third Status Report, the Receiver and his retained professionals continue to maintain regular contact with the institutional lenders to share material information relating to the properties, including information relating to marketing sales of certain properties, as well as to respond to myriad inquiries (typically, daily) including questions regarding financial reporting, property access for inspections, status of city violations, evidence of insurance, and other matters relating to the management and financial and physical condition of the various properties. As with the investors, the Receiver has attempted to streamline and reduce communications in an effort to strike a reasonable and appropriate balance between cost effectiveness and responsiveness.

During the second quarter of 2019, the Receiver, working in connection with his counsel, accountants, asset manager/real estate broker, and property managers, implemented steps in compliance with the February 13, 2019 Order regarding segregation of rents. The Receiver is providing institutional lenders with monthly accounting reports relating to rents from each property as required by the February 13, 2019 Order. To date, monthly reports with respect to 89

properties have been sent to lenders' counsel for the periods ended March 31, April 30, and May 31, 2019. Reports for each property include, for each month beginning in August 2018: (a) information about net operating income based upon reporting from the respective property managers, (b) information about expenditures made by the Receiver for the benefit of the property (primarily for insurance, real estate taxes, and funds sent to the property manager to cover expenses not covered by net operating income from the property), and (c) amounts from net rental income distributed from the property to the Receiver or to other properties, amounts contributed to the property by the receivership and by other properties, and a calculation of the amount (if any) of rentals remaining to be restored to the property under the February 13, 2019 Order. Each report is sent with a detailed explanation of the contents of the related report and the calculation of rentals to be restored. A summary of the information contained in these reports is attached as an exhibit to a recent motion filed by the Receiver regarding the use of sales proceeds for rent restoration. (Docket No. 460)

The Receiver also analyzed sources of funds available for restoration of rents to affected properties. The total amount to be restored was $767,192,75 as of February 28, 2019, and had been reduced to $618,505.64 as of May 31, 2019, amounting to more than 19% of the rent restoration amount originally due. Moreover, as of May 31, 2019, rent had been fully restored to six of the properties to which rent restoration was due. The Receiver also filed a motion seeking to use $54,102.21 in funds from a sold property (6160 S. King Drive) to restore rent. (Docket No. 460) If the Court grants this motion, the Receiver will have restored $202,789.32, which is over 26% of the total amount to be restored — and this does not include additional amounts restored since May 31, 2019, which will be reflected in subsequent reports.

Beyond these contacts, the institutional lenders have filed numerous motions that object to various activities of the Receivership, including but not limited to the process for the sale of properties and the approval of those sales. These motions have led to a significant number of hearings and appearances before the Court, and have significantly slowed the process for the sale of the properties. The institutional lenders' motions also have frequently sought to relitigate and retread issues that have already been addressed or resolved by the Court. In addition to the significant increase in costs due to legal fees occasioned by their tactics, the delay in listing and selling properties occasioned by the institutional lenders' efforts has greatly increased the costs of preserving and maintaining properties until they are sold. With those objections largely overruled, and consistent with the advice of his professionals, the Receiver is moving forward with the process for selling properties as expeditiously as possible.

     j.    <u>Other Receivership Assets</u>

As previously reported, the Receiver filed a motion to amend the Order Appointing Receiver to clarify that a property in Naples, Florida that Defendant Jerome Cohen and his spouse previously used as a home and a bank account in their names are Receivership Assets. (Docket No. 348 at 12) Cohen challenged the Receiver's position that the Naples, Florida property is a Receivership Asset. (Docket Nos. 301 and 356) The Receiver and his retained accountant conducted a forensic accounting and tracing analysis with respect to this property, determined the asset was funded with investor funds, and accordingly, filed a motion to amend the Order Appointing Receiver to expressly identify and include specific Receivership Assets, asserting therein the Naples property and a bank account in the name of Jerome Cohen and his spouse are Receivership Assets. (Docket No. 265) Following briefing on this motion, Magistrate Judge Kim held an evidentiary hearing on July 10, 2019. Jerome Cohen did not attend the

hearing. Following Jerome Cohen's filing as to his failure to attend the hearing, Judge Kim issued an order setting a further hearing on August 14, 2019 at which time Cohen is to appear to be examined by the Receiver's counsel and the Court. (Docket No. 457)

The Receiver also continues to evaluate whether certain non-Illinois properties are or should be considered Receivership Assets and thus subsumed within the Estate. These include properties that have or may have been purchased with EquityBuild investor funds. Based on evidence gathered to-date, and as stated in previous status reports, these include without limitation properties in Plano, TX, and Jackson, MS.

Shaun Cohen disclosed a life insurance policy held in trust with a cash surrender value of $100,000. The Receiver asserted the policy is an asset of the Receivership Estate. Shaun Cohen's position is the policy is outside the Receivership Estate. Jerome Cohen also has a life insurance policy but has failed to cooperate with the Receiver and provide information in regards to that asset.

k.    Open Litigation

During the second quarter 2019, the Receiver – working with his counsel and EquityBuild's counsel – completed written discovery responses in the matter captioned *Byrd v. EquityBuild, et al.,* Case No. 18 L 973, Circuit Court of Cook County, Law Division.

l.    Tax Issues

With respect to tax implications relating to the Defendants' scheme, the Receiver cannot advise the investors on tax matters and informed investors accordingly by the letter sent on September 21, 2018. Moreover, the Receiver and his retained professionals do not plan to issue 1099-INT's. With respect to valuation, loss, or other tax issues, investors and their tax advisors may wish to seek independent tax advice and consider IRS Rev. Proc. 2009-20 and IRS

Rev. Rul. 2009-9. For 2018 tax returns, investors and their tax advisors may wish to consult Page 6 of the instructions to Form 4684.

Whitley Penn was retained to prepare income tax returns for EquityBuild and its affiliates for the tax years 2016 and 2017. Whitley Penn continues to report that its efforts have been significantly challenged by EquityBuild's information and record keeping practices. Whitley Penn has stated that it is working to obtain documents and information in order to prepare and file what it presently anticipates as 32 tax returns.[4] Twelve entities were previously classified as having an undetermined tax filing status but based on further information from former EquityBuild employees, Whitley Penn determined these entities do not have a filing requirement.[5] As to the entities for which a return is being prepared, Whitley Penn has compiled income and expense reports for a majority of the entities. Whitley Penn states that there are numerous missing items needed to accurately report balance sheet activity for these entities, and the Receiver is actively working to attempt to provide that information. Whitley Penn expects returns for those entities in which complete data is available to be filed by August 30, 2019.

---

[4] These thirty two entities are 11318 S Church St Associates, 1401 W 109th Associates, 1516 E 85th Pl Associates, 4750 Indiana LLC, 4755 S Saint Lawrence Associates, 526 W 78th LLC, 6759 S Indiana Associates, 6807 S Indiana Associates, 8809 S Wood Associates, 1700 W Juneway LLC, 4533-37 S Calumet LLC, 5450 S Indiana LLC, 7749-59 S Yates LLC, South Side Development Fund 1 LLC, South Side Development Fund 4 LLC, South Side Development Fund 5 LLC, SSDF1 Holdco 2 LLC, SSDF2 Holdco 3 LLC, SSDF3 Holdco 1, SSDF4 Holdco 1 LLC, SSDF4 Holdco 2 LLC, SSDF4 Holdco 3 LLC, SSPH Portfolio 1 LLC, Equitybuild Inc., 3400 Newkirk LLC, South Side Development Fund 3 LLC, SSDF1 Holdco 1 LLC, SSDF2 Holdco 1, SSDF3 Holdco 2 LLC, SSDF5 Holdco 1 LLC, SSPH Holdco 1, and SSDF2 Holdco 2 LLC.

[5] These twelve entities are 1422 E 68th LLC, 7107-29 S Bennett LLC, 7823 Essex LLC, EB South Chicago 1 LLC, EB South Chicago 1 Manager LLC, EB South Chicago 2 LLC, SSDF2 Holdco 2 LLC, SSDF5 Holdco 2 LLC, SSPH Holdco 2 LLC, 1632 Shirley LLC, 8217 Dorchester LLC, and Hybrid Capital Fund LLC.

Additionally, BrookWeiner was retained to perform accounting, tax, and related work regarding assets of the Receivership Defendants such as the accounting for ongoing business operations of the Receivership Defendants. BrookWeiner compiled monthly property statements and property spreadsheets, worked to close payroll tax accounts with various states, and assisted with cash flow analysis matters.

m.     Accounts Established by Receiver for the Benefit of the Receivership Estate

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property. The interest-bearing checking account is used by the Receiver to collect liquid assets of the Estate and to pay the portfolio-related and administrative expenses. The Receiver also established separate interest-bearing accounts for the purpose of depositing and holding funds from the sale of real estate encumbered by secured debt until such time as it becomes appropriate to distribute such funds, upon Court approval, to the various creditors of the Estate, including but not limited to the defrauded investors or lenders.

## II.     RECEIVER'S FUND ACCOUNTING

The Receiver's Standardized Fund Accounting Report ("SFAR") for the Second Quarter 2019 is attached hereto as **Exhibit 4**. The SFAR sets forth the funds received and disbursed from the Receivership Estate during this reporting period. As reported in the SFAR, the amount of cash on hand as of June 30, 2019 was $1,023,577.44. The information reflected in the SFAR is based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

## III.     RECEIVER'S SCHEDULE OF RECEIPTS AND DISBURSEMENTS

The Receiver's Schedule of Receipts and Disbursements ("Schedule") for the Second Quarter 2019 is attached hereto as **Exhibit 1**. The Schedule reflects $2,316,305.78 in receipts

and $1,292,728.44 in disbursements as of June 30, 2019. Investors, creditors, and other interested parties are encouraged to review this Schedule for detailed information of disbursements on a property-by-property basis.

## IV. RECEIVERSHIP PROPERTY

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit 5**. The Receiver previously set forth a list of real estate within the Receivership Estate in his First Status Report. (*See* Docket No. 107, Exhibit 1)

The Master Asset List identifies 53 checking accounts in the names of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $105,870.94. (*See* also Docket No. 348 at 23-24 for additional information relating to these funds.)

The Master Asset List does not include assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests. The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate, including but not limited to charitable donations, loans, gifts, settlements for which payment has not yet been received, and other property given to family members, former employees, and others.

## V. LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY THE RECEIVERSHIP ESTATE

The Receiver and his attorneys are in the process of analyzing and identifying potential claims, including, but not limited to, potential fraudulent transfer claims and claims for aiding and abetting the fraud of the Receivership Defendants.

## VI. CREDITORS AND CLAIMS AGAINST THE RECEIVERSHIP ESTATE

On May 1, 2019, Magistrate Judge Kim granted the Receiver's motion for entry of an order establishing claims bar date and approving claims process, and set a Bar Date of July 1, 2019. (Docket No. 349) Following entry of this Order, the Receiver sent email correspondence to all known potential claimants to obtain an updated mailing address for this claims notice. The Receiver also searched EquityBuild records to determine last known mailing addresses for potential claimants. The Receiver then sent notice of the claims process by U.S Mail through Axos Fiduciary Services on May 22, 2019. Axos Fiduciary Services sent more than 900 notices by U.S. mail, and the Receiver sent additional notices also by U.S. mail. The Receiver also sent reminder emails to all known potential claimants for which he had a valid email address on May 23, 2019, June 13, 2019, and June 24, 2019 to remind potential claimants of the Bar Date, the requirements for submitting a claim, and to provide a direct link to the Axos Claims Portal for claimants to complete and submit their claims.

Moreover, Prometheum updated the Receivership webpage to include a claims section with the Bar Date displayed prominently. This section included a link to the Axos claims portal, copies of the claims notice, general instructions, proof of claim form, and a link to contact an email account the Receiver established for questions or technical issues during the claims process. The Receiver and his staff received approximately 640 emails to this account and sent approximately 520 emails from this account during the second quarter of 2019. The Receiver and his staff used their best efforts to respond to each claimant's questions in a timely and appropriate fashion.

The Receiver will file preliminary status reports relating to the claims process and claims received on August 1, 2019 and August 15, 2019. (Docket No. 349) The Court has set a status hearing relating to the claims process for August 22, 2019.

As of this filing, the Receiver has received approximately 2,000 claims submissions. Claims were received through the Axos claims portal, by email, by courier, and through the U.S. mail. Some claimants submitted information by more than one means; and some claimants made multiple submissions. The Receiver is currently in the process of evaluating the submitted claims so that an accurate number of claimants, amounts claimed, and description of the nature of the claims received can be reported to the Court. The Receiver also is working to identify undisputed claims and develop a process for expeditiously resolving disputed claims.

The Receiver anticipates a process that will provide for a report to the Court as to all claims, classifying them as to disputed or undisputed, and recommending to the Court a process for resolving disputes among claims that is expeditious and fair. Neither all claims, nor all disputes, will require the same process. The Receiver anticipates that some claims can and should be resolved through summary proceedings while other claims and disputes will require more substantive consideration, potentially including discovery. The Receiver is considering ways to address claims and issues on collective or representative bases that would allow for a more cost effective and expeditious determination of claims and issues surrounding them. The Receiver also anticipates one or more filings for the Court in which the Receiver will set forth his recommendations as to the claims and the Receiver's proposal for a just and fair distribution plan, along with a process by which objections can be submitted to the Receiver, evaluated by the Receiver, and resolved by the Receiver without the need for the Court's time and attention where and when possible; after which the Receiver would submit a report to the Court on the

status of all objections that require the Court's time and attention, along with an opportunity for claimants to respond to the Receiver's report, if necessary.

The Receiver presently expects that the soonest he could propose a comprehensive distribution plan to the Court following a claims process would be in the second half of 2020. However, there may be exceptions that would allow for interim distributions in certain circumstance, for example, where there are undisputed claims. Distribution of funds pursuant to a distribution plan would depend on when funds have been received by the Receivership Estate and the Receiver's recommendation to the Court on priority for properties where priority is in dispute, including with respect to claims pursued by the Receiver (with Court approval). That timing remains too speculative at this point for the Receiver to project with reasonable certainty.

## VII. PROJECTED FUTURE EXPENSES

The Receiver filed a fee application for professional fees for the third quarter of 2018. (Docket No. 411) Certain institutional lenders filed objections to this fee application (Docket Nos. 438 and 442) and a hearing before Judge Lee is currently scheduled for September 25, 2019. The Receiver also plans to file a fee application for the fourth quarter of 2018 and first quarter of 2019 within the coming weeks as well as for subsequent quarters thereafter. The Receiver presently anticipates professional fees and expenses for the fourth quarter of 2018 and first quarter of 2019 in the following approximate amounts:[6]

- $120,471.00 in professional fees for the Receiver during the 4th quarter of 2018;

- $386,963.00 in professional fees and expenses of $6,052.09 for the Receiver's counsel, RDAPK, during the 4th quarter of 2018;

---

[6] The approximate professional fees may differ from amounts that will be set forth once the Receiver's fee applications are prepared. However, the Receiver believes the foregoing amounts are reasonable approximations at this time.

22

- $114,478.00 in professional fees for the Receiver during the 1st quarter of 2019;

- $464,742.80 in professional fees and $3,024.01 in expenses for the Receiver's counsel, RDPK, during the 1st quarter of 2019;

- Professional fees of $21,642.50 for BrookWeiner during the 4th quarter of 2018;

- Professional fees of $21,102.00 for BrookWeiner during the 1st quarter of 2019;

- Professional fees of $8,538.50 for Prometheum during the 3rd and 4th quarters of 2018 and $1,599.67 during the 1st quarter of 2019;

- Professional fees of $3,490.84 for the Law Firm of Lauren D. W Tatar, Esq. during the 4th quarter of 2018;

- Professional fees of $15,899.00 for Whitley Penn during the 4th quarter of 2018; and

- Professional fees of $1,808.00 for Whitley Penn during the 1st quarter of 2019.

## VIII.  CONCLUSION

At this time, the Receiver recommends the continuation of the Receivership for at least the following reasons:

1.  Preservation, maintenance, and operation of the assets in the Receivership Estate including but not limited to the real estate assets;

2.  The continued investigation and analysis of assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests;

3.  The continued efforts of the Receiver to liquidate various assets of the Receivership Estate;

4. The continued investigation and analysis of the potential claims against the Receivership Estate, including, but not limited to, the claims and records of investors;

5. The continued investigation, analysis, and recovery of potential fraudulent transfer claims and claims against third parties relating to the Receivership Estate;

6. The continued analysis and formulation, in consultation with the SEC, of a just and fair distribution plan for the creditors of the Receivership Estate, and the subsequent notice to investors and potential claimants, and submission of a motion for Court approval, of such plan; and

7. The carrying out of any other legal and/or appointed duties of the Receiver as identified in the August 17, 2018, Order Appointing Receiver, or as the Court deems necessary.

Dated: July 31, 2019                                   Kevin B. Duff, Receiver

                                          By:    /s/      Michael Rachlis_____

                                                 Michael Rachlis (mrachlis@rdaplaw.net)
                                                 Nicole Mirjanich (nm@rdaplaw.net)
                                                 Rachlis Duff Peel & Kaplan, LLC
                                                 542 South Dearborn Street, Suite 900
                                                 Chicago, IL 60605
                                                 Phone (312) 733-3950; Fax (312) 733-3952

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I provided service of the foregoing Receiver's Fourth Status Report, via ECF filing, to all counsel of record on July 31, 2019.

I further certify I caused to be served the Defendant Jerome Cohen via e-mail:

Jerome Cohen
1050 8th Avenue N
Naples, FL 34102
jerryc@reagan.com
*Defendant*

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net

# EXHIBIT 1

Exhibit 1

EQUITYBUILD RECEIVERSHIP ESTATE ACCOUNT
Second Quarter 2019
Schedule of Receipts and Disbursements

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Beginning Balance 4/1/19** | | | | $232,751.46 | | | |
| **RECEIPTS** | | | | | | | |
| | | **Received From** | **Amount** | | | | |
| | 4/3/2019 | Corporate tax refunds from IRS, IL State | $716.61 | | | | |
| | 4/26/2019 | Proceeds from sale of 7549-59 S. Essex | $1,095,800.40 | | | | |
| | 4/26/2019 | Proceeds from sale of 7500-08 S. Eggleston | $868,875.85 | | | | |
| | 4/30/2019 | Interest earned on Receiver's account | $191.34 | | | | |
| | 5/2/2019 | Reimbursement of funds from property closings for payment of final water bills[5] | $80,245.56 | | | | |
| | 5/2/2019 | Refund from WPD of overpayment on taxes for 7500 S Eggleston | $23,517.24 | | | | |
| | 5/31/2019 | Interest earned on Receiver's account | $678.05 | | | | |
| | 6/24/2019 | Refund from Rosenthal Bros of insurance premiums for sold properties | $13,080.00 | | | | |
| | 6/30/2019 | Interest earned on Receiver's account | $449.27 | | | | |
| | | | | | | | |
| | | TOTAL RECEIPTS: | | $2,316,305.78 | | | |
| **DISBURSEMENTS** | | | | | | | |
| | | **Paid To** | **Amount** | | | | |
| Wire Transfer | 4/2/2019 | Paper Street (property management expenses)[1] | ($25,000.00) | | | | |
| Wire Transfer | 4/5/2019 | Paper Street (utilities: 7201 S Constance-$3875; 7656 S Kingston-$3233) | ($7,108.00) | | | | |
| Wire Transfer | 4/11/2019 | Paper Street (property management expenses)[2] | ($25,000.00) | | | | |
| Check | 4/12/2019 | IDES (interest on late payment of employment taxes) | ($18.05) | | | | |
| Wire Transfer | 4/16/2019 | Paper Street (utilities:7546 Saginaw-$4624.52; 7237 S Bennett-$7235.45) | ($11,859.97) | | | | |
| Check | 4/18/2019 | US Treasury (unpaid 2015 corporate tax) | ($1,775.55) | | | | |
| Wire Transfer | 4/19/2019 | Paper Street (gas & electric bills)[3] | ($32,411.82) | | | | |
| ACH | 4/26/2019 | City of Chicago (water bill for 7933 S Essex) | ($133.09) | | | | |
| Wire Transfer | 4/26/2019 | Paper Street (gas bills: 1700 Juneway-$7,603.90; 11117 S Longwood-$17,610.43) | ($25,214.33) | | | | |
| Wire Transfer | 4/26/2019 | Paper Street (property management expenses) | ($153,153.07) | | | | |
| ACH | 4/26/2019 | City of Chicago (water bill for 7500-08 S Eggleston) | ($27,837.00) | | | | |
| ACH | 4/26/2019 | City of Chicago (water bill for 7549-59 S Essex) | ($21,462.80) | | | | |
| Wire Transfer | 4/30/2019 | WPD (tax bills: 7502 S Eggleston-$23,517.24; 7549 Essex-$12,291.61) | ($35,808.85) | | | | |
| ACH | 4/30/2019 | Cook County Treasurer (2017 delinquent property taxes)[4] | ($230,628.07) | | | | |
| Check | 5/1/2019 | Applied Business Software (2d installment on TMO software license) | ($850.00) | | | | |
| Wire Transfers | 5/2/2019 | City of Chicago (payments of final water bills on sold properties)[5] | ($80,245.66) | | | | |
| Wire Transfer | 5/6/2019 | Rosenthal Bros. (down payment on liability & umbrella policy renewals) | ($53,323.20) | | | | |
| Check | 5/9/2019 | City of Chicago (7026 S Cornell code violations) | ($240.00) | | | | |

Exhibit 1

EQUITYBUILD RECEIVERSHIP ESTATE ACCOUNT
Second Quarter 2019
Schedule of Receipts and Disbursements

| | | | | | | |
|---|---|---|---|---|---|---|
| Wire Transfer | 5/14/2019 | Paper Street (relocation expenses 8107 S Ellis) | ($5,000.00) | | | |
| Check | 5/14/2019 | Wells Fargo (document production fees) | ($121.00) | | | |
| Wire Transfer | 5/15/2019 | WPD (3030 E 79th replenish reserve $4,000; 7750 S Muskegon past due gas bills $45,000; 7450 S Luella repayment of WPD funds for property expenses & reserve $11,000) | ($60,000.00) | | | |
| Wire Transfer | 5/23/2019 | Paper Street (8107 S Ellis porch repairs) | ($11,750.00) | | | |
| Wire Transfer | 5/24/2019 | Paper Street (2909 E 78th parapet repairs) | ($17,685.00) | | | |
| Wire Transfer | 5/28/2019 | Paper Streeet (April 2019 invoices (5)) | ($25,750.41) | | | |
| Wire Transfer | 5/29/2019 | Rosenthal Bros. (down payment on property insurance policy renewal) | ($178,759.60) | | | |
| Check | 5/29/2019 | Dubin Singer PC (interim finance agreement) | ($2,000.00) | | | |
| Wire Transfer | 5/30/2019 | Paper Street (2909 E 78th roof repairs) | ($4,750.00) | | | |
| Funds Transfer | 5/30/2019 | To 1102 Bingham account for payment on real estate tax agreement | ($11,207.96) | | | |
| Wire Transfers | 6/4/2019 | Paper Street (8107 S Ellis masonry repairs) | ($7,500.00) | | | |
| Wire Transfer | 6/5/2019 | Paper Street (7237 S Bennett DAWGS installation) | ($5,020.20) | | | |
| Wire Transfer | 6/6/2019 | Paper Street (down payment on past due water bills) | ($6,209.54) | | | |
| Wire Transfer | 6/7/2019 | First Funding (1st installment on premium financing for general liability & umbrella insurance) | ($21,735.26) | | | |
| Wire Transfer | 6/13/2019 | WPD (property expenses: 8201 S Kingston, $8,000; 8047 S Manistee, $8,000) | ($16,000.00) | | | |
| Wire Transfer | 6/18/2019 | Paper Street (7201 Constance gas bill, $8,700.85; 7760 Coles disposal bill, $693.25) | ($9,394.20) | | | |
| Wire Transfer | 6/20/2019 | Paper Street (7760 Coles utility, $961.46; 7201 Dorchester utility, $2,381.32) | ($3,342.78) | | | |
| Check | 6/24/2019 | City of Chicago, Dept of Streets & Sanitation (7109-19 S Calumet payment on violation) | ($300.00) | | | |
| Check | 6/24/2019 | City of Chicago, Dept of Streets & Sanitation (2736-44 W 64th Street payment on violation) | ($300.00) | | | |
| Wire Transfer | 6/24/2019 | First Funding (1st installment on premium financing for property liability insurance) | ($19,864.64) | | | |
| Wire Transfer | 6/24/2019 | Paper Street (7656 S Kingston hot water tank replacement) | ($4,400.00) | | | |
| Wire Transfer | 6/25/2019 | Paper Street (6001 & 5959 S Sacramento water bills) | ($9,201.40) | | | |
| Wire Transfer | 6/25/2019 | Paper Street (7113 Calumet & 7760 Coles electric bills) | ($689.29) | | | |
| Wire Transfer | 6/26/2019 | Paper Street (property management expenses) | ($139,677.70) | | | |
| | | | | | | |
| | | TOTAL DISBURSEMENTS: | ($1,292,728.44) | | | |
| | | | | | | |
| | | **Grand Total Cash on Hand at 6/30/19:** | **$1,023,577.34** | | | |
| | | | | | | |

Exhibit 1

EQUITYBUILD RECEIVERSHIP ESTATE ACCOUNT
Second Quarter 2019
Schedule of Receipts and Disbursements

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ¹ | | | | | | | | | |
| | 7109-19SCALU | $(10,440.53) | | | | | | | |
| | 7748-52SESSE | $ (519.97) | | | | | | | |
| | 7656KINGSTO | $ (967.26) | | | | | | | |
| | 7760SCOLES | $ (1,021.15) | | | | | | | |
| | 8209AK | $ (1,419.40) | | | | | | | |
| | 6356-58S.CAL | $ (2,040.92) | | | | | | | |
| | 7201SDORCHES | $ (2,641.74) | | | | | | | |
| | 638-40NAVERS | $ (2,677.76) | | | | | | | |
| | 7201SCONSTAN | $ (2,685.72) | | | | | | | |
| | 7600KINGST25 | $ (585.55) | | | | | | | |
| | | | | | | | | | |
| | Total | $(25,000.00) | | | | | | | |
| | | | | | | | | | |
| ² See 4/11/19 spreadsheet from Paper Street (detail for 4/8/11 payment). | | | | | | | | | |
| | | | | | | | | | |
| ³  Gas bills: | | | | | | | | | |
| 2909 E 78th | $8,044.48 | | | | | | | | |
| 8107 S Ellis | $4,177.39 | | | | | | | | |
| 8209 S Ellis | $5,513.66 | | | | | | | | |
| 8326, 8334, 8342, 8352 S Ellis | $13,914.95 | | | | | | | | |
| Electric bills: | | | | | | | | | |
| 2909-19 E 78th | $439.39 | | | | | | | | |
| 7600-10 S Kingston | $321.95 | | | | | | | | |
| TOTAL | $32,411.82 | | | | | | | | |
| | | | | | | | | | |
| ⁴  See attached spreadsheet regarding 2017 property taxes. | | | | | | | | | |
| | | | | | | | | | |
| ⁵  All receipts and disbursements for water bills were equal except for 7947-49 S Essex, for which $1,934.36 was received and $1,934.46 was paid for final water bill. | | | | | | | | | |

10:10 AM
04/11/19
Accrual Basis

Note 2 to 2Q2019 Schedule of Receipts and Disbursements

**Paper Street Realty LLC Monthly Owner Statement**
As of March 31, 2019

| | | | | Balance as of 3/31/2019 | 4/8 pmt | Balance | 4/15 pmt | Balance | 4/22 pmt | Balance | 4/29 pmt | Balance | 5/6 pmt | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12 | Total 2738W64TH | | | -611.79 | 611.79 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 14 | Total 7201SDORCHES | | | -1,067.00 | 1,067.00 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 11 | Total 8107SELLIS | | | -1,196.30 | 1,196.30 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 13 | Total 7760SCOLES | | | -1,580.55 | 1,580.55 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 56 | Total 8326SELLIS | | | -2,033.94 | 2,033.94 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 10 | Total 6356-58S.CAL | | | -2,255.11 | 2,255.11 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 11 | Total 7959SMAR2708 | | | -2,873.92 | 2,873.92 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 13 | Total 638-40NAVERS | | | -2,968.19 | 2,968.19 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 16 | Total 8209AK | | | -3,320.11 | 3,320.11 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 32 | Total 7748-52SESSE | | | -6,046.08 | 6,046.08 | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 16 | Total 7656SKINGSTO | | | -7,164.53 | 1,047.01 | -6,117.52 | 6,117.52 | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 13 | Total 6001-05S.SAC | | | -8,327.73 | | -8,327.73 | 8,327.73 | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 24 | Total 7237-43SBENN | | | -8,668.72 | | -8,668.72 | 8,668.72 | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| 37 | Total 7201SCONSTAN | | | -8,967.46 | | -8,967.46 | 1,886.03 | -7,081.43 | 7,081.43 | 0.00 | | 0.00 | | 0.00 |
| 13 | Total 8000-02SJUST | | | -13,194.24 | | -13,194.24 | | -13,194.24 | 13,194.24 | 0.00 | | 0.00 | | 0.00 |
| 31 | Total 2909-19E78TH | | | -15,623.90 | | -15,623.90 | | -15,623.90 | 4,724.33 | -10,899.57 | 10,899.57 | 0.00 | | 0.00 |
| 30 | Total 7927-49SESSE | | | -16,239.53 | | -16,239.53 | | -16,239.53 | | -16,239.53 | | -16,239.53 | | -16,239.53 |
| 18 | Total 5955-59S.SAC | | | -16,572.84 | | -16,572.84 | | -16,572.84 | | -16,572.84 | 14,100.43 | -2,472.41 | 2,472.41 | 0.00 |
| 34 | Total 7600KINGST25 | | | -17,026.44 | | -17,026.44 | | -17,026.44 | | -17,026.44 | | -17,026.44 | 17,026.44 | 0.00 |
| 23 | Total 7026-42SCORN | | | -18,709.67 | | -18,709.67 | | -18,709.67 | | -18,709.67 | | -18,709.67 | 5,501.15 | -13,208.52 |
| 21 | Total 7109-19SCALU | | | -21,442.83 | | -21,442.83 | | -21,442.83 | | -21,442.83 | | -21,442.83 | | -21,442.83 |
| 52 | Total 6160-6212SKI | | | -27,476.52 | | -27,476.52 | | -27,476.52 | | -27,476.52 | | -27,476.52 | | -27,476.52 |
| | | | | -203,367.40 | 25,000.00 | -178,367.40 | 25,000.00 | -153,367.40 | 25,000.00 | -128,367.40 | 25,000.00 | -103,367.40 | 25,000.00 | -78,367.40 |

Note 4 to 2Q2019 Schedule of Receipts and Disbursements

### Schedule of 2017 Property Taxes Paid

| Prop # | Property Address | PIN | Mgmt Co | Total 2017 Delinquent Taxes | Paid from Receivership Account | Paid from Property's Account |
|---|---|---|---|---|---|---|
| 5 | 7749 S Yates Boulevard | 21-30-318-013-0000 | WPD | $13,973.55 | $13,973.55 | |
| 8 | 1414 East 62nd Place | 20-14-415-007-0000 | WPD | $2,489.93 | | $2,489.93 |
| 8A | 1418 East 62nd Place | 20-14-415-008-0000 | WPD | $1,176.04 | | $1,176.04 |
| 10 | 7301-09 S Stewart Avenue | 20-28-216-001-0000 | WPD | $27,614.28 | $27,614.28 | |
| 12 | 3030 E 79th Street | 21-30-416-014-0000 | WPD | $4,464.75 | $4,464.75 | |
| | | 21-30-416-015-0000 | | $4,474.63 | $4,474.63 | |
| | | 21-30-416-016-0000 | | $569.32 | $569.32 | |
| 13 | 2909 E 78th Street | 21-30-410-002-0000 | PSR | $14,862.40 | $14,862.40 | |
| 15 | 8047-55 S Manistee Avenue | 21-31-115-016-0000 | WPD | $11,506.00 | $11,506.00 | |
| 58 | 5955 S Sacramento Avenue | 19-13-304-023-0000 | PSR | $16,537.68 | $16,537.68 | |
| 62 | **7834-44 S Ellis Avenue** | 20-26-320-029-0000 | WPD | $18,243.46 | $18,243.46 | |
| 71 | 701 S 5th Avenue | 15-11-344-001-0000 | PSR | $94,018.73 | $72,018.73 | $22,000.00 |
| **77** | 7750-58 S Muskegon Avenue | 21-30-400-034-0000 | WPD | $18,058.79 | $18,058.79 | |
| 78 | **7201 S Constance Avenue** | 20-25-119-001-0000 | PSR | $3,960.46 | $3,960.46 | |
| 97 | 8334-40 S Ellis Avenue | 20-35-303-097-0000 | PSR | $8,114.72 | $8,114.72 | |
| 98 | 8342-50 S Ellis Avenue | 20-35-303-098-0000 | PSR | $8,114.72 | $8,114.72 | |
| 99 | 8352-58 S Ellis Avenue | 20-35-303-099-0000 | PSR | $8,114.58 | $8,114.58 | |
| 100 | 11117-11119 S Longwood Drive | 25-19-113-010-0000 | PSR | $19,007.02 | | $19,007.02 |
| | | | | | | |
| | | | | $275,301.06 | $230,628.07 | $44,672.99 |
| | | | | | | |

# EXHIBIT 2

| | Exhibit 2 | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | EquityBuild Receivership Properties | | | | | |
| | SEC v. EquityBuild, et al. Case No. 18-cv-5587 | | | | | |
| | As of July 19, 2019 | | | | | |
| **Property Address** | **1st Inst 2018 Paid Amount** | **1st Inst 2018 Balance** | **2nd Inst 2018 Billed Amount** | **2nd Inst 2018 Paid Amount** | **2nd Inst 2018 Balance** | **Total Balance (as of 7/19/19)** |
| 1700 Juneway Terrace | $19,590.30 | $0.00 | $17,411.72 | $17,411.72 | $0.00 | $0.00 |
| 6949-59 S Merrill Avenue | $12,867.17 | $0.00 | $13,078.90 | $13,078.90 | $0.00 | $0.00 |
| 4533-37 S Calumet Avenue | $3,645.15 | $0.00 | $3,176.07 | $3,176.07 | $0.00 | $0.00 |
| | $3,634.71 | $0.00 | $3,281.11 | $3,281.11 | $0.00 | $0.00 |
| | $3,475.10 | $0.00 | $3,556.08 | $3,556.08 | $0.00 | $0.00 |
| | $3,800.52 | $0.00 | $3,373.19 | $3,373.19 | $0.00 | $0.00 |
| 5450-52 S Indiana Avenue | $5,285.67 | $0.00 | $4,298.06 | $4,298.06 | $0.00 | $0.00 |
| 7749 S Yates Boulevard | $0.00 | $14,897.28 | $12,518.37 | $0.00 | $12,518.37 | $27,415.65 |
| 6437 S Kenwood Avenue | $8,606.51 | $0.00 | $9,665.34 | $7,000.00 | $2,665.34 | $2,665.34 |
| 7109-19 S Calumet Avenue | $3,535.72 | $0.00 | $2,023.30 | $0.00 | $2,023.30 | $2,023.30 |
| | $4,785.89 | $0.00 | $2,335.61 | $0.00 | $2,335.61 | $2,335.61 |
| | $4,790.04 | $0.00 | $2,624.00 | $0.00 | $2,624.00 | $2,624.00 |
| 1414 East 62nd Place | $1,249.64 | $0.00 | $2,627.81 | $2,627.81 | $0.00 | $0.00 |
| 1418 East 62nd Place | $587.54 | $0.00 | $456.36 | $456.36 | $0.00 | $0.00 |
| 7301-09 S Stewart Avenue | $15,223.15 | $0.00 | $9,748.61 | $9,748.61 | $0.00 | $0.00 |
| 3030 E 79th Street | $0.00 | $2,244.28 | $2,960.79 | $0.00 | $2,960.79 | $5,205.07 |
| | $0.00 | $2,249.31 | $2,965.10 | $0.00 | $2,965.10 | $5,214.41 |
| | $281.76 | $0.00 | $266.15 | $266.15 | $0.00 | $0.00 |
| 2909 E 78th Street | $0.00 | $15,845.49 | $16,887.32 | $0.00 | $16,887.32 | $32,732.81 |
| 8047-55 S Manistee Avenue | $0.00 | $12,264.70 | $12,956.00 | $0.00 | $12,956.00 | $25,220.70 |
| 1017 W 102nd Street | $1,434.64 | $0.00 | $1,026.37 | $1,026.37 | $0.00 | $0.00 |
| 1516 E 85th Place | $1,785.74 | $0.00 | $1,013.09 | $1,013.09 | $0.00 | $0.00 |
| 2136 W 83rd Street | $1,452.62 | $0.00 | $548.61 | $548.61 | $0.00 | $0.00 |
| 417 Oglesby Avenue | $2,766.30 | $0.00 | $2,480.77 | $0.00 | $2,480.77 | $2,480.77 |
| 7922 S Luella Avenue | $1,763.65 | $0.00 | $1,422.99 | $0.00 | $1,422.99 | $1,422.99 |
| 7925 S Kingston Avenue | $1,280.28 | $0.00 | $1,103.37 | $1,103.37 | $0.00 | $0.00 |
| 7933 S Kingston Avenue | $1,282.71 | $0.00 | $1,101.34 | $1,101.34 | $0.00 | $0.00 |
| 8030 S Marquette Avenue | $1,482.16 | $0.00 | $842.70 | $842.70 | $0.00 | $0.00 |
| 8104 S Kingston Avenue | $1,929.30 | $0.00 | $1,150.15 | $1,150.15 | $0.00 | $0.00 |
| 8403 S Aberdeen Street | $1,502.92 | $0.00 | $1,381.61 | $1,381.61 | $0.00 | $0.00 |

| Property Address | 1st Inst 2018 Paid Amount | 1st Inst 2018 Balance | 2nd Inst 2018 Billed Amount | 2nd Inst 2018 Paid Amount | 2nd Inst 2018 Balance | Total Balance (as of 7/19/19) |
|---|---|---|---|---|---|---|
| 8405 S Marquette Avenue | $1,345.33 | $0.00 | $1,166.30 | $1,166.30 | $0.00 | $0.00 |
| 8529 S Rhodes Avenue | $1,737.11 | $0.00 | $1,507.69 | $1,507.69 | $0.00 | $0.00 |
| 8800 S Ada Street | $1,162.84 | $0.00 | $891.46 | $0.00 | $891.46 | $891.46 |
| 9212 S Parnell Avenue | $1,378.15 | $0.00 | $457.87 | $457.87 | $0.00 | $0.00 |
| 10012 S LaSalle Avenue | $918.05 | $0.00 | $912.71 | $912.71 | $0.00 | $0.00 |
| 11318 S Church Street | $1,281.75 | $0.00 | $753.37 | $753.37 | $0.00 | $0.00 |
| 3213 S Throop Street | $1,716.77 | $0.00 | $4,069.38 | $4,069.38 | $0.00 | $0.00 |
| 3723 W 68th Place | $1,576.86 | $0.00 | $1,694.64 | $1,694.64 | $0.00 | $0.00 |
| 406 E 87th Place | $1,239.17 | $0.00 | $1,230.80 | $1,230.80 | $0.00 | $0.00 |
| 61 E 92nd Street | $1,080.13 | $0.00 | $955.53 | $955.53 | $0.00 | $0.00 |
| 6554 S Rhodes Avenue | $1,763.09 | $0.00 | $1,197.37 | $1,197.37 | $0.00 | $0.00 |
| 6825 S Indiana Avenue | $2,012.66 | $0.00 | $1,031.13 | $1,031.13 | $0.00 | $0.00 |
| 7210 S Vernon Avenue | $1,926.46 | $0.00 | $858.42 | $858.42 | $0.00 | $0.00 |
| 7712 S Euclid Avenue | $1,610.45 | $0.00 | $1,842.58 | $1,842.58 | $0.00 | $0.00 |
| 7953 S Woodlawn Avenue | $3,249.06 | $0.00 | $1,960.60 | $1,960.60 | $0.00 | $0.00 |
| 8107 S Kingston Avenue | $1,664.92 | $0.00 | $993.27 | $993.27 | $0.00 | $0.00 |
| 8346 S Constance Avenue | $1,154.68 | $0.00 | $1,939.87 | $1,939.87 | $0.00 | $0.00 |
| 8432 S Essex Avenue | $1,527.44 | $0.00 | $1,134.04 | $1,134.04 | $0.00 | $0.00 |
| 8517 S Vernon Avenue | $1,272.80 | $0.00 | $1,164.21 | $1,164.21 | $0.00 | $0.00 |
| 2129 W 71st Street | $1,059.11 | $0.00 | $511.71 | $511.71 | $0.00 | $0.00 |
| 9610 S Woodlawn Avenue | $1,465.75 | $0.00 | $1,574.25 | $1,574.25 | $0.00 | $0.00 |
| 5437 S Laflin Street | $1,449.53 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
|  | $651.71 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6759 S Indiana Avenue | $1,012.70 | $0.00 | $2,566.31 | $2,566.31 | $0.00 | $0.00 |
| 7300-04 St Lawrence Avenue | $0.00 | $4,763.00 | $4,690.63 | $0.00 | $4,690.63 | $9,453.63 |
| 7760 S Coles Avenue | $0.00 | $7,458.98 | $11,038.05 | $0.00 | $11,038.05 | $18,497.03 |
| 1401 W 109th Place | $1,591.70 | $0.00 | $415.82 | $415.82 | $0.00 | $0.00 |
| 310 E 50th Street | $3,220.89 | $0.00 | $3,236.62 | $3,236.62 | $0.00 | $0.00 |
| 6807 S Indiana Avenue | $1,963.75 | $0.00 | $3,517.16 | $3,517.16 | $0.00 | $0.00 |
| 8000 S Justine Street | $0.00 | $4,772.93 | $8,582.68 | $0.00 | $8,582.68 | $13,355.61 |
| 8107 S Ellis Avenue | $0.00 | $2,990.56 | $2,371.51 | $0.00 | $2,371.51 | $5,362.07 |
|  | $0.00 | $2,116.91 | $1,695.84 | $1,695.84 | $1,695.84 | $3,812.75 |
| 8209 S Ellis Avenue | $0.00 | $9,545.90 | $2,799.08 | $0.00 | $2,799.08 | $12,344.98 |
| 8214 S Ingleside Avenue | $0.00 | $6,061.11 | $4,028.26 | $0.00 | $4,028.26 | $10,089.37 |

| Property Address | 1st Inst 2018 Paid Amount | 1st Inst 2018 Balance | 2nd Inst 2018 Billed Amount | 2nd Inst 2018 Paid Amount | 2nd Inst 2018 Balance | Total Balance (as of 7/19/19) |
|---|---|---|---|---|---|---|
| 5955 S Sacramento Avenue | $0.00 | **$8,273.11** | $9,126.65 | $0.00 | **$9,126.65** | **$17,399.76** |
| 6001 S Sacramento Avenue | $0.00 | **$5,727.55** | $6,114.20 | $0.00 | **$6,114.20** | **$11,841.75** |
| 7026 S Cornell Avenue | $0.00 | **$3,738.14** | $7,468.21 | $0.00 | **$7,468.21** | **$11,206.35** |
| 2015 taxes sold | $5,796.79 | **$0.00** | $5,148.76 | $0.00 | **$5,148.76** | **$5,148.76** |
| 7237 S Bennett Avenue | $0.00 | **$10,636.78** | $9,819.80 | $0.00 | **$9,819.80** | **$20,456.58** |
| 7834-44 S Ellis Avenue | $20,946.44 | **$0.00** | $18,557.95 | $18,557.95 | **$0.00** | **$0.00** |
| 4520-26 S Drexel Boulevard | $32,829.60 | **$0.00** | $40,156.14 | $40,156.14 | **$0.00** | **$0.00** |
| 4611 S Drexel Boulevard | $27,350.04 | **$0.00** | $19,720.44 | $19,720.44 | **$0.00** | **$0.00** |
| 6751-57 S Merrill Avenue | $11,575.44 | **$0.00** | $10,159.98 | $0.00 | **$10,159.98** | **$10,159.98** |
| 7110 S Cornell Avenue | $18,943.74 | **$0.00** | $4,126.42 | $0.00 | **$4,126.42** | **$4,126.42** |
| 1131-41 E 79th Place | $15,843.13 | **$0.00** | $16,717.32 | $16,717.32 | **$0.00** | **$0.00** |
| 6217-27 S Dorchester Avenue | $8,496.49 | **$0.00** | $9,593.02 | $9,593.02 | **$0.00** | **$0.00** |
|  | $7,358.83 | **$0.00** | $7,112.65 | $7,112.65 | **$0.00** | **$0.00** |
| 6250 S Mozart Avenue | $12,725.23 | **$0.00** | $12,297.18 | $12,297.18 | **$0.00** | **$0.00** |
| 638 N Avers Avenue | $7,157.29 | **$0.00** | $5,534.63 | $0.00 | **$5,534.63** | **$5,534.63** |
| 701 S 5th Avenue | $0.00 | **$47,854.83** | $39,239.43 | $0.00 | **$39,239.43** | **$87,094.26** |
| 7024-32 S Paxton Avenue | $19,954.25 | **$0.00** | $17,355.80 | $17,355.80 | **$0.00** | **$0.00** |
| 7255-57 S Euclid Avenue | $10,655.85 | **$0.00** | $4,558.97 | $4,558.97 | **$0.00** | **$0.00** |
| 3074 Cheltenham Place | $15,179.51 | **$0.00** | $10,845.75 | $10,845.75 | **$0.00** | **$0.00** |
| 7625-33 S East End Avenue | $10,951.86 | **$0.00** | $13,605.52 | $13,605.52 | **$0.00** | **$0.00** |
| 7635-43 S East End Avenue | $14,683.60 | **$0.00** | $10,898.23 | $10,898.23 | **$0.00** | **$0.00** |
| 7750-58 S Muskegon Avenue | $0.00 | **$19,255.66** | $13,442.25 | $0.00 | **$13,442.25** | **$32,697.91** |
| 7201 S Constance Avenue | $0.00 | **$12,664.20** | $12,750.26 | $0.00 | **$12,750.26** | **$25,414.46** |
| 2736 W 64th Street | $2,762.34 | **$3,132.47** | $4,715.41 | $0.00 | **$4,715.41** | **$7,847.88** |
| 4317 S Michigan Avenue | $4,830.65 | **$0.00** | $6,037.06 | $6,037.06 | **$0.00** | **$0.00** |
| 6355-59 S Talman Avenue | $0.00 | **$8,247.61** | $9,268.09 | $0.00 | **$9,268.09** | **$17,515.70** |
| 6356 S California Avenue | $0.00 | **$5,911.31** | $3,775.11 | $0.00 | **$3,775.11** | **$9,686.42** |
| 7051 S Bennett Avenue | $0.00 | **$10,920.43** | $13,239.73 | $0.00 | **$13,239.73** | **$24,160.16** |
| 7201-07 S Dorchester Avenue | $0.00 | **$6,954.25** | $5,542.78 | $0.00 | **$5,542.78** | **$12,497.03** |
| 7442-48 S Calumet Avenue | $6,618.45 | **$0.00** | $6,730.59 | $6,730.59 | **$0.00** | **$0.00** |
| 7508 S Essex Avenue | $11,300.54 | **$0.00** | $13,575.05 | $13,575.05 | **$0.00** | **$0.00** |
| 7546 S Saginaw Avenue | $3,207.20 | **$7,116.36** | $4,490.38 | $0.00 | **$4,490.38** | **$11,606.74** |
| 7600 S Kingston Avenue | $0.00 | **$19,928.58** | $12,498.63 | $0.00 | **$12,498.63** | **$32,427.21** |
| 7656 S Kingston Avenue | $0.00 | **$9,713.01** | $8,353.15 | $0.00 | **$8,353.15** | **$18,066.16** |

| Property Address | 1st Inst 2018 Paid Amount | 1st Inst 2018 Balance | 2nd Inst 2018 Billed Amount | 2nd Inst 2018 Paid Amount | 2nd Inst 2018 Balance | Total Balance (as of 7/19/19) |
|---|---|---|---|---|---|---|
| 7701 S Essex Avenue | $10,015.45 | $0.00 | $7,087.03 | $7,087.03 | $0.00 | $0.00 |
| 7748-50 S Essex Avenue | $0.00 | $18,644.09 | $14,552.42 | $0.00 | $14,552.42 | $33,196.51 |
| 7953-59 S Marquette Road | $0.00 | $9,091.39 | $6,042.90 | $0.00 | $6,042.90 | $15,134.29 |
| 816-20 E Marquette Road | $5,725.02 | $0.00 | $5,128.44 | $5,128.44 | $0.00 | $0.00 |
| 8201 S Kingston Avenue | $0.00 | $5,472.97 | $4,640.21 | $0.00 | $4,640.21 | $10,113.18 |
| 8326-32 S Ellis Avenue | $0.00 | $8,646.64 | $5,970.04 | $0.00 | $5,970.04 | $14,616.68 |
| 8334-40 S Ellis Avenue | $151.81 | $8,483.43 | $5,970.24 | $0.00 | $5,970.24 | $14,453.67 |
| 8342-50 S Ellis Avenue | $8,043.39 | $0.00 | $5,970.45 | $5,970.45 | $0.00 | $0.00 |
| 8352-58 S Ellis Avenue | $943.71 | $7,632.01 | $5,783.88 | $0.00 | $5,783.88 | $13,415.89 |
| 11117-11119 S Longwood Drive | $0.00 | $20,271.06 | $18,274.10 | $0.00 | $18,274.10 | $38,545.16 |
| 1422 East 68th Street | $3,058.93 | $0.00 | $2,492.15 | $2,492.15 | $0.00 | $0.00 |
| 2800 E 81st Street | $5,201.59 | $0.00 | $3,919.74 | $3,919.74 | $0.00 | $0.00 |
| 4750 S Indiana Avenue | $3,222.30 | $0.00 | $3,686.59 | $3,686.59 | $0.00 | $0.00 |
| 5618 S Martin Luther King Drive | $1,833.26 | $0.00 | $2,035.24 | $0.00 | $2,035.24 | $2,035.24 |
|  | $0.00 | $4,758.46 | $4,918.27 | $0.00 | $4,918.27 | $9,676.73 |
| 6558 S Vernon Avenue | $6,612.56 | $0.00 | $7,858.59 | $0.00 | $7,858.59 | $7,858.59 |
|  | $0.00 | $427.03 | $355.74 | $0.00 | $355.74 | $782.77 |
| 7450 S Luella Avenue | $1,059.86 | $7,593.80 | $7,857.72 | $0.00 | $7,857.72 | $15,451.52 |
| 7840 S Yates Avenue | $5,191.52 | $0.00 | $3,883.74 | $3,883.74 | $0.00 | $0.00 |
| **Totals** | $470,298.72 | $356,305.62 | $720,073.08 | $354,758.60 | $367,010.32 | $723,315.94 |

# EXHIBIT 3

Exhibit 3
Projected Savings on 2018 Property Tax Liability

| Property Address | Savings Per Year |
|---|---|
| 6210 S. King Drive | $4,347.16 |
| 7201 S. Constance* | $11,150.33 |
| 7051 S. Bennett* | $3,537.10 |
| 7844 S. Ellis* | $5,224.60 |
| 7749 S. Yates* | $2,855.34 |
| 8201 S. Kingston | $4,740.03 |
| 7210 S. Vernon | $266.07 |
| 7109 S. Calumet | $1,480.63 |
| 6825 S. Indiana | $563.58 |
| 6554 Rhodes | $142.94 |
| 1414 E. 62nd | $600.60 |
| | **Total $34,908.38** |

* 1 year only

# EXHIBIT 4

Exhibit 4:

STANDARDIZED FUND ACCOUNTING REPORT for EQUITYBUILD, INC., et al. - Cash Basis
Receivership; Civil Court Docket No. 18-cv-05587
Reporting Period 4/1/2019 to 6/30/2019

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 4/1/2019): | $232,751.46 | | $232,751.46 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | | | |
| Line 3 | Cash and unliquidated assets | | | |
| Line 4 | Interest/Dividend Income | $1,318.66 | | |
| Line 5 | Business Asset Liquidation | | | |
| Line 6 | Personal Asset Liquidation | | | |
| Line 7 | Net Income from Properties | $1,964,676.25 | | |
| Line 8 | Miscellaneous - Other[1] | $117,559.41 | | |
| | **Total Funds Available (Line 1-8):** | | | **$2,316,305.78** |
| | *Decrease in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors | | | |
| Line 10 | Disbursements for receivership operations | | | |
| Line 10a | Disbursements to receiver or Other Profesionals | | | |
| Line 10b | Business Asset Expenses[2] | ($1,292,728.44) | | |
| Line 10c | Personal Asset Expenses | | | |
| Line 10d | Investment Expenses | | | |
| Line 10e | Third-Party Litigation Expenses | | | |
| | 1. Attorney Fees | | | |
| | 2. Litigation Expenses | | | |
| | **Total Third-Party Litigation Expenses** | | $0.00 | |
| Line 10f | Tax Administrator Fees and Bonds | | | |
| Line 10g | Federal and State Tax Payments | | | |
| | **Total Disbursements for Receivership Operations** | | ($1,292,728.44) | |
| Line 11 | **Disbursements for Distribution Expenses Paid by the Fund:** | | | |
| Line 11a | Distribution Plan Development Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................................ | | | |
| | Independent Distribution Consultant (IDC).................... | | | |
| | Distribution Agent............................................................. | | | |
| | Consultants........................................................................ | | | |
| | Legal Advisers................................................................... | | | |
| | Tax Advisers...................................................................... | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | Total Plan Development Expenses | | $0.00 | |
| Line 11b | Distribution Plan Implementation Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................................ | | | |
| | IDC...................................................................................... | | | |

Exhibit 4:

STANDARDIZED FUND ACCOUNTING REPORT for EQUITYBUILD, INC., et al. - Cash Basis
Receivership; Civil Court Docket No. 18-cv-05587
Reporting Period 4/1/2019 to 6/30/2019

| | | | | |
|---|---|---|---|---|
| | Distribution Agent……………………………………… | | | |
| | Consultants…………………………………………… | | | |
| | Legal Advisers………………………………………. | | | |
| | Tax Advisers…………………………………………. | | | |
| | 2. Administrative Expenses | | | |
| | 3. Investor identification | | | |
| | Notice/Publishing Approved Plan……………………………… | | | |
| | Claimant Identification……………………………………… | | | |
| | Claims Processing………………………………………… | | | |
| | Web Site Maintenance/Call Center……………………………… | | | |
| | 4. Fund Adminstrator Bond | | | |
| | 5. Miscellaneous | | | |
| | 6. Federal Account for Investor Restitution | | | |
| | (FAIR) reporting Expenses | | | |
| | Total Plan Implementation Expenses | | | |
| | Total Disbursement for Distribution Expenses Paid by the Fund | $0.00 | | |
| Line 12 | **Disbursement to Court/Other:** | | | |
| Line 12a | *Investment Expenses/Court Registry Investment* | | | |
| | *System (CRIS) Fees* | | | |
| Line 12b | *Federal Tax Payments* | | | |
| | Total Disbursement to Court/Others: | | | |
| | Total Funds Disbursed (Lines 1-9): | | | ($144,679.61) |
| Line 13 | **Ending Balance (As of 6/30/2019):** | | | $1,023,577.34 |
| Line 14 | **Ending Balance of Fund - Net Assets:** | | | |
| Line 14a | *Cash & Cash Equivalents* | | | $1,023,577.44 |
| Line 14b | *Investments (unliquidated Huber/Hubadex investments)* | | | |
| Line 14c | *Other Assets or uncleared Funds* | | | |
| | **Total Ending Balance of Fund - Net Assets** | | | $1,023,577.44 |

¹ *Corporate tax refunds from IRS, IL State ($716.61);
reimbursement from property closings of payments on final
water bills ($80,245.56); refund on overpaid taxes for 7500 S
Eggleston from property mgr ($23,517.24); refund of
insurance premiums for sold properties ($13,080.00).
insurance ($273,682.70); property taxes ($277,644.88);
property repairs & other expenses ($87,105.20); property
utilities ($280,109.88); property management expenses
($368,581.18); property fines ($840.00); software licenses
($850.00); interim financing fee ($2,000.00); document*

Exhibit 4

STANDARDIZED FUND ACCOUNTING REPORT for EQUITYBUILD, INC., et al. - Cash Basis
Receivership; Civil Court Docket No. 18-cv-05587
Reporting Period 4/1/2019 to 6/30/2019

Receiver:

/s/ Kevin B. Duff
_____
(Signature)

Kevin B. Duff, Receiver EquityBuild, Inc., et al.
_____
(Printed Name)

Date: _____July 23, 2019_____

# EXHIBIT 5

Exhibit 5

**Master Asset List**

| Receiver's Account (as of 6/30/2019) | | |
|---|---|---|
| **Institution** | **Account Information** | **Amount** |
| AXOS Fiduciary Services | Checking | $1,023,577.44 |

| Receivership Defendants' Accounts | | | |
|---|---|---|---|
| **Institution** | **Account Information** | **Current Value[1]** | **Amount Transferred to Receiver's Account** |
| Wells Fargo | Checking (53 accounts in the names of the affiliates and affiliate entities included as Receivership Defendants)[2] | $16,321.68[3] | $105,870.94[4] |
| Wells Fargo | Checking (account in the names of Shaun Cohen and spouse) | | $23,065.43[5] |
| Byline Bank | Checking (2 accounts in names of Receivership Defendants) | $21,828.73 | |
| | | | Total: $128,936.37 |

| EquityBuild Real Estate Portfolio (in Illinois) |
|---|
| For a list of the properties within the EquityBuild portfolio identified by property address, alternative address (where appropriate), number of units, and owner, *see* Exhibit 1 to the Receiver's First Status Report, Docket No. 107. |

| Other, Non-Illinois Real Estate | |
|---|---|
| **Description** | **Appraised Market Value** |
| 1102 Bingham Street Houston, TX 77077 | Approximately $1.2M[6] |
| Single family home in Naples, Florida | ±$1,400,000.00[7] |
| | Approximate mortgage amount: $500,000.00 Approximate value less mortgage: $900,000.00 |
| Single family home in Plano, Texas | ±$450,000.00 |
| | Approximate mortgage amount: $400,000.00 Approximate value less mortgage: $50,000.00 |

[1] The Current Value reflects the approximate balance in the frozen bank accounts.
[2] The Receiver is investigating whether each of these accounts is properly included within the Receivership Estate.
[3] $16,321.68 reflects the value as of 2/26/19, the date of the last update provided by Wells Fargo, despite the Receiver's continued efforts to gather further information on the frozen accounts.
[4] This amount was transferred to the Receiver's Account as of 8/27/18, and is included as part of the total balance of the Receiver's Account as of 3/31/19.
[5] This amount was transferred to the Receiver's account as of 11/8/18, and is included as part of the total balance of the Receiver's Account as of 3/31/19.
[6] Source: Harris County Texas 2018 appraised value.
[7] Source: www.zillow.com