1          <u>TRANSCRIBED FROM DIGITAL RECORDING</u>

2              THE IN UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4                                        )
    UNITED STATES SECURITIES AND         )
5   EXCHANGE COMMISSION,                 )
                                         )   Docket No. 18 C 5587
6                       Plaintiff,       )
                                         )   Chicago, Illinois
7   -vs-                                 )   July 2, 2019
                                         )   11:00 AM
8   EQUITYBUILD, INC., EQUITYBUILD       )
    FINANCE, LLC, JEROME H. COHEN,       )
9   AND SHAUN D. COHEN,                  )
                                         )
10                      Defendant.       )

11                 TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE YOUNG B. KIM, MAGISTRATE JUDGE
12
    APPEARANCES:
13
    For the Plaintiff:        U.S. SECURITIES & EXCHANGE COMMISSION
14                            BY: MR. BENJAMIN J. HANAUER
                              175 W. Jackson Blvd., Suite 900
15                            Chicago, IL 60604

16  For the Receiver:         RACHLIS, DUFF, PEEL & KAPLAN, LLC
                              BY: MR. MICHAEL RACHLIS
17                            542 South Dearborn, Suite 900
                              Chicago, Illinois 60605
18
        **PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
19         NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
               PORTIONS UNINTELLIGIBLE AND INAUDIBLE
20

21  Transcriber:

22               SANDRA M. MULLIN, CSR, RPR, RMR, FCRR
                      Official Court Reporter
23                  United States District Court
             219 South Dearborn Street, Room 2260
24                  Chicago, Illinois  60604
                 Telephone:  (312) 554-8244
25               Sandra_Mullin@ilnd.uscourts.gov

1    APPEARANCES:    (Continued)

2    For USB AG:              PLUNKETT COONEY, PC
                              BY:  MS. JENNIFER WALKER
3                             221 North LaSalle Street, Suite 1550
                              Chicago, Illinois 60601
4
     For Citibank, U.S. Bank,
5    Wilmington Trust, and
     Fannie Mae:              FOLEY & LARDNER
6                             BY: MR. ANDREW T. McCLAIN
                              321 North Clark Street, Suite 2800
7                             Chicago, Illinois 60654

8    For Midland Loan Svcs.:  AKERMAN, LLP
                              BY: MR. THOMAS B. FULLERTON
9                             71 South Wacker Drive, 47th Floor
                              Chicago, Illinois 60606
10
     For BC57:                HONIGMAN LLP
11                            BY: MR. SCOTT B. KITEI
                              660 Woodward Avenue
12                            2290 First National Building
                              Detroit, Michigan 48226-3506
13
     For Freddie Mac:         PILGRIM CHRISTAKIS LLP
14                            BY: MR. JEFFREY D. PILGRIM
                              321 North Clark Street, 26th Floor
15                            Chicago, Illinois 60654

16   For Liberty EBCP:        JAFFE, RAITT, HEUER & WEISS
                              BY:  MR. JAY L. WELFORD
17                            27777 Franklin Road
                              Southfield, Michigan 48034
18
     Also Present:            MR. KEVIN B. DUFF, Receiver
19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2        THE CLERK:  18 CV 5587, United States Securities and

3    Exchange Commission versus Equitybuild, Inc., et al.

4        THE COURT:  Good morning.

5        MR. RACHLIS:  Good morning, your Honor.  Michael

6    Rachlis on behalf of the receiver.  With me is Kevin Duff.

7        MR. DUFF:  Good morning, your Honor.

8        MR. HANAUER: Good morning, your Honor.  Ben Hanauer

9    for the SEC.

10        MR. McCLAIN:  Good morning, your Honor.  Andrew

11    McClain on behalf of six different lenders.  US Bank as Trustee

12    for the registered holders of certificate series ending

13    2017-SB30, 2017-SB41 and 2018-SB50.  Citibank, as trustee for

14    the series ending 2018-SB48.  Wilmington Trust as trustee for

15    the series ending 2014-LC16, and Fannie Mae.

16        THE COURT:  I'm sorry, your name again?

17    (Laughter.)

18        MR. McCLAIN:  That was a mouthful.  Andrew McClain.

19        THE COURT:  Give me one second.  I see you here.

20        MR. WELFORD:  Good morning.  Jay Welford appearing on

21    behalf of Liberty EBCP LLC.

22        MR. PILGRIM:  Jeff Pilgrim on behalf of Freddie Mac.

23        MR. FULLERTON:  Good morning, your Honor.  Tom

24    Fullerton on behalf of Midland Loan Services.

25        MR. KITEI:  Good morning, your Honor.  Scott Kitei on

1   behalf of BC57.

2   MS. WALKER:  And good morning, your Honor.  Jennifer

3   Walker for UBS AG.

4   THE COURT:  Okay.  I did read over the consolidated

5   motion to amend May 2, 2019, memorandum of opinion and order.

6   Although the movants are not seeking this particular relief, if

7   the court were to accept all these restrictions or amendments,

8   essentially what has to happen is for the entire process to be

9   adjudicated.  In other words, the court would have to say who

10  is owed what before any property can be sold.  Would that be

11  fair to say?

12  MR. McCLAIN:  That's correct, your Honor.

13  THE COURT:  But this is the first time that the

14  movants are bringing up this issue.  Would that be fair also?

15  MR. McCLAIN:  No, that's not fair, your Honor.

16  THE COURT:  Why is that?

17  MR. McCLAIN:  Because we've been discussing this

18  issue since the onset of the case, that we need a priority

19  determination for each property.  We filed several months ago a

20  motion for expedited hearing and priority determination to kind

21  of catch this at the head to avoid where we are right now.  But

22  we do think that this is very ripe at this point because

23  yesterday was the claims-barred date.  So all claims should

24  have been submitted for all these properties.  So the receiver

25  should have in his possession all information related to these

1  properties and should be able to determine who has priority and
2  the amounts of each claim.
3          THE COURT:  And just so we're clear, the movants, the
4  creditors, do not have to exercise their right to submit a
5  credit bid; correct?
6          MR. McCLAIN:  We do not.  We're not formally required
7  to do it, your Honor.  But as part of our security interest, we
8  have the right to do it and we have the right --
9          THE COURT:  I understand that you have a right.  But
10 no one is forcing the creditors to do so.
11         MR. McCLAIN:  No one is forcing the creditors, your
12 Honor.  But the May 2nd order grants us the right, or security
13 interests grants us the right, Illinois law grants us the
14 right.  And to be able to fully protect our security interests,
15 we should be entitled to credit bid.
16         THE COURT:  I understand all that.  But you don't
17 have to do so; right?
18         MR. McCLAIN:  We do not have to do so, but, to
19 protect our interests, if the process plays out as it's
20 required, we would exercise our right to credit bid.
21         THE COURT:  And do you think that the courts should
22 only be sensitive to the creditors' rights?
23         MR. McCLAIN:  No, your Honor.  And I'm glad you
24 brought that up because the creditors are on the same footing
25 as all these Equitybuild investors.  And the reason being is

1    that we were duped just like the Equitybuild investors.  For

2    some reason, at the onset of this case, the receiver is taking

3    the position that the creditors are the bad guys.  But we've

4    been just as much impaired and injured by the clients'

5    actions --

6              THE COURT:  Well, let me stop you there.  Let me stop

7    you.  When the creditors were asking to modify the sealed bid

8    process in order for the creditors to exercise credit bid, and

9    you also say that you guys -- the creditors are on the same

10   footing as the Equitybuild investors.  But if I had allowed the

11   credit bid to move forward, as if this was a foreclosure action

12   and if the credit bid was accepted as the highest bid, the

13   creditor would actually take that asset.

14             MR. McCLAIN:  Well --

15             THE COURT:  Without any challenge whatsoever.

16             MR. McCLAIN:  No, your Honor, because --

17             THE COURT:  Why is that?

18             MR. McCLAIN:  Because if --

19             THE COURT:  What would happen?  How would the other

20   investors get any piece of that property if the credit bid was,

21   in fact, the highest bid?

22             MR. McCLAIN:  Because it's based on your right to

23   credit it.  So let's assume that one property has a creditor's

24   mortgage on it and an Equitybuild investor's mortgage on it.

25   The court would determine which of those mortgagees is first in

1  priority and which is second in priority.

2  So let's just assume a lender has a $2 million

3  mortgage and an Equitybuild investor has a $1 million mortgage.

4  If we are determined to be senior lienholder above the

5  Equitybuild investor, then, yes, we have the right to credit it

6  up to $2 million of our debt.  But if it was reversed, the

7  Equitybuild investor was determined to be senior, we were

8  determined to be junior, then the Equitybuild investor would be

9  entitled to credit bid their $1 million debt.  If we wanted to

10  also bid, what we would have to do is buy out the Equitybuild

11  investor, so they would be paid in full, and then we would step

12  into the senior position, and then we could credit bid the

13  remaining part of our debt.

14  So the Equitybuild investors have just as much right

15  if they have a valid lien and debt owed to credit bid as much

16  as we do.  And that's why we're asking that priority be

17  determined at this point.

18  THE COURT:  I see.  And this brings me back to my

19  other question, why this wasn't brought up before.

20  MR. McCLAIN:  It was brought up before, your Honor.

21  We did file a motion for expedited discovery and priority

22  determination.

23  THE COURT:  In the context of trying to approve the

24  sealed bid process this was brought up?

25  MR. McCLAIN:  Yes, it was, your Honor.  It was -- it

1    was in our objection, and then we filed a motion for expedited

2    discovery and evidentiary hearing.  And we -- we made the exact

3    same arguments, stating that this is not -- we're not trying to

4    jump ahead anyone else here.  All we're trying do is lay out

5    the facts to show who has priority, what the priority status

6    is, who is owed what, and then we can figure out who is

7    entitled to bid, how much they're entitled to bid.  We've never

8    been trying to jump ahead any Equitybuild investors here to the

9    detriment of anyone other -- any other parties because we're

10   all on the same footing here.

11             THE COURT:  So the court missed the argument of the

12   creditors, that no sale should take place before adjudication

13   of all issues regarding priority and what amount is owed to

14   each investor.

15             MR. McCLAIN:  We -- we did ask for that relief, your

16   Honor, and it was denied.  And then the sealed bid process was

17   approved, and then the claims process was also approved.

18             THE COURT:  So that particular argument was made in

19   response to a motion to approve a sealed bid process?

20             MR. McCLAIN:  I believe -- was it a sealed bid

21   process, or was it the -- or was it the claims procedures?

22             THE COURT:  You don't know?

23             MR. McCLAIN:  Actually, your Honor, if you just give

24   me a second, I do have the filing date.

25             So, your Honor, I misspoke.  On March 13th, we filed

1    a response for the motion for entry of order establishing

2    claims-barred date.  And then we also filed a cross motion to

3    discovery --

4              THE COURT:  I'm sorry, March 13, 2019?

5              MR. McCLAIN:  Correct.

6              THE COURT:  Okay.

7              MR. McCLAIN:  And it's Docket 285.

8              THE COURT:  Okay.  This is something filed with Judge

9    Lee or myself?

10             MR. McCLAIN:  This appears to be before Judge Lee.

11             THE COURT:  Okay.  Go on.

12             MR. McCLAIN:  And as part of that filing, we filed a

13   cross motion to set discovery schedule and hearing on lead

14   priority on an expedited basis and for related relief.  And,

15   yes, your Honor, in that filing we made a similar request as

16   we're doing now, that priority be determined at that point.

17             THE COURT:  And what was the ruling on your request

18   for priority determination?

19             MR. HANAUER:  I can assist, your Honor.

20             THE COURT:  Please, let me --

21             MR. McCLAIN:  The court entered a minute order on

22   May 1st, indicating that it will not address our request in

23   Motion 285 because it approved the claims process and set the

24   deadlines for the claim process schedule.

25             THE COURT:  Meaning the request was denied.

1        MR. McCLAIN:  Effectively, yes.

2        THE COURT:  Why do you bring it up again?

3        MR. McCLAIN:  Because, your Honor, they're trying --

4        THE COURT:  Why are you bringing it up again?  I

5   don't understand this.  It sounds to me like you made a request

6   in a timely fashion and Judge Lee denied the request.

7        MR. McCLAIN:  Your Honor, we're bringing it up now

8   because the May 2nd order grants us the right to credit bid.

9   That order is effectively elusory because we do not have the

10  right to credit bid right now.  Because Illinois law requires,

11  to effectively make a credit bid, you need two main facts:

12  One, you need a judicially determined amount of debt.  And,

13  two, you need to know priority on the property.  You need to

14  know the amount of your debt because that sets the amount that

15  you can credit bid.  So let's take an example.  If one --

16       THE COURT:  No, I don't -- we don't need to take an

17  example.  This is not an ideal situation.  This is not a

18  foreclosure situation.  Creditor is not controlling the

19  process.  We are doing what we can to balance the interest of

20  everyone involved.  Like you said, creditors are on the same

21  footing as the other Equitybuild investors.  When we have that

22  situation, we can't do something that is going to give all the

23  rights to one party over the other.  And, in my opinion, when I

24  looked at the argument that the creditor should be allowed to

25  submit a credit bid, I had to then balance the interests of the

1    investors.  And in a situation where we don't have priority

2    determination, what are you to do at this point?  If there is

3    no priority determination and the court has already -- already

4    ruled that we're not going to do at this point, what do you do

5    in order to protect the interests of all investors?

6              MR. McCLAIN:  Then you have a determination of

7    priority, your Honor, because the reason --

8              THE COURT:  We're going in circles here.  That

9    request has been denied.

10             MR. McCLAIN:  It has been denied in a different

11   scenario.  The reason we brought it right now is because

12   Illinois law mandates this.  I'm not talking about in a

13   foreclosure action solely.  To credit bid you must --

14             THE COURT:  So let me stop you.  Illinois law

15   mandates such a judgment and finding in this context?

16             MR. McCLAIN:  To credit bid, you need to know the --

17             THE COURT:  No, no, please.

18             MR. McCLAIN:  -- amount of your judicial --

19             THE COURT:  That was a simple question.  Illinois

20   law, you said, mandates such finding in this scenario, in this

21   context?

22             MR. McCLAIN:  Your Honor, I was not --

23             THE COURT:  Yes or no?

24             MR. McCLAIN:  No, there is not a case directly on

25   point.

1      THE COURT:  Why are you arguing it, then?

2      MR. McCLAIN:  Because to have a credit bid -- your

3 Honor, if --

4      THE COURT:  Again, you're repeating yourself.

5      MR. McCLAIN:  -- we credit bid, we are --

6      THE COURT:  You are repeating yourself.

7      MR. McCLAIN:  We are not -- we are assuming the risk

8 by credit bidding because we don't know how much --

9      THE COURT:  Exactly.  You are assuming the risk.

10      MR. McCLAIN:  But that's --

11      THE COURT:  You want to exercise the right, you do

12 assume the risk because there are other investors' interests at

13 play.  We are in a situation where the court has already denied

14 a request that we're not going to do priority determination.

15 It's not up to me to decide that.  That's law of the case;

16 right?  Would you agree with me that that's the law of the

17 case?

18      MR. McCLAIN:  In relation to the claims process, yes.

19 In relation to the May 2nd order, no, I would say that it is

20 not.  And the reason being is this court has held several times

21 in various instances that neither it --

22      THE COURT:  Stop.  Please, stop.  The only reason why

23 that that is because it wasn't going to trump anyone else's

24 interests, you know?  For instance -- and the part -- the

25 creditors like to point out that I entered an order or ruling

1    segregating the funds for each property.  But that wasn't

2    inconsistent with the interests of the Equitybuild investors.

3    Would you agree with me on that point?

4         MR. McCLAIN:  I -- I do agree with you on that point.

5    And I don't think that we're asking for any relief that is

6    inconsistent with any Equitybuild investors' rights.  In fact,

7    the credit bid process, the way it's set up right now, is

8    actually hindering the lender's pre-existing state law security

9    interest.  And this court has held, and there is Illinois case

10   law on that point, that we cannot -- the court, neither the

11   receiver, can modify or effect the pre-existing state law

12   interest of the lender.  And by not determining our debt amount

13   and by not determining priority, you're shifting the risk to

14   the lenders to assume the risk that we might get into an

15   overbid situation, or we might be a junior lienholder that then

16   has to satisfy a senior lienholder.  So you are affecting our

17   pre-existing security interests in these properties.

18        And what we're trying to do is lay it all out on the

19   table, make sure everyone is aware, the claims-barred date has

20   passed.  So anyone who has a security interest in these

21   properties has already filed a claim.  And we are just asking

22   that the court first figure out each property's debt and

23   priority before there is a sale process.  Before each one of

24   these properties is sold.  That's all we're asking for at this

25   point, your Honor.  We're not trying to --

1    THE COURT:  So if I agree with your position and I

2    said, oh, we need to have priority determination, how is that

3    not inconsistent with Judge Lee's prior ruling that there isn't

4    going to be a priority determination?

5    MR. McCLAIN:  Because that was in relation to the

6    claims process.  This is solely in relation to the credit bid

7    May 2nd order.

8    THE COURT:  Do you think -- do you think that

9    priority determination that this court orders isn't going to be

10   the same priority determination that's going to be required in

11   this particular case in a claims process?  It's going to be the

12   same thing.  Would you agree with me?

13   MR. McCLAIN:  The priority determination that --

14   THE COURT:  It doesn't matter which context --

15   MR. McCLAIN:  -- we're requesting now versus --

16   THE COURT:  -- it's in.

17   MR. McCLAIN:  -- versus what, I guess, falls out in

18   the claims process?

19   THE COURT:  Yes.

20   MR. McCLAIN:  Yes, it will be the exact thing.

21   THE COURT:  It's going to be the same thing.

22   MR. McCLAIN:  So then we would ask that the sales not

23   go forward until we determine priority and amounts owed.

24   THE COURT:  Again, why wasn't this raised before in

25   responding to the motions for approval of the sealed bid

1  process?

2  MR. McCLAIN:  This May 2nd order is in response to

3  our objection to the receiver's second sealed bid process

4  motion.  So it was raised again in that instance, and that's

5  why the court granted our objection.  Our

6  objection contained --

7  THE COURT:  So -- so I missed the argument of the

8  creditors that the sealed bid process should not continue

9  because we need to have priority determination.

10  MR. McCLAIN:  Yes, that's what we're asking.

11  THE COURT:  No, no, no.  I missed your argument, the

12  creditors' argument, that the sealed bid process should not go

13  forward because we need priority determination.  You argued

14  that point; did you not?

15  MR. McCLAIN:  I believe that point was argued, your

16  Honor.

17  THE COURT:  Okay.  Where?

18  MR. McCLAIN:  It was most likely argued at the

19  hearing for that objection.

20  THE COURT:  Hearing in this courtroom?

21  MR. McCLAIN:  I believe so.

22  THE COURT:  You believe that based on what?

23  MR. McCLAIN:  Based on the -- the position that we're

24  taking right now, is that this needs to occur.

25  THE COURT:  So this was the second request for

1    approval of a sealed bid process; right?

2            MR. McCLAIN:  The May 2nd order was in response to

3    the receiver's second motion.

4            THE COURT:  No, no, no.  I'm just trying to follow

5    your argument.  You said this argument was made in response to

6    the motion for second approval of sealed bid process; right?

7            MR. McCLAIN:  I'm actually just reviewing the

8    objection right now, your Honor.

9            THE COURT:  Objection to?

10           MR. McCLAIN:  The -- the second motion for sealed bid

11   process.

12           THE COURT:  Objection filed with this court?

13           MR. McCLAIN:  It's Docket 235, your Honor.  I don't

14   know which court it was --

15           THE COURT:  235?  That seems to be pretty old; right?

16           MR. McCLAIN:  It was February 19th.

17           THE COURT:  February 19th.  Was I even on the case in

18   February?

19           MR. HANAUER: Yes, your Honor.

20           THE COURT:  Okay.  And this 235 is the objection to

21   the receiver's motion for approval of a sealed bid process.

22           MR. McCLAIN:  Correct.  It's objections to receiver's

23   second motion for court approval of the process for public sale

24   of real property by sealed bid.

25           THE COURT:  Okay.  I will review it.

1       Let me turn to the receiver, Mr. Rachlis.  What is so

2   wrong with getting everyone's rights determined before any

3   assets are sold?  In other words, why is this so necessary now

4   to sell these assets?  Why can't we wait?  Why can't the

5   receiver simply operate the buildings and generate income while

6   we work through these issues?

7       MR. RACHLIS:  I think, as your Honor probably heard

8   from some of the other hearings that we've had before you,

9   there are many properties involved here that don't have high

10  tenancy rates, that have other physical problems and issues

11  with them, that are not making enough money.  And, of course,

12  your Honor knows from the rent segregation ruling, that has

13  impacted the ability to even deal further with those issues.

14      So the idea -- the fact is is that, many of those

15  properties need to be sold so that they can -- so that the --

16  any losses of the inability to have income from them can be --

17  can be capped.  That, in essence -- there are other issues, of

18  course, too.  I mean, a liquidation, going back sort of in

19  looking to this point, your Honor, of course, knows that the

20  job of the receiver is to have a liquidation plan and an

21  orderly process for the disposition of these assets.

22      THE COURT:  But sometimes the receiver's job is also

23  to generate income, or at least continue the operation.

24      MR. RACHLIS:  And that is, indeed, what has been

25  going on to this point.  And we've been very much -- it has

1    been a struggle at times, as I think this court knows, and as

2    Judge Lee knows, too, in trying to address many of the issues

3    at 113 different properties.  So the balance and the business

4    judgment that has been placed in the receiver by the court to

5    both monitor -- to monitor the business, operate the business,

6    and part of that includes disposition of assets for an orderly

7    process liquidation plan, set that forth.  And we've been

8    trying to do that since that point in time and unfortunately

9    have run into delay after delay, which, unfortunately, is being

10   exhibited further here through this hearing today.

11           THE COURT:  But why isn't it possible to sell those

12   properties that are not encumbered and continue to operate the

13   properties that are, in fact, encumbered?

14           MR. RACHLIS:  Well, some of the ones we -- we have

15   been in the process of selling the unencumbered properties.

16           THE COURT:  I'm sorry?

17           MR. RACHLIS:  We have been selling the properties

18   that are unencumbered.  We have been trying to -- also, we've

19   sold properties that have encumbrances on them too and have put

20   those monies in escrow.  The problem, of course, relates to

21   what type -- what is the condition of the property; right?  I

22   mean, at a certain point, is it generating enough income?  What

23   is time of vacancies?  What is the physical condition?  How

24   much money is necessary in order to have that property be

25   something that can be used?  Or is it better off sold and let

1    others go ahead and deal with those -- with those questions.

2    Of course, there other operational issues:  Property taxes,

3    water -- water, utility bills.  All of those types of things

4    that we have -- essentially have to take over.  And some of

5    these things went back to 2017, when the Cohens were still

6    operating.  There were debts and obligations that were being

7    incurred and remained on the books associated with some

8    properties with that.

9          The bottom line is, is that, many of these properties

10   have operational issues.  And we are making every effort.  And

11   the batches of properties here that are part of this sale, not

12   every single one, but most of them are precisely those type of

13   properties.  And it is to the benefit of all of the victims of

14   the fraud to have those properties sold.  And as the court is

15   aware, have the proceeds put in escrow.  There is no harm in

16   that.  There is no harm whatsoever because those properties are

17   placed in escrow pursuant to this court's order.

18         THE COURT:  But what Mr. McClain is arguing, though,

19   Mr. McClain argues that the right to credit bid is elusory

20   because it's taking on way too much burden and risk.  It does

21   not have to.  But in order for the creditors to not have that

22   burden and the risk, it needs to know exactly what it is

23   entitled to.

24         So let me ask you to address Mr. McClain's argument

25   that, even though Motion No. 285, where the creditors are

1     asking for lien priority, Judge Lee denied that request, why it

2     can't be raised in this context.  And Mr. McClain says, that's

3     not law of the case because the context is different.

4            MR. RACHLIS:  It's not different.  Look, at the

5     end -- we do have to look back in history here.  I think your

6     Honor had it absolutely correct in terms of looking at the

7     record here.  The record is is that these issues have been

8     raised both before your Honor and before Judge Lee in terms of

9     priority hearings, and things of that nature, and had been

10    rejected.  Your Honor is correct that any such hearing would be

11    the same, no matter when it's held.  Your Honor is further

12    correct, and the record will reflect, if you look at the --

13    your Honor didn't miss any -- any point of argument when

14    raised -- when those were raised in response to the second

15    motion for approval of the process for public sale of real

16    property by sealed bid, which is Document No. 228.  There were

17    three filed objections.  Not a single one of them raised any of

18    these issues, which your Honor correctly notes would

19    essentially upend and overturn all the other rulings that have

20    occurred to date.

21            And whether that is law of the case that requires it

22    or whether it's just good, old-fashioned estoppel, which it

23    should be in this point in time.  They come into this

24    courtroom, they don't make any of those arguments.  They say,

25    we just want a simple process where we can credit it.  We want

1    to be able to bid, just like anybody else.  They never advised

2    the receiver, they never advised the court of any of these

3    issues.  And, now, having lost on all of those other arguments

4    before this court and Judge Lee on priority, and things of

5    that, they come again to take a second swipe.  They don't come

6    really -- I mean, when you look at why we're here, we're here

7    to try to establish the rules under on the credit bid process;

8    right?  That's what we're trying to do.  And Liberty, to its

9    credit, despite, I think it's fair to say, that we have been

10   certainly not on the same footing.  On a variety of issues,

11   they have been as a vociferous an objector as anybody here, we

12   were able to reach agreement on what those credit bid rules

13   could look like.  That is not what they are arguing here.  What

14   they're arguing about, again, is priority.  That's the same

15   issue never raised on these motions and already previously

16   rejected.  The court is absolutely right, there is no reason to

17   do that now.

18           MR. McCLAIN:  Your Honor, if I may just correct

19   something for the record?

20           THE COURT:  Hold on.  Mr. Rachlis, are you done?

21           MR. RACHLIS:  Yes, if I -- hopefully I've responded

22   to your question.  I do want to do that.

23           THE COURT:  Yes.  Mr. Hanauer, do you have anything

24   to add?

25           MR. HANAUER:  Just to directly respond to your

1     question, your Honor, about why is it necessary now that the

2     properties be sold.  It's the SEC's understanding, after

3     conferring with the receiver, that the very properties he is

4     trying to sell right now are the money-losing properties.  This

5     stems from the original -- the very first request of the

6     creditors that the rents need to be segregated.  They got what

7     they want on that.  That's created some issues that each of the

8     properties now needs to be siloed.  And there are a decent

9     amount of properties that are just flat out losing money that

10    the receiver can't use any of the other properties to help.

11    Those are the properties that the receiver chose to sell now to

12    get those money-losing properties off his books now.  He has

13    been trying to sell them, I think, since early this year.  By

14    pushing this process back even further, which Judge Lee has

15    rejected, just means that those properties continue to lose

16    money ultimately to the detriment of the creditor pool as a

17    whole.

18            THE COURT:  Why isn't it possible to simply shut it

19    down?  If it's money-losing operation, shut it down until you

20    have its determination as to who should be taking over that

21    particular building.

22            MR. HANAUER:  Because there are -- there are tenants

23    that live in these buildings.  There are operations.  As you've

24    heard, the city came in when we had another hearing saying, you

25    just can't leave it like this.  Something has to be done.

1  There are crumbling porches, there are other things that are
2  going on.  You cannot not pay attention to things.  Shutting it
3  down is --
4          THE COURT:  I'm just trying to get an understanding.
5          MR. HANAUER:  Yeah.
6          THE COURT:  When you shut it down, tenants have to
7  move out.
8          MR. HANAUER:  Yes.
9          THE COURT:  So why can't we do that?  I'm just -- I'm
10  just curious.
11          MR. HANAUER:  That will actually, then, get
12  potentially -- could devalue whatever property -- the value of
13  the property could be devalued.  If you're going to kick
14  tenants out at that point in time, you then are going to hinder
15  potentially the ability and pricing of that property.  There is
16  a balance here.  And this does go directly to the business
17  judgment that has been lodged with the receiver in terms of
18  operating the Equitybuild receivership estate at this point in
19  time.  And we have made every effort, including third-party
20  advisors, and things of that nature, to try and operate within
21  this context.
22          Your Honor, there is a legal justification here, too.
23  It's not just sort of a factual discussion.  While it is
24  absolutely accurate that no Illinois law supports anything that
25  the creditors are advancing here --

1          MR. McCLAIN:  That's not true.

2          MR. HANAUER:  -- is actually -- if I could finish.

3     If you look at some of the law, including your Honor cited the

4     *Octagon* case in the May 2nd order and other orders like that,

5     other opinions like that, they go back to a Section 363(f) of

6     the bankruptcy code.  And many plans refer to that point.  And

7     courts, bankruptcy courts, have at least noted some of the

8     following, which I will set forth for your Honor, as further

9     evidence as to why the process today has been appropriate and

10    what the process here -- why the process here is appropriate.

11         It talks about the fact that 363(f) of the bankruptcy

12    code is a powerful tool, permitting, in that context, the

13    bankruptcy trustee to maximize the recovery from an asset

14    without being duly entangled in an early stage of the

15    proceeding and controversies concerning the existence, validity

16    and priority of liens and other interests in properties sought

17    to be sold.  Instead, Section 363(f) allows a trustee to

18    quickly cut through the potential morass of such controversies,

19    promptly sell the property for the best price available and

20    hears all those controversies a later date.

21         That's precisely the process -- while it is

22    instructive here, the bankruptcy practice, that's precisely

23    what the courts have done to this point, and that's exactly

24    what we are trying to do.  Sell those properties, segregate

25    them, as your Honor has ordered be done, and then we can limit

1  any -- any issues associated with those properties.  And then

2  we can have the priority hearings down the road, as both your

3  court and Judge Lee has indicated would occur at a later point

4  in time.

5          MR. McCLAIN:  Your Honor, may I respond?

6          THE COURT:  Yes.

7          MR. McCLAIN:  First, I just want to set the record

8  straight that the Motion 285 was actually filed before your

9  Honor, and your Honor entered a minute order on May 1st, that's

10  Docket 349, in which you indicated that you will not address

11  the issues in that motion.

12          Secondly, going back to what both the SEC and the

13  receiver have brought up is that they're trying to sell

14  properties that are losing money.  Well, your Honor, if they

15  are losing money, they should be abandoned by the receiver

16  because the -- that is just a drain on the receivership estate.

17  So if one of these properties is underwater and it is fully

18  secured by one of the lender's liens, there is no benefit

19  that's going to go back to the estate.  All the -- all the

20  benefit is going to the receiver by keeping those properties in

21  the receivership and racking up additional fees.  No money will

22  go to the receivership estate after the sale.  The only money

23  that will transfer is money to pay the closing costs.  And then

24  the rest of the money will be segregated and held in escrow

25  pursuant to our security interest.  So that just highlights the

1    fact of why we need to expedite this process.

2              And, additionally, when he talked about -- when the

3    receiver talked about that we're trying to upend the process,

4    your Honor, we are not trying to upend the process.  This court

5    has already made it clear that we are entitled to credit bid.

6    All we are asking is that that credit bid procedure be

7    consistent and conform to Illinois law.  And to do that, we

8    need two facts resolved:  Amount owed and priority.

9              THE COURT:  I get that.  Let me ask you, you said

10   that the three -- March 13, 2019, Motion 285, was addressed to

11   me, and I entered the order on May 1.

12             MR. McCLAIN:  Correct.

13             THE COURT:  So I'm the only judge who addressed the

14   issue of lien priority?

15             MR. McCLAIN:  I -- I don't recall if we raised it

16   before Judge Lee or not, your Honor.

17             THE COURT:  Mr. Hanauer, you're shaking your head.

18             MR. HANAUER:  Yes, that was absolutely raised in

19   front of Judge Lee when he heard the appeal of your orders

20   allowing the claims process to proceed.  And he rejected the

21   arguments that a priority determination should come first, and

22   he ordered that the priority information should be part of a

23   claims process.

24             THE COURT:  All right.  So --

25             MR. McCLAIN:  Again, your Honor, that's a separate

1  issue.  What is before the court --

2      THE COURT:  I understand.  We don't have to cover

3  that ground again.  I do want to give the others an opportunity

4  to say something in supplementing Mr. McClain's arguments.

5  Anyone?

6      MR. WELFORD:  Your Honor, Jay Welford on behalf of

7  Liberty.  I think, to put it in the clearest of terms, we have

8  two procedures, motions, that were filed.  The first motion had

9  to do with the claims process.  And the lender group said

10  before -- we don't want to wait until the claims are all in, we

11  should adjudicate priority now and set a schedule to do that.

12  That is what was denied.  Then what occurred --

13      THE COURT:  When?

14      MR. WELFORD:  As part of -- I don't have all those

15  dates, but I'm just giving you the general overview of this.

16  As part of that motion, the ruling was made, we're not going to

17  adjudicate priority, and we're going to allow the claims

18  process to go forward.  That was the first ruling.

19      The second thing that occurred is that we had the

20  sale procedures.  When we got to the sale procedures, the

21  concept of the ability to credit bid came into the fold.  And

22  as part of that, the determination was made that the -- both

23  the lenders, the traditional lenders, and even an Equitybuild

24  investor, should have the right to credit bid.  They could be

25  first, we could be first, we don't know.  But what occurred,

1  then, is, when you get to the concept of credit bid, under

2  Illinois law, when you determine how much to credit bid, you

3  first need to know the dollar amount.  And, second, you need to

4  know the priority.  And so that's where the conflict is.  I

5  don't think these lenders are trying to re-tread.  I think that

6  we now have a conceptual problem because we have a new ruling

7  that was not before the parties at the time --

8          THE COURT:  So you agree with the argument

9  Mr. McClain made that if a property is losing money, it should

10 be abandoned.  In other words, the tenants should be moved out

11 and close out the property and operation.

12         MR. McCLAIN:  Your Honor, if I may just clarify, I

13 was not indicating that the tenants should be evicted or moved

14 out.

15         THE COURT:  Well, how do you abandon a property

16 without taking the tenants out?

17         MR. McCLAIN:  It is removed from the auspice of the

18 receivership estate.  So the stay is lifted, and the lender,

19 who has a mortgage on the property, can then foreclose on the

20 property.

21         THE COURT:  You mean take it out of the receiver's --

22 receivership assets?

23         MR. McCLAIN:  Correct, your Honor.  And the stay be

24 lifted until the property is no longer subject to the

25 receivership's jurisdiction.  And then the lender can proceed

1  with foreclosure as it wishes, and then they enforce their
2  security interests through that.
3              THE COURT:  And the other creditors are in agreement.
4              MR. HANAUER:  And, your Honor, just --
5              THE COURT:  Hold on.  Just, for the record, it
6  appears that all creditors represented in court are in
7  agreement.
8              Yes?
9              MR. HANAUER:  Your Honor, when we were in front of
10  Judge Lee, the creditors explicitly raised this abandon
11  argument and Judge Lee explicitly rejected it.  And it's --
12  it's not -- and one of the reasons he did is because it's
13  just -- just because the property is not making money or is
14  underwater doesn't mean that there is -- there is not value in
15  it to either the investors or the secured lenders.  Just
16  because the property is underwater, when the property is sold,
17  money is going to come back into the receivership.  It may not
18  be at the full purchase price, or what have you, but a
19  significant amount of money will come in.  It's that pot of
20  money that the investors and the creditors are going to fight
21  over.  But as we explained to Judge Lee, and he agreed with,
22  simply because abandoning the properties would mean the
23  creditors are going to rush into Cook County court and the
24  investors won't be able to do anything.
25              THE COURT:  Let me ask Mr. -- hold on.  I do have

1    another hearing, so I want to ask Mr. McClain, was the

2    abandonment argument raised before?

3         MR. McCLAIN:  Your Honor, yes, it has been raised

4    before, but in an entirely different context, as Mr. Welford

5    has pointed out.  And --

6         THE COURT:  Okay.  Fine.  Fine.  I -- hold on.  Hold

7    on.  See, in terms of telling the creditors that the court will

8    not get involved in adjudicating priority, see, I -- I would

9    not have done that because that would not be within the scope

10   of my referral.

11        MR. McCLAIN:  Your Honor, the minute order actually

12   states that the court will not address in this order the issues

13   not properly before the court and arguments having nothing to

14   do with the instant motion, namely assertions raised by certain

15   creditors in their response/cross motion 285.

16        So you did not outright deny it, you just indicated

17   that you were not going to assess it.

18        THE COURT:  So Mr. Hanauer takes the position that

19   this issue was raised with Judge Lee and Judge Lee denied

20   that --

21        MR. McCLAIN:  As Mr. Welford pointed out, it was in a

22   different context.

23        THE COURT:  Okay.

24        MR. McCLAIN:  What we're trying to sort out now is

25   the May 2nd order.

1    THE COURT:  All right.

2    MR. McCLAIN:  And, your Honor, if I may address one

3 thing that the SEC just brought up?  It's an underwater

4 property.  By definition, that means that there is more owed on

5 the property than the property is worth.  So if, for instance,

6 the property is only worth a million dollars but you have a

7 $2.5 million mortgage on the property, no money is going back

8 to the receivership estate.  All the money is going to go

9 towards the secured interests in that property.  There is no

10 money going back.  That's why we're asking --

11    THE COURT:  No, but that assumes that the creditor

12 has 100 percent interest and not the investors.

13    MR. McCLAIN:  And that's precisely what we're trying

14 to sort out right now, your Honor, so that we can figure that

15 out.  Because, at this point, no money is going back to the

16 estate.  The receivership -- or the receiver has already

17 indicated he is willing to escrow the funds.  This court has

18 ordered him to escrow the funds.  So no money is effectively

19 going back to the receivership estate.  So we're trying to just

20 catch this at a head before the receiver continues to rack up

21 additional fees.

22    MR. RACHLIS:  Your Honor, may I make one other point?

23    THE COURT:  Last point.  Go ahead.

24    MR. RACHLIS:  Your Honor, this argument has also been

25 raised before your Honor as well.  That is precisely why the

question about who gets the keys; right?  We were talking about
when something is, quote, abandoned, or things of that nature,
there is no -- there is a host of victims that would have the
same rights that the folks standing before you have.  This --
in this context by escrowing the money, their rights are
protected.  It is essentially the receiver's actions here are
designed, as I believe the courts are, and as stated in various
words today, to protect the interests of all of those possible
folks with a claim to those -- those proceeds from those
properties.  That's why they're being segregated.  That's why
they've been siloed, if you will.  And that's precisely why the
orders have been as they've been.  This argument has come up
from last November, when we first talked about sales -- when we
first talked about sales of properties, all the way to today.
It's the same issue that continues to be raised, and I believe
the same result is -- is warranted --

THE COURT:  Thank you.

MR. RACHLIS:  -- as both you and Judge Lee have
indicated.

THE COURT:  I would like the receiver's office to
help us -- you don't have to file anything, just a phone call.
Just point me to the record where the request for adjudicating
priority was denied, where the abandonment argument was
addressed by Judge Lee.  Those two things.  That's all I want.
I just need some assistance with that so that we can quickly

1    get to this particular motion as -- motion.

2              All right.  Thank you.  Yes?

3              MR. HANAUER:  Your Honor, one very important point on

4    an unrelated matter.  This is for the evidentiary hearing next

5    week.  I just thought, while we're in open court, defendant

6    Jerome Cohen filed another motion to continue the hearing.  The

7    SEC objects to that motion.  I'm about to be gone for the

8    holiday in an area where I can't work on the response, but it's

9    very critical for the court to know that for some time Jerome

10   Cohen and his wife have been out of the country in Israel.  In

11   their many requests to continue the hearing --

12             THE COURT:  I'm sorry, Mr. Hanauer, we're getting

13   into the merits of the motion.

14             MR. HANAUER:  No.  No, your Honor.  Just -- a

15   response will not -- I will not be able to file.

16             THE COURT:  Well, you filed one already.

17             MR. HANAUER:  Right, but Jerome Cohen just filed

18   another.

19             THE COURT:  I understand, but it's the same motion;

20   right?

21             MR. HANAUER:  Well, Judge Lee denied his motion in

22   order that it be --

23             THE COURT:  So I'll read your response to that

24   previous motion.

25             MR. HANAUER:  But, your Honor, just a point, because

1    Jerome Cohen has never raised it.  He is not in the country

2    right now, and neither is his wife.  His wife did not show up

3    for her deposition last week.  And in all the filings Jerome

4    Cohen has made to continue the hearing, I just want to make the

5    court aware that he has not apprised the court that he has

6    never been in the United States during all these times he has

7    attended or moved the hearing.

8              THE COURT:  I see.  I see.

9              MR. HANAUER:  Thank you, your Honor.

10             THE COURT:  Thank you.

11             MR. McCLAIN:  Your Honor, may I just request that

12   whatever the receiver tenders to the court, that he provides a

13   copy to everyone, either it be filed on the docket or he just

14   give us a copy?

15             THE COURT:  Well, you can call together, or at least

16   let them know what's been said.

17             MR. RACHLIS:  We will do that your Honor, yes.

18             THE COURT:  Okay.  Thank you.

19             MR. McCLAIN:  Thank you, your Honor.

20             MR. HANAUER:  Thank you, your Honor.

21        (Which were all the proceedings heard.)

22

23

24

25

1          CERTIFICATE

2          I certify that the foregoing is a correct transcript from

3     the digital recording of proceedings in the above-entitled

4     matter to the best of my ability, given the limitations of

5     using a digital-recording system.

6

7     /s/Sandra M. Mullin                    August 8, 2019

8     _____          _____
      Sandra M. Mullin                           Date
9     Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25