**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 18-cv-5587 |
| v. ) ) | Hon. John Z. Lee |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. ) ) | |

**RECEIVER'S SECOND STATUS REPORT ON CLAIMS**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen as defined in the Order Appointing Receiver (Docket No. 16) and Order granting the Receiver's Motion to Amend and Clarify Order Appointing Receiver to Specifically Identify Additional Known Receivership Defendants (Docket No. 290) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court entered on August 17, 2018, respectfully submits this report identifying those liens that are contested and the Receiver's preliminary explanation for the dispute, and states as follows:

**PRELIMINARY STATEMENT**

The Receiver received more than 2,000 claims submissions that are now being reviewed and analyzed. There are also a handful of claims still in progress to be submitted at a later date. The claims process is at a very preliminary stage and will require a much deeper and complete review than what has been possible to date; as a matter of fairness and equity to all victims and

creditors who submitted claims, the review must be conducted in as complete, efficient, and equitable fashion as possible (within the context, of course, of the additional work of the Receivership Estate). As such, it is important to note that the information contained in this report is based on the best information known at the time this report is submitted. This report provides preliminary information but does not contain any conclusions or admissions. It also identifies some issues that are expected to or may impact the claims analysis, but it is not possible at this time to provide a report that is comprehensive nor exhaustive in that regard.

I. **DISPUTED CLAIMS AND RECEIVER'S PRELIMINARY EXPLANATION FOR THE DISPUTE**

For purposes of this preliminary status report, the Receiver considers a lien to be contested if two or more claimants identified secured claims against one or more of the properties presently believed to be within the Receivership Estate.[1] To aid in this explanation, the Receiver attaches a spreadsheet that identifies each property and the general categories of allegedly secured claims submitted as to each property. (*See* **Exhibit 1**) Exhibit 1 identifies on a preliminary basis competing liens on properties presently believed to be within the Receivership Estate. This spreadsheet is based on a preliminary analysis of proof of claim forms and does not reflect any conclusions or admissions. It also shows, for each property, whether the Receiver received claims from investor lenders (*i.e.*, EBF affiliate debt) or institutional lenders; and, for those properties for which an institutional lender asserted a cross-collateralized loan (*i.e.*, secured by more than one property) whether there is a corresponding EBF debt claim on any of those properties.

---

[1] The Receiver also notes there are other claims that have been raised – such as unsecured claims or equity investor claims – that will also need to be evaluated.

2

As reflected in Exhibit 1, the claims asserting secured EBF affiliate debt[2] are based on a claimants' self-classification in their submitted proof of claim form as an investor lender and identification as having a secured interest in a property. At this preliminary stage, the Receiver has not yet thoroughly or completely analyzed these claims to determine (to the point of making a recommendation to the Court) which, if any, investor lenders actually have a secured interest. Therefore, the Receiver is not expressing any conclusions with respect to the secured nature or validity of these claims at this time. The Receiver is simply identifying for the Court the fact that claimants submitted claims against certain properties asserting secured interests as investor lenders.

As the Receiver stated in the first claims report (Docket No. 468, at 6), following a preliminary review, it appears certain claims may contain factual assertions that may not be supported by the documentation submitted with the claim. To determine the validity of these purportedly secured claims, the Receiver has begun and will need to continue to thoroughly and completely review all claims (including the proof of claim form and all supporting documents), publicly recorded documents, EquityBuild records, and other sources of documents to determine which of these claimants actually hold a valid security interest.[3]

Based on the preliminary analysis, it appears the vast majority of properties presently believed to be within the Receivership Estate have secured claims asserted by both investor lenders and institutional lenders (in addition to many which also have unsecured claims asserted against

---

[2] EBF-affiliate debt refers to debt associated with loans made by investor lenders who were defrauded by the Ponzi scheme.

[3] The Receiver identifies such investor lender claims in an exemplary fashion. Secured claims have also been submitted by various institutional lenders. The Receiver also is analyzing those claims, including as to which, if any, lenders (institutional or otherwise) ought to be the subject of discovery. (*See* Docket No. 352, May 2, 2019 Order, at 7 n.2)

them), and as such there will need to be resolution of issues of priority as well as other claims related issues. To evaluate and resolve these priority disputes, the Receiver will need to analyze each claim form and all supporting documents, publicly recorded documents, collateral agency and servicing agreements, EquityBuild documents, third party documents received pursuant to subpoenas, and other available documents for each property. In a number of instances, the Receiver will also need to analyze and make a recommendation to the Court with respect to the validity of releases associated with liens on certain properties. From a preliminary review of properties with such priority disputes, it appears that EBF affiliate debt was not released on certain properties, and others appear to have facially invalid releases, payoff letters but no releases, and/or releases where some but not all EBF mortgagees signed a release. The Receiver will also need to closely review circumstances surrounding "rolled over" investments. It appears from an initial review of some of the claims submitted that EBF mortgagees may have rolled over a secured interest in a property to either an unsecured interest or equity investment. It further appears that similarly situated investors may have additional nuanced differences with respect to their claims as a result of their dealings with the Defendants, which will require a careful review of all forms and supporting documents.[4]

Providing some additional and more granular information based on a preliminary review, there appear to be fifteen properties (1700 Juneway, 4533 S Calumet, 5001 S Drexel, 5450 S Indiana, 7749 S Yates, 7109 S Calumet, 4520 S Drexel, 4611 S Drexel, 1131 E 79th, 6217 S Dorchester, 6250 S Mozart, 638 N Avers, 7024 S Paxton, 7255 S Euclid, 6160 S King Drive) with

---

[4] The Receiver is working with Axos Fiduciary Services where possible to reduce the cost of data input and review. (*See also* Docket No. 468 at 4, n.1)

respect to which claims in dispute have been submitted by both investor lenders (ranging from a single claim to upwards of 50 claims per property) and institutional lenders.

There are 71 properties in the Receivership Estate for which claims have been submitted that are the subject of cross-collateralization. The Receiver's preliminary review of submitted claims has identified the following instances where claims in dispute have been submitted by both investor lenders and institutional lenders involving a cross-collateralized loan:

- An institutional lender asserted one secured claim against fifteen properties. There were also secured claims asserted by one or more EBF investor lenders on two of these properties (7953 S Woodlawn and 8107 S Kingston) and claims asserted by equity investors on all of these properties. Because the institutional lender asserted a single claim against all fifteen properties, and because there is a secured claim for EBF debt on two of these properties, at this time the Receiver is preliminarily treating all properties that are part of the institutional lender's claim as in dispute.

- An institutional lender asserted one secured claim against six properties. There were also secured claims asserted by one or more EBF investor lenders on three of these properties (5437 S Laflin, 7760 S Coles, and 7300 Saint Lawrence) and claims asserted by equity investors on all of these properties. Because the institutional lender asserted a single claim against all six properties, and because there is a secured claim for EBF debt on three of these properties, at this time the Receiver is preliminarily treating all properties as part of the institutional lender's claim as in dispute.

- An institutional lender asserted one secured claim against seven properties. There were also secured claims asserted by EBF investor lenders on six of these

5

properties, and claims asserted by equity investors on one of the properties. Because the institutional lender asserted a single claim against all seven properties, and because there is a secured claim for EBF debt on six of these properties, at this time the Receiver is preliminarily treating all properties as part of the institutional lender's claim as in dispute.

- An institutional lender asserted one secured claim against five properties. There were also secured claims asserted by one or more EBF investor lenders on each of those properties, with the number of secured EBF claims on these properties ranging from a half dozen to upwards of 60 per property. As such, at this time the Receiver is preliminarily treating all properties as part of the institutional lender's claim as in dispute.

- An institutional lender asserted one secured claim against seventeen properties. There were also secured claims asserted by EBF investor lenders on each of those properties, with the number of secured EBF claims on these properties ranging from approximately three to upwards of 50 per property. As such, at this time the Receiver is preliminarily treating all properties as part of the institutional lender's claim as in dispute.

- An institutional lender asserted one secured claim against seven properties. There were also secured claims asserted by EBF investor lenders on five of these seven properties. Because the institutional lender asserted a single claim against all seven properties, and because there is a secured claim for EBF debt on five of these properties, at this time the Receiver is preliminarily treating all properties as part of the institutional lender's claim as in dispute.

6

It is important to note this narrative is based on preliminary analysis of claims submitted against properties identifying cross-collateralized institutional debt. The Receiver may take a different view on the proper way to understand the relationship as his review continues and his analysis evolves. The Receiver also has initiated discussions with counsel for one of the institutional lenders and plans to have additional discussions to determine whether there may be ways to reduce or narrow potential disputes as to cross-collateralized properties.

There are two properties (6751 S. Merrill and 7110 S. Cornell) where the only secured claim asserted against the properties were by institutional lenders. There is also a property (6949 S. Merrill) where it appears an institutional lender asserted a secured claim and two unsecured equity investor claims were also asserted. Disputed issues on these properties include but are not limited to whether the lender has a valid security interest (*i.e.*, whether the lender had inquiry notice discussed *infra*), and to what extent the lender is entitled to recover contract interest, default rate interest, prepayment penalties, attorneys' fees, costs, and other sums and also the amount of any lien the Receiver may assert for administrative expenses. As stated in the Receiver's first report on claims (Docket No. 468, at 5), disputed issues in regards to priority as they relate to all of the claimants relative to the properties also may include without limitation:

- Whether, and to what extent, releases and payoff letters issued by EquityBuild Finance in connection with mortgage debt refinancings through institutional lenders were legally sufficient or insufficient to extinguish the "first in time" security interests of EquityBuild investor-lenders.

- Whether any claimants were on inquiry notice or otherwise acted in concert with the Defendants to deepen the insolvency. *See, e.g., In re Sentinel Mgmt. Group, Inc.,* 809 F.3d 958 (7th Cir. 2016).

7

- Whether any claimant received a fraudulent transfer.

- Whether, and to what extent, unrecorded mortgages on various EquityBuild Receivership Estate properties are entitled to recognition and priority.

- Whether, and to what extent, funds wired to EquityBuild Finance in connection with the closings of refinancings through institutional lenders were ever, in turn, distributed to the corresponding investor lenders.

- The amount of any lien the Receiver may assert for administrative expenses.

Based on the Receiver's preliminary analysis, there appear to be thirteen properties where only EBF affiliate debt was asserted against each property. Apart from determining whether these represent a valid security interest, disputed issues include but are not limited to whether and to what extent the lender is entitled to recover interest, attorneys' fees, costs, and other sums claimed and also the amount of any lien the Receiver may assert for administrative expenses.

There also appear to be properties (presently believed to be unencumbered) where claims not only include unsecured equity investors asserting a claim against a fund or entity but also include secured claims submitted against the property. The Receiver will need to review without limitation all documents submitted by claimants and consult the public record in regard to these properties.

## II. OTHER ISSUES THE RECEIVER MUST CONSIDER DURING HIS CLAIMS ANALYSIS

There are several categories of open issues the Receiver recognizes may impact the claims process. The Receiver expects to continue receiving completed claims forms because he granted extensions, in accordance with the Court's order on the claims process, to ten claimants for whom extenuating circumstances appeared to preclude a timely filing. Some but not all of these claimants have submitted claims forms and documents.

Beyond those issues, from a preliminary analysis of claims submitted by mail or email to the Receiver, it appears there are claimants who failed to submit a completed claims form. Illustrative examples include without limitation one claimant who failed to include a claimed amount and others who submitted documentation but failed to submit a claim form. As noted, there also are claims submitted against properties that are not presently identified as within the Receivership Estate. (Docket No. 468, at 5)

Additionally, the Receiver is evaluating potential tax implications relating to entities in the Receivership Estate, the disposition of assets (including but not limited to the sale of real estate), and the claims process. On May 22, 2019, notice of the claims process was given to a number of taxing authorities, including the following: the Internal Revenue Service, Texas Workforce Commission, Illinois Department of Revenue, Florida Department of Revenue, Texas Department of Revenue, New York Department of Revenue, Colorado Department of Revenue, Washington Department of Revenue, Delaware Division of Revenue Financial Department, Wyoming Department of Revenue, Mississippi Department of Revenue, Colorado Department of Labor & Employment, Louisiana Department of Revenue, Taxpayer Account Administration Division, Oklahoma Tax Commission, Oklahoma Department of Revenue, and the California Department of Revenue. One taxing authority – the Texas Comptroller of Accounts – filed a claim relating to franchise tax under Tax Code Chapter 171.

## III. THE RECEIVER'S PRELIMINARY PROCESS FOR REVIEWING CLAIMS

The Receiver seeks to implement a process that is fair, efficient, comprehensive, and provides finality and certainty for all claimants. As to ongoing claims review and analysis, once all claims have been submitted and the Receiver has had an opportunity to review all 2,000 claims submissions, the Receiver intends to expeditiously ascertain, evaluate, and/or determine (as well

9

as identify additional information that may be necessary with respect to) *without limitation,* the following:

    i. whether there are potential claimants or other interested parties who must be brought before the Court in order to ensure that the claims process ultimately provides a fair and final result for all claimants and other stakeholders;

    ii. which claims are, in fact, secured (including which claims that have been asserted to be secured are, in fact, not secured);

    iii. for those properties for which there are multiple secured claims, whether there is a dispute between them with respect to priority;

    iv. for those properties with priority disputes, whether certain mortgagees were released, recorded, and/or paid off and in what amounts;

    v. whether there are claimants who were on inquiry notice or otherwise acted in concert with the Defendants to deepen the insolvency by perpetuating the fraud and Ponzi scheme at issue in this matter;

    vi. for those properties where an institutional lender asserted a cross-collateralized loan against more than one property and for which there are EBF debt secured claims asserted as to only certain of those properties, whether to treat all properties as in dispute or only those with corresponding EBF debt secured claims;

    vii. for properties as to which claimants asserted a cross-collateralized loan, whether the claimed amount can be allocated in some fashion amongst the properties;

    viii. whether any claims ought be rejected for failure to comply with the Court-approved procedures and claim form;

    ix. what is the total amount of each claim, and what are its identifiable components;

    x.    whether there are common identifiable components of submitted claims that the Receiver contests;

    xi.    the total number of claimants (after the Receiver has reviewed and accounted for any duplicative submissions);

    xii.    which claims will require discovery for purposes of determining validity, priority, or other information;

    xiii.    whether and to what extent summary proceedings should be used within the claims process;

    xiv.    the circumstances surrounding "rolled over" investments and what relationship, if any, these investments have to priority issues relating to properties with secured claims;

    xv.    how to classify and treat claims that identify an interest in properties not presently believed to be within the Receivership Estate; and

    xvi.    whether, and to what extent, there are properties or claims for which the Receiver determines there are, in fact, no competing liens.

After the Receiver has thoroughly and completely reviewed all claims submissions, his plan and goal is to provide a report to the Court that makes a recommendation to the Court for classifying claims, the amount of each claim, the priority of claims, and a plan for distribution of funds in the Receivership Estate to the victims and creditors of the Defendants. Once the Receiver has filed this report on claims and distribution, the Court should set a date by which any party or interested person or entity must submit an objection to the Receiver's report to the Receiver. The Court should then allow the Receiver an opportunity to consider and address all objections in order to determine if any can be resolved or if such objections would lead the Receiver to revise his

report or change any of his recommendations (to avoid placing before the Court issues that can be resolved without the Court's time and attention). The Court should then set dates for the Receiver to file a report on unresolved objections as well as a date by which responses to the report on objections must be filed. Finally, the Court should set a hearing date with respect to the Receiver's report on claims and plan for distribution.

However, it is premature to set the foregoing schedule until the Receiver has completed the claims analysis and prepared a report on claims and distribution. At this time, it is too speculative to say with certainty how long the analysis of claims will take, except to say that the Receiver intends to address it diligently and it is likely to last well into next year. As previously noted, the Receiver may be able to resolve disputed claims on an interim basis such that they may be presented to the Court for approval prior to the Receiver's submission of a comprehensive report on claims and distribution, including for example instances where there is only one secured claim with respect to a property.

The Receiver proposes that the Court set a status hearing in 60 days at which time the Receiver will report to the Court as to:

(1) whether all claims have been submitted, including without limitation the claim that is currently due September 9, 2019;

(2) whether the Receiver has identified potential claimants or other interested parties who the Receiver believes must be brought before the Court in order to ensure that the claims process ultimately provides a fair and final result for all claimants and other stakeholders and, if so, the Receiver's plan for bringing such parties before the Court;

(3) the status of the Receiver's efforts to ascertain and determine which claims are secured by real estate assets of the Receivership Estate, and if that effort is not complete then to

12

also identify the Receiver's plan to complete that effort, including whether and to what extent discovery may be necessary;

(4) for those properties for which there are multiple secured claims, the status of the Receiver's efforts to identify whether there is a dispute between them that must be resolved as to priority;

(5) whether any claims ought be rejected for failure to comply with the procedures and claim form approved by the Court; and

(6) the status as to the Receiver's remaining efforts with respect to the claims process.

The Receiver also will provide updates as to progress and timing with respect to the claims process in the quarterly status reports that he files with the Court.

Respectfully submitted,

Dated: August 15, 2019                Kevin B. Duff, Receiver

By:  /s/     Michael Rachlis
Michael Rachlis (mrachlis@rdaplaw.net)
Nicole Mirjanich (nm@rdaplaw.net)
Rachlis Duff Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950; Fax (312) 733-3952

## **CERTIFICATE OF SERVICE**

I hereby certify that I provided service of the foregoing Receiver's Second Status Report on Claims, via ECF filing, to all counsel of record on August 15, 2019.

I further certify I caused to be served the Defendant Jerome Cohen via e-mail:

Jerome Cohen
1050 8th Avenue N
Naples, FL 34102
jerryc@reagan.com
*Defendant*

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff Peel & Kaplan, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net

**Exhibit 1**
**Receiver's Preliminary Analysis of Categories of Allegedly Secured Claims as to Each Property**

| Property Number | Property Address | Alternative Address | Secured EBF debt claim | Secured institutional debt claim | Secured EBF debt claim on at least one property corresponding to cross-collateralized institutional lender debt |
|---|---|---|---|---|---|
| 1 | 1700 Juneway Terrace | | x | x | |
| 2 | 4533-37 S Calumet Avenue | | x | x | |
| 3 | 5001 S Drexel Boulevard | 909 E 50th Street | x | x | |
| 4 | 5450-52 S Indiana Avenue | 118-132 E Garfield | x | x | |
| 5 | 7749 S Yates Boulevard | | x | x | |
| 6 | 6437 S Kenwood Avenue | | x | | |
| 7 | 7109-19 S Calumet Avenue | | x | x | |
| 8 | 1414 East 62nd Place | | x | | |
| 9 | 8100 S Essex Avenue | 2449-2457 E. 81st St. | x | | |
| 10 | 7301-09 S Stewart Avenue | | x | | |
| 11 | 7500-06 S. Eggleston Avenue | | x | | |
| 12 | 3030-32 E 79th Street | | x | | |
| 13 | 2090 E 78th Street | | x | | |
| 14 | 7549-59 S Essex Avenue | | x | | |
| 15 | 8047-55 S Manistee Avenue | | x | | |
| 16 | 1017 W 102nd Street | | | x | |
| 17 | 1516 E 85th Place | | | x | |
| 18 | 2136 W 83rd Street | | | x | |
| 19 | 417 Oglesby Avenue | | | x | |
| 20 | 7922 S Luella Avenue | | | x | |
| 21 | 7925 S Kingston Avenue | | | x | |
| 22 | 7933 S Kingston Avenue | | | x | |
| 23 | 8030 S Marquette Avenue | | | x | |
| 24 | 8104 S Kingston Avenue | | | x | |
| 25 | 8403 S Aberdeen Street | | | x | |
| 26 | 8405 S Marquette Avenue | | | x | |
| 27 | 8529 S Rhodes Avenue | | | x | |
| 28 | 8800 S Ada Street | | | x | |
| 29 | 9212 S Parnell Avenue | | | x | |
| 30 | 10012 S LaSalle Avenue | | | x | x |
| 31 | 11318 S Church Street | | | x | x |
| 32 | 3213 S Throop Street | | | x | x |
| 33 | 3723 W 68th Place | | | x | x |
| 34 | 406 E 87th Place | | | x | x |
| 35 | 61 E 92nd Street | | | x | x |
| 36 | 6554 S Rhodes Avenue | | | x | x |
| 37 | 6825 S Indiana Avenue | | | x | x |
| 38 | 7210 S Vernon Avenue | | | x | x |
| 39 | 7712 S Euclid Avenue | | | x | x |
| 40 | 7953 S Woodlawn Avenue | | x | x | x |
| 41 | 8107 S Kingston Avenue | | x | x | x |
| 42 | 8346 S Constance Avenue | | | x | x |
| 43 | 8432 S Essex Avenue | | | x | x |
| 44 | 8517 S Vernon Avenue | | | x | x |
| 45 | 2129 W 71st Street | | | x | x |
| 46 | 9610 S Woodlawn Avenue | | | x | x |
| 47 | 5437 S Laflin Street | | x | x | x |
| 48 | 6759 S Indiana Avenue | | | x | x |
| 49 | 7300-04 St Lawrence Avenue | | x | x | x |
| 50 | 7760 S Coles Avenue | | x | x | x |
| 51 | 1401 W 109th Place | | x | x | x |
| 52 | 310 E 50th Street | | x | x | x |
| 53 | 6807 S Indiana Avenue | | x | x | x |
| 54 | 8000 S Justine Street | 1541 E 80th Street | x | x | x |
| 55 | 8107 S Ellis Avenue | | | x | x |
| 56 | 8209 S Ellis Avenue | | x | x | x |
| 57 | 8214 S Ingleside Avenue | | x | x | x |
| 58 | 5955 S Sacramento Avenue | 2948-56 W 60th Street | x | | |
| 59 | 6001 S Sacramento Avenue | 2945-51 W 60th Street | x | | |
| 60 | 7026 S Cornell Avenue | | x | | |
| 61 | 7237 S Bennett Avenue | | x | | |
| 62 | 7834-44 S Ellis Avenue | | x | | |
| 63 | 4520-26 S Drexel Boulevard | | x | x | |
| 64 | 4611 S Drexel Boulevard | | x | x | |
| 65 | 6751-57 S Merrill Avenue | 2136 East 68th Street | | x | |
| 66 | 7110 S Cornell Avenue | | | x | |

**Exhibit 1**
**Receiver's Preliminary Analysis of Categories of Allegedly Secured Claims as to Each Property**

| Property Number | Property Address | Alternative Address | Secured EBF debt claim | Secured institutional debt claim | Secured EBF debt claim on at least one property corresponding to cross-collateralized institutional lender debt |
|---|---|---|---|---|---|
| 67 | 1131-41 E 79th Place | | x | x | |
| 68 | 6217-27 S Dorchester Avenue | | x | x | |
| 69 | 6250 S Mozart Avenue | 2832-36 W 63rd Street | x | x | |
| 70 | 638 N Avers Avenue | | x | x | |
| 71 | 701 S 5th Avenue | 414 Walnut | x | | |
| 72 | 7024-32 S Paxton Avenue | | x | x | |
| 73 | 7255-57 S Euclid Avenue | 1940-44 E 73rd Street | x | x | |
| 74 | 3074 Cheltenham Place | 7836 S Shore Drive | x | x | x |
| 75 | 7625-33 S East End Avenue | | x | x | x |
| 76 | 7635-43 S East End Avenue | | x | x | x |
| 77 | 7750-58 S Muskegon Avenue | 2818-36 E 78th Street | x | x | x |
| 78 | 7201 S Constance Avenue | 1825-31 E 72nd Street | x | x | x |
| 79 | 6160-6212 S Martin Luther King Drive | | x | x | |
| 80 | 2736 W 64th Street | | x | x | x |
| 81 | 4317 S Michigan Avenue | | x | x | x |
| 82 | 6355-59 S Talman Avenue | 2616-22 W 64th Street | x | x | x |
| 83 | 6356 S California Avenue | 2804 W 64th Street | x | x | x |
| 84 | 7051 S Bennett Avenue | | x | x | x |
| 85 | 7201-07 S Dorchester Avenue | 1401 E 72nd Street | x | x | x |
| 86 | 7442-48 S Calumet Avenue | | x | x | x |
| 87 | 7508 S Essex Avenue | 2453-59 E 75th Street | x | x | x |
| 88 | 7546 S Saginaw Avenue | | x | x | x |
| 89 | 7600 S Kingston Avenue | 2527 E 76th Street | x | x | x |
| 90 | 7656 S Kingston Avenue | 2514-20 E 77th Street | x | x | x |
| 91 | 7701 S Essex Avenue | | x | x | x |
| 92 | 7748-50 S Essex Avenue | 2450-52 E 78th Street | x | x | x |
| 93 | 7953-59 S Marquette Road | 2708-10 E 80th Street | x | x | x |
| 94 | 816-20 E Marquette Road | | x | x | x |
| 95 | 8201 S Kingston Avenue | | x | x | x |
| 96-99 | 8326-58 S Ellis Avenue | | x | x | x |
| 100 | 11117-11119 S Longwood Drive | | x | | |
| 101 | 6949-59 S Merrill Avenue | | | x | |
| 102-106 | 7927-49 S Essex Avenue | | x | | |
| 107 | 1422 East 68th Street | | x | x | x |
| 108 | 2800 E 81st Street | | | x | x |
| 109 | 4750 S Indiana Avenue | | x | x | x |
| 110 | 5618 S Martin Luther King Drive | | x | x | x |
| 111 | 6558 S Vernon Avenue | 416-24 E 66th Street | x | x | x |
| 112 | 7450 S Luella Avenue | 2220 East 75th Street | x | x | x |
| 113 | 7840 S Yates Avenue | | | x | x |
| 114 | 1418 East 62nd Place | | x | | |
| 116 | 1102 Bingham St, Houston, TX 77007 | | x | | |

Exhibit 1

Page 2 of 2