**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br>                Plaintiff,<br>v.<br>EQUITYBUILD,INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br>                Defendants. | Case No. 18-cv-5587<br><br>Judge John Z. Lee |

**MIDLAND LOAN SERVICES' OBJECTION**
**TO RECEIVER'S SECOND INTERIM FEE APPLICATION**

Creditor Midland Loan Services, a Division of PNC Bank, National Association ("Midland") objects to the Receiver's Second Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (the "Second Fee App")[Dkt. No. 487].

**INTRODUCTION**

Midland objected on July 3, 2019 [Docket No. 442; the "First Objection"] to the Receiver's First Interim Fee Application [Docket No. 411; the "First Fee App"] and the requested interim payment of professional fees. A hearing on the First Fee App is scheduled for September 25, 2019.

The Receiver subsequently filed status reports on August 1 and August 15 (Docket Nos. 468 and 477; the "Status Reports") and his Second Fee App on August 21, 2019. As was true with the First Fee App, the Status Reports and Second Fee App do not provide sufficient disclosure of the Receiver's total fees incurred to date and the assets available to pay them. Without this information, the Court cannot determine whether the estate can afford to pay the requested fees. Given the financial difficulties already suffered by the estate, the risk of administrative insolvency

50071109;1

is quite high. Moreover, the Receiver should not be allowed to pay himself and his professionals before restoring rents taken from secured cash-flowing properties to support other non-performing properties. The Receiver has not restored the rents despite the Court's order to do so in February [Docket No. 223].

In addition, Midland joins in the objections of the other institutional lenders that the requested fees appear to be excessive and not well justified. Dkt. No. 509, § III(B).

## ARGUMENTS AND AUTHORITIES

As set forth in the First Objection and further illustrated by the Status Reports and Second Fee App, this receivership is increasingly unlikely to generate a meaningful recovery for the investors defrauded by the EquityBuild defendants. Almost all of the estate's assets are burdened by secured debt.[1] The assets themselves require significant and expensive maintenance. Further, there are insufficient funds to pay the property taxes already due and to restore the diverted rents. As a result, the Court must carefully consider whether to authorize an interim payment of professional fees and, if so, the amount of those fees. Otherwise it risks putting the estate in a position where it cannot fund its obligations or restore funds used in violation of security interests.

**I.     The Court Should Not Approve an Interim Payment at this Time.**

A court considering an award of fees to a receiver and his professionals should consider a number of factors including: (i) the fair value of time expended, (ii) the degree of activity, integrity and dispatch with which work in conducted and (iii) and the result obtained, this last factor "being

---

[1] A majority of the unencumbered assets were the subject of the Receiver's First Motion for Court Approval of the Sale of Certain Real Estate and for the Avoidance of Certain Mortgages, Liens, Claims, and Encumbrances (the "First Sale Motion") [Dkt. No. 230]. This Court granted the First Sale Motion and according to the Receiver's Third Status Report (First Quarter 2019) (the "Third Report") [Dkt. No. 348] those properties were sold or are in the process of being sold. (Dkt. No. 348 at 4-5.) The proceeds from these sales appear to be included in the cash on hand. *Compare* Third Report Ex. 4 [Dkt. No. 348] *with* Fee App p. 23 [Dkt. No. 411]. The Status Reports further instruct that the vast majority of real properties are encumbered by secured debt. Docket Nos. 468 and 477.

a 'critical factor.'" *In re Alpha Telecom, Inc.*, 2006 WL 3085616 *2, CV 01-1283-PA (D. Ore. Oct. 27, 2006) (citing *United States v. Code Products Corp.*, 362 F.2d 669, 673 (3rd Cir. 1966). Another important factor is the "burden that the estate may safely be able to bear." *Id.*; *SEC v. Capital Cove Bancorp LLC*, 2016 WL 6211426 at *2, SACV 15-980-JLS (JCx) (C.D. Cal. Mar. 24, 2016)(citing *In re Imperial '400' Nat'l Inc.*, 432 F.2d 232, 238 (3rd Cir. 1970)); *also SEC v. WL Moody & Co.*, 374 F. Supp. 465, 480-81 (S.D. Tex. 1974).

The Status Reports confirm that the estate's only substantial asset is the portfolio of real estate that it owns. Many of these properties are subject to secured claims by both institutional lenders and investors. *See* Dkt. No. 477, Ex. 1. Despite having over a year to investigate, the Receiver has been unwilling or unable to estimate the potential equity in the properties.[2] Accordingly, the Court can only guess at the available assets leaving the Court without a solid basis on which to evaluate both pending fee applications.

The Court should not at this juncture award fees on an interim basis. First, based on the available information, payment of fees at this time will imperil the estate's ability to pay taxes and maintain its real estate. Second, the Receiver has not provided sufficient information to properly evaluate the professional fees. The Receiver has neither estimated the value of the available assets nor disclosed his fees to date. Third, the Receiver should not pay himself or his professionals until he restores the rents he misapplied, as ordered by the Court in February.

---

[2] An estimate of the potential equity in the properties need not, as the Receiver has previously suggested, wait on the claims process. As *SEC v. Wells Fargo Bank*, 848 F.3d 1339 1344-45 (11th Cir. 2017) teaches, a secured creditor's lien remains intact regardless of whether it files a proof of claim. Even without a filed proof of claim, the parties must deal with any secured claim of record. Thus, except for the purpose of gathering evidence, the proof of claim process is largely irrelevant to the secured claims.

50071109;1

### A. The available information suggests that the estate cannot afford to pay professional fees at this time.

From its beginning, this case has teetered on the edge of administrative insolvency. Initially, the Receiver resorted to using rental income securing a loan on one property to pay emergency expenses on another property. In response to the institutional lenders' motion to forbid this practice, the SEC urged that it was essential to the Receiver's ability to manage the estate. To deny the Receiver the ability to commingle rents, the SEC argued would "decimate the Receivership and cripple the Receiver's efforts to recover assets for the benefit of investors and other creditors." SEC Response to Rents Motion, Dkt. No. 114 at 1.

After the Court ordered the Receiver to stop commingling rents, the situation worsened. The Receiver has been unable to pay significant amounts of property taxes for 2018, which under Illinois law are bearing interest at 18%. *See* 35 ILCS 200/21-25. Moreover, he has struggled to find funds to pay for repairs and necessary maintenance. Dkt. No. 348 at 9-12, 18, 22. And, he has been unable to restore the rents that he commingled earlier in the case.

Despite the estate's obvious financial weakness, the Receiver seeks in his Second Fee App a substantial interim payment, $550,477.59 of the estate's available cash. This sum is on top of the figure requested in the First Fee App, $413,298.44, for a total through December 31, 2018 in the amount of $963,776.03. Meanwhile, the Standardized Fund Accounting included with the Receiver's Fourth Status Report [Docket No. 467] indicates net assets through June 30, 2019 in the amount of $1,023,577.44. Dkt. No. 467, Ex. 4. In light of the estate's financial struggles, the question facing the Court is obvious: do the requested interim fees pose a burden that the estate can safely bear? *In re Alpha Telecom, Inc.*, 2006 WL 3085616 at *2. As courts considering interim fee payments have noted, the estate's ability to afford requested expenses "must be given

50071109;1

considerable weight." *WL Moody & Co.*, 374 F. Supp. at 481; *SEC v. Sethi Petroleum LLC*, 2016 WL 4216311 *2, 4:15-cv-338 (E.D. Tex. Aug. 10, 2016).

As discussed below, the Receiver has demonstrated that the estate cannot afford to pay the requested fees at this time. The Receiver still has not paid the 2018 property taxes. Fourth Report, Dkt. No. 467 at 4. The unpaid taxes total $723,315.94 as of July 19, 2019. *Id.* Again, unpaid taxes bear interest at a rate of 18%. While the Court's stay order may prevent the local governments from executing on their tax liens,[3] the taxes continue to accrue thereby eating away at the equity available to pay operating expenses.

A significant operating expense that continues to vex the estate is the cost of repairing and maintaining the properties. In fact, approximately 17 City of Chicago Buildings Department and 11 Department of Streets and Sanitation administrative proceedings are pending. Fourth Report, Dkt. No. 467 at 7.

The Receiver must preserve sufficient funds to pay these expenses, which are a higher priority than professional fees. Paying out the entirety of the estate's available cash as requested effectively ends the Receiver's ability to pay these ongoing obligations. Before the Receiver can pay himself or his professionals, he must demonstrate that he can do so without crippling the estate, i.e., that the estate can afford to pay fees at this time.

> **B. To prove that the estate can afford an interim fee, the Receiver must disclose the fees incurred to date and the equity available in the estate's properties.**

Determining whether the estate can afford the requested fees turns on two factors, both of which remain unknown. First, what are the fees incurred to date and those anticipated in the future?

---

[3] Although, the City of Chicago continues to pursue housing court matters without having obtained leave of this Court to do so.

Second, what assets are available to pay those fees? The answers to these questions will determine whether the receivership can be successful. Success is measured not merely by the estate's ability to continue to function but also its ability to make a meaningful payment to the investors and other unsecured creditors.[4] *Alpha Telecom.*, 2006 WL 3085616 at *6 ("Results are always relevant.")(citing *WL Moody & Co.*).

We do not know what the professional fees are to date or anticipated to be in the future. The Receiver has requested nearly $1,000,000 in fees for the first 4.5 months of work that occurred in 2018. Since that time, he likely has incurred in excess of $2 million in fees so far – an amount far in excess of the cash on hand. The Receiver has not filed a fee application for any portion of 2019.[5] Nor has the Receiver provided any substantive information about the assets potentially available to pay his fees and to compensate the investors. The real property—the houses, duplexes and apartments—owned by the estate are its only real assets. While these properties may have value, they are encumbered by substantial debt. Only the equity in the property is available to the estate. *SEC v. Madison Real Estate Group, LLC*, 647 F. Supp. 2d 1271, 1277 (D. Utah 2009)(holding that a secured creditor's "priority remains intact despite the Receivership."). Moreover, many of these properties may not remain in the estate. *Id*. (allowing foreclosure of properties where the value of the properties were less than the loan owed on them). Without knowing the value of the real estate and the debt it secures, the Court cannot evaluate whether the estate can afford the fees requested (and to be requested) by the Receiver.

---

[4] The secured creditors do not need a receiver appointed for the Defendants. They can recover directly against the properties securing their debts.

[5] His failure to do so arguably violates this Court's order requiring the Receiver to file fee applications within 45 days of the end of each calendar quarter. Order Appointing Receiver at ¶ 70, p. 27 (Dkt. No. 16).

50071109;1

After over a year and likely more than $2 million in fees, the Receiver should be able to provide a simple chart showing the estimated value of each property and the debt asserted against it. There is no impediment to his ability to do so. The Defendants' records should show what they believe they owed to their various creditors. Failing that, the real property records would provide at least an estimate of the liens against the properties. Similarly, the Receiver's real estate professionals can easily appraise each of the properties if they have not already done so.

He has simply elected not to evaluate the solvency, or lack thereof, of the estate. In the past, he has suggested without explanation that estimating the value of the properties will somehow chill the sales process. This explanation simply doesn't hold water. Even if publishing estimates would chill the sales process (which we doubt), there are a number of ways to provide this information to the Court and creditors without publication. For example, the Receiver can make the information available to the creditors pursuant to a protective order and file it under seal. He should be required to do so.

In sum, without knowing the scope of the fees incurred by the Receiver and the assets available to pay those fees, the Court cannot determine whether the estate can afford the requested interim payment. The Court should therefore deny the Second Fee App until the Receiver (i) files all of the past due fee applications; and (ii) provides to the Court and the parties a schedule showing the estimated value of each property and the debt on it.

  **C. In addition, the Court should require that the Receiver complete the Court-ordered restoration of rents before paying himself and his professionals.**

Early in this case, the Receiver commingled rents paid on the estate's properties in violation of liens held by Midland and others. In February 2019, Magistrate Judge Kim ordered the Receiver to stop using rents from one property to pay expenses on another property. February 13, 2019

7

Order at 9 (Dkt. No. 223). He further ordered the Receiver to restore any rents previously used for this purpose. *Id.*

The Receiver has reduced the amount of rents to be restored from $767,192.75 to $618,505.64. Dkt. No. 467 at 14. Although the Receiver is holding sufficient funds to restore the rents (or a portion thereof), he has not done so. The Receiver has not explained his failure to restore the rents.

The Receiver should restore the rents before paying himself. The rents are subject to security interests claimed by Midland and the other institutional lenders as well as by the investors. They are not part of the general assets available to pay administrative expenses such as professional fees. *See SEC v. Nadel*, 2018 WL 965834, *3, 8:09-cv-87-T-26CPT (M.D. Fla. Feb. 20, 2018)(ordering receiver to turnover to secured creditor all post-receivership rents). If the Receiver is allowed to pay himself before restoring the rents, there is a very real possibility that the Receiver will not be able to restore the rents. As discussed above, it is far from clear that there are sufficient assets available to the estate to pay for fees, taxes and necessary expenses. As the secured debt—whether held by a defrauded investor or institutional lender—has priority, the Receiver must pay it first. He cannot put the secured creditors at risk by paying himself.

Moreover, the Receiver's obligation to restore the rents is entirely of his making. Rather than seeking court approval to use funds subject to recorded security interests, the Receiver went ahead and used them in violation of those interests. He took the risk, now realized, that the Court would not approve of his conduct and would order him to restore the funds he misapplied. Simple equity requires that the Receiver fix the situation he created before paying himself and his professionals.

**II.      The Fees Requested by the Receiver and His Counsel Appear to be Excessive and Not Well Justified.**

Midland shares the concerns of the other institutional lenders as to (a) the excessive number of office conferences; (b) the charges for short phone calls and e-mails; (c) billing for administrative tasks such as making copies or sending faxes; (d) charges for duplicative work; and (e) the use of attorneys to perform tasks that paralegals should perform. Rather than repeat the arguments made by the other institutional lenders on this point, Midland joins in and incorporates by reference Section III(B) of the Objections of Certain Mortgagees to the Receiver's Second Fee App [Dkt. No. 509].

## CONCLUSION

Without sufficient disclosure of total professionals' fees and available assets, this Court cannot make an informed decision as to whether the estate can bear the expense. The rents should be restored and the outstanding expenses should be paid before professionals' fees are allowed.

WHEREFORE, Midland respectfully requests that the Court deny the Second Fee App at this time.

September 9, 2019

                                                               Respectfully Submitted,

                                                               */s/ Thomas B. Fullerton*
                                                               Thomas B. Fullerton (6296539)
                                                               Akerman LLP
                                                               71 S. Wacker Drive, 47th Floor
                                                               Chicago, IL 60606
                                                               (312) 634-5700
                                                               thomas.fullerton@akerman.com
                                                               *Counsel for Midland Loan Services,*
                                                               *a Division of PNC Bank, National Association*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document has been served on September 9, 2019 by filing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

                                                           */s/ Thomas B. Fullerton*

50071109;1