IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., EQUITYBUILD ) FINANCE, LLC, JEROME H. COHEN, and ) SHAUN D. COHEN, ) ) Defendants. ) | Case No. 18 C 5587<br><br>Judge John Z. Lee |

## ORDER

Before the Court is the SEC's motion for financial remedies [194]. For the reasons stated herein, the motion is granted.

## STATEMENT

On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a complaint against Defendants, Equitybuild, Inc. ("Equitybuild"); Equitybuild Finance, LLC ("Equitybuild Finance"); Jerome H. Cohen; and Shaun D. Cohen. *See* Compl., ECF No. 1. According to the complaint, Defendants operated a Ponzi scheme through which they fraudulently induced more than 900 investors to invest at least $135 million in residential properties on the south side of Chicago. *Id.* ¶¶ 1–2. Shortly after the lawsuit was filed, the Cohens entered into bifurcated settlements, in which they consented to being enjoined from violations of the federal securities laws at issue in the complaint. *See* ECF No. 29. The settlements provide that the Cohens shall pay disgorgement, prejudgment interest, and civil penalties, as determined by the Court upon a motion for financial remedies from the SEC. *See* Judgment at 4, ECF No. 40. For the purposes of such a motion, the allegations of the complaint are to be accepted as true. *Id.*

The SEC filed its motion on December 19, 2018, seeking a final judgment against the Cohens imposing disgorgement, prejudgment interest, and civil penalties. *See* SEC's Mem. Supp. Mot. Fin. Remedies, ECF No. 195.

*Factual Background*

The following allegations are set forth in the SEC's complaint and are accepted as true for the purposes of this motion. Beginning in 2010, Defendants raised at least $135 million by selling unregistered securities to over 900 investors across the United States. Compl. ¶¶ 13–18. The Cohens promised to pool investor funds to develop real estate properties, primarily on the south

side of Chicago. *Id.* ¶ 19. To that end, they sold investors Equitybuild promissory notes with interest rates ranging from 12 to 20%. *Id.* ¶¶ 20–22. Each note referenced a specific real estate property and represented that the note was secured by a fractional interest in the mortgage on that property. *Id.* ¶ 24. The Cohens signed the notes on behalf of Equitybuild and Equitybuild Finance. *Id.* ¶ 26.

The Cohens circulated materials describing the notes as low-risk investments secured by real estate, and touted to investors that the notes "consistently" delivered "double-digit" returns. *Id.* ¶¶ 30–36, 41. These misrepresentations were false and misleading. The Cohens concealed the fact that they charged investors undisclosed fees of 15 to 30%. *Id.* ¶ 37. To keep those fees hidden, they told investors that the properties securing the notes were worth significantly more than what they actually cost. *Id.* ¶ 38. This allowed the Cohens to collect far more than what they told investors was necessary to acquire the properties. *Id.* They used these funds to pay their personal living expenses, and to make Ponzi-style payments to earlier investors. *Id.* ¶ 39.

The Cohens also concealed from investors the fact that the properties securing the notes performed poorly, and few generated enough revenue to fund investors' interest payments. *Id.* ¶¶ 42–43. Accordingly, the Cohens began running a Ponzi scheme, using new investors' funds to pay earlier investors' interest payments. *Id.* ¶ 45.

The Cohens stopped offering the notes in 2017 and began instead soliciting investments in various real estate "funds." *Id.* ¶¶ 52–53. They again told investors that they would pool funds to purchase and renovate real estate, generating double-digit returns. *Id.* ¶¶ 53–54. But they concealed that many of the properties supposedly being acquired with the funds' money had previously been acquired in the course of the note offerings, and those properties supposedly served to secure the prior note investments. *Id.* ¶¶ 56–58. Moreover, they concealed from investors their poor performance record, the funds' precarious financial condition, and the existence of a Ponzi scheme. *Id.* ¶¶ 55–56, 59. They continued to raise money from investors until the SEC brought this action in August 2018. *Id.* ¶¶ 63–64.

The Cohens' conduct violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, as well as §§ 5(a), 5(c), and 17(a) of the Securities Act of 1933. *Id.* ¶¶ 65–83.

*Legal Standard*

In determining the amount of disgorgement and civil penalties to be imposed, courts rely on a preponderance of the evidence standard. *S.E.C. v. Koenig*, 532 F. Supp. 2d 987, 993 (N.D. Ill. 2007) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 103 (1981)). When a defendant has entered into a bifurcated settlement, courts may impose disgorgement and penalties without first holding an evidentiary hearing. *S.E.C. v. Zenergy Int'l, Inc.*, No. 13-CV-5511, 2016 WL 5080423, at *4 (N.D. Ill. Sept. 20, 2016) (citing *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)).

*Disgorgement*

"The authority of a federal court to order disgorgement in an SEC enforcement action is well-established," and courts have broad discretion to determine whether, and in what amount,

disgorgement should be ordered. *Id.* Disgorgement is a "form of restitution," *S.E.C. v. Lipson*, 278 F.3d 656, 662–63 (7th Cir. 2002), and is "designed to deprive a wrongdoer of unjust enrichment and also to deter others." *S.E.C. v. Black*, No. 04 C 7377, 2009 WL 1181480, at *2 (N.D. Ill. Apr. 30, 2009)

"The amount of disgorgement need only be a reasonable approximation of profits causally connected to the violation." *S.E.C. v. Michel*, 521 F. Supp. 2d 795, 830–31 (N.D. Ill. 2007). Accordingly, a calculation of disgorgement "need not be exact." *Koenig*, 532 F. Supp. 2d at 994. Once the SEC has offered such a reasonable approximation, "[t]he burden then shifts to the defendant to show that [it] is inaccurate." *Black*, 2009 WL 1181480, at *2. Any ambiguity in the calculation should be resolved against the defrauding party. *Id.*

In a securities-fraud case, the proper amount of disgorgement is the amount of the defendant's personal gains from the securities offering. *Zenergy*, 2016 WL 5080423, at *4; *see also S.E.C. v. Randy*, 38 F. Supp. 2d 657, 674 (N.D. Ill. 1999). Here, the SEC contends that the Cohens should be ordered to disgorge the money they received from Equitybuild and Equitybuild Finance while perpetuating the fraud alleged in the complaint, within the five-year statute of limitations. The SEC provides the declaration of staff accountant Ann Tushaus, calculating the amount of disgorgement as $1,692,487 as to Shaun Cohen and $1,496,705 for Jerome Cohen. SEC's Mem. Supp. Mot. Fin. Remedies, Ex. 1 ("Tushaus Decl.") ¶¶ 5, 7, ECF No. 195-1.

In response, the Cohens identify several transactions that they contend "should not have been included in the calculation." Cohens' Resp. Opp. Mot. Fin. Remedies at 2–3, ECF No. 291. These transactions, they assert, were actually reimbursements for purchases made for the benefit of Equitybuild and, therefore, did not benefit Jerome Cohen. Accordingly, they request that the SEC "produce supporting documentation as to how it defines a line item as being appropriately calculated toward the disgorgement figure." *Id.* at 4.

The SEC apparently concedes that these transactions should be excluded from the disgorgement calculation as to Jerome Cohen (the disputed payments do not affect Shaun Cohen). The disputed payments total $69,695. *See* SEC's Reply Supp. Mot. Fin. Remedies, Ex. 1 ("2d Tushaus Decl.") ¶ 6, ECF No. 297-1. Accordingly, the SEC's revised disgorgement calculation for Jerome Cohen, excluding those payments, is $1,428,010. *Id.* ¶ 7.

The Court denies the Cohens' request for additional documentation from the SEC. As explained in the SEC's briefs and in the two Tushaus Declarations, the calculations are based on the Cohens' own bank records, to which they presumably have access. Additionally, the information provided by the SEC includes, for each transaction, the payor, payee, dollar amount, and any notation reflected in the bank records. *See generally* Tushaus Decl.; 2d Tushaus Decl. The Cohens have provided no basis for additional discovery at this time.

Accordingly, the Court orders disgorgement in the amount of $1,428,010 as to Jerome Cohen and $1,692,487 as to Shaun Cohen.

*Prejudgment Interest*

"In an SEC enforcement action, a disgorgement order should include all gains flowing from the illegal conduct, including prejudgment interest[.]" *Michel*, 521 F. Supp. 2d at 831. The proper method for calculating such interest—and the method to which the Cohens agreed in their bifurcated settlements—is the IRS underpayment rate. *See Zenergy*, 2016 WL 5080423, at *4; *Koenig*, 532 F. Supp. 2d at 995.

Based on the amount of disgorgement and the IRS underpayment rate, the Court orders Shaun Cohen to pay prejudgment interest in the amount of $148,564. Tushaus Decl. ¶ 6. Jerome Cohen is ordered to pay prejudgment interest in the amount of $185,450, which is based on the revised disgorgement calculation. *See* 2d Tushaus Decl. ¶ 8.

*Civil Penalties*

The SEC also seeks civil penalties against the Cohens under § 20(d) of the Securities Act and § 21(d) of the Exchange Act, 15 U.S.C. §§ 77t(d), 78u(d). The Acts authorize district courts to award civil penalties in SEC enforcement cases. *See Zenergy*, 2016 WL 5080423, at *5. Civil penalties serve to punish and deter wrongdoers, because disgorgement "does not result in any actual economic penalty or act as financial disincentive to engage in securities fraud." *Id.* (quoting *S.E.C. v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996)).

The Acts set forth several tiers of civil penalties that may be imposed for violations of the securities laws. *See* 17 C.F.R. § 201.1001. The third, and highest, tier is reserved for conduct involving "fraud, deceit, or manipulation" and that "resulted in substantial losses (or created a risk of such losses) to others." *Zenergy*, 2016 WL 5080423, at *5. For the period at issue in this case, the maximum third-tier penalty for an individual is the greater of (1) $160,000 per violation; or (2) the gross amount of pecuniary gain to the defendant as the result of the violation(s). *See* 17 C.F.R. § 201.1001.

In determining the amount of the penalty, courts consider: "(1) the seriousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) whether the defendant has admitted wrongdoing; (5) the losses or risk of losses caused by the conduct; (6) any cooperation provided to enforcement authorities; and (7) the ability to pay." *Zenergy*, 2016 WL 5080423, at *6.

Some courts have assessed penalties on a per-violation basis. *See, e.g.*, *S.E.C. v. Durham*, No. 1:11-cv-00370-JMS-TAB, 2017 WL 3581640, at *9 (S.D. Ind. Aug. 18, 2017); *S.E.C. v. Colonial Inv. Mgmt., LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009); *S.E.C. v. Coates*, 137 F. Supp. 2d 413, 430 (S.D.N.Y. 2001); *S.E.C. v. Kenyon Capital, Ltd.*, 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998). Other courts have imposed penalties in amounts equal to the defendants' gross pecuniary gain. *See, e.g.*, *Zenergy*, 2016 WL 5080423, at *6; *S.E.C. v. Cook*, No. 1:13-cv-01312-SEC-MJD, 2015 WL 5022152, at *28 (S.D. Ind. Aug. 24, 2015) ("With regard to gross pecuniary gain, many courts have imposed a single penalty equal to the amount of disgorgement.") (internal quotation marks omitted) (collecting cases).

Here, the Court concludes that the Cohens' conduct warrants the imposition of a third-tier penalty equal to the amount of disgorgement. As described in the complaint, the Cohens violated the antifraud provisions of the Securities Act and the Exchange Act, resulting in substantial losses of millions of dollars. This conduct impacted numerous investors who fell victim to the Cohens' scheme. Given the serious, repeated nature of these violations, the size of the scheme, and the substantial losses caused by the scheme, the Court concludes that a maximum penalty is necessary to effectuate the purposes of punishment and deterrence. *See Zenergy*, 2016 WL 5080423, at *7 (imposing civil penalty equal to gross amount of gain given defendant's "repeated violations" and citing the need to "both punish and deter" the defendant and others "from engaging in these acts in the future"); *S.E.C. v. Seven Palm Invs., LLC*, No. 10 C 2755, 2014 WL 1292377, at *3 (N.D. Ill. Mar. 31, 2014) (imposing third-tier penalty equal to the gross amount of gain was justified "based on the egregious nature of [the defendant's] actions over a two-year period" and the fact that he was "the central player in the[] events and profited in a large way").

The Cohens' sole argument against the imposition of such a penalty is that it is "unreasonable for the SEC to expect [them] to be able to pay a maximum third-tier penalty plus disgorgement and prejudgment interest anytime in the near future," given their "financial condition." Cohens' Resp. Opp. Mot. Fin. Remedies at 4. But the Cohens have provided no evidence documenting their financial condition. Furthermore, even assuming that they lack an ability to pay, this is only one factor that courts consider in imposing civil penalties. *See Zenergy*, 2016 WL 5080423, at *6. Here, as the SEC correctly points out, the remaining factors all weigh in favor of imposing a third-tier penalty. To wit, the Cohens committed serious violations of the federal securities laws, and the allegations in the complaint establish that they did so with scienter. These violations were repeated, as they carried out their scheme over a number of years. They have not admitted wrongdoing or cooperated with law enforcement. And their conduct caused losses of over $100 million to over 900 investors. Given these factors, even if the Cohens were unable to pay a civil penalty, the Court concludes that a civil penalty equal to the amount of disgorgement is warranted here.

Accordingly, the Court imposes a civil penalty against Jerome Cohen in the amount of $1,428,010, and against Shaun Cohen in the amount of $1,692,487.

*Conclusion*

For the reasons stated herein, the SEC's motion for financial remedies is granted. As to Jerome Cohen, the Court orders disgorgement in the amount of $1,428,010; prejudgment interest in the amount of $185,450; and a civil penalty in the amount of $1,428,010. As to Shaun Cohen, the Court orders disgorgement in the amount of $1,692,487; prejudgment interest in the amount of $148,564; and a civil penalty in the amount of $1,692,487.

Date:	September 24, 2019	/s/John Z. Lee