# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Hon. John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) ) | |

## RECEIVER'S FIFTH STATUS REPORT
### (Third Quarter 2019)

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen as defined in the Order Appointing Receiver (Docket No. 16) and Order granting the Receiver's Motion to Amend and Clarify Order Appointing Receiver to Specifically Identify Additional Known Receivership Defendants (Docket No. 290) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court entered on August 17, 2018, respectfully submits this Fifth Status Report for the quarter ending September 30, 2019.

## I.     SUMMARY OF THE OPERATIONS OF THE RECEIVER

The Receiver, together with his legal counsel, Rachlis Duff Peel & Kaplan, LLC ("RDPK"), accountants BrookWeiner, LLC ("BrookWeiner") and Whitley Penn LLP ("Whitley Penn"), forensic consultant Prometheum Technologies, Inc. ("Prometheum"), and asset management and real estate brokerage services provider SVN Chicago Commercial, LLC ("SVN")

have undertaken, without limitation, the following activities since the filing of his Fourth Status Report (Docket No. 467, filed July 31, 2019):

    a.    <u>Identification and Preservation of Assets</u>

Since the filing of his Fourth Status Report, the Receiver continued using reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all profits, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly.

There are 116[1] properties in the Receivership Estate, including 115 properties in Chicago, one in Houston, Texas, and not counting properties in Naples, Florida and Plano, Texas that the Defendants have used at times as residences. The Receiver's primary focus has been and continues to be the preservation, operation, maintenance, and sale of the real estate properties within the Receivership Estate.

As previously stated, the Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, is working to improve understanding and planning for cash flow needs for underperforming properties, and controlling expenditures where possible. To that end, the Receiver and his counsel regularly have communicated with property managers relating to necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions. The Receiver and his retained professionals have reviewed monthly financial reporting and analyzing the cash position of the

---

[1] During the third quarter of 2019, the Receiver discovered a parcel of vacant land at 431 E. 42nd Place, Chicago, Illinois, as an additional property within the Receivership Estate.

Estate. The Receiver has communicated regularly with his real estate broker regarding prioritization of expenses and repairs on the properties. Consistent with the Liquidation Plan he filed with the Court (Docket No. 166), the Receiver remains committed, in accordance with the advice of his retained professionals, the property managers, and asset management consultants, and subject to availability of necessary funds, to undertake capital improvements that are needed to address health and safety issues and cure outstanding building code violations or that are demonstrably capable of yielding increases in occupancy that would drive commensurate increases in property value.

The Receiver also has made significant payments for 2018 property taxes. Since the filing of the fourth status report, the Receiver has paid the following real estate taxes:

- 6437 S Kenwood ($2,785.28)
- 3030 E 79th ($5,432.26)
- 7450 S Luella ($10,000.00)
- 701 S 5th Avenue ($49,858.05)
- 7546 S Saginaw Avenue ($3,000.00)
- 7600 S Kingston Avenue ($6,000.00)
- 7748-50 S Essex Avenue ($14,000.00)
- 8326-32 S Ellis Avenue ($9,008.59)
- 8334-40 S Ellis Avenue ($6,238.89)
- 8352-58 S Ellis Avenue ($6,044.16)
- 11117-11119 S Longwood ($19,096.43)
- 6558 S Vernon Avenue ($816.67)

The outstanding balance for remaining 2018 property taxes on the portfolio is $507,092.50 as of October 28, 2019. This amount does not include the amount to redeem 2015-18 real estate taxes for 7026 S. Cornell that were sold at a tax sale; the amount to redeem is approximately $50,000 and must be paid before December 11, 2019. The Receiver, in connection with the title company, is working to arrange for payment of these real estate taxes in connection with the property closing. This amount also does not include real estate taxes for the property in Houston, Texas. As stated in the fourth status report, the Receiver negotiated a partial payment agreement

whereby $5,603.98 will be paid monthly for twelve months, beginning on May 31, 2019 with the last payment to be made on April 30, 2020.   (Docket No. 467 at 5) The balance for the Houston property taxes is approximately $33,623.00.  Property taxes were also sold for the property at 431 East 42nd Place (the newly discovered property) and the deadline to redeem is November 9, 2020 in the approximate amount of $4,100.00.

The Receiver is maintaining casualty and liability insurance for all assets in the portfolio. The monthly installments for premiums are currently $41,599.90; as properties are sold over time, the monthly costs will be reduced.  The Receiver and his counsel also worked with the insurance broker to obtain updated records regarding claims history and pending claims, and addressed certain adjuster inquiries relating to pending claims.

b.      Property Sales

On September 13, 2019, the Receiver moved for Court approval to sell the following properties free and clear of all mortgages, liens, claims, and encumbrances (Docket No. 524):

- 2909-19 E. 78 Street, Chicago, IL 60649
- 701 S. 5th Avenue / 414 Walnut, Maywood, IL 60153
- 3030 E. 79th Street, Chicago, IL 60649
- 7301-09 S. Stewart Avenue, Chicago, IL 60621
- 5955 S. Sacramento Avenue, Chicago, IL 60629
- 6001 S. Sacramento Avenue, Chicago, IL 60629
- 7834-44 S. Ellis Avenue, Chicago, IL 60649
- 7026-42 S. Cornell Avenue, Chicago, IL 60649

The Court granted this motion on October 15, 2019.   (Docket No. 545) All of these properties are expected to close by mid-November 2019.[2]

---

[2] Any outstanding real estate taxes for these properties will be paid as part of the closings.

In July 2019, the Receiver listed the properties below for sale. Notice was published in a paper of general circulation on July 19, July 26, August 2, and August 9, 2019 for which the call for offer date was August 14, 2019:

- 638-40 N. Avers Avenue, Chicago, IL 60624
- 4520-26 S. Drexel Blvd, Chicago, IL 60653
- 6751-57 S Merrill Avenue, Chicago, IL 60649
- 6949-59 S. Merrill Avenue, Chicago, IL 60649
- 7109-19 S Calumet Avenue, Chicago, IL 60619
- 7110-16 S Cornell Avenue, Chicago, IL 60649
- 7450 S Luella Avenue, Chicago, IL 60649
- 7546 S Saginaw Avenue, Chicago, IL 60649
- 7600 S Kingston Avenue, Chicago, IL 60649
- 7625-33 S East End Avenue, Chicago, IL 60649
- 7635-43 S East End Avenue, Chicago, IL 60649
- 7656 S Kingston Avenue, Chicago, IL 60649
- 7748-50 S Essex Avenue, Chicago, IL 60649
- 7749 S Yates Boulevard, Chicago, IL 60649
- 7750-58 S Muskegon Avenue, Chicago, IL 60649
- 8201 S Kingston Avenue, Chicago, IL 60617
- 8326-58 S Ellis Avenue, Chicago, IL 60619

As stated previously (Docket No. 467 at 13-15), institutional lenders have filed numerous motions that object to virtually all activities of the Receivership, including but not limited to the process for the sale of properties above and credit bid procedures associated with these sales. These motions have led to a significant number of hearings and appearances before the Court, and have significantly slowed the process for the sale of the properties. On October 4, 2019, this Court overruled the numerous pending objections filed by the lenders to the Receiver's sales process and adopted Magistrate Judge Kim's rulings in full.[3] (Docket No. 540) Accordingly, the Receiver now

---

[3] Magistrate Judge Kim issued four separate report and recommendations addressing the lenders' objections to the Receiver's sales process dated May 2, 2019 (Docket No. 352), May 22, 2019 (Docket No. 382), July 9, 2019 (Docket No. 447), and August 19, 2019 (Docket No. 483), which were adopted in full by this Court. (Docket No. 540)

has all properties above under contract except for 7109 S. Calumet; the property at 638-40 N. Avers is under contract pursuant to a credit bid.

On September 13, 2019, the Receiver filed a motion to sell the property at 1102 Bingham Street, Houston, TX 77007. (Docket No. 522) The Receiver is selling this property through a private sale and his motion for approval also sought the appointment of three appraisers. On October 15, 2019, the Court granted the Receiver's motion, appointing three appraisers, and allowing the Receiver to sell this property through a private sale. (Docket No. 544) The Receiver expects to receive completed appraisals within the next 2-3 weeks and to then proceed with listing the property for sale.

The Receiver also has two additional properties under contract – 8047-55 South Manistee Avenue, Chicago, IL 60617 and 7237-43 South Bennett, Chicago, IL 60649 – and anticipates filing motions for court approval for these properties in the fourth quarter of 2019. The Receiver anticipates filing additional motions related to the sale of the remaining properties in the Estate, including but not limited to the single family home portfolio, in the fourth quarter of 2019.

       c.     <u>Code Violations</u>

A substantial number of properties in the portfolio have code violations that involve conditions pre-existing the establishment of the Receivership. The Receiver and his counsel continue to work closely with the City's corporation counsel for each department (circuit court, buildings, and streets and sanitation) to address all open building code violations, to address life and safety issues, and to preserve the respective properties. The property managers have also been assisting in the defense of numerous administrative and housing court actions alleging building code violations of widely varying levels of severity filed by the City of Chicago. The Receiver's counsel appeared on City of Chicago related matters on nine occasions during the third quarter

6

2019. As of September 30, 2019, there were approximately 23 known open code violations involving City of Chicago matters.

During this time period, there were nine known City of Chicago municipal housing court matters. Issues raised in these matters included but are not limited to:

- As stated in previous status reports, one porch replacement was completed and passed inspection at 2453 E. 75th. Other violations cited at this property included electrical work, basement clean up, and a requirement that plans and permits be obtained for work done under previous ownership. Following actions of the Receiver, his counsel, and the property manager, this housing court action was dismissed by the court without prejudice on July 18, 2019. The court's order includes a requirement that the owner must secure as built plans for the entire building by August 1, 2020.

- Replacement of a California-style porch at 8107 S. Ellis that was completed and passed inspection during the third quarter of 2019.

- Cited violations for the property at 7110 S. Cornell relate to masonry and tuck-point work. The Receiver authorized installation of scaffolding to protect the sidewalk and pedestrians, which remains in place. The Receiver also authorized installation of a new water tank during the third quarter 2019. This property is currently listed for sale.

- For the property at 7300 S. Saint Lawrence, the Receiver authorized repair of loose bricks pursuant to a May 2, 2019 housing court order. This property also will require installation of an emergency lighting system.

As of September 30, 2019, approximately fourteen City of Chicago administrative proceedings filed by the City of Chicago Buildings Department were known to be pending. During the third quarter of 2019, the Receiver achieved dismissal of ten administrative proceedings filed by the City of Chicago Buildings Department, twelve administrative proceedings filed by the Department of Streets and Sanitation, and one administrative proceeding filed by the Department of Water Debt.

d.   Financial Reporting and Rents Restoration

The Receiver is providing institutional lenders with monthly accounting reports relating to rents from each property as required by the February 13, 2019 Order.  (Docket No. 223) Monthly reports with respect to 89 properties have been sent to lenders' counsel for the periods ended March 31, 2019, April 30, 2019, May 31, 2019, June 30, 2019, July 31, 2019, and August 31, 2019. Reports for each property include, for each month beginning in August 2018: (a) information about net operating income based upon reporting from the respective property managers, (b) information about expenditures made by the Receiver for the benefit of the property (primarily for insurance, real estate taxes, and funds sent to the property manager to cover expenses not covered by net operating income from the property), and (c) amounts from net rental income distributed from the property to the Receiver or to other properties, amounts contributed to the property by the Receivership and by other properties, and a calculation of the amount (if any) of rentals remaining to be restored to the property under the February 13, 2019 Order.  Each report is sent with a detailed explanation of the contents of the related report and the calculation of rentals to be restored.  A summary of the information contained in these reports is attached as an exhibit to a motion filed by the Receiver regarding the use of sales proceeds for rent restoration.  (Docket No. 460) Beginning with the period ending August 31, 2019 (for which reports were sent on October 25, 2019), for properties where no rent restoration is due, the final line item on the report reflects an amount that has been expended for the benefit of the property from sources other than operating income on that property.

The Receiver also continues to analyze sources of funds available for restoration of rents to affected properties.  The total amount to be restored was $767,192.75 as of February 28, 2019, and had been reduced to $569,591.35 as of August 31, 2019.  This figure does not take into account

rents restored from the property at 6160-62 S. Martin Luther King Drive, Chicago, Illinois[4] or any rent restorations made in September.

e.    Other Receivership Assets

As previously reported, the Receiver filed a motion to amend the Order Appointing Receiver to clarify that a property in Naples, Florida that Defendant Jerome Cohen and his spouse previously used as a home and a bank account in their names are Receivership Assets.  (Docket No. 265) Cohen challenged the Receiver's position that the Naples, Florida property is a Receivership Asset. (Docket Nos. 301 and 356) Following briefing on this motion, Magistrate Judge Kim held an evidentiary hearing on July 10, 2019.  Jerome Cohen did not attend the hearing. Following Jerome Cohen's filing as to his failure to attend the hearing, Judge Kim issued an order setting a further hearing on August 14, 2019, which was ultimately cancelled for Cohen's failure to appear.  (Docket Nos. 457 & 475) On August 27, 2019, Magistrate Judge Kim issued a report and recommendation granting the Receiver's motion and finding that the Naples Property and a bank account in the name of Jerome Cohen and his spouse account are Receivership Assets. (Docket No. 492)

The Receiver continues to evaluate whether certain non-Illinois properties are or should be considered Receivership Assets and thus subsumed within the Estate.  These include properties that have or may have been purchased with EquityBuild investor funds.  Based on evidence gathered to-date, and as stated in previous status reports, these include without limitation:

---

[4] On July 25, 2019, the Receiver filed a motion seeking to use $54,102.21 in funds from a sold property (6160 S. King Drive) to restore rent (Docket No. 460), which this Court granted.  (Docket No. 494) On September 16, 2019, a proportionate share of this amount was transferred to the accounts for each property to which rent restoration was due.

properties in Plano, TX and Jackson, MS. As stated in previous status reports, Shaun Cohen and Jerome Cohen each have a life insurance policy. (Docket Nos. 107 at 16, 258 at 14, & 348 at 13)

     f.    <u>Open Litigation</u>

Since the filing of the Fourth Status Report, this Court lifted the automatic stay of litigation in the matter captioned *Barnes v. EquityBuild, et al.,* Case No. 19 L 7852, Circuit Court of Cook County, Law Division. (Docket No. 517, Notification of Docket Entry) This Order provided, among other things, that the stay was lifted and allowed plaintiff to proceed in a limited fashion against EquityBuild, Inc. and Paper Street Realty LLC, only to the extent of the amount of available insurance coverage (if any). As part of the agreement reached, plaintiff, as well her attorneys and/or representatives, waived her claims against the Receivership Estate for any amount in excess of applicable insurance coverage and agreed not to file any claim as part of the claims process in this action. (*Id.*)

During the third quarter 2019, the Receiver – working with his counsel and EquityBuild's counsel – completed written discovery responses in the matter captioned *Watson, et al. v. EquityBuild, Inc., et al.,* Case No. 2017 L 1320, Circuit Court of Cook County, Law Division.

     g.    <u>Notice of Appointment of Receiver</u>

The Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver continues to deliver notices to individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

h.     <u>Investor Communications</u>

The Receiver has provided numerous resources for investors to stay informed.  To provide basic information, the Receiver established a webpage (<u>http://rdaplaw.net/receivership-for-equitybuild</u>) for investors and other interested parties to obtain information and certain court filings related to the Receivership estate.  A copy of this Status Report will be posted on the Receiver's webpage.  Following discussion with an investor who raised concern about communication before Judge Kim, the Receiver, in connection with Prometheum, revised the manner in which pleadings are organized and presented on the Receivership web site to make it easier for investors and others to locate pleadings in key areas of interest, including for status reports, property sales, claims process, and court orders.

Court filings and orders are also available through PACER, which is an electronic filing system used for submissions to the Court.  Investors and others seeking court filings and orders can visit <u>www.ilnd.uscourts.gov</u> for information about accessing filings through PACER.

Beyond those avenues, the Receiver has received and responded to thousands of emails and voicemails from investors and others.  He and his staff continue to respond to these communications in as timely and practicable a way as possible, but has asked investors for patience during this lengthy process because responding to individual inquiries depletes Receivership assets.  The Receiver will continue to work to ensure that information is available and/or otherwise provided as quickly and completely as practicable.

i.     <u>Control of Receivership Property and Records</u>

The Receiver has continued efforts to locate and preserve all EquityBuild property and records.  The Receiver, working with Prometheum, is presently maintaining three platforms of records and data.

11

j.      Securing Bank and Investment Accounts

The Receiver notified, contacted, and conferred with the banks and other financial institutions the Receiver identified as having custody or control of funds, accounts, or other assets held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants. The Receiver is still pursuing records from certain institutions.

k.      Factual Investigation

The Receiver and his retained professionals have continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, plus a limited number of hard copy records); (iv) available underlying transaction documents received to date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

l.      Tax Issues

With respect to tax implications relating to the Defendants' scheme, the Receiver cannot advise the investors on tax matters and informed investors accordingly by the letter sent on September 21, 2018.  Moreover, the Receiver and his retained professionals do not plan to issue 1099-INT's.  With respect to valuation, loss, or other tax issues, investors and their tax advisors may wish to seek independent tax advice and consider IRS Rev. Proc. 2009-20 and IRS Rev. Rul. 2009-9.  For 2018 tax returns, investors and their tax advisors may wish to consult Page 6 of the instructions to Form 4684.

Whitley Penn was retained to prepare income tax returns for EquityBuild and its affiliates for the tax years 2016 and 2017.  Whitley Penn continues to report that its efforts have been

significantly challenged by EquityBuild's information and record keeping practices. Whitley Penn has stated that it is working to obtain documents and information in order to prepare and file what it presently anticipates as 32 tax returns.[5] Twelve entities were previously classified as having an undetermined tax filing status but based on further information from former EquityBuild employees, Whitley Penn determined these entities do not have a filing requirement.[6] As to the entities for which a return is being prepared, Whitley Penn has compiled income and expense reports for a majority of the entities. Whitley Penn states that there are numerous missing items needed to accurately report balance sheet activity for these entities, and the Receiver is actively working to attempt to provide that information.

Additionally, BrookWeiner was retained to perform accounting, tax, and related work regarding assets of the Receivership Defendants such as the accounting for ongoing business operations of the Receivership Defendants. BrookWeiner has compiled monthly property statements and property spreadsheets, worked to close payroll tax accounts with various states, and assisted with cash flow analysis matters.

---

[5] These thirty two entities are 11318 S Church St Associates, 1401 W 109th Associates, 1516 E 85th Pl Associates, 4750 Indiana LLC, 4755 S Saint Lawrence Associates, 526 W 78th LLC, 6759 S Indiana Associates, 6807 S Indiana Associates, 8809 S Wood Associates, 1700 W Juneway LLC, 4533-37 S Calumet LLC, 5450 S Indiana LLC, 7749-59 S Yates LLC, South Side Development Fund 1 LLC, South Side Development Fund 4 LLC, South Side Development Fund 5 LLC, SSDF1 Holdco 2 LLC, SSDF2 Holdco 3 LLC, SSDF3 Holdco 1, SSDF4 Holdco 1 LLC, SSDF4 Holdco 2 LLC, SSDF4 Holdco 3 LLC, SSPH Portfolio 1 LLC, EquityBuild Inc., 3400 Newkirk LLC, South Side Development Fund 3 LLC, SSDF1 Holdco 1 LLC, SSDF2 Holdco 1, SSDF3 Holdco 2 LLC, SSDF5 Holdco 1 LLC, SSPH Holdco 1, and SSDF2 Holdco 2 LLC.
[6] These twelve entities are 1422 E 68th LLC, 7107-29 S Bennett LLC, 7823 Essex LLC, EB South Chicago 1 LLC, EB South Chicago 1 Manager LLC, EB South Chicago 2 LLC, SSDF2 Holdco 2 LLC, SSDF5 Holdco 2 LLC, SSPH Holdco 2 LLC, 1632 Shirley LLC, 8217 Dorchester LLC, and Hybrid Capital Fund LLC.

      m.     <u>Accounts Established by Receiver for the Benefit of the Receivership Estate</u>

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property. The interest-bearing checking account is used by the Receiver to collect liquid assets of the Estate and to pay the portfolio-related and administrative expenses. The Receiver also established separate interest-bearing accounts for the purpose of depositing and holding funds from the sale of real estate encumbered by secured debt until such time as it becomes appropriate to distribute such funds, upon Court approval, to the various creditors of the Estate, including but not limited to the defrauded investors or lenders.

## II.    RECEIVER'S FUND ACCOUNTING

The Receiver's Standardized Fund Accounting Report ("SFAR") for the Third Quarter 2019 is attached hereto as **<u>Exhibit 1.</u>** The SFAR sets forth the funds received and disbursed from the Receivership Estate during this reporting period. As reported in the SFAR, the amount of cash on hand as of September 30, 2019 was $687,049.96. The information reflected in the SFAR is based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

## III.    RECEIVER'S SCHEDULE OF RECEIPTS AND DISBURSEMENTS

The Receiver's Schedule of Receipts and Disbursements ("Schedule") for the Third Quarter 2019 is attached hereto as **<u>Exhibit 2.</u>** The Schedule reflects $1,049,628.05 in receipts and $362,578.09 in disbursements as of September 30, 2019. Investors, creditors, and other interested parties are encouraged to review this Schedule for detailed information of disbursements on a property-by-property basis.

## IV.     RECEIVERSHIP PROPERTY

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit 3.**   The Receiver previously set forth a list of real estate within the Receivership Estate in his First Status Report.  (*See* Docket No. 107, Exhibit 1)

The Master Asset List identifies 53 checking accounts in the names of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $105,870.94.  (*See* also Docket No. 348 at 23-24 for additional information relating to these funds.)

The Master Asset List does not include assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests.  The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate, including but not limited to charitable donations, loans, gifts, settlements for which payment has not yet been received, and other property given to family members, former employees, and others.

## V.      LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY THE RECEIVERSHIP ESTATE

The Receiver and his attorneys are in the process of analyzing and identifying potential claims, including, but not limited to, potential fraudulent transfer claims and claims for aiding and abetting the fraud of the Receivership Defendants.

## VI.     CREDITORS AND CLAIMS AGAINST THE RECEIVERSHIP ESTATE

During the second quarter of 2019, Judge Kim granted the Receiver's motion for entry of an order approving a claims process and establishing a claims bar date of July 1, 2019.  (Docket No. 349) The Receiver and his retained professionals have been analyzing and working with the more than 2,000 claims submissions in connection with filing status reports on claims on August

1, 2019 (Docket No. 468), August 15, 2019 (Docket No. 477), and October 15, 2019 (Docket No. 548) all of which have been posted to the Receiver's webpage.

As previously reported, a total of 1,892 claims were submitted through the claims portal[7] and an additional 150 claims submissions were received by either mail or email on or before July 1, 2019.  (Docket No. 468 at 4) The Receiver also granted extensions of the bar date to ten claimants and granted requests from certain institutional lenders to submit complete documentation after the July 1, 2019 bar date.  (Docket No. 468 at 4) Moreover, during the third quarter of 2019, the Receiver identified and provided notice of the claims process to 22 additional potential claimants and granted them 40 calendar days submit a claim, with the latest such date being November 20, 2019.  (Docket No. 548; *see also* Docket No. 349)

Based on a preliminary analysis of the proof of claim forms, a number of properties presently believed to be within the Receivership Estate have secured claims asserted by both investor lenders and institutional lenders (in addition to many against which unsecured claims are also asserted), and as such, resolution of issues of priority as well as other claims related issues will be necessary prior to distribution.

Additionally, based on a preliminary review, there appear to be sixteen properties that are either not a part of a claim with a cross-collateralized loan or may be isolated in some fashion (1700 Juneway, 4533 S Calumet, 5001 S Drexel, 5450 S Indiana, 7749 S Yates, 7109 S Calumet, 4520 S Drexel, 4611 S Drexel, 1131 E 79th, 6217 S Dorchester, 6250 S Mozart, 638 N Avers, 7024 S Paxton, 7255 S Euclid, 6160 S King Drive, 6949 S Merrill) with respect to which claims have been submitted by both investor lenders and institutional lenders.  (Docket No. 477) There

---

[7] During the fourth quarter of 2019, the Receiver discovered an additional 35 possible claims submissions that were submitted to the portal but were not included in the Receiver's preliminary review of claims forms.

are 71 properties in the Receivership Estate for which claims have been submitted that are the subject of cross-collateralization, including many of which include investor claims as well. There are two properties (6751 S Merrill and 7110 S Cornell) where the only purportedly secured claim asserted against the properties were by institutional lenders. Based on the Receiver's preliminary analysis, there appear to be thirteen properties where only EBF affiliate debt was asserted against each property. (Docket No. 477)

In connection with the third status report, the Receiver created Exhibit 1 which preliminarily identified on a property by property basis the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loan or invested in the particular property (where it could be determined from the face of the claim form). The Receiver has not yet competed review of documents submitted with each claim form in creating the expanded Exhibit 1 and thus, is not making any conclusions or recommendations to the Court as to the certainty, eligibility, or priority of any claim at this time. (Docket No. 548 and Exhibit 1 thereto)

The Receiver also received claims that fall outside the purpose of Exhibit 1 including without limitation the following: (i) claims submitted that identify properties that appear to have been sold or otherwise disposed of prior to the establishment of the Receivership; (ii) claims that have no reference to properties, including without limitation claims submitted against funds or entities (*e.g.,* South Side Development Fund, Chicago Capital Fund, etc.); and (iii) claims where a property address was unspecified or otherwise not possible to determine from the face of the claim form. (Docked No. 548 at 5-6 and Exhibit 1 thereto)

As previously indicated, the Receiver continues to seek to implement a process that is fair, efficient, comprehensive, and provides finality and certainty for all claimants. As stated earlier, the Receiver has submitted three separate status reports in regards to claims. (*See* Docket Nos.

486, 477, & 548) The Receiver will continue with the claims process with direction and approval of the process from the Court. For at least one of the properties, the Receiver foresees filing a report and recommendation in the next 60 days in which he anticipates reporting as to priority and recommending a plan for distribution of sales proceeds.

The Receiver also intends to ascertain, evaluate, determine, and/or recommend (and identify additional information that may be necessary with respect to) *without limitation,* the following as expeditiously as possible:

  i.  whether any claims ought to be rejected for failure to comply with the Court-approved procedures and claim form;

  ii.  the total amount of each claim, and its identifiable components;

  iii.  whether there are common identifiable components of submitted claims that the Receiver contests; and

  iv.  the total number of claimants (after all claims form have been submitted and the Receiver has reviewed and accounted for any duplicative submissions).

Additionally, the Receiver is evaluating potential tax implications relating to entities in the Receivership Estate, the disposition of assets (including but not limited to the sale of real estate), and the claims process. (Docket No. 477 at 9)

## VII.    PROJECTED FUTURE EXPENSES[8]

The Receiver also plans to file a fee application for the first quarter of 2019 this week and the second quarter of 2019 by mid-November.  The Receiver presently anticipates professional fees and expenses for these quarters in the following approximate amounts:[9]

- $106,392.00 in professional fees for the Receiver during the 1st quarter of 2019;

- $418,995.37 in professional fees and expenses for the Receiver's counsel, RDPK, during the 1st quarter of 2019;

- $109,771.00 in professional fees for the Receiver during the 2nd quarter of 2019;

- $401,023.00 in professional fees and $4,672.76 in expenses for the Receiver's counsel, RDPK, during the 2nd quarter of 2019;

- Professional fees of $21,102.00 for BrookWeiner during the 1st quarter of 2019;

- Professional fees of $21,611.00 for BrookWeiner during the 2nd quarter of 2019;

- Professional fees of $1,599.67 for Prometheum during the 1st quarter of 2019; and

- Professional fees of and $797.50 for Prometheum during the 2nd quarter of 2019.

The Receiver also plans to file a fee application for the third quarter of 2019 in December, after which all fee applications will be up to date.

---

[8] The Receiver intends on using funds from the Receiver's operating account for payment of professional fees and expenses.  The Receiver expects to close on three unencumbered properties in November 2019 and from those sales, presently anticipates approximately $1.9M will be transferred to the Receiver's operating account.

[9] The approximate professional fees may differ from amounts that will be set forth once the Receiver's fee application is prepared. However, the Receiver believes the foregoing amounts are reasonable approximations at this time.

## VIII.   CONCLUSION

At this time, the Receiver recommends the continuation of the Receivership for at least the following reasons:

1.      Preservation, maintenance, and operation of the assets in the Receivership Estate including but not limited to the real estate assets;

2.      The continued investigation and analysis of assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests;

3.      The continued efforts of the Receiver to liquidate various assets of the Receivership Estate;

4.      The continued investigation and analysis of the potential claims against the Receivership Estate, including, but not limited to, the claims and records of investors;

5.      The continued investigation, analysis, and recovery of potential fraudulent transfer claims and claims against third parties relating to the Receivership Estate;

6.      The continued analysis and formulation, in consultation with the SEC, of a just and fair distribution plan for the creditors of the Receivership Estate, and the subsequent notice to investors and potential claimants, and submission of a motion for Court approval, of such plan; and

7.      The carrying out of any other legal and/or appointed duties of the Receiver as identified in the August 17, 2018, Order Appointing Receiver, or as the Court deems necessary.

Dated:  October 31, 2019                          Kevin B. Duff, Receiver

                                        By:    /s/      Michael Rachlis

                                               Michael Rachlis (mrachlis@rdaplaw.net)
                                               Nicole Mirjanich (nm@rdaplaw.net)
                                               Rachlis Duff & Peel, LLC
                                               542 South Dearborn Street, Suite 900
                                               Chicago, IL 60605
                                               Phone (312) 733-3950; Fax (312) 733-3952

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I provided service of the foregoing Receiver's Fifth Status Report, via

ECF filing, to all counsel of record on October 31, 2019.

I further certify I caused to be served the Defendant Jerome Cohen via e-mail:

Jerome Cohen
1050 8th Avenue N
Naples, FL 34102
jerryc@reagan.com
*Defendant*

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net

# Exhibit 1

Exhibit 1

STANDARDIZED FUND ACCOUNTING REPORT for EQUITYBUILD, INC., et al. - Cash Basis
Receivership; Civil Court Docket No. 18-cv-05587
Reporting Period 7/1/2019 to 9/30/2019

| Fund Accounting (See Instructions): | | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| Line 1 | Beginning Balance (As of 7/1/2019): | $1,023,577.34 | | $1,023,577.34 |
| | *Increases in Fund Balance:* | | | |
| Line 2 | Business Income | | | |
| Line 3 | Cash and unliquidated assets | | | |
| Line 4 | Interest/Dividend Income | $1,066.59 | | |
| Line 5 | Business Asset Liquidation | | | |
| Line 6 | Personal Asset Liquidation | | | |
| Line 7 | Net Income from Properties | $24,984.12 | | |
| Line 8 | Miscellaneous - Other | | | |
| | Total Funds Available (Line 1-8): | | | $1,049,628.05 |
| | *Decrease in Fund Balance:* | | | |
| Line 9 | Disbursements to Investors | | | |
| Line 10 | Disbursements for receivership operations | | | |
| Line 10a | Disbursements to receiver or Other Profesionals | | | |
| Line 10b | Business Asset Expenses[1] | ($361,114.06) | | |
| Line 10c | Personal Asset Expenses | | | |
| Line 10d | Investment Expenses | | | |
| Line 10e | Third-Party Litigation Expenses | | | |
| | 1. Attorney Fees | | | |
| | 2. Litigation Expenses | | | |
| | Total Third-Party Litigation Expenses | | $0.00 | |
| Line 10f | Tax Administrator Fees and Bonds | | | |
| Line 10g | Federal and State Tax Payments | | | |
| | Total Disbursements for Receivership Operations | | ($361,114.06) | |
| Line 11 | Disbursements for Distribution Expenses Paid by the Fund: | | | |
| Line 11a | Distribution Plan Development Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................... | | | |
| | Independent Distribution Consultant (IDC)................... | | | |
| | Distribution Agent............................................... | | | |
| | Consultants...................................................... | | | |
| | Legal Advisers................................................... | | | |
| | Tax Advisers..................................................... | | | |
| | 2. Administrative Expenses | | | |
| | 3. Miscellaneous | | | |
| | Total Plan Development Expenses | | $0.00 | |
| Line 11b | Distribution Plan Implementation Expenses: | | | |
| | 1. Fees: | | | |
| | Fund Administrator............................................... | | | |
| | IDC.......................................................................... | | | |

STANDARDIZED FUND ACCOUNTING REPORT for EQUITYBUILD, INC., et al. - Cash Basis
Receivership; Civil Court Docket No. 18-cv-05587
Reporting Period 7/1/2019 to 9/30/2019

|  |  |  |  |  |
|---|---|---|---|---|
|  | Distribution Agent…………………………………………… |  |  |  |
|  | Consultants…………………………………………………… |  |  |  |
|  | Legal Advisers……………………………………………… |  |  |  |
|  | Tax Advisers……………………………………………… |  |  |  |
|  | 2. Administrative Expenses |  |  |  |
|  | 3. Investor identification |  |  |  |
|  | Notice/Publishing Approved Plan……………………………… |  |  |  |
|  | Claimant Identification……………………………………… |  |  |  |
|  | Claims Processing………………………………………… |  |  |  |
|  | Web Site Maintenance/Call Center………………………… |  |  |  |
|  | 4. Fund Adminstrator Bond |  |  |  |
|  | 5. Miscellaneous |  |  |  |
|  | 6. Federal Account for Investor Restitution |  |  |  |
|  | (FAIR) reporting Expenses |  |  |  |
|  | Total Plan Implementation Expenses |  |  |  |
|  | Total Disbursement for Distribution Expenses Paid by the Fund |  | $0.00 |  |
| Line 12 | **Disbursement to Court/Other:[2]** | ($1,464.03) |  |  |
| Line 12a | *Investment Expenses/Court Registry Investment* |  |  |  |
|  | *System (CRIS) Fees* |  |  |  |
| Line 12b | *Federal Tax Payments* |  |  |  |
|  | Total Disbursement to Court/Others: |  |  |  |
|  | Total Funds Disbursed (Lines 1-9): |  | ($1,464.03) | ($144,679.61) |
| Line 13 | **Ending Balance (As of 9/30/2019):** |  |  | $687,049.96 |
| Line 14 | **Ending Balance of Fund - Net Assets:** |  |  |  |
| Line 14a | *Cash & Cash Equivalents* |  |  | $687,049.06 |
| Line 14b | *Investments (unliquidated Huber/Hubadex investments)* |  |  |  |
| Line 14c | *Other Assets or uncleared Funds* |  |  |  |
|  | **Total Ending Balance of Fund - Net Assets** |  |  | $687,049.06 |

[1] *Insurance ($126,269.70); property taxes ($22,430.00);
property repairs & other expenses ($49,867.80); property
utilities ($6,191.91); property management expenses
($135,250.09); property fines ($240.00); Naples mortgage
($20,864.56).*
[2] *Expenses incurred in connection with scheduled video
teleconference deposition of Patricia Cohen: $360.00, service
of subpoena; $90.00, court reporter fees (Chicago); $439.10,
court reporter & videographer (Naples); $574.93, conference
room services (Naples).*

Exhibit 1

STANDARDIZED FUND ACCOUNTING REPORT for EQUITYBUILD, INC., et al. - Cash Basis
Receivership; Civil Court Docket No. 18-cv-05587
Reporting Period 7/1/2019 to 9/30/2019

Receiver:

/s/ Kevin B. Duff
(Signature)

Kevin B. Duff, Receiver EquityBuild, Inc., et al.
(Printed Name)

Date: October 28, 2019

# Exhibit 2

Exhibit 2

EQUITYBUILD RECEIVERSHIP ESTATE ACCOUNT
Third Quarter 2019
Schedule of Receipts and Disbursements

| | | | | |
|---|---|---|---|---|
| **Beginning Balance 7/1/19** | | | | $1,023,577.34 |
| | | | | |
| **RECEIPTS** | | | | |
| | | **Received From** | **Amount** | |
| | 7/31/2019 | Interest earned on Receiver's account | $409.60 | |
| | 8/31/2019 | Interest earned on Receiver's account | $383.49 | |
| | 9/15/2019 | From 6160 King Drive acct, for restoration of Receiver's | $5,014.79 | |
| | 9/24/2019 | WPD - post-closing balance on 7502 Eggleston | $13,139.90 | |
| | 9/24/2019 | WPD - post-closing balance on 7549 Essex | $6,829.43 | |
| | 9/30/2019 | Interest earned on Receiver's account | $273.50 | |
| | | | | |
| | | TOTAL RECEIPTS: | | $1,049,628.05 |
| | | | | |
| **DISBURSEMENTS** | | | | |
| | | **Paid To** | **Amount** | |
| Wire Transfer | 7/1/2019 | Paper Street (638 N. Avers water bill) | ($2,075.14) | |
| Wire Transfer | 7/1/2019 | Paper Street (installment on past due water bills) | ($952.66) | |
| Wire Transfer | 7/1/2019 | First Funding (2d installment on premium financing for general liability & umbrella insurance) | ($21,735.26) | |
| Wire Transfer | 7/15/2019 | WPD (property expenses: 7749 S Yates) | ($20,000.00) | |
| Wire Transfer | 7/15/2019 | Paper Street (8107 S Ellis porch repairs ($27,500); 638 N Avers door repair ($1,152)) | ($28,652.00) | |
| 1092 | 7/23/2019 | LaSalle Process Servers, LP (Inv #60006, service of subpoena on P Cohen) | ($360.00) | |
| 1093 | 7/23/2019 | Precise Reporting Service (Inv #16444, video teleconference services in Chicago for P Cohen deposition) | ($90.00) | |
| 1094 | 7/23/2019 | ARCEO (Inv #25603382, conference services in Naples, FL for P Cohen deposition) | ($574.93) | |
| 1095 | 7/23/2019 | Brickell Key Court Reporting (Inv #002345, attendance of court reporter & videographer in Naples, FL for P Cohen deposition) | ($439.10) | |
| Wire Transfer | 7/23/2019 | To 1102 Bingham account for installment payments on delinquent property taxes | ($11,215.00) | |

1

**Exhibit 2**

EQUITYBUILD RECEIVERSHIP ESTATE ACCOUNT
Third Quarter 2019
Schedule of Receipts and Disbursements

| DISBURSEMENTS | | | | |
|---|---|---|---|---|
| Wire Transfer | 7/25/2019 | First Funding (2d installment on premium financing for property liability insurance) | ($19,864.64) | |
| Wire Transfer | 8/1/2019 | Paper Street (property management expenses¹) | ($22,023.01) | |
| Wire Transfer | 8/6/2019 | Paper Street (installment on past due water bills) | ($952.66) | |
| Wire Transfer | 8/6/2019 | First Funding (3d installment on premium financing for general liability & umbrella insurance) | ($21,735.26) | |
| Wire Transfer | 8/8/2019 | WPD (reversal of entries incorrectly recorded to 6217 S Dorchester) | ($9,808.68) | |
| Wire Transfer | 8/14/2019 | Rosenthal Bros (premium increases on 7255 S Euclid ($744) & 4611 S Drexel ($726)) | ($1,470.00) | |
| 1096 | 8/14/2019 | City of Chicago, Dept of Streets & Sanitation (code violation at 5618 S MLK) | ($240.00) | |
| Wire Transfer | 8/23/2019 | First Funding (3d installment on premium financing for property liability insurance) | ($19,864.64) | |
| Wire Transfer | 8/23/2019 | WPD (July 2019 property management expenses²) | ($40,000.00) | |
| 1097 | 8/26/2019 | First Bank Mortgage (mortgage arrears on Naples property) | ($6,954.16) | |
| 1098 | 8/29/2019 | First Bank Mortgage (May-August 2019 mortgage payments & fees on Naples property) | ($6,956.24) | |
| Wire Transfer | 9/4/2019 | Paper Street (property management expenses³) | ($43,418.40) | |
| 1099 | 9/4/2019 | First Bank Mortgage (Sept 2019 payment on Naples mortgage) | ($3,477.08) | |
| Wire Transfer | 9/5/2019 | First Funding (4th installment on premium financing for general liability & umbrella insurance) | ($21,735.26) | |
| Wire Transfer | 9/6/2019 | Paper Street (payment on installments for past due utilities) | ($952.66) | |
| Wire Transfer | 9/9/2019 | Paper Street (installment payment on security door for 7237 Bennett) | ($1,765.80) | |
| Wire Transfer | 9/16/2019 | Paper Street (renovation at 2909 E 78th Street) | ($14,950.00) | |
| Wire Transfer | 9/19/2019 | Paper Street (boiler repair at 7201 S Constance) | ($4,500.00) | |
| 1100 | 9/23/2019 | First Bank Mortgage (Oct 2019 payment on Naples mortgage) | ($3,477.08) | |
| Wire Transfer | 9/23/2019 | First Funding (4th installment on premium financing for property liability insurance) | ($19,864.64) | |
| Funds Transfer | 9/23/2019 | 1102 Bingham account (installment payments on real estate tax delinquency) | ($11,215.00) | |

**Exhibit 2**

EQUITYBUILD RECEIVERSHIP ESTATE ACCOUNT
Third Quarter 2019
Schedule of Receipts and Disbursements

| DISBURSEMENTS | | | | |
|---|---|---|---|---|
| Wire Transfer | 9/24/2019 | Paper Street (past due utilities at 7201 S Constance ($1,195.10) and 7760 S Coles ($63.69)) | ($1,258.79) | |
| | | | | |
| | | TOTAL DISBURSEMENTS: | | ($362,578.09) |
| | | | | |
| | | **Grand Total Cash on Hand at 9/30/19:** | | **$687,049.96** |
| | | | | |
| [1] 7201 S Dorchester - $2,961.65; 7760 S Coles - $1,686.11; 7546 S Saginaw - $5,463.32; 8000 S Justine - $4,111.40; 7656 S Kingston - $7,045.00; 5955 S Sacramento - $1,025.53; Total: $22,023.01 | | | | |
| [2] 7110 S Cornell - $10,000.00; 7750 S Muskegon - $20,000.00; 7749 S Yates - $10,000.00 | | | | |
| [3] 7656 S Kingston - $5,422.98; 5618 MLK Drive - $7,497.07; 7760 S Coles - $1,910.49; 8000 S Justine - $4,660.72; 8214 S Ingleside - $3,161.79; 5955 S Sacramento - $2,571.53; 6001 S Sacramento - $2,193.87; 7026 S Cornell - $1,979.95; Total: $43,418.40 | | | | |

3

# Exhibit 3

**Exhibit 3**

**Master Asset List**

| Receiver's Account (as of 9/30/2019) | | |
|---|---|---|
| **Institution** | **Account Information** | **Amount** |
| AXOS Fiduciary Services | Checking | $687,049.96 |

| Receivership Defendants' Accounts | | | |
|---|---|---|---|
| **Institution** | **Account Information** | **Current Value[1]** | **Amount Transferred to Receiver's Account** |
| Wells Fargo | Checking (53 accounts in the names of the affiliates and affiliate entities included as Receivership Defendants)[2] | $16,321.68[3] | $105,870.94[4] |
| Wells Fargo | Checking (account in the names of Shaun Cohen and spouse) | | $23,065.43[5] |
| Byline Bank | Checking (2 accounts in names of Receivership Defendants) | $21,828.73 | |
| | | | Total: $128,936.37 |

| EquityBuild Real Estate Portfolio (in Illinois) |
|---|
| For a list of the properties within the EquityBuild portfolio identified by property address, alternative address (where appropriate), number of units, and owner, *see* Exhibit 1 to the Receiver's First Status Report, Docket No. 107. |

| Other, Non-Illinois Real Estate | |
|---|---|
| **Description** | **Appraised Market Value** |
| 1102 Bingham Street Houston, TX 77077 | Approximately $1.2M[6] |
| Single family home in Naples, Florida | ±$1,400,000.00[7] |
| | Approximate mortgage amount: $500,000.00 Approximate value less mortgage: $900,000.00 |
| Single family home in Plano, Texas | ±$450,000.00 |
| | Approximate mortgage amount: $400,000.00 Approximate value less mortgage: $50,000.00 |

[1] The Current Value reflects the approximate balance in the frozen bank accounts.

[2] The Receiver is investigating whether each of these accounts is properly included within the Receivership Estate.

[3] $16,321.68 reflects the value as of 2/26/19, the date of the last update provided by Wells Fargo, despite the Receiver's continued efforts to gather further information on the frozen accounts.

[4] This amount was transferred to the Receiver's Account as of 8/27/18, and is included as part of the total balance of the Receiver's Account as of 3/31/19.

[5] This amount was transferred to the Receiver's account as of 11/8/18, and is included as part of the total balance of the Receiver's Account as of 3/31/19.

[6] Source: Harris County Texas 2018 appraised value.

[7] Source: www.zillow.com