# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| | ) | Civil Action No. 18-CV-5587 |
| Plaintiff, | ) | |
| v. | ) ) | The Honorable John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendants. | ) ) | |

## RECEIVER'S THIRD MOTION FOR APPROVAL
## OF THE SALE OF CERTAIN REAL ESTATE

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance" or "EBF"), their respective affiliate entities, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by the Order Appointing Receiver entered on August 17, 2018, respectfully moves for judicial approval of the sale of certain Receivership Assets, and, in support of the motion, states as follows:

### Factual Background

***This Court Authorized The Receiver To Sell Certain Assets Owned By The Receivership Defendants And Subsumed Within The Receivership Estate.***

1.     The United States Securities and Exchange Commission filed this case against EquityBuild, EquityBuild Finance, Jerome Cohen, and Shaun Cohen alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C.

§78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a)q.

2.        In the Complaint, the SEC alleged that the defendants operated a Ponzi-scheme that raised at least $135 million from more than 900 investors by, among other things, making untrue statements of material fact in connection with the sale of promissory notes allegedly secured by residential real estate primarily located on the south side of Chicago.

3.        On August 28, 2018, the Court entered a judgment against defendants Jerome Cohen and Shaun Cohen which, among other things, enjoined future violations of federal securities laws.  (Docket No. 40)

4.        In its Order Appointing Receiver, the Court assumed exclusive jurisdiction over, and possession of, the assets of the Receivership Defendants, including Chicago Capital Fund II LLC ("Chicago Capital Fund 2"). (Docket No. 16, ¶ 1)

5.        In its Order Appointing Receiver, the Court also conferred upon the Receiver (1) "all powers, authorities, rights and privileges" theretofore possessed by the principals of the Receivership Defendants under applicable state and federal law, as well as by the governing operating and shareholders' agreements and (2) all powers and authority of a receiver at equity, as well as all powers conferred upon a receiver under 28 U.S.C. §§ 754, 959, and 1692, and Federal Rule of Civil Procedure 66.  (Docket No. 16, ¶ 4)

6.        The Court also authorized the Receiver to "take all necessary and reasonable actions to cause the sale" of "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (Docket No. 16, ¶ 38.)

***Pursuant To A Sealed-Bid Public Auction Process Approved By The Court, The Receiver Accepted And Executed A Purchase And Sale Contract For The Conveyance Of The Property Located At 8047-55 South Manistee Avenue.***

7. On April 18, 2019, the Receiver filed a Third Motion For Court Approval Of The Process For Public Sale Of Real Property By Sealed Bid (the "Third Motion"). (Docket No. 325)

8. The Third Motion related to three properties, including the property located at 8047-55 South Manistee Avenue in Chicago, Illinois ("8047-55 South Manistee"), to which title is held by Chicago Capital Fund 2.

9. The Third Motion was granted by Order dated May 21, 2019. (Docket No. 378)

10. Title to 8047-55 South Manistee is not encumbered by any mortgages, liens, claims, or encumbrances for which the Receiver will not be able to secure hold harmless letters, and thus no mortgages, liens, claims, or encumbrances will appear as special exceptions on the corresponding title commitment.

11. The Receiver published a notice of the public sale of 8047-55 South Manistee once a week for four consecutive weeks in the Chicago Sun Times and the Chicago Daily Law Bulletin, with advertisements appearing on June 5, June 12, June 19, and June 26, 2019. (Copies of the certificates of publication are attached as **Exhibit A**.) During this four-week period, SVN also marketed the property on public media websites, including its own site, as well as Co-Star Group, LoopNet, City Feet, RealNex, CREXI, theBrokerList, Real Connex, and Linked-In. SVN also contacted its network of potential purchasers and disseminated marketing e-mails.

12. Under the public sale guidelines issued to all prospective bidders, offers were required to be submitted to SVN on or before 5:00 p.m. Central Time on Thursday, June 27, 2019.

13. The building at 8047-55 South Manistee contains 30 apartments and is situated in the South Chicago neighborhood. During the marketing process, SVN listed the property with an asking price of $975,000, and bids were thereafter received from four prospective purchasers. The

Receiver determined that the strongest bid, in the amount of $975,000, was submitted by Ventus Holdings LLC. Accordingly, the Receiver accepted the Purchase And Sale Agreement tendered by Ventus Holdings LLC on June 27, 2019. (A true and accurate copy is attached as **Exhibit B**.)

14.     The Receiver is informed and believes that the offer submitted by Ventus Holdings LLC was fair and reasonable and in the best interests of the Receivership Estate.

***The Receiver Intends To Use Sales Proceeds To Pay Various Costs And Expenses Associated With The Conveyance As Part Of The Closing.***

15.     At the closing of this transaction, certain closing costs and expenses will be paid from the sales proceeds, including, but not limited to, (1) the cost of a survey, (2) the premiums associated with the furnishing of an owner's title insurance policy, (3) the cost of state, local, and municipal transfer taxes, (4) the closing (or escrow) fee assessed by the title company, and (5) a series of ancillary and customary charges relating to, among other things, the need to procure a full payment water certificate from the City of Chicago, the Receiver's obligation to deliver ALTA extended title insurance coverage, statutorily-mandated closing protection coverage, wire transfer fees (associated with the transfer of the sales proceeds to the receivership bank account), expediting fees, a gap risk update, and state regulatory fees.

16.     To convey clear title to 8047-55 South Manistee at closing, the Receiver will also be required to (1) pay all past due water charges and/or delinquent 2018 Cook County property taxes totaling $26,317.14 and (2) extend credits in connection with prospective pro-rated 2019 Cook County property tax liability.

17.     The Receiver will also be required to pay a sales commission to SVN Chicago Commercial, LLC ("SVN"). Pursuant to that certain Exclusive Sales Listing & Asset Management Agreement entered into between SVN and the Receiver, SVN is entitled to a commission equal to 4.5% of the first $1,000,000 in sales price, with a discount of 0.5% if the prospective buyer was

not procured through the efforts of a cooperating broker (and no cooperating broker participated in this transaction).

18.     Accordingly, the Receiver will pay SVN a real estate brokerage commission in the amount of $39,000.

19.     Finally, Andrew E. Porter, an attorney for the Receiver, serves as an agent for First American Title and therefore expects to generate an agency fee for title examination work he performed, such fee to be in an amount estimated to be $2,776.

20.     The Receiver intends to reduce the fee application ultimately submitted to the Court in connection with the corresponding asset disposition work in an amount equal to the agency fees being paid to Mr. Porter.

***The Receiver Will Provide Fair, Adequate, And Sufficient Notice To All Interested Parties.***

21.     The Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested parties of which he is currently aware by electronic mail, to the extent he possesses an e-mail address, or by regular mail if he possesses a mailing address, but no e-mail address.

22.     The Receiver will use information obtained from EquityBuild's records, as well as communications received during the course of the Receivership, to ensure that contact information is as complete as reasonably possible.

23.     A copy of this motion will also be posted on the Receiver's webpage at *http://rdaplaw.net/receivership-for-equitybuild.* The Third Motion (Docket No. 325) and this Court's Order granting the same (Docket No. 378) were also posted to the Receiver's webpage.

### Conclusion

***This Court Should Enter An Order Approving The Sale Of <u>8047-55 South Manistee</u>.***

24.     In the Order Appointing Receiver, this Court invested the Receiver with authority to sell, and transfer clear title to, all real property in the Receivership Estate. (Docket No. 16, ¶ 39) ("Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.")

25.     Accordingly, the Receiver respectfully requests that this Court enter the proposed order attached as **Exhibit C** and approve the sale of <u>8047-55 South Manistee</u> pursuant to the Purchase And Sale Agreement attached as **Exhibit B**.

26.     Pending the completion of the claims process and a to-be-approved distribution plan, the proceeds from the sale of <u>8047-55 South Manistee</u> will be held in the Receivership operating account and remain available to pay operating expenses associated with the Receivership.

 November 18, 2019                                Respectfully submitted,

                                                 KEVIN B. DUFF, RECEIVER


                                                 By: /s/ Michael Rachlis
                                                 Michael Rachlis
                                                 Nicole Mirjanich
                                                 Rachlis Duff & Peel, LLC
                                                 542 South Dearborn Street, Suite
                                                 900 Chicago, Illinois 60605
                                                 (312) 733-3950
                                                 *mrachlis@rdaplaw.net*
                                                 *nm@rdaplaw.net*

**EXHIBIT A**

RACHLIS DUFF PEEL & KAPLAN, LLC
NOTICE OF PUBLIC SALE OF REAL ESTATE     Kevin B. Duff, R

**ADORDERNUMBER:** 0001086613-01

**PO NUMBER:**

**AMOUNT:** 450.00

**NO OF AFFIDAVITS:** 1

# Chicago Sun-Times
# Certificate of Publication

**State of Illinois - County of** Cook

Chicago Sun-Times, does hereby certify it has published the attached advertisments in the following secular newspapers. All newspapers meet Illinois Compiled Statue requirements for publication of Notices per Chapter 715 ILCS 5/0.01 et seq. R.S. 1874, P728 Sec 1, EFF. July 1, 1874. Amended by Laws 1959, P1494, EFF. July 17, 1959. Formerly Ill. Rev. Stat. 1991, CH100, Pl.

Note: Notice appeared in the following checked positions.

**PUBLICATION DATE(S):** 06/05/2019, 06/12/2019, 06/19/2019, 06/26/2019

Chicago Sun-Times

---

### NOTICE OF PUBLIC SALE OF REAL ESTATE

Kevin B. Duff, Receiver for the Estate of EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen in the action styled U. S. Securities and Exchange Commission v. EquityBuild, Inc., et al, Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division, gives notice of his intent to sell the following real properties by sealed bid public sale:

2909-19 E. 78 Street, Chicago, IL 60649 (PIN 21-30-410-002-0000)

701 S. 5th Avenue / 414 Walnut, Maywood, IL 60153 (PIN 15-11-344-001-0000)

3030 E. 79th Street, Chicago, IL 60649 (PINS 21-30-416-014-0000; 21-30-416-015-0000; 21-30-416-016-0000)

7301-09 S. Stewart Avenue, Chicago, IL 60621 (PIN 20-28-216-001-0000)

8047-55 S. Manistee Avenue, Chicago, IL 60617 (PIN 21-31-115-016-0000)

5955 S. Sacramento Avenue, Chicago, IL 60629 (PIN 19-13-304-023-0000)

6001 S. Sacramento Avenue, Chicago, IL 60629 (PIN 19-13-312-001-0000)

7237-43 S. Bennett, Chicago, IL 60649 (PIN 20-25-120-009-0000)

7834-44 S. Ellis Avenue, Chicago, IL 60649 (PIN 20-26-320-029-0000)

7026-42 S. Cornell Avenue, Chicago, IL 60649 (PINS 20-24-323-033-0000; 20-24-323-034-0000)

Offers may be made on a cash basis or subject to a financing contingency, in either case by completing the form Purchase And Sale Agreement to be supplied by the Seller, accompanied by a proof of funds, and delivered to Jeffrey Baasch ("Broker"), SVN Commercial Real Estate, 940 West Adams, Suite 200, Chicago, IL 60607, jeffrey.baasch@svn.com, by no later than 5:00 p.m. CST on June 27, 2019. Offers must be transmitted to the Broker by e-mail or enclosed in a sealed envelope and delivered by U.S. mail, by nationally-recognized overnight courier, or by hand. Untimely and non-conforming offers may be rejected at the sole discretion of the Broker. The seller strongly recommends that prospective purchasers pre-qualify for financing prior to submitting an offer. No liability shall attach to the seller, the broker, or any other party for failure to receive or open any offer.

The Receivership court afforded all lenders a right to make a credit bid on any property against which they hold a mortgage lien. (Docket No. 351) Special procedures regarding credit bids will be made available upon request.

The winning bidder, if not a credit bidder, will be required to make an earnest money deposit in an amount equal to ten percent (10%) of the purchase price by wiring the funds to a designated title company within three (3) business days after acceptance of the Purchase And Sale Agreement. Property tours will be available to all bidders at scheduled times, and the properties may also be shown by appointment. The properties are being sold 'as-is,' with all faults, as of the closing date. The closing shall be held within fifteen (15) days after judicial approval of the Receiver's motion to approve the corresponding sale, which motion will be filed as soon as practicable following the Seller's acceptance of the contract submitted by the winning bidder. The Receiver reserves the right to reject any and all offers to purchase any of the properties being offered for sale.

Bidders must comply with the "Sealed Bid Public Sale of Real Estate Terms and Conditions" which have been approved in the Civil Action, a copy of which may be obtained upon request to the Receiver's Broker at: SVN Commercial Real Estate, Attn: Jeffrey Baasch, 940 West Adams, Suite 200, Chicago, IL 60607, jeffrey.baasch@svn.com.

6/5, 6/12, 6/19, 6/26/19          #1086613

---

IN WITNESS WHEREOF, the undersigned, being duly authorized, has caused this Certificate to be signed

by          *Pamela D Henson*

Pamela D. Henson
Account Manager - Public Legal Notices

This 26th Day of June 2019 A.D.

---

RACHLIS DUFF PEEL & KAPLAN, LLC
542 S DEARBORN ST, STE 900
ATTN: NICOLE MIRJANICH
CHICAGO, IL 60605

# CERTIFICATE OF PUBLICATION

**Case No.** 1:18-CV-05587

21-30-410-002-0000

## LAW BULLETIN MEDIA

does hereby certify that it is the publisher

## CHICAGO DAILY LAW BULLETIN

that said **CHICAGO DAILY LAW BULLETIN** is a secular newspaper that has been published **DAILY** in the city of Chicago, County of Cook, State of Illinois, continuously for more than one year prior to the first date of publication of the notice, appended, that it is of general circulation throughout said County and state, that it is a newspaper as defined in "An Act to revise the law in relation to notices," as amended, Illinois Compiled Statutes (715 ILCS 5/1 & 5/5), and that the notice appended was published in the said **CHICAGO DAILY LAW BULLETIN** on Jun 6, 12, 19, 26, 2019. The notice was also placed on the statewide public notice website as required by 715 ILCS 5/2.1.

In witness thereof, the undersigned has caused this certificate to be signed and its corporate seal affixed at Chicago, Illinois.

**June 26, 2019**

## LAW BULLETIN MEDIA

By 



---

**NOTICE OF PUBLIC SALE OF REAL ESTATE**

Kevin B. Duff, Receiver for the Estate of EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen in the action styled U.S. Securities and Exchange Commission v. EquityBuild, Inc., et al., Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division, gives notice of his intent to sell the following real properties by sealed bid public sale:

2909-19 E. 78 Street, Chicago, IL 60649 (PIN 21-30-410-002-0000)

701 S. 5th Avenue / 414 Walnut, Maywood, IL 60153 (PIN 15-11-344-001-0000)

3030 E. 79th Street, Chicago, IL 60649 (PINS 21-30-416-014-0000; 21-30-416-015-0000; 21-30-416-016-0000)

7301-09 S. Stewart Avenue, Chicago, IL 60621 (PIN 20-28-216-001-0000)

8047-55 S. Manistee Avenue, Chicago, IL 60617 (PIN 21-31-115-016-0000)

5955 S. Sacramento Avenue, Chicago, IL 60629 (PIN 19-13-304-023-0000)

6001 S. Sacramento Avenue, Chicago, IL 60629 (PIN 19-13-312-001-0000)

7237-43 S. Bennett, Chicago, IL 60649 (PIN 20-25-120-009-0000)

7834-44 S. Ellis Avenue, Chicago, IL 60649 (PIN 20-26-320-029-0000)

7026-42 S. Cornell Avenue, Chicago, IL 60649 (PINS 20-24-323-033-0000; 20-24-323-034-0000)

Offers may be made on a cash basis or subject to a financing contingency, in either case by completing the form Purchase And Sale Agreement to be supplied by the Seller, accompanied by a proof of funds, and delivered to Jeffrey Baasch ("Broker"), SVN Commercial Real Estate, 940 West Adams, Suite 200, Chicago, IL 60607, *jeffrey.baasch@svn.com*, by no later that 5:00 p.m. CST on June 27, 2019. Offers must be transmitted to the Broker by e-mail or enclosed in a sealed envelope and delivered by U.S. mail, by nationally-recognized overnight courier, or by hand. Untimely and non-conforming offers may be rejected at the sole discretion of the Broker. The seller strongly recommends that prospective purchasers pre-qualify for financing prior to submitting an offer. No liability shall attach to the seller, the broker, or any other party for failure to receive or open any offer.

The winning bidder, if not a credit bidder, will be required to make an earnest money deposit in an amount equal to ten percent (10%) of the purchase price by wiring the funds to a designated title company within three (3) business days after acceptance of the Purchase And Sale Agreement. Property tours will be available to all bidders at scheduled times, and the properties may also be shown by appointment. The properties are being sold "as-is," with all faults, as of the closing date. The closing shall be held within fifteen (15) days after judicial approval of the Receiver's motion to approve the corresponding sale, which motion will be filed as soon as practicable following the Seller's acceptance of the contract submitted by the winning bidder. The Receiver reserves the right to reject any and all offers to purchase any of the properties being offered for sale.

The Receivership court afforded all lenders a right to make a credit bid on any property against which they hold a mortgage lien. (Docket No. 351) Special procedures regarding credit bids will be made available upon request.

Bidders must comply with the "Sealed Bid Public Sale of Real Estate Terms and Conditions" which have been approved in the Civil Action, a copy of which may be obtained upon request to the Receiver's Broker at: SVN Commercial Real Estate, Attn: Jeffrey Baasch, 940 West Adams, Suite 200, Chicago, IL 60607, *jeffrey.baasch@svn.com.*
LTS3122857
Jun 6, 12, 19, 26, 2019

**EXHIBIT B**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for Chicago Capital Fund II LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and Ventus Holdings LLC ("Buyer") for the purchase and sale of that certain real property and ~~entity to be~~ all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at ~~formed~~ 8047-55 South Manistee Avenue, Chicago, Illinois 60617 and legally described as follows:

LOTS 27 TO 30, INCLUSIVE IN BLOCK 12 IN B.F. JACOB'S SUBDIVISION OF BLOCKS 12 AND 13 IN THE CIRCUIT COURT COMMISSIONER'S PARTITION OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER AND THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-31-115-016-0000

*        *        *

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.    **Purchase Price**. The purchase price for the Property shall be $ __975,000.00__ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.    An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

   *[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a

referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until July 26, 2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.      **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.     **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 18, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property

shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all

damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged

default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

     a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

     b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

     c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

         *[None.]*

     d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

         Andrew E. Porter
         Porter Law Office
         853 North Elston Avenue
         Chicago, Illinois 60614
         *andrew@andrewporterlaw.com*

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
*mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:



melman@mbelmanlaw.com

21.  **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.  **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.  **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.  **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

\*        \*        \*

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this \_\_\_27th\_\_\_ day of June, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

[    Ventus Holdings, LLC        ]

[                                          ]

[Michael B. Elman & Associates, Ltd

[ 10 S LaSalle Street, Suite 1420 ]

[  Chicago, Illinois 60603          ]
 312-541-0903

By:  /s/ Zachary Elman

Its: Manager

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
CHICAGO CAPITAL FUND II LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date:_____

**Buyer's Agent**

[                                          ]

[                                          ]

[                                          ]

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

8

## RIDER A

_MBF_ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $ 780,000.00 at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed % 5 per annum, amortized over 25 years, payable monthly,

with a loan origination fee not to exceed % 1 , plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## EXHIBIT A

### STRICT JOINT ORDER ESCROW AGREEMENT



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____  **Expected Release Date:** _____  **Escrow Number:** 2964600

**Property Address:** 8047-55 South Manistee Avenue, Chicago, Illinois 60617

**Deposit Amount:** $ _____   **Purpose:** ☒ Earnest Money   ☐ **Repairs:** _____
**Document(s) Held** _____      ☐ Tax Escrow   ☐ **Other:** _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | /s/ Michael Elman | Signed: | K—BDff |
| Print Name: | Michael Elman | Print Name: | Kevin B. Duff, Receiver |
| Address: | 10 S LaSalle Street, Suite 1420 | Address: | 542 South Dearborn, Suite 900 |
| | Chicago, Illinois 60603 | | Chicago, Illinois 60605 |
| Email: | melman@mbelmanlaw.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | 312-541-0903 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: | |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee     By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

## EXHIBIT B

### ASSIGNMENT AND ASSUMPTION OF LEASES

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for Chicago Capital Fund II LLC ("Seller"), a Receivership Defendant identified in that certain Order Appointing Receiver entered August 17, 2018, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), a _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which Leases run with the Property commonly known as 8047-55 South Manistee Avenue, Chicago, Illinois 60617.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____ by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ____ day of _____, 2019.

**ASSIGNOR:**                                          **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver,              [_____]
Chicago Capital Fund II LLC


_____              By: _____

                                                     Name: _____

                                                     Title: _____

**EXHIBIT C**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) |
| Plaintiff, | ) **Civil Action No. 18-CV-5587** ) |
| v. | ) ) **Hon. John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) **Magistrate Judge Young B. Kim** ) |
| Defendants. | ) ) ) |

**ORDER GRANTING RECEIVER'S THIRD MOTION FOR
APPROVAL OF THE SALE OF CERTAIN REAL ESTATE**

WHEREAS, this Court took exclusive jurisdiction and possession of the assets of

EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their

affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively,

the "Receivership Defendants") by Order Appointing Receiver, dated August 17, 2018 ("Order

Appointing Receiver") (Dkt. No. 16);

WHEREAS, this Court's Order Appointing Receiver identified Chicago Capital Fund II,

LLC as an additional Receivership Defendant;

WHEREAS, Chicago Capital Fund II, LLC is the owner of record of the real estate

located at 8047-55 South Manistee Avenue, Chicago, Illinois 60617 ("8047 South Manistee"),

whose legal description and permanent index number are as follows:

> LOTS 27 AND 30, INCLUSIVE IN BLOCK 12 IN B.F. JACOB'S
> SUBDIVISION OF BLOCKS 12 AND 13 IN THE CIRCUIT COURT
> COMMISSIONER'S PARTITION OF THE NORTHEAST 1/4 OF THE
> NORTHWEST 1/4 AND THE NORTHWEST 1/4 OF THE NORTHEAST 1/4
> OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD
> PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-31-115-016-0000;

WHEREAS, Kevin B. Duff, as receiver ("Receiver") for the Receivership Defendants, has filed a Third Motion For Approval Of The Sale Of Certain Real Estate (the "Motion"); and

WHEREAS, the Court finds that Receiver has given fair, adequate, and sufficient notice to all interested parties, including all mortgagees affected by the Motion.

NOW, THEREFORE, it is hereby ORDERED that:

1.     The Receiver's Motion is GRANTED.

2.     The Receiver is authorized to sell the real property and improvements at 8047-55 South Manistee.

3.     The proceeds from the sale of 8047-55 South Manistee shall be held in the Receiver's account and remain available for operating expenses associated with the Receivership.

Entered:

_____
The Honorable John Z. Lee

Date:_____

2