UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN <br><br> Defendants. | Case No. 1:18-cv-5587 <br><br> Hon. John Z. Lee <br><br> Magistrate Judge Young B. Kim |

**OBJECTIONS OF CERTAIN MORTGAGEES TO RECEIVER'S THIRD INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The following mortgagees (collectively, "Mortgagees", and each individually a "Mortgagee") respectfully submit this Objection ("Objection") to the Receiver's *Third* Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals ("Third Fee Application") [Dkt. 569]: (1) Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; (2) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; (3) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; (4) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; (5) Wilmington Trust, National Association, as Trustee for the

4837-6190-3532.5

Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; (6) Federal National Mortgage Association ("Fannie Mae"); (7) Sabal TL1, LLC; (8) Federal Home Loan Mortgage Corporation ("Freddie Mac"); (9) UBS AG; (10) BMO Harris Bank N.A.; and (11) BC57, LLC. In support of the Objections, the Mortgagees state as follows:

## INTRODUCTION

On August 15, 2018, the U.S. Securities and Exchange Commission filed a securities fraud complaint against EquityBuild, Inc., Equitybuild Finance, LLC, Jerome Cohen, and Shaun Cohen (collectively, the "Receivership Defendants"). On August 17, 2018, the Court appointed Kevin B. Duff as the equity receiver (the "Receiver") over the estates of the Receivership Defendants (the "Receivership Estate"). It has been more than fifteen (15) months since the Court appointed the Receiver. During that time, the Receiver has requested approval of nearly $1.5 million in fees and expenses, for services provided during a period that spans less than half the Receiver's appointment. The Receiver is asking that this Court approve more than **$6,500 in fees and expenses per day**.

Despite requesting the approval of a burn rate of more than $6,500 per day, the Receiver has failed to file fee applications in accordance with this Court's order. Specifically, the Court's order appointing the Receiver (the "Receiver Order") directs the Receiver to file *quarterly* fee applications (*see* Receiver Order at ¶70). Notwithstanding this clear instruction in the Receiver Order, the Receiver filed the first fee application (covering only 45 days instead of the required quarter) more than one year after the fees were incurred. Similarly, the Receiver filed the second fee application up to thirteen (13) months after the fees were incurred. Not surprisingly, the initial

4837-6190-3532.5

delay in filing the first fee application has caused a "backlog" with all subsequent fee applications and thus this Third Fee Application seeks approval of fees incurred **up to ten (10) months ago**.

The Receiver's consistent and unexplained delays forced the Court to enter a specific order setting deadlines for the Receiver to file the backlogged fee applications. (*See* O*rder Setting Deadlines for Filing Quarterly Fee Applications* [Dkt. No. 568].) The Receiver provides no explanation for these ongoing delays. The more recent fee applications themselves and even the Receiver's status reports reveal no apparent reason for chronically overdue fee applications. Notably, despite having 15 months to do so, the Receiver has proffered no plan of distribution to this Court and creditors. Put simply, for $6,500 a day, the administration of this Receivership Estate should be much farther along than it is. Thus, at a minimum, the approval of the Receiver's Third Fee Application should be put on hold until the Receiver provides the Court and all parties in interest with a concrete plan of distribution.

## ARGUMENT

The Court should withhold interim approval of the Third Fee Application until the Receiver files with the Court a proposed plan of distribution for the Receivership Estate and until the Receiver files the fee application for the second quarter of 2019 (due November 15, 2019)[1] and the fee application for the third quarter of 2019 (due December 20, 2019). There is a complete lack of transparency as to the solvency of the estate due to the Receiver's continued delay in timely filing fee applications. The need to file quarterly and timely fee applications is paramount in a case where it appears that the fees incurred are rapidly outpacing the potential recoveries. Thus,

---

[1] Late on Friday, November 15, 2019, the Receiver filed his Fourth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals ("Fourth Application") [Dkt. 576]. The Fourth Application seeks reimbursement of $525,256.64 in fees, $99,138 to the Receiver and $403,111.76 to the Receiver's law firm. This equates to over $5,500 a day in Receiver and legal fees. The Mortgagees reserve the right to respond to the Fourth Application.

3

the remaining outstanding fee applications will provide this Court and all interested parties a better understanding of the financial health of the estate, as well as the reasonableness of the fees in light of the services rendered. *See, e.g., In re Castellucci*, Bk. No. SV 01-20176-KT, Dkt. No. 424 at 16 (Bankr. C.D. Cal. June 16, 2006), *rev'd on other grounds*, 2007 WL 7540955 (9th Cir. B.A.P. 2007) (chapter 11 debtor's attorney's "substantial delay" in filing fee applications "prejudiced the ability of creditors and the court to evaluate the services rendered and the reasonableness of fees").

As courts in this circuit have explained, interim fee awards are, by their nature, "discretionary and subject to reexamination and adjustment during the course of the case." *See, e.g., In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995); *In re Eckert*, 414 B.R. 404, 409 (Bankr. N.D. Ill. 2009). A careful examination of fees is thus warranted in every case, but none more so than in one that is teetering on administrative insolvency. As the United States Court of Appeals for the Seventh Circuit demonstrated in *Taxman*, professional fees can become subject to disgorgement, if the efforts required (and the fees associated with those efforts) outweigh the potential for recovery to the estate. 49 F.3d at 316.

Here, the fees are patently disproportionate to what the Receiver and his professionals have recovered. According to the *Receiver's Fifth Status Report*, dated October 31, 2019 [Dkt. No. 567] (the "<u>Fifth Status Report</u>"), the Receiver currently holds $687,049.96 of cash on hand (the "<u>SFA Balance</u>"). This balance does not take into account any disbursements made on the Receiver's prior fee applications.[2] This Court has already approved $967,266.86 in fees and expenses and this Third Fee Application now seeks a total of $525,065.37 in fees and expenses. Thus, just the payment of the *approved* fees in the Receiver's fee applications would wipe out the cash on hand in the Receivership Estate and leave a negative balance. Indeed, the amount

---

[2] On October 8, 2019, the Court approved the Receiver's first and second set of fee applications, for a total of $967,266.86 in fees and expenses.

4

contained in the SFA Balance as of the date ending the periods for each of the fee applications has consistently been insufficient (by hundreds of thousands of dollars) to pay the requested fees.[3]

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, Case No. 07 C 3598, 2010 WL 960362, at *6 (March 15, 2010) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). Based on three fee applications, for which there has never been sufficient cash on hand, it is clear that the estate is not deriving enough money to pay administrative expense claims *and* some dividend to unsecured creditors. Thus, this Court should consider if the purposes for which this receivership has been filed can still be achieved. *S.E.C. v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1275 (D. Utah 2009) ("[A] receivership must be monitored to ensure it is still serving the function for which it was created.").

The Receiver may point to the portfolio of real property he holds as evidence of potential recoveries; however, despite having more than a year to do so, the Receiver *still* provides no valuations or evidence regarding value for the vast majority of these assets, simply asking the parties and the Court to believe that there *will be* funds in the future. The trust but verify approach is warranted here. In addition, according to the Fifth Status Report, the Receiver has been unable to make all outstanding 2018 property tax payments, all of which are long overdue. (*See* Fifth Status Report at 3.) Indeed, payment of all remaining property taxes for 2018 *alone* would nearly

---

[3] The *Receiver's First Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals* [Dkt. 411] sought a total of $413,298.44 in fees and expenses for services provided from August 17, 2018 through September 30, 2018. As of September 30, 2018, the SFA Balance was $210,134.04. Similarly, the *Receiver's Second Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals* [Dkt. 487] sought a total of $553,968.42 in fees and expenses for services provided from October 1, 2018 through December 31, 2018. As of December 31, 2018, the SFA Balance was $303,357.37. In this Third Fee Application, the Receiver seeks approval of $525,065.37 in fees expenses for services provided from January 1, 2019 through March 31, 2019. As of March 31, 2019, the SFA Balance was $232,751.46.

4837-6190-3532.5

wipe out the SFA Balance. Moreover, despite listing a number of the properties for sale, according to the *Receiver's Third Status Report On Claims*, dated October 15, 2019 [Dkt. No. 548] (the "Third Claims Report") the Receiver projects that he will be in a position to provide a distribution plan of sale proceeds for *only one* of these properties before the year end. (*See* Third Claims Report at 7.) At least two of these properties—6751-57 S Merrill Avenue and 7110-16 S Cornell Avenue—are encumbered by *only* the institution lenders' claims. (*See Receiver's Second Status Report On Claims*, dated August 15, 2019 [Dkt. No. 477] (the "Second Claims Report") at 7.) The Receiver provides no explanation for why distributions plans have not already been developed for properties over which there exists no priority dispute, much less why it will take 60 days to prepare a plan for just one.

Indeed, based upon the $6,500 per diem price tag, one would think that the Receiver is personally collecting rental proceeds and overseeing the management of the real property. However, the Receiver has delegated this task to a third-party professional management company. The costs associated with the retention of this management company are funded by the rental proceeds that constitute cash collateral for the secured lenders; however, as with all the other professional fees incurred by the Receiver's administration of this estate, such fees were disclosed months after being incurred, cheating creditors of the opportunity to evaluate their reasonableness and necessity before they were out of hand.

An evaluation of the estate's solvency and potential recoveries has been further hampered by the delays saddling the claims administration process. This Court entered an order on May 1, 2019—more than five (5) months ago—approving the Receiver's proposed claims process, establishing a bar date of July 1, 2019 (the "Original Claims Bar Date"). As set forth in the Third Claims Report, however, the Receiver is continuing to receive claims (*see* Third Claims Report at

4837-6190-3532.5

6) and this Court extended the Original Claims Bar Date to December 31, 2019—six months after the Original Claims Bar Date. Thus, creditors are being required to wait a full sixteen (16) months before the claims pool is even established.

Indeed, the Third Claims Report reveals that despite having the supporting documents for the vast majority of the claims submitted to date since July, "the Receiver was unable to review all of the underlying documents . . . ." (*Id.* at 5.) The Third Claims Report promises this Court and creditors that the Receiver "plans to provide a report to the Court that makes a recommendation to the Court for classifying claims, the amount of each claim, the priority of claims, and a plan for distribution of funds in the Receivership Estate to the victims and creditors of the Defendants." (*Id.* at 10.) The Receiver made the same exact commitment in his Second Claims Report, dated more than three (3) months ago on August 15, 2019. (*See* Second Claims Report at 11.) Nevertheless, the Receiver continues to assert that "it is premature" to set a schedule that would hold him accountable for these commitments. (*See* Third Claims Report at 10.)

As this Court has previously noted, the number of claims and the size of this Receivership Estate present uniquely challenging issues to the Receiver and his professionals. However, these pressing and unanswered questions regarding the estate's solvency, coupled with the Receiver's alarming burn rate of $6,500 in fees and expenses *per day* mandate a hold on any further disbursements until some plan of action is proposed. There is no more obvious sign for hitting the pause button on any further payment of fees than the fact that the SFA Balance held an insufficient amount to pay the fees requested for each and every fee application.

Accordingly, the Court should withhold approval of the Third Fee Application until such time as the Receiver has filed with the Court a plan for distribution for the Receivership Estate and

7

until the Receiver files the fee application for the second quarter of 2019 (due November 15, 2019) and the fee application for the third quarter of 2019 (due December 20, 2019).

Dated: November 18, 2019                          Respectfully submitted,

| | |
|---|---|
| /s/ Mark Landman<br>Mark Landman (mlandman@lcbf.com)<br>Landman Corsi Ballaine & Ford P.C.<br>120 Broadway, 27th Floor<br>New York, NY 10271<br>Ph: (212) 238-4800<br>Fax: (212) 238-4848<br>*Counsel for Freddie Mac*<br><br>/s/ James P. Sullivan<br>James P. Sullivan (jsulliva@chapman.com)<br>Chapman and Cutler LLP<br>111 West Monroe Street<br>Chicago, IL 60603<br>Ph: (312)845-3445<br>Fax: (312)516-1445<br>*Counsel for BMO Harris Bank N.A.*<br><br>/s/ James M. Crowley<br>James M. Crowley<br>(jcrowley@plunkettcooney.com)<br>Plunkett Cooney, PC<br>221 N. LaSalle Street, Ste. 1550<br>Chicago, IL 60601<br>Ph: (312) 970-3410<br>Fax: (248) 901-4040<br>*Counsel for UBS AG*<br><br>/s/ Joseph R. Sgroi<br>Joseph R. Sgroi (jsgroi@honigman.com)<br>Scott B. Kitei (skitei@honigman.com)<br>Honigman LLP<br>2290 First National Building<br>660 Woodward Avenue<br>Detroit, MI 48226-3506<br>Ph: (313) 465-7570<br>Fax: (313) 465-7571<br>*Counsel for BC57, LLC* | /s/ Jill L. Nicholson<br>Jill Nicholson (jnicholson@foley.com)<br>Andrew T. McClain (amcclain@foley.com)<br>Foley & Lardner LLP<br>321 N. Clark St., Ste. 2800<br>Chicago, IL 60654<br>Ph: (312) 832-4500<br>Fax: (312) 644-7528<br>*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Fannie Mae; and Sabal TL1, LLC* |

4837-6190-3532.5

9

4837-6190-3532.5

## CERTIFICATE OF SERVICE

I, Jill L. Nicholson, hereby certify that on November 18, 2019, I caused the ***Objections Of Certain Mortgagees To Receiver's Third Interim Application And Motion For Court Approval Of Payment Of Fees And Expenses Of Receiver And Receiver's Retained Professionals*** to be electronically filed using the Court's CM/ECF system on all counsel of record.

/s/ Jill L. Nicholson
Jill L. Nicholson

4837-6190-3532.5