UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN<br><br>Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

**OBJECTIONS OF CERTAIN MORTGAGEES TO RECEIVER'S FOURTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The following mortgagees (collectively, "Mortgagees", and each individually a "Mortgagee") respectfully submit this Objection ("Objection") to the Receiver's Fourth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals ("Fourth Fee Application") [Dkt. 576]: (1) Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; (2) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; (3) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; (4) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; (5) Wilmington Trust, National Association, as Trustee for the

4837-8748-9198.2

Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; (6) Federal National Mortgage Association ("Fannie Mae"); (7) Sabal TL1, LLC; (8) Federal Home Loan Mortgage Corporation ("Freddie Mac"); (9) UBS AG; (10) BMO Harris Bank N.A.; (11) BC57, LLC; and (12) Direct Lending Partner LLC. In support of the Objections, the Mortgagees state as follows:

## INTRODUCTION

On August 15, 2018, the U.S. Securities and Exchange Commission filed a securities fraud complaint against EquityBuild, Inc., Equitybuild Finance, LLC, Jerome Cohen, and Shaun Cohen (collectively, the "Receivership Defendants"). On August 17, 2018, the Court appointed Kevin B. Duff as the equity receiver (the "Receiver") over the estates of the Receivership Defendants (the "Receivership Estate"). It has been more than sixteen (16) months since the Court appointed the Receiver. To date, the Receiver has submitted four fee applications requesting approval of fees and expenses that **total $2,040,290.55 for just 318 days** and nearly all of this amount ($1,910,531.16) is going to the Receiver and his law firm. The Receiver is asking that this Court approve more than **$6,400 in fees and expenses per day**.

Despite requesting the approval of a burn rate of more than $6,400 per day, the case has not progressed at a rate and in a manner to justify such a high price tag. Notably, this Court held two off the record meetings with the parties to set firm deadlines for the Receiver and to encourage the Receiver to advance progress of the claims process and distribution plan. Put simply, for $6,400 a day, the administration of this Receivership Estate should be much farther along than it is. Thus, at a minimum, the approval of the Receiver's Fourth Fee Application should be put on hold until the Receiver provides the Court and all parties in interest with a concrete plan of distribution and the Receiver files the remaining outstanding fee application. Moreover, this Court

4837-8748-9198.2

should hold back 20% of the requested fees and expenses given the apparent insolvency of the estate. Such a hold back is consistent with the Order Appointing Receiver. (Dkt. No. 16, ¶ 72.)

## ARGUMENT

The Court should withhold interim approval of the Fourth Fee Application until the Receiver files with the Court a proposed plan of distribution for the Receivership Estate and until the Receiver files the fee application for the third quarter of 2019 (due December 20, 2019). The need to file quarterly and timely fee applications is paramount in a case where it appears that the fees incurred are rapidly outpacing the potential recoveries. Thus, the remaining outstanding fee application will provide this Court and all interested parties a better understanding of the financial health of the estate, as well as the reasonableness of the fees in light of the services rendered. *See, e.g., In re Castellucci*, Bk. No. SV 01-20176-KT, Dkt. No. 424 at 16 (Bankr. C.D. Cal. June 16, 2006), *rev'd on other grounds*, 2007 WL 7540955 (9th Cir. B.A.P. 2007) (chapter 11 debtor's attorney's "substantial delay" in filing fee applications "prejudiced the ability of creditors and the court to evaluate the services rendered and the reasonableness of fees").

As courts in this circuit have explained, interim fee awards are, by their nature, "discretionary and subject to reexamination and adjustment during the course of the case." *See, e.g., In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995); *In re Eckert*, 414 B.R. 404, 409 (Bankr. N.D. Ill. 2009). A careful examination of fees is thus warranted in every case, but none more so than in one that is teetering on administrative insolvency. As the United States Court of Appeals for the Seventh Circuit demonstrated in *Taxman*, professional fees can become subject to disgorgement, if the efforts required (and the fees associated with those efforts) outweigh the potential for recovery to the estate. 49 F.3d at 316.

3

According to the *Receiver's Fifth Status Report*, dated October 31, 2019 [Dkt. No. 567] (the "Fifth Status Report"), the Receiver held $687,049.96 as of September 30, 2019. The Fourth Fee Application indicates the Receiver apparently held $1,479,519.62 as of November 15, 2019 (the "SFA Balance")[1]. Neither the interested parties nor the Court have the ability to confirm the SFA Balance or have the benefit of a current and accurate accounting of the SFA Balance because the Receiver's fee applications are backlogged. This Court should not approve expenses and fees when neither it nor the interested parties are fully informed as to the solvency of the estate.

Moreover, even assuming the SFA Balance is accurate, the fees are patently disproportionate to what the Receiver and his professionals have recovered. This Court has already approved $967,266.86 in fees and expenses. The Third Fee Application, which is currently pending, seeks a total of $547,767.04 and this Fourth Fee Application now seeks a total of $525,256.64 in fees and expenses. **This amounts to a total of $2,040,290.55 in fees and expenses for just 318 days**. It is unclear whether the SFA Balance reflects payment of the Receiver's approved fees and expenses of $967,266.86. Nonetheless, the Receiver attempts to justify payment of his expenses stating $406,495.94 will remain in the Receiver's operating account after payment of the Third Fee Application and Fourth Fee Application. This justification ignores the fact that the receivership has an extremely high operating cost and many properties have unpaid real estate taxes. The business asset expenses for the period covered by the Fourth Fee Application were $1,292,728.44[2] and as of October 28, 2019 the balance of 2018 property taxes was $507,092.50. (*See* Fifth Status Report at 3.) Thus, even assuming the Receiver's accounting is accurate (which cannot be confirmed because of a lack of transparency), payment of the outstanding property taxes

---

[1] This balance includes an amount of $105,870,94, which the Receiver admits may not even be part of the Receivership Estate. [Dkt. No. 348, p. 24]
[2] Exhibit B fails to accurately detail the business asset expenses, further highlighting the Receiver's carelessness and lack of transparency.

*alone* will wipe out any balance leaving no funds to pay unsecured creditors. The apparent insolvency of the estate justifies a 20% holdback of fees and expenses if this Court approves the Third Fee Application and Fourth Fee Application. (*See* Order Appointing Receiver, Dkt. No. 16, ¶72.)

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, Case No. 07 C 3598, 2010 WL 960362, at *6 (March 15, 2010) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). Based on four fee applications, it is clear that the estate is not deriving enough money to pay administrative expense claims *and* some dividend to unsecured creditors. Thus, this Court should consider if the purposes for which this receivership has been filed can still be achieved. *S.E.C. v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1275 (D. Utah 2009) ("[A] receivership must be monitored to ensure it is still serving the function for which it was created.").

The Receiver may point to the portfolio of real property he holds as evidence of potential recoveries; however, despite having more than a year to do so, the Receiver *still* provides no valuations or evidence regarding value for the vast majority of these assets, simply asking the parties and the Court to believe that there *will be* funds in the future. The trust but verify approach is warranted here. Moreover, the Receiver's reliance on sales of future properties appears to be nothing more than a justification to continue to pay his own fees and expenses. As of June 30, 2019, the Receiver had $1,023,577.44 cash on hand, which was not enough to pay the Receiver's fees and expenses for the first and second quarters of 2019, which totaled $1,073,023.68. In order to justify his fees, the Receiver points out that as of *November 15, 2019* the Receiver has $1,479,519.62 cash on hand, which presumably includes funds from unencumbered properties.

5

Payment of the Third Fee Application and Fourth Fee Application will decrease cash on hand to $406,495.94. As indicated above, this leftover cash will be consumed by property taxes and other business asset expenses. In essence, the Receiver is generating some cash from the sale of properties to accumulate a balance in his operating accounting and then cashing out the operating account to pay his fees and expenses leaving little to no funds for unsecured creditors.

Furthermore, the Third Claims Report reveals that despite having the supporting documents for the vast majority of the claims submitted to date since July, "the Receiver was unable to review all of the underlying documents . . . ." (*Id.* at 5.) The Receiver refuses to provide documents to interested parties related to competing claims, further hampering any efficient and expedient claims process and necessitating court intervention. The issue of sharing information and documentation so as to advance the claims process was discussed with the Court and the parties at the off-the-record meetings. While these discussions are encouraging and the Mortgagees are grateful for the Court's intervention and assistance, the administration of this estate should be farther along than it is given the Receiver has had over sixteen (16) months to develop his own claims process and has incurred costs of over $6,400 a day.

As this Court has previously noted, the number of claims and the size of this Receivership Estate present uniquely challenging issues to the Receiver and his professionals. However, these pressing and unanswered questions regarding the estate's solvency, coupled with the Receiver's alarming burn rate of $6,400 in fees and expenses *per day* mandate a hold on any further disbursements until some plan of action is proposed.

Accordingly, the Court should withhold approval of the Fourth Fee Application until such time as the Receiver has filed with the Court a plan for distribution for the Receivership Estate and until the Receiver files the fee application for the third quarter of 2019 (due December 20, 2019).

4837-8748-9198.2

Dated: December 5, 2019

 /s/ Mark Landman
Mark Landman (mlandman@lcbf.com)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271
Ph: (212) 238-4800
Fax: (212) 238-4848
*Counsel for Freddie Mac*

 /s/ James P. Sullivan
James P. Sullivan (jsulliva@chapman.com)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Ph: (312)845-3445
Fax: (312)516-1445
*Counsel for BMO Harris Bank N.A.*

 /s/ James M. Crowley
James M. Crowley (jcrowley@plunkettcooney.com)
Plunkett Cooney, PC
221 N. LaSalle Street, Ste. 1550
Chicago, IL 60601
Ph: (312) 970-3410
Fax: (248) 901-4040
*Counsel for UBS AG*

 /s/ Joseph R. Sgroi
Joseph R. Sgroi (jsgroi@honigman.com)
Scott B. Kitei (skitei@honigman.com)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Ph: (313) 465-7570
Fax: (313) 465-7571
 *Counsel for BC57, LLC*

 /s/ Jason J. DeJonker
Jason J. DeJonker (jason.dejonker@bclplaw.com)
Bryan Cave Leighton Paisner LLP
161 N Clark St Suite 4300

Respectfully submitted,

/s/ Jill L. Nicholson
Jill Nicholson (jnicholson@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 N. Clark St., Ste. 2800
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 644-7528
*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Fannie Mae; and Sabal TL1, LLC*

7

Chicago, IL 60601
Ph: (312) 602-5005
*Counsel for Direct Lending Partner LLC*

## CERTIFICATE OF SERVICE

  I, Jill L. Nicholson, hereby certify that on December 5, 2019, I caused to be electronically filed the ***Objections of Certain Mortgagees to Receiver's Fourth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals*** each of which is being served electronically via the Court's ECF system on all counsel of record.

                /s/ Jill L. Nicholson
                Jill L. Nicholson

9

4837-8748-9198.2