**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES** ) | |
| **AND EXCHANGE COMMISSION,** ) | **Civil Action No. 18-CV-5587** |
| ) | |
| **Plaintiff,** ) | **Hon. John Z. Lee** |
| **v.** ) | |
| ) | **Magistrate Judge Young B. Kim** |
| **EQUITYBUILD, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## RECEIVER'S COMBINED RESPONSE TO OBJECTIONS TO FEE APPLICATIONS[1]

The institutional lenders' pending objections to the Receiver's third and fourth fee applications are largely recycled objections to the Receivers' first and second fee applications. The Court has already overruled those objections. (Docket Nos. 541, 546-547) They are no more persuasive, nor do they deserve a different treatment the second time around. This Court has already found the following, which is equally applicable now:

- "[T]hat the receiver's efforts have benefitted, and will continue to benefit, the receivership estate." (Ex. 1, October 8, 2019 Tr. 7:5-7)
- "[A]s the Court has previously recognized, there is a significant need for the receiver assets to be managed by a neutral third party until an orderly claims process is concluded." (Ex. 1, October 8, 2019 Tr. 7:2-5)
- That the previous delays in filing did not "provide a sufficient basis to deny compensation to the receiver and his retained professionals." (Ex. 1, October 8, 2019 Tr. 9:1-3)

The Court did so consistent with the law providing that awarding of fees in receiverships "rests in the district judge's discretion, which will not be disturbed unless he has abused it." *SEC v. First Securities Co. of Chicago*, 528 F.2d 449, 451 (7th Cir. 1976) (citation omitted). (*See also*

---

[1] This combined response addresses the institutional lenders' objections to the third and fourth fee applications. (Docket Nos. 581 & 595)

Ex. 1, October 8, 2019 Tr. 5:22-25) "[T]he court may consider all of the factors involved in a particular receivership in determining an appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994) (citations omitted). (*See also* Ex. 1, October 8, 2019 Tr. 6:1-4) As the Seventh Circuit instructed in *Gaskill*, "a benefit to a secured party may take more subtle forms than a bare increase in monetary value. Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation." *Gaskill*, 27 F.3d at 253 (quoting *SEC v. Elliott,* 953 F.2d 1560, 1577 (11th Cir. 1992)). (*See also* Ex. 1, October 8, 2019 Tr. 6:5-15) Moreover, "[a]receiver appointed by a court who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934); *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). These cases continue to support the granting of the Receiver's fee applications and the overruling of the objections here.

To the extent new arguments are raised, those are equally flawed. To that point, those new arguments – that the Receiver should not be paid until a distribution plan is in place and this Court should hold back 20% of all fees – are conclusory, unsupported by authority, and thereby fall under the weight of their burden to "explain[] what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence …, the opposition fails." *FTC v. Capital Acquisitions & Mgmt. Corp.*, 2005 WL 3676529, *4 (N.D. Ill. Aug. 26, 2005) (citation omitted). The lenders have cited no case law and there is nothing in the Appointing Order requiring the Court to hold back fees under the circumstances advanced now by the lenders. Nor have the lenders cited any case law that mandates suspending payment to a receiver while he is conferring a benefit to the Estate. Contrary to these conclusory and unsupported arguments, the

SEC has previously (and continues) to support and approve the Receiver's fee applications. (*See e.g.,* Docket No. 606) "In securities law receiverships, the position of the Securities and Exchange Commission in regard to the awarding of fees will be given great weight." *First Securities Co.*, 528 F.2d at 451 (citing *Fifth Avenue Coach Lines*, 364 F. Supp. at 1222). (*See also* Ex. 1, October 8, 2019 Tr. 6:12-15) Further, this Court has already found that the Receiver's efforts have benefitted the Estate and will continue to benefit the Estate, thus justifying reasonable compensation for the Receiver and his retained professionals. (Ex. 1, 7:2-8)

The remaining (and recycled) arguments can be easily resolved. The lenders continue to advance a tardiness argument and claim prejudice, even when the fee applications at issue here were filed consistent with the Order setting deadlines for these filings. (See Docket No. 568[2]) In any event, this Court has already overruled the objections regarding any tardiness in filing fee applications and found this was not a "sufficient basis to deny compensation to the receiver and his retained professionals." (Ex. 1, October 8, 2019 Tr. 9:1-3)

Separately, there are sufficient funds to make payments to the Receiver and his retained professionals. The amount of cash on hand in the Receiver's Account as of December 20, 2019 was $1,305,507.46. These figures do not include any amounts that the Receiver may recover through claims he is evaluating, investigating, and expecting to bring and do not include funds from the sale of the Naples Property (for which the Receiver filed a motion to approve a private sale (Docket No. 589)). The Receiver expects to close on one property in the first quarter of 2020

---

[2] The lenders' citation to *In re Castelluci,* 2007 WL 7540955 (9th Cir. B.A.P. 2007) is inapposite. There the debtor's attorney failed to file fee applications during the course of the bankruptcy. *Id.* at 4. Yet the attorney made payments to himself from 2002-2004 and by waiting until 2006 to file his fee application, gave no prior notice to the parties and the court and precluded review of his fees. *Id*. at 1, 5. Contrary to here where although the Receiver was delayed in filing his first two fee applications, the third and fourth fee applications were filed according to modified deadlines approved by the Court. (Docket No. 568)

and from that sale, presently expects approximately $850,000 will be transferred to the Receiver's operating account.[3] Additionally, the Receiver anticipates additional funds of at least $1,459,140.20 (corresponding to amounts paid from the Receiver's account for the benefit of other properties) will be restored to the Receiver's account after the properties that have received the benefit of funds from the Receiver's account have been sold.

The lenders also conveniently ignore and/or understate that a significant amount of the Receiver's work in this period is a direct consequence of their persistent motions, objections, communications, demands, financial reporting requirements, and other issues of their own making and for their benefit. (*See e.g.,* Docket No. 483 ("the filings of the Certain Mortgagees have in fact delayed the case.") By way of example, in February and April 2019, the Receiver moved to approve the public sale of properties (Docket No. 228 & 329) many of which are challenged and have significant costs associated with holding these properties. Those submissions led to a virtual avalanche of objections, pleadings, and hearings before the Magistrate Judge and this Court that held up sales for many months to the substantial detriment of the Receivership Estate.

And much work remains to be done. The Receiver must continue to marshal and oversee management of more than 100 properties many of which have challenges, address and fund critical repairs intended to address health and safety concerns, defend dozens of municipal building code violation cases, plan and implement the orderly marketing and sale of the assets, and administer a claims process, among myriad other critical responsibilities. This work is necessary for the Estate because "as Court has previously recognized, there is a significant need for the receiver assets to

---

[3] And while the lenders continue to argue the Receiver should disclose the value of each property, the Court rejected this argument. (Docket No. 527, Ex. 1, 4/23/19 Tr. 39:13-15 ("I don't think that, you know, opening the kimono with regard to the value does the receiver or anyone that much service.").

be managed by a neutral third party until an orderly claims process is concluded." (Ex. 1, October 8, 2019 Tr. 7:2-5)   In any event, the lenders acknowledge none of these efforts and none of this value to the Receivership Estate.[4]

For the foregoing reasons, the Receiver respectfully requests that the Court exercise its discretion to award the Receiver the amount of fees and expenses described in the third and fourth fee applications, and for such other relief as the Court deems just.

Dated:  December 20, 2019                  Kevin B. Duff, Receiver

                                           By:     /s/ Michael Rachlis

                                                   Michael Rachlis
                                                   Nicole Mirjanich
                                                   Rachlis Duff & Peel, LLC
                                                   542 South Dearborn Street, Suite 900
                                                   Chicago, IL 60605
                                                   Phone (312) 733-3950; Fax (312) 733-3952
                                                   mrachlis@rdaplaw.net
                                                   nm@rdaplaw.net

---

[4] The lenders' citation to *SEC v. Madison* is misplaced.  The *Madison* court did not face priority issues where alleged secured lenders have competing interests, and thereby no issues associated with a Receiver seeking to protect interests of all secured creditors (whether institutional or EBF lenders).  Here, the Receiver is working to protect each secured creditor's potential rights to the collateral through the management and orderly disposition of the properties (and with the commensurate escrowing of proceeds), all the while limiting exposure to market fluctuation, carrying costs, and other liabilities.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2019 I provided service of the foregoing Receiver's

Combined Response to Objections to Fee Applications, via ECF filing to all counsel of record, and

via electronic mail to Defendant Jerome Cohen at jerryc@reagan.com.


By:    /s/ Michael Rachlis

          Michael Rachlis
          Rachlis Duff & Peel, LLC
          542 South Dearborn Street, Suite 900
          Chicago, IL 60605
          Phone (312) 733-3950; Fax (312) 733-3952
          mrachlis@rdaplaw.net

# EXHIBIT 1

1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
       UNITED STATES SECURITIES AND    ) Docket No. 18 C 5587
 4     EXCHANGE COMMISSION,            )
                                       )
 5                     Plaintiffs,     )
                                       )
 6              vs.                    )
                                       )
 7     EQUITYBUILD, INC., EQUITYBUILD  )
       FINANCE, LLC, JEROME H. COHEN,  )
 8     AND SHAUN D. COHEN,             ) Chicago, Illinois
                                       ) October 8, 2019
 9                     Defendants.     ) 9:03 o'clock a.m.

10
                      TRANSCRIPT OF PROCEEDINGS - MOTIONS
11                     BEFORE THE HONORABLE JOHN Z. LEE

12
       APPEARANCES:
13

14     For the Plaintiff:       U.S. SECURITIES & EXCHANGE
                                   COMMISSION
15                             BY:  MR. BENJAMIN J. HANAUER
                                    MR. TIMOTHY J. STOCKWELL
16                             175 W. Jackson Blvd., Suite 900
                               Chicago, Illinois  60604
17

18     For the Receiver:       RACHLIS, DUFF, PEEL & KAPLAN, LLC
                               BY:  MR. MICHAEL RACHLIS
19                             542 South Dearborn, Suite 900
                               Chicago, Illinois  60605
20

21     For Shatar Group:       CHERNY LAW OFFICES, P.C.
                               BY:  MR. WILLIAM D. CHERNY
22                             111 East Jefferson Avenue
                               Naperville, Illinois  60540
23

24     For 1839 Fund I:        MR. MICHAEL O. KURTZ
                               5630 North Ashland Avenue, Apt 1
25                             Chicago, Illinois  60660
```

2

```
 1   APPEARANCES (Cont'd):

 2
     For USB AG:              PLUNKETT COONEY, P.C.
 3                            BY:  MR. JAMES M. CROWLEY
                              221 N. LaSalle Street, Suite 1550
 4                            Chicago, Illinois  60601

 5
     For Citibank, U.S. Bank, FOLEY & LARDNER
 6   Wilmington Trust, and    BY:  MS. JILL L. NICHOLSON
     Fannie Mae:              321 North Clark Street, Suite 2800
 7                            Chicago, Illinois  60654

 8
     For Midland Loan Svcs.:  AKERMAN, LLP
 9                            BY:  MR. THOMAS B. FULLERTON
                              71 South Wacker Drive, 46th Floor
10                            Chicago, Illinois  60606

11
     For Capital Investors,   GARDINER, KOCH & WEISBERG
12   Capital Partners,        BY:  MS. SHANNON V. CONDON
     6951 S. Merrill I, LLC,  53 W. Jackson Blvd., Suite 950
13   5001 S. Drexel Blvd. Fund Chicago, Illinois  60604
     II, LLC:
14
15   For Freddie Mac:         PILGRIM CHRISTAKIS, LLP
                              BY:  MS. JENNIFER L. MAJEWSKI
16                            321 North Clark Street, 26th Floor
                              Chicago, Illinois  60654
17
18   For BMO Harris:          CHAPMAN & CUTLER
                              BY:  MR. JAMES P. SULLIVAN
19                            111 West Monroe Street, Suite 1600
                              Chicago, Illinois  60603
20
21   For Liberty EBCP:        JAFFE, RAITT, HEUER & WEISS
                              BY:  MR. JAY L. WELFORD
22                            27777 Franklin Road
                              Southfield, Michigan  48034
23
24   Also Present:            MR. KEVIN B. DUFF, Receiver

25
```

```
 1   APPEARANCES (Cont'd):

 2
     Court Reporter:              MR. JOSEPH RICKHOFF
 3                                Official Court Reporter
                                  219 S. Dearborn St., Suite 1224
 4                                Chicago, Illinois  60604
                                  (312) 435-5562
 5

 6                 *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

 7                         PROCEEDINGS RECORDED BY
                           MECHANICAL STENOGRAPHY
 8                    TRANSCRIPT PRODUCED BY COMPUTER

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

```
 1              THE CLERK:  18 CV 5587, United States Securities and
 2    Exchange Commission vs. Equitybuild.
 3              MR. HANAUER:  Good morning, your Honor, Ben Hanauer
 4    and Tim Stockwell for the SEC.
 5              MR. RACHLIS:  Good morning, your Honor, Michael
 6    Rachlis on behalf of the receiver and the receivership.  With
 7    me is Kevin Duff, who's the receiver, as well.
 8              MR. DUFF:  Good morning, your Honor.
 9              THE COURT:  Good morning.
10              MR. CHERNY:  Bill Cherny on behalf of Shatar Group,
11    LLC.
12              MR. KURTZ:  Michael Kurtz, K-u-r-t-z, on behalf of
13    1839 Fund I, LLC.
14              MS. MAJEWSKI:  Jennifer Majewski on behalf of Freddie
15    Mac.
16              MS. CONDON:  Shannon Condon on behalf of Capital
17    Investors.
18              MS. NICHOLSON:  Jill Nicholson on behalf of Citibank,
19    U.S. Bank, Wilmington Trust as trustees, as well as Fannie
20    Mae.
21              MR. CROWLEY:  James Crowley on behalf of UBS.
22              MR. WELFORD:  Jay Welford on behalf of Liberty EBCP,
23    LLC.
24              MR. FULLERTON:  Tom Fullerton on behalf of Midland
25    Loan Services.
```

1        MR. SULLIVAN:  James Sullivan on behalf of BMO Harris

2   Bank.

3        THE COURT:  Good morning, everyone.

4        So, I issued my ruling with regard to a certain

5   number of objections.

6        Also pending before the Court are the receiver's

7   first and second interim applications and motions for court

8   approval of payments of fees and expenses of the receiver and

9   of retained professionals.  That is Docket No. 411 and 487.

10        The first interim application covers the period from

11   August 17th, 2018, through September 30th, 2018.  The receiver

12   requests $96,681 for the receiver; $273,678.94 for

13   Rachlis, Duff, Adler, Peel & Kaplan; $3,300 for the Kraus Law

14   Firm; $3,465 for BrookWeiner, LLC; $27,635 for Whitley Penn,

15   LLP; and, $8,538.50 for Prometheum.

16        The second interim application covers the period from

17   October 1, 2018, through December 31st, 2018.  In that

18   application, the receiver requests $120,471 for the receiver;

19   $392,385.09 for Rachlis Duff; $21,642.50 for BrookWeiner;

20   $15,979 for Whitley Penn; and, $3,490.84 for Lauren D.W.

21   Tatar.

22        In securities law receiverships, the awarding of fees

23   rests in the district court's discretion, which will not be

24   disturbed unless he has abused it.  SEC vs. First Securities

25   Company of Chicago, 528 F.2d 449, 445.  Seventh Circuit, 1976.

1  The Court may consider all of the factors involved in a

2  particular receivership in determining an appropriate fee.

3  Gaskill vs. Gordon, 27 F.3d 248 at 253.  Seventh Circuit,

4  1994.

5          In making this determination, courts consider that

6  the benefits provided by a receivership may take more subtle

7  forms than a bare increase in monetary value.  That's Gaskill,

8  27 F.3d at 253.  Accordingly, even though a receiver may not

9  have increased or prevented a decrease in the value of the

10  collateral, if a receiver reasonably and diligently discharges

11  his duties, he is entitled to compensation.  That, too, is

12  Gaskill v. Gordon.  And courts also look to the position of

13  the SEC, which is given great weight in determining whether

14  fees should be awarded.  First Securities Company, 528 F.2d at

15  451.

16          Certain lenders have filed objections to fee

17  applications.  The lenders argue that the fee applications

18  demonstrate that the receivership is insolvent, and that its

19  operating costs far outweigh its capital and the benefit to

20  the interested parties.  However, the receiver points to

21  various sources of expected future income, such as the sale of

22  various unencumbered properties, that will more than cover the

23  fees and expenses set forth in the two applications.  All in

24  all, the receiver indicates that he expects to hold in excess

25  of $6 million in the receiver's account.  That's at ECF No.

1    527.

2          Furthermore, as the Court has previously recognized,

3    there is a significant need for the receiver assets to be

4    managed by a neutral party until an orderly claims process is

5    concluded.  Thus, the Court finds that the receiver's efforts

6    have benefitted, and will continue to benefit, the

7    receivership estate; and, accordingly, the Court overrules the

8    lenders' objections in this regard.

9          Furthermore, the lenders contend that the receiver

10   and his retained professionals should not be paid until rents

11   are restored to the lenders, pursuant to the Court's February

12   13th, 2019, order.  That's ECF No. 223.

13         To be sure, the February 13th order does confer on

14   the receiver an obligation to restore the rents, to the extent

15   there are enough funds now or later, if they have been used

16   for the benefit of other properties.  But the receiver has

17   informed the Court that he is in the process of restoring the

18   rents.  See, for example, ECF No. 460 and ECF No. 527.

19         And what is more, the February 13th order does not

20   require that this process be completed before any fees are

21   awarded.  Rather, it directs the receiver to restore the rents

22   as possible when the funds to do so are available.

23         Given that the receiver has already made substantial

24   progress towards restoring the rents, the Court overrules the

25   lenders' objections in this regard, as well.

1   Additionally, the lenders argue that the receiver's

2 fee applications fail to comply with the SEC's billing

3 instructions, and that the receiver requests compensation for

4 efforts that are unreasonable, duplicative or provide no

5 appreciable value.

6   The SEC, however, approves of the fee applications

7 and states that they substantially comply with the SEC billing

8 guidelines.  See ECF No. 526.  And, as previously stated, the

9 Court is to give the SEC's position great weight in a

10 securities law receivership case like this one.

11   Having reviewed the applications, the Court agrees

12 with the SEC and finds the applications substantially comply

13 with the billing guidelines.  Additionally, the Court

14 concludes that the lenders have failed to show the requested

15 fees are unreasonable.  And, therefore, those objections are

16 overruled, as well.

17   Finally, the lenders also point out that, although

18 the receivership order requires the receiver to file quarterly

19 fee applications, the receiver's first interim application was

20 not filed until June, 2019, approximately ten months after he

21 was appointed.  The second application was filed in August,

22 2019.  The receiver acknowledges the delay and explains that

23 he was devoting his efforts to other needs of the receivership

24 estate.

25   The Court recognizes that the applications were not

1   timely filed.  However, it is not persuaded that those delays,

2   in and of themselves, provide a sufficient basis to deny

3   compensation to the receiver and his retained professionals.

4   That said, going forward, the receiver is ordered to file

5   quarterly applications, as required by the receivership order.

6           In sum, the Court determines that award of fees

7   requested is appropriate, based upon the complexities of the

8   receivership, the quality of the work performed, the benefits

9   to the receivership estate, and the time records presented

10   with the applications.  Accordingly, the lenders' objections

11   are overruled and receiver's Motions 411 and 487 are granted.

12           There's also Jerome Cohen has filed an objection --

13   that's Document 512 -- to Magistrate Judge Kim's August 27th

14   Report and Recommendation.  I just want to let the parties

15   know that I'm overruling that objection.  I'll be issuing an

16   order on that shortly.

17           So, there are a couple of other motions that, I

18   understand, are up or in the process of being briefed or will

19   be briefed as of today:  The receivership's motion for Court

20   approval of invoices of claim service vendor and continuing

21   retention of claims vendor; the receivership's motion

22   regarding real estate located at 1102 Bingham, Houston, Texas;

23   and, the receivership's motion for Court approval of sale.

24           There's also certain lenders' motion to permit

25   bankruptcy cases for receivership entities.  That's noticed

1   for today.  That's Document 538.

2          So, I took a look at the motion.  And the claims

3   process or the way by which the receivership will address all

4   the various claims that are made with regard to the properties

5   in the receivership estate has been the subject of far too

6   much litigation in this case already.  And I wondered -- my

7   first impression, looking at the motion, was whether this was

8   just another attempt by the lenders to get out from under the

9   claims process that Judge Kim established -- Magistrate Judge

10  Kim established -- and try to find a different venue in which

11  to do that.

12          Perhaps I'm wrong.  Perhaps there are other reasons.

13  And I wondered if the lenders who filed the motion can,

14  perhaps, educate me on what those reasons are.

15          MS. NICHOLSON:  Your Honor, I'd be happy to address

16  this.

17          THE COURT:  Can you state your name again, please.

18          MS. NICHOLSON:  Yes.  Jill Nicholson on behalf of

19  Citibank, U.S. bank and Wilmington Trust as trustee, as well

20  as Fannie Mae.

21          Your Honor, I don't think we're trying to disturb the

22  claims process at this point, because the claims have been

23  filed.  They would be docketed as filed in the bankruptcy

24  case.  And the -- and, as the debtor in possession, the

25  receiver would have the ability to object to those claims --

1  as he would in any case -- in this case, as well as in the

2  bankruptcy case.

3          When you have a Chapter 11 case, you not only have

4  claims that can be filed by the debtor in possession; you also

5  have the opportunity to have objections filed by the Office of

6  the United States Trustee -- a neutral third party, which is

7  an arm of the Department of Justice -- as well as creditors

8  also have an opportunity to object to claims, as well.

9          So, there's a little more of a -- I don't want to say

10 a robust property.  It's more additive than rather than

11 restrictive than the process that's actually here in place.

12         We're not trying to seek to divest the receiver of

13 his authority in any way, shape or form, or say he can't

14 object to claims.  That's within his ability to do so.  And,

15 again, the claims have been filed, and he's in the process of

16 doing that.

17         The reason we filed this is because we know that

18 there are hundreds of investors.  There are a number of

19 lenders here.  And I can assure the Court, having represented

20 at least four of these lenders here, we have worked very hard

21 and very diligently to file -- as much as we can -- briefs

22 signed by multiple people.  We want to be respectful of the

23 Court's time.

24         So, one of the things that was contemplated is

25 bankruptcy anticipates what's called an adversary proceeding.

1  I'm sure -- because the bankruptcy court -- you're aware of

2  this -- is an adjunct of your court, your Honor -- that they

3  can handle multiple matters; they have seen these issues; and,

4  they can move them on parallel tracks.

5          That's not to say this Court isn't capable of doing

6  it either, but it's something that the bankruptcy courts do on

7  a daily basis.

8          And we have here, you know, quite a bit of a logjam,

9  as the Court has acknowledged.  We're a year into the case.

10  The lenders -- I can't speak for all of them; I can speak for

11  my clients -- would like to see a process that is -- has --

12  you know, again, we see this issue where we're demanding more

13  transparency.  We want more information.  We feel like we're

14  not getting it.  I feel like a lot of times these issues could

15  be resolved if we had more transparency instead of, you know,

16  motions filed without being consulted.  We're happy to do

17  that.  That's not the issue here.

18          But having that adversary place in process, having

19  the benefit of a neutral third party, such as the Department

20  of Justice and Patrick Lang -- who is, again, a former AUSA --

21  having lawyers there to say, look, a gut-check reaction here.

22  We have a neutral third party.  If the lenders are out of

23  line, the U.S. Trustee can object to that.  If the receiver or

24  the debtor in possession is out of line, the U.S. Trustee can

25  object to that.  That is a neutral third party, that this

1    Court currently doesn't have the benefit of.

2         So, one of the thinking -- one of -- at least the

3    initial thought was this would be helpful to the Court rather

4    than burdensome.

5         Other arguments that, you know, we would say is, if

6    you look at the local rules, your Honor, it says that you

7    should incorporate bankruptcy rules, bankruptcy procedures --

8    this is Rule 66.1 -- and that those are kind of guiding

9    factors.  Our position is, well, what better venue to have it

10   in, if these cases are to be informed by bankruptcy.  Have

11   those borrowers placed into bankruptcy to adjudicate the

12   priority claims issues, the claims distribution issues.  It's

13   a very streamlined process.

14        Much of the work is, I will acknowledge, already

15   done.  But I can anticipate if you have hundreds of investors

16   and you have scores of lenders who are now fighting that

17   different -- that battle, the adversary, distinct proceeding

18   would make much more sense, and would be much more efficient

19   and economical on the whole, you know.

20        And I won't get into the other issues, your Honor,

21   that I raised in the motion.  You know, we have -- there's the

22   benefit of the automatic stay, which, I would argue, is

23   almost -- is broader than what we currently have in this

24   receiver order.  And the receiver order contemplates that the

25   receiver could file for bankruptcy, if he so chooses.

1          So, there are a number of reasons, you know, I think

2     we've articulated in the motion why we think, you know -- it

3     sounds like they want to move the case forward.  And we want

4     to move the case forward.  And we're equally aligned in that,

5     in trying to find a vehicle that would accomplish that.

6          And I think the other argument, that maybe we don't

7     have currently in this situation, is bankruptcy judges can

8     decide core matters and issue final orders.  Those core orders

9     also include things like lien priority, sales.  Things that,

10    unfortunately, Magistrate Judge Kim cannot decide on a final

11    basis.  So, there's some inherent efficiency with that, as

12    well.

13         I anticipate what the receiver and the SEC may say

14    is, well, look, you know, this is going to take work, it's

15    going to take time.  But I think the response to that is,

16    typically, a claims agent would have all this information.

17    They've already spent the due diligence.  They know what the

18    assets are.  They know what the liabilities are.  And what

19    this case has been bogged down in, frankly, is administration.

20    And I think moving that venue will help ease that burden.

21         So, that's my response to your question, your Honor.

22         THE COURT:  Thank you.

23         MR. HANAUER:  Thank you, your Honor.

24         The SEC opposes that motion.  And going to what

25    counsel said about there being a logjam that needs to be

1   broken, first response:  The logjam is of the lenders' making.

2   It's been the lenders who have been objecting to virtually

3   every action the receiver's taken.

4        But, also, the logjam, it appears, has been broken

5   last week by the Court's order allowing the sale process to go

6   forward.  And, hopefully, that will mean that continued

7   liquidation by the receiver can go forward quickly, as well.

8        As counsel alluded to, going into bankruptcy is

9   highly inefficient.  The things that a bankruptcy court would

10  supervise -- the liquidation of properties and the claims

11  process -- that's already ongoing.  And that's ongoing under

12  the Court's supervision and Judge Kim's supervision.

13       There's no need for another neutral party because,

14  oh, by the way, the receiver is a neutral party.  The receiver

15  is an agent of the Court and acting on the Court's behalf for

16  the benefit of all creditors.

17       So, really, the bankruptcy process doesn't give the

18  lenders anything that they aren't getting here except for

19  maybe a new judge who may see things differently from the

20  Court and Judge Kim.  But forum shopping, that's not grounds

21  to grant the motion.

22       And, finally, I would just note that the Court has

23  entrusted the receiver, in his business judgment, with the

24  ability to go into bankruptcy for himself or any of the

25  receivership entities.  That's a decision, the SEC believes,

1    that the receiver should be making in his reasonable business

2    judgment, and he should not be having these lenders -- who

3    have been fighting the receiver at every step of the way --

4    taking attempts to force the matter into bankruptcy, which

5    would really just bring us back to Square One and slow down a

6    process that's already been bogged down considerably.

7         MR. RACHLIS:  Your Honor, we join in the objection

8    and the reasons that the SEC has articulated, and as well as

9    joining your Honor's reaction to the filing of the motion, as

10   well.  I think that the concessions that you heard are well-

11   taken.  The process has already been in place.  The claims

12   process is in place.  The sales process is in place.  It's

13   been delayed because of their actions to this point.  But,

14   hopefully, that logjam has been broken.

15        The extent that there would be this additional layer

16   will be highly more costly.  It will create additional

17   burdens.  And I don't believe it will alleviate any burden on

18   this Court because the sales, ultimately, under the

19   receivership statute, are going to still, ultimately, have to

20   get approved by this Court.  Ultimately, this Court will have

21   to approve those sales.

22        And, ultimately, there's an ability to object and

23   file additional appeals from the bankruptcy court to this

24   court.

25        So, in that context, we're going to end up in the

1    same process; but, instead, it would be through an effort to

2    get to a different forum, see what that judge will do, and

3    then have the same type of appeals that you've had to this

4    day.

5         So, there's nothing efficient that's being stated

6    here, and the concession's important.  This process has been

7    set in place.  There's a sales process that's been, generally

8    speaking, you know, provided to the Court.  We're making every

9    effort to do that.  The claims process is definitely far along

10   at this point in time.

11        So, we do object, as well.

12        MR. HANAUER:  And I'm sorry, your Honor, if I can

13   make one additional point before counsel responds; and, that

14   is, going to the efficiency argument.

15        If we go into bankruptcy, it's just one more party

16   that needs to be paid administratively; and, that would be the

17   trustee.  So, adding to the receiver's fees, it just means

18   more money having to go to administer whatever estates there

19   are, less money for investors, less money for other creditors.

20        THE COURT:  All right.

21        So, here's what I'd like to do:  First of all, I

22   would like to have the SEC and the receiver file a written

23   response to the motion to address all the arguments raised in

24   the motion.

25        Can do you that in 14 days?

```
 1              MR. RACHLIS:  Unfortunately, no.  We have -- there

 2   are several matters that -- including a large filing, we have

 3   before Judge Kim in this matter involving the claims process

 4   -- that is going to be -- that is occupying, essentially,

 5   full-time right now, to make sure that that status report is

 6   completed.  And, then, we have a status hearing before him on

 7   the 22nd.  And, then, we also have some out-of-towns -- oh,

 8   and additional filings at the end of this month.  So, that

 9   might be a little bit of a problem on our end.

10              THE COURT:  Okay.

11              Well, let's do this:  I will give you 21 days.  I

12   want it filed by the 29th.

13              What time is your status before Judge Kim on the

14   22nd?

15              MR. RACHLIS:  I believe it's either 10:00 or 11:00

16   o'clock, your Honor.

17              THE COURT:  And what's going to happen at that?

18              MR. RACHLIS:  It's supposed to be a status on the

19   claims process at this point.  There's a status report that's

20   due -- I believe it's on the 15th -- that we are heavily

21   working on right now; and, there will be a further discussion

22   of that before Judge --

23              THE COURT:  Okay.

24              MR. RACHLIS:  11:00 a.m., your Honor.

25              THE COURT:  I would like to meet with the parties off
```

1    the record on October 30th at 10:00 a.m.  Okay?

2           As far as the lenders, it's fine if you all want to

3    be here.  If you want to designate one or two people and the

4    rest of you can participate by telephone conference, that's

5    fine, too.  I'm going to see if I can attend.  You might see

6    me in Judge Kim's courtroom on the 22nd.

7           But I'd like to get a sense off the record about what

8    all the issues are that are brewing that I haven't seen yet

9    and kind of see what the plan is kind of on a 40,000-foot

10   level going forward.  Okay?

11          And perhaps we can try to -- by having more of an

12   informal session off the record, maybe we can either narrow

13   some of the issues that might come up or prevent them or kind

14   of have more of a free exchange.  All right?

15          As I said, I think that for all the lenders, if you

16   want to participate by telephone conference, that's -- and you

17   want to designate one or two people to be here in person,

18   that's probably the preferred way to go.  But it's obviously

19   up to you all.  Okay?

20          Does that timing work for everyone?

21          MR. RACHLIS:  Yes.

22          THE COURT:  30th at 10:00 a.m.?

23          MS. NICHOLSON:  Your Honor, would you like a reply?

24          THE COURT:  I won't need a reply.

25          MS. NICHOLSON:  Understood.  Thank you.

20

1        MR. KURTZ:  Your Honor, if I may?

2        If any of the other --

3        THE COURT:  Can you state your name.

4        MR. KURTZ:  Michael Kurtz, K-u-r-t-z.

5        If any of the other creditors object to the

6    institutional lenders' motions, do we also have leave to file

7    a response to the motion; or, is it just the SEC?

8        THE COURT:  You may, but I want them consolidated.

9        MR. KURTZ:  Thank you.

10        THE COURT:  Okay?

11        The same time frame.

12        So, at this point, I'll see you all here on the 30th

13    at 10:00 a.m., or I'll hear you on the phone.

14        Thank you.

15        MR. RACHLIS:  Thank you.

16        MR. HANAUER:  Thank you, your Honor.

17                    *    *    *    *    *

18

19    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

20

21

     /s/ Joseph Rickhoff                    October 17, 2019
22    Official Court Reporter

23

24

25