UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN<br><br>　　　　　Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

**OBJECTIONS OF CERTAIN MORTGAGEES TO RECEIVER'S FIFTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The following mortgagees (collectively, "Mortgagees", and each individually a "Mortgagee") respectfully submit this Objection ("Objection") to the Receiver's Fifth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals ("Fifth Fee Application") [Dkt. 608]: (1) Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; (2) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; (3) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; (4) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; (5) Wilmington Trust, National Association, as Trustee for the

Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; (6) Federal National Mortgage Association ("Fannie Mae"); (7) Sabal TL1, LLC; (8) Federal Home Loan Mortgage Corporation ("Freddie Mac"); (9) BMO Harris Bank N.A.; (10) Direct Lending Partner LLC; (11) BC57, LLC; and (12) UBS AG. In support of the Objections, the Mortgagees state as follows:

## INTRODUCTION

On August 15, 2018, the U.S. Securities and Exchange Commission filed a securities fraud complaint against EquityBuild, Inc., Equitybuild Finance, LLC, Jerome Cohen, and Shaun Cohen (collectively, the "Receivership Defendants"). On August 17, 2018, the Court appointed Kevin B. Duff as the equity receiver (the "Receiver") over the estates of the Receivership Defendants (the "Receivership Estate").

For the period August 18, 2018 through September 30, 2019 (approximately 13.5 months), the Receiver has submitted five fee applications requesting approval of fees and expenses that **total $2,525,385.47 for just 408 days** and nearly all of this amount ($2,376,062.58) is going to the Receiver and his law firm. The Fifth Fee Application requests a total of $485,094.92 in fees and expenses. The Receiver is asking that this Court approve more than **$6,100 in fees and expenses per day**. The Receiver's and his professionals' fees are neither reasonable nor moderate given the status of this case.

For the avoidance of doubt, the Mortgagees recognize the Receiver and his professionals are entitled to fair, reasonable, and moderate compensation. What the Mortgagees are objecting to is the astronomically high price tag in consideration of the likelihood of recovery by unsecured investors and the progress of the case given that the Receiver was appointed in August 2018.

2

Despite the astronomically high price tag, the case has not progressed in a manner to justify this amount. Third parties (including the Mortgagees) have been forced to seek court intervention to advance the progress of this case. Notably, this Court held two off the record meetings with the parties to set firm deadlines for the Receiver and to encourage the Receiver to advance the progress of the claims process and distribution plan. Moreover, a pattern has emerged in this case whereby the Receiver sells unencumbered properties to generate proceeds for the estate so that he can pay his and his professionals' fees. Eventually, the Receiver will run out of unencumbered properties to sell, which will abruptly stop the cash flow into the estate. All remaining properties will be encumbered properties so the sale of said properties will result in little, if any, funds remaining to compensate the defrauded investors for their losses.

Thus, at a minimum, the approval of the Receiver's Fifth Fee Application should be put on hold until the Receiver provides the Court and all parties in interest with a concrete plan of distribution and this Court has had an opportunity to thoroughly review the Receiver's fifth interim fee application. Moreover, at a minimum, this Court should hold back 20% of the requested fees and expenses given the apparent insolvency of the estate. Such a hold back is consistent with the Order Appointing Receiver and S.E.C. receivership case law. (Dkt. No. 16, ¶ 72.)

## **ARGUMENT**

The Court should withhold interim approval of the Fifth Fee Application until the Receiver files with the Court a proposed plan of distribution for the Receivership Estate and this Court has had an opportunity to thoroughly review Receiver's fifth interim fee application. As courts in this circuit have explained, interim fee awards are, by their nature, "discretionary and subject to reexamination and adjustment during the course of the case." *See, e.g., In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995); *In re Eckert*, 414 B.R. 404, 409 (Bankr. N.D. Ill. 2009). A

3

careful examination of fees is thus warranted in every case, but none more so than in one that is teetering on administrative insolvency. As the United States Court of Appeals for the Seventh Circuit demonstrated in *Taxman*, professional fees can become subject to disgorgement, if the efforts required (and the fees associated with those efforts) outweigh the potential for recovery to the estate. 49 F.3d at 316.

1. **The Fees and Costs are Not Moderate or Reasonable.**

Courts reviewing fee applications for receivers and their professionals apply the "rule of moderation." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 645 (S.D.N.Y. 2008). Receivers and their professionals are only entitled to moderate compensation and ruling courts should "avoid even the appearance of a windfall." *Id*. (internal citation omitted). Moreover, the rule of moderation is especially important when hundreds of victims have been defrauded and will only recover a fraction of their losses. *Id*.

Similarly, receivers and their professionals are only entitled to fair and *reasonable* fees and costs. In determining whether fees and costs are reasonable court's should consider "economy of administration, the burden that the estate may safely be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate." *In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970).

The fees requested by the Receiver to date are anything but moderate and reasonable. The Fifth Fee Application requests a total of $485,094.92 in fees and expenses for 92 days. The Third Fee Application, which this Court approved in full on January 7, 2020, sought a total of $547,767.04 and the Fourth Fee Application, which was also approved in full on January 7, 2020, sought a total of $525,256.64 in fees and expenses. The combined amount claimed by the Receiver in the third, fourth, and fifth fee applications is $1,558,118.60. As of December 20, 2019, the

4

Receiver had $1,305,507.46 cash on hand. (*See* Fifth Fee Application, p. 5 n. 1.) Thus, given that the Court has already approved the third and fourth fee applications, which total $1,073, 023.68, there is not enough cash on hand to pay the Receiver and his professionals for the Fifth Fee Application, let alone provide any sort of compensation to the defrauded investors.

| **Fee Application** | **Fees & Costs Requested** | **Fees & Costs Approved** | **Holdback Amount** |
|---|---|---|---|
| First Interim Fee Application (08/17/18 – 09/30/18) | $413,298.44 | $413,298.44 | $0.00 |
| Second Interim Fee Application (10/1/18 – 12/31/18) | $553,968.43 | $553,968.43 | $0.00 |
| Third Interim Fee Application (01/1/19 – 03/31/19) | $547,767.04 | $547,767.04 | $0.00 |
| Fourth Interim Fee Application (04/1/19 – 06/30/19) | $525,256.64 | $525,256.64 | $0.00 |
| Fifth Interim Fee Application (07/1/19 – 09/30/19) | $485,094.92 | - | $0.00 |
| **TOTAL** | $2,525,385.47 | $2,040,290.55 | $0.00 |

This amount also does not take into account the extremely high operating costs of the estate or payment of unpaid property taxes.

5

4814-3122-7568.2

The Receiver continues to point to the portfolio of real property he holds as evidence of potential recoveries and as justification to continue to pay his own fees and expenses. (*See* Fifth Fee Application, ¶11(b). A review of each and every single fee application presents a clear pattern. The estate lacks sufficient funds to pay the Receiver's fees at the time of application so the Receiver points to potential future recoveries as justification for his fees. Then, at a later date, when there is additional cash on hand, he pays himself and he professionals resulting in the dwindling of the cash on hand to a fraction of the beginning balance.

As indicated above, this leftover cash will be consumed by property taxes and other business asset expenses. In essence, the Receiver is generating some cash from the sale of properties to accumulate a balance in his operating accounting and then cashing out the operating account to pay his fees and expenses leaving little to no funds for unsecured creditors. Eventually, the Receiver will run out of unencumbered properties to sell and the cash flow to the estate will effectively stop. The sale of the remaining properties will generate little or no proceeds for the estate, resulting in little or no compensation for unsecured investors. This pattern is neither reasonable, nor sustainable.

Moreover, even a cursory review of the invoices for the Receiver and his attorneys evidence duplicative billing between the Receiver and his counsel, such as for multiple interoffice meetings, multiple interoffice correspondences, and multiple telephone conferences amongst the Receiver and his counsel. Courts routinely reduce fee applications when the invoices contain billing for attending the same conferences and meetings or for internal communications are the result of inflationary billing practices. *S.E.C. v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2016 WL 6078324, at *3 (C.D. Cal. June 29, 2016). "[W]hen faced with a massive fee application[,] the district court has the authority to make across-the-board percentage

cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id*. (internal citation omitted). The Mortgagees request the Court reduce the Receiver and his attorneys' fees to account for the duplicative billing as such practices are neither reasonable nor beneficial to the estate.

Put simply, the five interim fee applications evidence a pattern that is neither beneficial to the estate nor a burden that the estate can safely bear. Eventually, the estate's cash flow will run out and there will be no money to compensate the unsecured creditors. The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, Case No. 07 C 3598, 2010 WL 960362, at *6 (March 15, 2010) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). Based on five fee applications, it is clear that the estate is not deriving enough money to pay administrative expense claims *and* some dividend to unsecured creditors. Thus, this Court should consider if the purposes for which this receivership has been filed can still be achieved. *S.E.C. v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1275 (D. Utah 2009) ("[A] receivership must be monitored to ensure it is still serving the function for which it was created.").

2.  **The Fifth Fee Application Should be Subject to a 20% Holdback**

The purpose of holdback provisions are to "moderate potentially excessive interim allowances and to incentivize timely resolution." *S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225180, at *2 (S.D. Fla. Mar. 31, 2016). Courts will frequently "withhold a portion of the requested interim fees because until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought." *S.E.C. v. Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at

7

*2 (N.D. Cal. May 15, 2013). Moreover, courts will withhold a portion of interim fee applications because "it is simply too early to tell *to the extent to which* [the receiver's] efforts will benefit the receivership estate." *Byers*, 590 F. Supp. 2d at 648. By withholding a portion of the fees, the court helps to "ensur[e] that the Receiver's efforts benefit the investors and the receivership estate is this Court's primary concern when awarding interim compensation…." *Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *3. Moreover, the Court is entitled to both reduce fees by an across-the-board percentage and withhold a holdback percentage. *See Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2016 WL 6078324, at *3 (reducing the interim fees by an across-the-board reduction of 3.6% and withholding 30% of the total interim fees).

The apparent insolvency of the estate justifies the 20% holdback of fees. As illustrated above, if the Receiver continues on this path, there is a high likelihood the investors will receive a fraction of their losses (if any recovery) while the Receiver and his professionals reap the benefit of full payment of their fees. It is simply too early in the progress of this case to know exactly to what extent the Receiver's efforts will benefit the entire receivership estate. Surely, if the Receiver is confident in his approach and handling of this matter, he should be willing to withhold a portion of the fees until the end of the case to ensure the all interested parties properly benefit.

As this Court has previously noted, the number of claims and the size of this receivership estate present uniquely challenging issues to the Receiver and his professionals. However, these pressing and unanswered questions regarding the estate's solvency, coupled with the Receiver's alarming burn rate of $6,100 in fees and expenses *per day* mandate a hold on any further disbursements until some plan of action is proposed.

Accordingly, the Court should withhold approval of the Fifth Fee Application until such time as the Receiver has filed with the Court a plan for distribution for the receivership estate and

8

until the Court has the opportunity to thoroughly review the Fifth Fee Application. Alternatively, the Court should reduce the Receiver's and his professionals' fees to a reasonable and moderate amount and withhold 20% pursuant to this Court's order appointing the Receiver.

Dated: January 20, 2020  Respectfully submitted,

/s/ Mark Landman
Mark Landman (mlandman@lcbf.com)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271
Ph: (212) 238-4800
Fax: (212) 238-4848
*Counsel for Freddie Mac*

/s/ James P. Sullivan
James P. Sullivan (jsulliva@chapman.com)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Ph: (312)845-3445
Fax: (312)516-1445
*Counsel for BMO Harris Bank N.A.*

/s/ Jason J. DeJonker
Jason J. DeJonker
(jason.dejonker@bclplaw.com)
Bryan Cave Leighton Paisner LLP
161 N Clark St Suite 4300
Chicago, IL 60601
Ph: (312) 602-5005
*Counsel for Direct Lending Partner LLC*

/s/ David Hart
David Hart
(dhart@maddinhauser.com)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Highway
Suite 200-Essex Centre
Southfield MI 48034
*Counsel for BC57, LLC*

/s/ Joanne L. Molinaro
Jill Nicholson (jnicholson@foley.com)
Joanne Lee Molinaro (jmolinaro@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 N. Clark St., Ste. 2800
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 644-7528
*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Fannie Mae; and Sabal TL1, LLC*

9

<u>/s/ James M. Crowley</u>
James M. Crowley
(jcrowley@plunkettcooney.com)
Plunkett Cooney, PC
221 N. LaSalle Street, Ste. 1550
Chicago, IL 60601
Ph: (312) 970-3410
Fax: (248) 901-4040
*Counsel for UBS AG*

4814-3122-7568.2

## CERTIFICATE OF SERVICE

     I, Joanne Lee Molinaro, hereby certify that on January 20, 2020, I caused to be electronically filed the ***Objections of Certain Mortgagees to Receiver's Fifth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals*** each of which is being served electronically via the Court's ECF system on all counsel of record.

                                                 /s/ Joanne Lee Molinaro
                                                 Joanne Lee Molinaro