## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Hon. John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) ) | |

## RECEIVER'S SIXTH STATUS REPORT
### (Fourth Quarter 2019)

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen as defined in the Order Appointing Receiver (Docket No. 16) and Order granting the Receiver's Motion to Amend and Clarify Order Appointing Receiver to Specifically Identify Additional Known Receivership Defendants (Docket No. 290) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court entered on August 17, 2018, respectfully submits this Sixth Status Report for the quarter ending December 31, 2019.

## I.     SUMMARY OF THE OPERATIONS OF THE RECEIVER

The Receiver, together with his legal counsel, Rachlis Duff & Peel, LLC ("RDP"), accountants BrookWeiner, LLC ("BrookWeiner") and Whitley Penn LLP ("Whitley Penn"), forensic consultant Prometheum Technologies, Inc. ("Prometheum"), and asset management and real estate brokerage services provider SVN Chicago Commercial, LLC ("SVN") have undertaken,

without limitation, the following activities since the filing of his Fifth Status Report (Docket No. 567, filed October 31, 2019):

    a.    <u>Identification and Preservation of Assets</u>

Since the filing of his Fifth Status Report, the Receiver continued using reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all profits, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly.

At the end of the fourth quarter 2019, there were 100 properties in the Receivership Estate, including 98 properties in Chicago,[1] one in Houston, Texas, and one in Naples, Florida.  This figure does not include a property in Plano, Texas that the Defendants have used at times as a residence.  The Receiver's primary focus has been and continues to be the preservation, operation, maintenance, sale of the real estate properties within the Receivership Estate, as well as the implementation and handling of claims administration.

As previously stated, the Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, continues to work to understand and plan for cash flow needs for underperforming properties, and controlling and minimizing expenditures where possible, while working to address health, safety, and other essential needs for each property.  To that end, the Receiver and his counsel regularly have communicated with property managers relating to

---

[1] There were 116 properties in the Receivership Estate at the inception of the Receivership, which did not include the single-family home that was recently confirmed as a Receivership Asset.  (*See* Docket No. 603) The Receiver sold six properties in the second quarter of 2019 and eleven properties in the fourth quarter of 2019.

necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions.  The Receiver and his retained professionals have reviewed monthly financial reporting and are analyzing the cash position of the Estate. The Receiver has communicated regularly with his asset manager regarding necessity, prioritization, and efficiency of expenses and repairs on the properties.  Consistent with the Liquidation Plan he filed with the Court (Docket No. 166), the Receiver remains committed, in accordance with the advice of his retained professionals, the property managers, and asset management consultants, and subject to availability of necessary funds, to undertake capital improvements that are needed to address health and safety issues and cure outstanding building code violations or that are demonstrably capable of yielding increases in occupancy that would drive commensurate increases in property value.

The Receiver also has made significant payments for 2018 property taxes.  Since the filing of the fourth status report, the Receiver has paid $138,403.34 towards real estate taxes, as follows:

- 701 5th Avenue                     $49,858.05
- 7546 S Saginaw Avenue              $3,000.00
- 7600 S Kingston Avenue             $6,000.00
- 7748-50 S Essex Avenue             $14,000.00
- 8326-54 S Ellis Avenue             $21,291.64
- 11117-11139 S Longwood Drive       $19,096.43
- 416-24 E 66th Street               $816.67
- 3030 E 79th Street                 $5,432.26
- 6437 S Kenwood Avenue              $2,785.28
- 2220 E 75th Street                 $16,123.01

Additionally, the Receiver continues to pay outstanding real estate taxes at closings in circumstances where there are still outstanding taxes at the time of closing.  The outstanding balance for remaining 2018 property taxes on the portfolio was approximately $389,090 as of December 31, 2019.

This amount also does not include real estate taxes for the property in Houston, Texas.  As stated in the fourth status report, the Receiver negotiated a payment agreement whereby $5,603.98 will be paid monthly for twelve months using funds in the Receiver's Account, beginning on May 31, 2019 with the last payment to be made on April 30, 2020.  (Docket No. 467 at 5)  Since May 2019, the Receiver has paid $44,831.84 towards the past due balance for 2016 and 2017 real estate taxes.  The balance of all real estate taxes on the Houston property as of this status report is approximately $92,038.71, which includes past due balances on the remaining 2017 real estate taxes as well as 2018 and 2019 property taxes.   Property taxes were sold for the property at 431 East 42nd Place (a parcel of vacant land the Receiver discovered in the third quarter of 2019) and the deadline to redeem is November 9, 2020 in the approximate amount of $4,100.00.

 The Receiver is maintaining casualty and liability insurance for all assets in the portfolio. The monthly installments for premiums are currently $39,392.90; as properties are sold over time, the monthly costs will be reduced.  Additionally, the Receiver obtained insurance for the Naples property and in November 2019, paid $4,905.86 for the property insurance premium on this property.  The Receiver and his counsel also worked with the insurance broker to obtain updated records regarding claims history and pending claims, and addressed certain adjuster inquiries relating to pending claims.

b.    Property Sales

The Receiver previously moved for Court approval to sell the following properties free and clear of all mortgages, liens, claims, and encumbrances (Docket No. 524):

- 2909-19 E. 78 Street, Chicago, IL 60649
- 701 S. 5th Avenue / 414 Walnut, Maywood, IL 60153
- 3030 E. 79th Street, Chicago, IL 60649
- 7301-09 S. Stewart Avenue, Chicago, IL 60621
- 5955 S. Sacramento Avenue, Chicago, IL 60629
- 6001 S. Sacramento Avenue, Chicago, IL 60629

- 7834-44 S. Ellis Avenue, Chicago, IL 60649
- 7026-42 S. Cornell Avenue, Chicago, IL 60649

The Court granted this motion on October 15, 2019. (Docket No. 545) With the exception of 701 S. 5th Avenue, all of these properties closed in the fourth quarter of 2019. In particular, the property at 7301 S. Stewart Avenue and 7834 S. Ellis Avenue closed on November 4, 2019. The properties at 5955 S. Sacramento Avenue and 6001 S. Sacramento Avenue closed in November 5, 2019. The property at 7026 S. Cornell closed on November 6, 2019. The property at 3030 E. 79th Street closed on November 12, 2019. And the property at 2909 E. 78th Street closed on November 14, 2019. Consistent with the Court's order approving their sales, proceeds from the sale of the properties at 2909 E. 78th Street, 3030 E. 79th Street, and 7301 S. Stewart Avenue were deposited in the Receiver's operating account, have been used for operations of the Receivership, and remain available for operating expenses associated with the Receivership. (Docket No. 571) In accordance with the Court's order, the Receiver segregated proceeds from the sale of the properties at 5955 S. Sacramento Avenue, 6001 S. Sacramento Avenue, 7834-44 S. Ellis Avenue, and 7026-42 S. Cornell Avenue in separate subaccounts on a property-by-property basis. (*Id.*) Net proceeds from these sales were as follows:

- 2909-19 E. 78 Street $1,276,569.01
- 3030 E. 79th Street $351,680.90
- 7301-09 S. Stewart Avenue $587,383.53
- 5955 S. Sacramento Avenue $497,643.46
- 6001 S. Sacramento Avenue $379,772. 49
- 7834-44 S. Ellis Avenue $1,655,750.17
- 7026-42 S. Cornell Avenue $918,748.46

The Receiver listed the properties below for sale during the second quarter of 2019 (Docket No. 467 at 8-10) :

- 638-40 N. Avers Avenue, Chicago, IL 60624
- 4520-26 S. Drexel Blvd, Chicago, IL 60653
- 6751-57 S Merrill Avenue, Chicago, IL 60649

- 6949-59 S. Merrill Avenue, Chicago, IL 60649
- 7109-19 S Calumet Avenue, Chicago, IL 60619
- 7110-16 S Cornell Avenue, Chicago, IL 60649
- 7450 S Luella Avenue, Chicago, IL 60649
- 7546 S Saginaw Avenue, Chicago, IL 60649
- 7600 S Kingston Avenue, Chicago, IL 60649
- 7625-33 S East End Avenue, Chicago, IL 60649
- 7635-43 S East End Avenue, Chicago, IL 60649
- 7656 S Kingston Avenue, Chicago, IL 60649
- 7748-50 S Essex Avenue, Chicago, IL 60649
- 7749 S Yates Boulevard, Chicago, IL 60649
- 7750-58 S Muskegon Avenue, Chicago, IL 60649
- 8201 S Kingston Avenue, Chicago, IL 60617
- 8326-58 S Ellis Avenue, Chicago, IL 60619

As stated previously (Docket No. 467 at 13-15), institutional lenders filed numerous motions that objected to virtually all activities of the Receivership, including but not limited to the process for the sale of properties above and credit bid procedures associated with these sales. These motions led to a significant number of hearings and appearances before the Court, substantial cost to the Receivership Estate, and have significantly slowed the process for the sale of the properties. On October 4, 2019, this Court overruled the numerous pending objections filed by the lenders to the Receiver's sales process and adopted Magistrate Judge Kim's rulings in full.[2] (Docket No. 540) Accordingly, the Receiver now has all properties above under contract; each of the properties at 638-40 N. Avers[3] and 7109-11 S. Calumet is under contract pursuant to a credit bid, subject to negotiation of the form of letter of credit.

On November 20, 2019, the Receiver moved for Court approval to sell the following properties free and clear of all mortgages, liens, claims, and encumbrances (Docket No. 583):

---

[2] Magistrate Judge Kim issued four separate report and recommendations addressing the lenders' objections to the Receiver's sales process dated May 2, 2019 (Docket No. 352), May 22, 2019 (Docket No. 382), July 9, 2019 (Docket No. 447), and August 19, 2019 (Docket No. 483), which were adopted in full by this Court. (Docket No. 540)

[3] The parties to the purchase and sale agreement also are discussing the impact on the agreement of a fire at the property.

- 7625-33 S East End Avenue, Chicago, IL 60649
- 7635-43 S East End Avenue, Chicago, IL 60649
- 7750-58 S Muskegon Avenue, Chicago, IL 60649
- 7748-50 S Essex Avenue, Chicago, IL 60649

One creditor, LMJ Sales, Inc., filed an objection to the sale of 7748-50 S. Essex asserting that a release attached as an exhibit to that motion was invalid and consequently, asserted sales proceeds should be segregated in a subaccount. (Docket No. 596) In his response, the Receiver stated that the sales proceeds would be held in a segregated account until priority determinations (including a determination of the priority of LMJ's mortgage) are made by the court following additional discovery and briefing and therefore, there was no valid basis for an objection. (Docket No. 600) The Court overruled this objection and granted the Receiver's motion. (Docket No. 601) The properties at 7750-58 S Muskegon and 7748-50 S Essex closed on December 18, 2019. The two properties on S East End closed on December 20, 2019. The Receiver segregated proceeds from the sale of the properties 7625-33 S East End Avenue (in the amount of $1,156,782.51), 7635-43 S East End Avenue (in the amount of $1,084,045.74), 7750-58 S Muskegon Avenue (in the amount of $582,979.54), and 7748-50 S Essex Avenue (in the amount of $1,217,423.87) in separate subaccounts on a property-by-property basis.

On November 18, 2019, the Receiver moved for Court approval to sell the property at 8047-55 S. Manistee Avenue free and clear of all mortgages, liens, claims, and encumbrances. (Docket No. 579) One creditor filed an objection asserting it has a mortgage interest in the property and consequently, asserted sales proceeds should be segregated in a subaccount. (Docket No. 594) Given the need to close the sale of this property as soon as practicable, the Receiver agreed to deposit the proceeds from the sale of 8047-55 South Manistee in a separate subaccount to moot the objection and allow the sale to be consummated. (Docket No. 615)

During the third quarter of 2019, the Receiver filed a motion to sell the property at 1102 Bingham Street, Houston, TX 77007. (Docket No. 522) On October 15, 2019, the Court granted the Receiver's motion, appointing three appraisers, and allowing the Receiver to sell this property through a private sale. (Docket No. 544) Accordingly, the Receiver engaged a broker and listed this property for sale during the fourth quarter of 2019.

On November 25, 2019, the Receiver filed a motion to sell the property at 1050 8th Avenue N, Naples, Florida (Docket No. 589) to which Jerome Cohen objected to (Docket No. 593). During the first quarter of 2020, the Court overruled Cohen's objection and granted the Receiver's motion, appointing three appraisers, and allowing the Receiver to sell this property through a private sale. (Docket No. 612) The Receiver recently received completed appraisals and is proceeding with listing the property for sale, consistent with the information received from the appraisers and in consultation with his Naples, FL real estate broker.

On January 24, 2020, the Receiver filed a motion seeking approval to proceed with listing for sale an additional 36 multifamily properties in the Estate. (Docket No. 618) The Receiver also intends to file further motions relating to the sale of properties in the Estate in the first quarter of 2020, including but not limited to the single-family home portfolio of properties, consisting of 37 properties that are almost entirely 1-4 unit properties. The Receiver also has an additional property under contract – 7237-43 South Bennett, Chicago, IL 60649 – and anticipates filing a motion for Court approval for this property in the first quarter of 2020.

c.    <u>Code Violations</u>

A substantial number of properties in the portfolio have code violations that involve conditions pre-existing the establishment of the Receivership and have required the Receiver's attention and efforts to correct, resolve, or otherwise address with City officials. The Receiver and

his counsel continue to work closely with the City's corporation counsel for each department (circuit court, buildings, and streets and sanitation) to address all open building code violations, to address life and safety issues, and to preserve the respective properties. The property managers have also been assisting in the defense of numerous administrative and housing court actions alleging building code violations of widely varying levels of severity filed by the City of Chicago. The Receiver's counsel appeared on City of Chicago related matters on seven occasions during the fourth quarter 2019. As of December 31, 2019, there were approximately 24 known open code violations involving City of Chicago matters.

During this time period, there were ten known City of Chicago municipal housing court matters. Issues raised in these matters included but are not limited to:

- As stated previously (Docket No. 467), the demolition and clean-up of a California-style porch were complete in June 2019 for the property at 7760 S. Coles. Since then, the Receiver worked with the property manager to vacate, secure, and winterize the building.

- Cited violations for the property at 7110 S. Cornell relate to masonry and tuck-point work. The Receiver authorized installation of scaffolding to protect the sidewalk and pedestrians, which remains in place. The Receiver also authorized porch repairs that were completed during the fourth quarter of 2019. This property is currently under contract.

As of December 31, 2019, approximately eleven City of Chicago administrative proceedings filed by the City of Chicago Buildings Department were known to be pending. During the fourth quarter of 2019, the Receiver achieved dismissal of six administrative proceedings filed by the City of Chicago Buildings Department and one administrative proceeding filed by the Department of Streets and Sanitation. During the fourth quarter of 2019, the Receiver was also aware of City of Chicago violations on one property for which notice had been sent but a court date had not yet been assigned.

    d.    <u>Financial Reporting and Rents Restoration</u>

The Receiver is providing institutional lenders with monthly accounting reports relating to rents from and expenses incurred with respect to the properties corresponding to their asserted liens as required by the February 13, 2019 Order. (Docket No. 223) To that end, to date, monthly reports with respect to 89 properties have been sent to lenders' counsel for the periods beginning August 1, 2019 and ending monthly from March 31, 2019 through November 30, 2019. Reports for each property include, for each month beginning in August 2018: (a) information about net operating income based upon reporting from the respective property managers, (b) information about expenditures made by the Receiver for the benefit of the property (primarily for insurance, real estate taxes, and funds sent to the property manager to cover expenses not covered by net operating income from the property), and (c) amounts from net rental income distributed from the property to the Receiver or to other properties, amounts contributed to the property by the Receivership and by other properties, and a calculation of the amount (if any) of rentals remaining to be restored to the property under the February 13, 2019 Order. Each report is sent with a detailed explanation of the contents of the related report and the calculation of rentals to be restored. A summary of the information contained in these reports is attached as an exhibit to a motion filed by the Receiver regarding the use of sales proceeds for rent restoration. (Docket No. 460) Beginning with the period ending August 31, 2019 (for which reports were sent on October 25, 2019), for properties where no rent restoration is due, the final line item on the report reflects an amount that has been expended for the benefit of the property from funds in the Receiver's Account.

The Receiver also continues to analyze sources of funds available for restoration of rents to affected properties. The total amount to be restored was $767,192.75 as of February 28, 2019.

This amount had been reduced to $460,149.97 as of November 30, 2019 and approximately $404,000.00 as of December 31, 2019. Moreover, the total amount reimbursable from the properties sold in the fourth quarter of 2019 was $756,871.74, and as such there is a sufficient amount of money to complete rent restoration under the Court's February 13, 2019 Order, with the remainder being restored to the Receivership. The Receiver anticipates filing a corresponding motion for rent restoration and reimbursement similar to the motion filed with respect to the 6160 S MLK property (see Docket No. 460) during the first quarter of 2020.

e.     Other Receivership Assets

The Receiver continues to evaluate whether certain non-Illinois properties are or should be considered Receivership Assets and thus subsumed within the Estate. These include properties that have or may have been purchased with EquityBuild investor funds. Based on evidence gathered to-date, and as stated in previous status reports, these include without limitation: properties in Plano, TX and Jackson, MS. As stated in previous status reports, Shaun Cohen and Jerome Cohen each have a life insurance policy. (Docket Nos. 107 at 16, 258 at 14, & 348 at 13)

f.     Open Litigation

During the fourth quarter 2019, the Receiver – working with his counsel and WPD's counsel – negotiated a settlement in the matter captioned *Hudson v. WPD Management, et al.,* Case No. 19 M1 40154, Circuit Court of Cook County, First Municipal Division.[4]

---

[4] The matter involved the alleged failure to return a security deposit at one of the properties in the Receivership Estate, 7114 S. Cornell Avenue. The matter was resolved for a nominal amount of $700 in exchange for a general release of the Receivership Estate of EquityBuild and WPD Management.

g.      Notice of Appointment of Receiver

The Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver continues to deliver notices to individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

h.      Investor Communications

The Receiver has provided numerous resources for investors to stay informed. To provide basic information, the Receiver established a webpage (http://rdaplaw.net/receivership-for-equitybuild) for investors and other interested parties to obtain information and certain court filings related to the Receivership estate. A copy of this Status Report will be posted on the Receiver's webpage.

Court filings and orders are also available through PACER, which is an electronic filing system used for submissions to the Court. Investors and others seeking court filings and orders can visit www.ilnd.uscourts.gov for information about accessing filings through PACER.

Beyond those avenues, the Receiver has received and responded to roughly 20,000 emails and voicemails from investors and others. He and his staff continue to respond to these communications in as timely and practicable a way as possible, but has asked all stakeholders and interested parties for patience during this lengthy process because responding to individual inquiries depletes Receivership assets. The Receiver will continue to work to ensure that information is available and/or otherwise provided as quickly and completely as practicable. The

12

quarterly status reports and Receiver's other court filings remain the best means of communicating the activities of the Receivership Estate.

i. <u>Control of Receivership Property and Records</u>

The Receiver has continued efforts to locate and preserve all EquityBuild property and records. The Receiver is presently maintaining three platforms of records and data.

j. <u>Securing Bank and Investment Accounts</u>

The Receiver notified, contacted, and conferred with the banks and other financial institutions the Receiver identified as having custody or control of funds, accounts, or other assets held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants. The Receiver is still pursuing records from certain institutions.

k. <u>Factual Investigation</u>

The Receiver and his retained professionals have continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, plus a limited number of hard copy records); (iv) available underlying transaction documents received to date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

l. <u>Tax Issues</u>

With respect to tax implications relating to the Defendants' scheme, the Receiver cannot advise the investors on tax matters and informed investors accordingly by the letter sent on September 21, 2018. Moreover, the Receiver and his retained professionals do not plan to issue 1099-INT's. With respect to valuation, loss, or other tax issues, investors and their tax advisors

may wish to seek independent tax advice and consider IRS Rev. Proc. 2009-20 and IRS Rev. Rul. 2009-9. For their own tax returns, investors and their tax advisors may wish to consult Page 6 of the instructions to Form 4684.

Whitley Penn was retained to prepare income tax returns for EquityBuild and its affiliates for the tax years 2016 and 2017. Whitley Penn continues to report that its efforts have been significantly challenged by EquityBuild's information and record keeping practices. Whitley Penn has stated that it is working to obtain documents and information in order to prepare and file what it presently anticipates as 32 tax returns.[5] Twelve entities were previously classified by Whitley Penn as having an undetermined tax filing status but based on further information from former EquityBuild employees, Whitley Penn determined these entities do not have a filing requirement.[6] As to the entities for which a return is being prepared, Whitley Penn has compiled income and expense reports for a majority of the entities. Whitley Penn states that there are certain missing items such as loan balances, escrow balances, and property management statements that are needed to accurately report balance sheet activity for these entities, and the Receiver is actively working to attempt to provide that information.

---

[5] These thirty two entities are 11318 S Church St Associates, 1401 W 109th Associates, 1516 E 85th Pl Associates, 4750 Indiana LLC, 4755 S Saint Lawrence Associates, 526 W 78th LLC, 6759 S Indiana Associates, 6807 S Indiana Associates, 8809 S Wood Associates, 1700 W Juneway LLC, 4533-37 S Calumet LLC, 5450 S Indiana LLC, 7749-59 S Yates LLC, South Side Development Fund 1 LLC, South Side Development Fund 4 LLC, South Side Development Fund 5 LLC, SSDF1 Holdco 2 LLC, SSDF2 Holdco 3 LLC, SSDF3 Holdco 1, SSDF4 Holdco 1 LLC, SSDF4 Holdco 2 LLC, SSDF4 Holdco 3 LLC, SSPH Portfolio 1 LLC, EquityBuild Inc., 3400 Newkirk LLC, South Side Development Fund 3 LLC, SSDF1 Holdco 1 LLC, SSDF2 Holdco 1, SSDF3 Holdco 2 LLC, SSDF5 Holdco 1 LLC, SSPH Holdco 1, and SSDF2 Holdco 2 LLC.
[6] These twelve entities are 1422 E 68th LLC, 7107-29 S Bennett LLC, 7823 Essex LLC, EB South Chicago 1 LLC, EB South Chicago 1 Manager LLC, EB South Chicago 2 LLC, SSDF2 Holdco 2 LLC, SSDF5 Holdco 2 LLC, SSPH Holdco 2 LLC, 1632 Shirley LLC, 8217 Dorchester LLC, and Hybrid Capital Fund LLC.

14

Additionally, BrookWeiner was retained to perform accounting, tax, and related work regarding assets of the Receivership Defendants such as the accounting for ongoing business operations of the Receivership Defendants. BrookWeiner has compiled monthly property statements and property spreadsheets and assisted with cash flow analysis matters.

m.      <u>Accounts Established by Receiver for the Benefit of the Receivership Estate</u>

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property. The interest-bearing checking account is used by the Receiver to collect liquid assets of the Estate and to pay the portfolio-related and administrative expenses. The Receiver also established separate interest-bearing accounts for the purpose of depositing and holding funds from the sale of real estate encumbered by secured debt until such time as it becomes appropriate to distribute such funds, upon Court approval, to the various creditors of the Estate, including but not limited to the defrauded investors or lenders. Attached as **<u>Exhibit 1</u>** is a schedule reflecting the balance of funds in these property specific accounts as of December 31, 2019.

## II.     RECEIVER'S FUND ACCOUNTING

The Receiver's Standardized Fund Accounting Report ("SFAR") for the Fourth Quarter 2019 is attached hereto as **<u>Exhibit 2.</u>** The SFAR sets forth the funds received and disbursed from the Receivership Estate during this reporting period. As reported in the SFAR, the amount of cash on hand as of December 31, 2019 was $1,303,043.37 The information reflected in the SFAR is based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

## III.  RECEIVER'S SCHEDULE OF RECEIPTS AND DISBURSEMENTS

The Receiver's Schedule of Receipts and Disbursements ("Schedule") for the Fourth Quarter 2019 is attached hereto as **Exhibit 3.**  The Schedule reflects $2,910,005.54 in receipts and $1,303,043.37 in disbursements as of December 31, 2019. Investors, creditors, and other interested parties are encouraged to review this Schedule for detailed information of disbursements on a property-by-property basis.

## IV.  RECEIVERSHIP PROPERTY

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit 4.**  The Receiver previously set forth a list of real estate within the Receivership Estate in his First Status Report.  (*See* Docket No. 107, Exhibit 1)

The Master Asset List identifies 53 checking accounts in the names of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $105,870.94.  (*See* also Docket No. 348 at 23-24 for additional information relating to these funds.)

The Master Asset List does not include assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests.  The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate, including but not limited to charitable donations, loans, gifts, settlements for which payment has not yet been received, and other property given to family members, former employees, and others.

## V.  LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY THE RECEIVERSHIP ESTATE

The Receiver and his attorneys are in the process of analyzing and identifying potential claims, including, but not limited to, potential fraudulent transfer claims and claims for aiding and abetting the fraud of the Receivership Defendants.

## VI.  CREDITORS AND CLAIMS AGAINST THE RECEIVERSHIP ESTATE

During the fourth quarter of 2019, this Court ordered that all claims and amended claims be submitted to the Receiver no later than December 31, 2019. Approximately 28 claimants submitted amended claims and approximately 6 claimants submitted new claim submissions prior to the December 31, 2019 Bar Date.

The Receiver and his retained professionals have been analyzing and working with the more than 2,000 claims submissions in connection with filing status reports on claims on August 1, 2019 (Docket No. 468), August 15, 2019 (Docket No. 477), and October 15, 2019 (Docket No. 548) all of which have been posted to the Receiver's webpage.  In connection with the third status report filed on October 15, 2019 (Docket No. 548), the Receiver created Exhibit 1 which preliminarily identified on a property by property basis the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loan or invested in the particular property (where it could be determined from the face of the claim form).  The Receiver has not reviewed documents submitted with each claim form in creating the expanded Exhibit 1 and thus, is not making any conclusions or recommendations to the Court as to the certainty, eligibility, or priority of any claim at this time.  (Docket No. 548 and Exhibit 1 thereto)  During the fourth quarter of 2019, the Court instructed the Receiver to discontinue his review of claims and the underlying documents until October 31, 2019, unless this deadline was extended by the District Judge. (Docket No. 558)

The Receiver also received claims that fall outside the purpose of Exhibit 1 including without limitation the following: (i) claims submitted that identify properties that appear to have been sold or otherwise disposed of prior to the establishment of the Receivership; (ii) claims that have no reference to properties, including without limitation claims submitted against funds or entities (*e.g.,* South Side Development Fund, Chicago Capital Fund, etc.); and (iii) claims where a property address was unspecified or otherwise not possible to determine from the face of the claim form. (Docked No. 548 at 5-6 and Exhibit 1 thereto)

As previously indicated, the Receiver continues to seek to implement a process that is fair, efficient, comprehensive, and provides finality and certainty for all claimants. To that end, the Receiver participated in discussions with the Court and interested parties on October 30, 2019 and November 21, 2019 to consider and decide on the approach to claims processing. Part of those discussions involved ways to provide access to information through a document repository, and efforts to streamline the handling of claims, litigation of priority disputes, and discovery related matters. Such discussions are ongoing, but should ultimately lead to a formal motion where a process is outlined and submitted to the Court for approval which the Receiver believes will occur in the first quarter of 2020. In the meantime, the Receiver will continue with the claims process with direction and approval of the process from the Court.

During the fourth quarter of 2019, the Receiver also worked to ascertain, evaluate, and/or determine (and identify additional information that may be necessary with respect to) *without limitation,* the following:

i.  whether any claims ought to be rejected for failure to comply with the Court-approved procedures and claim form;

ii.  the total amount of each claim, and its identifiable components;

iii.     whether there are common identifiable components of submitted claims that the Receiver contests; and

iv.     the total number of claimants (after all claims form have been submitted and the Receiver has reviewed and accounted for any duplicative submissions).

To that end, the Receiver created **<u>Exhibit 5</u>** attached hereto, which preliminary identifies on a property, fund, or entity basis the following: (i) claimant name, (ii) total amount claimed (where it could be determined from the face of the claim form), and (iii) claimant category. Exhibit 5 does not include claims submitted that identify properties that appear to have been sold or otherwise disposed of prior to the establishment of the Receivership. Claimants and interested parties are encouraged to review Exhibit 5 and promptly notify the Receiver of any errors, omissions, or inaccuracies.

All claimants have the responsibility to ensure that the Receiver at all times has current and up to date contact information for the claimant and the claimant's representatives. Failure to ensure that the Receiver has current and up to date contact information may prevent the Receiver from providing important information relating to the claims process, the claimant's claim, or the Receivership Estate. It also may prevent the claimant from receiving important information and could even prevent the claimant from receiving notice or, ultimately, funds to which the claimant may be entitled. Claimants may provide changes to or updated contact information to the Receiver at equitybuildclaims@rdaplaw.net.

Additionally, the Receiver is evaluating potential tax implications relating to entities in the Receivership Estate, the disposition of assets (including but not limited to the sale of real estate), and the claims process. (Docket No. 477 at 9)

## VII.    CONCLUSION

At this time, the Receiver recommends the continuation of the Receivership for at least the following reasons:

1.      Preservation, maintenance, and operation of the assets in the Receivership Estate including but not limited to the real estate assets;

2.      The continued investigation and analysis of assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests;

3.      The continued efforts of the Receiver to liquidate various assets of the Receivership Estate;

4.      The continued investigation and analysis of the potential claims against the Receivership Estate, including, but not limited to, the claims and records of investors;

5.      The continued investigation, analysis, and recovery of potential fraudulent transfer claims and claims against third parties relating to the Receivership Estate;

6.      The continued analysis and formulation, in consultation with the SEC and the Court, of a just and fair distribution plan for the creditors of the Receivership Estate, and the subsequent notice to investors and potential claimants, and submission of a motion for Court approval, of such plan; and

7.      The carrying out of any other legal and/or appointed duties of the Receiver as identified in the August 17, 2018, Order Appointing Receiver, or as the Court deems necessary.

Dated:  January 30, 2020              Kevin B. Duff, Receiver

By:    /s/     Michael Rachlis

Michael Rachlis (mrachlis@rdaplaw.net)
Nicole Mirjanich (nm@rdaplaw.net)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950; Fax (312) 733-3952

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I provided service of the foregoing Receiver's Sixth Status Report, via

ECF filing, to all counsel of record on January 30, 2020.

I further certify I caused to be served the Defendant Jerome Cohen via e-mail:

Jerome Cohen
1050 8th Avenue N
Naples, FL 34102
jerryc@reagan.com
*Defendant*

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net