**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** <br> **Plaintiff,** <br> **v.** <br> **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** <br> **Defendants.** | ) | **Civil Action No. 18-cv-5587** <br> **Hon. John Z. Lee** <br> **Magistrate Judge Young B. Kim** |

**RECEIVER'S SIXTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen as defined in the Order Appointing Receiver (Docket No. 16) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court entered on August 17, 2018, now respectfully submits this Sixth Interim Application ("Application") and moves this Court for an order approving payment of the fees and expenses of the Receiver, the Receiver's counsel, Rachlis Duff & Peel, LLC ("RDP") and Roetzel & Andress, LPA ("Roetzel"), the Receiver's accountant BrookWeiner, LLC ("BrookWeiner"), and the Receiver's forensic IT consultant, Prometheum from the Receivership Estate operating account. In support of his Application and Motion, the Receiver states as follows:

## I. BACKGROUND

1. On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a civil Complaint against Jerome Cohen, Shaun Cohen, EquityBuild Inc., and EquityBuild Finance LLC (collectively the "Defendants") alleging violations of federal securities laws, along with a motion for entry of an asset freeze, permanent injunction, and other ancillary relief. (Docket Nos. 1 & 3, respectively)

2. In their Complaint against the Defendants, the SEC alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a)q. (Docket No. 1)

3. The Complaint further alleged that the Defendants operated a Ponzi-scheme that raised at least $135 million from more than 900 investors by, among other things, making untrue statements of material fact in connection with the sale of promissory notes allegedly secured by residential real estate primarily located on the south side of Chicago. (*Id.* ¶¶ 1-7, 17, 20-51)

4. On August 28, 2018, the Court entered a judgment against defendants Jerome Cohen and Shaun Cohen which, among other things, enjoined future violations of federal securities laws. (Docket No. 40)

5. In connection with its civil action, the SEC sought and obtained Court approval for the appointment of a Receiver, and on August 17, 2018, this Court entered an Order Appointing Receiver. (Docket No. 16)

6. Under the Order Appointing Receiver, the Receiver was authorized to engage and employ persons and entities in his discretion to assist him in carrying out the duties and responsibilities set forth in the Order. (*Id.*, Order Appointing Receiver, ¶ 54)

7. Accordingly, the Receiver retained Rachlis Duff Adler Peel & Kaplan, LLC ("RDAPK")[1] as special counsel, and, on August 20, 2018, the Court entered an Order approving RDAPK's rates. (Docket No. 19) On August 23, 2018, the Receiver retained BrookWeiner and Whitley Penn to provide accounting services and to perform tax and related work regarding the assets of the Receivership Defendants, and, on August 28, 2018, the Court entered an Order approving BrookWeiner's and Whitley Penn's rates. (Docket No. 39) On August 31, 2018, the Receiver retained Prometheum to access and preserve data within EquityBuild's cloud-based storage systems and provide related IT services, and, on September 6, 2018, the Court entered an order approving Prometheum's rates. (Docket No. 56) The Receiver retained Roetzel & Andress during the fourth quarter of 2019 to serve as his Florida real estate counsel in connection with the Naples property (Docket No. 589), and the Court entered an order approving this retention on January 2, 2020. (Docket No. 611)

8. Pursuant to the Order Appointing Receiver, the Receiver and his retained personnel are entitled to "reasonable compensation and expense reimbursement" from the Receivership Estate, as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. (Docket No. 16, ¶ 69)

---

[1] As of October 1, 2019, the firm changed its name to Rachlis Duff & Peel, LLC ("RDP").

## II. SIXTH INTERIM APPLICATION

9. Pursuant to the Billing Instructions, the Receiver provides the following information regarding the application:

a. The Application covers the period from October 1, 2019 through December 31, 2019;

b. The names and hourly rates of all professionals for RDP, BrookWeiner, and Roetzel & Andress, as well as Prometheum's hourly rates are attached as **Exhibit A**.

c. This is the Receiver's sixth interim application. The first interim application was submitted on June 12, 2019. (Docket No. 411) The second interim application was submitted on August 21, 2019. (Docket No. 487) Objections were filed and a hearing on the first and second fee applications was held on October 8, 2019. (Docket No. 541) For the reasons stated on the record during that hearing, the Court granted the Receiver's first and second interim applications and motions for court approval of fees. (Docket Nos. 546-47) The Receiver's third interim application was submitted on November 1, 2019. (Docket No. 569) The Receiver's fourth interim application was submitted on November 15, 2019. (Docket No. 576) Objections were filed (Docket Nos. 581 & 595) and the Court granted the Receiver's third and fourth interim applications and motions for court approval of fees on January 7, 2020 (Docket No. 614). The fifth interim application was filed on December 20, 2019. (Docket No. 608) Objections were filed (Docket No. 617) and the Court has not yet ruled on the Receiver's fifth interim application.

## III. CASE STATUS

10. Pursuant to the Billing Instructions, the Receiver provides the following information regarding the status of the case, and activities performed specifically for the period covered by this Application.

a. The Receiver's Standardized Fund Accounting Report ("SFAR") for the Fourth Quarter 2019 is attached as **Exhibit B**. The SFAR sets forth the funds received and disbursed from the Receivership estate during this reporting period. As reported in the SFAR, the amount of cash on hand as of December 31, 2019 was $1,303,043.37. The information reflected in the SFAR was based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

b. Upon his appointment, the Receiver began making efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, choses in action, rights and other assets, together with all profits, interest, or other income attributable thereto, which the Receivership Defendants owned, possessed, retained a beneficial interest in, or controlled directly or indirectly. In furtherance of such, the Receiver took, *inter alia*, the following actions:

i. Identification and Preservation of Assets

During the fourth quarter of 2019, one of the Receiver's primary focuses was and continues to be the preservation, operation, maintenance, and sale of the real estate properties within the Receivership Estate. As previously stated, during the fourth quarter of 2019, the Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, continued

working to improve understanding and planning for cash flow needs for underperforming properties, and controlling expenditures where possible. To that end, the Receiver and his counsel communicated regularly with property managers relating to necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions. The Receiver and his retained professionals also reviewed monthly financial reporting, analyzed the cash position of the Estate, and communicated regularly with the real estate broker regarding prioritization of expenses and repairs on the properties. As stated in the third and fourth quarter status reports, the Receiver made significant payments for 2018 property taxes during the fourth quarter of 2019. (*See* Docket No. 567 at 3 and Docket No. 624 at 3-4) The Receiver also worked to obtain property insurance for the Naples property. (*See* Docket No. 624 at 4)

During the fourth quarter of 2019, the Receiver worked to ensure that the two existing property management companies remained in place and that all health, life, and safety issues at the properties were addressed expeditiously. He worked closely with the property managers to develop improved procedures to monitor repairs, expenses, and property finances designed to protect the properties and their financial position. He also worked with the property managers to develop and implement new financial reporting to support the Receiver in fulfilling his obligations, including with respect to expenses, collections, use of funds, and financial reporting. Additionally, the property managers assisted the Receiver in the defense of a thicket of administrative and housing court actions alleging building code violations of widely varying levels of severity filed by the City of Chicago. To that end, during the fourth quarter 2019, the Receiver and his counsel continued to work closely with the City’s corporation counsel for each department (circuit court, buildings, and streets and sanitation) to address all open building code violations, to address life

and safety issues, and to preserve the respective properties. The Receiver's counsel appeared on City of Chicago related matters on seven occasions during the fourth quarter 2019. As of December 31, 2019, there were approximately 24 known open code violations involving City of Chicago matters.

During this time period, there were ten known City of Chicago municipal housing court matters. Issues raised in these matters included but are not limited to:

- As stated previously (Docket No. 467), the demolition and clean-up of a California style porch were complete in June 2019 for the property at 7760 S. Coles. During the fourth quarter of 2019, the Receiver worked with the property manager to vacate, secure, and winterize the building.

- Cited violations for the property at 7110 S. Cornell relate to masonry and tuck-point work. The Receiver authorized installation of scaffolding to protect the sidewalk and pedestrians, which remains in place. The Receiver also authorized porch repairs that were completed during the fourth quarter of 2019. This property is currently under contract.

Additionally, during the fourth quarter of 2019, the Receiver achieved dismissal of six administrative proceedings filed by the City of Chicago Buildings Department and one administrative proceeding filed by the Department of Streets and Sanitation.

During the fourth quarter of 2019, fires occurred at the properties at 638 N. Avers, 6949-59 S. Merrill, and 8214 S. Ingleside. The Receiver, his retained professionals, and the property managers all worked expeditiously to, without limitation, put measures in place to secure the properties and prevent further damage following the fires, communicate with the insurance broker regarding the fires, and communicate with potential purchasers on 638 N. Avers and 6949-59 S. Merrill regarding the fires.

ii. <u>Property Sales</u>

The Receiver listed the properties below for sale during the second quarter of 2019 (Docket No. 467 at 8-10) :

- 638-40 N. Avers Avenue, Chicago, IL 60624
- 4520-26 S. Drexel Blvd, Chicago, IL 60653
- 6751-57 S Merrill Avenue, Chicago, IL 60649
- 6949-59 S. Merrill Avenue, Chicago, IL 60649
- 7109-19 S Calumet Avenue, Chicago, IL 60619
- 7110-16 S Cornell Avenue, Chicago, IL 60649
- 7450 S Luella Avenue, Chicago, IL 60649
- 7546 S Saginaw Avenue, Chicago, IL 60649
- 7600 S Kingston Avenue, Chicago, IL 60649
- 7625-33 S East End Avenue, Chicago, IL 60649
- 7635-43 S East End Avenue, Chicago, IL 60649
- 7656 S Kingston Avenue, Chicago, IL 60649
- 7748-50 S Essex Avenue, Chicago, IL 60649
- 7749 S Yates Boulevard, Chicago, IL 60649
- 7750-58 S Muskegon Avenue, Chicago, IL 60649
- 8201 S Kingston Avenue, Chicago, IL 60617
- 8326-58 S Ellis Avenue, Chicago, IL 60619

As stated previously (Docket No. 467 at 13-15), institutional lenders filed numerous motions that objected to virtually all activities of the Receivership, including but not limited to the process for the sale of properties above and credit bid procedures associated with these sales. These motions led to a significant number of hearings and appearances before the Court, substantial cost to the Receivership Estate, and have significantly slowed the process for the sale of the properties. During the fourth quarter of 2019, this Court overruled the numerous pending objections filed by the lenders to the Receiver's sales process and adopted Magistrate Judge Kim's rulings in full. (Docket No. 540) Accordingly, during the fourth quarter of 2019, the Receiver worked to get all properties above under contract; each of the properties at 638-40 N. Avers and 7109-11 S. Calumet is under contract pursuant to a credit bid, subject to negotiation of the form of letter of credit.

During the fourth quarter of 2019, the Court granted the Receiver's motions to sell the following properties free and clear of all mortgages, liens, claims, and encumbrances (Docket Nos. 524, 545, 583, & 601):

- 2909-19 E. 78 Street, Chicago, IL 60649
- 701 S. 5th Avenue / 414 Walnut, Maywood, IL 60153
- 3030 E. 79th Street, Chicago, IL 60649
- 7301-09 S. Stewart Avenue, Chicago, IL 60621
- 5955 S. Sacramento Avenue, Chicago, IL 60629
- 6001 S. Sacramento Avenue, Chicago, IL 60629
- 7834-44 S. Ellis Avenue, Chicago, IL 60649
- 7026-42 S. Cornell Avenue, Chicago, IL 60649
- 7625-33 S East End Avenue, Chicago, IL 60649
- 7635-43 S East End Avenue, Chicago, IL 60649
- 7750-58 S Muskegon Avenue, Chicago, IL 60649
- 7748-50 S Essex Avenue, Chicago, IL 60649

One creditor, LMJ Sales, Inc., filed an objection to the sale of 7748-50 S. Essex (Docket No. 596) to which the Receiver responded to (Docket No. 600). The Court overruled this objection and granted the Receiver's motion. (Docket No. 601)

In connection with these sales, the Receiver and his retained professionals worked to prepare for these closings, which included but was not limited to conducting title examinations, obtaining and making due diligence documents available to potential purchasers, communicating with potential purchasers and the title company, and preparing closing documents.

With the exception of 701 S. 5th Avenue, all of these properties closed in the fourth quarter of 2019. In particular, the Receiver closed on the properties at 7301 S. Stewart Avenue and 7834 S. Ellis Avenue on November 4, 2019. The Receiver closed on the properties at 5955 S. Sacramento Avenue and 6001 S. Sacramento Avenue on November 5, 2019. The Receiver closed on the property at 7026 S. Cornell on November 6, 2019. The Receiver closed on the property at 3030 E. 79th Street on November 12, 2019. And the Receiver closed on the property at 2909 E. 78th Street on November 14, 2019. Consistent with the Court's order approving their sales, the Receiver deposited proceeds from the sale of the properties at 2909 E. 78th Street, 3030 E. 79th Street, and 7301 S. Stewart Avenue in the Receiver's operating account, which have been used for operations of the Receivership, and remain available for operating expenses associated with the

Receivership. (Docket No. 571) In accordance with the Court's order, the Receiver segregated proceeds from the sale of the properties at 5955 S. Sacramento Avenue, 6001 S. Sacramento Avenue, 7834-44 S. Ellis Avenue, and 7026-42 S. Cornell Avenue in separate subaccounts on a property-by-property basis. (*Id.*) The Receiver closed on the properties at 7750-58 S Muskegon and 7748-50 S Essex on December 18, 2019. The Receiver closed on the two properties on S East End on December 20, 2019. The Receiver segregated proceeds from the sale of the properties 7625-33 S East End Avenue (in the amount of $1,156,782.51), 7635-43 S East End Avenue (in the amount of $1,084,045.74), 7750-58 S Muskegon Avenue (in the amount of $582,979.54), and 7748-50 S Essex Avenue (in the amount of $1,217,423.87) in separate subaccounts on a property-by-property basis.

During the fourth quarter of 2019, the Receiver also moved for Court approval to sell the property at 8047-55 S. Manistee Avenue free and clear of all mortgages, liens, claims, and encumbrances. (Docket No. 579) One creditor filed an objection asserting it has a mortgage interest in the property and consequently, asserted sales proceeds should be segregated in a subaccount. (Docket No. 594) Given the need to close the sale of this property as soon as practicable, the Receiver agreed to deposit the proceeds from the sale of 8047-55 South Manistee in a separate subaccount to moot the objection and allow the sale to be consummated. (Docket No. 615)[2]

In the fourth quarter of 2019, the Court granted the Receiver's motion appointing three appraisers and allowing the Receiver to sell the property at 1102 Bingham Street, Houston, TX 77007 through a private sale. (Docket No. 544) Accordingly, the Receiver engaged a real estate broker and listed this property for sale during the fourth quarter of 2019.

[2] The property at 8047-55 S. Manistee closed on February 5, 2020.

Also during the fourth quarter of 2019, the Receiver filed a motion to sell the property at 1050 8th Avenue N, Naples, Florida (Docket No. 589) to which Jerome Cohen objected to (Docket No. 593). This motion was granted in the first quarter of 2020 and the Naples property has since been listed for sale. (Docket No. 612) The Receiver's Florida based real estate counsel, Roetzel & Andress, worked with the Receiver to obtain and analyze necessary title documents and by communicating with the title company regarding insurability of title and language needed in Court Order granting motion to sell property.

iii. Financial Reporting and Rents Restoration

During the fourth quarter of 2019, the Receiver continued to provide institutional lenders with monthly accounting reports relating to rents from each property as required by the February 13, 2019 Order. (Docket No. 223) To that end, as of the filing of the Receiver's Sixth Status Report (Docket No. 624), monthly reports with respect to 89 properties have been sent to lenders' counsel for the periods beginning August 1, 2018 and ending monthly from March 31, 2019 through November 30, 2019. Reports for each property include, for each month beginning in August 2018: (a) information about net operating income based upon reporting from the respective property managers, (b) information about expenditures made by the Receiver for the benefit of the property (primarily for insurance, real estate taxes, and funds sent to the property manager to cover expenses not covered by net operating income from the property), and (c) amounts from net rental income distributed from the property to the Receiver or to other properties, amounts contributed to the property by the Receivership and by other properties, and a calculation of the amount (if any) of rentals remaining to be restored to the property under the February 13, 2019 Order. Each report is sent with a detailed explanation of the contents of the related report and the calculation of rentals to be restored. A summary of the information contained in these reports is attached as

an exhibit to a motion filed by the Receiver regarding the use of sales proceeds for rent restoration. (Docket No. 460) Beginning with the period ending August 31, 2019 (for which reports were sent on October 25, 2019), for properties where no rent restoration is due, the final line item on the report reflects an amount that has been expended for the benefit of the property from sources other than operating income on that property.

During the fourth quarter of 2019, the Receiver continued to analyze sources of funds available for restoration of rents to affected properties. The Receiver had reduced the total amount to be restored from $767,192.75 as of February 28, 2019 to approximately $404,000.00 as of December 31, 2019.

Also during the fourth quarter of 2019, the Receiver and his retained professionals maintained regular contact with the institutional lenders to share material information relating to the properties, including information relating to marketing sales of certain properties, as well as to respond to myriad inquiries including questions regarding financial reporting, property access for inspections, status of city violations, evidence of insurance, and other matters relating to the management and financial and physical condition of the various properties. As with the investors, the Receiver has attempted to streamline and reduce communications in an effort to strike a reasonable and appropriate balance between cost effectiveness and responsiveness.

iv. Other Receivership Assets

During the fourth quarter 2019, the Receiver and his retained professionals continued investigating previously referenced non-Illinois properties as Receivership Assets that have or may have been purchased with EquityBuild investor funds. (*See, e.g.*, Docket No. 624 at 11)

v. Open Litigation

During the fourth quarter 2019, the Receiver – working with his counsel and counsel for the property manager, WPD – negotiated a settlement in the matter captioned *Hudson v. WPD Management, et al.,* Case No. 19 M1 40154, Circuit Court of Cook County, First Municipal Division.[3]

vi. Notice of Appointment of Receiver

During the fourth quarter of 2019, the Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver continues to deliver notices to individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

vii. Investor Communications

As previously indicated, the Receiver is continuously updating his list of known investors in the Receivership Defendants' fraudulent offerings. To ease the burden and provide basic information, therefore, the Receiver established a web page (*http://rdaplaw.net/receivership-for-equitybuild*) for investors and other interested parties to obtain information and certain court filings related to the Receivership estate, which remains in place today and continues to be best and most cost-effective mean of providing information regarding the status of this action.

[3] The matter involved the alleged failure to return a security deposit at one of the properties in the Receivership Estate, 7114 S. Cornell Avenue. The matter was resolved for a nominal amount of $700 in exchange for a general release of the Receivership Estate of EquityBuild and the property manager.

Also, during the fourth quarter of 2019, the Receiver received and responded to hundreds of emails and voicemails from investors and others. He and his staff responded to these communications in as timely and practicable a way as possible.

viii. Control of Receivership Property and Records

During the fourth quarter 2019, the Receiver continued efforts to locate and preserve all EquityBuild property and records. The Receiver maintained three platforms of records and data during the fourth quarter of 2019.

ix. Securing Bank and Investment Accounts

During the fourth quarter 2019, the Receiver notified, contacted, and conferred with the banks and other financial institutions that the Receiver was able to identify as having custody or control of any funds, accounts, or other assets held by, in the name of, or for the benefit of, directly or indirectly, any and all of the Receivership Defendants.

x. Factual Investigation

During the fourth quarter 2019, the Receiver and his retained professionals continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, plus a limited number of hard copy records); (iv) available underlying transaction documents received to date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

xi. Tax Issues

BrookWeiner was retained to perform accounting, tax, and related work regarding assets of the Receivership Defendants such as the accounting for ongoing business operations of the

Receivership Defendants. During the fourth quarter of 2019, BrookWeiner compiled monthly property statements and property spreadsheets and assisted with cash flow analysis matters.

xii. Accounts Established by Receiver for the Benefit of the Receivership Estate

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property. The interest-bearing checking account is used by the Receiver to collect liquid assets of the estate and to pay the portfolio-related and administrative expenses. For each property encumbered by secured debt that has sold, the Receiver also subsequently established an interest-bearing savings account for the purpose of depositing and holding funds until such time as the Court orders otherwise and for ultimate distribution, following a claims process and upon Court approval, to the creditors of the Estate, including the defrauded investors. (Docket Nos. 230, 311, 344 & 346)

xiii. Creditors and Claims Against the Receivership Estate

As previously reported, more than 2,000 claims were submitted through the claims portal or received by either mail or email on or before July 1, 2019. (Docket No. 468 at 4) During the fourth quarter of 2019, this Court ordered that all claims and amended claims be submitted to the Receiver no later than December 31, 2019. The Receiver received approximately 28 amended claims and approximately 6 new claim submissions before the December 31, 2019 Bar Date.

During the third and fourth quarters of 2019, the Receiver and his retained professionals began analyzing and working with the more than 2,000 claims submissions in connection with filing status reports on claims on August 1, 2019 (Docket No. 468), August 15, 2019 (Docket No. 477), and October 15, 2019 (Docket No. 548) all of which were posted to the Receiver's webpage. In connection with the third status report filed on October 15, 2019 (Docket No. 548), the Receiver and his retained professionals reviewed each claim form and included information for each

property such as the names of the entities and individuals submitting claims and preliminary information as to the amount of each claim. (Docket No. 548) The Receiver created Exhibit 1 which preliminarily identified on a property by property basis the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loaned or invested in the particular property (where it could be determined from the face of the claim form).

The Receiver participated in discussions with the Court and interested parties on October 30, 2019 and November 21, 2019 to consider and decide on the approach to claims processing. Part of those discussions involved ways to provide access to information through a document repository, and efforts to streamline the handling of claims, litigation of priority disputes, and discovery related matters.

During the fourth quarter of 2019, the Receiver also worked to ascertain, evaluate, and/or determine (and identify additional information that may be necessary with respect to) *without limitation,* the following:

- whether any claims ought to be rejected for failure to comply with the Court-approved procedures and claim form;
- the total amount of each claim, and its identifiable components;
- whether there are common identifiable components of submitted claims that the Receiver contests; and
- the total number of claimants (after all claims form have been submitted and the Receiver has reviewed and accounted for any duplicative submissions).

To that end, the Receiver created Exhibit 5 to the Sixth Status Report (Docket No. 624), which preliminary identified on a property, fund, or entity basis the following: (i) claimant name, (ii) total amount claimed (where it could be determined from the face of the claim form), and (iii)

claimant category. Exhibit 5 did not include claims submitted that identify properties that appear to have been sold or otherwise disposed of prior to the establishment of the Receivership.

During the third and fourth quarter of 2019, Axos Fiduciary Services generated spreadsheets with claims data and provided these spreadsheets to the Receiver, and also assisted in uploading claims submissions received in hard copy to the claims database.

Additionally, during the fourth quarter of 2019, the Receiver continued to evaluate potential tax implications relating to entities in the Receivership Estate, the disposition of assets (including but not limited to the sale of real estate), and the claims process. (Docket No. 477 at 9)

c. All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit C.** The Master Asset List identifies 53 checking accounts in the names of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $105,870.94. Of these funds, $30,820.87 came from an account in the name of 1632 Shirley LLC, which relates to the Mississippi properties discussed earlier. The amount transferred to the Receiver also reflects $75,050.00 that EquityBuild received from an investor; the funds were wired prior to the appointment of the Receiver and cleared after the appointment. (*See* Docket No. 258, at 21)

d. The Master Asset List does not include assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests. The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate, including, but not limited to, charitable donations, loans, gifts, settlements for which payment has not yet been received, and other property given to family members, former employees, and others.

e. *See also* Receiver's Sixth Status Report (Fourth Quarter 2019) for additional information. (Docket No. 624)

## IV. BILLING ADDRESSED IN THIS APPLICATION

11. Pursuant to the Billing Instructions, the Receiver provides the following information regarding current billing:

a. Total Compensation and Expenses Requested.

i. In connection with his duties, the Receiver respectfully requests compensation for services rendered, totaling $61,698.00 for the period of this Application. A copy of the Receiver's invoices for October – December are attached as **Exhibit D.**

ii. In connection with the legal services provided to the Receiver by RDP, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $245,649.01 for the period of this Application. A copy of RDP's invoices for October – December are attached as **Exhibit E.** Additionally, Receiver's counsel Andrew Porter received $31,767.00 as agency fees for the title examination work performed in connection with the closing of properties during the fourth quarter of 2019. The Receiver will reduce the amount due to RDP for the fourth quarter of 2019 by this amount.

iii. In connection with the accounting provided to the Receiver by BrookWeiner, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $18,246.40 for

the period of this Application. A copy of BrookWeiner's invoice is attached as **Exhibit F.**

iv. In connection with the accounting provided to the Receiver by Prometheum, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $550.00 for the period of this Application. A copy of Prometheum's invoice is attached as **Exhibit G.**

v. In connection with the legal services provided to the Receiver by Roetzel & Andress the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $3,415.00 for the period of this Application. A copy of Roetzel & Andress' invoices for October – December are attached as **Exhibit H.** Subject to Court approval, Roetzel & Andress can be paid with proceeds from the sale of the closing on the Naples property.

b. Source of Funds for Requested Compensation and Expenses. The Receiver requests that the above compensation and expenses be paid from the Receiver's operating account to the extent there are sufficient funds now or in the future. The amount of cash on hand in the Receiver's Account as of December 31, 2019 was $1,303,043.37. As of February 13, 2019, the amount of cash on hand in the Receiver's operating account was $557,146.85. These figures do not include any funds from other sources and any amounts that the Receiver may recover through claims he is evaluating, investigating, and expecting to bring. This figure also does not include anticipated net proceeds from the sale of the Naples Property, which the Receiver has listed for $999,000 and for which there is a

mortgage of approximately $490,000. In addition, the Receiver anticipates that, following completion of rent restoration required under the Court's February 13, 2019 Order, additional funds of at least $2,130,111 (corresponding to amounts paid from the Receiver's account for the benefit of other properties through November 30, 2019) will be restored to the Receiver's account after the properties that have received the benefit of funds from the Receiver's account have been sold. Nor does the amount of cash on hand account for equity in properties that have been or are expected to be sold. As such, while there are not sufficient funds in the operating account at this time to pay for the fees and expenses that are the subject of this application, it is anticipated that there will be sources and funds available. Accordingly, the Receiver is requesting that the Court approve the reasonableness of these fees and expenses set forth in this application and allow the Receiver to pay these fees and expenses out of funds in the Receiver's account once sufficient funds become available.

c. Sixth Application for Payment of Professional Fees and Expenses. This is the Receiver's sixth application.

d. Summary of Activity. A "Summary of Activity," providing the total hours billed and the amount of billing for each person who billed time during the Application period (October 1, 2019 through December 31, 2019) can be found at the end of the Receiver's invoice (Exhibit D) and RDP's invoice (Exhibit E) and on the first page of BrookWeiner's invoice (Exhibit F).

## V. CONCLUSION

WHEREFORE, the Receiver respectfully requests that the Court approve the Receiver's Sixth Interim Fee Application and enter an Order as follows:

a. finding the fees and expenses of the Receiver and Receiver's retained professionals, Rachlis Duff & Peel LLC, Roetzel & Andress, BrookWeiner, LLC, and Prometheum, as described in Exhibits D-H respectively, to be reasonable and necessary to the Receivership;

b. approving the Receiver's payment of such fees and expenses to the Receiver and to Receiver's retained professionals from the Receivership Estate as described and recommended herein; and

c. granting the Receiver all other relief which this Court deems just and proper.

Dated: February 14, 2020

Kevin B. Duff, Receiver

By: /s/ Michael Rachlis

Michael Rachlis
Nicole Mirjanich
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950; Fax (312) 733-3952
mrachlis@rdaplaw.net
nm@rdaplaw.net

**RECEIVER'S CERTIFICATION**

1. Pursuant to the Billing Instructions, the Receiver certifies as follows regarding the Receiver's Sixth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals:

a. The Receiver has read the foregoing Application and Motion.

b. To the best of the Receiver's knowledge, information and belief formed after reasonable inquiry, the Application and Motion and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in this Certification, Application, and Motion);

c. All fees contained in the Application and Motion are based on the rates listed in the Fee Schedule attached hereto as Exhibit A, and such fees are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

d. The Application and Motion does not include in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment, or capital outlay (except to the extent any such amortization is included within the permitted allowable amounts set forth herein);

e. In seeking reimbursement for a service which the Receiver or the Receiver's Retained Professionals justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), reimbursement is requested only for the amount billed to the Receiver or Receiver's Retained Professionals by the third-party vendor and paid by the Receiver or Receiver's Retained Professionals to such vendor. If such services were performed by the Receiver or Receiver's Retained Professionals, the Receiver certifies that no profit has been made on such reimbursable service.

2. On February 11, 2020, the Receiver provided to Mr. Benjamin Hanauer, of the SEC, a complete draft copy of this Application and Motion, together with all exhibits and relevant billing statements in a format specified by the SEC.

/s/ Kevin B. Duff

Kevin B. Duff, Receiver
EquityBuild, Inc., et al.
c/o Rachlis Duff & Peel, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605
(312) 733-3390 - kduff@rdaplaw.net