UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN<br><br>Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

**OBJECTIONS OF CERTAIN MORTGAGEES TO RECEIVER'S SIXTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The following mortgagees (collectively, "Mortgagees", and each individually a "Mortgagee") respectfully submit this Objection ("Objection") to the Receiver's Sixth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals ("Sixth Fee Application") [Dkt. 626]: (1) Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; (2) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; (3) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; (4) U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; (5) Wilmington Trust, National Association, as Trustee for the

Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; (6) Federal National Mortgage Association ("Fannie Mae"); (7) Sabal TL1, LLC; (8) BMO Harris Bank, N.A.; (9) BC57, LLC; (10) Liberty EBCP, LLC ("Liberty"); (11) Federal Home Loan Mortgage Corporation ("Freddie Mac"); and (12) UBS AG ("UBS").  In support of the Objections, the Mortgagees state as follows:

## INTRODUCTION

On August 15, 2018, the U.S. Securities and Exchange Commission filed a securities fraud complaint against EquityBuild, Inc., Equitybuild Finance, LLC, Jerome Cohen, and Shaun Cohen (collectively, the "Receivership Defendants").  On August 17, 2018, the Court appointed Kevin B. Duff as the equity receiver (the "Receiver") over the estates of the Receivership Defendants (the "Receivership Estate").

The Sixth Fee Application highlights the solvency issues of the Receivership Estate and brings to a head the Receiver's undeniable pattern of generating cash proceeds from the sale of unencumbered properties solely to pay his and his professionals' fees. The Receiver and his professionals continue to drain the estate's funds at the expense of all creditors and claimants.  The Receiver's actions are entirely unsustainable and will result in a grave detriment to all creditors and claimants, including the Equitybuild investors.

For the avoidance of doubt, the Mortgagees recognize the Receiver and his professionals are entitled to fair, reasonable, and moderate compensation.  What the Mortgagees are objecting to is the astronomically high price tag in consideration of the likelihood of recovery by unsecured investors and the progress of the case given that the Receiver was appointed in August 2018.  In approximately 15.5 months, the Receiver and his professionals have racked up **$2,886,710.88 in fees and costs.**

2

Despite this astronomically high price tag and the passage of almost a year and a half, the Receiver has made little to no progress on developing an orderly claims process and concrete distribution plan. The approval of the Receiver's Sixth Fee Application should be put on hold until the Receiver provides the Court and all parties in interest with a concrete plan of distribution and this Court has had an opportunity to thoroughly review the Receiver's Sixth Fee Application. Moreover, at a minimum, this Court should hold back 20% of the requested fees and expenses given the apparent insolvency of the estate. Such a hold back is consistent with the Order Appointing Receiver and S.E.C. receivership case law. (Dkt. No. 16, ¶ 72.)

## ARGUMENT

The Court should withhold interim approval of the Sixth Fee Application until the Receiver files with the Court a proposed plan of distribution for the Receivership Estate and this Court has had an opportunity to thoroughly review Receiver's Sixth Fee Application. As courts in this circuit have explained, interim fee awards are, by their nature, "discretionary and subject to reexamination and adjustment during the course of the case." *See, e.g., In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995); *In re Eckert*, 414 B.R. 404, 409 (Bankr. N.D. Ill. 2009). Thus, just because prior fee applications have been approved, does not mean all future fee applications must also be approved. A careful examination of fees is thus warranted in every case, but none more so than in one that is teetering on administrative insolvency. As the United States Court of Appeals for the Seventh Circuit demonstrated in *Taxman*, professional fees can become subject to disgorgement, if the efforts required (and the fees associated with those efforts) outweigh the potential for recovery to the estate. 49 F.3d at 316.

3

1. **<u>The Receiver's Fees and Costs are Not Moderate or Reasonable and are Contributing to the Insolvency of the Estate.</u>**

Courts reviewing fee applications for receivers and their professionals apply the "rule of moderation." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 645 (S.D.N.Y. 2008). Receivers and their professionals are only entitled to moderate compensation and ruling courts should "avoid even the appearance of a windfall." *Id*. (internal citation omitted). Moreover, the rule of moderation is especially important when hundreds of victims have been defrauded and will only recover a fraction of their losses. *Id*.

Similarly, receivers and their professionals are only entitled to fair and *reasonable* fees and costs. In determining whether fees and costs are reasonable courts should consider "economy of administration, the burden that the estate may safely be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate." *In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970).

The fees requested by the Receiver to date are anything but moderate and reasonable. The Sixth Fee Application requests a total of $361,325.41 in fees and expenses for 92 days. The Receiver has requested approval of a total of $2,886,710.88 in fees. This Court has approved $2,040,290.55 in fees and costs (representing all fees and costs requested in the first, second, third, and fourth interim fee applications). The Receiver has paid $1,490,719.61[1] of the approved fees, leaving a balance of $549,570.94. (*See* Sixth Fee Application, Ex, B.) This balance does not include the $846,420.33 in amounts claimed in the Receiver's fifth and sixth interim fee applications. As of February 13, 2020, the Receiver had $557,146.85 cash on hand. (*See* Sixth Fee Application, p. 19.) Thus, **the total amount of the outstanding balance of the *approved* fees**

---

[1] The Mortgagees are unable to verify the accuracy of this amount because the Receiver's Sixth Status Report only reflects payment of fees and costs through December 31, 2019 for a total of $923,652.86.

**and the amounts claimed in the Receiver's fifth and sixth interim fee applications is more than double the amount of cash on hand**. In fact, the Receiver admits he does not have enough cash on hand to cover his and his professionals' fees. Put simply, there is not enough cash on hand to pay the Receiver and his professionals, let alone provide any sort of compensation to the defrauded investors.

| Fee Application | Fees & Costs Requested | Fees & Costs Approved | Holdback Amount |
|---|---|---|---|
| First Interim Fee Application (08/17/18 – 09/30/18) | $413,298.44 | $413,298.44 | $0.00 |
| Second Interim Fee Application (10/1/18 – 12/31/18) | $553,968.43 | $553,968.43 | $0.00 |
| Third Interim Fee Application (01/1/19 – 03/31/19) | $547,767.04 | $547,767.04 | $0.00 |
| Fourth Interim Fee Application (04/1/19 – 06/30/19) | $525,256.64 | $525,256.64 | $0.00 |
| Fifth Interim Fee Application (07/1/19 – 09/30/19) | $485,094.92 | - | $0.00 |
| Sixth Interim Fee Application | $361,325.41 | - | $0.00 |

4852-0148-2166.1

|  |  |  |  |
|---|---|---|---|
| (10/1/19-12/31/19) |  |  |  |
| **TOTAL** | $2,886,710.88 | $2,040,290.55 | $0.00 |

This amount also does not take into account the extremely high operating costs of the estate or payment of unpaid property taxes.

The Receiver continues to point to the portfolio of real property he holds as evidence of potential recoveries and as justification to continue to pay his own fees and expenses. (*See* Sixth Fee Application, ¶11(b). A review of each and every single fee application presents a clear pattern. The estate lacks sufficient funds to pay the Receiver's fees at the time of application so the Receiver points to potential future recoveries as justification for his fees. Then, at a later date, when there is additional cash on hand, he pays himself and his professionals resulting in the dwindling of the cash on hand to a fraction of the beginning balance.

As indicated above, this leftover cash will be consumed by property taxes and other business asset expenses. In essence, the Receiver is generating some cash from the sale of properties to accumulate a balance in his operating accounting and then cashing out the operating account to pay his fees and expenses leaving little to no funds for unsecured creditors. Eventually, the Receiver will run out of unencumbered properties to sell and the cash flow to the estate will effectively stop. The sale of the remaining properties will generate little or no proceeds for the estate, resulting in little or no compensation for unsecured investors. This pattern is neither reasonable, nor sustainable.

The Receiver has, perhaps, already run out of unencumbered properties to cash out. The most recent Receiver's Consolidated Sixth Motion for Court Approval of the Process for Public Sale of Real Estate by Sealed Bid, Fifth Motion for Approval of the Sale of Certain Real Estate

and for the Avoidance of Certain Mortgages, Liens, Claims, and Encumbrances, and Motion to Amend the August 17, 2018 Order Appointing Receiver ("Consolidated Motion") [Dkt. 618] seeks approval to sell 36 properties. Each and every one of these 36 properties is encumbered by a mortgage. Consistent with prior Court rulings, the Receiver must escrow the sale proceeds from each of these 36 properties and is prohibited from using these proceeds until further order of the Court. Given the cash shortage in the estate, it would be expected that at least some of the properties in the Consolidated Motion would be "unencumbered" properties.

As an additional example, the Receivership Estate had 100 properties on December 31, 2019. (*See* Sixth Status Report, p. 2 [Dkt. 624].) At least 89 of these properties are encumbered by mortgages in favor of institutional lenders. (*See* Sixth Status Report, p. 10.) Even assuming the remaining 11 properties are unencumbered, which the Mortgagees have no way of confirming because of the Receiver's lack of transparency, the Receivership Estate's cash flow will come to an abrupt halt in the near future when the remaining unencumbered properties are sold.

Moreover, even a cursory review of the invoices for the Receiver and his attorneys evidence duplicative billing between the Receiver and his counsel, such as for multiple interoffice meetings, multiple interoffice correspondences, and multiple telephone conferences amongst the Receiver and his counsel. Courts routinely reduce fee applications when the invoices contain billing for attending the same conferences and meetings or for internal communications are the result of inflationary billing practices. *S.E.C. v. Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2016 WL 6078324, at *3 (C.D. Cal. June 29, 2016). "[W]hen faced with a massive fee application[,] the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id*. (internal citation omitted). The

4852-0148-2166.1

Mortgagees request the Court reduce the Receiver and his attorneys' fees to account for the duplicative billing as such practices are neither reasonable nor beneficial to the estate.

Put simply, the six interim fee applications evidence a pattern that is neither beneficial to the estate nor a burden that the estate can safely bear. Eventually, the estate's cash flow will run out and there will be no money to compensate the unsecured creditors. The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, Case No. 07 C 3598, 2010 WL 960362, at *6 (March 15, 2010) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). Based on six fee applications, it is clear that the estate is not deriving enough money to pay administrative expense claims *and* some dividend to unsecured creditors. Thus, this Court should consider if the purposes for which this receivership has been filed can still be achieved. *S.E.C. v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1275 (D. Utah 2009) ("[A] receivership must be monitored to ensure it is still serving the function for which it was created.").

2. **The Sixth Fee Application Should be Subject to a 20% Holdback**

The purpose of holdback provisions are to "moderate potentially excessive interim allowances and to incentivize timely resolution." *S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225180, at *2 (S.D. Fla. Mar. 31, 2016). Courts will frequently "withhold a portion of the requested interim fees because until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought." *S.E.C. v. Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *2 (N.D. Cal. May 15, 2013). Moreover, courts will withhold a portion of interim fee applications because "it is simply too early to tell *to the extent to which* [the receiver's] efforts will benefit the

8

receivership estate." *Byers*, 590 F. Supp. 2d at 648. By withholding a portion of the fees, the court helps to "ensur[e] that the Receiver's efforts benefit the investors and the receivership estate is this Court's primary concern when awarding interim compensation…." *Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *3. Moreover, the Court is entitled to both reduce fees by an across-the-board percentage and withhold a holdback percentage. *See Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2016 WL 6078324, at *3 (reducing the interim fees by an across-the-board reduction of 3.6% and withholding 30% of the total interim fees).

The apparent insolvency of the estate justifies the 20% holdback of fees. As illustrated above, if the Receiver continues on this path, there is a high likelihood the investors will receive a fraction of their losses (if any recovery) while the Receiver and his professionals reap the benefit of full payment of their fees. It is simply too early in the progress of this case to know exactly to what extent the Receiver's efforts will benefit the entire receivership estate. Surely, if the Receiver is confident in his approach and handling of this matter, he should be willing to withhold a portion of the fees until the end of the case to ensure the all interested parties properly benefit. Tellingly, this proposal was made in response to the fifth fee application, yet, the Sixth Fee Application contains no request to withhold any portion of the fees.

As this Court has previously noted, the number of claims and the size of this receivership estate present uniquely challenging issues to the Receiver and his professionals. However, these pressing and unanswered questions regarding the estate's solvency, coupled with the staggering amount of fees mandate a hold on any further disbursements until some plan of action is proposed.

Specifically, before any further fees are approved by this Court, the Receiver should be required to set forth a projection of unencumbered receipts yet to be collected, from which the unpaid fees of the Receivership Estate and the claims of unsecured creditors are to be paid.

9

4852-0148-2166.1

Without this information, the Court is not able to determine the reasonableness of the overall fees being sought in this case, in relation to the expected distribution to unsecured creditors.

Accordingly, the Court should withhold approval of the Sixth Fee Application until such time as the Receiver has filed with the Court a plan for distribution for the receivership estate and until the Court has the opportunity to thoroughly review the Sixth Fee Application. Alternatively, the Court should reduce the Receiver's and his professionals' fees to a reasonable and moderate amount and withhold 20% pursuant to this Court's order appointing the Receiver.

Dated: March 3, 2020                           Respectfully submitted,

/s/ Mark Landman
Mark Landman (mlandman@lcbf.com)
Landman Corsi Ballaine & Ford P.C.
120 Broadway, 27th Floor
New York, NY 10271
Ph: (212) 238-4800
Fax: (212) 238-4848
*Counsel for Freddie Mac*

/s/ James P. Sullivan
James P. Sullivan (jsulliva@chapman.com)
Chapman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Ph: (312)845-3445
Fax: (312)516-1445
*Counsel for BMO Harris Bank N.A.*

/s/ David Hart
David Hart
(dhart@maddinhauser.com)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Highway
Suite 200-Essex Centre
Southfield MI 48034
*Counsel for BC57, LLC*

/s/ James M. Crowley
James M. Crowley

/s/ Jill L. Nicholson
Jill L. Nicholson (jnicholson@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 N. Clark St., Ste. 3000
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 644-7528
*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo*

| | |
|---|---|
| (jcrowley@plunkettcooney.com)<br>Plunkett Cooney, PC<br>221 N. LaSalle Street, Ste. 1550<br>Chicago, IL 60601<br>Ph: (312) 970-3410<br>Fax: (248) 901-4040<br>*Counsel for UBS AG* | *Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Fannie Mae; and Sabal TL1, LLC* |

 /s/ Jay Welford
Jay Welford (jwelford@jaffelaw.com)
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
Ph: (248)351-3000
*Counsel for Liberty EBCP, LLC*

11

4852-0148-2166.1

## CERTIFICATE OF SERVICE

      I, Jill L. Nicholson, hereby certify that on March 3, 2020, I caused to be electronically filed the ***Objections of Certain Mortgagees to Receiver's Sixth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals*** each of which is being served electronically via the Court's ECF system on all counsel of record.

                                                      /s/ Jill L. Nicholson
                                                      Jill L. Nicholson