UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., *et al.*, ) ) Defendants. ) ) | Civil Action No. 18-CV-5587 Judge John Z. Lee Magistrate Judge Young B. Kim |

### SEC'S REPLY IN SUPPORT OF RECEIVER'S SIXTH FEE APPLICATION

The SEC hereby supports the Receiver's Sixth Fee Application (ECF No. 626). The SEC confirms that it has reviewed the Receiver's invoices, they substantially comply with the SEC's billing guidelines, and the SEC approves of their payment. The SEC additionally incorporates its arguments in support of the Receiver's earlier fee applications. (*See* ECF Nos. 526, 606, 622). For these reasons, and those stated below, the Court should grant the Receiver's fee application.

**A. The Receiver Has Performed Valuable and Beneficial Services**

From the onset, the Receiver has performed valuable services for the benefit of various constituencies, including investors, other creditors, and the Court. In granting the Receiver's earlier fee applications, the Court recognized the Receiver's important work and the need for that work to continue:

> As the Court has repeatedly recognized, there is a significant need for the Receivership Assets to be managed by a neutral party until an orderly claims process is concluded. Moreover, the Court continues to find that the Receiver's efforts have benefitted and will benefit the Receivership Estate.

1

(ECF No. 614, p. 3; *see also,* Oct. 8, 2019 Hearing Tr. at 7:2-8). The Court likewise recognizes that a receiver is entitled to compensation even in situations where the receiver's work leads to a decline in the value of the estate. (ECF No. 614, p. 2 (quoting *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994) ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation." (citations omitted))). The lenders themselves acknowledge that the Receiver and his attorneys "are entitled to fair, reasonable, and moderate compensation." (ECF No. 648, p. 2).

The Receiver's efforts are all the more notable given the constant stream of objections and motions filed by the institutional lenders seeking to thwart the liquidation of properties and implementation of a claims process. As reflected in the Receiver's fee applications and invoices, the lenders' conduct has distracted the Receiver from his core work and forced him to devote considerable time and resources that would otherwise be spent fulfilling his Court-imposed mandates. The Court has likewise observed that "the Receiver and his legal professionals have devoted significant resources responding to various motions, objections, and inquiries made by lenders, with these efforts increasing the amount of fees the Receiver is reasonably entitled to." (ECF No. 614, p. 3).

## B. The Lenders' Objections are Unavailing

The lenders object to the Receiver's fee application on two primary grounds, arguing that: (1) the Receiver has billed too much money and (2) the Receivership has insufficient funds to pay the amounts sought in the fee application. (*See* ECF No. 648).

Regarding the first argument, the Court, in granting earlier fee petitions, has repeatedly found the Receiver's professional expenditures to be reasonable and beneficial to the

receivership estate. (*See, e.g.* ECF No. 614, p. 3 ("the Court continues to find that the Receiver's efforts have benefitted and will benefit the Receivership Estate…the lenders have failed to show that [the Receiver's] fees are unreasonable.")). Moreover, as the lenders observe in their objections, the Receiver's professional expenses have been substantially declining over time. (*See*, ECF No. 648, p. 5). Indeed, the chart in the lender's objections shows that the Receiver requested fees above $525,000 in each of his second, third, and fourth fee applications, while the requested fees dropped to $485,000 in the fifth application. (*Id.*). For the present fee request, the Receiver's fees dropped significantly again, this time to less than $362,000. (*Id.*).[1] The fact that the Receiver's professional expenses have decreased, while he has continued his core responsibilities of liquidating his real estate portfolio and administering the claims process, demonstrates that his requested fees are reasonable.[2]

The lenders' other primary objection is that the Receivership lacks sufficient funds to finance its professional fees. However, the Receiver's recent filing supporting his fee application represents:

> there are or will be sufficient funds to pay the Receiver and his retained professionals from monies that have been or will be recovered, net proceeds from the sales of unencumbered properties, net equity from the sale of encumbered properties, and funds returned to the Receiver's account from the sales proceeds of properties that received cash infusions to preserve and maintain them during periods when their operating income alone could not sustain them.

---

[1] The Receiver's recent filing in support of his fee application further demonstrates how both his fees and average billing rate have declined over time. (*See* ECF No. 703, p. 8).

[2] As noted in the SEC's prior briefs supporting the Receiver's fee applications, the institutional lenders have forced the Receiver to devote a large amount of time responding to the lenders' motions, objections, and requests for information. The Receiver should not be punished for incurring fees solely necessitated by the lenders' actions. Surely the Receiver's professional expenses would be much lower absent the lenders' serial court filings and demands for reports, further confirming the reasonableness of the Receiver's fee requests.

(ECF No. 703, p. 10). To that end, the Receiver details how he currently has more than $366,500 in available cash, and anticipates receiving $1.2 million from a May 2020 property sale and an additional $800,000 from funds he holds in escrow. (ECF No. 703, p. 10). As the Receiver represents, these funds will provide the Receiver sufficient liquidity, per his reasonable business judgment, to pay his requested professional fees. (*Id.*).

Beyond their primary arguments, the lenders renew their demand that the Receiver hold back 20% of his fees. This is another argument that the Court has already rejected. (ECF No. 614, p. 4). As the Court held previously, because the Receiver has represented that the estate has sufficient funds to pay the Receiver and his professionals the requested amounts, there is no need for any holdback. (*Id.*). Moreover, the fact that the Receiver has already provided a discount of at least 25% from his typical fees (ECF No. 703, p. 11), further establishes that a hold-back is not warranted.

Finally, as noted in the SEC's earlier submissions supporting the Receiver's entitlement to payment, denying the Receiver's fee petitions would set terrible precedent with significant ramifications beyond this case. The SEC would have difficulty recruiting well-qualified receivers, who would be unwilling to volunteer for lengthy and resource-intensive assignments with the prospect of not being compensated. It would also encourage those who oppose receiverships to employ the tactics used by the lenders in this case: object at every opportunity, interfere with the receiver's work, prevent the liquidation of receivership assets, force the receiver to incur significant expenses, and ultimately drive down the recovery for victims of securities fraud. The Court should decline the opportunity to reward the lenders' conduct or set it as an example for future receiverships.

## C. Conclusion

The Receiver seeks compensation for work he performed and directed, using his reasonable business judgment. His bills reflect his efforts to both fulfill his Court-imposed mandates and to respond to voluminous motions and objections by the institutional lenders. The Receiver represents that sufficient funds will be available to pay the requested fees. Accordingly, the Court should allow the Receiver to be paid for his efforts, and to continue working for the benefit of the victimized investors and other creditors.

Dated: June 4, 2020

Respectfully submitted,

 /s/ Benjamin Hanauer
Benjamin J. Hanauer (hanauerb@sec.gov)
Timothy J. Stockwell (stockwellt@sec.gov)
U.S. Securities and Exchange Commission
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398

## CERTIFICATE OF SERVICE

I hereby certify that I provided service of the foregoing Reply, via ECF filing, to all counsel of record and Defendant Shaun Cohen, on June 4, 2020. I further certify that I caused the foregoing Response to be served on Defendant Jerome Cohen, via email at jerryc@reagan.com.

    /s/ Benjamin Hanauer
Benjamin J. Hanauer
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398

One of the Attorneys for Plaintiff