# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 18-cv-5587** |
| **v.** | ) ) | **Judge John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) ) ) | |

## RECEIVER'S EIGHTH MOTION TO CONFIRM THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants") respectfully moves for approval of the sale of certain real estate and for the avoidance of certain mortgages, liens, claims, and encumbrances.

To the extent that this motion makes reference to "secured" interests or "released" mortgages, those references are descriptive only and not intended as representations that the subject security instruments have been conclusively determined "secured" or "released." This motion takes no position with respect to the validity or priority of any encumbrance referenced herein, and the order in which any encumbrances are enumerated in the paragraphs that follow should not be construed as a finding or opinion regarding such issues.

***This Court Authorized The Receiver To Sell Assets Owned By The Receivership Defendants.***

1.      The United States Securities and Exchange Commission filed this case against EquityBuild, EquityBuild Finance, Jerome Cohen, and Shaun Cohen alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a).

2.      In its August 17, 2018 Order Appointing Receiver (Docket No. 16), the Court assumed exclusive jurisdiction over, and possession of, the assets of the Receivership Defendants, and, by Order entered March 14, 2019 (Docket No. 290), SSDF7 Portfolio 1 LLC ("SSDF7") and SSPH 6951 S Merrill LLC ("SSPH 6751 S Merrill") were expressly identified as additional Receivership Defendants.

3.      In the Order Appointing Receiver, the Court conferred upon the Receiver (1) "all powers, authorities, rights and privileges" theretofore possessed by the principals of the Receivership Defendants under applicable state and federal law, as well as by the governing operating and shareholders' agreements and (2) all powers and authority of a receiver at equity, as well as all powers conferred upon a receiver under 28 U.S.C. §§ 754, 959, and 1692, and FRCP 66. (Docket No. 16, ¶ 4)

4.      The Court further authorized the Receiver to "take all necessary and reasonable actions to cause the sale" of "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (*Id*.)

***The Receiver Will Provide Fair, Adequate, And Sufficient Notice Of This Motion To All Interested Parties.***

5.　　In addition to service through the Court's electronic case filing system, the Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested parties of which he is currently aware by electronic mail (to the extent he possesses an e-mail address) or by regular mail if he possesses a mailing address but no e-mail address.

6.　　The Receiver will use information obtained from EquityBuild's records, as well as communications received during the course of the Receivership, to ensure that contact information is as complete as reasonably possible.

7.　　A copy of this motion will also be posted on the Receiver's webpage at *http://rdaplaw.net/receivership-for-equitybuild.*

***The Receiver Seeks Judicial Confirmation Of The Sales Of Three Apartment Buildings.***

8.　　The Receiver seeks judicial confirmation of the sales of the residential apartment buildings located at 6949-59 South Merrill Avenue, Chicago, Illinois 60649 ("6949-59 South Merrill"), 7600-10 South Kingston, Chicago, Illinois 60649 ("7600-10 South Kingston"), and 7656-58 South Kingston Avenue, Chicago, Illinois 60649 ("7656-58 South Kingston").

9.　　On February 15, 2019, the Receiver filed a Second Motion For Court Approval Of The Process For Public Sale Of Real Property By Sealed Bid (the "Second Motion"), and the property at 7600-10 South Kingston was included within the scope of that motion. (Docket No. 228)

10.　　The Second Motion was granted by Magistrate Judge Kim by Memorandum Opinion and Order dated May 2, 2019 (Docket No. 352), subject, among other things, to the rights of lenders to credit bid for the properties securing their loans, provided they post a letter of credit

in the amount of the bid if the Receiver identifies a *bona fide* dispute regarding the validity or priority of their security.

11.     On April 18, 2019, the Receiver filed a Fifth Motion For Court Approval Of The Process For Public Sale Of Real Property By Sealed Bid (the "Fifth Motion"), and the properties at 6949-59 South Merrill and 7656-58 South Kingston were included within the scope of that motion. (Docket No. 329)

12.     The Fifth Motion was granted by Magistrate Judge Kim by Order dated May 22, 2019 (Docket No. 382), subject to the same conditions imposed by the Court in its May 2, 2019 Memorandum Opinion and Order (Docket No. 352).

13.     Following a series of lender motions seeking modification of Magistrate Judge Kim's May 2, 2019 Memorandum Opinion and Order, its May 22, 2019 Order (Docket No. 352), and other subsequent orders relating to credit bidding issues, and following the appeals of certain lenders pursuant to Federal Rule of Civil Procedure 72, this Court entered an Order on October 4, 2019 (Docket No. 540) adopting the rulings of Magistrate Judge Kim "in full."

14.     Pursuant to 28 U.S.C. § 2002, a public sale of realty may be made by notice published "once a week for four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state or judicial district of the United States wherein the realty is situated."

15.     Notice of the public sale of 6949-59 South Merrill, 7600-10 South Kingston, and 7656-58 South Kingston was published for four consecutive weeks between July 19, 2019, and August 9, 2019, in the Chicago Sun-Times. (*See* Certificate of Publication, Exhibit 1.)

**6949-59 South Merrill**

16.     The Receiver asked $1,800,000 for 6949-59 South Merrill and received offers on or about August 14, 2019, from eight bidders, with 3802 LLC submitting the highest and best offer of $2,100,000 without a financing contingency and with Ventus Holdings LLC ("Ventus") submitting the next highest offer of $2,061,500 (also without a financing contingency).

17.     On September 7, 2019, the Receiver accepted the purchase and sale agreement submitted by 3802 LLC after the secured lender declined to credit bid. (*See* Exhibit 2.)

18.     On November 15, 2019, a squatter at the property caused a fire that inflicted substantial damage to the building. (*See* Exhibit 3.)

19.     Following the damage, 3802 LLC terminated the purchase and sale agreement by letter dated December 6, 2019. (*See* Exhibit 4.)

20.     The Receiver subsequently informed Ventus, the next highest bidder, of the damage to the building and, on December 19, 2019, accepted an offer from Ventus to purchase the property for $1,935,200 after the secured lender, again, declined to make a credit bid. (*See* Exhibit 5.)

21.     In his Fifth Motion For Approval Of The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances, filed January 24, 2020 (Docket No. 618), the Receiver moved for judicial confirmation of the sale of 6949-59 South Merrill to Ventus, and this Court granted that motion by Order entered February 21, 2020. (Docket No. 633)

22.     By letter dated April 15, 2020, however, Ventus was informed by its prospective lender, Community Investment Corporation ("CIC"), that financing would no longer be available as a result of the COVID-19 epidemic. (*See* Exhibit 6.)

23.     As a result of the withdrawal of its prospective financing, Ventus informed the Receiver by letter dated April 20, 2020, that it was unable to proceed with the acquisition (*see* Exhibit 7), and, accordingly, the Receiver issued it a default letter (*see* Exhibit 8).

24.     Subsequently, on May 8, 2020, the Receiver accepted an offer to purchase the fire-damaged property from Pioneer Acquisitions LLC (the next highest bidder) for $1,520,000, after the secured lender, for a third time, declined to make a credit bid. (*See* Exhibit 9.)

25.     Title to 6949-59 South Merrill is vested in SSPH 6951 S Merrill LLC and clouded by the following potential encumbrances:

a.      that certain Mortgage, Assignment Of Leases And Rents, Security Agreement And Fixture Filing recorded September 14, 2017, as Document 1725729063 (Exhibit 10) in favor of Thorofare Asset Based Lending REIT Fund IV, LLC to secure a promissory note in the originally stated principal amount of $1,540,000;

b.      that certain Amendments To Mortgages And Cross-Collateralization Agreement dated July 21, 2017, and recorded September 14, 2017, as Document No. 1725729064, entered into by and between SSPH 6951 S Merrill LLC and 1700 Juneway LLC, on the one part, with Thorofare Asset Based Lending REIT Fund IV, LLC, on the other part (Exhibit 11); and

c.      that certain Financing statement evidencing an indebtedness from SSPH 6951 S Merrill LLC to Thorofare Asset Based Lending REIT Fund IV, LLC, filed on September 14, 2017, as Document No. 1725729065. (Exhibit 12.)

**7600-10 South Kingston**

26.     The Receiver asked $1,700,000 for 7600-10 South Kingston and received offers on or about August 14, 2019, from five bidders, with Ventus submitting the highest and best offer of

$1,870,000 without a financing contingency, with Southside Property Group LLC ("Southside Property Group") submitting the next highest offer of $1,530,000 (also without a financing contingency), and with three other bidders submitting offers ranging between $850,000 and $910,000.

27.     On October 14, 2019, the Receiver accepted the purchase and sale agreement submitted by Ventus after the secured lender declined to credit bid. (*See* Exhibit 13.)

28.     In his Fifth Motion For Approval Of The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances, filed January 24, 2020 (Docket No. 618), the Receiver moved for judicial confirmation of the sale of 7600-10 South Kingston to Ventus, and this Court granted that motion by Order entered April 1, 2020. (Docket No. 680)

29.     As indicated above, however, Ventus received word from CIC by letter dated April 15, 2020, that financing would not be available as a result of the global pandemic, leaving Ventus unable to close on the acquisition of the property.

30.     Under these circumstances, on May 8, 2020, the Receiver accepted an offer to purchase the property that was previously submitted by Southside Property Group -- an offer $629,900 higher than the next highest bid received during the sealed-bid auction process -- after the secured institutional lender, again, declined to credit bid. (*See* Exhibit 14.)

31.     Title to 7600-10 South Kingston is vested in SSDF7 and clouded by the following potential encumbrances:

a.      that certain Mortgage recorded February 4, 2016, as Document No. 1603550265 (Exhibit 15) in favor of Equity Trust Company Custodian FBO John Allred IRA Account No 125952, as to a 1.39% interest; Equity Trust Company FBO Glenda K.

Allred IRA Account No. 187991, as to a 0.19% interest; Equity Trust Company Custodian FBO Carly A. Allred Roth IRA Account No. 163781, as to a 0.14% interest; Fraser Realty Capital, LLC, as to a 0.70% interest; Spectra Investments, LLC, as to a 4.43% interest; Quest IRA Inc. FBO Rebeca E. Savory-Romero IRA Account No. 15528-11, as to a 1.40% interest; iPlanGroup Agent for Custodian FBO Frank Sohm IRA, as to a 0.55% interest; Private Finance Solutions, LLC, as to a 0.82% interest; Arthur Bertrand, as to a 0.61% interest; Equity Trust Company Custodian FBO Paula Levand CESA, as to a 0.65% interest; Don Minchow, as to a 3.86% interest; Asians Investing in Real Estate, LLC, as to a 5.26% interest; iPlanGroup Agent for Custodian FBO Jason Ragan IRA, as to a 1.04% interest; NuView IRA Inc. FBO Janet Eileen Taylor IRA, as to a 12.63% interest; Towpath Investments, LLC, as to a 0.88% interest; AdvantalRA Trust, LLC FBO Terry Merrill No. 6820601, as to a 2.11% interest; Equity Trust Company Custodian FBO David M. Williams IRA No. Z51886, as to a 0.26% interest; TruStar Real Estate, LLC, as to a 7.37% interest; Vantage FBO Joseph S. Ratkovic IRA No. 16325, as to a 5.26% interest; David Marcus, as to a 31.42% interest; Paul N. Wilmesmeier, as to a 0.88% interest; CM Group, LLC, as to a 3.86% interest; Uyen Dinh, as to a 0.25% interest; Timothy Sharp, as to a 1.75% interest; iPlanGroup Agent for Custodian FBO Stephen J. Apple ROTH IRA, as to a 1.53% interest; Charwin Properties, LLC, as to a 0.18% interest; Nehasri ltd., as to a 1.86% interest; Janet Eileen Taylor, as to a 1.75% interest; Robert Maione, as to a 3.86% interest; and EquityBuild, Inc., as to a 3.10% interest, to secure a promissory note in the originally stated principal amount of $2,850,000;

b.     that certain Mortgage recorded May 7, 2018, as Document No. 1812734048 (Exhibit 16) in favor of Liberty EBCP, LLC to secure a promissory note in the originally stated principal amount of $18,400,000 (the "Liberty Mortgage");

c.     that certain Assignment Of Leases And Rents recorded May 7, 2018, as Document No. 1812734049 (Exhibit 17) (the "Liberty Assignment Of Rents");

d.     that certain Financing Statement filed May 7, 2018, as Document No. 1812734050 (Exhibit 18) (the "Liberty Financing Statement"); and

f.     that certain notice of lis pendens recorded August 15, 2018, as Document No. 1822706115 in connection with the case captioned *Michigan Shores Apartments, LLC v. EquityBuild, Inc., SSDF7 Portfolio 1, LLC, [and] Liberty EBCP LLC*, Circuit Court of Cook County, Case No. 2018-CH-09098 (the "Michigan Shores Action"). (Exhibit 19.)

32.     The plaintiff in the Michigan Shores Action seeks to set aside allegedly fraudulent conveyances of 14 properties by EquityBuild to SSDF7 Portfolio 1 LLC in connection with a *separate, underlying lawsuit* alleging, among other things, fraud, breach of contract, breach of fiduciary duty, and civil conspiracy, in connection with the conveyance of a property located at 7616-24 South Phillips Avenue in Chicago, Illinois -- and not included within the receivership estate. (Exhibit 20.)

33.     The plaintiff in the Michigan Shores Action does not claim any actual right, title, or interest to the properties against which it filed the referenced notice of lis pendens, but instead seeks to have 14 separate conveyances by EquityBuild to SSDF7 Portfolio 1 LLC set aside merely to improve its chances of recovering money damages against EquityBuild in the underlying lawsuit.

34.     In addition, the plaintiff in the Michigan Shores Action submitted to the jurisdiction of this Court by filing a proof of claim in this litigation.

35.     Although a Release Deed (Exhibit 21) was recorded May 7, 2018, as Document No. 1812744024 in connection with the mortgage attached as Exhibit 15, that release was not executed by the mortgagees.

**7656-58 South Kingston**

36.     The Receiver asked $500,000 for 7656-58 South Kingston and received offers on or about August 14, 2019, from five bidders, with Ventus submitting the highest and best offer of $510,000 without a financing contingency.

37.     On October 15, 2019, the Receiver accepted the purchase and sale agreement submitted by Ventus after the secured lender indicated that it did not intend to credit bid on this and other properties. (*See* Exhibit 22.)

38.     In his Fifth Motion For Approval Of The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances, filed January 24, 2020 (Docket No. 618), the Receiver moved for judicial confirmation of the sale of 7656-58 South Kingston to Ventus, and this Court granted that motion by Order entered April 1, 2020. (Docket No. 680)

39.     As indicated above, however, CIC informed Ventus by letter dated April 15, 2020, that financing would not be available as a result of the global pandemic, leaving it unable to close on the acquisition of the property.

40.     Under these circumstances, the Receiver's real estate professionals attempted to secure the offer previously received from the next-highest bidder in the auction, who now offered

to purchase the property for $300,000 (and no financing contingency), representing a $205,100 reduction of its prior offer.

41.     The Receiver's real estate professionals then obtained an offer from Southside Property Group, LLC to purchase the property for $320,000 (also without a financing contingency), and the Receiver, in view of the secured lender's prior representation that it would not be credit bidding on this property, accepted that offer on May 8, 2020. (*See* Exhibit 23.)

42.     Title to <u>7656-58 South Kingston</u> is vested in SSDF7 and clouded by the following potential encumbrances:

      a.      that certain Mortgage recorded January 8, 2015, as Document No. 1500616026 (Exhibit 24) in favor of "The Persons Listed on Exhibit A," although the recorded Mortgage omitted the referenced "Exhibit A." (EquityBuild records indicate, however, that the following persons or entities, among potentially others, may possess an unrecorded mortgagee interest in the property: Harpreet Singh Kapoor, Harvey Singer, Edge Investments, LLC, John Wysocki, Jose G. Galarza, Joseph McCarthy, Tylor More, Mike More, iPlan Group Agent for Custodian FBO Alcalli Sabat IRA, iPlan Group Agent for Custodian FBO Michael Anglin IRA, The Edward Falkowitz Living Trust, The Falkowitz Group Retirement Trust, The Entrust Group, Inc. FBO Mark Whittlesey Account #54-00502, iPlan Group Agent for Custodian FBO Leah Kalish IRA, Mark E. Young, The Kingdom Trust Company, Custodian, FBO Louis Duane Velez, Account #7422686172, Peggy Christensen, and Peter P. Nuspl);

      b.      the Liberty Mortgage;

      c.      the Liberty Assignment Of Rents; and

      d.      the Liberty Financing Statement.

43.     Although a Release Deed (Exhibit 25) was recorded May 7, 2018, as Document No. 1812744025 in connection with the mortgage attached as Exhibit 24, that release was not executed by the mortgagees.

**Payment Of Transaction Costs & Treatment Of Proceeds**

44.     At the closings of these sales, certain costs and expenses will be paid from the sales proceeds, including, but not limited to, (1) the cost of a survey, (2) the premiums associated with the delivery of policies of owner's title insurance, (3) the cost of state, local, and municipal transfer taxes, (4) the closing (or escrow) fee assessed by the title company, and (5) a series of ancillary and customary charges relating to, among other things, the need to procure a full payment water certificate from the City of Chicago, the Receiver's obligation to deliver ALTA extended title insurance coverage, closing protection coverage, wire transfer fees (associated with the transfer of sales proceeds to a receivership bank account), expediting fees, a gap risk update, and state regulatory fees.

45.     To convey clear title to each property, the Receiver will also be required to (1) pay from the closing proceeds any and all past due or currently pending water charges and/or Cook County property taxes and (2) extend credits in connection with prospective 2019 and pro-rated 2020 Cook County property tax liability.

46.     The Receiver will also be required to pay sales commissions to SVN in connection with each conveyance. Pursuant to that certain Exclusive Sales Listing & Asset Management Agreement entered into between SVN and the Receiver, SVN will be entitled to receive a commission equal to 4.5% of the first $1,000,000 in sales price and 3.5% of the next $2,000,000 in sales price, with discounts of 0.5% in transactions where the prospective buyer was not procured through the efforts of a cooperating broker.

47.    None of the properties encompassed within this motion requires the payment of a cooperating brokerage commission.

48.    Accordingly, the Receiver will pay SVN real estate brokerage commissions in the following amounts in connection with the conveyances of the following properties:

| | | |
|---|---|---|
| 6949-59 South Merrill Avenue | : | $ 55,900 |
| 7600-10 South Kingston Avenue | : | $ 66,100 |
| 7656-58 South Kingston Avenue | : | $ 12,800 |

49.    Finally, Andrew E. Porter, an attorney for the Receiver, serves as an agent for the title company through which the sales subsumed within this motion will close and will therefore generate agency fees for the title examination work he performed in connection with each proposed conveyance, such fees to be in the following estimated amounts (subject to modest increases if buyers who acquire with financing purchase with additional title insurance endorsements):

| | | |
|---|---|---|
| 6949-59 South Merrill Avenue | : | $ 3,432 |
| 7600-10 South Kingston Avenue | : | $ 3,444 |
| 7656-58 South Kingston Avenue | : | $ 1,608 |

50.    The Receiver intends to reduce the fee application ultimately submitted to the Court in connection with the corresponding asset disposition work in an amount equal to the agency fees being paid to Mr. Porter.

51.    In the Order Appointing Receiver, this Court vested the Receiver with authority to sell, and transfer clear title to, all real property in the Receivership Estate. (Docket No. 16, ¶ 39) ("Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.")

52.     Pending the completion of the claims process and a to-be-approved distribution plan, the proceeds from the sales of the properties subject to this motion will be held in separate subaccounts established by the Receiver (and for which the Receiver will maintain an accounting as to all sums deposited therein) and will not be available to pay operating expenses of the Receivership, absent further order of Court. The inclusion of such amounts in a subaccount does not constitute an admission that any or all such amounts are subject to a valid security interest. The actual amount of sales proceeds in the subaccount to which the parties claiming the secured interest are entitled will be subject to determination through the claims process. The Receiver reserves all rights to seek a transfer of any such proceeds to the Receiver's operating account by subsequent Order of the Court.

WHEREFORE, the Receiver respectfully requests that this Court grant the Eighth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances by entering an order in the form attached at Exhibit 26 approving the sales of the properties 6949-59 South Merrill, 7600-10 South Kingston, and 7656-58 South Kingston with such sales to be free and clear of the mortgages, liens, claims, and encumbrances identified herein, and with all such mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the properties being sold.

Dated:  June 11, 2020                              Kevin B. Duff, Receiver

                                   By:    /s/ Michael Rachlis
                                          Michael Rachlis
                                          Rachlis Duff & Peel LLC
                                          542 South Dearborn Street, Suite 900
                                          Chicago, IL 60605
                                          Phone (312) 733-3950; Fax (312) 733-3952
                                          mrachlis@rdaplaw.net

14

EXHIBIT 1

RACHLIS DUFF PEEL & KAPLAN
ADORDERNUMBER:-0001089552-01
PO NUMBER: Notice of Pub Sale

# Chicago Sun-Times
# Certificate of Publication

NO. OF AFFIDAVITS  1
COST: $450.00

**State of Illinois – County of          Cook**

Chicago Sun-Times, does hereby certify it has published the attached advertisements in
the following secular newspapers.  All newspapers meet Illinois Compiled Statue
requirements for publication of Notices per Chapter 715 ILCS 5/0.01 et seq. R.S. 1874,
P728 Sec 1, EFF. July 1, 1874. Amended By Laws 1959, P1494,EFF. July 17, 1959.
Formerly Ill. Rev. Stat. 1991, CH100, P1..
Note:  Notice appeared in the following checked positions.
PUBLICATION DATE(S):     07/19/2019, 07/26/2019, 08/02/2019, 08/09/2019

**Chicago Sun-Times**

IN WITNESS WHEREOF, the undersigned, being duly authorized,
has caused this Certificate to be signed

by

OFFICIAL SEAL
JENNIFER M STREFF
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/26/23

NOTARY PUBLIC

Pamela D. Henson
Account Manager – Public Legal Notices

This 9th Day of August 2019 A. D. .

RACHLIS DUFF PEEL & KAPLAN
542 S DEARBORN ST SUITE 900
ATTN: NICOLE MIRJANICH
CHICAGO, IL 60605

## NOTICE OF PUBLIC SALE OF REAL ESTATE

Kevin B. Duff, Receiver for the Estate of EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen in the action styled U. S. Securities and Exchange Commission v. EquityBuild, Inc., et al., Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division, gives notice of his intent to sell the following real properties by sealed bid public sale:

638-40 N. Avers Avenue, Chicago, IL 60624 (PIN 16-11-112-027-0000)

4520-26 S. Drexel Blvd, Chicago, IL 60653 (PIN 20-02-311-016-0000)

6751-57 S Merrill Avenue, Chicago, IL 60649 (PIN 20-24-403-006-0000)

6949-59 S. Merrill Avenue, Chicago, IL 60649 (PIN 20-24-417-014-0000)

7109-19 S Calumet Avenue, Chicago, IL 60619 (PINS 20-27-105-003-0000; 20-27-105-004-0000; 20-27-105-005-0000)

7110-16 S Cornell Avenue, Chicago, IL 60649 (PIN 20-25-100-014-0000)

7450 S Luella Avenue, Chicago, IL 60649 (PIN 20-25-225-027-0000)

7546 S Saginaw Avenue, Chicago, IL 60649 (PIN 21-30-304-020-0000)

7600 S Kingston Avenue, Chicago, IL 60649 (PIN 21-30-309-030-0000)

7625-33 S East End Avenue, Chicago, IL 60649 (PIN 20-25-310-008-0000)

7635-43 S East End Avenue, Chicago, IL 60649 (PIN 20-25-310-009-0000)

7656 S Kingston Avenue, Chicago, IL 60649 (PIN 21-30-309-026-0000)

7748-50 S Essex Avenue, Chicago, IL 60649 (PIN 21-30-319-029-0000)

7749 S Yates Boulevard, Chicago, IL 60649 (PIN 21-30-318-013-0000)

7750-58 S Muskegon Avenue, Chicago, IL 60649 (PIN 21-30-400-034-0000)

8201 S Kingston Avenue, Chicago, IL 60617 (PIN 21-31-126-001-0000)

8326-32 S Ellis Avenue, Chicago, IL 60619 (PIN 20-35-303-096-0000)

8334-40 S Ellis Avenue, Chicago, IL 60619 (PIN 20-35-303-097-0000)

8342-50 S Ellis Avenue, Chicago, IL 60619 (PIN 20-35-303-098-0000)

8352-58 S Ellis Avenue, Chicago, IL 60619 (PIN 20-35-303-099-0000)

Offers may be made on a cash basis or subject to a financing contingency, in either case by completing the form Purchase And Sale Agreement to be supplied by the Seller, accompanied by a proof of funds, and delivered to Jeffrey Baasch ("Broker"), SVN Commercial Real Estate, 940 West Adams, Suite 200, Chicago, IL 60607, jeffrey.baasch@svn.com, by no later than 5:00 p.m. CST on August 14, 2019. Offers must be transmitted to the Broker by e-mail or enclosed in a sealed envelope and delivered by U.S. mail, by nationally-recognized overnight courier, or by hand. Untimely and non-conforming offers may be rejected at the sole discretion of the Broker. The seller strongly recommends that prospective purchasers prequalify for financing prior to submitting an offer. No liability shall attach to the seller, the broker, or any other party for failure to receive or open any offer.

The Receivership court afforded all lenders a right to make a credit bid on any property against which they hold a mortgage lien. (Docket No. 351) Special procedures regarding credit bids will be made available upon request.

The winning bidder, if not a credit bidder, will be required to make an earnest money deposit in an amount equal to ten percent (10%) of the purchase price by wiring the funds to a designated title company within three (3) business days after acceptance of the Purchase And Sale Agreement. Property tours will be available to all bidders at scheduled times, and the properties may also be shown by appointment. The properties are being sold "as-is," with all faults, as of the closing date. The closing shall be held within fifteen (15) days after judicial approval of the Receiver's motion to approve the corresponding sale, which motion will be filed as soon as practicable following the Seller's acceptance of the contract submitted by the winning bidder. The Receiver reserves the right to reject any and all offers to purchase any of the properties being offered for sale.

Bidders must comply with the "Sealed Bid Public Sale of Real Estate Terms and Conditions" which have been approved in the Civil Action, a copy of which may be obtained upon request to the Receiver's Broker at: SVN Commercial Real Estate, Attn: Jeffrey Baasch, 940 West Adams, Suite 200, Chicago, IL 60607, jeffrey.baasch@svn.com.
7/19, 7/26, 8/2, 8/9/19      #1089552

EXHIBIT 2

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

3802 LLC or its nominee _____ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6949-59 South Merrill Avenue, Chicago, Illinois 60619 and legally described as follows:

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF THE NORTH 3/4 OF THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLNOIS.

Permanent Index No. 20-24-417-014-0000

\*      \*      \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 2,100,000 _____ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the ~~D.G., MANAGER~~ Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ September 13, 2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the KD Offer Expiration Date, then the offer shall be deemed withdrawn.

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.      **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.      **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.      **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

3

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

    a.    *Current Rent Roll*. A current rent roll for the Property generated by the management company.

    b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

    c.    *Leases*. Copies of all existing leases affecting the Property.

    d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

    e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.  **Entry Into Or Renewal Of Contracts & Material Changes.** Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.  **Material Destruction.** Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.  **Condition Of Property.** The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.  **Buyer Default.** The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

5

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.      The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.      The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.      To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

            *[None.]*

    d.      To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Ian B. Berliner,
> Pissetzky & Berliner, LLC
> 35 E. Wacker Drive, Suite 1980, Chicago, IL 60601
> iberliner@pbzlawfirm.com, dgrois@gmail.com
> Office- 312.566.9900, Cell - 847.212.3484, Fax - 312.939.1616

21.     **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23. **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24. **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*     *     *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this ___14th___ day of August, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

3802 LLC

2460 Dundee Rd, #1502

Northbrook, IL 60062

dgrois@gmail.com

By:

Its:  Manager

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH 6951 S MERRILL LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

, Receiver

Acceptance Date:  9/7/2019

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*      \*      \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly, with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

### RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\* \* \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____    **Expected Release Date:** _____    **Escrow Number:** 2964570

**Property Address:** 6949-59 South Merrill, Chicago, Illinois 60619

**Deposit Amount: $** _____    **Purpose:** [X] Earnest Money    [ ] Repairs: _____
**Document(s) Held** _____    [ ] Tax Escrow    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | _____ Manager | Signed: | Kevin B. Duff, as Federal Equity Receiver for SSPH 6951 S Merrill LLC |
| Print Name: | Daniel Grois, Manager | Print Name: | Receiver |
| | | | Rachlis Duff Peel & Kaplan LLC |
| Address: | 2460 Dundee Rd. #1502 | Address: | 542 South Dearborn, Suite 900 |
| | Northbrook IL 60062 | | Chicago, Illinois 60605 |
| Email: | dgrois@gmail.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | 312-543-4037 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ___, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSPH 6951 S Merrill LLC

_____

**ASSIGNEE:**

*[TBD]*

By:_____

Name: _____

Title: _____

EXHIBIT 3



# Incident Report Form

To be completed by the employee immediately following any incident that resulted in injury or property damage, and turned into their supervisor. The supervisor should conduct their own investigation and turn in all necessary reporting forms to the insurance agent or carrier.

| Employee Involved (Complete both boxes) | Tenant/Visitor Involved |
|---|---|
| Name: Robert Ellis | Name: James Weeks |
| Job title: Property Manager | Address: 6951 S Merrill Ave Unit 3A |
| Phone: (847)859.9893 | City, ST, Zip: Chicago, Il, 60649 |
| | Phone: (773)251.1023 |

| The following sections should be completed for all incidents: | |
|---|---|
| Date of incident: 11/15/2019 | Approximate time of incident:          5:30          AM / **PM** |
| Police Dept Notified: Yes      Report #: | Fire Dept Notified: Yes      Report #: |

Location of incident (be specific as to where, in what room or part of the property, etc):
Tier 6951 3A.
Bedroom
Mattress is where it started near bedroom window.

What happened, what was the cause of injury:

Squatter in started an electrical fire in bedroom from the use of multiple extension cords that squatter ran down to the light fixture outside the boiler room common area.

What is the nature of the injury/ property damage:

6951 Unit 3B – completely burned in all rooms. Bedroom, Living room, Kitchen, Bathroom, Front door Entry. All windows burst from the fire, Bedroom, Living room, Kitchen, Bathroom. Ceiling in living room was cut open by the fire department to extinguish the flames. Drywall, in hallway, on 3rd floor, of the 6951 Tier, is burned from heat and smoke debris.

Was Medical treatment Sought:  (      ) Yes        ( X ) No

If yes, from whom?  (      ) On-Site      (      ) Clinic      (      ) Emergency Room/Hospital        (      ) Doctor

Name of treatment facility:

Were there witnesses? ☒ Yes    ☐ No - List names & phone # if other than employee:

Anthony Fulwiley – 773.01.0055

| Employee Signature: | Date: |
|---|---|

| Employer/Management Use Only | |
|---|---|
| Received By (PRINT): | Date: |



# Incident Report Timeline

To be completed by the employee immediately following the incident that resulted in injury or property damage and turned into their supervisor.

| Employee Involved (Complete both boxes) | Tenant/Visitor Involved |
|---|---|
| Name: Robert Ellis | Name: James Weeks |
| Job Title: Property Manager | Address: 6951 S Merrill Ave Unit 3A |
| Phone: (847)859.9893 | City, ST, Zip: Chicago, IL, 60624 |
| | Phone: (773)251.1023 |

**The following sections should be completed for all communication and other information pertaining to the incident. This information should include but is not limited to: background information of building, phone calls, texts, emails, related work orders and reporting**

**Date: 12/20/2018**
- Previous tenant Frank Crosby moved out of the system, passed away
- Property Manager met with Ray Chapman, janitor, to replace the locks on front and back door of 6951 3A

**Date: 04/05/2019**
- Property manager noticed all occupied units for upcoming inspection and walked through vacant units – no one was in the vacant units or basements

**Date 04/08/2019**
- Property manager completed building walk through, at this time no one was in the vacant units nor the basements.

**Date 05/14/2019**
- Stopped by building and had new locks put on 6955 Basement door, pad lock was broken. We sent maintenance to secure the basement door the same day. W/O#54172-1 Sent police to check basement.

**Date 7/24/2019**
- Property manager walked the vacant units and basements to prepare for walk through. Noticed all occupied units of upcoming inspection. No one in the vacant units not the basements.

**Date 7/30/2019**
- Property manager opened vacant units for walkthrough inspection. Found evidence of squatter in unit 6951 3A. Extension cord plugged into common area hallway outlet, leading to unit 6951 3A.
- Property manager noticed there was an extension cord coming from vacant unit, leading to common area hallway socket on second floor.
- Had the locks replaced again on front and back door immediately to secure the doors
- Cleaning crew sent out to have the unit trashed out. W/O#60186-1

**Date 7/31/2019**
- Cleaning crew contacted Property manager around 3:58PM, informed Property manager that the squatter called the police and provided mail stating he lived there but no I.D. Property Manager spoke with police who stated that the squatter had mail and we would have to evict him.

**Date 8/02/2019**
- Property manger successfully served the squatter with 5-day notice
- Squatter said he would comply and have all belongings moved out by 09/01/2019
- Workorder placed to install metal plate covers over common area outlets in the 6951 Tier.

**Date 8/05/2019**
- Property manager attempted to call squatter and follow up 12:31PM – No answer

**Date 08/8/2019**
- Property manager stopped by building for follow up – checking on squatter unit and basements – found extension cord leading from 6951 3A down to the hallway socket on the first floor, common area.
- Set up new work order to have metal covers installed on first floor outlet in the 6951-tier common area

Date 09/06/2019



- Property manager stopped by building – follow up with squatter at unit – no answer
- Work order created by property manager to secure front gate lock W/O#62867

**Date 09/09/2019**
- 11:57AM – Property manager made attempt to follow up with squatter – no answer

**Date 09/17/2019**
- 4PM Property manager walked building noticed an extension cord in tier 6953 1A, had it covered with plate cover W/O#63596-1
- Squatter was not in 6951 3A at the time.

**Date: 09/24/2019**
- Property manager sent squatter to eviction – no response from squatter

**Date 10/09/2019**
- Work order submitted for leaks in the building – Plumber informed property manager that squatter was still in 6951 3A unit.
- Property manager attempt to reach out to squatter 10:05AM via phone – no response rom squatter

**Date: 11/5/2019**
- Followed up with eviction process, tenant was in Queue with the Sherriff.

**Date: 11/15/2019**
- 6:12 PM, (Anthony Fulwiley) tenant called from 6949 2A, reported that 6951 3A was on fire and the fire department was there with police evacuating the building
- 7:00 PM, I arrived on the scene, fire was out, and fire department was checking the basements for electric meters to confirm electricity in 6951 3A.
- 9:00 PM, Property manager walked all units in the 6951 Tier and 6949 to check for further damage. Also locked up the vacant burned unit.

**Date: 11/16/2019**
- Maintenance was sent to 6951-3B to replace door, also got more after photos, Units 6951-2A & 3A still leaking water from fire department.

**Date: 11/18/2019**
- 8AM, Property Manager went back out for follow up and photos of 6951 3A, 6951 2A, and 6951 1A. Took photos of roof, inside burned unit, water damage caused to both units below. Also took more photos of the hallway in 6951 Tier.
- Work order placed for 6951 3A, roof to be repaired to prevent further damage.

| Employer/Management Use Only | |
|---|---|
| Received By (PRINT): | Date: |
| Signature | Manager Phone: (     ) |

\* All Photographic evidence of property damage or personal injury should accompany this report.



| Signature: | Manager Phone: ( ) |
|---|---|

**Photos below: Roof Top, 6951 3A, 6951 Hallway and back porch.**





































**6951 2A: Water Damage:**














































**6951 1A: Water Damage**













  

  

  


























**Boiler Room: Fallen Panels from Water Damage:**





EXHIBIT 4

# PISSETZKY & BERLINER, LLC.

ATTORNEYS AT LAW
35 EAST WACKER DRIVE, SUITE 1980
CHICAGO, ILLINOIS 60601
PHONE:(312) 566-9900   FAX: (312) 939-1616

Gal Pissetzky
Ian Berliner

Associates
Sally Pissetzky-Steele
Carrie Winteregg
Adam Bolotin

VIA E-MAIL ONLY

December 6th, 2019

Andrew E. Porter, Esq.
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614

      *RE*:    6951 S Merrill Ave - 6951 S. Merrill Ave. Chicago, IL 60649 *("Property")*
                 Owner of Record *("Seller")* to 3802 LLC. *("Purchaser")*

Dear Mr. Porter:

Please recall that the undersigned represents the Purchaser with respect to purchase of the above-referenced Property.  To this end, the Purchaser elects to cancel the Contract under paragraph 15 of the Contract in place.  Additionally, the Purchaser requests the immediate return of the earnest money.  Please send me any documentation that needs to be executed to release the earnest money to the Purchaser.  Let me know if you have any additional questions or concerns.

Very truly yours,

**Pissetzky & Berliner, LLC.**

**Acknowledged and Agreed:**

By:_____

Ian B. Berliner
IBB:HR

Andrew E. Porter, authorized agent for Seller

Cc: Michael Rachlis
    Daniel Grois

EXHIBIT 5

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

Ventus Merrill, LLC _____ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6949-59 South Merrill Avenue, Chicago, Illinois 60619 and legally described as follows:

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF THE NORTH 3/4 OF THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLNOIS.

Permanent Index No. 20-24-417-014-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.     **Purchase Price**. The purchase price for the Property shall be $ 1,935,200 _____ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.     An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until  January 10, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8. **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    Commitment For Title Insurance. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.    Survey. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.    Assignment And Assumption Of Leases. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    Prorations. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

3

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     Entry Into Or Renewal Of Contracts & Material Changes. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     Material Destruction. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     Condition Of Property. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     Buyer Default. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

5

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default.** In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties.** As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

           *[None.]*

    d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices.** All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> andrew@andrewporterlaw.com
>
> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

| Zach Elman |
| --- |
| Ventus Merrill, LLC |
| 10 S La Salle Ste. 1420 |
| Chicago, IL 60603 |

21.  **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.  **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23. <u>Foreign Investor Disclosure</u>. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24. <u>Merger</u>. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*   *   *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 13th _____ day of December, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer

**Buyer**

Zachary Elman

_[handwritten text]_

By: _[signature]_

Its: _[handwritten]_

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH 6951 S MERRILL LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_[signature]_

Acceptance Date: 12/19/2019

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*       \*       \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $ 1,649,200 , at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed 5%___per annum, amortized over 30 ___years, payable monthly, with a loan origination fee not to exceed 1%____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

●        ●        ●

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____
_____          _____

_[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]_

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____  Expected Release Date: _____  Escrow Number: 2964570

Property Address: 6949-59 South Merrill, Chicago, Illinois 60619

Deposit Amount: $ _____     Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____                ☐ Tax Escrow      ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | Kevin B. Duff, as Federal Equity Receiver |
|---|---|---|---|
| Signed: | | Signed: | for SSPH 6951 S Merrill LLC |
| Print Name: | | Print Name: | Rachlis Duff Peel & Kaplan LLC |
| Address: | | Address: | 542 South Dearborn, Suite 900 |
| | | | Chicago, Illinois 60605 |
| Email: | | Email: | kduff@rdaplaw.net |
| Primary Phone: | | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: | |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee   By _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com



**EXHIBIT B**

<u>Assignment And Assumption Of Leases</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of _____, 2019.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSPH 6951 S Merrill LLC

_____

ASSIGNEE:

*[TBD]*

By: _____

Name: _____

Title: _____

EXHIBIT 6

222 South Riverside Plaza, Suite 380
Chicago, Illinois 60606-6109

312.258.0070 | cicchicago.com

April 15, 2020

Ventus Holdings LLC
10 S. La Salle St.
Ste. 1420
Chicago, IL 60603

Dear Mr. Elman and Mr. Perez,

After much deliberation, we regret to inform you that we are unable to provide financing for the
following buildings:

7656 S Kingston Ave
7110 S Cornell Ave
7600 S Kingston Ave
6949 S Merrill Ave

Please be assured this is not due to our assessment of you as borrowers, but is a direct response to
the Covid-19 pandemic. Having reviewed your financial statements and portfolio performance as well
as the financials, appraisals and rent collections of the subject properties, we were very confident
these would be approved by our loan committee. Unfortunately, Covid-19 introduced much
uncertainty regarding rent projections and valuations leading to the committee's ultimate decision not
to proceed.

We appreciate your understanding during this unprecedented time and hope to work with you again in
the future. Please do not hesitate to reach out with any questions.

Sincerely,

Jack Crane
Senior Vice President, Director of Lending

EXHIBIT 7

MICHAEL B. ELMAN & ASSOCIATES, LTD.

10 SOUTH LASALLE STREET
SUITE 1420
CHICAGO, ILLINOIS 60603-1078

_____

MICHAEL B. ELMAN
mbelaw100@aol.com

ZACHARY D. ELMAN
zachelman@gmail.com

TELEPHONE (312) 541-0903
FAX NO. (844) 269-6884

April 20, 2020

<u>VIA EMAIL</u>
Mr. Andrew Porter
Porter Law Office
853 N. Elston Ave.
Chicago, Illinois 60642

**Re: 7600 S. Kingston**
 **7656 S. Kingston**
 **7110 S. Cornell**
 **6949 S. Merrill**

Dear Andrew:

Due to the unforeseen circumstances caused by the pandemic, the buyer's lender has elected not to provide financing in connection with these transactions. A copy of the lender's correspondence is attached. In addition, because of economic circumstances, my client's investors also no longer intend to proceed with the acquisition of these properties. Accordingly due to these unforeseen circumstances, my client cannot proceed and seeks the seller's approval to release the buyer's earnest money deposit held in a strict joint order escrow account at First American Title Insurance Company in the amount of $555,520.00.

It is quite unfortunate that we could not complete these transactions and Ventus looks forward to working with the seller again the future when circumstances permit. Kindly discuss this correspondence with your client and the courtesy of a prompt reply is appreciated. Thank you for your anticipated cooperation.

Very truly yours,

*Michael B. Elman*

MICHAEL B. ELMAN
MBE:gj

cc: Ventus Holdings, LLC

EXHIBIT 8

# Porter Law Office

853 NORTH ELSTON AVENUE
CHICAGO, ILLINOIS 60642
(312) 433-0568
andrew@andrewporterlaw.com

April 24, 2020

**By E-Mail/.pdf**

Michael B. Elman, Esq.
Michael B. Elman & Associates, Ltd
10 S. LaSalle Street, Suite 1420
Chicago, IL 60603
mbelman@mbelmanlaw.com

Re:  Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSPH 6951 S Merrill LLC, and Ventus Merrill LLC
*6949-57 South Merrill Avenue, Chicago, IL 60649*

Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSDF1 7110 S Cornell LLC, and Ventus Holdings LLC
*7110-16 South Cornell Avenue, Chicago, IL 60649*

Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSDF7 Portfolio 1 LLC, and Ventus Holdings LLC
*7600-10 South Kingston Avenue, Chicago, IL 60649*

Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSDF7 Portfolio 1 LLC, and Ventus Holdings LLC
*7656-58 South Kingston Avenue, Chicago, IL 60649*

Dear Mr. Elman:

As you are undoubtedly aware, your clients, Ventus Merrill LLC and Ventus
Holdings LLC, are unable to consummate the closings of the referenced properties on
the dates designated by the sellers pursuant to Paragraph 7 of the referenced Purchase
And Sale Agreements. Accordingly, the sellers are invoking a default under, and hereby
terminating, each of the contracts, reserving all rights to pursue the recovery of the
earnest money deposits.

Very truly yours,

Andrew Eliot Porter

EXHIBIT 9

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

___Pioneer Acquisitions LLC, or its nominee_____ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6949-59 South Merrill Avenue, Chicago, Illinois 60619 and legally described as follows:

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF THE NORTH 3/4 OF THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLNOIS.

Permanent Index No. 20-24-417-014-0000

\*       \*       \*

### *TERMS AND CONDITIONS*

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1. **Purchase Price**. The purchase price for the Property shall be $_1,520,000_____ (the  "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn. **May 30, 2020 - NH**

KBD

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to ten business days' advance Notice of the Closing Date.

8.      **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.  **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.  **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.  **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.  **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

  a.     *Current Rent Roll***.** A current rent roll for the Property generated by the management company.

  b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

  c.     *Leases*. Copies of all existing leases affecting the Property.

  d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

  e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

          *[None.]*

   d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> c/o Jay Goldberg

> 10 South LaSalle St., Ste. 2910

> Chicago, IL 60603

> jgoldberg@fieldandgoldberg.com

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*      *      *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this   6th   day of ~~April~~ May, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

**Buyer**

Pioneer Acquisitions LLC, or its nominee

43 Purchase St., 2nd Floor

Rye, NY 10580

(212) 588-8820

By: Nick Hollenkamp

Its: Authorized Agent

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH 6951 S MERRILL LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

**Acceptance Date:** 05/08/20

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## **RIDER A**

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*      *      *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

**RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*      \*      \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]_

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American
Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____  Expected Release Date: _____  Escrow Number: __2964570__

Property Address: __6949-59 South Merrill, Chicago, Illinois 60619_____

Deposit Amount: $ __152,000.00__  Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____  ☐ Tax Escrow   ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated.  In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | Kevin B. Duff, as Federal Equity Receiver |
|---|---|---|---|
| Signed: | _____ | Signed: | for SSPH 6951 S Merrill LLC |
| | | | _K. Duff_ |
| Print Name: | Nick Hellencamp | Print Name: | |
| Address: | Pioneer Acquisitions LLC | Address: | Rachlis Duff Peel & Kaplan LLC |
| | _____ | | 542 South Dearborn, Suite 900 |
| | 43 Purchase Street, 2nd Floor | | Chicago, Illinois 60605 |
| | Rye, New York 10580 | | _____ |
| Email: | _____ | Email: | kduff@rdaplaw.net |
| Primary Phone: | (212) 588-8820 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee        By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
*titleindemnity.warrenville.il@firstam.com*

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ____, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSPH 6951 S Merrill LLC

_____

**ASSIGNEE:**

*[TBD]*

By:_____

Name: _____

Title: _____

EXHIBIT 10



Doc# 1725729064 Fee $70.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/14/2017 12:14 PM PG: 1 OF 17

**AFTER RECORDING, RETURN TO:**
Prepared By',
Thorofare Capital, Inc.
633 W. Fifth Street, Suite 2200
Los Angeles, California 90071
Attention: Robert J. Cooper



**FIRST AMERICAN TITLE**
**FILE # 282310 7**
ACCOMODATION RECORDING

*SPACE ABOVE THIS LINE FOR RECORDER'S USE*

## AMENDMENTS TO MORTGAGES
## AND CROSS-COLLATERALIZATION AGREEMENT

THIS **AMENDMENTS TO MORTGAGES AND CROSS-COLLATERALIZATION AGREEMENT** (this "**Agreement**") is made as of the 21st day of July, 2017, by and among THOROFARE ASSET BASED LENDING REIT FUND IV, LLC, a Delaware limited liability company ("**Lender**"), SSPH 6951 S MERRILL LLC, an Illinois limited liability company ("**Merrill Borrower**") and 1700 JUNEWAY LLC, an Illinois limited liability company ("**Juneway Borrower**" and jointly, severally and collectively with Merrill Borrower, "**Borrower**").

### RECITALS

A.　Lender has made a loan to Juneway Borrower in the original principal amount of $2,175,000.00 (the "**Juneway Loan**"). The Juneway Loan is secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded in the Official Records of Cook County, Illinois as Instrument No. _____ (the "**Juneway Security Instrument**"), which encumbers the real property identified in **Exhibit A** attached hereto and other property included within the definition of "Property" in the Juneway Security Instrument and constituting or relating to the improvements located at 1700 Juneway Terrace, Chicago, Illinois (the "**Juneway Property**").

B.　Lender has also made a loan to Merrill Borrower in the original principal amount of $1,540,000.00 (the "**Merrill Loan**"). The Merrill Loan is secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded in the Official Records of Cook County, Illinois as Instrument No. _____ (the "**Merrill Security Instrument**"), which encumbers the real property identified in **Exhibit B** attached hereto and other property included

48179.150/4848-2577-8762.1

CCRD REVIEW _____

within the definition of "Property" in the Merrill Security Instrument and constituting or relating to the improvements located at 6949-59 South Merrill Avenue, Chicago, Illinois (the "**Merrill Property**"). The Merrill Loan and the Juneway Loan are referred to herein individually as a "**Loan**" and collectively as the "**Loans**". The Merrill Security Instrument and the Juneway Security Instrument are referred to herein individually as a "**Security Instrument**" and collectively as the "**Security Instruments**". The Merrill Property and the Juneway Property are referred to herein individually as a "**Mortgaged Property**" and collectively as the "**Mortgaged Properties**").

C. Borrower acknowledges that a condition of Lender making the Juneway Loan and the Merrill Loan is that the Merrill Property serve as collateral for the Juneway Loan and that the Juneway Property serve as collateral for the Merrill Loan (the "**Cross-Collateralization**") and that each of the Security Instruments be amended to provide for such Cross-Collateralization. Borrower is entering into this Agreement to satisfy such condition. Borrower further acknowledges that the benefits derived by Borrower from this Agreement are equivalent to the burdens imposed upon Borrower and each of the mortgaged Properties, notwithstanding that the Juneway Loan and Merrill Loan are of differing amounts.

## AGREEMENT

1. **Definitions.** For purposes of this Agreement (including the recitals above), the following terms will have the meanings indicated:

"**Enforcement Action**" means a judicial or non-judicial foreclosure of or trustee's sale under any Security Instrument, a deed in lieu of such foreclosure or sale, a sale of any of the Total Mortgaged Property pursuant to lawful order of a court of competent jurisdiction in a bankruptcy case filed under Title 11 of the United States Code, or any other similar disposition of any of the Total Mortgaged Property.

"**Event of Default**" is defined in Section 4.

"**Fraudulent Transfer Laws**" means Section 548 of Title 11 of the United States Code or any applicable provisions of comparable state law, including any provisions of the Uniform Fraudulent Conveyance Act or Uniform Fraudulent Transfer Act, as adopted under state law.

"**Juneway Indebtedness**" means the "Indebtedness" as defined in the Juneway Security Instrument, exclusive of any sums payable by Borrower solely by reason of this Agreement.

"**Juneway Loan Documents**" means the Loan Documents relating to the Juneway Loan.

"**Loan Documents**" means, with respect to each Loan, the "Loan Documents" as defined in the Security Instrument securing such Loan, and this Agreement.

"**Merrill Indebtedness**" means the "Indebtedness" as defined in the Merrill Security Instrument, exclusive of any sums payable by Borrower solely by reason of this Agreement.

"**Merrill Loan Documents**" means the Loan Documents relating to the Merrill Loan.

"**Total Indebtedness**" means the aggregate of the Juneway Indebtedness plus the Merrill Indebtedness.

"**Total Loan Documents**" means the Juneway Loan Documents and the Merrill Loan Documents.

"**Total Mortgaged Property**" means the aggregate of the Juneway Mortgaged Property and the Merrill Mortgaged Property.

2.    **Liability for Total Indebtedness; Integration of Obligations; Obligations Absolute**.

Borrower acknowledges and agrees that:

(a)    Juneway Borrower shall pay not only the Juneway Indebtedness pursuant to the Juneway Loan Documents but all of the Merrill Indebtedness, and Merrill Borrower shall pay not only the Merrill Indebtedness pursuant to the Merrill Loan Documents but all of the Juneway Indebtedness. Accordingly, Juneway Borrower and Merrill Borrower are jointly and severally liable for the payment of the Total Indebtedness.

(b)    Lender, at its option, may treat the Juneway Loan and the Merrill Loan as separate and independent obligations of such Borrower, or may treat both of the Loans, and all or any part of the Total Indebtedness as a single, integrated indebtedness of such Borrower.

(c)    No invalidity, irregularity or unenforceability of any portion of the Total Indebtedness will affect, impair or be a defense to the recovery by Lender of any other portion of the Total Indebtedness.

(d)    Juneway Borrower's obligation to pay the Merrill Indebtedness is independent, primary, and absolute, and will be performed without demand by Lender and is unconditional regardless of the genuineness, validity, regularity, or enforceability of any of the Merrill Loan Documents, and without regard to any circumstance, other than payment in full of the Merrill Indebtedness, which might otherwise constitute a legal or equitable discharge of a borrower, a mortgagor, a surety, or a guarantor.

(e)    Merrill Borrower's obligation to pay the Juneway's Indebtedness is independent, primary, and absolute, and will be performed without demand by Lender and is

unconditional regardless of the genuineness, validity, regularity, or enforceability of any of the Juneway Loan Documents, and without regard to any circumstance, other than payment in full of the Juneway Indebtedness, which might otherwise constitute a legal or equitable discharge of a borrower, a mortgagor, a surety, or a guarantor.

(f)     Borrower waives, to the fullest extent permitted by law, all rights to require Lender to proceed against any particular mortgaged Property or against any guarantor of any of the Total Indebtedness or to pursue any other right or remedy Lender may now or hereafter have against any collateral for any of the Total Indebtedness.

3.     **Amendments to Security Instruments; Security Instruments Secure Other Indebtedness.**

Borrower and Lender hereby acknowledge and agree as follows:

(a)     The Juneway Security Instrument secures the obligation to pay both the Juneway Indebtedness and the Merrill Indebtedness. The Juneway Security Instrument is hereby amended to provide that the Juneway Security Agreement secures the obligation of Borrower to pay the Merrill Indebtedness as well as the obligation of Borrower to pay the Juneway Indebtedness.

(b)     The Merrill Security Instrument secures the obligation to pay both the Merrill Indebtedness and the Juneway Indebtedness. The Merrill Security Instrument is hereby amended to provide that the Merrill Security Agreement secures the obligation of Borrower to pay the Juneway Indebtedness as well as the obligation of Borrower to pay the Merrill Indebtedness.

(c)     The Total Mortgaged Property secures the Total Indebtedness without apportionment or allocation of any Mortgaged Property or any portion of any Mortgaged Property (except that the Total Indebtedness may be apportioned among the Mortgaged Properties for the sole and limited purpose of determining the amount of transfer or recordation taxes or documentary stamps required in connection with recordation of this Agreement and the Security Instruments).

(d)     If Borrower fails to pay fully, when due, any amount payable to Lender under this Agreement or any Loan Document with respect to a particular Loan, then Lender may elect, in its discretion, to treat that amount as being due and owing by Borrower with respect to the other Loan; to enforce its rights and remedies against and collect such amounts from Borrower; and to recover such amounts from the value of each of the Mortgaged Properties, on a pro rata basis or otherwise, as determined by Lender in its discretion.

4.     **Events of Default.** Each of the following events will constitute an "Event of Default" under this Agreement:

      (a) Borrower defaults or breaches of any provision of this Agreement, and such default or breach continues for thirty (30) days after receipt of written notice thereof to Borrower from Lender.

      (b) Any event or condition occurs which constitutes an "Event of Default" under any of the Total Loan Documents.

5. **Amendments to Security Instruments; Cross-Defaults.** Borrower and Lender acknowledge and agree that each Security Instrument is hereby amended so that (i) this Agreement is a "Loan Document" as defined in each Security Instrument, (ii) any Event of Default under this Agreement will constitute an "Event of Default" under each Security Instrument, (iii) that any Event of Default under the Juneway Security Instrument constitutes an "Event of Default" under the Merrill Security Instrument, and (iv) that any Event of Default under the Merrill Security Instrument constitutes an "Event of Default" under the Juneway Security Instrument.

6. **Remedies.**

    (a) Upon the occurrence of an Event of Default, Lender, in its sole and absolute discretion, may exercise either or both of the following remedies, in such order and at such times as Lender may elect to:

        (i) Declare the Juneway Indebtedness, the Merrill Indebtedness and/or the Total Indebtedness immediately due and payable; and/or

        (ii) Exercise any or all of Lender's rights and remedies under this Agreement, any of the Total Loan Documents, or applicable law.

    (b) Lender may exercise its remedies in one or more proceedings, contemporaneously and/or consecutively, as Lender determines in its sole discretion. Lender may enforce its rights against one or both of the Mortgaged Properties or portions of Mortgaged Properties in the order and manner as it elects in its sole discretion. The enforcement of any one Security Instrument or any other of the Total Loan Documents will not constitute an election of remedies, and will not limit or preclude the enforcement of the other Security Instrument or any other of the Total Loan Documents, through one or more additional proceedings. Lender may bring any action or proceeding, including but not limited to judicial or non-judicial foreclosure proceedings, without regard to the fact that one or more other proceedings may have been commenced elsewhere with respect to the one or both the other Mortgaged Properties or any portion of them.

    (c) Borrower, for itself and for any and all Persons now or in the future holding or claiming any lien on, or security interest in, or other interest or right of any nature in or to any of the Mortgaged Properties, unconditionally and irrevocably waives any rights it may have, now or in the future, whether at law or in equity, to require

Lender to enforce or exercise any of Lender's rights or remedies under this Agreement, under any Security Instrument, or under any other of the Total Loan Documents, in any particular manner or order or in any particular state or county, or to apply the proceeds of any Enforcement Action in any particular manner or order.

(d)     No judgment obtained by Lender in any proceeding enforcing any of the Total Loan Documents will merge any of the Total Indebtedness into that judgment, and all Total Indebtedness that remains unpaid will remain a continuing obligation of Borrower. Notwithstanding any Enforcement Action with respect to any Security Instrument, Borrower will remain bound under this Agreement.

7.     **Application of Proceeds.** Lender may apply the proceeds of any Enforcement Action to the payment of the Total Indebtedness (including prepayment premiums, yield maintenance fees and/or exit fees) in such order as Lender may determine in Lender's sole discretion.

8.     **Adjustment of Obligations.**

(a)     If Borrower's obligation to pay the Juneway Indebtedness or the Merrill Indebtedness provided for in this Agreement or the other Loan Documents becomes subject to avoidance under any Fraudulent Transfer Law, then the Juneway Indebtedness or Merrill Indebtedness for which Borrower will be liable and the amount of the Indebtedness for which its Mortgaged Property will constitute security will be limited to the largest amount that would not be subject to avoidance as a fraudulent transfer or conveyance under such Fraudulent Transfer Law.

9.     **Borrowers' Rights of Subrogation.**

(a)     Until the Total Indebtedness has been paid in full and the maximum period thereafter during which any payment to Lender with respect to the Total Indebtedness could be deemed a preference under the Bankruptcy Code has expired, Borrower will have no right of, and Borrower waives any claim for, subrogation, contribution, reimbursement or indemnity (whether contractual, statutory, equitable, under common law or otherwise) and any other rights to enforce any claims or remedies which it has now or may have in the future against any other party or any Property or against any guarantor or security for any of the Total Indebtedness.

(b)     If Borrower's agreement under Section 9(a) is found by a court of competent jurisdiction to be void or voidable for any reason, any such rights such Borrower may have against any other party, any Mortgaged Property or any guarantor or security for the Total Indebtedness, will be subordinate to any rights Lender may have against the same.

10.     **Intentionally Omitted.**

11.     **Lender's Rights**. At any time and from time to time and without the consent of, or notice to, Borrower, without incurring liability to Borrower, and without impairing or releasing Borrower's liability for all or any part of the Total Indebtedness, Lender may take any of the following actions:

   (a)     Change the manner, place or terms of payment, or change or extend the time of payment of, or renew, increase, accelerate or alter, all or any part of the Total Indebtedness, any security for all or any part of the Total Indebtedness, or any liability incurred directly or indirectly with respect to all or any part of the Total Indebtedness.

   (b)     Take and hold security for the payment of the Juneway Indebtedness, the Merrill Indebtedness or Total Indebtedness, and sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property pledged or mortgaged to secure all or any part of the Total Indebtedness.

   (c)     Exercise or refrain from exercising any rights against Borrower or any of the Mortgaged Properties.

   (d)     Release or substitute any one or more endorsers, guarantors, or other obligors with respect to all or any part of the Total Indebtedness.

   (e)     Settle or compromise all or any part of the Total Indebtedness, or subordinate the payment of all or any part of the Total Indebtedness to the payment of any liability (whether due or not) of Borrower to its creditors other than Lender.

   (f)     Apply any sums realized to any liability or liabilities of Borrower or guarantor to Lender regardless of what liability or liabilities of Borrower or guarantor to Lender remain unpaid.

   (g)     Consent to or waive any breach by Borrower of, or any act, omission or default by Borrower under this Agreement or any of the Total Loan Documents.

12.     **Indemnification**. Borrower, on behalf of itself, its personal representatives, successors and assigns, indemnifies and holds harmless Lender, its successors and assigns and their respective controlling persons, directors, officers, agents, employees, contractors, subcontractors, and the personal representatives, successors and assigns of each of them ("**Indemnitees**") of and from any and all claims, debts, demands, rights, liabilities, actions and causes of action of whatsoever kind and nature, either direct or consequential, and all costs and expenses arising out of or relating thereto (including reasonable attorneys' fees and costs) which any person or entity has or may have against the Indemnitees, or any of them, on account of, or because of, the failure to pay in full all transfer, mortgage, recordation, documentary, or similar taxes, if any, or any portion thereof that may be due because of the making of the Loans, execution, delivery or

recordation of any of the Security Instruments and this Agreement or execution or delivery of any guaranty or otherwise arising out of the loan transactions and all interest, penalties and fines that may be or may become due, except to the extent any such claim, debt, demand, right, liability, action or cause of action or the costs and expenses arising out of or relating thereto arises out of the gross negligence or willful misconduct of any Indemnitee. The Indemnitees may, at the cost of Borrower, defend all claims made that are or may be covered by this Agreement unless Borrower retains counsel acceptable to the Indemnitees. This indemnification will survive payment of each of the Loans and release of any or all of the Security Instruments and this Agreement.

13.    **Waivers.**

(a)    With respect to its obligations under this Agreement and the Total Loan Documents, except as may be expressly set forth in the Total Loan Documents, Borrower waives presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting such obligations.

(b)    Notwithstanding the existence of any other security interests in any Mortgaged Property held by Lender or by any other party, Lender may determine in its discretion whether and the order in which any or all of the Total Mortgaged Property or portions thereof will be subjected to the remedies provided in this Agreement and the Total Loan Documents or applicable law. Lender may determine in Lender's discretion the order in which any or all portions of the Total Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a lien on or security interest or other interest in any of the Mortgaged Properties unconditionally and irrevocably waives any and all rights to require the marshalling of assets or to require that any of the Total Mortgaged Property or portions thereof be sold in the inverse order of alienation or in parcels or as an entirety in connection with the exercise of any such remedies.

15.    **Releases of the Mortgaged Properties.** Except as otherwise expressly provided in this Section 15 and notwithstanding anything to the contrary in any of the other Total Loan Documents, no Mortgaged Property shall be released from the lien of the applicable Security Instrument unless and until the Total Indebtedness is repaid in full. Notwithstanding the foregoing; Lender shall agree to cause a release of the lien of the Juneway Security Instrument or Merrill Security Instrument, as the case may be, pursuant to a release thereof on the following terms and conditions (each a "**Partial Release**"):

(a)    Borrower shall provide at least forty-five (45) days advance written notice of the request for the Partial Release (a "**Partial Release Notice**");

(b)    No Event of Default shall exist and no event or condition shall exist that, with the passage of time or giving of notice, would constitute an Event of Default;

(c) The applicable Mortgaged Property being released shall be (i) transferred to a third-party that is not an affiliate of Borrower pursuant to a bona-fide third party sale or (ii) refinanced with a third party lender that is not an affiliate of Borrower;

(d) In the case of a sale, the purchase agreement and all other documents relating to such sale are satisfactory to Lender, and Borrower shall have provided a copy of the full executed purchase agreement simultaneously with delivery of the Partial Release Request Notice;

(e) If requested by Lender, Lender shall receive an endorsement to the remaining title policy(s) confirming continued priority and such endorsement shall otherwise be in form and substance satisfactory to Lender;

(f) Borrower shall pay to Lender in immediately available funds a minimum release price equal to the following (the "**Partial Release Amount**"):

    (i) Two Million Five Hundred One Thousand Two Hundred Fifty and 00/100 Dollars ($2,501,250.00) for the release of the Juneway Security Instrument, or One Million Seven Hundred Seventy-One Thousand and 00/100 Dollars ($1,771,000.00) for the release of the Merrill Security Instrument; plus

    (ii) an amount such that the loan to value ratio of the Loan for the remaining Mortgaged Property (based upon Lender's then current valuation from an updated written appraisal prepared, at Borrower's cost, in conformance with the requirements of FIRREA and USPAP, as well as any other applicable rules and/or regulations from any and all applicable governmental authorities) is no more than sixty percent (60%) (if required by Lender, Borrower shall deposit funds with Lender promptly upon Lender's request for payment of such appraisal).

(g) In addition to the Partial Release Amount, Borrower shall pay to Lender in immediately available funds the Yield Protection Fee applicable to the principal being repaid in accordance the applicable Note, if applicable;

(h) In addition to the Partial Release Amount, Borrower shall pay to Lender in immediately available funds the Exit Fee applicable to the principal being repaid in accordance with the applicable Note (as defined in the applicable Security Instrument);

(i) Borrower shall pay all costs and expenses of Lender associated with such release, including but not limited to, recording and release costs and fees, reasonable attorneys' fees and costs (including fees and costs of internal counsel), title, and any other costs and expenses associated with evaluating or causing the partial release; and

(j)    Borrower shall satisfy all other of Lender's customary requirements for a partial release of collateral. .

16.    **Lender's Right to Terminate Agreement**.  At any time and for any reason, Lender may at its sole option elect to treat this Agreement as null and void with respect to one or more or both of the Mortgaged Properties (each a "**Terminated Property**" and collectively, the "**Terminated Properties**") and record in the Official Records a complete or partial termination of this Agreement evidencing Lender's election to treat this Agreement as null and void with respect to the Terminated Properties.  Borrower, at Lender's request, must join in any such termination or partial termination, and Borrower irrevocably appoints Lender as such Borrower's agent and attorney-in-fact to execute, deliver and record such termination or partial termination in such Borrower's name.  Following any such termination or partial termination of this Agreement, Lender may enforce the Security Instruments and other Loan Documents in accordance with their respective terms as if this Agreement had never been executed and delivered as to any Terminated Properties.

17.    **Notices**.  All notices to Borrower or Lender under this Agreement must be given in accordance with the provisions in the Security Instruments.

18.    **Governing Law; Jurisdiction and Venue.**  This Agreement will be governed by and construed in accordance with the laws of the State of Illinois.  Each of the Borrowers submits to the *in personam* jurisdiction of any federal or state court in Cook County, Illinois with respect to any proceeding arising out of or relating to this Agreement.  Each of the Borrowers irrevocably waives, to the fullest extent permitted under applicable law, any objections such Borrower may now or hereafter have to the venue of any suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.  Borrower acknowledges that it has received material and substantial consideration for the Cross-Collateralization and that the foregoing venue provision is integral to Lender's realization of its rights hereunder. Borrower further acknowledges that it is not in a disparate bargaining position, that it is a commercial enterprise, with sophisticated financial, legal and economic experience, and that the venue selections contained herein are not unreasonable, unjust, inconvenient or overreaching.

19.    **Captions, Cross References and Exhibits.**  The captions assigned to provisions of this Agreement are for convenience only and will be disregarded in construing this Agreement.  Any reference in this Agreement to a "Section," a "Subsection," or an "Exhibit" will, unless otherwise explicitly provided, be construed as referring to a section of this Agreement, to a subsection of the section of this Agreement in which the reference appears or to an Exhibit attached to this Agreement.  All Exhibits referred to in this Agreement are incorporated by reference.

20.    **Number and Gender.**  Use of the singular in this Agreement includes the plural, use of the plural includes the singular, and use of one gender includes all other genders, as the context may require.

21.    **Statutes and Regulations.**  Any reference in this Agreement to a statute or regulation will include all amendments to and successors to such statute or regulation, whether adopted before or after the date of this Agreement.

22.    **No Partnership.**  This Agreement is not intended to, and will not, create a partnership or joint venture among the parties, and no party to this Agreement will have the power or authority to bind any other party except as explicitly provided in this Agreement.

23.    **Successors and Assigns.**  This Agreement will be binding upon and will inure to the benefit of the parties and their respective heirs, successors, and permitted assigns.

24.    **Severability.**  The invalidity or unenforceability of any provision of this Agreement will not affect the validity of any other provision, and all other provisions will remain in full force and effect.

25.    **Entire Agreement.**  This Agreement, together with the promissory note, Security Instrument and Loan Documents relating to each Loan, contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Agreement. To the extent this Agreement conflicts with the terms of other Loan Documents, this Agreement will govern and control.

26.    **Waiver; No Remedy Exclusive.**  Any forbearance by a party to this Agreement in exercising any right or remedy given under this Agreement or existing at law or in equity will not constitute a waiver of or preclude the exercise of that or any other right or remedy. Unless otherwise explicitly provided, no remedy under this Agreement is intended to be exclusive of any other available remedy, but each remedy will be cumulative and will be in addition to other remedies given under this Agreement or existing at law or in equity.

27.    **Third Party Beneficiaries.**  No creditor of any party to this Agreement, nor any other person, is intended to be a third party beneficiary of this Agreement.

28.    **Course of Dealing.**  No course of dealing among the parties to this Agreement will operate as a waiver of any rights of any party under this Agreement.

29.    **Further Assurances and Corrective Instruments.**  To the extent permitted by law, the parties will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements to this Agreement and such further instruments as may reasonably be required for carrying out the intention of or facilitating the performance of this Agreement.

30.    **No Party Deemed Drafter.**  No party will be deemed the drafter of this Agreement, and this Agreement may not be construed against either party as the drafter of the Agreement.

31.    **WAIVER OF TRIAL BY JURY. BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH**

**RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT THAT IS TRIABLE OF RIGHT BY A JURY, AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

32.   **Counterparts.** This Agreement may be executed in multiple counterparts, each of which will constitute an original document and all of which together will constitute one agreement.

IN WITNESS WHEREOF, the undersigned have signed and delivered this Agreement as of the date first set forth above.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES ON FOLLOWING PAGES]**

IN WITNESS WHEREOF, Borrower and Lender have duly executed and delivered this Agreement as of the day and year first above written.

**JUNEWAY BORROWER**:

1700 JUNEWAY LLC,
an Illinois limited liability company

By:     Offsite Asset Management LLC,
        a Delaware limited liability company
        its Manager

By: _____
        Jerome H. Cohen, Manager

**MERRILL BORROWER**:

SSPH 6951 S MERRILL LLC,
an Illinois limited liability company

By:     SSPH Holdco 1 LLC,
        a Delaware limited liability company
        its Managing Member

        By:     South Shore Property Holdings LLC
                a Delaware limited liability company
                its Managing Member

By: _____
        Jerome H. Cohen, Manager

STATE OF ~~ILLINOIS~~ Florida        )

                               )

COUNTY OF Manatee       )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT Jerome Cohen , as Manager of SSPH 6951 S. Merrill , an IL LLC , personally known to me or proved to me on the basis of satisfactory evidence to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act, and as a free and voluntary act of said company, for the uses and purposes therein set forth.

Given under my hand and Notarial seal this 19 day of June , 20 17 .

Print Name: Jessica Ann Baier
Notary Public
Commission Expiration: July 26, 2017

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153    FloridaNotaryService.com

(Seal)

**LENDER:**

**THOROFARE ASSET BASED LENDING REIT FUND IV, LLC,**
a Delaware limited liability company

By: _____

Name: _Christopher Vago_

Title: _Authorized Signatory_

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On June 23, 2017, before me, Sarah Kathleen Henehan, Notary Public, personally appeared Christopher Vago, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

SARAH KATHLEEN HENEHAN
Commission # 2137613
Notary Public - California
Los Angeles County
My Comm. Expires Dec 20, 2019

15

## EXHIBIT A

### LEGAL DESCRIPTION OF JUNEWAY PROPERTY

THE WEST 22 FEET OF LOT 6 AND ALL OF LOTS 7 AND 8 AND THE EAST 22 FEET OF LOT 9 IN BLOCK 2 IN DAVID P. O'LEARY'S SUBDIVISION OF PART OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 30, TOWNSHIP 41 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Property Address:

1700 W. Juneway Terrace, Chicago, Illinois

## EXHIBIT B

## LEGAL DESCRIPTION OF MERRILL PROPERTY

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF NORTH 3/4 OF WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

Property Address:          6949-59 South Merrill Avenue, Chicago, Illinois

# COOK COUNTY
# RECORDER OF DEEDS

EXHIBIT 11



Doc# 1725729064 Fee $70.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/14/2017 12:14 PM PG: 1 OF 17

**AFTER RECORDING, RETURN TO:**
Prepared By,
Thorofare Capital, Inc.
633 W. Fifth Street, Suite 2200
Los Angeles, California 90071
Attention: Robert J. Cooper



**FIRST AMERICAN TITLE**
**FILE # 282310**
**5 of 6 ACCOMODATION RECORDING**

*SPACE ABOVE THIS LINE FOR RECORDER'S USE*

## AMENDMENTS TO MORTGAGES
## AND CROSS-COLLATERALIZATION AGREEMENT

THIS **AMENDMENTS TO MORTGAGES AND CROSS-COLLATERALIZATION AGREEMENT** (this "**Agreement**") is made as of the 21st day of July, 2017, by and among THOROFARE ASSET BASED LENDING REIT FUND IV, LLC, a Delaware limited liability company ("**Lender**"), SSPH 6951 S MERRILL LLC, an Illinois limited liability company ("**Merrill Borrower**") and 1700 JUNEWAY LLC, an Illinois limited liability company ("**Juneway Borrower**" and jointly, severally and collectively with Merrill Borrower, "**Borrower**").

### RECITALS

A.     Lender has made a loan to Juneway Borrower in the original principal amount of $2,175,000.00 (the "**Juneway Loan**"). The Juneway Loan is secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded in the Official Records of Cook County, Illinois as Instrument No. _____ (the "**Juneway Security Instrument**"), which encumbers the real property identified in **Exhibit A** attached hereto and other property included within the definition of "Property" in the Juneway Security Instrument and constituting or relating to the improvements located at 1700 Juneway Terrace, Chicago, Illinois (the "**Juneway Property**").

B.     Lender has also made a loan to Merrill Borrower in the original principal amount of $1,540,000.00 (the "**Merrill Loan**"). The Merrill Loan is secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded in the Official Records of Cook County, Illinois as Instrument No. _____ (the "**Merrill Security Instrument**"), which encumbers the real property identified in **Exhibit B** attached hereto and other property included

CCRD REVIEW

within the definition of "Property" in the Merrill Security Instrument and constituting or relating to the improvements located at 6949-59 South Merrill Avenue, Chicago, Illinois (the "**Merrill Property**"). The Merrill Loan and the Juneway Loan are referred to herein individually as a "**Loan**" and collectively as the "**Loans**". The Merrill Security Instrument and the Juneway Security Instrument are referred to herein individually as a "**Security Instrument**" and collectively as the "**Security Instruments**". The Merrill Property and the Juneway Property are referred to herein individually as a "**Mortgaged Property**" and collectively as the "**Mortgaged Properties**").

C.      Borrower acknowledges that a condition of Lender making the Juneway Loan and the Merrill Loan is that the Merrill Property serve as collateral for the Juneway Loan and that the Juneway Property serve as collateral for the Merrill Loan (the "**Cross-Collateralization**") and that each of the Security Instruments be amended to provide for such Cross-Collateralization. Borrower is entering into this Agreement to satisfy such condition. Borrower further acknowledges that the benefits derived by Borrower from this Agreement are equivalent to the burdens imposed upon Borrower and each of the mortgaged Properties, notwithstanding that the Juneway Loan and Merrill Loan are of differing amounts.

## AGREEMENT

1.      **Definitions.** For purposes of this Agreement (including the recitals above), the following terms will have the meanings indicated:

"**Enforcement Action**" means a judicial or non-judicial foreclosure of or trustee's sale under any Security Instrument, a deed in lieu of such foreclosure or sale, a sale of any of the Total Mortgaged Property pursuant to lawful order of a court of competent jurisdiction in a bankruptcy case filed under Title 11 of the United States Code, or any other similar disposition of any of the Total Mortgaged Property.

"**Event of Default**" is defined in Section 4.

"**Fraudulent Transfer Laws**" means Section 548 of Title 11 of the United States Code or any applicable provisions of comparable state law, including any provisions of the Uniform Fraudulent Conveyance Act or Uniform Fraudulent Transfer Act, as adopted under state law.

"**Juneway Indebtedness**" means the "Indebtedness" as defined in the Juneway Security Instrument, exclusive of any sums payable by Borrower solely by reason of this Agreement.

"**Juneway Loan Documents**" means the Loan Documents relating to the Juneway Loan.

"**Loan Documents**" means, with respect to each Loan, the "Loan Documents" as defined in the Security Instrument securing such Loan, and this Agreement.

"**Merrill Indebtedness**" means the "Indebtedness" as defined in the Merrill Security Instrument, exclusive of any sums payable by Borrower solely by reason of this Agreement.

"**Merrill Loan Documents**" means the Loan Documents relating to the Merrill Loan.

"**Total Indebtedness**" means the aggregate of the Juneway Indebtedness plus the Merrill Indebtedness.

"**Total Loan Documents**" means the Juneway Loan Documents and the Merrill Loan Documents.

"**Total Mortgaged Property**" means the aggregate of the Juneway Mortgaged Property and the Merrill Mortgaged Property.

2.    **Liability for Total Indebtedness; Integration of Obligations; Obligations Absolute**.

Borrower acknowledges and agrees that:

(a)    Juneway Borrower shall pay not only the Juneway Indebtedness pursuant to the Juneway Loan Documents but all of the Merrill Indebtedness, and Merrill Borrower shall pay not only the Merrill Indebtedness pursuant to the Merrill Loan Documents but all of the Juneway Indebtedness. Accordingly, Juneway Borrower and Merrill Borrower are jointly and severally liable for the payment of the Total Indebtedness.

(b)    Lender, at its option, may treat the Juneway Loan and the Merrill Loan as separate and independent obligations of such Borrower, or may treat both of the Loans, and all or any part of the Total Indebtedness as a single, integrated indebtedness of such Borrower.

(c)    No invalidity, irregularity or unenforceability of any portion of the Total Indebtedness will affect, impair or be a defense to the recovery by Lender of any other portion of the Total Indebtedness.

(d)    Juneway Borrower's obligation to pay the Merrill Indebtedness is independent, primary, and absolute, and will be performed without demand by Lender and is unconditional regardless of the genuineness, validity, regularity, or enforceability of any of the Merrill Loan Documents, and without regard to any circumstance, other than payment in full of the Merrill Indebtedness, which might otherwise constitute a legal or equitable discharge of a borrower, a mortgagor, a surety, or a guarantor.

(e)    Merrill Borrower's obligation to pay the Juneway's Indebtedness is independent, primary, and absolute, and will be performed without demand by Lender and is

unconditional regardless of the genuineness, validity, regularity, or enforceability of any of the Juneway Loan Documents, and without regard to any circumstance, other than payment in full of the Juneway Indebtedness, which might otherwise constitute a legal or equitable discharge of a borrower, a mortgagor, a surety, or a guarantor.

(f)     Borrower waives, to the fullest extent permitted by law, all rights to require Lender to proceed against any particular mortgaged Property or against any guarantor of any of the Total Indebtedness or to pursue any other right or remedy Lender may now or hereafter have against any collateral for any of the Total Indebtedness.

3.      **Amendments to Security Instruments; Security Instruments Secure Other Indebtedness.**

Borrower and Lender hereby acknowledge and agree as follows:

(a)     The Juneway Security Instrument secures the obligation to pay both the Juneway Indebtedness and the Merrill Indebtedness. The Juneway Security Instrument is hereby amended to provide that the Juneway Security Agreement secures the obligation of Borrower to pay the Merrill Indebtedness as well as the obligation of Borrower to pay the Juneway Indebtedness.

(b)     The Merrill Security Instrument secures the obligation to pay both the Merrill Indebtedness and the Juneway Indebtedness. The Merrill Security Instrument is hereby amended to provide that the Merrill Security Agreement secures the obligation of Borrower to pay the Juneway Indebtedness as well as the obligation of Borrower to pay the Merrill Indebtedness.

(c)     The Total Mortgaged Property secures the Total Indebtedness without apportionment or allocation of any Mortgaged Property or any portion of any Mortgaged Property (except that the Total Indebtedness may be apportioned among the Mortgaged Properties for the sole and limited purpose of determining the amount of transfer or recordation taxes or documentary stamps required in connection with recordation of this Agreement and the Security Instruments).

(d)     If Borrower fails to pay fully, when due, any amount payable to Lender under this Agreement or any Loan Document with respect to a particular Loan, then Lender may elect, in its discretion, to treat that amount as being due and owing by Borrower with respect to the other Loan; to enforce its rights and remedies against and collect such amounts from Borrower; and to recover such amounts from the value of each of the Mortgaged Properties, on a pro rata basis or otherwise, as determined by Lender in its discretion.

4.      **Events of Default.** Each of the following events will constitute an "Event of Default" under this Agreement:

(a) Borrower defaults or breaches of any provision of this Agreement, and such default or breach continues for thirty (30) days after receipt of written notice thereof to Borrower from Lender.

(b) Any event or condition occurs which constitutes an "Event of Default" under any of the Total Loan Documents.

5. **Amendments to Security Instruments; Cross-Defaults.** Borrower and Lender acknowledge and agree that each Security Instrument is hereby amended so that (i) this Agreement is a "Loan Document" as defined in each Security Instrument, (ii) any Event of Default under this Agreement will constitute an "Event of Default" under each Security Instrument, (iii) that any Event of Default under the Juneway Security Instrument constitutes an "Event of Default" under the Merrill Security Instrument, and (iv) that any Event of Default under the Merrill Security Instrument constitutes an "Event of Default" under the Juneway Security Instrument.

6. **Remedies.**

(a) Upon the occurrence of an Event of Default, Lender, in its sole and absolute discretion, may exercise either or both of the following remedies, in such order and at such times as Lender may elect to:

(i) Declare the Juneway Indebtedness, the Merrill Indebtedness and/or the Total Indebtedness immediately due and payable; and/or

(ii) Exercise any or all of Lender's rights and remedies under this Agreement, any of the Total Loan Documents, or applicable law.

(b) Lender may exercise its remedies in one or more proceedings, contemporaneously and/or consecutively, as Lender determines in its sole discretion. Lender may enforce its rights against one or both of the Mortgaged Properties or portions of Mortgaged Properties in the order and manner as it elects in its sole discretion. The enforcement of any one Security Instrument or any other of the Total Loan Documents will not constitute an election of remedies, and will not limit or preclude the enforcement of the other Security Instrument or any other of the Total Loan Documents, through one or more additional proceedings. Lender may bring any action or proceeding, including but not limited to judicial or non-judicial foreclosure proceedings, without regard to the fact that one or more other proceedings may have been commenced elsewhere with respect to the one or both the other Mortgaged Properties or any portion of them.

(c) Borrower, for itself and for any and all Persons now or in the future holding or claiming any lien on, or security interest in, or other interest or right of any nature in or to any of the Mortgaged Properties, unconditionally and irrevocably waives any rights it may have, now or in the future, whether at law or in equity, to require

Lender to enforce or exercise any of Lender's rights or remedies under this Agreement, under any Security Instrument, or under any other of the Total Loan Documents, in any particular manner or order or in any particular state or county, or to apply the proceeds of any Enforcement Action in any particular manner or order.

(d) No judgment obtained by Lender in any proceeding enforcing any of the Total Loan Documents will merge any of the Total Indebtedness into that judgment, and all Total Indebtedness that remains unpaid will remain a continuing obligation of Borrower. Notwithstanding any Enforcement Action with respect to any Security Instrument, Borrower will remain bound under this Agreement.

7. **Application of Proceeds.** Lender may apply the proceeds of any Enforcement Action to the payment of the Total Indebtedness (including prepayment premiums, yield maintenance fees and/or exit fees) in such order as Lender may determine in Lender's sole discretion.

8. **Adjustment of Obligations.**

(a) If Borrower's obligation to pay the Juneway Indebtedness or the Merrill Indebtedness provided for in this Agreement or the other Loan Documents becomes subject to avoidance under any Fraudulent Transfer Law, then the Juneway Indebtedness or Merrill Indebtedness for which Borrower will be liable and the amount of the Indebtedness for which its Mortgaged Property will constitute security will be limited to the largest amount that would not be subject to avoidance as a fraudulent transfer or conveyance under such Fraudulent Transfer Law.

9. **Borrowers' Rights of Subrogation.**

(a) Until the Total Indebtedness has been paid in full and the maximum period thereafter during which any payment to Lender with respect to the Total Indebtedness could be deemed a preference under the Bankruptcy Code has expired, Borrower will have no right of, and Borrower waives any claim for, subrogation, contribution, reimbursement or indemnity (whether contractual, statutory, equitable, under common law or otherwise) and any other rights to enforce any claims or remedies which it has now or may have in the future against any other party or any Property or against any guarantor or security for any of the Total Indebtedness.

(b) If Borrower's agreement under Section 9(a) is found by a court of competent jurisdiction to be void or voidable for any reason, any such rights such Borrower may have against any other party, any Mortgaged Property or any guarantor or security for the Total Indebtedness, will be subordinate to any rights Lender may have against the same.

10. **Intentionally Omitted.**

11. **Lender's Rights**. At any time and from time to time and without the consent of, or notice to, Borrower, without incurring liability to Borrower, and without impairing or releasing Borrower's liability for all or any part of the Total Indebtedness, Lender may take any of the following actions:

    (a)    Change the manner, place or terms of payment, or change or extend the time of payment of, or renew, increase, accelerate or alter, all or any part of the Total Indebtedness, any security for all or any part of the Total Indebtedness, or any liability incurred directly or indirectly with respect to all or any part of the Total Indebtedness.

    (b)    Take and hold security for the payment of the Juneway Indebtedness, the Merrill Indebtedness or Total Indebtedness, and sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order any property pledged or mortgaged to secure all or any part of the Total Indebtedness.

    (c)    Exercise or refrain from exercising any rights against Borrower or any of the Mortgaged Properties.

    (d)    Release or substitute any one or more endorsers, guarantors, or other obligors with respect to all or any part of the Total Indebtedness.

    (e)    Settle or compromise all or any part of the Total Indebtedness, or subordinate the payment of all or any part of the Total Indebtedness to the payment of any liability (whether due or not) of Borrower to its creditors other than Lender.

    (f)    Apply any sums realized to any liability or liabilities of Borrower or guarantor to Lender regardless of what liability or liabilities of Borrower or guarantor to Lender remain unpaid.

    (g)    Consent to or waive any breach by Borrower of, or any act, omission or default by Borrower under this Agreement or any of the Total Loan Documents.

12. **Indemnification**. Borrower, on behalf of itself, its personal representatives, successors and assigns, indemnifies and holds harmless Lender, its successors and assigns and their respective controlling persons, directors, officers, agents, employees, contractors, subcontractors, and the personal representatives, successors and assigns of each of them ("**Indemnitees**") of and from any and all claims, debts, demands, rights, liabilities, actions and causes of action of whatsoever kind and nature, either direct or consequential, and all costs and expenses arising out of or relating thereto (including reasonable attorneys' fees and costs) which any person or entity has or may have against the Indemnitees, or any of them, on account of, or because of, the failure to pay in full all transfer, mortgage, recordation, documentary, or similar taxes, if any, or any portion thereof that may be due because of the making of the Loans, execution, delivery or

.recordation of any of the Security Instruments and this Agreement or execution or delivery of any guaranty or otherwise arising out of the loan transactions and all interest, penalties and fines that may be or may become due, except to the extent any such claim, debt, demand, right, liability, action or cause of action or the costs and expenses arising out of or relating thereto arises out of the gross negligence or willful misconduct of any Indemnitee. The Indemnitees may, at the cost of Borrower, defend all claims made that are or may be covered by this Agreement unless Borrower retains counsel acceptable to the Indemnitees. This indemnification will survive payment of each of the Loans and release of any or all of the Security Instruments and this Agreement.

13.    **Waivers.**

(a)    With respect to its obligations under this Agreement and the Total Loan Documents, except as may be expressly set forth in the Total Loan Documents, Borrower waives presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting such obligations.

(b)    Notwithstanding the existence of any other security interests in any Mortgaged Property held by Lender or by any other party, Lender may determine in its discretion whether and the order in which any or all of the Total Mortgaged Property or portions thereof will be subjected to the remedies provided in this Agreement and the Total Loan Documents or applicable law.   Lender may determine in Lender's discretion the order in which any or all portions of the Total Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies.  Borrower and any party who now or in the future acquires a lien on or security interest or other interest in any of the Mortgaged Properties unconditionally and irrevocably waives any and all rights to require the marshalling of assets or to require that any of the Total Mortgaged Property or portions thereof be sold in the inverse order of alienation or in parcels or as an entirety in connection with the exercise of any such remedies.

15.    **Releases of the Mortgaged Properties.**  Except as otherwise expressly provided in this Section 15 and notwithstanding anything to the contrary in any of the other Total Loan Documents, no Mortgaged Property shall be released from the lien of the applicable Security Instrument unless and until the Total Indebtedness is repaid in full. Notwithstanding the foregoing; Lender shall agree to cause a release of the lien of the Juneway Security Instrument or Merrill Security Instrument, as the case may be, pursuant to a release thereof on the following terms and conditions (each a "**Partial Release**"):

(a)    Borrower shall provide at least forty-five (45) days advance written notice of the request for the Partial Release (a "**Partial Release Notice**");

(b)    No Event of Default shall exist and no event or condition shall exist that, with the passage of time or giving of notice, would constitute an Event of Default;

(c)    The applicable Mortgaged Property being released shall be (i) transferred to a third-party that is not an affiliate of Borrower pursuant to a bona-fide third party sale or (ii) refinanced with a third party lender that is not an affiliate of Borrower;

(d)    In the case of a sale, the purchase agreement and all other documents relating to such sale are satisfactory to Lender, and Borrower shall have provided a copy of the full executed purchase agreement simultaneously with delivery of the Partial Release Request Notice;

(e)    If requested by Lender, Lender shall receive an endorsement to the remaining title policy(s) confirming continued priority and such endorsement shall otherwise be in form and substance satisfactory to Lender;

(f)    Borrower shall pay to Lender in immediately available funds a minimum release price equal to the following (the "**Partial Release Amount**"):

    (i)    Two Million Five Hundred One Thousand Two Hundred Fifty and 00/100 Dollars ($2,501,250.00) for the release of the Juneway Security Instrument, or One Million Seven Hundred Seventy-One Thousand and 00/100 Dollars ($1,771,000.00) for the release of the Merrill Security Instrument; plus

    (ii)    an amount such that the loan to value ratio of the Loan for the remaining Mortgaged Property (based upon Lender's then current valuation from an updated written appraisal prepared, at Borrower's cost, in conformance with the requirements of FIRREA and USPAP, as well as any other applicable rules and/or regulations from any and all applicable governmental authorities) is no more than sixty percent (60%) (if required by Lender, Borrower shall deposit funds with Lender promptly upon Lender's request for payment of such appraisal).

(g)    In addition to the Partial Release Amount, Borrower shall pay to Lender in immediately available funds the Yield Protection Fee applicable to the principal being repaid in accordance the applicable Note, if applicable;

(h)    In addition to the Partial Release Amount, Borrower shall pay to Lender in immediately available funds the Exit Fee applicable to the principal being repaid in accordance with the applicable Note (as defined in the applicable Security Instrument);

(i)    Borrower shall pay all costs and expenses of Lender associated with such release, including but not limited to, recording and release costs and fees, reasonable attorneys' fees and costs (including fees and costs of internal counsel), title, and any other costs and expenses associated with evaluating or causing the partial release; and

(j) Borrower shall satisfy all other of Lender's customary requirements for a partial release of collateral. .

**16.** **Lender's Right to Terminate Agreement**.  At any time and for any reason, Lender may at its sole option elect to treat this Agreement as null and void with respect to one or more or both of the Mortgaged Properties (each a "**Terminated Property**" and collectively, the "**Terminated Properties**") and record in the Official Records a complete or partial termination of this Agreement evidencing Lender's election to treat this Agreement as null and void with respect to the Terminated Properties. Borrower, at Lender's request, must join in any such termination or partial termination, and Borrower irrevocably appoints Lender as such Borrower's agent and attorney-in-fact to execute, deliver and record such termination or partial termination in such Borrower's name. Following any such termination or partial termination of this Agreement, Lender may enforce the Security Instruments and other Loan Documents in accordance with their respective terms as if this Agreement had never been executed and delivered as to any Terminated Properties.

**17.** **Notices**.  All notices to Borrower or Lender under this Agreement must be given in accordance with the provisions in the Security Instruments.

**18.** **Governing Law; Jurisdiction and Venue.**  This Agreement will be governed by and construed in accordance with the laws of the State of Illinois. Each of the Borrowers submits to the *in personam* jurisdiction of any federal or state court in Cook County, Illinois with respect to any proceeding arising out of or relating to this Agreement. Each of the Borrowers irrevocably waives, to the fullest extent permitted under applicable law, any objections such Borrower may now or hereafter have to the venue of any suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. Borrower acknowledges that it has received material and substantial consideration for the Cross-Collateralization and that the foregoing venue provision is integral to Lender's realization of its rights hereunder. Borrower further acknowledges that it is not in a disparate bargaining position, that it is a commercial enterprise, with sophisticated financial, legal and economic experience, and that the venue selections contained herein are not unreasonable, unjust, inconvenient or overreaching.

**19.** **Captions, Cross References and Exhibits.**  The captions assigned to provisions of this Agreement are for convenience only and will be disregarded in construing this Agreement.  Any reference in this Agreement to a "Section," a "Subsection," or an "Exhibit" will, unless otherwise explicitly provided, be construed as referring to a section of this Agreement, to a subsection of the section of this Agreement in which the reference appears or to an Exhibit attached to this Agreement.  All Exhibits referred to in this Agreement are incorporated by reference.

**20.** **Number and Gender.**  Use of the singular in this Agreement includes the plural, use of the plural includes the singular, and use of one gender includes all other genders, as the context may require.

21.   **Statutes and Regulations.** Any reference in this Agreement to a statute or regulation will include all amendments to and successors to such statute or regulation, whether adopted before or after the date of this Agreement.

22.   **No Partnership.** This Agreement is not intended to, and will not, create a partnership or joint venture among the parties, and no party to this Agreement will have the power or authority to bind any other party except as explicitly provided in this Agreement.

23.   **Successors and Assigns.** This Agreement will be binding upon and will inure to the benefit of the parties and their respective heirs, successors, and permitted assigns.

24.   **Severability.** The invalidity or unenforceability of any provision of this Agreement will not affect the validity of any other provision, and all other provisions will remain in full force and effect.

25.   **Entire Agreement.** This Agreement, together with the promissory note, Security Instrument and Loan Documents relating to each Loan, contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Agreement. To the extent this Agreement conflicts with the terms of other Loan Documents, this Agreement will govern and control.

26.   **Waiver; No Remedy Exclusive.** Any forbearance by a party to this Agreement in exercising any right or remedy given under this Agreement or existing at law or in equity will not constitute a waiver of or preclude the exercise of that or any other right or remedy. Unless otherwise explicitly provided, no remedy under this Agreement is intended to be exclusive of any other available remedy, but each remedy will be cumulative and will be in addition to other remedies given under this Agreement or existing at law or in equity.

27.   **Third Party Beneficiaries.** No creditor of any party to this Agreement, nor any other person, is intended to be a third party beneficiary of this Agreement.

28.   **Course of Dealing.** No course of dealing among the parties to this Agreement will operate as a waiver of any rights of any party under this Agreement.

29.   **Further Assurances and Corrective Instruments.** To the extent permitted by law, the parties will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements to this Agreement and such further instruments as may reasonably be required for carrying out the intention of or facilitating the performance of this Agreement.

30.   **No Party Deemed Drafter.** No party will be deemed the drafter of this Agreement, and this Agreement may not be construed against either party as the drafter of the Agreement.

31.   **WAIVER OF TRIAL BY JURY. BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH**

RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT THAT IS TRIABLE OF RIGHT BY A JURY, AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

32. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which will constitute an original document and all of which together will constitute one agreement.

IN WITNESS WHEREOF, the undersigned have signed and delivered this Agreement as of the date first set forth above.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURES ON FOLLOWING PAGES]**

IN WITNESS WHEREOF, Borrower and Lender have duly executed and delivered this Agreement as of the day and year first above written.

**JUNEWAY BORROWER:**

1700 JUNEWAY LLC,
an Illinois limited liability company

By:    Offsite Asset Management LLC,
        a Delaware limited liability company
        its Manager

By: _____
      Jerome H. Cohen, Manager

**MERRILL BORROWER:**

SSPH 6951 S MERRILL LLC,
an Illinois limited liability company

By:    SSPH Holdco 1 LLC,
        a Delaware limited liability company
        its Managing Member

      By:    South Shore Property Holdings LLC
           a Delaware limited liability company
           its Managing Member

      By: _____
          Jerome H. Cohen, Manager

STATE OF ~~ILLINOIS~~ Florida   )
         )
COUNTY OF manatee   )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT  Jerome Cohen , as  manager  of SSPH 6951 S. Merrill , an IL LLC , personally known to me or proved to me on the basis of satisfactory evidence to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act, and as a free and voluntary act of said company, for the uses and purposes therein set forth.

Given under my hand and Notarial seal this 19 day of June , 20 17 .


Jessica Ann Baier
Print Name: Jessica Ann Baier
Notary Public
Commission Expiration: July 26, 2017

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153 FloridaNotaryService.com

(Seal)

**LENDER:**

**THOROFARE ASSET BASED LENDING REIT FUND IV, LLC,**
a Delaware limited liability company

By: _____

Name: _Christopher Vago_

Title: _Authorized Signatory_

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On June 23, 2017, before me, Sarah Kathleen Henehan, Notary Public, personally appeared Christopher Vago, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____



SARAH KATHLEEN HENEHAN
Commission # 2137613
Notary Public - California
Los Angeles County
My Comm. Expires Dec 20, 2019

15

## EXHIBIT A

### LEGAL DESCRIPTION OF JUNEWAY PROPERTY

THE WEST 22 FEET OF LOT 6 AND ALL OF LOTS 7 AND 8 AND THE EAST 22 FEET OF LOT 9 IN BLOCK 2 IN DAVID P. O'LEARY'S SUBDIVISION OF PART OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 30, TOWNSHIP 41 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Property Address:

1700 W. Juneway Terrace, Chicago, Illinois

**EXHIBIT B**

**LEGAL DESCRIPTION OF MERRILL PROPERTY**

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF NORTH 3/4
OF WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14
EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

Property Address:          6949-59 South Merrill Avenue, Chicago, Illinois

# COOK COUNTY
# RECORDER OF DEEDS

EXHIBIT 12

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS

*1725729065*

Doc# 1725729065 Fee $48.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 09/14/2017 12:14 PM PG: 1 OF 6

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Thorofare Capital, Inc.
633 W. Fifth Street, Suite 2200
Los Angeles, California 90071
Attention: Robert J. Cooper

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SSPH 6951 S MERRILL LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 180 N. Stetson Unit 3500 | Chicago | IL | 60601 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name, do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| THOROFARE ASSET BASED LENDING REIT FUND IV, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 633 W. Fifth Street, Suite 2200 | Los Angeles | CA | 90071 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Addenda (Addendum Exhibit A, personal property collateral and Addendum Exhibit B, location of personal property collateral) attached hereto and made a part hereof by this reference.

FIRST AMERICAN TITLE
FILE # 282310 2

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

CCRD REVIEW

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**SSPH 6951 S MERRILL LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

## UCC FINANCING STATEMENT
### SCHEDULE 1

**Debtor**:         SSPH 6951 S MERRILL LLC
**Secured Party**:  Thorofare Asset Based Lending REIT Fund IV, LLC

All of Debtor's present and future right, title and interest in and to all of the following:

1. All right, title and interest in and to the real property or properties described on Exhibit A attached hereto (collectively, the "**Land**").

2. All additional lands, estates and development rights hereafter acquired by Debtor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental deed of trust or otherwise, be expressly made subject to the lien thereof (collectively, the "**Additional Land**").

3. Any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof (collectively, the "**Improvements**"; the Land, the Additional Land and the Improvements hereinafter collectively referred to as the "**Real Property**").

4. All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Debtor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto.

5. All machinery, equipment, fixtures, furnishings, inventory and other property of every kind and nature whatsoever owned by Debtor or in which Debtor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Debtor or in which Debtor has or shall have an interest

(to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures (hereinafter collectively called the "**Equipment**") and the right, title and interest of Debtor in and to any of the Equipment which may be subject to any Security Agreements (as defined in the Uniform Commercial Code of the State of Illinois, as amended (the "**Uniform Commercial Code**")) superior, inferior or pari passu in lien to the lien evidenced hereby. In connection with Equipment which is leased to Debtor or which is subject to a lien or security interest which is superior to the lien evidenced hereby, such lien shall also cover all right, title and interest of each Debtor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment.

6. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property.

7. All leases and subleases (including, without limitation, all guarantees thereof) and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Section 365(h) of Title 11 of the United States Code (the "**Bankruptcy Code**") or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property) (together with any extension or renewal of the same, the "**Leases**") and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) (the "**Rents**") and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness.

8. All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and

apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof.

9. All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property.

10. The right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Lender in the Real Property or any part thereof and all awards and/or judgments received by Debtor from any source whatsoever.

11. All cash on hand, bank accounts, accounts receivable, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Debtor now has or may hereafter acquire in the Real Property or any part thereof.

12. All rights which Debtor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof.

13. All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, option agreements, purchase agreements, license agreements and other agreements, licenses, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof.

14. All proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

## Exhibit A

### Legal Description

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF NORTH ¾ OF WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

Address:

6949-59 South Merrill Avenue, Chicago, IL 60649

**COOK COUNTY
RECORDER OF DEEDS**

EXHIBIT 13

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

VENTUS HOLDINGS, LLC OR NOMINEE ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7600 -10 South Kingston Avenue | 2527-29 East 76th Street, Chicago, Illinois 60649 and legally described as follows:

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-030

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.     **Purchase Price**. The purchase price for the Property shall be $ 1,870,000 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.     An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

i

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ 10/17/2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8. **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *[None.]*

    d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> andrew@andrewporterlaw.com

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> MICHAEL ELMAN
>
> 10 S LA SALLE, STE 1420
>
> CHICAGO, IL 60603
>
> MELMAN@MBELMANLAW.COM

21.     **Like-Kind Exchange.** The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents.** Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     Foreign Investor Disclosure. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     Merger. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*      *      *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 14TH ___day of August, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

VENTUS HOLDINGS, LLC OR NOMINEE

10 S LA SALLE STE 1420

Chicago, IL 60603

By: /Zach Elman/

Its: Manager

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 10/14/19

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*      \*      \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over_____years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*       \*       \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

| | | |
|---|---|---|
| **Open Date:** _____ | **Expected Release Date:** _____ | **Escrow Number:** 2964652 |

**Property Address:** 7600 South Kingston, Chicago, Illinois 60649

**Deposit Amount:** $ _____
**Document(s) Held** _____

**Purpose:** ☒ Earnest Money  ☐ Repairs: _____
☐ Tax Escrow  ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | Kevin B. Duff, as Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
|---|---|---|---|
| Signed: _____ | | Signed: | |
| Print Name: _____ | | Print Name: | |
| Address: _____ | | Address: | Rachlis Duff Peel & Kaplan LLC |
| _____ | | | 542 South Dearborn, Suite 900 |
| | | | Chicago, Illinois 60605 |
| Email: _____ | | Email: | kduff@rdaplaw.net |
| Primary Phone: _____ | | Primary Phone: | (312) 733-3390 |
| Alternate Phone: _____ | | Alternate Phone: _____ | |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee      By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered  August 17,  2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of_____, 2019.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

ASSIGNEE:

*[TBD]*

By:_____

Name:_____

Title: _____

EXHIBIT 14

<u>**PURCHASE & SALE AGREEMENT**</u>

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

_Southside Property Group LLC_ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7600 -10 South Kingston Avenue | 2527-29 East 76th Street, Chicago, Illinois 60649 and legally described as follows:

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-030

\*        \*        \*

*TERMS AND CONDITIONS*

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ _1,530,000_ (the  "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until _8/28/19_ (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.  **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10. **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11. **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12. **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll***.** A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.    **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.    **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

*[None.]*

d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.    **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

Andrew E. Porter
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614
*andrew@andrewporterlaw.com*

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
*mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

David Resnick

DResnick@RSPlaw.com

312-456-0376

21.     **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this ~~14th~~ day of August, 2019. In addition, the individual 29th day of April, 2020 signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

Southside Property Group LLC

765 E. 69th Place

Chicago IL 60637

By: _____

Its: _Managing Member_

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_____

**Acceptance Date:** ___05/08/20___

**Buyer's Agent**

N/A

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

**RIDER A**

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*       *       *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

**RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*       *       *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

N/A

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*



The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American
Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____   Expected Release Date: _____   Escrow Number: __2964652__

Property Address: _7600 South Kingston, Chicago, Illinois 60649_____

Deposit Amount: $ __153,000.00____   Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____   ☐ Tax Escrow   ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| | |
|---|---|
| **Purchaser:** | **Seller:** |
| Signed: _____ | Signed: Kevin B. Duff, as Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
| Print Name: _Kevin Nugent, Southside Property Group_ | Print Name: _K. Duff_ |
| Address: _765 E. 69th Place_ | Rachlis Duff Peel & Kaplan LLC |
| _Chicago, IL 60637_ | Address: _542 South Dearborn, Suite 900_ |
| | _Chicago, Illinois 60605_ |
| Email: _KevinNugent@WPDmanagement.com_ | Email: _kduff@rdaplaw.net_ |
| Primary Phone: _773-908-9762_ | Primary Phone: _(312) 733-3390_ |
| Alternate Phone: _____ | Alternate Phone: _____ |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee   By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ___, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

**ASSIGNEE:**

[TBD] *Southside Property Group*

By:_____

Name:_____

Title:_____

EXHIBIT 15

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



Doc#: 1603550265 Fee: $50.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 02/04/2016 02:29 PM Pg: 1 of 7

**Report Mortgage Fraud**
**800-532-8785**

The property identified as:     PIN: 21-30-309-030-0000

**Address:**
**Street:**        7600 S. Kingston Ave.
**Street line 2:**
**City:** Chicago        **State:** IL        **ZIP Code:** 60649

**Lender:** The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC

**Borrower:** EquityBuild, Inc

**Loan / Mortgage Amount:** $2,850,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** 837D8B84-4D02-4BB4-A981-6D4E6F86C0C3        **Execution date:** 12/2/2015

Mail To:
Equity Build Finance
5668 W. Plano Pkwy, #300
Plano, TX 75093
_____[The Above Space For Recorder's Use Only]_____

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on December 2nd, 2015. The mortgagor is EquityBuild, Inc. ("Borrower").

This Security Instrument is given to the persons listed on <u>Exhibit A</u> to this Mortgage c/o EquityBuild Finance, LLC whose address is 5068 West Plano Parkway, #300, Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of Two Million Eight Hundred Fifty Thousand and 00/100 Dollars (U.S. $2,850,000.00). This debt is evidenced by that certain promissory note by and between Borrower and Lender dated the same date as this Security Instrument ("Mortgage"), which provides for a final payment of the full debt, if not paid earlier, due and payable December 1st, 2016. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 21-30-309-030-0000

which has the address of 7600 S Kingston Ave., Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

4. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. **Successor and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent.

6. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

8. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

9. **Transfer of the Property or a beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

10. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____(SEAL)
EquityBuild, Inc., BORROWER


_____[Space Below This Line For Acknowledgement]_____

STATE OF FLORIDA, LEE County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared EquityBuild, Inc., to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this 2nd day of December, 2015.

My Commission expires: July 26, 2017

{Seal}

_____
Notary Public

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153   FloridaNotaryService.com

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Equity Trust Company Custodian FBO John Allred IRA Acct #125952 | $39,757 | 1.39% |
| Equity Trust Company FBO Glenda K Allred IRA Acct #187991 | $5,502 | 0.19% |
| Equity Trust Company Custodian FBO Carly A Allred Roth IRA Acct# 163781 | $3,987 | 0.14% |
| Fraser Realty Capital, LLC | $20,038 | 0.70% |
| Spectra Investments, LLC | $126,126 | 4.43% |
| Quest IRA Inc. FBO Rebeca E. Savory-Romero IRA account#15528-11 | $39,953 | 1.40% |
| iPlanGroup Agent for Custodian FBO Frank Sohm IRA | $15,796 | 0.55% |
| Private Finance Solutions, LLC | $23,328 | 0.82% |
| Arthur Bertrand | $17,300 | 0.61% |
| Equity Trust Company Custodian FBO Paula Levand CESA | $18,497 | 0.65% |
| Don Minchow | $110,000 | 3.86% |
| Asians Investing In Real Estate LLC | $150,000 | 5.26% |
| iPlanGroup Agent for Custodian FBO Jason Ragan IRA | $29,562 | 1.04% |
| NuView IRA Inc. FBO Janet Eileen Taylor IRA | $360,000 | 12.63% |
| Towpath Investments, LLC | $25,000 | 0.88% |
| AdvantaIRA Trust, LLC FBO Terry Merrill # 6820601 | $60,000 | 2.11% |
| Equity Trust Company Custodian FBO David M. Williams IRA # Z151886 | $7,484 | 0.26% |
| TruStar Real Estate, LLC | $210,000 | 7.37% |
| Vantage FBO Joseph S. Ratkovic IRA #16325 | $150,000 | 5.26% |
| David Marcus | $895,484 | 31.42% |
| Paul N. Wilmesmeier | $25,000 | 0.88% |
| CM Group, LLC | $110,000 | 3.86% |
| Uyen Dinh | $7,193 | 0.25% |
| Timothy Sharp | $50,000 | 1.75% |
| iPlanGroup Agent for Custodian FBO Stephen J. Apple ROTH IRA | $43,705 | 1.53% |
| Charwin Properties, LLC | $5,000 | 0.18% |
| Nehasri ltd. | $52,907 | 1.86% |
| Janet Eileen Taylor | $50,000 | 1.75% |
| Robert Maione | $110,000 | 3.86% |
| EquityBuild, Inc. | $88,381 | 3.10% |

Lots 1, 2 and 3 in Block 7 in South Shore Park, being a subdivision of the West 1/2 of the Southwest 1/4 (except streets) of Section 30, Township 38 North, Range 15, East of the Third Principal Meridian, in Cook County, Illinois

EXHIBIT 16

**Illinois Anti-Predatory Lending Database Program**

**Certificate of Exemption**



**Report Mortgage Fraud**
**844-768-1713**



Doc# 1812734045 Fee $100.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:37 AM PG: 1 OF 32

---

The property identified as:     **PIN:** 20-35-303-096-0000

**Address:**
**Street:**     8326-32 S Ellis Ave
**Street line 2:**
**City:** Chicago     **State:** IL     **ZIP Code:** 60619

**Lender:** Liberty EBCP, LLC

**Borrower:** SSDF7 Portfolio 1 LLC

**Loan / Mortgage Amount:** $9,200,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

#1890652 – 1890658
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453
7 & 6

**Certificate number:** 37C5A37B-2980-4C6A-8000-EDCCC77DF2D4     **Execution date:** 5/2/2018

32

Licensed Property Insight by Cook County Recorder's

PREPARED BY AND AFTER
RECORDING RETURN TO:

Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin, Suite 2500
Southfield, Michigan 48334
Attention: Eric Novetsky, Esq.

MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING

by

SSDF7 PORTFOLIO 1 LLC,
an Illinois limited liability company
("Mortgagor")

to

LIBERTY EBCP, LLC,
a Delaware limited liability company
("Mortgagee")

**ATTENTION: COUNTY CLERK - THIS MORTGAGE COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE MORTGAGES ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS MORTGAGE SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE, BUT ALSO AS A FIXTURE FILING COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE MORTGAGOR (DEBTOR) AND MORTGAGEE (SECURED PARTY) ARE SET FORTH IN THIS MORTGAGE.**

-1-

Licensed to Property Insight / Cook County Recorder of Deeds

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Mortgage**") is made and effective as of the ___2nd___ day of May, 2018, SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("**Mortgagor**"), having an address at 1414 E. 62nd Pl, Chicago, IL 60637, for the benefit of LIBERTY EBCP, LLC, a Delaware limited liability company (together with its successors and assigns, "**Mortgagee**"), having an address at 1500 JFK Boulevard, Suite 250, Philadelphia, Pennsylvania 19102.

## W I T N E S S E T H:

WHEREAS, Mortgagor is the fee owner of that certain land located (consisting of 10 parcels) in the County of Cook, State of Illinois and being more fully described, respectively, in Exhibit A attached hereto (the "**Land**");

WHEREAS, this Mortgage is given in connection with a term loan in the principal sum of NINE MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($9,200,000) (the "**Loan**") made by Mortgagee to Mortgagor pursuant to that certain Term Loan Agreement dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by a certain Secured Promissory Note in the principal amount of the Loan, dated the date hereof made by Mortgagor to Mortgagee (such note, as the same may be amended, restated, replaced, supplemented, consolidated, severed or otherwise modified from time to time, being hereinafter referred to as the "**Note**");

WHEREAS, Mortgagor desires to secure the payment of the Debt (as hereinafter defined) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as hereinafter defined); and

WHEREAS, this Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Mortgagor of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Mortgage; (the Loan Agreement, the Note, this Mortgage, that certain additional Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith made by Mortgagor in favor of Mortgagee, those two certain Assignment of Leases and Rents of even date herewith made by Mortgagor in favor of Mortgagee (collectively, the "**Assignment of Leases**") and all other documents evidencing or securing the Debt or delivered in connection with the making of the Loan, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, are hereinafter referred to collectively as the "**Loan Documents**").

NOW THEREFORE, in consideration of the making of the Loan by Mortgagee to Mortgagor and the covenants, agreements, representations and warranties set forth in this Mortgage, Mortgagor intending to be legally bound:

## ARTICLE 1

## GRANTS OF SECURITY

Section 1.1    Property Mortgaged. Mortgagor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Mortgagee and its successors and assigns (to the extent assignable) all of Mortgagor's right, title and interest to the following property, rights, interests and estates now owned, or hereafter acquired by Mortgagor (collectively, the "**Property**"):

(a)    Land. The Land;

(b)    Additional Land. All additional lands, estates and development rights hereafter acquired by Mortgagor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

(c)    Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)    Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto;

(e)    Equipment. All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), now owned or hereafter acquired by Mortgagor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Mortgagor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**"). Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under Leases except to the extent that Mortgagor shall have any right or interest therein;

(f)    Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Mortgagor which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing,

-2-

laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Mortgagor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). Notwithstanding the foregoing, Fixtures shall not include any property which tenants are entitled to remove pursuant to Leases except to the extent that Mortgagor shall have any right or interest therein;

(g)     Personal Property. All right, title, and interest of Mortgagor in (i) the property and interests in the property described on Exhibit B attached hereto and incorporated herein by reference, (ii) all other personal property now or hereafter owned by Mortgagor whether or not located on or used in connection with the Land or the Improvements, (iii) all other rights and interests of Mortgagor now or hereafter held in personal property whether or not located on or used in connection with the Land or the Improvements, (iv) all personal property and rights and interests in personal property of similar type or kind hereafter acquired by Mortgagor, (v) all right, title and interest of Mortgagor in and to any personal property which may be subject to any security interests, as defined in the Uniform Commercial Code, superior in lien to the lien of this Mortgage and (vi) all proceeds of the foregoing (such personal property and proceeds, collectively, the "**Personal Property**"). Notwithstanding the foregoing, Personal Property shall not include any property belonging to tenants under Leases except to the extent that Mortgagor shall have any right or interest therein;

(h)     Leases and Rents. All leases and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into, whether before or after the filing by or against Mortgagor of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") (collectively, the "**Leases**") and all right, title and interest of Mortgagor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Mortgagor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Obligations;

(i)     Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)     Insurance Proceeds. All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k)     Tax Certiorari. All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

-3-

(l)     Rights.  The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Mortgagee in the Property;

(m)     Agreements.  All agreements (including, without limitation, all management agreements), contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Mortgagor thereunder;

(n)     Trademarks.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)     Proceeds.  All proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether cash, liquidation or other claims or otherwise; and

(p)     Other Rights.  Any and all other rights of Mortgagor in and to the items set forth in Subsections (a) through (o) above.

AND without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Mortgagor expressly grants to Mortgagee, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

Section 1.2     Assignment of Rents.  Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to all current and future Leases and Rents; it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Assignment of Leases and Section 7.1(h) of this Mortgage, Mortgagee grants to Mortgagor a revocable license to collect, receive, use and enjoy the Rents.  Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3     Security Agreement.  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Property.  By executing and delivering this Mortgage, Mortgagor hereby grants to Mortgagee, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**").  If an Event of Default shall occur and be continuing, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code,

-4-

including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee after the occurrence and during the continuance of an Event of Default, Mortgagor shall, at its expense, assemble the Collateral or cause the Collateral to be assembled and make it available to Mortgagee at a convenient place (at the Land if tangible property) reasonably acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. The principal place of business of Mortgagor (Debtor) is as set forth on page one hereof and the address of Mortgagee (Secured Party) is as set forth on page one hereof.

Section 1.4 *Fixture Filing*. From the date of its recording, this Mortgage shall be effective as a fixture financing statement within the purview of Section 9-502(b) of the Illinois Uniform Commercial Code (as amended from time to time) with respect to the Property and the goods described herein, which goods are or are to become fixtures related to the Property. The addresses of Mortgagor (Debtor) and Mortgagee (Secured Party) are set forth below. This Mortgage is to be filed for recording with the Recorder of Deeds of the county or the counties where the Property is located. For this purpose, the following information is set forth.

    (a)    Name and Address of Debtor:

           SSDF7 Portfolio 1 LLC
           1414 E. 62ND Pl., Chicago, IL 60637.

    (b)    Name and Address of Secured Party:

           Liberty EBCP, LLC
           1500 JFK Boulevard, Suite 250, Philadelphia, PA 19102

    (c)    This document covers goods which are or are to become fixtures.

    (d)    Debtor is the record owner of the Land.

    (e)    Debtor's chief executive office is located in the State of Illinois.

    (f)    Debtor's state of formation is Illinois.

    (g)    Debtor's exact legal name is as set forth in the first paragraph of this Mortgage.

    (h)    Debtor's organizational identification number is 06839975.

    (i)    Debtor agrees that:

-5-

Licensed for use only by Cook County Recorder of Deeds

(i)     Where Property is in possession of a third party, Mortgagor will join with Mortgagee in notifying the third party of Mortgagee's interest and obtaining an acknowledgment from the third party that it is holding the Property for the benefit of Mortgagee;

(ii)     Mortgagor will cooperate with Mortgagee in obtaining control with respect to Property consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

(iii)     Until the Indebtedness is paid in full, Mortgagor will not change the state where it is located or change its company name without giving Mortgagee at least thirty (30) days prior written notice in each instance.

Section 1.5     Pledges of Monies Held.   Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter held by Mortgagee or on behalf of Mortgagee in connection with the Loan, including, without limitation, any sums deposited in the Collateral Account and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Mortgage.

CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Mortgage, shall well and truly perform the Other Obligations as set forth in this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Mortgagor's obligation to indemnify and hold harmless Mortgagee pursuant to the provisions hereof and the other Loan Documents shall survive any such payment or release.

**ARTICLE 2**

**DEBT AND OBLIGATIONS SECURED**

Section 2.1     Debt. This Mortgage and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Loan, with interest thereon based on the terms of the Note and the Loan Agreement (the "**Debt**").

Section 2.2     Other Obligations. This Mortgage and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)     the performance of all other obligations of Mortgagor contained herein;

(b)     the performance of each obligation of Mortgagor contained in the Loan Agreement and any other Loan Document; and

-6-

(c)     the performance of each obligation of Mortgagor contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3     Debt and Other Obligations.  Mortgagor's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

## ARTICLE 3

## MORTGAGOR COVENANTS

Mortgagor covenants and agrees that:

Section 3.1     Payment of Debt.  Mortgagor will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

Section 3.2     Incorporation by Reference.  All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

Section 3.3     Insurance.  Mortgagor shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Mortgagor and the Property as required pursuant to the Loan Agreement.

Section 3.4     Maintenance of Property.  Mortgagor shall cause the Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Mortgagee. Mortgagor shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

Section 3.5     Waste.  Mortgagor shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Mortgage. Mortgagor will not, without the prior written consent of Mortgagee, permit any drilling or exploration for or extraction, removal or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.6     Payment for Labor and Materials.

(a)     Mortgagor will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials (collectively, "**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or

-7-

additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances.

(b)     After prior written notice to Mortgagee, Mortgagor, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Mortgage or any of the other Loan Documents, (ii) Mortgagor is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Mortgagor and from the Property or Mortgagor shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Mortgagor is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Mortgagor shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Mortgagee to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.7     Performance of Other Agreements.  Mortgagor shall observe and perform each and every term, covenant and provision to be observed or performed by Mortgagor pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8     Change of Name, Identity or Structure.  Mortgagor shall not change Mortgagor's name, identity (including its trade name or names) or, if not an individual, Mortgagor's corporate, partnership or other structure without first (a) notifying Mortgagee of such change in writing at least thirty (30) days prior to the effective date of such change, (b) taking all action required by Mortgagee for the purpose of perfecting or protecting the lien and security interest of Mortgagee and (c) in the case of a change in Mortgagor's structure, without first obtaining the prior written consent of Mortgagee. Mortgagor shall promptly notify Mortgagee in writing of any change in its organizational identification number.  If Mortgagor does not now have an organizational identification number and later obtains one, Mortgagor shall promptly notify Mortgagee in writing of such organizational identification number. Mortgagor shall execute and deliver to Mortgagee, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Mortgagee to establish or maintain the validity, perfection and priority of the security interest granted herein.  At the request of Mortgagee, Mortgagor shall execute a certificate in form satisfactory to Mortgagee listing the trade names under which Mortgagor intends to operate the Property, and representing and warranting that Mortgagor does business under no other trade name with respect to the Property.

**ARTICLE 4**

**OBLIGATIONS AND RELIANCES**

Section 4.1     Relationship of Mortgagor and Mortgagee.  The relationship between Mortgagor, on the one hand, and Mortgagee, on the other, is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with Mortgagor, and no term or condition of any of the Loan Agreement, the Note, this Mortgage and the other Loan Documents shall be construed so as to deem the relationship between Mortgagor, on the one hand, and Mortgagee, on the other, to be other than that of debtor and creditor.

-8-

Section 4.2    No Reliance on Mortgagee.  The general partners, members, principals and (if Mortgagor is a trust) beneficial owners of Mortgagor, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Mortgagor and Mortgagee are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Mortgagor is not relying on Mortgagee's expertise, business acumen or advice in connection with the Property.

Section 4.3    No Mortgagee Obligations.

(a)    Notwithstanding the provisions of Subsections 1.1(h) and (m) or Section 1.2, Mortgagee is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Mortgagee pursuant to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Mortgagee shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Mortgagee.

Section 4.4    Reliance.  Mortgagor recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Mortgage and the other Loan Documents, Mortgagee is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 8 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Mortgagee; that such reliance existed on the part of Mortgagee prior to the date hereof, that the warranties and representations are a material inducement to Mortgagee in making the Loan; and that Mortgagee would not be willing to make the Loan and accept this Mortgage in the absence of the warranties and representations as set forth in Section 8 of the Loan Agreement.

## ARTICLE 5

## FURTHER ASSURANCES

Section 5.1    Recording of Mortgage. etc.  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Mortgagee in, the Property. Mortgagor will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Mortgage, the other Loan Documents, any note or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

-9-

Section 5.2    Further Acts, etc.  Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, reasonably require, for the better conveying, assigning or transferring unto Mortgagee the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Legal Requirements relating to Mortgagor's grant of this Mortgage to Mortgagee. Mortgagor, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements (including, without limitation, initial financing statements and amendments thereto and continuation statements) with or without the signature of Mortgagor as authorized by applicable law, to evidence more effectively the security interest of Mortgagee in the Property. Mortgagor also ratifies its authorization for Mortgagee to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Mortgage. Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 5.2.  To the extent not prohibited by applicable law, Mortgagor hereby ratifies all acts Mortgagee has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

Section 5.3    Changes in Tax, Debt, Credit and Documentary Stamp Laws.

(a)    If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Property, Mortgagor will pay the tax, with interest and penalties thereon, if any.  If Mortgagee is advised by counsel chosen by it that the payment of tax by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury then Mortgagee shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(b)    Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt.  If such claim, credit or deduction shall be required by law, Mortgagee shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Mortgage or any of the other Loan Documents or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

Section 5.4    Splitting of Mortgage  This Mortgage and the Note shall, at any time until the same shall be fully paid and satisfied, at the sole election of Mortgagee, be split or divided into two or more Notes and two or more security instruments, each of which shall cover all or a portion of the Property to be more particularly described therein.  To that end, Mortgagor, upon written request of Mortgagee, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Mortgagee and/or its designee or designees substitute Notes and security instruments in

-10-

such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Mortgagee.

Section 5.5    Replacement Documents.  Upon receipt of an affidavit of an officer of Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Mortgagor will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE 6

## DUE ON SALE/ENCUMBRANCE

Section 6.1    Mortgagee Reliance.  Mortgagor acknowledges that Mortgagee has examined and relied on the experience of Mortgagor and its general partners, members, principals and (if Mortgagor is a trust) beneficial owners, as applicable, in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Mortgagor's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations. Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Property so as to ensure that, should Mortgagor default in the repayment of the Debt or the performance of the Other Obligations, Mortgagee can recover the Debt by a sale of the Property.

Section 6.2    No Transfer.  Mortgagor shall not permit or suffer any Transfer to occur, unless permitted by the Loan Agreement or unless Mortgagee shall consent thereto in writing.

Section 6.3    Mortgagee's Rights.  Without obligating Mortgagee to grant any consent under Section 6.2 hereof which Mortgagee may grant or withhold in its sole discretion, Mortgagee reserves the right to condition the consent required hereunder upon: (a) a modification of the terms hereof and of the Loan Agreement, the Note or the other Loan Documents; (b) an assumption of the Loan Agreement, the Note, this Mortgage and the other Loan Documents as so modified by the proposed transferee; (c) payment of all of Mortgagee's expenses incurred in connection with such transfer; (d) Reserved; (e) Reserved; (f) Reserved; (g) the delivery of evidence satisfactory to Mortgagee that the single purpose nature and bankruptcy remoteness of Mortgagor, its shareholders, partners or members, as the case may be, following such transfers are in accordance with the Loan Documents; (h) the proposed transferee's ability to satisfy Mortgagee's then-current underwriting standards; or (i) such other conditions as Mortgagee shall determine in its reasonable discretion to be in the interest of Mortgagee, including, without limitation, the creditworthiness, reputation and qualifications of the transferee with respect to the Loan and the Property. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a Transfer without Mortgagee's consent.  This provision shall apply to every Transfer, other than any Transfer permitted pursuant to the Loan Agreement, regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous Transfer.

## ARTICLE 7

## RIGHTS AND REMEDIES UPON DEFAULT

Section 7.1    Remedies.  Upon the occurrence and during the continuance of any Event of Default, Mortgagor agrees that Mortgagee may take such action, without notice or demand, as it deems

-11-

advisable to protect and enforce its rights against Mortgagor and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(a)    declare the entire unpaid Debt to be immediately due and payable;

(b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to foreclosure or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

(g)    right to the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Mortgagor, any guarantor, indemnitor with respect to the Loan or of any Person liable for the payment of the Debt; further, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, and Mortgagor hereby consents to the appointment of such receiver or receivers, trustee, liquidator or conservator of the Property, as applicable;

(h)    the license granted to Mortgagor under Section 1.2 hereof shall automatically be revoked and Mortgagee may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Mortgagor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Mortgagor agrees to surrender possession of the Property and of such books, records and accounts to Mortgagee upon demand, and thereupon Mortgagee may: (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Mortgagee deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Mortgagor with respect to the Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Mortgagor;

-12-

(vi) require Mortgagor to vacate and surrender possession of the Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Mortgagee shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees;

(i)       exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and the Personal Property, or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Mortgagor at its expense to assemble the Fixtures, the Equipment and the Personal Property and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Fixtures, the Equipment and/or the Personal Property sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Mortgagor;

(j)       apply any sums then deposited or held in escrow or otherwise by or on behalf of Mortgagee in accordance with the terms of the Loan Agreement, this Mortgage or any other Loan Document to the payment of the following items in any order in its uncontrolled discretion:

     (i)       Taxes and Other Charges;

     (ii)       Insurance Premiums;

     (iii)       interest on the unpaid principal balance of the Note;

     (iv)       amortization of the unpaid principal balance of the Note; and/or

     (v)       all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and the other Loan Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage;

(k)       pursue such other remedies as Mortgagee may have under applicable law;

(l)       apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Mortgagee shall deem to be appropriate in its discretion; and/or

(m)       Intentionally omitted.

In the event of a sale, by foreclosure or otherwise, of less than all of Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 7.2       Application of Proceeds.  The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Mortgagee pursuant to the Note, this Mortgage or the other Loan Documents may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

-13-

Section 7.3    Right to Cure Defaults.  Upon the occurrence and during the continuance of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof.  Mortgagee is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

Section 7.4    Actions and Proceedings.  Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Property.

Section 7.5    Recovery of Sums Required to Be Paid.  Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

Section 7.6    Examination of Books and Records.  At reasonable times and upon reasonable notice, Mortgagee, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Mortgagor which reflect upon its financial condition, at the Property or at any office regularly maintained by Mortgagor where the books and records are located. Mortgagee and its agents shall have the right to make copies and extracts from the foregoing records and other papers.  In addition, at reasonable times and upon reasonable notice, Mortgagee, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Mortgagor pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Mortgagor where the books and records are located.  This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

Section 7.7    Other Rights, etc.

(a)    The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (i) the failure of Mortgagee to comply with any request of Mortgagor or any guarantor or indemnitor with respect to the Loan  to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the other Loan Documents.

-14-

(b)     It is agreed that the risk of loss or damage to the Property is on Mortgagor, and Mortgagee shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Mortgagee shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Mortgagee's possession.

(c)     Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 7.8     Right to Release Any Portion of the Property. Mortgagee may release any portion of the Property for such consideration as Mortgagee may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Mortgagee for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a lien and security interest in the remaining portion of the Property.

Section 7.9     Violation of Laws. If the Property is not in material compliance with Legal Requirements, Mortgagee may impose additional requirements upon Mortgagor in connection herewith including, without limitation, monetary reserves or financial equivalents.

Section 7.10     Recourse and Choice of Remedies. Notwithstanding any other provision of this Mortgage or the Loan Agreement, Mortgagee is entitled to enforce the obligations of Mortgagor contained in Sections 9.2 and 9.3 herein without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Mortgagee commences a foreclosure action against the Property, Mortgagee is entitled to pursue a deficiency judgment with respect to such obligations against Mortgagor with respect to the Loan. The provisions of Sections 9.2 and 9.3 herein and are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Mortgage or the other Loan Documents, and Mortgagor and any guarantor or indemnitor with respect to the Loan are fully and personally liable for the obligations pursuant to Sections 9.2 and 9.3 herein. The liability of Mortgagor with respect to the Loan pursuant to Sections 9.2 and 9.3 herein is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Mortgagee from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Mortgage and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Mortgagor pursuant to Sections 9.2 and 9.3 herein, whether or not action is brought against any other Person, or whether or not any other Person is joined in the action or actions. In addition, Mortgagee shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in the ADA and Environmental Indemnity.

Section 7.11     Right of Entry. Upon reasonable notice to Mortgagor, Mortgagee and its agents shall have the right to enter and inspect the Property at all reasonable times.

-15-

## ARTICLE 8

### INTENTIONALLY OMITTED

## ARTICLE 9

### INDEMNIFICATION

Section 9.1    Intentionally Omitted.

Section 9.2    Mortgage and/or Intangible Tax.  Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Mortgage, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

Section 9.3    ERISA Indemnification.  Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Mortgagee's sole discretion) that Mortgagee may incur, directly or indirectly, as a result of a default under Sections 8.19 and 9.4 of the Loan Agreement.

Section 9.4    Intentionally Omitted.

Section 9.5    Duty to Defend; Attorneys' Fees and Other Fees and Expenses.  Upon written request by any Indemnified Party, Mortgagor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties.  Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Mortgagor and any Indemnified Party and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Mortgagor, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Mortgagor's consent, which consent shall not be unreasonably withheld.  Upon demand, Mortgagor shall pay or, in the sole and absolute discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

## ARTICLE 10

### WAIVERS

Section 10.1    Waiver of Counterclaim.  To the extent permitted by applicable law, Mortgagor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Mortgagee arising out of or in any way connected with this Mortgage, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

-16-

Section 10.2    Marshalling and Other Matters.  To the extent permitted by applicable law, Mortgagor hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein.  Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Mortgage and on behalf of all Persons to the extent permitted by applicable law.

Section 10.3    Waiver of Notice.  To the extent permitted by applicable law, Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

Section 10.4    Waiver of Statute of Limitations.  To the extent permitted by applicable law, Mortgagor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

Section 10.5    Survival.  The indemnifications made pursuant to Sections 9.2, 9.3 and 9.5 herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by: any satisfaction or other termination of this Mortgage, any assignment or other transfer of all or any portion of this Mortgage or Mortgagee's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Mortgagee's rights and remedies pursuant hereto including but not limited to foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Mortgagor or by Mortgagee following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Mortgagor from the obligations pursuant hereto.

## ARTICLE 11

### INTENTIONALLY OMITTED

### ARTICLE 12

### NOTICES

Section 12.1    Notices.  All notices or other written communications hereunder shall be delivered in accordance with Section 15.1 of the Loan Agreement.

### ARTICLE 13

### APPLICABLE LAW

Section 13.1    GOVERNING LAW; WAIVER OF JURY TRIAL.

-17-

(A)     THIS MORTGAGE WAS NEGOTIATED IN THE COMMONWEALTH OF PENNSYLVANIA, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY GRANTOR IN THE COMMONWEALTH OF PENNSYLVANIA, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE COMMONWEALTH OF PENNSYLVANIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THE MORTGAGE, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE LAND IS LOCATED (ILLINOIS). TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS MORTGAGE, THE NOTE AND/OR THE OTHER LOAN DOCUMENTS. IN THE EVENT THAT ANY PROVISION OF THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT CONFLICTS WITH APPLICABLE LAW, SUCH CONFLICT SHALL NOT AFFECT OTHER PROVISIONS OF MORTGAGE OR THE APPLICABLE LOAN DOCUMENT WHICH CAN BE GIVEN EFFECT WITHOUT THE CONFLICTING PROVISIONS, AND TO THIS END THE PROVISIONS OF THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS ARE DECLARED TO BE SEVERABLE.

(B)     TO THE FULLEST EXTENT PERMITTED BY LAW, MORTGAGOR AND MORTGAGEE HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION RELATING TO THE LOAN AND/OR THE LOAN DOCUMENTS.

Section 13.2     Usury Laws. Notwithstanding anything to the contrary, (a) all agreements and communications between Mortgagor and Mortgagee are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Mortgagee shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Mortgagor to Mortgagee, and (c) if through any contingency or event, Mortgagee receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Mortgagor to Mortgagee, or if there is no such indebtedness, shall immediately be returned to Mortgagor.

Section 13.3     Provisions Subject to Applicable Law. All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of the term shall not be affected thereby.

-18-

Section 13.4    Intentionally Omitted.

Section 13.5    Business Purpose

Mortgagor warrants that this Mortgage is delivered in connection with a business or commercial loan transaction.

Section 13.6    Intentionally Omitted.

## ARTICLE 14

### DEFINITIONS

Section 14.1    Definitions.    All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form, and the word "**Mortgagor**" shall mean "each Mortgagor and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Mortgagee**" shall mean "Mortgagee and any successor under the Loan Agreement," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**legal fees**" and "**counsel fees**" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE 15

### MISCELLANEOUS PROVISIONS

Section 15.1    No Oral Change.    This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 15.2    Successors and Assigns.    The provisions hereof shall be binding upon and shall inure to the benefit of the Mortgagor, its successors and assigns (including without limitation subsequent owners of the Property or the leasehold estate of the Property or any part thereof); shall be binding upon and shall inure to the benefit of Mortgagee, its successors and assigns and any future holder of the Note hereby secured, and any successors or assigns of any future holder of the Note. In the event the ownership of the Property or any leasehold estate that may be covered by this Mortgage, becomes vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest with reference to this instrument and the debt hereby secured in the same manner as with the Mortgagor, and may alter the interest rate and/or alter or extend the terms of payment of the debt secured hereby without notice to Mortgagor and such action shall in no way affect the liability of Mortgagor hereunder or under the Note hereby secured or the lien or priority of this Mortgage with respect to any part of the Property covered hereby.

Section 15.3    Secondary Market

-19-

(a)     Transfer of Loan. Mortgagee may, at any time, without notice to or the consent of Mortgagor (i) sell, transfer or assign the Loan (or any portion thereof) and the Loan Documents, and any or all servicing rights with respect thereto, (ii) sell or grant participations in the Loan ("**Participations**") or (ii) securitize the Loan or any portion thereof in one or more pooled asset securitizations (the transactions referred to in clauses (i), (ii) and (iii) shall herein be referred to collectively as "Secondary Market Transactions" and the transactions referred to in clause (iii) shall herein be referred to as a "Securitization". Any certificates, notes or other securities issued in connection with a Securitization shall be referred to herein as "Securities". In connection with any Secondary Market Transaction, Mortgagee may forward to each purchaser, transferee, assignee, servicer, trustee, participant, or investor in such Secondary Market Transactions (collectively, the "Investor" or any rating agency rating such Secondary Market Transaction (each, a "**Rating Agency**") and each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Mortgagee now has or may hereafter acquire relating to the debt secured hereby and to Mortgagor, any Guarantor, and the Property, whether furnished by Mortgagor, any Guarantor, any Property, or otherwise, as Mortgagee determines necessary or desirable. Mortgagor irrevocably waives any and all rights it may have under applicable laws to prohibit such disclosure, including but not limited to any right of privacy. Mortgagor shall be responsible for the payment of all costs and expenses of any servicer chosen by Mortgagee to service the Loan. Mortgagor, at Mortgagor's expense, only for its own costs in cooperating (but not for Mortgagee's costs) including without limitation, Mortgagor's legal fees in connection with any of the following, agrees to cooperate with all reasonable requests of Mortgagee in connection with any of the foregoing including, without limitation, executing any financing statements or other documents deemed necessary by Mortgagee or its transferee to create, perfect or preserve the rights and interest to be acquired by such transferee, provide any updated financial information with appropriate verification through auditors letters, deliver a negative assurances letter (with respect to such sections as Mortgagor is responsible pursuant to Section 15.3(c) hereof) only if the Securities being offered are in a Rule 144A offering or a registered public offering, revised organizational documents and counsel opinions satisfactory to the Rating Agencies, executed amendments to the Loan Documents, and review information regarding Mortgagor, any Guarantor, and the Property contained in a preliminary or final private placement memorandum, prospectus, prospectus supplements or other disclosure document, providing a mortgagor estoppel certificate and such other information about Mortgagor, any Guarantor or the Property as Mortgagee may reasonably require for Mortgagee's offering materials; provided, however, in each instance of a modification of, or amendment to, the Loan and Loan Documents or splitting or severing all or any portion of the Loan, Mortgagee shall comply with this Section 15 and no such modification or amendment shall change the stated maturity date of the Loan or any other material term of the Loan.

(b)     Dissemination of Information. Mortgagor acknowledges that Mortgagee may provide to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, ownership, purchase, or participation of the Loan, or any Secondary Market Transaction including, without limitation, any Rating Agency and any entity maintaining databases on the underwriting and performance of commercial mortgage loans, any and all information which Mortgagee now has or may hereafter acquire relating to the Loan, the Property, Mortgagor or any Guarantor, as Mortgagee determines necessary or desirable and that such information may be included in disclosure documents in connection with a Secondary Market Transaction, including, without limitation, a prospectus, prospectus supplement, offering memorandum, private placement memorandum or similar document (each, a "**Disclosure Document**") and also may be included in any filing with the Securities and Exchange Commission pursuant to the Securities Act or the Securities Exchange Act. To the fullest extent permitted under applicable law, Mortgagor irrevocably waives all rights, if any, to prohibit such disclosure, including, without limitation, any right of privacy.

(c)     Secondary Market Transaction. Mortgagor and each Guarantor agrees to provide in connection with each Disclosure Document, an indemnification certificate: (i) certifying that the

-20-

Case: 1:18-cv-05587 Document #: 712 Filed: 06/11/20 Page 203 of 514 PageID #:15184

1812734045 Page: 23 of 32

information contained in the sections describing Mortgagor, any Guarantor and the Property set forth in such Disclosure Document has carefully been examined, and that, to such indemnitor's knowledge, such sections do not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; (ii) indemnifying Mortgagee (and for purposes of this Section 15.3(c), Mortgagee shall include its officers and directors) that (1) has filed the registration statement, if any, relating to the Secondary Market Transaction and/or (2) which is acting as issuer, depositor, sponsor and/or a similar capacity with respect to the Secondary Market Transaction (any person described in (1) or (2), an "**Issuer Person**"), and each director and officer of any Issuer Person, and each person who controls any Issuer Person with the meaning of Section 15 of the Securities Act or Section 20 of the Securities Exchange Act (collectively, "**Issuer Group**"), for any losses to which Mortgagee or the Issuer Group may become subject insofar as the losses arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated in such sections necessary in order to make the statements in such sections or in light of the circumstances under which they were made, not misleading (collectively, "**Securities Liabilities**"); and (iii) agreeing to reimburse Mortgagee and the Issuer Group for any legal or other expenses reasonably incurred by Mortgagee and the Issuer Group in investigating or defending the Securities Liabilities; provided, however, that indemnitor will be liable under clauses (ii) or (iii) above only to the extent that such Securities Liabilities arise out of, or are based upon, any such untrue statement or omission made therein in reliance upon, and in conformity with, information furnished to Mortgagee or any member of the Issuer Group by or on behalf of Mortgagor or a Guarantor in connection with the preparation of the Disclosure Documents or in connection with the underwriting of the Loan, including, without limitation, financial statements of Mortgagor or any Guarantor, and operating statements, rent rolls, environmental site assessment reports and property condition reports with respect to the Property. This indemnity is in addition to any liability which Mortgagor may otherwise have and shall be effective whether or not an indemnification certificate described above is provided and shall be applicable based on information previously provided by or on behalf of Mortgagor or a Guarantor if the indemnification certificate is not provided.

Section 15.4    Inapplicable Provisions.    If any term, covenant or condition of the Loan Agreement, the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Mortgage shall be construed without such provision.

Section 15.5    Headings, etc.    The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 15.6    Number and Gender/Joint and Several.    Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. If Mortgagor consists of more than one Person, all representations, warranties, covenants, obligations and liabilities of each such Person hereunder shall be joint and several. A default hereunder by any such Person shall be deemed a default by all such Persons and Mortgagor. With respect to the definition of "Mortgagor", except where the context otherwise provides, (i) any representations contained herein of Mortgagor shall be applicable to each Mortgagor, (ii) any affirmative covenants contained herein shall be deemed to be covenants of each Mortgagor and shall require performance by all Mortgagors, (iii) any negative covenants contained herein shall be deemed to be covenants of each Mortgagor, and shall be breached if any Mortgagor fails to comply therewith, (iv) the occurrence of any Event of Default with respect to any Mortgagor shall be deemed to be an Event of Default hereunder, and (v) any Debt and/or Other Obligations of Mortgagor shall be deemed to include any Debt and/or Other Obligations of the Mortgagor, or any Debt and/or Other Obligations of any one of them. The representations, warranties and covenants contained herein shall be read to apply to the individual Persons comprising Mortgagor when the context so requires, but a breach of any such

-21-

Non-Order Search
Doc: 1812734045                          Page 23 of 32                    Requested By: kcornell, Printed: 8/16/2019 1:44 PM

representation, warranty or covenant or a breach of any obligation under this Mortgage shall be deemed a breach by all such Persons and Mortgagor, entitling Mortgagee to exercise all of their rights and remedies under this Mortgage and under applicable law.

Section 15.7    Subrogation.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Mortgagor's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

Section 15.8    Entire Agreement.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto. Mortgagor hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Mortgagee to make any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

Section 15.9    Limitation on Mortgagee's Responsibility.  No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Mortgagee, nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession."

Section 15.10    Loan Agreement.  This Mortgage is made pursuant to the Loan Agreement and is subject to all of the provisions of the Loan Agreement including, without limitation, the provisions thereof entitling Mortgagee to declare the entire indebtedness secured hereby to be immediately due and payable, all of which provisions are incorporated herein with the same force and with like effect as if they were fully set forth herein at length and made a part hereof.

Section 15.11    Intentionally Omitted.

Section 15.12    Receipt of Mortgage.

MORTGAGOR CERTIFIES AND ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE AND CORRECT COPY OF THIS MORTGAGE WITHOUT CHARGE.

-22-

## ARTICLE 16

### STATE-SPECIFIC PROVISIONS

Section 16.1    Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Article 16 and the other provisions of this Mortgage, the terms and conditions of this Article 16 shall control and be binding.

Section 16.2    Compliance with Illinois Mortgage Foreclosure Law.

(a)    In the event that any provision in this Mortgage shall be inconsistent with any provisions of the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 *et. seq.* (as amended from time to time the "IMF Law"), the provision of the IMF Law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the IMF Law.

(b)    Mortgagor and Mortgagee shall have the benefit of all of the provisions of the IMF Law, including all amendments thereto which may become effective from time to time after the date hereof. In the event any provision of the IMF Law which is specifically referred to herein may be repealed, Mortgagee shall have the benefit of such provision as most recently existing prior to such repeal, as though the same were incorporated herein by express reference.

(c)    If any provision of this Mortgage shall grant to Mortgagee any rights or remedies upon default of Mortgagor which are more limited than the rights that would otherwise be vested in Mortgagee under the IMF Law in the absence of said provision, Mortgagee shall be vested with the rights granted in the IMF Law to the full extent not prohibited by law.

(d)    In addition to any provision of this Mortgage authorizing Mortgagee to take or be placed in possession of the Property, or for the appointment of a receiver, Mortgagee shall have the right, in accordance with Sections 15-1701 and 15-1702 of the IMF Law, to be placed in possession of the Property or at its request to have a receiver appointed, and such receiver, or Mortgagee, if and when placed in possession, shall have, in addition to any other powers provided in this Mortgage, all rights, powers, immunities and duties as provided for in Sections 15-1701, 15-1703 and 15-1704 of the IMF Law.

Section 16.3    Waiver of Right of Redemption and Other Rights. To the full extent permitted by law, Mortgagor agrees that it will not at any time or in any manner whatsoever take any advantage of any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force, nor take any advantage of any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or after such sale, claim or exercise any rights under any statute now or hereafter in force to redeem the Property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights it may have to require that the Property be sold as separate tracts or units in the event of foreclosure. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption and reinstatement under the IMF Law, on its own behalf, on behalf of all persons claiming or having any interest (direct or indirect) by, through or under Mortgagor and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Mortgagor and such other persons are and shall be deemed to be hereby waived to the full extent permitted by applicable law. To the full extent permitted by law, Mortgagor agrees that it will not, by invoking or utilizing any applicable law or laws or otherwise, hinder, delay or impede

-23-

the exercise of any right, power or remedy herein or otherwise granted or delegated to Mortgagee, but will permit the exercise of every such right, power and remedy as though no such law or laws have been or will have been made or enacted. To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any defense which would not be good and valid in an action at law upon the Note. Mortgagor acknowledges that the Property does not constitute agricultural real estate as defined in Section 5/15-1201 of the IMF Law or residential real estate as defined in Section 5/15-1219 of the IMF Law.

Section 16.4    Use of Proceeds.  Mortgagor represents and warrants to Mortgagee (i) that the proceeds of the Note secured by this Mortgage will be used for the purposes specified in 815 ILCS 205/4(1)(l) (or any substitute, amended or replacement statute), and that the indebtedness secured hereby constitutes a business loan to a business entity which comes within the purview of said 815 ILCS 205/4(1)(l), and (ii) that the Loan evidenced by the Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C. §1601 et seq.

Section 16.5    Interest Laws.  It being the intention of Mortgagee and Mortgagor to comply with the laws of the State of Illinois, it is agreed that notwithstanding any provision to the contrary in the Note, this Mortgage or any of the other Loan Documents, no such provision shall require the payment or permit the collection of any amount ("Excess Interest") in excess of the maximum amount of interest permitted by law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness evidenced by the Note. If any Excess Interest is provided for, or is adjudicated to be provided for, in the Note, this Mortgage or any of the other Loan Documents, then in such event: (a) the provisions of this Section 16.5 shall govern and control; (b) neither Mortgagor nor any other party obligated under the terms of the Note or any of the other Loan Documents shall be obligated to pay any Excess Interest; (c) any Excess Interest that Mortgagee may have received hereunder shall, at the option of Mortgagee, be (i) applied as a credit against the then unpaid principal balance under the Note, accrued and unpaid interest thereon not to exceed the maximum amount permitted by law, or both, (ii) refunded to the payor thereof, or (iii) any combination of the foregoing; (d) the Interest Rate (as that term is defined in the Note) shall be subject to automatic reduction to the maximum lawful contract rate allowed under the applicable usury laws of the aforesaid State, and the Note, this Mortgage and the other Loan Documents shall be deemed to be automatically reformed and modified to reflect such reduction in the Interest Rate; and (e) neither Mortgagor nor any other party obligated under the terms of the Note or any of the other Loan Documents shall have any action against Mortgagee for any damages whatsoever arising out of the payment or collection of any Excess Interest.

Section 16.6    Other Amounts Secured; Maximum Indebtedness.  Mortgagor acknowledges and agrees that this Mortgage secures the entire principal amount of the Note and interest accrued thereon, regardless of whether any or all of the loan proceeds are disbursed on or after the date hereof, and regardless of whether the outstanding principal is repaid in whole or part or are future advances made at a later date, any and all litigation and other expenses and any other amounts as provided herein or in any of the other Loan Documents, including, without limitation, the payment of any and all loan commissions, service charges, liquidated damages, expenses and advances due to or paid or incurred by Mortgagee in connection with the Loan, all in accordance with the loan commitment issued in connection with this transaction and the Loan Documents. Notwithstanding anything in this Mortgage to the contrary, under no circumstances shall the maximum principal indebtedness secured hereby exceed EIGHTEEN MILLION FOUR HUNDRED THOUSAND and NO/100 DOLLARS ($18,400,000), plus interest thereon and any disbursements made for the payment of taxes, special assessments, or insurance on the Property, with interest on such disbursements. It is agreed that any future advances made by Mortgagee for the benefit of Mortgagor from time to time under this Mortgage or the other Loan Documents and whether or not such advances are obligatory or are made at the option of Mortgagee, made at any time from and after the date of this Mortgage, and all interest accruing thereon, shall be equally secured by this

-24-

Mortgage and shall have the same priority as all amounts, if any, advanced as of the date hereof and shall be subject to all of the terms and provisions of this Mortgage. This Mortgage shall be valid and have priority to the extent of the full amount of the indebtedness secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law.

Section 16.7 <u>Adjustable Mortgage Loan Provisions</u>. The Note which this Mortgage secures is an adjustable note on which the interest rate may be adjusted from time to time in accordance with the terms and provisions set forth in the Note.

Section 16.8 <u>Deed of Trust</u>. If title to the Property or any part thereof is now or hereafter becomes vested in a trustee, any prohibition or restriction contained herein against the creation of any lien on the Property shall be construed as a similar prohibition or restriction against the creation of any lien on or security interest in the beneficial interest of such trust.

Section 16.9 <u>Collateral Protection Act</u>. Unless Mortgagor provides Mortgagee with evidence of the insurance required by this Mortgage or any other Loan Document, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Property or any other collateral for the indebtedness secured hereby. This insurance may, but need not, protect Mortgagor's interests. The coverage Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property or any other collateral for the indebtedness secured hereby. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing Mortgagee with evidence that Mortgagor has obtained insurance as required under this Mortgage or any other Loan Document. If Mortgagee purchases insurance for the Property or any other collateral for the indebtedness secured hereby, Mortgagor shall be responsible for the costs of that insurance, including interest in any other charges that Mortgagee may lawfully impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the indebtedness secured hereby. The costs of the insurance may be more than the cost of insurance that Mortgagor may be able to obtain on its own. For purposes of the Illinois Collateral Protection Act, 815 ILCS 180/1 *et. seq.*, Mortgagor hereby acknowledges Mortgagee's right pursuant to this paragraph to obtain collateral protection insurance.

Section 16.10 <u>Rights of Tenants</u>. Mortgagee shall have the right and option to commence a civil action to foreclose this Mortgage and to obtain a decree of foreclosure and sale subject to the rights of any tenant or tenants of the Property having an interest in the Property prior to that of Mortgagee. The failure to join any such tenant or tenants of the Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Mortgagor as a defense in any civil action instituted to collect the Obligations, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Property, any statue or rule of law at any time existing to the contrary notwithstanding.

[Remainder of page intentionally left blank]

-25-

MORTGAGOR ACKNOWLEDGES THAT IT HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS MORTGAGE INCLUDING, WITHOUT LIMITATION, THE WAIVER OF JURY TRIAL AND HAS BEEN ADVISED BY COUNSEL AS NECESSARY OR APPROPRIATE.

IN WITNESS WHEREOF, this Mortgage has been executed by Mortgagor as of the day and year first above written.

**MORTGAGOR:**

SSDF7 PORTFOLIO 1 LLC,
an Illinois limited liability company

By:  SSDF7 HOLDCO 1 LLC,
a Delaware limited liability company,
its Managing Member

By:  South Shore Property Holdings LLC,
a Delaware limited liability company,
its Managing Manager

By:  _____
Jerome H. Cohen
Its:  Managing Member

STATE OF _Florida_____, COUNTY OF _manatee____. SS.:

Personally appeared before me, the undersigned, a Notary Public for the state and county aforesaid, JEROME H. COHEN, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that he executed the within instrument for the purposes therein contained, and who further acknowledged that he is the Managing Member of SOUTH SHORE PROPERTY HOLDINGS LLC, a Delaware limited liability company, which is the Managing Manager of SSDF7 HOLDCO 1 LLC, a Delaware limited liability company which is the Managing Member of SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("Borrower"), and is authorized to execute this instrument on behalf of Borrower.

Given under my hand and notarial seal, this 25 day of _April____, 2018.

_____
Notary Public

My commission expires _August 17 2021_

JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

Signature Page to Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing

## EXHIBIT A

## LEGAL DESCRIPTION

### SITE NO. 1

**PARCEL 1:**
**8326-32 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-35-303-096-0000**

THE NORTH 87.50 FEET OF LOTS 11 TO 24 INCLUSIVE (TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF THE SOUTHWEST ¼ OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**PARCEL 2:**
**8334-40 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-35-303-097-0000**

THE SOUTHERLY 87.50 FEET OF THE NORTH 175 FEET OF LOTS 11 TO 24 INCLUSIVE (TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF THE SOUTHWEST ¼ OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

**PARCEL 3:**
**8342 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-35-303-098-0000**

THE SOUTHERLY 87.50 FEET OF THE NORTH 262.50 FEET OF LOTS 11 TO 24 (TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF THE SOUTHWEST ¼ OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

**PARCEL 4:**
**8352 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60649 / PIN #20-35-303-099-0000**

LOTS 11 TO 24 INCLUSIVE, TAKEN AS TRACT, (EXCEPT THE NORTH 262.50 FEET THEREOF) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

### SITE NO. 2

**6356 S. CALIFORNIA AVENUE, CHICAGO, ILLINOIS 60629 / PIN# 19-24-107-037-0000**

LOTS 26 AND 27 IN BLOCK 1 IN JOHN BAIN'S SUBDIVISION OF THE EAST ½ OF THE EAST ½ OF THE NORTHWEST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Exhibit A

Licensed to the Recorder of Deeds... Cook County

**SITE NO. 3**
**6357 S. TALMAN AVENUE, CHICAGO, ILLINOIS 60629 / PIN# 19-24-203-023-0000**

LOTS 28 AND 29 IN BLOCK 1 IN AVONDALE, A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 4**
**7051 S. BENNETT AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 20-24-328-011-0000**

LOT 13 (EXCEPT THE SOUTH 22 FEET THEREOF) AND LOT 14 (EXCEPT THE NORTH 8 FEET THEREOF) IN BLOCK 15 IN JACKSON PARK HIGHLANDS, IN THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 5**
**7442 S. CALUMET AVENUE, Chicago, ILLINOIS 60619 / PIN# 20-27-122-027-0000**

LOT 5 (EXCEPT THE SOUTH 8 FEET THEREOF) IN BLOCK 11 IN PRESCOTT'S SUBDIVISION OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 27, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 6**
**7201 S. DORCHESTER AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-26-210-001-0000**

LOTS 14 AND 15 IN BLOCK 10 IN JOHN G. SHORTALL TRUSTEE'S SUBDIVISION OF THE NORTH ½ OF THE NORTHEAST ¼ OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 7**
**7546 S. SAGINAW AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-304-020-0000**

THE SOUTH ½ OF LOT 10 IN DIVISION 2 OF WESTFALL'S SUBDIVISION OF 208 ACRES, BEING THE EAST ½ OF THE SOUTHWEST ¼ AND THE SOUTHEAST FRACTIONAL ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Exhibit A

## EXHIBIT B

### DESCRIPTION OF PERSONAL PROPERTY

(a)   All personal property (including, without limitation, all goods, supplies, equipment, furniture, furnishings, fixtures, machinery, inventory, and construction materials and software embedded in any of the foregoing) in which Mortgagor now or hereafter acquires an interest or right, which is now or hereafter located on or affixed to the Land or the Improvements or used or useful in the operation, use, or occupancy thereof or the construction of any Improvements thereon, together with any interest of Mortgagor in and to personal property which is leased or subject to any superior security interest, and all books, records, leases and other agreements, documents, and instruments of whatever kind or character, relating to the Land, Improvements, or such personal property;

(b)   All fees, income, rents, issues, profits, earnings, receipts, royalties, and revenues which, after the date hereof and while any portion of the Obligations remains unpaid or unperformed, may accrue from such personal property or any part thereof or from the Land, the Improvements or any other part of the Property, or which may be received or receivable by Mortgagor from any hiring, using, letting, leasing, subhiring, subletting, subleasing, occupancy, operation, or use thereof;

(c)   All of Mortgagor's present and future rights to receive payments of money, services, or property, including, without limitation, rights to all deposits from tenants of the Land or Improvements, sums deposited in the Collateral Account, chattel paper (whether tangible or electronic) notes, drafts, contract rights, instruments, general intangibles, as presently or hereafter in effect, and principal, interest and payments due on account of goods sold or leased, services rendered, loans made or credit extended, together with title to or interest in all agreements, documents, and instruments, evidencing, securing or guarantying the same;

(d)   All other intangible property (and related software) and rights relating to the Land, the Improvements, the personal property described in Paragraph (a) above or the operation, occupancy, or use thereof, including, without limitation, all governmental and non-governmental permits, licenses, and approvals relating to construction on or operation, occupancy, or use of the Land or Improvements, all names under or by which the Land or Improvements may at any time be operated or known, all rights to carry on business under any such names, or any variant thereof, all trade names and trademarks, servicemarks, logos and copyrights, relating in any way to the Land or the Improvements, and all good will and software in any way relating to the Land or the Improvements;

(e)   All as-extracted collateral produced from or allocated to the Land, including, without limitation, oil, gas, and other hydrocarbons and other minerals.

(f)   Mortgagor's rights under all insurance policies covering the Land (including, but not limited to, title insurance policies), the Improvements, the Personal Property, and the other parts of the Property and any and all proceeds, loss payments, and premium refunds payable regarding the same;

(g)   All reserves, deferred payments, deposits, refunds, cost savings, and payments of any kind relating to the construction of any Improvements on the Land;

(h)   All water stock relating to the Land;

(i)   All causes of action, claims, compensation, and recoveries for any damage to, destruction of, or condemnation or taking of the Land, the Improvements, the Personal Property, or any other part of the Property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or

Exhibit B

injury to the Land, the Improvements, the Personal Property, or any other part of the Property, or for any loss or diminution in value of the Premises, the Improvements, the Personal Property, or any other part of the Property;

(j)     All architectural, structural, mechanical, and engineering plans and specifications prepared for construction of Improvements or extraction of minerals or gravel from the Premises and all studies, data, and drawings related thereto; and also all contracts and agreements of the Mortgagor relating to the aforesaid plans and specifications or to the aforesaid studies, data, and drawings or to the construction of Improvements on or extraction of minerals or gravel from the Land;

(k)     All commercial tort claims Mortgagor now has or hereafter acquires relating to the properties, rights, titles, and interests referred to in this Exhibit B or elsewhere in the Mortgage to which this Exhibit B is attached;

(l)     All letter of credit rights (whether or not the letter of credit is evidenced by a writing) Mortgagor now has or hereafter requires relating to the properties, rights, titles and interest referred to in the Mortgage to which this Exhibit B is attached;

(m)     All proceeds from sale or disposition of any of the aforesaid collateral and all supporting obligations ancillary thereto or arising in any way in connection therewith;

(n)     All Mortgagor's rights in proceeds of the Loan evidenced by the Note;

(o)     All of Mortgagor's rights in any and all warranties and guaranties with respect to any goods, materials, supplies, chattels, fixtures, equipment, machinery, building materials, and work in progress attached to or placed in or on any part of the Land, or used in connection with any construction on the Land;

(p)     All of Mortgagor's rights to and under any purchase agreements, including, without limitation, any deposits paid to Mortgagor pursuant to such purchase agreements; and

(q)     All of Mortgagor's rights in all plans, specifications, plats, agreements, assessments, reports, and surveys related to the Premises.

As used in this Exhibit B the terms "Land", "Loan Agreement", "Obligations", "Note", "Property", "Improvements", and "Personal Property" shall have the meanings set forth in the Mortgage to which this Exhibit B is attached.

Exhibit B

EXHIBIT 17

PREPARED BY AND AFTER
RECORDING RETURN TO:

Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin, Suite 2500
Southfield, Michigan 48334
Attention: Eric Novetsky, Esq.

*#1890659—1890665*

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

*S & C*

Doc# 1812734049 Fee $60.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:39 AM  PG: 1 OF 12

## ASSIGNMENT OF LEASES AND RENTS

This **ASSIGNMENT OF LEASES AND RENTS** (this "**Assignment**") is made and effective the *2nd* day of May, 2018, by **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company having an address at 1414 E. 62nd Pl., Chicago, IL 60601 ("**Assignor**") for the benefit of **LIBERTY EBCP, LLC**, a Delaware limited liability company having an address at 1500 JFK Boulevard, Suite 250, Philadelphia, Pennsylvania 19102 ("**Assignee**").

### W I T N E S S E T H:

WHEREAS, this Assignment is given in connection with a term loan in the principal sum of NINE MILLION TWO HUNDRED THOUSAND DOLLARS AND NO/100 DOLLARS ($9,200,000) (the "**Loan**") made by Assignee to Assignor or pursuant to that certain Term Loan Agreement dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by a certain Secured Promissory Note in the principal amount of the Loan, dated the date hereof made by Assignor to Assignee (such note, as the same may be amended, restated, replaced, supplemented, consolidated, severed or otherwise modified from time to time, being hereinafter referred to as the "**Note**");

WHEREAS, the Note is secured by two certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (collectively, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Mortgage**"), each dated as of the date hereof, made by Assignor in favor of Assignee; and

WHEREAS, Assignor desires to further secure the payment and performance of all of its Obligations under the Note, the Loan Agreement and all other documents evidencing or securing the Obligations or delivered in connection with the making of the Loan (as the same may be amended, restated,



*12 18*

replaced, supplemented or otherwise modified from time to time, collectively referred to as "**Loan Documents**").

NOW THEREFORE, in consideration of the making of the Loan by Assignee to Assignor and the covenants, agreements, representations and warranties set forth in this Assignment Assignor, intending to be legally bound, agrees as follows:

## ARTICLE 1 - ASSIGNMENT

Section 1.1     PROPERTY ASSIGNED.  Assignor hereby absolutely and unconditionally assigns and grants to Assignee the following property, rights, interests and estates, now owned, or hereafter acquired by Assignor:

(a)     LEASES.  All existing and future "leases" and "lease provisions" (as described in Exhibit B annexed hereto and made a part hereof) affecting the use, enjoyment, or occupancy of all or any part of those certain lots or pieces of land, more particularly described in Exhibit A annexed hereto and made a part hereof, or all or any part of the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (collectively, the "**Property**") and the right, title and interest of Assignor, its successors and assigns, therein and thereunder.

(b)     OTHER LEASES AND AGREEMENTS.   All other leases and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made, whether made before or after the filing by or against Assignor of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") together with any extension, renewal or replacement of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment. The "leases" and the "lease provisions" described in Subsection 1.1(a) and the leases and other agreements described in this Subsection 1.1(b) are collectively referred to as the "**Leases**".

(c)     RENTS.  All "rents" (as described in Exhibit B annexed hereto and made a part hereof) whether paid or accruing before or after the filing by or against Assignor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**").

(d)     BANKRUPTCY CLAIMS.  All of Assignor's claims and rights to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code (collectively, the "**Bankruptcy Claims**").

(e)     LEASE GUARANTIES.  All of Assignor's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support (individually, a "**Lease Guaranty**", collectively, the "**Lease Guaranties**") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "**Lease Guarantor**", collectively, the "**Lease Guarantors**") to Assignor.

(f)     PROCEEDS.  All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(g)     OTHER.  All rights, powers, privileges, options and other benefits of Assignor as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to

-2-

apply the same to the payment of the Obligations) and to do all other things which Assignor or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

      (h)   ENTRY. The right, at Assignee's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents.

      (i)   POWER OF ATTORNEY. Assignor's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Assignee for the proper management and preservation of the Property.

      (j)   OTHER RIGHTS AND AGREEMENTS. Any and all other rights of Assignor in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

## ARTICLE 2 - TERMS OF ASSIGNMENT

      Section 2.1   PRESENT ASSIGNMENT AND LICENSE BACK. It is intended by Assignor that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1, Assignee grants to Assignor a revocable license to collect, receive, use and enjoy the Rents, as well as other sums due under the Lease Guaranties. Assignor shall hold the Rents, as well as all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Obligations, in trust for the benefit of Assignee for use in the payment of such sums.

      Section 2.2   NOTICE TO LESSEES. Assignor hereby authorizes and directs the lessees named in the Leases or any other future lessees or occupants of the Property and all Lease Guarantors to pay over to Assignee or to such other party as Assignee directs all Rents and all sums due under any Lease Guaranties upon receipt from Assignee of written notice to the effect that Assignee is then the holder of this Assignment and that an Event of Default (as defined in the Loan Agreement) exists, and to continue so to do until otherwise notified by Assignee.

      Section 2.3   INCORPORATION BY REFERENCE. All representations, warranties, covenants, conditions and agreements contained in the Loan Agreement and the other Loan Documents as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3 - REMEDIES

      Section 3.1   REMEDIES OF ASSIGNEE. Upon the occurrence of an Event of Default, the license granted to Assignor in Section 2.1 of this Assignment shall automatically be revoked, and Assignee shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties, whether or not Assignee enters upon or takes control of the Property. In addition, Assignee may, at its option, without waiving such Event of Default, without regard to the adequacy of the security for the Obligations, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Assignor and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Assignor and its agents or servants wholly therefrom, and take possession of the Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Assignee may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those

-3-

past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as Assignee may deem proper and may apply the Rents and sums received pursuant to any Lease Guaranties to the payment of the following in such order and proportion as Assignee in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Assignee may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Assignee may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Obligations, together with all costs and attorneys' fees. In addition, upon the occurrence of an Event of Default, Assignee, at its option, may (1) complete any construction on the Property in such manner and form as Assignee deems advisable, (2) exercise all rights and powers of Assignor, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums due under any Lease Guaranties, (3) either require Assignor to pay monthly in advance to Assignee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Assignor, or (4) require Assignor to vacate and surrender possession of the Property to Assignee or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise.

Section 3.2    OTHER REMEDIES.  Nothing contained in this Assignment and no act done or omitted by Assignee pursuant to the power and rights granted to Assignee hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Loan Agreement, the Note, or the other Loan Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms thereof.  The right of Assignee to collect the Obligations and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.  Assignor hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Assignor under this Assignment, the Loan Agreement, the Note, the other Loan Documents or otherwise with respect to the Loan in any action or proceeding brought by Assignee to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Loan Agreement, the Note, or any of the other Loan Documents (provided, however, that the foregoing shall not be deemed a waiver of Assignor's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Assignor's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Assignee in any separate action or proceeding).

Section 3.3    OTHER SECURITY.  Assignee may take or release other security for the payment of the Obligations, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Obligations without prejudice to any of its rights under this Assignment.

Section 3.4    NON-WAIVER.  The exercise by Assignee of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and sums due under the Lease Guaranties and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Loan Agreement, the Leases, this Assignment or the other Loan Documents. The failure of Assignee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (a) the failure of Assignee to comply with any request of Assignor or any other party to take any action to

enforce any of the provisions hereof or of the Loan Agreement, the Note or the other Loan Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Assignee extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Loan Agreement, the Note, or the other Loan Documents. Assignee may resort for the payment of the Obligations to any other security held by Assignee in such order and manner as Assignee, in its discretion, may elect. Assignee may take any action to recover the Obligations, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Assignee thereafter to enforce its rights under this Assignment. The rights of Assignee under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Assignee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

Section 3.5    Bankruptcy.

(a)    Upon or at any time after the occurrence of an Event of Default, Assignee shall have the right to proceed in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)    If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Assignee not less than ten (10) days' prior notice of the date on which Assignor shall apply to the bankruptcy court for authority to reject the Lease. Assignee shall have the right, but not the obligation, to serve upon Assignor within such ten-day period a notice stating that (i) Assignee demands that Assignor assume and assign the Lease to Assignee pursuant to Section 365 of the Bankruptcy Code and (ii) Assignee covenants to cure or provide adequate assurance of future performance under the Lease. If Assignee serves upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Assignee of the covenant provided for in clause (ii) of the preceding sentence.

ARTICLE 4 - NO LIABILITY, FURTHER ASSURANCES

Section 4.1    NO LIABILITY OF ASSIGNEE. This Assignment shall not be construed to bind Assignee to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Assignee. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Property after an Event of Default or from any other act or omission of Assignee in managing the Property after an Event of Default unless such loss is caused by the willful misconduct or gross negligence of Assignee as determined by a final non-appealable court of competent jurisdiction. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Assignor shall indemnify Assignee for, and hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Assignee by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Assignee incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Mortgage and the other Loan Documents and Assignor shall reimburse Assignee therefor immediately upon demand and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured by this Assignment and by the Mortgage and the other Loan Documents immediately due and payable. This

Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Assignee, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Assignee responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property including, without limitation, the presence of any Hazardous Substances (as defined in the ADA and Environmental Indemnity), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 4.2   NO MORTGAGEE IN POSSESSION.   Nothing herein contained shall be construed as constituting Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Assignee. In the exercise of the powers herein granted Assignee, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

Section 4.3   FURTHER ASSURANCES.   Assignor will, at the cost of Assignor, and without expense to Assignee, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Assignee shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Assignee the property and rights hereby assigned or intended now or hereafter so to be, or which Assignor may be or may hereafter become bound to convey or assign to Assignee, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Assignee to execute in the name of Assignor to the extent Assignee may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

ARTICLE 5 - MISCELLANEOUS PROVISIONS

Section 5.1   CONFLICT OF TERMS.   In case of any conflict between the terms of this Assignment and the terms of the Loan Agreement, the terms of the Loan Agreement shall prevail.

Section 5.2   NO ORAL CHANGE.   This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 5.3   GENERAL DEFINITIONS.   All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Assignor" shall mean "each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Assignee" shall mean "Assignee and any successor from time to time under the Loan Agreement", the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Loan Agreement," the word "Property" shall include any portion of the Property and any interest therein, the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorney's, paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Assignee in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

-6-

Section 5.4     INAPPLICABLE PROVISIONS. If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

Section 5.5     GOVERNING LAW. **THIS ASSIGNMENT WAS NEGOTIATED IN THE COMMONWEALTH OF PENNSYLVANIA, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY ASSIGNOR IN THE COMMONWEALTH OF PENNSYLVANIA, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE COMMONWEALTH OF PENNSYLVANIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS ASSIGNMENT, THE MORTGAGE, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE PROPERTY IS LOCATED (ILLINOIS). TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS MORTGAGE, THE NOTE AND/OR THE OTHER LOAN DOCUMENTS.** In the event that any provision of this Assignment or any other Loan Document conflicts with applicable law, such conflict shall not affect other provisions of this Assignment or the applicable Loan Document which can be given effect without the conflicting provisions, and to this end the provisions of this Assignment and the other Loan Documents are declared to be severable.

Section 5.6     TERMINATION OF ASSIGNMENT. Upon payment in full of the Obligations, this Assignment shall become and be void and of no effect.

Section 5.7     NOTICES. All notices or other written communications hereunder shall be delivered in accordance with Section 15.1 of the Loan Agreement.

Section 5.8     WAIVER OF TRIAL BY JURY.     ASSIGNOR AND, BY ITS ACCEPTANCE HEREOF, ASSIGNEE EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF ASSIGNEE, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Section 5.9     SUCCESSORS AND ASSIGNS. This Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns forever.

Section 5.10     HEADINGS, ETC. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in

any way, the scope or intent of the provisions hereof.

    Section 5.11  JOINT AND SEVERAL. The term "Assignor" shall be deemed to refer to each and every Person comprising Assignor from time to time, jointly and severally, and to include the heirs, executors, administrators, legal representatives, successors and assigns of each such Person. Without limiting the generality of the foregoing, the term "Assignor" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of any Person comprising Assignor from time to time or any interest in such Person. If Assignor consists of more than one Person, all representations, warranties, covenants, obligations and liabilities of each such Person hereunder shall be joint and several.  A default hereunder by any such Person shall be deemed a default by all such Persons and Assignor.  The representations, warranties and covenants contained herein shall be read to apply to the individual Persons comprising Assignor when the context so requires, but a breach of any such representation, warranty or covenant or a breach of any obligation under this Assignment shall be deemed a breach by all such Persons and Assignor, entitling Assignee to exercise all of their rights and remedies under this Assignment and under applicable law.

ASSIGNOR ACKNOWLEDGES THAT IT HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT INCLUDING, WITHOUT LIMITATION, THE WAIVER OF JURY TRIAL, AND HAS BEEN ADVISED BY COUNSEL AS NECESSARY OR APPROPRIATE.

IN WITNESS WHEREOF, intending to be legally bound, Assignor has executed this Assignment as of the day and year first above written.

**ASSIGNOR:**

SSDF7 PORTFOLIO 1 LLC,
an Illinois limited liability company

By:     SSDF7 HOLDCO 1 LLC,
        a Delaware limited liability company,
        its Managing Member

By:     South Shore Property Holdings LLC,
        a Delaware limited liability company,
        its Managing Manager

By:     _____
        Jerome H. Cohen
Its:    Managing Member

STATE OF Florida    )
COUNTY OF manatee   )

Personally appeared before me, the undersigned, a Notary Public for the state and county aforesaid, JEROME H. COHEN, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that he executed the within instrument for the purposes therein contained, and who further acknowledged that he is the Managing Member of SOUTH SHORE PROPERTY HOLDINGS LLC, a Delaware limited liability company, which is the Managing Manager of SSDF7 HOLDCO 1 LLC, a Delaware limited liability company which is the Managing Member of SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("Borrower"), and is authorized to execute this instrument on behalf of Borrower.

WITNESS my hand and seal at office this 25 day of April, 2018.

_____
Notary Public

JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

My Commission Expires:
August 17, 2021

[Signature Page to Assignment of Leases and Rents]

**EXHIBIT A**

DESCRIPTION OF THE LAND

**SITE NO. 8**
**4317-19 S. MICHIGAN AVENUE, CHICAGO, ILLINOIS 60653 / PIN# 20-03-302-002-0000**

LOT 7 IN BLOCK 1 IN L. W. STONE'S SUBDIVISION OF THE EAST 20 ACRES OF THE NORTH 30 ACRES OF THE WEST ½ OF THE SOUTHWEST 1/4 OF SECTION 3, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 9**
**2736-2744 W. 64TH STREET, CHICAGO, ILLINOIS 60629 / PIN# 19-24-200-029-0000**

LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF) IN MOREAU AND DE JONG'S RESUBDIVISION OF LOTS 30 TO 48 INCLUSIVE IN BLOCK 16 IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 10**
**2453 E. 75TH STREET/7508 S. ESSEX AVENUE, CHICAGO, IL 60649 / PIN# 21-30-301-030-0000**

LOT 1 AND THE EAST 18.00 FEET OF LOT 2 IN BLOCK 3 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 11**
**7701-03 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-320-001-0000**

LOT 36 AND THE NORTH 2.41 FEET OF LOT 35 IN BLOCK 10 IN SOUTH SHORE PARK, A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 12**
**7748-52 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-319-029-0000**

LOTS 16, 17 AND 18, IN BLOCK 11, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 13**
**816-22 E. MARQUETTE ROAD, CHICAGO, ILLINOIS 60637 / PIN# 20-23-112-028-0000**

LOT 12 IN BLOCK 8 IN WOODLAWN RIDGE SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST ¼ OF SECTION 23, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 14**
**7957-59 S. MARQUETTE AVENUE, CHICAGO, ILLINOIS 60617 / PIN# 21-31-106-024-0000**

LOTS 29 AND 30 IN THE SUBDIVISION OF BLOCK 6 OF CIRCUIT COURT PARTITION OF THE NORTHWEST ¼ OF THE NORTHEAST ¼ AND THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF SECTION 31 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**SITE NO. 15**
**7600 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-309-030-0000**

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 16**
**7656 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-309-026-0000**

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST ¼ IN SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 17**
**8201 S. KINGSTON AVENUE, CHICAGO, IL 60617 / PIN# 21-31-126-001-0000**

LOT 38 (EXCEPT THE SOUTH 28 AND ONE HALF FEET THEREOF) AND ALL OF LOTS 39 AND 40 IN BLOCK 4 IN THE SUBDIVISION OF LOTS 1 TO 10, BOTH INCLUSIVE, IN CHARLES RINGER'S SOUTH SHORE ADDITION, BEING A SUBDIVISION OF THE EAST ½ OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF TAKEN FOR WIDENING EAST 83RD STREET) IN COOK COUNTY, ILLINOIS.

## EXHIBIT B

## DESCRIPTION OF LEASES AND RENTS

As used in Subsection 1.1(a), the term "leases" shall mean all ground leases, leases, subleases, licenses, franchises, concessions or grants of other possessory interests, tenancies, and any other agreements affecting the use, possession or occupancy of the Property or any part thereof (including, without limitation, guest rooms, restaurants, bars, conference and meeting rooms, and banquet halls and other public facilities), whether now or hereafter existing or entered into (including, without limitation, any use or occupancy arrangements created pursuant to Section 365(d) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or occupant of any portion of the Property) and all amendments, modifications, supplements, extensions or renewals thereof, whether now or hereafter existing and all amendments, modifications, supplements, extensions or renewals thereof. As used in Subsection 1.1(a) the term "lease provisions" shall mean the right to enforce, whether at law or in equity or by any other means, all terms, covenants and provisions of the Leases.

As used in Subsection 1.1(c), the term "rents" shall mean all rents, issues, profits, royalties (including all oil and gas or other hydrocarbon substances), earnings, receipts, revenues, accounts, account receivable, security deposits and other deposits (subject to the prior right of the tenants making such deposits) and income, including, without limitation, all revenues and credit card receipts collected from guest rooms, restaurants, bars, meeting rooms, banquet rooms and recreational facilities, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Assignor or any operator or manager of the hotel or the commercial space located in the Property or acquired from others (including, without limitation, from the rental of any office space, retail space, guest rooms or other space, halls, stores, and offices, and deposits securing reservations of such space), license, lease, sublease and concession fees and rentals, health club membership fees, food and beverage wholesale and retail sales, service charges, vending machine sales, proceeds, if any, from business interruption or other loss of income insurance, fixed, additional and percentage rents, and all operating expense reimbursements, reimbursements for increases in taxes, sums paid by tenants to Assignor to reimburse Assignor for amounts originally paid or to be paid by Assignor or Assignor's agents or affiliates for which such tenants were liable, as, for example, tenant improvement costs in excess of any work letter, lease takeover costs, moving expenses and tax and operating expense pass throughs for which a tenant is solely liable, parking, maintenance, common area, tax, insurance, utility and services charges and contributions, proceeds of sale of electricity, gas, heating, air-conditioning and other utilities and services, deficiency rents and liquidated damages, and other benefits now or hereafter derived from any portion of the Property or otherwise due and payable or to become due and payable as a result of any ownership, use, possession, occupancy or operation thereof and/or services rendered, goods provided and business conducted in connection therewith (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or other occupants of any portion of the Property and all claims as a creditor in connection with any of the foregoing) and all cash or security deposits, advance rentals, and all deposits or payments of a similar nature relating thereto, now or hereafter, including during any period of redemption, derived from the Property or any portion thereof and all proceeds from the cancellation, surrender, sale or other disposition of the Leases.

EXHIBIT 18

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Cathy Bruning (248-727-1440)

**B. E-MAIL CONTACT AT FILER (optional)**
cbruning@jaffelaw.com

**C. EMAIL ACKNOWLEDGMENT TO: (Email Address)**

Cathy Bruning
c/o Jaffe Raitt Heuer & Weiss PC
27777 Franklin Road, Suite 2500
Southfield, MI 48034

Doc# 1812734050 Fee $48.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:49 AM PG: 1 OF 6

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SSDF7 Portfolio 1 LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1414 E. 62nd Pl. | Chicago | IL | 60637 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Liberty EBCP, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1500 JFK Blvd., Sujite 250 | Philadelphia | PA | 19102 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:

Debtor hereby irrevocably mortgages, bargains, sells, conveys, transfers, pledges, sets over and assigns and grants a secured interest to and in favor of Secured Party, including power of sale, in all of Debtor's right, title and interest in and to the land described in the attached Exhibit A, including all buildings, structures, fixtures and other improvements now or hereafter located thereon and all other collateral listed on Exhibit B and attached hereto.

*1890659- 1890668*

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

*6 of 6*

**5. Check only if applicable and check only one box:** Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a. Check only if applicable and check only one box:**
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b. Check only if applicable and check only one box:**
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
COOK COUNTY, IL (Parcels 8-17)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)
Rev. 4/21/16

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| **SSDF7 Portfolio 1 LLC** | |

OR

| | |
|---|---|
| 9b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| | | | | |
|---|---|---|---|---|
| 10a. ORGANIZATION'S NAME | | | | |

OR

| | | | | |
|---|---|---|---|---|
| 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| | | | |
|---|---|---|---|
| 11a. ORGANIZATION'S NAME | | | |

OR

| | | | |
|---|---|---|---|
| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☑ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

**See attached Exhibit A**

17. MISCELLANEOUS:
**COOK COUNTY, IL  (Parcels 8-17)**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

**EXHIBIT A**

**LEGAL DESCRIPTION**

<u>SITE NO. 8</u>
**4317-19 S. MICHIGAN AVENUE, CHICAGO, ILLINOIS 60653 / PIN# 20-03-302-002-0000**

LOT 7 IN BLOCK 1 IN L. W. STONE'S SUBDIVISION OF THE EAST 20 ACRES OF THE NORTH 30 ACRES OF THE WEST ½ OF THE SOUTHWEST 1/4 OF SECTION 3, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

<u>SITE NO. 9</u>
**2736-2744 W. 64TH STREET, CHICAGO, ILLINOIS 60629 / PIN# 19-24-200-029-0000**

LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF) IN MOREAU AND DE JONG'S RESUBDIVISION OF LOTS 30 TO 48 INCLUSIVE IN BLOCK 16 IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

<u>SITE NO. 10</u>
**2453 E. 75TH STREET/7508 S. ESSEX AVENUE, CHICAGO, IL 60649 / PIN# 21-30-301-030-0000**

LOT 1 AND THE EAST 18.00 FEET OF LOT 2 IN BLOCK 3 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

<u>SITE NO. 11</u>
**7701-03 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-320-001-0000**

LOT 36 AND THE NORTH 2.41 FEET OF LOT 35 IN BLOCK 10 IN SOUTH SHORE PARK, A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

<u>SITE NO. 12</u>
**7748-52 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-319-029-0000**

LOTS 16, 17 AND 18, IN BLOCK 11, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Exhibit A

4079414.v1

### SITE NO. 13
**816-22 E. MARQUETTE ROAD, CHICAGO, ILLINOIS 60637 / PIN# 20-23-112-028-0000**

LOT 12 IN BLOCK 8 IN WOODLAWN RIDGE SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST ¼ OF SECTION 23, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

### SITE NO. 14
**7957-59 S. MARQUETTE AVENUE, CHICAGO, ILLINOIS 60617 / PIN# 21-31-106-024-0000**

LOTS 29 AND 30 IN THE SUBDIVISION OF BLOCK 6 OF CIRCUIT COURT PARTITION OF THE NORTHWEST ¼ OF THE NORTHEAST ¼ AND THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF SECTION 31 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

### SITE NO. 15
**7600 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-309-030-0000**

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

### SITE NO. 16
**7656 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-309-026-0000**

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST ¼ IN SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

### SITE NO. 17
**8201 S. KINGSTON AVENUE, CHICAGO, IL 60617 / PIN# 21-31-126-001-0000**

LOT 38 (EXCEPT THE SOUTH 28 AND ONE HALF FEET THEREOF) AND ALL OF LOTS 39 AND 40 IN BLOCK 4 IN THE SUBDIVISION OF LOTS 1 TO 10, BOTH INCLUSIVE, IN CHARLES RINGER'S SOUTH SHORE ADDITION, BEING A SUBDIVISION OF THE EAST ½ OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF TAKEN FOR WIDENING EAST 83RD STREET) IN COOK COUNTY, ILLINOIS.

Exhibit A

Licensed to Property Info by Cook County Recorder of Deeds

## EXHIBIT B

### DESCRIPTION OF PERSONAL PROPERTY

(a)   All personal property (including, without limitation, all goods, supplies, equipment, furniture, furnishings, fixtures, machinery, inventory, and construction materials and software embedded in any of the foregoing) in which Debtor now or hereafter acquires an interest or right, which is now or hereafter located on or affixed to the Land or the Improvements or used or useful in the operation, use, or occupancy thereof or the construction of any Improvements thereon, together with any interest of Debtor in and to personal property which is leased or subject to any superior security interest, and all books, records, leases and other agreements, documents, and instruments of whatever kind or character, relating to the Land, Improvements, or such personal property;

(b)   All fees, income, rents, issues, profits, earnings, receipts, royalties, and revenues which, after the date hereof and while any portion of the Obligations remains unpaid or unperformed, may accrue from such personal property or any part thereof or from the Land, the Improvements or any other part of the Property, or which may be received or receivable by Debtor from any hiring, using, letting, leasing, subhiring, subletting, subleasing, occupancy, operation, or use thereof;

(c)   All of Debtor's present and future rights to receive payments of money, services, or property, including, without limitation, rights to all deposits from tenants of the Land or Improvements, sums deposited in the Collateral Account, chattel paper (whether tangible or electronic) notes, drafts, contract rights, instruments, general intangibles, as presently or hereafter in effect, and principal, interest and payments due on account of goods sold or leased, services rendered, loans made or credit extended, together with title to or interest in all agreements, documents, and instruments, evidencing, securing or guarantying the same;

(d)   All other intangible property (and related software) and rights relating to the Land, the Improvements, the personal property described in Paragraph (a) above or the operation, occupancy, or use thereof, including, without limitation, all governmental and non- governmental permits, licenses, and approvals relating to construction on or operation, occupancy, or use of the Land or Improvements, all names under or by which the Land or Improvements may at any time be operated or known, all rights to carry on business under any such names, or any variant thereof, all trade names and trademarks, servicemarks, logos and copyrights, relating in any way to the Land or the Improvements, and all good will and software in any way relating to the Land or the Improvements;

(e)   All as-extracted collateral produced from or allocated to the Land, including, without limitation, oil, gas, and other hydrocarbons and other minerals.

(f)   Debtor's rights under all insurance policies covering the Land (including, but not limited to, title insurance policies), the Improvements, the Personal Property, and the other parts of the Property and any and all proceeds, loss payments, and premium refunds payable regarding the same;

Exhibit B

(g)    All reserves, deferred payments, deposits, refunds, cost savings, and payments of any kind relating to the construction of any Improvements on the Land;

(h)    All water stock relating to the Land;

(i)    All causes of action, claims, compensation, and recoveries for any damage to, destruction of, or condemnation or taking of the Land, the Improvements, the Personal Property, or any other part of the Property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or injury to the Land, the Improvements, the Personal Property, or any other part of the Property, or for any loss or diminution in value of the Property, the Improvements, the Personal Property, or any other part of the Property;

(j)    All architectural, structural, mechanical, and engineering plans and specifications prepared for construction of Improvements or extraction of minerals or gravel from the Property and all studies, data, and drawings related thereto; and also all contracts and agreements of the Debtor relating to the aforesaid plans and specifications or to the aforesaid studies, data, and drawings or to the construction of Improvements on or extraction of minerals or gravel from the Land;

(k)    All commercial tort claims Debtor now has or hereafter acquires relating to the properties, rights, titles, and interests referred to in this Exhibit B or elsewhere in the Mortgage;

(l)    All letter of credit rights (whether or not the letter of credit is evidenced by a writing) Debtor now has or hereafter requires relating to the properties, rights, titles and interest referred to in the Mortgage;

(m)    All proceeds from sale or disposition of any of the aforesaid collateral and all supporting obligations ancillary thereto or arising in any way in connection therewith;

(n)    All Debtor's rights in proceeds of the Loan evidenced by the Note;

(o)    All of Debtor's rights in any and all warranties and guaranties with respect to any goods, materials, supplies, chattels, fixtures, equipment, machinery, building materials, and work in progress attached to or placed in or on any part of the Land, or used in connection with any construction on the Land;

(p)    All of Debtor's rights to and under any purchase agreements, including, without limitation, any deposits paid to Debtor pursuant to such purchase agreements; and

(q)    All of Debtor's rights in all plans, specifications, plats, agreements, assessments, reports, and surveys related to the Property.

As used in this Exhibit B the terms "Land", "Loan Agreement", "Obligations", "Note", "Property", "Improvements", "Debtor", "Mortgage" and "Personal Property" shall have the meanings set forth in the Mortgage, Assignment of Leases and Rents and Security Agreement among the Debtor and Secured Party dated as of May 2, 2018, covering the land described in Exhibit A.

Exhibit B

EXHIBIT 19

Lis Pendens Notice     (Rev. 2/09/04)
                     CCG N066

IN THE CIRCUIT COURT OF
COOK COUNTY, ILLINOIS

MICHIGAN SHORE APARTMENTS
LLC

                               Plaintiff

Doc# 1822706115 Fee $62.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A. YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 08/15/2018 12:22 PM  PG:  1 OF 4

EQUITYBUILD, INC., SSDF7 PORTFOLIO LLC, LIBERTY EBCP LLC

                               Defendant

No. 2018-CH-09098

## LIS PENDENS NOTICE

I, the undersigned, do hereby certify that the above entitled cause was filed in the Circuit Court of Cook County on the

19th _____ day of July _____ 2018 _____ and is now pending in the Court and that the

property affected by the cause is described as follows:

See Property Descriptions attached as Exhibit A

in Cook County, Illinois.

Atty. No.: 14516
Name: Cary G. Schiff & Associates
Atty. for: Plaintiff
Address: 134 N. LaSalle, Suite 1740
City/State/Zip: Chicago, IL 60602
Telephone: (312) 419-1130

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

CCRD REVIEW

Licensed to Property Insight by Cook County Recorder of Deeds

### Exhibit A

**Property 1:**

LOTS 26 AND 27 IN BLOCK 1 IN JOHN BAIN'S SUBDIVISION OF THE EAST 1/2 OF THE EAST 1/2 OF THE NORTHWEST 1/4 OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 19-24-107-037-0000

Address(es) of Real Estate: 6356 S. CALIFORNIA AVENUE, CHICAGO, ILLINOIS 60629

**Property 2:**

LOTS 28 AND 29 IN BLOCK 1 IN AVONDALE, A SUBDIVISION OS THE WEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 19-24-203-023-0000

Address(es) of Real Estate: 6357 S. TALMAN AVENUE, CHICAGO, ILLINOIS 60629

**Property 3:**

LOT 13 (EXCEPT THE SOUTH 22 FEET THEREOF) AND LOT 14 (EXCEPT THE NORTH 8 FEET THEREOF) IN BLOCK 15 IN JACKSON PARK HIGHLANDS, IN THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 20-24-328-011-0000

Address(es) of Real Estate: 7051 S. BENNETT AVENUE, CHICAGO, ILLINOIS 60649

**Property 4:**

LOT 5 (EXCEPT THE SOUTH 8 FEET THEREOF) IN BLOCK 11 IN PRESCOTT'S SUBDIVISION OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 27, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 20-27-122-027-0000

Address(es) of Real Estate: 7442 S. CALUMET AVENUE, CHICAGO, ILLINOIS 60619

**Property 5:**

LOTS 14 AND 15 IN BLOCK 10 IN JOHN G. SHORTALL TRUSTEES SUBDIVISION OF THE NORTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 14, EAST OF TI.IE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Lis Pendens Notice
MICHIGAN SHORE APARTMENTS LLC v. EQUITYBUILD, INC., SSDF7 PORTFOLIO LLC,
LIBERTY EBCP LLC
2018-CH-09098

Permanent Real Estate Index Number(s): 20-26-210-001-0000

Address(es) of Real Estate: 7201 S. DORCHESTER AVENUE, CHICAGO, ILLINOIS 60619 and/or 1401 E. 72ND ST., CHICAGO, ILLINOIS

**Property 6:**

THE SOUTH 1/2 OF LOT 10 IN DIVISION 2 OF WESTFALL'S SUBDIVISION OF 208 ACRES, BEING THE EAST 1/2 OF THE SOUTHWEST 1/4 AND THE SOUTHEAST FRACTIONAL 1/4 OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 2l-30-304-020-0000

Address(es) of Real Estate: 7546 S. SAGINAW AVENUE, CHICAGO, ILLINOIS 60649

**Property 7:**

LOT 7 IN BLOCK 1 IN L. W. STONE'S SUBDIVISION OF THE EAST 20 ACRES OF THE NORTH 30 ACRES OF THE WEST 1/2 OF THE SOUTHTWEST 1/4 OF SECTION 3, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 20-03-302-002-0000

Address(es) of Real Estate: 4317-19 S. MICHIGAN AVENUE, CHICAGO, ILLINOIS 60653

**Property 8:**

LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF) IN MOREAU AND DE JONG'S RESUBDIVISION OF LOTS 30 TO 48 INCLUSIVE IN BLOCK 16 IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISION OF THE WEST 1/2 OF THE NORTHEAST 1/4 OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 19-24-200-029-0000

Address(es) of Real Estate: 2736-2744 W. 64TH STREET, CHICAGO, ILLINOIS 60629

**Property 9:**

LOT 1 AND THE EAST 18.OO FEET OF LOT 2 IN BLOCK 3 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 21-30-301-030-0000

Address(es) of Real Estate: 2453 E.75TH STREET/7508 S. ESSEX AVENUE, CHICAGO, IL 60649

Lis Pendens Notice
MICHIGAN SHORE APARTMENTS LLC v. EQUITYBUILD, INC., SSDF7 PORTFOLIO LLC, LIBERTY EBCP LLC
2018-CH-09098

**Property 10:**

LOTS 16, 17 AND 18, IN BLOCK 11, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number(s): 21-30-319-029-0000

Address(es) of Real Estate: 7748-52 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649

Lis Pendens Notice

MICHIGAN SHORE APARTMENTS LLC v. EQUITYBUILD, INC., SSDF7 PORTFOLIO LLC, LIBERTY EBCP LLC
2018-CH-09098

EXHIBIT 20

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 11/29/2018 10:00 AM - 10:00 AM
Courtroom Number: 2601
Location: District 1 Court
    Cook County, IL

FILED
7/19/2018 4:32 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09098

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| MICHIGAN SHORE APARTMENTS LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:     **2018CH09098** |
| EQUITYBUILD, INC., | ) | |
| SSDF7 PORTFOLIO 1 LLC, | ) | |
| LIBERTY EBCP LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## VERIFIED COMPLAINT TO SET ASIDE FRAUDULENT TRANSFERS & FOR INJUNCTIVE RELIEF

Plaintiff, MICHIGAN SHORE APARTMENTS LLC (hereinafter "MSA") by its undersigned counsel, CARY G. SCHIFF & ASSOCIATES, hereby files the following Verified Complaint to Set Aside Fraudulent Transfers & For Injunctive Relief against Defendants EQUITYBUILD, INC., SSDF7 PORTFOLIO 1 LLC, and LIBERTY EBCP LLC, and pleads as follows:

## NATURE OF THE CASE

On March 20, 2018, MSA filed a Complaint against EquityBuild, Inc., and other defendants, based upon fraud, breach of fiduciary duty, breach of contract, legal malpractice, and declaratory judgment relating to MSA's July 2015 purchase of an apartment building located at 7616-7624 S. Phillips Avenue, Chicago, Illinois. (Case No. 2018-CH-03665, Circuit Court of Cook County, Chancery Division). Approximately six weeks after MSA filed its suit, on May 7, 2018, EquityBuild transferred fourteen real estate properties to a newly formed entity, SSDF7 Portfolio 1 LLC, in transactions exempted from real estate transfer taxes. The SSDF7 entity is also under the control of EquityBuild's President, Jerry Cohen, a named defendant in Case No.

2018-CH-03665. This suit asks the Court to set aside EquityBuild's May 7, 2018 transfers and to enter injunctive relief pursuant to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1, *et seq.*

## THE PARTIES & JURISDICTION

1.  MICHIGAN SHORE APARTMENTS LLC ("MSA") is an Illinois limited liability company. Marlen Junck was a founding member and manager of MSA, who died on February 1, 2018.

2.  EQUITYBUILD, INC., ("EB") is a Florida corporation. Its president is Jerry Cohen, of Marco Island, Florida. EB engages in continuous and substantial business in Illinois, including numerous real estate transactions in Chicago, Illinois, and Cook County, Illinois, during the time period of this Complaint.

3.  SSDF7 PORTFOLIO 1 LLC, ("SSDF7") is an Illinois limited liability company, with its principal place of business located at 1414 E. 62nd Place, Chicago, Illinois 60637. SSDF7's manager is SSDF7 Holdco 1 LLC, a Delaware limited liability company, with its principal place of business also located at 1414 E. 62nd Place, Chicago, Illinois. SSDF7 Holdco 1 LLC's manager is South Shore Property Holdings LLC, a Delaware limited liability company. South Shore Property Holdings LLC's managing member is Jerry Cohen, of Marco Island, Florida. SSDF7 Portfolio 1 LLC is authorized to do business or acquire and hold title to real estate in Illinois and has been a party to numerous real estate transactions in Chicago, Illinois, and Cook County, Illinois, during the time period of the Complaint.

4.  LIBERTY EBCP LLC ("Liberty") is a Delaware limited liability company, with its address located at 1500 JFK Boulevard, Suite 250, Philadelphia, Pennsylvania.

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

## FACTS

5.    EB is a limited liability company that offers a proprietary system (the "EquityBuild System") for investing in real estate.

6.    On March 20, 2018, MSA filed suit against EB, its President, Jerry Cohen, and other defendants, based upon fraud, breach of contract, breach of fiduciary duties, civil conspiracy, and other related claims, in the Circuit Court of Cook County, Chancery Division, Case No. 2018-CH-03665. (Copy of March 20, 2018 Complaint attached hereto as Exhibit A).

7.    On April 4, 2018, the Sheriff of Cook County served EB with the Summons and Complaint in Case No. 2018-CH-03665. Pursuant to the Summons and Illinois Supreme Court Rule 181(a), EB had thirty days after the date of service, until May 4, 2018, to respond to the Complaint.

8.    EB failed to file a timely response to the Complaint, and MSA moved for default in Case No. 2018-CH-03665, on May 14, 2018. Following the Motion for Default, EB filed its Appearance on May 23, 2018.

9.    On May 7, 2018, while in default of its obligation to respond to the Complaint in Case No. 2018-CH-03665, EB transferred fourteen (14) real estate properties all located in Chicago, via warranty deed, to SSDF7. All of the transfers were purportedly exempt from real estate transfer taxes. State and local laws require real estate transfer taxes to be paid where properties are transferred pursuant to an arm's length transaction for consideration in excess of $100.00. EB did not receive reasonably equivalent value in exchange for the transfers to SSDF7.

10.    The properties transferred by EB to SSDF7 on May 7, 2018, are the following:

      a.    6356 S. California, Chicago, Illinois (PIN 19-24-107-037-0000);

      b.    6357 S. Talman Ave., Chicago, Illinois (PIN 19-24-203-023-0000);

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

c.  <u>7051 S. Bennett Ave., Chicago, Illinois</u> (PIN 20-24-328-011-0000);

d.  <u>7442 S. Calumet Ave., Chicago, Illinois</u> (PIN 20-27-122-027-0000);

e.  <u>1401 E. 72nd St., Chicago, Illinois</u> (PIN 20-26-210-001-0000);

f.  <u>7546 S. Saginaw Ave., Chicago, Illinois</u> (PIN 21-30-304-020-0000);

g.  <u>4319 S. Michigan Ave., Chicago, Illinois</u> (PIN 20-03-302-002-0000);

h.  <u>2736 W. 64th St., Chicago, Illinois</u> (PIN 19-24-200-029-0000);

i.  <u>7508 S. Essex Ave., Chicago, Illinois</u> (PIN 21-30-301-030-0000);

j.  <u>7748-52 S. Essex Ave., Chicago, Illinois</u> (PIN 21-30-319-029-0000);

k.  <u>816-22 E. Marquette Rd., Chicago, Illinois</u> (PIN 20-23-112-028-0000);

l.  <u>7656 S. Kingston Ave., Chicago, Illinois</u> (PIN 21-30-309-030-0000);

m.  <u>8201 S. Kingston Ave., Chicago, Illinois</u> (PIN 21-31-126-001-0000);

n.  <u>8326-8352 S. Ellis Ave., Chicago, Illinois</u> (PIN 20-35-303-097-0000).

(Copies of May 7, 2018 Warranty Deeds attached hereto as <u>Group Exhibit B</u>).

11.    EB acquired the above fourteen properties between January 2015 and February 2017 from various sellers, for total consideration in excess of $12.6 million.

12.    Within weeks of being served with MSA's lawsuit seeking damages for fraud and other causes of action, EB transferred the fourteen properties listed above to a newly-created entity, SSDF7, that shares common ownership and control with EB. Jerry Cohen is the President of EB, and he is a managing member of an LLC that is the manager of SSDF7's manager.

13.    On May 7, 2018, after EB transferred the above fourteen properties to SSDF7, SSDF7 entered into Mortgages and Assignments of Leases with Liberty. (Copies of Mortgages and Assignment of Leases attached as <u>Exhibits C & D</u>).

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## COUNT I – ACTION TO SET ASIDE FRAUDULENT TRANSFERS – FRAUD IN FACT

### (740 ILCS 160/5) (Against All Defendants)

14.     Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

15.     740 ILCS 160/5(a), of the Illinois Uniform Fraudulent Transfer Act ("IUFTA,") provides, "[A] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor…"

16.     Pursuant to 740 ILCS 160/5(b), in determining whether a debtor acted with "actual intent" as described in section 5(a), a court may give consideration, among others, to eleven enumerated factors, including whether:

> (1) The transfer or obligation was to an insider;

> (2) The debtor retained possession or control of the property transferred after the transfer;

> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

> (9) The debtor was insolvent or became insolvent shortly after a the transfer was made or the obligation incurred.

740 ILCS 160/5(b).

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

17.     MSA is considered a creditor for purposes of the Illinois Uniform Fraudulent Transfer Act. 740 ILCS 160/2(d) defines a "creditor" as any "person who has a claim, including a claim for past-due child support."

18.     MSA's pending lawsuit against EB constitutes a "claim" pursuant to 740 ILCS 160/2(c). A "claim" means a right to payment, whether or not the right is reduced to judgment.

19.     EB is a "debtor" pursuant to the Illinois Uniform Fraudulent Transfer Act. 740 ILCS 160/2(f) defines a "debtor" as "a person who is liable on a claim."

20.     The transfers of assets made by EB to SSDF7 on May 7, 2018 were made with actual intent to hinder, delay, or defraud MSA:

a.   The transfers were made to an insider of EB. Jerry Cohen is the President of EB, and he is a managing member of a manager of a manager of SSDF7. Jerry Cohen holds decision-making authority over both EB and SSDF7;

b.   EB and/or Jerry Cohen, President of EB, retained control over the properties it transferred to SSDF7. EB advertises and solicits "investments" in the properties transferred to SSDF7 on EB's website;

c.   Before the transfer was made, EB had been sued and served with summons and complaint, in Case No. 2018-CH-03665. Jerry Cohen had been personally served and was aware of the pending suit;

d.   EB did not receive reasonably equivalent value in exchange for the transfers of the fourteen properties. EB did not receive consideration in excess of $100.00 for the properties it transferred. The transactions did not take place at arm's length, and SSDF7 did not act in good faith.

21.     EB's May 7, 2018 transfers to SSDF7 therefore constitute fraudulent conveyances under the IUFTA.

22.     On information and belief, EB was insolvent as of May 7, 2018, for purposes of the IUFTA.  On information and belief, the sum of EB's debts as of May 7, 2018 is greater than its assets at a fair valuation.  On information and belief, EB is generally not paying its debts as they become due.

23.     The IUFTA, in 740 ILCS 160/8(a), provides that in an action for relief against a transfer under the IUFTA, a creditor may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) Any other relief the circumstances may require.


WHEREFORE, pursuant to Count I of its Complaint, Plaintiff prays that this Court enter an order avoiding the May 7, 2018 transfers of EQUITYBUILD, INC., to SSDF7 PORTFOLIO 1

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

LLC, to the extent necessary to satisfy Plaintiff MICHIGAN SHORE APARTMENTS LLC's claim against EQUITYBUILD, INC.; in the alternative, permitting an attachment or other provisional remedy against the assets transferred by EQUITYBUILD, INC., on May 7, 2018, in accordance with the procedure prescribed by the Code of Civil Procedure; granting Plaintiff interests and rights in the assets transferred on May 7, 2018, that are superior to those of LIBERTY EBCP LLC; for an injunction against further disposition by SSDF7 PORTFOLIO 1 LLC and/or LIBERTY EBCP LLC, of any of the assets transferred by EQUITYBUILD, INC., on May 7, 2018; appointing a receiver to take charge of the assets transferred by EQUITYBUILD, INC., on May 7, 2018; awarding Plaintiff its attorney's fees and costs; and for other and further relief as the Court shall deem just and proper.

## COUNT II – ACTION TO SET ASIDE FRAUDULENT TRANSFERS – FRAUD IN LAW
### (740 ILCS 160/6(a)) (Against All Defendants)

24.     Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

25.     Pursuant to 740 ILCS 160/6(a), a transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or became insolvent as a result of the transfer.

26.     MSA's claim against EB arose before EB made the May 7, 2018 transfers to SSDF7.

27.     EB did not receive a reasonably equivalent value in exchange for its May 7, 2018 property transfers to SSDF7.

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

28.     On information and belief, EB was insolvent and/or became insolvent as a result of the May 7, 2018 transfers to SSDF7.

29.     The IUFTA, in 740 ILCS 160/8(a), provides that in an action for relief against a transfer under the IUFTA, a creditor may obtain:

> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;
>
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>
> > (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> >
> > (B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> >
> > (C) Any other relief the circumstances may require.

WHEREFORE, pursuant to Count II of its Complaint, Plaintiff prays that this Court enter an order avoiding the May 7, 2018 transfers of EQUITYBUILD, INC., to SSDF7 PORTFOLIO 1 LLC, to the extent necessary to satisfy Plaintiff MICHIGAN SHORE APARTMENTS LLC's claim against EQUITYBUILD, INC.; in the alternative, permitting an attachment or other provisional remedy against the assets transferred by EQUITYBUILD, INC., on May 7, 2018, in accordance with the procedure prescribed by the Code of Civil Procedure; granting Plaintiff

interests and rights in the assets transferred on May 7, 2018, that are superior to those of LIBERTY

EBCP LLC; for an injunction against further disposition by SSDF7 PORTFOLIO 1 LLC and/or

LIBERTY EBCP LLC, of any of the assets transferred by EQUITYBUILD, INC., on May 7, 2018;

appointing a receiver to take charge of the assets transferred by EQUITYBUILD, INC., on May 7,

2018; awarding Plaintiff its attorney's fees and costs; and for other and further relief as the Court

shall deem just and proper.


Dated: July 19, 2018                     Respectfully Submitted,

                                         MICHIGAN SHORE APARTMENTS LLC,

                                         By:    /s/ Cary G. Schiff
                                         One of Plaintiff's Attorneys


Cary G. Schiff (ARDC #6192697)
Christopher R. Johnson (ARDC # 6304827)
Cary G. Schiff & Associates
134 N. LaSalle St., Ste. 1740
Chicago, IL 60602
Telephone:     (312) 419-1130
caryschiff@cgschifflaw.com
Attorney No.: 14516

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## <u>VERIFICATION</u>

Under the penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned, being duly authorized certifies that the statements set forth in the **Verified Complaint to Set Aside Fraudulent Transfers & For Injunctive Relief** are true and correct, except as to the matters stated therein to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true and correct.

GEORGE CHERIAN, Member,
MICHIGAN SHORE
APARTMENTS, LLC

2018CH09098

**E-Notice**

EXHIBIT FILED
7/19/2018 4:32 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09098

**2018-CH-03665**

CALENDAR: 08

To:  Cary Gregg Schiff
     filings.cgschifflaw@gmail.com

# NOTICE OF ELECTRONIC FILING

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MICHIGAN SHORE APARTMENTS LLC vs. EQUITYBUILD, INC.**

The transmission was received on 03/20/2018 at 4:52 PM and was ACCEPTED with
the Clerk of the Circuit Court of Cook County on 03/21/2018 at 8:35 AM.

CHANCERY_ACTION_COVER_SHEET (CHANCERY DIVISION)

COMPLAINT

AFFIDAVITS (part 2 of the Verified Complaint)

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

EXHIBITS

Filer's Email:    filings.cgschifflaw@gmail.com
Filer's Fax:      (312) 419-9130
Notice Date:      3/21/2018 8:35:31 AM
Total Pages:      96

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**DOROTHY BROWN**
**CLERK OF THE CIRCUIT COURT**
COOK COUNTY
RICHARD J. DALEY CENTER, ROOM 1001
CHICAGO, IL 60602

(312) 603-5031
courtclerk@cookcountycourt.com

Chancery Division Civil Cover Sheet - General Chancery Section          (Rev. 12/30/15) CCCH 0623

## IN THE CIRCUIT CIVIL COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, COUNTY DIVISION

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

MICHIGAN SHORE APARTMENTS LLC

                      **Plantiff**

v.

EQUITYBUILD, INC.

                      **Defendant**

No.

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be fi led with the initial complaint in all actions fi led in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

0005 ☐ Administrative Review
0001 ☐ Class Action
0002 ☐ Declaratory Judgment
0004 ☐ Injunction

0007 ☑ General Chancery
0010 ☐ Accounting
0011 ☐ Arbitration
0012 ☐ Certiorari
0013 ☐ Dissolution of Corporation
0014 ☐ Dissolution of Partnership
0015 ☐ Equitable Lien
0016 ☐ Interpleader
0017 ☐ Mandamus
0018 ☐ Ne Exeat

0019 ☐ Partition
0020 ☐ Quiet Title
0021 ☐ Quo Warranto
0022 ☐ Redemption Rights
0023 ☐ Reformation of a Contract
0024 ☐ Rescission of a Contract
0025 ☐ Specific Performance
0026 ☐ Trust Construction
0027 ☐ Foreign Transcript
0085 ☐ Petition to Register Foreign Judgment
    ☐ Other (specify) _____

By: /s CARY GREGG SCHIFF

☑ Atty. No.: 14516    ☐ Pro Se 99500
Name: CARY G SCHIFF&ASSOC
Atty. for: MICHIGAN SHORE APARTMENTS LLC
Address: 134 N LASALLE #1720
City/State/Zip: CHICAGO, IL 60602
Telephone: (312) 419-1130
**Primary Email Address:**
filings.cgschifflaw@gmail.com
**Secondary Email Address(es):**

_____
_____
_____

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice from the Clerk's office for this caseat this email address:

_____
_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 13
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| MICHIGAN SHORE APARTMENTS LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | )     Case No.: |
| EQUITYBUILD, INC., | ) |
| EQUITYBUILD FINANCE, LLC, | ) |
| JERRY COHEN, | ) |
| SHAUN COHEN, | ) |
| MARK BROSIUS, | ) |
| | ) |
| *Defendants.* | ) |

## VERIFIED COMPLAINT

Plaintiff, MICHIGAN SHORE APARTMENTS LLC (hereinafter "MSA") by its undersigned counsel, CARY G. SCHIFF & ASSOCIATES, hereby files the following Verified Complaint against Defendants EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JERRY COHEN, SHAUN COHEN, and MARK BROSIUS, and pleads as follows:

## NATURE OF THE CASE

MSA brings the following causes of action based upon fraud, breaches of fiduciary duties, breaches of contract, legal malpractice, and declaratory judgment relating to the July 2015 purchase of an apartment building located at 7616-7624 S. Phillips Avenue, Chicago, Illinois (hereinafter the "Premises").

## THE PARTIES & JURISDICTION

1.     MICHIGAN SHORE APARTMENTS LLC ("MSA") is an Illinois limited liability company. Marlen Junck was a founding member and manager of MSA, who died on February 1, 2018.

1

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 13

2.      EQUITYBUILD, INC., ("EB") is a Florida corporation.  Its president is Jerry Cohen, of Marco Island, Florida.  EB engages in continuous and substantial business in Illinois, including numerous real estate transactions in Chicago, Illinois, and Cook County, Illinois, during the time period of the Complaint.

3.      EQUITYBUILD FINANCE, LLC, ("EB Finance") is a Florida limited liability company, with its principal place of business located at 1083 N. Collier Blvd., #132, Marco Island, Florida.  EB Finance engages in continuous and substantial business in Illinois, including numerous real estate transactions in Chicago, Illinois, and Cook County, Illinois, during the time period of the Complaint.

4.      JERRY COHEN is a Florida resident.  On information and belief, Jerry Cohen resides at 1157 Bond Court, Marco Island, Florida.

5.      SHAUN COHEN is a Texas resident.  On information and belief, Shaun Cohen resides at 3816 Tapestry Court, Plano, Texas.

6.      MARK BROSIUS is an Illinois resident and is licensed to practice law in Illinois.  His registered business address with the Attorney Registration & Disciplinary Commission of the Supreme Court of Illinois is Law Office of Mark Brosius, 4751 W. Touhy Avenue, Suite 101, Lincolnwood, Illinois, 60712-1650, in Cook County, Illinois.

## FACTS

7.      EB is a limited liability company that offers a proprietary system (the "EquityBuild System") for investing in real estate.  EB markets its System to individual investors as an alternative to stocks, bonds, certificates of deposit, and other investments.  EB Finance advertises that it is within the EB "umbrella" of companies.

2

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 13

8.     According to EB's marketing materials, Jerry Cohen operates EB, and his son, Shaun Cohen, operates EB Finance. EB claims to be a real estate investment company, while EB Finance claims to be a "real estate note investment company."

9.     From 2013 through 2015, EB solicited Marlen Junck with investment offers.

10.    In its written representations to Marlen Junck, in an effort to induce him to transact business with EB, EB made the following guarantees, representations, and promises, among others:

  a.  "Net Operating Income" – EB guarantees that its investors will be compensated for any deficiency between the represented net operating income for the real estate purchased by the investor and the actual net operating income for the property;

  b.  "Major Systems" – EB guarantees that it will repair or replace plumbing, electrical, roofing, and HVAC systems during the first two years of the investor's ownership of the property;

  c.  "Property Value" – EB guarantees that the value of the real estate purchased will not drop below the cost of purchasing and renovating the property. In the event of any loss, EB guarantees to reimburse the difference.

  d.  "No Losses Guarantee" – EB guaranteed that the value of the real estate purchased by Junck would not "go lower than the amount of the mortgage on the property for a full year from the date of purchase";

  e.  "Rent Guarantee" – EB guaranteed that if, in the first year of Junck's ownership of the property, Section 8 qualification ceased for any reason other than

3

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 13

ownership failure, EB will pay Section 8 rents for the property until Section 8 qualification is reestablished and payments resumed;

f.   "No Maintenance Guarantee" – EB guaranteed that during the first 12 months of rental activity, EB will pay for any and all maintenance required for the property.

11.   In May 2015, EB sent Marlen Junck several solicitations seeking his investment in "turnkey" real estate projects. In its written representations to Junck, EB told him that it would handle all aspects of the rehab, leasing and property management in its "turnkey" model. EB claimed that it "finds the properties, arranges financing, renovates the properties as necessary, finds tenants, and manages the property." EB promised Junck that no prior experience in real estate was necessary.

12.   To prospective investors, including Junck, EB states that its "100% turnkey" method of real estate investing "means all you need to do is decide whether or not to invest. We [EB] identify the properties, fully vet them, perform multiple inspections, rehabilitate as needed, market the property, find quality tenants, and manage the property." EB claimed that its owner had been in real estate since 1984 and had completed "over 1,000 deals." EB advertised that its investors required "no specialized knowledge" and instead would receive "the benefit of [EB's] expertise and [EB's] experience."

13.   Junck initially, and on numerous occasions, refused EB's solicitations to purchase real estate based on EB's "turnkey" model. Following Junck's refusals, EB persisted further in its attempts to solicit Junck's investment.

14.   In May 2015, EB sent Junck a *pro forma* containing fourteen pages of details regarding the Premises, a property located at 7616 S. Phillips Avenue, Chicago, Illinois. The *pro*

4

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of 13

*forma* included a "Financial Analysis" of the costs and net income to the prospective investor. According to the "Financial Analysis," in the seventh month after the investment, the investor would be receiving $19,032 in net operating income from the Premises.

15.     After reviewing the *pro forma*, Junck spoke with Adam P. Gordon, EB's National Sales Manager, regarding the "Financial Analysis" included in the *pro forma*. Junck asked Gordon what could alter or change the financial analysis. Gordon assured Junck that with EB's "vast experience," including over a thousand transactions of a similar type, nothing would alter the analysis. Gordon assured Junck of the results described in the "Financial Analysis."

16.     Based on the guarantees, representations, and promises of EB, Junck moved forward with the proposed investment.

17.     On June 3, 2015, Junck, his spouse Arlene Junck, and Junck's business partners, George Cherian and Reena George, together formed an Illinois limited liability company, Michigan Shore Apartments, LLC ("MSA"), for the purpose of proceeding with the investment with EB.

18.     On June 8, 2015, the members of MSA adopted a resolution to proceed with the purchase of the Premises at 7616 S. Phillips Avenue from EB.

19.     On June 10, 2015, MSA entered into a purchase contract for the Premises with EB. (Copy of real estate purchase contract attached hereto as Exhibit P-1). The purchase contract stated that MSA would pay a purchase price of $1,514,650.00, for the Premises.

20.     In the June 10, 2015 Contract, EB made an express representation that it had not received written notice of any building code violations at the Premises that had not been corrected. In fact, as of June 10, 2015, EB had received written notices of multiple building code violations at the Premises that had not been corrected. Additionally, EB was aware of pending litigation filed

5

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 6 of 13

by the City of Chicago regarding municipal code violations at the Premises (Cook County Circuit Court Case No. 14-M1-403019), at the time it signed the June 10, 2015 Contract.

21.     EB told Junck that most investors purchasing property from EB completed the purchase by sending a power of attorney form to Illinois attorney MARK BROSIUS, who was purportedly familiar with EB's procedures and transaction documents.  EB recommended that Junck retain Brosius to complete the transaction on behalf of MSA.

22.     On June 23, 2015, Junck signed a document labeled "Illinois Statutory Power of Attorney" in which he, in his capacity as a member of MSA, appointed MARK BROSIUS, as the attorney-in-fact with respect to MSA's purchase of the Premises. (Copy of Illinois Statutory Power of Attorney attached hereto as Exhibit P-2).

23.     On June 25, 2015, EB signed a Warranty Deed conveying the Premises at 7616-7624 S. Phillips Avenue, Chicago, Illinois, to MSA.  (Copy of Warranty Deed attached hereto as Exhibit P-3).  Jerry Cohen, EB's President, signed the Warranty Deed.

24.     Acting pursuant to the "Illinois Statutory Power of Attorney," Brosius executed numerous documents on June 29, 2015, including:

> Commercial Flat Rate Promissory Note (attached hereto as Exhibit P-4);
> Mortgage for the Premises (attached hereto as Exhibit P-5);
> Construction Loan & Escrow Agreement (attached hereto as Exhibit P-6);
> Personal Guaranty (purportedly on behalf of Junck, individually) (attached hereto as Exhibit P-7);
> HUD-1 Settlement Statement (attached hereto as Exhibit P-8).

25.     In conjunction with the transaction for the Premises, EB and EB Finance together acted in numerous different capacities, on all sides of the same transaction, including as seller, buyer's investment advisor, lender, buyer's renovation and construction manager, and the party with unilateral control over the construction escrow account described below.  EB also proposed, directed, and/or controlled the general contractor and property management company used in

6

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 7 of 13

conjunction with the renovation plan for the Premises that EB prepared and marketed to potential investors.

26.     Pursuant to the terms of the June 29, 2015 Commercial Flat Rate Promissory Note ("Note,"), MSA borrowed the principal amount of $1,950,000.00 from fourteen persons listed on an exhibit attached to the Promissory Note, "c/o EquityBuild Finance, LLC." The interest rate on the Note was 15 percent, *per annum*.

27.     Pursuant to the terms of the Note, MSA was obligated to make monthly interest-only payments, care of EB Finance, in the amount of $24,375.00 per month.

28.     Under the terms of the Note, on or before July 1, 2017, the entire principal balance, together with any unpaid interest, was due and payable in full from MSA to EB Finance.

29.     Pursuant to the guarantees, representations, and promises made by EB, and the terms of the Construction Loan & Escrow Agreement, the renovations at the Premises were to be completed within 120 days of June 29, 2015 (on or before October 27, 2015).

30.     Pursuant to the Construction Loan & Escrow Agreement, EB Finance unilaterally controlled $435,350.00 of the amount from the Note in a separate "Construction Escrow" account.

31.     In conjunction with the purchase of the Premises, EB Finance charged a $97,500.00 "Origination Fee."

32.     On June 29, 2015, solely on the basis of his purported authority under the "Illinois Statutory Power of Attorney," Brosius signed a Personal Guaranty, as attorney-in-fact for Junck. The terms of the Personal Guaranty purport that Junck will promptly pay the full amount of principal and interest of the $1,950,000.00 "Demand Note" signed by MSA, in the event of a default by MSA.

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 8 of 13

33.    Following the purchase of the Premises, EB failed to commence the renovations at the Premises in a timely fashion. EB's actions were in violation of its written representations and its promises to handle "all aspects" of the rehabilitation of the Premises.

34.    During the months following the purchase of the Premises, Junck contacted EB repeatedly regarding the commencement of the renovation work at the Premises.

35.    On August 24, 2015, EB's Asset Manager admitted to Junck that no work had been completed at the Premises and EB had still not yet signed a contractor agreement to commence the renovation work at the Premises.

36.    On or about October 6, 2015, more than three months after EB was supposed to commence renovations, Junck received a Notice of Violation and Summons from the City of Chicago regarding municipal code violations at the Premises. Junck contacted a representative of the City of Chicago about the violations and informed the representative that EB was renovating the Premises. The City of Chicago representative informed Junck that no work had been completed at the Premises and that EB had not submitted any plans to the City to begin work.

37.    On October 6, 2015, after learning from the City of Chicago that EB had failed even to submit plans to begin renovations at the Premises, Junck contacted EB's asset manager, Dishan Newton. Newton told Junck that she would "look into it."

38.    EB failed to retain a contractor for the renovation of the Premises during October 2015 or to obtain any permits to begin renovation work during 2015.

39.    On November 3, 2015, in response to further demands from Junck that EB commence renovations at the Premises, Newton told Junck that she had "received word that a contract will be awarded this week" regarding the renovations.

8

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 9 of 13

40.     EB did not enter any contract to begin renovations at the Premises during November 2015.

41.     On December 16, 2015, EB finally signed an agreement hiring a contractor to begin renovations at the Premises.  EB signed an AIA Document A101-2007 Standard Form of Agreement Between Owner and Contractor, in which Lifetime Remodelers, Inc., (hereinafter "Lifetime,") an Illinois corporation, agreed to complete the renovations at the Premises.  (Copy of AIA Agreement attached hereto as Exhibit P-9);

42.     Pursuant to the AIA Contract between EB and Lifetime, renovations were supposed to be completed by March 29, 2016.  The building code violations at the Premises were to be cured by Lifetime no later than January 21, 2016, under the AIA Contract.

43.     Following the signing of the December 16, 2015 AIA Contract, EB and its contractor failed to commence the renovations and cure building code violations in a timely fashion, in accordance with their duties and representations.

44.     EB and Lifetime failed to complete renovations at the Premises by March 29, 2016, and they failed to cure the building code violations at the Premises by January 21, 2016.

45.     In January 2016, Junck contacted EB's Asset Manager regarding the pending court case for building code violations and asked when the necessary work would be completed.  EB's Asset Manager responded and assured Junck that EB's attorneys were working on the matter and that "all" would be repaired.

46.     In fact, EB and its agents, including Lifetime, failed to correct the building code violations at the Premises in a timely fashion, and some remain uncorrected, even as of the date of the filing of this Complaint.

9

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 10 of 13

47.     The Circuit Court of Cook County held hearings on the uncorrected building code violations at the Premises, in Case No. 14-M1-403019, on the following dates: March 29, 2016; April 26, 2016; August 2, 2016; August 23, 2016; October 4, 2016; November 22, 2016; January 10, 2017; March 7, 2017; May 16, 2017; July 25, 2017; August 17, 2017; September 8, 2017; September 28, 2017; January 11, 2018. As of the date of this Complaint, the next hearing in Case No. 14-M1-403019 is scheduled for March 22, 2018.

48.     Each passing month, EB failed to complete construction at the Premises. As of the date of this Complaint, the renovation of the Premises remains unfinished, and building code violations remain uncorrected.

49.     During 2016, EB and Lifetime failed to obtain certificates of occupancy for all of the units at the Premises.

50.     Each month of delay in the renovation of the Premises caused MSA to suffer damages in the amount of more than $25,000.00 in interest payments, plus lost rental income at the Premises. EB's actions also prevented MSA from refinancing the loan on the Premises.

51.     EB's actions benefitted EB Finance, at the expense of MSA. EB Finance received additional months of interest due to EB's failure to commence and perform renovations at the Premises in a timely fashion.

**COUNT I – COMMON-LAW FRAUD (Against EquityBuild, Inc., EquityBuild Finance, Inc., Jerry Cohen, Shaun Cohen)**

52.     Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

10

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 11 of 13

53. EB, in conjunction with EB Finance, through Jerry Cohen and Shaun Cohen, made numerous false statements of material fact to MSA and Junck, including, but not limited to:

a. "Net Operating Income" – EB guarantees that its investors will be compensated for any deficiency between the represented net operating income for the real estate purchased by the investor and the actual net operating income for the property;

b. "Major Systems" – EB guarantees that it will repair or replace plumbing, electrical, roofing, and HVAC systems during the first two years of the investor's ownership of the property;

c. "Property Value" – EB guarantees that the value of the real estate purchased will not drop below the cost of purchasing and renovating the property. In the event of any loss, EB guarantees to reimburse the difference.

d. "No Losses Guarantee" – EB guaranteed that the value of the real estate purchased by Junck would not "go lower than the amount of the mortgage on the property for a full year from the date of purchase";

e. "Rent Guarantee" – EB guaranteed that if, in the first year of Junck's ownership of the property, Section 8 qualification ceased for any reason other than ownership failure, EB will pay Section 8 rents for the property until Section 8 qualification is reestablished and payments resumed;

f. "No Maintenance Guarantee" – EB guaranteed that during the first 12 months of rental activity, EB will pay for any and all maintenance required for the property.

11

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 12 of 13

g.  EB told Marlen Junck that it would handle all aspects of the rehab, leasing and property management in its "turnkey" model.

h.  In the June 10, 2015 Contract, EB made an express representation that it had not received written notice of any building code violations at the Premises that had not been corrected.  In fact, as of June 10, 2015, EB had received written notice of building code violations at the Premises that had not been corrected. Additionally, EB was aware of pending litigation filed by the City of Chicago regarding municipal code violations at the Premises (Cook County Circuit Court Case No. 14-M1-403019), at the time it signed the June 10, 2015 Contract.

54.    EB, in conjunction with EB Finance, and through Jerry Cohen and Shaun Cohen, made these statements to Junck and MSA with the intent to induce MSA into investing with EB and entering the real estate transaction for the Premises.

55.    At the time that EB made the above statements, EB knew that the statements were false.  EB, EB Finance, Jerry Cohen, and Shaun Cohen knew that they would not abide by the guarantees, representations, and promises made to Junck and MSA at the time they made those guarantees, representations, and promises.  These false statements were made with the direct intent to enrich EB, EB Finance, Jerry Cohen, and Shaun Cohen, to the detriment of MSA.

56.    MSA reasonably relied upon these guarantees, representations, and promises of EB in investing with EB and entering the real estate transaction for the Premises.

57.    MSA has suffered damages in excess of $500,000.00 as a result of reliance upon the false statements of EB, which include, but are not limited to, payments made to EB and EB

12

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 13 of 13

Finance pursuant to the real estate transaction for the Premises, lost rents and income relating to the Premises, and attorney's fees.

58.      The fraudulent actions of EB, EB Finance, Jerry Cohen, and Shaun Cohen, as described above, constitute willful, wanton, and malicious conduct. The Defendants' fraudulent actions were made knowingly and with the intent to obtain financial benefits for EB, EB Finance, Jerry Cohen, and Shaun Cohen. Under the guise of a "no-risk" and "guaranteed" investment, EB, EB Finance, Jerry Cohen, and Shaun Cohen sought to deprive Junck and the members of MSA of their retirement savings, in an effort to enrich EB, EB Finance, Jerry Cohen, and Shaun Cohen.

WHEREFORE, pursuant to Count I, Plaintiff prays that this Court enter a money judgment in their favor against Defendants EQUITYBUILD, INC., EQUITYBUILD FINANCE, INC., JERRY COHEN, and SHAUN COHEN, in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff punitive damages and attorney's fees against Defendants; and for other and further relief as the Court shall deem just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY (Against EquityBuild, Inc.)

59.      Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

60.      EB solicited MSA to invest with EB and its "100% turnkey" system of real estate investing, in an area in which EB purported to have expertise and significant, specialized experience.

61.      MSA invested with EB based upon the representations, purported expertise, and promises of EB.

13

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 15
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

62.   In conjunction with the investment it solicited from MSA, EB possessed powerful capacity of dominance and influence over Plaintiff. EB and EB Finance together acted in numerous different capacities, on all sides of the same transaction, including as seller, buyer's investment advisor, lender, buyer's renovation and construction manager, and the party with unilateral control over the construction escrow account described in this Complaint. EB also proposed, directed, and/or controlled the general contractor and property management company used in conjunction with the renovation plan for the Premises that EB prepared and marketed to potential investors.

63.   In its solicitations to MSA, EB advertised a gross disparity in experience and expertise between EB and its investors. EB claimed that its owner had been in real estate since 1984 and had completed "over 1,000 deals." EB advertised that its investors required "no specialized knowledge" and instead would receive "the benefit of [EB's] expertise and [EB's] experience."

64.   Accordingly, EB owed fiduciary duties to Plaintiff, in conjunction with Plaintiff's investment and the transactions relating to the Premises.

65.   EB breached its fiduciary duties to Plaintiff in conjunction with Plaintiff's investment with EB and the transactions relating to the Premises. EB failed to make a free and frank disclosure of all information it had relating to the transactions and the Premises; EB made knowingly false misrepresentations and promises to induce Plaintiff into entering the transactions; EB knew that Plaintiff had not received any competent, independent advice prior to entering into the transactions; and EB directly benefitted from the transactions, at Plaintiff's expense.

66.   EB's breaches of its fiduciary duties to Plaintiff have caused damages to Plaintiff, including damages in excess of $500,000.00, which include, but are not limited to, payments made

14

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 15

to EB and EB Finance pursuant to the real estate transaction for the Premises, lost rents and income relating to the Premises, and attorney's fees.

67.     The actions of EB, as described above, constitute willful, wanton, and malicious conduct. EB's actions, in violation of its fiduciary duties to Plaintiff, were made knowingly and with the intent to obtain financial benefits for EB and its "umbrella" of companies. Under the guise of a "no-risk" and "guaranteed" investment, EB sought to deprive Junck and the members of MSA of their retirement savings, in an effort to enrich EB.

WHEREFORE, pursuant to Count II, Plaintiff prays that this Court enter a money judgment in their favor against Defendant EQUITYBUILD, INC., in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff punitive damages and attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT III – NEGLIGENT MISREPRESENTATION (Against EquityBuild, Inc.)

68.     Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

69.     EB advertises itself as an experienced source of information and expertise regarding real estate investments.

70.     EB had a duty to exercise reasonable care and competence in obtaining and communicating information for the guidance of Plaintiff in conjunction with Plaintiff's investment with EB and the transactions relating to the Premises.

71.     EB failed to exercise reasonable care and competence in communicating information to Plaintiff about the transactions relating to the Premises and fraudulently provided

15

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 15

Plaintiff with false information, misrepresentations, and fraudulent guarantees relating to its investment in the Premises.

72.    EB's breaches of its duties have caused damages to Plaintiff, including damages in excess of $500,000.00, which include, but are not limited to, payments made to EB and EB Finance pursuant to the real estate transaction for the Premises, lost rents and income relating to the Premises, and attorney's fees.

73.    The actions of EB, as described above, constitute willful, wanton, and malicious conduct. EB's actions, in violation of its duties to Plaintiff, were made knowingly and with the intent to obtain financial benefits for EB and its "umbrella" of companies. Under the guise of a "no-risk" and "guaranteed" investment, EB sought to deprive Junck and the members of MSA of their retirement savings, in an effort to enrich EB.

WHEREFORE, pursuant to Count III, Plaintiff prays that this Court enter a money judgment in their favor against Defendant EQUITYBUILD, INC., in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff punitive damages and attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT IV – BREACH OF CONTRACT (Against EquityBuild, Inc.)

74.    Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

75.    Pursuant to MSA's investment with EB, EB agreed to the following:

a.    "Net Operating Income" – EB guarantees that its investors will be compensated for any deficiency between the represented net operating income for the real

16

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 15

estate purchased by the investor and the actual net operating income for the property;

b. "Major Systems" – EB guarantees that it will repair or replace plumbing, electrical, roofing, and HVAC systems during the first two years of the investor's ownership of the property;

c. "Property Value" – EB guarantees that the value of the real estate purchased will not drop below the cost of purchasing and renovating the property. In the event of any loss, EB guarantees to reimburse the difference.

d. "No Losses Guarantee" – EB guaranteed that the value of the real estate purchased by Plaintiff would not "go lower than the amount of the mortgage on the property for a full year from the date of purchase";

e. "Rent Guarantee" – EB guaranteed that if, in the first year of Plaintiff's ownership of the property, Section 8 qualification ceased for any reason other than ownership failure, EB will pay Section 8 rents for the property until Section 8 qualification is reestablished and payments resumed;

f. "No Maintenance Guarantee" – EB guaranteed that during the first 12 months of rental activity, EB will pay for any and all maintenance required for the property.

g. EB told Plaintiff that it would handle all aspects of the rehab, leasing and property management in its "turnkey" model.

h. In the June 10, 2015 Contract, EB made an express representation that it had not received written notice of any building code violations at the Premises that had not been corrected. In fact, as of June 10, 2015, EB had received written

17

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of 15

notices of numerous building code violations at the Premises that had not been corrected. Additionally, EB was aware of pending litigation filed by the City of Chicago regarding municipal code violations at the Premises (Cook County Circuit Court Case No. 14-M1-403019), at the time it signed the June 10, 2015 Contract.

76.     MSA performed its obligations pursuant to the transaction.

77.     EB breached its obligations to MSA by failing to abide by the guarantees, representations, and promises it made, as described above. EB breached the representations and promises it made to induce MSA into entering the contract, including its guarantees to compensate MSA for any deficiency between the represented net operating income for the real estate purchased by the investor and the actual net operating income for the property; to reimburse MSA the difference between the value of the Premises and the cost of purchasing and renovating the Premises; and to repair or replace plumbing, electrical, roofing, and HVAC systems during the first two years of the investor's ownership of the property. EB did not pay the Section 8 rents for the property as it guaranteed, and EB did not "handle all aspects of the rehab, leasing and property management in its 'turnkey' model."

78.     EB breached the covenant of good faith and fair dealing included in every contract.

79.     MSA has suffered damages in excess of $500,000.00 as a result of EB's breaches, which include, but are not limited to, payments made to EB and EB Finance pursuant to the real estate transaction for the Premises, lost rents and income relating to the Premises, and attorney's fees.

WHEREFORE, pursuant to Count IV, Plaintiff prays that this Court enter a money judgment in its favor against Defendant EQUITYBUILD, INC., in an amount in excess of

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 6 of 15

$500,000.00, to be determined at trial; award Plaintiff its attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT V – UNJUST ENRICHMENT (Against EquityBuild, Inc. & EquityBuild Finance, Inc.)

80.    Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

81.    Defendants EB and EB Finance have retained the financial benefits of the real estate transactions relating to the Premises, to the detriment of MSA.

82.    Defendants' retention of these financial benefits would violate fundamental principles of justice, equity, and good conscience, due to their fraudulent actions and misrepresentations, as described above.

WHEREFORE, pursuant to Count V, Plaintiff prays that this Court enter a money judgment in its favor against Defendants EQUITYBUILD, INC., & EQUITYBUILD FINANCE, INC., in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff its attorney's fees against Defendants; and for other and further relief as the Court shall deem just and proper.

## COUNT VI – CIVIL CONSPIRACY (Against EquityBuild, Inc., EquityBuild Finance, Inc., Jerry Cohen, and Shaun Cohen)

83.    Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 7 of 15

84.     Defendants EB, EB Finance, Jerry Cohen, and Shaun Cohen, have acted in combination to enter into the real estate transaction for the Premises and to accomplish the fraudulent acts described above.

85.     Jerry Cohen directed the actions of EB in furtherance of the frauds described in the preceding paragraphs.

86.     Shaun Cohen directed the actions of EB Finance in furtherance of the frauds described in the preceding paragraphs.

87.     Jerry Cohen and Shaun Cohen authored the fraudulent "guarantees," in addition to other deliberate misrepresentations and promises, meant to induce Plaintiff into entering the real estate transaction relating to the Premises and knew that neither EB nor EB Finance intended to abide by the "guarantees" or other promises.

88.     Defendants acted together committed the fraudulent acts described above in furtherance of the real estate transaction for the Premises.

89.     The fraudulent actions of EB, EB Finance, Jerry Cohen, and Shaun Cohen, as described above, constitute willful, wanton, and malicious conduct. The Defendants' fraudulent actions were made knowingly and with the intent to obtain financial benefits for EB, EB Finance, Jerry Cohen, and Shaun Cohen. Under the guise of a "no-risk" and "guaranteed" investment, EB, EB Finance, Jerry Cohen, and Shaun Cohen sought to deprive Junck and the members of MSA of their retirement savings, in an effort to enrich EB, EB Finance, Jerry Cohen, and Shaun Cohen.

WHEREFORE, pursuant to Count VI, Plaintiff prays that this Court enter a money judgment in their favor against Defendants EQUITYBUILD, INC., EQUITYBUILD FINANCE, INC., JERRY COHEN, and SHAUN COHEN, in an amount in excess of $500,000.00, to be

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 8 of 15

determined at trial; award Plaintiff punitive damages and attorney's fees against Defendants; and for other and further relief as the Court shall deem just and proper.

## COUNT VII – BREACH OF FIDUCIARY DUTY (Against EquityBuild Finance, Inc.)

90.     Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

91.     Pursuant to the transaction to purchase the Premises and the Construction Loan & Escrow Agreement, EB Finance had a fiduciary duty to hold $435,350.00 in escrow, for the benefit of MSA, and was only entitled to receive those funds upon completion of the renovation work at the Premises. EB Finance was required to verify that the renovation work was completed and in conformity with applicable codes and ordinances prior to receiving such funds.

92.     EB Finance breached its fiduciary duties by receiving such funds without verifying that the required renovation work was completed and that any such renovation work was in conformity with applicable codes and ordinances.

93.     EB Finance's breaches caused the damages suffered by MSA described in this Complaint, including the loss of such $435,350.00 in funds.

WHEREFORE, pursuant to Count VII, Plaintiff prays that this Court enter a money judgment in its favor against Defendant EQUITYBUILD FINANCE, INC., in an amount in excess of $435,350.00, to be determined at trial; award Plaintiff its attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT VIII – NEGLIGENCE (Against EquityBuild, Inc. & EquityBuild Finance, Inc.)

94.     Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

21

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 9 of 15

95. Pursuant to the real estate transaction relating to the Premises, Defendants EB and EB Finance had a duty to manage the funds to be used in the renovations.

96. As described above, Defendants failed to properly manage the funds set aside to be used in the renovations.

97. Defendants' actions proximately caused MSA's damages described in this Complaint, including the loss of the $435,350.00 in funds required to be held in escrow, pending the timely completion of the renovation work.

WHEREFORE, pursuant to Count VIII, Plaintiff prays that this Court enter a money judgment in its favor against Defendant EQUITYBUILD FINANCE, INC., in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff its attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT IX – BREACH OF FIDUCIARY DUTY (Against Mark Brosius)

98. Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

99. Pursuant to the real estate transaction for the Premises, Defendant MARK BROSIUS ("Brosius") acted as the power of attorney for Junck.

100. As a power of attorney, Brosius had a fiduciary duty, as a matter of law, to Plaintiff.

101. Brosius breached his fiduciary duty to Plaintiff by entering into the documents relating to the Premises, including the Personal Guaranty signed on behalf of Junck, against the best interests of Plaintiff.

102. Brosius gained personally from his breaches of his fiduciary duties, in that he received attorney's fees from the close of the transaction relating to the Premises and also received regular referrals from EB and EB Finance for numerous other similar transactions.

22

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 10 of 15

103.    Brosius's actions proximately caused Plaintiff to suffer damages in excess of $500,000.00, which include, but are not limited to, payments made to EB and EB Finance pursuant to the real estate transaction for the Premises, lost rents and income relating to the Premises, and attorney's fees.

WHEREFORE, pursuant to Count IX, Plaintiff prays that this Court enter a money judgment in its favor against Defendant MARK BROSIUS, in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff its attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT X – LEGAL MALPRACTICE (Against Mark Brosius)

104.    Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

105.    Defendant Mark Brosius represented MSA in the June 2015 real estate transaction regarding the Premises.

106.    In the course of his representation of MSA regarding the Premises, Brosius failed to exercise a reasonable degree of care and skill.  Among other actions, Brosius failed to properly advise MSA and its members regarding the documents prior to executing them on behalf of MSA, pursuant to the Power of Attorney form.

107.    Brosius also attested to the accuracy of a HUD-1 statement that included a major discrepancy.  The HUD-1 Form stated that MSA's loan term was thirty years and that the loan did not have a balloon payment.  These representations were directly contrary to the Promissory Note Brosius signed.

108.    The actions of Brosius proximately caused the damages of MSA described in this Complaint.  An attorney exercising a reasonable degree of care and skill would have provided

23

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 11 of 15

MSA with proper advice regarding the transaction and would not have executed documents containing material misstatements of the terms of the transaction.

109.    Furthermore, Plaintiff did not know of the damages suffered as a result of Brosius's actions and could not reasonably have known of such damages and injuries at any time prior to March 2016.

WHEREFORE, pursuant to Count X, Plaintiff prays that this Court enter a money judgment in its favor against Defendant MARK BROSIUS, in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff its attorney's fees against Defendant; and for other and further relief as the Court shall deem just and proper.

## COUNT XI – INDUCEMENT OF BREACH OF FIDUCIARY DUTY (Against EquityBuild, Inc., & EquityBuild Finance, Inc.)

110.    Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

111.    Defendants EB and EB Finance induced Brosius into breaching his fiduciary duties to MSA and participated in the breach of such duties.

112.    Defendants EB and EB Finance obtained benefits directly from Brosius's breach of his fiduciary duties to MSA.

WHEREFORE, pursuant to Count XI, Plaintiff prays that this Court enter a money judgment in its favor against Defendants EQUITYBUILD, INC., & EQUITYBUILD FINANCE, INC., in an amount in excess of $500,000.00, to be determined at trial; award Plaintiff its attorney's fees against Defendants; and for other and further relief as the Court shall deem just and proper.

24

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 12 of 15

**COUNT XII – DECLARATORY JUDGMENT (Against EquityBuild, Inc., & EquityBuild Finance, Inc.)**

113.  Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

114.  As described above, an actual and justiciable controversy exists between Plaintiff, EB, and EB Finance.

115.  The Personal Guaranty signed by Brosius, purportedly on behalf of Junck, is legally invalid. As a matter of law, under Illinois law, a person acting under a power-of-attorney is not authorized to sign a personal guaranty, unless the terms of the document creating the power-of-attorney expressly and specifically grant the power to sign a personal guaranty. The power-of-attorney under which Brosius signed the Personal Guaranty does not include such an authorization.

WHEREFORE, pursuant to Count XII, Plaintiff prays that this Court enter an Order declaring the Personal Guaranty null and void, as a matter of law, and for other and further relief as the Court shall deem just and proper.

**COUNT XIII – DECLARATORY JUDGMENT (Against EquityBuild, Inc., & EquityBuild Finance, Inc.)**

116.  Plaintiff hereby incorporates by reference the allegations contained in the Paragraphs above.

117.  As described above, an actual and justiciable controversy exists between MSA, EB, and EB Finance.

118.  As described above, the documents relating to the transaction at issue were obtained by fraud and executed pursuant to breaches of fiduciary duties, in furtherance of Defendants' efforts to deprive the members of MSA of their retirement savings, in an effort to enrich EB and EB Finance.

25

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 13 of 15

119.    As the documents were obtained through fraud, MSA is entitled to a declaration that the documents relating to the purchase of the Premises are null and void, as a matter of law, and to related equitable relief against Defendants, in the form of rescission of the transaction and disgorgement of any benefits received by Defendants.

WHEREFORE, pursuant to Count XIII, Plaintiff prays that this Court enter an Order declaring the documents relating to MSA's real estate transaction to be null and void, as a matter of law, for rescission of the purchase of the Premises, for an Order disgorging Defendants of any and all benefits they received from the transaction, and for other and further relief as the Court shall deem just and proper.

Respectfully Submitted,

MICHIGAN SHORE APARTMENTS LLC,

By: _____
One of Plaintiff's Attorneys

Cary G. Schiff
Christopher R. Johnson
Cary G. Schiff & Associates
134 N. LaSalle St., Ste. 1720
Chicago, IL 60602
Telephone:    (312) 419-1130
cgschifflaw@gmail.com
Attorney No.: 14516

26

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## VERIFICATION

Under the penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned, being duly authorized certifies that the statements set forth in the *Verified Complaint* are true and correct, except as to the matters stated therein to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true and correct.

GEORGE CHERIAN, Member,
MICHIGAN SHORE
APARTMENTS, LLC

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 14 of 15

27

## AFFIDAVIT PURSUANT TO ILLINOIS SUPREME COURT RULE 222(B)

Under the penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned, being duly authorized, certifies that the total of money damages sought in the attached Complaint exceeds $50,000.00.

GEORGE CHERIAN, Member,
MICHIGAN SHORE
APARTMENTS, LLC

FILED DATE: 7/19/2018 4:32 PM · 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 15 of 15

28

PLAINTIFF'S EXHIBIT 1
ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 8
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

2018CH09098    FILED DATE: 7/19/2018 4:32 PM

## MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT

**1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

Buyer(s) Michigan Shore Apartments, LLC _____ Seller(s) EquityBuild, Inc. _____
(Please Print) _____ (Please Print)

**2. THE REAL ESTATE:** Real Estate shall be defined to include the Real Estate and all improvements thereon. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with the approximate lot size or acreage of _____ commonly known as: 7616-7624 S Phillips Ave. ____ Chicago ____ IL ____ 60649
_____ Address _____ City _____ State ____ Zip

_____ County ____ Unit # (if applicable) ____ Permanent Index Number(s) of Real Estate
Condo/Coop/Townhome Parking Space Included: (check type) ___deeded space; ___limited common element; ___ assigned; Parking space # _____ *(insert number)*

**3. FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and personal property stated herein are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems together with the following items of personal property by Bill of Sale at Closing: [Check or enumerate applicable items]

| | | |
|---|---|---|
| __ Refrigerator | __ All Tacked Down Carpeting | __ Fireplace Screen(s)/Door(s)/Grate(s) | __ Central Air Conditioning |
| __ Oven/Range/Stove | __ All Window Treatments & Hardware | __ Fireplace Gas Logs | __ Electronic or Media Air Filter |
| __ Microwave | __ Built-in or Attached Shelving | __ Existing Storms & Screens | __ Central Humidifier |
| __ Dishwasher | __ Smoke Detector(s) | __ Security System(s) (owned) | __ Sump Pump(s) |
| __ Garbage Disposal | __ Ceiling Fan(s) | __ Intercom System | __ Water Softener (owned) |
| __ Trash Compactor | __ TV Antenna System | __ Central Vac & Equipment | __ Outdoor Shed |
| __ Washer | __ Window Air Conditioner(s) | __ Electronic Garage Door Opener(s) | __ Attached Gas Grill |
| __ Dryer | __ All Planted Vegetation | with _____ Transmitter(s) | __ Light Fixtures, as they exist |
| __ Satellite Dish and System | | __ Invisible Fence System, Collar(s) and Box | __ Home Warranty $ _____ |

Other items included: Property is sold in "AS IS" condition _____
Items NOT included: _____
Seller warrants to Buyer that all fixtures, systems and personal property included in this Contract shall be in operating condition at possession, except: _____
A system or item shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a threat to health or safety.

**4. PURCHASE PRICE:** Purchase Price of $ 1,514,650.00 _____ shall be paid as follows: Initial earnest money of $ 97,500.00 _____ by ☑(check),☐(cash), or ☐(note due on _____, 20____) to be increased to a total of $ _____ by _____, 20 ____. The earnest money and the original of this Contract shall be held by the Listing Company, as "Escrowee", in trust for the mutual benefit of the Parties. The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's check is guaranteed by a licensed title insurance company).

**5. MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining an unconditional written mortgage commitment (except for matters of title and survey or matters totally within Buyer's control) on or before June 24th _____, 20 15 ____ for a _____ (type) loan of $ 1,950,000.00 _____ or such lesser amount as Buyer elects to take, plus private mortgage insurance (PMI), if required. The interest rate (initial rate, if applicable) shall not exceed 15 % per annum, amortized over not less than 1 years. Buyer shall pay loan origination fee and/or discount points not to exceed 5 % of the loan amount. Seller shall pay loan origination fee and/or discount points not to exceed 0 % of the loan amount. Those fees/points committed to by Buyer shall be applied first. Buyer shall pay the cost of application, usual and customary processing fees and Closing costs charged by lender. (If FHA/VA, refer to Paragraph #36 for additional provisions.) Buyer shall make written loan application within five (5) business days after the Date of Acceptance. **Failure to do so shall constitute an act of default under this Contract. If Buyer, having applied for the loan specified above, is unable to obtain a loan commitment and serves written notice to Seller within the time specified, this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect. Unless otherwise provided herein, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real estate. A condition in the mortgage commitment requiring sale and/or closing of existing real estate shall not render the mortgage commitment conditional for the purpose of this paragraph.** If Seller at Seller's option and expense, within thirty (30) days after Buyer's notice, procures for Buyer such commitment or notifies Buyer that Seller

_____ _MJ_ _____ _____ _JC_ _____
_Buyer Initial_ _____ _Buyer Initial_ _____ _Seller Initial_ _____ _Seller Initial_
_Address_ 7616-7624 S Phillips Ave. Chicago, IL 60649

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

57 will accept a purchase money mortgage upon the same terms, this Contract shall remain in full force and effect.
58 In such event, Seller shall notify Buyer within five (5) business days after Buyer's notice of Seller's election to
59 provide or obtain such financing, and Buyer shall furnish to Seller or lender all requested information and shall
60 sign all papers necessary to obtain the mortgage commitment and to close the loan.
61 **6. CLOSING:** Closing or escrow payout shall be on June 24th _____, 20 15 , or at such time as
62 mutually agreed upon by the Parties in writing. Closing shall take place at the title company escrow office situated
63 geographically nearest the Real Estate, or as shall be agreed mutually by the Parties.
64 **7. POSSESSION:** Possession shall be deemed to have been delivered when Seller has vacated Real Estate and delivered
65 keys to Real Estate to Buyer or to Listing Office. Seller shall deliver possession to Buyer at the time of Closing.
66 **8. RESIDENTIAL REAL ESTATE AND LEAD-BASED PAINT DISCLOSURES:** If applicable, prior to signing
67 this Contract, Buyer **[check one]** ☐has ⊙has not received a completed Illinois Residential Real Property Disclosure
68 Report; **[check one]** ☐has ⊙has not received the EPA Pamphlet,"Protect Your Family From Lead in Your Home";
69 **[check one]**☐has ⊙has not received a Lead-Based Paint Disclosure.
70 **9. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants, utilities,
71 water and sewer, and homeowner or condominium association fees. Seller represents that as of the Date of Acceptance
72 Homeowner Association/Condominium fees are $_____ per _____. Seller agrees to pay prior to or
73 at Closing any special assessments (governmental or association) confirmed prior to Date of Acceptance. The general
74 Real Estate taxes shall be prorated as of the date of Closing based on _____% of the most recent ascertainable full
75 year tax bill. All prorations shall be final as of Closing, except as provided in paragraph17. If the amount of the most
76 recent ascertainable tax bill reflects a homeowner, senior citizen or other exemption, Seller has submitted or will submit
77 in a timely manner all necessary documentation to the Assessor's Office, before or after Closing, to preserve said
78 exemption(s). Accumulated reserves of a Homeowner/Condominium Association are not a proratable item.
79 **10. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS selected for use and
80 initialed by the Parties which are contained on the succeeding pages and the following attachments, if any:
81 _____
82 **11. PROFESSIONAL INSPECTIONS:** Buyer may secure at Buyer's expense (unless otherwise provided by
83 governmental regulations) a home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless
84 separately waived), and/or wood insect infestation inspection(s) of said Real Estate by one or more licensed or certified
85 inspection service(s). Buyer shall serve written notice upon Seller or Seller's attorney of any defects disclosed by the
86 inspection(s) which are unacceptable to Buyer, together with a copy of the pertinent page(s) of the report(s) within five
87 (5) business days (ten (10) calendar days for a lead-based paint and/or lead-based paint hazard inspection) after Date of
88 Acceptance. **If written notice is not served within the time specified, this provision shall be deemed waived by**
89 **Parties and this Contract shall remain in full force and effect.** If within ten (10) business days after Date of
90 Acceptance, written agreement cannot be reached by the Parties with respect to resolution of inspection issues, then
91 either Party may terminate this Contract by written notice to the other Party and **this Contract shall be null and void**
92 **and earnest money refunded to Buyer upon written direction of the Parties to Escrowee.** The home inspection shall
93 cover only major components of the Real Estate, including but not limited to, central heating system(s), central cooling
94 system(s), plumbing and well system, electrical system, roof, walls, windows, ceilings, floors, appliances and
95 foundation. A major component shall be deemed to be in operating condition if it performs the function for which it is
96 intended, regardless of age, and does not constitute a threat to health or safety. Buyer shall indemnify Seller and hold
97 Seller harmless from and against any loss or damage caused by the acts or negligence of Buyer or any person performing
98 any inspection(s). **Buyer agrees minor repairs and routine maintenance items are not a part of this contingency.**
99 **12. ATTORNEY REVIEW:** The respective attorneys for the Parties may approve, disapprove, or make modifications
100 to this Contract, other than stated Purchase Price, within five (5) business days after the Date of Acceptance.
101 Disapproval or modification of this Contract shall not be based solely upon stated Purchase Price. Any notice of
102 disapproval or proposed modification(s) by any Party shall be in writing. If within ten (10) business days after Date of
103 Acceptance written agreement on proposed modification(s) cannot be reached by the Parties, **this Contract shall be**
104 **null and void and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written**
105 **notice is not served within the time specified, this provision shall be deemed waived by the Parties and this**
106 **Contract shall remain in full force and effect.**
107 **13. PLAT OF SURVEY:** Not less than one (1) business day prior to Closing, except where the subject property is a
108 condominium (see Paragraph 27) Seller shall, at Seller's expense, furnish to Buyer or his attorney a Plat of Survey dated
109 not more than six (6) months prior to the date of Closing, prepared by an Illinois Professional Land Surveyor, showing

FILED DATE: 7/19/2018 4:32 PM 2018CH00098

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

110 any encroachments, measurements of all lot lines, all easements of record, building set back lines of record, fences, all
111 buildings and other improvements on the Real Estate and distances therefrom to the nearest two lot lines. In addition, the
112 survey to be provided shall be a boundary survey conforming to the current requirements of the Illinois Department of
113 Professional Regulation. The survey shall show all corners staked and flagged or otherwise monumented. The survey
114 shall have the following statement prominently appearing near the professional land surveyor seal and signature: "This
115 professional service conforms to the current Illinois minimum standards for a boundary survey." A Mortgage Inspection,
116 as defined, is not a boundary survey, and does not satisfy the necessary requirements.

117 **14. NOTICE**: All notices required shall be in writing and shall be served by one Party or his attorney to the other Party
118 or his attorney. Notice to any one of a multiple person Party shall be sufficient notice to all. Notice shall be given in the
119 following manner:

    (a) By personal delivery of such notice; or
    (b) By mailing of such notice to the addresses recited herein by regular mail and by certified mail, return receipt
        requested. Except as otherwise provided herein, notice served by certified mail shall be effective on the date of
        mailing; or
    (c) By sending facsimile transmission. Notice shall be effective as of date and time of facsimile transmission,
        provided that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00
        P.M. Chicago time). In the event fax notice is transmitted during non-business hours, the effective date and time
        of notice is the first hour of the first business day after transmission; or
    (d) By sending e-mail transmission. Notice shall be effective as of date and time of e-mail transmission, provided
        that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00 P.M. Chicago
        Time), and provided further that the recipient provides written acknowledgment to the sender of receipt of the
        transmission (by e-mail, facsimile, or by regular mail). In the event e-mail notice is transmitted during non-
        business hours, the effective date and time of notice is the first hour of the first business day after transmission.

133 **15. THE DEED**: Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
134 merchantable title to the Real Estate by recordable general Warranty Deed, with release of homestead rights, (or the
135 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
136 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to: general
137 real estate taxes not due and payable at the time of Closing, covenants, conditions, and restrictions of record, building
138 lines and easements, if any, so long as they do not interfere with the current use and enjoyment of the Real Estate.

139 **16. TITLE**: At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
140 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
141 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title
142 company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance of this Contract,
143 subject only to items listed in Paragraph 15. The requirement of providing extended coverage shall not apply if the Real
144 Estate is vacant land. The commitment for title insurance furnished by Seller will be conclusive evidence of good and
145 merchantable title as therein shown, subject only to the exceptions therein stated. If the title commitment discloses
146 unpermitted exceptions, or if the Plat of Survey shows any encroachments which are not acceptable to Buyer, then Seller
147 shall have said exceptions or encroachments removed, or have the title insurer commit to insure against loss or damage
148 that may be caused by such exceptions or encroachments. If Seller fails to have unpermitted exceptions waived or title
149 insured over prior to Closing, Buyer may elect to take the title as it then is, with the right to deduct from the Purchase
150 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of
151 Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA Insurance
152 Policy.

153 **17. REAL ESTATE PROPERTY TAX ESCROW**: In the event the Real Estate is improved, but has not been
154 previously taxed for the entire year as currently improved, the sum of three (3) percent of the Purchase Price shall be
155 deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and
156 paid at Closing. When the exact amount of the taxes prorated under this Contract can be ascertained, the taxes shall be
157 prorated by the Seller's attorney at the request of either Party, and the Seller's share of such tax liability after reproration
158 shall be paid to the Buyer from the escrow funds and the balance, if any, shall be paid to the Seller. If the Seller's
159 obligation after such reproration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly
160 upon demand.

161 **18. PERFORMANCE: Time is of the essence of this Contract**. In the event of default by Seller or Buyer, the Parties
162 are free to pursue any legal remedies at law or in equity. The prevailing Party in litigation shall be entitled to collect

_MJ_ _____ _Buyer Initial_ _____ _Buyer Initial_ _JC_ _____ _Seller Initial_ _____ _Seller Initial_

**Address** 7516-7624 S Phillips Ave. Chicago, IL 60649

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

163   reasonable attorney fees and costs from the losing Party as ordered by a court of competent jurisdiction. There shall be
164   no disbursement of earnest money unless Escrowee has been provided written agreement from Seller and Buyer. Absent
165   an agreement relative to the disbursement of earnest money within a reasonable period of time, Escrowee may deposit
166   funds with the Clerk of the Circuit Court by the filing of an action in the nature of interpleader. Escrowee shall be
167   reimbursed from the earnest money for all costs, including reasonable attorney fees, related to the filing of the
168   interpleader action. Seller and Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims
169   and demands arising under this paragraph.
170   **19. DAMAGE TO REAL ESTATE PRIOR TO CLOSING**: If, prior to delivery of the deed, the Real Estate shall be
171   destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by condemnation, then Buyer shall
172   have the option of terminating this Contract and receiving a refund of earnest money or of accepting the Real Estate as
173   damaged or destroyed, together with the proceeds of any insurance payable as a result of the destruction or damage,
174   which proceeds Seller agrees to assign to Buyer. Seller shall not be obligated to repair or replace damaged
175   improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable
176   to this Contract, except as modified in this paragraph.
177   **20. SELLER REPRESENTATIONS**: Seller represents that he has not received written notice from any Governmental
178   body or Homeowner Association of (a) zoning, building, fire or health code violations that have not been corrected; (b)
179   any pending rezoning; or (c) a proposed or confirmed special assessment and /or special service area affecting the Real
180   Estate. Seller further represents that Seller has no knowledge of boundary line disputes, easements or claims of easement
181   not shown by the public records, any hazardous waste on the Real Estate or any improvements for which the required
182   permits were not obtained. Seller represents that there have been no improvements to the Real Estate which are not
183   included in full in the determination of the most recent real estate tax assessment, or which are eligible for home
184   improvement tax exemption.
185   **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
186   condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at
187   Seller's expense before possession. Buyer shall have the right to inspect the Real Estate, fixtures and personal property
188   prior to possession to verify that the Real Estate, improvements and included personal property are in substantially the
189   same condition as the Date of Acceptance of this Contract, normal wear and tear excepted.
190   **22. GOVERNMENTAL COMPLIANCE:** Parties agree to comply with the reporting requirements of the applicable
191   sections of the Internal Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.
192   **23. ESCROW CLOSING**: At the election of either Party, not less than five (5) business days prior to the Closing, this
193   sale shall be closed through an escrow with the lending institution or the title company in accordance with the provisions
194   of the usual form of Deed and Money Escrow Agreement, as agreed upon between the Parties, with provisions inserted
195   in the Escrow Agreement as may be required to conform with this Contract. The cost of the escrow shall be paid by the
196   Party requesting the escrow.
197   **24. FLOOD INSURANCE**: Buyer shall obtain flood insurance if required by Buyer's lender.
198   **25. FACSIMILE**: Facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this
199   Contract.
200   **26. BUSINESS DAYS**: Business days are defined as Monday through Friday, excluding Federal holidays.
201   **27. CONDOMINIUMS**: (If applicable) The Parties agree that the terms contained in this paragraph, which may be
202   contrary to other terms of this Contract, shall supersede any conflicting terms.
203      (a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions of
204         the Declaration of Condominium and all amendments; public and utility easements including any easements
205         established by or implied from the Declaration of Condominium or amendments thereto; party wall rights and
206         agreements; limitations and conditions imposed by the Condominium Property Act; installments due after the
207         date of Closing of general assessments established pursuant to the Declaration of Condominium.
208      (b) Seller shall be responsible for all regular assessments due and levied prior to Closing and for all special
209         assessments confirmed prior to the Date of Acceptance.
210      (c) Buyer has, within five (5) business days from the Date of Acceptance of this Contract, the right to demand from
211         Seller items as stipulated by the Illinois Condominium Property Act. The Contract is subject to the condition
212         that Seller be able to procure and provide to Buyer, a release or waiver of any option of first refusal or other pre-
213         emptive rights of purchase created by the Declaration of Condominium within the time established by the
214         Declaration. In the event the Condominium Association requires personal appearance of Buyer and/or additional
215         documentation, Buyer agrees to comply with same.

M J _____ *Buyer Initial* _____ *Buyer Initial*   JC _____ *Seller Initial* _____ *Seller Initial*

*Address* 7616-7624 S Phillips Ave. Chicago, IL 60649

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

216   (d) In the event the documents and information provided by the Seller to the Buyer disclose that the existing
217      improvements are in violation of existing rules, regulations or other restrictions or that the terms and conditions
218      contained within the documents would unreasonably restrict Buyer's use of the premises or would increase the
219      financial considerations which Buyer would have to extend in connection with the owning of the condominium,
220      then Buyer may declare this Contract null and void by giving Seller written notice within five (5) business days
221      after the receipt of the documents and information required by Paragraph 27 (c), listing those deficiencies which
222      are unacceptable to Buyer, and thereupon all earnest money deposited by Buyer shall be returned to Buyer upon
223      written direction of Parties to escrowee. **If written notice is not served within the time specified, Buyer shall**
224      **be deemed to have waived this contingency, and this Contract shall remain in full force and effect.**
225   (e) Seller shall not be obligated to provide a condominium survey.
226   (f) Seller shall provide a certificate of insurance showing Buyer (and Buyer's mortgagee) as insured.
227   **28. CHOICE OF LAW/GOOD FAITH**: All terms and provisions of this Contract including, but not limited to, the
228 Attorney Review and Professional Inspection paragraphs, shall be governed by the laws of the State of Illinois and are
229 subject to the covenant of good faith and fair dealing implied in all Illinois contracts.
230
231 **THE FOLLOWING OPTIONAL PROVISIONS APPLY ONLY IF INITIALED BY ALL PARTIES**
232
233         **29. SALE OF BUYER'S REAL ESTATE**:
234 [initials]
235 (A) **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE**: Buyer represents to Seller as follows:
236   (1) Buyer owns real estate commonly known as (address): _____
237   (2) Buyer **[check one]** ☐ has ☒ has not entered into a contract to sell his real estate. If Buyer has entered into a contract to sell
238      his real estate:
239      (a) Buyer's sale contract **[check one]**: ☒ is ☐ is not subject to a mortgage contingency.
240      (b) Buyer's sale contract **[check one]**: ☐ is ☒ is not subject to a real estate sale contingency.
241      (c) Buyer's sale contract **[check one]**: ☐ is ☒ is not subject to a real estate closing contingency.
242   (3) Buyer **[check one]** ☐ has ☐ has not listed his real estate for sale with a licensed real estate broker and in a local multiple
243      listing service.
244      If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing service,
245      Buyer:**[check one]**
246      (a) ☐   Shall list his real estate for sale with a licensed real estate broker who will place it in a local multiple
247        listing service within five (5) business days after the Date of Acceptance of this Contract.
248        For information only: Broker: _____
249        Broker's Address: _____ Phone: _____
250      (b) ☒ Does not intend to list his real estate for sale.
251   (5) Buyer authorizes Seller or his agent to verify representations contained in Paragraph 29 at any time, and Buyer agrees to
252      cooperate in providing relevant information.
253 (B) **CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE**:
254   (1) This Contract is contingent upon Buyer having a contract for the sale of Buyer's real estate in full force and effect as of
255      _____, 20_____. Such contract shall provide for a Closing date not later than the Closing date set forth in
256      this Contract. **If written notice of failure to procure such contract is not served within the time specified, Buyer shall**
257      **be deemed to have waived this contingency and this Contract shall remain in full force and effect. (If this paragraph**
258      **is used, then the following paragraph must be completed.)**
259   (2) In the event the Buyer has procured a contract for the sale of Buyer's real estate as set forth in Paragraph 29 (B) (1) and that
260      contract is in full force and effect and has entered into a contract for sale of Buyer's real estate prior to the execution of this
261      Contract, this Contract is contingent upon Buyer Closing the sale of Buyer's real estate on or before
262      _____, 20_____. **If written notice is not served within the time specified, Buyer shall be**
263      **deemed to have waived all contingencies contained in this Paragraph 29, and this Contract shall remain in full force**
264      **and effect.**
265   (3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 29 (B) (1)
266      (or after the date of this Contract if no date is set forth in Paragraph 29 (B) (1)), Buyer shall, within three (3) business days
267      of such termination, notify Seller of said termination. Unless Buyer, as part of said notice, waives all contingencies in
268      Paragraph 29 and complies with Paragraph 29 (D), this Contract shall be null and void as of the date of notice **and earnest**
269      **money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice as required by this**
270      **subparagraph is not served within the time specified, Buyer shall be in default under the terms of this Contract.**
271 (C) **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE**: During the time of this contingency Seller
272      has the right to continue to show the Real Estate and offer it for sale subject to the following:

| MJ | _____ _Buyer Initial_ | _____ _Buyer Initial_ | JC | _____ _Seller Initial_ | _____ _Seller Initial_ |

**Address** 7616-7624 S Phillips Ave, Chicago, IL 60649 _____

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

273      (1) If Seller accepts another bona fide offer to purchase the Real Estate during such period, Seller shall notify Buyer in writing
274      of same. Buyer shall then have _____ hours after Seller gives such notice to waive the contingencies set forth in
275      Paragraph 29 (B), subject to Paragraph 29 (D).
276      (2) If Buyer complies with the provisions of Paragraph 29 (D) then this Contract shall remain in full force and effect.
277      (3) If the contingencies set forth in Paragraph 29 (B) are NOT waived in writing within said time period by Buyer, **this**
278      **Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties to**
279      **Escrowee.**
280 **(D) WAIVER OF PARAGRAPH 29 CONTINGENCIES**: Buyer shall be deemed to have waived the contingencies in Paragraph
281 29 (B) when Buyer has delivered written waiver and deposited with the Escrowee the additional sum of $_____
282 earnest money within the time specified. **If Buyer fails to deposit the additional earnest money within the time specified the**
283 **waiver shall be deemed ineffective and this Contract shall be null and void and earnest money refunded to Buyer upon**
284 **written direction of the Parties to Escrowee.**
285 **(E) NOTICE (FOR THIS CONTINGENCY ONLY)**: Except as otherwise provided above, notice required under this Paragraph
286 29 shall be in writing and shall be served on the Party. Courtesy copies of notice should be sent to the respective attorneys and real
287 estate agents, if known. Failure to provide such courtesy copies shall not render notice invalid. Notice to any one of a multiple
288 person Party shall be sufficient notice to all. Notice shall be given to the Party in the following manner:
289      (1) By personal delivery of such notice effective at the time and date of personal delivery; or
290      (2) By mailing of such notice to the addresses recited herein by regular mail and by certified mail. Notice served by regular
291      mail and certified mail shall be effective of 10:00 A.M. on the morning of the second day following deposit of notice in the
292      U.S. Mail; or
293      (3) By facsimile to a Party (service shall be effective at the time and date the sending Party receives a receipted copy of the
294      notice from the receiving Party).
295
296      **30. CANCELLATION OF PRIOR REAL ESTATE CONTRACT**: In the event either Party has entered into a prior
297 real estate contract this Contract shall be subject to written cancellation of the prior contract on or before _____,
298 20____. In the event the prior contract is not cancelled within the time specified, **this Contract shall be null and void and earnest**
299 **money refunded to Buyer upon written direction of the Parties to Escrowee**. Notice to the purchaser under the prior contract
300 should not be served until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
301 **satisfied or waived.**
302
303      **31. INTEREST BEARING ACCOUNT**: Earnest money (with a completed W-9 and other required forms), shall be
304 held in a federally insured interest bearing account at a financial institution designated by Escrowee. All interest earned on the
305 earnest money shall accrue to the benefit of and be paid to Buyer. **The Buyer shall be responsible for any administrative fee (not**
306 **to exceed $75) charged for setting up the account**. In anticipation of Closing, the Parties direct Escrowee to close the account no
307 sooner than ten (10) business days prior to the anticipated Closing date.
308
309      **32. POST-CLOSING POSSESSION**: In the event possession is not to be delivered at Closing, the Parties shall enter
310 into a post Closing possession agreement that shall provide, among other things, that possession will be delivered no later than 11:59
311 P.M. on _____, 20___, provided sale has been closed. Seller agrees to pay at Closing the sum of $ _____ per day
312 to Buyer for use and occupancy from and including the day after Closing to and including the possession date specified above,
313 regardless of whether possession is delivered prior to the possession date. In the event possession is not delivered at Closing, Seller
314 shall deposit in escrow at Closing with Title Company, Listing Company or other escrowee as agreed to by the Parties and escrowee
315 by separate check, the sum of one percent (1%) of the Purchase Price to guarantee that possession of the Real Estate shall be
316 delivered to Buyer on or before the date and time specified in this Contract. If possession is so delivered, the escrow fund shall be
317 paid to Seller. If possession is not so delivered, the designated escrowee shall pay to Buyer from the escrow funds the sum of one fifth (1/5th)
318 of the deposit for each day possession is withheld from Buyer after such specified date and time, and shall pay the balance of the
319 escrow fund, if any, to Seller. In the event that possession is not delivered to Buyer within five (5) calendar days after the date
320 specified herein, Seller shall continue to be liable for a sum of money equal to one fifth (1/5th) of the possession escrow sum specified
321 herein for each day possession is so withheld from Buyer, without prejudice to any other rights or remedies available to Buyer. If
322 within ten (10) business days after Date of Acceptance written agreement on a post Closing possession agreement cannot be reached
323 by the Parties, **this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties**
324 **to Escrowee. If written notice is not served within the time specified, this provision shall be deemed waived by the Parties**
325 **and this Contract shall remain in full force and effect.**
326
327      **33. WELL AND/OR SEPTIC/SANITARY INSPECTIONS**: Seller shall obtain, at Seller's expense, a well water
328 test (including nitrates test) and/or a septic/sanitary report from the applicable governmental authority or qualified inspection
329 service, each dated not more than ninety (90) days prior to Closing, stating that the well and the water supplied therefrom and the
330 septic/sanitary system are in compliance with applicable health regulations. Seller shall deliver a copy of the report to Buyer not less
331 than fourteen (14) days prior to Closing. If either system is found not to be in compliance with applicable health regulations, and in

[ MJ ] _____ Buyer Initial _____ Buyer Initial [ JC ] _____ Seller Initial _____ Seller Initial

**Address** 7616-7624 S Phillips Ave. Chicago, IL 60649

*Left margin vertical text:* FILED DATE: 7/9/2018 3:06 PM 2018-CH-08589 ... 1-452-0366 6 of 9

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

332 the event that within five (5) business days after receipt of such report(s), written agreement cannot be reached by the Parties with
333 respect to the resolution of well and/or septic/sanitary issues, then either Party may terminate this Contract by written notice to the
334 other Party and **this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the**
335 **Parties to Escrowee.**
336
337         **34. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously consented to
338 _____ (Licensee) acting as a Dual Agent in providing brokerage services
339 on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.
340
341         **35. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate and personal property in its
342 "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect to the
343 condition of the Real Estate and personal property have been made by Seller or Seller's Agent other than those known defects, if
344 any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller shall make the property available
345 to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage
346 caused by the acts or negligence of Buyer or any person performing any inspection(s). In the event the inspection reveals that the
347 condition of the improvements, fixtures or personal property to be conveyed or transferred is unacceptable to Buyer and Buyer so
348 notifies Seller within five (5) business days after the Date of Acceptance, **this Contract shall be null and void and earnest money**
349 **shall be refunded to Buyer upon the written direction of the Parties to Escrowee.** Failure of Buyer to notify Seller or to conduct
350 said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and this Contract shall remain in
351 full force and effect. Buyer acknowledges the provisions of Paragraph 11 and the warranty provisions of Paragraph 3 do not apply to
352 this Contract.
353
354         **36. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, this provision shall be applicable: Buyer
355 may terminate this Contract if the Purchase Price set forth herein exceeds the appraised value of the Real Estate, as determined by
356 the Veterans Administration (VA) or the Federal Housing Administration (FHA). However, Buyer shall have the option of
357 proceeding with this Contract without regard to the amount of the appraised valuation. If VA, the Funding Fee, or if FHA, the
358 Mortgage Insurance Premium (MIP) shall be paid by Buyer and **[check one]** ☐ shall ☑ shall not be added to the mortgage loan
359 amount. Seller agrees to pay additional miscellaneous expenses required by lender not to exceed $200.00.
360 **Required FHA or VA amendments shall be attached to this Contract.**
361         It is expressly agreed that notwithstanding any other provisions of this Contract, the Buyer shall not be obligated to complete the
362 purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the
363 Buyer has been given, in accordance with HUD/FHA requirements, a written statement by the Federal Housing Commissioner
364 setting forth the appraised value of the property (excluding Closing costs) of not less than $_____.
365 Buyer shall have the privilege and option of proceeding with the consummation of the Contract without regard to the amount of the
366 appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and
367 Urban Development will insure/guarantee. HUD and the mortgagee do not warrant the value nor the condition of the property.
368 Buyer should satisfy himself/herself that the price and condition of the property are acceptable.
369
370         **37. INTERIM FINANCING:** This Contract is contingent upon Buyer obtaining a written commitment for interim
371 financing on or before _____, 20\_\_\_ in the amount of $_____. If Buyer is unable to secure the
372 interim financing commitment and gives written notice to Seller within the time specified, **this Contract shall be null and void and**
373 **earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the**
374 **time specified, this provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.**
375
376         **38. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the Parties entering
377 into a separate written agreement consistent with the terms and conditions set forth herein, and with such additional terms as either
378 Party may deem necessary, providing for one or more of the following: *(check applicable box(es))*
379 ☐ ASSUMPTION OF SELLER'S MORTGAGE
380 ☐ ARTICLES OF AGREEMENT FOR DEED OR PURCHASE MONEY MORTGAGE
381 ☐ VACANT LAND
382 ☐ NEW CONSTRUCTION
383
384         **39. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real Estate by
385 _____, Buyer's specified party,
386 within five (5) calendar days after the Date of Acceptance. In the event Buyer's specified party does not approve of the Real Estate
387 and written notice is given to Seller within the time specified, **this Contract shall be null and void and earnest money refunded**
388 **to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the time specified, this**
389 **provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.**

[MJ] _____ *Buyer Initial* _____ *Buyer Initial* [JC] _____ *Seller Initial* _____ *Seller Initial*

*Address* 7616-7624 S Phillips Ave. Chicago, IL 60649

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

390 **THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL**
391 **PARTIES AND DELIVERED**
392 The Parties represent that text of this form has not been altered and is identical to the official Multi-Board Residential
393 Real Estate Contract 3.0.

| 394 | 6/10/2015 | 20_____ | 6/9/2015 | 20_____ |
|---|---|---|---|---|
| 395 | Date of Offer | | **DATE OF ACCEPTANCE** | |
| 396 | | | | |
| 397 | *Marten Junck* | | *Jerry Cohen* | |
| 398 | Buyer Signature | | Seller Signature | |
| 399 | | | | |
| 400 | Michigan Shore Apartments LLC | | EquityBuild, Inc. | |
| 401 | Print Buyer(s) Name(s) | | Print Seller(s) Name(s) | |
| 402 | 2364 Jackson St. #150 | | 1083 N Collier Blvd. #132 | |
| 403 | Address | | Address | |
| 404 | Stoughton | WI    53589 | Marco Island | FL    34145 |
| 405 | City | State    Zip | City | State    Zip |
| 406 | 608-335-0590 | mfjunck@earthlink.net | 239-573-5055 | jerry@equitybuild.com |
| 407 | Phone Number(s) | Email | Phone Number(s) | Email |

408
409 *FOR INFORMATION ONLY*

| 410 | Selling Office | MLS # | Listing Office | MLS # |
|---|---|---|---|---|
| 411 | | | | |
| 412 | Selling Agent | MLS #    Email | Listing Agent | MLS #    Email |
| 413 | | | | |
| 414 | Address | City    ST    Zip | Address | City    ST    Zip |
| 415 | | | | |
| 416 | Phone No. | Fax No. | Phone No. | Fax No. |
| 417 | | | | |
| 418 | Buyer's Attorney | Email | Seller's Attorney | Email |
| 419 | | | | |
| 420 | Address | | Address | |
| 421 | | | | |
| 422 | Phone No. | Fax No. | Phone No. | Fax No. |
| 423 | | | | |
| 424 | Mortgage Company | Fax No. | Loan Officer | Phone No. |

425
426 ©2003, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this
427 form or any portion thereof is prohibited.
428     Official form available at www.reallaw.org (web site of Illinois Real Estate Lawyers Association).
429         *Approved by the following organizations January, 2003.*
430 Illinois Real Estate Lawyers Association, Belvidere Board of REALTORS®, Boone County Bar Association, Chicago
431 Association of REALTORS®, Du Page County Bar Association, Kane County Bar Association, Lake County Bar
432 Association, McHenry County Association of REALTORS®, North Shore - Barrington Association of REALTORS®,
433 Northwest Association of REALTORS®, Northwest Suburban Bar Association, Oak Park Board of REALTORS®,
434 REALTOR® Association of the Fox Valley, REALTOR® Association of West/South Suburban Chicagoland, West
435 Towns Board of REALTORS®
436

437 This offer was presented to Seller by _____ on _____ 20_____ at ____:____ AM/PM
438                                                     (Agent)                              (date)
439 This offer is rejected _____  _____  _____20_____
440                            (Seller initials)        (Seller initials)        (date)

[MJ] _____ *Buyer Initial* _____ *Buyer Initial* [JC] _____ *Seller Initial* _____ *Seller Initial*
*Address* 7616-7624 S Phillips Ave. Chicago, IL 60649

DocuSign Envelope ID: B4B54061-7CF2-4409-A7FD-6A96884955DC

ADDENDUM TO REAL ESTATE PURCHASE CONTRACT

This Addendum B to Real Estate Purchase Contract ("Addendum B") is made a part of that certain Real Estate Purchase Contract ("Contract") between EquityBuild, Inc. ("Seller") and Michigan Shore Apartments, LLC ("Purchaser") for the purchase of the property known as 7616-7624 S Phillips Ave. Chicago, IL 60649

     Purchase Price: $ 1,950,000.00
     Closing Date: 06/24/2015

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchase agree to the following:

1. Immediately following the completion of the rehab, EquityBuild, Inc. guarantees that all maintenance will be paid for and completed by EquityBuild, Inc. for one (1) year from the date of completion of the rehab.

The addendum does not otherwise alter or change the terms of the previous agreement between the parties.

BUYER: _Marlen Junck_      SELLER: _Jerry Cohen_

Dated: 6/10/2015      Dated: 6/9/2015

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 9 of 9

ELECTRONICALLY FILED
11/26/20 EX 152 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 6
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

PLANTIFF EXHIBIT
2018-CH-03665

DTS 1328474 2/3

# ILLINOIS STATUTORY POWER OF ATTORNEY

Dated this **23** day of June, 2015

RECORDER'S STAMP

Doc#: 1519519128 Fee: $48.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 07/14/2015 02:51 PM Pg: 1 of 6

1. I, (insert name and address of principal) **Marlen Junck, as Member of Michigan Shore Apartments, LLC, 2364 Jackson St., #150, Stoughton, Wisconsin 53589,** hereby appoint:

(insert name and address of agent) **Mark Brosius, Attorney at Law, 7250 N. Cicero, Ste. 107, Lincolnwood, Illinois 60712**

as my attorney-in-fact (my "agent") to act for me and in my name (in any way I could act in person) with respect to the following powers, as defined in Section 3-4 of the "Statutory Short Form Power of Attorney for Property Law" (including all amendments), but subject to any limitations on or additions to the specified powers inserted in paragraph 2 or 3 below:

(YOU MUST STRIKE OUT ANY ONE OR MORE OF THE FOLLOWING CATEGORIES OF POWERS YOU DO NOT WANT YOUR AGENT TO HAVE. FAILURE TO STRIKE THE TITLE OF ANY CATEGORY WILL CAUSE THE POWERS DESCRIBED IN THAT CATEGORY TO BE GRANTED TO THE AGENT. TO STRIKE OUT A CATEGORY YOU MUST DRAW A LINE THROUGH THE TITLE OF THAT CATEGORY.)

(a) Real estate transactions
(b) ~~Financial institution transactions~~
(c) ~~Stock and bond transactions~~
(d) ~~Tangible personal property transactions.~~
(e) ~~Safe deposit box transactions~~
(f) ~~Insurance and annuity transactions~~
(g) ~~Retirement plan transactions~~
(o) All other property powers and transactions

(h) ~~Social Security, employment and military service benefits~~
(i) ~~Tax matters~~
(j) ~~Claims and litigation~~
(k) ~~Commodity and option transactions~~
(l) Business operations
(m) Borrowing transactions
(n) ~~Estate transactions~~

[1]

CCRD REVIEWER 

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 6

(LIMITATIONS ON AND ADDITIONS TO THE AGENT'S POWERS MAY BE INCLUDED IN THIS POWER OF ATTORNEY IF THEY ARE SPECIFICALLY DESCRIBED BELOW.)

2. The powers granted above shall not include the following powers or shall be modified or limited in the following particulars (here you may include any specific limitations you deem appropriate, such as a prohibition or conditions on the sale of particular stock or real estate or special rules on borrowing by the agent):

**Agent authorized to execute any and all documents on behalf of principal, including mortgage loan documents necessary to effectuate the purchase and closing of the real estate commonly known as 7616-7624 S. Phillips Avenue, Chicago, Illinois 60649.**

3. In addition to the powers granted above, I grant my agent the following powers (here you may add any other delegable powers including, without limitation, power to make gifts, exercise powers of appointment, name or change beneficiaries or joint tenants or revoke or amend any trust specifically referred to below):

**N/A**

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE; OTHERWISE IT SHOULD BE STRUCK OUT.)

4. ~~My agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.~~

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR SERVICES AS AGENT.)

[2]

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 6

5. My agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(THIS POWER OF ATTORNEY MAY BE AMENDED OR REVOKED BY YOU AT ANY TIME AND IN ANY MANNER. ABSENT AMENDMENT OR REVOCATION, THE AUTHORITY GRANTED IN THIS POWER OF ATTORNEY WILL BECOME EFFECTIVE AT THE TIME THIS POWER IS SIGNED AND WILL CONTINUE UNTIL YOUR DEATH UNLESS A LIMITATION ON THE BEGINNING DATE OR DURATION IS MADE BY INITIALING AND COMPLETING EITHER (OR BOTH) OF THE FOLLOWING:)

6. ( x ) This power of attorney shall become effective on __June 25, 2015__ (insert a future date or event during your lifetime, such as court determination of your disability, when you want this power to first take affect).

7. ( x ) This power of attorney shall terminate on __July 25, 2015__ (insert a future date or event, such as court determination of your disability, when you want this power to terminate prior to your death)

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

8. If any agent named by me shall die, become incompetent, resign or refuse to accept the office of agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such agent:
_____N/A_____

For purposes of this paragraph 8, a person shall be considered to be incompetent if and while the person is a minor or an adjudicated incompetent or disabled person or the person is unable to give prompt and intelligent consideration to business matters, as certified by a licensed physician.

(IF YOU WISH TO NAME YOUR AGENT AS GUARDIAN OF YOUR ESTATE, IN THE EVENT A COURT DECIDES THAT ONE SHOULD BE APPOINTED, YOU MAY, BUT ARE NOT REQUIRED TO, DO SO BY RETAINING THE FOLLOWING PARAGRAPH. THE COURT WILL APPOINT YOUR AGENT IF THE COURT FINDS THAT SUCH APPOINTMENT WILL SERVE YOUR BEST INTERESTS AND WELFARE. STRIKE OUT PARAGRAPH 9 IF YOU DO NOT WANT YOUR AGENT TO ACT AS GUARDIAN).

[3]

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 6

9. If a guardian of my estate (my property) is to be appointed, I nominate the agent acting under this power of attorney as such guardian, to serve without bond or security.

10. I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my agent.

Signed: _____ **(Principal)**

(YOU MAY, BUT ARE NOT REQUIRED TO, REQUEST YOUR AGENT AND SUCCESSOR AGENTS TO PROVIDE SPECIMEN SIGNATURES BELOW. IF YOU INCLUDE SPECIMEN SIGNATURES IN THIS POWER OF ATTORNEY, YOU MUST COMPLETE THE CERTIFICATION OPPOSITE THE SIGNATURES OF THE AGENT AND SUCCESSORS.)

Specimen signatures of agent (and successors)

(Agent) __N/A_____

(Successor Agent) __N/A_____

(Successor Agent) __N/A_____

I certify that the signatures of my agent (and successors) are correct.

(Principal) ____N/A_____

(Principal) ____N/A_____

(Principal) ____N/A_____

(THIS POWER OF ATTORNEY WILL NOT BE EFFECTIVE UNLESS IT IS NOTARIZED AND SIGNED BY AT LEAST ONE WITNESS, USING THE FORM BELOW.)

The undersigned witness certifies that **Marlen Junck**____, known to me to be the same person whose name is subscribed as principal to the foregoing power of attorney, appeared before me and the notary public and acknowledged signing and delivering the instrument as the free and voluntary act of the principal, for the uses and purposes therein set forth. I believe him or her to be of sound mind and memory.

Printed Name: _Paul Burnell_____ Date: _6/23/15_____

Signed: _Paul Burnell_____ (Witness)

[4]

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of 6

State of _Wisconsin_ )
County of _Rock_ ) SS.
)

The undersigned, a notary public in and for the above state and county, certifies that___**Marlen Junck**_____, known to me based upon satisfactory evidence to be the same person whose name is subscribed as principal to the foregoing power of attorney, appeared before me and the additional witness in person and acknowledged signing and delivering the instrument as the free and voluntary act of the principal, for the uses and purposes therein set forth (and certified to the correctness of the signature(s) of the agents(s), if applicable).

Dated: _6/23/2015_____ (SEAL)

(Notary Public) _Kimberly Summers_

My commission expires _03/22/2019_____

The requirement of the signature of an additional witness imposed by this amendatory Act of the 91st General Assembly [91-0790] applies only to instruments executed on or after the effective date of this amendatory Act of the 91st General Assembly [June 9, 2000].

(THE NAME AND ADDRESS OF THE PERSON PREPARING THIS FORM SHOULD BE INSERTED IF THE AGENT WILL HAVE POWER TO CONVEY ANY INTEREST IN REAL ESTATE.)

This document was prepared by:

(Name) Mark Brosius, Esq._____

(Address) 7250 N. Cicero, Ste. 107, Lincolnwood, IL 60712_____

[5]

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

Commitment Number:  1328674

LOTS 5, 6, 7 AND 8 AND THE NORTH 5 FEET OF LOT 9 IN BLOCK 5 IN SOUTH SHORE PARK BEING A SUBDIVISION OF THE WEST 1/2 OF THE SOUTH WEST 1/4 OF SECTION 30 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS

*016*

21-30-307-015-0000
7616-64 S. PHILLIPS AVE CHICAGO IL

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 6 of 6

PRIMARY TITLE SERVICES, LLC
8833 GROSS POINT ROAD #205 - SKOKIE, IL 60077-1859
(P) 847-677-8633 (F) 847-673-8833
A Policy Issuing Agent for
FIRST AMERICAN TITLE INSURANCE COMPANY

Commitment
Exhibit A

Template File EBUILD.PFT

ELECTRONICALLY FILED
3/20/2018 4:52 PM
PLAINTIFF'S EXHIBIT 23
2018-CH-03663
CALENDAR: 08
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

**WARRANTY DEED**
**ILLINOIS STATUTORY**

Doc#: 1519519127 Fee: $40.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 07/14/2015 02:50 PM Pg: 1 of 2

PTS 1/3

Commitment No.: 1328674

THE GRANTOR, **EQUITYBUILD, INC.**, a corporation created and existing under and by virtue of the laws of the State of Florida and duly authorized to transact business in the state of Illinois, for and in consideration of Ten and 00/100 Dollars, and other good and valuable consideration, in hand paid, and pursuant to authority given by the Board of Directors of said corporation, CONVEY(S) and WARRANT(S) to **MICHIGAN SHORE APARTMENTS, LLC**, of 2364 Jackson Street #150, Stoughton, WI 53589, the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOTS 5, 6, 7 AND 8 AND THE NORTH 5 FEET OF LOT 9 IN BLOCK 5 IN SOUTH SHORE PARK BEING A SUBDIVISION OF THE WEST 1/2 OF THE SOUTH WEST 1/4 OF SECTION 30 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes not due and payable at the time of Closing; covenants, conditions and restrictions of record; and building lines and easements, if any.

Permanent Real Estate Index Number(s): **21-30-307-015-0000 & 21-30-307-016-0000**

Address(es) of Real Estate: **7616-7624 S. Phillips Avenue, Chicago, Illinois 60649**

In Witness Whereof, said party of the first part has caused its corporate seal to be hereunto affixed, and has caused its name to be signed to these presents by its President, and attested by its Secretary this ___26th___ day of June, 2015.

Warranty Deed

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 2

**EQUITYBUILD, INC., a Florida Corporation**

By: _____
     Jerry Cohen, as President

Attest: _____
        Patricia Cohen, as Secretary

STATE OF _Florida_____, COUNTY OF _Manatee_____ SS

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc. and Patricia Cohen, personally known to me to be the Secretary of said corporation, and personally known to me to be the same person(s) whose name(s) are subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President and Secretary they signed and delivered the said instrument, pursuant to authority given by the Board of Directors of said corporation, as their free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal this __25__ day of June, 2015.

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153
FloridaNotaryService.com

_____
Notary Public

Prepared by:

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street Suite 2200
Chicago, IL 60654

Mail to:

Mark Brosius
Attorney at Law
7250 N. Cicero Ave., Ste. 107
Lincolnwood, Illinois 60712

Name and Address of Taxpayer:

Michigan Shore Properties, LLC
23664 Jackson Street #150
Stoughton, WI 53589

**COOK COUNTY**
REAL ESTATE TRANSACTION TAX

COUNTY TAX

JUL.14.15

REVENUE STAMP

# 0000024350

| REAL ESTATE TRANSFER TAX |
|---|
| 0075750 |
| FP 103042 |

**STATE OF ILLINOIS**

STATE TAX

JUL.14.15

REAL ESTATE TRANSFER TAX
DEPARTMENT OF REVENUE

# 0000024405

| REAL ESTATE TRANSFER TAX |
|---|
| 0151500 |
| FP 103037 |

City of Chicago
Dept. of Finance
691212

Real Estate
Transfer
Stamp
$15,907.50

7/14/2015  13:41

dr00764                    Batch 10,204,197

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 10
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

PLAINTIFF'S EXHIBIT 4

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

| LENDER | BORROWER |
|---|---|
| The persons listed on **Exhibit A** to the Note C/O EQUITYBUILD FINANCE, LLC 5068 WEST PLANO PKWY #300 PLANO, TX 75093 | MICHIGAN SHORE APARTMENTS, LLC 2364 JACKSON ST. #150 STOUGHTON, WI 53589 |

**COMMERCIAL FLAT RATE PROMISSORY NOTE**

**With Balloon Payment**

**Illinois**

| Interest Rate | Principal | Funding Date | Maturity Date | Loan Number |
|---|---|---|---|---|
| 15% For 24 Months | $1,950,000 | 06/29/2015 | 07/01/2017 | N/A |

THIS LOAN IS PAYABLE IN FULL ON OR BEFORE THE "MATURITY DATE" LISTED HEREIN. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST, AND FEES AND COSTS, THEN DUE TO THE LENDER. LENDER IS UNDER NO OBLIGATION TO REFINANCE, EXTEND OR MODIFY THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER (WHICH MAY OR MAY NOT BE THE LENDER YOU HAVE THIS LOAN WITH), WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. FOR VALUE RECEIVED, the undersigned Borrower(s), Maker(s) and/or Guarantor(s) (hereinafter the "Borrower") promises to pay The persons listed on **Exhibit A** to this Note C/O EquityBuild Finance, LLC (hereinafter collectively referred to as the "Holder" or "Lender"), at 5068 West Plano Pkwy. #300 Plano, TX 75093, the principal sum of ONE MILLION NINE HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($1,950,000.00), together with interest from the above date at the interest rate of FIFTEEN PERCENT (15.0%) per annum on the unpaid principal balance until paid. The principal of this Note, plus accrued interest at the rate aforesaid, shall be due and payable in TWENTY-FOUR (24) installments as follows:

a) ONE (1) interest payment in the amount of TWENTY-SIX THOUSAND and 00/100 DOLLARS ($26,000.00), beginning on or before JUNE 29, 2015; and

b) TWENTY-TWO (22) equal and consecutive interest only payments in the amount of TWENTY-FOUR THOUSAND THREE HUNDRED SEVENTY-FIVE and 00/100 DOLLARS ($24,375.00), beginning on or before SEPTEMBER 01, 2015 and continuing each and every month thereafter; and

c) One (1) final balloon payment on or before JULY 01, 2017, at which time the entire principal balance, together with accrued but unpaid interest thereon, and any costs and expenses, shall be due and payable.

Anything in this Note contrary notwithstanding, the entire unpaid balance of the principal sum and all unpaid interest accrued thereon shall, unless sooner paid, be and become due and payable on JULY 01, 2017 ("Maturity Date").

1.     **Application of Payments**. All payments on this Note shall be made in lawful money of the United States of America and shall be applied first to any late charges due hereunder, second to the payment of accrued but

1

Borrower's Initials _____

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 10

unpaid interest and the remainder to the reduction of principal. The Borrower shall make all payments when due, without set-offs of any nature.

2.  **Late Charge/Dishonored Check.** There shall be a grace period of five (5) days for any payment due under this Note. The Borrower shall pay a late charge of 5% of the monthly payment amount, or $50.00, whichever is greater, if such payment is received by Lender after the grace period. If the Maturity Date of the Note has expired the late fee will be at the rate of 1.5% per month plus the face amount of the Note.
In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $50.00 (but not more than the maximum amount allowed by law) for each such event.

3.  **Security.** To secure the payment and performance of obligations incurred under this Note, this Note shall be secured by and subject to the terms of a Mortgage of even date herewith from the Borrower which encumbers real property and improvements located at

**7615-7624 S Phillips Ave, Chicago, IL 60649,** and the maturity hereof is subject to acceleration as therein set forth. Both this Note and the Mortgage are given in consideration of a loan of even date herewith in the amount of the principal sum by the Lender to the Borrower.

In addition to the property described above, Borrower grants Lender a security interest in all of Borrower's right, title and interest in all monies and instruments of Borrower that are now or in the future in Lender's custody or control.

4.  **Events of Default.** An Event of Default will occur under this Note in the event that Borrower any guarantor or any other third party pledging collateral to secure this Note:

a.  Fails to make any payment of principal and/or interest or any other sum due hereunder when the same is due pursuant to the terms of this Note;
b.  If Borrower, guarantor or such third party:
   i.  Applies for or consents to the appointment of a receiver, trustee or liquidator of Borrower, guarantor or such third party or of all or a substantial part of its assets;
   ii.  Files a voluntary petition in bankruptcy, whether by the Federal Bankruptcy Act or any similar State statue, or admits in writing its inability to pay its debts as they come due;
   iii.  Makes an assignment for the benefit of creditors;
   iv.  Files a petition or an answer seeking a reorganization or an arrangement with creditors or seeking to take advantage of any insolvency law;
   v.  Performs any other act of bankruptcy; or
   vi.  Files an answer admitting the material allegations of a petition filed against Borrower, guarantor or such third party in any bankruptcy, reorganization or insolvency proceeding; or
c.  Permits the entry of any order, judgment or decree by any court of competent jurisdiction adjudicating Borrower, guarantor or such third party a bankrupt or an insolvent. or approving a receiver, trustee or liquidator of Borrower, guarantor or such third party or of all or a substantial part of its assets; or
d.  There otherwise commences with respect to Borrower, guarantor or such third party or any of its assets any proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment, receivership or like law or statute, and if the order, judgment, decree or proceeding continues unstayed for any period of 60 consecutive days, or continues in effect for more than 10 days after any stay thereof.
e.  Fails to perform or violates any obligations or covenants under the terms of this Note or any Mortgages or any additional loan documents or any other present or future written agreements regarding this Note or any other indebtedness or obligations between Borrower, guarantor or such third party and Lender;
f.  Defaults under the terms of any note, mortgage, security instrument, or any other loan documents or written agreements for any other loans secured by the property representing the collateral for this Note;

IL: Commercial Flat Rate Promissory Note

2

Borrower's Initials 

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 10

g. Permits the entry of any judgment or lien, or the issuance of any execution, levy, attachment or garnishment proceedings against Borrower, guarantor or such third party;

h. Sells or otherwise conveys any property which constitutes security or collateral for the payment of this Note without the prior written consent of the Lender and/or the destruction, loss or damage to such collateral in any material respect and/or the seizure, condemnation or confiscation of the collateral;

i. Provides or causes to be provided any false or misleading signature or representation to be provided to Lender;

j. Has a garnishment, judgment, tax levy, attachment or lien entered or served against Borrower, any guarantor, or any third party pledging collateral to secure this Note or any of their property;

k. Dies, becomes legally incompetent, is dissolved or terminated, or ceases to operate its business;

l. Fails to provide Lender evidence of satisfactory financial condition;

m. Has a majority of its outstanding voting securities sold, transferred or conveyed to any person or entity other than any person or entity that has the majority ownership as of the date of the execution of this Note;

n. Causes Lender to deem itself insecure due to a significant decline in the value of any real or personal property securing payment of this Note, or Lender, in good faith believes the prospect of payment or performance is impaired;

o. Fails to keep an insurance policy in place on the subject property being used as collateral for this loan with Lender as the mortgagee and/or as the loss payee including its successor and/or assigns;

p. Fails to keep property taxes current on property used as security for this Note.

5. **Rights of Lender On Event of Default.** In the Event of Default as set forth herein, or in the event of the breach of any covenant or obligation contained in the herein referred to Mortgage or Loan Documents on the part of the undersigned to be kept, observed or performed, the Lender, at its sole and absolute discretion, may exercise one or more of the following remedies without notice or demand (except as required by law);

a. Declare the entire unpaid balance of principal of this Note, along with accrued and unpaid interest thereon and all other charges, costs and expenses, provided for herein and in the Mortgage immediately due and payable. Such acceleration shall be automatic and immediate in the Event of Default is a filing under the Bankruptcy Code;

b. Collect the outstanding obligations of Borrower with or without judicial process;

c. Cease making advances under this Note or any other agreement between Borrower and Lender;

d. Take possession of any collateral in any manner permitted by law;

e. require Borrower to deliver and make available to Lender any collateral at a place reasonably convenient to Borrower and Lender;

f. Sell, lease or otherwise dispose of any collateral and collect any deficiency balance with or without resorting to legal process;

g. Assume any and all mortgages/deeds of trust in existence at the time of default on all collateral securing loans made to Borrower;

h. Set-off Borrower's obligations against any amounts due to Borrower including, but not limited to, monies and instruments, maintained with Lender; and

i. Exercise all other rights available to Lender under any other written agreement or applicable law.

At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the "Default Rate" set forth in this Note. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full. Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any accrued interest remaining past due for 30 days or more shall be added to and become part of the unpaid principal balance and shall bear interest at the rate or rates specified in this Note, and any reference herein to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Interest under this Note shall

IL: Commercial Flat Rate Promissory Note

3

Borrower's Initials

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 10

be computed on the basis of a 360-day year consisting of twelve 30-day months. Borrower shall make all payments of principal and interest under this Note without relief from valuation and appraisement laws.

Lender's remedies in this Section are in addition to any available at common law and nothing in this Section shall impair any right which the Holder has under this Note, or at law or in equity, to accelerate the debt on the occurrence of any other Event of Default, whether or not relating to this Note. Lender's rights or remedies as provided in this Note shall be cumulative and concurrent and may be pursued singly, successively, or together against Borrower or any guarantor or third party (without first having to proceed against Borrower), at Lender's sole and absolute discretion. Borrower shall pay to Lender on Lender's demand the amount of all expenses incurred by Lender (a) in enforcing it's rights under this Note, or (b) as the result of a default by Borrower under this Note, including but not limited to the cost of collecting any amount owed hereunder, and any reasonable attorney's fees. The failure by Lender to exercise any of its options contained herein shall not constitute a waiver of the right to exercise such option in the event of any subsequent default.

6.      **Costs and Expenses.** To the extent permitted by law, Borrower agrees to pay any and all reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing any right or remedy under this Note, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions. Said collection fees shall be in the minimum amount of Fifteen Percent (15%) of the amount of the judgment as collected (or, if collected without judgment, a minimum fee of Fifteen Percent (15%) of the amount collected), which attorney's fee shall not be diminished by any other fees, costs or damages, but in no event shall the attorney's fees be less than $3,000.00.

7.      **Extensions.** The Borrower shall remain liable for the payment of this Note, including interest, notwithstanding any extension or extensions of time of payment or any indulgence of any kind or nature that the Lender may grant or permit any subsequent owner of the encumbered property, whether with or without notice to the Borrower and the Borrower hereby expressly waives such notice.

8.      **Confessed Judgment.** UPON ANY DEFAULT BY THE BORROWER AS SET FORTH IN THIS NOTE, AND TO THE EXTENT PERMITTED BY LAW, THE BORROWER HEREBY AUTHORIZES ANY ATTORNEY AT LAW TO APPEAR FOR THE BORROWER IN ANY COURT OF COMPETENT JURISDICTION AND WAIVE THE ISSUANCE AND SERVICE OF PROCESS AND CONFESS A JUDGMENT AGAINST THE BORROWER IN FAVOR OF THE LENDER FOR SUCH AMOUNTS AS MAY THEN APPEAR TO BE UNPAID HEREON TOGETHER WITH COSTS, EXPENSES AND ATTORNEY'S FEES IN THE MINIMUM AMOUNT OF FIFTEEN PERCENT (15%) OF THE AMOUNT DUE FOR COLLECTION (BUT IN NO EVENT SHALL SUCH FEES BE LESS THAN $3000.00), AND TO RELEASE ALL PROCEDURAL ERRORS AND WAIVE ALL RIGHTS OF APPEAL. IF THE CONFESSION OF JUDGMENT ABOVE PROVIDED FOR IS AUTHORIZED OR RECOGNIZED BY THE LAW OF THE JURISDICTION CONTROLLING BUT SUCH LAW REQUIRES SPECIAL FORMALITIES AND PROCEDURE, THEN THE SAID ATTORNEY IS EMPOWERED TO EXECUTE THE NECESSARY FORM AND COMPLY WITH SUCH SPECIAL PROCEDURES. THIS POWER OF CONFESSION OF JUDGMENT SHALL NOT BE EXHAUSTED BY ANY ONE OR MORE EXERCISES, AND THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS LENDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO LENDER UNDER THIS NOTE SHALL HAVE BEEN PAID IN FULL.

9.      **Forbearance.** The Lender shall not by any act or omission to act be deemed to waive any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender and then only to the extent specifically set forth therein. A waiver on one occasion shall not be construed as continuing or as a bar to or waiver of such right or remedy on any other occasion. All remedies conferred upon the Lender by this Note or any other instrument or agreement connected herewith or related hereto shall be cumulative and none is exclusive, and such remedies may be exercised concurrently or consecutively at the Lender's option.

10.     **Modification and Waiver.** Borrower and/or every person at any time liable for the payment of the debt evidenced hereby, waives the exercise of all exemption rights which it holds at law or in equity concerning to the debt evidenced by this Note whether under state constitution, homestead laws or otherwise. Borrower and any endorsers or guarantors hereof severally waive valuation and appraisement, presentment and demand for payment, notice of intent

IL Commercial Flat Rate Promissory Note                    4                    Borrower's Initials: 

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of 10

to accelerate maturity, notice of acceleration of maturity, protest or notice of protest and nonpayment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereof, and trial by jury in any litigation arising out of, relating to, or connected with this Note or any instrument given as security hereof.

From time to time, without affecting Borrower's obligation to pay any sums due under this Note and perform Borrower's covenants herein, without affecting the obligations of any endorser hereto or guarantor hereof, without giving notice to or obtaining the consent of Borrower or any endorser hereto or guarantor hereof, and without liability on the part of the Holder, Holder may, acting it its sole and absolute discretion, extend the Maturity Date or any other time for payment of interest hereon and/or principal hereof, reduce the payments hereunder, release anyone liable under this Note accept a renewal of this Note, modify the terms and time of payment of this Note, join in any extension or subordination or exercise any option or election hereunder, modify the rate of interest or period of amortization or principal due date of this Note, or exercise any option or election hereunder. No one or more such actions shall constitute a novation.

11. **Voluntary and Involuntary Prepayments.**

(a) A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

(i) Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a Notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to Section 11(f) of this Note. For purposes of this Note, a "**Business Day**" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business. For all purposes including the accrual of interest, but excluding the determination of the prepayment date under Section 11(f) of this Note, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month.

(ii) Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "**Partial Prepayment**") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to Section 11(f) of this Note, based on the amount being prepaid, shall be due and payable to Lender upon demand.

(iii) Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) and all other sums due Lender, and (C) the prepayment premium calculated pursuant to Section 11(f) of this Note, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

(iv) Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium. The amount of any such partial prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to Section 11(f) of this Note without Borrower having to pay out-of-pocket any additional amounts.

(b) Notwithstanding the provisions of Section 11(a), no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period (as defined in Section 11(f) of this Note), or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument.

(c) Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(d) Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in Section 11(f) represents a reasonable estimate of the damages Lender will incur because of a prepayment.

Borrower's Initials: 

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 6 of 10

(e)     Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

(f)     Any prepayment premium payable under this Section 11 shall be computed as follows:

(i)     If the prepayment is made between the date of the initial funding of the loan evidenced by this Note and the last day of JULY, 2015, the prepayment premium shall be the interest at the Note rate herein that would be earned on full loan amount for the balance of the Prepayment Premium Period.

(ii)     If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

12.     **Default Rate.** So long as (a) any monthly installment under this Note remains past due for thirty (30) days or more or (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the "Default Rate") equal to the lesser of seven (7) percentage points above the rate stated in the first paragraph of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the first paragraph of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments. Lender shall impose the Default Rate without any notice requirement to Borrower, guarantor or any third party pledging collateral as security for this Note.

13.     **Loan Charges/Maximum Rate Permitted By Law.** Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the maximum interest rate permitted to be charged under applicable law. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal balance of this Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness that constitutes interest, as well as all other charges made in connection with the indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note. If Lender reasonably determines that the interest rate (together with all other charges or payments that may be deemed interest) stipulated under this Note is or may be usurious or otherwise limited by law, the unpaid balance of this Note, with accrued interest at the highest rate permitted to be charged by stipulation in writing between Lender and Borrower, at the option of Lender, shall immediately become due and payable.

14.     **Waiver of Jury Trial.** THE BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS NOTE OR ANY DEED OF TRUST/MORTGAGE ARISING FROM THIS NOTE. THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY

IL: Commercial Flat Rate Promissory Note

6

Borrower's Initials 

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 7 of 10

OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER, AND THE BORROWER HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.

15.     **Notices.** Any Notice or other communication required, permitted or desirable under the terms of this Note shall be sufficiently given if sent to each party as follows:

Lender:     The persons listed on Exhibit A to this Note
            C/O EquityBuild Finance, LLC
            5068 West Plano Pkwy, #300
            Plano, Texas 75093
            Fax: 239-244-8666
            Email: shaun.d.cohen@gmail.com

Borrower:   Michigan Shore Apartments, LLC
            2364 Jackson St. #150
            Stoughton, WI 53589
            Phone: 608-335-0590
            Email: mfjunck@earthlink.net

Any notice, demand, consent, approval, request or other communication or document to be given hereunder to a party hereto shall be (a) in writing, and (d) deemed to have been given (i) on the 3rd business day after being sent as certified or registered mail in the United States mails, postage prepaid, return receipt requested, or (ii) on the next business day after being deposited (with instructions to deliver it on that business day) with a reputable overnight courier service, or (iii) (if the party's receipt thereof is acknowledged in writing) on being sent by telefax or another means of immediate electronic communication, in each case to the party's address set forth above or any other address in the United States of America which it designates from time-to-time by notice to each other party hereto, or (iv) (if the party's receipt thereof is acknowledged in writing) on being given by hand or other actual delivery to the party.

16.     **Entire Agreement/Severability.** The terms and conditions of this Note together with the terms and conditions of the Mortgages which are incorporated herein by reference as if set forth fully herein contain the entire understanding between the Borrower and Lender with respect the indebtedness evidenced hereby. Such understanding may not be modified, amended or terminated except in a written document duly executed by Borrower and Lender. In the event that any one or more of the provisions set forth in this Note or any accompanying Arbitration Agreement is determined by law to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired hereby, and each provision in this Note shall be construed liberally in favor of Lender to the fullest extent of the law.

17.     **Joint and Several Liability/Credit Reporting.** The liability of the undersigned, as well as any endorsers and/or guarantor(s), shall be both joint and several. This Note shall be binding upon the heirs, successors and assigns of Borrower and Lender. Information concerning this Note may be reported to credit reporting agencies and will be made available when requested by proper legal process.

18.     **Governing Law.** This Note is delivered and made in, and shall be construed pursuant to the laws of the State of Illinois Unless applicable law provides otherwise, Borrower consents to the jurisdiction and venue of any court of competent jurisdiction located in Cook County, Illinois.

19.     **Construction.** As used herein, Person means a natural person, trustee, corporation, partnership, limited liability company or other legal entity, and all references made (a) in the neuter, masculine or feminine gender shall be deemed made in all genders, (b) in the singular or plural number shall also be deemed made in the plural or singular number, and (c) to any Section, subsection, paragraph or subparagraph shall, unless therein expressly indicated to the contrary, be deemed made to that part of the Note. The headings of those parts are provided only for convenience of reference, and shall not be considered in construing their contents. Each document referred to herein

IL Commercial Flat Rate Promissory Note                                  7                          Borrower's Initials: 

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 8 of 10

as being attached hereto as an exhibit or otherwise designated herein as an exhibit hereto shall be a part hereof.

20.     **Time of Essence.** Time shall be of the essence of this Note, but (other than as to payment of principal and/or interest) if the last day for a Person to exercise a right or perform a duty hereunder is a Saturday, Sunday or statutory holiday, it shall have until the next day other than such a day to do so.

21.     **Assignment.** Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion. Borrower agrees that Lender is entitled to assign some or all of its rights and remedies described in this Note without notice to or the prior consent of Borrower.

22.     **Commercial Purpose.** It is expressly stipulated, warranted and agreed that the loan evidenced by this Note and any Loan Documents is a "commercial loan" under applicable State or Federal law, and all proceeds shall be used for business, commercial or investment purposes and expressly not for personal, family or household purposes.

23.     **Extension.** Intentionally omitted.

24.     **Arbitration.** If arbitration has been agreed to, Borrower(s) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated herein and made a part hereof by reference.

25.     **Contingency Funds.** Intentionally omitted.

26.     **Demand Feature.** Intentionally omitted.

27.     **Consent To Relief From Automatic Stay.** Borrower hereby agrees that if any of them shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (ii) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended; (iii) file or be the subject of any petition seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) seek, consent to or acquiesce in the appointment of any trustee, receiver, conservator or liquidator; (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against Borrower for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or from any other stay or suspension of remedies imposed in any other manner with respect to the exercise of the rights and remedies otherwise available to Lender under the Loan Documents.

28.     **Financial Information.** Borrower will at all times keep proper books of record and account in which full, true and correct entries shall be made in accordance with generally accepted accounting principles and will deliver to Lender, within ninety (90) days after the end of each fiscal year of Borrower, a copy of the annual financial statements of Borrower relating to such fiscal year, such statement to include (i) the balance sheet of Borrower as at the end of such fiscal year (ii) the related income statement, statement of retained earnings and statement of cash flow of Borrower for such fiscal year, prepared by such certified public accountants as may be reasonably satisfactory to Lender. Borrower also agrees to deliver to Lender within fifteen (15) days after filing same, a copy of Borrower's income tax returns and also, from time to time, such other financial information with respect to Borrower as Lender may request.

---

THE PERSONS SIGNING BELOW ACKNOWLEDGE THAT THEY HAVE BEEN GIVEN AMPLE OPPORTUNITY TO READ THIS AGREEMENT AND SEEK INDEPENDENT LEGAL COUNSEL AND ACKNOWLEDGE THEY HAVE COMPLETELY READ AND UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS OF THIS NOTE AND THE ACCOMPANYING ARBITRATION AGREEMENT (IF APPLICABLE), AND FURTHER ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS NOTE AND THE ARBITRATION AGREEMENT.

DATED: 6-29-15

Borrower's Initials:

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 9 of 10

BORROWER(S): MICHIGAN SHORE APARTMENTS, LLC

_____(SEAL)
MARLEN JUNCK, Member

STATE OF __Illinois__ , COUNTY OF __Cook__ : ss:

On this __29th__ day of __June__ , 20 15 , before me, a notary public, personally appeared
__Mark Brosius, as Attorney in fact for Marlen Junck__ , to
me known (or proved to me on the basis of satisfactory evidence) to be the person(s) who executed the foregoing
instrument and acknowledged the same for the purpose therein contained and in my presence signed and sealed the
same.

_____
NOTARY PUBLIC

My Comm. Expires:_____

OFFICIAL SEAL
JAYNE M NORRIS.
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/17/18

Borrower's Initials: _____

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
7/19/2018 4:32 PM
2018CH09098

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| iPlanGroup Agent for Custodian FBO James B. Ploeger IRA | $55,000 | 2.82% |
| N North End, LLC | $50,000 | 2.56% |
| IRA SERVICES TRUST COMPANY CFBO:Peter Flanagan IRA 176308 | $50,000 | 2.56% |
| Asians Investing In Real Estate, LLC | $50,000 | 2.56% |
| Edge Investments, LLC | $27,000 | 1.38% |
| Arthur L and Dinah F Bertrand | $150,000 | 7.69% |
| Eleven St. Felix Street Realty Corp | $50,000 | 2.56% |
| iPlanGroup Agent for Custodian FBO Michael Borgia IRA | $325,000 | 16.67% |
| Crime Stoppers, Inc | $100,000 | 5.13% |
| The Total Return Income Fund, LLC | $435,350 | 22.33% |
| Peter Nagy | $50,000 | 2.56% |
| Larry Johannaber Trust, Established July 15, 1986, and the Judith A. McCloskey Trust, Established July 15, 1986 | $500,000 | 25.64% |
| Peter P. Nuspl | $82,650 | 4.24% |
| Jacqueline C. Rowe | $25,000 | 1.28% |

Borrower's Initials

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 8
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

## Illinois Anti-Predatory Lending Database Program

### Certificate of Exemption

3 of 3
PTS 132674

**Report Mortgage Fraud**
**800-532-8785**



Doc#: 1519519129 Fee: $52.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 07/14/2015 02:52 PM Pg: 1 of 8

---

The property identified as:     PIN: 21-30-307-015-0000

**Address:**
**Street:**     7616~7624 S. Phillips Ave
**Street line 2:**
**City:** Chicago      **State:** IL      **ZIP Code:** 60649

**Lender:** The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC

**Borrower:** Michigan Shore Apartments, LLC

**Loan / Mortgage Amount:** $1,950,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** 1CD2BCEF-2D97-48EA-BDB2-74111EF1C744      **Execution date:** 6/29/2015



CCRD REVIEWER

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

TS 1328674

Mail To:
Equity Build Finance
5068 W. Plano Pkwy #300
Plano, TX 75093

_____[The Above Space For Recorder's Use Only]_____

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-L-003465
2 of 8

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on June 29, 2015. The mortgagor is Michigan Shore Apartments, LLC ("Borrower").

This Security Instrument is given to The Persons Listed on <u>Exhibit A</u> to the Mortgage C/O EquityBuild Finance, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of One Million Nine Hundred Fifty Thousand and 00/100 Dollars (U.S. $1,950,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument, which provides for a final payment of the full debt, if not paid earlier, due and payable July 1st, 2017. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Notes, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Notes. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 21-30-307-015-0000

which has the address of 7616-7624 S Phillips Ave. Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03565
PAGE ... ...

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Notes and any prepayment and late charges due under the Notes.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 311 of 514

4. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. **Successor and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Notes: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Notes without the Borrower's consent.

6. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Notes conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Notes which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Notes are declared to be severable.

8. **Borrower's Copy.** Borrower shall be given one conformed copy of the Notes and of this Security Instrument.

9. **Transfer of the Property or a beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018CH09098

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

10. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. **Assignment of Rents and Leases.** As additional security for the payment of the Indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases. In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser. Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail. If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (SEAL)
Marlen Junck, Member, BORROWER

_____[Space Below This Line For Acknowledgement]_____

STATE OF ~~FLORIDA~~ Illinois, _____Cook_____ County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared *Mark Brosius, as* to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

*Attorney in fact for Marlen Juack*

WITNESS my hand and official seal in the county and state aforesaid this 29th day of June , 2015 .

My Commission expires:

{Seal}

Notary Public

OFFICIAL SEAL
JAYNE M NORRIS.
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/17/16

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 6 of 8

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

Commitment Number:  1328674

LOTS 5, 6, 7 AND 8 AND THE NORTH 5 FEET OF LOT 9 IN BLOCK 5 IN SOUTH SHORE PARK BEING A SUBDIVISION OF THE WEST 1/2 OF THE SOUTH WEST 1/4 OF SECTION 30 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS

21-30-307-015-0000
7616-64 S. PHILLIPS AVE CHICAGO IL

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 7 of 8

PRIMARY TITLE SERVICES, LLC
8833 GROSS POINT ROAD #205 - SKOKIE, IL 60077-1859
(P) 847-677-8833 (F) 847-673-8833
A Policy Issuing Agent for
FIRST AMERICAN TITLE INSURANCE COMPANY

Commitment
Exhibit A

Template File EBUILD.PFT

**Exhibit A**

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| IPlanGroup Agent for Custodian FBO James B. Ploeger IRA | $55,000 | 2.82% |
| N North End, LLC | $50,000 | 2.56% |
| IRA SERVICES TRUST COMPANY CFBO:Peter Flanagan IRA 176308 | $50,000 | 2.56% |
| Asians Investing In Real Estate, LLC | $50,000 | 2.56% |
| Edge Investments, LLC | $27,000 | 1.38% |
| Arthur L and Dinah F Bertrand | $150,000 | 7.69% |
| Eleven St. Felix Street Realty Corp | $50,000 | 2.56% |
| IPlanGroup Agent for Custodian FBO Michael Borgia IRA | $325,000 | 16.67% |
| Grime Stoppers, Inc | $100,000 | 5.13% |
| The Total Return Income Fund, LLC | $435,350 | 22.33% |
| Paulin Nagy | $50,000 | 2.56% |
| Leroy Johannaber Trust, Established July 15, 1986, and the Judith A. McCloskey Trust, Established July 15, 1986 | $500,000 | 25.64% |
| Peter P. Nuspl | $82,650 | 4.24% |
| Jacqueline C. Rowe | $25,000 | 1.28% |

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 1 of 4
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# CONSTRUCTION LOAN & ESCROW AGREEMENT

This Agreement, made as of this 29th day of JUNE, 2015, by and between **MICHIGAN SHORE APARTMENTS, LLC ("Borrower") and 7616-24 S PHILLIPS AVE INVESTORS C/O EQUITYBUILD FINANCE, LLC** (collectively "Lender").

Borrower, having applied to Lender for a loan of **ONE MILLION NINE HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($1,950,000.00)** (the "Loan"), to be used as herein agreed, has executed and delivered to the Lender its Promissory Note of even date herewith in that amount, with interest, (the "Promissory Note"), and, to secure the Promissory Note, has executed and delivered a Mortgage of even date herewith (the "Mortgage") securing the indebtedness evidenced by the Promissory Note to the property described in the Mortgage (the "Property").

Lender agrees to make advances with respect to the Loan to Borrower according to the terms of this Agreement.

IT IS MUTUALLY AGREED:

1.      Lender agrees to make the Loan and Borrower agrees to accept the Loan in accordance with the terms and conditions set forth herein and in the Promissory Note and Mortgage.

2.      The Property conveyed by the Mortgage consists of the land located commonly known as **7616-24 S Phillips Ave, Chicago, IL 60849**, and the improvements erected and to be erected thereon. Borrower agrees to make improvements on the Property in strict accordance with plans and specifications heretofore furnished to and approved by Lender, a list of which is annexed hereto as EXHIBIT A, with only such material changes as Lender or Lender's Inspector shall approve in writing; to proceed diligently with such construction and to cause the improvements to be completed not later than **ONE HUNDRED TWENTY (120)** days from the date hereof, including grading, seeding and other landscaping, streets, sidewalks, curbs, gutters and driveways.

3.      Lender will advance a total of **ONE MILLION FIVE HUNDRED FOURTEEN THOUSAND SIX HUNDRED FIFTY and 00/100 DOLLARS ($1,514,650.00)** of the total available loan amount at the time of settlement, the remaining funds to be held by Lender and/or its authorized agent in a non-interest bearing account as a Construction Loan Holdback Escrow (hereinafter "Construction Escrow" or "Escrowed Funds"). Thereafter, lender will make separate advances from the Construction Escrow towards the cost of items enumerated on the list which is annexed hereto as EXHIBIT A. The total amount of Loan proceeds available for the items enumerated on EXHIBIT A is **FOUR HUNDRED THIRTY-FIVE THOUSAND THIRTY-FIVE HUNDRED and 00/100 DOLLARS ($435,350.00)**.

4.      Excepting an amount of up to one third, each of the advances enumerated in EXHIBIT A will be disbursed by the lender ONLY UPON COMPLETION of the specified phase of work PROVIDED, HOWEVER, that each advance must be approved in writing by Lender's Inspector and also approved by Lender in Lender's sole and absolute discretion: (a) Lender's Inspector certifies that the improvements have been completed and are in conformity with applicable codes and ordinances, (b) Borrower furnishes to Lender a final location survey with respect to the improvements, if applicable (c) Lender obtains either a temporary or permanent Certificate of Use and Occupancy, if such is required by the jurisdiction wherein the improvements are located as a condition of use and occupancy, and (d) Borrower furnishes Lender with releases of liens from the contractor, all subcontractors and all major suppliers of materials to the improvements. Application for an advance and the approval thereof by Lender's Inspector shall be made in accordance with A.I.A. Form #702 and #703; and, if requested by Lender, shall be accompanied by supporting bills and requisitions from subcontractors, materialmen and suppliers evidencing the obligations for which advances are sought. The proceeds of each advance shall be used by Borrower to pay the obligations for which the advance is sought.

1

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 4

5.      Notwithstanding anything else to the contrary contained herein, the Lender is under no obligation to honor an request for an advance unless such advance is made in writing to Lender at least thirty (30) days prior to the maturity date of the Promissory Note.

6.      Lender shall have the right to approve Borrower's contractor, the form of the contract, and the contract price. The contract shall not be amended without Lender's prior consent.

7.      The making of each advance shall be subject to the following conditions. A waiver of any condition to any advance shall not constitute a waiver as to any subsequent advance.

        a.      There shall be no breach by Borrower of any of its obligations under this Agreement or under the Mortgage or the Promissory Note or any other Loan Documents.

        b.      There shall remain sufficient time for completion of the improvements within the time required by this Agreement.

        c.      Other than the initial advance at settlement, proceeds will only be advanced for after work has commenced and shall me made for work done preceding the date of the request.

        d.      Borrower, if requested by Lender or Lender's inspector, shall furnish data in a form satisfactory to Lender or Lender's inspector with respect to expenditures of prior advances, and shall furnish lien waivers from the contractor, all subcontractors and major suppliers for work done and materials supplied to the date of the request.

        e.      Borrower shall supply Lender with copies of all subcontracts executed since the last advance.

        f.      A paid title insurance binder or Mortgagee's Title Policy (at Lender's option) issued by a title insurance company acceptable to Lender ("Title Insurer") in the amount of the Note (which may include a rider or endorsement limiting the binder or policy to the aggregate amounts actually advanced hereunder) under which the Title Insurer agrees that upon compliance with and satisfaction of the requirements contained in the binder or policy and upon payment of the applicable premium therefore, the Title Insurer will issue its mortgagee's policy of title insurance in the amount of the Note insuring the lien on the Property. The binder or policy shall show the lien on the Property in favor of Lender to be (i) a valid, first and prior lien free and clear of all defects and encumbrances except such as Lender shall approve, (ii) shall contain no survey exceptions not theretofore approved by Lender and (iii) the status of title to the Property shown therein shall otherwise be satisfactory to Lender.

        g.      The improvements shall be constructed in a good and workmanlike manner and comply with all laws and ordinances relating thereto. All necessary permits and approvals required in the future shall be obtainable and there shall be no actions of governmental authorities (whether actual or threatened) which could delay completion and occupancy of the improvements. Borrower shall perform and observe all public works agreements to which it is a party.

        h.      The Borrower shall provide satisfactory proof that any and all taxes that come due on payable on the Property have been paid.

8.      Borrower shall supply to Lender performance bonds and labor and material bonds of the general contractor for the improvements, naming Lender as Obligee, in amounts and by companies acceptable to Lender.

9.      The following insurance shall be maintained on and for the improvements at all times: workmen's compensation, public liability, and builder's risk (with vandalism and malicious mischief coverage). Insurance shall be issued in amounts, with such endorsements, and by such companies as Lender may require.

2

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 4

10. Lender may pay over all or any part of any loan advance directly to the contractor, subcontractors, laborers, and materialmen ultimately due the same.

11. If the Borrower, prior to the completion of the Improvement, shall abandon the same or cease work thereon for a period of more than fourteen (14) days, or fail to complete the same strictly in accordance with the plans and specifications (except as for changes approved as herein provided), or changes the plans and specifications without first securing written approval of the Lender, or fail to comply with the terms, conditions and covenants of this Agreement, the Promissory Note or the Mortgage, then any such failure shall be a default hereunder, at the option of the Lender, and the Lender may terminate this Agreement, or the Lender at its option, at any time thereafter, may enter into possession of the premises and perform any and all work and labor necessary to complete the improvements, either in accordance with the plans and specifications or otherwise, in the discretion of the Lender. All sums so expended by the Lender shall be deemed paid to Borrower and secured by the Mortgage. The Borrower hereby constitutes and appoints the Lender its true and lawful attorney-in-fact, with full power of substitution in the premises, to complete the improvements in the name of the Borrower, and hereby empowers said attorney: (a) to use any funds of the Borrower, including any balance which may be held in escrow and any funds which may remain unadvanced under the Promissory Note, for the purpose of completing the improvements; (b) to employ such contractors, subcontractors, and agents, architects and inspectors as shall be required for such purposes; (c) to pay, settle or compromise all existing bills and claims which may be liens against the improvements, or as may be necessary or desirable for the completion of the improvements, or for clearing title; (d) to apply any funds of the Borrower to the unpaid principal balance of the Loan, or unpaid interest thereon, or to other sums due in connection therewith; and (e) to execute all applications and certificates in the name of the Borrower which may be required by any of the contract documents, and to do any and every act which the Borrower might do in its own behalf. This power of attorney shall be deemed to be a power coupled with an interest and cannot be revoked. The attorney shall also have the power, but not the duty, to prosecute and defend all actions or proceedings in connection with the construction of the improvements and to take such action and require such performance as it deems necessary to complete the same.

12. The Borrower shall pay all charges for procuring and making the Loan, examination of the title, surveys and drawing of papers, stamp and transfer taxes, and recording fees.

13. The Borrower agrees to execute and to deliver to the Lender, at Lender's request, security agreements, financing statements, chattel mortgages or other similar instruments covering all property of any kind whatsoever purchased with the loan proceeds and concerning which there may be any doubt as to their being subject to the Mortgage.

14. Notwithstanding anything to the contrary herein, Borrower may borrow less than the entire amount of the loan provided that the Borrower does not borrow any other funds, the purpose or effect of which is to reduce the amount to be borrowed hereunder.

15. Borrower understands and agrees that any Construction Escrow will be held in an account chosen by the Lender in the Lender's absolute discretion; that these funds will not accrue any interest on behalf of the Borrower; that the Lender may intermingle these funds with any other accounts or monies without violating any provisions herein; and that the refusal to release any amounts in the Construction Escrow shall be in the Lender's sole and absolute discretion. Borrower further understands that there will be an inspection fee for each inspection done by the Lender and/or the Lenders Inspector and that the Borrower is fully responsible for the payment of said inspection fees whether or not sufficient funds were collected at settlement for said fees. Additionally, in the event of any default under this Agreement, Lender may be required to take measures to inspect or secure the Property and/or it's contents and to further protect the Property from damage or waste. Borrower shall be fully responsible for any costs related to such inspections or securitization of the Property.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

3

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 4

BORROWER:

_____ (SEAL)

MARLEN JUNCK, MEMBER

LENDER:

_____ (SEAL)

4

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

PLAINTIFF'S EXHIBIT

*FILED DATE: 7/19/2018 4:32 PM  2018CH09098*

## PERSONAL GUARANTY

WHEREAS, **EQUITYBUILD FINANCE, LLC** (hereinafter sometimes referred to as "Lender"), has loaned the sum of **$1,950,000.00** to **MICHIGAN SHORE APARTMENTS, LLC** (hereinafter sometimes referred to as "Debtor"); and

WHEREAS, on the 29ᵗʰ day of JUNE, 2015, Debtor executed and delivered to Lender its principal Demand Note in the above amount, payable, together with interest as shown in said note, a copy of which note is attached hereto and made a part hereof as Exhibit "A"; and

WHEREAS, the loan of the Lender to Debtor is conditioned upon said indebtedness being personally guaranteed as to the payment thereof by **MARLEN JUNCK** (hereinafter referred to as "Guarantor");

1.     NOW, THEREFORE, the Guarantor guarantees that Debtor will promptly pay the full amount of principal and interest of said note as and when the same shall in any manner be or become due, either according to the terms and conditions provided in said note or upon acceleration of the payment thereof by reason of a default, as a primary not a secondary liability of Guarantor.

2.     Without limiting the generality of the foregoing, the Guarantor agrees that he will pay the full amount of principal and interest of said note now or hereafter due as, and when the same shall in any manner be or become due, either according to the terms and conditions provided in said note or upon acceleration of the payment thereof by reason of a default, as primary and not a secondary liability of Guarantor.

3.     The Guarantor further agrees that he will not pledge, hypothecate, mortgage, sell or give any of his assets.

4.     The Guarantor hereby waives demand, notice of dishonor, presentment for payment, protest and notice of protest and of non-performance on all of said indebtedness; and if said indebtedness is renewed, or if the time for payment thereof be extended (to which Guarantor consents) either with or without notice to Guarantor, Guarantor unconditionally guarantee the payment of such indebtedness at the time fixed for the payment thereof in and by any such renewal or extension. Guarantor further waives all rights, by statute or otherwise, to require the holder of the note to institute suit against the original maker of said note; also to exercise diligence in enforcing this or any other instrument.

To the extent permitted by law, Guarantor waives all defenses legally available to Guarantor, Guarantor being bound to the payment of said indebtedness of the original maker of said note. The holder of the note may take any new or additional or substituted security from time to time without in any way impairing the obligation of the undersigned; and the impairment of the security, which said holder may from time to time hold as security for said loan, shall in no way operate to discharge the undersigned in whole or in part, it being specifically agreed that the holder

1

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 3

is not required to exercise diligence to enforce its rights against the original maker of said note. The holder is hereby authorized at any time, in its sole discretion and without notice, to take, change, release or in any way deal with the security herein; but the holder of the note shall be under no obligation to collect or to protect any of such security or said indebtedness, and its neglect or failure to collect or protect the same is excused. Acceptance of the Guarantee is waived.

5.     Forbearance on the part of the holder of the note to take steps to enforce payment of said indebtedness arising from Guarantor default in any respect whatever, or the giving of further time to the original maker of said note, shall in no way release the undersigned, but the undersigned shall remain liable hereunder for the prompt payment of said indebtedness.

6.     This Guarantee is for the use and benefit of the holder of said note, who in the first instance will be the Lender. This Guarantee shall also be for the use and benefit of any subsequent owner of said note, and each owner of said note may assign this Guarantee to his successor owner of said note.

7.     All reasonable costs and expenses, including attorney's fees, incurred by the holder of said note to enforce this Guarantee, shall be paid by the undersigned.

8.     The liability of the Guarantor shall continue until payment is made of every obligation of the Debtor now or hereafter incurred in connection with said loan, and until payment is made of any loss or damage incurred by the Lender with respect to any matter covered by this Guarantee or any of the loan documents whatever.

9.     Guarantor consents that, without affecting the Guarantor's liability, the Lender may, without notice to or consent of Guarantor on such terms as Lender may deem advisable, extend in whole or in part, by renewal or otherwise, the time of payment of the debt now or hereafter owing by the Debtor to the Lender or held by the Lender as security for any obligation herein described, or may do or refrain from doing any act whatever. Guarantor also consents that Lender may release, surrender, exchange, modify, impair or extend the periods of duration or the time for performance or payment of any collateral securing the obligations of Debtor to Lender, and may also settle or compromise any claim of Lender against Debtor or against any other person or corporation whose obligation is held by Lender as collateral security for any obligation of Debtor or Lender. Guarantor hereby ratifies and affirms any such actions, and all such actions shall be binding on Guarantor, and Guarantor hereby waives all defenses, counterclaims or offsets which Guarantor may have.

10.     Guarantor also waives notice of failure of any person to pay to Lender any debt held by Lender as collateral security for the obligations of Debtor, and all defenses, offsets and counterclaims which Guarantor may at any time have to any claim of Lender against Debtor.

11.     Guarantor represents that at the time of the execution and delivery of this Guaranty nothing exists to impair the effectiveness of this Guarantee.

12.     Lender may, at its option, proceed in the first instance against the Guarantor to collect the obligations covered by this Guarantee without first proceeding against any other person, firm or corporation, and without resorting to any property held by Lender as collateral security.

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

13.    In the event this instrument is signed by only one person, then the Guarantor shall be considered to be in the singular.  In the case of plural Guarantors, all undertakings, covenants, promises and waivers herein are joint and several.  All pronouns shall include masculine, feminine and/or neuter gender, single or plural number, as the context of this instrument may require.

14.    Words of "Guarantee" contained herein in no way diminish or impair the absolute liability hereby created.

Executed by the undersigned this _29_ day of _June_, 20_15_.

_Marlen Junck By _____ _____ in fact_

**MARLEN JUNCK, MEMBER**

_____

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 3

STATE OF _Illinois_ )
                                    ) SS
COUNTY OF _Cook_    )

I, _Jayne M. Norris_ _____ a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that _Mark Brasius, as Attorney_* personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed, sealed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth. * _in fact for Marlen Junck_

Given under my hand and notarial seal this _29TH_ day of _June_ _____, 20_15_.

```
OFFICIAL SEAL
JAYNE M NORRIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/17/18
```

_____
Notary Public

My Commission Expires:

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
7/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 7
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN



**A. Settlement Statement (HUD-1)**

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ RHS | 3. ☒ Conv. Unins. | 6. File Number: 1326874 | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| MICHIGAN SHORE APARTMENTS LLC 7916-24 S. PHILLIPS AVE CHICAGO, IL 60649 | EQUITYBUILD, INC. | EQUITYBUILD FINANCE LLC 5069 W PLANO PARKWAY #300 PLANO, TX 75093 |

| G. Property Location | H. Settlement Agent: PRIMARY TITLE SERVICES 8833 GROSS POINT ROAD #205 • SKOKIE, IL 60077-1859 (P) 847-677-8633 (F) 847-673-8633 | Ph. | I. Settlement Date: |
|---|---|---|---|
| 7916-24 S PHILLIPS AVE CHICAGO, IL 60649 Cook County Illinois MICHIGAN SHORE APARTMENTS LLC | Place of Settlement: 8833 DEMPSTER STE 205, SKOKIE, IL 60077 847-877-8633(P)847-673-8633(F) | | June 29, 2015 |

| J. Summary of Borrower's transaction | | K. Summary of Seller's transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower: | | 400. Gross Amount Due to Seller: | |
| 101. Contract sales price | 1,514,850.00 | 401. Contract sales price | 1,514,850.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement Charges to Borrower (Line 1400) | 591,163.03 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due from Borrower | 2,106,813.03 | 420. Gross Amount Due to Seller | 1,514,850.00 |
| 200. Amounts Paid by or in Behalf of Borrower: | | 500. Reductions In Amount Due Seller: | |
| 201. Deposit of earnest money | 97,500.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 1,950,000.00 | 502. Settlement charges to Seller (Line 1400) | 19,611.80 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff First Mortgage | |
| 205. | | 505. Payoff Second Mortgage | |
| 206. | | 506. Deposit retained by seller | 97,500.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller | | Adjustments for items unpaid by Seller | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. TAX PRORATIONS | 10,592.01 | 513. TAX PRORATIONS | 10,592.01 |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid by/for Borrower | 2,058,092.01 | 520. Total Reduction Amount Due Seller | 127,503.81 |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at settlement to/from Seller | |
| 301. Gross amount due from Borrower (line 120) | 2,106,813.03 | 601. Gross amount due to Seller (line 420) | 1,514,850.00 |
| 302. Less amount paid by/for Borrower (line 220) | (2,058,092.01) | 602. Less reductions due Seller (line 520) | 127,503.81 |
| 303. Cash ☒ From ☐ To Borrower | 47,721.02 | 603. Cash ☒ To ☐ From Seller | 1,388,746.19 |

* Paid outside of closing by borrower(B), seller(S), lender(L) or third party(T)

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this statement is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

HUD-1
(1326874.pfd/1326874/18)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 7

## L. Settlement Charges

| | | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|
| 700. Total Real Estate Broker Fees | | | | | |
| Division of commission (line 700) as follows: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission paid at settlement | | | | | |
| 704. | | | | | |
| 800. Items Payable in Connection with Loan | | | | | |
| 801. Our origination charge | | $ | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | $ | (from GFE #2) | | |
| 803. Your adjusted origination charges | | | (from GFE #A) | 0.00 | |
| 804. Appraisal fee | to | | (from GFE #3) | | |
| 805. Credit Report | to | | (from GFE #3) | | |
| 806. Tax service | to | | (from GFE #3) | | |
| 807. Flood certification | to | | (from GFE #3) | | |
| 808. ORIGINATION FEE | to EQUITYBUILD FINANCE LLC | | (from GFE #3) | 37,500.00 | |
| 809. WIRE FEE | to EQUITYBUILD FINANCE LLC | | (from GFE #3) | 50.00 | |
| 810. CONSTRUCTION INSP | to EQUITYBUILD FINANCE LLC | | (from GFE #3) | 1,500.00 | |
| 811. DOCUMENT PREPARA | to EQUITYBUILD FINANCE LLC | | (from GFE #3) | 700.00 | |
| 812. TITLE REVIEW | to EQUITYBUILD FINANCE LLC | | (from GFE # 3 ) | 150.00 | |
| 813. CONSTRUCTION ESCI | to FIRST AMERICAN TITLE | | (from GFE # 3 ) | 436,350.00 | |
| 814. CONSTRUCTION ESCI | to FIRST AMERICAN TITLE | | (from GFE # 3 ) | 1,500.00 | |
| 900. Items Required by Lender to Be Paid in Advance | | | | | |
| 901. Daily interest charges from 05/29/18 to 07/01/18 | | 32 @ $/day | (from GFE #10) | 29,000.00 | |
| 902. Mortgage insurance premium for | months to | | (from GFE #3) | | |
| 903. Homeowner's insurance for 1.0 years to ROSENTHAL BROS | | | (from GFE #11) | 11,421.00 | |
| 904. | | | (from GFE #11) | | |
| 905. | | | (from GFE #11) | | |
| 1000. Reserves Deposited with Lender | | | | | |
| 1001. Init'l deposit for your escrow account | | | (from GFE #9) | | |
| 1002. Homeowner's insurance | months @ $ | per month | $ | | |
| 1003. Mortgage insurance | months @ $ | per month | $ | | |
| 1004. Property taxes | | | $ | | |
| 1005. | | | $ | | |
| 1006. | months @ $ | per month | $ | | |
| 1007. | months @ $ | per month | $ | | |
| 1008. | | | $ | | |
| 1009. | | | $ | | |
| 1100. Title Charges | | | | | |
| 1101. Title services and lender's title insurance | | | (from GFE #4) | 4,143.00 | 213.00 |
| 1102. Settlement or closing fee | to PRIMARY TITLE SERVICES, LLC | | $ 2,075.00 | | |
| 1103. Owner's title insurance to FIRST AMERICAN TITLE INSURANCE COMPANY | | | (from GFE #5) | | 3,800.00 |
| 1104. Lender's title insurance to FIRST AMERICAN TITLE INSURANCE COMPANY | | | $ 1,000.00 | | |
| 1105. Lender's title policy limit | | | $ 1,960,000.00 | | |
| 1106. Owner's title policy limit | | | $ 1,614,650.00 | | |
| 1107. Agent's portion of the total title insurance premium | to PRIMARY TITLE SERVICES, LLC | | $ 4,030.03 | | |
| 1108. Underwriter's portion of the total title insurance premium to FIRST AMERICAN TITLE INSURANCE COMPANY | | | 770.03 | | |
| 1109. OBTAIN WATER | to PRIMARY TITLE SERVICES, LLC | | $ | | 375.00 |
| 1110. | | | $ | | |
| 1111. | | | $ | | |
| 1112. | | | $ | | |
| 1113. | | | $ | | |
| 1200. Government Recording and Transfer Charges | | | | | |
| 1201. Government recording charges | to PRIMARY TITLE SERVICES | | (from GFE #7) | 155.00 | |
| 1202. Deed $ 52.00 | Mortgage $ 86.00 | Releases $ | Other $ 66.00 | | |
| 1203. Transfer taxes | PRIMARY TITLE SERVICES | | (from GFE #8) | | |
| 1204. City/County tax/stamps | Deed $ 787.50 | Mortgage $ | | | 787.50 |
| 1205. State tax/stamps | Deed $ 1,515.00 | Mortgage $ | | | 1,515.00 |
| 1206. Municipal Transfer Tax | to City of Chicago | | | 11,363.00 | 4,545.00 |
| 1207. | | | | | |
| 1300. Additional Settlement Charges | | | | | |
| 1301. Required services that you can shop for | | | (from GFE #6) | | |
| 1302. BUYER ATTORNEY FEES | to BROSHIESQ LAW | | $ | 1,000.00 | |
| 1303. SELLER ATTORNEY FEES | to ROCK, FUSCO & CONNELLY, LTD | | $ | | 1,000.00 |
| 1304. PAY WATER BILL | to CITY OF CHICAGO | | $ | | 8,078.33 |
| 1305. WATER HOLDBACK | to PRIMARY TITLE SERVICES | | $ | | 1,500.00 |
| 1306. BUILDING REGISTRATION FEE | to ROCK, FUSCO & CONNELLY | | $ | | 130.00 |
| 1400. Total Settlement Charges (entered on lines 103, Section J and 502, Section K) | | | | 551,103.03 | 15,811.80 |

* Paid outside of closing by borrower (B), seller (S), broker (B.L. or third party (T))

HUD-1
(1326474.pfd/1326474/15)

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 7

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Charges That Cannot Increase | HUD-1 Line Number | | |
| | | | |
| Charges That In Total Cannot Increase More than 10% | | Good Faith Estimate | HUD-1 |
| Government recording charges | #1201 | | 186.00 |
| ORIGINATION FEE | # 008 | | 97,500.00 |
| WIRE FEE | # 809 | | 50.00 |
| CONSTRUCTION INSPECTION FEE | # 810 | | 1,500.00 |
| DOCUMENT PREPARATION | # 811 | | 700.00 |
| TITLE REVIEW | # 812 | | 150.00 |
| CONSTRUCTION ESCROW | # 813 | | 435,350.00 |
| CONSTRUCTION ESCROW FEE | # 814 | | 1,800.00 |
| Title services and lender's title insurance | #1101 | 0.00 | 4,143.00 |
| | Total | | 541,379.00 |
| | Increase between GFE and HUD-1 Charges | $   541,379.00 or | 0.00% |
| | | | |
| Charges That Can Change | | Good Faith Estimate | HUD-1 |
| Daily interest charges | # 901 | $         /day | 26,000.00 |
| Homeowner's insurance | # 903 | | 11,421.03 |

### Loan Terms

| | |
|---|---|
| Your initial loan amount is | $ 1,860,000.00 |
| Your loan term is | 30.00 years |
| Your initial interest rate is | _____ % |
| Your initial monthly amount owed for principal, interest and any mortgage insurance is | N/A<br>☐ Principal<br>☐ Interest<br>☐ Mortgage Insurance |
| Can your interest rate rise? | ☒ No  ☐ Yes, it can rise to a maximum of _____%.  The first change will be on _____ and can change again every ____ months after _____. Every change date, your interest rate can increase or decrease by _____%. Over the life of the loan, your interest rate is guaranteed to never be lower than _____% or higher than _____%. |
| Even if you make payments on time, can your loan balance rise? | ☒ No  ☐ Yes, it can rise to a maximum of $_____. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☒ No  ☐ Yes, the first increase can be on _____ and the monthly amount owed can rise to $_____. The maximum it can ever rise to is $_____. |
| Does your loan have a prepayment penalty? | ☒ No  ☐ Yes, your maximum prepayment penalty is $_____. |
| Does your loan have a balloon payment? | ☒ No  ☐ Yes, you have a balloon payment of $_____ due in ___ years on _____. |
| Total monthly amount owed including escrow account payments | ☒ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>☐ You have an additional monthly escrow payment of $N/A that results in a total initial monthly amount owed of $N/A. This includes principal, interest, any mortgage insurance and any items checked below:<br>☐ Property taxes  ☐ Homeowner's insurance<br>☐ Flood insurance  ☐<br>☐  ☐ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 7

| HUD-1 Attachment |
| --- |

**Borrower(s):** MICHIGAN SHORE APARTMENTS LLC  **Seller(s):** EQUITYBUILD, INC.
7616-24 S. PHILLIPS AVE
CHICAGO, IL 60649
**Lender:** EQUITYBUILD FINANCE LLC
**Settlement Agent:** PRIMARY TITLE SERVICES
**Place of Settlement:** 8833 DEMPSTER STE 205, SKOKIE, IL 60077
847-677-8833(P)/847-673-8833(F)
**Settlement Date:** June 29, 2015
**Property Location:** 7616-24 S. PHILLIPS AVE
CHICAGO, IL 60649
Cook County, Illinois
MICHIGAN SHORE APARTMENTS LLC

| Title Services and Lender's Title Insurance Details | BORROWER | SELLER |
| --- | --- | --- |
| STATE FEE | 3.00 | 3.00 |
|   to  FIRST AMERICAN TITLE INSURANCE COMPANY | | |
| CLOSING PROTECTION | 50.00 | 50.00 |
|   to  FIRST AMERICAN TITLE INSURANCE COMPANY | | |
| ENDORSEMENTS | 510.00 | |
|   to  PRIMARY TITLE | | |
| 24 MONTH CHAIN | 125.00 | |
|   to  PRIMARY TITLE | | |
| OVERNIGHT PACKAGE | 30.00 | |
|   to  PRIMARY TITLE | | |
| COMMITMENT UPDATE FEE | 75.00 | 100.00 |
|   to  PRIMARY TITLE | | |
| PLDP COMPLIANCE | 75.00 | |
|   to  PRIMARY TITLE | | |
| INWIRE FEE | 100.00 | |
|   to  PRIMARY TITLE | | |
| WIRE FEE | 100.00 | 60.00 |
|   to  PRIMARY TITLE SERVICES, LLC | | |
| CLOSING FEE | 2,075.00 | |
|   to  PRIMARY TITLE SERVICES, LLC | | |
| Lender's title insurance | 1,000.00 | |
|   to  FIRST AMERICAN TITLE INSURANCE COMPANY | | |
| **Total** | $ 4,143.00 | $ 213.00 |

| Owner's Title Insurance | BORROWER | SELLER |
| --- | --- | --- |
| Owner's Policy Premium | | 3,800.00 |
|   to  FIRST AMERICAN TITLE INSURANCE COMPANY | | |
| **Total** | $ 0.00 | $ 3,800.00 |

| Lender's Title Insurance | BORROWER | SELLER |
| --- | --- | --- |
| *Fees also shown above in Title Services and Lender's Title Insurance Details* | | |
| Lender's Policy Premium | 1,000.00 | |
|   to  FIRST AMERICAN TITLE INSURANCE COMPANY | | |
| **Total** | $ 1,000.00 | $ 0.00 |

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(1329674.pfd/1329874/16)

## DISBURSEMENTS SUMMARY / BALANCE SHEET

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

Borrower: MICHIGAN SHORE APARTMENTS LLC
Seller: EQUITYBUILD, INC.
Lender: EQUITYBUILD FINANCE LLC
Settlement Agent: PRIMARY TITLE SERVICES
Place of Settlement: 8833 DEMPSTER STE 205, SKOKIE, IL 60077
847-677-8833(P)/847-673-8833(F)
Settlement Dates: June 29, 2015
Property Location: 7616-24 S. PHILLIPS AVE
CHICAGO, IL 60849
Cook County, Illinois
MICHIGAN SHORE APARTMENTS LLC

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of7

### INCOMING FUNDS

| | | |
|---|---|---|
| EQUITYBUILD FINANCE LLC | Loan Funding Amount | 1,050,000.00 |
| MICHIGAN SHORE APARTMENTS LLC | | 47,721.02 |
| | Total Incoming Funds | 1,997,721.02 |

### DISBURSEMENTS

| | | | |
|---|---|---|---|
| H | FIRST AMERICAN TITLE | CONSTRUCTION ESCROW | 435,350.00 |
| | FIRST AMERICAN TITLE | CONSTRUCTION ESCROW FEE | 1,800.00 |
| | ROSENTHAL BROS | Homeowner's Insurance | 11,421.03 |
| | City of Chicago | Municipal Transfer Tax | 15,908.00 |
| | BROSHIESQ LAW | BUYER ATTORNEY FEES | 1,000.00 |
| | ROCK, FUSCO & CONNELLY, LTD | SELLER ATTORNEY FEES | 1,900.00 |
| | CITY OF CHICAGO | PAY WATER BILL | 5,076.30 |
| H | PRIMARY TITLE SERVICES | WATER HOLDBACK | 1,500.00 |
| | ROCK, FUSCO & CONNELLY | BUILDING REGISTRATION FEE | 130.00 |
| | EQUITYBUILD, INC. | Closing Proceeds | 1,356,746.19 |
| | EQUITYBUILD FINANCE LLC | Loan Closing | 125,900.00 |
| | ORIGINATION FEE | 97,500.00 | |
| | WIRE FEE | 50.00 | |
| | CONSTRUCTION INSPECTION FEE | 1,500.00 | |
| | DOCUMENT PREPARATION | 700.00 | |
| | TITLE REVIEW | 150.00 | |
| | Daily interest charges | 26,000.00 | |
| | PRIMARY TITLE SERVICES, LLC | Settlement Agents Fees | 7,555.00 |
| | ENDORSEMENTS | 510.00 | |
| | 24 MONTH CHAIN | 125.00 | |
| | OVERNIGHT PACKAGE | 30.00 | |
| | COMMITMENT UPDATE FEE | 175.00 | |
| | PLDP COMPLIANCE | 75.00 | |
| | INWIRE FEE | 100.00 | |
| | WIRE FEE | 180.00 | |
| | CLOSING FEE | 2,075.00 | |
| | Agent's portion of the total title insurance premium | 4,030.00 | |
| | OBTAIN WATER | 376.00 | |
| - | FIRST AMERICAN TITLE INSURANCE COMF | Title Charges | 876.00 |
| | STATE FEE | 3.00 | |
| | CLOSING PROTECTION | 100.00 | |
| | Underwriter's portion of the total title insurance premium | 770.00 | |
| | STATE FEE | 3.00 | |
| | PRIMARY TITLE SERVICES | 1201RecFee, 1204, 1205, 1201RecFee | 2,458.50 |
| | Recording Fee Deed | 52.00 | |
| | Recording Fee-1st Mortgage | 66.00 | |
| | POA | 68.00 | |
| | City/County Tax/Stamps | 757.50 | |
| | State Tax/Stamps | 1,515.00 | |

| | | |
|---|---|---|
| Number of checks - 11 | Total Disbursements | 1,997,721.02 |

(1328874 pkt/1328874/15)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 6 of 7

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|  |  |
|---|---|
| Borrower: | MICHIGAN SHORE APARTMENTS LLC |
| Seller: | EQUITYBUILD, INC. |
| Lender: | EQUITYBUILD FINANCE LLC |
| Settlement Agent: | PRIMARY TITLE SERVICES |
| Place of Settlement: | 8833 DEMPSTER STE 205, SKOKIE, IL 60077 |
|  | 847-677-8833(P)/847-673-8833(F) |
| Settlement Date: | June 29, 2015 |
| Property Location: | 7616-24 S. PHILLIPS AVE |
|  | CHICAGO, IL 60649 |
|  | Cook County, Illinois |
|  | MICHIGAN SHORE APARTMENTS LLC |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

MICHIGAN SHORE APARTMENTS LLC                    EQUITYBUILD, INC.

BY                                               BY:
President                                           President
MEMBER

ATTEST:                                          ATTEST:

Secretary                                        Secretary

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(1328674.pdf/1328674/10)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 7 of 7

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

| | |
|---|---|
| **Borrower:** | MICHIGAN SHORE APARTMENTS LLC |
| **Seller:** | EQUITYBUILD, INC. |
| **Lender:** | EQUITYBUILD FINANCE LLC |
| **Settlement Agent:** | PRIMARY TITLE SERVICES |
| **Place of Settlement:** | 8833 DEMPSTER STE 205, SKOKIE, IL 60077 |
| | 847-677-8833(P)/847-673-8833(F) |
| **Settlement Date:** | June 29, 2015 |
| **Property Location:** | 7616-24 S. PHILLIPS AVE |
| | CHICAGO, IL 60649 |
| | Cook County, Illinois |
| | MICHIGAN SHORE APARTMENTS LLC |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

MICHIGAN SHORE APARTMENTS
LLC

BY:_____

    President

ATTEST:

_____

Secretary

EQUITYBUILD, INC.

BY:_____

    President

ATTEST:

_____

Secretary

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 5
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

# AIA® Document A101™ – 2007

## *Standard Form of Agreement Between Owner and Contractor* where the basis of payment is a Stipulated Sum

**AGREEMENT** made as of the First day of December in the year 2015
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

EquityBuild, Inc, Subchapter S Corporation
1083 N Collier Blvd #132
Marco Island, FL 34145
239-595-8225

and the Contractor:
*(Name, legal status, address and other information)*

Lifetime Remodelers
5875 N Lincoln Ave Suite 219
Chicago, IL 60659
847-867-6809

for the following Project:
*(Name, location and detailed description)*

7616 S Phillips
7616 S Phillips Ave Chicago IL
25 unit multi family apartment building

The Architect:
*(Name, legal status, address and other information)*

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.



Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:57:50 on 12/01/2015 under Order No.2862846825_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                (860777294)

1

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 5

TABLE OF ARTICLES

1   THE CONTRACT DOCUMENTS

2   THE WORK OF THIS CONTRACT

3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4   CONTRACT SUM

5   PAYMENTS

6   DISPUTE RESOLUTION

7   TERMINATION OR SUSPENSION

8   MISCELLANEOUS PROVISIONS

9   ENUMERATION OF CONTRACT DOCUMENTS

10  INSURANCE AND BONDS

### ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

### ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

### ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*


December 7, 2015

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than March 29, 2016 ( 120 ) days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

Init.




AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:57:50 on 12/01/2015 under Order No.2662846825_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                                                                                    (860777294)

2

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 6



Violations are to be cured within 45 days of commencement



| Portion of Work | Substantial Completion Date |
|---|---|
| Interior and exterior | April 5, 2016 |

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)*

$1,000 per diem relating to failure to complete by completion date or agreed upon and written extension dates

### ARTICLE 4    CONTRACT SUM
§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be Six Hundred Eighty-Six Thousand One Hundred Dollars and Zero Cents ($ 686,100.00 ), subject to additions and deductions as provided in the Contract Documents.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

§ 4.3 Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($14,045.83) |
|---|---|---|
| Interior renovation | 24 units | $337,100 |

§ 4.4 Allowances included in the Contract Sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|---|---|
| Building Systems | $349,000 |

### ARTICLE 5    PAYMENTS
### § 5.1 PROGRESS PAYMENTS
§ 5.1.1 Based upon Applications for Payment submitted to the Owner by the Contractor and Certificates for Payment issued by the Owner, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

§ 5.1.3 Provided that an Application for Payment is received by the Owner not later than the 25th  day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 14th  day after payment approval or no later than the 12th day of the next month. If an Application for Payment is received by the Owner after the application date fixed above, payment shall be made by the Owner not later than fourteen ( 14 ) days after the Owner receives the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported



Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:22:35 on 12/22/2015 under Order No.2862846925_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                                                          (912746352)

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 5

by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent ( 10 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

.2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10 %);

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1 Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Section 9.8.5 of AIA Document A201 2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2 Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

.1 the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment; and

.2 a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Contractor's final Certificate for Payment, or as follows:



Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:22:35 on 12/22/2015 under Order No.2862846825_1 which expires on 11/11/2016, and is not for resale.
User Notes: (912745352)

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of 5

## ARTICLE 6  DISPUTE RESOLUTION
### § 6.1 INITIAL DECISION MAKER
The Owner will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Owner.)*

Ron Bol- Owner rep
Jessica Baier- owner rep
Jerry Cohen- Owner

### § 6.2 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

    [ X ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

    [  ]    Litigation in a court of competent jurisdiction

    [  ]    Other *(Specify)*

## ARTICLE 7  TERMINATION OR SUSPENSION
### § 7.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

### § 7.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

## ARTICLE 8  MISCELLANEOUS PROVISIONS
### § 8.1 Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

### § 8.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

zero % 0%

### § 8.3 The Owner's representative:
*(Name, address and other information)*

Equitybuild
1083 N Collier Blvd #132
Marco Island, FL 34145
Ron Bol
Jessica Baier

### § 8.4 The Contractor's representative:

Init.



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:57:50 on 12/01/2015 under Order No.2862846825_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                                                (880777294)

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 4
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

*(Name, address and other information)*

Joey Halperin
847-867-6809

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

§ **8.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ **8.6** Other provisions:

## ARTICLE 9    ENUMERATION OF CONTRACT DOCUMENTS

§ **9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

§ **9.1.1** The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and Contractor.

§ **9.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

§ **9.1.3** The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| | | | |

§ **9.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Date | Pages |
|---|---|---|---|
| | | | |

§ **9.1.5** The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|
| | | |

§ **9.1.6** The Addenda, if any:

| Number | Date | Pages |
|---|---|---|
| | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

§ **9.1.7** Additional documents, if any, forming part of the Contract Documents:

.1    AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

Init.



AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:57:50 on 12/01/2015 under Order No.2862646825_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                 (860777204)

6

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 4

.2    Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement.  They should be listed here only if intended to be part of the Contract Documents.)*

scope of work, A201, GC bid sheet

## ARTICLE 10   INSURANCE AND BONDS

The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

| Type of insurance or bond | Limit of liability or bond amount ($1,000,000.00) |
|---|---|
| General Liability | $1,000,000 Per Occurrence $2,000,000 Aggregate |
| Workers Comp | $500,000 |

This Agreement entered into as of the day and year first written above.

_Jessica Baier_ _____          _J___ H_____ _____
**OWNER** *(Signature)*                          **CONTRACTOR** *(Signature)*

Jessica Baier   Construction dept Manager     Joey Halperin   Lifetime Remodelers
*(Printed name and title)*                      *(Printed name and title)*



init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 14:01:58 on 12/11/2015 under Order No.2862846825_1 when expires on 11/11/2016, and is not for resale.
User Notes:                                                                                                (1194615110)

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 4

## Additions and Deletions Report for
## AIA® Document A101™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 10:57:50 on 12/01/2015.

**PAGE 1**

**AGREEMENT** made as of the First day of December in the year 2015

...

EquityBuild, Inc, Subchapter S Corporation
1083 N Collier Blvd #132
Marco Island, FL 34145
239-595-8225

...

Lifetime Remodelers
5875 N Lincoln Ave Suite 219
Chicago, IL 60659
847-867-6809

...

7616 S Phillips
7616 S Phillips Ave Chicago IL
25 unit multi family apartment building

**PAGE 2**

December 7, 2015

...

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than March 29, 2016 ( 120 ) days from the date of commencement, or as follows:

**PAGE 3**

Violations are to be cured within 45 days of commencement

...

$1,000 per diem relating to failure to complete by completion date or agreed upon and written extension dates

...

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:57:50 on 12/01/2015 under Order No.2962846625_1 which expires on 11/11/2016, and is not for resale.**
User Notes:                                                                                      (860777294)

1

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 4

...

**§ 4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be <u>Six Hundred Eighty-Six Thousand One Hundred Dollars and Zero Cents ($ 686,100.00 )</u>, subject to additions and deductions as provided in the Contract Documents.

...

| Item | Units and Limitations | Price Per Unit ~~($0.00)~~($14,045.83) |
|------|----------------------|-----------------------------|
| <u>Interior renovation</u> | <u>24 units</u> | <u>$337,100</u> |
| <u>Building Systems</u> | <u>$349,000</u> | |

...

**§ 5.1.1** Based upon Applications for Payment submitted to the ~~Architect~~ <u>Owner</u> by the Contractor and Certificates for Payment issued by the ~~Architect~~ <u>Owner, the</u> Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

...

**§ 5.1.3** Provided that an Application for Payment is received by the ~~Architect~~ <u>Owner</u> not later than the <u>25th</u> day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the <u>14th day after payment approval or no later than the 12th day</u> of the <u>next</u> month. If an Application for Payment is received by the ~~Architect~~ <u>Owner</u> after the application date fixed above, payment shall be made by the Owner not later than <u>fourteen</u> ( <u>14</u> ) days after the ~~Architect~~ <u>Owner</u> receives the Application for Payment.

...

**§ 5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the ~~Architect~~ <u>Owner</u> may require. This schedule, unless objected to by the ~~Architect~~ <u>Owner,</u> shall be used as a basis for reviewing the Contractor's Applications for Payment.

**PAGE 4**

    .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of <u>ten</u> percent ( <u>10</u> %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

    .2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of <u>ten</u> percent ( <u>10</u> %);

...

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the ~~Architect's~~ <u>Contractor's</u> final Certificate for Payment, or as follows:

**PAGE 5**

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:22:35 on 12/22/2015 under Order No.2862846525_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                                                          (912746352)

2

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
CALENDAR: 08
PAGE 1 of 9
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

Equitybuild
1083 N Collier Blvd #132
Marco Island, FL 34145
Ron Bol
Jessica Baier

**PAGE 6**

Joey Halperin
847-867-6809

**PAGE 7**

scope of work

...

| Type of Insurance or bond | Limit of liability or bond amount (~~$0.00~~)($1,000,000.00) |
|---|---|
| General Liability | $1,000,000 Per Occurrence $2,000,000 Aggregate |
| Workers Comp | $500,000 |

...

Jessica Baier Construction dept Manager          Joey Halperin Lifetime Remodelers

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10.57:50 on 12/01/2015 under Order No.2862848825_1 which expires on 11/11/2016, and is not for resale.
User Notes:                                                                                              (860777294)

3

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 2 of 9

## Certification of Document's Authenticity
### AIA® Document D401™ – 2003

I, Jessica Baier, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 10:57:50 on 12/01/2015 under Order No. 2862846825_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A101™ – 2007, Standard Form of Agreement Between Owner and Contractor   where the basis of payment is a Stipulated Sum, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

*(Signed)*

Construction Dept manager
*(Title)*

12/16/15
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:57:50 on 12/01/2015 under Order No.2862846825_1 which expires on 11/1/2016, and is not for resale.
User Notes: (880777294)

1

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 3 of 9

## 7616 S Phillips Chicago IL 25 unit multi family Dwelling Conversion

## Furnish all materials and labor to complete in accordance with specifications below, for the sum of $ ~~88 Thous~~ *1,686,00.00*

Architectural services and permit processing:

    A.  Architect shall submit drawing for the procurement of two (2) existing violations, porch and masonry. Architect to expedite permits needed.

    B.  ~~Architect shall provide plans for converting 5 rooms/2 beds into 4 rooms/3 beds, 1 bedrooms into 2 bedrooms. Architect to expedite permits needed.~~   *S/A*

Porches:

    A.  Contractor to make all modifications, adjustments, and changes that are needed to become compliant with the City of Chicago code and pass existing violation.

Windows:

    A.  Replace all windows with tempered glass. *( S L )*

Roofing work:

    A.  Remove existing roof system 9500 sq ft. Install new ~~TPO system.~~ *Modified   Bitmen*
    B.  Remove existing coping tiles on parapet walls, set aside for reinstall. Due to the age and condition of the existing coping tiles, some may need to be discarded to ensure a watertight bond. All coping tiles deemed unfit for use by roofers on job site will be replaced with new at a cost of $65 each.
    C.  Install new 3/8" fan fold insulation for flat substrate.
    D.  Re roof with new mechanically attached TPO roof system per manufactures specs.
    E.  Install new galvanized boxed gutter with flashing and flange to existing roof deck.
    F.  Install new galvanized downspout to match.

Masonry work:

    A.  Contractor to remedy City of Chicago violations on the North East (NE) front corner of the building.

Common Hallways: Four (4) entrances

    A.  Carpeting: Remove existing and install dark grey with padding.
    B.  Painting: Prep walls, paint with Sherwin Williams dark beige on walls and ceilings.
    C.  Banister, handrails, and spindles: Deep clean all with lemon oil.

Interior Remodeling:

    A.  Convert units 2A and 3A currently one bedrooms into two bedrooms. Contractor to frame openings and cover with ½ or 5/8 gypsum, tape, sand, and paint all areas affected with matching color. Build closet to include doors, shelves, rods, and 2-3 junction boxes: one for the light in the closet, one outlet needed, and one switch needed.



Lifetime Remodelers



Lifetime Remodelers

# E S T I M A T E

EquityBuild Finance LLC
7616 S Phillips
Per Unit Estimate
*Average Price per unit regardless of sq footage.
*Applies to 24 units
*does not apply to garden unit. Garden unit not included.

| | | Estimate # | 7616-Per-Unit |
| --- | --- | --- | --- |
| | | Estimate Date | 12/10/2015 |

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 4 of 9

| Item | Description | Unit Price | Quantity | Amount |
| --- | --- | --- | --- | --- |
| | Demo:<br>Remove and haul away all existing furniture, cabinets, interior doors (besides large closet door in living room), appliances, carpet, old floor coverings, bathroom fixtures.<br><br>Dumpster will be provided and on site w/ permit.<br><br>Bathroom:<br>- Reglaze or replace Bathtub<br>- Install new durarock cement board on 3 tub walls<br>- install 12x12 ceramic tile with 1 line of glass mosaic on the 3 tub walls.<br>- all other walls outside of tub will be patched and painted.<br>- Install 24-30" vanity with cabinets, sink, and faucet<br>- install matching mirror<br>- install GFCI outlet<br>- install 1 strip light 3 bulb<br>- if currently has an exhaust fan replace, otherwise none to be installed.<br>- install new 12x12 ceramic tile floor<br>- install new toilet<br>- Install new t/p holder, towel rack, and curtain rod.<br>- install new copper and plumbing fixtures to code in exposed plumbing wall.<br>Address all possible plumbing issues seen in the unit. | | | |



FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 5 of 9

Kitchen:
- Install 1 line of appx 15-18LF of maple or espresso
cabinetry.
1 cabinet over fridge on opposite wall.
- Install formica OR granite countertops
- install stainless steel double bowl sink and faucet
- install white or black refrigerator with freezer on top, and
30" oven/stove (maytag or whirpool)
- Install new 12x12 ceramic tile floor over durarock cement
board in kitchen area only
- Install new plumbing in the kitchen plumbing wall to city
code.
- 1 GFCI outlet within 3 feet of sink
- Install 1 new flush-mount ceiling light fixture


Living Room, Hallway, Bedroom, hardwood flooring:
- Sand, varnish, natural stain, 1X coat poly all existing
hardwood floors
- reparations will be billed at $20/sq ft change orders
- Dark stain if requested will be billed at .40/sq ft extra

Trim/Base/Shoe
- save as much as possible, repair/replace on per need
basis. Paint all trim semi gloss white.

Interior Doors: Replace doors as needed

Change all door knobs and locks in the unit
no entrance doors included

Paint:
Prep and patch all walls. walls will not be new/perfect but a
reasonable amount of patching and prepping will be done
per a typical turnover.
- Paint all walls flat or eggshell (customer choice) gray or
beige paint
- Paint all interior doors and trim semi gloss white
- paint all ceilings flat white
- kitchen to be same color as walls, bathrooms white unless
requested otherwise

Electrical: All outlets, switches, and covers will be new.
GFCI outlets everywhere code calls for.
- new flushmount light fixtures everywhere existing or where
called for
- new globe lights in closets on pull strings
- all other lights will be on a switch
- if existing living rooms are not wired/piped for an overhead
light we will do so at $200/unit, unless owner decides that
having an outlet connected to the switch is acceptable as
many apartment complexes choose to do.

Install smoke detector in each bedroom and a smoke/co2
combo in the kitchen



Total Material          0000 00        20.00        ...

Total Labor             6500 00        23.00      149,500 00

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018CH03665
PAGE 5 of 19

| | | | |
|---|---|---|---|
| the 24th unit requires extensive work due to fire<br>this unit will be priced at 22,000 L&M. | 20000.00 | 1 00 | 20,000.00 |
| Remodel 4 Common Stairwells<br>- Remove and Replace Carpet<br>- Deep clean all woodwork<br>- Paint all walls, ceilings, and trim | 2000.00 | 4.00 | 8,000.00 |
| *Adjustment for 12 unit conversions<br>- Convert 12 existing 2/1's to 3/1's<br>by adding a wall, light fixture, outlets,<br>and small closet<br>- no arch. drawings included for this work<br>- if city ever requires drawings, it will be<br>a change order to contract<br>and extra charge. | 1800 00 | 12.00 | 21,600.00 |

NOTES: *NO WORK WILL BE COMPLETED ON THE GARDEN UNIT
WITHIN THE SCOPE OF THIS CONTRACT
*NO CONCRETE WORK INCLUDED

| | |
|---|---|
| Subtotal | 337,100.00 |
| Total | 337,100.00 |
| Amount Paid | 0.00 |
| Estimate | $337,100.00 |

Lifetime Remodelers



FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
7/19/2018 4:52 PM
2018-CH-03665
PAGE 7 of 9

# ESTIMATE

EquityBuild Finance LLC
7616 S Phillips
Building Systems and Other Estimates

| | |
|---|---|
| Estimate # | 7616-Phillips-BuldingSystems |
| Estimate Date | 10/08/2015 |

| Item | Description | Unit Price | Quar |
|------|-------------|-----------|------|
| | **Windows:**<br>Install 82 (or wherever owner<br>/management specifies)<br>new, vinyl, thermal,<br>double pane glass windows.<br>- beige<br>- tempered glass<br>- 1/2 screen included<br>- fiberglass insulation<br>- caulking on both sides<br>- beige aluminum trim<br>- manufacturer warranty | 300.00 | 8 |
| | **Porches:**<br>(5) Five porches to recommended<br>to be torn down and rebuilt<br>- (1) porch on the far north alley<br>can be repaired for ($7,500) to bring to code<br>- All porches will have<br>architectural stamped drawings<br>and permits<br>and will be built to city code.<br>- treated wood<br>- if existing overhang is in good<br>condition it will be saved.<br>If there is no existing overhang,<br>no new one will be built.<br>- footings dug to code<br>- temporary safety measures<br>including securing rear exits<br>while we are<br>working on porches<br>- all demo and clean up included<br>- All electrical in porch areas<br>will be left in working condition,<br>any moving of electrical is included. | 81250.00 | |



FILED DATE: 7/19/2018 4:32 PM 2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 8 of 9

Foundation repair/water proofing

*Not enough access to determine full estimate for this part of the scope.
In the bsements walked with
management, we observed minor foundation repair only.

In the garden units, there
is clear and evident water damage
indicating potential larger issues.
These units will be addressed
separately after complete inspection.

Plumbing system:
Install all necessary above
ground waste and vent piping
and hot and cold potable

water to Illinois Code specifications for:

o 1 lavatory

o 1 toilet

o 1 tub system (rough only
no new tub supplied)

o 1 kitchen sink

? All piping above installed to Illinois code and properly braced and
supported

? Test all plumbing installed

? Includes plumbing permit
and necessary fees associated with permit R

? Hot and cold installed on
full size piping best allowed in
accessible area

PRICING FOR PROJECT IN ITS
ENTIRETY TO ACCOUNT FOR:

? 24 units and the common areas in basement to tie all systems
together into existing

sewer systems in ground ( as is)
and onto existing water mains
( as is) and
to existing hot

water potable supplies ( as is)

? After examining the water heater
situation a price will be given for replacements to

install new water heater's



FILED DATE: 7/19/2018 4:32 PM   2018CH09098

ELECTRONICALLY FILED
3/20/2018 4:52 PM
2018-CH-03665
PAGE 9 of 9

| | |
|---|---|
| Subtotal | |
| Total | |
| Amount Paid | |
| Estimate | |

total: $349,000. on
Building systems.

Summons - Alias Summons

(12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHIGAN SHORE APARTMENTS LLC

v.

EQUITYBUILD, INC.; EQUITYBUILD FINANCE LLC; JERRY COHEN; SHAUN COHEN; MARK BROSIUS

No. 2018-CH-03665

Defendant Address:
EQUITYBUILD, INC
R/A IOANA SALAJANU
321 N CLARK ST
SUITE 2200
CHICAGO, IL 60654

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
   5600 Old Orchard Rd.
   Skokie, IL 60077

☐ District 3 - Rolling Meadows
   2121 Euclid 1500
   Rolling Meadows, IL 60008

☐ District 4 - Maywood
   Maybrook Ave.
   Maywood, IL 60153

☐ District 5 - Bridgeview
   10220 S. 76th Ave.
   Bridgeview, IL 60455

☐ District 6 - Markham
   16501 S. Kedzie Pkwy.
   Markham, IL 60428

☐ Richard J. Daley Center
   50 W. Washington, LL-01
   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 14516

Name: CARY G SCHIFF&ASSOC

Atty. for: MICHIGAN SHORE APARTMENTS LLC

Address: 134 N LASALLE #1720

City/State/Zip Code: CHICAGO, IL 60602

Telephone: (312) 419-1130

Primary Email Address: filings.cgschifflaw@gmail.com

Secondary Email Address(es):

Witness: Tuesday, 20 March 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

Summons - Alias Summons

(12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHIGAN SHORE APARTMENTS LLC

v.

EQUITYBUILD, INC.; EQUITYBUILD FINANCE LLC; JERRY COHEN; SHAUN COHEN; MARK BROSIUS

No. 2018-CH-03665

Defendant Address:
EQUITYBUILD FINANCE LLC
R/A JERRY COHEN
1050 8TH AVE N
NAPLES, FL 34102

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802                    ,Chicago, Illinois 60602

☐ District 2 - Skokie
   5600 Old Orchard Rd.
   Skokie, IL 60077

☐ District 3 - Rolling Meadows
   2121 Euclid 1500
   Rolling Meadows, IL 60008

☐ District 4 - Maywood
   Maybrook Ave.
   Maywood, IL 60153

☐ District 5 - Bridgeview
   10220 S. 76th Ave.
   Bridgeview, IL 60455

☐ District 6 - Markham
   16501 S. Kedzie Pkwy.
   Markham, IL 60428

☐ Richard J. Daley Center
   50 W. Washington, LL-01
   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 14516

Name: CARY G SCHIFF & ASSOC

Atty. for: MICHIGAN SHORE APARTMENTS LLC

Address: 134 N LASALLE #1720

City/State/Zip Code: CHICAGO, IL 60602

Telephone: (312) 419-1130

Primary Email Address: filings.cgschifflaw@gmail.com

Secondary Email Address(es):

Witness: Tuesday, 20 March 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)    (Facsimile Telephone Number)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

Summons - Alias Summons            (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHIGAN SHORE APARTMENTS LLC

v.

EQUITYBUILD, INC.; EQUITYBUILD FINANCE LLC; JERRY COHEN; SHAUN COHEN; MARK BROSIUS

No. 2018-CH-03665

Defendant Address:
JERRY COHEN
1050 8TH AVE N
NAPLES, FL 34102

*(left margin, vertical)* FILED DATE: 7/19/2018 4:32 PM   2018CH09098

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
    5600 Old Orchard Rd.
    Skokie, IL 60077

☐ District 3 - Rolling Meadows
    2121 Euclid 1500
    Rolling Meadows, IL 60008

☐ District 4 - Maywood
    Maybrook Ave.
    Maywood, IL 60153

☐ District 5 - Bridgeview
    10220 S. 76th Ave.
    Bridgeview, IL 60455

☐ District 6 - Markham
    16501 S. Kedzie Pkwy.
    Markham, IL 60428

☐ Richard J. Daley Center
    50 W. Washington, LL-01
    Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 14516

Name: CARY G SCHIFF & ASSOC

Atty. for: MICHIGAN SHORE APARTMENTS LLC

Address: 134 N LASALLE #1720

City/State/Zip Code: CHICAGO, IL 60602

Telephone: (312) 419-1130

Primary Email Address: filings.cgschifflaw@gmail.com

Secondary Email Address(es):

Witness: Tuesday, 20 March 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 1

Summons - Alias Summons            (12/31/15) CCG N001

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHIGAN SHORE APARTMENTS LLC

v.

EQUITYBUILD, INC.; EQUITYBUILD FINANCE LLC; JERRY COHEN; SHAUN COHEN; MARK BROSIUS

No. 2018-CH-03665

Defendant Address:
SHAUN COHEN
5068 W PLANO PKWY
300
PLANO, TX 75093

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
   5600 Old Orchard Rd.
   Skokie, IL 60077

☐ District 3 - Rolling Meadows
   2121 Euclid 1500
   Rolling Meadows, IL 60008

☐ District 4 - Maywood
   Maybrook Ave.
   Maywood, IL 60153

☐ District 5 - Bridgeview
   10220 S. 76th Ave.
   Bridgeview, IL 60455

☐ District 6 - Markham
   16501 S. Kedzie Pkwy.
   Markham, IL 60428

☐ Richard J. Daley Center
   50 W. Washington, LL-01
   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 14516

Name: CARY G SCHIFF&ASSOC

Atty. for: MICHIGAN SHORE APARTMENTS LLC

Address: 134 N LASALLE #1720

City/State/Zip Code: CHICAGO, IL 60602

Telephone: (312) 419-1130

Primary Email Address: filings.cgschifflaw@gmail.com

Secondary Email Address(es):

Witness:     Tuesday, 20 March 2018

/s DOROTHY BROWN
DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**Page 1 of 1**

Summons - Alias Summons

(12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MICHIGAN SHORE APARTMENTS LLC

v.

EQUITYBUILD, INC.; EQUITYBUILD FINANCE LLC; JERRY COHEN; SHAUN COHEN; MARK BROSIUS

No. 2018-CH-03665

Defendant Address:
MARK BROSIUS
4751 W TOUHY AVE
SUITE 101
LINCOLNWOOD, IL 60712

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802       ,Chicago, Illinois 60602

☐ District 2 - Skokie
   5600 Old Orchard Rd.
   Skokie, IL 60077

☐ District 3 - Rolling Meadows
   2121 Euclid 1500
   Rolling Meadows, IL 60008

☐ District 4 - Maywood
   Maybrook Ave.
   Maywood, IL 60153

☐ District 5 - Bridgeview
   10220 S. 76th Ave.
   Bridgeview, IL 60455

☐ District 6 - Markham
   16501 S. Kedzie Pkwy.
   Markham, IL 60428

☐ Richard J. Daley Center
   50 W. Washington, LL-01
   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 14516

Name: CARY G SCHIFF&ASSOC

Atty. for: MICHIGAN SHORE APARTMENTS LLC

Address: 134 N LASALLE #1720

City/State/Zip Code: CHICAGO, IL 60602

Telephone: (312) 419-1130

Primary Email Address: filings.cgschifflaw@gmail.com

Secondary Email Address(es):

Witness: Tuesday, 20 March 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: 

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

# Chancery DIVISION
## Litigant List

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

Printed on 03/21/2018

Case Number: 2018-CH-03665

Page 1 of 1

## Plaintiffs

| Plaintiffs Name | Plaintiffs Address | State | Zip | Unit # |
|---|---|---|---|---|
| MICHIGAN SHORE APARTMENTS LLC | | | | |

Total Plaintiffs: **1**

## Defendants

| Defendant Name | Defendant Address | State | Zip | Unit # | Service By |
|---|---|---|---|---|---|
| EQUITYBUILD, INC. | 321 N CLARK ST CHICAGO, | IL | 60654 | SUITE 2200 | PPS |
| EQUITYBUILD FINANCE LLC | 1050 8TH AVE N NAPLES, | FL | 34102 | | PPS |
| JERRY COHEN | 1050 8TH AVE N NAPLES, | FL | 34102 | | PPS |
| SHAUN COHEN | 5068 W. PLANO PKWY PLANO, | TX | 75093 | 300 | PPS |
| MARK BROSIUS | 4751 W. TOUHY AVE LINCOLNWOOD, | IL | 60712 | SUITE 101 | PPS |

Total Defendants: **5**

2018CH09098

EXHIBIT B

FILED
7/19/2018 4:32 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09098

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

**WARRANTY DEED
ILLINOIS STATUTORY**

Doc# 1812734036 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00
AFFIDAVIT FEE: $2.00
KAREN A. YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:20 AM  PG: 1 OF 3

#1890660
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF) IN MOREAU AND DE JONG'S RESUBDIVISION OF LOTS 30 TO 48 INCLUSIVE IN BLOCK 16 IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): 19-24-200-029-0000

Address(es) of Real Estate: **2736-2744 W. 64TH STREET, CHICAGO, ILLINOIS 60629**

Dated this _____10th_____ day of ____April____ , 20 __18__ .

**SIGNATURE PAGE TO FOLLOW.**

S Y
P 3 6 G
S N
SC Y
INT

3

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF    Manatee        ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this    10th    day of    April    , 20   18

**JESSICA BAIER**
MY COMMISSION # GG135505
EXPIRES August 17, 2021

_____ (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: April 10, 2018

_____
Signature of Buyer, Seller or Representative

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio I LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | **CHICAGO:** | 0.00 |
| | **CTA:** | 0.00 |
| | **TOTAL:** | 0.00 * |
| 19-24-200-029-0000 | 20180401645903 | 1-073-325-344 |

\* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | **COUNTY:** | 0.00 |
| | **ILLINOIS:** | 0.00 |
| | **TOTAL:** | 0.00 |
| 19-24-200-029-0000 | 20180401645903 | 0-146-265-376 |

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _____, 2018          Signature: _____

Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of _____, 2018

Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _____, 2018          Signature: _____

Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of _____, 2018

Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**



Doc# 1812734037 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:21 AM PG: 1 OF 3

#1890661
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453
4 3 1

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 1 AND THE EAST 18.00 FEET OF LOT 2 IN BLOCK 3 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **21-30-301-030-0000**

Address(es) of Real Estate: **2453 E. 75TH STREET/7508 S. ESSEX AVENUE, CHICAGO, IL 60649**

Dated this ___10th___ day of ___April___ , 20 _18_

## SIGNATURE PAGE TO FOLLOW.

3

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF ___manatee___ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___ , 20 __18__ .

_Jessica Baier_ (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: ___April 10, 2018___

_____
Signature of Buyer, Seller or Representative

> JESSICA BAIER
> MY COMMISSION # GG135505
> EXPIRES August 17, 2021

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

---

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| CHICAGO: | | 0.00 |
| CTA: | | 0.00 |
| TOTAL: | | 0.00 * |
| 21-30-301-030-0000 | 20180401645888 | 1-342-547-232 |

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| COUNTY: | | 0.00 |
| ILLINOIS: | | 0.00 |
| TOTAL: | | 0.00 |
| 21-30-301-030-0000 | 20180401645888 | 0-039-855-392 |

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated ___April 10___, 2018     Signature: _____
                                                        Grantor or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this __10th__ day of ___April___, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated ___April 10___, 2018     Signature: _____
                                                        Grantee or Agent



Subscribed and sworn to before me by the

said _____AGENT_____

this __10th__ day of ___April___, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**



Doc# 1812734039 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00
AFFIDAVIT FEE: $2.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:23 AM PG: 1 OF 3

# 1890664
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

1 2 1

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8ᵗʰ Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC,** an Illinois limited liability company, with an address of 1414 W. 62ⁿᵈ Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 12 IN BLOCK 8 IN WOODLAWN RIDGE SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST ¼ OF SECTION 23, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **20-23-112-028-0000**

Address(es) of Real Estate:   **816-22 E. MARQUETTE ROAD, CHICAGO, ILLINOIS 60637**

Dated this _____10ᵗʰ_____ day of _____April_____ , 20 __18__ .

## SIGNATURE PAGE TO FOLLOW.

S V
P 366
S ∧
SC ∨
INT

3

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF _____ manatee _____ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___ , 20 __18__ .

 (Notary Public)

JESSICA BAIER
MY COMMISSION # GG135508
EXPIRES August 17, 2021

EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: ___April 10, 2018___

_____
(Signature of Buyer, Seller or Representative )

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
| --- | --- |
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |

20-23-112-028-0000 | 20180401642218 | 1-169-098-016

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
| --- | --- |
| COUNTY: | 0.00 |
| ILLINOIS: | 0.00 |
| TOTAL: | 0.00 |

20-23-112-028-0000 | 20180401642218 | 1-551-442-976

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

1812734039 Page: 3 of 3

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018        Signature: _____
                                                    Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this _10th_ day of _April_, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018        Signature: _____
                                                    Grantee or Agent



Subscribed and sworn to before me by the

said _____ AGENT _____

this _10th_ day of _April_, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

**WARRANTY DEED**
**ILLINOIS STATUTORY**

#1850666
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453



Doc# 1812734040 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00
AFFIDAVIT FEE: $2.00
KAREN A. YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:25 AM PG: 1 OF 3

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC,** an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **21-30-309-030-0000**

Address(es) of Real Estate: **7600 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649**

Dated this ___10th___ day of ___April___ , 20 _18_

SIGNATURE PAGE TO FOLLOW.

3

**EQUITYBUILD, INC., a Florida corporation**

Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF **manatee** ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this  10th day of April , 20 18 .

JESSICA BAIER
MY COMMISSION # GG135508
EXPIRES August 17, 2021

 (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: April 10, 2018

Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | CHICAGO: | 0.00 |
| | CTA: | 0.00 |
| | TOTAL: | 0.00 * |
| 21-30-309-030-0000 | 20180401646148 | 2-041-513-248 |

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | COUNTY: | 0.00 |
| | ILLINOIS: | 0.00 |
| | TOTAL: | 0.00 |
| 21-30-309-030-0000 | 20180401648148 | 1-383-007-520 |

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated __April 10__, 2018     Signature: _____

                                                 Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of __April__, 2018

_____
Notary Public

```
PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019
```

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated __April 10__, 2018     Signature: _____

                                                 Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of __April__, 2018

_____
Notary Public

```
PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019
```

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**



Doc# 1812734038 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00
AFFIDAVIT FEE: $2.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:22 AM PG: 1 OF 3

#1890663
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOTS 16, 17 AND 18, IN BLOCK 11, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): 21-30-319-029-0000

Address(es) of Real Estate:   **7748-52 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649**

Dated this _____ 10th _____ day of _____ April _____ , 20 _18_

**SIGNATURE PAGE TO FOLLOW.**

S
P 366
S
SC
INT

3

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF ___manatee_____ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___, 20 __18___ .

JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

___Jessica Baier___ (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: ___April 10, 2018___

Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio I LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
| --- | --- |
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |

21-30-319-029-0000 | 20180401649916 | 1-126-155-552

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
| --- | --- |
| COUNTY: | 0.00 |
| ILLINOIS: | 0.00 |
| TOTAL: | 0.00 |

21-30-319-029-0000 | 20180401649916 | 0-034-465-056

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018       Signature: _____

                                                    Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of _April_, 2018

_____
        Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018       Signature: _____

                                                    Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of _April_, 2018

_____
        Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**

*#1F90652*
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453
*TE 1*



Doc# 1812734028 Fee $44.00

RHSP FEE:$9.00 RPRF FEE: $1.00
AFFIDAVIT FEE: $2.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:06 AM PG: 1 OF 4

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC,** an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

### SEE ATTACHED LEGAL DESCRIPTION.

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **20-35-303-096-0000; 20-35-303-097-0000; 20-35-303-098-0000; 20-35-303-099-0000**

Address(es) of Real Estate:   **8326 S. ELLIS AVENUE, 8334 S. ELLIS AVENUE, 8342 S. ELLIS AVENUE & 8352 S. ELLIS AVENUE, CHICAGO, ILLINOIS ~~60637~~** 60619

Dated this   *10th*   day of   *April*   , 20  18

### SIGNATURE PAGE TO FOLLOW.

S  Y
P  4GG
S  N
SC  Y
INT  TAB

4

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF ⎯Monroe⎯ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ⎯10th⎯ day of ⎯April⎯ , 20 ⎯18⎯ .

```
JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021
```

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: April 10, 2018

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Signature of Buyer, Seller or Representative

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
|---|---|
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |

20-35-303-096-0000 | 20180401650121 | 1-056-302-368

* Total does not include any applicable penalty or interest due

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
|---|---|
| COUNTY: | 0.00 |
| ILLINOIS: | 0.00 |
| TOTAL: | 0.00 |

20-35-303-096-0000 | 20180401650121 | 1-812-849-952

LEGAL DESCRIPTION

PARCEL 1:
THE NORTH 87.50 FEET OF LOTS 11 TO 24 INCLUSIVE (TAKEN AS A TRACT) IN BLOCK 1
IN MOORE'S SUBDIVISION OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF THE
SOUTHWEST 1/4 OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD
PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PARCEL 2:
THE SOUTHERLY 87.50 FEET OF THE NORTH 175.00 FEET OF LOTS 11 TO 24 INCLUSIVE
(TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST 1/4 OF
THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 35, TOWNSHIP 38 NORTH,
RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PARCEL 3:
THE SOUTHERLY 87.50 FEET OF THE NORTH 262.50 FEET OF LOTS 11 TO 24 INCLUSIVE
(TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST 1/4 OF
THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 35, TOWNSHIP 38 NORTH,
RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PARCEL 4:
LOTS 11 TO 24 INCLUSIVE, TAKEN AS A TRACT (EXCEPT THE NORTH 262.50 FEET
THEREOF) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST 1/4 OF THE
NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 35, TOWNSHIP 38 NORTH,
RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Address commonly known as:
8326-52 S Ellis Ave
Chicago, IL 60619

PIN#:  20-35-303-096
        20-35-303-097
        20-35-303-098
        20-35-303-099

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire or hold title to real estate under the laws of the State of Illinois.

Dated _____, 2018          Signature: _____

                                                          Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this _____ day of _____, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _____, 2018          Signature: _____

                                                          Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this _____ day of _____, 2018

_____
Notary Public

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098



Doc# 1812734041 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A. YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:26 AM PG: 1 OF 3

**WARRANTY DEED**
**ILLINOIS STATUTORY**

#1890668

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

181

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 38 (EXCEPT THE SOUTH 28 AND ONE HALF FEET THEREOF) AND ALL OF LOTS 39 AND 40 IN BLOCK 4 IN THE SUBDIVISION OF LOTS 1 TO 10, BOTH INCLUSIVE, IN CHARLES RINGER'S SOUTH SHORE ADDITION, BEING A SUBDIVISION OF THE EAST ½ OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF TAKEN FOR WIDENING EAST 83RD STREET) IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **21-31-126-001-0000**

Address(es) of Real Estate:  **8201 S. KINGSTON AVENUE, CHICAGO, IL 60617**

Dated this _____10th_____ day of __April__ , 20 _18_ .

**SIGNATURE PAGE TO FOLLOW.**

S    Y
P    3GG
S    N
SC   Y
INT

3

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF _____ mmfee _____ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this _____ 10th _____ day of _____ April _____, 20 _18_ .

_____ Jessica Baier _____ (Notary Public)

**JESSICA BAIER**
MY COMMISSION # GG135506
EXPIRES August 17, 2021

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: _____ April 10, 2018 _____

Signature of Buyer, Seller or Representative

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio I LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | CHICAGO: | 0.00 |
| | CTA: | 0.00 |
| | TOTAL: | 0.00 * |
| 21-31-126-001-0000 | 20180401650085 | 1-652-291-872 |

*·Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | COUNTY: | 0.00 |
| | ILLINOIS: | 0.00 |
| | TOTAL: | 0.00 |
| 21-31-126-001-0000 | 20180401650085 | 1-919-678-432 |

FILED DATE: 7/19/2018 4:32 PM  2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated ___April 10___, 2018        Signature: _____

                                                    Grantor or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this ___10th___ day of ___April___, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated ___April 10___, 2018        Signature: _____

                                                    Grantee of Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this ___10___ day of ___April___, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**

*#1888659*

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453
*1%I*



Doc# 1812734035 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:18 AM  PG:  1 OF 3

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC,** an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 7 IN BLOCK 1 IN L. W. STONE'S SUBDIVISION OF THE EAST 20 ACRES OF THE NORTH 30 ACRES OF THE WEST ½ OF THE SOUTHWEST 1/4 OF SECTION 3, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO:  General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): 20-03-302-002-0000

Address(es) of Real Estate: **4317-19 S. MICHIGAN AVENUE, CHICAGO, ILLINOIS 60653**

Dated this _____10th_____ day of _____April_____ , 20 __18__ .

**SIGNATURE PAGE TO FOLLOW.**

S  Y
P  3GG
S  N
SC Y
INT

*3*

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF   manatee                    ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this   10th   day of   April        , 20  18     .

                                                                    (Notary Public)

JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: April 10, 2018

Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | CHICAGO: | 0.00 |
| | CTA: | 0.00 |
| | TOTAL: | 0.00 * |
| 20-03-302-002-0000 | 20180401645917 | 1-911-940-384 |

\* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | COUNTY: | 0.00 |
| | ILLINOIS: | 0.00 |
| | TOTAL: | 0.00 |
| 20-03-302-002-0000 | 20180401645917 | 0-745-473-312 |

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated ___April 10___, 2018          Signature: _____

                                                          Grantor or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this ___10th___ day of ___April___, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated ___April 10___, 2018          Signature: _____

                                                          Grantee or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this ___10th___ day of ___April___, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM  2018CH09098



Doc# 1812734033 F** $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:14 AM PG: 1 OF 3

**WARRANTY DEED**
**ILLINOIS STATUTORY**

#1870657
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOTS 14 AND 15 IN BLOCK 10 IN JOHN G. SHORTALL TRUSTEE'S SUBDIVISION OF THE NORTH ½ OF THE NORTHEAST ¼ OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **20-26-210-001-0000**

Address(es) of Real Estate: **7201 S. DORCHESTER AVENUE, CHICAGO, ILLINOIS 60619**

Dated this _____ 10th _____ day of _____ April _____, 20 _18_ .

**SIGNATURE PAGE TO FOLLOW.**

S Y
P 346
S N
SC Y
INT AB

3

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF _____manatee_____ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___ , 20 _18_ .

 (Notary Public)

JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: April 10, 2018

Signature of Buyer, Seller or Representative

---

**Prepared by:**

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

**Mail to:**

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

**Name and Address of Taxpayer:**

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
|---|---|
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |
| 20-26-210-001-0000 | 20180401646014 | 2-137-092-384 |

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
|---|---|
| COUNTY: | 0.00 |
| ILLINOIS: | 0.00 |
| TOTAL: | 0.00 |
| 20-26-210-001-0000 | 20180401646014 | 0-012-047-648 |

1612734033 Page: 3 of 3

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____

                                         Grantor or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this __10th__ day of __April__, 2018

_____
        Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____

                                         Grantee or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this __10th__ day of __April__, 2018

_____
        Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**



Doc# 1812734029 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:09 AM PG: 1 OF 3

*#1830653*

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

*18 1*

THE GRANTOR(S) **EQUITYBUILD, INC.,** a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars,** and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC,** an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOTS 26 AND 27 IN BLOCK 1 IN JOHN BAIN'S SUBDIVISION OF THE EAST ½ OF THE EAST ½ OF THE NORTHWEST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **19-24-107-037-0000**

Address(es) of Real Estate: **6356 S. CALIFORNIA AVENUE, CHICAGO, ILLINOIS 60629**

Dated this _____10th_____ day of ____April____ , 20 __18__ .

### SIGNATURE PAGE TO FOLLOW.

S Y
P 36G
S N
SC Y
INT AS

3

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

**EQUITYBUILD, INC., a Florida corporation**

Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF ___manatee___ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___, 20 ___18___.



```
JESSICA BAIER
MY COMMISSION # GG135606
EXPIRES August 17, 2021
```

_____ (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: ___April 10, 2018___

Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | CHICAGO: | 0.00 |
| | CTA: | 0.00 |
| | TOTAL: | 0.00 * |
| 19-24-107-037-0000 | 20180401645936 | 0-797-575-456 |

\* Total does not include any applicable penalty or interest due.

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | COUNTY: | 0.00 |
| | ILLINOIS: | 0.00 |
| | TOTAL: | 0.00 |
| 19-24-107-037-0000 | 20180401645936 | 0-096-881-824 |

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____

                                                    Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of _April_, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____

                                                    Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this ___ day of _April_, 2018

_____
Notary Public

> PATRICIA E FLORES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM    2018CH09098



Doc# 1812734032 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00
AFFIDAVIT FEE: $2.00
KAREN A. YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 10:12 AM PG: 1 OF 3

**WARRANTY DEED**
**ILLINOIS STATUTORY**

#1890656
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453
1 8 1

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC,** an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 5 (EXCEPT THE SOUTH 8 FEET THEREOF) IN BLOCK 11 IN PRESCOTT'S SUBDIVISION OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 27, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **20-27-122-027-0000**

Address(es) of Real Estate: **7442 S. CALUMET AVENUE, CHICAGO, ILLINOIS 60619**

Dated this _____10th_____ day of _____April_____, 20 _18_____ .

### SIGNATURE PAGE TO FOLLOW.

S Y
P 366
S N
SC Y
INT A

3

FILED DATE: 7/19/2018 4:32 PM    2018CH09098

**EQUITYBUILD, INC., a Florida corporation**

Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF    Manatee    ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this  10th  day of  April  , 20  18  .



JESSICA BAIER
MY COMMISSION # GG135505
EXPIRES August 17, 2021

_(Notary Public)_

EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: April 10, 2018

Signature of Buyer, Seller or Representative

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
| --- | --- |
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |

| 20-27-122-027-0000 | 20180401646099 | 1-235-232-032 |
| --- | --- | --- |

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
| --- | --- |
| COUNTY: | 0.00 |
| ILLINOIS: | 0.00 |
| TOTAL: | 0.00 |

| 20-27-122-027-0000 | 20180401646099 | 1-308-961-056 |
| --- | --- | --- |

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire or hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____
                                                          Grantor or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this ___ day of _April_, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____
                                                          Grantee or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this ___ day of _April_, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**

Doc# 1812734034 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A. YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:17 AM PG: 1 OF 3

#1890658

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO I LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**THE SOUTH ½ OF LOT 10 IN DIVISION 2 OF WESTFALL'S SUBDIVISION OF 208 ACRES, BEING THE EAST ½ OF THE SOUTHWEST ¼ AND THE SOUTHEAST FRACTIONAL ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): 21-30-304-020-0000

Address(es) of Real Estate: **7546 S. SAGINAW AVENUE, CHICAGO, ILLINOIS 60649**

Dated this ____10th____ day of ___April___ , 20 _18_ .

**SIGNATURE PAGE TO FOLLOW.**

S Y
P 366
S N
SC Y
INT Y

3

**EQUITYBUILD, INC., a Florida corporation**

Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF ___manatee___ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___, 20 _18_ .



**JESSICA BAIER**
MY COMMISSION # GG135508
EXPIRES August 17, 2021

_(Notary Public)_

EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: _April 10, 2018_

Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio I LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| CHICAGO: | | 0.00 |
| CTA: | | 0.00 |
| TOTAL: | | 0.00 * |
| 21-30-304-020-0000 | 20180401646120 | 0-032-892-192 |

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| COUNTY: | | 0.00 |
| ILLINOIS: | | 0.00 |
| TOTAL: | | 0.00 |
| 21-30-304-020-0000 | 20180401646120 | 1-281-389-376 |

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018       Signature: _____

                                                    Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this _10th_ day of _April_, 2018

_____
          Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018       Signature: _____

                                                    Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this _10th_ day of _April_, 2018 .

_____
          Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM 2018CH09098



Doc# 1812734031 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A. YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:11 AM PG: 1 OF 3

**WARRANTY DEED**
**ILLINOIS STATUTORY**

#1890655

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

161

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOT 13 (EXCEPT THE SOUTH 22 FEET THEREOF) AND LOT 14 (EXCEPT THE NORTH 8 FEET THEREOF) IN BLOCK 15 IN JACKSON PARK HIGHLANDS, IN THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO: General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): 20-24-328-011-0000

Address(es) of Real Estate: **7051 S. BENNETT AVENUE, CHICAGO, ILLINOIS 60649**

Dated this 10th day of April, 20 18 .

**SIGNATURE PAGE TO FOLLOW.**

S
P
S
SC
UNTA

3

FILED DATE: 7/19/2018 4:32 PM 2018CH09098

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF   manatee   ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this   10th   day of   April   , 20   18   .

    (Notary Public)

> JESSICA BAIER
> MY COMMISSION # GG135506
> EXPIRES August 17, 2021

EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE   April 10, 2018

Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | CHICAGO: | 0.00 |
| | CTA: | 0.00 |
| | TOTAL: | 0.00 * |
| 20-24-328-011-0000 | 20180401646004 | 1-324-951-840 |

\* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | | 04-May-2018 |
|---|---|---|
| | COUNTY: | 0.00 |
| | ILLINOIS: | 0.00 |
| | TOTAL: | 0.00 |
| 20-24-328-011-0000 | 20180401646004 | 0-872-186-192 |

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire or hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _____April 10_____, 2018      Signature: _____

Granter or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this _____ day of _____April_____, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _____April 10_____, 2018      Signature: _____

Grantee or Agent

Subscribed and sworn to before me by the

said _____AGENT_____

this _____ day of _____April_____, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

**WARRANTY DEED**
**ILLINOIS STATUTORY**

#1890654
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453
LB 1



Doc# 1812734030 Fee $42.00

RHSP FEE:$9.00 RPRF FEE: $1.00

AFFIDAVIT FEE: $2.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:10 AM PG: 1 OF 3

THE GRANTOR(S) **EQUITYBUILD, INC.**, a Florida corporation, authorized to transact business in the State of Illinois, with an address of 1050 8th Avenue N, Naples, Florida 34102, for and in consideration of **Ten and 00/100 Dollars**, and other good and valuable consideration in hand paid, CONVEY(S) and QUIT CLAIM(S) to **SSDF7 PORTFOLIO 1 LLC**, an Illinois limited liability company, with an address of 1414 W. 62nd Place, Chicago, Illinois 60637, all interest in the following described Real Estate situated in the County of Cook in the State of Illinois, to wit:

**LOTS 28 AND 29 IN BLOCK 1 IN AVONDALE, A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

SUBJECT TO:  General real estate taxes for 2018 year and subsequent years, if any.

Permanent Real Estate Index Number(s): **19-24-203-023-0000**

Address(es) of Real Estate: **6357 S. TALMAN AVENUE, CHICAGO, ILLINOIS 60629**

Dated this _____10th_____ day of ___April___ , 20 _18_ .

**SIGNATURE PAGE TO FOLLOW.**

P 366
S
SC

3

**EQUITYBUILD, INC., a Florida corporation**



Jerry Cohen, as President

STATE OF FLORIDA, COUNTY OF _____ manatee _____ ss.

I, the undersigned, a Notary Public in and for said County and State aforesaid, DO HEREBY CERTIFY, that Jerry Cohen, personally known to me to be the President of EquityBuild, Inc., a Florida corporation, personally known to me to be the same person whose name is subscribed to the forgoing instrument, appeared before me this day in person and severally acknowledged that as such President he signed and delivered the said instrument, pursuant to authority given by corporation, as his free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and official seal, this ___10th___ day of ___April___ , 20 _18_ .

_____ (Notary Public)

> **JESSICA BAIER**
> MY COMMISSION # GG136805
> EXPIRES August 17, 2021

EXEMPT UNDER PROVISIONS OF PARAGRAPH E
SECTION 31-45, REAL ESTATE TRANSFER TAX LAW

DATE: ___April 10, 2018___

_____
Signature of Buyer, Seller or Representative

---

*Prepared by:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

---

*Mail to:*

Rock Fusco & Connelly, LLC
Ioana Salajanu
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

*Name and Address of Taxpayer:*

SSDF7 Portfolio 1 LLC
1414 W. 62nd Place
Chicago, Illinois 60637

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
|---|---|
| CHICAGO: | 0.00 |
| CTA: | 0.00 |
| TOTAL: | 0.00 * |

19-24-203-023-0000 | 20180401645951 | 0-392-261-920

* Total does not include any applicable penalty or interest due.

| REAL ESTATE TRANSFER TAX | 04-May-2018 |
|---|---|
| COUNTY: | 0.00 |
| ILLINOIS: | 0.00 |
| TOTAL: | 0.00 |

19-24-203-023-0000 | 20180401645951 | 1-677-494-560

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

FILED DATE: 7/19/2018 4:32 PM   2018CH09098

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____

Grantor or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this 10th day of _April_, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

The grantee or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated _April 10_, 2018          Signature: _____

Grantee or Agent

Subscribed and sworn to before me by the

said _____ AGENT _____

this 10th day of _April_, 2018

_____
Notary Public

PATRICIA E FLORES
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 11, 2019

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor of the first offense and of a Class A misdemeanor for subsequent offenses.

(Attached to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

EXHIBIT C

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



**Report Mortgage Fraud**
**844-768-1713**

FILED
7/20/2018 9:49 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09098



*1812734045*

Doc# 1812734045 Fee $100.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:37 AM  PG:  1 OF 32

The property identified as:   PIN: 20-35-303-096-0000

**Address:**
**Street:**   8328-32 S Ellis Ave
**Street line 2:**
**City:** Chicago        **State:** IL              **ZIP Code:** 60619

**Lender:** Liberty EBCP, LLC

**Borrower:** SSDF7 Portfolio 1 LLC

**Loan / Mortgage Amount:** $9,200,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

#1830652 – 1830658
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

1 & 6

S
P
S
SC
ANT

**Certificate number:** 37C5A37B-2980-4C6A-8000-EDCCC77DF2D4       **Execution date:** 5/2/2018

32

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

PREPARED BY AND AFTER
RECORDING RETURN TO:

Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin, Suite 2500
Southfield, Michigan 48334
Attention:  Eric Novetsky, Esq.

<br>

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

by

**SSDF7 PORTFOLIO 1 LLC,**
an Illinois limited liability company
("Mortgagor")

to

**LIBERTY EBCP, LLC,**
a Delaware limited liability company
("Mortgagee")

**ATTENTION: COUNTY CLERK - THIS MORTGAGE COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE MORTGAGES ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS MORTGAGE SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE, BUT ALSO AS A FIXTURE FILING COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE MORTGAGOR (DEBTOR) AND MORTGAGEE (SECURED PARTY) ARE SET FORTH IN THIS MORTGAGE.**

-1-

FILED DATE: 7/20/2018 9:49 AM  2018CH09098

### MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Mortgage**") is made and effective as of the _2ʳᵈ_ day of May, 2018, SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("**Mortgagor**"), having an address at 1414 E. 62ⁿᵈ Pl, Chicago, IL 60637, for the benefit of LIBERTY EBCP, LLC, a Delaware limited liability company (together with its successors and assigns, "**Mortgagee**"), having an address at 1500 JFK Boulevard, Suite 250, Philadelphia, Pennsylvania 19102.

#### W I T N E S S E T H:

WHEREAS, Mortgagor is the fee owner of that certain land located (consisting of 10 parcels) in the County of Cook, State of Illinois and being more fully described, respectively, in Exhibit A attached hereto (the "**Land**");

WHEREAS, this Mortgage is given in connection with a term loan in the principal sum of NINE MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($9,200,000) (the "**Loan**") made by Mortgagee to Mortgagor pursuant to that certain Term Loan Agreement dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by a certain Secured Promissory Note in the principal amount of the Loan, dated the date hereof made by Mortgagor to Mortgagee (such note, as the same may be amended, restated, replaced, supplemented, consolidated, severed or otherwise modified from time to time, being hereinafter referred to as the "**Note**");

WHEREAS, Mortgagor desires to secure the payment of the Debt (as hereinafter defined) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as hereinafter defined); and

WHEREAS, this Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Mortgagor of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Mortgage; (the Loan Agreement, the Note, this Mortgage, that certain additional Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith made by Mortgagor in favor of Mortgagee, those two certain Assignment of Leases and Rents of even date herewith made by Mortgagor in favor of Mortgagee (collectively, the "**Assignment of Leases**") and all other documents evidencing or securing the Debt or delivered in connection with the making of the Loan, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, are hereinafter referred to collectively as the "**Loan Documents**").

NOW THEREFORE, in consideration of the making of the Loan by Mortgagee to Mortgagor and the covenants, agreements, representations and warranties set forth in this Mortgage, Mortgagor intending to be legally bound:

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

# ARTICLE 1

## GRANTS OF SECURITY

Section 1.1   Property Mortgaged. Mortgagor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Mortgagee and its successors and assigns (to the extent assignable) all of Mortgagor's right, title and interest in the following property, rights, interests and estates now owned, or hereafter acquired by Mortgagor (collectively, the "**Property**"):

(a)   Land. The Land;

(b)   Additional Land. All additional lands, estates and development rights hereafter acquired by Mortgagor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

(c)   Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)   Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto;

(e)   Equipment. All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), now owned or hereafter acquired by Mortgagor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Mortgagor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**"). Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under Leases except to the extent that Mortgagor shall have any right or interest therein;

(f)   Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Mortgagor which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing,

-2-

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Mortgagor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**").  Notwithstanding the foregoing, Fixtures shall not include any property which tenants are entitled to remove pursuant to Leases except to the extent that Mortgagor shall have any right or interest therein;

(g)    **Personal Property**.  All right, title, and interest of Mortgagor in (i) the property and interests in the property described on Exhibit B attached hereto and incorporated herein by reference, (ii) all other personal property now or hereafter owned by Mortgagor whether or not located on or used in connection with the Land or the Improvements, (iii) all other rights and interests of Mortgagor now or hereafter held in personal property whether or not located on or used in connection with the Land or the Improvements, (iv) all personal property and rights and interests in personal property of similar type or kind hereafter acquired by Mortgagor, (v) all right, title and interest of Mortgagor in and to any personal property which may be subject to any security interests, as defined in the Uniform Commercial Code, superior in lien to the lien of this Mortgage and (vi) all proceeds of the foregoing (such personal property and proceeds, collectively, the "**Personal Property**").  Notwithstanding the foregoing, Personal Property shall not include any property belonging to tenants under Leases except to the extent that Mortgagor shall have any right or interest therein;

(h)    **Leases and Rents**.  All leases and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into, whether before or after the filing by or against Mortgagor of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") (collectively, the "**Leases**") and all right, title and interest of Mortgagor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Mortgagor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Obligations;

(i)    **Condemnation Awards**.  All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j)    **Insurance Proceeds**.  All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k)    **Tax Certiorari**.  All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

-3-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(l)     Rights.  The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Mortgagee in the Property;

(m)     Agreements.  All agreements (including, without limitation, all management agreements), contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Mortgagor thereunder;

(n)     Trademarks.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)     Proceeds.  All proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether cash, liquidation or other claims or otherwise; and

(p)     Other Rights.  Any and all other rights of Mortgagor in and to the items set forth in Subsections (a) through (o) above.

AND without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Mortgagor expressly grants to Mortgagee, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

Section 1.2     Assignment of Rents.  Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to all current and future Leases and Rents; it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Assignment of Leases and Section 7.1(h) of this Mortgage, Mortgagee grants to Mortgagor a revocable license to collect, receive, use and enjoy the Rents.  Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3     Security Agreement.  This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Property.  By executing and delivering this Mortgage, Mortgagor hereby grants to Mortgagee, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**").  If an Event of Default shall occur and be continuing, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code,

-4-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee after the occurrence and during the continuance of an Event of Default, Mortgagor shall, at its expense, assemble the Collateral or cause the Collateral to be assembled and make it available to Mortgagee at a convenient place (at the Land if tangible property) reasonably acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. The principal place of business of Mortgagor (Debtor) is as set forth on page one hereof and the address of Mortgagee (Secured Party) is as set forth on page one hereof.

Section 1.4    Fixture Filing. From the date of its recording, this Mortgage shall be effective as a fixture financing statement within the purview of Section 9-502(b) of the Illinois Uniform Commercial Code (as amended from time to time) with respect to the Property and the goods described herein, which goods are or are to become fixtures related to the Property. The addresses of Mortgagor (Debtor) and Mortgagee (Secured Party) are set forth below. This Mortgage is to be filed for recording with the Recorder of Deeds of the county or the counties where the Property is located. For this purpose, the following information is set forth.

(a)    Name and Address of Debtor:

SSDF7 Portfolio 1 LLC
1414 E. 62ND Pl., Chicago, IL 60637

(b)    Name and Address of Secured Party:

Liberty EBCP, LLC
1500 JFK Boulevard, Suite 250, Philadelphia, PA 19102

(c)    This document covers goods which are or are to become fixtures.

(d)    Debtor is the record owner of the Land.

(e)    Debtor's chief executive office is located in the State of Illinois.

(f)    Debtor's state of formation is Illinois.

(g)    Debtor's exact legal name is as set forth in the first paragraph of this Mortgage.

(h)    Debtor's organizational identification number is 06839975.

(i)    Debtor agrees that:

-5-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(i)      Where Property is in possession of a third party, Mortgagor will join with Mortgagee in notifying the third party of Mortgagee's interest and obtaining an acknowledgment from the third party that it is holding the Property for the benefit of Mortgagee;

(ii)      Mortgagor will cooperate with Mortgagee in obtaining control with respect to Property consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

(iii)      Until the Indebtedness is paid in full, Mortgagor will not change the state where it is located or change its company name without giving Mortgagee at least thirty (30) days prior written notice in each instance.

Section 1.5      Pledges of Monies Held.   Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter held by Mortgagee or on behalf of Mortgagee in connection with the Loan, including, without limitation, any sums deposited in the Collateral Account and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Mortgage.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Mortgage, shall well and truly perform the Other Obligations as set forth in this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Mortgagor's obligation to indemnify and hold harmless Mortgagee pursuant to the provisions hereof and the other Loan Documents shall survive any such payment or release.

## ARTICLE 2

## DEBT AND OBLIGATIONS SECURED

Section 2.1      Debt. This Mortgage and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Loan, with interest thereon based on the terms of the Note and the Loan Agreement (the "**Debt**").

Section 2.2      Other Obligations. This Mortgage and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)      the performance of all other obligations of Mortgagor contained herein;

(b)      the performance of each obligation of Mortgagor contained in the Loan Agreement and any other Loan Document; and

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

(c)    the performance of each obligation of Mortgagor contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3    Debt and Other Obligations.   Mortgagor's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

## ARTICLE 3

## MORTGAGOR COVENANTS

Mortgagor covenants and agrees that:

Section 3.1    Payment of Debt.   Mortgagor will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

Section 3.2    Incorporation by Reference.   All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

Section 3.3    Insurance.   Mortgagor shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Mortgagor and the Property as required pursuant to the Loan Agreement.

Section 3.4    Maintenance of Property.   Mortgagor shall cause the Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Mortgagee. Mortgagor shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

Section 3.5    Waste.   Mortgagor shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Mortgage. Mortgagor will not, without the prior written consent of Mortgagee, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.6    Payment for Labor and Materials.

(a)    Mortgagor will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials (collectively, "**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or

-7-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances.

(b)     After prior written notice to Mortgagee, Mortgagor, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Mortgage or any of the other Loan Documents, (ii) Mortgagor is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Mortgagor and from the Property or Mortgagor shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Mortgagor is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Mortgagor shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Mortgagee to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.7     Performance of Other Agreements.  Mortgagor shall observe and perform each and every term, covenant and provision to be observed or performed by Mortgagor pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8     Change of Name, Identity or Structure.  Mortgagor shall not change Mortgagor's name, identity (including its trade name or names) or, if not an individual, Mortgagor's corporate, partnership or other structure without first (a) notifying Mortgagee of such change in writing at least thirty (30) days prior to the effective date of such change, (b) taking all action required by Mortgagee for the purpose of perfecting or protecting the lien and security interest of Mortgagee and (c) in the case of a change in Mortgagor's structure, without first obtaining the prior written consent of Mortgagee. Mortgagor shall promptly notify Mortgagee in writing of any change in its organizational identification number.  If Mortgagor does not now have an organizational identification number and later obtains one, Mortgagor shall promptly notify Mortgagee in writing of such organizational identification number. Mortgagor shall execute and deliver to Mortgagee, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Mortgagee to establish or maintain the validity, perfection and priority of the security interest granted herein.  At the request of Mortgagee, Mortgagor shall execute a certificate in form satisfactory to Mortgagee listing the trade names under which Mortgagor intends to operate the Property, and representing and warranting that Mortgagor does business under no other trade name with respect to the Property.

## ARTICLE 4

## OBLIGATIONS AND RELIANCES

Section 4.1     Relationship of Mortgagor and Mortgagee.  The relationship between Mortgagor, on the one hand, and Mortgagee, on the other, is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with Mortgagor, and no term or condition of any of the Loan Agreement, the Note, this Mortgage and the other Loan Documents shall be construed so as to deem the relationship between Mortgagor, on the one hand, and Mortgagee, on the other, to be other than that of debtor and creditor.

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

Section 4.2    No Reliance on Mortgagee.  The general partners, members, principals and (if Mortgagor is a trust) beneficial owners of Mortgagor, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Mortgagor and Mortgagee are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Mortgagor is not relying on Mortgagee's expertise, business acumen or advice in connection with the Property.

Section 4.3    No Mortgagee Obligations.

(a)    Notwithstanding the provisions of Subsections 1.1(h) and (m) or Section 1.2, Mortgagee is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Mortgagee pursuant to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Mortgagee shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Mortgagee.

Section 4.4    Reliance.  Mortgagor recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Mortgage and the other Loan Documents, Mortgagee is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 8 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Mortgagee; that such reliance existed on the part of Mortgagee prior to the date hereof, that the warranties and representations are a material inducement to Mortgagee in making the Loan; and that Mortgagor would not be willing to make the Loan and accept this Mortgage in the absence of the warranties and representations as set forth in Section 8 of the Loan Agreement.

## ARTICLE 5

## FURTHER ASSURANCES

Section 5.1    Recording of Mortgage, etc.  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Mortgagee in, the Property. Mortgagor will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Mortgage, the other Loan Documents, any note or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

Section 5.2    Further Acts, etc.  Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, reasonably require, for the better conveying, assigning or transferring unto Mortgagee the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Legal Requirements relating to Mortgagor's grant of this Mortgage to Mortgagee.  Mortgagor, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements (including, without limitation, initial financing statements and amendments thereto and continuation statements) with or without the signature of Mortgagor as authorized by applicable law, to evidence more effectively the security interest of Mortgagee in the Property.  Mortgagor also ratifies its authorization for Mortgagee to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Mortgage.  Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 5.2.  To the extent not prohibited by applicable law, Mortgagor hereby ratifies all acts Mortgagee has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

Section 5.3    Changes in Tax, Debt, Credit and Documentary Stamp Laws.

(a)    If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Property, Mortgagor will pay the tax, with interest and penalties thereon, if any.  If Mortgagee is advised by counsel chosen by it that the payment of tax by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury then Mortgagee shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(b)    Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt.  If such claim, credit or deduction shall be required by law, Mortgagee shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Mortgage, or any of the other Loan Documents or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

Section 5.4    Splitting of Mortgage  This Mortgage and the Note shall, at any time until the same shall be fully paid and satisfied, at the sole election of Mortgagee, be split or divided into two or more Notes and two or more security instruments, each of which shall cover all or a portion of the Property to be more particularly described therein.  To that end, Mortgagor, upon written request of Mortgagee, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Mortgagee and/or its designee or designees substitute Notes and security instruments in

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Mortgagee.

   Section 5.5   Replacement Documents.  Upon receipt of an affidavit of an officer of Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Mortgagor will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE 6

## DUE ON SALE/ENCUMBRANCE

   Section 6.1   Mortgagee Reliance.   Mortgagor acknowledges that Mortgagee has examined and relied on the experience of Mortgagor and its general partners, members, principals and (if Mortgagor is a trust) beneficial owners, as applicable, in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Mortgagor's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations.   Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Property so as to ensure that, should Mortgagor default in the repayment of the Debt or the performance of the Other Obligations, Mortgagee can recover the Debt by a sale of the Property.

   Section 6.2   No Transfer.  Mortgagor shall not permit or suffer any Transfer to occur, unless permitted by the Loan Agreement or unless Mortgagee shall consent thereto in writing.

   Section 6.3   Mortgagee's Rights. Without obligating Mortgagee to grant any consent under Section 6.2 hereof which Mortgagee may grant or withhold in its sole discretion, Mortgagee reserves the right to condition the consent required hereunder upon: (a) a modification of the terms hereof and of the Loan Agreement, the Note or the other Loan Documents; (b) an assumption of the Loan Agreement, the Note, this Mortgage and the other Loan Documents as so modified by the proposed transferee; (c) payment of all of Mortgagee's expenses incurred in connection with such transfer; (d) Reserved; (e) Reserved; (f) Reserved; (g) the delivery of evidence satisfactory to Mortgagee that the single purpose nature and bankruptcy remoteness of Mortgagor, its shareholders, partners or members, as the case may be, following such transfers are in accordance with the Loan Documents; (h) the proposed transferee's ability to satisfy Mortgagee's then-current underwriting standards; or (i) such other conditions as Mortgagee shall determine in its reasonable discretion to be in the interest of Mortgagee, including, without limitation, the creditworthiness, reputation and qualifications of the transferee with respect to the Loan and the Property. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a Transfer without Mortgagee's consent.  This provision shall apply to every Transfer, other than any Transfer permitted pursuant to the Loan Agreement, regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous Transfer.

## ARTICLE 7

## RIGHTS AND REMEDIES UPON DEFAULT

   Section 7.1   Remedies.  Upon the occurrence and during the continuance of any Event of Default, Mortgagor agrees that Mortgagee may take such action, without notice or demand, as it deems

-11-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

advisable to protect and enforce its rights against Mortgagor and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

        (a)      declare the entire unpaid Debt to be immediately due and payable;

        (b)      institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

        (c)      with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Debt not then due, unimpaired and without loss of priority;

        (d)      sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to foreclosure or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

        (e)      institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

        (f)      recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

        (g)      right to the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Mortgagor, any guarantor, indemnitor with respect to the Loan or of any Person liable for the payment of the Debt; further, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, and Mortgagor hereby consents to the appointment of such receiver or receivers, trustee, liquidator or conservator of the Property, as applicable;

        (h)      the license granted to Mortgagor under Section 1.2 hereof shall automatically be revoked and Mortgagee may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Mortgagor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Mortgagor agrees to surrender possession of the Property and of such books, records and accounts to Mortgagee upon demand, and thereupon Mortgagee may: (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Mortgagee deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Mortgagor with respect to the Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Mortgagor;

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

(vi) require Mortgagor to vacate and surrender possession of the Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Mortgagee shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees;

(i)      exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and the Personal Property, or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Mortgagor at its expense to assemble the Fixtures, the Equipment and the Personal Property and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Fixtures, the Equipment and/or the Personal Property sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Mortgagor;

(j)      apply any sums then deposited or held in escrow or otherwise by or on behalf of Mortgagee in accordance with the terms of the Loan Agreement, this Mortgage or any other Loan Document to the payment of the following items in any order in its uncontrolled discretion:

(i)      Taxes and Other Charges;

(ii)     Insurance Premiums;

(iii)    interest on the unpaid principal balance of the Note;

(iv)     amortization of the unpaid principal balance of the Note; and/or

(v)      all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and the other Loan Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage;

(k)      pursue such other remedies as Mortgagee may have under applicable law;

(l)      apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Mortgagee shall deem to be appropriate in its discretion; and/or

(m)     Intentionally omitted.

In the event of a sale, by foreclosure or otherwise, of less than all of Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 7.2      Application of Proceeds.  The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Mortgagee pursuant to the Note, this Mortgage or the other Loan Documents may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

-13-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

Section 7.3    Right to Cure Defaults.  Upon the occurrence and during the continuance of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof.  Mortgagee is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

Section 7.4    Actions and Proceedings. Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Property.

Section 7.5    Recovery of Sums Required to Be Paid.  Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

Section 7.6    Examination of Books and Records.  At reasonable times and upon reasonable notice, Mortgagee, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Mortgagor which reflect upon its financial condition, at the Property or at any office regularly maintained by Mortgagor where the books and records are located. Mortgagee and its agents shall have the right to make copies and extracts from the foregoing records and other papers.  In addition, at reasonable times and upon reasonable notice, Mortgagee, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Mortgagor pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Mortgagor where the books and records are located.  This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

Section 7.7    Other Rights, etc.

(a)    The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (i) the failure of Mortgagee to comply with any request of Mortgagor or any guarantor or indemnitor with respect to the Loan  to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the other Loan Documents.

-14-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(b)     It is agreed that the risk of loss or damage to the Property is on Mortgagor, and Mortgagee shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Mortgagee shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Mortgagee's possession.

(c)     Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 7.8     Right to Release Any Portion of the Property. Mortgagee may release any portion of the Property for such consideration as Mortgagee may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Mortgagee for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a lien and security interest in the remaining portion of the Property.

Section 7.9     Violation of Laws. If the Property is not in material compliance with Legal Requirements, Mortgagee may impose additional requirements upon Mortgagor in connection herewith including, without limitation, monetary reserves or financial equivalents.

Section 7.10     Recourse and Choice of Remedies. Notwithstanding any other provision of this Mortgage or the Loan Agreement, Mortgagee is entitled to enforce the obligations of Mortgagor contained in Sections 9.2 and 9.3 herein without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Mortgagee commences a foreclosure action against the Property, Mortgagee is entitled to pursue a deficiency judgment with respect to such obligations against Mortgagor with respect to the Loan. The provisions of Sections 9.2 and 9.3 herein and are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Mortgage or the other Loan Documents, and Mortgagor and any guarantor or indemnitor with respect to the Loan are fully and personally liable for the obligations pursuant to Sections 9.2 and 9.3 herein. The liability of Mortgagor with respect to the Loan pursuant to Sections 9.2 and 9.3 herein is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Mortgagee from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Mortgage and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Mortgagor pursuant to Sections 9.2 and 9.3 herein, whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions. In addition, Mortgagee shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in the ADA and Environmental Indemnity.

Section 7.11     Right of Entry. Upon reasonable notice to Mortgagor, Mortgagee and its agents shall have the right to enter and inspect the Property at all reasonable times.

-15-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

## ARTICLE 8

### INTENTIONALLY OMITTED

## ARTICLE 9

### INDEMNIFICATION

**Section 9.1**   Intentionally Omitted.

**Section 9.2**   Mortgage and/or Intangible Tax.   Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Mortgage, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

**Section 9.3**   ERISA Indemnification.   Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Mortgagee's sole discretion) that Mortgagee may incur, directly or indirectly, as a result of a default under Sections 8.19 and 9.4 of the Loan Agreement.

**Section 9.4**   Intentionally Omitted.

**Section 9.5**   Duty to Defend; Attorneys' Fees and Other Fees and Expenses.   Upon written request by any Indemnified Party, Mortgagor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties.   Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Mortgagor and any Indemnified Party and Mortgagor and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Mortgagor, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Mortgagor's consent, which consent shall not be unreasonably withheld.   Upon demand, Mortgagor shall pay or, in the sole and absolute discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

## ARTICLE 10

### WAIVERS

**Section 10.1**   Waiver of Counterclaim.   To the extent permitted by applicable law, Mortgagor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Mortgagee arising out of or in any way connected with this Mortgage, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

-16-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

Section 10.2   Marshalling and Other Matters. To the extent permitted by applicable law, Mortgagor hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Mortgage and on behalf of all Persons to the extent permitted by applicable law.

Section 10.3   Waiver of Notice. To the extent permitted by applicable law, Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

Section 10.4   Waiver of Statute of Limitations. To the extent permitted by applicable law, Mortgagor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

Section 10.5   Survival. The indemnifications made pursuant to Sections 9.2, 9.3 and 9.5 herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by: any satisfaction or other termination of this Mortgage, any assignment or other transfer of all or any portion of this Mortgage or Mortgagee's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Mortgagee's rights and remedies pursuant hereto including but not limited to foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Mortgagor or by Mortgagee following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Mortgagor from the obligations pursuant hereto.

## ARTICLE 11

## INTENTIONALLY OMITTED

## ARTICLE 12

## NOTICES

Section 12.1   Notices. All notices or other written communications hereunder shall be delivered in accordance with Section 15.1 of the Loan Agreement.

## ARTICLE 13

## APPLICABLE LAW

Section 13.1   GOVERNING LAW; WAIVER OF JURY TRIAL.

-17-

FILED DATE: 7/20/2018 9:49 AM 2018CH09098

(A)    THIS MORTGAGE WAS NEGOTIATED IN THE COMMONWEALTH OF PENNSYLVANIA, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY GRANTOR IN THE COMMONWEALTH OF PENNSYLVANIA, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE COMMONWEALTH OF PENNSYLVANIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THE MORTGAGE, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE LAND IS LOCATED (ILLINOIS). TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS MORTGAGE, THE NOTE AND/OR THE OTHER LOAN DOCUMENTS. IN THE EVENT THAT ANY PROVISION OF THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT CONFLICTS WITH APPLICABLE LAW, SUCH CONFLICT SHALL NOT AFFECT OTHER PROVISIONS OF MORTGAGE OR THE APPLICABLE LOAN DOCUMENT WHICH CAN BE GIVEN EFFECT WITHOUT THE CONFLICTING PROVISIONS, AND TO THIS END THE PROVISIONS OF THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS ARE DECLARED TO BE SEVERABLE.

(B)    TO THE FULLEST EXTENT PERMITTED BY LAW, MORTGAGOR AND MORTGAGEE HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION RELATING TO THE LOAN AND/OR THE LOAN DOCUMENTS.

Section 13.2    Usury Laws. Notwithstanding anything to the contrary, (a) all agreements and communications between Mortgagor and Mortgagee are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Mortgagee shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Mortgagor to Mortgagee, and (c) if through any contingency or event, Mortgagee receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Mortgagor to Mortgagee, or if there is no such indebtedness, shall immediately be returned to Mortgagor.

Section 13.3    Provisions Subject to Applicable Law. All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of the term shall not be affected thereby.

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

Section 13.4     Intentionally Omitted.

Section 13.5     Business Purpose

Mortgagor warrants that this Mortgage is delivered in connection with a business or commercial loan transaction.

Section 13.6     Intentionally Omitted.

## ARTICLE 14

## DEFINITIONS

Section 14.1     Definitions. All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "**Mortgagor**" shall mean "each Mortgagor and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Mortgagee**" shall mean "Mortgagee and any successor under the Loan Agreement," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**legal fees**" and "**counsel fees**" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE 15

## MISCELLANEOUS PROVISIONS

Section 15.1     No Oral Change. This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 15.2     Successors and Assigns. The provisions hereof shall be binding upon and shall inure to the benefit of the Mortgagor, its successors and assigns (including without limitation subsequent owners of the Property or the leasehold estate of the Property or any part thereof); shall be binding upon and shall inure to the benefit of Mortgagee, its successors and assigns and any future holder of the Note hereby secured, and any successors or assigns of any future holder of the Note. In the event the ownership of the Property or any leasehold estate that may be covered by this Mortgage, becomes vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest with reference to this instrument and the debt hereby secured in the same manner as with the Mortgagor, and may alter the interest rate and/or alter or extend the terms of payment of the debt secured hereby without notice to Mortgagor and such action shall in no way affect the liability of Mortgagor hereunder or under the Note hereby secured or the lien or priority of this Mortgage with respect to any part of the Property covered hereby.

Section 15.3     Secondary Market

-19-

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

(a)    Transfer of Loan. Mortgagee may, at any time, without notice to or the consent of Mortgagor (i) sell, transfer or assign the Loan (or any portion thereof) and the Loan Documents, and any or all servicing rights with respect thereto, (ii) sell or grant participations in the Loan ("**Participations**") or (iii) securitize the Loan or any portion thereof in one or more pooled asset securitizations (the transactions referred to in clauses (i), (ii) and (iii) shall herein be referred to collectively as "Secondary Market Transactions" and the transactions referred to in clause (iii) shall herein be referred to as a "Securitization". Any certificates, notes or other securities issued in connection with a Securitization shall be referred to herein as "Securities". In connection with any Secondary Market Transaction, Mortgagee may forward to each purchaser, transferee, assignee, servicer, trustee, participant, or investor in such Secondary Market Transactions (collectively, the "Investor" or any rating agency rating such Secondary Market Transaction (each, a "**Rating Agency**") and each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Mortgagee now has or may hereafter acquire relating to the debt secured hereby and to Mortgagor, any Guarantor, and the Property, whether furnished by Mortgagor, any Guarantor, any Property, or otherwise, as Mortgagee determines necessary or desirable. Mortgagor irrevocably waives any and all rights it may have under applicable laws to prohibit such disclosure, including but not limited to any right of privacy. Mortgagor shall be responsible for the payment of all costs and expenses of any servicer chosen by Mortgagee to service the Loan. Mortgagor, at Mortgagor's expense, only for its own costs in cooperating (but not for Mortgagee's costs) including without limitation, Mortgagor's legal fees in connection with any of the following, agrees to cooperate with all reasonable requests of Mortgagee in connection with any of the foregoing including, without limitation, executing any financing statements or other documents deemed necessary by Mortgagee or its transferee to create, perfect or preserve the rights and interest to be acquired by such transferee, provide any updated financial information with appropriate verification through auditors letters, deliver a negative assurances letter (with respect to such sections as Mortgagor is responsible pursuant to Section 15.3(c) hereof) only if the Securities being offered are in a Rule 144A offering or a registered public offering, revised organizational documents and counsel opinions satisfactory to the Rating Agencies, executed amendments to the Loan Documents, and review information regarding Mortgagor, any Guarantor, and the Property contained in a preliminary or final private placement memorandum, prospectus, prospectus supplements or other disclosure document, providing a mortgagor estoppel certificate and such other information about Mortgagor, any Guarantor or the Property as Mortgagee may reasonably require for Mortgagee's offering materials; provided, however, in each instance of a modification of, or amendment to, the Loan and Loan Documents or splitting or severing all or any portion of the Loan, Mortgagee shall comply with this Section 15 and no such modification or amendment shall change the stated maturity date of the Loan or any other material term of the Loan.

(b)    Dissemination of Information. Mortgagor acknowledges that Mortgagee may provide to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, ownership, purchase, or participation of the Loan, or any Secondary Market Transaction including, without limitation, any Rating Agency and any entity maintaining databases on the underwriting and performance of commercial mortgage loans, any and all information which Mortgagee now has or may hereafter acquire relating to the Loan, the Property, Mortgagor or any Guarantor, as Mortgagee determines necessary or desirable and that such information may be included in disclosure documents in connection with a Secondary Market Transaction, including, without limitation, a prospectus, prospectus supplement, offering memorandum, private placement memorandum or similar document (each, a "**Disclosure Document**") and also may be included in any filing with the Securities and Exchange Commission pursuant to the Securities Act or the Securities Exchange Act. To the fullest extent permitted under applicable law, Mortgagor irrevocably waives all rights, if any, to prohibit such disclosure, including, without limitation, any right of privacy.

(c)    Secondary Market Transaction. Mortgagor and each Guarantor agrees to provide in connection with each Disclosure Document, an indemnification certificate: (i) certifying that the

-20-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

information contained in the sections describing Mortgagor, any Guarantor and the Property set forth in such Disclosure Document has carefully been examined, and that, to such indemnitor's knowledge, such sections do not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; (ii) indemnifying Mortgagee (and for purposes of this Section 15.3(c), Mortgagee shall include its officers and directors) that (1) has filed the registration statement, if any, relating to the Secondary Market Transaction and/or (2) which is acting as issuer, depositor, sponsor and/or in a similar capacity with respect to the Secondary Market Transaction (any person described in (1) or (2), an "**Issuer Person**"), and each director and officer of any Issuer Person, and each person who controls any Issuer Person with the meaning of Section 15 of the Securities Act or Section 20 of the Securities Exchange Act (collectively, "**Issuer Group**"), for any losses to which Mortgagee or the Issuer Group may become subject insofar as the losses arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated in such sections necessary in order to make the statements in such sections or in light of the circumstances under which they were made, not misleading (collectively, "**Securities Liabilities**"); and (iii) agreeing to reimburse Mortgagee and the Issuer Group for any legal or other expenses reasonably incurred by Mortgagee and the Issuer Group in investigating or defending the Securities Liabilities; provided, however, that indemnitor will be liable under clauses (ii) or (iii) above only to the extent that such Securities Liabilities arise out of, or are based upon, any such untrue statement or omission made therein in reliance upon, and in conformity with, information furnished to Mortgagee or any member of the Issuer Group by or on behalf of Mortgagor or a Guarantor in connection with the preparation of the Disclosure Documents or in connection with the underwriting of the Loan, including, without limitation, financial statements of Mortgagor or any Guarantor, and operating statements, rent rolls, environmental site assessment reports and property condition reports with respect to the Property. This indemnity is in addition to any liability which Mortgagor may otherwise have and shall be effective whether or not an indemnification certificate described above is provided and shall be applicable based on information previously provided by or on behalf of Mortgagor or a Guarantor if the indemnification certificate is not provided.

Section 15.4     Inapplicable Provisions.   If any term, covenant or condition of the Loan Agreement, the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Mortgage shall be construed without such provision.

Section 15.5     Headings, etc.   The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 15.6     Number and Gender/Joint and Several.   Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. If Mortgagor consists of more than one Person, all representations, warranties, covenants, obligations and liabilities of each such Person hereunder shall be joint and several. A default hereunder by any such Person shall be deemed a default by all such Persons and Mortgagor. With respect to the definition of "Mortgagor", except where the context otherwise provides, (i) any representations contained herein of Mortgagor shall be applicable to each Mortgagor, (ii) any affirmative covenants contained herein shall be deemed to be covenants of each Mortgagor and shall require performance by all Mortgagors, (iii) any negative covenants contained herein shall be deemed to be covenants of each Mortgagor, and shall be breached if any Mortgagor fails to comply therewith, (iv) the occurrence of any Event of Default with respect to any Mortgagor shall be deemed to be an Event of Default hereunder, and (v) any Debt and/or Other Obligations of Mortgagor shall be deemed to include any Debt and/or Other Obligations of the Mortgagor, or any Debt and/or Other Obligations of any one of them. The representations, warranties and covenants contained herein shall be read to apply to the individual Persons comprising Mortgagor when the context so requires, but a breach of any such

-21-

FILED DATE: 7/20/2018 9:49 AM  2018CH09098

representation, warranty or covenant or a breach of any obligation under this Mortgage shall be deemed a breach by all such Persons and Mortgagor, entitling Mortgagee to exercise all of their rights and remedies under this Mortgage and under applicable law. .

Section 15.7    Subrogation.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Mortgagor's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

Section 15.8    Entire Agreement.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto. Mortgagor hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Mortgagee to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

Section 15.9    Limitation on Mortgagee's Responsibility.  No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Mortgagee, nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession."

Section 15.10   Loan Agreement.  This Mortgage is made pursuant to the Loan Agreement and is subject to all of the provisions of the Loan Agreement including, without limitation, the provisions thereof entitling Mortgagee to declare the entire indebtedness secured hereby to be immediately due and payable, all of which provisions are incorporated herein with the same force and with like effect as if they were fully set forth herein at length and made a part hereof.

Section 15.11   Intentionally Omitted.

Section 15.12   Receipt of Mortgage.

MORTGAGOR CERTIFIES AND ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE AND CORRECT COPY OF THIS MORTGAGE WITHOUT CHARGE.

-22-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

## ARTICLE 16

### STATE-SPECIFIC PROVISIONS

Section 16.1    <u>Inconsistencies</u>. In the event of any inconsistencies between the terms and conditions of this Article 16 and the other provisions of this Mortgage, the terms and conditions of this Article 16 shall control and be binding.

Section 16.2    <u>Compliance with Illinois Mortgage Foreclosure Law</u>.

(a)    In the event that any provision in this Mortgage shall be inconsistent with any provisions of the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 *et. seq.* (as amended from time to time the "**IMF Law**"), the provision of the IMF Law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the IMF Law.

(b)    Mortgagor and Mortgagee shall have the benefit of all of the provisions of the IMF Law, including all amendments thereto which may become effective from time to time after the date hereof. In the event any provision of the IMF Law which is specifically referred to herein may be repealed, Mortgagee shall have the benefit of such provision as most recently existing prior to such repeal, as though the same were incorporated herein by express reference.

(c)    If any provision of this Mortgage shall grant to Mortgagee any rights or remedies upon default of Mortgagor which are more limited than the rights that would otherwise be vested in Mortgagee under the IMF Law in the absence of said provision, Mortgagee shall be vested with the rights granted in the IMF Law to the full extent not prohibited by law.

(d)    In addition to any provision of this Mortgage authorizing Mortgagee to take or be placed in possession of the Property, or for the appointment of a receiver, Mortgagee shall have the right, in accordance with Sections 15-1701 and 15-1702 of the IMF Law, to be placed in possession of the Property or at its request to have a receiver appointed, and such receiver, or Mortgagee, if and when placed in possession, shall have, in addition to any other powers provided in this Mortgage, all rights, powers, immunities and duties as provided for in Sections 15-1701, 15-1703 and 15-1704 of the IMF Law.

Section 16.3    <u>Waiver of Right of Redemption and Other Rights</u>.   To the full extent permitted by law, Mortgagor agrees that it will not at any time or in any manner whatsoever take any advantage of any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force, nor take any advantage of any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or after such sale, claim or exercise any rights under any statute now or hereafter in force to redeem the Property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof.   To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights it may have to require that the Property be sold as separate tracts or units in the event of foreclosure. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption and reinstatement under the IMF Law, on its own behalf, on behalf of all persons claiming or having an interest (direct or indirect) by, through or under Mortgagor and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Mortgagor and such other persons are and shall be deemed to be hereby waived to the full extent permitted by applicable law. To the full extent permitted by law, Mortgagor agrees that it will not, by invoking or utilizing any applicable law or laws or otherwise, hinder, delay or impede

-23-

the exercise of any right, power or remedy herein or otherwise granted or delegated to Mortgagee, but will permit the exercise of every such right, power and remedy as though no such law or laws have been or will have been made or enacted. To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any defense which would not be good and valid in an action at law upon the Note. Mortgagor acknowledges that the Property does not constitute agricultural real estate as defined in Section 5/15-1201 of the IMF Law or residential real estate as defined in Section 5/15-1219 of the IMF Law.

Section 16.4    Use of Proceeds.  Mortgagor represents and warrants to Mortgagee (i) that the proceeds of the Note secured by this Mortgage will be used for the purposes specified in 815 ILCS 205/4(1)(l) (or any substitute, amended or replacement statute), and that the indebtedness secured hereby constitutes a business loan to a business entity which comes within the purview of said 815 ILCS 205/4(1)(l), and (ii) that the Loan evidenced by the Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C. §1601 et seq.

Section 16.5    Interest Laws.  It being the intention of Mortgagee and Mortgagor to comply with the laws of the State of Illinois, it is agreed that notwithstanding any provision to the contrary in the Note, this Mortgage or any of the other Loan Documents, no such provision shall require the payment or permit the collection of any amount ("Excess Interest") in excess of the maximum amount of interest permitted by law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness evidenced by the Note. If any Excess Interest is provided for, or is adjudicated to be provided for, in the Note, this Mortgage or any of the other Loan Documents, then in such event: (a) the provisions of this Section 16.5 shall govern and control; (b) neither Mortgagor nor any other party obligated under the terms of the Note or any of the other Loan Documents shall be obligated to pay any Excess Interest; (c) any Excess Interest that Mortgagee may have received hereunder shall, at the option of Mortgagee, be (i) applied as a credit against the then unpaid principal balance under the Note, accrued and unpaid interest thereon not to exceed the maximum amount permitted by law, or both, (ii) refunded to the payor thereof, or (iii) any combination of the foregoing; (d) the Interest Rate (as that term is defined in the Note) shall be subject to automatic reduction to the maximum lawful contract rate allowed under the applicable usury laws of the aforesaid State, and the Note, this Mortgage and the other Loan Documents shall be deemed to be automatically reformed and modified to reflect such reduction in the Interest Rate; and (e) neither Mortgagor nor any other party obligated under the terms of the Note or any of the other Loan Documents shall have any action against Mortgagee for any damages whatsoever arising out of the payment or collection of any Excess Interest.

Section 16.6    Other Amounts Secured; Maximum Indebtedness.  Mortgagor acknowledges and agrees that this Mortgage secures the entire principal amount of the Note and interest accrued thereon, regardless of whether any or all of the loan proceeds are disbursed on or after the date hereof, and regardless of whether the outstanding principal is repaid in whole or part or are future advances made at a later date, any and all litigation and other expenses and any other amounts as provided herein or in any of the other Loan Documents, including, without limitation, the payment of any and all loan commissions, service charges, liquidated damages, expenses and advances due to or paid or incurred by Mortgagee in connection with the Loan, all in accordance with the loan commitment issued in connection with this transaction and the Loan Documents. Notwithstanding anything in this Mortgage to the contrary, under no circumstances shall the maximum principal indebtedness secured hereby exceed EIGHTEEN MILLION FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($18,400,000), plus interest thereon and any disbursements made for the payment of taxes, special assessments, or insurance on the Property, with interest on such disbursements. It is agreed that any future advances made by Mortgagee for the benefit of Mortgagor from time to time under this Mortgage or the other Loan Documents and whether or not such advances are obligatory or are made at the option of Mortgagee, made at any time from and after the date of this Mortgage, and all interest accruing thereon, shall be equally secured by this

-24-

FILED DATE: 7/20/2018 9:49 AM  2018CH09098

Mortgage and shall have the same priority as all amounts, if any, advanced as of the date hereof and shall be subject to all of the terms and provisions of this Mortgage. This Mortgage shall be valid and have priority to the extent of the full amount of the indebtedness secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law.

Section 16.7 <u>Adjustable Mortgage Loan Provisions</u>. The Note which this Mortgage secures is an adjustable note on which the interest rate may be adjusted from time to time in accordance with the terms and provisions set forth in the Note.

Section 16.8 <u>Deed of Trust</u>. If title to the Property or any part thereof is now or hereafter becomes vested in a trustee, any prohibition or restriction contained herein against the creation of any lien on the Property shall be construed as a similar prohibition or restriction against the creation of any lien on or security interest in the beneficial interest of such trust.

Section 16.9 <u>Collateral Protection Act</u>. Unless Mortgagor provides Mortgagee with evidence of the insurance required by this Mortgage or any other Loan Document, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Property or any other collateral for the indebtedness secured hereby. This insurance may, but need not, protect Mortgagor's interests. The coverage Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property or any other collateral for the indebtedness secured hereby. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing Mortgagee with evidence that Mortgagor has obtained insurance as required under this Mortgage or any other Loan Document. If Mortgagee purchases insurance for the Property or any other collateral for the indebtedness secured hereby, Mortgagor shall be responsible for the costs of that insurance, including interest in any other charges that Mortgagee may lawfully impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the indebtedness secured hereby. The costs of the insurance may be more than the cost of insurance that Mortgagor may be able to obtain on its own. For purposes of the Illinois Collateral Protection Act, 815 ILCS 180/1 *et. seq.*, Mortgagor hereby acknowledges Mortgagee's right pursuant to this paragraph to obtain collateral protection insurance.

Section 16.10 <u>Rights of Tenants</u>. Mortgagee shall have the right and option to commence a civil action to foreclose this Mortgage and to obtain a decree of foreclosure and sale subject to the rights of any tenant or tenants of the Property having an interest in the Property prior to that of Mortgagee. The failure to join any such tenant or tenants of the Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Mortgagor as a defense in any civil action instituted to collect the Obligations, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Property, any statue or rule of law at any time existing to the contrary notwithstanding.

[Remainder of page intentionally left blank]

-25-

FILED DATE: 7/20/2018 9:49 AM 2018CH09098

MORTGAGOR ACKNOWLEDGES THAT IT HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS MORTGAGE INCLUDING, WITHOUT LIMITATION, THE WAIVER OF JURY TRIAL AND HAS BEEN ADVISED BY COUNSEL AS NECESSARY OR APPROPRIATE.

IN WITNESS WHEREOF, this Mortgage has been executed by Mortgagor as of the day and year first above written.

**MORTGAGOR:**

SSDF7 PORTFOLIO 1 LLC,
an Illinois limited liability company

By:    SSDF7 HOLDCO 1 LLC,
        a Delaware limited liability company,
        its Managing Member

By:    South Shore Property Holdings LLC,
        a Delaware limited liability company,
        its Managing Manager

By:    _____
        Jerome H. Cohen
Its:   Managing Member

STATE OF _Florida_____, COUNTY OF _manatee_. SS.:

    Personally appeared before me, the undersigned, a Notary Public for the state and county aforesaid, JEROME H. COHEN, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that he executed the within instrument for the purposes therein contained, and who further acknowledged that he is the Managing Member of SOUTH SHORE PROPERTY HOLDINGS LLC, a Delaware limited liability company, which is the Managing Manager of SSDF7 HOLDCO 1 LLC, a Delaware limited liability company which is the Managing Member of SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("Borrower"), and is authorized to execute this instrument on behalf of Borrower.

Given under my hand and notarial seal, this 25 day of _April_____, 2018.

_____      My commission expires _August 17 2021_
Notary Public



JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

Signature Page to Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

## EXHIBIT A

### LEGAL DESCRIPTION

### SITE NO. 1

**PARCEL 1:**
**8326-32 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-35-303-096-0000**

THE NORTH 87.50 FEET OF LOTS 11 TO 24 INCLUSIVE (TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF THE SOUTHWEST ¼ OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**PARCEL 2:**
**8334-40 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-35-303-097-0000**

THE SOUTHERLY 87.50 FEET OF THE NORTH 175 FEET OF LOTS 11 TO 24 INCLUSIVE (TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF THE SOUTHWEST ¼ OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

**PARCEL 3:**
**8342 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-35-303-098-0000**

THE SOUTHERLY 87.50 FEET OF THE NORTH 262.50 FEET OF LOTS 11 TO 24 (TAKEN AS A TRACT) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF THE SOUTHWEST ¼ OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

**PARCEL 4:**
**8352 S. ELLIS AVENUE, CHICAGO, ILLINOIS 60649 / PIN #20-35-303-099-0000**

LOTS 11 TO 24 INCLUSIVE, TAKEN AS TRACT, (EXCEPT THE NORTH 262.50 FEET THEREOF) IN BLOCK 1 IN MOORE'S SUBDIVISION OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

### SITE NO. 2

**6356 S. CALIFORNIA AVENUE, CHICAGO, ILLINOIS 60629 / PIN# 19-24-107-037-0000**

LOTS 26 AND 27 IN BLOCK 1 IN JOHN BAIN'S SUBDIVISION OF THE EAST ½ OF THE EAST ½ OF THE NORTHWEST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Exhibit A

FILED DATE: 7/20/2018 9:49 AM 2018CH09098

**SITE NO. 3**
**6357 S. TALMAN AVENUE, CHICAGO, ILLINOIS 60629 / PIN# 19-24-203-023-0000**

LOTS 28 AND 29 IN BLOCK 1 IN AVONDALE, A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 4**
**7051 S. BENNETT AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 20-24-328-011-0000**

LOT 13 (EXCEPT THE SOUTH 22 FEET THEREOF) AND LOT 14 (EXCEPT THE NORTH 8 FEET THEREOF) IN BLOCK 15 IN JACKSON PARK HIGHLANDS, IN THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 5**
**7442 S. CALUMET AVENUE, Chicago, ILLINOIS 60619 / PIN# 20-27-122-027-0000**

LOT 5 (EXCEPT THE SOUTH 8 FEET THEREOF) IN BLOCK 11 IN PRESCOTT'S SUBDIVISION OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 27, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 6**
**7201 S. DORCHESTER AVENUE, CHICAGO, ILLINOIS 60619 / PIN# 20-26-210-001-0000**

LOTS 14 AND 15 IN BLOCK 10 IN JOHN G. SHORTALL TRUSTEE'S SUBDIVISION OF THE NORTH ½ OF THE NORTHEAST ¼ OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 7**
**7546 S. SAGINAW AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-304-020-0000**

THE SOUTH ½ OF LOT 10 IN DIVISION 2 OF WESTFALL'S SUBDIVISION OF 208 ACRES, BEING THE EAST ½ OF THE SOUTHWEST ¼ AND THE SOUTHEAST FRACTIONAL ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Exhibit A

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

## EXHIBIT B

### DESCRIPTION OF PERSONAL PROPERTY

(a)     All personal property (including, without limitation, all goods, supplies, equipment, furniture, furnishings, fixtures, machinery, inventory, and construction materials and software embedded in any of the foregoing) in which Mortgagor now or hereafter acquires an interest or right, which is now or hereafter located on or affixed to the Land or the Improvements or used or useful in the operation, use, or occupancy thereof or the construction of any Improvements thereon, together with any interest of Mortgagor in and to personal property which is leased or subject to any superior security interest, and all books, records, leases and other agreements, documents, and instruments of whatever kind or character, relating to the Land, Improvements, or such personal property;

(b)     All fees, income, rents, issues, profits, earnings, receipts, royalties, and revenues which, after the date hereof and while any portion of the Obligations remains unpaid or unperformed, may accrue from such personal property or any part thereof or from the Land, the Improvements or any other part of the Property, or which may be received or receivable by Mortgagor from any hiring, using, letting, leasing, subhiring, subletting, subleasing, occupancy, operation, or use thereof;

(c)     All of Mortgagor's present and future rights to receive payments of money, services, or property, including, without limitation, rights to all deposits from tenants of the Land or Improvements, sums deposited in the Collateral Account, chattel paper (whether tangible or electronic) notes, drafts, contract rights, instruments, general intangibles, as presently or hereafter in effect, and principal, interest and payments due on account of goods sold or leased, services rendered, loans made or credit extended, together with title to or interest in all agreements, documents, and instruments, evidencing, securing or guarantying the same;

(d)     All other intangible property (and related software) and rights relating to the Land, the Improvements, the personal property described in Paragraph (a) above or the operation, occupancy, or use thereof, including, without limitation, all governmental and non- governmental permits, licenses, and approvals relating to construction on or operation, occupancy, or use of the Land or Improvements, all names under or by which the Land or Improvements may at any time be operated or known, all rights to carry on business under any such names, or any variant thereof, all trade names and trademarks, servicemarks, logos and copyrights, relating in any way to the Land or the Improvements, and all good will and software in any way relating to the Land or the Improvements;

(e)     All as-extracted collateral produced from or allocated to the Land, including, without limitation, oil, gas, and other hydrocarbons and other minerals.

(f)     Mortgagor's rights under all insurance policies covering the Land (including, but not limited to, title insurance policies), the Improvements, the Personal Property, and the other parts of the Property and any and all proceeds, loss payments, and premium refunds payable regarding the same;

(g)     All reserves, deferred payments, deposits, refunds, cost savings, and payments of any kind relating to the construction of any Improvements on the Land;

(h)     All water stock relating to the Land;

(i)     All causes of action, claims, compensation, and recoveries for any damage to, destruction of, or condemnation or taking of the Land, the Improvements, the Personal Property, or any other part of the Property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

injury to the Land, the Improvements, the Personal Property, or any other part of the Property, or for any loss or diminution in value of the Premises, the Improvements, the Personal Property, or any other part of the Property;

     (j)    All architectural, structural, mechanical, and engineering plans and specifications prepared for construction of Improvements or extraction of minerals or gravel from the Premises and all studies, data, and drawings related thereto; and also all contracts and agreements of the Mortgagor relating to the aforesaid plans and specifications or to the aforesaid studies, data, and drawings or to the construction of Improvements on or extraction of minerals or gravel from the Land;

     (k)    All commercial tort claims Mortgagor now has or hereafter acquires relating to the properties, rights, titles, and interests referred to in this Exhibit B or elsewhere in the Mortgage to which this Exhibit B is attached;

     (l)    All letter of credit rights (whether or not the letter of credit is evidenced by a writing) Mortgagor now has or hereafter requires relating to the properties, rights, titles and interest referred to in the Mortgage to which this Exhibit B is attached;

     (m)    All proceeds from sale or disposition of any of the aforesaid collateral and all supporting obligations ancillary thereto or arising in any way in connection therewith;

     (n)    All Mortgagor's rights in proceeds of the Loan evidenced by the Note;

     (o)    All of Mortgagor's rights in any and all warranties and guaranties with respect to any goods, materials, supplies, chattels, fixtures, equipment, machinery, building materials, and work in progress attached to or placed in or on any part of the Land, or used in connection with any construction on the Land;

     (p)    All of Mortgagor's rights to and under any purchase agreements, including, without limitation, any deposits paid to Mortgagor pursuant to such purchase agreements; and

     (q)    All of Mortgagor's rights in all plans, specifications, plats, agreements, assessments, reports, and surveys related to the Premises.

As used in this Exhibit B the terms "Land", "Loan Agreement", "Obligations", "Note", "Property", "Improvements", and "Personal Property" shall have the meanings set forth in the Mortgage to which this Exhibit B is attached.

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 7/20/2018 9:49 AM 2018CH09098

**Illinois Anti-Predatory Lending Database Program**

**Certificate of Exemption**



**Report Mortgage Fraud**
**844-768-1713**

FILED
7/20/2018 9:49 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH09098



Doc# 1812734048 Fee $100.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 05/07/2018 10:38 AM PG: 1 OF 32

---

The property identified as:     PIN: 20-03-302-002-0000

**Address:**
**Street:**         4317-19 S Michigan Ave
**Street line 2:**
**City:** Chicago          **State:** IL          **ZIP Code:** 60653

**Lender:** Liberty EBCP, LLC

**Borrower:** SSDF7 Portfolio 1 LLC

**Loan / Mortgage Amount:** $9,200,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

#1890659-1890668
Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

4 of 6

S Y
P 32
S 8
SC Y
ANTP

**Certificate number:** FB6DF695-99FE-4C9D-B910-E41BDAC42B59          **Execution date:** 5/2/2018

32

FILED DATE: 7/20/2018 9:49 AM  2018CH09098

PREPARED BY AND AFTER
RECORDING RETURN TO:

Jaffe, Raitt, Heuer & Weiss, PC
27777 Franklin, Suite 2500
Southfield, Michigan 48334
Attention: Eric Novetsky, Esq.

MORTGAGE, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING

by

**SSDF7 PORTFOLIO 1 LLC,**
an Illinois limited liability company
("**Mortgagor**")

to

**LIBERTY EBCP, LLC,**
a Delaware limited liability company
("**Mortgagee**")

**ATTENTION: COUNTY CLERK - THIS MORTGAGE COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE MORTGAGES ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS MORTGAGE SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A MORTGAGE, BUT ALSO AS A FIXTURE FILING COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESSES OF THE MORTGAGOR (DEBTOR) AND MORTGAGEE (SECURED PARTY) ARE SET FORTH IN THIS MORTGAGE.**

4072243.v2

-1-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Mortgage**") is made and effective as of the __27th__ day of May, 2018, SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("**Mortgagor**"), having an address at 1414 E. 62nd Pl, Chicago, IL 60637, for the benefit of LIBERTY EBCP, LLC, a Delaware limited liability company (together with its successors and assigns, "**Mortgagee**"), having an address at 1500 JFK Boulevard, Suite 250, Philadelphia, Pennsylvania 19102.

### W I T N E S S E T H :

WHEREAS, Mortgagor is the fee owner of that certain land located (consisting of 10 parcels) in the County of Cook, State of Illinois and being more fully described, respectively, in Exhibit A attached hereto (the "**Land**");

WHEREAS, this Mortgage is given in connection with a term loan in the principal sum of NINE MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($9,200,000) (the "**Loan**") made by Mortgagee to Mortgagor pursuant to that certain Term Loan Agreement dated as of the date hereof (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by a certain Secured Promissory Note in the principal amount of the Loan, dated the date hereof made by Mortgagor to Mortgagee (such note, as the same may be amended, restated, replaced, supplemented, consolidated, severed or otherwise modified from time to time, being hereinafter referred to as the "**Note**");

WHEREAS, Mortgagor desires to secure the payment of the Debt (as hereinafter defined) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as hereinafter defined); and

WHEREAS, this Mortgage is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Mortgagor of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Mortgage; (the Loan Agreement, the Note, this Mortgage, that certain additional Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith made by Mortgagor in favor of Mortgagee, those two certain Assignment of Leases and Rents of even date herewith made by Mortgagor in favor of Mortgagee (collectively, the "**Assignment of Leases**") and all other documents evidencing or securing the Debt or delivered in connection with the making of the Loan, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, are hereinafter referred to collectively as the "**Loan Documents**").

NOW THEREFORE, in consideration of the making of the Loan by Mortgagee to Mortgagor and the covenants, agreements, representations and warranties set forth in this Mortgage, Mortgagor intending to be legally bound:

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

## ARTICLE 1

## GRANTS OF SECURITY

Section 1.1    Property Mortgaged. Mortgagor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Mortgagee and its successors and assigns (to the extent assignable) all of Mortgagor's right, title and interest to the following property, rights, interests and estates now owned, or hereafter acquired by Mortgagor (collectively, the "**Property**"):

(a)    Land. The Land;

(b)    Additional Land. All additional lands, estates and development rights hereafter acquired by Mortgagor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Mortgage;

(c)    Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)    Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Land and the Improvements, and every part and parcel thereof, with the appurtenances thereto;

(e)    Equipment. All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), now owned or hereafter acquired by Mortgagor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Mortgagor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**"). Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under Leases except to the extent that Mortgagor shall have any right or interest therein;

(f)    Fixtures. All Equipment now owned, or the ownership of which is hereafter acquired, by Mortgagor which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing,

-2-

FILED DATE: 7/20/2018 9:49 AM  2018CH09098

laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Mortgagor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). Notwithstanding the foregoing, Fixtures shall not include any property which tenants are entitled to remove pursuant to Leases except to the extent that Mortgagor shall have any right or interest therein;

(g) <u>Personal Property</u>. All right, title, and interest of Mortgagor in (i) the property and interests in the property described on <u>Exhibit B</u> attached hereto and incorporated herein by reference, (ii) all other personal property now or hereafter owned by Mortgagor whether or not located on or used in connection with the Land or the Improvements, (iii) all other rights and interests of Mortgagor now or hereafter held in personal property whether or not located on or used in connection with the Land or the Improvements, (iv) all personal property and rights and interests in personal property of similar type or kind hereafter acquired by Mortgagor, (v) all right, title and interest of Mortgagor in and to any personal property which may be subject to any security interests, as defined in the Uniform Commercial Code, superior in lien to the lien of this Mortgage and (vi) all proceeds of the foregoing (such personal property and proceeds, collectively, the "**Personal Property**"). Notwithstanding the foregoing, Personal Property shall not include any property belonging to tenants under Leases except to the extent that Mortgagor shall have any right or interest therein;

(h) <u>Leases and Rents</u>. All leases and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into, whether before or after the filing by or against Mortgagor of any petition for relief under 11 U.S.C. §101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") (collectively, the "**Leases**") and all right, title and interest of Mortgagor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Mortgagor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Obligations;

(i) <u>Condemnation Awards</u>. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(j) <u>Insurance Proceeds</u>. All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k) <u>Tax Certiorari</u>. All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(l)    <u>Rights</u>. The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Mortgagee in the Property;

(m)    <u>Agreements</u>. All agreements (including, without limitation, all management agreements), contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Mortgagor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Mortgagor thereunder;

(n)    <u>Trademarks</u>. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(o)    <u>Proceeds</u>. All proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether cash, liquidation or other claims or otherwise; and

(p)    <u>Other Rights</u>. Any and all other rights of Mortgagor in and to the items set forth in Subsections (a) through (o) above.

AND without limiting any of the other provisions of this Mortgage, to the extent permitted by applicable law, Mortgagor expressly grants to Mortgagee, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "<u>Real Property</u>") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Mortgage be deemed conclusively to be real estate and mortgaged hereby.

Section 1.2    <u>Assignment of Rents</u>. Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to all current and future Leases and Rents; it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Assignment of Leases and Section 7.1(h) of this Mortgage, Mortgagee grants to Mortgagor a revocable license to collect, receive, use and enjoy the Rents. Mortgagor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3    <u>Security Agreement</u>. This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Property. By executing and delivering this Mortgage, Mortgagor hereby grants to Mortgagee, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "<u>Collateral</u>"). If an Event of Default shall occur and be continuing, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code,

-4-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee after the occurrence and during the continuance of an Event of Default, Mortgagor shall, at its expense, assemble the Collateral or cause the Collateral to be assembled and make it available to Mortgagee at a convenient place (at the Land if tangible property) reasonably acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Mortgagee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper. The principal place of business of Mortgagor (Debtor) is as set forth on page one hereof and the address of Mortgagee (Secured Party) is as set forth on page one hereof.

Section 1.4    Fixture Filing. From the date of its recording, this Mortgage shall be effective as a fixture financing statement within the purview of Section 9-502(b) of the Illinois Uniform Commercial Code (as amended from time to time) with respect to the Property and the goods described herein, which goods are or are to become fixtures related to the Property. The addresses of Mortgagor (Debtor) and Mortgagee (Secured Party) are set forth below. This Mortgage is to be filed for recording with the Recorder of Deeds of the county or the counties where the Property is located. For this purpose, the following information is set forth.

(a)    Name and Address of Debtor:

SSDF7 Portfolio I LLC
1414 E. 62ND Pl., Chicago, IL 60637

(b)    Name and Address of Secured Party:

Liberty EBCP, LLC
1500 JFK Boulevard, Suite 250, Philadelphia, PA 19102

(c)    This document covers goods which are or are to become fixtures.

(d)    Debtor is the record owner of the Land.

(e)    Debtor's chief executive office is located in the State of Illinois.

(f)    Debtor's state of formation is Illinois.

(g)    Debtor's exact legal name is as set forth in the first paragraph of this Mortgage.

(h)    Debtor's organizational identification number is 06839975.

(i)    Debtor agrees that:

-5-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(i)     Where Property is in possession of a third party, Mortgagor will join with Mortgagee in notifying the third party of Mortgagee's interest and obtaining an acknowledgment from the third party that it is holding the Property for the benefit of Mortgagee;

(ii)     Mortgagor will cooperate with Mortgagee in obtaining control with respect to Property consisting of: deposit accounts, investment property, letter of credit rights and electronic chattel paper; and

(iii)     Until the Indebtedness is paid in full, Mortgagor will not change the state where it is located or change its company name without giving Mortgagee at least thirty (30) days prior written notice in each instance.

Section 1.5     Pledges of Monies Held.   Mortgagor hereby pledges to Mortgagee any and all monies now or hereafter held by Mortgagee or on behalf of Mortgagee in connection with the Loan, including, without limitation, any sums deposited in the Collateral Account and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Mortgage.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note, the Loan Agreement and this Mortgage, shall well and truly perform the Other Obligations as set forth in this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Mortgagor's obligation to indemnify and hold harmless Mortgagee pursuant to the provisions hereof and the other Loan Documents shall survive any such payment or release.

## ARTICLE 2

## DEBT AND OBLIGATIONS SECURED

Section 2.1     Debt. This Mortgage and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Loan, with interest thereon based on the terms of the Note and the Loan Agreement (the "**Debt**").

Section 2.2     Other Obligations. This Mortgage and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)     the performance of all other obligations of Mortgagor contained herein;

(b)     the performance of each obligation of Mortgagor contained in the Loan Agreement and any other Loan Document; and

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(c)     the performance of each obligation of Mortgagor contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

Section 2.3     Debt and Other Obligations.  Mortgagor's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

# ARTICLE 3

# MORTGAGOR COVENANTS

Mortgagor covenants and agrees that:

Section 3.1     Payment of Debt.  Mortgagor will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Mortgage.

Section 3.2     Incorporation by Reference.  All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

Section 3.3     Insurance.  Mortgagor shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Mortgagor and the Property as required pursuant to the Loan Agreement.

Section 3.4     Maintenance of Property.  Mortgagor shall cause the Property to be maintained in a good and safe condition and repair.  The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Mortgagee.  Mortgagor shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

Section 3.5     Waste.  Mortgagor shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Mortgage.  Mortgagor will not, without the prior written consent of Mortgagee, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.6     Payment for Labor and Materials.

(a)     Mortgagor will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials (collectively, "**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances.

(b) After prior written notice to Mortgagee, Mortgagor, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Mortgage or any of the other Loan Documents, (ii) Mortgagor is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Mortgagor and from the Property or Mortgagor shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Mortgagor is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Mortgagor shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Mortgagee to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.7   Performance of Other Agreements. Mortgagor shall observe and perform each and every term, covenant and provision to be observed or performed by Mortgagor pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8   Change of Name, Identity or Structure. Mortgagor shall not change Mortgagor's name, identity (including its trade name or names) or, if not an individual, Mortgagor's corporate, partnership or other structure without first (a) notifying Mortgagee of such change in writing at least thirty (30) days prior to the effective date of such change, (b) taking all action required by Mortgagee for the purpose of perfecting or protecting the lien and security interest of Mortgagee and (c) in the case of a change in Mortgagor's structure, without first obtaining the prior written consent of Mortgagee. Mortgagor shall promptly notify Mortgagee in writing of any change in its organizational identification number. If Mortgagor does not now have an organizational identification number and later obtains one, Mortgagor shall promptly notify Mortgagee in writing of such organizational identification number. Mortgagor shall execute and deliver to Mortgagee, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Mortgagee to establish or maintain the validity, perfection and priority of the security interest granted herein. At the request of Mortgagee, Mortgagor shall execute a certificate in form satisfactory to Mortgagee listing the trade names under which Mortgagor intends to operate the Property, and representing and warranting that Mortgagor does business under no other trade name with respect to the Property.

## ARTICLE 4

## OBLIGATIONS AND RELIANCES

Section 4.1   Relationship of Mortgagor and Mortgagee. The relationship between Mortgagor, on the one hand, and Mortgagee, on the other, is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with Mortgagor, and no term or condition of any of the Loan Agreement, the Note, this Mortgage and the other Loan Documents shall be construed so as to deem the relationship between Mortgagor, on the one hand, and Mortgagee, on the other, to be other than that of debtor and creditor.

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

Section 4.2    No Reliance on Mortgagee.  The general partners, members, principals and (if Mortgagor is a trust) beneficial owners of Mortgagor, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Mortgagor and Mortgagee are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Mortgagor is not relying on Mortgagee's expertise, business acumen or advice in connection with the Property.

Section 4.3    No Mortgagee Obligations.

(a)    Notwithstanding the provisions of Subsections 1.1(h) and (m) or Section 1.2, Mortgagee is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Mortgagee pursuant to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Mortgagee shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Mortgagee.

Section 4.4    Reliance.  Mortgagor recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Mortgage and the other Loan Documents, Mortgagee is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 8 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Mortgagee; that such reliance existed on the part of Mortgagee prior to the date hereof, that the warranties and representations are a material inducement to Mortgagee in making the Loan; and that Mortgagee would not be willing to make the Loan and accept this Mortgage in the absence of the warranties and representations as set forth in Section 8 of the Loan Agreement.

## ARTICLE 5

## FURTHER ASSURANCES

Section 5.1    Recording of Mortgage, etc.  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Mortgagee in, the Property. Mortgagor will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Mortgage, the other Loan Documents, any note or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

-9-

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

Section 5.2    Further Acts, etc.  Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall, from time to time, reasonably require, for the better conveying, assigning or transferring unto Mortgagee the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage, or for complying with all Legal Requirements relating to Mortgagor's grant of this Mortgage to Mortgagee.  Mortgagor, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements (including, without limitation, initial financing statements and amendments thereto and continuation statements) with or without the signature of Mortgagor as authorized by applicable law, to evidence more effectively the security interest of Mortgagee in the Property.  Mortgagor also ratifies its authorization for Mortgagee to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Mortgage.  Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including without limitation such rights and remedies available to Mortgagee pursuant to this Section 5.2.  To the extent not prohibited by applicable law, Mortgagor hereby ratifies all acts Mortgagee has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

Section 5.3    Changes in Tax, Debt, Credit and Documentary Stamp Laws.

(a)    If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Property, Mortgagor will pay the tax, with interest and penalties thereon, if any.  If Mortgagee is advised by counsel chosen by it that the payment of tax by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury then Mortgagee shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(b)    Mortgagor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt.  If such claim, credit or deduction shall be required by law, Mortgagee shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Mortgage, or any of the other Loan Documents or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

Section 5.4    Splitting of Mortgage  This Mortgage and the Note shall, at any time until the same shall be fully paid and satisfied, at the sole election of Mortgagee, be split or divided into two or more Notes and two or more security instruments, each of which shall cover all or a portion of the Property to be more particularly described therein.  To that end, Mortgagor, upon written request of Mortgagee, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Mortgagee and/or its designee or designees substitute Notes and security instruments in

-10-

FILED DATE: 7/20/2018 9:49 AM  2018CH09098

such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Mortgagee.

Section 5.5    Replacement Documents.  Upon receipt of an affidavit of an officer of Mortgagee as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Mortgagor will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE 6

### DUE ON SALE/ENCUMBRANCE

Section 6.1    Mortgagee Reliance.  Mortgagor acknowledges that Mortgagee has examined and relied on the experience of Mortgagor and its general partners, members, principals and (if Mortgagor is a trust) beneficial owners, as applicable, in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Mortgagor's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations.  Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Property so as to ensure that, should Mortgagor default in the repayment of the Debt or the performance of the Other Obligations, Mortgagee can recover the Debt by a sale of the Property.

Section 6.2    No Transfer.  Mortgagor shall not permit or suffer any Transfer to occur, unless permitted by the Loan Agreement or unless Mortgagee shall consent thereto in writing.

Section 6.3    Mortgagee's Rights.  Without obligating Mortgagee to grant any consent under Section 6.2 hereof which Mortgagee may grant or withhold in its sole discretion, Mortgagee reserves the right to condition the consent required hereunder upon: (a) a modification of the terms hereof and of the Loan Agreement, the Note or the other Loan Documents; (b) an assumption of the Loan Agreement, the Note, this Mortgage and the other Loan Documents as so modified by the proposed transferee; (c) payment of all of Mortgagee's expenses incurred in connection with such transfer; (d) Reserved; (e) Reserved; (f) Reserved; (g) the delivery of evidence satisfactory to Mortgagee that the single purpose nature and bankruptcy remoteness of Mortgagor, its shareholders, partners or members, as the case may be, following such transfers are in accordance with the Loan Documents; (h) the proposed transferee's ability to satisfy Mortgagee's then-current underwriting standards; or (i) such other conditions as Mortgagee shall determine in its reasonable discretion to be in the interest of Mortgagee, including, without limitation, the creditworthiness, reputation and qualifications of the transferee with respect to the Loan and the Property. Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a Transfer without Mortgagee's consent.  This provision shall apply to every Transfer, other than any Transfer permitted pursuant to the Loan Agreement, regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous Transfer.

## ARTICLE 7

### RIGHTS AND REMEDIES UPON DEFAULT

Section 7.1    Remedies.  Upon the occurrence and during the continuance of any Event of Default, Mortgagor agrees that Mortgagee may take such action, without notice or demand, as it deems

-11-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

advisable to protect and enforce its rights against Mortgagor and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(a)     declare the entire unpaid Debt to be immediately due and payable;

(b)     institute proceedings, judicial or otherwise, for the complete foreclosure of this Mortgage under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Mortgage for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)     sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to foreclosure or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage or the other Loan Documents;

(g)     right to the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Mortgagor, any guarantor, indemnitor with respect to the Loan or of any Person liable for the payment of the Debt; further, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, and Mortgagor hereby consents to the appointment of such receiver or receivers, trustee, liquidator or conservator of the Property, as applicable;

(h)     the license granted to Mortgagor under Section 1.2 hereof shall automatically be revoked and Mortgagee may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Mortgagor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Mortgagor agrees to surrender possession of the Property and of such books, records and accounts to Mortgagee upon demand, and thereupon Mortgagee may: (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Mortgagee deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Mortgagor with respect to the Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Mortgagor;

-12-

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

(vi) require Mortgagor to vacate and surrender possession of the Property to Mortgagee or to such receiver and, in default thereof, Mortgagor may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Mortgagee shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees;

(i)      exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and the Personal Property, or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Mortgagor at its expense to assemble the Fixtures, the Equipment and the Personal Property and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Fixtures, the Equipment and/or the Personal Property sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Mortgagor;

(j)      apply any sums then deposited or held in escrow or otherwise by or on behalf of Mortgagee in accordance with the terms of the Loan Agreement, this Mortgage or any other Loan Document to the payment of the following items in any order in its uncontrolled discretion:

(i)      Taxes and Other Charges;

(ii)     Insurance Premiums;

(iii)    interest on the unpaid principal balance of the Note;

(iv)     amortization of the unpaid principal balance of the Note; and/or

(v)      all other sums payable pursuant to the Note, the Loan Agreement, this Mortgage and the other Loan Documents, including without limitation advances made by Mortgagee pursuant to the terms of this Mortgage;

(k)      pursue such other remedies as Mortgagee may have under applicable law;

(l)      apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Mortgagee shall deem to be appropriate in its discretion; and/or

(m)      Intentionally omitted.

In the event of a sale, by foreclosure or otherwise, of less than all of Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 7.2      Application of Proceeds.  The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Mortgagee pursuant to the Note, this Mortgage or the other Loan Documents may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

-13-

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

Section 7.3    Right to Cure Defaults.  Upon the occurrence and during the continuance of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof.  Mortgagee is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Mortgagee upon demand. All such costs and expenses incurred by Mortgagee in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee. All such costs and expenses incurred by Mortgagee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the other Loan Documents and shall be immediately due and payable upon demand by Mortgagee therefor.

Section 7.4    Actions and Proceedings. Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Property.

Section 7.5    Recovery of Sums Required to Be Paid.  Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

Section 7.6    Examination of Books and Records.  At reasonable times and upon reasonable notice, Mortgagee, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Mortgagor which reflect upon its financial condition, at the Property or at any office regularly maintained by Mortgagor where the books and records are located. Mortgagee and its agents shall have the right to make copies and extracts from the foregoing records and other papers.  In addition, at reasonable times and upon reasonable notice, Mortgagee, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Mortgagor pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Mortgagor where the books and records are located.  This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

Section 7.7    Other Rights, etc.

(a)    The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (i) the failure of Mortgagee to comply with any request of Mortgagor or any guarantor or indemnitor with respect to the Loan  to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the other Loan Documents.

-14-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(b)    It is agreed that the risk of loss or damage to the Property is on Mortgagor, and Mortgagee shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Mortgagee shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Mortgagee's possession.

(c)    Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 7.8    Right to Release Any Portion of the Property. Mortgagee may release any portion of the Property for such consideration as Mortgagee may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Mortgage, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Mortgagee for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lienholder. This Mortgage shall continue as a lien and security interest in the remaining portion of the Property.

Section 7.9    Violation of Laws. If the Property is not in material compliance with Legal Requirements, Mortgagee may impose additional requirements upon Mortgagor in connection herewith including, without limitation, monetary reserves or financial equivalents.

Section 7.10    Recourse and Choice of Remedies. Notwithstanding any other provision of this Mortgage or the Loan Agreement, Mortgagee is entitled to enforce the obligations of Mortgagor contained in Sections 9.2 and 9.3 herein without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Mortgagee commences a foreclosure action against the Property, Mortgagee is entitled to pursue a deficiency judgment with respect to such obligations against Mortgagor with respect to the Loan. The provisions of Sections 9.2 and 9.3 herein and are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Mortgage or the other Loan Documents, and Mortgagor and any guarantor or indemnitor with respect to the Loan are fully and personally liable for the obligations pursuant to Sections 9.2 and 9.3 herein. The liability of Mortgagor with respect to the Loan pursuant to Sections 9.2 and 9.3 herein is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Mortgagee from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Mortgage and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Mortgagor pursuant to Sections 9.2 and 9.3 herein, whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions. In addition, Mortgagee shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in the ADA and Environmental Indemnity.

Section 7.11    Right of Entry. Upon reasonable notice to Mortgagor, Mortgagee and its agents shall have the right to enter and inspect the Property at all reasonable times.

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

# ARTICLE 8

## INTENTIONALLY OMITTED

# ARTICLE 9

## INDEMNIFICATION

Section 9.1    Intentionally Omitted.

Section 9.2    Mortgage and/or Intangible Tax.  Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Mortgage, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

Section 9.3    ERISA Indemnification.  Mortgagor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including, without limitation, reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of Losses incurred in correcting any prohibited transaction or in the sale of a prohibited loan, and in obtaining any individual prohibited transaction exemption under ERISA that may be required, in Mortgagee's sole discretion) that Mortgagee may incur, directly or indirectly, as a result of a default under Sections 8.19 and 9.4 of the Loan Agreement.

Section 9.4    Intentionally Omitted.

Section 9.5    Duty to Defend; Attorneys' Fees and Other Fees and Expenses.  Upon written request by any Indemnified Party, Mortgagor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties.  Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Mortgagor and any Indemnified Party and Mortgagor and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Mortgagor, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Mortgagor's consent, which consent shall not be unreasonably withheld.  Upon demand, Mortgagor shall pay or, in the sole and absolute discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

# ARTICLE 10

## WAIVERS

Section 10.1    Waiver of Counterclaim.  To the extent permitted by applicable law, Mortgagor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Mortgagee arising out of or in any way connected with this Mortgage, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

Section 10.2    Marshalling and Other Matters. To the extent permitted by applicable law, Mortgagor hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Mortgage and on behalf of all Persons to the extent permitted by applicable law.

Section 10.3    Waiver of Notice. To the extent permitted by applicable law, Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

Section 10.4    Waiver of Statute of Limitations. To the extent permitted by applicable law, Mortgagor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

Section 10.5    Survival. The indemnifications made pursuant to Sections 9.2, 9.3 and 9.5 herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by: any satisfaction or other termination of this Mortgage, any assignment or other transfer of all or any portion of this Mortgage or Mortgagee's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Mortgagee's rights and remedies pursuant hereto including but not limited to foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any transfer of all or any portion of the Property (whether by Mortgagor or by Mortgagee following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Mortgage, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Mortgagor from the obligations pursuant hereto.

## ARTICLE 11

## INTENTIONALLY OMITTED

## ARTICLE 12

## NOTICES

Section 12.1    Notices. All notices or other written communications hereunder shall be delivered in accordance with Section 15.1 of the Loan Agreement.

## ARTICLE 13

## APPLICABLE LAW

Section 13.1    GOVERNING LAW; WAIVER OF JURY TRIAL.

-17-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(A)   THIS MORTGAGE WAS NEGOTIATED IN THE COMMONWEALTH OF PENNSYLVANIA, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY GRANTOR IN THE COMMONWEALTH OF PENNSYLVANIA, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE COMMONWEALTH OF PENNSYLVANIA, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THE MORTGAGE, THE NOTE AND THE OTHER LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE LAND IS LOCATED (ILLINOIS). TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS MORTGAGE, THE NOTE AND/OR THE OTHER LOAN DOCUMENTS. IN THE EVENT THAT ANY PROVISION OF THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT CONFLICTS WITH APPLICABLE LAW, SUCH CONFLICT SHALL NOT AFFECT OTHER PROVISIONS OF MORTGAGE OR THE APPLICABLE LOAN DOCUMENT WHICH CAN BE GIVEN EFFECT WITHOUT THE CONFLICTING PROVISIONS, AND TO THIS END THE PROVISIONS OF THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS ARE DECLARED TO BE SEVERABLE.

(B)   TO THE FULLEST EXTENT PERMITTED BY LAW, MORTGAGOR AND MORTGAGEE HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION RELATING TO THE LOAN AND/OR THE LOAN DOCUMENTS.

Section 13.2   <u>Usury Laws</u>. Notwithstanding anything to the contrary, (a) all agreements and communications between Mortgagor and Mortgagee are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Mortgagee shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Mortgagor to Mortgagee, and (c) if through any contingency or event, Mortgagee receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Mortgagor to Mortgagee, or if there is no such indebtedness, shall immediately be returned to Mortgagor.

Section 13.3   <u>Provisions Subject to Applicable Law</u>.  All rights, powers and remedies provided in this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law.  If any term of this Mortgage or any application thereof shall be invalid or unenforceable, the remainder of this Mortgage and any other application of the term shall not be affected thereby.

FILED DATE: 7/20/2018 9:49 AM 2018CH09098

Section 13.4    Intentionally Omitted.

Section 13.5    Business Purpose

Mortgagor warrants that this Mortgage is delivered in connection with a business or commercial loan transaction.

Section 13.6    Intentionally Omitted.

## ARTICLE 14

## DEFINITIONS

Section 14.1    Definitions.    All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "Mortgagor" shall mean "each Mortgagor and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Mortgagee" shall mean "Mortgagee and any successor under the Loan Agreement," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE 15

## MISCELLANEOUS PROVISIONS

Section 15.1    No Oral Change.    This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 15.2    Successors and Assigns.    The provisions hereof shall be binding upon and shall inure to the benefit of the Mortgagor, its successors and assigns (including without limitation subsequent owners of the Property or the leasehold estate of the Property or any part thereof); shall be binding upon and shall inure to the benefit of Mortgagee, its successors and assigns and any future holder of the Note hereby secured, and any successors or assigns of any future holder of the Note. In the event the ownership of the Property or any leasehold estate that may be covered by this Mortgage, becomes vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest with reference to this instrument and the debt hereby secured in the same manner as with the Mortgagor, and may alter the interest rate and/or alter or extend the terms of payment of the debt secured hereby without notice to Mortgagor and such action shall in no way affect the liability of Mortgagor hereunder or under the Note hereby secured or the lien or priority of this Mortgage with respect to any part of the Property covered hereby.

Section 15.3    Secondary Market

-19-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

(a)    Transfer of Loan. Mortgagee may, at any time, without notice to or the consent of Mortgagor (i) sell, transfer or assign the Loan (or any portion thereof) and the Loan Documents, and any or all servicing rights with respect thereto, (ii) sell or grant participations in the Loan ("**Participations**") or (ii) securitize the Loan or any portion thereof in one or more pooled asset securitizations (the transactions referred to in clauses (i), (ii) and (iii) shall herein be referred to collectively as "Secondary Market Transactions" and the transactions referred to in clause (iii) shall herein be referred to as a "Securitization". Any certificates, notes or other securities issued in connection with a Securitization shall be referred to herein as "Securities". In connection with any Secondary Market Transaction, Mortgagee may forward to each purchaser, transferee, assignee, servicer, trustee, participant, or investor in such Secondary Market Transactions (collectively, the "Investor" or any rating agency rating such Secondary Market Transaction (each, a "**Rating Agency**") and each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Mortgagee now has or may hereafter acquire relating to the debt secured hereby and to Mortgagor, any Guarantor, and the Property, whether furnished by Mortgagor, any Guarantor, any Property, or otherwise, as Mortgagee determines necessary or desirable. Mortgagor irrevocably waives any and all rights it may have under applicable laws to prohibit such disclosure, including but not limited to any right of privacy. Mortgagor shall be responsible for the payment of all costs and expenses of any servicer chosen by Mortgagee to service the Loan. Mortgagor, at Mortgagor's expense, only for its own costs in cooperating (but not for Mortgagee's costs) including without limitation, Mortgagor's legal fees in connection with any of the following, agrees to cooperate with all reasonable requests of Mortgagee in connection with any of the foregoing including, without limitation, executing any financing statements or other documents deemed necessary by Mortgagee or its transferee to create, perfect or preserve the rights and interest to be acquired by such transferee, provide any updated financial information with appropriate verification through auditors letters, deliver a negative assurances letter (with respect to such sections as Mortgagor is responsible pursuant to Section 15.3(c) hereof) only if the Securities being offered are in a Rule 144A offering or a registered public offering, revised organizational documents and counsel opinions satisfactory to the Rating Agencies, executed amendments to the Loan Documents, and review information regarding Mortgagor, any Guarantor, and the Property contained in a preliminary or final private placement memorandum, prospectus, prospectus supplements or other disclosure document, providing a mortgagor estoppel certificate and such other information about Mortgagor, any Guarantor or the Property as Mortgagee may reasonably require for Mortgagee's offering materials; provided, however, in each instance of a modification of, or amendment to, the Loan and Loan Documents or splitting or severing all or any portion of the Loan, Mortgagee shall comply with this Section 15 and no such modification or amendment shall change the stated maturity date of the Loan or any other material term of the Loan.

(b)    Dissemination of Information. Mortgagor acknowledges that Mortgagee may provide to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, ownership, purchase, or participation of the Loan, or any Secondary Market Transaction including, without limitation, any Rating Agency and any entity maintaining databases on the underwriting and performance of commercial mortgage loans, any and all information which Mortgagee now has or may hereafter acquire relating to the Loan, the Property, Mortgagor or any Guarantor, as Mortgagee determines necessary or desirable and that such information may be included in disclosure documents in connection with a Secondary Market Transaction, including, without limitation, a prospectus, prospectus supplement, offering memorandum, private placement memorandum or similar document (each, a "**Disclosure Document**") and also may be included in any filing with the Securities and Exchange Commission pursuant to the Securities Act or the Securities Exchange Act. To the fullest extent permitted under applicable law, Mortgagor irrevocably waives all rights, if any, to prohibit such disclosure, including, without limitation, any right of privacy.

(c)    Secondary Market Transaction. Mortgagor and each Guarantor agrees to provide in connection with each Disclosure Document, an indemnification certificate: (i) certifying that the

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

information contained in the sections describing Mortgagor, any Guarantor and the Property set forth in such Disclosure Document has carefully been examined, and that, to such indemnitor's knowledge, such sections do not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; (ii) indemnifying Mortgagee (and for purposes of this Section 15.3(c), Mortgagee shall include its officers and directors) that (1) has filed the registration statement, if any, relating to the Secondary Market Transaction and/or (2) which is acting as issuer, depositor, sponsor and/or a similar capacity with respect to the Secondary Market Transaction (any person described in (1) or (2), an "**Issuer Person**"), and each director and officer of any Issuer Person, and each person who controls any Issuer Person with the meaning of Section 15 of the Securities Act or Section 20 of the Securities Exchange Act (collectively, "**Issuer Group**"), for any losses to which Mortgagee or the Issuer Group may become subject insofar as the losses arise out of or are based upon the omission or alleged omission to state therein a material fact required to be stated in such sections necessary in order to make the statements in such sections or in light of the circumstances under which they were made, not misleading (collectively, "**Securities Liabilities**"); and (iii) agreeing to reimburse Mortgagee and the Issuer Group for any legal or other expenses reasonably incurred by Mortgagee and the Issuer Group in investigating or defending the Securities Liabilities; provided, however, that indemnitor will be liable under clauses (ii) or (iii) above only to the extent that such Securities Liabilities arise out of, or are based upon, any such untrue statement or omission made therein in reliance upon, and in conformity with, information furnished to Mortgagee or any member of the Issuer Group by or on behalf of Mortgagor or a Guarantor in connection with the preparation of the Disclosure Documents or in connection with the underwriting of the Loan, including, without limitation, financial statements of Mortgagor or any Guarantor, and operating statements, rent rolls, environmental site assessment reports and property condition reports with respect to the Property. This indemnity is in addition to any liability which Mortgagor may otherwise have and shall be effective whether or not an indemnification certificate described above is provided and shall be applicable based on information previously provided by or on behalf of Mortgagor or a Guarantor if the indemnification certificate is not provided.

   Section 15.4 <u>Inapplicable Provisions</u>. If any term, covenant or condition of the Loan Agreement, the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Mortgage shall be construed without such provision.

   Section 15.5 <u>Headings, etc.</u> The headings and captions of various Sections of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

   Section 15.6 <u>Number and Gender/Joint and Several</u>. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. If Mortgagor consists of more than one Person, all representations, warranties, covenants, obligations and liabilities of each such Person hereunder shall be joint and several. A default hereunder by any such Person shall be deemed a default by all such Persons and Mortgagor. With respect to the definition of "Mortgagor", except where the context otherwise provides, (i) any representations contained herein of Mortgagor shall be applicable to each Mortgagor, (ii) any affirmative covenants contained herein shall be deemed to be covenants of each Mortgagor and shall require performance by all Mortgagors, (iii) any negative covenants contained herein shall be deemed to be covenants of each Mortgagor, and shall be breached if any Mortgagor fails to comply therewith, (iv) the occurrence of any Event of Default with respect to any Mortgagor shall be deemed to be an Event of Default hereunder, and (v) any Debt and/or Other Obligations of Mortgagor shall be deemed to include any Debt and/or Other Obligations of the Mortgagor, or any Debt and/or Other Obligations of any one of them. The representations, warranties and covenants contained herein shall be read to apply to the individual Persons comprising Mortgagor when the context so requires, but a breach of any such

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

representation, warranty or covenant or a breach of any obligation under this Mortgage shall be deemed a breach by all such Persons and Mortgagor, entitling Mortgagee to exercise all of their rights and remedies under this Mortgage and under applicable law.

Section 15.7     Subrogation.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Mortgagee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Mortgagee and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Mortgagor's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

Section 15.8     Entire Agreement.  The Note, the Loan Agreement, this Mortgage and the other Loan Documents constitute the entire understanding and agreement between Mortgagor and Mortgagee with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Mortgagor and Mortgagee with respect thereto. Mortgagor hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Mortgage and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Mortgagee to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Mortgage and the other Loan Documents.

Section 15.9     Limitation on Mortgagee's Responsibility.  No provision of this Mortgage shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Mortgagee, nor shall it operate to make Mortgagee responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession."

Section 15.10     Loan Agreement.  This Mortgage is made pursuant to the Loan Agreement and is subject to all of the provisions of the Loan Agreement including, without limitation, the provisions thereof entitling Mortgagee to declare the entire indebtedness secured hereby to be immediately due and payable, all of which provisions are incorporated herein with the same force and with like effect as if they were fully set forth herein at length and made a part hereof.

Section 15.11     Intentionally Omitted.

Section 15.12     Receipt of Mortgage.

MORTGAGOR CERTIFIES AND ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE AND CORRECT COPY OF THIS MORTGAGE WITHOUT CHARGE.

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

## ARTICLE 16

### STATE-SPECIFIC PROVISIONS

Section 16.1    Inconsistencies.  In the event of any inconsistencies between the terms and conditions of this Article 16 and the other provisions of this Mortgage, the terms and conditions of this Article 16 shall control and be binding.

Section 16.2    Compliance with Illinois Mortgage Foreclosure Law.

(a)    In the event that any provision in this Mortgage shall be inconsistent with any provisions of the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 *et. seq.* (as amended from time to time the "IMF Law"), the provision of the IMF Law shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the IMF Law.

(b)    Mortgagor and Mortgagee shall have the benefit of all of the provisions of the IMF Law, including all amendments thereto which may become effective from time to time after the date hereof. In the event any provision of the IMF Law which is specifically referred to herein may be repealed, Mortgagee shall have the benefit of such provision as most recently existing prior to such repeal, as though the same were incorporated herein by express reference.

(c)    If any provision of this Mortgage shall grant to Mortgagee any rights or remedies upon default of Mortgagor which are more limited than the rights that would otherwise be vested in Mortgagee under the IMF Law in the absence of said provision, Mortgagee shall be vested with the rights granted in the IMF Law to the full extent not prohibited by law.

(d)    In addition to any provision of this Mortgage authorizing Mortgagee to take or be placed in possession of the Property, or for the appointment of a receiver, Mortgagee shall have the right, in accordance with Sections 15-1701 and 15-1702 of the IMF Law, to be placed in possession of the Property or at its request to have a receiver appointed, and such receiver, or Mortgagee, if and when placed in possession, shall have, in addition to any other powers provided in this Mortgage, all rights, powers, immunities and duties as provided for in Sections 15-1701, 15-1703 and 15-1704 of the IMF Law.

Section 16.3    Waiver of Right of Redemption and Other Rights.  To the full extent permitted by law, Mortgagor agrees that it will not at any time or in any manner whatsoever take any advantage of any stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter in force, nor take any advantage of any law now or hereafter in force providing for the valuation or appraisement of the Property, or any part thereof, prior to any sale thereof to be made pursuant to any provisions herein contained, or to any decree, judgment or order of any court of competent jurisdiction; or after such sale, claim or exercise any rights under any statute now or hereafter in force to redeem the Property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof.  To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights it may have to require that the Property be sold as separate tracts or units in the event of foreclosure. To the full extent permitted by law, Mortgagor hereby expressly waives any and all rights of redemption and reinstatement under the IMF Law, on its own behalf, on behalf of all persons claiming or having an interest (direct or indirect) by, through or under Mortgagor and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Mortgagor and such other persons are and shall be deemed to be hereby waived to the full extent permitted by applicable law.  To the full extent permitted by law, Mortgagor agrees that it will not, by invoking or utilizing any applicable law or laws or otherwise, hinder, delay or impede

-23-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

the exercise of any right, power or remedy herein or otherwise granted or delegated to Mortgagee, but will permit the exercise of every such right, power and remedy as though no such law or laws have been or will have been made or enacted. To the full extent permitted by law, Mortgagor hereby agrees that no action for the enforcement of the lien or any provision hereof shall be subject to any defense which would not be good and valid in an action at law upon the Note. Mortgagor acknowledges that the Property does not constitute agricultural real estate as defined in Section 5/15-1201 of the IMF Law or residential real estate as defined in Section 5/15-1219 of the IMF Law.

Section 16.4  Use of Proceeds. Mortgagor represents and warrants to Mortgagee (i) that the proceeds of the Note secured by this Mortgage will be used for the purposes specified in 815 ILCS 205/4(1)(l) (or any substitute, amended or replacement statute), and that the indebtedness secured hereby constitutes a business loan to a business entity which comes within the purview of said 815 ILCS 205/4(1)(l), and (ii) that the Loan evidenced by the Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C. §1601 *et seq.*

Section 16.5  Interest Laws. It being the intention of Mortgagee and Mortgagor to comply with the laws of the State of Illinois, it is agreed that notwithstanding any provision to the contrary in the Note, this Mortgage or any of the other Loan Documents, no such provision shall require the payment or permit the collection of any amount ("**Excess Interest**") in excess of the maximum amount of interest permitted by law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness evidenced by the Note. If any Excess Interest is provided for, or is adjudicated to be provided for, in the Note, this Mortgage or any of the other Loan Documents, then in such event: (a) the provisions of this **Section 16.5** shall govern and control; (b) neither Mortgagor nor any other party obligated under the terms of the Note or any of the other Loan Documents shall be obligated to pay any Excess Interest; (c) any Excess Interest that Mortgagee may have received hereunder shall, at the option of Mortgagee, be (i) applied as a credit against the then unpaid principal balance under the Note, accrued and unpaid interest thereon not to exceed the maximum amount permitted by law, or both, (ii) refunded to the payor thereof, or (iii) any combination of the foregoing; (d) the Interest Rate (as that term is defined in the Note) shall be subject to automatic reduction to the maximum lawful contract rate allowed under the applicable usury laws of the aforesaid State, and the Note, this Mortgage and the other Loan Documents shall be deemed to be automatically reformed and modified to reflect such reduction in the Interest Rate; and (e) neither Mortgagor nor any other party obligated under the terms of the Note or any of the other Loan Documents shall have any action against Mortgagee for any damages whatsoever arising out of the payment or collection of any Excess Interest.

Section 16.6  Other Amounts Secured; Maximum Indebtedness. Mortgagor acknowledges and agrees that this Mortgage secures the entire principal amount of the Note and interest accrued thereon, regardless of whether any or all of the loan proceeds are disbursed on or after the date hereof, and regardless of whether the outstanding principal is repaid in whole or part or are future advances made at a later date, any and all litigation and other expenses and any other amounts as provided herein or in any of the other Loan Documents, including, without limitation, the payment of any and all loan commissions, service charges, liquidated damages, expenses and advances due to or paid or incurred by Mortgagee in connection with the Loan, all in accordance with the loan commitment issued in connection with this transaction and the Loan Documents. Notwithstanding anything in this Mortgage to the contrary, under no circumstances shall the maximum principal indebtedness secured hereby exceed EIGHTEEN MILLION FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($18,400,000), plus interest thereon and any disbursements made for the payment of taxes, special assessments, or insurance on the Property, with interest on such disbursements. It is agreed that any future advances made by Mortgagee for the benefit of Mortgagor from time to time under this Mortgage or the other Loan Documents and whether or not such advances are obligatory or are made at the option of Mortgagee, made at any time from and after the date of this Mortgage, and all interest accruing thereon, shall be equally secured by this

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

Mortgage and shall have the same priority as all amounts, if any, advanced as of the date hereof and shall be subject to all of the terms and provisions of this Mortgage. This Mortgage shall be valid and have priority to the extent of the full amount of the indebtedness secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law.

Section 16.7    Adjustable Mortgage Loan Provisions.    The Note which this Mortgage secures is an adjustable note on which the interest rate may be adjusted from time to time in accordance with the terms and provisions set forth in the Note.

Section 16.8    Deed of Trust.    If title to the Property or any part thereof is now or hereafter becomes vested in a trustee, any prohibition or restriction contained herein against the creation of any lien on the Property shall be construed as a similar prohibition or restriction against the creation of any lien on or security interest in the beneficial interest of such trust.

Section 16.9    Collateral Protection Act.    Unless Mortgagor provides Mortgagee with evidence of the insurance required by this Mortgage or any other Loan Document, Mortgagee may purchase insurance at Mortgagor's expense to protect Mortgagee's interest in the Property or any other collateral for the indebtedness secured hereby. This insurance may, but need not, protect Mortgagor's interests. The coverage Mortgagee purchases may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property or any other collateral for the indebtedness secured hereby. Mortgagor may later cancel any insurance purchased by Mortgagee, but only after providing Mortgagee with evidence that Mortgagor has obtained insurance as required under this Mortgage or any other Loan Document. If Mortgagee purchases insurance for the Property or any other collateral for the indebtedness secured hereby, Mortgagor shall be responsible for the costs of that insurance, including interest in any other charges that Mortgagee may lawfully impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the indebtedness secured hereby. The costs of the insurance may be more than the cost of insurance that Mortgagor may be able to obtain on its own. For purposes of the Illinois Collateral Protection Act, 815 ILCS 180/1 *et. seq.*, Mortgagor hereby acknowledges Mortgagee's right pursuant to this paragraph to obtain collateral protection insurance.

Section 16.10    Rights of Tenants.    Mortgagee shall have the right and option to commence a civil action to foreclose this Mortgage and to obtain a decree of foreclosure and sale subject to the rights of any tenant or tenants of the Property having an interest in the Property prior to that of Mortgagee. The failure to join any such tenant or tenants of the Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Mortgagor as a defense in any civil action instituted to collect the Obligations, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Property, any statue or rule of law at any time existing to the contrary notwithstanding.

[Remainder of page intentionally left blank]

-25-

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

MORTGAGOR ACKNOWLEDGES THAT IT HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS MORTGAGE INCLUDING, WITHOUT LIMITATION, THE WAIVER OF JURY TRIAL AND HAS BEEN ADVISED BY COUNSEL AS NECESSARY OR APPROPRIATE.

IN WITNESS WHEREOF, this Mortgage has been executed by Mortgagor as of the day and year first above written.

**MORTGAGOR:**

SSDF7 PORTFOLIO 1 LLC,
an Illinois limited liability company

By:     SSDF7 HOLDCO 1 LLC,
        a Delaware limited liability company,
        its Managing Member

By:     South Shore Property Holdings LLC,
        a Delaware limited liability company,
        its Managing Manager

By:     _____

        Jerome H. Cohen
Its:    Managing Member

STATE OF Florida, COUNTY OF Manatee . SS.:

Personally appeared before me, the undersigned, a Notary Public for the state and county aforesaid, JEROME H. COHEN, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that he executed the within instrument for the purposes therein contained, and who further acknowledged that he is the Managing Member of SOUTH SHORE PROPERTY HOLDINGS LLC, a Delaware limited liability company, which is the Managing Manager of SSDF7 HOLDCO 1 LLC, a Delaware limited liability company which is the Managing Member of SSDF7 PORTFOLIO 1 LLC, an Illinois limited liability company ("Borrower"), and is authorized to execute this instrument on behalf of Borrower.

Given under my hand and notarial seal, this 25 day of April, 2018.

_____          My commission expires August 17, 2021
Notary Public



JESSICA BAIER
MY COMMISSION # GG135506
EXPIRES August 17, 2021

Signature Page to Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing - II

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

# EXHIBIT A

## LEGAL DESCRIPTION

**SITE NO. 8**
**4317-19 S. MICHIGAN AVENUE, CHICAGO, ILLINOIS 60653 / PIN# 20-03-302-002-0000**

LOT 7 IN BLOCK 1 IN L. W. STONE'S SUBDIVISION OF THE EAST 20 ACRES OF THE NORTH 30 ACRES OF THE WEST ½ OF THE SOUTHWEST 1/4 OF SECTION 3, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 9**
**2736-2744 W. 64TH STREET, CHICAGO, ILLINOIS 60629 / PIN# 19-24-200-029-0000**

LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF) IN MOREAU AND DE JONG'S RESUBDIVISION OF LOTS 30 TO 48 INCLUSIVE IN BLOCK 16 IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISION OF THE WEST ½ OF THE NORTHEAST ¼ OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 10**
**2453 E. 75TH STREET/7508 S. ESSEX AVENUE, CHICAGO, IL 60649 / PIN# 21-30-301-030-0000**

LOT 1 AND THE EAST 18.00 FEET OF LOT 2 IN BLOCK 3 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 11**
**7701-03 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-320-001-0000**

LOT 36 AND THE NORTH 2.41 FEET OF LOT 35 IN BLOCK 10 IN SOUTH SHORE PARK, A SUBDIVISION OF THE WEST ½ OF THE SOUTHWEST ¼ OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 12**
**7748-52 S. ESSEX AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-319-029-0000**

LOTS 16, 17 AND 18, IN BLOCK 11, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

FILED DATE: 7/20/2018 9:49 AM    2018CH09098

**SITE NO. 13**
**816-22 E. MARQUETTE ROAD, CHICAGO, ILLINOIS 60637 / PIN# 20-23-112-028-0000**

LOT 12 IN BLOCK 8 IN WOODLAWN RIDGE SUBDIVISION OF THE SOUTH ½ OF THE NORTHWEST ¼ OF SECTION 23, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 14**
**7957-59 S. MARQUETTE AVENUE, CHICAGO, ILLINOIS 60617 / PIN# 21-31-106-024-0000**

LOTS 29 AND 30 IN THE SUBDIVISION OF BLOCK 6 OF CIRCUIT COURT PARTITION OF THE NORTHWEST ¼ OF THE NORTHEAST ¼ AND THE NORTHEAST ¼ OF THE NORTHWEST ¼ OF SECTION 31 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**SITE NO. 15**
**7600 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-309-030-0000**

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 16**
**7656 S. KINGSTON AVENUE, CHICAGO, ILLINOIS 60649 / PIN# 21-30-309-026-0000**

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST ¼ IN SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**SITE NO. 17**
**8201 S. KINGSTON AVENUE, CHICAGO, IL 60617 / PIN# 21-31-126-001-0000**

LOT 38 (EXCEPT THE SOUTH 28 AND ONE HALF FEET THEREOF) AND ALL OF LOTS 39 AND 40 IN BLOCK 4 IN THE SUBDIVISION OF LOTS 1 TO 10, BOTH INCLUSIVE, IN CHARLES RINGER'S SOUTH SHORE ADDITION, BEING A SUBDIVISION OF THE EAST ½ OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF TAKEN FOR WIDENING EAST 83RD STREET) IN COOK COUNTY, ILLINOIS.

Exhibit A

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

## EXHIBIT B

### DESCRIPTION OF PERSONAL PROPERTY

(a)    All personal property (including, without limitation, all goods, supplies, equipment, furniture, furnishings, fixtures, machinery, inventory, and construction materials and software embedded in any of the foregoing) in which Mortgagor now or hereafter acquires an interest or right, which is now or hereafter located on or affixed to the Land or the Improvements or used or useful in the operation, use, or occupancy thereof or the construction of any Improvements thereon, together with any interest of Mortgagor in and to personal property which is leased or subject to any superior security interest, and all books, records, leases and other agreements, documents, and instruments of whatever kind or character, relating to the Land, Improvements, or such personal property;

(b)    All fees, income, rents, issues, profits, earnings, receipts, royalties, and revenues which, after the date hereof and while any portion of the Obligations remains unpaid or unperformed, may accrue from such personal property or any part thereof or from the Land, the Improvements or any other part of the Property, or which may be received or receivable by Mortgagor from any hiring, using, letting, leasing, subhiring, subletting, subleasing, occupancy, operation, or use thereof;

(c)    All of Mortgagor's present and future rights to receive payments of money, services, or property, including, without limitation, rights to all deposits from tenants of the Land or Improvements, sums deposited in the Collateral Account, chattel paper (whether tangible or electronic) notes, drafts, contract rights, instruments, general intangibles, as presently or hereafter in effect, and principal, interest and payments due on account of goods sold or leased, services rendered, loans made or credit extended, together with title to or interest in all agreements, documents, and instruments, evidencing, securing or guarantying the same;

(d)    All other intangible property (and related software) and rights relating to the Land, the Improvements, the personal property described in Paragraph (a) above or the operation, occupancy, or use thereof, including, without limitation, all governmental and non- governmental permits, licenses, and approvals relating to construction on or operation, occupancy, or use of the Land or Improvements, all names under or by which the Land or Improvements may at any time be operated or known, all rights to carry on business under any such names, or any variant thereof, all trade names and trademarks, servicemarks, logos and copyrights, relating in any way to the Land or the Improvements, and all good will and software in any way relating to the Land or the Improvements;

(e)    All as-extracted collateral produced from or allocated to the Land, including, without limitation, oil, gas, and other hydrocarbons and other minerals.

(f)    Mortgagor's rights under all insurance policies covering the Land (including, but not limited to, title insurance policies), the Improvements, the Personal Property, and the other parts of the Property and any and all proceeds, loss payments, and premium refunds payable regarding the same;

(g)    All reserves, deferred payments, deposits, refunds, cost savings, and payments of any kind relating to the construction of any Improvements on the Land;

(h)    All water stock relating to the Land;

(i)    All causes of action, claims, compensation, and recoveries for any damage to, destruction of, or condemnation or taking of the Land, the Improvements, the Personal Property, or any other part of the Property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or

injury to the Land, the Improvements, the Personal Property, or any other part of the Property, or for any loss or diminution in value of the Premises, the Improvements, the Personal Property, or any other part of the Property;

(j)    All architectural, structural, mechanical, and engineering plans and specifications prepared for construction of Improvements or extraction of minerals or gravel from the Premises and all studies, data, and drawings related thereto; and also all contracts and agreements of the Mortgagor relating to the aforesaid plans and specifications or to the aforesaid studies, data, and drawings or to the construction of Improvements on or extraction of minerals or gravel from the Land;

(k)    All commercial tort claims Mortgagor now has or hereafter acquires relating to the properties, rights, titles, and interests referred to in this Exhibit B or elsewhere in the Mortgage to which this Exhibit B is attached;

(l)    All letter of credit rights (whether or not the letter of credit is evidenced by a writing) Mortgagor now has or hereafter requires relating to the properties, rights, titles and interest referred to in the Mortgage to which this Exhibit B is attached;

(m)    All proceeds from sale or disposition of any of the aforesaid collateral and all supporting obligations ancillary thereto or arising in any way in connection therewith;

(n)    All Mortgagor's rights in proceeds of the Loan evidenced by the Note;

(o)    All of Mortgagor's rights in any and all warranties and guaranties with respect to any goods, materials, supplies, chattels, fixtures, equipment, machinery, building materials, and work in progress attached to or placed in or on any part of the Land, or used in connection with any construction on the Land;

(p)    All of Mortgagor's rights to and under any purchase agreements, including, without limitation, any deposits paid to Mortgagor pursuant to such purchase agreements; and

(q)    All of Mortgagor's rights in all plans, specifications, plats, agreements, assessments, reports, and surveys related to the Premises.

As used in this Exhibit B the terms "Land", "Loan Agreement", "Obligations", "Note", "Property", "Improvements", and "Personal Property" shall have the meanings set forth in the Mortgage to which this Exhibit B is attached.

FILED DATE: 7/20/2018 9:49 AM   2018CH09098

Exhibit B

EXHIBIT 21

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*

#1890666

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

1 2 1



Doc# 1812744024 Fee $40.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2018 11:05 AM PG: 1 OF 2

Know all men by these presents, that **EQUITYBUILD FINANCE, LLC** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit-claims unto **EQUITYBUILD, INC.** of the County of Collier, State of Florida, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **12/02/2015** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **02/04/2016** as Document Number **1603550265**, the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):          21-30-309-030-0000
Commonly Known as:    7600 S Kingston Avenue, Chicago, IL

_____

**EQUITYBUILD FINANCE, LLC**

State of: New York
County of: New York

     I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, **Shaun Cohen, President of EquityBuild Finance, LLC**, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on April 12 2018

MILUSKA RIOS
Notary Public - State of New York
No. 01RI6301528
Qualified in Bronx County
My Commission Expires April 14, 2018

S Y
P 2
S N
SC Y
INT

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

# Legal Description

of premises commonly known as **7600 S Kingston Avenue, Chicago, IL**

**LOT 1, 2 AND 3 IN BLOCK 7 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST 1/4 (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, COOK COUNTY, ILLINOIS.**

PERMANENT TAX NUMBER: **21-30-309-030-0000**

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX 75093

EXHIBIT 22

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.,* United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

VENTUS HOLDINGS, LLC OR NOMINEE                    ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7656 South Kingston Avenue | 2514-20 East 77th Street, Chicago, Illinois 60649 and legally described as follows:

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-026

\*          \*          \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 510,000                    (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

        a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

        b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    Earnest Money. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    Court Approval. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer

4.    Escrow Closing. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    Irrevocable Offer. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ 10/17/2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.    Personal Property. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    The Closing Date. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    Conveyance of Title. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default.** In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties.** As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *[None.]*

    d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices.** All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> andrew@andrewporterlaw.com

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> MICHAEL ELMAN
>
> 10 S LA SALLE, STE 1420
>
> CHICAGO, IL 60603
>
> MELMAN@MBELMANLAW.COM

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.    Foreign Investor Disclosure. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    Merger. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

                    *         *         *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 14TH        day of August, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

VENTUS HOLDINGS, LLC OR NOMINEE

10 S LA SALLE STE 1420

Chicago, IL 60603

By: /ZACH ELMAN/

Its: MANAGER

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 10/15/19

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*       *       *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over_____years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*     \*     \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



First American
Title Insurance Company

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____ Expected Release Date: _____ Escrow Number: _2964652_

Property Address: _7656 South Kingston Avenue, Chicago, Illinois 60649_

Deposit Amount: $ _____ Purpose: ☒ Earnest Money ☐ Repairs: _____
Document(s) Held _____ ☐ Tax Escrow ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | Kevin B. Duff, as Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
|---|---|---|---|
| Signed: | _____ | Signed: | |
| Print Name: | _____ | Print Name: | Rachlis Duff Peel & Kaplan LLC |
| Address: | _____ | Address: | 542 South Dearborn, Suite 900 |
| | _____ | | Chicago, Illinois 60605 |
| Email: | _____ | Email: | kduff@rdaplaw.net |
| Primary Phone: | _____ | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee       By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

<u>Assignment And Assumption Of Leases</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of_____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

**ASSIGNEE:**

*[TBD]*

By:_____

Name:_____

Title:_____

EXHIBIT 23

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

*Southside Property Group LLC* ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7656 South Kingston Avenue | 2514-20 East 77th Street, Chicago, Illinois 60649 and legally described as follows:

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-026

\* \* \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ *320,000 00* (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ _May 15th 2020_ (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.      **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.     *Leases*. Copies of all existing leases affecting the Property.

d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

  a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

  b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

  c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

  *[None.]*

  d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

David Resnick

DResnick@RSPlaw.com

312-456-0376

21.  **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.  **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this _29ᵗʰ_ day of ~~August, 2019~~ _Nov, 2020_ In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

Southside Property Group LLC

765 E. 69ᵗʰ Place

Chicago IL 60637



By: _____

Its: Managing Member

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_____

**Acceptance Date:** 05/08/20

**Buyer's Agent**

N/A

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

### **RIDER A**

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*    *    *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly, with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.



**RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*     *     *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American**
**Title Insurance Company**

**STRICT JOINT ORDER ESCROW AGREEMENT**

Open Date: _____  Expected Release Date: _____  Escrow Number: __2964652__

**Property Address:** ___7656 South Kingston Avenue, Chicago, Illinois 60649_____

Deposit Amount: $ __32,000.00___  Purpose: ☒ Earnest Money  ☐ Repairs: _____
Document(s) Held _____  ☐ Tax Escrow  ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: _____

Print Name: Kevin Nugent, Southside Property Group LLC

Address: 765 E. 65th Place
Chicago IL 60637

Email: KevinNugent@WPDManagement.com

Primary Phone: 773-908-9762

Alternate Phone: _____

**Seller:** Kevin B. Duff, as Federal Equity Receiver for SSDF7 Portfolio 1 LLC
Signed: _____

Print Name: Rachlis Duff Peel & Kaplan LLC
Address: 542 South Dearborn, Suite 900
Chicago, Illinois 60605

Email: kduff@rdaplaw.net

Primary Phone: (312) 733-3390

Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee     By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
*titleindemnity.warrenville.il@firstam.com*

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ___, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

**ASSIGNEE:**

[TBD] Southside Property Group LLC

By:_____

Name: Kevin Nugent

Title: Managing Member

EXHIBIT 24



# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



Doc#: 1500616026 Fee: $50.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 01/08/2015 11:55 AM Pg: 1 of 7

**Report Mortgage Fraud**
**800-532-8785**

---

The property identified as:       PIN: 21-30-309-026-0000

**Address:**
**Street:**       7656 S. Kingston Ave

**Street line 2:**

**City:** Chicago            **State:** IL            **ZIP Code:** 60649

**Lender:** Th Persons Listed on Exhibit A to the Mortgage C/O Hard Money Company, LLC

**Borrower:** John Gorske

**Loan / Mortgage Amount:** $741,040.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** DDF2646E-F616-4565-9037-9917F43A4CAD            **Execution date:** 12/03/2014

---

Mail To: Hard Money Company
5068 W. Plano Pkwy #300
Plano, TX 75093

ATS 1328643 [The Above Space For Recorder's Use Only]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on December 3, 2014. The mortgagor is John Gorske. ("Borrower").

This Security Instrument is given to The Persons Listed on Exhibit A to the Mortgage C/O Hard Money Company, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of Seven Hundred Forty-One Thousand Forty and 00/100 Dollars (U.S. $741,040.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument, which provides for a final payment of the full debt, if not paid earlier, due and payable December 1st, 2016. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Notes, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Notes. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 21-30-309-026-0000

which has the address of 7656 S Kingston Ave. Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Notes and any prepayment and late charges due under the Notes.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

4. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. Successor and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Notes: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Notes without the Borrower's consent.

6. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Notes conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Notes which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Notes are declared to be severable.

8. Borrower's Copy. Borrower shall be given one conformed copy of the Notes and of this Security Instrument.

9. Transfer of the Property or a beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

10. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. Assignment of Rents and Leases. As additional security for the payment of the indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases.In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser. Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail.If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (SEAL)
John Gorske, BORROWER

_____ [Space Below This Line For Acknowledgement] _____

STATE OF  Illinois ,  Cook  County ss:

1500616026 Page: 6 of 7

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared *Mark Brosius as atty in fact for John Gorske* to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this *3rd* day of *December*, 20*14*.

My Commission expires:

{Seal}

_____
Notary Public

OFFICIAL SEAL
JAYNE M NORRIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/17/18

**EXHIBIT A**

Commitment Number: 1328643

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK BEING A SUBDIVISION OF THE WEST 1/2 OF THE
SOUTHWEST 1/4 OF SECTION 30 TOWNSHIP 38 NROTH RANGE 15 EAST OF THE THIRD PRINCIPAL
MERIDIAN IN COOK COUNTY, ILLINOIS

21-30-309-026-0000
7656 S. KINGSTON AVENUE CHICAGO IL

PRIMARY TITLE SERVICES, LLC
8833 GROSS POINT ROAD #205 - SKOKIE, IL 60077-1859
(P) 847-677-8833 (F) 847-673-8833
A Policy Issuing Agent for
CHICAGO TITLE INSURANCE COMPANY

Commitment
Exhibit A

(1328643.PFD/1328643/44)

EXHIBIT 25

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*

#1890667

Old Republic Title
9601 Southwest Highway
Oak Lawn, IL 60453

1 2 1



Doc# 1812744025 Fee $40.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 05/07/2019 11:05 AM PG: 1 OF 2

Know all men by these presents, that **EQUITYBUILD FINANCE, LLC** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit-claims unto **JOHN GORSKE** of the County of Orange, State of California, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **12/03/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **01/06/2015** as Document Number **1500616026**, the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):               21-30-309-026-0000
Commonly Known as:   7656 S Kingston Avenue, Chicago, IL

**EQUITYBUILD FINANCE, LLC**

State of: New York
County of: New York

I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, **Shaun Cohen, President of EquityBuild Finance, LLC,** personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on April 12 20 18

MILUSKA RIOS
Notary Public - State of New York
No. 01RI6301522
Qualified in Bronx County
My Commission Expires April 14, 2019

S Y
P 2
S
SC Y
INT B

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

2

# Legal Description

of premises commonly known as 7656 S Kingston Avenue, Chicago, IL

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, COOK COUNTY, ILLINOIS.

PERMANENT TAX NUMBER: 21-30-309-026-0000

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX 75093

EXHIBIT 26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>EQUITYBUILD, INC.,<br>EQUITYBUILD FINANCE, LLC,<br>JEROME H. COHEN, and<br>SHAUN D. COHEN,<br><br>          Defendants. | )<br>)<br>)<br>)   Civil Action No. 18-CV-5587<br>)<br>)<br>)   Hon. John Z. Lee<br>)<br>)<br>)   Magistrate Judge Young B. Kim<br>)<br>)<br>)<br>) |

ORDER GRANTING RECEIVER'S EIGHTH MOTION TO CONFIRM
THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE
OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES

WHEREAS, by Order Appointing Receiver, dated August 17, 2018 (Docket No. 16) this

Court took exclusive jurisdiction and possession of the assets of all Receivership Defendants;

WHEREAS, by Order entered March 14, 2019 (Docket No. 290), this Court identified

SSDF7 Portfolio 1 LLC ("SSDF7") and SSPH 6951 S Merrill LLC ("SSPH 6751 S Merrill) as

Receivership Defendants;

WHEREAS, SSPH 6751 S Merrill is the owner of record of the real property and

improvements located at 6949-59 South Merrill Avenue, Chicago, Illinois 60649 ("6949-59

South Merrill"), for which the legal description and permanent index number is contained on

Tab A hereto;

WHEREAS, SSDF7 is the owner of record of the real property and improvements located

at 7600-10 South Kingston, Chicago, Illinois 60649 ("7600-10 South Kingston") and 7656-58

South Kingston Avenue, Chicago, Illinois 60649 ("7656-58 South Kingston"), for which the

legal descriptions and permanent index numbers are contained on Tab A hereto;

WHEREAS, the Court finds that the sales prices reflected in the Purchase And Sale Agreements that the Receiver accepted for the conveyances of 6949-59 South Merrill, 7600-10 South Kingston, and 7656-58 South Kingston (collectively, the "Properties") are consistent with the fair market value of the Properties;

WHEREAS, Kevin B. Duff, as receiver ("Receiver") for the Receivership Defendants, has filed an Eighth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances (the "Motion"); and

WHEREAS, the Court finds that the Receiver has given fair, adequate, and sufficient notice to all interested parties, including all mortgagees and other encumbrancers affected by the Motion;

NOW, THEREFORE, it is hereby ORDERED that:

1.      The Motion is GRANTED.

2.      The Receiver is authorized to sell the real property and improvements at 6949-59 South Merrill free and clear of:

a.      that certain Mortgage, Assignment Of Leases And Rents, Security Agreement And Fixture Filing recorded September 14, 2017, as Document 1725729063 in favor of Thorofare Asset Based Lending REIT Fund IV, LLC to secure a promissory note in the originally stated principal amount of $1,540,000;

b.      that certain Amendments To Mortgages And Cross-Collateralization Agreement dated July 21, 2017, and recorded September 14, 2017, as Document No. 1725729064, entered into by and between SSPH 6951 S Merrill LLC and 1700 Juneway LLC, on the one part, and Thorofare Asset Based Lending REIT Fund IV, LLC, on the other part; and

       c.    that certain Financing Statement evidencing an indebtedness from SSPH 6951 S Merrill LLC to Thorofare Asset Based Lending REIT Fund IV, LLC, filed September 14, 2017, as Document No. 1725729065.

3.    The Receiver is authorized to sell the real property and improvements at <u>7600-10 South Kingston</u> free and clear of:

       a.    that certain Mortgage recorded February 4, 2016 as Document No. 1603550265 in favor of Equity Trust Company Custodian FBO John Allred IRA Account No 125952, as to a 1.39% interest; Equity Trust Company FBO Glenda K. Allred IRA Account No. 187991, as to a 0.19% interest; Equity Trust Company Custodian FBO Carly A. Allred Roth IRA Account No. 163781, as to a 0.14% interest; Fraser Realty Capital, LLC, as to a 0.70% interest; Spectra Investments, LLC, as to a 4.43% interest; Quest IRA Inc. FBO Rebeca E. Savory-Romero IRA Account No. 15528-11, as to a 1.40% interest; iPlanGroup Agent for Custodian FBO Frank Sohm IRA, as to a 0.55% interest; Private Finance Solutions, LLC, as to a 0.82% interest; Arthur Bertrand, as to a 0.61% interest; Equity Trust Company Custodian FBO Paula Levand CESA, as to a 0.65% interest; Don Minchow, as to a 3.86% interest; Asians Investing in Real Estate, LLC, as to a 5.26% interest; iPlanGroup Agent for Custodian FBO Jason Ragan IRA, as to a 1.04% interest; NuView IRA Inc. FBO Janet Eileen Taylor IRA, as to a 12.63% interest; Towpath Investments, LLC, as to a 0.88% interest; AdvantalRA Trust, LLC FBO Terry Merrill No. 6820601, as to a 2.11% interest; Equity Trust Company Custodian FBO David M. Williams IRA No. Z51886, as to a 0.26% interest; TruStar Real Estate, LLC, as to a 7.37% interest; Vantage FBO Joseph S. Ratkovic IRA No. 16325, as to a 5.26% interest; David Marcus, as to a 31.42% interest; Paul N. Wilmesmeier, as to a 0.88% interest; CM Group, LLC, as to a 3.86% interest; Uyen Dinh, as to a 0.25% interest; Timothy Sharp, as to a 1.75%

interest; iPlanGroup Agent for Custodian FBO Stephen J. Apple ROTH IRA, as to a 1.53% interest; Charwin Properties, LLC, as to a 0.18% interest; Nehasri Ltd., as to a 1.86% interest; Janet Eileen Taylor, as to a 1.75% interest; Robert Maione, as to a 3.86% interest; and EquityBuild, Inc., as to a 3.10% interest, to secure a promissory note in the originally stated principal amount of $2,850,000;

       b.      that certain Mortgage recorded May 7, 2018, as Document No. 1812734048 in favor of Liberty EBCP, LLC to secure a promissory note in the originally stated principal amount of $18,400,000 (the "Liberty Mortgage");

       c.      that certain Assignment Of Leases And Rents recorded May 7, 2018, as Document No. 1812734049 (the "Liberty Assignment Of Rents");

       d.      that certain Financing Statement filed May 7, 2018, as Document No. 1812734050 (the "Liberty Financing Statement"); and

       e.      that certain notice of lis pendens recorded August 15, 2018, as Document No. 1822706115 in connection with the case captioned *Michigan Shores Apartments, LLC v. EquityBuild, Inc., SSDF7 Portfolio 1, LLC, [and] Liberty EBCP LLC*, Circuit Court of Cook County, Case No. 2018-CH-09098 (the "Michigan Shores Action").

4.     The Receiver is authorized to sell the real property and improvements at <u>7656-58 South Kingston</u> free and clear of:

       a.      that certain Mortgage recorded January 8, 2015, as Document No. 1500616026 in favor of "The Persons Listed on Exhibit A";

       b.      the Liberty Mortgage;

       c.      the Liberty Assignment Of Rents; and

       d.      the Liberty Financing Statement.

5.      The Receiver is hereby vested with full power and authority to execute any and all closing documents associated with the conveyances of the Properties, including, but not limited to, deeds, bills of sale, affidavits of title, and settlement statements.

6.      The proceeds from the sales of the Properties shall be held by the Receiver in separate subaccounts for which the Receiver shall maintain an accounting as to all sums deposited therein, and shall not be available to pay operating expenses of the Receivership nor for any other expense or distribution, absent further order of Court.

Entered:

_____
The Honorable John Z. Lee

Date:_____