# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) |
| **Plaintiff,** | ) **Civil Action No. 18-cv-5587** ) |
| **v.** | ) **Hon. John Z. Lee** ) |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) **Magistrate Judge Young B. Kim** ) ) ) |
| **Defendants.** | ) ) |

**EXHIBITS TO RECEIVER'S**
**(1) SECOND MOTION FOR RESTORATION OF FUNDS EXPENDED FOR THE**
**BENEFIT OF OTHER PROPERTIES; AND (2) NINTH MOTION TO CONFIRM THE**
**SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN**
**MORTGAGES, CLAIMS, LIENS, AND ENCUMBRANCES**

EXHIBIT **1**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) ) ) | |
| ) | **Civil Action No. 18-CV-5587** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Hon. John Z. Lee** |
| **EQUITYBUILD, INC.,** ) | |
| **EQUITYBUILD FINANCE, LLC,** ) | |
| **JEROME H. COHEN, and** ) | **Magistrate Judge Young B. Kim** |
| **SHAUN D. COHEN,** ) | |
| ) | |
| **Defendants.** ) | |

**DECLARATION OF KEVIN B. DUFF**
**IN SUPPORT OF MOTION FOR RESTORATION OF FUNDS**
**EXPENDED FOR THE BENEFIT OF OTHER PROPERTIES**

I, Kevin B. Duff, under oath, declare and state as follows:

1.      I am the Court's appointed Receiver in the above-captioned action.

2.      Since being appointed in this case, I have been responsible for preserving and maintaining 116 real estate properties with approximately 1,637 units, including approximately 79 multifamily properties and 37 single family residence properties (of 1-4 units).

3.      A primary focus of my efforts has been to preserve, maintain, and protect the properties.  Many of the properties face or have faced difficult circumstances, including crumbling walls and facades, porches falling off structures, inadequate heating systems, unpaid water and electric bills, unpaid real estate taxes, deferred maintenance, onsite or nearby gang or other illegal activity, and similar significant and substantial challenges.  Some of the properties had high vacancy rates, due to their location, physical state, need for repairs, or other challenges. These

challenges were made manifest by enormous management and cost burdens, attributable largely to the state in which the properties were left by the Cohens. While some of the properties generate sufficient income to cover their costs (*e.g.,* taxes, property management, repairs, utilities, etc.), many did not or do not have enough income to do so. Indeed, when the Receivership commenced, the Cohens had drained out the cash, and as part of the fraud simply left many of the properties in a compromised state, so that many properties were unable to pay and/or had not been paying their own costs.

4. In addition, most of the properties are low-income properties in distressed neighborhoods of Chicago, and many benefit from government-subsidized housing programs. They are occupied by hundreds of Chicago families and individuals. Had the properties been shut down, vacated, boarded up, allowed to fall into disrepair, and abandoned, significant life and safety issues would have gone unaddressed and the value of the properties would have fallen markedly.

5. In the first few months of the Receivership, funds were used from other performing properties to preserve and maintain underperforming properties as necessary on a portfolio basis. However, on February 13, 2019, Magistrate Judge Kim ordered that rents were to be restored, if possible, to any properties from which rent was used for the benefit of other properties to the extent funds became available. Consistent with that ruling, I have been working since then to restore rent in this fashion by direct transfers of funds to the accounts for properties owed rent restoration and by payment of expenses relating to such properties from the Receivership account. Through the motion for which this affidavit is offered, the rent restoration process can be completed.

6. Since Judge Kim's February 13, 2019 order, I used net sale proceeds from properties identified and understood to be unencumbered (which were sold and their sales proceeds

used consistent with the Court's orders) and other recovered funds to preserve, maintain, and improve the benefited properties until they were sold.

7. In that regard, I have worked with its professionals including the property managers at the various properties in the effort to preserve and maintain the properties. As expenses arose in the case of properties that did not have sufficient operating income, the respective property managers would typically communicate to me the issues and expenses that needed to be addressed (including, for example, maintenance, repairs, and improvements to address health and safety issues, City notices of Code violations, and situations where property income was insufficient to pay operating expenses such as utilities). In these situations, the property managers advised me of the amounts needed to address such issues. As a matter of practice, I routinely worked with the property managers and other professionals to limit expenses and keep them reasonable.

8. For purposes of this motion, there are twenty-four (24) properties that have now been sold and had received funds either from the rent proceeds of other properties or from the Receiver's account for which restoration is now sought. All of the sales of these properties were presented to, and approved by the Court for sale, and net proceeds were placed in an escrow account. They are as follows:

   a. 6160-6212 S. Martin Luther King

   b. 7927-49 S. Essex

   c. 7834-44 S. Ellis

   d. 5955-59 S. Sacramento

   e. 6001-05 S. Sacramento

   f. 7026-42 S. Cornell

   g. 701-13 S. 5th Avenue

    h.  7750-58 S. Muskegon

    i.  7748-52 S. Essex

    j.  7635-43 S. East End

    k.  8047-55 S. Manistee

    l.  7749-59 S. Yates

    m.  7450 S. Luella

    n.  7546-48 S. Saginaw

    o.  8201 S. Kingston

    p.  8326-58 S. Ellis

    q.  5450-52 S. Indiana

    r.  6437-41 S. Kenwood

    s.  7760 S. Coles

    t.  8000-02 S. Justine

    u.  8107-09 S. Ellis

    v.  8214-16 S. Ingleside

    w.  11117-39 S. Longwood

    x.  8209-13 S. Ellis

9.    From the beginning of the Receivership through March 31, 2020, each of these properties benefited either from the rent income of other properties or from other funds in the Receiver's account. Exhibit 2 to the motion provides a summary of the costs that have been advanced to the property managers or paid by me for each of the 24 benefited properties. This summary is based on the accounting records and expense documentation for each property. The covered expenses included property management costs, real estate taxes, and insurance costs.

Property management costs included but were not limited to property management fees, unit turns, utilities (gas, electric, water), garbage service, tenant and rental services, various repairs (labor and supplies), janitorial services, landscaping services, extermination services, supervising building access to outside vendors (such as locksmiths, plumbers, electricians, glass repairmen, utility company inspectors, etc.), asset reconciliation and accounting services, posting notices, eviction-related services, and permits.

10.     These expenses were necessary and appropriate to address the preservation, maintenance, and improvement of the benefited properties. The amounts are reflected in the monthly reports for each property prepared by the BrookWeiner accounting firm based upon monthly profit and loss reports from the property managers, schedules maintained by the Receiver of expenditures per Property, and information provided by the insurance agent (Rosenthal Brothers) used to allocate the percentage of total insurance costs to each Property on a proportionate basis. These reports are provided monthly to the institutional lenders.  The most recent reports for the 24 benefited properties from which reimbursement is sought are also attached to the motion as Exhibits 3-26 to the motion.

11.     The reports are accompanied by an e-mail which includes (with limited variation) the following analysis and discussion of the information included in the reports, their components, and the terms used:

> To assist in your review of these reports, please review carefully the summary below which describes the information and computations included in the reports. The Receiver expects the information below will facilitate understanding of the report, its components, and the terms used.

> The report is organized in three sections.

> ### 1.     NOI - Net Operating Income

>> a.     <u>Total Operating Income</u> is from the Income Statement for the Property prepared by the property manager.

b.    <u>Total Operating Expense</u> is from the Income Statement for the Property prepared by the property manager

c.    <u>NOI – Net Operating Income (Loss)</u> is from the Income Statement for the Property prepared by the property manager. Net Operating Income (Loss) is included in the calculation of any Remaining Rents to be Restored to each property, as described below.

**2.    Property Expenses Paid by Receivership**

a.    <u>Property Taxes</u> reflects property taxes paid directly by the Receivership for the Property for the month in which paid. (Note, however, that Property Taxes paid for a property by the property manager are included in Total Operating Expense).

b.    <u>Insurance</u> reflects the Property's proportionate share of insurance premiums and related fees paid by the Receivership. The amount attributed to each Property was calculated by (i) determining the percentage of the annual premium for all properties represented by the annual premium for the Property and (ii) multiplying the Receivership's total insurance payments for each month by that percentage.

c.    <u>Insurance Reconciliation Amount</u>. The March 2020 accounting reports reflect an Insurance Reconciliation Amount for each property, which reflects reallocation of insurance expenditures to take into account sale of properties in the portfolio. Insurance premium costs were paid in advance in installments by the Receiver, and were allocated to properties based on the proportion of insurable value for each property to the total insurable value of all Receivership properties. Following sale of properties, refunds of prepaid premium amounts allocable to the sold properties were applied to reduce remaining installment payments of premium costs. Refunds from the insurers were received and applied in months later than the months in which properties were sold; the Insurance Reconciliation Amount has been calculated to true-up premium allocable to each sold property before its sale, and to adjust premium allocable to other properties accordingly.

d.    <u>Funds for Property Expenses Sent to Property Manager by Receivership</u> reflects funds sent by the Receivership to the property manager to pay, or reimburse the property manager, for expenses relating to the Property.

e.    <u>Total Property Expenses Paid by the Receivership</u> is the total of items 2(a), (b), and (c) described above. This amount is included in the calculation any Remaining Rents to be Restored to each property, as described below.

   f. <u>Total Net Income (Loss)</u> is calculated by subtracting Total Property Expenses Paid by Receivership from Net Operating Income (Loss). Total Net Income (Loss) is not included in the calculation of any Remaining Rents to be Restored.

  **3.** **Calculation of Amounts of Rent (if any) Required to be Restored to the Property**

   Note that there are some differences in reporting for properties resulting from differences in the manner in which the property managers operated the properties and maintained their accounts.

   Properties managed by WPD Management ("WPD") have been operated with separate accounts for each property (or, in limited circumstances, accounts for groups or tranches of properties that relate to loans of a single lender) throughout the Receivership.

   Properties managed by Paper Street Realty ("PSR") were operated through January 2019 as a portfolio. Income and expense items were recorded for each property, as reflected in the monthly financial reporting PSR distributed to lenders. Subsequent to the February 2019 Order, the PSR-managed properties began operating on a stand alone basis.

   As a result of this operational difference, some of the entries on the attached reports have been calculated differently depending on which property manager managed the Property. The differences are explained below.

   a. <u>Distributions Out</u>

    i. For properties managed by WPD Management ("WPD"), amounts actually distributed by WPD from the Property's account to the Receivership are reflected as Distributions Out.

    ii. For properties managed by Paper Street Realty ("PSR"), the Net Operating Income (if any) for each month from August through January 2019 is reflected as a Distribution Out for that month.

   b. <u>Contributions In</u>

    i. For properties managed by WPD, no amounts appear as Contributions In. Instead, funds were sent directly by the Receivership to WPD, as necessary, and are reflected (as described above) in Funds for Property Expenses Sent to Property Manager by Receivership.

    ii. For properties managed by PSR, the Net Operating Loss (if any) for each month from August through January 2019 is reflected as a Contribution In for that month.

c.  Inter Property Transfers Out

    i.  For WPD properties, Inter Property Transfers Out reflects amounts transferred from the Property's account to the account of one or more other properties.

    ii.  For PSR properties, no amounts appear as Inter Property Transfers Out.

d.  Inter Property Transfers In

    i.  For WPD properties, reflects amounts transferred into the account of the Property from the account(s) of one or more other properties.

    ii.  For PSR properties, no amounts appear as Inter Property Transfers In.

e.  Total Property Expenses Paid by Receivership is the same amount described in 2(d), above.

f.  Rents Restored to Property by Receiver shows amounts (if any) restored to the account for the Property by the Receiver.

g.  Remaining Amount to be Restored is the amount (if any) required to be restored to the Property by the Receiver, calculated as follows:

> **Distributions Out**
> *minus* **Contributions In**
> *plus* **Inter Property Transfers Out**
> *minus* **Inter Property Transfers In**
> *minus* **Total Property Expenses Paid by Receivership**
> *minus* **Rents Restored to Property by Receiver**
> *equals* **Remaining Amount to be Restored**

If the calculation above results in a negative number, the Remaining Amount to be Restored is reflected as zero.

**4.  Calculation of Cumulative Amount (if any) Reimbursable from Property**

For properties to which no rent restoration is due, the final line item on the report reflects the cumulative amount that has been expended for the benefit of the property from sources other than its operating income. These sources may include Contributions In, Inter Property Transfers In, and Property Expenses Paid by Receivership, as reflected on each such report. Please see the immediately preceding section for descriptions of those entries. The Receiver intends to seek Court approval to use proceeds from the sale of these properties (a) for the purpose of rent restoration in accordance with the Court's Order of February 13, 2019, and (b) to reimburse the Receivership for any remaining reimbursable amount in excess of such rent restoration.

8

Please contact me if you have any questions after you have had a chance to review the explanation above along with the attached reports.

12.     If the Court grants the motion, I will transfer: (i) $391,830.42, or such lesser amount that equals the total rent restoration remaining due as of the date of transfer, to the separate accounts for those properties to which rent restoration is due; and (ii) the remainder of the Aggregate Restoration Amount (*see* Motion, ¶ 7), after completion of rent restoration, to the Receiver's account.  Consistent with the Court's prior orders, these amounts transferred to the Receiver's account would then be available to pay ongoing expenses, which is critical for the continued operations of the Receivership as articulated in prior submissions.  It is imperative that such reimbursement be approved as quickly as possible.


 /s/ Kevin B. Duff
Kevin B. Duff, Receiver

9

EXHIBIT **2**

| Exhibit | Property Address | Balance of Separate Account (as of 6/30/2020) | Remaining Amount to be Restored | Cumulative Amount Reimbursable from Property (thru 3/31/2020) |
|---|---|---|---|---|
| | | *Benefited Properties (owing restoration)* | | |
| 3 | 6160-6212 S. Martin Luther K | $497,195.97 | | $69,003.13 |
| 4 | 7927-49 S. Essex | $718,352.32 | | $76,458.12 |
| 5 | 7834-44 S. Ellis | $1,665,847.45 | | $35,670.13 |
| 6 | 5955-59 S. Sacramento | $500,476.30 | | $52,169.06 |
| 7 | 6001-05 S. Sacramento | $386,137.48 | | $59,612.38 |
| 8 | 7026-42 S. Cornell | $968,220.55 | | $103,558.90 |
| 9 | 701-13 S. 5th | $525,878.00 | | $71,698.88 |
| 10 | 7750-58 S. Muskegon | $600,808.89 | | $192,999.06 |
| 11 | 7748-52 S. Essex | $1,222,500.70 | | $55,082.59 |
| 12 | 7635-43 S. East End | $1,124,874.28 | | $80,156.49 |
| 13 | 8047-55 S. Manistee | $870,456.95 | | $64,708.76 |
| 14 | 7749-59 S. Yates | $785,940.70 | | $139,383.80 |
| 15 | 7450 S. Luella | $211,381.87 | | $25,504.73 |
| 16 | 7546-48 S. Saginaw | $537,269.97 | | $27,330.94 |
| 17 | 8201 S. Kingston | $313,457.38 | | $34,630.20 |
| 18 | 8326-58 S. Ellis | $1,403,416.73 | | $95,837.14 |
| 19 | 5450-52 S. Indiana | $1,656,669.04 | | $8,679.15 |
| 20 | 6437-41 S. Kenwood | $1,317,367.39 | | $1,794.26 |
| 21 | 7760 S. Coles | $188,202.38 | | $67,787.76 |
| 22 | 8000-02 S. Justine | $297,782.37 | | $113,597.64 |
| 23 | 8107-09 S. Ellis | $175,605.67 | | $80,850.18 |
| 24 | 8214-16 S. Ingleside | $267,219.19 | | $62,821.55 |
| 25 | 11117-39 S. Longwood | $1,599,854.81 | | $12,684.43 |
| 26 | 8209-13 S. Ellis | $308,848.22 | | $55,846.86 |
| | | *Properties due rent restoration* | | |
| | 5001-05 S. Drexel | $2,664,509.30 | $50,975.22 | |
| | 7625-33 S. East End | $1,216,429.65 | $20,481.98 | |
| | 6749-57 S. Merrill | $1,384,945.92 | $11,426.32 | |

| | | | |
|---|---|---|---|
| 4520-26 S. Drexel | $5,815,756.49 | $60,392.70 | |
| 4533-37 S. Calumet | | $450.83 | |
| 1017 W. 102nd | | $4,493.30 | |
| 1516 E. 85th | | $2,901.81 | |
| 417 Oglesby | | $369.72 | |
| 7922 S. Luella | | $200.54 | |
| 7925 S. Kingston | | $2,054.72 | |
| 8030 S. Marquette | | $1,413.17 | |
| 8104 S. Kingston | | $2,646.02 | |
| 8403 S. Aberdeen | | $2,353.01 | |
| 8405 S. Marquette | | $1,944.48 | |
| 8529 S. Rhodes | | $935.07 | |
| 9212 S. Parnell | | $2,460.11 | |
| 10012 S. LaSalle | | $2,023.57 | |
| 11318 S. Church | | $1,159.21 | |
| 6554 S. Rhodes | | $1,086.01 | |
| 6825 S. Indiana | | $1,053.41 | |
| 7210 S. Vernon | | $224.08 | |
| 7712 S. Euclid | | $1,641.15 | |
| 8107 S. Kingston | | $367.31 | |
| 8346 S. Constance | | $1,470.86 | |
| 8432 S. Essex | | $393.26 | |
| 8517 S. Vernon | | $1,173.70 | |
| 2129 W. 71st | | $1,002.02 | |
| 9610 S. Woodlawn | | $2,328.96 | |
| 1401 W. 109th | | $2,367.16 | |
| 1139-41 E. 79th | | $3,703.56 | |
| 4611-17 S. Drexel | | $43,791.07 | |
| 6217-27 S. Dorchester | | $12,818.05 | |
| 6250 S. Mozart | | $19,656.89 | |
| 7255-57 S. Euclid | | $26,407.98 | |
| 7024-32 S. Paxton | | $45,127.06 | |
| 4317-19 S. Michigan | | $3,676.88 | |
| 7701-03 S. Essex | | $4,768.17 | |

| | | | |
|---|---|---|---|
| 816-20 E. Marquette | | $5,080.56 | |
| 1422-24 E. 68th | | $1,822.00 | |
| 2800-06 E. 81st | | $5,397.56 | |
| 4750-52 S. Indiana | | $13,124.25 | |
| 5618-20 S. Martin Luther King | | $15,908.48 | |
| 7840-42 S. Yates | | $8,758.21 | |
| TOTALS | $29,225,405.97 | $391,830.42 | $1,587,866.14 |

EXHIBIT **3**

**Receiver's Property Report**

**6160-6212 S Martin Luther King Dr**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | (2,875.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,402.09 |
| Total Operating Expense | 29,981.87 | (15,755.00) | 0.00 | 0.00 | 23.15 | 35.16 | 0.00 | 0.00 | 78.75 | 0.00 | 0.00 | 0.00 | 100,626.22 |
| NOI - Net Operating Income (Loss) | (32,856.87) | 15,755.00 | 0.00 | 0.00 | (23.15) | (35.16) | 0.00 | 0.00 | (78.75) | 0.00 | 0.00 | 0.00 | (82,224.13) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | | | | | | | | | | | | 9,083.05 |
| Reimbursment for Water Bill from Closing Statement | | (75,136.24) | | | | | | | | | | (79.62) | (75,215.86) |
| Payment of Final Water Bill | | 75,136.24 | | | | | | | | | | | 75,136.24 |
| Funds for Property Expenses Sent to Property Manager by Receivership from Sale Proceeds | 60,000.00 | | | | | | | | | | | | 60,000.00 |
| Total Property Expenses Paid by Receivership | 60,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (79.62) | 69,003.43 |
| Total Net Income (Loss) | (92,856.87) | 15,755.00 | 0.00 | 0.00 | (23.15) | (35.16) | 0.00 | 0.00 | (78.75) | 0.00 | 0.00 | 79.62 | (151,227.56) |
| Distributions Out | | | | | | | | | | | | | 0.00 |
| Contributions In | | | | | | | | | | | | | 54,102.21 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 69,003.43 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 123,105.64 |
| | Sold 4/30/19 | | | | | | | | | | | | |
| Amounts Reimbursed from Property | | | | | | | | | | | | | 54,102.51 |
| Remaining Reimbursable Amount | | | | | | | | | | | | | 69,003.13 |

EXHIBIT **4**

**Receiver's Property Report**

**7927-49 S Essex**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 53,148.53 | 3,226.00 | 1,392.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 130,041.96 |
| Total Operating Expense | 32,727.31 | 2,460.88 | (154.08) | 1,113.04 | 105.12 | 101.28 | 0.00 | 0.00 | (61.78) | 44.03 | 0.00 | 0.00 | 131,152.10 |
| NOI - Net Operating Income (Loss) | 20,421.22 | 765.12 | 1,546.08 | (1,113.04) | (105.12) | (101.28) | 0.00 | 0.00 | 61.78 | (44.03) | 0.00 | 0.00 | (1,110.14) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | | | | | | | | | | | | 7,729.86 |
| Funds for Property Expenses Sent to Property Manager by Receivership | 16,372.62 | | | | | | 122.25 | | | | | (128.51) | 22,366.36 |
| Total Property Expenses Paid by Receivership | 16,372.62 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 122.25 | 0.00 | 0.00 | 0.00 | 0.00 | (128.51) | 30,096.22 |
| **Total Net Income (Loss)** | 4,048.60 | 765.12 | 1,546.08 | (1,113.04) | (105.12) | (101.28) | (122.25) | 0.00 | 61.78 | (44.03) | 0.00 | 128.51 | (31,206.36) |
| Distributions Out | | | | | | | | | | | | | (1,966.53) |
| Contributions In | 30,000.00 | | | | | | | | | | | | 48,328.43 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 30,096.22 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | Sold 5/1/19 | | | | | | | | | | | |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 76,458.12 |

EXHIBIT **5**

**Receiver's Property Report**

**7834-44 S. Ellis Ave**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 13,949.00 | 12,981.00 | 11,986.00 | 14,133.00 | 12,323.00 | 9,209.00 | 9,496.00 | 8,189.00 | 0.00 | 0.00 | 0.00 | 0.00 | 214,023.00 |
| Total Operating Expense | 9,951.24 | 6,357.55 | 11,507.55 | 49,222.01 | 13,935.72 | 12,311.58 | 13,394.05 | 5,700.61 | 0.00 | 0.00 | 0.00 | 0.00 | 233,480.75 |
| NOI - Net Operating Income (Loss) | 3,997.76 | 6,623.45 | 478.45 | (35,089.01) | (1,612.72) | (3,102.58) | (3,898.05) | 2,488.39 | 0.00 | 0.00 | 0.00 | 0.00 | (19,457.75) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | 18,243.46 | | | | | | | | | | | | 18,243.46 |
| Insurance | | 5,522.10 | 678.59 | 989.81 | 989.81 | 989.81 | 989.81 | 989.81 | 989.81 | 1,874.60 | | | 22,219.79 |
| Insurance Reconciliation Amount | | | | | | | | | | | | (3,722.25) | (3,722.25) |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | | | | | | 5,000.00 | | | | | 6,000.00 |
| **Total Property Expenses Paid by Receivership** | 18,243.46 | 5,522.10 | 678.59 | 989.81 | 989.81 | 989.81 | 989.81 | 5,989.81 | 989.81 | 1,874.60 | 0.00 | (3,722.25) | 42,741.00 |
| **Total Net Income (Loss)** | (14,245.70) | 1,101.35 | (200.14) | (36,078.82) | (2,602.53) | (4,092.39) | (4,887.86) | (3,501.42) | (989.81) | (1,874.60) | 0.00 | 3,722.25 | (62,198.75) |
| Distributions Out | | | | | | | | | | | | | (7,070.87) |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 42,741.00 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | | Sold 11/4/19 | | | | | |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 35,670.13 |

7/10/2020

EXHIBIT **6**

**Receiver's Property Report**

**5955-59 S. Sacramento / 2948-56 W. 60th St.**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| Total Operating Income | 22,203.80 | 2,610.00 | 1,050.00 | 2,410.00 | 2,820.00 | 1,828.00 | 2,438.00 | 775.00 | 0.00 | 0.00 | 0.00 | 0.00 | 73,228.07 |
| | | | | | | | | | | | | | |
| Total Operating Expense | 10,580.71 | (167.08) | 7,760.56 | 3,967.29 | 2,839.38 | 1,350.70 | 5,981.35 | 2,817.30 | 8.26 | 1,890.67 | 120.24 | 0.00 | 71,383.37 |
| | | | | | | | | | | | | | |
| NOI - Net Operating Income (Loss) | 11,623.09 | 2,777.08 | (6,710.56) | (1,557.29) | (19.38) | 477.30 | (3,543.35) | (2,042.30) | (8.26) | (1,890.67) | (120.24) | 0.00 | 1,844.70 |
| | | | | | | | | | | | | | |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Property Taxes | 16,537.68 | | | | | | | | | | | | 16,537.68 |
| Insurance | | 2,447.64 | 300.78 | 438.73 | 438.73 | 438.73 | 438.73 | 438.73 | 438.73 | 830.91 | | | 9,848.82 |
| Insurance Reconciliation Amount | | | | | | | | | | | | (1,634.25) | (1,634.25) |
| | | | | | | | | | | | | | |
| Funds for Property Expenses Sent to Property Manager by Receivership | 18,433.80 | | 2,172.67 | | 1,025.53 | 2,571.53 | 18.79 | | | 1,496.22 | | | 25,718.54 |
| | | | | | | | | | | | | | |
| Total Property Expenses Paid by Receivership | 34,971.48 | 2,447.64 | 2,473.45 | 438.73 | 1,464.26 | 3,010.26 | 457.52 | 438.73 | 438.73 | 2,327.13 | 0.00 | (1,634.25) | 50,470.79 |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Total Net Income (Loss) | (23,348.39) | 329.44 | (9,184.01) | (1,996.02) | (1,483.64) | (2,532.96) | (4,000.87) | (2,481.03) | (446.99) | (4,217.80) | (120.24) | 1,634.25 | (48,626.09) |
| | | | | | | | | | | | | | |
| Distributions Out | | | | | | | | | | | | | (19,849.67) |
| Contributions In | | | | | | | | | | | | | 21,547.94 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| Rents restored to Property by Receiver | | | | | | | | | | | | | 50,470.79 |
| | | | | | | | | | | | | | |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | | Sold 11/5/19 | | | | | |
| Remaining Amout to be Restored | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 52,169.06 |

EXHIBIT **7**

**Receiver's Property Report**

**6001 - 05 S. Sacramento / 2945-51 W. 60th St.**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| Total Operating Income | 12,117.25 | 4,049.00 | 4,347.00 | 2,711.00 | 3,047.00 | 2,372.00 | 3,047.00 | 3,047.00 | 879.00 | (879.00) | 0.00 | 0.00 | 61,206.25 |
| | | | | | | | | | | | | | |
| Total Operating Expense | 6,923.93 | 2,734.44 | 8,306.97 | 3,974.20 | 3,235.84 | 1,619.31 | 2,914.72 | 2,635.03 | 11.93 | 491.39 | (246.42) | 0.00 | 65,521.87 |
| | | | | | | | | | | | | | |
| NOI - Net Operating Income (Loss) | 5,193.32 | 1,314.56 | (3,959.97) | (1,263.20) | (188.84) | 752.69 | 132.28 | 411.97 | 867.07 | (1,370.39) | 246.42 | 0.00 | (4,315.62) |
| | | | | | | | | | | | | | |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 18,311.70 |
| Insurance | | 1,832.41 | 225.18 | 328.45 | 328.45 | 328.45 | 328.45 | 328.45 | 328.45 | 622.05 | | | 7,373.23 |
| Insurance Reconciliation Amount | | | | | | | | | | | | (1,224.41) | (1,224.41) |
| | | | | | | | | | | | | | |
| Funds for Property Expenses Sent to Property Manager by Receivership | 8,783.25 | | 11,021.25 | | | 2,193.87 | | | | | | | 21,998.37 |
| | | | | | | | | | | | | | |
| Total Property Expenses Paid by Receivership | 8,783.25 | 1,832.41 | 11,246.43 | 328.45 | 328.45 | 2,522.32 | 328.45 | 328.45 | 328.45 | 622.05 | 0.00 | (1,224.41) | 46,458.89 |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Total Net Income (Loss) | (3,589.93) | (517.85) | (15,206.40) | (1,591.65) | (517.29) | (1,769.63) | (196.17) | 83.52 | 538.62 | (1,992.44) | 246.42 | 1,224.41 | (50,774.51) |
| | | | | | | | | | | | | | |
| Distributions Out | | | | | | | | | | | | | (2,512.51) |
| Contributions In | | | | | | | | | | | | | 15,666.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 46,458.89 |
| | | | | | | | | | | | | | |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | Sold 11/5/19 | | | | |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 59,612.38 |

EXHIBIT **8**

**Receiver's Property Report**

**7026-42S Cornell**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 31,085.91 | 9,583.90 | 12,449.00 | 10,114.00 | 10,865.35 | 15,160.00 | 11,371.00 | 6,177.58 | 0.00 | (225.00) | 0.00 | 0.00 | 199,540.91 |
| Total Operating Expense | 21,620.20 | 6,930.92 | 13,232.14 | 22,674.92 | 11,972.39 | 10,889.69 | 9,141.56 | 5,555.48 | 1,396.00 | 254.54 | (4.08) | 0.00 | 225,977.20 |
| NOI - Net Operating Income (Loss) | 9,465.71 | 2,652.98 | (783.14) | (12,560.92) | (1,107.04) | 4,270.31 | 2,229.44 | 622.10 | (1,396.00) | (479.54) | 4.08 | 0.00 | (26,436.29) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 13,622.68 |
| Insurance | | 2,130.73 | 261.84 | 381.92 | 381.92 | 381.92 | 381.92 | 381.92 | 381.92 | 723.33 | | | 8,573.60 |
| Insurance Reconciliation Amount | | | | | | | | | | | | (1,410.79) | (1,410.79) |
| Funds for Property Expenses Sent to Property Manager by Receivership | 21,545.91 | 240.00 | 6,590.98 | | | 15,979.95 | | | | | | | 44,356.84 |
| **Total Property Expenses Paid by Receivership** | 21,545.91 | 2,370.73 | 6,852.82 | 381.92 | 381.92 | 16,361.87 | 381.92 | 381.92 | 381.92 | 723.33 | 0.00 | (1,410.79) | 65,142.33 |
| **Total Net Income (Loss)** | (12,080.20) | 282.25 | (7,635.96) | (12,942.84) | (1,488.96) | (12,091.56) | 1,847.52 | 240.18 | (1,777.92) | (1,202.87) | 4.08 | 1,410.79 | (91,578.62) |
| Distributions Out | | | | | | | | | | | | | (7,162.65) |
| Contributions In | | | | | | | | | | | | | 45,579.22 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 65,142.33 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | sold 11/6/19 | | | | | | |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 103,558.90 |

EXHIBIT **9**

**Receiver's Property Report**

**414 Walnut/701 S 5th St.**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 16,175.00 | 17,012.00 | 14,407.00 | 19,064.32 | 16,433.00 | 14,007.60 | 19,750.37 | 16,674.00 | 13,826.00 | 17,756.00 | 16,333.00 | 13,916.00 | 332,116.96 |
| Total Operating Expense | 37,190.22 | 6,941.66 | 5,656.58 | 7,093.14 | 6,710.98 | 9,022.83 | 56,533.18 | 7,087.06 | 10,371.51 | 12,495.79 | 23,552.60 | 13,877.67 | 300,265.09 |
| NOI - Net Operating Income (Loss) | (21,015.22) | 10,070.34 | 8,750.42 | 11,971.18 | 9,722.02 | 4,984.77 | (36,782.81) | 9,586.94 | 3,454.49 | 5,260.21 | (7,219.60) | 38.33 | 31,851.87 |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | 72,018.73 | | | | | | | | | | | | 72,018.73 |
| Insurance | | 3,488.77 | 428.72 | 625.35 | 625.35 | 625.35 | 625.35 | 625.35 | 625.35 | 1,184.34 | | 408.74 | 14,446.84 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 427.54 | 427.54 |
| Village of Maywood Inspection | | | | | | | 900.00 | 1,600.00 | | | | | 2,500.00 |
| **Total Property Expenses Paid by Receivership** | 72,018.73 | 3,488.77 | 428.72 | 625.35 | 625.35 | 625.35 | 1,525.35 | 2,225.35 | 625.35 | 1,184.34 | 0.00 | 836.28 | 89,393.11 |
| **Total Net Income (Loss)** | (93,033.95) | 6,581.57 | 8,321.70 | 11,345.83 | 9,096.67 | 4,359.42 | (38,308.16) | 7,361.59 | 2,829.14 | 4,075.87 | (7,219.60) | (797.95) | (57,541.24) |
| Distributions Out | | | | | | | | | | | | | (31,429.58) |
| Contributions In | | | | | | | | | | | | | 13,735.35 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 89,393.11 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | Sold 3/31/20 | |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 71,698.88 |

EXHIBIT **10**

**Receiver's Property Report**

**7750-58 S. Muskegon/ 2818-36 E. 78th Street**

| | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 4,778.00 | 4,684.00 | 5,680.00 | 6,542.00 | 3,634.50 | 6,649.50 | 5,353.00 | 3,898.00 | 3,304.00 | 4,064.00 | 0.00 | 0.00 | 0.00 | 114,110.50 |
| Total Operating Expense | 12,275.69 | 8,387.24 | 41,428.55 | 16,623.37 | 10,303.82 | 20,485.47 | 20,901.33 | 12,550.27 | 15,883.97 | 12,102.20 | 1,950.37 | (1,758.50) | 0.00 | 270,470.42 |
| NOI - Net Operating Income (Loss) | (7,497.69) | (3,703.24) | (35,748.55) | (10,081.37) | (6,669.32) | (13,835.97) | (15,548.33) | (8,652.27) | (12,579.97) | (8,038.20) | (1,950.37) | 1,758.50 | 0.00 | (156,359.92) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | | |
| Property Taxes | | 18,058.79 | | | | | | | | | | | | 18,058.79 |
| Insurance | | | 7,395.15 | 908.77 | 1,325.55 | 1,325.55 | 1,325.55 | 1,325.55 | 1,325.55 | 1,325.55 | 2,510.45 | | | 29,756.60 |
| Insurance Reconciliation Amount | | | | | | | | | | | | | (3,066.33) | (3,066.33) |
| Funds for Property Expenses Sent to Property Manager by Receivership | 17,000.00 | | 45,000.00 | | | 20,000.00 | | | 15,000.00 | 5,000.00 | 22,000.00 | 7,000.00 | | 143,250.00 |
| Total Property Expenses Paid by Receivership | 17,000.00 | 18,058.79 | 52,395.15 | 908.77 | 1,325.55 | 21,325.55 | 1,325.55 | 1,325.55 | 16,325.55 | 6,325.55 | 24,510.45 | 7,000.00 | (3,066.33) | 187,999.06 |
| Total Net Income (Loss) | (24,497.69) | (21,762.03) | (88,143.70) | (10,990.14) | (7,994.87) | (35,161.52) | (16,873.88) | (9,977.82) | (28,905.52) | (14,363.75) | (26,460.82) | (5,241.50) | 3,066.33 | (344,358.98) |
| Distributions Out | | | | | | | | | | | | | | 0.00 |
| Contributions In | | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | | 5,000.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | | 187,999.06 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | Sold 12/18/19 | | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | | 192,999.06 |

EXHIBIT **11**

**Receiver's Property Report**

**7748-50 S Essex/ 2450-52 E 78th Street**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 16,061.05 | 14,689.00 | 13,235.61 | 17,277.00 | 13,536.00 | 14,234.00 | 13,426.00 | 11,476.00 | 13,325.50 | 3,166.00 | 500.00 | 0.00 | 251,936.89 |
| Total Operating Expense | 22,589.34 | 15,598.88 | 11,331.56 | 10,007.69 | 7,290.90 | 13,006.30 | 20,098.42 | 11,930.18 | 7,096.77 | 1,063.56 | (142.04) | 68.78 | 264,150.83 |
| NOI - Net Operating Income (Loss) | (6,528.29) | (909.88) | 1,904.05 | 7,269.31 | 6,245.10 | 1,227.70 | (6,672.42) | (454.18) | 6,228.73 | 2,102.44 | 642.04 | (68.78) | (12,213.94) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 5,036.92 | 618.97 | 902.85 | 902.85 | 902.85 | 902.85 | 902.85 | 902.85 | 1,709.90 | | | 20,267.57 |
| Insurance Reconciliation Amount | | | | | | | | | | | | (2,088.51) | (2,088.51) |
| Funds for Property Expenses Sent to Property Manager by Receivership | 10,667.91 | | | | | | | | | | | | 10,667.91 |
| Total Property Expenses Paid by Receivership | 10,667.91 | 5,036.92 | 618.97 | 902.85 | 902.85 | 902.85 | 902.85 | 902.85 | 902.85 | 1,709.90 | 0.00 | (2,088.51) | 28,846.97 |
| Total Net Income (Loss) | (17,196.20) | (5,946.80) | 1,285.08 | 6,366.46 | 5,342.25 | 324.85 | (7,575.27) | (1,357.03) | 5,325.88 | 392.54 | 642.04 | 2,019.73 | (41,060.91) |
| Distributions Out | | | | | | | | | | | | | (3,767.50) |
| Contributions In | | | | | | | | | | | | | 30,003.12 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 28,846.97 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | Sold 12/28/19 | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 55,082.59 |

7/10/2020

EXHIBIT **12**

**Receiver's Property Report**

**7635 S East End Ave**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 13,520.00 | 12,976.00 | 12,767.20 | 13,283.00 | 13,469.00 | 12,916.00 | 12,600.00 | 10,472.00 | 13,572.00 | 0.00 | (1,677.00) | 0.00 | 181,298.20 |
| Total Operating Expense | 10,414.99 | 9,142.02 | 10,036.63 | 32,175.99 | 8,216.52 | 5,552.37 | 7,101.74 | 10,692.82 | 6,219.96 | 1,349.94 | 0.00 | 0.00 | 223,452.76 |
| NOI - Net Operating Income (Loss) | 3,105.01 | 3,833.98 | 2,730.57 | (18,892.99) | 5,252.48 | 7,363.63 | 5,498.26 | (220.82) | 7,352.04 | (1,349.94) | (1,677.00) | 0.00 | (42,154.56) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 3,633.66 | 446.53 | 651.32 | 651.32 | 651.32 | 651.32 | 651.32 | 651.32 | 1,233.53 | | | 14,621.13 |
| Insurance Reconciliation Amount | | | | | | | | | | | | (1,464.64) | (1,464.64) |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | | | | | | | | | | | 36,000.00 |
| **Total Property Expenses Paid by Receivership** | 0.00 | 3,633.66 | 446.53 | 651.32 | 651.32 | 651.32 | 651.32 | 651.32 | 651.32 | 1,233.53 | 0.00 | (1,464.64) | 49,156.49 |
| **Total Net Income (Loss)** | 3,105.01 | 200.32 | 2,284.04 | (19,544.31) | 4,601.16 | 6,712.31 | 4,846.94 | (872.14) | 6,700.72 | (2,583.47) | (1,677.00) | 1,464.64 | (91,311.05) |
| Distributions Out | | | | | | | | | | | | | 0.00 |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 31,000.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 49,156.49 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | Sold 12/28/19 | | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 80,156.49 |

7/10/2020

EXHIBIT **13**

**Receiver's Property Report**

**8047 S Manistee**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 7,849.39 | 8,634.10 | 11,659.90 | 8,531.50 | 7,940.50 | 7,542.00 | 7,045.00 | 7,252.80 | 5,149.00 | 7,110.00 | 2,329.00 | 582.00 | 161,110.79 |
| Total Operating Expense | 5,840.90 | 14,083.32 | 6,642.36 | 13,327.95 | 10,821.64 | 10,179.68 | 5,944.59 | 15,881.01 | 7,406.37 | 12,536.71 | 7,621.77 | 1,236.64 | 199,131.79 |
| NOI - Net Operating Income (Loss) | 2,008.49 | (5,449.22) | 5,017.54 | (4,796.45) | (2,881.14) | (2,637.68) | 1,100.41 | (8,628.21) | (2,257.37) | (5,426.71) | (5,292.77) | (654.64) | (38,021.00) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | 11,506.00 | | | | | | | | | | | | 11,506.00 |
| Insurance | | 4,145.99 | 509.49 | 743.15 | 743.15 | 743.15 | 743.15 | 743.15 | 743.15 | 1,407.45 | | | 16,682.63 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | 8,000.00 | | | | | | 2,000.00 | 8,000.00 | 10,000.00 | 4,000.00 | 40,500.00 |
| **Total Property Expenses Paid by Receivership** | 11,506.00 | 4,145.99 | 8,509.49 | 743.15 | 743.15 | 743.15 | 743.15 | 743.15 | 2,743.15 | 9,407.45 | 10,000.00 | 4,000.00 | 68,688.63 |
| **Total Net Income (Loss)** | (9,497.51) | (9,595.21) | (3,491.95) | (5,539.60) | (3,624.29) | (3,380.83) | 357.26 | (9,371.36) | (5,000.52) | (14,834.16) | (15,292.77) | (4,654.64) | (106,709.63) |
| Distributions Out | | | | | | | | | | | | | (7,979.87) |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | (2,000.00) |
| Inter Property Transfers In | | | | | | | | | | | | | 6,000.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 68,688.63 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | Sold 2/5/20 | | |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| WPD transferred money without permission from 1131 E 79th Place in Feb 2019 will transferred back in March 2019 | | | | | | | | | | | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 64,708.76 |

7/10/2020

EXHIBIT **14**

**Receiver's Property Report**

**7749 S. Yates Blvd**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 7,362.00 | 9,756.00 | 8,268.00 | 7,362.00 | 8,213.00 | 6,689.00 | 6,639.00 | 4,130.00 | 5,513.50 | 4,736.50 | 3,934.80 | 3,429.00 | 153,345.05 |
| Total Operating Expense | 7,947.73 | 9,830.36 | 22,748.67 | 7,947.73 | 18,990.89 | 7,924.15 | 10,843.80 | 28,123.78 | 9,068.85 | 29,787.04 | 18,695.24 | 11,881.89 | 278,136.35 |
| NOI - Net Operating Income (Loss) | (585.73) | (74.36) | (14,480.67) | (585.73) | (10,777.89) | (1,235.15) | (4,204.80) | (23,993.78) | (3,555.35) | (25,050.54) | (14,760.44) | (8,452.89) | (124,791.30) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | 13,973.55 | | | | | | | | | | | | 13,973.55 |
| Insurance | | 5,150.75 | 632.96 | 923.25 | 923.25 | 923.25 | 923.25 | 923.25 | 923.25 | 1,748.54 | | 603.45 | 21,329.03 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 631.22 | 631.22 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | | 20,000.00 | 10,000.00 | | | 15,000.00 | 5,000.00 | 24,000.00 | 15,950.00 | 2,500.00 | 95,950.00 |
| Total Property Expenses Paid by Receivership | 13,973.55 | 5,150.75 | 632.96 | 20,923.25 | 10,923.25 | 923.25 | 923.25 | 15,923.25 | 5,923.25 | 25,748.54 | 15,950.00 | 3,734.67 | 131,883.80 |
| Total Net Income (Loss) | (14,559.28) | (5,225.11) | (15,113.63) | (21,508.98) | (21,701.14) | (2,158.40) | (5,128.05) | (39,917.03) | (9,478.60) | (50,799.08) | (30,710.44) | (12,187.56) | (256,675.10) |
| Distributions Out | | | | | | | | | | | | | 0.00 |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 7,500.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 131,883.80 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 139,383.80 |

7/10/2020

EXHIBIT **15**

**Receiver's Property Report**

**2220-2226 East 75th Street / 7450 S Luella Ave**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 6,175.00 | 7,106.00 | 4,570.75 | 5,990.25 | 5,659.00 | 5,852.50 | 6,605.75 | 4,040.25 | 4,114.00 | 4,075.00 | 6,423.28 | 4,897.40 | 113,349.93 |
| Total Operating Expense | 11,220.51 | 8,173.82 | 3,640.64 | 4,849.13 | 3,103.13 | 3,487.86 | 13,531.26 | 4,629.97 | 2,461.42 | 4,645.30 | 3,072.93 | 4,191.33 | 121,618.83 |
| NOI - Net Operating Income (Loss) | (5,045.51) | (1,067.82) | 930.11 | 1,141.12 | 2,555.87 | 2,364.64 | (6,925.51) | (589.72) | 1,652.58 | (570.30) | 3,350.35 | 706.07 | (8,268.90) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 3,403.87 | 418.29 | 610.13 | 610.13 | 610.13 | 610.13 | 610.13 | 610.13 | 1,155.52 | | 398.79 | 14,095.27 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 417.15 | 417.15 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | 11,000.00 | | | | | | | | | | | 14,000.00 |
| Total Property Expenses Paid by Receivership | 0.00 | 14,403.87 | 418.29 | 610.13 | 610.13 | 610.13 | 610.13 | 610.13 | 610.13 | 1,155.52 | 0.00 | 815.94 | 28,512.42 |
| Total Net Income (Loss) | (5,045.51) | (15,471.69) | 511.82 | 530.99 | 1,945.74 | 1,754.51 | (7,535.64) | (1,199.85) | 1,042.45 | (1,725.82) | 3,350.35 | (109.87) | (36,781.32) |
| Distributions Out | | | | | | | | | | | | | (3,007.69) |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 28,512.42 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 25,504.73 |

EXHIBIT **16**

**Receiver's Property Report**

**7546-48 S Saginaw**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| Total Operating Income | 8,508.00 | 5,530.00 | 9,950.00 | 8,425.00 | 8,321.00 | 9,415.00 | 10,362.00 | 8,308.00 | 9,175.77 | 10,049.73 | 7,758.00 | 8,200.00 | 187,125.83 |
| | | | | | | | | | | | | | |
| Total Operating Expense | 29,015.10 | 8,070.97 | 7,034.94 | 7,026.63 | 6,631.65 | 10,029.91 | 6,468.71 | 12,723.65 | 5,362.66 | 13,051.22 | 10,835.01 | 8,209.38 | 206,086.77 |
| | | | | | | | | | | | | | |
| NOI - Net Operating Income (Loss) | (20,507.10) | (2,540.97) | 2,915.06 | 1,398.37 | 1,689.35 | (614.91) | 3,893.29 | (4,415.65) | 3,813.11 | (3,001.49) | (3,077.01) | (9.38) | (18,960.94) |
| | | | | | | | | | | | | | |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 3,207.20 |
| Insurance | | 2,283.87 | 280.66 | 409.38 | 409.38 | 409.38 | 409.38 | 409.38 | 409.38 | 775.31 | | 267.57 | 9,457.43 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 279.90 | 279.90 |
| | | | | | | | | | | | | | |
| Funds for Property Expenses Sent to Property Manager by Receivership | 4,624.52 | | | | 5,463.32 | | | | | | | | 10,087.84 |
| | | | | | | | | | | | | | |
| **Total Property Expenses Paid by Receivership** | 4,624.52 | 2,283.87 | 280.66 | 409.38 | 5,872.70 | 409.38 | 409.38 | 409.38 | 409.38 | 775.31 | 0.00 | 547.47 | 23,032.37 |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Total Net Income (Loss)** | (25,131.62) | (4,824.84) | 2,634.40 | 988.99 | (4,183.35) | (1,024.29) | 3,483.91 | (4,825.03) | 3,403.73 | (3,776.80) | (3,077.01) | (556.85) | (41,993.31) |
| | | | | | | | | | | | | | |
| Distributions Out | | | | | | | | | | | | | (8,240.75) |
| Contributions In | | | | | | | | | | | | | 12,539.32 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 23,032.37 |
| | | | | | | | | | | | | | |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 27,330.94 |

7/10/2020

EXHIBIT **17**

**Receiver's Property Report**

**8201 S. Kingston**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 2,960.00 | 2,580.00 | 1,780.00 | 2,008.00 | 1,850.00 | 720.00 | 1,790.00 | 2,650.00 | 6,840.00 | 3,062.00 | 1,950.00 | 2,120.00 | 61,037.75 |
| Total Operating Expense | 4,247.86 | 9,280.72 | 2,219.79 | 2,486.50 | 3,497.72 | 2,322.47 | 2,810.90 | 3,011.55 | 3,098.67 | 3,729.46 | 3,489.96 | 4,029.26 | 91,222.77 |
| NOI - Net Operating Income (Loss) | (1,287.86) | (6,700.72) | (439.79) | (478.50) | (1,647.72) | (1,602.47) | (1,020.90) | (361.55) | 3,741.33 | (667.46) | (1,539.96) | (1,909.26) | (30,185.02) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 2,076.62 | 255.19 | 372.22 | 372.22 | 372.22 | 372.22 | 372.22 | 372.22 | 704.95 | | 243.29 | 8,599.13 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 254.50 | 254.50 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | 8,000.00 | | | | | | | 1,000.00 | | | 17,000.00 |
| Total Property Expenses Paid by Receivership | 0.00 | 2,076.62 | 8,255.19 | 372.22 | 372.22 | 372.22 | 372.22 | 372.22 | 372.22 | 1,704.95 | 0.00 | 497.79 | 25,853.63 |
| Total Net Income (Loss) | (1,287.86) | (8,777.34) | (8,694.98) | (850.72) | (2,019.94) | (1,974.69) | (1,393.12) | (733.77) | 3,369.11 | (2,372.41) | (1,539.96) | (2,407.05) | (56,038.65) |
| Distributions Out | | | | | | | | | | | | | (1,223.43) |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 10,000.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 25,853.63 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 34,630.20 |

7/10/2020

EXHIBIT **18**

**Receiver's Property Report**

**8326-8354 S Ellis**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 28,261.00 | 26,706.00 | 26,052.00 | 23,915.00 | 25,504.25 | 26,681.00 | 24,719.00 | 16,630.00 | 21,484.00 | 24,996.00 | 21,754.00 | 20,868.75 | 505,099.03 |
| Total Operating Expense | 51,734.02 | 20,478.56 | 17,609.71 | 50,277.17 | 20,477.44 | 11,814.67 | 42,214.78 | 22,782.33 | 19,559.85 | 18,325.72 | 43,032.16 | 30,097.82 | 558,479.79 |
| NOI - Net Operating Income (Loss) | (23,473.02) | 6,227.44 | 8,442.29 | (26,362.17) | 5,026.81 | 14,866.33 | (17,495.78) | (6,152.33) | 1,924.15 | 6,670.28 | (21,278.16) | (9,229.07) | (53,380.76) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | 24,344.02 | | | | | | | | | | | | 24,344.02 |
| Insurance | | 7,287.38 | 895.52 | 1,306.23 | 1,306.23 | 1,306.23 | 1,306.23 | 1,306.23 | 1,306.23 | 2,473.87 | | 853.77 | 30,176.71 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 893.06 | 893.06 |
| Funds for Property Expenses Sent to Property Manager by Receivership | 15,948.89 | | | | | | | | | | 1,029.33 | 12,480.28 | 29,458.50 |
| **Total Property Expenses Paid by Receivership** | 40,292.91 | 7,287.38 | 895.52 | 1,306.23 | 1,306.23 | 1,306.23 | 1,306.23 | 1,306.23 | 1,306.23 | 2,473.87 | 1,029.33 | 14,227.11 | 84,872.29 |
| **Total Net Income (Loss)** | (63,765.93) | (1,059.94) | 7,546.77 | (27,668.40) | 3,720.58 | 13,560.10 | (18,802.01) | (7,458.56) | 617.92 | 4,196.41 | (22,307.49) | (23,456.18) | (138,253.05) |
| Distributions Out | | | | | | | | | | | | | (2,418.88) |
| Contributions In | | | | | | | | | | | | | 13,383.73 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 84,872.29 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 95,837.14 |

7/10/2020

EXHIBIT **19**

**Receiver's Property Report**

**5450 S. Indiana Ave / 118-132 E Garfield**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 22,553.00 | 26,317.00 | 21,653.50 | 22,553.00 | 23,188.49 | 23,062.00 | 22,168.00 | 24,334.00 | 21,980.00 | 23,612.00 | 22,702.49 | 21,380.50 | 490,305.38 |
| Total Operating Expense | 17,516.20 | 31,507.56 | 23,611.09 | 17,516.20 | 13,401.31 | 10,342.84 | 4,512.90 | 10,075.78 | 10,736.57 | 24,819.95 | 13,897.30 | 18,334.03 | 290,099.11 |
| NOI - Net Operating Income (Loss) | 5,036.80 | (5,190.56) | (1,957.59) | 5,036.80 | 9,787.18 | 12,719.16 | 17,655.10 | 14,258.22 | 11,243.43 | (1,207.95) | 8,805.19 | 3,046.47 | 200,206.27 |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 5,296.19 | 650.83 | 949.32 | 949.32 | 949.32 | 949.32 | 949.32 | 949.32 | 1,797.91 | | 620.49 | 21,931.29 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 649.04 | 649.04 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | | | | | | | | | | | 18,000.00 |
| **Total Property Expenses Paid by Receivership** | 0.00 | 5,296.19 | 650.83 | 949.32 | 949.32 | 949.32 | 949.32 | 949.32 | 949.32 | 1,797.91 | 0.00 | 1,269.53 | 40,580.33 |
| **Total Net Income (Loss)** | 5,036.80 | (10,486.75) | (2,608.42) | 4,087.48 | 8,837.86 | 11,769.84 | 16,705.78 | 13,308.90 | 10,294.11 | (3,005.86) | 8,805.19 | 1,776.94 | 159,625.94 |
| Distributions Out | | | | | | | | | | | | | (31,909.46) |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 40,580.33 |
| Rents Restored to Property by Receiver | | | | | | 8.28 | | | | | | | 8.28 |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 8,679.15 |

7/10/2020

EXHIBIT **20**

**Receiver's Property Report**

**6437 S. Kenwood Ave**

| | Apr-19 | May-19 | Jun-19 | Jul-19 | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 12,655.00 | 14,667.00 | 12,549.00 | 11,884.00 | 12,249.00 | 10,781.50 | 11,859.00 | 11,064.25 | 10,839.25 | 8,992.00 | 7,019.50 | 13,056.90 | 261,914.02 |
| Total Operating Expense | 14,659.20 | 24,776.95 | 5,384.41 | 15,359.75 | 6,701.63 | 7,877.38 | 9,326.07 | 10,303.98 | 8,565.89 | 11,323.72 | 14,767.15 | 7,223.59 | 239,456.54 |
| NOI - Net Operating Income (Loss) | (2,004.20) | (10,109.95) | 7,164.59 | (3,475.75) | 5,547.37 | 2,904.12 | 2,532.93 | 760.27 | 2,273.36 | (2,331.72) | (7,747.65) | 5,833.31 | 22,457.48 |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 3,697.70 | 454.40 | 662.80 | 662.80 | 662.80 | 662.80 | 662.80 | 662.80 | 1,255.27 | | 433.21 | 15,312.03 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 453.15 | 453.15 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | | | | | | | | | | | 2,000.00 |
| **Total Property Expenses Paid by Receivership** | 0.00 | 3,697.70 | 454.40 | 662.80 | 662.80 | 662.80 | 662.80 | 662.80 | 662.80 | 1,255.27 | 0.00 | 886.36 | 17,765.18 |
| **Total Net Income (Loss)** | (2,004.20) | (13,807.65) | 6,710.19 | (4,138.55) | 4,884.57 | 2,241.32 | 1,870.13 | 97.47 | 1,610.56 | (3,586.99) | (7,747.65) | 4,946.95 | 4,692.30 |
| Distributions Out | | | | | | | | | | | | | (15,970.92) |
| Contributions In | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 17,765.18 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 1,794.26 |

7/10/2020

EXHIBIT **21**

**Receiver's Property Report**

**7760 S Coles**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 1,156.00 | (1,560.00) | 1,440.00 | 1,440.00 | 650.00 | 650.00 | 0.00 | (1,300.00) | 8,152.10 | 0.00 | 0.00 | 0.00 | 48,350.10 |
| Total Operating Expense | 7,908.85 | 3,554.14 | 2,317.43 | 3,560.03 | 6,289.15 | 2,977.04 | 1,270.55 | 11,658.52 | 491.21 | 4,239.08 | 1,352.77 | 1,664.76 | 80,694.10 |
| NOI - Net Operating Income (Loss) | (6,752.85) | (5,114.14) | (877.43) | (2,120.03) | (5,639.15) | (2,327.04) | (1,270.55) | (12,958.52) | 7,660.89 | (4,239.08) | (1,352.77) | (1,664.76) | (32,344.00) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 1,696.09 | 208.43 | 304.02 | 304.02 | 304.02 | 304.02 | 304.02 | 304.02 | 575.78 | | 198.71 | 7,023.45 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 207.86 | 207.86 |
| Funds for Property Expenses Sent to Property Manager by Receivership | 5,601.70 | | 9,307.20 | 35.45 | 1,721.56 | 2,009.63 | 7,619.16 | 10,895.53 | 8,116.65 | 70.90 | | 868.00 | 63,225.78 |
| Total Property Expenses Paid by Receivership | 5,601.70 | 1,696.09 | 9,515.63 | 339.47 | 2,025.58 | 2,313.65 | 7,923.18 | 11,199.55 | 8,420.67 | 646.68 | 0.00 | 1,274.57 | 70,457.09 |
| Total Net Income (Loss) | (12,354.55) | (6,810.23) | (10,393.06) | (2,459.50) | (7,664.73) | (4,640.69) | (9,193.73) | (24,158.07) | (759.78) | (4,885.76) | (1,352.77) | (2,939.33) | (102,801.09) |
| Distributions Out | | | | | | | | | | | | | (7,064.32) |
| Contributions In | | | | | | | | | | | | | 4,394.99 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 70,457.09 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 67,787.76 |

7/10/2020

EXHIBIT **22**

**Receiver's Property Report**

**8000-02 S Justine /1541 E 80th St**

| | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 1,350.00 | 3,400.00 | 2,445.00 | 3,972.00 | 1,845.00 | 5,859.00 | 250.00 | 10,484.41 | 3,423.00 | 6,165.00 | 2,938.00 | 82,486.41 |
| Total Operating Expense | 8,507.87 | 3,698.55 | 7,885.89 | 14,085.44 | 3,456.28 | 4,062.21 | 7,710.88 | 10,523.27 | 10,705.32 | 10,662.00 | 2,082.07 | 168,378.00 |
| NOI - Net Operating Income (Loss) | (7,157.87) | (298.55) | (5,440.89) | (10,113.44) | (1,611.28) | 1,796.79 | (7,460.88) | (38.86) | (7,282.32) | (4,497.00) | 855.93 | (85,891.59) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | 0.00 |
| Insurance | 1,804.53 | 221.75 | 323.45 | 323.45 | 323.45 | 323.45 | 323.45 | 323.45 | 612.59 | | 211.41 | 7,472.45 |
| Insurance Reconciliation Amount | | | | | | | | | | | 221.14 | 221.14 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | 16,140.21 | 78.62 | 4,190.02 | 4,739.34 | 13,525.31 | 78.62 | 8,735.79 | 2,572.82 | 15,901.70 | | 79,156.67 |
| Total Property Expenses Paid by Receivership | 1,804.53 | 16,361.96 | 402.07 | 4,513.47 | 5,062.79 | 13,848.76 | 402.07 | 9,059.24 | 3,185.41 | 15,901.70 | 432.55 | 86,850.26 |
| Total Net Income (Loss) | (8,962.40) | (16,660.51) | (5,842.96) | (14,626.91) | (6,674.07) | (12,051.97) | (7,862.95) | (9,098.10) | (10,467.73) | (20,398.70) | 423.38 | (172,741.85) |
| Distributions Out | | | | | | | | | | | | 0.00 |
| Contributions In | | | | | | | | | | | | 26,747.38 |
| Inter Property Transfers Out | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | 86,850.26 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | 113,597.64 |

EXHIBIT **23**

**Receiver's Property Report**

**8107 S Ellis**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 7,942.00 | 332.00 | 2,912.00 | 3,828.00 | 6,312.00 | 5,653.00 | 6,268.00 | 11,483.00 | 5,996.00 | 7,378.00 | 5,836.00 | 10,013.00 | 125,814.30 |
| Total Operating Expense | 23,536.30 | (7,369.19) | 3,645.92 | 4,440.71 | 5,534.78 | 9,101.75 | 5,973.06 | 6,299.80 | 8,515.83 | 10,840.22 | 4,857.52 | 5,610.08 | 131,168.94 |
| NOI - Net Operating Income (Loss) | (15,594.30) | 7,701.19 | (733.92) | (612.71) | 777.22 | (3,448.75) | 294.94 | 5,183.20 | (2,519.83) | (3,462.22) | 978.48 | 4,402.92 | (5,354.64) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 1,889.07 | 232.14 | 338.61 | 338.61 | 338.61 | 338.61 | 338.61 | 338.61 | 641.29 | | 221.32 | 7,822.57 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 231.51 | 231.51 |
| Funds for Property Expenses Sent to Property Manager by Receivership | 5,373.69 | 16,750.00 | 7,500.00 | 27,500.00 | | | 5,189.95 | | | | | | 74,063.64 |
| Total Property Expenses Paid by Receivership | 5,373.69 | 18,639.07 | 7,732.14 | 27,838.61 | 338.61 | 338.61 | 5,528.56 | 338.61 | 338.61 | 641.29 | 0.00 | 452.83 | 82,117.72 |
| Total Net Income (Loss) | (20,967.99) | (10,937.88) | (8,466.06) | (28,451.32) | 438.61 | (3,787.36) | (5,233.62) | 4,844.59 | (2,858.44) | (4,103.51) | 978.48 | 3,950.09 | (87,472.36) |
| Distributions Out | | | | | | | | | | | | | (5,127.09) |
| Contributions In | | | | | | | | | | | | | 3,859.55 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 82,117.72 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 80,850.18 |

EXHIBIT **24**

**Receiver's Property Report**

**8214 S Ingleside**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 4,225.00 | 5,594.75 | 3,510.50 | 4,943.99 | 3,609.16 | 6,955.00 | 3,464.00 | 3,729.00 | 14,253.04 | 2,671.00 | 3,945.00 | 3,861.00 | 97,292.16 |
| Total Operating Expense | 12,540.79 | 9,386.17 | 6,585.46 | 4,225.23 | 5,891.57 | 6,610.45 | 7,447.18 | 10,981.57 | 4,143.74 | 4,808.83 | 11,105.46 | 8,651.51 | 147,294.77 |
| NOI - Net Operating Income (Loss) | (8,315.79) | (3,791.42) | (3,074.96) | 718.76 | (2,282.41) | 344.55 | (3,983.18) | (7,252.57) | 10,109.30 | (2,137.83) | (7,160.46) | (4,790.51) | (50,002.61) |
| **Property Expenses Paid by Receivership** | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 1,524.35 | 187.32 | 273.23 | 273.23 | 273.23 | 273.23 | 273.23 | 273.23 | 517.48 | | 178.59 | 6,312.25 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 186.82 | 186.82 |
| Funds for Property Expenses Sent to Property Manager by Receivership | | | 10,643.92 | | | 3,161.79 | 3,485.57 | | 9,580.04 | | 6,383.58 | 3,275.00 | 36,529.90 |
| **Total Property Expenses Paid by Receivership** | 0.00 | 1,524.35 | 10,831.24 | 273.23 | 273.23 | 3,435.02 | 3,758.80 | 273.23 | 9,853.27 | 517.48 | 6,383.58 | 3,640.41 | 43,028.97 |
| **Total Net Income (Loss)** | (8,315.79) | (5,315.77) | (13,906.20) | 445.53 | (2,555.64) | (3,090.47) | (7,741.98) | (7,525.80) | 256.03 | (2,655.31) | (13,544.04) | (8,430.92) | (93,031.58) |
| Distributions Out | | | | | | | | | | | | | (1,470.62) |
| Contributions In | | | | | | | | | | | | | 21,263.20 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 43,028.97 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| **Remaining Amount to be Restored** | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 62,821.55 |

7/10/2020

EXHIBIT **25**

**Receiver's Property Report**

**11117 S Longwood**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 27,627.00 | 27,272.16 | 26,856.00 | 29,336.00 | 30,804.00 | 26,126.00 | 33,034.50 | 26,269.00 | 30,980.00 | 29,829.00 | 27,771.00 | 32,612.50 | 608,144.09 |
| Total Operating Expense | 72,627.49 | 15,407.11 | 19,771.01 | 8,923.63 | 16,323.25 | 47,336.29 | 39,959.04 | 17,876.67 | 21,976.66 | 21,992.01 | 38,666.45 | 18,731.69 | 536,720.92 |
| NOI - Net Operating Income (Loss) | (45,000.49) | 11,865.05 | 7,084.99 | 20,412.37 | 14,480.75 | (21,210.29) | (6,924.54) | 8,392.33 | 9,003.34 | 7,836.99 | (10,895.45) | 13,880.81 | 71,423.17 |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 5,416.63 | 665.63 | 970.91 | 970.91 | 970.91 | 970.91 | 970.91 | 970.91 | 1,838.80 | | 634.60 | 22,430.03 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 663.81 | 663.81 |
| Funds for Property Expenses Sent to Property Manager by Receivership | 17,610.43 | | 7,071.18 | | | | | | | | | | 24,681.61 |
| Total Property Expenses Paid by Receivership | 17,610.43 | 5,416.63 | 7,736.81 | 970.91 | 970.91 | 970.91 | 970.91 | 970.91 | 970.91 | 1,838.80 | 0.00 | 1,298.41 | 47,775.45 |
| Total Net Income (Loss) | (62,610.92) | 6,448.42 | (651.82) | 19,441.46 | 13,509.84 | (22,181.20) | (7,895.45) | 7,421.42 | 8,032.43 | 5,998.19 | (10,895.45) | 12,582.40 | 23,647.72 |
| Distributions Out | | | | | | | | | | | | | (55,647.07) |
| Contributions In | | | | | | | | | | | | | 20,556.05 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 47,775.45 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 12,684.43 |

EXHIBIT **26**

**Receiver's Property Report**

**8209 S Ellis**

| | 19-Apr | 19-May | 19-Jun | 19-Jul | 19-Aug | 19-Sep | 19-Oct | 19-Nov | 19-Dec | 20-Jan | 20-Feb | 20-Mar | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Operating Income | 5,302.00 | 5,257.00 | 5,321.50 | 7,377.65 | 4,753.00 | 6,510.00 | 2,264.00 | 5,678.00 | 11,202.91 | 4,654.00 | 6,613.00 | 7,495.00 | 112,616.24 |
| Total Operating Expense | 18,684.35 | 15,410.05 | 6,394.67 | 8,484.09 | 4,849.23 | 2,120.63 | 6,690.07 | 7,298.60 | 4,600.51 | 7,116.44 | 9,212.89 | 8,303.65 | 146,387.41 |
| NOI - Net Operating Income (Loss) | (13,382.35) | (10,153.05) | (1,073.17) | (1,106.44) | (96.23) | 4,389.37 | (4,426.07) | (1,620.60) | 6,602.40 | (2,462.44) | (2,599.89) | (808.65) | (33,771.17) |
| Property Expenses Paid by Receivership | | | | | | | | | | | | | |
| Property Taxes | | | | | | | | | | | | | 0.00 |
| Insurance | | 2,301.58 | 282.83 | 412.55 | 412.55 | 412.55 | 412.55 | 412.55 | 412.55 | 781.32 | | 269.65 | 9,530.73 |
| Insurance Reconciliation Amount | | | | | | | | | | | | 282.06 | 282.06 |
| Funds for Property Expenses Sent to Property Manager by Receivership | 10,253.17 | 7,616.13 | 11,417.72 | | | | | | 5,039.91 | | | 7,741.43 | 42,068.36 |
| Total Property Expenses Paid by Receivership | 10,253.17 | 9,917.71 | 11,700.55 | 412.55 | 412.55 | 412.55 | 412.55 | 412.55 | 5,452.46 | 781.32 | 0.00 | 8,293.14 | 51,881.15 |
| Total Net Income (Loss) | (23,635.52) | (20,070.76) | (12,773.72) | (1,518.99) | (508.78) | 3,976.82 | (4,838.62) | (2,033.15) | 1,149.94 | (3,243.76) | (2,599.89) | (9,101.79) | (85,652.32) |
| Distributions Out | | | | | | | | | | | | | (2,505.14) |
| Contributions In | | | | | | | | | | | | | 6,470.85 |
| Inter Property Transfers Out | | | | | | | | | | | | | 0.00 |
| Inter Property Transfers In | | | | | | | | | | | | | 0.00 |
| Total Property Expenses Paid by Receivership | | | | | | | | | | | | | 51,881.15 |
| Rents Restored to Property by Receiver | | | | | | | | | | | | | 0.00 |
| Remaining Amount to be Restored | | | | | | | | | | | | | 0.00 |
| Cumulative Amount Reimbursable from Property | | | | | | | | | | | | | 55,846.86 |

7/10/2020

EXHIBIT **27**

RACHLIS DUFF PEEL & KAPLAN, LLC
Notice of Pub Sale of Real Est

**ADORDERNUMBER:** 0001103566-01

**PO NUMBER:** Notice of Pub Sale of Rea

**AMOUNT:** 500.00

**NO OF AFFIDAVITS:** 1

# Chicago Sun-Times
# Certificate of Publication

State of Illinois - County of        Cook

Chicago Sun-Times, does hereby certify it has published the attached advertisments in the following secular newspapers. All newspapers meet Illinois Compiled Statue requirements for publication of Notices per Chapter 715 ILCS 5/0.01 et seq. R.S. 1874, P728 Sec 1, EFF. July 1, 1874. Amended by Laws 1959, P1494, EFF. July 17, 1959. Formerly Ill. Rev. Stat. 1991, CH100, Pl.
Note: Notice appeared in the following checked positions.

**PUBLICATION DATE(S):** 02/27/2020, 03/05/2020, 03/12/2020, 03/19/2020

Chicago Sun-Times

---

**NOTICE OF PUBLIC SALE OF REAL ESTATE**

Kevin B. Duff, Receiver for the Estate of EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen in the action styled U. S. Securities and Exchange Commission v. EquityBuild, Inc., et al., Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division, gives notice of his intent to sell the following real properties by sealed bid public sale:

**7300-04 South St. Lawrence Avenue, Chicago, Illinois 60706 (PIN 20-27-219-018-0000)**

**7760 South Coles Avenue, Chicago, Illinois 60649 (PIN 21-30-403-015-0000)**

**8000 South Justine Street, Chicago, Illinois 60620 (PIN 20-32-108-019-0000)**

**8107-09 South Ellis Avenue, Chicago, Illinois 60619 (PIN 20-35-118-002-0000, 20-35-118-003-0000)**

**8209 South Ellis Avenue, Chicago, Illinois 60619 (PIN 20-35-124-002-0000)**

**8214-16 South Ingleside Avenue, Chicago, Illinois 60619 (PIN 20-35-122-020-0000)**

**1700-08 West Juneway Terrace, Chicago, Illinois 60626 (PIN 11-30-205-011-0000)**

**5450-52 South Indiana Avenue, Chicago, Illinois 60615 (PIN 20-10-310-056-0000)**

**6437-41 South Kenwood Avenue, Chicago, Illinois 60637 (PIN 20-23-213-009-0000)**

**11117-11119 South Longwood Drive, Chicago, Illinois 60643 (PIN 25-19-113-010-0000)**

Good faith offers may be made on a cash basis or subject to a financing contingency, in the latter case by completing Rider A to the form Purchase And Sale Agreement to be supplied by the Seller, accompanied by a proof of funds. A good faith offer may also be submitted by credit bid in accordance with Paragraph 11, below. All offers, other than offers submitted by credit bid, shall be delivered to Jeffrey Baasch ("Broker"), SVN Commercial Real Estate, 940 West Adams, Suite 200, Chicago, IL 60607, jeffrey.baasch@svn.com, by no later than 5:00 p.m. CST on March 31, 2020. Offers must be transmitted to the Broker by e-mail or enclosed in a sealed envelope and delivered by U.S. mail, nationally-recognized overnight courier, or hand. Untimely and non-conforming offers may be rejected at the sole discretion of the Broker. The Seller strongly recommends that prospective purchasers pre-qualify for financing prior to submitting an offer. No liability shall attach to Seller, Broker, or any other party for failure to receive or open any offer.

The Receivership court afforded all lenders a right to make a credit bid on any property against which they hold a mortgage lien. (Docket No. 351) Special procedures regarding credit bids will be made available upon request.

The winning bidder, if not a credit bidder, will be required to make an earnest money deposit in an amount equal to ten percent (10%) of the purchase price by wiring funds to a designated title company within three (3) business days after acceptance by the Receiver of the Purchase and Sale Agreement. The earnest money deposit shall become non-refundable at the expiration of the due diligence period (see Paragraph 6 below) and applied toward the purchase price at closing. Property will be available to all bidders at scheduled times, and Property may also be shown by appointment. Prospective bidders will be provided a set of bid materials, although the accuracy of the information contained in the bid materials cannot be guaranteed, and prospective bidders are therefore encouraged to complete any desired and non-invasive due diligence at their own sole cost and expense. The properties are being sold "as-is," with all faults, as of the closing date. The closing shall be held as soon as practicable after the Receivership Court grants the Receiver's motion to approve the sale, which motion will be filed at such time as the Receiver deems appropriate, but in no event prior to the expiration of any due diligence or financing contingencies contained in the Purchase And Sale Agreement. The Receiver reserves the right to reject any and all offers to purchase any of the properties being offered for sale.

Bidders must comply with the "Sealed Bid Public Sale of Real Estate Terms and Conditions" which have been approved in the Civil Action, a copy of which may be obtained upon request to the Receiver's Broker at: SVN Commercial Real Estate, Attn: Jeffrey Baasch, 940 West Adams, Suite 200, Chicago, IL 60607, jeffrey.baasch@svn.com.
2/27, 3/5, 3/12, 3/19/2020          #1103566

---

IN WITNESS WHEREOF, the undersigned, being duly authorized, has caused this Certificate to be signed

by          *Susan Quinn*

Susan Quinn
Manager | Recruitment & Legals

This 19th Day of March 2020

RACHLIS DUFF PEEL & KAPLAN, LLC
542 S DEARBORN ST, STE 900
ATTN: NICOLE MIRJANICH
CHICAGO, IL 60605

EXHIBIT 2**8**

EXHIBIT **29**

<u>**PURCHASE & SALE AGREEMENT**</u>

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for 1700 Juneway LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

Becovic Residential LLC                                          ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 1700-08 West Juneway Terrace, Chicago, Illinois 60626 and legally described as follows:

The West 22 feet of Lot 6 and all of Lots 7 and 8 and the East 22 feet of Lot 9 in Block 2 in David P. O'Leary's Subdivision of part of the South Half of the Northeast Quarter of Section 30, Township 41 North, Range 14 East of the Third Principal Meridian, in Cook County, Illinois.

Permanent Index No. 11-30-205-011-0000

\*          \*          \*

***TERMS AND CONDITIONS***

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $    2,800,000    (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

        a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

        b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable after the conclusion of the Inspection Period described in Paragraph 13 below, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until April 30, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to ten business days' advance Notice of the Closing Date.

8. **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property in which a judgement of liability has not yet been entered against the Seller; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.     **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 16, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with an ALTA/ACSM survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.    **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

 a.    *Current Rent Roll***.** A current rent roll for the Property generated by the management company.

 b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

 c.    *Leases*. Copies of all existing leases affecting the Property.

 d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

 e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property.  To the extent that the Buyer requires additional time to complete its inspection due to logistical obstacles associated with the COVID-19 virus, the Seller agrees to lengthen the Inspection Period by amendment to this Agreement.  A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer produces sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this

Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    **Entry Into Or Renewal Of Contracts & Material Changes**.  After the Receivership Court grants the Seller's motion to confirm the sale of the Property pursuant to this Agreement, but prior to the closing, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties'

reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.　**Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.　**Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

　　　a.　The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

　　　b.　The Seller will not take any action affecting title to the Property following the Acceptance Date.

　　　c.　To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

　　　　　*[None.]*

　　　d.　To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.　**Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally

recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*
>
> Michael Rachlis
> Rachlis Duff & Peel, LLC
> 542 South Dearborn, Suite
> 900 Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Joseph Cory Faulkner
>
> Ashen | Faulkner
>
> 217 North Jefferson, Suite 601
>
> Chicago, IL 60661

KD

SB

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this __31st__ day of March, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

By: _President_

Its: _President_

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
1700 JUNEWAY LLC

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

**Acceptance Date:** 04/10/20

**Buyer's Agent**

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____    Expected Release Date: _____    Escrow Number: __2985038__

Property Address: ___200-08 West Juneway Terrace, Chicago, Illinois 60626_____

Deposit Amount: $ _____    Purpose: [X] Earnest Money    [ ] Repairs: _____
Document(s) Held _____    [ ] Tax Escrow    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: _____

Print Name: __Sal Becovic__

Address: __4520 N Clarendon Avenue__

_____

Email: __sb@becovic.com__

Primary Phone: __773-569-8808__

Alternate Phone: _____

**Seller:** Kevin B. Duff, as Federal Equity Receiver for 1700 Juneway LLC
Signed: _____

Print Name: _____
Rachlis Duff & Peel, LLC
Address: __542 S. Dearborn Street, Suite 900__
Chicago, Illinois 60605
_____

Email: __kduff@rdaplaw.net__

Primary Phone: __(312) 733-3390__

Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for 1700 Juneway LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an Illinois limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which Leases run with the Property commonly known as 1700-08 West Juneway Terrace, Chicago, Illinois 60626 and legally described as follows:

> The West 22 feet of Lot 6 and all of Lots 7 and 8 and the East 22 feet of Lot 9 in Block 2 in David P. O'Leary's Subdivision of part of the South Half of the Northeast Quarter of Section 30, Township 41 North, Range 14 East of the Third Principal Meridian, in Cook County, Illinois.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, 2020, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this __ day of March, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
1700 Juneway LLC

_____

**ASSIGNEE:**

_____

By:_____

Name: _____

Title: _____

EXHIBIT **30**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSDF2 1139 E 79th LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

_Longwood Development LLC_ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 1131-41 E 79th Place, Chicago, Illinois 60619 and legally described as follows:

LOTS 29 TO 34, BOTH INCLUSIVE, IN THE RESUBDIVISION OF BLOCK 108 IN CORNELL IN THE NORTH HALF OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-35-106-022-0000

\*      \*      \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.   **Purchase Price**. The purchase price for the Property shall be $ _1,150,000_ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows: 

    a.      An earnest money deposit (the "Earnest Money") in an amount equal to _10_ % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc. a licensed land surveyor, dated February 7, 2020, indicating the location of all improvements. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

3

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.     *Leases*. Copies of all existing leases affecting the Property.

d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the

KJN
KBD

4

termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties'

reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

  a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

  b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

  c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

  *[None.]*

  d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally

recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

Andrew E. Porter
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614
*andrew@andrewporterlaw.com*

Michael Rachlis
Rachlis Duff & Peel LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
*mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

David Resnick
DResnick@RSPlaw.com
312-456-0376

_____

21.  **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.  **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

Longwood Development LLC

By: _____

Its: _____

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF2 1139 E 79th LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_____

**Acceptance Date:** _06/18/20_

**Buyer's Agent**

_____

_____

_____

_____

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

## RIDER A



_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*        *        *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

**RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*     *     *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American
Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____  Expected Release Date: _____  Escrow Number: __2985814__

Property Address: __1131-41 East 79th Place, Chicago, IL 60619_____

Deposit Amount: $ __115,000.00__  Purpose: ☒ Earnest Money  ☐ Repairs: _____
Document(s) Held _____  ☐ Tax Escrow  ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**  **Seller:**
Signed: _____  Signed: _____

Print Name: _Eriz Green_  Print Name: _Kevin B. Duff, Federal Equity Receiver for_
_765 E 69th Pl_  _SSDF2 1139 E 79th LLC_

Address: _Chicago, IL 60637_  Address: _542 South Dearborn, Suite 900_

Email: _ErizGreen@WPD Mgmt.com_  _Chicago, IL 60605_

Primary Phone: _847-644-5564_  Email: _kduff@rdaplaw.net_

Alternate Phone: _____  Primary Phone: _(312) 733-3390_

Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee  By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF2 1139 E 79th LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 1131-41 E 79th Place, Chicago, Illinois 60619.

LOTS 29 TO 34, BOTH INCLUSIVE, IN THE RESUBDIVISION OF BLOCK 108 IN CORNELL IN THE NORTH HALF OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF2 1139 E 79th LLC

_____

**ASSIGNEE:**

_Longwood Development LLC_

By: _____

Name: _Eriz Green_

Title: _Manager_

EXHIBIT **31**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, as court-appointed federal equity receiver for SSDF4 6250 S Mozart LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and _Longwood Development LLC_ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6250 S Mozart Street (also known as 2832-36 W 63rd Street), Chicago, Illinois 60637 and legally described as follows:

LOTS 16 AND 17 IN BLOCK 15 IN COBE AND MCKINNON'S 63RD STREET AND SACRAMENTO AVENUE SUBDIVISION OF THE EAST HALF OF THE SOUTHWEST QUARTER SECTION 13, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 19-13-330-038-0000.

\*　　　\*　　　\*

### *TERMS AND CONDITIONS*

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ _925,000.00_ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows: 



    a.    An earnest money deposit (the "Earnest Money") in an amount equal to _10_ % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.     **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.     **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated August 29, 2019, indicating the location of all improvements. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the

4

KJW    KBD

termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties'

reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action.

   d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> David Resnick
> DResnick@RSPLaw.com
> 312-456-0376

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*      *      *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

Longwood Development LLC

By: _____

Its: Manager _____

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF4 6250 S MOZART LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

K. B Duff _____

**Acceptance Date:** 07/07/20 _____

**Buyer's Agent**

_____

_____

_____

_____

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

**RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*    *    *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____     Expected Release Date: _____     Escrow Number: __2985083__

Property Address: __6250 South Mozart Avenue, Chicago, IL 60629__

Deposit Amount: $ __92,500.00__       Purpose: [X] Earnest Money    [ ] Repairs: _____
Document(s) Held _____       [ ] Tax Escrow    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated.  In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**                                                    **Seller:**
Signed: _~~(signature)~~_                          Signed: _~~(signature)~~_

Print Name: _Eric Green_                          Print Name: _Kevin B. Duff, Federal Equity_ Receiver for
                                                                                        SSDF4 6250 S Mozart LLC
Address: _765 E 69th Pl_                           Address: _542 South Dearborn, Suite 900_
_Chicago, IL 60637_                                              _Chicago, IL 60605_

Email: _Eriz Green @ WPM management.com_    Email: _kduff@rdaplaw.net_

Primary Phone: _847-644-5564_             Primary Phone: _(312) 733-3390_

Alternate Phone: _____          Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee          By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF4 6250 S Mozart LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 6250 South Mozart (also known as 2832-36 W 63rd Street), Chicago, Illinois 60629.

LOTS 16 AND 17 IN BLOCK 15 IN COBE AND MCKINNON'S 63RD STREET AND SACRAMENTO AVENUE SUBDIVISION OF THE EAST HALF OF THE SOUTHWEST QUARTER SECTION 13, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF4 6250 S Mozart LLC

_____

**ASSIGNEE:**

Longwood Development LLC

By: _____

Name: Eric Green

Title: Manager

EXHIBIT **32**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSDF5 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

__Longwood Development LLC__ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 3074 East Cheltenham Place (also known as 7836 South Shore Drive), Chicago, Illinois 60649 and legally described as follows:

THE EASTERLY 120 FEET OF LOT 114, IN DIVISION ONE OF WESTFALL'S SUBDIVISION OF 208 ACRES, BEING THE EAST HALF OF THE SOUTHWEST QUARTER AND THE SOUTHEAST FRACTIONAL QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-414-040-0000

\*    \*    \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1. **Purchase Price**. The purchase price for the Property shall be $ _1,060,000 00_ (the  "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to _10_ % of the Purchase Price within three (3) business days following the date of  acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated March 4, 2020. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

     a.    *Current Rent Roll*. A current rent roll for the Property generated by the management company.

     b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

     c.    *Leases*. Copies of all existing leases affecting the Property.

     d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

     e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations

4

hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *[None.]*

    d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

>Andrew E. Porter
>Porter Law Office
>853 North Elston Avenue
>Chicago, Illinois 60614
>_andrew@andrewporterlaw.com_

>Michael Rachlis
>Rachlis Duff & Peel LLC
>542 South Dearborn, Suite 900
>Chicago, Illinois 60605
>_mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

>David Resnick
>DResnick @ RSPLaw.Com
>312-456-0376

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*        *        *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

Longwood Development LLC

By: _____

Its: _Managr_____

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF5 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: _06/18/20_____

**Buyer's Agent**

_____

_____

_____

_____

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*        *        *

*KBD*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

**RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*     \*     \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*



EXHIBIT A



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____     Expected Release Date: _____     Escrow Number: __2985817__

Property Address: __3074 East Cheltenham Place, Chicago, IL 60649__

Deposit Amount: $ __106,000.00__     Purpose: ☒ Earnest Money     ☐ Repairs: _____
Document(s) Held _____          ☐ Tax Escrow     ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: _Signature_

Print Name: _Eric Green_

Address: _765 E 69ᵗʰ Pl_
_Chicago, IL 60637_

Email: _Eric Green @ WPD Management. com_

Primary Phone: _847-644-5564_

Alternate Phone: _____

**Seller:**
Signed: _Signature_

Kevin B. Duff, Federal Equity Receiver for
SSDF5 Portfolio 1 LLC

Print Name: _____

Address: __542 South Dearborn, Suite 900__

__Chicago, IL 60605__

Email: __kduff@rdaplaw.net__

Primary Phone: __(312) 733-3390__

Alternate Phone: _____

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee          By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF5 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 3074 East Cheltenham Place (also known as 7836 South Shore Drive), Chicago, Illinois 60649.

THE EASTERLY 120 FEET OF LOT 114, IN DIVISION ONE OF WESTFALL'S SUBDIVISION OF 208 ACRES, BEING THE EAST HALF OF THE SOUTHWEST QUARTER AND THE SOUTHEAST FRACTIONAL QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF5 Portfolio 1 LLC

_____

**ASSIGNEE:**

Longwood Development LLC
_____

By: _____

Name: _Enz Green_____

Title: _Manager_____

EXHIBIT **33**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSDF5 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

 Jimmy Oppenheimer or Assignee ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7201 S Constance Avenue (also known as 1825-31 E 72nd Street), Chicago, Illinois 60649 and legally described as follows:

LOTS 13 AND 14 (EXCEPT SOUTH 6 INCHES THEREOF) IN CHRISTOPHER COLUMBUS ADDITION TO JACKSON PARK, A SUBDIVISION OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-25-119-001-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ 1,100,000 ⁰⁰ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows: *KBD*

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to 10 % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date"). 

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

2

8.      **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated January 28, 2020, indicating the location of all improvements. If the Buyer or the Buyer's mortgagee desires an updated or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12. **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13. **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a. *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b. *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c. *Leases*. Copies of all existing leases affecting the Property.

   d. *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e. *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the

4

JO

KBD

termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties'

reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a. The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b. The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c. To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

   *City of Chicago v. SSDF5 Portfolio 1 LLC*, Circuit Court of Cook County, Case No. 19M1-402334

   d. To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Kevin Cahill
> 101 N. Wacker Dr. #611
> Chicago, IL 60606
> 312 641 - 6105.

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted

7

by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*        *        *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

_Jimmy Oppenhiemer_

By: _Owner._

Its: _____

**Buyer's Agent**

_Jeffrey Baasch._

_SVN Chicago Commercial._

_940 West Adams St. #200_

_____

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF5 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 06/18/20

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*　　\*　　\*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %\_\_\_\_per annum, amortized over \_\_\_\_ years, payable monthly, with a loan origination fee not to exceed %\_\_\_\_, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

N/A

KBD

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*     *     *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American
Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____   **Expected Release Date:** _____   **Escrow Number:** _2985821_

**Property Address:** _7201 South Constance Avenue, Chicago, IL 60649_ _____

**Deposit Amount: $** _110,000.00_   **Purpose:** [X] **Earnest Money**   ☐ **Repairs:** _____
**Document(s) Held** _____   ☐ **Tax Escrow**   ☐ **Other:** _____

The above are hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | _signature_ | Signed: | _signature_ |
| | | | Kevin B. Duff, Federal Equity Receiver for |
| Print Name: | Jimmy Oppenheimer | Print Name: | SSDF5 Portfolio 1 LLC |
| Address: | 2134 W. 18½ St. | Address: | 542 South Dearborn, Suite 900 |
| | Chicago IL 60608 | | Chicago, IL 60605 |
| Email: | jimmy@oppinvestments.net | Email: | kduff@rdaplaw.net |
| Primary Phone: | 773 612 3820 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee   **By:** _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
*titleindemnity.warrenville.il@firstam.com*

**EXHIBIT B**

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF5 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 7201 South Constance Avenue (also known as 1825-31 E 72nd Street), Chicago, Illinois 60649.

LOTS 13 AND 14 (EXCEPT SOUTH 6 INCHES THEREOF) IN CHRISTOPHER COLUMBUS ADDITION TO JACKSON PARK, A SUBDIVISION OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

ASSIGNOR:                                              ASSIGNEE:

Kevin B. Duff, Federal Equity Receiver for
SSDF5 Portfolio 1 LLC


_____          _____

                                                       By:_____

                                                       Name:_____

                                                       Title:_____

EXHIBIT **34**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and **Leo Kremer or Nominee** ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 2736-44 W 64th Street, Chicago, Illinois 60629 and legally described as follows:

LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF), IN MOREAU AND DEJONG'S RESUBDIVISION OF LOTS 30 TO 48, INCLUSIVE, IN BLOCK 16, IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISIONOF THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 19-24-200-029-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ _418,000_ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to   _10_ % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

8.   **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.   **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.  **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated November 26, 2019. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.  **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.  **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13. **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a. *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b. *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c. *Leases*. Copies of all existing leases affecting the Property.

d. *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e. *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.



DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2






14.  **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.  **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.  **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.  **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a.      The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b.      The Seller will not take any action affecting title to the Property following the Acceptance Date.

c.      To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *City of Chicago Department of Buildings v. SSDF7 Portfolio 1 LLC,* Docket No. 520WO616450.

d.      To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Graham E. Cunetser
> Zabel Law LLC
> (312) 201-1436
> graham @ zabellav cm

21.      **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.      **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23. **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24. **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

\* \* \*

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

Buyer

DocuSigned by:

*Leo Kremer*

50A4F4EB5A3E473...

Leo Kremer  or Nominee

By:

Manager

Its:

Buyer's Agent

Edward Bluemel

Atlas Asset Management

1347 W Washington

630-709-3581

Seller

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

*K. Duff*

Acceptance Date:  06/29/20

Seller's Agent

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*　　　\*　　　\*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53F-7D2B14C811F2

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53F-7D2B14C811F2

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____     Expected Release Date: _____     Escrow Number: _____

Property Address: 2736-44 W. 64th Street, Chicago, IL 60629
_____

Deposit Amount: $ 41,800     Purpose: ☒ Earnest Money     ☐ Repairs: _____
Document(s) Held _____          ☐ Tax Escrow     ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: *Leo Kremer*
DocuSigned by:
50A4F4EB5A3E473...
Leo Kremer

Print Name: _____

Address: 22 Bridge Rd

_____ Berkeley, CA 94705

Email: leo@founders-table.com

Primary Phone: (510) 290-5207

Alternate Phone: (203) 644-0999

**Seller:**
Signed: *K. Duff*

Print Name: Kevin B. Duff, Federal Equity Receiver for SSDF7 Portfolio 1 LLC

Address: 542 South Dearborn, Suite 900

_____ Chicago, IL 60605

Email: kduff@rdaplaw.net

Primary Phone: (312) 733-3390

Alternate Phone: _____

**Primary Contact (if other than above):** Lauren Kremer  —  laurenskremer@gmail.com

Accepted: First American Title Insurance Company, Escrowee     By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
*titleindemnity.warrenville.il@firstam.com*

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

**EXHIBIT B**

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 2736-44 West 64th Street, Chicago, Illinois 60629.

LOT 15 (EXCEPT THE NORTH 10 FEET THEREOF), IN MOREAU AND DEJONG'S RESUBDIVISION OF LOTS 30 TO 48, INCLUSIVE, IN BLOCK 16, IN AVONDALE ADDITION TO CHICAGO, BEING A SUBDIVISIONOF THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for SSDF7 Portfolio 1 LLC

_____

**ASSIGNEE:**

_____

By: _____

Name: _____

Title: _____

EXHIBIT **35**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.,* United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

# Leo Kremer or Nominee ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6355-59 S Talman Avenue (also known as 2616-22 W 64th Street), Chicago, Illinois 60629 and legally described as follows:

LOTS 28 AND 29 IN BLOCK 1 IN AVONDALE, A SUBDIVISION OF THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 19-24-203-023-0000

\*       \*       \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property on the following terms and conditions:



1.  **Purchase Price**. The purchase price for the Property shall be $ __577,000__ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

 

   a.   An earnest money deposit (the "Earnest Money") in an amount equal to __10__ % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.   The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

2.     **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.     **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.     **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.     **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.     **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.     **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

8.     **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.     **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated September 11, 2019. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53F-7D2B14C811F2

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.    **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.    *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.    *Leases*. Copies of all existing leases affecting the Property.

d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.





4





14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        [None.]

    d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Graham E Conaster
> Zabel law LLC
> (312) 201-1434
> grahame@zabellaw.com

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*        *        *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

DocuSigned by:

*leo kremer*

50A4F4EB5A3E473...

Leo Kremer   or Nominee

By:_____

Its:_____
Manager

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date:___06/29/20___

**Buyer's Agent**

Edward Bluemrl

Atlas Asset Management

1347 W WAsHingloN #1B

(630) 709-3581

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*          \*          \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*      \*      \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]_

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____    Expected Release Date: _____    Escrow Number: __2985124__

Property Address: __6355-59 South Talman Avenue, Chicago, IL 60629__

Deposit Amount: $ __57,700__    Purpose: [X] **Earnest Money**    [ ] Repairs: _____
Document(s) Held    [ ] **Tax Escrow**    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | *leo kremer* (DocuSigned by) | Signed: | *K. Duff* |
| | 50A4F4EB5A3E473... | | Kevin B. Duff, Federal Equity Receiver for |
| Print Name: | Leo Kremer | Print Name: | SSDF7 Portfolio 1 LLC |
| Address: | 22 Bridge Rd | Address: | 542 South Dearborn, Suite 900 |
| | Berkeley, CA 94705 | | Chicago, IL 60605 |
| Email: | leo@founders-table.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | (510) 290-5207 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | (203) 644-0999 | Alternate Phone: | _____ |

**Primary Contact (if other than above):** Lauren Kremer  -  laurenskremer@gmail.com

Accepted: First American Title Insurance Company, Escrowee    By: _____

DocuSign Envelope ID: 6DA0C50C-8208-42A4-B53F-7D2B14C811F2

**EXHIBIT B**

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 6355-59 South Talman Avenue (also known as 2612-22 West 64th Street), Chicago, Illinois 60629.

LOTS 28 AND 29 IN BLOCK 1 IN AVONDALE, A SUBDIVISION OF THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**                                     **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1 LLC


_____           _____

                                          By:_____

                                          Name:_____

                                          Title:_____

EXHIBIT **36**

DocuSign Envelope ID: 6DA9C50C-8209-42A1-B53E-7D2B14C811F2

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

## Leo Kremer or Nominee     ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6356 South California Avenue (also known as 2804 West 64th Street), Chicago, Illinois 60629 and legally described as follows:

LOTS 26 AND 27 IN BLOCK 1 IN JOHN BAIN'S SUBDIVISION OF THE EAST HALF OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 19-24-107-037-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ 375,000 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows: 



a.     An earnest money deposit (the "Earnest Money") in an amount equal to 10 % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

8.      **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.      **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated November 27, 2019. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.      **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.      **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.  **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.  *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.  *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.  *Leases*. Copies of all existing leases affecting the Property.

d.  *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.  *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

 

4

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2





14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action.

    d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

6

Buyer

_Leo Kremer_
50A4F4EB5A3E473...

Leo Kremer   or Nominee

By: _____

Manager

Its: _____


Seller

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_K. Duff_

Acceptance Date: ___06/29/20___


Buyer's Agent

Edward Blumel

Atlas Asset Management

1347 W Washington #1B

(630) 709-3581


Seller's Agent

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly, with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*        \*        \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____        _____

_____        _____

                                        _____

_____        _____

_____        _____

                                        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____   Expected Release Date: _____   Escrow Number: __2985130__

Property Address: __6356 South California Avenue, Chicago, IL 60629__

Deposit Amount: $ __37,500__   Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____              ☐ Tax Escrow   ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | *Leo Kremer* (DocuSigned by) | Signed: | *K. Duff* |
| Print Name: | Leo Kremer | Print Name: | Kevin B. Duff, Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
| Address: | 22 Bridge Rd | Address: | 542 South Dearborn, Suite 900 |
|  | Berkeley, CA 94705 |  | Chicago, IL 60605 |
| Email: | leo@founders-table.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | (510) 290-5207 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | (203) 644-0999 | Alternate Phone: | _____ |

Primary Contact (if other than above): Lauren Kremer   -   laurenskremer@gmail.com

Accepted: First American Title Insurance Company, Escrowee   By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

DocuSign Envelope ID: 6DA0C50C-8208-42A4-B53F-7D2B14C811F2

**EXHIBIT B**

DocuSign Envelope ID: 6DA0C50C-8208-42A4-B53E-7D2B14C811F2

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 6356 South California Avenue (also known as 2804 West 64th Street), Chicago, Illinois 60617.

LOTS 26 AND 27 IN BLOCK 1 IN JOHN BAIN'S SUBDIVISION OF THE EAST HALF OF THE EAST HALF OF THE NORTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1 LLC

_____

**ASSIGNEE:**

_____

By:_____

Name:_____

Title:_____

EXHIBIT **37**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

7051 LLC _____ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7051 S Bennett Avenue, Chicago, Illinois 60649 and legally described as follows:

LOT 13 (EXCEPT THE SOUTH 22 FEET THEREOF) AND LOT 14 (EXCEPT THE NORTH 8 FEET THEREOF) IN BLOCK 15 IN JACKSON PARK HIGHLANDS, IN THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-24-328-011-0000

\*       \*       \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 600,000.00 _____ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.      An earnest money deposit (the "Earnest Money") in an amount equal to 10 ____% of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated December 17, 2019, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.      *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.      *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.      *Leases*. Copies of all existing leases affecting the Property.

d.      *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.      *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the

4

termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties'

reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.  **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.  **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.   The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.   The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.   To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action.

   d.   To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.  **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Michael Kelley, Organizer
>
> mjkelley00@gmail.com

21.     **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

\*       \*       \*

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

By: 7051 LLC

Its: Organizer

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 06/19/20

**Buyer's Agent**

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866



**First American**
**Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____     Expected Release Date: _____     Escrow Number: __2985134__

Property Address: __7051 South Bennett Avenue, Chicago, IL 60649_____

Deposit Amount: $ __60,000.00____     Purpose: ☒ Earnest Money     ☐ Repairs: _____
Document(s) Held _____     ☐ Tax Escrow     ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated.  In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: _____

Print Name:  Michael Kelley on behalf of 7051 LLC

Address: __1653 S Blue Island Ave__

__Chicago, IL 60608__

Email: __mjkelley00@gmail.com__

Primary Phone: __773.759.2657__

Alternate Phone: _____

**Seller:**
Signed: _____

Print Name: Kevin B. Duff, Federal Equity Receiver for SSDF7 Portfolio 1 LLC

Address: __542 South Dearborn, Suite 900__

__Chicago, IL 60605__

Email: __kduff@rdaplaw.net__

Primary Phone: __(312) 733-3390__

Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee     By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to 7051 LLC ("Assignee"), an Illinois limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 7051 South Bennett Avenue, Chicago, Illinois 60649.

LOT 13 (EXCEPT THE SOUTH 22 FEET THEREOF) AND LOT 14 (EXCEPT THE NORTH 8 FEET THEREOF) IN BLOCK 15 IN JACKSON PARK HIGHLANDS, IN THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1 LLC

_____

**ASSIGNEE:**

_____

By: ___7051 LLC_____

Name:__Michael Kelley_____

Title:_ Organizer_____

EXHIBIT **38**

DocuSign Envelope ID: 375885FF-B783-4DAC-8079-B3E78D413F92

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

FC REALTY LLC ~~SERIES DORCHESTER~~ or Assignee ("Buyer") *ac KBO*

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7201-07 S Dorchester Avenue (also known as 1401 E 72nd Street) Chicago, Illinois 60619 and legally described as follows:

LOTS 14 AND 15 IN BLOCK 10 IN JOHN G. SHORTALL TRUSTEE'S SUBDIVISION OF THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-26-210-001-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.     **Purchase Price**. The purchase price for the Property shall be $ 495,000 Cash (the *KBD  ac* "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.     An earnest money deposit (the "Earnest Money") in an amount equal to 10_____% of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date"). *KBD  ac*

   b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

DocuSign Envelope ID: 275885FF-B7B3-4DAC-8079-B3E78D413F92
DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated January 21, 2020. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

3

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

Buyer is waiving section 13. Section 13 is stricken.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.     *Leases*. Copies of all existing leases affecting the Property.

d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations

DocuSign Envelope ID: 275885EF-B789-4DAC-8079-B3E78D413F92

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

DocuSign Envelope ID: 275885FF-B723-4DAC-8079-B3E78D413F92

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a. The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b. The Seller will not take any action affecting title to the Property following the Acceptance Date.

c. To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

*[None]*

d. To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

DocuSign Envelope ID: 275885FF-B723-4DAC-8079-B3E78D413F92
DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> J. Cory Faulkner
> Ashen|Faulkner
> 217 N. Jefferson St.
> Chicago, IL 60661
> (312) 506-4518
> jcf@ashenlaw.com

21.     **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*        *        *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and

conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing

below on behalf of the Buyer represents and warrants that s/he is authorized to execute this

Agreement on behalf of the Buyer.

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

**Buyer**

Andrew Calcutt

C160AE08191948B...    or Assignee

By: FC Realty LLC ~~Series Dorchester~~

Its: Manager

KBD

ac

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: _6/18/2020_

**Buyer's Agent**

None

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*       \*       \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*        *        *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

| | |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

DocuSign Envelope ID: 275885EF-B733-4DAC-8079-B3E78D413F92

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

DocuSign Envelope ID: 375885EF-B729-4DAC-8079-B3E78D413F92

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

**EXHIBIT A**

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Escrow Number:** 2985828

**Open Date:** 7201-07g     **Expected Release Date:** _____

KBD **Property Address:** 8201 South Dorchester Avenue, Chicago, IL 60619

ac **Deposit Amount: $** 49,500     **Purpose:** ☒ **Earnest Money**    ☐ **Repairs:** _____
      Document(s) Held                        ☐ **Tax Escrow**    ☐ **Other:** _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| | |
|---|---|
| **Purchaser:** Signed: *Andrew Calcutt* | **Seller:** Signed: *K—Duff* |
| | C160AE081919488 |
| **Print Name:** Andrew Calcutt | **Print Name:** Kevin B. Duff, Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
| **Address:** 1 W. Monroe St. | **Address:** 542 South Dearborn, Suite 900 |
| Chicago, IL 60603 | Chicago, IL 60605 |
| **Email:** acalcutt@sleepingbearcapital.com | kduff@rdaplaw.net |
| **Primary Phone:** (312) 625-3137 | **Primary Phone:** (312) 733-3390 |
| **Alternate Phone:** (312) 888-5588 | **Alternate Phone:** _____ |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee      **By:** _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

DocuSign Envelope ID: 275885FF-B723-4DAC-8079-B3E78D413F92

DocuSign Envelope ID: 864585F3-8606-4E51-ADF2-9364F984BA53

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 7201-07 South Dorchester (also known as 1401 East 72nd Street), Chicago, Illinois 60619.

LOTS 14 AND 15 IN BLOCK 10 IN JOHN G. SHORTALL TRUSTEE'S SUBDIVISION OF THE NORTH HALF OF THE NORTHEAST QUARTER OF SECTION 26, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1 LLC

_____

**ASSIGNEE:**

_____

By:_____

Name:_____

Title:_____

EXHIBIT **39**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

_____ University Property Holdings LLC ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7508 S Essex Avenue (also known as 2453-59 E 75th Street), Chicago, Illinois 60649 and legally described as follows:

LOT 1 AND THE EAST 18 FEET OF LOT 2, IN BLOCK 3, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-301-030-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1. **Purchase Price.** The purchase price for the Property shall be $ 755,000 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.  An earnest money deposit (the "Earnest Money") in an amount equal to 10% of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.  The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.     **Earnest Money.** The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.     **Court Approval.** As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.     **Escrow Closing.** This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.     **Irrevocable Offer.** This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.     **Personal Property.** At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.     **The Closing Date.** The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

2

8.     **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.     **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated January 29, 2020. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

3

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period.** The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll.* A current rent roll for the Property generated by the management company.

   b.     *Utility Bills.* Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases.* Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement.* A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents.* Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations

4

hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    **Entry Into Or Renewal Of Contracts & Material Changes.** Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    **Material Destruction.** Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    **Condition Of Property.** The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    **Buyer Default.** The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default.** In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties.** As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a.      The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b.      The Seller will not take any action affecting title to the Property following the Acceptance Date.

c.      To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

*[None]*

d.      To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices.** All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Alena Jotkus
> 222 S. Riverside Plaza #2100
> Chicago IL 60606
> alena.jotkus@SFNR.com

21.    **Like-Kind Exchange.** The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents.** Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger.** This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*        *        *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and

conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing

below on behalf of the Buyer represents and warrants that s/he is authorized to execute this

Agreement on behalf of the Buyer.

8

**Buyer**

University Property Holdings LLC

By _____

Its: Managing Member

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 6/19/2020

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9



**First American**
**Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____     Expected Release Date: _____     Escrow Number: _2985833_

Property Address: 7508 South Essex Avenue, Chicago, IL 60649

Deposit Amount: $ _75,500.00_     Purpose: ☒ Earnest Money     ☐ Repairs: _____
Document(s) Held _____          ☐ Tax Escrow     ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

Purchaser:
Signed: _____          Seller:
Signed: _____

Print Name: Alex Ulyanov          Print Name: Kevin B. Duff, Federal Equity Receiver for
                                   SSDF7 Portfolio 1 LLC

Address: 401 S/Milwaukee #160     Address: 542 South Dearborn, Suite 900
Wheeling IL 60090

                                   Chicago, IL 60605

Email: info@cobblestoneeats.com   Email: kduff@rdaplaw.net

Primary Phone: 847-322-6428       Primary Phone: (312) 733-3390

Alternate Phone: _____  Alternate Phone: _____

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee          By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

### Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to University Property Holdings ("Assignee"), an Illinois limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 7508 South Essex (also known as 2453-59 East 75th Street), Chicago, Illinois 60649.

LOT 1 AND THE EAST 18 FEET OF LOT 2, IN BLOCK 3, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1 LLC

_____

**ASSIGNEE:**

University Property Holdings LLC

By: _____

Name: Alex Ulyanov

Title: managing member

EXHIBIT **40**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

~~7936 ESSEX LLC~~ or *Assignee* ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7953-59 S Marquette Road (also known as 2708-10 E 80th Street), Chicago, Illinois 60617 and legally described as follows:

LOTS 29 AND 30 IN THE SUBDIVISION OF BLOCK 6 OF CIRCUIT COURT PARTITION OF THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER AND THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-31-106-024-0000

7936ESSEX LLC

\*     \*     \*

DA          KBD

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ _351, 000_ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.      An earnest money deposit (the "Earnest Money") in an amount equal to _10_ % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.   **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.   **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.   **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated January 29, 2020. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.   **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.   **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13. **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a. _Current Rent Roll_**.** A current rent roll for the Property generated by the management company.

   b. _Utility Bills_. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c. _Leases_. Copies of all existing leases affecting the Property.

   d. _Profit & Loss Statement_. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e. _Litigation Documents_. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations

4

hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a. The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b. The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c. To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

   *City of Chicago v. SSDF7 Portfolio 1 LLC*, Department Of Administrative Hearings, Docket 18-WM-000055.

   d. To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

_John Gonnella_

_Attorney JTG@Yahoo.com_

_____

_____

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

By: _DAVID Aravilla_

Its: _MAnAgER_

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

**Acceptance Date:** _06/18/20_

**Buyer's Agent**

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

## **RIDER A**

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*       \*       \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## **RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*       \*       \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



**First American
Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____     Expected Release Date: _____     Escrow Number: __2985838__

Property Address: __7953-59 South Marquette Road, Chicago, IL 60617__

Deposit Amount: $ _35,100_     Purpose: ☒ Earnest Money     ☐ Repairs: _____
Document(s) Held _____          ☐ Tax Escrow     ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated.  In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | _(signature)_ | Signed: | _(signature)_ |
| | | | Kevin B. Duff, Federal Equity Receiver for |
| Print Name: | _David Arquilla_ | Print Name: | SSDF7 Portfolio 1 LLC |
| Address: | _3301 NE 1st Ave PH 15_ | Address: | 542 South Dearborn, Suite 900 |
| | _Miami, FL 33137_ | | Chicago, IL 60605 |
| Email: | _Arquilla@Gmail.com_ | Email: | kduff@rdaplaw.net |
| Primary Phone: | _312-969-2100_ | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee          By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 7953-59 South Marquette Road (also known as 2708-10 East 80th Street), Chicago, Illinois 60617.

LOTS 29 AND 30 IN THE SUBDIVISION OF BLOCK 6 OF CIRCUIT COURT PARTITION OF THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER AND THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**                                                    **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1 LLC

_____          _____

                                                            By:_____

                                                            Name:_____

                                                            Title:_____

EXHIBIT **41**

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSPH Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

### Leo Kremer or Nominee      ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 5618-20 South Martin Luther King Drive, Chicago, Illinois 60637 and legally described as follows:

LOT 5 AND THE SOUTH 17 FEET OF LOT 4 IN BLOCK 1 IN BURNHAM'S RESUBDIVISION OF THE NORTH 4 ACRES OF LOT 1 IN NEWHALL, LARNED AND WOODBRIDGE'S RESUBDIVISION OF PART OF THE NORTHWEST QUARTER IN SECTION 15, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-15-112-018-0000, 20-15-112-019-0000.

*    *    *

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property on the following terms and conditions:

1. **Purchase Price**. The purchase price for the Property shall be $ 646,000 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

 

    a. An earnest money deposit (the "Earnest Money") in an amount equal to 10 % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b. The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

2.     **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.     **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.     **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.     **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.     **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.     **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

DocuSign Envelope ID: 6DA8C50C-8208-42A4-B53E-7D2B14C811F2

8.   **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.   **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.  **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated December 29, 2019. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.  **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.  **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.     *Leases*. Copies of all existing leases affecting the Property.

d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

 

4

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2



14.   **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.   **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.   **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.   **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.   The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.   The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.   To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

   *City of Chicago Department of Buildings v. SSPH Portfolio 1 LLC,*
   Docket No. 520SO617670.

   d.   To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> andrew@andrewporterlaw.com
>
> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Graham E. Conaster
> Zabel Law, LLC
> 812) 201-1434
> graham@zabellaw.com

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*          *          *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

Buyer

_Leo kremer_
50A4F4EB5A3E473...
Leo Kremer or Nominee

By:_____

Its:_____ Manager _____

Seller

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH Portfolio 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_K. Duff_

Acceptance Date: ___06/29/20___

Buyer's Agent

Edward Bluemel
Atlas Asset Management
1347 W Washington #1B
(630) 709-3581

Seller's Agent

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

DocuSign Envelope ID: 6DA0C50C-8208-42A4-B53E-7D2B14C811F2

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly, with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*　　\*　　\*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53E-7D2B14C811F2

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



First American
Title Insurance Company

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____   Expected Release Date: _____   Escrow Number: _2985200_

Property Address: _5618-20 South Martin Luther Drive, Chicago, IL 60637_

Deposit Amount: $ _64,600_   Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____   ☐ Tax Escrow   ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | |
|---|---|---|---|
| Signed: | *Leo Kremer* (DocuSigned by) 50A4F4EB5A3E473... | Signed: | *K. Duff* |
| Print Name: | Leo Kremer | Print Name: | Kevin B. Duff, Federal Equity Receiver for SSPH Portfolio 1 LLC |
| Address: | 22 Bridge Rd | Address: | 542 South Dearborn, Suite 900 |
| | Berkeley, CA 94705 | | Chicago, IL 60605 |
| Email: | leo@founders-table.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | (510) 290-5207 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | (203) 644-0999 | Alternate Phone: | |

Primary Contact (if other than above): Lauren Kremer   -   laurenskremer@gmail.com

Accepted: First American Title Insurance Company, Escrowee   By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

DocuSign Envelope ID: 6DA9C50C-8208-42A4-B53F-7D2B14C811F2

**EXHIBIT B**

DocuSign Envelope ID: 6DA9C50C-8208-42A1-B53E-7D2B14C811F2

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 5618-20 South Martin Luther King Drive, Chicago, Illinois 60637.

LOT 5 AND THE SOUTH 17 FEET OF LOT 4 IN BLOCK 1 IN BURNHAM'S RESUBDIVISION OF THE NORTH 4 ACRES OF LOT 1 IN NEWHALL, LARNED AND WOODBRIDGE'S RESUBDIVISION OF PART OF THE NORTHWEST QUARTER IN SECTION 15, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**                                      **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver for
SSPH Portfolio 1 LLC


_____          _____

                                                             By:_____

                                                             Name:_____

                                                             Title:_____

EXHIBIT **42**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSPH Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

Jimmy Oppenheimer or Assignee . ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6558 S Vernon Avenue (also known as 416-24 East 66th Street), Chicago, Illinois 60637 and legally described as follows:

LOTS 3 AND 4 IN RUBY A. S. NICKELSON'S RESUBDIVISION OF LOTS 21 TO 25, IN BLOCK 1 IN OAKWOOD SUBDIVISION OF THE NORTH HALF OF THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-22-216-038-0000, 20-22-216-039-0000.

\*      \*      \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.    **Purchase Price**. The purchase price for the Property shall be $ 576,000 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows: 

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to 10 % of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date"). 

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until June 17, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8. **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9. **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10. **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated September 11, 2019. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11. **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12. **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller

3

first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13. **Inspection Period.** The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a. *Current Rent Roll.* A current rent roll for the Property generated by the management company.

b. *Utility Bills.* Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c. *Leases.* Copies of all existing leases affecting the Property.

d. *Profit & Loss Statement.* A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e. *Litigation Documents.* Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations

4

JO

KBD

hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.  **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.  **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.  **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.  **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

      a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

      b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

      c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

          *[None]*

      d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Kevin Cahill
> 101 N. Wacker Dr. #611
> Chicago, IL 60606
> 312 641 - 6105

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23. **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24. **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

\*      \*      \*

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of the 3rd day of June, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

Jimmy Oppenheimer.

By: _____Owner._____

Its:_____

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

**Acceptance Date:**____06/18/20_____

**Buyer's Agent**

Jeffrey Baasch.
SVN Chicago Commercial.
940 West ADAMS St #200
Chicago, IL 60607

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*     \*     \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly, with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*          \*          \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_KBD_

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____   **Expected Release Date:** _____   **Escrow Number:** 2985202

**Property Address:** 6558 South Vernon Avenue, Chicago, IL 60637 _____

**Deposit Amount: $** 57,600.00 _____   **Purpose:** ☒ Earnest Money   ☐ Repairs: _____
**Document(s) Held** _____          ☐ Tax Escrow   ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**                                   **Seller:**
Signed: _____        Signed: _____
                                                 Kevin B. Duff, Federal Equity Receiver for
Print Name: James Oppenheime.          Print Name: SSPH Portfolio 1 LLC

Address: 2134 W. 18th St.               Address: 542 South Dearborn, Suite 900

Chicago IL 60614                                 Chicago, IL 60605

Email: jimmy@oppinvestments.net.        Email: kduff@rdaplaw.net

Primary Phone: 773 612 3820             Primary Phone: (312) 733-3390

Alternate Phone: _____       Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee      By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

<u>**Assignment And Assumption Of Leases**</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 6558 South Vernon Avenue (also known as 416-24 East 66th Street), Chicago, Illinois 60637.

LOTS 3 AND 4 IN RUBY A. S. NICKELSON'S RESUBDIVISION OF LOTS 21 TO 25, IN BLOCK 1 IN OAKWOOD SUBDIVISION OF THE NORTH HALF OF THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of _____, 2020.

**ASSIGNOR:**                                      **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver for
SSPH Portfolio 1 LLC


_____          _____

                                           By:_____

                                           Name:_____

                                           Title:_____