UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 18-cv-5587 |
| v. | ) Hon. John Z. Lee |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) Mag. Judge Young B. Kim |
| Defendants. | ) |

**RECEIVER'S RESPONSE TO U.S. BANK'S MOTION FOR PRIORITY DETERMINATION AND IMMEDIATE TURNOVER OF FUNDS**

U.S Bank's motion for priority determination and immediate turnover of funds should be denied. In essence, U.S. Bank argues that it is anxious and ready for its claim to be adjudicated, so the Court should do so now. Its motion amounts to little more than a restatement of its claims against 6751 S. Merrill and 7110 S. Cornell.[1] But the motion is premature. The Court has not yet determined the claims process that will be implemented. There are numerous issues that remain to be determined with respect to U.S. Bank's claims on these two properties, including some that cannot be determined at this time because other events must first transpire or important information must first become available. And, as discussed below, Court Orders, statements by the Court, and pleadings by the Receiver – none of which are addressed or acknowledged in U.S. Bank's motion – expressly and directly address these matters and make clear that its motion is premature.

---

[1] U.S. Bank has submitted an affidavit in support of its motion, despite the fact that it already submitted supporting documentation under oath together with its claims. As the Receiver will consider, address, and object or oppose, if appropriate, U.S. Bank's submissions within the claims process, the Receiver until then reserves any response to U.S. Bank's documentation and the affidavit submitted with its motion.

## BACKGROUND

In February 2019, the Receiver recommended a process in which the Receiver would review all claims, conduct necessary discovery, and report to the Court and all claimants with regard to the validity, amount, legality, and classification of claims. (*E.g.,* Dkt. No. 241, at 4-5 & Ex. 3 at 3) The Receiver advised that the claims review would likely take at least a year, after which the Receiver would submit a claims report addressing all claims submitted against the estate, and that all interested parties would have an opportunity to lodge objections for the Court to resolve. (*Id.*) But before the process even started, U.S. Bank and other institutional lenders objected. They objected to the process, the timing, the role of the Receiver, and sundry other matters. They filed a variety of motions and objections to stymie the Receiver's efforts to review claims and they used tactics which delayed the process. (*E.g.,* Dkt. No. 483) From February 2019 through October 2019, Magistrate Judge Kim oversaw early wrangling over the process and directed the Receiver to focus efforts on preparing both a schedule based on the approximately 2000 claims submitted that would provide the identity of the claimant, amount claimed, and whether the claimants identified themselves as secured and related status reports, none of which involved a substantive review of the claims. (*E.g.,* Dkt. Nos. 468, 477, 548)

In the Second Status Report on Claims, the Receiver specifically addressed the two properties that are the subject of U.S. Bank's motion, stating:

> There are two properties (**6751 S. Merrill** and **7110 S. Cornell**) where the only secured claim asserted against the properties were by institutional lenders. … Disputed issues on these properties include but are not limited to whether the lender has a valid security interest (*i.e.,* whether the lender had inquiry notice discussed *infra*), and to what extent the lender is entitled to recover contract interest, default rate interest, prepayment penalties, attorneys' fees, costs, and other sums and also the amount of any lien the Receiver may assert for administrative expenses. As stated in the Receiver's first report on claims (Docket No. 468, at 5), disputed issues in regards to priority as they relate to all of the claimants relative to the properties also may include without limitation: …

- Whether any claimants were on inquiry notice or otherwise acted in concert with the Defendants to deepen the insolvency. *See, e.g., In re Sentinel Mgmt. Group, Inc.*, 809 F.3d 958 (7th Cir. 2016).

- Whether any claimant received a fraudulent transfer. …

- The amount of any lien the Receiver may assert for administrative expenses.

(Dkt. No. 477, at 7-8 (emphasis added))  Soon thereafter, in October 2019, this Court took control of determining the claims process. (*E.g.,* Dkt. Nos. 566, 574, 586, 598, 625, 652)  This Court also noted the delays to the Receiver's efforts occasioned by the institutional lenders motions and objections.  (*See, e.g.,* Dkt. No. 614, at 3)

At the Court's direction, the Court, the Receiver, the SEC, the institutional lenders, and certain investor lenders then worked from October 2019 through February 2020 to discuss and fashion a claims process to resolve all issues relating to the properties against which most claims were asserted.  The Court also issued an order setting December 31, 2019 as the new bar date for claims submissions and amendments.  (Dkt. No. 574)  The Court directed the Receiver to file a motion proposing a process consistent with those efforts, discussions, and the Court's direction, which the Receiver filed in February 2020.[2]  (Dkt. No. 638)  The Receiver's motion was then briefed and, at this time, remains pending before the Court.  (*See* Dkt. No. 801; *see also* Dkt. No. 805)

---

[2] The Receiver previously expected to file a second motion to propose a complementary process for review and resolution for certain claims not expressly addressed by the proposed claims process motion.  But the Receiver also expected the Court's determination of the claims process motion would inform the procedure that the Receiver would recommend as to any such claims that are not encompassed by the proposed claims process, which also remains pending. Relatedly, the Court subsequently indicated that all issues for all properties will be handled through the claims process. (7/15/2020 Tr., at 45:8-13)  In light of these developments, the Receiver is awaiting resolution of the pending motion before determining whether a complementary motion will be needed and, if so, what it should look like.

In connection with its consideration of the still pending claims review process, the Court has made statements and issued orders that show that U.S. Bank's motion is premature. For example, in March 2020, the Court made clear that, even where there are no competing mortgages at issue for the properties, the claims process will be used where "other issues remain to be resolved during the initiated claims resolution process, including without limitation the alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien on a portion of the proceeds, if warranted." (Dkt. No. 676, at 6 n.2 (internal citations omitted))

Further, on July 15, 2020, the Court stated during a hearing, that "all issues with regard to a property should be resolved during the claims process, including any issues with regard to fraudulent transfer, inquiry notice. Whatever issues there are, I want it all resolved when the property is up for adjudication during this claims process." (7/15/2020 Tr., at 45:8-13) Then, on September 24, 2020, the Court issued an order stating: "Receiver's request that he be allowed to make priority recommendations to the Court during the claims resolution process is granted." (Dkt. No. 801) The Court further stated: "Concerning the Receiver's potential claims to avoid certain liens, the Court rules that after all discovery (written and oral) is completed, the Receiver within 14 days must disclose to lienholders for a particular property that he seeks to assert such a claim. Seven days thereafter, any of the lienholders will be able to request leave of Court to take additional discovery relevant to the Receiver's claim." (*Id.*)

As the Court knows, simultaneous with the efforts to implement a claims review and resolution process, the Receiver has undertaken substantial efforts for the estate. (*See, e.g.,* Dkt. No. 800, at 5-6, 8-9 (and citations therein))

# ARGUMENT

U.S. Bank's motion is based on its desire to have its claim resolved before all other claims on the basis that no allegedly competing secured claims have been asserted. It argues, thus, that it should be allowed to circumvent the claims process, over 700 other secured claimants, and the Receiver's review of its claims to receive immediate turnover of all funds associated with the 6751 Merrill and 7110 Cornell properties. But its argument ignores the record in this action, which shows that the motion is premature and will be mooted by the claims process the Court intends to approve and have the Receiver administer. The motion is the latest of repeatedly raised and rejected efforts to avoid: (i) an orderly claims process, which has not yet been approved by Court; (ii) scrutiny of its claims by the Receiver, including discovery on issues specifically relating to its claims; and (iii) resolution of issues that would impact the amount of any distribution to which U.S. Bank may be entitled from the sales proceeds for these properties. The motion for turnover must be denied for at least the following reasons.

**I.      THE CLAIMS PROCESS, WHICH THE COURT HAS NOT FULLY FASHIONED, WILL RESOLVE U.S. BANK'S CLAIMS.**

While the Court has not fully resolved the Receiver's claims process motion, it has resolved issues that show that U.S. Bank's motion is premature. In addition, unresolved issues associated with the Receiver's claims process motion also show that U.S. Bank's motion is premature.

**A.      The Court Has Stated that All Issues Relating to Properties and Claims Will Be Addressed in the Claims Process, Even When There Are No Competing Liens.**

The Court has said that all issues relating to the properties, including those that may be raised by the Receiver with respect to a claim, will be determined within the claims process. (7/15/2020 Tr., at 45:8-13 ("So, in the end, I think we're all in agreement that all issues with regard to a property should be resolved during the claims process, including any issues with regard to

fraudulent transfer, inquiry notice. Whatever issues there are, I want it all resolved when the property is up for adjudication during this claims process.")) Put differently, the claims evaluation and resolution process will address more than whether there are competing liens. In fact, the Court has expressly stated that even when there are no competing liens, if there are other issues that remain to be resolved, they will be addressed in the claims process. (Dkt. No. 676, at 6 n.2 ("Though there are no competing mortgages for four of the properties at issue, … the Court is persuaded that, with respect to these properties, "other issues remain to be resolved during the initiated claims resolution process, including without limitation the alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien on a portion of the proceeds, if warranted.") (internal citations omitted); *see also* Dkt. No. 800, at 12; Dkt. No. 790, at 3 & n.2) U.S Bank neither acknowledges nor addresses the fact that the Court has already spoken to this issue.

The Court's decision to handle claims like U.S. Bank's in this manner is both efficient and fair, not only to U.S. Bank but to all claimants who are anxious and ready to have their claims evaluated and resolved. These efficiencies will allow claims to be evaluated and resolved in a manner that also fits the limited resources and finances of the Receivership. In this regard, the Court has struck a reasonable and proper balance between competing interests with respect to timing, use of Receivership resources, and distribution of funds.

> **B.    Issues of Priority, Including Those that May Be Raised by the Receiver, Are to Be Addressed in the Claims Process.**

As recently decided by the Court, the Receiver may make recommendations to the Court regarding issues pertaining to the priority of claims. (Dkt. No. 801)  Here, the issue of priority is not fully resolved.  While it appears that no other claimants have asserted secured claims against

6

the properties at issue,[3] that is not the end of the Receiver's or the Court's analysis. There are issues that involve the validity, legality, and classification of the claim that must be reviewed by the Receiver which could impact the secured nature of the claim therefore, potentially, the priority of the submitted claims.[4] Specifically, if there was inquiry notice of the fraud in connection with the origination of the loan, a lender's secured status may be invalid and subordinated to unsecured status. *See, e.g., In re Sentinel Mgmt. Group, Inc.*, 809 F.3d 958 (7th Cir. 2016); *see also, e.g.,* Receiver's Second Status Report on Claims, Dkt. No. 477, at 7.

As U.S. Bank points out in its motion, the loans for the Merrill and Cornell properties were made in February 2018 (Dkt. No. 785, at 2-3), which was *after* the SEC had begun its investigation into the Cohens and only a few months before the SEC filed its complaint in this action. (Dkt. No. 1) Importantly, while the originator of the mortgages was examining the financial health and loan-worthiness of EquityBuild and the Cohens, the EquityBuild Ponzi scheme was in financial turmoil, unable to pay its investor lenders, and on the cusp of collapsing. These facts, and others obtained through discovery will shed light on the issue of inquiry notice. All stakeholders here, including U.S. Bank, have an interest in the Receiver giving that issue adequate consideration because if there was inquiry notice of the fraud in connection with these loans, then U.S. Bank's secured status and priority may be in question.[5] At a minimum, the Receiver requires time for further

---

[3] It is noteworthy that the claims spreadsheets and claims status reports that the Receiver has submitted to date are interim. As the Receiver and his team review the submitted claims, they continue to make improvements and changes to the reported information. The reported information is meant to be informative but not necessarily conclusive.

[4] The Receiver is not saying that the Receiver has made a determination that any objection should be asserted to the claims. Rather, the Receiver has not yet completed his work in that regard.

[5] A central question in this regard is whether the loan originator had "knowledge that would lead a reasonable, law-abiding person to inquire further — would make him in other words suspicious enough to conduct a diligent search for possible dirt." *In re Sentinel*, 809 F.3d at 962 (citations omitted). Should the Receiver determine that inquiry notice is a legitimate basis for opposing U.S. Bank's claims, then U.S.

review and may need discovery, which is anticipated as part of the claims review process, consistent with the Court's prior statements that "all issues with regard to a property should be resolved during the claims process, *including any issues with regard to fraudulent transfer, inquiry notice*." (7/15/2020 Tr., at 45:8-13 (emphasis added))

### C. Discovery Regarding Claims, Including Claims Discovery Sought by the Receiver, Is to Be Addressed in the Claims Process.

Consistent with the foregoing, the Court has made clear that discovery will take place within the claims process, which includes discovery the Receiver may need to evaluate claims. A non-exhaustive list of the types of issues that may be relevant to U.S. Bank's claim and for which the Receiver may need discovery are described in Receiver's claims status reports. (*See, e.g.,* Receiver's Second Status Report on Claims, Dkt. No. 477, at 7-8) Because the Receiver has not completed discovery, which is to be conducted within the claims process, U.S. Bank's motion for turnover is premature.

### D. U.S. Bank's Motion Is Premature Because the Court Has Not Fully Determined the Claims Process and the Receiver Has Not Completed Analyzing the Claims.

The Court has not finalized the claims process that the Receiver will implement and in which U.S. Bank's claims will be addressed and resolved. On that basis alone, the turnover motion is improper and premature. Further, and relatedly, the Receiver has not finished review, evaluation, and determination of the more than 2000 claims submissions.

U.S. Bank argues that the Receiver has not yet objected to or otherwise challenged its proofs of claim and liens. (Dkt. No. 785, at 5) But that does not mean that the Receiver has determined to not do so. As noted, the Receiver has recommended a claims process, which is the

---

Bank would have the opportunity to respond and offer any reasons why that should not be the case. But those issues are not ripe at this time.

subject of U.S. Bank's objections.  But the Court still needs to approve and set the process, further investigation and discovery is needed, and several issues need to be addressed and resolved before setting forth objections to more than 2,000 submitted claims, including U.S. Bank's claims.  The Receiver will be evaluating each claim as to validity, fairness, legality, and classification.  (*See, e.g.,* Dkt. No. 638, ¶¶ 50-51)  Those efforts also will include analysis of the accuracy and legitimacy of the components of the amounts claimed.  Indeed, as noted, the Receiver's will be reviewing U.S. Bank's claims to consider whether any of the components of the claims are proper, including, for example, interest, penalties, and attorneys' fees sought.  U.S. Bank presumes its entitlement to these amounts, but the Receiver may have objections to the amounts sought or as to particular components of the claims.  In addition, the Receiver will determine whether or not to assert claims to avoid claimant's liens, consistent with Court's recent order on the claims process.  (Dkt. No. 801 ("Concerning the Receiver's potential claims to avoid certain liens, the Court rules that after all discovery (written and oral) is completed, the Receiver within 14 days must disclose to lienholders for a particular property that he seeks to assert such a claim."))  And, in connection with administering the claims process, the Receiver will report to the Court all of the information bearing on the claims that the Receiver believes in his judgment and discretion to be reasonably necessary for the Court to resolve any issues with respect to the submitted claims.  Put differently, as the Court has said, all of the issues relating to the properties and claims will be addressed through the claims process, which must occur and be ruled upon before any distributions are made.

## II. ISSUES REMAIN TO BE RESOLVED WITH RESPECT TO THE PROPERTIES AND U.S. BANK'S CLAIMS.

Beyond the issues of validity, priority, and fraudulent transfer determinations discussed above, there are several other issues that need to be resolved before any amounts would be available for distribution from the properties at issue, including without limitation determining the

9

alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien. (Dkt. No. 676, at 6 n.2; *see also* Dkt. No. 800, at 12; Dkt. No. 790, at 3 & n.2)

### A. Post-Sale Account Reconciliation Is Not Complete.

U.S Bank wrongly presumes that the amount of the available proceeds has been determined for both properties. But that is not the case with 7110 Cornell, for which the sale closed in August 2020. Following the close of each property, a post-sale reconciliation of the property account is needed with the property manager to ensure, for example, that expenses like utilities (for which last bills are not received until after the closing) are paid. The process of closing out the property account with the property manager can take 2-3 months. The post-sale reconciliation for 7110 Cornell is not yet complete.

### B. Post-Sale Funds Restoration Is Not Complete.

In addition, prior to distribution of funds to any claimants, post-sale restoration of funds from the sale proceeds for 7110 Cornell will be needed to reimburse the Receiver's account for amounts advanced on behalf of 7110 Cornell to cover some of its expenses. Through April 2020, this property had received $30,963.69, as reported to U.S. Bank's counsel. The final accounting of restoration amounts due from 7110 Cornell to cover all amounts it received through its sale in August 2020 will likely take another 2-3 months. That process requires receipt of property financial reports from the property manager, a post-sale reconciliation by the property manager, an accounting analysis by the Receiver's accountants, and review by the Receiver's counsel.

C.     **Determination of the Receiver's Lien Is Not Complete.**

Finally, the Court has before it the issue of a Receiver's lien, which will impact the monies held in escrow for both properties. (Dkt. Nos. 638, 755, 778) Those issues are fully briefed and well-known to U.S. Bank and the Court.[6]

III.    **U.S. BANK'S REPETITIVE EFFORTS TO AVOID OR FRACTURE THE CLAIMS PROCESS SHOULD AGAIN BE REJECTED.**

U.S Bank attempts to support its turnover request by repeating the statement that a receiver "takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." (Dkt. No. 785, at 6 (citation omitted)) But this, again, is unremarkable, especially when the claims process has not been completed. Neither the cases cited nor the principle support U.S. Bank's argument that a turnover must occur now, before the Court has resolved the issues that have been identified and the Receiver has completed analysis of the claims. And, it certainly does not alter the authority of the Receiver and the Court to implement and administer a claims process to determine the legality, validity, and amount of the claims. Rather, the legal principle it invokes is only part of the framework for addressing the claims. It is certainly not the end of the analysis.

U.S. Bank also repeats previously overruled arguments regarding insolvency. (*See, e.g.,* Dkt. No. 597 (motion for a transfer to bankruptcy)) It argues that money will be saved if the Receiver avoids performing his role. The logic of the argument is that the Receiver should be removed because that will save money, another argument which has been rejected. The real point of U.S. Bank's motion is to bypass an orderly claims process before the Court has determined the process and the Receiver has completed his claims work, which for the reasons stated is misplaced.

---

[6] As previously reported, the Receiver also has sought guidance on potential tax liability issues regarding these and other Receivership assets. There are potential tax implications regarding the properties that are still under review. The Receiver also needs to address insurance issues relating to the properties, including but not limited to allocation of insurance premiums and potential claims matters.

11

### A. U.S. Bank's Motion Also Should Be Denied, Consistent with Prior Rulings, to Avoid a Piecemeal Claims Process, and Because It is Premature.

U.S. Bank's motion for turnover of sales proceeds is like objections and motions that have been made before (Dkt. No. 440) and rejected by the Court in favor of escrowing sales proceeds, which has been done for these two properties, while the claims process (including discovery and its other components) are undertaken. (*See, e.g.,* Dkt. No. 311 at 8; Dkt. No. 452) This also was the logic behind requiring a letter of credit associated with credit bids, again simply to ensure that once a claims process was in place, that there would be the ability to address the resolution to address issues that will be reviewed as part of that process:

> the lender seeking to submit a credit bid must post an irrevocable letter of credit drawn on another bank to protect the Receiver and Receivership Assets if the lien is voided or is deemed unenforceable. *See In re Octagon Roofing*, 123 B.R. 583, 590-92 (N.D. Ill. 1991); *see also* LR 66.1(a) (authorizing the court to direct the manner in which the Receivership Estate shall be administered). **The letter of credit will require payment of up to the amount of the credit bid should the court determine that the lien constituted a fraudulent conveyance or that the lenders otherwise engaged in inequitable conduct in securing the debt**. *See In re Octagon Roofing*, 123 B.R. at 590-92; *In re Kids Creek Partners, L.P.*, 212 B.R. 898, 928 (N.D. Ill. 1997).

(Dkt. No. 352, at 7-8 (emphasis supplied)) Here, as to these properties, the institutional lenders declined to credit bid.

### B. Piecemeal Motion Practice Should Be Avoided.

U.S. Bank's motion invites a piecemeal approach to the claims process. If the Court were to grant U.S. Bank's motion, it could serve as an invitation to every claimant to champion their cause and create further significant disruptions and delay substantive progress, all without having the Court's guidance and resolution of the claims process motion, a result which would be inefficient, inequitable to other stakeholders, and not in the best interests of the estate. To the contrary, the estate and all claimants would benefit from the Court staying further motions from

particular claimants seeking resolution of their claims outside of the process approved by the Court.[7]

## **CONCLUSION**

Whether U.S. Bank holds valid, legal, and secured priority interests over other unsecured claimants is not yet resolved. Several matters must first be addressed, including the Court setting the process, the Receiver completing his review and analysis of related the claims and their components, post-sale reconciliation and restoration of funds, and the Court's determination of an administrative lien. U.S Bank's invitation to proceed upon an inverted claims process that puts objections before the claims work has been completed is inefficient, more costly, and unfair to other claimants. The motion should be denied.

Dated: October 2, 2020  Kevin B. Duff, Receiver

By: /s/ Michael Rachlis
Michael Rachlis
Jodi Rosen Wine
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950; Fax (312) 733-3952
mrachlis@rdaplaw.net
jwine@rdaplaw.net

---

[7] Additionally, the procedural premise of U.S. Bank's motion is flawed. U.S. Bank suggests that the Court invited it to file this motion, citing to a comment by the Court during the July 15, 2020 hearing. (7/15/2020 Tr., at 45:2-4) During that hearing, counsel for other allegedly secured claimants, Mr. Cherny, expressed to the Court – as U.S. Bank has done in the instant motion – that "there seems to be no issue as to priorities" with respect to two properties against which his clients asserted claims. (*Id.* at 44:15-45:1) In fact, the premise behind Mr. Cherny's statements to the Court were not correct, as was explained to him after the hearing. Similarly, with U.S. Bank, the Receiver and his counsel explained to it that there are a number of unresolved issues that are predicates to properly evaluating and resolving U.S. Bank's claims. As discussed herein, those issues are to be resolved through the claims process. (*See, e.g.,* Dkt. No. 477, at 7-8)

13

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020, I electronically filed the foregoing **Receiver's Response To U.S. Bank's Motion For Priority Determination And Immediate Turnover Of Funds** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

I further certify that I caused a true and correct copy of the foregoing **Response**, to be served upon the following individuals or entities by electronic mail:

- Defendant Jerome Cohen (jerryc@reagan.com);

- All known EquityBuild investors; and

- All known individuals or entities that submitted a proof of claim in this action (sent to the e-mail address each claimant provided on the claim form).

I further certify that the **Response** will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net