UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN <br><br> Defendants. | Case No. 1:18-cv-5587 <br><br> Hon. John Z. Lee <br><br> Magistrate Judge Young B. Kim |

**MIDLAND AND U.S. BANK'S REPLY IN SUPPORT OF
U.S. BANK'S MOTION FOR PRIORITY DETERMINATION
AND TURNOVER OF SALE PROCEEDS**

Midland Loan Services, a Division of PNC Bank, NA and U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50 ("US Bank") file this reply in support of US Bank's Motion for Priority Determination and Turnover of Sale Proceeds (Dkt. No. 783)(hereafter, the "Turnover Motion").

While Midland has no interest in the two properties that are the direct subject of the Turnover Motion, Midland claims a lien on twenty-five properties in a similar position and has a decided interest in the method employed by the Court to resolve them. Midland and US Bank appear to be the only claimants in this position.

**BACKGROUND**

As noted, in the Turnover Motion, US Bank is the current first-priority and only noteholder and lienholder with respect to the properties located at 6751 Merrill and 7110 S. Cornell. Midland,

as servicer, claims a first lien on thirty-six single family residences owned by the estate.[1] According to the Master Claim Spreadsheet attached to the Receiver's Eighth Status Report (Dkt. No. 757-1), Midland is the only party claiming a lien on twenty-five of these properties.[2] The Receiver is in the process of selling these properties and Midland anticipates closing after the first of next year. According to the Receiver's Motion for Approval of Process for Resolution of Disputed Claims (Dkt. No. 638) (hereafter, the "Claims Procedure Motion"), the two US Bank properties and the twenty-five Midland properties are the only properties held by the estate to which only one party claims a security interest.[3]

Throughout the many status conferences related to the claims process, the Court has often suggested that properties subject to only a single lien should be treated differently from those with multiple competing liens, i.e., there should be a separate, parallel process for resolving and paying those claims. At the status conference in July, the Court invited a party who claimed to hold the sole lien on a property to file a motion to resolve his claim. July 15, 2020 Tr. (Dkt. No. 752) at 44:15-45:4.[4] US Bank accepted this invitation filing the Turnover Motion to release funds related to two properties in which it holds the sole claimed lien. Yet, the Receiver opposes resolving US

---

[1] Midland's liens on these properties attached in December 2014, June 2015 and May 2017.

[2] One property appears to be subject to a lien in favor of the City of Chicago for taxes or repairs. This lien should be resolved at closing.

[3] The Receiver expressly limited the exhibits to his Claims Procedure Motion to "claims submitted to the Receiver on those properties that are encumbered by institutional debt." Notice of Filing Amended Exhibits (Dkt. No. 693) at 1. Accordingly, there may be additional properties that are subject only to a single investor's lien. But it is not clear why the Receiver would propose a separate process for institutional debt than for investor debt. There is no legal distinction between them.

[4] The Court's statements regarding the inclusion of all disputes in the claims process under construction immediately follow this statement. In context, the Court was discussing the inclusion of all disputes on a given claim in the process rather than including all claims including sole lien claims in the priority dispute process. July 15, 2020 Tr. (Dkt. No. 752) at 45:8-13.

Bank's claim as the Court suggested insisting that it be resolved through the process he seeks to create by the Claims Procedure Motion for intercreditor disputes.

There is no good reason to subsume the limited issues involved in the single lienor properties in the claims procedure process which is being set up to deal with litigation involving numerous parties. Thus, the Court should resolve US Bank's motion on its merits. Alternatively, the Court should set a briefing and discovery schedule to resolve US Bank's motion. In either case, the Court's ruling will also define the process for resolving Midland's claim.

## ARGUMENT

The issues between the Receiver and US Bank or Midland are simple and straightforward. The only parties involved are the Receiver, US Bank and Midland – all sophisticated parties represented by capable counsel. There may not even be any disputes. The Receiver may or may not argue that the liens should be invalidated or subordinated. Any other issues relate to accounting and expense allocation; neither of which requires extensive litigation.

There is no good reason to continue to hold funds subject to a single party's security interest. Nor has the Receiver suggested one. First, he argues that the claims that are not subject to priority disputes should be resolved by the process created to resolve priority disputes; despite acknowledging that the process was not intended for this purpose. Receiver's Response to US Bank's Motion for Priority Determination and Immediate Turnover of Funds (Dkt. No. 806) (hereafter, "Response") at 3. Second, the Receiver claims that he has not had sufficient time to determine whether or not to dispute the validity of US Bank's security interest and whether US Bank is the only claimed lien. *Id*. at 7-8. And, third, he needs several more months to reconcile the sale and any charges he may wish to assert against the properties. *Id.* at 9.

3

1.      **The process currently under consideration by the Court relates to disputes between secured creditors as to the priority of their respective liens.**

The Receiver filed the Claims Procedure Motion to create a process by which the Court could resolve the disputes between the investors and the Mortgagees as to the priority of their respective liens. Claims Procedure Motion at 10. In the Claims Procedure Motion, the Receiver noted that there were properties with no priority disputes, i.e., those encumbered by only one lien. With respect to claims associated with those properties, the Receiver anticipated "either filing a separate motion to address any issues that the Receiver identifies with respect to the claims associated with those properties and/or requesting a referral to the Magistrate Judge for settlement purposes to address issues with those properties." *Id.* at 9.

At the request of the Mortgagees, the Court expanded the process to include any arguments that the Receiver had against the liens asserted by either side, including fraudulent transfer or subordination. At all times, the parties have proceeded with the understanding that the resolution of claims that did not involve an intercreditor dispute would be resolved separately. Even in his Response, the Receiver acknowledges that a two-track system was always contemplated: "The Receiver previously expected to file a second motion to propose a complementary process for certain claims not expressly addressed by the proposed claims process motion." Response at 3, n.2. The claims by US Bank and Midland are exactly those claims.

The process that the Court is currently considering for the priority disputes simply does not fit the issues raised by US Bank and Midland's claims. To begin with, the process deals exclusively with disputed claims. Each claim to be decided is the subject of a dispute among the creditors – each secured creditor is claiming to hold the first lien position. For the properties at issue in this motion, the claims process has revealed that there are no disputes. Only one party asserts that it

holds a security interest. Unless and until the Receiver disputes the claim (which he says he may or may not do), there is no dispute to resolve.

Moreover, the dispute process is designed to resolve the wrong type of dispute. At base, the parties and the Court have been concerned with the problems created by resolving disputes involving numerous parties; many of which are unsophisticated and unrepresented. To that end, the parties have spent extensive time negotiating the initial discovery to be exchanged between the investors and the Mortgagees. Where there are no investors, that discovery is not needed and would not occur.[5] In addition, the parties have worked to develop means by which EquityBuild's records could be made available to both Mortgagees and investors to inform their disputes. Moreover, the parties have litigated and the Court has determined issues regarding the Receiver's role in the intercreditor disputes, the discovery allowed in those disputes and how (and when) to integrate the Receiver's claims with the intercreditor dispute. None of that is helpful or even relevant to resolving any issues the Receiver may have with US Bank or Midland.

The choice is simple. The Court and the parties can spend more time, effort and money attempting to modify the existing process to fit disputes for which it was not intended. Or, the three parties to these disputes can resolve the issues between them through motion practice or negotiation. If the Receiver truly needs additional time, the parties can agree to a briefing schedule.

There is absolutely no reason that the limited issues between two creditors and the Receiver cannot be resolved in parallel with the larger priority dispute process. That is after all what the Receiver suggested all along.

---

[5] The Receiver requested and the Court allowed the Receiver to wait to assert his objections to the multi-lienor claims until after the creditors finished taking discovery from one another. As there are no other creditors involved, that discovery will necessarily not take place and there is no reason to wait. As noted below, the Receiver has already received substantial discovery from the Mortgagees, including Midland and US Bank.

**2.    The Receiver has had ample time to determine his position on the priority or validity of these particular liens.**

The Receiver asserts that he is still unsure whether he will assert that the liens are either invalid or subject to some form of subordination. More surprisingly, he asserts that he still is not sure if US Bank is the only party asserting a lien against the properties at issue. Neither assertion makes sense.

The Receiver has had more than ample time and information to make such basic decisions about the Mortgagees' liens. At the very beginning of the case, the Court required that the Mortgagees disclose basic information about their loans. Order Appointing Receiver (Dkt. No. 16), ¶17.C. In addition to this information, the Receiver requested and the Mortgagees provided complete copies of the documents underlying their loans.

The Mortgagees supplemented this information when they filed their proofs of claim on or before the July 1, 2019 bar date. With their proofs of claim, the Court required the Mortgagees to provide the following information and documents:

- An itemized accounting of all transactions related to the loans;

- An itemized accounting of the amounts currently due on the loans;

- An itemized accounting of any escrows held on the loans;

- Copies of all loan applications, appraisals, underwriting files, loan documents, closing statements, wiring instructions, title commitments, and title insurance policies related to the loans.

Proof of Claim Form (Dkt. No. 241-1) at §§ 5, 9. With respect to Midland (and likely the other Mortgagees), the proof of claim called for Midland's entire pre-litigation file on the loans.

The Receiver has had extensive discovery from the Mortgagees in his hands for at least fifteen months. He has also had sole possession of EquityBuild's records for over two years. He

6

needs nothing else to determine whether he can allege a good faith claim for fraudulent transfer or equitable subordination. Parties routinely file similar claims in this and other courts with less information in hand.

The Receiver's favorite case, *Sentinel Management*, explains why he does not need further discovery to decide whether to object. The *Sentinel Management* cases explored two methods by which a bankruptcy trustee could invalidate or subordinate a lien.[6] First, the trustee could show that the grant of the lien was an actually fraudulent transfer. If he did so, the transferee could defend by proving an affirmative defense of good faith. *Sentinel II*, 809 F.3d at 961. In the context of the transferee's good faith defense, the *Sentinel II* court held that inquiry notice by the transferee was sufficient to defeat good faith. *Id.* Second, the trustee could subordinate the lien by showing that the creditor engaged in conduct that was "not only 'inequitable' but seriously so ('egregious,' 'tantamount to fraud,' and 'willful' are the most common terms employed) and must harm other creditors." *Id.* at 965. The *Sentinel II* court expressly rejected the argument that inquiry notice was sufficient for equitable subordination. *Id.* Instead, equitable subordination requires conduct that is tantamount to fraud, i.e., actual knowledge.[7] *Id*.

Accordingly, if the Receiver wants to argue that the Mortgagees' liens were a fraudulent transfer, he would need to prove that EquityBuild granted those interests with the intent of hindering its creditors. The information related to that argument lies entirely within EquityBuild's records to which the Receiver has had exclusive access for more than two years. Unless and until he proves an actual fraudulent transfer, the Mortgagees' good faith (and, thus, the issue of inquiry

---

[6] There are two *Sentinel Management* cases, *In re Sentinel Mgmt. Group (Grede v. Bank of New York Mellon)*, 728 F.3d 660 (7th Cir. 2013) (*Sentinel I*) and *In re Sentinel Mgmt. Group (Grede v. Bank of New York Mellon)*, 809 F.3d 958 (7th Cir. 2016) (*Sentinel II*), which should be read together. The Receiver usually cites to *Sentinel II*.

[7] The Receiver continuously conflates the requirements for the transferee's good faith defense with the requirements for equitable subordination.

notice) never arises. Alternatively, the Receiver can attempt to subordinate by showing actual fraud by the Mortgagees. The information necessary to allege this ground for subordination would necessarily be within EquityBuild's records or the underwriting files, each of which the Receiver has had access to for more than a year.[8] The Receiver does not need discovery; he needs to review the documents that have been in his possession for more than a year.

The Receiver's suggestion that he still is not sure who has claims against what properties is properly ignored. The bar date passed fifteen months ago and he claims to have completed his review of the claims six months ago. Receiver's Eighth Status Report (Dkt. No. 757) at 18 (noting that the Receiver completed his claims review in early May). He professed his readiness to begin the priority dispute process and even identified the first tranche and all of the relevant parties months ago. If the Receiver cannot certify a claims list at this point, he never will. Further time on that task is simply wasted.

**3.    The accounting issues identified by the Receiver do not justify the indefinite delay the Receiver seeks.**

The Receiver also suggests that his unresolved accountings justify an indefinite delay. They do not. It is not at all clear why accounting for the sale of properties should take months after closing. These properties are relatively small apartment projects, not multimillion dollar financial empires. Certainly, the Receiver does not explain why finalizing the sales should take an additional 90 or so days.

---

[8] This is necessarily a simplified discussion of the Receiver's potential claims. Among other things, it does not consider the complications created by US Bank's and Midland's status as subsequent transferees many times removed from the originator of the loans.

All other accounting issues can – and should be – resolved as part of the motion. If the Receiver believes that US Bank has overstated its claim, he can object and provide his own calculation. If disagreement persists, the Court can easily resolve the dispute.

The same is true for the Receiver's proposed charges against the property for his fees. He needs simply to allocate whatever portion of his fees he believes are appropriate to each property.[9] US Bank can object and the Court can decide.

### CONCLUSION

The Court should not delay the resolution of simple disputes for the completion of the more complex disputes as the Receiver suggests. The issue that US Bank raised is a simple one involving only the Receiver and the bank. Only one other party – Midland – has a similar issue. We do not need to build a second complex process to resolve these limited issues. Nor do we need to shoehorn them into a process designed for an entirely different dispute. The parties, including the Receiver, always intended to handle the resolution of claims not involving priority disputes separately. Nothing has changed.

---

[9] An examination of actual charges is preferable to the hypothetical exercise that the Receiver has previously asked the Court and parties to engage in.

9

October 14, 2020

Respectfully Submitted,

*/s/ Michael D. Napoli*
Thomas B. Fullerton (6296539)
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
(312) 634-5700
thomas.fullerton@akerman.com

Michael D. Napoli (TX 14803400)
Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 720-4360
michael.napoli@akerman.com

*Counsel for Midland Loan Services,*
*a Division of PNC Bank, National Association*


*/s/ Jill Nicholson*
Jill Nicholson (jnicholson@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 N. Clark St., Ste. 3000
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 644-7528
*Counsel for  U.S. Bank  National Association,*
*as Trustee for the Registered Holders of J.P.*
*Morgan Chase Commercial Mortgage*
*Securities Corp., Multifamily Mortgage*
*Pass-Through Certificates, Series 2018-SB50*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on October 14, 2020 by filing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ *Michael D. Napoli*
Michael D. Napoli