IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., EQUITYBUILD ) FINANCE, LLC, JEROME H. COHEN, ) And SHAUN D. COHEN, ) ) Defendants. ) | Case No. 18 C 5587<br><br>Judge John Z. Lee |

## ORDER

Before the Court are the Receiver's eighth and ninth motions to confirm the sale of certain real estate and for the avoidance of certain mortgages, liens, claims, and encumbrances [712] [749]; and the Receiver's second motion for restoration of funds expended for the benefit of other properties [749]. For the following reasons, these motions are granted.

## STATEMENT

**I.  The Receiver's Eighth Motion to Confirm the Sale of Certain Real Estate [712]**

The Receiver moves to confirm the sale of three apartment buildings in Chicago, located at 6949-59 South Merrill Avenue; 7600-10 South Kingston Avenue; and 7656-58 South Kingston Avenue. Eighth Mot. Confirm Sales at 3, ECF No. 712. Ventus Holdings, LLC ("Ventus") objects on the basis that it is willing to pay higher prices for the apartment buildings than those agreed to by

the Receiver and the proposed buyers. *See* Ventus's Obj., ECF No. 721; Ventus's Reply, ECF No. 746; Ventus's Supplemental Reply, ECF No. 763; *see also* Liberty EBCP, LLC's Obj., ECF No. 728 (objecting on the same basis); Thorofare Asset Based Lending REIT Fund IV, LLC's Obj., ECF No. 730 (objecting on the same basis).

In October and December 2019, the Receiver accepted contracts to sell the buildings at issue to Ventus for a total of $4,315,200, and the Court confirmed those sales in February and April 2020. *See* Feb. 21, 2020 Order, ECF No. 633; Apr. 1, 2020 Order, ECF No. 680. Ventus tendered ten percent of that amount—$431,520.00—as an earnest money deposit. Ventus's Obj. at 3. On April 20, 2020, however, Ventus informed the Receiver that it was unable to secure acquisition financing, that it could no longer raise the required equity from its investors, and that it "[could not] proceed with the acquisition of [the] properties." Apr. 20, 2020 Letter from Ventus to Receiver, ECF No. 739 at 13. Ventus added that it was "quite unfortunate that we could not complete these transactions." *Id.*

From there, the Receiver solicited and accepted the next best bids, ultimately signing contracts to sell the three properties for a total of $945,200 less than Ventus had agreed to pay for them. Reply Supp. Eighth Mot. Confirm Sales at 3, 6, ECF No. 739. On June 11, 2020, the Receiver moved to confirm the sales. Ventus subsequently objected, seeking to reinstate its old contracts in light of new financing it was pursuing. Ventus Obj. at 3 ("Ventus is in the process of securing alternative financing and has received, and approved, term sheets from a new

2

lender."). Ventus did not indicate that it could honor the earlier sale terms until two months after it backed out of the earlier deal, and over six weeks after the Receiver had found new purchasers for the buildings.

As the Receiver notes, Courts have consistently warned against setting aside transactions and disrupting the reasonable expectation of bidders, given the impairment of public confidence in the sales process that ensues from a lack of finality. *See, e.g.*, *In re Gil-Bern Indus., Inc.*, 526 F.2d 627, 628–29 (1st Cir. 1975) (reversing the decision to set aside a sale merely because a higher offer was received after the bidding deadline because, in the long run, this practice would be "penny wise and pound foolish" as creditors would suffer if "unpredictability discouraged bidders altogether" or at least "encourage[d] low formal bids."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 565 (8th Cir. 1997).

After Ventus stated unequivocally in April that it was backing out of the sale for the three apartment buildings, the Receiver acted reasonably in soliciting and accepting new, competitive bids. Given the need to maintain public confidence in the sales process relating to the Receivership Estate—to say nothing of continuing uncertainty that Ventus could go through with a sale this time around, *see* Pioneer Acquisitions' Mem. Supp. Eighth Mot. Confirm Sales at 2, ECF No. 748—the objections to the Receiver's eighth motion to confirm sales are overruled.[1] The motion is granted.

---

[1] Southside Property Group, LLC and Pioneer Acquisitions, LLC filed a joint motion requesting that the Court either strike Ventus's supplemental reply in opposition to the eighth motion to confirm sales, ECF No. 763, or else entertain Southside and Pioneer's arguments in response to that supplemental reply. Southside and Pioneer's Joint Motion

3

With that said, Ventus is granted leave to file a motion for return of its earnest money deposit within two weeks from the date of this order. *See* Ventus Obj. at 6. Responses to the motion will be due two weeks after that.

## II. The Receiver's Ninth Motion to Confirm the Sale of Certain Real Estate [749]

Objections were filed against two of the fourteen properties contained in the Receiver's ninth motion for confirmation of sales.[2] *See* Obj. Ninth Mot. Confirm Sales at 6, ECF No. 769 (objecting to the sales of 1131-41 E. 79th Place and 6250 S. Mozart Avenue in Chicago). Here too, the Court finds the Lenders' objections unpersuasive and, therefore, grants the motion.

Most of the arguments by the two objecting Lenders, Citibank and Fannie Mae, were previously rejected by the Court. For instance, in the face of nearly identical challenges, the Court already approved the Receiver's credit bidding procedures, Oct. 4, 2019 Order at 4–6, ECF No. 540; approved the sales of properties for prices amounting to less than the mortgages securing them, Mar. 31, 2020 Order at 7, ECF No. 676; approved the sales of properties free and clear of any liens or encumbrances provided that those liens attach to the ultimate sales proceeds of the properties, Dec. 12, 2019 Minute Entry, ECF No. 601; and

---

at 3, ECF No. 772. The joint motion is granted to the extent that the Court considered the substantive arguments contained therein before ruling on the Receiver's eighth motion to confirm sales.

[2] On September 14, 2020, the Court entered an order granting the motion as to the the twelve properties to which no objection was filed. Order Partially Granting Receiver's Ninth Mot. Confirm Sales, ECF No. 789.

4

permitted the Receiver's property managers to bid for properties, Oct. 4, 2019 Order at 4–5.

The Court also has ruled that an orderly claims process is the most efficient and equitable method to resolve competing claims of investors and institutional lenders, *id.* at 5; Mar. 31, 2020 Order at 6; and that a claims process is appropriate even for properties where a Lender has a recorded mortgage but the investors do not. *Id.* at 6 n.2 ("Though there are no competing mortgages for four of the properties at issue . . . the Court is persuaded that, with respect to these properties, 'other issues remain to be resolved during the initiated claims resolution process, including without limitation the alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien on a portion of the proceeds, if warranted.'" (citation omitted)). The objectors have raised nothing that would change this conclusion.

While Citibank and Fannie Mae additionally object that the Receiver's sales have not "generated the true and proper value of the properties," Obj. Ninth Mot. Confirm Sales at 25–28, they offer no evidence that the bid process the Receiver employed resulted in properties being sold for less than their true value. *Cf.* Mar. 31, 2020 Order at 7 ("The Court is not persuaded that [the sales] amount is 'grossly inadequate,' . . . nor is it persuaded by UBS's vague contention that a better marketing and sales process would have fetched a higher price."). Indeed, the proposed sales prices for 1131-41 E. 79th Place and 6250 S. Mozart Avenue

5

represent 92% and 109% of their list prices, respectively. Receiver's Reply Supp. Ninth Mot. Confirm Sales at 12, ECF No. 790.

Finally, Citibank and Fannie Mae offer no legal authority to support their novel argument that the sale of the two properties here would invoke the Fifth Amendment's Takings Clause. Obj. Ninth Mot. Confirm Sales at 20–22. Their failure to provide apposite legal support is unsurprising, as courts have recognized that "adjudication of disputed and competing claims cannot be a taking." *In re Lazy Days' RV Ctr., Inc.*, 724 F.3d 418, 425 (3d Cir. 2013).

For the foregoing reasons, the entirety of the Receiver's ninth motion to confirm sales is granted.

## III. The Receiver's Second Motion for Restoration of Funds Expended for the Benefit of Other Properties [749]

Finally, objections were filed against two of the twenty-four properties contained in the Receiver's second motion for restoration of funds.[3] *See* Obj. Second Mot. Restoration at 1, ECF No. 764 (objecting to using proceeds from the sales of 5450-52 S. Indiana Avenue and 7749-59 S. Yates (the "Indiana/Yates properties") to restore funds those properties received from other properties or the Receiver's account). The arguments made by the objecting Mortgagees are overruled.

---

[3] On September 21, 2020, the Court entered an order granting the motion as to the twenty-two properties to which no objection was filed. Order Partially Granting Receiver's Second Mot. Restoration, ECF No. 796.

First, the Receiver's request is not inconsistent with Magistrate Judge Kim's February 13, 2019 order, which stated, *inter alia*, that the Receiver should use the rent from each property solely for the benefit of that particular property. *See* Obj. Second Mot. Restoration at 1; Feb. 13, 2019 Mem. Op. and Order at 9, ECF No. 223. It is undisputed that the Receiver has only used rents from the Indiana and Yates properties for the benefit of those properties, and the funds that are the subject of the Receiver's restoration motion either came from the rents of other properties prior to the February 13, 2019 order, or else came from the Receiver's account. Receiver's Reply Supp. Second Mot. Restoration at 4, ECF No. 791.

Second, the Mortgagees argue that the Receiver failed to request Court approval to expend funds for the benefit of the Indiana and Yates properties. *See* Obj. Second Mot. Restoration Funds at 1, 2. But the Court appointed the Receiver to preserve the properties in the Receivership Estate, and the Receiver subsequently reported over the course of two years that he was using funds from the Receivership account for the benefit of underperforming properties. *See, e.g.*, Receiver's Oct. 31, 2019 Status Report at 2–4, ECF No. 567. The Mortgagees never objected to the Receiver using funds from the Receiver's account to preserve, maintain, and improve the Indiana/Yates properties, despite receiving monthly reports detailing these activities and stating that the Receiver intended to restore the funds. *See* Exs. to Second Mot. Restoration at 39, 49, ECF No. 749–1. Moreover, the Court, including when approving a previous restoration motion, has

7

not required the Receiver to seek approval before expending funds on a given property. *See* Aug. 27, 2019 Order, ECF No. 494.

Finally, the Mortgagees argue that the Receiver's spreadsheets regarding the costs incurred for the Indiana/Yates properties are "merely summaries with no backup or justification of necessity of an expenditure." Obj. Second Mot. Restoration Funds at 1–2. It is undisputed, however, that those spreadsheets collect and recite expense information that was previously produced to the Mortgagees. *See* Receiver's Reply Supp. Second Mot. Restoration at 5–6; Exs. to Second Mot. Restoration at 14–15. The Mortgagees have not objected to the monthly reports for the Indiana/Yates properties, which reflect operating expenses and the accumulated restoration amount due. *Id.*

For these reasons, the Receiver's second motion for restoration of funds is granted in its entirety.

**IT IS SO ORDERED.**                                                            ENTERED: 10/26/20

                                                                                  **John Z. Lee**
                                                                                  **United States District Judge**