UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:18-cv-5587 |
| v. | |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN | Hon. John Z. Lee |
| | Magistrate Judge Young B. Kim |
| Defendants. | |

**MOTION OF CERTAIN MORTGAGEES TO STAY SALES
PENDING APPEAL TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT**

The mortgagees identified below[1] (collectively, "Mortgagees", and each individually a

"Mortgagee") respectfully move this Court pursuant to Federal Rule of Civil Procedure 62 to stay

the sales of all properties identified herein pending the Mortgagees' appeal of the Court's Order

[Dkt 825] to the United States Court of Appeals for the Seventh Circuit.

**FACTUAL BACKGROUND**

The Mortgagees incorporate by reference the Factual Background set forth in their

Mortgagees' Objection to Receiver's (1) Second Motion for Restoration of Funds Expended for

the Benefit of Other Properties; and (2) Ninth Motion to Confirm the Sale of Certain Real Estate

and for the Avoidance of Certain Mortgages, Claims, Liens, and Encumbrances [Dkt. 769]

("Objection"). The Mortgagees claim a secured interest in the Properties and the rents generated

---

[1] (1) Federal National Mortgage Association ("Fannie Mae"); and (2) Citibank, N.A., as Trustee for the registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48.

therefrom.[2]   From the outset of this case, the Mortgagees requested this Court make a determination on lien priority as this issue is a threshold determination for the entire case.   The Receiver has actively fought such a determination, choosing instead to completely disregard the Mortgagees' liens.   These issues are ripe for appeal and the Mortgagees' respectfully request their Motion be granted.

## ARGUMENT

The Mortgagees request a stay of the sale of the Properties pending their appeal to the Seventh Circuit.   This request is supported by law and is necessary because completion of the sale prior to the Mortgagees' appeal may moot the Mortgagees' appeal and cause irreparable harm to the Mortgagees.

The standard for issuing a stay pending appeal is well established.   Courts must "consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).   The standard for granting a stay pending appeal mirrors that of a preliminary injunction.   *In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997).   Similar to a preliminary injunction analysis, a court considering a stay must apply the "sliding scale" approach.   *In re A & F Enterprises, Inc. II*, 742 F.3d at 766.   The "sliding scale" means the court weighs the foregoing factors by applying a "sliding scale" to balance the potential harms to the parties.   For example, the greater the harm to the moving party, the less heavily the moving party's success must weigh in its favor, and vice versa.   *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547–48 (7th Cir. 2007); *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).   Applying these factors, it is clear the sales should be

---

[2] Capitalized terms not otherwise defined herein, shall have the meaning as set forth in the Facts.

stayed pending the Mortgagees' appeal due to the overwhelming and likely harm to mortgagees' interests.

I.     **THE COURT'S ORDER GRANTING THE RECEIVER'S REQUEST TO APPROVE SALE OF CERTAIN PROPERTIES IS IMMEDIATELY APPEALABLE UNDER 28 U.S.C. §1292(a)(2) BECAUSE IT RELATES TO THE WIND UP OF THE RECEIVERSHIP.**

The Mortgagees appeal is based on 28 U.S.C. §1292(a)(2).[3] *S.E.C. v. Janvey*, 404 F. App'x 912, 915 (5th Cir. 2010) (appellate court has jurisdiction under 28 U.S.C. §1292(a)(2) to hear appeals of interlocutory orders confirming SEC receiver sales); *United States v. ""A" Mfg. Co.*, 541 F.2d 504, 506 (5th Cir. 1976) (Under 28 U.S.C. §1292(a)(2), "[i]t logically follows that if an order directing a sale is appealable then an order confirming a sale after the fact is likewise appealable."). Section 1292(a)(2) states "the courts of appeals shall have jurisdiction of appeals from: (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." The most significant assets in the estate are real estate and the sale and manner of disposition of those assets are essential and necessary to accomplish the wind up of this estate. This case is unlike a case in which an ongoing entity such as a manufacturing company has multiple operations and happens to have a parcel of real estate. The manner of disposition of the real estate is the key and threshold issue for the wind up of this case. By overruling the Mortgagees' Objection and granting the Ninth Sale Motion, the Court has wrongfully refused to take the steps necessary to accomplish the "wind up" of this estate. In other words, the order granting the Ninth Sale Motion and denying the Mortgagees' Objection is a "refusing order[]" to take steps to accomplish the purpose of the wind up of the estate. 28 U.S.C. §1292(a)(2).

---

[3] The Mortgagees filed contemporaneously with this Motion their Motion for Certification of Interlocutory Appeal. Although the Mortgagees believe their appeal is proper pursuant to Section 1292(a)(2), they filed the motion in the alternative to allow this Court to certify the issues for immediate appellate review.

The Receiver is currently liquidating nearly every asset of the estate. The Receivership Estate is comprised almost exclusively of commercial real estate. Nearly every piece of property is encumbered by a lien in favor of an institutional lender or an Equitybuild investor, or both. Therefore, the properties are not general receivership assets that will generate sale proceeds that will be divided up among unsecured creditors. Rather, the proceeds belong either to the institutional lender or an Equitybuild investor. The only task left after a sale is a determination of lien priority and value for each of these individual "estates." The liquidation of assets is clearly a step towards the wind up the Receivership Estate and the Mortgagees' requests related to this process relate to steps necessary for the wind up of the estate.

The case of *Janvey* highlights both the appellate court's jurisdiction under 1292(a)(2) and the need for a stay. There, an SEC receiver sold partnership interests over the objection of the defendants. The court confirmed the sales and the defendants appealed under 1292(a)(2). The appellate court determined it had proper jurisdiction, but the appeal was moot because the defendants did not seek a stay of the sales. *Janvey*, 404 F. App'x at 915-16. The Mortgagees are attempting the exact same appeal, but instead are seeking a stay to avoid substantial prejudice and harm that would result if the sales were allowed to move forward.

Compare *Janvey* to *United States v. Antiques Ltd. Partnership*, 760 F.3d 668 (7th Cir. 2014). In *Antiques*, a receiver was appointed as part of the post-judgment tax collections proceedings to assist the United States in recovering on tax liens. The court found that three types of orders are appealable under 1292(a)(2): (i) orders appointing a receiver, (ii) orders refusing to wind up a receivership, and (iii) orders refusing to take steps to accomplish the purposes for winding up a receivership. *Antiques*, 760 F.3d at 672. Here, the Order approving the Ninth Sale Motion is an appealable order under the third category. In *Antiques*, the court held that a post-

judgment tax collection receiver's sale of the taxpayers' interest in a partnership was not appealable under 1292(a)(2). *Antiques*, 760 F.3d at 671-72.

The *Antiques* holding is distinguishable from the present case. As an initial matter, the Order qualifies as an appealable order under the third category. The issues raised in the Objections relate the steps necessary to accomplish the "wind up." By overruling the Objections, this court entered a "refusing order[]" to take steps to accomplish the purpose of the wind up of the estate. 28 U.S.C. §1292(a)(2). Moreover, *Antiques* involved a post-judgment tax collections receiver. Here, we have an SEC receiver, identical to *Janvey*. Additionally, as part of its analysis, the court found that the tax liens attached to the defendants' ownership interest in the partnerships "entitling the receiver to sell those interests in order to realize cash from the liens to satisfy the [defendants'] tax obligations." *Id*. at 672. The Mortgagees have asserted significant case law that the Receiver lacks a right to sell their collateral on the terms and conditions that have been approved. Furthermore, the defendants in *Antiques* were serial filers of appeal, filing five appeals, and the court found their appeals "frivolous." *Id.* at 673. This is the Mortgagees' first appeal. Finally, unlike the Mortgagees, the defendants' failed to obtain a stay of the sales prior to appeal. Thus, it is apparent the present appeal is analogous to *Janvey* and distinguishable from *Antiques*. Therefore, the Mortgagees believe they have standing for an immediate appeal.

## II.     A STAY IS NECESSARY BECAUSE THE MORTGAGEES' APPEAL WILL BE MOOT IF THE SALES ARE COMPLETED BEFORE THE MORTGAGEES' APPEAL IS COMPLETE.

Simply put, if the Properties are sold, then the Mortgagees' appeal will be moot and they will be deprived of their appellate rights. *S.E.C. v. Janvey*, 404 F. App'x 912, 915 (5th Cir. 2010) (holding that a failure to seek a stay of a receiver sale will moot the appeal). This basic concept is plainly set forth in *In re CGI Industries, Inc.*, 27 F.3d 296 (7th Cir. 1994). There, a debtor moved

to stay a sale pending appeal ten days after the sale was completed. The court held the debtor's appeal was moot because the sale was already consummated. *Id*. at 301. The Seventh Circuit explained that the purpose of a stay pending appeal is "to maintain the status quo pending appeal, thereby preserving the ability of the reviewing court to offer a remedy and holding at bay the reliance interests in the judgment that otherwise militate against reversal of the sale." *Id*. at 299. Moreover, the court reasoned "[o]nce the sale has gone forward, the positions of the interested parties have changed, and even if it may yet be possible to undo the transaction, the court is faced with the unwelcome prospect of 'unscrambling an egg.'" *Id*. (internal citation omitted); *see also Out of Line Sports, Inc. v. Rollerblade, Inc.*, 213 F.3d 500, 501 (10th Cir. 2000) (stating "[a]n appeal is moot if the court of appeals can no longer grant effective relief because the object of the suit has been transferred.").

The exact same principle applies to this case, except the Mortgagees are moving to stay the sale *before* it is consummated, unlike the debtor in *In re CGI Industries, Inc*. If the sales of the Properties are consummated before an appeal, then the Mortgagees' collateral is will be lost. In the event the Mortgagees are successful on their appeal and the sales are not stayed, then this Court will be forced to try to "unscramble an egg," which will likely prove impossible. Therefore, the Mortgagees respectfully request that the sales be stayed pending appeal.

## III. THE MORTGAGEES WILL BE IRREPARABLY HARMED IF THE SALES ARE COMPLETED PENDING APPEAL.

Denial of this Motion will cause irreparable harm to the Mortgagees, in addition to completely depriving them of their appeal rights. The Properties serve as collateral for repayment of the Mortgagees' loans. Meaning, if the borrower fails to pay the loan, then the Mortgagees can recover the collateral as partial satisfaction of the debt by foreclosing on the property and selling it at a later date. *See, Fannie Mae v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 211

6

(N.D. Ill. 1993) (stating the primary purpose of a security interest is to have collateral to secure repayment if the debtor is unable to otherwise pay its debt). Selling the Properties to a third party destroys the Mortgagees' ability to recover the collateral in partial satisfaction of their loans. This right of recovery was a basis of the bargain of the Mortgagees' loans. Once the Properties are sold, the Mortgagees' sole recourse for recovery is to fight over the finite (and potentially diminishing) amount of the sale proceeds.[4] The credit bid does not remedy this harm. As set forth in the Motion to Amend May 2 Order and other Mortgagees' filings, the credit bid procedures amount to an illusory credit bid right. The credit bid procedures require the Mortgagees to submit a credit bid prior to a determination on lien priority and lien amount. The Mortgagees cannot rationally credit bid if they do not know the amount of the lien or whether their lien is first priority. This exposes the Mortgagees to such risk and liability that it results in a chilling of credit bidding.

Additionally, consummation of the sale will result in a forced discounted payoff to the Mortgagees. The purchase price for 6250 S. Mozart is $925,000.[5] As of July 1, 2019, the total amount owed the Mortgagee was $1,461,176.83. Similarly, the purchase price for 1131-41 E. 79th is $1,150,000.[6] As of July 1, 2019, the total amount owed the Mortgagee was $1,319,255.08. The Receiver's list price for the Properties is <u>below</u> fair market value and prior appraised values. *See* Motion to Stay Marketing and Sale of Properties [Dkt. 694]. By improperly marketing and selling

---

[4] The harm to the Mortgagees' is further exacerbated by the fact that the Receiver intends to assert a receiver's lien on the sale proceeds to pay his and his professionals' fees because there is not enough money in the estate to cover these expenses. Seventh Interim Fee Application [Dkt. 755], pp. 18-25; Receiver's Eighth Status Report [Dkt. 757], pp. 22-23.

[5] The Receiver fails to disclose to the Court or the Mortgagees the amount of the net sale proceeds, which is a material term that should be disclosed prior to the Court approving the sales. Based on the limited information provided, the sale proceeds will be at least less than $877,496.00.

[6] The Receiver fails to disclose to the Court or the Mortgagees the amount of the net sale proceeds, which is a material term that should be disclosed prior to the Court approving the sales. Based on the limited information provided, the sale proceeds will be at least less than $1,110,288.00.

the Properties at low list prices, the Receiver has established the floor amount the Mortgagees may recover (i.e., the finite amount of the sale proceeds). Denying this Motion and allowing the sales to proceed will guarantee this inequitable result will occur.

Based on this Court's obligation to apply the "sliding scale" approach, the Mortgagees' believe that deprivation of their appeal rights and the foregoing irreparable harms alone warrant a stay of the sales.

## IV.     THE MORTGAGEES ARE LIKELY TO SUCCEED ON THEIR CLAIM.

The Court has already determined that the Receiver takes the Properties subject to the Mortgagees' preexisting security interests and that the Court cannot extinguish the Mortgagees' preexisting security interests. Memorandum Opinion and Order [Dkt. 352], pp. 9-10. The Mortgagees believe that the Receiver's actions and the Court's denial of the Mortgagees' requests related to the sales of the Properties are contrary to and extinguish their preexisting security interests. The Mortgagees are only required to show that their chances to prevail on their claims is "better than negligible." *Brunswick Corp. v. Jones, Jr.*, 784 F.2d 271, 275 (7th Cir. 1986). Here, the Mortgagees' chances are far better than negligible—there are numerous court orders that state the Receiver takes subject to the Mortgagees' security interests and those interests cannot be extinguished.

Moreover, there is case law from this district that support the Mortgagees' position and shows the Mortgagees' are likely to succeed. In *Pennant*, federal receivers sought to sell certain commercial hospitality properties "free and clear of liens, claims, and encumbrances" with such liens, claims, and encumbrances "attaching to the proceeds of the sale." *Pennant Mgmt., Inc. v. First Farmers Fin.*, LLC, 14-CV-7581, 2015 WL 4511337, at *4-5 (N.D. Ill. July 24, 2015). *Pennant* expressly rejected sales that did not satisfy all secured liens, absent a consensual

agreement by the impacted parties, which does not exist here. The holding of *Pennant* is the exact opposite of what has occurred in Equitybuild. Similarly, in *SEC v. Northridge Holdings, Ltd., et al.*, No. 19-cv-05957 (N.D. Ill.), the Receiver has continued to make debt service payments on loans secured by property held in the estate—something the Equitybuild Receiver has never done since appointment. *SEC v. Northridge Holdings, Ltd., et al.*, No. 19-cv-05957, Receiver's Report for the Period of January 1, 2020 through March 31, 2020 [Dkt. 141], ¶2 (stating "the Receiver has satisfied his duty to manage the Receivership's real property assets [by] timely paying lenders principal and interest (for the properties that have loans associated with them)"). Moreover, in *Northridge*, Fannie Mae, as the secured mortgagee, received a full payoff as a result of the SEC receiver's sale of the borrower's commercial real estate. *SEC v. Northridge Holdings, Ltd., et al.*, No. 19-cv-05957 (N.D. Ill. May 19, 2020), Order [Dkt. 147]. In fact, in confirming the sale of Fannie Mae's collateral, this Court ordered that on the closing of the sale of the mortgagee's collateral property, the "Receiver is authorized *and directed* to pay *all* amounts due under the loan documents to Federal National Mortgage Association…including but not limited to principal, interest, default interest, advances, attorneys' fees, and all other indebtedness and amounts due under the Loan documents." *Id*. (emphasis added.)

Similarly, in *Madison*, the District Court concluded that the SEC receiver may <u>not</u> keep a commercial real estate property hostage in a receivership where the value of the property is less than the loan amount owed to the secured lender. *SEC v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1284 (D. Utah 2009). Instead, the receiver was required to lift the receivership order's stay and allow the lender to foreclose, where the commercial property had no equity for the receivership estate and the lenders' liens exceeded the value of the property. *Id.* at 1277-78. The court denied the receiver's sale motion and lifted the stay to allow the secured lenders to

9

commence foreclosure proceedings. *Id.* at 1278. The court reasoned "While this court may have broad powers to carry out the purpose of the Receivership, the court is disinclined to put the interests of the buyers and the Receivership over the interests of secured creditors." *Id.* at 1277. Moreover, the court held that the receiver must make past due debt service payments and keep the loan payments current for as long as the property is held in the estate. *Id.* at 1284.

## V. ISSUING A STAY WILL NOT HARM THE PUBLIC.

There will be no harm to the public if this Motion is granted. In fact, the public interests in this case favor granting the Motion. The primary concern for the Court in analyzing harm to the public is whether issuing an injunction will disserve or harm the public interest. *Gateway E. Ry., Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1139 n.3 (7th Cir. 1994). Such a concern is not present under these facts. The heart of the issues presented is preservation of a party's security interest. The purpose of granting a security interest is to have collateral to secure repayment if the debtor is unable to otherwise pay its debt. *Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. at 211. Here, the debtors have failed to pay their debts to the Mortgagees. Therefore, the Mortgagees are entitled to recover the collateral (i.e., the Properties) in partial satisfaction of the debt. The Receiver's actions prohibit the Mortgagees from exercising their rights.

Moreover, any alleged harm to the would-be purchasers of the Properties is a red-herring. The Sealed Bid Public Sale of Real Estate Terms and Conditions expressly state that "The closing of the sale shall remain subject to approval of the Receivership Court." *See*, Sixth Sale Motion, Ex. 1. Thus, any agreement between the Receiver and would-be purchasers is a contingent, non-final agreement subject to rejection by this Court. In other words, the would-be purchasers understood there was a risk of this Court delaying or rejecting their sales when they bid on the

Properties. Therefore, any alleged harm is in fact not a real harm and was contemplated and accepted by the would-be purchasers.

## VI. THE REQUIREMENT FOR POSTING A BOND SHOULD BE WAIVED.

The Mortgagees respectfully request that this Court waive the requirement for posting a bond. It is within the district court's discretion to waive the requirement of posting a bond. *Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir.1986). Practically, the bond is required to protect the party whose interest in the Properties may be affected by the appeal in the event the appeal is unsuccessful and the prospective purchasers of the Properties terminates the sales contracts during the appeal period. Here, that party is the Mortgagees. The Mortgagees hold first priority secured interests in the Properties and are entitled to the sale proceeds. In the event the appeal is unsuccessful and the sale is terminated, it is the Mortgagees that would be impacted. Other receivership creditors, including Equitybuild lenders and investors, bear no risk because they will not benefit from the sales in any way. In fact, the Mortgagees and investors are already negatively impacted because the Receiver's seek to sell properties for less than the amount of the Mortgagees' claims. Moreover, the Receiver has not filed any objections to the Mortgagees proofs of claim or filed an avoidance action to invalidate the Mortgagees' liens. Therefore, the posting of a bond is wasteful as it would require the Mortgagees to incur expenses to protect themselves.

**CONCLUSION**

For the foregoing reasons, the Mortgagees' respectfully request that their Motion to Stay Sales Pending Appeal be granted.

11

Dated: October 27, 2020

Respectfully submitted,

/s/ Jill Nicholson
Jill Nicholson (jnicholson@foley.com)
William J. McKenna, Jr. (wmckenna@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 N. Clark St., Ste. 3000
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 644-7528
*Counsel for Fannie Mae; Citibank, N.A., as Trustee for the registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48*

4830-3159-4704.1