UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>    Defendants. | Civil Action No.:  18-CV-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

### VENTUS HOLDINGS, LLC'S MOTION TO STAY ENFORCEMENT OF THE ORDERS ENTERED ON OCTOBER 26, 2020 AND OCTOBER 30, 2020 AND STAY THE SALE OF THE REAL ESTATE IDENTIFIED IN THE ORDERS

Ventus Holdings, LLC ("Ventus"), through its attorney, Michael B. Elman & Associates, Ltd., for its Motion to Stay Enforcement of the Orders Entered on October 26, 2020 and October 30, 2020 and Stay the Sale of the Real Estate Identified in the Orders, states as follows:

### BACKGROUND FACTS

1. The real estate that is the subject of these orders consists of three (3) parcels, (i) 6949-59 South Merrill, (ii) 7600-10 South Kingston and (iii) 7656-58 South Kingston, all in Chicago, Illinois (collectively the "Properties").

2. Originally, the Receiver accepted Ventus' bids to purchase the Properties, as well as a forth property located on Cornell Avenue. On February 21, 2020, the Court confirmed the sale of the property on Merrill and on April 1, 2020, the Court confirmed the sale of the two properties on Kingston and the one on Cornell. On or about April 15, 2020, Ventus was informed by its lender that due to the Covid-19 pandemic financing

1

was no longer available. On or about April 20, 2020, Ventus informed the Receiver that it was unable to proceed with the transactions. On April 24, 2020 the Receiver sent a letter of default in connection with all four properties. On May 8, 2020 the Receiver accepted alternative bids for the Properties. On May 26, 2020 Ventus received a Term Sheet from a lender concerning the Cornell property. On June 1, 2020 the Receiver agreed to reinstate the contract for the sale of Cornell. On June 11, 2020 the Receiver filed an eighth motion to confirm, which sought confirmation of the new bids. One day later, on June 12, Ventus provided the Receiver with a Term Sheet from a lender willing to finance the Properties. On October 26, 2020 the Court entered an Order confirming the sale of the Properties and on October 30, 2020 the Court entered an Order Granting Receiver's Eighth Motion to Confirm the Sale of Certain Real Estate and for Avoidance of Certain Mortgages, Liens, Claims and Encumbrances. Copies of these two orders are attached hereto as Exhibit A.

    3.    Ventus' bid and the confirmed bids are:

        A.    **6949-59 Merrill:**  Ventus' bid was $1,935,200.00 and the Court confirmed the bid of $1,520,000.00. A loss to the Receivership Estate of $415,200.00;

        B.    **7600-10 Kingston:**  Ventus' bid was $1,870,000 and the Court confirmed the bid of $1,530,000.00. A loss to the Receivership Estate of $340,000.00; and

        C.    **7656-58 Kingston:**  Ventus' bid was $510,000.00 and the Court confirmed the bid of $320,000.00. A loss to the Receivership Estate of $190,000.00.

4.     Accordingly, if the Properties are sold pursuant to the orders entered on October 26 and October 30, 2020 the loss to the Receivership Estate would be $945,200.00.

5.     In connection with the reinstated contract for the Cornell property, Ventus' terms of financing were identical to those for the Properties. Yet, the Receiver agreed to reinstate the Cornell contract and subsequently sold this property to Ventus but refused to reinstate the contracts for the Properties under the identical terms.

## ARGUMENT

6.     As the Court stated in its order entered on May 2, 2019, "the Receiver must act with due regard to the realization of the true and proper value of such real property".

7.     In the order entered on October 26, 2020 the Court's decision was based upon the legal principle that setting aside transactions and disrupting the reasonable expectation of bidders impairs public confidence in the sales process that ensues from lack of finality.

8.     In support of this legal principle, the Court referenced two cases, *In re Gil-Bern Indus., Inc.*, 526 F.2d 627 (1st Cir. 1975) and *In re Food Barn Stores, Inc.*, 107 F.3d 558 (8th Cir. 1997).

9.     In, *In re Gil-Bern* the court relied on this principal finding that there was a "slight disparity" between the first bid and the accepted bid - $14,888.00. Significantly, the court recognized that a bid may be set aside where there is a "substantial" disparity. In the facts before this Court, the disparity is $945,200.00, which is certainly substantial.

10.    In, *In re Food Barn Stores*, the court recognized the counter legal principle that the objective of a receiver is to enhance the value of the estate, stating:

3

> As a counterweight, the court must also remain mindful of the ubiquitous desire of the unsecured creditors, and the primary objective of the Code, to enhance the value of the estate at hand (Section 365… advances one of the Code's central purposes, the maximum of the value of the bankruptcy estate for the benefit of creditors. [564-565].

The court also found it significant that the sale had not yet been approved by the court.

11. It is Ventus' position that as between these two competing principles, enhancing the value of the estate should be applied to the facts before this Court. This is not a bankruptcy case where the objective is to reimburse creditors. Here, the Receiver is seeking to enhance the value of an estate for the benefit of numerous, innocent victims of a securities fraud. In such a situation, which is extraordinary, the finality of the bid process should not be as important as reimbursing the victims of fraud.

12. In **Corporate Assets, Inc. v. Paloian**, 368 F.3d 761 (7th Cir., 2004), a bankruptcy proceeding, the plaintiff submitted the winning bid for the purchase of real estate. After the auction was closed a new bid was submitted. The court then ordered the plaintiff to conduct a new auction. The plaintiff submitted a new bid in an amount that was $352,500.00 higher than its earlier bid. The court confirmed the higher bid. The plaintiff appealed, arguing that the court erred in ordering a second auction.

13. The Appellate court affirmed the confirmation of sale. In so doing, it analyzed two competing principles. The governing principle at a confirmation proceeding is to secure the highest price for the estate. But, there is also an interest in the finality and integrity of the process. Significantly, the court held that the trial court has more discretion to reject a bid prior to, rather than after, confirmation because consideration of a late bid would not unduly frustrate the reasonable expectations of the participants or compromise the integrity of the process.

4

14. Significantly, the Court decided not to reinstate the Ventus bids even though the decision was prior to confirmation and the Receiver agreed to reinstate Ventus' bid for the Cornell property <u>after</u> the default.

15. In **JP Morgan Chase Bank v. Fankhauser**, 383 Ill.App.3d 254, 890 N.E.2d 592 (2nd Dist. 2008), the appellate court reversed a confirmation of sale, finding that the sale price was unconscionable. The fair market value of the real estate was $385,000.00 (or $325,000.00) and the sale price was $32,212.40.

16. By granting the eighth motion to confirm, the Receivership Estate lost $945,200.00 and, based on fair market value, accepted unconscionable bids that took advantage of the Covid-19 pandemic.

17. Furthermore, if the Court does not grant the stay, Ventus will be denied its right to appeal because the Property will have been sold rendering the appeal moot.

18. Based upon the doctrine of mootness, Ventus will also be irreparably harmed if the Property is sold prior to the decision of the reviewing court.

19. Because there are two valid but competing legal principles that will be reviewed, Ventus has a meritorious claim that is likely to prevail.

20. Based upon the undersigned's research, the facts of this case are unique and implicate an important legal issue, namely, the balancing of the two legal principles when a receivership estate consists of victims of securities fraud. In addition, the effect of the Covid-19 pandemic to Ventus' transactions is also a unique fact underlying this transaction.

## **VENTUS SEEKS A WAIVER OF THE BOND REQUIREMENT**

21. A District Court has the discretion to waive the bond requirement and may look to the following criteria when making its determination: (i) complexity of the collection process; (ii) the amount of time required to obtain the judgment; (iii) the degree of confidence that funds are available to pay the judgment; (iv) the defendant's ability to pay the judgment rendering the bond requirement a waste of money; and (v) whether a waiver of the bond requirement would put the creditors in an insecure position. *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988).

22. In this proceeding the security is the Property and therefore, the criteria stated above either, does not apply or, should be applied in favor of waiving the bond requirement. The "creditors" (who are the purchasers of the Property) are secured through the Properties by virtue of the orders entered on October 26 and October 30, 2020.

## **CONCLUSION**

Ventus Holdings, LLC respectfully requests that the Court enter an order granting this Motion to Stay Enforcement of the Orders Entered on October 26, 2020 and October 30, 2020 and Stay the Sale of the Real Estate Identified in the Orders, and grant the following relief:

    A. Stay the sale of the Property; an

  B. Waive the requirement to post a bond.

            Respectfully Submitted,

            <u>s/Michael B. Elman</u>
            Attorney for
            Ventus Holdings, LLC

Michael B. Elman & Associates, Ltd.
10 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312)541-0903
melman@mbelmanlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify on November 2, 2020, the undersigned electronically filed Ventus Holdings, LLC's Motion to Stay Enforcement of the Orders Entered on October 26, 2020 and October 30, 2020 and Stay the Sale of the Real Estate Identified in the Orders, via the CM/ECF system and copies thereof were served to counsel of record via the CM/ECF system.

    /s/ Michael B. Elman
Attorney for
Ventus Holdings, LLC


Michael B. Elman & Associates, Ltd.
10 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312)541-0903
melman@mbelmanlaw.com