**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | Civil Action No. 18-cv-5587 |
| **v.** | ) ) | Judge John Z. Lee |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) | Magistrate Judge Young B. Kim |
| **Defendants.** | ) ) ) | |

**RECEIVER'S OPPOSITION**
**TO INSTITUTIONAL LENDERS' MOTION TO STAY**

Michael Rachlis
Jodi Rosen Wine
Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net
jwine@rdaplaw.net

*Attorneys for Kevin B. Duff, Receiver*

The current motion is simply another attempt to interfere with the Receiver's efforts to preserve the assets of the Estate and maximize the funds available for the Cohens' victims and creditors.[1]  Once again, it is premised on presumptions that ignore the complexity of this action, the claims of others, and the procedures that the Court has designed to provide due process to all claimants.  The current motion is, of course, not the first motion to stay that these Institutional Lenders have filed in an effort to upend and delay the efforts of the Receivership.  In July 2019, they sought a stay of all sales, which was rejected by the Magistrate Judge and this Court.  Dkt. No. 447 at 4 ("their request essentially amounts to a request barring the Receiver from proceeding with the sale of all mortgage-encumbered properties").  In March 2020, when the pandemic hit, they filed another motion to stay the marketing and sales of properties (Dkt. No. 668), which was again denied (Dkt. No. 677).  Shortly thereafter, they filed yet another motion to stay (Dkt. No. 694), which the Court again denied (Dkt. No. 704).  Like each of their prior and numerous motions to stay, this one should be denied.

First, and fundamentally, the Institutional Lenders' basis for bringing an appeal as of right under 28 U.S.C. § 1292(a) does not exist.  As discussed below, the Seventh Circuit has

---

[1] Both the purported need and supposed urgency of the instant motion is belied by the record.  Two years ago, the Receiver disclosed his plan to liquidate the properties of the Estate in order to preserve and maximize the sales proceeds available to eventual distribution to the Cohens' victims and creditors.  (Dkt. No. 166)  The Receiver has implemented that plan deliberately and methodically since then, with the Court's approval at each step.  (*E.g.,* Dkt. Nos. 310, 311, 346, 352, 378, 447, 545, 602, 616, 632, 633, 676, 680, 683, 684 & 711)  With respect to the two properties that are the subject of the current motion, the Receiver moved to approve the process for their sale in January 2020 (Dkt. No. 618).  The Court granted that motion on April 1, 2020.  (Dkt. No. 681)  If the Institutional Lenders had a legitimate right of appeal, which they do not, then they could and should have brought this motion long ago.  Underscoring the fact that this is simply a long delayed and untimely motion for reconsideration, after the Court denied their prior motions to stay and allowed the sale of these properties (*e.g.,* Dkt. Nos. 677, 681, 704), they failed to bring the instant motion.  If they had a right to bring an appeal, which they do not, they also waived it by delay.

conclusively stated that appellate jurisdiction does not exist for such an appeal. Because they do not have the right to an appeal, there is no basis for a stay. [2]

Second, the factors that are traditionally examined relative to a stay all strongly favor denial of the request here. The Institutional Lenders must establish that they have strong ability to succeed on the merits. Not only are they very *unlikely* to succeed, but they fail to articulate the alleged errors in an order of the Court that they seek to appeal. Even if they had done so, the logic and standards repeatedly set forth by this Court in its orders addressing the sale of properties in the EquityBuild Estate are consistent with its authority and discretion in handling a federal equity receivership and overseeing the disposition of its assets. Moreover, as this Court has repeatedly noted and the Receiver has consistently recommended, the proceeds from the sales of these properties will be held in separate accounts, subject to all liens against the properties, pending determination who has legitimate and priority interests in those proceeds. In short, there is no

---

[2] The Institutional Lenders also have filed a motion to certify certain questions for appeal pursuant to 28 U.S.C. § 1292(b). (Dkt. Nos. 833, 834) The Receiver opposes the certification motion, which improperly and unnecessarily invites piecemeal litigation that will engender unnecessary and harmful further costs and delay. There is no good basis either for the motion or the questions raised. "Section 1292 is used sparingly by courts, and used only in exceptional cases." *Baranski v. Serhant,* 602 F. Supp. 33, 36 (N.D. Ill. 1985) (denying motion for certification of questions under 1292(b)) (citing *Vaughn v. Regents of the University of California,* 504 F. Supp. 1349, 1355 (D.C. Cal. 1981)); *see, e.g., In Re City of Memphis,* 293 F.3d 345, 350 (6th Cir. 2002) (to same effect).

To meet the statutory requirement, the following must be established: (1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). None of these factors are met. There are not controlling questions of law, but instead complex questions driven by factual circumstances, many of which interweave with legal issues and also involve discretionary decisions from the District Court. Further, there is no substantial ground for difference opinion regarding the District Court's decisions, circumstances which are not altered even when a litigious and delay driven litigant has the financial resources to file innumerable objections to nearly every decision. Finally, such appeal will not materially advance the ultimate termination of the case, but will instead further contribute to the delays that these same litigants have created, also at a time when the Court and stakeholders are embarking on the claims resolution process. While the Receiver believes that a Section 1292(b) motion should be denied without briefing, if the Court believes that additional briefing will be helpful, such a brief can be submitted along a time frame that the Court deems appropriate.

irreparable harm from denying the current motion, as the sale proceeds will be placed in a separate account subject to the alleged security interests and claims of these Institutional Lenders.

Tellingly, the Institutional Investors do not even address the harm to other litigants and stakeholders from any process that disregards the rights of other claimants. Their unrelenting efforts to effectively steamroll the Receiver and the other stakeholders are simply a thinly veiled effort to quash any other claimants' rights to due process. Even if these objectors ultimately are determined, pursuant to a fair and legitimate process, to have a right to the sales proceeds, it is in their interests along with the interests of all stakeholders to have those rights determined by a process that is fair and equitable.

As the Court is well aware from the constant flow of motions and objections from the Institutional Lenders, it is imperative that these sales proceed as quickly as possible particularly as the pandemic continues and is currently worsening (which places strains on tenants' ability to pay rent and the accompanying negative impact, risk, and uncertainty with respect to property values) and to avoid the risk of casualty events such as fires, vandalism, and other injuries. Further, there are much greater carrying expenses due to winter and the heating season at a time that the pandemic and economic downturn for tenants in this market is limiting and impacting property revenues. Further, there is a legitimate risk that the Receivership may be unable to obtain renewal insurance if these properties are held into the second quarter of next year given past experience and the various risk profiles. All stakeholders have a significant interest in an efficient receivership and court system, all of which has been and will continue to be impacted through further delay. In this way, and others, a stay of property sales harms the public interest, which includes the other claimants, the Receivership Estate, and the Court.

## I.     There Is No Appeal As Of Right For Which A Stay Is Appropriate.

The Institutional Lenders argue that they can appeal this Court's order approving sales

because it is an order associated with the wind up of the Receivership:

> By overruling the Mortgagees' Objection and granting the Ninth Sale
> Motion, the Court has wrongfully refused to take the steps necessary to
> accomplish the "wind up" of this estate. In other words, the order granting
> the Ninth Sale Motion and denying the Mortgagees' Objection is a "refusing
> order[]" to take steps to accomplish the purpose of the wind up of the estate.
> 28 U.S.C. §1292(a)(2).

(Motion at 3)

Indeed, the Institutional Lenders argue that the Seventh Circuit decision in *U.S. v. Antiques*

*Ltd. P'ship,* 760 F.3d 668 (7th Cir. 2014) supports their interpretation stating as follows:

> In *Antiques*, a receiver was appointed as part of the post-judgment tax
> collections proceedings to assist the United States in recovering on tax liens.
> The court found that three types of orders are appealable under 1292(a)(2):
> (i) orders appointing a receiver, (ii) orders refusing to wind up a
> receivership, and (iii) orders refusing to take steps to accomplish the
> purposes for winding up a receivership. *Antiques*, 760 F.3d at 672. **Here,
> the Order approving the Ninth Sale Motion is an appealable order
> under the third category.**

(Motion at 4) (emphasis supplied)[3]

However, and directly contrary to the position advanced by the Institutional Lenders, the

Seventh Circuit stated the exact opposite in its *Antiques* decision:

> But the fourth appeal in this case—the one challenging the district court's
> approval of property sales by the receiver—was from an interlocutory order
> in the postjudgment collection proceeding and thus is not within our
> jurisdiction. This is so even though, as we said, an interlocutory order

---

[3] Notably, Section 1292(a)(2) provides jurisdiction from interlocutory orders appointing receivers. If the movants had a legitimate basis for appealing this Court's creation of and maintenance of a receivership in this action, they could and should have sought such an appeal long ago. They have had, in fact, over two years and yet have failed to do so. (*See* Dkt. No. 16, issued August 17, 2018). Furthermore, rather than appeal an order "refusing to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property," which Section 1292(a)(2) permits, the current motion to stay contravenes the express purpose of Section 1292(a)(2) by seeking to stop the Court's orders directing the sales of the properties at issue.

> appointing a receiver is appealable, as is an interlocutory order "refusing to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. § 1292(a)(2). Parties in other cases have argued that this additional statutory language authorizes appeals from orders en route to winding up the receivership, which could include the sale order in the collection phase of this case. But that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals. We therefore agree with the courts that have held that appellate jurisdiction over interlocutory orders involving receivers is limited to the three types of order specified in section 1292(a)(2): orders appointing a receiver, orders refusing to wind up a receivership, and orders refusing to take steps to accomplish the purposes for winding up a receivership.

*Antiques,* 760 F.3d at 671-72.

The Seventh Circuit further recognized that numerous other appellate courts agree, including the First, Second, Third, and Ninth Circuits. *Id.* (citing *Commodity Futures Trading Comm'n v. Walsh,* 618 F.3d 218, 225 n.3 (2d Cir. 2010); *Plata v. Schwarzenegger,* 603 F.3d 1088, 1099 (9th Cir. 2010); *SEC v. Black,* 163 F.3d 188, 194-95 (3d Cir. 1998); *State Street Bank & Trust Co. v. Brockrim, Inc.,* 87 F.3d 1487, 1490-91 (1st Cir. 1996)).  No circuit (other than the one citation to the 2010 Fifth Circuit decision which predates the Seventh Circuit's decision) is different, and that Fifth Circuit decision is precisely the type of decision that the Seventh Circuit rejects because it "strain[s] the statutory language and make anything the receiver did appealable immediately." *Antiques*, 760 F.3d at 672.

Indeed, the Seventh Circuit employs its logic and law by looking at the relevant language of Section 1292(a) and concluding that it was reasonable for Congress to grant a right of immediate review where there is a failure to take certain actions, but not burden the appellate court with ongoing supervision of every action a receiver might take.  Courts have noted that "the narrow interpretation of the statute ..., restricting it to orders refusing to direct actions, makes good sense,"

*SEC v. Am. Principals Holdings, Inc.,* 817 F.2d 1349, 1350 (9th Cir. 1987), and is precisely why the Seventh Circuit and others all reject the Institutional Lenders' position.[4]

If this were not enough, the Institutional Lenders' citation and reliance upon *SEC v. Janvey*, 404 F. App'x 912 (5th Cir. 2010) is largely frivolous. The decision itself expressly provides that it is nonprecedential: "Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published **and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.**" *Id.* at 916 (emphasis added). That is not surprising. In that case, a motion to dismiss was filed which pointed out that prior precedent was simply wrong in its interpretation of Section 1292(a). The appellate court provides no analysis of the issue, other than noting that the panel was unable to overrule prior precedent because it "is well-established that a panel does not have the authority to overrule a previous panel's decision absent an intervening, contrary, or superseding decision by this court, sitting en banc, or by the Supreme Court." *Id.* at 914. But by making it clear that such decision was not to be used as precedent, the appellate court well recognized the lack of substance in its decision. Ultimately, the motion to dismiss the appeal in that case was granted anyway for lack of constitutional jurisdiction based on mootness. Put differently, not only is this opinion not binding on the Seventh Circuit, it is bereft of analysis, is not even precedential in the Fifth Circuit from which the decision emanates, and it should be disregarded by this Court.

## II. A Stay Is Otherwise Unsupported And Inappropriate.

As noted earlier, the Institutional Lenders have previously demanded a stay of sales and marketing numerous times within a larger stratagem of driving up delay and costs in an apparent effort to achieve their desired outcomes through attrition. Those efforts have been repeatedly

---

[4] The Receiver anticipates filing a motion to dismiss the appeal as soon as practicable.

rejected by this Court, and there is simply no articulated or actual basis why the Court should do anything different facing the same request with this motion.

### A.     There Is No Irreparable Harm.

The Institutional Lenders suggest that they will suffer irreparable harm if the properties are sold, arguing that "[s]elling the Properties to a third party destroys the [Institutional Lenders] ability to recover the collateral in partial satisfaction of their loans." (Motion at 7). That is false. The "collateral" is being sold and deposited in separate account, with those alleged secured interests attached to those proceeds, and no use of those funds being allowed without a further Court order. If it is subsequently established, after all asserted stakeholders receive due process, that these Institutional Lenders have priority and a right to receive the funds, then they obtain a distribution of the collateral associated with these specific properties from the accounts set up to hold the proceeds from the sales of those properties. Put differently, the establishment of the separate accounts to address the finite dollar claims of the Institutional Lenders is the antithesis of irreparable harm.[5]

Any claim of irreparable harm is further belied by the fact that these lenders had the right to credit bid, but refused to do so. They not only declined to credit bid but made no attempt for these properties. The Institutional Lenders retort to that failure is that the credit bid rights are illusory, revoicing the same argument that has been made before, and one that has been continually

---

[5] This also largely addresses the mootness argument that the Institutional Lenders advance. The fact is that a remedy here exists for the Institutional Lenders, namely through the monies that will be placed in the separate accounts that will hold the proceeds from the sale of the collateral. Moreover, mootness issues are further undermined by the fact that these same objectors have argued previously and frequently that a stay is necessary, had those requests repeatedly denied, and sales completed with no such arguments of alleged irreparable harm. That is a significant inconsistency that further undermines the request here.

rejected by the Court. For example, the Institutional Lenders argue here that: "The credit bid procedures require the Mortgagees to submit a credit bid prior to a determination on lien priority and lien amount. The Mortgagees cannot rationally credit bid if they do not know the amount of the lien or whether their lien is first priority. This exposes the Mortgagees to such risk and liability that it results in a chilling of credit bidding." (Motion at 7)

But this exact argument was made and rejected fifteen months ago in virtually the same procedural context, with the Institutional Lenders arguing that a stay was necessary and essential, as Magistrate Judge Kim recognized:

> The Lenders never argued that in order to credit bid, they would first require the court to enter final judgment amounts and lien priority determinations. The Lenders now argue that without final judgment amounts and priority determinations a right to credit bid is merely "illusory." But if the right to credit bid is illusory, that situation is attributable solely to the Lenders. Even if the Lenders had argued that their right to credit bid required final determinations as to judgment amounts and lien priority, this court would have overruled their objections. The court has already denied the Lenders' request to stop the claims process and decide the Lenders' priority. (See R. 444, April 23, 2019 Tr. at 7-14 (finding that "it makes sense . . . to deal with . . . claims in an orderly fashion" through "an orderly claims process," and rejecting lenders' request for an immediate, first-lien priority determination).) Thus, the law of the case would have precluded this court from issuing a decision that conflicted with this prior ruling. Even though the Lenders now try to distinguish the prior ruling by applying it only to the claims process and not to credit-bidding procedures, this court deems such a distinction to be one without a difference given the nature of the relief they seek.

(Dkt. No. 447 at 4-5)

This Court affirmed this determination, noting also that such issues had been waived by the Institutional Lenders and further affirmed the substance of the Magistrate Judge's rulings. (Dkt. No. 540 at 8) None of this supports the Institutional Lenders' irreparable harm arguments.

**B.    The Institutional Lenders Are Not Likely To Succeed On The Merits.**

Continuing to advance dubious and/or rejected arguments, the Institutional Lenders advance an inaccurate position regarding their burden to establish the likelihood of success on the merits that that they really have no burden to meet, just a little something – "better than negligible." (Motion at 9)  In fact, the Seventh Circuit has explained that while the "negligible" standard may be what is considered on a motion for preliminary injunction, that is not what is required here.  In fact, the burden sits squarely on the movants to show much more:

> **However, in the context of a stay pending appeal**, where the applicant's arguments have already been evaluated on the success scale, **the applicant must make a stronger threshold showing of likelihood of success to meet his burden**. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991) (concluding that a stay movant must raise "serious questions going to the merits") (citation omitted); *see also Adams v. Walker,* 488 F.2d 1064, 1065 (7th Cir.1973) (**requiring a stay movant to make a "strong" and "substantial" showing of likelihood of success on the appeal**) . . .

*See Matter of Forty-Eight Insulations, Inc.,* 115 F.3d 1294, 1301 (7th Cir. 1997) (emphasis supplied); *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987) (movant must make a "strong" showing that they are likely to succeed on the merits).

That all said, whether the burden is the accurate one or the one advanced by the Institutional Lenders, they meet neither standard.

As a threshold matter, the Institutional Lenders motion is void of specifics as to exactly what they are likely to succeed upon relative to this Court's order approving sale.  (*See* Motion at 8-9)  They do not provide any specific citation to the Court's opinion upon which they claim they are likely to succeed.  Instead, they bootstrap to the "negligible" standard a conclusory statement that they "believe that the Receiver's actions and the Court's denial of the [Institutional Lenders] requests related to the sales of the Properties are contrary to and extinguish their preexisting

security interests." (Motion at 8) However, none of that is accurate, including but not limited to the fact that contrary to the "extinguishment" of such interests, the Receiver has requested and the Court has ordered that such interests attach (if they exist) to the proceeds to be held in the separate accounts for the properties.[6]

Moreover, the argument that the Institutional Lenders are likely to succeed on merits does not meet even the false threshold it advances when, as noted, the arguments that have been made here have been repeatedly raised and repeatedly rejected both by the Magistrate Judge and the District Court. As this Court noted in the order that is now being appealed:

> Most of the arguments by the two objecting Lenders, Citibank and Fannie Mae, were previously rejected by the Court. For instance, in the face of nearly identical challenges, the Court already approved the Receiver's credit bidding procedures, Oct. 4, 2019 Order at 4–6, ECF No. 540; approved the sales of properties for prices amounting to less than the mortgages securing them, Mar. 31, 2020 Order at 7, ECF No. 676; approved the sales of properties free and clear of any liens or encumbrances provided that those liens attach to the ultimate sales proceeds of the properties, Dec. 12, 2019 Minute Entry, ECF No. 601; and permitted the Receiver's property managers to bid for properties, Oct. 4, 2019 Order at 4–5.
>
> The Court also has ruled that an orderly claims process is the most efficient and equitable method to resolve competing claims of investors and institutional lenders, id. at 5; Mar. 31, 2020 Order at 6; and that a claims process is appropriate even for properties where a Lender has a recorded mortgage but the investors do not. Id. at 6 n.2 ("Though there are no competing mortgages for four of the properties at issue . . . the Court is persuaded that, with respect to these properties, 'other issues remain to be resolved during the initiated claims resolution process, including without limitation the alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien on a portion of the proceeds, if warranted.'" (citation omitted)). The objectors have raised nothing that would change this conclusion.

---

[6] Nor is it accurate that the Receiver failed to disclose information to them regarding anticipated net proceeds from the sales of these properties. (Motion at 7 nn. 5-6) That is misleading, as these lenders both received the estimated closing costs in connection with notice of the highest bid and relative to potential credit bidding.

10

Dkt. No. 825 at 4-5

The Institutional Lenders' other arguments that were also raised and rejected by this Court had no factual or legal authority cited. (*Id.* at 5) Nor did the Institutional Lenders seek to appeal any of those prior orders.

The Institutional Lenders suggest that this Court has acted in a fashion contrary to the district court decision in *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, 2015 WL 4511337 (N.D. Ill. July 24, 2015). That is inaccurate – the district court in *Pennant* in fact affirmed that the Receiver has the authority to request that the Court approve the sale of properties free and clear of all interests, with rights of lienholders transferred to the proceeds. The Institutional Lenders citation to another matter pending before the Court (*SEC v. Northridge Holdings, Ltd.*) where debt service was paid is meaningless given the different factual circumstances at play here, and has no weight or remotely supports that an appellate court would disagree with the rulings of this Court and the Magistrate Judge. Indeed, in this posture, there is neither "negligible" support – and far from strong support – for their argument on the likelihood of success. *See generally SEC v. Wealth Management,* 628 F.3d 323 (7th Cir. 2010)(noting that motions to stay denied by both district and appellate court); *Chao v. Current Dev. Corp.,* 2008 WL 4681976 at * 4 (N.D. Ill. May 2, 2008) (denying a motion to stay; recognizing that the consideration is one that involves the question of whether there is possibility that an appellate court could disagree with the ruling, and noting that: "[a]s the Court indicated during the March 13, 2008 hearing, 'I think my rulings were correct, or I wouldn't have made them' (03/13/08 Tr. at 16). That observation is in accord with observations made by other judges when faced with a motion to stay an order pending appeal. *See, e.g., Thomas v. City of Evanston,* 636 F. Supp. 587, 590 (N.D. Ill.1986) ("[h]ad we thought an appeal would be successful, we would not have ruled as we did in the first place")").

### C.     A Stay Creates Significant Harm To Others and the Public.

In typically myopic fashion, the Institutional Lenders do not even address the factor regarding harm to other litigants (*see Matter of Forty-Eight Insulations,* 115 F.3d at 1301 (factor examined regarding stay includes **"whether a stay would substantially harm other parties in the litigation"**)) (emphasis added) and simply proclaim that there is no public harm.  (Motion at 10)  That argument is remarkable and remarkably wrong.

The harm to other claimants is significant.  There are other claimants who have claims associated with the properties at issue that will be subject to the claim resolution process who do not want further delays or increased costs associated with such motions.  Further, these stakeholders have every interest in having the claims process proceed without further delay and interference which this latest litigation tactic has created.  This delay also has a compound effect because it is on top of the aggressive litigation tactics that have created significant and additional delays and costs that have been imposed on all stakeholders, the Receivership Estate and the Court.  Moreover, all stakeholders are impacted because the greater amount of costs associated with the Institutional Lenders' delay stratagem impacts what will ultimately be available for distribution.  The Court heard during the October 27, 2020 hearing many investor lender claimants reflect precisely on the impacts of the delays and how the process has been hijacked by the Institutional Lenders whose delay driven tactics monopolize the time the of the Court and the Receivership on this matter.

A stay would also lead to the impacted properties being held for many more months, implicating now the winter months and expanding expense significantly for those properties – including extraordinarily high heating costs, additional property management costs, water and utilities, property taxes and the like.  Not only are there greater expenses associated with holding

the properties, there are greater increases in risks of casualty events such as fires, crime, and other casualty events and now – in the midst of a pandemic and economic turmoil – tenants who may have less and less rent to pay effecting the ability to sell the property and its pricing, possibly crippling operations of such properties.[7]  Such events have occurred in this Receivership with properties under contract, with fires damaging properties that were on the verge of being sold, creating havoc and expense.  Avoiding such risks is essential, and the risk of harm is greatly increased by the Institutional Lenders' request.  On a related note, properties that will continue to be held will necessitate insurance, which is extraordinarily expensive and more and more difficult to obtain.  All of these reflect the significant harms to other litigants.

There is a public interest implicated here as well, at a minimum to ensure that the court system continues to be efficient and to work towards the effort in not delaying the proceedings further that impact the resolution of claims and increase expense of the process.  *See, e.g., In re Sharif,* 446 B.R. 870 (N.D. Ill. Bankr. 2011) ("The public interest lies in maintaining a transparent, efficient bankruptcy system. Delaying the disposition of the assets that Bankruptcy Trustee Horace Fox, Jr. has on hand while a nonparty to the underlying matter pursues a separate lawsuit, is not in the public's interest.").

If this were not enough, and contrary to the Institutional Lenders' argument, the public harm is also implicated by the fact that there are parties to the purchase and sales contracts that the Court has approved.  Neither delaying those sales nor promoting the possibility of additional litigation over them serves the interests of the public, the claimants, the Receivership Estate, or the Court.

These factors all strongly weigh against the Institutional Lenders motion.

---

[7] Indeed, that is precisely why the real estate professionals working and advising the Receiver have and continue to advise that the properties be sold as quickly as possible so that such exigencies can be averted.  (*See, e.g.*, Dkt. No. 699, Baasch Decl., ¶ 10)

### D.  While A Stay Is Unwarranted, A Bond Is Essential.

While the Court has discretion to not impose a bond, there is absolutely no reasonable basis for a waiver of a bond here.  The sole rationale provided is that it will cost these Institutional Lenders money and it is only there to protect themselves (Motion at 9).  No affidavits or other information are set forth regarding the financial position or anything for that matter associated with the Institutional Lenders that would support a waiver.

That a bond involves some expense is not a basis for waiving a bond here including under the one and only case cited by the Institutional Lenders:

> The philosophy underlying Rule 62(d) is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed. Posting a supersedeas bond is the simplest way of tendering this guaranty but in appropriate cases alternative forms of security are allowed, especially when (as in *Olympia*) the requirement of obtaining a bond might imperil other creditors of the defendant. That is not a factor in this case. The only factor is the cost of the bond. The cost is usually one percent of the amount of the bond, and so in this case would be $7,000. This is a modest amount.

*Lightfoot v. Walker*, 797 F.2d 505, 506-507 (7th Cir. 1986).

As to their insistence that a bond would only protect their own interests, the Institutional Lenders ignore that (i) there are a host of other interested stakeholders that are indeed directly impacted and that includes others who maintain claims in the property as well as unsecured creditors who may be impacted, as well as the Receivership estate who, for example, would have possible exposure from the buyer whose offer of purchase has been approved by Court, and (ii) the claims resolution process has not occurred where the issues of priority, validity, and the amounts claimed are yet to be determined, and will also impact those amounts.  Moreover, these Institutional Lenders had the ability to protect their alleged interests through a credit bid, but they failed to do so.  Just in the same way the Magistrate Judge Kim noted that a letter of credit would

be needed to protect the interests of other claimants, the Receiver, and the Receivership Assets, a bond would be needed here for the same reasons. (*See, e.g.,* Dkt. No. 352, at 7-8)

A stay is not appropriate or warranted, but if the Court were to decide to issue a stay, a bond is required and absolutely appropriate, and that should be in an amount of at least 110% of the purchase price of both properties (the additional amount to protect against the additional expenses that are necessitated by the aggressive and non-stop litigation tactics of the Institutional Lenders, and to mitigate against all of the risks and costs associated with a later sale).

## CONCLUSION

For the reasons set forth herein, and for all the reasons previously argued and relied upon by the Court in denying the numerous other requests by the Institutional Lenders for a stay, the motion to stay by the Institutional Lenders pending appeal should be denied. The Receiver also respectfully requests the proposed order regarding 6250 S. Mozart and 1131-41 E. 79th that was submitted to the Court pursuant to its order approving these sales be immediately entered.

Dated:  November 4, 2020                    Kevin B. Duff, Receiver

                                       By:    /s/ Michael Rachlis
                                              Michael Rachlis
                                              Jodi Rosen Wine
                                              Rachlis Duff & Peel LLC
                                              542 South Dearborn Street, Suite 900
                                              Chicago, IL 60605
                                              Phone (312) 733-3950; Fax (312) 733-3952
                                              mrachlis@rdaplaw.net
                                              jwine@rdaplaw.net

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 4, 2020, I electronically filed the foregoing **Receiver's Opposition to Institutional Lenders' Motion to Stay** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

I further certify that I caused a true and correct copy of the foregoing **Opposition**, to be served upon the following individuals or entities by electronic mail:

- Defendant Jerome Cohen (jerryc@reagan.com);

- All known EquityBuild investors; and

- All known individuals or entities that submitted a proof of claim in this action (sent to the e-mail address each claimant provided on the claim form).

I further certify that the **Opposition** will be posted to the Receivership webpage at:

http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax     (312) 733-3952
mrachlis@rdaplaw.net