UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>    Defendants. | Civil Action No.: 18-CV-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

**VENTUS HOLDINGS, LLC'S AND VENTUS MERRILL, LLC'S COMBINED MOTION FOR RETURN OF THEIR EARNEST MONEY DEPOSITS**

Ventus Holdings, LLC and Ventus Merrill, LLC (collectively "Ventus"), through their attorney, Michael B. Elman & Associates, Ltd., as their Combined Motion for Return of Their Earnest Money Deposits, state as follows:

**BACKGROUND FACTS**

1. The real estate that is the subject of this motion consists of three (3) parcels, (i) 6949-59 South Merrill (purchaser is Ventus Merrill), (ii) 7600-10 South Kingston (purchaser is Ventus Holdings); and (iii) 7656-58 South Kingston (purchaser is Ventus Holdings), all in Chicago, Illinois (collectively the "Properties").

2. Originally, the Receiver accepted Ventus' bids to purchase the Properties, contracts were executed and Ventus tendered earnest money deposits as follows:

    A.  **6949-59 Merrill:** $193,520.00

    B.  **7600-10 Kingston:** $187,000.00

    C.  **7656-58 Kingston:** $51,000.00

1

3.    The Receiver and Ventus also entered into a contract for a forth property located on Cornell Avenue. The Court subsequently confirmed the sale of the Properties as well as the Cornell property. On or about April 15, 2020, Ventus was informed by its lender that due to the Covid-19 pandemic financing was no longer available. On or about April 20, 2020, Ventus informed the Receiver that it was unable to proceed with the transactions. On April 24, 2020 the Receiver sent a letter of default in connection with all four properties. On May 8, 2020 the Receiver accepted alternate bids for the Properties. On May 26, 2020 Ventus received a Term Sheet from a lender willing to finance the Cornell property. On June 1, 2020 the Receiver agreed to reinstate the contract for the sale of Cornell. On June 11, 2020 the Receiver filed an eighth motion to confirm, which sought confirmation of the new bids. One day later, on June 12, Ventus provided the Receiver with a Term Sheet from a lender willing to finance the Properties. On October 26, 2020 the Court entered an Order confirming the sale of the Properties and granting leave to Ventus Holdings to file this motion (on November 5, 2020 Ventus Merrill, LLC filed a motion seeking to intervene).

4.    In connection with the reinstated contract for the Cornell property, Ventus' terms of financing were identical to those for the Properties. Yet, the Receiver agreed to reinstate the Cornell contract and subsequently sold this property to Ventus but refused to reinstate the contracts for the Properties under the identical terms.

## **ARGUMENT**

5.    In the Receiver's reply to Ventus's objection to the eighth motion to confirm sale, the Receiver asserted that Ventus's earnest money deposits should be treated as part of the proceeds of sale. Yet, the Receiver elected not to seek a ruling on the issue

2

either prior to, or at the same time as, confirmation of the sales. Accordingly, the Receiver assumed the risk that Ventus's earnest money deposits would not be included as proceeds of sale.

6. The sole reason Ventus was unable to secure financing was due to the Covid-19 pandemic. Attached hereto as Exhibit "A" is the letter received by Ventus from its lender. It states:

> Please be assured this is not due to our assessment of you as borrowers, but is a direct response to the Covid-19 pandemic. Having reviewed your financial statements and portfolio performance as well as the financials, appraisals and rent collections of the subject properties, we were very confident these would be approved by our loan committee.

Prior to these transactions, Ventus had never been declined financing (attached hereto as Exhibit "B" is the Affidavit of Zachary Elman, which was originally filed on July 17, 2020 as an exhibit to Ventus's reply to the Receiver's eighth motion to confirmation sale.

7. Moreover, although the Receiver refused to reinstate the contracts for the Properties, the Receiver agreed to reinstate the contract for the Cornell property. Ventus secured its financing and purchased the property. In short, there was absolutely no need for the Receiver to accept the alternate bids and put Ventus's earnest money at risk. The Receiver had the discretion to either, wait for Ventus to secure alternative financing like it did in connection with the Cornell property or, precisely because Ventus secured financing for the Cornell property, cancel the new bids and allow Ventus to purchase the Properties.

A. **Doctrine of Commercial Frustration**

8. Illinois has long recognized the doctrine of commercial frustration. *Leonard v. Autocar Sales & Service Co.*, 392 Ill. 182, 64 N.E. 477 (Ill. S.Ct. 1946).

9. The doctrine of commercial frustration is applicable to the facts and circumstances in this proceeding. The doctrine has two conditions, that (i) the frustrating event was not reasonably foreseeable; and (ii) the value of performance has been

3

totally or nearly totally destroyed by the event. *United States of America v. Southwestern Electric Cooperative, Inc.*, 869 F.2d 310 (7th Cir. 1989).

10. In *Smith v. Roberts*, 54 Ill. App.3d 910, 370 N.E.2d 271 (4th Dist. 1977) a landlord and tenant entered into a lease for a property adjoining another property then currently leased by the parties. One of the properties was destroyed by fire. The lease for the destroyed premises did not contain a provision excusing performance in the event of destruction. The tenant claimed that the lease for the property that was not destroyed should be terminated due to commercial frustration. In ruling in favor of the plaintiff, the court recognized that although the fire to one of the premises, but not the other, was foreseeable, it was also remote. Moreover, the count found that although it was possible to operate one business without the other, operations would have to be drastically changed. The operation of both businesses was an implied condition of the lease.

11. In *Scottsdale Ltd. Partnership v. Plitt Theatres, Inc.*, 1999 WL 281085 (N.D. Ill. 1999) the defendant asserted the defense of commercial frustration due to a change in zoning. The plaintiff filed a motion to strike the defense. The court denied the motion holding that there were disputed issues of fact.

12. There can be no argument that the Covid-19 pandemic was unforeseeable and that the value of performance was nearly, if not totally, destroyed by the pandemic.

13. Alternatively, the doctrine of commercial frustration can **temporarily** suspend performance. The Restatement (Second) of Contracts, Sec. 269 (1981) provides:

> Impracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists but does not discharge his duty or prevent it from arising unless his performance after the cessation of the impracticability or frustration would be materially more burdensome than had there been no impracticability or frustration.

14. In *Commonwealth Edison Company v. Allied-General Nuclear Services*, 731 F. Supp. 850 (N.D. Ill. 1990) the court recognized that commercial frustration may be temporary, and in such cases the obligor has a duty of "continuing diligence" to remove

4

the obstacle to performance. The court stated by way of example, an obligation to attempt to obtain a variance from a zoning ordinance. The duty is to make a bona fide effort to avoid the excusing condition.

15. In *Raw Material, Inc. v. Manfred Forberich GMBH & Co.*, 2004 WL 1535839 (N.D. Ill. 2004) the court denied a plaintiff's motion for summary judgment, holding that the foreseeability of an event triggering the defense of force majeure, is a question of fact to be determined by the finder of fact. See also, *Semrow v. Harmswood Stables North, Inc.*, 100 Ill. App.3d 219, 426, N.E.2d 988 (1st Dist. 1981) where, on the issue of foreseeability, a jury found that an extraordinary snowfall was unforeseeable and therefore, the promisor was excused from performance.

16. The undisputed facts before this Court are, not only did Ventus make a bona fide effort to avoid the excusing condition, but actually succeeded in that it obtained financing for the Cornell property and two weeks later, received a Term Sheet from the same lender under the same terms for the Properties. The Receiver may assert that he should not have to wait an indefinite period of time for Ventus to obtain alternative financing. While this may certainly be true, the Receiver elected not to wait and instead accept alternate bids, Therefore, the Receiver should be obligated to return the earnest money.

17. Although admittedly this doctrine should be applied sparingly, the Covid-19 pandemic is the type of event that is so extraordinary that the doctrine should apply. Especially considering that Ventus had the wherewithal to cure the default. There can be no doubt the pandemic was unforeseeable and temporarily froze the loan market.

B. **The Law Abhors a Forfeiture**

18. The law abhors a forfeiture. *Looney v. Farmers Home Administration*, 790 F.2d 310 (7th Cir. 1986). A forfeiture will not be enforced if an injustice will result therefrom. *Johnson v. PS Illinois Trust*, 2005 WL 2035589 (N.D. Dist. Ill. 2005).

19. Requiring Ventus to forfeit $431,520.00 under all of the facts and circumstances here would clearly be unjust.

20. Not only does the law abhor a forfeiture and such a provision will not be enforced, but a penalty will not be enforced either. *Raffel v. Medallion Kitchens of Minnesota*, 139 F.3d 1142 (7th Cir. 1998). The court in *Raffel* also stated that forfeitures

5

and penalties are disfavored under Illinois law and will be resolved in favor of classification as a penalty.

C. **The Earnest Money Forfeiture Provision is an Unenforceable Penalty**

21. In *ScavengerSale Investors L.P. v. Bryant*, 2001 WL 709441 (N.D. Dist. Ill. 2001) the court held;

> …a clause is a liquidated damages provision and not a penalty if (1) the actual damages are difficult to measure at the time the contract was made; and (2) the specific amount of damages is reasonable in light of the anticipated or actual loss caused by the breach.

22. The Receiver has not established that the estate incurred "liquidated damages" of $431,520.00. The Receiver could have waited a short time so that lenders could sort through the pandemic. Although the Receiver elected to do so regarding the Cornell property, inexplicably the Receiver elected not to do so in connection with the Properties. Clearly and in light of the facts and circumstances here, forfeiture of this amount is an unenforceable penalty.

## **CONCLUSION**

WHEREFORE, Ventus Holdings, LLC and Ventus Merrill, LLC respectfully request that the Court enter an order granting their Combined Motion for Return of Their Earnest Money Deposits, and grant the following relief:

A. Direct the escrow agent, First Amierican Title Insurance Company, to disburse the earnest money deposits to Ventus Holdings, LLC and Ventus Merrill, LLC respectively; and

B. For such other and further relief as this Court deems fair and equitable.

Respectfully Submitted,

/s/Michael B. Elman
Michael B. Elman
Attorney for
Ventus Holdings, LLC
Ventus Merrill, LLC

Michael B. Elman & Associates, Ltd.
10 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312)541-0903
melman@mbelmanlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify on November 9, 2020, the undersigned electronically filed Ventus Holdings, LLC and Ventus Merrill, LLC's Combined Motion for Return of Their Earnest Money Deposits via the CM/ECF system and copies thereof were served to counsel of record via the CM/ECF system.

    /s/ Michael B. Elman
Attorney for
Ventus Holdings, LLC
Ventus Merrill, LLC

Michael B. Elman & Associates, Ltd.
10 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312)541-0903
melman@mbelmanlaw.com