**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 18-cv-5587** |
| ) | |
| **v.** ) | **Judge John Z. Lee** |
| ) | |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** ) ) ) | **Magistrate Judge Young B. Kim** |
| ) | |
| **Defendants.** ) | |
| ) | |

**RECEIVER'S MEMORANDUM OBJECTING TO**
**JOINT MOTION OF VENTUS HOLDINGS AND VENTUS MERRILL FOR**
**ENTRY OF JUDICIAL ORDER DIRECTING DISBURSEMENT OF**
**EARNEST MONEY HELD IN STRICT JOINT ORDER ESCROW**

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), respectfully files this memorandum in partial objection to Ventus Holdings, LLC's and Ventus Merrill, LLC's Combined Motion For Return Of Their Earnest Money Deposits. (Dkt. 861) Those earnest money deposits revolve around the Ventus' default and termination of contracts for the sale of three properties: (i) 7600-10 South Kingston Avenue; (ii) 7656 South Kingston Avenue; and (iii) 6949-59 South Merrill Avenue.

**Factual Background**

The Receiver has been actively working to preserve, maintain and dispose of the real properties that are part of the Receivership Estate. Those efforts have included the marketing and selling in the Chicago south side multifamily residential real estate market more than 40 properties

during the heart of the ongoing pandemic *without a single financing contingency* and (thus far) without a single default (other than Ventus' actions that are the subject of the matter at bar). (*See* Declaration of Kevin B. Duff, ¶ 7). As further discussed below, both before and after the start of the pandemic, the Receiver sold several properties to the movant Ventus, which sales informed and reflect Ventus' familiarity with the terms and risks associated with the purchase and sale agreement at issue.

For example, on or about July 1, 2019, the Receiver accepted offers from Ventus Holdings, LLC ("Ventus Holdings") to purchase 8047-55 South Manistee Avenue for $975,000 and 7026-42 South Cornell Avenue for $1,110,000. Each of those purchase and sale agreement contained a financing contingency affording Ventus Holdings the right to terminate the contract with a full refund of earnest money if it could not secure a firm written commitment for a mortgage loan in a specified amount within 21 days. (Exhibit A[1], at P010; Exhibit B, at P025) At the purchaser's request, the Receiver agreed to extend the financing contingency deadlines to August 19, 2019 (Exhibit C) and then agreed to extend deadline on 8047-55 South Manistee Avenue again, this time until September 9, 2019 (Exhibit D).

The sale of 7026-42 South Cornell Avenue closed on November 6, 2019. At the closing, Ventus Cornell LLC (as nominee of Ventus Holdings) received credit for an $111,000 earnest money deposit and a $65,000 cash contribution, representing an equity investment of at least $176,000. (Exhibit E) The sale of 8047-55 South Manistee Avenue closed on February 5, 2020. At the closing, Ventus Manistee LLC (as nominee of Ventus Holdings) received credit for a

---

[1] Exhibits A through S that are referenced in this brief are attached to the Duff Declaration. (*See* Duff Declaration, ¶ 6(a)-(s) and attachments thereto)

$97,500 earnest money deposit and a $294,657 cash contribution, representing an equity investment of at least $392,157. (Exhibit F)

Meanwhile, on October 14, 2019, the Receiver accepted an offer from Ventus Holdings to purchase 7600-10 South Kingston for $1,870,000; on October 15, 2019, the Receiver accepted an offer from Ventus Holdings to purchase 7656 South Kingston for $510,000; on October 17, 2019, the Receiver accepted an offer from Ventus Holdings to purchase 7110-16 South Cornell for $1,240,00; and on December 19, 2019, the Receiver accepted an offer from Ventus Merrill, LLC ("Ventus Merrill") to purchase 6949-59 South Merrill Avenue for $1,935,200. (Exhibits G, H, I, and J) The purchase and sale agreements for 7600-10 South Kingston and 7656 South Kingston contained no financing contingency whatsoever. The purchase and sale agreements for 7110-16 South Cornell and 6949-59 South Merrill contained limited financing contingencies pursuant to which Ventus Holdings or Ventus Merrill could terminate the contracts with a full refund of earnest money if it did not obtain a firm written commitment for a mortgage loan in a specified amount within 21 days; when that time expired, so did the financing contingency. Because the purchasers were required to deposit earnest money into strict joint order escrow in an amount equal to ten-percent of the purchase price, Ventus Holdings deposited $187,000 in connection with 7600-10 South Kingston Avenue and $51,000 in connection with 7656 South Kingston Avenue and $124,000 in connection with 7110-16 South Cornell Avenue, and Ventus Merrill deposited $193,520 in connection with 6949-59 South Merrill Avenue.

By letter dated April 20, 2020 – more than six months after the purchase contracts for the properties at issue in this motion were executed and long after the financing contingencies on 6949-59 South Merrill (and 7110-16 South Cornell) expired – Ventus informed counsel for the Receiver that it was unable to secure acquisition financing, that it could no longer raise the required

equity from its investors, and that it "[could not] proceed with the acquisition of [the four] properties." (Exhibit K) It enclosed a copy of the letter it received from its prospective lender, who indicated that it was "unable to provide financing" because the pandemic "introduced much uncertainty regarding rent projections and valuations leading to the [loan] committee's ultimate decision not to proceed." *Id.* Accordingly, Ventus requested the return of its $555,520 in earnest money associated with the four properties discussed above. Ventus observed that it was "quite unfortunate that we could not complete these transactions," but expressed an interest in working with the Receiver again "when circumstances permit." It did not demand rescission.

In light of Ventus' indication that it could not consummate the transactions, counsel for the Receiver issued a default letter (Exhibit L) and the Receiver attempted to secure competitive new offers to purchase the properties. In so doing, the Receiver recognized and relied upon the protections expressly bargained for in the purchase and sale agreements related to the liquidated damages provision as he took the necessary steps to address the damages created by Ventus' actions. With respect to 7600-10 South Kingston Avenue, the Receiver accepted a bid in the amount of $1,530,000; with respect to 7656 South Kingston Avenue, he accepted a bid in the amount of $320,000; and with respect to 6949-59 South Merrill Avenue, he accepted a bid in the amount of $1,520,000. (Exhibits M, N, and O) Thus, the Receiver accepted contracts to sell 7600-10 South Kingston Avenue, 7656 South Kingston Avenue, and 6949-59 South Merrill Avenue for $945,200 less than Ventus Holdings and Ventus Merrill had originally agreed to pay for them.

As for 7110-16 South Cornell Avenue, prior to the Receiver entering any new contract with another buyer, Ventus Holdings communicated to the Receiver that it was able to secure alternative financing for that property. As a result, by letter dated June 1, 2020, the Receiver withdrew his invocation of default with respect to 7110-16 South Cornell, and the parties reinstated the original

purchase and sale contract. (Exhibit P) The sale closed on August 13, 2020, at which time Ventus Cornell 71 LLC (as nominee of Ventus Holdings) received credit for a $124,000 earnest money deposit and a $308,718 cash contribution, representing an equity investment of at least $432,718. (Exhibit Q)

Despite indicating on April 20, 2020 that it could not proceed with the acquisitions of these four properties, Ventus Holdings continued to bid on other receivership properties. On August 18, 2020, the Receiver accepted offers from Ventus Holdings to purchase 4750-52 South Indiana Avenue for $697,000 and 7024-32 South Paxton Avenue for $1,775,000, in each case without a financing contingency. (Exhibits R, S) These properties were subsumed within the Receiver's Tenth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances (Dkt. 809), which remains under advisement.

On June 11, 2020, the Receiver moved to confirm the sales to new purchasers of 7600-10 South Kingston Avenue, 7656 South Kingston Avenue, and 6949-59 South Merrill Avenue. (Dkt. 712) On June 23, 2020, Ventus Holdings moved for leave to intervene and file an objection to the motion to confirm. (Dkt. 721) The Court granted Ventus Holdings leave to intervene by minute order dated June 24, 2020. (Dkt. 723) In its objection (pp. 4, 6), Ventus Holdings asked the Court to set aside the sales of the three properties and reinstate its original contracts with the Receiver or, in the alternative, to grant it leave to file a motion for the return of the earnest money. (Dkt. 721-1) On October 26, 2020 the Court granted the Receiver's motion to confirm the sales and granted Ventus leave to file a motion for the return of its earnest money (Dkt. 825). Subsequently, Ventus appealed that ruling to the Seventh Circuit. Last week the Receiver filed a

motion to dismiss the appeal.[2]  Pursuant to this Court's order, Ventus Holdings and Ventus Merrill also jointly filed their motion for the return of earnest money on November 9, 2020. (Dkt. 861)

The purchase and sale agreements for the three properties now at issue each provides that the Receiver is entitled to retain the earnest money as liquidated damages as his sole and exclusive remedy in the event of a default:

> **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

(Exhibit G, P047-048; Exhibit H, P065-66; Exhibit J, P099-100)  Here, there is no dispute that Ventus defaulted in regards to each of the three properties and stated that it would not be proceeding forward with three purchase contracts, triggering the remedies in this provision.

The disposition of the earnest monies deposited by Ventus Holdings and Ventus Merrill is governed by the terms of the Strict Joint Order Escrow Agreements ("SJO Agreements") that the parties signed contemporaneously with the purchase and sale contracts. The SJO Agreements specify that once the buyer's funds are deposited into strict joint order escrow, they will not be released by escrowee unless and until the parties execute a joint instruction or until a court of competent jurisdiction issues an order directing their disbursement. (Exhibit G, P056; Exhibit H, P074; Exhibit J, P108)

---

[2] A separate part of the October 26, 2020 Order (Dkt. 825) has been appealed to the Seventh Circuit by certain claimants.  Also last week, the Receiver filed a separate motion to dismiss that appeal in the Seventh Circuit.

<u>Argument</u>

I.      **Ventus Defaulted Under The Purchase And Sale Agreements.**

The Receiver concurs with Ventus that this Court should enter an order directing the disposition of the escrowed earnest monies, but because Ventus Holdings and Ventus Merrill defaulted under the purchase and sale agreements, such direction should state that the earnest money be disbursed to the Receiver for deposit into the corresponding segregated property accounts.

A.      **Ventus Has Failed To Establish That The COVID-19 Epidemic Constituted A Force Majeure That Rendered Performance Impossible.**

This Court can take judicial notice that on January 27, 2020 the United States Secretary of Health and Human Services declared COVID-19 a public health emergency; that on January 30, 2020 the World Health Organization declared COVID-19 a Public Health Emergency of International Concern; that on January 31, 2020, President Trump began imposing travel restrictions; that on March 9, 2020, Governor Pritzker declared COVID-19 a public health emergency, and then on March 20, 2020 issued a stay-at-home order for all non-essential Illinois workers; that the COVID-19 epidemic remained in the public consciousness throughout the summer of 2020; and that as recently as November 16, 2020, Chicagoans were advised by Mayor Lori Lightfoot to stay at home for at least 30 days and cancel "normal" Thanksgiving plans.

Despite the public health warnings, the travel restrictions, the stay-at-home orders, and the social distancing practices, however, the Receiver accepted contracts to sell 40 multifamily residential real estate properties between April 7 and September 2, 2020 (and two of those contracts, which relate to different properties than the ones at issue (for which the contracts were formed in 2019), were submitted by Ventus). (Duff Declaration, ¶ 7) Copies of all 40 contracts were submitted as exhibits to the Receiver's Seventh, Eighth, Ninth, and Tenth Motions To

Confirm Sales. (Dkts. 690, 712, 749, 809) *Not a single one* those 40 contracts contained a financing contingency, and 25 of the sales have now closed, with two more scheduled to close the first week of December 2020. The remainder await resolution of lender objections or, in the case of the three properties at issue here, a ruling on the Ventus motion to stay. Not one buyer has defaulted – not even Ventus.

Yet, Ventus asserts (Motion, p. 2) that it was "unable to proceed with the transactions" to acquire 7600-10 South Kingston Avenue, 7656 South Kingston Avenue, 6949-59 South Merrill Avenue, and 7110-16 South Cornell on April 20, 2020 and now for the first time specifically invokes force majeure and impossibility. Neither the law or the facts support Ventus' position.

In *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC,* 403 Ill. App. 3d 1 (1st Dist. 2010), the prospective purchaser of a commercial office building sought rescission and the refund of $6 million in earnest money after one of its lenders withdrew its financing on the basis of economic conditions beyond its control (referring to the 2008 global financial crisis). As a preliminary matter, the court noted that a right to rescind must be asserted promptly, otherwise the right is waived. *Id.* at 6. It then observed that the doctrine of impossibility applies only in extreme circumstances, when performance becomes "objectively" impossible and where the parties could not have "anticipated or guarded against" an unforeseeable risk in the contract. *Id.* at 6-7. Accordingly, the court held that "[t]he potential inability to obtain commercial financing is generally considered a foreseeable risk that can be readily guarded against by inclusion in the contract of financing contingency provisions." *Id.* at 7. It further held that the defaulting purchaser failed to demonstrate that it was subjectively impossible to close on the acquisition because "nothing in the record suggest[ed] it would have been impossible [] to convert its nonliquid assets

to liquid assets in order to pay the contract purchase price." *Id.; see also Ner Tamid Congregation of North Town v. Krivoruchko,* 638 F. Supp. 2d 913 (N.D. Ill. 2009) (similar facts, same result).

*YPI 180 N. LaSalle Owner* is highly instructive in rejecting Ventus' arguments. Ventus, like the plaintiff in *YPI 180 N. Lasalle Owner,* cites to a global crisis to excuse its lack of ability to obtain financing. And similar to that case, the parties here were fully aware of the risks associated with acquisition financing. In this case, for two of the contracts at issue here (7600-10 South Kingston Avenue and 7656 South Kingston Avenue), Ventus voluntarily assumed the risk that it would be unable raise sufficient funds to close by entering into contracts with no financing contingencies. And even on the purchase of 6949-59 South Merrill Avenue, for which Ventus bargained for and obtained a contract with a limited financing contingency giving it a specified period of time to secure a "firm written mortgage commitment," Ventus allowed that provision to lapse without terminating. Put differently, if Ventus had in fact secured a "firm written mortgage commitment" then it would not have defaulted (or, alternatively, it would now have recourse against the lender). If it did *not* secure firm written mortgage commitments, then it knowingly waived its termination rights and proceeded at its own risk. All of these financing issues presented foreseeable risks which preclude the application of force majeure or the impossibility doctrine. *See YPI 180 N. LaSalle Owner,* 403 Ill. App. 3d at 6-7 ("The party advancing the doctrine must show that the events or circumstances which he claims rendered his performance impossible were not reasonably foreseeable at the time of contracting. [citation omitted] Where a contingency that causes the impossibility might have been anticipated or guarded against in the contract, it must be provided for by the terms of the contract or else impossibility does not excuse performance.")

Furthermore, the fear instilled by the COVID-19 epidemic may have induced Ventus' chosen lender from tabling the loan approval, and may have scared off some of Ventus' equity

investors, but it didn't render the prospective acquisitions *objectively* impossible as *YPI 180 N. LaSalle Owner* teaches. Clearly, the Chicago south side multifamily residential real estate market was sufficiently robust that the Receiver was able to market and sell 40 other properties during the heart of the crisis *without a single financing contingency* and (thus far) without a single default. (Duff Declaration, ¶ 7)

In addition, Ventus has failed to establish that, *subjectively*, it could not have consummated the closings (even though impossibility requires objective inability to perform). Before the epidemic, it raised at least $392,156.99 in equity to purchase <u>8047-55 South Manistee Avenue</u> and at least $176,000 in equity to purchase <u>7026-42 South Cornell Avenue</u>. Then, in the midst of the epidemic it raised $432,717.67 in equity to purchase <u>7110-16 South Cornell Avenue</u> and committed to purchasing <u>4750-52 South Indiana Avenue</u> and <u>7024-32 South Paxton Avenue</u> for a combined $2,472,000, in each case without a financing contingency, meaning that it committed to raising 100% of the equity if it could not secure a loan. One of its principals even submitted an affidavit indicating that Ventus owns and operates approximately 425 apartment units in about 30 buildings on the south and west sides of Chicago. (Affidavit of Zachary D. Elman, Dkt. 746-1, ¶ 4) Thus, the record not only lacks evidence that Ventus was subjectively unable to close, but contains ample evidence that Ventus possessed the financial wherewithal to proceed but chose not to do so.

**B.     Ventus Has Failed To Establish A Frustration Of Purpose.**

Although the Illinois Supreme Court has recognized the common law principle that a party may be discharged from its obligations under an agreement by "an unforeseeable intervening event [that] destroys the basis of the contract and creates a situation where performance by one party no longer gives the other party what induced it to enter into the contract," *People v. Shinaul,* 2017

10

IL 120162, ¶ 35, that doctrine does not apply here. Ventus does not contend that, as a result of the COVID-19 epidemic, it no longer made any sense to own commercial real estate. Instead, it seeks to be excused from performance because its contemplated source of capital dried up during a wave of economic uncertainty. Indeed, as the epidemic persisted, Ventus was busily endeavoring to secure replacement financing so it could acquire the properties on which it had defaulted *and* was signing new contracts to purchase two additional properties from the Receiver. Thus, the purpose of the agreements – *i.e.*, to acquire and operate commercial real estate – was not frustrated at all, as Ventus still saw great value in those agreements. Instead, Ventus was "frustrated" because it reposed its faith in an unreliable lender.

As the court noted in *Shinaul* (quoting the Restatement (Second) of Contracts § 265), the frustration "must be so severe that it is not fairly to be regarded as within the risks that [the party seeking rescission] assumed under the contract." *Id.*, ¶ 36. In this case, and as discussed above, the parties clearly anticipated the risks associated with acquisition financing, and Ventus protected itself against those risks when it saw fit by insisting on a right to terminate with a full refund of earnest money in the event it could not secure a firm written commitment for a mortgage loan.

### C. The Liquidated Damages Provision Of The Purchase And Sale Agreements Is Valid And Enforceable.

The liquidated damages provision contained in the purchase and sale agreements is valid and enforceable. A liquidated damages clause will be enforced when the amount specified was reasonable at the time of contracting and bore a relation to the actual damages that might be sustained and where actual damages would be difficult to ascertain or prove. *Berggren v. Hill,* 401 Ill. App. 3d 475, 480 (1st Dist. 2010). In this case, the contracts specified 10% of the purchase price as the measure of damages, the same amount that was approved in *Curtin v. Ogborn*, 75 Ill. App. 3d 549, 555 (1st Dist. 1979).

Although a liquidated damages provision may be declared void as a penalty for non-performance, there is no evidence that the provision operated as a penalty here. For example, a liquidated damages provision was held unenforceable in *Grossinger Motorcorp, Inc. v. American National Bank and Trust Co.*, 240 Ill. App. 3d 737 (1st Dist. 1993) because its invocation was merely optional: the seller was entitled to retain the earnest money as liquidated damages <u>or</u> "exercise any other remedy available at law." *Id.* at 740. In other words, if the liquidated damages exceeded the actual damages, the seller would retain the liquidated damages, but if the actual damages exceeded the liquidated damages, the seller would sue for the actual damages. The Receiver retained no such option here.

As it turns out, the liquidated damages provisions inured to the benefit of Ventus. The Receiver was only able to secure contracts to sell <u>7600-10 South Kingston Avenue</u> for $1,530,000, to sell <u>7656 South Kingston Avenue</u> for $320,000, and to sell <u>6949-59 South Merrill Avenue</u> for $1,520,000, representing losses of $340,000, $190,000, and $415,200, respectively vis-à-vis the contracts it previously held to sell these properties Ventus. Thus, the $431,520 in earnest money associated with the Ventus defaults was actually *insufficient* to compensate the Receiver for the $945,200 in losses sustained as a result of the breach. Nevertheless. the Receiver relied upon the protections expressly bargained for in the purchase and sale agreements related to the liquidated damages provision as he took the necessary steps to address the damages created by Ventus' actions.

## Conclusion

Accordingly, for all the foregoing reasons, this Court should enter an order directing First American Title Insurance Company, as escrowee, to disburse the earnest money deposited by Ventus Holdings or Ventus Merrill in connection with the prospective acquisitions of <u>7600-10</u>

South Kingston Avenue, 7656 South Kingston Avenue, and 6949-59 South Merrill Avenue to the

Receiver for deposit into corresponding segregated property-specific subaccounts.


Dated:  November 23, 2020               Kevin B. Duff, Receiver

                                      By:     /s/ Michael Rachlis
                                                   Michael Rachlis
                                                   Jodi Rosen Wine
                                                   Rachlis Duff & Peel LLC
                                                   542 South Dearborn Street, Suite 900
                                                   Chicago, IL 60605
                                                   Phone (312) 733-3950
                                                   Fax (312) 733-3952
                                                   *mrachlis@rdaplaw.net*
                                                   *jwine@rdaplaw.net*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2020, I electronically filed the foregoing **Receiver's Memorandum Objecting To Joint Motion Of Ventus Holdings And Ventus Merrill For Entry Of Judicial Order Directing Disbursement Of Earnest Money Held In Strict Joint Order Escrow** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

I further certify that I caused a true and correct copy of the foregoing **Memorandum**, to be served upon the following individuals or entities by electronic mail:

- Defendant Jerome Cohen (jerryc@reagan.com);

- All known EquityBuild investors; and

- All known individuals or entities that submitted a proof of claim in this action (sent to the e-mail address each claimant provided on the claim form).

I further certify that the **Memorandum** will be posted to the Receivership webpage at:

http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax      (312) 733-3952
mrachlis@rdaplaw.net

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES** | ) | |
| **AND EXCHANGE COMMISSION,** | ) | |
| | ) | **Civil Action No. 18-CV-5587** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Hon. John Z. Lee** |
| **EQUITYBUILD, INC., at al.,** | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) | |

**DECLARATION OF KEVIN B. DUFF IN SUPPORT OF**
**MEMORANDUM OBJECTING TO JOINT MOTION**
**OF VENTUS HOLDINGS AND VENTUS MERRILL FOR ENTRY**
**OF JUDICIAL ORDER DIRECTING DISBURSEMENT OF**
**EARNEST MONEY HELD IN STRICT JOINT ORDER ESCROW**

I, Kevin B. Duff, under penalty of perjury and in accordance with the requirements of 28 U.S.C. § 1746, hereby declare and state as follows:

1.     I am over 18 years of age and a resident of the State of Illinois.

2.     I have personal knowledge of the facts stated herein and if called as a witness could testify competently thereto.

3.     I am the Court's appointed Receiver for EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Jerome Cohen and Shaun Cohen as described in the Order Appointing Receiver ("Receivership Defendants.") (Dkt. No. 16)

4.     Since being appointed in this case, I have been responsible for preserving and maintaining 116 real estate properties with approximately 1,637 units, including approximately 79 multifamily properties and 37 single family residence properties (of 1-4 units).

5.      Through my responsibilities as Receiver, I am familiar with the purchases and sales of the various properties in the Receivership estate and the various agreements and documents exchanged during the purchase and sale process for the various properties.

6.      The following exhibits are true and accurate copies of executed documents.

a.      Exhibit A is a true and accurate copy of the purchase and sale agreement for 8047-55 South Manistee dated June 27, 2019.

b.      Exhibit B is a true and accurate copy of the purchase and sale agreement for 7026-42 South Cornell Avenue dated June 27, 2019.

c.      Exhibit C is a true and accurate copy of a letter from counsel for Ventus Holdings, LLC to counsel for the Receiver dated July 2019 (but including an inaccurate date reference to October 5, 2018).

d.      Exhibit D is a true and accurate copy of a letter from counsel for Ventus Holdings, LLC to counsel for the Receiver dated August 19, 2019.

e.      Exhibit E is a true and accurate copy of the final settlement statement for the sale of 7026 South Cornell to Ventus Cornell LLC dated November 6, 2019.

f.      Exhibit F is a true and accurate copy of the final settlement statement of for the sale of 8047-55 South Manistee to Ventus Manistee LLC dated February 5, 2020.

g.      Exhibit G is a true and accurate copy of the purchase and sale agreement for 7600-10 South Kingston Avenue dated August 14, 2019.

h.      Exhibit H is a true and accurate copy of the purchase and sale agreement for 7656 South Kingston Avenue dated August 14, 2019.

i.      Exhibit I is a true and accurate copy of the purchase and sale agreement for 7110 South Cornell Avenue dated August 14, 2019.

j.      Exhibit J is a true and accurate copy of the purchase and sale agreement for 6949-59 South Merrill Avenue dated December 13, 2019.

k.      Exhibit K is a true and accurate copy of a letter from counsel for Ventus Holdings, LLC and Ventus Merrill, LLC to counsel for the Receiver dated April 20, 2020.

l.    Exhibit L is a true and accurate copy of a letter from counsel for the Receiver to counsel for Ventus Holdings, LLC and Ventus Merrill, LLC dated April 24, 2020.

m.    Exhibit M is a true and accurate copy of the purchase and sale agreement for 7600-10 South Kingston Avenue dated April 29, 2020.

n.    Exhibit N is a true and accurate copy of the purchase and sale agreement for 7656 South Kingston Avenue dated May 29, 2020.

o.    Exhibit O is a true and accurate copy of the purchase and sale agreement for 6949-59 South Merrill Avenue dated May 6, 2020.

p.    Exhibit P is a true and accurate copy of a letter from counsel for the Receiver to Ventus Holdings, LLC dated June 1, 2020.

q.    Exhibit Q is a true and accurate copy of the final settlement statement for the sale of 7110 South Cornell Avenue to Ventus Cornell 71, LLC dated August 13, 2020.

r.    Exhibit R is a true and accurate copy of the purchase and sale agreement for 4750-52 South Indiana Avenue dated August 5, 2020.

s.    Exhibit S is a true and accurate copy of the purchase and sale agreement for 7024 South Paxton Avenue dated August 5, 2020.

7.    In my role as Receiver, I accepted contracts to sell 40 multifamily residential real estate properties between April 7, 2020 and September 2, 2020. Two of those contracts were submitted by Ventus (for properties that are not among the three properties that are the subject to the pending motion in which this declaration is submitted). None of those 40 contracts contained a financing contingency, and 25 of the sales on those properties have now closed, with two more scheduled to close the first week of December 2020. The remainder await resolution of lender objections, issuance of orders following approval of the sales, or in the case of the three properties at issue here, a ruling on the Ventus' motion to stay. Not one buyer has defaulted – not even Ventus – on any of these 40 contracts.

_____
Kevin B. Duff, Receiver

**EXHIBIT A**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for Chicago Capital Fund II LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and Ventus Holdings LLC ("Buyer") for the purchase and sale of that certain real property and ~~entity to be~~ all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at ~~formed~~ 8047-55 South Manistee Avenue, Chicago, Illinois 60617 and legally described as follows:

LOTS 27 TO 30, INCLUSIVE IN BLOCK 12 IN B.F. JACOB'S SUBDIVISION OF BLOCKS 12 AND 13 IN THE CIRCUIT COURT COMMISSIONER'S PARTITION OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER AND THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-31-115-016-0000

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.     **Purchase Price**. The purchase price for the Property shall be $ __975,000.00__ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.     An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

   *[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

2.     **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.     **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a

referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.     **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.     **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until July 26, 2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.     **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.     **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.     **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9. **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than March 18, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10. **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11. **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12. **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property

3

shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all

4

damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged

5

default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

          *[None.]*

   d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

                    Andrew E. Porter
                    Porter Law Office
                    853 North Elston Avenue
                    Chicago, Illinois 60614
                    *andrew@andrewporterlaw.com*

6

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
*mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:



Michael Elman
10 S LaSalle St., Suite 1420
Chicago, IL 60603

melman@mbelmanlaw.com

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

7

25.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

\*        \*        \*

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this ___27th___ day of June, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

**Buyer**

[    Ventus Holdings, LLC      ]

[                              ]

[Michael B. Elman & Associates, Ltd

[ 10 S LaSalle Street, Suite 1420 ]

[ Chicago, Illinois 60603         ]
  312-541-0903

By: _/s/ Zachary Elman_____

Its: Manager

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
CHICAGO CAPITAL FUND II LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date:_____

**Buyer's Agent**

[                              ]

[                              ]

[                              ]

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

8

## RIDER A

__MBF__ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*        \*        \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $ 780,000.00 at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %__5__ per annum, amortized over __25__ years, payable monthly, with a loan origination fee not to exceed %____1____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## EXHIBIT A

### STRICT JOINT ORDER ESCROW AGREEMENT



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____  **Expected Release Date:** _____  **Escrow Number:** 2964600

**Property Address:** 8047-55 South Manistee Avenue, Chicago, Illinois 60617

**Deposit Amount: $** _____  **Purpose:** ☒ **Earnest Money**  ☐ **Repairs:** _____
**Document(s) Held** _____  ☐ **Tax Escrow**  ☐ **Other:** _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | /s/ Michael Elman | Signed: | |
| Print Name: | Michael Elman | Print Name: | Kevin B. Duff, Receiver |
| Address: | 10 S LaSalle Street, Suite 1420 | Address: | 542 South Dearborn, Suite 900 |
| | Chicago, Illinois 60603 | | Chicago, Illinois 60605 |
| Email: | melman@mbelmanlaw.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | 312-541-0903 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: | |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee  **By:** _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

P012

## EXHIBIT B

ASSIGNMENT AND ASSUMPTION OF LEASES

<u>**Assignment And Assumption Of Leases**</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for Chicago Capital Fund II LLC ("Seller"), a Receivership Defendant identified in that certain Order Appointing Receiver entered August 17, 2018, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), a _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which Leases run with the Property commonly known as 8047-55 South Manistee Avenue, Chicago, Illinois 60617.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____ by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ____ day of _____, 2019.

**ASSIGNOR:**                                   **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver,          [_____]
Chicago Capital Fund II LLC


_____          By: _____

                                           Name: _____

                                           Title: _____

P014

**EXHIBIT B**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for 7026 Cornell, Inc. ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018, as supplemented by that certain Order entered March 14, 2019, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and  Ventus Holdings LLC ("Buyer") entity to be for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7026-42 South Cornell Avenue, formed Chicago, Illinois 60649 and legally described as follows:

THE SOUTH 10 FEET OF LOT 5 AND LOTS 6, 7, AND 8 IN BLOCK 3 IN THE SUBDIVISION OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index Nos. 20-24-323-033-0000, 20-24-323-034-0000

\*       \*       \*

### *TERMS AND CONDITIONS*

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.     **Purchase Price**. The purchase price for the Property shall be $ 1,110,000.00     (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.     An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2.     **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money

1

deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until July 26, 2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through,

2

or under Buyer; (g) governmental actions or proceedings concerning the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than June 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date

of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.    **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.    *Current Rent Roll.* A current rent roll for the Property generated by the management company.

b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.    *Leases*. Copies of all existing leases affecting the Property.

d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable.

In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any

P020

other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

      a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

      b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

      c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *City Of Chicago v. 7026 Cornell, Inc.,* Case No. 519SO580362

        *City Of Chicago v. 7026 Cornell, Inc.,* Case No. 519SO588031

        *City Of Chicago v. 7026 Cornell, Inc.,* Case No. 19BT01296A

      d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

Andrew E. Porter
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614
*andrew@andrewporterlaw.com*

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
*mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:



[ Michael Elman          ]
[ 10 S LaSalle St., Suite 1420
[ Chicago, IL 60603      ]
[ melman@mbelmanlaw.com

21.   **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.   **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.   **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

7

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*         *         *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and

conditions stated herein as of this ___27th___ day of June, 2019. In addition, the individual

signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute

this Agreement on behalf of the Buyer.

8

**Buyer**

[   Ventus Holdings LLC   ]

[          ]

[   Michael B. Elman & Associates, ] Ltd.

[   10 S LaSalle St., Suite 1420   ]

[   Chicago, Illinois 60603   ]

    312-5410903

By:   /s/Zachary Elman

Its:   Manager

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
7026 CORNELL, INC.

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date:   July 1, 2019

**Buyer's Agent**

[          ]

[          ]

[          ]

[          ]

[          ]

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_MBE_ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $ 860,000 , at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed % 5 per annum, amortized over 25 years, payable monthly, with a loan origination fee not to exceed % 1 , plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph to incorporate the following terms and conditions into the Agreement, which terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*  \*  \*

The Buyer consists of the following mortgagees, each of whom purports to hold a valid and unreleased security interest in the Property:

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, accrued contract interest, accrued default rate interest, late fees, penalties, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

EXHIBIT A

STRICT JOINT ORDER ESCROW AGREEMENT



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____    **Expected Release Date:** _____    **Escrow Number:** _____

**Property Address:** 7026-42 South Cornell Avenue, Chicago, IL 60649

**Deposit Amount: $** _____    **Purpose:** [X] **Earnest Money**    [ ] **Repairs:** _____
**Document(s) Held** _____    [ ] **Tax Escrow**    [ ] **Other:** _____

The above are hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | |
|---|---|---|---|
| Signed: | /s/Michael Elman | Signed: | _(signature)_ |
| Print Name: | Michael Elman | Print Name: | Kevin B. Duff, Receiver |
| Address: | 10 S LaSalle St., Suite 1420 | Address: | 542 South Dearborn, Suite 900 |
| | Chicago, IL 60603 | | Chicago, Illinois 60605 |
| Email: | melman@mbelmanlaw.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | 312-541-0903 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: | |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee        By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

P029

EXHIBIT B

ASSIGNMENT AND ASSUMPTION OF LEASES

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for 7026 Cornell, Inc. ("Seller"), a Receivership Defendant identified in that certain Order Appointing Receiver entered August 17, 2018, as supplemented by that certain Order entered March 14, 2019, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.,* United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to _____ ("Assignee"), a _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which Leases run with the Property commonly known as 7026-42 South Cornell Avenue, Chicago, Illinois 60649.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on _____ by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver,
7026 Cornell, Inc.


_____

**ASSIGNEE:**

[_____]


By: _____

Name: _____

Title: _____

**EXHIBIT C**

MICHAEL B. ELMAN & ASSOCIATES, LTD.

10 SOUTH LASALLE STREET
SUITE 1420
CHICAGO, ILLINOIS 60603-1078

MICHAEL B. ELMAN
mbelaw100@aol.com

ZACHARY D. ELMAN
zachelman@gmail.com

TELEPHONE (312) 541-0903
FAX NO. (844) 269-6884

October 5, 2018

<u>VIA EMAIL</u>
Mr. Andrew Porter
Porter Law Office
853 N. Elston Ave.
Chicago, Illinois 60642

**Re: 7026 S. Cornell & 8047 S. Manistee**

Dear Andrew:

The Buyer is requesting an extension of the Financing Contingency Deadline period to and including August 19, 2019.

As you know, the Buyer did not receive the Due Diligence Materials until July 11, 2019 (the Manistee property) and July 19, 2019 (the Cornell property).

My client has reached out to its lender to begin the loan process but has been unable to make much progress absent the materials. It is anticipated that once the materials are reviewed by the lender and the appraisal report is prepared and submitted to underwriting, the loan will be approved.

Kindly acknowledge your agreement to this request by signing below. I further request that the Financing Contingency Deadline remain open until this correspondence is responded to and the buyer can make its choice as to how to proceed. I thank you for your understanding and patience in this regard.

Very truly yours,

*Michael B. Elman*

MICHAEL B. ELMAN
MBE:gj

cc: Ventus Holdings, LLC

*Financing contingency deadline extended to August 5, 2019, fr 7026 S Cornell and August 19, 2019, fr 8047 S Manistee*

**AGREED TO BY:**

**SELLER:** _____

**By:** _____

**Date: July ___26___, 2019**

P033

**EXHIBIT D**

### MICHAEL B. ELMAN & ASSOCIATES, LTD.

10 SOUTH LASALLE STREET
SUITE 1420
CHICAGO, ILLINOIS 60603-1078

MICHAEL B. ELMAN
mbelaw100@aol.com

ZACHARY D. ELMAN
zachelman@gmail.com

TELEPHONE (312) 541-0903
FAX NO. (844) 269-6884

August 19, 2019

<u>VIA EMAIL</u>
Mr. Andrew Porter
Porter Law Office
853 N. Elston Ave.
Chicago, Illinois 60642

**Re: 8047 S. Manistee**

Dear Andrew:

The Buyer is requesting an extension of the Financing Contingency Deadline period to and including September 9, 2019.

All Due Diligence Materials have been submitted to the lender and the Buyer is waiting for the lender to complete the appraisal. The Buyer is requesting an additional 3 weeks because of the anticipated delay due to the upcoming Labor Day weekend.

Kindly acknowledge your agreement to this request by signing below. I further request that the Financing Contingency Deadline remain open until this correspondence is responded to and the buyer can make its choice as to how to proceed. I thank you for your understanding and patience in this regard.

Very truly yours,

*Michael B. Elman*

MICHAEL B. ELMAN
MBE:gj

cc: Ventus Holdings, LLC

**AGREED TO BY:**

**SELLER:**
**By:** _____

**Date: August 22 , 2019**

P035

**EXHIBIT E**

 **First American**

# *First American Title Insurance Company*

30 North LaSalle Street, Suite 2220 • Chicago, IL 60602

Office Phone:(312)750-6780 Office Fax:(866)563-2766

## *Final Settlement Statement*

| | | |
|---|---|---|
| **Property Address:** | 7026 South Cornell Avenue, Chicago, IL 60649 | **File No:** C-2964615 |
| | | **Officer:** Tiana Ellis/te |
| | | **Settlement Date:** 11/06/2019 |
| | | **Disbursement Date:** 11/06/2019 |
| | | **Print Date:** 11/06/2019, 4:30 PM |

| | |
|---|---|
| **Buyer:** | Ventus Cornell LLC |
| **Address:** | |
| **Seller:** | 7026 Cornell, Inc. |
| **Address:** | 7026 South Cornell Avenue, Chicago, IL 60649 |
| **Lender:** | RFLF 5, LLC |
| **Address:** | 222 West Adams Street, Suite 1980, Chicago, IL, 60606 |
| **Loan No.:** | |

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 1,110,000.00 | | Total Consideration | | 1,110,000.00 |
| | | | | |
| | | **Deposits in Escrow:** | | |
| | 65,000.00 | Receipt No. 100190858 on 11/06/2019 by Ventus Cornell LLC | | |
| | | | | |
| | | **Earnest Money**: | | |
| | 111,000.00 | Total Deposit/Earnest Money | | |
| | | Disbursed as Proceeds ($111000.00) | | |
| | | Excess Deposit | | |
| | | | | |
| | | **Adjustments:** | | |
| | 6,675.20 | Rent Prorations | 6,675.20 | |
| | | | | |
| | | **Prorations:** | | |
| | 9,761.03 | County Taxes for PIN -033  01/01/19 to 11/06/19 @$0.00/yr | 9,761.03 | |
| | 9,761.03 | County Taxes PIN 034  01/01/19 to 11/06/19  @$0.00/yr | 9,761.03 | |
| | | | | |
| | | **Commission:** | | |
| | | Real Estate Commission  to SVN Chicago Commercial Property Mgmt | 43,300.00 | |
| | | | | |
| | | **New Loan(s):** | | |
| | | Lender: RFLF 5, LLC | | |
| | 1,125,000.00 | Loan Amount  - RFLF 5, LLC | | |
| 5,935.83 | | Prepaid Interest  to RFLF 5, LLC | | |
| 16,875.00 | | Origination Fee  to RFLF 5, LLC | | |
| 2,500.00 | | Processing Fee  to RFLF 5, LLC | | |
| 119,400.00 | | Construction Holdback  to RFLF 5, LLC | | |
| | 2,500.00 | Good Faith Deposit  to RFLF 5, LLC | | |
| 2,750.00 | | Appraisal Fee  to RFLF 5, LLC | | |
| 12,714.83 | | Tax Escrow  to RFLF 5, LLC | | |
| | | | | |
| | | **Title/Escrow Charges to:** | | |
| | | Closing Protection Coverage-Seller  to First American Title Insurance Company | 50.00 | |
| 25.00 | | Closing Protection Coverage-Lender  to First American Title Insurance Company | | |
| 25.00 | | Closing Protection Coverage-Buyer  to First American Title Insurance Company | | |
| 50.00 | | PLDP Compliance Processing Charge  to First American Title Insurance Company | | |
| 350.00 | | Escrow Fee  Money Lender's  to First American Title Insurance Company | | |
| 959.00 | | Deed and Money Escrow  to First American Title Insurance Company | 888.75 | |
| | | Commitment Update Search  to First American Title Insurance Company | 150.00 | |
| 175.00 | | GAP Coverage  to First American Title Insurance Company | 175.00 | |
| 150.00 | | Policy Update Search  to First American Title Insurance Company | | |

Initials: _____   _____

Page 1 of 2

P037

Continued From Page 1

## *Final Settlement Statement*

| Settlement Date: | 11/06/2019 | File No: | C-2964615 |
|---|---|---|---|
| Print Date: | 11/06/2019 | Officer: | Tiana Ellis/te |

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | Service/Handling Wire Transfer Fee  to First American Title Insurance Company | 40.00 | |
| | | Chicago Water Process and Payment Service Fee  to First American Title Insurance Company | 100.00 | |
| | | Title Indemnity Service Fee  to First American Title Insurance Company | 175.00 | |
| | | Tax Payment Service Fee  to First American Title Insurance Company | 50.00 | |
| | | County Property Taxes  2018 1st & 2nd Installments + Penalty  to Cook County Collector | 11,863.07 | |
| 921.50 | | Loan Policy-Simultaneous  (+ increased liability)  to First American Title Insurance Company | | |
| | | Owner's Policy  to First American Title Insurance Company | 3,675.00 | |
| | | Commercial Extended Coverage End O  to First American Title Insurance Company | 350.00 | |
| 250.00 | | Endorsement(s) L  ALTA 9  to First American Title Insurance Company | | |
| 98.00 | | Deed | | |
| 98.00 | | Mortgage | | |
| 98.00 | | Assignment of Mortgage  to Cook County Recorder of Deeds | | |
| | | County Transfer Tax | 555.00 | |
| 8,325.00 | | City Transfer Tax | 3,330.00 | |
| | | State Transfer Tax | 1,110.00 | |
| | | | | |
| | | **Disbursements Paid:** | | |
| 7,788.00 | | Homeowner's Insurance Premium  to State Farm Insurance Company | | |
| | | Water Cert  to City of Chicago | 6,135.00 | |
| | | Repairs & Maintanence  to Paper Street Realty LLC | 13,000.00 | |
| | | EOR for Sold 2015 - 2018 Taxes  to Cook County Clerk | 50,938.31 | |
| | | Survey  to Professionals Associated Survey, Inc. | 3,700.00 | |
| | | | | |
| | | **Funds Held:** | | |
| | | Funds Held  sold 2015 - 2018 taxes, PIN 034 | 25,469.15 | |
| 40,209.10 | | **Cash ( From) (X To) Buyer** | | |
| | | Cash (X To) ( From) Seller | 918,748.46 | |
| | | | | |
| 1,329,697.26 | 1,329,697.26 | Totals | 1,110,000.00 | 1,110,000.00 |

BUYER(S):

Ventus Cornell LLC

By:

Name: *Zach Elmer*

Title: *Manage*

SELLER(S):

7026 Cornell, Inc., an Illinois corporation

By: *Andrew E Porker, Atty In Fact for*

Name: *Kevin B Duff, Federal Equity*

Title: *Receiver for 7026 Cornell Inc.*

First American Title Insurance Company

By

Tiana Ellis

Initials: _____  _____

**EXHIBIT F**

 **First American**

# *First American Title Insurance Company*

30 North LaSalle Street, Suite 2220 • Chicago, IL 60602

*Office Phone:(312)750-6780 Office Fax:(866)563-2766*

## *Final Settlement Statement*

| | |
|---|---|
| **Property Address:** | 8047-55 South Manistee Avenue, Chicago, IL 60617 |

| | |
|---|---|
| **File No:** | C-2964600 |
| **Officer:** | JoeAnn Watson/JW |
| **Settlement Date:** | 02/05/2020 |
| **Disbursement Date:** | 02/05/2020 |
| **Print Date:** | 02/04/2020, 4:37 PM |

| | |
|---|---|
| **Buyer:** | Ventus Manistee LLC |
| **Address:** | 8047-55 South Manistee Avenue, Chicago, IL 60617 |
| **Seller:** | Chicago Capital Fund II LLC |
| **Address:** | |
| **Lender:** | Morris Building and Loan, S.B. |
| **Address:** | 211 East Jefferson Street, Morris, IL, 60450 |
| **Loan No.:** | |

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 975,000.00 | | Total Consideration | | 975,000.00 |
| | | | | |
| | | **Earnest Money**: | | |
| | 97,500.00 | Total Deposit/Earnest Money | | |
| | | Disbursed as Proceeds ($97500.00) | | |
| | | Excess Deposit | | |
| | | | | |
| | | **Prorations:** | | |
| | 12,182.50 | County Taxes  07/01/19 to 12/31/19  @$0.00/yr | 12,182.50 | |
| | 2,516.39 | County Taxes  01/01/20 to 02/05/20  @$0.00/yr | 2,516.39 | |
| | | | | |
| | | **Commission:** | | |
| | | Real Estate Commission  to To Be Determined | 39,000.00 | |
| | | | | |
| | | **New Loan(s):** | | |
| | | Lender: Morris Building and Loan, S.B. | | |
| | 1,127,775.00 | Loan Amount  - Morris Building and Loan, S.B. | | |
| 5,638.88 | | Loan Fee  to Morris Building and Loan, S.B. | | |
| 60.00 | | Wire Fee  to Morris Building and Loan, S.B. | | |
| 10.00 | | Flood Determination  to Morris Building and Loan, S.B. | | |
| 250.00 | | Environmental   to Morris Building and Loan, S.B. | | |
| 4,873.75 | | RE Tax Escrow Initial Deposit  to Morris Building and Loan, S.B. | | |
| 2,200.00 | | Appraisal Fee  to Morris Building and Loan, S.B. | | |
| 325.00 | | Appraisal Review  to Morris Building and Loan, S.B. | | |
| | 5,000.00 | Borrower Paid Costs/Fees  to Morris Building and Loan, S.B. | | |
| 150.00 | | Tax Service Fee  to Lereta | | |
| 528,700.00 | | Undisbursed Funds  to Morris Building and Loan, S.B. | | |
| | | Mrtg. Broker: Meridian Capital Group | | |
| 11,277.75 | | Broker Fee  to Meridian Capital Group | | |
| | | | | |
| | | **Title/Escrow Charges to:** | | |
| | | Closing Protection Coverage-Seller  to First American Title Insurance Company | 50.00 | |
| 25.00 | | Closing Protection Coverage-Lender  to First American Title Insurance Company | | |
| 25.00 | | Closing Protection Coverage-Buyer  to First American Title Insurance Company | | |
| 50.00 | | PLDP Compliance Processing Charge  to First American Title Insurance Company | | |
| 350.00 | | Escrow Fee  Money Lender's  to First American Title Insurance Company | | |
| 1,782.00 | | Deed and Money Escrow  to First American Title Insurance Company | | |
| 150.00 | | Policy Update Search  to First American Title Insurance Company | | |
| | | Commitment Update Search  to First American Title Insurance Company | 150.00 | |
| 175.00 | | GAP Coverage  to First American Title Insurance Company | 175.00 | |
| | | Tax Payment Service Fee  to First American Title Insurance Company | 50.00 | |

**Initials:**  _____   _____

**Continued From Page 1**

## *Final Settlement Statement*

**Settlement Date:** 02/05/2020          **File No:** C-2964600
**Print Date:** 02/04/2020          **Officer:** JoeAnn Watson/JW

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | County Property Taxes  2018 1st & 2nd Installments + penalties<br>  to Cook County Collector | 27,779.06 | |
| | | Chicago Water Process and Payment Service Fee  to First American Title Insurance Company | 100.00 | |
| | | County Property Taxes  2019 1st Installment<br>  to Cook County Collector | 13,400.75 | |
| | | Service/Handling Wire Transfer Fee  to First American Title Insurance Company | 40.00 | |
| 732.00 | | Loan Policy-Simultaneous  (+ increased liability)<br>  to First American Title Insurance Company | | |
| | | Owner's Policy  to First American Title Insurance Company | 3,470.00 | |
| | | Commercial Extended Coverage End O  to First American Title Insurance Company | 350.00 | |
| 250.00 | | Endorsement(s) L  ALTA 9<br>  to First American Title Insurance Company | | |
| 98.00 | | Deed | | |
| 98.00 | | Mortgage | | |
| 98.00 | | Assignment of Rents | | |
| | | County Transfer Tax | 487.50 | |
| 7,312.50 | | City Transfer Tax | 2,925.00 | |
| | | State Transfer Tax | 975.00 | |
| | | | | |
| | | **Disbursements Paid:** | | |
| | | Water Certification/Bill  to Lawyers' Legs, Inc. | 790.32 | |
| | | Survey  to Professionals Associated Survey, Inc. | 1,800.00 | |
| | | | | |
| | 294,656.99 | **Cash (X From) (  To) Buyer** | | |
| | | **Cash (X To) (  From) Seller** | 868,758.48 | |
| | | | | |
| 1,539,630.88 | 1,539,630.88 | **Totals** | 975,000.00 | 975,000.00 |

**BUYER(S):**                  **SELLER(S):**

Ventus Manistee LLC            Chicago Capital Fund II LLC

Initials: _____  _____

**EXHIBIT G**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

VENTUS HOLDINGS, LLC OR NOMINEE ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7600 -10 South Kingston Avenue | 2527-29 East 76th Street, Chicago, Illinois 60649 and legally described as follows:

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-030

\*        \*        \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.    **Purchase Price**. The purchase price for the Property shall be $ 1,870,000 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.    An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

i

2.　　**Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.　　**Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.　　**Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.　　**Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ 10/17/2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

*10/17/2019*
*KD*
*CL 10/11/19*

6.　　**Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.　　**The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.　　**Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (**3**) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.      *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.      *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.      *Leases*. Copies of all existing leases affecting the Property.

d.      *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.      *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.    **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.    **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

      a.    The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

      b.    The Seller will not take any action affecting title to the Property following the Acceptance Date.

      c.    To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *[None.]*

      d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.    **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

Andrew E. Porter
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614
andrew@andrewporterlaw.com

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

MICHAEL ELMAN

10 S LA SALLE, STE 1420

CHICAGO, IL 60603

MELMAN@MBELMANLAW.COM

21.     **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.    Foreign Investor Disclosure. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    Merger. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 14TH____day of August, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

**Buyer**

VENTUS HOLDINGS, LLC OR NOMINEE

10 S LA SALLE STE 1420

Chicago, IL 60603

By: /Zach Elman/

Its: Manager

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 10/14/19

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*      \*      \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over_____years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*        \*        \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



*First American*
*Title Insurance Company*

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____   Expected Release Date: _____   Escrow Number: _2964652_

Property Address: _7600 South Kingston, Chicago, Illinois 60649_

Deposit Amount: $ _____   Purpose: [X] Earnest Money   [ ] Repairs: _____
Document(s) Held _____            [ ] Tax Escrow     [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | Kevin B. Duff, as Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
|---|---|---|---|
| Signed: | _____ | Signed: | |
| Print Name: | _____ | Print Name: | |
| Address: | _____ | | Rachlis Duff Peel & Kaplan LLC |
| | _____ | Address: | 542 South Dearborn, Suite 900 |
| | | | Chicago, Illinois 60605 |
| Email: | _____ | Email: | kduff@rdaplaw.net |
| Primary Phone: | _____ | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of_____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

**ASSIGNEE:**

*[TBD]*

By:_____

Name:_____

Title:_____



# Pre-Approval Letter

8/13/2019
Ventus Holdings LLC
Zach Elman
Steve Perez

Borrower:

Ventus Holdings LLC is pre-approved by Renovo Financial.

A recent credit report, tax returns and borrower financials has been received, reviewed, and is satisfactory to the Lender. Ventus Holdings LLC has been pre-approved by Renovo Financial for the acquisition of the multifamily property located 7600 S Kingston Chicago, IL for an amount of up to $1,870,000.

Renovo Financial lends for the purchase and renovation of vacant, non-owner occupied investment property. We have the ability to fund projects within ten (10) business days.

For further information please contact the Lending Associate listed below.

Brandon Moulton
Renovo Financial
312-532-2154

**EXHIBIT H**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

VENTUS HOLDINGS, LLC OR NOMINEE          ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7656 South Kingston Avenue | 2514-20 East 77th Street, Chicago, Illinois 60649 and legally described as follows:

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-026

\*     \*     \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.   **Purchase Price**. The purchase price for the Property shall be $ 510,000          (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.   An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

   b.   The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2. **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3. **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4. **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5. **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ 10/17/2019 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6. **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8. **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      Commitment For Title Insurance. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.     Survey. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     Assignment And Assumption Of Leases. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     Prorations. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

3

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.    Inspection Period. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.    *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.    *Leases*. Copies of all existing leases affecting the Property.

d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

P064

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    <u>Entry Into Or Renewal Of Contracts & Material Changes</u>. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    <u>Material Destruction</u>. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    <u>Condition Of Property</u>. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    <u>Buyer Default</u>. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

P065

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     Seller Default. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     Representations and Warranties. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

   *[None.]*

d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     Notices. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> andrew@andrewporterlaw.com
>
> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> MICHAEL ELMAN
>
> 10 S LA SALLE, STE 1420
>
> CHICAGO, IL 60603
>
> MELMAN@MBELMANLAW.COM

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.     Foreign Investor Disclosure. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     Merger. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*          *          *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 14TH____ day of August, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

**Buyer**

VENTUS HOLDINGS, LLC OR NOMINEE

10 S LA SALLE STE 1420

Chicago, IL 60603

By: /ZACH ELMAN/

Its: MANAGER

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 10/15/19

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

### RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*      \*      \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over_____years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*  *  *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

EXHIBIT A



*First American*
*Title Insurance Company*

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____  Expected Release Date: _____  Escrow Number: __2964652__

Property Address: __7656 South Kingston Avenue, Chicago, Illinois 60649__

Deposit Amount: $ _____   Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____                ☐ Tax Escrow      ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | Kevin B. Duff, as Federal Equity Receiver for SSDF7 Portfolio 1 LLC |
|---|---|---|---|
| Signed: | _____ | Signed: | |
| Print Name: | _____ | Print Name: | Rachlis Duff Peel & Kaplan LLC |
| Address: | _____ | Address: | 542 South Dearborn, Suite 900 |
| | _____ | | Chicago, Illinois 60605 |
| Email: | _____ | Email: | kduff@rdaplaw.net |
| Primary Phone: | _____ | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee     By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
titleindemnity.warrenville.il@firstam.com

EXHIBIT B

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of_____, 2019.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

ASSIGNEE:

*[TBD]*

By:_____

Name:_____

Title: _____

**EXHIBIT I**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF1 7110 S Cornell LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

VENTUS HOLDINGS, LLC OR NOMINEE          ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7110 South Cornell Avenue, Chicago, Illinois 60649 and legally described as follows:

LOTS 29, 30, 31 AND 32 IN THE SUBDIVISION OF BLOCK 2 IN CONRAD SEIPP'S SUBDIVISION OF THE WEST HALF OF THE NORTHWEST QUARTER OF SECTION 25, TOWNSHIP 38 EAST, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-25-100-014-0000

\*          \*          \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 1,240,000          (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

      a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

      b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.   **Earnest Money.** The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.   **Court Approval.** As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.   **Escrow Closing.** This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.   ~~**Irrevocable Offer.** This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until~~ _August 28, 2019_ ~~(the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.~~ 

6.   **Personal Property.** At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.   **The Closing Date.** The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.   **Conveyance of Title.** At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9. **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10. **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11. **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12. **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

P080

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.    **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.    *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.    *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.    *Leases*. Copies of all existing leases affecting the Property.

   d.    *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.      **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.      **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.      **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.      **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18. **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19. **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

    a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

    b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

    c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *City of Chicago v. SSDF1 7110 S Cornell LLC, Circuit Court of Cook County, Municipal Division, Case No. 18-M1-403814.*

    d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> MICHAEL ELMAN
>
> 10 S LA SALLE, STE 1420
>
> CHICAGO, IL 60603
>
> MELMAN@MBELMANLAW.COM

21.    **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.    **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*      *      *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 14TH day of August, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

P085

**Buyer**

VENTUS HOLDINGS, LLC OR NOMINEE

10 S LA SALLE STE 1420

Chicago, IL 60603

By: /ZACH ELMAN/

Its: MANAGER

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: October 17, 2019

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_ZE___ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $ 992,000___ , at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed 5%___per annum, amortized over 25___years, payable monthly,

with a loan origination fee not to exceed 1%____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*        *        *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____   Expected Release Date: _____   Escrow Number: __2986609__

Property Address: 7110-16 South Cornell Avenue, Chicago, Illinois 60649 _____

Deposit Amount: $ __$124,00__   Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____             ☐ Tax Escrow   ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | Kevin B. Duff, as Federal Equity Receiver for SSDF1 7110 S Cornell LLC |
|---|---|---|---|
| Signed: | | Signed: | |
| Print Name: | Zach Elman | Print Name: | Rachlis Duff Peel & Kaplan LLC |
| Address: | 10 S LaSalle Street, Suite 1420 | Address: | 542 South Dearborn, Suite 900 |
| | Chicago, Illinois 60603 | | Chicago, Illinois 60605 |
| Email: | melman@mbelmanlaw.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | (312) 541-0903 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: | |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee   By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF1 7110 S Cornell LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of_____, 2019.

**ASSIGNOR:**

Kevin B. Duff, Federal Equity Receiver for
SSDF1 7110 S Cornell LLC

_____

**ASSIGNEE:**

*[TBD]*

By:_____

Name:_____

Title: _____

**EXHIBIT J**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

Ventus Merrill, LLC _____ ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6949-59 South Merrill Avenue, Chicago, Illinois 60619 and legally described as follows:

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF THE NORTH 3/4 OF THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLNOIS.

Permanent Index No. 20-24-417-014-0000

\*       \*       \*

### TERMS AND CONDITIONS

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 1,935,200 _____ (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

      a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

      b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

I

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.      **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until  January 10, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.      **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

2

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      Commitment For Title Insurance. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.     Survey. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     Assignment And Assumption Of Leases. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     Prorations. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

3

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.   **Inspection Period.** The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.   *Current Rent Roll.* A current rent roll for the Property generated by the management company.

   b.   *Utility Bills.* Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.   *Leases.* Copies of all existing leases affecting the Property.

   d.   *Profit & Loss Statement.* A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.   *Litigation Documents.* Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes.** Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction.** Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property.** The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default.** The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

5

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.      **Seller Default.** In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.      **Representations and Warranties.** As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.      The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.      The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.      To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

   [None.]

   d.      To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.      **Notices.** All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

Andrew E. Porter
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614
andrew@andrewporterlaw.com

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

Zach Elman

Ventus Merrill, LLC

10 S La Salle Ste. 1420

Chicago, IL 60603

21.     **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.    Foreign Investor Disclosure. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    Merger. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*     *     *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this 13th_____ day of December, 2019. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

X

**Buyer**

Zachary Elman

By:

Its:

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH 6951 S MERRILL LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 12/19/2019

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $ 1,649,200 , at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed 5%___per annum, amortized over 30 ___years, payable monthly, with a loan origination fee not to exceed 1%____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

♦   ♦   ♦

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

| | |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

_[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]_

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____  Expected Release Date: _____  Escrow Number: 2964570

Property Address: 6949-69 South Merrill, Chicago, Illinois 60619

Deposit Amount: $ _____  Purpose: ☒ Earnest Money   ☐ Repairs: _____
Document(s) Held _____         ☐ Tax Escrow    ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: Kevin B. Duff, as Federal Equity Receiver |
|---|---|---|
| Signed: | | Signed: for SSPH 6951 S Merrill LLC |
| Print Name: | | Print Name: Rachlis Duff Peel & Kaplan LLC |
| Address: | 16 S La Salle Ste 1400 | Address: 542 South Dearborn, Suite 900 |
|  | Chicago, IL 60603 | Chicago, Illinois 60605 |
| Email: | Zui(@vealesholdings(.com | Email: kduff@rdaplaw.net |
| Primary Phone: | | Primary Phone: (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: |

Primary Contact (if other than above): _____

Accepted: First American Title Insurance Company, Escrowee   By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

**EXHIBIT B**

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a_____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August_, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _ day of_____, 2019.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSPH 6951 S Merrill LLC

_____

ASSIGNEE:

*[TBD]*

By:_____

Name:_____

Title:_____

P110

**EXHIBIT K**

## MICHAEL B. ELMAN & ASSOCIATES, LTD.

10 SOUTH LASALLE STREET
SUITE 1420
CHICAGO, ILLINOIS  60603-1078

_____

MICHAEL B. ELMAN
mbelaw100@aol.com

TELEPHONE (312) 541-0903
FAX NO. (844) 269-6884

ZACHARY D. ELMAN
zachelman@gmail.com

April 20, 2020

<u>VIA EMAIL</u>
Mr. Andrew Porter
Porter Law Office
853 N. Elston Ave.
Chicago, Illinois  60642

**Re:  7600 S. Kingston**
**7656 S. Kingston**
**7110 S. Cornell**
**6949 S. Merrill**

Dear Andrew:

Due to the unforeseen circumstances caused by the pandemic, the buyer's lender has elected not to provide financing in connection with these transactions. A copy of the lender's correspondence is attached. In addition, because of economic circumstances, my client's investors also no longer intend to proceed with the acquisition of these properties. Accordingly due to these unforeseen circumstances, my client cannot proceed and seeks the seller's approval to release the buyer's earnest money deposit held in a strict joint order escrow account at First American Title Insurance Company in the amount of $555,520.00.

It is quite unfortunate that we could not complete these transactions and Ventus looks forward to working with the seller again the future when circumstances permit. Kindly discuss this correspondence with your client and the courtesy of a prompt reply is appreciated. Thank you for your anticipated cooperation.


Very truly yours,

*Michael B. Elman*

MICHAEL B. ELMAN
MBE:gj


cc: Ventus Holdings, LLC

222 South Riverside Plaza, Suite 380   312.258.0070 | cicchicago.com
Chicago, Illinois 60606-6109

April 15, 2020

Ventus Holdings LLC
10 S. La Salle St.
Ste. 1420
Chicago, IL 60603

Dear Mr. Elman and Mr. Perez,

After much deliberation, we regret to inform you that we are unable to provide financing for the
following buildings:

7656 S Kingston Ave
7110 S Cornell Ave
7600 S Kingston Ave
6949 S Merrill Ave

Please be assured this is not due to our assessment of you as borrowers, but is a direct response to
the Covid-19 pandemic. Having reviewed your financial statements and portfolio performance as well
as the financials, appraisals and rent collections of the subject properties, we were very confident
these would be approved by our loan committee. Unfortunately, Covid-19 introduced much
uncertainty regarding rent projections and valuations leading to the committee's ultimate decision not
to proceed.

We appreciate your understanding during this unprecedented time and hope to work with you again in
the future. Please do not hesitate to reach out with any questions.

Sincerely,

Jack Crane
Senior Vice President, Director of Lending

P113

**EXHIBIT L**

# Porter Law Office

853 NORTH ELSTON AVENUE
CHICAGO, ILLINOIS 60642
(312) 433-0568
andrew@andrewporterlaw.com

April 24, 2020

**By E-Mail/.pdf**
Michael B. Elman, Esq.
Michael B. Elman & Associates, Ltd
10 S. LaSalle Street, Suite 1420
Chicago, IL 60603
_mbelman@mbelmanlaw.com_

Re:    Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSPH 6951 S Merrill LLC, and Ventus Merrill LLC
**6949-57 South Merrill Avenue, Chicago, IL 60649**

Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSDF1 7110 S Cornell LLC, and Ventus Holdings LLC
**7110-16 South Cornell Avenue, Chicago, IL 60649**

Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSDF7 Portfolio 1 LLC, and Ventus Holdings LLC
**7600-10 South Kingston Avenue, Chicago, IL 60649**

Purchase And Sale Agreement between Kevin B. Duff, as Federal Equity
Receiver for SSDF7 Portfolio 1 LLC, and Ventus Holdings LLC
**7656-58 South Kingston Avenue, Chicago, IL 60649**

Dear Mr. Elman:

As you are undoubtedly aware, your clients, Ventus Merrill LLC and Ventus
Holdings LLC, are unable to consummate the closings of the referenced properties on
the dates designated by the sellers pursuant to Paragraph 7 of the referenced Purchase
And Sale Agreements. Accordingly, the sellers are invoking a default under, and hereby
terminating, each of the contracts, reserving all rights to pursue the recovery of the
earnest money deposits.

Very truly yours,

Andrew Eliot Porter

P115

**EXHIBIT M**

<u>**PURCHASE & SALE AGREEMENT**</u>

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

*Southside Property Group LLC* ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7600 -10 South Kingston Avenue | 2527-29 East 76th Street, Chicago, Illinois 60649 and legally described as follows:

LOTS 1, 2 AND 3, IN BLOCK 7, IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER (EXCEPT STREETS) OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-030

\*        \*        \*

***TERMS AND CONDITIONS***

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.    **Purchase Price**. The purchase price for the Property shall be $ *1,530,000* (the  "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.    An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.    The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until __8/28/19__ 5/15/20 KJN KBD (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages.

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.    **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.   *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.   *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.   *Leases*. Copies of all existing leases affecting the Property.

   d.   *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.   *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

P120

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

P121

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

        *[None.]*

   d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

6

P122

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> David Resnick
> DResnick@RSPlaw.com
> 312-456-0376

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23. **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24. **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25. **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this _14th_ day of August, 2019. In addition, the individual _29th day of April, 2020_ signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

**Buyer**

*Southside Property Group LLC*

*765 E. 69th Place*

*Chicago IL 60637*

_____

_____

By: _____

Its: *Managing Member*

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_____

**Acceptance Date:** ___05/08/20___

**Buyer's Agent**

_____

_____

*N/A*

_____

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

## **RIDER A**

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*       \*       \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*     *     *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

P127

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____    Expected Release Date: _____    Escrow Number: __2964652__

Property Address: _7600 South Kingston, Chicago, Illinois 60649_____

Deposit Amount: $ __153,000.00__    Purpose: [X] Earnest Money    [ ] Repairs: _____
Document(s) Held _____    [ ] Tax Escrow    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: _____

Print Name: _Kevin Nugent, Southside Property Group_

Address: _765 E. 69th Place_
_Chicago IL 60637_

Email: _KevinNugent@WPDmanagement.com_

Primary Phone: _773-908-9762_

Alternate Phone: _____

**Seller:** Kevin B. Duff, as Federal Equity Receiver
Signed: for SSDF7 Portfolio 1 LLC

_____

Print Name: Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Address: Chicago, Illinois 60605

Email: kduff@rdaplaw.net

Primary Phone: (312) 733-3390

Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

P130

**EXHIBIT B**

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ___, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2019.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

ASSIGNEE:

[TBD] *Southside Property Group*

By: _____

Name: *Kevin Nugent*

Title: *Managing Member*

P132

**EXHIBIT N**

<u>**PURCHASE & SALE AGREEMENT**</u>

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

*Southside Property Group LLC* ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7656 South Kingston Avenue | 2514-20 East 77th Street, Chicago, Illinois 60649 and legally described as follows:

LOT 18 IN BLOCK 7 IN SOUTH SHORE PARK, BEING A SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 21-30-309-026

\* \* \*

***TERMS AND CONDITIONS***

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.  **Purchase Price**. The purchase price for the Property shall be $ *320,000⁰⁰* (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.      An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ *May 15th 2020* *KBD* (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the *KTN* Offer Expiration Date, then the offer shall be deemed withdrawn.

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

P135

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.     **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13. **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a. *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b. *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c. *Leases*. Copies of all existing leases affecting the Property.

d. *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e. *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14.    **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.    **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.    **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.    **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

5

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

*[None.]*

d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.     **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

Andrew E. Porter
Porter Law Office
853 North Elston Avenue
Chicago, Illinois 60614
*andrew@andrewporterlaw.com*

Michael Rachlis
Rachlis Duff Peel & Kaplan LLC
542 South Dearborn, Suite 900
Chicago, Illinois 60605
*mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

David Resnick

DResnick@RSPlaw.com

312-456-0376

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this _____29th_____ day of ~~August, 2019~~ Nov, 2020. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

**Buyer**

Southside Property Group LLC

765 E. 69th Place

Chicago IL 60637

_____

_____

By: _____

Its: Managing Member

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF7 PORTFOLIO 1 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

_____

**Acceptance Date:**  05/08/20

**Buyer's Agent**



N/A

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*     *     *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment for a fixed or adjustable rate mortgage from an established multifamily residential mortgage lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly, with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If the Buyer is unable to secure a firm written mortgage commitment as described herein within the referenced time period, then the Buyer may terminate this Agreement with a full refund of Earnest Money by providing notice to the Seller prior to the expiration of the Financing Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as provided herein, then the Buyer shall be deemed to have waived this financing contingency, and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*     *     *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

P144

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____    Expected Release Date: _____    Escrow Number: __2964652__

Property Address: __7656 South Kingston Avenue, Chicago, Illinois 60649_____

Deposit Amount: $ __32,000.00____    Purpose: [X] Earnest Money    [ ] Repairs: _____
Document(s) Held _____    [ ] Tax Escrow    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated.  In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**    **Seller:** Kevin B. Duff, as Federal Equity Receiver
Signed: _~signature~_    for SSDF7 Portfolio 1 LLC
Signed: _~signature~_

Print Name: _Kevin Nugent, Southside Property_    Print Name: _~signature~ K. Duff_
Address: _765 E. 69th Place    Group LLC_    Rachlis Duff Peel & Kaplan LLC
_Chicago IL 60637_    Address: _542 South Dearborn, Suite 900_
_Chicago, Illinois 60605_
Email: _KevinNugent@WPDmanagement.com_    Email: _kduff@rdaplaw.net_

Primary Phone: _773-908-9762_    Primary Phone: _(312) 733-3390_

Alternate Phone: _____    Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
*T E L* 877-295-4328 · *F A X* 866-525-5530
titleindemnity.warrenville.il@firstam.com

P147

**EXHIBIT B**

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF7 Portfolio 1, LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ___, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2019.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSDF7 Portfolio 1, LLC

_____

ASSIGNEE:

[TBD] Southside Property Group LLC

By: _____

Name: Kevin Nugent

Title: Managing Member

P149

**EXHIBIT O**

<u>**PURCHASE & SALE AGREEMENT**</u>

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

    Pioneer Acquisitions LLC, or its nominee     ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 6949-59 South Merrill Avenue, Chicago, Illinois 60619 and legally described as follows:

LOTS 29 AND 30, IN FIRST ADDITION TO BRYN MAWR HIGHLANDS, A SUBDIVISION OF THE NORTH 3/4 OF THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLNOIS.

Permanent Index No. 20-24-417-014-0000

*    *    *

***TERMS AND CONDITIONS***

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.     **Purchase Price**. The purchase price for the Property shall be $ 1,520,000 (the  "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

    a.     An earnest money deposit (the "Earnest Money") in an amount equal to ten percent (10%) of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

    b.     The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.    **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A.

3.    **Court Approval**. As soon as practicable after the Acceptance Date, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not issue the requisite approval, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.    **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until ~~August 28, 2019~~ (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.   May 30, 2020 - NH   KBD

6.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.    **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to ten business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject only to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and

easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.      **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2019, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions to be extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.      **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of Closing, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at the Buyer's expense.

11.      **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.      **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected from or on behalf of tenants until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. To

3

the extent that any tenant has paid all rent through and including the month prior to the Closing, then all additional rent received from such tenant shall be applied by the Seller first to rent for the period between the first day of the month in which the Closing occurs and the date of the Closing, and the balance of said rent, if any, shall be paid to the Buyer. Any and all rents that remain delinquent as of the Closing Date shall belong to the Buyer upon collection. Notwithstanding the foregoing, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall

4

release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

14. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15. **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16. **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17. **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest

Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.      **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.      **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

a.      The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

b.      The Seller will not take any action affecting title to the Property following the Acceptance Date.

c.      To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action and the following:

*[None.]*

d.      To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.      **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by

competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> c/o Jay Goldberg

> 10 South LaSalle St., Ste. 2910

> Chicago, IL 60603

> jgoldberg@fieldandgoldberg.com

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

7

23.    **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.    **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this ___6th___ day of ~~April~~ May, 2020. In addition, the individual  signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.

8

**Buyer**

Pioneer Acquisitions LLC, or its nominee

43 Purchase St., 2nd Floor

Rye, NY 10580

(212) 588-8820

By: Nick Hollenkamp

Its: Authorized Agent

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH 6951 S MERRILL LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

**Acceptance Date:** 05/08/20

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*        *        *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $_____, at an interest rate (or initial interest rate if an adjustable

rate mortgage) not to exceed %_____ per annum, amortized over _____ years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## **RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*        \*        \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

### STRICT JOINT ORDER ESCROW AGREEMENT

Open Date: _____    Expected Release Date: _____    Escrow Number: __2964570__

Property Address: __6949-59 South Merrill, Chicago, Illinois 60619__

Deposit Amount: $ __152,000.00__    Purpose: [X] Earnest Money    [ ] Repairs: _____
Document(s) Held _____         [ ] Tax Escrow    [ ] Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| **Purchaser:** | | **Seller:** | Kevin B. Duff, as Federal Equity Receiver |
|---|---|---|---|
| Signed: | _____ | Signed: | for SSPH 6951 S Merrill LLC |
| | | | *K. B. Duff* |
| Print Name: | Nick Hellencamp | Print Name: | Rachlis Duff Peel & Kaplan LLC |
| Address: | Pioneer Acquisitions LLC | Address: | 542 South Dearborn, Suite 900 |
| | 43 Purchase Street, 2nd Floor | | Chicago, Illinois 60605 |
| | Rye, New York 10580 | | |
| Email: | _____ | Email: | kduff@rdaplaw.net |
| Primary Phone: | (212) 588-8820 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | _____ | Alternate Phone: | _____ |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee         By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

P164

**EXHIBIT B**

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH 6951 S Merrill LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to [TBD] ("Assignee"), a _____, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on August ___, 2019, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this ___ day of _____, 2020.

ASSIGNOR:

Kevin B. Duff, Federal Equity Receiver for
SSPH 6951 S Merrill LLC

_____

ASSIGNEE:

*[TBD]*

By:_____

Name: _____

Title: _____

**EXHIBIT P**

# Porter Law Office

853 NORTH ELSTON AVENUE
CHICAGO, ILLINOIS 60642
(312) 433-0568
andrew@andrewporterlaw.com

June 1, 2020

**By E-Mail/.pdf**

Zachary D. Elman, Esq.
Ventus Holdings LLC
10 La Salle Street, Suite 1420
Chicago, IL 60603
*zach@ventusholdingsllc.com*

Re:     Purchase And Sale Agreement ("Agreement") between Kevin B. Duff, as Federal
        Equity Receiver for SSDF1 7110 S Cornell LLC ("Seller") and Ventus Holdings, LLC
        ("Buyer")

Dear Zach:

In light of the term sheet you provided from Meridian Capital Group and your representations that both the Buyer and the lender will be in a position to close on the sale of 7110 South Cornell Avenue within 45 days, the Seller agrees to revoke the April 24, 2020 default letter and reinstate the Agreement, subject to the following modification: The language in Paragraph 7 shall be stricken and replaced with "The Closing Date shall be August 3, 2020."

Please countersign and return this letter to signify your agreement at your earliest possible convenience.

Sincerely,

Andrew Eliot Porter

**AGREED AND ACCEPTED**:

*Zach Elman*     6/1/2020 @4:42pm
Zachary D. Elman

**EXHIBIT Q**



# First American Title Insurance Company

30 North LaSalle Street, Suite 2220 • Chicago, IL 60602

Office Phone:(312)750-6780 Office Fax:(866)563-2766

## Final Settlement Statement

| | | | |
|---|---|---|---|
| **Property Address:** | 7110 South Cornell Avenue, Chicago, IL 60649 | **File No:** | C-2986609 |
| | | **Officer:** | Martha Rodriguez/MR |
| | | **Settlement Date:** | 08/13/2020 |
| | | **Disbursement Date:** | 08/13/2020 |
| | | **Print Date:** | 08/13/2020, 10:40 AM |

| | |
|---|---|
| **Buyer:** | Ventus Cornell 71, LLC |
| **Address:** | 10 S LaSalle Street, Suite 1420, Chicago , IL 60603 |
| **Seller:** | SSDF1 7110 S Cornell LLC |
| **Address:** | |
| **Lender:** | Wheaton Bank & Trust Company A Wintrust Community Bank |
| **Address:** | 100 North Wheaton Avenue, Wheaton, IL, 60187 |
| **Loan No.:** | 260000875-1 |

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration:** | | |
| 1,240,000.00 | | Total Consideration | | 1,240,000.00 |
| | | | | |
| | | **Earnest Money:** | | |
| | 124,000.00 | Total Deposit/Earnest Money | | |
| | | Disbursed as Proceeds ($124000.00) | | |
| | | Excess Deposit | | |
| | | | | |
| | | **Adjustments:** | | |
| | 4,597.55 | Assign Tenant Lease/Rent | 4,597.55 | |
| | 1,045.00 | Prepaid Rent | 1,045.00 | |
| | 854.16 | Water Proration | 854.16 | |
| | | | | |
| | | **Prorations:** | | |
| | 15,213.65 | County Taxes 01/01/20 to 08/13/20 @$0.00/yr | 15,213.65 | |
| | | | | |
| | | **Commission:** | | |
| | | Real Estate Commission to SVN Chicago Commercial | 47,200.00 | |
| | | | | |
| | | **New Loan(s):** | | |
| | | Lender: Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| | 1,056,000.00 | Loan Amount - Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 70,000.00 | | Payment Reserve Account to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 5,280.00 | | Loan Fee to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 10,560.00 | | Broker Fee to Meridian Capital Group | | |
| 750.00 | | Appraisal Fee to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 27.00 | | Credit Report to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 8.00 | | Flood Certification to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 79.00 | | Tax Service to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 350.00 | | Environmental Fee to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 3,845.03 | | Initial Escrow Deposit to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| 167,425.00 | | Undisbursed Funds to Wheaton Bank & Trust Company A Wintrust Community Bank | | |
| | | | | |
| | | **Title/Escrow Charges to:** | | |
| | | Closing Protection Coverage-Seller to First American Title Insurance Company | 50.00 | |
| 25.00 | | Closing Protection Coverage-Lender to First American Title Insurance Company | | |
| 25.00 | | Closing Protection Coverage-Buyer to First American Title Insurance Company | | |
| 40.00 | | Electronic Delivery Fee to First American Title Insurance Company | | |

Initials:

Continued From Page 1

## *Final Settlement Statement*

| | | | |
|---|---|---|---|
| **Settlement Date:** | 08/13/2020 | **File No:** | C-2986609 |
| **Print Date:** | 08/13/2020 | **Officer:** | Martha Rodriguez/MR |

| Buyer Charge | Buyer Credit | Charge Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| 50.00 | | PLDP Compliance Processing Charge to First American Title Insurance Company | | |
| 350.00 | | Escrow Fee Money Lender's to First American Title Insurance Company | | |
| 905.00 | | Deed and Money Escrow to First American Title Insurance Company | 905.00 | |
| 40.00 | | Overnight Delivery Fee to First American Title Insurance Company | | |
| | | Service/Handling Wire Transfer Fee to First American Title Insurance Company | 40.00 | |
| | | Chicago Water Process and Payment Service Fee to First American Title Insurance Company | 100.00 | |
| 150.00 | | Policy Update Search to First American Title Insurance Company | | |
| | | Commitment Update Search to First American Title Insurance Company | 150.00 | |
| 175.00 | | GAP Coverage to First American Title Insurance Company | 175.00 | |
| | | Tax Payment Service Fee to First American Title Insurance Company | 50.00 | |
| | | County Property Taxes 2019 2nd Installment to Cook County Collector | 10,776.20 | |
| 500.00 | | Loan Policy-Simultaneous to First American Title Insurance Company | | |
| | | Owner's Policy to FATIC / Andrew Eliot Porter | 3,890.00 | |
| 250.00 | | Endorsement(s) L ALTA 9 to First American Title Insurance Company | | |
| | | Commercial Extended Coverage End O to First American Title Insurance Company | 350.00 | |
| 98.00 | | Deed | | |
| 98.00 | | Mortgage | | |
| 98.00 | | Assignment of Rents | | |
| | | State Transfer Tax | 1,240.00 | |
| | | County Transfer Tax | 620.00 | |
| 9,300.00 | | City Transfer Tax | 3,720.00 | |
| | | **Disbursements Paid:** | | |
| | | Water Bill and Certification Fee to City of Chicago Department of Water | 1,797.28 | |
| | | Survey to Professional Land Surveyor | 1,650.00 | |
| | 308,717.67 | Cash (X From) ( To) Buyer | | |
| | | Cash (X To) ( From) Seller | 1,145,576.16 | |
| 1,510,428.03 | 1,510,428.03 | Totals | 1,240,000.00 | 1,240,000.00 |

BUYER(S):

SELLER(S):

Ventus Cornell 71, LLC

SSDF1 7110 S Cornell LLC

( SEE RESOLUTION )

BY: _____

Stephen Perez, Manager

Andrew E Porter, Atty In Fact for
Kevin B Duff, Federal Equity Receiver
for SSDF1 7110 S Cornell LLC

_____

Zach Elman, Manager

Initials: _____ _____

Continued From Page 2

## Final Settlement Statement

**Settlement Date:** 08/13/2020          **File No:** C-2986609
**Print Date:** 08/13/2020          **Officer:** Martha Rodriguez/MR

First American Title Insurance Company

By _Martha Rodriguez_
Martha Rodriguez

Initials: _____          _____

**EXHIBIT R**

<u>**PURCHASE & SALE AGREEMENT**</u>

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSPH Portfolio 1 LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

<u>VENTUS HOLDINGS, LLC OR NOMINEE</u> ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 4750-52 S Indiana Avenue, Chicago, Illinois 60615 and legally described as follows:

LOT 11 (EXCEPT THAT PART TAKEN FOR WIDENING INDIANA AVENUE) IN BLOCK 1 IN ANNA PRICE'S SUBDIVISION OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-10-102-023-0000

\*      \*      \*

***TERMS AND CONDITIONS***

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 697,000.00 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

      a.      An earnest money deposit (the "Earnest Money") in an amount equal to 10% of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

      b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[<u>Note</u>: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[<u>Note</u>: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

1

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A and, in the event that the earnest monies are wired into escrow by an entity other than the Buyer, then the Buyer shall submit a third-party authorization form to the title company within 24 hours after the earnest monies have been deposited.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until August 21, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7.      **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property

pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8.    **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9.    **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than April 2, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.    **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated December 17, 2019, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

11.    **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and

interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

   a.     *Current Rent Roll*. A current rent roll for the Property generated by the management company.

   b.     *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

   c.     *Leases*. Copies of all existing leases affecting the Property.

   d.     *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

   e.     *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

~~In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this~~

ZE
KD

4

~~Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.~~

14.     **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.     **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.     **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

5

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action or as stated hereafter:

   *[None.]*

   d.     To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or

6

about the Property, including but not limited to, soil and groundwater conditions.

20. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> andrew@andrewporterlaw.com
>
> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> mrachlis@rdaplaw.net

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Michael B. Elman
> _____
>
> Michael B. Elman & Associates, Ltd.
> _____
> 10 S La Salle Ste 1420
> Chicago, IL 60603
> Melman@MBElmanlaw.com

21. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

22. **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all

P180

liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

23.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

24.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

25.     **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

*        *        *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and

conditions stated herein as of the 5th day of August, 2020. In addition, the individual signing

below on behalf of the Buyer represents and warrants that s/he is authorized to execute this

Agreement on behalf of the Buyer.

8

**Buyer**

Ventus Holdings, LLC or Nominee

By: /Zach Elman/

Its: Manager

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSPH PORTFOLIO 1 LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

**Acceptance Date:** 08/18/20

**Buyer's Agent**

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

P182

## RIDER A

____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

*      *      *

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of $____, at an interest rate (or initial interest rate if an adjustable rate

mortgage) not to exceed %_per annum, amortized over__years, payable monthly, with a loan

origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## **RIDER B**

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

\*        \*        \*

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]_

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



First American
Title Insurance Company

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____    **Expected Release Date:** _____    **Escrow Number:** 2985199

**Property Address:** 4750-52 South Indiana Avenue, Chicago, IL 60615

**Deposit Amount: $** 69,700.00    **Purpose:** ☒ Earnest Money    ☐ Repairs: _____
**Document(s) Held** _____    ☐ Tax Escrow    ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered, the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

| Purchaser: | | Seller: | |
|---|---|---|---|
| Signed: | | Signed: | Kevin B. Duff, Federal Equity Receiver for SSPH Portfolio 1 LLC |
| Print Name: | Zach Elman | Print Name: | |
| Address: | 10 S LaSalle Street, Suite 1420 | Address: | 542 South Dearborn, Suite 900 |
| | Chicago, IL 60603 | | Chicago, IL 60605 |
| Email: | zach@ventusholdingsllc.com | Email: | kduff@rdaplaw.net |
| Primary Phone: | (312) 541-0903 | Primary Phone: | (312) 733-3390 |
| Alternate Phone: | | Alternate Phone: | |

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

P187

**EXHIBIT B**

## Assignment And Assumption Of Leases

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSPH Portfolio 1 LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to_____("Assignee"), an _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 4750-52 South Indiana Avenue, Chicago, Illinois 60615.

LOT 11 (EXCEPT THAT PART TAKEN FOR WIDENING INDIANA AVENUE) IN BLOCK 1 IN ANNA PRICE'S SUBDIVISION OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on_____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of_____, 2020.

**ASSIGNOR:**                                             **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver for
SSPH Portfolio 1 LLC


_____           _____

                                                              By:_____

                                                              Name:_____

                                                              Title:_____

**EXHIBIT S**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between Kevin B. Duff, court-appointed federal equity receiver for SSDF4 7024 S Paxton LLC ("Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order dated March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action"), and

VENTUS HOLDINGS, LLC OR NOMINEE ("Buyer")

for the purchase and sale of that certain real property and all fixtures, equipment, and personal property appurtenant thereto (the "Property") located at 7024-32 S Paxton Avenue, Chicago, Illinois 60649 and legally described as follows:

THE SOUTH 20 FEET OF LOT 5, ALL OF LOT 6 AND THE NORTH 40 FEET OF LOT 7 IN THE SUBDIVISION OF THE EAST HALF OF BLOCK 4 (EXCEPT THE SOUTH 22 FEET THEREOF) AND PART ALREADY DEDICATED FOR ALLEY IN COMMISSIONER'S PARTITION, A SUBDIVISION OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Index No. 20-24-424-011-0000

\*       \*       \*

### *TERMS AND CONDITIONS*

The Seller agrees to sell the Property, and the Buyer agrees to purchase the Property, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Property shall be $ 1,775,000.00 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

        a.      An earnest money deposit (the "Earnest Money") in an amount equal to 10% of the Purchase Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").

        b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

*[Note: If the Buyer desires to enter into this Agreement subject to a financing contingency, then Rider A should be completed. Otherwise, Rider A should be left blank.]*

*[Note: If the Buyer purports to hold a mortgage interest in the Property and tenders this Agreement in connection with a credit bid, then Rider B should be completed. Otherwise, Rider B should be left blank.]*

2.      **Earnest Money**. The Earnest Money shall be held by First American Title Company ("First American Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of that certain strict joint order escrow agreement in the form attached hereto as Exhibit A and, in the event that the earnest monies are wired into escrow by an entity other than the Buyer, then the Buyer shall submit a third-party authorization form to the title company within 24 hours after the earnest monies have been deposited.

3.      **Court Approval**. As soon as practicable in consideration of the Seller's need to manage the sales of a tranche of properties, await the expiration of the respective due diligence periods, and avoid placing undue burden on the court in the SEC Action, the Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") for approval of the sale of the Property pursuant to this Agreement. In the event that the Receivership Court does not confirm the sale of the Property pursuant to this Agreement, then the Agreement shall become null and void and all Earnest Money shall be promptly refunded to the Buyer.

4.      **Escrow Closing**. This sale shall be closed through an escrow with First American Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's deed shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller unless the Buyer acquires the Property with financing, in which event that portion of the cost of the escrow relating to the financing shall be borne by the Buyer. Unless otherwise specified herein, all other closing costs shall be paid in accordance with custom for apartment investment sales transactions in Cook County, Illinois.

5.      **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until August 21, 2020 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer may be withdrawn upon the delivery of notice to the Seller in accordance with Paragraph 20.

6.      **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Property (the "Personal Property") warranting only that the Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the

2

Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

7. **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller after the Receivership Court approves the sale of the Property pursuant to this Agreement, provided, however, that the Buyer shall be entitled to five business days' advance Notice of the Closing Date.

8. **Conveyance of Title**. At Closing, the Seller shall convey title to the Property by a recordable form receiver's deed subject to (a) general real estate taxes not yet due and payable at the time of Closing; (b) covenants, conditions, restrictions, or building lines and easements of record, if any; (c) public and utility easements; (d) applicable zoning and building laws and ordinances; (f) acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer; (g) governmental actions or proceedings concerning or affecting the Property; and (h) encroachments of a minor nature, if any, that can be insured over at closing (the "Permitted Exceptions"). The Seller agrees to surrender possession of the Property at the time of Closing.

9. **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title by delivering a commitment for title insurance with extended coverage from First American Title in the amount of the Purchase Price with a commitment date not earlier than July 1, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by First American Title at the Seller's sole expense, or which will be extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money or the issuance of an endorsement, or exceptions capable of being extinguished by Receivership Court order, the Seller shall have thirty (30) calendar days from the Closing Date to cure, or insure over, the unpermitted exceptions and the Closing shall be postponed until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Purchaser may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of the thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10. **Survey**. At least five (5) business days prior to the Closing Date, the Seller shall provide the Buyer with a survey by Professionals Associated Survey, Inc., a licensed land surveyor, dated September 19, 2019, indicating the present location of all improvements. If the Buyer or the Buyer's mortgagee desires an updated or more extensive survey, the survey shall be obtained at the Buyer's expense.

3

11.     **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto as Exhibit B) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Property to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

12.     **Prorations**. Prepaid service contracts and other similar items shall be credited ratably at Closing. Any and all rents collected until the date of the Closing shall be applied by the Seller first to past due balances and then to currently scheduled monthly rent. Any rents collected by the Buyer after Closing shall be applied first to corresponding pre-Closing arrearages and remitted to the Seller within ten business days. Scheduled monthly rent shall be prorated for the month of Closing. To the extent that any tenant at the Property has paid less than the entirety of its scheduled rent for the month of Closing, then any rent received for said month shall not be prorated but instead paid first to the Seller in respect of each day in the month through and including the date of Closing, with any balance thereafter paid to the Buyer. In addition, real estate taxes associated with the ownership of the Property shall be prorated as of the Closing based on 105% of the most recently ascertainable tax bill.

13.     **Inspection Period**. The Buyer acknowledges that it was afforded the opportunity to conduct a limited tour of the Property prior to submitting its offer. Within three (3) calendar days following the Acceptance Date, the Seller shall produce the following documents to the Buyer (the "Due Diligence Materials"):

a.      *Current Rent Roll*. A current rent roll for the Property generated by the management company.

b.      *Utility Bills*. Copies of all utility bills relating to the Property, to the extent available, for the twelve calendar months preceding the month of the Acceptance Date.

c.      *Leases*. Copies of all existing leases affecting the Property.

d.      *Profit & Loss Statement*. A current trailing twelve-month profit and loss statement reflecting all categories of operating income and expenses associated with the Property, as generated by the management company.

e.      *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to any known litigation or proceedings currently affecting the Property.

In addition, the Seller shall allow the Buyer reasonable access to the Property for twenty days from and after the Acceptance Date (the "Inspection Period") for the purpose of conducting an inspection of the major structural and mechanical components of the Property. A major structural or mechanical component shall be deemed to be in acceptable operating condition if it substantially performs the function for which it is intended, regardless of age, and does not

4

pose a threat to health or safety. ~~In the event that the Buyer possesses sound evidence that any major structural or mechanical component of the Property does not substantially perform the function for which it is intended, then the Buyer shall have the right to terminate this Agreement upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period, such notice to be accompanied by the relevant pages of an inspection report prepared by a licensed or certified inspector and identifying the defect justifying the termination. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and First American Title shall release the Earnest Money to the Buyer.~~ In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Property shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable. In connection with its inspection of the Property, the Buyer shall keep the Property free and clear of liens, shall indemnify and hold Seller harmless from any and all liability, loss, cost, damage, or expense relating to its inspection of the Property, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.



ZE
KD

14.      **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning the Property. In addition, the Seller shall not make any material changes to the Property, perform or engage in any act, or enter into any agreement that materially changes the value of the Property or the rights of the Buyer relating to the Property.

15.      **Material Destruction**. Risk of loss to the Property shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of the Property shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

16.      **Condition Of Property**. The Buyer understands and agrees that the Property is being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes or has made, any representation or warranty as to the physical condition or value of the Property or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Property, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or

5

unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at the Property.

17.     **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

18.     **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Purchaser in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Property is unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

19.     **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.     The Seller has the full right, power, and authority to convey the Property to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.     The Seller will not take any action affecting title to the Property following the Acceptance Date.

   c.     To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect the Property, or the ownership or operation thereof, other than the SEC Action or as stated hereafter:

   *[None.]*

P196

d.    To the best of the Seller's knowledge, the Property is not in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about the Property, including but not limited to, soil and groundwater conditions.

20.    **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> _andrew@andrewporterlaw.com_
>
> Michael Rachlis
> Rachlis Duff & Peel LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> _mrachlis@rdaplaw.net_

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Michael B. Elman
>
> Michael B. Elman & Associates, Ltd.
> 10 S La Salle Ste 1420
> Chicago, IL 60603
> Melman@MBElmanlaw.com

**Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

21.     **Real Estate Agents**. Purchaser represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer, and the Buyer agrees to indemnify and hold Seller, and its successors and assigns, harmless from and against any and all liability, loss, damages, cost, or expense, including reasonable attorneys' fees, arising from or relating to any claim for a commission, fee, or other form of payment or compensation asserted by a putative real estate agent or broker purporting to have procured the Buyer in connection with this Agreement.

22.     **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

23.     **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

24.     **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

                        *       *       *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and

conditions stated herein as of the 5th day of August, 2020. In addition, the individual signing

below on behalf of the Buyer represents and warrants that s/he is authorized to execute this

Agreement on behalf of the Buyer.

P198

**Buyer**

Ventus Holdings, LLC or Nominee

By: */Zach Elman/*

Its: Manager

**Buyer's Agent**

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
SSDF4 7024 S PAXTON LLC

Rachlis Duff & Peel LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

Acceptance Date: 08/18/20

**Seller's Agent**

Jeffrey Baasch
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois  60607
(312) 676-1866

9

## RIDER A

_____ If the Buyer desires that the terms and provisions of this Rider be incorporated into the Purchase And Sale Agreement to which it is annexed, please initial this paragraph.

\*     \*     \*

This Agreement is contingent upon the Buyer securing, no later than 21 days following the

Acceptance Date (the "Financing Contingency Deadline"), a firm written mortgage commitment

for a fixed or adjustable rate mortgage from an established multifamily residential mortgage

lender in the amount of _____, at an interest rate (or initial interest rate if an adjustable rate

mortgage) not to exceed %_____per annum, amortized over___years, payable monthly,

with a loan origination fee not to exceed %_____, plus appraisal and credit report fees, if any. If

the Buyer is unable to secure a firm written mortgage commitment as described herein within

the referenced time period, then the Buyer may terminate this Agreement with a full refund of

Earnest Money by providing notice to the Seller prior to the expiration of the Financing

Contingency Deadline. If the Buyer does not provide the requisite notice to the Seller as

provided herein, then the Buyer shall be deemed to have waived this financing contingency,

and this Agreement shall remain in full force and effect.

## RIDER B

_____ If the Buyer purports to hold a mortgage interest in the Property and tenders the Purchase And Sale Agreement to which this rider is annexed (the "Agreement") in connection with the submission of a credit bid, please initial this paragraph and provide the information and supply any additional terms and conditions to the Agreement, or modifications to the Agreement, as requested herein. Any such terms and conditions shall supersede any contrary or conflicting terms and conditions set forth in the Agreement itself.

*       *       *

The Buyer consists of the following mortgagee or mortgagees purporting to hold a perfected and unreleased security interest in the Property:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

*[Using additional sheets, please indicate, for each mortgagee identified above, the total unpaid balance due under the promissory note secured by the corresponding mortgage and itemize each component of the current alleged loan balance, including, but not limited to, principal, interest, default rate interest, late fees, service fees, liquidation fees, protective advances, and other charges.]*

P201

The Purchase Price shall be the amount of the credit bid submitted by the Buyer, and any requirement to make an earnest money deposit is deleted. Payment of the Purchase Price shall not be made through the escrow at closing.

In addition, the Buyer shall pay all closing costs approved by the Court, which may, subject to the Court's ruling, include, but not be limited to, owner's title insurance premiums, applicable transfer taxes, the survey invoice, property management fees accrued through the closing, due and unpaid real estate taxes, escrow fees, brokerage commissions, unpaid utilities, title commitment update fees, gap insurance premiums, State of Illinois policy fees, extended coverage premiums, the costs of closing protection coverage for the Seller, all other expenses required to be paid by the Seller at closing, all amounts advanced for the benefit of the Property which are required to be reimbursed and/or any amount required to discharge any Receiver's lien.

*[Using additional sheets, set forth any other terms and conditions to be included in the Agreement, or any modifications to the Agreement, and to which your credit bid shall remain subject.]*

**EXHIBIT A**



**First American**
**Title Insurance Company**

## STRICT JOINT ORDER ESCROW AGREEMENT

**Open Date:** _____ **Expected Release Date:** _____ **Escrow Number:** 2985087

**Property Address:** 7024-32 South Paxton Avenue, Chicago, IL 60649

**Deposit Amount: $** 177,500.00 **Purpose:** ☒ Earnest Money ☐ Repairs: _____
**Document(s) Held** _____ ☐ Tax Escrow ☐ Other: _____

The above is hereby deposited with First American Title Insurance Company, as Escrowee (hereinafter referred to as the Escrowee) pursuant to this Strict Joint Order Escrow Agreement (hereinafter referred to as the Agreement). Said deposit shall be released and delivered by the Escrowee only upon the joint written order of the undersigned or their respective legal representatives or assigns.

Escrowee is hereby expressly authorized to disregard, in its sole discretion, any and all notices or warnings given by any other person or corporation, but the Escrowee is hereby expressly authorized to regard and to comply with and obey any and all orders, judgments or decrees entered or issued by any court with or without jurisdiction, and in case the Escrowee obeys or complies with any such order, judgment or decree of any court it shall not be liable to any party hereto or any other person, firm or corporation by reason of such compliance, notwithstanding any such order, judgment or decree being entered without jurisdiction or being subsequently reversed, modified, annulled, set aside or vacated. In case of any suit or proceeding regarding the Agreement, to which the Escrowee is or may at any time become a party, it shall have a lien on the contents hereof for any and all costs, and reasonable attorneys' fees, whether such attorneys shall be regularly retained or specially employed, and any other expenses which it may have incurred or become liable for on account thereof, and it shall be entitled to reimburse itself therefore out of said deposit, and the undersigned agree to pay the Escrowee upon demand all such costs, fees and expenses so incurred, to the extent the funds deposited hereunder shall be insufficient to allow for such reimbursement.

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or order of court as aforesaid.

Interest, income or other benefits, if any, earned or derived from the funds deposited shall belong to the Escrowee. The Escrowee may deposit all funds received hereunder to one or more of its general accounts. The Escrowee shall be under no duty to invest or reinvest any funds, at any time, held by it pursuant to the terms of the Agreement.

Unless otherwise tendered the Escrowee is authorized to pay an Escrow Fee in the amount of $300.00, and thereafter a Maintenance Fee in the amount of $200.00 (charged per annum beginning one year following the date of the Agreement) from the funds deposited in this escrow. The Escrowee also reserves the right to add applicable administration fees at its discretion.

**Purchaser:**
Signed: _____

**Seller:**
Signed: _____
Kevin B. Duff, Federal Equity Receiver for
SSDF4 7024 S Paxton LLC

Print Name: Zach Elman
Print Name: _____

Address: 10 S LaSalle Street, Suite 1420
Address: 542 South Dearborn, Suite 900
Chicago, IL 60603
Chicago, IL 60605

Email: zach@ventusholdingsllc.com
Email: kduff@rdaplaw.net

Primary Phone: (312) 541-0903
Primary Phone: (312) 733-3390

Alternate Phone: _____
Alternate Phone: _____

**Primary Contact (if other than above):** _____

Accepted: First American Title Insurance Company, Escrowee    By: _____

27775 Diehl Road, Ste 200, Warrenville, IL 60555
T E L 877-295-4328 · F A X 866-525-5530
titleindemnity.warrenville.il@firstam.com

P204

**EXHIBIT B**

**Assignment And Assumption Of Leases**

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kevin B. Duff, as court-appointed federal equity receiver for SSDF4 7024 S Paxton LLC ("Seller"), pursuant to that certain Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. 290), in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 ("Assignor"), hereby irrevocably grants, assigns, transfers, conveys, and sets over to_____("Assignee"), an _____ _____ limited liability company, all of Assignor's right, title, and interest in and to the leases (collectively, the "Leases") attached hereto, which leases run with the Property commonly known as 7024-32 South Paxton Avenue, Chicago, Illinois 60649.

THE SOUTH 20 FEET OF LOT 5, ALL OF LOT 6 AND THE NORTH 40 FEET OF LOT 7 IN THE SUBDIVISION OF THE EAST HALF OF BLOCK 4 (EXCEPT THE SOUTH 22 FEET THEREOF) AND PART ALREADY DEDICATED FOR ALLEY IN COMMISSIONER'S PARTITION, A SUBDIVISION OF THE SOUTH HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Assignee hereby assumes all of the obligations imposed upon the Assignor under the Leases which accrue from and after the date hereof. This Assignment is made without any express or implied representation or warranty, except to the extent provided in that certain Purchase And Sale Agreement, accepted by the Seller on_____, by and between Assignor and Assignee.

This Assignment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Assignment And Assumption Of Leases as of this _____ of_____, 2020.

**ASSIGNOR:**                                                           **ASSIGNEE:**

Kevin B. Duff, Federal Equity Receiver for
SSDF4 7024 S Paxton LLC


_____          _____

                                                                        By:_____

                                                                        Name:_____

                                                                        Title:_____