**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 18-cv-5587** |
| **v.** | ) ) | **Hon. John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) ) ) | |

**RECEIVER'S NINTH INTERIM APPLICATION AND MOTION**
**FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES**
**OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen, as defined in the Order Appointing Receiver entered August 17, 2018 (Docket No. 16), as supplemented by Order entered March 14, 2019 (Docket No. 290) and Order entered February 21, 2020 (Docket No. 634) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court, respectfully submits this Ninth Interim Application ("Application") for the Third Quarter of 2020, and moves this Court for an order approving payment of the fees and expenses of the Receiver, the Receiver's counsel, Rachlis Duff & Peel, LLC ("RDP"), the Receiver's accountants BrookWeiner, LLC ("BrookWeiner") and Whitley Penn, the Receiver's claims vendor Axos Fiduciary Services ("Axos"), and the Receiver's forensic IT consultant, Prometheum, from the Receivership Estate operating account. In support of his Application and Motion, the Receiver states as follows:

1

## I.     BACKGROUND

1.     On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a civil Complaint against Jerome Cohen, Shaun Cohen, EquityBuild Inc., and EquityBuild Finance LLC (collectively the "Defendants") alleging violations of federal securities laws, along with a motion for entry of an asset freeze, permanent injunction, and other ancillary relief.  (Docket Nos. 1 & 3, respectively)

2.     In their Complaint against the Defendants, the SEC alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a)q.  (Docket No. 1)

3.     The Complaint further alleged that the Defendants operated a Ponzi-scheme that raised at least $135 million from more than 900 investors by, among other things, making untrue statements of material fact in connection with the sale of promissory notes allegedly secured by residential real estate primarily located on the south side of Chicago.  (*Id.* ¶¶ 1-7, 17, 20-51)

4.     On August 28, 2018, the Court entered a judgment against defendants Jerome Cohen and Shaun Cohen which, among other things, enjoined future violations of federal securities laws.  (Docket No. 40)

5.     In connection with its civil action, the SEC sought and obtained Court approval for the appointment of a Receiver, and on August 17, 2018, this Court entered an Order Appointing Receiver.  (Docket No. 16)

6.     Under the Order Appointing Receiver, the Receiver was authorized to engage and employ persons and entities in his discretion to assist him in carrying out the duties and responsibilities set forth in the Order.  (*Id.*, Order Appointing Receiver, ¶ 54)

7.     Accordingly, the Receiver retained Rachlis Duff Adler Peel & Kaplan, LLC ("RDAPK")[1] as special counsel, and, on August 20, 2018, the Court entered an Order approving RDAPK's rates.  (Docket No. 19)  On August 23, 2018, the Receiver retained BrookWeiner and Whitley Penn to provide accounting services and to perform tax and related work regarding the assets of the Receivership Defendants, and, on August 28, 2018, the Court entered an Order approving BrookWeiner's and Whitley Penn's rates.  (Docket No. 39)  On August 31, 2018, the Receiver retained Prometheum to access and preserve data within EquityBuild's cloud-based storage systems and provide related IT services, and, on September 6, 2018, the Court entered an order approving Prometheum's rates.  (Docket No. 56).

8.     Pursuant to the Order Appointing Receiver, the Receiver and his retained personnel are entitled to "reasonable compensation and expense reimbursement" from the Receivership Estate, as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. (Docket No. 16, ¶ 69)

## II. NINTH INTERIM APPLICATION

9.     Pursuant to the Billing Instructions, the Receiver provides the following information regarding the application:

a.     The Application covers the period from July 1, 2020 through September 30, 2020;

---

[1] As of October 1, 2019, the firm changed its name to Rachlis Duff & Peel, LLC ("RDP").

b.      The names and hourly rates of all professionals for RDP, BrookWeiner, and Whitley Penn, as well as Axos' and Prometheum's hourly rates, are attached as **Exhibit A.**

c.      This is the Receiver's ninth interim application.  The dates and amounts of the Receiver's prior interim fee applications, the orders and amounts allowed, and the amounts paid and unpaid, are attached hereto as **Exhibit B.**

## III.   CASE STATUS

10.     Pursuant to the Billing Instructions, the Receiver provides the following information regarding the status of the case, and activities performed specifically for the period covered by this Application.

a.  The Receiver's Standardized Fund Accounting Report ("SFAR") for the Third Quarter 2020 is attached as **Exhibit C.**  The SFAR sets forth the funds received and disbursed from the Receivership estate during this reporting period.  As reported in the SFAR, the amount of cash on hand as of September 30, 2020 was $1,167,227.32.  The information reflected in the SFAR was based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

b.      Upon his appointment, the Receiver began making efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, choses in action, rights and other assets, together with all profits, interest, or other income attributable thereto, which the Receivership Defendants owned, possessed, retained a beneficial interest in, or controlled directly or indirectly, and to preserve and maintain those assets.  In furtherance of such, the Receiver took, *inter alia*, the following actions:

i.  <u>Identification and Preservation of Assets</u>

During the Third Quarter 2020, one of the Receiver's primary focuses continued to be the preservation, operation, maintenance, and sale of the 76 real estate properties remaining in the Receivership Estate at the beginning of the quarter.  The Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, continued working to improve understanding and planning for cash flow needs for underperforming properties, and controlling expenditures where possible.  To that end, the Receiver and his counsel communicated regularly with property managers relating to necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions. The Receiver and his retained professionals also reviewed monthly financial reporting, analyzed the cash position of the Estate, and communicated regularly with the real estate broker regarding prioritization of expenses and repairs on the properties.

During the Third Quarter 2020, the Receiver worked closely with the two existing property management companies to ensure that all health, life, and safety issues at the properties were addressed expeditiously, and to monitor repairs, inspections, expenses, and property finances designed to preserve the properties and protect their financial position.

The Receiver continued working with an adjuster to pursue claims for property and business interruption losses in connection with a fire that had occurred in November 2019 at 638 N. Avers, for which $294,328.19 was received in the third quarter.

Additionally, the Receiver, with the assistance of counsel and the property managers worked to address open building code violations of widely varying levels of severity. Only a limited number of City of Chicago administrative actions went forward during the quarter due to the pandemic, and the majority of administrative court hearings, and all housing court hearings in

pending actions were continued. The Receiver's counsel appeared at six administrative hearings on violations issued by the Department of Sanitation, obtaining non-suits in three of these matters and a reduced fine in three others. Counsel for the Receiver resolved three additional administrative matters by online submissions to the Department of Buildings, obtaining nonsuit orders dismissing two of them and a favorable settlement in the third matter. Additionally, during the quarter, the Receiver's counsel received numerous orders continuing hearings and six new notices of violations issued by the City of Chicago's Department of Sanitation, and maintained its docket for all pending matters. As of September 30, 2020, there remained 20 known open City of Chicago matters involving code violations.

        ii.  <u>Property Sales</u>

The Receiver and his retained professionals closed the sales of the following 12 receivership properties during the Third Quarter 2020, generating aggregate net proceeds in the amount of $7,754,439:

1. 8209 S. Ellis
2. 11117 S. Longwood
3. 7300-04 S. St. Lawrence
4. 7110-16 S. Cornell
5. 7957-59 S. Marquette
6. 7051 S. Bennett
7. 3074 Cheltenham
8. 2736-44 W. 64th
9. 5618-20 S. King
10. 6356 S. California
11. 6355-59 S. Talman
12. 7201 S. Constance

Consistent with the Court's orders approving these sales, the Receiver segregated these net proceeds into separate subaccounts. (Docket Nos. 615, 616)

Also during the quarter, the Receiver marketed the remaining properties approved for public sale in the Order granting Receiver's Sixth Motion For Court Approval Of The Process For

Public Sale Of Real Estate By Sealed Bid (Docket No. 676) and the Receiver's Eighth Motion For Approval Of The Process For Public Sale Of A Parcel Of Vacant Land (Docket No. 711):

- 6217-27 South Dorchester Avenue, Chicago, Illinois 60637
- 7255-57 South Euclid Avenue, Chicago, Illinois 60649
- 4317-19 South Michigan Avenue, Chicago, IL 60653
- 7442-48 South Calumet Avenue, Chicago, Illinois 60619
- 7701-03 South Essex Avenue, Chicago, Illinois 60649
- 816-20 East Marquette Road, Chicago, Illinois 60621
- 1422-24 East 68th Street, Chicago, Illinois 60637
- 2800-06 East 81st Street, Chicago, Illinois 60617
- 4750-52 South Indiana Avenue, Chicago, Illinois 60615
- 7840-42 South Yates Avenue, Chicago, Illinois 60649
- 7024-32 South Paxton Avenue, Chicago, Illinois 60649
- 4533-47 South Calumet Avenue, Chicago, Illinois 60653
- 4611-17 South Drexel Boulevard, Chicago, Illinois 60653
- 431 East 42nd Place, Chicago, Illinois 60653

Along with other promotional efforts, the Receiver advertised these properties for public bid for four consecutive weeks between July 6 and July 27, 2020, with an August 5, 2020 deadline for the submission of offers. The Receiver entered purchase and sale agreements for each of these properties, and on October 5, 2020 filed the Tenth Motion to Confirm the Sale of these properties. (Docket No. 809)

The Receiver and his professionals also continued to assemble due diligence folders containing third-party property reports, photographs, repair estimates, bids, utility bills, surveys, and trailing twelve-month profit-and-loss statements for each of the 37 properties (consisting of four dwelling units or less) for which the Court approved a portfolio sale (Docket No. 682). The Receiver expects that SVN SFRhub, its real estate broker, will soon commence the marketing of the portfolio and is aiming to conclude the marketing and sales process early in the First Quarter of 2021.On June 11, 2020, the Receiver filed his Eighth Motion to Confirm the Sale of Certain Real Estate (Docket No. 712):

- 7600-10 South Kingston, Chicago IL 60649

- 7656-58 South Kingston, Chicago IL 60649
- 6949-59 South Merrill Ave, Chicago IL 60649

Objections to the Receiver's Eighth Motion to Confirm the Sale of these three properties were filed by Liberty EBCP, LLC and Thorofare Assed Based Lending Reit Fund IV, LLC on July 2, 2020 (Docket Nos. 728, 730), and on July 10, 2020, the Court granted several motions to intervene filed by Ventus Holdings, LLC, Pioneer Acquisitions, LLC, and Southside Property Group, LLC, allowing these intervenors to file responses in support of the motion. (Docket No. 742) These objections and responses were fully briefed as of July 17, 2020 (*see* Docket Nos. 728, 730, 739, 746, 747, 748, 763, 772.

On July 24, 2020, the Receiver filed his Ninth Motion to Confirm the Sale (Docket No. 749) of the following properties:

- 7201 S Constance Ave/ 1825-31 E 72nd Street, Chicago IL 60649 (20-25-119-001-0000)
- 7201-07 S Dorchester Ave/ 1401 E 72nd St. Chicago IL 60619 (20-26-210-001-0000)
- 7953-59 S Marquette Rd / 2708-10 E 80th St, Chicago IL 60617 (21-31-106-024-0000)
- 7051 S Bennett Ave, Chicago IL 60649 (20-24-328-011-0000)
- 6250 S Mozart St/ 2832-36 W 63rd St, Chicago IL 60629 (19-13-330-038-0000)
- 6356 S California Ave / 2804 W 64th St, Chicago IL 60629 (19-24-107-037-0000)
- 2736-44 W 64th Street, Chicago IL 60629 (19-24-200-029-0000)
- 6355-59 S Talman Ave / 2616-22 W 64th St, Chicago IL 60629 (19-24-203-023-0000)
- 1131-41 E 79th Place, Chicago IL 60619 (20-35-106-022-0000)
- 7836 S Shore Drive / 3074 Cheltenham Place, Chicago IL 60649 (21-30-414-040-0000)
- 7508 S Essex Avenue / 2453-59 E 75th Street, Chicago IL 60649 (21-30-301-030-0000)
- 5618-20 S Martin Luther King Drive, Chicago IL 60637 (20-15-112-018-0000 and 20-15-112-019-0000)
- 6558 S Vernon Ave / 416-24 E 66th Street, Chicago IL 60637 (20-22-216-038-0000 and 20-22-216-039-0000)

An objection to the sale of two of these properties—1131-41 E 79th St. and 6250 S Mozart—was filed by Certain Mortgagees on August 24, 2020 (Docket No. 769). The Receiver responded to these objections on September 15, 2020 (Docket No. 790). On September 25, 2020,

the Court entered an Amended Order Partially Granting the Ninth Sales Motion as to the remaining 12 of the 14 properties addressed in the motion. (Docket No. 802) As of September 30, eight of these twelve properties had closed.[2]

### iii. Financial Reporting and Rents Restoration

During the Third Quarter 2020, the Receiver continued to provide institutional lenders with monthly accounting relating to rents generated by, and expenses incurred in connection with, the properties on which they assert liens. To that end, monthly reports have been sent to lenders' counsel covering the periods January through April 2020. The Receiver and his retained professionals additionally generated monthly reports for properties not encumbered by institutional debt during this period. Reports for each property include the following information: (a) net operating income, (b) expenditures made by the Receiver for the benefit of the property (primarily for insurance, real estate taxes, and funds sent to the property manager to cover expenses not payable through operating income), (c) net income distributed to the Receiver or to other property accounts from which funds were previously borrowed, and (d) a computation of the amount (if any) of rentals remaining to be restored to the property pursuant to the February 13, 2019 Order. (Docket No. 223) Each report also includes a computation of the cumulative amount (if any) reimbursable from each property, representing the amount that has been expended for the benefit of the property from sources other than its operating income.

Each report is sent with a detailed explanation of the contents of the related report and the calculation of rentals to be restored. Examples of these reports were attached as exhibits 3-26 to

---

[2] After the close of the third quarter, the Court granted the Receiver's Eighth Sales motion and the remainder of the Receiver's Ninth Sales motion (Dkt. No. 825), leading to two notices of the appeal of that order being filed in the Seventh Circuit. As of the date of this filing, the sales of the five properties implicated by these two motions are on hold.

a motion filed by the Receiver regarding the use of sales proceeds for rent restoration.  (Docket No. 749).  For properties where no rent restoration is due, the final line item on the report reflects an amount that has been expended for the benefit of the property from sources other than operating income on that property.

During the Third Quarter 2020, the Receiver filed his Second Motion for Restoration of Funds Expended for the Benefit of Other Properties, seeking the Court's approval to use proceeds from the sale of those properties on which the Receiver expended funds in excess of rents (a) for the purpose of rent restoration in accordance with the Court's Order of February 13, 2019, and (b) to reimburse the Receivership for any remaining reimbursable amount in excess of such rent restoration. (Docket No. 749)  Two objections to the Receiver's motion were filed by "the Indiana/Yates Mortgagees" (Docket No. 764) and by Midland Loan Services (Docket No. 766).  The latter objections were resolved by agreement, and the Receiver responded to the former objections (concerning two properties, one at 5450-52 S. Indiana and the other at 7749 S. Yates) on September 15, 2020. (Docket No. 791)  On September 18, 2020, the Court granted the portion of the Second Restoration Motion for the remaining properties not subject to the Objections (Docket No. 796).  In accordance with the Court's Order, the Receiver transferred $391,830.42 to the properties due funds under the Court's prior order (Docket No. 223), after which the total $767,192.75 of rent to be restored pursuant to the Court's February 13, 2019 order (Docket No. 223) has been restored.  As part of the same restoration of funds, the Receiver's account was reimbursed $1,047,972.77 for expenses that had been paid for the benefit of the sold properties, to

be available to pay ongoing and approved administrative fees and expenses of the Receivership Estate.[3]

### iv. Open Litigation

Settlement of the matter captioned *Foley v. EquityBuild, Inc.*, Case No. 16 L 8903, Circuit Court of Cook County, was finalized during the Third Quarter 2020, and the matter was dismissed on September 24, 2020.

During the Third Quarter 2020, a settlement was reached in the matter captioned *Barnes v. EquityBuild, et al.*, Case No. 19 L 7852, Circuit Court of Cook County, and a dismissal order was entered. A settlement and release agreement was executed on November 17, 2020.

Discovery has proceeded in the matter captioned *Byrd v. EquityBuild et al.*, Case No. 18 L 1993, Circuit Court of Cook County, with additional written discovery completed during the quarter. Depositions of medical witnesses have been completed, and three fact witnesses remain to be deposed. The matter has been set for a mandatory pre-trial hearing on November 6, 2020, and it is anticipated that the court will set a final deadline for the completion of fact and expert discovery if the case is not settled on that date

A claim brought by a tenant of 4520 S Drexel Avenue was settled by the insurance carrier during the quarter without a lawsuit having been filed, resulting in a $25,000 deductible payment owed.

The Receiver also received notice of a personal injury claim made by a tenant for injuries allegedly sustained at 7114 S Cornell on August 9, 2020. The Receiver's counsel has provided

---

[3] Following the close of the third quarter, the Court overruled the objections of the "Indiana/Yates Mortgagees" and entered an order granting the remainder of the Receiver's Second Restoration Motion. (Dkt. Nos. 825, 843)

notice of the receivership to the tenant's lawyer and notice of the claim to the institutional lender's counsel.

The stay entered in the matter of *Markwell v. EquityBuild, Inc.*, Case No. 2018-13722, pending in the 165th Judicial District, Harris County, Texas has been extended.

### v. Notice of Appointment of Receiver

During the Third Quarter 2020, the Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver continues to deliver notices to individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

### vi. Control of Receivership Property and Records

During the Third Quarter 2020, the Receiver continued efforts to locate and preserve all EquityBuild property and records. The Receiver maintained two platforms of records and data during the Third Quarter 2020.

### vii. Factual Investigation

During the Third Quarter 2020, the Receiver and his retained professionals continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, plus a limited number of hard copy records); (iv) available underlying

transaction documents received to date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

During the Third Quarter 2020, the Receiver and his retained counsel continued to evaluate potential third-party claims. In that regard, the Receiver has retained additional counsel and worked with a consultant (a consulting fee in the amount of $5,000 for the latter is reflected on the July special counsel invoice). Additionally, on August 17, 2020, the Receiver filed a lawsuit in the Circuit Court of Cook County's Law Division against certain of EquityBuild's former lawyers: (1) the law firm Rock Fusco & Connelly LLC, (2) Ioana Salajanu, a lawyer formerly at Rock Fusco, and (3) the law firm Bregman, Berbert, Schwartz & Gilday, LLC, alleging professional malpractice as well as aiding and abetting the Cohen's breaches of their fiduciary duties.

viii. Tax Issues

Whitley Penn was retained to continue its work in preparation of 2016 and 2017 tax returns for Receivership entities for which returns were not previously filed. During the Third Quarter 2020, Whitley Penn provided draft tax returns to the Receiver on June 30, 2020 and July 31, 2020. At the Receiver's request, Whitley Penn filed nine of these returns on August 13, 2020.

BrookWeiner was retained to perform accounting, tax, and related work in connection with winding down the business operations of the Receivership Defendants. BrookWeiner also has compiled monthly property statements and property spreadsheets and assisted with cash flow analysis matters. In addition, during the Third Quarter 2020, BrookWeiner also assisted with reviewing and preparing other returns for 2017. The Receiver does not plan to issue Form K-1s for 2016 and 2017.

ix.   Accounts Established by Receiver for the Benefit of the Receivership Estate

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property.  The interest-bearing checking accounts are used by the Receiver to collect liquid assets of the estate and to pay the portfolio-related and administrative expenses.  For each property encumbered by secured debt that has sold, the Receiver also has established a separate interest-bearing account for the purpose of depositing and holding funds until such time as the Court orders otherwise and for ultimate distribution, following a claims process and upon Court approval, to the creditors of the Estate, including the defrauded investors. (Docket Nos. 230, 311, 344 & 346)

c.   Creditors and Claims Against the Receivership Estate

During the Third Quarter 2020, the Receiver and his retained professionals continued to improve the accuracy and completeness of the "Master Claims Exhibit," preliminarily identifying on a property-by-property basis for each of the nearly 2400 claims the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loaned or invested in the particular property (where it could be determined from the face of the claim form).  The Receiver has encouraged claimants to review this exhibit and bring any discrepancies to the attention of the Receiver, and the Receiver and his retained professionals have updated the exhibit where appropriate.  The most recent version of the Master Claims Exhibit was submitted with the Receiver's Third Quarter 2020 Status Report. (Docket No. 839 at Ex. 8).  This work was reasonable, necessary, and beneficial to the receivership estate, and has allowed the Receiver's claims vendor to organize, on a property-by-property basis, the claim forms and supporting documentation that claimants have submitted to the Receiver, so that once a claims process and confidentiality order are approved by the Court, digital links for the transfer of claims and

14

supporting documentation from other claimants asserting claims against the same property can be provided to each claimant on a property-by-property basis consistent with Court orders.

The identification and compilation of claims submitted in this matter has been complex and time-consuming due to the unique circumstances and facts in this case. For example, it appears that in some instances anticipated proceeds of investor-lender loans rolled into new offerings rather than being paid off at maturity. It also appears that in some circumstances the mortgages securing loans may have been released without investor-lenders' knowledge or consent, allowing the Defendants to refinance the properties with new loans without retiring the existing loans. Moreover, some investor-lenders may have been induced to exchange secured loans for unsecured loans or equity positions through false representations. Additionally, claims against many properties are complicated by cross-collateralized mortgages.

The claims process has been further complicated by, among other things: (i) improperly completed proofs of claim, (ii) claims relating to properties that were conveyed to third parties prior to the establishment of the Receivership; and (iii) claims lacking reference to properties, or relating solely to what appear to be equity investment vehicles.

Much of the Receiver's and his counsel's time during the Third Quarter 2020 was devoted to the establishment of a claims process and responding to objections raised by the institutional lenders to the process proposed by the Receiver in his February 28, 2020 motion which remains pending before the Court. (Dkt. No. 638) The Receiver and his counsel participated in two extensive status conferences during the quarter (on July 15, 2020 and September 23, 2020), and, at the Court's direction, worked with counsel for the institutional lenders on the preparation of a set of standard document requests and interrogatories directed to investors and a set of standard document requests and interrogatories directed to institutional lenders. To a more limited extent,

the Receiver's counsel also worked with counsel for the institutional lenders on a plan for making the EquityBuild documents electronically available to all claimants.

The Receiver is continuously updating all claimants on the developments in this matter, and responding in a timely manner to the hundreds of emails and voicemails from investors and others, many if not most of which related to the claims submitted against the Estate and the status of the Court's process for resolving those claims and distributing the Estate's assets. To ease the burden and provide basic information, the Receiver establshed a web page (*http://rdaplaw.net/receivership-for-equitybuild*) for claimants and other interested parties to obtain information and certain court filings related to the Receivership estate, which remains in place today and continues to be best and most cost-effective mean of providing information regarding the status of this action.

d. Assets in Receivership Estate

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit D.** The Master Asset List identifies 56 checking accounts in the names of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $128,936.37. (*See also* Docket No. 258 at 21, and Docket No. 348 at 23-24, for additional information relating to these funds.) Additionally, 79 separate interest-bearing accounts established by the Receiver to hold the proceeds from sold real estate are identified on **Exhibit E**.

The Master Asset List does not include funds received or recovered after September 30, 2020. Nor does it include potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests. The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate, including, but not

limited to, charitable donations, loans, gifts, settlements for which payment has not yet been received, and *other* property transferred to family members, former employees, and others.

e. *See also* Receiver's Ninth Status Report (Third Quarter 2020) for additional information. (Docket No. 839)

## IV.    BILLING ADDRESSED IN THIS APPLICATION

11.    Pursuant to the Billing Instructions, the Receiver provides the following information regarding current billing:

a.    <u>Total Compensation and Expenses Requested</u>.

i.    In connection with his duties, the Receiver respectfully requests compensation for services rendered, totaling $93,678.00 for the period of this Application.  Copies of the Receiver's invoices for – July, August and September, 2020 are attached as **Exhibit F.**

ii.    In connection with the legal services provided to the Receiver by RDP, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $291,759.43 for the period of this Application.  Copies of RDP's invoices for July, August and September, 2020 are attached as **Exhibit G.**  Additionally, Receiver's counsel Andrew Porter received $29,108 as agency fees for the title examination work performed in connection with the closing of properties during the Third Quarter 2020.  The Receiver will reduce the amount due to RDP for the Third Quarter 2020 by this amount.

iii.    In connection with the accounting provided to the Receiver by BrookWeiner, the Receiver respectfully requests compensation for services

17

rendered, along with reimbursement of expenses, totaling $8,118.00 for the period of this Application. Copies of BrookWeiner's invoices for July, August and September, 2020, are attached as **Exhibit H.**

iv. In connection with the accounting provided to the Receiver by Whitley Penn, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $37,470.80 for the period of this Application. Copies of Whitley Penn's invoices for July, August and September, 2020, are attached as **Exhibit I.**

v. In connection with the database services provided to the receiver by Axos, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $128.75 for the period of this Application. A copy of Axos' invoice is attached as **Exhibit J.**

vi. In connection with the IT services provided to the Receiver by Prometheum, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $1,017.50 for the period of this Application. A copy of Prometheum's invoice is attached as **Exhibit K.**

b. <u>Source of Funds for Requested Compensation and Expenses</u>. The Receiver requests that the above compensation and expenses be paid from the Receiver's operating account to the extent there are sufficient funds now or in the future. To the extent funds are insufficient, Receiver requests that the above compensation and expenses be paid pursuant to the receiver's lien that the Court established in order that receivership

property may be used to compensate the Receiver and his counsel for their work. (*See* Court's 10/26/20 Order granting Receiver's lien (Dkt. 824))

        c.    <u>Ninth Application for Payment of Professional Fees and Expenses</u>.  This is the Receiver's ninth interim application.

        d.    <u>Summary of Activity</u>.  A "Summary of Activity," providing the total hours billed and the amount of billing for each person who billed time during the Application period (July 1, 2020 through September 30, 2020) can be found at the end of the Receiver's invoices (Exhibit F) and RDP's invoices (Exhibit G) and on the first page of the BrookWeiner and Axos invoices (Exhibits H and J).

## V.     REQUEST FOR RECEIVER'S LIEN

12.    This Court has previously granted a receiver's lien and its previously ruling is equally applicable here.  (Docket No. 824)  Consistent with the reasons set forth in the Receiver's prior fee applications and other requests and the Court's prior ruling, a receiver's lien on the estate assets and their proceeds to pay costs of the Receiver and his retained professionals that were incurred for the benefit of those properties and their competing claimants is appropriate. (*See, e.g.,* Docket No. 778, at 18-25; Docket No. 638, ¶¶ 53-57; Docket No. 720, at 14-20; Docket No. 755). The Receiver believes that the receiver's lien and the allocation methodology previously approved by the Court is reasonable and equitable given the facts, circumstances, and practical challenges of the receivership.  Consistent with this approach, the Receiver requests a lien against each property to be paid on a first priority basis before all other liens on the properties to ensure that all Court-approved fees and expenses of the Receiver and the Retained Professionals are paid in accordance with the foregoing proposed methodology.

## V. CONCLUSION

WHEREFORE, the Receiver respectfully requests that the Court approve the Receiver's Ninth Interim Fee Application and enter an Order as follows:

a.     Finding the fees and expenses of the Receiver and Receiver's retained professionals, Rachlis Duff & Peel LLC, BrookWeiner, LLC, Whitley Penn, Axos Financial Services, and Prometheum, as described in Exhibits F-K, respectively, to be reasonable and necessary to the Receivership;

b.     granting the Receiver and his retained professional a first priority administrative lien against each of the real estate properties in the Receivership Estate and their sales proceeds for payment of fees and costs;

c.     approve the proposed allocation and payment methodology with respect to a Receiver's lien for all fees and expenses of the Receivership Estate as described and recommended in this fee application;

d.     approving the Receiver's payment of such fees and expenses to the Receiver and to Receiver's retained professionals from sales proceeds for each of the properties in the Receivership Estate as described and recommended in this fee application; and

e.     granting the Receiver all other relief which this Court deems just and proper.

The SEC has reviewed and indicated it approves this Application, together with all exhibits.

Dated:  November 30, 2020    Kevin B. Duff, Receiver

              By:  /s/  Michael Rachlis      

                 Michael Rachlis
                 Jodi Rosen Wine
                 Rachlis Duff & Peel, LLC
                 542 South Dearborn Street, Suite 900
                 Chicago, IL 60605
                 Phone (312) 733-3950; Fax (312) 733-3952
                 mrachlis@rdaplaw.net
                 jwine@rdaplaw.net

## RECEIVER'S CERTIFICATION

1.     Pursuant to the Billing Instructions, the Receiver certifies as follows regarding the Receiver's Ninth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals:

a.     The Receiver has read the foregoing Application and Motion.

b.     To the best of the Receiver's knowledge, information and belief formed after reasonable inquiry, the Application and Motion and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in this Certification, Application, and Motion);

c.     All fees contained in the Application and Motion are based on the rates listed in the Fee Schedule attached hereto as Exhibit A, and such fees are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

d.     The Application and Motion does not include in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment, or capital outlay (except to the extent any such amortization is included within the permitted allowable amounts set forth herein);

e.     In seeking reimbursement for a service which the Receiver or the Receiver's Retained Professionals justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), reimbursement is requested only for the amount billed to the Receiver or Receiver's Retained Professionals by the third-party vendor and paid by the Receiver or Receiver's Retained Professionals to such vendor.  If such services were performed by the Receiver or Receiver's Retained Professionals, the Receiver certifies that no profit has been made on such reimbursable service.

2.     On November 24, 2020, the Receiver provided to Mr. Benjamin Hanauer, of the SEC, a complete draft copy of this Application and Motion, together with all exhibits and relevant billing statements in a format specified by the SEC.

      /s/ Kevin B. Duff      
Kevin B. Duff, Receiver
EquityBuild, Inc., et al.
c/o Rachlis Duff & Peel, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL  60605
(312) 733-3390 - kduff@rdaplaw.net

22