## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 18 C 5587 |
| v. | ) ) | Judge John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

On October 26, 2020, the Court granted the Receiver's ninth motion to confirm the sales of certain properties in the Receivership estate, overruling the objections of Federal National Mortgage Association ("Fannie Mae") and Citibank, N.A., as Trustee for the registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48 ("Citibank") (together the "Lenders").[1]  10/26/20 Order at 2, 4, ECF No. 825.  Fannie Mae and Citibank have moved to certify an interlocutory appeal and stay the sale of the properties pending their appeal.  For the following reasons, these motions are denied.[2]

---

[1]     Fannie Mae issued a mortgage to the commercial real estate located at 1113-41 East 79th St., Chicago, Illinois; Citibank issued a mortgage to the commercial real estate located 6250 S. Mozart Avenue, Chicago, Illinois.  Mortgagees' Obj. Ninth Mot. Confirm Sales at 6–7, ECF No. 769.

[2]     At the same time, Fannie Mae and Citibank filed their appeals directly with the Seventh Circuit.  On December 11, 2020, the Seventh Circuit granted the Receiver's motion

## I.     <u>Background</u>

On August 15, 2018, the Securities and Exchange Commission ("SEC") filed a complaint against Defendants Equitybuild, Inc. ("Equitybuild"), Equitybuild Finance, LLC ("Equitybuild Finance"), Jerome H. Cohen, and Shaun D. Cohen. *See* Compl., ECF No. 1. According to the complaint, the Cohens used the Equitybuild entities to operate a Ponzi scheme through which they fraudulently induced more than 900 investors to invest at least $135 million in residential properties on the south side of Chicago. *Id.* ¶ 1.

### A.     **Factual Background**

The SEC alleges that, beginning in 2010, the Cohens sold investors Equitybuild promissory notes, promising high interest rates. *Id.* ¶¶ 20–22. Each note referenced a specific real estate property and represented that the note was secured by a fractional interest in the mortgage on that property. *Id.* ¶ 24. The complaint alleges that the Cohens also charged investors undisclosed fees of 15% to 30%. *Id.* ¶ 37. To keep those fees hidden, they told investors that the properties securing the notes were worth significantly more than what they actually cost. *Id.* ¶ 38. This allowed the Cohens to collect far more than what they told investors was necessary to acquire the properties. *Id.* The Cohens used the investors' funds to pay their personal living expenses, and to make Ponzi-style payments to earlier investors. *Id.* ¶ 39.

---

to dismiss both appeals on the grounds that the Lenders did not have the ability to appeal as of right under 28 U.S.C. § 1292(a)(2). *S.E.C. v. Citibank*, No. 20-3114 (7th Cir. Dec. 11, 2020), ECF No. 28.

As alleged in the complaint, the Cohens stopped offering the notes in 2017 and began instead to solicit investments in various real estate "funds." *Id.* ¶¶ 52–53. They concealed, however, that many of the properties supposedly being acquired with the funds' money had previously been acquired in the course of the note offerings, and those properties supposedly served to secure the prior note investments. *Id.* ¶¶ 56–58. For both kinds of investments, the Cohens promised individual investors returns of between 12% to 20%. *Id.* ¶¶ 1, 54. But the investment properties performed poorly, and monthly expenses often outpaced any revenues. *Id.* ¶ 42. The Cohens used new investor funds to pay earlier investors' interest payments. *Id.* ¶ 45.

As the Receiver has alleged in later filings, under the increasing weight of obligations to make interest payments, the Cohens also refinanced the properties with new loans from institutional lenders without paying off the existing investors' indebtedness. Receiver's Mot. Approval Process Resolution Disputed Claims ¶ 1, 6, ECF No. 638. In many instances, the properties being refinanced with the Lenders were already encumbered with recorded mortgages that secured the promissory notes held by the individual investors. *Id.* ¶ 6; SEC's Resp. Opp'n Freddie Mac's Mot. Divert Assets Receivership at 4–6, ECF No. 114; *see also id.*, Ex. 1, Certificate of Exemption, ECF No. 114-1 (example of recorded mortgage). Shaun Cohen, as purported attorney-in-fact for the individual investors, would record a release of the mortgages securing the investors' loans without their knowledge or consent. Receiver's Mot. Approval Process Resolution Disputed Claims ¶¶ 1, 6. In doing so,

Equitybuild often borrowed against the same property twice, creating a clash of claims between the individual investors and the institutional lenders. *Id.* ¶ 6.

## B.    Procedural History

Shortly after the SEC filed its complaint, the Court appointed a Receiver to marshal and preserve Defendants' assets. *See* Order Appointing Receiver, ECF No. 16. The Receivership Order grants the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, members, and general and limited partners" of the Equitybuild Defendants. *Id.* ¶ 4. It also authorizes the Receiver to "take all necessary and reasonable actions" to sell or lease "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." *Id.* ¶ 38. Over the past two years, the Court has approved various procedures that permit the Receiver to liquidate Receivership assets and will determine the priority of the liens at issue.

Relevant to the instant motions, the Court has ruled as follows. First, the Court has rejected the Lenders' attempt to block the Receiver from selling any Receivership real estate until lien priority determinations are made. *See* 10/4/19 Order at 5, ECF No. 540 (overruling the Lenders' objections, which "essentially amount[ed] to a request barring the Receiver from proceeding with the sale of all mortgage-encumbered properties—a request [the Lenders] should have raised much earlier" (quoting Magistrate Judge Young B. Kim's 7/9/19 Order at 4, ECF No. 447)).

4

As this Court has repeatedly articulated, including in the Order that Fannie Mae and Citibank seek to appeal, the competing claims of the individual investors and the Lenders must be addressed through an "orderly claims process" to ensure that the various stakeholders are treated equitably. 10/26/20 Order at 5; *see also e.g.*, 10/4/19 Order at 5; 4/23/19 Tr. at 14:3–16, ECF No. 444.

Second, the Court has approved sales procedures specifically designed to prevent Lenders' security interests from being extinguished until the priority of their liens is determined. For example, as Fannie Mae and Citibank admit in their motion, when the Receiver puts a property up for sale, the Lenders can submit a credit bid[3] in an attempt to purchase the property. 10/4/19 Order at 4–6; *see also* Magistrate Judge Young B. Kim's 5/2/19 Mem. Op. Order, ECF No. 352; Magistrate Judge Young B. Kim's 7/9/19 Mem. Op. Order, ECF No. 447. And when the sale of a property is approved by the Court, any preexisting liens attach to the proceeds of the sale, which are kept in a segregated account—and will be until priority determinations are made. 12/12/19 Minute Entry, ECF No. 601; *see also, e.g.*, 10/30/20 Order Granting Eighth Mot. Confirm Sale ¶ 6, ECF No. 841 ("The proceeds from the sales of the Properties shall be held by the Receiver in separate subaccounts for which the Receiver shall

---

[3]     Credit bidding is a "means [for lenders] to protect themselves from the risk that the winning auction bid will not capture the asset's actual value. If a secured lender feels that the bids that have been submitted in an auction do not accurately reflect the true value of the asset and that a sale at the highest bid price would leave them undercompensated, then they may use their credit to trump the existing bids and take possession of the asset. In essence, by granting secured creditors the right to credit bid, the [Bankruptcy] Code promises lenders that their liens will not be extinguished for less than face value without their consent." *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 650 (7th Cir. 2011).

5

maintain an accounting . . . , with all mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect . . . .”). On October 26, 2020, the Court declined to reconsider these rulings and overruled Fannie Mae and Citibank's objections to the Receiver's ninth motion to confirm the sale of properties. 10/26/20 Order at 4.

Now, Fannie Mae and Citibank have filed a motion asking this Court to certify an interlocutory appeal under 28 U.S.C. § 1292(b). Fannie Mae and Citibank have also moved to stay the sale of the properties at issue while their appeal is pending in the Seventh Circuit.

## II.    Legal Standard

“Interlocutory appeals are frowned on in the federal judicial system.” *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). This is because they can impose “a gratuitous burden on the court of appeals and the parties, as well as a gratuitous interruption . . . of the district court proceedings.” *Id.* Nonetheless, a district court may certify an order for interlocutory review under 28 U.S.C. § 1292(b) if four conditions are satisfied: (1) the order “involves a controlling question”; (2) the question is one “of law”; (3) the question is one “as to which there is substantial ground for difference of opinion”; and (4) an “immediate appeal from the order may materially advance the ultimate termination of the litigation.” 28 U.S.C. § 1292(b); *see also Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, No. 13 C 3455, 2017 WL 1862836, at *2 (N.D. Ill. May 9, 2017) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000)). Furthermore, a motion seeking certification of an

interlocutory order must be filed within a reasonable time after the order was originally entered. *Id.* at *2 n.1 (quoting *Ahrenholz*, 219 F.3d at 675).

"Unless all these criteria are satisfied, the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b)." *Ahrenholz*, 219 F.3d at 676. And "the movant bears the burden of showing that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

To determine whether to grant a stay pending an appeal, a court considers "(1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether a stay would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997); *see also In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). The moving party has a "threshold burden[] to demonstrate the first two factors." *In re Forty-Eight Insulations*, 115 F.3d at 1300. If the movant can make these "threshold showings, the court then moves on to balance the relative harms"; however, "if the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis." *Id.* 1301.

### III.  Analysis

Fannie Mae and Citibank assert that their appeal presents several controlling questions of law that merit interlocutory review:

1. Can the Receiver sell real properties encumbered by the Mortgagees' liens when sales of these properties will not generate any net proceeds for the estate over and above the amount of the mortgage liens?

2. Can the Receiver sell real properties encumbered by the Mortgagees' liens free and clear without first objecting to the Mortgagees' proofs of claim or lien priority through a formal objection or avoidance action?

3. Can the Receiver require the Mortgagees to post a letter of credit in order to submit a credit bid to purchase the property secured by their security interests without first objecting to the Mortgagees' proofs of claim or lien priority through a formal objection or avoidance action?

4. Does the Receiver violate his ongoing duty ordered in the Order Appointing Receiver to ensure that no conflicts of interest arise by selling real properties to affiliates of the current property managers and the property managers in place when the original Ponzi scheme allegedly occurred?

5. Did the Receiver violate his duties to sell real properties "with due regard to the realization of the true and proper value of such real property" as required by the Order Appointing Receiver when the Receiver failed to provide any evidence, testimony, or affidavits as to (a) the due regard to the realization of the true and proper value of such properties and (b) why the sales are in the best interest of the estate as required and (c) without allowing the Mortgagees' to present evidence to the Court to the contrary?

Mortgagees' Mem. Supp. Mot. Certify Interlocutory Appeal at 1–2, ECF No. 834. But these issues that have long been settled by this Court, and this is just the latest attempt by a mortgagee lender to undo the procedures that the Court has already established to fairly and equitably administer the receivership estate. As articulated by the Court in its October 26, 2020 Order,

> [I]n the face of nearly identical challenges, the Court already approved the Receiver's credit bidding procedures, Oct. 4, 2019 Order at 4–6, ECF No. 540; approved the sales of properties for prices amounting to less than the mortgages securing them, Mar. 31, 2020 Order at 7, ECF No. 676; approved the sales of properties free and clear of any liens or encumbrances provided that those liens attach to the ultimate sales proceeds of the properties, Dec. 12, 2019 Minute Entry, ECF No. 601; and permitted the Receiver's property managers to bid for properties, Oct. 4, 2019 Order at 4–5. The Court also has ruled that an orderly claims process is the most efficient and equitable method to resolve competing claims of investors and institutional lenders, *id.* at 5; Mar. 31, 2020 Order at 6[.]

10/26/20 Order at 4–5. Thus, Fannie Mae and Citibank's motion is not timely. *Cf. Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) ("a district judge should not grant an inexcusably dilatory request").

But even if it were, these questions are not the sort of questions "of law" for which § 1292(b) was designed to facilitate an appeal.[4] The Seventh Circuit has held

---

[4]    In their motion, Fannie Mae and Citibank also briefly assert that the sale of the properties at issue violates their Fourteenth Amendment due process rights. *See* Mortgagees' Mem. Supp. Mot. Certify Interlocutory Appeal at 7. The movants have not cited any authority to support this contention. *See United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (internal quotation marks omitted). Moreover, while "due process demands that the claimant be heard" if the party has a "colorable claim" against a receiver or the entities in receivership, "the district court exercises significant control over the time and manner of such proceedings . . . . [and] may require all such claims to be brought before the receivership court for disposition pursuant to summary process consistent with the equity

that § 1292(b) "refer[s] to a 'pure' question of law rather than merely to an issue that might be free from a factual contest." *Ahrenholz*, 219 F.3d at 677. In *Arenholz*, the Seventh Circuit held that it was not proper to certify issues like whether summary judgment was proper or the interpretation of a contract—issues that would "require[] hunting through the record" or "immersion in what may be a long, detailed, and obscure contract." *Id.*

"In supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010). This Court has "broad equitable power in this area." *Id.*; *see also Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015) (noting that in receivership matters, "federal courts exercise the traditional, common law powers of equity" (quoting *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)). When evaluating whether to authorize certain procedures or permit sales of property under receivership, the supervising court must consider what is reasonable, within the business judgment of the receiver, and in the best interests of the receivership estate. *See Pennant*, 2015 WL 4511337, at *6 (ordering hearing to determine whether sale was in the "best interest" of the estate).

Here, despite the fact that Fannie Mae and Citibank have attempted to characterize their questions as pure issues of law, an appellate court would have to

---

purpose of the court." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) (citations omitted). The Court is in the process of instituting such proceedings. *See* 11/9/20 Minute Entry, ECF No. 863.

wade through an extensive factual record to evaluate whether the procedures adopted by the Court given the Cohen's treatment of the various properties and the sales resulting from those procedures were fair and reasonable. The cases cited by Fannie Mae and Citibank illustrate this well.

In *Pennant Management v. First Farmers Financial, LLC*, another court in the Northern District of Illinois considered a similar motion by a receiver to confirm the sale of real estate. Fannie Mae and Citibank read this case as an "express[] reject[ion] [of] sales that did not satisfy all secured liens, absent a consensual agreement by the impacted parties." Mortgagees' Mem. Supp. Mot. Certify Interlocutory Appeal at 7, ECF No. 834. To the contrary, the *Pennant* court held that it "ha[d] the authority to grant the Receivers' request to sell the [properties] free and clear of liens" regardless of the lienholders' consent, but elected to hold a hearing first. 2015 WL 4511337, at *6.[5] And after the hearing, the court *did* authorize the sale of the properties free and clear of all interests, with the interests attaching to the sale proceeds. *See Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 5180678, at *4 (N.D. Ill. Sept. 4, 2015).

Fannie Mae and Citibank also cite to a Seventh Circuit statement—in the bankruptcy context—that "the bankruptcy court should not order property sold 'free and clear of' liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the

---

[5] The court held that it would not release the *United States's* mortgage without its consent under 28 U.S.C. § 2410. *Pennant*, 2015 WL 4511337 at *2–3. Fannie Mae and Citibank do not argue that § 2410 applies to them.

11

bankrupt's estate." *In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982). Notwithstanding the differences between the laws governing bankruptcy and federal receiverships, as well as the fact that it has not yet been determined whether Fannie Mae or Citibank are first-priority "secured lienholders," the Seventh Circuit was clear that it was describing only the "general rule." *Id.* And in that case, the *trustee* objected to the bankruptcy court's *ex post* determination that the sales were "free and clear," because the trustee had set the sales price under the assumption that the liens at issue attached. *Id.* at 640–41.

The movants also rely heavily on *S.E.C. v. Madison Real Estate Group, LLC*, which similarly dealt with a receivership over a Ponzi scheme involving real estate. 647 F. Supp. 2d 1271, 1275 (D. Utah 2009). But in that case, the court held that "[u]nlike the investors, the [Lenders] are *secured creditors.* . . . [c]onsequently, the [Lenders'] priority interest remain[ed] intact despite the Receivership." *Id.* at 1277 (emphasis added). Again, whether Fannie Mae or Citibank are first-priority secured creditors remains an open question. In this case, there are approximately 2,000 claims submissions whose priority is yet to be determined. 10/4/19 Order at 6. And the Court "must endeavor to balance all of the parties' interests given that there are a number of investors and creditors who assert competing claims." *Id.* (quoting Magistrate Judge Young B. Kim's 7/9/19 Order at 7).

Finally, Fannie Mae and Citibank cite to another receivership matter that is pending before this Court, *SEC v. Northridge Holdings, Ltd.*, No. 19-cv-05957 (N.D. Ill.). That receivership also arose out of a Ponzi scheme involving real estate. But in

*Northridge*, the receiver is not challenging whether the institutional lenders' interests are first-priority or secured, and the receiver has proposed a distribution plan that will pool the estate's liquidated assets and make *pro rata* distributions to investors instead of segregating funds and adjudicating the priority of the various liens. *See* Order Approving Claims Procedures, *Northridge*, No. 19-cv-05957, ECF No. 217.

As these cases illustrate, the Seventh Circuit would need to evaluate numerous factual issues to adjudicate the proposed appeal, including the different ways the Cohens financed these properties, what was told to each lender about the financial status of the properties, what other information each lender had about the properties, and how the funds were spent between and among the various properties. Indeed, as the Lenders themselves recognize, the actions of the Court are grounded in "established law," *see* Mortgagees' Mem. Supp. Mot. Certify Interlocutory Appeal at 6 (quoting *Madison*, 647 F. Supp. 2d at 1277; Magistrate Judge Young B. Kim's 4/8/19 Order at 7–8, ECF No. 311), and what they seek to challenge on appeal is the Court's application of the law to the facts of this case, *see DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 919 (S.D. Ohio 2013). Thus, the Court's October 26, 2020 Order is "unsuitable for appeal under section 1292(b) because it does not present an abstract legal issue." *See Ahrenholz*, 219 F.3d at 677.

Additionally, the movants must demonstrate that the questions of law at issue are "difficult" and that there is a "substantial likelihood . . . that the district court ruling will be reversed on appeal." *Padilla v. DISH Network L.L.C.*, No. 12-CV-7350,

2014 WL 539746, at *5 (N.D. Ill. Feb. 11, 2014) (internal quotations and citations omitted). But the "appellate scrutiny [of a district court's supervision of a receivership] is narrow," *Wealth Management*, 628 F.3d at 332, and, for the reasons repeatedly articulated by the Court throughout this case, the movants have not established a "substantial likelihood" that the Court's application of well-established law to facts will be reversed on appeal, *Padilla*, 2014 WL 539746, at *5.

Accordingly, the Lenders' motion to certify an interlocutory appeal of the October 26, 2020, Order is denied. Furthermore, because the Court declines to certify an interlocutory appeal and the Seventh Circuit has determined that Fannie Mae and Citibank do not have a right to appeal this interlocutory order under 28 U.S.C. § 1292(a)(2), *see S.E.C. v. Citibank*, No. 20-3114 (7th Cir. Dec. 11, 2020), ECF No. 28, Fannie Mae and Citibank's motion to stay the sales of the properties at issue pending appeal is denied as moot.

## III.    Conclusion

For the foregoing reasons, the Court denies Fannie Mae and Citibank's motions to certify an interlocutory appeal and to stay the sale of properties.

**IT IS SO ORDERED.**                    **ENTERED: 12/11/20**

_____
**John Z. Lee**
**United States District Judge**

14