UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Judge John Z. Lee |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) | |

**RECEIVER'S (1) ELEVENTH MOTION TO CONFIRM THE
SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF
CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES;
(2) MOTION TO APPROVE USE OF PROCEEDS FROM SALES
OF RECEIVERSHIP PROPERTY**

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by that certain Order Appointing Receiver entered on August 17, 2018 (Dkt. No. 16), as supplemented by that certain Order entered March 14, 2019 (Dkt. No. 290) and that certain Order entered February 21, 2020 (Dkt. No. 634), respectfully moves (i) for confirmation of the sale of 7237-43 South Bennett Avenue and for the avoidance of certain mortgages, liens, claims, and encumbrances (pp. 2-10); and (ii) for Court approval to use a portion of the proceeds from the sales of certain properties to pay third-parties obligations relating to those properties (pp. 11-17).

The Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested parties of which he is currently aware by electronic mail, to the extent he possesses an e-mail address, or by regular mail if he possesses a mailing address but no e-mail address. The Receiver will use information obtained from EquityBuild's records, as well as communications received during the course of the Receivership, to ensure that contact information is as complete as reasonably possible. A copy of this consolidated motion will also be posted on the Receiver's webpage at *http://rdaplaw.net/receivership-for-equitybuild*.

### I. ELEVENTH MOTION TO CONFIRM THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES

1. The Receiver respectfully moves for approval of the sale of the residential apartment building located at 7237-43 South Bennett Avenue, Chicago, Illinois 60649 ("<u>7237-43 South Bennett</u>") and for the avoidance of certain mortgages, liens, claims, and encumbrances.

2. To the extent that this motion makes reference to "secured" interests or "released" mortgages, those references are descriptive only and not intended as representations that the subject security instruments have been conclusively determined "secured" or "released." This motion takes no position with respect to the validity or priority of any encumbrance referenced herein, and the order in which any encumbrances are enumerated in the paragraphs that follow should not be construed as a finding or opinion regarding such issues.

***This Court Authorized The Receiver To Sell Assets Owned By The Receivership Defendants.***

3. The United States Securities and Exchange Commission filed this case against EquityBuild, EquityBuild Finance, Jerome Cohen, and Shaun Cohen alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C.

§78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a).

4. In its August 17, 2018 Order Appointing Receiver (Dkt. No. 16), the Court assumed exclusive jurisdiction over, and possession of, the assets of the Receivership Defendants.

5. In the Order Appointing Receiver, the Court conferred upon the Receiver (1) "all powers, authorities, rights and privileges" theretofore possessed by the principals of the Receivership Defendants under applicable state and federal law, as well as by the governing operating and shareholders' agreements, and (2) all powers and authority of a receiver at equity, as well as all powers conferred upon a receiver under 28 U.S.C. §§ 754, 959, and 1692, and FRCP 66. (Dkt. No. 16, ¶ 4)

6. The Court further authorized the Receiver to "take all necessary and reasonable actions to cause the sale" of "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (*Id.*)

***The Receiver Will Provide Fair, Adequate, And Sufficient Notice Of This Motion To All Interested Parties.***

7. In addition to service through the Court's electronic case filing system, the Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested parties of which he is currently aware by electronic mail (to the extent he possesses an e-mail address) or by regular mail if he possesses a mailing address but no e-mail address.

8. The Receiver will use information obtained from EquityBuild's records, as well as communications received during the course of the Receivership, to ensure that contact information is as complete as reasonably possible.

3

9. A copy of this motion will also be posted on the Receiver's webpage at http://rdaplaw.net/receivership-for-equitybuild.

***The Court Should Confirm The Public Sale Of A Multifamily Apartment Building In Chicago, Illinois Pursuant To 28 U.S.C. § 2002.***

10. On April 18, 2018, the Receiver filed a Fourth Motion For Court Approval Of The Process For Public Sale Of Real Property By Sealed Bid (the "Fourth Motion"), and 7237-43 South Bennett was included within the scope of that motion. (Dkt. No. 327)

11. The Fourth Motion was granted by Order dated May 21, 2019 (Dkt. No. 378), subject, among other things, to the rights of lenders to credit bid for the properties securing their loans, provided they post a letter of credit in the amount of the bid if the Receiver identifies a *bona fide* dispute regarding the validity or priority of their security.

12. Pursuant to 28 U.S.C. § 2002, a public sale of realty may be made by notice published "once a week for four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state or judicial district of the United States wherein the realty is situated."

13. Notice of the public sale of 7237-43 South Bennett was published in the Chicago Sun-Times on June 5, June 12, June 19, and June 26, 2019 and in the Chicago Daily Law Bulletin on June 6, June 12, June 19, and June 26, 2019. (*See* Certificates of Publication, Exhibit 1)

14. The Receiver, acting upon the advice of his real estate brokers at SVN Chicago Commercial LLC ("SVN Chicago"), as well his own retained professionals, asked $700,000 for 7237-43 South Bennett.

15. After the property was toured by 21 interested parties, offers were submitted by seven prospective purchasers.

16. The Receiver then solicited, through SVN Chicago, best and final bids from the most competitive bidders, after which he accepted an offer in the amount of $840,000 from Oppelli LLC, an offer that was not subject to a financing contingency. (A true and accurate copy of the Purchase and Sale Agreement is attached at Exhibit 2)

17. The Receiver was impeded in his effort to move for prompt confirmation of the sale, however, because Paper Street Realty LLC ("Paper Street") refused to execute a property manager's lien waiver (needed to convey insurable title) unless the Receiver first agreed to pay the claims of its affiliate, Rent Ready Apartments, for pre-appointment construction work performed at the property, as evidenced by the proof of claim attached at Exhibit 3.

18. The Receiver was unwilling to prioritize and pay Paper Street's unsecured pre-appointment claims to the detriment of the secured creditors and was therefore unable to secure a property manager's lien waiver, which, by extension, meant that the Receiver was unable to convey insurable title to <u>7237-43 South Bennett</u> as required by the Purchase and Sale Agreement.

19. Efforts to resolve the dispute without judicial intervention were unsuccessful.

20. Meanwhile, during the week of September 7, 2020, the prospective purchaser toured the property and discovered that several dwelling units had sustained severe water damage caused by radiators that leaked after the boilers were activated during the previous winter – damage that did not exist at the time of the original property tour.

21. Accordingly, the prospective purchaser demanded a $40,000 closing credit for radiator replacements, new flooring, and drywall and plaster repairs on as many as 22 ceilings.

22. Estimates for repairs subsequently obtained by the Receiver ranged from $40,350 to $76,350.

23. To resolve the matter and allow the sale to proceed, and in an effort to find the most cost effective result, the Receiver subsequently agreed to extend, and the prospective purchaser accepted, a $20,000 closing credit in connection with the water damage, subject to Court approval.

24. Title to 7237-43 South Bennett is vested in EquityBuild, Inc. and clouded by the following encumbrance of record:

    a. That certain Mortgage dated November 18, 2016, and recorded January 13, 2017 as Document No. 1701318126 made by EquityBuild, Inc. in favor of Pat Desantis, as to an undivided 5.13% interest; Wealth Builders 1, LLC, as to an undivided 2.56% interest; Bill Akins, as to an undivided 1.79% interest; Carolyn W. Wagnon, as to an undivided 0.77% interest; Vladimir Matviishin, doing business as Network Expert, as to an undivided 2.56% interest; Influx Investments, LLC, as to an undivided 2.56% interest; JDSKPS LLC, as to an undivided 7.69% interest; John Bloxham, as to an undivided 2.56% interest; iPlanGroup Agent for Custodian FBO Paula Levand IRA, as to an undivided 2.31% interest; Weeks Property Solutions 401(k) Plan, as to an undivided 2.56% interest; Duane Young, as to an undivided 1.54% interest; Alton P. Motes & Vicki Elaine Washburn JTWROS, as to an undivided 1.79% interest; Scott H. Eaton, as to an undivided 2.56% interest; iPlanGroup Agent for Custodian FBO William Jack Needham IRA Account #3300944, as to an undivided 1.79% interest; Shelton Family Trust, as to an undivided 0.77% interest; iPlanGroup Agent for Custodian FBO Jacqueline C. Rowe IRA, as to an undivided 3.08% interest; Teton Equity Group, LLC, as to an undivided 5.13% interest; CAMA SDIRA, LLC FBO Bill Akins IRA, as to an undivided 5.13% interest; Coleman Scheuller, as to an undivided 2.05% interest; Vartan Tarachyan, Trustee for defined Benefits Pension Plan and 401K Plan, as to an undivided 1.03% interest; iPlanGroup Agent

for Custodian FBO Jason Burke Ragan IRA Account # 3300445 1.31% interest; Paul S. Scribner Revocable Trust dated, May 15, 2003, as to an undivided 2.56% interest; Larry J. Eggenberger, as to an undivided 2.56% interest; iPlanGroup Agent for Custodian FBO James Sullivan IRA, as to an undivided 1.54% interest; iPlanGroup Agent for Custodian FBO Ed Bancroft IRA Acct. No. 3320329, as to an undivided 0.67% interest; John and Cynthia Braden, as to an undivided 2.56% interest; Optima Property Solutions, LLC, as to an undivided 3.33% interest; Annie Chang, as to an undivided 0.41% interest; Steven Bald, as to an undivided 3.08% interest; Hang Zhou and Lu Dong, as to an undivided 2.56% interest; Quest IRA Inc. FBO Francis Webb IRA #1437711, as to an undivided 0.62% interest; Wisemove Properties, LLC, as to an undivided 10.26% interest; Rita Aken, as to an undivided 1.28% interest; iPlanGroup Agent for Custodian FBO 3300593 IRA, as to an undivided 0.04% interest; iPlanGroup Agent for Custodian FBO 3320834, Roth IRA, as to an undivided .55% interest; Quest IRA Inc. FBO Mona Leonard Roth IRA #26920-21, as to an undivided 10.26% interest; James Sullivan, as to an undivided 1.03% interest; EquityBuild, Inc., as to an undivided 0.0001% interest, to secure a note in the originally stated principal amount of $1,950,000.00, and to the terms and conditions thereof.

25. Paragraphs 32 and 33 of the Order Appointing Receiver prohibit the filing or prosecution of any civil proceedings against the Receiver or any Receivership properties, and thus operate as an automatic stay of any claim for work performed by the property manager at or for the benefit of 7237-43 South Bennett at the request of EquityBuild or the Receiver.

26. In the bankruptcy context, efforts to convert an unsecured prepetition claim into a secured claim by perfecting a lien against property of the estate have been interpreted as acts that

7

violate an automatic stay. *See, e.g., Redmond v. Fifth Third Bank,* 624 F. 3d 793, 800 (7th Cir. 2010).

27. By refusing to deliver a post-appointment property manager's lien waiver unless the Receiver prioritizes and pays its unsecured pre-appointment claims, Paper Street has already violated the automatic stay and the Order Appointing Receiver, and, moreover, any attempt to record a lien for post-appointment property management fees would also run afoul of the automatic stay. *See, e.g., In re Grede Foundries, Inc.,* 651 F. 3d 786, 790-91 (7th Cir. 2011); *see* Order Appointing Receiver, Dkt. No. 16, ¶ 17(B) (persons with notice of the Order Appointing Receiver are prohibited from "exercise[ing] any form of set-off, alleged set-off, lien, or any form of self-help whatsoever"); *see also id.* ¶ 29(A)&(C) (persons with notice of the Order Appointing Receiver are prohibited from "creating or enforcing a lien upon any Receivership Assets" and from enforcing a claim against any Receivership Assets or attempting to accelerate any indebtedness affecting any Receivership Asset).

28. Nonetheless, the company that the Receiver has engaged to insure title to <u>7237-43 South Bennett</u> will not delete from its title commitment a special exception for property management liens that may be recorded subsequent to the closing, absent an order of this Court expressly authorizing the Receiver to convey the property free and clear of any such liens.

29. Amounts due to Paper Street associated with post-receivership services have been or will be paid to Paper Street at or prior to the closing, and amounts for pre-receivership services for which Paper Street or Rent Ready Apartments have submitted a claim may still be adjudicated within the claims process.

30. Accordingly, the Receiver respectfully requests that the Court confirm the sale of <u>7237-43 South Bennett</u> through an order authorizing the sale of the property free and clear of any

lien recorded or asserted by Paper Street in connection with work performed or allegedly performed at or for the benefit of the property at the request of EquityBuild.

***The Receiver Will Pay Certain Transaction Costs Associated With The Conveyance Of 7237 South Bennett.***

31. At the closing of the sale of 7237-43 South Bennett, certain costs and expenses will be paid from the sale proceeds, including, but not limited to (1) the cost of a survey, (2) the premiums associated with the delivery of policies of owner's title insurance, (3) the cost of state, local, and municipal transfer taxes, (4) the closing (or escrow) fee assessed by the title company, and (5) a series of ancillary and customary charges relating to, among other things, the need to procure a full payment water certificate from the City of Chicago, the Receiver's obligation to deliver ALTA commercial extended title insurance coverage, closing protection coverage, wire transfer fees (associated with the transfer of sales proceeds to a receivership bank account), expediting fees, a gap risk update, and state regulatory fees.

32. To convey clear title to the property, the Receiver will also be required to (1) pay all past due or currently pending water charges and delinquent Cook County property taxes, (2) extend credits in connection with prospective 2020 (and potentially 2021) Cook County property tax liability, and (3) pay a sales commission to SVN Chicago equal to 4.5% of the first $1,000,000 in sales price, or $33,600.

33. Finally, Andrew E. Porter, an attorney for the Receiver, serves as an agent for the title company through which the sale of 7237-43 South Bennett will close and will therefore receive an agency fee in the amount of $2,444.00 for the title examination work performed in connection with the proposed conveyance, subject to increase if the buyer's acquisition lender requires one or more title insurance endorsements.

34. The Receiver intends to reduce the fee application ultimately submitted to the Court in connection with the corresponding asset disposition work in an amount equal to the agency fee being paid to Mr. Porter.

***The Receiver Will Segregate And Hold The Sales Proceeds In Separate Sub-Accounts.***

35. Pending the completion of the claims process and a to-be-approved distribution plan, the proceeds from the sale of 7237-43 South Bennett will be held in a separate subaccount established by the Receiver (and for which the Receiver will maintain an accounting as to all sums deposited therein) and will not be available to pay operating expenses of the Receivership, absent further order of Court. The inclusion of such amounts in a separate subaccount does not constitute an admission that any or all such amounts are subject to a valid security interest. The actual amount of sales proceeds in the subaccount to which the parties claiming the secured interest are entitled will be subject to determination through the claims process. The Receiver reserves all rights to seek a transfer of any such proceeds to the Receiver's operating account by subsequent Order of the Court.

WHEREFORE, the Receiver respectfully requests that this Court grant the Eleventh Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances by entering an order in the form attached at Exhibit 12 approving the sales of 7237-43 South Bennett free and clear of the mortgages, liens, claims, and encumbrances identified herein, and with all such mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the property prior to the sale.

## II. MOTION TO APPROVE USE OF PROCEEDS FROM SALES OF RECEIVERSHIP PROPERTY

36. The Receiver hereby moves for the Court's approval to use a portion of the segregated proceeds from the sale of receivership properties to satisfy the following indebtedness:

- to use a portion of the proceeds from the sales the properties located at (1) 7749 S Yates, (2) 8201 S Kingston, (3) 8047-55 S Manistee, and (4) 7051 S Bennett in order to pay outstanding accounts payable balances to the prior manager of those properties, WPD Management;

- to use a portion of the proceeds from the sale of the property located at 431 E 42nd Place to pay a $660 judgment entered by the City of Chicago Department of Administrative Proceedings; and

- to use a portion of the proceeds from the sale of 4520 S. Drexel to pay an insurance deductible in the amount of $25,000.

In support of his motion, Receiver states as follows:

***The Receiver Seeks Approval To Pay Property Manager, WPD Management, the Accounts Payable Balance on Certain Sold Properties***

*7749 S. Yates*

37. On April 18, 2019, the Receiver sought judicial approval to market and sell the real property and improvements located at 7749-59 S. Yates, Chicago, Illinois 60649 (the "Yates Property") (Dkt. No. 329), and the Court granted that motion on May 22, 2019 (Dkt. No. 3382).

38. The Receiver accepted a purchase and sale contract for the conveyance of the Yates Property on October 17, 2019, and moved to confirm the prospective sale on January 24, 2020 (Dkt. No. 618).

39. The Court granted the motion to confirm the sale on February 21, 2020 (Dkt. No. 632), and the Receiver closed on its conveyance of the Yates Property on April 22, 2020, with net sales proceeds of $785,629.17 thereafter deposited into a property-specific account.

40. WPD Maintenance advanced $16,000 to the Yates Property to provide funds for the upkeep of the property that has not been reimbursed. Funds spent on the upkeep of this property

11

included an administrative hearing fine, pest control, janitorial expense, maintenance repair (gas line), and refuse collection, electric and gas. Post-closing utility refunds served to reduce the balance owed. **(***See* Yates Property Financial Statement, Exhibit 4**)** Following post-sale reconciliation of the $5,947.32 balance in the property manager's reserve for the Yates Property (*id.*), the property manager is still owed a balance of $10,052.68.

41. The current balance (as of November 30, 2020) of the account established to hold the proceeds from the sale of the Yates property is $647,278.56.

*8201 S Kingston*

42. On April 18, 2019, the Receiver sought judicial approval to market and sell the real property and improvements located at 8201 S Kingston, Chicago, Illinois 60617 (the "Kingston Property") (Dkt. No. 329), and the Court granted that motion on May 22, 2019 (Dkt. No. 382).

43. The Receiver accepted a purchase and sale contract for the conveyance of the Kingston Property on October 14, 2019, and moved to confirm the prospective sale on January 24, 2020 (Dkt. No. 618).

44. The Court granted the motion to confirm the sale on April 1, 2020 (Dkt. No. 680), and the Receiver closed on its conveyance of the Kingston Property on May 21, 2020, with net sales proceeds of $313,377.74 thereafter deposited into a property-specific account.

45. WPD Maintenance advanced $7,000 to the Kingston Property account to provide funds for the upkeep of the property that has not been reimbursed. Funds spent on the upkeep of this property included janitorial, gas, electric, property management fees, landscaping, pest control and refuse collection. . (See Kingston Property Financial Statement, Exhibit 5) Following post-sale reconciliation of the $2,072.86 balance in the property manager's reserves account for the Kingston Property (*id.*), the property manager is still owed a balance of $4,927.14.

46. The current balance (as of November 30, 2020) of the account established to hold the proceeds from the sale of the Kingston property is $279,089.79.

*8047 S Manistee*

47. On April 18, 2019, the Receiver sought judicial approval to market and sell the real property and improvements located at 8047 S Manistee, Chicago, Illinois 60617 (the "Manistee Property") (Dkt. No. 325), and the Court granted that motion on May 21, 2019 (Dkt. No. 378).

48. The Receiver accepted a purchase and sale contract for the conveyance of the Manistee Property on July 1, 2019, and moved to confirm the prospective sale on November 18, 2019 (Dkt. No. 579).

49. The Court granted the motion to confirm the sale on January 17, 2020 (Dkt. No. 616), and the Receiver closed on its conveyance of the Manistee Property on February 5, 2020, with net sales proceeds of $867,858.48 thereafter deposited into a property-specific account.

50. WPD Maintenance advanced $3,000 to the Manistee Property to provide funds for the upkeep of the property that has not been reimbursed.[1] Funds spent on the upkeep of this property included maintenance/repair (door and intercom), eviction fees, janitorial, security service, gas and electricity. . **(***See* Manistee Property Financial Statement, Exhibit 6**)** The amount reimbursable to the property manager for the Manistee Property is $3,000.

51. The current balance (as of November 30, 2020) of the account established to hold the proceeds from the sale of the Manistee property is $806,616.99.

---

[1] The property manager distributed $1,179.87 to the Receiver in June, 2020 without realizing there was a $3,000 AP balance on the account. Those funds are held in the Receiver's account for this property. See Dkt. No. 757, Ex. 3.

*7051 S Bennett*

52. On January 24, 2020, the Receiver sought judicial approval to market and sell the real property and improvements located at 7051 S Bennett Avenue, Chicago, Illinois 60649 (the "Bennett Property") (Dkt. No. 618), and the Court granted that motion in relevant part on April 1, 2020 (Dkt. No. 681).

53. The Receiver accepted a purchase and sale contract for the conveyance of the Bennett Property on June 19, 2020, and moved to confirm the prospective sale on July 24, 2020 (Dkt. No. 749).

54. The Court granted the motion to confirm the sale on September 14, 2020 (Dkt. No. 802, amended), and the Receiver closed on its conveyance of the Bennett Property on September 23, 2020, with net sales proceeds of $482,797.05 thereafter deposited into a property-specific account.

55. WPD Maintenance advanced $3,000 to the Manistee Property to provide funds for the upkeep of the property that has not been reimbursed.[2] Funds spent on the upkeep of this property included maintenance/repair (door and intercom), eviction fees, janitorial, security service, gas and electricity. . (*See* Manistee Property Financial Statement, Exhibit 7**)** Following post-sale reconciliation of the $5,947.32 balance in the property manager's reserve for the Bennett Property (*id.*), the property manager is owed a balance of $8,690.47.

56. The current balance (as of November 30, 2020) of the account established to hold the proceeds from the sale of the Bennett Property is $482,929.34

---

[2] The property manager distributed $1,179.87 to the Receiver in June, 2020 without realizing there was a $3,000 AP balance on the account. Those funds are held in the Receiver's account for this property. See Dkt. No. 757, Ex. 3.

***The Receiver Seeks Approval To Pay Municipal Judgment from the Subaccount Holding the Proceeds from the Sale of 431 E. 42nd Place.***

57. On October 30, 2020, this Court granted the Receiver's motion to confirm the sale of the Receivership property located at 431 E 42nd Place (Dkt. No. 842). The Receiver closed the conveyance of that property on November 5, 2020 and $59,375.71 net sales proceeds were thereafter transferred to the separate property-specific subaccount established by the Receiver. Pursuant to the Court's order, the funds in that account shall not be available to pay for any expense or distribution absent order of the Court. Id. ¶ 9.

58. In or about July, 2019, the City of Chicago Department of Streets and Sanitation issued three notices of ordinance violations and hearings regarding municipal code violation citations against the vacant lot located at 431 E. 42nd Place, Chicago, Illinois. The Receiver was not served with the violation notices, nor did he otherwise become aware of the violations before the date that they were scheduled for administrative hearings.

59. On September 26, 2019, the City of Chicago Department of Administrative Hearings entered judgments of default in the following amounts, inclusive of costs: (a) in Case No. 19DS51017L in the amount of $1,240.00, (b) in Case No. 19DS51095L in the amount of $1,840.00, and (c) in Case No. 19DS151120L in the amount of $1,840.00. (See Group Exhibit 8 hereto)

60. After entering a contract for the sale of the property located at 431 E. 42nd Place, the Receiver became aware of and moved to set aside the orders of default. The Department of Administrative Hearings for the City of Chicago set a hearing on Receiver's motion on November 20, 2020, which was after the closing of the sale of the property on November 5, 2020. Following the property's sale, the Receiver was able to negotiate a resolution with the City whereby the motion to set aside the three default judgments was granted, a penalty in the amount of $600.00

plus $60.00 administrative costs was assessed in Case No. 19DS51095L, and the other two cases were nonsuited. (See 11/18/20 Judgment orders attached as Group Exhibit 9)

61. Wherefore, the Receiver requests approval to pay this $660.00 municipal judgment from segregated subaccount holding proceeds from the sale of 431 E 42nd Place. The current balance (as of November 30, 2020) of that account is $59,375.71.

***The Receiver Seeks Approval To Pay An Insurance Deductible from the Subaccount Holding the Proceeds from the Sale of 4520 S. Drexel Avenue***

62. On May 2, 2019, this Court granted the Receiver's motion to confirm the sale of the Receivership property located at 4520 S Drexel Ave. (Dkt. No. 351). The Receiver closed the conveyance of that property on May 21, 2020 and $5,814,278.91 net sales proceeds were thereafter transferred to the separate property-specific subaccount established by the Receiver.

63. On or about August 7, 2019, the Receiver received notice that property manager WPD Management had been served with a claim and notice of attorney's lien with respect to an alleged injury that a tenant of 4520 S. Drexel Avenue had allegedly sustained at the property. (Exhibit 10)

64. A claim was submitted on the property's insurance policy maintained by Receiver, which covers the defense of claims against property managers acting on behalf of the Receiver.

65. On or about September 2, 2020, the insurance company notified the Receiver that it had settled the claim and paid the settlement, resulting in a $25,000.00 deductible payment owed by the Estate. **(**Exhibit 11**)**

WHEREFORE, the Receiver respectfully requests that this Court grant his Motion To Approve Use Of Proceeds From Sale Of Receivership Property, and enter an order in the form attached as Exhibit 13 authorizing the Receiver to withdraw funds from the following segregated subaccounts for the following purposes: (1) in the amount of $10,052.68 from the Yates Property

account to pay the outstanding accounts payable to property manager WPD Management, (2) in the amount of $4,927.14 from the Kingston Property account to pay the outstanding accounts payable to property manager WPD Management, (3) in the amount of $3,000 from the Manistee Property account to pay the outstanding accounts payable to property manager WPD Management, (4) $8,690.47 from the Bennett property account to pay the outstanding accounts payable to property manager WPD Management; (5) in the amount of $660.00 from the 431 E 42nd Place account to pay the outstanding administrative judgment entered in Dkt. No. 19DS51095L; and (6) in the amount of $25,000.00 from the Drexel Property account to pay the insurance deductible to Cincinnati Insurance Company.

Dated:  December 14, 2020                     Kevin B. Duff, Receiver

                                                By:     /s/ Michael Rachlis
                                                          Michael Rachlis
                                                          Jodi Rosen Wine
                                                          Rachlis Duff & Peel LLC
                                                          542 South Dearborn Street, Suite 900
                                                          Chicago, IL 60605
                                                          Phone (312) 733-3950
                                                          *mrachlis@rdaplaw.net*