# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,        ) ) ) Plaintiff,   ) ) v.        ) ) EQUITYBUILD, INC., EQUITY FINANCE, LLC, JEROME H. COHEN and SHAUN COHEN,        ) ) ) ) Defendants.   ) | Case No. 18 CV 5587 |

<u>**AFFIDAVIT OF MICHAEL ABRAHAM**</u>

The Affiant, Michael Abraham, being first duly sworn under oath, hereby deposes and states that, if called to testify, he could competently testify as follows:

1.    My name is Michael Abraham. I am a manager of Paper Street Realty, LLC, which provides various services, including property management for multi-unit residential properties in and around Chicago.

2.    Paper Street has managed properties for EquityBuild, Inc., including the property located at 7237-43 South Bennett Avenue (the "Bennett Property") since November 2016.

3.    In early 2017, the City of Chicago issued notice of violations of the Municipal Code of the City of Chicago to EquityBuild for its various properties, including the Bennett Property. One of the administrative violation complaints is attached hereto as Exhibit 1.

4.    The City of Chicago also filed in the Circuit Court of Cook County, Illinois a complaint against EquityBuild alleging various code violations, case no 17 M1 400593.

5.    Paper Street also provides general contracting services using its assumed business name, Rent Ready Apartments ("Rent Ready"), for the rehab and repair of properties Paper Street

manages. Upon receipt of the City's violation notices, Paper Street provided an estimate, via Rent Ready, for the repairs to the entire roof, interior hallway on five tiers, and various masonry, plumbing and electrical violations on the Bennett Property. A copy of the Estimate is attached hereto as Exhibit 2.

6.     EquityBuild agreed to the estimate for the repairs and further requested that Paper Street perform the work necessary to rehab the units to bring the 7237-39 tier of the Bennett Property back into compliance with the city's municipal code.

7.     During the course of the City's lawsuit against EquityBuild, the City attorney advised that, given the dangerous conditions existing on the Bennett Property, if the repairs were not made, he would have requested that the building be vacated, or he would have sought the appointment of a receiver for EquityBuild to make the repairs.

8.     The agreement to perform the repairs on the common areas set forth above, as well as those for the 7237-39 tier of the Bennett Property allowed the tenants on the property to remain there, which continued to generate income for EquityBuild, and ultimately the Receiver appointed in this matter.

9.     Had the Bennett Property become completely vacant, based on our experience managing properties in this area, it is very likely the building would have been vandalized and the mechanicals, piping and wiring in the building would have been stripped, thereby causing significant damage and substantially reducing the value of the Bennett Property.

10.     The repairs done to the 7237-39 tier of the Bennett Property significantly improved the property, and it added value to it. Had Paper Street not performed the repairs, the entire Bennett Property likely would have fallen into further disrepair, which would have decreased the sales price for which the Bennett Property was sold.

11.     After appointment of the Receiver, Paper Street's counsel notified the Receiver's counsel of the ongoing work. The Receiver's counsel confirmed the Receiver's intent to continue to "operate the portfolio consistent with maximizing its value." A copy of the correspondence from Receiver's counsel is attached hereto as Exhibit 3.

12.     The inference was that Paper Street would be paid the sums due it, if it continued on as property manager for the Bennett Property. Had Paper Street known it would not be paid for the substantial work it did to maintain and improve the condition of the Property, it would have terminated it services immediately.

13.     Instead, Paper Street found tenants to rent, and continued to manage, the one tier of the Bennett Property that was not boarded up, even though such services generate little to no revenue for Paper Street.

14.     Since the Receiver has not authorized any work on the other tiers, the prior damage existing on those tiers has remained, and any further damage that occurred in those tiers was not the result of Paper Street's failure to maintain them.

15.     Paper Street has not had any issues with the Receiver with respect to payment for work provided on any of the other EquityBuild properties Paper Street manages, and has offered to reduce the sums owed for the Bennett Property, but the Receiver has refused to entertain such negotiations, other than to reject the outright.

Further sayeth naught.

Michael Abraham

Sworn to and subscribed before me
this _27th_ day of December 2020

Notary Public

"OFFICIAL SEAL"
JOSEPH R ZICCARDI
Notary Public, State of Illinois
My Commission Expires 10/29/2021

# EXHIBIT 1

Hansen Case ID: 515418

**Department of Buildings**

Judith Frydland, Commissioner
2045 West Washington Boulevard
Chicago, IL 60612

Address:

7237 - 7243 S BENNETT AVE CHICAGO IL 60649-

**Dept of Buildings NOV #** 517S0515418
**Case Group** TARGET

EQUITYBUILD,INC.
C/O IOANA SALAJANU

321 N CLARK ST
STE 2200
CHICAGO IL 60654

# Administrative Complaint

Date of Notice 03/30/2017

**YOU ARE HEREBY NOTIFIED THAT THE DEPARTMENT OF BUILDINGS HAS CITED THE ABOVE PROPERTY FOR ALLEGED VIOLATION(S) OF THE CHICAGO MUNICIPAL CODE. THE ALLEGED VIOLATIONS COULD BE SERIOUS AND THEREFORE MUST BE IMMEDIATELY CORRECTED.**

**THE DEPARTMENT CONSIDERS SUCH ALLEGED VIOLATIONS AS CONTINUING ON EACH SUCCEEDING DAY AFTER THE INSPECTION DATE, UNTIL EVIDENCE HAS BEEN BROUGHT TO THE DEPARTMENT SHOWING THAT SUCH VIOLATIONS HAVE BEEN PROPERLY CORRECTED, PURSUANT TO SATISFACTORY PLANS AND PERMITS, WHEN APPLICABLE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THESE VIOLATIONS, PLEASE FEEL FREE TO CALL THE AREA SUPERVISOR BETWEEN 9:30 AM AND 11:30 AM, AT THE PHONE NUMBER LISTED BELOW.**

**Inspection Number** 12171687

| Date of Inspection | Inspected By | | Supervisor ID | Supervisor Phone | Recommendation | CA | | Bureau |
|---|---|---|---|---|---|---|---|---|
| 1/31/2017 | 112464 | | BL00947 | (312)743-3513 | AH | 43 | | CONSERVATION |

**That on the inspection date and on each succeeding day thereafter and on numerous other occasions, the respondent(s) had an interest in the property as defined by 2-14-151 and failed to comply with the Municipal Code of the City of Chicago as follows:**

1   CN015012

Failed to equip exit door with door lock hardware which allows door to open without key or special knowledge from side of egress. (13-160-260(a), 15-4-370)

REAR GATE, - DOUBLE KEY CYLINDER, DOOR TO OPEN WITHOUT KEY OR SPECIAL KNOWLEDGE FROM SIDE OF EGRESS

Location:   OTHER  :  :                                                                        SEQ #: 001

2   CN104015

Replace broken, missing or defective window panes. (13-196-550 A)

1ST FLOOR WEST CORNER, - BROKEN WINDOW

Location:   OTHER  :  :                                                                        SEQ #: 002

3   CN061014

Failed to maintain the exterior walls of a building or structure free from holes, breaks, loose or rotting boards or timbers and any other conditions which might admit rain or dampness to the walls. (13-196-530(b), 13-196-641)

INSIDE COURT YARD PARAPET, - SOUTH CHIMNEY SPALLING BRICKS MISSING STONE CAPS, - MORTAR WASH OUT, -

Location:   OTHER  :  :                                                                        SEQ #: 003

4   CN197079

Install and maintain approved smoke detectors. (13-196-100 thru 13-196-160) Install a smoke detector in every dwelling unit. Install one on any living level with a habitable room or unenclosed heating plant, on the uppermost ceiling of enclosed porch stairwell, and within 15 feet of every sleeping room. Be sure the detector is at least 4 inches from the wall, 4 to 12 inches from the ceiling, and not above door or window.

1ST FLOOR APARTMENT, MISSING SMOKE DETECTORS

Location:   OTHER  :  :                                  SEQ #: 004

5   CN197079

Repair or replace defective or out of service smoke detectors and operate continuously. (13-196-130, 13-196-140)

3RD FLOOR TOP OD STAIRWELL, - SMOKE DETECTOR OUT OF SERVICE.

Location:   OTHER  :  :                                    SEQ #: 005

6   CN107015

Failed to provide and maintain adequate illumination for public hall and stairwell. (13-196-080, 13-196-450, 13-160-660, 13-160-670)

ALL THREE LEVELS, - CORRIDORS AND HALLWAYS, - PUBLIC ILLUMINATION OUT OF SERVICE.

Location:   OTHER  :  :                                    SEQ #: 006

7   CN070024

Failed to repair or replace defective or missing members of porch system. (13-196-570, 13-196-641)

REAR PORCH, - GUARD IS LESS THEN 42" IN HEIGHT, - MISSING PICKETS AT 2ND AND 3RD FLOORS, - INCOMPLETE INSPECTION DONE FROM ALLEY. PERMIT IS REQUIRED TO REPAIR PORCH.

Location:   OTHER  :  :                                    SEQ #: 007

8   CN015062

Failed to remove obstruction from exitway that hampers travel and evacuation. (13-160-070, 13-196-080)

REAR PORCH, - REMOVE GRILLS AND GARBAGE CANS OBSTRUCTING EGRESS IN CASE OF AN EMERGENCY.

Location:   OTHER  :  :                                    SEQ #: 008

9   CN106015

Failed to maintain interior stairway system in safe condition and sound repair. (13-196-570)

AT 2ND FLOOR STAIRS, - STAIR IS LEANING, OUT OF PLUMB, - RISERS ARE WEAK, TREADS ARE LOOSE, DANGEROUS AND HAZARDOUS FOR ELDERY ADULTS AND CHILDREN, PERMIT TO REPAIR INTERIOR STAIR.

Location:   OTHER  :  :                                    SEQ #: 009

10   CN136026

Exterminate insects and keep dwelling insect-free. (13-196-630 C)

BED BUGS AS OBSERVED ON APARTMENTS 2C AND 3B, - PROPERTY MUST BE EFFECTIVELY TREATED TO EXTERMINATE BED BUGS THROUGHOUT, BY EMPLOYING AN EXPERIENCE EXTERMINATOR IN ABATEMENT OF BED BUG INFESTATION. BUILDING DEPARTMENT WILL NOT CONSIDER THIS VIOLATION COMPLIED WITHOUT PROOF OF SAID EXTERMINATION.

Location:   OTHER  :  :                                    SEQ #: 010

Failed to maintain interior ceilings and walls reasonably smooth, clean and tight and free from chipped or loose plaster or structural material.  (13-196-540(d) and (e))

1ST FLOOR SIDE ENTRANCE, CEILING IS FALLING APART, MISSING LARGE PIECES.

Location:    OTHER  :  :                                                                                                    SEQ #: 011

**End of Violations**

**\*\*\*  SMOKE DETECTORS ARE REQUIRED BY LAW IN ALL DWELLING UNITS.  THEY ARE A MATTER OF LIFE AND DEATH.
FAILURE TO INSTALL WILL RESULT IN SERIOUS PENALTIES.  \*\*\***

**When applying for a permit, bring this notice with you to the Department of Buildings ("DOB"), located at City Hall, 9th Floor, 121 North LaSalle Street.  Visit the Department of Building's website at www.cityofchicago.org/dcap. Contact DOB for information regarding obtaining a permit.**

**\*\*\* BRING THIS ADMINISTRATIVE COMPLAINT AND THE NOTICE OF VIOLATION AND SUMMONS WITH YOU WHEN ATTENDING THE HEARING. \*\*\***

# EXHIBIT 2



**ESTIMATE**

3/22/2017 (revised)

| **Prepared For:** | **Property Address:** | **Property Type:** |
|---|---|---|
| **Name:** Michael Abraham<br>**Company:** Paper Street | 7237-43 S Bennett<br>Chicago, IL | Residential – Multi-Unit |

**Scope of Work (SOW):**

| Description | Cost |
|---|---|
| **Roofing/Tuckpoint** | |
| Per violation 4, 12, 13, 14, 15 – Tuckpoint building. | **$30,200** |
| Tear off existing flat roof on building and replace with new | **$65,600** |
| **Stair Systems** | |
| Per violation 6 – Install (16) handrails | **$3,800** |
| Replace stair case (6-step run) leading to 1st floor apartments in 7241.<br>Replace staircase (6-step run) leading to 2nd floor apartments in 7237 and 7239<br>Per violation 7 – Reinforce approx. (21) stair treads throughout all entrances/stairway | **$9,800** |
| Per violation 5 – Repair walls in stairwell | **$1,800** |
| **Rough Carpentry** | |
| Repair rotted framing in basement in south half of building | **$2,800** |
| **Plumbing** | |
| Replace (1) 100 gallon heating unit and (1) 100 gallon storage tank | **$15,225** |
| Rod waste lines | **$600** |
| **Misc.** | |
| Replace carpet in stairways at 7237-7243 | **$12,000** |
| Brake up and re-pour damaged concrete stairs | **$8,300** |
| | |
| Demolish (2) basement /garden units | **$8,000** |
| | |
| **Plans Permits Admin Expediting and Overhead** | **$7000** |
| | |
| | |

**Total: $165,125**

Scope includes labor and material, and is guaranteed to be as specified. All above work will be performed in a professional and workman like manner.

RESPECTFULLY SUBMITTED BY: *Michael Abraham*  DATE 3/22/2017

OWNERS SIGNATURE: _____ DATE_____

# EXHIBIT 3

# Rachlis Duff Adler Peel & Kaplan, LLC

542 SOUTH DEARBORN STREET, SUITE 900
CHICAGO, ILLINOIS 60605
(312) 733-3950 T
(312) 733-3952 F

Andrew Eliot Porter
Of Counsel

August 22, 2018

**By E-Mail/.pdf**
Andrew Staes, Esq.
Staes & Scallan
53 West Jackson Boulevard, Suite 560
Chicago, Illinois 60604
*andrewstaes@staesandscallan.com*

Re:    *United States Securities and Exchange Commission v. EquityBuild, Inc.,*
*Equity Build Finance, LLC, Jerome H. Cohen, and Shaun Cohen,* United
States District Court, Northern District of Illinois, Case No. 1:18-cv-05587.

Dear Mr. Staes:

As we discussed late this afternoon, the federal equity receiver has received your letter regarding the conditions under which Paper Street is willing to continue serving as property manager. Although the receivership cannot meet all of your client's demands at this time, we strongly encourage Paper Street to continue managing the EquityBuild properties as a going concern while we continue to gain a better understanding of the receivership's finances.

Accordingly, notwithstanding anything to the contrary in the Order Appointing Receiver, or in any prior instruction communicated by the receiver, Paper Street is authorized to pay all routine operating expenses associated with the management of the properties, including leasing commissions, work orders, turnover repairs, utilities, evictions, credit checks, landscaping, and all other costs of a non-capital nature. In addition, Paper Street may continue to pay itself management fees incurred after the appointment of the receiver (*i.e.,* August 17, 2018) at the contractually-agreed upon rate and at the appropriate times. As I said, the receivership's present intention is to continue operating the portfolio consistent with maximizing its value, but without committing to substantial capital expenditures unless and until express written authorization is provided by the receiver.

We acknowledge that the asset freeze leaves Paper Street with a substantial accounts receivable balance relating to work performed or services provided prior to the appointment of the receiver, and we understand your client's demand that the payment of these receivables may soon be a condition for its continued service as

Andrew Staes, Esq.
August 22, 2018
Page 2 of 2

property manager. At this particular moment, however, the receiver is treating the outstanding receivable as something akin to a "pre-petition claim." Indeed, rather than Paper Street abruptly resigning on August 24, we would appreciate assurances that it will continue serving as property manager unless and until the receivership terminates the relationship. While the receivership will not *compel* Paper Street to continue serving as property manager, it _will_ invoke Article VIII of the Order Appointing Receiver to stay any collection proceedings filed against the receivership estate.

Very truly yours,

**EquityBuild Receiver**

By: _____
Andrew Eliot Porter