**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** )  ) ) ) | |
| **Plaintiff,** ) | **Civil Action No. 18-cv-5587** |
| ) | |
| **v.** ) | **Hon. John Z. Lee** |
| ) | |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** ) ) ) ) | **Magistrate Judge Young B. Kim** |
| ) | |
| **Defendants.** ) ) | |

**RECEIVER'S REPLY IN SUPPORT OF HIS NINTH INTERIM APPLICATION AND**
**MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES**
**OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Certain institutional lenders have objected (Dkt. No. 907) to the Receiver's ninth fee application (Dkt. No. 885), for services between July 1, 2020 and September 30, 2020. The latest objections repeat many of the objections to the Receiver's earlier fee applications, which have already been overruled. (Dkt. Nos. 541, 546, 547, 614, 710 & 824) The Court has repeatedly determined:

- "there is a significant need for the Receivership Assets to be managed by a neutral party until an orderly claims process is concluded;"

- "the receiver's efforts have benefitted and will benefit the Receivership Estate;"

- "the Receiver and his legal professionals have devoted significant resources responding to various motions, objections, and inquiries made by lenders, with these efforts increasing the amount of fees the Receiver is reasonably entitled to;" and

- the efforts of the Receiver and his legal professionals "have been delayed in part by time spent responding to various motions and objections made by the lenders."

(*E.g.,* Dkt. No. 614, at 3; Dkt. No. 824, at 3-5) The objectors provide no basis (and there is none) for the Court's prior decision to overrule those objections to change.

The objections also sidestep the fact that during the period at issue in the petition, the Receiver undertook significant work for the benefit of the Estate and the claimants, including but not limited to further development of the claims process, preserving and maintaining the properties in the Estate, and conveying properties through public sale auctions in order to preserve their sale proceeds for eventual distribution. (*See, e.g.,* Dkt. Nos. 757 (at 2-10, 12, 17-22), 790, 791, 798, 799, 805, 807, 839, 917; *see also* Dkt. Nos. 749, 790, 809)[1]  Consistent with his role as receiver and the duties he has been ordered to perform by the Court, the Receiver and his retained professionals have worked diligently to present and implement a fair and equitable process for resolving the claims being legitimately asserted by hundreds of competing interested parties.

Relatedly, the objectors continue to refuse to acknowledge that the work that the Receiver has undertaken to preserve, manage, and sell a portfolio of more than a hundred real estate properties has been performed to maximize the value of those assets for the benefit of the claimants who may ultimately realize those values.  They address only their own interests and eschew any notion that the claims process must accommodate and protect the interests of all competing claimants.

The objectors also fail to acknowledge or address the fact that, by elongating the claims process and repeatedly delaying the disposition of assets, they have exponentially increased and

---

[1] Although some docket references relate to items that were filed after the third quarter (*e.g.,* Dkt. Nos. 807, 809, 917), they involved work performed during the period that is the subject of this fee application.

2

continue to increase the professional fees and carrying costs for the properties. They ignore and do not acknowledge that there are disputes over the assets, including with respect to legitimacy of certain claims, priority of claims, and amounts of claims. They ignore the Receiver's considerable efforts to implement and report on a process that benefits all claimants, including institutional lender claimants, providing a full and fair opportunity to assert their claims. (*See* Dkt. Nos. 638 (at 24-25), 693, 698, 720, 745, 757, 798, 799, 805, 807, 839) And they fail to recognize that the Court has approved the Receiver's efforts in this regard, consistently, and has found that the Receiver's efforts have benefited the Estate and the claimants. (*E.g.,* Dkt. Nos. 614 (at 3), 710 (at 3) & 824 (at 4-5))

Under the applicable standards, the Receiver's ninth fee petition should be granted.

## LEGAL STANDARD

The Court has identified the applicable law in connection with prior fee applications:

> In securities law receiverships, . . . the awarding of fees rests in the district judge's discretion, which will not be disturbed unless he has abused it." *S.E.C. v. First Secs. Co. of Chicago*, 528 F.2d 449, 451 (7th Cir 1976). "[T]he court may consider all of the factors involved in a particular receivership in determining an appropriate fee." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). In making this determination, courts consider that the benefits provided by a receivership "may take more subtle forms than a bare increase in monetary value." *Id.* (quoting *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992)). Accordingly, "[e]ven though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation." *Id.* (quoting *Elliott*, 953 F. 2d at 1577). And courts also look to the position of the SEC, which is given "great weight" in determining whether fees should be awarded. *First Secs. Co.*, 528 F.2d at 451 (citation omitted).

(Dkt. Nos. 614 (at 2), 710 (at 2) & 824 (at 2))[2]  *See also SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) ("A receiver appointed by a court who reasonably and diligently discharges his

---

[2] The objectors again cite *In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995). (Dkt. No. 907, at 6) The Receiver references and incorporates by reference as though set forth herein his previous response addressing the benefits that the Receiver has brought and how *Taxman* is distinguishable. (*See* Dkt. No. 800, at 2; *see also, e.g.,* Dkt. No. 527, at 4-5 & n.2)

duties is entitled to be fairly compensated for services rendered and expenses incurred."); *Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934) (same); *Elliott*, 953 F.2d at 1577 (same).

In addition, the Court has broad discretion to determine the duties of the Receiver and the manner in which the costs of the estate will be paid. It is well-established that "the district court has authority to impose a lien on the property in a receivership to satisfy the receivership expenses." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). This is because a "[r]eceivership is an equitable remedy, and the district court may, in its discretion, determine who shall be charged with the costs of the receivership." *Id.* Moreover, "[a]s a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Id.* (citing *Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 375-76 (1908)). "The costs and expenses of a receivership are primarily those incurred by the court in performing its duty of preserving the assets of the defendant so that these assets or their proceeds if sold will be available to meet the valid demands of the litigants and other creditors of the defendant. The costs and expenses of preserving, administering and realizing the property or fund must primarily be paid out of the property or fund." Clark on Receivers, § 673 (3d ed. 1959).

In addition, "[r]eceivers can displace even *prior* security interests in receivership property in some circumstances." *Duff v. Central Sleep Diagnostics, LLC*, 801 F.3d 833, 842 (7th Cir. 2015) (citing *Gaskill*; emphasis in original). For example, "[c]ourts in equity have allowed liens for receivership expenses to take priority over secured creditors interests in the property when the receiver's acts have benefitted the property." *Gaskill*, 27 F.3d at 251 (citing with approval *Elliott*, 953 F.2d at 1576-77). "This district court's award of a receiver's compensation is ... firmly within its discretion, ... and the court may consider all of the factors involved in a particular receivership

4

in determining an appropriate fee." *Gaskill*, 27 F.3d at 253 (citations omitted); *see also Elliott*, 953 F. 2d at 1576 ("The district court appointing the receiver has discretion over who will pay the costs of the receiver.").

The law is clear that the Court has the discretion to appoint a receiver, and to compensate the receiver to preserve and liquidate assets while the Court determines who is entitled to their proceeds. This is of particular import, and beneficial to the properties and the claimants, where the properties are subject to continuing costs and risks, like here. None of the cases cited by the objectors is to the contrary or applicable to the circumstances at bar.[3] And none of the cases they cite involved a priority dispute between competing allegedly first-secured claimants that required a receiver to preserve, maintain, and liquidate assets while the court determined and implemented the process by which the dispute between the claimants would be resolved.

"The obligations and expenses which the court creates in its administration of the property are necessarily burdens on the property taken possession of, and this, irrespective of the question

---

[3] *See, e.g., Bank of Commerce & Trust Co. v. Hood*, 65 F.2d 281, 284 (5th Cir. 1933) (distinguishable as court held certain administrative expenses not chargeable against fund from sale of mortgaged property where there was "no uncertainty or complication or issue of any sort about [the mortgage foreclosure]," but finding receiver was entitled to be reimbursed from the mortgage fund for other fees); *In re Cascade Hydraulics & Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir. 1987) (distinguishable on the grounds that the debtor only suggested hypothetical benefits from operation of the business, the district court did not consider the reasonableness and necessity of the administrative expenses, and the court ruled it is appropriate to allow payment of administrative expenses from the proceeds of secured collateral when incurred primarily for the benefit of the secured creditor *or when the secured creditor caused the expense*) (emphasis added); *In re Imperial "400" Nat'l, Inc.*, 432 F.2d 232 (3d Cir. 1970) (distinguishable on the grounds that the SEC opposed the requested fees, detailed timesheets were not provided to the court, time not legally compensable may have been included in the fee request, and there was no evidence that the fee awards were necessary to continue administration of the estate, but noting that interim awards may be appropriate when such factors are present); *MW Capital Funding, Inc. v. Magnum Health and Rehab of Monroe LLC*, Case No. 16-14459, 2019 WL 3451221, *6 (E.D. Mich. July 31, 2019) (distinguishable on its facts as the court declined to surcharge secured creditor for Medicaid overpayments owed by receivership estate).

who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid." Clark on Receivers, § 673. *Standard Brass Corp. v. Farmers Nat'l Bank*, 388 F. 2d 86 (7th Cir. 1967) (cited by objectors) is not to the contrary, and is also distinguishable on numerous grounds. (*See* Dkt. No. 907, at 3) *Standard Brass* did not involve competing allegedly secured claims resulting from a complex Ponzi scheme – where the creation of actual and illusory secured interests in the real estate was integral to the scheme. Nor was there any mention in *Standard Brass* of the need to maintain and preserve the properties at issue or to preserve and maintain the properties for tenants' well-being while tangled priority disputes were sorted out. Put differently, there was no need in *Standard Brass* to preserve and maintain the property, nor to untangle the solitary secured interest of the bank from other allegedly competing secured interests, and thus there was no need to implement a fair and equitable claims process to resolve all claims and other issues surrounding the properties and their sale proceeds, or to sell the properties in order to avoid additional carrying costs and other threats that would or could cause the assets and available sale proceeds to be reduced or waste away.

Nor could there be any suggestion of a windfall here, such as cautioned against in *Byers*, 590 F. Supp. 2d at 645. In fact, it is hypocritical to suggest that the amount of the fees sought or the elongation of the receivership have been caused by the Receiver's strategy, when the docket in this matter clearly shows that the Institutional Lenders have repeatedly worked to stop, slow, and delay the Receiver from liquidating the assets and expediting the claims process. (*See, e.g.,* Dkt. Nos. 638, 670, 673, 699, 702, 718, 720, 806, 822, 849, 854, 862)

Moreover, *Gaskill* and *Elliott* are most on point and controlling. "The court *in equity* may award the receiver *fees from property securing a claim* if the receiver's acts have benefitted that

6

property." *Elliott*, 953 F.2d at 1576 (citations omitted); Clark on Receivers § 641 ("property which is benefitted by the receivership should bear its share of the costs and expenses of the receivership including receiver's fees") (emphasis added). Even the authorities cited by the objectors hold that it is appropriate for a receiver to be paid from the proceeds of secured property if the receiver has benefited that property. (*E.g.,* Dkt. No. 907, at 4-5; *see also* Dkt. No. 800, at 2-5)

## DISCUSSION

### I.    The Objectors Continue to Disregard the Complexity of this Action and the Need for a Receiver.

The objectors persist in refusing to recognize the magnitude and complexity of the receivership estate or their own role in the pace of the receivership and the commensurate impact on legal fees. Also ignored and unaddressed are the descriptions in the Receiver's fee applications of the substantial efforts undertaken with regard to, and without limitation, property sales (*e.g.,* Dkt. No. 885, at 6-9), financial reporting (*e.g.,* Dkt. No. 885, at 9-11), litigation relating to the properties (*e.g.,* Dkt. No. 885, at 11-12), and claims (*e.g.,* Dkt. No. 885, at 14-16). The Receiver incorporates by reference the discussion in his response to objections to the seventh and eighth fee applications (Dkt. No. 800, Section III), and updates the same as follows.

During the third quarter of 2020, the Receiver: continued all operations of the Receivership as the COVID-19 pandemic continued and significantly impacted many parts of the global and local economy (Dkt. Nos. 839, 885); worked to address issues related to a comprehensive claims process to address the claims against all of the properties (Dkt. Nos. 638, 757, 798, 799, 805, 807, 839, 885); made substantial progress with respect to the claims process, including but not limited to facilitating communication and collaboration on the claims process with other stakeholders, preparing standard written discovery, making progress on an EquityBuild document database and the distribution of claims documentation to claimants with competing claims, continuing with

review of over 2,000 claims submissions, updating the master claims spreadsheet listing nearly 1,000 claimants and their claim amounts on both a claimant and property-by-property basis, and preparing and presenting charts and further reporting to the Court and for claimants (*see, e.g., id.*).

During the third quarter, the Receiver also provided significant benefits protecting, preserving, and enhancing the properties and selling them in order to limit their costs and maximize sales prices. (*See, e.g.,* Dkt. Nos. 749, 790, 809, 839, 885 (regarding sales), 638, 757, 798, 799, 805, 807, 839, 885 (regarding claims)) He has worked to sequence and prepare the properties for sale to minimize operating losses and maximize sales proceeds. (*See, e.g.,* Dkt. No. 166, at 4; Dkt. No. 749, at 13-42; Dkt. No. 790, at 14, 20; Dkt. No. 809) The Receiver continued work on efforts, during the third quarter of 2020, to market and sell 26 properties and to confirm the sales of 13 more properties (Dkt. No. 839, at 4-7), including carefully and meticulously analyzing title commitments on each of those properties, assembling all the publicly-recorded documentation supporting all special exceptions identified on those commitments, and thoroughly reciting the relevant details of each and every EquityBuild transaction that resulted in each of the competing encumbrances (Dkt. Nos. 790, 809). The Receiver also worked to prepare the portfolio of 37 single family residences for listing and sale, including collaboration with the institutional lenders' counsel and real estate professionals. By the end of September 2020, the Receiver had closed on the sales of 52 properties sold for an aggregate amount of $46,103,000.00 and generating net proceeds of $40,214,262.66, including sales of 12 properties for an aggregate gross amount of $8,822,000.00 and net deposits of $7,754,438.79 in the third quarter of 2020 (despite the challenges of the pandemic). (*See* Dkt. No. 839, at 4 & Ex. 2) In addition, in this same quarter, the Receiver entered into contracts to sell an additional 14 properties for the total aggregate amount of $16,760,500.00. (*See, e.g.,* Dkt. No. 839, at 4-5 & Ex.2)

During the third quarter of 2020, the Receiver also provided benefits to the institutional lender claimants by preparing and delivering hundreds of financial reports, including, but not limited to, monthly operating profit and loss statements for each of the properties and arranging property inspections for lenders both to inspect their collateral and in connection with the marketing and sale of properties on which they expressed an interest in credit bidding.  (Dkt. Nos. 749, 791, 839)  In addition, the Receiver and his professionals provided benefits through regular, systematic, and efficient communication of information, including receiving and responding to thousands of e-mail inquiries from claimants, including institutional lender claimants. (*E.g.,* Dkt. No. 839, at 12-13)

Each of the foregoing efforts, and all other essential functions performed by the Receiver and his retained professionals are described in great detail in the 164 pages of invoices submitted in connection with the ninth fee application, which themselves reflects thousands of separately described tasks undertaken for the Receivership Estate, including its properties and creditors. (Dkt. No. 885, Exs. F-K)

The objectors also continue to suggest that the Receiver has "held hostage" properties where no priority dispute exists.  (Dkt. 907, at 5)  But this is the same false premise and flawed argument that they made in response to the Receiver's ninth and tenth motions for approval of sales and prior objections to fee applications.  (*See, e.g.,* Dkt. Nos. 769, 777, 820; *compare* Dkt. Nos. 787, 790, 800, 858)  The objectors simply ignore that other claimants have disputed priority on the vast majority of the properties in the Receivership estate and that the Court has made clear that as part of the claims process it is going to address not only priority disputes but also unresolved issues as to properties where there are no competing mortgagees within the claims process that the Court will implement, a process where the Receiver must still perform a full and complete

evaluation of the claim (including any necessary discovery). (Dkt. No. 790, at 3 & n.2)  They also ignore their role in delaying and complicating property sales and the claims process and putting not only the properties but also the interests of hundreds of other claimants in limbo.

The objectors' follow up argument that this is a no asset case and that the Receiver should abandon the properties has been repeatedly opposed by the SEC and rejected by the Court.  This argument ignores the nature of the fraud which involved overinflated property values and the sale of multiple secured interests on the same property. And, as the Receiver has explained, these and other complexities of the case make abandonment both inequitable and a practical impossibility because the mortgagee(s) to which such abandonment would be made has not yet been determined by the Court.

## II.      **The Receiver's Bills Are Reasonable and Moderate.**

The objectors also assert that the Receiver's fees are not moderate and reasonable (Dkt. No. 907, at 6-9), although they do not identify a single such instance, nor identify any instance where a professional billed time for work when it was unreasonable for that work to have been performed.  "A party objecting to a fee application may not do so based on the general proposition that the fee sought is simply too much."  *FTC v. Capital Acquisitions & Mgmt. Corp.*, 2005 WL 3676529, *4 (N.D. Ill. Aug. 26, 2005) (citing *In re Hunt's Health Care, Inc.*, 161 B.R. 971, 982 (Bankr. N.D. Ind. 1993); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) ("a gestalt reaction that there was too much [time spent or that fees are excessive] ... isn't good enough")).  Rather, "[t]he objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them." *Id.*

In fact, the Receiver's fees are reasonable and moderate, and particularly given the volume and complexity of the work undertaken.  The invoices themselves provide great detail of the nature of the work performed, with the properties the work relates to specified when reasonably possible.

(Dkt. No. 885, Exs. F-K)  The Receiver has accomplished an overwhelming amount of work on this case by employing a lean staff that has worked with remarkable efficiency to accomplish tasks that could easily keep the litigation department at a national law firm busy for years.  The Court is aware of and can take judicial notice of the extensive record in this matter of the Receiver's efforts, including but not limited to preserving and maintaining the properties, preparing the properties for sale and selling them, and implementing a claims process for the benefit of all claimants.

Again, the Receiver has achieved significant efficiencies as this matter has progressed.  The average billing rate achieved for Receiver and his firm for the third quarter of 2020 was $270 per hour (including the Receiver's time) and $245 per hour (not including the Receiver's time).  These average billing rates are consistent with the billing rates achieved in other recent quarters when the Court approved the applications.  (*See, e.g.,* Dkt. No. 710, at 3)  Thus, in this regard, the current application is on strong footing consistent with prior approved fee applications.  (*Id.*)  Together with the substantial work and progress achieved, as discussed herein and reflected both in the submitted bills and the docket for this action, the current fee applications show significant economies and demonstrable overall value to the Estate.

Moreover, the SEC has supported and approved the Receiver's fee applications, including this one.  (*See, e.g.,* Dkt. Nos. 526, 606, 622, 705, 797, 803, 922)  "In securities law receiverships, the position of the Securities and Exchange Commission in regard to the awarding of fees will be given great weight."  *First Securities Co.*, 528 F.2d at 451 (citing *SEC v. Fifth Avenue Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)).  (*See also* Dkt. No. 607, Ex. 1, October 8, 2019 Tr. 6:12-15)  Further, this Court has already found that the Receiver's efforts have benefitted the estate and will continue to benefit the estate, thus justifying reasonable compensation for the

Receiver and his retained professionals.  (*See, e.g.,* Dkt. Nos. 614 (at 3), 710 (at 3), & 824 (at 4-5))

### III.     The Court Should Approve Payment of the Fees and Expenses of the Receiver and His Retained Professionals.

As the Receiver has observed, the primary beneficiaries of the Receiver's efforts are and will be the claimants who receive funds from the real estate properties that the Receiver has worked to preserve, maintain, improve, and liquidate, following the claims process that the Receiver has worked to implement and administer.  While there may be funds to pay the Receiver and his retained professionals from monies that have been or will be recovered, net proceeds from the sales of unencumbered properties, net equity from the sale of encumbered properties, and funds returned to the Receiver's account from the sales proceeds of properties that received cash infusions to preserve and maintain them during periods when their operating income alone could not sustain them, there is a diminishing likelihood that such funds will be sufficient to pay the Receiver and his retained professionals.  Cash on hand in the Receiver's accounts totaled $1,181,881.43, as of December 31, 2020. Additionally, and consistent with prior Court orders, the Receiver expects in excess of $1,500,000 will be restored to the Receiver's account in connection with the Receiver's third restoration motion which the Receiver plans to file in the coming weeks.  The Receiver also closed the sale of a property in May 2020 from which the Receiver presently expects in excess of $1,200,000 in equity.  Because of future uncertainties regarding sources of funds along with concerns for equity and fairness to all claimants, the Receiver has requested a receiver's lien in connection with the pending claims process motion, which clearly sets out the Court's authority to order in an appropriate case such as this.  (*See, e.g.,* Dkt. Nos. 638 (at 21-25), 755 (at 18-25), 778 (at 18-25))

IV.   **The Court's Establishment of a Receiver's Lien Is Necessary and Appropriate.**

The Court has previously approved "a lien on the estate assets and their proceeds to cover the Receiver's fees and other approved Receivership expenses that may exceed the Estate's unencumbered funds."  (Dkt. No. 824, at 4) This ruling and its underlying logic are equally applicable here.  The objectors once again object to the request for lien, making largely the same arguments in opposition that they have previously raised.  The Receiver incorporates by reference, the discussion in his response to objections the seventh and eighth fee applications (Dkt. No. 800, Section III(G)) as if fully set forth herein.

V.   **The Receiver's Proposed Allocation Is Fair, Reasonable, Consistent with Applicable Law, Previously Approved by This Court, and Substantively Unrebutted by the Objectors.**

The Court has previously approved the Receiver's allocation methodology and found that it is reasonable and appropriate.  (Dkt. No. 824, at 5)  The SEC has agreed.  (*Id.; see also* Dkt. No. 797, at 3-6; Dkt. No. 803, at 2)  The Receiver's current request for a lien to be paid on a first priority basis is consistent with the previously approved methodology. (Dkt. No. 824, at 5; Dkt. No. 800, Section III(H), incorporated by reference) Once again, the objectors do not offer any alternative methodology, let alone one that is more reasonable or appropriate.

VI.   **A Hold-Back of Fees Is Not Warranted.**

The objectors continue to argue that the Court should require a hold back of fees.  This, too, is a repeated argument.  The Receiver incorporates by reference, the discussion in his response to objections the seventh and eighth fee applications (Dkt. No. 800, Section III(G)).  The Receiver further notes that he has provided a substantial discount to the Estate, the properties, and the claimants for the professional services provided.  For the period covered by the ninth fee application, alone, the Receiver and his firm's discounted billing rates have provided a $218,933

discount off standard billing rates.  He also has achieved significant economies and demonstrable overall value to the Estate.  Moreover, as previously noted, the SEC has supported and approved the Receiver's fee applications without any holdback, including this one.  *See, e.g.,* Dkt. Nos. 526, 606, 622, 705, 824, 922 (at 4); *see also, e.g., First Securities Co.*, 528 F.2d at 451; *contrast In re Imperial*, 432 F. 2d at 240 (cited by the objectors) (where the SEC opposed the fee petition).  And this Court has previously rejected the request for a holdback and found that the Receiver's efforts have benefitted the estate and will continue to benefit the estate, thus justifying reasonable compensation for the Receiver and his retained professionals.  (*See, e.g.,* Dkt. No. 614, at 3; Dkt. No. 824, at 4-5 & n.1)

## CONCLUSION

For the foregoing reasons, the Receiver respectfully requests that the Court exercise its discretion to: (i) find that the Receiver has preserved, enhanced, or otherwise benefited the properties and the claimants in connection with the work performed and expenses incurred as reflected in the ninth fee application; (ii) approve the Receiver's ninth fee application and payment of all fees and expenses described therein out of the funds in the Receiver's account, including as to any such future funds that come into the Receiver's account; (iii) impose a first priority receiver's lien on the properties and proceeds of sale to satisfy the receivership expenses; and (iv) grant such other relief as the Court deems equitable and just.

Dated:  January 7, 2021                                    Kevin B. Duff, Receiver

                                              By:      /s/ Michael Rachlis
                                                       Michael Rachlis (mrachlis@rdaplaw.net)
                                                       Jodi Rosen Wine (jwine@rdaplaw.net)
                                                       Rachlis Duff & Peel, LLC
                                                       542 South Dearborn Street, Suite 900
                                                       Chicago, IL 60605
                                                       Phone (312) 733-3950; Fax (312) 733-3952

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 7, 2021, I electronically filed the foregoing **Receiver's Reply in Support of His Ninth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax     (312) 733-3952
mrachlis@rdaplaw.net