**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 18-cv-5587** |
| **v.** | ) ) | **Hon. John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) ) ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) | |

## JOINT STATUS REPORT

The undersigned counsel for the Receiver, for certain of the Institutional Lenders, for certain of the Investor Lenders, and for the SEC submit the following joint status report in advance of the January 29, 2021 hearing pursuant to the Court's Order (Dkt. No. 915).

### A. Balance of Claims Process

The parties hereto have prepared the attached Claims Process Outline (**Exhibit A**) to provide input to the Court on the proposed process for the resolution of the claims submitted in this matter (the "Claims Process"). This submission is based on the Court's rulings to date with respect to the Receiver's motion for approval of process for resolution of disputed claims. (Dkt. No. 638)

The Institutional Lenders continue to object to the Claims Process adopted by the Court, and reassert their objections thereto as previously submitted to the Court. By providing their input in this Joint Report, no party waives any argument or objection it may have with respect to the Claims Process. The Parties also reserve their right to seek modification of the Claims Process based on developments in the litigation of the Claims Process Groups.

Additionally, the parties disagree about the scope of the Claims Process.

Receiver's Position: The Receiver understands that the Court has determined that the Claims Process will involve *all* claims submitted against the Receivership Estate and *all* other issues with regard to the properties in the Estate.[1] As such, the Receiver is of the view that all claims and properties will be part of the claims review process (including the few properties that do not have

---

[1] *See* 7/15/2020 Tr., at 45:8-13 ("**So, in the end, I think we're all in agreement that all issues with regard to a property should be resolved during the claims process, including any issues with regard to fraudulent transfer, inquiry notice. Whatever issues there are, I want it all resolved when the property is up for adjudication during this claims process**.") The Court has expressly stated that even when there are no competing liens, if there are other issues that remain to be resolved, they will be addressed in the claims process. (Dkt. No. 676, at 6 n.2 (**"Though there are no competing mortgages for four of the properties at issue, ... the Court is persuaded that, with respect to these properties, "other issues remain to be resolved during the initiated claims resolution process, including without limitation the alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien on a portion of the proceeds, if warranted**".") (internal citations omitted); *see also* Dkt. No. 800, at 12; Dkt. No. 790, at 3 & n.2)

directly competing claims) and will allow the Receiver to review the legality, validity, classification, amount, and priority of the claims against each of the properties, take any necessary discovery, and address avoidance claims, all of which may be decided in a single summary proceeding involving that property as part of a singular claims process.

The Receiver's position is that the Institutional Lenders' effort to limit the Claims Process to disputed claims ignores the pronouncements of the Court, judicial economy and efficiency, and fairness to other claimants. A comprehensive approach to claims is necessary. That some claims will require different, less, or greater consideration than others does not justify putting them on a separate track. The record in this action shows that orderly, timely, cost-effective, and comprehensive approach to claims is essential.

As to the Institutional Lenders reference below to Docket No. 785, the Receiver objects to those statements for the reasons set forth above, and further directs the Court to his response in opposition to the Institutional Lenders' "(Corrected) Motion for Priority Determination and for Turnover of Sale Proceeds," in which he fully sets forth the reasons why a separate process for the properties addressed in the motion should be rejected. (Dkt. No. 806)

<u>Institutional Lenders' Position</u>. In contrast, the Institutional Lenders assert that the Receiver's motion contemplated a separate track for properties against

which there were no competing claims (Dkt. No. 638, par. 23[2]), contend that there is no reason to involve such properties in the detailed process set forth in this Report with respect to competing claims and thereby further delay the recovery by the party holding such non-competing claim (be it Institutional or Investor Lender), and understand that the Court has not ruled that they would be included in the Claims Process, but instead directed the Institutional Lenders to raise their concerns with the Receiver. However, because the Receiver insists on including non-competing claims in the Claims Process, certain Institutional Lenders filed a motion seeking the Court's assistance in this regard, which remains pending. (Dkt. 785, 806, and 817). In this section, the Institutional Lenders merely have attempted to advise the Court that their efforts with respect to Exhibit A focused on procedures for resolving competing claims that are inapplicable to properties against which there are no competing claims. The Institutional Lenders' reserve their input regarding the appropriate procedures for such non-compete properties pending the Court's ruling on the foregoing motion.

Subject to the foregoing, where the undersigned parties were unable to reach agreement on the Claims Process procedures, they set forth their respective

---

[2] Dkt. No. 638, par. 23 reads as follows: "There are also a small number of properties for which there may be no dispute as to the priority of the claimants' secured interests and a number of properties encumbered exclusively by investor-lender mortgages. The Receiver is evaluating the claims associated with those properties and anticipates either filing a separate motion to address any issues that the Receiver identifies with respect to the claims associated with those properties and/or requesting a referral to the Magistrate Judge for settlement purposes to address issues with those properties."

positions in the attached Exhibit A, and will be prepared to address them at the status hearing on January 29, 2021.

### B. Standard Discovery Requests

The parties further submit proposed revisions to the Standard Discovery to Investors, specifically addressing Document Request No. 12 and Written Question No. 17 (**Exhibit B**). By agreement, the prior Document Request No. 12 has been split into two requests (Nos. 12 and 13), and there are no further objections to these discovery requests.

Additionally, the parties submit proposed revisions to the Standard Discovery to Institutional Lenders (**Exhibit C**), in accordance with the Court's ruling (Dkt. No. 915) in relation to the Institutional Lender's Motion for Protective Order (Dkt. No. 866).

### C. Pending Motions

For the Court's convenience, the parties identify the motions that are currently pending in this matter as follows:

1. The remainder of <u>Receiver's Motion for Approval of Process for Resolution of Disputed Claims</u> (Dkt 638; *see* Dkt. 863).

   Proposed Order directing the Receiver to distribute the claims documentation and setting forth an opt−out procedure regarding the agreed confidentiality order; and approving the retention of database vendors Axos, Avalon, CloudNine, and TeamWerks was provided to the Court on January 7, 2021.

2. (Corrected) <u>Motion for Priority Determination and Turnover of Sale Proceeds</u> (Dkt. 785) filed 9/10/20, Receiver's Opposition (Dkt. 806) filed 10/02/20, and Reply (Dkt. 817) filed 10/14/20.

3. <u>Receiver's Tenth Sales Motion</u> (Dkt. 809) filed 10/05/20, Objections (Dkt. 820) filed 10/21/20, granted in part on 10/30/20 (Dkts. 840, 842), SEC's Reply (Dkt. 845) filed 11/2/20, Receiver's Reply (Dkt. 858) filed 11/6/20.

4. <u>Ventus Motion for Disbursement of Earnest Money</u> (Dkt. 861) filed 11/09/20, Receiver's Opposition (Dkt. 882) filed 11/23/20.

5. <u>Receiver's Ninth Fee Application</u> (Dkt. 885) filed 11/30/20, Objections (Dkt. 907) filed 12/15/20, SEC's Reply (Dkt. 922) filed 1/7/21, Receiver's Reply (Dkt. 923) filed 1/7/21.

6. <u>Receiver's Consolidated Eleventh Sales Motion and Motion to Approve Use of Proceeds from Sales of Receivership Property</u> (Dkt. 902) filed 12/14/20, objections to Eleventh Sales Motion only (Dkt. 918) filed 12/29/20, and Reply (Dkt. 921) filed 1/4/21.

Proposed Order regarding the unobjected to Motion to Approve Use of Proceeds was provided to the Court on January 11, 2021.

Dated: January 22, 2021                              Respectfully submitted,

/s/  Michael Rachlis                                /s/  Benjamin J. Hanauer
Michael Rachlis                                     Benjamin J. Hanauer (hanauerb@sec.gov)
Jodi Rosen Wine                                     Timothy J. Stockwell (stockwellt@sec.gov)
Rachlis Duff & Peel, LLC                            175 West Jackson Blvd., Suite 1450
542 South Dearborn Street, Suite 900                Chicago, IL 60604
Chicago, IL 60605                                   Phone (312) 353-7390; Fax (312) 353-7398
Phone (312) 733-3950; Fax (312) 733-
3952                                                *Attorneys for Plaintiff*
mrachlis@rdaplaw.net                                *U.S. Securities and Exchange Commission*
jwine@rdaplaw.net

*Attorneys for Kevin B. Duff, Receiver*


/s/  Ronald Damashek                                /s/ Michael Gilman
Ronald Damashek                                     Michael Gilman (6182779)
rdamashek@stahlcowen.com                            mgilman@dykema.com
Dickinson Wright PLLC                               Dykema Gossett PLLC
55 West Monroe Street, Suite 1200                   10 S. Wacker Drive, Suite 2300
Chicago, IL 60603                                   Chicago, IL 60606
Phone (312) 377-7858                                (312) 627-5675

*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB14; Midland Loan Services, a Division of PNC Bank, National Association; Thorofare Asset Based Lending REIT Fund IV, LLC; and Liberty EBCP, LLC*

/s/   Max A Stein

Max A. Stein (ARDC # 6275993)
Lauren E. Dreifus (ARDC # 6317983)
Boodell & Domanskis, LLC
One North Franklin, Suite 1200
Chicago, IL 60606
mstein@boodlaw.com
ldreifus@boodlaw.com

*Counsel for Bill Akins, Paul Applefield, Manuel Cadaval, Dana Cadaval, Jacob Cadaval, Joshua Lapin, Cadaval Investment Trust, Karl Deklotz, Deklotz Investment Properties, Pat Desantis, Julie Farr-Barksdale, Joel Feingold, Francisco Fernandez, Patricia E Gomes, RAVIN3, LLC, Longwood 11117, LLC, Roj Gupta, Amit Hammer, Conrad Hanns, Robert Jennings, Cynthia Jennings, Asbury R. Lockett, Richard Lohrman, Mary Lohrman, Don Minchow, Russ Moreland, Lori Moreland, Alan Schankman, Vicki Schankman, Knickerbocker Investments, Coleman Scheuller, Harvey Singer, Aryeh (Judah) Smith, Brook Swientisky, Sarah Swientisky, J&S Investment LLC, Kathy Bischoff Talman, Kristien Van Hecke, Dwight Plymale, DK Phenix Investments LLC, Norman (Bud) Wheeler, Melinda Mayne, Liberty Quest Investment Group LLC*

*Counsel for Federal Home Loan Mortgage Corporation Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Wilmington Trust, National Association, as Trustee for the Registered Holders of UBS Commercial Mortgage Trust 2017-C1,Commercial Mortgage Pass-Through Certificates, Series 2017-C1; Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; Federal National Mortgage Association; U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41,U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30 Sabal TL1 LLC; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Benefit of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Registered Holders of Corevest American Finance 2017-2 Trust, Mortgage Pass-Through Certificates, Series 2017¬2; BC57, LLC; UBS AG*

7

**<u>Certificate of Service</u>**

I hereby certify that on January 22, 2021, I caused the foregoing **Joint Status Report** to be electronically filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users.

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net

<u>SEC v. EquityBuild – Outline of Claims Process</u>

1. Order Affirming Jurisdiction, Dispute, and Process.

   a. We anticipate that Judge Lee will enter an order commencing the Claims Process, and that this order will provide that the Court hereby determines:

      i. All parties who have submitted Proofs of Claims in these proceedings are subject to the jurisdiction of the Court.

      ii. Actual and live controversies exist between claimants.

      iii. Through Proofs of Claims submitted in these proceedings, claims against properties in the receivership estate have been submitted by various parties in interest in this matter, as set forth in Exhibit A to Docket No. 911.

      iv. The Proofs of Claims effectively will serve as the pleadings, which the Receiver has identified as in conflict based on the Proofs of Claims and supporting documents.

      v. All objections to the legality, validity, classification, amount, or priority of claims against the same property, and all other related issues which are subject to further review and discovery, will be decided in a single summary proceeding involving that property.

   b. The Receiver will seek a court order automatically staying any motion practice relating to the legality, validity, classification, priority or avoidance of claims outside of the summary procedures ordered by the Court.  The Receiver does not seek to prohibit the parties from filing discovery-related motions or motions for protective orders. The undersigned counsel for certain of the Investor Lenders and counsel for the SEC have indicated that they support such a request in concept. Counsel for the Institutional Lenders have not seen such a motion and request an opportunity to respond.

2. Resolution by Groups of Properties.

   a. The Claims Process will focus on properties grouped together to allow for the resolution of a manageable number of claims in each proceeding.  Each group of properties, referred to herein as a "Group,"

**Exhibit**

**A**

will include all claimants who submitted Proofs of Claim with respect to one or more properties in the Group.

b. The Receiver has segregated the properties into Groups in the attached Exhibit A, subject to the Court's approval regarding the order of the proceedings. The Receiver has attempted to avoid splitting any claimed lien among more than one Group.

3. Framing Report.

a. After the EquityBuild Documents and Proofs of Claims are made available to Claimants pursuant to the Court's Order (Dkt. No. ___), and consistent with the schedule entered by the Court, the Receiver will file with the Court a Framing Report for the first Group. This and each subsequent Framing Report will identify the properties in the Group and all claimants who submitted Proofs of Claims with respect to any property in that Group. The Framing Reports will include for each claimant the total amount claimed and the amount claimed to have been loaned or invested in each property in the Group.

b. The Framing Reports will also include a proposed schedule for the summary proceedings for that Group (consistent with the process ordered by the Court).

c. The Framing Reports will each include a service list containing the email contact information for each claimant in the Group (the "Email Service List.") and will provide a single email address (such as EBGroup1service@rdaplaw.net) for use for service purposes only that will automatically forward the service communication and attachments to everyone on the Email Service List.

d. The Receiver will serve the Framing Report for each Group on all claimants included on the Email Service List for that Group.

**DISPUTED ISSUE: COMPOSITION AND ORDER OF GROUPS**

**<u>Institutional Lenders' Position</u>. The Institutional Lenders assert that all claimants should have an opportunity to respond or object to the proposed Groups as they are presented to the Court. With such input, the Court will be more fully informed in its decision making concerning Group composition and order.**

2

In this regard, in preparing the list of Groups, the Receiver has had access to all of the EquityBuild documents and Proofs of Claim. The claimants have not. Further, none of the claimants have had an opportunity to see how the Claims Process works, which might impact the composition or order of future Groups. Other factors, such as balancing the workloads and schedules of the attorneys for the claimants should be considered as well. Finally, because there will be a period of time between the proposal of the next Group and the commencement of the Claims Process with respect to that Group, a short response time will not delay that Process.

Accordingly, the Institutional Lenders propose adding the following provision: "Except with respect to the first Group, to the extent that any Claimant has an objection to a Group proposed by the Receiver, such Claimant shall have 7 days to object to the proposed Group set forth in the Framing Report. The Receiver has 7 days to reply to objections. After considering these filings, the Court will determine whether to approve the Group as provided in paragraph 4(a) below."

<u>Receiver's Position</u>. The Receiver's position is that the mechanics of how to process claims is typically a matter left to the discretion of the Court based on the recommendation of the Receiver. Additionally, the Receiver has already shared his proposed groupings with counsel for the Institutional Lenders and remains open to any feedback regarding the proposed groupings; therefore additional motion practice is unnecessary and would serve to further delay these proceedings.

<u>Certain Investor Lenders' Position</u>. Certain of the Investor Lenders agree with the Receiver and contend that building time for such objections into the schedule now, before it is clear whether any such objections will be made, unnecessarily delays the schedules for the individual Groups and, therefore, resolving these matters as a whole. These Investor Lenders suggest that, since the proposed groupings have already been shared, any party objecting to those proposed groupings do so within 30 days of the Proofs of Claims being made available pursuant to the Court's Order. For the latter, these Investor Lenders suggest that this should be left to the discretion of the

**Court based on the recommendation of the Receiver. Should further objections arise, such objections can be raised through motion when they are real, rather than theoretical.**

4. Order commencing the summary proceeding for a given Group.

   a. After the Framing Report is submitted, the Court will enter an order approving the Group and setting the schedule for the summary proceedings for the Group. Within two (2) business days of entry of the Order approving the Group, the Receiver will serve the order on all claimants included on the Email Service List for the Group.

5. Expedited discovery.

   a. Within two (2) business days of entry of the Order approving the Group, the Receiver will also serve the approved standard discovery requests on all claimants included on the Email Service List for the Group.

      i. All claimants will have 30 days to respond to the approved standard discovery requests in accordance with the instructions set forth in the requests.

   b. Additional written discovery may not be served on a claimant before that claimant's discovery responses have been received or the deadline for responding has expired.

      i. Limits: Additional written discovery shall be limited to 10 interrogatories and 10 requests for production per participant. Multiple discovery requests to a Claimant or group of commonly represented Claimants may be answered in a consolidated response, provided that the response makes clear the response of each Claimant.

   **DISPUTED ISSUE: ADDITIONAL DISCOVERY**

   **Institutional Lenders' Position. The Institutional Lenders' position is that additional discovery requests are needed because they need an opportunity to explore information disclosed by the as-yet-unseen Proofs of Claim, EB documents, and responses to the Standard Discovery Requests. Given the number of investors and properties involved, it is likely that well more than 10**

4

questions total will arise. Further, they assert that such additional discovery cannot be strictly on a per Claimant basis because each Group will have only one Institutional Lender (who will only get 10 additional requests), but will have multiple Investor Lenders (who would get 10 additional requests each, thus potentially allowing hundreds of requests directed to a single Institutional Lender).

Allowing five additional interrogatories and five additional requests for production directed to each claimant is not overly burdensome because each Investor Lender will only need to respond to that additional discovery, not the aggregate of supplemental discovery. It is necessary because each Group will have multiple properties. Investor Lenders who claim an interest in a property will not necessarily have the same deal as the Investor Lenders who claim an interest in the other properties. And, with respect to the Investor Lenders who claim an interest in the same property, each Investor Lender may be in a unique position: each may have executed different documents, may have different knowledge, and may have been treated differently. Further, the Investor Lender term includes persons who assert a claim arising from a Mortgage Loan and persons who assert a claim based upon an interest in the limited liability company that owned the real property. Those transactions are completely separate transactions.

Therefore, the Institutional Lenders propose that they be allowed to ask 5 interrogatories and 5 requests for production to each Investor Lender. As such, each Investor Lender would only have to respond to 5 additional discovery requests, not the hundreds suggested in the responsive positions below. In addition, the Institutional Lenders propose that the Investor Lenders collectively be allowed to ask 20 interrogatories and 20 requests for production to each Institutional Lender. The Investor Lenders have a common interest in challenging Institutional Lender's lien, and 20 additional discovery requests should be more than sufficient to do so.

Finally, to the extent that Certain Investor Lenders propose a meet and confer process regarding additional discovery, the Institutional Lenders assert that such a process is completely unworkable as the undersigned counsel for Certain Investor Lenders only represents 43 people out of thousands, and there is no viable mechanism for meeting and conferring with such an unwieldy group of unrepresented people.

**Receiver's Position.** The Receiver's position is that the changes proposed by the Institutional Lenders, which they have expanded on numerous occasions, are antithetical to the concept of a summary proceeding and will needlessly increase the time and cost of the proceedings to the detriment of all participants. The Proof of Claim Forms and supporting documentation, together with the Standard Discovery ordered by the Court should serve to limit or eliminate the need to serve additional discovery, and if anything, these limits should be further curtailed, not expanded. The Institutional Lender's position would allow the Institutional Lenders to serve hundreds of discovery requests while limiting other claimants to a fraction of one request (each of the proposed Groups includes more than 100 Investor claimants). The Receiver believes that it is particularly inequitable to limit the Investor Lenders to a set number of discovery requests *collectively*, as these claimants are not related to each other, are not all represented by the same counsel (or any counsel), and may not have the same interests.

**Certain Investor Lenders' Position.** Certain of the Investor Lenders agree with the Receiver that the Standard Discovery should significantly limit the need for additional discovery of the Claimants. These Investor Lenders further agree that the limits proposed by the Receiver - 10 interrogatories and 10 requests for production per Claimant – make sense as presumptive limits, with responses to those requests due at the latter of 21 days from service or whenever the Court orders any additional requests be responded to as set forth in this paragraph. To the extent that any party believes that

6

**additional discovery beyond that is required, the Investor Lenders suggest a process whereby any party seeking additional discovery proposes such requests to the party from whom the information is sought. If that party does not agree to the requests, then the parties shall meet-and-confer on the requests within 7 days. If the issue is not resolved through that meet-and-confer, then the issue shall be presented to the Court in a brief joint status report and the Court can promptly determine if the additional discovery will be allowed.**

**These Investor Lenders suggest that the advantage of this process is that the parties and Court will here again have real, as opposed to theoretical, requests to consider. This should be especially helpful in addressing the Institutional Lenders' concerns regarding any imbalance in the setting of absolute limits.**

**To the extent the Court is inclined to consider the absolute limits suggested by the Institutional Lenders, these Investor Lenders note that while the Institutional Lenders assert concerns that they may have respond to hundreds of requests, their own proposal creates the possibility that the Investor Lenders will be the ones collectively responding to hundreds of requests. For example, Group 1 from the Receiver's proposed groupings includes 174 investors, meaning if the Institutional Lenders were to serve each with 10 additional requests, as they propose, responses to well over 1500 additional requests would be required.**

ii.  Such discovery is limited to any matter, not privileged, that is relevant to the claim or defense of any claimant.

iii. Additional written discovery must be served within 21 days after the deadline for responses to standard discovery.

iv.  Claimants will have 14 days to respond to additional discovery.

**DISPUTED ISSUE: TIMING OF ADDITIONAL DISCOVERY**

<u>Certain Investor Lenders' Position</u>: Given that it generally takes less time to formulate a discovery request than to respond to it, Certain of the Investor Lenders suggest that, at a minimum, these deadlines should be reversed.

More broadly, these Investor Lenders contend that, here again, the deadlines in subparts (iii) and (iv), which set deadlines for every Group, regardless of whether there are actually going to be additional requests for that Group, build in too much time into the schedule based on hypothetical requests. Accordingly, these Investor Lenders suggest that the mechanism they suggest above for handling additional discovery be employed, and that these periods should be adjusted to reflect that process. Specifically, these Investor Lenders suggest the following:

- Any additional proposed requests be sent by the requesting party to the party from whom the information is sought within 14 days of the deadline for responses to standard discovery.

- The requesting and responding parties shall meet and confer regarding any additional requests within 7 days.

- Any remaining disputes shall be presented to the Court, in a joint status report that presents the proposed requests and provides no more than one page per party regarding the requests by no later than 7 days from the deadline for the meet-and-confer. The Court will then promptly rule on whether the additional discovery will be allowed, either in writing or, if it deems it appropriate, at a hearing during which it can hear further argument.

- Any requests allowed by the Court shall be responded to within 7 days of the Court's ruling.

8

These Investor Lenders submit that this mechanism has the advantage of resolving any issues regarding additional discovery within the same 35 period that the Institutional Lenders proposed for the requests and responses, while also requiring that time to be used only if necessary.

<u>Institutional Lenders' Position</u>:  The Institutional Lenders' position is that 21 days is needed to propound additional discovery requests because the claimants will be receiving standard discovery that they need time to review before determining whether additional discovery is needed and drafting such discovery.  In the case of an Institutional Lender, it is likely to receive over 100 standard discovery responses, and will need at least two weeks to review them and an additional 7 days to propound discovery.  Further, if the claimants comply with the standard discovery requests, they should have few additional documents to produce, so that giving them 14 days to respond to additional specifically targeted discovery is reasonable.

Finally, the concept of having to run proposed additional discovery by the opposing party and devote time and resources to convincing them of the propriety of that discovery is antithetical to litigation norms.  A litigant should have a right to decide what discovery is necessary and appropriate to prove its case and should not have to check with the opposing counsel (if there is one) to get approval to do so.  Nor should the Court be burdened with resolving a multitude of discovery disputes if the parties cannot agree on the form or content of discovery.  Last, as indicated above, the concept of meet and confer is completely unworkable in the context of a case involving so many unrepresented people.

<u>Receiver's Position</u>.  The Receiver's position is that the Standard Discovery ordered by the Court should limit or eliminate the need for additional discovery and therefore the time allotted to respond to such discovery is adequate.  The Receiver agrees that the 21 days to propound additional discovery is reasonable to allow the

**review the standard discovery responses. The Receiver supports any efforts of participants to meet and confer to work out differences but the Receiver believes that the Investor Lenders' proposal to mandate a meet and confer before serving discovery is impractical in this action given that there are so many participants and unrepresented claimants.**

c. Depositions

    i. Each participant is limited to a total of no more than three depositions per Group.

**DISPUTED ISSUE: NUMBER OF DEPOSITIONS.**

<u>**Institutional Lenders' Position.**</u> **The Institutional Lenders' position is that a three deposition limit is insufficient and that, due to the disparity between the number of Investor Lenders in a Group, each "Claimant" cannot take three deposition. Instead, the Institutional Lenders propose that six depositions be permitted per side for each property in a Group, provided that multiple properties can be consolidated in a single deposition if there is a representative deponent with adequate knowledge of the facts concerning such properties. However, in the event such consolidation results in less than six depositions per side, each side be allowed to take additional depositions, up to a cumulative total of six depositions per side.**

<u>**Receiver's Position.**</u> **The Receiver's position is that additional depositions are inconsistent with the limited discovery envisioned for these summary proceedings and would cause further delay and expense. The Receiver notes that the Institutional Lenders' most recent proposal for up to <u>six depositions per property</u> could potentially result in hundreds of depositions in these "summary" proceedings. Additionally, the Institutional Lender's "per side" proposal does not fit the circumstances present in this matter, in which there are multiple claimants who may have divergent interests, as well as the Receiver, who is not on any "side."**

10

**Certain Investor Lenders' Position**: As with the discovery requests, Certain of the Investor Lenders agree with the Receiver regarding a presumptive limit, here 3 depositions per claimant.  The Individual Investors also agree that the Institutional Lender's "per side" proposal does not fit the circumstances of this matter and, as we understand it, creates a scenario in which a single Institutional Lender and dozens of Individual Lenders both have up to six depositions seemingly based on nothing more than a guess as to what might be required. In light of this, to the extent that any party believes that additional depositions are required, these Investor Lenders propose a process by which issues regarding the total number of depositions can be resolved knowing what depositions are being requested for each Group.  To that end, these Investor Lenders propose the following:

- All parties shall identify the fact depositions they wish to take for the Group within 14 days of the deadline for responses to standard discovery (thus, at the same time that any additional discovery requests are proposed).

- All parties shall meet-and-confer regarding the requested depositions within 7 days (thus, this can be done at the same time as any meet-and-confers regarding additional discovery requests).

- Any remaining disputes shall be presented to the Court, in a joint status report that identifies the proposed depositions about which there is a dispute and provides no more than one page per party regarding the proposed deposition by no later than 7 days from the deadline for the meet-and-confer (again, putting it on the same schedule as the additional discovery requests).  The Court will then promptly rule on what disputed depositions shall occur, either in writing or, if it deems it appropriate, at a hearing during which it can hear further argument.

      ii.   Notice of all depositions shall be provided to everyone on the Email Service List and, to the extent possible, depositions shall be scheduled for a time convenient for all parties wishing to attend.

d. Third-party discovery

    **i.**   **Subpoenas to a title company and/or the originator of a loan (if different than the claimant) seeking documents and depositions relating to the properties in the Group may be issued without leave of court.**

**DISPUTED ISSUE: THIRD PARTY DEPOSITIONS**

**Institutional Lenders' Position. The Institutional Lenders' position is that subpoenas should be limited to document subpoenas and leave of court should be required for any depositions. The stated goal of the Receiver and Certain of the Investor Lenders is to limit its scope and to complete it within the very short time frames set forth herein. Not only has there been no showing as to the basis or need for third party depositions, but given the number of properties involved, the number of depositions could be extensive. Further, the burden of obtaining court approval is not significant if it is based on a demonstrated need for depositions after production and review of such third party documents, especially since no other third party discovery may be issued without leave of court.**

**Receiver's and SEC's Position. The Receiver's and the SEC's position is that subpoenas to the identified third parties may be for documents and/or depositions. Depositions may be necessary to explore whether and what inquiries regarding the title were made by the title companies or loan originators, and whether they had knowledge of fraud, wrongdoing, or other facts that should have led them to inquire further. The Receiver also disagrees with the Institutional Lenders' assertion that there has been no showing as to the basis or need for third party depositions. Moreover, given that the Institutional Lenders have insisted that any claim the**

12

**Receiver may bring be addressed within the Claims Process, the Receiver has identified the need to conduct discovery as to these third parties, in particular.**

**<u>Certain Investor Lender's Position</u>. Certain of the Investor Lenders agree that subpoenas to third parties should be allowed to seek documents and/or depositions and further propose that any discovery to third parties should be handled using the processes laid out above for additional discovery and depositions.**

    ii.   No other third-party discovery may be issued without leave of court.

e. Deadline for completion of discovery

    i.   Discovery to be completed within 120 days from the order commencing proceedings for the Group.

f. Expert witness disclosures, if any, shall be included in a party's Position Statement, shall be signed by the expert, and shall comply with the requirements for expert opinions set forth in F.R.C.P. 26(a)(2)(B). No further discovery of experts without leave of Court.

**DISPUTED ISSUE: EXPERT DISCOVERY**

**<u>Institutional Lenders' Position</u>. The Institutional Lenders' position is that expert depositions should be allowed so that their opinions can be challenged effectively in these summary proceedings, as required by due process. First, if the parties determine that expert testimony is needed, it is likely that only one expert would be needed per constituent group. Therefore, depositions would be limited in number. Second, the goal should be to resolve issues without the need for an evidentiary hearing. Therefore, if an expert report raises issues that could result in an evidentiary hearing if not examined further, a claimant should have the opportunity to depose that expert to determine if the expert's opinion can be challenged in such a way as to avoid the need for such a hearing. Of course, any such deposition also would allow the claimant to prepare adequately and in accordance with due process for any such evidentiary hearing.**

**Receiver's and Certain Investor Lenders' Position. The Receiver's and Certain of the Investor Lenders believe that expert depositions are inconsistent with summary proceedings. Experts may be cross examined at an evidentiary hearing, and the disclosures of opinion will provide a sufficient basis for any party to confront the expert witness, thereby addressing any due process issues that may exist. Moreover, the substantial expense of expert depositions may make it cost prohibitive for the Receiver or a claimant to retain a rebuttal expert to effectively challenge the positions of disclosed experts.**

6. Receiver's Disclosure of Avoidance Claims

   a. Within 14 days of completion of all discovery (written and oral) for the Group, Receiver must disclose to all lienholders for a particular property if he seeks to avoid one or more liens against a property in the Group, and, if so, the factual basis of his avoidance theory. Contemporaneously, the Receiver shall identify with specificity the documents related to his claim and produce any such documents in his possession or control to which access has not already been provided to claimants.

   b. Within 7 days thereafter, any of the lienholders may request leave of Court to take additional discovery relevant to the Receiver's claim, and the Court will adjust the schedule as needed.

7. Position Statements by Claimants and SEC.

   a. Within 21 days after the deadline for Receiver to disclose avoidance claims, the claimants and the SEC may submit written submissions and supporting evidence to the Court either in support of their claim or in opposition to any other claimants' claim.

   b. To the extent that an avoidance action is filed and additional discovery is sought, the time to file a Position Statement with respect to such avoidance action will be determined by the Court when ruling on the request to take additional discovery

   c. To streamline the proceedings and ensure consistency, the Receiver proposes to provide claimants with a standard form for their Position Statements which includes:

14

        i.    The case caption.

        ii.   A title with the words "Position Statement" and the name of claimant.

        iii.  The Property or Properties to which each portion of the statement pertains.

        iv.  A section to describe facts and evidence supporting claim. A claimant who is relying on documents or transcripts will attach the relevant pages to the Position statement.

        v.   A section for legal authority and argument.

d. Where appropriate, a claimant's Position Statement may also include an opposition to the Receiver's avoidance claim and/or any basis for summary determination.

e. All claimants shall serve their Position Statements via email on all claimants included on the Email Service List for the Group. All claimants with appearances on file shall file their Position Statement using the Court's ECF system. The Receiver will file any Position Statements not otherwise filed using the Court's ECF system (to the extent it is clearly labeled as a Position Statement) with the Court. The Receiver may compile multiple Position Statements received from claimants into one or more filings, and may at the Receiver's option either redact any confidential information from a claimant's Position Statement before filing it in the public record, or return the Position Statement to claimant for redaction in accordance with the Court's order.

8. Receiver Submission.

a. Within 21 days after the deadline for submissions by claimants and the SEC, the Receiver may file his recommendations regarding the claims, his submission in support of his avoidance actions, and any response to claimants' Position Statements or disclosure of expert opinion as set forth in Section 5(f) above. The Receiver does not represent any of the claimants and does not advocate on their behalf.

b. The Receiver will serve his submission via email on all claimants included on the Email Service List for the Group.

9. Response from Parties to Position Papers.

   a. Within 14 days after the deadline for the Receiver's submission, the claimants and the SEC shall have the opportunity to file responses to all previous submissions regarding the Claims and the Receiver's avoidance actions ("Responsive Statements"). The Responsive Statements may include disclosure of rebuttal expert opinions responding to opinions included in the Position Statements as set forth in Section 5(f) above.

   b. Responsive Statements shall be filed and served in the same manner as the Position Statements as set forth in Section 7(d) above.

10. Hearing.

   a. Unless it determines that competing claims or avoidance claims may be summarily determined without a hearing consistent with due process, the Court will set at time for a hearing (notice of which will be provided), which, if necessary, will include the opportunity to present evidence to the extent material factual disputes exist.

11. Ruling.

   a. The Court will set a time to issue a written ruling. The ruling as to any particular Group of properties identified in any of the Receiver's Framing Reports will not have preclusive effect with respect to any property or claimant that is not the subject of the pending Framing Report.

12. Interim Distribution Plan.

   a. Except to the extent addressed in the Court's ruling, the Receiver will submit an interim distribution plan to the Court based on such ruling, subject to a final plan of distribution.

      **DISPUTED ISSUE: INTERIM DISTRIBUTION PLAN**

      **Institutional Lenders' Position. The Institutional Lenders believe the Receiver should submit his interim distribution plan within 14 days of the Court's ruling.**

      **Receiver's Position. The Receiver objects to setting any date for interim distribution, as there will be issues that the Court will need to resolve that will not be done 14 days after the**

**Court's ruling, including but not limited to issues regarding the receiver's lien.  Further, a distribution plan is not something that can be put together in that short a time period. The Receiver's position is that such matters can be discussed with the Court after the ruling referenced in Section 11 has been made.**

**Certain Investor Lenders' Position.  Certain of the Investor Lenders agree with the Institutional Lenders that the Court should set a deadline, whether in its ruling or in this Outline, for submission of the Interim Distribution Plan to make sure that any funds available for distribution are promptly distributed.**

13. Time Frames.

   a. The time frames set forth above are based on good faith estimates prior to the commencement of the proceedings.  Such time frames may be adjusted by the Court upon good cause shown.

14. **DISPUTED ISSUE:  RECEIVER'S LIEN**

**Receiver's Position.  The Receiver is working on a plan for the allocation, and payment of approved fees pursuant to the Receiver's lien ordered by the Court (Dkt. No. 824), as well as for fees that will be incurred in the administration of this Claims Process, which he intends to submit separately as soon as possible before the next status hearing on January 29, 2021. The Receiver does not agree with the process set forth by the Institutional Lenders below, and will further respond to the Institutional Lenders' proposal below in that submission.**

**Institutional Lenders' Position.  The Institutional Lenders sought to include a section in this Report addressing how the contested issue of lien priority between the Receiver and the Claimants would be resolved in the Claims Process.  Therefore, the Institutional Lenders proposed the following:**

   a. **Within 14 days of the Court's ruling on lien priority between the Claimants and avoidance actions, if any, the Receiver shall file any request for a Receiver's Lien that has priority over the liens determined by the Court, specifying the amount of its priority claim, providing a**

17

**detailed breakdown of the time entries on which that claim is based, the details, purpose, and allocation of the expenditures between properties, and the factual and legal basis of the Receiver's priority claim.**

b. **Claimants shall have 14 days to respond to the Receiver's request for a priority Receiver's Lien.**

**The Institutional Lenders believe that the inclusion of such a procedure in the Claims Process is consistent with the Court's October 26, 2020 Order. (Dkt. 824, p. 6)[1]. As indicated above, the Receiver has not yet submitted its plan. As a result, the Institutional Lenders reserve the right to respond to the Receiver's plan once disclosed.**

---

[1] Per that Order: "The priority of the Receiver's lien as to any particular property or properties, however, will be determined by the Court as part of the claims approval process."

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES** **AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | Civil Action No. 18-cv-5587 |
| **v.** | ) ) | Hon. John Z. Lee |
| **EQUITYBUILD, INC.,** **EQUITYBUILD FINANCE, LLC,** **JEROME H. COHEN, and SHAUN** **D. COHEN,** | ) ) ) ) ) | Mag. Judge Young B. Kim |
| **Defendants.** | ) ) | |

To: EquityBuild Claimant

You are receiving this document because you have asserted a claim in the matter of SEC v. EquityBuild, Inc. et al., Case No. 18 CV 05587, pending in the federal district court for the Northern District of Illinois.

The Court is addressing the claims asserted in this case by groups of properties. You have asserted a claim against one or more of the properties in the group of properties that is currently before the Court (Group #___), which consists of the following properties:

LIST PROPERTIES IN GROUP

All investors who have asserted a claim in Group #___ are being served with these discovery requests so that the Court and other claimants asserting a claim against the same properties may properly evaluate the claims against the properties in Group #___.

The discovery requests include (1) requests to provide the documents described; and (2) requests to answer questions in writing.

You are required to provide a copy of all of the requested documents and a written answer to all of the questions asked. You will need to search your records to find the requested documents and the information necessary to answer the questions.

Exhibit

B

We understand that you have already submitted a proof of claim form and supporting documentation. There is no need for you to send anything you previously submitted again. But, please be aware you are being requested to provide documents and information in addition to what you already submitted with your proof of claim, so, if you did not already submit any one or more of the requested documents with your proof of claim, you must provide those documents at this time.

You also have the ability to ask written questions or to request documents from the other participants in Group #___ by sending such written questions or requests for documents to that participant at the address provided on the Group #___ Contact List accompanying these discovery requests.

The Court, however, has ordered that in addition to these questions and document requests, a claimant may not ask more than ____ additional questions and may not request more than ____ additional categories of documents, unless the claimant first obtains an order from the Court allowing it. Such additional requests cannot be served until after the deadline for responding to these requests. If you receive such additional requests, you must respond to them in the same manner that you are responding to this request.

Please refer to the following instructions and definitions to assist you in answering these discovery requests.

<u>INSTRUCTIONS</u>

    a. By DATE, you must email your answers to the questions and any additional documents you have not already submitted to the Receiver at equitybuildreceiver@rdaplaw.net, who will then make arrangements for distribution to the SEC and every other claimant asserting an interest in the same property as you. If your documents are too large to attach to your email, please say so in the email and a link to upload the documents will be provided to you. If you are unable to scan and email electronic copies of your answers and the documents (the preferred means of delivery), they instead may be mailed to:

    EquityBuild Receiver
    c/o Rachlis Duff & Peel, LLC
    542 S. Dearborn, Suite 900
    Chicago, IL 60605

    b. We understand that you have already submitted a Proof of Claim form and supporting documentation. There is no need for you to furnish again anything you previously furnished. But, please be aware that you are being requested

to provide documents in addition to the documents you already furnished with your Proof of Claim. Therefore, you must review the Proof of Claim you submitted to determine whether you furnished all of the documents that you are requested to produce in these discovery requests. If there are documents or information that you did not furnish to the Receiver previously, you need to do so now. If you determine that you previously furnished all of the documents in your Proof of Claim, you may answer the request by confirming in writing that you already submitted the requested documents.

c. If you have a doubt whether you provided a document with your Proof of Claim or whether a document is related to a request, you should provide it now.

d. You must provide both documents that you have in your possession and documents that you gave to someone or that someone else may be holding for you, such as a spouse, a relative, a friend, a lawyer, an accountant, or an investment adviser.

e. You are required to answer all of the questions contained in this document under oath. A verification form is located at the end of this document.

f. When you respond to a particular question, please number each response to indicate the question you are answering.

g. If you have confirmed that you already furnished all of the information sought by a question in your Proof of Claim submission, you can answer the question by stating that you already submitted the requested information.

h. After you have sent Your Responses to these discovery requests, you must supplement Your Responses or correct your responses if You learn that Your responses were incomplete or incorrect.

<u>DEFINITIONS</u>

a. "EquityBuild" includes EquityBuild, Inc. and all the affiliates identified on the Proof of Claim form used in this proceeding.

b. An "EquityBuild Asset" is any real or personal property in which EquityBuild or an EquityBuild affiliate has or had an ownership interest, such as the properties in this group of properties.

c. "Mortgage" means a document recorded against a property in this group that secures repayment of a loan or an investment.

3

d.  "Mortgage Loan" means a loan or investment that is secured by a mortgage on a property in this group.

e.  "Loan" means a loan or investment that is not secured by a mortgage.

f.  "You" or "Your" means the person, business, or entity who made the investment with or provided a loan to EquityBuild.

g.  "Interest" means any claim you assert to or in an EquityBuild Asset in this group of properties. This interest could include, for example, a direct cash investment or an investment in the form of a Mortgage, a Mortgage Loan, or Loan related to an EquityBuild Asset in this group of properties.

h.  "Documents" means both paper documents and electronically stored information (such as "word" documents, "pdf." documents, "Excel" documents), and includes letters, statements, spreadsheets, e-mails, and text messages.

i.  "Original Transaction" means the transaction in which you acquired a claim of ownership or other Interest in an EquityBuild Asset or affiliate.

j.  A "Rollover Transaction" means a situation where You had an Interest in an EquityBuild Asset or affiliate that was changed or converted, in whole or in part, to an ownership or other Interest in another EquityBuild Asset or affiliate. A Rollover Transaction occurred, for example, if You had an Interest in a Mortgage on an EquityBuild Asset and, instead of receiving a cash distribution, You received an Interest in another EquityBuild Asset or affiliate.

## I.  **Requests for Documents.**

To The Extent You Have Not Already Provided These With Your Proof Of Claim Form, You Need to Provide the Following Documents:

1. All documents you received from EquityBuild related to each Original Transaction and each Rollover Transaction involving a property in this group of properties in which you have or had an Interest, such as:
   - account statements,
   - financial reports,
   - solicitations,
   - private placement memoranda,

4

- offering memoranda,
- brochures,
- advertisements,
- information sheets,
- receipts.

2. All documents that you executed or were requested to execute regarding your Interest in any EquityBuild Asset or property in this group of properties, such as:
    - Mortgages,
    - Promissory notes,
    - Servicing agreements,
    - Collateral agreements,
    - Powers of attorney,
    - Operating Agreements,
    - Contracts or other agreements,
    - Releases or satisfaction of mortgages.

3. All e-mails and correspondence or text messages between You and anyone working for or on behalf of EquityBuild relating to your Interest involving any EquityBuild Asset or property in this group of properties or a Rollover Transaction involving any property that is in this group of properties.

4. All documents relating to any Rollover Transaction of Your Interest involving any property in this group of properties to a different EquityBuild Asset, regardless of whether that EquityBuild Asset is included in this group of properties.

NOTE: This Request asks for, and you must provide, the requested documents concerning Rollover Transactions regardless of whether the EquityBuild Asset that your Interest was rolled into is included in this group of properties.

5. All documents regarding the payments You made (or other valuable consideration You gave) for your Interest in an EquityBuild Asset.

6. All documents regarding the payments or assets You received, either as distributions on or payoffs of Your Interest, including but not limited to bank statements showing the receipt or deposit of a distribution or payoff.

7. All documents related to any actual or proposed refinancing or payoff of your Interest, a Mortgage Loan or Loan relating to a property in this group of properties in which You have or had an Interest.

8. All documents in which You were ever told that your Interest or a Mortgage Loan or Loan may be refinanced or paid off.

9. All documents in which You were ever told that that your Interest, a Mortgage Loan or Loan was refinanced or paid off.

10. All documents in which you were requested to release your Interest, a Mortgage, Mortgage Loan or Loan.

11. All documents in which you released or agreed to release your Interest, a Mortgage, Mortgage Loan or Loan.

12. All documents relating to the payment of funds on a Mortgage Loan by the borrower or anyone else (such as a title company or a lending institution) to EquityBuild or to anyone identified on the Mortgage Loan as the lender or the mortgagee.

13. All documents authorizing EquityBuild to collect funds on a Mortgage Loan, and any documents you received that showed that EquityBuild in fact collected such funds.

## II.    **Written Questions**

1. Was the "Claimant Name" identified on Your Proof of Claim the actual entity that made the investment in or Mortgage Loan or Loan to a property in the group of properties?   If not, please identify the name of the individual or entity that made the investment or provided the Mortgage Loan or Loan.

2. Are the email address and telephone number identified on Your Proof of Claim the best way to contact You?  If not, please identify the best email address and phone number to contact You.

3. How did you first learn about EquityBuild and the opportunity to lend money or otherwise invest in an EquityBuild Asset?  If you learned about EquityBuild from an individual, please state that person's name and business affiliation (if known).

4. State the names of all persons You (or Your representative) interacted with at or on behalf of EquityBuild, including anyone who said that he or

6

she was an agent, employee, or representative of EquityBuild, about Your Interest, investments, Mortgage, Mortgage Loan or Loans relative to any property in this group. For each person, please also state that person's address and best phone number and email address to contact the person(s) You communicated with (by phone, by email, text or letter, or in person).

5. For each property in this group of properties in which You claim an Interest, state the amount You paid for the Interest or the type and amount of other consideration given for the Interest, the date that You paid or gave consideration for the Interest, and to whom You paid this money or other consideration.

6. For each property in this group of properties in which You claim an Interest, state whether You or anyone on your behalf received any payments, distributions, or other form of return on your investment or Interest, and state the amount, the date, and from whom You received the payment, distribution or return on Your investment or Interest.

7. For each property in this group of properties in which You claim an Interest, state the amount that is due to You for your Interest in each specific property.

8. State whether any Interest You had in a property in this group of properties was the subject of a "Rollover Transaction" (see Definition of "Rollover Transaction" above), and for each Rollover Transaction, state the date of the Rollover Transaction, identify Your original Interest by type of investment, the amount of the original investment, and property address, and identify Your rolled-over Interest by type of interest, amount of the rolled-over Interest, and property address (if any).

9. For each property in this group of properties in which You assert an Interest, state whether You have previously made any representations or submitted any documents regarding Your Interest in any other judicial proceedings, such as bankruptcy, estate administration, marriage dissolution, tax return or proceeding, other judicial, governmental, or administrative proceeding or other loan/credit/insurance applications regarding that Interest and, if so, state the property and the proceeding (Court and Case Number).

10. Do you claim an Interest in a property in this group of properties based upon one or more Mortgage Loans or Loans?

    a.    If so, did you ever authorize anyone or any entity to collect any amount due on the Mortgage Loan(s) or Loan(s)?

    b.    If so, state the name of the person or entity who you authorized to collect any amount due on the Mortgage Loan(s) or Loan(s).

    c.    If so, is there a document in which you authorized that person or entity to collect any amount on the Mortgage Loan(s) or Loan(s)?

    d.    If so, have you furnished that document in your Proof of Claim or in response to these discovery requests?

11. Were you ever told that there were or would be one or more other Mortgage Loans or Loans on any property in this group of properties in which you claim an Interest?

    a.    If so, please state when, how, and by whom you were told of the other Mortgage Loans or Loans.

    b.    If you were told in a document, have you furnished a copy of that document with your Proof of Claim or in response to these discovery requests?

12. Did you ever release or authorize any other person or entity to release your Interest, or a Mortgage Loan or Loan(s) on a property in this group of properties?

    a.    If so, state when and how you released or authorized the release of your Interest or the Mortgage Loan or Loan(s).

    b.    If you authorized a person or entity to release your Interest in a Mortgage Loan or Loan(s) on a property in this group of properties, state the name of the person or entity and the date when you authorized the person or entity or entity to release your Interest.

    c.    If the release or authorization was in a document, have you furnished a copy of that document in your Proof of Claim or in response to these discovery requests?

13. Describe all efforts you, or anyone acting on your behalf, made before making your investment in a property in this group to determine if there were any other mortgages on the same property, and state whether you

8

were aware of any such other mortgages when you made your investment.

14. For each property in this group of properties for which You assert an Interest, state whether You believe that your Interest should be paid before another claimant's Interest in that same EquityBuild Asset and, if so, state the facts and documents that support Your claim.

15. For each property in this group of properties in which You assert an Interest, state whether you believe that an Interest claimed by any other person or entity in that same EquityBuild Asset is not valid or is junior to Your Interest and, if so, state the facts and documents that support Your claim.

16. If any Document requested above was once in Your possession, but is no longer in Your possession, state where the Document was located when you possessed it, how it was stored, when, how and why it was disposed of, where it is located now, if known, and identify all persons familiar with the contents of said Document.

17. Were you aware that EquityBuild, or anyone identified on the Mortgage Loan as the lender or the mortgagee, received funds on a Mortgage Loan from the borrower or anyone else (such as a title company or a lending institution) to pay any or all of the amount due? If your answer is yes, state each date when you became aware of EquityBuild's receipt of any such funds and, in each instance, how you became aware that EquityBuild received such funds.

VERIFICATION

I, [name of claimant], verify that I have reviewed the answers that I have provided to the Questions above and they are true and correct to the best of my information, knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

_____

Executed on (date).

(Signature)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) )  ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 18-cv-5587** |
| **v.** | ) ) | **Hon. John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) ) | **Mag. Judge Young B. Kim** |
| **Defendants.** | ) ) | |

## STANDARD DISCOVERY REQUESTS TO INSTITUTIONAL LENDERS

Pursuant to the procedures ordered by the Court in this matter on DATE, each Institutional Lender (as that term is defined in the Proof of Claim form approved by the Court in this matter) shall answer these interrogatories and produce the documents requested within 30 days of these discovery requests.

## Definitions

1. The term "Group" means the group of properties that is currently before the Court, which for purposes of these requests is comprising the following properties:

   LIST PROPERTIES IN GROUP

2. The term "Investor-Lender" shall have the meaning ascribed to it in the Proof of Claim form approved by the Court in this matter.



Exhibit

C

1

**Instructions**

1. Your responses to these requests should be verified and should cover the time period from the making of the loan for the property which is the subject your response to the present.

2. Your responses should be made available to the SEC, the Receiver, and all litigants in the Group by sending them an email link to the responses at the address provided on the Group Email List accompanying these discovery requests, or at such other address as they may otherwise provide in a subsequent change of address document filed in this litigation.


**I.    DOCUMENT REQUESTS**

1. All documents evidencing, reflecting, or constituting communications between you, or anyone acting on your behalf, and EquityBuild or its affiliates, relating to EquityBuild's request for financing or your subsequent provision of financing secured by a property in the Group.

2. All documents evidencing, reflecting, or supporting the position that EquityBuild Investor-Lenders released their mortgages on a property in the Group, and/or that the Investor-Lenders were paid in connection with the release of their mortgages on the subject property.

3. All documents evidencing, reflecting, or supporting the position that EquityBuild, or its affiliates, were authorized by and/or that consent was provided by Investor-Lenders to release their mortgages on a property in the Group.

4. All documents related to any inquiry by you, or anyone acting your behalf, related to (a) whether the EquityBuild Investor-Lenders released their mortgages on a property in the Group, and/or (b) whether the Investor-Lenders were paid in connection with the release of their mortgages on the subject property, or (c) whether EquityBuild, or its affiliates, were authorized by Investor-Lenders to release the Investor-Lenders' mortgages on the subject property.

5. Provide the following documents related to the loan against the property in the Group that is the subject of your Proof of Claim, as well as all documents evidencing, reflecting, or constituting internal communications, or

communications between you, or anyone acting on your behalf, and any title company regarding:

> (1) the origination of the loan;
>
> (2) the closing of the loan (including all pre-closing communications including but not limited to communications regarding the title commitment and all amendments thereto, any special exceptions to title (and any recorded documents provided or obtained related to those special exceptions), drafts of and final settlement statements, escrow instructions and escrow agreements)
>
> (2) the priority of the loan;
>
> (3) any due diligence undertaken prior to funding;
>
> (4) any communications with EquityBuild or the Cohens;
>
> (5) knowledge of and investigation regarding prior encumbrances;
>
> (6) whether the investor-lenders released their mortgages on a property;
>
> (7) whether the investor-lenders were paid in connection with the release of their mortgages on a property;
>
> (8) whether EquityBuild or its affiliates were authorized by the investor lenders to release their mortgages on the property;
>
> (9) exchanges with the title company for coverage under title insurance policies and related communications, including but not limited to all coverage correspondence.

6. All documents related to whether EquityBuild, or its affiliates, had sufficient assets to repay its creditors at the time you obtained a security interest in any property in the Group against which you have made a Proof of Claim.

7. To the extent not already submitted in support of your Proof of Claim, all underwriting files and/or other information reflecting your investigation of EquityBuild and its officers and affiliates in connection with your decision to provide financing on any property in the Group.

8. Produce each title insurance policy you obtained in relation to a property in the Group.

## II.    INTERROGATORIES

1. Did any EquityBuild Investor-Lenders release their mortgages on any property in the Group? If so, describe in detail the basis for your belief that the Investor-Lenders released their mortgages, including by identifying all Investor-Lenders that released their mortgage(s).

2. Were any EquityBuild Investor-Lenders paid in connection with the release of their mortgages on the subject property? If so, describe in detail the basis for your belief that the Investor-Lenders were paid in connection with the release of their mortgages, including by identifying all such Investor-Lenders and the amounts they were paid.

3. Was EquityBuild, or its affiliates, authorized by the Investor-Lenders to release their mortgages on the subject property? If so, describe in detail the basis for your belief that the Investor-Lenders authorized EquityBuild, or its affiliates, to release their mortgages, including by identifying all Investor-Lenders that authorized EquityBuild to release their mortgage(s).

4. Describe all efforts you, or anyone acting on your behalf, made before extending financing on any property in the Group to determine (a) whether the EquityBuild Investor-Lenders voluntarily released their mortgages on any property in the Group, or (b) whether the EquityBuild investors were paid in connection with the release of their mortgages on the subject property, or (c) whether EquityBuild, or its affiliates, were authorized by the Investor-Lenders to release their mortgages on the subject property, and identify the person(s) involved in any such efforts, and the role of each such person.

5. Describe all efforts you, or anyone acting on your behalf, made to determine whether EquityBuild, or its affiliates, had sufficient assets to repay its creditors, at the time you obtained a security interest in any property in the Group, and identify the person(s) involved in any such efforts, and the role of any such person.