```
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
      UNITED STATES SECURITIES AND    ) Docket No. 18 C 5587
 4    EXCHANGE COMMISSION,            )
                                      )
 5                    Plaintiffs,     )
                                      )
 6              vs.                   )
                                      )
 7    EQUITYBUILD, INC., EQUITYBUILD  )
      FINANCE, LLC, JEROME H. COHEN,  )
 8    AND SHAUN D. COHEN,             ) Chicago, Illinois
                                      ) January 29, 2021
 9                    Defendants.     ) 11:00 o'clock a.m.

10
           TRANSCRIPT OF PROCEEDINGS - VIDEOCONFERENCE STATUS
11                BEFORE THE HONORABLE JOHN Z. LEE

12
      VIDEOCONFERENCE APPEARANCES:
13

14    For the Plaintiff:        U.S. SECURITIES & EXCHANGE
                                   COMMISSION
15                              BY:  MR. BENJAMIN J. HANAUER
                                175 W. Jackson Blvd., Suite 900
16                              Chicago, Illinois  60604

17
      For the Receiver:         RACHLIS, DUFF, PEEL & KAPLAN, LLC
18                              BY:  MR. MICHAEL RACHLIS
                                     MS. JODI ROSEN WINE
19                              542 South Dearborn, Suite 900
                                Chicago, Illinois  60605
20

21    Federal Home Loan Mortgage DYKEMA GOSSETT, PLLC
      Corporation, Wilmington    BY:  MR. MICHAEL A. GILMAN
22    Trust, Citibank, Federal   10 South Wacker Drive, Suite 2300
      National Mortgage Assoc.,  Chicago, Illinois  60606
23    U.S. Bank, Sabal TL,
      Midland Loan Svcs., BC57,
24    and UBS AG:,

25
```

```
 1   APPEARANCES (Cont'd):

 2
     For Midland Loan Svcs.,      STAHL, COWEN, CROWLEY, ADDIS, LLC
 3   Thorofare Asset Based        BY:  MR. RONALD A. DAMASHEK
     Lending, Liberty EBCP,       55 West Monroe Street, Suite 1200
 4   And Citibank:                Chicago, Illinois  60603

 5
     For Annie Chang and a        LABATON SUCHAROW
 6   Class of Investors:          BY:  MR. ROSS KAMHI
                                  140 BROADWAY
 7                                New York, New York  10005

 8
     For Intervening Investors:   BOODELL & DOMANSKIS, LLC
 9                                BY:  MR. MAX A. STEIN
                                  1 North Franklin, Suite 1200
10                                Chicago, Illinois  60606

11
     Also Present:                MR. KEVIN B. DUFF, Receiver
12                                MR. DAVID MARCUS

13
     Court Reporter:              MR. JOSEPH RICKHOFF
14                                Official Court Reporter
                                  219 S. Dearborn St., Suite 2128
15                                Chicago, Illinois  60604
                                  (312) 435-5562
16
                    * * * * * * * * * * * * * * * *
17
                          PROCEEDINGS RECORDED BY
18                        MECHANICAL STENOGRAPHY
                      TRANSCRIPT PRODUCED BY COMPUTER
19

20

21

22

23

24

25
```

1    (Proceedings had via videoconference:)

2      THE CLERK:  Case 18 CV 5587, SEC vs. Equitybuild.

3      THE COURT:  All right.  Before we begin, if I might

4 ask everyone to make sure that they've muted themselves unless

5 they are speaking.  That would be helpful, given the number of

6 participants that we have here.

7      So, let's start with the counsel for the SEC.  Can

8 you state your name for the record, please.

9      MR. HANAUER:  Good morning, your Honor, Ben Hanauer

10 for the SEC.

11      THE COURT:  All right.

12      And who is representing the receiver?

13      MR. RACHLIS:  Good morning, your Honor, Michael

14 Rachlis and Jodi Rosen Wine on behalf of the receiver, and

15 Kevin Duff is also trying to log in and will be on the call,

16 as well.

17      THE COURT:  Okay.

18      And we've had a couple of requests for notifications

19 from various attorneys who say that they will be addressing

20 the Court and arguing on behalf of their clients on certain

21 issues.  Who will be stating the case for -- or taking the

22 lead for the institutional lenders today?

23      MR. DAMASHEK:  Good morning, Judge, Ron Damashek, and

24 I believe Mike Gilman will be joining in, as well, on behalf

25 of the institutional lenders as primary lead.

1          THE COURT:  Are there attorneys here who wish to

2   address the Court at some point during this hearing on behalf

3   of the individual investors?

4          MR. STEIN:  Yes, your Honor.  Max Stein on behalf of

5   the individual investors identified.  I'm one of the

6   signatories to the joint status report, and rather than list

7   the 50 or so names on that joint status report, those are the

8   folks on whose behalf I will be speaking today.

9          THE COURT:  Okay.

10          Are there any other attorneys that wish to address

11   the Court today?

12          MR. KAMHI:  I just want to say I'm on.  This is Ross

13   Kamhi.  We represent a class of investors in an action pending

14   in the Northern District of California.  I just wanted to

15   state my appearance for the record.

16          THE COURT:  And, I'm sorry, can you spell your name.

17          MR. KAMHI:  Sure.  It's Ross is the first name,

18   R-o-s-s.  Last name is K-a-m, as in Michael, h-i.

19          THE COURT:  All right.

20          So, I've reviewed the joint status report that was

21   submitted by the parties in this case, and so these are the

22   items that I have on my list:  First is to address the issues

23   raised by the parties with regard to uncontested -- or

24   properties with uncontested claims and whether or not they

25   should be part of this claims process that we are outlining.

1          And, then, I will address the various disputes that

2     the parties have raised with regard to various aspects of the

3     claims process that are set out in the exhibit to the joint

4     status report.

5          So, let's start, then, with the first issue, which is

6     there appears to be a dispute as to whether or not -- and I

7     just want to make sure I understand this right -- whether or

8     not properties where there are no contested claims should be

9     part of this claims process.  It appears that the receiver

10    believes that they should; certain institutional lenders

11    believe that they should not.  And I wanted to hear from the

12    receiver as to why the receiver feels that those properties

13    should be part of this claims process.

14          MR. RACHLIS:  Your Honor, this is Michael Rachlis.  I

15    will try and address that issue.

16          I think that from the get-go here, we originally had

17    contemplated that there was going to be discovery and other

18    issues that are all part of the claims process.  And as your

19    Honor will recall from the meetings held that led to the

20    motion that was filed back in February and through these

21    hearings that have been held through the past 12 months, there

22    has been, essentially, a sort of like narrowing of the scope

23    to some degree; but also a clarity that was reached that all

24    of the claims were going to be part of this process, all of

25    the claims were going to be reviewed.

1          I mean, there really hasn't been that -- the entire

2     review process -- the receivership, its role, right, is in

3     terms of reviewing the validity, the classification, the

4     amount of those claims -- are all part of this claims process

5     and needs to be done per claim.

6          As we have gone through this process, another issue

7     that arises, of course -- and the Court, we believe, has

8     indicated -- that any issue associated with a claim is going

9     to be resolved by the claims process.

10         So, for example, if there's going to be discovery on

11    a certain claim that the receiver needs to take after

12    evaluating it, that's going to be part of this claims process.

13    If there's going to be avoidance types of issues or

14    affirmative -- you know, whether it be fraudulent transfer or

15    inequitable subordination type of issue, that will be raised

16    as part of this claims process.

17         Those don't have anything to do with whether or not

18    one aspect of the claims process here, you know, that's been

19    focused on -- really, the issue of whether there's a dispute

20    on priority would be -- you know, among actual live claimants

21    is -- that's been the focus.  But that's not the only focus of

22    the claims process.  This process goes well beyond that.  And,

23    so, the receiver has more to do than just look at that issue.

24         And as a result of the other tasks that are required

25    by the receiver in order to make a recommendation to the Court

1  ultimately as to the claim, as to the amount and for purposes

2  of an ultimate distribution, it is this process that's going

3  to be utilized in order to do that.

4        So, it is the view of the receiver that this process

5  with the proposed tranches, we'll be going through property by

6  property and the associated claims and ultimately then making

7  that resolution.

8        The good part of that, we think there's efficiency.

9  I think the Court has, I think, correctly sort of identified

10 that there are efficiencies about being able to do that.  And

11 we also think that there -- those efficiencies will allow, if

12 there are fewer disputes -- for example, no -- if there are,

13 you know, the handful of claims that don't have the priority

14 dispute, they may be able to get done in a quicker fashion,

15 which is even better.  That is certainly all of the goals

16 here.

17        But, ultimately, there will need to be a process that

18 allows for the evaluation of these claims on all of the other,

19 you know, sort of list of items that need to be checked off.

20 And priority dispute is just one of them.  And without that

21 process in place, without the ability to perform the tasks

22 that are necessary which are part of this process, we wouldn't

23 be able to do our job.

24        So, in order to be able to do that efficiently and

25 through the process that we think that basically has evolved

1   where we're at today, this seems to be the most efficient and

2   best way to go about doing it versus having an alternative

3   process that would be superimposed on top of the one that the

4   Court is working on implementing, which in some sense could

5   undermine those efforts.

6           I mean, you know, this is long in coming, and we

7   think that there would be -- there's also efficiency to not --

8   to basically be focused on the tranches, focused on the claims

9   before the Court when those tranches are out there, and doing

10  the tasks that the receiver would need to do, not only on

11  priority or classifica- -- you know, the priority dispute, but

12  beyond that.

13          So, it's for those reasons -- and I think we've also

14  articulated them in opposition to a motion that was filed on

15  this, as well, which we think those reasons, as well, support

16  the implementation of this process that would -- that

17  encompasses the entirety of the claim -- entirety of all

18  claims.

19          THE COURT:  So, what you're saying is that even where

20  one property has, let's say, hypothetically one claim, okay,

21  and that claim is not contested, that the receiver wants to

22  analyze and evaluate that claim to see whether or not that

23  claim is valid?

24          MR. RACHLIS:  Yes, your Honor.  I mean -- and

25  continue along the process that the Court has sort of

1   attempted to sort of structure.  If discovery is needed when

2   looking at that claim, we would proceed to take that discovery

3   even -- you don't need a priority dispute in order to have

4   discovery on an issue.

5          So, in that same hypothetical that your Honor has

6   indicated, there could be an issue about inquiry notice that

7   needs further review and, indeed, could lead to a

8   recommendation to the Court that the amount -- that the

9   validity of that claim is being contested, that the amount is

10  being contested, and so on.

11         THE COURT:  How many of those properties are there?

12         MR. RACHLIS:  There are not a lot.  There are not --

13  the vast majority have competing claims, your Honor.  I know

14  that -- you'll forgive me.  I know that there are a few of

15  those that have solely institutional lender debt.  I would say

16  it's less than five.  So, it's less than you can count on one

17  hand.

18         And then there are some with just investor lender

19  debt on them, which is subject to the exact same analysis.

20  There's no -- we're not -- there's no differentiation.  The

21  same issue that I've tried to identify for your Honor will

22  apply to those equally, right?

23         There could be -- you know, there could be an

24  investor lender, let's say, of 20 -- or 40 investor lenders

25  and one or two of them may have been, loosely stated, you

1    know, working with the Cohens or doing something with the

2    Cohens, therefore putting them on notice of the Ponzi scheme.

3              THE COURT:  My question was:  Are we talking about

4    dozens?  Are we talking about ten?  How many are we talking

5    about?

6              MS. WINE:  Your Honor, if I may, this is Jodi Wine

7    for the receiver.

8              THE COURT:  Yes.

9              MS. WINE:  The motion that is pending --

10             THE COURT REPORTER:  Ms. Wine, excuse me.  You have

11   an echo.  Could you take yourself off speakerphone, please.

12             MS. WINE:  I don't know how to do that.  I'm on the

13   video.

14             THE COURT REPORTER:  Okay.  Very good.

15             MS. WINE:  Can you hear me?

16             THE COURT REPORTER:  Yes, I can.

17             MS. WINE:  Okay.

18             I was saying Docket No. 785 is a motion that was

19   filed by certain of the institutional lenders regarding two

20   properties.  Those two properties are ones that have only an

21   institutional lender loan on them.  Then in the reply to that

22   motion, another institutional lender raised that there are

23   several properties in their portfolio that also have no

24   competing claims.  And it's about ten properties.  But those

25   are part of a cross-collateralized loan.  So, there's one loan

1   that relates to both those properties and other properties

2   with competing claims.

3        Those are the entirety of the properties that have

4   one institutional lender.

5        MR. RACHLIS:  But there are others with also --

6   similarly situated but just have investor lender claims, too,

7   on them.  So, without institutional lender claims.  And there

8   are probably -- there are more than a dozen of those, I

9   believe, your Honor, that fall under that bucket.

10        THE COURT:  Okay.

11        Let me hear from the institutional lenders.

12        Mr. Damashek, Mr. Gilman, who will address this

13   issue?

14        MR. DAMASHEK:  Judge, Ron Damashek.

15        I'd like to start, but I'd also like to give an

16   opportunity to the institutional lenders' attorneys for those

17   two properties that -- I'm sorry, to those two contests that

18   Ms. Wine just mentioned related to Docket 785 because there is

19   a motion pending on that.

20        From the broadest scheme, I've always understood this

21   to be a motion to resolve disputed claims on which there is

22   competing lien priority.  And we've gone through a detailed

23   process of identifying -- getting all of the proofs of claim

24   in and, then, getting a scheme together where we would have

25   standard discovery requests to those competing claimants and

1   we would allow them follow-up discovery requests to those

2   competing claimants and position statements, et cetera,

3   between those competing claimants.  That's a procedure that

4   requires months of time between, you know, hundreds or

5   thousands of these individual investors and the institutional

6   lenders on a group-by-group basis.

7          None of that is relevant in the context of properties

8   on which there are no competing lien claims.  The only issue

9   there is whether an institutional lender who has submitted all

10  of its loan documents, all of its backup pursuant to the

11  proofs of claim process has a lien against that property.  And

12  it's not a question of lien priority between two competing

13  lenders.

14         So, just as a practical matter, we know that from the

15  proofs of claim, from what the receiver has seen.  There is no

16  need for four to five months of discovery, et cetera, related

17  to competing lien claimants.  And if the receiver has an issue

18  with a particular lien claim saying it's not valid or the

19  right number is not there, they certainly can pursue that

20  issue.

21         But there is no reason to drag that into this dispute

22  resolution process.  And there's no reason why not to have a

23  separate mechanism for addressing those issues.

24         You know, as Ms. Wine said, we really only have two

25  or three mortgage liens on the institutional lender side.  I

1   don't know what's going on on the individual investor side.

2   But we're talking about a couple of properties.  Those lenders

3   have already waited the two years up till now in the

4   receivership process.  They may be Group No. 4, 5, 6, 7.  If

5   there's no competing lien claimant, there's no reason to delay

6   resolution of those loans, put them in the same boat.  Why not

7   figure out a mechanism to resolve them more quickly.

8           And now I believe it's -- I don't know if

9   Ms. Nicholson or Mr. Napoli are on the phone, but they are the

10  parties to those other loans.  I'd like to give them the

11  opportunity to address it from their perspective.

12          THE COURT:  There's no need.  That's not going to be

13  helpful right now.

14          Mr. Rachlis, do you have a response?

15          MR. RACHLIS:  Yes.

16          I do think that the focus that is being put forward

17  here is, basically, an effort to look at the claims

18  application.  And the focus here is on -- from -- the argument

19  that's being made is to look at one line, and that is whether

20  or not there's a lien priority dispute.  It ignores that there

21  are other issues that relate to each claim.  And it ignores

22  the fact that there's been a specific and a conscious deferral

23  to this time period for the evaluation of those claims and the

24  other line items that need to be addressed, as well as

25  discovery that needs to be addressed.

1    That is not to say that those are mandatory, that
2    those will occur, that those can't be done in an efficient
3    way; but to focus on that one item ignores the other items
4    that need to be addressed.  And I think it does a disservice
5    then because, look, if we -- we know one thing -- so that's a
6    problem.

7    We also know that when these other alternative -- we
8    are venturing into the ability to go through each of these
9    tranches, each of these groups of properties.  The best -- as
10   the status -- the joint status -- report reflected, the
11   receiver's view is that there should not be collateral motions
12   by other claimants that are being presented because those will
13   detract from the resources and time that are going to be spent
14   and needed for the other -- for the claims that are part of
15   the properties in the tranche.  And, unfortunately, there's a
16   concern that that's going to be occur.

17   This is more than just two properties.  There are
18   other properties that the institutional -- there are two in
19   the motion.  There are at least eight to ten associated with
20   single family homes that are part of cross-collateralized
21   loans, that are still going to need to be addressed as part of
22   that whole -- because they're cross-collateralized, there's
23   still going to be discovery and needs associated with the one
24   loan.  There are at least a dozen of the institutional -- I'm
25   sorry, of the investor lenders that are in the same position,

1    who are also going to need to be addressed.

2         So, this is not just a one-off situation.  There's

3    going to be more than that.  And the whole process seems to --

4    we have deferred issues so that they can be addressed now.

5    And we intend on addressing them now.  And it seems that we're

6    avoiding those other issues by just focusing on this one

7    point.  And if the point is that there's only a couple, I

8    don't think that's accurate.  And it's not accurate to reflect

9    there's only one issue.

10        So, it's more complex than that.  And we think that

11   the process here can address those and still do it

12   efficiently, for all the reasons that I think we have said.

13   There's going to be discovery.  If we don't need it, it's

14   fine.  If there are other issues that could be done more

15   expedited, we will do that.  But having an organized and sort

16   of non-competing process seems to be, from the receiver's

17   view, a better and more efficient way to go about doing so.

18        THE COURT:  Mr. Hanauer, does the SEC have a position

19   with regard to this issue?

20        MR. HANAUER:  Thank you, your Honor.

21        The Court has already indicated that all disputes

22   should be handled as part of the claims process.  It seems

23   to -- you know, the institutional lenders have agreed for

24   standard discovery directed towards them that would flush out

25   the issues that Mr. Rachlis had raised.  You know, nothing

1    certain yet, but the potential for fraudulent transfer,

2    fraudulent conveyance and things and the like.  It just seems

3    odd that the lenders would agree to that sort of standard

4    discovery and then say, no, we don't have to participate in

5    it; just pay us now.

6         Also, paying the single secured lender now, before

7    there's any process, it also seems like it would deprive any

8    investor of being able to make -- raise their issues with the

9    Court about why that single lien may or may not be valid.  So,

10   the SEC's view is consistent with the Court's prior ruling

11   that everything should be resolved as part of a claims

12   process.

13        That being said, if the receiver and the lenders can

14   come to a meeting of the minds of maybe pushing up those --

15   the decisions for those limited properties where there's less

16   of a dispute to a little further -- higher up in the process,

17   we're okay with that.  But it seems like the lender shouldn't

18   be able to just altogether avoid the process that we've been

19   trying to implement for all the parties that are involved.

20        THE COURT:  So, a couple of observations.  First of

21   all, I understand what Mr. Rachlis is saying about that claim

22   priority isn't the only issue that might be something that the

23   receiver will have to address.  However, the process that we

24   put in place is, I think, focused on -- has always been

25   focused on -- properties where there were competing claims.

1    And even in that process, those claims may or may not be valid

2    for the reasons that Mr. Rachlis stated.

3            But I think it's better -- I agree with Mr. Damashek

4    that I think it's better to focus and get this process rolling

5    with regard to properties where there are competing claims.

6    And, then, once we do that or while we're doing that, I think

7    it makes sense to have a different, perhaps more abbreviated

8    process for those properties where there aren't any competing

9    claims.  For those properties, I think the scope of discovery

10   will be narrower.  I think the issues will probably be

11   narrower.

12           And, so, in the end, I think that the properties

13   where there are no competing claims should be resolved outside

14   of this current process.  And whether it's on a parallel track

15   or afterwards, I think that we need to give some thought to

16   how best to go about dealing with the receiver's -- certainly

17   to the extent the receiver has any concerns -- with regard to

18   those properties.

19           Now, the other point I wanted to make -- and this is

20   raised by some of the motions, and there's kind of an

21   undercurrent of this issue throughout this process -- is

22   whether -- I take it that the SEC believes that because this

23   was one basically large, overarching conspiracy/Ponzi scheme

24   where money was shifted around by the Cohens from one to the

25   other and not particularly segregated, that in the end, to the

1    extent that there is any recovery for the sales of these

2    properties, that it all kind of goes into one pot and, at some

3    point, the receiver will have to recommend a distribution plan

4    and the Court would have to approve an equitable distribution

5    of that one pot versus there being -- having isolated silos of

6    properties, as perhaps some of the institutional lenders or

7    investor lenders kind of see this case.

8            Mr. Hanauer, is that an accurate general

9    understanding of the SEC's position as to the proceeds that

10   would come out of all of these sales?

11           MR. HANAUER:  Not entirely, your Honor.  The SEC --

12           THE COURT:  So, tell me about how the SEC sees this

13   case with regard to the proceeds from the sales of these

14   properties.

15           MR. HANAUER:  Thank you, your Honor.

16           The Court is very much correct that the SEC believes

17   that the Court can and ought to employ equitable principles

18   when deciding how to distribute the proceeds of the

19   receivership estate.  That being said, we're reserving

20   judgment on our recommendation on how the Court ought to do

21   that until we've seen how discovery shakes out.

22           But going to the Court's question about whether the

23   SEC thinks that the Court needs to wait till the very end

24   until all the tranches are complete, that is not our position;

25   and the SEC does believe that the Court can appropriately

1   apply equitable principles and call for an equitable

2   distribution on a tranche-by-tranche basis.

3           THE COURT:  And I take it that the SEC will give

4   me -- will make their argument per tranche as to why they

5   believe -- the SEC believes -- that's the case?

6           MR. HANAUER:  Yes, your Honor.

7           And the proposal that was reflected in the joint

8   status report, it allows the SEC to participate and allows the

9   SEC to file position papers on a tranche-by-tranche basis.

10  So, to the extent the SEC wishes to have its voice heard with

11  respect to a particular tranche or a distribution for that

12  particular tranche, I think the process the parties have

13  agreed to allows the SEC to do that.

14          THE COURT:  Okay.  Let me make sure that I understand

15  the SEC's position.

16          Is it that the SEC wants to reserve its right to

17  determine after each tranche whether a distribution should be

18  made with regard to the properties that are part of that

19  tranche as opposed to waiting, or is it the SEC's position now

20  that distribution can and should occur on a tranche-by-tranche

21  basis?

22          MR. HANAUER:  At this time, the SEC does not oppose a

23  tranche-by-tranche distribution.

24          THE COURT:  All right.

25          Mr. Rachlis, what is the receiver's position -- or at

1    least from looking forward -- as to that issue?

2            MR. RACHLIS:  I think that is going to require a bit

3    of evolution as we move forward.  But in terms of the current

4    thinking, I think it does go back to the beginning.

5    Normally -- normally -- there would be a final distribution

6    plan that would be presented to the Court, and the Court, you

7    know, would then be in a position to review it as a whole; and

8    it would then be reviewed; and, then, subject to -- and things

9    of that nature.  So, that is typically the way that would

10   work.

11           Now, if the question is, are interim distributions

12   something that can be done?  The answer is yes.  But there

13   are -- there are complications with that.  And I think

14   ultimately the Court would expect, and should expect, that

15   there will still be a final distribution plan that would be

16   approved, even if there are interim distributions.

17           So, interim distributions here, if we're going to

18   think about those, would need to be -- certainly couldn't be

19   really looked at unless it was tranche by tranche.  And I

20   think an interim distribution is probably the right way of

21   thinking about it because there are outstanding questions and

22   issues that would not allow really for the Court -- we don't

23   believe for the recommendation from the receiver to be just

24   empty out, you know, everything on this one issue.  So, we

25   don't think that would be appropriate.

1     But I think that, generally speaking, having the idea

2   of an interim distribution would make sense, or can make

3   sense, with the idea that ultimately there's going to be a

4   final distribution plan anyway that the Court -- will

5   basically almost be like a true-up with some other issues that

6   will arise.

7     THE COURT:  Okay.  That's about as much clarity, I

8   think, as we can get at this point.

9     Mr. Damashek, Mr. Gilman, any thoughts about this

10  issue?

11    MR. DAMASHEK:  Again, Ron Damashek.

12    Judge, as I envision this, there's a legal

13  determination that will have to be made on the issue of

14  priority.  And that determination will be either institutional

15  lender has priority or investor lender has priority or neither

16  of them have valid liens against the property.  But I believe,

17  for the most part, perhaps universally, that the properties

18  are liened by one or the other and will have a priority

19  determination.

20    Once that determination is made -- and let's say an

21  institutional lender is determined to have a valid lien

22  against the property and is the prior lien -- then, to the

23  extent that there are proceeds of sale from that property, the

24  lien attaches to those proceeds and those proceeds should be

25  distributed to the institutional lender.

1        Similarly, if an investor lender was deemed to have

2   priority, then the proceeds up to the amount of the lien get

3   distributed at that time.  There is nobody else who has a

4   prior claim to those funds.

5        Now, there could be a third circumstance where there

6   are equitable factors involved because neither party is deemed

7   to have priority or neither party is deemed to have a valid

8   lien.  In that case, those funds could be subject to

9   distribution based upon equitable considerations or they could

10  go into the pot, which is just part of the receivership estate

11  available for all unsecured creditors of the estate.

12       But I envision it as priority determination being

13  made and then distribution being made consistent with that

14  determination, up to the amount of the lien secured by that

15  property.

16           THE COURT:  Okay.

17           Mr. Stein, anything that you'd like to add?

18           MR. STEIN:  Not at this time, your Honor.

19           THE COURT:  Okay.

20           Mr. Gilman, anything that you would like to add to

21  what Mr. Damashek said?

22           MR. GILMAN:  No, your Honor.

23           THE COURT:  Okay.

24           That was helpful.  So, it gives me kind of at least a

25  preview of where we're headed.

1          So, let's then go to the Exhibit A and the issues

2     that are raised in Exhibit A.  First of all, with regard to

3     the composition of the group, is it the receiver's view -- I

4     thought -- I guess going into this, my thinking was that

5     before we started, we would be able to delineate all the

6     different tranches, so that people would have a sense of where

7     their property was in line.  Right?

8          So, an individual investor, say, or institutional

9     investor would say, okay, well, my properties are up in the

10    third tranche; they're not up now.

11         Is that something that we can accomplish at this

12    point, as opposed to doing it on a tranche-by-tranche basis?

13    In other words, just seriatim.  Like after the first tranche,

14    we'll determine what's in the second tranche; and after the

15    second tranche, we'll determine what's in the third tranche.

16         Isn't there a way that we can just kind of try to

17    schedule it out or at least the groupings out?

18         Mr. Rachlis?

19         MR. RACHLIS:  Your Honor, I believe in terms of the

20    groupings, we have presented to the Court and to the claimants

21    as a whole a schedule that separates out the properties into

22    tranches.  So, that has been done.

23         In terms of scheduling like this tranche goes next,

24    et cetera, et cetera, my recollection of that discussion was

25    -- it was a little more fluid than your Honor may have

1   articulated.  Because for obvi- -- I would say for somewhat

2   practical reasons.  We wanted to -- we knew -- we recommended

3   the first tranche; and, then, we were hopeful that once we

4   were all in a position to have gone through that tranche,

5   reached -- went through hearing and ruling by your Honor, we

6   would be in a better position to know how these other tranches

7   might look and might go.  Because there are different compon-

8   -- I mean, there are obvious similarities, but there are

9   differences, too.  And being able to have learned from what

10   we'll have gone through through the first tranche, I thought,

11   was a relevant marker for everybody involved in those

12   discussions.

13        So, it was not our position to -- we didn't believe

14   we were in a position to recommend to your Honor that Tranches

15   2 through 10 were going to be this, this and this.  So, that

16   is why we have grouped them, but we have not tried to

17   recommend to your Honor which tranche after the first was

18   going to be the one in place without having lived through that

19   tranche and litigated it at this point.

20        THE COURT:  Okay.  Thank you.

21        So, let me hear from the institutional lenders as to

22   their concerns about these groupings.

23        MR. DAMASHEK:  Judge, again, Ron Damashek.

24        Two parts.  I agree with Mr. Rachlis that we need to

25   see how that first tranche plays out in terms -- and, then,

1    determine which is the next tranche.  The objection raised in

2    the joint status report was that the procedure outlined by the

3    receiver was that the receiver would identify, okay, we should

4    go forward with Tranche No. 4, and there was no opportunity

5    for input.

6          So, our proposal was, simply, when we get to that

7    ordering process, we should have seven days, 14 days,

8    whatever, to raise our objection, if we have one, or talk to

9    the receiver to try and resolve it.

10          In terms of the -- so, that's the ordering of things.

11          In terms of the composition, I don't know today

12    whether or not we will object to one particular grouping or

13    another because we haven't seen the Equitybuild documents.  We

14    haven't seen the proofs of claim filed by everybody.  And, of

15    course, we don't know what the Court is going to rule with

16    respect to the first tranche as we go through that.

17          So, my position was simply we understand what the

18    receiver has done by trying to group these groups together,

19    but we need to be more informed and need to inform the Court

20    if we see there's a problem based upon the way things play

21    out.

22          So, again, we were just asking for a short time to

23    address that, but we think it's premature and we're unable to

24    do it with finality at this time.

25          THE COURT:  Okay.

1          So, the --

2          MR. STEIN:  Your Honor, if I may?

3          THE COURT:  Yes.  Go ahead, Mr. Stein.

4          MR. STEIN:  This is Max Stein on behalf -- the way

5     that this has been articulated is sort of how it gets laid out

6     in our part of the joint proposal, and it's for that reason

7     that we made two groups -- pardon me, the joint status report.

8     And it's for that reason that we made two separate proposals.

9          The first was that in terms of the composition of the

10    groups, we are proposing that within 30 days of the proofs of

11    claims being made available, that any objections to the

12    composition of the groups be raised in that period of time.

13    Because at that point in time, everybody should have the

14    information that gives them a basis on which to evaluate the

15    groups.

16         And, then, as for the ordering of the groups and how

17    they're handled, our suggestion is that building in this

18    period of time for objection, et cetera, is unnecessary

19    because the parties are likely going to be in discussions; and

20    if there is an issue, it can very quickly be raised with your

21    Honor, and we don't need to build in additional time in that

22    formal schedule that -- for objections that may not even

23    occur.

24         THE COURT:  All right.

25         So, no one here on this call that I see has been shy

1   about raising any issues with the Court at any point during

2   these proceedings.  In some ways, I wish you were more shy.

3        (Laughter.)

4        THE COURT:  But that's neither here nor there.

5        So, the grouping that the receiver proposed -- and I

6   do remember seeing it -- is presumptively what we're going to

7   use.  Okay?  And, obviously, as we go forward, if people have

8   concerns, you can raise them with me.  But we have to start

9   with -- we have to have some sort of framework.  And I think

10  that -- given the fact that the receiver has proposed it and

11  everyone has seen it; there haven't been any objections to

12  date -- we're just going to go forward with those groupings as

13  stated.

14       All right.  So, Mr. Rachlis, can you -- or, Ms. Wine,

15  can you -- remind me or can you -- you might not have it at

16  your fingertips now, but can you e-mail to Ms. Acevedo the

17  docket number and entry -- it's probably an exhibit to

18  something -- that -- where that grouping is stated?

19       MR. RACHLIS:  Yes, we certainly can, your Honor.  I

20  don't know if that was -- I'm sorry, I do not remember --

21  you're correct -- whether that was sent by e-mail to, you

22  know, counsel and yourself -- and the Court -- or if it was

23  through a pleading attachment.  But we will certainly submit

24  to you, copies to others, the -- that docket grouping.  We can

25  do that.

1          THE COURT:  Okay.

2          So, then moving on to the issues of discovery.

3          MR. DAMASHEK:  Judge, may I interrupt again?  Ron

4   Damashek.

5          THE COURT:  Yes.

6          MR. DAMASHEK:  I understand your ruling that the

7   groups are presumptively the groups that will proceed.  But

8   then there's a separate issue -- and I think Mr. Rachlis and I

9   are on the same page -- that the order of presentation of

10  those groups will be determined somewhere down the road as we

11  see how the first tranche goes, for instance.

12         And, so, are you -- my question is:  When

13  Mr. Rachlis, the receiver suggests that Group No. 7 should be

14  the second one we go forward, are you saying that if we have

15  an objection at that time, we should raise it; or, can we

16  build something into the procedure which says we have some

17  particular time to object?

18         THE COURT:  Mr. Rachlis, can't we figure out kind of

19  a presumptive order of these groups, as well?

20         MR. RACHLIS:  For the reasons that I had attempted to

21  articulate, we find it -- the -- going through that first

22  tranche is going to be a help to everybody involved.  I mean,

23  could we make a best guess and submit to your Honor that this

24  is, you know, an educated guess?  I mean, the answer is

25  certainly we could try.  But it would be uninformed by the

 1  experience of having five properties, 170 claimants, the

 2  discovery process.  That could legitimately impact any type of

 3  recommendation to your Honor.

 4          But that makes -- I hate to say it that way, but I

 5  think that that is -- it would be ignoring something that is,

 6  I think, pretty important in this process.

 7          THE COURT:  Okay.

 8          So --

 9          MR. STEIN:  And --

10          THE COURT:  -- can we --

11          MR. STEIN:  I'm sorry, your Honor.  I was just going

12  to say I don't think there's any disagreement about that.

13          THE COURT:  So, can we send -- so, we're going to try

14  to come up with a schedule once we're done with the first

15  grouping?  Is that a fair assessment?

16          MR. RACHLIS:  Your Honor, this is Michael Rachlis.

17          Yes, I think that -- we'll be in a much better

18  position, I think, to make, you know, reasoned recommendations

19  beyond what we know right now, you know, based on the

20  experience of going through the tranche and can make reference

21  to that.  The answer's yes.

22          And one other footnote.  I'm sorry.  To the extent --

23  and if this -- if our grouping was only distributed to the

24  counsel that were involved in the out -- you know, in the

25  joint status report, in those discussions, we'll -- is it all

1  right, your Honor, we'll just file that with the -- in other

2  words, we'll certainly send an additional copy, but we'll just

3  make that a notice of filing.  Is that okay, your Honor?

4          THE COURT:  That would be fine.

5          MR. RACHLIS:  Okay.

6          THE COURT:  Okay.  That's fine.

7          And the reason why I think that an ordering would be

8  helpful is I know that there are a lot of individual investors

9  out there that want to know kind of when are they up, you

10  know.  And, so, I think that to the extent that we can provide

11  that information to the individual investors, and to the

12  institutional investors, I think everyone would be kind of

13  better off; I think, at least set their expectation.

14          MR. RACHLIS:  Yes, your Honor.

15          THE COURT:  All right.  So, let's talk about

16  discovery.

17          This isn't exactly in the order that the issues were

18  raised, but I've reviewed the joint status report; and, so,

19  I'm going to tell you what my ruling is -- it's probably the

20  easiest way -- and then I will allow people to make any

21  suggestions, set forth their objections or concerns, and then

22  we'll go from there.

23          So, first of all, because we're in the federal court,

24  we're going to go by day segments of seven.  So, instead of

25  30, everything is going to be 28.  Okay?  It's just something

1  that we're trying to do and I'm trying to do.  So, all

2  claimants will have 28 days to respond to approved standard

3  discovery requests.

4          So, 14 days after the -- those responses are served

5  or within -- each claimant will have 14 days after the service

6  of those initial responses to the standard discovery requests

7  to serve their ten additional interrogatories and ten

8  additional document requests.  Okay?

9          With regard to -- and, then, the recipient of those

10  additional discovery requests will have to respond to them

11  within 28 days.

12          To the extent that additional interrogatories or

13  requests for document productions are needed, I do like the

14  proposal by the certain investor lenders.

15          So, in other words, if you need additional

16  information, reach out to the party to which you need the

17  additional information.  If you need to make it formal with

18  additional interrogatories, document requests, do so.  See if

19  you can get cooperation from the other side.  And if the other

20  side objects, then the proponent of the additional discovery,

21  as well as the recipient, can file a joint status report with

22  the Court or a joint motion asking the Court to rule on the

23  appropriateness of the additional interrogatories or document

24  requests beyond the ten that is allocated.

25          Let me just go through all of these, then, and then

1    I'll open it up.

2         With regard to depositions, given the fact that there

3    are multiple properties in a group, I don't think that three

4    depositions per group is -- would be necessarily sufficient.

5    And, so, I'm going to limit each claimant to three depositions

6    per property in the group.  The depositions must be no longer

7    than three hours in length, and presumptively they will take

8    place via telephone or videoconference, unless the parties

9    agree to do it in person or with leave of Court.

10        You know, what I think this pandemic has taught me is

11   that a lot of things can get done by telephone or

12   videoconference.  Okay?  And given the fact that we have

13   individual investors and other people throughout the country,

14   I think that, to the extent the parties can do them by

15   telephone and videoconference -- as I said, that's going to be

16   the presumptive manner of these depositions -- I think it's

17   better.  If everyone agrees to do it in person, they can

18   proceed in that way.  If there's no agreement, then you'll

19   have to come to me to seek in-person deposition.

20        Okay.  Third-party discovery.  Subpoenas to title

21   companies and/or loan originators are presumptively valid.

22   I'm assuming we're going to get those.  It could be for

23   documents and for depositions.  Obviously, the depositions --

24   to the extent that title companies or loan originators can

25   address concerns of the subpoena issuers by providing

1    affidavits or declarations or what have you, then the parties

2    can agree not to do those depositions.  But those third-party

3    subpoenas will be allowed for documents and depositions.

4           Those depositions, again, will only be three hours in

5    length at the most and, again, presumptively will be done by

6    telephone or videoconference, absent agreement of the parties

7    or absent order of the Court.

8           There will be no other third-party discovery allowed

9    without leave of Court.

10          Then there's the issue of expert discovery, but

11   that's going to require a bit different discussion.

12          So, those are my -- that's how I envision discovery

13   taking place during this process.

14          Mr. Rachlis, anything that you would like to add?

15          MR. RACHLIS:  Yes, your Honor.  Just, I think, on one

16   issue; and, that is, the additional -- the process that --

17   recommended or advanced by the representatives of the certain

18   investor lenders in regards to the meet-and-confer and joint

19   status report process.  I do -- we -- during the discussions

20   and this line of deleting those on our behalf with the various

21   participants, you know, we raised concern about the logistical

22   issues associated with that.  And I still -- we maintain that

23   that could be an issue.

24          And, also, there's this concern, you know, when you

25   have, you know, groups that aren't represented and how that

1   can, you know, lead down a path that can be problematic.  I

2   mean -- and, so, the easy hypothetical is, you know, sending

3   out additional requests and not getting a response; and, then,

4   you know, the moving party, you know, presents to the Court

5   that, I tried to reach this party and they won't respond.  Is

6   that going to lead to some adverse impact or adverse

7   inference, even though they may have responded to other

8   issues?

9          And so -- and, then, doing this all in the hundred --

10  you know, this was supposed to occur in a limited time period.

11         Those are, I think, concerns that we had raised

12  before, and I probably would still raise again, as being

13  legitimate concerns, both in terms of time and in terms of the

14  effect and impact on some of the individuals that may be

15  subject to those requests.  So --

16         THE COURT:  I understand.

17         Listen, I think that everyone did a great job coming

18  up with the standard discovery requests.  And, frankly, I

19  think probably almost everything that you need will be in

20  response to the standard discovery requests.  The fact that I

21  gave, you know, people -- I've given each claimant ten

22  additional discovery -- interrogatories and document requests

23  is almost just, I think, out of an abundance of caution.

24  Right?  Because there might be individual particular issues

25  with regard to some of the properties.  I don't envision the

1   need for anything more than that.  Okay?

2          But if it comes down to it and say the receiver needs

3   more info on Property A from Claimant B and you send the

4   Claimant B two or three more interrogatories; reach out to

5   Claimant B in, you know, 24 hours; say, are you going to agree

6   to it; and, if they say, no, then file a motion.

7          And I will get Magistrate Judge Kim involved in this

8   process as well, so that things can just happen quickly, okay?

9          But I think it's rare -- I think it's going to be

10  rare -- that I'm going to allow more than ten additional

11  interrogatories or documents.  I'm just telling you that,

12  given the work that was put -- that everyone put into drafting

13  the standard ones.

14          MR. RACHLIS:  Your Honor, one other observation, if

15  it's okay.  But, you know, we, of course, have been cognizant

16  on behalf of the receiver; cognizant of the fact that this is

17  an effort at a summary proceeding; effort to make it as

18  expedited as we can.  As your Honor notes, the standard

19  discovery is meant to really get to a lot of these issues, as

20  are the proof of claims.  They were designed to do that.

21          And, so, I understand your Honor's ruling that three

22  depositions per property is what you're recommending at this

23  point.  You know, so that means, for example, with the first

24  tranche, which was the recommended, there were five

25  properties, which would then be 15 depositions potentially,

1   that -- for just one of the -- for the institutional lender,

2   and then there are 170, approximately, claimants.  That is

3   going to be a lot to do in 120 days.

4           THE COURT:  Mr. Rachlis, they're all going to be the

5   same people.

6           MR. RACHLIS:  Yes.  I just -- logistically there --

7   you know, I -- there are concerns about time, as well as we

8   don't want that process -- there's supposed to be a

9   streamlined nature to it.  And we want to try to enforce it

10  best we can, with fairness to everybody.  That's clearly what

11  we're trying to do.  So, it is more the -- looking at the

12  multiples of what those could be, those could be -- those

13  could run a little bit unwieldy.  And, so, I -- it's more

14  observation.

15          But we raised this issue also with the group when it

16  came up to preparing the joint status report; and, to the

17  extent that wasn't evident, I thought it was worth certainly

18  raising to your Honor, you know, sort of what that will mean

19  down the road.  And there are going to be larger tranches

20  potentially, too, where that will get multiplied even more.

21          THE COURT:  Right.  So, I guess a couple of

22  reactions.

23          First of all, these depositions, right, I can't

24  imagine attorneys spending half an hour on where do you live,

25  how many children do you have, what school do your kids go to,

1    what high school do they go to.  You know, just get to the

2    point of it.  And if you get to the point of it, I have a hard

3    time seeing these depositions lasting more than an hour,

4    hour-and-a-half, frankly, if that.  Okay?  So, just get it

5    done.

6            And, again, with regard to each property, I have a

7    hard time believing that we're going to have more than three

8    or four witnesses for each property.  Right?  It's all going

9    to be the same people.

10           So, I think -- I understand your concern that it

11   might get unwieldy.  But I think that I'm also balancing,

12   right, the due process rights of the claimants being able to

13   conduct some meaningful discovery into their claims and the

14   claims -- and competing claims.  And I think that three

15   depositions per property at this point is the right balance.

16           Anything else, Mr. --

17           MR. STEIN:  Your Honor --

18           THE COURT:  -- Damashek, Mr. Stein?

19           Yes.

20           MR. STEIN:  Yes, your Honor.  I had a couple of

21   suggestions, if you will.

22           Given that you are ordering that there will be ten

23   additional document requests and interrogatories, I can

24   envision a circumstance in which there are objections to those

25   ten.  And, so, I wonder if it would make sense, your Honor, to

1    have -- to require objections to be served within 14 days of

2    receipt of the request; that those objections can then be

3    discussed between the parties and brought to the Court's

4    attention, if that's going to be necessary.

5            THE COURT:  No.  I'm going to keep the 28.  There's

6    just too many --

7            MR. STEIN:  Okay.

8            THE COURT:  There would just be too many dates to

9    keep track of because people will obviously --

10           MR. STEIN:  Fair enough.

11           THE COURT:  -- send things out at different times.

12           Anything else?

13           MR. STEIN:  That's it.

14           MR. DAMASHEK:  Judge, Ron Damashek.

15           I'd like to defer to Mr. Gilman if he wants to

16    address any issues here.  If he doesn't, I may have one or

17    two.  But let me defer to him, please.

18           MR. GILMAN:  Thank you.

19           Your Honor, the question I have is with respect to

20    the supplemental written discovery --

21           THE COURT REPORTER:  Mr. Gilman, excuse me.  Mr.

22    Gilman, I'm having a hard time hearing you.  Your audio is

23    breaking up.  I need you to speak slower and louder.

24           MR. GILMAN:  Okay.  Thank you.  I will.

25           With respect to the supplemental discovery, you're

1    allowing ten.  Is that to be directed against each other

2    claimant or a total of ten that can be issued by one claimant

3    to be disbursed or divided among the other opponents?

4            THE COURT:  At the moment, given the standard

5    discovery requests, I'm going to be total of ten per claimant.

6    Okay?  In other words, not per recipient, but per issuing

7    party.  All right?

8            MR. GILMAN:  Okay.

9            THE COURT:  Does that clarify anything?

10           MR. GILMAN:  And the issuing party can determine --

11   can issue, for example, two interrogatories to one other

12   claimant and then another two to another claimant?

13           THE COURT:  That's correct.

14           MR. GILMAN:  Okay.  I understand.

15           That's the only question I had, your Honor.

16           THE COURT:  Thank you.

17           Let's talk about -- the other issue, then, is moving

18   on to expert discovery.  And I guess I'm trying to understand

19   what sort of expert testimony would the parties contemplate in

20   such a proceeding.

21           MR. STEIN:  Your Honor, this is Max Stein.  If I

22   might?

23           THE COURT:  I'm sorry --

24           MR. STEIN:  I think this is an instance of the

25   parties --

1          THE COURT:  Go ahead.

2          Mr. Stein?

3          MR. STEIN:  Yes.

4          I was just going to say I think this is an instance

5    of the parties in a good faith attempt to protect all -- to

6    cover all of the bases -- trying to cover the bases without

7    actually anybody knowing for sure whether there would be

8    experts or what those experts would be testifying about.  In

9    fact, at points in our discussions, the party who might be

10   disclosing an expert and the party who might be deposing that

11   expert, we kept getting confused as to who it might be.

12         And, so, it is conceivable -- you know, this joint

13   status report was our effort to contemplate every possibility

14   and potentiality and address it.  If your Honor is amenable,

15   it may very well make sense to hold off on dealing with this

16   until we do some of the initial discovery and we find out if

17   anybody actually believes that they are going to have an

18   expert, at which point in time we can come back to the Court

19   and figure out a process when we know what the reality is, as

20   opposed to what the hypothetical is.

21         THE COURT:  As I said, no one's been shy to file

22   motions in this case.  So, at the moment, given the fact that

23   I have a hard time contemplating what sort of experts you

24   would have other than ones that would basically provide legal

25   opinion, I'm not going to envision any expert discovery at

1　this time.  To the extent that someone believes they need some

2　experts, you can raise it by motion.  Okay?

3　　　　　But, again, an expert that says, well, you know, I'm

4　a real estate lawyer and I believe that the priority should be

5　this, this, this, and this -- which I've seen -- you know,

6　those types of experts are non-starters.  Right?  I don't want

7　to see those reports.

8　　　　　So, given that, again, the parties can raise it by

9　motion; but at this point, I don't foresee the need for any

10　expert discovery during this process.

11　　　　　MR. RACHLIS:  Your Honor, may I address -- may I be

12　heard on this on behalf of the receivership?

13　　　　　THE COURT:  Yes, go ahead.

14　　　　　MR. RACHLIS:  Just one point.  On the one hand, I

15　certainly understand the Court's -- as Mr. Stein had

16　indicated, you know, this is something that was contemplated

17　as an effort to get to -- try and cover all the bases.  But I

18　do think that -- I mean, I can -- at least the receivership

19　can envision the potential for an expert on possible issues.

20　We don't know.  We haven't done discovery yet.  You know, some

21　of the discovery that may be necessary.

22　　　　　But, for example, your Honor, it may be that looking

23　at balance sheets, financial information, other issues that

24　may assist the Court in a determination on inquiry notice or

25　on deepening insolvency questions or things of that nature,

1    that type of financial analyst, economist or something like

2    that may be something that would be contemplated.  I'm not

3    saying that -- I mean, that's not -- but that's an issue.

4          And, so, if that is going to be an issue, then we

5    would want the ability to do that and present that to your

6    Honor.  And I would envision that anybody on the other side of

7    that would perhaps consider their own expert to counter that.

8          So, the idea -- I think -- I don't disagree, your

9    Honor, in terms of some of the issues here that they may not

10    be prone to expert testimony.  But I think there may be issues

11    here that are potential areas of expert testimony and, as

12    such, I thought its inclusion here is appropriate and the

13    limitations were appropriate, as well.

14          THE COURT:  And if that's the case, then the receiver

15    can file a motion seeking leave to engage in expert discovery.

16    But as I said, at this point, I don't really foresee expert

17    discovery being part of this process.  Okay?

18          Let's do this:  Can we take a five-minute break.

19    We've been going for about an hour.  And people just stay

20    tuned in.  You can turn off your cameras if you'd like.  But

21    let's just take a break.

22      (Brief recess.)

23          THE COURT:  Let's get started again.

24          Can everyone hear me, still?

25          UNIDENTIFIED SPEAKER:  Yes.

1          THE COURT:  I want to talk about, then, the interim

2     distribution plan.

3          Mr. Rachlis, how much time do you think the receiver

4     would need to submit an interim distribution plan after Group

5     1?

6          MR. RACHLIS:  Your Honor, we have tried to, you

7     know -- we've talked about that internally, too.  It is a

8     little difficult to say.  You know, obviously, we're going to

9     need to look at your Honor's rulings and things of that

10    nature.  There may be follow-up associated with that.  It's

11    hard for me to envision that, you know, something less than 30

12    days would be appropriate.

13         There are going to be other issues, too.  You know,

14    whether the receiver lien will play into that to some degree.

15    Maybe it could be -- likely we'll get -- you know, the issues

16    will likely be resolved.

17         But there's going to be a host of issues that will

18    need to be looked at, from speaking with the receiver on these

19    items.  So, we were hesitant to put any timeline in because we

20    wanted to see what your Honor's ruling would be; and, then, at

21    the time of the ruling, we would come to your Honor, having

22    reviewed it, and say we would intend to do -- or present a

23    distribution -- an interim distribution plan or

24    recommendations within X amount of time.

25         Without that benefit -- without knowing, you know,

1   the way things are going to be -- you know, it's very

2   difficult to say less than 30 days for us to be able to do

3   that.  There are some intricate -- there are going to need to

4   be some items that are going to need to be looked at.  And in

5   talking with the receiver, 14 days is not a realistic -- I --

6   at least as we understand it.

7          And like I said, with variables out there, without

8   knowing what the ruling is going to be and how those will sort

9   of like materialize, it is difficult for us to tell you that,

10  you know, we should bank on X date as being the appropriate

11  date.  And I know that that's not a completely satisfactory

12  response; but at a minimum, I would say, you know, without

13  knowing more, something less than 30 days, I think, would be

14  problematic.

15         THE COURT:  All right.

16         I think it's good to have some sort of deadline, at

17  least.  So, I'm going to set 45 days as the deadline for the

18  receiver to submit an interim distribution plan.

19         MR. RACHLIS:  That's for the individual tranche, your

20  Honor, correct?  You're talking about at the end of --

21         THE COURT:  Yes.

22         MR. RACHLIS:  Yes, okay.

23         THE COURT:  Next is the receiver's lien.

24         So, the institutional lenders suggest that the

25  receiver file any request for a receiver lien that has

1  priority over the liens as determined by the Court within 14

2  days of the Court's ruling.

3         Mr. Rachlis, what are your thoughts with regard to

4  how the receiver will address the receiver's lien on -- as we

5  go forward in this case?

6         MR. RACHLIS:  So, your Honor, as noted in our

7  written -- in the joint status report, we are attempting to

8  work on a more developed presentation for the Court that deals

9  with the receiver's lien issue, both for purposes -- there are

10  multiple components here, as your Honor knows.  You know, up

11  through the last petition that was granted in June -- for the

12  period ending June 2020, there have been at least -- the Court

13  had indicated that it approved a receiver's lien.  And we had

14  indicated a methodology associated with that going all the way

15  back to the start of -- an allocation methodology going all

16  the way back to the beginning of the receivership.

17         And, so, our -- what we believe is appropriate to do

18  now -- because I think that, you know, this has sort of been

19  deferred to the claims process -- is to try and address those

20  allocation issues, you know, for past time, as well as going

21  forward in the claims process through the presentation we

22  would like to make now.

23         In conjunction with that, we have been attempting to

24  gather that information and present it to the SEC, who has the

25  role of reviewing and approving the invoices.  We have not

1    completed that process.  We've begun those discussions, but we

2    have not provided everything that we believe the SEC needs to

3    see, and therefore are not in a position to give that to the

4    Court at this moment.  But we do believe that it is

5    appropriate to look at in conjunction with this process.

6            So, if your Honor could allow us the opportunity to

7    put that in writing -- we want to finish and present to the

8    SEC, then present -- you know, we can have follow-up meet-and-

9    confers on them.  But the bottom line, we'd like to present to

10   the Court probably along the lines of the next fee petition,

11   which is due February 16th.

12           So, if we're able to do all of that at the same time,

13   we think we can accomplish all of those goals and, you know,

14   kind of cross our T's and dot our I's and then be in a

15   position to present that to the Court.

16           THE COURT:  So, by February 16th, you intend to

17   present -- I guess it will be styled a motion -- setting forth

18   the receiver's proposal as to how the Court should resolve the

19   receiver lien issue?

20           MR. RACHLIS:  Yeah.  Yes.  It would be sort of

21   dealing with it more globally, your Honor.  Because we know

22   that there's this time -- you know, it falls under two

23   categories, right?  There's time up until the claims

24   resolution process is in place, and then how we're going to

25   deal with it during the claims resolution process.  And we

1  believe that those do need to be addressed, and now is the

2  time to do so.  And, so, that is our intent is to present --

3  make that presentation to everybody at that time.

4          THE COURT:  All right.

5          To the extent that there are any objections to the

6  receiver's proposal, I would like any objections filed by

7  March 2nd.

8          MR. DAMASHEK:  Judge, Ron Damashek.  May I be heard

9  on this issue?

10          THE COURT:  Yes.

11          MR. DAMASHEK:  First, just briefly on your interim

12  distribution schedule, 45 days is not a multiple of 7.  I'm

13  happy with 45 days, but if you would like to change it, I'll

14  point that out.

15          THE COURT:  Okay.  I'm sorry.  So, 42 would be

16  better, right?  So, we'll change that to 42 days.

17          Sorry, Mr. Rachlis.

18          MR. STEIN:  Ron, you beat me to that punch.

19          MR. DAMASHEK:  I'll count that as a victory, Judge.

20          With respect to the lien priority issue, I believe

21  the institutional lenders contemplate something completely

22  different than some sort of analysis being proposed at this

23  time by the receiver.  The Court has previously ruled that the

24  issue of lien priority will be decided as part of the dispute

25  resolution procedure.

1    We contemplate that dispute resolution procedure

2  ending in a victory for the institutional lenders, but it

3  could equally be a victory for the investor lenders.  And

4  based upon the outcome of that proceeding and what the

5  receiver does in that proceeding and what the receiver has

6  done to date with respect to collateral in which we have an

7  interest, we believe that the appropriate place to determine

8  lien priority is going to be in that dispute resolution

9  procedure rather than in some interim basis.

10    We've already argued previously in the case that we

11  were entitled to lien priority.  We attempted to get a court

12  ruling on that.  The Court said, no, it's appropriate to defer

13  that to see what the results of the dispute resolution

14  proceeding are; which is why we propose that once the Court

15  makes its determination -- that we have priority or

16  Mr. Stein's clients have priority or some other people have

17  priority -- that then the receiver would come in and say,

18  based upon the Court's ruling on that, we are entitled to

19  priority with respect to this aspect of our fees or that

20  aspect of our fees.

21    The Court's prior ruling was, simply, I'm going to

22  grant the receiver a lien but not determining priority.  And I

23  don't believe we can have that priority determination at this

24  time, which is why I would stick with that 14-day, 14-day time

25  period.

 1             THE COURT:  Okay.

 2             Mr. Rachlis, you can put all your arguments in

 3    writing, all right, so you can flesh it all out.  There's no

 4    point in doing it now.

 5             MR. RACHLIS:  That's more than fine.  We will do

 6    that.  But we certainly disagree with that characterization of

 7    those rulings.  And we will do that, your Honor.

 8             THE COURT:  Okay.  So, that's all of Exhibit A.

 9             The next question is:  What other things do we need

10    to take care of before we start with Group 1?

11             How is the Equitybuild -- the whole Equitybuild --

12    document retention and processing going, and where are we with

13    just kind of the logistics of things.

14             MR. GILMAN:  Your Honor, Mike Gilman.  I would like

15    to address that issue.

16             We are working on the actual contract with TeamWerks

17    to get the process going.  We're waiting for a revised draft

18    from TeamWerks.  I expect it within a few days or sometime

19    early next week.  And once we get it in place, we can start

20    transferring the Equitybuild files to TeamWerks.

21             There is another issue with respect to the Mortgage

22    Store documents.  And, apparently, there is a license that

23    creates some issues in terms of getting access to those

24    documents.  And I've been working with -- we're talking with

25    Ms. Wine about how to approach that issue.  That's in the

1    works.

2              THE COURT:  Okay.

3              Given kind of that -- and I think that's kind of one

4    of the last steps that we need to take care of before the

5    receiver then sends out kind of all the links and all that

6    stuff they need to get done.

7              Mr. Rachlis and Mr. Gilman, is April 1 a -- it seems

8    like that's a reasonable date to start with Group 1.

9              Mr. Rachlis, what are your thoughts?

10             MR. RACHLIS:  You mean, to start the tranche --

11             THE COURT:  Yes.

12             MR. RACHLIS:  -- at this point in time?

13             THE COURT:  Yes.

14             MR. RACHLIS:  I would have some concern about that in

15   the sense that I don't know that the document library will be

16   established -- well, there are a couple of logistical issues.

17   I mean, so we're at February 1 call it at this point in time,

18   and we still -- there remains at least the following

19   logistical items that seem relevant to many of the claimants:

20   First is the issuance of the FTP links that will go out.

21   That's going to take approximately two-and-a-half months to go

22   out.

23             Now, it is -- the first tranche participants will get

24   theirs first.  So, that is -- but -- so we need the order

25   entered allowing that to be done, and then that's going to get

1    done.

2            Then, in conjunction with your Honor's rulings about

3    the document library being available, at least as I understand

4    it -- and Ms. Wine, Mr. Gilman can certainly provide more

5    information, I believe, but it's going to be a process of a

6    couple of months, at least, to get the documents loaded and

7    weeded out such that that's even available for the claimants

8    to begin their review.

9            So, even if you were to project that no other

10   claimant other than the first-tranche claimants could get into

11   the library, just hypothetically, I don't know that they're

12   going to get in before April 1st, just logistically speaking.

13   I mean, I envision the ability of loading those documents into

14   that library, at least as I understand it, you know -- which

15   hasn't begun -- is going to probably take until that amount of

16   type.

17           So, if you build that -- those logistical issues in

18   and if I'm even remotely close to being accurate in that

19   summary, it may be -- you're probably looking more like a May

20   or June time may be an appropriate starting point.

21           But that's at least my initial reaction, your Honor,

22   to sort of the logistical issues.  And, then, of course, there

23   are a couple other items.  I mean, the receiver lien issue

24   needs to be addressed, et cetera, et cetera.

25           So, I think that those are the types of things that

1    will need to be resolved, I think, before the tranche begins.

2            THE COURT:  Mr. Gilman, will the vendor be ready by

3    April 1?

4            MR. GILMAN:  I think April 1 may be tight.  I'm

5    thinking June is too generous.  I think May 1 may be a more

6    appropriate start date.

7            THE COURT:  All right.

8            May 1 is a Saturday.  And, so, I am going to set May

9    4th.

10           Mr. Rachlis, Mr. Gilman, I'm going to do everything

11   in my power to make May 4th the opening day of this process.

12   We've been kind of messing around with it for too long.  And,

13   you know, the term "perfection is the enemy of the good" comes

14   to mind.  And, so, May 4th we're going to start with Group 1.

15   Okay?

16           MR. RACHLIS:  Your Honor, that -- we will do

17   everything in our power on the receiver's side to make sure

18   that that happens.  We will need the order.

19           You know, one other item that I left out is there's

20   this 14-day opt-out period under the confidentiality order

21   that we also need to wait for, for purposes of people getting

22   FTP links and things of that nature.  So, it's another good

23   reason why that May 4th date is better than the April 1st

24   date, if we needed any more than that.  So, we will work to

25   make that date happen.

1          THE COURT:  Okay.  Very good.

2          What else do I need to address today or what else

3     would the parties like to talk about?

4          Mr. Rachlis, anything else on your list?

5          MR. RACHLIS:  No, not specifically, your Honor.  I

6     mean, you know from -- your Honor knows from the joint status

7     report that there are a few outstanding motions that remain on

8     some of the property sales and things of that nature, but we

9     know those will be addressed.

10         There may be some follow-up associated with today --

11    your Honor's rulings from today.  But at this point in time, I

12    don't believe the receiver has anything further to discuss.

13         THE COURT:  Okay.

14         Mr. Damashek or Mr. Gilman, how about the

15    institutional lenders?

16         MR. DAMASHEK:  Yes.  Ron Damashek.

17         Judge, two issues and perhaps a clarification from

18    the receiver.  I'm not sure whether the process of submitting

19    proofs of claim to the vendor that's going to distribute them

20    has started yet.  I know on our -- Point 1 on our joint status

21    report of list of pending motions was an order that was

22    submitted to the Court earlier in January.  And I didn't know

23    if the receiver was waiting for entry of that order to enter

24    into those contracts.

25         MR. RACHLIS:  Yeah, I can answer that.  We are

1   waiting for that order.  That -- I mentioned that, I think,

2   when we were discussing this issue just right now, that that

3   order is necessary -- entry of it -- before that would

4   proceed.  So, we are awaiting the entry of that order.

5           THE COURT:  Okay.

6           MR. DAMASHEK:  The second issue relates to the --

7   let's call them the non-competing properties.  And I

8   understand the Court's ruling that those would be narrower in

9   scope.  And I think you left it over in your ruling as to

10  whether we would do that now, later, parallel tracks,

11  somewhere in between.  And I had two questions in that regard.

12  One is can you give us some guidance as to how you'd like to

13  approach that?  My thought would be to confer with the

14  receiver and see if we can come up with something that's

15  mutually acceptable.  But I'd like some guidance from the

16  Court.

17          And, then, the related issue is I believe that Item 2

18  on the pending motions was that motion for determination as to

19  priority that, I believe, was filed by Citibank and Midland,

20  Ms. Nicholson and Mr. Napoli's clients.  So, I didn't know if

21  the Court was in any way ruling on that today or would be

22  issuing a separate ruling, which seems wrapped up in this same

23  issue.

24          THE COURT:  With regard to that motion, we'll be

25  issuing a separate ruling on that.

1      With regard to the non-competing properties, we'll

2  have to come up with a better name than that.  But I'm open

3  for your suggestions.  I don't really have, frankly, a

4  preference one way or the other.  And, so, given the fact that

5  -- you know, given all of your -- everyone's knowledge -- you

6  guys are all more knowledgeable than I am with regard to all

7  these properties, right, and their inner workings.  So, if you

8  would like to come up with a proposal or competing proposals,

9  I'd be open to consider them.

10      MR. DAMASHEK:  Thank you.  We'll make an effort at

11  that.

12      THE COURT:  All right.

13      Anything else that I can address today?

14      MR. MARCUS:  Your Honor, this is David Marcus.

15      Permission to speak?

16      THE COURT:  Mr. Marcus, I didn't see a -- Carmen

17  hadn't sent me a request.  But, Mr. Marcus, I will --

18      MR. MARCUS:  I e-mailed it to her on Wednesday.

19      THE COURT:  Okay.

20      I will give you at most -- I can give you about five

21  minutes, Mr. Marcus.

22      MR. MARCUS:  Okay.  I thank you.  I appreciate that.

23  I've been waiting a long time.  Thank you.

24      So, your Honor, I thank you for letting me speak.

25  You know I've spoken with you before.  I came to -- I come to

1   this as someone who lives on a fixed income, and I appear as

2   someone who has seen his total retirement dreams explode and

3   totally disappear due to the apparent fraud that brings

4   everyone to court today.  Now, however, I'm not similarly

5   situated to the money center banks that seek to unwind various

6   fraudulent transactions.

7           Now, I invested in real estate that bears two

8   distinct and clear differences.  First, the properties in

9   which I invested did not, and still do not, have a mortgage.

10  Second, the receiver has already sold my properties.  And at

11  this point, your Honor, I come before you seeking some

12  direction regarding the distribution of funds to me and those

13  in my same position.

14          I know of no reason why the receiver cannot make a

15  preliminary distribution to me and those in a similar

16  situation.  No basis exists allowing the receiver to use the

17  proceeds from me and my fellow investors' properties to fund

18  his efforts on behalf of the large lenders.

19          Now, as a matter of equity, your Honor, the banks are

20  better positioned to bear any loss.  And as a matter of law,

21  the receiver and the banks have absolutely no right to further

22  share in the proceeds of our investment when we will not

23  benefit in any way from further proceedings in this case.

24          Now, I must say I do agree with the SEC about the --

25  because I don't have any ties to the institutional lenders.

1   And I agree that there's been no dispute over my properties,

2   no claims.  So, I think this is a separate situation and

3   should handle it differently.  Like I said, I don't see --

4   from my point of view, the institutional lenders should not

5   get a penny from me or the investors on my tranche.

6        And that's just, basically, all I want to say to you.

7   I want to wish you a very happy and healthy New Year to you

8   and your family.  And I hope we can do this in an expedited

9   way.

10        And last, I must also say that Mr. Max Stein does not

11  represent my situation.  He doesn't represent me or my

12  interests.

13        So, I want to thank you very much, and God bless you.

14        THE COURT:  Thank you.

15        All right.  So, I just want to make sure that this

16  process is going smoothly and we're meeting our target -- our

17  May 4th target.  What I'd like the parties to do is I would

18  like the parties to submit a status report -- a joint status

19  report -- by March 5th.  Basically, I want to know how things

20  are going.  And I want -- if you can give me assurances that

21  May 4th is a done deal, then all the better.  And, then, if

22  there are any other issues I need to address, please put it in

23  the status report.

24        I find the status reports very helpful.  Obviously,

25  there's a lot of moving pieces in this case and,

1  unfortunately, this is not the only case I have on my docket.

2  So, those types of status reports and kind of reminders,

3  particularly those lists at the end about various pending

4  actions that the parties are awaiting, those are very helpful

5  to me and my staff.

6          All right.  And, then, if I do think that another

7  status hearing would be helpful after I review that, I'll go

8  ahead and set one.  Okay?

9          All right.  So, thank you all for all of your input

10  today and your input and your patience throughout this

11  process.  I look forward to getting this done.

12          Thank you very much.

13          MR. RACHLIS:  Thank you, your Honor.

14          MR. DAMASHEK:  Thank you, Judge.

15                  *     *     *     *     *

16

17  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

18

19
    /s/ Joseph Rickhoff                    February 13, 2021
20  Official Court Reporter

21

22

23

24

25