UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) | Civil Action No. 18-cv-5587 |
| ) | |
| v. ) | Hon. John Z. Lee |
| ) | |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, ) ) ) ) | Magistrate Judge Young B. Kim |
| ) | |
| Defendants. ) ) | |

RECEIVER'S TENTH INTERIM APPLICATION AND MOTION
FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES
OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc.,

EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen

and Shaun Cohen, as defined in the Order Appointing Receiver entered August 17, 2018 (Dkt. No.

16), as supplemented by Order entered March 14, 2019 (Dkt. No. 290) and Order entered February

21, 2020 (Dkt. No. 634) (collectively, the "Receivership Defendants"), and pursuant to the powers

vested in him by Order of this Court, respectfully submits this Tenth Interim Application

("Application") for the Fourth Quarter of 2020, and moves this Court for an order approving

payment of the fees and expenses of the Receiver, the Receiver's counsel, Rachlis Duff & Peel,

LLC ("RDP"), the Receiver's accountants BrookWeiner, LLC ("BrookWeiner") and Miller

Kaplan Arase LLP ("Miller Kaplan"), the Receiver's claims vendor Axos Fiduciary Services

("Axos"), and the Receiver's forensic IT consultant, Prometheum, from the Receivership Estate

operating account.  In support of his Application and Motion, the Receiver states as follows:

1

## I.  BACKGROUND

1.      On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a civil Complaint against Jerome Cohen, Shaun Cohen, EquityBuild Inc., and EquityBuild Finance LLC (collectively the "Defendants") alleging violations of federal securities laws, along with a motion for entry of an asset freeze, permanent injunction, and other ancillary relief.  (Dkt. Nos. 1 & 3, respectively)

2.      In their Complaint against the Defendants, the SEC alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a)q.  (Dkt. No. 1)

3.      The Complaint further alleged that the Defendants operated a Ponzi-scheme that raised at least $135 million from more than 900 investors by, among other things, making untrue statements of material fact in connection with the sale of promissory notes allegedly secured by residential real estate primarily located on the south side of Chicago.  (*Id.* ¶¶ 1-7, 17, 20-51)

4.      On August 28, 2018, the Court entered a judgment against defendants Jerome Cohen and Shaun Cohen which, among other things, enjoined future violations of federal securities laws.  (Dkt. No. 40)

5.      In connection with its civil action, the SEC sought and obtained Court approval for the appointment of a Receiver, and on August 17, 2018, this Court entered an Order Appointing Receiver.  (Dkt. No. 16)

6.      Under the Order Appointing Receiver, the Receiver was authorized to engage and employ persons and entities in his discretion to assist him in carrying out the duties and responsibilities set forth in the Order.  (*Id.*, Order Appointing Receiver, ¶ 54)

7.      Accordingly, the Receiver retained Rachlis Duff Adler Peel & Kaplan, LLC ("RDAPK")[1] as special counsel, and, on August 20, 2018, the Court entered an Order approving RDAPK's rates.  (Dkt. No. 19)  On August 23, 2018, the Receiver retained BrookWeiner to provide accounting services and to perform tax and related work regarding the assets of the Receivership Defendants, and Miller Kaplan to serve as Tax Administrator of the Settlement Fund (Dkt. No. 32).  On August 28, 2018, the Court entered an Order approving BrookWeiner's and Miller Kaplan's rates.  (Dkt. Nos. 39, 45)  On August 31, 2018, the Receiver retained Prometheum to access and preserve data within EquityBuild's cloud-based storage systems and provide related IT services, and, on September 6, 2018, the Court entered an order approving Prometheum's rates.  (Dkt. No. 56)

8.      Pursuant to the Order Appointing Receiver, the Receiver and his retained personnel are entitled to "reasonable compensation and expense reimbursement" from the Receivership Estate, as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  (Dkt. No. 16, ¶ 69)

## II.     TENTH INTERIM APPLICATION

9.      Pursuant to the Billing Instructions, the Receiver provides the following information regarding this Application:

---

[1] As of October 1, 2019, the firm changed its name to Rachlis Duff & Peel, LLC ("RDP").

a.      The Application covers the period from October 1, 2020 through December 31, 2020.

b.      The names and hourly rates of all professionals for RDP, BrookWeiner, and Miller Kaplan, as well as Axos' and Prometheum's hourly rates, are attached as **Exhibit A.**

c.      This is the Receiver's Tenth Interim Application.  The dates and amounts of the Receiver's prior interim fee applications, the orders and amounts allowed, and the amounts paid and unpaid, are attached hereto as **Exhibit B.**

### III.   CASE STATUS

10.     Pursuant to the Billing Instructions, the Receiver provides the following information regarding the status of the case, and activities performed specifically for the period covered by this Application.

a.      The Receiver's Standardized Fund Accounting Report ("SFAR") for the Fourth Quarter 2020 is attached as **Exhibit C.**  The SFAR sets forth the funds received and disbursed from the Receivership estate during this reporting period.  As reported in the SFAR, the amount of cash on hand as of December 31, 2020 was $1,181,881.43.  The information reflected in the SFAR was based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

b.      Upon his appointment, the Receiver began making efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, choses in action, rights and other assets, together with all profits, interest, or other income attributable thereto, which the Receivership Defendants owned, possessed, retained a beneficial interest in, or controlled

4

directly or indirectly, and to preserve and maintain those assets. In furtherance of such, the Receiver took, *inter alia*, the following actions:

   i. <u>Identification and Preservation of Assets</u>

  During the Fourth Quarter 2020, one of the Receiver's primary focuses continued to be the preservation, operation, maintenance, and sale of the 76 real estate properties remaining in the Receivership Estate at the beginning of the quarter. The Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, continued working to improve understanding and planning for cash flow needs for underperforming properties, and controlling expenditures where possible. To that end, the Receiver and his counsel communicated regularly with property managers relating to necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions. The Receiver and his retained professionals also reviewed monthly financial reporting, analyzed the cash position of the Estate, and communicated regularly with the real estate broker regarding prioritization of expenses and repairs on the properties.

  During the Fourth Quarter 2020, the Receiver worked closely with the two existing property management companies to ensure that all health, life, and safety issues at the properties were addressed expeditiously, and to monitor repairs, inspections, expenses, and property finances designed to preserve the properties and protect their financial position.

  The Receiver continued working with an adjuster to pursue claims for losses in connection with a fire that had occurred in November 2019 at 638 N. Avers, for which an additional $111,758.22 was received in the Fourth Quarter 2020.

  Additionally, the Receiver, with the assistance of counsel and the property managers, worked to address open building code violations of widely varying levels of severity. Only a

5

limited number of City of Chicago administrative actions went forward during the quarter due to the pandemic, and the majority of administrative court hearings were continued. The Receiver's counsel moved to set aside default judgments entered in four matters, appearing at an administrative hearing in one of these matters and obtaining a release of lien recorded against the property (4611 S. Drexel), and negotiating a settlement of the other three cases with corporation counsel (431 E 42nd Place). Counsel for the Receiver resolved two additional administrative matters by online submissions to the Department of Buildings, obtaining an order dismissing the EquityBuild entity from one case (1449 N. Talman) and a favorable settlement in the other matter (7546 S Saginaw). Counsel for the Receiver also worked with corporation counsel with regards to seven pending Department of Housing cases, and obtained three dismissals and four continuances. Additionally, during the quarter, the Receiver's counsel received numerous orders continuing hearings and three new notices of violations, and maintained its docket for all pending matters. As of December 31, 2020, there remained 17 known open City of Chicago matters involving code violations, including 4 pending City of Chicago municipal housing court matters, 11 pending City of Chicago administrative proceedings filed by the Buildings Department and 2 pending administrative proceeding filed by the Department of Sanitation.

ii.  <u>Property Sales</u>

The Receiver and his retained professionals closed the sales of the following 15 Receivership properties during the Fourth Quarter 2020, generating aggregate net proceeds in the amount of $13,896,003:

1.  6554-58 S. Vernon
2.  1700-08 W. Juneway
3.  7201-07 S. Dorchester
4.  7508 S. Essex
5.  431 E. 42nd
6.  7701-03 S. Essex

7.    7442-54 S. Calumet
8.    816-22 E. Marquette
9.    6949-59 S. Merrill
10.   4533-47 S. Calumet
11.   4315-19 S. Michigan
12.   7600-10 S. Kingston
13.   7656-58 S. Kingston
14.   1131-41 E 79th Place
15.   6250 S Mozart Street

Consistent with the Court's orders approving these sales, the Receiver segregated these net proceeds into separate subaccounts. (Dkt. Nos. 802, 841, 842, 910)

Also during the quarter, the Receiver filed his Tenth Motion to Confirm Sales of the following 13 apartment buildings and a vacant land parcel on October 5, 2020 (Dkt. No. 809):

- 4533-47 South Calumet Avenue, Chicago, Illinois 60653
- 4611-15 South Drexel Boulevard, Chicago, Illinois 60653
- 6217-27 South Dorchester Avenue, Chicago, Illinois 60637
- 7024-32 South Paxton Avenue, Chicago, Illinois 60649
- 7255-57 South Euclid Avenue, Chicago, Illinois 60649
- 4317-19 South Michigan Avenue, Chicago, Illinois 60653
- 7442-54 South Calumet Avenue, Chicago, Illinois 60619
- 7701-03 South Essex Avenue, Chicago, Illinois 60649
- 816-22 East Marquette Road, Chicago, Illinois 60621
- 1422-24 East 68th Street, Chicago, Illinois 60637
- 2800-06 East 81st Street, Chicago, Illinois 60617
- 4750-52 South Indiana Avenue, Chicago, Illinois 60615
- 7840 South Yates Avenue Chicago, Illinois 60649
- 431 East 42nd Place, Chicago, Illinois 60653 (vacant parcel)

On November 6, 2020, the Receiver filed his Reply to Objections raised as to eight of these properties (Dkt. No. 858) and obtained an order confirming the sale of the remaining six properties (Dkt. No. 842).

Contributing to greater motion practice and activity during the Fourth Quarter 2020, the Receiver and his counsel responded to two Seventh Circuit appeals of the Court's order overruling objections to the Receiver's Eighth and Ninth Motions to Confirm Sales (Dkt. No. 825), as well as district court motions to stay the property sales, to certify an interlocutory appeal, and to vacate

property sales, and participated in a mandatory settlement conference ordered by the Seventh Circuit. Ultimately, the Receiver obtained dismissal of both appeals and the motions pending in the district court were dismissed as moot, allowing the properties to be sold and their proceeds preserved for the benefit of claimants on the properties at issue

Also during the quarter, the Receiver marketed the 37 properties (consisting of four dwelling units or less) for which the Court approved a portfolio sale (Dkt. No. 682). Along with other promotional efforts, the Receiver advertised these properties for public bid for four consecutive weeks between December 14, 2020 and January 4, 2021 with a January 15, 2021 deadline for the submission of offers.

### iii. The Financial Reporting and Rents Restoration

During the Fourth Quarter 2020, the Receiver continued to provide institutional lenders with monthly accounting relating to rents generated by, and expenses incurred in connection with, the properties on which they assert liens. To that end, reports were sent to lenders' counsel covering the periods through May 2020. In addition, the Receiver worked with his retained professionals to prepare reports for the period ended September 30, 2020 that also reflected (a) rentals restored to each property to which restoration remained outstanding pursuant to the February 13, 2019 Order (Dkt. No. 223), and (b) transfers from the sales proceeds held in separate accounts for certain properties equal to the amounts reimbursable from each such property, pursuant to the Order entered on September 21, 2020 (Dkt. No. 796), and as more specifically detailed in the Receiver's Second Motion For Restoration Of Funds Expended For The Benefit Of Other Properties (Dkt. No. 749). Those reports were distributed to lenders' counsel on January 25, 2021.

iv.  Open Litigation

During the Fourth Quarter 2020, the settlement and release agreement was executed by the plaintiff in the matter captioned *Barnes v. EquityBuild, Inc., et al.*, Case No. 19 L 7852, Circuit Court of Cook County, and the matter was closed.

Fact and expert discovery have proceeded in the matter captioned *Byrd v. EquityBuild, Inc., et al.*, Case No. 18 L 1993, Circuit Court of Cook County and a discovery cutoff of March 31, 2021 has been set.  Two outstanding orders for rules to show cause have been issued against two key witnesses, but due to COVID-19 the sheriff's office is not currently serving the orders. Discovery may need to be extended if defendant is unable to complete these two depositions.

A claim brought by a tenant of 4520 S Drexel Avenue was settled by the insurance carrier during the quarter without a lawsuit having been filed, resulting in a $25,000 deductible payment owed which sum is included in the Receiver's pending Motion to Approve Use of Proceeds from Sales of Receivership Property, for which there was no objection. (Dkt. No. 902)

The Receiver also received notice of a personal injury claim made by a tenant for injuries allegedly sustained at 7114 S Cornell on August 9, 2020.  The Receiver's counsel provided notice of the Receivership to the tenant's lawyer and notice of the claim to the institutional lender's counsel, and obtained medical records and a settlement demand.

v.  Notice of Appointment of Receiver

During the Fourth Quarter 2020, the Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate.  To that end, as they are identified, the Receiver continues to deliver notices to individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have

retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

### vi. Control of Receivership Property and Records

During the Fourth Quarter 2020, the Receiver continued efforts to locate and preserve all EquityBuild property and records. The Receiver maintained two platforms of records and data during the Fourth Quarter 2020.

### vii. Factual Investigation

During the Fourth Quarter 2020, the Receiver and his retained professionals continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, plus a limited number of hard copy records); (iv) available underlying transaction documents received to date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

During the Fourth Quarter 2020, the Receiver and his retained counsel continued to evaluate potential third-party claims. The Receiver filed an amended complaint in the lawsuit pending in the Circuit Court of Cook County's Law Division against certain of EquityBuild's former lawyers: (1) the law firm Rock Fusco & Connelly LLC ("Rock Fusco"), (2) Ioana Salajanu, a lawyer formerly at Rock Fusco, and (3) the law firm Bregman, Berbert, Schwartz & Gilday, LLC, alleging professional malpractice as well as aiding and abetting the Cohen's breaches of their fiduciary duties. As of January 15, 2021, all Defendants have answered the complaint in the state court action brought by the Receiver and written discovery has commenced.

viii.  <u>Tax Issues</u>

BrookWeiner was retained to perform accounting, tax, and related work in connection with winding down the business operations of the Receivership Defendants.  BrookWeiner also has compiled monthly property statements and property spreadsheets and assisted with cash flow analysis matters.  In addition, during the Fourth Quarter 2020, BrookWeiner prepared thirteen 2017 partnership tax returns.

Miller Kaplan was retained to serve as the Tax Administrator to take all necessary steps to enable the Settlement Fund to obtain and maintain the status of a taxable Qualified Settlement Fund ("QSF"), including the filing of all required elections and statements contemplated by those provisions, and to pay taxes in a manner consistent with treatment of the Settlement Fund as a QSF.  During calendar year 2020, Miller Kaplan prepared and filed the 2019 Qualified Settlement Fund Income Tax Return, paid quarterly estimated taxes for the year 2020, and began preparation of the 2020 Qualified Settlement Fund Income Tax return,

ix.  <u>Accounts Established by Receiver for the Benefit of the Receivership Estate</u>

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property.  The interest-bearing checking accounts are used by the Receiver to collect liquid assets of the estate and to pay the portfolio-related and administrative expenses.  For each property encumbered by secured debt that has sold, the Receiver also has established a separate interest-bearing account for the purpose of depositing and holding funds until such time as the Court orders otherwise and for ultimate distribution, following a claims process and upon Court approval, to the creditors of the Estate, including the defrauded investors. (Dkt. Nos. 230, 311, 344 & 346)

c.    Creditors and Claims Against the Receivership Estate

During the Fourth Quarter 2020, the Receiver and his retained professionals continued to improve the accuracy and completeness of the "Master Claims Exhibit," preliminarily identifying on a property-by-property basis for each of the nearly 2400 claims the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loaned or invested in the particular property (where it could be determined from the face of the claim form).   The Receiver has encouraged claimants to review this exhibit and bring any discrepancies to the attention of the Receiver, and the Receiver and his retained professionals have updated the exhibit where appropriate.   The most recent version of the Master Claims Exhibit was submitted with the Joint Status Report filed on December 16, 2020. (Dkt. No. 911 at Ex. 1A)   This work was reasonable, necessary, and beneficial to the Receivership estate, and has allowed the Receiver's claims vendor to organize, on a property-by-property basis, the claim forms and supporting documentation that claimants have submitted to the Receiver, so that once a claims process and confidentiality order are approved by the Court, digital links for the transfer of claims and supporting documentation from other claimants asserting claims against the same property can be provided to each claimant on a property-by-property basis consistent with Court orders.

The identification and compilation of claims submitted in this matter has been complex and time-consuming due to the unique circumstances and facts in this case. For example, it appears that in some instances anticipated proceeds of investor-lender loans rolled into new offerings rather than being paid off at maturity. It also appears that in some circumstances the mortgages securing loans may have been released without investor-lenders' knowledge or consent, allowing the Defendants to refinance the properties with new loans without retiring the existing loans. Moreover, some investor-lenders may have been induced to exchange secured loans for unsecured

loans or equity positions through false representations. Additionally, claims against many properties are complicated by cross-collateralized mortgages.

The claims process has been further complicated by, among other things: (i) improperly completed proofs of claim, (ii) claims relating to properties that were conveyed to third parties prior to the establishment of the Receivership; and (iii) claims lacking reference to properties, or relating solely to what appear to be equity investment vehicles.

Much of the Receiver's and his counsel's time during the Fourth Quarter 2020 was devoted to working with counsel for institutional lenders and investor-lenders on the establishment of a claims resolution process. During the quarter, the Court held additional telephonic hearings on October 27 and December 17, 2020, regarding the Receiver's February 28, 2020 Motion for Approval of Process for Resolution of Disputed Claims (Dkt. No. 638), which proposed a process for the orderly resolution of claims submitted to the Receiver in this matter. (Dkt. Nos. 836, 915) At the Court's direction, the Receiver continued to work with counsel for claimants to prepare several joint status reports and motions, and in accordance with that directive counsel for the Receiver held several extended conference calls and exchanged multiple rounds of drafts of (1) Joint Status Report Regarding Pending Motions (Dkt. 805) filed on October 2, 2020; (2) Joint Motion to Resolve Disputes Regarding Standard Discovery (Dkt. No. 807) also filed on October 2, 2020; and (3) Joint Status Report Regarding Certain Elements of the Claims Process (Dkt. No. 911) filed on December 16, 2020.[2] Additionally, the Receiver responded to: (4) Certain Institutional Lenders' Proposal for Access to EquityBuild Documents (Dkt. No. 812) on October 27, 2020 (Dkt. No. 828); and (5) Motion for a Protective Order raising privilege issues related to

---

[2] A second Joint Status Report regarding the claims process was filed on January 22, 2021 (Dkt. No. 928). A substantial amount of the work on this latter report was conducted during the Fourth Quarter of 2020.

communications with the institutional lenders' insurers (Dkt. No. 866) on November 24, 2020 (Dkt. No. 884).

In connection with the discussions regarding the claims process, the Receiver also divided the properties in the estate into proposed groupings and shared his proposal with counsel for both the institutional lenders and certain of the investor-lenders , worked with vendors Axos and Avalon to ready the claims documentation for transfer to claimants, met with vendors CloudNine and TeamWerks to evaluate and receive training on their electronic discovery platform, and worked with counsel for the institutional lenders to draft a proposed order implementing the first phase of the claims process.

The Receiver also devoted significant time and effort before this Court and the Seventh Circuit Court of Appeals relating to motions initiated by certain of the institutional lender claimants. Briefing was completed on (1) the pending Motion for Priority Determination and Turnover of Sale Proceeds (Dkt. Nos. 785, 806, 817); (2) Motion for Reconsideration of the Court's September 23, 2020 minute order (Dkt. No. 801) related to the claims process (Dkt. Nos. 814, 818, 822, 823, 849), which was denied by the Court on December 17, 2020 (Dkt. 915); (3) Motion to Stay Sales and Motion for Certification of Interlocutory Appeal (Dkt. Nos. 832, 833, 834, 854, 862, 870), which were denied as moot in light of the Seventh Circuit's dismissal of the appeal on December 11, 2020. (Dkt. Nos. 898, 899); and (4) the Receiver's Motion to Dismiss the Appeal, which was granted by the Seventh Circuit Court of Appeals on December 11, 2020.[3]

The institutional lenders have raised a myriad of objections regarding each stage of the proposed process for the resolution of claims, which the Receiver responded to both orally and in

---

[3] As noted in Section I(b), Ventus Holdings also made several filings before the Court and the Seventh Circuit in an effort to stop the sales of three properties, all of which were denied.

writing during the quarter. These objections include the Receiver's role in the evaluation and resolution of competing claims and the Court's priority determinations, the scope and timing of discovery, the appropriateness of summary proceedings, the timing and mechanism for the Receiver's affirmative assertion of avoidance claims, and the means through which the costs for the administrative expenses associated with the process will be handled. The Court is continuing to evaluate various issues regarding the claims resolution process and to that end, another status conference was held on January 29, 2021.

Pursuant to the Court's order, the Receiver and his counsel worked with counsel for the institutional lenders on the hosting of EquityBuild's internal documents to provide access to all claimants, and to prepare standard discovery requests to investor-lender claimants and to institutional lender claimants and a protective order governing the discovery of confidential information. Pursuant to such discussions and further approvals and instructions from the Court as set forth in a conference held on December 17, 2020, a process is being established where efforts will be made to create the EquityBuild document library where access will be permitted for a small fee for a limited time period of approximately six months. Separately, over a three month period, links to claims submitted for a property will be provided to each claimant on that property, subject to terms of a confidentiality order that the court has entered. The Agreed Confidentiality Order was entered by the Court on December 19, 2020 (Dkt. No. 917), and proposed orders relating to claimants' access to the EquityBuild and claims documentation have been presented to the Court and were entered on February 9, 2021. (Order Relating to Claims Resolution Process (Dkt. No. 940) and Order Regarding Claims Resolution Process No. 2 (Dkt. No. 941))

As reflected in the December 17, 2020 status conference, the Court has also reviewed and largely approved of standard discovery that will be issued to each participant in a given group, in

the hope of expediting the resolution of each group. A few items related to standard discovery remain under review, as do other matters regarding the other discovery to occur during the claims resolution process.

The Receiver is continuously updating all claimants on the developments in this matter, and responding in a timely manner to the hundreds of emails and voicemails from investors and others, many if not most of which related to the claims submitted against the Estate and the status of the Court's process for resolving those claims and distributing the Estate's assets. To ease the burden and provide basic information, the Receiver established a web page (*http://rdaplaw.net/receivership-for-equitybuild*) for claimants and other interested parties to obtain information and certain court filings related to the Receivership estate, which remains in place today and continues to be best and most cost-effective mean of providing information regarding the status of this action.

        d.    <u>Assets in Receivership Estate</u>

All known Receivership Property is identified and described in the Master Asset List attached hereto as **<u>Exhibit D.</u>** The Master Asset List identifies 56 checking accounts in the names of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $213,249.56. (*See also* Dkt. No. 258 at 21, and Dkt. No. 348 at 23-24, for additional information relating to these funds) Additionally, 89 separate interest-bearing accounts established by the Receiver to hold the proceeds from sold real estate are identified on **<u>Exhibit E</u>**.

The Master Asset List does not include funds received or recovered after December 31, 2020. Nor does it include potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests. The Receiver is in the process of evaluating

certain other types of assets that may be recoverable by the Receivership Estate, including, but not limited to, charitable donations, loans, gifts, settlements for which payment has not yet been received, and other property transferred to family members, former employees, and others.

       e.    *See also* Receiver's Tenth Status Report (Fourth Quarter 2020) for additional information.  (Dkt. No. 930)

## IV.    BILLING ADDRESSED IN THIS APPLICATION

      11.    Pursuant to the Billing Instructions, the Receiver provides the following information regarding current billing:

       a.    <u>Total Compensation and Expenses Requested</u>.

          i.    In connection with his duties, the Receiver respectfully requests compensation for services rendered, totaling $87,438.00 for the period of this Application.  Copies of the Receiver's invoices for – October, November, and December, 2020 are attached as **<u>Exhibit F.</u>**

         ii.    In connection with the legal services provided to the Receiver by RDP, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $318,955.81 for the period of this Application.  Copies of RDP's invoices for October, November, and December, 2020 are attached as **<u>Exhibit G.</u>**  Additionally, Receiver's counsel Andrew Porter received $44,054 as agency fees for the title examination work performed in connection with the closing of properties during the Fourth Quarter 2020.  The Receiver will reduce the amount due to RDP for the Fourth Quarter 2020 by this amount.

iii. In connection with the accounting provided to the Receiver by BrookWeiner, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $10,335.00 for the period of this Application. Copies of BrookWeiner's invoices for October, November, and December, 2020, are attached as **Exhibit H.**

iv. In connection with the accounting provided to the Receiver by Miller Kaplan, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $5,603.20 for the period of this Application. A copy of Miller Kaplan's invoice for the period ending December 31, 2020 is attached as **Exhibit I.**

v. In connection with the database services provided to the receiver by Axos, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $120.00 for the period of this Application. A copy of Axos' invoice is attached as **Exhibit J.**

vi. In connection with the IT services provided to the Receiver by Prometheum, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $990.00 for the period of this Application. A copy of Prometheum's invoice is attached as **Exhibit K.**

b. <u>Source of Funds for Requested Compensation and Expenses</u>. The Receiver requests that the above compensation and expenses be paid from the Receiver's operating account to the extent there are sufficient funds now or in the future. To the extent funds are insufficient, Receiver requests that the above compensation and expenses be paid pursuant to the receiver's lien

that the Court established in order that receivership property may be used to compensate the Receiver and his counsel for their work. (*See* Court's 10/26/20 Order granting Receiver's lien (Dkt. 824))

        c.       <u>Tenth Application for Payment of Professional Fees and Expenses</u>.  This is the Receiver's Tenth Interim Application.

        d.       <u>Summary of Activity</u>.  A "Summary of Activity," providing the total hours billed and the amount of billing for each person who billed time during the Application period (October 1, 2020 through December 31, 2020) can be found at the end of the Receiver's invoices (Exhibit F) and RDP's invoices (Exhibit G) and on the first page of the BrookWeiner and Axos invoices (Exhibits H and J).

## V.      REQUEST FOR RECEIVER'S LIEN

        12.      This Court has previously granted a receiver's lien and its previously ruling is equally applicable here.  (Dkt. No. 824)  Consistent with the reasons set forth in the Receiver's prior fee applications and other requests and the Court's prior ruling, a receiver's lien on the estate assets and their proceeds to pay costs of the Receiver and his retained professionals that were incurred for the benefit of those properties and their competing claimants is appropriate. (*See, e.g.,* Dkt. No. 778, at 18-25; Dkt. No. 638, ¶¶ 53-57; Dkt. No. 720, at 14-20; Dkt. No. 755)  The Receiver believes that the receiver's lien and the allocation methodology previously approved by the Court is reasonable and equitable given the facts, circumstances, and practical challenges of the Receivership.  Consistent with this approach, the Receiver requests a lien against each property to be paid on a first priority basis before all other liens on the properties to ensure that all Court-approved fees and expenses of the Receiver and the Retained Professionals are paid in accordance with the foregoing proposed methodology.

## VI.    CONCLUSION

WHEREFORE, the Receiver respectfully requests that the Court approve the Receiver's Tenth Interim Fee Application and enter an Order as follows:

a.    Finding the fees and expenses of the Receiver and Receiver's retained professionals, Rachlis Duff & Peel LLC, BrookWeiner, LLC, Miller Kaplan Arase LLP, Axos Fiduciary Services, and Prometheum, as described in Exhibits F-K, respectively, to be reasonable and necessary to the Receivership;

b.    granting the Receiver and his retained professional a first priority administrative lien against each of the real estate properties in the Receivership Estate and their sales proceeds for payment of fees and costs;

c.    approve the proposed allocation and payment methodology with respect to a Receiver's lien for all fees and expenses of the Receivership Estate as described and recommended in this fee application;

d.    approving the Receiver's payment of such fees and expenses to the Receiver and to Receiver's retained professionals from sales proceeds for each of the properties in the Receivership Estate as described and recommended in this fee application; and

e.    granting the Receiver all other relief which this Court deems just and proper.

Dated:  February 23, 2021                    Kevin B. Duff, Receiver

                                             By:    /s/    Michael Rachlis

                                                    Michael Rachlis
                                                    Jodi Rosen Wine
                                                    Rachlis Duff & Peel, LLC
                                                    542 South Dearborn Street, Suite 900
                                                    Chicago, IL 60605
                                                    Phone (312) 733-3950; Fax (312) 733-3952
                                                    mrachlis@rdaplaw.net
                                                    jwine@rdaplaw.net

## <u>RECEIVER'S CERTIFICATION</u>

1.      Pursuant to the Billing Instructions, the Receiver certifies as follows regarding the

Receiver's Tenth Interim Application and Motion for Court Approval of Payment of Fees and

Expenses of Receiver and Receiver's Retained Professionals:

a.      The Receiver has read the foregoing Application and Motion;

b.      To the best of the Receiver's knowledge, information and belief formed after reasonable inquiry, the Application and Motion and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in this Certification, Application, and Motion);

c.      All fees contained in the Application and Motion are based on the rates listed in the Fee Schedule attached hereto as Exhibit A, and such fees are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

d.      The Application and Motion does not include in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment, or capital outlay (except to the extent any such amortization is included within the permitted allowable amounts set forth herein); and

e.      In seeking reimbursement for a service which the Receiver or the Receiver's Retained Professionals justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), reimbursement is requested only for the amount billed to the Receiver or Receiver's Retained Professionals by the third-party vendor and paid by the Receiver or Receiver's Retained Professionals to such vendor.  If such services were performed by the Receiver or Receiver's Retained Professionals, the Receiver certifies that no profit has been made on such reimbursable service.

2.      On February 16, 2021, the Receiver provided to Mr. Benjamin Hanauer, of the

SEC, a complete draft copy of this Application and Motion, together with all exhibits and relevant

billing statements in a format specified by the SEC.

Dated: February 23, 2021                     _____/s/ Kevin B. Duff_____
                                             Kevin B. Duff, Receiver
                                             EquityBuild, Inc., et al.
                                             c/o Rachlis Duff & Peel, LLC
                                             542 S. Dearborn Street, Suite 900
                                             Chicago, IL  60605
                                             (312) 733-3390 - kduff@rdaplaw.net