UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee |

**MORTGAGEES' RESPONSE TO RECEIVER'S TENTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND <u>EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS</u>**

The Mortgagees[1] object to the Receiver's Tenth Interim Fee Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained

---

[1] The Mortgagees are Freddie Mac; Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Wilmington Trust, National Association, as Trustee for the benefit of the registered holders of UBS Commercial Mortgage Trust 2017-C1, Commercial Mortgage Pass-Through Certificates, Series 2017-C1; Federal National Mortgage Association ("Fannie Mae"); BMO Harris Bank N.A.; Midland Loan Services, a Division of PNC Bank, National Association; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Colony American Finance 2015-1; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Registered Holders of Corevest American Finance 2017-2 Trust, Mortgage Pass-Through Certificates, Series 2017-2; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Benefit of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates; BC57, LLC; UBS AG; Thorofare Asset Based Lending REIT Fund IV, LLC; and Liberty EBCP, LLC.; Direct Lending Partner LLC (successor to Arena

Professionals ( the "10th Fee Application") and specifically request that this Court deny the Receiver's request for a blanket super priority lien for administrative expenses on properties encumbered by their mortgages because the Mortgagees did not consent to the receivership and the Receiver (a) fails to show that these properties and the secured creditors benefitted from his efforts in administering the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, and their affiliates (the "Estate"), and (b) fails to provide an acceptable basis to surcharge his administration expenses among the properties. The Mortgagees incorporate by reference herein their Response to Receiver's Motion for Approval to Pay Certain Previously Approved Fees and Costs and for Interim Payment of Continuing Claims Process Fees and Costs Pursuant to Receiver's Lien, filed concurrent with this response, and their Response to the Receiver's Seventh Fee Application (Dkt. 777). Not only should the Court question the propriety of another interim award at this time, but even if such an award is made, the imposition of a receiver's lien is inappropriate absent a benefit to the Estate, and lien priority cannot be awarded absent a showing that the Mortgagees benefitted from the Receiver's efforts.

## Introduction

In his 10th Fee Application, the Receiver requests a super priority lien against all of the Estate's real properties, or the proceeds from their sale, ahead of the interests of all secured creditors. ("Request," Dkt. 945, p. 19.) In doing so, the Receiver relies on the Court's prior grant of a receiver's lien in conjunction with the Receiver's 7th and 8th Fee Applications. (Dkt. No. 824). Yet, that ruling specifically did not address the issue of lien priority, holding that "[t]he priority of the Receiver's Lien as to any particular property or properties, however will be

---

DLP Lender LLC and DLP Lending Fund LLC) 1111 Crest Dr., LLC, Pakravan Living Trust, Hamid Ismail, and Farsaa, Inc.

determined by the Court as part of the claims approval process." *Id*. at p. 6. As such, the Court rejected the Receiver's request for an advance determination of lien priority as to both the Receiver's Fee Application and Claims Process Dispute Resolution Motion (Dkt. 638). The same determination should apply here. Moreover, the Mortgagees intend to appeal any ruling granting the Receiver a blanket super priority lien and respectfully disagree with any finding that the Receiver has met his burden to be awarded a receiver's lien.

    **I. A Receiver Should Be Awarded a Lien Only If He Benefits the Estate.**

A receiver's only duty is to benefit the Estate. *SEC v. Schooler*, 2015 U.S. Dist. LEXIS 46870, 2015 WL 1510949, \*3, No. 3:12–cv–2164–GPC–JMA (S.D. Cal. March 4, 2015). Yet, no benefit has accrued here because the *de minimis* equity that may have existed in a few of the Estate's real properties at the outset of this case has been exhausted, admittedly leaving this as a no asset case involving a fight between its secured creditors. Hindsight may be twenty-twenty, but at this time, other than through the Receiver's far-fetched hope for a recovery from his theoretical lien avoidance actions, the Receiver is not providing any benefit to the Estate and should not be awarded a lien on its assets, which are already over-encumbered by the claims of secured creditors.

Under such circumstances, the Receiver long ago should have abandoned the real estate, or at least the underwater properties that could not even support their operating expenses, because they were a drain on, not a benefit to, the Estate. *See Standard Brass Corp. v. Farmers Nat'l Bank*, 388 F.2d 86, 89 (7th Cir. 1967) ("To take jurisdiction of the encumbered property in which there was obviously no equity for the bankrupt estate and to sell it free of lien over the objections of the lienor with the result only of subjecting it to costs of administration was an abuse of discretion."). Certainly, now that virtually all of the Estate property has been sold, the

Receiver's continued billings which are unrelated to his theoretical lien avoidance actions cannot possibly benefit the Estate, and he should not be awarded any liens against its assets for them.

Instead, since the Mortgagees and the Individual Investors assert liens on the Estate's real properties in excess of their values, the Receiver should step aside because his further involvement in the lien priority dispute will not benefit the Estate. Certainly, the Receiver is not conferring any benefits on the Mortgagees, who are represented adequately by counsel and want nothing more than to break free of the Receiver's clutches.

The Receiver's participation in the claims resolution process has not benefitted the Estate. The disputes among secured creditors are priority disputes. Illinois state priority law applies to determine the distribution of the Estate's assets, *see SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1344 (11th Cir. 2017), not equitable distribution principles. These disputes are well-suited to be resolved in state or federal court foreclosure actions. Those actions would ensure due process to all persons claiming an interest in the properties and an efficient well-established procedure to determine the rights and interests of the parties. And, the properties would not be encumbered by the costs of the Receiver's participation, a benefit to the claimants.

**II. A Receiver Can Be Awarded a Priming Lien Only to The Extent of the Benefit Conferred on the Secured Lender.**

A receiver "takes the property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1277 (D. Utah 2009). *See SEC v. EquityBuild, Inc.*, No. 18 CV 5587, 2019 WL 587414, *3 (N.D. Ill. Feb. 13, 2019) (Magistrate Kim's Memorandum Opinion and Order [Dkt. 223] citing with favor the *Madison* decision for the proposition that "the rights of receivers can be no greater than those of their predecessors in title."). Therefore, even if general unsecured estate assets are exhausted by receivership charges against them, secured creditors cannot be charged for receivership expenses

4

if those charges do not benefit the secured creditors. *See Bank of Commerce & Trust Co. v. Hood,* 65 F.2d 281, 283 (5th Cir. 1933).

As a matter of Illinois law, "a receiver's lien may be a superior lien on mortgaged property, so long as the receivership benefited the property and the mortgagee acquiesced in, or failed to object to, the receivership." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994), *citing Rosenblatt v. Michigan Avenue Nat'l Bank*, 70 Ill. App. 3d 1039, 389 N.E.2d 182, 187, 27 Ill. Dec. 370 (Ill. App. 1979); *Brackett v. Sedlacek*, 116 Ill. App. 3d 978, 452 N.E.2d 837, 840, 72 Ill. Dec. 584 (Ill. App. 1983). Similarly, Section 506(c) of the Bankruptcy Code permits a surcharge to be imposed only for the "reasonable necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim."

General assertions that a secured creditor benefitted from the operation of a business are insufficient. *In re Cascade Hydraulics & Utility Service, Inc.,* 815 F.2d 546, 548 (1987). Further, a party seeking a surcharge "does not satisfy [his or] her burden of proof by suggesting hypothetical benefits." *MW Capital Funding, Inc. v. Magnum Health & Rehab of Monroe LLC,* 2019 U.S. Dist. LEXIS 127463. Instead, a receiver must show what time and services he and his counsel devoted to the secured collateral and what part of their expenses benefitted it. *See Bank of Commerce & Trust Co. v. Hood*, 65 F.2d 281, 284 (5th Cir. 1933) (the court rejected as arbitrary an allocation based upon ratio of the value of the secured creditor's fund and unsecured creditor's fund); *In re Cascade Hydraulics & Utility Service, Inc.,* 815 F.2d at 548 (must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral).

Although the Mortgagees understand that certain fees, if properly supported and all requirements are met, may be chargeable against specific properties in a receivership, here the

Receiver proposes to allocate non-property specific fees across the board, without any accounting of the benefit received by each property that he proposes to surcharge. In fact, the Receiver filed his motion for interim payment of receivership fees using the sale proceeds of properties encumbered by the Mortgagees' liens and requesting this Court approve payment of fees from the Mortgagees' cash collateral sale proceeds **without providing an accounting of how much each property will pay**. [Dkt. 947] The motion was filed February 23, 2021 and the Receiver stated he would file such accountings "as soon as practicable, so as not to delay the Court's consideration of the relief requested" but has to date not filed any such accounting. [Dkt 947, p. 11] Moreover, the Receiver admitted in his 7th Fee Application that he cannot show such benefits with respect to particular properties. (Dkt. 755, p. 21). The Receiver even goes so far as to propose a method of allocation based on the sales prices of each property (Dkt. 755, p. 24), which clearly has no bearing on the actual value, if any, contributed by the Receiver to those sales and the properties themselves. *See SEC v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992) (rejecting receiver's proposal to require "secured creditors to pay the lesser of 10% of the value of the securities or 10% of the gross proceeds from the sale of the securities" as a means of reimbursing the receiver for his receivership work).

      Where there are priority disputes between the Mortgagees and the Individual Investors, the Receiver's job is not to interject himself into those disputes. As indicated above, the Receiver's job is to generate benefits for the Estate, not to level the playing field or provide a more accommodating forum for the Individual Investors. Even worse, the Receiver has held hostage and potentially subjected to Receivership costs, properties where no priority disputes

6

exist.[2] How can the Receiver be awarded a lien against these properties for the various costs of receivership administration covered by the 10th Fee Application? In sum, absent a benefit to the Mortgagees, their collateral should not be surcharged by the Receiver.

> **III. The Court Should Withhold Approval of the Request for Payment of Fees and Expenses until a Proposed Distribution Plan is Approved.**

As the Receiver admits, this Estate is insolvent. The Court should withhold approval of the 10th Fee Application until the Receiver files with the Court a proposed plan of distribution for the Estate and that plan is approved. As courts in this circuit has explained, interim fee awards are, by their nature, "discretionary and subject to reexamination and adjustment during the course of the case." *See, e.g., In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995); *In re Eckert*, 414 B.R. 404, 409 (Bankr. N.D. Ill. 2009). Thus, just because prior fee applications have been approved, does not mean all future fee applications must also be approved. As the United States Court of Appeals for the Seventh Circuit demonstrated in *Taxman*, professional fees can become subject to disgorgement, if the efforts required (and the fees associated with those efforts) outweigh the potential for recovery to the estate. 49 F.3d at 316. It is apparent this principle applies to this case.

> **a. The Receiver's Fees and Costs are Not Moderate or Reasonable and Have Caused the Estate to Become Insolvent.**

---

[2] These include (1) properties encumbered by mortgages granted to Mortgagees prior to any Receivership Defendant or Investor Lender acquiring any interest in the property, which mortgages the Receivership Defendant expressly assumed, (2) properties encumbered by mortgages recorded prior to any Investor Lender acquired an interest in the property, (3) properties not encumbered by a mortgage of any Investor Lender, (4) properties encumbered by Mortgages that secure loans that paid off a prior Institutional Lender who does not assert any claim, and (5) properties that have no competing claims as shown on the Receiver's table of claims submitted to Receiver on properties encumbered by Mortgagees' mortgages (e.g., 7110 S. Cornell Avenue, Chicago, Illinois and 6749-57 S. Merrill Avenue, Chicago, Illinois).

As the Receiver admits, the Estate does not have enough funds to pay his expenses. In fact, there are $2,063,884.22 in *approved* fees that are unpaid because the Estate lacks sufficient funds. *See* 10th Fee Application, Ex. B. Now the receiver requests an additional $423,442.01 in fees and expenses to be added to this already massive deficit.[3] The bleeding must stop.

Courts reviewing fee applications for receivers and their professionals apply the "rule of moderation." *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 645 (S.D.N.Y. 2008). Receivers and their professionals are only entitled to moderate compensation and ruling courts should "avoid even the appearance of a windfall." *Id*. (internal citation omitted). Moreover, the rule of moderation is especially important when hundreds of victims have been defrauded and will only recover a fraction of their losses. *Id*.

Similarly, receivers and their professionals are entitled only to fair and *reasonable* fees and costs. In determining whether fees and costs are reasonable, courts should consider "economy of administration, the burden that the estate may safely be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate." *In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970).

The fees requested by the Receiver to date are anything but moderate and reasonable and have directly caused this Estate to become insolvent, resulting in the Receiver's request for an improper receiver's lien. The 10th Fee Application requests a total of $461,280.48 in fees and expenses for 92 days. The Receiver has requested approval of a total of $4,710,679.47 in fees. This Court has approved $4,249,398.99 in fees and costs without a single reduction in fees or holdback (representing all fees and costs requested in the nine prior interim fee applications). Of these approved fees, $2,063,884.22 are **<u>unpaid</u>** because the Receiver lacks sufficient funds to

---

[3] The Receiver states that it will reduce by $44,054 the amount due RDF.

make these payments. *See* 10th Fee Application. Ex. B. In other words, the Estate is insolvent and there will be no funds to pay unsecured creditors, yet the Receiver continues to pile on fees.

| **Fee Application** | **Fees & Costs Requested** | **Fees & Costs Approved** | **Holdback Amount** |
|---|---|---|---|
| First Interim Fee Application (08/17/18 – 09/30/18) | $413,298.44 | $413,298.44 | $0.00 |
| Second Interim Fee Application (10/1/18 – 12/31/18) | $553,968.43 | $553,968.43 | $0.00 |
| Third Interim Fee Application (01/1/19 – 03/31/19) | $547,767.04 | $547,767.04 | $0.00 |
| Fourth Interim Fee Application (04/1/19 – 06/30/19) | $525,256.64 | $525,256.64 | $0.00 |
| Fifth Interim Fee Application (07/1/19 – 09/30/19) | $485,094.92 | $485,094.92 | $0.00 |
| Sixth Interim Fee Application (10/1/19-12/31/19) | $361,325.41 | $361,325.41 | $0.00 |
| Seventh Interim Fee Application (1/1/20-3/31/20) | $374,306.66 | $374,306.66 | $0.00 |
| Eighth Interim Fee Application (4/1/20-6/30/20 | $527,100.97 | $527,100.97 | $0.00 |

| | | | |
|---|---|---|---|
| Ninth Interim Fee Application (7/1/20-9/30/20 | $461,280.48 | $461,280.48 | $0.00 |
| **TOTAL** | $4,249,398.99 | $4,249,398.99 | $0.00 |

This amount also does not take into account the extremely high operating costs of the estate or payment of unpaid property taxes.

Previously, the Receiver pointed to the portfolio of real property he holds as evidence of potential recoveries and as justification to continue to pay his own fees and expenses. (*See* Sixth Fee Application, ¶11(b). This has been the Receiver's *modus operandi* throughout the entire case. The estate lacks sufficient funds to pay the Receiver's fees at the time of application so the Receiver points to potential future recoveries as justification for his fees. Then, at a later date, when there is additional cash on hand, he pays himself and his professionals, resulting in the dwindling of the cash on hand to a fraction of the beginning balance. Unfortunately for all parties involved, the well has run dry and the Receiver knows it as evidenced by his request for a receiver's lien. Now, he seeks to pay himself from fully secured properties, which as shown above is unlawful. The Mortgagees have pointed this out numerous times in prior filings, yet the Receiver refused to heed the warnings. *See, e.g.,* Objections to Sixth Interim Fee Application [Dkt. 648], p. 6-8.

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *U.S. Commodity Futures Trading Com'n v. Lake Shore Asset Mgmt. Ltd.*, Case No. 07 C 3598, 2010 WL 960362, at *6 (March 15, 2010) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986)). Based on ten fee applications, it is clear that the estate is not deriving enough money to pay administrative expense claims *and* some dividend to unsecured creditors. Thus, this Court should consider if the purposes for which this receivership has been filed can still be achieved. *S.E.C. v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1275 (D. Utah 2009) ("[A] receivership must be monitored to ensure it is still serving the function for which it was created.").

### IV. The 10th Fee Application Should be Subject to at Least a 20% Holdback

The Mortgagees strongly object to the approval of the 10th Fee Application. If the Court approves the 10th Fee Application, and it should not, then it should require at least a 20% holdback, especially in light of the undeniable insolvency of this estate. The purpose of holdback provisions are to "moderate potentially excessive interim allowances and to incentivize timely resolution." *S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225180, at *2 (S.D. Fla. Mar. 31, 2016). A holdback also protects the rights of litigants in a case such as this, where the receivership is under water and the parties have disputed, and will continue to dispute through appeal, the actions and role played by the Receiver, as well as any award of a super priority lien that is based on conduct that does not benefit their collateral.

Courts will frequently "withhold a portion of the requested interim fees because until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought." *S.E.C. v. Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *2 (N.D. Cal. May 15, 2013). Moreover, courts will withhold a portion of interim fee applications because "it is simply too early to tell *to the extent to which* [the receiver's] efforts will benefit the receivership estate." *Byers*, 590 F. Supp. 2d at 648. By withholding a portion of the fees, the court helps to "ensur[e] that the Receiver's efforts benefit the investors and the receivership estate is this Court's primary concern when awarding interim compensation…." *Small Bus. Capital Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *3. Moreover, the Court is entitled to both reduce fees by an across-the-board percentage and withhold a holdback percentage. *See Capital Cove Bancorp LLC*, No. SACV15980JLSJCX, 2016 WL 6078324, at *3 (reducing the interim fees by an across-the-board reduction of 3.6% and withholding 30% of the total interim fees).

The insolvency of the Estate justifies—even perhaps requires—a 20% or more holdback of fees. The Receiver's continued request for a receiver's lien highlights the dire need to conserve funds. Indeed, the SEC's Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission expressly allows holdbacks, if requested by the SEC. SEC Billing Instructions for Receivers in Civil Actions Commenced, *available at* https://www.sec.gov/oiea/Article/billinginstructions.pdf. Given the undeniable insolvency of the Estate, it is puzzling the SEC has not requested a holdback. Notwithstanding, this Court should exercise its discretion and require a holdback.

As illustrated above, the Receiver's efforts have not benefitted the creditors of the Estate. In fact, his efforts have harmed the creditors. Consistent with *Small Bus. Capital Corp.*, this Court should withhold a portion of the fees until such time the court can accurately determine the reasonable value of the Receiver's services.

As this Court has noted previously, the number of claims and the size of this receivership estate present uniquely challenging issues to the Receiver and his professionals. However, the estate's insolvency, coupled with the staggering amount of fees, mandate a hold on any further disbursements until some plan of action is proposed.

Specifically, before any further fees are approved by this Court, the Receiver should be required to set forth a projection of unencumbered receipts yet to be collected (if any), from which the unpaid fees of the Receivership Estate and the claims of unsecured creditors are to be paid. Without this information, the Court is not able to determine the reasonableness of the overall fees being sought in this case in relation to the expected distribution to unsecured creditors.

Accordingly, the Court should withhold approval of the 10th Fee Application until such time as the Receiver has filed with the Court a plan for distribution for the receivership estate and

13

until the Court has the opportunity to thoroughly review the 10th Fee Application. Alternatively, the Court should reduce the Receiver's and his professionals' fees to a reasonable and moderate amount and withhold 20% pursuant to this Court's order appointing the Receiver.

**V. Conclusion.**

This is an insolvent estate. The Receiver is adding to its burden, rather than providing a benefit, by inserting himself into a private lien priority dispute that will generate no funds for the Estate. Such conduct should not be rewarded through another award of fees or the imposition of a lien. Instead, the Receiver's 10th Fee Application should be denied.

In any event, the Receiver's fees cannot prime the Mortgagees' security interests as the Receiver has utterly failed to establish how they benefitted the properties over what could have been achieved through private litigation against the Individual Investors.

Respectfully submitted,

| | |
|---|---|
| /s/ Michael Gilman<br>Michael Gilman (6182779)<br>(mgilman@dykema.com)<br>Dykema Gossett PLLC<br>10 S. Wacker Drive<br>Suite 2300<br>Chicago, Illinois 60606<br>(312) 627-5675<br>*Federal Home Loan Mortgage Corporation Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Wilmington Trust, National Association, as Trustee for the Registered Holders of UBS Commercial Mortgage Trust 2017-C1,Commercial Mortgage Pass-Through Certificates, Series 2017-C1; Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through* | s/ James P. Sullivan<br>James P. Sullivan<br>James P. Sullivan (6256746)<br>CHAPMAN AND CUTLER LLP<br>111 W. Monroe Street<br>Chicago, Illinois 60603-4080<br>312.845.3445 (P)<br>312.701.2361 (F)<br>jsullivan@chapman.com<br>*Counsel for BMO Harris Bank N.A.*<br><br>s/ Jill L. Nicholson<br>Jill L. Nicholson (jnicholson@foley.com)<br>Andrew T. McClain (amcclain@foley.com)<br>Foley & Lardner LLP<br>321 N. Clark St., Ste. 3000<br>Chicago, IL 60654<br>Ph: (312) 832-4500<br>Fax: (312) 644-7528<br>*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc.,* |

14

| | |
|---|---|
| *Certificates, Series 2018-SB48; Federal National Mortgage Association; U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30 Sabal TL1 LLC; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Benefit of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Registered Holders of Corevest American Finance 2017-2 Trust, Mortgage Pass-Through Certificates, Series 2017¬2; BC57, LLC; UBS AG; 1111 Crest Dr., LLC, Pakravan Living Trust, Hamid Ismail, Farsaa, Inc.; Direct Lending Partner LLC, successor to Arena DLP Lender LLC and DLP Lending Fund LLC; Thorofare Asset Based Lending REIT Fund IV LLC* | *Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Federal National Mortgage Association; and Sabal TL1, LLC* |
| s/Jay L. Welford<br>Jay L. Welford<br>jwelford@jaffelaw.com<br>JAFFE RAITT, HEUER & WEISS, P.C.<br>Jay L. Welford (P34471)<br>27777 Franklin Road, Suite 2500<br>Southfield, Michigan 48034<br>(248) 351-3000<br><br>s/ Mark S. Landman<br>mlandman@lcbf.com<br>Landman Corsi Ballaine & Ford P.C. | s/ William J. Serritella, Jr.<br>William J. Serritella, Jr.<br>wserritella@taftlaw.com<br>Zachary R. Clark<br>zclark@taftlaw.com<br>Taft Stettinius & Hollister LLP<br>111 East Wacker Drive, Suite 2800<br>Chicago, IL  60601<br>(312) 527-4000 |

15

| | |
|---|---|
| 120 Broadway, 13th Floor<br>New York, NY 10271<br>Ph: (212) 238-4800<br>Fax: (212) 238-4848<br>*Counsel for Freddie Mac*<br><br>/s/ Thomas B. Fullerton<br>Thomas B. Fullerton (6296539)<br>Akerman LLP<br>71 S. Wacker Drive, 47th Floor<br>Chicago, IL 60606<br>(312) 634-5700<br>thomas.fullerton@akerman.com<br><br>Michael D. Napoli (TX 14803400)<br>Akerman LLP<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>(214) 720-4360<br>michael.napoli@akerman.com<br>*Counsel for Midland Loan Services, a Division of PNC Bank, National Association*<br><br>/s/ Jason J. DeJonker<br>Jason J. DeJonker (6272128)<br>(jason.dejonker@bclplaw.com)<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>161 N. Clark Street, Suite 4300<br>Chicago, IL 60601<br>(312) 602-5000<br>*Counsel for Direct Lending Partner LLC (successor to Arena DLP Lender LLC and DLP Lending Fund LLC)* | /s/ James M. Crowley<br>James M. Crowley<br>jcrowley@plunkettcooney.com<br>Plunkett Cooney, PC<br>221 N. LaSalle Street, Ste. 1550<br>Chicago, IL 60601<br>Ph: (312) 970-3410<br>Fax: (248) 901-4040<br>*Counsel for UBS AG*<br><br>/s/Scott Mueller<br>Scott B. Mueller, #6294642<br>(Scott.Mueller@stinson.com)<br>7700 Forsyth Blvd., Suite 1100<br>St. Louis, MO 63105<br>Phone: (314) 863-0800<br>Fax: (314) 259-3931<br>*Attorneys for BMO Harris Bank, N.A., and Midland Loan Services, a division of PNC Bank, NA, acting under authority designated by Colony American Finance Lender, LLC, assignee Wilmington Trust, N.A. as Trustee for the benefit of registered holder of Colony American Finance 2015-1*<br>/s/ David Hart<br>David Hart<br>(dhart@maddinhauser.com)<br>Maddin, Hauser, Roth & Heller, P.C.<br>28400 Northwestern Highway<br>Suite 200-Essex Centre<br>Southfield MI 48034<br>Phone: (248) 827-1884<br>Fax: (248) 359-6184<br>*Counsel for BC57, LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2021, I caused the foregoing **Mortgagees' Response to Receiver's Tenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals** to be electronically filed with the Clerk of Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record.

/s/ Michael A. Gilman