# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |  |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Judge John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) |  |

## THIRTEENTH MOTION TO CONFIRM THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), respectfully moves for approval of the sale of certain real estate and for the avoidance of certain mortgages, liens, claims, and encumbrances.

***The purchase and sale agreement underlying this transaction allows the buyer to terminate if the sale is not confirmed by Friday, May 28, 2021. In that vein, the institutional lenders interested in this sale have indicated that they do not oppose this motion.***

To the extent that this motion makes reference to "secured" interests or "released" mortgages, those references are descriptive only and not intended as representations that the subject security instruments have been conclusively determined "secured" or "released." This motion takes no position with respect to the validity or priority of any encumbrance referenced

herein, and the order in which any encumbrances are enumerated in the paragraphs that follow should not be construed as a finding or opinion regarding such issues.

***This Court Authorized The Receiver To Sell Assets Owned By The Receivership Defendants.***

1.      The United States Securities and Exchange Commission filed this case against EquityBuild, EquityBuild Finance, Jerome Cohen, and Shaun Cohen alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a).

2.      In its August 17, 2018 Order Appointing Receiver (Dkt. 16), the Court assumed exclusive jurisdiction over, and possession of, the assets of the Receivership Defendants, which included EB South Chicago 1 LLC, EB South Chicago 2 LLC, and EB South Chicago 3 LLC.

3.      In the Order Appointing Receiver, the Court conferred upon the Receiver (1) "all powers, authorities, rights and privileges" theretofore possessed by the principals of the Receivership Defendants under applicable state and federal law, as well as by the governing operating and shareholders' agreements, and (2) all powers and authority of a receiver at equity, as well as all powers conferred upon a receiver under 28 U.S.C. §§ 754, 959, and 1692, and FRCP 66.  (Docket No. 16, ¶ 4)

4.      The Court further authorized the Receiver to "take all necessary and reasonable actions to cause the sale" of "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (*Id.*)

5.      By Order dated March 14, 2019 (Dkt. 290), the Court identified EB South Chicago 4 LLC and 6217-27 S Dorchester LLC as additional Receivership Defendants.

***1516 E 85th Pl Associates Should Be Identified As A Receivership Defendant.***

6.     On or about April 11, 2013, 1516 E 85th Pl Associates (the "Partnership") was formed as an Illinois general partnership for the purpose of acquiring a single-family home at 1516 East 85th Place in Chicago. (A true and accurate copy of the partnership agreement is attached at Tab A.)

7.     EquityBuild owned 40% of the general partnership interests (*id.*), and an EquityBuild employee both executed the purchase and sale contract and applied for an employer identification number. (True and accurate copies of the purchase and sale contract and the letter from Internal Revenue Service assigning the partnership an employer identification number are attached at Tabs B and C.)

8.     On or about December 21, 2014, the Partnership conveyed 1516 East 85th Place to EB South Chicago 1 LLC by quitclaim deed that erroneously identified the grantor as "1516 E 85th Place Associates" rather than "1516 E 85th Pl Associates." (A true and accurate copy of the quitclaim deed is attached at Tab D.)

9.     In order to insure title to the prospective purchaser of 1516 East 85th Place, the Receiver has been asked to record a scrivener's affidavit on behalf of the Partnership, necessitating a judicial order identifying 1516 E 85th Pl Associates as a Receivership Defendant.

***The Receiver Will Provide Fair, Adequate, And Sufficient Notice Of This Motion To All Interested Parties.***

10.     In addition to service through the Court's electronic case filing system, the Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested parties of which he is currently aware by electronic mail (to the extent he possesses an e-mail address) or by regular mail if he possesses a mailing address but no e-mail address.

11.     The Receiver will use information obtained from EquityBuild's records, as well as communications received during the course of the Receivership, to ensure that contact information is as complete as reasonably possible.

12.     A copy of this motion will also be posted on the Receiver's webpage at http://rdaplaw.net/receivership-for-equitybuild.

**The Court Should Confirm The Public Sale Of A Portfolio Of Residential Properties Pursuant To 28 U.S.C. § 2002.**

13.     The court should confirm the public sale of the portfolio of residential properties identified on Tab E hereto (the "Single-Family Home Portfolio").

14.     On March 3, 2020, the Receiver filed a Seventh Motion For Court Approval Of The Process For Public Sale Of Real Property By Sealed Bid (Dkt. 645), relating to the Single-Family Home Portfolio, and that motion was granted by Order dated April 2, 2020 (Dkt. 682).

15.     Pursuant to 28 U.S.C. § 2002, a public sale of realty may be made by notice published "once a week for four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state or judicial district of the United States wherein the realty is situated."

16.     Notice of the public sale of the Single-Family Home Portfolio was published in the Chicago Sun-Times on December 14, 2020, December 21, 2020, December 28, 2020, and January 4, 2021, and the bid deadline was January 15, 2021. (*See* Certificate of Publication, Tab F.)

17.     On December 7, 2020 SVN began advertising the Portfolio for sale on the SFR Hub website (*www.sfrhub.com*), an online listing service through which prospective sellers of single-family home investment portfolios reach potentially interested purchasers. (Declaration of Michael Finch (Tab G, ¶ 6).

18.     In the offering memorandum that SVN published in connection with the marketing of the Portfolio, the opening bid price was set at $4,000,000 and the portfolio value was estimated to be $4,633,534, based on SVN's proprietary valuation metrics. (*Id.*, ¶¶ 5, 7.)

19.     In addition to listing the Single-Family Home Portfolio on the SFR Hub website, SVN sent an e-mail blast containing information regarding the Portfolio to 80,181 addressees, resulting in 15,544 "opens" and 2,092 "click-throughs" to the listing. (*Id.,* ¶ 8.)

20.     SVN agents spoke to approximately 47 different groups of potential purchasers, resulting in the execution of 29 non-disclosure agreements, and all 29 signatories accessed the due diligence vault containing documentation relating to each of the properties in the Portfolio. (*Id.,* ¶ 9.)

21.     At the bidding deadline, offers were submitted by six parties, the highest of which (an offer of $4,100,000) was tendered by Lawndale Realty 4 LLC ("Lawndale Realty"). (*Id.,* ¶ 10.)

22.     After the EquityBuild receiver accepted the purchase and sale contract, Lawndale Realty conducted additional due diligence on all, or substantially all, of the properties in the Portfolio and indicated that it would terminate the agreement in accordance with the terms of the inspection contingency unless the receiver extended a credit in the amount of $275,000 in respect of alleged latent defects not ascertainable from the due diligence materials made available prior to the bid submission deadline. (*Id.,* ¶ 11.)

23.     Several rounds of negotiations ensued, and the parties ultimately executed an amendment to the purchase and sale agreement pursuant to which the receiver agreed to reduce the purchase price by $100,000, and SVN agreed to reduce its commission from $160,000 to $142,180. (*Id.,* ¶ 12.)

24.     The Receiver accepted a purchase and sale contract submitted by Lawndale Realty 4 LLC on February 17, 2021. (A true and accurate copy of said purchase and sale agreement is attached at Tab H.)

25.     The purchase and sale agreement specified a purchase price of $4,100,000 and included an inspection contingency, and, prior to the expiration of the inspection period, the prospective purchaser communicated an intention to terminate the contract in accordance with the inspection contingency unless the Receiver agreed to a $275,000 price reduction.

26.     The Receiver and the prospective purchaser subsequently entered into a Second Amendment To Purchase And Sale Agreement (a true and accurate copy is attached at Tab I), pursuant to which the Receiver agreed to reduce the purchase price to $4,000,000.

27.     Prior to the execution of the Second Amendment To Purchase And Sale Agreement, the Receiver and SVN amended their listing agreement to reduce the commission payable in connection with the sale of the Single-Family Home Portfolio from $160,000 to $142,180. (A true and accurate copy of the letter agreement effectuating the commission reduction is attached at Tab J.)

28.     The encumbrances on title to each of the properties in the Single-Family Home Portfolio are contained on Tab K.

***The Receiver Will Be Required To Pay Transaction Costs Associated With The Conveyance Of The Single-Family Home Portfolio.***

29.     At the closing of the sale of the Single-Family Home Portfolio, certain costs and expenses will be paid from the sale proceeds, including, but not limited to, (1) the costs of surveys, (2) premiums associated with the delivery of owner's policies of title insurance, (3) state, local, and municipal transfer taxes, (4) closing (or escrow) fees assessed by the title company, and (5) various ancillary and customary charges relating to, among other things, the need to procure full

payment water certificates from the City of Chicago, the obligation to deliver ALTA commercial extended title insurance coverage, closing protection coverage, wire transfer fees (associated with the transfers of sales proceeds to receivership bank accounts), expediting fees, a gap risk update, and state regulatory fees.

30.     To convey clear title to the property, the Receiver will also be required to (1) pay any and all past due or currently pending water charges and delinquent Cook County property taxes, (2) extend credits in connection with prospective 2020 and 2021 Cook County property tax liability, and (3) pay a $142,180 sales commission to SVN.

31.     Finally, Andrew E. Porter, an attorney for the Receiver, serves as an agent for the title company through which the sale of the Single-Family Home Portfolio will close and will therefore receive an agency fee in the estimated amount of $55,054.50 for the title examination work performed in connection with the proposed conveyance of 38 separate properties, subject to increase if an acquisition lender requires title insurance endorsements.

32.     The Receiver intends to reduce the fee application ultimately submitted to the Court in connection with the corresponding asset disposition work in an amount equal to the agency fee being paid to Mr. Porter.

***The Receiver Will Segregate And Hold The Sales Proceeds In Separate Sub-Accounts.***

33.     Pending the completion of the claims process and a to-be-approved distribution plan, the proceeds from the sale of the Single-Family Home Portfolio will be held in a separate property-specific subaccounts established by the Receiver (and for which the Receiver will maintain an accounting as to all sums deposited therein) and will not be available to pay operating expenses of the Receivership, absent further order of Court.

34.     Title to each of the properties in the Single-Family Home Portfolio is held by one of five different entities, and four of those entities entered into portfolio loan agreements as a result of which four different institutional lenders now hold mortgagee interests in various properties.

35.     Using the individual property valuations generated by SVN as a starting point, the Receiver and counsel for the institutional lenders settled upon property-specific allocations of the proceeds from the sale of the Single-Family Home Portfolio by adjusting the values *(i)* in the case of 7210 South Vernon Avenue, to account for a fire, as well as a theft of building infrastructure occurring after the property was photographed in connection with the dissemination of due diligence materials to prospective purchasers and *(ii)* in the case of 1414 East 62nd Place, 9212 South Parnell Avenue, 5437 South Laflin Avenue, 1401 West 109th Street, and 310 East 50th Street, to account for credits issued to the prospective purchaser in respect of alleged latent defects.

36.     A spreadsheet containing the proposed allocations of sales proceeds to each property in the Single-Family Home Portfolio, as agreed upon by the Receiver and the institutional lenders, is attached as Tab L.

37.     The Receiver will allocate property-specific closing costs to the corresponding properties and allocate any remaining selling expenses, including the brokerage commission, *pro-rata* among the properties affected.

38.     The deposit of funds into property-specific subaccounts does not constitute an admission that any or all such amounts are subject to a valid security interest. The actual amount of sales proceeds in the subaccounts to which the parties claiming the secured interest are entitled will be subject to determination through the claims process. The Receiver reserves all rights to seek a transfer of any such proceeds to the Receiver's operating account by subsequent Order of the Court.

WHEREFORE, the Receiver respectfully requests that this Court grant the Thirteenth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances by entering an order in the form attached at Tab M approving the sale of the Single-Family Home Portfolio free and clear of the mortgages, liens, claims, and encumbrances identified herein, and with all such mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the corresponding property prior to the sale.

Dated:  April 12, 2021                                    Kevin B. Duff, Receiver

                                                By:     /s/ Michael Rachlis
                                                        Michael Rachlis
                                                        Jodi Rosen Wine
                                                        Rachlis Duff & Peel LLC
                                                        542 South Dearborn Street, Suite 900
                                                        Chicago, IL 60605
                                                        Phone (312) 733-3950
                                                        mrachlis@rdaplaw.net

**TAB A**

**General Partnership Agreement of a Business
Owned by Individuals**

**ARTICLES OF PARTNERSHIP OF 1516 E 85th Pl Associates dated April 11th, 2013.**

## <u>RECITAL</u>

The parties hereto wish:

(a)      to enter together into the business of the buying, managing and selling of real property.

(b)      in order to provide for and carry out the foregoing, to form and do business as a general partnership under and pursuant to Illinois law.

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements set forth herein, the parties agree as follows:

## <u>Definitions</u>

As used in this Agreement the terms listed below will have the meanings stated below, and other terms defined elsewhere will have the meanings there ascribed to them:

"Agreement" or "this Agreement":  these Articles of Partnership.

"Partner":  each or any of the parties hereto and any other Person or entity that may hereafter become a partner of this Partnership pursuant to the terms of this Agreement.

"Partnership": the general partnership formed under and pursuant to this Agreement.

"Person":  a natural person, partnership, corporation, unincorporated association, trust, estate or any other entity.

## Section 1

## <u>NAME</u>

The name of the Partnership shall be **1516 E 85th Pl Associates**

## Section 2

## <u>BUSINESS AND PURPOSE</u>

3.1 The purpose of the business is the buying, managing and selling of real property.

3.2.    The Partnership shall have authority and power to engage in any other activities necessary to conduct the business described in Section 3.1.

**Section 4**

**TERM**

The Partnership shall commence on the date of this Agreement and, unless sooner terminated in accordance with this Agreement, shall continue until the real property owned pursuant to this agreement is sold in it's entirety and all distributions due and payable under this agreement are made in accordance with the terms of this agreement.

**Section 5**

**CAPITAL CONTRIBUTIONS**

5.1.    The initial capital contribution of each Partner to the Partnership shall be made within 5 days following the date of this Agreement in the amount set forth below after his or her name:

| Name of Partner | Amount of Initial Contribution |
|---|---|
| Biltmore Limited LLC | $87,600 |
| Albert J. Isola, Jr. | $40,000 |
| Clearview Equities Inc. | $20,000 |
| EquityBuild, Inc. | $1 |

5.2.    An individual capital account shall be maintained for each Partner and shall consist of his or her initial capital contribution, increased by (a) additional capital contributions made by him or her and (b) his or her share of Partnership profits and gains, and decreased by (i) distributions of profits and capital to him or her and (ii) his or her share of Partnership losses, deductions and credits, and otherwise in accordance with generally accepted accounting principles.

5.2a. In addition to the capital contribution, each partner agrees to pay his or her pro rata share of any expenses exceeding the initial capital contribution such as but not limited to, closing costs and insurance premiums. The pro rate share of expenses is calculated based on capital contribution detailed in the Chart in 5.1.

5.3.    Except as specifically provided in this Agreement or by applicable law, no Partner shall have the right to withdraw his or her contributions to the capital of the Partnership.

**Section 6**

2

## PARTNERSHIP INTERESTS

6.1.    Each Partner's interest in the Partnership (his or her "**Partnership Interest**") shall be as follows:

| Name of Partner | Partnership Interest |
|---|---|
| Biltmore Limited LLC | 35.61% |
| Albert J. Isola, Jr. | 16.26% |
| Clearview Equities Inc. | 8.13% |
| EquityBuild, Inc. | 40% |
| Total | 100% |

6.2.    All profits, and all items of income, gain or credit, shall be shared by the Partners as enumerated in the above chart in 6.1.  All losses or items of expenses or deductions shall be shared by the Partners as enumerated in the chart in 5.1.

### Section 7

### DISTRIBUTION OF PROFITS

7.1.    The Net Cash From Operations (as defined in Section 7.2) of the Partnership shall be distributed to the Partners as follows: as enumerated in the above chart in 6.1.

7.2.    As used in this Section 7, the term "Net Cash From Operations" means, with respect to any period in time:

7.2.1.  The taxable income of the Partnership for federal income tax purposes as shown on the books of the Partnership for such period, increased by:

7.3.    In addition to regular distributions made pursuant to Section 7.1, upon any sale, transfer or other disposition of any capital asset of the Partnership (hereinafter referred to as a "**Disposition**"), the proceeds of such Disposition net of selling or other expenses and the repayment of indebtedness secured by the asset subject to the Disposition (the "**Net Proceeds**") will be distributed to the Partners as follows: as enumerated in the above chart in 6.1.

### Section 8

### SALARIES

Unless otherwise agreed by the Partners acting in accordance with Section 8 of this Agreement, no Partner shall receive any salary or other compensation.

### Section 9

### LEGAL TITLE TO PARTNERSHIP PROPERTY

Legal title to the property of the Partnership shall be held in the name of **1516 E 85th Pl Associates**. It is contemplated that the Partners may agree to have title to Partnership Property taken and held in their own names or in the names of trustees or nominees for the Partnership, but such manner of holding title shall be solely for the convenience of the Partnership and all such property shall be treated as Partnership Property subject to the terms of this Agreement.

**Section 10**

**TRANSFER OF PARTNERSHIP INTEREST**
**AND PARTNERSHIP RIGHTS**

Except as otherwise provided in this agreement, no Partner (hereinafter referred to as the "**Offering Partner**") shall, during the term of the Partnership, sell, hypothecate, pledge, assign or otherwise transfer with or without consideration (hereinafter collectively referred to as a "**Transfer**") any part or all of his or her Partnership Interest to any other person (a "**Transferee**"), without first offering (hereinafter referred to as the "**Offer**") that portion of his or her Partnership Interest subject to the contemplated transfer (hereinafter referred to as the "**Offered Interest**") first to the Partnership and then to the other Partners, at a purchase price (hereinafter referred to as the "**Transfer Purchase Price**") and in a manner as follows:

10.1.   The Transfer Purchase Price shall be the Appraised Value (as defined in Section 15.1).

10.1.1. The Offer shall be made by the Offering Partner first to the Partnership by written notice (hereinafter referred to as the "**Offering Notice**"). Within twenty days (hereinafter referred to as the "**Partnership Offer Period**") after receipt by the Partnership of the Offering Notice, the Partnership shall notify the Offering Partner in writing (hereinafter referred to as the "**Partnership Notice**"), whether or not the Partnership shall accept the Offer and shall purchase all but not less than all of the Offered Interest. If the Partnership accepts the Offer to purchase the Offered Interest, the Partnership Notice shall fix a closing date not more than twenty-five days (hereinafter referred to as the "**Partnership Closing Date**") after the expiration of the Partnership Offer Period.

10.1.2. If the Partnership decides not to accept the Offer, the Offering Partner or the Partnership, at his or her or its election, shall, by written notice (hereinafter referred to as the "**Remaining Partner Notice**") given within the period (hereinafter referred to as the "**Partner Offer Period**") ending ten days after the expiration of the Partnership Offer Period, make the Offer of the Offered Interest to the other Partners, each of whom shall then have a period of twenty-five days (the "**Partner Acceptance Period**") after the expiration of the Partner Offer Period within which to notify in writing the Offering Partner whether or not he or she intends to purchase all but not less than all of the Offered Interest.  If the Partner intends to accept the Offer and to purchase the Offered Interest, the written notice required to be given by them shall fix a closing date not more than twenty-five days after the expiration of the Partner Acceptance Period (hereinafter referred to as the "**Partner Closing Date**").

10.2.   The aggregate dollar amount of the Transfer Purchase Price shall be payable in cash on the Partnership Closing Date or on the Partner Closing Date, as the case may be,

10.3.   If the Partnership or the other Partner does not accept the Offer or, if the Offer is accepted by the Partnership or the other Partner and the Partnership or the other Partner fails to purchase all of the Offered Interest at the Transfer Purchase Price within the time and in the manner specified in this Section 10, then the Offering Partner shall be free, for a period (hereinafter referred to as the "**Free Transfer Period**") of sixty days from the occurrence of such failure, to transfer the Offered Interest to a Transferee; subject only to any additional restrictions on such Transfer that may be imposed by this Agreement or any other agreement. Any such Transferee, upon acquiring the Offered Interest, shall automatically be bound by the terms of this Agreement and shall be required to join in, execute, acknowledge, seal and deliver a copy of this Agreement as a result of which he shall become an additional party hereto. If the Offering Partner shall not transfer the Offered Interest within the Free Transfer Period, his right to transfer the Offered Interest free of the foregoing restrictions shall thereupon cease and terminate.

10.4.   No transfer made pursuant to this Section 13 shall dissolve or terminate the Partnership or cause the Partnership to be wound up, but, instead, the business of the Partnership shall be continued as though such Transfer had not occurred.

**Section 11**

**<u>PURCHASE ON DEATH</u>**

11.1.   Upon the death of any Partner (hereinafter referred to as the "**Decedent**") the Partnership shall neither be terminated nor wound up but, instead, the business of the Partnership shall be continued as if such death had not occurred. Each Partner shall have the right by testamentary disposition to bequeath all or any portion of his or her Partnership Interest in the Partnership to a member of his or her immediate family (as defined in Section 21) or to any trust in which any one or more members of his or her immediate family (as defined in Section 21) retain the full beneficial interest; provided that in the case of any such bequest, the legatee or legatees shall hold the Partnership Interest received as a result of such bequest subject to the terms of this Agreement and shall be required to join in and execute, acknowledge, seal and deliver a copy of this Agreement as an additional Partner party hereto.

(a)   all or any portion of the Partnership Interest owned by a Decedent at the time of his or her death shall not be bequeathed by testamentary disposition or shall be bequeathed to one or more persons other than persons to whom such a bequest is permitted under the foregoing provisions of this Section 11.1; or

(b)   all or any portion of the Partnership Interest owned by a Decedent at the time of his or her death shall be bequeathed by testamentary disposition to one or more persons (collectively, the "**Heir**") to whom such a bequest is permitted under the foregoing provisions of this Section 11.1, and (i) the Heir shall notify the Partnership in writing within six months of the date of death of the Decedent that the Heir desires to sell to the Partnership the said Partnership Interest so bequeathed to the Heir or (ii) the Heir shall die (hereinafter all or any portion of the Partnership Interest referred to in Section 14. I(a) and (b) shall be collectively referred to as the "**Decedent Interest**"),

then the Partnership shall purchase and the Decedent's personal representatives, the Heir, or the personal representatives of the Heir, as the case may be, shall sell the Decedent Interest to the Partnership in such event. The Partnership shall, by written

notice addressed to the Decedent's personal representatives, the Heir, or the personal representatives of the Heir, as the case may be, fix a closing date for such purchase; the closing date shall not be less than 30 days after the appointment of such personal representatives, but in no event longer than one year after the date of death of the Decedent or of the Heir, as the case may be. The Partnership shall purchase the Decedent Interest on the closing date at a price (hereinafter referred to as the "**Decedent Purchase Price**") which shall be the Appraised Value.

11.2.   The aggregate dollar amount of the Decedent Purchase Price shall be payable in cash on the closing date, unless the Partnership shall elect prior to or on the closing date to purchase the Decedent Interest in installments.

**Section 12**

**PURCHASE UPON BANKRUPTCY OR RETIREMENT**

12.1.   Upon the Bankruptcy or Retirement from the Partnership of any Partner (the "**Withdrawing Partner**"), the Partnership shall not be terminated nor wound up, but, instead, the business of the Partnership shall be continued as if such Bankruptcy or Retirement, as the case may be, had not occurred, and the Partnership shall purchase and the Withdrawing Partner shall sell all of the Partnership Interest and Partnership Rights (the "**Withdrawing Partner's Interest**") owned by the Withdrawing Partner in the Partnership on the date of such Bankruptcy or Retirement (the "**Withdrawal Date**"). The Partnership shall, by written notice addressed to the Withdrawing Partner or to the legal representative of a bankrupt Partner, fix a closing date for such purchase which shall be not less than 30 days after the Withdrawal Date. The Withdrawing Partner's Interest shall be purchased by the Partnership on such closing date at a price (the "**Withdrawing Purchase Price**") which shall be the Appraised Value        12.2.
The aggregate dollar amount of the Withdrawing Purchase Price shall be payable in cash on the closing date, unless the Partnership shall elect prior to or on the closing date to purchase the Withdrawing Partner's Interest in installments.

**Section 13**

**CERTAIN FURTHER EVENTS GIVING
RIGHT TO PURCHASE OPTION**

13.1.   If any Partner (the "**Defaulting Partner**"):

(a)      shall have filed against him or her any tax lien respecting all or substantially all of his or her property and such tax lien shall not be discharged, removed or provided for in full by bond within ^ days of the date on which it was filed; or

(b)      shall subject his or her Partnership Interest or any part thereof or interest therein or his or her Partnership Interest or any part thereof or interest therein shall otherwise be made or become subject to a judgment lien, a charging order or similar charge or encumbrance entered by any court of competent jurisdiction,

then, immediately upon the occurrence of either of said events (the "**Occurrence Date**"), the Partnership shall have the right and option, exercisable by written notice to the Defaulting Partners, within 30 days of the Occurrence Date, to purchase from the

6

Defaulting Partner, who shall sell to the Partnership, all of the Partnership Interest (the "**Defaulting Partner's Interest**") owned by the Defaulting Partner in the Partnership on the Occurrence Date. The Partnership shall, by written notice delivered to the Defaulting Partner or his successors, fix a closing date for such purchase which shall be not less than 30 days after the Occurrence Date. The Defaulting Partner's Interest shall be purchased by the Partnership on such closing date at a price (the "**Defaulting Partner's Purchase Price**") which shall be the Appraised Value .

13.2.   The aggregate dollar amount of the Defaulting Partner's Purchase Price shall be payable in cash on the closing date, unless the Partnership shall elect prior to or on the closing date to purchase the Defaulting Partner's Interest in installments.

**Section 14**

**CERTAIN TAX MATTERS**

It is the intention of the parties that the Transfer Purchase Price, the Decedent Purchase Price, the Withdrawing Purchase Price and the Defaulting Partner's Purchase Price shall constitute and be considered as made in exchange for the interest of the retired Partner in Partnership Property, including good will, within the meaning of Section 736(b) of the Internal Revenue Code of 1986, as amended.

**Section 15**

**THE APPRAISED VALUE**

15.1.   The term "Appraised Value" as used in this Agreement shall mean a dollar amount equal to the product obtained by multiplying (a) the percentage Partnership Interest in question, expressed as a decimal, by (b) the Fair Market Value of the Partnership's assets as determined in accordance with Section 15.2.

15.2.   The Fair Market Value of the Partnership's assets shall be determined in the following manner:

15.2.1. Within 30 days of the Offering Notice, date of death of a Decedent, Withdrawal Date or Occurrence Date, as the case may be, the remaining Partners shall select an appraiser (the "**Partnership Appraiser**") to determine the Fair Market Value of the Partnership's assets, and the Partnership Appraiser shall submit his determination thereof within 15 days after the date of his selection (the "**Appraisal Due Date**").

15.2.2. If the appraisal made by the Partnership Appraiser is unsatisfactory to the Offering Partner, the personal representatives of the Decedent or Heir, the Withdrawing Partner or the Defaulting Partner, as the case may be, then within 15 days after the date of the Appraisal Due Date, the Offering Partner, the personal representatives of the Decedent or Heir, the Withdrawing Partner or the Defaulting Partner, as the case may be, shall select an Appraiser (the "**Partner's Appraiser**") to determine the Fair Market Value of the Partnership's assets, and such Appraiser shall be directed to submit his determination thereof within 15 days after the date of his selection.

15.2.3. If the appraisal made by the Partner's Appraiser is unsatisfactory to the

7

remaining Partners, then the Partnership Appraiser and the Partner's Appraiser shall select a third Appraiser (the "**Appraiser**") to determine the Fair Market Value of the Partnership's assets and such Appraiser shall be directed to submit his determination thereof within 15 days after the date of his selection. The Appraiser's determination thereof shall be binding upon the Partnership, the remaining Partners and the Offering Partner, the personal representatives of the Decedent or Heir, the Withdrawing Partner or the Defaulting Partner, as the case may be.

15.3.    Any and all appraisers selected in accordance with the provisions of this Section 15 shall be recognized professional appraisers or consultants regularly engaged in the business of evaluating businesses of the type or size of (or otherwise comparable to) the Partnership's business, who shall be directed to conduct their appraisals provided for in this Section 15 in accordance with generally accepted standards and used methods; and all costs and expenses (including professional fees) incurred in connection with any of the appraisals provided for in this Section 15 shall be borne equally by the remaining Partners, and the Offering Partner, the personal representatives of the Decedent or Heir, the Withdrawing or the Defaulting Partner, as the case may be.

**Section 16**

**INSTALLMENT PAYMENTS**

16.1.    If there shall be an election pursuant to the provisions of this agreement as set forth above to purchase (the Partner or the Partnership so purchasing shall be hereinafter, where appropriate, referred to as the "**purchasing person**") the Offering Partner's interest, the Decedent's Interest, the Withdrawing Partner's Interest or the Defaulting Partner's Interest, as the case may be (hereinafter where appropriate, referred to as the "**Interest**"), on an installment basis, then the terms and conditions of such installment purchase shall be as negotiated by the offering and purchasing partners.

**Section 17**

**Notices**

Any and all notices, offers, acceptances, requests, certifications and consents provided for in this Agreement shall be in writing and shall be given and be deemed to have been given when personally delivered against a signed receipt or mailed by registered or certified mail, return receipt requested, to the last address which the addressee has given to the Partnership. The address of each Partner is set under his signature at the end of this Agreement, and each Partner agrees to notify the Partnership of any change of address. The address of the Partnership shall be its principal office.

**Section 18**

**GOVERNING LAW**

It is the intent of the parties hereto that all questions with respect to the construction of this Agreement and the rights, duties, obligations and liabilities of the parties shall be determined in accordance with the applicable provisions of the laws of the State of Illinois.

**Section 19**

**MISCELLANEOUS PROVISIONS**

19.1.  This Agreement shall be binding upon, and inure to the benefit of, all parties hereto, their personal and legal representatives, guardians, successors, and their assigns to the extent, but only to the extent, that assignment is provided for in accordance with, and permitted by, the provisions of this Agreement.

19.2.  The Partners agree that they and each of them will take whatever action or actions as are deemed by counsel to the Partnership to be reasonably necessary or desirable from time to time to effectuate the provisions or intent of this Agreement, and to that end the Partners agree that they will execute, acknowledge, seal and deliver any further instruments or documents which may be necessary to give force and effect to this Agreement or any of the provisions hereof, or to carry out the intent of this Agreement, or any of the provisions hereof.

19.3.  Throughout this Agreement, where such meanings would be appropriate: (a) the masculine, feminine and neuter genders shall each be deemed to include and refer to the other two, and (b) the singular shall be deemed to include the plural and vice versa. The headings herein are inserted only as a matter of convenience and reference, and in a way define, limit or describe the scope of the Agreement, or the intent of any provisions thereof.

19.4.  This Agreement and exhibits attached hereto set forth all (and are intended by all parties hereto to be an integration of all) of the promises, agreements, conditions, understandings, warranties and representations among the parties hereto with respect to the Partnership, the business of the Partnership and the property of the Partnership, and there are no promises, agreements, conditions, understandings, warranties or representations, oral or written, express or implied, among them other than as set forth herein.

19.5.  Nothing contained in this Agreement shall be construed as requiring the commission of any act contrary to law. If there is any conflict between any provision of this Agreement and any statute, law, ordinance or regulation contrary to which the Partners have no legal right to contract, the later shall prevail, but in such event the provisions of this Agreement thus affected shall be curtailed and limited only to the extent necessary to conform with said requirement of law. If any part, article, section, paragraph or clause of this Agreement shall be held to be indefinite, invalid or otherwise unenforceable, the entire Agreement shall not fail on account thereof, and the balance of the Agreement shall continue in full force and effect.

19.6.  Each married party to this Agreement agrees to obtain the consent and approval of his or her spouse, by the execution hereof by such spouse, to all the terms and provisions of this Agreement; provided that such execution shall be for the sole purpose of acknowledging such spouse's consent and approval, as aforesaid, and nothing contained in this Section 24.6 shall be deemed to have constituted any such spouse a Partner in the Partnership.

19.7.  Each Partner agrees to insert in his or her Will or to execute a Codicil thereto directing and authorizing his or her personal representatives to fulfill and comply with the provisions hereof and to sell and transfer his Partnership Interest in accordance herewith.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals and acknowledged this Agreement as of the date first above written.

_____

Biltmore Limited LLC

Address: 2360 Corporate Cir STE 400
        Henderson, NV 89074

Partnership Interest: 35.61%

_____

Albert J. Isola, Jr.

Address: 5319 Sundance Dr.
        Livermoore, CA 94551

Partnership Interest: 16.26%

_____

Clearview Equities Inc.

Address: P.O. Box 314
        Tracyton, WA 98393

Partnership Interest: 8.13%

_____

EquityBuild, Inc.

Address: 1083 N Collier Blvd., #132
        Marco Island, FL 34145

Partnership Interest: 40%

10

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals and acknowledged this Agreement as of the date first above written.

Biltmore Limited LLC

Address: 2360 Corporate Cir STE 400
Henderson, NV 89074

Partnership Interest: 35.61%

Albert J. Isola, Jr.

Address: 5319 Sundance Dr.
Livermoore, CA 94551

Partnership Interest: 16.26%

Tosca Fernandes

Address: P.O. Box 314
Tracyton, WA 98393

Partnership Interest: 8.13%

EquityBuild, Inc.

Address: 1083 N Collier Blvd., #132
Marco Island, FL 34145

Partnership Interest: 40%

10

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals and acknowledged this Agreement as of the date first above written.

*Guy S. Talat*

Biltmore Limited LLC

Address: 2360 Corporate Cir STE 400
Henderson, NV 89074

Partnership Interest: 35.61%

Albert J. Isola, Jr.

Address: 5319 Sundance Dr.
Livermoore, CA 94551

Partnership Interest: 16.26%

Tosca Fernandes

Address: P.O. Box 314
Tracyton, WA 98393

Partnership Interest: 8.13%

EquityBuild, Inc.

Address: 1083 N Collier Blvd., #132
Marco Island, FL 34145

Partnership Interest: 40%

10

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals and acknowledged this Agreement as of the date first above written.

_____

Biltmore Limited LLC

Address: 2360 Corporate Cir STE 400
Henderson, NV 89074

Partnership Interest: 35.61%

_____

Albert J. Isola, Jr.

Address: 5319 Sundance Dr.
Livermoore, CA 94551

Partnership Interest: 16.26%

_____

Clearview Equities Inc.

Address: P.O. Box 314
Tracyton, WA 98393

Partnership Interest: 8.13%

_____

EquityBuild, Inc.

Address: 1083 N Collier Blvd., #132
Marco Island, FL 34145

Partnership Interest: 40%

10

**TAB B**



# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 3.0



1 **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".
2 _____
3 Buyer(s) 1516 E 85th Pl Associates _____ Seller(s) EquityBuild, Inc. _____ .
4         (Please Print)                               (Please Print)
5 **2. THE REAL ESTATE:** Real Estate shall be defined to include the Real Estate and all improvements thereon. Seller
6 agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate with the approximate lot size or acreage
7 of_____commonly known as: 1516 E 85th Pl       Chicago     IL   60619
8                                         Address           City       State   Zip
9 _____
10 County _____ Unit # (if applicable) _____ Permanent Index Number(s) of Real Estate
11 Condo/Coop/Townhome Parking Space Included: (check type) ___deeded space; ___limited common element;
12 __ assigned; Parking space # _____ *(insert number)*
13 **3. FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and personal property stated herein are owned by
14 Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise stated herein.
15 Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems together with the
16 following items of personal property by Bill of Sale at Closing: [Check or enumerate applicable items]
17 __ Refrigerator       __ All Tacked Down Carpeting      __ Fireplace Screen(s)/Door(s)/Grate(s)      __ Central Air Conditioning
18 __ Oven/Range/Stove     __ All Window Treatments & Hardware    __ Fireplace Gas Logs               __ Electronic or Media Air Filter
19 __ Microwave          __ Built-in or Attached Shelving      __ Existing Storms & Screens          __ Central Humidifier
20 __ Dishwasher         __ Smoke Detector(s)             __ Security System(s) (owned)         __ Sump Pump(s)
21 __ Garbage Disposal     __ Ceiling Fan(s)               __ Intercom System            __ Water Softener (owned)
22 __ Trash Compactor      __ TV Antenna System        __ Central Vac & Equipment        __ Outdoor Shed
23 __ Washer             __ Window Air Conditioner(s)     __ Electronic Garage Door Opener(s)    __ Attached Gas Grill
24 __ Dryer              __ All Planted Vegetation        with _____ Transmitter(s)      __ Light Fixtures, as they exist
25 __ Satellite Dish and System                       __ Invisible Fence System, Collar(s) and Box   __ Home Warranty $_____
26 **Other items included:** Property is sold in"AS IS" condition _____
27 **Items NOT included:** _____
28 Seller warrants to Buyer that all fixtures, systems and personal property included in this Contract shall be in operating
29 condition at possession, except: _____.
30 A system or item shall be deemed to be in operating condition if it performs the function for which it is intended,
31 regardless of age, and does not constitute a threat to health or safety.
32 **4. PURCHASE PRICE:** Purchase Price of $ 50,000 _____ shall be paid as follows: Initial
33 earnest money of $ _____ by ☑(check), ☐(cash), or ☐ (note due on _____,
34 20____) to be increased to a total of $_____ by _____, 20_____. The earnest
35 money and the original of this Contract shall be held by the Listing Company, as "Escrowee", in trust for the mutual
36 benefit of the Parties. The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire
37 transfer of funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title
38 company's check is guaranteed by a licensed title insurance company).
39 **5. MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining an unconditional written
40 mortgage commitment (except for matters of title and survey or matters totally within Buyer's control) on or before
41 _____, 20____ for a _____(type) loan of $_____ or such
42 lesser amount as Buyer elects to take, plus private mortgage insurance (PMI), if required. The interest rate (initial rate, if
43 applicable) shall not exceed _____% per annum, amortized over not less than _____ years. Buyer shall pay loan
44 origination fee and/or discount points not to exceed _____% of the loan amount. Seller shall pay loan origination fee
45 and/or discount points not to exceed ___% of the loan amount. Those fees/points committed to by Buyer shall be applied
46 first. Buyer shall pay the cost of application, usual and customary processing fees and Closing costs charged by lender.
47 (If FHA/VA, refer to Paragraph #36 for additional provisions.) Buyer shall make written loan application within five (5)
48 business days after the Date of Acceptance. **Failure to do so shall constitute an act of default under this Contract.** If
49 Buyer, having applied for the loan specified above, is unable to obtain a loan commitment and serves written notice to
50 Seller within the time specified, this Contract shall be null and void and earnest money refunded to Buyer upon written
51 direction of the Parties to Escrowee. **If written notice is not served within the time specified, Buyer shall be deemed**
52 **to have waived this contingency and this Contract shall remain in full force and effect. Unless otherwise provided**
53 **herein, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real estate. A**
54 **condition in the mortgage commitment requiring sale and/or closing of existing real estate shall not render the**
55 **mortgage commitment conditional for the purpose of this paragraph. If Seller at Seller's option and expense,**
56 **within thirty (30) days after Buyer's notice, procures for Buyer such commitment or notifies Buyer that Seller**

____EK____ *Buyer Initial* _____ *Buyer Initial* ____SC____ *Seller Initial* _____ *Seller Initial*
***Address*** 1516 E 85th Pl. Chicago IL 60619 _____

57  **will accept a purchase money mortgage upon the same terms, this Contract shall remain in full force and effect.**
58  **In such event, Seller shall notify Buyer within five (5) business days after Buyer's notice of Seller's election to**
59  **provide or obtain such financing, and Buyer shall furnish to Seller or lender all requested information and shall**
60  **sign all papers necessary to obtain the mortgage commitment and to close the loan.**
61  **6. CLOSING:** Closing or escrow payout shall be on ___May, 2_____, 20 _13___, or at such time as
62  mutually agreed upon by the Parties in writing. Closing shall take place at the title company escrow office situated
63  geographically nearest the Real Estate, or as shall be agreed mutually by the Parties.
64  **7. POSSESSION:** Possession shall be deemed to have been delivered when Seller has vacated Real Estate and delivered
65  keys to Real Estate to Buyer or to Listing Office. Seller shall deliver possession to Buyer at the time of Closing.
66  **8. RESIDENTIAL REAL ESTATE AND LEAD-BASED PAINT DISCLOSURES:** If applicable, prior to signing
67  this Contract, Buyer **[check one]** ◯has ◉has not received a completed Illinois Residential Real Property Disclosure
68  Report; **[check one]** ◯has ◉has not received the EPA Pamphlet,"Protect Your Family From Lead in Your Home";
69  **[check one]**◯has ◉has not received a Lead-Based Paint Disclosure.
70  **9. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants, utilities,
71  water and sewer, and homeowner or condominium association fees. Seller represents that as of the Date of Acceptance
72  Homeowner Association/Condominium fees are $_____ per _____. Seller agrees to pay prior to or
73  at Closing any special assessments (governmental or association) confirmed prior to Date of Acceptance. The general
74  Real Estate taxes shall be prorated as of the date of Closing based on _____% of the most recent ascertainable full
75  year tax bill. All prorations shall be final as of Closing, except as provided in paragraph17. If the amount of the most
76  recent ascertainable tax bill reflects a homeowner, senior citizen or other exemption, Seller has submitted or will submit
77  in a timely manner all necessary documentation to the Assessor's Office, before or after Closing, to preserve said
78  exemption(s). Accumulated reserves of a Homeowner/Condominium Association are not a proratable item.
79  **10. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS selected for use and
80  initialed by the Parties which are contained on the succeeding pages and the following attachments, if any:
81  _____.
82  **11. PROFESSIONAL INSPECTIONS**: Buyer may secure at Buyer's expense (unless otherwise provided by
83  governmental regulations) a home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless
84  separately waived), and/or wood insect infestation inspection(s) of said Real Estate by one or more licensed or certified
85  inspection service(s). Buyer shall serve written notice upon Seller or Seller's attorney of any defects disclosed by the
86  inspection(s) which are unacceptable to Buyer, together with a copy of the pertinent page(s) of the report(s) within five
87  (5) business days (ten (10) calendar days for a lead-based paint and/or lead-based paint hazard inspection) after Date of
88  Acceptance. **If written notice is not served within the time specified, this provision shall be deemed waived by**
89  **Parties and this Contract shall remain in full force and effect.** If within ten (10) business days after Date of
90  Acceptance, written agreement cannot be reached by the Parties with respect to resolution of inspection issues, then
91  either Party may terminate this Contract by written notice to the other Party and **this Contract shall be null and void**
92  **and earnest money refunded to Buyer upon written direction of the Parties to Escrowee.** The home inspection shall
93  cover **only** major components of the Real Estate, including but not limited to, central heating system(s), central cooling
94  system(s), plumbing and well system, electrical system, roof, walls, windows, ceilings, floors, appliances and
95  foundation. A major component shall be deemed to be in operating condition if it performs the function for which it is
96  intended, regardless of age, and does not constitute a threat to health or safety. Buyer shall indemnify Seller and hold
97  Seller harmless from and against any loss or damage caused by the acts or negligence of Buyer or any person performing
98  any inspection(s). **Buyer agrees minor repairs and routine maintenance items are not a part of this contingency.**
99  **12. ATTORNEY REVIEW:** The respective attorneys for the Parties may approve, disapprove, or make modifications
100 to this Contract, other than stated Purchase Price, within five (5) business days after the Date of Acceptance.
101 Disapproval or modification of this Contract shall not be based solely upon stated Purchase Price. Any notice of
102 disapproval or proposed modification(s) by any Party shall be in writing. If within ten (10) business days after Date of
103 Acceptance written agreement on proposed modification(s) cannot be reached by the Parties, **this Contract shall be**
104 **null and void and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written**
105 **notice is not served within the time specified, this provision shall be deemed waived by the Parties and this**
106 **Contract shall remain in full force and effect.**
107 **13. PLAT OF SURVEY**: Not less than one (1) business day prior to Closing, except where the subject property is a
108 condominium (see Paragraph 27) Seller shall, at Seller's expense, furnish to Buyer or his attorney a Plat of Survey dated
109 not more than six (6) months prior to the date of Closing, prepared by an Illinois Professional Land Surveyor, showing

____EK____ *Buyer Initial* _____ *Buyer Initial* _____SC_____ *Seller Initial* _____ *Seller Initial*
***Address*** 1516 E 85th Pl. Chicago IL 60619 _____

110 any encroachments, measurements of all lot lines, all easements of record, building set back lines of record, fences, all
111 buildings and other improvements on the Real Estate and distances therefrom to the nearest two lot lines. In addition, the
112 survey to be provided shall be a boundary survey conforming to the current requirements of the Illinois Department of
113 Professional Regulation. The survey shall show all corners staked and flagged or otherwise monumented. The survey
114 shall have the following statement prominently appearing near the professional land surveyor seal and signature: "This
115 professional service conforms to the current Illinois minimum standards for a boundary survey." A Mortgage Inspection,
116 as defined, is not a boundary survey, and does not satisfy the necessary requirements.

117 **14. NOTICE**: All notices required shall be in writing and shall be served by one Party or his attorney to the other Party
118 or his attorney. Notice to any one of a multiple person Party shall be sufficient notice to all. Notice shall be given in the
119 following manner:

    (a) By personal delivery of such notice; or

120
121     (b) By mailing of such notice to the addresses recited herein by regular mail and by certified mail, return receipt
122         requested. Except as otherwise provided herein, notice served by certified mail shall be effective on the date of
123         mailing; or

124     (c) By sending facsimile transmission. Notice shall be effective as of date and time of facsimile transmission,
125         provided that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00
126         P.M. Chicago time). In the event fax notice is transmitted during non-business hours, the effective date and time
127         of notice is the first hour of the first business day after transmission; or

128     (d) By sending e-mail transmission. Notice shall be effective as of date and time of e-mail transmission, provided
129         that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00 P.M. Chicago
130         Time), and provided further that the recipient provides written acknowledgment to the sender of receipt of the
131         transmission (by e-mail, facsimile, or by regular mail). In the event e-mail notice is transmitted during non-
132         business hours, the effective date and time of notice is the first hour of the first business day after transmission.

133 **15. THE DEED**: Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
134 merchantable title to the Real Estate by recordable general Warranty Deed, with release of homestead rights, (or the
135 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
136 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to: general
137 real estate taxes not due and payable at the time of Closing, covenants, conditions, and restrictions of record, building
138 lines and easements, if any, so long as they do not interfere with the current use and enjoyment of the Real Estate.

139 **16. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
140 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
141 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title
142 company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance of this Contract,
143 subject only to items listed in Paragraph 15. The requirement of providing extended coverage shall not apply if the Real
144 Estate is vacant land. The commitment for title insurance furnished by Seller will be conclusive evidence of good and
145 merchantable title as therein shown, subject only to the exceptions therein stated. If the title commitment discloses
146 unpermitted exceptions, or if the Plat of Survey shows any encroachments which are not acceptable to Buyer, then Seller
147 shall have said exceptions or encroachments removed, or have the title insurer commit to insure against loss or damage
148 that may be caused by such exceptions or encroachments. If Seller fails to have unpermitted exceptions waived or title
149 insured over prior to Closing, Buyer may elect to take the title as it then is, with the right to deduct from the Purchase
150 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of
151 Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA Insurance
152 Policy.

153 **17. REAL ESTATE PROPERTY TAX ESCROW**: In the event the Real Estate is improved, but has not been
154 previously taxed for the entire year as currently improved, the sum of three (3) percent of the Purchase Price shall be
155 deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and
156 paid at Closing. When the exact amount of the taxes prorated under this Contract can be ascertained, the taxes shall be
157 prorated by the Seller's attorney at the request of either Party, and the Seller's share of such tax liability after reproration
158 shall be paid to the Buyer from the escrow funds and the balance, if any, shall be paid to the Seller. If the Seller's
159 obligation after such reproration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly
160 upon demand.

161 **18. PERFORMANCE: Time is of the essence of this Contract**. In the event of default by Seller or Buyer, the Parties
162 are free to pursue any legal remedies at law or in equity. The prevailing Party in litigation shall be entitled to collect

_____*EK*_____ *Buyer Initial* _____ *Buyer Initial* _____*SC*_____ *Seller Initial* _____ *Seller Initial*
**Address** 1516 E 85th Pl. Chicago IL 60619_____

163 reasonable attorney fees and costs from the losing Party as ordered by a court of competent jurisdiction. There shall be
164 no disbursement of earnest money unless Escrowee has been provided written agreement from Seller and Buyer. Absent
165 an agreement relative to the disbursement of earnest money within a reasonable period of time, Escrowee may deposit
166 funds with the Clerk of the Circuit Court by the filing of an action in the nature of interpleader. Escrowee shall be
167 reimbursed from the earnest money for all costs, including reasonable attorney fees, related to the filing of the
168 interpleader action. Seller and Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims
169 and demands arising under this paragraph.

170 **19. DAMAGE TO REAL ESTATE PRIOR TO CLOSING**: If, prior to delivery of the deed, the Real Estate shall be
171 destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by condemnation, then Buyer shall
172 have the option of terminating this Contract and receiving a refund of earnest money or of accepting the Real Estate as
173 damaged or destroyed, together with the proceeds of any insurance payable as a result of the destruction or damage,
174 which proceeds Seller agrees to assign to Buyer. Seller shall not be obligated to repair or replace damaged
175 improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable
176 to this Contract, except as modified in this paragraph.

177 **20. SELLER REPRESENTATIONS**: Seller represents that he has not received written notice from any Governmental
178 body or Homeowner Association of (a) zoning, building, fire or health code violations that have not been corrected; (b)
179 any pending rezoning; or (c) a proposed or confirmed special assessment and /or special service area affecting the Real
180 Estate. Seller further represents that Seller has no knowledge of boundary line disputes, easements or claims of easement
181 not shown by the public records, any hazardous waste on the Real Estate or any improvements for which the required
182 permits were not obtained. Seller represents that there have been no improvements to the Real Estate which are not
183 included in full in the determination of the most recent real estate tax assessment, or which are eligible for home
184 improvement tax exemption.

185 **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
186 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at
187 Seller's expense before possession. Buyer shall have the right to inspect the Real Estate, fixtures and personal property
188 prior to possession to verify that the Real Estate, improvements and included personal property are in substantially the
189 same condition as of the Date of Acceptance of this Contract, normal wear and tear excepted.

190 **22. GOVERNMENTAL COMPLIANCE**: Parties agree to comply with the reporting requirements of the applicable
191 sections of the Internal Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

192 **23. ESCROW CLOSING**: At the election of either Party, not less than five (5) business days prior to the Closing, this
193 sale shall be closed through an escrow with the lending institution or the title company in accordance with the provisions
194 of the usual form of Deed and Money Escrow Agreement, as agreed upon between the Parties, with provisions inserted
195 in the Escrow Agreement as may be required to conform with this Contract. The cost of the escrow shall be paid by the
196 Party requesting the escrow.

197 **24. FLOOD INSURANCE**: Buyer shall obtain flood insurance if required by Buyer's lender.

198 **25. FACSIMILE**: Facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this
199 Contract.

200 **26. BUSINESS DAYS**: Business days are defined as Monday through Friday, excluding Federal holidays.

201 **27. CONDOMINIUMS**: (If applicable) The Parties agree that the terms contained in this paragraph, which may be
202 contrary to other terms of this Contract, shall supersede any conflicting terms.

203     (a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions of
204         the Declaration of Condominium and all amendments; public and utility easements including any easements
205         established by or implied from the Declaration of Condominium or amendments thereto; party wall rights and
206         agreements; limitations and conditions imposed by the Condominium Property Act; installments due after the
207         date of Closing of general assessments established pursuant to the Declaration of Condominium.

208     (b) Seller shall be responsible for all regular assessments due and levied prior to Closing and for all special
209         assessments confirmed prior to the Date of Acceptance.

210     (c) Buyer has, within five (5) business days from the Date of Acceptance of this Contract, the right to demand from
211         Seller items as stipulated by the Illinois Condominium Property Act. The Contract is subject to the condition
212         that Seller be able to procure and provide to Buyer, a release or waiver of any option of first refusal or other pre-
213         emptive rights of purchase created by the Declaration of Condominium within the time established by the
214         Declaration. In the event the Condominium Association requires personal appearance of Buyer and/or additional
215         documentation, Buyer agrees to comply with same.

_____ *EK* _ *Buyer Initial* _____ _ *Buyer Initial* _____ *SC* __ *Seller Initial* _____ _ *Seller Initial*
***Address*** _1516 E 85th Pl. Chicago IL 60619_____

216     (d)  In the event the documents and information provided by the Seller to the Buyer disclose that the existing
217         improvements are in violation of existing rules, regulations or other restrictions or that the terms and conditions
218         contained within the documents would unreasonably restrict Buyer's use of the premises or would increase the
219         financial considerations which Buyer would have to extend in connection with the owning of the condominium,
220         then Buyer may declare this Contract null and void by giving Seller written notice within five (5) business days
221         after the receipt of the documents and information required by Paragraph 27 (c), listing those deficiencies which
222         are unacceptable to Buyer, and thereupon all earnest money deposited by Buyer shall be returned to Buyer upon
223         written direction of Parties to escrowee. **If written notice is not served within the time specified, Buyer shall**
224         **be deemed to have waived this contingency, and this Contract shall remain in full force and effect.**
225     (e)  Seller shall not be obligated to provide a condominium survey.
226     (f)  Seller shall provide a certificate of insurance showing Buyer (and Buyer's mortgagee) as insured.

227 **28. CHOICE OF LAW/GOOD FAITH:** All terms and provisions of this Contract including, but not limited to, the
228 Attorney Review and Professional Inspection paragraphs, shall be governed by the laws of the State of Illinois and are
229 subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

230

231 **THE FOLLOWING OPTIONAL PROVISIONS APPLY ONLY IF INITIALED BY ALL PARTIES**

232

233         **29. SALE OF BUYER'S REAL ESTATE**:
234 [initials]
235 **(A) REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
236     (1)  Buyer owns real estate commonly known as (address): _____
237     (2)  Buyer **[check one]** ☐ has ⦿ has not entered into a contract to sell his real estate. If Buyer has entered into a contract to sell
238         his real estate:
239         (a)  Buyer's sale contract **[check one]:** ⦿ is ☐ is not subject to a mortgage contingency.
240         (b)  Buyer's sale contract **[check one]:** ☐ is ⦿ is not subject to a real estate sale contingency.
241         (c)  Buyer's sale contract **[check one]:** ☐ is ⦿ is not subject to a real estate closing contingency.
242     (3)  Buyer **[check one]** ☐ has ☐ has not listed his real estate for sale with a licensed real estate broker and in a local multiple
243         listing service.
244     (4)  If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing service,
245         Buyer:**[check one]**
246         (a)  ☐  Shall list his real estate for sale with a licensed real estate broker who will place it in a local multiple
247         listing service within five (5) business days after the Date of Acceptance of this Contract.
248         For information only: Broker: _____
249         Broker's Address: _____ Phone: _____
250         (b)  ⦿ Does not intend to list his real estate for sale.
251     (5)  Buyer authorizes Seller or his agent to verify representations contained in Paragraph 29 at any time, and Buyer agrees to
252         cooperate in providing relevant information.
253 **(B) CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE:**
254     (1)  This Contract is contingent upon Buyer having a contract for the sale of Buyer's real estate in full force and effect as of
255         _____, 20_____. Such contract shall provide for a Closing date not later than the Closing date set forth in
256         this Contract. **If written notice of failure to procure such contract is not served within the time specified, Buyer shall**
257         **be deemed to have waived this contingency and this Contract shall remain in full force and effect. (If this paragraph**
258         **is used, then the following paragraph must be completed.)**
259     (2)  In the event the Buyer has procured a contract for the sale of Buyer's real estate as set forth in Paragraph 29 (B) (1) and that
260         contract is in full force and effect or has entered into a contract for sale of Buyer's real estate prior to the execution of this
261         Contract, this Contract is contingent upon Buyer Closing the sale of Buyer's real estate on or before
262         _____, 20____. **If written notice is not served within the time specified, Buyer shall be**
263         **deemed to have waived all contingencies contained in this Paragraph 29, and this Contract shall remain in full force**
264         **and effect.**
265     (3)  If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 29 (B) (1)
266         (or after the date of this Contract if no date is set forth in Paragraph 29 (B) (1)), Buyer shall, within three (3) business days
267         of such termination, notify Seller of said termination. Unless Buyer, as part of said notice, waives all contingencies in
268         Paragraph 29 and complies with Paragraph 29 (D), this Contract shall be null and void as of the date of notice **and earnest**
269         **money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice as required by this**
270         **subparagraph is not served within the time specified, Buyer shall be in default under the terms of this Contract.**
271 **(C) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency Seller
272         has the right to continue to show the Real Estate and offer it for sale subject to the following:

_EK_ _Buyer Initial_ _____ _Buyer Initial_ _SC_ _Seller Initial_ _____ _Seller Initial_

**Address** 1516 E 85th Pl. Chicago IL 60619 _____

273     (1) If Seller accepts another bona fide offer to purchase the Real Estate during such period, Seller shall notify Buyer in writing
274     of same. Buyer shall then have _____ hours after Seller gives such notice to waive the contingencies set forth in
275     Paragraph 29 (B), subject to Paragraph 29 (D).
276     (2) If Buyer complies with the provisions of Paragraph 29 (D) then this Contract shall remain in full force and effect.
277     (3) If the contingencies set forth in Paragraph 29 (B) are NOT waived in writing within said time period by Buyer, **this**
278     **Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties to**
279     **Escrowee.**
280 **(D) WAIVER OF PARAGRAPH 29 CONTINGENCIES**: Buyer shall be deemed to have waived the contingencies in Paragraph
281 29 (B) when Buyer has delivered written waiver and deposited with the Escrowee the additional sum of $_____
282 earnest money within the time specified. **If Buyer fails to deposit the additional earnest money within the time specified the**
283 **waiver shall be deemed ineffective and this Contract shall be null and void and earnest money refunded to Buyer upon**
284 **written direction of the Parties to Escrowee.**
285 **(E) NOTICE (FOR THIS CONTINGENCY ONLY)**: Except as otherwise provided above, notice required under this Paragraph
286 29 shall be in writing and shall be served on the Party. Courtesy copies of notice should be sent to the respective attorneys and real
287 estate agents, if known. Failure to provide such courtesy copies shall not render notice invalid. Notice to any one of a multiple
288 person Party shall be sufficient notice to all. Notice shall be given to the Party in the following manner:
289     (1) By personal delivery of such notice effective at the time and date of personal delivery; or
290     (2) By mailing of such notice to the addresses recited herein by regular mail and by certified mail. Notice served by regular
291     mail and certified mail shall be effective at 10:00 A.M. on the morning of the second day following deposit of notice in the
292     U.S. Mail; or
293     (3) By facsimile to a Party (service shall be effective at the time and date the sending Party receives a receipted copy of the
294     notice from the receiving Party).
295

296        **30. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered into a prior
297 real estate contract this Contract shall be subject to written cancellation of the prior contract on or before _____,
298 20_____. In the event the prior contract is not cancelled within the time specified, **this Contract shall be null and void and earnest**
299 **money refunded to Buyer upon written direction of the Parties to Escrowee. Notice to the purchaser under the prior contract**
300 **should not be served until after Attorney Review and Professional Inspections provisions of this Contract have expired, been**
301 **satisfied or waived.**
302

303        **31. INTEREST BEARING ACCOUNT**: Earnest money (with a completed W-9 and other required forms), shall be
304 held in a federally insured interest bearing account at a financial institution designated by Escrowee. All interest earned on the
305 earnest money shall accrue to the benefit of and be paid to Buyer. **The Buyer shall be responsible for any administrative fee (not**
306 **to exceed $75) charged for setting up the account.** In anticipation of Closing, the Parties direct Escrowee to close the account no
307 sooner than ten (10) business days prior to the anticipated Closing date.
308

309        **32. POST-CLOSING POSSESSION**: In the event possession is not to be delivered at Closing, the Parties shall enter
310 into a post Closing possession agreement that shall provide, among other things, that possession will be delivered no later than 11:59
311 P.M. on _____, 20____, provided sale has been closed. Seller agrees to pay at Closing the sum of $ _____ per day
312 to Buyer for use and occupancy from and including the day after Closing to and including the possession date specified above,
313 regardless of whether possession is delivered prior to the possession date. In the event possession is not delivered at Closing, Seller
314 shall deposit in escrow at Closing with Title Company, Listing Company or other escrowee as agreed to by the Parties and escrowee
315 by separate check, the sum of one percent (1%) of the Purchase Price to guarantee that possession of the Real Estate shall be
316 delivered to Buyer on or before the date and time specified in this Contract. If possession is so delivered, the escrow fund shall be
317 paid to Seller. If possession is not so delivered, the designated escrowee shall pay to Buyer from the escrow funds the sum of one fifth (1/5th)
318 of the deposit for each day possession is withheld from Buyer after such specified date and time, and shall pay the balance of the
319 escrow fund, if any, to Seller. In the event that possession is not delivered to Buyer within five (5) calendar days after the date
320 specified herein, Seller shall continue to be liable to Buyer for a sum of money equal to one fifth (1/5th) of the possession escrow sum specified
321 herein for each day possession is so withheld from Buyer, without prejudice to any other rights or remedies available to Buyer. If
322 within ten (10) business days after Date of Acceptance written agreement on a post Closing possession agreement cannot be reached
323 by the Parties, **this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties**
324 **to Escrowee. If written notice is not served within the time specified, this provision shall be deemed waived by the Parties**
325 **and this Contract shall remain in full force and effect.**
326

327        **33. WELL AND/OR SEPTIC/SANITARY INSPECTIONS**: Seller shall obtain, at Seller's expense, a well water
328 test (including nitrates test) and/or a septic/sanitary report from the applicable governmental authority or qualified inspection
329 service, each dated not more than ninety (90) days prior to Closing, stating that the well and the water supplied therefrom and the
330 septic/sanitary system are in compliance with applicable health regulations. Seller shall deliver a copy of the report to Buyer not less
331 than fourteen (14) days prior to Closing. If either system is found not to be in compliance with applicable health regulations, and in

_____*EK*_____ *Buyer Initial* _____ *Buyer Initial* ____*SC*____ *Seller Initial* _____ *Seller Initial*
***Address*** 1516 E 85th Pl. Chicago IL 60619 _____

332 the event that within five (5) business days after receipt of such report(s), written agreement cannot be reached by the Parties with
333 respect to the resolution of well and/or septic/sanitary issues, then either Party may terminate this Contract by written notice to the
334 other Party and **this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the**
335 **Parties to Escrowee.**

336
337       **34. CONFIRMATION OF DUAL AGENCY**: The Parties confirm that they have previously consented to
338 _____ (Licensee) acting as a Dual Agent in providing brokerage services
339 on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.

340
341       **35. "AS IS" CONDITION**: This Contract is for the sale and purchase of the Real Estate and personal property in its
342 "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect to the
343 condition of the Real Estate and personal property have been made by Seller or Seller's Agent other than those known defects, if
344 any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller shall make the property available
345 to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage
346 caused by the acts or negligence of Buyer or any person performing any inspection(s). In the event the inspection reveals that the
347 condition of the improvements, fixtures or personal property to be conveyed or transferred is unacceptable to Buyer and Buyer so
348 notifies Seller within five (5) business days after the Date of Acceptance, **this Contract shall be null and void and earnest money**
349 **shall be refunded to Buyer upon the written direction of the Parties to Escrowee.** Failure of Buyer to notify Seller or to conduct
350 said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and this Contract shall remain in
351 full force and effect. Buyer acknowledges the provisions of Paragraph 11 and the warranty provisions of Paragraph 3 do not apply to
352 this Contract.

353
354       **36. VA OR FHA FINANCING**: If Buyer is seeking VA or FHA financing, this provision shall be applicable: Buyer
355 may terminate this Contract if the Purchase Price set forth herein exceeds the appraised value of the Real Estate, as determined by
356 the Veterans Administration (VA) or the Federal Housing Administration (FHA). However, Buyer shall have the option of
357 proceeding with this Contract without regard to the amount of the appraised valuation. If VA, the Funding Fee, or if FHA, the
358 Mortgage Insurance Premium (MIP) shall be paid by Buyer and **[check one]** ☐ shall ☑ shall not be added to the mortgage loan
359 amount. Seller agrees to pay additional miscellaneous expenses required by lender not to exceed $200.00.
360 **Required FHA or VA amendments shall be attached to this Contract.**
361 It is expressly agreed that notwithstanding any other provisions of this Contract, the Buyer shall not be obligated to complete the
362 purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the
363 Buyer has been given, in accordance with HUD/FHA requirements, a written statement by the Federal Housing Commissioner
364 setting forth the appraised value of the property (excluding Closing costs) of not less than $_____.
365 Buyer shall have the privilege and option of proceeding with the consummation of the Contract without regard to the amount of the
366 appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and
367 Urban Development will insure/guarantee. HUD and the mortgagee do not warrant the value nor the condition of the property.
368 Buyer should satisfy himself/herself that the price and condition of the property are acceptable.

369
370       **37. INTERIM FINANCING**: This Contract is contingent upon Buyer obtaining a written commitment for interim
371 financing on or before _____, 20___ in the amount of $_____. If Buyer is unable to secure the
372 interim financing commitment and gives written notice to Seller within the time specified, **this Contract shall be null and void and**
373 **earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the**
374 **time specified, this provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.**

375
376       **38. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the Parties entering
377 into a separate written agreement consistent with the terms and conditions set forth herein, and with such additional terms as either
378 Party may deem necessary, providing for one or more of the following: *(check applicable box(es))*
379 ☐ **ASSUMPTION OF SELLER'S MORTGAGE**
380 ☐ **ARTICLES OF AGREEMENT FOR DEED OR PURCHASE MONEY MORTGAGE**
381 ☐ **VACANT LAND**
382 ☐ **NEW CONSTRUCTION**

383
384       **39. SPECIFIED PARTY APPROVAL**: This Contract is contingent upon the approval of the Real Estate by
385 _____, Buyer's specified party,
386 within five (5) calendar days after the Date of Acceptance. In the event Buyer's specified party does not approve of the Real Estate
387 and written notice is given to Seller within the time specified, **this Contract shall be null and void and earnest money refunded**
388 **to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the time specified, this**
389 **provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.**

_EK_ _____ *Buyer Initial* _____ *Buyer Initial* ___ _SC_ ___ *Seller Initial* _____ *Seller Initial*
***Address*** 1516 E 85th Pl. Chicago IL 60619 _____

**THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED**

The Parties represent that text of this form has not been altered and is identical to the official Multi-Board Residential Real Estate Contract 3.0.

_____ 20_____          _____ 20_____
Date of Offer                                        **DATE OF ACCEPTANCE**

_____                    _____
Buyer Signature                                      Seller Signature

_____                    _____
Buyer Signature                                      Seller Signature
1516 E 85th Pl Assocaites                             EquityBuild, Inc.

_____                    _____
Print Buyer(s) Name(s)                               Print Seller(s) Name(s)
5068 West Plano Pkwy                                  1083 N. Collier Blvd. #132

_____                    _____
Address                                              Address
Plano                TX       75093                  Marco Island          FL       34145

_____                    _____
City                 State    Zip                    City                  State    Zip
817-343-0707   elizabeth@equitybuildfinance.com      239-573-5055     jerry@equitybuild.com

_____                    _____
Phone Number(s)          Email                       Phone Number(s)          Email

*FOR INFORMATION ONLY*

_____                    _____
Selling Office              MLS #                    Listing Office              MLS #

_____                    _____
Selling Agent      MLS #         Email               Listing Agent      MLS #         Email

_____                    _____
Address      City      ST      Zip                   Address      City      ST      Zip

_____                    _____
Phone No.              Fax No.                        Phone No.              Fax No.

_____                    _____
Buyer's Attorney          Email                      Seller's Attorney          Email

_____                    _____
Address                                              Address

_____                    _____
Phone No.              Fax No.                        Phone No.              Fax No.

_____                    _____
Mortgage Company          Fax No.                    Loan Officer              Phone No.

©2003, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited.

Official form available at www.reallaw.org (web site of Illinois Real Estate Lawyers Association).

*Approved by the following organizations January, 2003.*

Illinois Real Estate Lawyers Association, Belvidere Board of REALTORS®, Boone County Bar Association, Chicago Association of REALTORS®, Du Page County Bar Association, Kane County Bar Association, Lake County Bar Association, McHenry County Association of REALTORS®, North Shore - Barrington Association of REALTORS®, Northwest Association of REALTORS®, Northwest Suburban Bar Association, Oak Park Board of REALTORS®, REALTOR® Association of the Fox Valley, REALTOR® Association of West/South Suburban Chicagoland, West Towns Board of REALTORS®

This offer was presented to Seller by _____ on _____20_____ at ____:_____ AM/PM
                                            (Agent)                          (date)

This offer is rejected _____   _____   _____20_____
                       (Seller initials)      (Seller initials)              (date)

_____EK_____ Buyer Initial _____ Buyer Initial _____SC_____ Seller Initial _____ Seller Initial
**Address** 1516 E 85th Pl. Chicago IL 60619 _____

Page 8 of 8

ADDENDUM B TO REAL ESTATE PURCHASE CONTRACT

This Addendum B to Real Estate Purchase Contract ("Addendum B") is made a part of that certain Real Estate Purchase Contract ("Contract") between EquityBuild, Inc. ("Seller") and 1516 E 85th PlAssociates ("Purchaser") for the purchase of the property known as 1516 E 85th Pl. Chicago, IL 60619.

Purchase Price: $50,000.00

Closing Date: May 2nd, 2013

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchase agree to the following:

1. The following structure is also being contracted by the parties in this contract: Upon sale of the property after completion of the rehab, the net profit will be split in the following manner: 60% to 1516 E 85th Pl Associatesand 40% to EquityBuild, Inc. Net profit is defined as the sale minus the initial purchase price, rehab cost and closing costs for both the purchase and sale.

2. EquityBuild, Inc. does not currently own the property but will at the time of sale to the subject buyer of this contract. Should the closing be before the closing date, the buyer must honor the new closing date.Should the seller not be ready until after the closing date, it will extend this contract until that date.

3. EquityBuild guarantees the renovation will not go over budget and, if it does, the financial burden will befall EquityBuild. EquityBuild guarantees that the property will not sell for less than the total invested dollars and, if it does, EquityBuild will pay the difference. The scope of work for the subject property is guaranteed.

The addendum does not otherwise alter or change the terms of the previous agreement between the parties.

BUYER: _____

Dated: _____04/11/13_____

SELLER: _____

Dated: _____04/11/13_____

**G-Slow Team**

## 1516 E 85th Place

3/5/2013

eb

| Item | Cost |
|------|------|
| Windows ($210 per) | $3,500.00 |
| Exterior Doors | $1,500.00 |
| Roof/Gutters/Soffit | $7,000.00 |
| Masonry | $500.00 |
| Concrete as needed | |
| Garage | $8,000.00 |
| Landscape | $1,500.00 |
| Backporch | $750.00 |
| Dumpster | $1,500.00 |
| Plumbing | $8,000.00 |
| Vanities | $1,200.00 |
| HVAC | $5,500.00 |
| Insulation | $500.00 |
| Electrical | $5,000.00 |
| Electrical Service | $1,500.00 |
| Low voltage | $500.00 |
| Drywall | $8,000.00 |
| Paint | $4,500.00 |
| Tile bathrooms | $2,000.00 |
| Tile Basement | $2,750.00 |
| Harwood | $3,000.00 |
| Carpet | $1,000.00 |
| Trim package | $4,500.00 |
| Cabinets | $2,850.00 |
| Tops | $1,150.00 |
| Appliances | $2,000.00 |
| Closets | $750.00 |
| Carpentry w/dormer | $4,250.00 |
| Lumber | $2,000.00 |
| Demo | $2,500.00 |
| Fence Gates | $800.00 |
| Towel bars/Mirrors | $1,100.00 |
| | $89,600.00 |
| Contractor Fee | $8,000.00 |
| | $97,600.00 |

BUYER: _____

Dated: _____04/11/13_____

**TAB C**

 DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  05-21-2013

Employer Identification Number:
46-2822315

Form:  SS-4

Number of this notice:  CP 575 B

1516 E 85TH PL ASSOCIATES
ELIZABETH BULIN GEN PTR
5068 W PLANO PKWY STE 300
PLANO, TX  75093

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 46-2822315.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

        Form 1065                          04/15/2014

If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods*.

We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election*.  See Form 8832 and its instructions for additional information.

A limited liability company (LLC) may file Form 8832, *Entity Classification
Election*, and elect to be classified as an association taxable as a corporation.  If
the LLC is eligible to be treated as a corporation that meets certain tests and it
will be electing S corporation status, it must timely file Form 2553, *Election by a
Small Business Corporation*.  The LLC will be treated as a corporation as of the
effective date of the S corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)     575B                05-21-2013  1516  B  9999999999  SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records.  **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.**  You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice.  If you write, please tear off the stub at the bottom of this notice and send it along with your letter.  If you do not need to write us, do not complete and return the stub.

Your name control associated with this EIN is 1516.  You will need to provide this information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

                        Keep this part for your records.        CP 575 B (Rev. 7-2007)

--------------------------------------------------------------------------------

   Return this part with any correspondence
   so we may identify your account.  Please                        CP 575 B
   correct any errors in your name or address.

                                                                9999999999


   Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  05-21-2013
   (     )    -                               EMPLOYER IDENTIFICATION NUMBER:  46-2822315
   _____  _____    FORM:  SS-4              NOBOD


   INTERNAL REVENUE SERVICE                   1516 E 85TH PL ASSOCIATES
   CINCINNATI  OH   45999-0023                ELIZABETH BULIN GEN PTR
   ılıdılılıdılılılıdıılılılılıılıdıılılılılı  5068 W PLANO PKWY STE 300
                                              PLANO, TX  75093

**TAB D**

# QUIT CLAIM DEED



Doc#: 1501229036 Fee: $50.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Affidavit Fee: $2.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 01/12/2015 11:37 AM Pg: 1 of 7

Mail to:
EQUITYBUILD INC
1083 N. COLLIER BOULEVARD #132
MARCO ISLAND, FL 34145

Name & address of taxpayer:
EQUITY BUILD INC
1083 N. COLLIER BOULEVARD #132
MARCO ISLAND, FL 34145

PTS 1328622

THE GRANTOR(S) 1516 E 85TH PLACE ASSOCIATES
of the CITY of CHICAGO County of COOK State of ILLINOIS for and in consideration of TEN and NO/100ths
DOLLARS and other good and valuable considerations in hand paid.

CONVEYS AND QUIT CLAIMS to EB SOUTH CHICAGO 1, LLC of the TOWN of MARCO ISLAND State of
FLORIDA all interest in the following described real estate situated in the County of COOK , in the State of Illinois, to
wit:
PARCEL 11
LOT 18 IN BLOCK 4 IN CEPEK'S SUBDIVISION, BEING A SUBDIVISION OF THE EAST HALF OF THE
SOUTHEAST QUARTER (EXCEPT THE NORTH HALF OF THE NORTH HALF THEREOF) OF SECTION 35,
TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, INCLUDING VACATED
STREETS THEREIN, IN COOK COUNTY, ILLINOIS.

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois. TO
HAVE AND TO HOLD said premises forever.

Permanent index number(s) 20-35-411-019-0000
Property address: 1516 E 85TH PLACE, CHICAGO
DATED this          day of OCTOBER, 2014.

City of Chicago
Dept. of Finance
**680945**

1/12/2015  10:47
DR43142

Real Estate
Transfer
Stamp
**$0.00**

Batch 9,281,471

EQUITY BUILD INC BY

BILTMORE LIMITED LLC

Albert J. Isola, Jr.          12/22/2014
ALBERT J. ISOLA JR

DATED this 21ˢᵗ day of December, 2014

BILTMORE LIMITED LLC



DATED this 21ˢᵗ day of December, 2014



EQUITYBUILD, INC

# QUIT CLAIM DEED

State of ~~Illinois~~ Florida, County of Lee ss. I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that

Jerry Cohen

personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and the person(s) acknowledged that the person(s) signed, sealed and delivered the instrument as their free and voluntary act, for the uses and purposes therein set forth

Given under my hand and official seal this 21 day of ~~OCTOBER~~ December, 2014.

Commission expires July 26 2017

Jessica A Ann Baier

JESSICA ANN BAIER
MY COMMISSION #FF010714
EXPIRES July 26, 2017
(407) 398-0153 FloridaNotaryService.com

COUNTY- ILLINOIS TRANSFER STAMPS
EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 4, REAL ESTATE TRANSFER ACT.
DATE: 10/1/14
Buyer, Seller, or Representative: Jayne Nadol

Recorder's Office Box No.

**THIS INSTRUMENT PREPARED AT THE DIRECTION OF AND NOT IN REPRESENTATION OF THE PARTIES NAMED HEREIN**

**NAME AND ADDRESS OF PREPARER:**

Sharon Roos Kirkpatrick
8833 Gross Point Road #205
Skokie, IL 60077

# QUIT CLAIM DEED

State of ~~Illinois~~ California, County of Alameda. ss. I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that

Albert J. Isola, Jr.



personally known to me to be the same person(s) whose name(s) is/~~are~~ subscribed to the foregoing instrument, appeared before me this day in person, and the person(s) acknowledged that the person(s) signed, sealed and delivered the instrument as their free and voluntary act, for the uses and purposes therein set forth

Given under my hand and official seal this 22nd day of ~~OCTOBER,~~ December, 2014.

Commission expires 7-22-2018 .

COUNTY- ILLINOIS TRANSFER STAMPS
EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 4, REAL ESTATE TRANSFER ACT.
DATE: 10/1/14
Buyer, Seller, or Representative:

Recorder's Office Box No.

THIS INSTRUMENT PREPARED AT THE DIRECTION OF AND NOT IN REPRESENTATION OF THE PARTIES NAMED HEREIN

NAME AND ADDRESS OF PREPARER:

**Sharon Roos Kirkpatrick**
**8833 Gross Point Road #205**
**Skokie, IL 60077**

## QUIT CLAIM DEED

State of ~~Illinois~~ California, County of Orange ss. I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Gregory Denis Tabat

personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and the person(s) acknowledged that the person(s) signed, sealed and delivered the instrument as ~~their~~ his free and voluntary act, for the uses and purposes therein set forth

Given under my hand and official seal this 21st day of ~~OCTOBER~~ December, 2014.

Commission expires 07 , 09 . 2014

VIVI GOENAWAN
Commission # 2071118
~~Notary Public - California~~
Orange County
My Comm. Expires Jul 9, 2018

COUNTY- ILLINOIS TRANSFER STAMPS
EXEMPT UNDER PROVISIONS OF PARAGRAPH E SECTION 4, REAL ESTATE TRANSFER ACT.
DATE: 10/ \ /14
Buyer, Seller, or Representative:

Recorder's Office Box No.

**THIS INSTRUMENT PREPARED AT THE DIRECTION OF AND NOT IN REPRESENTATION OF THE PARTIES NAMED HEREIN**

**NAME AND ADDRESS OF PREPARER:**

**Sharon Roos Kirkpatrick**
**8833 Gross Point Road #205**
**Skokie, IL 60077**

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantor shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated: _12·22-14_      Signature: _____

Grantor or Agent

Subscribed and Sworn to before me on this
_22nd_ day of _December_, 20 _14_.

_____
Notary Public

> OFFICIAL SEAL
> SEJAL PATEL
> Notary Public - State of Illinois
> My Commission Expires Aug 14, 2016

The grantee or his agent affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated: _12·22-14_      Signature: _____

Grantee or Agent

Subscribed and Sworn to before me on this
_22nd_ day of _December_, 20 _14_.

_____
Notary Public

> OFFICIAL SEAL
> SEJAL PATEL
> Notary Public - State of Illinois
> My Commission Expires Aug 14, 2016

Note: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

[Attach to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.]

**TAB E**

**1414 E. 62ND PLACE, CHICAGO, IL 60637**
**20-14-415-007-0000**
LOT 15 AND THE WEST 10 FEET OF LOT 16 IN BLOCK 3 IN O.A. BOGUE'S SUBDIVISION OF THAT PART OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 14, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**1418 E. 62ND PLACE, CHICAGO, IL 60637**
**20-14-415-008-0000**
LOT 17 AND THE EAST 15 FEET OF LOT 16 IN BLOCK 3 IN O.A. BOGUE'S SUBDIVISION OF THAT PART OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 14, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**1017 W. 102ND STREET, CHICAGO, IL 60643**
**25-08-427-046-0000**
LOT 7 IN BROWN'S RESUBDIVISION OF THE EAST 1/2 OF LOT 14 IN HITT'S SUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 8, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**1516 E. 85TH PLACE, CHICAGO, IL 60619**
**20-35-411-019-0000**
LOT 18 IN BLOCK 4 IN CEPEK'S SUBDIVISION, BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHEAST 1/4 (EXCEPT THE NORTH 1/2 OF THE NORTH 1/2 THEREOF) OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, INCLUDING VACATED STREETS THEREIN, IN COOK COUNTY, ILLINOIS.

**2136 W. 83RD STREET, CHICAGO, IL 60620**
**20-31-129-046-0000**
LOT 44 AND THE WEST 1/2 OF LOT 43 IN THE SUBDIVISION OF LOT 8 OF HUNTER'S SUBDIVISION OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**417 OGLESBY AVENUE, CALUMET CITY, IL 60409**
**29-12-219-015-0000**
LOT 16 IN BLOCK 4 IN SIBLEY BOULEVARD ADDITION TO CALUMET CITY, BEING A SUBDIVISION OF THE EAST OF THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 36 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7922 S. LUELLA AVENUE, CHICAGO, IL 60617**
**20-36-204-024-0000**
LOT 43 AND THE SOUTH 8-1/3 FEET OF LOT 44 IN BLOCK 4 IN RICHARDSON'S SUBDIVISION OF THE NORTHEAST ¼ OF SECTION 36, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7925 S. KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-103-013-0000**
LOT 15 (EXCEPT THE NORTH 15 FEET THEREOF) AND THE NORTH 22 FEET OF LOT 16 IN BLOCK 1 IN 79TH STREET ADDITION TO CHELTEMHAM BEACH IN THE NORTHWEST 1/4 OF SECTION 31 TOWNSHIP 38 NORTH RANGE 14 EAST OF THE THIRD PRINCIPLA MERIDIAN IN COOK COUNTY, ILLINOIS.

**7933 S. KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-103-015-0000**
LOT 18 (EXCEPT THE NORTH 4 FEET THEREOF) AND THE NORTH 11 FEET OF LOT 19 IN BLOCK 1 IN 79TH STREET ADDITION TO CHELTEHAM BEACH, BEING A SUBDIVISION OF PART OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8030 S. MARQUETTE AVENUE, CHICAGO, IL 60617**
**21-31-113-050-0000**
LOT 13 AND THE NORTH 15 FEET OF LOT 14 IN BLOCK 10 IN ORELUP AND TAYLOR'S SUBDIVISION OF BLOCKS 9, 10 AND 11 IN PARTITION OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 AND THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8104 S KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-118-019-0000**
LOT 2 IN BLOCK 2, IN THE SUBDIVISION OF LOTS 1 TO 10, BOTH INCLUSIVE, IN CHARLES RINGER'S SOUTH SHORE ADDITION, BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF, TAKEN FOR WIDENING EAST 83RD STREET), IN COOK COUNTY, ILLINOIS.

**8403 S. ABERDEEN STREET, CHICAGO, IL 60620**
**20-32-410-002-0000**
LOT 47 IN DELANY'S SOUTH ENGLEWOOD SUBDIVISION OF THE WEST 1/2 OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 32 TOWNSHIP 38 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**8405 S. MARQUETTE AVENUE, CHICAGO, IL 60617**
**21-31-314-002-0000**
LOTS 45 AND 46 IN BLOCK 47 IN HILLS ADDITION TO SOUTH CHICAGO A SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 31 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**8529 S. RHODES AVENUE, CHICAGO, IL 60619**
**20-34-408-008-0000**
LOT 23 IN JOHN E. WHITE'S ADDITION TO CHATHAN FILES BEING A SUBDIVISION OF BLOCK 7 IN WARFIELD'S SUBDIVISION OF THE WEST 1/2 OF THE SOUTH EAST 1/4 OF SECTION 34 TOWNSHIP 38 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**8800 S. ADA STREET, CHICAGO, IL 60620**
**25-05-112-011-0000**
LOT 1 (EXCEPT THE SOUTH 20 FEET) IN BLOCK 5 IN BRAINERD'S SUBDIVISION OF BLOCKS 1 TO 8 AND 11 IN COLE'S SUBDIVISION OF THE EAST 1/2 OF THE NORTH WEST 1/4 OF SECTION 5 TOWNSHIP 37 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**9212 S. PARNELL AVENUE, CHICAGO, IL 60620**
**25-04-312-056-0000**
LOT 6 AND THE NORTH 6-1/4 FEET OF LOT 7 IN BLOCK 11 IN BROUSE'S SUBDIVISION OF THE NORTH 40 ACRES OF THE 95 ACRES OF THE WEST 110 ACRES OF THE SOUTHWEST ¼ OF SECTION 4 TOWNSHIP 37 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**10012 S. LASALLE AVENUE, CHICAGO, IL 60628**
**25-09-412-025-0000**
LOT 161 IN S. M. BLOSS AND COMPANY'S SUBDIVISION OF THE WEST 1/2 OF BLOCKS 3, 12, 17 AND 26 AND THE EAST 1/2 OF BLOCKS 4, 11, 18 AND 25 IN FERNWOOD, A RESUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 9, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**11318 S. CHURCH STREET, CHICAGO, IL 60643**
**25-19-216-025-0000**
THE SOUTHERLY 5 FEET OF LOT 7 AND ALL OF LOT 8 IN BLOCK 75 IN WASHINGTON HEIGHTS IN THE NORTHEAST 1/4 OF SECTION 19, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**3213 S. THROOP STREET, CHICAGO, IL 60608**
**17-32-107-006-0000**
LOT 43 IN BLOCK 7 IN SPRINGER AND FOX'S ADDITION TO CHICAGO IN THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 32, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**3723 W. 68TH PLACE, CHICAGO, IL 60629**
**19-23-314-013-0000**
THE WEST 3 FEET OF LOT 9, ALL OF LOT 10 AND THE EAST 6 FEET OF LOT 11 IN BLOCK 4 IN PARADIS SUBDIVISION OF THE WEST 1/2 OF THE NORTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 23, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**406 E. 87TH PLACE, CHICAGO, IL 60619**
**25-03-200-027-0000**
THE WEST 9 FEET AND 9 INCHES OF LOT 45 AND ALL OF LOT 46 IN BLOCK 28 IN S. E. GROSS'S SUBDIVISION OF BLOCKS 27 TO 42 IN DAUPHIN PARK SECOND ADDITION, A SUBDIVISION OF THE WEST 1/2 IF THE NORTHEAST 1/4 OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**61 E. 92ND STREET, CHICAGO, IL 60619**
**25-03-308-024-0000**
LOT 26 IN BLOCK 2 IN SANGER'S SUBDIVISION OF THE NORTH ½ OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**6554 S. RHODES AVENUE, CHICAGO, IL 60637**
**20-22-218-039-0000**
LOT 23 AND THE SOUTH 1 FOOT OF LOT 22 IN BLOCK 3 IN OAKWOOD DIVISION OF THE NORTH 1/2 OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**6825 S. INDIANA AVENUE, CHICAGO, IL 60637**
**20-22-309-011-0000**
THE NORTH 20 FEET OF LOT 43 AND THE SOUTH 10 FEET OF LOT 44 IN CORNELL'S SUBDIVISION BY FREER (RECEIVER) OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7210 S. VERNON AVENUE, CHICAGO, IL 60619**
**20-27-208-019-0000**
THE NORTH 1/2 OF LOT 3 IN BLOCK 2 IN LEE BROTHERS ADDITION TO PARK MANOR, A SUBDIVISION OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 27, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7712 S. EUCLID AVENUE, CHICAGO, IL 60649**
**20-25-322-021-0000**
LOT 5 IN BLOCK 18 ON SOUTHFIELD, BEING A SUBDIVISION OF BLOCKS 17, 18, 19, 22, 23, 24 AND 26 TO 32 BOTH INCLUSIVE IN JAMES STINSON'S SUBDIVISION OF THE EAST GRAND CROSSING IN THE SOUTHWEST 1/4 OF SECTION 25, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7953 S. WOODLAWN AVENUE, CHICAGO, IL 60619**
**20-35-200-045-0000**
LOT 26 IN BLOCK 107 IN CORNELL, A SUBDIVISION OF THE WEST 1/2 OF SECTION 26, OF THE SOUTHEAST 1/4 OF SECTION 26 (EXCEPT THE EAST 1/2 OF THE NORTHEAST 1/4 OF SAID SOUTHEAST 1/4), THE NORTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTH 1/2 OF THE NORTHWEST 1/4, WEST OF THE ILLINOIS CENTRAL RAILROAD, AND THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 35, ALL IN TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8107 S. KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-119-003-0000**
LOT 36 IN BLOCK 1 IN THE SUBDIVISION OF LOTS 1 TO 10 BOTH INCLUSIVE IN CHARLES RINGERS' SOUTH SHORE ADDITION, A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF TAKEN FOR WIDENING EAST 83RD STREET).

**8346 S. CONSTANCE AVENUE, CHICAGO, IL 60617**
**20-36-304-054-0000**
THE SOUTH 5 FEET OF LOT 18 AND ALL OF LOT 19 IN BLOCK 5 IN CONSTANCE, A SUBDIVISION BY WALLACE C. CLEMENT OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 36, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8432 S. ESSEX AVENUE, CHICAGO, IL 60617**
**21-31-309-031-0000**
LOT 19, IN BLOCK 42 IN J.E. GRASSIE'S RESUBDIVISION OF LOTS 12 TO 37 BOTH INCLUSIVE IN BLOCK 40, LOTS 3 TO 20 BOTH INCLUSIVE AND LOTS 33 TO 48 BOTH INCLUSIVE IN BLOCK 42, ALL IN HILL'S ADDITION TO SOUTH CHICAGO BEING A SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8517 S. VERNON AVENUE, CHICAGO, IL 60619**
**20-34-407-005-0000**
LOT 26 IN BLOCK 8 IN J. E. WHITE'S FIRST CHATHAM FIELDS ADDITION, A SUBDIVISION OF BLOCK 8 OF E. A. WARFIELD'S SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 34, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINICPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**2129 W. 71ST STREET, CHICAGO, IL 60636**
**20-30-104-004-0000**
LOT 12 IN BLOCK 3 IN HERRONS SUBDIVISION OF 50 ACRES IN THE EAST 1/2 OF THE NORTHWEST 1/4 OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINICPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**9610 S. WOODLAWN AVENUE, CHICAGO, IL 60628**
**25-11-108-045-0000**
THE NORTH 20 FEET OF LOT 28 AND THE SOUTH 25 FEET OF THE LOT 29 IN BLOCK 26 IN COTTAGE GROVE HEIGHTS ADDITION, BEING A SUBDIVISION OF PART OF THE NORTH 1/2 OF SECTION 11, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERDIDIAN, IN COOK COUNTY, ILLINOIS.

**5437 S. LAFLIN STREET, CHICAGO, IL 60609**
**20-08-318-014-0000 AND 20-08-318-015-000**
LOT 30 AND THE NORTH 1/2 OF LOT 29 IN BLOCK 2 IN THE SUBDIVISION OF THE WEST 1/2 OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 8, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINICPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**6759 S. INDIANA AVENUE, CHICAGO, IL 60637**
**20-22-303-023-0000**
LOT 27 IN MCKAY AND PAGUE'S ADDITION, BEING A SUBDIVISION OF BLOCK 10 IN THE SUBDIVISION OF L.C. PAINE FREER, RECEIVER OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**1401 W. 109TH PLACE, CHICAGO, IL 60643**
**25-17-323-014-0000**
LOT 128 IN E.A. CUMMINGS AND COMPANY'S ADDITION TO MORGAN PARK IN THE SOUTHWEST 1/4 OF SECTION 17, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**310 E 50TH STREET, CHICAGO, IL 60615**
**20-10-116-018-0000**
LOT 2 IN WALTER AND JOHNSON'S SUBDIVISION OF LOTS 7 AND 8 IN BLOCK 2 IN HARDINS SUBDIVISION OF THE EAST 1/2 OF THE SOUTH 1/2 OF THE NORTH 1/2 OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**6807 S. INDIANA AVENUE, CHICAGO, IL 60637**
**20-22-309-002-0000**
THE NORTH 15 FEET OF LOT 50 AND THE SOUTH 15 FEET OF LOT 51 IN CORNELL'S SUBDIVISION OF BLOCK 14 OF A SUBDIVISION OF L.C.P. FREER (RECEIVER) BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 18 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**TAB F**

RACHLIS DUFF & PEEL, LLC
NOTICE OF PUBLIC SALE OF REAL ESTATE   Kevin B. Duff, Re

**ADORDERNUMBER:** 0001118262-01

**PO NUMBER:** Pub Sale of Real Estate

**AMOUNT:** 600.00

**NO OF AFFIDAVITS:** 1

# Chicago Sun-Times
# Certificate of Publication

**State of Illinois - County of**     Cook

Chicago Sun-Times, does hereby certify it has published the attached advertisments in the following secular newspapers. All newspapers meet Illinois Compiled Statue requirements for publication of Notices per Chapter 715 ILCS 5/0.01 et seq. R.S. 1874, P728 Sec 1, EFF. July 1, 1874. Amended by Laws 1959, P1494, EFF. July 17, 1959. Formerly Ill. Rev. Stat. 1991, CH100, Pl.
Note: Notice appeared in the following checked positions.

**PUBLICATION DATE(S):** 12/14/2020, 12/21/2020, 12/28/2020, 01/04/2021

Chicago Sun-Times

---

### NOTICE OF PUBLIC SALE OF REAL ESTATE

Kevin B. Duff, Receiver for the Estate of EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen in the action styled SEC v. EquityBuild, Inc., et al., Civil Action No. 1:18-cv-05587, in the United States District Court for the Northern District of Illinois, Eastern Division, gives notice of his intent to sell the following residential real estate properties (the "Properties"), containing four dwelling units or less, as a single portfolio, by sealed bid public auction:

1017 102nd Street, Chicago, IL 60643 (25-08-427-046-0000)
1516 E 85th Place, Chicago, IL 60619 (20-35-411-019-0000)
2136 W 83rd Street, Chicago, IL 60620 (20-31-129-046-0000)
417 Oglesby Avenue, Chicago, IL 60409 (29-12-219-015-0000)
7922 S Luella Avenue, Chicago, IL 60617 (20-36-204-024-0000)
7925 S Kingston Avenue, Chicago, IL 60617 (21-31-103-013-0000)
7933 S Kingston Avenue, Chicago, IL 60617 (21-31-103-015-0000)
8030 S Marquette Avenue, Chicago, IL 60617 (21-31-113-050-0000)
8104 S Kingston Avenue, Chicago, IL 60617 (21-31-118-019-0000)
8403 S Aberdeen Street, Chicago, IL 60620 (20-32-410-002-0000)
8405 S Marquette Avenue, Chicago, IL 60617 (21-31-314-002-0000)
8529 S Rhodes Avenue, Chicago, IL 60619 (20-34-408-008-0000)
8800 S Ada Street, Chicago, IL 60620 (25-05-112-011-0000)
9212 S Parnell Avenue, Chicago, IL 60620 (25-04-312-056-0000)
10012 S LaSalle Avenue, Chicago, IL 60628 (25-09-412-025-0000)
11318 S Church Street, Chicago, IL 60643 (25-19-216-025-0000)
3213 S Throop Street, Chicago, IL 60608 (17-32-107-006-0000)
3723 W 68th Place, Chicago, IL 60629 (19-23-314-013-0000)
406 E 87th Place, Chicago, IL 60619 (25-03-200-027-0000)
61 E 92nd Street, Chicago, IL 60619 (25-03-308-024-0000)
6554 S Rhodes Avenue, Chicago, IL 60637 (20-22-218-039-0000)
6825 S Indiana Avenue, Chicago, IL 60637 (20-23-309-011-0000)
7210 S Vernon Avenue, Chicago, IL 60619 (20-27-208-019-0000)
7712 S Euclid Avenue, Chicago, IL 60649 (20-25-322-021-0000)
7953 S Woodlawn Avenue, Chicago, IL 60619 (20-35-200-045-0000)
8107 S Kingston Avenue, Chicago, IL 60617 (21-31-119-003-0000)
8346 S Constance Avenue, Chicago, IL 60617 (20-36-304-054-0000)
8432 S Essex Avenue, Chicago, IL 60617 (21-31-309-031-0000)
8517 S Vernon Avenue, Chicago, IL 60619 (20-34-407-005-0000)
2129 W 71st Street, Chicago, IL 60636 (20-30-104-004-0000)
9610 S Woodlawn Avenue, Chicago, IL 60628 (25-11-108-045-0000)
5437 S Laflin Street, Chicago, IL 60609 (20-08-318-014,015)
6759 S Indiana Avenue, Chicago, IL 60637 (20-22-303-023-0000)
1401 W 109th Place, Chicago, IL 60643 (25-17-323-014-0000)
310 E 50th Street, Chicago, IL 60615 (20-10-116-018-0000)
6807 S Indiana Avenue, Chicago, IL 60637 (20-22-309-002-0000)

Interested bidders will be provided access to an electronic due diligence room containing, among other things, leases, utility bills, profit-and-loss statements, and property inspection reports. Good faith offers may be submitted on or before 5:00 p.m. CST on Friday, January 15, 2021 through a form Purchase And Sale Contract (the "Contract") to be made available by Michael Finch ("Broker"), SVN | SFR Hub Advisors, 7310 North 16th Street, Suite 210, Phoenix, Arizona 85020, michael.finch@sfr.com. The Contract includes financing and due diligence contingencies which may be waived by the bidder. The properties are being sold "as-is," with all faults, as of the closing date. Prospective bidders should read the Contract carefully before conveying an offer. The Seller strongly recommends that prospective purchasers pre-qualify for financing prior to submitting an offer. No liability shall attach to the Seller, the Broker, or any other party for failure to receive or open any offer or for refusing to consider or for rejecting any offer. The Receiver reserves the right to reject any and all offers to purchase the Properties.

The winning bidder will be required to make an earnest money deposit in an amount equal to at least ten percent (10%) of the purchase price by wiring funds to a designated title company within three (3) business days after acceptance of the offer by the Receiver. The earnest money deposit shall become non-refundable at the expiration of the due diligence period and applied toward the purchase price at closing. The Receiver will move to confirm the sale after the winning offer has been accepted and any contingencies to closing have expired. At such time as the motion to confirm the sale is granted, the buyer will be required to close upon ten days' notice.

A cooperating commission will be paid to a qualified, licensed broker who is neither owned by, nor affiliated with, either the purchaser or any nominee of the purchaser, who was the procuring cause of the transaction, who submits a broker information form at the inception of its involvement, and who is identified on the signature page of the purchase and sale contract submitted to the Receiver in connection with the buyer's bid.

Bidders must comply with the "Sealed Bid Public Sale Of Real Estate Terms And Conditions," a copy of which may be obtained upon request to the Broker.

PUBLICATION DATES: December 14, December 21, December 28, January 4. #1118262

---

IN WITNESS WHEREOF, the undersigned, being duly authorized, has caused this Certificate to be signed

by     *Susan Quinn*

Susan Quinn
Manager | Recruitment & Legals

This 4th Day of January 2021

RACHLIS DUFF & PEEL , LLC
542 S DEARBORN ST, STE 900
ATTN: JODI WINE
CHICAGO, IL 60605

**TAB G**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-CV-5587 |
| v. | ) ) | |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) ) | Hon. John Z. Lee

Magistrate Judge Young B. Kim |
| Defendants. | ) ) ) | |

<u>DECLARATION OF MICHAEL FINCH</u>

I, Michael Finch, under penalty of perjury and in accordance with 28 U.S.C. § 1746, hereby declare and state as follows:

1.    I am over 18 years of age and reside in the State of Arizona.

2.    I have personal knowledge of the facts stated herein and if called as a witness could testify competently thereto.

3.    I am Executive Vice President of SVN | SFR Hub Advisors ("SVN").

4.    Kevin B. Duff, receiver for the estate of EquityBuild and its affiliates, retained SVN to provide real estate brokerage services in connection with the marketing and sale of a portfolio of single-family home properties (the "Portfolio"), and I was the broker principally responsible for that undertaking.

5.    Using proprietary valuation metrics, SVN estimated the market values of each of the properties in the Portfolio, and those values are set forth on the chart attached hereto at Tab A.

6.    On December 7, 2020 SVN began advertising the Portfolio for sale on the SFR Hub website (*www.sfrhub.com*), an online listing service through which prospective sellers of single-family home investment portfolios reach potentially interested purchasers.

7.      In the offering memorandum that SVN published in connection with the marketing of the Portfolio, the opening bid price was set at $4,000,000 and the portfolio was value was estimated to be $4,633,534.

8.      In addition to listing the Portfolio on the SFR Hub website, SVN sent an e-mail blast containing information regarding the Portfolio to 80,181 addressees, resulting in 15,544 "opens" and 2,092 click-throughs to the listing.

9.      SVN agents spoke to approximately 47 different groups of potential purchasers, resulting in the execution of 29 non-disclosure agreements, and all 29 signatories accessed the due diligence vault containing documentation relating to each of the properties in the Portfolio.

10.     At the bidding deadline, offers were submitted by six parties, the highest of which (an offer of $4,100,000) was tendered by Lawndale Realty 4 LLC ("Lawndale Realty").

11.     After the EquityBuild receiver accepted the purchase and sale contract, Lawndale Realty conducted additional due diligence on all, or substantially all, of the properties in the Portfolio and indicated that it would terminate the agreement in accordance with the terms of the inspection contingency unless the receiver extended a credit in the amount of $275,000 in respect of alleged latent defects not ascertainable from the due diligence materials made available prior to the bid submission deadline.

12.     Several rounds of negotiations ensued, and the parties ultimately executed an amendment to the purchase and sale agreement pursuant to which the receiver agreed to reduce the purchase price by $100,000, and SVN agreed to reduce its commission from $160,000 to $142,180.

        FURTHER DECLARANT SAYETH NAUGHT.

                                                          4-7-21
        _____
                Michael Finch

| Borrower | Property Address | Zip Code | PIN | Valuation |
|---|---|---|---|---|
| 6217-27 S Dorchester LLC | 1414 E 62nd | 60637 | 20-14-415-007-0000 | $96,900 |
| 6217-27 S Dorchester LLC | 1418 E 62nd | 60637 | 20-14-415-008-0000 | |
| EB South Chicago 1, LLC | 1017 W 102nd | 60643 | 25-08-427-046-0000 | $109,250 |
| EB South Chicago 1, LLC | 1516 E 85th | 60619 | 20-35-411-019-0000 | $108,965 |
| EB South Chicago 1, LLC | 2136 W 83rd | 60620 | 20-31-129-046-0000 | $108,300 |
| EB South Chicago 1, LLC | 417 Oglesby | 60409 | 29-12-219-015-0000 | $111,150 |
| EB South Chicago 1, LLC | 7922 S Luella | 60617 | 20-36-204-024-0000 | $150,100 |
| EB South Chicago 1, LLC | 7925 S Kingston | 60617 | 21-31-103-013-0000 | $91,200 |
| EB South Chicago 1, LLC | 7933 S Kingston | 60617 | 21-31-103-015-0000 | $102,600 |
| EB South Chicago 1, LLC | 8030 S Marquette | 60617 | 21-31-113-050-0000 | $81,700 |
| EB South Chicago 1, LLC | 8104 S Kingston | 60617 | 21-31-118-019-0000 | $159,600 |
| EB South Chicago 1, LLC | 8403 S Aberdeen | 60620 | 20-32-410-002-0000 | $123,500 |
| EB South Chicago 1, LLC | 8405 S Marquette | 60617 | 21-31-314-002-0000 | $127,300 |
| EB South Chicago 1, LLC | 8529 S Rhodes | 60619 | 20-34-408-008-0000 | $152,000 |
| EB South Chicago 1, LLC | 8800 S Ada | 60620 | 25-05-112-011-0000 | $147,250 |
| EB South Chicago 1, LLC | 9212 S Parnell | 60620 | 25-04-312-056-0000 | $117,800 |
| EB South Chicago 2, LLC | 10012 S LaSalle | 60628 | 25-09-412-025-0000 | $99,750 |
| EB South Chicago 2, LLC | 11318 S Church | 60643 | 25-19-216-025-0000 | $142,120 |
| EB South Chicago 2, LLC | 3213 S Throop | 60608 | 17-32-107-006-0000 | $149,625 |
| EB South Chicago 2, LLC | 3723 W 68th | 60629 | 19-23-314-013-0000 | $144,400 |
| EB South Chicago 2, LLC | 406 E 87th | 60619 | 25-03-200-027-0000 | $116,090 |
| EB South Chicago 2, LLC | 61 E 92nd | 60619 | 25-03-308-024-0000 | $119,890 |
| EB South Chicago 2, LLC | 6554 S Rhodes | 60637 | 20-22-218-039-0000 | $96,900 |
| EB South Chicago 2, LLC | 6825 S Indiana | 60637 | 20-22-309-011-0000 | $149,150 |
| EB South Chicago 2, LLC | 7210 S Vernon | 60619 | 20-27-208-019-0000 | $133,000 |
| EB South Chicago 2, LLC | 7712 S Euclid | 60649 | 20-25-322-021-0000 | $148,200 |
| EB South Chicago 2, LLC | 7953 S Woodlawn | 60619 | 20-35-200-045-0000 | $149,150 |
| EB South Chicago 2, LLC | 8107 S Kingston | 60617 | 21-31-119-003-0000 | $113,240 |
| EB South Chicago 2, LLC | 8346 S Constance | 60617 | 20-36-304-054-0000 | $157,700 |
| EB South Chicago 2, LLC | 8432 S Essex | 60617 | 21-31-309-031-0000 | $158,650 |
| EB South Chicago 2, LLC | 8517 S Vernon | 60619 | 20-34-407-005-0000 | $149,150 |
| EB South Chicago 3, LLC | 2129 W 71st | 60636 | 20-30-104-004-0000 | $73,720 |
| EB South Chicago 3, LLC | 9610 S Woodlawn | 60628 | 25-11-108-045-0000 | $95,950 |
| EB South Chicago 3, LLC | 5437 S Laflin | 60609 | 20-08-318-014,015 | $80,752 |
| EB South Chicago 3, LLC | 6759 S Indiana | 60637 | 20-22-303-023-0000 | $111,625 |
| EB South Chicago 4, LLC | 1401 W 109th | 60643 | 25-17-323-014-0000 | $80,656 |
| EB South Chicago 4, LLC | 310 E 50th | 60615 | 20-10-116-018-0000 | $235,601 |
| EB South Chicago 4, LLC | 6807 S Indiana | 60637 | 20-22-309-002-0000 | $140,600 |

**$4,633,534**

**TAB H**

## PURCHASE & SALE AGREEMENT

This Purchase & Sale Agreement ("Agreement") is made by and between the court-appointed federal equity receiver for 6217-27 S Dorchester LLC, EB South Chicago 1 LLC, EB South Chicago 2 LLC, EB South Chicago 3 LLC, and EB South Chicago 4 LLC (collectively, "Seller") pursuant to that certain Order Appointing Receiver entered August 17, 2018, in the case captioned *United States Securities and Exchange Commission v. EquityBuild, Inc., et al.*, United States District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 1:18-cv-05587 (the "SEC Action") and Lawndale realty 4, LLC, a Wyoming limited liability company ("Buyer") for the purchase and sale of the real property and all fixtures, equipment, and personal property appurtenant thereto (the "Properties") identified and legally described at **Tab A**.

*       *       *

### *TERMS AND CONDITIONS*

The Seller agrees to sell the Properties, and the Buyer agrees to purchase the Properties, on the following terms and conditions:

1.      **Purchase Price**. The purchase price for the Properties shall be $4,100,000.00 (the "Purchase Price"). The Buyer shall pay the Purchase Price as follows:

   a.      An earnest money deposit (the "Earnest Money") in an amount equal to Fifty Thousand and 00/100 Dollars ($50,000) Price within three (3) business days following the date of acceptance of the Agreement by the Seller (the "Acceptance Date").  Within two (2) business days of expiration of the Inspection Period, if the Agreement is not terminated, Buyer shall deposit with the escrow agent an amount equal to One Hundred Fifty-Five Thousand and 00/100 Dollars ($155,000) to be held as earnest money.

   b.      The balance of the Purchase Price, subject to any applicable credits and prorations, at Closing.

2.      **Financing**. [ Intentionally Omitted ].

3.      **Earnest Money**. The Earnest Money shall be held by Chicago Title Insurance Company ("Chicago Title") in a segregated escrow account. In connection with said Earnest Money deposit, the Buyer shall execute and deliver to the Seller a copy of the standard form strict joint order escrow agreement required by Chicago Title in connection with the provision of closing services for commercial transactions.

4.      **Court Approval**. Within  sixty (60) days of the expiration of the Inspection Period, Seller shall move before the Honorable John Z. Lee or any judge sitting in his stead or to whom he has made a referral in the SEC Action (the "Receivership Court") to confirm the sale of the Properties pursuant to this Agreement. In the event that the motion is denied or the Seller is unable to obtain approval during the 60-day period, then the Agreement shall become null and

1

void and all Earnest Money shall be refunded to the Buyer. If Seller is unable to obtain court approval within the 60 day period, Buyer may in its sole discretion extend the time to obtain a court approval.

5.    **Escrow Closing**. This sale shall be closed through an escrow with Chicago Title in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by said title company. Payment of the Purchase Price and delivery of the receiver's special warranty deeds shall be made through the escrow. The cost of the escrow shall be divided equally between the Buyer and the Seller, except that the Buyer may be charged an additional fee for financing-related escrow services, if applicable. Unless otherwise specified herein, all other closing costs shall be paid in accordance with governing law or custom for commercial real estate sales transactions in Cook County, Illinois.

6.    **Irrevocable Offer**. This Agreement when executed by the Buyer and delivered to the Seller shall constitute an irrevocable offer to purchase the Property until February 19, 2021 (the "Offer Expiration Date"). In the event that the offer is not accepted by the Seller before the Offer Expiration Date, then the offer shall be deemed withdrawn.

7.    **Personal Property**. At Closing, the Seller shall tender to the Buyer a bill of sale for the personal property appurtenant to the Properties (the "Personal Property") warranting only that Seller is the absolute owner of said Personalty, that said Personalty is free and clear of all liens, charges, and encumbrances, and that the Seller has the full right, power, and authority to sell said Personalty and to deliver the bill of sale. The Seller shall neither make nor adopt any warranty whatsoever with respect to the Personal Property and shall specifically disclaim any implied warranty of merchantability or fitness for a particular purpose. The price of the Personal Property shall be included in the Purchase Price, and the Buyer agrees to accept all such Personal Property in "as is" condition.

8.    **Conveyance of Title**. The Seller shall convey title to the Properties by a recordable form special warranty deed subject to the following Permitted Exceptions:

    a.    general real estate taxes not yet due and payable at the time of Closing;

    b.    covenants, conditions, restrictions, or building lines and easements of record;

    c.    public and utility easements;

    d.    applicable zoning and building laws and ordinances;

    e.    acts done by or suffered through Buyer or anyone claiming by, through, or under Buyer;

    f.    all pending governmental actions or proceedings;

    g.    encroachments, encumbrances, violations, variations, or adverse circumstances affecting title that would be disclosed by an accurate survey; and

2

h.   that certain Ordinance recorded as Document No. 1328213019 relating to Chicago Enterprise Zone VI and the terms and conditions contained therein;

9.   **Commitment For Title Insurance**. Within ten (10) business days after the Acceptance Date, the Seller shall deliver to the Buyer evidence of merchantable title to the Properties by delivering a commitment for title insurance with extended coverage from Chicago Title in the amount of the Purchase Price with a commitment date not earlier than November 6, 2020, subject only to general exceptions, the Permitted Exceptions, and exceptions pertaining to liens or encumbrances of a definite and ascertainable amount which may be removed by the payment of money by Seller, endorsed over by Chicago Title at the Seller's sole expense, or extinguished by order of the Receivership Court. Such title commitment shall be conclusive evidence of good and merchantable title, subject only to the foregoing exceptions. If the commitment for title insurance discloses title exceptions other than the general exceptions, Permitted Exceptions, exceptions waivable through the payment of money, issuance of an endorsement, or Receivership Court order, the Seller shall have thirty (30) calendar days from the Acceptance Date to cure, or insure over, the unpermitted exceptions, and the Closing Date shall be extended, if necessary, until said unpermitted exceptions are cured or insured over. If the Seller fails to timely secure the removal of the unpermitted exceptions or obtain an endorsement insuring over the unpermitted exceptions, the Buyer may terminate this Contract with a full refund of Earnest Money upon Notice to the Seller within ten (10) business days after the expiration of said thirty (30) day period. In such event, this Agreement shall become null and void and neither party shall thereafter have any rights against the other, and the Seller may not be held liable for direct, indirect, incidental, or consequential damages**.**

10.   **The Closing Date**. The closing shall be held on a date (the "Closing Date") to be designated by the Seller promptly after the Receivership Court after approves the sale of the Properties pursuant to this Agreement, provided, however, that the Buyer shall be entitled to ten business days' advance Notice of the Closing Date. The Closing Date shall not be a date earlier than sixty (60) days from the Acceptance Date.  The Seller agrees to surrender possession of the Properties at the time of Closing.

11.   **Surveys**. The Buyer acknowledges that the Seller made boundary surveys of each of the Properties available to the Buyer. If the Buyer desires a more recent or extensive survey of any of the Properties, such surveys shall be obtained at the Buyer's sole cost and expense.

12.   **Assignment And Assumption Of Leases**. At Closing, the Seller shall deliver to the Buyer, and the Seller and Buyer shall execute, an assignment and assumption of leases (in the form attached hereto at **Tab B**) pursuant to which the Seller shall convey all right, title, and interest in and to any leases in effect at the Properties to the Buyer, and the Buyer shall agree to assume all of the Seller's obligations under said leases.

13.   **Prorations**. The Seller shall pay such water charges as may be necessary to authorize the purchase of the transfer tax stamps required to be affixed to the special warranty deed. All water shall be prorated as of the Closing Date based upon the most recent utility bill. Any and all rents collected from or on behalf of tenants until the date of Closing shall be applied by the

3

Seller first to past due balances and then to currently scheduled monthly rent. Any rents uncollected at the time of Closing shall thereafter belong to the Buyer. Each tenant's scheduled monthly rent shall then be prorated for the month of Closing. Real estate taxes associated with the ownership of the Properties shall be prorated as of the Closing Date based on 105% of the most recently ascertainable tax bill.

14.    **Due Diligence Review**. The Buyer acknowledges that it was afforded access to an electronic due diligence room prior to the execution of this Agreement. The Seller represents and warrants that the files contained in the electronic due diligence room constituted true and accurate copies of materials received from third party property management companies (the "Due Diligence Materials"):

   a.    *Leases & HAP Contracts*. Copies of leases and housing assistance payment contracts.

   b.    *Utility Bills*. Copies of utility bills, to the extent available, for the twelve calendar months preceding January 2021.

   c.    *Profit & Loss Statements*. A trailing twelve-month profit and loss statement (through December 2020) reflecting operating income and expense associated with the Properties, as generated by the management company overseeing the corresponding property.

   e.    *Litigation Documents*. Copies of documents, including notices of violation, orders, judgments, and other pleadings, pertaining to known litigation or administrative action currently affecting the Properties.

   f.    *Surveys*. Copies of surveys of the Properties in which the field work was performed between August 5 and November 15, 2019.

   g.    *Property Inspection Reports*. Property condition reports, photographs, and estimates and/or bids for repair work prepared by Safeguard Properties.

The Seller disclaims any warranty regarding the accuracy or completeness of any particular document or any category of documents contained in the electronic due diligence room or that the number of dwelling units at any of the Properties has been approved or is otherwise permitted by federal, state, or local law.

15.    **Property Inspections**. For a period of thirty (30) days from and after the Acceptance Date (the "Inspection Period"), the Seller shall use its best efforts to secure access to the Properties during reasonable hours for the purpose of allowing the Buyer to conduct inspections of the major structural and mechanical components of the Properties. The Buyer may terminate this Agreement with a full refund of Earnest Money upon the delivery of Notice to the Seller on or before the conclusion of the Inspection Period if the physical condition of the major structural and mechanical components of the Properties, viewed as a whole, materially

differs from the physical condition of the major structural and mechanical components of the Properties as reasonably ascertainable from the Due Diligence Materials made available to the Buyer. A major structural or mechanical component shall be deemed to be in satisfactory operating condition, however, if it substantially performs the function for which it is intended, regardless of age, and does not pose a threat to health or safety. Upon receipt by the Seller of the notice of termination, this Agreement shall be considered null and void and the parties shall be discharged of any and all obligations hereunder (except those obligations which survive termination) and the Earnest Money shall be released to the Buyer. In the event that the Buyer does not terminate the Agreement on or prior to the conclusion of the Inspection Period, the Properties shall be considered accepted by the Buyer and the Earnest Money shall thereafter be non-refundable, except as provided in Section 4. In connection with its inspection of the Properties, the Buyer shall keep the Properties free and clear of liens, shall indemnify and hold Seller harmless from and against any and all liability, loss, cost, damage, or expense relating to its inspections of the Properties, and shall repair any and all damage arising from the inspection. These obligations shall survive termination of the Agreement.

16. **Entry Into Or Renewal Of Contracts & Material Changes**. Following the expiration of the Inspection Period, the Seller shall not without the prior written consent of the Buyer, said consent not to be unreasonably withheld, conditioned, or delayed, enter into or renew any service contract or lease affecting or concerning any of the Properties. In addition, the Seller shall not make any material changes to any Property, perform or engage in any act, or enter into any agreement that materially changes the value of any Property or the rights of the Buyer relating to any Property.

17. **Material Destruction**. Risk of loss to the Properties shall be borne by the Seller until title has been conveyed to Buyer. If, prior to Closing, a material portion of any of the Properties shall be destroyed or materially damaged by fire or other casualty, then the Seller shall provide prompt notice of said fire or other casualty to the Buyer and this Agreement shall thereafter, at the option of the Buyer, exercised by Notice to the Seller within five (5) business days after receipt of notice of such material damage, be null and void, and all Earnest Money shall be refunded to the Buyer. Failure of the Buyer to provide timely notice shall constitute a waiver of the right to terminate.

18. **Condition Of Properties**. The Buyer understands and agrees that the Properties are being sold "as is" and "with all faults" and that neither the Seller nor any agent or attorney of the Seller, makes, or has made, any representation or warranty as to the physical condition or value of the Properties or its suitability for the Buyer's intended use. The Seller has no obligation to repair or correct any alleged patent or latent defect at the Properties, or to compensate the Buyer for any such defect, and, upon closing, the Buyer waives, releases, acquits, and forever discharges the Seller, and all of the Seller's agents and attorneys, to the maximum extent permitted by law, from any and all claims, actions, causes or action, demands, rights, liabilities, losses, damages, costs, or expenses, direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way arising from or relating to any alleged patent or latent defect at any of the Properties.

19.  **Buyer Default**. The Buyer and Seller agree that it would be difficult to ascertain the actual damages to be suffered by the Seller in the event of a default by the Buyer and that the amount of the Earnest Money deposited by the Buyer hereunder constitutes the parties' reasonable estimate of the Seller's damages in the event of the Buyer's default, and that upon any such default not caused by the Seller, the Seller shall be entitled to retain the Earnest Money as liquidated damages, which shall constitute the Seller's sole and exclusive remedy in law or at equity in connection with said default.

20.  **Seller Default**. In the event that the Seller shall fail to sell, transfer, and assign the Property to Buyer in violation of the terms of this Agreement and/or fail to perform any other material obligation of Seller hereunder, then the Buyer may give Notice to the Seller specifying the nature of the default. The Seller shall thereafter have five (5) business days from receipt of said Notice, but in no event beyond the Closing Date, within which to cure the alleged default. If the Seller fails to cure the default within the cure period, then the Buyer shall be entitled to the return of all Earnest Money and (a) to declare the Agreement null and void and sue for reasonable out-of-pocket expenses incurred in connection with this Agreement prior to the alleged default or (b) to sue for specific performance, the parties recognizing that the Properties are unique and that the Buyer otherwise lacks an adequate remedy at law. In the latter event, the Buyer is advised that Section VIII of the Order Appointing Receiver entered in the SEC Action enjoins the filing or prosecution of all civil proceedings against the Receiver, in his capacity as Receiver, until further order of the court.

21.  **Representations and Warranties**. As a material inducement to the Buyer to enter into this Agreement, the Seller hereby makes the following representations and warranties, each of which shall remain true and correct as of the Closing Date:

   a.  The Seller has the full right, power, and authority to convey the Properties to the Buyer as provided in this Agreement and to carry out its obligations hereunder. In addition, the individual executing this Agreement on behalf of the Seller has the legal right, power, and authority to bind the Seller to the terms hereof.

   b.  The Seller will not take any action affecting title to any of the Properties following the Acceptance Date.

   c.  To the best of the Seller's knowledge, there are no actions, investigations, suits, or proceedings, pending or threatened, that affect any of the Properties, or the ownership or operation thereof, other than the SEC Action and the following:

       *[None.]*

   d.  To the best of the Seller's knowledge, none of the Properties is in violation, nor has been under investigation for violation, of any federal, state, or local law, ordinance, or regulation regulating environmental conditions in, at, on, under, or about any of the Properties, including but not limited to, soil and groundwater conditions.

22. **Notices**. All notices required or permitted under this Agreement shall be in writing and served by registered or certified United States mail, return receipt requested; nationally recognized overnight mail courier (signature required); or electronic mail (evidenced by competent and authentic proof of transmission). Any notices given to the Seller shall be delivered to the Seller's counsel, at the following physical or e-mail addresses:

> Andrew E. Porter
> Porter Law Office
> 853 North Elston Avenue
> Chicago, Illinois 60614
> *andrew@andrewporterlaw.com*

> Michael Rachlis
> Rachlis Duff Peel & Kaplan LLC
> 542 South Dearborn, Suite 900
> Chicago, Illinois 60605
> *mrachlis@rdaplaw.net*

Any such notices or demands given to the Buyer shall be delivered to the Buyer's counsel, at the following address physical or e-mail addresses:

> Charles Mack
> 1363 Shermer Rd., Suite 210
> Northbrook, IL 60062
> charles@mlgcounsel.net

23. **Like-Kind Exchange**. The Seller agrees to cooperate if the Buyer elects to acquire the Property as part of a like-kind exchange under Section 1031 of the Internal Revenue Code. The Buyer's contemplated exchange shall not impose upon the Seller any additional liability or financial obligation, and the Buyer agrees to hold the Seller harmless from any liability that might arise from such exchange. This Agreement is neither subject to nor contingent upon the Buyer's ability to dispose of its exchange property or to effectuate an exchange. In the event any exchange contemplated by the Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

24. **Real Estate Agents**. Buyer represents and warrants that, other than Seller's Agent and Buyer's Agent, if any, no other putative real estate agent or broker was involved in submitting, showing, marketing, or selling the Property to the Buyer.

25. **Foreign Investor Disclosure**. The Seller and the Buyer agree to execute and deliver any instrument, affidavit, or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. The Seller represents that the Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code.

26.  **Merger**. This Agreement expresses the entire agreement of the parties and supersedes any and all previous agreements or understandings between them with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this Agreement, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. This Agreement may be modified only by a written instrument signed by the party to be charged.

27.  **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

28.  **Tolling**. The Inspection Period, or the obligation of either Buyer or Seller to perform any act required in this Agreement, shall be tolled in the event that current "stay at home" restrictions imposed by the federal government, the State of Illinois, or the City of Chicago are expanded to preclude the performance of the act required or permitted hereunder.

*          *          *

The undersigned Buyer hereby offers and agrees to purchase the Property upon the terms and conditions stated herein as of this ___17th___ day of February 2021. In addition, the individual signing below on behalf of the Buyer represents and warrants that s/he is authorized to execute this Agreement on behalf of the Buyer.



**Buyer**

Lawndale Realty 4 LLC

**Seller**

KEVIN B. DUFF,
FEDERAL EQUITY RECEIVER FOR
6217-27 S DORCHESTER LLC, EB SOUTH
CHICAGO 1 LLC, EB SOUTH CHICAGO 2 LLC,
EB SOUTH CHICAGO 3 LLC, AND EB SOUTH
CHICAGO 4 LLC

Rachlis Duff Peel & Kaplan LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3390

By: _____ Brian Ploszaj

Its: Member

**Acceptance Date:** February 17, 2021

**Buyer's Agent**

[_____]

[_____]

[_____]

[_____]

[_____]

**Seller's Agent**

Michael Finch
SVN SFRhub Advisors
7310 North 16th Street, Suite 210
Phoenix, Arizona  85020
(602) 441-5354

9

**TAB I**

## SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT

This SECOND AMENDMENT TO PURCHASE AND SALE AGREEMENT (this "Amendment") is entered into as of March 31, 2021, by and between Kevin B. Duff, as court-appointed federal equity receiver for 6217-27 S Dorchester LLC, EB South Chicago 1 LLC, EB South Chicago 2 LLC, EB South Chicago 3 LLC, and EB South Chicago 4 LLC (collectively, "Seller"), and Lawndale Realty 4, LLC, a Wyoming limited liability company ("Purchaser"). Seller and Purchaser are sometimes referred to together as the "Parties" and each, individually, as a "Party."

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties covenant and agree as follows:

1.  <u>Purchase Price Reduction</u>. Notwithstanding anything to the contrary contained in the Purchase And Sale Agreement (the "Agreement") executed by the Parties and accepted by the Seller on February 17, 2021, the Purchase Price shall be $4,000,000.00.

2.  <u>Condition Of Property</u>. The Seller agrees to secure all property that is currently vacant or that may become vacant prior to Closing. The Purchaser may inspect any vacant units within five days prior to Closing to confirm that the condition of those units is substantially similar to the condition they were in as of the end of the Inspection Period.

3.  <u>Entry Into Or Renewal Of Contracts</u>. The clause "said consent not to be unreasonably withheld, conditioned, or delayed," shall be stricken from Paragraph 16 of the Agreement.

4.  <u>Effect of this Amendment</u>. As amended by the terms of this Amendment, the Purchase Agreement is in full force and effect.

5.  <u>Counterparts</u>. This Amendment may be executed in counterparts and, when counterparts of this Amendment have been executed and exchanged by the Parties through the electronic transmission of a .pdf file, the Amendment shall be fully binding and effective.

IN WITNESS WHEREOF, this Amendment is made as of the day and year first above written.

SELLER:

KEVIN B. DUFF, FEDERAL EQUITY
RECEIVER FOR 6217-27 S DORCHESTER LLC,
EB SOUTH CHICAGO 1 LLC,
EB SOUTH CHICAGO 2 LLC,
EB SOUTH CHICAGO 3 LLC, AND
EB SOUTH CHICAGO 4 LLC

PURCHASER:

LAWNDALE REALTY 4, LLC,
a Wyoming limited liability company

Brian Plozsay, Authorized Agent

**TAB J**

# EquityBuild, Inc.
# EquityBuild Finance, LLC
### *In Receivership*

Kevin B. Duff, Receiver
equitybuildreceiver@rdaplaw.net
(312) 733-3390 Phone

c/o Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605

March 30, 2021

**By E-Mail/.pdf**
Jeffrey Cline
SVN SFRHub Advisors
7310 North 16th Street, Suite 210
Phoenix, Arizona 85020
*jeff.cline@svn.com*

Michael Thanasouras
SVN Chicago Commercial
940 West Adams Street, Suite 200
Chicago, Illinois 60607
*michael.thanasouras@svn.com*

Re:      Representation Agreement

Dear Messrs. Cline and Thanasouras:

I write to confirm the agreement of SVN SFRHub Advisors and SVN Chicago Commercial (collectively, "SVN") that, in consideration of my agreement to reduce the purchase price specified in that certain Purchase And Sale Agreement entered into by and between Kevin B. Duff, as federal equity receiver for 6217-27 S Dorchester LLC, EB South Chicago 1 LLC, EB South Chicago 2 LLC, EB South Chicago 3 LLC, and EB South Chicago 4 LLC (the "Seller") and Lawndale Realty 4 LLC (the buyer), SVN agrees that, notwithstanding anything to the contrary contained in that certain Representation Agreement by and between the Seller and SVN, the sales commission due and payable under the Representation Agreement shall equal $142,180.

Jeffrey Cline
Michael Thanasouras
March 30, 2021
Page 2 of 2

Sincerely,

Kevin B. Duff, Federal Equity Receiver for
6217-27 S Dorchester LLC, EB South Chicago 1 LLC,
EB South Chicago 2 LLC, EB South Chicago 3 LLC, and
EB South Chicago 4 LLC

**ACKNOWLEDGED AND AGREED:**

DocuSigned by:

Jeffrey Cline    3/30/2021

Jeffrey Cline,
SVN SFR Hub

**ACKNOWLEDGED AND AGREED:**

Michael Thanasouras,
SVN Chicago Commercial

**TAB K**

**1414 E 62ND PLACE, CHICAGO, IL 60637**
**1418 E 62ND PLACE, CHICAGO, IL 60637**

Mortgage recorded June 23, 2017 as Document No. 1717413025 made by 6217-27 S. Dorchester, LLC to Arman Kale Heaton and Natoshia Lamborn Heaton, Blue Mountain Ventures (SID IRA), Concord Manaqement LLC, Conor Benson King, Cree Capital Ventures, LLC, David M. Harris, Duane Younq, Duke E. Heqer and Viviana Heqer, Erwin J. Page Trust, Fredric R. Gottlieb Revocable Trust, DTD 7/31/08, Girl Cat Capital West LLC, Hillside Fund LLC, iPlanGroup Agent for Custodian FBO Elizabeth Zeng IRA, iPlanGroup Agent For Custodian FBO Gina Meyer Roth IRA, iPlanGroup Agent for Custodian FBO Laura Dirnberger Roth IRA, iPlanGroup Agent for Custodian FBO Lyle J Swiney IRA, iPlanGroup Agent for Custodian FBO Michael Dirnberger Roth IRA, iPlanGroup Agent for Custodian FBO Michelle Grimes IRA #3301097, IRA Services Trust Company CFBO Linda Lipschultz, IRA, IRA Services Trust Company CFBO Steven Lipschultz IRA, Jerome B. Shaffer Trust, JN Investment Trust, Joe Siracusa, Karl R. DeKlotz, Kevin Randall, Linda Marie Lipschultz & Steven Charles Lipschultz Trust FBO LML TRUST UA APR 08 2016, Madison Trust Company FBO Ernest Marcus M1612087, Matthew Hutchings, MidAtlantic IRA, LLC FBO Charles McEvoy IRA, Mountain West IRA, Inc. FBO Rachael Clark, Nathan and/or Brandi Hennefer, Next Generation Trust Services FBO Mark Kapsky IRA 2396, Next Generation Trust Services FBO Irene B. Kapsky FFBO Mark S. Kapsky IRA 3207, Optima Property Solutions. LLC, Pacific Ocean Services, Inc., Pat Desantis, Paul N. Wilmesmeier, PNW Investments, LLC, Quest IRA Inc. FBO Rebeca E. Savory-Romero ROTH IRA # 15528-21, R.D. Meredith General Contractors, LLC 401K Plan, R2V2 Investments LLC, REAP, LLC, Reymone Randall, Russell & Uschi Waite, Scott H. Eaton, Self Directed IRA Services Inc. FBO Gary Wayne Williams Acct #100010381, Shankar Thiruppathi, Shengjie Li and Yuye Xu, Steven Roche, Sunwest Trust c/f Ann Marie Shuster, IRA Acct. #1712719, Sunwest Trust Inc. FBO John B. Allred IRA (Acct #1612618), The Falkowitz Group Retirement Trust, Timothy Sharp, Top Mark Home Solutions Inc., Wisemove Properties, LLC, and Xiaoqing Chen to secure an indebtedness in the amount of $3,650,000.

**1017 W 102ND STREET, CHICAGO, IL 60643**

Mortgage recorded August 7, 2013 as Document No. 1321956023 made by EquityBuild, Inc. to Spectra Investments LLC and David A. Adams & Penny F. Adams to secure an indebtedness in the amount of $125,186.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

**1516 E 85TH PLACE, CHICAGO, IL 60619**

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

**2136 W 83RD STREET, CHICAGO, IL 60620**

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

**417 OGLESBY AVENUE, CALUMET CITY, IL 60409**

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument

recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

### 7922 S LUELLA AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

### 7925 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage recorded October 28, 2013 as Document No. 1330150006 made by EquityBuild, Inc. to unidentified mortgagees to secure an indebtedness in the amount of $129,160.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

### 7933 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and

assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

### 8030 S MARQUETTE AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

### 8104 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

### 8403 S ABERDEEN STREET, CHICAGO, IL 60620

Mortgage recorded August 7, 2013 as Document No. 1321956021 made by EquityBuild, Inc. to H Derrick LLC to secure an indebtedness in the amount of $124,200.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

### 8405 S MARQUETTE AVENUE, CHICAGO, IL 60617

Mortgage recorded September 25, 2013 as Document No. 1326850006 made by EquityBuild, Inc. to Manoj Donthineni to secure an indebtedness in the amount of $30,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

### 8529 S RHODES AVENUE, CHICAGO, IL 60619

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument

recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

### 8800 S ADA STREET, CHICAGO, IL 60620

Mortgage recorded September 25, 2013 as Document No. 1326850006 made by EquityBuild, Inc. to Peggy Christensen, Dennis McCoy, Gloria Woodley, EquityTrust Company Custodian FBO Karuna Voddi CESA 6.94% Undivided Interest, EquityTrust Company Custodian FBO Avery Maher CESA 4.87% Undivided Interest, and EquityTrust Company Custodian FBO Avery Maher CESA 4.87% Undivided Interest to secure an indebtedness in the amount of $144,040.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

### 9212 S PARNELL AVENUE, CHICAGO, IL 60620

Mortgage recorded January 23, 2013 as Document No. 1302356015 made by 9212 S Parnell Ave Associates to Vivek Pingili to secure an indebtedness in the amount of $130,212.66.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

**10012 S LASALLE AVENUE, CHICAGO, IL 60628**

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated July 26, 2013 and recorded August 7, 2013 as Document No. 1321956015 made by EquityBuild, Inc. to R2V2 Investments LLC, Sidney Glenn Willeford II, Jim McIntyre, and Ronald Chastain to secure an indebtedness in the amount of $127,198.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Financing statement reflecting EB South Chicago 2, LLC as debtor and Colony American Finance 2015-1, Ltd. as secured party recorded March 12, 2020 as Document No. 2007245084.

**11318 S CHURCH STREET, CHICAGO, IL 60643**

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, LTD by instruments recorded as Document Nos. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

**3213 S THROOP STREET, CHICAGO, IL 60608**

Mortgage recorded November 14, 2013 as Document No. 1331856026 made by EquityBuild, Inc. to iPlan Group, LLC FBO Jackie Rowe IRA and Leah Kalish to secure an indebtedness in the amount of $262,333.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, LTD by instruments recorded as Document Nos. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**3723 W 68TH PLACE, CHICAGO, IL 60629**

Mortgage recorded October 10, 2013 as Document No. 1328350017 made by EquityBuild, Inc. to iPlan IRA FBO Dennis McCoy, Equity Trust Company Custodian FBO Joan Shay Vinci IRA POA Michaela Sturhahn, iPlan IRA FBO Mario Flores, Brett Burnham, and John Martin to secure an indebtedness in the amount of $262,333.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

**406 E 87TH PLACE, CHICAGO, IL 60619**

Mortgage recorded July 30, 2013 as Document No. 1321156006 made by EquityBuild, Inc. to H Derrick LLC to secure an indebtedness in the amount of $163,166.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**61 E 92ND STREET, CHICAGO, IL 60619-7244**

Mortgage recorded December 2, 2013 as Document No. 1333656007 made by EquityBuild, Inc. to American Estate & Trust, LLC FBO Joan Jupfer's IRA c/o Lynn Kupfer's IRA to secure an indebtedness in the amount of $54,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 6554 S RHODES AVENUE, CHICAGO, IL 60637-3315

Mortgage recorded November 22, 2011 as Document No. 1132656007 made by EquityBuild, Inc. to Spectra Investments, LLC to secure an indebtedness in the amount of $140,500.

Mortgage recorded March 14, 2012 as Document No. 1207456025 made by CPJ Properties 5, LLC to Sark Investments, LLC to secure an indebtedness in the amount of $150,600.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

## 6825 S INDIANA AVENUE, CHICAGO, IL 60637

Mortgage recorded January 27, 2012 as Document No. 1202756022 made by CPJ Properties 4, LLC to Cannon Farms, LLC to secure an indebtedness in the amount of $144,375.

Mortgage recorded August 20, 2014 as Document No. 1423256026 made by CPJ Properties 4, LLC to Cannon Farms, LLC to secure an indebtedness in the amount of $144,375.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

## 7210 S VERNON AVENUE, CHICAGO, IL 60619

Mortgage recorded October 12, 2011 as Document No. 1128555055 made by EquityBuild, Inc. to Spectra Investments, LLC to secure an indebtedness in the amount of $136,000.

Mortgage recorded April 11, 2012 as Document No. 1210250093 made by CPJ Properties 6, LLC to Sark Investments, LLC to secure an indebtedness in the amount of $146,700.

Mortgage recorded August 20, 2014 as Document No. 1423256008 made by CPJ Properties 6, LLC to Sark Investments, LLC to secure an indebtedness in the amount of $146,700.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No4611 S Drexel, 6217 S Dorchester, 7024 S Paxton, 1422 East 68th, 2800 E 81st, 4750 S Indiana, 7840 S Yates. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

### 7712 S EUCLID AVENUE, CHICAGO, IL 60649

Mortgage recorded December 31, 2013 as Document No. 1336550018 made by EquityBuild, Inc. to Joe Kennedy and William Scutt to secure an indebtedness in the amount of $179,575.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

### 7953 S WOODLAWN AVENUE, CHICAGO, IL 60619

Mortgage recorded October 28, 2013 as Document No. 1330150004 made by EquityBuild, Inc. to Marlen Junck, Alton Motes, Goldman Financial Resources Inc., FFL Investments LLC, Dr Tiffany Margolin, Mark Young, Ronald Gussett, Blessing Strategies, LLC, Quantum Growth Holdings, and The Celia Tong Revocable Living Trust, dated December 22, 2011 to secure an indebtedness in the amount of $180,270.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**8107 S KINGSTON AVENUE, CHICAGO, IL 60617**

Mortgage recorded November 10, 2014 as Document No. 1431450031 made by EquityBuild, Inc. to JLO Enterprises, LLC, Clove, LLC and Frederick Alan James to secure an indebtedness in the amount of $149,695.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**8346 S CONSTANCE AVENUE, CHICAGO, IL 60617**

Mortgage recorded August 20, 2014 as Document No. 1423256046 made by EquityBuild, Inc. to unidentified mortgagees to secure an indebtedness in the amount of $143,117.94.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**8432 S ESSEX AVENUE, CHICAGO, IL 60617**

Mortgage recorded September 25, 2013 as Document No. 1326850030 made by EquityBuild, Inc. to Spectra Investments, LLC to secure an indebtedness in the amount of $139,794.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**8517 S VERNON AVENUE, CHICAGO, IL 60619**

Mortgage recorded December 31, 2013 as Document No. 1336550019 made by EquityBuild, Inc. to Hard Money Company, Eric Schultz, Joe Kennedy and William Scutt to secure an indebtedness in the amount of $168,463.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

**2129 W 71ST STREET, CHICAGO, IL 60636**

Mortgage recorded October 26, 2009 as Document No. 0929916078 made by Trevor J. Stokes to The Aldrich Company Employees Retirement Trust to secure an indebtedness in the amount of $111,240.

Mortgage recorded November 22, 2011 as Document No. 1132656031 made by EquityBuild, Inc. to The Aldrich Company Employees Retirement Trust to secure an indebtedness in the amount of $126,531.47.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

**9610 S WOODLAWN AVENUE, CHICAGO, IL 60628-1640**

Mortgage recorded June 2, 2011 as Document No. 1115350023 made by EquityBuild, Inc. to Equity Trust Company Custodian FBO William Lee Mullica Traditional IRA to secure an indebtedness in the amount of $86,500.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

**5437 S LAFLIN STREET, CHICAGO, IL 60609**

Mortgage recorded November 3, 2010 as Document No. 1030756055 made by Chad Johnstun to Michael Borgia to secure an indebtedness in the amount of $250,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

**6759 S INDIANA AVENUE, CHICAGO, IL 60637**

Mortgage recorded September 23, 2010 as Document No. 1026629013 made by Chad Johnstun to 6759 S Indiana Associates to secure an indebtedness in the amount of $90,000.

Mortgage recorded August 25, 2011 as Document No. 1123710088 made by Chad Johnstun to Robert and Elizabeth Conley to secure an indebtedness in the amount of $16,400.

Mortgage recorded August 20, 2014 as Document No. 1423256021 made by Chad Johnstun to 6759 S Indiana Associates to secure an indebtedness in the amount of $106,400.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

**1401 W 109TH PLACE, CHICAGO, IL 60643**

Mortgage recorded December 3, 2010 as Document No. 1033750058 made by Lyanne Naomi Iwamoto Terada to 1401 W. 109th Associates to secure an indebtedness in the amount of $115,487.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 15, 2017 and recorded October 5, 2017 as Document No. 1727806056 made by EB South Chicago 4, LLC to Corevest American Finance Lender LLC to secure an indebtedness in the amount of $2,426,250, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457106, assigned to CAF Term Borrower MS, LLC, by instrument recorded as Document No. 1802457107, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457108, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1802457109, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-2 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1802457110.

**310 E 50TH STREET, CHICAGO, IL 60615**

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 15, 2017 and recorded October 5, 2017 as Document No. 1727806056 made by EB South Chicago 4, LLC to Corevest American Finance Lender LLC to secure an indebtedness in the amount of $2,426,250, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457106, assigned to CAF Term Borrower MS, LLC, by instrument recorded as Document No. 1802457107, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457108, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1802457109, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-2 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1802457110.

**6807 S INDIANA AVENUE, CHICAGO, IL 60637**

Mortgage recorded August 9, 2012 as Document No. 1222229006 made by CPJ Properties 3, LLC to 6807 S Indiana Avenue Associates to secure an indebtedness in the amount of $145,000.

Mortgage recorded August 20, 2014 as Document No. 1423256029 made by CPJ Properties 3, LLC to 6807 S Indiana Avenue Associates to secure an indebtedness in the amount of $145,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 15, 2017 and recorded October 5, 2017 as Document No. 1727806056 made by EB South Chicago 4, LLC to Corevest American Finance Lender LLC to secure an indebtedness in the amount of $2,426,250, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457106, assigned to CAF Term Borrower MS, LLC, by instrument recorded as Document No. 1802457107, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457108, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1802457109, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-2 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1802457110.

**TAB L**

| Property Address | Zip Code | PIN | Valuation | Adj 01 | Credit Req | Adj 02 | Final | Pct | Allocation |
|---|---|---|---|---|---|---|---|---|---|
| 1414 E 62nd | 60637 | 20-14-415-007-0000 | $96,900 | | $35,000 | $35,000 | $61,900 | 1.38% | $55,224 |
| 1418 E 62nd | 60637 | 20-14-415-008-0000 | | | | | | | |
| 1017 W 102nd | 60643 | 25-08-427-046-0000 | $109,250 | | | | $109,250 | 2.44% | $97,468 |
| 1516 E 85th | 60619 | 20-35-411-019-0000 | $108,965 | | | | $108,965 | 2.43% | $97,213 |
| 2136 W 83rd | 60620 | 20-31-129-046-0000 | $108,300 | | | | $108,300 | 2.42% | $96,620 |
| 417 Oglesby | 60409 | 29-12-219-015-0000 | $111,150 | | | | $111,150 | 2.48% | $99,163 |
| 7922 S Luella | 60617 | 20-36-204-024-0000 | $150,100 | | | | $150,100 | 3.35% | $133,912 |
| 7925 S Kingston | 60617 | 21-31-103-013-0000 | $91,200 | | | | $91,200 | 2.03% | $81,364 |
| 7933 S Kingston | 60617 | 21-31-103-015-0000 | $102,600 | | | | $102,600 | 2.29% | $91,535 |
| 8030 S Marquette | 60617 | 21-31-113-050-0000 | $81,700 | | | | $81,700 | 1.82% | $72,889 |
| 8104 S Kingston | 60617 | 21-31-118-019-0000 | $159,600 | | | | $159,600 | 3.56% | $142,388 |
| 8403 S Aberdeen | 60620 | 20-32-410-002-0000 | $123,500 | | | | $123,500 | 2.75% | $110,181 |
| 8405 S Marquette | 60617 | 21-31-314-042-0000 | $127,300 | | | | $127,300 | 2.84% | $113,571 |
| 8529 S Rhodes | 60619 | 20-34-408-008-0000 | $152,000 | | | | $152,000 | 3.39% | $135,607 |
| 8800 S Ada | 60620 | 25-05-112-011-0000 | $147,250 | | | | $147,250 | 3.28% | $131,370 |
| 9212 S Parnell | 60620 | 25-04-312-056-0000 | $117,800 | | $40,000 | $10,000 | $107,800 | 2.40% | $96,174 |
| 10012 S LaSalle | 60628 | 25-09-412-025-0000 | $99,750 | | | | $99,750 | 2.22% | $88,992 |
| 11318 S Church | 60643 | 25-19-216-025-0000 | $142,120 | | | | $142,120 | 3.17% | $126,793 |
| 3213 S Throop | 60608 | 17-32-107-006-0000 | $149,625 | | | | $149,625 | 3.34% | $133,488 |
| 3723 W 68th | 60629 | 19-23-314-013-0000 | $144,400 | | | | $144,400 | 3.22% | $128,827 |
| 406 E 87th | 60619 | 25-03-200-027-0000 | $116,090 | | | | $116,090 | 2.59% | $103,570 |
| 61 E 92nd | 60619 | 25-03-308-024-0000 | $119,890 | | | | $119,890 | 2.67% | $106,960 |
| 6554 S Rhodes | 60637 | 20-22-218-039-0000 | $96,900 | | | | $96,900 | 2.16% | $86,450 |
| 6825 S Indiana | 60637 | 20-22-309-011-0000 | $149,150 | | | | $149,150 | 3.33% | $133,065 |
| 7210 S Vernon | 60619 | 20-27-208-019-0000 | $133,000 | $50,000 | $55,000 | $7,500 | $75,500 | 1.68% | $67,358 |
| 7712 S Euclid | 60649 | 20-25-322-021-0000 | $148,200 | | | | $148,200 | 3.31% | $132,217 |
| 7953 S Woodlawn | 60619 | 20-35-200-045-0000 | $149,150 | | | | $149,150 | 3.33% | $133,065 |
| 8107 S Kingston | 60617 | 21-31-119-003-0000 | $113,240 | | | | $113,240 | 2.53% | $101,027 |
| 8346 S Constance | 60617 | 20-36-304-054-0000 | $157,700 | | | | $157,700 | 3.52% | $140,693 |
| 8432 S Essex | 60617 | 21-31-309-031-0000 | $158,650 | | | | $158,650 | 3.54% | $141,540 |
| 8517 S Vernon | 60619 | 20-34-407-005-0000 | $149,150 | | | | $149,150 | 3.33% | $133,065 |
| 2129 W 71st | 60636 | 20-30-104-004-0000 | $73,720 | | | | $73,720 | 1.64% | $65,770 |
| 9610 S Woodlawn | 60628 | 25-11-108-045-0000 | $95,950 | | | | $95,950 | 2.14% | $85,602 |
| 5437 S Laflin | 60609 | 20-08-318-014,015 | $80,752 | | $35,000 | $30,000 | $50,752 | 1.13% | $45,279 |
| 6759 S Indiana | 60637 | 20-22-303-023-0000 | $111,625 | | | | $111,625 | 2.49% | $99,587 |
| 1401 W 109th | 60643 | 25-17-323-014-0000 | $80,656 | | $35,000 | $7,500 | $73,156 | 1.63% | $65,266 |
| 310 E 50th | 60615 | 20-10-116-018-0000 | $235,601 | | $70,000 | $10,000 | $225,601 | 5.03% | $201,271 |
| 6807 S Indiana | 60637 | 20-22-309-002-0000 | $140,600 | | | | $140,600 | 3.14% | $125,437 |
| | | | $4,633,534 | $50,000 | $270,000 | $100,000 | $4,483,534 | 100.00% | $4,000,000 |

*Note: The prospective purchaser demanded $275,000 in credits in respect of alleged latent defects, but submitted documentation estimating only $270,000 in repair costs.*

**TAB M**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) ) ) | |
| ) | **Civil Action No. 18-CV-5587** |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Hon. John Z. Lee** |
| **EQUITYBUILD, INC.,** ) | |
| **EQUITYBUILD FINANCE, LLC,** ) | |
| **JEROME H. COHEN, and** ) | **Magistrate Judge Young B. Kim** |
| **SHAUN D. COHEN,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER GRANTING THIRTEENTH MOTION TO CONFIRM THE
SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE
OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES**

WHEREAS, by Order Appointing Receiver, dated August 17, 2018 (Dkt. 16) this Court took exclusive jurisdiction and possession of the assets of all Receivership Defendants, which defendants included EB South Chicago 1 LLC, EB South Chicago 2 LLC, and EB South Chicago 3 LLC;

WHEREAS, by Order dated March 14, 2019 (Dkt. 290), the Court identified 6217-27 S. Dorchester LLC and EB South Chicago 4 LLC as additional Receivership Defendants;

WHEREAS, 6217-27 S. Dorchester LLC is the owner of record of the real property and improvements located at the commonly known addresses, permanent index numbers, and legal descriptions reflected on Tab A hereto;

WHEREAS, EB South Chicago 1 LLC is the owner of record of the real property and improvements located at the commonly known addresses, permanent index numbers, and legal descriptions reflected on Tab B hereto;

WHEREAS, EB South Chicago 2 LLC is the owner of record of the real property and improvements located at the commonly known addresses, permanent index numbers, and legal descriptions reflected on Tab C hereto;

WHEREAS, EB South Chicago 3 LLC is the owner of record of the real property and improvements located at the commonly known addresses, permanent index numbers, and legal descriptions reflected on Tab D hereto;

WHEREAS, EB South Chicago 4 LLC is the owner of record of the real property and improvements located at the commonly known addresses, permanent index numbers, and legal descriptions reflected on Tab E hereto;

WHEREAS, the Court finds that the sales price reflected in the Purchase And Sale Agreement, as amended by that certain Second Amendment To Purchase And Sale Agreement, pertaining to the conveyance of the portfolio of properties identified on Tabs A-E (collectively, the "Properties") is consistent with the fair market value of the Properties;

WHEREAS, Kevin B. Duff, as receiver ("Receiver") for the Receivership Defendants, filed a Thirteenth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances (the "Motion"); and

WHEREAS, the Court finds that the Receiver has given fair, adequate, and sufficient notice to all interested parties, including all mortgagees and other encumbrancers affected by the Motion;

NOW, THEREFORE, it is hereby ORDERED that:

1.      The Motion is GRANTED.

2.      1516 E 85th Pl Associates is a Receivership Defendant as defined in Paragraph 1 of the Order Appointing Receiver (Dkt. 16).

3.     The Receiver is authorized to sell the Properties free and clear of all mortgages and encumbrances identified on Tab F.

4.     The Receiver is hereby vested with full power and authority to execute any and all closing documents associated with the conveyances of the Properties, including, but not limited to, deeds, bills of sale, affidavits of title, and settlement statements.

5.     The Receiver shall allocate the proceeds from the sale and any non property-specific closing costs in accordance with the figures and percentages as set forth on Tab G. The proceeds from the sales of the Properties shall be held by the Receiver in separate subaccounts for which the Receiver shall maintain an accounting as to all sums deposited therein, with all mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the properties being sold.  The sums in the subaccounts shall not be available to pay operating expenses of the Receivership nor for any other expense or distribution, absent further order of Court.

Entered:

_____
The Honorable John Z. Lee

Date:_____

**TAB A**

**1414 E. 62ND PLACE, CHICAGO, IL 60637**
**20-14-415-007-0000**
LOT 15 AND THE WEST 10 FEET OF LOT 16 IN BLOCK 3 IN O.A. BOGUE'S SUBDIVISION OF THAT PART OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 14, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**1418 E. 62ND PLACE, CHICAGO, IL 60637**
**20-14-415-008-0000**
LOT 17 AND THE EAST 15 FEET OF LOT 16 IN BLOCK 3 IN O.A. BOGUE'S SUBDIVISION OF THAT PART OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 14, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**TAB B**

**1017 W. 102ND STREET, CHICAGO, IL 60643**
**25-08-427-046-0000**
LOT 7 IN BROWN'S RESUBDIVISION OF THE EAST 1/2 OF LOT 14 IN HITT'S SUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 8, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**1516 E. 85TH PLACE, CHICAGO, IL 60619**
**20-35-411-019-0000**
LOT 18 IN BLOCK 4 IN CEPEK'S SUBDIVISION, BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHEAST 1/4 (EXCEPT THE NORTH 1/2 OF THE NORTH 1/2 THEREOF) OF SECTION 35, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, INCLUDING VACATED STREETS THEREIN, IN COOK COUNTY, ILLINOIS.

**2136 W. 83RD STREET, CHICAGO, IL 60620**
**20-31-129-046-0000**
LOT 44 AND THE WEST 1/2 OF LOT 43 IN THE SUBDIVISION OF LOT 8 OF HUNTER'S SUBDIVISION OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**417 OGLESBY AVENUE, CALUMET CITY, IL 60409**
**29-12-219-015-0000**
LOT 16 IN BLOCK 4 IN SIBLEY BOULEVARD ADDITION TO CALUMET CITY, BEING A SUBDIVISION OF THE EAST OF THE SOUTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 12, TOWNSHIP 36 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7922 S. LUELLA AVENUE, CHICAGO, IL 60617**
**20-36-204-024-0000**
LOT 43 AND THE SOUTH 8-1/3 FEET OF LOT 44 IN BLOCK 4 IN RICHARDSON'S SUBDIVISION OF THE NORTHEAST 1/4 OF SECTION 36, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7925 S. KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-103-013-0000**
LOT 15 (EXCEPT THE NORTH 15 FEET THEREOF) AND THE NORTH 22 FEET OF LOT 16 IN BLOCK 1 IN 79TH STREET ADDITION TO CHELTEMHAM BEACH IN THE NORTHWEST 1/4 OF SECTION 31 TOWNSHIP 38 NORTH RANGE 14 EAST OF THE THIRD PRINCIPLA MERIDIAN IN COOK COUNTY, ILLINOIS.

**7933 S. KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-103-015-0000**
LOT 18 (EXCEPT THE NORTH 4 FEET THEREOF) AND THE NORTH 11 FEET OF LOT 19 IN BLOCK 1 IN 79TH STREET ADDITION TO CHELTEHAM BEACH, BEING A SUBDIVISION OF PART OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8030 S. MARQUETTE AVENUE, CHICAGO, IL 60617**
**21-31-113-050-0000**
LOT 13 AND THE NORTH 15 FEET OF LOT 14 IN BLOCK 10 IN ORELUP AND TAYLOR'S SUBDIVISION OF BLOCKS 9, 10 AND 11 IN PARTITION OF THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 AND THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8104 S KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-118-019-0000**
LOT 2 IN BLOCK 2, IN THE SUBDIVISION OF LOTS 1 TO 10, BOTH INCLUSIVE, IN CHARLES RINGER'S SOUTH SHORE ADDITION, BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF, TAKEN FOR WIDENING EAST 83RD STREET), IN COOK COUNTY, ILLINOIS.

**8403 S. ABERDEEN STREET, CHICAGO, IL 60620**
**20-32-410-002-0000**
LOT 47 IN DELANY'S SOUTH ENGLEWOOD SUBDIVISION OF THE WEST 1/2 OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 32 TOWNSHIP 38 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**8405 S. MARQUETTE AVENUE, CHICAGO, IL 60617**
**21-31-314-002-0000**
LOTS 45 AND 46 IN BLOCK 47 IN HILLS ADDITION TO SOUTH CHICAGO A SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 31 TOWNSHIP 38 NORTH RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**8529 S. RHODES AVENUE, CHICAGO, IL 60619**
**20-34-408-008-0000**
LOT 23 IN JOHN E. WHITE'S ADDITION TO CHATHAN FILES BEING A SUBDIVISION OF BLOCK 7 IN WARFIELD'S SUBDIVISION OF THE WEST 1/2 OF THE SOUTH EAST 1/4 OF SECTION 34 TOWNSHIP 38 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**8800 S. ADA STREET, CHICAGO, IL 60620**
**25-05-112-011-0000**
LOT 1 (EXCEPT THE SOUTH 20 FEET) IN BLOCK 5 IN BRAINERD'S SUBDIVISION OF BLOCKS 1 TO 8 AND 11 IN COLE'S SUBDIVISION OF THE EAST 1/2 OF THE NORTH WEST 1/4 OF SECTION 5 TOWNSHIP 37 NORTH RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**9212 S. PARNELL AVENUE, CHICAGO, IL 60620**
**25-04-312-056-0000**
LOT 6 AND THE NORTH 6-1/4 FEET OF LOT 7 IN BLOCK 11 IN BROUSE'S SUBDIVISION
OF THE NORTH 40 ACRES OF THE 95 ACRES OF THE WEST 110 ACRES OF THE
SOUTHWEST 1/4 OF SECTION 4 TOWNSHIP 37 NORTH RANGE 14 EAST OF THE THIRD
PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**TAB C**

**10012 S. LASALLE AVENUE, CHICAGO, IL 60628**
**25-09-412-025-0000**
LOT 161 IN S. M. BLOSS AND COMPANY'S SUBDIVISION OF THE WEST 1/2 OF BLOCKS 3, 12, 17 AND 26 AND THE EAST 1/2 OF BLOCKS 4, 11, 18 AND 25 IN FERNWOOD, A RESUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 9, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**11318 S. CHURCH STREET, CHICAGO, IL 60643**
**25-19-216-025-0000**
THE SOUTHERLY 5 FEET OF LOT 7 AND ALL OF LOT 8 IN BLOCK 75 IN WASHINGTON HEIGHTS IN THE NORTHEAST 1/4 OF SECTION 19, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**3213 S. THROOP STREET, CHICAGO, IL 60608**
**17-32-107-006-0000**
LOT 43 IN BLOCK 7 IN SPRINGER AND FOX'S ADDITION TO CHICAGO IN THE NORTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 32, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**3723 W. 68TH PLACE, CHICAGO, IL 60629**
**19-23-314-013-0000**
THE WEST 3 FEET OF LOT 9, ALL OF LOT 10 AND THE EAST 6 FEET OF LOT 11 IN BLOCK 4 IN PARADIS SUBDIVISION OF THE WEST 1/2 OF THE NORTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 23, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**406 E. 87TH PLACE, CHICAGO, IL 60619**
**25-03-200-027-0000**
THE WEST 9 FEET AND 9 INCHES OF LOT 45 AND ALL OF LOT 46 IN BLOCK 28 IN S. E. GROSS'S SUBDIVISION OF BLOCKS 27 TO 42 IN DAUPHIN PARK SECOND ADDITION, A SUBDIVISION OF THE WEST 1/2 IF THE NORTHEAST 1/4 OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**61 E. 92ND STREET, CHICAGO, IL 60619**
**25-03-308-024-0000**
LOT 26 IN BLOCK 2 IN SANGER'S SUBDIVISION OF THE NORTH ½ OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 3, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS.

**6554 S. RHODES AVENUE, CHICAGO, IL 60637**
**20-22-218-039-0000**
LOT 23 AND THE SOUTH 1 FOOT OF LOT 22 IN BLOCK 3 IN OAKWOOD DIVISION OF THE NORTH 1/2 OF THE SOUTH 1/2 OF THE NORTHEAST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**6825 S. INDIANA AVENUE, CHICAGO, IL 60637**
**20-22-309-011-0000**
THE NORTH 20 FEET OF LOT 43 AND THE SOUTH 10 FEET OF LOT 44 IN CORNELL'S SUBDIVISION BY FREER (RECEIVER) OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7210 S. VERNON AVENUE, CHICAGO, IL 60619**
**20-27-208-019-0000**
THE NORTH 1/2 OF LOT 3 IN BLOCK 2 IN LEE BROTHERS ADDITION TO PARK MANOR, A SUBDIVISION OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 27, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7712 S. EUCLID AVENUE, CHICAGO, IL 60649**
**20-25-322-021-0000**
LOT 5 IN BLOCK 18 ON SOUTHFIELD, BEING A SUBDIVISION OF BLOCKS 17, 18, 19, 22, 23, 24 AND 26 TO 32 BOTH INCLUSIVE IN JAMES STINSON'S SUBDIVISION OF THE EAST GRAND CROSSING IN THE SOUTHWEST 1/4 OF SECTION 25, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**7953 S. WOODLAWN AVENUE, CHICAGO, IL 60619**
**20-35-200-045-0000**
LOT 26 IN BLOCK 107 IN CORNELL, A SUBDIVISION OF THE WEST 1/2 OF SECTION 26, OF THE SOUTHEAST 1/4 OF SECTION 26 (EXCEPT THE EAST 1/2 OF THE NORTHEAST 1/4 OF SAID SOUTHEAST 1/4), THE NORTH 1/2 OF THE NORTHWEST 1/4 OF THE SOUTH 1/2 OF THE NORTHWEST 1/4, WEST OF THE ILLINOIS CENTRAL RAILROAD, AND THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF SECTION 35, ALL IN TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8107 S. KINGSTON AVENUE, CHICAGO, IL 60617**
**21-31-119-003-0000**
LOT 36 IN BLOCK 1 IN THE SUBDIVISION OF LOTS 1 TO 10 BOTH INCLUSIVE IN CHARLES RINGERS' SOUTH SHORE ADDITION, A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE SOUTH 33 FEET THEREOF TAKEN FOR WIDENING EAST 83RD STREET).

**8346 S. CONSTANCE AVENUE, CHICAGO, IL 60617**
**20-36-304-054-0000**
THE SOUTH 5 FEET OF LOT 18 AND ALL OF LOT 19 IN BLOCK 5 IN CONSTANCE, A SUBDIVISION BY WALLACE C. CLEMENT OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 36, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8432 S. ESSEX AVENUE, CHICAGO, IL 60617**
**21-31-309-031-0000**
LOT 19, IN BLOCK 42 IN J.E. GRASSIE'S RESUBDIVISION OF LOTS 12 TO 37 BOTH INCLUSIVE IN BLOCK 40, LOTS 3 TO 20 BOTH INCLUSIVE AND LOTS 33 TO 48 BOTH INCLUSIVE IN BLOCK 42, ALL IN HILL'S ADDITION TO SOUTH CHICAGO BEING A SUBDIVISION OF THE SOUTHWEST 1/4 OF SECTION 31, TOWNSHIP 38 NORTH, RANGE 15, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**8517 S. VERNON AVENUE, CHICAGO, IL 60619**
**20-34-407-005-0000**
LOT 26 IN BLOCK 8 IN J. E. WHITE'S FIRST CHATHAM FIELDS ADDITION, A SUBDIVISION OF BLOCK 8 OF E. A. WARFIELD'S SUBDIVISION OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 34, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINICPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**TAB D**

**2129 W. 71ST STREET, CHICAGO, IL 60636**
**20-30-104-004-0000**
LOT 12 IN BLOCK 3 IN HERRONS SUBDIVISION OF 50 ACRES IN THE EAST 1/2 OF THE NORTHWEST 1/4 OF SECTION 30, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINICPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**9610 S. WOODLAWN AVENUE, CHICAGO, IL 60628**
**25-11-108-045-0000**
THE NORTH 20 FEET OF LOT 28 AND THE SOUTH 25 FEET OF THE LOT 29 IN BLOCK 26 IN COTTAGE GROVE HEIGHTS ADDITION, BEING A SUBDIVISION OF PART OF THE NORTH 1/2 OF SECTION 11, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERDIDIAN, IN COOK COUNTY, ILLINOIS.

**5437 S. LAFLIN STREET, CHICAGO, IL 60609**
**20-08-318-014-0000 AND 20-08-318-015-000**
LOT 30 AND THE NORTH 1/2 OF LOT 29 IN BLOCK 2 IN THE SUBDIVISION OF THE WEST 1/2 OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 8, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINICPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**6759 S. INDIANA AVENUE, CHICAGO, IL 60637**
**20-22-303-023-0000**
LOT 27 IN MCKAY AND PAGUE'S ADDITION, BEING A SUBDIVISION OF BLOCK 10 IN THE SUBDIVISION OF L.C. PAINE FREER, RECEIVER OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**TAB E**

**1401 W. 109TH PLACE, CHICAGO, IL 60643**
**25-17-323-014-0000**
LOT 128 IN E.A. CUMMINGS AND COMPANY'S ADDITION TO MORGAN PARK IN THE SOUTHWEST 1/4 OF SECTION 17, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**310 E 50TH STREET, CHICAGO, IL 60615**
**20-10-116-018-0000**
LOT 2 IN WALTER AND JOHNSON'S SUBDIVISION OF LOTS 7 AND 8 IN BLOCK 2 IN HARDINS SUBDIVISION OF THE EAST 1/2 OF THE SOUTH 1/2 OF THE NORTH 1/2 OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 10, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**6807 S. INDIANA AVENUE, CHICAGO, IL 60637**
**20-22-309-002-0000**
THE NORTH 15 FEET OF LOT 50 AND THE SOUTH 15 FEET OF LOT 51 IN CORNELL'S SUBDIVISION OF BLOCK 14 OF A SUBDIVISION OF L.C.P. FREER (RECEIVER) BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 18 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**TAB F**

**1414 E 62ND PLACE, CHICAGO, IL 60637**
**1418 E 62ND PLACE, CHICAGO, IL 60637**

Mortgage recorded June 23, 2017 as Document No. 1717413025 made by 6217-27 S. Dorchester, LLC to Arman Kale Heaton and Natoshia Lamborn Heaton, Blue Mountain Ventures (SID IRA), Concord Management LLC, Conor Benson King, Cree Capital Ventures, LLC, David M. Harris, Duane Younq, Duke E. Heger and Viviana Heger, Erwin J. Page Trust, Fredric R. Gottlieb Revocable Trust, DTD 7/31/08, Girl Cat Capital West LLC, Hillside Fund LLC, iPlanGroup Agent for Custodian FBO Elizabeth Zeng IRA, iPlanGroup Agent For Custodian FBO Gina Meyer Roth IRA, iPlanGroup Agent for Custodian FBO Laura Dirnberger Roth IRA, iPlanGroup Agent for Custodian FBO Lyle J Swiney IRA, iPlanGroup Agent for Custodian FBO Michael Dirnberger Roth IRA, iPlanGroup Agent for Custodian FBO Michelle Grimes IRA #3301097, IRA Services Trust Company CFBO Linda Lipschultz, IRA, IRA Services Trust Company CFBO Steven Lipschultz IRA, Jerome B. Shaffer Trust, JN Investment Trust, Joe Siracusa, Karl R. DeKlotz, Kevin Randall, Linda Marie Lipschultz & Steven Charles Lipschultz Trust FBO LML TRUST UA APR 08 2016, Madison Trust Company FBO Ernest Marcus M1612087, Matthew Hutchings, MidAtlantic IRA, LLC FBO Charles McEvoy IRA, Mountain West IRA, Inc. FBO Rachael Clark, Nathan and/or Brandi Hennefer, Next Generation Trust Services FBO Mark Kapsky IRA 2396, Next Generation Trust Services FBO Irene B. Kapsky FFBO Mark S. Kapsky IRA 3207, Optima Property Solutions. LLC, Pacific Ocean Services, Inc., Pat Desantis, Paul N. Wilmesmeier, PNW Investments, LLC, Quest IRA Inc. FBO Rebeca E. Savory-Romero ROTH IRA # 15528-21, R.D. Meredith General Contractors, LLC 401K Plan, R2V2 Investments LLC, REAP, LLC, Reymone Randall, Russell & Uschi Waite, Scott H. Eaton, Self Directed IRA Services Inc. FBO Gary Wayne Williams Acct #100010381, Shankar Thiruppathi, Shengjie Li and Yuye Xu, Steven Roche, Sunwest Trust c/f Ann Marie Shuster, IRA Acct. #1712719, Sunwest Trust Inc. FBO John B. Allred IRA (Acct #1612618), The Falkowitz Group Retirement Trust, Timothy Sharp, Top Mark Home Solutions Inc., Wisemove Properties, LLC, and Xiaoqing Chen to secure an indebtedness in the amount of $3,650,000.

**1017 W 102ND STREET, CHICAGO, IL 60643**

Mortgage recorded August 7, 2013 as Document No. 1321956023 made by EquityBuild, Inc. to Spectra Investments LLC and David A. Adams & Penny F. Adams to secure an indebtedness in the amount of $125,186.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned

to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 1516 E 85TH PLACE, CHICAGO, IL 60619

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229032 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 2136 W 83RD STREET, CHICAGO, IL 60620

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 417 OGLESBY AVENUE, CALUMET CITY, IL 60409

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4,

2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 7922 S LUELLA AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 7925 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage recorded October 28, 2013 as Document No. 1330150006 made by EquityBuild, Inc. to unidentified mortgagees to secure an indebtedness in the amount of $129,160.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as

Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 7933 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 8030 S MARQUETTE AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 8104 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded

March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 8403 S ABERDEEN STREET, CHICAGO, IL 60620

Mortgage recorded August 7, 2013 as Document No. 1321956021 made by EquityBuild, Inc. to H Derrick LLC to secure an indebtedness in the amount of $124,200.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229038 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded March 14, 2016 as Document No. 1607457176, assigned to CAF Sub REIT, Inc. by instrument recorded March 14, 2016 as Document No. 1607457177, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 14, 2016 as Document No. 1607457178.

Financing statement reflecting EB South Chicago 1, LLC, as debtor, and Colony American Finance Lender, LLC, as secured party, recorded January 12, 2015 as Document No. 1501229040, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156141, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156142, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded March 21, 2016 as Document No. 1608156143, with continuation statement recorded July 14, 2019 as Document No. 1920516192.

## 8405 S MARQUETTE AVENUE, CHICAGO, IL 60617

Mortgage recorded September 25, 2013 as Document No. 1326850006 made by EquityBuild, Inc. to Manoj Donthineni to secure an indebtedness in the amount of $30,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term

Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 8529 S RHODES AVENUE, CHICAGO, IL 60619

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 8800 S ADA STREET, CHICAGO, IL 60620

Mortgage recorded September 25, 2013 as Document No. 1326850006 made by EquityBuild, Inc. to Peggy Christensen, Dennis McCoy, Gloria Woodley, EquityTrust Company Custodian FBO Karuna Voddi CESA 6.94% Undivided Interest, EquityTrust Company Custodian FBO Avery Maher CESA 4.87% Undivided Interest, and EquityTrust Company Custodian FBO Avery Maher CESA 4.87% Undivided Interest to secure an indebtedness in the amount of $144,040.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016

as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 9212 S PARNELL AVENUE, CHICAGO, IL 60620

Mortgage recorded January 23, 2013 as Document No. 1302356015 made by 9212 S Parnell Ave Associates to Vivek Pingili to secure an indebtedness in the amount of $130,212.66.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 22, 2014 and recorded January 12, 2015 as Document No. 1501229039 made by EB South Chicago 1, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,498,000, assigned to CAF Term Borrower 1, LLC by instrument recorded August 4, 2015 as Document No. 1521639001, assigned to CAF Sub REIT, Inc. by instrument recorded December 1, 2015 as Document No. 1533508137, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded December 1, 2015 as Document No. 1533508138.

Security interest of Colony American Finance Lender, LLC, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 1, LLC as debtor and recorded January 12, 2015 as Document No. 1501229041, assigned to CAF Term Borrower 1, LLC by instrument recorded March 21, 2016 as Document No. 1608156144, assigned to CAF Sub REIT, Inc. by instrument recorded March 21, 2016 as Document No. 1608156145, and assigned to Colony American Finance 2015-1, Ltd., by instrument recorded March 21, 2016 as Document No. 1608156146, with continuation statement recorded July 24, 2019 as Document No. 1920516191.

## 10012 S LASALLE AVENUE, CHICAGO, IL 60628

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated July 26, 2013 and recorded August 7, 2013 as Document No. 1321956015 made by EquityBuild, Inc. to R2V2 Investments LLC, Sidney Glenn Willeford II, Jim McIntyre, and Ronald Chastain to secure an indebtedness in the amount of $127,198.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Financing statement reflecting EB South Chicago 2, LLC as debtor and Colony American Finance 2015-1, Ltd. as secured party recorded March 12, 2020 as Document No. 2007245084.

## 11318 S CHURCH STREET, CHICAGO, IL 60643

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of

$1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, LTD by instruments recorded as Document Nos. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

### 3213 S THROOP STREET, CHICAGO, IL 60608

Mortgage recorded November 14, 2013 as Document No. 1331856026 made by EquityBuild, Inc. to iPlan Group, LLC FBO Jackie Rowe IRA and Leah Kalish to secure an indebtedness in the amount of $262,333.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, LTD by instruments recorded as Document Nos. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

### 3723 W 68TH PLACE, CHICAGO, IL 60629

Mortgage recorded October 10, 2013 as Document No. 1328350017 made by EquityBuild, Inc. to iPlan IRA FBO Dennis McCoy, Equity Trust Company Custodian FBO Joan Shay Vinci IRA POA Michaela Sturhahn, iPlan IRA FBO Mario Flores, Brett Burnham, and John Martin to secure an indebtedness in the amount of $262,333.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

## 406 E 87TH PLACE, CHICAGO, IL 60619

Mortgage recorded July 30, 2013 as Document No. 1321156006 made by EquityBuild, Inc. to H Derrick LLC to secure an indebtedness in the amount of $163,166.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 61 E 92ND STREET, CHICAGO, IL 60619-7244

Mortgage recorded December 2, 2013 as Document No. 1333656007 made by EquityBuild, Inc. to American Estate & Trust, LLC FBO Joan Jupfer's IRA c/o Lynn Kupfer's IRA to secure an indebtedness in the amount of $54,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, and assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 6554 S RHODES AVENUE, CHICAGO, IL 60637-3315

Mortgage recorded November 22, 2011 as Document No. 1132656007 made by EquityBuild, Inc. to Spectra Investments, LLC to secure an indebtedness in the amount of $140,500.

Mortgage recorded March 14, 2012 as Document No. 1207456025 made by CPJ Properties 5, LLC to Sark Investments, LLC to secure an indebtedness in the amount of $150,600.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No.

1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

## 6825 S INDIANA AVENUE, CHICAGO, IL 60637

Mortgage recorded January 27, 2012 as Document No. 1202756022 made by CPJ Properties 4, LLC to Cannon Farms, LLC to secure an indebtedness in the amount of $144,375.

Mortgage recorded August 20, 2014 as Document No. 1423256026 made by CPJ Properties 4, LLC to Cannon Farms, LLC to secure an indebtedness in the amount of $144,375.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

## 7210 S VERNON AVENUE, CHICAGO, IL 60619

Mortgage recorded October 12, 2011 as Document No. 1128555055 made by EquityBuild, Inc. to Spectra Investments, LLC to secure an indebtedness in the amount of $136,000.

Mortgage recorded April 11, 2012 as Document No. 1210250093 made by CPJ Properties 6, LLC to Sark Investments, LLC to secure an indebtedness in the amount of $146,700.

Mortgage recorded August 20, 2014 as Document No. 1423256008 made by CPJ Properties 6, LLC to Sark Investments, LLC to secure an indebtedness in the amount of $146,700.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No4611 S Drexel, 6217 S Dorchester, 7024 S Paxton, 1422 East 68th, 2800 E 81st, 4750 S Indiana, 7840 S Yates. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245084.

## 7712 S EUCLID AVENUE, CHICAGO, IL 60649

Mortgage recorded December 31, 2013 as Document No. 1336550018 made by EquityBuild, Inc. to Joe Kennedy and William Scutt to secure an indebtedness in the amount of $179,575.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 7953 S WOODLAWN AVENUE, CHICAGO, IL 60619

Mortgage recorded October 28, 2013 as Document No. 1330150004 made by EquityBuild, Inc. to Marlen Junck, Alton Motes, Goldman Financial Resources Inc., FFL Investments LLC, Dr Tiffany Margolin, Mark Young, Ronald Gussett, Blessing Strategies, LLC, Quantum Growth Holdings, and The Celia Tong Revocable Living Trust, dated December 22, 2011 to secure an indebtedness in the amount of $180,270.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 8107 S KINGSTON AVENUE, CHICAGO, IL 60617

Mortgage recorded November 10, 2014 as Document No. 1431450031 made by EquityBuild, Inc. to JLO Enterprises, LLC, Clove, LLC and Frederick Alan James to secure an indebtedness in the amount of $149,695.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 8346 S CONSTANCE AVENUE, CHICAGO, IL 60617

Mortgage recorded August 20, 2014 as Document No. 1423256046 made by EquityBuild, Inc. to unidentified mortgagees to secure an indebtedness in the amount of $143,117.94.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334064 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1525155188, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556099, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556100.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 8432 S ESSEX AVENUE, CHICAGO, IL 60617

Mortgage recorded September 25, 2013 as Document No. 1326850030 made by EquityBuild, Inc. to Spectra Investments, LLC to secure an indebtedness in the amount of $139,794.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 8517 S VERNON AVENUE, CHICAGO, IL 60619

Mortgage recorded December 31, 2013 as Document No. 1336550019 made by EquityBuild, Inc. to Hard Money Company, Eric Schultz, Joe Kennedy and William Scutt to secure an indebtedness in the amount of $168,463.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 9, 2015 and recorded August 31, 2015 as Document No. 1524334065 made by EB South Chicago 2 LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,706,900, assigned to CAF Term Borrower 1, LLC by instrument recorded as Document No. 1527339039, assigned to CAF Sub REIT, Inc. by instrument recorded as Document No. 1533556103, and assigned to Colony American Finance 2015-1, Ltd. by instrument recorded as Document No. 1533556104.

Security interest of Colony American Finance 2015-1, Ltd, secured party, in certain described chattels on the land, as disclosed by financing statement naming EB South Chicago 2, LLC as debtor and recorded March 12, 2020 as Document No. 2007245078.

## 2129 W 71ST STREET, CHICAGO, IL 60636

Mortgage recorded October 26, 2009 as Document No. 0929916078 made by Trevor J. Stokes to The Aldrich Company Employees Retirement Trust to secure an indebtedness in the amount of $111,240.

Mortgage recorded November 22, 2011 as Document No. 1132656031 made by EquityBuild, Inc. to The Aldrich Company Employees Retirement Trust to secure an indebtedness in the amount of $126,531.47.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

## 9610 S WOODLAWN AVENUE, CHICAGO, IL 60628-1640

Mortgage recorded June 2, 2011 as Document No. 1115350023 made by EquityBuild, Inc. to Equity Trust Company Custodian FBO William Lee Mullica Traditional IRA to secure an indebtedness in the amount of $86,500.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document

No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

## 5437 S LAFLIN STREET, CHICAGO, IL 60609

Mortgage recorded November 3, 2010 as Document No. 1030756055 made by Chad Johnstun to Michael Borgia to secure an indebtedness in the amount of $250,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

## 6759 S INDIANA AVENUE, CHICAGO, IL 60637

Mortgage recorded September 23, 2010 as Document No. 1026629013 made by Chad Johnstun to 6759 S Indiana Associates to secure an indebtedness in the amount of $90,000.

Mortgage recorded August 25, 2011 as Document No. 1123710088 made by Chad Johnstun to Robert and Elizabeth Conley to secure an indebtedness in the amount of $16,400.

Mortgage recorded August 20, 2014 as Document No. 1423256021 made by Chad Johnstun to 6759 S Indiana Associates to secure an indebtedness in the amount of $106,400.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 26, 2017 and recorded June 28, 2017 as Document No. 1717922020 made by EB South Chicago 3, LLC to Colony American Finance Lender, LLC to secure an indebtedness in the amount of $1,491,000, assigned to CAF Term Borrower MS, LLC by instrument recorded as Document No. 1727117011, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1736315119, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1736315120, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1736315121.

## 1401 W 109TH PLACE, CHICAGO, IL 60643

Mortgage recorded December 3, 2010 as Document No. 1033750058 made by Lyanne Naomi Iwamoto Terada to 1401 W. 109th Associates to secure an indebtedness in the amount of $115,487.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 15, 2017 and recorded October 5, 2017 as Document No. 1727806056 made by EB South Chicago 4, LLC to Corevest American Finance Lender LLC to secure an indebtedness in the amount of $2,426,250, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457106, assigned to CAF Term Borrower MS, LLC, by instrument recorded as Document No. 1802457107, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457108, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1802457109, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-2 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1802457110.

## 310 E 50TH STREET, CHICAGO, IL 60615

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 15, 2017 and recorded October 5, 2017 as Document No. 1727806056 made by EB South Chicago 4, LLC to Corevest American Finance Lender LLC to secure an indebtedness in the amount of $2,426,250, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457106, assigned to CAF Term Borrower MS, LLC, by instrument recorded as Document No. 1802457107, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457108, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1802457109, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-2 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1802457110.

## 6807 S INDIANA AVENUE, CHICAGO, IL 60637

Mortgage recorded August 9, 2012 as Document No. 1222229006 made by CPJ Properties 3, LLC to 6807 S Indiana Avenue Associates to secure an indebtedness in the amount of $145,000.

Mortgage recorded August 20, 2014 as Document No. 1423256029 made by CPJ Properties 3, LLC to 6807 S Indiana Avenue Associates to secure an indebtedness in the amount of $145,000.

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 15, 2017 and recorded October 5, 2017 as Document No. 1727806056 made by EB South Chicago 4, LLC to Corevest American Finance Lender LLC to secure an indebtedness in the amount of $2,426,250, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457106, assigned to CAF Term Borrower MS, LLC, by instrument recorded as Document No. 1802457107, assigned to CF Corevest Purchaser LLC by instrument recorded as Document No. 1802457108, assigned to Corevest American Finance Depositor LLC by instrument recorded as Document No. 1802457109, and assigned to Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of Corevest American Finance 2017-2 Trust Mortgage Pass-Through Certificates by instrument recorded as Document No. 1802457110.

**TAB G**

| Property Address | Zip Code | PIN | Pct | Allocation |
|---|---|---|---|---|
| 1414 E 62nd | 60637 | 20-14-415-007-0000 | 1.38% | $55,224 |
| 1418 E 62nd | 60637 | 20-14-415-008-0000 | | |
| 1017 W 102nd | 60643 | 25-08-427-046-0000 | 2.44% | $97,468 |
| 1516 E 85th | 60619 | 20-35-411-019-0000 | 2.43% | $97,213 |
| 2136 W 83rd | 60620 | 20-31-129-046-0000 | 2.42% | $96,620 |
| 417 Oglesby | 60409 | 29-12-219-015-0000 | 2.48% | $99,163 |
| 7922 S Luella | 60617 | 20-36-204-024-0000 | 3.35% | $133,912 |
| 7925 S Kingston | 60617 | 21-31-103-013-0000 | 2.03% | $81,364 |
| 7933 S Kingston | 60617 | 21-31-103-015-0000 | 2.29% | $91,535 |
| 8030 S Marquette | 60617 | 21-31-113-050-0000 | 1.82% | $72,889 |
| 8104 S Kingston | 60617 | 21-31-118-019-0000 | 3.56% | $142,388 |
| 8403 S Aberdeen | 60620 | 20-32-410-002-0000 | 2.75% | $110,181 |
| 8405 S Marquette | 60617 | 21-31-314-002-0000 | 2.84% | $113,571 |
| 8529 S Rhodes | 60619 | 20-34-408-008-0000 | 3.39% | $135,607 |
| 8800 S Ada | 60620 | 25-05-112-011-0000 | 3.28% | $131,370 |
| 9212 S Parnell | 60620 | 25-04-312-056-0000 | 2.40% | $96,174 |
| 10012 S LaSalle | 60628 | 25-09-412-025-0000 | 2.22% | $88,992 |
| 11318 S Church | 60643 | 25-19-216-025-0000 | 3.17% | $126,793 |
| 3213 S Throop | 60608 | 17-32-107-006-0000 | 3.34% | $133,488 |
| 3723 W 68th | 60629 | 19-23-314-013-0000 | 3.22% | $128,827 |
| 406 E 87th | 60619 | 25-03-200-027-0000 | 2.59% | $103,570 |
| 61 E 92nd | 60619 | 25-03-308-024-0000 | 2.67% | $106,960 |
| 6554 S Rhodes | 60637 | 20-22-218-039-0000 | 2.16% | $86,450 |
| 6825 S Indiana | 60637 | 20-22-309-011-0000 | 3.33% | $133,065 |
| 7210 S Vernon | 60619 | 20-27-208-019-0000 | 1.68% | $67,358 |
| 7712 S Euclid | 60649 | 20-25-322-021-0000 | 3.31% | $132,217 |
| 7953 S Woodlawn | 60619 | 20-35-200-045-0000 | 3.33% | $133,065 |
| 8107 S Kingston | 60617 | 21-31-119-003-0000 | 2.53% | $101,027 |
| 8346 S Constance | 60617 | 20-36-304-054-0000 | 3.52% | $140,693 |
| 8432 S Essex | 60617 | 21-31-309-031-0000 | 3.54% | $141,540 |
| 8517 S Vernon | 60619 | 20-34-407-005-0000 | 3.33% | $133,065 |
| 2129 W 71st | 60636 | 20-30-104-004-0000 | 1.64% | $65,770 |
| 9610 S Woodlawn | 60628 | 25-11-108-045-0000 | 2.14% | $85,602 |
| 5437 S Laflin | 60609 | 20-08-318-014,015 | 1.13% | $45,279 |
| 6759 S Indiana | 60637 | 20-22-303-023-0000 | 2.49% | $99,587 |
| 1401 W 109th | 60643 | 25-17-323-014-0000 | 1.63% | $65,266 |
| 310 E 50th | 60615 | 20-10-116-018-0000 | 5.03% | $201,271 |
| 6807 S Indiana | 60637 | 20-22-309-002-0000 | 3.14% | $125,437 |
| | | | 100.00% | $4,000,000 |