UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:18-cv-5587 |
| v. | |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | Hon. John Z. Lee |
| Defendants. | |

**OBJECTION OF SABAL TL1, LLC TO RECEIVER'S TWELFTH MOTION TO CONFIRM SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES**

Sabal TL1, LLC ("Lender") respectfully submits this Objection to the Receiver's Twelfth Motion to Confirm Sale of Certain Real Estate and for the Avoidance of Certain Mortgages, Liens, Claims, and Encumbrances [Dkt. 962] (the "Motion"), and in support states as follows:

**BACKGROUND**

On August 15, 2018, the U.S. Securities and Exchange Commission (the "SEC") filed a securities fraud complaint against EquityBuild, Inc., Equitybuild Finance, LLC, Jerome Cohen, and Shaun Cohen (collectively, "Receivership Defendants"). On August 17, 2018, the Court appointed Kevin B. Duff as the equity receiver ("Receiver") over the estates of the Receivership Defendants ("Receivership Estates") ("Receiver Order") (Dkt. 16). The Receiver proposes to sell a multifamily property located at 638-40 North Avers Avenue, Chicago, Illinois ("Property") as outlined in the Motion. The Property is the subject of a duly perfected security interest by the Lender. For the following reasons, the Motion must be denied.

1

**ARGUMENT**

**I.      THE RECEIVER HAS FAILED TO SATISFY HIS BURDEN AND HAS FAILED TO ACT WITH DUE REGARD TO THE REALIZATION OF THE TRUE AND PROPER VALUE OF THE PROPERTY.**

The proposed sale is based on a flawed and incomplete sale and bidding process and the Receiver has failed to meet his evidentiary burden of showing why the accepted bid is the highest and best offer and why it is in the best interest of the estate as required by the Receiver Order. The proposed sale is based on a sale process that occurred over one and a half years ago. (Mot., ¶¶12-14). The Receiver has not evidenced how or why the proposed bid is the best offer.

In July 2019, the Receiver and his broker executed a marketing and bid process to solicit bids for the Property. Bids were submitted by August 14, 2019. Lender was the highest bidder via a credit bid, which was accepted by the Receiver. A fire occurred at the Property in November 2019 after Lender submitted its credit bid. Lender terminated its credit bid in February 2021 as permitted under the purchase and sale agreement. During the 15-month period of November 2019-February 2021, the Receiver and Lender worked together to gather information related to the insurance claims related to the fire. After a series of significant delays in getting this information, Lender was provided sufficient information in February 2021 and ultimately decided to terminate the credit bid.

After termination of the credit bid, the Receiver and its broker did not remarket the Property for sale. Instead, the Receiver's broker contacted prospective purchases that submitted bids for the Property over a year and a half earlier in August 2019. (Mot., ¶22; Baasch Aff., ¶¶13-14). No effort was made to locate new or additional prospective purchasers.[1] The Receiver cites Paragraph

---

[1] The Motion makes a vague reference to "others that recently expressed interest." There is no detail on who these parties are, how they became aware of the property, or their relationship to the parties. In any event, no new marketing was undertaken by the Receiver or broker.

2

38 of the Receiver Order ("Receiver Order") as grounds for the contemplated sale, noting he is authorized to sell "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." Motion, ¶4. However, the Receiver has not met his evidentiary burden. The real estate market has undergone significant changes since August 2019. The Receiver should have remarketed the Property to try to garner new and potentially higher bids. Instead, the Receiver has limited to the pool of bidders to only bidders from August 2019. Indeed, it is in the best interest of the Receivership Estate to try to locate as many interested parties as possible as this will drive competitive bidding. Because the Receiver fails to meet his burden, the Motion should be denied.

## II. THE RECEIVER MAY NOT SELL THE PROPERTY FREE AND CLEAR WHERE NO EQUITY IS OBTAINED FOR THE RECEIVERSHIP ESTATE.

Lender, as well as other parties, has submitted a proof a claim related to Lender's lien on the Property. Lender believes it has a first priority lien on the Property. The Motion seeks to sell the Property "free and clear" with the Lender's lien attaching to the sale proceeds. Motion, pp. 5-8. As the District Court for the Northern District of Illinois has already conclusively held, a sale may not be approved where no equity beyond the secured indebtedness is generated for the estate. *See Pennant Mgmt., Inc. v. First Farmers Fin.*, LLC, 14-CV-7581, 2015 WL 4511337, at *4-5 (N.D. Ill. July 24, 2015). The sale of the Property will not generate any equity. To date, the Receiver has neither objected to Lender's proofs of claims nor sought to avoid any of the parties' liens. In fact, no party in this case has objected to Lender's proof of claim. As such, no basis for disallowance or ignoring Lender's lien currently exits.

Lender's Objection is squarely on point with the Northern District of Illinois' *Pennant* decision. In *Pennant*, federal receivers sought to sell certain commercial hospitality properties

3

"free and clear of liens, claims, and encumbrances" with such liens, claims, and encumbrances "attaching to the proceeds of the sale." *Pennant* at *2. *Pennant* expressly rejected sales that did not satisfy all secured liens, absent a consensual agreement by the impacted parties:

> A leading treatise on receiverships states as follows with respect to whether a court should permit a receiver to sell real property free from liens:
>
>> In a sale free from liens, the rights of the parties who are lienholders must be preserved and transferred from the property sold to the proceeds of the sale, with the same rank and dignity which such rights or liens bore to the original property.
>>
>> Persons who have an interest in the res, and creditors who are secured by a lien or mortgage on the res, cannot have their interests, liens or rights in the res or its proceeds cut off or foreclosed without being properly notified and summoned to appear in the receivership court for that purpose ...
>>
>> **<u>The property should not be sold free of liens unless it is made to appear that there is a reasonable prospect that a surplus will be left for general creditors or, in other words, that a substantial equity is to be preserved.</u>**

*Id.* at *4-5. (quoting 2 Clark on Receivers (3d ed. 1959) § 500(b)) (bold and underling added). Lender has not consensually agreed to the sale.

The Seventh Circuit previously espoused the same view: "The Seventh Circuit has also held, albeit in the bankruptcy context, that '[a]s a general rule," a court "should not order property sold 'free and clear of' liens unless the court is satisfied that the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the ... estate.'" *Id.* at *5 (quoting *Matter of Riverside Inv. P'ship,* 674 F.2d 634, 640 (7th Cir. 1982)). This view was reiterated again by the Northern District in its subsequent *Pennant* decision. *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 5180678, at *4–5 (N.D. Ill. Sept. 4, 2015). No such "substantial equity" – or any equity – for that matter— is preserved for the Receivership Estate by the sale of the Property. *Pennant*, 2015 WL 4511337 at *6; *Pennant*, 2015 WL 5180678 at *5.

4

Other jurisdictions in cases involving SEC receivers are in accord. Indeed, a case that is exactly on point is the *SEC v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271 (D. Utah 2009). In *Madison*, the District Court concluded that the SEC Receiver may <u>not</u> keep a commercial real estate property hostage in a receivership where the value of the property is less than the loan amount owed to the secured lender. *Id.* at 1284. Instead, the Receiver was required to lift the receivership order's stay and allow the lender to foreclose, where the commercial property had no equity for the receivership estate and the lenders' liens exceeded the value of the property. *Id.* at 1277-78. The court denied the Receiver's sale motion and lifted the stay to allow the secured lenders to commence foreclosure proceedings. *Id.* at 1278. The court reasoned:

> "It is well-established that a 'receiver appointed by a federal court takes property subject to all liens priorities or privileges existing or accruing under the laws of the State." Consequently, the [secured lenders'] priority interest remains intact despite the Receivership . . . . **While this court may have broad powers to carry out the purpose of the Receivership, the court is disinclined to put the interests of the buyers and the Receivership over the interests of secured creditors.**

*Id.* at 1277 (quoting *In re Real Property Located at Jupiter Drive, Salt Lake City, Utah,* No. 2:05–cv–1013, 2007 U.S. Dist. LEXIS 65276, at *10, 12) (D. Utah June 7, 2007)) (brackets and bold added). Not only did the *Madison* court hold that the Receiver was required to pay debt service to the lender – something that has never been done by the Equitybuild Receiver since his appointment on August 17, 2018 – the Court also refused to allow the receiver to retain the lender's property in the receivership, holding:

> With respect to Casa Rio, Fannie Mae has provided evidence that the value of the property is less than the loan balance. The Receiver also has provided evidence regarding the property's value. While the Receiver's range in value exceeds that provided by Fannie Mae, the range is still less than the purported loan payoff amount. **The court therefore concludes that the advantages of retaining Casa Rio in the Receivership do not outweigh the disadvantages to Fannie Mae, and the stay should be lifted for this property**.

*Id.* at 1284 (internal citations omitted; bold added).

Other SEC receivers before this Court have taken the same position as Lender. By way of example – unlike the Equitybuild case –the secured mortgagee, received a full payoff as a result of the SEC receiver's sale of the borrower's commercial real estate in the Northridge SEC receivership concurrently pending before this Court. *SEC v. Northridge Holdings, Ltd., et al.*, No. 19-cv-05957 (N.D. Ill. May 19, 2020), Order [Dkt. 147]. Another example is found on the SEC's own website, which attaches an SEC Receiver's status report detailing the disposition of property in *SEC v. Bravata*, No. 09-cv-12950 (E.D. Mich. Mar. 19, 2010). *SEC v. Bravata*, No. 09-cv-12950 (E.D. Mich. Mar. 19, 2010) (Receiver's Second Interim Status Report and Accounting for BBC Equities, LLC and Bravata Financial Group, LLC), *available at* https://www.sec.gov/divisions/enforce/claims/bbcequitiessecondinterimstatusreportfiledcopy.pdf

In *Bravata*, the Receiver "requested authority to abandon 53 of the properties based, among other things, **generally upon a lack of equity in those properties over and above the mortgage debt**." *Id.* at 2 (bold added). With respect to other properties, the receiver and the court authorized the lenders' previously and newly appointed state court receivers to market and sell the commercial properties with oversight from the Receiver. *Id.* at 3. Throughout the *Bravata* report, the receiver notes that properties with no equity value will be abandoned, and properties where the sale proceeds exceed the lenders' debt will be marketed for sale. *Id.* at 6, 8, 10, 11. As such, courts throughout the country recognize – including this very District –that a receiver cannot sell properties free and clear with liens to attach to sale proceeds when there is no equity for the Receivership Estate. *See Pennant*, 2015 WL 4511337, at *4-5; *Pennant*, 2015 WL 5180678, at *4–5; *Madison Real Estate Grp., LLC*, 647 F. Supp. 2d at 1277; *Bravata*, No. 09-cv-12950, Docket 269; *compare SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438 (2d Cir. 2004) (receiver "takes the property subject to all liens, priorities, or privileges existing or accruing under the laws of the

6

state."); *U.S. Commodity Futures Trading Comm'n v. AlphaMetrix, LLC*, No. 13 C 7896, 2017 WL 5904660, at *2, n.3 (N.D. Ill. Mar. 9, 2017) (noting that regarding a secured creditor's interests that "'[a] pre-existing contractual remedy between creditor and debtor would bind the receiver….'"); Magistrate Kim's Memorandum Opinion and Order dated February 13, 2019, [Dkt. 223] (which prevents the Receiver from the continued practice of commingling rents and requires restoration of the rents to their respective properties and notes that the Seventh Circuit has "ruled that 'the rights of the receivers can be no greater than those of their predecessor in title.'"); *Cf. SEC v. Northridge Holdings, Ltd., et al.*, No. 19-cv-05957 (N.D. Ill. May 19, 2020), Order [Dkt. 147] (ordering that on the closing of the sale of the mortgagee's collateral property, the "Receiver is authorized *and directed* to pay *all* amounts due under the loan documents to Federal National Mortgage Association… including but not limited to principal, interest, default interest, advances, attorneys' fees, and all other indebtedness and amounts due under the Loan documents.") (emphasis added).

The so-called institutional lenders have requested for over two years that the Receiver abandon the properties with no equity because there will be no benefit to the estate. *See* Reply In Support of Motion of Creditor Federal Home Loan Mortgage Corporation ("Freddie Mac") Concerning Rents Collected by the Equity Receiver [Dkt. 140], p. 16-18, 23. The Property at issue is a prime example as no benefit will be received by the estate. In fact, the Property has been a drain on the estate and the Receiver proposes incurring additional costs to sell this underwater property.

    **A.**    **Granting the Motion Constitutes an Impermissible Taking of Both Lender's and Investors' Property and State Law Property Rights.**

Selling the Property without objecting to the proofs of claims or asserting any avoidance actions adjudicating these issues is tantamount to, and is an impermissible taking of all of the

parties' (both Lender and, where applicable, investors) state law entitlements under their asserted mortgages. Notwithstanding the breadth of the Receiver's powers granted under the Receiver Order, those powers remain subject to the Fifth Amendment's prohibition against taking private property without just compensation. The Takings Clause prohibits the federal government from taking "private property . . . for public use . . . without just compensation." U.S. Const. amend. V.

The United States Supreme Court has held that the Fifth Amendment's prohibition against uncompensated takings and deprivation of private property without due process of law operates as a limit on Congress' bankruptcy power. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 580 (1935). The Supreme Court reaffirmed *Radford* when it decided *United States v. Security Industrial Bank*, 459 U.S. 70, 76-78 (1982) (noting that the creditor's state law nonpossessory, nonpurchase-money security interests were "property" entitled to Fifth Amendment protection). Thus, if a government—in this case, the Court, pursuant to any orders it enters in this case empowering the Receiver to use and dispose of property—appropriates a secured creditor's collateral that is subject to that creditor's lien, the government has taken the secured creditor's property, which necessitates the payment of just compensation. *See id.* at 77 ("The total destruction by the government of all compensable value of [] liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking.'" (quoting *Armstrong v. United States*, 364 U.S. 40, 48 (1960)); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2599 (2013) ("[T]he government must pay just compensation when it takes a lien—a right to receive money that is secured by a particular piece of property.").

The above-described constitutional principles apply with equal force to a federal equity receivership such as this one. *SEC v. Wing,* 599 F.3d 1189 (10th Cir. 2010) (courts often look to analogous principles found in bankruptcy in equitable receiverships). Like bankruptcy

8

proceedings, receivership proceedings are remedial collective proceedings that provide for an efficient forum wherein a court can process the competing rights of numerous creditors and other parties in interest. An important hallmark of both bankruptcy and receivership proceedings is that a debtor's property and the various claims against such property are taken as they are found. *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Here, the Property is subject to Lender's security interest, a property right created and defined by Illinois law. *See, e.g., In re J.D. Monarch Dev. Co.*, 153 B.R. 829, 832 (Bankr. S.D. Ill. 1993) ("Illinois law recognizes the validity of an assignment of rents included in a mortgage of real estate. Such an assignment creates a security interest in rents that is perfected as to third parties upon recording of the mortgage in the real estate records."). Selling the Property without satisfying Lender's indebtedness is an impermissible taking – especially in a situation where Lender's lien has not been adjudicated or even objected to.

      **B.     The Stripping of Lender's Lien by the Receiver Violates Due Process.**

The Motion violates Lender's Fourteenth Amendment's due process rights. U.S. Const. amend. XIV. The Receiver is stripping Lender of its lien rights as a prior secured lender under state law without even requiring the Receiver to make a concrete showing of either equity in the property above and beyond Lender's debt or the invalidity or unenforceability of their mortgages, as detailed throughout this Objection. In fact, in an SEC receivership, the 11th Circuit Court of Appeals held, "Due process requires notice and an opportunity to be heard." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (*citing, inter alia*, *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503 (1985)). "Summary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." *Id.* at 1567.

9

4814-3639-2422.1

Here, the Receiver contends that he is investigating whether Lender's lien priority is subordinate or avoidable. This hardly rises to the grounds to allow the Receiver to proceed with a motion to sell the Properties free and clear, and in no way shows a bona fide dispute:

> [T]he Schutzmans were entitled to more procedural protections. We note that the Receiver did assert facts from which the district court could make an independent decision [regarding a fraudulent transfer], but the Schutzmans had no opportunity to dispute these facts. **The Receiver's procedure was not adequate to protect the Schutzmans' interests.** This procedure required claimants to complete blank forms setting out the grounds for their objections. Although this procedure might have been sufficient for other claimants whose claims were not as complicated, **the Schutzmans asserted claims that required an evidentiary hearing**. It may turn out that the facts are undisputed, but this has not been determined. **The Schutzmans should have their chance to rebut the characterization of the transfer and present affirmative defenses pursuant to the Florida statute.**

*Id.* at 1568 (bold and brackets added); see *also* Mortgagees' Response to Receiver's Motion for Approval of Process of Resolution of Disputed Claims [Dkt. 708], pp. 3-15. In fact, Lender has not even been afforded an opportunity yet to dispute these facts with evidence or testimony before this Court, as the Receiver has not raised – much less proffered evidence – by avoidance actions or objections to proofs of claim. As such, due process requires that this Motion be denied.

    **C.**    **The Receiver Cannot Use the Sales and Sale Process to Create Federal Common Law in Derogation of State Law.**

Rather than following Illinois statutory law, the Motion cites to his equitable powers to make an end-run around Illinois state law and to create federal common law. Here, the Receiver asks the Court to ignore state law lien and security interests and create new federal common law which allows a receiver to dispose of property with liens only attaching to the proceeds all without (1) avoidance of those liens, (2) payment of those liens in full, and (3) any benefit to the Receivership Estate. Such a result cannot be countenanced under the Supreme Court's February 25, 2020 decision in *Rodriguez v. Fed. Deposit Ins. Corp.*:

4814-3639-2422.1

> **As this Court has put it, there is "no federal general common law."** . . . . These areas have included admiralty disputes and certain controversies between States . . . . . In contexts like these, federal common law often plays an important role. But before federal judges may claim a new area for common lawmaking, strict conditions must be satisfied. The Sixth Circuit correctly identified one of the most basic: In the absence of congressional authorization, common lawmaking must be "'necessary to protect uniquely federal interests.'"

*Rodriguez v. Fed. Deposit Ins. Corp.,* 140 S. Ct. 713, 717 (2020) (bold added; internal citations omitted). In *Rodriguez*, a bank's holding company was in chapter 7, and a chapter 7 trustee was appointed. The bank's subsidiary was taken over by the FDIC, as receiver. Both the chapter 7 trustee and the FDIC – as receiver – claimed a $4 million tax refund payable to the parent. The 10th Circuit adopted the *Bob Richards* rule, which made a presumption under federal common law that the subsidiary with losses is entitled to a tax refund absent a tax allocation agreement that clearly gives the refund to the parent. At issue before the Supreme Court was: "Should federal courts rely on state law, together with any applicable federal rules, or should they devise their own federal common law test?" *Id.* at 716.

In *Rodriguez*, two separate entities were claiming rights to the same property. *Id.* The Supreme Court noted that, "As this Court has long recognized, 'Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" *Id.* at 718 (quoting *Butner v. United States*, 440 U.S. 48, 54 (1979). So too with the Internal Revenue Code— it generally "'creates no property rights.'" *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985) (quoting *United States v. Bess*, 357 U.S. 51, 55 (1958)). Similarly, the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* and Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (collectively, the "Act") confer no rights with respect to state law mortgage liens, and the use of the Receiver's equitable powers under the auspices of his selection under the Act in no way allow him to create federal common law in derogation of the parties' state law rights under their

11

mortgages. This includes the Motion pursuant to which he seeks to extinguish liens without payment in full and without any judicial adjudication of any lien validity. Furthermore, the Seventh Circuit has embraced the *Rodriguez* decision, noting that there is no federal law regarding real property easements and that state law is used to determine property interests. *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 832 (7th Cir. 2020). Yet, the Receiver's use of the Motion does exactly what the *Rodriguez* and *West* cases admonish: the creation of equitable common law in derogation of carefully defined state law mortgage rights. Such a result cannot be countenanced.

Moreover, the Receiver "takes the property subject to all liens, priorities, or privileges existing or accruing under the laws of the state." *SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438 (2d Cir. 2004; *see also Marshall v. People of New York*, 254 U.S. 380, 385 (1920). In fact, this Court agreed with this principle when ruling on the rents motion and most recently in its Memorandum Report and Recommendation [Dkt. 311]. *See SEC v. EquityBuild, Inc.*, No. 18-cv-5587, 2019 WL 587414, *3 (N.D. Ill. Feb. 13, 2019) (Magistrate Kim's Memorandum Opinion and Order [DKT. 223] citing with favor the *Madison* decision for proposition that "the rights of receivers can be no greater than those of their predecessors in title."); *see also* Memorandum Report and Recommendation, pp. 7-8 [Dkt. 311] (stating "a court does not have the authority to extinguish a creditor's pre-existing state law security interest" and clarifying the issue by stating "[t]o be sure, a receiver appointed by the federal court takes property subject to all liens, properties, or privileges existing or accruing under the laws of the state.") (internal citation omitted); *See also* Magistrate Kim's Memorandum Opinion and Order, pp. 9-10 [Dkt. 352] ("Opinion and Order") (reaffirming the foregoing rulings). In fact, "[i]**t is well-established that a receiver appointed by a federal court takes property subject to all liens priorities or privileges existing or accruing under the**

**laws of the State.**" *Madison Real Estate Grp., LLC*, 647 F. Supp. 2d at 1277 (emphasis added). To hold otherwise and approve the Motion is to create a federal common law regarding receivership without abiding by applicable state law.

### III.    LENDER'S LIEN SHALL ATTACH TO THE INSURANCE PROCEEDS

The Motion is silent on how the insurance proceed will be treated. Lender has a prior perfected security interest in the Property, including the insurance proceeds arising therefrom. If this Court does grant the Motion, which Lender states it should not, then Lender's lien shall attach to the insurance proceeds as well as the sale proceeds.

### CONCLUSION

For the foregoing reasons, Lender object to the Motion and respectfully request that the Motion be denied.

Dated: April 22, 2021                                             Respectfully submitted,

/s/ Jill Nicholson
Jill Nicholson (jnicholson@foley.com)
Andrew T. McClain (amcclain@foley.com)
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Ph: (312) 832-4500
Fax: (312) 832-4700
*Counsel for Sabal TL1, LLC*

4814-3639-2422.1

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, I caused to be electronically filed the *Objection of Sabal TL1, LLC to Receiver's Twelfth Motion to Confirm Sale of Certain Real Estate and for the Avoidance of Certain Mortgages, Liens, Claims and Encumbrances* which is being served electronically via the Court's CM/ECF system on all counsel of record.

/s/ Jill Nicholson
Jill Nicholson

4814-3639-2422.1