IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 18 C 5587 |
| v. | ) ) | Judge John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50, ("U.S. Bank") has moved for a lien priority determination and the turnover of sale proceeds relating to its security interests in 7110-16 South Cornell Avenue ("7110 S. Cornell") and 6751-57 South Merrill Avenue ("6751 S. Merrill") in Chicago, Illinois. U.S. Bank is the only entity to assert a lien on these properties. Midland Loan Services, a Division of PNC Bank, NA, ("Midland") is similarly situated to U.S. Bank with respect to twenty-five other properties in the Equitybuild estate in that it is the sole lienholder for those twenty-five properties. As such, Midland joined U.S. Bank to file a reply in support of U.S. Bank's motion. The Receiver opposes the motion.

For the following reasons, motion is granted in part and denied in part.

## STATEMENT

On August 15, 2018, the Securities and Exchange Commission ("SEC") filed a complaint against Defendants Equitybuild, Inc., Equitybuild Finance, LLC (collectively, "Equitybuild"), Jerome H. Cohen, and Shaun D. Cohen (collectively, "the Cohens"). *See* Compl., ECF No. 1.[1] According to the complaint, the Cohens used the Equitybuild entities to operate a Ponzi scheme through which they fraudulently induced more than 900 investors to invest at least $135 million in residential properties on the south side of Chicago. *Id.* ¶ 1. The Cohens promised the investors high returns, but the properties performed poorly, and monthly expenses often outpaced any revenues. *Id.* ¶¶ 1, 42, 54. The Cohens ultimately used new investors' funds to pay earlier investors' interest payments. *Id.* ¶ 45.

As the Receiver has alleged in later filings, under the increasing weight of obligations to make interest payments, the Cohens also refinanced the properties with new loans from institutional lenders without paying off the existing investors' debts. Receiver's Mot. Approval Process Resolution Disputed Claims ¶¶ 1, 6, ECF No. 638. In many instances, the properties being refinanced with the lenders were already encumbered with recorded mortgages that secured the promissory notes held by the individual investors. *Id.* ¶ 6; SEC's Resp. Opp'n Freddie Mac's Mot.

---

[1] Shortly after the SEC filed its complaint, the Court appointed a Receiver to marshal and preserve Defendants' assets. *See* Receivership Order, ECF No. 16. The Receiver is authorized to "take all necessary and reasonable actions" to sell or lease "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." *Id.* ¶ 38.

Divert Assets Receivership at 4–6, ECF No. 114; *see also id.*, Ex. 1, Certificate of Exemption, ECF No. 114-1 (example of recorded mortgage). Shaun Cohen, as purported attorney-in-fact for the individual investors, would record a release of the mortgages securing the investors' loans without their knowledge or consent. Receiver's Mot. Approval Process Resolution Disputed Claims ¶¶ 1, 6. In doing so, Equitybuild often borrowed against the same property twice, creating a clash of claims between the individual investors and the institutional lenders. *Id.* ¶ 6. The Receiver has posited that the institutional lenders may have been on inquiry notice of the Cohens' fraud in connection with the origination of the mortgages, which may invalidate the mortgages and subordinate them to unsecured status. *See* Receiver's Resp. Opp'n Mot. Priority Determination and Turnover of Sale Proceeds ("Resp.") at 7–8, ECF No. 806 (citing *In re Sentinel Mgmt. Grp., Inc.*, 809 F.3d 958 (7th Cir. 2016)).

In order to resolve this clash of claims and begin the process of repaying the victims of the Cohens' fraud, creditors of the Receivership estate—including the individual investors and institutional lenders—were instructed to submit proofs of claim to the Receiver. *See* Magistrate Judge Young B. Kim's 5/1/19 Order, ECF No. 349 (approving claims submission process). The claim forms directed claimants to identify any properties associated with their claims. *See* Receiver's Mot. Establish Claims Bar Date and Procedures, Ex. 3 (approved claim form), ECF No. 241-1 at 19–37. The Court set a claims bar date of December 31, 2019. *See* 11/5/19 Order, ECF No. 574. And the Court has recently approved a process to

adjudicate disputes over the priority of the claimants' liens on a property-by-property basis. *See* 2/9/21 Order Regarding Claims Resolution Process No. 2, ECF No. 941 (outlining procedures to adjudicate lien priorities).

But there are several properties against which only one claimant has asserted a lien. U.S. Bank is the only entity that has filed a proof of claim associated with 7110 S. Cornell and 6751 S. Merrill. *See* U.S. Bank's Corrected Mot. Priority Determination and Turnover of Sales Proceeds ("Mot.") at 1, ECF No. 785. Similarly, Midland states that there are twenty-five properties against which Midland is the sole claimant. *See* Midland and U.S. Bank's Reply Supp. Mot. Priority Determination and Turnover of Sale Proceeds ("Reply") at 1–2, ECF No. 817. And the parties have informed the Court that there are more than a dozen properties for which only one individual investor has asserted a lien, as well. *See* 1/29/21 Tr. at 11:5–9, ECF No. 942.

U.S. Bank now asks the Court to declare that its liens are valid and—because they are the only liens on each property—take first priority. Furthermore, in conformity with approved sales procedures, the Receiver sold 7110 S. Cornell and 6751 S. Merrill and placed the sales proceeds in separate accounts pending further order of this Court. *See* Order Granting Receiver's Fifth Motion for Approval of Sales, ECF No. 680. On U.S. Bank's view, given the lack of competing claims against those properties, there is no reason to delay turning over the proceeds of their sales to U.S. Bank. Midland asks that the Court apply the same

4

reasoning to promptly disburse to it proceeds from any sales of the twenty-five properties for which it is the only claimant.

The Receiver opposes this relief, arguing that he has not had an opportunity to conduct discovery that would reveal whether U.S. Bank and Midland had "inquiry notice of the fraud in connection with the origination of the loan," which could invalidate and subordinate U.S. Bank and Midland's liens to unsecured status. *See* Resp. at 7–8 (citing *In re Sentinel*, 809 F.3d 958); *see also* 7/15/20 Tr. at 15:18–18:15, ECF No. 752 (discussing the possibility of inquiry notice and fraudulent transfers). He asserts that the validity and priority of *all* liens—even where the lienholder is the sole claimant as to the property at issue—should be resolved in the claims adjudication process that the Court has developed. Resp. at 5–8.

U.S. Bank and Midland counter that the Receiver currently possesses all of the information necessary to make a recommendation relating to the validity and priority of their liens—namely, the documentation the lenders submitted with their proofs of claims, as well as the Cohens' records of Equitybuild's activities. *See* Reply at 6–8. On their view, the claims adjudication process has been tailored to resolve priority disputes *between* claimants, and there is no reason to go through that process when there is only one lienholder. *Id.* at 4–5.

When it comes to designing a process to adjudicate claims against entities in receivership, a "district court exercises significant control over the time and manner" of such proceedings, as long as the claimant is heard. *Liberte Cap. Grp.,*

5

*LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006). Furthermore, "[i]n supervising an equitable receivership, the primary job of the district court is to ensure that the proposed plan of distribution is fair and reasonable." *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332 (7th Cir. 2010). This Court has "broad equitable power in this area." *Id.*; *see also Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-CV-7581, 2015 WL 4511337, at *4 (N.D. Ill. July 24, 2015) (noting that in receivership matters, "federal courts exercise the traditional, common law powers of equity" (quoting *Liberte Capital Grp.*, 462 F.3d at 551)).

Over the past two years, the Court has exercised its equitable discretion to approve various procedures that will determine the validity and priority of the liens at issue. Relevant to the instant motion, the Court has ruled as follows. First, even where there are no competing mortgages for the properties at hand, the Court has acknowledged that issues such as "the alleged balance due in connection with the corresponding loan, the propriety of all of the component amounts of the claims asserted, and the entitlement of the Receiver to an administrative lien on a portion of the proceeds, if warranted," should be "resolved during the initiated claims resolution process." *See* 3/31/20 Order, ECF No. 676. Additionally, the Court has held that factual issues such as whether a security interest involved a fraudulent transfer, or whether a claimant was on inquiry notice of the Cohens' fraud, should be resolved during the claims process after conducting discovery. *See* 7/15/20 Tr. at 44:15–45:13. Furthermore, and most recently, the Court directed the Receiver to work with the SEC and claimants to

6

propose a streamlined process—separate from the claim-priority adjudication process for properties with multiple lienholders—that would permit the Receiver to make recommendations concerning lien validity and priority as to properties with only one claimant, like 7110 S. Cornell and 6751 S. Merrill. *See* 1/29/21 Tr. at 16:20–17:18 ("THE COURT: . . . I think it makes sense to have a different, perhaps more abbreviated process for those properties where there aren't any competing claims. For those properties, I think the scope of discovery will be narrower. I think the issues will probably be narrower.").

It follows directly from the Court's prior rulings that U.S. Bank's motion is granted in part and denied in part. U.S. Bank's motion is granted to the extent that it seeks to resolve any issues relating to properties for which it is the sole claimant outside of the broader claim-priority adjudication process. But U.S. Bank's motion is denied to the extent that it seeks a judicial declaration that, for any property against which only one claim is asserted, that claim automatically constitutes a valid, first-priority lien that entitles the lienholder to the proceeds from the sale of that property. The Court will await the parties' proposal concerning an "abbreviated process for those properties where there aren't any competing claims." *Id.* at 17:7–9.

**IT IS SO ORDERED.**                                             **ENTERED: 4/28/21**

*/s/ John Z. Lee*

———————————————

**John Z. Lee**
**United States District Judge**

7