**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES ) <br> AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EQUITYBUILD, INC., EQUITYBUILD ) <br> FINANCE, LLC, JEROME H. COHEN, ) <br> and SHAUN D. COHEN, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 18-cv-5587 <br><br> Hon. John Z. Lee <br><br> Magistrate Judge Young B. Kim |

**RECEIVER'S ELEVENTH INTERIM APPLICATION AND MOTION**
**FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES**
**OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen, as defined in the Order Appointing Receiver entered August 17, 2018 (Dkt. No. 16), as supplemented by Order entered March 14, 2019 (Dkt. No. 290) and Order entered February 21, 2020 (Dkt. No. 634) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court, respectfully submits this Eleventh Interim Application ("Application") for the First Quarter 2021, and moves this Court for an order approving payment of the fees and expenses of the Receiver, the Receiver's counsel, Rachlis Duff & Peel, LLC ("RDP"), the Receiver's accountants BrookWeiner, LLC ("BrookWeiner") and Miller Kaplan Arase LLP ("Miller Kaplan"), and the Receiver's forensic IT consultant, Prometheum, from the Receivership Estate operating account. In support of his Application and Motion, the Receiver states as follows:

1

I.  **BACKGROUND**

1. On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a civil Complaint against Jerome Cohen, Shaun Cohen, EquityBuild Inc., and EquityBuild Finance LLC (collectively the "Defendants") alleging violations of federal securities laws, along with a motion for entry of an asset freeze, permanent injunction, and other ancillary relief. (Dkt. Nos. 1 & 3, respectively)

2. In their Complaint against the Defendants, the SEC alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a)q. (Dkt. No. 1)

3. The Complaint further alleged that the Defendants operated a Ponzi-scheme that raised at least $135 million from more than 900 investors by, among other things, making untrue statements of material fact in connection with the sale of promissory notes allegedly secured by residential real estate primarily located on the south side of Chicago. (*Id.* ¶¶ 1-7, 17, 20-51)

4. On August 28, 2018, the Court entered a judgment against defendants Jerome Cohen and Shaun Cohen which, among other things, enjoined future violations of federal securities laws. (Dkt. No. 40)

5. In connection with its civil action, the SEC sought and obtained Court approval for the appointment of a Receiver, and on August 17, 2018, this Court entered an Order Appointing Receiver. (Dkt. No. 16)

6. Under the Order Appointing Receiver, the Receiver was authorized to engage and employ persons and entities in his discretion to assist him in carrying out the duties and responsibilities set forth in the Order. (*Id.*, Order Appointing Receiver, ¶ 54)

7. Accordingly, the Receiver retained Rachlis Duff Adler Peel & Kaplan, LLC ("RDAPK")[1] as special counsel, and, on August 20, 2018, the Court entered an Order approving RDAPK's rates. (Dkt. No. 19) On August 23, 2018, the Receiver retained BrookWeiner to provide accounting services and to perform tax and related work regarding the assets of the Receivership Defendants, and Miller Kaplan to serve as Tax Administrator of the Settlement Fund. (Dkt. No. 32). On August 28, 2018, the Court entered an Order approving BrookWeiner's and Miller Kaplan's rates. (Dkt. Nos. 39, 45) On August 31, 2018, the Receiver retained Prometheum to access and preserve data within EquityBuild's cloud-based storage systems and provide related IT services, and, on September 6, 2018, the Court entered an order approving Prometheum's rates. (Dkt. No. 56)

8. Pursuant to the Order Appointing Receiver, the Receiver and his retained personnel are entitled to "reasonable compensation and expense reimbursement" from the Receivership Estate, as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. (Dkt. No. 16, ¶ 69)

II. **ELEVENTH INTERIM APPLICATION**

9. Pursuant to the Billing Instructions, the Receiver provides the following information regarding this Application:

---

[1] As of October 1, 2019, the firm changed its name to Rachlis Duff & Peel, LLC ("RDP").

3

      a.      The Application covers the period from January 1, 2021 through March 31, 2021.

      b.      The names and hourly rates of all professionals for RDP, BrookWeiner, and Miller Kaplan, as well as Prometheum's hourly rates, are attached as **Exhibit A.**

      c.      This is the Receiver's Eleventh Interim Application. The dates and amounts of the Receiver's prior interim fee applications, the orders and amounts allowed, and the amounts paid and unpaid, are attached hereto as **Exhibit B.**

### III. CASE STATUS

10.    Pursuant to the Billing Instructions, the Receiver provides the following information regarding the status of the case, and activities performed specifically for the period covered by this Application.

      a.      The Receiver's Standardized Fund Accounting Report ("SFAR") for the First Quarter 2021 is attached as **Exhibit C.** The SFAR sets forth the funds received and disbursed from the Receivership estate during this reporting period. As reported in the SFAR, the amount of cash on hand as of March 31, 2021 was $1,102,611.53. The information reflected in the SFAR was based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

      b.      Upon his appointment, the Receiver began making efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, choses in action, rights and other assets, together with all profits, interest, or other income attributable thereto, which the Receivership Defendants owned, possessed, retained a beneficial interest in, or controlled

directly or indirectly, and to preserve and maintain those assets. In furtherance of such, the Receiver took, *inter alia*, the following actions:

i. <u>Identification and Preservation of Assets</u>

During the First Quarter 2021, one of the Receiver's primary focuses continued to be the preservation, operation, maintenance, and sale of the 49 real estate properties remaining in the Receivership Estate at the beginning of the quarter. The Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, continued working to improve understanding and planning for cash flow needs for underperforming properties, and controlling expenditures where possible. To that end, the Receiver and his counsel communicated regularly with property managers relating to necessary expenditures for properties requiring approval by the Receiver (and in some cases, requiring funds from the Receiver), and other operational questions. The Receiver and his retained professionals also reviewed monthly financial reporting, analyzed the cash position of the Estate, and communicated regularly with the real estate broker regarding prioritization of expenses and repairs on the properties.

During the First Quarter 2021, the Receiver worked closely with the two existing property management companies to ensure that all health, life, and safety issues at the properties were addressed expeditiously, and to monitor repairs, inspections, expenses, and property finances designed to preserve the properties and protect their financial position.

Additionally, the Receiver, with the assistance of counsel and the property managers, worked to address open building code violations of widely varying levels of severity. Only a limited number of City of Chicago administrative actions went forward during the quarter due to the pandemic, and the majority of administrative court hearings were continued. The Receiver's counsel resolved two Department of Buildings matters, obtaining an order dismissing the

EquityBuild entity from the cases (8209 S Ellis and 1449 N. Talman). The Receiver also was able to resolve two administrative matters brought by the Department of Sanitation, moving to set aside a default judgment, and obtaining a release of a $4,021.59 lien and nonsuit order in one matter (4611 S Drexel), and a paying a nominal fine in another (4750 S Indiana). Counsel for the Receiver also worked with corporation counsel with regards to four pending Department of Housing cases, and obtained one dismissal and three continuances. During the quarter, the Receiver's counsel received numerous orders continuing hearings and five new notices of violations, and maintained its docket for all pending matters. As of March 31, 2021, there remained 13 known open City of Chicago matters involving code violations, including 3 pending City of Chicago municipal housing court matters, 9 pending City of Chicago administrative proceedings filed by the Buildings Department and 1 pending administrative proceeding filed by the Department of Sanitation.

      ii.   Property Sales

The Receiver and his retained professionals did not close any sales during the First Quarter 2021, as the Receiver awaited rulings on the Tenth and Eleventh motions to confirm sales.

On March 31, 2021, the Court granted the remainder of the Receiver's Tenth Motion to Confirm Sales of the following 8 apartment buildings (Dkt. Nos. 964, 966):

- 4611-15 South Drexel Boulevard, Chicago, Illinois 60653
- 6217-27 South Dorchester Avenue, Chicago, Illinois 60637
- 7024-32 South Paxton Avenue, Chicago, Illinois 60649
- 7255-57 South Euclid Avenue, Chicago, Illinois 60649
- 1422-24 East 68th Street, Chicago, Illinois 60637
- 2800-06 East 81st Street, Chicago, Illinois 60617
- 4750-52 South Indiana Avenue, Chicago, Illinois 60615
- 7840 South Yates Avenue Chicago, Illinois 60649[2]

---

[2] As of the date of this Report, the Receiver has closed or scheduled the closings of six of these eight properties, and anticipates the remaining two properties will close during the second quarter as well.

6

Briefing on objections to the Eleventh Motion to Confirm Sales was completed early in the quarter (Dkt. Nos. 902, 918, 921)  The Receiver also submitted a proposed order to the Court regarding the un-objected to Motion to Approve Use of Sales Proceeds to pay property manager expenses, an administrative judgment, and an insurance deductible, which was granted on April 30, 2021.  (Dkt. No. 984)

On March 31, 2021, the Receiver filed the Twelfth Motion to Confirm the Sale of the property located at 638 N. Avers (Dkt. No. 962).  Objections to the motion were filed on April 22, 2021 (Dkt. No. 974) and briefing will be completed during the second quarter.

Following months of active marketing by the Receiver and his real estate professionals of the single-family home portfolio consisting of the following 37 properties (containing 47 units), six competing bidders submitted offers to purchase the portfolio during the second week of January 2021:

- 1017 West 102nd Street, Chicago, IL 60643
- 1516 East 85th Place, Chicago, IL 60619
- 2136 W 83rd Street, Chicago, IL 60620
- 417 Oglesby Avenue, Chicago, IL 60409
- 7922 S Luella Avenue, Chicago, IL 60617
- 7925 S Kingston Avenue, Chicago, IL 60617
- 7933 S Kingston Avenue, Chicago, IL 60617
- 8030 S Marquette Avenue, Chicago, IL 60617
- 8104 S Kingston Avenue, Chicago, IL 60617
- 8403 S Aberdeen Street, Chicago, IL 60620
- 8405 S Marquette Avenue, Chicago, IL 60617
- 8529 S Rhodes Avenue, Chicago, IL 60619
- 8800 S Ada Street, Chicago, IL 60620
- 9212 S Parnell Avenue, Chicago, IL 60620
- 10012 S LaSalle Avenue, Chicago, IL 60628
- 11318 S Church Street, Chicago, IL 60643
- 3213 S Throop Street, Chicago, IL 60608
- 3723 W 68th Place, Chicago, IL 60629
- 406 E 87th Place, Chicago, IL 60619
- 61 E 92nd Street, Chicago, IL 60619
- 6554 S Rhodes Avenue, Chicago, IL 60637
- 6825 S Indiana Avenue, Chicago, IL 60637

- 7210 S Vernon Avenue, Chicago, IL 60619
- 7712 S Euclid Avenue, Chicago, IL 60649
- 7953 S Woodlawn Avenue, Chicago, IL 60619
- 8107 S Kingston Avenue, Chicago, IL 60617
- 8346 S Constance Avenue, Chicago, IL 60617
- 8432 S Essex Avenue, Chicago, IL 60617
- 8517 S Vernon Avenue, Chicago, IL 60619
- 2129 W 71st Street, Chicago, IL 60636
- 9610 S Woodlawn Avenue, Chicago, IL 60628
- 5437 S Laflin Street, Chicago, IL 60609
- 6759 S Indiana Avenue, Chicago, IL 60637
- 1401 W 109th Place, Chicago, IL 60643
- 310 E 50th Street, Chicago, IL 60615
- 6807 S Indiana Avenue, Chicago, IL 60637
- 1414-18 E 62nd Place, Chicago, IL 60637

During the quarter the Receiver, with the advice of his real estate advisors, accepted an offer to purchase the portfolio for $4.1 million. Following due diligence inspections of the properties pursuant to an inspection contingency, the Receiver agreed to reduce the purchase price by $100,000, and the broker agreed to reduce its commission by $18,820, in order to prevent the prospective purchaser from exercising its right to terminate. In connection with the purchase price reduction, the Receiver and the institutional lenders purporting to hold first-position priority mortgages against various tranches of the single-family homes worked to agree upon an allocation of the portfolio purchase price to each of the 37 properties.

    iii.   The Financial Reporting and Rents Restoration

During the First Quarter 2021, the Receiver worked with his retained professionals to prepare reports for the period ended September 30, 2020 that included a monthly accounting for the months of June, July, August, and September 2020 with respect to rents generated by, and expenses incurred, in connection with the properties on which the institutional lenders assert liens. Those reports also reflected (a) rentals restored to each property to which restoration remained outstanding pursuant to the February 13, 2019 Order (Dkt. No. 223), and (b) transfers from the sales proceeds held in separate accounts for certain properties equal to the amounts reimbursable

from each such property, pursuant to the Order entered on September 21, 2020 (Dkt. No. 796), and as more specifically detailed in the Receiver's Second Motion For Restoration Of Funds Expended For The Benefit Of Other Properties (Dkt. No. 749). Those reports were distributed to lenders' counsel on January 25, 2021. Further, during the quarter the Receiver worked with his retained professionals on similar reports for the three month period ending December 31, 2020, which will be distributed to lenders' counsel in the second quarter 2021.

      iv.   Open Litigation

During the First Quarter 2021, fact and expert discovery were completed in the matter captioned *Byrd v. EquityBuild, Inc., et al.*, Case No. 18 L 1993, Circuit Court of Cook County. The parties are awaiting a trial setting date and engaging in settlement discussions.

Notice of Appointment of Receiver

During the First Quarter 2021, the Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver continues to deliver notices to individuals or entities which have been identified as potentially having possession of the property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or had otherwise been involved with any of the assets of the Receivership Defendants.

      v.   Control of Receivership Property and Records

During the First Quarter 2021, the Receiver continued efforts to locate and preserve all EquityBuild property and records. The Receiver maintained two platforms of records and data during the First Quarter 2021.

      vi.   <u>Factual Investigation</u>

During the First Quarter 2021, the Receiver and his retained professionals continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (largely stored in cloud-based and other electronic media, plus a limited number of hard copy records); (iv) available underlying transaction documents received to date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

During the First Quarter 2021, the Receiver and his retained counsel devoted efforts to claims asserted in state court against former EquityBuild professionals: (1) the law firm Rock Fusco & Connelly LLC ("Rock Fusco"), (2) Ioana Salajanu, a lawyer formerly at Rock Fusco, and (3) the law firm Bregman, Berbert, Schwartz & Gilday, LLC.  These claims are for professional malpractice and aiding and abetting the Cohen's breaches of their fiduciary duties.  No dispositive motions were filed at the pleadings stage, and the discovery phase commenced, with each of the parties having propounded both document requests and interrogatories, and the Receiver having made a substantial production of documents.

      vii.   <u>Tax Issues</u>

BrookWeiner was retained to perform accounting, tax, and related work in connection with winding down the business operations of the Receivership Defendants.  BrookWeiner also has compiled monthly property statements and property spreadsheets and assisted with cash flow analysis matters.

Miller Kaplan was retained to serve as the Tax Administrator to take all necessary steps to enable the Settlement Fund to obtain and maintain the status of a taxable Qualified Settlement

Fund ("QSF"), including the filing of all required elections and statements contemplated by those provisions, and to pay taxes in a manner consistent with treatment of the Settlement Fund as a QSF.  During calendar year 2020 and the First Quarter 2021, Miller Kaplan prepared and filed the 2019 Qualified Settlement Fund Income Tax Return, paid quarterly estimated taxes for the year 2020, and prepared and filed the 2020 Qualified Settlement Fund Income Tax return.

viii. Accounts Established by Receiver for the Benefit of the Receivership Estate

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property.  The interest-bearing checking accounts are used by the Receiver to collect liquid assets of the estate and to pay the portfolio-related and administrative expenses.  For each property encumbered by secured debt that has sold, the Receiver also has established a separate interest-bearing account for the purpose of depositing and holding funds until such time as the Court orders otherwise and for ultimate distribution, following a claims process and upon Court approval, to the creditors of the Estate, including the defrauded investors. (Dkt. Nos. 230, 311, 344 & 346)

c. Creditors and Claims Against the Receivership Estate

During the First Quarter 2021, the Receiver and his retained professionals continued to improve the accuracy and completeness of the "Master Claims Exhibit," preliminarily identifying on a property-by-property basis for each of the nearly 2400 claims the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loaned or invested in the particular property (where it could be determined from the face of the claim form).  The Receiver has encouraged claimants to review this exhibit and bring any discrepancies to the attention of the Receiver, and the Receiver and his retained professionals have updated the exhibit where appropriate.  The most recent version of the Master Claims Exhibit was submitted with the

11

First Quarter 2021 Status Report filed on April 30, 2021 (Dkt. No. 985 at Ex. 7) This work was reasonable, necessary, and beneficial to the Receivership estate, and has allowed the Receiver's claims vendor (1) to organize, on a property-by-property basis, the claim forms and supporting documentation that claimants have submitted to the Receiver, and (2) to provide each claimant who did not opt out of the Confidentiality Order with digital links for the transfer of the claim forms and supporting documentation of other claimants asserting claims against the same property or properties in the receivership estate, consistent with Court orders.

The identification and compilation of claims submitted in this matter has been complex and time-consuming due to the unique circumstances and facts in this case. For example, it appears that in some instances anticipated proceeds of investor-lender loans rolled into new offerings rather than being paid off at maturity. It also appears that in some circumstances the mortgages securing loans may have been released without investor-lenders' knowledge or consent, allowing the Defendants to refinance the properties with new loans without retiring the existing loans. Moreover, some investor-lenders may have been induced to exchange secured loans for unsecured loans or equity positions through false representations. Additionally, claims against many properties are complicated by cross-collateralized mortgages.

The claims process has been further complicated by, among other things: (i) improperly completed proofs of claim, (ii) claims relating to properties that were conveyed to third parties prior to the establishment of the Receivership; and (iii) claims lacking reference to properties, or relating solely to what appear to be equity investment vehicles.

During the First Quarter 2021, the Receiver and his counsel continued to work with counsel for institutional lenders and investor-lenders in furtherance of the claims resolution process. At the Court's direction, the parties held several extended conference calls and exchanged multiple

rounds of drafts of Joint Status Reports filed on January 22, 2021 (Dkt. No. 928) and March 5, 2021 (Dkt. No. 953). These joint reports (1) provided outlines of the proposed process for the Court's resolution of disputed claims, setting forth the areas of the parties' agreement and disagreement, (2) set forth revised drafts incorporating the Court's rulings and remaining disputes regarding the standard discovery requests, (3) updated the Court on the parties' progress relating to the transfer of claims documentation, (4) updated the Court regarding the establishment of a database of EquityBuild documents that will be made available to claimants, (5) updated the Court on the status of property sales, and (6) provided information about regarding the briefing status of pending motions. The Receiver also divided the properties in the estate into proposed groupings and, after sharing his proposal with counsel for the institutional lenders and certain of the investor-lenders, submitted his proposal to the Court on February 5, 2021. (Dkt. No. 938)

On January 29, 2021, the Receiver participated in a telephonic hearing during which the Court orally ruled on remaining aspects of the Receiver's February 28, 2020 Motion for Approval of Process for Resolution of Disputed Claims (Dkt. No. 638), and directed the Receiver to prepare and submit a proposed global Claims Priority Resolution Process case management order memorializing the Court's rulings regarding the process for the orderly resolution of claims submitted to the Receiver in this matter. (Dkt. No. 931) The Receiver worked with counsel for the institutional lenders, certain of the investor lenders, and the SEC to submit two proposed orders, which were entered by the Court on February 9, 2021. (Dkt. Nos. 940 and 941)

During the quarter, the Receiver negotiated a vendor agreement with Avalon Legal to distribute the claim forms to claimants asserting an interest in the same properties. On February 9, 2021, the Receiver provided notice to claimants of the Court's Confidentiality Order and the 14-day opt-out period. On February 25, 2021, the Receiver filed a Notice of All Claimants Who

Do Not Agree to Abide by the Terms of the Agreed Confidentiality Order. (Dkt. No. 949) On February 26, 2021, the Receiver provided all claimants with information about the distribution of claim forms by Avalon, and Avalon began sending emails to claimants with links to download claims documentation on March 5, 2021. As of the date of this report, Avalon has finished sending the claims documentation for all properties in the receivership estate.

During the quarter, the Receiver also participated in the extended negotiation of a vendor agreement and license with CloudNine and TeamWerks to host EquityBuild's internal documents and provide access to all claimants. The Receiver prepared these EquityBuild documents for transfer to CloudNine, and worked to update and confirm the accuracy of claimants' email, address, and counsel records for use in the distribution of claim forms and the upcoming framing reports.

The Receiver is continuously updating all claimants on the developments in this matter, and responding in a timely manner to the hundreds of emails and voicemails from investors and others, many if not most of which related to the claims submitted against the Estate and the status of the Court's process for resolving those claims and distributing the Estate's assets. To ease the burden and provide basic information, the Receiver established a web page (*http://rdaplaw.net/receivership-for-equitybuild*) for claimants and other interested parties to obtain information and certain court filings related to the Receivership estate, which remains in place today and continues to be best and most cost-effective mean of providing information regarding the status of this action.

    d.    <u>Assets in Receivership Estate</u>

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit D.** The Master Asset List identifies 56 checking accounts in the names

of the affiliates and affiliate entities included as Receivership Defendants, reflecting a total amount transferred to the Receiver's account of $213,249.56. (*See also* Dkt. No. 258 at 21, and Dkt. No. 348 at 23-24, for additional information relating to these funds) Additionally, 89 separate interest-bearing accounts established by the Receiver to hold the proceeds from sold real estate are identified on **Exhibit E**, which collectively contained $51,276,556.83 as of March 31, 2021.

The Master Asset List does not include funds received or recovered after March 31, 2021. Nor does it include potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests. The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate, including, but not limited to, charitable donations, loans, gifts, settlements for which payment has not yet been received, and other property transferred to family members, former employees, and others.

    e.    *See also* Receiver's Eleventh Status Report (First Quarter 2021) for additional information. (Dkt. No. 985)

## IV. BILLING ADDRESSED IN THIS APPLICATION

11. Pursuant to the Billing Instructions, the Receiver provides the following information regarding current billing:

    a.    <u>Total Compensation and Expenses Requested</u>.

        i.    In connection with his duties, the Receiver respectfully requests compensation for services rendered, totaling $52,572.00 for the period of this Application. Copies of the Receiver's invoices for January, February, and March, 2021 are attached as **Exhibit F.**

        ii.    In connection with the legal services provided to the Receiver by RDP, the Receiver respectfully requests compensation for services rendered, along with

        reimbursement of expenses, totaling $194,337.70 for the period of this Application. Copies of RDP's invoices for January, February, and March, 2021 are attached as **Exhibit G.**

  iii.  In connection with the accounting provided to the Receiver by BrookWeiner, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $5,953.50 for the period of this Application. Copies of BrookWeiner's invoices for January, February, and March, 2021, are attached as **Exhibit H.**

  iv.  In connection with the accounting provided to the Receiver by Miller Kaplan, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $5,988.00. These fees relate to services rendered during the period from the beginning of Miller Kaplan's retention through February 18, 2020 ($4,364.00), which were not submitted with a prior fee application, as well as services rendered during February and March 2021 ($1,624.00). Copies of Miller Kaplan's invoices are attached as **Exhibit I.**

  v.  In connection with the IT services provided to the Receiver by Prometheum, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $2,750.00 for the period of this Application. A copy of Prometheum's invoice is attached as **Exhibit J.**

  b.  <u>Source of Funds for Requested Compensation and Expenses</u>. The Receiver requests that the above compensation and expenses be paid from the Receiver's operating account to the extent there are sufficient funds now or in the future. To the extent funds are insufficient, Receiver requests that the above compensation and expenses be paid pursuant to the receiver's lien

that the Court established in order that receivership property may be used to compensate the Receiver and his counsel for their work. (*See* Court's 10/26/20 Order granting Receiver's lien (Dkt. 824))

  c. <u>Eleventh Application for Payment of Professional Fees and Expenses</u>. This is the Receiver's Eleventh Interim Application.

  d. <u>Summary of Activity</u>. A "Summary of Activity," providing the total hours billed and the amount of billing for each person who billed time during the Application period (January 1, 2021 through March 31, 2021) can be found at the end of the Receiver's invoices (Exhibit F) and RDP's invoices (Exhibit G) and on the first page of the BrookWeiner invoices (Exhibits H and J).

**V. REQUEST FOR RECEIVER'S LIEN**

  12. This Court has previously granted a receiver's lien and its previous ruling is equally applicable here. (Dkt. No. 824) Consistent with the reasons set forth in the Receiver's prior fee applications and other requests and the Court's prior ruling, a receiver's lien on the estate assets and their proceeds to pay costs of the Receiver and his retained professionals that were incurred for the benefit of those properties and their competing claimants is appropriate. (*See, e.g.,* Dkt. No. 778, at 18-25; Dkt. No. 638, ¶¶ 53-57; Dkt. No. 720, at 14-20; Dkt. No. 755) The Receiver believes that the receiver's lien and the allocation methodology previously approved by the Court is reasonable and equitable given the facts, circumstances, and practical challenges of the Receivership. Consistent with this approach, the Receiver requests a lien against each property to be paid on a first priority basis before all other liens on the properties to ensure that all Court-approved fees and expenses of the Receiver and the Retained Professionals are paid in accordance with the foregoing approved methodology.

**VI. CONCLUSION**

WHEREFORE, the Receiver respectfully requests that the Court approve the Receiver's Eleventh Interim Fee Application and enter an Order as follows:

a. Finding the fees and expenses of the Receiver and Receiver's retained professionals, Rachlis Duff & Peel LLC, BrookWeiner, LLC, Miller Kaplan Arase LLP, and Prometheum, as described in Exhibits F-J, respectively, to be reasonable and necessary to the Receivership;

b. granting the Receiver and his retained professional a first priority administrative lien against each of the real estate properties in the Receivership Estate and their sales proceeds for payment of fees and costs;

c. approve the proposed allocation and payment methodology with respect to a Receiver's lien for all fees and expenses of the Receivership Estate as described and recommended in this fee application;

d. approving the Receiver's payment of such fees and expenses to the Receiver and to Receiver's retained professionals from sales proceeds for each of the properties in the Receivership Estate as described and recommended in this fee application; and

e. granting the Receiver all other relief which this Court deems just and proper.

Dated: May 17, 2021                                  Kevin B. Duff, Receiver

                                         By:   /s/      Michael Rachlis

                                                Michael Rachlis
                                                Jodi Rosen Wine
                                                Rachlis Duff & Peel, LLC
                                                542 South Dearborn Street, Suite 900
                                                Chicago, IL 60605
                                                Phone (312) 733-3950; Fax (312) 733-3952
                                                mrachlis@rdaplaw.net
                                                jwine@rdaplaw.net

18

**RECEIVER'S CERTIFICATION**

1. Pursuant to the Billing Instructions, the Receiver certifies as follows regarding the Receiver's Eleventh Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals:

    a. The Receiver has read the foregoing Application and Motion;

    b. To the best of the Receiver's knowledge, information and belief formed after reasonable inquiry, the Application and Motion and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in this Certification, Application, and Motion);

    c. All fees contained in the Application and Motion are based on the rates listed in the Fee Schedule attached hereto as Exhibit A, and such fees are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

    d. The Application and Motion does not include in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment, or capital outlay (except to the extent any such amortization is included within the permitted allowable amounts set forth herein); and

    e. In seeking reimbursement for a service which the Receiver or the Receiver's Retained Professionals justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), reimbursement is requested only for the amount billed to the Receiver or Receiver's Retained Professionals by the third-party vendor and paid by the Receiver or Receiver's Retained Professionals to such vendor. If such services were performed by the Receiver or Receiver's Retained Professionals, the Receiver certifies that no profit has been made on such reimbursable service.

2. On May 12, 2021, the Receiver provided to Mr. Benjamin Hanauer, of the SEC, a complete draft copy of this Application and Motion, together with all exhibits and relevant billing statements in a format specified by the SEC.

Dated: May 17, 2021              /s/ Kevin B. Duff
                                                Kevin B. Duff, Receiver
                                                EquityBuild, Inc., et al.
                                                c/o Rachlis Duff & Peel, LLC
                                                542 S. Dearborn Street, Suite 900
                                                Chicago, IL 60605
                                                (312) 733-3390 - kduff@rdaplaw.net