UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, <br><br> Defendants. | Civil Action No. 18-CV-5587 <br><br> Hon. John Z. Lee <br><br> Magistrate Judge Young B. Kim |

### RECEIVER'S REPLY TO SABAL'S OBJECTION TO TWELFTH MOTION TO CONFIRM THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, CLAIMS, LIENS, AND ENCUMBRANCES

The objection of Sabal TL1, LLC ("Sabal") (Dkt. 974) to the sale of 638-40 N Avers Avenue in connection with the Receiver's Twelfth Motion for Approval of Sales (Dkt. 962) is another effort to stop the Receiver from preserving Receivership Assets and maximizing funds for subsequent distribution to the Cohens' victims and other creditors. Many of Sabal's arguments, and particularly those in Section II of its objection, are virtually identical to objections offered from the same camp of objecting institutional lenders in opposition to the Receiver's previous motions to approve property sales. (*Compare* Dkt. 974 *with* Dkt. 769, 820)[1] Because the Court already rejected identical arguments, the prior Orders are dispositive of the current objections. (*E.g.,* Dkt. 964, at 3-4) Sabal's other objections also should be overruled, for the reasons discussed below.

---

[1] The Court has noted that most of the objections raised in opposition to the Receiver's Ninth and Tenth Sales Motion were previously rejected. (Dkt. 825, at 4; Dkt. 964, at 3)

**ARGUMENT**

I. **The Receiver Has Sought to Sell the Property with Due Regard to Its True and Proper Value.**

Sabal's argument in Section I of its Objection – that the Receiver is not seeking to sell the Property with due regard to its true and proper value – is of the same conclusory ilk as other meritless objections raised in opposition to the Receiver's prior sales motions. Resorting only to conclusory swipes, Sabal offers no evidence that the bid process did not accord due regard to the true and proper value of the properties. Sabal ignores the Receiver's various bases for seeking approval for the sale of the Property in the current Motion.

First, the Receiver's real estate broker, among other efforts, (i) remarketed the Property to every prospective purchaser that made an offer for the Property during the initial sale effort as well as additional potential purchasers who had expressed an interest in this and other EquityBuild properties,[2] (ii) hosted two tours of the Property for prospective purchasers, and (iii) obtained three new offers, including two matching highest bids, until the winning bidder offered to raise its bid to an unmatched highest bid of $370,000. (Motion, ¶¶ 22-23) The proposed bid was the highest offer and it was for all cash with no financing or inspection contingencies. (Motion, Tab F)

---

[2] Sabal argues in a footnote that no new marketing was undertaken by the Receiver or the broker. (Objection, at 2 n.1) This is simply not accurate, as the Baasch Declaration and the discussion in the Motion and herein show. (*E.g.,* Dkt. 962, ¶ 22 & Ex. B) Marketing takes many forms and is more art than science. Here, the additional marketing matched and followed the broker's advice. In addition to the prospective purchasers who previously submitted offers, the broker also attempted to solicit offers from three other potential purchasers who had previously expressed an interest in any additional EquityBuild properties that became available. Sabal does not say what other marketing it contends should have been undertaken and offers nothing to show that any such other marketing would have resulted in a better outcome than the Receiver and his broker achieved.

Second, as a result of his efforts pursing an insurance claim for the fire damage, the Receiver obtained an additional $406,086.41 in insurance proceeds, net of the $100,000 insurance deductible.[3] (Motion, ¶ 18)

Third, before it voluntarily terminated its contract with the Receiver, Sabal contracted to purchase the property with a credit bid of $724,200. But the sale that the Receiver now seeks to confirm is for the combined gross total of $776,086.41 inclusive of the insurance proceeds, which is higher than both the highest pre-fire offer that the Receiver obtained (*i.e.,* $710,000) and Sabal's credit bid.[4]

Fourth, the Receiver accounted for the carrying costs and risks — including but not limited to insurance, real estate taxes, security costs, casualty events, and additional fees and expenses — that would be incurred by holding the Property for a longer period, further re-listing it, and engaging in a lengthier marketing effort, and the likelihood that Sabal would object regardless of the path the Receiver pursued.

Fifth, Sabal argues that the real estate market has undergone significant changes since August 2019. (Objection, at 3) However, it offers nothing to show that marketing the Property in some other (unspecified) way would have produced a materially different result.

The Receiver's goal has been to maximize the available funds for distribution to the claimants and victims. As has been the case throughout the sales process, the Receiver relied upon the advice of his retained professionals, including Mr. Baasch and SVN, in order to achieve the

---

[3] As noted in the Motion, there also were payments from the insurance proceeds to an adjuster and for property preservation, but those expenses would have been incurred under any scenario.

[4] Carrying costs include, for example, payment for steel doors and windows to protect the vacant, fire-damaged property, continuing real estate tax accruals, defense of City of Chicago notices of violation, and property management services necessary to ensure the integrity and safety of the property.

3

best economic result under all of the circumstances. (*See generally* Dkt. 962, Baasch Declaration) Notwithstanding Sabal's objection, the Receiver has shown that the offer he accepted was achieved with due regard to the true and proper value of the Property.

**II.    Sabal's Duplicative Section II Arguments Should Be Rejected.**

Section II of Sabal's argument repeats objections and arguments that the institutional lenders have raised before, including most recently in opposition to the Receiver's Tenth Motion to confirm the sale of certain real estate. A comparison shows that Section II of Sabal's objection is nearly identical to these prior objections. (*Compare* Dkt. 974, at 3-13 *with, e.g.,* Dkt. 820, at 11-23)[5] The Court has noted these similarities, as well as its own prior orders overruling these same objections. (*See, e.g.,* Dkt. 964, at 3-4) The Court has also stated: "Because the Institutional Lenders have not raised any arguments that the Court has not already rejected, their objection is overruled." (*Id.* at 5) The same result is appropriate here, and, thus, Sabal's contention that the Receiver may not sell the property free and clear where no equity is obtained for the receivership estate should be rejected for the same reasons.

**III.    Sabal's Insurance Proceeds Claim Will Be Addressed In The Claims Process.**

Sabal's lien argument with respect to insurance proceeds – which is offered in Section III of its Objection in summary fashion and with no support – is premature, as the Court has previously made clear that all issues pertaining to any claim against the Property will be addressed within the claims process. (*See* Dkt. 928 at 2 n.1 (quoting 7/15/2020 Tr., at 45:8-13))

Until the validity and priority of Sabal's claim and the other allegedly competing claims have been resolved by the Court,[6] the Receiver will continue to use the insurance proceeds, which

---

[5] The Receiver and the SEC previously responded to these arguments, and the Court rejected them as well. (*See, e.g.,* Dkt. 787 (at 4-10), 790 (at 4-11), 854 (at 11))

[6] There are 22 claims against the property in addition to Sabal's claim. (*See* Dkt. 985, Ex.7 at 21)

4

were obtained through his efforts, to preserve, maintain, and cover the expenses of the Property until it can be sold, including, without limitation, paying for security, property management, and real estate taxes. In accordance with the Court's orders, the Receiver will also seek approval for payment of professional fees and expenses incurred in connection with the Property, including but not limited to, efforts to: preserve, maintain, and sell the property; obtain insurance proceeds for the property; and design and implement a claims process with respect to the Property.

## **CONCLUSION**

For the reasons set forth herein, and in his Ninth, Tenth, and Twelfth Motions for Approval of Sale, as well as his replies in support of the Ninth and Tenth Motions and the SEC's replies to the same motions, Sabal's Objection should be overruled forthwith so that the sale of 638-40 N Avers Avenue can proceed as quickly as possible.

Dated: May 18, 2021  Kevin B. Duff, Receiver

By: /s/ Michael Rachlis

Michael Rachlis
Jodi Rosen Wine
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net
jwine@rdaplaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2021, I electronically filed the foregoing **Receiver's Reply To Sabal's Objection To Twelfth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. Copies of the foregoing were served upon counsel of record via the CM/ECF system.

I further certify that I caused true and correct copy of the foregoing **Reply** to be served upon the following individuals or entities by electronic mail:

- Defendant Jerome Cohen (jerryc@reagan.com);
- All known EquityBuild investors; and
- All known individuals or entities that submitted a proof of claim in this action (sent to the e-mail address each claimant provided on the claim form).

I further certify that the **Reply** will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax     (312) 733-3952
mrachlis@rdaplaw.net