UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., *et al.*, ) ) Defendants. ) ) | Civil Action No. 18-CV-5587 Judge John Z. Lee Magistrate Judge Young B. Kim |

**SEC'S REPLY IN SUPPORT OF RECEIVER'S ELEVENTH FEE APPLICATION**

The SEC hereby supports the Receiver's Eleventh Fee Application (ECF No. 993). The SEC confirms that it has reviewed the Receiver's invoices, they substantially comply with the SEC's billing guidelines, and the SEC approves of their payment. The SEC additionally incorporates its arguments supporting the Receiver's earlier fee petitions, which the Court has granted save for the Ninth and Tenth petitions, which are pending. (*See* ECF Nos. 526, 606, 622, 705, 797, 803, 922, 970). In granting the prior petitions, the Court has repeatedly approved the precise types of activities for which the Receiver currently seeks payment, finding them beneficial to the Receivership Estate.

**A. The Receiver Continued to Provide Reasonable Services to Benefit the Estate**

As documented in his fee petition, during the First Quarter of 2021 the Receiver continued his core work of managing the residential real estate portfolio left in the wake of the Cohens' Ponzi scheme. The Receiver maintained the upkeep of residential buildings, made necessary efforts to liquidate properties, and worked to implement a fair and orderly claims process. This work benefited the estate's creditors, whether they be investors, institutional

lenders, or other claimants. Among his efforts, the Receiver expended significant resources working with the institutional lenders to finalize the contours of the claims process to ensure the process is fair and acceptable to all claimants. (*See* ECF No. 993, at 12-14).

These are precisely the types of activities the Court has repeatedly found to be appropriate work that entitles the Receiver to reasonable compensation. (*See, e.g.*, ECF No. 824, p. 4 ("the Receiver's efforts have benefitted the Receivership Estate, including through maintaining, marketing, and liquidating properties; representing those properties in adverse litigation; bringing new assets into the Receivership; and designing a claims process by which property sales proceeds will be distributed to senior secured claimants"); *id.*, p. 3 ("the Receiver and his legal professionals have devoted significant resources responding to various motions, objections, and inquiries made by lenders, with these efforts increasing the amount of fees to which the Receiver is reasonably entitled.")).

The lenders offer no new arguments to justify revisiting the Court's findings that the Receiver's work has been beneficial. Rather, in objecting to the merits of the Receiver's petition – whether he deserves to be compensated for his work – the lenders merely rehash arguments the Court has repeatedly rejected.

Beyond performing the type of work the Court has already found to be beneficial, the Receiver took additional steps to bring new assets into the estate for the benefit of creditors. To that end, the Receiver performed the necessary measures to continue prosecuting an action against certain of Equitybuild's former attorneys. (*See* ECF No. 985, p. 113). A successful recovery in that action would mean more funds for the victims of the Cohens' fraud.

Because the activities the Receiver performed are a continuation of the types of work the Court previously found to be reasonable and beneficial, the Court should again reject the lenders'

arguments that the Receiver's fees are excessive. Additionally, the Receiver's requested fees are lower, *by a substantial amount*, than for any prior quarter of the receivership. This means the Receiver's requested fees are much lower than the fees the Court has already approved, over the lenders' objections of unreasonableness and excessiveness, further demonstrating the reasonableness of the Receiver's fees.

### B. The Lenders' Primary Objection, Regarding the Receiver's Lien, is the Subject of a Separate Motion

The thrust of the lenders' objections is their view that any fees awarded to the Receiver should not be the subject of a lien that trumps secured creditors. (ECF No. 1,000, pp. 2-6). According to the lenders, the Receiver is not entitled to a lien because his work does not benefit the estate. (*Id.*). But the lenders ignore the Court's findings in generally approving the Receiver's request for a lien. Contrary to the lenders' objections, the Court has found that the Receiver's core work – maintaining and liquidating properties, representing those properties in "adverse litigation," and implementing the claims process – has benefited the Receivership Estate and entitles the Receiver to a lien. (ECF No. 824, p. 4). That core work continued in Q1 2021, and there have been no changes in circumstances that would render that work non-beneficial.

On the other hand, much of the Receiver's Q1 2021 fees derived from the Receiver's consultations with the institutional lenders to address their concerns regarding the final contours and implementation of the claims process. The Receiver should not be punished for his collaborative efforts that resulted in a claims process that satisfies the lenders' many demands.

In any event, the issue of whether and in what amount the Receiver should be paid from the proceeds of property sales is the subject of a separate motion by the Receiver (ECF No. 947), to which the lenders have already responded (ECF No. 961). Because the lenders' objections as

to the amount of the Receiver's lien will be addressed via a different motion, those objections have no bearing on the initial determination sought in the Receiver's fee petition: whether the Receiver should be paid for his work administering the Receivership.[1]

### C. The Lenders' Remaining Objections Have Already Been Overruled

The lenders' remaining objections merely reassert, often verbatim, arguments that the Court has repeatedly rejected. For instance, the lenders attack the SEC for advocating for an orderly claims process, as opposed to consenting to the lenders filing scores of foreclosure actions pitting them against a dispersed group of victimized investors. (ECF No. 1,000, at 3-4, 10). But the lenders ignore, *again*, that the SEC has consistently called for a process that ensures fairness for all claimants, and that the Court has repeatedly held that the lenders' preferred approach – abandonment, foreclosure, or bankruptcy – is neither equitable nor appropriate given the unique circumstances of this case. The lenders' also overlook, *again*, that the Court has determined an orderly claims process *benefits* the Receivership Estate, and that the Receiver is entitled to compensation for his work implementing that process. (ECF No. 824, at 4-6).

As for the lenders' objections concerning the Receivership's solvency, the Receiver notes that as of March 31, 2021, he held more than $1.1 million in unencumbered cash that could support payment of his fees. (ECF No. 985, at 11-12). Presumably that figure will increase as the Receiver continues to liquidate properties, obtain the restoration of rents previously paid from his accounts (*see*, e.g., ECF No. 843), and otherwise bring new assets into the Receivership estate.

---

[1] To the extent the lenders' objections vis-à-vis the Receiver's lien are not resolved in the Receiver's pending motion (ECF No. 947), the Court has already determined: "The priority of the Receiver's lien as to any particular property or properties, however, will be determined by the Court as part of the claims approval process." (ECF No. 824, pp. 5-6).

The lenders' arguments as to the Receiver's solvency must also be evaluated in the context of the lenders' overly litigious conduct from the onset of this matter. Large portions of the Receiver's expenditures have been devoted to fighting the institutional lenders' (mostly unsuccessful) objections, motions, and appeals. Absent the lenders' obstruction, the Receiver's bills would have been significantly lower, he would have substantially less unpaid fees, and his available cash would be much higher.

Finally, the institutional lenders claim that the Receiver has "harmed" the estate's creditors. (ECF 1,000, at 12). But, with limited exceptions, the lenders are the only creditors who have objected to the Receiver's conduct or entitlement to be compensated for his work. On the other hand, the overwhelming majority of the Receiver's creditors – be they investors, trade creditors, or other claimants – have consented to the Receiver's efforts to administer the estate, liquidate properties, and implement an orderly claims process. The fact that the lion's share of the claimants make no objection to the Receiver's efforts further demonstrates the reasonableness of his work, his benefit to the estate, and his entitlement to compensation.

**D. Conclusion**

The Receiver seeks compensation for work he performed and directed, using his reasonable business judgment, which benefitted the Receivership Estate. His bills reflect his efforts to both fulfill his Court-imposed mandates and to respond to voluminous motions, objections, and requests by the institutional lenders. The Court should allow the Receiver to be paid for his efforts, and to continue working for the benefit of the victimized investors and other creditors.

                                              Respectfully submitted,

Dated: June 28, 2021                     /s/ Benjamin Hanauer
                                              Benjamin J. Hanauer (hanauerb@sec.gov)
                                              Timothy J. Stockwell (stockwellt@sec.gov)
                                              U.S. Securities and Exchange Commission
                                              175 West Jackson Blvd., Suite 1450
                                              Chicago, IL 60604
                                              Phone: (312) 353-7390
                                              Facsimile: (312) 353-7398

**CERTIFICATE OF SERVICE**

      I hereby certify that I provided service of the foregoing Reply, via ECF filing, to all counsel of record and Defendant Shaun Cohen, on June 28, 2021.

          /s/ Benjamin Hanauer
          Benjamin J. Hanauer
          175 West Jackson Blvd., Suite 1450
          Chicago, IL 60604
          Phone: (312) 353-7390
          Facsimile: (312) 353-7398

          One of the Attorneys for Plaintiff