# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., EQUITYBUILD ) FINANCE, LLC, JEROME H. COHEN, ) and SHAUN D. COHEN, ) ) Defendants. ) | No. 18 C 5587<br><br>Judge John Z. Lee |

## ORDER

Before the Court is the Receiver's twelfth motion to confirm the sale of 638-40 North Avers Avenue, Chicago, Illinois 60624 ("638-40 North Avers"), and for the avoidance of certain mortgagees, liens, claims, and encumbrances. Sabal TL1, LLC ("Sabal"), which holds a security interest[1] in the property, *see* Twelfth Mot. Confirm Sales ¶ 25(c), ECF No. 962, has objected to the sale, *see* Obj. Twelfth Mot., ECF No. 974. For the following reasons, Sabal's objection is overruled, and the Receiver's motion is granted.

---

[1] Sabal is the assignee of the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *See* Twelfth Mot. Confirm Sales ¶ 25(c); Twelfth Mot. Confirm Sales, Ex. E, Twenty-Second Addendum to Purchase and Sale Agreement, ECF No. 962 at 37. Because the distinction between Sabal and Freddie Mack is immaterial to ruling on the Receiver's motion, the Court will refer to both entities as "Sabal."

**STATEMENT**

The order appointing the Receiver in this case authorized the Receiver to take "all necessary and reasonable actions" to sell or lease "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." Order Appointing Receiver ¶ 38, ECF No. 16. Pursuant to that authority, in February 2019, the Receiver moved for, and received, court approval of the process for the public sale of certain real property belonging to the Receivership Estate. *See* Receiver's Second Mot. Court Approval Process Public Sale of Real Property, ECF No. 228; 5/2/19 Order, ECF No. 352; 10/4/19 Order, ECF No. 540. The 638-40 North Avers property was included in the scope of that motion and order.

The Receiver then marketed 638-40 North Avers to thousands of prospective purchasers, with an asking price of $700,000. *See* Twelfth Mot. Confirm Sales ¶ 13; Twelfth Mot. Confirm Sales, Ex. B ("Baasch Decl."), ¶ 5, ECF No. 962 at 14–15. The asking price was set based on the advice of the Estate's real estate brokers and the Receiver's retained professionals. Twelfth Mot. Confirm Sales ¶ 13. After the property was toured by fifteen interested parties, the highest and best bid was $710,000. *Id.* ¶ 14. The Receiver next invited credit bidding[2] from the secured lender, and Sabal offered $724,200, which the Receiver accepted. *Id.* ¶ 15–16.

---

[2] Credit bidding is a "means [for lenders] to protect themselves from the risk that the winning auction bid will not capture the asset's actual value. If a secured lender feels that the bids that have been submitted in an auction do not accurately reflect the true value of the asset and that a sale at the highest bid price would leave them undercompensated, then

2

Unfortunately, shortly thereafter, a fire occurred at the property, causing extensive damage, and requiring tenants to be relocated. *Id.* ¶ 17. The Receiver collected $406,086.41 in insurance proceeds associated with the fire damage (net of the $100,000 deductible), but spent $43,625.92 on adjuster fees and emergency board-up costs. *Id.* ¶ 18; Receiver's Reply Supp. Twelfth Mot. Confirm Sales ("Reply") at 3, ECF No. 997.

Pursuant to the purchase and sale agreement, Sabal was entitled to terminate the contract after receipt of notice of material damage to the property as the result of a fire or other casualty. Twelfth Mot. Confirm Sales ¶ 19. In the end, after negotiating with the Receiver for over a year, Sabal terminated the sale contract on February 5, 2021. *Id.* ¶ 20.

Instead of re-noticing the property for public sale, the Receiver marketed 638-40 North Avers only to prospective purchasers that originally made offers on it, as well as three other potential purchasers who had previously expressed an interest in any additional Equitybuild properties that became available. *Id.* ¶ 22; Reply at 2. Three potential buyers pursued the opportunity, and the highest bid ultimately came in at $370,000 from PRE Holdings 16 LLC ("PRE Holdings"). Twelfth Mot. Confirm Sales ¶ 23.

---

they may use their credit to trump the existing bids and take possession of the asset. In essence, by granting secured creditors the right to credit bid, the [Bankruptcy] Code promises lenders that their liens will not be extinguished for less than face value without their consent." *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 650 (7th Cir. 2011).

3

The Receiver now seeks court approval to sell 638-40 North Avers to PRE Holdings. Sabal opposes the motion, primarily asserting that the Receiver should have remarketed the property more widely before accepting the bid from PRE Holdings. *See* Obj. Twelfth Mot. at 2–3.[3]

The Receiver asserts several justifications for the process used to obtain PRE Holdings's offer. First, he asserts that the abbreviated marketing was recommended by the Estate's broker, and he points out that Sabal does not specify what other marketing should have been undertaken, or why another method would have resulted in a better outcome. Although Sabal asserts that the real estate market has undergone significant changes since August 2019, it does not explain how such changes might have resulted in a higher bid than the one the Receiver obtained if the Receiver had relisted the property. And, the Receiver accounted for the carrying costs (such as payment for steel doors and windows to protect the vacant, fire-damaged property, continuing real estate tax accruals, defense of City of Chicago notices of violation, and property management services necessary to ensure the integrity and safety of the property) and other risks that would be

---

[3] Section II of Sabal's objection parrots objections that similarly situated Institutional Lenders have asserted in opposition to prior sales motions. *Compare* Sabal's Obj. at 3–13 *with* Certain Mortgagees' Obj. Tenth Sales Mot. at 11–21 (Sections I.A–D.), ECF No. 820. The Court has already rejected these arguments. *See, e.g.*, 3/31/21 Order at 3–4 ("the Court already . . . approved the sales of properties for prices amounting to less than the mortgages securing them, Mar. 31, 2020 Order at 7, ECF No. 676; approved the sales of properties free and clear of any liens or encumbrances provided that those liens attach to the ultimate sales proceeds of the properties, Dec. 12, 2019 Minute Entry, ECF No. 601; and . . . . rejected the lenders' Fifth Amendment Takings Clause argument as unsupported by existing law." (quoting 10/26/20 Order at 4–5, ECF No. 825)). Sabal raises no difference in circumstances or new information that would warrant revisiting the previously rejected arguments; as such, the Court overrules the objections made in Section II of Sabal's brief.

incurred by holding the property for a longer period, relisting it, and engaging in a lengthier marketing effort.[4] The Court is entitled to rely on the business judgment of the Receiver in such matters. *See PPUC Penn. Pub. Util. Comm'n v. Gangi*, 874 F.3d 33, 39 (1st Cir. 2017) ("In the absence of reliable evidence indicating that the sale was unfair, the district court relied on the business judgment of the receiver who had worked with it for five years, over [the defendant's] unsupported objections. This was not an abuse of discretion . . . .").

Second, the Receiver points out that PRE Holdings's bid is an all-cash offer with no financing or inspection contingencies. Furthermore, PRE Holdings's offer must be considered in light of the insurance proceeds. When PRE Holdings's cash bid of $370,000 is added to the $362,460.49 in insurance proceeds (net of the $100,000 deductible and $43,625.92 spent on adjuster fees and emergency board-up costs), the Receiver has obtained $732,460.49 for 638-40 North Avers—more than the $724,200 Sabal originally agreed to pay.

"[C]onfirmation of a judicial sale rests in the sound discretion of the district court and will not be disturbed on appeal except for abuse." *United States v. Peters*, 777 F.2d 1294, 1298 n.6 (7th Cir. 1985). After considering the evidence presented by the Receiver and Sabal, the Court finds that the marketing procedures used and the sales price obtained are beneficial to the estate and demonstrate due

---

[4] The Receiver also notes the likelihood that Sabal would object no matter what path the Receiver pursued.

5

regard for the realization of the true and proper value of 638-40 North Avers. *See* Order Appointing Receiver ¶ 38.

Thus, Sabal's objection to the sale of 638-40 North Avers is overruled, and the Receiver's twelfth sales motion is granted.[5]

**IT IS SO ORDERED.**                                        ENTERED: 7/16/21

_____
**John Z. Lee**
**United States District Judge**

---

[5] In its objection, Sabal also asserts that its lien on the property should attach to the insurance proceeds in addition to the sales price. *See* Obj. at 13. But Sabal's objection is so cursory that it is difficult to understand, and so the Court deems it waived. *See United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020) (noting that "[p]erfunctory and undeveloped arguments" may be considered "waived, as [may] arguments unsupported by legal authority"). Nonetheless, in his Reply, the Receiver confirms the Court's understanding that the validity and priority of Sabal's claim will be resolved through the summary claim-priority adjudication process. *See* Reply at 4–5. And, under analogous circumstances, the Court has approved the Receiver's use of sales proceeds to cover similar administrative costs. *See, e.g.*, 4/30/21 Order Granting Receiver's Mot. Approve Use of Proceeds from Sale of Receivership Property, ECF No. 984. Here, the Receiver states that he intends to pay costs incurred to preserve, maintain, and cover the expenses of 638-40 North Avers. To the extent that Sabal opposes this use of the proceeds that objection is also overruled. But the Court clarifies its expectation that, absent Court approval, the insurance proceeds are not unencumbered assets for use in the general administration of the Estate or other properties. *Cf.* 2/13/19 Mem. Op. & Order of Magistrate Judge Young B. Kim at 8 (ordering the Receiver not to commingle the rents generated by each property but rather to use the rents solely for the benefit of that property).