|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) |  |
| **Plaintiff,** | ) ) | **Civil Action No. 18-cv-5587** |
| **v.** | ) ) | **Judge John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) ) |  |

## FOURTEENTH MOTION TO CONFIRM THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), respectfully moves for approval of the sale of certain real estate and for the avoidance of certain mortgages, liens, claims, and encumbrances.

To the extent that this motion makes reference to "secured" interests or "released" mortgages, those references are descriptive only and not intended as representations that the subject security instruments have been conclusively determined "secured" or "released." This motion takes no position with respect to the validity or priority of any encumbrance referenced herein, and the order in which any encumbrances are enumerated in the paragraphs that follow should not be construed as a finding or opinion regarding such issues.

***This Court Authorized The Receiver To Sell Assets Owned By The Receivership Defendants.***

1.      The United States Securities and Exchange Commission filed this case against EquityBuild, EquityBuild Finance, Jerome Cohen, and Shaun Cohen alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a).

2.      In its August 17, 2018 Order Appointing Receiver (Dkt. 16), the Court assumed exclusive jurisdiction over, and possession of, the assets of EquityBuild.

3.      In the Order Appointing Receiver, the Court conferred upon the Receiver (1) "all powers, authorities, rights and privileges" theretofore possessed by the principals of the Receivership Defendants under applicable state and federal law, as well as by the governing operating and shareholders' agreements, and (2) all powers and authority of a receiver at equity, as well as all powers conferred upon a receiver under 28 U.S.C. §§ 754, 959, and 1692, and FRCP 66.  (Dkt. 16, ¶ 4)

4.      The Court further authorized the Receiver to "take all necessary and reasonable actions to cause the sale" of "all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property." (*Id.*)

***The Receiver Will Provide Fair, Adequate, And Sufficient Notice Of This Motion To All Interested Parties.***

5.      In addition to service through the Court's electronic case filing system, the Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested

parties of which he is currently aware by electronic mail (to the extent he possesses an e-mail address) or by regular mail if he possesses a mailing address but no e-mail address.

6.     The Receiver will use information obtained from EquityBuild's records, as well as communications received during the course of the Receivership, to ensure that contact information is as complete as reasonably possible.

7.     A copy of this motion will also be posted on the Receiver's webpage at *http://rdaplaw.net/receivership-for-equitybuild.*

### The Court Should Confirm The Private Sale Of A Vacant Parcel Of Land In Houston, Texas, Pursuant To 28 U.S.C. § 2001.

8.     The court should confirm the private sale of a vacant parcel of land located at 1102 Bingham Street, Houston, Texas 77007 ("1102 Bingham").

9.     On September 13, 2019 (Dkt. 522), the Receiver moved for leave to retain Integra Realty Resources, Southwest Realty Consultants, and Greenbriar Appraisal Company to provide market value appraisals of 1102 Bingham and to list the property for sale, and that motion was granted by Order dated October 15, 2019 (Dkt. 544).

10.     Pursuant to 28 U.S.C. § 2001, the Court may confirm a private sale of realty if (1) the sale price is no less than two-thirds of the appraised value as ascertained by three disinterested, court-appointed appraisers, (2) the terms of the sale are published in a newspaper of general circulation at least ten days before confirmation, and (3) following said publication notice, no person offers to purchase the property for an amount at least ten percent higher than the price obtained through the private sale.

11.     An appraisal of 1102 Bingham submitted by Greenbriar Appraisal Company indicated an "as is" market value of $1,020,000 as of October 23, 2019. (A true and accurate copy is attached at Tab A.)

12.     An appraisal of 1102 Bingham submitted by Integra Realty Resources indicated an "as is" market value of $1,200,000 as of October 22, 2019. (A true and accurate copy is attached at Tab B.)

13.     An appraisal of 1102 Bingham submitted by Southwest Realty Consultants indicated an "as is" market value of $1,100,000 as of October 18, 2019. (A true and accurate copy is attached at Tab C.)

14.     The Receiver entered into an Exclusive Sales Listing & Asset Management Agreement with SVN/AVR Commercial Real Estate Services ("SVN/AVR") on August 12, 2019, and that agreement was amended on November 6, 2020 to extend the term.

15.     Tony Roubik, the Managing Director of SVN/AVR, is a commercial real estate broker who has specialized in the sale of office, industrial, multi-family, self storage, and retail properties in Houston, Texas for more than thirty years. (Declaration of Tony Roubik, Tab D, ¶ 3.)

16.     Mr. Roubik listed 1102 Bingham for sale on CoStar and LoopNet (each a national commercial real estate data platform), on the SVN website, and with the Houston Association of Realtors multiple listing service. (*Id.*, ¶ 5.)

17.     Mr. Roubik also created an offering memorandum touting the site as a luxury townhome development opportunity in a prime location within walking distance of numerous lifestyle amenities and with excellent views of the Houston skyline, and SVN "e-mail blasted" it to over 500,000 known buyers of commercial real estate in their nationwide database. (*Id.*, ¶ 6.)

18.     Metrics made available by CoStar and LoopNet indicate that the listings on their websites were viewed by 11,619 prospects 57,203 times. (*Id.*, ¶ 7.)

19.     On December 16, 2019, Mr. Roubik presented 1102 Bingham on SVNLive, a web broadcast viewed by thousands of commercial real estate brokers and investors. (*Id.*, ¶ 8.)

20.     Although he originally advertised the property for sale at $1,295,000, the initial marketing efforts did not generate sufficient interest, so he lowered the asking price to $995,000 on March 9, 2020, updated all the marketing materials and online listings accordingly, and sent a new e-mail blast notifying all addressees of the reduction in offering price. (*Id.*, ¶ 9.) In each instance, the asking price was set following consultation with and the approval of the Receiver.

21.     An offer to purchase the property for $840,000 was ultimately submitted on May 5, 2020, but that offer was later withdrawn with the prospective purchaser citing concerns about the economic uncertainty associated with the Covid-19 pandemic. (*Id.*, ¶ 10.)

22.     Zeppelin Realty LLC offered to purchase the property for $825,000 on September 16, 2020 (*id.,* ¶ 11), and, on or about November 18, 2020, following several rounds of negotiation, the Receiver entered into a contract to sell 1102 Bingham for $892,500, a price greater than two-thirds of the "as is" market value ascertained by each of the three court-appointed appraisers. (A true and accurate copy is attached at Tab E.)

23.     The Receiver published notice of the terms of the sale of 1102 Bingham in the Houston Chronicle, a newspaper of general circulation in Houston, Texas, on June 23, 2021. (A true and accurate copy of the Affidavit of Publication is attached at Tab F.)

24.     Title to 1102 Bingham is clouded by, among other things, the following encumbrances of record:

a.     that certain Deed of Trust dated April 1, 2014 and recorded April 3, 2014 in Harris County Clerk File No. 20140134453 granted by EquityBuild, Inc., a Florida corporation d/b/a EB EquityBuild Capital, Inc. in favor of Shaun Cohen, Trustee, for those specific parties reflected in the Note c/o Hard Money Company, LLC, a Delaware limited liability company d/b/a Venture Hard Money Capital, LLC;

b.　　that certain Deed of Trust dated August 16, 2018 and recorded August 27, 2018 in Harris County Clerk File No. RP-2018-392596 granted by EquityBuild, Inc., a Florida corporation d/b/a EB EquityBuild Capital, Inc. in favor of Shaun Cohen, Trustee, for Tikkun Holdings, LLC;

c.　　that certain Notice of Lis Pendens recorded March 1, 2018 in Harris County Clerk File No. RP-2018-87604 in connection with the lawsuit captioned *Anson Markwell, as Trustee for the Amark Investment Trust v. EquityBuild, Inc. d/b/a EB EquityBuild Capital, Inc., et al.,* 165th State District Court of Harris County Texas, Case No. 2018-13722; and

d.　　that certain Notice of Lis Pendens recorded June 28, 2018 in Harris County Clerk File No. RP-2018-289229 in connection with the lawsuit captioned *Anson Markwell, as Trustee for the Amark Investment Trust v. EquityBuild, Inc. d/b/a EB EquityBuild Capital, Inc., et al.,* United States District Court for the Southern District of Texas, Houston Division, Civil Action No. 4:18-cv-01274.

***The Receiver Will Be Required To Pay Certain Costs Associated With The Conveyance Of <u>1102 Bingham</u>.***

25.　　At the closing of the sale of <u>1102 Bingham</u>, certain costs and expenses will be paid from the sale proceeds, including, but not limited to, (1) a $5,008 premium associated with the delivery of a policy of owner's title insurance, (2) the cost of state, local, and municipal transfer taxes, (3) a $450 closing (or escrow) fee assessed by the title company, (4) the reimbursement to Andrew E. Porter, counsel for the Receiver, of an advance in the amount of $869.11 associated with the publication of the legal notice of sale, and (5) a series of ancillary and customary charges including, among other things, a $2.00 State of Texas Policy Guaranty Fee and a $250 recording fee.

26.     To convey clear title to the property, the Receiver will also likely be required to pay certain liens on the property currently estimated in the following amounts:

a.      an amount equal to $24,790.95 plus penalties and accrued interest in respect of delinquent 2018 Harris County, Texas real property taxes;

b.      an amount equal to $30,059.12 plus penalties and accrued interest in respect of delinquent 2019 Harris County, Texas real property taxes;

c.      an amount equal to $54,850.07 plus penalties and accrued interest to obtain a release of that certain State Tax Lien recorded against EquityBuild, Inc. on May 2, 2019 in Harris County Clerk File No. RP-2019-181361;

d.      an amount equal to $125.00 plus interest accrued at ten percent per annum to obtain a release of that certain Notice of Lien for Work or Improvements dated August 20, 1981 and recorded September 11, 1981 in Harris County Clerk File No. H138074;

e.      an amount equal to $235.00 plus interest accrued at ten percent per annum to obtain a release of that certain Notice of Lien for Work or Improvements dated February 28, 1983 and recorded March 29, 1983 in Harris County Clerk File No. H874706;

f.      an amount equal to $389.43 plus interest accrued at ten percent per annum to obtain a release of that certain Statement and Notice of Lien for Work or Improvements dated June 27, 2017 and recorded June 30, 2017 in Harris County Clerk File No. RP-2017-294376;

g.      an amount equal to $1,565.50 plus interest accrued at ten percent per annum to obtain a release of that certain Statement and Notice of Lien for Work or Improvements

dated February 4, 2019 and recorded February 7, 2019 in Harris County Clerk File No. RP-2019-52313; and

      h.      a sales commission in the amount of 5.5% of the sales price, or $49,087.50, to SVN/AVR for real estate brokerage services.

***The Receiver Will Segregate And Hold The Sales Proceeds In A Separate Sub-Account.***

27.      Pending the completion of the claims process and a to-be-approved distribution plan, the proceeds from the sale of 1102 Bingham will be held in a separate subaccount established by the Receiver (and for which the Receiver will maintain an accounting as to all sums deposited therein) and will not be available to pay operating expenses of the Receivership, absent further order of Court. The inclusion of such amounts in a separate subaccount does not constitute an admission that any or all such amounts are subject to a valid security interest. The actual amount of sales proceeds in the subaccount to which the parties claiming the secured interest are entitled will be subject to determination through the claims process. The Receiver reserves all rights to seek a transfer of any such proceeds to the Receiver's operating account by subsequent Order of the Court.

WHEREFORE, the Receiver respectfully requests that this Court grant the Fourteenth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances by entering an order in the form attached at Tab G approving the sale of 1102 Bingham free and clear of the mortgages, liens, claims, and encumbrances identified herein, and with all such mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had prior to the sale.

Dated:  July 19, 2021                         Kevin B. Duff, Receiver

                                   By:     /s/ Michael Rachlis
                                           Michael Rachlis
                                           Jodi Rosen Wine
                                           Rachlis Duff & Peel LLC
                                           542 South Dearborn Street, Suite 900
                                           Chicago, IL 60605
                                           Phone (312) 733-3950
                                           *mrachlis@rdaplaw.net*
                                           *jwine@rdaplaw.net*

**APPRAISAL OF**

One tract of effectively vacant land
containing 0.6887 Acres,
located along the north side of Bingham Street,
approximately 263 feet east of Holly Street, Houston,
Harris County, Texas 77007.

**PREPARED FOR**

Mr. Kevin B. Duff
c/o Ms. Justyna G. Rak
Rachlis Duff Peel & Kaplan, LLC.
542 S. Dearborn Street, Suite 900
Chicago, IL 60605

Date of Value:   October 23, 2019
Date of Report:   October 31, 2019

**Tab**

**A**

exhibitsticker.com





**BRAD KANGIESER, MAI, SRA**

October 31, 2019

Mr. Kevin B. Duff
c/o Ms. Justyna G. Rak
Rachlis Duff Peel & Kaplan, LLC.
542 S. Dearborn Street, Suite 900
Chicago, IL 60605

Reference:    Appraisal Report of one tract of effectively vacant land containing 0.6887 acres, located along the north side of Bingham Street, approximately 263 feet east of Holly Street, Houston, Harris County, Texas 77007.

Dear Mr. Duff:

In compliance with your request, the above-referenced property has been visited and appraised as of October 23, 2019. The subject site is 30,000 square feet or 0.6887 acres of effectively vacant land located along the north side of Bingham Street, approximately 263 feet east of Holly Street, Houston, Texas 77007. The subject is improved with a 918 square foot single family residential home, built in 2002. The improvements were in poor condition at the time of our site visit with the appliances and some plumbing fixtures missing as well as the property overgrown. Based on the size and condition of the improvements, as well as the location of the site, the residence is not considered to add any contributory value to the site.

**The site was overgrown and there were some abandoned tires located on it. The value in this report is based on the extraordinary assumption that there are no environmental conditions which would affect value. If there are conditions noted, the value contained within this report could be impacted.**

The purpose of this report is to form an opinion of the "as is" market value of the subject property. The report is based on our site visit and on research into various factors that influence value. Since the subject is effectively vacant land, only the sales comparison approach to value has been utilized to estimate the market value. In our opinion, the "as is" market value of the fee simple estate of the subject property, as of October 23, 2019, based on a one year exposure period, is as follows:

**$1,020,000**

Market Value, as further defined in this report, is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeable, and assuming the price is not affected by undue stimulus.

In accordance with the definition of Market Value utilized in this appraisal report, the marketing period as set forth in this report represents the time period required to sell the subject property, allowing for currently identified market conditions and factors. Based on the quality and location, as well as the current market conditions, it is the appraisers' opinion that the market value of the subject property is based on an anticipated exposure period of one year.

Prior to accepting this assignment, the appraisers concluded that they have the necessary experience and/or knowledge to competently complete the appraisal, and during the preparation of the appraisal, the appraisers have not discovered any areas in the assignment requiring appraisal expertise in which we were lacking.

The above statements of appraiser competency applies to knowledge and/or experience for the real estate appraisal discipline and not other areas of trades, professions or disciplines such as engineering, surveyors, attorneys, etc.

Our site visit did not reveal, nor did we observe, or are we aware of any natural, cultural, environmental, recreational, or scientific value influences affecting the subject property. Additionally, we have not made a specific Americans with Disabilities Act (ADA) compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. The opinion of value is predicated on the assumption that no such influences are present that would affect our value conclusions.

We have no expertise in these fields and no responsibility is assumed for any such conditions or for any expertise, engineering or other special knowledge required to discover them. Such studies are required before these values can be relied on by readers of this report.

To the best of our understanding this report conforms to the appraisal guidelines of Appraisal Standards and Definitions, FIRREA, and the rules of the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation.

We certify that we have no interest, present or proposed, in the subject property, that the opinion herein has been reached after investigation, analysis and study of pertinent data, and that our fee is in no way contingent upon the value reached. This appraisal is made subject to our current contingent and limiting conditions.

Sincerely,

Brad Kangieser, MAI, SRA
#TX-1320289-G

Brian O'Connell, Trainee
#TX-1341259

# TABLE OF CONTENTS

Title Page                                                          i.
Letter of Transmittal                                               ii.
Table of Contents                                                  iv.
Summary of Important Data and Conclusions                           v.
Certification                                                       vi.
Contingent and Limiting Conditions                               viii.

**INTRODUCTION**
Type of Value                                                       1.
Appraisal Scope of Work                                             1.
Intended Use of the Appraisal                                       1.
Identification of the Subject Property                              1.
Property History and Statement of Ownership                         2.
Date of Valuation                                                   2.
Property Rights Appraised                                           3.
Definition of Market Value                                          3.

**FACTUAL DESCRIPTIONS**
Neighborhood Analysis                                               4.
Site Data                                                           8.
Zoning                                                             14.
Tax Information                                                    14.

**ANALYSIS OF DATA AND OPINIONS OF THE APPRAISER**
Highest and Best Use                                               15.
Sales Comparison Approach to Value - Land Only                     16.
Correlation and Final Value Opinion                                19.

**ADDENDA**
Qualifications                                                      A.
Comparable Land Sales and Map                                      B.
Comparable Improved Sales and Map                                  C.
Subject Photographs                                                D.
Flood Map                                                          E.
Engagement Letter                                                  F.

# SUMMARY OF SALIENT FACTS AND CONCLUSIONS

| | |
|---|---|
| **Identification** | Effectively vacant land. |
| **Location** | The subject is located along the north side of Bingham Street, approximately 263 feet east of Holly Street, Houston, Harris County, Texas 77007. |
| **Property Right Appraised** | Fee Simple Estate. |
| **Site Description** | 0.6887 Acres (30,000 S.F.) |
| **Flood Zone** | A portion of the subject appears to be located within Shaded Zone X; areas determined to be inside the 500-year floodplain, FIRM #48201C0690N, January 6, 2017. |
| **Zoning** | None (City of Houston). |
| **Improvements** | The subject is improved with a 918 square foot single family residential home, built in 2002. These improvements are considered to add any contributory value. Therefore, we have considered the subject to be effectively vacant land. |
| **Highest and Best Use** | As Vacant; speculative investment with the most likely future use being a high density residential development.<br>As Improved; redevelopment to highest and best use as vacant. |

## VALUE INDICATIONS

| | |
|---|---|
| **Sales Comparison Approach**<br>**Land Only-** | $1,020,000     ($34.00 Per Square Foot) |
| **Exposure Period** | 12 Months |
| **Marketing Time** | 12 Months |
| **Date of Site Visit** | October 23, 2019 |
| **Date of Value** | October 23, 2019 |
| **Date of Report** | October 31, 2019 |

# <u>CERTIFICATION</u>

We certify that, to the best of our knowledge and belief:

(1)    The statements of facts contained in this report are true and correct.

(2)    The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

(3)    We have no present or prospective interest in the property that is the subject of this report, and we have no personal interest with respect to the parties involved.

(4)    I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within a three-year period immediately preceding acceptance of this assignment.

(5)    We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

(6)    Our engagement in this assignment was not contingent upon developing or reporting a predetermined results.

(7)    Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

(8)    The Appraisal Assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

(9)    Our analyses, opinions, or conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

(10)    Brian O'Connell has made a personal inspection of the property that is the subject of this report. Brad Kangieser has not made a personal inspection of the property that is the subject of this report.

(11)    No one provided significant real property appraisal assistance to the persons signing this certification.

(12)    The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute.

(13)    The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

(14)    As of the date of this report, Brad Kangieser, has completed the requirements of the continuing education program for Designated Members of the Appraisal Institute.

## CERTIFICATION - CONTINUED

(15)    As of the date of this report, Brad Kangieser is a Texas State Certified General Real Estate Appraiser.

(16)    The "as is" market value of the fee simple estate of the subject property, based on a one year exposure period, as of October 23, 2019 is as follows:

**$1,020,000**

_____               _____
Brad Kangieser, MAI, SRA                                    Brian O'Connell, Trainee
#TX-1320289-G                                            #TX-1341259

# CONTINGENT AND LIMITING CONDITIONS

This appraisal is subject to the following limiting conditions.

The legal description furnished to us is assumed to be correct. We assume no responsibility for matters legal in character, nor do we render any opinion as to the title, which is assumed to be good and marketable unless otherwise stated. Any existing liens and encumbrances have been disregarded and the property appraised as though free and clear under responsible ownership and competent management, unless otherwise indicated.

We have made no survey and assume no responsibility in connection with such matters. We believe the information in this report furnished by others to be reliable, but no warranty is given for its accuracy. This includes, but is not limited to, information obtained in regard to operating statements, rent rolls, flood plains, wetlands, geological fault lines, sufficiency of public utilities, and land or surface subsidence. The construction and condition of the improvements mentioned in the body of this report is based on observation and no engineering study has been made, unless previously noted, which would discover latent defects. No certification as to construction or any of the physical aspects could be given unless a proper engineering study were made.

No fault line, flood plain, or subsidence study has been made by the appraisal firm and could be under taken only by a qualified engineering firm.

It is assumed that the property is in full compliance with all applicable federal, state, and local environmental regulations and laws unless the lack of compliance is stated, described, and considered in the appraisal report.

It is assumed that the property conforms to all applicable zoning and use regulations and restrictions unless a nonconformity has been identified, described and considered in the appraisal report.

It is assumed that all required licenses, certificates of occupancy, consents, and other legislative or administrative authority from any local, state, or national government or private entity or organization have been or can be obtained or renewed for any use on which the value estimate contained in this report is based.

The distribution of the total valuation between land and improvements in this report applies only under the existing program of utilization. The separate valuations for land and improvements must not be used in conjunction with any other appraisal, and are invalid if so used.

Any value estimates provided in the report apply to the entire property, and any proration or division of the total into fractional interest will invalidate the value estimate, unless such prorations or division of interests has been set fourth in the report.

The appraiser, by reason of this appraisal, is not required to give further consultation or testimony or to be in attendance in court with reference to the property in question, unless arrangements have been previously made.

Possession of this report or a copy thereof does not carry with it the right of publication. It may not be used for any purpose by anyone other than the addressee without the previous written consent of the appraiser.

Neither all, nor any part of the contents of this report shall be conveyed to the public through advertising, public relations, news, sales or other media, without the consent and approval of the author, particularly as to valuation conclusions, and identity of the appraiser or firm with which he/she is connected, or any reference to the Appraisal Institute, or the MAI designation, or the SRA designation.

# CONTINGENT AND LIMITING CONDITIONS - CONTINUED

This report is written in conformity with the professional standards of practice and code of ethics of the Appraisal Institute, the Uniform Standards of Professional Appraisal Practice and the rules of the Texas Appraisal Licensing and Certification Board unless otherwise stated.

Unless otherwise stated in this report, the existence of hazardous substances, including without limitation asbestos, polychlorinated biphenyls, petroleum leakage, or agricultural chemicals, which may or may not be present on the property, or other environmental conditions, were not called to the attention of nor did the appraiser become aware of such during the appraiser's site visit. The appraiser has no knowledge of the existence of such materials on or in the property unless otherwise stated. The appraiser, however, is not qualified to test such substances or conditions. If the presence of such substances, such as asbestos, urea formaldehyde foam insulation, or other hazardous substances or environmental conditions, may affect the value of the property, the value estimated is predicated on the assumption that there is no such condition on or in the property or in such proximity thereto that it would cause a loss in value. No responsibility is assumed for any such conditions, nor for any expertise or engineering knowledge required to discover them.

The appraiser represents that he/she is not an expert to appraise insulation or other products banned by the Consumer Products Safety Commission which might render the property more or less valuable. In connection with this appraisal, the appraiser has not inspected or tested for, nor taken into consideration in any respect the presence or absence of insulation or other said products increase or decrease in the value of the property from the value placed thereon by the opinion of the appraiser.

The Americans with Disabilities Act (ADA) became effective January 26, 1992. I (we) have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detailed analysis of the requirements of the ADA could reveal that the property is not in compliance with one or more of the requirements of the act. If so, this fact could have a negative impact upon the value of the property. Since I (we) have no direct evidence relating to this issue, I (we) did not consider possible noncompliance with the requirements of ADA in estimating the value of the property.

It is understood that this assignment and the payment of our fee is not dependent or contingent upon any loan commitment, sale, trial outcome, receipts of funds by you, or any other condition or contingency.

This report may be relied upon by "CLIENT" in determining whether to make a loan evidenced by a note (the "Property Note") which is further secured by the Property. The report may be relied upon by any purchaser or assignee of the Property Note in determining whether to acquire the Property Note or an interest therein. In addition, the report may be relied upon by any rating agency involved in rating securities secured by, or representing an interest in the Property Note. This report may be used in connection with materials offering for sale the Property Note, or an interest in the Property Note, and in presentations to any rating agency. With respect to the foregoing, the report speaks only as of the origination date of the report unless specifically updated through a supplemental report.

**TYPE OF VALUE**

The type of value appraised in this report is the "as is" market value of the subject property based on terms of cash or cash equivalent financing as of October 23, 2019.

**APPRAISAL SCOPE OF WORK**

In preparation of this appraisal report, all three approaches (Cost Approach, Income Approach, and Sales Comparison Approach) to value recognized by the appraisal profession, were considered in forming an opinion of market value of the subject property. In this instance, the Sales Comparison Approach was deemed the only applicable approach. The Cost and Income Approaches were not considered applicable methods to value the subject due to the property type being appraised (effectively vacant land).

Furthermore, we have researched Harris County to find market data regarding land sales and improved sales. In all cases, the data is verified with either the grantor, grantee, broker, property manager, third party or through public records. Additionally, we have interviewed real estate professionals to obtain their opinions regarding trends in the local real estate market. Investor strategies have been collected, analyzed and used within the report to arrive at the opinion of market value contained herein. We have also investigated tax records to obtain tax information on the subject property.

The statistical market data was obtained through MLS, CB Richard Ellis, Co-Star, Moody's Economic Report and State of Texas.

**INTENDED USE OF THE APPRAISAL**

The client and intended user of this report is Mr. Kevin B. Duff and Ms. Justyna G. Rak. This report is intended only for use by Mr. Kevin B. Duff and Ms. Justyna G. Rak for internal auditing purposes regarding the subject. Use of this report by others is not intended by the appraisers. This report is not intended for any other use.

**IDENTIFICATION OF THE PROPERTY**

The subject property consists of one tract of effectively vacant land containing 30,000 square feet, or 0.6887 acres located along the north side of Bingham Street, approximately 263 feet east of Holly Street. The legal description for the subject site is as follows: 0.6887 acres being out of and a part of Lots 1 and 8-12, Block 242, Baker NSBB, Houston, Harris County, Texas 77007. The subject is basically L-shaped and is effectively vacant. The site has a physical address of 1102 Bingham Street, Houston, Harris County, Texas 77007.

## PROPERTY HISTORY AND STATEMENT OF OWNERSHIP

According to the Harris County Appraisal District, the subject is currently owned by EB EquityBuild Capital, Inc., who have owned the property in excess of three years.  To the best of our knowledge there have not been any transactions involving the subject in the last three years. Additionally, the appraiser is not aware of any other pending contracts or listing agreements involving the subject property.

## DATE OF VALUATION

Our opinion of the "as is" market value of the subject property is effective as of October 23, 2019.

## PROPERTY RIGHTS APPRAISED

The property rights being appraised in this report consist of a fee simple valuation for the subject. Fee simple estate is defined by The Dictionary of Real Estate Appraisal, Sixth Edition, copyright 2015, page 90, by the Appraisal Institute as being:

> "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power and escheat."

## DEFINITION OF MARKET VALUE

Market Value is the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably, and assuming that the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of specified date and the passing of title from seller to buyer under conditions whereby:

a.  Buyer and seller are typically motivated;

b.  Both parties are well informed or well advised, and each acting in what they consider their own best interest;

c.  A reasonable time is allowed for exposure in the open market;

d.  Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

e.  The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

(Source: 12 C.F.R. Part 34.42(g); 55 Federal Register 34696, August 24, 2990, as amended at 57 Federal Register 12202, April 9, 1992; 59 Federal Register 29499, June 7, 1994)

# NEIGHBORHOOD ANALYSIS

Neighborhood is defined by <u>The Dictionary of Real Estate Appraisal,</u> (Sixth Edition) copyright 2015, page 156, by the Appraisal Institute as being:

> "1). A group of complementary land uses; a congruous grouping of inhabitants, buildings, or business enterprises.
>
> 2). A developed residential super pad within a master planned community usually having a distinguishing name or entrance."

Neighborhoods may be devoted to such uses as residential, commercial, industrial, agricultural, and civic activities, or a mixture of these uses. Analysis of the neighborhood in which a particular property is located is important due to the fact that the various economic, social, political, and physical forces which affect that neighborhood also directly influence the individual properties within it.

**Delineation.** The subject property is located approximately one to three miles northwest of Houston's Central Business District in what is commonly known as The Heights, Washington Avenue, or White Oak Bayou District. Generally, the area is bound on the north by the W. 11th Street, on the south by Washington Avenue, on the east by Interstate 45 North, and on the west by West Loop 610.

**Major Traffic Carriers.** The major traffic arteries in the subject neighborhood are the 610 Loop, Interstate 10, and Interstate 45.

Interstate 10 is a multi-lane, divided, concrete paved roadway traversing Houston and Harris County in an east/west direction and serves as the primary access route from San Antonio to Beaumont. Interstate 45 extends in a north/south direction in the subject neighborhood, and Loop 610 is a limited access freeway that encircles Houston at a 6 mile radius.

Other major thoroughfares which extend in an east/west direction include Washington Avenue, White Oak Drive, and W. 11th Street. Major thoroughfares which extend in a north/south direction include Houston Avenue, Studemont/Studewood, Heights Boulevard, Yale Street, Shepherd Drive and Durham Drive. Most of the primary roadways consist of four to six lanes, with concrete or asphalt pavement and curb and gutter drainage. In addition, there are numerous other secondary and interior streets which bind and bisect the subject neighborhood, enhancing its accessibility.

**Stage of Development.** The subject area is densely developed with relatively few vacant sites available for development. Virtually every type of commercial and residential development can be found within the neighborhood. The major thoroughfares are generally improved with low-rise office buildings, light industrial warehouse development, free standing and strip retail buildings, restaurants, and multi-family residential developments. Single-family development is generally located on the secondary roadways, however it can also be found interspersed along some major thoroughfares as well.

The area is considered to be in the revitalization stage of development. Older single family properties are being razed to make room for new development of townhomes and single family residences priced from the $300,000,'s to over $500,000. Other new development scattered throughout the neighborhood includes multi-family residential, retail centers, offices and restaurants.

Much of the neighborhood is commonly referred to as "The Heights", which is one of the oldest residential communities in the Houston area. The Heights was originally developed in the early 1900's, and is well known for its turn of the century Victorian Cottages and Bungalows. The Heights continues to go through a revitalization stage whereby older homes are renovated, restored, and updated for their historic charm and

nostalgia. Additionally, new construction of single family homes, townhomes and apartment projects is taking place throughout the neighborhood, and new retail development has occurred along major thoroughfares proximate to major intersections.

The subject area is very popular with investors due to its proximity to the major employment centers of Downtown Houston, the Texas Medical Center, and Greenway Plaza. The commute to these employment centers is typically under 6 miles.

The subject neighborhood is situated in the Houston Independent School District. There are numerous parks, recreation facilities, schools and churches that serve residents of the neighborhood.

**Political Jurisdiction.** The subject neighborhood is located within the political jurisdictions of the City of Houston, Harris County and the Houston Independent School Districts. Fire and police protection are supplied by the City of Houston, Harris County Sheriff's Department, the Texas DPS. Water and sewer services are provided by the City of Houston. Electricity, natural gas and telephone is available to all parts of the neighborhood.

**Topography.** The topography of the subject neighborhood is generally level. The main drainage arteries for the neighborhood are White Oak Bayou and Buffalo Bayou. Areas along bayous have been designated as special flood hazard areas according to the flood hazard boundary maps for Harris County, published by the Federal Insurance Administration.

**Immediate Vicinity.** The subject is located along the north side of Bingham Street, approximately 263 feet east of Holly Street. The predominant land use in the immediate area of the subject consists of retail and commercial developments along primary roadways backing up to single family and high density residential developments, as well as vacant sites. Located to the north of the subject property is the Southern Pacific Railroad. Located to the south of the subject property is high density residential. Located to the east of the subject is vacant land followed by single family residential. Located to the west of the subject is single family residential.

**Conclusions.** Due to the subject's proximity to several large employment centers, demand for residential property is good and should remain high within the neighborhood. The time spent commuting to the Central Business District, the Medical Center and Greenway Plaza is relatively short when compared to the average commuting time from other areas in the Houston area. This area is realizing growth and revitalization, and long term prospects for the neighborhood are positive.

## AREA AND NEIGHBORHOOD ANALYSIS - CONTINUED





Neighborhood Map

# SITE DATA

An analysis of a site is particularly important in determining its highest and best use. We were not provided with a survey of the site. However, we have acquired a plat map from the Harris County Appraisal District. We have relied upon this information regarding size and configuration and have assumed it to be accurate and reliable. The following is a discussion of the most important factors.

**Legal Descriptions.** The subject site is legally described as being 0.9364 acres being out of Lots 1 and 8-12, Block 242, Baker NSBB, Houston, Harris County, Texas 77007.

**Location/Access.** The subject site is located along the north side of Bingham Street. The site has frontage and access along Bingham Street.

**Physical Characteristics.** The subject site is basically level and L-shaped. According to the plat map from the Harris County Appraisal District, the subject property has approximately 50.00 feet of frontage along the north line of Bingham Street. Based on the plat map, the eastern boundary appears to be the unimproved ROW of Beachton Street and the northern boundary appears to be the unimproved ROW Winter Street and railroad.

**Off-Site Improvements.** Bingham Street is a two-lane, two-way, asphalt paved, tertiary roadway with open ditch drainage that extends in a east/west direction at the subject. A railroad is located adjacent to the northern boundary. Upon inspection of the subject site, it appeared level and no visible signs of drainage inadequacy were noted.

**Adjacent Land Use.** The subject is located along the north side of Bingham Street, approximately 263 feet east of Holly Street. The predominant land use in the immediate area of the subject consists of retail and commercial developments along primary roadways backing up to single family and high density residential developments, as well as vacant sites. Located to the north of the subject property is the Southern Pacific Railroad. Located to the south of the subject property is high density residential. Located to the east of the subject is vacant land followed by single family residential. Located to the west of the subject is single family residential.

**Restrictions.** The subject site is located within the City of Houston (Harris County), which does not utilize zoning to regulate development. At the time of this appraisal, there does not appear to be any other adverse easements which would negatively affect the development of the site.

**Easements.** According to the information provided and our site visit, there are typical building setback lines. There does not appear to be any other adverse easements that would negatively affect the development of the site.

**Utilities.** Water and sewer service are currently provided to the site by the City of Houston. Electricity, natural gas, and telephone are provided by various providers.

**Topography/Flood Plain.** Based on our inspection of the subject site, there did not appear to be any soil or subsoil conditions noted that would adversely affect construction as evidenced by the nearby improvements. A portion of the subject appears to be located within Shaded Zone X; areas determined to be inside the 500-year floodplain, FIRM #48201C0690N, January 6, 2017. A survey would be required to determine the exact location within the flood hazard.

**Political Jurisdiction.** The subject site is served by the Houston Independent School District. Police and fire protection are provided by the City of Houston and Harris County.

## SITE DATA - CONTINUED

**Improvements.**  The subject is improved with a 918 square foot single family residence built in 2002 that is not considered to add any contributory value. Therefore, we have considered the subject to be effectively vacant land.

**Conclusions/Analysis.**  The subject site consists of 0.6887 acres, which would make it suitable for a variety of uses.  The site is considered to be a usable configuration, with generally level topography, and has access and frontage along Bingham Street.  On an overall basis, the subject site is well suited for development.

**SITE DATA - CONTINUED**



**Aerial View of the Subject**

**SITE DATA - CONTINUED**



**Aerial of Subject Further Out**



# ZONING

The subject site is located within the City of Houston (Harris County), which does not utilize zoning laws to regulate development. There are building codes to which all new construction must adhere and development may be governed by deed restrictions. To the best of our knowledge, there are no deed restrictions that would negatively affect development of the subject property or its highest and best use.

# TAX INFORMATION

The Harris County Appraisal District has identified the subject as a 0.6887 acre tract of land improved with a 918 square foot single family residence under the account number: 005-067-000-0001. We have identified the subject as a 0.6887 acre tract of land and 918 square feet of improvements. The subject is within the taxing jurisdictions of the City of Houston, Houston Independent School District, Harris County, and Houston Community College. The taxes are assessed as a percentage of the tax rate per $100 of the assessed value.

According to the Harris County Appraisal District, the tract has a 2019 appraised value of $1,023,750 ($1,023,650 for the land and $100 for the improvements). This is a decrease from the 2018 assessed value of $1,187,900 ($1,100,000 for land and $87,900 for the improvements). The 2019 tax rates have not been established by the various taxing authorities. Therefore, to estimate the 2019 taxes we have used the 2018 tax rates and the 2019 assessed value. We have estimated the subject property's taxes based on the 2019 assessed market value of the land, as follows:

| Taxing Authority | 2018 Tax Rate | 2019 Projected Taxes |
|---|---|---|
| Houston Independent School District | $1.136700 | $11,636.97 |
| Harris County | $0.635175 | $6,502.60 |
| Houston Community College | $0.100263 | $1,026.44 |
| City of Houston | $0.567920 | $5,814.08 |
| Total | $2.440058 | $24,980.09 |

Based on the 2018 tax rate of $2.440058 per $100 of assessed value, the subject's tax liability for 2019 is estimated to be $24,980.

Real estate taxes are due January 31 of each year, for example, the 2019 real estate taxes are due January 31, 2020. According to the various taxing authorities, there are delinquent taxes as of the date of this appraisal. However, we do not know if the delinquent taxes have been paid or not as of the date of this report.

# HIGHEST AND BEST USE

## Highest and Best Use "As Vacant"

Physically possible uses for the subject site include office, light industrial, retail, single-family and multi-family residential, or commercial developments. The subject site is located within the City of Houston, which does not currently utilize zoning laws to regulate development. Therefore, all physically possible uses are considered to be legally permissible.

Based on the subject's location along a lightly traveled secondary roadway, a retail, commercial or office development is not considered feasible. The majority of the new development in the area has been the redevelopment of older single family homes or industrial sites into high density residential developments. Due to the subject's size and configuration, a typical single family home or apartment complex development are not considered feasible. Based on the subject's physical characteristics, location and surrounding property uses, it is our opinion that the most likely future use of the subject property is for a high density residential development. Therefore, it is our opinion that the highest and best use of the subject site is to hold for speculative investment with the most likely future use being a high density residential development.

## Highest and Best Use "As Improved"

It is our opinion that the highest and best use of the subject "as improved" is for redevelopment to a higher density use.

# THE APPRAISAL PROCESS

<u>Sales Comparison Approach to Value - Land Only</u>  In reaching the land value opinion for the subject property by the sales comparison approach, the Harris County Deed Records were searched for recent sales of comparable properties within this area. Also, real estate brokers and appraisers active in the area were consulted as to their knowledge of properties currently offered on the market for sale which would be in competition with the subject property.

The following is a chronological listing of these sales for ease of comparison.  The complete write up of the sales are included in the addenda of this report.

| SALE | DATE | SIZE (ACRES) | PRICE ($/SF) | FRONTAGE |
|------|------|--------------|--------------|----------|
| 1 | 9/13/18 | 0.3444 | $39.67 | Hickory Street, Winter Street |
| 2 | 11/16/18 | 0.1148 | $43.75 | Bingham Street |
| 3 | 12/13/18 | 0.1148 | $40.00 | Summer Street |
| 4 | 4/18/19 | 0.1148 | $35.00 | Winter Street |
| 5 | 10/7/19 | 0.1136 | $37.40 | Winter Street |
| **SUBJECT** | **N/A** | **0.6887** | **N/A** | **Bingham Street** |

**Sales Price Per Square Foot.**  This unit of comparison is derived by dividing the Sales Price by the total land size in square feet.  In valuing the subject property, most consideration was given to condition of sale, financing, location, and physical characteristics.  Your attention is invited to the following vacant land sales adjustment grid.

**Conditions of Sale.**  Adjustments for conditions of sale usually reflect the motivations of the buyer and the seller.  Buyers or sellers acting under duress may cause a sale to be less representative of the market. A financial, business, or family relationship between the parties may affect the price of a property.  When non-market conditions of sale are detected in a transaction, the sale can be used as a comparable only with great care. The circumstances of the sale must be thoroughly researched before an adjustment is made. All sales were considered to be arm's length transactions; therefore, no adjustments were made.

**Property Rights Conveyed.**  Adjustments for differences in the property rights conveyed reflect the potential highest and best use of the site.  For the purposes of this analysis, no adjustments for property rights has been made.

## LAND SALES ANALYSIS - CONTINUED

**Financing Terms.**  The transaction price of one property may differ from that of an identical property due to different financing arrangements.  For example, a buyer may pay a higher price in a transaction which involves below market or favorable financing.  Favorable financing can be in terms of a below market interest rate, a small down payment, an interest only loan, a non-recourse or limited liability loan, or a loan based upon the cash flow of the project.  All of the sales in this report were cash to the seller or considered cash-equivalent sales; therefore, no adjustments are deemed necessary.

**Date of Sale.**  Changes in market conditions may be the result of inflation, deflation, fluctuations in supply and demand, changes in highest and best use, or other factors.  Although this adjustment is often referred to as a "time" adjustment, time is not the cause of the adjustment, but a reflection of shifts, or changes in market conditions.  Therefore, if market conditions have not changed, no adjustment is deemed necessary, no matter how much time has elapsed.  Generally, land values rise over time due to inflation and the decreasing supply of land. However, no adjustments were deemed necessary.

**Location.** The subject site is located along the north side of Bingham Street, approximately 263 feet east of Holly Street. All sales were considered similar and no adjustments were necessary.

**Size.**  In most areas of Harris County, smaller tracts of land sell for a higher price per unit than larger properties.  This is due to the fact that purchases of large acreage tracts entail a much greater capital outlay. This restricts the number of possible buyers as compared to the relatively larger market for smaller tracts, which tends to disproportionately "bid-up" the smaller tract's per unit prices. The subject is 0.6887 acres. Sales 2, 3, 4 and 5 are small and adjusted downward 10% for their smaller size.

**Corner/Frontage Influence.**  Properties which enjoy a corner location or have frontage along more than one roadway typically sell at a higher per unit value due to increased exposure and accessibility. The subject has frontage along Bingham Street. Sales 2, 3, 4 and 5 were considered similar to the subject and no adjustments were deemed necessary. Sale 1 was adjusted downward 10% for its superior corner frontage.

**Site Characteristics.**  Properties which have irregular shapes, or are located in flood hazard areas with undevelopable portions can affect the value of a property.  The subject property is L-shaped with the site partially located inside of the 500-year flood hazard zone and considered similar to Sale 3. Sales 1, 2, 4 and 5 were adjusted downward 5% for their shape and being located outside the 100-year flood hazard.

**Utility Availability.**  The availability of utilities is a major factor in the development of any property.  If a site has no access to utility service and cannot acquire access, it is virtually impossible to develop. Therefore, the price paid for such a site would be affected due to its lack of utilities.  In this case, an owner must make up the expense for acquiring the services and enhancing the site's value.  The subject property does have access to public water and sewer service. All sales had access to public water and sewer service; therefore, no adjustments are made.

The land sales adjustment grid on the following page shows our adjustments for the subject property.

## LAND SALES ANALYSIS - CONTINUED

### Land Sales Adjustment Grid

| ITEM | 1 | 2 | 3 | 4 | 5 |
|------|-----|-----|-----|-----|-----|
| $/SF | $39.67 | $43.75 | $40.00 | $35.00 | $37.40 |
| DATE | 9/13/18 | 11/16/18 | 12/13/18 | 4/18/19 | 10/7/19 |
| CONDITIONS OF SALE | 0% | 0% | 0% | 0% | 0% |
| TIME ADJUSTMENT | 0% | 0% | 0% | 0% | 0% |
| TOTAL ADJUSTMENT | 0% | 0% | 0% | 0% | 0% |
| ADJUSTED $/SF | $39.67 | $43.75 | $40.00 | $35.00 | $37.40 |
| SIZE (ACRES) | 0.344 | 0.115 | 0.115 | 0.115 | 0.114 |
| LOCATION | 0% | 0% | 0% | 0% | 0% |
| SIZE | 0% | -10% | -10% | -10% | -10% |
| CORNER/FRONTAGE | -10% | 0% | 0% | 0% | 0% |
| PHYSICAL CHARACTERISTICS | -5% | -5% | 0% | -5% | -5% |
| UTILITIES | 0% | 0% | 0% | 0% | 0% |
| TOTAL PHYSICAL ADJ. | -15% | -15% | -10% | -15% | -15% |
| **FINAL ADJ. $/SF** | **$33.72** | **$37.19** | **$36.00** | **$29.75** | **$31.79** |

The sales have adjusted sales prices ranging from $29.75 per square foot to $37.19 per square foot with an average of $33.69 per square foot. In determining our value conclusion, equal weight was given to all sales. Based on the subject's highest and best use, it is our opinion that the "as is" market value, of the fee simple estate, as of October 23, 2019, is $34.00 per square foot or as follows:

(0.6887 Acres) 30,000 S.F. @ $34.00 Per Square Foot = $1,020,000
**Rounded:    $1,020,000**

## CORRELATION AND FINAL VALUE ESTIMATE

We have prepared an Appraisal Report and have considered all the approaches to value. In this instance, the sales comparison approach was considered to be the only applicable method in valuing the subject property. Therefore, our final estimate of the market value of the fee simple estate of the subject property, as of October 23, 2019, based on a 12 month exposure period, is as follows:

**$1,020,000**

# ADDENDA

**QUALIFICATIONS**

**QUALIFICATIONS OF**

Bradley S. Kangieser, MAI, SRA

**Business Address:**

GREENBRIAR APPRAISAL COMPANY                     Telephone  (281) 556-6668, Ext 111
14780 Memorial Drive, Suite 123                             Fax      (281) 833-0157
Houston, Texas  77079

E-Mail:     bkangieser@gbappraisal.com
Web Page:   http://www.gbappraisal.com

**Education:**
    Graduated from Texas A & M University, College Station, Texas in December, 1982 with a
Bachelor of Business Administration in the field of Marketing.

**Experience:**
    Bradley S. Kangieser is a real estate appraiser, consultant and analyst who has been active in all
forms of real estate appraisals since 1983.  He has been an independent fee appraiser responsible
for appraisals of residential, industrial and commercial properties throughout Texas for clients
including various savings and loans, mortgage companies, banks, insurance companies,
corporations, attorneys and individuals.  He received the SRA designation from the Appraisal
Institute in 1988 and received the MAI designation from the Appraisal Institute in 1991.  He has
qualified as an expert witness on real estate appraisal in state and district court.

**License/Certification:**
    Texas State Certified General Real Estate Appraiser #TX-1320289-G
    Texas Real Estate Brokers License #336747

**Affiliations:**
    Member Appraisal Institute (MAI) #8888, Appraisal Institute
    Senior Residential Appraiser (SRA) #2311, Appraisal Institute
    Member of the 1992 Young Advisory Council, Appraisal Institute
    Member of the 1994 Young Advisory Council, Appraisal Institute
    Regional Ethics & Counseling Panel, Appraisal Institute
    Houston Chapter Admissions Committee, Appraisal Institute
    Houston Chapter Education Chair, Appraisal Institute
    Houston Chapter Board of Directors (2000-2007), Appraisal Institute
    Houston Chapter President (2007), Appraisal Institute

**RECERTIFICATION OF THE APPRAISAL INSTITUTE**
As of the date of this report, Bradley S. Kangieser has completed the requirements of the continuing
education program for Designated Members of the Appraisal Institute.

**Partial List of Property Types Appraised:**

High and Mid Rise Office Buildings
Downtown Office Buildings
Single Tenant Office Buildings
Medical Office Buildings
High Rise Apartments and Garden Apartments
Office & Industrial Parks
Resort and Recreational Developments
Event Facilities
Athletic Clubs
Restaurants
Special Purpose Properties
Mobile Home Parks
All Types of Shopping and or Retail Centers
Regional Malls
Manufacturing and Industrial
Subdivisions
Churches
Schools
Daycare Centers
Distress and Problem Properties
Mini-Warehouses
Recreational Vehicle Parks
Oil Change (Lube) Facilities
Automobile Dealerships
Manual and Full Service Car Washes
Townhouse Developments

**Various Types of Studies and Consulting:**

Environmental Impact Studies
Feasibility Studies
Going Concern Valuation
Market Studies
Highest and Best Use Studies
Ad Valorem Tax Studies
Litigation Support including Expert Witness Testimony
Condemnation
Interest Valuations including Fee Simple, Leased Fee, Leasehold
   and Partial Interest

**Partial List of Representative Clients:**
**Financial Institutions:**

Allegiance Bank
Amegy Bank
Amerant Bank
Bancorp South Bank
Bank of America
Bank of Houston
Bank of Texas
Bank OZK
BB&T
BBVA Compass Bank
Cadence Bank
Capital One Bank
Cathay Bank
Central Bank
Citibank
Citizens Bank
Comerica Bank
Commerce Bank
Community Bank
Crockett National Bank
East West Bank
Frost Bank
Iberia Bank
Independence Bank
International Bank of Commerce
JP Morgan/Chase Bank
Key Bank
Legacy Texas Bank
Lone Star Bank
Members Choice Credit Union
Metro Bank
Moody Bank
Northern Trust Bank
Plains Capital Bank
Plains State Bank
PNC Bank
Preferred Bank
Prosperity Bank
Regions Bank
Spirit of Texas Bank
Texas Capital Bank
Texas Citizens Bank
Texas State Bank
Third Coast Bank
Trustmark Bank
US Bank
Union Bank of California

**Financial Institutions - Continued:**
      Veritex Community Bank
      Wells Fargo Bank
      Whitney Bank
      Woodforest National Bank

**Government Agencies:**
      Metropolitan Transit Authority (Houston)
      Resolution Trust Corporation
      Federal Deposit Insurance Corporation
      Fort Bend County Flood Control District
      Aldine Independent School District
      Klein Independent School District
      Texas Department of Transportation
      City of Pasadena
      City of Bryan
      City of Conroe
      City of Laporte
      Deer Park Independent School District

**Corporations:**
      Archon Group
      American General Realty Advisors, Inc.
      Ameritas Investment Advisors, Inc.
      Bear, Sterns & Company
      BMC Mortgage Company
      Bridger Commercial Funding
      Business Loan Express
      Capmark Finance
      Churchill Capital
      CIBC World Markets
      Collateral Mortgage Capital
      Column Financial
      Commercial Resource Capital
      Fannie Mae
      Finova Belgravia Capital Corporation
      Flagship Properties Corporation
      Freddie Mac
      Fremont Investment & Loan
      GE Capital Corporation
      GE Financial Assurance
      Hanover Capital Mortgage Corporation
      Heller Real Estate Financial Services
      HFF, L.P.
      Hometown Commercial Capital
      The Houston Group Realty Advisors, Inc.
      ICap Realty Advisors

**Corporations - Continued:**

Impac Multifamily Capital
J.P. Morgan Mortgage Capital
Kinghorn, Driver, Hough & Company
LMI Capital
Lehman Brothers
Live Oak Capital
L.J. Melody & Company
Martin Fein Interests, Inc.
Midway Company
MJ Spoor & Company
Morgan Stanley
New Quest Properties
NorthMarq Capital, Inc.
Pinnacle Realty Advisors
Piper Capital Management
PPM Finance Inc.
Principal Real Estate Investors
Prudential Mortgage Capital Company
RAIT Investment Trust
Safeco Credit Company
Saloman Brothers Realty Corporation
Smith Barney
Planned Community Developers
Trammell Crow Company
UBS Warburg
Union Capital Investments, LLC

**Life Companies:**

Allstate Insurance Company
American Fidelity Assurance Company
Aviva Investors
Business Men's Assurance Company of America
Chubb Life Insurance Company of America
Delta Life and Annuity Company
GE Capital Life Assurance Company of New York
ING USA Annuity and Life Insurance Company
The Guardian Life Insurance Company of America
Jackson National Life Insurance
Jefferson Pilot Life Insurance Company
John Hancock Real Estate Finance, Inc.
MetLife Insurance Company
Reliable Insurance Company
Security Life of Denver Insurance Company
Southern Farm Bureau Life Insurance Company
StanCorp Mortgage Investors
Standard Insurance Company

**Life Companies - Continued:**
     Sun Life Financial
     Thrivent Financial for Lutherans
     The Variable Annuity Life Insurance Company
     Union Central Life Insurance Company
     Union Fidelity Life Insurance Company
     Western-Southern Life Assurance Company

**Law Firms:**
     Vinson and Elkins
     Fulbright & Jaworski
     Honigman Miller Schwartz and Cohn
     Bracewell & Patterson
     Haggans & Associates
     Law Offices of Eddie Vassallo
     Richard McElya
     Jackson & Walker
     William D. Noel

You may wish to laminate the pocket identification card to preserve it.

The person named on the reverse is licensed by the Texas Appraiser Licensing and Certification Board.

Inquiry as to the status of this license may be made to:

Texas Appraiser Licensing and Certification Board
P.O. Box 12188
Austin, Tx 78711-2188
www.talcb.texas.gov
(512) 936-3001
Fax:(512) 936-3899

BRADLEY SWAN KANGIESER
14780 MEMORIAL DR STE 123
HOUSTON, TX 77079

---

**Texas Appraiser Licensing and Certification Board**
P.O. Box 12188 Austin, Texas 78711-2188
Certified General Real Estate Appraiser

Number#: TX 1320289  G

Issued:  01/25/2019         Expires:      03/31/2021

Appraiser: BRADLEY SWAN KANGIESER

Having provided satisfactory evidence of the qualifications required by
the Texas Appraiser Licensing and Certification Act, Texas
Occupations Code, Chapter 1103, is authorized to use this title,
Certified General Real Estate Appraiser.

Douglas E. Oldmixon
Commissioner

---

# Texas Appraiser Licensing and Certification Board
### P.O. Box 12188 Austin, Texas 78711-2188
## Certified General Real Estate Appraiser

Number:       **TX 1320289 G**

Issued:       **01/25/2019**          Expires:        **03/31/2021**

Appraiser:    **BRADLEY SWAN KANGIESER**

Having provided satisfactory evidence of the qualifications required by the
Texas Appraiser Licensing and Certification Act, Texas Occupations Code,
Chapter 1103, is authorized to use this title, Certified General Real Estate
Appraiser.

Douglas E. Oldmixon
Commissioner

# QUALIFICATIONS OF

## Brian O'Connell

**Business Address:**

Greenbriar Appraisal Company
14780 Memorial Drive, Suite 123
Houston, Texas 77079

Telephone: (281) 556-6668, Ext. #107
Fax: (281) 833-0157

E-Mail: brian.oconnell@gbappraisal.com         Web Page: http://www.gbappraisal.com

**Experience:**

Brian O'Connell is a real estate appraiser, consultant, and analyst who has been active in many forms of real estate appraisal since 2016. He has been an independent fee appraiser responsible for appraisals of commercial properties throughout Texas for clients including various savings and loans, mortgage companies, banks, insurance companies, corporations, and individuals.

**Affiliations:**

Texas State Certified General Real Estate Appraiser #TX-1341259, Trainee.

**Educational Background:**

Graduated from Baylor University, Waco, Texas in 2014. Received a Bachelor of Arts in Film and Digital Media.

**List of Property Types Appraised:**

Auto Service Facilities
Industrial
Proposed Industrial
Office
Proposed Office
Restaurants
Retail
Vacant Land

The person named on the reverse is authorized to conduct appraisals under direct supervision of the sponsoring appraiser(s) by the Texas Appraiser Licensing and Certification Board.

Inquiry as to the status of this license may be made to:

Texas Appraiser Licensing and Certification Board
P.O. Box 12188
Austin, TX 78711-2188
www.talcb.texas.gov
(512) 936-3001
Fax:(512) 936-3899

BRIAN SHERIDAN O'CONNELL
215 BREEDS HILL CT
HOUSTON, TX 77024

## Texas Appraiser Licensing and Certification Board
P.O. Box 12188 Austin, Texas 78711-2188
**Appraiser Trainee**

Authorization#: **TX 1341259 Trainee**   I. D. Number: **1000067870**

Issued: **12/28/2018**   Expires: **12/31/2020**

Trainee: **BRIAN SHERIDAN O'CONNELL**

Supervisor: **BRADLEY SWAN KANGIESER**   Certification #: **TX 1320289 C**

I. D. Number: **880336747**

The Texas Appraiser Licensing and Certification Board authorizes the named person to act as an Appraiser Trainee under the supervision of the certified appraiser noted above, pursuant to Texas Occ. Code, Chapter 1103.

An Appraiser Trainee may perform appraisals only under the direct supervision of the Trainee's supervisory appraiser(s) who signs the report and is responsible for the conduct of the Appraiser Trainee.

An Appraiser Trainee may be supervised by one or more certified appraisers.

*Douglas E. Oldmixon*
Commissioner

---

## Texas Appraiser Licensing and Certification Board
P.O. Box 12188 Austin, Texas 78711-2188
**Appraiser Trainee**

Authorization#: **TX 1341259 Trainee**   I. D. Number: **1000067870**

Issued: **12/28/2018**   Expires: **12/31/2020**

Trainee: **BRIAN SHERIDAN O'CONNELL**

Supervisor: **BRADLEY SWAN KANGIESER**   Certification #: **TX 1320289 C**

I. D. Number: **880336747**

The Texas Appraiser Licensing and Certification Board authorizes the named person to act as an Appraiser Trainee under the supervision of the certified appraiser noted above, pursuant to Texas Occ. Code, Chapter 1103.

An Appraiser Trainee may perform appraisals only under the direct supervision of the Trainee's supervisory appraiser(s) who signs the report and is responsible for the conduct of the Appraiser Trainee.

An Appraiser Trainee may be supervised by one or more certified appraisers.

*Douglas E. Oldmixon*
Commissioner

**COMPARABLE LAND SALES AND MAP**

|  | | |
|---|---|---|
| **Lots** | **Sold** | |
| ML#: | **74039715** | List Price: **$675,000** |
| Address: | **0 Hickory Street** | Orig Price: **$675,000** |
| Area: | **9** | LP/SF: **$45.00** |
| Tax Acc #: | **136-084-001-0001** | DOM: **201 / 827** |
| City/Location: | **Houston** | State: **Texas** |
| County: | **Harris** | Zip Code: **77007** |
| Market Area: | **Washington East/Sabine** | Key Map: **493G** |
| Subdivision: | **HICKORY PLACE** | Country: **United States** |
| Lot Size: | **15,000 / Appr Dist** | Section #: |
| Acres: | **.3443** | Lot Num: **1-9** |
| Master Planned: **No** | | LP/Acre: **$1,960,499.56** |
| Legal Desc: | **LT 1-9 BLK 1 HICKORY PLACE** | |
| Tax Acc2: | | Tax Acc3: |

Directions:          **Houston Ave to East on Bingham, North on Hickory.**

| Listing Office Information |
|---|

| | | |
|---|---|---|
| List Broker: | **TXRE01/Texas Real Estate & Co.** 📧 | **Request an Appointment** |
| List Agent: | **PURVIST/Tiffanie L. Purvis** 📧 | Appt #: **713-977-7469 / Showing Service** |
| Agent Cell: | **713-303-3738** | Agent Phone: **713-303-3738** |
| Address: | **1607 Houston Ave., Houston TX 77007 - 3116** | Office Phone: **713-337-1410** |
| List Agent Web: | **http://www.txreco.com** | Fax #: |
| Agent Email: | **office@txreco.com** | |
| Licensed Supervisor: | | Office Web: **http://www.txreco.com/** |

| School Information |
|---|

| | | |
|---|---|---|
| School District: | **27 - Houston** | Elem: **CROCKETT ELEMENTARY SCHOOL (HOUSTON)** |
| Middle: | **HOGG MIDDLE SCHOOL (HOUSTON)** | High: **HEIGHTS HIGH SCHOOL** |

*SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.*

| Description Information |
|---|

| | | |
|---|---|---|
| Access: | | Type Contract: **Unimproved Property** |
| Front Dim: | Back Dim: | Left Dim: Right Dim: |
| Lot Use: | **Single-Family, Townhouse** | Lot Improve: |
| Lot Desc: | **Subdivision** | Acreage: **1/4 Up to 1/2 Acre** |
| Road Surface: | | Dev Community: |
| Gas: | **Availability Unknown** | Cable: **Unknown** |
| Electric: | **Electric Available** | Phone: **Unknown** |

Showing Instruct:
Agent Remarks:
**(Previous address 1507 Hickory)LEGAL ADDRESS LOTS 1-9 HICKORY PLACE.The property is being sold with all plans, platting, engineering, water capacity, soil reports, etc. Seller will assign any and all documents so the Buyer can purchase the permits which are ready to be picked up from the City of Houston. Seller prefers Wanda Reyna at Independence Title. 713-587-2025, wreyna@independencetitle.com**

Public Remarks:
**SAWYER HEIGHTS! 9 LOTS, READY TO BUILD! Great for Builders and/or Investors. The property is being sold with all plans, platting, engineering, water capacity, soil reports, etc. Seller will assign any and all documents so the Buyer can purchase the permits which are ready to be picked up from the City of Houston.**

| Utilities, Features and Additional Information |
|---|

| | | |
|---|---|---|
| Utility District: | | Area Pool: |
| Water/Sewer: | **Public Sewer, Public Water** | Area Tennis: |
| Golf Course Nm: | | Waterfront Feat: |
| Restrictions: | **No Restrictions** | Disclosures: **No Disclosures** |
| | | List Type: **Exclusive Right to Sell/Lease** |
| List Date: | **01/01/2018** | Expire Date: | T/Date: |
| Comp: SubAgt: | **0%** | Buyer Agent: **3%** | Bonus: Bonus End: |
| | | | Var/Dual Rt: **No** |

| Financial Information |
|---|

| | |
|---|---|
| 1st Assumable: | Finance Cnsdr: |
| Maint. Fee: **No** | Exemptions: |
| Other Mand Fee:**No/0** | Auction: |
| Taxes w/o Exempt: | Online Bidding: |
| Tax Rate: | |

| Pending Information |
|---|

| | | |
|---|---|---|
| Pending Date: | **07/21/2018** | Est Close Dt: OPT End: |

## Sold Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Sale Price: | **$595,000** | Close Date: | **09/13/2018** | Ttl Discount Pts: | | CoOp: | **Yes** |
| SP/ACR: | **$1,728,144.06** | Days to Close: | **54** | Terms: | **Cash Sale** | SP/LP #: | **0.88** |
| SP/SF: | **$39.67** | New Loan: | | Amortize Years: | | Int Rate: | |
| Sell Agent: | **Brady Burnett (brady)** | | | Sell Broker: | **Burnett Realty (BNET01)** | | |
| Co-Sell Agent: | **()** | | | Co-Sell Office: | **Burnett Realty ()** | | |
| TREC #: | | | | | | | |

Seller Contribution to Buyer Costs: **0**

Repair/Actual Pd: **$0**          Title Pd By: **Seller**

**Prepared By: Kenneth Kangieser**          **Data Not Verified/Guaranteed by MLS**          **Date: 10/31/2019 1:27 PM**
**Obtain Signed HAR Broker Notice to Buyer Form**

Copyright 2019 Houston Realtors Information Service, Inc. All Rights Reserved. Users are Responsible for Verifying All Information for Total Accuracy.



| | |
|---|---|
| **Lots** | **Sold** |
| ML#: | 12298293 |
| Address: | 1115 Bingham Street |
| Area: | 9 |
| Tax Acc #: | 005-066-000-0008 |
| City/Location: | Houston |
| County: | Harris |
| Market Area: | Washington East/Sabine |
| Subdivision: | Baker Nsbb |
| Lot Size: | 4,800 / Appr Dist |
| Acres: | .1148 |
| Master Planned: | No |
| Legal Desc: | LT 8 BLK 241 BAKER NSBB |
| Tax Acc2: | |

| | |
|---|---|
| List Price: | $229,900 |
| Orig Price: | $249,900 |
| LP/SF: | $47.90 |
| DOM: | 262 |
| State: | Texas |
| Zip Code: | 77007 - 4211 |
| Key Map: | 493G |
| Country: | United States |
| Section #: | |
| Lot Num: | |
| LP/Acre: | $2,002,613.24 |
| Tax Acc3: | |

Directions:     I45 NORTH, EXIT S. MAIN/HOUSTON AVE., TAKE HOUSTON AVE. TO BINGHAM & TURN LEFT.

## Listing Office Information

| | |
|---|---|
| List Broker: | PTXP01/Prime Texas Prop-Clayton Nash |
| List Agent: | ASAII/Alberto S. Alaniz |
| Agent Cell: | 832-755-1440 |
| Address: | 2417 North Freeway, Houston TX 77009 |
| List Agent Web: | http://WWW.PRIMETXPROPERTIES.COM |
| Agent Email: | alberto@primetxproperties.com |
| Licensed Supervisor: | |

| | |
|---|---|
| | Request an Appointment |
| Appt #: | 713-869-7897 / No Appointment Required |
| Agent Phone: | 832-755-1440 |
| Office Phone: | 713-869-7897 |
| Fax #: | |
| | |
| Office Web: | http://WWW.PRIMETXPROPERTIES.COM |

## School Information

| | | | |
|---|---|---|---|
| School District: | 27 - Houston | Elem: | CROCKETT ELEMENTARY SCHOOL (HOUSTON) |
| Middle: | HOGG MIDDLE SCHOOL (HOUSTON) | High: | HEIGHTS HIGH SCHOOL |

*SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.*

## Description Information

| | | | | |
|---|---|---|---|---|
| Access: | | Type Contract: | 1-4 Resale | |
| Front Dim: | Back Dim: | Left Dim: | | Right Dim: |
| Lot Use: | Single-Family, Townhouse | Lot Improve: | | |
| Lot Desc: | Interior, Level | Acreage: | 0 Up To 1/4 Acre | |
| Road Surface: | | Dev Community: | | |
| Gas: | Availability Unknown | Cable: | Unknown | |
| Electric: | Availability Unknown | Phone: | Unknown | |
| Showing Instruct: | | | | |
| Agent Remarks: | | | | |

If Seller to pay Title insurance please use Texas American Title - dorhale@plfpc.com . This lot is a drive by only, no appointment required. Available survey upon request . Please email alberto@primetxproperties.com and/or karen@primetxproperties.com with all questions and inquiries.

Public Remarks:
WOW GREAT LOT IN BAKER SUBDIVISION ! Lots of new construction in the area. Incredible opportunity in the heart of trendy First Ward. A short distance to the art galleries, restaurants, and nightlife of the vibrant Washington Corridor. Also Close to Heights Bike Trail connecting to Downtown. Call us if you have any questions. Don't miss this incredible opportunity !

## Utilities, Features and Additional Information

| | | | | |
|---|---|---|---|---|
| Utility District: | | | Area Pool: | |
| Water/Sewer: | Public Sewer, Public Water | | Area Tennis: | |
| Golf Course Nm: | | | Waterfront Feat: | |
| Restrictions: | No Restrictions | | Disclosures: | No Disclosures |
| | | | List Type: | Exclusive Right to Sell/Lease |
| List Date: | 02/13/2018 | Expire Date: | T/Date: | |
| Comp: SubAgt: | 2.5% | Buyer Agent: 3% | Bonus: | |
| | | | Bonus End: | |
| | | | Var/Dual Rt: | No |

## Financial Information

| | | | |
|---|---|---|---|
| 1st Assumable: | | Finance Cnsdr: | |
| Maint. Fee: | No | | Exemptions: |
| Other Mand Fee: | No | | Auction: |
| Taxes w/o Exempt: | $5,053/2017 | | Online Bidding: |
| Tax Rate: | 2.5264 | | |

## Pending Information

| | | | |
|---|---|---|---|
| Pending Date: | 11/02/2018 | Est Close Dt: | OPT End: |

## Sold Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Sale Price: | **$210,000** | Close Date: | **11/16/2018** | Ttl Discount Pts: | CoOp: | **No** |
| SP/ACR: | **$1,829,268.29** | Days to Close: | **14** | Terms: | SP/LP #: | **0.91** |
| SP/SF: | **$43.75** | New Loan: | | Amortize Years: | Int Rate: | |
| Sell Agent: | **Alberto Alaniz (ASAII)** | | | Sell Broker: | **Prime Texas Prop-Clayton Nash (PTXP01)** | |
| Co-Sell Agent: | **()** | | | Co-Sell Office: | **Prime Texas Prop-Clayton Nash ()** | |
| TREC #: | | | | | | |

Seller Contribution to Buyer Costs:   **0**

Repair/Actual Pd:   **$0**     Title Pd By:   **Seller**

**Prepared By: Kenneth Kangieser**     **Data Not Verified/Guaranteed by MLS**     **Date: 10/31/2019 1:27 PM**
**Obtain Signed HAR Broker Notice to Buyer Form**

Copyright 2019 Houston Realtors Information Service, Inc. All Rights Reserved. Users are Responsible for Verifying All Information for Total Accuracy.



| | | | |
|---|---|---|---|
| **Lots** | **Sold** | | |
| ML#: | 65161016 | List Price: | $239,900 |
| Address: | 1116 Summer Street | Orig Price: | $239,900 |
| Area: | 9 | LP/SF: | $47.98 |
| Tax Acc #: | 005-069-000-0005 | DOM: | 58 / 124 |
| City/Location: | Houston | State: | Texas |
| County: | Harris | Zip Code: | 77007 - 4257 |
| Market Area: | Washington East/Sabine | Key Map: | 493G |
| Subdivision: | Baker Nsbb | Country: | United States |
| Lot Size: | 5,000 / Appr Dist | Section #: | |
| Acres: | .1148 | Lot Num: | |
| Master Planned: No | | LP/Acre: | $2,089,721.25 |
| Legal Desc: | LT 5 BLK 244 BAKER NSBB | | |
| Tax Acc2: | | Tax Acc3: | |

Directions:     **From I-10 East exit 767B toward Taylor Street. Turn right on Taylor Street. Continue straight on Sawyer Street. Turn left on Crockett Street. In 0.8 miles turn right on Holly then take an immediate left on Summer. Property is on your left in 95 feet.**

## Listing Office Information

| | | | |
|---|---|---|---|
| List Broker: | **MOHL01/Connected Realty** | | **Request an Appointment** |
| List Agent: | **Clairecg/Claire Carmichel-Grant** 🖼 | Appt #: | **713-256-0709 / Agent** |
| Agent Cell: | | Agent Phone: | **713-320-4943** |
| Address: | **8588 Katy Freeway #450, Houston TX 77024** | Office Phone: | **832-423-5833** |
| List Agent Web: | | Fax #: | |
| Agent Email: | **claire@connected-realty.com** | | |
| Co-List Agent: | **OMCarter/Oliver M. Carter** 🖼 | Co-Agent Phone: | **713-256-0709** **oliver@connected-realty.com** |
| Licensed Supervisor: | | Office Web: | |

## School Information

| | | | |
|---|---|---|---|
| School District: | 27 - Houston | Elem: | CROCKETT ELEMENTARY SCHOOL (HOUSTON) |
| Middle: | HOGG MIDDLE SCHOOL (HOUSTON) | High: | HEIGHTS HIGH SCHOOL |

*SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.*

## Description Information

| | | | | | |
|---|---|---|---|---|---|
| Access: | | | Type Contract: | **Unimproved Property** | |
| Front Dim: | **50** | Back Dim: **50** | Left Dim: | **100** | Right Dim: **100** |
| Lot Use: | **Single-Family, Townhouse** | | Lot Improve: | **None** | |
| Lot Desc: | **Can Be Subdivided, Cul-De-Sac, Level, Open, Subdivision** | | Acreage: | **0 Up To 1/4 Acre** | |
| Road Surface: | **Concrete** | | Dev Community: | **No** | |
| Gas: | **Gas Available** | | Cable: | **Available** | |
| Electric: | **Electric Available** | | Phone: | **Available** | |
| Showing Instruct: | | | | | |
| Agent Remarks: | | | | | |

**Title is open with Jana Gwin at Allegiance Title (109 N. Post Oak Ln. #150, Houston, TX 77024)**

Public Remarks:
**This 5,000 square foot property is in the heart of Sawyer Heights! This area is booming with new housing and new businesses alike! Multiple breweries, fitness and art studios, and local restaurants are minutes away! This property is a wonderful opportunity to build in this emerging neighborhood!**

## Utilities, Features and Additional Information

| | | | |
|---|---|---|---|
| Utility District: | | Area Pool: | **No** |
| Water/Sewer: | **Public Sewer, Public Water** | Area Tennis: | **No** |
| Golf Course Nm: | | Waterfront Feat: | |
| Restrictions: | **Deed Restrictions** | Disclosures: | **No Disclosures** |
| | | List Type: | **Exclusive Right to Sell/Lease** |
| List Date: | **09/14/2018** | Expire Date: | T/Date: |
| Comp: SubAgt: | **0%** | Buyer Agent: **2%** | Bonus:       Bonus End: |
| | | | Var/Dual Rt: **No** |

## Financial Information

| | | | |
|---|---|---|---|
| 1st Assumable: | | Finance Cnsdr: **Cash Sale, Conventional** | |
| Maint. Fee: | **No** | Exemptions: | |
| Other Mand Fee: | **No** | Auction: | **No** |
| Taxes w/o Exempt: | **$5,053/2017** | Online Bidding: | **No** |
| Tax Rate: | **2.5264** | | |

## Pending Information

Pending Date: **11/11/2018**    Est Close Dt:                                          OPT End:

| Sold Information | | | | | | | |
|---|---|---|---|---|---|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Sale Price: | **$200,000** | Close Date: | **12/13/2018** | Ttl Discount Pts: | | CoOp: | **No** |
| SP/ACR: | **$1,742,160.28** | Days to Close: | **32** | Terms: | **Cash Sale** | SP/LP #: | **0.83** |
| SP/SF: | **$40.00** | New Loan: | | Amortize Years: | | Int Rate: | |
| Sell Agent: | **Christian Martin (cmartin)** | | | Sell Broker: | **Citiquest Properties (CITQ01)** | | |
| Co-Sell Agent: | **()** | | | Co-Sell Office: | **Citiquest Properties ()** | | |
| TREC #: | | | | | | | |

Seller Contribution to Buyer Costs: **0**

Repair/Actual Pd: **$0**    Title Pd By: **Seller**

**Prepared By: Kenneth Kangieser**          **Data Not Verified/Guaranteed by MLS**          **Date: 10/31/2019 1:27 PM**
**Obtain Signed HAR Broker Notice to Buyer Form**

Copyright 2019 Houston Realtors Information Service, Inc. All Rights Reserved. Users are Responsible for Verifying All Information for Total Accuracy.



| | | |
|---|---|---|
| **Lots** | **Sold** | |
| ML#: | **9234643** | List Price: **$199,000** |
| Address: | **0 Winter Street** | Orig Price: **$238,000** |
| Area: | **9** | LP/SF: **$39.80** |
| Tax Acc #: | **005-067-000-0007** | DOM: **333** |
| City/Location: | **Houston** | State: **Texas** |
| County: | **Harris** | Zip Code: **77007** |
| Market Area: | **Washington East/Sabine** | Key Map: **493G** |
| Subdivision: | **Baker Nsbb** | Country: **United States** |
| Lot Size: | **5,000 / Appr Dist** | Section #: |
| Acres: | **.1148** | Lot Num: **7** |
| Master Planned: | **No** | LP/Acre: **$1,733,449.48** |
| Legal Desc: | **LT 7 BLK 242 BAKER NSBB** | |
| Tax Acc2: | | Tax Acc3: |

Directions:     **South on Houston Avenue, east on Edwards, north on Holly. Property last lot on right past Bingham.**

## Listing Office Information

| | |
|---|---|
| List Broker: | **MWCR01/Circa Real Estate** |
| List Agent: | **afwhite/Angela F. White** |
| Agent Cell: | **713-825-0231** |
| Address: | **350 W 19th Street Suite D, Houston TX 77008** |
| List Agent Web: | |
| Agent Email: | **angela@angelawhitehomes.com** |
| Licensed Supervisor: | **Mary Wassef** |

| | |
|---|---|
| | **Request an Appointment** |
| Appt #: | **713-977-7469 / Showing Service** |
| Agent Phone: | **713-825-0231** |
| Office Phone: | **713-862-1101** |
| Fax #: | |
| | |
| Office Web: | |

## School Information

| | | | |
|---|---|---|---|
| School District: | **27 - Houston** | Elem: | **CROCKETT ELEMENTARY SCHOOL (HOUSTON)** |
| Middle: | **HOGG MIDDLE SCHOOL (HOUSTON)** | High: | **HEIGHTS HIGH SCHOOL** |

*SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.*

## Description Information

| | | | | |
|---|---|---|---|---|
| Access: | | | Type Contract: | **Unimproved Property** |
| Front Dim: | | Back Dim: | Left Dim: | Right Dim: |
| Lot Use: | **Other, Patio Home, Single-Family, Townhouse** | | Lot Improve: | **Cleared** |
| Lot Desc: | **Can Be Subdivided, Level, Subdivision** | | Acreage: | **0 Up To 1/4 Acre** |
| Road Surface: | **Asphalt** | | Dev Community: | |
| Gas: | **Gas Available** | | Cable: | **Available** |
| Electric: | **Electric Available** | | Phone: | **Available** |

Showing Instruct:

Agent Remarks:
**No minimum lot size restriction according to city lot map. Not in flood plane. In Quiet Zone with no train horns. Can be subdivided. Ready for new construction. Bring your investors. Survey available upon request.**

Public Remarks:
**Incredible opportunity to purchase a large lot in desirable First Ward that is not in the flood plane. In Quite Zone with no train horns. Walkable to Houston Avenue restaurants: Cafeza, Spring Street Beer & Wine Garden, and Cafe Brussels. Just minutes from downtown. Lot is cleared and ready to go and can be subdivided. New construction all around.**

## Utilities, Features and Additional Information

| | | | |
|---|---|---|---|
| Utility District: | | Area Pool: | |
| Water/Sewer: | **Public Sewer, Public Water** | Area Tennis: | |
| Golf Course Nm: | | Waterfront Feat: | |
| Restrictions: | **Unknown/Verify** | Disclosures: | **No Disclosures** |
| | | List Type: | **Exclusive Right to Sell/Lease** |
| List Date: | **02/27/2018** | Expire Date: | T/Date: |
| Comp: SubAgt: | **0%** | Buyer Agent: **3%** | Bonus: |
| | | | Bonus End: |
| | | | Var/Dual Rt: **No** |

## Financial Information

| | |
|---|---|
| 1st Assumable: | Finance Cnsdr: **Cash Sale, Conventional, Investor, Other** |
| Maint. Fee: **No** | Exemptions: |
| Other Mand Fee: **No** | Auction: |
| Taxes w/o Exempt: **$4,421/2017** | Online Bidding: |
| Tax Rate: **2.5264** | |

## Pending Information

| | | | |
|---|---|---|---|
| Pending Date: | **02/26/2019** | Est Close Dt: | OPT End: |

## Sold Information

| Sale Price: | **$175,000** | Close Date: | **04/18/2019** | Ttl Discount Pts: | | CoOp: | **No** |
| SP/ACR: | **$1,524,390.24** | Days to Close: | **51** | Terms: | | SP/LP #: | **0.88** |
| SP/SF: | **$35.00** | New Loan: | | Amortize Years: | | Int Rate: | |
| Sell Agent: | **Christian Landaverde (ADONAY)** | | | Sell Broker: | **Proxy Realty Inc. (PROX01)** | | |
| Co-Sell Agent: | **()** | | | Co-Sell Office: | **Proxy Realty Inc. ()** | | |
| TREC #: | | | | | | | |

| Seller Contribution to Buyer Costs: | **0** | | Repair/Actual Pd: | **$0** | Title Pd By: | **Seller** |

**Prepared By: Kenneth Kangieser**          **Data Not Verified/Guaranteed by MLS**          **Date: 10/31/2019 1:27 PM**
**Obtain Signed HAR Broker Notice to Buyer Form**

Copyright 2019 Houston Realtors Information Service, Inc. All Rights Reserved. Users are Responsible for Verifying All Information for Total Accuracy.



| | | | |
|---|---|---|---|
| **Lots** | **Sold** | | |
| ML#: | 56793276 | List Price: | $189,000 |
| Address: | 1711 Winter Street | Orig Price: | $215,000 |
| Area: | 9 | LP/SF: | $37.80 |
| Tax Acc #: | 005-119-000-0010 | DOM: | 168 / 350 |
| City/Location: | Houston | State: | Texas |
| County: | Harris | Zip Code: | 77007 |
| Market Area: | Washington East/Sabine | Key Map: | 493F |
| Subdivision: | Baker NSBB | Country: | United States |
| Lot Size: | 5,000 / Other | Section #: | |
| Acres: | .1136 | Lot Num: | |
| Master Planned: | No | LP/Acre: | $1,663,732.39 |
| Legal Desc: | LT 10 BLK 296 BAKER NSBB | | |
| Tax Acc2: | | Tax Acc3: | |

Directions:     **South side of train tracks, on Winter Street. Just North o Washington Avenue.**

## Listing Office Information

| | |
|---|---|
| List Broker: | **CREG01/Champions Real Estate Group** |
| List Agent: | **PULASKI/Michael Pulaski** |
| Agent Cell: | **713-540-4778** |
| Address: | **6117 Richmond Ave, Ste 120, Houston TX 77057** |
| List Agent Web: | http://www.har.com/MichaelPulaski |
| Agent Email: | michael.pulaski365@gmail.com |
| Licensed Supervisor: | |

**Request an Appointment**

| | |
|---|---|
| Appt #: | **713-540-4778 / Agent** |
| Agent Phone: | **713-540-4778** |
| Office Phone: | **713-785-6666** |
| Fax #: | |
| Office Web: | http://www.creg1.com |

## School Information

| | |
|---|---|
| School District: | **27 - Houston** |
| Middle: | **HOGG MIDDLE SCHOOL (HOUSTON)** |

| | |
|---|---|
| Elem: | **CROCKETT ELEMENTARY SCHOOL (HOUSTON)** |
| High: | **HEIGHTS HIGH SCHOOL** |

*SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.*

## Description Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Access: | | | | Type Contract: | **Unimproved Property** | |
| Front Dim: | **50** | Back Dim: | **50** | Left Dim: | **100** | Right Dim: **100** |
| Lot Use: | **Single-Family, Townhouse** | | | Lot Improve: | **Other** | |
| Lot Desc: | **Can Be Subdivided** | | | Acreage: | **0 Up To 1/4 Acre** | |
| Road Surface: | **Asphalt** | | | Dev Community: | | |
| Gas: | **Availability Unknown** | | | Cable: | **Unknown** | |
| Electric: | **Availability Unknown** | | | Phone: | **Available** | |
| Showing Instruct: | | | | | | |

Agent Remarks:
**Please call or text (713)540-4778 for showings. 50x100 lot. LAND. Very few lots available in the area. See attachments for 3-sub-lot design. Ready for 3 single family homes.**

Public Remarks:
**50 x 100 lot (can be divided into 3 townhomes in total). Rare land available in the area. Build your own home. Plans attached for 3 separate lots. Ready for 3 single family townhomes.**

## Utilities, Features and Additional Information

| | | | |
|---|---|---|---|
| Utility District: | | Area Pool: | |
| Water/Sewer: | **Public Sewer, Public Water** | Area Tennis: | |
| Golf Course Nm: | | Waterfront Feat: | |
| Restrictions: | **Unknown/Verify** | Disclosures: | **No Disclosures** |
| | | List Type: | **Exclusive Right to Sell/Lease** |
| List Date: | **03/10/2019** | Expire Date: | T/Date: |
| Comp: SubAgt: | **2%** | Buyer Agent: **3%** | Bonus: |
| | | | Bonus End: |
| | | | Var/Dual Rt: **No** |

## Financial Information

| | | | |
|---|---|---|---|
| 1st Assumable: | | Finance Cnsdr: | |
| Maint. Fee: | **No** | | Exemptions: |
| Other Mand Fee: | **No** | | Auction: |
| Taxes w/o Exempt: | **$5,002/2017** | | Online Bidding: |
| Tax Rate: | **2.5264** | | |

## Pending Information

| | | | |
|---|---|---|---|
| Pending Date: | **08/29/2019** | Est Close Dt: | OPT End: |

## Sold Information

| | | | | | |
|---|---|---|---|---|---|
| Sale Price: | **$187,000** | Close Date: | **10/07/2019** | Ttl Discount Pts: | CoOp: **No** |
| SP/ACR: | **$1,646,126.76** | Days to Close: | **39** | Terms: | SP/LP #: **0.99** |

| | | |
|---|---|---|
| SP/SF: | **$37.40** | New Loan: |
| Sell Agent: | **Marisa Caldwell (mdefarro)** | |
| Co-Sell Agent: | **()** | |
| TREC #: | | |

| | | |
|---|---|---|
| Amortize Years: | | Int Rate: |
| Sell Broker: | **Greater Houston REP, LLC. (GHRP01)** | |
| Co-Sell Office: | **Greater Houston REP, LLC. ()** | |

Seller Contribution to Buyer Costs:  **0**

Repair/Actual Pd:   **$0**      Title Pd By:   **Seller**

**Prepared By: Kenneth Kangieser**       **Data Not Verified/Guaranteed by MLS**       **Date: 10/31/2019 1:27 PM**
**Obtain Signed HAR Broker Notice to Buyer Form**

Copyright 2019 Houston Realtors Information Service, Inc. All Rights Reserved. Users are Responsible for Verifying All Information for Total Accuracy.



**Land Sales Map**

**SUBJECT PHOTOGRAPHS**



**View of Subject Property from Bingham Street**



**View Looking East on Bingham Street**



**View Looking West on Bingham Street**



**View of Walkway to Rear of Subject**



**View of Backyard at the Rear of Subject**



**View of Single Family Home Interior**



**View of Single Family Home Interior**



**View of Single Family Home Interior**



**View of Kitchen Area**

**FLOOD MAP**



InterFlood by a la mode

Powered by CoreLogic©

**MAP DATA**

FEMA Special Flood Hazard Area: **No**
Map Number: **48201C0690N**
Zone: **X500**
Map Date: **January 06, 2017**
FIPS: **48201**

**MAP LEGEND**

Areas inundated by 500-year flooding
Areas inundated by 100-year flooding
Velocity Hazard

Protected Areas
Floodway
Subject Area

300 yards

**ENGAGEMENT LETTER**



**GREENBRIAR**
**APPRAISAL COMPANY**
Real Estate Appraisers-Consultants

BRAD KANGIESER, MAI, SRA

 

June 5, 2019

Mr. Kevin B. Duff
c/o Ms. Justyna G. Rak
Rachlis Duff Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605

Reference:     Appraisal of effectively vacant land located at 1102 Bingham Street, Houston, Harris
               County, Texas 77007.

Dear Mr. Duff,

Per your request, we will be pleased to appraise the fee simple interest in the above referenced property for
internal auditing procedures in compliance with the requirements of FIRREA and USPAP. Our fee,
inclusive of expenses, is $1,500 for a bound appraisal report as well as an electronic copy. The fee is
payable upon delivery of our reports.   All payments shall be made at 14780 Memorial Drive, Suite 123,
Houston, Texas 77079.

In order to complete the assignment, you will provide a survey, if available and a property contact for
access. The appraisal will commence the date this retainer letter is executed with our delivery date being
approximately 2.5 weeks. Our report will contain our usual contingent and limiting conditions, which are
attached to this agreement. If you have any questions regarding this assignment please call Brad Kangieser,
MAI, SRA.

It is understood that this assignment and the payment of our fee is not dependent or contingent upon any
loan commitment, sale, trial outcome, receipt of funds by you, or any other condition or contingency. So
we may proceed with this assignment, please indicate your acceptance by signing, dating and returning a
copy of this letter.

Thank you for your consideration of our firm and your business, which is appreciated.

Sincerely,

Brad Kangieser, MAI, SRA
President

By: _K—DW_ Receiver
Name: _Kevin B. Duff_
Title: _Receiver_

Date: _10/15/2019_



**Integra Realty Resources**
Houston

**Appraisal of Real Property**

**0.689-Acres on Bingham St.**
Effectively Vacant Land
1102 Bingham St.
Houston, Harris County, Texas 77007

**Prepared For:**
Rachlis Duff Peel & Kaplan, LLC

**Effective Date of the Appraisal:**
October 22, 2019

**Report Format:**
Appraisal Report – Standard Format

**IRR - Houston**
File Number: 184-2019-0796

Tab

B





**0.689-Acres on Bingham St.**
1102 Bingham St.
Houston, Texas

Integra Realty Resources
Houston

9225 Katy Freeway
Suite 206
Houston, Texas 77024

T – 713.973.0212
F – 713.973.2028
www.irr.com
www.irr.com



November 11, 2019


Mr. Kevin Duff
Federal Equity Receiver
Rachlis Duff Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605


SUBJECT:        Market Value Appraisal
                0.689-Acres on Bingham St.
                1102 Bingham St.
                Houston, Harris County, Texas 77007
                IRR - Houston File No. 184-2019-0796


Dear Mr. Duff:

Integra Realty Resources – Houston is pleased to submit the accompanying appraisal of the referenced property. The purpose of the appraisal is to develop an opinion of the market value as is of the fee simple interest in the property. The client for the assignment is Rachlis Duff Peel & Kaplan, LLC, and the intended use is for property disposition purposes.

The subject is a parcel of effectively vacant land containing an area of 0.689 acres or 30,000 square feet. The property is not zoned, it has access to public water and sewer service from the City of Houston, and approximately 35% of the property is within the 500-year floodplain.

The appraisal is intended to conform with the Uniform Standards of Professional Appraisal Practice (USPAP), the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute, applicable state appraisal regulations, and the appraisal needs of Rachlis Duff Peel & Kaplan, LLC.

To report the assignment results, we use the Appraisal Report option of Standards Rule 2-2(a) of USPAP. As USPAP gives appraisers the flexibility to vary the level of information in an Appraisal Report depending on the intended use and intended users of the appraisal, we adhere to the Integra Realty Resources internal standards for an Appraisal Report – Standard Format. This format summarizes the information analyzed, the appraisal methods employed, and the reasoning that supports the analyses, opinions, and conclusions.

Based on the valuation analysis in the accompanying report, and subject to the definitions, assumptions, and limiting conditions expressed in the report, our opinion of value is as follows:

### Value Conclusion

| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion* |
|---|---|---|---|
| Market Value As Is | Fee Simple | October 22, 2019 | $1,200,000 |

*As of the effective date of this appraisal, the subject had delinquent property taxes in the amount of $82,144.64 due for the 2017 and 2018 taxes years, including penalties and interest.*

### Extraordinary Assumptions and Hypothetical Conditions

The value conclusions are subject to the following extraordinary assumptions that may affect the assignment results. An extraordinary assumption is uncertain information accepted as fact. If the assumption is found to be false as of the effective date of the appraisal, we reserve the right to modify our value conclusions.

1. None

The value conclusions are based on the following hypothetical conditions that may affect the assignment results. A hypothetical condition is a condition contrary to known fact on the effective date of the appraisal but is supposed for the purpose of analysis.

1. None



If you have any questions or comments, please contact the undersigned. Thank you for the opportunity to be of service.

Respectfully submitted,

**INTEGRA REALTY RESOURCES - HOUSTON**

**Flint Hindman**
**Certified General Real Estate Appraiser**
**Texas** Certificate # **TX-1337729-G**
Telephone: **713-973-0212, ext. 15**
Email: **fhindman@irr.com**

**Todd Rotholz, MAI**
**Certified General Real Estate Appraiser**
**Texas** Certificate # **TX-1328257-G**
Telephone: **713-973-0212, ext. 12**
Email: **trotholz@irr.com**

**Edward Schulz, MAI SRA**
**Certified General Real Estate Appraiser**
**Texas** Certificate # **TX-1320142-G**
Telephone: **713-973-0212, ext. 11**
Email: **edschulz@irr.com**



# Table of Contents

**Summary of Salient Facts and Conclusions**     **1**

**Quality Assurance**     **2**

**General Information**     **3**
Identification of Subject     3
Sale History     3
Pending Transactions     4
Purpose of the Appraisal     4
Definition of Market Value     4
Definition of As Is Market Value     4
Definition of Property Rights Appraised     5
Intended Use and User     5
Applicable Requirements     5
Report Format     5
Prior Services     5
Scope of Work     5

**Economic Analysis**     **7**
Houston MSA Area Analysis     7
Surrounding Area Analysis     14

**Property Analysis**     **18**
Land Description and Analysis     18
Improvements Description and Analysis     20
Real Estate Taxes     28
Highest and Best Use     29

**Valuation**     **31**
Valuation Methodology     31
Sales Comparison Approach     32
    Analysis and Adjustment of Sales     36
    Land Value Conclusion     39
Conclusion of Value     40
    Exposure Time     40
    Marketing Period     40

**Certification**     **41**

**Assumptions and Limiting Conditions**     **43**

**Addenda**
A.   Appraiser Qualifications
B.   Comparable Data
C.   Delinquent Property Tax Statement
D.   Engagement Letter



# Summary of Salient Facts and Conclusions

| | |
|---|---|
| Property Name | 0.689-Acres on Bingham St. |
| Address | 1102 Bingham St. |
| | Houston, Harris County, Texas  77007 |
| Property Type | Land - Residential |
| Owner of Record | Equitybuild, Inc., d/b/a EB Equitybuild Capital, Inc. |
| Tax ID | 005-067-000-0001 |
| Legal Description | Lots 1, 8, 9, 10, 11, and 12, Block 242, W.R. Baker Addition, NSBB, |
| | John Austin Survey, A-1, Harris County, Texas |

| | |
|---|---|
| Land Area | 0.689 acres; 30,000 SF |
| Zoning Designation | Not Applicable, Not Applicable |
| Highest and Best Use | Townhome use |
| Exposure Time; Marketing Period | 12 months; 12 months |
| Effective Date of the Appraisal | October 22, 2019 |
| Date of the Report | November 11, 2019 |
| Property Interest Appraised | Fee Simple |

| | | |
|---|---|---|
| Sales Comparison Approach | | |
| Number of Sales | 6 | |
| Range of Sale Dates | Apr 18 to Oct 19 | |
| Range of Prices per SF (Unadjusted) | $35.49 - $44.35 | |
| Market Value Conclusion* | $1,200,000 | ($40.00/SF) |

The values reported above are subject to the definitions, assumptions, and limiting conditions set forth in the accompanying report of which this summary is a part. No party other than Rachlis Duff Peel & Kaplan, LLC may use or rely on the information, opinions, and conclusions contained in the report. It is assumed that the users of the report have read the entire report, including all of the definitions, assumptions, and limiting conditions contained therein.

***As of the effective date of this appraisal, the subject had delinquent property taxes in the amount of $82,144.64 due for the 2017 and 2018 taxes years, including penalties and interest.***

## Extraordinary Assumptions and Hypothetical Conditions

The value conclusions are subject to the following extraordinary assumptions that may affect the assignment results. An extraordinary assumption is uncertain information accepted as fact. If the assumption is found to be false as of the effective date of the appraisal, we reserve the right to modify our value conclusions.

1.  None

The value conclusions are based on the following hypothetical conditions that may affect the assignment results. A hypothetical condition is a condition contrary to known fact on the effective date of the appraisal but is supposed for the purpose of analysis.

1.  None



# Quality Assurance

Delivering superior value is a top priority at IRR and we place a premium on feedback from our valued clients. By learning more about your experience with IRR, we will be better able to serve your needs – to enhance our products, service offerings, and client communications.

Attached is a short survey applicable to this appraisal report and the service that you received. Please take a few minutes to share your experience of IRR with us. Your feedback will be reviewed by our Quality Control team. If you desire a follow-up telephone call, please provide your contact information and a member of our Quality Control team will contact you.

Access the online survey here: quality.irr.com.

Thank you in advance for assisting us with this important endeavor. Please feel free to contact your Local Office using the contact information provided within the letter of transmittal or our Quality Control team at quality@irr.com, with any questions or suggestions you may have.



# General Information

## Identification of Subject

The subject is a parcel of effectively vacant land containing an area of 0.689 acres or 30,000 square feet. The property is not zoned, it has access to public water and sewer service from the City of Houston, and approximately 35% of the property is within the 500-year floodplain.

### Property Identification

| | |
|---|---|
| Property Name | 0.689-Acres on Bingham St. |
| Address | 1102 Bingham St. |
| | Houston, Texas 77007 |
| Tax ID | 005-067-000-0001 |
| Owner of Record | Equitybuild, Inc., d/b/a EB Equitybuild Capital, Inc. |
| Legal Description | Lots 1, 8, 9, 10, 11, and 12, Block 242, W.R. Baker Addition, NSBB, John Austin Survey, A-1, Harris County, Texas |

## Sale History

The most recent closed sale of the subject is summarized as follows:

| | |
|---|---|
| Sale Date | March 21, 2014 |
| Seller | Shahin Naghavi |
| Buyer | Equitybuild, Inc., d/b/a EB Equitybuild Capital, Inc. |
| Sale Price | Unknown |
| Recording Instrument Number | 20140118093 |
| Expenditures Since Purchase | Unknown |

We attempted to confirm the sales price but could not. To the best of our knowledge, no other sale or transfer of ownership has taken place within a five-year period prior to the effective appraisal date.

The following schedule illustrates the various asking prices since the 2014 purchase.

### Property Listing History

| MLS # | List Date | Termination/ Expiry Date | Original Asking Price | Per SqFt | Ending Asking Price | Per SqFt |
|---|---|---|---|---|---|---|
| 33455456 | 09/20/14 | 12/19/14 | $1,800,000 | $60 | $1,800,000 | $60 |
| 60490245 | 12/19/14 | 08/27/15 | $1,800,000 | $60 | $1,750,000 | $58 |
| 26383944 | 08/27/15 | 02/29/16 | $1,750,000 | $58 | $1,750,000 | $58 |
| 47950344 | 03/24/16 | 06/03/16 | $1,650,000 | $55 | $1,695,000 | $57 |
| 11012133 | 04/03/18 | 06/16/18 | $1,650,000 | $55 | $1,650,000 | $55 |
| 50395492 | 06/16/18 | 12/31/18 | $1,350,000 | $45 | $1,350,000 | $45 |



The listing broker on these listings did not speculate as to why there has been no contract. The most recent asking price is above market value, in our opinion.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the market value as is of the fee simple interest in the property as of the effective date of the appraisal, October 22, 2019. The date of the report is November 11, 2019. The appraisal is valid only as of the stated effective date or dates.

## Definition of Market Value

Market value is defined as:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(Source: Code of Federal Regulations, Title 12, Chapter I, Part 34.42[g]; also, Interagency Appraisal and Evaluation Guidelines, Federal Register, 75 FR 77449, December 10, 2010, page 77472)*

## Definition of As Is Market Value

As is market value is defined as, "The estimate of the market value of real property in its current physical condition, use, and zoning as of the appraisal date."

*(Source:* Appraisal Institute, *The Dictionary of Real Estate Appraisal,* 6th ed. (Chicago: Appraisal Institute, 2015)*; also, Interagency Appraisal and Evaluation Guidelines, Federal Register, 75 FR 77449, December 10, 2010, page 77471)*



## Definition of Property Rights Appraised

Fee simple estate is defined as, "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."

*Source*: Appraisal Institute, *The Dictionary of Real Estate Appraisal*, 6th ed. (Chicago: Appraisal Institute, 2015)

## Intended Use and User

The intended use of the appraisal is for property disposition purposes. The client and intended user is Rachlis Duff Peel & Kaplan, LLC. The appraisal is not intended for any other use or user. No party or parties other than Rachlis Duff Peel & Kaplan, LLC may use or rely on the information, opinions, and conclusions contained in this report.

## Applicable Requirements

This appraisal is intended to conform to the requirements of the following:

- Uniform Standards of Professional Appraisal Practice (USPAP);
- Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute;
- Applicable state appraisal regulations;
- Appraisal needs of Rachlis Duff Peel & Kaplan, LLC.

## Report Format

This report is prepared under the Appraisal Report option of Standards Rule 2-2(a) of USPAP. As USPAP gives appraisers the flexibility to vary the level of information in an Appraisal Report depending on the intended use and intended users of the appraisal, we adhere to the Integra Realty Resources internal standards for an Appraisal Report – Standard Format. This format summarizes the information analyzed, the appraisal methods employed, and the reasoning that supports the analyses, opinions, and conclusions.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Scope of Work

To determine the appropriate scope of work for the assignment, we considered the intended use of the appraisal, the needs of the user, the complexity of the property, and other pertinent factors. Our concluded scope of work is described below.



0.689-Acres on Bingham St.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. Use of the approaches in this assignment is summarized as follows:

### Approaches to Value

| Approach | Applicability to Subject | Use in Assignment |
| --- | --- | --- |
| Cost Approach | Not Applicable | Not Utilized |
| Sales Comparison Approach | Applicable | Utilized |
| Income Capitalization Approach | Not Applicable | Not Utilized |

We use only the sales comparison approach in developing an opinion of value for the subject. This approach is applicable to the subject because there is an active market for similar properties, and sufficient sales data is available for analysis.

The cost approach is not applicable because there are no improvements that contribute value to the property, and the income approach is not applicable because the subject is not likely to generate rental income in its current state.

## Research and Analysis

The type and extent of our research and analysis is detailed in individual sections of the report. This includes the steps we took to verify comparable sales, which are disclosed in the comparable sale profile sheets in the addenda to the report. Although we make an effort to confirm the arms-length nature of each sale with a party to the transaction, it is sometimes necessary to rely on secondary verification from sources deemed reliable.

## Inspection

Flint Hindman conducted an on-site inspection of the property on October 22, 2019. Todd Rotholz, MAI, and Edward Schulz, MAI SRA, did not inspect the property.



# Economic Analysis

## Houston MSA Area Analysis

The subject is located in the Houston-The Woodlands-Sugar Land, TX Metropolitan Statistical Area, hereinafter called the Houston MSA, as defined by the U.S. Office of Management and Budget. The Houston MSA is 8,258 square miles in size and is the fifth most populous metropolitan area in the nation.

## Population

The Houston MSA has an estimated 2019 population of 7,092,836, which represents an average annual 2.0% increase over the 2010 census of 5,920,416. The Houston MSA added an average of 130,269 residents per year over the 2010-2019 period, and its annual growth rate exceeded the State of Texas rate of 1.6%.

Looking forward, the Houston MSA's population is projected to increase at a 1.6% annual rate from 2019-2024, equivalent to the addition of an average of 113,651 residents per year. The Houston MSA's growth rate is expected to exceed that of Texas, which is projected to be 1.4%.

**Population Trends**

|  | Population | | | Compound Ann. % Chng | |
| --- | --- | --- | --- | --- | --- |
|  | 2010 Census | 2019 Estimate | 2024 Projection | 2010 - 2019 | 2019 - 2024 |
| Texas | 25,145,561 | 28,959,501 | 30,972,397 | 1.6% | 1.4% |
| Houston Texas Metro | 5,920,416 | 7,092,836 | 7,661,093 | 2.0% | 1.6% |
| 77007 | 30,052 | 42,700 | 46,850 | 4.0% | 1.9% |
| Source: Environics Analytics | | | | | |

## Employment

Total employment in the Houston MSA is currently estimated at 3,137,700 jobs. Between year-end 2008 and the present, employment rose by 469,700 jobs, equivalent to a 17.6% increase over the entire period. There were gains in employment in seven out of the past ten years despite the national economic downturn and slow recovery. Although the Houston MSA's employment rose over the last decade, it underperformed Texas, which experienced an increase in employment of 18.7% or 2,006,900 jobs over this period.

A comparison of unemployment rates is another way of gauging an area's economic health. Over the past decade, the Houston MSA unemployment rate has been slightly higher than that of Texas, with an average unemployment rate of 5.9% in comparison to a 5.8% rate for Texas. A higher unemployment rate is a negative indicator.

Recent data shows that the Houston MSA unemployment rate is 3.9% in comparison to a 3.6% rate for Texas, a negative sign for the Houston MSA.



**Employment Trends**

| Year | Total Employment (Year End) | | | | Unemployment Rate (Ann. Avg.) | |
| | Houston MSA | % Change | Texas | % Change | Houston MSA | Texas |
| --- | --- | --- | --- | --- | --- | --- |
| 2008 | 2,668,000 | | 10,704,100 | | 4.7% | 4.8% |
| 2009 | 2,557,500 | -4.1% | 10,331,800 | -3.5% | 7.6% | 7.6% |
| 2010 | 2,608,000 | 2.0% | 10,548,000 | 2.1% | 8.3% | 8.2% |
| 2011 | 2,690,900 | 3.2% | 10,784,200 | 2.2% | 7.8% | 7.8% |
| 2012 | 2,808,400 | 4.4% | 11,157,500 | 3.5% | 6.6% | 6.7% |
| 2013 | 2,898,400 | 3.2% | 11,458,300 | 2.7% | 6.0% | 6.3% |
| 2014 | 3,015,100 | 4.0% | 11,879,200 | 3.7% | 5.0% | 5.1% |
| 2015 | 3,012,600 | -0.1% | 12,031,000 | 1.3% | 4.6% | 4.5% |
| 2016 | 3,010,200 | -0.1% | 12,181,000 | 1.2% | 5.3% | 4.6% |
| 2017 | 3,064,400 | 1.8% | 12,434,900 | 2.1% | 5.0% | 4.3% |
| 2018 | 3,137,700 | 2.4% | 12,711,000 | 2.2% | 4.3% | 3.9% |
| Overall Change 2008-2018 | 469,700 | 17.6% | 2,006,900 | 18.7% | | |
| Avg Unemp. Rate 2008-2018 | | | | | 5.9% | 5.8% |
| Unemployment Rate - December 2018 | | | | | 3.9% | 3.6% |

Source: Bureau of Labor Statistics and Economy.com. Employment figures are from the Current Employment Survey (CES). Unemployment rates are from the Current Population Survey (CPS). The figures are not seasonally adjusted.

## Employment Sectors

The composition of the Houston MSA job market is depicted in the following chart, along with that of Texas. Total employment for both areas is broken down by major employment sector, and the sectors are ranked from largest to smallest based on the percentage of Houston MSA jobs in each category.





**Employment Sectors - 2018**

Source: Bureau of Labor Statistics and Economy.com

The Houston MSA has greater concentrations than Texas in the following employment sectors:

1. Trade; Transportation; and Utilities, representing 20.5% of Houston MSA payroll employment compared to 20.2% for Texas as a whole. This sector includes jobs in retail trade, wholesale trade, trucking, warehousing, and electric, gas, and water utilities.

2. Professional and Business Services, representing 16.0% of Houston MSA payroll employment compared to 13.8% for Texas as a whole. This sector includes legal, accounting, and engineering firms, as well as management of holding companies.

3. Mining & Construction, representing 9.7% of Houston MSA payroll employment compared to 7.9% for Texas as a whole. This sector includes construction of buildings, roads, and utility systems, as well as mining, quarrying, and oil and gas extraction.

4. Manufacturing, representing 7.5% of Houston MSA payroll employment compared to 7.1% for Texas as a whole. This sector includes all establishments engaged in the manufacturing of durable and nondurable goods.

The Houston MSA is underrepresented in the following sectors:

1. Government, representing 13.5% of Houston MSA payroll employment compared to 15.6% for



Texas as a whole. This sector includes employment in local, state, and federal government agencies.

2. Education and Health Services, representing 12.7% of Houston MSA payroll employment compared to 13.5% for Texas as a whole. This sector includes employment in public and private schools, colleges, hospitals, and social service agencies.

3. Leisure and Hospitality, representing 10.3% of Houston MSA payroll employment compared to 10.7% for Texas as a whole. This sector includes employment in hotels, restaurants, recreation facilities, and arts and cultural institutions.

4. Financial Activities, representing 5.2% of Houston MSA payroll employment compared to 6.2% for Texas as a whole. Banking, insurance, and investment firms are included in this sector, as are real estate owners, managers, and brokers.

## Gross Domestic Product

The Houston MSA is the sixth largest metropolitan area economy in the nation based on Gross Domestic Product (GDP).

Economic growth, as measured by annual changes in GDP, has been considerably lower in the Houston MSA than Texas overall during the past eight years. The Houston MSA has grown at a 2.3% average annual rate while Texas has grown at a 3.1% rate. As the national economy improves, the Houston MSA continues to underperform Texas. GDP for the Houston MSA was essentially unchanged in 2017 while Texas's GDP rose by 1.3%.

The Houston MSA has a per capita GDP of $63,311, which is 11% greater than Texas's GDP of $57,077. This means that Houston MSA industries and employers are adding relatively more value to the economy than their counterparts in Texas.

| Gross Domestic Product | | | | |
| --- | --- | --- | --- | --- |
| | ($ Mil) | | ($ Mil) | |
| Year | Houston MSA | % Change | Texas | % Change |
| 2010 | 372,614 | | 1,301,727 | |
| 2011 | 385,027 | 3.3% | 1,343,791 | 3.2% |
| 2012 | 408,515 | 6.1% | 1,411,379 | 5.0% |
| 2013 | 425,042 | 4.0% | 1,472,104 | 4.3% |
| 2014 | 436,083 | 2.6% | 1,512,351 | 2.7% |
| 2015 | 452,352 | 3.7% | 1,590,409 | 5.2% |
| 2016 | 436,221 | -3.6% | 1,594,408 | 0.3% |
| 2017 | 436,369 | 0.0% | 1,615,555 | 1.3% |
| Compound % Chg (2010-2017) | | 2.3% | | 3.1% |
| GDP Per Capita 2017 | $63,311 | | $57,077 | |

Source: Bureau of Economic Analysis and Economy.com; data released September 2018. The release of state and local GDP data has a longer lag time than national data. The data represents inflation-adjusted "real" GDP stated in 2009 dollars.



## Household Income

The Houston MSA has a higher level of household income than Texas. Median household income for the Houston MSA is $64,833, which is 7.2% greater than the corresponding figure for Texas.

**Median Household Income - 2019**

|                                                  | Median    |
| ------------------------------------------------ | --------- |
| Houston Texas Metro                              | $64,833   |
| Texas                                            | $60,458   |
| Comparison of Houston Texas Metro to Texas       | + 7.2%    |

Source: Environics Analytics

The following chart shows the distribution of households across twelve income levels. The Houston MSA has a greater concentration of households in the higher income levels than Texas. Specifically, 44% of Houston MSA households are at the $75,000 or greater levels in household income as compared to 41% of Texas households. A lesser concentration of households is apparent in the lower income levels, as 27% of Houston MSA households are below the $35,000 level in household income versus 29% of Texas households.

**Household Income Distribution - 2019**



Source: Environics Analytics



## Education and Age

Residents of the Houston MSA have a higher level of educational attainment than those of Texas. An estimated 32% of Houston MSA residents are college graduates with four-year degrees, versus 29% of Texas residents. People in the Houston MSA are similar in age to their Texas counterparts. The median age of both the Houston MSA and Texas is 35 years.

**Education & Age - 2019**



Source: Environics Analytics

## Conclusion

The Houston MSA economy will benefit from a growing population base and higher income and education levels. The Houston MSA experienced growth in the number of jobs over the past decade, and it is reasonable to assume that employment growth will occur in the future. Moreover, the Houston MSA gains strength from being the fifth most populous metropolitan area in the country and generating a higher level of GDP per capita than Texas overall. We anticipate that the Houston MSA economy will improve, and employment will grow, strengthening the demand for real estate.



## Area Map





## Surrounding Area Analysis

### Location

The subject is located in the central area of the City of Houston, just to northwest of the Central Business District with the neighborhood being generally delineated as follows:

**North**          Interstate 10

**South**          Buffalo Bayou/Memorial Drive

**East**            Interstate 45

**West**           Studemont Street

A map identifying the location of the property follows this section.

### Access and Linkages

Primary access to the area is provided by Interstate 10, a major arterial that crosses the Houston area in an east / west direction. Access to the subject from Interstate 10 is provided by Sawyer Street to Edwards Street to Beachton Street, and travel time from the major arterial to the subject is about 5 minutes. Overall, vehicular access is average.

### Demographics

A demographic profile of the surrounding area, including population, households, and income data, is presented in the following table.



**Surrounding Area Demographics**

| 2019 Estimates | 1-Mile Radius | 3-Mile Radius | 5-Mile Radius | Houston Texas Metro | Texas |
|---|---|---|---|---|---|
| Population 2010 | 21,602 | 158,890 | 372,343 | 5,920,416 | 25,145,561 |
| Population 2019 | 24,897 | 187,514 | 426,242 | 7,092,836 | 28,959,501 |
| Population 2024 | 25,767 | 198,772 | 450,640 | 7,661,093 | 30,972,397 |
| Compound % Change 2010-2019 | 1.6% | 1.9% | 1.5% | 2.0% | 1.6% |
| Compound % Change 2019-2024 | 0.7% | 1.2% | 1.1% | 1.6% | 1.4% |
| | | | | | |
| Households 2010 | 4,571 | 66,498 | 150,021 | 2,062,529 | 8,922,933 |
| Households 2019 | 5,818 | 81,966 | 178,278 | 2,461,222 | 10,285,623 |
| Households 2024 | 6,280 | 87,972 | 190,679 | 2,657,672 | 11,012,627 |
| Compound % Change 2010-2019 | 2.7% | 2.4% | 1.9% | 2.0% | 1.6% |
| Compound % Change 2019-2024 | 1.5% | 1.4% | 1.4% | 1.5% | 1.4% |
| | | | | | |
| Median Household Income 2019 | $78,046 | $74,924 | $65,686 | $64,833 | $60,458 |
| Average Household Size | 2.2 | 2.1 | 2.2 | 2.9 | 2.8 |
| College Graduate % | 28% | 48% | 45% | 32% | 29% |
| Median Age | 35 | 37 | 36 | 35 | 35 |
| Owner Occupied % | 40% | 42% | 44% | 63% | 64% |
| Renter Occupied % | 60% | 58% | 56% | 37% | 36% |
| Median Owner Occupied Housing Value | $357,054 | $389,631 | $363,246 | $194,594 | $175,144 |
| Median Year Structure Built | 1970 | 1989 | 1977 | 1991 | 1988 |
| Average Travel Time to Work in Minutes | 26 | 26 | 26 | 33 | 29 |

Source: Environics Analytics

As shown above, the current population within a 3-mile radius of the subject is 187,514, and the average household size is 2.1. Population in the area has grown since the 2010 census, and this trend is projected to continue over the next five years. Compared to the Houston MSA overall, the population within a 3-mile radius is projected to grow at a slower rate.

Median household income is $74,924, which is higher than the household income for the Houston MSA. Residents within a 3-mile radius have a considerably higher level of educational attainment than those of the Houston MSA, while median owner-occupied home values are considerably higher.

## Land Use

This generally defined area was originally developed with single-family residential and industrial uses. Initial development in the area was in the 1920's/1930's. Redevelopment in this area initiated on a minimal basis during the 1980's. During the 1990's, the area realized rapid redevelopment due to a strong demand for newly constructed single-family residences, followed by new commercial support. These newly developed single-family residences have for the most part been mid-density townhome or patio home type properties. Mid-rise apartments and condominiums were also constructed along major thoroughfares in and around the subject neighborhood.

The immediate neighborhood from Spring Street to the north, Dart Street to the south, Interstate 45 to the east, and Houston Avenue to the west, has witnessed a substantial amount of older single-family properties being redeveloped townhome developments in recent years.



Recent residential development within and west of the defined neighborhood has spawned new retail developments (both multi-tenant and stand-alone) along Washington Avenue and the land area between Sawyer and Studemont Streets, as well as west of the defined neighborhoods.

| Subject's Immediate Surroundings | |
| --- | --- |
| North | Townhomes |
| South | Townhomes |
| East | Vacant Lot/Older Single-Family Residence |
| West | Older Single-Family Residence/Vacant Land then Townhomes |

As illustrated in the above chart, there has been extensive recent townhome development near the subject, with some remaining older homes and vacant lots for new development.

## Outlook and Conclusions

Given the history of the area and the growth trends, it is anticipated that property values will increase in the near future.



## Surrounding Area Map





# Property Analysis

## Land Description and Analysis

### Location

The property is located along the northline of Bingham Street, immediately west of Beachton Street. Based upon the Harris County Appraisal District (HCAD) Plat Map, Beachton Street is an unimproved right-of-way (ROW) along the east line of the subject. An active Southern Pacific Railroad Company track runs along the north property line in an east/west direction. Based upon the HCAD Plat Map and properties to the west, Winter Street is an unimproved ROW that could be constructed as two, one-lane streets, with each street paralleling the northern and southern lines of the railroad track.

### Land Area

The following table summarizes the subject's land area.

| Land Area Summary | | |
|---|---|---|
| Tax ID | SF | Acres |
| 005-067-000-0001 | 30,000 | 0.689 |
| Source: Public Records | | |

### Shape and Dimensions

The site is l-shaped. Site utility based on shape and dimensions is average.

### Topography

The site is generally level and at street grade. The topography does not result in any development limitations.

### Drainage

No particular drainage problems were observed or disclosed at the time of field inspection. This appraisal assumes that there are not any unusual drainage issues that would affect the development of the subject.

### Flood Hazard Status

The following table provides flood hazard information.

| Flood Hazard Status | |
|---|---|
| Community Panel Number | 48201C0690N |
| Date | January 6, 2017 |
| Zone | X (Shaded) and X (Unshaded) |
| Description | ±35% within 500-Year / 65% outside floodplain |



Given the limited area within the 500-year flood plain, it is our opinion that the effect on development costs would be minimal.

## Environmental Hazards

An environmental assessment report was not provided for review, and during our inspection, we did not observe any obvious signs of contamination on or near the subject. However, environmental issues are beyond our scope of expertise. It is assumed that the property is not adversely affected by environmental hazards.

## Ground Stability

A soils report was not provided for our review. Based on our inspection of the subject and observation of development on nearby sites, there are no apparent ground stability problems. However, we are not experts in soils analysis. We assume that the subject's soil bearing capacity is sufficient to support a variety of uses.

## Streets, Access and Frontage

Details pertaining to street access and frontage are provided in the following table.

| Streets, Access and Frontage | | |
|---|---|---|
| Street | Bingham Street | Beachton Street |
| Frontage Feet | 50 | 200 (Unimproved ROW) |
| Paving | Asphalt | |
| Curbs | No | |
| Sidewalks | No | |
| Lanes | 2 way, 1 lane each way | |
| Direction of Traffic | East/West | |
| Condition | Average | |
| Traffic Levels | Low | |
| Signals/Traffic Control | None | |
| Access/Curb Cuts | Yes/Yes | |
| Visibility | Average | |

The subject has approximately 250' of frontage along a Southern Pacific Railroad Company track along its northern boundary.

## Utilities

The availability of utilities to the subject is summarized in the following table.



| Utilities | | |
|-----------|-----------|------------------|
| Service | Provider | Adequacy |
| Water | City of Houston | Assumed Adequate |
| Sewer | City of Houston | Assumed Adequate |
| Electricity | Various | Assumed Adequate |
| Natural Gas | CenterPoint Energy | Assumed Adequate |
| Local Phone | Various | Assumed Adequate |

## Zoning

The subject is located within the city limits of Houston, which does not enforce zoning.

## Other Land Use Regulations

We are not aware of any other land use regulations that would affect the property.

## Easements, Encroachments and Restrictions

Based upon a review of the most recent deed, there do not appear to be any easements, encroachments, or restrictions that would adversely affect value. Our valuation assumes no adverse impacts from easements, encroachments, or restrictions, and further assumes that the subject has clear and marketable title.

## Conclusion of Site Analysis

Overall, the physical characteristics of the site and the availability of utilities result in functional utility suitable for a variety of uses. We are not aware of any other restrictions on development.

## Improvements Description and Analysis

The subject is currently improved with a single-family residence. The home is constructed on concrete blocks and retains the character of a much older home. According to the Harris County Appraisal District, the home was constructed in 2002; however, given the type of construction, it is our opinion that the home is much older and was renovated in 2002. In some cases, HCAD lists the renovation date if the actual year of construction is not known.

Given the underlying land value discussed herein, it is our opinion that the current improvements do not contribute value over and above the land value only. As such, the appropriate valuation methodology is to net the cost to raze the improvements from our as vacant land value.





Aerial Close-Up



Subject from Bingham Street



SFR - Rear Elevation



SFR - Interior



Missing AC Unit



Rear Portion of Property



 

View east on Bingham St - Subject to the Left    View west on Bingham St - Subject to the Right

0.689-Acres on Bingham St.

## Aerial



0.689-Acres on Bingham St.



## Plat Map





## Aerial Close-Up



0.689-Acres on Bingham St.



## Flood Map





## FEMA Map



0.689-Acres on Bingham St.



## Real Estate Taxes

The following chart sets forth the various taxing authorities and their corresponding tax rate for the subject property:

### Tax Rates

| Entity | Tax Rate (Per $100) |
|---|---|
| Houston Independent School District | 1.206700 |
| Harris County | 0.418580 |
| Harris County Flood Control District | 0.028770 |
| Port of Houston Authority | 0.011550 |
| Harris County Hospital District | 0.171080 |
| Harris County Education Department | 0.005190 |
| Houston Community College | 0.100263 |
| City of Houston | 0.588310 |
| Total | 2.530443 |

Real estate taxes and assessments for the current tax year are shown in the following table.

### Taxes and Assessments - 2019

| Tax ID | Assessed Value | | | Taxes and Assessments | | |
|---|---|---|---|---|---|---|
| | | | | | Ad Valorem | |
| | Land | Improvements | Total | Tax Rate | Taxes | Total |
| 005-067-000-0001 | $1,023,650 | $100 | $1,023,750 | 2.530443% | $25,905 | $25,905 |

*As of the effective date of this appraisal, the subject had delinquent property taxes in the amount of $82,144.64 due for the 2017 and 2018 taxes years, including penalties and interest.*



# Highest and Best Use

## Process

Before a property can be valued, an opinion of highest and best use must be developed for the subject site, both as vacant, and as improved. By definition, the highest and best use must be:

- Physically possible.

- Legally permissible under the zoning regulations and other restrictions that apply to the site.

- Financially feasible.

- Maximally productive, i.e., capable of producing the highest value from among the permissible, possible, and financially feasible uses.

## As Vacant

### Physically Possible

The physical characteristics of the site do not appear to impose any unusual restrictions on development. Overall, the physical characteristics of the site and the availability of utilities result in functional utility suitable for primarily residential uses.

### Legally Permissible

The site is not zoned and to our knowledge, there are no legal restrictions such as easements or deed restrictions that would effectively limit the use of the property.

### Financially Feasible

Ongoing townhome development continues to be prevalent throughout the subject neighborhood. It appears that townhome development is the only financially feasible use of the subject property.

### Maximally Productive

There does not appear to be any reasonably probable use of the site that would generate a higher residual land value than townhome development. It is our opinion that townhome development is the maximally productive use of the property.

### Conclusion

Development of the site into multiple townhomes is the only use that meets the four tests of highest and best use. Therefore, it is concluded to be the highest and best use of the property as vacant.

## As Improved

The subject site is improved with a 918 SF single-family residence with an unknown year of construction. The existing improvements are not consistent with the highest and best use as vacant and are an underutilization the site. Accordingly, the highest and best use is to redevelop the site for townhome development.



## Most Probable Buyer

Taking into account the functional utility of the site and area development trends, the probable buyer is a developer.



# Valuation

## Valuation Methodology

Appraisers usually consider three approaches to estimating the market value of real property. These are the cost approach, sales comparison approach and the income capitalization approach.

The **cost approach** assumes that the informed purchaser would pay no more than the cost of producing a substitute property with the same utility. This approach is particularly applicable when the improvements being appraised are relatively new and represent the highest and best use of the land or when the property has unique or specialized improvements for which there is little or no sales data from comparable properties.

The **sales comparison approach** assumes that an informed purchaser would pay no more for a property than the cost of acquiring another existing property with the same utility. This approach is especially appropriate when an active market provides sufficient reliable data. The sales comparison approach is less reliable in an inactive market or when estimating the value of properties for which no directly comparable sales data is available. The sales comparison approach is often relied upon for owner-user properties.

The **income capitalization approach** reflects the market's perception of a relationship between a property's potential income and its market value. This approach converts the anticipated net income from ownership of a property into a value indication through capitalization. The primary methods are direct capitalization and discounted cash flow analysis, with one or both methods applied, as appropriate. This approach is widely used in appraising income-producing properties.

Reconciliation of the various indications into a conclusion of value is based on an evaluation of the quantity and quality of available data in each approach and the applicability of each approach to the property type.

The methodology employed in this assignment is summarized as follows:

### Approaches to Value

| Approach | Applicability to Subject | Use in Assignment |
|---|---|---|
| Cost Approach | Not Applicable | Not Utilized |
| Sales Comparison Approach | Applicable | Utilized |
| Income Capitalization Approach | Not Applicable | Not Utilized |



## Sales Comparison Approach

To develop an opinion of the subject's land value, as if vacant and available to be developed to its highest and best use, we utilize the sales comparison approach. This approach develops an indication of value by researching, verifying, and analyzing sales of similar properties.

Our sales research focused on transactions within the following parameters:

- Location: Immediate Neighborhood

- Size: 0.100 to 1.000-Acre

- Use: Residential

- Transaction Date: 2nd Quarter 2018 to Present

For this analysis, we use price per square foot as the appropriate unit of comparison because market participants typically compare sale prices and property values on this basis. The most relevant sales are summarized in the following table.



## Summary of Comparable Land Sales

| No. | Name/Address | Sale Date; Status | Effective Sale Price | SF; Acres | $/SF Land |
|-----|-------------|-------------------|---------------------|-----------|-----------|
| 1 | 0.154-Acres on Dart St<br>0 Dart St.<br>Houston<br>Harris County<br>TX | Apr-18<br>Closed | $298,000 | 6,719<br>0.15 | $44.35 |
| | Comments: This site was vacant at the time of sale. | | | | |
| 2 | 0.230-Acres on Colorado St<br>1517 Colorado St.<br>Houston<br>Harris County<br>TX | Aug-18<br>Closed | $381,000 | 10,000<br>0.23 | $38.10 |
| | Comments: We have accounted for $5,000 in demolition costs to raze the older SFR on this tract. | | | | |
| 3 | 0.344-Acres on Hickory St<br>0 Hickory St.<br>Houston<br>Harris County<br>TX | Sep-18<br>Closed | $595,000 | 15,000<br>0.34 | $39.67 |
| | Comments: This tract had already been subdivided for townhome development at the time of sale. | | | | |
| 4 | 0.110-Acres on Bingham St<br>1115 Bingham St.<br>Houston<br>Harris County<br>TX | Nov-18<br>Closed | $210,000 | 4,783<br>0.11 | $43.91 |
| | Comments: The seller purchased this tract in August 2013 for $211,500. This lot was vacant at the time of sale. | | | | |
| 5 | 0.230-Acres on Colorado St<br>1517 Colorado St.<br>Houston<br>Harris County<br>TX | Oct-19<br>In-Contract | $354,900 | 10,000<br>0.23 | $35.49 |
| | Comments: The seller purchased this tract for $37.60/SF on August 20, 2018 and is trying to unload the tract. | | | | |
| 6 | 0.230-Acres on Hickory St<br>0 Hickory St.<br>Houston<br>Harris County<br>TX | Oct-19<br>Listing | $434,000 | 10,000<br>0.23 | $43.40 |
| | Comments: The asking price of $465,000 includes Architectural Plans/Drawings. According to the selling broker, the plans/drawing were valued at $31,000, which we have deducted from the asking price. | | | | |
| | **Subject**<br>0.689-Acres on Bingham St.<br>Houston, TX | | | 30,000<br>0.69 | |



## Comparable Land Sales Map







Sale 1
0.154-Acres on Dart St



Sale 2
0.230-Acres on Colorado St



Sale 3
0.344-Acres on Hickory St



Sale 4
0.110-Acres on Bingham St



Sale 5
0.230-Acres on Colorado St



Sale 6
0.230-Acres on Hickory St

0.689-Acres on Bingham St.



## Analysis and Adjustment of Sales

The sales are compared to the subject and adjusted to account for material differences that affect value. Adjustments are considered for the following factors, in the sequence shown below.

| Adjustment Factor | Accounts For | Comments |
| --- | --- | --- |
| Effective Sale Price | Atypical economics of a transaction, such as demolition cost or expenditures by buyer at time of purchase. | We added $5,000 to Sales 2 and 5 for demolition costs and deducted $31,000 from Sale 6 for the broker supplied cost of the architectural plans and drawings that are included in the asking price. |
| Real Property Rights | Fee simple, leased fee, leasehold, partial interest, etc. | All sales are comparable. |
| Financing Terms | Seller financing, or assumption of existing financing, at non-market terms. | No adjustments are warranted. |
| Conditions of Sale | Extraordinary motivation of buyer or seller, assemblage, forced sale. | A negative 10% was applied to Sale 6, as listings rarely achieve their asking price. |
| Market Conditions | Changes in the economic environment over time that affect the appreciation and depreciation of real estate. | 3% per Year to Sales 1-4 |
| Location | Market or submarket area influences on sale price; surrounding land use influences. | Sales 1 and 4 were adjusted downward as these sales are not located along the active railroad track. |
| Access/Exposure | Convenience to transportation facilities; ease of site access; visibility; traffic counts. | All sales are comparable. |
| Size | Inverse relationship that often exists between parcel size and unit value. | Smaller tracts typically sell for a premium on a per unit basis; however, in higher density Inner Loop areas, larger tracts are much more limited (in availability) than smaller tracts and typically allow for greater development potential. As such, all sales, except for Sale 3, |



| Adjustment Factor | Accounts For | Comments |
|---|---|---|
| | | have been adjusted upward to varying degrees for their smaller sizes. |
| Shape and Topography | Primary physical factors that affect the utility of a site for its highest and best use. | No adjustments necessary. |
| Corner | Corner locations have a superior utility as compared to interior locations. | No adjustments necessary. |
| Floodplain Designation | Flood Plain designations can raise the costs of improving a site. | No adjustments necessary. |



The following table summarizes the adjustments we make to each sale.

**Land Sales Adjustment Grid**

| | Subject | Comparable 1 | Comparable 2 | Comparable 3 | Comparable 4 | Comparable 5 | Comparable 6 |
|---|---|---|---|---|---|---|---|
| Name | 0.689-Acres on Bingham St. | 0.154-Acres on Dart St | 0.230-Acres on Colorado St | 0.344-Acres on Hickory St | 0.110-Acres on Bingham St | 0.230-Acres on Colorado St | 0.230-Acres on Hickory St |
| Address | 1102 Bingham St. | 0 Dart St. | 1517 Colorado St. | 0 Hickory St | 1115 Bingham St. | 1517 Colorado St. | 0 Hickory St. |
| City | Houston | Houston | Houston | Houston | Houston | Houston | Houston |
| County | Harris | Harris | Harris | Harris | Harris | Harris | Harris |
| Sale Date | | Apr-18 | Aug-18 | Sep-18 | Nov-18 | Oct-19 | Oct-19 |
| Sale Status | | Closed | Closed | Closed | Closed | In-Contract | Listing |
| Sale Price | | $298,000 | $376,000 | $595,000 | $210,000 | $349,900 | $465,000 |
| Other Adjustment | | $0 | $5,000 | $0 | $0 | $5,000 | -$31,000 |
| Description of Adjustment | | | Demo Cost | | | Demo Cost | Architectural Plans/Drawings |
| Effective Sale Price | | $298,000 | $381,000 | $595,000 | $210,000 | $354,900 | $434,000 |
| Square Feet | 30,000 | 6,719 | 10,000 | 15,000 | 4,783 | 10,000 | 10,000 |
| Acres | 0.689 | 0.154 | 0.230 | 0.344 | 0.110 | 0.230 | 0.230 |
| Corner | No | No | No | Yes | No | No | No |
| Flood Plain Description | 33% 500-Year | Not Within | Not Within | Not Within | Not Within | Not Within | Not Within |
| **Price per Square Foot** | | **$44.35** | **$38.10** | **$39.67** | **$43.91** | **$35.49** | **$43.40** |
| Property Rights | | Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| % Adjustment | | – | – | – | – | – | – |
| Financing Terms | | Cash to seller | Cash to seller | Cash to seller | Cash to seller | Cash to seller | Cash to seller |
| % Adjustment | | – | – | – | – | – | – |
| Conditions of Sale | | Arm's Length | Arm's Length | Arm's Length | Arm's Length | Current Contract | Listing |
| % Adjustment | | – | – | – | – | – | -10% |
| Market Conditions | 10/22/2019 | Apr-18 | Aug-18 | Sep-18 | Nov-18 | Oct-19 | Oct-19 |
| Annual % Adjustment | 3% | 5% | 4% | 3% | 3% | | |
| **Cumulative Adjusted Price** | | **$46.57** | **$39.62** | **$40.86** | **$45.22** | **$35.49** | **$39.06** |
| Location | | -20% | – | – | -20% | – | – |
| Access/Exposure | | – | – | – | – | – | – |
| Size | | 7.5% | 5.0% | 0.0% | 10.0% | 5.0% | 5.0% |
| Shape and Topography | | – | – | – | – | – | – |
| Corner | | – | – | – | – | – | – |
| Flood Plain | | – | – | – | – | – | – |
| Net $ Adjustment | | -$5.82 | $1.98 | $0.00 | -$4.52 | $1.77 | $1.95 |
| Net % Adjustment | | -12.5% | 5.0% | 0.0% | -10.0% | 5.0% | 5.0% |
| **Final Adjusted Price** | | **$40.75** | **$41.61** | **$40.86** | **$40.70** | **$37.26** | **$41.01** |
| Overall Adjustment | | -8.1% | 9.2% | 3.0% | -7.3% | | -5.5% |

| | |
|---|---|
| **Range of Adjusted Prices** | $37.26 - $41.61 |
| **Average** | $40.36 |
| **Indicated Value** | $40.00 |



## Land Value Conclusion

Prior to adjustment, the sales reflect a range of $35.49 - $44.35 per square foot. After adjustment, the range is narrowed to $37.26 - $41.61 per square foot. Sales 2, 3, 5, and 6 all have frontage on an active railroad track, as does the subject, and have an adjusted price range of $37.26 - $41.61 per square foot. We give greatest weight to these sales, tempered by Sale 4, which is in the same block as the subject. In our opinion, it would cost approximately $5,000 to raze the existing improvements, which we have considered in our analysis. After considering the above discussion, we arrive at a land value conclusion as follows:

| Land Value Conclusion | |
|---|---|
| Indicated Value per Square Foot | $40.00 |
| Subject Square Feet | 30,000 |
| Indicated Value | $1,200,000 |
| Rounded | $1,200,000 |

The listing broker for Sale 6, our current listing, indicated that she had received several offers at $40.00 per square foot, all of which were rejected by the seller, who owns this tract outright and is not in a hurry to sell.



## Conclusion of Value

As discussed previously, we use only the sales comparison approach in developing an opinion of value for the subject. The cost and income approaches are not applicable and are not used.

Based on the preceding valuation analysis and subject to the definitions, assumptions, and limiting conditions expressed in the report, our value opinion follows:

| Value Conclusion | | | |
|---|---|---|---|
| Appraisal Premise | Interest Appraised | Date of Value | Value Conclusion* |
| Market Value As Is | Fee Simple | October 22, 2019 | $1,200,000 |

*As of the effective date of this appraisal, the subject had delinquent property taxes in the amount of $82,144.64 due for the 2017 and 2018 taxes years, including penalties and interest.*

**Extraordinary Assumptions and Hypothetical Conditions**

The value conclusions are subject to the following extraordinary assumptions that may affect the assignment results. An extraordinary assumption is uncertain information accepted as fact. If the assumption is found to be false as of the effective date of the appraisal, we reserve the right to modify our value conclusions.

1. None

The value conclusions are based on the following hypothetical conditions that may affect the assignment results. A hypothetical condition is a condition contrary to known fact on the effective date of the appraisal but is supposed for the purpose of analysis.

1. None

## Exposure Time

Exposure time is the length of time the subject property would have been exposed for sale in the market had it sold on the effective valuation date at the concluded market value. Based on the concluded market value stated previously, it is our opinion that the probable exposure time is 12 months.

## Marketing Period

Marketing time is an estimate of the amount of time it might take to sell a property at the concluded market value immediately following the effective date of value. We estimate the subject's marketing period at 12 months.



# Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. **Flint Hindman** made a personal inspection of the property that is the subject of this report. **Todd Rotholz, MAI,** has not personally inspected the subject. **Edward Schulz, MAI SRA,** has not personally inspected the subject.

12. No one provided significant real property appraisal assistance to the person(s) signing this certification.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.



14. As of the date of this report, **Todd Rotholz, MAI**, and **Edward Schulz, MAI SRA,** have completed the continuing education program for Designated Members of the Appraisal Institute.

**Flint Hindman**
**Certified General Real Estate Appraiser**
**Texas** Certificate # **TX-1337729-G**
Telephone: **713-973-0212, ext. 15**
Email: **fhindman@irr.com**

**Todd Rotholz, MAI**
**Certified General Real Estate Appraiser**
**Texas** Certificate # **TX-1328257-G**
Telephone: **713-973-0212, ext. 12**
Email: **trotholz@irr.com**

**Edward Schulz, MAI SRA**
**Certified General Real Estate Appraiser**
**Texas** Certificate # **TX-1320142-G**
Telephone: **713-973-0212, ext. 11**
Email: **edschulz@irr.com**

# Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, except as otherwise noted in the report:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal



covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

7. No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9. The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report, but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic



conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Houston, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Houston is not a building or environmental inspector. Integra Houston does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the



appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.    Integra Realty Resources – Houston, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.    The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.    All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

28.    The appraisal is also subject to the following:



## Extraordinary Assumptions and Hypothetical Conditions

The value conclusions are subject to the following extraordinary assumptions that may affect the assignment results. An extraordinary assumption is uncertain information accepted as fact. If the assumption is found to be false as of the effective date of the appraisal, we reserve the right to modify our value conclusions.

1.  None

The value conclusions are based on the following hypothetical conditions that may affect the assignment results. A hypothetical condition is a condition contrary to known fact on the effective date of the appraisal but is supposed for the purpose of analysis.

1.  None



**Addendum A**

**Appraiser Qualifications**



# Flint Hindman

## Experience

Flint R. Hindman is Senior Analyst for Integra Realty Resources – Houston. He has been exclusively engaged in commercial real estate valuation and consultation since August 2003. He has a diverse range of experience in appraising most types of real estate including, but not limited to, vacant land, single and multi-tenant retail, single and multi-tenant industrial, flex, and manufacturing, and suburban office buildings, and a variety of special purpose properties.

## Licenses

Texas, Certified General Real Estate Appraiser, TX-1337729-G, Expires January 2020

**Integra Realty Resources**
**Houston**

9225 Katy Freeway
Suite 206
Houston, TX 77024

T 713-973-0212
F 713-973-2028

irr.com

**Texas Appraiser Licensing and Certification Board**
P.O. Box 12188 Austin, Texas 78711-2188
**Certified General Real Estate Appraiser**

Number:      **TX 1337729 G**

Issued:       **01/11/2018**          Expires:     **01/31/2020**

Appraiser:   **FLINT ROBERT HINDMAN**

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Texas Occupations Code, Chapter 1103, is authorized to use this title, Certified General Real Estate Appraiser.

Douglas E. Oldmixon
Commissioner



# Todd Rotholz, MAI

## Experience

Todd Andrew Rotholz is the Senior Managing Director for Integra Realty Resources, Houston, Texas. Mr. Rotholz has been engaged exclusively in the appraisal of real estate since February of 1993. The scope of his work includes the appraisal of all types of commercial, special-purpose, and residential real estate. Areas of expertise include testimony, eminent domain, appraisal review, highest and best use analysis, and consultation.

## Professional Activities & Affiliations

Appraisal Institute, Member (MAI)

## Licenses

Texas, Certified General Real Estate Appraiser, TX-1328257-G, Expires November 2020

## Education

Bachelor of Business Administration in International Business and Finance from the University of Texas – December of 1992

More than 250 Classroom hours of Appraisal Institute course work

More than 250 hours of other continuing education course work

**Integra Realty Resources**
Houston

9225 Katy Freeway
Suite 206
Houston, TX 77024

T 713-973-0212
F 713-973-2028

irr.com

### Texas Appraiser Licensing and Certification Board
P.O. Box 12188 Austin, Texas 78711-2188
**Certified General Real Estate Appraiser**

| | |
|---|---|
| Number: | **TX 1328257 G** |
| Issued: | **11/27/2018** |
| Expires: | **11/30/2020** |
| Appraiser: | **TODD ANDREW ROTHOLZ** |

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Texas Occupations Code, Chapter 1103, is authorized to use this title, Certified General Real Estate Appraiser.

Douglas E. Oldmixon
Commissioner

trotholz@irr.com  –  713-973-0212 x12

# Edward Schulz, MAI SRA

## Experience

Edward B. Schulz, MAI, SRA has been engaged exclusively in the appraisal of real estate since January 1971. The scope of this work includes the appraisal of commercial, industrial, special purpose, vacant land, and residential properties. He had also been employed as an acting consultant on numerous real estate transactions, and qualified as an expert witness, including matters of eminent domain.

## Professional Activities & Affiliations

Appraisal Institute, Member (MAI)
Appraisal Institute, Senior Residential Appraiser (SRA)

## Licenses

Texas, Certified General Real Estate Appraiser, TX-1320142-G, Expires March 2021

## Education

B.B.A. Degree – Huntington College, Montgomery, Alabama - June 1969; Prior attendance at University of Texas Business School - 1964-1966

## Qualified Before Courts & Administrative Bodies

Qualified as an expert witness in Federal Court, State District Courts, Harris County Court, Marriage and Family Law Court, Commissioner's hearings and arbitrations.

### Texas Appraiser Licensing and Certification Board
**P.O. Box 12188 Austin, Texas 78711-2188**
**Certified General Real Estate Appraiser**

| Number: | TX 1320142 G | | |
|---|---|---|---|
| Issued: | 03/28/2019 | Expires: | 03/31/2021 |
| Appraiser: | EDWARD B SCHULZ III | | |

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Texas Occupations Code, Chapter 1103, is authorized to use this title, Certified General Real Estate Appraiser.

Douglas E. Oldmixon
Commissioner

**Integra Realty Resources**
Houston

9225 Katy Freeway
Suite 206
Houston, TX 77024

T 713-973-0212
F 713-973-2028

irr.com



# About IRR

Integra Realty Resources, Inc. (IRR) provides world-class commercial real estate valuation, counseling, and advisory services. Routinely ranked among leading property valuation and consulting firms, we are now the largest independent firm in our industry in the United States, with local offices coast to coast and in the Caribbean.

IRR offices are led by MAI-designated Senior Managing Directors, industry leaders who have over 25 years, on average, of commercial real estate experience in their local markets. This experience, coupled with our understanding of how national trends affect the local markets, empowers our clients with the unique knowledge, access, and historical perspective they need to make the most informed decisions.

Many of the nation's top financial institutions, developers, corporations, law firms, and government agencies rely on our professional real estate opinions to best understand the value, use, and feasibility of real estate in their market.

*Local Expertise...Nationally!*

# irr.com



**Addendum B**

**Comparable Data**



# Land Sale Profile

## Location & Property Identification

| | |
|---|---|
| Property Name: | 0.154-Acres on Dart St |
| Sub-Property Type: | Residential |
| Address: | 0 Dart St. |
| City/State/Zip: | Houston, TX 77007 |
| County: | Harris |
| Submarket: | Allen Pky/Montrose |
| Market Orientation: | Urban |
| Property Location: | SL Dart St. across from Beachton St. |
| IRR Event ID: | 2288176 |



## Sale Information

| | |
|---|---|
| Sale Price: | $298,000 |
| Effective Sale Price: | $298,000 |
| Sale Date: | 04/11/2018 |
| Sale Status: | Closed |
| $/Acre(Gross): | $1,932,555 |
| $/Land SF(Gross): | $44.35 |
| $/Acre(Usable): | $1,932,555 |
| $/Land SF(Usable): | $44.35 |
| Grantor/Seller: | Sovrano Investments, LLC |
| Grantee/Buyer: | Good Bones Development, LLP |
| Assets Sold: | Real estate only |
| Property Rights: | Fee Simple |
| Financing: | Cash to seller |
| Document Type: | Warranty Deed |
| Recording No.: | RP-2018-231883 |
| Verified By: | Flint Hindman |
| Verification Date: | 11/01/2019 |
| Verification Type: | Confirmed-Seller Broker |

### Improvement and Site Data

| | |
|---|---|
| Legal/Tax/Parcel ID: | 140-246-001-0001 & -0002 / Lot 7 and a Portion of Lot 8, Block 476, W.R. Baker Addition, Harris County, Texas |

| | |
|---|---|
| Acres(Usable/Gross): | 0.15/0.15 |
| Land-SF(Usable/Gross): | 6,719/6,719 |
| Usable/Gross Ratio: | 1.00 |
| Topography: | Level |
| Corner Lot: | No |
| Frontage Desc.: | 78' Dart St |
| Zoning Desc.: | Not Applicable |
| Easements Desc.: | None Known |
| Environmental Desc.: | No Issues Noted |
| Flood Zone: | Not Within |
| Flood Zone Designation: | X |
| Comm. Panel No.: | 42810C0690N |
| Date: | 01/06/2017 |
| Utilities: | Water Public, Sewer |
| Utilities Desc.: | All Public |
| Source of Land Info.: | Public Records |

## Comments

This site was vacant at the time of sale.

## Location & Property Identification

| | |
|---|---|
| Property Name: | 0.230-Acres on Colorado St |
| Sub-Property Type: | Residential |
| Address: | 1517 Colorado St. |
| City/State/Zip: | Houston, TX 77007 |
| County: | Harris |
| Submarket: | Allen Pky/Montrose |
| Market Orientation: | Urban |
| Property Location: | Wraps SWC of Colorado St and Winter St |
| IRR Event ID: | 2287909 |



## Sale Information

| | |
|---|---|
| Sale Price: | $376,000 |
| Effective Sale Price: | $381,000 |
| Sale Date: | 08/20/2018 |
| Sale Status: | Closed |
| $/Acre(Gross): | $1,659,408 |
| $/Land SF(Gross): | $38.10 |
| $/Acre(Usable): | $1,659,408 |
| $/Land SF(Usable): | $38.10 |
| Grantor/Seller: | Baker Project, LLC and 1705 Winter St, LLC |
| Grantee/Buyer: | JPCM Ventures, LLC |
| Assets Sold: | Real estate only |
| Property Rights: | Fee Simple |
| Financing: | Cash to seller |
| Document Type: | Warranty Deed |
| Recording No.: | RP-2018-384410 |
| Verified By: | Flint Hindman |
| Verification Date: | 10/31/2019 |
| Verification Type: | Confirmed-Seller Broker |

| | |
|---|---|
| Legal/Tax/Parcel ID: | 005-119-000-0013, -0008, & -0014 / South 1/2 Lot 7, Lot 8, and East 1/2 Lot 9, Blo0ck 296, W.R. Baker Addition NSBB, Harris County, Texas |
| Acres(Usable/Gross): | 0.23/0.23 |
| Land-SF(Usable/Gross): | 10,000/10,000 |
| Usable/Gross Ratio: | 1.00 |
| Topography: | Level |
| Corner Lot: | No |
| Frontage Desc.: | 50' Colorado St 75' Winter St |
| Zoning Desc.: | Not Applicable |
| Easements Desc.: | None Known |
| Environmental Desc.: | No Issues Noted |
| Flood Zone: | Not Within |
| Flood Zone Designation: | X |
| Comm. Panel No.: | 48201C0670M |
| Date: | 06/09/2014 |
| Utilities: | Water Public, Sewer |
| Utilities Desc.: | All Public |
| Source of Land Info.: | Public Records |

## Sale Analysis

| | |
|---|---|
| Other Adj.: | $5,000 |
| Adjust. Comments: | Demo Cost |

## Improvement and Site Data

## Comments

We have accounted for $5,000 in demolition costs to raze the older SFR on this tract.

Colorado Street dead-ends at the railroad track at Winter Street. There is an 1,190 SF single-family residence on this tract, circa 1920, that does not contribute to value in our opinion.

irr.

# Land Sale Profile

## Location & Property Identification



| | |
|---|---|
| Property Name: | 0.344-Acres on Hickory St |
| Sub-Property Type: | Residential |
| Address: | 0 Hickory St. |
| City/State/Zip: | Houston, TX 77007 |
| County: | Harris |
| Submarket: | Allen Pky/Montrose |
| Market Orientation: | Urban |
| Property Location: | SWC Hickory St and Winter Street |
| IRR Event ID: | 2287933 |

## Sale Information

| | |
|---|---|
| Sale Price: | $595,000 |
| Effective Sale Price: | $595,000 |
| Sale Date: | 09/07/2018 |
| Sale Status: | Closed |
| $/Acre(Gross): | $1,727,642 |
| $/Land SF(Gross): | $39.67 |
| $/Acre(Usable): | $1,727,642 |
| $/Land SF(Usable): | $39.67 |
| Grantor/Seller: | David Law and Clayton Mitchell |
| Grantee/Buyer: | Dacasa Homes and Construction, LP |
| Assets Sold: | Real estate only |
| Property Rights: | Fee Simple |
| Financing: | Cash to seller |
| Document Type: | Warranty Deed |
| Recording No.: | RP-2018-426026 |
| Verified By: | Flint Hindman |
| Verification Date: | 10/31/2019 |
| Verification Type: | Confirmed-Seller Broker |

## Improvement and Site Data

| | |
|---|---|
| Legal/Tax/Parcel ID: | 136-084-001-0001 and -0002 thru -0010 / Reserve A and Lots 1-9 (inclusive), Block 1, Hickory Place, Harris County, Texas |
| Acres(Usable/Gross): | 0.34/0.34 |
| Land-SF(Usable/Gross): | 15,000/15,000 |
| Usable/Gross Ratio: | 1.00 |
| Topography: | Level |
| Corner Lot: | Yes |
| Frontage Desc.: | 100' Hickory St 150' Winter St |
| Zoning Desc.: | Not Applicable |
| Easements Desc.: | None Known |
| Environmental Desc.: | No Issues Noted |
| Flood Zone: | Not Within |
| Flood Zone Designation: | X |
| Comm. Panel No.: | 48201C0670M |
| Date: | 06/09/2014 |
| Utilities: | Water Public, Sewer |
| Utilities Desc.: | All Public |
| Source of Land Info.: | Public Records |

## Comments

This tract had already been subdivided for townhome development at the time of sale.
Hickory Street dead-ends at the railroad track at Winter Street. The site was vacant.



## Location & Property Identification

| | |
|---|---|
| Property Name: | 0.110-Acres on Bingham St |
| Sub-Property Type: | Residential |
| Address: | 1115 Bingham St. |
| City/State/Zip: | Houston, TX 77007 |
| County: | Harris |
| Submarket: | Allen Pky/Montrose |
| Market Orientation: | Urban |
| Property Location: | SL Bingham St, ±50' east of Holly St |
| IRR Event ID: | 2288164 |



## Sale Information

| | |
|---|---|
| Sale Price: | $210,000 |
| Effective Sale Price: | $210,000 |
| Sale Date: | 11/16/2018 |
| Listing Price: | $229,900 |
| Listing Date: | 02/13/2018 |
| Sale Status: | Closed |
| $/Acre(Gross): | $1,912,568 |
| $/Land SF(Gross): | $43.91 |
| $/Acre(Usable): | $1,912,568 |
| $/Land SF(Usable): | $43.91 |
| Grantor/Seller: | First Regal Properties, LLC |
| Grantee/Buyer: | James A. Philip and Karen S. Philip |
| Assets Sold: | Real estate only |
| Property Rights: | Fee Simple |
| Exposure Time: | 9 (months) |
| Financing: | Cash to seller |
| Document Type: | Warranty Deed |
| Recording No.: | RP-2018-523494 |
| Verified By: | Flint Hindman |
| Verification Date: | 11/01/2019 |
| Verification Type: | Confirmed-Seller Broker |

| | |
|---|---|
| Legal/Tax/Parcel ID: | 005-066-000-0008 / Lot 8, Block 241, W.R. Baker Addition NSBB, Harris County, Texas |
| Acres(Usable/Gross): | 0.11/0.11 |
| Land-SF(Usable/Gross): | 4,782/4,782 |
| Usable/Gross Ratio: | 1.00 |
| Topography: | Level |
| Corner Lot: | No |
| Frontage Desc.: | 50' Bingham St |
| Zoning Desc.: | Not Applicable |
| Easements Desc.: | None Known |
| Environmental Desc.: | No Issues Noted |
| Flood Zone: | Not Within |
| Flood Zone Designation: | X |
| Comm. Panel No.: | 48201C0690N |
| Date: | 01/06/2017 |
| Utilities: | Water Public, Sewer |
| Utilities Desc.: | All Public |
| Source of Land Info.: | Public Records |

## Comments

The seller purchased this tract in August 2013 for $211,500. This lot was vacant at the time of sale.

## Improvement and Site Data



# Land Sale Profile

## Location & Property Identification

| | |
|---|---|
| Property Name: | 0.230-Acres on Colorado St |
| Sub-Property Type: | Residential |
| Address: | 1517 Colorado St. |
| City/State/Zip: | Houston, TX 77007 |
| County: | Harris |
| Submarket: | Allen Pky/Montrose |
| Market Orientation: | Urban |
| Property Location: | Wraps SWC of Colorado St and Winter St |
| IRR Event ID: | 2288003 |



## Sale Information

| | |
|---|---|
| Sale Price: | $349,900 |
| Effective Sale Price: | $354,900 |
| Sale Date: | 10/21/2019 |
| Listing Price: | $349,900 |
| Listing Date: | 07/31/2019 |
| Sale Status: | In-Contract |
| $/Acre(Gross): | $1,545,732 |
| $/Land SF(Gross): | $35.49 |
| $/Acre(Usable): | $1,545,732 |
| $/Land SF(Usable): | $35.49 |
| Grantor/Seller: | JPCM Ventures, LLC |
| Grantee/Buyer: | Unknown |
| Assets Sold: | Real estate only |
| Property Rights: | Fee Simple |
| Exposure Time: | 3 (months) |
| Financing: | Cash to seller |
| Document Type: | Warranty Deed |
| Recording No.: | Unavailable |
| Verified By: | Flint Hindman |
| Verification Date: | 10/31/2019 |
| Confirmation Source: | Jamie Walton - Oakington Realty 832.922.0541 |
| Verification Type: | Confirmed-Seller Broker |

## Sale Analysis

| | |
|---|---|
| Other Adj.: | $5,000 |

**0.230-Acres on Colorado St**

| | |
|---|---|
| Adjust. Comments: | Demo Cost |

## Improvement and Site Data

| | |
|---|---|
| Legal/Tax/Parcel ID: | 005-119-000-0013, -0008, & -0014 / South 1/2 Lot 7, Lot 8, and East 1/2 Lot 9, Blo0ck 296, W.R. Baker Addition NSBB, Harris County, Texas |
| Acres(Usable/Gross): | 0.23/0.23 |
| Land-SF(Usable/Gross): | 10,000/10,000 |
| Usable/Gross Ratio: | 1.00 |
| Topography: | Level |
| Corner Lot: | No |
| Frontage Desc.: | 50' Colorado St 75' Winter St |
| Zoning Desc.: | Not Applicable |
| Easements Desc.: | None Known |
| Environmental Desc.: | No Issues Noted |
| Flood Zone: | Not Within |
| Flood Zone Designation: | X |
| Comm. Panel No.: | 48201C0670M |
| Date: | 06/09/2014 |
| Utilities: | Water Public, Sewer |
| Utilities Desc.: | All Public |
| Source of Land Info.: | Public Records |

## Comments

The seller purchased this tract for $37.60/SF on August 20, 2018 and is trying to unload the tract.



## Comments (Cont'd)

Colorado Street dead-ends at the railroad track at Winter
Street. There is an 1,190 SF single-family residence on this
tract, circa 1920, that does not contribute to value in our
opinion.



## Location & Property Identification

| | |
|---|---|
| Property Name: | 0.230-Acres on Hickory St |
| Sub-Property Type: | Residential |
| Address: | 0 Hickory St. |
| City/State/Zip: | Houston, TX 77007 |
| County: | Harris |
| Submarket: | Allen Pky/Montrose |
| Market Orientation: | Urban |
| Property Location: | Wraps the NEC of Hickory St and Winter St |
| IRR Event ID: | 2288052 |



| | |
|---|---|
| Legal/Tax/Parcel ID: | 135-592-001-0001, -0002 thru -0007, Townhomes on Hickory, Harris County, Texas |

## Sale Information

| | |
|---|---|
| Listing Price: | $465,000 |
| Effective Listing Price: | $434,000 |
| Listing Date: | 10/31/2019 |
| Sale Status: | Listing |
| $/Acre(Gross): | $1,890,244 |
| $/Land SF(Gross): | $43.40 |
| $/Acre(Usable): | $1,890,244 |
| $/Land SF(Usable): | $43.40 |
| Grantor/Seller: | ICI Construction, Inc. |
| Grantee/Buyer: | Unavailable |
| Assets Sold: | Real estate only |
| Property Rights: | Fee Simple |
| Financing: | Cash to seller |
| Document Type: | Warranty Deed |
| Recording No.: | Unavailable |
| Verified By: | Flint Hindman |
| Verification Date: | 10/31/2019 |
| Verification Type: | Confirmed-Seller Broker |

| | |
|---|---|
| Acres(Usable/Gross): | 0.23/0.23 |
| Land-SF(Usable/Gross): | 10,000/10,000 |
| Usable/Gross Ratio: | 1.00 |
| Topography: | Level |
| Corner Lot: | No |
| Frontage Desc.: | 50' Hickory St 50' Winter St |
| Zoning Desc.: | Not Applicable |
| Easements Desc.: | None Known |
| Environmental Desc.: | No Issues Noted |
| Flood Zone: | Not Within |
| Flood Zone Designation: | X |
| Comm. Panel No.: | 48201C0690N |
| Date: | 01/06/2017 |
| Utilities: | Water Public, Sewer |
| Utilities Desc.: | All Public |
| Source of Land Info.: | Public Records |

## Sale Analysis

| | |
|---|---|
| Other Adj.: | -$31,000 |
| Adjust. Comments: | Architectural Plans/Drawings |

## Improvement and Site Data

## Comments

The asking price of $465,000 includes Architectural Plans/Drawings. According to the selling broker, the plans/drawing were valued at $31,000, which we have deducted from the asking price.

Hickory Street dead-ends at the railroad track at Winter Street. The tract is vacant and platted for 6 townhomes.



**Addendum C**

**Delinquent Property Tax Statement**





**ANN HARRIS BENNETT**
**TAX ASSESSOR-COLLECTOR & VOTER REGISTRAR**
**P.O. BOX 3547**
**HOUSTON, TEXAS 77253-3547**
**TEL: 713-274-8000**

**EB EQUITYBUILD CAPITAL INC**
**1083 N COLLIER BLVD APT 132**
**MARCO ISLAND FL 34145-2539**

**DELINQUENT PROPERTY TAX STATEMENT**

| Web Statement |
|---|
| **Account Number** |
| **005-067-000-0001** |

### Delinquent Tax Details

| Year | Tax Units | Base Levy | Penalties & Interest | Collection Penalty | Total Due |
|---|---|---|---|---|---|
| 2017 | 1, 40, 41, 42, 43, 44, 48, 61 | $24,122.06 | $7,960.28 | $6,416.46 | $38,498.80 |
| 2018 | 1, 40, 41, 42, 43, 44, 48, 61 | $30,059.12 | $6,312.41 | $7,274.31 | $43,645.84 |

| Property Description |
|---|
| 1102 BINGHAM ST |
| LTS 1 & 8 THRU 12 BLK 242 |
| BAKER NSBB |

| Appraised Values | |
|---|---|
| Land - Market Value | 1,100,000 |
| Impr - Market Value | 87,900 |
| Total Market Value | 1,187,900 |
| Less Capped Mkt Value | 0 |
| Appraised Value | 1,187,900 |

| Exemptions/Deferrals |
|---|

**Total Due in October 2019 >>>**          **$82,144.64**

Jurisdictions Billed on This Statement

0001  Houston ISD      0040  Harris County      0041  Harris County Flood Control Dist      0042  Port of Houston Authority      0043  Harris
County Hospital Dist      0044  Harris County Dept. of Education      0048  Houston Community College System      0061  City of Houston

*IF YOU ARE 65 YEARS OF AGE OR OLDER OR ARE DISABLED AND THE PROPERTY DESCRIBED IN THIS DOCUMENT IS YOUR RESIDENCE HOMESTEAD, YOU SHOULD CONTACT THE APPRAISAL DISTRICT REGARDING ANY ENTITLEMENT YOU MAY HAVE TO A POSTPONEMENT IN THE PAYMENT OF THESE TAXES.*

IF THE PROPERTY DESCRIBED IN THIS DOCUMENT IS YOUR RESIDENCE HOMESTEAD, YOU SHOULD CONTACT THE
HARRIS COUNTY TAX OFFICE REGARDING A RIGHT YOU MAY HAVE TO ENTER INTO AN INSTALLMENT AGREEMENT
DIRECTLY WITH THE HARRIS COUNTY TAX OFFICE FOR THE PAYMENT OF THESE TAXES.

**THE TAXES ON THIS PROPERTY ARE DELINQUENT. THE PROPERTY IS SUBJECT
TO A LIEN FOR THE DELINQUENT TAXES. IF THE DELINQUENT TAXES ARE NOT
PAID, THE LIEN MAY BE FORECLOSED.**

Detach at the perforation and return this coupon with your payment. Keep top part for your records.

**PAYMENT COUPON**

**EB EQUITYBUILD CAPITAL INC**
**1083 N COLLIER BLVD APT 132**
**MARCO ISLAND FL 34145-2539**

Make check payable to:

**ANN HARRIS BENNETT**
**TAX ASSESSOR-COLLECTOR & VOTER**
**REGISTRAR**
**P.O. BOX 4622**
**HOUSTON, TEXAS 77210-4622**

| Account Number |
|---|
| **005-067-000-0001** |
| **Amount Enclosed** |
| $                          . |

**Web Statement - Date Printed: 10-18-2019**

IF YOU ARE 65 YEARS OF AGE OR OLDER OR
ARE DISABLED AND THE PROPERTY
DESCRIBED IN THIS DOCUMENT IS YOUR
RESIDENCE HOMESTEAD, YOU SHOULD
CONTACT THE APPRAISAL DISTRICT
REGARDING ANY ENTITLEMENT YOU MAY
HAVE TO A POSTPONEMENT IN THE
PAYMENT OF THESE TAXES

*If you are paying multiple
tax accounts with a single
check, please enclose all
of the coupons with your
payment to ensure proper
credit to each account*

005067000000017 1718 008214464 000000000 000000000 000000000

0.689-Acres on Bingham St.



**Addendum C**

**Engagement Letter**





Integra Realty Resources
Houston

9225 Katy Freeway
Suite 206
Houston, Texas 77024

T 713-973-0212
F 713-973-2028
www.irr.com

June 5, 2019

Mr. Kevin B. Duff, Federal Equity Receiver
Rachlis Duff Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605

Re: The appraisal of an effectively vacant tract of land located at 1102 Bingham,
Houston, TX 77007

Dear Mr. Duff,

Integra Realty Resources – Houston, subject to your authorization, will prepare an
appraisal report of the above referenced property. The purpose of the appraisal will be
to determine the current "As Is" market value of the property.

Our opinions will be strictly expressed and reported in compliance with the Uniform
Standards of Professional Appraisal Practice (USPAP), and the professional ethics and
standards of professional appraisal practice of The Appraisal Institute.

The fee for completion of the appraisal report will be *$1,500*, and the report will be
delivered within approximately *Three Weeks* of the date of your authorization. We
request payment prior commencement of this project.

Our fee specifically covers completion of the initial appraisal report. Any subsequent
consultations, updates, or expert testimony relating to this matter will be billed
separately at our standard hourly billing rates, which are as follows:

|  | *Hourly Rate* |
|---|---|
| Todd A. Rotholz: | $275.00 |
| Staff Appraiser: | $150.00 |
| Research Staff: | $85.00 |
| Administrative Staff: | $75.00 |

In order to engage the appraisal services of Integra - Houston, based on the terms and
conditions described above, we ask that you sign one copy of this letter and return it to
our office.



Integra Realty Resources          9225 Katy Freeway          T 713-973-0212
Houston                           Suite 206                  F 713-973-2028
                                  Houston, Texas 77024       www.irr.com

June 5, 2019
Mr. Kevin B. Duff, Federal Equity Receiver
Rachlis Duff Peel & Kaplan, LLC

We look forward to working with you on this assignment. Should you have any
questions regarding this matter, please feel free to contact me.

Yours truly,

Todd Rotholz, MAI

**AGREED AND ACCEPTED:**

By: _K—BDuff, Receiver_          Date: _10/15/2019_

**<u>APPRAISAL OF REAL PROPERTY</u>**

1102 Bingham Street,
Houston, Harris County, Texas

**<u>AS OF</u>**

October 18, 2019

**<u>PREPARED FOR</u>**

Ms. Justyna G. Rak
Paralegal
Rachlis Duff Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, Illinois 60605

**<u>PREPARED BY</u>**

Southwest Realty Consultants
9818 Whithorn
Suite B
Houston, Texas 77095

**Tab**

**C**

exhibitsticker.com



November 14, 2019

Ms. Justyna G. Rak
Paralegal
Rachlis Duff Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, Illinois 60605

Reference:     Appraisal of 30,000 square feet of effectively vacant land located at 1102
                        Bingham Street, Houston, Harris County, Texas.

Dear Ms. Rak:

At your request, we have completed an investigation and analysis for the purpose of estimating the market value of the subject property in fee simple estate, as of October 18, 2019. The appraisal states our opinion of market value, subject to various assumptions and limiting conditions set forth in the accompanying report. The physical inspection and analysis that form the basis of the report have been conducted by Steven H. Clegg, MAI and Lesa L. Azra.

The subject property is located at 1102 Bingham Street, Houston, Harris County, Texas. The subject consists of 0.6887 acres or 30,000 square feet of effectively vacant land. The site is irregular in configuration with 50 feet of frontage on Bingham Street. The subject property is located approximately one-quarter mile east of Houston Avenue. Just east (600') of the subject is the interchange of Interstate 45 and Interstate 10 as they merge together and split again near the Houston Central Business District (located immediately south of the subject). To access Interstate 10 and Interstate 45, it is necessary to travel west via Bingham Street to Houston Avenue. Continue northerly to Crockett Street a short distance then turning to the west to Sawyer Street then turning northerly to Interstate 10. The total distance to access the major thoroughfare is one and one-half miles. Interstate 10 at this juncture can be accessed to the east or west and Interstate 45 can be accessed by traveling a short distance easterly on Interstate 10 to Interstate 45 to the north or south. The site is currently improved with a single-family home that is in poor condition. These improvements do not represent the highest and best use of the site and in our opinion, add no contributory value due to its poor condition and high underlying land value. Therefore, the improvements are not included in our analysis and the subject is analyzed as effectively vacant land.

In valuing the subject, one of the three traditional approaches to value, the sales comparison approach, land only, is included. Recent land sales are included and analyzed to determine our opinion of the market value of the subject property in fee simple estate, as of October 18, 2019. At your request, we are providing you with a one approach, appraisal report which includes the pertinent data necessary to arrive at the final value conclusion.

The accompanying appraisal report conforms with our interpretation of the Code of Professional Ethics and Uniform Standards of Professional Appraisal Practice of the Appraisal Institute (USPAP). This appraisal has also been prepared in conformance with Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA), and subsequent updates, and the Office of the Controller of Currency.

We certify that to the best of our knowledge and belief, the statements of fact contained in this report and upon which the opinions herein are based are true and correct. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, unbiased professional analyses, opinions, and conclusions.

Based on an inspection of the subject property and an analysis of pertinent physical and economic factors, it is our opinion the "as is" market value of subject, in fee simple estate, as of October 18, 2019 is:

**$1,100,000**

We certify that we have no interest, present or proposed in the subject property, that the estimate herein has been reached after a careful study, investigation, analysis and interpretation of the pertinent data, and that our fee is in no way contingent upon the value conclusion.

Respectfully submitted,

Steven H. Clegg MAI                                          Lesa L. Azra
TX-1320497-G                                                  TX – 1336904-G
19-168

# SUMMARY OF SALIENT FACTS

Property Appraised:                        0.6887 acre tract or 30,000 square feet of effectively vacant land known as 1102 Bingham Street, Houston, Harris County, Texas.

Key Map Reference:                        493G

Purpose of the Appraisal:                 To estimate the market value of the subject properties, in fee simple estate.

Dates of Valuation:
   "As Is" Value                          October 18, 2019

Land Area:                                0.6887 acres or 30,000 square feet

Highest and Best Use:
  As Vacant:                             Residential development
  As Improved:                           No value is attributed to the improvements

Marketing Period:                         Within 12 months

Exposure Period:                          Within 12 months

Indicated Market Value:

| **Subject Property** | | |
|---|---|---|
| 30,000  SF @ | $37.00  per SF ……………… | $1,110,000 |
| | Less demolition costs……….. | <u>$10,000</u> |
| | | $1,100,000 |
| | Rounded to……………………… | $1,100,000 |

# TABLE OF CONTENTS

Page

Identification of Property ...........................................................................................................1

Legal Description ........................................................................................................................1

History of the Subject Property...................................................................................................1

Purpose, Date, and Use of the Appraisal ...................................................................................1

Marketing Time............................................................................................................................2

Exposure Time ............................................................................................................................2

Scope of the Appraisal ...............................................................................................................3

Competency Provision ................................................................................................................5

Definitions of Market Value and Interest Appraised...................................................................6

Neighborhood Description...........................................................................................................7

Site Description...........................................................................................................................21

Real Estate Taxes ……………………………………………………………………………30

Highest and Best Use ................................................................................................................ 31

Sales Comparison Approach – Land Only ................................................................................ 33

Addenda
-Certification
-Assumptions and Limiting Conditions
-Subject Photographs
-Vacant Land Sales
-Instructions to Appraiser

# IDENTIFICATION OF PROPERTY

The subject property includes 0.6887 acres or 30,000 square feet. The subject is known as 1102 Bingham Street and is located on the north line of Bingham Street, one-quarter mile east of Houston Avenue. Additionally, the subject is just west of the Interstate 45 and Interstate 10 interchange just outside and northwest of the Central Business District. The subject property is located in Key Map Reference Page 493G. The subject is located within the city limits of Houston, Harris County, Texas.

# LEGAL DESCRIPTION

The property is legally described as follows:

0.6887 acres or 30,000 square feet being Lots 1 and 8 thru 12, Block 242 of the Baker NSBB, Harris County, Texas.

# HISTORY OF THE SUBJECT PROPERTY

The subject is currently owned by EB EquityBuild Inc. (according to the title report provided) and has been under this ownership since March 2014. It is our understanding the subject property is currently included in bankruptcy proceedings. To our knowledge, there have been no other transactions involving the subject property within the last three years.

# PURPOSE, DATE, AND USE OF THE APPRAISAL

The purpose of this appraisal is to estimate the "as is" market value of the subject property, in fee simple estate, as of October 18, 2019. The effective date of the appraisal is October 18, 2019. The use of this report is to assist in determining the market value of the subject property for the purpose of bankruptcy proceedings for the intended user Rachlis Duff Peel & Kaplan, LLC. The report was written primarily during the period of November 1st through November 12th, 2019.

# MARKETING TIME

Marketing time is an estimate of the amount of time it might take to sell a property interest in real estate at the estimated market value level during the period immediately after the effective date of the appraisal. As indicated, the purpose of this appraisal is to estimate the "as-is" market value of the subject, known as 1102 Bingham Street, Houston, Harris County, Texas.

As evidenced by the numerous sales which have occurred within the past 18 months are included in our analysis, the neighborhoods surrounding the CBD are continuing stages of regentrification. Further indications of the revitalization are construction projects which are occurring in the neighborhood, of multiple townhome projects and residential development at the northeast corner of Sawyer and Sawyer Heights/Spring Street. Therefore, it is our opinion the subject would sell for an amount near the appraised value within twelve months.

# EXPOSURE PERIOD

Exposure time may be defined as follows: The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective estimate based upon an analysis of past events assuming a competitive and open market. Based on the comments above, it is our opinion the exposure period for the subject is estimated to be 12 months.

## SCOPE OF THE APPRAISAL

In determining the market value of the subject, it is necessary to analyze all factors which directly or indirectly affect the subject. This includes an analysis of the Houston area, the general neighborhood and the subject property. The accumulation of data provides the appraiser an insight to the highest and best use of the subject property. Once the highest and best use of the subject has been determined, it is necessary to research the area for comparable properties. The site is currently improved with a single-family home which appears to have been vacant for a long period of time. The home was constructed in 2002 and has a crawl space with the structure sitting on concrete blocks. The home is approximately 1,252 square feet and is in poor condition. The home has been stripped of all fixtures (lights, sinks, toilet, shower/bath, cabinets, etc.) Additionally, there appears to be a leak (see photos in addenda) and resulting mold on the ceiling. The structure includes a front porch. There are minimal secondary improvements on the property such as chain link fencing. These improvements do not represent the highest and best use of the site and in our opinion, add no contributory value due to the location of the structure, its poor condition and high underlying land value. Therefore, the improvements are not included in our analysis. Since the subject is essentially a vacant tract of land, sales of similar sized tracts and similar highest and best uses are included. Due to the number of recent vacant land sales with a similar highest and best use, we have determined the sales comparison approach – land only as being the most reliable approach to value.

Several resources are used to establish size and dimensions of the subject property. Some of these resources include a survey, a property plat, a metes and bounds description, and information from the applicable county appraisal district. A survey is also useful to determine the existence of pipelines, easements, or any other encumbrances that exist. In this case, only a title report was provided. We were told a survey was not available. We were not provided an environmental assessment for the subject. Our appraisal is contingent on the assumption that there are no other adverse easements on the subject property and assumes there are no hazardous materials on the subject site. MapPro (FEMA) and Harris County contour maps were utilized to determine the flood designation status of a subject property.

For many of the adjustment categories in the approaches discussed above, we have prepared tables in an attempt to quantify our % adjustments. These tables are intended for comparison

and information purposes only, and we are not implying that we have an "expertise" to that degree of accuracy or that this type of "proving of an adjustment" is common place. The fact is that seldom can adjustments be proven. In our opinion, the specific adjustments that we are applying tend to be more accurate than applying 'rounded percentages' (usually to the nearest 5%). Thus, if an actual adjustment was believed to be in the 12 to 13% range, then rounding to 10% or 15% would be less accurate. We prefer to apply more specific adjustments to each category and then apply any rounding factors to the selection of a final value.

**COMPETENCY PROVISION**

The appraisers of the property are Steven H. Clegg and Lesa L. Azra. Mr. Clegg presently holds the MAI designation awarded by the Appraisal Institute, and is certified as a general real estate appraiser by the State of Texas. The MAI designation and state certification is held by appraisers who are experienced in the valuation of commercial, industrial, residential, and other types or properties; and who advise clients on real estate investment decisions. Mr. Clegg is currently certified under the voluntary education program of both accreditations, which requires minimum classroom hours of approved real estate courses. Ms. Azra is also certified as a general real estate appraiser by the State of Texas. Mr. Clegg and Ms. Azra have completed numerous appraisal assignments on properties such as the subject, and have the experience and ability to complete this appraisal in a competent manner.

## MARKET VALUE

In accordance with the federal Financial Institution Reform, Recovery and Enforcement Act of 1989 (FIRREA) and effective August 24, 1990, the current definition of Market Value is:

Market Value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

(1)     Buyer and seller are typically motivated;

(2)     Both parties are well informed or well advised, and acting in what they consider their own best interests;

(3)     A reasonable time is allowed for exposure in the open market;

(4)     Payment is made in terms of cash in U.S. Dollars or in terms of financial arrangements comparable thereto; and

(5)     The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. (1)

## FEE SIMPLE ESTATE

An absolute fee; a fee without limitations to any particular class of heirs or restrictions, but subject to the limitations of eminent domain, escheat, police power, and taxation. It is an inheritable estate.

## REGIONAL AND CITY DATA

The regional and city data is retained in our files and is available upon request.

---

1 Office of the Comptroller of the Currency under 12 CFR, Part 34 Subpart C-Appraisals, 34-42 Definitions (f).



NEIGHBORHOOD MAP



## NEIGHBORHOOD DESCRIPTION

A neighborhood is defined in <u>The Dictionary of Real Estate Appraisal,</u> Fourth Edition, 2002, Page 193, by the Appraisal Institute, as follows:

"A group of complimentary land uses;
a congruous grouping of inhabitants, buildings, or business enterprises."

Neighborhoods may be devoted to such uses as residential, commercial, industrial, agricultural, cultural and civic activities, or a mixture of these uses. Analysis of the neighborhood in which a particular property is located in is important due to the fact that the various economic, social, political, and physical forces which affect that neighborhood, also directly influence the individual properties within it. An analysis of these various factors as they affect the value of the subject property is presented in the following discussion.

The neighborhood is bound by I-10 to the north, West Loop 610 to the west, IH-45/IH-10 to the east, and Westheimer to the south. The subject property is in the north central portion of this neighborhood. I-45 is the major north/south traffic carrier in the neighborhood. Other major north/south carriers include N. Main, Houston, Sawyer, Studemont, Yale/Waugh, Shepherd/Durham, and Westcott. I-10 is the major east/west traffic carrier in the subject

neighborhood. Other major east/west carriers include Washington, Memorial, Allen Parkway, San Felipe, and Westheimer.

Land use within the neighborhood is varied, and includes single-family and multi-family residential, commercial, retail and some light industrial. The area is heavily influenced by the Houston Central Business District which is currently experiencing a revitalization including a moderate amount of new construction. The Central Business District also contains a mix of residential properties primarily in the form of high-rise apartments and lofts, and the number of full time residents has moderately increased over the past several years. Properties within the Central Business District also differ significantly in age and condition, ranging from 100 years old marginally maintained, abandoned structures to well-maintained modern, high rise structures. A substantial amount of renovation has occurred in past years and continues in the downtown area. Many restaurants and entertainment establishments have opened in the northeast portion of the downtown area. All the previously mentioned improvements to the downtown area are influencing similar changes in the subject neighborhood.

The subject neighborhood had received a modest to high amount of new, higher end multi-family construction in recent years with older complexes being demolished. The high land values in the area dictate that residential development be priced in the upper end of values for the city.

The employment base of the neighborhood is regarded as excellent. Major employment centers include downtown Houston, the Texas Medical Center, Greenway Plaza, and the Galleria area, all of which are in proximity of the subject neighborhood.

Adequate shopping facilities are available within close proximity of the subject neighborhood. There are no regional malls in the immediate area; however, there are several community and neighborhood shopping centers located along the primary traffic carriers.

Medical facilities in the immediate area are also considered adequate. St. Joseph Hospital is located in the south portion of the Central Business District. Within close proximity of the subject neighborhood is the world-renowned Texas Medical Center. The Texas Medical Center is located approximately 5 miles southeast of the subject neighborhood. The Medical Center is comprised of 39 separate institutions which are engaged in not-for-profit medical and health related activities. The Texas Medical Center contains more than 100 permanent buildings

encompassing an area of more than 675 acres. Among the member institutions and research centers are many of the nation's leading hospitals, academic institutions and research centers. International acclaim has come to the Texas Medical Center for its achievements in the treatment of diseases affecting the kidney, liver, lungs, eyes and circulatory systems, as well as in the development of prostheses for joints and limbs. The Texas Medical Center is Houston's largest employer. The center employs more than 52,000 full and part-time persons in addition to over 9,200 volunteer workers. Each year the center sees approximately 4.5 million outpatients. In addition, the center has about 6,300 beds that serve more than 185,000 inpatients. The center's physicians see more than 15,000 international patients in a typical year.

The neighborhood is located within the Houston Independent School District (the largest school district in Texas) which does not have as good a reputation as some surrounding districts. The total enrollment within the district is approximately 209,712 students and includes 280 schools. Negative influences, such as marginal educational facilities and achievements, typically have a negative effect on property values. There are several very well-respected private schools within close proximity to the subject neighborhood. The upper income families in the area use these private schools rather than the public schools. The area is adequately served by the Houston Police Department and the Houston Fire Department.

In summary, the subject neighborhood enjoys a close-in location with excellent access to most of Houston's major work centers. Additionally, the neighborhood encompasses or is in close proximity to recreational facilities, both neighborhood and major retail shopping areas, educational institutions, medical complexes and doctor's offices, churches of most all denominations and cultural centers. The Memorial Park and Golf Course bound the western portion of our neighborhood and is a major recreational facility for all surrounding neighborhoods. Cultural centers near our subject include the Wortham Center, Jones Hall and the Alley Theater, just to name a few. The proximity and conveniences of our neighborhood create a favorable living environment for those who desire the benefits of inner city living. Demand in the area for multi-family residential housing remains strong for these reasons. The limited quantity of vacant land in the subject neighborhood is currently causing many older developments to be purchased for their land value only, with existing improvements being slated for demolition. In the north portion of the neighborhood, along Washington Avenue, several older warehouse

facilities have been demolished or converted to apartments or condominiums. Additionally, a moderate amount of new townhome/condominium development occurred in both the east and the west portion of the neighborhood. Due to the subject neighborhood's central location and strong residential base, the area should remain a popular commercial, retail and residential destination.

Please refer to the demographic studies provided below. These include a current and forecasted study within 1 and 3 mile radius.









November 04, 2019

 **Demographic and Income Profile**

1102 Bingham St, Houston, Texas, 77007
Ring: 1 mile radius

Prepared by Esri
Latitude: 29.27161
Longitude: -95.36813

| Summary | Census 2010 | 2019 | 2024 |
|---|---|---|---|
| Population | 21,708 | 26,490 | 28,469 |
| Households | 4,616 | 6,409 | 7,336 |
| Families | 2,191 | 2,885 | 3,273 |
| Average Household Size | 2.36 | 2.28 | 2.26 |
| Owner Occupied Housing Units | 1,871 | 2,545 | 2,878 |
| Renter Occupied Housing Units | 2,745 | 3,864 | 4,458 |
| Median Age | 32.8 | 33.9 | 34.3 |

| Trends: 2019 - 2024 Annual Rate | Area | State | National |
|---|---|---|---|
| Population | 1.45% | 1.59% | 0.77% |
| Households | 2.74% | 1.55% | 0.75% |
| Families | 2.56% | 1.53% | 0.68% |
| Owner HHs | 2.49% | 1.63% | 0.92% |
| Median Household Income | 3.75% | 2.50% | 2.70% |

| | 2019 | | 2024 | |
|---|---|---|---|---|
| Households by Income | Number | Percent | Number | Percent |
| <$15,000 | 906 | 14.1% | 824 | 11.2% |
| $15,000 - $24,999 | 728 | 11.4% | 709 | 9.7% |
| $25,000 - $34,999 | 474 | 7.4% | 495 | 6.7% |
| $35,000 - $49,999 | 598 | 9.3% | 623 | 8.5% |
| $50,000 - $74,999 | 910 | 14.2% | 1,048 | 14.3% |
| $75,000 - $99,999 | 721 | 11.2% | 845 | 11.5% |
| $100,000 - $149,999 | 758 | 11.8% | 1,026 | 14.0% |
| $150,000 - $199,999 | 481 | 7.5% | 678 | 9.2% |
| $200,000+ | 833 | 13.0% | 1,089 | 14.8% |
| | | | | |
| Median Household Income | $61,553 | | $74,004 | |
| Average Household Income | $100,706 | | $115,798 | |
| Per Capita Income | $30,622 | | $36,239 | |

| | Census 2010 | | 2019 | | 2024 | |
|---|---|---|---|---|---|---|
| Population by Age | Number | Percent | Number | Percent | Number | Percent |
| 0 - 4 | 737 | 3.4% | 831 | 3.1% | 929 | 3.3% |
| 5 - 9 | 658 | 3.0% | 792 | 3.0% | 832 | 2.9% |
| 10 - 14 | 556 | 2.6% | 761 | 2.9% | 791 | 2.8% |
| 15 - 19 | 1,509 | 7.0% | 1,764 | 6.7% | 1,825 | 6.4% |
| 20 - 24 | 2,836 | 13.1% | 3,213 | 12.1% | 3,452 | 12.1% |
| 25 - 34 | 5,692 | 26.2% | 6,520 | 24.6% | 6,856 | 24.1% |
| 35 - 44 | 3,898 | 18.0% | 4,742 | 17.9% | 4,990 | 17.5% |
| 45 - 54 | 3,159 | 14.6% | 3,690 | 13.9% | 3,866 | 13.6% |
| 55 - 64 | 1,686 | 7.8% | 2,296 | 8.7% | 2,419 | 8.5% |
| 65 - 74 | 595 | 2.7% | 1,251 | 4.7% | 1,612 | 5.7% |
| 75 - 84 | 285 | 1.3% | 456 | 1.7% | 685 | 2.4% |
| 85+ | 99 | 0.5% | 174 | 0.7% | 211 | 0.7% |

**Data Note:** Income is expressed in current dollars.

**Source:** U.S. Census Bureau, Census 2010 Summary File 1. Esri forecasts for 2019 and 2024.

November 04, 2019

©2019 Esri

Page 1 of 4



## Demographic and Income Profile

1102 Bingham St, Houston, Texas, 77007
Ring: 1 mile radius

Prepared by Esri
Latitude: 29.77161
Longitude: -95.36813



Trends 2019-2024



Population by Age



2019 Household Income

**Source:** U.S. Census Bureau, Census 2010 Summary File 1. Esri forecasts for 2019 and 2024.

November 04, 2019



## Graphic Profile

1102 Bingham St, Houston, Texas, 77007
Ring: 1 mile radius

Prepared by Esri
Latitude: 29.77161
Longitude: -95.36813

### 2019 Population by Age



| | |
|---|---|
| ■ | <5 |
| ■ | 5-19 |
| ■ | 20-24 |
| ■ | 25-34 |
| ■ | 35-44 |
| ■ | 45-54 |
| ■ | 55-64 |
| ■ | 65+ |





### 2019-2024 Annual Growth Rate



### Household Income



**Source:** U.S. Census Bureau, Census 2010 Summary File 1. Esri forecasts for 2019 and 2024.

November 04, 2019

©2019 Esri

Page 1 of 2



## Demographic and Income Profile

1102 Bingham St, Houston, Texas, 77007
Ring: 3 mile radius

Prepared by Esri
Latitude: 29.77161
Longitude: -95.39412

| Summary | Census 2010 | 2019 | 2024 |
|---|---|---|---|
| Population | 159,605 | 196,751 | 216,586 |
| Households | 66,874 | 85,750 | 95,818 |
| Families | 29,390 | 35,853 | 39,478 |
| Average Household Size | 2.15 | 2.09 | 2.07 |
| Owner Occupied Housing Units | 28,691 | 33,944 | 36,727 |
| Renter Occupied Housing Units | 38,183 | 51,807 | 59,091 |
| Median Age | 34.3 | 35.7 | 35.8 |

| Trends: 2019 - 2024 Annual Rate | Area | State | National |
|---|---|---|---|
| Population | 1.94% | 1.59% | 0.77% |
| Households | 2.25% | 1.55% | 0.75% |
| Families | 1.94% | 1.53% | 0.68% |
| Owner HHs | 1.59% | 1.63% | 0.92% |
| Median Household Income | 3.33% | 2.50% | 2.70% |

| Households by Income | 2019 | | 2024 | |
|---|---|---|---|---|
| | Number | Percent | Number | Percent |
| <$15,000 | 11,835 | 13.8% | 10,661 | 11.1% |
| $15,000 - $24,999 | 7,167 | 8.4% | 6,679 | 7.0% |
| $25,000 - $34,999 | 6,577 | 7.7% | 6,339 | 6.6% |
| $35,000 - $49,999 | 7,991 | 9.3% | 8,092 | 8.4% |
| $50,000 - $74,999 | 12,086 | 14.1% | 13,468 | 14.1% |
| $75,000 - $99,999 | 9,851 | 11.5% | 11,443 | 11.9% |
| $100,000 - $149,999 | 13,240 | 15.4% | 16,972 | 17.7% |
| $150,000 - $199,999 | 6,428 | 7.5% | 8,873 | 9.3% |
| $200,000+ | 10,576 | 12.3% | 13,291 | 13.9% |
| | | | | |
| Median Household Income | $67,647 | | $79,704 | |
| Average Household Income | $103,807 | | $118,226 | |
| Per Capita Income | $46,122 | | $53,119 | |

| Population by Age | Census 2010 | | 2019 | | 2024 | |
|---|---|---|---|---|---|---|
| | Number | Percent | Number | Percent | Number | Percent |
| 0 - 4 | 9,455 | 5.9% | 10,270 | 5.2% | 11,441 | 5.3% |
| 5 - 9 | 7,521 | 4.7% | 9,158 | 4.7% | 9,581 | 4.4% |
| 10 - 14 | 6,428 | 4.0% | 8,357 | 4.2% | 8,752 | 4.0% |
| 15 - 19 | 8,011 | 5.0% | 9,006 | 4.6% | 9,686 | 4.5% |
| 20 - 24 | 13,602 | 8.5% | 15,436 | 7.8% | 17,636 | 8.1% |
| 25 - 34 | 37,317 | 23.4% | 43,581 | 22.2% | 48,175 | 22.2% |
| 35 - 44 | 25,293 | 15.8% | 31,880 | 16.2% | 34,511 | 15.9% |
| 45 - 54 | 22,707 | 14.2% | 25,228 | 12.8% | 26,694 | 12.3% |
| 55 - 64 | 16,725 | 10.5% | 22,351 | 11.4% | 22,876 | 10.6% |
| 65 - 74 | 7,271 | 4.6% | 13,885 | 7.1% | 17,090 | 7.9% |
| 75 - 84 | 3,778 | 2.4% | 5,484 | 2.8% | 7,735 | 3.6% |
| 85+ | 1,494 | 0.9% | 2,113 | 1.1% | 2,410 | 1.1% |

**Data Note:** Income is expressed in current dollars.

**Source:** U.S. Census Bureau, Census 2010 Summary File 1. Esri forecasts for 2019 and 2024.

November 04, 2019

©2019 Esri

Page 3 of 4



# Demographic and Income Profile

1102 Bingham St, Houston, Texas, 77007
Ring: 3 mile radius

Prepared by Esri
Latitude: 29.77161
Longitude: -95.38813





### 2019 Household Income



**Source:** U.S. Census Bureau, Census 2010 Summary File 1. Esri forecasts for 2019 and 2024.

November 04, 2019










**Average Daily Traffic Volume**
- ▲ Up to 6,000 vehicles per day
- ▲ 6,001 - 15,000
- ▲ 15,001 - 30,000
- ▲ 30,001 - 50,000
- ▲ 50,001 - 100,000
- ▲ More than 100,000 per day

**Source:** ©2019 Kalibrate Technologies (Q2 2019).

November 04, 2019

©2019 Esri

Page 1 of 1





Average Daily Traffic Volume
- ▲ Up to 6,000 vehicles per day
- ▲ 6,001 - 15,000
- ▲ 15,001 - 30,000
- ▲ 30,001 - 50,000
- ▲ 50,001 - 100,000
- ▲ More than 100,000 per day





Source: ©2019 Kalibrate Technologies (Q2 2019).

November 04, 2019

©2019 Esri

Page 1 of 1



LOCATION MAP

**1102 BINGHAM (HCAD)**



**ADDITIONAL AERIAL**



## SITE DESCRIPTION

**GENERAL**

The subject has a physical address of 1102 Bingham Street and is located on the north line of Bingham Street, one-quarter mile east of Houston Avenue. Furthermore, the site is located approximately 600 feet west of the Interstate 10 and Interstate 45 interchange just outside and north of the CBD. The subject property contains 0.6887 acres or 30,000 square feet of land and is irregular in configuration (see above).

**DIMENSIONS AND SHAPE OF SITE**

The subject is an interior tract with an irregular configuration and 50 feet of frontage on Bingham Street. Please refer to the plat from HCAD at the beginning of this section for additional details.

**TOPOGRAPHY AND DRAINAGE**

The site is level and appears to have adequate drainage. According to the flood plain maps (Panel 48201C0690N, dated June 6, 2017) and the Harris County contour maps, the subject property lies within the 100 Yr. flood plain (1%), 500 Yr. flood plain (35%) and outside of a flood hazard area (64%). The aforementioned percentages of flood hazard areas are our estimates only. The Base Flood Elevation is 36.67' and elevations on the site range from 37' to 46'. Please refer to the flood plain map included at the end of this section.

**UTILITIES AND SERVICES**

The subject site has access to public water and sewer through the City of Houston. The sites have access to all public utilities including electricity and telephone service from various reliable vendors and natural gas from Reliant/Entex. These services appear to be adequate.

**ACCESS**

The subject property is located along Bingham Street, a secondary/neighborhood road. The subject property is located approximately one-quarter mile east of Houston Avenue. Approximately 600 feet east of the subject is the interchange of Interstate 45 and Interstate 10 as they merge together and split again near the Houston Central Business District. To access Interstate 10 and Interstate 45, it is necessary to travel west via Bingham Street to Houston Avenue. Continue northerly to Crockett Street a short distance then turning to the west to Sawyer Street then turning northerly to Interstate 10. The total distance to access the major thoroughfare is one and one-half miles. Interstate 10 at this juncture can be accessed to the east or west and Interstate 45 can be accessed by traveling a short distance easterly on Interstate 10 to Interstate 45 to the north or south. Additionally, the subject is approximately one mile north of the CBD which can be accessed via Bingham Street to Houston Avenue traveling southerly to Washington Avenue. Then continuing easterly to Preston Street and into the CBD.

## MANMADE IMPROVEMENTS

The site is currently improved with one single-family home that is in poor condition. Furthermore, the structure is positioned on the portion of the site that fronts Bingham and essentially prevents access to the back portion of the tract for further development. In our opinion, the structure does not represent the highest and best use of the site and thus, has no contributory value due to the high underlying land value, poor condition and its current location. Therefore, the improvements are not included in our analysis.

## RESTRICTIONS AND EASEMENTS

The subject property is located in Harris County and within the City of Houston which does not impose zoning restrictions. Therefore, the use of the site is not restricted. We are unaware of any special ordinances or restrictions which prohibit specific uses on the site. The site being in the City of Houston is subject to the terms, conditions, provisions and stipulations of the City of Houston ordinances. The appraisers were provided a title policy. The document does not specify any easements. It is assumed that typical utility easements extend along the subject's boundaries. To our knowledge, there are no other easements or encroachments which hinder development of the site. Our appraisal is contingent on the assumption that there are no adverse easements on the subject property.

## HAZARDS AND NUISANCES

There are no known hazards on the subject sites. We were not provided an environmental assessment of the subject property. We have included (at the conclusion of this section) a hazards map. The map indicates 75 potential hazardous sites within the radii formats established by the American Society for Testing Materials from the subject property. The appraised value will be based on the premise that there are no detrimental influences. We are not experts in detecting hazardous wastes or contaminants and thus, encourage the user of this report to utilize the proper services to determine the environmental status of the subject property.

## UNIT OF COMPARISON AND MARKET CONDITION

Due to the lack of zoning, virtually all vacant land similar in size and on primary thoroughfares could be market competition. The predominant unit of comparison in the sale of land is expressed on a per square foot basis. This unit of comparison is predominant due to the lack of restrictions on land use.

## SURROUNDING LAND USES

The subject is bound on the south by Bingham Street and across the roadway is older single-family homes and recently constructed numerous multi-level townhomes (2014). To the north, the subject is bound by an active railroad track followed by older single-family homes and numerous, recently constructed multi-level townhomes (2012 to 2017). To our knowledge, this area is considered a "quite zone", no train horns allowed. To the east, the subject is bound by older single-family homes in poor condition followed by the Interstate 10 & 45 interchange (two major thoroughfares). To the west are mostly older single-family homes and with two new multi-level townhomes constructed in approximately 2014.

The general area is approximately 90-95% developed and because of its proximity to the Houston CBD is considered a positive trait. However, the proximity to the railroad and major thoroughfare typically are negative traits; although construction of multi-level, single-family townhomes continues on similar tracts in the surrounding neighborhood. In the immediate vicinity of the subject, the quality of existing improvements is mixed from well below average or poor to excellent. Development in the wider neighborhood is mostly high-end town home sites with retail and commercial development along the primary thoroughfares.

## CONCLUSION AND ANALYSIS

The subject property is a 0.6887 acre or 30,000 square foot tract located on the north line of Bingham Street, one-quarter mile east of Houston Avenue. The site has a limited amount of frontage being 50 feet on Bingham Street and is an interior tract with an irregular configuration. The subject is bound on the north by a railroad tract and to the east approximately 600 feet is the Interstate 10 and 45 interchange. The major thoroughfares can be accessed by traveling approximately one and on-half mile to the north to Interstate 10. Interstate 10 allows access to Interstate 45 by traveling a short distance to the east. Additionally, the subject is located approximately one mile north of the Houston CBD. Access to the major thoroughfares and proximity to Houston CBD are positive traits. However, the proximity (600 feet to the east) of the major thoroughfares and adjacency of the railroad track are negative traits. Public water and sewer are available on the site. The subject property lies within the 100 Yr. flood plain (1%), 500 Yr. flood plain (35%) and outside of a flood hazard area (64%). The property is located within a "neighborhood in transition", with older improvements being demolished and new

construction taking place. Considering the population growth of Houston, the transition of the neighborhood is expected to continue. The subject property's location, size, configuration, access and surrounding improvements make it suitable for a residential use.



FLOOD MAP

Flood Zone Information

FEMA Map No. 48201C0690N

FEMA Zone X500

Effective Date 01/06/2017

- 100-Year
- 100-Year Floodway
- 500-Year
- Outside 500-Year

**CAUTION:** Subject Property is within 250 ft. of 100 yr. Flood Zone. FEMA "Good Faith Standard" requires additional research to make actual flood zone determination.

0    0.1    0.2
Miles

**CAUTION:** The location of flood hazard areas shown on this map are approximate only. Flood hazard boundaries may change from time to time. A property in the general vicinity of a flood hazard area should be evaluated by a civil engineer or other appropriate specialist prior to purchase or investment.





**HAZARDS MAP**

# REAL ESTATE TAXES

The subject property is located in the following tax jurisdictions: Harris County, Houston I.S.D., Houston Community College and the City of Houston. Harris County Appraisal District has the subject property under account number 005-067-000-0001, and the assessed value under this account number for 2019 is $1,140,946 of which $117,196 is for the improvements. Thus, the land is valued at $1,023,750 or $34.13 per square foot. The following table summarizes the tax rates for 2019, along with the tax liability of each taxing authority based on a $1,023,750 value.

The taxing authorities are as follows:

| Taxing Authority | 2019 Tax Rate | 2019 Taxable Value | Estimate of Taxes |
|------------------|---------------|--------------------|--------------------|
| HOUSTON ISD | 1.136700 | $1,023,750 | $11,637 |
| HARRIS COUNTY | 0.407130 | $1,023,750 | $4,168 |
| HARRIS CO FLOOD CNTRL | 0.027920 | $1,023,750 | $286 |
| PORT OF HOUSTON AUTHY | 0.010740 | $1,023,750 | $110 |
| HARRIS CO HOSP DIST | 0.165910 | $1,023,750 | $1,699 |
| HARRIS CO EDUC DEPT | 0.005000 | $1,023,750 | $51 |
| HOUSTON COMMUNITY COLLEGE | 0.100263 | $1,023,750 | $1,026 |
| CITY OF HOUSTON | 0.567920 | $1,023,750 | $5,814 |
| Total | 2.421583 | | $24,791 |

The subject's projected tax liability is calculated as follows:

| Assessed Value | | | | Indicated Multiplier |
|----------------|---|-----|---|----------------------|
| $1,023,750 | ÷ | 100 | = | $10,238 |

| Multiplier | | 2019 Tax Rate | | Tax Liability |
|------------|---|---------------|---|---------------|
| $10,238 | x | 2.421583 | = | $24,791 |

Any increase in the assessed value will result in a higher tax liability.

# HIGHEST AND BEST USE

According to the twelfth edition of <u>The Appraisal of Real Estate</u>, a publication of the Appraisal Institute, highest and best use is defined as:

> The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability.

With these factors in mind, it is necessary to examine and analyze all data which may affect the subject's highest and best use. This analysis is critical due to the fact that a misinterpretation of data pertaining to the subject's highest and best use may have a misleading effect on the final estimate of value.

The definitions of highest and best use indicate that there are two considerations of highest and best use. The first is the highest and best use of the land, as though vacant, and the second is the highest and best use of the land, as improved.

## LEGALLY PERMISSIBLE

The subject is located within the city of Houston which at present does not have zoning laws which restrict the use of property within its boundaries. We are unaware of any deed restrictions that affect the subject site.

## PHYSICALLY POSSIBLE

The subject contains a land area of 0.6887 acres or 30,000 square feet. The subject is located on the north line of Bingham Street, one-quarter mile east of Houston Avenue. The property has an irregular configuration, and has 50 feet of road frontage along the north line of Bingham Street. The size, shape, and location of the property are conducive of a residential use.

## FINANCIALLY FEASIBLE

The site is in a desirable location considering its proximity to the Houston CBD. The demographic statistics show a population as of 2019 of 196,751 within a 3-mile radius which is an approximate 23% increase since 2010, and the prediction of growth is an approximate 10% increase to 216,586 by 2024. Considering the population growth projected, a residential development is financially feasible.

**HIGHEST AND BEST USE - AS VACANT**

After inspecting the subject site and after a study of the neighborhood, the region and present market trends, it is our opinion the highest and best use of the subject site, as vacant, is for a residential use such as multiple townhomes.

**HIGHEST AND BEST USE - AS IMPROVED**

The subject property is improved with a single-family home that has been vacant for some time and all of the fixtures have been removed (lights, toilets, sinks, cabinets, appliances, etc.) Furthermore, the single-family home is positioned directly on the portion of the site that fronts Bingham thus, preventing access to the back portion and the majority of the tract. Considering the high underlying land value and the position of the home, these improvements do not represent the highest and best use of the subject property and should be razed for future townhome development.

## SALES COMPARISON APPROACH – LAND ONLY

The sales comparison approach is a method of estimating the value of a property by comparing it to similar properties which have recently sold. The reliability of this approach is strongly dependent on the comparability of these sales to the subject property. Additionally, properties which are currently for sale can be used to determine the upper range of value for a property. This comparison therefore, relies heavily on the principle of substitution which states that the typical purchaser will pay no more for a particular property than he would pay for a similar substitute which possesses the same benefits of ownership.

Rarely, are two properties ever exactly alike, therefore, adjustments are made between the comparable and the subject, with the subject being the standard, and an adjustment, if necessary, being applied to the comparable. When comparing vacant land, typically adjustments are made for conditions of sale, market conditions, location, and miscellaneous items. These various items are explained in detail in this section.

The concept involved in this approach relies on the premise that a potential purchaser has searched the market, inspected numerous properties, determined the best available property for the lowest price, and then acted on that decision. His actions reflect factors, in this case, a per square foot multiplier which can then be used as a common unit of comparison when analyzing other properties.

The factors extracted from each sale are then analyzed and, if necessary, adjusted. The appraiser determines the strengths and weaknesses of each comparable, and by using proper judgment, arrives at a value conclusion for the subject. We have confirmed several land sales that were sold within the past 18 months.

The following is a brief summary of the vacant land sales used in this analysis.



LAND SALES MAP

**Summary of Vacant Land Sales**

| Sale No. | Location | Date | Size/Acres | Size/SF | Sales Price/SF |
|----------|----------|------|------------|---------|----------------|
| 1 | North line of Edwards Street, just east of Holly Street (1106 Edwards) | Oct-19 | 0.115 | 5,000 | $49.00 |
| 2 | East line of Holly Streeet and bound on the north by a RR track | Apr-19 | 0.115 | 5,000 | $35.00 |
| 3 | North line of Summer Street, approximately 50 feet east of Holly Street (1116 Summer Street) | Dec-18 | 0.115 | 5,000 | $40.00 |
| 4 | West line of Hickory Street and bound by a RR track to the north | Sep-18 | 0.344 | 15,000 | $39.67 |
| 5 | South line of Dart Street at Beachton Street (1101 and 1017 Dart Street) | Apr-18 | 0.154 | 6,719 | $44.35 |
| Listing | East line of Hickory Street and adjacent to the north of a RR track (1612 Hickory Street) | N/A | 0.230 | 10,000 | $46.50 |
| Subject | North line of Bingham Street, one quarter mile east of Houston Avenue | | 0.6887 | 30,000 | |

The above sales occurred between April 2018 and October 2019 and range in size from 0.1150 acre/5,000 square feet to 0.3440 acre/15,000 square feet. The prices of these sales range from $35.00 per square foot to $49.00 per square foot. We have also included a Listing within the subject neighborhood that is similar to the subject property in regard to its adjacency to a railroad track. The listing is for 0.2296 acre/10,000 square feet and the asking price is $46.50 per square foot.

The basic adjustment categories are explained as follows:

**REAL PROPERTY RIGHTS**

Real property rights conveyed is the first adjustment because the appraisal of the subject property rights can only be compared to similar property rights. All the comparables are like the subject regarding property rights. Therefore, no adjustment for property rights is required.

**FINANCING**

The first adjustment to be considered is the financing involved in a sale. According to the Appraisal of Real Estate, 12th Edition, the cost or availability of financing helps to determine the

demand for, as well as the values of real estate. Due to the lack of available financing, owners willing to finance real estate can demand a higher sales price. All of the sales included were purchased for cash or cash equivalent terms; therefore, no adjustments are required.

## CONDITIONS OF SALE

When the conditions of a sale are atypical, the result may be a price that is higher or lower than that of a normal market transaction. The comparable sales are considered to be arms-length market transactions; therefore, no adjustments for conditions of sale are necessary. We have also included a listing within the immediate vicinity of the subject. The sales included sold for 9 - 18% below their asking price. With this in mind we will deduct 15% from the listed price.

## MARKET CONDITIONS

According to the Appraisal of Real Estate, 14th edition, changes in market conditions can be caused by inflation, deflation, fluctuations in supply and demand, or other factors. The effective date of the appraisal is October 18, 2019. All of the comparable sales within our analysis occurred within the last 18 months. Considering these recent transactions and the listing, we have not applied a market conditions adjustment to the sales.

## LOCATION

Location adjustments are based on traffic counts, quality of existing development, quantity of existing development, etc. The subject property is approximately 600 feet west of the interchange of two major thoroughfares, I-10 and I-45. Furthermore, the subject's northern boundary is adjacent to an active train track. The comparables are all located within the subject's immediate neighborhood. Sales 4 and the listing are not adjacent to a railroad track and are a further distance from the major thoroughfares. For this reason, the sales are considered slightly superior and downward adjustments are applied. Sales 1, 3, and 5, although in the vicinity of the railroad track, they are not adjacent. It is our opinion; these sales would be considered superior and downward adjustments are necessary. Sale 2 is adjacent to the subject to the west and thus, is in similar proximity to the major thoroughfares and is adjacent to a railroad track. Therefore, this sale is similar to the subject and no adjustment is necessary.

## SIZE

Typically, smaller tracts of land sell for a higher per unit value than do larger tracts. In general, there are more qualified buyers for a $50,000 property than there are for a $500,000 property. Research indicates a 5% - 15% adjustment (depending upon the density of development) is necessary for each doubling or halving in size, all other factors being equal. The subject property is 0.6887 acre or 30,000 square feet. Based on our research of sales within the subject neighborhood, as well as the sales included in our analysis, size difference does not appear to be a factor. Therefore, in our opinion, a size adjustment is not applicable in this case.

## UTILITIES

The subject has access to public utilities. All comparable sales included also have utilities and therefore, no adjustments are necessary for this reason.

## FLOOD HAZARD

The subject property lies within the 100 Yr. flood plain (1%), 500 Yr. flood plain (35%) and outside of a flood hazard area (64%). The comparables are either out of a flood hazard area or have portions within the 500-year flood plain. The Base Flood Elevation is 36.67' and elevations on the site range from 37' to 46' thus, being slightly above the BFE to 9' above the BFE. Sale 3 is near the base flood elevation or one foot above. Thus, it may require the site to be raised and so, this sale is considered inferior requiring an upward adjustment. The remaining comparables are similar to the subject in this regard and no adjustments are necessary.

## CONFIGURATION/CORNER

The highest and best use of a site is many times determined by its exposure and access. Corner tracts are considered superior due to improved access and visibility, when compared to interior tracts. In regard to configuration, a rectangular shaped property is typically more desirable for development. An irregular configuration may limit certain uses of the property by adding complexity and cost to development. The subject has 50' of frontage, and is an irregular shaped, interior tract with most of the property being in the northern (back) portion of the property. The subject and the comparables' configuration are similar to other sites within the neighborhood that have been developed with multi-level, single-family townhomes. With this in mind, no adjustments are necessary.

## Vacant Land Sales Adjustment Grid

| Sale No. | 1 | 2 | 3 | 4 | 5 | Listing |
|---|---|---|---|---|---|---|
| Location | North line of Edwards Street, just east of Holly Street (1106 Edwards) | East line of Holly Streeet and bound on the north by a RR track | North line of Summer Street, approximately 50 feet east of Holly Street (1116 Summer Street) | West line of Hickory Street and bound by a RR track to the north | South line of Dart Street at Beachton Street (1101 and 1017 Dart Street) | East line of Hickory Street and adjacent to the north of a RR track (1612 Hickory Street) |
| Date of Sale | Oct-19 | Apr-19 | Dec-18 | Sep-18 | Apr-18 | N/A |
| Size - Acres | 0.1150 | 0.1150 | 0.1150 | 0.3440 | 0.1540 | 0.2296 |
| Size - SF | 5,000 | 5,000 | 5,000 | 15,000 | 6,719 | 10,000 |
| Price PSF | $49.00 | $35.00 | $40.00 | $39.67 | $44.35 | $46.50 |
| Adjusted For | | | | | | |
| Property Rights | 0% | 0% | 0% | 0% | 0% | 0% |
| Financing | 0% | 0% | 0% | 0% | 0% | 0% |
| Cond. of Sale | 0% | 0% | 0% | 0% | 0% | -15% |
| Mkt. Cond. | 0% | 0% | 0% | 0% | 0% | N/A |
| | $49.00 | $35.00 | $40.00 | $39.67 | $44.35 | $39.53 |
| Location | -20% | 0% | -20% | -5% | -20% | -5% |
| Size | 0% | 0% | 0% | 0% | 0% | 0% |
| Utilities | 0% | 0% | 0% | 0% | 0% | 0% |
| Flood | 0% | 0% | 10% | 0% | 0% | 0% |
| Access/Config | 0% | 0% | 0% | 0% | 0% | 0% |
| Total Adj. | -20% | 0% | -10% | -5% | -20% | -5% |
| Adj. Price | $39.20 | $35.00 | $36.00 | $37.69 | $35.48 | $37.55 |

## SUMMARY

The above grid analysis results in an indicated range of value from $35.00 to $39.20 per square foot. The average adjusted price is $36.82 per square foot and the median is $36.78 per square foot. Considering all of the data included, it is our opinion the market value of the subject site is near the average or $37.00 per square foot. As mentioned previously, the subject includes some improvements that are in poor condition and do not represent the highest and best use. Any potential buyers of the subject property would (most likely) raze the existing improvements due to their location (being within the 50' of frontage) and high underlying land value. For this reason, it is necessary to deduct the demolition cost which is estimated at $10,000. The resulting market value is $1,100,000. The calculation is as follows:

**Subject Property**

| | | |
|---|---|---|
| 30,000 SF @ | $37.00 per SF ……………… | $1,110,000 |
| | Less demolition costs……….. | $10,000 |
| | | $1,100,000 |
| | Rounded to……………………… | $1,100,000 |

# ADDENDA

# CERTIFICATION

# CERTIFICATION

I certify that, to the best of my knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have performed no services, as appraisers or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended us of this appraisal.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice.

9.  Steven H. Clegg and Lesa L. Azra have made a personal inspection of the property that is the subject of this report.

10.  Steven H. Clegg and Lesa L. Azra participated in the analysis and the writing of this report.  No one provided significant real property appraisal assistance to the person signing this certification.

11.  As of the date of this report, Steven H. Clegg, MAI has completed the continuing education program for Designated Members of the Appraisal Institute.

12.  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

13.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

14.  The Appraisal Assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.


_____          _____
Steven H. Clegg, MAI                              Lesa L. Azra
Tx-1320497-G                                      Tx-1336904 - G

# ASSUMPTIONS AND LIMITING CONDITIONS

# THIS APPRAISAL IS SUBJECT TO THE FOLLOWING ASSUMPTIONS AND LIMITING CONDITIONS

Possession of this report, or a copy thereof, does not carry with it the right of publication, nor may it be used for any purpose by any person other than the applicant without the previous written consent of the appraiser, or the applicant, and, in any event, only with the proper qualifications.

That the date of value to which the opinions expressed in this report apply, is set forth in the letter of transmittal. The appraiser assumes no responsibility for economic or physical factors occurring at some later date which may affect the opinions herein stated.

That no opinion is intended to be expressed for legal matters or that would require specialized investigation or knowledge beyond that ordinarily employed by real estate appraisers, although such matters may be discussed in the report.

That no opinion as to title is rendered. Data on ownership and the legal description were obtained from sources generally considered reliable. Title is assumed to be marketable and free and clear of all liens and encumbrances, easements and restrictions except those specifically discussed in the report. The property is appraised assuming it to be under responsible ownership and competent management and available for its highest and best use.

That no engineering survey has been made by the appraiser. Except as specifically stated, data relative to size and area were taken from sources considered reliable, however, no warranty is given for its accuracy. No encroachment of real property improvements is assumed to exist.

That maps, plats and exhibits included herein are for illustration only, as an aid in visualizing matters discussed within the report. They should not be considered surveys or relied upon for any other purpose.

That no opinion is expressed as to the value of subsurface oil, gas or mineral rights. Additionally, that there are no hidden or unapparent conditions of the property, subsoil, or structures that render the property more or less valuable.

That testimony or attendance in court or at any other hearing is not required by reason of rendering this appraisal unless such arrangements are made at a reasonable time in advance.

That there is full compliance with all applicable federal, state, and local environmental regulations and laws unless noncompliance is stated, defined, and considered in the appraisal report.

That all applicable zoning and use regulations and restrictions have been complied with, unless a nonconformity has been stated, defined, and considered in the evaluation report.

That the distribution, if any of the total valuation in this report between land and improvements applies only under the stated program of utilization. The separate allocations for land and buildings must not be used in conjunction with any other evaluation and are invalid if so used.

That neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the evaluator, or the firm with which the evaluator is connected) shall be disseminated to the public through advertising public relations, news, sales, or other media without the prior written consent and approval of the evaluator.

That the existence of potentially hazardous material used in the construction or maintenance of the buildings, such as the presence of formaldehyde foam insulation, and/or the existence of asbestos insulation or other toxic waste, which may, or may not, be present in the improvements, or toxic contamination of the soil which may, or may not, be present on, beneath or nearby the property, has not been considered. The user of this report is advised to consult an expert in this field.

That at the time of this evaluation, information regarding the new "wetlands" act is limited, therefore, our evaluation assumes no detrimental effect of any land encumbered by the wetlands nor any restrictions to land utilization.

No professional opinion regarding the building's compliance with ADA standards has been provided; therefore, we recommend an architect be retained to develop an opinion on the building's current compliance and future measures required to meet total compliance.

**SUBJECT PHOTOGRAPHS**



**Subject as seen from Bingham Street**



**Subject (50' to east) as seen from Holly Street**



**Subject 50' east of Holly Street**



**RR track along the subject's northern boundary**



**Subject as seen from the RR track**



**Bingham Street looking easterly. Subject on left.**



**Improvements directly across Bingham St.**



**Bingham St. looking westerly.  Subject on right.**



**Improvements directly across Bingham St.**



**Improvements directly across Bingham St.**



**View of I-45/I-10 as seen from RR track**



**View of back or house on subject property**



**Bathroom**



**Kitchen**



**Bathroom**



**Damage in ceiling (family room)**



**Family room**

# LAND SALES

**Land Sale No. 1**



**PROPERTY IDENTIFICATION**
**Record ID:** 4466
**Property Type:** Vacant land
**Location/Address:** North line of Edwards Street, just east of Holly Street; 1106 Edwards Street, Houston
**County:** Harris
**Tax ID:** 005-066-000-0002
**Key Map:** 493G

**SALE DATA**
**Grantor:** Stephen W C Holbrook
**Grantee:** NICAM Investments, Inc.
**Sale Date:** October 12, 2019
**Recording Data:** RP-2019-457352
**Terms of Sale:** Cash to seller
**Property Rights:** Fee simple

**Sale Price:** $245,000
**Sale Price/Gross SF:** $49.00

**LAND DATA**
**Zoning:** None
**Topography:** Level
**Utilities:** All available
**Shape:** Rectangular
**Flood Zone:** Not in Flood Zone

**LAND SIZE AND FRONTAGE**
**Gross Land Size:** 0.115 Acres or 5,000 SF
**Street Frontage:** Edwards Street - 50 feet

**REMARKS**
This property was on the market for 165 days. The tract is cleared and ready for construction.

Land Sale No. 2



## PROPERTY IDENTIFICATION

**Record ID:** 4467
**Property Type:** Vacant land
**Location/Address:** East line of Holly Street and bound on the north by the RR track (Winter Street), Houston
**County:** Harris
**Tax ID:** 005-067-000-0007
**Key Map:** 493G

## SALE DATA

**Grantor:** Sharon Tapick Ellerin Trustee (Will of Israel I Tapick)
**Grantee:** Danielle and Kameron Raisi
**Sale Date:** April 19, 2019
**Recording Data:** RP-2019-161763
**Terms of Sale:** Cash to seller
**Property Rights:** Fee simple

**Sale Price:** $175,000
**Sale Price/Gross SF:** $35.00

## LAND DATA

**Zoning:** None
**Topography:** Level
**Utilities:** All available
**Shape:** Rectangular
**Flood Zone:** Not in Flood Zone

## LAND SIZE AND FRONTAGE

**Gross Land Size:** 0.115 Acres or 5,000 SF
**Street Frontage:** Holly Street - 100 feet
RR track (Winter Street) - 50 feet

## REMARKS

This property was on the market for 333 days. The tract is cleared and ready for construction. The north boundary of the site is bound by a RR track (Winter Street).

**Land Sale No. 3**



## PROPERTY IDENTIFICATION

**Record ID:** 4468
**Property Type:** Vacant land
**Location/Address:** North line of Summer Street, approximately 50 feet east of Holly Street
1116 Summer Street, Houston
**County:** Harris
**Tax ID:** 005-069-000-0005
**Key Map:** 493G

## SALE DATA

**Grantor:** Kim Dang Thein Nguyen
**Grantee:** BB Residential Group
**Sale Date:** December 13, 2018
**Recording Data:** RP-2018-565629
**Terms of Sale:** Cash to seller
**Property Rights:** Fee simple

**Sale Price:** $200,000
**Sale Price/Gross SF:** $40.00

## LAND DATA

**Zoning:** None
**Topography:** Level
**Utilities:** All available
**Shape:** Rectangular
**Flood Zone:** Not in Flood Zone

## LAND SIZE AND FRONTAGE

**Gross Land Size:** 0.115 Acres or 5,000 SF
**Street Frontage:** Summer Street - 50 feet

## REMARKS

The tract is cleared and ready for construction. The tract is 300 feet west of the I-10 and I-45 major thoroughfares.

## Land Sale No. 4



## PROPERTY IDENTIFICATION
**Record ID:** 4469
**Property Type:** Vacant land
**Location/Address:** West line of Hickory Street and bound by a RR track to the north, Houston
**County:** Harris
**Tax ID:** 136-084-001-0001 (multiple accounts)
**Key Map:** 493G

## SALE DATA
**Grantor:** David Law & Clayton Mitchell
**Grantee:** Dacasa Homes and Construction, LP
**Sale Date:** September 07, 2018
**Recording Data:** RP-2018-426026
**Terms of Sale:** Cash to seller
**Property Rights:** Fee simple

**Sale Price:** $595,000
**Sale Price/Gross SF:** $39.67

## LAND DATA
**Zoning:**
**Topography:** Level
**Utilities:** All available
**Shape:** Rectangular
**Flood Zone:** Not in Flood Zone

## LAND SIZE AND FRONTAGE
**Gross Land Size:** 0.344 Acres or 15,000 SF
**Street Frontage:** Hickory Street - 100 feet

## REMARKS
The tract is cleared and ready for construction.  The tract's northern boundary is adjacent to a RR track.

**Land Sale No. 5**



## PROPERTY IDENTIFICATION
**Record ID:** 4470
**Property Type:** Vacant land
**Location/Address:** South line of Dart Street at Beach Street; 1101 and 1017 Dart Street, Houston
**County:** Harris
**Tax ID:** 140-246-001-0001 and -0002
**Key Map:** 493G

## SALE DATA
**Grantor:** Savrano Investments, LLC
**Grantee:** Good Bones Development
**Sale Date:** April 11, 2018
**Recording Data:** RP-2018-157799
**Terms of Sale:** Cash to seller
**Property Rights:** Fee simple

**Sale Price:** $298,000
**Sale Price/Gross SF:** $44.35

## LAND DATA
**Zoning:** None
**Topography:** Level
**Utilities:** All available
**Shape:** Mostly rectangular
**Flood Zone:** Not in Flood Zone

## LAND SIZE AND FRONTAGE
**Gross Land Size:** 0.154 Acres or 6,719 SF
**Street Frontage:** Dart Street - 78 feet

## REMARKS
The tract is 500 feet west of I-45 and I-10 interchange.

**Listing**



## PROPERTY IDENTIFICATION
**Record ID:**              4476
**Property Type:**          Vacant land
**Location/Address:**       East line of Hickory Street and adjacent to the north of a railroad track;
                            1612 Hickory Street, Houston
**County:**                 Harris
**Tax ID:**                 135-592-001-0001 (multiple accounts)
**Key Map:**                493G

## SALE DATA
**Grantor:**                ICI Construction Inc.
**Grantee:**                Good Bones Development
**Sale Date:**              November 05, 2019
**Recording Data:**         RP-2018-157799
**Terms of Sale:**          Cash to seller
**Property Rights:**        Fee simple

**Sale Price:**             $465,000
**Sale Price/Gross SF:**    $46.50

## LAND DATA
**Zoning:**                 None
**Topography:**             Level
**Utilities:**              All available
**Shape:**                  Irregular
**Flood Zone:**             Not in Flood Zone

## LAND SIZE AND FRONTAGE
**Gross Land Size:**        0.230 Acres or 10,000 SF
**Street Frontage:**        Hickory Street - 50 feet

## REMARKS
Tract is cleared and re-platted for 6 townhomes.  Architectural plans and drawings included.  The property has been listed for two and one-half years.

# INSTRUCTIONS TO APPRAISER



SRC
SOUTHWEST REALTY CONSULTANTS

September 12, 2019

Justyna G. Rak
Paralegal
Rachlis Duff Peel & Kaplan, LLC
542 S. Dearborn Street, Suite 900
Chicago, IL 60605

Reference: Appraisal of 0.6887 acre of land located at 1102 Bingham St., Houston, Harris County, Texas as described by HCAD account #005-067-0000-001

Dear Ms. Rak:

This letter will serve as our proposal, and upon your acceptance, our letter of engagement to provide an estimate of market value on the above referenced property. It is our understanding that you are the client in this assignment; therefore, we will address the report to you. The appraisal will state our opinion of market value as of September / October 2019 (based on date of engagement). Our analysis will consider the physical aspects of the property which are apparent during the inspection, as well as any information you are able to provide us. Our appraisal report will be prepared in conformity with the requirements of the Code of Ethics and the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Institute. An appraisal with one approach (land only) will be conducted.

The fee for this appraisal assignment will be $1,500. We request one half ($750) of the fee to be paid at the time of engagement, and the remainder to be paid at the time of delivery. Our estimated completion date for the assignment is three weeks from the date of engagement. It is understood that as a result of the execution of this agreement, the payment of the appraisal fee is not contingent upon the appraised value, a loan closing, or any other pre-arranged condition.

You acknowledge that we are being retained as an independent contractor to perform the services described, and nothing in this agreement shall be deemed to create any other relationship between us. This assignment is complete upon delivery of the appraisal report to you.

Thank you for calling on us to render these services, and we look forward to working with you. Please sign below to authorize the assignment and return one copy to our firm and retain a copy for your files.

Sincerely,                                                      Agreed and accepted:

Steven H. Clegg                              By: _____

Steven H. Clegg                              Title: _Receiver_____

                                             Date: _10/15/2019_____

9818 Whithorn Drive • Suite B • Houston, Texas 77095 • Tel: (281) 550-7000 • Fax (281) 550-7001

# QUALIFICATIONS OF APPRAISERS

**QUALIFICATIONS**
**OF**
**STEVEN H. CLEGG, MAI**

## EXPERIENCE

Steven Clegg has been involved in the real estate appraisal business since 1982. He primarily appraised single family residences until 1984, and since that time, he has been a commercial real estate appraiser. Mr. Clegg's appraisal experience has included the valuation of vacant land, single family dwellings, single family subdivisions, retail centers, high-rise and mid-rise office buildings, apartment complexes, office warehouses, restaurants, convenience stores/service stations, manufacturing facilities, automobile dealerships, and various other types of real estate. The majority of the appraisal assignments have been conducted in the City of Houston and surrounding counties of southeast Texas. Mr. Clegg has also appeared as an expert witness in the valuation of real property in various courts in the Houston Area. Clients over the years include:

| | |
|---|---|
| Harris County Right of Way | Sterling Bank |
| Wells Fargo | First Capital Bank |
| Banc One | Klein I.S.D. |
| Amegy Bank of Texas | City of Missouri City |
| Plains State Bank | First National Bank |
| Bank of Houston | Ft. Bend Federal Savings and Loan |
| Whitney Bank | Bank of Tanglewood |
| South Texas Bank | Metro - City of Houston |
| Bayshore National Bank | First Union Planters |
| Wallis State Bank | BBVA Compass Bank |
| Community Bank | TxDoT |
| Riverway Bank | International Bank of Commerce |
| Southern National Bank | SouthTrust Bank |
| City of Spring Valley | Katy Bank |
| Prime Bank | Crossland Acquisition |
| Prosperity Bank | Scanlan Foundation |
| Post Oak Bank | Redstone Bank |
| Commercial State Bank | Haginas Chapman & Shillings |
| Texas Gulf Bank | BOK Finance |
| Independence Bank of Texas | Frost Bank |
| Founders Bank | Texas Community Bank |
| Gardere Wynne Sewell LLP | Green Bank |

## BUSINESS AND PROFESSIONAL AFFILIATIONS

Member of the Appraisal Institute - No. 9016
Texas Certified General Real Estate Appraiser - No. TX-1320497-G
Texas Real Estate Broker - No. 0320634

## STEVEN H. CLEGG, MAI

### PROFESSIONAL APPRAISAL EXPERIENCE

|  |  |
|---|---|
| 1989 - Present | Principal of Southwest Realty Consultants |
| 1982- 1989 | Luedemann and Associates |

### PROFESSIONAL TRAINING

Appraisal Institute Courses

Real Estate Appraisal Principles
Basic Valuation Procedures
Capitalization Theory and Techniques - Part A
Capitalization Theory and Techniques - Part B
Case Studies in Real Estate Valuation
Valuation Analysis and Report Writing
Standards of Professional Practice
Advanced Applications
Eminent Domain Appraisals
Property Tax Appraisals
Subdivision Analysis
Understanding Limited Appraisals
Appraiser as an Expert Witness
FIRREA, The Law

### EDUCATION

Bachelor of Science - Sul Ross State University - 1978
Master of Science - Sul Ross State University - 1979

### REFERENCES

Amegy Bank of Texas – Sharon Butler - Tel: 713-232-1127
Wallis State Bank - Mr. Asif Dakri - Tel: 713-463-0580
First Financial Bank - Mr. Johnny Brooks - Tel: 713-503-5181
Haginas & Shillings - Mr. Jeff Shillings – Tel: 281–550-9200



TEXAS APPRAISER LICENSING &
CERTIFICATION BOARD

# Certified General
# Real Estate Appraiser

Appraiser: **Steven Howard Clegg**

License #:  **TX 1320497 G**          License Expires: **04/30/2021**

Having provided satisfactory evidence of the qualifications required
by the Texas Appraiser Licensing and Certification Act, Occupations
Code, Chapter 1103, authorization is granted to use this title:
Certified General Real Estate Appraiser

For additional information or to file a complaint please contact TALCB
at www.talcb.texas.gov.

**Douglas E. Oldmixon**
Commissioner

**QUALIFICATIONS**
**OF**
**LESA L. AZRA**

## EXPERIENCE

Lesa L. Azra began appraising real estate in September 2002.  Prior to her affiliation with Southwest Realty Consultants, she was an analyst for a major retailer and held various management positions within this company for approximately twenty years.  Mrs. Azra is primarily involved with the appraisal of commercial real estate.  Mrs. Azra's appraisal experience has included the valuation of vacant land, single-family subdivisions, retail centers, office warehouses, restaurants, industrial facilities, office buildings, day cares, car wash facilities, veterinary clinics, condemnation appraisals and various other types of real estate.  The majority of the appraisal assignments have been conducted in the Greater Houston area and surrounding counties.

## BUSINESS AND PROFESSIONAL AFFILIATIONS

Texas Licensing and Certification Board - No. TX-1336904-G

## PROFESSIONAL APPRAISAL EXPERIENCE

2002 - Present                Southwest Realty Consultants
                                       Houston, Tx. – Staff Appraiser

## PROFESSIONAL TRAINING

Appraisal Institute courses taken and passed:
        Basic Appraisal Principles
        Basic Appraisal Procedures
        National Uniform Standards of Professional Appraisal Practice
        National Uniform Standards of Professional Appraisal Practice - Update
        Analyzing Operating Expenses
        Marshall & Swift Commercial Cost Training
        Appraising From Blueprints and Specifications
        New Technology for Real Estate Appraisers
        Data Verification Methods
        Analyzing Distressed Real Estate
        Eminent Domain and Condemnation
Miscellaneous provider courses taken and passed:
        Principles of Uniform Standards of Professional Appraisal Practice
        Appraising Residential Properties
        Financial Analysis of Income Property
        Direct Capitalization of Income Property

## EDUCATION

High School Graduate – Magnolia High School



**TEXAS APPRAISER LICENSING &
CERTIFICATION BOARD**

# Certified General
# Real Estate Appraiser

Appraiser: **LESA L AZRA**

License #:  **TX 1336904 G**

License Expires: **04/30/2021**

Having provided satisfactory evidence of the qualifications required
by the Texas Appraiser Licensing and Certification Act, Occupations
Code, Chapter 1103, authorization is granted to use this title:
Certified General Real Estate Appraiser

For additional information or to file a complaint please contact TALCB
at www.talcb.texas.gov.

**Douglas E. Oldmixon**
**Commissioner**

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Judge John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF TONY ROUBIK

I, Tony Roubik, under penalty of perjury and in accordance with 28 U.S.C. § 1746, hereby declare and state as follows:

1.    I am over 18 years of age and reside in the State of Texas.

2.    I have personal knowledge of the facts stated herein and if called as a witness could testify competently thereto.

3.    I am Managing Director at SVN/AVR Commercial Real Estate Services ("SVN/AVR") and have worked as a commercial real estate broker specializing in the sale of office, industrial, multi-family, self storage, and retail properties in Houston, Texas for more than thirty years.

4.    Kevin B. Duff, as Receiver of the EquityBuild Receivership Estate, retained SVN/AVR to provide real estate brokerage services in connection with the marketing and sale of a 30,000 square foot parcel of largely vacant land located at 1102 Bingham Street in Houston, Texas, and I was the broker principally responsible for that undertaking.

5.    In an effort to obtain the highest possible price, I listed the property for sale on CoStar and LoopNet, each a national commercial real estate data platform, and I listed it on the SVN website. I also advertised the property on the Houston Association of Realtors multiple listing service.

Tab

D

6.     In addition, I created an offering memorandum touting the site as a luxury townhome development opportunity in a prime location, situated within walking distance of numerous lifestyle amenities and offering excellent views of the Houston skyline, and SVN "e-mail blasted" it to over 500,000 known buyers of commercial real estate in their nationwide database.

7.     Metrics made available by CoStar and LoopNet indicate that the listings on their websites were viewed by 11,619 prospects 57,203 times.

8.     On December 16, 2019, I presented the property on SVNLive, a web broadcast viewed by thousands of commercial real estate brokers and investors.

9.     Although I originally advertised the property for sale at $1,295,000, the initial marketing efforts did not generate sufficient interest, so I lowered the asking price to $995,000 on March 9, 2020, updated all the marketing materials and online listings accordingly, and sent a new e-mail blast notifying all addressees of the reduction in offering price.

10.     An offer to purchase the property for $840,000 was ultimately submitted on May 5, 2020, but that offer was later withdrawn with the prospective purchaser citing concerns about the economic uncertainty associated with the Covid-19 pandemic.

11.     Zeppelin Realty LLC offered to purchase the property for $825,000 on September 16, 2020, and, following several rounds of negotiation, the Receiver agreed to sell the property to Zeppelin Realty for $892,500.

FURTHER DECLARANT SAYETH NAUGHT.

_____
Tony Roubik

2



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

**ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)**

NOTICE: Not For Use For Condominium Transactions

2-12-18

**1. PARTIES:** The parties to this contract are Kevin B Duff, as Federal Equity Receiver for the Estate of EquityBuild, Inc (Seller) and Zeppelin Realty, LLC _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".

A. LAND: Lot _____ Block _____, _____ Addition, City of _____, County of _____, Texas, known as _____ (See attached exhibit "A") _____ (address/zip code), or as described on attached exhibit.

B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.

C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.

D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____.

E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing ............................ $ 892,500.00

B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum .............. $ _____

C. Sales Price (Sum of A and B)................................................................ $ 892,500.00

**4. LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____

**5. EARNEST MONEY:** Within 3 days after the Effective Date, Buyer must deliver $ See Exhibit "B" as earnest money to _____, as escrow agent, at _____ (address). Buyer shall deliver additional earnest money of $_____ to escrow agent within _____ days after the Effective Date of this contract. If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. **Time is of the essence for this paragraph.**

**6. TITLE POLICY AND SURVEY:**

A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by __Riverway Title__ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

(1) Restrictive covenants common to the platted subdivision in which the Property is located.

(2) The standard printed exception for standby fees, taxes and assessments.

Initialed for identification by Buyer _____ and Seller _____          TREC NO. 20-14

(3) Liens created as part of the financing described in Paragraph 3.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐(i) will not be amended or deleted from the title policy; or
☒(ii) will be amended to read, "shortages in area" at the expense of ☐Buyer ☒Seller.
(9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions.  Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY:  The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)
☐(1) Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title  Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐Seller's ☐Buyer's expense no later than 3 days prior to Closing Date.
☒(2) Within ___15___ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
☐(3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity:  _Development of Single Family Townhomes_ .
Buyer must object                           WITHIN                    45    days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections.  If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections.  If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy.  If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐is ☒is not

Initialed for identification by Buyer _____ ☐W and Seller _____ _____        TREC NO. 20-14

subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**
Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
**If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee

KD
AW

Initialed for Identification by Buyer _____ AW _____ and Seller AB _____ _____                TREC NO. 20-14

obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.
(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code.  An addendum containing the notice approved by TREC or required by the parties should be used.
(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

## 7.PROPERTY CONDITION:
A. ACCESS, INSPECTIONS AND UTILITIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
   (Check one box only)
   ☐ (1) Buyer has received the Notice.
   ☐ (2) Buyer has not received the Notice.  Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
   ☒ (3)The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
   (Check one box only)
   ☒ (1) Buyer accepts the Property As Is.
   ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

   _____
   (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer.  If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS:  Unless otherwise agreed in writing:  (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments.   At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.** ☒ KD AW

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**   See Exhibit B.   ~~See "Special Provisions"~~   KD AW
   A. ~~The closing of the sale will be on or before~~ _____, 20____, or within 7 ~~days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date).~~ If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:   Receiver's   KD AW
      (1) Seller shall execute and deliver a ~~general warranty~~ deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has acquired the Property and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**
   A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒upon closing and funding ☐according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
   B. Leases:
      (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
      (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

See Exhibit "B", the provisions of which are incorporated herein by reference as part of this Sales contract.   KD AW

12. **SETTLEMENT AND OTHER EXPENSES:**
   A. The following expenses must be paid at or prior to closing:
      (1) Expenses payable by Seller (Seller's Expenses):
         (a) ~~Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability;~~ tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.   AW KD
         (b) ~~Seller shall also pay an amount not to exceed $_____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.~~   KD AW

Initialed for identification by Buyer ___ ☐ AW and Seller ___ ___ ___   TREC NO. 20-14

   (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

  B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. ~~MEDIATION:~~** It is the policy of the State of Texas to encourage resolution ~~of disputes~~ through alternative ~~dispute~~ resolution procedures such as mediation. ~~Any dispute between~~ Seller and Buyer related to this contract ~~which is not resolved through~~ informal  discussion will be submitted to a mutually ~~acceptable mediation service or provider~~. The parties to the mediation shall bear the ~~mediation costs~~ equally. This paragraph does not ~~preclude a party~~ from seeking ~~equitable relief~~ from a court of competent jurisdiction. 

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
  A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

  B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

  C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly

provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (I) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer | | To Seller | |
|---|---|---|---|
| at: | Kevin B.Duff | at: | David Ward |
| | | | |
| Phone: | ( 312 ) 733-3390 | Phone: | ( 713 ) 542-0999 |
| Fax: | ( ) | Fax: | ( ) |
| E-mail: | kduff@rdaplaw.net | E-mail: | dward@dwardpartners.com |

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

❑ Third Party Financing Addendum

❑ Seller Financing Addendum

❑ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

❑ Buyer's Temporary Residential Lease

❑ Loan Assumption Addendum

❑ Addendum for Sale of Other Property by Buyer

❑ Addendum for Reservation of Oil, Gas and Other Minerals

❑ Addendum for "Back-Up" Contract

❑ Addendum for Coastal Area Property

❑ Addendum for Authorizing Hydrostatic Testing

❑ Addendum Concerning Right to Terminate Due to Lender's Appraisal

❑ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

❑ Seller's Temporary Residential Lease

❑ Short Sale Addendum

❑ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

❑ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

❑ Addendum for Property in a Propane Gas System Service Area

☒ Other (list): ~~Special Provisions~~   $Exhibit B$
_____ Property Description
_____
_____
_____

KD
DW

Initialed for identification by Buyer ____ DW  and Seller ABD ____          TREC NO. 20-14

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $_____ (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐will ☐will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

24. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

Phone: ( ) _____

Phone: ( ) _____

Fax: ( ) _____

Fax: ( ) _____

E-mail: _____

E-mail: _____

EXECUTED the _18th_ day of _NOVEMBER_ , 20_20_ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)



Zeppelin Realty, LLC
David Ward
President

Seller _____   Receiver

Buyer

Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-14. This form replaces TREC NO. 20-13.

## BROKER INFORMATION
(Print name(s) only. Do not sign)

| David Ward Partners | | | Anthony V. Roubik | | 0319384 |
| --- | --- | --- | --- | --- | --- |
| Other Broker Firm | | License No. | DBA SVN/AVR Commercial Real Estate Services | | |
| | | | Listing Broker Firm | | License No. |

represents  ☒ Buyer only as Buyer's agent  
☐ Seller as Listing Broker's subagent

represents  ☐ Seller and Buyer as an intermediary  
☒ Seller only as Seller's agent

| David Ward | | 287585 | Anthony V. Roubik | | 0319384 |
| --- | --- | --- | --- | --- | --- |
| Associate's Name | | License No. | Listing Associate's Name | | License No. |
| dward@dwardpartners.com | | 713-542-0999 | troubik@att.net | | 713-858-1144 |
| Associate's Email Address | | Phone | Listing Associate's Email Address | | Phone |
| | | | | | |
| Licensed Supervisor of Associate | | License No. | Licensed Supervisor of Listing Associate | | License No. |
| 23501 Cinco Ranch Blvd H120-350 | | 281-693-6161 | 9208 Cardwell Street | | 713-8581144 |
| Other Broker's Address | | Phone | Listing Broker's Office Address | | Phone |
| Katy | TX | 77494 | Houston | TX | 77055 |
| City | State | Zip | City | State | Zip |

| Selling Associate's Name | | License No. |
| --- | --- | --- |

| Selling Associate's Email Address | | Phone |
| --- | --- | --- |

| Licensed Supervisor of Selling Associate | | License No. |
| --- | --- | --- |

| Selling Associate's Office Address | | |
| --- | --- | --- |

| City | State | Zip |
| --- | --- | --- |

Listing Broker has agreed to pay Other Broker _____ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____    _____
Seller or Listing Broker                                                            Date

## EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

| Escrow Agent | Received by | Email Address | Date/Time |
| Address | | | Phone |
| City | State | Zip | Fax |

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

| Escrow Agent | Received by | Email Address | Date |
| Address | | | Phone |
| City | State | Zip | Fax |

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $_____ additional Earnest Money in the form of _____
is acknowledged.

| Escrow Agent | Received by | Email Address | Date/Time |
| Address | | | Phone |
| City | State | Zip | Fax |

TREC NO. 20-14

**Exhibit "A"**
**Property Description**

The subject property is highlighted below and includes 918 SF building and 30,000 SF land located at:
1102 BINGHAM ST, HOUSTON, TX, 77007-4212
and legally described as:
LTS 1 & 8 THRU 12 BLK 242 BAKER NSBB



Exhibit "B"
Special Provisions



1. Title to the Property is vested in EquityBuild, Inc., which was named as defendant in United States Securities & Exchange Commission v. EquityBuild, Inc., et al., Civil Action No. 18-CV-5587, United States Court for the Northern District of Illinois, Eastern Division (the "SEC Action"). Following the expiration of the Buyer's deadline to object to defects, exceptions, and encumbrances to title as stated in Paragraph 6D of the Sales Contract, the Seller will move the Honorable John Z. Lee, or any judge sitting in his stead or to whom he has made a referral in the SEC Action, to confirm the sale of the Property. In the event that the Seller's motion to confirm the sale of the Property is denied, then (i) the Seller shall have the option of declaring the Sales Contract null and void, in which event all Earnest Money shall be promptly refunded to the Buyer and (ii) the Buyer shall not have the option to declare the Sales Contract null and void or to invoke a default, provided, however, that if the Seller cannot secure judicial confirmation of a motion to sell the Property within thirty (30) days after the initial motion was denied, then the Buyer shall have the option of declaring the Sales Contract null and void, in which event all Earnest Money shall be promptly refunded to the Buyer.

2. The Closing Date shall be designated by the Seller after the Seller's motion to confirm the sale of the property is granted, provided, however, that the Buyer shall be entitled to thirty (30) business days' advance notice of the Closing Date.

3. EARNEST MONEY. Buyer agrees to deliver 2% of the purchase price as earnest money within 3 days after the effective date of this contract, and deliver another 8% of the purchase price as earnest money once the motion to confirm the sale of the property is granted by the judge (as described in bullet point 1 of this exhibit). The earnest money must be delivered to Riverway Title at 5-Riverway, Suite 300, Houston, TX 77056.



## EXHIBIT B

### TO CONTRACT (PURCHASE AND SALE OF 1102 BINGHAM STREET, HOUSTON, TEXAS)

The following terms and provisions are incorporated and expressly included in that certain Contract ("Sales Contract"), between Kevin B Duff, in his capacity as Receiver for the Estate of EquityBuild, Inc , et al. ("Seller") and Zeppelin Realty, LLC ("Buyer"), with respect to the property located at 1102 Bingham Street Houston, Texas (the "Property").

1. **Order Appointing Receiver.** Reference is hereby expressly made to that certain Order Apppointing Receiver dated August 17, 2018, as amended (the "Order Appointing Receiver"), in the action titled, *SEC v. EquityBuild, Inc., et al.*, Case No. 1:18-cv-5587, pending in the United States District Court for the Northern District of Illinois, Eastern Division (the "SEC Action") In any conflict between the terms of the Sales Contract and the Order Appointing Receiver, the Order Appointing Receiver shall govern.

2. **Receivership Asset.** The Buyer recognizes and acknowledges that the Property is an asset of the Receivership Estate in the SEC Action and the Property is subject to the exclusive jurisdiction of the Court in the SEC Action. Title to the Property is vested in EquityBuild, Inc., which was named as defendant in the SEC Action.

3. **Preservation of Mortgages, Liens, Claims, and Encumbrances.** The proceeds from the sale of the Property shall be held by the Receiver in separate receivership account for which the Receiver shall maintain an accounting as to all sums deposited therein, with all mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the Property being sold.

4. **Approval of Sale.** Following the expiration of the Buyer's deadline to object to defects, exceptions, and encumbrances to title as stated in Paragraph 6(D) of the Sales Contract, the Seller will move the Honorable John Z Lee, or any judge sitting in his stead or to whom he has made a referral in the SEC Action, to confirm the sale of the Property. In the event that the Seller's motion to confirm the sale of the Property is denied, then (i) the Seller shall have the option of declaring the Sales Contract null and void, in which event all Earnest Money shall be promptly refunded to the Buyer and (ii) the Buyer shall not have the option to declare the Sales Contract null and void or to invoke a default, provided, however, that if the Seller cannot secure judicial confirmation of a motion to sell the Property within sixty (60) days after the initial motion was denied, then the Buyer shall have the option of declaring the Sales Contract null and void, in which event all Earnest Money shall be promptly refunded to the Buyer.

5. **Closing Date.** The Closing Date shall be designated by the Seller after the Seller's motion to confirm the sale of the property is granted by the Court in the SEC Action, provided, however, that the Buyer shall be entitled to thirty (30) business days' advance notice of the Closing Date.

6. **Earnest Money.** Buyer agrees to deliver two percent (2%) of the purchase price as earnest money within three (3) days after the effective date of this Sales Contract, and deliver an additional eight percent (8%) of the purchase price as earnest money once the motion to confirm the sale of the property is granted by the Court in the SEC Action (as described in bullet Paragraph 3 of this Exhibit B) The Buyer's earnest money must be delivered to Riverway Title at 5- Riverway, Suite 300, Houston, TX 77056

7. **Effect of this Exhibit B.** In any conflict between the terms of this Exhibit B and the terms set forth in the form of Sales Contract to which this Exhibit B is attached and incorporated by reference, the terms and provisions of this Exhibit B shall govern

8. **Exclusive Right to Sell** The sale of the Property is subject to approval of the Court in the SEC Action.

9. **Dispute Resolution:** Any action, controversy, or claim between the Seller, Buyer, and/or any broker acting in an agency or non-agency relationship for the Seller or Buyer, including, but not limited to, those arising out of or relating to this Sales Contract or any related agreement or those based upon or sounding in tort, shall be initiated solely in accordance with the terms of that certain Order Appointing Receiver entered by the Honorable John Z Lee in the SEC Action. The forum and venue for any such action, controversy, or claim shall be in the United States District Court for the Northern District of Illinois, Eastern Division.

10. **Mediation:** Prior to initiating any action, controversy, or claim, in accordance with the foregoing provision of the Sales Contract and this Exhibit B, the Seller, Buyer, and/or any broker acting in an agency or non-agency relationship for the Seller or Buyer, will participate in good faith in mediation before any United States Magistrate Judge assigned to the SEC Action or otherwise designated by the Honorable John Z. Lee, or any United States District Court Judge sitting in his stead, in the SEC Action.

11. **Binding Effect:** The Sales Contract shall be binding upon and inure to the benefit of the parties hereto, including their respective successors or assigns.

12. **Entire Agreement:** The Sales Contract represents the entire agreement of the parties in regards to the subject matter hereof; all prior agreements, understandings or representations, if any, are merged herein and superseded hereby, and the Sales Contrtact may be amended only by an instrument in writing and signed by the parties.

13. **Signature:** The undersigned signatories hereby represent and warrant that they possess all requisite power and authority to enter into the Sales Contract.

**AGREED TO AND ACKNOWLEDGED:**

**BUYER**

Zeppelin Realty, LLC

Signed: _____

Date: 11/17/2020

**SELLER**

Kevin B. Duff, Receiver for the Estate of EquityBuild, Inc., et al.

Signed: _____

Date: 11/18/2020



## AFFIDAVIT OF PUBLICATION

### STATE OF TEXAS:

Before me, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared, the Newspaper Representative at the HOUSTON CHRONICLE, a daily newspaper published in Harris County, Texas, and generally circulated in the Counties of: HARRIS, TRINITY, WALKER, GRIMES, POLK, SAN JACINTO, WASHINGTON, MONTGOMERY, LIBERTY, AUSTIN, WALLER, CHAMBERS, COLORADO, BRAZORIA, FORT BEND, GALVESTON, WHARTON, JACKSON, and MATAGORDA and that the publication, of which the annexed herein, or attached to, is a true and correct copy, was published to-wit:

PORTER LAW OFFICE            0034127887
RAN A LEGAL NOTICE
SIZE BEING:   1 x61 L

| Product | Date | Class | Page |
|---|---|---|---|
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |
| HOU Chronicle | Jun 23 2021 | Legal Notices | B 5 |

**Tab**

**F**

| Product | Date | Class | Page |
|---------|------|-------|------|

_Victoria Bond ⊀ MC Clark_

NEWSPAPER REPRESENTATIVE

Sworn and subscribed to before me, this 23rd Day of June A.D. 2021

Notary Public in and for the State of Texas

**NOTICE OF SALE**
Please take notice that, pursuant to 28 U.S.C. § 2001, Kevin B. Duff, court-appointed receiver in the case of Securities & Exchange Commission v. EquityBuild, Inc., et al, Case No. 18-cv-5587 (N.D. Ill.) has accepted a contract to sell the real property and improvements located at 1102 Bingham Street, Houston, Texas 77007, and legally described as follows, for $892,500:
TRACT 1: LOT ONE (1) IN BLOCK TWO HUNDRED FORTY-TWO (242) OF W.R. BAKER, N.S.B.B., AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 22, PAGE 44, DEED RECORDS OF HARRIS COUNTY, TEXAS.
TRACT 2: LOTS EIGHT (8), NINE (9), TEN (10), ELEVEN (11) AND TWELVE (12) IN BLOCK TWO HUNDRED FORTY-TWO (242) OF W.R. BAKER, N.S.B.B., AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 22, PAGE 44, DEED RECORDS OF HARRIS COUNTY, TEXAS.
Pursuant to 28 U.S.C. § 2001(b), the sale of the referenced property shall not be confirmed if a bona fide offer is made within ten days after publication of this notice and guarantees at least a ten percent increase over the price accepted by the receiver. Offers meeting the foregoing criterion or other inquiries may be submitted or made to Tony Roubik, SVN/AVR Commercial Real Estate Services, tel. (713) 858-1114, roubikt@svn.com.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) | |
| Plaintiff, ) | Civil Action No. 18-cv-5587 |
| ) | |
| v. ) | Judge John Z. Lee |
| ) | |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, ) ) ) ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING RECEIVER'S FOURTEENTH MOTION TO CONFIRM THE SALE OF CERTAIN REAL ESTATE AND FOR THE AVOIDANCE OF CERTAIN MORTGAGES, LIENS, CLAIMS, AND ENCUMBRANCES

WHEREAS, by Order Appointing Receiver, dated August 17, 2018 (Dkt. 16) this Court took exclusive jurisdiction and possession of the assets of all Receivership Defendants;

WHEREAS, the Order Appointing Receiver identified EquityBuild, Inc. ("EquityBuild") as a Receivership Defendant;

WHEREAS, EquityBuild is the owner of record of the real estate located at 1102 Bingham Street, Houston, Texas 77007 ("1102 Bingham"), whose legal description is reflected on Tab A hereto;

WHEREAS, the Court finds that the sales price reflected in the Purchase And Sale Agreement that the Receiver accepted for the conveyance of 1102 Bingham is consistent with the fair market value of the property;

**Tab**

**G**

exhibitsticker.com

WHEREAS, Kevin B. Duff, as receiver ("Receiver") for EquityBuild, filed a Fourteenth Motion To Confirm The Sale Of Certain Real Estate And For The Avoidance Of Certain Mortgages, Liens, Claims, And Encumbrances (the "Motion"); and

WHEREAS, the Court finds that the Receiver has given fair, adequate, and sufficient notice to all interested parties, including all mortgagees and other encumbrancers affected by the Motion;

NOW, THEREFORE, it is hereby ORDERED that:

1.      The Motion is GRANTED.

2.      The publication of notice of the proposed sale in the <u>Houston Chronicle</u> on June 23, 2021 is approved.

3.      The Receiver is authorized to sell the real property and improvements at <u>1102 Bingham</u> free and clear of:

a.      that certain Deed of Trust dated April 1, 2014 and recorded April 3, 2014 in Harris County Clerk File No. 20140134453 granted by EquityBuild, Inc., a Florida corporation d/b/a EB EquityBuild Capital, Inc. in favor of Shaun Cohen, Trustee, for those specific parties reflected in the Note c/o Hard Money Company, LLC, a Delaware limited liability company d/b/a Venture Hard Money Capital, LLC; and

b.      that certain Deed of Trust dated August 16, 2018 and recorded August 27, 2018 in Harris County Clerk File No. RP-2018-392596 granted by EquityBuild, Inc., a Florida corporation d/b/a EB EquityBuild Capital, Inc. in favor of Shaun Cohen, Trustee, for Tikkun Holdings, LLC;

c.      that certain Notice of Lis Pendens recorded March 1, 2018 in Harris County Clerk File No. RP-2018-87604 in connection with the lawsuit captioned *Anson Markwell,*

*as Trustee for the Amark Investment Trust v. EquityBuild, Inc. d/b/a EB EquityBuild Capital, Inc., et al.,* 165th State District Court of Harris County Texas, Case No. 2018-13722; and

       d.    that certain Notice of Lis Pendens recorded June 28, 2018 in Harris County Clerk File No. RP-2018-289229 in connection with the lawsuit captioned *Anson Markwell, as Trustee for the Amark Investment Trust v. EquityBuild, Inc. d/b/a EB EquityBuild Capital, Inc., et al.,* United States District Court for the Southern District of Texas, Houston Division, Civil Action No. 4:18-cv-01274.

       3.    The Receiver is hereby vested with full power and authority to execute any and all closing documents associated with the conveyance of <u>1102 Bingham</u>, including, but not limited to, the deeds, bill of sale, affidavit of title, and settlement statement.

       4.    The proceeds from the sales of <u>1102 Bingham</u> shall be held by the Receiver in a separate subaccount for which the Receiver shall maintain an accounting as to all sums deposited therein, and shall not be available to pay operating expenses of the Receivership nor for any other expense or distribution, absent further order of Court.

       Entered:


_____

The Honorable John Z. Lee


Date:_____

**TAB A**

**1102 Bingham Street**
**Houston, Texas 77007**

<u>TRACT 1</u>: LOT ONE (1) IN BLOCK TWO HUNDRED FORTY-TWO (242) OF W.R. BAKER, N.S.B.B., AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 22, PAGE 44, DEED RECORDS OF HARRIS COUNTY, TEXAS.

<u>TRACT 2</u>: LOTS EIGHT (8), NINE (9), TEN (10), ELEVEN (11) AND TWELVE (12) IN BLOCK TWO HUNDRED FORTY-TWO (242) OF W.R. BAKER, N.S.B.B., AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 22, PAGE 44, DEED RECORDS OF HARRIS COUNTY, TEXAS.