## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 18-cv-5587** |
| **v.** | ) ) | **Judge John Z. Lee** |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) | **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) ) ) | |

## RECEIVER'S MOTION TO APPROVE SETTLEMENT

Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), respectfully moves for approval of a settlement reached with Coventry First LLC ("Coventry") and LST III LLC ("LST") regarding the death benefit payable under an individual life insurance policy issued by The Lincoln National Life Insurance Company ("Lincoln") on the life of Jerome H. Cohen (the "Policy").

### *Background and Receiver's Power to Settle Claims*

1. The United States Securities and Exchange Commission ("SEC") filed this case against EquityBuild, EquityBuild Finance, Jerome Cohen, and Shaun Cohen alleging that the Cohens operated a Ponzi scheme through which they fraudulently induced more than 900 investors to invest at least $135 million in residential properties on the south side of Chicago. (Dkt. 1, ¶ 1)

1

2.      In its August 17, 2018 Order Appointing Receiver (Dkt. 16), the Court assumed exclusive jurisdiction over, and possession of, the assets of the Receivership Defendants.

3.      In the Order Appointing Receiver, the Court conferred upon the Receiver (1) "all powers, authorities, rights and privileges" theretofore possessed by the principals of the Receivership Defendants under applicable state and federal law, as well as by the governing operating and shareholders' agreements, and (2) all powers and authority of a receiver at equity, as well as all powers conferred upon a receiver under 28 U.S.C. §§ 754, 959, and 1692, and FRCP 66.  (Docket No. 16, ¶ 4)

4.      The Order Appointing Receiver authorizes the Receiver to take custody, control, and possession of all assets which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Assets"), to issue subpoenas for documents and testimony, and to sue for, collect, recover, receive, and take into possession from third parties all Receivership Assets.  *Id.*, ¶ 8.  The Court further authorized Receiver to investigate, prosecute, and compromise claims related to Receivership Assets. *Id., ¶ ¶* 37, 42.

*The Life Insurance Policy*

5.      On or about December 30, 2020, the Receiver learned that Defendant Jerome H. Cohen had died.  The Receiver had previously learned about a life insurance policy issued by Lincoln that had been obtained and paid for with at least $129,500 of funds gained through the Ponzi scheme alleged in the Complaint.

6.      The Receiver served Lincoln with notice of the Receivership and a subpoena for records, and asserted a lien against the Policy.  Lincoln produced records pursuant to the subpoena in two phases on April 6, 2021 and May 24, 2021.  These documents showed that the Policy, which had been purchased in 2013 by the Jerome H Cohen Family Trust, had been sold to a third-party

in May 2020 pursuant to a viatical settlement. These transfers had not been previously disclosed to the Receiver.

7. After learning of these transfers, the Receiver contacted Coventry, the purchaser of the policy, and requested that Coventry remit the Policy's death benefit proceeds to the Receivership because the Policy had been paid for using the money of the Cohens' defrauded investors. In response, Coventry provided evidence to the Receiver that it had purchased the policy from the trustee of the Jerome H Cohen Family Trust on May 11, 2020, paying $285,418 to the trustee and an additional broker fee of $74,582, and that at the time of purchase, the policy had an outstanding loan of $57,790 against it and a cash value of only $1000. After buying the Policy, Coventry sold its interest to LST, which transferred legal title to the Policy to Wells Fargo Bank as LST's securities intermediary, which paid an additional $30,656.47 towards the Policy. The net death benefit of the policy at the time of Cohen's passing was $967,047.68.

### The Settlement Negotiations

8. The Receiver, Coventry and LST entered into extensive negotiations to resolve the Receiver's claim with respect to the Policy. The Receiver contended that the Policy and the net death benefit payable under the Policy constitute Receivership Assets that are recoverable by the Receiver for the benefit of the receivership estate. In response, Coventry advanced a variety of legal and factual arguments in support of its position that it had purchased the Policy in good faith and without actual or constructive notice of the SEC Action, the Receivership, or any adverse claim to the Policy or its death benefit, and was therefore a bona fide purchaser in the ordinary course, and the Receiver was not entitled to the Policy's death benefit proceeds.

9.      While the Receiver disagreed with Coventry's arguments, it became apparent to the Receiver that pursuing his claims against Coventry would require significant and time-consuming litigation and that the result of that litigation would be difficult to predict.

10.     Rather than proceeding to litigation, the Receiver utilized his reasonable business judgment to determine that a settlement was in the Receivership Estate's best interest. Following extensive good faith negotiations, the Receiver, Coventry and LST entered into the settlement agreement attached hereto as Exhibit A (the "Settlement Agreement"), subject to Court approval, to resolve their claims and defenses without the expense, delay and risks of protracted litigation.

11.     Pursuant to the Settlement Agreement, with the Court's approval Lincoln will pay to the Receiver for the benefit of the receivership estate the sum of $120,000. This proposed payment represents 93% of the approximately $129,500 of investor funds paid to Lincoln to obtain and maintain the policy before it was sold to Coventry. The Receiver respectfully submits that this is a fair and reasonable settlement for the receivership estate and should be approved.

### *The Court Has Broad Authority To Approve the Settlement*

12.     A settlement by a federal equity receiver is within the receiver's broad discretion and should be approved if it is fair. *Gordon v. Dadante*, 336 Fed. Appx. 540 (6th Cir. 2009). A district court's determination of the fairness of a settlement by a receiver is subject to the sound discretion of the court. *Id.* at 545; *see also Sterling v. Stewart,* 158 F.3d 1199, 1202 (11th Cir. 1998) (the determination of fairness of a settlement in an equity receivership will not be overturned absent a clear showing of abuse of discretion).

13.     There are "no federal rules [that] prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *Gordon,* 336 Fed. Appx. at 548-49 (*citing Liberte Capital*

*Group, LLC v Capwill*, 462 F. 3d 543, 551 (6th Cir. 2006)). Courts in receivership proceedings have looked to decision in other legal contexts, such as bankruptcy or class actions. *See, e.g., SEC v. Capital Cove Bancorp LLC,* 2016 WL 6156198. *1 (C.D. Cal., April 7, 2016) (noting that in approving a settlement, the bankruptcy court is charged with considering the "fairness, reasonableness and adequacy" of the agreement, and considers "(a) the probability of success in the litigation, (b) the difficulties to be encountered in the matter of collection, (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises") (*citing U.S. v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010)).

### The Settlement Agreement is in the Receivership Estate's Best Interest

14.     For several reasons, the Receiver believes that the Settlement Agreement is a fair and reasonable settlement for the receivership estate and in the receivership estate's best interest. While the Receiver disputes the arguments made by Coventry, these arguments demonstrate that an action against to recover the death benefit is not without litigation risk. *See Sterling*, 158 F.3d at 1203 (finding district court properly approved settlement where usurpation of corporate opportunity claims had some worth but the defenses as to those claims also had real merit). Moreover, litigation regarding this asset would be time consuming and costly, further draining the assets of the Receivership Estate. The Settlement Agreement provides a fixed recovery of approximately 93% of the investor money that Cohen used to fund the purchase of the Policy, without the substantial risk or expense of litigation. Moreover, the settlement does not preclude the Receiver from seeking to recover from third parties who are not covered by the settlement.

15.     The Receiver will provide fair, adequate and sufficient notice of this motion to all interested parties. In addition to service through the Court's electronic case filing system, the

Receiver intends to serve a copy of this motion (and the accompanying notice of motion) upon all interested parties of which he is currently aware by electronic mail (to the extent he possesses an e-mail address) or by regular mail if he possesses a mailing address but no e-mail address. A copy of this motion will also be posted on the Receiver's webpage at *http://rdaplaw.net/receivership-for-equitybuild*.

16.     The Receiver has conferred with counsel for the SEC which consents to the relief requested in this motion.

WHEREFORE, the Receiver respectfully requests that this Court grant this Motion, approve the Receiver's settlement of his claim to the Policy and death benefit consistent with the Settlement Agreement.


Dated: July 19, 2021                           Kevin B. Duff, Receiver

                            By:     /s/ Michael Rachlis
                                    Michael Rachlis
                                    Jodi Rosen Wine
                                    Rachlis Duff & Peel LLC
                                    542 South Dearborn Street, Suite 900
                                    Chicago, IL 60605
                                    Phone (312) 733-3950
                                    *mrachlis@rdaplaw.net*
                                    *jwine@rdaplaw.net*

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement") is made and entered into as of July 12, 2021 (the "Effective Date"), by and between Coventry First LLC ("Coventry") and LST III LLC ("LST"), on the one hand, and Kevin B. Duff (the "Receiver"), on the other (each of which shall be referred to individually as a "Party" and collectively the "Parties").

**WHEREAS**, Kevin B. Duff is the Court-appointed Receiver for the assets of EquityBuild, Inc., EquityBuild Finance, LLC, and all of their affiliates and the affiliate entities of defendants Jerome Cohen and Shaun Cohen in connection with the lawsuit brought by the United States Securities and Exchange Commission (the "SEC") against EquityBuild, Inc., EquityBuild Finance, LLC, Jerome H. Cohen, and Shaun D. Cohen (collectively, the "Receivership Defendants"), captioned *SEC v. EquityBuild, Inc*., *et al*., No. 18-cv-5587, pending in the United States District Court for the Northern District of Illinois, Eastern Division (the "SEC Action").

**WHEREAS**, the Order Appointing Receiver in the SEC Action dated August 17, 2018 (Docket No. 16), as amended on March 14, 2019 (Docket No. 290) and December 13, 2019 (Docket No. 603) ("the Order"), confers upon the Receiver custody, control and possession of the "Receivership Assets," as defined in the Order, and restrains and enjoins all persons, institutions, and entities with direct or indirect control over any Receivership Asset from directly or indirectly transferring, conveying, liquidating, diminishing, or otherwise disposing of or withdrawing such Receivership Assets.

**WHEREAS**, the SEC and the Receiver allege that the EquityBuild, Inc., EquityBuild Finance, LLC, Jerome Cohen and Shaun Cohen (the "Defendants") operated a Ponzi scheme through which they fraudulently induced more than 900 investors to invest at least $135 million in residential properties on the south side of Chicago, and the Court entered judgment against Jerome Cohen and Shaun Cohen, pursuant to which they must pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act. 15 U.S.C. § 77t (d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**WHEREAS**, the Receiver contends that the Defendants used funds gained through the Ponzi scheme in 2013 or thereafter to purchase and pay premiums on an individual life insurance policy bearing policy number <sup>REDACTED</sup>5293 issued by The Lincoln National Life Insurance Company ("Lincoln") providing life insurance on the life of Jerome H. Cohen (the "Policy"), and that the Policy and the net death benefit payable under the Policy constitute Receivership Assets.

**WHEREAS**, in or about May 2020, Coventry purchased the Policy pursuant to a viatical settlement contract with Dian Edwards, trustee of the Jerome H. Cohen Family Irrevocable Trust dated December 26, 2013, the named owner of the Policy, Coventry transferred its interest to LST, and the Policy ownership and beneficiary designations were changed to Wells Fargo Bank, N.A. in its capacity as Securities Intermediary for LST.

**WHEREAS**, Coventry and LST contend that: the Policy and its death benefit do not and legally cannot constitute Receivership Assets; that Coventry and LST in good faith bought the Policy for at least its fair market value and without actual or constructive notice of the SEC Action,

1



the Receivership, or any adverse claim to that Policy or its death benefit; that LST paid policy premiums after its acquisition of the Policy; and that, although the Receiver may be able to assert claims against others in connection with the funding or sale of the Policy, the Receiver has no valid claim against Coventry, LST, or Lincoln, or for the Policy or any portion of its death benefit.

**WHEREAS**, on or about January 27, 2021 Wells Fargo Bank, N.A., as LST's Securities Intermediary, submitted a claim on the Policy to Lincoln, contending that the insured, Jerome H. Cohen, had passed away in Jerusalem, Israel, on or about November 28, 2020.

**WHEREAS**, the net death benefit payable under the Policy is $967,047.68.

**WHEREAS**, the Receiver and LST each has contended that he or it is entitled to payment or distribution of the death benefit payable on the Policy, and the Parties now seek to resolve fully and finally their disputes regarding the Policy and the death benefit payable thereunder.

**NOW THEREFORE**, in consideration of the mutual promises, exchanges and forbearances set forth below, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.  **Approval**. The Parties acknowledge and agree that this Settlement is subject to the approval of the Court in the SEC Action and, therefore, will not be binding until such approval has been granted pursuant to an order entered by the Court (the "Approval"). No later than seven (7) days following the Effective Date, the Receiver will file a motion requesting the Court's approval of this Settlement and asserting that the Receiver has determined that Approval would be in the best interests of the Receivership estate and would serve the interests of justice.

2.  **Recitals**. The Parties acknowledge and agree that the foregoing Recitals are incorporated into this Settlement Agreement and made a part thereof.

3.  **Agreed Division and Distribution of Death Benefit**. In order to avoid the time, expense, and uncertainties of litigation, and to fully resolve competing claims to the death benefit, the Parties agree to the division of the net death benefit of the Policy as follows:

    a.  $120,000.00 to be paid to the Receiver by check payable to "Estate of EquityBuild, Inc." and mailed to:

        Kevin B. Duff, Receiver
        Estate of EquityBuild, Inc.
        c/o Rachlis Duff & Peel, LLC
        542 South Dearborn Street, Suite 900
        Chicago, Illinois 60605

      b.     $847,047.68 to be paid to LST by check payable to Wells Fargo Bank, N.A. and mailed (along with a Form 712) to:

> NW6182
> Attn: Chris Young
> 1801 Parkview Drive, 1st Floor
> Shoreview, MN 55126

The Parties agree to cooperate to prepare, execute, and deliver within five (5) business days of Approval to Lincoln joint instructions or such other administrative forms or directives with respect to the division and distribution of the net death benefit of the Policy consistent with the terms of this Settlement Agreement.

4.     **Mutual Releases**.

      a.     Effective upon receipt by Wells Fargo Bank, N.A. of the payment referenced in paragraph 3(b), each of Coventry and LST, on behalf of itself and each of its direct or indirect affiliates, releases the Receiver, the Receiver's counsel, each Receivership Defendant (as defined in the Order), and Lincoln (as well as each of their employees, officers, directors, owners, members, attorneys, and insurers) from any and all claims concerning the Policy, known or unknown, of any nature whatsoever, that arose from the beginning of time through the Effective Date.

      b.     Effective upon receipt by the Receiver of the payment referenced in paragraph 3(a), the Receiver, on behalf of himself, each Receivership Defendant (as defined in the Order), and each Receivership Defendant's direct and indirect affiliates, releases Coventry, LST, and Lincoln (as well as each of their employees, officers, directors, owners, members, attorneys, and insurers) from any and all claims concerning the Policy, known or unknown, of any nature whatsoever, that arose from the beginning of time through the Effective Date.

5.     **Entire Agreement:** This Agreement constitutes the entire agreement between the Parties as to the subject matter hereof and no covenants, promises, representations, or warranties have been made or are being relied upon by the Parties, except as expressly set forth in this Agreement. Any prior negotiations, discussions or agreements are merged into this Agreement and shall not operate to alter, modify, impair or affect this Agreement or the interpretation of this Agreement, and are inadmissible as evidence in any legal proceeding. No provision of this Agreement may be waived, altered or modified except in writing executed by all the Parties to this Agreement.

6.     **No Assignment:** Each of the Parties represents that he/it is the sole and current owner of the Claims released in this Agreement and that he/it has not liened, encumbered, sold, assigned, transferred, conveyed, or otherwise agreed to do such to such claims, and has full authority to release the claims.

7.     **Authority to Enter into Agreement:** The person executing this Agreement on behalf of each Party represents that he or she has been authorized and is authorized by the party on

3

whose behalf he or she is acting, to execute this Agreement.

8. **Dispute Resolution**: Any action, controversy, or claim between the Parties arising out of or relating to this Settlement Agreement shall be initiated solely in accordance with the terms of that certain Order Appointing Receiver entered by Honorable John Z. Lee in the SEC Action. The forum and venue for any such action, controversy, or claim shall be in the United States District Court for the Northern District of Illinois, Eastern Division. Coventry's and LST's agreement to this paragraph will not be construed as, or argued to be, an admission that the Policy constitutes a Receivership Asset or of any other disputed matter.

9. **Choice of Law:** This Agreement shall be interpreted and governed in accordance with the laws of the State of Illinois without regard to its rules on conflicts of law.

10. **Binding on Successors and Assigns**: All of the terms and conditions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, legatees, successors, and assigns.

11. **Execution in Counterparts**: This Agreement may be executed in one or more counterparts, each of which shall constitute an original, but all of which shall constitute one and the same instrument. Facsimile or .pdf signatures of this Agreement shall be binding.

IN WITNESS WHEREOF, the parties have caused this Release and Settlement Agreement to be signed on the dates noted below.

Kevin B. Duff, as Receiver for the
Estate of EquityBuild, Inc.

Dated: _____

Coventry First LLC

Dated: _7-13-2021_

By: _Amy Welsh_
    (printed name)

LST III LLC

Dated: _7-13-2021_

By: _Josh May_
    (printed name)

4