Case: 1:18-cv-05587 Document #: 1128 Filed: 01/14/22 Page 1 of 7 PageID #:54261

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. 1:18-cv-5587 |
| v. | Judge John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | Magistrate Judge Young B. Kim |
| Defendants. | |

## BC57, LLC'S MOTION FOR LEAVE TO TAKE DISCOVERY RELEVANT TO THE RECEIVER'S NEWLY DISCLOSED AVOIDANCE CLAIM

Claimant BC57, LLC ("BC57") moves this Court, pursuant to the Court's Order Modifying Group 1 Schedule (Dkt. 1091), for leave to take discovery relevant to the Receiver's newly disclosed avoidance claim ("Receiver's Disclosure," Dkt. 1118). In support thereof, BC57 states as follows:

1. BC57 is a so-called Institutional Lender whose secured claim to five different properties will be adjudicated in Group 1 in the claims adjudication process. (Dkt. 1004.) Group 1 includes competing claims of BC57 and approximately 175 Investor-Lenders to five properties (the "Properties"). (Dkt. 693.) BC57 has a secured interest arising from a single mortgage that encumbers the Properties (the "BC57 Mortgage"). Each of the Investor-Lenders claims one or more interests as a participant in a loan secured by a mortgage on one of the Properties (the "Investor-Lenders' Mortgages"). (Dkt. 693.) The making of BC57's Mortgage loan was contingent on the release of all prior mortgages, including the Investor-Lenders' Mortgages.

03540653 v1     1

2. The releases of all identified and recorded prior mortgages, including the Investor-Lenders' Mortgages (the "Releases"), were executed by, and obtained from, EquityBuild Finance, LLC ("EBF"). EBF also issued payoff statements and received payoffs in September 2017 consistent therewith from the proceeds of BC57's mortgage loan ("BC57 Loan Proceeds"). The Releases were then recorded with the Cook County Recorder of Deeds to perfect BC57's first lien status in the public records.

3. On November 22, 2021, this Court entered an Order Modifying Group 1 Schedule (the "Amended Group One Scheduling Order") (Dkt. 1091). The Amended Group One Scheduling Order requires lienholders to request leave of Court on or before January 14, 2022, in order to take discovery relevant to the Receiver's avoidance claim. (Dkt 1091, p. 2.)

4. After being allowed to take significant discovery, the Receiver filed his disclosure of an avoidance claim on January 7, 2022. (Receiver's Disclosure, Dkt. 1118.) The Receiver alleges that, to the extent that the Investor-Lenders' Mortgages are deemed not to be in first position, BC57's security interest in the Properties is a voidable fraudulent transfer under the Illinois Fraudulent Transfer Act, 740 ILCS 160 (the "Act"). (Dkt. 1118, p. 1.) The Receiver further acknowledges that "if the investor lenders' mortgages are deemed to be in first position, then the fraudulent conveyance issue to which this disclosure relates will essentially be mooted and neither the participants nor the Court should devote any time or expense to this matter." (*Id.*)

5. The Act requires the Receiver to prove, among other things, that EquityBuild made a transfer or incurred an obligation "with actual intent to hinder, delay, or defraud any creditor of the debtor . . ." Section 5 of the Act, 740 ILCS 160/5. In addition, even if the Receiver were to prove a fraudulent transfer, BC57's security interest would remain valid if it accepted the security interests in good faith and for reasonably equivalent value. 740 ILCS 160/9.

6. The Receiver alleges the following "inquiry notice" standard governs a "good faith" analysis pursuant to the Act:

> The first step in the inquiry notice analysis thus looks to the facts which a transferee knew. The second and third steps of the inquiry are whether the facts known by the transferee would have led a reasonable person to conduct further inquiry into the transferor's possible fraud, and whether diligent inquiry by the transferee would have discovered the fraudulent purpose of the transfer. Thus, the "good faith" inquiry includes both subjective and objective components.

(Dkt. 1118, pp. 3-4.)

7. The Receiver alleges that BC57 cannot show "good faith" because, when it received the security interest, BC57 allegedly was aware of things "that would have led a reasonable person to inquire further into the validity of the grants and that any such inquiry would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees." (Dkt. 1118, p. 4.) Although the Receiver identifies statements in various documents that he alleges would have led a reasonable person to inquire further (*i.e.,* step two above), *he discloses no facts supporting how the diligent inquiry required by step three above* "would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees." (Dkt. 1118, p. 4.)

8. Through this Motion, BC57 requests a period of forty-five (45) days to take discovery of the newly disclosed avoidance claim. The discovery would be in two discrete and limited areas relevant to the Receiver's fraudulent transfer claim. *First*, BC57 requests leave to serve a subpoena on Wells Fargo Bank, N.A. Wells Fargo held an operating account for the EquityBuild entities, and the BC57 Loan Proceeds paid in September 2017 were required to be wired by the title company to that account. The subpoena would request at least the September

2017 statement from that account and supporting documents,[1] to confirm not only the receipt of those funds but, more importantly, whether there were significant disbursements (including to Investor-Lenders) from the account shortly after the funds were received. Discovery of this information is reasonably calculated to lead to the discovery of admissible evidence relating to the Receiver's claim under the Act and BC57's defenses to same.

9. *Second*, BC57 would serve a set of contention interrogatories and supporting document requests on the Receiver to learn the evidence the Receiver believes he has to support *all* of the elements of the newly disclosed claim under the Act ("Contention Discovery"). The primary focus of the Contention Discovery would be the Receiver's claim that a diligent inquiry by BC57 "would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees." (Dkt. 1118, p. 4.) As mentioned above, the Receiver's Disclosure contains no facts regarding this issue. BC57 is entitled to ask the Receiver about this so-called "diligent inquiry" and learn from the Receiver: (1) of whom he believes BC57 was supposed to inquire; (2) what BC57 was supposed to ask; and (3) what specifically BC57 would have learned from whomever the Receiver claims it was required to inquire. The Contention Discovery would also seek information from the Receiver about all the documents he intends to rely upon to support the claim, who has personal knowledge of any facts supporting the claim, and what individual(s) he intends to call as witness(es) to support the claim. Depending on the Receiver's responses, including which individuals the Receiver discloses, BC57

---

[1] Certain other Wells Fargo statements for that account are among documents apparently gathered by the Receiver and/or the SEC from EquityBuild's files and made available to BC57 (and other parties to this litigation) via a database hosted by CloudNine containing in excess of three million documents. A search query of the database revealed those statements, but not the September 2017 statement, which presumably shows receipt of the BC57 Loan proceeds, and any immediate disbursements of those proceeds.

03540653 v1       4

respectfully seeks leave of Court to take no more than two (2) depositions during this forty-five day period.

10. The discovery BC57 requests is routinely allowed in other litigation and should be allowed in this matter. Indeed, it would be patently unfair and a deprivation of BC57's right to due process if BC57 is denied limited discovery on the Receiver's newly disclosed claim, particularly given that the Receiver was permitted to plead his claim *after* engaging in discovery.

11. Allowing this limited discovery on the claim under the Act should not impact the dates in the Amended Group One Scheduling Order. The Amended Group One Scheduling Order appears *not* to require BC57 to address the Receiver's avoidance claim until March 10, 2022, when BC57, other Claimants and the SEC must file their Responsive Statements to the Receiver's Submission regarding the claims and in support of any avoidance actions, which submission by the Receiver is due to be filed and served on February 24, 2022. (Dkt. 1091, p. 2.). In other words, the Amended Group One Scheduling Order suggests that BC57 need not respond to the Receiver's avoidance claim in its Position Statement due on January 27, 2022. (Dkt. 1091, p. 2.) The Position Statement is intended to address only the legal issue of whether the Investor-Lenders' mortgages or BC57's Mortgage is in first position and not whether BC57's Mortgage is voidable. A contrary interpretation, one that would require BC57 to brief the merits of the claim under Act *only* 20 days after first learning of the claim and without the benefit of discovery, would be unreasonable and a violation of BC57's right to due process.

12. Although the proposed discovery does not impact the Amended Group One Scheduling Order, the dates in that Order become even more compressed with the need for discovery on the avoidance claim. For that reason, and because the Receiver already possesses the information necessary to respond to the Contention Discovery, BC57 respectfully requests that the

Receiver's time to respond to the Contention Discovery be reduced from thirty to twenty-one days, to ensure all aspects of that discovery, including the sufficiency of the responses to that discovery and any depositions can be completed within the forty-five day period.

**WHEREFORE**, Claimant BC57 LLC respectfully requests that the Court grant this Motion and enter an Order allowing BC57 forty-five days of discovery limited to the newly disclosed avoidance claim, during which time BC57 may (i) serve a subpoena on Wells Fargo, (ii) serve Contention Discovery to which the Receiver must respond within twenty-one (21) days, and (iii) take no more than two depositions.

Respectfully submitted,

/s/ *Robert Horwitz*
One of the Attorneys for Claimant,
BC57, LLC

Robert M. Horwitz
(rhorwitz@maddinhauser.com)
David E. Hart
(dhart@maddinhauser.com)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Drive, 2nd Floor
Southfield, MI 48034
(248) 354-4030

Edward S. Weil
(eweil@dykema.com)
Michael A. Gilman
(mgilman@dykema.com)
Todd Gale
(tgale@dykema.com)
Benjamin W. Chertok
(bchertok@dykema.com)
Kevin Connor
(kconnor@dykema.com)
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 14, 2022, I caused the foregoing Motion for Leave to Take Discovery Relevant to the Receiver's Newly Disclosed Avoidance Claim to be electronically filed with the Clerk of Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record, and e-mailed to ebgroup1service@rdaplaw.net, which is designed to send electronic notification of such filing to all parties involved in Group 1.

                        /s/ *Robert Horwitz*