UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., ) EQUITYBUILD FINANCE, LLC, ) JEROME H. COHEN, and SHAUN ) D. COHEN, ) ) Defendants. ) ) | Civil Action No. 18-cv-5587<br><br>Hon. John Z. Lee<br><br>Mag. Judge Young B. Kim |

## POSITION STATEMENT

### I. Claimant Name

Deborah L. Mullica/Spectra Investments, LLC

### II. The Property or Properties in which you assert an interest

[＿＿] #74 - 3074 Cheltenham Place a/k/a 7836 S Shore Drive
[＿＿] #75 - 7625-33 S East End Avenue
[＿＿] #76 - 7635-43 S East End Avenue
[ X ] #77 - 7750-58 S Muskegon Avenue a/k/a 2818-36 E 78th Street
[＿＿] #78 - 7201 S Constance Avenue a/k/a 1825-31 E 72nd Street

### III. Introduction:

A promissory note for $2,250,000 ("$2.25M Note") between a number of individual lenders ("Lenders"), including me, and EquityBuild, Inc. ("Borrower" or "EquityBuild") was executed on or about December 30, 2014, with a maturity date of January 1, 2017. **Exhibit A – 2.25M Note.**[1] The Note was secured by a mortgage

---

[1] I am also in possession of a second promissory note between the same parties on the same date in a different amount, $2,100,000 ("2.1M Note"). **Exhibit B – 2.1M Note.** The 2.25M

("Mortgage") on 7752 S. Muskegon Ave., Chicago, IL 60649 ("Property") for the same amount. **Exhibit C – Mortgage.** My fractional interest in the Note appears to be 3.92%.[2] *See* list of lenders labeled "Exhibit A" attached to **Exhibit C – Mortgage**. The Mortgage is identified by PIN# 21-30-400-034-000.

My 3.92% ownership was obtained by a principal investment of $82,255. I received $34,917.37 in interest payments (**Exhibit G – Interest Spreadsheet**) and $0.00 of my principal investment from Borrower for this Property.

IV. **Amount of Claim:**

Under the terms of the Note, and for the reasons set forth below, my Total Claim is $156,431.83.

| | | | |
|---|---|---|---|
| **Outstanding Principal Balance** | | | $82,255.00 |
| **Interest daily at 12%** | | $27.04 | |
| **Accrued Interest** | | | $69,094.20 |
| **Less Interest Paid** | | | ($34,917.37) |
| **GROSS CLAIM** | | | $116,431.83 |
| Attorneys' Fees (est.) | | | $40,000.00 |
| | | | |
| **TOTAL CLAIM** | | | $156,431.83 |

V. **Facts and Evidence Supporting Claim:**

Any purported release of the Mortgage was obtained fraudulently and without my knowledge or consent. **Exhibit H – Affidavit of Deborah L. Mullica.**

Furthermore, the refinance loan from BC57, LLC ("BC57") in the amount of $5,328,433.43 did not cover the payoff amount of the five properties in Group 1. Payoff of the Mortgage was a condition precedent to the release. **Exhibit I – Fraudulent Release.** The Receiver reports that the payoff letters reflected that the outstanding principal loan balance for the 5 properties totaled only $4,944.850, "suggesting that more than half the aggregate principal balances had been repaid over periods ranging

---

Note and the 2.1M Note appear to be copies of the same instrument, but for two different amounts.

[2] I am also in possession of a copy of a 2.1M Note with an Exhibit A indicating a 3.92% ownership interest (**Exhibit D – 2.1M Note with 3.92% Exhibit**), a copy of a 2.25M Note with an Exhibit A indicating 3.66% ownership interest (**Exhibit E – 2.25M Note with 3.66% Exhibit**), and an attachment to a copy of the Mortgage reflecting a 3.66% ownership interest (**Exhibit F – Mortgage with 3.66% Attachment**).

2

from 12 to 30 months." This would have been suspicious to a reasonably prudent person because the loans were interest-only and substantial principal paydowns were not realistic since the properties were operating at a loss. *See* **Exhibit J – January 7, 2022 Receiver's Disclosure, pp. 5-6.** Furthermore, "[p]ublicly recorded documents, available to BC57 and its delegated agents at the time, showed that the prior mortgages associated with the five properties being refinanced were nearly double the purchase prices of the properties." *Id.* Thus, the aggregate principal balances of the 5 property mortgages involved in the refinance was at least $10,000,000, and likely more. "BC57 neither compared the original mortgage balances to the payoffs nor inquired as to why the payoffs were so steeply discounted." *Id.* citing Jarjosa Dep., 110:10-111:22).

The Position Statement of Mark Young dated January 23, 2022 describes the facts of the release of the Mortgage on Muskegon and Cheltenham parcels which were not even tendered to the investors / note holders for approval and the errors of that procedure:

> [A]ny reasonable person would review the document and see that the release requires the signature of all the individual lenders. Alternatively, the representatives of the lender could have contacted any of the individual lenders listed on the mortgage to determine if we granted the right to EBF to transfer our secure interest. The inquiry was never made, a release was never requested, nor was any release given.... [T]he Collateral Agency and Servicing Agreement among EquityBuild Finance, LLC and each of the Lenders... states in paragraph 6(a) on page 6 that "the Collateral Agent shall act only on written instructions from all Lenders with respect to the amendment or termination of the Mortgage. It is clear EBF cannot transfer the collateral or release the lien without the signatures of all the lenders....

Young Position Statement at 2- 3.

Under these circumstances, I should continue to have a first priority lien for the entire amount of my claim, and BC57's interest as well as the interests of any other lienors who benefited from the release of the Mortgage on Muskegon should be subordinated to my interest and the interests of the individual investor lenders.

### VI. Legal Authority and Argument

**a. Fraudulent Release (Unauthorized Signature).** The release of the Mortgage obtained by Hard Money Company, LLC ("Hard Money") from me was

fraudulent. The release clause was superimposed on a document containing my signature. This constitutes an unauthorized use of my signature under 810 Ill. C.S.A. 5/1-201(41) ("Unauthorized signature" means a signature made without actual, implied, or apparent authority. The term includes a forgery."). "An unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value." 810 Ill. C.S.A. Ann. 5/3-403(a).

   **b. Fraudulent Alteration.** The alteration of the Exhibit A to the Mortgage to look like a *bona fide* release of mortgage was fraudulent as it is "an unauthorized change in an instrument that purports to modify in any respect the obligation of a party." 810 Ill. C.S.A. 5/3-407(a)(1).

   **c. Fraudulent Transfer.** The security interest given by EquityBuild to BC57 in the Property constitutes a voidable fraudulent transfer under the Illinois Uniform Fraudulent Transfer Act, 740 ILCA 160 for the reasons set forth in the January 7, 2022 Receiver's Disclosure.[3] **Exhibit J**.

   **d. Fraud in the Inducement.** I was fraudulently induced to release the mortgage to Hard Money. The elements of the tort of fraud in the inducement are a false representation of material fact, made with knowledge or belief of that representation's falsity, and made with the purpose of inducing another party to act or to refrain from acting, when the other party reasonably relies upon the representation to its detriment. *Enter. Recovery Sys., Inc. v. Salmeron*, 927 N.E.2d 852, 858 (Ill. App. 2010). All of the elements are satisfied here. The representations made by EquityBuild and Hard Money were false; they never had the intention to perform the contract. If a party has been induced by misrepresentation to execute a negotiable instrument, the paper may not be enforceable against the signer even if it comes into the hands of a holder in due course. *See* 810 Ill. C.S.A. 5/3-305(a)(1).

   **e. Breach of Fiduciary Duty.** The purported agent, Hard Money, breached its fiduciary duty to me. To state a claim of breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) such breach proximately caused the injury of which the party complains. *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E.2d 414, 433 (Il. 2012). All of the elements have been met in this case. Hard Money received short payoffs on the Group 1 mortgages and therefore breached its duty to the investor lender note

---

[3] I am aware that BC57 is seeking discovery on the question of what it should have done differently in the refinancing of the 5 properties in Group 1 in response to the assertions made in the January 7, 2022 Receiver's Disclosure. However, the mere facts that (1) no consent of the investors/lenders for the release of the Mortgage on Muskegon was sought or obtained and (2) BC57 and EquityBuild and its affiliates derived an unfair and unlawful advantage from the heavily discounted payoff at the expense of the lenders / note holders for no legitimate reason is enough to have put BC57 and others on inquiry notice.

holders by failing to achieve full and complete payoffs of the loans before releasing the liens.

**f. Equitable Subordination of BC57 and Other Lienors.** For the reasons set forth above, BC57's security interest, and any security interest which claims to be prior to the lien of the Mortgage should be equitably subordinated to the positions of the individual investor lenders' claims. The mere relationship between EquityBuild Finance, the servicing agent, and EquityBuild, the debtor, as well as the deeply discounted mortgage payoffs, which allowed BC57 to acquire a fist position mortgage lien to the detriment of the investors, like me, was enough to put BC57 and other lienors on inquiry notice that fraud was involved. The principle of equitable subordination allows a court to alter the priority of claims or liens where there has been a breach of the covenant of good faith and fair dealing, insider actions, fraud, etc. *See e.g., Citicorp Venture Capital, Ltd. v. Committee of Creditors*, 323 F.3d 228 (2003) (equitable subordination was warranted where debtor's insider's pursuit of its own interest was prioritized over and above the rights of others).

## VII. Relief Requested

As such, I am entitled to the following relief:

a. Equitable subordination of BC57's interest and the interests of those benefited by the improper release of the Mortgage on the Muskegon property to my interest and rights and those of the other individual investor lenders secured by that property.

b. Payment of my claim amount of $156,431.83, which includes principal, interest, and attorneys' fees.

c. For the Receiver to take such action as may be necessary and appropriate to settle claims on behalf of the individual investor lenders against BC57 and other beneficiaries of the misconduct relating to the Mortgage and the affiliates of EquityBuild to the fullest extent of the law.

DATED: January 24, 2022

_____
CLAIMANT SIGNATURE


_DEBORAH L. MULLICA_
PRINTED NAME OF CLAIMANT
Deborah L. Mullica, individually and
as Agent for Spectra Investments,
LLC


Prepared by S&D Law


/s/ Thomas M. Haskins III
_____
Thomas M. Haskins III, #17651
Taryn H. VanDeusen, #55318

*Attorney for Spectra Investments LLC/
Deborah L. Mullica*