# COLLATERAL AGENCY AND SERVICING AGREEMENT

among

## EQUITYBUILD FINANCE, LLC,

as Collateral Agent and Loan Servicer,

and

## EACH OF THE LENDERS PARTY HERETO

### DATED AS OF  6/12/2016

25325308.8

**CONFIDENTIAL**

**IPLAN007898**

**SEC-CDS-E-0040489**

DocuSign Envelope ID: D1625EB4-B016-4E6F-8910-C7E80D1E89EC

## COLLATERAL AGENCY AND SERVICING AGREEMENT

This **COLLATERAL AGENCY AND SERVICING AGREEMENT** (as amended, supplemented or otherwise modified from time to time, this "**Agreement**") is made as of ___6/12/2016___, by and among (i) EquityBuild Finance, LLC, a Florida limited liability Borrower (in its individual capacity, "**EBF**", and in its capacity as collateral agent for the Lenders (as defined below), and in its capacity as loan servicer for the Lenders, the "**Collateral Agent**" or the "**Servicer**"), and (ii) each of the Lenders party hereto (together with their respective successors and assigns as beneficiaries of the Note (as defined below), the "**Lenders**"), and is acknowledged, consented and agreed to by EquityBuild, Inc. (the "**Borrower**").

### RECITALS

**A.** Reference is made to that certain Note, dated ___06/29/2016___ (as the same from time to time hereafter may be amended, restated, supplemented or otherwise modified, the "**Note**") by the Borrower in favor of the Lenders, pursuant to which, subject to the terms and conditions set forth therein, the Lenders shall make individual investment loans (each an "**Investment**") to the Borrower as a collective secured loan (the "**Loan**").

**B.** The Lenders have agreed to make the Loan to the Borrower, but only upon the condition, among others, that the Borrower grant to the Collateral Agent, for the benefit of the Lenders, as security for the Borrower's obligations to the Lenders and the Collateral Agent under or in respect of the Note and the Mortgage (as defined below), a perfected lien on, and security interest in, the Collateral (as defined below).

**C.** The Lenders desire that EBF act as the collateral agent for and on behalf of all of the Lenders regarding the Collateral, all as more fully provided herein; and the Collateral Agent and the Lenders have entered into this Agreement to, among other things, further define the rights, duties, authority and responsibilities of the Collateral Agent and the relationship among the Lenders regarding their *pari passu* interests in the Collateral.

**D.** The Lenders also desire to retain EBF as the loan servicer to act as their agent to employ commercially reasonable and prudent practices to collect all scheduled payments on the Loan, and to protect to the best of the Servicer's ability, the security for the Loan.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, EBF and the Lenders agree as follows:

2

25325308.8

**CONFIDENTIAL**                                                                                       **IPLAN007899**

SEC-CDS-E-0040490

DocuSign Envelope ID: D162E4B4-B016-4E6F-B910-C7E80D1E89EC

## 1. DEFINED TERMS.

As used in this Agreement, and unless the context requires a different meaning, the following terms have the respective meanings indicated below, all such definitions to be equally applicable to the singular and plural forms of the terms defined.

*Actionable Default* — means the existence and continuance of any Event of Default (as defined in the Note) beyond any grace period in respect thereof provided in the Note or the acceleration of the maturity of the Note.

*Affiliate* — means, with respect to any specified Person, any other Person that directly or indirectly, through one or more intermediaries, has control of, is controlled by, or is under common control with, such specified Person. For these purposes, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management of any Person, whether through the ownership of voting securities, by contract or otherwise.

*Agent Professionals* — means attorneys, legal counsel, accountants, appraisers, business valuation experts, environmental engineers, turnaround consultants, or other professionals or experts at any time retained by EBF in the discharge of its duties hereunder or under any of the Collateral Documents.

*Agent-Related Persons* — means EBF, in its capacity as Collateral Agent or Servicer, and any successor collateral agent or loan servicer, and any co-agents or separate agents appointed pursuant to Section 5, together with their respective Affiliates, and the officers, directors, employees, representatives, agents and Agent Professionals of such Persons and Affiliates.

*Agreement* – has the meaning specified for such term in the Preamble hereto.

*Business Day* — means a day (i) other than Saturday or Sunday and (ii) on which commercial banks are open for business in New York, New York.

*Collateral* – has the meaning specified for such term in Mortgage.

*Collateral Agent* – has the meaning specified for such term in the Preamble hereto.

*Collateral Documents* — means the Mortgage and any other document now or hereafter evidencing a security interest, lien or other encumbrance granted to secure the obligations payable under the Note or any guarantee thereof.

*Enforcement Notice* — means a written notice given by the Required Lenders to the Collateral Agent stating that an Actionable Default exists.

*EBF*— has the meaning specified for such term in the Preamble hereto.

*Lenders* — has the meaning specified for such term in the Preamble hereto.

3

25325308.8

SEC-CDS-E-0040491

*Liens* -- means any pledges, liens, claims, encumbrances or security interests.

*Mortgage* -- has the meaning specified for such term in Note.

*Obligations* -- means and includes all present and future indebtedness, obligations and liabilities of every kind and nature of the Borrower from time to time owed to any Lender under the Note arising from, evidenced by or relating to the Note or the Mortgage.

*Note* -- has the meaning specified for such term in Recital A hereto.

*Person* -- means any individual, partnership, corporation, limited liability Borrower, unincorporated organization or association, trust or other entity.

*Required Lenders* -- means the Lenders acting by a majority of principal advanced by the Lenders under the Note.

*Servicer* -- has the meaning specified in the Preamble hereto.

*Total Investments* -- means, with respect to Investments that remain outstanding in whole or in part, the total original amount of Investments a Lender has loaned to the Borrower; provided that for purposes of Section 10(e) hereof, such amounts shall be rounded down to the nearest whole $25,000 increment. By way of example only, if actual Total Investments equaled $176,000, for purposes of Section 10(e), such Total Investments would equal $175,000.

## 2. APPOINTMENTS; IRREVOCABLE DELEGATION OF AUTHORITY.

### (a) Appointment as Collateral Agent and Loan Servicer.

The Lenders hereby appoint and designate EBF as collateral agent on their behalf hereunder and under the Mortgage. The Lenders hereby also appoint and designate EBF as the loan servicer with respect to the Loan. EBF hereby accepts such appointments on the terms and conditions set forth herein and acknowledges that it holds the Collateral and acts under the Mortgage as agent for and on behalf of the Lenders. The Lenders hereby authorize and direct the Collateral Agent to (a) enter into the Mortgage and the Note for and on behalf of and for the benefit of the Lenders in accordance with the terms hereof and thereof, (b) exercise such rights and powers under this Agreement, the Note or the Mortgage as the case may be, as are specifically granted or delegated to the Collateral Agent by the terms hereof and thereof, together with such other rights and powers as are reasonably incidental thereto or as are customarily and typically exercised by agents performing duties similar to the duties of the Collateral Agent hereunder and under the Collateral Documents, subject, however, to any express limitations set forth herein or in the Mortgage, and (c) perform the obligations of the Collateral Agent thereunder. The Lenders hereby agree to be bound by the provisions of the Mortgage and the Note. The duties of the Collateral Agent and the Servicer shall be deemed ministerial and administrative in nature, and neither the Collateral Agent nor the Servicer shall have, by reason of this Agreement or either of the Mortgage or the Note, a fiduciary relationship with any Lender and/or any Affiliate thereof.

4

25325308.8

**CONFIDENTIAL**

**IPLAN007901**

SEC-CDS-E-0040492

**(b) Irrevocable Delegation of Authority.**

Each Lender does hereby irrevocably delegate to the Collateral Agent all of each such Lender's rights and powers under the Note and the Mortgage and agrees for the benefit of the Collateral Agent and the other Lenders not to exercise any right or power of such Lender under the Note or the Mortgage.

## 3. LIMITATIONS ON DUTIES AND ACTIONS OF COLLATERAL AGENT AND THE SERVICER.

Neither the Collateral Agent nor the Servicer shall have any duties or responsibilities except those expressly set forth in this Agreement and the Mortgage. Neither the Collateral Agent nor the Servicer shall be liable for any action taken or omitted by it, or any action suffered by it to be taken or omitted, excepting only its own gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction. IN THE ABSENCE OF WRITTEN INSTRUCTIONS FROM THE REQUIRED LENDERS, NEITHER THE COLLATERAL AGENT NOR THE SERVICER SHALL FORECLOSE UPON ANY LIEN WITH RESPECT TO ANY OF THE COLLATERAL OR TAKE ANY OTHER ACTION WITH RESPECT TO THE COLLATERAL OR ANY PART THEREOF.

## 4. RECOURSE THROUGH COLLATERAL AGENT; SHARING OF COLLATERAL.

**(a) Recourse Through Collateral Agent.**

Each of the Lenders acknowledges and agrees that (i) it shall only have recourse to the Collateral through the Collateral Agent and that it shall have no independent recourse to the Collateral and (ii) the Collateral Agent shall have no obligation to, and shall not, take any action hereunder or under the Mortgage except upon written instructions from the Required Lenders in accordance with Section 6(a).

**(b) Sharing of Collateral.**

No Lender shall contest the validity, perfection, priority or enforceability of, or seek to avoid, any Lien securing any Obligation, and each party hereby agrees to cooperate, at no cost to the Collateral Agent, in the defense of any action contesting the validity, perfection, priority or enforceability of any such Lien. No Lender shall have the right to obtain any of the Collateral or the benefit of any Lien on any property of the Borrower solely in respect of Obligations owing to such Lender or any group of Lenders comprised of less than all the Lenders.

## 5. CO-AGENTS; COLLATERAL AGENT'S AND SERVICER'S USE OF PROFESSIONALS.

**(a) Co-Agents.**

Each of the Collateral Agent and the Servicer shall have power to appoint one or

5

25325308.8

**CONFIDENTIAL**                                                        **IPLAN007902**

SEC-CDS-E-0040493

DocuSign Envelope ID: D162E4B4-B016-4E6F-B910-C7E89D1E89EC

more Persons to act as a co-agent or co-agents, jointly with the Collateral Agent and/or the Servicer, or to act as a separate agent or separate agents, with respect to all or any part of the Collateral or to enforce the Lender's rights under the Note, and to vest in such Person or Persons, in such capacity, such rights, powers, duties and obligations of the Collateral Agent and/or the Servicer, with the consent of the Required Lenders (such consent not to be unreasonably withheld or delayed), in any case only as may be necessary or desirable for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Collateral may at the time be located. Absent any specific agreement to the contrary, any co-agent or co-agents or separate agent or separate agents so appointed shall, to the extent applicable, have the rights, powers, obligations and duties of the Collateral Agent and/or the Servicer hereunder. Neither the Collateral Agent nor the Servicer shall be responsible for the negligence, default or misconduct of any such co-agent or separate agent selected by it with reasonable care nor for any fees or expenses of such co-agent or separate agent.

**(b)  Agent Professionals.**

The Collateral Agent and the Servicer may employ one or more Agent Professionals to advise or assist it from time to time, but shall not be responsible for the negligence, default or misconduct of any such Agent Professionals selected by it with reasonable care. The Collateral Agent and the Servicer shall be entitled to rely on the advice and statements of Agent Professionals so selected. The Borrower shall pay reasonable remuneration for all services performed by Agent Professionals for the Collateral Agent and the Servicer in the discharge of its duties hereunder and under the Collateral Documents in accordance with Section 11(b) hereof.

**6.  INSTRUCTIONS FROM LENDERS; ENFORCEMENT NOTICE.**

**(a)  Instructions from Lenders.**

Unless otherwise excused as provided herein, both the Collateral Agent and the Servicer shall act on all written instructions received from the Required Lenders, with respect to any action to be taken or not to be taken in connection with this Agreement, the Mortgage or the Note, including, without limitation, actions to be taken in connection with an insolvency proceeding in respect of the Borrower; *provided, however,* that the Collateral Agent shall act only on written instructions from all Lenders with respect to the amendment or termination of the Mortgage, or, except as provided in the Mortgage, any Lien on property of the Borrower granted under the Mortgage. If either the Collateral Agent or the Servicer shall request instructions from the Lenders with respect to taking any particular action in connection with this Agreement, the Mortgage, the Note or any such Lien, the Collateral Agent and the Servicer shall be entitled to refrain from taking such particular action unless and until it shall have received written instructions from the Required Lenders (in which event it shall be required to act in accordance with such written instructions unless otherwise excused as provided herein), and neither the Collateral Agent nor the Servicer shall incur any liability to any Person for so refraining. Without limiting the foregoing, no Lender shall have any right of action whatsoever against the Collateral Agent or the Servicer as a result of the Collateral Agent or the

6

25325308.8

SEC-CDS-E-0040494

DocuSign Envelope ID: D1625AB4-B016-4E6F-B910-C7E80D1E89EC

Servicer taking or not taking any action hereunder or pursuant to or in accordance with the written instructions of such Required Lenders, except for the Collateral Agent's or the Servicer's own gross negligence or willful misconduct in connection with any action taken or not taken by it, as finally determined by a court of competent jurisdiction. Notwithstanding anything to the contrary contained in this Agreement or any of the Collateral Documents, (i) the failure of the Collateral Agent or the Servicer to take any action shall not constitute gross negligence or willful misconduct by the Collateral Agent or the Servicer hereunder (A) following a request by the Collateral Agent or the Servicer for the Required Lenders' consent to such action and the failure of the Required Lenders to respond to such request or (B) in the absence of written instructions from the Required Lenders and (ii) neither the Collateral Agent nor the Servicer shall be required to take any action that is, in its opinion (which may be, but is not required to be, based on the advice of legal counsel), contrary to applicable law or the Note or the Mortgage or that would, in its reasonable opinion, subject it or any Agent-Related Persons to liability or that would require it to expend or risk its own funds.

**(b) Enforcement Notices.**

The Collateral Agent shall, as soon as practicable but in any event, if applicable, within ten (10) Business Days following receipt thereof, furnish to each of the Lenders:

(i) a copy of each Enforcement Notice received by the Collateral Agent;

(ii) a copy of each certificate or other written notice received by the Collateral Agent rescinding or withdrawing an Enforcement Notice;

(iii) a copy of any written notice or other written communication given or received by the Collateral Agent under the Note or the Mortgage; and

(iv) such other written notices required by the terms of this Agreement to be furnished by or to the Collateral Agent.

Any Enforcement Notice shall be deemed to have been given when actually received by the Collateral Agent and to have been rescinded or withdrawn when the Collateral Agent has actually received from the notifying party a written notice rescinding or withdrawing such Enforcement Notice. Any Enforcement Notice shall be deemed to be outstanding and in effect at all times after such notice has been given until such time, if any, as such notice has been rescinded or withdrawn.

**7. NO RESPONSIBILITY OF COLLATERAL AGENT OR SERVICER FOR CERTAIN MATTERS.**

Neither the Collateral Agent nor the Servicer shall be responsible in any manner whatsoever for the correctness of any recitals, statements, information, representations or warranties contained herein or in the Mortgage except for those made by it herein. Neither the Collateral Agent nor the Servicer makes any representation or warranty as to, and is not responsible in any way for: (i) the description, value, location, existence, or condition of any Collateral; (ii) the financial condition of the Borrower or the title of the

7

25325308.8

**CONFIDENTIAL**

**IPLAN007904**

SEC-CDS-E-0040495

DocuSign Envelope ID: D1626484-B016-4E6F-9910-C7E80D1E89EC

Borrower to any of the Collateral; (iii) the sufficiency of the security afforded by this Agreement, the Note or the Mortgage or whether registration in respect thereof has been properly effected or maintained; (iv) the validity, genuineness, correctness, perfection, or priority of any Lien with respect to the Collateral; (v) other than in respect of itself as to the Collateral Agent's and the Servicer's representations in Section 15(p) hereof, the validity, proper execution, enforceability, legality, or sufficiency of this Agreement, the Note, the Mortgage or any instrument deposited with the Collateral Agent or the Servicer; (vi) the identity, authority or right of any Lender executing any document; or (vii) the filing or renewal of any registration of the Mortgage or any public filing required under applicable law to perfect any of the Collateral Agent's Liens, for the benefit of the Lenders, in any of the Collateral. Neither the Collateral Agent nor the Servicer shall be required to ascertain or inquire as to the performance by the Borrower of any of its covenants or obligations hereunder or under the Mortgage or the Note. In no event shall either the Collateral Agent or the Servicer be responsible or liable for special, indirect, or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Collateral Agent or the Servicer has been advised of the likelihood of such loss or damage and regardless of the form of action.

## 8. LIMITED DUTIES OF COLLATERAL AGENT REGARDING COLLATERAL; FURTHER ACTS WITH RESPECT TO COLLATERAL.

(a) The Collateral Agent shall not be responsible for insuring any of the Collateral or for the payment of taxes, charges, fines, levies, assessments or for ensuring or protecting the validity, genuineness, correctness, perfection, or priority of any Lien upon any of the Collateral, and shall be indemnified therefor as provided in Section 12. Furthermore, the Collateral Agent shall not be responsible for the maintenance or safeguarding of any Collateral, except as provided in the immediately following sentence when the Collateral Agent has actual possession of any Collateral. The Collateral Agent shall not have any duty to any of the Lenders with respect to any Collateral, including, without limitation, any Collateral in its possession or control or in the possession or control of any agent or nominee of the Collateral Agent selected by it with reasonable care, or any income therefrom or for the preservation of rights against prior parties or any other rights pertaining to the Collateral, except as stated in the next succeeding paragraph.

(b) Beyond the exercise of reasonable care in the custody thereof and the duty to account for monies actually received by it, the Collateral Agent shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or bailee or any income thereon or as to preservation of rights against prior parties or any other rights pertaining thereto and the Collateral Agent shall not be responsible for filing any financing or continuation statements or recording any documents or instruments in any public office at any time or times or otherwise perfecting or maintaining the perfection of any security interest in the Collateral. The Collateral Agent shall be deemed to have exercised reasonable care in the custody of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which it accords its own property and shall not be liable or responsible for any loss or diminution in the value of any of the Collateral, by reason of the act or omission of any carrier, forwarding agency or other agent or bailee selected by the Collateral Agent with

8

25325308.8

SEC-CDS-E-0040496

DocuSign Envelope ID: D162E4B4-B016-4E6F-B910-C7E80D1E89EC

reasonable care. The Collateral Agent shall not be responsible for the existence, genuineness or value of any of the Collateral or for the validity, perfection, priority or enforceability of the Liens in any of the Collateral, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder, except to the extent such action or omission constitutes gross negligence, bad faith or willful misconduct on the part of the Collateral Agent, or for the validity or sufficiency of the Collateral or any agreement or assignment contained therein, for the validity of the title of the Borrower to the Collateral, for insuring the Collateral or for the payment of taxes, charges, assessments or Liens upon the Collateral or otherwise as to the maintenance of the Collateral.

## 9. DUTIES AS LOAN SERVICER.

### (a) Specific Loan Services/Functions.

In its capacity as the Servicer, EBF shall: (a) issue payment coupons or monthly statements to the Borrower directing Loan repayment to the Lenders or the Servicer; (b) issue payoff demands, beneficiary statements and mortgage ratings; (c) demand, receive and collect all Loan payments, deposit them by the next business day into the Servicer's trust account and/or facilitate having them paid directly to Lender, in each case within 25 days of the date due; (d) issue annual Form 1099 income tax statements to the Borrower and Lenders; (e) answer Borrower inquiries, demands and requests; (f) grant appropriate payment deferrals, but not of the maturity of the Loan unless approved by the Required Lenders; (g) monitor the continued effectiveness and claims on any property insurance listed in the Loan escrow instructions; (h) request and receive notices of default on senior liens; (i) receive notices of property tax delinquencies, should a tax service be ordered through escrow or subsequently; and (j) execute and deliver on Lenders' behalf and in Lenders' name any documents necessary or convenient for the purpose of maintaining or enforcing the Loan.

### (b) Protective Advances.

Upon request of the Servicer, Lenders shall make such advances as approved by the Required Lenders to be necessary and prudent to protect and to collect Lenders' interest in the Loan. If any Lender fails to make advances approved by the Required Lenders, the other Lenders are authorized to advance the amount the non-paying Lender failed to advance and to receive payment in full with interest at 10% per annum before any further payments are made to the non-paying Lender and, the non-defaulting Lenders shall also have the option, exercisable within 30 days after Lender's failure to pay, to purchase such Lender's interest in the Loan for the outstanding principal balance and any accrued interest, fees and costs owed to the defaulting Lender, payable within 15 days after the election to purchase is made. The Servicer, in its absolute discretion, may advance its own funds to protect the security of the Loan, including advances to cure senior liens, property insurance, foreclosure expenses, repair, advertising, litigation expenses and similar items, but not Loan payments. The Servicer shall be reimbursed such advances, with interest at the interest rate then payable with respect to the Loan, from the next Loan payment, or within 10 days after a written request to Lenders. To secure the Servicer's

9

25325308.8

**CONFIDENTIAL**                                                                 **IPLAN007906**

SEC-CDS-E-0040497

DocuSign Envelope ID: D16254B4-9943-4E5F-B910-C7E80D1E69E9

advances, Lenders hereby irrevocably assign to the Servicer, to the extent of advances owed to the Servicer, the first Loan payments received after an advance is made. A defaulting or non-paying Lender will be liable to the remaining Lenders for all damages incurred as result of his/her/their failure to act or failure to advance funds including, but not limited to, actual attorneys' fees, court costs and fees, or any damages related to loss of the security for the Loan.

**(c) Loan Documents.**

To the extent not maintained by the Collateral Agent, the Servicer shall retain custody as agent for Lenders of the original Note and Mortgage.

**(d) Real Estate Owned.**

The Servicer is also Lenders' agent (in conjunction with the Collateral Agent) to liquidate any real estate acquired by Lenders in foreclosure of the property securing the Loan (the **"Property"**). During the foreclosure process, the Servicer's servicing fee shall continue as set forth in Section 12 herein. Additionally, at the option of Lenders and by separate fee agreement to be signed by the parties, the Servicer shall: (i) arrange appropriate property insurance; (ii) manage the Property, including arranging maintenance and construction, tenant relations, repair and security; (iii) arrange for the valuation and resale of the Property, including hiring a Realtor® or broker to list, show and sell the Property; and (iv) accept reasonable offers on the Property, at the price and terms approved by the Required Lenders and execute all necessary and appropriate documentation to carry out the sale.

**(e) Servicing Fees.**

The Servicer's fee to each Lender to service any Loan shall be up to 4% interest per annum on the Investment made by such Lender in the Loan, as such amount may adjust from time to time upon making an Investment in the Loan (or upon making Investments in any other Loan) in accordance with this Section 9(e). The Servicer's fee to a Lender in respect of its Investment is calculated as follows:

(i) 1.5% interest per annum on the Investment if either: (a) the original Investment in the Loan equals or exceeds $360,000; or (b) the original amount of the Total Investments equals or exceed $1,010,000; or

(ii) For so long as clause (i) is not applicable, 2.5% interest per annum on the Investment if either: (a) the original Investment in the Loan equals or exceeds $210,000; or (b) the original amount of the Total Investments equals or exceeds $510,000; or

(iii) For so long as clauses (i) or (ii) are not applicable, 3.5% interest per annum on the Investment if either: (a) the original Investment in the Loan equals or exceeds $110,000 or (b) the original amount of the Total Investments equals or exceeds $260,000; or

10

25325308.8

**CONFIDENTIAL**

**IPLAN007907**

SEC-CDS-E-0040498

DocuSign Envelope ID: D16254B4-99A3-4E9F-8910-G7E80D1E69E9

(iv)     For so long as clauses (i), (ii) or (iii) are not applicable, 4% interest per annum on the Investment in the Loan.

The fee is deducted from the interest payment payable by the Borrower under the Note.  The Servicer shall be further compensated for work in respect of delinquent payments or other default by Borrower by assessing and receiving late charges, and by collecting an additional 2% of the principal amount of the Loan of any payments (whether interest or late fees) made to Lenders (or for their benefit) after the assessment of default interest on the Borrower under the Note that equal or exceed 2% interest per annum of the principal amount of the Loan.  Said additional amounts shall only be collected if default interest is, in fact, charged to the Borrower.  Lenders shall receive any benefit of the default interest rate and late fee payments in excess of the 2% interest per annum on the principal amount of the Loan collected by the Servicer.

### (f)   Origination Fee.

On the Closing Statement of the Loan the Collateral Agent may charge the Borrower an origination fee ("**Origination Fee**") of up to 5% of the principal amount of the Loan.

## 10.  RELIANCE ON WRITINGS.

Both the Collateral Agent and the Servicer shall be entitled and fully authorized to rely and act, and shall be fully protected in relying and acting, upon any writing, instruction, resolution, notice, consent, certificate, affidavit, letter, telegram, facsimile, telex or other document believed by it to be genuine and correct and to have been signed or sent by or on behalf of the proper Person or Persons, and statements of the Borrower (including, without limitation, counsel to the Borrower) or the Lenders.  Neither the Collateral Agent nor the Servicer shall have any duty to verify or confirm the content of any writing, instruction, resolution, notice, consent, certificate, affidavit, letter, telegram, facsimile, telex or other document.

11

25325308.8

SEC-CDS-E-0040499

DocuSign Envelope ID: D16254B4-9043-4E5F-B910-C7E80D1E69E9

## 11. RESIGNATION AND REMOVAL OF COLLATERAL AGENT AND/OR SERVICER.

### (a) Resignation or Removal.

Both the Collateral Agent and the Servicer may at any time resign, effective upon 30 days prior written notice (or such shorter period as may be agreed to by the Required Lenders and such party) to the Lenders and the Borrower, and either may be removed for or without cause at any time by the Required Lenders, effective upon 30 days' notice. In the event of any resignation or removal, the Required Lenders shall have the right to appoint a successor Collateral Agent and/or Servicer (which successor Collateral Agent and/or Servicer may be one of the Lenders or a financial institution that is engaged in the provision of agency services in syndicated commercial loan transactions or a trust Borrower that is engaged in the provision of trust services in secured private placement transactions), but, if the Required Lenders have not appointed a successor Collateral Agent and/or Servicer, as the case may be, within 30 days after the resigning Collateral Agent's and/or Servicer's giving of notice of resignation or its removal, the retiring Collateral Agent and/or Servicer, as the case may be, shall, at the expense of the Borrower, on behalf of the Lenders, subject to the above provision regarding the identity and nature of a permissible successor Collateral Agent and/or Servicer, either appoint a successor Collateral Agent and/or Servicer or apply to the appropriate court to make such appointment. Upon the acceptance of any appointment as a Collateral Agent and/or Servicer, as the case may be, hereunder by a successor, to be evidenced by the successor Collateral Agent's or Servicer's, as the case may be, execution and delivery to the Borrower, the Lenders and the retiring Collateral Agent and/or Servicer, as the case may be, of a counterpart of this Agreement, such successor Collateral Agent and/or Servicer, as the case may be, shall thereupon succeed to and become vested with all the rights, powers, privileges, duties and obligations of the retiring Collateral Agent and/or Servicer, as the case may be, and the retiring Collateral Agent and/or Servicer, as the case may be, shall be discharged from any further duties and obligations as Collateral Agent and/or Servicer, as the case may be, as appropriate, under this Agreement, the Note and the Mortgage. The payment and indemnity obligations of the Borrower provided for in Section 12 shall survive any such removal or resignation in favor of the retiring Collateral Agent and/or Servicer, as the case may be, in respect of any matter arising during or after its tenure as Collateral Agent and/or Servicer, as the case may be. For the avoidance of doubt, removal hereunder of EBF as the Collateral Agent in no way constitutes a removal of EBF as the Servicer and vice versa.

### (b) Vesting.

Upon the request of any successor Collateral Agent and/or Servicer, at the expense of the Borrower, the Lenders, the Borrower and the predecessor Collateral Agent and/or Servicer, as the case may be, shall promptly execute and deliver such instruments, conveyances, and assurances reflecting terms consistent with the terms hereof, the Mortgage and the Note for the purpose of more fully and certainly vesting and confirming in such successor Collateral Agent and/or Servicer, as the case may be, its

12

25325308.8

SEC-CDS-E-0040500

interest in, and Liens upon, the Collateral and all rights, powers, duties, and obligations of the predecessor Collateral Agent and/or Servicer, as the case may be, hereunder and under the Mortgage and the Note, and the predecessor Collateral Agent and/or Servicer, as the case may be, shall also promptly assign and deliver to the successor Collateral Agent and/or Servicer, as the case may be, any Collateral subject to the Liens of the Mortgage that may then be in its possession, as applicable.

### (c) Successors.

Any entity into which a Collateral Agent or Servicer may be amalgamated or merged, or with which it may be consolidated, or any entity resulting from any amalgamation, merger or consolidation to which a Collateral Agent or Servicer shall be a party, as a whole or substantially as a whole, shall be the successor of such Collateral Agent or Servicer hereunder if legally bound hereby as such successor, without the necessity for execution or filing of any paper or any further act on the part of any of the parties hereto, anything to the contrary contained herein notwithstanding.

## 12. FEES TO COLLATERAL AGENT; PAYMENTS; INDEMNITY.

### (a) Fees.

In addition to any other fees owed to Servicer or Collateral Agent from either (i) Borrower, and paid by Borrower to Servicer or Collateral Agent, or (ii) Lender, and paid by Borrower out of amounts otherwise due to Lender, the Lender shall pay to the Collateral Agent all fees required to be paid under the Fee Schedule attached hereto as Schedule I with respect to this Agreement at the times and in the amounts set forth therein. Any amounts owed by Lender may, at Collateral Agent's discretion, be paid by Borrower out of amounts otherwise payable from Borrower to Lender.

### (b) Payment by the Borrower.

The Borrower agrees that it will pay all of the Collateral Agent's and the Servicer's fees, as applicable, including those owed by the Lender listed on Schedule I, which shall be paid by the Borrower on behalf of the Lender out of amounts otherwise due to the Borrower, for its respective services hereunder and will pay or reimburse the Collateral Agent and the Servicer upon its request for all of their respective expenses, disbursements and advances incurred or made in the administration of their respective duties hereunder and under the Note and the Mortgage, as applicable (including, without limitation, reasonable legal fees and expenses and the reasonable compensation of all Agent Professionals, Agent-Related Persons and other advisers, agents or experts employed or retained by the Collateral Agent or the Servicer pursuant to this Agreement). In addition to and without limiting any other protection of the Collateral Agent and/or the Servicer hereunder or otherwise by law, the Borrower shall indemnify the Agent-Related Persons for any and all liabilities, obligations, losses, damages, penalties, actions, claims, demands, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever that may be suffered by, imposed on, incurred by or asserted against any Agent-Related Person, whether groundless or otherwise, howsoever arising from or out

13

25325308.8

**CONFIDENTIAL**

**IPLAN007910**

SEC-CDS-E-0040501

of, or in any way related to the subject matter of, this Agreement, the Note, the Mortgage or any of the Collateral or the performance or enforcement of any of the terms of any thereof, including fees and expenses of special counsel; *provided* that the Borrower shall not be liable for any such payment to any Agent-Related Person to the extent the obligation to make such payment has been caused by such Agent-Related Person's own gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction. All statements from the Collateral Agent, the Servicer or any other Person for obligations owing by the Borrower pursuant to the preceding sentence shall be sent to the Borrower. Any amount due under this Section 12(b) and unpaid 10 Business Days after request for such payment will bear interest from the expiration of such 10 Business Days at a rate per annum equal to two percent (2%) above the rate of interest publicly announced by JPMorgan Chase Bank, N.A. from time to time in New York City as its prime rate, payable on demand. If not timely paid by the Borrower, at the Collateral Agent's or the Servicer's election, all amounts so payable and the interest thereon will be payable out of any assets in the possession of the Collateral Agent and/or the Servicer and any other Collateral in priority to amounts owing to any and all other parties to this Agreement.

**(c) Survival.**

The obligations of the Borrower and the Lenders under this Section 12 shall survive the payment in full of all of the other Obligations, the resignation or removal of the Collateral Agent and/or the Servicer and the termination of this Agreement.

## 13. COLLATERAL AGENT'S AND SERVICER'S FUNDS NOT AT RISK.

For purposes of clarity, no provision of this Agreement or the Mortgage, and no request of any Lender or other Person shall require either the Collateral Agent or the Servicer to expend or risk any of its own funds, or to take any legal or other action under this Agreement, the Note or the Mortgage which might, in its reasonable judgment, involve any expense or any financial or other liability unless the Collateral Agent or the Servicer shall be furnished with indemnification acceptable to it, acting reasonably, including the advance of funds sufficient in the judgment of the Collateral Agent or the Servicer, as applicable, to satisfy such liability, costs and expenses.

## 14. INDEPENDENT CREDIT DECISIONS.

Each Lender acknowledges that it has, independently and without reliance upon the Collateral Agent, the Servicer or any other Lender and based upon such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement. Each Lender also acknowledges that it will, independently and without reliance upon any of the Collateral Agent, the Servicer or any other Lender and based upon such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement.

## 15. DETERMINATION OF LENDERS; SUBSEQUENT LENDERS BOUND.

14

25325308.8

**CONFIDENTIAL**

**IPLAN007911**

SEC-CDS-E-0040502

The Collateral Agent and the Servicer may deem and treat the payee of any promissory note or other evidence of indebtedness or obligation relating to any Obligation as the owner thereof for all purposes hereof unless and until (i) a written notice of the assignment or transfer thereof signed by such payee and (ii) a written acknowledgement agreeing to be bound by the terms hereof and such other documents required by Section 16(d), each signed by the assignee or transferee, and in form reasonably satisfactory to the Collateral Agent and/or the Servicer, shall have been filed with the Collateral Agent and/or the Servicer, as applicable. Any request, authority or consent of any Person who at the time of making such request or giving such authority or consent is the holder of any such note or other evidence of indebtedness or obligation, shall be conclusive and binding on any subsequent holder, transferee or assignee of such note or other evidence of indebtedness or obligation and of any note or notes or other evidences of indebtedness or obligation issued in exchange therefor.

## 16. MISCELLANEOUS.

### (a) Notices.

All notices, requests and other communications shall have been duly given and shall be effective (a) when delivered by hand, (b) when transmitted via telecopy or email (or other facsimile device) with receipt confirmed with respect to telecopy, (c) the Business Day next following the day on which the same has been delivered prepaid to a reputable national overnight air courier service, or (d) the third Business Day next following the day on which the same is sent by certified or registered mail, postage prepaid, in each case to the respective parties at the address, telecopy number or email address as provided in the immediately succeeding sentence; provided, however, that if any notice is delivered on a day other than a Business Day, or after 5:00 P.M. (Eastern time) on any Business Day, then such notice shall not be effective until the next Business Day. For purposes hereof, the address of each party hereto and its facsimile number or email address (until written notice of a change thereof is delivered to the Collateral Agent, the Servicer, the Borrower and each Lender) shall be as set forth in Schedule II hereto, or at such other address as such party may specify by written notice to the other parties hereto. Notices to any Person that becomes a holder of Obligations after the date hereof shall be given to such address or facsimile number or email address of which such Person shall have given written notice to the Collateral Agent, the Servicer and the Borrower.

### (b) Amendments.

No provision of this Agreement may be amended or waived except by a writing signed by the Required Lenders, the Collateral Agent and the Servicer; provided, however, that any amendment expanding the obligations or liabilities of the Borrower either hereunder or thereunder shall require the Borrower's consent.

### (c) Conflicts with Collateral Documents and other Transaction Documents.

The Collateral Agent, the Servicer and the Lenders agree that, if any provision of this Agreement is inconsistent with or contrary to any provisions in the Note or the

15

25325308.8

**CONFIDENTIAL**

DocuSign Envelope ID: D16254B4-9043-4E5F-8010-C7E80D1E69E9

Mortgage, the provisions of this Agreement shall prevail as between and among the Collateral Agent, the Servicer and the Lenders.

### (d) Successors and Assigns.

This Agreement shall be binding upon, and inure to the benefit of, the Collateral Agent, the Servicer and the Lenders and their respective successors and assigns. If any Lender shall assign or transfer the Obligations owing to it, it shall promptly so notify the Collateral Agent and the Servicer in writing. No Lender which assigns or transfers any Obligations owing to it shall assign or transfer its benefits under the Collateral Documents without obtaining from the assignee or transferee and delivering to the Collateral Agent, the Servicer and the Lenders a joinder agreement and an executed acknowledgment of the assignee or transferee agreeing to be bound by the terms hereof to the same extent as if it had been a Lender on the date hereof. Each assignee or transferee of any Obligations shall take such Obligations subject to the provisions of this Agreement and to any request made, waiver or consent given or other action taken or authorized hereunder by each previous holder of such Obligations prior to the receipt by the Collateral Agent and the Servicer of written notice of such assignment or transfer; and, except as expressly otherwise provided in such notice, the Collateral Agent and/or the Servicer shall be entitled to assume conclusively that the assignee or transferee named in such notice shall thereafter be vested with all rights and powers as a Lender under this Agreement (and the Collateral Agent and the Servicer may conclusively assume that no Obligations have been subject to any assignment or transfer other than transfers of which the Collateral Agent and the Servicer have received such a notice). Upon the written request of any Lender or the Borrower, the Collateral Agent and the Servicer will provide such Lender and the Borrower with copies of any written notices of transfer received pursuant hereto.

### (e) Continuing Effectiveness.

This Agreement shall continue to be effective among the Collateral Agent, the Servicer and the Lenders even though a case or proceeding under any bankruptcy or insolvency law or any proceeding in the nature of a receivership, whether or not under any insolvency law, shall be instituted with respect to the Borrower or any portion of the property or assets of the Borrower, and all actions taken by the Collateral Agent with respect to the Collateral or by the Collateral Agent, the Servicer and the Lenders with regard to such proceeding shall be determined by the Required Lenders; provided, however, that nothing herein shall be interpreted to preclude any Lender from filing a proof of claim with respect to its Obligations or from casting its vote, or abstaining from voting, for or against confirmation of a plan of reorganization in a case of bankruptcy, insolvency or similar law in its sole discretion.

### (f) Further Assurances.

Each party and the Borrower agrees to do such further acts and things and to execute and deliver such additional agreements, powers and instruments as necessary or as any Lender or the Collateral Agent or the Servicer may reasonably request to carry into effect

16

25325308.8

SEC-CDS-E-0040504

the terms, provisions and purposes of this Agreement or to better assure and confirm unto the Collateral Agent or the Servicer or any of the other Lenders their respective rights, powers and remedies hereunder.

**(g) Counterparts.**

This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same agreement, and any of the parties hereto may execute this Agreement by signing any such counterpart. Delivery of an executed counterpart of a signature page to this Agreement by fax or pdf shall be effective as delivery of a manually executed counterpart of this Agreement.

**(h) Effectiveness.**

This Agreement shall become effective immediately upon execution hereof by the Collateral Agent, the Servicer, the Required Lenders and the Borrower, and shall continue in full force and effect until 91 days following the date upon which all Obligations are irrevocably paid and satisfied in full; provided that, if the Obligations due and owing to a Lender have been paid and satisfied in full, then such Lender shall be deemed released from this Agreement without any further action being necessary. Any such released Lender shall give the Collateral Agent notice of such release but the failure to give such notice shall not affect such release.

**(i) Governing Law.**

**THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, AND THE RIGHTS OF THE PARTIES SHALL BE GOVERNED BY, THE INTERNAL LAW OF THE STATE OF ILLINOIS, EXCLUDING CHOICE-OF-LAW PRINCIPLES OF THE LAW OF SUCH STATE THAT WOULD PERMIT THE APPLICATION OF THE LAWS OF A JURISDICTION OTHER THAN SUCH STATE.**

**(j) Jurisdiction.**

(i) Each party hereto irrevocably submits to the non-exclusive jurisdiction of any Illinois state or federal court sitting in Cook County, Illinois, over any suit, action or proceeding arising out of or relating to this Agreement or any of the agreements, documents or instruments delivered in connection herewith or therewith. To the fullest extent permitted by applicable law, the parties hereto irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim that it is not subject to the jurisdiction of any such court, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

(ii) Nothing in this Section 16(j) shall affect the right that the Collateral Agent, the Servicer or any of the Lenders to serve process in any manner permitted by law, or limit any right that any party hereto may have to bring proceedings against the Borrower

17

25325308.8

**CONFIDENTIAL**

**IPLAN007914**

SEC-CDS-E-0040505

DocuSign Envelope ID: D16254B4-9943-4E9F-A910-C7E80D1E69E9

in the courts of any appropriate jurisdiction or to enforce in any lawful manner a judgment obtained in one jurisdiction in any other jurisdiction.

(iii) THE PARTIES HERETO IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER AGREEMENT, DOCUMENT OR INSTRUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR THE ACTIONS OF THE LENDERS, THE COLLATERAL AGENT OR THE SERVICER IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF.

**(k) Headings; Sections.**

Headings of Sections of this Agreement have been included herein for convenience only and should not be considered in interpreting this Agreement. Unless stated otherwise in this Agreement, references in this Agreement to Sections are references to Sections of this Agreement.

**(l) No Implied Beneficiaries.**

Nothing in this Agreement (except Section 16(b)), expressed or implied, is intended or shall be construed to confer upon or give to any Person, other than the Lenders, the Collateral Agent and the Servicer, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation herein contained.

**(m) Severability.**

If any provision of this Agreement shall be held or deemed to be, or shall in fact be, inoperative or unenforceable as applied in any particular case in any jurisdiction, or because it conflicts with any other provision or provisions hereof or with any constitution or statute or rule of public policy, or for any other reason, such circumstance shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or rendering any other provision herein contained invalid, inoperative or unenforceable to any extent whatsoever. Upon the determination that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to give effect to their original intention as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the maximum extent possible.

**(n) Obligations Individual.**

The obligations and representations and warranties of the Collateral Agent, the Servicer and each of the Lenders herein are made by each of them individually. Nothing herein contained shall be construed as creating among the Lenders, or among the Collateral Agent, the Servicer and the Lenders, a partnership, joint venture or other joint association.

18

25325308.8

**CONFIDENTIAL** **IPLAN007915**

SEC-CDS-E-0040506

**(o)  No Obligation to Extend Credit.**

No provision of this Agreement shall be construed as obligating the Collateral Agent, the Servicer or any Lender to advance any monies or otherwise extend credit to the Borrower at any time.

19

25325308.8

**CONFIDENTIAL**

IPLAN007916

DocuSign Envelope ID: D16254B4-9943-4E9F-8910-C7E80D1E69E9

**(p) Representations of Parties.**

Each of the Lenders, the Collateral Agent and the Servicer, severally and not jointly, represents and warrants to the other parties hereto that such party has all requisite power and capacity to execute, deliver and perform this Agreement and that the execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of such party and that this Agreement constitutes the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms except as such enforceability may be limited by (i) bankruptcy, insolvency, reorganization or similar laws affecting the enforcement of creditors' rights generally and (ii) general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or law).

**(q) Limitation of Liability Due to Forces Beyond Collateral Agent's or Servicer's Control.**

In no event shall the Collateral Agent or the Servicer be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that the Collateral Agent and the Servicer shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances.

*[Remainder of page intentionally left blank; next page is signature page.]*

20

25325308.8

DocuSign Envelope ID: D16254B4-9042-4E5F-8910-C7E80D1E69E9

**IN WITNESS WHEREOF**, the Collateral Agent, the Servicer and the Lenders have executed or caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized, all as of the date first above written.

**COLLATERAL AGENT:**

**EQUITYBUILD FINANCE, LLC,** as Collateral Agent on behalf of the Lenders listed below

By:

Name:      Elizabeth Kammerer

Title: Asset Manager

**SERVICER:**

**EQUITYBUILD FINANCE, LLC,** as Servicer

By:

Name:      Elizabeth Kammerer

Title: Asset Manager

[Signature Page to Collateral Agency and Servicing Agreement]

21

25325308.8

**CONFIDENTIAL**

**IPLAN007918**

SEC-CDS-E-0040509

DocuSign Envelope ID: D16254B4-9043-4E6F-8010-C7E80D1E69E9

**LENDERS:**

By: _JULIA KRAMER PONG_

Name: IPlanGroup Agent for Custodian FBO Julia Pong IRA

Title:


By: _____

Name:

Title:


By:

Name:

Title:


[Signature Page to Collateral Agency Agreement]

22

25325308.8

SEC-CDS-E-0040510

ACKNOWLEDGED, CONSENTED AND AGREED TO:

**BORROWER:**

**EquityBuild, Inc.**

By:

Name: Elizabeth Kammerer

Title: Closing Coordinator

[Signature Page to Collateral Agency Agreement]

23

25325308.8

CONFIDENTIAL                                    IPLAN007920

DocuSign Envelope ID: D16254B4-9043-4E9F-6010-C7E80D1E69E9

<u>SCHEDULE I</u>

<u>COLLATERAL AGENT FEE SCHEDULE</u>

**Section 1: Payouts**

All payouts paid by check.

If Lender requests different method, fees are as follows:

- Wire funds:          $50
- Overnight check:     $50
- Direct deposit:      No fee

**Section 2: Buyouts**

If Lender requests principal back prior to Loan's maturity date (and request granted), Lender must pay an early liquidation fee equal to: (i) 12% of the amount being returned if the request is made within one year of the date the Loan is funded (the "**Origination Date**"); and (ii) 10% of the amount being returned if the request is made between one and two years of the Origination Date. This fee is not intended to be a penalty but is an estimate, and indicative, of the actual cost and expenses EBF will incur in conjunction with such request.

EBF reserves the right to extend the maturity date on any Loan at the request of the Borrower. At that time, anyone who wishes to not participate in the extension may receive a return of their Investment and no fee will be charged in respect thereof .

24

25325308.8

SEC-CDS-E-0040512

## SCHEDULE II

### ADDRESSES FOR NOTICES

If to EquityBuild Finance, LLC, as either Collateral Agent or Servicer:

EquityBuild Finance, LLC
[Address] 5068 West Plano Pkwy. #300
Plano, TX 75093
Attention: [Elizabeth Kammerer]
Facsimile: [_____]
E-mail: [elizabeth@equitybuildfinance.com]

If to the Lenders:

[Name]   iPlanGroup Agent for Custodian FBO Julia Pong IRA
[Address]           28011 Clemens Road Suite B,
              Westlake, OH 44145
Attention: [_____]
Facsimile: [_____]
E-mail: ▮▮▮▮▮▮▮▮▮▮▮▮▮

[Name]
[Address]
Attention: [_____]
Facsimile: [_____]
E-mail: [_____]

[Name]
[Address]
Attention: [_____]
Facsimile: [_____]
E-mail: [_____]

If to the Borrower:

EquityBuild, Inc.
[Address] 1083 N Collier Blvd. #132
Marco Island, FL 34145
Attention: [Elizabeth Kammerer]
Facsimile: [_____]
E-mail: [elizabeth@equitybuild.com]

25325308.8

**CONFIDENTIAL**

**IPLAN007922**

SEC-CDS-E-0040513