Page 1

```
 1       IN THE UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ILLINOIS
 2               EASTERN DIVISION
 3  SEC,               )
                       )
 4       Plaintiff,    )
                       )
 5  vs.              )No. 18-cv-5587
                       )
 6  EQUITYBUILD, INC., et al.,  )
                       )
 7       Defendants.   )
 8
 9       The virtual deposition of RANDALL PONG,
10  taken pursuant to subpoena in accordance with the
11  Federal Rules of Civil Procedure of the United
12  States District Courts pertaining to the taking of
13  depositions, taken before PEGGY CURRAN, CSR, CRR,
14  RPR, CSR License No. 084-002016, a notary public
15  within and for the County of DuPage and State of
16  Illinois, taken on Tuesday, October 26, 2021,
17  commencing at the hour of 4:00 p.m.
18
19
20
21
22
23
24
```

Page 2

```
 1  APPEARANCES: (all appearing virtually)
 2     Mr. Benjamin Hanauer
       Ms. Alyssa A. Qualls
 3     U.S. Securities and Exchange
       Commission
 4     175 West Jackson Boulevard
       Suite 1450
 5     Chicago, Illinois  60604
       312.886.2542
 6     hanauerb@sec.gov
       quallsa@sec.gov
 7       on behalf of U.S. Securities &
         Exchange Commission;
 8
 9     Ms. Jodi Rosen Wine
       Rachlis Duff & Peel, LLC.
10     542 South Dearborn
       Suite 900
11     Chicago, Illinois 60605
       312.275.5108
12       on behalf of Kevin B. Duff, Federal
         Equity Receiver for the Estate of
13       EquityBuild, Inc., etc.
14     Mr. Kevin Connor
       Dykema
15     10 South Wacker Drive
       Suite 2300
16     Chicago, Illinois  60606
       312.627.8322.
17     kconnor@dykema.com
         on behalf of BC57;
18
19     Mr. Max A. Stein
       Boodell & Domanskis
20     1 North Franklin
       Suite 1200
21     Chicago, Illinois 60606
       312.938.4070
22     mstein@boodlaw.com
         on behalf of certain investors;
23
24
```

Page 3

```
 1  APPEARANCES:  (all appearing virtually)
 2     Mr. Michael Kurtz
       Kurtz & Angenlicht
 3     123 West Madison Street
       Suite 700
 4     Chiago, Illinois  60602
       312.265.0106
 5     mkurtz@kalawchicago.com
         on behalf of 1839 Fund I, LLC.
 6
 7
 8  Also Present: (all appearing virtually)
 9     Mrs. Pong
       Ms. Judith Ferrara
10     Mr. Robert Jennings
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
 1              I N D E X
 2  WITNESS                        PAGE
 3  RANDALL PONG
 4  EXAMINATION
      By Mr. Connor                 5
 5
    EXAMINATION
 6    By Mr. Hanauer                19
 7  EXAMINATION
      By Ms. Wine                   21
 8
    FURTHER EXAMINATION
 9    By Mr. Connor                 23
10  PONG DEPOSITION EXHIBITS     FOR ID
11  No. 1                          14
12
13
14
15
16
17
18
19
20
21
22
23
24
```

**Page 5**

1    (Driver's license shown.)
2    MR. CONNOR: Good afternoon, Mr. Pong. Thank
3 you for giving us your time. My name is Kevin
4 Connor. I am an attorney for one of the investors
5 in this case, BC57. I will be leading this
6 deposition today.
7        We also have some of the other attorneys
8 representing other parties on the Zoom call as
9 well.
10       For those of you other than Mr. Pong who
11 are listening, other investors, this deposition is
12 only asking questions of Mr. Pong. So certainly as
13 investors, you are free and welcome to listen in,
14 but we are just asking questions of Mr. Pong this
15 afternoon.
16       Please swear in the witness.
17            (Witness virtually duly sworn.)
18    THE WITNESS: I have my wife with me and she
19 knows about the financials. She is right here.
20    MR. CONNOR: I am going to ask that you give
21 me the answers to the best of your knowledge,
22 Mr. Pong.
23    MRS. PONG: Is it okay if he asks me questions
24 though?

**Page 6**

1    THE WITNESS: I may have to. She is the one
2 who did all the paperwork and the choice of
3 investments. She just used my money.
4    MR. CONNOR: It's just important that the
5 answers -- if you need to refresh your memory,
6 that's fine. If you have no idea and you are just
7 repeating, I prefer that you not do that.
8    THE WITNESS: Okay.
9            RANDALL PONG,
10 called as a witness herein, having been first
11 virtually duly sworn, was examined and testified as
12 follows:
13            EXAMINATION
14 By Mr. Connor:
15    Q    Just before we begin, I would like to
16 lay out a few ground rules so that we can do this
17 as efficiently as possible.
18       First, as you see we do have a court
19 reporter taking down what everyone says today. To
20 that end, if you feel like you know what my
21 question is asking and you feel like you are going
22 to start to answer, I am just going to ask that you
23 please wait until I finish talking before you begin
24 and I will wait until you finish talking. This way

**Page 7**

1 the court reporter doesn't have to take down two
2 people talking at once.
3    A    (Nodding head.)
4    Q    Additionally, I saw you nod your head.
5 We need to get everything down on the record, so
6 please make sure all your answers are verbal. If
7 you shake your head or something, the court
8 reporter is not going to be able to take that down.
9 So a clear yes or no would be very helpful.
10       If there is a question that I ask and
11 you answer it, I am going to assume that you
12 understood.
13       So if there is something you don't
14 understand or you would like to clarify, you are
15 very welcome to let me know that and I will try to
16 find a way to ask it more clearly or rephrase.
17       Finally, you are welcome to take breaks
18 if you need one. I only ask that if there is a
19 question pending before you, that you answer the
20 question before we take a break. But if you need
21 to take a water break or make a phone call or
22 anything like that, that's perfectly fine. Just
23 let me know.
24       Does that all sound clear enough?

**Page 8**

1    A    Yes. I have one question though. Why
2 am I deposed?
3    Q    Sure. You are being deposed as one of
4 the investors in the 7752 South Muskegon property.
5 The Court has authorized us to depose, or the
6 parties, to depose up to three investors per
7 property. So you were chosen simply because at
8 least among my client's records, we don't have your
9 note, mortgage and servicing agreement. So I just
10 wanted to ask you some questions about your
11 experience with EquityBuild to kind of fill in some
12 gaps for us.
13    A    All right.
14    Q    First question. Mr. Pong, have you ever
15 been deposed before?
16    A    No.
17    Q    Okay. Would you mind telling me a
18 little bit about your background. Did you attend
19 college?
20    A    Yes.
21    Q    Can you tell me where?
22    A    University of Hawaii.
23    Q    Hawaii. Okay. And what was your degree
24 in?

Page 9

1  A   Industrial education.
2  Q   Industrial education. Okay. And what
3 is your current employment?
4  A   Retired.
5  Q   You are retired. Before you were
6 retired, what was your employment?
7  A   Technology coordinator.
8  Q   How long did you hold that position?
9  A   15 years.
10  Q   All right. Other than -- forgive me if
11 I casually mention the loan. I am referring
12 specifically to your EquityBuild loan for the
13 7752 South Muskegon property, just as we go through
14 this. I will try to always make that clear.
15      Other than that loan, do you have any
16 other experience with real estate investments?
17  A   Just personal property. We have been
18 buying and selling. Personal. And my wife is
19 involved with flipping properties too.
20  Q   I am sorry. Please finish?
21  A   Rentals in Missouri and Indianapolis.
22  Q   Got it. When you say rentals, those are
23 properties that you own and rent out?
24  A   That I own, yes. In my retirement

Page 10

1 fund.
2  Q   Right. Okay. So those other
3 investments, are those investments that you manage
4 yourself or do you have other companies in the vein
5 of EquityBuild who help you with those
6 investments?
7  A   Not EquityBuild. I have another company
8 that is helping me manage. And I just pay them a
9 monthly fee.
10  Q   Okay. What is the name of that
11 company?
12  A   Alpine.
13  Q   Alpine. Like skiing?
14  A   Yes, like mountain.
15  Q   Okay. Thank you very much.
16      How long have you been involved -- when
17 did you start investing in real estate?
18  A   Well, going way back, when we were in
19 college, we had two -- one condominium, we were
20 renting, and that was when we were in college.
21      Since that, we have just bought and
22 sold, until we got to our home that we are living
23 in now.
24  Q   Great. Thank you. I would like to now

Page 11

1 turn your attention to the Muskegon investment.
2 Can you tell me, when did you first get involved
3 with EquityBuild?
4      I guess let me start before that. Was
5 Muskegon your first investment with EquityBuild?
6  A   Personally, I think it's my first.
7 Yes.
8  Q   I am sorry, I didn't mean to interrupt.
9 Please continue.
10  A   It's not my decision, it's my wife
11 recommended that I do it. So I just followed her
12 instructions.
13  Q   All right. I understand.
14      I just want to repeat, I understand it
15 sounds like your wife knows a lot about this. You
16 are the person testifying under oath, so resist the
17 temptation to just turn to her. We would love to
18 know what your experience was.
19      So it was at your wife's direction. Do
20 you happen to know how you and your wife first
21 discovered EquityBuild? Did they reach out to you,
22 did someone refer you to them?
23  A   I don't know how she got referred, but
24 my guess is she listens to a lot of those online

Page 12

1 seminars. It might have come by one of those.
2      That's my speculation without turning to
3 her and asking.
4  Q   I appreciate that. I know it's tempting
5 right there.
6      Who did you first contact at
7 EquityBuild?
8  A   I did not talk to anyone from
9 EquityBuild personally.
10  Q   Okay. Did your wife?
11  A   Yes.
12  Q   So you wouldn't happen to know. Does
13 the name Sean Cohen mean anything to you?
14  A   She told me after the fact. I Googled
15 him and found out the bad news.
16  Q   When you say after the fact, that is
17 after everything fell apart with the loan?
18  A   Yes.
19 MR. HANAUER: Excuse me. Objection.
20      Kevin, you are questioning a pro se
21 witness about communications with his spouse. Are
22 you sure that's appropriate?
23 MR. CONNOR: Fair enough point. I will
24 rephrase my questions. Certainly I had no ill

Page 13

1  intent there.  Thank you for pointing that out.
2      By Mr. Connor:
3      Q    The last question I think was does Sean
4  Cohen mean anything to you.  Your answer was that
5  you Googled him after things fell apart with the
6  loan?
7      A    Yes.
8      Q    Okay.  Do you recall signing any
9  documentation with EquityBuild?
10     A    Probably with my wife I did some
11 probably online signing of documents.
12     Q    Okay.  Do you recall -- you mentioned
13 online.  Did the name Docusign mean anything to
14 you?
15     A    Yes.  That's what she uses to sign.
16     Q    Okay.  Do you recall whether that's what
17 you used in this instance in signing the loan
18 documents?
19     A    I don't recall, but I only recall using
20 Docusign.  I don't recall any other type of
21 signing.
22     Q    Okay.  Mr. Pong, did you submit
23 documents in relation to this case in support of
24 your claim?

Page 14

1      A    I did not submit it, my wife did it for
2  me.
3      Q    Okay.  Do you know without consulting
4  your wife what documents she submitted?
5      A    No.
6          (A document was marked as Pong
7           Deposition Exhibit No. 1 for
8           identification.)
9      By Mr. Connor:
10     Q    Okay.  I am going to show you a document
11 now.  I am going to share my screen in just a
12 moment.
13         Mr. Pong, do you see the document before
14 you?
15     A    I see a document.
16     Q    It says commercial flat rate promissory
17 note.
18     A    Uh-huh.
19     Q    Does this document look at all familiar
20 to you?
21     A    No.
22     Q    I will scroll.
23     A    My wife was doing all the fine details
24 on this.  She just said sign here.

Page 15

1      Q    Okay.  So you did not personally review
2  any of the documents related to this loan?
3      A    No.  She did.
4      Q    Okay.  I want to stop sharing my screen
5  now.  We will mark that Exhibit 1.
6          And the document, for the rest of the
7  parties, that's the EBF sample note.
8          Do you know, Mr. Pong, who was supposed
9  to communicate with you on EquityBuild's behalf
10 about this loan?
11     A    I don't know the person.  But my wife
12 was in communication.
13     Q    All right.  Could you tell me your
14 understanding of the loan generally, how much you
15 invested, what you expected to get back, how you
16 expected to be paid?
17     A    Okay.  I recall that totally I had given
18 her access to 70,000 from my retirement fund to
19 invest in properties.  And she showed me some
20 image, Google pictures of these apartment
21 buildings.  And my understanding was we were
22 funding the rehab and that we are getting, at some
23 point, 15 percent interest.  And that at completion
24 of the rehab, we get the 15 percent interest.  And

Page 16

1  that's the finances that I understood.
2      Q    Got it.  Okay.  Do you have any idea of
3  the timeline of this loan, how often you would be
4  paid, when the loan would mature?
5      A    I think there are different timelines.
6  I kind of recall there is some shorter ones, some
7  longer ones.  Some were like six to nine months and
8  some were like a year.  I'm not sure.
9      Q    Okay.
10     A    But they weren't for long terms.
11     Q    Mr. Pong, does the name EquityBuild
12 Finance mean anything to you?
13     A    Not until my wife mentioned it many
14 times.
15     Q    As you sit here today, do you have an
16 understanding of who EquityBuild Finance is or what
17 their relationship to this loan is?
18     A    Do I understand what the company is?
19     Q    Yes.
20     A    Yeah.  My understanding is the company
21 was going to be responsible for the purchase and
22 rehab of the apartments, and responsible for the
23 sale, and the distribution of our interest at the
24 end.

Page 17

1   Q   Okay.  Is that -- so there are two
2   different companies, EquityBuild and EquityBuild
3   Finance.  I am trying to think of how I would
4   phrase this.
5       What you just described to me, is there
6   a difference in your mind between EquityBuild and
7   EquityBuild Finance?
8   A   For me, I don't know.  My wife would
9   though.
10  Q   All right.  Mr. Pong, are you familiar
11  with the term prepayment as it relates to a
12  mortgage?
13  A   No.
14  Q   Okay.  Are you familiar with the term
15  release as it relates to a mortgage?
16  A   No.
17  Q   No.  Okay.  Mr. Pong, did you ever
18  receive a notice that somebody wanted to payoff the
19  loan in which you had invested?
20  A   No, not that I recall any.
21  Q   Okay.  Do you understand that
22  EquityBuild Finance accepted a payoff amount from
23  someone -- excuse me.  Let me back up.  I got ahead
24  of myself.

Page 18

1       Are you familiar with the term payoff?
2   A   Not in this sense.
3   Q   So a payoff is when the whole amount of
4   the loan is due and then someone makes the whole
5   payment to early pay off the loan.
6       Do you understand as you sit here that
7   EquityBuild accepted a payoff amount from someone
8   to purportedly pay off the loan?
9   A   You mean another third party.
10  Q   Correct.
11  A   And they are buying my property and I
12  didn't know about it?  That could have been.
13  Q   Do you understand that EquityBuild has
14  released the mortgage relating to your loan?
15  A   No.
16  Q   Okay.  Did anyone ever discuss the term
17  rollover with you?
18  A   I believe that on this Praxton was
19  rolled over to Muskegon.
20  Q   Another investment rolled over into
21  Muskegon?
22  A   Yes.
23  Q   Did anyone ever discuss rolling over
24  Muskegon into another investment with you?

Page 19

1   A   No, not that I seen in any records that
2   my wife showed me at all.
3   Q   Are you familiar with the term payoff
4   demand?
5   A   No.
6       MR. CONNOR:  Okay.  All right.  Well, those
7   are all the questions I have for you, Mr. Pong.  I
8   don't know if anyone else, some of the other
9   lawyers may have some questions.
10          EXAMINATION
11  By Mr. Hanauer:
12  Q   It's probably good morning for you,
13  Mr. Pong, right?
14  A   Yes.  It's still 11:00.  Yes.
15  Q   I thought so.  Good morning, Mr. Pong.
16  My name is Ben Hanauer.  I am an attorney with the
17  Securities and Exchange Commission, which is the
18  plaintiff in this lawsuit.
19      So you invested a total of $70,000 with
20  EquityBuild?
21  A   That's what I recall that my wife was
22  asking to utilize for these accounts.
23  Q   And how much money does EquityBuild
24  still owe you?

Page 20

1   A   It should be total claim of $60,568 and
2   change.
3   Q   The reason that that number is less than
4   70,000 is because you got some interest payments?
5   A   Well, there was an interest payment of
6   $10,668 and change.
7   Q   Besides those interest payments, was
8   your capital investment ever returned?
9   A   Not that I recall.
10  Q   And when you invested with EquityBuild,
11  did you understand that your investments were
12  secured by a mortgage or mortgages?
13  A   What I believed is that we had owned the
14  property and that was our out in the sense that if
15  something did go wrong on the rehab, the property
16  still would be turned over to the investors, which
17  is me.  So that's what my understanding was.
18  Q   And did you ever authorize anybody to
19  sell those properties you invested in without your
20  consent?
21  A   I don't recall anyone asking about the
22  sale of the property, especially if the funds
23  didn't come to us, which is my account.
24  Q   Would you have allowed anyone to sell

Page 21

```
 1  the property you invested in if you knew you
 2  wouldn't get paid for it?
 3     A   I wouldn't allow them to sell it if I'm
 4  not getting a penny back, yes.
 5     MR. HANAUER:  No further questions.  Thank you
 6  very much, Mr. Pong.
 7              EXAMINATION
 8  By Ms. Wine:
 9     Q   Mr. Pong, hi.  My name is Jodi Wine and
10  I represent Kevin Duff, who is the receiver in this
11  action.  Just a couple questions.
12         The answers to discovery that you
13  submitted said that your investment was
14  $8,632 in this property, plus another $75.
15     A   I don't know the exact amounts, yes.
16     Q   Do you know what that $75 was for?
17     A   No, not at all.
18     Q   You just testified, I believe, that you
19  received $1,035.81 interest?
20     A   The interest was $10,668.64.  That went
21  into my iPlan, which is my retirement fund.
22     Q   That $10,000 was for your investment in
23  all the properties, correct?
24     A   It's flagged as interest.  So whether
```

Page 22

```
 1  it's all the properties.  Because after Praxton
 2  distributed to four of them, I have no idea what
 3  went where.  Four different names as far as I'm
 4  concerned.
 5     Q   So the interest that you put in the
 6  verified answers to your discovery request, that
 7  would be the amount that was interest from the
 8  Muskegon investment, correct?
 9     A   I don't understand the question.
10     Q   Okay.  Sorry.
11         Do you remember submitting this summer
12  some answers to questions, written questions?
13     A   On the answering of written questions,
14  it was probably my wife that answered the question.
15         But for my records, when I looked at it,
16  Praxton had rolled over $8,632 in like '17.
17     Q   Okay.  In 2017?
18     A   7/20/17, yes.
19     Q   July 20 of 2017?
20     A   Yes.
21     Q   Okay.  Thank you.
22         Did you receive any other amounts than
23  the interest payments for this property?
24     A   No, I didn't.
```

Page 23

```
 1     Q   Okay.  And other than lending money to
 2  EquityBuild, do you have any relationship with
 3  anyone at EquityBuild?
 4     A   No, I don't.
 5     Q   Any other business relationship?
 6     A   No business relationship.
 7     MS. WINE:  Okay.  I have nothing further.
 8     MR. CONNOR:  I have just a couple follow-ups.
 9           FURTHER EXAMINATION
10  By Mr. Connor:
11     Q   Mr. Pong, you mentioned iPlan.
12     A   Yes.
13     Q   So your loan was administrated through
14  iPlan; is that correct?
15     A   That's my retirement fund.
16     Q   So did you communicate with anyone at
17  iPlan about this loan?
18     A   I don't recall doing it, but my wife was
19  handling that.  Whether she actually told iPlan
20  where the money was coming from or what, I don't
21  know.
22     Q   Okay.  Do you recall receiving any
23  correspondence from iPlan about this loan?
24     A   No.  It would go to her.
```

Page 24

```
 1     Q   Okay.  And finally -- forgive me, I
 2  might have asked this already, but I didn't mark it
 3  down.
 4         When you submitted your documents for
 5  this case, did you submit a mortgage document?
 6     A   My wife would have submitted all the
 7  documents.  And she handles all the paperwork.
 8     Q   Okay.
 9     A   So she followed all the instructions I'm
10  sure she got at that time when the claim was being
11  made and everything.
12     Q   Okay.  But you don't know as you sit
13  here exactly what was included in that
14  submission?
15     A   No.  You have to check with her because
16  she is the one who did it.
17     Q   Okay.
18     A   I am hands off on this investment.  Yes.
19  Sorry.
20     Q   That's quite all right.  You only know
21  what you know.
22         Thank you.  I appreciate you answering
23  my questions directly.
24         Well, that is all that I have unless
```

Page 25

1 anyone else has any follow-up.
2     (No response.)
3     MR. CONNOR: No. All right. Mr. Pong, thank
4 you very much for your time. At this time we are
5 going to ask you to either waive or reserve
6 signature.
7     What that means is you have the right to
8 review the transcript of this deposition to make
9 sure it accurately reflects what you said today.
10 You can't go back and change and say I wish I had
11 answered this differently. But you do have the
12 right to review it before signing off on it to make
13 sure it's accurate.
14     So you can reserve signature, in which
15 case you will have the right to review the
16 transcript, or you can just say that you are done
17 with it and waive signature. It's up to you.
18     THE WITNESS: We will waive it. Yes.
19 Everything I said is what I know. Sorry if it
20 wasn't as well as you would like.
21     MR. CONNOR: Don't be sorry. We decided to
22 ask you questions. You can only tell us what you
23 tell us.
24     Thank you very much for your time.

Page 26

1     MS. WINE: Excuse me one minute. I know it
2 might be late. I was just looking at the proof of
3 claim that was submitted by Mr. Pong.
4     No, I will strike that. I have nothing
5 further.
6     MR. CONNOR: I think we are done, Mr. Pong.
7 Have a good morning.
8
9
10          DEPOSITION CONCLUDED
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 27

1 STATE OF ILLINOIS  )
                    )SS:
2 COUNTY OF DU PAGE  )
3
4     I, PEGGY CURRAN, CSR, CRR, License
5 No. 084-002016, notary public within and for the
6 County of DuPage and State of Illinois, do hereby
7 certify that heretofore, to wit, on the 26th day of
8 October, 2021, RANDALL PONG personally appeared
9 before me as a witness in a cause now pending and
10 undetermined in the United States District Court,
11 Northern District of Illinois, Eastern Division,
12 wherein SEC is plaintiff and EquityBuild, Inc.,
13 et al., are defendants, No. 18-cv-5587.
14     I further certify that the said RANDALL
15 PONG was by me first virtually duly sworn to
16 testify to the truth, the whole truth and nothing
17 but the truth in the cause aforesaid before the
18 taking of his deposition; that the testimony given
19 was stenographically recorded in the presence of
20 said witness by me, and afterwards transcribed upon
21 a computer, and that the foregoing is a true and
22 correct transcript of said testimony.
23     I further certify that there were present
24 at the taking of the deposition the aforementioned

Page 28

1 counsel.
2     I further certify that I am not counsel
3 for nor in any way related to any of the parties to
4 this suit, nor am I in any way interested in the
5 outcome thereof.
6     In testimony whereof, I have hereunto set
7 my hand and seal this 4th day of November, 2021.
8
9
10
11     _____
12     Notary Public
13     DuPage County, Illinois
14     CSR No. 084-002016
15
16
17
18
19
20
21
22
23
24

[10/26/2021] Pong_Randall_20211026                    Pages 25 - 28