UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee<br><br>Magistrate Judge Young B. Kim |

# REPLY OF LIBERTY EBCP, LLC TO RECEIVER'S RESPONSE IN OPPOSITION TO MOTION FOR DETERMINATION THAT RECEIVERSHIP STAY IS NOT APPLICABLE TO THE LIBERTY MALPRACTICE ACTION

Liberty EBCP, LLC ("Liberty"), by and through its counsel, Jaffe, Raitt, Heuer & Weiss, P.C., and for its Reply to Receiver's Response in Opposition to Motion for Determination that Receivership Stay is Not Applicable to the Liberty Malpractice Action, states as follows:

## INTRODUCTION

The Receiver filed its response in opposition to Motion (the "Response")[1] contending, among other things, that (i) Liberty violated the Receivership Stay by filing the Liberty Malpractice Action; (ii) RFC was a former "agent" of the Receivership Defendants, and thus, RFC and its assets (including the Insurance Policy) fall within the jurisdiction of the Receivership Estate; and (iii) the Liberty Malpractice Action should be stayed while at the same time the Receiver should be permitted to pursue the Receivership Action against RFC and the Insurance Policy.

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

As further set forth below, at the time that Liberty commenced the Liberty Malpractice Action it did not believe (nor does it continue to think) that RFC or Salajanu was an agent of the Receivership Defendants such that Liberty was precluded under the Receivership Order from taking such action. Furthermore, at that time, Liberty did not know that the Receiver had potential competing claims against RFC, Salajanu and the Insurance Policy. Finally, to impose a stay on the Liberty Malpractice Action, while permitting the Receiver to continue to pursue its claims against RFC and the Insurance Policy and the Named Defendants, deprives Liberty of due process. Thus, to the extent that the Court elects to stay the Liberty Malpractice Action without also staying the Receivership Action, Liberty should be granted adequate protection to ensure that its interests in and claims to the Insurance Policy are not diminished, depleted or eliminated. Alternatively, as suggested in the Motion, both actions against RFC and the Insurance Policy should be stayed until the claims process determining Liberty's claim in the Receivership is adjudicated.

## ARGUMENT

**A.  Liberty Had No Knowledge of the Receiver's Claims Against RFC or Salajanu at the Time that Liberty Commenced the Liberty Malpractice Action.**

When Liberty filed the Liberty Malpractice Action on April 20, 2020, it had no knowledge, nor could it have ascertained at that time, that the Receiver had claims against RFC and Salajanu. A review of the docket of the Receivership indicates as follows:

- On January 30, 2020, prior to the commencement of the Liberty Malpractice Action, the Receiver filed its Sixth Quarterly Report [Doc. No. 624], at which time it did not disclose the existence of any specific cause of action against RFC or Salajanu; the report merely stated that the Receiver was analyzing and identifying potential claims, including fraudulent conveyances and claims for aiding and abetting Receivership Defendants.

- On May 28, 2020, the Receiver filed its Seventh Quarterly Report [Doc. No. 698], wherein again the Receiver did not disclose the existence of any specific cause of action against RFC or Salajanu.

- On July 30, 2020, the Receiver filed its Eighth Quarterly Report [Doc. No 757], wherein again the Receiver did not disclose the existence of any specific cause of action against RFC or Salajanu.

- On August 11, 2020, the Receiver filed its motion to seek approval of retention of additional counsel to retain Spellman Bruck LLC and Roeder Law Office LLC "to perform certain legal work including investigation, advice counsel and representation in connection with claims the Receiver may bring on behalf of the Receivership Estate or one or more entities within the Receivership Estate [Doc. No. 759]. As part of this motion, the Receiver did <u>not</u> disclose the specific litigation or the parties against whom such claims related. While the Receiver indicated that it was seeking to retain such additional counsel on a contingent fee basis, the Receiver did <u>not</u> disclose the specific terms of the contingency fee arrangement. While the motion was noticed for presentment on August 13, 2020 [Doc. No. 760], the docket does not reflect entry of an order authorizing the retention of the additional counsel on that date.

- On October 29, 2020, the Receiver filed its Ninth Quarterly Report [Doc No. 839], at which time, the Receiver disclosed for the first time that it had commenced a state court action against RFC, alleging professional malpractice and aiding and abetting the breach of fiduciary duties by the Receivership Defendants. This is the first time that Liberty was on notice that an action had been filed by the Receiver against RFC.

When the Ninth Quarter Report was filed, Liberty did not believe that the filing and prosecution of the Liberty Malpractice Action created a problem and continues to espouse this position today. First, the claims made by Liberty in the Liberty Malpractice Action constitute a direct, as opposed to a derivative, action. Second, the claims being pursued by Liberty are separate and distinct from the claims being pursued by the Receiver. The Liberty Malpractice Action does not in any way allege any of the allegations set forth in the Receiver's malpractice complaint. Third, only Liberty has the right to pursue the malpractice claims against RFC and Salajanu that arise from the Opinion Letter, as it was the sole beneficiary of the representations contained therein.

Fourth, the Receiver's suggestion that because the Insurer views the claims asserted by the Receiver and by Liberty as a "single claim" arising from the same facts and circumstances, as set forth in a reservation of rights letter dated September 30, 2020 (the "<u>Reservation of Rights Letter</u>"), attached to the Response [Doc. 1141, Exhibit B], is irrelevant and does not mean that

the claims are in fact the same. Furthermore, the Reservation of Rights Letter makes clear that Liberty's claim is <u>not</u> derivative of the claims of the Receiver. The Receiver is not (nor can it) rely on the Opinion Letter issued to and received by Liberty as Liberty was the sole beneficiary of the representations made by RFC and Salajanu in the Opinion Letter.

Fifth, and finally, as soon as Liberty was contacted by the Receiver on December 12, 2021, Liberty immediately ceased taking action in the Liberty Malpractice Action (other than to respond to the Receiver's Motion to Intervene therein) and responded to the Receiver's Letter and its request for a stay. Thereafter, Liberty filed the Motion with this Court to seek a determination that the Receivership Stay does not apply to the Liberty Malpractice Action. At all times, Liberty has proceeded in good faith to effectuate and to preserve its rights, while at the same time complying with the orders of this Court. Query why didn't the Receiver contact Liberty earlier to make inquiry about the Liberty Malpractice Action? Rather, now, almost 15 months after the issuance of the Reservation of Rights Letter, the Receiver has suddenly sought a stay of the Liberty Malpractice Action when it appears that the Receiver has known about the existence of the Liberty Malpractice Action for some time.

### B.   RFC is not an "agent" of the Receivership.

The Receiver has asserted that RFC and Salajanu were "past agents" of the Receivership Defendants, and thus, no action can be taken against them by any party without that party first seeking consent of the Court under the Receivership Order. In addition, the Receiver contends that any contrary interpretation would gut the Receivership Order. Liberty respectfully disagrees.

At the time that Liberty commenced the Liberty Malpractice Action, it was not aware that a prior attorney of the Receivership Defendants would be deemed an agent under the Receivership Order or that the Receiver had a claim against one of its prior attorneys. The

Receivership Defendants came into contact with hundreds, if not thousands, of third parties during the operation of their businesses. How was Liberty to know which ones might become the subject of a later suit by the Receiver?

The Receiver's position, if accepted, would impermissibly stretch that jurisdiction of this Court, well beyond the parties and their property placed under the receivership. Say, for example, a creditor of the receivership did business with a company that provided janitorial or management services to the Receivership Defendants. Is the fact that the Receiver may have a claim against that vendor create a basis upon which to stay a third-party creditor from taking action against that vendor based on separate contractual rights? What if one of the third parties' employees was injured at the vendor's property while performing their services due to unsafe conditions at the property, would the third-party and its employee be prohibited from seeking recovery under an insurance policy just because the Receiver has a claim against the vendor and/or its insurance? Such an interpretation clearly is not reasonable nor justified and would place the Court in a receivership impermissibly impairing obligations under a contract or otherwise between third parties.

C.  **The Insurance Policy is not a Receivership Asset.**

There has yet to be a determination of whether the Receiver even has a right to seek recovery of the proceeds of the Insurance Policy. The Reservation of Rights Letter states that both suits qualify as "Claims" as defined in the Insurance Policy. *See, Reservation of Rights Letter*, Exhibit B, pg. 6 [Doc. No. 1141]. Exclusion B of the Insurance Policy precludes coverage for certain acts that include, among other things, those actions that arise "out of any actual or alleged intention, criminal, dishonest, malicious or fraudulent act, error or omission by any Insured if such intentional, criminal, dishonest, malicious or fraudulent act, error or omission is established by a final adjudication of the Claim in any judicial, administrative or alternative

dispute resolution proceeding." Reservation of Rights Letter, Exhibit B, pg. 55 [Doc. No. 1141]. In applying this exclusion to the Receivership Action, the Insurance Company stated:

> Exclusion B, applies if an intentional, criminal, dishonest, malicious or fraudulent act, error or omission is established by a final adjudication. . . .The [Receivership] Suit alleges that RFC aided and abetted a Ponzi scheme. While not exhaustive of allegations that could potentially trigger Exclusion B if proven at trial, [the Insurance Company] reserves its rights accordingly.

*Id*. Thus, it is abundantly clear that the Insurance Company is reserving is rights under the Insurance Policy as relates to the Receivership Action based on the Receiver having alleged that RFC aided and abetted a Ponzi scheme. *Id*., at pg. 9, which would eliminate any insurance coverage for the claims of the Receiver. Accordingly, while the Receiver has asserted a claim against the Insurer and the Insurance Policy, it is yet to be determined whether the Receiver will have any right to the Insurance Policy. Unless and until that determination is made, neither the Receiver, nor this Court, can definitively conclude that the Insurance Policy is an asset of the Receivership estate.

**D.    Liberty is entitled to "adequate protection."**

In the Response, the Receiver does not address the injury that will inure to Liberty if the Liberty Malpractice Action is stayed. If the Receiver is permitted to stay the Liberty Malpractice Action, at a minimum, Liberty should be granted adequate protection, consistent with the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), to protect its rights in the proceeds of the Insurance Policy as, absent which, Liberty will be irreparably injured in its ability to seek redress and relief on its claims.

Local Rule 66.1 of the Northern District of Illinois, entitled "Receivers; Administration of Estates" provides:

> (a) GENERAL. ***The administration of estates by receivers or other officers shall be similar to that in bankruptcy cases*** except that the court in its discretion shall—

> (1) fix the allowance of compensation of receivers or similar officers, their counsel, and any others appointed to aid in the administration of the estate, and
>
> (2) direct the manner in which the estate shall be administered, including the conduct of its business, the discovery and acquirement of its assets, and the formation of reorganization plans.

L.R. 66.1 (N.D. Ill.). This local rule recognizes and directs the Court in a receivership proceeding to look to bankruptcy cases and bankruptcy law in addressing, among other things, the administration of the receivership estate. Accordingly, it is appropriate and critical that the Court grant Liberty "adequate protection" to protect its rights and interests.

> Section 361 of the Bankruptcy Code provides, in relevant part, as follows:
>
> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> **(1)** requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> **(2)** providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> **(3)** granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. Pursuant to 11 U.S.C. § 361(1), a debtor or, in this case, the Receiver, is required to "make a payment or periodic cash payments to [Liberty] to the extent that the stay under section 362 of this title (or in this case, the issuance of a stay by this Court) . . . results in a decrease in the value of [Liberty's] interest in such property." *See* 11 U.S.C. § 361(1). Moreover, pursuant to Section 363(e) of the Bankruptcy Code, a secured creditor is entitled to adequate protection during the course of a bankruptcy case (or a receivership proceeding) to the extent that the debtor's or the Receiver's continued

retention or use of the creditor's collateral threatens to diminish the value of the secured creditor's interest.

In order to determine the level of adequate protection Liberty is entitled to receive, the Court must determine the value of the collateral (*i.e.*, the value of the Insurance Policy). Section 361 of the Bankruptcy Code, however, does not specify how the collateral should be valued, nor does it provide guidance as to what day should be selected as the valuation date for the collateral. Although Sections 361 and 363(e) offer little guidance as to how property should be valued, Section 506(a) of the Bankruptcy Code provides that a creditor with a lien on property holds a secured claim:

> to the extent of the value of such creditor's interest in the estate's interest in such property . . . or is an unsecured creditor to the extent such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. **Such value shall be determined in the light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest**

(Emphasis added).

Although courts frequently differ on the precise methodology for establishing the value of the estate's property, Court's will generally proceed along one of two lines: (i) establishing the price that a creditor would receive upon some form of hypothetical sale of the subject property by the secured creditor or, alternatively (ii) determining the price to be paid by the debtor upon some form of hypothetical purchase of the subject property. *See In re Taffi*, 96 F.3d 1190, 1192 (9th Cir. 1996).

The purpose of valuing property with respect to Section 361(1), is to protect the secured creditor's bargained-for rights and to preserve its interest in its collateral. *See In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 74 (1st Cir. 1995). This suggests that the use of a hypothetical sale method, such as orderly liquidation value, is preferred in the adequate protection context

because this method accurately reflects the value of the collateral from the perspective of protecting the creditor's interest in the event the debtor does not satisfy the creditor's secured claim. *Id*. at 74 (1st Cir. 1995) ("Indeed, since adequate protection payments immediately deplete the estate's assets--even before it is certain that a reorganization plan will be confirmed--one would expect that the **valuation standard used to determine whether such payments are justified should be extremely conservative.**") (Emphasis added); *In re Case*, 115 B.R. 666, 670 (B.A.P. 9th Cir. 1990) (valuing collateral for the purposes of adequate protection based on liquidation value).

In this case, if the Receiver is permitted to continue to prosecute the Receivership Action while Liberty is stayed from pursing the Liberty Malpractice Action, Liberty will be irreparable harmed. Not only would such a stay be indefinite, but while the Receiver continues it action, the Receiver could potentially run the policy limits (to the extent coverage exists), thereby leaving Liberty with no potential recovery against the Insurance Policy. Moreover, how is Liberty's right to share in the proceeds of the Insurance Policy or other assets of the actual RFC defendants preserved if the stay remains in place. At a minimum, Liberty should be granted a lien in the proceeds of the Receiver's recovery to adequately protect its interest therein if a stay is imposed on it. Thereafter, this Court could determine if any of the remaining Insurance Policy proceeds or assets of RFC remain, sufficient to satisfy any stayed claim of Liberty. If insufficient, then this Court would determine a sharing arrangement in the Receiver's proceeds. Granting such adequate protection to Liberty is not only authorized and consistent with Section 361 of the Bankruptcy Code but also mandated by the facts and circumstances of this case. To do otherwise or not grant such adequate protection to Liberty, in essence, grants the Receiver a priority claim in the proceeds of the Insurance Policy notwithstanding that Liberty and the Receiver both have separate and distinct claims to such proceeds.

**CONCLUSION**

Wherefore, Liberty respectfully requests that this Court determine that (i) the Receivership Stay does not apply to the Liberty Malpractice Action or, in the alternative, (ii) stay both the Liberty Malpractice Action and the Receivership Action until Liberty's claims in the Receivership are fully adjudicated, or (iii) grant Liberty adequate protection in the form of a lien on the Insurance Policy and the proceeds thereunder, and (iv) grant such other just and equitable relief justified in this matter.

Respectfully submitted;

JAFFE, RAITT, HEUER & WEISS, P.C.

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
Judith Greenstone Miller (P29208)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Main: (248) 351-3000
Fax: (248) 351-3082
jwelford@jaffelaw.com
jmiller@jaffelaw.com

Counsel for Liberty EBCP, LLC

Dated: January 31, 2022

## CERTIFICATE OF SERVICE

I certify that I provided service of the foregoing reply of Liberty EBCP, LLC to Receiver's Response in Opposition to Motion for Determination That Receivership Stay is Not Applicable to the Liberty Malpractice Action via the Court's CM/ECF system, to all counsel of record on January 31, 2022.

By: /s/ Jay L. Welford
Jay L. Welford (P34471)
Judith Greenstone Miller (P29208)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Main: (248) 351-3000
Fax: (248) 351-3082
jwelford@jaffelaw.com
jmiller@jaffelaw.com