UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 18-cv-5587 |
| v. ) ) | Hon. John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, ) ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. ) ) | |

**RECEIVER'S FOURTEENTH STATUS REPORT**
**(Fourth Quarter 2021)**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen[1] and Shaun Cohen, as defined in the Order Appointing Receiver entered August 17, 2018 (Dkt. No. 16), as supplemented by Order entered March 14, 2019 (Dkt. No. 290) and Order entered February 21, 2020 (Dkt. No. 634) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court, respectfully submits this Fourteenth Status Report for the quarter ending December 31, 2021.

**I.    SUMMARY OF THE OPERATIONS OF THE RECEIVER**

The Receiver, together with his legal counsel, Rachlis Duff & Peel, LLC ("RDP"), accountants BrookWeiner, LLC ("BrookWeiner"), forensic consultant Prometheum Technologies, Inc. ("Prometheum"), asset management and real estate brokerage services provider SVN Chicago

---

[1] On December 30, 2020, Defendant Shaun Cohen reported to the Receiver that Defendant Jerome Cohen died on November 28, 2020.

Commercial, LLC ("SVN"), and claims administration service provider Axos Fiduciary Services ("Axos"), have undertaken, without limitation, the following activities since the submission of his Thirteenth Status Report (Dkt. No. 1077):

    a.    <u>Identification and Preservation of Assets</u>

Since the filing of his Thirteenth Status Report, the Receiver continued using reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all profits, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly.

At the end of the Fourth Quarter 2021, there was one real estate property remaining in the Receivership Estate, located at 7109-19- S Calumet Avenue in Chicago.[2] The Receiver's primary focus has been and continues to be the preservation, operation, maintenance, and sale of the properties within the Receivership Estate, as well as the implementation and handling of claims administration. The Receiver also is devoting efforts to claims asserted in state court against former EquityBuild professionals.

As previously stated, the Receiver, in connection with his counsel, asset manager/real estate broker, and property managers, continued to plan for cash flow needs at the remaining

---

[2] As further discussed below, the District Court entered an order on January 24, 2022 approving the sale of this property. There were 116 properties in the Receivership Estate at the inception of the Receivership, not including a property in Plano, Texas, that Defendant Shaun Cohen had used as a residence. (*See* Exhibit 6) The Receiver sold ten properties in the second quarter of 2019 (formerly reported as six properties because five of these properties were sold together), eleven properties in the fourth quarter of 2019, two properties in the first quarter of 2020, 17 properties in the second quarter of 2020, 12 properties in the third quarter of 2020, 15 properties in the fourth quarter of 2020, 45 in the second quarter of 2021, and one property in the third quarter of 2021. The Receiver sold two additional properties in the Fourth Quarter 2021. (*See* Exhibit 2)

properties, to control and minimize expenditures where possible, and to address health, safety, and other essential needs at each property. To that end, the Receiver and his counsel have regularly communicated with the property managers to address operational and cash needs. The Receiver and his retained professionals also have reviewed monthly financial reporting and analyzed the cash position of the Estate. In consultation with his asset managers, the Receiver has assessed the prudence and necessity of property maintenance and repair work.

b. Property Sales

During the Fourth Quarter 2021, the sales of two Receivership properties closed: 638-40 N. Avers, Chicago, Illinois; and 1102 Bingham, Houston, Texas. *See* **Exhibit 1** for a listing of property sales and net proceeds by properties since the inception of the Receivership, including properties closed during the Fourth Quarter 2021, by closing date, property address and gross and net proceeds.[3] Consistent with the Court's orders approving these sales, the Receiver segregated the net proceeds into separate subaccounts. (Dkt. Nos. 966, 979, 991)

7109-19 S. Calumet is the only property remaining in the receivership estate. Regarding that property, the terms of a proposed letter of credit to be posted by an institutional lender were not resolved and on November 16 and 17, 2021, lender U.S. Bank as Trustee notified the Receiver that it was unable to proceed with its credit bid due to the parties' inability to reach an agreement on the terms of the letter of credit, and that it consented to the Receiver selling the property in accordance with the marketing and sale process previously approved by the Court.

The Receiver proceeded to re-market 7109-19 S Calumet for sale, publishing notice of the public sale in the Chicago Sun-Times on November 19, November 26, December 3, and December

---

[3] The allocation of sales proceeds to the single family portfolio has been adjusted from the Receiver's prior status reports (*see, e.g.,* Dkt. No. 1077, Ex. 2) to reflect the allocations that were agreed upon by the Receiver and the lender's counsel.

10, 2021, with a bid deadline of December 16, 2021. Nine offers were submitted and the Receiver accepted the highest bid in the amount of $1,496,000. On December 30, 2021, the Receiver filed his Fifteenth Motion to Confirm the sale of 7109-19 S Calumet (Dkt. No. 1110), and the Court set a January 20, 2022 as the response deadline. (Dkt. No. 1117) No objections were filed, and the Court entered an order approving the sale on January 24, 2022. (Dkt. No. 1138)

On August 13, 2021, the Court denied the Motion for Return of Earnest Money Deposits filed by Ventus Holdings, LLC and Ventus Merrill LLC's (collectively, "Ventus") (Dkt. No. 1025). On September 10, 2021, these parties filed a Notice of Interlocutory Appeal of the Court's Order (Dkt. No. 1043). On October 13, 2021, the Receiver filed a Motion to Dismiss Appeal (Appeal Dkt. No. 6). On November 4, 2021, the Seventh Circuit Court of Appeals granted the Receiver's contested motion, and Ventus' appeal was dismissed for lack of jurisdiction (Appeal Dkt. No. 12). On November 24, 2021, Ventus filed a motion asking the district court to designate its interlocutory order as a final judgment in an effort to seek another appeal (Dkt. No. 1095). The Receiver filed an opposition to Ventus' motion on December 20, 2021 (Dkt. No. 1106). Ventus then filed a reply brief on January 10, 2021 (Dkt. No. 1120). The motion remains pending.

    c.    <u>Code Violations</u>

During the Fourth Quarter 2021, the Receiver received notice of a Department of Buildings matter set for an administrative hearing on November 21, 2021 (7834-44 S Ellis). The Receiver was able to obtain dismissal of the EquityBuild entity from this case through the City's corporation counsel, and a nonsuit order was entered on November 17, 2021. On October 21, 2021, the last pending housing court matter against an EquityBuild affiliate (the entity that owned 638-40 N Avers) was also dismissed.

4

To the Receiver's knowledge, all other administrative and municipal housing court cases against EquityBuild and its affiliated entities have either been dismissed or gone to judgment. The Receiver intends to file a motion for approval to pay one of these administrative judgments, in the amount of $1,075, for which a finding of liability on three of nine counts was entered on November 25, 2019 (7656-58 S Kingston). For several other cases in which the City's notice of the violation was not issued until after the Receiver had sold the involved property (4750-52 S Indiana, 7024 S Paxton (two judgments), 1422-24 E 68th, 1414 E 62nd Place), and in light of the City's position that the owner of the property at the time of the inspection is strictly liable for the violation, default judgments have been entered against the EquityBuild entity that owned the property and has notified the City that the Order Appointing Receiver (Dkt. Nos. 16, 290, 634) prevents the City from filing collection proceedings and that the City will have to proceed through the claims process established in this matter.

In summary, as of December 31, 2021, there were no known pending City of Chicago municipal court or administrative matters involving alleged code violations for properties in the receivership estate.

d. <u>Financial Reporting of Receipts and Expenditures</u>

The Receiver is in the process of preparing final reports on all sold properties, but needs complete and accurate information regarding insurance premium refunds to ensure that the amounts allocated to a given property is not over- or understated. Once this process is completed, the Receiver will seek the Court's approval to reimburse the Receiver's Account for any funds that the Receiver expended on the sold properties.

5

e. <u>Open Litigation</u>

A trial in the matter *Byrd v. EquityBuild, et al.*, Case No. 18 L 1993, Circuit Court of Cook County has been set for March 21, 2022. The case concerns an injury alleged to have occurred at 7748-52 S Essex Avenue, and a series of evidence depositions have been scheduled. These claims are being defended pursuant to a contract for liability insurance, for which there is a $10,000 deductible.

On October 14, 2021, an action was filed in the Circuit Court of Cook County captioned *Jerrine Pennington for Valerie Pennington, Deceased v. 4533 Calumet, LLC*, Case No. 2021 L 010115, naming EquityBuild affiliate 4533-37 S Calumet, LLC, and property manager WPD Management, LLC, along with the third-party who purchased the property from the Receiver in December 2020. WPD was served with the summons and complaint; the EquityBuild entity has not been served. On November 18, 2021, the Receiver tendered the case to its insurer on behalf of WPD Management and 4533-37 S Calumet LLC, and notified plaintiff's counsel of the Receivership and stay of litigation. On January 10, 2022, the insurance carrier denied coverage based primarily on fungus and total pollutants exemptions in the policy. The Receiver has requested that a stay order be entered in light of the Court's Order Appointing Receiver, and understands that Plaintiffs have filed such a motion to stay the proceedings.

f. <u>Notice of Appointment of Receiver</u>

The Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver will continue to deliver notices to individuals or entities that have been identified as potentially possessing property, business, books, records, or

accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or otherwise been involved with, any of the assets of the Receivership Defendants.

      g.    <u>Claimant Communications</u>

The Receiver has provided numerous resources to keep claimants informed. To provide basic information, the Receiver established a webpage (http://rdaplaw.net/receivership-for-equitybuild) for claimants and other interested parties to obtain information and certain court filings related to the Receivership Estate. A copy of this Status Report will be posted on the Receivership web site.

Court filings and orders are also available through PACER, which is an electronic filing system used for submissions to the Court. Investor claimants and others seeking court filings and orders can visit www.ilnd.uscourts.gov for information about accessing filings through PACER.

Beyond those avenues, the Receiver continues to receive and respond to numerous emails and voicemails from claimants and their representatives. The Receiver and his staff responded to approximately 120 such inquiries during the Fourth Quarter 2021, in addition to numerous oral and other written communications. The Receiver will continue to work to ensure that information is available and/or otherwise provided as quickly and completely as practicable, asks all stakeholders and interested parties for patience during this lengthy process, and reiterates that responding to individual inquiries depletes Receivership assets. These quarterly status reports and the Receiver's other court filings remain the most efficient means of communicating information regarding the activities of the Receivership Estate.

      h.    <u>Control of Receivership Property and Records</u>

The Receiver has continued efforts to preserve all EquityBuild property and records. The Receiver is maintaining two platforms of records and data. Access to the database containing

EquityBuild's documents created pursuant to the Court's order approving the institutional lenders' plan to process the EquityBuild internal documents, (Dkt. No. 915), was extended to January 31, 2022, pursuant to a request from an institutional-lender claimant. The Receiver ensured that all other claimants had the opportunity to extend their access to the database (or to sign up for new access for the month of January for a nominal fee as well as agreement regarding keeping the documents confidential. (Dkt. No. 940)

  i. <u>Securing Bank and Investment Accounts</u>

The Receiver notified, contacted, and conferred with the banks and other financial institutions identified as having custody or control of funds, accounts, or other assets held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants. The Receiver is still pursuing records from certain institutions.

  j. <u>Factual Investigation</u>

The Receiver and his retained professionals have continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents (now available in the CloudNine database, which will remain available through January 31, 2022); (iv) available underlying transaction documents received to-date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees. The Receiver issued additional subpoenas during the quarter.

  k. <u>Tax Issues</u>

The Receiver has informed investors that he cannot provide advice on tax matters. Moreover, the Receiver and his retained professionals do not plan to issue 1099-INT's. With

respect to valuation, loss, or other tax issues, investors and their tax advisors may wish to seek independent tax advice and to consider IRS Rev. Proc. 2009-20 and IRS Rev. Rul. 2009-9.

BrookWeiner was retained to perform accounting, tax, and related work in connection with winding down the business operations of the Receivership Defendants. BrookWeiner also has compiled property statements and property spreadsheets and assisted with cash flow analysis matters.

l.  Accounts Established by the Receiver for the Benefit of the Receivership Estate

The Receiver established custodial accounts at a federally insured financial institution to hold all cash proceeds from the sale of the Receivership property. These interest-bearing checking accounts are used by the Receiver to collect liquid assets of the Estate and to pay portfolio-related and administrative expenses. The Receiver also established separate interest-bearing accounts to hold funds from the sale of real estate, as directed by Court order, until such time as it becomes appropriate to distribute such funds, upon Court approval, to the various creditors of the Estate, including but not limited to the defrauded investors or lenders. Attached as **Exhibit 2** is a schedule reflecting the balance of funds in these property specific accounts as of December 31, 2021, with a description of any changes to the account balance during the quarter.

II. **RECEIVER'S FUND ACCOUNTING**

The Receiver's Standardized Fund Accounting Report ("SFAR") for the Fourth Quarter 2021 is attached hereto as **Exhibit 3.** The SFAR discloses the funds received and disbursed from the Receivership Estate during this reporting period. As reported in the SFAR, cash on hand as of December 31, 2021 equaled $1,019,746.01. The information reflected in the SFAR is based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

**III.    RECEIVER'S SCHEDULE OF RECEIPTS AND DISBURSEMENTS**

The Receiver's Schedules of Receipts and Disbursements ("Schedule") for the Fourth Quarter 2021 are attached hereto as **Exhibit 4.**  These Schedules in the aggregate reflect $3,657.25 in total receipts and $31,505.00 in total disbursements to and from the Receiver's (non-property) accounts.

**IV.    RECEIVERSHIP PROPERTY**

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit 5.**  The Master Asset List identifies 56 checking accounts in the names of the affiliate entities identified as Receivership Defendants, reflecting transfers of $213,249.56 to the Receiver's account.  (*See also* Dkt. No. 348 at 23-24 for additional information relating to these funds) The Master Asset List also identifies funds in the Receiver's account in the amount of $1,019,746.01.

The Master Asset List does not include funds received or recovered after December 31, 2021.  Nor does it include potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests.  The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate.

Additionally the balances of the 105 property-specific interest-bearing accounts established to hold the proceeds from sold real estate is attached as Exhibit 2.  These accounts cumulatively contained $68,938,527.86 as of December 31, 2021.

**V.    LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY THE RECEIVERSHIP ESTATE**

The Receiver and his attorneys are analyzing and identifying potential claims, including, but not limited to, potential fraudulent transfer claims and claims for aiding and abetting the fraud

of the Receivership Defendants. As it relates to potential actions against claimants, the Receiver anticipates that any such claims will be brought as part of the claims dispute resolution process.

During the fourth quarter of 2021, the Receiver continued to prosecute actions in the Circuit Court of Cook County against former EquityBuild outside counsel.

In Duff v. Rock Fusco & Connelly, LLC, Ioana Salajanu, and Berbert Bregman Schwartz & Gilday, LLC, Case No. 20-L-8843 (the "Rock Fusco Action"), the court entered a case management order closing written discovery on December 20, 2021 and closing oral discovery of lay witnesses on April 20, 2022. On December 17, 2021, the Receiver petitioned to intervene in Liberty EBCP, LLC v. Rock Fusco & Connelly, LLC, and Ioana Salajanu, Case No. 20-L-4725 for the purpose of enforcing the stay of litigation contained in the Order Appointing Receiver (Dkt. 16).

On December 17, 2021, the Receiver moved to consolidate Duff v. Mark L. Rosenberg and Law Offices of Mark L. Rosenberg, Case No. 21-L-9608 (the "Rosenberg Action"), with the Rock Fusco Action. On December 21, 2021, however, the defendants in the Rosenberg Action filed a notice of removal, as a result of which the case is now pending in the United States District Court for the Northern District of Illinois as Civil Action No. 21-cv-6756.

Additionally, during the quarter the Receiver served multiple subpoenas for records related to his claims and potential claims, and the Receiver and his professionals reviewed the records that were produced pursuant to these and previously-served subpoenas.

## VI. CREDITORS AND CLAIMS AGAINST THE RECEIVERSHIP ESTATE

The identification and compilation of claims submitted in this matter has been extraordinarily complex and time-consuming due to the unique circumstances and facts in this case. For example, it appears that in many instances anticipated proceeds of investor-lender loans rolled into new offerings rather than being paid off at maturity. It also appears that in some

circumstances the mortgages securing loans may have been released without investor-lenders' knowledge or consent, allowing the Defendants to refinance the properties with new loans without retiring the existing loans. Moreover, some investor-lenders may have been induced to exchange secured loans for unsecured loans or equity positions through false representations. Additionally, claims against many properties are complicated by cross-collateralized mortgages. The claims process has also been complicated by, among other things: (i) improperly completed proofs of claim, (ii) claims relating to properties that were conveyed to third-parties prior to the establishment of the Receivership; and (iii) claims lacking reference to properties, or relating solely to what appear to be equity investment vehicles.

During the Fourth Quarter 2021, the Receiver continued to work on the accuracy and completeness of its records regarding the nearly 2400 submitted claims.[4] Attached hereto as **Exhibit 6** is an updated version of the Receiver's "Master Claims Exhibit" listing, showing for each individual claim submitted, (i) the property address or fund name, (ii) the type (*e.g.,* property in the Receivership Estate, a former EquityBuild property disposed of prior to the establishment of the receivership, or an equity fund), (iii) the claimant name, (iv) the total amount claimed, (v) the category identified by the claimant (*e.g.,* investor-lender, equity investor, institutional lender, trade creditor, independent contractor or other), (vi) the amount claimed to have been loaned or invested in the particular property or fund (where it could be determined from the face of the claim form), and (vii) the unique claim number assigned to the claim. The updated Exhibit 6 reflects

---

[4] Because many of the Proof of Claim ("POC") forms submitted to the Receiver included claims against more than one property, and many claimants submitted more than one POC for the same claims, the most accurate measure of the total number of claims is the number of unique claims against a particular property or fund, which total nearly 2400. About 165 of these claims, however, are asserted against properties that are not part of the Receivership Estate, because they were sold or otherwise disposed of before the Order Appointing Receiver was entered.

any additional information provided to the Receiver by claimants since the filing of the Receiver's last status report.

However, despite the claims review and analysis undertaken to date, the Receiver has not yet been able to review all of the documents submitted with each claim form, and thus makes no conclusions or recommendations to the Court or to the claimants as to the validity, certainty, eligibility, or priority of any particular claim at this time. The balance of the Receiver's review of submitted claims will continue as part of the claims process that is discussed further below.

The summary claims resolution process with respect to the first group of properties began on July 6, 2021. (Dkt. No. 999) During the quarter, the Receiver and his counsel reviewed and analyzed the claim submissions and discovery responses of the institutional lender and the investor lenders involved in Group 1, and conducted database searches of EquityBuild's records relating to these claimants. A total of ten depositions were taken in the Group 1 process—of institutional lender BC57, LLC ("BC57") (through its corporate representative Jason Jarjosa), its transaction counsel (Kasturi Bagchi), a BC57 employee (Matt Turzewski), a representative of the title company (Maribel Morales), five individual investor-lender claimants (Mark Young, Charles Anglin, Randall Pong, Cecilia Wolff, Jill Meekcoms), and the expert witness designated by BC57 (Bushnell Nielsen).

Additionally, the Receiver engaged in motion practice regarding Group 1 discovery, including BC57's motion to compel discovery from certain investor-lenders (Dkt. Nos. 1054, 1070) and BC57's motion to designate an expert witness and the related motion to modify the Group 1 schedule to allow for expert discovery (Dkt. Nos. 1076, 1085, 1091). During the quarter, the Receiver also worked to prepare a disclosure of his fraudulent conveyance claim against BC57, which was filed on January 7, 2022.

During the quarter, the Receiver and his counsel fielded numerous communications with Group 1 claimants regarding the discovery and claims process, and provided technical assistance relating to the depositions and claimants' standard and additional discovery responses. The Receiver's professionals also shared claims files with claimants who did not download the records from Avalon when they were made available to claimants in March and April of 2021.

The Receiver and his counsel also engaged in motion practice initiated by institutional lenders U.S. Bank National Association and Midland Loan Services regarding the process for the resolution of their claims relating to properties in which no other claimants have submitted a claim. Following extensive negotiation, these claimants and the Receiver filed a joint motion to determine the claims process for those properties (Dkt. No. 1073). Pursuant to the Court's order (Dkt. No. 1090), the Receiver worked with claimants' counsel to draft and serve served six subpoenas on third-party title companies Primary Title Services LLC, OS National LLC, Avenue 365 Title Company and Chicago Title Insurance Company, and loan originators CBRE Capital Markets Inc. and Corevest American Finance Lender LLC. During the quarter, the Receiver's counsel also began to review the nearly 10,000 pages constituting these institutional lenders' proofs of claim submissions, as well as their discovery responses.

The Receiver and his counsel also worked to resolve a motion filed by counsel for certain claimants for leave to intervene in these proceedings in order to request leave to name EquityBuild in certain mortgage foreclosure actions relating to properties that EquityBuild sold before the commencement of the receivership. (Dkt. Nos. 1065, 1093). After this motion was briefed, the Receiver entered a Stipulated Proposed Order allowing the intervenors to name EquityBuild in the foreclosure actions pursuant to their agreement that they will not seek a deficiency judgment against EquityBuild, nor will they seek any discovery from the Receiver. The proposed stipulated

14

order further provides that any other party to the foreclosure action will need to petition the court for relief from the Court's stay of proceedings in order to assert a claim against EquityBuild or seek discovery from the Receiver.

Finally, the Receiver repeats the following reminders regarding claims and the claims process: Claimants may want to consider whether to hire counsel to assist them with the claims process. Claimants do not have an obligation to retain counsel in order to participate in the claims process, but the Receiver and his counsel cannot provide legal advice to any claimant, nor can the Receiver advise claimants regarding whether or not they should retain counsel. Any claimant that chooses to proceed without counsel should visit the section of the Court's website (www.ilnd.uscourts.gov) named "Information for People Without Lawyers (Pro Se)" which provides useful information and also states the following: "The rules, procedures and law that affect your case are very often hard to understand. With that in mind, you should seriously consider trying to obtain professional legal assistance from an attorney instead of representing yourself as a pro se party." Claimants may also want to speak with a lawyer to assist them in determining for themselves whether or not to retain counsel.

All claimants have a continuing responsibility to ensure that the Receiver at all times has current and up-to-date contact information so that the Receiver may provide important information relating to the claims process, the claimant's claim, or the Receivership Estate. Claimants may provide changes to or updated contact information to the Receiver at equitybuildclaims@rdaplaw.net.

### VII. PROFESSIONAL FEES AND EXPENSES

As of December 31, 2021, there were approximately $2,862,944.26 in unpaid fees and expenses for all professionals that have been approved by the Court, and the Receiver has submitted applications for an additional $185,528.04 for the second quarter of 2021 (Dkt. No.

1026) and $155,709.74 for the third quarter of 2021 (Dkt. No. 1087), each of which remains pending.[5]

On August 17, 2021, the Court entered its Order Approving First-Priority Receiver's Lien for Certain Categories of Expenses, granting in part the Receiver's motion for approval to pay certain previously approved fees and costs. (Dkt. Nos. 947, 1030) The Court approved a first-priority lien and the interim payment of fees for two categories of activity: (1) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate; and (2) the implementation and management of an orderly summary claim-priority adjudication process, subject to a 20% holdback on fees paid pursuant to the Receiver's lien. (Dkt. No. 1030) The Court denied without prejudice the approval of the schedules submitted by the Receiver allocating previously-approved fees to specific properties in accordance with the approved allocation methodology to the Court on April 28, 2021 (Dkt. Nos. 981-1 to 981-6), directing the Receiver to seek approval of his proposed allocations in a separate motion to be referred to Magistrate Judge Kim for disposition. (Dkt. 1030)

The Receiver and his counsel devoted an enormous amount of time during the quarter to reviewing and modifying the allocation schedules covering his First through Eighth Fee Applications that previously had been submitted in support of his motion (Dkt. No. 981) in light of feedback received from counsel for certain institutional lenders, and preparing fee allocation schedules for his Ninth through Thirteenth Fee Applications.[6]

---

[5] Due to a clerical error, the approved and unpaid fees reported in the Receiver's Third Quarter 2021 status report were inadvertently overstated. The actual amount of approved and unpaid fees as of September 30, 2021 was $2,885,340.46.

[6] In accordance with the Court's direction (Dkt. No. 1030, p.17), the Receiver submitted proposed allocations for the Thirteenth Fee Application when that application was initially submitted on November 15, 2021.

16

On December 22, 2021, the Receiver filed his Motion for Approval of Allocation of Fees to Properties for Payment Pursuant to Receiver's Lien (Dkt. No. 1107). The Court referred the motion to Magistrate Judge Kim, who held a hearing on January 12, 2022, setting a February 18, 2022 deadline for objections and a March 11, 2022 deadline for the Receiver to reply. (Dkt. No. 1127)

**VIII.  CONCLUSION**

At this time, the Receiver recommends the continuation of the Receivership for at least the following reasons:

1. Preservation, maintenance, operation and disposition of the remaining real estate asset in the Receivership Estate;

2. The continued investigation and analysis of current assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests;

3. The continued investigation, analysis, and recommendations regarding the claims against the Receivership Estate, including, but not limited to, the claims and records of investors;

4. The continued investigation, analysis, and recovery of potential fraudulent transfer claims and claims against third parties;

5. The continued analysis and formulation, in consultation with the SEC and the Court, of a just and fair distribution plan for the creditors of the Receivership Estate; and

6. The discharge of any other legal and/or appointed duties of the Receiver as identified in the August 17, 2018 Order Appointing Receiver, or as the Court deems necessary.

Dated:  January 31, 2022                             Kevin B. Duff, Receiver

                                                    By:    /s/  Michael Rachlis

                                          Michael Rachlis (mrachlis@rdaplaw.net)
                                          Jodi Rosen Wine (jwine@rdaplaw.net)
                                          Rachlis Duff & Peel, LLC
                                          542 South Dearborn Street, Suite 900
                                          Chicago, IL 60605
                                          Phone (312) 733-3950; Fax (312) 733-3952

**CERTIFICATE OF SERVICE**

I hereby certify that I provided service of the foregoing Receiver's Fourteenth Status Report, via ECF filing, to all counsel of record on January 31, 2022.

I further certify that I caused true and correct copies of the foregoing to be served upon the following individuals or entities by electronic mail:

- All known EquityBuild investors; and

- All known individuals or entities that submitted a proof of claim in this action (sent to the e-mail address each claimant provided on the claim form).

I further certify that the Receiver's Fourteenth Status Report will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net