UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>    Defendants. | Case No. 1:18-cv-5587<br><br>Hon. John Z. Lee |

**MORTGAGEES' RESPONSE TO RECEIVER'S THIRTEENTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The Mortgagees identified on Exhibit A object to the Receiver's Thirteenth Interim Fee Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (the "13th Fee Application") on the same bases as their prior objections, which objections this Court has denied. They further object to the Receiver's request in his 13th Fee Application for a blanket super priority lien for all of the entries on Exhibit J and for the fees and costs to be allocated as shown on Exhibit J on the grounds that (1) the Receiver fails to show in his 13th Fee Application that all of the tasks performed during the second quarter of 2021 for which he seeks a super priority lien were incurred in (i) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate, or (ii) the implementation and management of an orderly summary claim-priority adjudication process; and (2) many of the tasks appear to relate to the Group 1 litigation, which the Court found that, at this time, would not support a priority lien. The Mortgagees request that the Receiver's request for a priority lien and his allocations be referred to Judge Kim because similar objections are

**Error! Unknown document property name.**

being raised by the Mortgagees in response to the Receiver's Motion for Approval of Allocations of Fees to Properties for Payment Pursuant to Receiver's Lien ("Fee Allocation Motion") (Dkt. 1107) currently pending before judge Kim. Finally, the Mortgagees request that the Court subject any fees it may approve to a 20% holdback, which the Court has already ruled shall apply. Dkt 1031.

## BACKGROUND

1.      During the course of the Receivership, the Receiver has submitted quarterly requests for approval of his fees and expenses ("Fees") to which the Mortgagees objected, arguing, among other things, that the Estate was underwater, and that many of their secured claims exceeded the value of their collateral. (*See e.g.* Dkts. 442, 511, 581, 595, 617, 648, 777, 907, 960, 1000 and 1039.) The Court has denied these objections. (See Dkt. 1031.)

2.      On October 26, 2020, the Court awarded the Receiver a receiver's lien and approved the Receiver's methodology of allocating that lien among the Properties: "expenses relating directly to a property will be allocated to that property; billing pertaining to the recovery of unsecured funds will not be allocated to any properties; and remaining fees and expenses will be allocated to the properties as a percentage of their gross sales price, once that value is determined for each." (Dkt. 824, p. 5.)  However, the Court stated that the priority of the Receiver's lien as to any of the Properties – whether it would prime a secured lien – would be determined as part of the claims resolution process. (Dkt. 824, p. 6.)

3.      On August 17, 2021, the Court, over the Mortgagees' objections (*see* Dkt. 961), determined that the Receiver would be entitled to a super priority lien for certain categories of expenses. (Dkt. 1030.) In entering that order, the Court recited that the Receiver has now

conceded that there were insufficient unencumbered Estate assets to pay his Fees and sought the imposition of a first priority or priming lien against the Properties. (Dkt 755; 1030, p. 5.)

4. The two Court-approved categories that would be the basis of a priority lien were fees incurred for "(1) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate; and (2) the implementation and management of an orderly summary claim-priority adjudication process." (Dkt. 1030.) The Court noted that it was not declaring that every entry on the Receiver's submitted schedules "actually falls within the two categories of billing described above. Magistrate Judge Kim may find that a particular line item falls outside those categories or reflects activities that will not benefit the Estate's creditors." (Dkt. 1030, pp. 161-7.) The Court also excluded, for the time being, Fees related to the claim-priority adjudications, such as discovery, filing a framing report, and making recommendations to the Court, because the benefit to the to-be-determined first-priority secured creditor cannot be determined until the conclusion of the claims process. (Dkt. 1030, p. 14, n.7.) The Court also excluded, for the time being, Fees related to the claim-priority adjudications, such as discovery, filing a framing report, and making recommendations to the Court, because the benefit to the to-be-determined first-priority secured creditor cannot be determined until the conclusion of the claims process. (Dkt. 1030, p. 14, n.7.)

5. The Court also authorized interim payments of the Receiver's Fees through the priming lien, but mandated a 20% holdback on the payment of all fees, but not expenses. (Dkt. 1030, p. 15.) Based upon the 20% holdback of fees requested in the Receiver's 9th, 10th and 11th fee application (Dkt. 1031), any fees approved for payment in Dkt. 1031 are limited to 80% of the 80% of the fees approved for payment pursuant to the Fee Allocation Motion.
3

6. The Court directed that the Receiver may seek approval of his proposed allocation by a separate motion to be referred to Magistrate Judge Kim for disposition, with instructions that the Receiver file by September 7, 2021 a motion for his proposed line-by-line and property-by-property fee allocation. (Dkt. 1030.) In a footnote, the Court advised the Receiver "to be mindful of *Elliott's* [*SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992] admonishment that an across-the-board allocation may be inappropriate. *Elliott*, 953 F.2d at 1578 ("We hold that merely counting heads is not an equitable way to divide the burden of the receivership. *Secured creditors should only be charged for the benefit they actually receive.* That their claims represented a large portion of the gross proceeds does not necessarily mean the Receiver spent an equally proportionate amount of time on their claims. . . . What is required is that an earnest effort be made to devise a method of allocating the actual costs of the receivership to specific assets and that the [allocation] order . . . disclose the results of this effort." [Emphasis added.]). *Cf. Gaskill v. Gordon*, 27 F.3d 248, 254 (7th Cir. 1994) ("We must remand this case to the district court to set out in greater detail the expenditures included in the $265,000 lien.") (Dkt. 1030, p.16, n.8.)

7. On December 22, 2021, the Receiver filed his Fee Allocation Motion. (Dkt. 1107.) His allocations were set forth in 108 different property reports, averaging 180 pages each, and a 190-page General Task Detail, which showed fees allocated to each of the properties based upon gross sale proceeds. (Dkt. 1107.)

8. On February 10, 2022 , the Mortgagees filed their Motion For Appointment Of A Fee Examiner, Or, In The Alternative, to Establish A Practical And Cost Effective Procedure To Respond To The Receiver's Fee Allocation Motion And Sufficient Time To Do So. (Dkt. 1177.)

9. On February 16, 2022, Magistrate Judge Kim heard arguments on the Mortgagees' motion to appoint a fee examiner (Dkt. 1180), and ruled on that motion on February 17 (Dkt. 1184).

## I. The Mortgagees Assert The Same Objections To The Receiver's 13th Fee Application As They Asserted To The Receiver's Prior Fee Applications.

The Mortgagees adopt and assert their objections to the Receiver's prior fee applications to the Receiver's 13th Fee Application. Although the Court has denied those objections, the Mortgagees seek to preserve them.

## II. The Receiver Has Failed to Show That His Fees and Expenses in His 13th Fee Application Fall Within the Categories of Tasks That The Court Found Would Support Payment on a Priority Basis.

The Receiver has submitted Exhibit J to show his allocations to the various properties. Exhibit J does not show the amount of the Receiver's allocation to a particular property. The Mortgagees object to allocations that are based upon the gross proceeds from the sale of the property, without consideration of the tasks performed for a particular property or the benefit to that property. Although the Court approved the Receiver's methodology (see Dkt. 824, p. 5), it also admonished the Receiver in a footnote in a subsequent order that "Secured creditors should only be charged for the benefit they actually receive. That their claims represented a large portion of the gross proceeds does not necessarily mean the Receiver spent an equally proportionate amount of time on their claims." (Dkt. 1030, p.16, n.8.)

Some of the descriptions of the tasks performed are not sufficiently clear to show whether the task falls within the meaning of the Court-approved categories: (1) fees and expenses incurred for the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate; and (2) fees and expenses incurred for the implementation and management

**Error! Unknown document property name.**

of an orderly summary claim-priority adjudication process, or describes an activity that benefitted the Estate's creditors. (Dkt. 1030, p. 11.) In particular, several issues arise concerning the Receiver's allocations. On Exhibit B to this Response, The Mortgagees have highlighted some of the "entry dates" on the Receiver's Exhibit J to his motion for tasks where the description of the task does not show that the work falls within one of the two Court-approved categories or that the activity benefitted the Estate's creditors.

- o Some of the tasks relate to the Group 1 litigation, some of which are highlighted on Exhibit 1 in yellow. The Court, excluded for the time being, fees related to the claim-priority adjudications, such as discovery, filing a framing report, and making recommendations to the Court, because the benefit to the to-be-determined first-priority secured creditor cannot be determined until the conclusion of the claims process. (Dkt. 1030, p. 14, n.7.)
- o Some of the tasks relate to City of Chicago code violation matters which may have arisen from acts or omissions of the Receiver or his property managers, and thus should not support a priority lien. The creditors should not bear the costs arising from those errors or omissions. Some of these entries are highlighted in green.
- o Some fees were incurred preparing and presenting "restoration motions" to restore funds after the Receiver used funds from some properties to benefit other properties, which practice the Court rejected. In the fall of 2018, certain Mortgagees objected to the Receiver's use of rents collected from one property encumbered by a mortgage to benefit another property on the grounds that that practice was not permitted by the Court's order appointing the Receiver because

6

the rents were not Receivership assets. (*See e.g.* Dkt. 90; 109.) On February 13, 2019, the Court ordered the Receiver not to commingle the rents, to account for rents received, and restore the rents. (Dkt. 223, p. 9.) Because the Receiver improperly comingled rents, fees and expenses incurred in connection with rent restoration motions do not support a priming lien. Some of these entries are highlighted in blue.

- o Some of the fees clearly do not fall within any of the Court-approved categories of fees which can prime secured interests, such as fees incurred with respect to a third-party subpoena to obtain EquityBuild records. Some of the these entries are highlighted in orange.

In addition, the Receiver inappropriately attempts to allocate fees related to "Claims Administration and Objections" to the Single-Claim Properties.[1] Midland and US Bank as Trustee (both as defined in Exhibit A) object to the allocation of such fees to the Single-Claim properties on the following grounds:

- o Fees related to the implementation and management of the summary claim-priority adjudication process incurred after January 30, 2020 – the date that the Receiver identified the Single-Claim Properties in his Sixth Status Report (ECF 624) are not entitled to a priority over the secured creditors' liens for those

---

[1] The Single-Claim Properties are properties against which only one claimant has asserted that it holds a lien. They are: 1017 W 102nd Street, 1516 E 85th Place, 2136 W 83rd Street, 417 Oglesby Avenue, 7922 S Luella Avenue, 8030 S Marquette Avenue, 8104 S Kingston Avenue, 8403 S Aberdeen Street, 8529 S Rhodes Avenue, 11318 S Church Street, 2129 W 71st Street, 6749-59 S Merrill Avenue, 7110 S Cornell Avenue, 7925 S. Kingston, 9212 S. Parnell, 7210 S. Vernon, 6825 S. Indiana, 406 E 87th Place, 6554 S. Rhodes, 7712 S. Euclid, 8432 S. Essex, 3213 S Throop, 8107 S. Kingston, 8346 S. Constance, 10012 S LaSalle, 9610 S. Woodlawn, 6759 S. Indiana Ave, and 8517 S. Vernon.

Error! Unknown document property name.

properties. The Single-Claim Properties are not subject to the summary claim priority adjudication process and ceased to benefit from it once the Receiver established that there were no competing claims to those Properties.

- o Fees related to process for resolving the Receiver's objections to Midland's and US Bank as Trustee's claims on the Single-Claim Properties are not entitled to a lien or priority lien. If the Receiver objects and prevails, the liens would be invalid making the proceeds of the sale of the affected properties unsecured funds. Any recovery would be for the benefit of the unsecured creditors. As such, these fees fall within the Court's prohibition of a lien for fees "pertaining to the recovery of unsecured funds." Order Granting Receiver's 7th and 8th Fee Applications (ECF 824); *also SEC v. Elliott*, 953 F.2d 1560, 1577-78 (11th Cir. 1992) (holding that secured creditors "are not liable for the Receiver's time spent on activities adverse to them," including "the time the Receiver spent opposing their claims to be secured.")

Accordingly, Midland and US Bank as Trustee object to all time in the "Claims Administration and Objections" category allocated to the Single-Claim properties.

**III.    The Receiver's Request For A Priming Lien Based Upon The Tasks Identified On Exhibit J And Allocated As Shown On Exhibit J Should Be Referred To Judge Kim.**

The Court previously referred to Magistrate Judge Kim for disposition the Receiver's Fee Allocation Motion. (Dkt. 1112.) That motion is currently pending before Magistrate Judge Kim. The Mortgagees request that the Receiver's request that the tasks shown on Exhibit J be approved as a priming lien and allocated as shown on that exhibit should be referred to Judge Kim for the same reasons that the Receiver's Fee Allocation Motion has been referred to Judge Kim and to foster uniformity.

Error! Unknown document property name.

## IV. The 13th Fee Application Should Be Subject To A 20% Holdback.

Consistent with the Court's order approving the Receiver's ninth, tenth and eleventh fee petitions (Dkt. 1031, pp. 13-14), if the Court approves the fees requested in the 13th Fee Application, the Mortgagees request that any approved fees be subject to a 20% holdback. Further, consistent with the Court's August 17th Order (Dkt. 1030, pp. 14-16), if the Receiver seeks to pay its approved fees from the proceeds of the sales of the properties, the Mortgagees request an additional 20% holdback. In further support of this request, the Mortgagees incorporate by reference their requests for a 20% holdback contained in the Mortgagees' objections to the Receiver's ninth, tenth and eleventh fee applications (Dkts. 907, pp.10-12, 960, pp. 12-4, and 1000, pp. 11-13).

## CONCLUSION

Consequently, the Mortgagees request that the Court deny the Receivers 13th Fee Application on the grounds raised in their objections to the Receiver's prior fee applications. If the fees are approved. the Mortgagees request that the Receiver's request the fees and cost identified on Exhibit J be referred to Judge Kim to determine whether they support a priming lien and, if so, the Receiver's allocation.

Respectfully submitted,

| /s/ Michael Gilman<br><br>Edward S. Weil<br>(eweil@dykema.com)<br>Michael A. Gilman<br>(mgilman@dykema.com)<br>Todd Gale<br>(tgale@dykema.com)<br>Benjamin W. Chertok<br>(bchertok@dykema.com) | /s/ Ronald A. Damashek<br>Ronald Damashek<br>(rdamashek@dickinsonwright.com)<br>Dickinson Wright PLLC<br>55 West Monroe Street — Suite 1200<br>Chicago, Illinois 60603<br>**PH:** (312) 377-7858<br>Fax: (312) 423-8160<br>*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through* |
|---|---|

| | |
|---|---|
| Kevin Connor (kconnor@dykema.com)<br>Dykema Gossett PLLC<br>10 S. Wacker Drive<br>Suite 2300<br>Chicago, Illinois 60606<br>(312) 627-5675<br>*Federal Home Loan Mortgage Corporation Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Wilmington Trust, National Association, as Trustee for the Registered Holders of UBS Commercial Mortgage Trust 2017-C1,Commercial Mortgage Pass-Through Certificates, Series 2017-C1; Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; Federal National Mortgage Association; U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30 Sabal TL1 LLC; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Benefit of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Registered Holders of* | *Certificates, Series 2018-SB14; Midland Loan Services, a Division of PNC Bank, National Association; Thorofare Asset Based Lending REIT Fund IV, LLC; and EBCP, LLC*<br><br><br>s/ *Jill L. Nicholson*<br>Jill L. Nicholson (jnicholson@foley.com)<br>Andrew T. McClain (amcclain@foley.com)<br>Foley & Lardner LLP<br>321 N. Clark St., Ste. 3000<br>Chicago, IL 60654<br>Ph: (312) 832-4500<br>Fax: (312) 644-7528<br>*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Federal National Mortgage Association; and Sabal TL1, LLC* |

| | |
|---|---|
| *Corevest American Finance 2017-2 Trust, Mortgage Pass-Through Certificates, Series 2017¬2; BC57, LLC; UBS AG; 1111 Crest Dr., LLC, Pakravan Living Trust, Hamid Ismail, Farsaa, Inc.; Thorofare Asset Based Lending REIT Fund IV LLC* | |
| s/*Jay L. Welford*<br>Jay L. Welford<br>Counsel to Liberty EBCP, LLC<br>jwelford@jaffelaw.com<br>JAFFE RAITT, HEUER & WEISS, P.C.<br>Jay L. Welford (P34471)<br>27777 Franklin Road, Suite 2500<br>Southfield, Michigan 48034<br>(248) 351-3000<br><br>s/ *Mark S. Landman*<br>mlandman@lcbf.com<br>Landman Corsi Ballaine & Ford P.C.<br>120 Broadway, 13th Floor<br>New York, NY 10271<br>Ph: (212) 238-4800<br>Fax: (212) 238-4848<br>*Counsel for Freddie Mac*<br><br>/s/ *Thomas B. Fullerton*<br>Thomas B. Fullerton (6296539)<br>Akerman LLP<br>71 S. Wacker Drive, 47th Floor<br>Chicago, IL 60606<br>(312) 634-5700<br>thomas.fullerton@akerman.com<br><br>/s/ *Michael D. Napoli*<br>Michael D. Napoli (TX 14803400)<br>Akerman LLP<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>(214) 720-4360<br>michael.napoli@akerman.com<br>*Counsel for Midland Loan Services, a Division of PNC Bank, National Association* | s/ *William J. Serritella, Jr.*<br>William J. Serritella, Jr.<br>wserritella@taftlaw.com<br>Zachary R. Clark<br>zclark@taftlaw.com<br>Taft Stettinius & Hollister LLP<br>111 East Wacker Drive, Suite 2800<br>Chicago, IL 60601<br>(312) 527-4000<br><br>/s/ *Jennifer Walker*<br>Jennifer Walker<br>JWalker@plunkettcooney.com<br>Plunkett Cooney, PC<br>221 N. LaSalle Street, Ste. 3500<br>Chicago, IL 60601<br>Ph: (312) 970-3410<br>Fax: (248) 901-4040<br>*Counsel for UBS AG*<br><br>/s/*Scott Mueller*<br>Scott B. Mueller, #6294642<br>(Scott.Mueller@stinson.com)<br>7700 Forsyth Blvd., Suite 1100<br>St. Louis, MO 63105<br>Phone: (314) 863-0800<br>Fax: (314) 259-3931<br>*Attorneys for BMO Harris Bank, N.A., and Midland Loan Services, a division of PNC Bank, NA, acting under authority designated by Colony American Finance Lender, LLC, assignee Wilmington Trust, N.A. as Trustee for the benefit of registered holder of Colony American Finance 2015-1* |

|  | /s/ *David Hart* <br> David Hart <br> (dhart@maddinhauser.com) <br> Maddin, Hauser, Roth & Heller, P.C. <br> 28400 Northwestern Highway <br> Suite 200-Essex Centre <br> Southfield MI 48034 <br> Phone: (248) 827-1884 <br> Fax: (248) 359-6184 <br> *Counsel for BC57, LLC* |
|---|---|

**Error! Unknown document property name.**

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 18, 2022, I caused the foregoing **MORTGAGEES' RESPONSE TO RECEIVER'S THIRTEENTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS** to be electronically filed with the Clerk of Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record.

                                                      */s/ Corinne A. Coluzzi*

097077.000109 4834-8796-9528.1