## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

          v.

EQUITYBUILD, INC., EQUITYBUILD
FINANCE, LLC, JEROME H. COHEN, and
SHAUN D. COHEN,

                    Defendants.

Civil Action No. 1:18-cv-5587

Judge John Z. Lee

Magistrate Judge Young B. Kim

## EXHIBIT A TO BC57, LLC'S MOTION TO COMPEL
## RECEIVER DEPOSITION [Dkt. 1191]

BC57, LLC, pursuant to the Magistrate Judge's Order of this date [Dkt. 1192], files the following

Exhibit A to BC57, LLC's Motion to Compel Receiver Deposition [Dkt. 1191]:

- Motion Hearing Transcript of November 18, 2021

### BC57, LLC

/s/David E. Hart
David E. Hart
Robert M. Horwitz
Maddin Hauser Roth & Heller, PC
28400 Northwestern Drive, 2nd Floor
Southfield, MI 48034
(248) 827-1884
dhart@maddinhauser.com
rhorwitz@maddinhauser.com
Attorneys for BC57, LLC

Dated: February 22, 2022

03566901 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2022, I caused the foregoing Exhibit A to BC57' s Motion to Compel Receiver Deposition to be electronically filed with the Clerk of Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record, and e-mailed to ebgroup1service@rdaplaw.net, which is designed to send electronic notification of such filing to all parties involved in Group 1.

*/s/ David E. Hart*
David E. Hart

# Exhibit "A"

```
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
     UNITED STATES SECURITIES AND    ) Docket No. 18 C 5587
 4   EXCHANGE COMMISSION,            )
                                     )
 5                  Plaintiffs,      )
                                     )
 6            vs.                    )
                                     )
 7   EQUITYBUILD, INC., EQUITYBUILD  )
     FINANCE, LLC, JEROME H. COHEN,  )
 8   AND SHAUN D. COHEN,             ) Chicago, Illinois
                                     ) November 18, 2021
 9                  Defendants.      ) 3:00 o'clock p.m.

10
            TRANSCRIPT OF PROCEEDINGS - VIDEOCONFERENCE MOTIONS
11                 BEFORE THE HONORABLE JOHN Z. LEE

12
     VIDEOCONFERENCE APPEARANCES:
13

14   For the Plaintiff:       U.S. SECURITIES & EXCHANGE
                                 COMMISSION
15                            BY:  MR. BENJAMIN J. HANAUER
                              175 W. Jackson Blvd., Suite 900
16                            Chicago, Illinois  60604

17
     For the Receiver:        RACHLIS, DUFF, PEEL & KAPLAN, LLC
18                            BY:  MR. MICHAEL RACHLIS
                                   MS. JODI ROSEN WINE
19                            542 South Dearborn, Suite 900
                              Chicago, Illinois  60605
20

21   Federal Home Loan Mortgage DYKEMA GOSSETT, PLLC
     Corporation, Wilmington    BY:  MR. TODD GALE
22   Trust, Citibank, Federal   10 South Wacker Drive, Suite 2300
     National Mortgage Assoc.,  Chicago, Illinois  60606
23   U.S. Bank, Sabal TL,
     Midland Loan Svcs., BC57,
24   and UBS AG:,

25
```

```
 1   APPEARANCES (Cont'd):

 2
     For U.S. Bank as Trustee:   FOLEY & LARDNER, LLP
 3                               BY:  MR. ANDREW T. McCLAIN
                                 321 N. Clark St., Suite 2800
 4                               Chicago, Illinois  60654

 5
     For Midland Loan Svcs.:     AKERMAN, LLP
 6                               BY:  MR. MICHAEL D. NAPOLI
                                 2001 Ross Avenue, Suite 3600
 7                               Dallas, Texas  75201

 8
     For Intervening Investors:  BOODELL & DOMANSKIS, LLC
 9                               BY:  MR. MAX A. STEIN
                                 1 North Franklin, Suite 1200
10                               Chicago, Illinois  60606

11
     Also Present:               MR. KEVIN B. DUFF, Receiver
12

13   Court Reporter:             MR. JOSEPH RICKHOFF
                                 Official Court Reporter
14                               219 S. Dearborn St., Suite 2128
                                 Chicago, Illinois  60604
15                               (312) 435-5562

16               *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

17                      PROCEEDINGS RECORDED BY
                        MECHANICAL STENOGRAPHY
18               TRANSCRIPT PRODUCED BY COMPUTER

19

20

21

22

23

24

25
```

```
 1            (Proceedings had via videoconference:)
 2                THE CLERK:  18 CV 5587, SEC vs. Equitybuild.
 3                THE COURT:  Good afternoon.
 4                Who is appearing on behalf of the SEC?
 5                MR. HANAUER:  Good afternoon, your Honor, Ben Hanauer
 6  for the SEC.
 7                THE COURT:  Who is appearing on behalf of the
 8  receiver?
 9                MR. RACHLIS:  Good afternoon, your Honor, Michael
10  Rachlis and Jody Rosen Wine on behalf of the receiver.  The
11  receiver Kevin Duff is also on the line, as well.
12                THE COURT:  Good afternoon.
13                So, there are a number of other attorneys who are
14  joining us for this videoconference who have motions up.  Can
15  you go ahead and identify yourselves for the record, please.
16                MR. STEIN:  Good afternoon, your Honor, Max Stein on
17  behalf of certain individual investor lenders.
18                MR. McCLAIN:  Good afternoon, your Honor, Andrew
19  McClain on behalf of U.S. Bank as trustee.
20                MR. GALE:  Good afternoon, your Honor, Todd Gale.  I
21  represent a number of institutional investors, including in
22  Group 1 BC57, LLC.
23                THE COURT:  Anyone else?
24            (No response.)
25                THE COURT:  Okay.
```

1          So, as I said, there are a couple of motions that I

2    want to address today.  The first one is the motion for leave

3    to include an expert witness disclosure in the position

4    statement.  I have reviewed the briefs, and I wondered if

5    the -- I was trying to determine what exactly the particular

6    witness would have to say with regard to these matters.

7          And I take it that it's about the reasonableness of

8    relying on particular types of disclosures as opposed to

9    others; is that correct?

10          MR. GALE:  Yes, your Honor.

11          Todd Gale.

12          And that is correct.

13          THE COURT:  And, so, can you tell me from the

14    institutional lenders' standpoint what exactly the argument is

15    that the expert will be trying to address.

16          MR. GALE:  Your Honor, the expert Bush Nielson has

17    written the manuals that are used by title examiners and title

18    readers so that they can determine what sorts of documentation

19    they should rely upon, including things like payoff statements

20    and release deeds.

21          In this case, we anticipate that the receiver and/or

22    the SEC and/or certain individual lenders will make the

23    argument that it was not rely- -- it was not reasonable for

24    the title examiners here to rely upon the documents upon which

25    they relied.  Because Mr. Nielson is in a very good position

1   to understand exactly what sort of documents those people

2   would rely upon -- and we would, of course, anticipate that in

3   his report he would discuss his background, so that the Court

4   would be in a position to determine whether or not his

5   testimony would assist the Court in making these

6   determinations -- we think that Mr. Nielson should be allowed

7   to testify on those things.

8           And, as we understand it, your Honor has already

9   granted the motion so that we can include his expert report

10  with our position paper when it is filed on December 9th.

11          We are well aware of the comments that have been

12  made, including those that were excerpted by the SEC in their

13  statement regarding your Honor having granted our motion for

14  leave to include Mr. Nielson's report.  We are not going to

15  have him testify as an expert on what the law is or is not.

16  We are very aware that that is your Honor's province and it's

17  not the place of an expert witness to come in and testify

18  about.

19          THE COURT:  To what the industry norms and practices

20  were with regard to what information that people in the

21  industry would rely on when making these determinations?

22          MR. GALE:  Correct.

23          THE COURT:  Mr. Rachlis, Mr. Hanauer?

24          MR. HANAUER:  Yes.  Thank you, your Honor.  This is

25  Ben Hanauer for the SEC.

1            Without seeing a report, it's very difficult to say

2       whether it would comport with the Court's previous statements

3       about not wanting real estate lawyers to be expert witnesses.

4            I can say that the positions that the institutional

5       lenders have taken to date have been that the -- their

6       reliance is based on provisions of the Illinois Mortgage Act.

7       And I would think that we would not need a real estate lawyer

8       to come in and say industry custom and practice is to follow

9       the Mortgage Act.

10           So, the question of whether there should be an expert

11      in the first place, the Court said what it said, but it's

12      harder to say in a vacuum.  I think the more important point

13      the SEC was trying to make having not said the report, is that

14      it would make sense for all the claimants, including a large

15      number of pro se investors, to have the opportunity to see the

16      report, either take the deposition or sit in on other

17      claimants taking the deposition before everyone is putting pen

18      to paper on their position papers and putting things in that

19      may not be based on a complete evidentiary record, and

20      especially given that these are -- most of the claimants

21      appear to be pro se today.

22           THE COURT:  And, Mr. Hanauer, the -- do you agree

23      with the general proposition that the industry standard and

24      norms as to what people reviewing such documents relied upon,

25      that that is relevant to or may be relevant to the claims and

1    defenses asserted with regard to these properties?

2              MR. HANAUER:  It could be.  I mean, the evidence

3    we've seen to date suggests the Court may not even have to get

4    to that question based on what's in these purported releases,

5    which I think just all the more suggests that if there is

6    going to be an expert report, first of all, it should comply

7    with Rule 26(a)(2); and, second, all the other claimants

8    should have a chance to depose the expert and probe the basis

9    of his opinions.

10             THE COURT:  Okay.

11             Mr. Rachlis, do you have anything to add to that?

12             MR. RACHLIS:  Yes, your Honor.  Thank you.

13             I fully agree with Mr. Hanauer's points that he's

14   raised.  But I think as to your Honor's question about whether

15   or not this may be relevant to the inquiries that may be made

16   here, I think the answer is it may be relevant.

17             The reasonableness of their -- of what they reviewed

18   and what occurred after that review, whether it was followed

19   up in any way or not, does address -- at least may be related

20   to issues of their own reasonable reliance, as well as inquiry

21   notice questions.  And as such, I certainly can understand why

22   and how this may be relevant to those concerns.

23             But I also agree with Mr. Hanauer's points that have

24   been raised and how it does impact the schedule and what

25   the -- what all of the claimants may need to do as a result of

 1   having this expert now part of this process.

 2          THE COURT:  So, talk to me about, Mr. Hanauer, kind

 3   of how you see -- or, Mr. Rachlis, rather -- how you see this

 4   disclosure and expert discovery process impacting the

 5   schedule.

 6          MR. RACHLIS:  Your Honor, there was discussion on

 7   this issue amongst representatives of the claimants --

 8   Mr. Stein representing certain individual investors;

 9   Mr. Hanauer; Mr. Gale; the receiver's representatives -- in an

10   effort to try and discuss these issues, and that led to a

11   motion being submitted within the last week to ten days.

12          And in there, it basically, in very broad-based

13   summary, extended the schedule approximately 45, 50 days.  And

14   the reason for that is, as Mr. Hanauer alluded to, it would

15   allow the claimants the opportunity to depose -- well, one, to

16   see this expert report, which is due on December 9th as part

17   of their initial disclosure from the claimants.  It allows the

18   deposition to then occur.  It allows all of the stakeholders,

19   if you will, in this Group 1 process the opportunity to

20   evaluate those statements, to possibly come up with their own

21   rebuttal if necessary.

22          And, then, I think as contemplated originally through

23   this process, we get through the entire period of discovery

24   and, then, go ahead and put pen to paper and proceed forward

25   with position statements, disclosures, and things of that

1    nature.

2           So, it was within the confines of thinking about

3    those -- the impact -- you know, basically, extending

4    discovery to allow these issues to be addressed before the

5    claimants -- before the stakeholders are, basically, ready to

6    write things out.  Basically, completing the discovery process

7    and then proceeding forward with those submissions.

8           When you take that all into account, the schedule

9    that was proposed allowed for approximately another 45, 50

10   days.  So, rather than concluding as originally anticipated on

11   January 13th with responsive statements from claimants and the

12   SEC, that would be extended to March 3rd, of the new year,

13   2022.

14          So, I'd suggest it's not a large amount of time, but

15   I think it certainly adds degrees of fairness to all

16   participants that would allow them to see this and be prepared

17   in a better way to allow them to see all the discovery.

18          THE COURT:  Are there any objections to the proposed

19   schedule that would incorporate expert discovery?

20          MR. GALE:  Yes, your Honor.

21          Todd Gale representing BC57.

22          We did, in fact, have conversations; and we were, I

23   thought, close to agreement.  The one -- but where it appeared

24   to go off the rails was the receiver asked for additional time

25   within which to disclose any avoidance claims that he might

1    bring.  As all on the call know, those avoidance claims were

2    to be disclosed today.

3           We did not see -- and we tried to engage in a

4    discussion to determine and better understand -- how those

5    avoidance claims would be impacted, if at all, by the proposed

6    report of our expert Mr. Nielson.  I asked for that.  And I'll

7    just be candid.  I couldn't understand what receiver's counsel

8    was trying to communicate to us on that.  And, so, that's

9    where it fell apart.

10          Most of the rest of what they proposed was not

11   troublesome to us.  In fact, what they had originally proposed

12   to us was that Mr. Nielson's report would be due on December

13   9th; that there would be discovery, including a deposition of

14   Mr. Nielson.  We did not oppose that.  We did not oppose the

15   idea that his report would have to comply with Federal Rules

16   of -- with the Federal Rule of Civil Procedure 26, that deals

17   with expert disclosures.

18          But we did not understand, nor as we talk today do we

19   understand now, why anything that Mr. Nielson would have to

20   say about industry standards and practices and the

21   reasonableness of reliance on certain documents, such as

22   payoff statements and release deeds, have anything whatsoever

23   to do with purported avoidance claims that might be asserted

24   by the receiver that are due today.  That's where the

25   discussions fell down.

```
1              THE COURT:  All right.  Very good.

2              MR. STEIN:  Your Honor --

3              THE COURT:  So --

4              MR. STEIN:  I'm sorry, your Honor.  This is Max

5   Stein.

6              There was actually one other area of disagreement on

7   the motion that I filed.  And just to be clear, the motion was

8   denied by the magistrate judge.  So, we'll just need to clean

9   that up if there's movement, as it appears that there is.

10              But the other aspect that was not agreed on is we had

11  requested that the costs of deposition -- pardon me, the costs

12  of an expert's time and expenses in sitting for a deposition

13  be covered by the party disclosing the expert.  And we made

14  that request because we believed, both as an equitable matter

15  and as an administrative matter, that was a better way to do

16  it, so that the parties taking the deposition didn't have to

17  pay unknown costs to an expert they did not choose.  And

18  equitably -- administratively, pardon me -- this meant that

19  each party would only ever have to pay the cost of one

20  expert's deposition time, whereas if it were done strictly

21  according to the rules, which your Honor has previously

22  indicated are not being strictly adhered to, the parties

23  deposing the experts might have to end up paying for multiple

24  expert depositions.

25              THE COURT:  All right.
```

1          Mr. Gale?

2          MR. GALE:  We do disagree with that, your Honor.  We

3    think that the Federal Rules which make clear that only if

4    manifest injustice would occur, then the party should -- who

5    is taking the discovery, the deposition of the expert, that

6    party should pay for the expert's time and, also, whatever

7    time the expert needed to prepare for the deposition.

8          We see no reason to steer away from that here,

9    because we do not think it would be manifestly unjust for them

10   to pay for the time -- for our expert's time.

11          And for what it's worth -- and I guess the other

12   parties don't know this yet because this would be part of

13   Mr. Nielson's disclosure -- Mr. Nielson's hourly rate is $375

14   an hour.  So, it's not at the very high end of some of the

15   rates that we've seen from experts -- at least I have -- in my

16   practice over the years.

17          THE COURT:  All right.

18          So, with regard to the items in dispute, I will agree

19   that the various deadlines, starting with the receiver's

20   disclosure of avoidance claims, can be extended by 45 days.

21   Given the fact that we're going to have additional discovery,

22   I don't see any need to have the disclosure of avoidance

23   claims be submitted any sooner than that.

24          With regard to the expert fees, given that this is a

25   summary proceeding, I do think that it makes sense to have the

1   proponent of the expert be responsible to pay the expert fees

2   and costs for sitting at a deposition.  So, that request is

3   granted, as well.  I think it's just more equitable that way.

4   If a party wants to retain an expert, then they can do so, but

5   it's at their own cost all the way through.

6         The expert disclosures all do need to comply with

7   Rule 26(a)(2).  And to the extent that Magistrate Judge Kim's

8   prior order is inconsistent with this one, it is vacated.

9         MR. STEIN:  As a matter of clarification, the motion

10   was Document 1085, and it includes an entirely new schedule

11   that's laid out in the motion.  Some of the days may be 45

12   days, some of the days may be slightly off of that, because as

13   -- per your Honor's suggestions, we were going in multiples of

14   seven.  So, it might be simplest to review that schedule in

15   the motion and enter a new order based on those dates.

16         THE COURT:  All right.

17         Mr. Rachlis, why don't you submit a proposed order to

18   my Proposed Order Inbox with the new dates.

19         MR. RACHLIS:  We will do that, your Honor.  Thank

20   you.

21         THE COURT:  Is there anything else that I need to

22   address with regard to experts, then?

23         MR. GALE:  Can I ask for one point of clarification?

24   Because I think I understand one thing, your Honor, but I want

25   to be sure before we move on to the next topic.

14

```
1              THE COURT:  Okay.
2              MR. GALE:  When you say moving the date by 45 days,
3     does that include all parties' position papers that as we --
4     before this call started today would otherwise have been due
5     on December 9th?  I just want to make sure we're shooting for
6     the right date on our end.
7              THE COURT:  That's correct.
8              MR. GALE:  Okay.  Good.  Thank you.
9              THE COURT:  Now I want to move to the joint motion to
10    determine claims process for single-claim properties.
11             Obviously, Mr. Rachlis will be speaking on behalf of
12    the receiver.  Who is going to be addressing this motion on
13    behalf of the other movants?
14             MR. McCLAIN:  Your Honor, that's myself, Andrew
15    McClain; and Michael Napoli is also on the video.
16             THE COURT:  All right.
17             So, Mr. Rachlis, I think I understand, but can you
18    explain why if a property only is subject to a single claim,
19    the receiver should -- why there's any need for any
20    proceedings if it's just a single claim, like just at the
21    basic level.
22             MR. RACHLIS:  Okay.  Your Honor, in this context, in
23    looking at -- there is going to be a further inquiry into the
24    validity of the claim.  Right?  So, as the receiver goes ahead
25    and looks at what has been submitted, even when there's no --
```

1   theoretically, there's only one claim that's been submitted.

2   As to that claim, for example, here there would be some

3   discovery that would be looked at, and it would take two

4   forms.  First is the submissions from the single-lien

5   claimant --

6       THE COURT:  No, I understand, Mr. Rachlis.  I'm sorry

7   to interrupt you.

8       If the single claim is considered -- is invalidated,

9   right, is voided, then what happens to the property and the

10  assets associated with that property?

11      MR. RACHLIS:  So, if the single-lien claimant is

12  found, for example, should have been on inquiry notice and,

13  therefore, their secured claim is found -- is turned into an

14  unsecured one, the proceeds from the sale of the property that

15  that claimant was claiming the secured interest in, those

16  proceeds would go to -- would become funds that would be used

17  for unsecured claimants.

18      THE COURT:  Unsecured claimants on that property or

19  unsecured claimants generally?

20      MR. RACHLIS:  Unsecured claimants generally.

21      I should -- you know, to be fair, now, if there are

22  other claimants on that property -- for example, there could

23  be a -- some other type of trade creditor or something to that

24  effect -- I imagine that they may have some right to those

25  proceeds.

1         So, putting those issues aside, generally, the

2  claim -- the monies would then -- generally speaking, would

3  turn into unsecured funds that would be then utilized for

4  general purposes for the unsecured claimants.

5         THE COURT:  And, so, the dispute --

6         Anyway, Mr. McClain, anything you would like to add

7  to that?

8         MR. McCLAIN:  Yeah, your Honor.

9         I mean, I understand the point that Mr. Rachlis is

10  making.  But I would defer to Mr. Napoli if he wants to

11  elaborate on that, as well.  I can get into the points about

12  the discovery that Mr. Rachlis was alluding to, but I would

13  defer to Mr. Napoli if he wanted to elaborate.

14         THE COURT:  Mr. Napoli?

15         MR. McCLAIN:  I think you're on mute.

16         THE COURT:  We can't hear you, Mr. Napoli, for some

17  reason.

18    (Brief pause.)

19         MR. NAPOLI:  Is this better, your Honor?

20         THE COURT:  It is.  Thank you.

21         MR. NAPOLI:  Okay.

22         Your Honor, I would tend to agree with Mr. Rachlis

23  that if the only secured claim is avoided, then the proceeds

24  would go to the estate.  I obviously dispute -- and it's not

25  really the place here -- of the basis on which he suggests it

1    might be avoided.

2          But the purpose of the process, as we understand it,

3    is to get that potential objection out, whether it's going to

4    be made or not made, so that we can then litigate it and move

5    forward.  Because if he's not going to make that claim, then

6    we should just get paid.

7          THE COURT:  Right.  Okay.

8          So, then I think the dispute becomes the timing of

9    that particular, for lack of a better word, battle.  Right?

10   When should the receiver be required to disclose or to inform

11   me and the claimants that the receiver does not oppose or does

12   oppose that particular claim, and what sort of information

13   should the parties be required to exchange in advance of that

14   or as part of that determination?

15         And as I see it from the motion, the receiver is -- I

16   know that there are various kind of details, but one of the

17   main -- one of the overall reasons that the receiver gave is

18   that the receiver obviously is very busy now with regard to

19   the properties in the first tranche and reviewing those.

20         Mr. Rachlis, what sort of -- it seems, though, that,

21   as the secured lenders have noted, that you already have --

22   the receiver does have a ton of information about the claims,

23   this property.  What other information would the receiver

24   require to make a determination as to whether or not it is

25   going to oppose the single claim on a particular property?

1          MR. RACHLIS:  In addition to what has been

2     provided -- which I note in follow-up to what is Footnote 3 of

3     the joint motion on this issue, where it is noted that the --

4     that not all the documents have been submitted by all of these

5     single-lien claimants; that one has indicated that it has

6     provided all, the other has just indicated the majority of

7     them have been provided.

8          So, I note that sort of as a starting point.  But the

9     bottom line here is we all need to complete -- make sure we

10    have all of those documents.

11          Number two, like the standard discovery issues that

12    all of the claimants are involved with in this -- in the

13    claims process, there are some select document requests and

14    interrogatories, most of them dealing with due diligence types

15    of issues, which we would expect to be answered.

16          We then expect to get subpoenas -- done jointly,

17    actually, between these stakeholders -- in the sense -- with

18    going to the loan originators and the title companies.

19          If that information is collected and if we all can

20    work together to get that to those entities -- we'll get that

21    all done at one shot, at one time -- that collection of

22    information would be complete and allow a determination --

23    allow a review and determination -- that would lead to either

24    disclosure of an avoidance on these, on the issue of inquiry

25    notice, or it will lead to a notice that there are -- there

1   will not be any such challenge.

2           So, it is that collection -- it is that remaining

3   collection -- of documents combined with a review of them in

4   order to make that determination.  That's the upfront work

5   that would need to be done.

6           THE COURT:  And, Mr. McClain, I looked at Exhibit A

7   and Exhibit B to the motion.  One is the claimants' proposed

8   schedule and the other one is the receiver's proposed

9   schedule.  Why should I adopt the claimants' proposed schedule

10  over the receiver's proposed schedule?

11          MR. McCLAIN:  Your Honor, I will answer your

12  question.  I just wanted to address one point that Mr. Rachlis

13  made when he cited Footnote 3, indicating that one of the

14  claimants has not provided all the information.  That's kind

15  of a mischaracterization of the facts.

16          What Footnote 3 is referring to is all the documents

17  requested by the standard discovery requests.  U.S. Bank has,

18  in fact, provided all documents that were part of the proof of

19  claim, and additional documents were provided at the outset of

20  the case in September 2018, which was the majority of the

21  underwriting files.

22          So, the receiver has in his possession all of the

23  documents that he requested as part of the claims process that

24  he identified as the necessary documents to evaluate and

25  determine the validity of these claims.  I just wanted to

1    clarify that point.

2         Going to your point about why the Court should adopt

3    our process over the receiver's process, well, your Honor, I

4    think there's a couple fundamental differences between our

5    process and the receiver's process.  One of the biggest

6    sticking points that we ran into over the past few months in

7    negotiation is the discovery.  And our position is there's no

8    need for additional discovery at this point right now.

9         The receiver's had in his possession our documents

10   for over two years that were submitted as part of the claims

11   process.  In addition to that, he has all of the documents

12   that are the Equitybuild documents.  So, presumably, any

13   documents that he is seeking from us as part of this discovery

14   is part of the Equitybuild documents that he already has.

15        So, we just believe fundamentally it would be

16   inequitable, a waste of resources to engage in discovery now,

17   before there's an actual determination or disclosure by

18   Mr. Rachlis that he's -- or excuse me, Mr. Duff -- that he's

19   challenging our lien.

20        Compare that to the contested claims process where

21   it's known that there's a current dispute so you can just jump

22   right in to doing discovery.  Here, we don't even know if

23   there is a dispute.  So, we don't believe that we should

24   engage in additional discovery until the receiver takes the

25   time to review the documents he already has in his possession

1    to determine if he has a good-faith basis to challenge our

2    claims.

3            So, that's kind of one of the biggest framing issues

4    that led to discussion and the negotiations and kind of the

5    divide.

6            There's also other nuanced issues; for instance, the

7    holdback of fees.  But it was really the discovery that was a

8    large issue and, then, the holdback of fees.

9            I'll pause here to see if you want me to discuss

10   anything specifically or if Mr. Napoli wants to supplement.

11           THE COURT:  Mr. Rachlis, I guess, can you respond to

12   Mr. McClain's argument that the receiver doesn't need any

13   additional discovery, at least to make the preliminary

14   assessment of whether or not it's going to contest the claims.

15           MR. RACHLIS:  Yeah.

16           That's based on the proposition that the receivership

17   has all the documents that had been identified.  And Mr.

18   McClain cites to the EB library that's been set up, but the EB

19   library does not have the loan origination documents from the

20   loan originator that was working with these lenders, nor does

21   it have the title company documents.  Those are -- that's

22   exactly the type of discovery that's being requested from --

23   essentially, from -- the standard discovery that's been

24   contemplated for all of the groups.

25           So, that is part and parcel of the standard inquiry

1    that is being done for everyone, and that doesn't escape

2    hereto.  And, in part, it doesn't escape because we don't have

3    those documents.

4         So, in order to understand and make the proper

5    evaluation, which we hope can be done -- I mean, there's a

6    smaller universe of documents.  That's clearly true.  Because

7    there's not, like there is in Group 1, 170 different

8    claimants.

9         On the other hand, there are documents and materials

10   necessary to understand if there are going to be these

11   avoidance claims -- particularly, say, on reasonable reliance

12   or inquiry notice types of issues -- that are not in our

13   possession.

14        And, indeed -- and another point here, they

15   recognize -- I think as recognized by the participants on

16   this, as well, because at the back end, while they've put it,

17   you know, in the second half, if you will, after the notice is

18   sent out, they realized that that type of discovery from the

19   loan originators and title companies would be necessary.

20   We're saying do that up front and let's get that done, you

21   know, as quickly as we can, as early as we can, because that's

22   necessary for the review.

23        They're trying -- we don't have the documents, so it

24   would be difficult for us to be able to say that we've done

25   that review when we don't have them.  And we do think it's

1  relevant to that inquiry.

2         MR. McCLAIN:  Your Honor, I think the gating issue

3  for us is the disclosure by the receiver that he is, in fact,

4  going to contest the claim.  He has in his possession all of

5  the documents that he wanted as part of the proof of claim.

6  And, so, now he's asking for more as a basis of a dispute,

7  which is backwards in how normal litigation goes.  You file

8  your complaint -- and, again, we're not -- we understand we're

9  working in summary proceedings, we're not dealing with

10  complaints here; but here it's a disclosure that you're

11  challenging the lien -- and, then, you engage in the

12  discovery.  That's how a normal litigation dispute progresses.

13         THE COURT:  Mr. Hanauer, does the SEC take a position

14  on this issue?

15         MR. HANAUER:  Thank you, your Honor.

16         For the most part, no.  There are no investors

17  involved, so the SEC does not want to -- we'd rather not be

18  involved.  We would just make the request that the procedures

19  employed for these single-claims properties be as efficient as

20  possible to keep costs down and with the least disruption as

21  possible to the investor claims process.

22         THE COURT:  Let's talk about timing.

23         Mr. Rachlis, given the timing of the first grouping

24  and then the schedule for those other -- for the

25  multi-claim -- properties involving multiple claims, what sort

1   of timing do you envision or do you anticipate for a claims

2   resolution process with regard to the single-claim properties

3   to take place.

4        MR. RACHLIS:  So, the proposal that we have included,

5   in summary form, would:  One, we'd attempt to work on this.

6   So, if your Honor were to consider this a group, if you will,

7   this single-lien group, we would begin work on that if the

8   process was approved, you know, simultaneously with Group 1,

9   but making sure that we're not interfering with the completion

10  of the Group 1 process.

11       And what we would do in that context is:  One, the

12  first -- and try and quickly with the -- working with the

13  other -- with the institutional lenders that are involved

14  here, try and get these subpoenas out quickly to the loan

15  originators and to the title companies.  That's the -- that's

16  Point One.

17       Probably that's a 30-day process, but we would hope

18  that that could -- in other words, 30 -- not to get that out

19  in 30 days, but try and get responses back in some capacity,

20  you know, in a 30-day window or so.

21       We would want to then look at that information, as

22  well as the information that's been provided by these

23  claimants, and come back to your Honor, at this point, I would

24  say sometime in January, maybe January -- towards the end of

25  the month -- and give you a status report and these claimants

1    a report, in order to let them know where we're at in terms of

2    getting responses from these subpoenas and getting through the

3    process of reviewing these claimant -- the materials that have

4    been provided.

5          We think that if we are able to do that, we'd be in a

6    position to be able to tell your Honor how soon thereafter

7    we'd be in a position to provide either notices of no dispute

8    or notices of avoidance that would trigger what we propose to

9    be, you know, a 60-day -- based on the these single-lien

10   claimants' request, I think there's no disagreement that they

11   look at a 60-day process for purposes of going through

12   contested claims.  And, then, it's twenty -- and then the same

13   sort of process for position statements and things of that

14   nature.

15         So, it is an effort to:  One, work in parallel with

16   the Group 1 process; an effort to work cooperatively, quickly

17   with the single-lien institutional investors; and to report

18   back, you know, in the -- call it in approximately 45 days or

19   so, but it would be sometime by mid-January.

20         I think we can make progress in that regard.  That

21   will give enough time to get subpoena answers, we believe, as

22   well as to go through -- at least get a better handle on the

23   documents, and then be in a position to inform the Court.

24         So, it's within that balance that we think that we

25   are prepared to do that and devote, you know -- without trying

1    to -- and we also want the Court to know if we believe that

2    this has created more of a problem, if going through this has

3    either elicited to -- you know, there are 28 different

4    properties here.

5          So, in going through those, if there's an issue, we

6    want to flag it.  We want the Court to know and the lenders to

7    know that, you know, it's taking longer or not.

8          But we do think that would be a -- basically, a good

9    way to keep everyone abreast of those efforts while still

10   focusing on Group 1.

11         So, that is our general effort and proposal here to

12   try and get this group of properties moving and moving,

13   essentially, you know, right away through the kind of joint

14   issuance of these.

15         THE COURT:  All right.

16         And do you anticipate needing the claimants to answer

17   some of the standard discovery requests?

18         MR. RACHLIS:  Yes.  We did specifically identify

19   those in our proposal.  There's very few -- not all of them,

20   but three or four different requests or one or two

21   interrogatories that, basically, we would want to be addressed

22   during this time that we are getting the subpoenas answered

23   and beginning the reviews of the -- of what is intimated on

24   the claims.  So, the answer is, yes, in a modified form.

25         THE COURT:  Mr. McClain?

1          MR. McCLAIN:  Your Honor --

2          THE COURT:  Talk to me about timing.

3          MR. McCLAIN:  This is why we believe that our

4   proposed process is a better solution, is it's more

5   streamlined.  Right now, it sets the deadline of 28 days after

6   your Honor approves our process of the receiver then having to

7   review the documents he's had in his possession for over two

8   years and determine whether he does have a good-faith basis to

9   challenge our liens.  And, then, if he discloses that, then,

10  your Honor, we believe that there's discovery that the

11  receiver can take based on that disclosure.

12          And, so, we would propose the timing to be how we set

13  -- and the format -- how we set forth in our proposal.

14          In terms of addressing the proposal that Mr. Rachlis

15  just laid out, your Honor, we're concerned that there's just

16  going to be continuous delay here.  This is exactly the

17  process that was proposed by the receiver in the joint motion,

18  which is we're going to endeavor to do this, we're going to

19  endeavor to do this as quickly as we can, and then we're going

20  to come back to the Court and report on our progress.

21          Your Honor, we need to get these two matters moving

22  along.  And, so, we would request, if the Court is going to

23  honor the structure that the receiver is going to propose,

24  which we hope it doesn't, that there be much shorter time

25  frames here so we can get to a quicker resolution.  I think

1    that's in all the -- our claimants', as well as the estate's,

2    interest to resolve this as quickly as possible.

3            THE COURT:  Okay.

4            MR. McCLAIN:  I ask Mr. Napoli to supplement if he

5    wants to.

6            MR. NAPOLI:  Michael Napoli, your Honor.

7            One of the things that we're concerned about is there

8    is no deadline.  It's, well, it will be two months; and, then,

9    we'll do a report; it may be another 60 days.  We really

10   believe that there needs to be a hard deadline, otherwise, you

11   know, the work will consume whatever time it's allotted to.

12           As Mr. McClain notes, we submitted our proof-of-claim

13   documents in July of 2019, more than two years ago.  And these

14   are the documents the receiver told us he needed in order to

15   make this type of determination.  And now we're being told

16   that we're going to have to wait another 60, 120 days, while

17   he gathers more documents, which I don't understand because if

18   it's notice -- really bad evidence, if he thinks we're on

19   notice of anything or we have knowledge of anything ought to

20   be -- evidence of that would be in our files, not in some

21   other file.  I mean, what a loan originator or title agent

22   might know is not anywhere near the same thing as to what we

23   would know or we would have evidence of.

24           I would point out for both my client and Mr.

25   McClain's client, that we are several steps assignees down in

1    securitization trusts.  We had no contact with loan

2    originators or title companies.

3         So, we're being asked to hold up on things that would

4    not in the ordinary course ever make it to us, which I just

5    think we need to have a deadline that needs to be stuck to so

6    Mr. Duff and Mr. Rachlis can make whatever claims they are,

7    and we can litigate those as necessary.

8         MR. RACHLIS:  Your Honor, may I make a few points in

9    response?

10         THE COURT:  Go ahead.

11         MR. RACHLIS:  Your Honor, in terms of discovery, we

12   originally, back when we had proposed that we would review all

13   the claims -- and, you know, that was going to take a year or

14   longer than that -- these same institutional investors had

15   gone around and said, no, that's not right.  We had sought a

16   stay.  Judge Kim entered a stay.  Then we entered into lengthy

17   discussions about a claims process that would involve

18   discovery.  Because during that -- during the period of time

19   that the receiver originally would look at these issues, they

20   could -- the receiver has the right, if not the obligation, to

21   seek discovery on various issues that it deems relevant.

22         So, the proof of claim is not the end of the story.

23   The discovery was to occur during the claims process.

24         These claims are part of the claims process.  They

25   may have -- they may be not of the same number of claimants,

1    but they are still part of a process that always engendered
2    there would be discovery.

3          As to the issues that are being identified here, if
4    it is, as stated by Mr. Napoli, that the correspondence and
5    other information from the loan originators is as said, then
6    certainly that would be relevant to a decision that would be
7    made.  We don't have that information.  We don't know that
8    that is accurate or complete in terms of what is in the loan
9    origination files or in the title company files, which is why
10   that process is probably -- that's set forth as part of this
11   process as a whole.  We've set forth that title companies
12   would be subject to subpoenas.  It's one of the one items that
13   are out there.  Loan originators are the same type.

14         So, here, the type of discovery would always be
15   contemplated.  We recognized that through this claims process
16   we've gone through, you know, detailed types of discussions in
17   order to somehow set forth how these claim disputed process
18   would go.  It was never to sacrifice there would be a need for
19   discovery.  There was always going to be, during the claims
20   process, based on the way this has come out, some discovery.

21         So, we do think it's relevant.  Well, it was always
22   contemplated and would be relevant to trying to get to the
23   conclusion, even on these claims, as well.  So, I don't know
24   exactly that those are strong arguments in support of the
25   process that's being advocated by the claimants.

1            In terms of the idea of timing, you know, it is

2    difficult.  Because we have the current Group 1 activity, we

3    certainly recognize that there is a lot going on that we want

4    to address.

5            We thought that having a date out there of sometime

6    in the latter part of January is a date.  It's a date of

7    relevance that does provide both the Court, these

8    institutional investors and the receiver a target date for

9    purposes of getting the discovery completed and looked at, and

10   updating the Court in that regard.  So, I don't think that --

11   it's not fair to characterize us as without any date.

12           And as we indicated, we are hoping that this would

13   all be completed in conjunction with and parallel to the

14   completion of the Group 1 -- the group -- the process for

15   Group 1 claimants.  So, those dates are present.  Those dates

16   have been articulated.

17           I do think that there are some exigencies that we

18   don't control, that we thought would be -- allow us to be able

19   to report on this in the later January time period and, then,

20   come with a more precise date that would allow for the

21   completion of that proceeds.  So, we do think that there are

22   more firm dates than are being characterized here.

23           THE COURT:  All right.  Thank you.

24           So, with regard to the properties identified in the

25   joint motion to determine claims process for single-claim

1   properties, that's Document 1073, I'm opening up the process

2   officially.  Start your engines.  It's open as of today.  And

3   this is how it's going to go:  By no later than November 30th,

4   I want the receiver, in conjunction with the claimants, to

5   send out third-party subpoenas to the title companies and loan

6   originators.

7            The claimant, I want them to answer the Request Nos.

8   6, 7 and 8 and Interrogatory 5 of the standard discovery by

9   December 10th.

10           We will have a status hearing on January 28th at

11  10:00 a.m. via videoconference.

12           From that date forward, there will be -- to the

13  extent necessary, there will be 60 days of discovery, again,

14  to the extent necessary.

15           During those 60 days, discovery shall be as set forth

16  in the Federal Rules, except -- and here I'm reading from Page

17  4 of Exhibit B, but I'm going to modify it -- each party will

18  be limited to five additional interrogatories.  Each party

19  will be limited to three additional requests for production.

20  I am going to allow requests for admission up to 12, without

21  subparts.  Each party will be limited to three depositions.

22  There will be no third-party discovery, except for title

23  companies and loan originators without leave of Court.

24  Neither the receiver, nor any Rule 30(b)(6) representative of

25  the estate may be deposed, because I don't think that's going

1    to provide any sort of relevant information -- relevant

2    factual information anyway.  No expert discovery will be

3    permitted without leave of Court.

4         I'm going to set April 29th as the deadline for the

5    receiver's position paper with regard to its position with

6    regard to the claims that are at issue with regard to the

7    properties.

8         And, then, after that, once that is done, we will

9    have another status hearing in May, immediately after the

10   submission of that report, May 6th at 9:00 a.m., by

11   videoconference.  And at that point, I think we'll have -- all

12   of us will have -- an idea as to how many of these claims will

13   be disputed, on what grounds and what sort of schedule needs

14   to be set forth going forward.

15        I think that while it does mean that Mr. Rachlis and

16   the people in his firm will be incredibly busy during this

17   time, I think that that should be enough time for them to do

18   the work.

19        And I see that Ms. Wine and Mr. Duff are on the line

20   and they're not -- they haven't fainted yet.  So, I think that

21   that seems workable.

22       (Laughter.)

23        THE COURT:  That way, we do have a date by which the

24   claimants will have an idea as to whether or not the receiver

25   actually will object or will not object.  And it gives the

1   receiver some discovery.  The discovery that it needs to make

2   sure that he is satisfying his duties to the estate.  And it

3   keeps the case moving forward with regard to those single

4   claims.

5           MR. RACHLIS:  Your Honor, may I ask for one

6   clarification?

7           THE COURT:  Yes.

8           MR. RACHLIS:  We had -- part of -- I think all of the

9   proposals had asked that there be a referral to Judge Kim for

10  purposes of discovery and settlement on this grouping.  Would

11  your Honor's order also make that referral at this point in

12  time?

13          THE COURT:  I will.  I'll go ahead and refer this.

14  Basically, all of discovery in this case generally has been

15  referred to Magistrate Judge Kim, who has graciously agreed to

16  oversee the discovery in this case -- I will have to explain

17  to him why I'm vacating one of his prior orders, but I'll take

18  care of that -- and for settlement, as well.

19          MR. RACHLIS:  Excellent.  Thank you, your Honor.

20          THE COURT:  Is there anything else that I can address

21  for the parties today?

22          MR. McCLAIN:  Your Honor, I just want to clarify,

23  what format is the position paper supposed to be in from the

24  receiver?

25          THE COURT:  To the extent that the receiver is not

1    going to oppose -- object to the claim, it will be one line

2    that receiver does not object to the claim.  To the extent the

3    receiver objects to the claim, it will set forth the basis for

4    the receiver's objection.

5            MR. McCLAIN:  So, factual and legal basis?

6            THE COURT:  Yes.

7            MR. McCLAIN:  Thank you, your Honor.

8            THE COURT:  Very good.  Thank you.

9            MR. STEIN:  Your Honor?

10           THE COURT:  Yes.

11           MR. STEIN:  My apologies.  Max Stein on behalf of

12   certain of the individual investors.

13           I wondered if it might make sense to schedule another

14   status like this one for late January.  I was going to suggest

15   around January 20th.  Under the new schedule, that will be

16   around when we would be completing expert discovery, and that

17   way there would be a date at which any new issues -- I'm not

18   anticipating any, but I've now been in this case long enough

19   to know that there may be some -- could be raised with your

20   Honor.

21           And I further suggest that they be raised through a

22   joint status report, the respective positions, as opposed to

23   through a motion that then inadvertently gets addressed in the

24   way the Court would normally address them and create some

25   confusion.

36

1        THE COURT:  All right.  Well, I've already set a

2   status for January 28th, right, at 10:00 a.m.  So, we'll do

3   that.

4        And, then, I think that's a good idea, Mr. Stein.

5   I'd like the parties who are involved in Group 1 to submit a

6   joint status report to me by January 25th.

7        MR. STEIN:  Thank you, your Honor.

8        THE COURT:  All right.  Thank you.  Have a very good

9   Thanksgiving, everyone.

10        MR. RACHLIS:  You too.  Thank you, your Honor.

11        MR. GALE:  Thank you, your Honor.

12                    *     *     *     *     *

13

14   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
15

16
     /s/ Joseph Rickhoff                   November 23, 2021
17   Official Court Reporter

18

19

20

21

22

23

24

25