**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 18-CV-5587** |
| **v.** | ) ) | |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) ) | **Hon. John Z. Lee** **Magistrate Judge Young B. Kim** |
| **Defendants.** | ) ) | |

### RECEIVER'S OPPOSITION TO MOTION TO COMPEL

Michael Rachlis
Jodi Rosen Wine
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net
jwine@rdaplaw.net

The motion to compel should be denied. As the District Court previously recognized in virtually identical circumstances, the Receiver is not a fact witness who can provide relevant testimony on the issues that are the subject of the motion. BC57's request will add substantial and unjustified burden and cost to the Receivership. Facts relating to the Receiver's avoidance claim, which are identified in his disclosure and answers to contention interrogatories, come from BC57's records, EquityBuild records, and the claims relating to the properties, all of which BC57 has access to or possesses. The factual issues BC57 now identifies (not identified in its prior motion for discovery or its contention interrogatories) are either legal issues or not reasonably in dispute.

BC57's prior motion for additional discovery (Dkt. 1128) sought only "two discrete and limited areas relevant to the Receiver's fraudulent transfer claim." (*Id.* ¶ 8) First, it needed Wells Fargo records, which the Receiver provided; second, it needed contention interrogatories for which "the primary focus … would be the Receiver's claim that a diligent inquiry by BC57 'would have revealed that EquityBuild was engaged in fraud including by fraudulently releasing mortgages without the authority of the of the of the mortgagees.'" (*Id.* ¶ 9) BC57 also requested two depositions but claimed it would not know who to depose until it saw "the Receiver's responses, *including the individuals that the Receiver discloses.*" (*Id.* ¶ 9; emphasis supplied) Making clear it wished to limit the burden on the Receiver, and consistent with its prior determination about the need for such a deposition (*see* Section I, *infra*), the Court allowed BC57 to serve a narrow set of contention interrogatories based on specific areas BC57 identified as necessary. (Dkt. 1135, ¶ 2)

The Receiver responded in detail to the specific contention questions that were BC57's "primary focus." (***See*** **Ex. 1**) None of those responses, nor any document provided or referred to (whether in the Disclosure, the answers to the Contention Discovery, or in any document produced in Group 1 discovery) was authored by or involves the Receiver as a fact witness; nor is the

1

Receiver identified as a witness. (Ex. 1, Answer to Interrogatory No. 4) Nevertheless, on February 14, 2022, BC57's counsel informed the Receiver's counsel that the only deposition that BC57 wants to take is that of the Receiver. Counsel for the Receiver advised counsel for BC57 that the Receiver would not sit for a deposition, and that the Court's prior rulings and statements addressed the lack of necessity for such a deposition. The pending motion followed.

## I.     The Court Rejected a Similar Request for the Receiver's Deposition.

Other institutional lenders previously advanced the need for such a deposition related to any avoidance claim brought by the Receiver relating to their claims. The Receiver opposed the need for such a deposition. The issue was expressly presented to the Court through a "Joint Motion To Determine Claim Process For Single Claim Properties" (Dkt. 1073), which set forth the parties' respective positions. In that motion, the claimants mirrored BC57's request, asserted that "deposing a witness knowledgeable of the factual bases of the Receiver's claims is imperative to their ability to defend against the Receiver's opposition to the Claimants' liens and claims." (Dkt. 1073 at 6-7) They also argued that "the Receiver has not agreed to any level of contention discovery." (*Id.*) The Receiver responded that, "[t]he Receiver does not control or employ any fact witness. The Receiver is not a fact witness. And contention interrogatories contemplated by the proposed processes are more than adequate to discover the factual basis of any challenge to the Claimants' liens. … This is particularly true given that the Claimants already have all of the documents that the Receiver has." (*Id.*) In this context, which is plainly a roadmap for BC57's current request, the District Court ruled that no such deposition will be taken: "Neither the receiver, nor any Rule 30(b)(6) representative of the estate may be deposed, because I don't think that that's going to provide any sort of … relevant factual information anyway." (Dkt. 1193, 11/18/21 Tr. at 32-33) Thus, BC57 raises the same issue that was resolved by the District Court's prior ruling.

2

## II.     The Remaining Issues Do Not Support the Requested Deposition.

Neither in its motion for contention discovery, nor in BC57's argument to the District Court was there any hint that there was a dispute as to perhaps the most fundamental underpinning of this action, which is that the Cohens perpetrated a Ponzi scheme to the detriment of nearly 900 lenders.  Now, for the first time, BC57 suggests that a Ponzi scheme has not been established and demands the Receiver's deposition regarding same.

That argument is groundless.  BC57 ignores the SEC's complaint (Dkt. 1), the testimony leading to the Order Appointing Receiver, the consent judgment against the Cohens (Dkt. 40), the monetary judgment entered against the Cohens (Dkt. 533), the proofs of the scheme presented at various other points of this case,[1] the attention and efforts brought by the Receiver to separate property accounts, revenues, and expenses, and even the fact that BC57 took a $5.3 million security interest in the five Group 1 properties from the Cohens at a time, according to the claims submitted on those properties, that those properties were already encumbered with over $10 million in investor lender debt.  (*See, e.g.,* Dkt. 1118 at 5-6)  With this record, the Receiver not only does not have factual testimony to add, but its addition is wholly unnecessary.  The Ponzi scheme has been established and judicially recognized, and has been at the heart of this entire proceeding including the claims process.  There should be no question that the Ponzi scheme has been established and the Ponzi presumption applies as a matter of law.  *In Re Bernard L. Madoff Inv. Sec., LLC,* 525 B.R. 871, 892 n.21 (S.D.N.Y. 2015) ("Under the 'Ponzi scheme presumption' the existence of a Ponzi scheme demonstrates actual intent *as matter of law* because transfers made in the course of

---

[1] S*ee, e.g.,* Dkt. 492 at 3-7 (discussing Tushaus testimony); Dkt. 603 at 5-6 (affirming recommendation; "the [District] court agrees with the magistrate judge's assessment of the hearing evidence, which 'show[s] that the funds used [to purchase the Naples Property] came from [i]nvestor monies tied to the Cohen's Ponzi scheme" (citing Dkt. 492 at 3-7, 10-14)); Dkt. 533 at 2 (entry of a monetary judgment) ("Accordingly, the Cohens began running a Ponzi scheme, using new investors' funds to pay earlier investors' interest payments.") (citing Dkt. 1, SEC Complaint, ¶ 45).

3

a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.")  (emphasis added; internal quote marks omitted).

Even if the Court were to require more proof of a Ponzi scheme, the Receiver would not be the witness for such matters.  Such testimony would come from witnesses who have testified on such issues and is of record, documents already in the possession of BC57 such as Wells Fargo bank statements and other documents that have been produced, and the statements of other claimants who have affirmed that they had preexisting secured interests and were not paid.

Separately, despite an opportunity to raise the purported need for discovery relating to the Receiver's standing, BC57 failed to do so.  (*See* Dkt. 1128)  In any event, if this is an issue, it does not require the Receiver's testimony, but rather can be addressed as a matter of law.  Here, the Court has expressly authorized the Receiver to pursue such claims. (Dkt. 16, Para. 43).  That is consistent with governing law.  *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 754, 758 (7th Cir. 1995) ("the fact that the corporations were alter egos of [the defendant] would not affect the receiver's standing to bring these fraudulent conveyance suits")*; SEC v. Forte*, Nos. 09-63, 09-64, 2012 WL 1719145, *4, 6-7 (receiver's standing is legal issue; "ample authority establishes that a receiver has standing to assert fraudulent transfer claims as to estate assets") (citing, *inter alia, Scholes*). BC57 also cites *Scholes* but takes out of context the Seventh Circuit's *dicta* that "an equity receiver may sue only to redress injuries to the entity in receivership."  (Motion, ¶ 7)  In fact, the court makes clear that a receiver for corporations that had been "evil zombies" of the fraudulent schemer can also pursue claims "for the benefit … of innocent investors."  56 F.3d at 758.  BC57 further ignores and does not bring to the Court's attention other authority in this District that "a federal receiver has standing to bring fraudulent conveyance claims on behalf of creditors."  S*ee, e.g., Big Shoulders Capital LLC v. San Luis & Rio Grande Railroad, Inc.*, No. 19 C 6029,

2019 WL 6117578, *3 (N.D. Ill. Nov. 18, 2019), *dismissed in part, remanded in part by* 13 F.4th 560 (7th Cir. 2021).

To the extent BC57 suggests the Receivership entities have not been injured (Motion, ¶ 7), that too is wrong as a matter of law. The Seventh Circuit recognizes that a corporate entity is injured when "the corporate body is ineluctably damaged by the deepening of its insolvency through increased exposure to creditor liability." *Schacht v. Brown,* 711 F.2d 1343, 1350 (7th Cir. 1983) (citation omitted). In the same way, the Receiver's avoidance claim is brought on behalf of the Receivership entities - including the Cohen "zombie" entities - which suffered harm as a result of BC57's $5.3 million dollar financing as their exposure to creditor liability increased and their financial position worsened. *See, e.g., Scholes*, 56 F.3d at 754. BC57's debt enabled the Cohens' scheme to continue until the SEC brought them down. This is not an issue requiring the Receiver's deposition.

Finally, as the Receiver's avoidance disclosure notes, the issues raised by Receiver's avoidance claim will largely be mooted if the Court determines that the investor-lenders' mortgages are in first position. (Dkt. 1118 at 1) With the goal of efficiency and preservation of resources, the Receiver recommends that if any deposition is deemed necessary (and it should not be) it should only occur after the Court's priority determination. However, should the Court nonetheless allow BC57 to proceed with the requested deposition, the Receiver also requests leave to serve requests for admission on BC57 so that, if BC57 unreasonably denies those requests, the Receiver may seek fees and costs associated with proving facts that BC57 unreasonably denies.

Wherefore, the Receiver respectfully requests that the motion to compel be denied and for such other relief as the Court deems just and equitable.

Dated: February 25, 2022               Kevin B. Duff, Receiver

By:     /s/  Michael Rachlis

          Michael Rachlis (mrachlis@rdaplaw.net)
          Jodi Rosen Wine (jwine@rdaplaw.net)
          Rachlis Duff & Peel, LLC
          542 South Dearborn Street, Suite 900
          Chicago, IL 60605
          Phone  (312) 733-3950

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I electronically filed the foregoing Receiver's Opposition to BC57, LLC's Motion to Compel with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

I further certify that I caused true and correct copy of the foregoing Opposition, to be served upon all claimants included on the Email Service List for Group 1 by electronic mail.

I further certify that the Opposition will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax     (312) 733-3952
mrachlis@rdaplaw.net

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Hon. John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) ) | |

## RECEIVER'S ANSWERS TO BC57 LLC's CONTENTION DISCOVERY

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild,

Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome

Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), and pursuant to the

powers vested in him by the Order of this Court entered on August 17, 2018, provides the

following answers to BC57, LLC's Contention Discovery as follows:

## GENERAL OBJECTIONS

A.      The Receiver objects to the Interrogatories insofar as they purport to improperly

expand, alter, or modify the scope of permissible discovery under the Federal Rules of Civil

Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable rules

or orders.

B.      The Receiver objects to the Definitions insofar as they purport to impose

obligations that are overbroad, unduly burdensome, and disproportional to any reasonable



benefit, and beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable rules or orders.

C.      The Receiver's answer to any of the Interrogatories is not an admission or acknowledgement that such Interrogatory calls for information that is relevant to the subject matter of this action, and it is without prejudice to Receiver's right to contend in any pleading, proceeding or trial that any responsive document or information produced is inadmissible on relevance, undue prejudice, or other grounds.

D.      The Receiver objects to the Interrogatories insofar as they seek documents and information that are not relevant.

E.      The Receiver objects to each Interrogatory insofar as it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges or doctrines. The inadvertent disclosure of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial, or is otherwise irrelevant and/or immune from discovery shall not constitute a waiver of any such privilege or of any ground for objection to discovery with respect to such information, the subject matter of the information, or of any the Receiver's rights to object to the use of any such information during any subsequent proceeding in this action or elsewhere.

F.      The Receiver objects to the Interrogatories to the extent that they seek information that is not in the Receiver's possession, custody, or control, that does not exist, or that cannot be found in the course of a reasonable and diligent search.

G.      The Receiver objects to the Interrogatories to the extent that they seek identification and/or production of "all" or "any" information or documents or the like that refer to or relate to a particular subject or in reference to contacts or communications on the grounds

of overbreadth, undue burden, and expense, and insofar as such Interrogatories impose burdens

on the Receiver that are disproportionate relative to the anticipated benefits of the receiving the

information sought by the Interrogatories, and beyond the requirements of the Federal Rules of

Civil Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable

rules or orders.

H.     The Receiver objects to the word "identify" as defined which is overbroad,

unduly burdensome, and disproportional to any reasonable benefit, and beyond the requirements

of the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois

and/or any other applicable rules or orders.

I.     To the best of the Receiver's information and belief, the answers contained herein

are true and correct at this particular time, but are subject to correction and modification as new

facts may be discovered.  The Receiver's objections as set forth herein are made without

prejudice to the right to assert any additional or supplemental objections or reservations should

the Receiver discover additional grounds for such objections or reservations, or issues are later

raised by BC57, LLC as part of its later submissions which will respond to the Receiver's

disclosure.

## ANSWERS TO INTERROGATORIES

**Interrogatory No. 1**.  With respect to the Receiver's statement on page 4 of the Receiver's
Disclosure that "BC57 was aware of numerous facts that would have lead a reasonable person to
inquire further into the validity of the grants and that any such inquiry would have revealed that
EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the
authority of the mortgagees", please identify all persons with whom the Receiver contends BC
[sic] should have inquired.

**ANSWER**: The Receiver objects to the request as vague and ambiguous.  Subject to

these and the General Objections, the Receiver states that the information then in the possession

of BC57 should have caused it to undertake the following additional inquiries:

(1)     Search PACER (Public Access to Court Electronic Records) for evidence of litigation involving the sponsors of the loan to SSDF5 Portfolio 1 LLC.

(2)     Search the online Cook County Circuit Court docket for litigation in which EquityBuild, Jerome Cohen, or Shaun Cohen, was a party.

(3)     Search the Lexis CourtLink database for evidence of litigation in which EquityBuild, or Jerome or Shaun Cohen, was a party.

(4)     Retain a risk mitigation consultant to conduct a background search on EquityBuild, Jerome Cohen, and Shaun Cohen.

(5)     Search the Cook County Recorder of Deeds website for information pertaining to:

> (a)     the five properties offered as collateral for the loan being underwritten;
>
> (b)     the real estate located at <u>4611-17 South Drexel</u> in Chicago, the property that collateralized the $2,776,576.95 acquisition loan that BC57 extended to 4611 S. Drexel LLC (a special purpose entity affiliate of EquityBuild) on December 15, 2016;
>
> (c)     the properties disclosed to BC57 on the personal financial statement submitted by Jerome Cohen during the loan application process; and
>
> (d)     any other properties purchased or sold of by EquityBuild.

(6)     Search the Internet for information pertaining to EquityBuild.

(7)     Further follow up to understand the circumstances associated with the disconnect between the recorded mortgages against the properties in Group 1 having identified every single individual mortgagee and the corresponding payoff letters and purported releases not identifying or being executed by or on behalf of such individual mortgagees.

These inquiries did not require discussion with any specific individual, but rather actions by BC57.  To the extent that additional contact with individuals was necessary, however, all such

individuals were known to BC57 at the time the prospective portfolio refinancing was being

discussed, including but not limited to: (i) Tyler DeRoo; (ii) Ioana Salajanu; (iii) Jerome Cohen;

(iv) Jon P. Karp, CPA, Whitley Penn; (v) EquityBuild Finance LLC.

**Interrogatory No. 2**. With respect to the Receiver's statement on page 4 of the Receiver's Disclosure that "BC57 was aware of numerous facts that would have lead a reasonable person to inquire further into the validity of the grants and that any such inquiry would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees", please state in detail what specifically BC57 was supposed to ask each person identified in your answer to the preceding interrogatory.

      **ANSWER:**    The Receiver objects to the request as vague and ambiguous.  Subject to

these and the General Objections, many of the activities described above did not necessarily

require speaking with individuals, but taking action that to gather and review additional

information, as described in response to Interrogatory No. 1.  To the extent that further

discussion with individuals may have been helpful, BC57 could have asked Mr. DeRoo and Ms.

Salajanu, who provided the payoff letters and releases to BC57, to inquire why: (1) the loan

payoff amounts were substantially less than the originally stated principal amount of the

mortgages; (2) the address on one of the payoffs was changed from 7625 S East End to 7752 S

Muskegon; (3) two payoff letters reflecting the principal amounts of $1,170,000 (7625 S East

End) and $1,210,000 (7635 S East End) for were combined into a single payoff letter for 7625-

35 S East End with an unpaid principal balance of $1,210,000; (4) Mr. DeRoo said "the optics

aren't good" (see Nielsen Ex. 6); (5) Mr. DeRoo of EquityBuild Inc. (the borrower) was

instructing Elizabeth Kammerer of EquityBuild Finance, LLC (the ostensible loan servicer) as to

the substance of the payoff quotes, including the amounts to be reflected in the payoff letters; (6)

releases were originally prepared for signature by Jerome Cohen on behalf of  the borrower; and

(7) the final releases indicated that EquityBuild Inc. was the party releasing the mortgage.  BC57

could have also asked these two individuals for evidence that the lenders listed on the mortgage

documents had authorized the release of their mortgages and/or regarding the scope and basis of any authority granted to EquityBuild Finance, LLC or the Hard Money Company LLC to release the liens on the lenders' behalf.

BC57 could have asked EquityBuild Finance LLC about irregularities in the Payoffs and Releases instead of communicating solely with the Borrower and the Borrower's counsel.

In addition, BC57 could have asked Jerome Cohen for additional information regarding: (1) his personal financial statement and his schedule of Real Estate Owned (REO) (Turzewski Ex. 8) and specifically regarding the discrepancies between the debt stated as of August 3, 2017 and the payoff letters sent one month later; (2) the source of the purported $6.5 million of "sponsor equity" in the collateral; and (3) the basis for his representation that EquityBuild had "the right to remove" the "investors [that ] actually came in as private lenders" (Turzewski Ex. 19).

Finally, BC57 could have asked Mr. Karp, who submitted a letter of explanation during the loan underwriting process, why EquityBuild's accounting records "required intensive rebuilding."

*See also* Answer to Interrogatory No. 1, above and Interrogatory No. 3 below.

**Interrogatory No. 3**. With respect to the Receiver's statement on page 4 of the Receiver's Disclosure that "BC57 was aware of numerous facts that would have lead a reasonable person to inquire further into the validity of the grants and that any such inquiry would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees", please state in detail what specifically the Receiver contends that BC57 would have learned from each person identified in the answer to Interrogatory No 1 above.

**ANSWER:**   The Receiver objects to the request as vague and ambiguous.  Subject to these and the General Objections, the Receiver states that if BC57 had conducted the inquiries

6

described in the Answer to Interrogatory No. 1, above, it would have discovered, among other things, the following facts which would have revealed that EquityBuild was engaged in fraud:

(1)      Jerome Cohen was a fugitive from justice in Pennsylvania in November 1993.

(2)      American Home Rentals, a company operated by Jerome Cohen and Steve Cohen, was sued by the Preate's Bureau of Consumer Protection in February 1993 for defrauding customers of about $350,000 over a period of two years.

(3)      In June 1993, the Deputy Attorney General of Pennsylvania sued American Home Rentals for violating an injunction by operating under a different name.

(4)      In September 1994, American Home Rentals was sued by the Commonwealth of Pennsylvania for systematically violating the state Unfair Trade Practice and Consumer Protection Law.

(5)      More than 100 real estate tax lien petitions were filed against Jerome Cohen by the City of Philadelphia.

(6)      Jerome Cohen filed a personal bankruptcy petition in the United States District Court for the Middle District of Florida in September 1994 and that case was transferred to the Eastern District of Pennsylvania in January 1995.

(7)      Jerome Cohen was the subject of an unsatisfied judgment in the amount of $66,991.

(8)      An Internet discussion forum hosted by Bigger Pockets at *https://www.biggerpockets.com/forums/311/topics/300843-has-anyone*-invested-*in-any-of-the-equitybuild-properties* contained a series of comments posted by Lindsay Hirsch, who stated that her father, Gordon Hirsch, an attorney who committed suicide shortly after he withdrew from his representation of

EquityBuild, left a note stating that that the company was running a Ponzi scheme and stating that: "Shaun [Cohen] is using investor money to buy and rehab properties owned by his father Jerry. Crazy mortgages are put on the property and EquityBuild abandons them."

(9)　　The Cook County Recorder of Deeds website identifies EquityBuild as a grantor of 190 properties and a grantee of 160 properties.

(10)　　The following lawsuits, which individually and collectively disclose material information regarding the business practices of BC57's prospective borrower, were filed by or against EquityBuild in the Circuit Court of Cook County, Illinois:

　　　　(a)　　*EquityBuild, Inc. v. Lams Investment Group, LLC,* Case No. 11-L-3113.

　　　　(b)　　*James B. Fannin, et al. v. EquityBuild, Inc.,* Case No. 15-L-3211.

　　　　(c)　　*EquityBuild, Inc. v. G-Slow Construction Services, LLC,* Case No. 15-L-3458.

　　　　(d)　　*Taty Construction, Inc. v. EquityBuild, Inc., et al.,* Case No. 16-CH-3189.

　　　　(e)　　*Brooke Lee v. EquityBuild, Inc.,* Case No. 17-L-6742.

(11)　　EquityBuild held title to at least 21 properties in Cook County, Illinois, that were omitted from the personal financial statement provided to BC57 on September 13, 2017. (Turzewski Ex. 8) These properties were collectively acquired for $18,305,500 but were encumbered by mortgages ("EBF mortgages") collectively totaling $36,251,580, and the publicly-disclosed mortgagees consisted of groups of individual lenders who owned participating interests in promissory notes.

(12)　　The "total debt" disclosed in connection with the following properties identified on the personal financial statement provided to BC57 on September 13, 2017 was contradicted by the corresponding publicly-recorded EBF mortgages, specifically:

8

(a)     The EBF mortgage recorded against 3074 Cheltenham was $2,200,000, but the personal financial statement disclosed total debt of $1,115,561.

(b)     The EBF mortgage recorded against 7625 S East End was $1,605,749 and the EBF mortgage recorded against 7635 S East End was $1,703,649, but the personal financial statement disclosed total debt for both properties of $1,608,151.

(c)     The EBF mortgage recorded against 7750-58 S Muskegon was $2,250,000, but the personal financial statement disclosed total debt of $1,482,022.

(d)     The EBF mortgage recorded against 7201 S Constance was $2,250,000, but the personal financial statement disclosed total debt of $1,229,763.

(e)     The EBF mortgage recorded against 7600 S Kingston was $2,850,000, but the personal financial statement disclosed total debt of $2,000,000.

(f)     The EBF mortgage recorded against 7748 S Essex was $2,750,000, but the personal financial statement disclosed total debt of $1,900,000.

(g)     The EBF mortgage recorded against 7255 S Euclid was $1,250,000, but the personal financial statement disclosed total debt of $650,000.

(h)     The EBF mortgage recorded against 8100 S Essex was $3,300,000, but the personal financial statement disclosed total debt of $440,000.

(i)     The EBF mortgage recorded against 2736 W 64th was $740,000, but the personal financial statement disclosed total debt of $440,000.

(j)     The EBF mortgage recorded against 6250 S Mozart was $1,825,000, but the personal financial statement disclosed total debt of $1,000,000.

(k)     (Two separate mortgages were recorded against 1700 W Juneway (a $2,175,000 mortgage recorded in favor of Thorofare Asset Based Lending REIT Fund IV, LLC on April 6, 2017, and a $4,120,000 EBF mortgage recorded on June 23, 2017), but the personal financial statement failed to disclose the EBF mortgage.

(l)     The EBF mortgage recorded against 4533 S Calumet was $2,900,000, but the personal financial statement disclosed total debt of $1,000,000.

(m)     Two separate mortgages were recorded against 5450 S Indiana (a $3,600,000 mortgage recorded in favor of various lenders c/o Shatar Capital Partners on April 4, 2017, and a $3,050,000 EBF mortgage recorded on June 23, 2017), but the personal financial statement disclosed total debt of $2,800,000.

9

      (n)     Two separate mortgages were recorded against 7749 S Yates (a $3,600,000 mortgage recorded in favor of various lenders c/o Shatar Capital Partners on April 4, 2017, and a $2,860,000 EBF mortgage recorded on June 23, 2017), but the personal financial statement disclosed total debt of $0.

      (o)     A mortgage in the amount of $1,000,000 was recorded against 7024 S Paxton by Master's Holdings, LLC on January 3, 2017, but the personal financial statement disclosed total debt of $0. In addition, an EBF mortgage was recorded against 7024 S Paxton on April 10, 2017, but released on June 19, 2017.

(13)    On June 19, 2017, an EBF mortgage in the amount of $5,250,000 was recorded against 4611 S Drexel, and on July 10, 2017, that EBF mortgage was released.

**Interrogatory No. 4**. Identify the names of all persons who have personal knowledge of any facts the Receiver intends to use to support the Fraudulent Transfer Claim identified in the Receiver's Disclosure, what facts they have personal knowledge of, who the Receiver will call as witnesses to support the Fraudulent Transfer Claim and identify all documents the Receiver intends to use to support the Fraudulent Transfer claim.

      **ANSWER:**    Subject to the General Objections, the Receiver states that witnesses with personal knowledge of facts that the Receiver may call to support his claim have already been deposed, and their testimony has been cited both in the original disclosure and in position statements submitted by various claimants or has been identified in documents that were referenced therein or attached hereto. The documents that the Receiver intends to use were either identified in the previously provided disclosure (including deposition transcripts) and/or attached hereto as Tab A. (*See* Dkt. No. 1118) The Receiver believes that, consistent with the Court's establishment of summary proceedings associated with the resolution of claims, it does not anticipate the need to call witnesses because the Court can address the issues based on the admissions from the depositions and the documentary evidence. If the Court believes an evidentiary hearing is necessary, however, the Receiver may call witnesses who have been deposed as part of the Group 1 claim process and reserves the right to call witnesses identified in documents that have been either identified in the disclosure or in these interrogatories (and/or

attached hereto), or which is identified by Group 1 claimants in their position statements in regards to this issue.

**Interrogatory No. 5**. Please identify and produce all the documents the Receiver relied on to answer the above interrogatories and otherwise intends to use to support the Fraudulent Transfer Claim.

        **ANSWER:** The Receiver objects to the request as vague and ambiguous. Subject to these and the General Objections, the Receiver states that documents responsive to this interrogatory are cited in the Receiver's disclosure (Dkt. No. 1118) and in these answers to interrogatories by identifying deposition or Bates number and/or produced herewith. The Receiver reserves the right to use any other documents produced and/or identified as part of the discovery taken during the Group 1 phase of this proceeding and/or attached or referenced by claimants in their position statements including but not limited to in rebuttal to any argument or position taken by BC57 in its later submissions in response to the Receiver's disclosure.

Dated:  February 11, 2022                Kevin B. Duff, Receiver

                              By:     /s/ Michael Rachlis
                                     Michael Rachlis (mrachlis@rdaplaw.net)
                                     Jodi Rosen Wine (jwine@rdaplaw.net)
                                     Rachlis Duff & Peel, LLC
                                     542 South Dearborn Street, Suite 900
                                     Chicago, IL 60605
                                     Phone (312) 733-3950

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, I served the **Receiver's Answers to BC57 LLC's Contention Discovery** and documents Bates labeled **R1-000001 – R1-000639** upon the following counsel, with a copy to the Group 1 service distribution list EBGroup1service@rdaplaw.net:

Robert M. Horwitz
(rhorwitz@maddinhauser.com)
David E. Hart
(dhart@maddinhauser.com)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Drive, 2nd Floor
Southfield, MI 48034
(248) 354-4030

Edward S. Weil
(eweil@dykema.com)
Michael A. Gilman
(mgilman@dykema.com)
Todd Gale
(tgale@dykema.com)
Benjamin W. Chertok
(bchertok@dykema.com)
Kevin Connor
(kconnor@dykema.com)
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700

/s/ Jodi Rosen Wine

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
mrachlis@rdaplaw.net