# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) | Civil Action No. 18-cv-5587 |
| ) v. ) | Hon. John Z. Lee |
| ) EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, ) ) ) ) | Mag. Judge Young B. Kim |
| ) Defendants. ) ) | |

## RECEIVER'S SUBMISSION ON GROUP 1 CLAIMS

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by the Order of this Court entered on August 17, 2018, submits the following to assist the Court in regards to the resolution of Group 1 claims asserted against five properties: 3074 Cheltenham (Property 74); 7625-33 S East End (Property 75); 7635-43 S East End (Property 76); 7750 S Muskegon (Property 77); and 7201 S Constance (Property 78).

There are 169 claimants in Group 1 who have submitted proof of claims forms as ordered by the Court.[1]  There has been both written and oral discovery exchanged.  The Receiver has reviewed each of the claims submitted, the discovery identified above, the position statements

---

[1] Several individuals or entities submitted claims against more than one property in Group 1.  For purposes of this position statement, those individuals or entities are considered a separate claimant for each property.

submitted by Group 1 claimants, and various EquityBuild records, for purposes of providing recommendations on the issues of priority as well as the validity of the claims and of the amounts being claimed. Exhibits 1-5, attached hereto, are spreadsheets for each of the five properties in Group 1, and contain the Receiver's recommendations in regards to whether each non-institutional lender claim is secured or unsecured and as to the maximum amount to be distributed to such claimant if funds are available. Exhibit 6 provides similar information regarding the claim of institutional lender BC57, LLC ("BC57"), which is asserted against all five of the properties.

Section I of this submission sets forth the Receiver's recommendation on the issue of priority between the investor lender claimants and BC57. Section II addresses certain general principles that support the Receiver's recommendations that are applicable to all claimants in Group 1 as set forth in Exhibit 1-6. Section III addresses special circumstances that are applicable to certain claims that are also included in Exhibit 1-5.

## I.  The Receiver Recommends that Investor Lenders Have Priority over BC57.

Pursuant to its February 9, 2021 Order, the Court directed the Receiver to make recommendations regarding the claims submitted to the Receiver. (Docket No. 941) With regard to the priority dispute between BC57 (the institutional lender) and the investor lenders, the Receiver recommends that the Court find that the mortgages recorded by the investor lenders have priority over the later-recorded mortgage recorded by BC57. The Receiver adopts and incorporates the argument of the SEC on this issue (Docket No. 1146), as well as arguments of other claimants on that position (*e.g.,* Docket No. 1151). As those claimants and the SEC have articulated, the recorded mortgages for the investor lenders associated with the Group 1 properties were first in time and not properly released; nor has the Receiver seen any evidence that such investor lenders were repaid from the proceeds of the BC57 loan. In this circumstance, the

Receiver recommends, consistent with principles of law and equity, that these investor lenders' mortgage interests be found to have priority over BC57's mortgage interest.

The investor-lender claimants that the Receiver recommends be recognized as having priority and entitled to a percentage share of the prior-recorded mortgages ahead of BC57 are not in all cases the same lenders that are listed on Exhibit A to the various mortgages at issue because of subsequent buyouts and assignments of percentage shares of the secured interests. Relatedly, not all of the investor lenders who have submitted claims have retained their first-priority secured interest, due to subsequent assignments, rollovers, principal repayments, and the like, as detailed in Exhibits 1-5 and Section III below. The Receiver has taken these transfers of interest into consideration in making his recommendations.

If the Court finds that the investor lenders have priority on this basis, the Court need not address the issues raised by the Receiver (and others) in regards to fraudulent transfers and inquiry notice as it relates to BC57, unless there are enough funds from any individual property account to address any claimant holding a second secured position. However, to the extent the Court deems it necessary and appropriate to address this issue, the Receiver recommends that the Court find that any security interest BC57 retains is a voidable transfer under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160. The legal and factual bases for the Receiver's position in this regard are set forth in the Receiver's Disclosure (Docket No. 1118) and further in answers to certain discovery (a copy of which is attached hereto as Exhibit 7), all of which reflect that BC57 was on inquiry notice of facts that would have lead a reasonable person to inquire further about potentially fraudulent activity within EquityBuild. As a result, the Receiver recommends that the claim of BC57 be subordinated from an alleged first priority secured claim to an unsecured claim.

II.     **General Issues Regarding Elements of All Claims that the Receiver Recommends Be Excluded from Consideration.**

Most claimants in Group 1 are seeking amounts in addition to the return of the principal amounts that they provided to EquityBuild.  For example, many claimants seek unpaid interest that has accrued after the establishment of the Receivership (whether it be termed contract interest or default interest).  Other claimants seek to recover various types of penalties and attorneys' fees.  The Receiver recommends that none of those categories beyond return of principal be allowed (following appropriate setoff for amounts already returned to claimants in various forms), and provides the following explanation for that position.

A.     **A Disallowance of Post-Receivership Interest, Penalties, and Fees Is Appropriate.**

As a general rule, in equity receiverships, interest on a debtor's obligations ceases to accrue at the inception of the proceeding.  *See, e.g., Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 163 (1946); *see also Matter of Fesco Plastics Corp.,* 996 F.2d 152, 155 (7th Cir. 1993) (referring to bankruptcy cases; "The age-old rule in bankruptcy, adopted from the English system, is that interest on claims stops accruing when the bankruptcy petition is filed." ); 11 U.S.C. § 502(b)(2).  One of the many purposes of the rule is that the courts are charged with preserving and protecting the estate for the benefit of all interests involved. *Vanston,* 329 U.S. at 163.  To that point, the *Vanston* Court made clear that interest is not permitted in a federal equity receivership – whether to a secured or unsecured creditor – when the security is not worth the sum of principal and interest due.  The Supreme Court's explanation of that position is relevant and important here:

> When and under what circumstances federal courts will allow interest on claims against debtors' estates being administered by them has long been decided by federal law. Cf. Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. *The general rule* in bankruptcy and *in equity receivership has been that interest on the debtors' obligations ceases to accrue at*

4

> *the beginning of proceedings. Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved. Thus this Court has said: 'We cannot agree that a penalty in the name of interest should be inflicted upon the owners of the mortgage lien for resisting claims which we have disallowed. As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate.'* Thomas v. Western Car Co., 149 U.S. 95, 116, 117, 13 S.Ct. 824, 833, 37 L.Ed. 663. Cf. American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 34 S.Ct. 502, 58 L.Ed. 949. Courts have felt that it would be inequitable for anyone to gain an advantage or suffer a loss because of such delay. Sexton v. Dreyfus, 219 U.S. 339, 346, 31 S.Ct. 256, 258, 55 L.Ed. 244. . . .

> Simple interest on secured claims accruing after the petition was filed was denied unless the security was worth more than the sum of principal and interest due. Sexton v. Dreyfus, supra. To allow a secured creditor interest where his security was worth less than the value of his debt was thought to be inequitable to unsecured creditors.

*Vanston,* 329 U.S. at 163-64 (emphasis supplied).

Here, each of the amounts in the property accounts for the five properties at issue in Group 1 is less than the principal owed to the claimants on the properties (even without consideration of interest and amounts owed pursuant to the Receiver's lien). *See* Exhibit 8 hereto. As such, the properties are considered "undersecured" as the value of the collateral does not exceed the amount of purported secured interests owed at the time of the Receivership. Under such circumstances, claimants (whether undersecured or unsecured) are not able to recover post-receivership interest and costs, whether under *Vanston* or later Supreme Court cases interpreting the bankruptcy code:

> Even more important for our purposes than § 506's use of terminology is its substantive effect of denying undersecured creditors post-petition interest on their claims-just as it denies oversecured creditors post-petition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral....

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 372 (1988).[2]  *See also* Clark on Receivers, § 660(b) (3d ed. 1959) ("If the mortgage security is not enough to cover the claim and interest, then the court appointing the receiver would not be justified in ordering interest paid out of general funds.")  Under such authorities, the Receiver recommends that post-receivership interest be disallowed for any claim in Group 1.

And, consistent with this same authority and its logical underpinnings, the Receiver recommends that the request for late fees, penalties (pre-payment or otherwise), attorneys fees, and costs also be rejected.  These amounts, like interest, are equally detrimental to the interests of all creditors who are to be protected.  Such protection is consistent with and supports the primary purpose of receiverships which is "'to promote orderly and efficient administration of the estate' for the benefit of all creditors." *SEC v. Capital Cove Bancorp LLC,* 2015 WL 9701154 at *12 (C.D. Cal. Oct. 13, 2015) (citing *S.E.C. v. Hardy,* 803 F.2d 1034, 1038 (9th Cir. 1986)); *see also* 11 U.S.C. § 506(b) (noting that attorneys' fees cannot be recovered for properties that are underwater).  Moreover, and as this Court is aware, the Receivership was put in place involuntarily, over the objections of the Defendants, which also renders the various penalty clauses unenforceable.  *See also, e.g., Village of Rosemont v. Maywood-Proviso State Bank*, 149 Ill. App. 3d 1087, 1091-92 (1st Dist. 1986) (finding prepayment clause unenforceable in the event of condemnation which is involuntary).

---

[2] While inapplicable here, even if the creditors may recover post-petition interest when the value of the collateral exceeds the sum of the principal and all interest due, that too is subject to equitable considerations that would militate against such payments. *See, e.g., SEC v. Capital Cove Bancorp LLC,* 2015 WL 9701154 (C.D. Cal., October 13, 2015) (finding that remaining assets would be insufficient to pay all other creditor investors who were victimized by Ponzi scheme and staying accrual of default rate interest sought by lenders).

As a matter of equity, the rejection of such claims is particularly appropriate here where the EquityBuild companies and portfolio operated as a Ponzi scheme where new investor monies were commingled and used to continue operations. That was alleged with specificity by the SEC in its Complaint, and the Cohens did not deny the Ponzi scheme having entered into a Consent Judgment (Docket No. 40).[3] The testimony provided to the District Court in support of the motion for the establishment of the Receivership evidenced the Ponzi scheme, as did later testimony and this Court's ruling in regards to the turnover of Jerry Cohen's Naples home. (*See, e.g.,* Docket No. 492 at 3-7 (magistrate judge ruling discussing Tushaus testimony); Docket No. 603 at 5-6 (affirming magistrate judge ruling; "the [District] court agrees with the magistrate judge's assessment of the hearing evidence, which 'show[s] that the funds used [to purchase the Naples Property] came from [i]nvestor monies tied to the Cohen's Ponzi scheme" (citing Docket No. 492 at 3-7, 10-14)). The District Court's later entry of a monetary judgment found that the Cohen's had been operating a Ponzi scheme. (*See,* Docket No. 533 at 2 ("Accordingly, the Cohens began running a Ponzi scheme, using new investors' funds to pay earlier investors' interest payments." (*citing* SEC Complaint, ¶ 45)).

Finally, as the Court also is aware, substantial delays in these proceedings have been caused by factors outside of the Receiver's control (*e.g.,* litigious claimants, government shutdown, the pandemic, and the like). Such delays should not serve to penalize the Estate, nor inure to the benefit of any claimants who contributed to the delay, nor come at the expense of the interest of

---

[3] The existence of the Ponzi scheme was even admitted by defendant Shaun Cohen in a video sent to various investors shortly before the SEC Complaint was filed (a video that was provided to the Court as part of the evidence at the at the hearing on the temporary restraining order leading to the Order Appointing Receiver). Shaun Cohen stated, in part, that EquityBuild subsidized interest payments from new investments (the definition of a Ponzi scheme). (SEC Complaint, ¶ 63)

unsecured claimants to potential recovery of any amounts that might otherwise remain available for distribution.

### B. The Receiver Recommends Accounting for Distributions Previously Received from EquityBuild.

With the Cohens having implemented a Ponzi scheme in which they commingled funds and used new funds from investor and institutional lenders to pay principal and exorbitant profits in the form of interest to prior and existing lenders and investors which were not tied directly and exclusively to income generated by the real estate assets associated with their loans and/or investments, the Receiver recommends that claimants' claims be set-off by the amount of all pre-receivership distributions that they received from EquityBuild in order to achieve a ratable distribution of remaining assets among all of the defrauded investors. *See Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The 'winners' in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to 'enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.'") (citation omitted). Under the "netting rule," amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. *Id.* at 771. And the fact that the claimants may be innocent victims does not change the analysis, as described by the Seventh Circuit in another Ponzi scheme:

> The money used for the trades came from investors gulled by fraudulent representations. Phillips was one of those investors, and it may seem "only fair" that he should be entitled to the profits on trades made with his money. That would be true as between him and [the Ponzi scheme operator]. It is not true as between him and either the creditors of or the other investors in the corporations. He should not be permitted to benefit from a fraud at their expense merely because he was not himself to blame for the fraud. All he is being asked to do is to return the net profits of his investment—the difference between what he put in at the beginning and what he had at the end.

*Scholes v. Lehmann*, 56 F.3d 750, 757–58 (7th Cir. 1995).

Consistent with the logic of these cases, and the authorities discussed above, the Receiver recommends that the distributions already received by the claimants on their loans be taken into consideration when determining the maximum amount that claimant ultimately should recover, given that there will not likely be a return of the full amount of the claims for the vast majority of the properties in the estate. Accordingly, Exhibits 1-6 hereto set forth the amount of distributions made to the Group 1 claimants in the form of interest, principal, or "other" distributions (*e.g.,* credits for incentive "coupons" extended to investors by EquityBuild). The amounts reflected in Exhibits 1-6 are primarily taken from the claimants' sworn proofs of claim or verified standard discovery responses. For claimants who failed to provide information in regards to monies received from EquityBuild, or who provided figures that were markedly inconsistent with EquityBuild's internal records, the Receiver relied on EquityBuild records (made available in the EquityBuild document library operated by CloudNine) such as Lender Statements of Accounts, bank statements, or other records (*e.g.,* email confirmations) that confirmed amounts at issue.

This figure is then utilized in Exhibits 1-6 to reflect the net difference between "money in" and "money out" for each claimant for the claims against these five properties. That net figure does not necessarily equate to the amount that will be distributed on a claim because the amounts available for distribution to secured claimants are likely to be insufficient to pay even these net amounts. Instead, the recommended amount for each claimant represents a ceiling – *i.e.,* the amount the Receiver would recommend for distribution in the event the proceeds of sale are sufficient to cover all of the first priority lenders. If available funds exceed these net amounts, any excess would be distributed to subordinate secured creditors and/or unsecured creditors.

### III.    Special Circumstances Involving Certain Claimants.

In developing the recommendations regarding the claims in Group 1, the Receiver encountered certain special issues and circumstances. The following is an effort to summarize many of those special circumstances and the claimants involved.

***Rollovers***.  The claim analysis undertaken by the Receiver has identified claimants who agreed to relinquish their secured interest by rolling their secured loan to either an equity position or an unsecured promissory note, as indicated in Exhibits 1-5. The Receiver recommends that these investor lenders be treated as unsecured creditors and their claims against the relevant Group 1 property be considered along with all other unsecured claims in connection with any distribution plan and methodology as to such claims prepared by the Receiver. This recommendation applies to the following claimants:

*3074 Cheltenham / 7836-38 S South Shore (Property 74)*

- Adir Hazan

- Erika Deitz (partial)

- Kevin Randall

- Madison Trust Company Agent for Custodian FBO The Jacqueline C Rowe Living Trust IRA

- Quest IRA FBO Francis D Webb 1437711

- Sam Gerber, CEO, Gerber and Associates, REI, LLC

*7625-33 S East End (Property 75)*

- Madison Trust Company Agent for Custodian FBO  The Jacqueline C Rowe Living Trust IRA

- The Peter Paul Nuspl Living Trust

*7635-43 S East End (Property 76)*

- Daniel Matthews, Leah Matthews

- Gary R Burnham Jr Solo401K Trust

- John Bloxham

*7750-52 S Muskegon (Property 77)*

- Celia Tong Revocable Living Trust Dated December 22, 2011

- Mark P. Mouty

- The Edward Falkowitz Living Trust

*7201 S Constance (Property 78)*

- Initium LLC/Harry Saint-Preux

- James Tutsock

- Kirk Road Investments, LLC

- Provident Trust Group, LLC FBO Stephan Tang IRA

- US Freedom Investments, LLC (Kevin Scheel)

***Transfer to Other Properties.*** In or about January, 2018, claimant Optima Property Solutions agreed to transfer his secured interest in 3074 Cheltenham / 7836-38 S South Shore (Property 74) along with his secured interest in certain other properties to a group of other properties owned by EquityBuild. Approximately 75% of the transferred amount was repaid to Optima in May 2018. Accordingly, the Receiver recommends that the Court find this claimant voluntarily relinquished his security interest in Property 74, and to the extent that this claimant has remaining interests in properties 9 (8100 S Essex), 62 (7834-44 S Ellis), 71 (701-13 S 5th Ave) and 93 (7957-59 S Marquette), the Receiver will consider those claims when those properties are before the Court.

***Return of Principal.*** The review performed by the Receiver demonstrates that all or a portion of the secured interest held by other claimants in one or more Group 1 properties was purchased by another claimant and the principal sum returned to the original secured claimant.

11

The Receiver recommends that the Court consider that the claims of these parties have been satisfied in full and that no further distribution is warranted from the proceeds of the property sales. This recommendation applies to the following claimants:

*3074 Cheltenham / 7836-38 S South Shore (Property 74)*

- Alton Motes and Vicki Elaine Washburn JTWROS

- Ericka Deitz (partial)

- iPlan Group Agent for Custodian FBO Jyotsna Sharma IRA

*7635-43 S East End (Property 76)*

- James Clements

*7750-52 S Muskegon (Property 77)*

- Daniel J Martineau

**No Documentation**. The Receiver recommends that two claims be disallowed due to the claimants' complete failure to provide any documentation supporting their claims and where the Receiver was unable to locate any support for the claims in EquityBuild's records:

- Alcalli Sabat – claiming interest in 7625-33 S East End (Property 75)

- Bancroft, Ed (iPlanGroup Agent for Custodian FBO Ed Bancroft Roth) – claiming interest in 7750-52 S Muskegon (Property 77)

**Promoter Claimant.** The Receiver recommends that the claim of Strata Trust Company FBO David J Geldart of a secured interest in 7625-33 S East End (Property 75) should be disqualified because Mr. Geldart was an EquityBuild employee who actively participated in the marketing of the fraudulent scheme and is culpable for recruiting, retaining, and/or for providing false information to other claimants. *See, e.g., In re Hedged-Investments Associates, Inc.,* 380 F.3d 1292, 1301 (10th Cir. 2004) ("Where the claimant is an insider …, the party seeking subordination need only show some unfair conduct, and a degree of culpability, on the part of the

insider."); *SEC v. Enter. Trust Co.,* No. 08 Civ. 1260, 2008 WL 4534154, at \*3, 2008 U.S. Dist. LEXIS 79731, at \*10 (N.D. Ill. Oct. 7, 2008) ("Disqualifying those who took the business over the edge is the most common feature, and the least contested aspect, of distribution plans."). Several claimants who were deposed in this matter pointed to Mr. Geldart as their "personal relationship manager" at EquityBuild with whom they were in frequent contact regarding EquityBuild investments. (*See, e.g.,* Mark Young Dep. Tr. 17-18, 23-24; Cecilia Wolf Dep. Tr. 32-34)

**Portion of Claim Unsecured.** Claimant Lori Moreland submitted two claims asserting secured interests in 7201 S. Constance (Property 78) held in IRAs. The Receiver recommends that a portion of these claims be considered unsecured, as the security interests she obtained by assignments from another lender were for less than the full amount of her claims.

**Failure to Perfect Claims.** CLD Construction, Inc., whose principal Doru Unchias submitted claims asserting an interest in both 7750-52 S Muskegon (Property 77) and 7201 S Constance (Property 78) did not perfect his claims and therefore should be considered to have unsecured claims against the estate. *See Commodity Futures Trading Comm'n v. Peregrine Financial Group, Inc.,* No. 12-CV-5383, 2014 WL 1758317, \*4 (N. D. Ill. May 2, 2014) (finding that it would be inappropriate to treat as secured mechanics liens that were not perfected or otherwise secured at the commencement of the receivership).

**City of Chicago.** The City of Chicago has submitted proofs of claim, discovery responses and a position statement (Dkt. No. 1144), each of which claims different amounts based on different cases and invoices. The Receiver has spent significant time attempting to sort through these claims and has made his best assessment as to the amount of the City's claims, as reflected in Exhibits 1-5. As an initial matter, the Receiver recommends that any amounts listed for which the City has provided no supporting evidence be disallowed. Additionally, the Receiver

recommends that claims for "water debt" allegedly supported by "a banner screenshot from the Water Department's business record" be disallowed because the Receiver obtained a Full Payment Certificate from said Water Department and that amount was paid at the closing of each property sale. The Receiver further takes exception with the City's statement that "[i]t appears that a significant portion of the amounts owed to the City arose after the receiver was appointed." The only case that appears to have been filed during the receivership is 19BT00089A, involving a 7201 S Constance (Property 78), in which a default judgment in the amount of $17,040 was entered on January 14, 2019 with no prior notice to the Receiver. Throughout this receivership, the Receiver has diligently appeared at administrative and municipal court hearings of which he had notice, pleaded with the City to provide notice directly to the Receiver and his counsel, and worked with city attorneys and property managers to resolve citations and address alleged code violations, and yet the City has repeatedly failed to provide timely notice to the Receiver. On August 27, 2020, the City recorded the aforementioned default judgment involving 7201 S Constance as a lien against that property and two others owned by the same EquityBuild entity (SSDF5 Portfolio 1, LLC), 3704 Cheltenham and 7625 S East End (Properties 74, 75 and 78). This lien was recorded in direct violation of the Order Appointing Receiver, which prohibits persons receiving notice of the Order from creating or enforcing a lien upon any Receivership Assets. (Dkt. No. 16 at ¶ 29(A)) The Receiver gave repeated notice of the Order Appointing Receiver to the City as early as August 29, 2018, and at countless hearings between then and August 27, 2020, when the lien was created. For this reason, the Receiver recommends that the City of Chicago's claims be considered unsecured in the amounts listed in Exhibits 1-5. *See Commodity Futures,* 2014 WL 1758317 at *3-4 (classifying lien that was not perfected at the commencement of the receivership as unsecured where subsequent recording of the lien was in violation of court's stay order).

***Duplicates.*** Finally, the Receiver has determined that several claims submitted are duplicate claims, as follows:

*3074 Cheltenham / 7836-38 S South Shore (Property 74)*

- Vladimir Matviishin – claim is a duplicate of claim against the same property that was submitted by Mr. Matviishin dba Network Expert

*7635-43 S. East End (Property 76)*

- Lorenzo Jaquias – claim is duplicative of claim against 7625-33 S East End Ave (Property 75). Claimants' interest secured by 7625-33 S East End only

- Steven R. Bald – claim is duplicative of claim against 7625-33 S East End Ave (Property 75). Claimants' interest secured by 7625-33 S East End only

- The Peter Paul Nuspl Living Trust – claim is duplicative of claim against 7625-33 S East End Ave (Property 75). Claimants' interest secured by 7625-33 S East End only

Following the Court's rulings in regarding priority and in regards to the Receiver's recommendations on Group 1 as set forth in the attached Exhibits and the foregoing discussion, the Receiver will recommend a distribution plan and methodology, to the extent needed, including the amount to be distributed to each eligible claimant.

Dated: February 28, 2022                    Kevin B. Duff, Receiver

                                By:    /s/ Michael Rachlis
                                       Michael Rachlis
                                       Jodi Rosen Wine
                                       Rachlis Duff & Peel, LLC
                                       542 South Dearborn Street, Suite 900
                                       Chicago, IL 60605
                                       Phone  (312) 733-3950
                                       mrachlis@rdaplaw.net
                                       jwine@rdaplaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I electronically filed the foregoing Receiver's Submission on Group 1 Claims with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

I further certify that I caused true and correct copy of the foregoing Submission, to be served upon all claimants included on the Email Service List for Group 1 by electronic mail.

I further certify that the Submission will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax     (312) 733-3952
mrachlis@rdaplaw.net

# Exhibit 1

SEC v. EquityBuild

Group 1 Investor-Lender Claims

3074 Cheltenham Avenue a/k/a 7836-38 S South Shore Avenue (Property 74)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 1839 Fund I LLC | 74-367 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $12,850.00 | POC, LSA | $37,150.00 | | |
| Adir Hazan | 74-143 | POC, DIS, POS | Investor-Lender | $50,000.00 | $0.00 | $8,183.00 | POC (interest) and LSA ($1000 other) | $0.00 | $41,817.00 | Secured investment rolled to SSDF1 Equity Fund |
| Alton Motes and Vicki Elaine Washburn JTWROS | 74-2042 | POC, DIS | Investor-Lender | $80,000.00 | $0.00 | $21,226.60 | LSA | $0.00 | $58,773.40 | EquityBuild records indicate claim bought out by another investor and principal returned |
| BTRUE LLC  Barry J. Oates | 74-669 | POC | Equity Investor | $38,400.00 | $38,400.00 | $0.00 | POC, LSA | $38,400.00 | | |
| Christopher Pong | 74-760 | POC, DIS | Investor-Lender | $29,280.00 | $29,280.00 | $7,622.57 | POC, DIS, LSA | $21,657.43 | | |
| City of Chicago | 74-693 | POC, DIS, POS | Other | $10,812.42 | | $0.00 | N/A | $0.00 | $0.00 | Water debt paid at closing |
| Daniel Matthews, Leah Matthews | 74-117 | POC | Investor-Lender | $20,000.00 | $20,000.00 | $3,606.62 | POC | $16,393.38 | | |
| Danyel Tiefenbacher and Jamie Lai | 74-510 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $13,599.93 | POC, LSA | $36,400.07 | | |
| Degenhardt, Duane A | 74-2015 | POC, DIS | Investor-Lender | $66,684.00 | $66,684.00 | $9,780.32 | LSA | $56,903.68 | | |
| Erika Dietz | 74-1283 | POC, DIS | Investor-Lender | $50,000.00 | $0.00 | $42,756.68 | POC, LSA | $0.00 | $7,243.32 | $30,000 principal returned and $20,000 of investment rolled to unsecured promissory note |
| G&M You-Nique Properties, LLC | 74-722 | POC, DIS, POS | Investor-Lender | $60,000.00 | $60,000.00 | $16,695.00 | POC (interest) and LSA ($1000 other) | $43,305.00 | | |
| Grathia Corp | 74-1445 | POC, POS | Investor-Lender | $100,000.00 | $100,000.00 | $32,600.07 | LSA | $67,399.93 | | |
| iPlan Group Agent for Custodian FBO Jyotsna Sharma IRA | 74-341 | POC, DIS, POS | Investor-Lender | $25,000.00 | $0.00 | $28,591.70 | LSA, WF | $0.00 | $0.00 | Principal returned to claimant on 7/20/16 |
| IPlanGroup Agent for Custodian FBO Mark Young | 74-1446 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $25,033.40 | LSA | $74,966.60 | | |
| Ira J. Fields Living Trust, Glynis Sheppard, Trustee | 74-1240 | POC, DIS, POS | Investor-Lender and Equity Investor | $50,000.00 | $50,000.00 | $12,848.95 | DIS and LSA ($1000 other) | $37,151.05 | | |
| James Hoven | 74-2029 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $14,082.00 | POC (interest) and LSA ($1000 other) | $35,918.00 | | |
| Jill Meekcoms (The Entrust Group Inc. FBO Jill (Halverson) Meekcoms IRA #33-21296) | 74-548 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $14,183.26 | POC | $35,816.74 | | |
| John Taxeras (Flying Hound Holdings. LLC | 74-994 | POC, DIS | Investor-Lender | $18,552.85 | $18,552.85 | $7,884.23 | DIS | $10,668.62 | | |
| Joshua Morrow | 74-734 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $13,599.93 | POC (interest) and LSA ($1000 other) | $36,400.07 | | |
| Julia Pong ( iPlanGroup Agent for Custodian FBO Julia Pong IRA) | 74-1022 | POC, DIS | Investor-Lender | $34,572.00 | $34,572.00 | $9,000.24 | POC, DIS, LSA | $25,571.76 | | |
| Kenneth (Ken) and Maria (Tina) Jorgensen (iPlanGroup Agent for Custodian FBO Maria Christina Jorgensen IRA) | 74-194 | POC, DIS, POS | Investor-Lender | $42,000.00 | $42,000.00 | $10,820.00 | POC, DIS | $31,180.00 | | |
| Kester Brothers Farm, LLC, C/O James R. Kester | 74-944 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $13,099.93 | POC, DIS | $36,900.07 | | |
| Kevin Randall | 74-811 | POC | Investor-Lender | $50,000.00 | $0.00 | $10,266.61 | LSA | $0.00 | $39,733.39 | Secured investment rolled to SSDF4 Equity Fund |
| KKW Investments, LLC | 74-336 | POC, DIS, POS | Investor-Lender | $1,600.00 | $1,600.00 | $456.00 | POC | $1,144.00 | | |
| Madison Trust Company Agent for Custodian FBO  The Jacqueline C Rowe Living Trust IRA | 74-163 | POC, DIS | Equity Investor | $50,000.00 | $50,000.00 | $11,583.33 | LSA | $0.00 | $38,416.67 | Secured investment rolled to SSDF4 Equity Fund |
| Madison Trust Company Custodian FBO Robert W. Jennings Account# M1605053 | 74-241 | POC, DIS, POS | Investor-Lender | $74,539.00 | $74,539.00 | $20,266.69 | DIS | $54,272.31 | | |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MayREI, LLC) | 74-1412 | POC, DIS | Investor-Lender | $86,515.00 | $86,515.00 | $22,200.00 | POC, DIS | $64,315.00 | | |

KEY

POC - Proof of Claim

DIS - Claimants' Discovery Response

LSA - EquityBuild Lender Statement of Accounts

POS - Claimant's Position Statement

WF - Wells Fargo Bank Records

SEC v. EquityBuild
Group 1 Investor-Lender Claims
3074 Cheltenham Avenue a/k/a 7836-38 S South Shore Avenue (Property 74)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Michael F Grant & L. Gretchen Grant (Michael F. Grant & L. Gretchen Grant Revocable Trust dated March 16th 2012) | 74-393 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $4,712.53 | LSA | $45,287.47 | | |
| New Move Ventures Inc. (Steven Fecko) | 74-115 | POC | Investor-Lender | $50,000.00 | $50,000.00 | $14,500.00 | LSA | $35,500.00 | | |
| Optima Property Solutions, LLC | 74-1023 | POC, DIS, POS | Investor-Lender | $60,000.00 | $0.00 | $74,645.00 | LSA | $0.00 | $0.00 | Secured investment transferred to different EquityBuild properties |
| Pat DeSantis | 74-397 | POC, DIS, POS | Investor-Lender | $110,000.00 | $110,000.00 | $30,910.07 | LSA | $79,089.93 | | |
| Paul N. Wilmesmeier | 74-300 | POC, DIS, POS | Investor-Lender | $25,000.00 | $25,000.00 | $6,161.07 | POC, DIS | $18,838.93 | | |
| PNW Investments, LLC | 74-332 | POC, DIS, POS | Investor-Lender | $10,000.00 | $10,000.00 | $2,850.00 | POC, DIS | $7,150.00 | | |
| QUEST IRA Inc. FBO Francisco A. Romero Sr. Acct# 25282-11 and Acct# 25282-21 | 74-1352 | POC, DIS | Investor-Lender | $56,000.00 | $56,000.00 | $13,553.59 | POC. DIS | $42,446.41 | | |
| Quest IRA FBO Francis D Webb 1437711 | 74-218 | POC, DIS, POS | Investor-Lender | $22,035.00 | $0.00 | $5,993.56 | LSA | $0.00 | $16,041.44 | Secured investment rolled to SSDF6 Equity Fund |
| Sam Gerber, CEO, Gerber and Associates, REI, LLC | 74-562 | POC, DIS, POS | Investor-Lender | $80,000.00 | $0.00 | $0.00 | POC, LSA | $0.00 | $80,000.00 | Secured investment rolled to SSDF6 Equity Fund |
| SAMUEL HOME SOLUTIONS LLC, George Samuel | 74-347 | POC | Investor-Lender | $42,131.00 | $42,131.00 | $13,468.46 | POC | $28,662.54 | | |
| Scott E Pammer | 74-827 | POC, DIS | Investor-Lender | $70,000.00 | $70,000.00 | $19,483.00 | POC, DIS | $50,517.00 | | |
| Sidney Haggins (Vantage FBO Sidney Haggins IRA) | 74-1434 | POS | Investor-Lender | $30,000.00 | $30,000.00 | $8,700.00 | LSA | $21,300.00 | | |
| Susan Kalisiak-Tingle | 74-1438 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $16,299.93 | LSA | $33,700.00 | | |
| Terry L. Merrill, Sheryl R. Merrill | 74-602 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $13,599.93 | LSA | $36,400.07 | | |
| TruStar Real Estate Solutions, LLC | 74-337 | POC, DIS, POS | Investor-Lender | $75,000.00 | $75,000.00 | $20,125.00 | POC | $54,875.00 | | |
| Vladimir Matviishin | 74-233 | POC, DIS | Investor-Lender | $28,075.00 | $0.00 | | | $0.00 | $0.00 | This is a duplicate claim |
| Vladimir Matviishin, dba Network Expert | 74-1387 | POC, DIS | Investor-Lender | $28,075.00 | $28,075.00 | $7,861.05 | LSA | $20,213.95 | | |
| Walter T Akita and Margaret M Akita | 74-950 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $13,099.93 | POC | $36,900.07 | | |
| Young Family Trust | 74-1452 | POC, DIS, POS | Investor-Lender | $45,000.00 | $45,000.00 | $1,800.00 | LSA | $43,200.00 | | |
| Yvette Nazaire Camacho (iPlanGroup Agent for Custodian FBO Yvette Nazaire Camacho IRA) | 74-487 | POC, DIS | Investor-Lender | $30,000.00 | $30,000.00 | $7,510.00 | DIS | $22,490.00 | | |
| TOTAL | | | | $2,299,271.27 | $1,843,348.85 | | | $1,338,485.15 | $282,025.22 | |

KEY
POC - Proof of Claim
DIS - Claimants' Discovery Response
LSA - EquityBuild Lender Statement of Accounts
POS - Claimant's Position Statement
WF - Wells Fargo Bank Records

# Exhibit 2

EquityBuild
Group 1 Investor-Lender Claims
7625-33 S East End Avenue (Property 75)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Disribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Alcalli Sabat | 75-786 | POC, DIS, POS | Investor-Lender | $22,993.00 | $0.00 | | | $0.00 | | Failure of documentation supporting claim either submitted by Claimant or located in EquityBuild records |
| Asians Investing In Real Estate LLC | 75-503 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $18,466.65 | POC | $31,533.35 | | |
| Brad and Linda Lutz | 75-962 | POC, DIS, POS | Investor-Lender | $397,836.00 | $361,629.00 | $134,255.27 | POC, DIS, LSA | $227,373.73 | | |
| Capital Investors, LLC | 75-1490 | POC, DIS, POS | Investor-Lender | $36,207.00 | $36,207.00 | $4,505.76 | DIS | $31,701.24 | | |
| City of Chicago | 75-693 | POC, DIS, POS | Other | $24,790.76 | $0.00 | $0.00 | N/A | $0.00 | $24,790.76 | |
| Edge Investments, LLC, Janet F. Turco, Owner/Member IRA | 75-180 | POC, DIS | Investor-Lender | $176,226.00 | $176,226.00 | $63,906.94 | LSA | $112,319.06 | | |
| Geronimo Usuga Carmona | 75-543 | POC, DIS | Investor-Lender | $35,667.00 | $35,667.00 | $3,863.90 | POC | $31,803.10 | | |
| KKW Investments, LLC | 75-336 | POC, DIS, POS | Investor-Lender | $75,000.00 | $75,000.00 | $22,925.00 | POC | $52,075.00 | | |
| Knickerbocker LLC | 75-2035 | POC, DIS, POS | Investor-Lender | $39,664.00 | $39,664.00 | $14,378.20 | LSA | $25,285.80 | | |
| Lorenzo Jaquias (iPlanGroup Agent for Custodian FBO Lorenzo Jaquias) | 75-184 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $14,783.33 | LSA | $35,216.67 | | |
| Madison Trust Company Agent for Custodian FBO The Jacqueline C Rowe Living Trust IRA | 75-163 | POC, DIS | Equity Investor | $200,000.00 | $0.00 | $71,491.67 | DIS | $0.00 | $128,508.33 | Secured investment rolled to SSDF4 Equity Fund |
| Michael James Guilford and Nancy Richard-Guilford, Jointly with Right of Survivorship | 75-516 | POC, DIS, POS | Investor-Lender | $92,561.00 | $92,561.00 | $30,269.05 | POC | $62,291.95 | | |
| Randall Sotka (Tahiti Trust) | 75-1207 | POC, DIS, POS | Investor-Lender | $38,826.00 | $38,826.00 | $5,694.48 | LSA | $33,131.52 | | |
| Robert Potter | 75-1389 | POC, DIS | Investor-Lender | $786.00 | $786.00 | $100.26 | LSA | $685.74 | | |
| Stephan Tang | 75-1111 | POC, DIS, POS | Investor-Lender | $25,185.00 | $25,185.00 | $3,492.32 | LSA | $21,692.68 | | |
| Steven R. Bald | 75-399 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $15,000.00 | POC | $35,000.00 | | |
| Strata Trust Company FBO David J Geldart | 75-1010 | POC | Investor-Lender | $107,362.00 | $107,362.00 | $32,566.04 | LSA | $0.00 | $0.00 | EquityBuild employee actively participated in marketing the fraudulent scheme disqualified from receiving a distribution. |
| The Peter Paul Nuspl Living Trust | 75-2044 | POC, DIS, POS | Investor-Lender | $167,100.00 | $0.00 | $57,983.79 | LSA | $0.00 | $109,116.21 | Secured investment rolled to SSDF4 Equity Fund |
| United Capital Properties, LLC | 75-1480 | POC | Investor-Lender | $2,303.00 | $2,303.00 | $306.13 | LSA | $1,996.87 | | |
| Wesley Pittman (Pittman Gold LLC) | 75-469 | POC, DIS | Investor-Lender | $150,000.00 | $150,000.00 | $47,125.00 | POC, DIS, LSA | | | |
| Total | | | | $1,742,506.76 | $1,291,416.00 | | | $702,106.71 | $262,415.30 | |

KEY
POC - Proof of Claim
DIS - Claimants' Discovery Response
LSA - EquityBuild Lender Statement of Accounts
POS - Claimant's Position Statement
WF - Wells Fargo Bank Records

# Exhibit 3

SEC v. EquityBuild
Group 1 Investor-Lender Claims
7635-43 S East End Avenue (Property 76)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Arthur and Dinah Bertrand | 76-890 | POC, DIS, POS | Investor-Lender | $217,448.00 | $217,448.00 | $83,899.00 | POC, DIS | $133,549.00 | | |
| Arthur Bertrand | 76-892 | POC, DIS, POS | Investor-Lender | $2,875.00 | $2,875.00 | $1,124.00 | POC, DIS | $1,751.00 | | |
| Carolyn B Ucker | 76-1099 | POC | Equity Investor | $25,000.00 | $25,000.00 | $7,250.00 | LSA | $17,750.00 | | |
| Cecilia Wolff | 76-1204 | POC, DIS, POS | Investor-Lender | $25,000.00 | $25,000.00 | $7,250.00 | LSA | $17,750.00 | | |
| City of Chicago | 76-693 | POC, DIS, POS | Other | $917.76 | $0.00 | $0.00 | N/A | $0.00 | $ 917.76 | |
| Daniel Matthews, Leah Matthews | 76-117 | POC | Investor-Lender | $72,029.00 | $0.00 | $30,544.07 | POC | $0.00 | $ 41,484.93 | Secured investment rolled to unsecured promissory note |
| Dennis & Mary Ann Hennefer | 76-355 | POC, DIS | Investor-Lender | $25,000.00 | $25,000.00 | $3,466.00 | DIS | $21,534.00 | | |
| Equity Trust Custodian FBO Dorothy Marie Baker IRA | 76-2007 | POC | Investor-Lender | $10,000.00 | $10,000.00 | $3,050.00 | POC | $6,950.00 | | |
| Frank Starosciak | 76-1239 | POC, DIS, POS | Investor-Lender | $17,125.00 | $17,125.00 | $5,774.45 | POC | $11,350.55 | | |
| Gary R Burnham Jr Solo401K Trust | 76-1067 | POC, DIS, POS | Investor-Lender | $42,029.00 | $0.00 | $10,480.00 | POC | | $31,549.00 | Secured investment rolled to SSDF4 Equity Fund |
| iPlanGroup Agent for Custodian FBO Laura Dirnberger Roth IRA | 76-448 | POC, DIS | Investor-Lender | $10,000.00 | $10,000.00 | $2,800.00 | LSA | $7,200.00 | | |
| James Clements | 76-1402 | POC, DIS | Investor-Lender | $20,000.00 | $0.00 | $22,800.00 | POC | $0.00 | $0.00 | Principal repaid with interest |
| Jeffry M. Edwards | 76-666 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $14,533.33 | DIS | $35,466.67 | | |
| JK Electron, Inc., Jan Kobylarczyk | 76-1297 | | Trade Creditor | $13,250.00 | $13,250.00 | $0.00 | N/A | $13,250.00 | | Order approving sale (Dkt. 602) at 3(h) |
| John Bloxham | 76-1012 | POC, DIS, POS | Investor-Lender | $50,000.00 | $0.00 | $11,966.66 | DIS | $0.00 | $50,000.00 | Secured investment rolled to SSDF4 Equity Fund |
| Lorenzo Jaquias | 76-184 | POC, DIS | Investor-Lender | $50,000.00 | $0.00 | $0.00 | N/A | $0.00 | $0.00 | Claimant's loan is secured by 7625-33 S East End (property 75) only. |
| Manoj Donthineni | 76-1357 | POC, DIS | Investor-Lender | $41,007.00 | $41,007.00 | $12,068.03 | LSA | $28,938.97 | | |
| Michael James Guilford and Nancy Richard-Guilford, Jointly with Right of Survivorship | 76-516 | POC, DIS, POS | Investor-Lender | $57,439.00 | $57,439.00 | $18,709.28 | POC | $38,729.72 | | |
| Paul N. Wilmesmeier | 76-300 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $16,786.21 | POC | $33,213.79 | | |
| Penny W Goree (iPlanGroup Agent for Custodian FBO Timothy J Goree IRA) | 76-236 | POC | Equity Investor | $50,000.00 | $50,000.00 | $14,000.00 | POC, LSA | $36,000.00 | | |
| QCH Investment Trust | 76-1436 | POC | Investor-Lender | $50,000.00 | $50,000.00 | $14,783.33 | POC | $35,216.67 | | |
| Robert Guiney | 76-798 | POC, DIS, POS | Investor-Lender | $18,250.00 | $18,097.00 | $5,442.15 | DIS | $12,654.85 | | |
| Steven R. Bald | 76-399 | POC, POS | Investor-Lender | | $0.00 | $0.00 | N/A | $0.00 | $0.00 | Claimant's loan is secured by 7625-33 S East End (property 75) only. |
| THE INCOME FUND, LLC Thomas Garlock, Managing Member | 76-1421 | POC, DIS | Investor-Lender | $80,000.00 | $80,000.00 | $29,066.67 | POC | $50,933.33 | | |
| The Peter Paul Nuspl Living Trust | 76-2044 | POC, DIS, POS | Investor-Lender | $50,000.00 | $0.00 | $0.00 | N/A | $0.00 | $0.00 | Claimant's loan is secured by 7625-33 S East End (property 75) only. |
| Tiger Chang Investments LLC | 76-164 | POC, DIS | Investor-Lender | $25,000.00 | $25,000.00 | $8,975.00 | POC, DIS | $16,025.00 | | |
| Total Return Income Fund, LLC Thomas Garlock, Managing Member | 76-1366 | POC, DIS | Investor-Lender | $520,000.00 | $520,000.00 | $149,500.00 | DIS | $370,500.00 | | |
| Trey Hopkins | 76-714 | POC | Investor-Lender | $100,000.00 | $100,000.00 | $23,000.00 | DIS | $77,000.00 | | |
| Umbrella Investment Partners | 76-1167 | POC, DIS, POS | Investor-Lender | $12,833.00 | $12,833.00 | $3,864.90 | POC | $8,968.10 | | |
| Winnie Quick Blackwell (née Winnie Jannett Quick) | 76-102 | POC, DIS, POS | Investor-Lender | $11,000.00 | $11,000.00 | $3,087.33 | DIS | $7,912.67 | | |
| Total | | | | $1,696,202.76 | $1,411,074.00 | | | $982,644.32 | $123,951.69 | |

KEY
POC - Proof of Claim
DIS - Claimants' Discovery Response
LSA - EquityBuild Lender Statement of Accounts
POS - Claimant's Position Statement
WF - Wells Fargo Bank Records

# Exhibit 4

SEC v. EquityBuild

Group 1 Investor-Lender Claims

7750-52 S Muskegon Avenue (Property 77)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Alton Motes (Alton P. Motes Trust UTA 12-15-11) | 77-2042 | POC, DIS | Investor-Lender | $43,000.00 | $43,000.00 | $12,255.00 | LSA | $30,745.00 | | |
| Arthur and Dinah Bertrand | 77-890 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $49,356.00 | POC, DIS | $50,644.00 | | |
| Bancroft, Ed (iPlanGroup Agent for Custodian FBO Ed Bancroft Roth) | 77-2008 | POC | Investor-Lender and Equity Investor | | $0.00 | $0.00 | N/A | $0.00 | $0.00 | Claimed interest in this property not supported by Proof of Claim or EquityBuild Records |
| Celia Tong Revocable Living Trust Dated December 22, 2011 | 77-2008 | POC, DIS | Investor-Lender | $25,000.00 | $0.00 | $7,508.33 | DIS | $0.00 | $17,491.67 | Claimants security interest assigned to another claimant and investment rolled to SSDF4 Equity Fund |
| Christopher Wilson and Brittny Wilson (Niosi) | 77-807 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $25,000.00 | DIS | $25,000.00 | | |
| CLD Construction, Inc. (Doru Unchias) | 77-1454 | POC | Independent Contractor | $49,000.00 | $0.00 | $0.00 | N/A | $0.00 | $49,000.00 | Unsecured trade creditor |
| Daniel J Martineau | 77-1299 | POC, DIS, POS | Investor-Lender | $100,000.00 | $0.00 | $124,000.00 | POC | $0.00 | $0.00 | Principal repaid with interest |
| Danielle DeVarne | 77-679 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $18,667.00 | DIS | $31,333.00 | | |
| Derrick, Horace (H Derrick, LLC) | 77-2016 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $40,000.00 | POC, DIS | $60,000.00 | | |
| Fraser Realty Investments, LLC | 77-1079 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $42,033.00 | POC | $57,967.00 | | |
| Girl Cat Capital West LLC, Valentina Salge, President | 77-350 | POC, DIS, POS | Investor-Lender | $25,000.00 | $25,000.00 | $3,666.63 | DIS, LSA | $21,333.37 | | |
| Henry D. Gallucci (Equity Trust Company Custodian FBO Henry D. Gallucci beneficiary of DCD Victoria E. Gallucci IRA 2.67 Undivided interest) | 77-2059 | POC, DIS | Investor-Lender | $60,000.00 | $60,000.00 | $24,000.00 | POC | $36,000.00 | | |
| Hillside Fund, LLC - Janet F. Turco, Owner/ Managing Member | 77-101 | POC | Investor-Lender | $125,000.00 | $125,000.00 | $45,312.50 | LSA | $79,687.50 | | |
| iPlan Group FBO Randall Pong IRA | 77-728 | POC, DIS | Investor-Lender and Equity Investor | $8,632.00 | $8,632.00 | $1,035.81 | POC, DIS | $7,596.19 | | |
| iPlanGroup Agent for Custodian FBO Charles Michael Anglin | 77-331 | POC, DIS, POS | Investor-Lender | $10,633.00 | $10,633.00 | $1,333.00 | POC, LSA | $9,300.00 | | |
| Jason Ragan - TSA | 77-797 | POC, DIS | Equity Investor | $2,022.00 | $2,022.00 | $269.60 | LSA | $1,752.40 | | |
| John E. Wysocki | 77-740 | POC, DIS | Equity Investor | $17,745.00 | $17,745.00 | $7,418.36 | DIS | $10,326.64 | | |
| John Taxeras (Flying Hound Holdings) | 77-994 | POC, DIS | Equity Investor | $21,400.00 | $21,400.00 | $9,197.72 | POC | $12,202.28 | | |
| Kingdom Trust Company, Custodian, FBO Louis Duane Velez SEP IRA acct # 7422686172 | 77-1475 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $43,283.24 | POC, DIS | $56,716.76 | | |
| Maher, Avery (Christopher Maher CESA) | 77-2080 | POC, DIS | Investor-Lender | $11,000.00 | $11,000.00 | $4,400.00 | POC | $6,600.00 | | |
| Maher, Christopher | 77-2036 | POC, DIS | Investor-Lender | $14,000.00 | $14,000.00 | $5,600.00 | POC | $8,400.00 | | |
| Maher, Gavin (Christopher Maher, CESA) | 77-2081 | POC, DIS | Investor-Lender | $15,000.00 | $15,000.00 | $6,000.00 | POC | $9,000.00 | | |
| Maher, Travis (Christopher Maher, CESA) | 77-2082 | POC, DIS | Investor-Lender | $10,000.00 | $10,000.00 | $4,000.00 | POC | $6,000.00 | | |
| Mark P. Mouty | 77-165 | POC, DIS, POS | Investor-Lender | $50,000.00 | $0.00 | $20,500.00 | POC | $0.00 | $29,500.00 | Secured loan rolled to SSDF6 Equity Fund |
| Mark Young | 77-1154 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $33,833.43 | LSA | $66,166.57 | | |
| Matthew Boyd | 77-2060 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $16,916.57 | LSA | $33,083.43 | | |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MavREI, LLC) | 77-1412 | POC, DIS | Investor-Lender | $25,000.00 | $25,000.00 | $3,800.00 | POC | $21,200.00 | | |
| May M. Akamine for Aurora Investments, LLC (assets formerly under MavREI, LLC) | 77-1412 | POC, DIS | Investor-Lender | $2,005.00 | $2,005.00 | $267.30 | DIS | $1,737.70 | | |
| Paul N. Wilmesmeier | 77-300 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $21,808.44 | POC | $28,191.56 | | |
| Paul Scribner | 77-1135 | POC, DIS | Investor-Lender | $6,708.00 | $6,708.00 | $651.61 | POC, DIS, LSA | $6,056.39 | | |

KEY

POC - Proof of Claim

DIS - Claimants' Discovery Response

LSA - EquityBuild Lender Statement of Accounts

POS - Claimant's Position Statement

WF - Wells Fargo Bank Records

SEC v. EquityBuild
Group 1 Investor-Lender Claims
7750-52 S Muskegon Avenue (Property 77)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Quest IRA FBO Francis D Webb 1437711 | 77-218 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $14,500.00 | LSA | $35,500.00 | | |
| Scott E Pammer | 77-827 | POC, DIS | Investor-Lender | $70,000.00 | $70,000.00 | $31,464.52 | POC, DIS | $38,535.48 | | |
| Self Directed IRA Services, Inc., Custodian FBO Ping Liu IRA | 77-544 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $21,641.67 | DIS, POS | $28,358.33 | | |
| Spectra Investments LLC/ Deborah L. Mullica | 77-1220 | POC, DIS, POS | Investor-Lender | $82,255.00 | $82,255.00 | $34,917.37 | POS, DIS | $47,337.63 | | |
| Steven and Linda Lipschultz | 77-1442 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $47,451.50 | POC | $52,548.50 | | |
| Terry L. Merrill, Sheryl R. Merrill | 77-602 | POC, DIS | Investor-Lender | $49,500.00 | $49,500.00 | $14,500.00 | LSA | $35,000.00 | | |
| The Anchor Group LLC - Ronald J. Hansen, Managing Partner (c/o Viola Hansen) | 77-949 | POC | Investor-Lender | $25,000.00 | $25,000.00 | $7,250.00 | LSA | $17,750.00 | | |
| The Edward Falkowitz Living Trust | 77-575 | POC, POS | Investor-Lender | $111,000.00 | $0.00 | $17,297.50 | LSA | $0.00 | $93,702.50 | Secured investment rolled to unsecured promissory note |
| THE INCOME FUND, LLC  Thomas Garlock, Managing Member | 77-1421 | POC, DIS | Investor-Lender | $150,000.00 | $150,000.00 | $73,050.00 | POC | $76,950.00 | | |
| The Mennco Properties, LLC. Solo 401K Plan (by Robert Mennella Managing Partner) | 77-1032 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $20,000.00 | POC, DIS | $30,000.00 | | |
| Thomas F. Gordon | 77-2023 | POC | Equity Investor | $100,000.00 | $100,000.00 | $17,811.16 | LSA | $82,188.84 | | |
| Walter Akita (Walter T. Akita & Margaret M. Akita, JTWROS) | 77-1361 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $21,016.67 | POC, DIS | $28,983.33 | | |
| Total | | | | $2,208,900.00 | $1,873,900.00 | | | $1,150,191.90 | $189,694.17 | |

KEY
POC - Proof of Claim
DIS - Claimants' Discovery Response
LSA - EquityBuild Lender Statement of Accounts
POS - Claimant's Position Statement
WF - Wells Fargo Bank Records

# Exhibit 5

SEC v. EquityBuild
Group 1 Investor-Lender Claims
7201 S Constance Avenue (Property 78)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Aaron Beauclair | 78-408 | POC, DIS | Investor-Lender | $10,000.00 | $10,000.00 | $1,235.85 | DIS, LSA | $8,764.15 | | |
| Arthur and Dinah Bertrand | 78-890 | POC, DIS, POS | Investor-Lender | $100,000.00 | $100,000.00 | $41,389.00 | POC, DIS | $58,611.00 | | |
| Bancroft, Ed (iPlanGroup Agent for Custodian FBO Ed Bancroft Roth) | 78-2008 | POC | Investor-Lender and Equity Investor | $10,000.00 | $10,000.00 | $2,800.00 | LSA | $7,200.00 | | |
| Cecilia Wolff (iPlan Group Agent for Custodian FBO Cecilia Wolff) | 78-1204 | POC, DIS, POS | Investor-Lender | $6,299.00 | $6,299.00 | $1,763.72 | LSA | $4,535.28 | | |
| City of Chicago | 78-693 | POC, DIS, POS | Other | $28,915.96 | $0.00 | $0.00 | N/A | $0.00 | $17,040.00 | Water debt paid at closing |
| CLD Construction, Inc. (Doru Unchias) | 78-1454 | POC | Independent Contractor | $131,000.00 | $0.00 | $0.00 | N/A | $0.00 | $131,000.00 | Unsecured trade creditor |
| Edge Investments, LLC, Janet F. Turco, Owner/Member IRA | 78-180 | POC, DIS | Investor-Lender | $17,374.00 | $17,374.00 | $6,298.24 | LSA | $11,075.76 | | |
| Girl Cat Capital West LLC, Valentina Salge, President | 78-350 | POC, DIS, POS | Investor-Lender | $16,574.00 | $16,574.00 | $2,430.89 | DIS, LSA | $14,143.11 | | |
| Initium LLC/Harry Saint-Preux | 78-968 | POC, DIS, POS | Investor-Lender | $50,000.00 | $0.00 | $15,716.67 | POC | $0.00 | $34,283.33 | Secured investment rolled to unsecured promissory note |
| James Tutsock | 78-2057 | POC, DIS, POS | Investor-Lender | $319,483.00 | $0.00 | $63,902.64 | DIS | $0.00 | $255,580.36 | Secured investment rolled to SSDF1 Equity Fund on or about 6/28/17 |
| Jason Ragan - TSA | 78-797 | POC, DIS, POS | Equity Investor | $4,747.00 | $4,747.00 | $575.94 | LSA | $4,171.06 | | |
| John P. Sullivan | 78-660 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $13,500.00 | POC (interest) and LSA ($500 other) | $36,500.00 | | |
| Kelly E Welton (iPlanGroup Agent for Custodian FBO Kelly Welton, IRA; ) | 78-310 | POC, DIS, POS | Investor-Lender | $31,233.00 | $31,213.00 | $8,281.85 | LSA | $22,931.15 | | |
| Kirk Road Investments, LLC | 78-755 | POC, DIS, POS | Investor-Lender | $63,000.00 | $48,000.00 | $17,670.00 | DIS | $30,330.00 | $15,000.00 | $15,000 of secured loan rolled to the CCF 2 fund on 11/20/17 |
| Lori Moreland (Madison Trust Company Custodian FBO Lori Moreland #M1606124 RothIRA) | 78-805 | POC, DIS, POS | Investor-Lender | $10,074.00 | $10,074.00 | $1,222.31 | POC, LSA | $8,851.69 | | |
| Lori Moreland (Madison Trust Company Custodian FBO LoriMoreland #M1606123 Inherited IRA) | 78-823 | POC, DIS, POS | Investor-Lender | $48,087.00 | $45,333.00 | $5,596.84 | POC, LSA | $39,736.16 | $2,754.00 | Secured interest obtained from partial assignment of mortgage is $45,333; claims $2,754 added to investment in February 2018, which is documented by records, but no support that this amount is secured by this property. |
| Lori Moreland (Madison Trust Company FBO Lori Moreland) | 78-822 | POC, DIS, POS | Investor-Lender | $52,348.00 | $47,348.00 | $5,919.88 | POC, LSA | $41,428.12 | $5,000.00 | Secured interest obtained from partial assignment of mortgage is $47348; claims $5,000 added to investment in February 2018, which is documented by records, but no support that this amount is secured by this property. |
| Michael Borgia | 78-231 | POC, DIS | Investor-Lender | $669,327.00 | $669,327.00 | $234,264.00 | DIS | $435,063.00 | | |
| Michael C. Jacobs | 78-2031 | POC, DIS | Equity Investor | $25,000.00 | $25,000.00 | $2,666.64 | LSA | $22,333.36 | | |
| Pat DeSantis | 78-397 | POC, DIS, POS | Investor-Lender | $171,439.00 | $171,439.00 | $25,144.35 | LSA | $146,294.65 | | |
| PNW Investments, LLC | 78-332 | POC, DIS, POS | Investor-Lender | $50,000.00 | $50,000.00 | $17,433.33 | POC | $32,566.67 | | |
| Property Solutions LLC, Kevin Bybee (managing member) | 78-268 | POC | Investor-Lender | $60,000.00 | $60,000.00 | $20,800.00 | DIS | $39,200.00 | | |
| Provident Trust Group, LLC FBO Stephan Tang | 78-172 | POC, DIS, POS | Investor-Lender | $35,345.00 | $0.00 | $4,429.94 | LSA | $0.00 | $30,915.06 | Secured investment rolled to SSDF6 Equity Fund |
| Rene Hribal | 78-768 | POC, DIS | Investor-Lender | $439,517.00 | $439,517.00 | $153,830.88 | LSA | $285,686.12 | | |
| Reynald Lalonde & Chantal Lemaire | 78-327 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $17,233.33 | DIS | $32,766.67 | | |
| Robert Potter | 78-1389 | POC, DIS | Investor-Lender | $2,796.00 | $2,796.00 | $342.98 | DIS, LSA | $2,453.02 | | |

KEY
POC - Proof of Claim
DIS - Claimants' Discovery Response
LSA - EquityBuild Lender Statement of Accounts
POS - Claimant's Position Statement
WF - Wells Fargo Bank Records

SEC v. EquityBuild
Group 1 Investor-Lender Claims
7201 S Constance Avenue (Property 78)

| Claimant Name | Claim Number | Claimant Submissions | Claim Category as Identified on Claim Form | Amount Claimed to be Invested in Property | Secured Claim Remaining | Distributions Received on Investment | Source | Maximum Potential Distribution from Proceeds of Sale | Maximum Unsecured Claim from this Investment | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Sidney Haggins | 78-1431 | POC, POS | Investor-Lender | $50,000.00 | $50,000.00 | $16,650.00 | POC | $33,350.00 | | |
| Steven J. Talyai | 78-131 | POC, DIS | Investor-Lender | $150,000.00 | $150,000.00 | $48,750.00 | DIS | $101,250.00 | | |
| Steven K. Chennappan IRA # 17293-31 | 78-206 | POC, DIS | Investor-Lender | $10,000.00 | $10,000.00 | $2,800.00 | DIS | $7,200.00 | | |
| Towpath Investments LLC - Robert Kessing (manager) | 78-338 | POC, DIS | Investor-Lender | $50,000.00 | $50,000.00 | $14,500.00 | LSA | $35,500.00 | | |
| US Freedom Investments, LLC (Kevin Scheel) | 78-1234 | POC, DIS, POS | Investor-Lender | $25,000.00 | $0.00 | $5,750.00 | DIS | $0.00 | $19,250.00 | Secured investment rolled to SSDF1 Equity Fund |
| Victor Shaw (Shaw Family Trust) | 78-1040 | POC, DIS, POS | Investor-Lender | $55,000.00 | $55,000.00 | $15,950.00 | LSA | $39,050.00 | | |
| Total | | | | $2,792,558.96 | $2,180,041.00 | | | $1,500,990.97 | $510,822.75 | |

KEY
POC - Proof of Claim
DIS - Claimants' Discovery Response
LSA - EquityBuild Lender Statement of Accounts
POS - Claimant's Position Statement
WF - Wells Fargo Bank Records

# Exhibit 6

**Claimant BC57, LLC**

Claim Number: 557

**Properties in which asserting security interest:**
   74 - 3074 Cheltenham / 7836-38 S South Shore
   75 - 7625-33 S East End
   76 - 7635-43 S East End
   77 - 7750 S Muskegon
   78 - 7201 S Constance

**Claim:**

| | | |
|---|---|---|
| Principal | $ | 5,328,433.43 |
| Contract interest accrued pre-8/18/18 | $ | 27,299.10 |
| Contract Interest Accrued after 8/18/18 | $ | 65,839.00 |
| Default Rate Interest Accrued on or after August 18, 2018 | $ | 768,316.31 |
| Other Amounts Claimed | $ | 249,614.84 |
| **Total** | **$** | **6,439,502.68** |

**Receiver's recommendation:**

| | | |
|---|---|---|
| Principal Balance | $ | 5,328,433.43 |
| Less points deducted from wire sent to close loan (4%) | $ | 213,137.34 |
| Less interest payments received (11/10/17 - 8/13/18) | $ | 494,595.44 |
| Less other amounts paid* | $ | 194,904.34 |
| Less remaining capital expenditure reserve | $ | 18,771.00 |
| Less remaining tax escrow | $ | 61,999.58 |
| Less remaining insurance escrow | $ | 40,000.00 |
| **Maximum amount available for distribution from proceeds of sale**** | **$** | **4,305,025.73** |

*The Receiver believes that some of these amounts may have been tax and insurance escrows paid to third parties and appropriately excluded from this calculation.  But BC57 has not provided  sufficient detail or back-up to enable the Receiver to separate those payments from other payments, such as for late fees, that are appropriately deducted.

**As set forth in its underlying statement, the Receiver's position is that BC57 is in a secondary priority position to the investor lenders' prior-recorded mortgage and/or that BC57 should not be afforded a secured position due to EquityBuild's fraudulent conveyance of the security interests in the Group 1 properties.

# Exhibit 7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 18-cv-5587** |
| ) | |
| **v.** ) | **Hon. John Z. Lee** |
| ) | |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** ) | **Magistrate Judge Young B. Kim** |
| ) | |
| **Defendants.** ) | |

**RECEIVER'S ANSWERS TO BC57 LLC's CONTENTION DISCOVERY**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by the Order of this Court entered on August 17, 2018, provides the following answers to BC57, LLC's Contention Discovery as follows:

**GENERAL OBJECTIONS**

A.     The Receiver objects to the Interrogatories insofar as they purport to improperly expand, alter, or modify the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable rules or orders.

B.     The Receiver objects to the Definitions insofar as they purport to impose obligations that are overbroad, unduly burdensome, and disproportional to any reasonable

benefit, and beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable rules or orders.

C.      The Receiver's answer to any of the Interrogatories is not an admission or acknowledgement that such Interrogatory calls for information that is relevant to the subject matter of this action, and it is without prejudice to Receiver's right to contend in any pleading, proceeding or trial that any responsive document or information produced is inadmissible on relevance, undue prejudice, or other grounds.

D.      The Receiver objects to the Interrogatories insofar as they seek documents and information that are not relevant.

E.      The Receiver objects to each Interrogatory insofar as it seeks information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges or doctrines. The inadvertent disclosure of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial, or is otherwise irrelevant and/or immune from discovery shall not constitute a waiver of any such privilege or of any ground for objection to discovery with respect to such information, the subject matter of the information, or of any the Receiver's rights to object to the use of any such information during any subsequent proceeding in this action or elsewhere.

F.      The Receiver objects to the Interrogatories to the extent that they seek information that is not in the Receiver's possession, custody, or control, that does not exist, or that cannot be found in the course of a reasonable and diligent search.

G.      The Receiver objects to the Interrogatories to the extent that they seek identification and/or production of "all" or "any" information or documents or the like that refer to or relate to a particular subject or in reference to contacts or communications on the grounds

of overbreadth, undue burden, and expense, and insofar as such Interrogatories impose burdens on the Receiver that are disproportionate relative to the anticipated benefits of the receiving the information sought by the Interrogatories, and beyond the requirements of the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable rules or orders.

H.     The Receiver objects to the word "identify" as defined which is overbroad, unduly burdensome, and disproportional to any reasonable benefit, and beyond the requirements of the Federal Rules of Civil Procedure, the Local Rules for the Northern District of Illinois and/or any other applicable rules or orders.

I.     To the best of the Receiver's information and belief, the answers contained herein are true and correct at this particular time, but are subject to correction and modification as new facts may be discovered.  The Receiver's objections as set forth herein are made without prejudice to the right to assert any additional or supplemental objections or reservations should the Receiver discover additional grounds for such objections or reservations, or issues are later raised by BC57, LLC as part of its later submissions which will respond to the Receiver's disclosure.

## ANSWERS TO INTERROGATORIES

**Interrogatory No. 1**. With respect to the Receiver's statement on page 4 of the Receiver's Disclosure that "BC57 was aware of numerous facts that would have lead a reasonable person to inquire further into the validity of the grants and that any such inquiry would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees", please identify all persons with whom the Receiver contends BC [sic] should have inquired.

**ANSWER**: The Receiver objects to the request as vague and ambiguous.  Subject to these and the General Objections, the Receiver states that the information then in the possession of BC57 should have caused it to undertake the following additional inquiries:

(1)     Search PACER (Public Access to Court Electronic Records) for evidence of litigation involving the sponsors of the loan to SSDF5 Portfolio 1 LLC.

(2)     Search the online Cook County Circuit Court docket for litigation in which EquityBuild, Jerome Cohen, or Shaun Cohen, was a party.

(3)     Search the Lexis CourtLink database for evidence of litigation in which EquityBuild, or Jerome or Shaun Cohen, was a party.

(4)     Retain a risk mitigation consultant to conduct a background search on EquityBuild, Jerome Cohen, and Shaun Cohen.

(5)     Search the Cook County Recorder of Deeds website for information pertaining to:

>  (a)     the five properties offered as collateral for the loan being underwritten;
>
>  (b)     the real estate located at <u>4611-17 South Drexel</u> in Chicago, the property that collateralized the $2,776,576.95 acquisition loan that BC57 extended to 4611 S. Drexel LLC (a special purpose entity affiliate of EquityBuild) on December 15, 2016;
>
>  (c)     the properties disclosed to BC57 on the personal financial statement submitted by Jerome Cohen during the loan application process; and
>
>  (d)     any other properties purchased or sold of by EquityBuild.

(6)     Search the Internet for information pertaining to EquityBuild.

(7)     Further follow up to understand the circumstances associated with the disconnect between the recorded mortgages against the properties in Group 1 having identified every single individual mortgagee and the corresponding payoff letters and purported releases not identifying or being executed by or on behalf of such individual mortgagees.

These inquiries did not require discussion with any specific individual, but rather actions by BC57.  To the extent that additional contact with individuals was necessary, however, all such

individuals were known to BC57 at the time the prospective portfolio refinancing was being

discussed, including but not limited to: (i) Tyler DeRoo; (ii) Ioana Salajanu; (iii) Jerome Cohen;

(iv) Jon P. Karp, CPA, Whitley Penn; (v) EquityBuild Finance LLC.

**Interrogatory No. 2**. With respect to the Receiver's statement on page 4 of the Receiver's
Disclosure that "BC57 was aware of numerous facts that would have lead a reasonable person to
inquire further into the validity of the grants and that any such inquiry would have revealed that
EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the
authority of the mortgagees", please state in detail what specifically BC57 was supposed to ask
each person identified in your answer to the preceding interrogatory.

      **ANSWER:**    The Receiver objects to the request as vague and ambiguous.  Subject to

these and the General Objections, many of the activities described above did not necessarily

require speaking with individuals, but taking action that to gather and review additional

information, as described in response to Interrogatory No. 1.  To the extent that further

discussion with individuals may have been helpful, BC57 could have asked Mr. DeRoo and Ms.

Salajanu, who provided the payoff letters and releases to BC57, to inquire why: (1) the loan

payoff amounts were substantially less than the originally stated principal amount of the

mortgages; (2) the address on one of the payoffs was changed from 7625 S East End to 7752 S

Muskegon; (3) two payoff letters reflecting the principal amounts of $1,170,000 (7625 S East

End) and $1,210,000 (7635 S East End) for were combined into a single payoff letter for 7625-

35 S East End with an unpaid principal balance of $1,210,000; (4) Mr. DeRoo said "the optics

aren't good" (see Nielsen Ex. 6); (5) Mr. DeRoo of EquityBuild Inc. (the borrower) was

instructing Elizabeth Kammerer of EquityBuild Finance, LLC (the ostensible loan servicer) as to

the substance of the payoff quotes, including the amounts to be reflected in the payoff letters; (6)

releases were originally prepared for signature by Jerome Cohen on behalf of  the borrower; and

(7) the final releases indicated that EquityBuild Inc. was the party releasing the mortgage.  BC57

could have also asked these two individuals for evidence that the lenders listed on the mortgage

documents had authorized the release of their mortgages and/or regarding the scope and basis of any authority granted to EquityBuild Finance, LLC or the Hard Money Company LLC to release the liens on the lenders' behalf.

BC57 could have asked EquityBuild Finance LLC about irregularities in the Payoffs and Releases instead of communicating solely with the Borrower and the Borrower's counsel.

In addition, BC57 could have asked Jerome Cohen for additional information regarding: (1) his personal financial statement and his schedule of Real Estate Owned (REO) (Turzewski Ex. 8) and specifically regarding the discrepancies between the debt stated as of August 3, 2017 and the payoff letters sent one month later; (2) the source of the purported $6.5 million of "sponsor equity" in the collateral; and (3) the basis for his representation that EquityBuild had "the right to remove" the "investors [that ] actually came in as private lenders" (Turzewski Ex. 19).

Finally, BC57 could have asked Mr. Karp, who submitted a letter of explanation during the loan underwriting process, why EquityBuild's accounting records "required intensive rebuilding."

_See also_ Answer to Interrogatory No. 1, above and Interrogatory No. 3 below.

**Interrogatory No. 3**. With respect to the Receiver's statement on page 4 of the Receiver's Disclosure that "BC57 was aware of numerous facts that would have lead a reasonable person to inquire further into the validity of the grants and that any such inquiry would have revealed that EquityBuild was engaged in fraud, including by fraudulently releasing mortgages without the authority of the mortgagees", please state in detail what specifically the Receiver contends that BC57 would have learned from each person identified in the answer to Interrogatory No 1 above.

**ANSWER:** The Receiver objects to the request as vague and ambiguous. Subject to these and the General Objections, the Receiver states that if BC57 had conducted the inquiries

6

described in the Answer to Interrogatory No. 1, above, it would have discovered, among other things, the following facts which would have revealed that EquityBuild was engaged in fraud:

(1)    Jerome Cohen was a fugitive from justice in Pennsylvania in November 1993.

(2)    American Home Rentals, a company operated by Jerome Cohen and Steve Cohen, was sued by the Preate's Bureau of Consumer Protection in February 1993 for defrauding customers of about $350,000 over a period of two years.

(3)    In June 1993, the Deputy Attorney General of Pennsylvania sued American Home Rentals for violating an injunction by operating under a different name.

(4)    In September 1994, American Home Rentals was sued by the Commonwealth of Pennsylvania for systematically violating the state Unfair Trade Practice and Consumer Protection Law.

(5)    More than 100 real estate tax lien petitions were filed against Jerome Cohen by the City of Philadelphia.

(6)    Jerome Cohen filed a personal bankruptcy petition in the United States District Court for the Middle District of Florida in September 1994 and that case was transferred to the Eastern District of Pennsylvania in January 1995.

(7)    Jerome Cohen was the subject of an unsatisfied judgment in the amount of $66,991.

(8)    An Internet discussion forum hosted by Bigger Pockets at *https://www.biggerpockets.com/forums/311/topics/300843-has-anyone*-invested-*in-any-of-the-equitybuild-properties* contained a series of comments posted by Lindsay Hirsch, who stated that her father, Gordon Hirsch, an attorney who committed suicide shortly after he withdrew from his representation of

7

EquityBuild, left a note stating that that the company was running a Ponzi scheme and stating that: "Shaun [Cohen] is using investor money to buy and rehab properties owned by his father Jerry. Crazy mortgages are put on the property and EquityBuild abandons them."

(9)     The Cook County Recorder of Deeds website identifies EquityBuild as a grantor of 190 properties and a grantee of 160 properties.

(10)    The following lawsuits, which individually and collectively disclose material information regarding the business practices of BC57's prospective borrower, were filed by or against EquityBuild in the Circuit Court of Cook County, Illinois:

   (a)     *EquityBuild, Inc. v. Lams Investment Group, LLC,* Case No. 11-L-3113.

   (b)     *James B. Fannin, et al. v. EquityBuild, Inc.,* Case No. 15-L-3211.

   (c)     *EquityBuild, Inc. v. G-Slow Construction Services, LLC,* Case No. 15-L-3458.

   (d)     *Taty Construction, Inc. v. EquityBuild, Inc., et al.,* Case No. 16-CH-3189.

   (e)     *Brooke Lee v. EquityBuild, Inc.,* Case No. 17-L-6742.

(11)    EquityBuild held title to at least 21 properties in Cook County, Illinois, that were omitted from the personal financial statement provided to BC57 on September 13, 2017. (Turzewski Ex. 8) These properties were collectively acquired for $18,305,500 but were encumbered by mortgages ("EBF mortgages") collectively totaling $36,251,580, and the publicly-disclosed mortgagees consisted of groups of individual lenders who owned participating interests in promissory notes.

(12)    The "total debt" disclosed in connection with the following properties identified on the personal financial statement provided to BC57 on September 13, 2017 was contradicted by the corresponding publicly-recorded EBF mortgages, specifically:

8

(a)     The EBF mortgage recorded against 3074 Cheltenham was $2,200,000, but the personal financial statement disclosed total debt of $1,115,561.

(b)     The EBF mortgage recorded against 7625 S East End was $1,605,749 and the EBF mortgage recorded against 7635 S East End was $1,703,649, but the personal financial statement disclosed total debt for both properties of $1,608,151.

(c)     The EBF mortgage recorded against 7750-58 S Muskegon was $2,250,000, but the personal financial statement disclosed total debt of $1,482,022.

(d)     The EBF mortgage recorded against 7201 S Constance was $2,250,000, but the personal financial statement disclosed total debt of $1,229,763.

(e)     The EBF mortgage recorded against 7600 S Kingston was $2,850,000, but the personal financial statement disclosed total debt of $2,000,000.

(f)     The EBF mortgage recorded against 7748 S Essex was $2,750,000, but the personal financial statement disclosed total debt of $1,900,000.

(g)     The EBF mortgage recorded against 7255 S Euclid was $1,250,000, but the personal financial statement disclosed total debt of $650,000.

(h)     The EBF mortgage recorded against 8100 S Essex was $3,300,000, but the personal financial statement disclosed total debt of $440,000.

(i)     The EBF mortgage recorded against 2736 W 64th was $740,000, but the personal financial statement disclosed total debt of $440,000.

(j)     The EBF mortgage recorded against 6250 S Mozart was $1,825,000, but the personal financial statement disclosed total debt of $1,000,000.

(k)     (Two separate mortgages were recorded against 1700 W Juneway (a $2,175,000 mortgage recorded in favor of Thorofare Asset Based Lending REIT Fund IV, LLC on April 6, 2017, and a $4,120,000 EBF mortgage recorded on June 23, 2017), but the personal financial statement failed to disclose the EBF mortgage.

(l)     The EBF mortgage recorded against 4533 S Calumet was $2,900,000, but the personal financial statement disclosed total debt of $1,000,000.

(m)     Two separate mortgages were recorded against 5450 S Indiana (a $3,600,000 mortgage recorded in favor of various lenders c/o Shatar Capital Partners on April 4, 2017, and a $3,050,000 EBF mortgage recorded on June 23, 2017), but the personal financial statement disclosed total debt of $2,800,000.

(n) Two separate mortgages were recorded against 7749 S Yates (a $3,600,000 mortgage recorded in favor of various lenders c/o Shatar Capital Partners on April 4, 2017, and a $2,860,000 EBF mortgage recorded on June 23, 2017), but the personal financial statement disclosed total debt of $0.

(o) A mortgage in the amount of $1,000,000 was recorded against 7024 S Paxton by Master's Holdings, LLC on January 3, 2017, but the personal financial statement disclosed total debt of $0. In addition, an EBF mortgage was recorded against 7024 S Paxton on April 10, 2017, but released on June 19, 2017.

(13) On June 19, 2017, an EBF mortgage in the amount of $5,250,000 was recorded against 4611 S Drexel, and on July 10, 2017, that EBF mortgage was released.

**Interrogatory No. 4**. Identify the names of all persons who have personal knowledge of any facts the Receiver intends to use to support the Fraudulent Transfer Claim identified in the Receiver's Disclosure, what facts they have personal knowledge of, who the Receiver will call as witnesses to support the Fraudulent Transfer Claim and identify all documents the Receiver intends to use to support the Fraudulent Transfer claim.

 **ANSWER:** Subject to the General Objections, the Receiver states that witnesses with personal knowledge of facts that the Receiver may call to support his claim have already been deposed, and their testimony has been cited both in the original disclosure and in position statements submitted by various claimants or has been identified in documents that were referenced therein or attached hereto. The documents that the Receiver intends to use were either identified in the previously provided disclosure (including deposition transcripts) and/or attached hereto as Tab A. (*See* Dkt. No. 1118) The Receiver believes that, consistent with the Court's establishment of summary proceedings associated with the resolution of claims, it does not anticipate the need to call witnesses because the Court can address the issues based on the admissions from the depositions and the documentary evidence. If the Court believes an evidentiary hearing is necessary, however, the Receiver may call witnesses who have been deposed as part of the Group 1 claim process and reserves the right to call witnesses identified in documents that have been either identified in the disclosure or in these interrogatories (and/or

attached hereto), or which is identified by Group 1 claimants in their position statements in regards to this issue.

**Interrogatory No. 5**. Please identify and produce all the documents the Receiver relied on to answer the above interrogatories and otherwise intends to use to support the Fraudulent Transfer Claim.

   **ANSWER:** The Receiver objects to the request as vague and ambiguous.  Subject to these and the General Objections, the Receiver states that documents responsive to this interrogatory are cited in the Receiver's disclosure (Dkt. No. 1118) and in these answers to interrogatories by identifying deposition or Bates number and/or produced herewith.  The Receiver reserves the right to use any other documents produced and/or identified as part of the discovery taken during the Group 1 phase of this proceeding and/or attached or referenced by claimants in their position statements including but not limited to in rebuttal to any argument or position taken by BC57 in its later submissions in response to the Receiver's disclosure.

Dated:  February 11, 2022     Kevin B. Duff, Receiver

          By:  /s/ Michael Rachlis
              Michael Rachlis (mrachlis@rdaplaw.net)
              Jodi Rosen Wine (jwine@rdaplaw.net)
              Rachlis Duff & Peel, LLC
              542 South Dearborn Street, Suite 900
              Chicago, IL 60605
              Phone (312) 733-3950

### CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, I served the **Receiver's Answers to BC57**

**LLC's Contention Discovery** and documents Bates labeled **R1-000001 – R1-000639** upon the

following counsel, with a copy to the Group 1 service distribution list

EBGroup1service@rdaplaw.net:

Robert M. Horwitz
(rhorwitz@maddinhauser.com)
David E. Hart
(dhart@maddinhauser.com)
Maddin, Hauser, Roth & Heller, P.C.
28400 Northwestern Drive, 2nd Floor
Southfield, MI 48034
(248) 354-4030

Edward S. Weil
(eweil@dykema.com)
Michael A. Gilman
(mgilman@dykema.com)
Todd Gale
(tgale@dykema.com)
Benjamin W. Chertok
(bchertok@dykema.com)
Kevin Connor
(kconnor@dykema.com)
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700

/s/ Jodi Rosen Wine

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
mrachlis@rdaplaw.net

12

# Exhibit 8

| Property | 74 | 75 | 76 | 77 | 78 |
|---|---|---|---|---|---|
| Address | 3074 E Cheltenham Place | 7625-33 S East End Avenue | 7635-43 S East End Avenue | 7750-58 S Muskegon Avenue | 7201 S Constance Avenue |
| Sale Price | $ 1,060,000.00 | $ 1,250,000.00 | $ 1,170,000.00 | $ 700,000.00 | $ 1,100,000.00 |
| Net proceeds | $ 960,348.38 | $ 1,156,782.51 | $ 1,084,045.74 | $ 582,979.54 | $ 951,411.73 |
| Account balance as of 12/31/21 | $ 1,015,366.50 | $ 1,241,762.87 | $ 1,048,889.32 | $ 409,561.14 | $ 963,108.64 |
| Investor claims | $ 2,299,271.27 | $ 1,719,611.90 | $ 1,695,895.08 | $ 2,208,900.00 | $ 2,771,767.80 |
| Difference Between Investor Principal and Secured Assets | $ (1,283,904.77) | $ (477,849.03) | $ (647,005.76) | $ (1,799,338.86) | $ (1,808,659.16) |

| | | |
|---|---|---|
| Account Balances as of 12/31/21- Combined | $ 4,678,688.47 | |
| BC57 principal balance | $ 5,355,732.43 | Only have combined amount for all 5 properties |
| Difference Between BC57 Principal and Secured Assets | $ (677,043.96) | Based on combination of all 5 properties |