**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) ) ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 18-cv-5587** |
| ) | |
| **v.** ) | **Hon. John Z. Lee** |
| ) | |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** ) ) ) ) | **Magistrate Judge Young B. Kim** |
| ) | |
| **Defendants.** ) ) | |

**RECEIVER'S REPLY IN SUPPORT OF HIS TWELFTH (12TH) INTERIM**
**APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES**
**AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Certain institutional lenders have objected (Dkt. 1039) to the Receiver's 12th Fee
Application (Dkt. 1026), for services between April 1, 2021 and June 30, 2021. These are the only
objections made among the more than 900 claimants who are part of the Receivership estate. And,
notably, the SEC communicated with the Receiver that it has no objection to the fees set forth in
the Receiver's 12th Fee Application and confirmed that such fees comply with the SEC guidelines.

The latest objections reference prior objections to the Receiver's pending fee applications
(*see* list, Dkt. 1039, at 1), and raise a limited number of unfounded new objections. Like the
objectors, the Receiver incorporates by reference herein the responses, explanations, and
arguments set forth in his replies to the objectors' prior objections (Dkt. 527, 607, 703, 800, 923,
971, and 1003), as well as the underlying fee applications (Dkt. 411, 487, 569, 576, 608, 626, 755,
778, 885, 945, and 993), and also refers the Court to the SEC's reply in support of the Receiver's
prior fee applications (Dkt. 526, 606, 622, 705, 797, 803, 922, and 970). The Receiver endeavors

below to only address matters that require updated information or raise new points that have not been previously addressed in other filings.

1. **The Objectors Ignore the Billing Categories that Are the Subject of the Receiver's Lien in Errantly Asserting that the Fees and Expenses of the 12thFee Application Are Not within the Categories Approved by the Court.**

The objectors wrongly assert that the Receiver has not shown that the fees and expenses in the 12th Fee Application are within the categories of tasks that the Court has approved for application of the receiver's lien. (*See* Dkt. 1039, Section 1)  The objectors opaquely reference a few headings in the fee application (Dkt. 1039, at 7 ("For example, the Receiver describes some of his activities as….")) to suggest that work falling within those areas is not within the categories approved by the Court for application of the receiver's lien.  That argument makes no effort to compare the work actually performed that is generally described within those headings with the billing categories that are the subject of the receiver's lien, let alone to set forth any specific objection with respect to any such time entries.  The objectors only assert, in sweeping fashion, that "[n]one of these efforts, on their face, were incurred in connection with the two categories of expenses covered by the August 17 Order."  (Dkt. 1039, at 2)

The objectors' argument ignores that the Receiver has identified tasks under numerous different billing categories in accordance with SEC billing guidelines, including in particular within three billing categories – "Asset Disposition," "Business Operations," and "Claims" – for application of the receiver's lien. (*See, e.g.,* Dkt. 947, at 2-4)  The limitation to these three billing categories (for allocation of tasks subject to the receiver's lien) is clearly reflected in the allocation spreadsheets that the Receiver has both submitted to the Court for approval (*e.g.,* Dkt. 981 &

2

Exhibits) and provided to the objectors for their review.[1]  And these are the three billing categories that consistently contain the time entries that fall within the activities approved by the Court for application of the receiver's lien.  (Dkt. 1030, at 11-14)  Thus, the objectors' focus on headings and examples outside of these billing categories is a strawman.

All but one of the objectors' examples are *not* in the Asset Disposition, Business Operations, or Claims billing categories.[2]  (Dkt. 1039, at 3 (citing examples in "Accounting/ Auditing," "Asset Analysis & Recovery," "Case Administration," "Status Reports," and "Taxes")) The exception is "6/30/21 for Asset Disposition," but they do not explain what this example shows, why they cite it, or why any particular task does not fall with the categories approved by the Court for application of the receiver's lien.  Indeed, the time entries and task descriptions on that date in the asset disposition category each relate to preservation, management, and liquidation of real estate and each includes specific property allocations.  (*See* Dkt. 1026, at 67, 169)

The objectors also wrongly assert that "some of the entries" constitute "block billing." They only vaguely reference an entry relating to "1102 Bingham, Houston, p. 111."  But the timekeeper's entry that they appear to be referencing is not an example of block billing.  To the contrary, the entry is in the Claims billing category and divides 1.1 hours of work into four separate tasks, each with its own description and separate incremental time amount.  In fact, this entry is an example of what block billing is *not*.  (Dkt. 1026, at 111)

The objectors further wrongly suggest, with no basis, that 1102 Bingham is not part of the claims resolution process – but that property *is* a part of the disputed claims resolution process as

---

[1] Prior to the filing of their objections, the Receiver provided allocation spreadsheets to the objectors for their review of all fees of the Receiver and his firm from the inception of the Receivership through June 30, 2021 (*i.e.,* through the 12th Fee Application).

[2] Notably, in the allocation spreadsheets, the Receiver excluded certain tasks from the Asset Disposition, Business Operations, and Claims billing categories that are not beneficial to the properties or the claimants.

fifteen of the claims submitted to the Receiver claim a secured interest in that property. (*See, e.g.,* Dkt. 1164-1, at 51) It also is worth noting that the objectors are apparently voicing an objection with respect to a property (*i.e.,* 1102 Bingham) against which *none of them* has asserted a claim. *Id.* The task description itself, as well as the allocation spreadsheets provided by the Receiver, show that this particular entry is not allocated to any property in which any of the objectors claims an interest. (Dkt. 1026, at 111)

The objectors also note that "some entries do not provide sufficient information to determine if they meet the criteria" for application of the receiver's lien approved by the Court. (Dkt. 1039, at 3) But they fail to identify any such entry.

### 2. The Receiver Has Properly Allocated the Fees and Expenses in Accordance with the Allocation Methodology Approved by the Court.

Next, the objectors imply the Court has not previously approved the methodology by which the Receiver has allocated time entries that apply to all properties. This ignores the Court's specific findings on this precise issue. (*See, e.g.,* Dkt. 824, at 5 ("the Receiver's proposed methodology to allocate fees and expenses to individual properties is reasonable")) Their assertion that "the Receiver proposes to allocate non-property specific fees across the board, without any accounting of the benefit received by each property" is wrong and belied by the Court's rulings that time entries falling within certain categories have benefited the properties and the claimants (*see, e.g.,* Dkt. 1030, at 9-14), and the extensive record presented by the Receiver and the way in which the Receiver complied with the Court's approved allocated methodology. (*See, e.g.,* Dkt. 1026, 1107)

### 3. The Receiver Recommends against Any Holdback.

The Court has previously found that the Receiver's Ninth, Tenth, and Eleventh Fee Applications are subject to a 20% holdback, and further indicated that "if the Receiver seeks to pay fees approved by this order from the sales proceeds of *encumbered* real estate, then the amount

the Receiver is entitled to draw is subject to an additional 20% holdback." (Dkt. 1031, at 14) The objectors have requested that the fees requested in the 12th Fee Application be subject to a 20% holdback, and that any fees the Receiver seeks to pay from the proceeds of sale be subject to an additional 20% holdback. (Dkt. 1039, at 4) The Receiver requests that the Court not apply any holdback relative to this fee application; but, if the Court deems it appropriate, that any cumulative holdback not exceed 20%. The Receiver offers the following points for the Court's consideration.

The Receiver has substantially discounted fees and the billing rates are unchanged since 2018. The billing rate discount has significantly increased over time in relation to the standard billing rates of the Receiver and his firm. The following table shows the substantial billing rates discount provided for timekeepers who are currently working on this matter:[3]

|  | Standard Hourly Rate | Discounted Hourly Rate | Difference Per Hour | % Discount |
|---|---|---|---|---|
| K. Duff | 625 | 390 | 235 | 38% |
| M. Rachlis | 625 | 390 | 235 | 38% |
| E. Duff | 585 | 390 | 195 | 33% |
| A. Porter | 585 | 390 | 195 | 33% |
| J. Wine | 585 | 260 | 325 | 56% |
| K. Pritchard | 205 | 140 | 65 | 32% |
| A. Watychowicz | 205 | 140 | 65 | 32% |
| J. Rak | 205 | 140 | 65 | 32% |
| S. Zjalic | 170 | 110 | 60 | 35% |
| N. Gastevich | 170 | 95 | 75 | 44% |

These rate discounts equate to a substantial savings on the invoices submitted in connection with the 12th Fee Application. The following Table reflects the extent of this discount:

---

[3] The Standard Rates in this Table are for 2021, as the 12th Fee Application is based on time in 2Q 2021. The size of the rate discount would increase if compared to Standard Rates for 2022.

| Time Keeper | Value of Total Hours at Standard Rate | Value of Total Hours at Discount Rate | Value of Difference |
|---|---|---|---|
| K. Duff | 83,562.50 | 52,143.00 | 31,419.50 |
| M. Rachlis | 13,937.50 | 8,697.00 | 5,240.50 |
| E. Duff | 9,184.50 | 6,123.00 | 3,061.50 |
| A. Porter | 115,537.50 | 77,025.00 | 38,512.50 |
| J. Wine | 113,490.00 | 50,440.00 | 63,050.00 |
| K. Pritchard | 10,803.50 | 7,378.00 | 3,425.50 |
| A. Watychowicz | 15,600.50 | 10,654.00 | 4,946.50 |
| J. Rak | 54,427.50 | 37,170.00 | 17,257.50 |
| S. Zjalic | 5,627.00 | 3,641.00 | 1,986.00 |
| N. Gastevich | 136.00 | 76.00 | 60.00 |
| TOTALS | $ 422,306.50 | $ 253,347.00 | $ 168,959.50 |

Prior to submitting the invoices that are the subject of the 12th Fee Application, the Receiver provided a further discount by writing-off 53.8 hours of recorded time, amounting to a $8,192 reduction at the discounted rates. In addition, the Receiver and his firm (RDP) devoted 336 hours to billing efforts in 2Q2021 (valued at $92,187, at the discounted rates), none of which is included in the submitted invoices and is not within the write-off amounts referenced above.[4]

As the Court is aware, timekeeping, the allocation of fees across more than 100 separate properties and numerous billing categories, and preparation of the invoices in this action has been uniquely complex and time-consuming. In addition, the preparation of fee applications and allocation of fees among the properties has resulted in substantial additional out of pocket expenses for RDP. For example, RDP paid a third-party consultant $10,000 in April 2021 to facilitate preparation of the extensive fee allocation spreadsheets for each property. Additional amounts have been incurred since that time.

---

[4] The Receiver has not requested such compensation, but this Court has indicated fees in this regard may be appropriate. *See, e.g., F.T.C. v. A1 Janitorial Supply Corp.*, No. 17-cv-7790, 2020 WL 887386, *6 (N.D. Ill. Feb. 24, 2020) (approving 3% of the total fee application for preparation of straightforward applications in an action involving simple legal issues, and noting that some courts have approved up to 5%).

Finally, as the record shows, the Receiver has delayed paying most of the professional fees for nearly three years, which has effectively been a 100% holdback of fees during that period. And, notably, given ongoing motion practice before Magistrate Judge Kim, *none* of the fees that the Court has approved to be paid pursuant to a Receiver's lien against the encumbered properties in the Estate has been paid to date. Thus, if the amounts sought by the invoices in the 12th Fee Application are considered in the context of the discounts and unbilled time that is required by this receivership, the inequity of what would be an additional 40% holdback is laid bare.

The following Table summarizes the primary discounts and unbilled time discussed above:

| Rate Discount | Write-Offs | Billing Hours | Total Discount & Unbilled Time | Total Fees in 12th Fee Application | % Reduction Already Applied |
|---|---|---|---|---|---|
| $168,959.50 | $8,192.00 | $92,187.00 | $269,338.50 | $253,347.00 | 51.5% |

As this chart evidences, any additional holdback only magnifies the financial impact. It also shows that there is no windfall nor any appearance of a windfall. To add yet an additional 20-40% holdback, as the objectors have requested, would be even more onerous and inequitable under the circumstances described above.

For all of these reasons, the Receiver respectfully recommends and requests that the Court not apply any holdback, but if so, that such holdback not be greater than 20% in total for fees paid from property accounts.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in the Receiver's prior fee applications, the supporting briefs filed by the SEC and the Receiver, and in the Receiver's motion for approval to pay certain previously approved fees and costs, the Receiver respectfully requests that the Court exercise its discretion to:

(i) find that the Receiver has preserved, enhanced, or otherwise benefited the properties and the claimants in connection with the work performed and expenses incurred as reflected in the 12th Fee Application;

(ii) approve the Receiver's 12th Fee Application and payment of all fees and expenses described therein out of the funds in the Receiver's account, including as to any such future funds that come into the Receiver's account;

(iii) impose a first priority receiver's lien on the properties and proceeds of sale to satisfy the receivership expenses; and

(iv) grant such other relief as the Court deems equitable and just.

Dated:  March 4, 2022                                       Respectfully submitted,

                                                           Kevin B. Duff, Receiver

                                          By:    /s/ Michael Rachlis
                                                 Michael Rachlis (mrachlis@rdaplaw.net)
                                                 Jodi Rosen Wine (jwine@rdaplaw.net)
                                                 Rachlis Duff & Peel, LLC
                                                 542 South Dearborn Street, Suite 900
                                                 Chicago, IL 60605
                                                 Phone (312) 733-3950

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, I electronically filed the foregoing **Receiver's Reply in Support of His Twelfth (12th) Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net