**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| United States Securities and Exchange Commission, <br><br> Plaintiff, <br><br> v. <br><br> EquityBuild, Inc., EquityBuild Finance, LLC, Jerome H. Cohen, and Shaun D. Cohen, <br><br> Defendants. | No.: 18-cv-5587 <br> Honorable John Z. Lee <br> Magistrate Judge Young B. Kim |

**FEDERAL HOUSING FINANCE AGENCY'S OBJECTION
TO RECEIVER'S MOTION FOR APPROVAL OF ALLOCATIONS
OF FEES TO PROPERTIES FOR PAYMENT PURSUANT TO RECEIVER'S LIEN**

**INTRODUCTION**

The Federal Housing Finance Agency ("FHFA" or "Conservator"), in its capacity as Conservator for the Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, "the Enterprises" or "GSEs"), respectfully objects to the Receiver's motion as it relates to properties at 1131-41 East 79th Place and at 7024-32 South Paxton Avenue (together, the "GSE Properties").

Per Orders entered before FHFA became aware of and involved in this action, the Receiver sold the GSE Properties, with each Enterprise left with a lien against the corresponding proceeds. Under the Orders, sale proceeds were effectively substituted for the GSE Properties as the collateral securing each Enterprise's loan. Allocating any costs or fees to the GSE Properties will necessarily dissipate that collateral, thereby reducing the amount the Conservator and the Enterprises are due and will receive in exchange for the forced sales of the GSE properties that secured their outstanding loans.

This would violate federal law. In FHFA's organic statute, Congress granted FHFA as Conservator the exclusive power to "preserve and conserve" the Enterprises' assets—including their lien interests—and to "collect all obligations and money due" each Enterprise. 12 U.S.C. § 4617(b)(2)(B)(ii), (iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator[.]" 12 U.S.C. § 4617(f). The jurisdictional limitation Congress enacted in Section 4617(f) precludes the Court and the Receiver from dissipating the Enterprises' collateral, because that would restrain and affect the Conservator's statutory powers to preserve and conserve Enterprise assets, and to collect on obligations due the Enterprises.

Congress also provided that conservatorship property is not "subject to levy, attachment, garnishment, foreclosure, or sale without [FHFA's] consent." 12 U.S.C. § 4617(f). The Enterprises' liens are conservatorship property, and the cost allocation the Receiver seeks would, by dissipating the present collateral, effectively subject them to a levy, attachment, foreclosure, or sale. Section 4617(j)(3) therefore bars it.[1]

The Court lacks jurisdiction to allocate any costs or fees to the GSE Properties, and regardless, any such allocation is substantively barred.[2] Accordingly, the Court must deny the Receiver's motion insofar as it requests such relief.

---

[1] This opposition is directed to the Receiver's present motion for allocation of costs. The Conservator does not waive any rights, titles, powers or privileges it has regarding the GSE Properties at issue or any of its other interests, or those of its conservatees.

[2] FHFA's grounds for this objection apply equally to fees, costs, and other expenses. For simplicity, the objection often refers only to costs or to a cost allocation. No exclusion of fees or other expenses is implied.

## BACKGROUND

**I.     Fannie Mae and Freddie Mac Under FHFA's Conservatorship**

Congress chartered Fannie Mae and Freddie Mac as government sponsored enterprises ("GSEs") to facilitate the nationwide secondary mortgage market to enhance the equitable distribution of mortgage credit. *See* 12 U.S.C. §§ 1716 (Fannie Mae); 1451 note (Freddie Mac); *City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014). In July 2008, Congress enacted the Housing and Economic Recovery Act of 2008 ("HERA") Pub. L. No. 110-289, 122 Stat. 2654 (2008), 12 U.S.C. § 4501 *et. seq*. HERA established FHFA as the primary regulator of Fannie Mae and Freddie Mac. In September 2008, FHFA's Director placed each Enterprise into conservatorship, where they remain today. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to "all [of the Enterprises'] rights, titles, powers, and privileges" regarding their property, 12 U.S.C. § 4617(b)(2)(A)(i), and has statutory authority to "preserve and conserve the assets and property of [the Enterprises]," *id.* § 4617(b)(2)(B)(iv), and to "collect all obligations and money due" the Enterprises, *id.* § 4617(b)(2)(B)(ii). HERA also mandates that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator[.]" 12 U.S.C. § 4617(f).

**II.     Relevant Procedural History**

   **A.     The GSE Properties**

On January 24, 2020, the Receiver moved for approval of a process for the public sale of certain real estate. *See* Receiver's Consolidated Sixth Mot. (Dkt. 618). As relevant here, the Receiver sought to sell property at 1131-41 East 79th Place in Chicago (the "79th Street Property") and 7024-32 South Paxton Avenue in Chicago (the "Paxton Property"). *Id.* at 40-43. The 79th Street Property was encumbered by a $1.3 million mortgage owned by Fannie Mae. *Id.* at 40. The

Paxton Property was encumbered by a $1.54 million mortgage owned by Freddie Mac. *Id.* at 42-43. On April 1, 2020, the Court authorized the Receiver to sell the GSE Properties. Order Granting Receiver's Sixth Mot. (Dkt. 681).

The Receiver sought and received Orders (over objections) that each property be sold "free and clear of the mortgages, liens, claims, and encumbrances identified herein," including each Enterprise's mortgage; the Orders also required that the proceeds from each sale be held in a separate subaccount "with all mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the properties being sold." Receiver's Ninth Mot. to Confirm the Sale of Certain Real Estate at 15-16, 20 (Dkt. 749) (79th Street Property); Order at 4-6 (Dkt. 825) (same); Receiver's Tenth Mot. to Confirm the Sale of Certain Real Estate at 12-16, 31 (Dkt. 809) (Paxton Property); Order at 7-9 (Dkt. 966) (same).

In February 2021, the Receiver filed a motion seeking approval for payment under a Receiver's lien of fees and expenses out of the proceeds of the sales of the properties in the Estate, which included the proceeds of the sales of both the 79th Street Property and the Paxton Property. (Dkt. 947). On August 17, 2021, the Court granted the Receiver's motion and authorized the Receiver to make interim payments pursuant to the Receiver's lien. (Dkt. 1030). The Court referred the case to the magistrate judge "to resolve issues relating to the Receiver's proposed allocation of fees among the liquidated properties' proceeds," *id.* at 2, and ordered that the Receiver provide a proposed "line-by-line and property-by-property fee allocation," *id.* at 18. On December 22, 2021, the Receiver filed a motion for Approval of Allocations of Fees to Properties for Payment Pursuant to Receiver's Lien. (Dkt. 1107). In the motion, the Receiver requests an interim payment of fees from the individual property accounts. Of particular relevance here, the Receiver seeks to

allocate $93,564.69 to the 79th Street Property and $54,966.96 to the Paxton Property. *See* Ex. 1 at 243, 1233. In addition, the Receiver seeks certain additional allocations going forward.[3] *Id.*

## ARGUMENT

I. **The Court Cannot Allocate Any Costs or Fees to the GSE Properties**

    A. **Section 4617(f) Bars the Requested Allocation of Costs**

The Receiver's request to allocate costs to the GSE Properties would necessarily dissipate the collateral securing the Enterprises' loans, thereby restraining and affecting FHFA's statutory powers to (i) collect obligations due the Enterprises and (ii) preserve and conserve their assets. Congress expressly disallowed such relief, and this Court therefore cannot award it.

    1. **The Requested Cost Allocation Would Restrain and Affect the Conservator's Statutory Powers**

HERA provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or receiver." 12 U.S.C. § 4617(f). "Section 4617(f) bars 'any' judicial interference with the 'exercise of *powers or functions* of [FHFA] *as a conservator or a receiver*." *Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 400 (7th Cir. 2018) (quoting 12 U.S.C. § 4617(f)) (emphasis in original). "This shelter [from judicial interference] is sweeping … ." *Id.* "The plain statutory text [of Section 4617(f)] draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator or receiver." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 606 (D.C. Cir. 2017); *see Robinson v. Fed. Hous. Fin. Agency*, 876 F.3d 220, 228 (6th Cir. 2017). Thus, "[a]t the same time [that] HERA broadly

---

[3] The Receiver has since filed another motion seeking to allocate more fees and expenses to the GSE Properties. *See* Receiver's Fourteenth Mot. for Court Approval of Payment of Fees and Expenses (Dkt. 1181).

empowers [FHFA], it disempowers courts." *Roberts*, 889 F.3d at 400. Section 4617(f) applies unconditionally, but in any event the statute and the conservatorships to which it now applies are matters of public record as to which all parties are on actual and constructive notice.

Here, permitting the Receiver to allocate fees to the proceeds from the sale of the GSE Properties would "restrain or affect the exercise of the powers or functions of [FHFA] as a conservator." 12 U.S.C. § 4617(f). Simply put, allocating costs to the proceeds from the sales of the GSE Properties—and allowing those costs to be disbursed to the Receiver (or anyone else other than the Conservator and the Enterprises)—would reduce the amount the Conservator can collect on these loans. Such allocation of costs to the GSE Properties would thus restrain and affect the Conservator's statutory power to "collect all obligations and money due" the Enterprises, and to "preserve and conserve [their] assets and property." *See* 12 U.S.C. § 4617(b)(2)(B).

As one court applying the substantively identical provision applicable to FDIC receivers explained, because a court "do[es] not have the power to … interfere with the proper disposition of [receivership or conservatorship] assets," it may not "cordon off a pool of assets" from a receiver or conservator to benefit a plaintiff. *Bender v. Centrust Mortg. Corp.*, 833 F. Supp. 1540, 1543 (S.D. Fl. 1992) (applying 12 U.S.C. § 1821(j)); *see also Hanson v. FDIC*, 113 F.3d 866, 871-72 (8th Cir. 1997) (holding that imposing a constructive trust on the FDIC's assets would make plaintiff "the beneficial owner of that property" and was, thus, barred by Section 1821(j)); *Federated Bank v. FDIC*, 2013 WL 12170297, at *5 (N.D. Ga. Sept. 10, 2013) (finding that Section 1821(j) barred a "declaration subordinating the FDIC-R[eceiver]'s interest in … settlement proceeds" because that "would be equivalent to an injunction requiring the FDIC-R[eceiver] to make payments in a certain order," contrary to the Receiver's statutory power).[4] Indeed, the

---

[4] Section 1821(j) mandates that "no court may take any action, except at the request of the

Receiver's request does not just *restrain and affect* the Conservator's statutory power to do these things, it *usurps and negates* it in relation to the GSE Properties. Accordingly, Section 4617(f) bars allocation of any of the Receiver's costs or fees to the GSE Properties. *See Roberts*, 889 F.3d at 400 (explaining that Section 4617(f) bars "*any*" judicial interference with the Conservator's exercise of its powers or functions (emphasis added)); *see also Bhatti v. Fed. Hous. Fin. Agency*, 15 F.4th 848, 855 (8th Cir. 2021) ("Picking among different ways of preserving and conserving assets, deciding whose interests to pursue while doing so, and determining the best way to do so are all choices that the [HERA] clearly assigns to the FHFA, not the courts." (quoting *Saxton v. Fed. Hous. Fin. Agency*, 901 F.3d 954, 960 (8th Cir. 2018) (Stras, J., concurring)).

Although Section 4617(f) and the substantively identical FDIC provision, Section 1821(j), are sometimes imprecisely described as "anti-injunction" provisions, they bar any form of order that would interfere with the Conservator's exercise of its powers and functions. *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 894 (3d Cir. 2018) (stating that the anti-injunction provision "label is inaccurate"). Hence, while Section 4617(f) bars "declaratory, injunctive, or other equitable relief," it is not limited to those forms of relief only. *Id.* The focus of Section 4617(f) is the substance of an order, not the label a court or litigant might apply to it. *Id.* at 895. For example, "monetary relief [that] would restrain or affect the exercise of [FHFA]'s powers as conservator … is barred by § 4617(f)." *Jacobs*, 908 F.3d at 896; *see Rosa v. Resol. Tr. Corp.*, 938 F.2d 383, 399 (3d Cir. 1991) (Section 1821(j) bars monetary relief in some circumstances); *FDIC v. Urb. P'ship Bank*, No. 17-cv-1517, 2018 WL 2021223, at *4, *6 (N.D. Ill. May 1, 2018) (same).

---

[FDIC's] Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). Courts faced with questions about Section 4617(f) routinely look to cases interpreting and applying Section 1821(j) for guidance. *E.g.*, *Roberts*, 889 F.3d at 402-03.

In any event, Section 4617(f) unquestionably bars equitable relief that would restrain or affect the Conservators powers and applies here. *See Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (Section 1821(j) is "a sweeping ouster of courts' power to grant equitable remedies …."). The receivership itself is an equitable construct, and therefore the entire implementation and administration of the receivership—including all allocations of the Receiver's costs—are inherently equitable. *See SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963) (holding that "[t]he district court was vested with inherent equitable power to appoint a trustee-receiver" and properly exercised its power in light of "prima facie showing of fraud and mismanagement"); Order Appointing Receiver at 2, 4 (Dkt. 16) (appointing Kevin B. Duff to serve as "the federal equity receiver" and granting the Receiver "all powers and authority of a receiver at equity"). Not all of the Receiver's acts restrain or affect the Conservator's powers and functions, of course, and this Objection addresses only matters relating directly to the GSE Properties—and therefore the Enterprises and the Conservator. Simply, for purposes of the Receiver's pending motion, Section 4617(f) bars any payment of the Receiver's costs out of funds serving as collateral for GSE liens—but that is exactly what the Receiver's request to allocate costs to the GSE Properties would do.[5]

It is irrelevant that the cost-allocation order is not aimed exclusively at the Conservator or the Enterprises. An action "can 'affect' the exercise of powers by an agency without being aimed directly at [that agency]." *Perry Capital*, 864 F.3d at 615 (quoting *Hindes v. FDIC*, 137 F.3d 148, 160 (3d Cir. 1998)). Section 4617(f) prohibits "*any order* that would affect the exercise of FHFA's powers or functions" as Conservator. *Roberts v. Fed. Hous. Fin. Agency*, 243 F. Supp. 3d 950, 959 (N.D. Ill. 2017), *aff'd*, 889 F.3d 397 (7th Cir. 2018) (emphasis added). Thus, "[a]ctions that

---

[5] FHFA takes no position as to the Receiver's motion for allocation against properties unrelated to the Conservator or the Enterprises.

affect [a conservator]'s ability to pursue claims and fulfill its authority and obligations as [conservator] run afoul of § 1821(j)." *Urb. P'ship Bank*, 2018 WL 2021223, at *5; *see FDIC v. OneBeacon Midwest Ins. Co.*, 883 F. Supp. 2d 754, 763 (N.D. Ill. 2012) (barring declaratory relief that would affect the FDIC's future ability to pursue claims).

### 2. Section 4617(f) Is Jurisdictional and Therefore Cannot Be Waived or Forfeited

Section 4617(f) embodies a jurisdictional limitation. *Cty. of Sonoma v. FHFA*, 710 F.3d 987, 990 (9th Cir. 2013) (under Section 4617(f), "courts have no jurisdiction" over claim for injunction); *Leon Cty. v. FHFA*, 700 F.3d 1273, 1276 (11th Cir. 2012) (Section 4617(f) is a "jurisdictional bar"). As a result, Section 4617(f) could have been asserted earlier is irrelevant— parties cannot waive jurisdictional defects and may instead raise them at any time, even on appeal. *See Perez v. K&B Transp., Inc.*, 967 F.3d 651, 654 (7th Cir. 2020) (jurisdictional issues cannot be waived); *Hanson*, 113 F.3d at 870 n.5 (holding that, "[b]ecause [Section] 1821(j) limits subject matter jurisdiction, we can consider [it] for the first time on appeal").

"[J]urisdictional statutes speak about jurisdiction, or more generally phrased, *about a court's powers*." *United States v. Kwai Fun Wong*, 575 U.S. 402, 411 n.4 (2015) (emphasis added). *See also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (stating that "[j]urisdictional statutes speak to the power of the court" (quoting *Landgraf v. USA Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted)). Section 4617(f)'s jurisdictional quality is evident in the straightforward and concise terms Congress enacted to specifically and directly limit courts' powers: "No court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator." 12 U.S.C. § 4617(f).

That Section 4617(f) is jurisdictional is evident not just from HERA's plain text, but also from persuasive and analogous case law, including the Supreme Court's recent decision in *Collins*

*v. Yellen*, which holds that Section 4617(f) broadly bars injunctive relief that could restrain or affect FHFA's statutory powers as Conservator. 141 S. Ct. 1761, 1775-78 (2021). In *Collins*, the Supreme Court described Section 4617(f) as "sharply circumscrib[ing] judicial review of any action that the FHFA takes as a conservator." *Id.* at 1775. Limitations on judicial review are quintessentially jurisdictional. *See Barbosa v. U.S. Dep't of Homeland Sec.*, 916 F.3d 1068, 1074 (D.C. Cir. 2019) (a statutory "preclusion of judicial review is a jurisdictional limitation on judicial power"). Accordingly, numerous courts have held that the substantively identical Section 1821(j) is jurisdictional. *E.g.*, *Hanson*, 113 F.3d at 870 n.5.

Because Section 4617(f) deprives the Court of jurisdiction to grant the requested relief, equitable doctrines such as waiver, laches, or estoppel cannot supersede the statute's application.

### B. Section 4617(j)(3) Prohibits Extinguishment of Agency Conservatorship Property Interests

Another provision of FHFA's organic statute also bars allocation of any of the Receiver's costs or fees to the GSE Properties. Specifically, Section 4617(j)(3) provides: "No property of [an FHFA conservatorship] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [Conservator], nor shall any involuntary lien attach to the property of the [conservatorship]." 12 U.S.C. § 4617(j)(3). The property protected by Section 4617(j)(3) includes "lien interests in property." *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1153 (D. Nev. 2015) (collecting cases).

Section 4617(j)(3) has been extensively litigated in federal courts, which have uniformly agreed that the protection "applies to *any property* for which the Agency serves as conservator." *Berezovsky v. Moniz*, 869 F.3d 923, 928 (9th Cir. 2017) (emphasis added). No affirmative decision by FHFA is required; the default rule under the statute is that FHFA does not consent. *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1149 (9th Cir. 2018). Thus, "the

statutory language cloaks [conservatorship] property with Congressional protection unless or until the Agency affirmatively relinquishes it." *Berezovsky*, 860 F.3d at 929 (stating that Section 4617(j)(3) "does not require the Agency to actively resist foreclosure").

Section 4617(j)(3) bars the cost-allocation requested here, because the allocation would make the Enterprises' liens "subject to" a judicially imposed process that would deplete the collateral—the functional equivalent of attachment, garnishment, foreclosure, or sale, all of which the statute prohibits. In applying the analogous FDIC provision, courts have focused on the effect of the action, not the label. *Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686, 691 (5th Cir. 1998). What matters is whether "the end result is functionally the same as that of the actions that are specifically listed in the statute: the [conservator or receiver would] lose[] the Property." *Id.* at 691. That is because these property-protection provisions "represent[] the express will of Congress that the [conservator or receiver] must consent to *any deprivation of property* …." *Id.* (emphasis added).

The allocation here would unquestionably deprive the Conservator and the Enterprises of property—their lien interest in the funds being allocated and disbursed. *See Skylights*, 112 F. Supp. 3d at 1153 (Section 4617(j)(3) "bars the extinguishment of liens held by FHFA in the conservatorship without its consent."). Accordingly, Section 4617(j)(3) forbids it. *See S/N-1 REO Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) (explaining that, following *Trembling Prairie*, the FDIC analog to Section 4617(j)(3), 12 U.S.C. § 1825(b)(2) prohibits "deprivation," i.e., "reduction in the value of the receivership's assets" (quoting *Irving Indep. Sch. Dist. v. Packard Props.*, 970 F.2d 58, 62 (5th Cir. 1992))).

**II. Applying Sections 4617(f) and 4617(j)(3) Here Advances HERA's Purpose**

Individual provisions in HERA, like any other statute, must be "read … in harmony with HERA as a whole." *Roberts*, 889 F.3d at 406 (citing *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Here, other HERA provisions (and the corresponding provisions applicable to other federal conservators and receivers) confirm that Congress intended to protect conservatorship assets from dissipation and to protect the Conservator from outside interference.

**A. Section 4617(a)(7) Confirms that the SEC's Involvement Does Not Eclipse or Undermine Sections 4617(f) or 4617(j)(3)**

Congress also has made clear that the Conservator maintains unequivocal authority over conservatorship assets, even in the face of countervailing claims by other federal agencies. HERA provides that "[w]hen acting as conservator or receiver, the Agency *shall not be subject to the direction or supervision of any other agency* of the United States or any State in the exercise of the rights, powers, and privileges of the Agency." 12 U.S.C. § 4617(a)(7) (emphasis added). Like Section 4617(f), Section 4617(a)(7) "limits external interference with FHFA's actions as conservator." *Roberts*, 243 F. Supp. 3d at 955. Thus, other agencies, such as the SEC, cannot direct or supervise FHFA regarding the exercise of its powers and authorities. As one court explained, this provision "specifically functions to remove obstacles to FHFA's exercise of conservator powers—*i.e.* to preserve FHFA's interests." *Saxton v. FHFA*, 245 F. Supp. 3d 1063, 1077 (N.D. Iowa 2017), *aff'd*, 901 F.3d 954 (8th Cir. 2018). Section 4617(a)(7) has been broadly interpreted to prohibit direction or supervision by other units of government as well. *See Fed. Hous. Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044, 1060-61 (N.D. Ill. 2013)

Accordingly, nothing the SEC—or a receiver appointed at the SEC's request—has requested, agreed to, or approved relating to these GSE Properties has any impact on, or may limit, FHFA's powers.

12

### B. Section 4617(j)(2) Confirms that Congress Purposefully Granted Conservatorship Property Extraordinary and Broad Protection

Another provision of HERA, Section 4617(j)(2), confirms Congress's intent to protect FHFA conservatorships broadly; it exempts property of the conservatorship from "all taxation imposed by any State, county, municipality, or local taxing authority" subject to limited exceptions for taxation of real property. In interpreting this provision, courts—including the Seventh Circuit—have explained that it is "clearly expansive," have construed it broadly, and have confirmed that "all taxation" does indeed mean *all* taxation. *Delaware Cty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 221 (3d Cir. 2014); *see DeKalb Cty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795, 800 (7th Cir. 2013); *Montgomery Cty. Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1255 (11th Cir. 2015). The provision thus insulates property of the conservatorship from generally applicable taxes. In doing so, Section 4617(j)(2) and courts interpreting it have confirmed that Congress sought to broadly protect assets of the conservatorship from diminution, even routine diminution through taxation that all non-conservatorship property would otherwise be subject to.[6]

### C. The Conservator's Statutory Powers and Protections Apply Broadly and Advance Important Policy Objectives

As the Supreme Court recognized, HERA granted FHFA "expansive authority in its role as a conservator." *Collins*, 141 S. Ct. at 1776. Section 4617(f) embodies Congress's policy judgment that enabling conservators to focus on the work Congress empowered them to do—without being constrained by relief of the sort the Receiver seeks—is paramount and preserves the important public mission of Fannie Mae, Freddie Mac, and FHFA to the benefit of the American

---

[6] Fannie Mae and Freddie Mac are themselves independently exempt from most forms of taxation. *See* 12 U.S.C. §§ 1723a(c)(2) (Fannie Mae), 1452(e) (Freddie Mac). By enacting Section 4617(j)(2), Congress eliminated any possible doubt that those exemptions would survive any transition into conservatorship or receivership.

public. Congress's grant to FHFA of broad discretion to act without judicial interference makes sense; by definition, conservators are appointed only in challenging circumstances—here, entities critical to the national economy were at risk, ultimately receiving billions of taxpayer dollars. HERA provides the Conservator with a variety of powers that, combined with Section 4617(f), ensure that the Conservator enjoys broad "managerial judgment" to make "hard operational calls" about "the necessity and fiscal wisdom" of particular measures, especially in light of "ever-changing market conditions." *Perry Capital*, 864 F.3d at 607-608, 613. Congress aimed "to enable [conservators and receivers] to act in a quick and decisive manner." *See 281-300 Joint Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991). To that end, in Section 4617(f) Congress "sharply circumscribed judicial review" of FHFA's conservatorship activities, *Collins*, 141 S. Ct. at 1775, and "bar[red] judicial interference with [FHFA's] statutorily authorized role as conservator," *Roberts*, 889 F.3d at 402. As the Seventh Circuit explained in an FDIC case, although Section 1821(j)—which, as previously noted, is substantively identical to Section 4617(f)—"may appear drastic, it fully accords with the intent of Congress … to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country." *Veluchamy v. FDIC*, 706 F.3d 810, 818 (7th Cir. 2013) (quoting *Freeman*, 56 F.3d at 1398). Given the Enterprises' scale, the same logic applies to Section 4617(f).

Substantially the same policy considerations underlie Section 4617(j)(3), which provides "property protection" that will "aid [the Conservator] in its task of reorganizing, rehabilitating, or winding up the affairs of the regulated entities" in conservatorship. *Skylights*, 112 F. Supp. 3d at 1151. "Congress's clear and manifest goal" in enacting Section 4617(j)(3) was to "protect[] the Agency's assets in the face of multiple potential threats." *Berezovsky*, 869 F.3d at 930-31. Like the substantively identical provision applicable to FDIC receivers, 12 U.S.C. § 1825(b)(2), it

14

reflects "the intent of Congress … to protect the [conservator's or receiver's] interest in property, regardless of the presence of [other] liens." *Beal Bank, SSB v. Nassau Cty.*, 973 F. Supp. 130, 133 (E.D.N.Y. 1997) (applying Section 1825(b)(2); *see also Trustees of McIntosh Condo. Ass'n v. FDIC*, 908 F. Supp. 58, 66 (D. Mass. 1995) ("The purpose of [Section] 1825(b)(2) is the protection of assets of the FDIC as receiver[.]").

These HERA provisions are "[e]ssential to" a conservator's ability to exercise its other powers effectively and thereby protect American taxpayers. *See Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (discussing Section 1821(j)); *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007) (same). Like the Financial Institutions, Reform, Recovery and Enforcement Act ("FIRREA") (on which it is modeled), HERA reflects Congress's intention that FHFA have "full rein to exercise its statutory authority without injunctive restraints imposed by bankruptcy courts or district courts in other proceedings." *In re Landmark Land Co. of Oklahoma, Inc.*, 973 F.2d 283, 290 (4th Cir. 1992). That full rein applies to the GSE Properties at issue herein.

## CONCLUSION

FHFA respectfully requests the Court deny the Receiver's motion insofar as it seeks to allocate any receivership costs or fees—specific, general, past and future—to the GSE Properties or to otherwise diminish the proceeds from the sale of the GSE Properties.

Dated: March 4, 2022

Respectfully submitted,

/s/ *Michael A.F. Johnson*
Michael A.F. Johnson
ARNOLD & PORTER LLP
D.C. Bar No. 460879, *admitted pro hac vice*
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Michael.Johnson@arnoldporter.com

Daniel E. Raymond
ARNOLD & PORTER LLP
70 West Madison Street
Suite 4200
Chicago, Illinois 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Daniel.raymond@arnoldporter.com

*Attorneys for Federal Housing Finance Agency in its capacity as Conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, I caused the foregoing **Federal Housing Finance Agency's Objection to Receiver's Motion for Approval of Allocations of Fees to Properties for Payment Pursuant to Receiver's Lien** to be electronically filed with the Clerk of the Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record.

/s/ Daniel E. Raymond