IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, )<br>)<br>Defendants. ) | No. 18 C 5587<br><br>Judge John Z. Lee |

## ORDER

For the following reasons, the Receiver's twelfth application and motion for Court approval of payment of fees and expenses of the Receiver and his retained professionals [1026] is granted.

### I. Background

On August 15, 2018, the Securities and Exchange Commission ("SEC") filed a complaint against Defendants Equitybuild, Inc., Equitybuild Finance, LLC (collectively, "Equitybuild"), Jerome H. Cohen, and Shaun D. Cohen (collectively, "the Cohens"). *See* Compl., ECF No. 1. According to the complaint, the Cohens used the Equitybuild entities to operate a Ponzi scheme through which they fraudulently induced more than 900 investors to invest at least $135 million in residential properties on the South Side of Chicago. *Id.* ¶ 1. As the Ponzi scheme collapsed under the increasing weight of obligations to make payments to investors, the Cohens refinanced the properties with new loans from traditional

institutional lenders (the "Institutional Lenders" or "Mortgagees"), without paying off the existing investors' debts. *See* Receiver's Mot. Approval Process Resolution Disp. Claims ¶¶ 1, 6, ECF No. 638. In doing so, Equitybuild often borrowed against the same property twice, creating a clash of claims between the individual investors and the Mortgagees. *Id.* ¶ 6.

Shortly after the SEC filed its complaint, the Court appointed a Receiver to marshal and preserve Equitybuild's assets (the "Estate"). *See* Order Appointing Receiver, *S.E.C. v. Equitybuild*, No. 18 C 5587 (N.D. Ill. Aug. 17, 2018) ("Order Appointing Receiver"), ECF No. 16. Over more than three years, the Receiver has done just that: he has identified assets—including the South Side commercial and residential real estate properties in which the Cohens induced their victims to invest—and liquidated them so as to limit potential liabilities and carrying costs for the Estate, with the goal of repaying the victims of the Cohens' fraud to the greatest extent possible. To further that goal, and at the Court's direction, the Receiver has also worked with stakeholders—such as the SEC, the Mortgagees and other institutional lenders, and certain individual investors—to develop a summary claim-priority adjudication process designed to resolve the competing claims against the Estate. *See* Order Regarding Claims Resolution Process No. 2, *Equitybuild*, (N.D. Ill. Feb. 9, 2021), ECF No. 941 (outlining procedures to adjudicate claim priorities).

Since the Receiver's appointment, he has periodically submitted applications for the approval of certain fees and expenses. *See* Receiver's Fee

Appls., ECF Nos. 411, 487, 569, 576, 608, 626, 755, 778, 885, 945, 993. The Receiver now seeks Court approval of fees and expenses incurred by the Receiver and his retained professionals from the second quarter of 2021.

The Receiver's twelfth interim application ("12th Appl."), ECF No. 1026, covers the period from April 1, 2021, to June 30, 2021. The Receiver requests:

- **$52,143.00** for the Receiver;
- **$204,086.16** for Rachlis Duff & Peel, LLC ("RDP")[1];
- **$3,474.50** for BrookWeiner, LLC;
- **$495.00** for Prometheum;

The Mortgagees have objected to the twelfth application on multiple grounds. *See* Mortgagees' Resp. Receiver's 12th Interim Appl. Mot. Court Approval Payment Receiver's Fees & Expenses ("Objs. 12th Appl."), ECF No. 1039. First, they argue that the Receiver has not shown that all of the receivership tasks he performed in the second quarter of 2021 fall within the two categories of activities for which the Court authorized a first priority lien. *Id.* at 2; *see* Order Approving First Priority Receiver's Lien for Certain Categories of Expenses at 11, *Equitybuild* (N.D. Ill. Aug. 17, 2021) ("8/17/21 Order"), ECF No. 1030. Second, they claim that the Receiver has not shown that an across-the-board allocation is appropriate. Objs. 12th Appl. at 3–4. Finally, the Mortgagees request a 20% holdback of fees. *Id.* at 4.

## II. <u>Legal Standard</u>

---

[1] The Receiver represents that this amount will be reduced by the $74,670.62 already received by RDP partner Andrew Porter as agency fees for the title examination work performed in connection with the closing of property sales during the second quarter of 2021.

3

"In securities law receiverships, . . . the awarding of fees rests in the district judge's discretion, which will not be disturbed unless he has abused it." *S.E.C. v. First Secs. Co. of Chi.*, 528 F.2d 449, 451 (7th Cir. 1976). As a general matter, a receiver "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *S.E.C. v. Byers*, No. 08 CIV. 7104 DC, 2014 WL 7336454, at *5 (S.D.N.Y. Dec. 23, 2014); *see also S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992).

In determining whether the amount of compensation requested is appropriate, a court should consider "all of the factors involved in a particular receivership." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Such factors include "the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Byers*, 2014 WL 7336454, at *5 (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)). When considering whether a receiver benefited the estate, courts bear in mind that such benefits "may take more subtle forms than a bare increase in monetary value." *Gaskill*, 27 F.3d at 253 (quoting *Elliott*, 953 F.2d at 1577). Additionally, courts give "great weight" to the acquiescence or opposition of the SEC to fee applications. *S.E.C. v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (quoting *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008)).

### III.　Analysis

The complexity of this case, the benefit to the Receivership Estate, and the quality of the Receiver's work are all factors that weigh in favor of granting the fee application. *See Byers*, 2014 WL 7336454, at *5. As the Receiver documented in the instant fee application, this case is complex, involving the preservation, operation, marketing, and sale of dozens of residential real estate properties. In the application, the Receiver outlines the efforts he and his retained professionals undertook to address health, life, and safety issues at the properties (such as open building code violations), prepare taxes, oversee property finances, report to creditors on the properties' operating income and expenses, and market and sell certain of the properties. *See, e.g.*, 12th Appl. at 5–6. The Receiver also managed litigation brought against the estate and prosecuted claims that may yield recoveries for the estate. *See, e.g.*, *id*. at 8. And the Receiver continued to negotiate with stakeholders, respond to claimants' communications, and identify, compile, review, and organize claims submitted by creditors in order to facilitate the summary claim-priority adjudication process. *See, e.g.*, *id*. at 9–10. The Court therefore finds that the Receiver's efforts have benefited and will continue to benefit the Receivership Estate.[2]

---

[2] What is more, the actions taken to preserve, operate, maintain, and sell Estate real properties and participate in the summary claim-priority adjudication process have benefited and will benefit the creditors in addition to the Estate. *See* 8/17/21 Order at 10 (citing *Gaskill*, 27 F.3d at 253); *see also* CLARK ON RECEIVERS § 638 (3d ed. 1959) (describing activities that confer a benefit on and are chargeable to a property).

In light of the foregoing factors, the Court finds the fees requested to be reasonable. *See Morgan*, 504 F. Supp. 3d at 224. The Court now addresses the Mortgagees' objections.

## A.     First-Priority Lien

The Court previously granted the Receiver's request for a first-priority lien on the receivership assets for fees incurred by the Receiver in connection with "(1) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate; and (2) the implementation and management of an orderly summary claim-priority adjudication process." 8/17/21 Order at 11. In the instant fee application, the Receiver requests that *all* his fees and expenses be paid pursuant to the first-priority lien. 12th Appl. at 15. The Mortgagees object to this request. They point to the Receiver's descriptions of his activities in the application, *see id*. at 7–9, as well as individual line items in the Receiver's invoices, *see generally* 12th Appl. Ex. F, and argue that some of them fall outside these categories. For example, the Mortgagees contend that the Receiver's prosecution of claims in state court against former Equitybuild professionals and his management of open litigation related to receivership assets are not covered by the first-priority lien. They also argue that the first-priority lien should not apply to the Receivers' activities in connection with tax and accounting issues concerning the Cohens' business operations.

The gravamen of the Mortgagees' argument seems to be that the first-priority lien is not applicable except when the Receiver's activities directly involve

6

real estate transactions concerning the subject properties or managing the claims process. This reading is too narrow. When read in context, the two categories of activities for which the Court granted a first-priority lien include many of, if not all, the activities about which the Mortgagees object. *See, e.g.*, 8/17/21 Order at 11 (listing "overseeing significant repairs and improvements, paying the required real estate taxes, and litigating various state court actions related to the properties" as some of the tasks that fall within the first category).

Additionally, the Court gives considerable weight to the SEC's acquiescence to the fee application, including the payment of fees through a first-priority lien. The SEC, whose goal is to maximize the Receivership Estate in order to maximize compensation to the Cohens' victims, is incentivized to oppose payments to the Receiver on a first-priority basis. *Cf. F.T.C. v. Cap. Acquisitions & Mgmt. Corp.*, No. 04 C 7781, 2005 WL 3676529, at *6 (N.D. Ill. Aug. 26, 2005) (noting that the government's incentives conflict with the receiver's in the receivership fee application context). But the SEC has not objected to the instant fee application, despite the Mortgagees' assertions that the application impermissibly requests a first-priority lien for activities not specifically enumerated in the Court's previous order. This militates against the Mortgagees' position that the first-priority lien is *per se* inappropriate. *See Morgan*, 504 F. Supp. 3d at 223–24. Thus, to the extent the Mortgagees object to *any* application of first-priority receiver's lien to the fee application at issue, that objection is overruled.

7

All that being said, there may be individual line entries or categories of expenses (such as those the Mortgagees reference in their objections), that fall outside even a broad reading of the two categories of expenses for which the Court authorized the first-priority lien. Therefore, the Court denies the Receiver's request to pay *all* of the fees and expenses pursuant to the first-priority lien. The Receiver should file a separate motion detailing which specific fees and expenses he requests be subject to the first-priority lien, which the Court may refer to Magistrate Judge Kim.[3]

**B. Property-Specific Fee Allocations**

Next, the Mortgagees object to the Receiver's request that he be paid according to a line-by-line allocation of fees to specific properties. As to the instant fee application, the Receiver has submitted his proposed property-by-property fee allocations, along with his methodology, in a separate motion, *see* Receiver's Mot. Approval Fee Allocations Payment Pursuant Receiver's Lien, ECF No. 1107, that is currently pending before Magistrate Judge Kim. Because Judge Kim is currently entertaining creditors' objections to those proposed allocations, the Court will not consider them now.

**C. 20% Holdback**

Even when interim fees are otherwise appropriate, a court may hold back a portion of the requested fees "because until the case is concluded the court may

---

[3] To the extent the Receiver requests that the Court authorize payments of his fees and expenses pursuant to the first-priority receiver's lien in the future, he should include details in each fee application concerning which line items he believes should be covered by the first-priority lien, and the Court will consider them together with the fee applications.

8

not be able to accurately determine the reasonable value of the services for which the allowance of interim compensation is sought." *S.E.C. v. Cap. Cove Bancorp, LLC*, SACV 15-980-JLS, 2016 WL 6078324, at *2 (C.D. Cal. Jun. 29, 2016) (cleaned up) (quoting *S.E.C. v. Small Bus. Cap. Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *2 (N.D. Cal. May 15, 2013)). Courts are mindful "to avoid even the appearance of a windfall" when awarding fees to a receiver, especially where, as here, "hundreds of investors and creditors have been defrauded and victims are likely to recover only a fraction of their losses." *Byers*, 2014 WL 7336454, at *6 (cleaned up). Furthermore, "[h]oldback provisions are commonly used to . . . incentivize timely resolution." *S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225180, at *2 (S.D. Fla. Mar. 31, 2016).

In its order approving the Receiver's ninth, tenth, and eleventh fee applications, the Court for the first time mandated a 20% holdback on the Receiver's fees (but not expenses). Furthermore, the Court held that to the extent the Receiver sought to pay fees from the sales proceeds of *encumbered* real estate, those fees would be subject to an additional 20% holdback.

Here, the Mortgagees again request a 20% holdback on the Receiver's fees, and an additional 20% holdback on any fees to be paid from the sales proceeds of encumbered real estate. For the reasons stated in the Court's order granting the ninth, tenth, and eleventh fee applications, this request is granted. *See* Order Granting 9th, 10th, 11th Mots. Approval Fees & Expenses at 12–14, *Equitybuild* (N.D. Ill. Aug. 17, 2021), ECF No. 1031.

## IV. <u>Conclusion</u>

For the reasons set forth above, the Court grants the Receiver's twelfth fee application. The Court also imposes a holdback of 20% of the fees (but not expenses) requested in the twelfth application, and an additional 20% holdback on any fees to be paid from the sales proceeds of encumbered real estate. The Receiver may pay such fees and expenses out of the Estate's operating account to the extent that it has sufficient liquid funds. The Receiver is further authorized to pay any fees and expenses that fall under the two categories outlined in the Court's August 17, 2021 order pursuant to a first-priority receiver's lien, and should file a motion detailing which specific fees and expenses he requests to be paid pursuant to the first-priority lien.

**IT IS SO ORDERED.**                                                                 **ENTERED: 3/14/22**

                                                                                                            _____
                                                                                                            **John Z. Lee**
                                                                                                            **United States District Judge**