IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) | |
| Plaintiff, ) ) | No. 18 C 5587 |
| v. ) ) | Judge John Z. Lee |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN ) ) ) ) ) | |
| Defendants. ) | |

**ORDER**

Liberty EBCP, LLC ("Liberty") moves for a declaratory judgment that the litigation stay in this receivership dispute is not applicable to a legal malpractice action that Liberty filed in the Circuit Court of Cook County against a third-party defendant. For the following reasons, Liberty's motion is denied.

## I. Background

The Court presumes familiarity with the factual background of this case from its previous orders. *See, e.g.*, Order Approving First-Priority Receiver's Lien at 2–4, *S.E.C. v. Equitybuild* (N.D. Ill. Aug. 13, 2021) ("Order Approving Receiver's Lien"), ECF No. 1030. In short, Jerome D. Cohen and Shaun Cohen (collectively "the Cohens") used Equitybuild, Inc., Equitybuild Finance, and their subsidiaries (collectively "Equitybuild") to conduct a Ponzi scheme, fraudulently inducing more than 900 investors to invest in residential real estate in Chicago. *See id.* at 2–3. After

the Cohens' scheme was uncovered, the SEC filed a complaint against the Cohens and Equitybuild, and the Court appointed a Receiver to track down, manage, and preserve their assets. *Id.*; *see generally* Order Appointing Receiver, *Equitybuild* (N.D. Ill. Aug. 17, 2018), ECF No. 16.

In order to preserve the receivership assets and streamline the receivership process, the Court also entered a stay of:

> All civil legal proceedings of any nature . . . involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, members, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

Order Appointing Receiver ¶ 32.

Turning to the facts giving rise to the instant motion, Liberty loaned Equitybuild $9.2 million, secured by two mortgages on SSDF7 Portfolio I, LLC ("SSDF7"), an Equitybuild subsidiary. Br. Supp. Mot. Determination Receivership Stay Not Applicable Liberty Malpractice Action at 2 ("Liberty Opening Br."), ECF No. 1119. Liberty alleges that SSDF7's counsel, Rock Fusco & Connelly, LLC ("RFC"), and RFC attorney Ioana Salajanu committed legal malpractice in connection with this loan transaction. *See id.* Specifically, they accuse RFC and Salajanu of falsely representing in a letter to Liberty that SSDF7 and Jerome Cohen, who served as guarantor of the loan, were not subject to any "pending or threatened lawsuits, claims

or criminal proceedings" other than three building-code violations described in an attachment to the letter. *Id.* (quoting Liberty Opening Br. Ex. A ("Opinion Letter") ¶ 13).

Furthermore, Liberty claims that RFC and Salajanu knew at the time they sent the Opinion Letter that SSDF7 and Jerome Cohen were defendants in at least three pending lawsuits in Illinois and Texas state courts, and that the Cohens and SSDF7's Equitybuild affiliates were targets of the SEC investigation that gave rise to the instant litigation. *See* Liberty Opening Br. Ex. B, Compl. ¶¶ 15–21, *Liberty EBCP, LLC v. Rock Fusco & Connelly, LLC*, No. 2020 L 005725 (Cir. Ct. Cook Cnty. Apr. 29, 2020).

Based on these allegations, Liberty filed a legal malpractice action against RFC and Salajanu in the Circuit Court of Cook County. *See generally id.* RFC notified its malpractice insurer and requested that it cover its defense costs and indemnify RFC and Salajanu against a potential judgment. *See* Liberty Opening Br. at 3; Receiver's Resp. Supp. Mot. Stay ("Resp. Br.") Ex. 1, Bruck Decl. ¶¶ 4–6, ECF No. 1141.

Three months later, the Receiver also filed a legal malpractice action against RFC and Salajanu in the Circuit Court of Cook County, alleging a variety of ethical violations in connection with their representation of Equitybuild and the Cohens. *See* Liberty Opening Br. Ex. C., Am. Compl. ¶¶ 114–30, *Duff v. Rock Fusco & Connelly, LLC*, No. 2020 L 8843 (Cir. Ct. Cook Cnty. Sept. 25, 2020). The Receiver's action also triggered coverage under RFC's malpractice insurance policy. Bruck Decl. ¶ 7.

Counsel for the Receiver notified Liberty of the Receiver's action and requested that Liberty agree to stay its case against RFC and Salajanu, arguing that (1) RFC's malpractice insurance policy is property of the Receivership Estate; (2) Liberty's action threatens to diminish RFC's malpractice insurance policy; and (3) Liberty's action violates the litigation stay issued by the Court in the order appointing the Receiver. *See* Liberty Opening Br. at 3. When Liberty refused, the Receiver moved to intervene in Liberty's case in order to move to stay proceedings until the termination of the Receivership. *See generally* Liberty Opening Br. Ex. F, Pet. Intervene, *Duff*, No. 2020 L 8843 (Cir. Ct. Cook Cnty. Dec. 17, 2021). Liberty then moved this Court to issue a declaratory judgment that the Liberty malpractice case is not covered by the litigation stay.

## II. Legal Standard

In order to streamline the redistribution of a defendant entity's assets to investors victimized by the entity's violations of securities law, courts have "the power to impose a receivership free of interference from other court proceedings." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019) (alterations omitted) (quoting *S.E.C. v. Wencke*, 622 F.2d 1363, 1372 (9th Cir. 1980) ("*Wencke I*")). A court overseeing a receivership may therefore "issue a stay, effective against all persons, of all proceedings against the receivership entities." *Wencke I*, 622 F.2d at 1372; *see S.E.C. v. Byers*, 592 F. Supp. 2d 532, 535–36 (S.D.N.Y. 2008), *aff'd*, 609 F.3d 87 (2d Cir. 2010).

4

Courts considering motions for relief from litigation stays in securities receivership cases have generally coalesced around a three-factor test developed in a pair of Ninth Circuit decisions. *See S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*"); *Wencke I*, 622 F.2d 1363. This analysis weighs "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *Wencke II*, 742 F.2d at 1231; *see, e.g.*, *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 442 (3d Cir. 2005) (employing *Wencke* test); *Byers*, 592 F. Supp. 2d at 537 (same). The *Wencke* analysis entails a holistic inquiry, *see, e.g.*, *Byers*, 592 F. Supp. 2d at 537, but "the moving party bears the burden of proving that the receivership stay should be lifted." *F.T.C. v. 3R Bancorp*, No. 04 C 7177, 2005 WL 497784, at *2 (N.D. Ill. Feb. 23, 2005) (citing *Wencke II*, 742 F.2d at 1231).

### III. Analysis

**A. Whether the *Liberty* Case is Covered by the Stay**

Before considering the *Wencke* factors, the Court must determine whether the stay covers the *Liberty* case. To this end, Liberty argues that the stay does not apply to the case because RFC and Salajanu are not Receivership Defendants and "just because [they] provided services to the Receivership Defendants does not make them parties over whom the Receiver has been appointed to administer." Liberty Opening Br. at 6–7. Liberty's argument fails for two reasons.

First, the plain language of the stay forecloses Liberty's argument. The stay applies to any litigation "involving . . . any of the Receivership Defendants' . . . *agents* . . . sued for, or in connection with, any action taken by them while acting in such capacity." Order Appointing Receiver ¶ 32 (emphasis added). RFC and Salajanu indisputably acted as "agents" of Receivership Defendants SSDF7 and Jerome Cohen when they acted as their attorneys. *See Smego v. Payne*, 854 F.3d 387, 396 (7th Cir. 2017). Liberty asks the Court to overlook this fact because "it was not aware" that RFC and Salajanu would be deemed agents of the Receivership Defendants at the time it filed its lawsuit against them, *see* Reply Liberty Receiver's Resp. Opp'n Mot. Determination Receivership Stay at 4 ("Liberty Reply"), ECF No. 1163, but this is no excuse.

What is more, the Receiver's claim against RFC will potentially be paid out of the same diminishing RFC insurance policy as Liberty's claim. RFC's insurer "has determined that the Liberty Suit and the [Receiver's] Suit arise out of the same Wrongful Act," meaning Liberty's claim, if allowed to proceed during the pendency of the receivership, might foreclose the Receiver's ability to recover damages that would inure to the victims' benefit. Bruck Decl. Ex. B, Letter from David Dineen, Senior Technical Specialist, Argonaut Ins. Co., to Matthew P. Connelly, Principal, RFC at 7 (Sept. 30, 2020). Under the totality of the circumstances, particularly the fact that the receivership assets may be insufficient to fully compensate the Receivership Defendants' secured creditors and the many victims of the Cohens' fraud, *see* Order Approving Receiver's Lien at 15, the Court finds that the insurance policy should, for

now, be treated as property of the receivership estate. *See* Order Appointing Receiver ¶ 8(A) (providing that "Receivership Assets" include "claims" and "rights . . . which the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly"); *id.* ¶ 29(c) (enjoining any actions that "dissipate or otherwise diminish the value of any Receivership Assets").

Having concluded that the *Liberty* case is covered by the stay, the Court now analyzes whether Liberty has met its burden to show that the stay should be lifted.

**B. Whether the Stay Should be Lifted**

**1. Status Quo Versus Injury**

Under the first *Wencke* factor, the Court balances the benefits of preserving the status quo against the injury that may result to Liberty from enforcing the stay. *See Wencke II*, 742 F.2d at 1232. Here, the stay maintains the status quo because it allows the Receiver to focus his attention on collecting and managing the assets of a large number of Equitybuild entities, many of which have co-mingled assets, in order to maximize the available funds for the Equitybuild victims' redress. *See Byers*, 609 F.3d at 93; *F.T.C. v. Med Resorts Int'l*, 199 F.R.D. 601, 608–09 (N.D. Ill. 2001). The Receiver has begun the claims-adjudication process, *see, e.g.*, Order Modifying Group 1 Schedule, *Equitybuild* (N.D. Ill. Nov. 22, 2021), ECF No. 1091, and his accounting, asset management, and litigation tasks remain ongoing. *See generally* Receiver's Fourteenth Status Report (Fourth Quarter 2021), ECF No. 1164. These facts weigh against lifting the stay. *See, e.g.*, *Med Resorts*, 199 F.R.D. at 608 (first *Wencke* factor

favored upholding stay where "many tasks still [had to] be performed" and the claims process had not been finalized).

As to injury, Liberty is injured by the stay only to the extent it will be forced to wait until the receivership winds up in order to file its lawsuit. That is not a trivial injury, but when weighed against the interest in preserving receivership assets for the estate's creditors, it falls short, particularly given Cohen's comingling of their various accounts. Generally, a movant seeking to lift a receivership stay must do more than plead that its ability to litigate its claims will be delayed in order to meet its burden as to the first factor.[1] For example, in *United States v. JHW Greentree Capital, L.P.*, the movant met its burden to demonstrate "sufficiently substantial" injury where preventing it from filing an eviction action would have caused the movant to breach its lease, costing the movant $1.4 million in expected revenue and exposing it to legal liability for the breach. No. 3:12–CV–00116, 2014 WL 2608615, at *5–6 (D. Conn. June 11, 2014); *see also, e.g.*, *Mitchell v. Total Wealth Mgmt. Inc.*, No. 14cv1552, 2015 WL 2239494, at *4 (S.D. Cal. May 12, 2015) (fact that movants were "of advanced age" and had lost their retirement savings outweighed receiver's interest in preserving potential receivership assets held by third-party defendant). And because Liberty is also a secured creditor who benefits from the streamlined receivership process, lifting the stay to allow Liberty to pursue litigation against Equitybuild agents based on their involvement in Equitybuild's fraudulent activities

---

[1] Indeed, if claiming that the stay deprives Liberty of its ability to promptly litigate its claims were enough, without more, to show substantial injury, the rule would be meaningless, as that harm is inherent in *every* situation where a litigation stay is enforced.

might possibly harm Liberty as well. Liberty has not met its burden on the first factor.[2]

### 2. Timeliness

The second factor—"the time in the course of the receivership at which the motion for relief from the stay is made"—also weighs in favor of keeping the stay in place. *Wencke II*, 742 F.2d at 1231. In conducting this "case-specific" analysis, *Acorn Tech.*, 429 F.3d at 450, courts generally find that motions for relief from a stay that are made during the collection and administration process, prior to the distribution of the receivership assets to individual claimants, pose a greater threat to the integrity of the receivership process than requests made after the assets have been collected and distribution has begun. *Compare, e.g.*, *Wencke II*, 742 F.2d at 1232 (timeliness weighed in favor of lifting stay when "no new material facts [had] been discovered for at least six years" and assets were being distributed); *with, e.g., S.E.C. v. Universal Fin.* 760 F.2d 1034, 1039 (9th Cir. 1985) (timeliness weighed against lifting stay when "material facts continue[d] to come to light" regarding claims

---

[2] Liberty also contends that the application of the stay to its lawsuit violates due process. It cites no case law in support of this theory, so its argument is waived. *See United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (internal quotation marks omitted)). But its argument would lack merit in any regard. In the receivership context, procedural due process requires a claimant to have notice and an opportunity to contest the court's decision, "but the district court exercises significant control over the time and manner of such proceedings." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006). Liberty, which has been an active participant in this dispute since 2018, has indisputably been heard on this issue. *See, e.g.*, Mot. Determine Rights Liberty With Respect Receivership Estate at 3, ECF No, 101 (moving to lift the injunction); Mem. Op. Order at 8–9, *Equitybuild* (N.D. Ill. Feb. 13, 2019), ECF No. 223 (denying that motion); *see also Zacarias*, 945 F.3d at 903 (rejecting due process argument against receivership stay on grounds that the summary claims process afforded due process).

process); *United States v. Petters*, No. 08–5348, 2017 WL 4325684, at *7 (D. Minn. Sept. 27, 2017) (timeliness supported keeping stay in place when receiver was still actively liquidating and managing assets, pursuing litigation, and determining which claimants had priority).

Here, no distributions have yet been made, and the Receiver is still devoting substantial time and effort to collecting assets, tracking claims, and constructing a fair claims process. *See generally, e.g.*, Receiver's Fourteenth Status Report. And "the pace of activity, as shown by even a cursory review of the docket" illustrates that there are many factual and legal issues yet to be resolved in the receivership. *Petters*, 2017 WL 4325684, at *7. Therefore, the timeliness factor also favors keeping the stay in place.

### 3. Merits of Liberty's Claim

The final *Wencke* factor concerns "the merit of [Liberty's] underlying claim." *Wencke II*, 742 F.2d at 1231. Of course, Liberty's case is still in its early stages, and "it would usually be improper for a district court to attempt to actually judge the merits of the moving party's claims at such an early point in the proceedings." *Acorn Tech.*, 429 F.3d at 444; *see also Wencke II*, 742 F.2d at 1232 (noting that the third factor hinges on whether the claim is "colorable").

But even assuming there are no facial deficiencies in Liberty's case, analysis under the third *Wencke* factor is unnecessary because the Court has already determined that Liberty has not met its burden on the first two factors. *See, e.g.*, *Byers*, 592 F. Supp. 2d at 537 (declining to consider third factor when first two factors

10

weighed against lifting stay); *Med Resorts*, 199 F.R.D. at 609 (refusing to lift stay even when the movants' claim had merit because "the fact that one of the *Wencke* factors tips in favor of [the movants] is not determinative, especially when all of the others undoubtedly call for a continuation of the stay").

Because Liberty has not met its burden to show that the stay should not apply to its malpractice lawsuit, it is not entitled to relief from the stay.

## IV. Conclusion

For the foregoing reasons, Liberty's motion for a declaratory judgment that the receivership stay is not applicable to its malpractice action is denied.

**IT IS SO ORDERED.**               **ENTERED: 3/23/22**

_____
**John Z. Lee**
**United States District Judge**