## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) |  |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Hon. John Z. Lee |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) |  |

## RECEIVER'S REPLY TO BC57 LLC'S SUBMISSION ON AVOIDANCE ISSUES

BC57's defense to the issues raised by the Receiver's avoidance disclosures (Dkt. 1118, 1199 & Ex. 1 thereto) is largely an effort of willful ignorance and misdirection. Its response emulates in many respects its failure to perform proper diligence and investigation in connection with the mortgage loan it issued to EquityBuild despite its awareness of the suspicious activities of and information provided by EquityBuild which triggered inquiry notice. As such, and as further explained below, if the District Court determines that BC57 is in first position, then its mortgage should be voided under the Uniform Fraudulent Transfer Act, 740 ILCS 160.

### I.     The Receiver Has Standing.

BC57 asserts that the Receiver does not have standing because "BC57 paid off prior mortgages," and claims that "the remainder of the funds funded tax payments and improvements to the real estate." (Dkt. 1217 at 37) In summary, BC57's argument is that the transaction benefitted the Receivership entities and created no harm. The arguments themselves are simply contrary to facts that are well-known to BC57 and cannot be reasonably disputed.

1

The Court has expressly authorized the Receiver to pursue such claims. (Dkt. 16, ¶ 43) That is consistent with governing law. *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 758 (7th Cir. 1995) ("the fact that the corporations were alter egos of [the defendant] would not affect the receiver's standing to bring these fraudulent conveyance suits")*; SEC v. Forte*, Nos. 09-63, 09-64, 2012 WL 1719145, *4, 6-7 (E.D. Pa. May 16, 2012) (receiver's standing is legal issue; "ample authority establishes that a receiver has standing to assert fraudulent transfer claims as to estate assets") (citing, *inter alia, Scholes*).  BC57 further ignores and does not bring to the Court's attention other authority in this District establishing that "a federal receiver has standing to bring fraudulent conveyance claims on behalf of creditors."  *See, e.g., Big Shoulders Capital LLC v. San Luis & Rio Grande Railroad, Inc.*, No. 19 C 6029, 2019 WL 6117578, *3 (N.D. Ill. Nov. 18, 2019), *dismissed in part, remanded in part by* 13 F.4th 560 (7th Cir. 2021).

As the numerous position statements and claims submitted by various Group 1 claimants verify, the prior mortgagees now in competition with BC57 were not paid off.  Instead, the entire transaction with BC57 further complicated and worsened the overall financial position of the Receivership entities, leaving them significantly harmed by multiplying the number of secured creditors and increasing debt obligations.  Indeed, as reflected by the bank account statement that was produced by the Receiver pursuant to BC57's Motion for Discovery (Dkt. 1128), there were three things that EquityBuild did with the money provided by BC57, none of which went to pay investors in these properties and none of which is acknowledged by BC57 in its response.  (*See* **Exhibit 1** at 4)  First, there was an immediate wire payment to an account controlled by Jerry Cohen titled "Tikkun," which purportedly repaid a loan from that account that was made to a

different EquityBuild account in order to allow closing on the BC57 loan to occur.[1] The Tikkun account was used to perpetuate the Ponzi scheme in this way and by paying new monies to old investors for debts unrelated to the property, as previous testimony set forth, and upon which the Court relied in its affirmation that the Cohens were operating a Ponzi scheme:

> Focusing on transactions in the Tikkun Account from May 29, 2013, to August 31, 2015, as set forth in Exhibit No. 21, Tushaus[2] testified that a number of payments from Tikkun to the EquityBuild Defendants were to buy out an investor's position, not for reimbursements. (Id. at 37, 38 & Ex. 21, Schedule A.) And to the extent that funds from the EquityBuild Defendants were used to repay Tikkun, Tushaus identified situations in which investor money was deposited into an EquityBuild account, then deposited into another EquityBuild account, only to be transferred back into the Tikkun Account as repayments, with these transactions frequently occurring on the same day. (Id. at 42-45 & Ex. 21, Schedules B-1 to B-7.) In each instance, the source of funds for the repayment was Investor Monies. (Id.)

> Turning to the period from September 1, 2015, to May 30, 2018, Tushaus testified that Rebuilding America made no deposits into the Tikkun Account, while at the same time EquityBuild used Investor Monies to pay back its loans from Tikkun or to buy out an investor's position. (Id. at 46-47 & Exs. 22, 23, Schedules A, B.) Tushaus also traced funds from the Tikkun Account that were used to pay expenses for the Naples Property. [footnote omitted] (Id. at 47-48 & Ex. 23, Schedule C.)

> In summary, the EquityBuild Defendants—and thus, their investors—were the primary source of funds for the 3641 Account and Naples Property. (Id. at 48- 49.) Tushaus further explained that to the extent that Tikkun Account funds were loaned to the EquityBuild Defendants, they did not make enough money from rental income or interest to repay the Tikkun loans, so Investor Monies must have been used for repayments. (Id. at 49.)

---

[1] The BC57 loan required EquityBuild to deposit $1,510,000 in order to close (in fact funding the purported $1 million in renovations that BC57 claims were a benefit of its loan). (*See* **Exhibit 2**, Closing Statement from BC57 transaction) The September 2017 statement for the 6976 EquityBuild account (**Exhibit 3**) reflects that monies from the Tikkun account as well as EquityBuild's SSPH 7927 South Essex LLC account were wired to this account two days before closing on the BC57 transaction in order to allow the closing to occur, a Ponzi scheme trick used by the Cohens which used investors funds from other accounts having nothing to do with the properties in the transaction. Those are the "loans" that were then immediately repaid on the date of BC57 closing, as reflected on **Exhibit 1** (at page 4).

[2] Ann Tushaus is the forensic accountant for the SEC, whose analysis and testimony in this action has been a primary basis for establishing that the Cohens perpetrated a Ponzi scheme.

Dkt. 492 at 5-7.

Additionally, the September 2017 bank statement also shows that an immediate wire payment of $600,000 made was to another separate property account associated with the property at 7927-49 South Essex which was also a repayment of a loan from this separate property account with separate investors who had no relationship of any sort to the properties at issue in regards to the BC57 transaction. *See* note 1, *supra.*

Finally, the same statement reflects the transfer of $3,168,000 million to Chicago Title to purchase another property (11117 S Longwood) for which an additional 61 secured investors were then brought in, further continuing the scheme. The investor-lender claims are secured by a $5,200,000 mortgage (**Exhibit 4** (closing statement and mortgage)) against the Longwood property that was entered on September 29, 2017 (the very day the BC57 loan funded), which increased the debt and exposure of EquityBuild by that amount. Put differently, the Receivership entities have been injured by the "deepening of its insolvency, through increased exposure to creditor liability." *Schacht v. Brown,* 711 F.2d 1343, 1350 (7th Cir. 1983) (citation omitted).

These three transactions which reflect the disposition of the entirety of the monies received from BC57 highlight the Ponzi scheme and the lack of separation between EquityBuild, Inc. and EquityBuild Finance LLC ("EBF"). The $1,510,000 that EquityBuild, Inc. deposited with the title company in order to close the BC57 loan came from the EquityBuild account ending 6976. Those funds ($900,000) were transferred to that account on 9/27/17 from the Tikkun account ending 5298 and the SSPH 7927 S Essex, LLC account ending 9203 ($600,000). After the BC57 loan closed on 9/29/17, and the loan proceeds were deposited to the EBF account ending 8783, those "loans" from Tikkun and SSPH 7927 S Essex, LLC were immediately paid back from the EBF account ending 8783. Accordingly, purported loans made *to EquityBuild* to close the BC57 loan were

repaid *by EBF* after the loan proceeds were distributed. EBF then contributed the capital for EquityBuild to purchase another property, which it immediately mortgaged to new investors c/o EBF.

As such, the Receiver's avoidance claim is brought on behalf of the Receivership entities – including the Cohen "zombie" entities – which suffered harm as a result of BC57's $5.3 million dollar financing as their exposure to creditor liability increased and their financial position worsened. *See, e.g., Scholes*, 56 F.3d at 754. BC57's debt enabled the Cohens' scheme to continue until the SEC brought them down. The Receiver's standing is clear under applicable law.

## II.     The Ponzi Scheme Presumption Applies.

BC57 argues that the Ponzi scheme presumption is inapplicable, making a plethora of arguments ranging from questioning the legal authority supporting the presumption to claiming that EquityBuild and EquityBuild Finance operated a legitimate business and did not operate a Ponzi scheme. But, as the saying goes, those dogs won't hunt. When the Ponzi scheme presumption applies, as it does here, the element of actual intent to "hinder delay, or defraud any creditor" is established as a matter of law. And that is true here for the security interest in the five Group 1 properties that was fraudulently conveyed to BC57.

This Court has already found that EquityBuild and its affiliated receivership entities operated as a Ponzi scheme, as seen just recently in an order issued a few days ago. Dkt. 1222 at 1 ("In short, Jerome D. Cohen and Shaun Cohen (collectively 'the Cohens') used Equitybuild, Inc., Equitybuild Finance, and their subsidiaries (collectively 'Equitybuild') to conduct a Ponzi scheme, fraudulently inducing more than 900 investors to invest in residential real estate in Chicago."). The SEC's complaint established this, as did the supporting testimony leading to the entry of a TRO and Order Appointing Receiver, all of which was affirmed by the consent judgment entered

against the Cohens. (Dkt. 40) The judgment entered against the Cohens also included and was based upon a finding that "the Cohens began running a Ponzi scheme, using new investors' funds to pay earlier investors' interest payments." (Dkt. 533 at 2.) Other proofs of the scheme have been presented and served as the basis for court orders at various other points of this case. *See, e.g.,* Dkt. 492 at 3-7*, discussed supra* (Magistrate Judge report and recommendation, discussing Tushaus testimony); Dkt. 603 at 5-6 (affirming recommendation; "the [District] court agrees with the magistrate judge's assessment of the hearing evidence, which 'show[s] that the funds used [to purchase the Naples Property] came from [i]nvestor monies tied to the Cohen's Ponzi scheme" (citing Dkt. 492 at 3-7, 10-14)); Dkt. 533 at 2 (entry of a monetary judgment).") (citing SEC Complaint, ¶ 45). The fact that BC57 took a $5.3 million security interest in the five Group 1 properties from the Cohens at a time that those properties were already encumbered with over $10 million in investor lender debt is additional affirmation of this Court's determinations that the Cohens engaged in a Ponzi scheme, including with respect to the loan transaction involving BC57. (*See, e.g.,* Dkt. 1118 at 5-6) As described above, the factual record here shows that, contrary to BC57's suggestion that it provided a benefit, the funds it provided were used largely to fund new acquisitions to bring in new investors to perpetuate the scheme and replenish accounts of the perpetrators.

BC57's challenge to the legal underpinnings of the Ponzi presumption is of no moment. BC57's argument ranges from, on the one hand, asserting that the Illinois Supreme Court has not addressed the question (Dkt. 1217 at 39) to, on the other hand, recommending that this Court "should follow the Illinois Supreme Court's rule that actual fraud can never be presumed" (*id.* at 40). In an effort to support its view, BC57 invokes state court decisions from Minnesota and Texas. To be clear, the Ponzi scheme presumption is well-recognized in the law and applied by

courts around the country. *See, e.g., In re Bernard L. Madoff, Inv. Sec. LLC*, 12 F.4th 181 (2d Cir. 2021); *Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011) (applying Ponzi presumption). And, as BC57 recognizes, many federal courts in Illinois have followed suit when such issues have arisen. *See, e.g., Damian v. Heartland Bank & Tr. Co.,* 2021 WL 5937153 (N.D. Ill. Dec. 15, 2021); *In re Equip. Acquisition Resources Inc.,* 483 B.R. 823 (Bankr. N.D. Ill. 2012). And BC57's suggestion that Illinois law does not recognize that fraud can be presumed is itself incorrect. *See, e.g., Northwestern Memorial Hospital v. Sharif,* 2014 Ill. App. (1st) 133008, ¶ 19 (affirming bench trial verdict for judgment creditor; "Therefore, because the trial court found a presumption of fraud based on the circumstances surrounding a debtor's substantial asset transfer that directly impaired the rights of a creditor, the trial court was not required to declare whether the transfer was 'fraud in fact' or 'fraud in law'.").

As discussed above, the Ponzi scheme has been established and judicially recognized in this action, and has been at the heart of this entire proceeding including the claims process. There can be no legitimate dispute that the Ponzi presumption applies as a matter of law. *In re Bernard L. Madoff Inv. Sec. LLC,* 525 B.R. 871, 892 n.21 (S.D.N.Y. 2015) ("Under the Ponzi scheme presumption the existence of a Ponzi scheme demonstrates actual intent *as matter of law* because transfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.") (emphasis added; internal quote marks omitted).

BC57's no stone unturned approach leads it to the argument (despite the findings already made) that the Receiver cannot prove the existence of a Ponzi scheme because EquityBuild did not start as a Ponzi scheme, but devolved into one. (Dkt. 1217 at 43-44) But the law is not as wooden as BC57 portrays. Whether a Ponzi scheme originated as one is not dispositive. What is critical is that the Ponzi scheme was in operation during all times material to the dispute. *See In re*

*United Development, Inc.,* 2007 WL 7541011 (Bankr. A.P. 9th Cir Aug. 7, 2007)*; see also In re Norvergence, Inc.,* 405 B.R. 709, 730 (Bankr. D.N.J. 2009) (recognizing that "even if Debtor's business operations do not exactly match the description of a Ponzi Scheme," a trustee may "still continue to characterize the business model as a Ponzi Scheme," thereby meeting the intent prong of a fraudulent transfer claim.) In *SEC v. Huber*, 702 F.3d 903 (7th Cir. 2012), the Seventh Circuit recognized the existence of Ponzi scheme even though the defendant's fraudulent activity arose a few years after he began operating as a legitimate trading firm: "He had started the funds in 1996 but by 1998 or 1999 had converted them (secretly of course) to a Ponzi scheme in order to cover losses that the funds had incurred." *Id.* at 904.

Here, there is no credible dispute – and no facts to the contrary – that in the September 2017 time period when BC57 entered the picture, EquityBuild was deep in the midst of a Ponzi scheme, a point at least impliedly conceded by BC57 in its own recitation of the evidence presented to the Court. (Dkt. 1217 at 45 (discussing Tushaus testimony))[3] The evidence presented, including the evidence described above, demonstrates that the Cohens were involved in a Ponzi scheme at all times material to this dispute, including as to the transaction in which a security interest in the Group 1 properties was transferred to BC57.

Arguments similar to BC57's have been raised and soundly rejected by other courts. For example, in *Gredd v. Bear, Stearns Sec. Corp.* (*In re Manhattan Inv. Fund Ltd.*), 310 B.R. 500, 510-11 (Bankr. S.D.N.Y. 2002), *leave to appeal denied*, 288 B.R. 52 (S.D.N.Y. 2002), a chapter 11 trustee sued Bear Stearns to avoid and recover margin payments as intentional fraudulent

---

[3] Indeed, there is evidence the Ponzi scheme commenced years before the BC57 transaction. Attorney Gordon Hirsch who worked on EquityBuild transactions through the time of his suicide in 2012, revealed in his suicide notes that EquityBuild was running a Ponzi scheme. (*See* **Exhibit 5** (includes various notes from G. Hirsch and others))

transfers and relied on the Ponzi scheme presumption to establish the fund's actual intent to defraud. Bear Stearns moved to dismiss, arguing that even if the fund was operated as a Ponzi scheme, the presumption was inapplicable to the transfers at issue because the practice of short selling stocks was a legitimate business separate from the Ponzi scheme. *Id.* at 506. The district court rejected the argument given the nature of the Ponzi scheme and other improper conduct that utilized the margin payments:

> Bear Stearns' argument that actual fraudulent intent cannot be presumed in this case because the margin payments at issue were made in connection with a legitimate business outside of the Ponzi scheme—namely, the short selling of securities—is ludicrous.

*Id* at 511-12. A similar argument was raised and rejected in the *Madoff* litigation: "The purchase of T-Bills did not transform BLMIS into a legitimate enterprise or prohibit the Trustee's reliance on the Ponzi scheme presumption. Ponzi scheme operators often engage in some legitimate transactions but if the legitimate transactions further the scheme or are funded by the scheme they are part of the scheme." *Sec. Inv'r Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 691 (Bankr. S.D.N.Y. 2019).

BC57's argument was also raised and rejected in another real estate development Ponzi scheme. *See Wing v. Layton*, 957 F. Supp. 2d 1307 (D. Utah 2013). In that case, a company (VesCor Capital Corp.) ostensibly operated as a real estate development enterprise promising substantial returns to its investors. The business however was not profitable, and VesCor actively concealed its losses by paying earlier investors with money raised from later investors. *Id.* at 1309-10. VesCor was eventually placed into receivership and the receiver sued a former officer of VesCor (defendant Layton) seeking the return of funds he received from VesCor as intentional fraudulent transfers under state law. *Id.* at 1313. The receiver invoked the Ponzi scheme presumption because "VesCor as a whole operated as a Ponzi scheme." *Id.* at 1314. Layton

countered that even if VesCor was a Ponzi scheme, the Ponzi scheme presumption did not apply to the relevant transfers because the two real estate projects with which he was most involved (KOJO and Siena Office Park) were profitable and independent of any Ponzi scheme which may have existed. *Id.* at 1314. The District Court rejected Layton's effort to disaggregate the legitimate transactions from the Ponzi scheme:

> [T]he fact that the KOJO and Siena Office Park projects might have been profitable—which the Receiver strongly disputes—misses the point. The Receiver appears to not dispute that development activity occurred with the VesCor enterprise. [] Even so, seemingly legitimate business activity does not insulate companies from a finding that they were operated as part of a Ponzi scheme. As the Receiver points out, ponzi schemes sometimes use legitimate operations to attract investors, but this does not insulate those operations from the taint of the Ponzi scheme. [] *See, e.g.*, *Jobin v. McKay*, 84 F.3d 1330, 1332 (10th Cir.1996) (Ponzi scheme existed where its perpetrator used the company's legitimate operations as a computer sales and leasing company as a front); *Sender v. Simon*, 84 F.3d 1299, 1302 (10th Cir.1996) (Ponzi scheme existed in partnership hedge fund where "trading resulted in net profits in a few years," though "in most years the Hedged Investments operation realized net trading losses").

*Id.* at 1315. Regardless of their profitability, the court concluded that the KOJO and Sienna Office Park projects were part of the larger VesCor scheme and the money that funded those projects came from VesCor's commingled funds. *Id.*

This Court's previous rulings also reflect that EquityBuild was not operating a legitimate business, even if elements of it appeared so. The business model was a Ponzi scheme, which acted to defraud investors and harm the Receivership entities as new investors in properties were brought in to pay back old obligations on different properties. BC57's reliance on *Taneja* could not be more misplaced. The *Taneja* court recognized that the business in that matter could have survived without the fraud; here, it could not (indeed, without the fraud it was collapsing under the weight of the debt that had been created). *In re Taneja,* Bankr. No. 08-13293-RGM, Adversary No. 10-1225, 2012 WL 3073175 (Bankr. E.D. Va. July 30, 2012).

BC57's argument that there is no tie between its transaction and the Ponzi scheme cannot be taken seriously. As discussed above, EquityBuild used the BC57 refinancing to continue the Ponzi scheme by transferring and commingling funds between EquityBuild and EBF bank accounts and using the new funds to bring in a new property and new investors so that such monies could then be used to pay prior obligations on other properties. Consistent with such analysis, the Ponzi presumption is appropriately applied in this context.

## III.    BC57 Was on Inquiry Notice.

Under existing law, "inquiry notice … signifies awareness of suspicious facts that would have led a reasonable firm, acting diligently, to investigate further and by doing so discover wrongdoing." *In re Sentinel Mgt. Grp., Inc.*, 809 F.3d 958, 961 (7th Cir. 2016). The Receiver has shown through the record presented that BC57 was on inquiry notice because it had information showing suspicious activities of the Cohens, EquityBuild, and their agents. BC57 seeks to defeat that evidence by focusing solely upon what it knew. (Dkt. 1217 at 49) BC57 does not argue that it acted diligently to investigate further in response to suspicious information that it obtained during the loan process. Nor does BC57 discuss or properly apply Seventh Circuit law on inquiry notice, which was explained by the Court in this way:

> The opinion suggests that the bank, as long as it did not believe that Sentinel had pledged customers' assets to secure its loans without the customers' permission, was entitled to accept that security for its loans without any investigation. That's incorrect, because inquiry notice is not knowledge of fraud or other wrongdoing *but merely knowledge that would lead a reasonable, law-abiding person to inquire further—would make him in other words suspicious enough to conduct a diligent search for possible dirt.* See *In re Sentinel Management Group, Inc., supra,* 728 F.3d at 668 n. 2; *In re M & L Business Machine Co., Inc., supra,* 84 F.3d at 1338.
>
> That the bank had information that should have created the requisite suspicion is illustrated by a note of Mark Rogers, the bank's Managing Director of Financial Institutions Credit, to other employees of the bank who like him worked on the Sentinel account. Rogers was responding to a message, from one of those other employees, that had listed Sentinel's collateral. The list puzzled Rogers. He

responded: "How can they [i.e., Sentinel] have so much collateral? With less than $20MM [i.e., 20 million dollars] in capital I have to assume most of this collateral is for somebody else's benefit. Do we really have rights on the whole $300MM?" (Actually the "$20MM in capital" to which Rogers referred was incorrect; the correct figure was between $2 and $3 million.) The "somebody else" is an obvious reference to Sentinel's customers, owners of the accounts held by Sentinel; it was their money that was being used—improperly—to secure the bank's loans to Sentinel. Rogers' puzzlement was enough, given his position in the bank, to place the bank on inquiry notice and thus require it to conduct an investigation of what Sentinel was using to secure a $300 million debt when it had capital of no more than $3 million.

He received a nonresponsive answer to the question in his note: "We have a clearing agreement [with Sentinel] which gives us a full lien on the box position outlined below." There was no further inquiry.

*In re Sentinel,* 809 F.3d at 962 (emphasis supplied).

As in *Sentinel,* the evidence here shows that BC57 representatives had what they themselves saw as suspicious information regarding EquityBuild's right to release the investor lenders' pre-existing mortgages, *see, e.g.,* **Exhibit 6**, BC570000998 (acknowledging that the existing debt to be refinanced was from "investors [who] actually came in as private lenders" and noting that "Cohen is representing that they have the right to remove them"); **Exhibit 7,** BC570000940-42 (stating that EquityBuild bought these properties with a partner with whom it had a falling out and which BC57 acknowledged at the time that it "need[ed] to understand what happened with their partner"). But BC57 did nothing to investigate these conflicting stories, leaving unaddressed a host of inconsistencies and irregularities about the mortgagees, payoffs letters, Cohen's dubious background and prior bankruptcies.

Indeed, even though the publicly available mortgages identified every individual mortgagee (BC570009566-74, BC570017332-40, BC570017363-70, BC570012935-42, BC570012919-26, attached as **Group Exhibit 8**), and *not* Cohen – and the title company rejected EquityBuild's first attempt to have Cohen sign the mortgage releases (**Exhibit 9,** BC570013027-

12

28) – the corresponding payoff letters did not identify the individual mortgagees or specify the principal balances of their respective loans (**Group Exhibit 10**, BC570017297, BC570017313, BC570017318, BC570017323). Further, the purported releases of the mortgages were *not* executed by the mortgagees (**Group Exhibit 11,** BC570017283-92). Yet, BC57 made no inquiry into the legitimacy of Cohen's purported right to remove the mortgagees or address any of these other suspicious issues.

And there were other facts known to BC57 that it failed to investigate, if not consciously ignored. For example, BC57 knew that while the existing investor-lenders' mortgages were in excess of $10,000,000, the payoff letters in its transaction were only for half of that amount. The loans were interest-only and BC57 knew the properties were operating at a loss. (**Exhibit 12**, 30(b)(6) Deposition of BC57 LLC (Jarjosa), at 109: 1-5) These facts, indisputably known to BC57, provided BC57 with suspicious information that would lead a reasonable person to inquire further. *See In re Manhattan Inv. Fund Ltd.,* 397 B.R. 1, 23–24 (S.D.N.Y. 2007) (knowledge that transferor was simultaneously suffering huge losses and reporting 20% profit to investors).

Another fact known to BC57, which BC57 found "notable," was the inconsistency in the number of payoff letters provided relative to the number of properties refinanced. (**Exhibit 13**, BC570006615-18; **Exhibit 14**, BC570013938-51) At the time BC57 had an e-mail from EquityBuild admitting that there was an issue with the payoff letters and the instructions they internally made to address the situation, thus providing a clear sight through the bogus façade EquityBuild was working to present:

> We need Payoffs to be remitted to [EquityBuild Finance] not [EquityBuild], *the optics aren't good*. Can you change the account name? It references [EquityBuild] in the top half and [EquityBuild Finance] in the bottom half, need it all to be EBF.

(**Exhibit 15,** Nielsen Dep. Ex. 6 (emphasis added)) This same e-mail reflected that EquityBuild (the borrower) was instructing the lender (EquityBuild Finance) – while *both* were under the

Cohens' control – as to the dollar amounts to use for the payoff quotes, another suspicious event. *Id.* And the mortgage releases ultimately accepted in connection with the refinance (**Exhibit 11**) reflected that EquityBuild (the borrower) *was releasing its own mortgages*, even though a borrower cannot release its own mortgage – only the lender can. *See, e.g., In re Model Imperial, Inc.,* 250 B.R. 776, 779 (Bankr. S.D. Fla. 2000) (bank transferee's conduct "was inconsistent with industry practice and in violation of its own written policies and procedures").

Cases that BC57 relies upon do not change the result here. As the *Bayou* case relied upon by BC57 recognizes (Dkt. 1217 at 49), there are a variety of circumstances and issues that put someone on inquiry notice. *See In re Bayou Grp., LLC,* 439 B.R. 284, 310-17 (S.D.N.Y. 2010) (citations omitted). Furthermore, after a review of the circumstances in *Bayou*, the court simply determined that there were questions of fact surrounding the inquiry notice question. BC57's reliance upon *In re First Nat'l Parks Exchange, Inc.,* 2000 WL 988177 (N.D. Ill. July 18, 2000) – which predates the Seventh Circuit's discussion in *Sentinel* by fifteen years – is also misplaced, as that case recognizes "a transferee cannot stick its head in the sand, clinging to its subjective belief while purporting to ignore signs of fraud or insolvency on the part of the transferor," which is exactly what the record shows BC57 did here.

## IV.  BC57's Attack on the Receiver's Neutrality Is an Effort at Misdirection which Is Factually and Legally Unsupported.

Well recognizing that its own actions and failures have placed it in the position in which it finds itself at this moment, and without support of fact or law, BC57 turns its aim upon the Receiver, claiming that his positions here fail to reflect neutrality and do not constitute recommendations to assist the Court because they do not address points that BC57 believes important or critical. (Dkt. 1217 at 7-8) Such arguments reflect more desperation than fact, but the Receiver will take a few moments to address BC57's ad hominem discussion.

14

The fact that the Receiver has taken an adverse position as to a claimant does not make the Receiver non-neutral. Such arguments were raised and rejected in *Elliott,* where the appellants argued that the receiver was an adverse party and all of his work was to deprive the appellants of their secured interest. *Elliott*, 953 F.2d at 1577. And, also just as in *Elliott*, "[t]his is not exactly true, for the Receiver is an officer of the court." *Id.* (citations omitted). As the court in *Elliott* noted, "[e]ven though the Receiver may at times take adverse positions to certain claimants, the Receiver acts under supervision of the court, *id.*; for the court must independently approve the Receiver's legal and factual findings." *Id.* (citing *Morrison–Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1218 (9th Cir. 1987), *vacated on other grounds*, 490 U.S. 1001 (1989)).[4]

## CONCLUSION

For the reasons set forth above, as well as all information set forth by the Receiver in his avoidance disclosure, its responses to BC57's discovery, the various submissions of the claimants in Group 1 and the those of the Securities and Exchange Commission, the Receiver respectfully requests that the Court find, if it determines that BC57 is in first position, that its mortgage should be voided under the Uniform Fraudulent Transfer Act, 740 ILCS 160.

---

[4] Further, it is baseless for BC57 to argue that the Receiver's recommendation on priority reflects non-neutrality because the Receiver did not specifically address each of BC57's arguments. The Receiver does not need to create an entire new set of arguments and issues if the Receiver does not believe it is cost effective or productive to do so. That maxim is particularly true here not only because of the number of submissions made by claimants, but also when one considers the vehement effort made by BC57 (and its brethren) in objecting to every action by the Receiver throughout this matter. The irony of the position of BC57 here – effectively that the Receiver has done too little -- does not go unnoticed, and is in any event inaccurate. Case in point involves BC57's claim that its "authorization" argument is the proverbial golden ticket. It is not. As well explained by the SEC (Dkt. 1216 at 6-8), BC57's reliance on such argument is misplaced. The Receiver does not need to reinvent the wheel on these issues when the others have more than adequately address such matters. Reliance upon other briefs submitted in this matter is appropriate when possible, and consistent with the Receiver's effort to streamline this process, limit fees, and aid the Court in an expeditious resolution of these matters.

Dated:  March 28, 2022                          Kevin B. Duff, Receiver

                                    By:    /s/ Michael Rachlis
                                           Michael Rachlis
                                           Jodi Rosen Wine
                                           Rachlis Duff & Peel, LLC
                                           542 South Dearborn Street, Suite 900
                                           Chicago, IL 60605
                                           Phone  (312) 733-3950
                                           mrachlis@rdaplaw.net
                                           jwine@rdaplaw.net

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-5587 |
| v. | ) ) | Hon. John Z. Lee |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** | ) ) ) ) | Magistrate Judge Young B. Kim |
| Defendants. | ) ) | |

## INDEX OF EXHIBITS TO RECEIVER'S REPLY
## TO BC57 LLC'S SUBMISSION ON AVOIDANCE ISSUES

Exhibit 1      Wells Fargo Statement *8783 September 2017

Exhibit 2      Closing Statement BC57, LLC

Exhibit 3      Wells Fargo Statement *6976 September 2017

Exhibit 4      Closing Statement & Mortgage

Exhibit 5      Notes from Gordon Hirsch and others

Exhibit 6      BC570000998

Exhibit 7      BC570000940-42

Exhibit 8      BC570009566-74, BC570017332-40, BC570017363-70, BC570012935-42, and

BC570012919-26

Exhibit 9      BC570013027-28

Exhibit 10     BC570017297, BC570017313, BC570017318, and BC570017323

Exhibit 11     BC570017283-92

Exhibit 12     30(b)(6) Deposition of BC57 LLC (Jarjosa) (excerpts)

Exhibit 13      BC570006615-18

Exhibit 14      BC570013938-51

Exhibit 15      Nielsen Deposition Exhibit 6

# Analyzed Business Checking

Account number: ▓▓▓▓ 8783 ■ September 1, 2017 - September 30, 2017 ■ Page 1 of 6



EQUITYBUILD FINANCE, LLC
5068 W PLANO PKWY STE 300
PLANO TX 75093-4409

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
**1-800-CALL-WELLS** (1-800-225-5935)

*Online: wellsfargo.com*

*Write:* Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR 97228-6995

 IMPORTANT ACCOUNT INFORMATION

For business banking customers who receive a paper statement for an analyzed checking account, the standard
monthly fee per statement is $5.00 per account.
For wholesale banking customers, the paper statement fee may vary. Please refer to the annual pricing terms applicable
to your account.

## Account summary

### Analyzed Business Checking

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| ▓▓ 8783 | $1,652.70 | $8,381,113.90 | -$8,025,972.20 | $356,794.40 |

### Credits

**Electronic deposits/bank credits**

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/01 | 25,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Q8Pzjv Business Checking Loan |
| | 09/01 | 175,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qb29Xg Business Checking ACH Files |
| | 09/07 | 15,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qrxf22 Business Checking Cover Overdraft |
| | 09/07 | 5,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qt2Pjh Business Checking ACH |
| | 09/08 | 1,443.59 | Desktop Check Deposit |
| | 09/08 | 15,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03Qy2Tgv Business Checking ACH |
| | 09/12 | 30,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03R6Ph87 Business Checking Cover Overdraft |

**Exhibit**

**1**

Account number: ████8783 ■ September 1, 2017 - September 30, 2017 ■ Page 2 of 6



**Electronic deposits/bank credits** *(continued)*

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/12 | 60,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03R75P3Y Business Checking ACH |
| | 09/13 | 17,183.93 | Desktop Check Deposit |
| | 09/15 | 5,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03Rlcj22 Business Checking ACH |
| | 09/18 | 100.00 | Recurring Transfer From Equitybuild Finance, LLC Business Market Rate Savings Ref #Op03Rm4Cpm xxxxxx9081 |
| | 09/18 | 150,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03Rrv9NM Business Checking Wire to Bak |
| | 09/18 | 3,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03Rryfgy Business Checking Interest to Bak |
| | 09/20 | 1,000,000.00 | Online Transfer From Equitybuild Finance, LLC Ref #Ib03Ry7Mtc Business Checking Paybacks |
| | 09/20 | 550,000.00 | Online Transfer From Equitybuild Finance, LLC Ref #Ib03Ry7Psf Business Checking Paybacks |
| | 09/21 | 122,117.05 | WT Fed#00792 Wintrust Bank /Org=Rock Fusco & Connelly LLC Srf# 170921144652Aha2 Trn#170921150308 Rfb# |
| | 09/25 | 1,208.33 | ACH Returns - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/25 | 925,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03Scqf5V Business Checking ACH and Wires |
| | 09/25 | 50,554.79 | Online Transfer From Equitybuild Finance, LLC Ref #Ib03Scqhd4 Business Checking ACH and Wires |
| | 09/26 | 1,777.78 | ACH Returns - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/26 | 29,833.33 | Online Transfer From Equitybuild Inc Ref #Ib03Sg72TX Business Checking Wire Entrust |
| | 09/27 | 4,045.10 | Desktop Check Deposit |
| | 09/29 | 1,366,875.00 | WT Fed#01231 Cibc Bank USA /Org=Near North National Title LLC Srf# 20172720385300 Trn#170929148418 Rfb# |
| | 09/29 | 1,225,125.00 | WT Fed#01233 Cibc Bank USA /Org=Near North National Title LLC Srf# 20172720387900 Trn#170929149008 Rfb# |
| | 09/29 | 1,185,600.00 | WT Fed#01235 Cibc Bank USA /Org=Near North National Title LLC Srf# 20172720388700 Trn#170929149486 Rfb# |
| | 09/29 | 1,167,250.00 | WT Fed#01245 Cibc Bank USA /Org=Near North National Title LLC Srf# 20172720388300 Trn#170929150522 Rfb# |
| | 09/29 | 100,000.00 | Online Transfer From Equitybuild Finance, LLC Ref #Ib03Spk9Gj Business Checking Cover Check |
| | 09/29 | 150,000.00 | Online Transfer From Equitybuild Finance, LLC Ref #Ib03Sqq9Gr Business Checking ACH |
| | | **$8,381,113.90** | **Total electronic deposits/bank credits** |
| | | **$8,381,113.90** | **Total credits** |

Account number: ▨▨▨ 3783 ■ September 1, 2017 - September 30, 2017 ■ Page 3 of 6



## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/01 | 35.00 | Overdraft Fee for a Transaction Received on 08/31 $5,527.64 Check # 05449 |
| | 09/01 | 27,555.00 | WT Fed#02164 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000006806867 Trn#170901184955 Rfb# 445 |
| | 09/01 | 516.66 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/01 | 1,163.08 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/01 | 80,005.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/05 | 835.49 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/05 | 2,742.71 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/07 | 35.00 | Overdraft Fee for a Transaction Received on 09/06 $15,333.33 Check # 05423 |
| | 09/07 | 1,048.26 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/08 | 800.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/08 | 2,077.78 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/08 | 3,035.22 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/11 | 35.00 | NSF Return Item Fee for a Transaction Received on 09/08 $34,279.15 Check # 05387 |
| | 09/12 | 2,150.00 | Online Transfer to Equitybuild Inc Ref #Ib03R6Sdnz Business Checking Transfer to Cover Owner Payments |
| | 09/12 | 1,250.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/12 | 1,866.78 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/12 | 50,000.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/14 | 150.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/15 | 100.00 | Recurring Transfer to Equitybuild Finance, LLC Business Market Rate Savings Ref #Op03Rfq8Q3 xxxxxx9081 |
| | 09/15 | 4,850.01 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/15 | 21,638.36 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/15 | 223.58 < | Business to Business ACH Debit - Hanover/Citizens Prem Coll 170915 011709120006339 Equitybuild Finance LI |
| | 09/18 | 101,958.39 | WT Fed#01773 Eastern Savings Ba /Ftr/Bnf=Walter Becker Srf# Gw00000006934944 Trn#170918111310 Rfb# 463 |
| | 09/18 | 25,489.64 | WT Fed#01648 Bb&T Maryland /Ftr/Bnf=Jackie Becker Srf# Gw00000006934912 Trn#170918111321 Rfb# 464 |
| | 09/18 | 25,489.64 | WT Fed#02190 Jpmorgan Chase Ban /Ftr/Bnf=Joyce W Bak Revocable Trust Srf# Gw00000006934914 Trn#170918111325 Rfb# 465 |
| | 09/20 | 47,677.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/20 | 50,000.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/20 | 112,762.17 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/20 | 200,000.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/20 | 379,588.55 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/20 | 501,809.99 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/21 | 193,750.00 | WT Fed#00943 Bmo Harris Bank NA /Ftr/Bnf=Kirk Road Investments Srf# Gw00000007013933 Trn#170920174827 Rfb# 470 |
| | 09/21 | 17,000.00 | WT Fed#00882 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007014332 Trn#170920176312 Rfb# 473 |
| | 09/25 | 9,097.21 | WT Fed#04948 Hongkong & Shangha /Ftr/Bnf=Bluebridge Partners Limited Srf# Gw00000007106463 Trn#170925142094 Rfb# 481 |

Account number: ____ 3783 ■ September 1, 2017 - September 30, 2017 ■ Page 4 of 6



### Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/25 | 31,250.00 | WT Fed#05722 Bmo Harris Bank NA /Ftr/Bnf=Leroy Johnson Srf# Gw00000007106568 Trn#170925142131 Rfb# 482 |
| | 09/25 | 20,464.88 | WT Fed#05739 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007106492 Trn#170925142170 Rfb# 484 |
| | 09/25 | 43,541.27 | WT Fed#05519 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007106513 Trn#170925142205 Rfb# 485 |
| | 09/25 | 25,000.00 | WT Fed#05532 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007106516 Trn#170925142222 Rfb# 486 |
| | 09/25 | 60,000.00 | WT Fed#05552 Capital One, NA /Ftr/Bnf=R Moreland M 1609061 Srf# Gw00000007106599 Trn#170925142354 Rfb# 489 |
| | 09/25 | 30,000.00 | WT Fed#05777 Jpmorgan Chase Ban /Ftr/Bnf=Liwen Zhao Srf# Gw00000007106762 Trn#170925142414 Rfb# 490 |
| | 09/25 | 58,850.00 | WT Fed#05834 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007107154 Trn#170925143756 Rfb# 487 |
| | 09/25 | 242,202.37 | WT Fed#05836 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007106483 Trn#170925142152 Rfb# 483 |
| | 09/25 | 122,202.06 | WT Fed#05837 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007106530 Trn#170925142334 Rfb# 488 |
| | 09/26 | 29,883.33 | WT Fed#04094 Bank of America, N /Ftr/Bnf=The Entrust Group Srf# Gw00000007141565 Trn#170926135433 Rfb# 491 |
| | 09/28 | 22,073.68 | WT Fed#00032 Keybank National A /Ftr/Bnf=Iplan Group Srf# Gw00000007200959 Trn#170928089945 Rfb# 493 |
| | 09/28 | 113.96 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/28 | 500.00 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/28 | 2,763.82 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/28 | 56,886.45 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/28 | 126,060.54 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/29 | 35.00 | Overdraft Fee for a Transaction Received on 09/28 $332,947.00 Check # 05453 |
| | 09/29 | 900,000.00 | Online Transfer to Tikkun Holdings LLC Ref #Ib03Sqp95T Business Checking Repay Transaction Loan |
| | 09/29 | 600,000.00 | Online Transfer to Ssph 7927-49 S Essex, LLC Ref #Ib03Sqpwbw Business Checking Repay Loan |
| | 09/29 | 3,188,000.00 | WT Fed#02033 Bank of America, N /Ftr/Bnf=Chicago Title and Trust CO Srf# Gw00000007263074 Trn#170929183903 Rfb# 495 |
| | 09/29 | 2,423.61 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/29 | 26,538.61 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | 09/29 | 45,247.75 | ACH Prep Origintn - Equitybuild Fina - File 7878782339 Coid 1274934617 |
| | | **$7,500,772.85** | **Total electronic debits/bank debits** |

< *Business to Business ACH:*If this is a business account, this transaction has a return time frame of one business day from post date. This time frame does not apply to consumer accounts.

### Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| | 535.02 | 09/11 | 5356* | 129.17 | 09/12 | 5387 | 34,279.15 | 09/20 |
| 5278 | 385.70 | 09/12 | 5363* | 129.17 | 09/12 | 5388 | 19,377.29 | 09/05 |
| 5286* | 387.37 | 09/12 | 5386* | 350.67 | 09/01 | 5389 | 5,875.00 | 09/05 |

Account number: ████ 8783  ■  September 1, 2017 - September 30, 2017  ■  Page 5 of 6



## Checks paid (continued)

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|--------|--------|------|--------|--------|------|--------|--------|------|
| 5391* | 1,406.04 | 09/08 | 5414 | 62.52 | 09/11 | 5435* | 666.67 | 09/06 |
| 5392 | 2,677.80 | 09/01 | 5415 | 10,375.00 | 09/06 | 5436 | 129.17 | 09/12 |
| 5393 | 833.33 | 09/05 | 5416 | 1,157.74 | 09/06 | 5437 | 1,252.92 | 09/06 |
| 5395* | 4,255.93 | 09/06 | 5417 | 650.83 | 09/06 | 5438 | 666.67 | 09/01 |
| 5396 | 2,732.20 | 09/01 | 5419* | 525.23 | 09/05 | 5439 | 626.67 | 09/01 |
| 5397 | 129.74 | 09/08 | 5420 | 916.67 | 09/05 | 5440 | 116.67 | 09/05 |
| 5398 | 2,111.10 | 09/15 | 5421 | 833.33 | 09/05 | 5441 | 1,291.67 | 09/05 |
| 5399 | 916.67 | 09/05 | 5422 | 700.00 | 09/08 | 5442 | 583.33 | 09/08 |
| 5400 | 500.00 | 09/07 | 5423 | 15,333.33 | 09/07 | 5443 | 1,072.50 | 09/06 |
| 5401 | 750.51 | 09/06 | 5424 | 70.00 | 09/06 | 5444 | 129.17 | 09/12 |
| 5402 | 3,240.00 | 09/11 | 5425 | 5,368.33 | 09/06 | 5445 | 133.33 | 09/08 |
| 5403 | 2,556.25 | 09/01 | 5426 | 2,960.00 | 09/05 | 5446 | 639.33 | 09/01 |
| 5404 | 549.88 | 09/01 | 5427 | 957.54 | 09/06 | 5447 | 233.33 | 09/06 |
| 5406* | 500.00 | 09/01 | 5428 | 666.67 | 09/05 | 5448 | 505.56 | 09/11 |
| 5407 | 330.00 | 09/07 | 5429 | 333.33 | 09/06 | 5449 | 5,527.64 | 09/01 |
| 5409* | 250.00 | 09/01 | 5430 | 533.33 | 09/07 | 5450 | 32,347.61 | 09/12 |
| 5410 | 250.00 | 09/01 | 5431 | 133.33 | 09/07 | 5451 | 581.54 | 09/13 |
| 5411 | 1,151.67 | 09/06 | 5432 | 4,000.00 | 09/05 | 5452 | 12,068.55 | 09/20 |
| 5412 | 417.75 | 09/01 | 5433 | 796.67 | 09/06 | 5453 | 332,947.00 | 09/29 |
| 5413 | 298.96 | 09/01 | | | | | | |

**$525,199.35**  Total checks paid

*  Gap in check sequence.

**$8,025,972.20**  Total debits

## Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 08/31 | 1,652.70 | 09/12 | 9,733.30 | 09/21 | 125,606.61 |
| 09/01 | 74,334.34 | 09/13 | 26,335.69 | 09/25 | 459,761.94 |
| 09/05 | 31,792.78 | 09/14 | 26,185.69 | 09/26 | 461,489.72 |
| 09/06 | 3,350.64 | 09/15 | 2,262.64 | 09/27 | 465,534.82 |
| 09/07 | 5,437.39 | 09/18 | 2,424.97 | 09/28 | 257,136.37 |
| 09/08 | 13,015.54 | 09/20 | 214,239.56 | 09/29 | 356,794.40 |
| 09/11 | 8,637.44 | | | | |

**Average daily ledger balance**  **$106,179.73**



# IMPORTANT ACCOUNT INFORMATION

As part of our commitment to make things right, we have entered into a $142 million class action settlement related to the opening of unauthorized accounts.

If you believe Wells Fargo opened a checking, savings, credit card or line of credit account for you without your permission, or if you purchased identity theft protection from us, you may be entitled to compensation from this fund.

Account number: ____3783 ▪ September 1, 2017 - September 30, 2017 ▪ Page 6 of 6



To find out more, go to www.WFSettlement.com or call 1-866-431-8549. You may be eligible for reimbursement of fees, compensation for potential impact on your credit, and an additional cash payment based on any money remaining in the fund after benefits and costs are paid out.

If you have specific questions about any of your accounts or services, please visit your Wells Fargo branch or call the toll-free number that appears on this statement. We realize you have a choice when it comes to banking. It is our privilege to be able to serve you.

NOTICE: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery PO Box 5058 Portland, OR. 97208-5058. You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

**NNNT, LLC**

222 North LaSalle Street, Suite 100, Chicago, IL 60601
Phone: (312)419-3900 | FAX: (312)419-0778

## BORROWER'S STATEMENT

| | |
|---|---|
| **Settlement Date:** September 27, 2017 | **Escrow Number:** NNNT-IL1706750 |
| **Disbursement Date:** September 27, 2017 | **Escrow Officer:** Kristen A. Cristia |

**Borrower:** EquityBuild, Inc.

**Property:** 7201 S. Constance Ave.
Chicago, IL 60649

**Property:** 7625-33 S. East End Ave.
Chicago, IL 60649

**Property:** 7635-7643 S. East End Ave.
Chicago, IL 60649

**Property:** 7750-7752 S. Muskegon Ave.
Chicago, IL 60649

**Property:** 7836 S. South Shore Dr.
Chicago, IL 60649

**Lender:** BC57, LLC, a Michigan limited liability company
280 North Old Woodward Avenue, Suite 104
Birmingham, MI 48009

| | | $ DEBIT | $ CREDIT |
|---|---|---|---|
| **FINANCIAL CONSIDERATION** | | | |
| Principal amount of new loan(s) | BC57, LLC, a Michigan limited liability company | | 5,328,433.43 |
| Incoming Borrower Funds | EquityBuild, Inc. | | 1,510,000.00 |
| **NEW LOAN CHARGES - BC57, LLC, a Michigan limited liability company** | | | |
| **Total Loan Charges: $1,718,603.43** | | | |
| Loan Points | BC57, LLC, a Michigan limited liability company | 213,137.34 | |
| Capital Improvements Reserve | Bloomfield Capital Asset Management | 1,446,770.00 | |
| Property Inspection Report | Bloomfield Capital Asset Management | 235.00 | |
| Survey | Bloomfield Capital Asset Management | 1,050.00 | |
| Flood Certification | Bloomfield Capital Asset Management | 80.00 | |
| Travel | Bloomfield Capital Asset Management | 2,904.09 | |
| Zoning Report | Bloomfield Capital Asset Management | 5,550.00 | |
| Market Report | Bloomfield Capital Asset Management | 995.00 | |
| Insurance Analysis | Bloomfield Capital Asset Management | 1,500.00 | |
| Legal Searches | Bloomfield Capital Asset Management | 2,882.00 | |
| Construction Management | Bloomfield Capital Asset Management | 15,000.00 | |
| Legal Fees - Local Counsel | Bloomfield Capital Asset Management | 3,000.00 | |
| Legal Fees - Bloomfield Counsel | Bloomfield Capital Asset Management | 25,500.00 | |
| **TITLE & ESCROW CHARGES** | | | |
| Settlement or closing fee | NNNT, LLC | 2,500.00 | |
| Title insurance | NNNT, LLC | 7,972.50 | |
| IL State Policy Fee | Chicago Title Insurance Company | 3.00 | |
| Insured Closing Letter Fee-Lender | Chicago Title Insurance Company | 25.00 | |
| Insured Closing Letter Fee-Borrower-Refi | Chicago Title Insurance Company | 50.00 | |
| GAP - Buyer/Borrower | NNNT, LLC | 250.00 | |
| Later Date Examination | NNNT, LLC | 150.00 | |
| Commitment Update Fee | NNNT, LLC | 150.00 | |
| Search and Examination Fees (5 Properties) | NNNT, LLC | 3,750.00 | |

**Exhibit**

**2**

| | $ DEBIT | $ CREDIT |
|---|---|---|
| **TITLE & ESCROW CHARGES, CONTINUED** | | |
| Water Certification Processing and Certificate Fees (5)    NNNT, LLC | 650.00 | |
| Tax Payment Service (5)    NNNT, LLC | 250.00 | |
| Commercial Closing Fee (IL1706794)    NNNT, LLC | 450.00 | |
| Insured Closing Letter Fee-Lender (IL1706794)    NNNT, LLC | 25.00 | |
| Insured Closing Letter Fee-Borrower-Refi (IL1706794)    NNNT, LLC | 50.00 | |
| GAP - Buyer/Borrower (IL1706794)    NNNT, LLC | 250.00 | |
| Later Date Examination (IL1706794)    NNNT, LLC | 150.00 | |
| Date Down Endorsement (IL1706794)    NNNT, LLC | 1,500.00 | |
| ALTA Endorsement 12-06 (Aggregation) (IL1706794)    NNNT, LLC | 175.00 | |
| Search and Examination Fees    NNNT, LLC | 750.00 | |
| ALTA Endorsement 25-06 (Same As Survey) (Parcel 2)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 17-06 (Access and Entry) (Parcel 2)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 25-06 (Same As Survey) (Parcel 3)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 17-06 (Access and Entry) (Parcel 3)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 25-06 (Same As Survey) (Parcel 4)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 17-06 (Access and Entry) (Parcel 4)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 25-06 (Same As Survey) (Parcel 5)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 17-06 (Access and Entry) (Parcel 5)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 18.1-06 (Multiple Tax Parcel)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 3.1-06 (Zoning-Completed Structure) (Parcel 1)    NNNT, LLC | 600.00 | |
| ALTA Endorsement 12-06 (Aggregation)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 17-06 (Access and Entry) (Parcel 1)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 3.1-06 (Zoning-Completed Structure) (Parcel 2 and 3)    NNNT, LLC | 600.00 | |
| ALTA Endorsement 3.1-06 (Zoning-Completed Structure) (Parcel 4)    NNNT, LLC | 600.00 | |
| ALTA Endorsement 3.1-06 (Zoning-Completed Structure) (Parcel 5)    NNNT, LLC | 600.00 | |
| Encroachment Endorsement No. 1    NNNT, LLC | 750.00 | |
| ALTA Endorsement 25-06 (Same As Survey) (Parcel 1)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 27-06 (Usury)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 28-06 (Easement-Damage Or Enforced Removal)    NNNT, LLC | 750.00 | |
| ALTA Endorsement 9-06 (Restrictions, Encroachments, Minerals - Loan Policy)    NNNT, LLC | 500.00 | |
| Arbitration Endorsement (Loan)    NNNT, LLC | 175.00 | |
| ALTA Endorsement 17.2-06 (Utility Access)    NNNT, LLC | 175.00 | |

Policies to be issued:
Loan Policy
Coverage: $5,328,433.43    Premium: $7,972.50 Version: ALTA 2006 Loan Policy

**RECORDING CHARGES**

| | | | $ DEBIT | |
|---|---|---|---|---|
| Recording fees    Near North National Title | | | 650.00 | |

**BORROWER'S STATEMENT - Continued**

| | | $ DEBIT | $ CREDIT |
|---|---|---|---|
| **OTHER DEBITS/CREDITS** | | | |
| Payoff 7201 Constance | Equity Build Finance, LLC | 1,366,875.00 | |
| Payoff 7625 S East End / 7635 East End | Equity Build Finance, LLC | 1,225,125.00 | |
| Payoff 3074 E Cheltenham | Equity Build Finance, LLC | 1,167,250.00 | |
| Payoff 7752 S Muskegon Ave. | Equity Build Finance, LLC | 1,185,600.00 | |
| **MISCELLANEOUS CHARGES** | | | |
| Legal Fees Prior | Rock Fusco & Connelly, LLC | 3,945.59 | |
| Legal Fees Current | Rock Fusco & Connelly, LLC | 2,850.00 | |
| Legal Fees | Shaw Fishman Glantz & Towbin LLC | 3,000.00 | |
| 2016 Real Estate Taxes (20-25-119-001) | Cook County Collector's Office | 34,825.43 | |
| 2016 Real Estate Taxes (20-25-310-008) | Cook County Collector's Office | 24,671.75 | |
| 2016 Real Estate Taxes (20-25-310-009) | Cook County Collector's Office | 24,671.75 | |
| 2016 Real Estate Taxes (21-30-400-034) | Cook County Collector's Office | 15,505.32 | |
| 2016 Real Estate Taxes (21-30-414-040) | Cook County Collector's Office | 27,417.88 | |
| Cook County Tax Payment Service Fee (5 @ $7.00) | Cook County Collector's Office | 35.00 | |
| Water Bills | Chicago Dept. of Water Management | 11,281.78 | |
| **Subtotals** | | 6,838,433.43 | 6,838,433.43 |
| **TOTALS** | | 6,838,433.43 | 6,838,433.43 |

I have carefully reviewed the Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

BORROWER:

SSDF5 Portfolio I, LLC

By: SSDF5 Holdco I, LLC
Its: Managing Member

By: South Shore Property Holdings LLC
Its: Manager

BY: _____
Jerome H. Cohen
Its: Managing Member

# Analyzed Business Checking

Account number: ⬚6976 ■ September 1, 2017 - September 30, 2017 ■ Page 1 of 10



EQUITYBUILD INC
OPERATING ACCOUNT - 4/2015
1083 N COLLIER BLVD # 132
MARCO ISLAND FL 34145-2539

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
**1-800-CALL-WELLS** (1-800-225-5935)

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR 97228-6995

---

 IMPORTANT ACCOUNT INFORMATION

For business banking customers who receive a paper statement for an analyzed checking account, the standard
monthly fee per statement is $5.00 per account.
For wholesale banking customers, the paper statement fee may vary. Please refer to the annual pricing terms applicable
to your account.

---

## Account summary

### Analyzed Business Checking

| Account number | Beginning balance | Total credits | Total debits | Ending balance |
|---|---|---|---|---|
| ⬚6976 | $27,561.24 | $4,968,660.67 | -$4,924,269.38 | $71,952.53 |

---

## Credits

### Electronic deposits/bank credits

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/01 | 12,500.00 | WT Fed#04728 Bmo Harris Bank NA /Org=4533-37 S Calumet LLC Srf# Har170901131234 Trn#170901116329 Rfb# |
| | 09/01 | 25,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Q8Q3x3 Business Checking Loan |
| | 09/05 | 30,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qlcs4H Business Checking Loan |
| | 09/05 | 25,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qlm2Hd Business Checking Loan |
| | 09/05 | 44,512.50 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03QM29Gq Business Checking Profit Transfer |
| | 09/05 | 25,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qmy6Yr Business Checking Loan |
| | 09/06 | 6,900.00 | Online Transfer From South Side Development Fund 4, LLC Ref #Ib03Qp69Jk Business Checking Transfer Incoming Wires |

**Exhibit 3**

exhibitsticker.com



*Electronic deposits/bank credits (continued)*

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/06 | 9,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03Qqbxnp Business Checking Transfer Incoming Wire |
| | 09/06 | 22,000.00 | Online Transfer From Tikkun Holdings LLC Ref #Ib03Qqcssl Business Checking Loan From Tikkun for Newkirk |
| | 09/06 | 100,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qqglsr Business Checking Loan |
| | 09/07 | 20,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Qszxhx Business Checking Loan |
| | 09/08 | 50,000.00 | Online Transfer From South Side Development Fund 4, LLC Ref #Ib03Qw46SM Business Checking Transfer Incoming Wire |
| | 09/08 | 35,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03Qw47Yl Business Checking Transfer Incoming Wires |
| | 09/11 | 25,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03R4Pq7Y Business Checking Transfer Rita Aken Wire |
| | 09/11 | 50,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03R55Dsn Business Checking Loan |
| | 09/11 | 17,000.00 | Online Transfer From 1700 Juneway LLC Ref #Ib03R568Fr Business Checking Transfer Proceeds |
| | 09/12 | 55,000.00 | Desktop Check Deposit |
| | 09/12 | 25,000.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03R75Q2C Business Checking Loan |
| | 09/12 | 25,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03R79Mvn Business Checking Profit Transfer |
| | 09/13 | 25,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03R93T8T Business Checking Loan |
| | 09/13 | 2,500.00 | Online Transfer From Schroyer-Cohen P Ref #Ib03R9Ccpj Checking Reimburse Donation Wire |
| | 09/13 | 100,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03R9Dfc5 Business Checking Transfer Incoming Wires |
| | 09/18 | 3,857.46 | Wpd Management L ACH Pmt 170918 5023573044 Eb - General |
| | 09/18 | 4,300.29 | Wpd Management L ACH Pmt 170918 5023572660 Eb - General |
| | 09/18 | 4,881.91 | Wpd Management L ACH Pmt 170918 5023572563 Eb - General |
| | 09/18 | 6,115.82 | Wpd Management L ACH Pmt 170918 5023573075 Eb - General |
| | 09/18 | 7,643.20 | Wpd Management L ACH Pmt 170918 5023572989 Eb - 7750 Muskegon |
| | 09/18 | 9,621.62 | Wpd Management L ACH Pmt 170918 5023572810 Eb - General |
| | 09/18 | 10,878.70 | Wpd Management L ACH Pmt 170918 5023572690 Eb - General |
| | 09/18 | 24,711.20 | Wpd Management L ACH Pmt 170918 5023572589 Eb - General |
| | 09/18 | 75,000.00 | Desktop Check Deposit |
| | 09/18 | 900,000.00 | Online Transfer From Tikkun Holdings LLC Ref #Ib03Rs9F3L Business Checking Loan for Closing T4 |
| | 09/18 | 350,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03Rs9Hjw Business Checking Closing T4 |
| | 09/19 | 14,798.89 | WT Seq#23018 Eb South Chicago 2 LLC /Org= Srf# Trn#170919023018 Rfb# |
| | 09/19 | 2,500.00 | Online Transfer From Schroyer-Cohen P Ref #Ib03Rvd4N2 Checking Donation to Rabbi Katz at Jen |
| | 09/19 | 48,000.00 | Online Transfer From South Side Development Fund 4, LLC Ref #Ib03Rvhqw5 Business Checking Transfer Incoming Wires |



*Electronic deposits/bank credits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/19 | 100,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03Rvhv5F Business Checking Transfer Incoming Wires |
| | 09/19 | 14,013.32 | Online Transfer From Equitybuild Inc Ref #Ib03Rvhyt2 Business Checking Transfer Incoming Wires |
| | 09/20 | 70,425.76 | WT Fed#06197 Jpmorgan Chase Ban /Org=Bloomfield Capital Asset Management Srf# 1161400263Es Trn#170920074823 Rfb# Os1 of 17/09/20 |
| | 09/20 | 30,000.00 | Online Transfer From South Side Development Fund 4, LLC Ref #Ib03Rxkq9D Business Checking Transfer Incoming Wires |
| | 09/25 | 680,000.00 | Online Transfer From Equitybuild Inc Ref #Ib03SC637N Business Checking Transfer Incoming Wires |
| | 09/26 | 130,000.00 | Online Transfer From South Side Development Fund 4, LLC Ref #Ib03Sg6Xgc Business Checking Transfer Incoming Wires |
| | 09/27 | 900,000.00 | Online Transfer From Tikkun Holdings LLC Ref #Ib03Shtrxv Business Checking Transaction Loan for Bloomfield Deal |
| | 09/27 | 600,000.00 | Online Transfer From Ssph 7927-49 S Essex, LLC Ref #Ib03Shtsyd Business Checking Loan |
| | 09/29 | 15,000.00 | WT Fed#09874 Jpmorgan Chase Ban /Org=Bloomfield Capital Asset Srf# 1565200272Es Trn#170929249815 Rfb# Os1 of 17/09/29 |
| | 09/29 | 187,500.00 | Online Transfer From Ssph 11117 S Longwood LLC Ref #Ib03Sqpztp Business Checking Transfer Proceeds |
| | 09/29 | 50,000.00 | Online Transfer From South Side Development Fund 4, LLC Ref #Ib03Sqt6Lz Business Checking Transfer for Taty Settlement |
| | | **$4,968,660.67** | **Total electronic deposits/bank credits** |
| | | **$4,968,660.67** | **Total credits** |

## Debits

### Electronic debits/bank debits

| Effective date | Posted date | Amount | | Transaction detail |
|---|---|---|---|---|
| | 09/01 | 10,000.00 | | WF Direct Pay-Payment- Lead Generation-Tran ID Dp18415639 |
| | 09/01 | 40.07 | < | Business to Business ACH Debit - Comed Util_Bil 1383164191 0901 Equitybuild Inc |
| | 09/01 | 59.58 | < | Business to Business ACH Debit - Comed Util_Bil 9364559098 0901 Equitybuild Inc |
| | 09/01 | 183.25 | < | Business to Business ACH Debit - Paychex Eib Invoice 170901 x72738100022805 Equitybuild Inc |
| | 09/01 | 12,665.75 | < | Business to Business ACH Debit - Paychex Tps Taxes 083017 72734600029665x Equitybuild Inc |
| | 09/01 | 5,000.00 | | American Express ACH Pmt 170901 W4702 Jerry Cohen |
| | 09/05 | 90.00 | | Purchase authorized on 09/01 Google *Svcsapps_R CC@Google.Com CA S307245048717306 Card 7193 |
| | 09/05 | 148.05 | | Purchase authorized on 09/02 Google *Svcsapps_H CC@Google.Com CA S307245054620845 Card 7193 |
| | 09/05 | 669.02 | | Purchase authorized on 09/02 Google *Svcsapps_E CC@Google.Com CA S307245415957159 Card 7193 |



### Electronic debits/bank debits *(continued)*

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/05 | 79.99 | Recurring Payment authorized on 09/03 Linkedin-338*40145 Lnkd.IN/Bill CA S587246792562656 Card 7201 |
| | 09/05 | 80.00 | Online Transfer to Equitybuild Inc Ref #Ib03Qlm43F Business Checking Bank Charges |
| | 09/05 | 6,750.00 | ACH Prep Originitn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/05 | 18,000.00 | ACH Prep Originitn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/05 | 10,000.00 | WF Direct Pay-Payment- Lead Generation-Tran ID Dp18489131 |
| | 09/05 | 7,600.00 | WF Direct Pay-Payment- Consult Fee-Tran ID Dp18503481 |
| | 09/05 | 40.97 | Comed Util_Bil 9525338068 0905 Equity Build Inc |
| | 09/05 | 58.89 | Comed Util_Bil 9525294034 0905 Equity Building Inc |
| | 09/05 | 99.45 | Comed Util_Bil 9525296047 0905 Equity Bills Inc |
| | 09/05 | 18.00 | Paypal Inst Xfer 170903 Litvak Pftf Equitybuild Inc. |
| | 09/05 | 39.00 | Paypal Inst Xfer 170903 Netdnacdnll Equitybuild Inc. |
| | 09/05 | 56.03 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170905 Ckf015505217Neg Equitybuild, Inc |
| | 09/05 | 64.97 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170905 Ckf711111938Neg Equitybuild, Inc |
| | 09/05 | 102.25 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170905 Ckf552052577Neg Equitybuild, Inc |
| | 09/05 | 4,130.23 | Paypal Inst Xfer 170904 Upwrkescrow Equitybuild Inc. |
| | 09/05 | 16,914.39 | Liberty Sbf Dorc Rvpmt 6217-27 S Dorchester L |
| | 09/06 | 8,333.33 | WT Seq167708 Masters Holdings LLC /Bnf=Master's Holdings LLC Srf# Gw00000006680930 Trn#170906167708 Rfb# 446 |
| | 09/06 | 16,000.00 | WT Fed#09928 Jpmorgan Chase Ban /Ftr/Bnf=Corevest American Finance Lender Op Srf# Gw00000006681332 Trn#170906167768 Rfb# 447 |
| | 09/06 | 1,229.17 | WT Fed#09959 PNC Bank, National /Ftr/Bnf=Cohen Financial Srf# Gw00000006681323 Trn#170906168017 Rfb# 450 |
| | 09/06 | 70,425.76 | WT Fed#09931 Jpmorgan Chase Ban /Ftr/Bnf=Bloomfield Capital Srf# Gw00000006681341 Trn#170906167819 Rfb# 449 |
| | 09/06 | 8,049.25 | WF Direct Pay-Payment- Owner Draw-Tran ID Dp18573541 |
| | 09/06 | 22,000.00 | Online Transfer to Equitybuild Finance, LLC Ref #Ib03Qqmp3L Business Checking Loan to Newkirk From Tikkun |
| | 09/06 | 183.24 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170906 Ckf195485764Neg Equitybuild, Inc |
| | 09/06 | 382.00 < | Business to Business ACH Debit - Insynq 9172927267 M40283834505 Tanna R Dreiling |
| | 09/07 | 7,264.07 | WT Fed#06607 PNC Bank, National /Ftr/Bnf=Cohen Financial Srf# Gw00000006714602 Trn#170907151440 Rfb# 451 |
| | 09/07 | 15,000.09 | WT Fed#06339 Bank of America, N /Ftr/Bnf=Vcp Longwood, LLC Srf# Gw00000006714170 Trn#170907151454 Rfb# 452 |
| | 09/07 | 3,900.00 | WT Fed#06350 Bank of America, N /Ftr/Bnf=Cld Construction Srf# Gw00000006714607 Trn#170907151473 Rfb# 453 |
| | 09/07 | 16.07 | Comed Util_Bil 0125069025 0907 Equitybuild Inc |
| | 09/07 | 385.25 | Kunnect.Com Debits Xvp 20160101 Equity Build Inc |
| | 09/08 | 298.00 | Purchase authorized on 09/07 Green Olive Tree, 757-397-9785 VA S587250180087577 Card 7193 |



*Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/08 | 13,986.59 | WT Fed#06944 PNC Bank, National /Ftr/Bnf=PNC Bank, N.A. Srf# Gw00000006750510 Trn#170908148458 Rfb# 454 |
| | 09/08 | 13,975.05 | WT Fed#06973 PNC Bank, National /Ftr/Bnf=PNC Bank, N.A. Srf# Gw00000006750965 Trn#170908148673 Rfb# 455 |
| | 09/08 | 15,000.00 | Online Transfer to Equitybuild Finance, LLC Ref #Ib03Qy2Tgv Business Checking ACH |
| | 09/08 | 1,012.20 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/08 | 2,209.30 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/11 | 2,424.37 | Client Analysis Srvc Chrg 170908 Svc Chge 0817 000008345876976 |
| | 09/11 | 33.00 | Purchase authorized on 09/08 Lawdepot Com 877-5094398 Can S387251423551024 Card 7193 |
| | 09/11 | 1,097.00 | Purchase authorized on 09/09 Green Olive Tree, 757-397-9785 VA S587252180079130 Card 7193 |
| | 09/11 | 37.21 | Purchase authorized on 09/09 Fedex 810104201301 800-4633339 TN S587252471951829 Card 7193 |
| | 09/11 | 70,425.76 | WT Fed#02238 Jpmorgan Chase Ban /Ftr/Bnf=Bloomfield Capital Asset Srf# Gw00000006772393 Trn#170911109486 Rfb# 448 |
| | 09/11 | 16,500.00 | WT Seq109505 Shatar Holdings. LLC /Bnf=Shatar Holdings LLC Srf# Gw00000006772642 Trn#170911109505 Rfb# 456 |
| | 09/11 | 9.99 | Paypal Inst Xfer 170909 Duda Inc Equitybuild Inc. |
| | 09/11 | 21.80 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170911 Ckf013892226Neg Equitybuild, Inc |
| | 09/11 | 22.65 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170911 Ckf795195854Neg Equitybuild, Inc |
| | 09/11 | 40.59 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170911 Ckf385575863Neg Equitybuild, Inc |
| | 09/11 | 42.23 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170911 Ckf162352337Neg Equitybuild, Inc |
| | 09/11 | 49.99 | Paypal Inst Xfer 170910 Adobesystem Equitybuild Inc. |
| | 09/11 | 59.18 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170911 Ckf778078344Neg Equitybuild, Inc |
| | 09/11 | 78.62 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170911 Ckf483773324Neg Equitybuild, Inc |
| | 09/11 | 236.00 | Paypal Inst Xfer 170910 Sprout Socl Equitybuild Inc. |
| | 09/11 | 6,250.00 | Paypal Inst Xfer 170908 G2W Press Equitybuild Inc. |
| | 09/11 | 3,842.00 | Paypal Inst Xfer 170911 Upwrkescrow Equitybuild Inc. |
| | 09/12 | 114.95 | Purchase authorized on 09/11 Checkpoint Screeni 888-5341233 CA S307254672487939 Card 7193 |
| | 09/12 | 6,892.76 | WT Fed#00223 Keybank National A /Ftr/Bnf=IRA Plan Partners LLC Srf# Gw00000006784842 Trn#170912000231 Rfb# 457 |
| | 09/12 | 4,166.67 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/12 | 6,750.00 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/12 | 15,000.00 | WT Fed#08556 Jpmorgan Chase Ban /Ftr/Bnf=Bloomfield Capital Asset Mgmt Srf# Gw00000006796518 Trn#170912086130 Rfb# 458 |
| | 09/12 | 21,315.92 | WT Fed#09271 Jpmorgan Chase Ban /Ftr/Bnf=CBRE Srf# Gw00000006797067 Trn#170912086161 Rfb# 459 |
| | 09/12 | 1,808.95 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |

Account number: ⬜⬜⬜6976 ▪ September 1, 2017 - September 30, 2017 ▪ Page 6 of 10



*Electronic debits/bank debits* *(continued)*

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/12 | 6,282.90 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/12 | 7,600.00 | WF Direct Pay-Payment- Consult Fee-Tran ID Dp18912695 |
| | 09/13 | 15,415.35 | WT Fed#07507 PNC Bank, National /Ftr/Bnf=Midland Loan Services Srf# Gw00000006819687 Trn#170913071344 Rfb# 460 |
| | 09/13 | 2,500.00 | WT Seq#99045 Td Ameritrade Clearing /Bnf=Td Ameritrade Clearing Inc Srf# Gw00000006827245 Trn#170913099045 Rfb# 461 |
| | 09/13 | 8,049.25 | WF Direct Pay-Payment- Owner Draw-Tran ID Dp18954275 |
| | 09/13 | 1.00 < | Business to Business ACH Debit - Chase Conv Fee 170912 Cctptx001859364 Fosterjulie |
| | 09/13 | 12,375.68 < | Business to Business ACH Debit - Cook County Propertytx 170912 Cctptx001859363 Fosterjulie |
| | 09/13 | 11,500.00 | American Express ACH Pmt 170913 W0436 Jerry Cohen |
| | 09/13 | 34.99 | Paypal Inst Xfer 170913 Lyndacominc Equitybuild Inc. |
| | 09/14 | 50.00 < | Business to Business ACH Debit - City of Chicago 1087875 170912 87C Null 8345876976 |
| | 09/14 | 237.95 < | Business to Business ACH Debit - Paychex Cgs Garnish 091417 Col0073298494 Equitybuild Inc |
| | 09/14 | 43,372.30 < | Business to Business ACH Debit - Paychex Payroll 72909400000801x Equitybuild Inc |
| | 09/14 | 13.99 | Skype Communicat Iat Paypal 170914 1001684776951 Equitybuild Inc. |
| | 09/15 | 10,000.00 | WF Direct Pay-Payment- Lead Generation-Tran ID Dp19196891 |
| | 09/15 | 5,000.00 | Online Transfer to Equitybuild Finance, LLC Ref #Ib03Rlcj22 Business Checking ACH |
| | 09/15 | 242.69 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/15 | 1,014.83 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/15 | 1,025.00 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/15 | 59.00 < | Business to Business ACH Debit - Paychex-Hrs Hrs Pmt 25871653 Equitybuild Inc |
| | 09/15 | 83.91 < | Business to Business ACH Debit - Comed Util_Bil 5307484032 0915 Equitybuild Inc |
| | 09/15 | 188.65 < | Business to Business ACH Debit - Paychex Eib Invoice 170915 x72919200006163 Equitybuild Inc |
| | 09/15 | 13,788.77 < | Business to Business ACH Debit - Paychex Tps Taxes 091317 72910200034693x Equitybuild Inc |
| | 09/15 | 10,000.00 | American Express ACH Pmt 170915 W5170 Jerry Cohen |
| | 09/18 | 900.00 | Recurring Payment authorized on 09/16 Qb *Quickbase 617-250-2297 MA S467259180631110 Card 7193 |
| | 09/18 | 3,000.00 | Online Transfer to Equitybuild Finance, LLC Ref #Ib03Rryfgy Business Checking Interest to Bak |
| | 09/18 | 1,275,000.00 | WT Fed#09000 First-Citizens Ban /Ftr/Bnf=Os National LLC Srf# Gw00000006949508 Trn#170918168029 Rfb# 466 |
| | 09/18 | 4,535.56 | Paypal Inst Xfer 170918 Upwrkescrow Equitybuild Inc. |
| | 09/19 | 6,750.00 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/19 | 18,000.00 | Online Transfer to Tikkun Holdings LLC Ref #Ib03Rvd28Z Business Checking 2 Point Transaction Loan Fee. |
| | 09/19 | 2,500.00 | WT Seq116375 Td Ameritrade Clearing /Bnf=Td Ameritrade Clearing Inc Srf# Gw00000006971526 Trn#170919116375 Rfb# 467 |



*Electronic debits/bank debits* (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/19 | 7,600.00 | WF Direct Pay-Payment- Consult Fee-Tran ID Dp19307173 |
| | 09/19 | 54.28 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170919 Ckf970370430Neg Equitybuild, Inc |
| | 09/19 | 49.99 | Paypal Inst Xfer 170919 Adobesystem Equitybuild Inc. |
| | 09/20 | 7,500.00 | WT Fed#06903 Bank of America, N /Ftr/Bnf=Business Fundamentals (Listedby) Srf# Gw00000006987540 Trn#170920071186 Rfb# 468 |
| | 09/20 | 400.00 | Online Transfer to Equitybuild Inc Ref #Ib03Rxxqxq Business Checking Bank Charges |
| | 09/20 | 50.00 | Online Transfer to Ssdf1 4520 S Drexel, LLC Ref #Ib03Rxxstc Business Checking Opening Deposit |
| | 09/20 | 50.00 | Online Transfer to Heartland Capital Fund I, LLC Ref #Ib03Rxxwkz Business Checking Opening Deposit |
| | 09/20 | 8,049.25 | WF Direct Pay-Payment- Owner Draw-Tran ID Dp19367407 |
| | 09/20 | 36,795.09 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/20 | 72.30 < | Business to Business ACH Debit - Comed Util_Bil 9345566037 0920 Equity Build Inc |
| | 09/20 | 104.86 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170920 Ckf648838030Neg Equitybuild, Inc |
| | 09/20 | 165.25 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170920 Ckf258548011Neg Equitybuild, Inc |
| | 09/20 | 227.27 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170920 Ckf925425209Neg Equitybuild, Inc |
| | 09/21 | 24.99 | Paypal Inst Xfer 170921 Lyndacominc Equitybuild Inc. |
| | 09/22 | 48.38 | Paypal Inst Xfer 170921 1and1 Inc Equitybuild Inc. |
| | 09/22 | 4,756.42 | First Insurance Insurance 900-4072443 7107-29 S. Bennett LLC |
| | 09/22 | 27,987.78 | First Insurance Insurance 900-4899753 Equitybuild Inc |
| | 09/25 | 399.00 | Recurring Payment authorized on 09/24 Logmein*Gotomeetin 855-837-1750 CA S467267149500623 Card 7201 |
| | 09/25 | 925,000.00 | Online Transfer to Equitybuild Finance, LLC Ref #Ib03Scqf5V Business Checking ACH and Wires |
| | 09/25 | 102.57 < | Business to Business ACH Debit - Comed Util_Bil 9436594034 0925 Equitybuild Inc |
| | 09/25 | 301.35 < | Business to Business ACH Debit - Comed Util_Bil 1767011139 0925 Equitybuild Inc |
| | 09/25 | 724.21 < | Business to Business ACH Debit - Mbfs.Com Auto Pay 170924 9269997 Cohen |
| | 09/25 | 2,540.52 | Paypal Inst Xfer 170925 Upwrkescrow Equitybuild Inc. |
| | 09/25 | 20,000.00 | American Express ACH Pmt 170925 W5376 Jerry Cohen |
| | 09/26 | 345.00 | Purchase authorized on 09/25 Pp*Mobilenotar 402-935-2244 FL S307268487925187 Card 7193 |
| | 09/26 | 210.00 | Purchase authorized on 09/25 Pp*Mobilenotar 402-935-2244 FL S387268574100449 Card 7193 |
| | 09/26 | 6,750.00 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/26 | 40.00 | Purchase authorized on 09/26 The UPS Store #3369 34 Naples FL P00000000943820835 Card 7193 |
| | 09/26 | 29,833.33 | Online Transfer to Equitybuild Finance, LLC Ref #Ib03Sg72TX Business Checking Wire Entrust |
| | 09/26 | 7,600.00 | WF Direct Pay-Payment- Consult Fee-Tran ID Dp19661453 |



**Electronic debits/bank debits** *(continued)*

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/26 | 15.84 | Comed Util_Bil 5561364159 0926 Equitybuild |
| | 09/26 | 23.31 | Comed Util_Bil 5561360124 0926 Equitybuild |
| | 09/26 | 57.57 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170926 Ckf420810042Neg Equitybuild, Inc |
| | 09/26 | 137.26 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170926 Ckf076466114Neg Equitybuild, Inc |
| | 09/26 | 140.35 | Comed Util_Bil 8837473040 0926 Equity Build Inc |
| | 09/26 | 314.91 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170926 Ckf979379835Neg Equitybuild, Inc |
| | 09/26 | 556.87 < | Business to Business ACH Debit - Peoples Gas Online Pmt 170926 Ckf553643712Neg Equitybuild, Inc |
| | 09/26 | 838.60 | Bmwfinancial Svs Bmwfs Pymt 170925 xxxxx0882 Equitybuild 4002375235 |
| | 09/26 | 34.99 | Paypal Inst Xfer 170925 Lyndacominc Equitybuild Inc. |
| | 09/27 | 1,500.00 | Purchase authorized on 09/26 Chabad Jewish Cent 239-262-4474 FL S467269693161112 Card 7193 |
| | 09/27 | 1,500.00 | Online Transfer to Schroyer-Cohen P Ref #Ib03Shrrjt Checking Owner Draw |
| | 09/27 | 1,510,000.00 | WT Fed#00459 Cibc Bank USA /Ftr/Bnf=Nnnt, LLC Srf# Gw00000007161729 Trn#170927091547 Rfb# 492 |
| | 09/27 | 8,049.25 | WF Direct Pay-Payment- Owner Draw-Tran ID Dp19699805 |
| | 09/27 | 13,000.00 | WF Direct Pay-Payment- Repay Insurance Premiums-Tran ID Dp19716833 |
| | 09/27 | 31.03 < | Business to Business ACH Debit - Comed Util_Bil 4301057012 0927 Equitybuild Inc |
| | 09/27 | 84.29 < | Business to Business ACH Debit - Comed Util_Bil 9357295025 0927 Equitybuild |
| | 09/27 | 976.13 | Paypal Inst Xfer 170927 Upwrkescrow Equitybuild Inc. |
| | 09/28 | 4,166.67 | ACH Prep Origintn - Equitybuild Inc - File 7878782339 Coid 1261346165 |
| | 09/28 | 3,500.00 | WF Direct Pay-Payment- Loan-Tran ID Dp19776205 |
| | 09/28 | 31.03 < | Business to Business ACH Debit - Comed Util_Bil 7428119034 0928 Equitybuild Inc |
| | 09/28 | 37.67 < | Business to Business ACH Debit - Comed Util_Bil 9024260016 0928 Equitybuild |
| | 09/28 | 946.89 < | Business to Business ACH Debit - Costar Costar 36721231 E*13*000000067\GE*1*201727000\Iea*1*201727000\ |
| | 09/28 | 44,308.15 < | Business to Business ACH Debit - Paychex - Rcx Payroll 73101100003023x Equitybuild Inc |
| | 09/29 | 316.92 | Purchase authorized on 09/27 Ringcentral, Inc 650-4724100 CA S467270435677978 Card 7193 |
| | 09/29 | 49.99 | Recurring Payment authorized on 09/27 Adobe *Creative Cl 800-833-6687 CA S307270732570759 Card 7193 |
| | 09/29 | 577.60 | Recurring Payment authorized on 09/28 Softlayer Technolo 214-442-0604 TX S587271184541681 Card 7193 |
| | 09/29 | 39.64 | Purchase authorized on 09/28 Fedex 810104201275 800-4633339 TN S387271470467471 Card 7193 |
| | 09/29 | 72.19 | Purchase authorized on 09/28 Fedex 810104201297 800-4633339 TN S387271470698199 Card 7193 |
| | 09/29 | 199.00 | Recurring Payment authorized on 09/28 Stk*Shutterstock, 866-663-3954 NY S387271520626007 Card 7193 |

Account number: ▇▇▇6976 ■ September 1, 2017 - September 30, 2017 ■ Page 9 of 10



### Electronic debits/bank debits (continued)

| Effective date | Posted date | Amount | Transaction detail |
|---|---|---|---|
| | 09/29 | 9,000.00 | Online Transfer to Tikkun Holdings LLC Ref #Ib03Sqpcm9 Business Checking 1 Point Transaction Loan Fee |
| | 09/29 | 24,962.50 | WT Fed#01577 Jpmorgan Chase Ban /Ftr/Bnf=Akats Construction Inc. Srf# Gw00000007263066 Trn#170929183885 Rfb# 494 |
| | 09/29 | 180,000.00 | WT Fed#03629 Jpmorgan Chase Ban /Ftr/Bnf=Weissberg & Assoc - Client Trst Srf# Gw00000007267497 Trn#170929200626 Rfb# 496 |
| | 09/29 | 188.65 < | Business to Business ACH Debit - Paychex Eib Invoice 170929 x7311650024840 Equitybuild Inc |
| | 09/29 | 14,262.33 < | Business to Business ACH Debit - Paychex Tps Taxes 092717 73108700034456x Equitybuild Inc |
| | | **$4,816,982.19** | **Total electronic debits/bank debits** |

< **Business to Business ACH:** If this is a business account, this transaction has a return time frame of one business day from post date.  This time frame does not apply to consumer accounts.

### Checks paid

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 1000 | 112.50 | 09/14 | 2059 | 101.12 | 09/20 | 2068 | 200.96 | 09/19 |
| 2048 * | 2.45 | 09/07 | 2060 | 10,340.80 | 09/21 | 2069 | 81.89 | 09/19 |
| 2052 * | 27,700.00 | 09/05 | 2061 | 58.61 | 09/19 | 2070 | 72.30 | 09/19 |
| 2053 | 4,015.39 | 09/06 | 2062 | 68.44 | 09/19 | 2071 | 65.69 | 09/19 |
| 2054 | 30,000.00 | 09/05 | 2064 * | 179.66 | 09/19 | 2072 | 62.23 | 09/19 |
| 2055 | 30,452.28 | 09/11 | 2065 | 78.91 | 09/19 | 2073 | 82.82 | 09/19 |
| 2056 | 1,041.11 | 09/19 | 2066 | 65.89 | 09/19 | 2074 | 206.80 | 09/19 |
| 2057 | 1,897.31 | 09/21 | 2067 | 52.93 | 09/19 | 2075 | 185.30 | 09/19 |
| 2058 | 161.80 | 09/22 | | | | | | |
| | **$107,287.19** | | **Total checks paid** | | | | | |

* *Gap in check sequence.*

| | **$4,924,269.38** | **Total debits** |
|---|---|---|

---

### Daily ledger balance summary

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 08/31 | 27,561.24 | 09/12 | 73,661.82 | 09/21 | 356,172.52 |
| 09/01 | 37,112.59 | 09/13 | 151,285.55 | 09/22 | 323,218.14 |
| 09/05 | 38,983.85 | 09/14 | 107,498.81 | 09/25 | 54,150.49 |
| 09/06 | 46,265.71 | 09/15 | 66,095.96 | 09/26 | 137,252.46 |
| 09/07 | 39,697.78 | 09/18 | 179,670.60 | 09/27 | 102,111.76 |
| 09/08 | 78,216.64 | 09/19 | 321,525.00 | 09/28 | 49,121.35 |
| 09/11 | 38,593.97 | 09/20 | 368,435.62 | 09/29 | 71,952.53 |
| | **Average daily ledger balance** | **$125,312.49** | | | |



# ✓ IMPORTANT ACCOUNT INFORMATION

---



As part of our commitment to make things right, we have entered into a $142 million class action settlement related to the opening of unauthorized accounts.

If you believe Wells Fargo opened a checking, savings, credit card or line of credit account for you without your permission, or if you purchased identity theft protection from us, you may be entitled to compensation from this fund.

To find out more, go to www.WFSettlement.com or call 1-866-431-8549. You may be eligible for reimbursement of fees, compensation for potential impact on your credit, and an additional cash payment based on any money remaining in the fund after benefits and costs are paid out.

If you have specific questions about any of your accounts or services, please visit your Wells Fargo branch or call the toll-free number that appears on this statement. We realize you have a choice when it comes to banking. It is our privilege to be able to serve you.

_____

Effective November 15, 2017, you can make debit, ATM or prepaid card purchase transactions up to the maximum daily dollar purchase limit established for your card, subject to your available balance. However, we will no longer authorize purchases or payments in certain circumstances that exceed your daily purchase limit. To view your daily card limits, login to online banking from your computer, then select Accounts and Settings from the More menu, then Profile and Settings, and then View Account Profile in the Manage Account Settings section. If you have questions, please call the number on your statement.

NOTICE: Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies.  If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at:  Overdraft Collections and Recovery PO Box 5058 Portland, OR. 97208-5058.  You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation.  In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

©2010 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

```
CIBC Bank USA
Wire Department

Incoming Wire - Advice of Credit

Date: 09/27/2017

Beneficiary Party:
***6571
NNNT, LLC

Amount: 1,510,000.00
Reference #: 20172700202000

Additional payment details are shown below:
Sending Bank ABA: 121000248

Sender Name: EQUITYBUILD INC

Sender Address:
OPERATING ACCOUNT - 4/2015

1083 N COLLIER BLVD # 132

MARCO ISLAND FL 34145-2539


By Order Of:

Beneficiary Bank:

Reference for Beneficiary (RFB): 492

Beneficiary Info (OBI): NOTIFY KRISTEN CRISTIA 312-419-3929

IL1706750, 7836 S SOUTH SHORE

7201 S CONSTANCE, 7625 S EAST END

7635 S EAST END, 7750 S MUSKEGON


Bank to Bank Info (BBI):

Fed Confirmation Number (OMAD): 20170927L1LFBA4C00069309271250FT03
Fed Sender Reference Number (IMAD): 20170927I1B7032R010459
```

For consumer wire inquiries, contact 1-877-448-6500. For corporate wire inquiries, contact 1-312-564-6800, option # 1.



# CHICAGO TITLE AND TRUST COMPANY

**10 S LASALLE STREET**
**CHICAGO, IL  60603**

## ESCROW TRUST DISBURSEMENT STATEMENT

DISBURSEMENT DATE: September 29, 2017

REFER TO: ERIN K. CACCAMO
PHONE:    (312)223-2731
FAX:      (312)223-2108

| | |
|---|---|
| ESCROW TRUST NO. | D2201704301-001 |

PARTIES:
SELLER: VCP, LLC, VCP LONGWOOD, LLC
BUYER: SSPH 11117 S LONGWOOD LLC

| | |
|---|---|
| TITLE ORDER NO. | 01401-008985262 |

---

RECEIPTS:

| | | | |
|---|---|---|---|
| 09/29/17 | SSPH 11117 S LONGWOOD LLC | | |
| | --BUYER FUNDS | | 3,188,000.00 |
| 09/22/17 | CHICAGO TITLE | | |
| | --EARNEST MONEY 20702618-EARNEST MONEY | | 100,000.00 |
| | | $ | 3,288,000.00 |

---

DISBURSEMENTS:

**01) PRORATIONS/CREDITS - Seller**

| | |
|---|---|
| PER DIEM ON PAYOFF | 1,025.57 |
| CLOSING DELAY CREDIT | 500.00 |
| EXTENSION FEE 9/22-9/26 | 6,428.61 |
| WATER PRORATION | 754.43- |
| TAXES 11/-9/26/17 | 25,147.96- |
| PREPAID RENT | 1,299.00- |
| SURVEY CREDIT | 500.00- |
| | -------------------- |
| TOTAL PRORATIONS | 19,747.21- |
| PURCHASE PRICE | 3,250,000.00 |
| | -------------------- |
| ADJUSTED PURCHASE PRICE | $3,230,252.79 |

$3,230,252.79

**02) CHICAGO TITLE AND TRUST COMPANY - Seller's Charges**

Re: Title Order No. 01401-008985262

| | |
|---|---|
| ESCROW FEE | 450.00 |
| NY CLOSING FEE | 150.00 |
| EXTENDED COVERAGE | 350.00 |
| TITLE INSURANCE | 1,625.00 |
| WIRE TRANSFER FEE | 80.00 |
| TI FEE | 175.00 |
| CHICAGO TRANSFER TAX | 9,750.00 |
| STATE TRANSFER TAX | 3,250.00 |
| COUNTY TRANSFER TAX | 1,625.00 |
| | -------------------- |
| | $17,455.00 |

$17,455.00

**03) MB FINANCIAL**

| | |
|---|---|
| PAYOFF | 1,477,313.64 |

$1,477,313.64

**04) KALE REALTY**

| | |
|---|---|
| COMMISSION | 65,000.00 |

$65,000.00

**05) KATHRYN FINK**

| | |
|---|---|
| ATTORNEY FEES | 4,026.00 |

$4,026.00

EC2     09/29/17     14:09     NOTE: * - Indicates items Paid Outside of Closing.

Exhibit

4

exhibitsticker.com

```
                                              ESCROW TRUST NO.   D2201704301-001
                                                   PAGE NO.  2


06) CHICAGO TITLE
    TI FOR WATER CERT                         10,000.00
                                                                    $10,000.00

07) IPEX 1031
    EXCHANGE FE                                  750.00
                                                                       $750.00

08) KATHRYN FINK
    UCC REIMBURSEMENT                             84.75
                                                                        $84.75


09) VCP LONGWOOD, LLC
    NET PROCEEDS TO SELLER                                         $1,655,623.40
                                                                  ==================


10) PRORATIONS/CREDITS - Buyer
    CLOSING DELAY CREDIT                        500.00-
    TAXES 11/-9/26/17                        25,147.96
    WATER PRORATION                             754.43
    PER DIEM ON PAYOFF                        1,025.57-
    SURVEY CREDIT                               500.00
    EXTENSION FEE 9/22-9/26                   6,428.61-
    PREPAID RENT                              1,299.00
                                        --------------------
    TOTAL PRORATIONS                         19,747.21
    PURCHASE PRICE                         3,250,000.00
                                        --------------------
    ADJUSTED PURCHASE PRICE               $3,230,252.79        $3,230,252.79

11) CHICAGO TITLE AND TRUST COMPANY - Buyer's Charges

    Re: Title Order No. 01401-008985262

    ESCROW FEE                                  450.00
    NY CLOSING FEE                              150.00
    ENDORSEMENTS                                850.00
    WIRE TRANSFER FEE                            40.00
    RECORDING AND SERVICE FEE                   250.00
    CHICAGO TRANSFER TAX                     24,375.00
                                        --------------------
                                            $26,115.00            $26,115.00

12) ROCK FUSCO CONNELLY
    PRIOR                                    15,000.00
                                                                    $15,000.00

13) ROCK FUSCO CONNELLY
    CURRENT                                   1,900.00
                                                                     $1,900.00

14) ROCK FUSCO CONNELLY
    SOUTH SHORE DEAL                         11,055.00
                                                                    $11,055.00

15) WAYLS ENGINEERING & SURVEY LLC
    SURVEY                                    2,500.00
                                                                     $2,500.00


16) SSPH 11117 S LONGWOOD LLC
    TOTAL DISBURSEMENT AMOUNT                                     $3,286,822.79
    TOTAL BUYER RECEIPTS                                          $3,288,000.00
                                                                 --------------------

  EC2      09/29/17    14:09       NOTE: * - Indicates items Paid Outside of Closing.
```

```
                                        ESCROW TRUST NO.   D2201704301-001
                                            PAGE NO.  3
```

OVERDEPOSIT TO BUYER                                            $1,177.21
                                                        ===================

DISBURSEMENTS APPROVED:

9/29/17
_____          _____          _____
DATE                           FOR SELLER                     FOR BUYER

_____
DATE                           _____          _____

_____
DATE                           FOR CHICAGO TITLE AND TRUST


EC2        09/29/17       14:09        NOTE: * - Indicates items Paid Outside of Closing.

ESCROW TRUST NO.    D2201704301-001
PAGE NO.  3

OVERDEPOSIT TO BUYER      $1,177.21
====================

DISBURSEMENTS APPROVED:

VCP LONGWOOD, LLC

FOR SELLER—Kathryn Hamilton Fink
Attorney in Fact

FOR BUYER

DATE

DATE    9/29/17

DATE

FOR CHICAGO TITLE AND TRUST

EC2    09/29/17    14:09    NOTE: * - Indicates items Paid Outside of Closing.

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



**Report Mortgage Fraud
844-768-1713**

*1811506119*

Doc# 1811506119 Fee $70.00

RHSP FEE:$9.00 RPRF FEE: $1.00

KAREN A.YARBROUGH

COOK COUNTY RECORDER OF DEEDS

DATE: 04/25/2018 12:08 PM  PG:  1 OF 17

---

The property identified as: **PIN:** 25-19-113-010-0000

**Address:**
**Street:** 11117-11137 S. Longwood Dr
**Street line 2:**
**City:** Chicago   **State:** IL   **ZIP Code:** 60643

**Lender:** The Persons Listed on Exhibit B attached hereto

**Borrower:** SSPH 11117 S. Longwood, LLC

**Loan / Mortgage Amount:** $5,200,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** 4080BCF0-8C03-4415-AAB0-9EF7794B896F   **Execution date:** 9/27/2017



*Prepared by and*
**After Recording Return To:**
*Equity Build Finance*
*5068 W Plano Pkwy*
*Plano, TX 75093*

## MORTGAGE

THIS MORTGAGE ("MORTGAGE") is made as of September 29th, 2017, by and between **SSPH 11117 S LONGWOOD, LLC** (the "GRANTOR"), for the benefit of the persons listed on Exhibit B attached hereto (collectively, the "BENEFICIARIES").

### RECITALS

WHEREAS, BENEFICIARIES have agreed to extend loans to the BORROWER in the aggregate principal amount of Five Million Two Hundred Thousand and 00/100 Dollars ($5,200,000.00) (collectively herein, "LOAN"), which loans are evidenced by Promissory Notes ("NOTES"). The Maturity Date of the NOTES is 10/01/2019.

As used in this MORTGAGE, the term "OBLIGATIONS" means: (a) the payment to the BENEFICIARIES of any and all sums owed by the GRANTOR to the BENEFICIARIES in accordance with the terms of the NOTES and MORTGAGE; (b) the performance by the GRANTOR of all the terms, covenants and conditions contained in this MORTGAGE and the NOTES; (c) the repayment of all sums which are at any time or from time to time advanced or paid by the BENEFICIARIES in accordance with the authorizations contained in this MORTGAGE; and (d) the payment of all of the costs, fees, commissions, and expenses of the BENEFICIARIES or any one of them in enforcing the provisions of the NOTES and this MORTGAGE.

The GRANTOR has agreed to grant the real property (the "LAND") situated and lying in the State of Illinois as more particularly described on Exhibit A attached hereto, to the BENEFICIARIES, as security for the repayment and performance of the LOAN and as security for the satisfaction of all of the GRANTOR'S OBLIGATIONS.

NOW, THEREFORE, in consideration of the BENEFICIARIES' agreements under the NOTES and this MORTGAGE, and in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the GRANTOR hereby agrees as follows for the benefit of the BENEFICIARIES:

### GRANT

To secure the full and absolute payment and performance of each of the OBLIGATIONS, the GRANTOR grants, pledges, assigns, transfers and conveys the LAND to the BENEFICIARIES.

TOGETHER WITH all buildings, structures, and improvements, and all replacements thereof, now or hereafter existing on or to be erected upon the LAND (collectively, "IMPROVEMENTS"). The LAND and IMPROVEMENTS are collectively referred to as the "REAL PROPERTY."

AND TOGETHER WITH all plant, equipment, apparatus, machinery, fittings, appliances, furniture, furnishings, fixtures and other chattels and personal property and replacements thereof, owned

by the GRANTOR and now or at any time hereafter affixed or attached to, incorporated in, placed upon, or in any way used in connection with the current or future utilization, enjoyment, occupation, or operation of the REAL PROPERTY, including by way of example and not by way of limitation, all lighting, heating, ventilating, air conditioning, incinerating, sprinkling, laundry, lifting and plumbing fixtures and equipment, water and power systems, loading and unloading equipment, burglar alarms and security systems, fire prevention and fire extinguishing systems and equipment, engines, boilers, ranges, refrigerators, stoves, furnaces, oil burners or units, communication systems and equipment, dynamos, transformers, motors, tanks, electrical equipment, elevators, escalators, cabinets, partitions, ducts, compressors, switchboards, storm and screen windows and doors, pictures, sculptures, awnings and shades, signs and shrubbery; as well as all building and construction materials and supplies of every kind, nature and description owned by the GRANTOR and located on or at the REAL PROPERTY, whether or not yet incorporated into any building, structure, or improvement, or located elsewhere and not as yet delivered to the REAL PROPERTY, which are intended to be used for the purpose of erecting, renovating, restoring, or repairing any building, structure, or improvement on the REAL PROPERTY, including by way of example and not by way of limitation, all steel, iron, concrete, sheet rock and plaster board, screws, paint, plaster, plastics, insulation, fiberglass, wood and wood products, glass, bricks, mortar, masonry, pipes, wiring, linoleum and tile and other floor and wall coverings, roofing and roofing materials, framing and molding (collectively, "PERSONALTY"), all of which the GRANTOR declares to be fixtures and permanent additions to the REAL PROPERTY.

AND TOGETHER WITH all plans and specifications, surveys and surveyor's reports, engineer's and architect's reports, diagrams and drawings, all licenses, permits and approvals and applications therefor from governmental authorities, service contracts, books, records, reports, accounting records, invoices, change orders, correspondence, diagrams, drawings, schematics, sales and promotional literature and forms, advertising materials and the like, wherever located and whenever created, compiled, or made with respect to the construction, leasing, use or occupancy of the REAL PROPERTY or any portion thereof.

AND TOGETHER WITH all easements, rights, privileges, and appurtenances thereunto belonging or in any way appurtenant, and all of the right, title, interest, estate, or claim of the GRANTOR in or to the streets, ways, alleys, and waters adjoining or adjacent to the REAL PROPERTY, whether now existing or hereafter acquired.

AND TOGETHER WITH all rights, benefits, profits, rents, and monies payable under, by reason of, or with respect to any restrictive covenants, easements, agreements applicable to the REAL PROPERTY or adjoining lands, or contracts of sale with respect thereto, and all proceeds and products thereof, with the right to: (a) collect any sums of money at any time payable to the GRANTOR in consequence of such rights and benefits, including the release, modification, or amendment thereof, for application to the OBLIGATIONS; and (b) utilize any collection or enforcement rights or remedies to collect the same which may be available to the GRANTOR under law.

AND ALSO TOGETHER WITH: (a) all of the proceeds of the voluntary or involuntary conversion of the aforementioned property or any part of the aforementioned property into cash or liquidated claims, whether by way of condemnation, insured casualty, judgment or otherwise, as well as a security interest which is hereby granted to the BENEFICIARIES in the same; (b) all rents, profits, and benefits, including any deposits of tenants to secure payment of the same and performance of the terms and conditions of any oral or written lease, with respect to the leasing of all or any portion of the REAL PROPERTY (each such lease is referred to herein as a "LEASE" and any and all rents, profits or other benefits payable under any LEASE are collectively referred to herein as "RENTS"), with the right to collect the RENTS at any time for application to the OBLIGATIONS and to utilize any collection or enforcement rights or remedies which may be available to the GRANTOR under law or any LEASE, but

2

without any duty or obligation to perform on behalf of the GRANTOR any of the GRANTOR'S duties or obligations to any lessee under any LEASE (each such lessee is referred to herein as a "LESSEE"); and (c) all revenues and profits, accounts receivable and contract rights, including any deposits of purchasers, with respect to any contract of sale for the sale of any of the aforementioned property, including without limitation any contract for the sale of all or any part of the REAL PROPERTY, with the right to collect the same at any time for application to the OBLIGATIONS and to utilize any collection or enforcement rights or remedies which may be available to the GRANTOR under law or any contract of sale, but without any duty or obligation to perform on behalf of the GRANTOR any of the GRANTOR'S duties or obligations with respect thereto.

All of the aforementioned REAL PROPERTY, PERSONALTY, and other rights and benefits and all other property described in the above stated granting clauses of this MORTGAGE are collectively referred to herein as the "SECURED PROPERTY."

TO HAVE AND TO HOLD the SECURED PROPERTY to secure the full, complete, timely and absolute payment, performance, completion, and satisfaction of each of the OBLIGATIONS, whether such OBLIGATIONS are existing or hereafter arising; provided, however, that if all of the OBLIGATIONS are duly paid, performed, completed and satisfied, and all agreements of the BENEFICIARIES to extend the LOAN or make any advances of principal thereunder or to make any other advance of sums under the NOTE shall have been terminated, then the BENEFICIARIES shall release and reconvey the SECURED PROPERTY to the GRANTOR or shall otherwise terminate this MORTGAGE, at the sole cost and expense of the GRANTOR.

### ARTICLE 1.
### REPRESENTATIONS, WARRANTIES,
### COVENANTS AND AGREEMENTS OF THE GRANTOR

The GRANTOR represents, warrants, covenants and agrees as follows:

Section 1.1.    Payment of Obligations. The GRANTOR shall pay punctually all of the OBLIGATIONS, together with interest thereon and any penalty, fee, charge, deposit, escrow or assessment, at the times and in the manner and amounts set forth in the NOTE and any amendment, substitution, extension or renewal thereof, this MORTGAGE, or as set forth in any other agreement or writing between the BENEFICIARIES and the GRANTOR relating or pertaining to any of the OBLIGATIONS.

Section 1.2.    Performance. The GRANTOR shall perform fully all duties, obligations, and requirements and comply in all respects with the OBLIGATIONS, including without limitation each of the terms, covenants, conditions, representations and warranties of this MORTGAGE and the NOTE.

Section 1.3    Impositions. The GRANTOR shall pay and discharge, when and as due: (a) all taxes of every kind and nature, including without limitation all real property taxes and all personal property taxes; (b) all general and special assessments and levies; (c) all water, sewer and other utility charges, rents, and assessments; and (d) any and all other public charges, dues, levies, impositions, or assessments of a like or different nature, imposed upon or assessed against the SECURED PROPERTY or the rents, issues, income or profits thereof, and which are or may become liens against the same, as well as any ground rent to which the REAL PROPERTY may be subject (all of the foregoing items described in clauses (a), (b), (c) and (d) are collectively referred to herein as "IMPOSITIONS"). The GRANTOR shall not permit to exist any lien or security interest for any IMPOSITION other than (i) liens for taxes, assessments, levies, fees, rents, ground rents, and public charges not yet delinquent, and (ii) liens and security interests to which the BENEFICIARIES has specifically and in writing consented and

3

with respect to which the GRANTOR has paid currently all sums secured thereby. The GRANTOR, promptly upon the request of the BENEFICIARIES, shall deliver to the BENEFICIARIES receipts evidencing the payment of all IMPOSITIONS.

Section 1.4    Insurance. The GRANTOR shall maintain the following insurance coverages:

1.4.1    Casualty And Flood Insurance.

(a)    Casualty Insurance. The GRANTOR shall obtain and at all times maintain "all-risk" casualty insurance insuring the SECURED PROPERTY against all risks which are customarily insured under "all-risk" insurance, in amounts equal to the greater of (i) the full replacement value of the SECURED PROPERTY, or (ii) an amount sufficient to prevent co-insurance liability. The coverage provided by such policy or policies shall include coverage for any and all loss or damage caused by fire, collapse, vandalism, malicious mischief, water damage, damage from rain, snow, sleet or ice, use of defective materials or methods in construction and such other risks as the BENEFICIARIES may reasonably require.

(b)    Flood Insurance. If at any time all or any portion of the IMPROVEMENTS are determined to be located in an area designated as a special flood hazard area or as otherwise having special flood or mudslide hazards ("FLOOD HAZARD AREA") by the Secretary of Housing and Urban Development or the Director of the Federal Emergency Management Agency, pursuant to the National Flood Insurance Act of 1968, as amended by the Flood Disaster Protection Act of 1973, as amended by the National Flood Insurance Reform Act of 1994, 42 U.S.C. Sections 4001-4129, as amended, the GRANTOR shall obtain and thereafter shall maintain flood hazard insurance in the full insurable value of the IMPROVEMENTS and the PERSONALTY located in or on such FLOOD HAZARD AREA, or the full amount of coverage available, if less than the full insurable value of such property. The GRANTOR shall be required to provide flood hazard insurance as described unless the GRANTOR'S insurance broker or a substitute therefor acceptable to the BENEFICIARIES certifies to the BENEFICIARIES in writing that the REAL PROPERTY is not in a FLOOD HAZARD AREA.

(c)    General Requirements.    No policy of casualty, builder's risk, environmental, or flood insurance, if applicable, shall be subject to an aggregate loss deductible which exceeds any amount designated by the BENEFICIARIES as the permitted deductible with respect thereto. Duplicate originals or certified true copies of all policies of casualty insurance and, if applicable, builder's risk, environmental, and flood insurance, shall be delivered to and retained by the BENEFICIARIES. The BENEFICIARIES shall be named under each such policy as first mortgagee, under a standard mortgage clause, and as sole loss payee. All casualty, builder's risk, environmental, and flood insurance shall be written on forms which are reasonably satisfactory to the BENEFICIARIES, and which bear an endorsement prohibiting cancellation, material modification or termination, unless thirty (30) calendar days prior written notice thereof is provided to the BENEFICIARIES. Promptly after any casualty loss, the GRANTOR shall give the BENEFICIARIES notice of the same and the BENEFICIARIES shall have the right to join the GRANTOR in adjusting any loss resulting from such casualty. The proceeds arising from any casualty loss shall be payable to the GRANTOR, to be applied in accordance with paragraph 1.4.1 (d) below.

(d)    Application of Insurance Proceeds. All insurance proceeds paid for each casualty loss to collateral securing any of the OBLIGATIONS shall be paid directly to the BENEFICIARIES to be applied, at the BENEFICIARIES'S option, either (i) to the repayment of the OBLIGATIONS (whether or not otherwise then due), with the balance of any such proceeds, if any, payable to or otherwise for the account of the GRANTOR, or (ii) to the payment of charges or expenses actually incurred by the GRANTOR in the restoration, reconstruction, repair, renovation or replacement

4

of the damaged or destroyed collateral, pursuant to terms and conditions reasonably acceptable to the BENEFICIARIES in its sole discretion. Provided that no event or circumstance has occurred and is continuing which is, or which with the giving of notice, the passage of time, or both, would be an "EVENT OF DEFAULT" (as hereinafter defined), the GRANTOR shall be permitted to use the insurance proceeds paid for each casualty loss securing the OBLIGATIONS to restore, reconstruct, or repair the loss, provided that the following conditions are satisfied: (A) no EVENT OF DEFAULT subsequently occurs during the course of the restoration, reconstruction, repair, renovation or replacement, (B) the applicable insurer has waived any right of subrogation against the GRANTOR regarding any insurance proceeds paid in connection with the insured casualty loss, (C) the amount of insurance proceeds, together with any separate funds set aside by the GRANTOR, are sufficient to accomplish the required restoration, reconstruction, repair, renovation, or replacement in a manner reasonably satisfactory to the BENEFICIARIES, (D) the GRANTOR submits a construction schedule, budget, and plans and specifications for the restoration or reconstruction which are reasonably satisfactory to the BENEFICIARIES, (E) the restoration, reconstruction, repair, renovation or replacement is diligently pursued in a workmanlike manner reasonably satisfactory to the BENEFICIARIES, and (F) the GRANTOR submits to the BENEFICIARIES an appraisal of the REAL PROPERTY, in form and substance acceptable to the BENEFICIARIES. Any insurance proceeds which are made available for paying the cost of repairing, replacing, restoring or reconstructing any damaged or destroyed collateral, as well as any additional sums to be contributed by the GRANTOR, shall be retained by the BENEFICIARIES, as additional security for the OBLIGATIONS, to be advanced to the GRANTOR over the course of such restoration, reconstruction, repair, renovation or replacement, under conditions and in accordance with procedures reasonably satisfactory to the BENEFICIARIES.

1.4.2    Commercial Liability.  The GRANTOR shall obtain and at all times maintain commercial general liability insurance in amounts and upon policy forms satisfactory to the BENEFICIARIES, insuring against liability of the GRANTOR for damages (and actions for damages) as a result of any bodily injury, property damage or personal injury. The commercial liability insurance shall also provide products and completed operations and owner's protective liability coverages. The BENEFICIARIES shall be named as an additional insured under each commercial liability insurance policy, and the amounts of such insurance shall be at least equal to that customarily maintained by persons under similar circumstances and having facilities and providing services similar to those of the GRANTOR (or the GRANTOR'S general contractor, as the case may be), but in any event the amounts of coverage for bodily injury shall not be less than One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) in the aggregate. On the reasonable request of BENEFICIARIES, the GRANTOR shall supply the BENEFICIARIES with certificates summarizing the terms of such liability insurance policy and paid receipts indicating the payment of premiums due thereon.

1.4.3    Other Insurance Coverages. The GRANTOR shall maintain such other insurance coverages as are customarily maintained by persons in similar circumstances having facilities of comparable size and offering comparable services or products as those of the GRANTOR.

1.4.4    Qualification of Insurers. The insurance coverages required by this MORTGAGE shall be issued by insurers qualified to issue insurance in the state where the REAL PROPERTY is located (and, where necessary to provide the required coverages, any other jurisdiction in which property of the GRANTOR may be located or the GRANTOR may conduct operations or provide services). The insurers shall each be otherwise reasonably satisfactory to the BENEFICIARIES.

Section 1.5    Condition and Use of Improvements.  The GRANTOR shall not abandon the SECURED PROPERTY at any time, nor commit any waste on the SECURED PROPERTY, nor make any change in the use of the SECURED PROPERTY which will in any way increase any ordinary fire or

other hazard insurance risk arising out of the operation of, or the construction of IMPROVEMENTS on, the SECURED PROPERTY. The GRANTOR shall maintain and keep the SECURED PROPERTY in good operating order and condition at all times and shall promptly make, from time to time, all repairs, renewals, replacements, additions, and improvements in connection therewith which are needed or desirable. The IMPROVEMENTS shall not be removed, demolished or substantially altered, nor shall any PERSONALTY be removed therefrom, without the prior written consent of the BENEFICIARIES, except where appropriate replacements, free of superior title, liens, security interests, or claims, are immediately made of a value at least equal to the value of the PERSONALTY removed. The GRANTOR shall permit the BENEFICIARIES, or their agents or employees, at all reasonable times to enter and inspect the SECURED PROPERTY.

Section 1.6    Title To Real Property; Permitted Liens. The GRANTOR warrants to the BENEFICIARIES that as of the date hereof the GRANTOR has good and marketable title to the SECURED PROPERTY free and clear of any and all liens, charges, restrictions, encumbrances, security interests and adverse claims whatsoever, other than liens, charges, restrictions, encumbrances or security interests which are: (a) set forth as exceptions to any commitment for title insurance or any title insurance policy accepted by the BENEFICIARIES; (b) expressly permitted as a prior lien or encumbrance pursuant to another provision of this MORTGAGE; or (c) otherwise expressly consented to in writing by the BENEFICIARIES (the items described in the foregoing clauses (a), (b) and (c) are collectively referred to herein as "PERMITTED LIENS"). The GRANTOR covenants and agrees that, at all times until the full payment, performance and satisfaction of the OBLIGATIONS, the GRANTOR shall (i) maintain good and marketable title to the SECURED PROPERTY free and clear of any and all liens, charges, restrictions, encumbrances, security interests and adverse claims whatsoever, excepting only PERMITTED LIENS and any subordinate liens on the SECURED PROPERTY which are consented to in writing by the BENEFICIARIES from time to time such consent not to be unreasonably withheld, (ii) take all steps and do all things reasonably necessary to establish, protect, preserve, and maintain the priorities and status of the liens and security interests in the SECURED PROPERTY established or intended to be established by this MORTGAGE; and (iii) forever warrant and defend the GRANTOR'S title to the SECURED PROPERTY and the validity and priorities of the liens and security interests of the MORTGAGE against the claims of any and all other persons.  The GRANTOR agrees that the GRANTOR will execute such other and further assurances as may be reasonably required by the BENEFICIARIES.

Section 1.7    Transfer or Encumbrance.  Title to all or any portion of the SECURED PROPERTY shall not be acquired by any person or entity other than the GRANTOR, by voluntary or involuntary conveyance, transfer, grant or assignment, by operation of law, or in any other manner, or, except for PERMITTED LIENS, become encumbered or charged with a lien or security interest of any kind or variety, whether voluntary or involuntary, including any mechanic's or materialman's lien or judgment lien, without the prior written consent of the BENEFICIARIES. The transfer or pledge of any ownership, equity, or voting interests in the GRANTOR, or the creation or issuance of additional ownership, equity, or voting interests which have the effect of diluting the then existing ownership, equity, or voting interests in the GRANTOR, shall constitute a prohibited transfer hereunder. The contrary notwithstanding, if the ownership of the SECURED PROPERTY becomes vested in any person or entity other than the GRANTOR, the or the BENEFICIARIES may, without notice to or consent from the GRANTOR, deal with such successor or successors in interest with reference to this MORTGAGE and the OBLIGATIONS in the same manner as with the GRANTOR, and any extension of the time of payment or performance of any of the OBLIGATIONS or any other modifications of the terms of the OBLIGATIONS thereafter shall not relieve the GRANTOR of the GRANTOR'S duties and liabilities to pay and perform the OBLIGATIONS when and as required by the terms of the NOTE and this MORTGAGE.

Section 1.8    Condemnation.  The GRANTOR shall promptly notify the BENEFICIARIES of: (a) the institution of any proceedings for the condemnation of the SECURED PROPERTY or any portion thereof; or (b) any offer by any governmental authority, public utility or other PERSON having the power to exercise any right or power of condemnation, to purchase the SECURED PROPERTY or any portion thereof in lieu of the institution of condemnation proceedings.  The GRANTOR shall promptly provide to the BENEFICIARIES copies of all pleadings and papers filed in any condemnation or other proceedings involving the SECURED PROPERTY. The BENEFICIARIES may participate in any such proceedings and the GRANTOR from time to time shall deliver to the BENEFICIARIES all instruments requested by them to permit such participation.  All condemnation awards and other compensation are hereby assigned by the GRANTOR to the BENEFICIARIES, and upon receipt shall be paid to the BENEFICIARIES for application to the OBLIGATIONS.  The BENEFICIARIES shall be under no obligation to question or contest the amount of any proposed condemnation award or compensation. The BENEFICIARIES shall have the right to have their interests represented in any condemnation proceedings by counsel selected by them at the sole expense of the GRANTOR.

Section 1.9    Zoning, Etc.; Restrictive Covenants.   The GRANTOR shall comply in all material respects in the use and ownership of the SECURED PROPERTY with all applicable laws, rules and regulations of any federal, state, and local governmental authorities having jurisdiction over the SECURED PROPERTY, including but not limited to all zoning, subdivision, land use, and development laws, rules and regulations. The GRANTOR shall further comply in all material respects with all restrictions, covenants, easements, set-backs and other limitations on the use of the SECURED PROPERTY contained in documents of public record.

Section 1.10    Security Agreement.  This MORTGAGE is intended to constitute a security agreement from the GRANTOR to the BENEFICIARIES in accordance with the District of Columbia UNIFORM COMMERCIAL CODE.   The GRANTOR agrees to execute and deliver to the BENEFICIARIES for filing with the appropriate filing offices such financing and continuation statements as may be reasonably required by the BENEFICIARIES to perfect or continue as perfected the security interests created by this MORTGAGE.

Section 1.11    Environmental Requirements.  The GRANTOR shall operate the SECURED PROPERTY in compliance with all federal, state, or local law, statute, ordinance or regulation, or court or administrative order or decree, or private agreement (collectively, "ENVIRONMENTAL REQUIREMENTS"). The GRANTOR shall defend, indemnify and hold harmless the BENEFICIARIES from all claims, actions, proceedings, losses, liabilities, damages, costs and expenses, including without limitation reasonable attorney's fees, for any failure or alleged failure of the SECURED PROPERTY to comply in all respects with all ENVIRONMENTAL REQUIREMENTS, and against all claims, actions, or proceedings which are based on or allege any failure of the GRANTOR, the BENEFICIARIES or the SECURED PROPERTY to comply in all respects with all applicable ENVIRONMENTAL REQUIREMENTS. The provisions of this Section and the duties of indemnification and to defend owed by the GRANTOR to the BENEFICIARIES shall survive payoff, release, or foreclosure of this MORTGAGE.

ARTICLE 2
EVENTS OF DEFAULT

The occurrence of any of the following events after the expiration of any applicable written notice, grace, and/or cure rights set forth in Section 2.8 hereof shall constitute an event of default ("EVENT OF DEFAULT") under this MORTGAGE and during the continuance thereof, shall entitle the BENEFICIARIES to exercise all rights and remedies provided in Article 3 hereof:

Section 2.1.   Failure To Pay Or Perform Obligations.   A failure by the GRANTOR to pay or perform any of the OBLIGATIONS set forth in the NOTE and MORTGAGE, when and as due.

Section 2.2.   Involuntary Bankruptcy.   The institution of involuntary "INSOLVENCY PROCEEDINGS" (as hereinafter defined) against the GRANTOR and the failure of any such INSOLVENCY PROCEEDINGS to be dismissed before the earliest to occur of: (a) the date which is ninety (90) calendar days after the institution of such INSOLVENCY PROCEEDINGS; (b) the entry of any order for relief in the INSOLVENCY PROCEEDING or any order adjudicating the GRANTOR insolvent; or (c) the impairment (as to validity, priority or otherwise) of any security interest or lien which secures the BENEFICIARIES.  The term "INSOLVENCY PROCEEDINGS" means, with respect to any referenced person, any case or proceeding commenced by or against such person, under 11 U.S.C. Section 101, et seq., as amended ("UNITED STATES BANKRUPTCY CODE"), or under any other federal or state bankruptcy or insolvency law, or any assignments for the benefit of creditors, formal or informal moratoriums, receiverships, compositions or extensions with some or all creditors with respect to any indebtedness of such person.

Section 2.3.   Voluntary Bankruptcy.   The commencement by the GRANTOR of a voluntary INSOLVENCY PROCEEDINGS.

Section 2.4.   Notice and Cure Rights.   The contrary notwithstanding, no EVENT OF DEFAULT shall be deemed to have occurred until after the expiration of the applicable grace, notice, and/or cure period, if any.

## ARTICLE 3
## RIGHTS ON EVENT OF DEFAULT

Upon the occurrence and during the continuance of an EVENT OF DEFAULT, the BENEFICIARIES may accelerate and declare immediately due and payable all or any portion of the OBLIGATIONS, and institute foreclosure proceedings as provided below and may, with or without declaring the OBLIGATIONS immediately due and payable, and with or without foreclosing, exercise any other right or remedy provided for herein or in the NOTE, or as otherwise provided by applicable laws.

Section 3.1.   Foreclosure.   Upon the occurrence of an EVENT OF DEFAULT, the GRANTOR further authorizes and grants to the BENEFICIARIES the right to sell the SECURED PROPERTY by judicial proceeding.  Any sale of the SECURED PROPERTY shall be made in accordance with laws of Illinois and shall require the joinder of all BENEFICIARIES as parties to the judicial foreclosure action.  The terms of the sale may be cash upon settlement of the sale or upon such other and additional terms except as specifically limited by applicable law or court rule.  Such sale may be of the entire SECURED PROPERTY as a unit or of such parts or parcels of the entire SECURED PROPERTY as the BENEFICIARIES, in their sole and absolute discretion, deem necessary, proper, or convenient as permitted under the judicial proceedings.

3.1.1.   Application of Proceeds.  Upon the sale of the SECURED PROPERTY, the proceeds shall be applied as follows.

(a)      To the payment of all expenses incident to the sale, including reasonable counsel fees.

(b)     To the payment of the OBLIGATIONS, including interest thereon at the rate provided in the NOTE or in any other related document until final ratification of the final auditor's account in the foreclosure proceeding; and

(c)     The balance remaining, if any, shall be paid to the GRANTOR, or to whomsoever shall be judicially determined to be entitled to the same.

Section 3.2.     Right To Maintain Separate Action. In the event that the GRANTOR fails to pay any OBLIGATIONS when and as due in accordance with the terms of the NOTE and this MORTGAGE, the BENEFICIARIES shall, in addition to all other rights and remedies to which it is entitled under this MORTGAGE, be entitled to institute such other actions or proceedings at law or in equity as selected by the BENEFICIARIES, jointly and severally.  In such event, and without regard to any proceedings initiated by the BENEFICIARIES hereunder, the BENEFICIARIES may prosecute any such other actions or proceedings to judgment or final decree, and may enforce any such judgments or final decrees against the GRANTOR and collect out of the property of the GRANTOR wherever situated, as well as out of the SECURED PROPERTY, in any manner provided by law, monies adjudged or decreed to be payable. The BENEFICIARIES shall be entitled to recover judgment as aforesaid before, after, or during the pendency of any proceedings for the enforcement of the provisions of this MORTGAGE, or the foreclosure of the lien hereof. In the event of a sale of the SECURED PROPERTY, and of the application of the proceeds of sale as provided in this MORTGAGE, to the payment of the OBLIGATIONS, the BENEFICIARIES shall be entitled to enforce payment of and to receive all amounts then remaining due and unpaid upon the OBLIGATIONS, and shall be entitled to recover judgment for any portion of the OBLIGATIONS remaining unpaid, with interest as provided in the NOTE. No recovery of any judgment by the BENEFICIARIES and no levy of an execution under any judgment upon the SECURED PROPERTY or upon any other property of the GRANTOR shall affect in any manner or to any extent the lien of this MORTGAGE upon the SECURED PROPERTY or any part thereof, or any liens, rights, powers, or remedies of the BENEFICIARIES hereunder, and such liens, rights, powers, and remedies shall continue unimpaired as before. Any monies thus collected by the BENEFICIARIES under this Section shall be applied by the BENEFICIARIES in accordance with the provisions of Section 3.1.1.

Section 3.3.     Remedies Nonexclusive.  The rights and remedies provided in this Article 3 upon the occurrence and during the continuance of an EVENT OF DEFAULT existing beyond the expiration of any applicable notice and cure period, shall be nonexclusive and shall be in addition to all other remedies and rights available under this MORTGAGE and the NOTE or applicable law. All rights and remedies available upon the occurrence and during the continuance of an EVENT OF DEFAULT existing beyond the expiration of any applicable notice and cure period shall be cumulative and the exercise of any one or more of the available rights and remedies shall not be considered as or result in a waiver of any other right or remedy and any particular right or remedy may be exercised in conjunction with any or all other rights and remedies provided hereunder.

## ARTICLE 4
## MISCELLANEOUS

Section 4.1.     Waivers. The BENEFICIARIES may at any time or from time to time waive all or any rights under this MORTGAGE or the NOTES, but any waiver or indulgence by the BENEFICIARIES at any time or from time to time shall not constitute, unless specifically so expressed by the BENEFICIARIES in writing, a future waiver of performance or exact performance by the GRANTOR.

Section 4.2.     Binding Obligation. This MORTGAGE shall be binding upon the parties and their successors and assigns.

Section 4.3. <u>Final Agreement</u>. This MORTGAGE and the NOTE contain the final and entire agreement and understanding of the parties, and any terms and conditions not set forth in this MORTGAGE or the NOTE are not a part of this MORTGAGE and the understanding of the parties hereto.

Section 4.4. <u>Amendment</u>. This MORTGAGE may be amended or altered only in a writing signed by the party to be bound by the amendment, change or alteration.

Section 4.5. <u>Notices</u>. Any notice required or permitted by or in connection with this MORTGAGE shall be in writing and shall be sent by certified mail, return receipt requested or overnight delivery to the party at its address on the NOTE and shall be effective upon its receipt.

Section 4.6. <u>Incorporation by Reference</u>. The terms, conditions, and provisions of the NOTE are incorporated by reference in this MORTGAGE to the same extent as if set forth in full in this MORTGAGE. Should any of the terms, conditions, and provisions of any other LOAN DOCUMENT conflict with the terms, conditions, or provisions of this MORTGAGE, the BENEFICIARIES shall be entitled to select which of the terms, covenants, and conditions shall govern and control.

Section 4.7. <u>Joint and Several Beneficiaries</u>. If there exists more than one BENEFICIARY, an action for judicial foreclosure of the MORTGAGE shall require the joinder of all BENEFICIARIES.

Section 4.8. <u>Invalidity</u>. If any provision or part of any provision contained in this MORTGAGE shall be found for any reason to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions or the remaining part of any effective provisions of this MORTGAGE and this MORTGAGE shall be construed as if such invalid, illegal, or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

Section 4.9. <u>Choice of Law</u>. The laws of the State of Illinois (excluding, however, conflict of law principles) shall govern and be applied to determine all issues relating to this MORTGAGE and the rights and obligations of the parties hereto, including the validity, construction, interpretation, and enforceability of this MORTGAGE and its various provisions.

Section 4.10. <u>Consent to Jurisdiction; Agreement As To Venue</u>. The GRANTOR and BENEFICIARIES (by accepting the grant of this MORTGAGE), irrevocably consent to the non-exclusive jurisdiction of the courts of the State of Illinois, including the United States District Court located in Illinois, if a basis for federal jurisdiction exists. The GRANTOR and the BENEFICIARIES agree that venue shall be proper in any circuit court of the State of Illinois selected by the other party or in any United States District Court located in State of Illinois if a basis for federal jurisdiction exists and waive any right to object to the maintenance of a suit in any of the state or federal courts of the State of Illinois on the basis of improper venue or of inconvenience of forum.

Section 4.11. <u>Time</u>. Time is of the essence with respect to all OBLIGATIONS.

Section 4.12. <u>USA Patriot Act</u>. Neither the GRANTOR nor any affiliate of GRANTOR shall at any time be identified in any list of known or suspected terrorists published by any United States government agency, including, without limitation, (i) the annex to Executive Order 13224 issued on September 23, 2001 by the President of the United States and (ii) the Specially Designated Nationals List published by the United States Office of Foreign Assets Control.

Section 4.13.   Counterparts.  This MORTGAGE may be executed in two or more counterparts, which when taken together shall constitute one and the same instrument.

Section 4.14.   Waiver of Trial By Jury.   The GRANTOR, by its execution, and the BENEFICIARIES, by their acceptance, of this MORTGAGE, agree that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by either party hereto or any successor or assign of any party on or with respect to this MORTGAGE or which in any way relates, directly or indirectly, to this MORTGAGE or any event, transaction, or occurrence arising out of or in any way connected with this MORTGAGE, or the dealings of the parties with respect thereto (including without limitation any claims arising as a result of or in any way related to any foreclosure or other enforcement actions or the exercise by the BENEFICIARIES of any remedies), shall be tried only by a court and not by a jury. **EACH PARTY HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING.**

[Signature and Notary Acknowledgment Follow on Next Page]

[Signature and Notary Acknowledgment to MORTGAGE]

IN WITNESS WHEREOF, the GRANTOR has duly executed this MORTGAGE under seal as of the date first above written.

WITNESS/ATTEST:                                    GRANTOR:

                                                    SSPH 11117 S LONGWOOD, LLC

_____          By: _____ (Seal)

STATE OF Florida
COUNTY OF manatee , to wit:

I HEREBY CERTIFY, that on this 28 day of November , 2017, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Jerry Cohen , the manager of SSPH 11117 S Longwood, LLC, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within Mortgage and acknowledged that being duly authorized he executed the same for the purposes therein contained and in the capacity therein stated.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

> JESSICA BAIER
> MY COMMISSION # GG135506
> EXPIRES August 17, 2021

_____ (SEAL)
Notary Public: Jessica Baier

My Commission Expires: August 17, 2021

12

**EXHIBIT A**
(Legal Description)

LOTS 5, 6, 7 AND THE NORTH 25 FEET OF LOT 8 IN BLOCK 72 IN THE SUBDIVISION BY THE BLUE ISLAND LAND AND BUILDING CO. KNOWN AS WASHINGTON HEIGHTS, IN SECTION 19, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, COOK COUNTY, ILLINOIS.

Permanent Index Number: 25-19-113-010-0000

Property Address: 11117-11137 S Longwood Dr. Chicago, IL 60643

**EXHIBIT B**

## BENEFICIARIES

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| 88 Legacy LLC | $50,000 | 0.96% |
| Agee Family Trust | $25,000 | 0.48% |
| Alan Schankman | $50,000 | 0.96% |
| Allred Living Trust dated 12/07/2016 | $50,000 | 0.96% |
| Asians Investing In Real Estate LLC | $150,000 | 2.88% |
| Blue Mountain Ventures PSP 401K | $100,000 | 1.92% |
| Braden Galloway | $102,238 | 1.97% |
| Brook Swientisky | $50,000 | 0.96% |
| Btrue LLC | $50,000 | 0.96% |
| Chestnut Capital LLC | $50,000 | 0.96% |
| Concorde Management, LLC | $60,000 | 1.15% |
| Cree Capital Ventres, LLC | $250,000 | 4.81% |
| Danyel Tiefenbacher & Jamie Lai | $50,000 | 0.96% |
| David M. Harris | $32,700 | 0.63% |
| DeeAnn Nason | $50,000 | 0.96% |
| DISTRIBUTIVE MARKETING LLC | $55,000 | 1.06% |
| DK Phenix Investments LLC | $75,000 | 1.44% |
| Eco2 Capital inc 401k | $50,000 | 0.96% |
| Edge Investments, LLC | $100,000 | 1.92% |
| Gallowglass LLC | $50,000 | 0.96% |
| Grathia Corporation | $53,000 | 1.02% |
| Hillside Fund, LLC | $75,000 | 1.44% |

| | | |
|---|---|---|
| iPlanGroup Agent for Custodian FBO David Trengove IRA Account#3300951 | $46,000 | 0.88% |
| James S Factor TTEE James S Factor Revocable Trust U/A DTD 05/23/2008 | $15,000 | 0.29% |
| James Tutsock | $250,000 | 4.81% |
| JFKN Investment trust | $25,000 | 0.48% |
| John McDevitt | $100,000 | 1.92% |
| John S Ennema & Roswitha M Ennema | $5,000 | 0.10% |
| Koates LLC | $50,000 | 0.96% |
| Kristien Van Hecke as trustee of DK Phenix Investments LLC 401 (k) FBO Kristien Van Hecke | $25,000 | 0.48% |
| Leon Liu | $150,000 | 2.88% |
| Madison Trust Company Custodian FBO Bruce Walter M1705137 | $50,000 | 0.96% |
| Madison Trust Company Custodian FBO Harry Shaffer #M1707067 | $100,000 | 1.92% |
| Madison Trust Company Custodian FBO Patrick Coppinger M1708149 | $60,000 | 1.15% |
| Madison Trust Company Custodian FBO Rajesh Gupta #M1707030 | $265,562 | 5.11% |
| Mary Chang Family Trust | $100,000 | 1.92% |
| Mike M. Cocos & Loryn T. Cocos | $50,000 | 0.96% |
| Nancy Fillmore | $50,000 | 0.96% |
| Paul N. Wilmesmeier | $15,000 | 0.29% |
| Paul S. Applefield, DDS, 401K Plan | $11,000 | 0.21% |
| Petra Zoeller | $199,000 | 3.83% |
| PNW Investments, LLC | $18,000 | 0.35% |

| | | |
|---|---|---|
| Quest IRA, Inc. FBO Paul S. Applefield Roth IRA | $7,000 | 0.13% |
| Quest IRA, Inc. FBO Robin Applefield Roth IRA | $7,000 | 0.13% |
| Rajitha Dundigalla | $50,000 | 0.96% |
| RAVIN3 LLC | $400,000 | 7.69% |
| Rinku Uberoi | $250,000 | 4.81% |
| Rise Up Real Estate Group, LLC | $125,000 | 2.40% |
| Robert Jennings | $150,000 | 2.88% |
| Samuel Cratis | $22,650 | 0.44% |
| Scott H. Eaton | $50,000 | 0.96% |
| Serva Fidem, LLC | $25,000 | 0.48% |
| Steven & Annamarie Trzaska | $100,000 | 1.92% |
| Steven Bald | $45,000 | 0.87% |
| Sunshine Bliss, LLC | $25,300 | 0.49% |
| Sunwest Trust Inc. FBO John B. Allred IRA #1612618 | $13,200 | 0.25% |
| Sunwest Trust, Custodian fbo Joeseph E. Kennedy IRA #161595 | $50,000 | 0.96% |
| The Melbourne Kimsey II Revocable Trust | $50,000 | 0.96% |
| The Shaw Family Trust | $50,000 | 0.96% |
| The Steven G. Mouty Trust | $150,000 | 2.88% |
| Timothy Sharp | $50,000 | 0.96% |
| William H. Akins, Jr., LLC | $250,000 | 4.81% |
| WT Investment Trust | $17,350 | 0.33% |
| Zouhair and Nada Stephan | $150,000 | 2.88% |

Exhibit

5

312-421-6700 is Chicago
FBI Crime Complaint

& US Attorney

Tyler, please call the FBI "Mortgage Fraud" Unit. Tell them that Equitybuild Inc is a ponzi scheme. It is run by Jerry Cohen at 980 Scott Drive, Marco Island FL 239-537-5055   Jerry @ equitybuild.com & Shaun Cohen 215-407-5777. They take investors money thru Shaun. They find buyers, see the Equity build website. They buy the property + resell it the same day for alot more money, add rehab costs, shaun as lender sends investor $ to, Jerry. So Shaun is using investor $ to buy + rehab properties owned by his father Jerry. crazy Mortgages are put on the property & Equitybuild absorbs them. Call Steve Nomura 773-255-5937 / 773-947-9077 & he'll tell you about a property he sold to Equitybuild & you'll get it

SHAUN @ EQUITYBUILD.com

HARD MONEY COMPANY Inc (Florida)

Please also call attorney Mark Herrichet give him the pile of cases ASAP.

Also, very important, tell the feds that Maria Norris, owner of City Suburban Title is a knowing participant. I told

him when I dropped this client &
City suburban that Equity build
were crooks, I screamed at him to
stop writing titles but he is an
equal & full participant & its
going on now, they are buying alot
of Chicago properties quickly - look
at recorders website for Equity build
deeds & you will instantly see this.
Mark Norris 847-942-7601    MNORRIS @ CSTTITLE.com

I wanted to add for the record, I
had no idea they were corrupt until
right before I withdrew which is
why I withdrew. I'm sorry for
the investor,

Give to kedo-

Jerry @ equitybuild.com
Jerry Cohen1234 @ gmail.com
Jerry Cohen@ equitybuild.com

~~Shawn~~

SHAVN. D. COHEN @ gmail.com
Shawn @ equitybuild.com
Shawn @ equitybuildfinance.com
Shawn @ hardmoneybankers.com

M Norris 343 @ gmail.com
M Norris @ CSTTITLE.COM

**Grab 5 people total**

## TO POLICE

Before my name gets public, call
MARCO ISLAND FLORIDA Police +
detain Jerry + Patricia ② Cohen at
980 Scott Drive, Mans Island FL
Jerry was in there with his son SHAUN ③ Cohen

Also try to grab ④ Jessica Baier
she's a notary registered in FLORIDA
She works for Jerry - look up her notary
for address

Also Grab ⑤ MARK NORRIS president of
⑤ City suburban title in
Des Plaines

Try to get SHAUN Cohen - don't know where
They are all involved w/ Equitybuild Inc,
a ponzi scheme involving real estate
flips in Chicago. They've made millions.
I was their attorney. ~~For They~~ I just
learned Jerry Cohen + his nephew Scot
Cohen were convicted of a major
rental fraud scheme in Philadelphia in
1999.
I didn't know they were corrupt until I withdrew

They will flee -

# I left a detailed note at home
(the Equitybuild files are in my storage space about Equitybuild)
at home

*(margin, left side, vertical):* SHAUN 215
HOH 5777
SHAUN # HOH 512 5777

Case: 1:16-cv-05697 Document #: 1227 Filed: 03/28/22 Page 65 of 162 PageID #:84922

653 Rhodes – Steve Nomura

Property tax bill after he sold property
vacant property 6 months to a year later
they got $150 – $160 K from lenders
sales price at $77 – $80 K
dad was attorney → Equitybuild
Mortgage fraud.


saw Dad at closing 3 weeks ago again


*David P.

case     *Rony ~~was~~ Khezeran of First Chicago Mortgage Co.
#1:          – revoked 1 licenses
             – issued $20 K in fines for co.
             – each loan officer $10 K for violations

Tyler—
Give this
to FBI Now

PLEASE HAVE FBF
try to stop Jerry
Cohen, Shawn Cohen
& Mark Norris from
Fleeing— Act Now.

Call my partner Tyler
at 312 - 719
2840
He's working at COACH in Water Tower Place
til 5 pm
to DAY

Lindsay & Tyler - You
were the love of my both
life! you were perfect! This was nothing
to do with U -

**From:** Anthony Marsala <amarsala@bloomfieldcapital.com>
**Sent:** Friday, September 1, 2017 11:05 AM
**To:** Matt Turzewski
**Subject:** FW: [Notes] IL_Chicago_Cohen_Multifamily | Site Visit Recap

From our call Wednesday, just for your reference

**From:** Anthony Marsala [mailto:amarsala@bloomfieldcapital.com]
**Sent:** Wednesday, August 30, 2017 5:27 PM
**To:** Anthony Marsala (amarsala@bloomfieldcapital.com) <amarsala@bloomfieldcapital.com>
**Subject:** [Notes] IL_Chicago_Cohen_Multifamily | Site Visit Recap

- Sponsor group we know well, focuses mostly on South Side Chicago market
- Control 1,500 units
- Have done 2 previous deal with the sponsor
- Paid off larger loan originated in January
- Have a loan outstanding from December, still turning units, will likely refi later this year
- Loan is a little different than prior 2 which were acquisitions, this will be a refinancing of an existing project
- They bought these properties prior to setting up the operations team they now have in Chicago
- Prior operators execution was poor, didn't effectively manage the capital improvements
- Sponsor is asking for a $5.0mm net loan today to refinance the existing debt from independent lender partners on the project and fund additional capital improvements
- Sponsor will bring $1.3mm of new equity for capex funds
- There are 5 total properties; effectively 4 because 2 are directly adjacent to each other
- This is a rougher submarket, from Jason/Matt's impression it is not as strong as Hyde Park area where we did our last 2 deals
- Still in between quality of Hyde Park (better) and Englewood and Austin (worst)
- Borrower in for $45k/key, Bloomfield in for $32k/key
- Mike Dever will be going through assets next week to try and validate planned improvements of $10k/units
- Properties are between 20-60% occupancy today, so obviously not stabilized
- Property management plan is to begin turning units once capital improvements have been made; they're really trying to get htem on the market by October otherwise they'll miss the critical rental period in their view
- Ultimate plan is to refinance with bridge to Fannie from sources they've used on previous deals
- Jason expected assets to be in worst shape / condition than they actually were; some even had stainless steel and hardwood in some cases
- Neighborhood looked relatively safe, not a ton of boarded up homes or loitering residents
- 47 unit property in Muskegon was the most distressed, had an abandoned vacant building across the street
- Biggest questions are what achievable rents are given the lack of stabilized product for market rent comparables and the impact of CHA HUD vouchers
- Borrower thinks they can push up the rental rates on the unit from the HUD vouchers and those tenants tend to stay a bit longer as well
- Occupancy has been low because of the lack of focus from the equity owners who were sourced via Equity Build and the deals ultimately were undercapitalized
- Investors actually came in as private lenders in effect, Cohen is representing that they have the right to remove them
- We need to understand if they're going to put another $1.3mm into the deal, are they going to syndicate that as well
- Vacant trades have been around $30k/unit

**Anthony Marsala | Bloomfield Capital**
Detroit | Chicago | Denver | Greenwich
Desk: (248) 220-2419 | Cell: (810) 569-6821 | Main: (248) 745-1700
amarsala@bloomfieldcapital.com

Exhibit

6

1

BC570000998

www.bloomfieldcapital.com

This electronic message and all contents and attachments contain information from BLOOMFIELD CAPITAL PARTNERS, LLC. The information contained in this e-mail message is intended only for the personal and confidential use of the recipients named above. This message may be a communication between BLOOMFIELD CAPITAL PARTNERS, LLC and its existing or future clients, contacts, counsel, agents or advisors and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original message.

BC570000999

**From:** Matt Turzewski <matt@bloomfieldcapital.com>
**Sent:** Wednesday, August 9, 2017 11:16 PM
**To:** Jason Jarjosa
**Subject:** Fwd: CoStar - South Shore Multifamily
**Attachments:** Chicago MF Deal (Equity Build).xlsx; 7201 Constance 10 Year Pro Forma (1).pdf; 7625-35 S East End 10 Year Pro Forma (1).pdf; 7752 Muskegon 10 Year Pro Forma (1).pdf; South Shore, once thriving, struggles amid economic erosion and crime - Chicago Tribune.pdf

Jason - Please see attached/below. This is Tyler's deal in South Shore, south of Hyde Park. Ahmad put together the attached summary. They acquired three properties totaling 137 units in December 2014 and summer 2015 for a combined price of $4.205 million ($30,700/unit) cash. Since acquiring them, they've invested an additional $550k into renovations for a total cost basis of $4.755 million ($34,700/unit). They bought these with a partner and have since had a falling out.

They are requesting a ~$5.0 million ($37k/unit) loan to buyout their partner ($3.75 million), plus an additional $1.0 million to complete the construction and $115k to clear some property taxes that weren't paid by a former property manager. Our net loan less reserves at closing would be $3.75 million ($27k/unit).

We pulled sale comps and Ahmad differentiated between renovated/stabilized and unrenovated/unstabilized. Renovated/stabilized average $55k/unit at a 9% cap rate.

We have minimal info at this stage from Tyler, and need to understand what happened with their partner, but it seems interesting at that basis. I've also found some negative articles (one attached) on the immediate area.

Let me know what you think and if I should work on a term sheet. Their prior deals were 11/4 with 12-month prepay. Thanks



**Matthew V. Turzewski | Bloomfield Capital**

1

Exhibit

7

BC570000940

Detroit | Chicago | Denver | Greenwich

Desk: (248) 220-2407 | Main: (248) 745-1700 | Mobile: (810) 923-9288

matt@bloomfieldcapital.com

www.bloomfieldcapital.com

This electronic message and all contents and attachments contain information from BLOOMFIELD CAPITAL PARTNERS, LLC. The information contained in this e-mail message is intended only for the personal and confidential use of the recipients named above. This message may be a communication between BLOOMFIELD CAPITAL PARTNERS, LLC and its existing or future clients, contacts, counsel, agents or advisors and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original message.

---------- Forwarded message ----------
From: **Syed Ahmad** <sahmad@bloomfieldcapital.com>
Date: Wed, Aug 9, 2017 at 7:08 PM
Subject: Re: CoStar - South Shore Multifamily
To: Matt Turzewski <matt@bloomfieldcapital.com>

Hi Matt,

Attached is a quick investment summary I put together.

Thoughts:

- Know the sponsors, have successfully done deals with them before, and they have plenty of experience with this asset class in this location
- Asking for $37k/unit
  - Have invested $35k/unit so far
  - Will invested $8k/unit more to bring the total invested to $42k/unit
  - Claiming its worth on average $61k/unit post-renovation
  - I think it is worth $55k/unit post-renovation conservatively (It would be 68% gross LTV at this valuation)

- Post renovation MF units seem to be going for $50k/unit all the way up to $70k/unit
  - Seems with renovations you can push 10 or 11 CAPs down to 8 and 9 CAPS
- Even if we can only get $50k/unit, we would be at a 75% gross LTV, which I believe given our relationship with the sponsors and their experience in the area, as well as the strong market for MF in that area, is doable.

- Side note: Their Recapitalization excel might be a little old as their rent rolls and the amount they said they have invested into the property did not agree with that document.
  - Rent roll shows higher occupancy
  - They said they have spent more around $780k rather than $550k

Thanks,

- Ahmad

2

BC570000941

On Wed, Aug 9, 2017 at 5:12 PM, Matt Turzewski <matt@bloomfieldcapital.com> wrote:
Please get me your thoughts before you leave today. Thanks

## Matthew V. Turzewski | Bloomfield Capital

Detroit | Chicago | Denver | Greenwich

Desk: (248) 220-2407 | Main: (248) 745-1700 | Mobile: (810) 923-9288

matt@bloomfieldcapital.com

www.bloomfieldcapital.com

This electronic message and all contents and attachments contain information from BLOOMFIELD CAPITAL PARTNERS, LLC. The information contained in this e-mail message is intended only for the personal and confidential use of the recipients named above. This message may be a communication between BLOOMFIELD CAPITAL PARTNERS, LLC and its existing or future clients, contacts, counsel, agents or advisors and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original message.

--

## Syed Ahmad | Bloomfield Capital

Detroit | Chicago | Denver | Greenwich

Desk: (248) 220-2416 | Main: (248) 745-1700 | Mobile: (517) 515-1978

sahmad@bloomfieldcapital.com

www.bloomfieldcapital.com

This electronic message and all contents and attachments contain information from BLOOMFIELD CAPITAL PARTNERS, LLC. The information contained in this e-mail message is intended only for the personal and confidential use of the recipients named above. This message may be a communication between BLOOMFIELD CAPITAL PARTNERS, LLC and its existing or future clients, contacts, counsel, agents or advisors and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original message.

BC570000942

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption

Doc#: 1501656187 Fee: $52.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 01/16/2015 03:13 PM Pg: 1 of 8



Doc#: 1504856045 Fee: $54.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 02/17/2015 03:26 PM Pg: 1 of 9
Date: 02/17/2015 03:26 PM Pg: 1 of 9

**Report Mortgage Fraud**
**800-532-8785**
875-132-8647

The property identified as: **PIN:** 21-30-400-034-0000

**Address:**
**Street:** 7752 S. Muskegon Ave
**Street line 2:**
**City:** Chicago **State:** IL **ZIP Code:** 60649

**Lender:** The Persons Listed on Exhibit A to the Mortgage c/o Hard Money Company LLC

**Borrower:** EquityBuild, Inc.

**Loan / Mortgage Amount:** $2,250,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

*This instrument is being re-recorded to correct Exhibit A*

**Exhibit**
**8**

**Certificate number:** 940EBDCA-8054-464E-A6F5-68282BAAC141 **Execution date:** 12/30/2014

Order: IL1803356
Doc: 1504856045 MTGRRR 02-17-2015
Page 1 of 9    Requested By: Gregory Henderson , Printed: 4/10/2018 9:31 AM

BC570009566

PTS 1328647

Mail To: Hard Money Company
5068 W. Plano Pkwy
Ste. 300
Plano, TX 75093 [The Above Space For Recorder's Use Only]_____

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on December 30th, 2014. The mortgagor is EquityBuild, Inc. ("Borrower").

This Security Instrument is given to The Persons Listed on <u>Exhibit A</u> to the Mortgage C/O Hard Money Company, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of Two Million Two Hundred Fifty Thousand and 00/100 Dollars (U.S. $2,250,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument, which provides for a final payment of the full debt, if not paid earlier, due and payable January 1st, 2017. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 21-30-400-034-0000

which has the address of 7752 S Muskegon Ave. Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BC570009567

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

BC570009568

4. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. Successor and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent.

6. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

8. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

9. Transfer of the Property or a beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Order: IL1803356
Doc: 1504856045 MTGRRR 02-17-2015                    Page 4 of 9    Requested By: Gregory Henderson , Printed: 4/10/2018 9:31 AM

BC570009569

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

10. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. Assignment of Rents and Leases. As additional security for the payment of the Indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases.In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser.Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail.If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____(SEAL)
Jerry Cohen, BORROWER

_____[Space Below This Line For Acknowledgement]_____

STATE OF FLORIDA, Lee_____ County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared <u>Jerry Cohen</u>, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this 22 day of December, 2014.

My Commission expires:

{Seal}

Jessica Ann Baier
Notary Public

> **JESSICA ANN BAIER**
> MY COMMISSION #FF019714
> EXPIRES July 26, 2017
> (407) 398-0153    FloridaNotaryService.com

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Mark E. Young 5224 SW 40th Terrace Topeka, KS 66610 | $100,000 | 4.44% |
| The Kingdom Trust Company, Custodian, FBO Louis Duane Velez, Account #7422686172 | $100,000 | 4.44% |
| The Edward Falkowitz Living Trust | $111,000 | 4.93% |
| TFG Retirement Trust | $46,000 | 2.04% |
| Paul Wilmesmeier | $50,000 | 2.22% |
| Terry L. Merrill & Sheryl R. Merrill | $50,000 | 2.22% |
| Walter Akita | $50,000 | 2.22% |
| Alton P. Motes Trust UTA 12-15-11 | $43,000 | 1.91% |
| American Estate & Trust LC FBO Robert Mennella | $50,000 | 2.22% |
| Steven and Linda Lipshultz | $100,000 | 4.44% |
| Mark Mouty | $50,000 | 2.22% |
| The Income Fund, LLC | $150,000 | 6.67% |
| Quest IRA, Inc. FBO Francis Webb IRA #1437711 | $50,000 | 2.22% |
| Penny Adams | $75,000 | 3.33% |
| Daniel J Martineau | $100,000 | 4.44% |
| Equity Trust Company Custodian FBO Henry D. Gallucci beneficiary of DCD Victoria E. Gallucci IRA 2.67% Undivided interest | $60,000 | 2.67% |
| Equity Trust Company Custodian FBO Gavin Maher CESA | $15,000 | 0.67% |
| Equity Trust Company Custodian FBO Travis Maher CESA | $10,000 | 0.44% |
| Equity Trust Company Custodian FBO Avery Maher CESA | $11,000 | 0.49% |
| Christopher Maher | $14,000 | 0.62% |
| Christopher Wilson and Brittny Niosi | $50,000 | 2.22% |
| Self Directed IRA Services, Inc., Custodian FBO Ping Liu IRA | $50,000 | 2.22% |
| Scott E. Pammer | $70,000 | 3.11% |
| Jeremy Hemphill | $50,000 | 2.22% |
| The Celia Tong Revocable Living Trust, dated December 22, 2011 | $25,000 | 1.11% |
| iPlanGroup Agent for Custodian FBO Ed Bancroft IRA | $20,000 | 0.89% |
| Donald J. and April L. Wegrzyn | $50,000 | 2.22% |
| Fraser Realty Investments, LLC | $100,000 | 4.44% |

| | | |
|---|---|---|
| Hillside Fund, LLC | $125,000 | 5.55% |
| Matthew T. Boyd | $50,000 | 2.22% |
| H Derrick, LLC | $100,000 | 4.44% |
| Arthur L and Dinah F Bertrand | $100,000 | 4.44% |
| The Anchor Group LLC | $25,000 | 1.11$ |
| Gary Burnham Solo 401K Trust | $100,000 | 4.44% |
| Deborah Mullica | $82,255 | 3.66% |
| John Wysocki | $17,745 | 0.79% |

Commitment Number:   1328647

LOT 132 IN DIVISION 2 IN WESTALL SUBDIVISION OF 208 ACRES BEING THE EAST 1/2 OF THE
SOUTHWEST 1/4 AND THE SOUTH EAST FRACTIONAL 1/4 OF SECTION 30 TOWNSHIP 39 NORTH
RANGE 15 EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY, ILLINOIS

21-30-400-034-0000
7752 S. MUSKEGON AVE. CHICAGO IL

PRIMARY TITLE SERVICES, LLC
8833 GROSS POINT ROAD #205 - SKOKIE, IL 60077-1859
(P) 847-677-8833 (F) 847-673-8833
A Policy Issuing Agent for
FIRST AMERICAN TITLE INSURANCE COMPANY

Commitment
Exhibit A

(1328647.PFD/1328647/18)

Order: IL1803356                                        Page 9 of 9      Requested By: Gregory Henderson  , Printed: 4/10/2018 9:31 AM
Doc: 1504856045 MTGRRR 02-17-2015

BC570009574

Illinois Anti-Predatory
Lending Database
Program

Certificate of Exemption

Doc#: 1625250140 Fee: $54.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 09/08/2016 02:50 PM Pg: 1 of 9

**Report Mortgage Fraud**
**800-532-8785**

The property identified as: **PIN:** 21-30-414-040-0000

**Address:**
**Street:** 3074 E Cheltenham Pl.
**Street line 2:**
**City:** Chicago          **State:** IL          **ZIP Code:** 60649

**Lender:** The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC

**Borrower:** EquityBuild, Inc

**Loan / Mortgage Amount:** $2,200,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** 73A9AE25-FD60-47C0-88AD-85F0614BBDF3          **Execution date:** 7/14/2016

BC570017332

Mail To:

Equity Build Finance, LLC
5068 W. Plano Pkwy, #300
Plano, TX 75093 _____ [The Above Space For Recorder's Use Only] _____

### MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on July 14th, 2016. The mortgagor is EquityBuild, Inc. ("Borrower").

This Security Instrument is given to The Persons Listed on Exhibit A to the Mortgage C/O EquityBuild Finance, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of Two Million Two Hundred Thousand and 00/100 Dollars (U.S. $2,200,000.00). This debt is evidenced by Borrower's notes dated the same date as this Security Instrument (Mortgage), which provides for a final payment of the full debt, if not paid earlier, due and payable January 1st, 2018. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 21-30-414-040-0000

which has the address of 3074 E Cheltenham Pl. Chicago, IL 60649 ("Property Address"), (also known as 7836 S South Shore Drive, Chicago, IL, 60649);

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BC570017333

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

BC570017334

4. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. Successor and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent.

6. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

8. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

9. Transfer of the Property or a beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BC570017335

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

10. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. Assignment of Rents and Leases. As additional security for the payment of the Indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases. In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser. Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail. If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

BORROWER: EquityBuild, Inc.

_____ (SEAL)
Jerry Cohen, President

_____[Space Below This Line For Acknowledgement]_____

BC570017336

STATE OF FLORIDA, manatee _____ County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared Jerry Cohen, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this 14 day of July ____, 20 16.

My Commission expires: July 26, 2017

{Seal}

Notary Public

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153    FloridaNotaryService.com

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Danyel Tiefenbacher & Jamie Lai | $50,000 | 2.27% |
| The Entrust Group Inc. FBO Jill Halverson IRA #33-21296 | $50,000 | 2.27% |
| MayREI LLC | $86,515 | 3.93% |
| iPlanGroup Agent for Custodian FBO Christopher Pong IRA | $29,280 | 1.33% |
| iPlanGroup Agent for Custodian FBO Julia Pong IRA | $34,572 | 1.57% |
| Kevin Randall | $50,000 | 2.27% |
| Alton P. Motes & Vicki Elaine Washburn JTWROS | $80,000 | 3.64% |
| Paul N. Wilmesmeier | $25,000 | 1.14% |
| iPlanGroup Agent for Custodian FBO James B. Ploeger IRA | $6,300 | 0.29% |
| Flying Hound Holdings, LLC | $18,553 | 0.84% |
| Pat Desantis | $110,000 | 5.00% |
| Adir Hazan | $50,000 | 2.27% |
| Optima Property Solutions LLC | $60,000 | 2.73% |
| Quest IRA Inc. FBO Francis Webb IRA #1437711 | $22,035 | 1.00% |
| Kester Brothers Farm, LLC | $50,000 | 2.27% |
| James Hoven | $50,000 | 2.27% |
| 2nd City Solo 401K Trust | $20,000 | 0.91% |
| Joshua Morrow | $50,000 | 2.27% |
| D & D Investment Circle LLC | $30,000 | 1.36% |
| iPlan Group Agent for Custodian FBO Yvette Camacho IRA | $30,000 | 1.36% |
| Madison Trust Company Custodian FBO Robert W. Jennings Account #M1605053 | $74,539 | 3.39% |
| iPlanGroup Agent for Custodian FBO Jyotsna Sharma IRA | $25,000 | 1.14% |
| Erika Dietz | $50,000 | 2.27% |
| iPlanGroup Agent for Custodian FBO Mark Young IRA | $100,000 | 4.55% |
| 1839 Fund I, LLC | $50,000 | 2.27% |
| Joseph M. Martinez & Linda M. Martinez | $50,000 | 2.27% |
| Ira J. Fields Living Trust, Glynis Sheppard, Trustee. | $50,000 | 2.27% |
| Terry L. Merrill & Sheryl R. Merrill | $50,000 | 2.27% |
| Equity Trust Company Custodian FBO Paula Levand IRA | $45,000 | 2.05% |
| TruStar Real Estate Solutions, LLC | $75,000 | 3.41% |
| Quest IRA, Inc. FBO Francisco A. Romero Sr. Acct.# 25282-11 | $56,000 | 2.55% |
| iPlan Group Agent for Custodian FBO Jacqueline C. Rowe IRA | $50,000 | 2.27% |
| G & M You-nique Properties LLC | $60,000 | 2.73% |
| Walter T. & Margaret M. Akita | $50,000 | 2.27% |
| Scott E. Pammer | $70,000 | 3.18% |
| Equity Trust Company Custodian FBO Stanley J. Kessock IRA | $50,000 | 2.27% |
| iPlan Group Agent for Custodian FBO Filomena Mora IRA | $38,400 | 1.75% |
| KKW Investments | $1,600 | 0.07% |
| PNW Investments, LLC | $10,000 | 0.45% |
| New Move Ventures Inc. | $50,000 | 2.27% |
| iPlanGroup Agent for Custodian FBO Maria Christina Jorgensen IRA #3320820 | $42,000 | 1.91% |
| Vantage FBO Sidney Haggins IRA | $30,000 | 1.36% |
| Grathia Corporation | $100,000 | 4.55% |
| Vladimir Matviishin, dba Network Expert | $28,075 | 1.28% |

BC570017338

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Susan Tingle | $50,000 | 2.27% |
| Samuel Home Solutions, LLC | $42,131 | 1.92% |

BC570017339

The Easterly 120 feet of Lot 114 in Division One of Westfall's Subdivision of 208 acres, being the East 1/2 of the Southwest 1/4 and the Southeast fractional 1/4 of Section 30, Township 38 North, Range 15, East of the Third Principal Meridian, in Cook County, Illinois

BC570017340

# Illinois Anti-Predatory
# Lending Database
# Program

## Certificate of Exemption



Doc#: 1602156229 Fee: $52.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 01/21/2016 02:29 PM Pg: 1 of 8

**Report Mortgage Fraud**
**800-532-8785**

The property identified as:          **PIN:** 20-25-310-008-0000

**Address:**
**Street:**          7625 S East End
**Street line 2:**
**City:** Chicago          **State:** IL          **ZIP Code:** 60649

**Lender:** The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC

**Borrower:** EquityBuild, Inc

**Loan / Mortgage Amount:** $1,605,749.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:** E62AC738-1D7B-4C55-8FE1-5AEBE1BC1338          **Execution date:** 10/29/2015

BC570017363

Mail To:

*Equity Build Finance*
*5068 W. Plano Pkwy, #300*
*Plano, TX 75093*

_____[The Above Space For Recorder's Use Only]_____

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on October 29th, 2015. The mortgagor is EquityBuild, Inc. ("Borrower").

This Security Instrument is given to The Persons Listed on Exhibit A to the Mortgage C/O EquityBuild Finance, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of One Million Six Hundred Five Thousand Seven Hundred Forty-Nine and 00/100 Dollars (U.S. $1,605,749.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument (Mortgage), which provides for a final payment of the full debt, if not paid earlier, due and payable November 1st, 2017. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 20-25-310-008-0000

which has the address of 7625 S East End, Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

BC570017365

DocuSign Envelope ID: 88728665-8590-4887-BDDA-623B25F83950A

4. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. **Successor and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent.

6. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

8. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

9. **Transfer of the Property or a beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DocuSign Envelope ID: 98128665-9E90-4887-BDDA-623B25B3950A

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

10. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. Assignment of Rents and Leases. As additional security for the payment of the Indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases. In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser. Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail. If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

BORROWER: EquityBuild, Inc.

_____(SEAL)
Jerry Cohen, President

_____[Space Below This Line For Acknowledgement]_____

DocuSign Envelope ID: 88728665-8590-4887-BDDA-623B2583950A

STATE OF FLORIDA, Manatee _____ County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared Jerry Cohen, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this 29 day of October , 20 15.

My Commission expires: July 26, 2017

{Seal}

_____
Notary Public

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
FloridaNotaryService.com

DocuSign Envelope ID: 88728665-8E90-4887-BDDA-623B2F83950A

## Exhibit A

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Brad & Linda Lutz | $397,836 | 24.78% |
| Asians Investing in Real Estate, LLC | $50,000 | 3.11% |
| Self-Directed IRA Services Inc. FBO David Geldart | $107,362 | 6.69% |
| iPlanGroup Agent for Custodian FBO Lorenzo Jaquias IRA | $50,000 | 3.11% |
| Edge Investments, LLC | $176,226 | 10.97% |
| KKW Investments, LLC | $75,000 | 4.67% |
| Peter P Nuspl | $217,100 | 13.52% |
| Pittman Gold, LLC | $150,000 | 9.34% |
| Steve Bald | $50,000 | 3.11% |
| iPlanGroup Agent for Custodian FBO Jacqueline Rowe IRA | $200,000 | 12.46% |
| Michael James Guilford and Nancy Richard-Guilford, jointly with right of survivorship | $92,561 | 5.76% |
| Knickerbocker, LLC | $39,664 | 2.47% |

BC570017369

DocuSign Envelope ID: 88788665-8E98-4987-BDDA-623B2F83950A

The North 6 feet of Lot 36 and all of Lots 37 to 40 in Block 11 in James Stinson's Subdivision of East Grand Crossing in the Southwest 1/4 of Section 25, Township 38 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois

BC570017370

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



Doc#: 1602156231 Fee: $52.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 01/21/2016 02:30 PM Pg: 1 of 8

**Report Mortgage Fraud**
**800-532-8785**

The property identified as:     **PIN:**  20-25-310-009-0000

**Address:**
**Street:**     7635 S. East End
**Street line 2:**
**City:** Chicago                    **State:** IL                    **ZIP Code:** 60649

**Lender:** The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC

**Borrower:** EquityBuild, Inc

**Loan / Mortgage Amount:** $1,703,649.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:**  928D33C0-C615-4D96-9B22-7240BC0F695A          **Execution date:** 10/29/2015

Order: IL1706750                                        Page 1 of 8     Requested By: Gregory Henderson  , Printed: 9/13/2017 8:05 AM
Doc: 1602156231 MTG 01-21-2016

BC570012935

Mail To:
Equity Build Finance
5068 W. Plano Pkwy, #300
Plano, TX 75093

_____[The Above Space For Recorder's Use Only]_____

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on October 29th, 2015. The mortgagor is EquityBuild, Inc. ("Borrower").

This Security Instrument is given to The Persons Listed on Exhibit A to the Mortgage C/O EquityBuild Finance, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of One Million Seven Hundred Three Thousand Six Hundred Forty-Nine and 00/100 Dollars (U.S. $1,703,649.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument (Mortgage), which provides for a final payment of the full debt, if not paid earlier, due and payable November 1st, 2017. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 20-25-310-009-0000

which has the address of 7635 S East End, Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Order: IL1706750
Doc: 1602156231 MTG 01-21-2016

BC570012936

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

Order: IL1706750
Doc: 1602156231 MTG 01-21-2016

BC570012937

4. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. Successor and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent.

6. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

8. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

9. Transfer of the Property or a beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Order: IL1706750
Doc: 1602156231 MTG 01-21-2016

BC570012938

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

10. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. Assignment of Rents and Leases. As additional security for the payment of the Indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases. In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser. Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail. If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

BORROWER: EquityBuild, Inc.

_____(SEAL)
Jerry Cohen, President

_____[Space Below This Line For Acknowledgement]_____

Order: IL1706750
Doc: 1602156231 MTG 01-21-2016

BC570012939

STATE OF FLORIDA, Manatee_____ County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared <u>Jerry Cohen</u>, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this 29th day of October____, 2015.

My Commission expires: July 26, 2017

{Seal}

Jessica Ann Baier
Notary Public

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153    FloridaNotaryService.com

Order: IL1706750
Doc: 1602156231 MTG 01-21-2016

BC570012940

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Leah Matthews | $72,029 | 4.23% |
| Michael James Guilford and Nancy Richard-Guilford, jointly with right of survivorship | $57,439 | 3.37% |
| iPlanGroup Agent for Custodian FBO Laura Dirnberger IRA | $10,000 | 0.59% |
| Equity Trust Company Custodian FBO Dorothy Marie Baker IRA | $10,000 | 0.59% |
| Paul N. Wilmesmeier | $50,000 | 2.93% |
| Robert Guiney | $18,097 | 1.06% |
| Equity Trust Company Custodian FBO Nagaraja R Rao IRA | $110,000 | 6.46% |
| John E. Bloxham | $50,000 | 2.93% |
| Asians Investing in Real Estate, LLC | $25,000 | 1.47% |
| Tiger Chang Investments, LLC | $25,000 | 1.47% |
| CAMA SDIRA LLC FBO Frank Starosciak IRA | $16,904 | 0.99% |
| Self-Directed IRA Services Inc. FBO James Clements | $20,000 | 1.17% |
| Manoj Donthineni | $43,914 | 2.58% |
| Carolyn Ucker | $25,000 | 1.47% |
| Self-Directed IRA Services Inc. FBO David Geldart | $11,938 | 0.70% |
| QCH Investment Trust | $50,000 | 2.93% |
| Total Return Income Fund, LLC | $520,000 | 30.52% |
| The Income Fund, LLC | $80,000 | 4.70% |
| Umbrella Investment Partners, LLC | $12,883 | 0.76% |
| GRB Properties LLC | $42,029 | 2.47% |
| Jeffry M. Edwards | $50,000 | 2.93% |
| Cecilia Wolff | $25,000 | 1.47% |
| Trey Hopkins | $100,000 | 5.87% |
| iPlanGroup Agent for Custodian FBO Winnie Quick IRA | $11,000 | 0.65% |
| Arthur L and Dinah F Bertrand | $217,448 | 12.76% |
| iPlanGroup Agent for Custodian FBO Timothy J. Goree IRA | $50,000 | 2.93% |

The North 14 feet of Lot 32 and all of Lots 33, 34, 35 and 36 (except the North 6 feet thereof) in Block 11 in James Stinson's Subdivision of East Grand Crossing in the Southwest 1/4 of Section 25, Township 38 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois

Order: IL1706750
Doc: 1602156231 MTG 01-21-2016

BC570012942

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



Doc#: 1532145039 Fee: $52.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 11/17/2015 12:07 PM Pg: 1 of 8

**Report Mortgage Fraud**
**800-532-8785**

The property identified as:       **PIN:** 20-25-119-001-0000

**Address:**
**Street:**       7201 S. Constance Avenue
**Street line 2:**
**City:** Chicago              **State:** IL              **ZIP Code:** 60649

**Lender:** EquityBuild Finance, LLC

**Borrower:** EquityBuild, Inc.

**Loan / Mortgage Amount:** $2,250,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is not owner-occupied.

**Certificate number:**  D441B8C0-5BA7-40FC-9C31-42479A20DEA8              **Execution date:** 7/22/2015

Order: IL1706750                                    Page 1 of 8      Requested By: Gregory Henderson  , Printed: 9/13/2017 8:05 AM
Doc: 1532145039 MTG 11-17-2015

BC570012919

Mail To: *Equity Build Finance*
*5068 W. Plano Pkwy, #300*
*Plano, TX 75093*

_____[The Above Space For Recorder's Use Only]_____

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on July 22nd, 2015. The mortgagor is EquityBuild, Inc. ("Borrower").

This Security Instrument is given to The Persons Listed on <u>Exhibit A</u> to the Mortgage C/O EquityBuild Finance, LLC whose address is 5068 West Plano Pkwy. #300 Plano, TX 75093 ("Lender").

Borrower owes Lender the principal sum of Two Million Two Hundred Fifty Thousand and 00/100 Dollars (U.S. $2,250,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument (Mortgage), which provides for a final payment of the full debt, if not paid earlier, due and payable August 1st, 2017. This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extension and modifications; (b) the payment of all other sums, with interest advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in COOK County, Illinois:

PIN: 20-25-119-001-0000

which has the address of 7201 S Constance Ave. Chicago, IL 60649 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Order: IL1706750     Page 2 of 8     Requested By: Gregory Henderson , Printed: 9/13/2017 8:05 AM
Doc: 1532145039 MTG 11-17-2015

BC570012920

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANT. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration and repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of sums secured by this Security Instrument immediately prior to the acquisition.

3. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

4. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Although Lender may take action under this paragraph 4, Lender does not have to do so.

5. Successor and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Interest shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey the Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent.

6. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

7. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

8. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

9. Transfer of the Property or a beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Order: IL1706750                                        Page 4 of 8    Requested By: Gregory Henderson , Printed: 9/13/2017 8:05 AM
Doc: 1532145039 MTG 11-17-2015

BC570012922

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

10. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

11. **Assignment of Rents and Leases.** As additional security for the payment of the Indebtedness, Mortgagor assigns and transfers to Mortgagee, pursuant to 1953 PA 210, as amended by 1966 PA 151 (MCLA 554.231 et seq., MSA 26.1137(1) et seq.), all the rents, profits, and income under all leases, occupancy agreements, or arrangements upon or affecting the Premises (including any extensions or amendments) now in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming under or through Mortgagor. This assignment shall continue to be operative during foreclosure or any other proceedings to enforce this Mortgage. If a foreclosure sale results in a deficiency, this assignment shall stand as security during the redemption period for the payment of the deficiency. This assignment is given only as collateral security and shall not be construed as obligating Mortgagee to perform any of the covenants or undertakings required to be performed by Mortgagor in any leases.In the event of default in any of the terms or covenants of this Mortgage, Mortgagee shall be entitled to all of the rights and benefits of MCLA 554.231-.233, MSA 26.1137(1)-(3), and 1966 PA 151, and Mortgagee shall be entitled to collect the rents and income from the Premises, to rent or lease the Premises on the terms that it may deem best, and to maintain proceedings to recover rents or possession of the Premises from any tenant or trespasser.Mortgagee shall be entitled to enter the Premises for the purpose of delivering notices or other communications to the tenants and occupants. Mortgagee shall have no liability to Mortgagor as a result of those acts. Mortgagee may deliver all of the notices and communications by ordinary first-class U.S. mail.If Mortgagor obstructs Mortgagee in its efforts to collect the rents and income from the Premises or unreasonably refuses or neglects to assist Mortgagee in collecting the rent and income, Mortgagee shall be entitled to appoint a receiver for the Premises and the income, rents, and profits, with powers that the court making the appointment may confer. Mortgagor shall at no time collect advance rent in excess of one month under any lease pertaining to the Premises, and Mortgagee shall not be bound by any rent prepayment made or received in violation of this paragraph. Mortgagee shall not have any obligation to collect rent or to enforce any other obligations of any tenant or occupant of the Premises to Mortgagor. No action taken by Mortgagee under this paragraph shall cause Mortgagee to become a "mortgagee in possession."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

BORROWER: EquityBuild, Inc.

_____(SEAL)
Jerry Cohen, President

_____[Space Below This Line For Acknowledgement]_____

BC570012923

STATE OF FLORIDA, Manatee _____ County ss:

I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared <u>Jerry Cohen</u>, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.

WITNESS my hand and official seal in the county and state aforesaid this 22 day of July _____, 2015 .

My Commission expires:

{Seal}

Notary Public

JESSICA ANN BAIER
MY COMMISSION #FF019714
EXPIRES July 26, 2017
(407) 398-0153    FloridaNotaryService.com

**Exhibit A**

| Lender Name | Principal Amount | Percentage of Loan |
|---|---|---|
| Towpath Investments LLC | $50,000 | 2.22% |
| Michael Borgia | $669,327 | 29.75% |
| Reynald Lalonde and Chantal Lemaire | $50,000 | 2.22% |
| Initium LLC, managed by Harry Saint-Preux | $50,000 | 2.22% |
| Steven J. Talyai | $150,000 | 6.67% |
| Shaw Family Trust | $55,000 | 2.44% |
| PNW Investments, LLC | $50,000 | 2.22% |
| John Sullivan | $50,000 | 2.22% |
| Arthur L and Dinah F Bertrand | $100,000 | 4.44% |
| Kirk Road Investments LLC | $63,000 | 2.80% |
| Equity Trust Company Custodian FBO Sidney Haggins IRA | $50,000 | 2.22% |
| Quest IRA, Inc. FBO Steven K. Chennappan IRA # 17293-31 | $10,000 | 0.44% |
| Edge Investments, LLC | $17,374 | 0.77% |
| Property Solutions, LLC | $60,000 | 2.67% |
| EquityBuild, Inc. | $825,299 | 36.68% |

Lots 13 and 14 (except the South 6 inches thereof) in Christopher Columbus Addition to Jackson Park, being a subdivision of the East 1/2 of the Northwest 1/4 of Section 25, Township 38 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois

| | |
|---|---|
| **From:** | Bagchi, Kasturi <KBagchi@honigman.com> |
| **Sent:** | Monday, September 18, 2017 11:09 AM |
| **To:** | Ioana Salajanu; Tyler DeRoo; Maribel Morales; Elizabeth Lemole |
| **Cc:** | matt@bloomfieldcapital.com; Dennis Onabajo; Hammers, Katherine L. |
| **Subject:** | file IL -706750  BC-Cohen title and survey comments |
| **Attachments:** | BC-Cohen - Commitment comments.pdf; BC-Cohen - Surveys comments.pdf; 4611 S Drexel - Final Loan Policy to BC57 - dated 12.27.2016(23752311_1)....pdf; Title - Date Down Endorsement - 4611-17 S. Drexel LLC(25549970_1).pdf |

Attached are comments to the existing surveys and a mark-up of title work. This is being sent subject to title company's feedback on whether mechanic's lien coverage is available based on the information so far supplied by borrower.

We are still waiting for plats and exception 7.

Borrower's counsel needs to contact title company to satisfy requirements in Schedule B, I.

Iona and Tyler, with respect to all of the payoffs and release:

1) All releases must be signed by Equitybuild Finance LLC and not Jerome Cohen individually
2) A release is still missing as to parcel 4 [Muskegon property]

Iona and Tyler, as to the lis pendens, note that the dismissal that was obtained was not in connection with the 2 lawsuits showing up on title.


On the surveys:

1) notably the legal description on the parcel 2 survey is actually for parcel 3 and the legal description on the parcel 3 survey is actually for parcel 3—can this be fixed by borrower?
2) We will need to review zoning reports to confirm setback and parking requirements
3) Notably we are still waiting for full surveys for parcel 1 (Constance) and parcel 4 (Muskegon).

Maribel – we also still need a tie –in endorsement and date down endorsement for 4611 Drexel. I am attaching the final policy and last date down.

Thank you.


**HONIGMAN**

**Kasturi Bagchi**
Partner
Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors
39400 Woodward Avenue
Suite 101
Bloomfield Hills, MI  48304-5151
Telephone Number: (248) 566-8554
Fax Number: (248) 566-8555
kbagchi@honigman.com
www.honigman.com

Exhibit

9

1

BC570013027

**From:** Souder, Kathy
**Sent:** Monday, September 18, 2017 10:07 AM
**To:** Bagchi, Kasturi <KBagchi@honigman.com>
**Subject:** BC-Cohen

This e-mail may contain confidential or privileged information. If you are not the intended recipient, please delete it and notify the sender of the error.

BC570013028

**EquityBuild Finance, LLC**
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 7201 S Constance Investors C/O EquityBuild Finance, LLC

# PAYOFF

WIRE VERIFICATION
Date **9/24/17** Time **11:25**
Source **Equity Build Finance**
Contact Name **Elizabeth Kammerer**
Phone Number **469-910-9790**
Verified by: **Sarah Wilson**

Loan Number: 0019072215

Subject Property: 7201 S Constance Ave., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 30, 2017.**

Unpaid Principal Balance: ……………………………………………………………………….......$1,350,000.00

Interest at 15% from 09/01/17 to 09/30/17: …………….....…………………………...$16,875.00

**Total Amount Due under Note/Security Instrument:..............................$1,366,875.00**

This figure is accurate until September 30th, 2017, or until any activity occurs
on this account. Funds received after that date will be subject to an additional
$562.50 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:
Wells Fargo Bank, N.A.
Routing/ABA # 121000248
For Final Credit to: EquityBuild Finance, LLC
Escrow Account # 8863888783

By Overnight:
EquityBuild Finance, LLC
5068 W Plano Pkwy., #300
Plano, TX 75093

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO
THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL
REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

**Exhibit**

**10**

BC570017297

**EquityBuild Finance, LLC**
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: East End Investors C/O EquityBuild Finance, LLC

## PAYOFF

**WIRE VERIFICATION**
Date 9/26/17   Time 11:25
Source Equity Build Finance
Contact Name Elizabeth Kammerer
Phone Number 409-910-9790
Verified by: Sarah Wilson

Loan Numbers: 0024102915 & 0025102915

Subject Properties: 7625 S East End., Chicago, IL 60649 & 7635 S East End., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 30, 2017.**

Unpaid Principal Balance: ………………………………………………………...……$1,210,000.00

Interest at 15% from 09/01/17 to 09/30/17: ………………………………………..……$15,125.00

**Total Amount Due under Note/Security Instrument:.............................$1,225,125.00**

This figure is accurate until September 30th, 2017, or until any activity occurs
on this account. Funds received after that date will be subject to an additional
$504.17 of interest per Day.

**WHERE TO SEND PAYOFF FUNDS**
By Wire:
Wells Fargo Bank, N.A.
Routing/ABA # 121000248
For Final Credit to: EquityBuild Finance, LLC
Escrow Account # 8863888783

By Overnight:
EquityBuild Finance, LLC
5068 W Plano Pkwy., #300
Plano, TX 75093

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO
THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL
REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

EquityBuild Finance, LLC
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 3074 E Cheltenham Investors C/O EquityBuild Finance, LLC

# PAYOFF

**WIRE VERIFICATION**
Date _9/26/17_   Time _11:25am_
Source _EquityBuild Finance_
Contact Name _Elizabeth Kammerer_
Phone Number _469-910-9710_
Verified by: _Sarah Wilson_

Loan Number: 0077071416

Subject Property: 3074 E Cheltenham Pl., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 30, 2017.**

Unpaid Principal Balance: ………………………………………………………………$1,150,000.00

Interest at 18% from 09/01/17 to 09/30/17: ……………………………………$17,250.00

**Total Amount Due under Note/Security Instrument:………………………$1,167,250.00**

This figure is accurate until September 30th, 2017, or until any activity occurs on this account. Funds received after that date will be subject to an additional $575.00 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:
Wells Fargo Bank, N.A.
Routing/ABA # 121000248
For Final Credit to: EquityBuild Finance, LLC
Escrow Account # 8863888783

By Overnight:
EquityBuild Finance, LLC
5068 W Plano Pkwy., #300
Plano, TX 75093

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

**EquityBuild Finance, LLC**
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 7752 S Muskegon Investors C/O EquityBuild Finance, LLC

# PAYOFF

**WIRE VERIFICATION**
Date _9/26/17_ Time _11:25_
Source _Equity Build Finance_
Contact Name _Elizabeth Kammerer_
Phone Number _469-910-9790_
Verified by: _Sarah Wilson_

Loan Number: 0026123014

Subject Property: 7752 S Muskegon Ave., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 30, 2017.**

Unpaid Principal Balance: ...............................................................................$1,170,000.00

Interest at 16% from 09/01/17 to 09/30/17: ....................................................$15,600.00

**Total Amount Due under Note/Security Instrument:.............................$1,185,600.00**

This figure is accurate until September 30th, 2017, or until any activity occurs
on this account. Funds received after that date will be subject to an additional
$520.00 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:
Wells Fargo Bank, N.A.
Routing/ABA # 121000248
For Final Credit to: EquityBuild Finance, LLC
Escrow Account # 8863888783

By Overnight:
EquityBuild Finance, LLC
5068 W Plano Pkwy., #300
Plano, TX 75093

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO
THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL
REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

BC570017323



# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

DC-4  17-721-059  FEE  $40.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A. YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/29/2017 03:46 PM PG: 1 OF 2

Know all men by these presents, that **EQUITYBUILD, INC.** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit claims unto **EQUITYBUILD FINANCE, LLC** of the County of **COLLIN**, State of **TEXAS**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **07/14/2016** as Document Number 1625250140 , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to wit:

See attached Legal Description

(PIN): **21-30-414-040-0000**

Commonly Known as: **3074 E Cheltenham Place, Chicago, IL**

**EQUITYBUILD FINANCE, LLC**

State of: _New York_
County of: _New York_

____ the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, _Shaun Daniel Cohen_ _____, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on ___9/18___ 20_17_

JEROME M TAYLOR
Notary Public, State of New York
Registration #01TA6328106
Qualified in New York County
Commission Expires July 27, 2019

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

Near North National Title
222 N. LaSalle

**Exhibit**

**11**

BC570017283

## Legal Description
of premises commonly known as **3074 E Cheltenham Pl. Chicago, IL 60649**

The Easterly 120 feet of Lot 114 in division number 1, in Westfall's subdivision of 208 acres, being the East 1/2 of the Southwest 1/4 and the Southeast fractional quarter of Section 30, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **21-30-414-040-0000**

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX 75093

BC570017284

# RELEASE DEED

**CAUTION:** Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*



Doc# 1727219063 Fee $40 00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A. YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/29/2017 03:48 PM PG: 1 OF 2

Know all men by these presents, that **EQUITYBUILD, INC.** for and in consideration of TEN DOLLARS ($10 00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit claims unto **EQUITYBUILD FINANCE, LLC** of the County of **COLLIN**, State of **TEXAS**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **07/22/2015** as Document Number **1532145039**, the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):     **20-25-119-001-0000**
Commonly known as:     **7201 S Constance Avenue, Chicago, IL**

**EQUITYBUILD FINANCE, LLC**

State of: _New York_
County of: _New York_

I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, _Shaun David Cohen_, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on _9/15_ 20_17_

JEROME M TAYLOR
Notary Public, State of New York
Registration #01TA6328106
Qualified In New York County
Commission Expires July 27, 2019

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

BC570017285

## Legal Description

of premises commonly known as **7201 S Constance Ave. Chicago, IL 60649**

Lots 13 and 14 (except South 6 inches thereof) in Christopher Columbus Addition to Jackson Park, a Subdivision of the East 1/2 of the Northwest 1/4 of Section 25, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **20-25-119-001-0000**



COOK COUNTY
RECORDER OF DEEDS

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX 75093

COOK COUNTY
RECORDER OF DEEDS

BC570017286

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*



Doc# 1727219061 Fee $40.00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/29/2017 03:47 PM PG: 1 OF 2

Know all men by these presents, that **EQUITYBUILD, INC.** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit claims unto **EQUITYBUILD FINANCE, LLC** of the County of **COLLIN**, State of **TEXAS**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **10/29/2015** as Document Number **1602156229** , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):  **20-25-310-008-0000**

Commonly Known as:  **7625 S East End, Chicago, IL**

Manage

**EQUITYBUILD FINANCE, LLC**

State of: New York

County of: New York

I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, Shawn David Cohen , personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on 9/13 20 17

JEROME M TAYLOR
Notary Public, State of New York
Registration #01TA6328106
Qualified In New York County
Commission Expires July 27, 2019

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED

Near North National Title
222 N. LaSalle
Chicago, IL 60601



## Legal Description

of premises commonly known as **7625 S East End. Chicago, IL 60649**

The North 6.00 feet of Lot 36, and all of Lots 37 to 40 in Block 11 in James Stinson's Subdivision of East Grand Crossing in the Southwest quarter of Section 25, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **20-25-310-008-0000**



Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX 75093

COOK COUNTY
RECORDER OF DEEDS

BC570017288

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*



Doc# 1727219062 Fee $40 00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/29/2017 03:48 PM PG:

Know all men by these presents, that **EQUITYBUILD, INC.** for and in consideration of TEN DOLLARS ($10 00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit claims unto **EQUITYBUILD FINANCE, LLC** of the County of **COLLIN**, State of **TEXAS**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **10/29/2015** as Document Number 1602156231 , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):  **20-25-310-009-0000**

Commonly Known as:  **7635 S East End, Chicago, IL**

**EQUITYBUILD FINANCE, LLC**

State of: New York
County of: New York

I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, Shaun David Cohen , personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on  9 19 20 17

JEROME M TAYLOR
Notary Public, State of New York
Registration #01TA6328106
Qualified In New York County
Commission Expires July 27, 2019

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

BC570017289

# Legal Description

of premises commonly known as **7635 S East End. Chicago, IL 60649**

The North 14 feet of Lot 32, and all of Lots 33, 34, 35 and 36 (except the North 6 feet thereof) in Block 11 in James Stinson's Subdivision of East Grand Crossing in the Southwest quarter of Section 25, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **20-25-310-009-0000**

COOK COUNTY
RECORDER OF DEEDS

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX 75093

COOK COUNTY
RECORDER OF DEEDS

BC570017290

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*



Doc# 1727219060 Fee $40 00

RHSP FEE:$9.00 RPRF FEE: $1.00
KAREN A.YARBROUGH
COOK COUNTY RECORDER OF DEEDS
DATE: 09/29/2017 03:47 PM PG: 1 OF 2

Know all men by these presents, that **EQUITYBUILD, INC.** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit claims unto **EQUITYBUILD FINANCE, LLC** of the County of **COLLIN**, State of **TEXAS**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **12/30/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **01/16/2015** as Document Number **1501656187** , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit.

See attached Legal Description

(PIN):  **21-30-400-034-0000**
Commonly Known as:  **7752 S Muskegon Avenue, Chicago, IL**

**EQUITYBUILD FINANCE, LLC**

State of: New York
County of: New York

I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, Shaun David Cohen , personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on 9/18 20 17

JEROME M TAYLOR
Notary Public, State of New York
Registration #01TA6328106
Qualified In New York County
Commission Expires July 27, 2019

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

Near North National Title
222 N. LaSalle
Chicago, IL 60601

## Legal Description

of premises commonly known as **7752 S Muskegon Ave. Chicago, IL 60649**

Lot 132 in Division 2 in Westall Subdivision of 208 Acres being the East 1/2 of the Southwest 1/4 and the Southeast Fractional 1/4 of Section 30, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **21-30-400-034-0000**



Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX  75093

COOK COUNTY
RECORDER OF DEEDS

BC570017292

| | |
|---|---|
| **From:** | Matt Turzewski <matt@bloomfieldcapital.com> |
| **Sent:** | Monday, September 11, 2017 5:16 PM |
| **To:** | Jason Jarjosa; Dennis Onabajo |
| **Subject:** | Fwd: FW: Bloomfield Payoffs and releases SSDF NTC-31792-LLS-IL 9rush order \| South Shore |
| **Attachments:** | EBF 7836 S South Shore Payoff.pdf; EBF 7625 S East End Payoff.pdf; EBF 7635 S East End Payoff.pdf; EBF 7201 S Constance Payoff.pdf; 3074 E Cheltenham Release.pdf; 7625 S East End Release.pdf; 7635 S East End Release.pdf; 7201 S Constance Release.pdf |

FYI

## Matthew V. Turzewski | Bloomfield Capital

Detroit | Chicago | Denver | Greenwich

Desk: (248) 220-2407  |  Main: (248) 745-1700  |  Mobile: (810) 923-9288

matt@bloomfieldcapital.com

www.bloomfieldcapital.com

This electronic message and all contents and attachments contain information from BLOOMFIELD CAPITAL PARTNERS, LLC. The information contained in this e-mail message is intended only for the personal and confidential use of the recipients named above. This message may be a communication between BLOOMFIELD CAPITAL PARTNERS, LLC and its existing or future clients, contacts, counsel, agents or advisors and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original message.

---------- Forwarded message ----------
From: **Bagchi, Kasturi** <KBagchi@honigman.com>
Date: Mon, Sep 11, 2017 at 3:30 PM
Subject: FW: Bloomfield Payoffs and releases SSDF NTC-31792-LLS-IL 9rush order | South Shore
To: "matt@bloomfieldcapital.com" <matt@bloomfieldcapital.com>, Dennis Onabajo <donabajo@bloomfieldcapital.com>, Maribel Morales <MMorales@lincolnlandservices.com>
Cc: "Hammers, Katherine L." <KHammers@honigman.com>

Matt and Dennis and Maribel – please see attached from borrower's counsel. I have not reviewed but note that until I am in receipt of title work, I can't confirm if there may be additional releases that may be required but we can sort through that once we have the commitment. Maribel , please also let us know from a title perspective if these draft releases are satisfactory. Thanks.

HONIGMAN

1

Exhibit

12

BC570013938

**Kasturi Bagchi**

Partner

Honigman Miller Schwartz and Cohn LLP

Attorneys and Counselors

39400 Woodward Avenue

Suite 101

Bloomfield Hills, MI  48304-5151

Telephone Number: (248) 566-8554

Fax Number: (248) 566-8555

kbagchi@honigman.com

www.honigman.com

This e-mail may contain confidential or privileged information.  If you are not the intended recipient, please delete it and notify the sender of the error.

BC570013939

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*

Know all men by these presents, that **EQUITYBUILD FINANCE, LLC** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit-claims unto **EQUITYBUILD, INC.** of the County of **COLLIER**, State of **FLORIDA**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **07/14/2016** as Document Number **1625250140** , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):  **21-30-414-040-0000** _____
Commonly Known as:  **3074 E Cheltenham Place, Chicago, IL**

_____     .

**JERRY COHEN**

.     .

State of:_____

County of:_____

    I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, _____, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on _____**20___**

_____

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

BC570013940

# Legal Description
of premises commonly known as **3074 E Cheltenham Pl. Chicago, IL 60649**

The Easterly 120 feet of Lot 114 in division number 1, in Westfall's subdivision of 208 acres, being the East 1/2 of the Southwest 1/4 and the Southeast fractional quarter of Section 30, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **21-30-414-040-0000**

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX  75093

BC570013941

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*

Know all men by these presents, that **EQUITYBUILD FINANCE, LLC** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit-claims unto **EQUITYBUILD, INC.** of the County of **COLLIER**, State of **FLORIDA**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **07/22/2015** as Document Number **1532145039** , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):        **20-25-119-001-0000**

Commonly Known as:    **7201 S Constance Avenue, Chicago, IL**

**JERRY COHEN**

State of:_____

County of:_____

    I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, _____, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on _____**20___**

_____

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

# Legal Description

of premises commonly known as **7201 S Constance Ave. Chicago, IL 60649**

Lots 13 and 14 (except South 6 inches thereof) in Christopher Columbus Addition to Jackson Park, a Subdivision of the East 1/2 of the Northwest 1/4 of Section 25, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **20-25-119-001-0000**

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX  75093

BC570013943

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*

Know all men by these presents, that **EQUITYBUILD FINANCE, LLC** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit-claims unto **EQUITYBUILD, INC.** of the County of **COLLIER**, State of **FLORIDA**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **10/29/2015** as Document Number **1602156229** , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):                    **20-25-310-008-0000**
Commonly Known as:    **7625 S East End, Chicago, IL**

**JERRY COHEN**

.

.                                      .

State of:_____

County of:_____

I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, _____, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on _____**20___**

_____

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

BC570013944

# Legal Description

of premises commonly known as **7625 S East End. Chicago, IL 60649**

The North 6.00 feet of Lot 36, and all of Lots 37 to 40 in Block 11 in James Stinson's Subdivision of East Grand Crossing in the Southwest quarter of Section 25, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **20-25-310-008-0000**

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX  75093

BC570013945

# RELEASE DEED

CAUTION: Consult a lawyer before using or acting under this form. *Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.*

Know all men by these presents, that **EQUITYBUILD FINANCE, LLC** for and in consideration of TEN DOLLARS ($10.00) and for other good and valuable considerations, the receipt of which is hereby confessed, does hereby remise, convey, release and quit-claims unto **EQUITYBUILD, INC.** of the County of **COLLIER**, State of **FLORIDA**, all rights, title, interest, claim or demand whatsoever he/she may have acquired in, through or by a certain Mortgage bearing the date of **02/21/2014** Recorded in the Recorder's Office of **COOK** County in the State of Illinois, on **10/29/2015** as Document Number **1602156231** , the premises therein described, situated in the County of **COOK** and the State of Illinois as follows, to-wit:

See attached Legal Description

(PIN):        **20-25-310-009-0000**
Commonly Known as:    **7635 S East End, Chicago, IL**

**JERRY COHEN**

.

.                      .

State of:_____

County of:_____

      I, the undersigned, a Notary Public in and for said County in the State aforesaid Do Certify that, _____, personally known to me have signed and delivered the said instrument as his/her free and voluntary act for the uses and purposes therein set forth.

Given under my hand and Notarial Seal on _____**20___**

_____

FOR THE PROTECTION OF THE OWNER, THIS RELEASE NEEDS TO BE FILED WITH THE RECORDER OF DEEDS IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

BC570013946

# Legal Description

of premises commonly known as **7635 S East End. Chicago, IL 60649**

The North 14 feet of Lot 32, and all of Lots 33, 34, 35 and 36 (except the North 6 feet thereof) in Block 11 in James Stinson's Subdivision of East Grand Crossing in the Southwest quarter of Section 25, Township 38 North, range 15, East of the third principal meridian, in Cook county, Illinois.

PERMANENT TAX NUMBER: **20-25-310-009-0000**

Prepared by and Mail to:
EquityBuild Finance, LLC
5068 W. Plano Road, #300
Plano, TX  75093

BC570013947

EquityBuild Finance, LLC
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 7201 S Constance Investors C/O EquityBuild Finance, LLC

# PAYOFF

Loan Number: 0019072215

Subject Property: 7201 S Constance Ave., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 15, 2017.**

Unpaid Principal Balance: ……………………………………………………………...….…..$1,350,000.00

Interest at 15% from 09/01/17 to 09/15/17: ……………………………………....$8,437.50

**Total Amount Due under Note/Security Instrument:…………………….…$1,358,437.50**

This figure is accurate until September 15th, 2017, or until any activity occurs on this account. Funds received after that date will be subject to an additional $562.50 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:                                                                        By Overnight:
Wells Fargo Bank, N.A.                                         EquityBuild Finance, LLC
Routing/ABA # 121000248                                 5068 W Plano Pkwy., #300
For Final Credit to: EquityBuild Finance, LLC                     Plano, TX 75093
Escrow Account # ████████

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

BC570013948

EquityBuild Finance, LLC
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 7625 S East End Investors C/O EquityBuild Finance, LLC

# PAYOFF

Loan Number: 0024102915

Subject Property: 7625 S East End., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 15, 2017.**

Unpaid Principal Balance: …………………………………………………………………...…......$1,170,000.00

Interest at 15% from 09/01/17 to 09/15/17: ………………………………………......$7,312.50

**Total Amount Due under Note/Security Instrument:............................$1,177,312.50**

This figure is accurate until September 15th, 2017, or until any activity occurs on this account. Funds received after that date will be subject to an additional $487.50 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:                                                                                        By Overnight:
Wells Fargo Bank, N.A.                                                    EquityBuild Finance, LLC
Routing/ABA # 121000248                                           5068 W Plano Pkwy., #300
For Final Credit to: EquityBuild Finance, LLC                       Plano, TX 75093
Escrow Account # ███████████

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

EquityBuild Finance, LLC
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 7635 S East End Investors C/O EquityBuild Finance, LLC

# PAYOFF

Loan Number: 0025102915

Subject Property: 7635 S East End., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 15, 2017.**

Unpaid Principal Balance: ………………………………………………………………..……$1,210,000.00

Interest at 15% from 09/01/17 to 09/15/17: ……………………………………….$7,562.50

**Total Amount Due under Note/Security Instrument:…………………….$1,217,562.50**

This figure is accurate until September 15th, 2017, or until any activity occurs on this account. Funds received after that date will be subject to an additional $504.17 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:                                                              By Overnight:
Wells Fargo Bank, N.A.                                    EquityBuild Finance, LLC
Routing/ABA # 121000248                            5068 W Plano Pkwy., #300
For Final Credit to: EquityBuild Finance, LLC                    Plano, TX 75093
Escrow Account # ███████

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

**EquityBuild Finance, LLC**
5068 W Plano Pkwy, #300
Plano, TX 75093
Main: (800) 991-4642
Fax: (239) 244-8666

From: 3074 E Cheltenham Investors C/O EquityBuild Finance, LLC

# PAYOFF

Loan Number: 0077071416

Subject Property: 3074 E Cheltenham Pl., Chicago, IL 60649.

**Note: This note/security instrument is due for payment September 15, 2017.**

Unpaid Principal Balance: …………………………………………………………..…..…...$1,150,000.00

Interest at 18% from 09/01/17 to 09/15/17: ....................................................$8,625.00

**Total Amount Due under Note/Security Instrument:............................$1,158,625.00**

This figure is accurate until September 15th, 2017, or until any activity occurs on this account. Funds received after that date will be subject to an additional $575.00 of interest per Day.

WHERE TO SEND PAYOFF FUNDS
By Wire:                                                        By Overnight:
Wells Fargo Bank, N.A.                          EquityBuild Finance, LLC
Routing/ABA # 121000248                   5068 W Plano Pkwy., #300
For Final Credit to: EquityBuild Finance, LLC          Plano, TX 75093
Escrow Account # ███████████

FUNDS MUST BE RECEIVED BY 2 P.M. EASTERN TIME FOR SAME-DAY PROCESSING.

PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTERESR WILL BE ADDED TO THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER. ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

BC570013951

| | |
|---|---|
| **From:** | Carly D. Berard <CBerard@rfclaw.com> |
| **Sent:** | Friday, September 15, 2017 12:25 PM |
| **To:** | Bagchi, Kasturi |
| **Cc:** | Ioana Salajanu |
| **Subject:** | RE: NTC-31792-LLS-IL South Shore Multifamily [BC-Deal} complaints |
| **Attachments:** | Complaint 03.02.16.pdf; 7201 S Constance ORDER OF DISMISSAL 06.01.17.pdf; Complaint 12.6.16.pdf; Complaint 1.14.16.pdf |

Ms. Bagchi,

I work with Ioana Salajanu.  Attached are the housing court complaints related to the properties listed below.  Please let us know if you have any questions.

**7201 S. Constance Ave.** – Attached is the March 31, 2016 Complaint for Equitable and Other Relief filed by the City of Chicago, Case No. 16 M1 400966.   This case was dismissed on June 1, 2017 with an order of substantial compliance.  The order indicates that system III emergency lighting needs to be installed.  Please advise if you would like this order recorded.

**7625 S. East End Ave.** – The only Lis Pendens I see on title is from a 2012 Housing Court Case – 12 M1 400196.  According to the docket, this matter was dismissed on 2/7/12, the same day it was filed.

**7635-7645 S. East End Ave.** - I don't see any Lis Pendens for housing court cases for this property.  The only Lis Pendens I see on title is from 2009, amended in 2010, related to a foreclosure, not building violations.

**7750-52 S. Muskegon Ave.** – This is a current housing court case we are handling.  Attached is the December 16, 2016 Complaint for Equitable and Other Relief filed by the City of Chicago, Case No.  16 M1 403679.  Our next court date is 10/12/17.

**7836 S. South Shore** – This is a current housing court case we are handling.  Attached is the Jan. 14, 2016 Complaint for Equitable and Other Relief filed by the City of Chicago, Case No. 16 M1 400863.  Our next court date is 11/02/17.

Thank you,

Carly

Carly Berard
**ROCK FUSCO & CONNELLY, LLC**
321 North Clark St., Suite 2200
Chicago, Illinois 60654
(312) 970-3423 - Direct
(312) 494-1000 - General
(312) 494-1001 - Fax

**From:** "Bagchi, Kasturi" <KBagchi@honigman.com>
**Date:** September 15, 2017 at 4:42:52 PM GMT+3
**To:** Ioana Salajanu <Isalajanu@rfclaw.com>



Exhibit

13

1

BC570006615

Cc: "matt@bloomfieldcapital.com" <matt@bloomfieldcapital.com>, Dennis Onabajo <donabajo@bloomfieldcapital.com>
**Subject: RE: NTC-31792-LLS-IL South Shore Multifamily [BC-Deal}**

Ioana – can you send us the pleadings please and the building violations that need to be addressed. We can't tell what they are from the document recorded.

HONIGMAN

**Kasturi Bagchi**
Partner
Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors
39400 Woodward Avenue
Suite 101
Bloomfield Hills, MI 48304-5151
Telephone Number: (248) 566-8554
Fax Number: (248) 566-8555
kbagchi@honigman.com
www.honigman.com

**From:** Ioana Salajanu [mailto:Isalajanu@rfclaw.com]
**Sent:** Friday, September 15, 2017 9:20 AM
**To:** Bagchi, Kasturi <KBagchi@honigman.com>
**Subject:** Re: NTC-31792-LLS-IL South Shore Multifamily [BC-Deal}

Kas. I will see as to the 5 th release. The lis pendens are for building violations which are being addressed by Borrower. Your client, the lender is providing funds for these repairs. Hence, the lis pendes will be dismissed upon the completion of the work. I was advised that your client is aware of this.

Sent from my iPhone

On Sep 15, 2017, at 1:00 AM, Bagchi, Kasturi <KBagchi@honigman.com> wrote:

Ioana I am attaching the link to the title commitment we received for the new loan transaction.

I would also like to introduce you to Leslie and Maribel of Lincoln Land Services.

I am still reviewing title and survey but had some questions directed to Ioana and Lincoln Land:

1)Lincoln Land: are you acting as just the funds disbursement agent as I see that the commitment is issued by Near North – if they are issuing the policy and you are disbursing the funds, I will need CPLS from both
2) Lincoln Land: all of the parcels are located in subdivisions; please provide copies of plats
3) Lincoln Land: please note that in Exhibit "A", parcel 4 needs to refer to Township 38 not 39
4) Lincoln Land: requirements B, I, 10 refer to 2 separate actions but attach the same document; please advise
5) Lincoln Land: please provide B, II #7 when available

2

BC570006616

6) Lincoln Land & Ioana : please note that property will need to be conveyed to Borrower

7)  Ioana: please note Schedule B, I requirements that need to be satisfied. Notably, t we received only 4 payoffs and releases but 5 mortgages are showing up; please coordinate with Tyler and confirm proper releases will be deposited and payoffs will be updated. Please also note 2 lis pendens that are showing up of record; these will need to be dismissed.

More comments to follow. Thanks.

HONIGMAN

**Kasturi Bagchi**
Partner
Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors
39400 Woodward Avenue
Suite 101
Bloomfield Hills, MI  48304-5151
Telephone Number: (248) 566-8554
Fax Number: (248) 566-8555
kbagchi@honigman.com
www.honigman.com

---

**From:** Leslie Clark [mailto:lclark@lincolnlandservices.com]
**Sent:** Wednesday, September 13, 2017 10:26 AM
**To:** Matt Turzewski <matt@bloomfieldcapital.com>; Bagchi, Kasturi <KBagchi@honigman.com>; donabajo@bloomfieldcapital.com; Hammers, Katherine L. <KHammers@honigman.com>
**Cc:** Maribel Morales <MMorales@lincolnlandservices.com>; Elizabeth Lemole <elemole@lincolnlandservices.com>; Drew Melchionni <dmelchionni@lincolnlandservices.com>
**Subject:** NTC-31792-LLS-IL South Shore Multifamily

Good morning

Attached is the hyperlinked commitment for the above matter.  Please note document 7830708 for exception 7 is backordered and a copy will be provided as soon as received.

Our counsel on this matter is Betsy Lemole and our title officer is Maribel Morales, both are copied on this email.

Please let us know if you have any questions or comments.

Thank you,

*Leslie D. Clark*
*Commercial Coordinator*
**LINCOLN LAND SERVICES LLC**
Office (631) 424-0200 | Fax: (631) 524-5129
Email: lclark@lincolnlandservices.com

*Headquarters*
324 So. Service Rd, Ste 302, Melville, NY 11747

BC570006617

*NYC Office*:
420 Lexington Ave, Ste 2301, NY, NY 10170
<image001.png>

---

**From:** Maribel Morales
**Sent:** Wednesday, September 13, 2017 9:50 AM
**To:** Matt Turzewski; Bagchi, Kasturi
**Cc:** Dennis Onabajo; Hammers, Katherine L.; Leslie Clark
**Subject:** Re: Bloomfield Payoffs and releases SSDF NTC-31792-LLS-IL 9rush order | South Shore

Good morning Matt and Kasturi,

Sorry for the delay, the commitment needed to be reviewed and hyperlink.  Expecting it today.

Thanks,

Maribel Morales
National Coordinator
Lincoln Land Services LLC
Office: (212) 759-3636
Fax: (917) 261-7582
Email: mmorales@lincolnlandservices.com

Headquarters:
324 South Service Rd., Suite 302
Melville, NY  11747

NYC OFFICE:
420 Lexington Avenue, Suite 2301
New York, NY 10017

This e-mail may contain confidential or privileged information.  If you are not the intended recipient, please delete it and notify the sender of the error.

<NTC-31292-LLS-IL Commitment - IL1706750 V2.pdf>

4

BC570006618

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3   SEC,                        )
                                 )
 4              Plaintiff,       )
                                 )
 5       vs.                     )No. 18-cv-5587
                                 )
 6   EQUITYBUILD, INC., et al.,  )
                                 )
 7              Defendants.      )

 8

 9         The virtual deposition of JASON JARJOSA,

10   taken pursuant to subpoena in accordance with the

11   Federal Rules of Civil Procedure of the United

12   States District Courts, as a 30(b)(6) pertaining to

13   the taking of depositions, taken before PEGGY

14   CURRAN, CSR, CRR, RPR, CSR License No. 084-002016,

15   a notary public within and for the County of DuPage

16   and State of Illinois, taken on Tuesday,

17   November 2, 2021, commencing at the hour of

18   10:00 a.m.

19

20

21

22

23

24
```

**Exhibit**

**14**

109

```
 1      Q      Did you understand that these properties

 2  that were used as collateral for the loan were

 3  operating at a loss at the time the loans were

 4  made?

 5      A      We did.

 6      Q      Did Bloomfield Capital also look at the

 7  purchase price for the properties?

 8      A      We did.

 9      Q      Was that something that you considered

10  in evaluating the loan?

11      A      Yes.  It has some bearing, depending on

12  when it was acquired.  So loan to cost, as you saw

13  from the term sheet we submitted in discovery, is a

14  factor.  It's not as critical a factor as loan to

15  value simply because properties change in value

16  over time.  And these were bought, some of them,

17  some years before we made our loan.  But it's a

18  factor.

19      Q      Did Bloomfield Capital also consider the

20  principal amount of the mortgages that were being

21  refinanced?

22      A      Only in the sense that we were lending a

23  certain amount, and in order for us to have a

24  senior secured mortgage, any amounts that would
```

EXHIBIT

Nielsen Ex. No. 6 - 12-20-21

**From:** Ioana Salajanu
**Sent:** Mon, 18 Sep 2017 16:58:40 +0000
**To:** Tyler DeRoo
**Subject:** FW: Bloomfield Payoffs
**Attachments:** EBF 7836 S South Shore Payoff.pdf, EBF 7625 S East End Payoff.pdf, EBF 7635 S East End Payoff.pdf, EBF 7201 S Constance Payoff.pdf, 3074 E Cheltenham Release.pdf, 7625 S East End Release.pdf, 7635 S East End Release.pdf, 7201 S Constance Release.pdf

I need all of these updated through Sept 30

Ioana Salajanu
**Rock Fusco & Connelly, LLC**
321 N. Clark Street
Suite 2200
Chicago, Illinois 60654
312.494.1000 (p)
312.377.5750 (d)
312.494.1001 (f)
Isalajanu@rfclaw.com
www.rfclaw.com

---

**From:** Ioana Salajanu
**Sent:** Friday, September 08, 2017 11:33 AM
**To:** 'Bagchi, Kasturi' <KBagchi@honigman.com>
**Cc:** Patty San Martin <PSanMartin@rfclaw.com>
**Subject:** FW: Bloomfield Payoffs

Payoffs

Ioana Salajanu
**Rock Fusco & Connelly, LLC**
321 N. Clark Street
Suite 2200
Chicago, Illinois 60654
312.494.1000 (p)
312.377.5750 (d)
312.494.1001 (f)
Isalajanu@rfclaw.com
www.rfclaw.com

---

**From:** Tyler DeRoo [mailto:tyler@equitybuild.com]
**Sent:** Friday, September 08, 2017 10:39 AM
**To:** Ioana Salajanu <Isalajanu@rfclaw.com>

Exhibit

15

**Cc:** Patty San Martin <[PSanMartin@rfclaw.com](mailto:PSanMartin@rfclaw.com)>
**Subject:** Fwd: Bloomfield Payoffs

Tyler DeRoo
[tyler@equitybuild.com](mailto:tyler@equitybuild.com)
C. 847.420.2095

Begin forwarded message:

**From:** Elizabeth Kammerer <[elizabeth@equitybuildfinance.com](mailto:elizabeth@equitybuildfinance.com)>
**Subject: Re: Bloomfield Payoffs**
**Date:** September 8, 2017 at 10:36:25 AM CDT
**To:** Shaun Cohen <[shaun@equitybuild.com](mailto:shaun@equitybuild.com)>
**Cc:** Tyler DeRoo <[tyler@equitybuild.com](mailto:tyler@equitybuild.com)>, Ronald Bol <[ron@equitybuild.com](mailto:ron@equitybuild.com)>

Attached updated payoffs plus releases

 Virus-free. [www.avast.com](http://www.avast.com)

**Thanks,**

**Mrs. Elizabeth Kammerer** *Document Control Manager, EquityBuild Finance, LLC*
Tel: (877) 978-1916 x 1804 | Mobile: (469) 910-9790 | Fax: (877) 978-2727 | [www.equitybuildfinance.com](http://www.equitybuildfinance.com)

This email is intended only for the person or entity to which it is addressed and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law. Dissemination, distribution or copying of this email including the information contained herein or any attachments hereto (the "message") by anyone other than the intended recipient, or an employee of agent responsible for delivering the message to the intended recipient, is strictly prohibited. If you received this email in error, please immediately contact the sender and destroy the material in its entirety whether in electronic or hard copy format.

On Thu, Sep 7, 2017 at 5:34 PM, Shaun Cohen <[shaun@equitybuild.com](mailto:shaun@equitybuild.com)> wrote:

Yes

**Thanks,**

**Shaun Cohen** *Vice President, EquityBuild, Inc*
Tel: (877) 978-1869 x 1807 | Mobile: (215) 407-5777 | Fax: (239) 244-8666
shaun@equitybuild.com | www.equitybuild.com

This email is intended only for the person or entity to which it is addressed and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law. Dissemination, distribution or copying of this email including the information contained herein or any attachments hereto (the "message") by anyone other than the intended recipient, or an employee of agent responsible for delivering the message to the intended recipient, is strictly prohibited. If you received this email in error, please immediately contact the sender and destroy the material in its entirety whether in electronic or hard copy format.

On Thu, Sep 7, 2017 at 6:34 PM, Elizabeth Kammerer <elizabeth@equitybuildfinance.com> wrote:

Shaun do you want these sent to 8783?

On Sep 7, 2017 3:40 PM, "Tyler DeRoo" <tyler@equitybuild.com> wrote:

We need Payoffs to be remitted to EBF not EB, the optics aren't good. Can you change the account name? It references EB in the top half and EBF in the bottom half, need it all to be EBF.

Tyler DeRoo
tyler@equitybuild.com
C. 847.420.2095

On Sep 7, 2017, at 2:29 PM, Elizabeth Kammerer <elizabeth@equitybuildfinance.com> wrote:

Attached
Do you als

**Thanks,**

**Mrs. Elizabeth Kammerer** *Document Control Manager, EquityBuild Finance, LLC*

Tel: (877) 978-1916 x 1804 | Mobile: (469) 910-9790 | Fax: (877) 978-2727 | www.equitybuildfinance.com

This email is intended only for the person or entity to which it is addressed and may contain information that is confidential, privileged, or otherwise protected from disclosure under applicable law. Dissemination, distribution or copying of this email including the information contained herein or any attachments hereto (the "message") by anyone other than the intended recipient, or an employee of agent responsible for delivering the message to the intended recipient, is strictly prohibited.  If you received this email in error, please immediately contact the sender and destroy the material in its entirety whether in electronic or hard copy format.

On Thu, Sep 7, 2017 at 12:41 PM, Tyler DeRoo <tyler@equitybuild.com> wrote:

Elizabeth,

I need payoff quotes though the end of next week for the following:

7836 S South Shore (Cheltenham) - $1,150,000
7625 S East End - $1,170,000
7635 S East End - $1,210,000
7201 S Constance - $1,350,000

Let me know if you have any questions.

Tyler DeRoo
tyler@equitybuild.com
C. 847.420.2095

<EB 7836 S South Shore Payoff.pdf><EB 7625 S East End Payoff.pdf><EB 7635 S East End Payoff.pdf><EB 7201 S Constance Payoff.pdf>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2022, I electronically filed the foregoing Receiver's Reply to BC57 LLC's Submission on Avoidance Issues with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

I further certify that I caused true and correct copy of the foregoing Submission, to be served upon all claimants included on the Email Service List for Group 1 by electronic mail.

I further certify that the Submission will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone  (312) 733-3950
Fax      (312) 733-3952
mrachlis@rdaplaw.net