**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) Civil Action No. 18-cv-5587 ) |
| v. | ) Hon. John Z. Lee ) |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) Magistrate Judge Young B. Kim ) ) ) |
| Defendants. | ) ) |

**RECEIVER'S FIFTEENTH STATUS REPORT**
**(First Quarter 2022)**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen[1] and Shaun Cohen, as defined in the Order Appointing Receiver entered August 17, 2018 (Dkt. 16), as supplemented by Order entered March 14, 2019 (Dkt. 290) and Order entered February 21, 2020 (Dkt. 634) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him by Order of this Court, respectfully submits this Fifteenth Status Report for the quarter ending March 31, 2022.

**I.     SUMMARY OF THE OPERATIONS OF THE RECEIVER**

The Receiver, together with his legal counsel, Rachlis Duff & Peel, LLC ("RDP"), accountants KMA, S.C. f/k/a BrookWeiner, LLC ("KMA"), forensic consultant Prometheum Technologies, Inc. ("Prometheum"), and asset management and real estate brokerage services

---

[1] On December 30, 2020, Defendant Shaun Cohen reported to the Receiver that Defendant Jerome Cohen died on November 28, 2020.

provider SVN Chicago Commercial, LLC ("SVN"), have undertaken, without limitation, the following activities since the submission of his Fourteenth Status Report (Dkt. 1164):

 a. <u>Identification and Preservation of Assets</u>

Since the filing of his Fourteenth Status Report, the Receiver continued using reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all profits, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly. The Receiver also continued to devote efforts to claims to recover assets including, *inter alia,* those that have been asserted in state court against former EquityBuild professionals.

 b. <u>Property Sales</u>

The Receiver sold the last remaining real property in the Receivership Estate, 7109 S Calumet, during the First Quarter 2022.² See **Exhibit 1** for a listing of property sales and net proceeds by properties in the Receivership, by closing date, property address and gross and net proceeds.³ Consistent with the Court's orders approving these sales, the Receiver segregated the net proceeds into separate subaccounts. (Dkt. 966, 979, 991) See **Exhibit 2**.

---

² There were 116 properties in the Receivership Estate at the inception of the Receivership, not including a property in Plano, Texas, that Defendant Shaun Cohen had used as a residence. (*See* Exhibit 6) The Receiver sold ten properties in the second quarter of 2019 (formerly reported as six properties because five of these properties were sold together), eleven properties in the fourth quarter of 2019, two properties in the first quarter of 2020, 17 properties in the second quarter of 2020, 12 properties in the third quarter of 2020, 15 properties in the fourth quarter of 2020, 45 in the second quarter of 2021, one property in the third quarter of 2021, and two properties in the fourth quarter of 2021. The Receiver sold the last remaining property in the first quarter of 2022.
³ The allocation of sales proceeds to the single family portfolio has been adjusted from the Receiver's prior status reports (*see, e.g.,* Dkt. 1077, Ex. 2) to reflect the allocations that were agreed upon by the Receiver and the lender's counsel.

After U.S. Bank as Trustee notified the Receiver that it was unable to proceed with its credit bid on 7109 S Calumet due to the parties' inability to reach an agreement on the terms of the letter of credit, the Receiver proceeded to market and sell the property. On January 24, 2022, the Court entered an order approving the sale of 7109 S Calumet (Dkt. 1138), and the sale closed on February 28, 2022.

On November 24, 2021, Ventus Holdings, LLC and Ventus Merrill LLC (collectively, "Ventus") filed a motion asking the Court to designate as a final judgment its interlocutory order denying Ventus' Motion for Return of Earnest Money Deposits, in an effort to seek a *third* Seventh Circuit appeal (*see* Dkt. 1025, 1095). The Receiver filed an opposition to Ventus' motion on December 20, 2021 (Dkt. 1106) and Ventus filed a reply brief on January 10, 2021 (Dkt. 1120). The motion remains pending.

  c. Code Violations

During the First Quarter 2022, the Receiver received two notices of code violations (involving the properties located at 8209 S Ellis and 4533 S Calumet) and a collection notice for an unpaid administrative judgment (concerning the property located at 5001 S Drexel). The Receiver disputed the new cases through the City's ownership dispute procedures, and notified collection counsel that the EquityBuild entities had been dismissed from the matter in 2020, prior to the entry of the judgment at issue.

  d. Financial Reporting of Receipts and Expenditures

During the First Quarter 2022, the Receiver recovered $106,589.85 in insurance premium refunds for sold properties. The Receiver will prepare and distribute final reports on all properties once all remaining information regarding these insurance refunds has been received from the carrier and the Receiver's accountant has confirmed the proper allocation of the refunds to

individual properties. Once this process is completed, the Receiver will file a motion seeking the Court's approval to reimburse the Receiver's Account for other funds that the Receiver has expended on the sold properties.

e. <u>Open Litigation</u>

On March 25, 2022, the matter of *Byrd v. EquityBuild, et al.*, Case No. 18 L 1993, Circuit Court of Cook County, which concerned an injury alleged to have occurred at 7748-52 S Essex Avenue, was settled on the eve of trial. Prior to the settlement, the Receiver worked with defense counsel to prepare for a pretrial motions hearing. These claims were defended pursuant to a contract for liability insurance, for which there is a $10,000 deductible that is due.

On January 27, 2022, the action captioned *Jerrine Pennington for Valerie Pennington, Deceased v. 4533 Calumet, LLC*, Case No. 21 L 10115, Circuit Court of Cook County, was stayed pursuant to the Court's Order Appointing Receiver. (Dkt. 16) This action names EquityBuild's affiliate 4533-37 S Calumet, LLC, and property manager WPD Management, LLC, along with the third-party who purchased the property from the Receiver in December 2020. The insurance carrier has denied coverage based primarily on fungus and total pollutants exclusions in the policy.

f. <u>Notice of Appointment of Receiver</u>

The Receiver continued his efforts to notify all necessary and relevant individuals and entities of the appointment and to protect and preserve the assets of the Receivership Estate. To that end, as they are identified, the Receiver will continue to deliver notices to individuals or entities that have been identified as potentially possessing property, business, books, records, or accounts of the Receivership Defendants, or who may have retained, managed, held, insured, or encumbered, or otherwise been involved with, any of the assets of the Receivership Defendants.

g. <u>Claimant Communications</u>

The Receiver has provided numerous resources to keep claimants informed. To provide basic information, the Receiver established a webpage (http://rdaplaw.net/receivership-for-equitybuild) for claimants and other interested parties to obtain information and certain court filings related to the Receivership Estate. A copy of this Status Report will be posted on the Receivership web site.

Court filings and orders are also available through PACER, which is an electronic filing system used for submissions to the Court. Investor claimants and others seeking court filings and orders can visit www.ilnd.uscourts.gov for information about accessing filings through PACER.

Beyond those avenues, the Receiver continues to receive and respond to numerous emails and voicemails from claimants and their representatives. The Receiver and his staff responded to approximately 145 such inquiries during the First Quarter 2022, in addition to numerous oral and other written communications. The Receiver will continue to work to ensure that information is available and/or otherwise provided as quickly and completely as practicable, asks all stakeholders and interested parties for patience during this lengthy process, and reiterates that responding to individual inquiries depletes Receivership assets. These quarterly status reports and the Receiver's other court filings remain the most efficient means of communicating information regarding the activities of the Receivership Estate.

h. <u>Control of Receivership Property and Records</u>

The Receiver has continued efforts to preserve all EquityBuild property and records. The Receiver is maintaining two platforms of records and data, and is working with vendor CloudNine with respect to the disposition and preservation of the documents in the database of EquityBuild

documents that was created pursuant to the Court's order approving the institutional lenders' plan to process EquityBuild's internal documents. (Dkt. 915)

    i. <u>Securing Bank and Investment Accounts</u>

The Receiver notified, contacted, and conferred with the banks and other financial institutions identified as having custody or control of funds, accounts, or other assets held by, in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants. The Receiver is still pursuing records from certain institutions.

    j. <u>Factual Investigation</u>

The Receiver and his retained professionals have continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) EquityBuild documents; (iv) available underlying transaction documents received to-date from former Chicago-based EquityBuild counsel; and (v) files produced by former EquityBuild counsel, accountants, and employees.

    k. <u>Tax Issues</u>

The Receiver has informed investors that he cannot provide advice on tax matters. Moreover, the Receiver and his retained professionals do not plan to issue 1099-INT's. With respect to valuation, loss, or other tax issues, investors and their tax advisors may wish to seek independent tax advice and to consider IRS Rev. Proc. 2009-20 and IRS Rev. Rul. 2009-9.

KMA was retained to perform accounting, tax, and related work in connection with winding down the business operations of the Receivership Defendants. KMA also has compiled property statements and property spreadsheets, assisted with cash flow analysis matters, and corresponded with the IRS regarding prior partnership income tax returns.

l.  <u>Accounts Established by the Receiver for the Benefit of the Receivership Estate</u>

The Receiver established custodial accounts at a federally insured financial institution to hold all cash proceeds from the sale of the Receivership properties. These interest-bearing checking accounts are used by the Receiver to collect liquid assets of the Estate and to pay portfolio-related and administrative expenses. The Receiver also established separate interest-bearing accounts to hold funds from the sale of real estate, as directed by Court order, until such time as it becomes appropriate to distribute such funds, upon Court approval, to the various creditors of the Estate, including but not limited to the defrauded investors or lenders. Attached as **Exhibit 2** is a schedule reflecting the balance of funds in these property specific accounts as of March 31, 2022, with a description of any changes to the account balance during the quarter.

II.  **RECEIVER'S FUND ACCOUNTING**

The Receiver's Standardized Fund Accounting Report ("SFAR") for the First Quarter 2022 is attached hereto as **Exhibit 3**. The SFAR discloses the funds received and disbursed from the Receivership Estate during this reporting period. As reported in the SFAR, cash on hand as of March 31, 2022 equaled $1,125,649.01. The information reflected in the SFAR is based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

III.  **RECEIVER'S SCHEDULE OF RECEIPTS AND DISBURSEMENTS**

The Receiver's Schedules of Receipts and Disbursements ("Schedule") for the First Quarter 2022 are attached hereto as **Exhibit 4**. These Schedules in the aggregate reflect $107,219.00 in total receipts and $1,316.00 in total disbursements to and from the Receiver's (non-property) accounts.

**IV.     RECEIVERSHIP PROPERTY**

All known Receivership Property is identified and described in the Master Asset List attached hereto as **Exhibit 5**. The Master Asset List identifies 56 checking accounts in the names of the affiliate entities identified as Receivership Defendants, reflecting transfers of $213,249.56 to the Receiver's account. (*See also* Dkt. 348 at 23-24 for additional information relating to these funds) The Master Asset List also identifies funds in the Receiver's account in the amount of $1,125,649.01.

The Master Asset List does not include funds received or recovered after March 31, 2022. Nor does it include potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests. The Receiver is in the process of evaluating certain other types of assets that may be recoverable by the Receivership Estate.

Additionally the balances of the 105 property-specific interest-bearing accounts established to hold the proceeds from sold real estate is attached as Exhibit 2. These accounts cumulatively contained $70,387,156.70 as of March 31, 2022.

**V.     LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY THE RECEIVERSHIP ESTATE**

The Receiver and his attorneys are analyzing and identifying potential claims, including, but not limited to, potential fraudulent transfer claims and claims for aiding and abetting the fraud of the Receivership Defendants. As it relates to potential actions against claimants, the Receiver anticipates that any such claims will be brought as part of the claims dispute resolution process, consistent with the Court's prior direction on such matters in establishing the claims dispute resolution process.

During the First Quarter 2022, the Receiver continued to prosecute actions in the Circuit Court of Cook County and the Northern District of Illinois against former EquityBuild outside counsel.

In *Duff v. Rock Fusco & Connelly, LLC, Ioana Salajanu, and Berbert Bregman Schwartz & Gilday, LLC*, Case No. 20-L-8843 (the "Rock Fusco Action"), the court entered a case management order setting a status conference on April 25, 2022 to address the status of completion of written discovery and the scheduling of depositions.

On December 17, 2021, the Receiver petitioned to intervene in *Liberty EBCP, LLC v. Rock Fusco & Connelly, LLC, and Ioana Salajanu*, Case No. 20-L-4725 for the purpose of enforcing the stay of litigation contained in the Order Appointing Receiver (Dkt. 16). On January 10, 2022, claimant Liberty EBCP, LLC moved this Court for a determination that its stay of litigation contained in the Order Appointing Receiver (Dkt. 16) was not applicable to its malpractice action against EquityBuild's former counsel. (Dkt. 1119) After full briefing, on March 23, 2022, the Court denied Liberty EBCP, LLC's motion. (Dkt. 1141, 1163, 1222)

In *Duff v. Mark L. Rosenberg and Law Offices Of Mark L. Rosenberg*, Civil Action No. 1:21-cv-6756 (the "Rosenberg Action"), which was removed from the Circuit Court of Cook County on December 20, 2021, the parties filed their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on February 23, 2022, and the defendant moved for summary judgment on February 25, 2022, arguing that the claims asserted by the Receiver were time-barred. On March 17, 2022, the Receiver served, but did not file, a petition for sanctions on the basis that the defendants' motion was not well-grounded in either fact or law. The Receiver demanded that the defendants withdraw the motion for summary judgment by April 7, 2022. The defendants did not withdraw the motion, which remains pending. In addition, the parties, including Berbert Bregman

Schwartz & Gilday LLC, a defendant in the Rock Fusco Action and the law firm with which Rosenberg was formerly affiliated, participated in a judicial mediation on April 4, 2022, but a settlement was not achieved.

Additionally, during the First Quarter 2022 the Receiver served multiple subpoenas for records related to his claims and potential claims, and the Receiver and his professionals reviewed the records that were produced pursuant to these and previously-served subpoenas.

## VI. CREDITORS AND CLAIMS AGAINST THE RECEIVERSHIP ESTATE

The identification and compilation of claims submitted in this matter has been extraordinarily complex and time-consuming due to the unique circumstances and facts in this case. For example, it appears that in many instances anticipated proceeds of investor-lender loans rolled into new offerings rather than being paid off at maturity. It also appears that the mortgages securing various loans may have been released without investor-lenders' knowledge or consent, allowing the Defendants to refinance the properties with new loans without retiring the existing loans. Moreover, some investor-lenders may have been induced to exchange secured loans for unsecured loans or equity positions through false representations. Additionally, claims against many properties are complicated by cross-collateralized mortgages. The claims process has also been complicated by, among other things: (i) improperly completed proofs of claim, (ii) claims relating to properties that were conveyed to third-parties prior to the establishment of the Receivership; and (iii) claims lacking reference to properties, or relating solely to what appear to be equity investment vehicles.

During the First Quarter 2022, the Receiver continued to work on the accuracy and completeness of its records regarding the nearly 2400 submitted claims.[4] Attached hereto as **Exhibit 6** is an updated version of the Receiver's "Master Claims Exhibit" listing, showing for each individual claim submitted, (i) the property address or fund name, (ii) the type (*e.g.,* property in the Receivership Estate, a former EquityBuild property disposed of prior to the establishment of the receivership, or an equity fund), (iii) the claimant name, (iv) the total amount claimed, (v) the category identified by the claimant (*e.g.,* investor-lender, equity investor, institutional lender, trade creditor, independent contractor or other), (vi) the amount claimed to have been loaned or invested in the particular property or fund (where it could be determined from the face of the claim form), and (vii) the unique claim number assigned to the claim. The updated Exhibit 6 reflects any additional information provided to the Receiver by claimants since the filing of the Receiver's last status report.

However, despite the claims review and analysis undertaken to date, the Receiver has not yet been able to review all of the documents submitted with each claim form, and thus makes no conclusions or recommendations to the Court or to the claimants as to the validity, certainty, eligibility, or priority of any particular claim at this time except as made through the claims resolution process. The balance of the Receiver's review of submitted claims will continue as part of the claims process that is discussed further below.

---

[4] Because many of the Proof of Claim ("POC") forms submitted to the Receiver included claims against more than one property, and many claimants submitted more than one POC for the same claims, the most accurate measure of the total number of claims is the number of unique claims against a particular property or fund, which total nearly 2400. About 165 of these claims, however, are asserted against properties that are not part of the Receivership Estate, because they were sold or otherwise disposed of before the Order Appointing Receiver was entered.

During the quarter, the Receiver and his counsel devoted substantial time to the summary claims resolution process with respect to the first group of properties ("Group 1"). Pursuant to the claims process set by the Court (Dkt. 941, 1090), position statements were filed by the SEC (Dkt. 1146) and various claimants in Group 1 (Dkt. 1140, 1144, 1149, 1151, 1152) on or about January 27, 2022. An additional fifty-one claimants submitted position statements to the Receiver, from which the Receiver redacted personal identifying information and filed in the public record on February 3 and 23, 2022. (Dkt. 1168, 1195) The Receiver and his counsel analyzed each of these position statements, as well as the discovery responses, document productions, and proofs of claims of all Group 1 claimants, and on February 28, 2022, filed his submission on the validity and amount of the claims against the five properties in Group 1. (Dkt. 1201) On March 14, 2022, responsive position statements were filed by the SEC (Dkt. 1216) and several of the Group 1 claimants (Dkt. 1215, 1217).

Additionally, on January 7, 2022, the Receiver submitted his Disclosure Statement regarding his position that in the event the Court finds that the lien of institutional lender BC57, LLC has priority over the security interests of the investor-lenders, that lien should be avoided based on EquityBuild's fraudulent transfer of the security interest in the five Group 1 properties (Dkt. 1118). On January 20, 2022, the Court granted BC57's motion for discovery on the Receiver's avoidance claim (Dkt. 1128, 1133, 1135), and the Receiver responded to document production requests and contention interrogatories. On February 28, 2022, the Court denied BC57's motion to take the Receiver's deposition on his avoidance claim, which was opposed by certain investor-lender claimants and the Receiver. (Dkt. 1191, 1198, 1199, 1200) On March 14, 2022, BC57 responded to the avoidance claim in its position statement, and the Receiver filed a reply memorandum on March 28, 2022. (Dkt. 1217, 1227).

Additionally, during the quarter the Receiver worked with counsel for claimants to file three joint status reports with the Court relative to claims process. (Dkt. 1139, 1166, 1229)

The Receiver and his counsel also devoted effort during the quarter to the separate claims process requested by institutional lenders U.S. Bank National Association and Midland Loan Services regarding the resolution of their claims relating to properties in which no other claimants have submitted a claim. The Receiver's counsel completed review of the nearly 10,000 pages constituting these institutional lenders' proofs of claim submissions, and began to review extensive productions served in response to subpoenas to third-party title companies Primary Title Services LLC, OS National LLC, Avenue 365 Title Company, and Chicago Title Insurance Company, and by loan originator CBRE Capital Markets Inc. Service upon Corevest American Finance Lender LLC, the loan originator for the loans involved in Midland's claims, was not achieved until February 16, 2022, and responsive documents from Corevest were provided to the Receiver on Saturday, April 23, 2022.

The Receiver and his counsel also worked with intervening counsel representing investors in properties that EquityBuild sold before the commencement of the receivership. The parties agreed to a Stipulated Order resolving these investors' motion requesting leave to name EquityBuild in mortgage foreclosure actions relating to four such properties. (Dkt. 1176) The Stipulated Order provides that the intervenors will not seek a deficiency judgment against EquityBuild, nor will they seek any discovery from the Receiver. The order further provides that any other party to the foreclosure actions will need to petition the court for relief from the Court's stay of proceedings in order to assert a claim against EquityBuild or to seek discovery from the Receiver.

Finally, the Receiver repeats the following reminders regarding claims and the claims process: claimants may want to consider whether to hire counsel to assist them with the claims process. Claimants do not have an obligation to retain counsel in order to participate in the claims process, but the Receiver and his counsel cannot provide legal advice to any claimant, nor can the Receiver advise claimants regarding whether or not they should retain counsel. Any claimant that chooses to proceed without counsel should visit the section of the Court's website (www.ilnd.uscourts.gov) named "Information for People Without Lawyers (Pro Se)" which provides useful information and also states the following: "The rules, procedures and law that affect your case are very often hard to understand. With that in mind, you should seriously consider trying to obtain professional legal assistance from an attorney instead of representing yourself as a pro se party." Claimants may also want to speak with a lawyer to assist them in determining for themselves whether or not to retain counsel.

All claimants have a continuing responsibility to ensure that the Receiver at all times has current and up-to-date contact information so that the Receiver may provide important information relating to the claims process, the claimant's claim, or the Receivership Estate. Additionally, any claimants who have transferred their interests to a different IRA or 401K custodian, or to themselves individually, should notify the Receiver and provide documentation of the transfer or distribution from their former custodian. Claimants may provide updated information and documentation to the Receiver at equitybuildclaims@rdaplaw.net.

## VII. PROFESSIONAL FEES AND EXPENSES

As of March 31, 2022, there were approximately $3,237,642.60 in unpaid fees and expenses for all professionals that have been approved by the Court subject to certain holdbacks, and the Receiver has submitted his 13th application for $155,709.74 of fees and costs incurred in the third quarter of 2021 (Dkt. 1087) and his 14th application for $151,828.35 of fees and costs

incurred in the fourth quarter of 2021 (Dkt. 1181). Objections to the 13th fee application are fully briefed (Dkt. 1188, 1207, 1220), and the Court has set a May 13, 2022, deadline for objections to the 14th fee application and a May 27, 2022 deadline for any replies (Dkt. 1241).

Pursuant to the Court's August 17, 2021, Order Approving First-Priority Receiver's Lien for Certain Categories of Expenses, granting in part the Receiver's motion for approval to pay certain previously approved fees and costs (Dkt. 947, 1030), the Receiver filed his Motion for Approval of Allocation of Fees to Properties for Payment Pursuant to Receiver's Lien (Dkt. 1107), which was referred to Magistrate Judge Kim. During the quarter, Judge Kim held a hearing on January 12, 2022, and set a briefing schedule for objections (Dkt. 1127). Subsequently, the institutional lenders moved for appointment of a fee examiner (Dkt. 1177), to which the Receiver filed a written response (Dkt. 1182) and participated in a hearing, and on February 17, 2022, the motion was denied (Dkt. 1184). Objections to the Receiver's fee allocation motion were filed on March 4 and March 6, respectively, by the Federal Housing Finance Agency ("FHFA") (Dkt. 1209) and the institutional lenders (Dkt. 1210), and the Receiver filed consolidated his Reply on April 1, 2022 (Dkt. 1230). Subsequently, the FHFA filed a motion for leave to file a surreply which the Court denied (Dkt. 1235, 1236).

## VIII. CONCLUSION

At this time, the Receiver recommends the continuation of the Receivership for at least the following reasons:

1. The continued investigation and analysis of current assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value, and/or ownership interests;

2. The continued investigation, analysis, and recommendations regarding the claims against the Receivership Estate, including, but not limited to, the claims and records of investors;

3. The continued investigation, analysis, and recovery of potential fraudulent transfer claims and claims against third parties;

4. The continued analysis and formulation, in consultation with the SEC and the Court, of a just and fair distribution plan for the creditors of the Receivership Estate; and

5. The discharge of any other legal and/or appointed duties of the Receiver as identified in the August 17, 2018 Order Appointing Receiver, or as the Court deems necessary.

Dated: April 29, 2022   Respectfully submitted,

Kevin B. Duff, Receiver

By:  /s/   Michael Rachlis
Michael Rachlis (mrachlis@rdaplaw.net)
Jodi Rosen Wine (jwine@rdaplaw.net)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952

*Attorneys for Kevin B. Duff, Receiver*

## CERTIFICATE OF SERVICE

I hereby certify that I provided service of the foregoing Receiver's Fifteenth Status Report, via ECF filing, to all counsel of record on April 29, 2022.

I further certify that I caused true and correct copies of the foregoing to be served upon the following individuals or entities by electronic mail:

- All known EquityBuild investors; and

- All known individuals or entities that submitted a proof of claim in this action (sent to the e-mail address each claimant provided on the claim form).

I further certify that the Receiver's Fifteenth Status Report will be posted to the Receivership webpage at: http://rdaplaw.net/receivership-for-equitybuild

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net