```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3
    UNITED STATES SECURITIES AND    )  Docket No. 18 C 5587
 4  EXCHANGE COMMISSION,            )
                                    )
 5                 Plaintiffs,      )
                                    )
 6            vs.                   )
                                    )
 7  EQUITYBUILD, INC., EQUITYBUILD  )
    FINANCE, LLC, JEROME H. COHEN,  )
 8  AND SHAUN D. COHEN,             )  Chicago, Illinois
                                    )  April 22, 2022
 9                 Defendants.      )  9:00 o'clock a.m.

10
          TRANSCRIPT OF PROCEEDINGS - VIDEOCONFERENCE STATUS
11               BEFORE THE HONORABLE JOHN Z. LEE

12
    VIDEOCONFERENCE APPEARANCES:
13

14  For the Plaintiff:       U.S. SECURITIES & EXCHANGE
                                COMMISSION
15                           BY:  MR. BENJAMIN J. HANAUER
                             175 W. Jackson Blvd., Suite 900
16                           Chicago, Illinois  60604

17
    For the Receiver:        RACHLIS, DUFF, PEEL & KAPLAN, LLC
18                           BY:  MR. MICHAEL RACHLIS
                                  MS. JODI ROSEN WINE
19                           542 South Dearborn, Suite 900
                             Chicago, Illinois  60605
20

21  For Federal Home Loan    DYKEMA GOSSETT, PLLC
    Mortgage Corporation,        BY:  MR. TODD GALE
22  Wilmington Trust, Citibank,10 South Wacker Drive, Suite 2300
    Federal National Mortgage  Chicago, Illinois  60606
23  Assoc., U.S. Bank, Sabal TL,
    Midland Loan Svcs., BC57,
24  and UBS AG:,

25
```

```
 1   APPEARANCES (Cont'd):

 2
     For BC57, LLC:              MADDIN, HAUSER, ROTH & HELLER, P.C.
 3                               BY:  MR. DAVID E. HART
                                 28400 Northwestern Highway
 4                               Second Floor
                                 Southfield, Michigan  48034
 5
                                 BERNSTEIN, SHUR, SAWYER & NELSON
 6                               BY:  MR. ROBERT J. KEACH
                                 100 Middle Street
 7                               Portland, Maine  04101

 8
     For 1839 Fund I, LLC:       MR. MICHAEL O. KURTZ
 9                               5630 N. Ashland Avenue, Apt 1
                                 Chicago, Illinois  60660
10

11   For U.S. Bank as Trustee:   FOLEY & LARDNER, LLP
                                 BY:  MR. ANDREW T. McCLAIN
12                               321 N. Clark St., Suite 2800
                                 Chicago, Illinois  60654
13

14   For Ventus Holdings, LLC    LATIMER LEVAY FYOCK LLC
     and Ventus Merrill, LLC:    BY:  MS. SASKIA N. BRYAN
15                               55 West Monroe Street, Suite 1100
                                 Chicago, Illinois  60603
16

17   For Intervening Investors:  BOODELL & DOMANSKIS, LLC
                                 BY:  MR. MAX A. STEIN
18                               1 North Franklin, Suite 1200
                                 Chicago, Illinois  60606
19

20   Also Present:               MR. KEVIN B. DUFF, Receiver

21
     Court Reporter:             MR. JOSEPH RICKHOFF
22                               Official Court Reporter
                                 219 S. Dearborn St., Suite 2128
23                               Chicago, Illinois  60604
                                 (312) 435-5562
24              * * * * * * * * * * * * * * * * * *
                          PROCEEDINGS RECORDED BY
25                       MECHANICAL STENOGRAPHY
                     TRANSCRIPT PRODUCED BY COMPUTER
```

1       (Proceedings had in open court, via videoconference:)

2           THE CLERK:  18 CV 5587, United States Securities and

3   Exchange Commission vs. Equitybuild.

4           Again, counsel, if you can please mute your phones

5   unless you're speaking.

6           THE COURT:  Can everyone else, also, not only the

7   lawyers, but anyone else who has called in, please mute your

8   phones.

9       (Brief pause.)

10          THE COURT:  All right.  So, if you're addressing the

11  Court, please unmute yourself, since I've given you the

12  ability to do that.  And when you're not speaking, if you

13  could keep yourself on mute, that would be appreciated.

14          So, who is appearing on behalf of the SEC today?

15      (No response.)

16      (Brief pause.)

17          THE COURT:  Good morning.

18          So, I have muted everyone.  Can everyone hear me?

19      (No response.)

20      (Brief pause.)

21          THE COURT:  Mr. Hanauer, can you hear me?

22          MR. HANAUER:  Yes, I can, your Honor.  Thank you.

23          THE COURT:  Very good.

24          So, who is appearing on behalf of the SEC today?

25          MR. HANAUER:  Good morning, your Honor, Ben Hanauer

 1    for the SEC.

 2              THE COURT:  Who is appearing on behalf of the

 3    receiver?

 4              MR. RACHLIS:  Good morning, your Honor, Michael

 5    Rachlis and Jodi Rosen Wine on behalf of the receiver.  The

 6    receiver is also on this video.

 7              THE COURT:  All right.

 8              And can the attorneys who are appearing on behalf of

 9    various investors and claimants, can you identify yourselves

10    for the record, one at a time.

11              Here, let me see if I can --

12              MR. GALE:  Good morning, your Honor.

13              THE COURT:  Let's start --

14              MR. GALE:  Apologize.

15              THE COURT:  -- since I can -- I can see the names.

16              Mr. McClain.

17              MR. McCLAIN:  Good morning, your Honor, Andrew

18    McClain, M-c-C-l-a-i-n, on behalf of U.S. Bank as trustee,

19    Citibank as trustee, Wells Fargo as trustee, and Fannie Mae.

20              THE COURT:  Mr. Hart?

21              MR. HART:  Good morning, your Honor, David Hart on

22    behalf of BC57, LLC.

23              THE COURT:  Ms. Fogel?

24         (No response.)

25              THE COURT:  We'll come back to her.

1          Mr. Stein.

2          MR. STEIN:  Good morning, your Honor, Max Stein on

3   behalf of certain individual investors.

4          THE COURT:  Mr. Kurtz.

5          MR. KURTZ:  Your Honor, Michael Kurtz, K-u-r-t-z, on

6   behalf of investor 1839 Fund I, LLC.

7          THE COURT:  Mr. Gale.

8          MR. GALE:  Good morning, your Honor.  I represent

9   Group 1 claimant BC57, LLC.  I also represent a number of

10  claimants in other groups.

11         THE COURT:  Mr. Keach.

12         MR. KEACH:  Yes, your Honor, Robert Keach, Bernstein

13  Shur, for BC57, LLC.

14         THE COURT:  Ms. Bryan?

15         MS. BRYAN:  Good morning, your Honor, Saskia Bryan on

16  behalf of Ventus -- (audio transmission interrupted) -- Ventus

17  Holdings and Ventus Equities.

18         THE COURT:  Ms. Bryan, can you repeat that, please.

19  We had a hard time hearing you.

20         MS. BRYAN:  I'm sorry, Saskia, which is S-a-s-k-i-a,

21  Bryan, B-r-y-a-n, on behalf of the Ventus, V-e-n-t-u-s,

22  parties.

23         THE COURT:  Thank you.

24         Ms. Mandeville?

25      (No response.)

```
 1              THE COURT:  Ms. Mandeville, you are still on mute.

 2              MS. MANDEVILLE:  Good morning.  I'm a claimant.

 3              THE COURT:  Okay.

 4         I have someone with the name Marti, no last name.

 5              MS. LaTOUR:  Okay.  This is Marti LaTour.  I'm sorry,

 6    can you hear me now?

 7              THE COURT:  Yes.

 8              MS. LaTOUR:  This is Marti LaTour, investor under

 9    LaMore, LLC.

10              THE COURT:  Are there any other counsel of record who

11    would like to enter their appearance today?  Please do so now.

12         (No response.)

13              THE COURT:  Very good.

14         So, I like to have these status hearings periodically

15    to make sure that we're on track; and, also, to make sure that

16    things are not falling through the cracks, and that I address

17    everyone's concerns with regard to the motions that have been

18    filed.

19         So, Mr. Rachlis, what I have pending on my list is

20    that the issue with regard to single-claim properties is still

21    being briefed, and we have a status hearing set for May 6th

22    with regard to that.  I also have a note that the Group 1

23    claims process is ongoing.

24         Mr. Rachlis, can you give me an update on kind of

25    where everything stands with regard to that.  I know that
```

 1    there have been some additional filings as of late.

 2            UNIDENTIFIED SPEAKER:  Oh, I just put something on

 3    here.  My mother had an investment that there's a huge -- it

 4    was --

 5            THE COURT:  Excuse me, sir.

 6            UNIDENTIFIED SPEAKER:  -- it was a Ponzi scheme.  A

 7    real estate thing.  And --

 8            THE COURT:  Sir, sir --

 9            UNIDENTIFIED SPEAKER:  -- it's been dragging along

10    for a while.

11            THE COURT:  Sir --

12            UNIDENTIFIED SPEAKER:  Suing Wells Fargo as a

13    co-conspirator effectively and it's going through --

14            THE COURT:  Mr. Rachlis?

15        (No response.)

16            THE COURT:  Mr. Rachlis, can you hear me?

17        (No response.)

18            THE COURT:  Mr. Rachlis, can you give me an update on

19    where things stand, please.

20            MR. RACHLIS:  Yes.

21            I'll start where your Honor started, with respect to

22    the solo-lien or the single-lien properties.  With respect to

23    those, we are continuing our review of those items.  In

24    particular, your Honor will recall that there were six

25    subpoenas that were sent out towards the end of the year of

1   2021.  We have received responses, which appear to be

2   complete, from five of six of those.  However, one remains

3   outstanding, which is an important one related to -- that was

4   sent to Corevest.

5        We understand that -- we've been following up on that

6   and there -- we're hoping -- we understand that some response

7   to that subpoena has been provided to counsel for Midland,

8   who -- I don't know if they're on this call or not.  But

9   they're one of the interested investors that have 26 to 28 of

10  the single-lien properties.  And, so, we are hoping that we're

11  going to be able to have those documents forwarded to us

12  shortly.  So, that's one important outstanding issue that

13  remains.

14       Our review is continuing, both the documents

15  produced -- which that review has been substantial, but

16  there's still some work that remains to be done on that.  And

17  that's outside of just getting this last subpoena responded

18  to.

19       So, in terms of being able to provide a position

20  statement on those, we know that there's currently a April

21  29th date, I believe, that's on calendar.  We are proposing

22  that that date be extended to June 3rd, which is about 30

23  days, more or less, that would allow hopefully for the

24  completion of the production pursuant to the subpoena.  You

25  know, we don't know exactly how much material is out there,

1    but assuming that it is a sort of reasonable amount, we're

2    hoping that we're going to be able to, within that time

3    period, be able to review and provide the position statement

4    at that time.

5              THE COURT:  So, that's --

6              MR. RACHLIS:  So, they're --

7              THE COURT:  So, that's --

8              MR. RACHLIS:  Sorry.

9              THE COURT:  So, that's with regard to the single-

10   claim properties issue, right?

11             MR. RACHLIS:  Yes, it is.

12             And sort of as a result of that -- your Honor

13   mentioned a couple -- the briefing on that.  I believe the

14   briefing on the issue that was raised was completed, I

15   believe, but there's still these issues that remain.

16             And in terms of a May 6th date, I'm not sure that a

17   status conference on those issues will be productive, given

18   what I've just reported to the Court on those issues.  So, we

19   might wish to move that to shortly perhaps either before or

20   just after the proposed June 3rd date to further inform the

21   Court as to whether -- where that all sits.

22             THE COURT:  So, can you --

23             MR. McCLAIN:  Your Honor --

24             THE COURT:  Hold on for a second, please.

25             Mr. Rachlis, can you explain in a bit more detail why

1   you need the documents that you subpoenaed.

2          MR. RACHLIS:  Yes, your Honor.

3          Your Honor will recall that originally the subpoenas

4   were issued primarily to understand the underwriting and due

5   diligence efforts that went into these various loans.  That

6   information is something that the receiver believes is

7   appropriate to review in order to understand whether or not

8   there's possible red flags or issues associated with avoidance

9   claims or inquiry notice types of issues that would need to be

10  raised consistent with the Court's direction in regards to the

11  process where if there is an avoidance claim that's going to

12  be raised, there would be an interrogatory form type of

13  listing of those facts that would be then provided to the

14  investor -- to the institutional lender here, who would then

15  be able to take discovery on those issues.

16         So, long story short, it deals with the due diligence

17  process and the information that they had associated with

18  underwriting these loans that were made directly to possible

19  avoidance or fraudulent types of conveyance claims.

20         THE COURT:  All right.

21         Someone wanted to make a statement?

22         MR. McCLAIN:  Yes, your Honor.  Andrew McClain,

23  M-c-C-l-a-i-n, on behalf of U.S. Bank as trustee, who has two

24  loans that are subject to the single-claims process.  Midland

25  is the other institutional lender.  I'm not sure if Midland's

1    counsel is on the line.

2           But, your Honor, just to follow up Mr. Rachlis, the

3    motion at issue that was referenced is our motion for

4    clarification, which is Docket No. 1 -- excuse me, 1111.  And

5    that is fully briefed.  We had a status hearing on February

6    8th on that, and the Court indicated that it was going to

7    issue a ruling on that.  So, that's the outstanding motion.

8           And the issue in that motion is when the 60-day

9    discovery should begin.  It's our position that the Court had

10   indicated that the 60-day discovery between the receiver and

11   the institutional lenders would begin after the receiver files

12   his position statement, which is currently set for April 29th.

13          We would oppose a further extension of this process.

14   The Court entered its minute order on November 18th, Docket

15   No. 1090, in which the Court stated this process shall begin

16   immediately and then set some various dates, including the

17   dates for the third-party subpoenas, which Mr. Rachlis

18   referenced, as well as discovery from the institutional

19   lenders.  And in that minute order, the Court did also set the

20   April 29th date for the position statement from the receiver.

21          So, we agree that there's outstanding issues that

22   need to be resolved, namely our motion for clarification; but,

23   we do maintain the position that the 60-day discovery should

24   begin after the receiver files its position statement.  And we

25   would request that the position statement be filed on April

1    29th, as the Court ordered in November.

2              THE COURT:  Okay.

3              With regard to the date, the receiver's request for

4    additional time to file the position paper, at this point that

5    request is denied.  I think we need to get this process going.

6              If the receiver, based upon additional discovery,

7    believes it needs to supplement its position paper as the

8    process goes on, it may.  But I don't want to delay things any

9    further than things have already gone on with regard to the

10   single-claim properties.

11             So, I want the receiver to set forth his position

12   paper as of April 29th, '22.  If the receiver wants to title

13   it "Initial Position Paper," that's fine, so that it's clear

14   that I'm giving the receiver an opportunity to supplement it.

15   But at this point in time, I want that position paper filed,

16   so that we at least -- so that I and everyone else can at

17   least know what the initial issues are going to be as the case

18   moves -- as the claims process moves forward with regard to

19   the single-claim properties.

20             So, with regard to the Group 1 claims process, is

21   counsel for BC57 here with us today?

22             MR. GALE:  Yes, your Honor, Todd Gale for BC57.

23             THE COURT:  So, Mr. Gale, BC57 has requested a

24   hearing as to the lien priority dispute and the avoidance

25   claims.  And I guess my question is, why do you think a

1   hearing would be helpful in my consideration of the issues?

2           MR. GALE:  We believe, your Honor, that a hearing

3   would be helpful because there are many very fact-driven

4   inquiries that have been raised in the briefings by the

5   parties.  Inquiry notice is an example.  The intent of the

6   parties and what everyone understood the documents to mean

7   that were being signed in the refinancing transaction with my

8   client BC57.

9           At this point in time, your Honor, what we think is

10  that the Court would benefit by hearing testimony from at

11  least two different parties.  One would be Near North Title.

12  Near North was the closing agent, the settlement agent, the

13  title agent for the refinancing transaction where BC57

14  refinanced the loans on the five properties that are at issue

15  in Group 1.

16          No one took Near North Title's deposition in this

17  case.  For whatever reason, the SEC, the receiver and certain

18  investor lenders chose instead to take the deposition of

19  Lincoln Land Services.  Lincoln Land Services is also a title

20  agent and settlement agent and closing agent, but they are not

21  licensed in Illinois.  So, when Bloomfield Capital reached out

22  to Lincoln Land Services, Lincoln Land Services lined up Near

23  North Title.

24          We put in declarations in support of our opening

25  position statement in late January from two individuals at

1    Near North Title, one who was the person who was responsible

2    for underwriting the transaction, and the other one is a

3    person who was the closing and settlement agent.  We certainly

4    put in the information there that we thought that was

5    important to support the claims that we made and to support

6    our arguments in that position statement.

7            But, your Honor, we want to be very careful here to

8    make sure that we get all facts before the Court for these

9    very factually-driven inquiries.  And we want to make sure

10   that we build a full and complete record in this court.

11           So, Near North Title is one of the things we think

12   would be interested -- that would be of interest to the Court.

13   And before I go any further, I should probably pause and give

14   you the chance to respond to anything I've said so far.

15           THE COURT:  Yes.

16           I guess my question is:  Do you think that -- you say

17   that it's very fact-laden, but do you think that there will

18   be -- the parties will have factual disputes as to any of

19   these issues?

20           MR. GALE:  Well, it's interesting, your Honor.  I

21   mean, from our perspective and as we wrote into our briefs, we

22   think that our facts -- the facts clearly favor us and that

23   the Court should find in our favor.  That's no surprise to

24   anyone on this call or anyone who's involved in litigation

25   ever.

1          From our perspective, I think that it's important

2     that these particular issues that are central to the

3     determination that the Court is going to make, we, consistent

4     with our right to due process, want to make sure that we are

5     able to make very full and complete presentation of all of the

6     facts that support what we have to say.

7          Obviously, we've read what was written into the

8     status -- the joint status report by the SEC, by the receiver,

9     by certain investor lenders.  The point that we're trying to

10    make, your Honor, is on these particular issues, what the

11    parties did, why the parties took the steps they did, and very

12    importantly, how those steps comported with industry custom

13    and practice in refinancing transactions just like this one,

14    we wanted to be sure that your Honor is able to hear from

15    people who were actually involved in the transaction and also

16    from our expert witness Bush Nielsen, who talks about industry

17    custom and practice.

18         THE COURT:  I think that as I go through the

19    materials, you know, I think that I will have to see whether

20    or not I think that there will be any factual disputes.

21    Absent any actual material disputes, I don't think that a

22    hearing would be particularly helpful.  And with regard to due

23    process, the parties have had an opportunity to present their

24    facts in their various position statements.

25         So, I guess the long and short of it is that unless I

1    think that a hearing would be helpful for me to resolve any

2    issues that the parties -- resolve any factual disputes that

3    the parties may have with regard to the record in this case

4    that would require me to assess credibility and weigh live

5    testimony, I am not going to, as a matter of course, have an

6    evidentiary hearing unless one is needed.

7             So, that's a long way of saying, Mr. Gale, that as I

8    go through the materials, I will see whether or not an

9    evidentiary hearing would be helpful or necessary in making

10   the determinations that I need to make.  So, the request is

11   taken under advisement as I go through the materials.

12            So, the --

13            MR. GALE:  Thank you, your Honor.

14            Can I ask one follow-up question, please?  I don't

15   mean to belabor this.  I know that you have other things on

16   your docket this morning.

17            THE COURT:  Go ahead.

18            MR. GALE:  I hear and understand what you're saying.

19   How about oral argument?  Does your Honor have any

20   understanding at this point in time whether the Court intends

21   to hold oral argument, short of an evidentiary hearing?

22            THE COURT:  Again, I think it's going to be, as I

23   kind of wade through all the materials, if I think that oral

24   argument on particular issues will be helpful, I will reach

25   out to the parties and ask them for it.  But as far as kind of

1   a general, wide-open oral argument, I don't intend to have

2   one.  But if I do have oral argument, I will let the

3   parties -- I will issue an agenda that identifies the

4   particular issues that I would want specific parties to

5   address.

6              MR. GALE:  I understand, your Honor.  Thank you.

7              THE COURT:  So, the other pending motions I have on

8   my list are ECF 1065, the motion to intervene by various

9   investor lenders.

10             Mr. Rachlis, is that still pending?

11             MR. RACHLIS:  I don't believe so.  I thought that

12  that one was resolved by stipulation.

13             THE COURT:  Okay.

14             The 13th fee application?

15             MR. RACHLIS:  Yes.  That still remains, as well.

16  Yes, that one is fully briefed, as well as -- and the 14th

17  application, which was recently filed, which has no briefing

18  schedule at this point, your Honor.

19             THE COURT:  Okay.

20             And with regard to Ventus, I believe that the motion

21  to designate interlocutory order as final judgment is still

22  pending; is that correct?

23             MR. RACHLIS:  Yes, your Honor.

24             MS. BRYAN:  Yes, your Honor.

25             THE COURT:  Is there anything else pending that's on

1   my plate, Mr. Rachlis, as far as you can tell?

2          MR. RACHLIS:  The only -- it's not directly on your

3   plate, your Honor; but, as your Honor knows, the fee

4   allocation motion, which is currently pending before Judge

5   Kim, is on the docket.  Let's say it that way.  So, we're

6   cognizant that that's there.  And that has been fully briefed,

7   and we know that that is pending before Judge Kim.

8          THE COURT:  All right.  Very good.

9          Is there anything else, Mr. Rachlis, that you would

10  like to address today?

11         MR. RACHLIS:  Your Honor, no.  The only thing -- I

12  don't know -- since we're meeting today as to issues, I don't

13  know if we need the May 6th date or not, your Honor, in terms

14  of a status date or if you want to move that to a different

15  date based on whatever's been on here today.

16         THE COURT:  Let's keep that date.  I want to take a

17  look at the position paper and then we'll see.

18         All right.  Is there anything else that the SEC would

19  like to address, Mr. Hanauer?

20         MR. HANAUER:  Yeah, just very briefly, your Honor, on

21  the issue of the need for an evidentiary hearing and

22  witnesses.

23         I'd just like to make it clear for the record that

24  the two witnesses that Mr. Gale alluded to BC57 wanting to put

25  on at the evidentiary hearing, someone from the title company

1  and then their expert witness, BC57 did put in declarations

2  from the title company witnesses and put in a report from

3  their expert witness.  No one put in any competing

4  declarations on any of those points or sought need for

5  additional testimony from those witnesses.

6        So, from the SEC's point of view, BC57 had more than

7  enough opportunity to put in evidence from the witnesses it

8  now wants to present live, and there was no response to those

9  witnesses such that we don't think there could be any disputed

10  facts flowing from those witnesses.

11        THE COURT:  All right.

12        Anything else --

13        MR. STEIN:  Your Honor, this is --

14        THE COURT:  Anything else that --

15        MR. HANAUER:  No.  Thank you, your Honor.

16        THE COURT:  Anything else that other counsel would

17  like to address today?

18        MR. STEIN:  Yes, your Honor.  This is Max Stein.  I'm

19  counsel for certain of the individual investor lenders.

20        I just wanted to echo what Mr. Hanauer just said.

21  The parties had the opportunity to seek a deposition of the

22  Near North Title agents and chose not to do so.  BC57 chose

23  not to present any additional evidence through declaration or

24  otherwise.  To now have them bring a witness in would be to

25  allow them to correct, seemingly, some problems or

1 deficiencies they feel they have in the evidence they've

2 already put in front of your Honor.  And that should not be

3 allowed.

4          THE COURT:  All right.

5          MR. STEIN:  The other thing, your Honor, I would

6 ask -- and I recognize as I ask this it's an unfair question.

7 But it is an unfair question I get fairly regularly from my

8 clients, so I at least want to have posed it to you, which is:

9 Do you have any idea when you might be moving to a ruling on

10 the priority issues in Group 1?

11          THE COURT:  My goal is to have a ruling with regard

12 to Group 1 within -- at the latest, by early June.

13          MR. STEIN:  I greatly appreciate that information,

14 your Honor.

15          THE COURT:  All right.

16          MR. GALE:  Your Honor, I don't want to stretch this

17 out.  Can I just say a couple of sentences about what Mr.

18 Hanauer and what Mr. Stein said?

19          THE COURT:  Mr. Gale, there's no need.  I understand

20 everyone's arguments.

21          Is there anything else --

22          MR. GALE:  Yes, sir.

23          THE COURT:  -- that counsel of record would like to

24 state today?

25      (No response.)

 1              THE COURT:  All right.

 2              For the investors on the line, on our next status

 3    hearing, I will provide a process where, once again, to the

 4    extent that the investors would like -- any of the individual

 5    investors would like -- to make a statement, they can reach

 6    out to Mr. Rachlis and the receiver and let him know.  And we

 7    will send out an agenda before the status so that individual

 8    investors can be recognized.  Okay?  Today's hearing just --

 9    that was not the purpose of today's hearing.  But, certainly,

10    for the hearing for the next status hearing, we'll institute

11    that procedure.

12              All right.  Very good.  Thank you very much.

13              MR. RACHLIS:  Thank you, your Honor.

14              MR. GALE:  Thank you, your Honor.

15                        *    *    *    *    *

16

17    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
18

19
      /s/ Joseph Rickhoff                      May 10, 2022
20    Official Court Reporter

21

22

23

24

25