```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3
      UNITED STATES SECURITIES AND    ) Docket No. 18 C 5587
 4    EXCHANGE COMMISSION,            )
                                      )
 5                    Plaintiffs,     )
                                      )
 6              vs.                   )
                                      )
 7    EQUITYBUILD, INC., EQUITYBUILD  )
      FINANCE, LLC, JEROME H. COHEN,  )
 8    AND SHAUN D. COHEN,             ) Chicago, Illinois
                                      ) May 6, 2022
 9                    Defendants.     ) 9:00 o'clock a.m.

10
           TRANSCRIPT OF PROCEEDINGS - VIDEOCONFERENCE STATUS
11                BEFORE THE HONORABLE JOHN Z. LEE

12
      VIDEOCONFERENCE APPEARANCES:
13

14    For the Plaintiff:        U.S. SECURITIES & EXCHANGE
                                    COMMISSION
15                              BY:  MR. BENJAMIN J. HANAUER
                                175 W. Jackson Blvd., Suite 900
16                              Chicago, Illinois  60604

17
      For the Receiver:         RACHLIS, DUFF, PEEL & KAPLAN, LLC
18                              BY:  MR. MICHAEL RACHLIS
                                     MS. JODI ROSEN WINE
19                              542 South Dearborn, Suite 900
                                Chicago, Illinois  60605
20

21    For Federal Home Loan     DYKEMA GOSSETT, PLLC
      Mortgage Corporation,     BY:  MR. TODD GALE
22    Wilmington Trust, Citibank,10 South Wacker Drive, Suite 2300
      Federal National Mortgage  Chicago, Illinois  60606
23    Assoc., U.S. Bank, Sabal TL,
      Midland Loan Svcs., BC57,
24    and UBS AG:

25
```

```
 1    VIDEOCONFERENCE APPEARANCES (Cont'd):

 2
      For Midland Loan          AKERMAN, LLP
 3    Servicing:                BY:  MR. MICHAEL D. NAPOLI
                                2001 Ross Avenue, Suite 3600
 4                              Dallas, Texas  75201

 5
      For 1839 Fund I, LLC:     MR. MICHAEL O. KURTZ
 6                              5630 N. Ashland Avenue, Apt 1
                                Chicago, Illinois  60660
 7

 8    For U.S. Bank as Trustee: FOLEY & LARDNER, LLP
                                BY:  MR. ANDREW T. McCLAIN
 9                              321 N. Clark St., Suite 2800
                                Chicago, Illinois  60654
10

11    For Ventus Holdings, LLC  LATIMER LEVAY FYOCK LLC
      and Ventus Merrill, LLC:  BY:  MS. SASKIA N. BRYAN
12                              55 West Monroe Street, Suite 1100
                                Chicago, Illinois  60603
13

14    For Thorofare Asset Based TAFT, STETTINIUS & HOLLISTER, LLP
      Lending Reit IV, LLC:     BY:  MR. WILLIAM J. SERRITELLA, JR.
15                              111 East Wacker Drive, Suite 2800
                                Chicago, Illinois  60601
16

17    For Capital Investors:    GARDINER, KOCH, WEISBERG & WRONA
                                BY:  MS. SHANNON V. CONDON
18                              53 W. Jackson Blvd., Suite 950
                                Chicago, Illinois  60604
19

20    For Intervening Investors: BOODELL & DOMANSKIS, LLC
                                BY:  MR. MAX A. STEIN
21                              1 North Franklin, Suite 1200
                                Chicago, Illinois  60606
22

23

24

25
```

```
 1   VIDEOCONFERENCE APPEARANCES (Cont'd):

 2
     Also Present:              MR. KEVIN B. DUFF, Receiver
 3                              MR. DAVID MARCUS
                                MR. DAVID A. JOHNSON
 4                              MR. MEHERNOSH PITTMAN
                                MR. ARNOLD KAMEDA
 5                              MS. JANE SHAFRIN
                                MR. GAR WEATHERHEAD
 6                              MR. HOWARD SLOMKA

 7
     Court Reporter:            MR. JOSEPH RICKHOFF
 8                              Official Court Reporter
                                219 S. Dearborn St., Suite 2128
 9                              Chicago, Illinois  60604
                                (312) 435-5562
10
                     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
11
                           PROCEEDINGS RECORDED BY
12                         MECHANICAL STENOGRAPHY
                      TRANSCRIPT PRODUCED BY COMPUTER
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Proceedings had via videoconference:)

2          THE COURT:  This is Judge Lee.  Everyone who is on

3   the call, unless I give you permission to speak, please mute

4   your phones.  That is the only way this is going to work.  I'm

5   going to give everyone a chance to please mute your phone.

6   And I can see when people's phones are muted.

7          UNIDENTIFIED SPEAKER:  I don't know how to do mute.

8   I'm not quite sure how to do that.

9          THE COURT:  Carmen, go ahead and call the case.

10          THE CLERK:  18 CV 5587, United States Securities and

11   Exchange Commission vs. Equitybuild.

12          THE COURT:  Who is appearing on behalf of the SEC?

13          MR. HANAUER:  Good morning, your Honor, Ben Hanauer

14   for the SEC.

15          THE COURT:  And who is appearing on behalf of the

16   receiver?

17          MR. RACHLIS:  Good morning, your Honor, Michael

18   Rachlis and Jodi Rosen Wine on behalf of the receiver.  The

19   receiver is also on this video call.

20          THE COURT:  All right.

21          Who are the other attorneys who have filed their

22   appearance, if you want to enter your appearance for the

23   record.

24          Let's start with Mr. Stein.

25          MR. STEIN:  Good morning, your Honor, Max Stein on

1    behalf of a group of claimants.

2            THE COURT:  Mr. Napoli.

3            MR. NAPOLI:  Good morning, your Honor, Michael Napoli

4    on behalf of Midland Loan Servicing.

5            THE COURT:  Mr. Kurtz.

6            MR. KURTZ:  Good morning, your Honor, Michael Kurtz

7    on behalf of claimant 1839 Fund I, LLC.

8            THE COURT:  Mr. McClain.

9            MR. McCLAIN:  Good morning, your Honor, Andrew

10   McClain on behalf of Fannie Mae, U.S. Bank as trustee and

11   Citibank as trustee.

12           THE COURT:  Mr. Gale.

13           MR. GALE:  Good morning, your Honor, Todd Gale on

14   behalf of BC57, LLC.

15           THE COURT:  Are there any other attorneys who have

16   entered their appearance who would like to enter their

17   appearance today?

18      (No response.)

19           THE COURT:  All right.  Before we --

20           MS. CONDON:  Judge --

21           THE COURT:  Go ahead.

22           MS. CONDON:  Shannon Condon on behalf of Equitybuild,

23   a claimant.  I'm sorry, Capital Investors, claimant.

24           MS. BRYAN:  Good morning, your --

25           THE COURT:  So --

1          MS. BRYAN:  Good morning, your Honor, Saskia Bryan on

2    behalf of Ventus Merrill and Ventus Holdings, intervenors.

3          Thank you.

4          MR. SERRITELLA:  Good morning, your Honor, this is

5    Bill Serritella on behalf of Thorofare Asset Based Lending

6    Fund IV, LLC.

7          THE COURT:  Okay.

8          So, the receiver submitted the receiver's 15th status

9    report on April 29th.  I trust that everyone who is on this

10   call has had a chance to review it.  If you haven't, it's

11   available through the receiver's Web site, the Web site that's

12   established by the receiver.  If you don't know what that is,

13   you can go ahead and reach out to Mr. Rachlis or Ms. Wine, who

14   are the attorneys for the receiver, to get that information.

15         Mr. Rachlis, a couple of questions.  I see that the

16   accounts for the 105 property-specific, interest-bearing

17   accounts that hold all the proceeds from the sale of the real

18   estate, they total amount to a little bit more than $70

19   million.

20         Is that correct?

21         MR. RACHLIS:  That is correct, your Honor.

22         THE COURT:  What are the -- do you know --

23         THE COURT REPORTER:  Judge, I'm sorry, I'm getting a

24   lot of feedback from the other people.  If we could ask to

25   mute phones, again?

1          THE COURT:  Unless I give you permission to talk,

2   please mute all your phones or I'm going to end this hearing,

3   because otherwise we can't continue.

4       (Brief pause.)

5          THE COURT:  Again, if you are participating in this

6   call, number one, do not use a speakerphone; and, number two,

7   mute your phones, unless you are given leave to speak.

8       (Brief pause.)

9          THE COURT:  So, Mr. Rachlis, what is the total amount

10  -- if you add up all the claims, what would be the total

11  amount of all of the claims?

12         MR. RACHLIS:  I believe -- and I'm going to also --

13  if Ms. Wine has a different amount in mind, I'll ask her, as

14  well.  But I believe it's about $135 million.

15         THE COURT:  So, it's about twice as much as the cash

16  that is available based upon the sale of the properties?

17         MR. RACHLIS:  I believe that's correct.

18         THE COURT:  Okay.

19         So, we had a brief status with regard to the various

20  motions and whatnot on the case, as well as where we are with

21  regard to the Group 1 properties, at the last hearing.

22  Today's hearing is really a chance for those claimants who

23  have notified the receiver that they want to be heard, to be

24  heard, not only by me, but by the receiver, as well as the

25  SEC.  I think that these opportunities are important, just to

1   provide the claimants with a voice and to raise their

2   concerns.

3          Given the number of claimants, however, that have

4   asked to address the Court, I know originally I had allotted

5   five minutes per claimant.  But just to make sure that

6   everyone has an opportunity to voice their concerns or have

7   their say, I'm going to have to limit the comments to about

8   three minutes for each claimant.

9          So, let's go ahead and start.

10          First of all, Mr. David Marcus.  Are you on the line

11   with us today?

12          MR. MARCUS:  Yes, I am, your Honor.

13          THE COURT:  All right.  Go ahead, Mr. Marcus.  You

14   can go ahead and start now.

15          MR. MARCUS:  Well, let me just say good morning to

16   everyone there.  I'm in the eighth tranche.  We're still in

17   the first tranche.  I'm in the eighth tranche.  And I'd like

18   to know, Judge Lee, when do you expect to get to my eighth

19   tranche?

20          And that would be interesting for me to know because

21   this is taking way too long.  So, that's number one.

22          Unfortunately, I don't think -- further ahead, August

23   will be four years since this started.  I cannot afford to

24   wait two, three, four more years, and I won't wait four more.

25   I just won't do that.  I need to have something.  There's no

1    sense of urgency right now in the courts, and I have to put a

2    sense of urgency there.  I have 1,370,000 reasons to do what

3    I'm doing.

4         You know, I appreciate that the Court is giving me a

5    chance to talk.  I hope I have a lot more chances in the

6    future.  At this point, I just want to say Max Stein does not

7    represent my interests whatsoever.

8         So, the thing is, Judge, I appreciate your letting me

9    speak.  I'm not in the best of moods now.  I just -- I'm

10   getting over COVID, so I'm not in great shape now.  Anyhow, I

11   wanted -- I look forward to talking with you in the future.

12        But I still need to know that eighth tranche, when do

13   you -- do you have any plan for when we're going to get there?

14        THE COURT:  All right.  Thank you, Mr. Marcus.

15        With regard to the timing of the tranche, the reason

16   why we have not set out a certain time frame is because the

17   hope and belief is that once we get through the first group,

18   that will set some ground rules and it will provide the

19   claimants with some guidance on how I would rule with regard

20   to the other properties along the way.

21        And, so, while I can't give you a specific time frame

22   at this point, Mr. Marcus, and to the other claimants on the

23   phone, what I would tell you is after this first group is

24   done, I anticipate that things will go much faster.  It is

25   also my hope and plan that after I issue my ruling with regard

1    to the first group, that we get together and see if there is a

2    possibility of taking all of the claimants into some sort of

3    mediation, either with the Court's assistance or with the

4    assistance of Magistrate Judge Kim, to see if we can come to a

5    quicker resolution and a settlement with regard to the

6    remaining claims.  That is why I wanted to know how many --

7    what the total amount or value of all the claims were versus

8    the amounts that we have on hand.

9          So, thank you, Mr. Marcus.

10          We'll now go to Ms. Roswitha Ennema.  Are you on the

11    phone with us?

12      (No response.)

13          THE COURT:  Roswitha Ennema, E-n-n-e-m-a.

14      (No response.)

15          THE COURT:  All right.  We'll come back to her.

16          What about Jim Tutsock?  Mr. Tutsock, are you with

17    us?

18      (No response.)

19          THE COURT:  T-u-t-s-o-c-k, Jim Tutsock.

20      (No response.)

21          THE COURT:  What about David A. Johnson?

22    Mr. Johnson, are you with us today?

23          MR. JOHNSON:  Yes, I'm here, Judge.

24          THE COURT:  Go ahead, Mr. Johnson.

25          MR. JOHNSON:  Basically, my comments were exact as

1    the person who just spoke.  That on behalf of all of the

2    individual investors, it's -- you know, I think the process

3    started in 2018.  It's taking a long time.  And I've never

4    gone through this before.  I'm waiting to find some

5    resolution.  What would be helpful is to know what month or

6    even year this may wrap up.

7         So, I appreciate the comments that, Judge, you just

8    gave.  That helps.  But we're really trying to figure out,

9    like, is this going to end, you know, this year, next year,

10   two years from now?  We have no idea.  Every time we ask the

11   receiver, they basically say, you know, there's this, that and

12   the other thing; there's a lot of things going on; we can't

13   really give you an answer, which is -- you know, leaves us in

14   a state of confusion.

15         Thank you.

16         THE COURT:  Thank you, Mr. Johnson.

17         Yes, as I said previously, I think we'll have a much

18   better idea of how much longer the entire process will take

19   after we get through first group of claims.

20         And there's also the issue of the properties where

21   there's only one claimant.  And once I rule on that issue,

22   again, I think we'll have a much better idea as far as time

23   frames go.

24         And, so, I understand the frustration, but given the

25   fact that there are twice as many claims -- of the value of

1    claims -- as there is cash available, the process needs to

2    make sure that everyone's rights are adequately protected.

3            So, I completely understand the sentiment people have

4    and the frustration that you have, but we are trying -- I'm

5    trying to resolve this in the most fair and efficient and

6    expedited manner possible.

7            Let's now turn to Dean Atanos- I'm sorry,

8    A-t-a-n-a-s-o-s-k-i.  Atanasoski, Dean?

9        (No response.)

10           THE COURT:  What about Yaron Fisher?

11       (No response.)

12           UNIDENTIFIED SPEAKER:  Oh, boy.

13           THE COURT:  Mr. Fisher, are you with us today?

14       (No response.)

15           THE COURT:  What about Doron Kermanian?

16       (No response.)

17           THE COURT:  Doron Kermanian.

18       (No response.)

19           THE COURT:  How about Mehernosh Pithawalla?

20           MR. PITHAWALLA:  Yes, Judge, I'm here.  Good morning.

21           THE COURT:  Good morning.  Please proceed, sir.

22           MR. PITHAWALLA:  Good morning, everyone.  Thanks for

23   allowing us to participate on this call.

24           Judge, I think questions are similar to what my

25   previous two individual participants had asked.  In today's

1   day and age of technology, it is a little frustrating to see

2   that this has taken five years, from my perspective.  But I

3   understand there's a process and we are doing proper due

4   diligence to enter the processes.  So, I want to thank

5   everybody who is putting in the hard work for this.

6           I have two questions, Judge.  Question No. 1 is:

7   After repeated e-mails and communications with Equitybuilder,

8   they still seem to be not certain of who is qualified as an

9   applicant and who is not in terms of the due diligence.  We've

10  sent all the documentation back for the last five years.

11  We've not got a "Yes" or a "No."  Unless it is buried

12  somewhere in the communication; and, if that's the case, my

13  sincere apology.  So, that's Question No. 1.

14          And Question No. 2 is:  How are we going to bifurcate

15  the distribution between the people that have held notes

16  versus the people that have held equity?

17          And last but not least, in the e-mail that was sent,

18  the status report that was sent on Friday, all the key

19  properties that I own on -- via the CTF I Fund have been sold.

20  So, based on that date, do you have any guidance on when a

21  distribution will be made?  These are the big concerns, Judge.

22          And, once again, thank you, everybody.

23          THE COURT:  All right.  Thank you, Mr. Pithawalla.

24          With regard to the difference between equity --

25  people that purchased equity versus notes, that's something

1    that will be resolved as part of the claims process.

2           With regard to whether or not -- if you're a claimant

3    and you submit a claim, if you want to see if there is any

4    additional information that the receiver needs, the best thing

5    to do is to contact the receiver.  Okay?

6           As far as whether or not those claims are valid, that

7    is what we're trying -- I'm trying -- that is what the process

8    is designed to ferret out, so that I can rule on particular

9    claims and the validity of particular claims.

10          With regard to the sales of the properties, yes, the

11   properties have been sold and all the funds have been

12   segregated.  So, the money has been protected.  It is not

13   going anywhere.  And the claims process is the process by

14   which we will -- I will determine how the proceeds will be

15   divided up amongst the various claimants.

16          As I noted, not all of the claims can be satisfied,

17   given the fact that the value of the claim exceeds the amount

18   of proceeds that have been collected through the sales.  And,

19   so, that's what we're trying to determine.

20          All right.  So --

21          MR. PITHAWALLA:  Judge, may I ask a question?

22          THE COURT:  Yes.  Quickly, please.

23          MR. PITHAWALLA:  Yeah.

24          So, the question is -- it was our understanding as

25   investors that the note would be a higher-priority security

1   versus the equity.  Is that also in line with the process of

2   evaluation of who gets paid or is it going to be different?

3          THE COURT:  That is one of the issues that the

4   parties will be raising as part of the claims process.

5          MR. PITHAWALLA:  Okay.  Thank you, Judge.

6          THE COURT:  Thank you.

7          Do we have Sheree Gravely?  Sheree Gravely?

8       (No response.)

9          THE COURT:  How about Arnold Kameda?

10          MR. KAMEDA:  Yes, Judge, I'm here.  Can you hear me

11  okay?

12          THE COURT:  Yes, we can.  Please proceed, sir.

13          MR. KAMEDA:  Thank you for this opportunity, Judge

14  John Lee, for us to speak.

15          I'm an investor that invested in multiple properties.

16  And during the latter part of 2017, I invested in a new

17  product that was offered called the South Side Development

18  Fund.  And my concern with these particular investments is

19  that they were not specifically or concretely tied to specific

20  properties.  They were touted as a mechanism to invest more

21  generically in the investment process of purchasing

22  multi-family units, revamping them and reselling them.

23          And, so, my concern with the South Side Development

24  Fund type of investment is that because they're not concretely

25  tied to specific properties, how are the claimants for South

1    Side Development Fund going to be able to obtain any of their

2    investment back?

3              THE COURT:  Okay.  Thank you, Mr. Kameda.

4              Mr. Rachlis, is this something that you can address

5    now or is it something you need to look into?

6              MR. RACHLIS:  Your Honor, the issues regarding the

7    investments in funds are the types of things that are being

8    evaluated in the claims process.  That is part of when we

9    would be presenting position papers and things of that nature.

10   There will be -- much like this issue that was identified by a

11   prior claimant associated with equity versus a promissory

12   note, this is a similar type of question and issue that would

13   be part of the process that is reviewed by the receiver in the

14   claims process.

15             THE COURT:  All right.  So, I just want to make sure

16   that this is -- the type of funds that Mr. Kameda is

17   referencing are being considered by the receiver as part of

18   the claims process and they're not just completely forgotten;

19   is that correct?

20             MR. RACHLIS:  That is absolutely correct.

21             THE COURT:  Okay.  Thank you.

22             MR. KAMEDA:  Thank you for the answer.

23             THE COURT:  Thank you, Mr. Kameda.

24             Next let's go to Debbie Lasley.  Ms. Lasley, are you

25   on the line?

1      (No response.)

2           THE COURT:  How about Jane Shafrin?  Ms. Shafrin?

3           MS. SHAFRIN:  I'm here.

4           THE COURT:  Yes, ma'am.

5           MS. SHAFRIN:  I have a simple question.

6           Good morning, everyone.

7           THE COURT:  Good morning.

8           MS. SHAFRIN:  I'm just wondering if there are any

9  funds left for reimbursement.  I own -- I invested in a

10 certain property that's on the list, and it's been sold.  But

11 I think it was sold for very little profit or there were very

12 -- very small proceeds from it.  And I'm just wondering -- I

13 only owned, according to the paperwork, five-and-a-half

14 percent of that apartment building.  Do I have any hope of

15 seeing any returns or should I just move on with my life?

16          THE COURT:  Ms. Shafrin, the answer to that is that

17 the -- with regard to what value or how much you will receive

18 from the proceeds of the sales, that will be determined as

19 part of this claims process.  And, so, that's not an answer I

20 can easily give you now.

21          But, again, as this process moves forward, I hope

22 that I will be able to establish some rules and guidelines

23 that will provide the parties with some better idea so they

24 can resolve these matters.

25          MS. SHAFRIN:  Okay.  That's like a non-answer, if you

1    pardon me for saying so.

2            But I'm assuming I get zero.  I'm hoping I don't have

3    to pay any more.  I'm hoping I don't have to pay any of the

4    costs of prosecuting these crooks.  So --

5            THE COURT:  With regard --

6            MS. SHAFRIN:  If I only have five-and-a-half percent

7    of the apartment house and it needed a lot of work before it

8    even could get sold, then I don't have much hope.

9            THE COURT:  So --

10           MS. SHAFRIN:  So, I will -- you know, I will -- go

11   ahead.

12           THE COURT:  So, I believe -- and the receiver or

13   Mr. Hanauer can correct me if I'm wrong, but there is no -- if

14   you're wondering whether you need to contribute any more money

15   as part of this case, the answer is that you do not.  Okay?

16           If the question is whether you should expect to

17   receive any money from this case once all the funds are

18   divided, the only answer I can give you today is at this

19   point, we do not know.  And that's what this process is

20   intended to figure out.

21           MS. SHAFRIN:  Okay.

22           So, you don't know how you're going to apportion the

23   profits or the proceeds, if any, from each individual building

24   that these crooks purchased.  I get that message.  The

25   original procedure --

1        THE COURT:  Ms. Shafrin, I have established a

2   procedure, and that is what we've been talking about -- the

3   various groups of properties.  And we're going to group the

4   properties and deal with the properties in groups.  So, there

5   is a procedure.  It's just going to take some time.

6        MS. SHAFRIN:  Yeah.  Because there are people who --

7        THE COURT:  Ms. --

8        MS. SHAFRIN:  -- really got -- really got shafted by

9   these guys.  And I consider myself lucky that I was not in

10  that group.  And I think they should be reimbursed if anybody

11  should be, before I get any money, you know.  So, that's my

12  attitude.  And I hope that that will play through, that the

13  biggest investors in this scam are first in line to get some

14  money back.

15       So, I just wanted to express that.  And I won't take

16  any more of your time because this is pretty much what I

17  thought was going on anyhow, based on the e-mails that I get.

18  So, thank you for having this session, but, you know --

19       THE COURT:  Thank you, Ms. Shafrin.  Thank you for --

20       MS. SHAFRIN:  -- I'm lucky I don't need the money.

21  What?

22       THE COURT:  Thank you for your input.

23       All right.  So, let's move on.  How about Therese

24  Tibbits?

25       (No response.)

1          THE COURT:  Therese Tibbits?

2     (No response.)

3          THE COURT:  What about Gar Weatherhead?

4     (No response.)

5          THE COURT:  What about Gary Kucera through his

6  counsel?

7          MR. WEATHERHEAD:  Hello, this is Gar Weatherhead.

8  I'm here.

9          THE COURT:  Oh, you are there.

10          Yes, Mr. Weatherhead, we can hear you.  Go ahead,

11  please.

12          MR. WEATHERHEAD:  Okay.  Good morning, your Honor.

13          Yeah, I -- you know, you've answered a lot of my

14  questions.  I have two additional ones.  Number one was:  Who

15  is going to be paid first, individual investors or

16  institutional investors?  Has that been decided yet?

17          THE COURT:  No, that has not.  That is one of the

18  biggest questions about -- that is raised as part of the Group

19  1 properties.

20          MR. WEATHERHEAD:  Okay.  That was my feeling that

21  that's what was taking a lot of time.  I guess I was correct

22  with that assumption?

23          THE COURT:  That is one of the things that has taken

24  time, yes.

25          MR. WEATHERHEAD:  Okay.  Okay.

1          And, then, my other question is -- I understand it's

2    going to be a while before we find out whether our claims are

3    coming back or not, but have the funds from the property sales

4    now that all the properties are sold, have they been enough to

5    cover the claims or do they fall way short --

6          THE COURT:  They're about 50 percent of what all of

7    the claims are that have been submitted.  So, the claims

8    exceed the amount of cash by about -- by two times.

9          MR. WEATHERHEAD:  Okay.

10          And, then, last question is, you know, I -- towards

11    the end of the time before the receivership took over, I had,

12    you know, made phone calls back and forth with one of the

13    defendants, Shaun Cohen.  And I've been -- the whole time I've

14    been trying to find out what exactly has happened to them as

15    far as punishment.  It seems like not much has happened.

16          Is there a way I can find out more about, you know,

17    the penalties or prison or anything these guys are facing?

18          THE COURT:  That question I'm going to direct to

19    Mr. Hanauer.

20          Is there anything that is available to Mr.

21    Weatherhead as a victim?

22          MR. HANAUER:  Yes.  Thank you, your Honor.

23          Good morning, Mr. Weatherhead and the other

24    participants.

25          In terms of the SEC's enforcement action against the

1    Cohens, that action has been complete for sometime now.  Judge

2    Lee imposed, basically, all the relief that the SEC requested

3    and was able to obtain against Shaun and Jerry Cohen.  That

4    includes injunction relief -- injunctive relief, as well as

5    very significant penalties and disgorgement against them.

6         I can report that Jerry Cohen passed away more than a

7    year ago.  So, that, for better or for worse, completely

8    resolves the SEC's case against him.

9         Against Shaun Cohen, we will continue to make every

10   effort to collect on the money judgments that Judge Lee has

11   imposed; and, any money that we do collect, we would make our

12   best efforts to distribute to investors.

13        But that said, the amounts we have been able to

14   collect from Mr. Cohen are not large at this point.  And,

15   unfortunately, I cannot speak to any other government steps

16   that are being taken in regards to Shaun Cohen.

17        MR. WEATHERHEAD:  Okay.  Thank you very much for that

18   update.

19        THE COURT:  Thank you, Mr. Hanauer.

20        Now let's turn to Howard Slomka on behalf of Gary

21   Kucera.

22        MR. SLOMKA:  Thank you, your Honor.

23        Are you able to hear me okay?

24        THE COURT:  Yes, we can.

25        MR. SLOMKA:  Excellent.

1          So, I just had a couple of questions.  First related

2    to the expenses of the fund in the litigation.  You know, we

3    see the fee applications coming in, and I think that -- I

4    understand the process and that's fine.  Mr. Duff is doing a

5    good job.

6          I'm curious if there is an estimated or projected

7    total expense and how the expense of this case is going to

8    compare to the $135 million in claims.

9          THE COURT:  I will address that to Mr. Rachlis.

10         MR. RACHLIS:  Thank you, your Honor.

11         At this point, we don't have an estimate as to what

12   the total cost will be.  It is -- and it's difficult to

13   estimate based on the fact that there are kind of ebbs and

14   flows in regards to the various activities that go on in the

15   receiverships.

16         There was a lot of activity, as you may see, going

17   back historically in terms of issues associated with the

18   operation, management and ultimate disposition of the

19   properties.  But having those all sold, those activities are

20   largely, you know, concluded other than kind of wrap-up issues

21   on some of the last properties that were being sold and

22   reconciliation types of questions that are done for an

23   accounting basis.

24         But once -- you know, obviously with that phase

25   having come to pretty much an end, there are other phases of

1   this that involve a lot more activity.  For example, there are

2   these -- the claims process, you know, you've seen through the

3   Group 1 activities, as well as recently in regard to the

4   single-claim properties, as well.

5           So, we don't -- we're not able to give an answer as

6   to estimates in that regard.  But we can say that, you know,

7   the information on this is updated pretty much quarterly

8   through both status reports that are submitted, as well as the

9   fee applications that are submitted, to the district court

10  before Judge Lee.

11          So, there's a constant roll there that provides

12  fairly up-to-date information on all of those that's submitted

13  every quarter.

14          MR. SLOMKA:  Thank you.

15          We are aware of the fee application and the quarterly

16  reports, and they are helpful.  But as Mr. Marcus said -- it

17  was the first speaker -- we don't know when this will end.

18  So, we don't know whether the quarterly reports are going to

19  go on for another two quarters or another twenty quarters.

20  So, it would be helpful -- and that's why I only asked for an

21  estimate.  And I understand an estimate is hard to give.  But

22  it's only an estimate.

23          And I think it would be helpful for all the claimants

24  to know, you know, whether we are looking at forgoing one

25  percent or ten percent or twenty percent of the total pool.

1     That would be helpful to us.

2              My next question is the relationship between the

3     various tranches.  Our claim is in Tranche 4.  So, it's

4     unclear to me whether this is just a waterfall-type thing

5     where all of Tranche 1 will get paid before the first check is

6     sent to anyone in Tranche 2.

7              And, secondly, do any of the funds move from one

8     tranche to another?  And, if it doesn't, then it's possible

9     that one tranche would yield a 90 percent return to its

10    investors and another tranche could yield only a 15 percent to

11    its investors.

12             Do I understand that properly?  Is that how it's

13    going to work?  Pool by pool, depending on what came in for

14    those properties?

15             THE COURT:  Mr. Slomka, at this point in time, while

16    that is something I think that we're going to be talking about

17    after the first group, at this point in time, I do not -- my

18    preliminary impression is that it would not be a waterfall

19    method.  In other words, it would not be that so if you're in

20    the later tranches, that even though you have a valid claim,

21    there won't be any money for you because it's been taken up by

22    all of the prior claims.

23             THE COURT REPORTER:  Judge, I'm sorry, this is Joe

24    again.  Could we ask that they mute their phones?

25             UNIDENTIFIED SPEAKER:  Listen to, you know, that law

1    -- all that law thing where all the money got stole from me.

2         THE COURT:  If you are on the --

3         UNIDENTIFIED SPEAKER:  Hearing from some of the court

4    staff now.

5       (Brief pause.)

6         THE COURT:  Mr. Slomka, any other questions?

7         MR. SLOMKA:  I didn't quite hear the end of yours.  I

8    understand that you're saying that the later tranches won't be

9    hurt by the earlier ones.  But are all of the 60 to $70

10   million of collected assets then going to be divided equally

11   between the tranches?

12        THE COURT:  At this point -- that is not the purpose

13   of the tranches.  The purpose of the tranches wasn't to have

14   some sort of pro rata distribution between all the tranches.

15   It was a way for us to most expediently resolve some of the

16   claims because the tranches have -- either raise similar

17   issues or have similar investors or come from a similar set of

18   facts.

19        So, the purpose of the tranche was not as a way of

20   trying to determine how to distribute the funds.  The

21   distribution of how the funds will be distributed is a

22   determination that will be made later.

23        MR. SLOMKA:  Okay.

24        And on behalf of all the claimants, we're interested

25   in knowing, you know, how much later.

1          And, then, my last question on that is mediation was

2     mentioned at the beginning of the call.  And if you could just

3     address how that mediation would work.  Would each claimant

4     have the ability to mediate its own claim and exit the pool

5     with a check or would mediation require a global settlement?

6          THE COURT:  That is something that I haven't really

7     discussed with the attorneys and, frankly, I haven't really

8     discussed with the receiver.

9          I think that after the rulings in the first group, it

10    would be a -- it would present a good opportunity for everyone

11    to get together and talk about if there is a way to mediate

12    this.  And I think the mediation would probably have to take

13    globally to see if we can get some relief out to the various

14    claimants in some sort of way that would be faster than going

15    through the remainder of the claims process.

16          So, those were just kind of preliminary thoughts on

17    my part, Mr. Slomka, and nothing has been set or decided with

18    regard to what a mediation program might look like.

19          MR. SLOMKA:  Okay.  Thank you for the opportunity to

20    be heard on the status call.  Appreciate it.

21          THE COURT:  All right.  Thank you.

22          And, so, let's go back through the list of people

23    just to see if anyone has come back or signed on.

24          Roswitha Ennema, are you on phone?

25       (No response.)

1          THE COURT:  Jim Tutsock?

2     (No response.)

3          THE COURT:  Dean Atanasoski?

4          UNIDENTIFIED SPEAKER:  Investor, equity versus note;

5     investor versus institution.

6          THE COURT:  Yaron Fisher.

7     (No response.)

8          THE COURT:  Doron Kermanian.

9     (No response.)

10          THE COURT:  Sheree Gravely.

11     (No response.)

12          THE COURT:  Debbie Lasley.

13     (No response.)

14          THE COURT:  Therese Tibbits.

15     (No response.)

16          THE COURT:  That is the entire list that I have of

17     people that have submitted requests to be heard.

18          At this point, Mr. Rachlis, is there anything else to

19     report from the receiver?

20          MR. RACHLIS:  No, your Honor.

21          THE COURT:  Is there anything --

22          MS. WINE:  Your Honor, this is Jodi Wine.  I just

23     wanted to mention that Ms. Gravely had contacted the receiver

24     saying she was having trouble with the video link, and we did

25     send her the telephone number to dial in.

 1              THE COURT:  Okay.

 2              Well, this will not be the only opportunity for -- I

 3    plan to have other opportunities for claimants as this process

 4    proceeds to raise whatever questions they have, as well.

 5              Mr. Hanauer, anything else for the SEC at this point?

 6              MR. HANAUER:  No.  Thank you, your Honor.

 7              THE COURT:  Anything for the attorneys who have

 8    entered their appearance today?

 9              MR. McCLAIN:  Your Honor, Andrew McClain on behalf of

10    U.S. Bank as trustee.

11              Specifically related to the receiver's recent

12    submission on the single-claims process, the position paper

13    confirms what we've --

14              THE COURT:  Mr. McClain, can I tell you that I have

15    not looked at it.  Okay?  And, so, if you want a status

16    hearing specifically on that, talk to the receiver and then

17    reach out to Ms. Acevedo, my courtroom deputy.  Okay?

18              MR. McCLAIN:  Very good, your Honor.  I will do that.

19    Thank you.

20              THE COURT:  All right.  Thank you.

21              Anyone else?

22         (No response.)

23              THE COURT:  Thank you, everyone, for your

24    participation in this call -- oh, one other thing.

25              Mr. Duff, I do think what Mr. Slomka raised about

1    kind of an estimate or forecast, however uncertain -- I know

2    there's a lot of uncertainty -- that I would like you to kind

3    of start thinking about that, because I think it might be

4    helpful, with all the various caveats that you and Mr. Rachlis

5    kind of believe that you need.  But it's certainly something

6    that I would like to talk to and explore with the receiver and

7    you as part of this process.  Okay?

8              MR. DUFF:  Understood, your Honor.

9              THE COURT:  All right.

10             Thank you, everyone.  Have a good day.

11                      *     *     *     *     *

12

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

14

15
     /s/ Joseph Rickhoff_____                May 20, 2022
16   Official Court Reporter

17

18

19

20

21

22

23

24

25