## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES ) | |
| AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 18-cv-5587 |
| ) | |
| v. ) | Hon. John Z. Lee |
| ) | |
| EQUITYBUILD, INC., EQUITYBUILD ) | Magistrate Judge Young B. Kim |
| FINANCE, LLC, JEROME H. COHEN, ) | |
| and SHAUN D. COHEN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## RECEIVER'S REPLY IN SUPPORT OF HIS FOURTEENTH (14TH) INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS

Michael Rachlis (mrachlis@rdaplaw.net)
Jodi Rosen Wine (jwine@rdaplaw.net)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950

*Counsel for Receiver Kevin B. Duff*

Certain institutional lenders (out of the more than 900 claimants) (the "Objectors") have once again filed the only objection (Dkt. 1250) to the Receiver's 14th Fee Application (Dkt. 1181), for services between October 1, 2021 and December 31, 2021. Notably, and as it has done for the prior thirteen applications, the SEC communicated with the Receiver that it has no objection to the fees set forth in the Receiver's 14th Fee Application and confirmed that such fees comply with the SEC guidelines. (*See also*, SEC Reply in Support of 14th Fee Application, Dkt. 1254)

The latest objections incorporate prior objections to the Receiver's pending fee applications (*see* list, Dkt. 1250, at 2), and raise unfounded new objections. Like the Objectors, the Receiver incorporates by reference herein the responses, explanations, and arguments set forth in his replies to the Objectors' prior objections (*see* Dkt. 1207 & *id.* at 1 (listing Receiver pleadings addressing objections)), as well as the underlying fee applications (*see* Dkt. 1181 & 1207 at 1 (listing fee applications)), and also refers the Court to the SEC's reply in support of the Receiver's prior fee applications (*see* Dkt. 1207 at 1-2 (listing SEC pleadings)). The Receiver endeavors below to only address matters that require updated information or raise new points that have not been previously addressed in other filings.

The Objectors again devote and unnecessarily repeat[1] several pages of their spin on procedural history and context. (Dkt. 1250, at 1-5) Rather than belabor or take specific issue with this recitation, the Receiver directs the Court to his prior submissions that cover the relevant procedural history and context of his fee application, and particularly with respect to the allocation issues that are a major undercurrent of the Objectors' Response. (*See, e.g.,* Dkt. 1207 at 2 (and citations therein))

---

[1] For instance, the Objectors could have simply referred the Receiver and the Court to nearly verbatim pages of their immediately preceding objection (Dkt. 1188, at 1-4) and dispensed with practically the entirety of the first four pages of their objection.

The Objectors' recitation of subsequent procedural history fails to show that the SEC filed its Reply In Support of Receiver's Thirteenth Fee Application on March 17, 2022. (Dkt. 1220) And as the Court and the Receiver have repeatedly noted, and applicable case law instructs, the SEC's position on receivership fees is given great weight by the Court. (*E.g.,* Dkt. 1230 at 5 (p.1)) Additionally, the Objectors' procedural history omits that on April 1, 2022, the Receiver filed his Reply in Support of the Fee Allocation Motion currently pending before Judge Kim. (Dkt. 1230)

I.      **The Objectors Errantly Assert that the Fees and Expenses of the 14th Fee Application Are Not within the Categories Approved by the Court.**

In his 14th Fee Application, the Receiver applied for reimbursement from the Receivership Estate of certain fees and expenses incurred during the fourth quarter of 2021. (Dkt. 1181, Exs. F and G)  The Receiver also requested payment of a subset of these fees from the property accounts pursuant to the first-priority lien previously granted by the Court. (*Id*, Ex. K)  Although the Receiver inadvertently attached as Exhibit K a summary report that did not contain the specific property allocations, as were provided in Exhibit J to the Receiver's 13th Fee Application (Dkt. 1087, Ex. J), Exhibit K does show the categories of fees for which the Receiver requests payment pursuant to the first-priority lien, and the invoices that were submitted as Exhibits F and G contain all of the property allocations in the task descriptions.[2]

The Objectors ignore that the Receiver is _not_ seeking to apply the receiver's lien as to the deferred categories of Asset Analysis & Recovery, Case Administration, Status Reports, and Tax

---

[2] The only difference, which the Receiver recognizes is a helpful one (which is why he designed and produces the allocation spreadsheets), is that the allocation spreadsheets separate out the information that is already in the invoices on a property-by-property basis.  To be fair, nothing stops the Objectors from doing that work themselves; they have everything they need with the invoices submitted with the fee applications to create individual allocation reports for each of their properties.  In any event, Receiver is doing so for their benefit and the benefit of everyone and the Court, and therefore attaches additional Exhibits L, M and N hereto, and also will make individual reports in Excel format available to the Court and the claimants upon request.

Issues (*see also infra* at pp. 7-8), which is clearly stated in the Receiver's 14th Fee Application. (Dkt. 1181 at 15) Exhibit K, while not including the specific task allocations, clearly shows that the allocations are in only three of the billing categories – Asset Disposition, Business Operations, and Claims. And to be clear, the Receiver did not allocate all tasks within those billing categories to all properties, but instead specifically allocated them to individual properties or subsets of properties to correspond to the nature of the work and benefits provided. In fact, only 17 tasks out of 1300 – constituting 0.13% of all tasks – in the 14th Fee Application are allocated to all 108 of the properties. Additionally, the Receiver deferred 65 tasks within those three billing categories and is not seeking payment of these 65 tasks pursuant to the first-priority lien.

The Receiver addresses below the objections, grouped by the Objectors as "red, green, yellow, and grey." (Dkt. 1250 at 7-10)

### A. The Court Should Overrule the Objectors' "Red" Objections as They Are Unspecific, Baseless, and Ignore the Nature of the Receiver's Allocation Requests.

The Objectors offer eight bulleted objections in their "red" category. The first bullet objection (*id.* at 7), which addresses notice-related tasks, is a straw man because the Receiver typically and routinely categorized such tasks as Asset Analysis and Recovery, which is a deferred billing category not subject to the Receiver's request for application of the receiver's lien. Moreover, most of the tasks that use the word "notice" in the invoices submitted with the 14th Fee Application do not relate to giving notice with respect to preservation of property, books, or records. (*See, e.g.,* Dkt. 1181 at 104 (11/11/2021, Business Operations, KMP (last task))) And, in those instance that notice was given by the Receiver within one of the billing categories for which the receiver's lien applies, the notice provided a clear benefit to the property and the claimants. For example, Dkt. 1181 at 105, 11/16/2021, Business Operations, KMP entry ("Review complaint relating to EB property, prepare draft letter providing notice of appointment of receiver,

and related communications with J. Wine (4533 Calumet)") shows notice given to ensure a complaint filed in violation of the Court's stay of ancillary actions remains stayed (this related the *Pennington* lawsuit also discussed below). (*See also id.* (11/18/2021, Business Operations, JRW (2nd entry)) (same as above); *id.* (11/18/2021 KMP entry) (same))  As a further example, Dkt. 1181 at 115 (11/17/2021, Claims, KMP entry) ("Revise and finalize response and notice letter relating to collection notice for utility invoice and prepare transmittals (4611 Drexel)") shows notice given to a putative creditor that did not file a claim in this action and was attempting to elude this Court's prohibition against independent creditor collection efforts to the detriment of other claimants and the Estate and this Court's claims process.  (*See also id.* at 130 (12/1/2021 & 12/10/2021, Business Operations, JRW entry (same); *id.* 133 (12/1/2021, Claims, JRW & KMP entries) (same); *id.* at 135 (12/10/2021, Claims, KMP entry) (same))

Beyond that, the Objectors' failure to specifically reference in their narrative the tasks from the invoices that correspond to their objection results in a waste of the Court's and the Receiver's time.  There is no legitimate reason that they could not have – and failed to – identify each task subject to this objection by date, billing category, timekeeper, and description (as the Receiver's examples above demonstrate).  The failure to do so leaves the Receiver to attempt to comb through scores of invoice pages to search for tasks that might align with their objection.  This deficiency violates the Court's clear admonition against objections that fail to provide such specificity.[3]  (*See, e.g.,* Dkt. 1031 at 11 n.31)

The Objectors' second bullet objection (Dkt. 1250 at 7), about locating and preserving records, is similarly wasteful and meritless.  The word "locate" only appears in a handful of task

---

[3] Each of the Objectors' objections within the color-coded categories suffers from the same failure to specifically identify the billing entries that are the focus of the objection and should be overruled as a result of this deficiency.  (*See id.*)

descriptions. One relates to locating and organizing account statements related to the sale of a property, and such efforts were necessary to respond to the purchaser's request for property operating account and profit and loss statements. (Dkt. 1181 at 126 (12/6/2021, Asset Disposition, JR entry)) However, the Receiver did not find any tasks using "preserve" and thus has no idea what the Objectors are referring to with this objection. This is a prime example of why specifying the billing entries at issue is necessary.

The Objectors' third bullet objection (*id.*), about factual investigations relating to claims against professionals, is once again mysterious as to what tasks are at issue. Nowhere has the Receiver suggested that his work to investigate or bring claims against EquityBuild professionals should be paid from the properties pursuant to the receiver's lien. Two references to factual research and claimant investigation related specifically to a Group 1 claims and were specifically allocated to Group 1 properties. (Dkt. 1181 at 112 (11/10/2021, Claims, JRW (1st task)); *id.* at 113 (11/15/2021, Claims, JRW entry, 3rd task)) The only other reference to factual research was a task that the Receiver noted as deferred (*i.e.,* not the subject of his request for application of the receiver's lien). (*Id.* at 124 (12/8/2021, Asset Analysis & Recovery, JRW (1st task)))

The fourth bulleted objection (Dkt. 1250 at 8), related to tax issues, is similarly misplaced. Nowhere has the Receiver suggested that his work with respect to tax issues in the 14th Fee Application should be paid from the properties pursuant to the receiver's lien. In the very limited instances where the Receiver allocated tasks related to a potential holdback for taxes and communication with tax advisors, that involved an effort to ensure that potential distribution to claimants did not fail to account for any tax liability in contravention of the Federal Priority Act, 31 U.S.C. § 3713. This work was intended to avoid a scenario where a claimant would be subject

5

to a clawback of distributed funds, which is a benefit to the claimants. (*E.g.,* Dkt. 1250 at 86 (10/28/2021, Claims, JRW (two sole lien tasks)))

The fifth bullet objection (*id.* at 8) also ignores that the Receiver has plainly deferred tasks related to former properties of EquityBuild (*i.e.,* which were sold or otherwise disposed of pre-receivership). There are numerous such entries related to certain investors' motion to intervene, all of which the Receiver allocated as "defer," indicating that he is not seeking to have these fees paid from any of the property accounts. (*See, e.g.,* Dkt. 1181 at 105 (11/15/2021, Business Operations, AEP); *id.* at 106 (11/19/2021, Business Operations, AEP); *id.* at 107 (11/22/2021, Business Operations, AW); *id.* (11/22/2021, Business Operations, MR))

The Objectors' sixth bullet objection (Dkt. 1250 at 8), related to creditor inquiries, fails to provide any explanation why creditor inquiries are unrelated to the claims adjudication process. Without more, the objection should be overruled. It should be obvious on its face that creditor inquiries are related to the claims adjudication process. Again, they point to no specific examples. However, the Receiver makes a determination when dealing with such inquiries as to whether they relate to the claims adjudication process or not – and when they do not, the Receiver defers them from allocation pursuant to the receiver's lien. (*See, e.g.,* Dkt. 1181 at 70 (10/15/2021, Business Operations, AW entry (1st task) ("Draft notice of receivership to creditor and related email exchanges with K. Duff regarding same (***defer***)") (emphasis added)). Moreover, a review of the Objectors' color-coded Exhibit B shows that the Objectors apparently agree that time spent responding to claimant inquiries is appropriately allocated to all of the properties. (*See, e.g.,* Dkt. 1250 at 32 (11/1/2021, Claims, KBD entry "Exchange correspondence regarding communication with claimant regarding claims process timing and representation by counsel (all)"); *id.* at 60 (10/4/2021, Claims, JRW entry "Correspond with A. Watychowicz and K. Duff regarding

responses to claimant inquiries and communications with claimants (all)"); *id.* at 63 (10/14/2021 Claims, AW entry "review claim and communicate with K. Duff and J. Wine regarding responses to claimants (all)"))

The Objectors seventh objection (Dkt 1250 at 8), related to state court actions, is also baseless. The Receiver cannot prevent private litigants from asserting meritless claims, even those filed in violation of the Court's stay of ancillary litigation. The objection is patently inconsistent with the Court's prior statements that the Receiver's efforts to "manage[] litigation brought against the Estate … have benefited and will continue to benefit the Receivership Estate." (Dkt. 1031 at 5-6) Wrongly ignored by the Objectors is that the Receiver obtained a stay of the *Pennington* action and drastically limited the *Byrd* action to the point that it settled for a tiny fraction of what the plaintiff had sought. The Objectors also presume with no basis that the Receiver or his vendors caused the claims that the Receiver now must address, but offer nothing to show that the Receiver's conduct caused the state court actions in question. It is a meritless, speculative, rank objection – causing needless delay and waste of judicial and receivership resources despite the Court's repeated admonishment these Objectors. (*See, e.g.,* Dkt. 1031 at 11 n.32)

The Objectors' eighth bullet objection (Dkt. 1250 at 8), relating to "deferred" allocation is specious. The Objectors ignore the clear record as to the significance of "deferred" allocations,[4] which the Receiver made clear in his reply brief in support of his Fee Allocation Motion:

> The Receiver has already undertaken a substantial effort to remove or defer tasks that: (i) do not relate to the approved categories, (ii) did not relate to the properties or the secured claimants, or (iii) for which the determination of benefit is premature.[n.3] In total, the Receiver excluded 7,831 tasks (25%) on one or more of these bases out of the 30,914 tasks in the first 13 fee applications (through 9/30/2021), including 1,799 tasks in the asset disposition, business operations, and claims billing categories (which are the three billing categories that most closely

---

[4] Incidentally, their example here, which identifies a specific task entry by date and page number, also ironically shows they could have provided specific references to each of the tasks to which their objections correspond.

align with the categories that the District Court has approved for application of the receiver's lien).

> [n.3] The Receiver only considered tasks in the asset disposition, business operations, and claims billing categories and did not allocate any tasks in the billing categories for (a) accounting/auditing, (b) asset analysis and recovery, (c) case administration, (d) corporate finance, (e) employees, (f) investor communications, (g) status reports, or (h) tax issues. The also Receiver did not include any tasks relating to former properties (not owned by any EquityBuild entity at the commencement of the receivership) nor to the Cohen Naples residence (see, *supra*, note 1).

(Dkt. 1230 at 7 & n.3)

### B. With Their "Green" Objections, Rather than Offer a Legitimate Objection about the Receiver's Allocations, the Objectors Raise a Legitimate Question about Their Good Faith.

The Objectors' "green" objection addresses 2 tasks out of 1,300 (*i.e.,* 0.015% of all tasks in the 14th Fee Application, putting a mere $117 at issue, in total). One task for 0.3 hour shows on its face from the task description that the Receiver successfully achieved an "order dismissing defendant" relating to 638 Avers. (Dkt. 1181 at 100, 11/1/2021, Business Operations, JRW) The other task for 0.1 hour involved review of a notice of a hearing on an alleged violation for 7834 Ellis. (*Id.* at 46, 11/3/2021, Business Operations, KBD) The Receiver expressly stated in his fee application narrative that *both of these alleged violations were successfully dismissed* as a result of his counsel's efforts:

> "The Receiver's counsel favorably resolved one remaining Department of Buildings matter (7834-44 S Ellis) and one remaining municipal housing court matter (638-40 N Avers) ***by obtaining orders of dismissal***."

(Dkt. 1181, at 5 emphasis added)) This information – which is directly and intentionally on point as to these tasks – is simply ignored by the Objectors. Moreover, the Court has repeatedly held that the Receiver's efforts to address open building code violations confer a benefit on and are chargeable to properties. (*See, e.g.,* Dkt. 1213 at 5 & n.2)

**C.** **The Court Should Overrule the Objectors' "Yellow" Objections for Tasks that Do Not Involve Opposition to Claims.**

The only objection offered for the "yellow" objections is that fees incurred "to litigate Group 1 claims should not be paid at this time. (Dkt. 1250 at 9) But this objection ignores that most of the work undertaken by the Receiver and his counsel represented efforts to facilitate the process and not to oppose individual claims. Examples of such work include: discovery planning, implementation, and participation (*e.g.,* Dkt. 1250 at 25 (10/14/2021 thru 10/20/2021 (Group 1 tasks); *id.* at 61-62 (10/6/2021 thru 10/11/2021); *id.* at 68 (10/22/2021 thru 10/25/2021); *id.*at 97 (11/8/2021 thru 11/11/2021)); work related to the template for claimants' submissions of their position statements (*e.g., id.* at 44 (12/23/2021)); consideration of potential avenues for claims resolution and paths to settlement (*id.* (10/18/2021); *id.* at 38 (11/2/2021)); and communication with various claimants relating to the claims process for Group 1 (*e.g., id.* at 37 (11/1/2021 (Group 1 tasks))).

Thus, a significant amount of the work relating to the Group 1 claims process involved administration and facilitation of the process, which should be recoverable now. Such work provided benefits all claimants, regardless of the outcome of the priority dispute. And, while the Court indicated last year that the amount due the Receiver for his work on Group 1 claims should wait until determination of Group 1 claims was ripe, that time is now because apart from the Court's anticipated ruling it appears that most if not all of the Receiver's claims work with respect to Group 1 is complete.[5] By contrast, the Receiver agrees that work on an avoidance disclosure or opposition to claims should properly be deferred until after the Court rules on the Group 1

---

[5] Further, to the extent the Court agrees with the Receiver's recommendation with respect to the Group 1 priority dispute, there is no reason to delay payment for such work at this time pursuant to the receiver's lien.

priority dispute. (*See, e.g., id.* at 39 (11/15/2021))[6]

**D.    The Court Should Overrule Midland's and U.S. Bank's "Grey" Objections Because They Ignore the Claims Process Work Undertaken for Their Benefit.**

Midland and U.S. Bank next object to the allocation of claims-related work for the single-claim properties. The premise for their objection is "[i]f the Receiver objects and prevails [to their claim]," then none of his work provides a benefit to them. (*See* Dkt. 1250 at 9) This is a false and incomplete premise. It ignores that the Receiver's considerable efforts to implement a fair, reasonable, and streamlined process is a benefit, as it was for all claimants. In addition, these objectors continue to ignore that some of these properties have title histories that raise questions that may impact their claims, even though they alone submitted a claim to the Receiver, which was the subject of extended discussions between the Receiver and the objecting claimants.[7] Thus, not only implementing the process but also efforts by the Receiver to create a public record that gives others notice and an opportunity to be heard serves to benefit the objectors.

Further, as the objecting claimants are aware, but fail to note, the Receiver worked with them to coordinate, prepare, serve, pursue, and gather discovery from third parties in connection with the single claim process, which these objectors themselves insisted be handled as a separate process. The Receiver collaborated with these claimants to prepare and present a joint motion to identify issues relating to the single claim process that required the Court's attention and guidance. (Dkt. 1073) The Court has itself noted that the benefits provided by the Receiver may take subtle

---

[6]If the Court rules that Group 1 allocations other than as pertain to work on an avoidance disclosure or opposition to claims are approved for payment now pursuant to the Receiver's lien, the Receiver will sub-divide the Group 1 allocations in accordance with the Court's ruling.

[7] The Receiver is mindful of authority holding that in some circumstances the failure to comply with a court's orders regarding the filing of proofs of claim may not extinguish a non-party's pre-existing security interest, *see, e.g., SEC v. Wells Fargo Bank, N.A.,* 848 F.3d 1339 (11th Cir. 2017), thus demonstrating a benefit from the Receiver's work of reviewing even these single claims and providing notice to lienholders.

forms and are not limited to financial benefits. (*See, e.g.,* Dkt. 1030, at 10-14; *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992))

Finally, while the Objectors cite to *Elliott* on the basis that secured creditors "'are not liable for the Receiver's time spent on activities adverse to them,' including 'the time the Receiver spent opposing their claims to be secured'" (Dkt. 1250 at 9), they make no showing that any of the time set forth in the 14th Fee Application was adverse to them or reflected time opposing their claims. They do not even assert, because they cannot, that the Receiver has opposed their claims. On the contrary, the tasks at issue reflect time that the Receiver and his counsel spent was working jointly with these claimants to gather and evaluate discovery that they too requested, review their claims, and implementing the process they requested. All of these tasks relate to providing and implementing a fair process for the benefit of these claimants and none of the time that is the subject of the 14th Fee Application can be properly characterized as opposing their claims.

**E.     The Court Should Overrule Objections to the Receiver's Allocations Because the Receiver's Allocations Comply with the Court's Prior Orders on Allocation.**

"[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation." *Elliott*, 953 F.2d at 1577 (citation omitted). In reviewing fee applications in this action, this Court is not required by applicable law "to perform the impossible," *Id.* at 1578. Rather, the Court need only review the allocation of cost prepared by the Receiver consistent with the District Court's previously approved methodology for the Receiver's efforts between the properties "on the best basis it can determine." *Id.* (citations omitted). Simply because the Objectors wish to continue to object and litigate each task description in the Receiver's invoices down to every iota does not mean this is necessary. "What is required is that an earnest effort be made to devise a method of allocating the actual costs of the receivership to specific assets...." *Id.* This is what the Receiver has done. And that is all that this Court must do.

For the 14th Fee Application, as is the case for all prior fee applications, the Receiver has provided detailed descriptions of each task entry. The allocation schedules attached to this Reply memorandum as Exhibits K, L, M and N to the 14th Fee Application show exactly which tasks are allocated to each property. Exhibits M and N both contain the specific allocations—grouped together in Exhibit M, and individually by property in Exhibit N. The allocations provide not only task hours, task rate, task cost, property allocations, and property allocation count – as discussed above – but they also provide a narrative task description, the billing category, the timekeeper, and the billing rate, for each of the 1,089 allocated tasks in the 14th Fee Application. And they are allocated in accordance with the Court's approved allocation methodology. (Dkt. 755, at 23-24; Dkt. 1105, Ex. 5; Dkt. 1182, at 8-14 (describing additional information available to determine the appropriateness of the allocations)).

As shown above, the objections are without merit, points confirmed both by the investor lender claimants who have voiced their opposition to the Objectors' efforts to stymie the Receiver's requests to be paid for the valuable work he has done (*e.g.,* Dkt. 1198), as well as the SEC which has supported the Receiver's prior fee applications which are consistent with the request in the 14th Fee Application. (*See, e.g.,* Dkt. 1254)

## II.    The District Court Need Not and Should Not Refer the Receiver's 14th Fee Application Allocations to Magistrate Judge Kim.

The Objectors have requested referral of the Receiver's allocations for the 14th Fee Application to Magistrate Judge Kim. Respectfully, that is unnecessary. First, unlike the allocations for the early fee applications, the Receiver's allocations for the 14th Fee Application are apparent on the face of the invoices submitted with the fee application. Second, whereas Judge Kim currently has 30,000 billing task entries before him, the allocations for the 14th Fee Application are far more discrete, involving only 1,089 tasks. Third, referring additional fee

applications to Judge Kim may further delay his ruling on the pending Fee Allocation Motion (Dkt. 1107), where an expeditious ruling is essential and has already been delayed by numerous other tactics volleyed by the Objectors. (*See, e.g.,* Dkt. 1177 (motion to appoint a fee examiner); *see also* 1184 (ruling on same)) Fourth, should the District Court have the opportunity to rule on the Receiver's fee allocations for the 14th Fee Application before Judge Kim rules on the Fee Allocation Motion, it may assist Judge Kim in ruling on that motion and narrow or eliminate any further motion practice on the issues. Finally, while the Receiver has submitted herewith allocation spreadsheets so as to provide a more streamlined presentation of the allocations from the 14th Fee Application, there is nothing new in those tables and thus nothing new to be said either by way of an untimely, second-crack at objections nor by further response to such objections.

### III. The Receiver Recommends Against Any Holdback.

The Court has previously found that the Receiver's 9th-12th Fee Applications are subject to a 20% holdback, and further indicated that "if the Receiver seeks to pay fees approved by this order from the sales proceeds of *encumbered* real estate, then the amount the Receiver is entitled to draw is subject to an additional 20% holdback." (Dkt. 1031, at 14; Dkt. 1213 at 9) The Objectors have requested that the 14th Fee Application likewise be subject to a 20% holdback, and that any fees the Receiver seeks to pay from the proceeds of sale be subject to an additional 20% holdback. (Dkt. 1250, at 10-12) For the same reasons set forth in his reply to objections on the 12th and 13th Fee Applications (Dkt. 1206, at 4-7; Dkt. 1207 at 9-11), the Receiver requests that the Court not apply any holdback relative to this 14th Fee Application; but, if the Court deems it appropriate, that any cumulative holdback not exceed 20%. The Receiver offers the following points for the Court's consideration.

The rate discounts provided by the Receiver and his firm equate to a substantial savings on the invoices submitted in connection with the 14th Fee Application. The following Table reflects the extent of this discount:

| Time Keeper | Value of Total Hours at Standard Rate | Value of Total Hours at Discount Rate | Value of Difference |
|---|---|---|---|
| K. Duff | 54,562.50 | 34,047.00 | 20,515.50 |
| M. Rachlis | 36,562.50 | 22,815.00 | 13,747.50 |
| E. Duff | 117.00 | 78.00 | 39.00 |
| A. Porter | 26,968.50 | 17,979.00 | 8,989.50 |
| J. Wine | 116,883.00 | 51,948.00 | 64,935.00 |
| K. Pritchard | 16,133.50 | 11,018.00 | 5,115.50 |
| A. Watychowicz | 14,596.00 | 9,968.00 | 4,628.00 |
| J. Rak | 18,245.00 | 12,460.00 | 5,785.00 |
| TOTALS | $284,068.00 | $160,313.00 | $123,755.00 |

Prior to submitting the invoices that are the subject of the 14th Fee Application, the Receiver provided a further discount by writing-off 54.5 hours of recorded time, amounting to a $9,772.00 reduction at the discounted rates. In addition, the Receiver and RDP devoted 630.8 hours to billing efforts in 4Q 2021 (valued at $160,313.00, at the discounted rates), none of which is included in the submitted invoices and is not within the write-off amounts referenced above. (*See also* Dkt. 1206, at 6 n.4). If the amounts sought by the invoices in the 14th Fee Application are considered in the context of the discounts and unbilled time already applied, the inequity of what would be an additional 40% holdback is laid bare. The following Table summarizes the primary discounts and unbilled time discussed above:

| Rate Discount | Write-Offs | Billing Hours | Total Discount & Unbilled Time | Total Fees in 14th Fee Application | % Reduction Already Applied |
|---|---|---|---|---|---|
| $123,755.00 | $9,772.00 | $160,313.00 | $293,840.00 | $151,828.35 | 66% |

As this chart evidences, any additional holdback only magnifies the financial impact. It also shows that there is no windfall nor any appearance of a windfall. To add yet an additional 20-40% holdback, as the Objectors have requested, would be even more onerous and inequitable under the circumstances described above. For all of these reasons, and those set forth in his reply in support of the 12th and 13th Fee Applications (Dkt. 1206, at 4-7; Dkt. 1207 at 9-11), the Receiver respectfully recommends and requests that the Court not apply any holdback, but if so, that such holdback not be greater than 20% in total for fees paid from property accounts.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Receiver's prior fee applications, the supporting briefs filed by the SEC and the Receiver, and in the Receiver's motion for approval to pay certain previously approved fees and costs, the Receiver respectfully requests that the Court exercise its discretion to:

(i) find that the Receiver has preserved, enhanced, or otherwise benefited the properties and the claimants in connection with the work performed and expenses incurred as reflected in the 14th Fee Application;

(ii) approve the Receiver's 14th Fee Application and payment of all fees and expenses described therein out of the funds in the Receiver's account, including as to any such future funds that come into the Receiver's account;

(iii) impose a first priority receiver's lien on the properties and proceeds of sale to satisfy certain receivership expenses, as set forth in Exhibits K-N to the 14th Fee Application; and

(iv) grant such other relief as the Court deems equitable and just.

Dated: May 26, 2022                    Respectfully submitted,

                                       Kevin B. Duff, Receiver

By:   <u>/s/ Michael Rachlis</u>
        Michael Rachlis (mrachlis@rdaplaw.net)
        Jodi Rosen Wine (jwine@rdaplaw.net)
        Rachlis Duff & Peel, LLC
        542 South Dearborn Street, Suite 900
        Chicago, IL 60605
        Phone (312) 733-3950

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2022, I electronically filed the foregoing **Receiver's Reply in Support of His Fourteenth (14th) Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net