UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES and EXCHANGE COMMISSION, | ) ) ) | No. 18 CV 5587 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) ) ) ) ) ) | |
| Defendants. | ) ) | June 22, 2022 |

**MEMORANDUM OPINION and ORDER**

Before the court in this real estate investment fraud case are the Receiver's motion for court approval of allocation of fees, costs, and expenses (collectively for the sake of simplicity, "fees") to the impacted properties pursuant to his lien (the "Allocation Motion"), and two sets of objections filed in response. The first set of objections is filed by the Federal Housing Finance Agency (the "FHFA") as conservator for the Federal National Mortgage Association and Federal Home Loan Mortgage Corporation, both government-sponsored enterprises (together, the "GSEs"). The second set is filed by various Institutional Lenders concerning the Receiver's proposed allocations. This opinion addresses the first set of objections, in which the FHFA challenges the court's authority to order allocations as to two

properties subject to GSE-held mortgages (the "GSE-encumbered properties").[1] For the following reasons, those objections are overruled, and the Receiver's motion is granted to the extent that interim Receiver fees may be allocated to sales proceeds from the GSE-encumbered properties in an amount to be determined in a forthcoming opinion addressing the second set of objections:[2]

## Background

The SEC commenced this action in August 2018 alleging that Defendants Jerome and Shaun Cohen and their companies Equitybuild, Inc. and Equitybuild Finance, LLC engaged in a Ponzi scheme to fraudulently induce more than 900 investors to invest at least $135 million in residential properties on Chicago's south side. (R. 1, Compl. ¶¶ 1, 2.) Shortly thereafter, the court: (1) took exclusive jurisdiction and possession of Defendants' and their affiliates' assets (the "Receivership Estate" or "Estate"); (2) appointed the Receiver and granted him "all powers, authorities, rights and privileges . . . possessed by [Defendants'] officers, directors, managers, members, and general and limited partners"; and (3) authorized the Receiver to sell or lease the real property in the Estate on terms and in the manner he deemed most beneficial to the same. (R. 16, Receivership Order ¶¶ 1, 2, 4, 38-39.)

---

[1] The GSE-encumbered properties are located at 1131-41 East 79th Place and 7024-32 South Paxton Avenue in Chicago, Illinois.

[2] The GSEs also join in the second set of objections. (See R. 1210, Lenders' Objs., Ex. A.)

The Receiver subsequently sold the properties free and clear of all identified mortgages, liens, claims, and encumbrances, including the GSE-encumbered properties. The court directed that the sales proceeds be held in separate subaccounts "with all mortgages, liens, claims, and encumbrances attaching . . . with the same force, validity, status, and effect . . . as they had" against the properties themselves, (see, e.g., R. 601; R. 825; R. 966), and in October 2020 granted the Receiver a lien on the Receivership Estate assets and the sales proceeds to cover fees that may exceed the Estate's unencumbered funds (the "Receiver's lien"), (R. 824, the "Lien Order"). The Lien Order also approved a framework for allocating such fees to the properties. (R. 824 at 4-5.)

Approximately four months later, the Receiver sought approval to make interim payments under the Receiver's lien from the sales proceeds as compensation for two categories of activities: (1) the preservation, management, and liquidation of receivership real estate ("Management Activities"); and (2) the implementation and management of an orderly summary claim-priority adjudication process ("Claims Activities"). (R. 947, the "Interim Payment Motion.") In seeking such approval, the Receiver pointed out that the court already concluded that these activities benefit the properties and requested that the interim payments be made through a first-priority lien. (See generally id.) The SEC supported the Interim Payment Motion,[3] (R. 982), and in August 2021 the court granted it to the extent it sought to commence

---

[3] The SEC also supported the Receiver's lien and allocation methodology. (R. 824 at 5.) It takes no position on the instant motion.

payments pursuant to a first-priority lien, (R. 1030 at 2). But the task of allocating those specific fees to specific properties is before this court. (Id. at 18.)

The Receiver has submitted a "line-by-line and property-by-property" allocation to aid this court in performing that task through his Allocation Motion, requesting as relevant here an interim combined allocation of $148,531.65 to the GSE-encumbered properties, with additional allocations going forward. (R. 1107, Receiver's Mot.) But the FHFA—a federal agency created under the Housing and Economic Recovery Act of 2008 ("HERA") to supervise and regulate the GSEs—objects, noting that it has exercised its authority under HERA to place the GSEs into conservatorships, and argues that HERA and those conservatorships bar any court-ordered allocation to the GSE-encumbered properties.[4] This court turns to those arguments after a brief review of the law on receiver compensation.

## Analysis

Generally, a securities law receiver "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *SEC v. Byers*, No. 08 CV 7104 DC, 2014 WL 7336454, at *5 (S.D.N.Y. Dec. 23, 2014). "[T]he awarding of fees [in such receiverships] rests in the district judge's discretion, which will not be disturbed unless he has abused it." *SEC v. First Sec. Co. of Chi.*, 528 F.2d 449, 451 (7th Cir. 1976). Courts give "great weight" to the SEC's

---

[4] HERA grants the FHFA's director the authority to appoint the agency as conservator or receiver for the GSEs, 12 U.S.C. § 4617(a), and empowers the FHFA as conservator or receiver to "immediately succeed to—(i) all rights, titles, powers, and privileges of the [GSEs], and of any stockholder, officer, or director of such [GSEs] with respect to the [GSEs] and the assets of the [GSEs]," *id.* § 4617(b)(2)(A)(i).

4

position regarding the requested fees, *id.*, and may award them on an interim basis "where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services," *SEC v. Small Bus. Cap. Corp.*, No. 12 CV 3237, 2013 WL 2146605, at *2 (N.D. Cal. May 15, 2013).

Here, the court has already determined that: (1) an interim payment of reasonable fees is appropriate to compensate the Receiver for services rendered and expenses incurred with respect to the Management and Claims Activities; (2) such fees should be paid from the sales proceeds of the properties; and (3) the Receiver's lien imposed for that purpose should take priority over the various secured creditors' interests in each property. (See generally R. 1030.) The GSEs and GSE-encumbered properties are not excluded from these findings. In fact, the court found that the Receiver's Management and Claims Activities "benefited the Estate as a whole, as well as all of the creditors collectively." (See id. at 11; see also id. at 13 (holding that the Receiver conferred a benefit on each creditor "regardless of which claimant is determined to be the first-priority secured lienholder at the end").) In so holding, the court adopted the SEC's position that denying interim payments to small firms like the Receiver's firm would "effectively limit courts to selecting receivers from the largest and most well-financed firms." (Id. at 9 (quoting R. 982 at 2).)

Despite these findings, the FHFA now argues for the first time that HERA prohibits any allocation of fees to the GSE-encumbered properties. (See generally R. 1209, FHFA's Obj.) For support the FHFA points first to Section 4617(f), which states, "no court may take any action to restrain or affect the exercise of powers or

5

functions of the [FHFA] as a conservator or a receiver." 12 U.S.C. § 4617(f). The FHFA contends that if this court were to allocate a portion of the Receiver's fees to the GSE-encumbered properties, it would "restrain or affect" the FHFA's statutorily enumerated powers as conservator to "collect all obligations and money due" to the GSEs and "preserve and conserve [GSE] assets and property," because the allocation would reduce the amount it could collect on the GSE loans. (R. 1209, FHFA's Obj. at 6 (quoting 12 U.S.C. § 4617(b)(2)(B)).)

The Receiver responds that the FHFA impermissibly attempts to act outside of its conservator role by seeking to avoid the allocations. As the Receiver argues, the properties at issue were liquidated, and liquidation is a *receiver's*—not conservator's—task. The Receiver continues that while HERA permits the FHFA to elect either the receiver or conservator role with respect to the GSEs, it is wedded to the role selected and limited to the circumscribed powers and authority related thereto. (R. 1230, Receiver's Reply at 29.) The Receiver is correct that "[c]onservator tasks relate to operating a business as a going concern," while receiver tasks involve liquidation. (Id. at 34.) However, the FHFA is not charged with conserving the GSE-encumbered properties, but rather the GSEs themselves. Because neither GSE is winding down, this argument fails.

The Receiver also complains about the timing of the FHFA's objections, first arguing that they should be considered waived because the FHFA has been involved in this action for nearly four years and failed to raise the Section 4617 arguments until now. (Id.) This court notes that some courts characterize Section 4617(f) as a

6

jurisdictional bar, and that a subject matter jurisdiction challenge cannot be waived. *See Leon Cnty., Fla. v. FHFA*, 700 F.3d 1273, 1276, 1279 (11th Cir. 2012) (characterizing Section 4617(f) as a "jurisdictional bar" to county-plaintiff's claims against it); *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 990 (9th Cir. 2013) (stating that "the courts have no jurisdiction over Plaintiffs'-Appellees' claims, and this case must be dismissed" if "the directive challenged . . . is a lawful exercise of FHFA's power as conservator"); *see also Moore v. Olson*, 368 F.3d 757, 759 (7th Cir. 2004) ("Defects in subject-matter jurisdiction . . . may not be waived or forfeited."). But the D.C. Circuit and the only court in this circuit to have both considered and decided the issue treat Section 4617(f) as a mere bar to certain relief in a case over which a court otherwise has jurisdiction.[5] *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 604-05 (D.C. Cir. 2017) (treating Section 4617(f) challenge as one to merits, not jurisdiction); *Roberts v. FHFA*, 243 F. Supp. 3d 950, 957-58 (N.D. Ill. 2017), *aff'd*, 889 F.3d 397 (7th Cir. 2018) (holding that Section 4617(f) is mere obstacle to providing remedy in case over which district court otherwise has jurisdiction). This court finds that logic persuasive and therefore concludes that a Section 4617(f) argument can be waived if not timely raised.

---

[5] Courts are also divided on the type of relief that Section 4617(f) precludes, with some referring to it as the "anti-injunction clause" and interpreting it as barring only equitable relief, and others recognizing a bar on certain monetary relief, too. *Compare Saxton v. FHFA*, 901 F.3d 954, 957 (8th Cir. 2018) (holding that Section 4617(f) "bars only equitable relief") *and Roberts v. FHFA*, 998 F.3d 397, 402 (7th Cir. 2018) (construing Section 4617(f) as barring declaratory and injunctive relief when FHFA "act[s] within its powers as conservator"), *with Jacobs v. FHFA*, 908 F.3d 884, 894 (3d Cir. 2018) (holding that Section 4617(f) extends to monetary relief if it would "restrain or affect" FHFA's "exercise of its powers as conservator").

7

The Receiver also argues, in the alternative, that the FHFA raises the issue *too soon* because priority among the creditors remains unresolved as to the GSE-encumbered properties. (See R. 1230, Receiver's Reply at 29 ("If the investor-lenders on [the GSE-encumbered] properties are found to have priority, the issue of the alleged application of Section 4617 is irrelevant. Put differently, the issue raised by FHFA is premature and may prove to be moot.").) To be sure, while the court granted the Receiver a first-priority lien in approving interim payments as to the two categories of fees at issue, we do not yet know from whom that piece of the pie will be cut. And if it is not the FHFA's, the Section 4617 issue is moot. (See R. 824 at 5 (approving the Receiver's proposed allocation methodology as reasonable in part because "the only claimants that would pay for his work would be those the Court ultimately finds to have priority").)

Ultimately, however, this court need not determine priority before resolving the FHFA's objections because they lack merit. To begin, Section 4617(f) is typically construed as a shield for the FHFA to protect it from court action because of its own conduct—not as a sword, as the FHFA attempts here. *See, e.g.*, *Roberts v. FHFA*, 889 F.3d 397, 402-03 (7th Cir. 2018) (concluding that Section 4617(f) "bars declaratory or injunctive relief against the [FHFA] unless it acted *ultra vires* or in a role other than as conservator or receiver"); *see also Leon Cnty.*, 700 F.3d at 1278 (finding that Section 4617(f) bars judicial oversight or review of FHFA's actions only if it acts within its statutory and constitutional bounds); *Cnty. of Sonoma*, 710 F.3d at 992 ("[T]he anti-judicial review provision is inapplicable when FHFA acts beyond

8

the scope of its conservator power."). Despite its statutory power to "preserve and conserve" GSE property, the FHFA has not taken any action from which it seeks protection here. To the contrary, the FHFA asks the court to deny the Receiver his vetted and approved fees even though the FHFA largely sat by while the Receiver undertook actions that benefitted—not harmed—the GSE-encumbered properties. Because the Receiver's compensation is more than appropriate under such circumstances, and the FHFA failed to timely object, neither the letter nor spirit of Section 4617(f) is implicated here. *Cf. N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, 28 F.4th 357, 367 (2d Cir. 2022) (affirming district court decision concluding that Section 4617(f) and the "FHFA's duty as a conservator could not 'be turned into a sword'" to prevent the court from "finaliz[ing] a settlement in a class action where [Freddie Mac] had slept on [its] right[]'" to opt out).

The FHFA next contends that HERA Section 4617(j)(3) prohibits the allocations at issue. That section—tellingly referred to by courts as the "Federal Foreclosure Bar"—states, "[n]o property of the [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FHFA], nor shall any involuntary lien attach to the property of the [FHFA]." 12 U.S.C. § 4617(j)(3). The FHFA points to authority indicating that it must affirmatively consent to such actions, and that "property" for these purposes includes lien interests and therefore the GSE mortgages. (R. 1209, FHFA's Obj. at 10-11 (citing, e.g., *Berezovsky v. Moniz*, 869 F.3d 923, 928-29 (9th Cir. 2017); *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1155 (D. Nev. 2015)).) Because it has not consented to the fee

9

allocations proposed here, the FHFA asserts that the Receiver's motion unlawfully subjects the GSEs' mortgages to "a judicially imposed process that would deplete the collateral—the functional equivalent of attachment, garnishment, foreclosure, or sale." (R. 1209, FHFA's Obj. at 11.)

But the FHFA fails to cite a single case on point or from this circuit, and the court could not locate any case in this circuit that so much as mentions Section 4617(j)(3), let alone suggests that it should be extended as far as the FHFA requests. Indeed, in each of the cases the FHFA cites construing that provision, the court concluded that it barred a foreclosure that would extinguish an FHFA lien without the FHFA's consent. *See Skylights*, 112 F. Supp. 3d at 1153; *Berezovsky*, 869 F.3d at 929, 933; *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1149 (9th Cir. 2018). This is not a foreclosure case, and the FHFA has not shown that the proposed allocations extinguish the liens at issue—even assuming it has priority over other creditors. Further, while the FHFA also cites cases construing 12 U.S.C. § 1825(b)(2)—a near-identical provision applicable to the FDIC[6]—to argue that Section 4617(j)(3)'s reach extends beyond the levy, attachment, garnishment, foreclosure, or sale situations its text contemplates, none of those cases is factually analogous. *See Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686, 691 (5th Cir. 1998) (holding that action to quiet title was functionally equivalent to foreclosure and therefore impermissible without FDIC's consent because just as in foreclosure,

---

[6] Section 1825(b)(2) states, "[n]o property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]."

10

"the FDIC loses the Property"); *see also S/N-1 REO Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) (holding that tax taking of property without FDIC consent violated same provision).

Finally, the FHFA points to Section 4617(j)(2) to argue that HERA was intended to protect the FHFA conservatorships broadly, including from the allocations at issue. (R. 1209, FHFA's Obj. at 13.) But that provision exempts the FHFA from generally applicable taxes, not receivership fees. *See* 12 U.S.C. § 4617(j)(2) (providing that the FHFA "shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority").

In sum, the court has already determined that the Receiver's activities were in the best interests of the GSE-encumbered properties and therefore the GSEs. Granting and allocating a portion of the Receiver's reasonable fees to the GSE-encumbered properties under these circumstances does not constitute an abuse of discretion. *See First Sec.*, 528 F.2d at 451. Nor does it violate federal law.

## Conclusion

For the foregoing reasons, the FHFA's objections to the Receiver's motion for court approval of allocations of fees as to GSE-encumbered properties are overruled, and the Receiver's fees shall be allocated to the GSE-encumbered properties in an amount to be determined.

                                          **ENTER:**

                                          _____
                                          **Young B. Kim**
                                          **United States Magistrate Judge**