**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| United States Securities and Exchange Commission, | ) ) ) | |
| Plaintiff, | ) ) | No.: 18-cv-5587 |
| v. | ) ) ) | Honorable John Z. Lee<br>Magistrate Judge Young B. Kim |
| EquityBuild, Inc., EquityBuild Finance, LLC, Jerome H. Cohen, and Shaun D. Cohen, | ) ) ) | |
| Defendants. | ) ) | |

**FEDERAL HOUSING FINANCE AGENCY'S OBJECTION**
**TO THE MAGISTRATE JUDGE'S DECISION**
**OVERRULING FHFA'S OBJECTION TO FEE ALLOCATION**

The Federal Housing Finance Agency ("FHFA"), as Conservator for Fannie Mae and Freddie Mac (the "Enterprises"), objects under Rule 72 to the Magistrate Judge's June 22, 2022 Minute Order (Dkt. 1257) and Opinion (Dkt. 1258) (together, the "MJ Decision") overruling FHFA's objection (Dkt. 1209) to the Receiver's motion to allocate its fees and costs to specific properties insofar as it would allocate any costs to properties encumbered by Enterprise liens (Dkt. 1107). The MJ Decision is clearly erroneous and contrary to law on three dispositive points.

*First*, the MJ Decision erroneously holds that FHFA waived the protection of 12 U.S.C. § 4617(f), which provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator." Section 4617(f) is jurisdictional and therefore cannot be waived. *Second*, the MJ Decision erroneously holds that FHFA can assert Section 4617(f) only "as a shield" and not "as a sword." Section 4617(f)'s unambiguous language contains no such limitation, and basic principles of statutory interpretation preclude imputing one. *Third*, the MJ Decision incorrectly holds that 12 U.S.C. § 4617(j)(3)—which mandates that "[n]o property of [an FHFA conservatorship] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [Conservator]"—does not apply because this is not

a foreclosure case, and allocating costs to the properties at issue would only dissipate the Enterprises' collateral rather than extinguishing their liens. Section 4617(j)(3) is not so limited; it protects against any judicially imposed impairment of a conservatorship property interest.

To be clear, FHFA's position is *not* "to deny the Receiver his vetted and approved fees," (*see* Dkt. 1258 at 9), but only—as explained in FHFA's objection (Dkt. 1209) and below—that those fees cannot be allocated to or assessed against the conservatorship properties, as such action is precluded by a federal statute. The Court should set aside or reject the MJ Decision and uphold FHFA's objection to the Receiver's request to allocate fees to the properties at issue.

## **BACKGROUND**

### I.      **Fannie Mae, Freddie Mac, and FHFA**

Fannie Mae and Freddie Mac are federally chartered corporations that facilitate the secondary mortgage market by purchasing mortgages originated by others. *See* 12 U.S.C. §§ 1716 (Fannie Mae); 1451 note (Freddie Mac). In July 2008, the newly enacted Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4501 *et seq.*, established FHFA as the Enterprises' regulator. In September 2008, FHFA's Director exercised his authority under HERA to place each Enterprise into conservatorship, with FHFA as their Conservator. *See* 12 U.S.C. § 4617(a). The Enterprises remain under FHFA's conservatorship today.

As Conservator, FHFA succeeded to "all [of the Enterprises'] rights, titles, powers, and privileges" regarding their property. 12 U.S.C. § 4617(b)(2)(A)(i). HERA grants the Conservator an array of powers and protections, including the powers to "preserve and conserve the assets and property of [the Enterprises]," *id.* § 4617(b)(2)(B)(iv), and to "collect all obligations and money due" the Enterprises, *id.* § 4617(b)(2)(B)(ii). HERA also mandates that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator[,]" 12 U.S.C. § 4617(f), and that "[n]o property of [an FHFA conservatorship] shall be subject to levy,

attachment, garnishment, foreclosure, or sale without the consent of the [Conservator], nor shall any involuntary lien attach to the property of the [conservatorship]," *id.* § 4617(j)(3).

## II.    Relevant Procedural History

This is an SEC receivership case relating to a Ponzi scheme.  The receivership initially consisted primarily of real property, and (as is typical) the Receiver was granted a lien against the receivership assets to secure its fees and costs.

In 2020, with the Court's approval, the Receiver sold property at 1131-41 East 79th Place in Chicago and 7024-32 South Paxton Avenue in Chicago; at the time, the 79th Street Property was encumbered by a $1.3 million mortgage owned by Fannie Mae, and the Paxton Property was encumbered by a $1.54 million mortgage owned by Freddie Mac.  Dkt. 618 at 40-43; Dkt. 681. The properties were sold "free and clear of the mortgages, liens, claims, and encumbrances identified herein," including each Enterprise's mortgage; the proceeds from each sale were deposited into separate, property-specific subaccounts "with all mortgages, liens, claims, and encumbrances attaching to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the properties being sold."  Dkt. 749 at 15-16, 20 (79th Street); Dkt. 825 at 4-6 (same); Dkt. 809 at 12-15, 31 (Paxton); Dkt. 966 at 7-9 (same).  Thus, the proceeds of each sale were substituted for the properties as the collateral securing the Enterprises' loans.[1]

On December 22, 2021, the Receiver moved to allocate certain accrued fees and costs to specific properties and to receive an interim payment from the corresponding accounts.  Dkt. 1107. Of particular relevance here, the Receiver seeks to allocate $93,564.69 to the 79th Street Property and $54,966.96 to the Paxton Property.  *See* Dkt. 1107-5 at 243, 1233.  FHFA, citing Sections

---

[1]    FHFA is not presently seeking to unwind the property sales or the substitution of collateral. That said, FHFA reserves and does not waive all rights and claims it and its conservatees may have in the event the liens are not satisfied in their entireties.

3

4617(f) and 4617(j)(3), objected to those allocations because they would dissipate the Enterprises' collateral, thereby impairing the Conservator's statutory powers to collect on the obligations secured by the properties and to preserve and conserve the Enterprises' assets. Dkt. 1209.

On June 22, 2022, the Magistrate Judge issued the MJ Decision, overruling FHFA's objections and granting the Receiver's motion. Dkt. 1258. Specifically, the Magistrate Judge held that: (i) Section 4617(f) is non-jurisdictional and FHFA therefore waived it by not raising it earlier, *id.* at 6-7, (ii) Section 4617(f) cannot be asserted as a "sword" rather than a "shield," *id.* at 8-9, and (iii) Section 4617(j)(3) does not apply because "[t]his is not a foreclosure case, and the FHFA has not shown that the proposed allocations extinguish the liens at issue," *id.* at 9-11.

## LEGAL STANDARD

For Magistrate Judges' rulings on non-dispositive matters, "[t]he district judge in the case must … modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Magistrate Judges' rulings on dispositive issues are reviewed "de novo" under Rule 72(b). The MJ Decision negates the only claim or defense FHFA has raised in this action; it is therefore a dispositive ruling to which Rule 72(b) applies. *See Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 426-27 (N.D. Ill. 2012). Accordingly, de novo review is proper here, but because, as explained below, the MJ Decision is clearly erroneous and contrary to law, it must be set aside (or, equivalently, rejected) under either standard.

## ARGUMENT

The Rule 72(a) standard is stringent, but this case meets it. On each of three dispositive points, the MJ Decision departs so dramatically from established law that it should "strike [the Court] as wrong with the force of a 5 week old, unrefrigerated, dead fish." *See S. Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). Because any argument that would warrant

reversal under the Rule 72(a) standard would easily satisfy the Rule 72(b) standard as well, the arguments below focus on the Rule 72(a) standard.[2]

## I. THE HOLDING THAT FHFA WAIVED SECTION 4617(f) IS CLEARLY ERRONEOUS AND CONTRARY TO LAW.

The MJ Decision holds that "a Section 4617(f) argument can be waived if not timely raised," and concludes that because FHFA "failed to timely object, neither the letter nor spirit of Section 4617(f) is implicated here." Dkt. 1258 at 7, 9. That is wrong. Section 4617(f) poses a jurisdictional bar and therefore cannot be waived; it can be raised at any point in the litigation.

The Eighth Circuit's decision in *Hanson v. FDIC*, 113 F.3d 866 (8th Cir. 1997)—a case applying a substantively identical provision applicable to FDIC conservators and receivers, 12 U.S.C. § 1821(j)—is squarely on point.[3] There, FDIC asserted Section 1821(j) for the first time on appeal. If the provision was non-jurisdictional, waiver would have applied and the court would have disregarded the argument. The court held, however, that because "Section 1821(j) limits the subject matter jurisdiction of federal and state courts," the court could "consider for the first time on appeal the FDIC's argument" that Section 1821(j) precluded a claim for imposition of a constructive trust. *Id*. at 870 n.5. FHFA cited to *Hanson* for this point in its objection, but the MJ Decision ignores the case. *See* Dkt. 1209 at 9, 10.

The MJ Decision acknowledges but sweeps aside numerous other cases—including many decisions of federal appellate courts stating unequivocally that Sections 4617(f) and 1821(j) are jurisdictional—noting only that "some courts characterize Section 4617(f) as a jurisdictional bar."

---

[2] Rule 72 requires objections to be filed within 14 days. The MJ Decision was issued June 22. Hence, this objection, which is filed July 6, is timely.

[3] Courts interpreting and applying Section 4617(f) routinely look to Section 1821(j) cases for guidance. *E.g.*, *Roberts v. FHFA*, 889 F.3d 397, 402-03 (7th Cir. 2018).

Dkt. 1258 at 6-7.[4]  The MJ Decision justifies departing from that line of authority by asserting that "the D.C. Circuit and the only court in this circuit to have both considered and decided the issue treat Section 4617(f) as a mere bar to certain relief in a case over which a court otherwise has jurisdiction."  Dkt. 1258 at 7 (citing *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017); *Roberts v. FHFA*, 243 F. Supp. 3d 950 (N.D. Ill. 2017), *aff'd*, 889 F.3d 397 (7th Cir. 2018)).

The MJ Decision's purported distinction between statutes that bar certain relief and statutes that limit jurisdiction presents a false dichotomy—that a statute may be *either* "a mere bar to certain relief" *or* a "jurisdictional bar," but cannot be *both*—that the Supreme Court and the Seventh Circuit have rejected.  It is true that *some* statutes bar or limit available relief as a substantive, non-jurisdictional matter, generally in the context of a specific claim.  For example, Congress has "cap[ped] total damages" available in Title VII cases, and no one has ever interpreted that as a jurisdictional limitation.  *See Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016) (discussing 42 U.S.C. § 1981a(b)(3)).  But in *other* statutes, Congress has precluded certain forms of relief as a jurisdictional matter.  For example, just weeks before this filing, the Supreme Court held that a provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1252(f)(1), "*deprives[] the District Courts of jurisdiction* to entertain … requests for class-wide injunctive relief" from certain kinds of immigration orders, despite permitting the same substantive relief in individual actions.  *Garland v. Gonzalez*, 142 S. Ct. 2057, __ (slip op. at 1) (June 13, 2022) (emphasis added).  Similarly, in a different substantive context—labor law—the Seventh Circuit has explained that "a principal function of the Norris-LaGuardia Act is to *limit to money*

---

[4]  FHFA cited four such cases in its objection and could easily have cited many more.  *See, e.g.*, *Jacobs v. FHFA*, 908 F.3d 884, 889, 896 (3d Cir. 2018); *Robinson v. FHFA*, 876 F.3d 220, 227 (6th Cir. 2017); *Town of Babylon v. FHFA*, 699 F.3d 221, 228 (2d Cir. 2012); *Nat'l Trust for Historic Pres. V. FDIC*, 21 F.3d 469, 471 (D.C.. Cir. 1994) (per curiam).

6

*damages the remedy* for illegal strikes," and held that the statute "*deprives the district court of jurisdiction to issue an injunction*" instead. *Burlington Northern Ry. Co. v. Brotherhood of Maintenance of Way Employees*, 793 F.2d 795, 800, 807 (7th Cir. 1986) (emphasis added). The decisions confirm that a statute can bar relief jurisdictionally as opposed to substantively.

To be sure, the INA and the Norris-LaGuardia Act refer expressly to "jurisdiction." 8 U.S.C. § 1252(f); 29 U.S.C. § 104. But the Supreme Court has repeatedly confirmed that Congress need not use the word "jurisdiction"—or otherwise "incant magic words"—to make a statute jurisdictional. *Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (plurality opinion) (quoting *Sebelius v. Auburn Reg. Med. Ctr.*, 568 U.S. 145, 153 (2013)). Instead, the defining quality of "jurisdictional statutes" is that they "*speak ... about a court's powers.*" *United States v. Kwai Fun Wong*, 575 U.S. 402, 411 n.4 (2015) (emphasis added); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (stating that "[j]urisdictional statutes speak to the power of the court") (quoting *Landgraf v. USA Film Prods.*, 511 U.S. 244, 274 (1994) (internal quotation marks omitted)). Thus, a statute is properly considered "jurisdictional" if Congress "clearly state[s]" an intention to "cabin a court's power." *Kwai Fun Wong*, 575 U.S. at 409.

Under that standard, Section 4617(f) is jurisdictional; the straightforward and concise terms Congress enacted clearly state the intention to cabin courts' powers: "[N]o court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator." 12 U.S.C. § 4617(f). The provision's plain language—*no court may take any action*—limits courts' "adjudicatory capacity"; it does not define the "substantive adequacy" of a claim or set forth a "claim-processing rule," the hallmarks of mandatory but non-jurisdictional statutes. *Patchak*, 138 S. Ct. at 906 (internal quotation marks and citations omitted). Unlike *non-jurisdictional* statutory limitations on available relief, such as the damages cap Congress imposed on Title VII claims,

Section 4617(f) cannot reasonably be characterized as a claim-specific substantive element or a processing rule; it expressly applies to *any* claim brought by *any* party in *any* court.

Section 4617(f) is no black swan—other statutes that limit courts' power to grant specific forms of relief but do not refer expressly to jurisdiction are universally acknowledged to be jurisdictional nevertheless. For example, the Supreme Court has described the Tax Injunction Act of 1937, 28 U.S.C. § 1341 ("TIA")—which provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" but does not refer expressly to jurisdiction—as a "jurisdictional barrier." *Arkansas v. Farm Credit Servs.*, 520 U.S. 821, 823, 825 (1997).[5] Indeed, a federal district court applying Section 1821(j) relied on that point in holding that "Congressional restriction of the remedies that a court may impose limit[s] the jurisdiction of a court." *Back to Bible Apostolic Faith Church, Inc. v. RTC*, No. 93-cv-1791, 1994 WL 146821 at *5 (D. Md. Jan. 24, 1994) (citing *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981) (TIA is jurisdictional)). Other examples include the Prison Litigation Reform Act, 18 U.S.C. § 3626, which mandates that "no longer may courts grant or approve [certain] relief" and therefore "operates … to restrict the equity jurisdiction of federal courts," *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000), and the Johnson Act, 28 U.S.C. § 1342, which "precludes federal court jurisdiction in actions seeking both declaratory and injunctive relief" relating to public-utility rates, *US West, Inc. v. Tristani*, 182 F.3d 1202, 1207 (10th Cir. 1999).

The Seventh Circuit has not directly addressed whether Section 4617(f) or Section 1821(j) are jurisdictional, but it has held that "[S]ection 1821(j) 'effects a sweeping ouster of courts' power

---

[5] The TIA is *not* a blanket prohibition of federal-court jurisdiction over state-law tax issues. It "bars anticipatory relief, [i.e.,] suits to stop ('enjoin, suspend or restrain') the collection of taxes," but "does not bar collection suits, nor does it prevent taxpayers from urging defenses in such suits that the tax … is invalid." *Jefferson Cty. v. Acker*, 527 U.S. 423, 433, 435 (1999).

to grant equitable remedies.'" *Veluchamy v. FDIC*, 706 F.3d 810, 817 (7th Cir. 2013) (quoting *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007)). This recognition that Section 1821(j) limits courts' power to award relief confirms that it and Section 4617(f) are jurisdictional.

The non-binding cases the MJ Decision relies upon (Dkt. 1258 at 7)—the D.C. Circuit's decision in *Perry Capital* and the district court decision in *Roberts*—do not hold to the contrary. In *Perry Capital*, the court determined that Section 4617(f) barred plaintiffs' claims for relief against FHFA; the court's conclusion did not turn on whether Section 4617(f) was a jurisdictional limitation or a non-jurisdictional restriction on the relief available—nor did the court discuss the issue. 864 F.3d at 604-05. The court analyzed Section 4617(f)'s application after "turning to the merits," because the statute did not affect that court's authority to entertain the appeal, not because it is anything other than a jurisdictional limitation on courts' power to grant certain relief. *Id.* at 604. Nor could the *Perry Capital* panel have held that Section 4617(f) was non-jurisdictional— the circuit had previously held that Section 1821(j) *is* jurisdictional, affirming a dismissal under it "for lack of jurisdiction." *Nat'l Trust for Historic Pres.*, 21 F.3d at 471. And in that court, "[o]ne three-judge panel … does not have the authority to overrule another …." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (citations omitted). Likewise, in *Roberts*, the court emphasized that "it makes no practical difference in this case" whether Section 4617(f) raises a merits question rather than a jurisdictional one. 243 F. Supp. 3d at 958.[6] Neither of these cases— nor has any other decision to FHFA's knowledge—held that Section 4617(f) or 1821(j) was non-jurisdictional in a case where that would have made a difference. The MJ Decision's reliance on

---

[6]    *Roberts* incorrectly assumes that "a jurisdiction-stripping statute" must mandate "that subject matter jurisdiction has been withdrawn *over the claims*," not that jurisdiction has been withdrawn *over certain forms of relief*. *Id*. at 957-58 (emphasis added). As explained above, neither the Supreme Court nor the Seventh Circuit applies such a narrow definition.

*N.J. Carpenters Health Fund v. Novastar Mortgage, Inc.*, 28 F.4th 357 (2d Cir. 2022), is equally misplaced. There, the Second Circuit ruled that the act in question fell outside the scope of the Conservator's statutory powers (indeed, it held that the Conservator was not a member of the settlement class); the court did not rule whether Section 4617(f) was jurisdictional. *Id.* at 379 (under "HERA … FHFA *did not … have the power* to alter—or to disregard—court deadlines") (emphasis added).[7] Thus, *NJ Carpenters* is irrelevant on whether Section 4617(f) is jurisdictional.

The MJ Decision's holding that Section 4617(f) is not jurisdictional ignores squarely on-point authority—the Eighth Circuit's decision in *Hanson*. It also disregards Supreme Court decisions articulating the defining characteristic of jurisdictional statutes—one that Section 4617(f) possesses—which is that they delimit the power of courts. On this dispositive point, the MJ Decision is clearly erroneous and contrary to law.

## II. THE HOLDING THAT SECTION 4617(f) OPERATES ONLY AS A SHIELD IS CLEARLY ERRONEOUS AND CONTRARY TO LAW.

The MJ Decision holds that § 4617(f) operates only as a "shield," not as a "sword." Dkt. 1258 at 8-9. The MJ Decision equates asserting Section 4617(f) "as a shield" with asserting it "to protect [the Conservator] from court action because of its own [prior] conduct," i.e. retrospectively. *Id.* at 8. The MJ Decision contrasts that against asserting the statute where the Conservator has not yet "taken any action [for] which it seeks protection," i.e. prospectively, which the MJ Decision equates to deploying it "as a sword." *Id.* at 9. No such distinction appears in the statutory text, and in the absence of any textual hook, the MJ Decision clearly erred by creating one.[8]

---

[7] FHFA believes *NJ Carpenters* was incorrectly reasoned on the point and wrongly decided overall, and FHFA is considering pursuing certiorari. But that is immaterial here, because even on its own terms, *NJ Carpenters* does not support the MJ Decision.

[8] To the extent the MJ Decision might equate "as a shield" with defensive assertion of the statute and "as a sword" with offensive assertion, the same arguments apply. In addition, such a distinction would be all but impossible to administer. As the Seventh Circuit has recognized in [*Footnote continues on next page.*]

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Section 4617(f)'s prohibitive language—"no court may take any action"—does not require any prior affirmative act. It is unqualified and absolute, and must be applied as written. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("'[A]ny' has an expansive meaning."); *Harris v. Garner*, 216 F.3d 970, 985 (11th Cir. 2000) (in interpreting a statute, "'no' means 'no'"); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 219 (D.D.C. 2020) (statutory language that "[n]o court may set aside any action or decision" "strips courts of jurisdiction to … set aside" any action or decision); *Volges v. RTC*, 32 F.3d 50, 52 (2d Cir. 1994) (Section 1821(j)'s mandate that "no court may take any action" is "broad[] and unequivocal[]").

Indeed, as the Supreme Court recognized in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), only two exceptions to Section 4617(f) exist: where review (i) "is specifically authorized by [some other HERA] provision[]," or (ii) "is requested by the Director." *Id.* at 1775. And "[t]he general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that *the statute should apply to all cases not specifically excluded*." *Cranberry Growers Coop. v. Layng*, 930 F.3d 844, 852 n.43 (7th Cir. 2019) (emphasis added).

---

another context, "[a]ttempting to distinguish as a practical matter between defensive and potentially offensive purposes might be next to impossible." *United States v. Grasso*, 24 F.3d 879, 882 (7th Cir. 1994) (self-defense). This is partially due to the fact that "in many situations the best defense may be a good offense." *Cent. Ill. Pub. Serv. Co. v. Atlas Minerals, Inc.*, 146 F.3d 448, 452 (7th Cir. 1998). In any event, Section 4617(f)'s unequivocal language–"no court may take any action"—leaves no room for such a subjective exception, and there is no reason Section 4617(f) can't function as both a shield and a sword. Indeed, the Seventh Circuit has construed other provisions protecting federal conservators and receivers as providing both "a sharp sword and a sturdy shield indeed." *FDIC v. Wright*, 942 F.2d 1089, 1098 n.12 (7th Cir. 1991) (quoting *Bowen v. FDIC*, 915 F.2d 1013, 1016 (5th Cir. 1990)). But even if the shield/sword distinction is assumed both to have been incorporated into the statute and to mean that only defensive assertions are valid, FHFA's assertion of the statute here was purely defensive—FHFA asserted it to shield conservatorship assets from court-ordered dissipation.

Whether to add another exception to Section 4617(f)—such as a carve-out for cases where the Conservator has not already "taken [the] action [for] which it seeks protection," (*see* Dkt. 1258 at 9)—is up to Congress, not the judiciary. *See Germain*, 503 U.S. at 253-54.

The MJ Decision cites a few cases applying Section 4617(f) retrospectively (as a "shield") based on the claims at issue (Dkt. 1258 at 8-9), but not one includes anything suggesting that Section 4617(f) does not apply prospectively (as a "sword") as well. For example, *Roberts* indicates that Section 4617(f) "bars declaratory or injunctive relief against the [FHFA] unless it acted *ultra vires* or in a role other than as conservator or receiver." 889 F.3d at 403. But *Roberts* analyzed whether FHFA had "acted" with respect to its conservatorship powers and functions because the court was deciding whether to award declaratory and injunctive relief with respect to a past action that FHFA *had already taken*. The analysis turned on whether the challenged action was taken *pursuant to FHFA's conservatorship powers*, not whether FHFA had taken any action in the case *yet*; that was a given. The other cases cited in the MJ Decision are similar (*see* Dkt. 1258 at 8-9)—they recount the retrospective nature of the evaluation as a matter of fact, not as a requirement of law. *See Leon Cty. Fla. v. FHFA*, 700 F.3d 1273, 1278 (11th Cir. 2012) (determining that FHFA directive that had already been issued was valid pursuant to FHFA's functions as conservator); *Cty. of Sonoma v. FHFA*, 710 F. 3d 987, 992-93 (9th Cir. 2013) (same).

The MJ Decisions' citation to *NJ Carpenters* is again misplaced; that case holds only that 12 U.S.C. § 4617(f) did not give the Conservator the power to seek to excuse the untimeliness of Freddie Mac's opt-out attempt from a class settlement. 28 F.4th at 379. It does *not* hold Section 4617(f) inapplicable where FHFA asserts it "as a sword," nor could it have. As the MJ Decision explains, where FHFA asserts Section 4617(f) "to protect it[self] from court action because of its own conduct," it deploys the statute "as a shield," *not* "as a sword." Dkt. 1258 at 8. In *NJ*

12

*Carpenters*, FHFA asserted Section 4617(f) to protect its own conservatee's conduct—opting out of a class action—from court action; thus FHFA deployed the statute *as a shield*. 28 F.4th at 363.

In any event, the MJ Decision conflicts directly with cases holding that Section 4617(f) and Section 1821(j) bar declaratory relief that interferes with anticipated future acts of a conservator or receiver. *See, e.g., Nat'l Trust for Historic Pres.*, 21 F.3d at 471 (holding that Section 1821(j) barred injunction prohibiting FDIC's impending sale of property); *Suero v. Freddie Mac*, 123 F. Supp. 3d 162, 171 (D. Mass. 2015) (rejecting the argument that Section 4617(f)'s prohibition turns on FHFA's taking "affirmative action" and holding instead that the statute's application "is not confined to situations in which FHFA engages in affirmative acts by issuing specific directives or statements …."). Simply put, the MJ Decision's holding that Section 4617(f) applies only if asserted "as a shield" is clearly erroneous and contrary to law.

## III. THE HOLDING THAT SECTION 4617(j)(3) DOES NOT APPLY IS ALSO CLEARLY ERRONEOUS AND CONTRARY TO LAW.

The MJ Decision also incorrectly rejects the application of a separate provision of FHFA's organic statute that bars allocation of any of the Receiver's costs or fees to the Enterprise Properties. Section 4617(j)(3) provides: "No property of [an FHFA conservatorship] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [Conservator], nor shall any involuntary lien attach to the property of the [conservatorship]." 12 U.S.C. § 4617(j)(3). Section 4617(j)(3) has been extensively litigated in federal courts, which have uniformly agreed that the protection "applies to *any property* for which the Agency serves as conservator"; these cases confirm that the statute protects the Enterprises' lien interests from extinguishment. *E.g.*, *Berezovsky v. Moniz*, 869 F.3d 923, 928 (9th Cir. 2017) (emphasis added). No affirmative act by FHFA is required, and unless FHFA affirmatively consents, the statute applies automatically. *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136,

1149 (9th Cir. 2018); *Berezovsky*, 869 F.3d at 929.

The MJ Decision, noting that Section 4617(j)(3) typically applies in the context of foreclosures, rejected its application here because "[t]his is not a foreclosure case, and the FHFA has not shown that the proposed allocations extinguish the liens at issue—even assuming it has priority over other creditors." Dkt. 1258 at 10. This was clear error and contrary to law.

Section 4617(j)(3) applies here because the allocation would make conservatorship property (specifically, the Enterprises' liens) "subject to" a judicially imposed process that would deplete the collateral—the functional equivalent of attachment, garnishment, foreclosure, or sale, all of which the statute prohibits. Courts applying the analogous FDIC provision have focused on the effect of the action, not the label, and have applied it to bar to judicial actions that are not enumerated specifically but that would cause any deprivation of protected property. For example, in *Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686 (5th Cir. 1998)*,* the Fifth Circuit analyzed "whether the petition to quiet title is essentially analogous to a foreclosure, and is a 'triggering event'" under the FDIC analog to Section 4617(j)(3), 12 U.S.C. § 1825(b)(2). *Id.* at 689. The court of appeals held that it was, reasoning that "[w]hile the term 'quiet title' is not specifically mentioned in … § 1825, the end result is functionally the same as that of the actions that are specifically listed in the statute: the FDIC loses the Property," while the statute "represents the express will of Congress that the [conservator or receiver] must consent to *any deprivation of property* …." *Id.* at 690-91 (emphasis added); *see also S/N-1 REO Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) (following *Trembling Prairie*, equating "deprivation," with "reduction in the value of the receivership's assets").

The MJ Decision purports to distinguish *Trembling Prairie* and *S/N-1 REO* as not "factually analogous," Dkt. 1258 at 10, but that vague observation does not neutralize those cases'

clear holding that under Section 1825(b)(2)—and by extension, Section 4617(j)(3)—the conservator or receiver "must consent to *any deprivation of property*," i.e., any judicially imposed "reduction in the value of the [protected] assets." *S/N-1 REO*, 81 F. Supp. 2d at 150. FHFA did not and does not contend that the present fee allocation would "extinguish" the Enterprises' liens entirely (*see* Dkt. 1258 at 10), only that it would dissipate the collateral and thereby reduce the value of the liens, which are the property Section 4617(j)(3) protects.[9] Under *Trembling Prairie* and *S/N-1 REO*, that is enough to trigger the statute.

Nor are *Trembling Prairie* and *S/N-1 REO* outliers. Section 1825(b)(2) also prohibits the filing of a lis pendens, even though that is not expressly mentioned in the statutory text; courts treat "the list of state law liens and attachments as inclusive rather than exhaustive." *Santa Monica Mountains Conservancy v. FDIC*, Civ. A. No. 92-1650 SSH, 1992 WL 672288, at *1 (D.D.C. Aug. 25, 1992) (unpublished disposition). That is because "[i]t's hard to imagine that even if Congress could direct its full time to the drafting of a statute of this kind, it could … undertake an encyclopedic reference to every particular device to be found in the armament of every one of our American jurisdictions." 1992 WL 672288, at *1 (quotation marks and citation omitted)..

The MJ Decision's narrow interpretation of Section 4617(j)(3) is unsupported, and the resulting conclusion that the statute does not apply here is clearly erroneous and contrary to law.

<u>**CONCLUSION**</u>

The MJ Decision is clearly erroneous and contrary to law. This Court should set it aside or reject it, and uphold FHFA's limited objection to the fee-allocation motion.

---

[9]     The fact that "all mortgages, liens, claims, and encumbrances attach[ed] to the sales proceeds with the same force, validity, status, and effect, if any, as they had against the properties being sold," Dkt. 749, confirms that the Conservator's interest in the proceeds at stake here is equivalent to its interest in the properties at stake in *Berezovsky* and similar cases.

15

Dated:  July 6, 2022

Respectfully submitted,

/s/ Michael A.F. Johnson
Michael A.F. Johnson
ARNOLD & PORTER
    KAYE SCHOLER LLP
D.C. Bar No. 460879, *admitted pro hac vice*
601 Massachusetts Avenue NW
Washington, DC  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Michael.Johnson@arnoldporter.com

Daniel E. Raymond
ARNOLD & PORTER
    KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Daniel.Raymond@arnoldporter.com

*Attorneys for Federal Housing Finance
Agency in its capacity as Conservator for
the Federal National Mortgage Association
and the Federal Home Loan Mortgage
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2022, I caused the foregoing **Federal Housing Finance Agency's Objection to the Magistrate Judge's Decision Overruling FHFA's Objection to Fee Allocation** to be electronically filed with the Clerk of the Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record.

/s/ Daniel E. Raymond