IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | No. 18 CV 5587 |
| v. | Judge Manish S. Shah |
| EQUITYBUILD, INC., et al., | |
| Defendants. | |

## ORDER

The Receiver's thirteenth, fourteenth, fifteenth, and sixteenth applications and motions for court approval of payment of fees and expenses, [1087], [1181], [1251], [1293], are granted in part. The court will continue to refer first-priority lien and allocation-to-properties disputes to Magistrate Judge Kim and require a 20% holdback.

## STATEMENT

The court assumes familiarity with the background of this case. Pending now are the Receiver's thirteenth through sixteenth applications for approval of fees and expenses. The mortgagees stand on earlier objections that Judge Lee overruled and continue to assert that the Receiver's work doesn't fall under the two categories of activities—preservation, management, and liquidation of defendants' assets; and management of the claims-adjudication process—for which the court authorized a first priority lien. And they argue (as before) that the Receiver has improperly allocated fees to specific properties. Finally, the mortgagees request a 20% holdback of fees. The FHFA entities also object to specific property allocations. The SEC supports the Receiver's applications.

As a general matter, a receiver "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *S.E.C. v. Byers*, No. 08 CIV. 7104 DC, 2014 WL 7336454, at \*5 (S.D.N.Y. Dec. 23, 2014); *see also S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). A court should consider "all of the factors involved in a particular receivership." *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994). Such factors include "the complexity of problems faced, the benefit to the receivership estate, the quality of work performed, and the time records presented." *Byers*, 2014 WL 7336454, at \*5 (quoting *S.E.C. v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y.

1973)). When considering whether a receiver benefited the estate, courts bear in mind that such benefits "may take more subtle forms than a bare increase in monetary value." *Gaskill*, 27 F.3d at 253 (quoting *Elliott*, 953 F.2d at 1577). Additionally, courts give "great weight" to the acquiescence or opposition of the SEC to fee applications. *S.E.C. v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (quoting *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008)).

The complexity of this case, the benefit to the Receivership Estate, and the quality of the Receiver's work all weigh in favor of granting the fee application. This case is complex, requiring the Receiver and his counsel to preserve, manage, sell, and distribute the proceeds from dozens of residential real estate properties, many of which involve disputed claims. In the applications, the Receiver outlines the efforts he and his retained professionals have undertaken to address safety and habitability issues at the properties, including managing and paying for repairs, inspections, and improvements. The Receiver also has resolved multiple administrative matters with the City of Chicago with respect to building code violations, and has managed litigation brought against the estate and against former Equitybuild attorneys. And the Receiver has continued to negotiate with stakeholders, respond to claimants' communications, and identify, compile, review, and organize claims submitted by creditors in order to facilitate the summary claim-priority adjudication process. The Receiver has continued to locate and preserve Equitybuild records, retain professionals for tax administration, and maintain and improve the Master Claims Exhibit. The Receiver's efforts have benefited and will continue to benefit the Receivership Estate.

The SEC represents that it has conducted its own review of the Receiver's billing records and has concluded that the fee applications substantially comply with the SEC's billing guidelines and are in line with the fees the court has approved thus far. This court concludes that the bottom-line fee requests are reasonable.

The court previously granted the Receiver's request for a first-priority lien on the receivership assets for fees incurred by the Receiver in connection with "(1) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate; and (2) the implementation and management of an orderly summary claim-priority adjudication process." 8/17/21 Order at 11. The Mortgagees object to the payment of the Receiver's fees on a first-priority basis because, in their view, many of the Receiver's tasks described in the invoices attached to the applications fall outside the scope of these categories.

The court previously rejected as "too narrow" the Mortgagees' apparent understanding "that the first-priority lien is not applicable except when the Receiver's activities directly involve real estate transactions concerning the subject properties or managing the claims process." Order Granting 12th Fee

Application at 7, *Equitybuild* (N.D. Ill. Mar. 14, 2022). That conclusion applies here, as well.

Additionally, the SEC's support of the fee applications is particularly significant with respect to the first-priority-lien dispute. The SEC ought to oppose payments to the Receiver on a first-priority basis in order to preserve as much of the estate as possible for restitution to victims. *Cf. F.T.C. v. Cap. Acquisitions & Mgmt. Corp.*, No. 04 C 7781, 2005 WL 3676529, at *6 (N.D. Ill. Aug. 26, 2005) (noting that, in the context of receiver's fees, the government's incentives conflict with the receiver's). Thus, to the extent the Mortgagees object to *any* application of the first-priority receiver's lien to the fee applications at issue, that objection is overruled.

But—consistent with Judge Lee's approach—the court declines to approve a blanket payment of the requested fees pursuant to a first-priority lien. Instead, the court will refer the Receiver's request that the fees be paid pursuant to a first-priority lien to Magistrate Judge Kim, who is already addressing that issue with respect to previous fee applications. Accordingly, the court denies without prejudice the request in the Receivers' fee applications that all of the requested fees be paid pursuant to a first-priority lien. That issue continues to be referred to Magistrate Judge Kim. Similarly, the objections to the Receiver's proposed allocations of fees to specific properties is best addressed by Magistrate Judge Kim. The court appreciates that delays in the Receiver's authorized compensation is a harm that ought to be avoided, but at least at this stage of the case, the status quo will be more efficient than having the newly assigned judge wade into allocation issues.

Even when interim fees are otherwise appropriate, a court may hold back a portion of the requested fees "because until the case is concluded the court may not be able to accurately determine the reasonable value of the services for which the allowance of interim compensation is sought." *S.E.C. v. Cap. Cove Bancorp, LLC*, SACV 15-980-JLS, 2016 WL 6078324, at *2 (C.D. Cal. Jun. 29, 2016) (cleaned up) (quoting *S.E.C. v. Small Bus. Cap. Corp.*, No. 5:12-CV-03237 EJD, 2013 WL 2146605, at *2 (N.D. Cal. May 15, 2013)). Courts are mindful "to avoid even the appearance of a windfall" when awarding fees to a receiver, especially where, as here, "hundreds of investors and creditors have been defrauded and victims are likely to recover only a fraction of their losses." *Byers*, 2014 WL 7336454, at *6 (cleaned up). Furthermore, "[h]oldback provisions are commonly used to . . . incentivize timely resolution." *S.E.C. v. Lauer*, No. 03-80612-CIV, 2016 WL 3225180, at *2 (S.D. Fla. Mar. 31, 2016).

Judge Lee previously imposed a 20% holdback on the Receiver's fees (but not expenses). The Mortgagees again request a 20% holdback on the Receiver's fees, and an additional 20% holdback on any fees to be paid from the sales proceeds

3

of encumbered real estate. For the reasons stated in the court's order granting the earlier fee applications, this request is granted.

In sum, the court grants the Receiver's pending fee applications. The court also imposes a holdback of 20% of the fees (but not expenses) requested in the applications, and an additional 20% holdback on any fees to be paid from the sales proceeds of encumbered real estate. The Receiver may pay such fees and expenses out of the Estate's operating account to the extent that it has sufficient liquid funds. The Receiver is further authorized to pay any fees and expenses that fall under the two categories outlined in the court's August 17, 2021 order pursuant to a first-priority receiver's lien, and should file a motion with Magistrate Judge Kim detailing which specific fees and expenses he requests to be paid pursuant to the first-priority lien. The Receiver's request to allocate fees to specific properties is referred to Magistrate Judge Kim for consideration alongside the fee allocation motion which is currently pending before him.

ENTER:

September 12, 2022

Manish S. Shah
United States District Judge