UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States Securities and Exchange Commission,<br><br>                Plaintiff,<br><br>v.<br><br>EquityBuild, Inc., EquityBuild Finance, LLC, Jerome H. Cohen, and Shaun D. Cohen,<br><br>                Defendants. | No.: 18-cv-5587<br>Honorable Manish S. Shah<br>Magistrate Judge Young B. Kim |

**FEDERAL HOUSING FINANCE AGENCY'S REPLY IN SUPPORT OF ITS OPPOSED MOTION TO CERTIFY THE OCTOBER 17, 2022
ORDER FOR IMMEDIATE APPEAL**

FHFA as Conservator for the Enterprises, along with the Enterprises, respectfully replies in support of FHFA's motion to certify the Court's October 17, 2022, oral ruling, Dkt. 1327 (the "Ruling"), for immediate appeal under 28 U.S.C. § 1292(b). *See* Dkt. 1335 (the "Motion"). The Seventh Circuit is aware of and interested in the issue, having stayed the pending § 1292(a)(1) appeal until this Court resolves the Motion. *United States Securities and Exchange Commission v. EquityBuild, Inc.*, Case No. 22-3073 (7th Cir.), Dkt. 7.

As explained in the Motion, each of the three issues FHFA seeks to appeal involves a controlling, contestable question of law regarding the proper interpretation of HERA; prompt resolution of these questions would simplify this case and expedite its ultimate resolution. In other words, the questions satisfy the four-part test for certification under § 1292(b).

The counterarguments in the Receiver's Response, Dkt. 1349 ("Response"), are not persuasive.

***First***, to be clear, FHFA is not looking to free-ride on the Receiver's efforts. *See* Response at 5, 9, 15. To the contrary, FHFA would have welcomed—and would still welcome—a dialog

with the Receiver on how best to manage the Enterprise Properties (now, the corresponding accounts) in light of the Conservator's statutory powers and protections, but none materialized. The Receiver blames FHFA, *id*. at 2-3, but if blame is to be apportioned, the Receiver has earned a share: Since its appointment, the Receiver has been on notice that Fannie Mae and Freddie Mac are under FHFA's conservatorship, and has had every reason to be aware that FHFA as Conservator—not unlike the Receiver—has unique and important powers and protections under the law.[1] Indeed, like "[a]ll citizens," the Receiver is "presumptively charged with knowledge of the law." *See Atkins v. Parker*, 472 U.S. 115, 130 (1985). But not once did the Receiver contact FHFA directly to provide any notice of his actions or to work out a mutually agreeable arrangement for anything related to the Enterprise Properties. As a result, FHFA was forced to take action, consistent with its powers and functions under HERA, by appearing in this matter and asserting its statutory protections. The Receiver's position seems to be that its equitable powers supersede the Conservator's statutory protections, but that is not consistent with HERA and, at a minimum, presents a question that is appropriate for immediate interlocutory appeal.

***Second,*** the Receiver's discussion of unrelated § 1292(a)(2) appeals that other parties attempted earlier in the case has no relevance at all to FHFA's Motion. *See* Response at 6-8. FHFA had nothing to do with those appeals, not having even appeared in the case at the time, and regardless, FHFA does not contend that § 1292(a)(2) supports its current appeal. Section 1292(a)(2) does not negate § 1292(b) or any other grounds for an appeal, so whether the Ruling would qualify for an immediate appeal of right under § 1292(a)(2)—a position FHFA does not take—is entirely beside the point, a straw issue. Similarly, the Receiver's arguments related

---

[1] FHFA, History of Fannie Mae and Freddie Mac in Conservatorships, https://www.fhfa.gov/Conservatorship/Pages/History-of-Fannie-Mae--Freddie-Conservatorships.aspx (last updated October 17, 2022).

to prior rulings by this Court on § 1292(b) miss the mark. *Id.* How the Court may have ruled on a previous § 1292(b) motion has no bearing on how the Court should rule on FHFA's Motion—especially because the previous motion was untimely. In fact, as discussed below, a closer look at that earlier denial confirms that this Court should grant FHFA's Motion.

*Third*, the Receiver claims that FHFA's Motion is premature, purportedly because lien-priority issues remain pending, and that therefore FHFA is seeking an "advisory opinion." Response at 10. If that is true for this Motion, it is equally true for the Ruling the Court entered; the underlying issues and circumstances are the same. But before the Court announced its oral ruling at the hearing, the Receiver argued that "having guidance on [the HERA] issues will be . . . useful and helpful." Ruling at 9 (Receiver's counsel. The Receiver's current contention that the issue is unripe amounts to an about-face that is likely barred by judicial estoppel. *See, e.g., In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010) ("Judicial estoppel is an equitable concept that prevents parties from playing 'fast and loose' with the courts by prevailing twice on opposing theories."); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (similar).

*Fourth*, the Receiver argues that FHFA's petition does not involve controlling questions of law. It certainly does. All of the questions presented by FHFA involve statutory interpretation. Statutory interpretation is undisputedly a legal, not a factual question.

*Finally*, the Receiver's argument that an immediate appeal will not advance this litigation misses the mark. As FHFA explained in its Motion, the allocation process is highly iterative. The Receiver does not dispute this. Getting the initial allocation right at this stage will materially advance the litigation because it will save the time and expense of reallocating the Receiver's fees later should FHFA prevail on appeal.

For these reasons and those discussed below, FHFA asks that this Court grant the Motion.

**ARGUMENT**

I. **NEITHER THE SEVENTH CIRCUIT'S PRIOR DISMISSALS OF INTERLOCUTORY APPEALS UNDER § 1292(A)(2) NOR THIS COURT'S PRIOR DENIAL OF A § 1292(B) CERTIFICATION MOTION IS RELEVANT HERE**

In his Response, the Receiver points to three Seventh Circuit orders dismissing appeals arising from this receivership. *See* Response at 6 & Exhibits 1, 2, 3. Contrary to the Receiver's assertion that "[i]t is fair to consider all of those rulings as strong precedent . . . for the motion at bar," *id.*, these orders are not remotely relevant here. All three of those orders sought interlocutory appeal under 28 U.S.C. § 1292(a)(2), not § 1292(b). To be clear, FHFA is not seeking an appeal under § 1292(a)(2). Nor does FHFA contend that § 1292(a)(2) supports the appeal here. And in any event, § 1292(a)(2) is not the exclusive method of appealing an order entered in a receivership case. Instead, § 1292(a)(2) allows parties to immediately appeal certain interlocutory orders related to receiverships. As an *enabling* statute, § 1292(a)(2) does not *prohibit* appeals of interlocutory orders in receivership cases if they properly lie under § 1292(a)(1), or the collateral order doctrine, or § 1292(b). *See, e.g., Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("We have jurisdiction of the appeal under both 28 U.S.C. § 1292(a)(2) as well as § 1292(b)."); *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 330 (7th Cir. 2010) (finding appellate jurisdiction to review receiver's distribution plan under collateral-order doctrine).

The Receiver also insists that the Court's previous denial of an entirely separate § 1292(b) motion in this case (Dkt. 899) is somehow relevant to the motion for certification at issue here. Response at 7. Again, the Receiver is mistaken. As an initial matter, this Court denied that motion for certification because it was "not timely." Dkt. 899 at 9. But there is no dispute regarding the timeliness of the Motion at issue here. *See generally* Response; *see also Feit Elec. Co., Inc. v. CFL Techs. LLC*, Case No. 13-CV-09339, 2019 WL 7020496, at *3 (N.D. Ill. Dec. 20, 2019)

4

(finding the "reasonable time" standard met where "the Court issued its order on August 8, 2019 and [party] filed its motion on September 13, 2019").

Moreover, in that order, the Court also emphasized that the motion for certification failed in its attempt to "characterize their questions as pure issues of law" because "an appellate court would have to wade through an extensive factual record to evaluate whether the procedures adopted by the Court . . . and the sales resulting from those procedures were fair and reasonable." Dkt. 899 at 10-11; *see also id.* at 13. This reasoning provides context for the Court's observation "that 'appellate scrutiny [of a district court's supervision of a receivership] is narrow' and there was not a substantial likelihood that the Seventh Circuit would overturn those rulings." Response at 7 (quoting Dkt. 899 at 14). That is, the movants "recognize[d] the actions of the Court [were] grounded in 'established law,'" and "what they [sought] to challenge on appeal [was] the Court's application of the law to the facts of th[e] case." Dkt. 899 at 13.

In contrast, FHFA's Motion would not require the Seventh Circuit to evaluate a single factual issue because each of the three questions to be certified "goes to the 'meaning of a statutory … provision'" of HERA. *See In re Clearview AI, Inc. Consumer Priv. Litig.*, Case No. 21-CV-0135, 2022 WL 823855, at *1 (N.D. Ill. Mar. 18, 2022) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)); *see also* Motion at 5, 7, 8. Moreover, the issues that FHFA seeks to certify are all questions of first impression in the Seventh Circuit, not "established law." *See* Motion at 2, 8. These distinctions render this Court's rejection of the prior § 1292(b) motion irrelevant.

**II.     THE MOTION MEETS ALL FOUR REQUIREMENTS FOR CERTIFICATION UNDER § 1292(B)**

**A.     The Questions FHFA Seeks to Certify for Appeal are not Discretionary**

The Receiver argues that this Court should not certify its order for appeal because "when an issue involves discretion, a § 1292(b) motion should generally not be allowed." Response at 8. But none of the three questions FHFA seeks to certify is discretionary. Instead, each question presents an issue of statutory interpretation. *See* Motion at 5, 7, 8. It is well-established that "[t]he district court's interpretation of [a] statutory phrase . . . is, of course, purely a question of law that [the appellate court] review[s] *de novo*." *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 894 (7th Cir. 2001) (collecting cases). Therefore, none of the three questions FHFA seeks to certify would be subject to abuse of discretion review. *Contra* Response at 8-9.

**B.     FHFA Does Not Seek an "Advisory Opinion"**

The Receiver characterizes FHFA's objection to the allocation "as seeking an advisory opinion, as other critical rulings must be made before the objection even comes into play." Response at 10. If that is true for this Motion, it is equally true for the Ruling the Court entered. But, at the hearing, the Receiver invited a ruling on the HERA issues. Indeed, the Receiver's counsel argued then that "having guidance on those issues will be … useful and helpful." Ruling at 9. In light of that assertion, judicial estoppel bars the Receiver from asserting now that the issue was unripe and the Court's guidance was therefore merely "advisory."

Judicial estoppel prevents parties from "prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Airadigm*, 616 F.3d at 662 (quoting *Pegram v. Herdrich,* 530 U.S. 211, 227 n. 8 (2000)). That description fits the Receiver's change of position like a glove: Having persuaded the Court that "having guidance on [the HERA] issues will be … useful and helpful," Ruling at 9, the Receiver now argues that the

guidance the Court provided amounts to "an advisory opinion" because "none of the issues [FHFA] raises need review or consideration." Response at 10.

While "there is no formula for judicial estoppel," the Supreme Court "has identified at least three pertinent factors for courts to examine: (1) whether the party's later position was 'clearly inconsistent' with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party 'seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Airadigm*, 616 F.3d at 661 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

All three requirements of judicial estoppel are met here. First, the Receiver's position that FHFA's "objection itself can be fairly read as seeking an advisory opinion" (Response at 10) directly contradicts counsel's statement at the hearing when the oral ruling was issued (Ruling at 8-9). Second, the Receiver succeeded in persuading the Court at the hearing; the Court issued an oral ruling rejecting FHFA's objections. Ruling at 27. Third, the Receiver's current position seeks an unfair advantage: After receiving a favorable ruling at the October 17, 2022 hearing, the Receiver now implies that the order was an "advisory opinion" to avoid appellate review. This Court should not permit the Receiver to use an "intentional self-contradiction" to "pervert[] the judicial process." *Cassidy*, 892 F.2d at 641.

In any event, the HERA issues are ripe. After all, the Court's decision to issue the Ruling now, rather than waiting until the lien-priority stage of litigation, implicitly recognizes the benefit of resolving these issues at the outset. *See* Motion at 11. As FHFA argued in its Motion (*id.* at 10-11), absent interlocutory appeal, more fees will be allocated and additional funds disbursed in a series of iterative steps that each depends on the correctness of all previous steps. Getting these

7

first allocations right is therefore vitally important, as any error would propagate through the entire series, making it more difficult to correct at the end of the case rather than now. Extensive calculations would need to be erased and done over, and countless disbursements would need to be clawed back and redistributed according to the corrected calculations. The practical problems with seeking to recover and redistribute millions of dollars in cash disbursements—surely, in many instances, years after the fact—are obvious and daunting. It is far more efficient to settle FHFA's objection to the fee allocation *now*, rather than wait until the end of the litigation to recalculate the allocations consistent with HERA. To this, the Receiver offers no response.

### C. All Three Issues Involve Controlling Questions of Law

Whether the court has jurisdiction to enter an order that definitively determines FHFA's rights under HERA is a controlling, threshold issue. In response, the Receiver offers four main reasons to argue that FHFA's Motion merely "reflect[s] an issue of particularized interest to FHFA" rather than "those which will 'quite likely affect the further course of the litigation.'" Response at 9. Not one of these reasons is persuasive.

*First*, the Receiver contends that "[t]his Court's decision was based upon facts," so they cannot be questions of law. *Id.* But what the Receiver characterizes as "muddled circumstances [that] do not present clear and discrete legal issues" (*id.* at 9-10) are actually three questions of statutory interpretation. *See supra* at 5-6. Critically, these questions will not require the Seventh Circuit to assess whether "FHFA took affirmative steps to demonstrate consent" or whether FHFA had notice of the Receiver's sale of the Properties. *Contra* Response at 9.[2] Instead, FHFA only

---

[2] Specifically, the Receiver argues that "the question[] identified under Section 4617(f)" should not be "presumed to be questions of law" because "the Court relied upon a record of facts that established that FHFA took affirmative steps to demonstrate consent." Response at 9. But this is not true: The Court held that consent was not relevant to his analysis of Section 4617(f) because that provision "is jurisdictional and not something that is waivable." Ruling at 28.

8

seeks to appeal questions construing its statutory powers to collect obligations due the Enterprises and to preserve and conserve the Enterprises' assets, and interpreting the statutory protection Congress granted FHFA in its exercise of those powers. *See* Motion at 1-2.

*Second*, the Receiver asserts that "the idea that FHFA's objections involve controlling questions of law that are determinative of all of the allocation issues and distribution issues (whether as to the two properties specifically or the other properties more generally) is a wildly unsupported and inaccurate proposition." Response at 10.[3] But the Receiver is attacking a strawman here: FHFA never argued that HERA would affect other properties, other than through the iterative process. That is, FHFA merely notes that either HERA allows the allocation to the Enterprise Properties or it does not, and future allocations depend on the accuracy of prior allocations. *See* Motion at 5, 7, 8. This proposition is sufficient to demonstrate that these issues are "controlling" because their "resolution is quite likely to affect the further course of the litigation. . . ." *Sokaogon Gaming Enter. Corp., v. Tushie-Montgomery Assocs., Inc.,* 86 F.3d 656, 659 (7th Cir. 1996). But the Receiver does not substantively engage with this argument.

*Third*, the Receiver seeks to analogize FHFA's Motion to the Northern District of California's denial of a § 1292(b) motion in a different case. Response at 10-11 (citing *Banneck v. Fed. Nat'l Mortg. Assoc.,* No. 17-cv-04657-WHO, 2018 WL 5603632 (N.D. Cal. Oct. 29, 2018). The Receiver asserts that, in *Banneck*, the court determined that the motion for § 1292(b) certification "did not provide controlling questions of law because it did not involve 'fundamental inquiries like "who are necessary and proper parties, whether a court to which a case has been

---

[3] To support this proposition, the Receiver notes "that at least twenty-eight properties have had distributions occur, following agreement upon allocations, with this Court's approval, and *without* the issues FHFA now raises having been resolved." Response at 10. But, of course HERA is not relevant to fee allocations to properties that the Enterprises have no interest in. This observation has nothing to do with whether HERA issues control as to the Enterprise Property accounts.

9

transferred has jurisdiction, or whether state or federal law should be applied."'" Response at 11 (quoting *Banneck*, 2018 WL 5603632 at *2). But that is not true: The court merely provided those "examples" in a non-exhaustive list of questions of law appropriate for certification under Section 1292(b). *Banneck*, 2018 WL 5603632 at *2. Likewise, the fact that "the court noted as a grounds for denial that the motion did not take into account that the entire matter could be disposed of at the liability stage and the issues raised by FHFA would not need to be addressed" (Response at 11) is distinguishable from the case at hand. The § 1292(b) motion in *Banneck* revolved around the application of HERA provisions protecting the conservatorships from awards in the nature of penalties or fines and other forms of relief; the district court reasoned that interlocutory appeal was unnecessary because remedial issues were not before the Court given that no liability determination had yet been made. 2018 WL 5603632 at *2. Here, by contrast, costs and fees stand to be allocated now to properties in which the Conservator claims an interest. As explained in FHFA's Motion (at 10-11) and above (*supra* at 7-9), the resolution of questions regarding HERA's applicability will affect all future allocations because future allocations depend on the accuracy of prior allocations. In that sense, this case is already in the remedy phase of litigation, which distinguishes it completely from *Banneck*.

*Fourth*, and finally, the Receiver seeks to undermine FHFA's citation to three cases in its Motion. Response at 11-12. But what the Receiver highlights about these cases does not undermine FHFA's reliance on them. For instance, it is irrelevant that the *Sokaogon* court accepted the appeal under § 1292(b) because "the case [would] be over" if the court ruled in favor of the defendant on the question of law at issue. 86 F.3d at 659. Nowhere did the Seventh Circuit indicate that a question is only certifiable if it would end the litigation; indeed, the Seventh Circuit has emphasized elsewhere that "neither the statutory language nor the case law requires that if the

10

interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Likewise, while the Receiver indicates that § 1292(b) motions were denied in both *Clearview* and *Ahrenholz* (Response at 12), he does not offer any analysis of why the reasoning of those cases undermine the Motion at issue here.

In other words, the Response does not offer a persuasive counter to FHFA's argument that the three issues raised are controlling questions of law. Moreover, the Receiver does not dispute FHFA's argument that all three questions it seeks to certify for appeal are contestable for the purposes of § 1292(b). *See* Motion at 5, 7-8, 9.

## II. AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

In its Motion (at 10-11), FHFA emphasized the importance of getting the first fee allocations right: Absent interlocutory appeal, more fees will be allocated and additional funds disbursed in a series of iterative steps that each depends on the correctness of all previous steps. Rather than responding to this argument directly, the Receiver repeats that "[c]ertification does nothing to push forward the issue regarding priority over the properties. . . ." Response at 12. But this statement does not address the reality that, if HERA bars the fee allocation here, extensive calculations would need to be erased and done over, and countless disbursements would need to be clawed back and redistributed according to the corrected calculations. *See* Motion at 11.

The Receiver also points out that "there has not been any ruling yet by Magistrate Judge Kim in regards to the fee allocations to these two properties." Response at 13. That is, the Receiver argues that "where the questions raised for certification may be mooted as a result of other decisions that are yet to be made – courts recognize that the litigation will not be materially advanced by certification." *Id.* (citing *In re City of Memphis,* 293 F.3d 345, 351 (6th Cir. 2002)).

11

But *Memphis*, the case that the Receiver cites for that proposition, is irrelevant here. In that case, the Sixth Circuit considered an interlocutory appeal of an evidentiary ruling and concluded that the appellant "will pursue its defense in substantially the same manner" regardless of the outcome of the appeal. *Id.* at 351. The same cannot be said here.

Finally, the Receiver seeks to undermine the cases that FHFA relies on to define § 1292(b)'s requirement that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Response at 13-14. But the distinctions he identifies do not undermine FHFA's argument that it is far more efficient to settle FHFA's objection to the fee allocation *now*, rather than wait until the end of the litigation to recalculate the allocations consistent with HERA. *See* Motion at 10-11.

For example, the Receiver explains that "*Ahrenholz* sets forth the general rule that any ruling to certify questions must materially advance the litigation, and emphasized that all of the other factors must be also present for certification to be granted." Response at 13. FHFA agrees with this statement; and, as FHFA argued in its Motion (at 2) and above (*supra* at 1), all four factors required for certification under § 1292(b) are met here.

Similarly, the Receiver argues that *Costello v. BeavEx, Inc.*, No. 12 c 7843, 2014 WL 12775669, at *1 (N.D. Ill. Dec. 1, 2014), does not support the Motion because, "[i]n that case, the district court also granted the § 1292(b) request because of the existence of a controlling legal question." Response at 14. But, as FHFA argued in its Motion (at 5, 7, 8) and above (*supra* at 7-10), all three issues present controlling legal questions.

The Receiver also seeks to distinguish *Sterk* on two grounds. First, the Receiver notes that "the Section 1292(b) appeal was accepted [in *Sterk*] because the court was in a position to materially advance the litigation by reviewing a controlling legal question relative to" statutory

interpretation. Response at 14. But this observation only confirms that FHFA's Motion should be granted to the extent it seeks the certification of controlling legal questions related to statutory interpretation. *See supra* at 5-6. And, contrary to the Receiver's characterization of the Seventh Circuit's holding, *Sterk* did *not* "grant[] the certification petition . . . with the express belief that a decision on that issue could conclude the litigation." Response at 14. As the quotation the Receiver relies on (*id.*) makes clear, *Sterk* merely observed that "the completion of the litigation *will take longer*" if the appellate court did not review the issues raised by the § 1292(b) petition. 672 F.3d at 536 (emphasis added). The same logic applies here: If interlocutory appeal is not granted, completion of litigation will take longer if a court later determines that HERA bars the fee allocation because extensive calculations would need to be redone. Therefore, *Sterk* supports the certification of the three questions presented here.

Because it is far more efficient to settle FHFA's objection to the fee allocation *now*, rather than wait until the end of the litigation to recalculate the allocations consistent with HERA, § 1292(b) certification is appropriate here.

## **CONCLUSION**

For these reasons, FHFA respectfully asks this Court to certify three questions for immediate appeal pursuant to 28 U.S.C. § 1292(b). FHFA requests that the order contain the required language identifying the relevant legal questions and noting they are controlling questions of law to which there are substantial grounds for differences of opinion, and that an immediate appeal of those questions may materially advance the ultimate termination of the litigation.

Dated: December 7, 2022

Respectfully submitted,

/s/ Michael A.F. Johnson
Michael A.F. Johnson
ARNOLD & PORTER
   KAYE SCHOLER LLP
D.C. Bar No. 460879, *admitted pro hac vice*
601 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Michael.Johnson@arnoldporter.com

Daniel E. Raymond
ARNOLD & PORTER
   KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Daniel.Raymond@arnoldporter.com

*Attorneys for Federal Housing Finance Agency in its capacity as Conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation*

/s/ Jill L. Nicholson
Jill L. Nicholson
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
Telephone: (312) 832-4500
Facsimile: (312) 644-7528
jnicolson@foley.com

*Attorney for Federal National Mortgage Association*

/s/ Mark Landman
Mark Landman
LANDMAN CORSI
BALLAINE & FORD P.C.
120 Broadway, 27th Floor
New York, New York 10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848
mlandman@lcbf.com

*Attorney for Federal Home Loan Mortgage Corporation*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2022, I caused the foregoing **Federal Housing Finance Agency's Reply in Support of its Opposed Motion to Certify the October 17, 2022 Order For Immediate Appeal** to be electronically filed with the Clerk of the Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record.

/s/ Daniel E. Raymond