**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| UNITED STATES SECURITIES ) <br> AND EXCHANGE COMMISSION, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> EQUITYBUILD, INC., EQUITYBUILD ) <br> FINANCE, LLC, JEROME H. COHEN, ) <br> and SHAUN D. COHEN, ) <br>  ) <br> Defendants. ) | Civil Action No. 18-cv-5587 <br><br> Hon. Manish S. Shah <br><br> Magistrate Judge Young B. Kim |

**RECEIVER'S REPLY IN SUPPORT OF HIS**
**SEVENTEENTH INTERIM APPLICATION**
**AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND**
**EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Michael Rachlis (mrachlis@rdaplaw.net)
Jodi Rosen Wine (jwine@rdaplaw.net)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950

*Counsel for Receiver Kevin B. Duff*

Certain institutional lenders (the "Objectors") have once again filed objections to the Receiver's petition for payment of fees and expenses (Dkt. 1346, 1347) – this time, to the Receiver's 17th Fee Application (Dkt. 1332), covering the period from July 1, 2022 through September 30, 2022. The narratives of those objections repeat in most respects previously overruled objections to the Receiver's 14th, 15th, and 16th Fee Applications. (*Compare* Dkt. 1250, 1304, 1305, 1346) FHFA also has objected on identical grounds to its prior objections. (*See* Dkt. 1302, 1347) To the extent there are differences, the Receiver addresses them herein. Notably, and as it has done for the prior sixteen applications, the SEC indicated that it has no objection to and approves the payment of the fees set forth in the Receiver's 17th Fee Application and confirmed that such fees comply with the SEC guidelines. (*See* SEC Reply in Support of Receiver's Seventeenth Fee Application, Dkt. 1350)

Two institutional lenders, U.S. Bank and Midland, have waived their objections by agreement as to the Receiver's fees and expenses with respect to the 28 properties that were the subject of joint motions filed by the Receiver and those lenders, as well as allocations to those properties. (Dkt. 1272, 1288; *see also* Dkt. 1305 at 5-6) The Court has already entered Orders approving those fees and allocations. (Dkt. 1288, ¶ 4; 1303, ¶ 4) And, thus, the fees and allocations *relating to those 28 properties* do not require further review or approval from the Court. The Receiver has not allocated any fees with respect to those 28 properties to be paid from the proceeds from the sale of any other properties, and will credit the amounts sought pursuant to any pending or approved fee applications and consistent with the Court's prior orders and any orders approving the fees that are the subject of this application, as needed, to avoid any overpayment.

**I.  Many of the Objections Violate this Court's Prior Order by Repeating Overruled Objections Verbatim and Failing to Properly Cite to Previous Rulings.**

In an effort to create efficiencies and limit the amount of resources that the Objectors have forced others to expend to address their objections, this Court stated the following in granting the Receiver's 9th through 11th Fee Applications:

> Going forward, the Lenders are admonished that, to the extent they seek to preserve arguments the Court has already rejected, they should do so in a summary fashion that incorporates citations (with pinpoint cites) to previous filings that have thoroughly laid out the objection. And pursuant to their attorneys' duty of candor to the tribunal, *see* Am. Bar Assoc. Model R. 3.3(a)(2), the Lenders must simultaneously set forth citations to the Court's prior rulings on each argument. If the Lenders believe that an objection should be revisited in light of new facts or changed circumstances, then the Lenders must clearly set forth the reasons the Court should depart from its prior rulings. This practice will serve to redirect the resources of Receiver, the Court, and the other stakeholders in this case to the Lenders' new and potentially meritorious arguments, instead of forcing everyone to retread the same ground every few months.

Dkt. 1031 (8/17/21 Order at 12, n.32)

The Objectors' response violates (again) this direct order, repeating verbatim many of their objections relating to the 14th, 15th, and 16th Fee Applications (Dkt. 1250, 1304, 1305), failing to do so in summary fashion by incorporating citations to prior filings, failing to identify the Court's prior rulings on each argument, and again forcing the Receiver to go back and examine these matters and then report to this Court about the fact that these arguments are repetitive and they previously have been rejected. (*See, e.g.,* Dkt. 1346 at 4-5; *compare* Dkt. 1250, 1304, 1305) In response to these objections, the Receiver refers the Court to: (i) his Reply in support of the 14th Fee Application (Dkt. 1255) as his responses to those same objections (the Receiver did not file a reply to the 15th and 16th fee applications as this Court ruled on such applications before the reply was due); and the Court's order overruling all such objections to the 13th through 16th fee applications (Dkt. 1312).

## II. The Objectors Erroneously Assert that the Fees and Expenses of the 17th Fee Application Are Not within the Categories Approved by the Court.

The Objectors incorrectly assert that "[t]he Receiver requests that the Fees shown on, among other exhibits, Exhibits F and G, be paid as a first lien from the proceeds of the sales of the Properties." (Dkt. 1346 at 3) They completely ignore that the Receiver is *not* seeking to apply the receiver's lien to many of the fees included in his Seventeenth Fee Application, such as those in the deferred categories of Asset Analysis & Recovery, Case Administration, Status Reports, and Tax Issues (referred to below as "the deferred billing categories"), which is clearly stated in the Receiver's 17th Fee Application. (Dkt. 1332 at 14 (specifying "proposed allocations to properties in the Estate of fees incurred during the Third Quarter 2022 *in the Asset Disposition, Business Operations, Claims, and Distributions billing categories*") (emphasis added)) And the allocation exhibits submitted with the fee application clearly show that the tasks allocated to the properties are solely in those four billing categories. (Dkt. 1332, Exhibits K, M, N) Put another way, the Receiver already *excluded* from allocation to the properties all of the work in the deferred billing categories (95 out of 912 tasks, which exceeds 10% of all tasks).

As to the tasks the Receiver has allocated to properties in the 17th Fee Application, given that the Receivership is past the stage of managing and liquidated the properties, 85% of the tasks allocated to the properties relate to the claims process or distributions. The District Court and Magistrate Judge have found and stated on many occasions that the Receiver's claims process work is beneficial to the Receivership Estate and its claimants, including for example:

- Dkt. 1030 at 10. "A receiver also benefits secured creditors 'and merits fees from their collateral' when he 'establishe[s] the [creditors'] perfected security interest in the collateral' by 'cutting through [a] web [of claims] to determine who really [is] entitled' to it." (citing *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992))

- Dkt. 1030 at 10. "Put simply, 'if a receiver reasonably and diligently discharges his duties, he is entitled to compensation,' and 'those who benefit from a receivership should pay for that benefit.' *Id.* at 1576–77. The benefit to creditors 'may take more

subtle forms than a bare increase in monetary value.'" *Gaskill*, 27 F.3d at 253 (quoting *Elliott*, 953 F.2d at 1577).

- <u>Dkt. 1030 at 13</u>. "By developing and implementing the summary claim-priority adjudication process, the Receiver has conferred a similar benefit here [on the secured creditors], regardless of which claimant is determined to be the first-priority secured lienholder at the end."

- <u>Dkt. 1184 at 2</u>. "The Institutional Lenders take the position that each itemized charge must have specifically benefited the subject property. While the court agrees that interim payments should be satisfied from appropriate accounts, the court will not demand mathematical precision or clear and convincing evidence when assessing whether the allocations are reasonable. The court finds that having a single Receiver work to systematically unravel the estate benefits all creditors."

- <u>Dkt. 1213 at 5</u>. "And the Receiver continued to negotiate with stakeholders, respond to claimants' communications, and identify, compile, review, and organize claims submitted by creditors in order to facilitate the summary claim-priority adjudication process. *See, e.g.,* [Dkt. 1026, 12th Appl.,] at 9–10. The Court therefore finds that the Receiver's efforts have benefited and will continue to benefit the Receivership Estate."

- <u>Dkt. 1258 at 5</u>. "[T]he court has already determined that: (1) an interim payment of reasonable fees is appropriate to compensate the Receiver for services rendered and expenses incurred with respect to the Management and Claims Activities; (2) such fees should be paid from the sales proceeds of the properties; and (3) the Receiver's lien imposed for that purpose should take priority over the various secured creditors' interests in each property. (See generally R. 1030.)"

- <u>Dkt. 1312 at 2</u>. "And the Receiver has continued to negotiate with stakeholders, respond to claimants' communications, and identify, compile, review, and organize claims submitted by creditors in order to facilitate the summary claim-priority adjudication process. The Receiver has continued to … maintain and improve the Master Claims Exhibit. The Receiver's efforts have benefited and will continue to benefit the Receivership Estate."

As to distribution work, the Mortgagees concede they have no objections as to distribution tasks in the 17th Fee Application. (*See* Dkt. 1346 at 5-6) Their anticipatory objection as to the Receiver's future distribution work should be overruled on the grounds it is purely speculative and

4

does not identify any tasks to which it relates.[1] (*Id.* at 5) But, even if it were an appropriate time to raise this objection, it also ignores and does not address this Court's prior rulings that the Receiver's distribution efforts have benefited and will continue to benefit the Estate. (*See, e.g.,* Dkt. 1312 at 2 ("This case is complex, requiring the Receiver and his counsel to preserve, manage, sell, *and distribute the proceeds*…. The Receiver's efforts have benefited and will continue to benefit the Receivership Estate.") (emphasis added)); *see also id.* ("The court previously rejected as 'too narrow' the Mortgagees' apparent understanding 'that the first-priority lien is not applicable except when the Receiver's activities directly involve real estate transactions concerning the subject properties or managing the claims process.'") (quoting Dkt. 1213 at 6-7)) *See also* Section I, *supra*.

### III. The Specific Objections Made by the Objectors Should Be Overruled.

The Receiver next addresses below the objections, grouped by the Objectors as "red" or "yellow." (Dkt. 1346 at 4-5) While the Objectors have highlighted certain billing entries in their exhibits, they fail to identify the narrative objections to which they correspond and they fail to acknowledge that the Court has previously overruled similar objections on earlier fee applications. *See* Section I, *supra*; *see also* Dkt. 1031 at 11 n.31 (Court order making clear that objections as to requested fees should be particularized).

---

[1] Further, the Receiver will respond to any such objection, if made, when it is ripe for determination. Suffice it to say, however, efforts by the Receiver to distribute money to claimants is the culmination of the claims process, a fundamental goal of the claimants (*i.e.,* to receive money from the Receiver for their claims), and, thus, an obvious benefit provided by the Receiver. *See, e.g., SEC v. Elliott*, 953 F.2d 1560, 1577 (1992) (citing *Donovan v. Robbins*, 588 F. Supp. 1268, 1273 (N.D. Ill. 1984) (the district court awarded the receiver a fee simply *for determining how much money to release to a creditor*)) (parenthetical in original; emphasis added); *see, e.g.,* Dkt. 1030 at 10 (citing *Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994) (quoting *Elliott*, 953 F.2d at 1577)).

**A.      The Court Should Overrule the Objectors' "Red" Objections as They Are Unspecific, Baseless, and Ignore the Nature of the Receiver's Allocation Requests.**

The Objectors offer various bulleted objections in their "red" category on the grounds that these fees "are not covered by either of the Court-Approved Priming Lien Categories." (Dkt. 1346 at 4)  For the reasons discussed, each should be overruled.

**Notice-related tasks** (Dkt. 1346 at 4, first bullet).  As with prior objections, this objection is a straw man.  First, the objectors do not identify any particular task associated with their notice-related tasks objection.  The Objectors' failure to specifically reference in their narrative the tasks from the invoices that correspond to their objection results in a waste of the Court's and the Receiver's time.  There is no legitimate reason that they could not have identified each task subject to this objection by date, billing category, timekeeper, and description.  The failure to do so leaves the Receiver to attempt to comb through scores of invoice pages to search for tasks that might align with their objection.  This deficiency violates the Court's clear admonition against objections that fail to provide such specificity.  (*See, e.g.,* Dkt. 1031 at 11 n.31)

Second, the objection ignores the benefit to all claimants of notice provided to current and potential claimants in terms of due process and in ensuring that late claims do not undermine or disrupt the claims process. (*See also, e.g.,* Dkt. 1244 at 13; Dkt. 1299)  Further, there is only *one task* objected to in the allocated billing categories in the 17th Fee Application that references giving notice of the Receiver's appointment (Dkt. 1346, Ex. B, RDP July 2022 invoice at p. 9), but providing such notice is clearly work related to the preservation of Estate assets and implementation of the claims process, and thus beneficial to the claimants, irrespective of which among them ultimately has priority.[2]  (Dkt. 1244 at 13; Dkt. 1299)

---

[2] In regards to this particular objection, 11 lawyers, representing no less than 12 institutional lenders signed on to this "notice" objection, which relates to a $56 paralegal task allocated to a single property against which only one of them has a claim.

**Locating and preserving records** (Dkt. 1346 at 4, second bullet). The Objectors' objection about tasks relating to locating and preserving records is similarly wasteful and meritless. The Court has previously ruled that "[t]he Receiver has continued to locate and preserve Equitybuild records…. The Receiver's efforts have benefited and will continue to benefit the Receivership Estate." (Dkt. 1312 at 2) The words "locate" and "preserve" do not appear in any task description allocated to the properties in the 17th Fee Application for which there is an objection. The Receiver thus has no idea what the Objectors are referring to with this objection.

**Factual investigation** (Dkt. 1346 at 4, third bullet). The Objectors' third bullet objection, about factual investigations relating to claims against professionals, remains mysterious as to what tasks are at issue. Nowhere has the Receiver suggested that his work to investigate or bring claims against EquityBuild professionals should be paid from the properties pursuant to the receiver's lien. So far as the Receiver can determine from the Objectors' "red" objections, there are no tasks allocated by the Receiver to any of the properties that actually correspond to this objection.

**Tax issues** (Dkt. 1346 at 4, fourth bullet). This objection is also misplaced and also suffers from a failure to specify the tasks corresponding to the objection. The only instance the Receiver could locate in the Objectors' exhibits that might correspond to their objection were entries in the Tax billing category. But nowhere has the Receiver suggested that his work with respect to tax issues in the 17th Fee Application falls within the categories that this Court has ruled can be paid from the properties pursuant to the receiver's lien. (*See* discussion, *supra*, at 3 (confirming billing categories that are subject of the Receiver's request for application of the receiver's lien))

**Creditor inquiries** (Dkt. 1346 at 5, penultimate bullet). The Objectors' creditor inquiries objection fails to provide any explanation why creditor inquiries are unrelated to the claims adjudication process. Again, they provide no specific examples. But, regardless, the objection

should be overruled because the Court has already found that such work provides a benefit and should be paid from property sales proceeds pursuant to the receiver's lien. (*See, e.g.,* Dkt. 1312 at 2 (finding that the Receiver's efforts in negotiating with stakeholders, *responding to claimants' communications*, and identifying, compiling, reviewing, and organizing claims, and maintaining and improving the Master Claims Exhibit have benefited and will continue to benefit the Receivership Estate); Dkt. 1213 at 5 (finding that he Receiver's *communications with claimants* have benefited and will continue to benefit the Receivership Estate) (citing Dkt. 1026, at 9-10); Dkt. 1258 at 5 (determining that allocated fees relating to claims management should be paid from the sales proceeds of the properties on a priority basis over secured creditors' interests the properties) (citing generally Dkt. 1030); *see also* Sections I & II, *supra*)

**Insufficient detail** (Dkt. 1346 at 5, last bullet). The Objectors' final red objection that the task descriptions lack sufficient detail similarly should be overruled. Ironically, the objection itself lacks detail, and should be rejected on that basis alone; it does not even identify a single task that supposedly lacks sufficient detail. (*See, e.g.,* Dkt. 1031 at 11 n.31) But the task descriptions provide sufficient detail, including without limitation for each task who performed it, the nature of the task, the length of time devoted to the task in tenth of an hour increments, and the billing category. In addition, the SEC has reviewed the invoices in the Receiver's 17th Fee Applications, approved the payment of the fees set forth therein, and confirmed that such fees comply with the SEC billing guidelines. (*See* Dkt.1350) Each task description also specifically identifies the property(ies) to which the task related or whether the task is deferred (and not sought to be allocated to any property pursuant to the receiver's lien). (*See also* Dkt. 755, at 23-24; Dkt. 1105, Ex. 5; Dkt. 1182, at 8-14 (describing additional information available to determine the appropriateness of the allocations)) The objection also ignores that the presentation of task

descriptions and detail included in them has been consistent throughout this receivership – in fact, the nature and presentation of task descriptions has increased in detail as the receivership has progressed – and the Court has consistently approved every fee application that it has ruled on, despite previous similar objections. (*See again* Section 1, *supra*)

> **B.** **The Court Should Overrule the Objectors' "Yellow" Objections for Tasks that Do Not Involve Avoidance Work.**

The only objection offered for the "yellow" objections is that fees incurred "to litigate" Group 1 claims should not be paid at this time. (Dkt. 1346 at 5) Because the Objectors have repeated verbatim the same objection relating to the 14th, 15th, and 16th Fee Applications (Dkt. 1250 at 9, 1304 at 6, 1305 at 5), and the Court ruled on the 15th and 16th Fee Applications prior to the date that the Receiver's reply was due for those applications, the Receiver refers the Court to his Reply in support of the 14th Fee Application which previously responded to the same objection as his responses to this same objection. (*See* Dkt. 1255 at 9-10) *See* Section I, *supra.*

The Objectors also have made no effort to address the Receiver's position that their objection ignores that much of the work undertaken by the Receiver and his counsel represented efforts to administer and facilitate the claims process, including communications with claimants, updating the Master Claims exhibit, and was not work undertaken to litigate claims. (Dkt. 1332 at 8-10; *see also* Dkt. 1312 at 2 (approving claims administration work); *see also* Section II, *supra*) In fact, because the disputed claims process with respect to the Group 1 properties has concluded (other than the Court ruling on the positions and issues presented) (*see, e.g.,* Dkt. 1229), the Receiver's work during the period covered by the 17th Fee Application, with the possible exception of a late claim received, is not "time spent litigating the Group 1 claims," as the Objectors suggest. (Dkt. 1346 at 5) The Court has itself noted that the benefits provided by the

Receiver may take subtle forms and are not limited to financial benefits. (*See, e.g.,* Dkt. 1030, at 10-14; *Elliott*, 953 F.2d at 1577)

A significant amount of the work relating to the Group 1 claims process involved administration and facilitation of the process, which should be recoverable now. Such work has provided benefits to all claimants, regardless of the outcome of the priority dispute. And, while the Court indicated last year that the amount due the Receiver for his work on Group 1 claims should wait until determination of Group 1 claims was ripe, that time is now because apart from the Court's anticipated ruling most if not all of the Receiver's claims work with respect to Group 1 is complete  There is no reason to delay payment for such work at this time pursuant to the receiver's lien. By contrast, the Receiver agrees that work on an avoidance disclosure should properly be deferred until after the Court rules on the Group 1 priority dispute, but there was no work on an avoidance disclosure during the period covered by the 17th Fee Application.[3]

**IV.    The Court Should Overrule Objections to the Receiver's Allocations Because the Receiver's Allocations Comply with the Court's Prior Orders on Allocation.**

The Receiver references his Reply in support of his 14th Fee Application. (Dkt. 1255, at 11-12)

**V.    The District Court Need Not and Should Not Refer the Receiver's 17th Fee Application Allocations to Magistrate Judge Kim.**

The Receiver recognizes that this Court has recently referred the allocation issues for the 14th-16th Fee Petitions to the Magistrate Judge. This Court (Judge Lee) had previously noted that the Receiver could provide materials to the Court such that a referral of the allocation issue could be avoided. (*See* Dkt. 1213 at 8 n.3)  The Receiver has provided such materials to this application,

---

[3] If the Court rules that Group 1 allocations other than as pertain to work on an avoidance disclosure are approved for payment now pursuant to the Receiver's lien, the Receiver will sub-divide the Group 1 allocations in accordance with the Court's ruling.

and references his Reply in support of his 14th Fee Application for further support.  (Dkt. 1255, at 12-13)

**VI.    The Receiver Recommends Against Any Holdback.**

The Court has previously found that the Receiver's 9th-16th Fee Applications are subject to a 20% holdback, and further indicated that "if the Receiver seeks to pay fees approved by this order from the sales proceeds of *encumbered* real estate, then the amount the Receiver is entitled to draw is subject to an additional 20% holdback."  (Dkt. 1031, at 14; Dkt. 1213 at 9; Dkt. 1312 at 4)

The Objectors request that the 17th Fee Application be subject to the same holdback orders.  (Dkt. 1346 at 6-7)  But the Objectors have only objected to 16.5% of the total hours reflected in the 17th Fee Application.  In other words, the Objectors are asking the Court to holdback an amount that exceeds the amount of the fees to which they object.  On this basis alone, the Receiver believes that a 20% holdback is too high.

For the same reasons set forth in his reply to objections on the 12th, 13th, and 14th Fee Applications (Dkt. 1206, at 4-7; Dkt. 1207 at 9-11; Dkt. 1255 at 13-15), the Receiver requests that the Court not apply any holdback relative to the 17th Fee Application; but, if the Court deems it appropriate, that any cumulative holdback not exceed 20%.

As previously noted, the Receiver and his firm have provided significant rate discounts which equate to a substantial savings, which is equally applicable to the invoices submitted in connection with the 17th Fee Application.  The following Table reflects the extent of this discount during the third quarter of 2022:

| Time Keeper | Value of Total Hours at Standard Rate | Value of Total Hours at Discount Rate | Value of Difference |
|---|---|---|---|
| K. Duff | 36,725.00 | 22,035.00 | 14,690.00 |
| M. Rachlis | 17,875.00 | 10,725.00 | 7,150.00 |
| E. Duff | 30,420.00 | 19,773.00 | 10,647.00 |
| J. Wine[4] | 104,040.00 | 45,084.00 | 58,956.00 |
| K. Pritchard | 18,675.00 | 11,620.00 | 7,055.00 |
| A. Watychowicz | 14,737.50 | 9,170.00 | 5,567.50 |
| J. Rak | 30,172.50 | 18,774.00 | 11,398.50 |
| S. Zjalic | 342.00 | 198.00 | 144.00 |
| **TOTALS** | **$ 252,987.00** | **$ 137,379.00** | **$ 115,608.00** |

In addition, in Q3 2022, the Receiver and RDP devoted more than 340 hours to billing review efforts and the submission and defense of fee applications and allocations (referred to as "Billing Hours") (valued at $77,506.00, at the discounted rates), none of which is included in the submitted invoices.[5] If the amounts sought by the invoices in the 17th Fee Application are considered in the context of the discounts and unbilled time already applied, the inequity of what would be an additional 40% holdback is laid bare. The following Table summarizes the primary discounts and unbilled time discussed above:

---

[4] The Receiver has been voluntarily providing an additional discount to the rate for attorney Jodi Rosen Wine's time. Whereas her standard hourly rate is $600, and the rate approved by the Court for attorneys of her experience is $390, the Receiver has been further discounting her rate to $260.

[5] The Receiver has not requested such compensation, but fees in this regard may be appropriate. *See, e.g., F.T.C. v. A1 Janitorial Supply Corp.*, No. 17-cv-7790, 2020 WL 887386, *6 (N.D. Ill. Feb. 24, 2020) (approving 3% of the total fee application for preparation of straightforward applications in an action involving simple legal issues, and noting that some courts have approved up to 5%). At a minimum, in determining whether a holdback is fair, reasonable, and necessary, the Receiver requests that the Court consider this issue and the discount already provided.

| Rate Discount | Billing Hours | Total Discount & Unbilled Time | Total Fees in 17th Fee Application | % Reduction Already Applied |
|---|---|---|---|---|
| $115,608.00 | $77,506.00 | $193,524.00 | $137,379.00 | 58% |

As this chart evidences, any additional holdback only magnifies the financial impact. It also shows that there is no windfall nor any appearance of a windfall. To add yet an additional 20-40% holdback, as the Objectors have requested, would be even more onerous and inequitable under the circumstances described above. For all of these reasons, and those set forth in his reply in support of the 12th, 13th, and 14th Fee Applications (Dkt. 1206, at 4-7; Dkt. 1207 at 9-11; Dkt. 1255 at 13-15), the Receiver respectfully recommends and requests that the Court not apply any holdback, but if one is applied, that such holdback not be greater than 20% in total for fees paid from property accounts.

## VII. The Court Should Overrule FHFA's Objection.

FHFA also has objected on virtually identical grounds to its prior objections. (*See* Dkt. 1302, 1347) FHFA's objections should be overruled for the reasons set forth in this Court's Order overruling FHFA's objection (Dkt. 1325), Magistrate Judge Kim's Order overruling its objection (Dkt. 1257, 1258), as well as the reasons set forth in the Receiver's previous responses in opposition to FHFA's objections (Dkt. 1230 at 28-32; Dkt. 1275).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Receiver's prior fee applications, the supporting briefs filed by the SEC and the Receiver, and in the Receiver's motion for approval to pay certain previously approved fees and costs, as well as this Court's prior rulings on fees and fee allocations, the Receiver respectfully requests that the Court exercise its discretion to:

(i) find that the Receiver has preserved, enhanced, or otherwise benefited the properties and the claimants in connection with the work performed and expenses incurred as reflected in the 17th Fee Application;

(ii) approve the Receiver's 17th Fee Application and payment of all fees and expenses described therein out of the funds in the Receiver's account, including as to any such future funds that come into the Receiver's account;

(iii) impose a first priority receiver's lien on the properties and proceeds of sale to satisfy certain receivership expenses, as set forth in Exhibits K-N to the 17th Fee Application; and

(iv) grant such other relief as the Court deems equitable and just.

Dated: December 7, 2022  Respectfully submitted,

Kevin B. Duff, Receiver

By: /s/ Michael Rachlis
Michael Rachlis (mrachlis@rdaplaw.net)
Jodi Rosen Wine (jwine@rdaplaw.net)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2022, I electronically filed the foregoing **Receiver's Reply in Support of His Seventeenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net