UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>　　　　Defendants. | Case No. 1:18-cv-5587<br><br>Hon. Manish S. Shah |

**MORTGAGEES' RESPONSE TO RECEIVER'S EIGHTEENTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

The Mortgagees identified on Exhibit A object to the Receiver's Eighteenth Interim Fee Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (Dkt. 1384, the "18th Fee Petition") on the same or similar bases contained in their prior objections, which objections this Court has denied. They also object generally to the Receiver's request in his 18th Fee Petition for a super priority lien for the same reasons contained in Mortgagees' Response to Motion for Approval to Pay Certain Previously Approved Fees and Cost (Dkt. 961), and their Objections to Magistrate Judge Kim's Oral Ruling and Minute Order on Receiver's First Fee Allocation Motion (Dkt. 1389, objecting to Dkt. 1107, *see also* line-level objections at Dkt. 1210). The Court permitted a priming lien only with respect to fees incurred in "(i) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate, and (ii) the implementation and management of an orderly summary claim-priority adjudication process." (Dkt. 1030, p.2, the "Court-Approved Priming Lien Categories").

While preserving the above objections, the Mortgagees further object to the Receiver's request that fees and expenses shown on Exhibits F through I of the 18th Fee Petition (the "Fees") be paid on a first priority basis from the proceeds of the sale of certain Receivership real properties (the "Properties") (Dkt. 1332, pp. 13-15) to the extent that they are not covered by the Court-approved Priming Lien Categories. If Mortgagees' objections are not sustained in full, the Mortgagees request that the Receiver's request for a priority lien and his allocations be referred to Magistrate Judge Kim because the Mortgagees' similar objections in response to the Receiver's Second Motion for Approval of Allocations of Fees to Properties for Payment Pursuant to Receiver's Lien (Dkt. 1321) will be pending before Magistrate Judge Kim (see Dkt. 1381, objections due April 14, 2023, hearing set for June 15, 2023).

Finally, the Mortgagees request a 20% holdback of Fees requested in the Receiver's 18th Fee Petition and an additional 20% holdback on the payment of Fees that would be paid from the property-specific accounts rather than the Estate's operating account for the same reasons contained in earlier objections and which the Court consistently and expressly applied until its ruling (Dkts. 1366, 1372) on the Receiver's Seventeenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (Dkt. 1332, "17th Fee Petition"). As to the 17th Fee Petition, the Court stated it was continuing the holdback, and for the same reasons it did so before, but in its Order, the Court only expressly referenced one holdback instead of the two it historically implemented. The Court stated:

> The 20% holdback, which this court continues, should cover the prospect of revisiting the Seventeenth Application without adding to delay or the items on Magistrate Judge Kim's plate. The court understands the Receiver's point about the discounted rates and unbilled time, but continues to believe a holdback is in the best interest of administration here. There remain issues that would be difficult to unwind once money goes out the door, and the holdback provides some hedge against that complexity down the road. For

097077.000109 4865-0526-0628.1

> those reasons and the ones stated in the court's orders granting the earlier fee applications, the 20% holdback continues.

Dkt. 1366 at p.2. As discussed in more detail below, the Institutional Lenders respectfully request that the Court clarify in its ruling on the 18th Fee Petition that it intends for both holdbacks to apply for the same reasons it previously imposed them.

## BACKGROUND

1. The Mortgagees generally refer the Court to the Background section of their Response to Receiver's Fourteenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (Dkt. 1250, pp. 2-6).

2. As additional background here, on February 14, 2023 the Receiver filed his 18th Fee Petition. Dkt. 1384.

3. By order on February 15, 2023, the Court required Mortgagees to file responses or objections, if any, to the 18th Fee Application by March 1, 2023. Dkt. 1385.

4. The Court's ruling on the 17th Fee Petition was substantially the same as prior rulings except it did not refer allocation issues to Magistrate Judge Kim, instead granting the Receiver's proposed allocation, and did so over the Institutional Lenders' objection that the Receiver be paid for approved fees from the Estate's operating account instead of the property-specific accounts constituting the secured properties' sale proceeds. *See* Dkt. 1371.

5. Pursuant to the Court's Order, Dkt. 1031 at p.12, n.32, to the extent the Mortgagees are reasserting prior objections, they do so below in "summary fashion that incorporates citations (with pinpoint cites) to previous filings that have laid out the objection."

3

**I.     The Mortgagees Assert The Same Objections To The Receiver's 17th Fee Petition As They Asserted To The Receiver's Prior Fee Applications.**

The Mortgagees adopt and assert their objections to the Receiver's prior fee petitions (Dkts. 1346, 1305, 1210, 1188, 1181, 1039, 1000, 960, 792, 777, 648, 617, 595, 581, 509, 438) to the Receiver's 18th Fee Petition, to preserve those objections by incorporating them by reference into this response. The Mortgagees also adopt the objections stated in the January 4, 2023 submission to chambers by Brett Natarelli noting the new availability of Estate funds in the operating account in sufficient amount to support most if not all of the Receiver's fee requests and the legal bases for why that would be more appropriate than a property surcharge (which objections the Court rejected, but characterized as "narrow and understandable," Dkt. 1371).

Therefore, all of the Receiver's requested fees should be paid from the general operating account first before any fees are allocated to a specific property. This is consistent with the purpose of the Receiver's priming lien, which was awarded when the Estate lacked sufficient funds in the general operating account (Dkt 1031, p.5-6). Now that the general operating account has sufficient funds to cover all or nearly all of the Receiver's fees, those amounts should be paid from the operating account before the any amounts are paid from the encumbered sale proceeds. The Estate's general operating account should now have in excess of $3 million as a result of funds previously on hand (Dkt. 1384, page 28, $1,162,254.69 on hand as of Feb. 14, 2023 and not including the recent settlement) and in excess of $2,952,000 from the settlement with EquityBuild's accountants (Dkt. 1359) with additional settlements remaining possible due to pending actions the Receiver is pursuing for benefit of the Estate.

**II.    The Receiver Has Failed to Show That His Fees and Expenses in His 18th Fee Petition Fall Within the Court-Approved Priming Lien Categories.**

The Receiver requests that the Fees shown on, among other exhibits, Exhibits F and G, be paid as a first lien from the proceeds of the sales of the Properties. The Receiver also attaches

4

summaries and compilations of the same information provided with more detail in Exhibits F and G, and an allocation summary at Exhibit J, with more detail on the general property-specific allocations at Exhibit K and detail on the property-specific allocations at Exhibits L and M. *See* Dkt. 1384, p.14 n.3. Therefore, the line-item specific objections are presented by Mortgagees only as to Exhibits F and G but also apply to the proposed allocations.[1]

The Receiver's narrative in his 18th Fee Petition of the services furnished during the period covered by the 18th Fee Petition shows that several of those services are not covered by the Court-Approved Priming Lien Categories or, to the extent that they are covered, otherwise should not be paid as a priority lien, as discussed below. Although the Receiver may have invoiced the Fees in accordance with SEC billing protocols, such compliance alone does not establish that they fall within the Court-Approved Priming Lien Categories.

The Mortgagees have color highlighted sample entries on the Receiver and his attorneys' monthly invoices (Exhibits F and G to the 18th Fee Petition) to illustrate Fees that should not prime their liens, a copy of which is attached as Ex. B. The bases of these specific objections are as follows:

*First,* Fees that are not covered by the either of the Court-Approved Priming Lien Categories are highlighted in RED. These include:

- o Fees incurred to give notice of the Receiver's appointment to individuals or entities which have been identified as potentially possessing property, books, or records of the Receivership Defendants (Dkt. 1384, p.7) for reasons stated in objections to

---

[1] The Receiver represents that he does not seek distribution from a priming lien as to the Asset Analysis & Recovery, Case Administration, Status Reports and Tax Issues categories. Dkt. 1353 at p.3. Accordingly, to the extent items in those categories are highlighted in red on Exhibit B, the purpose of such highlighting is to preserve Mortgagees' objections to those items being allocated in any future allocation motion.

prior fee petitions (*see, e.g.*, Dkts. 1346, 1305, 1210, 1188). As example, see Exh. B, p. 60 ("telephone conference with class counsel regarding claim data for settlement of class action and related follow-up correspondence regarding notice to claimants" which the Receiver acknowledges should be deferred rather than allocated to properties).

- o Fees incurred in efforts to locate and preserve records (Dkt. 1384, p.7) for reasons stated in objections to prior fee petitions (*see, e.g.*, Dkts. 1346, 1305, 1210, 1188).

- o Fees incurred for the "factual investigation" (Dkt. 1384, p. 7) to the extent reflected on Exhibits F and G (the Receiver represents he is not seeking a priming lien as to four specific lawsuits against EquityBuild professionals, *see* Dkt. 1384 at p.6) because such activities do not fall within either of the two Court-Approved Priming Lien Categories. As example, *see* Exh. B., p. 32 ("Confer with A. Watychowicz regarding responses to various subpoenas to third parties and updating spreadsheet tracking same") which the Receiver acknowledges should be deferred rather than allocated to properties.

- o Fees incurred with respect to tax issues (Dkt. 1384, pp. 7-8) have no relation to the two Court-Approved Priming Lien Categories.

- o Fees incurred to calculate amounts owed to the Receiver (Dkt. 1384, p.5) or to restore funds to properties because of the Receiver's commingling of property rents, income and expenses (see fuller discussion of objection at Dkt. 1389, pp. 9-10) have no relation to the two Court-Approved Priming Lien Categories. As example, see Exh. B, p. 10 ("Exchange related correspondence with J. Wine and

        M. Rachlis regarding draft restoration and reimbursement motion and summary accounting information").

- o Fees incurred to address creditor inquiries or general review of claims (Dkt. 1384, pp. 9-11) fall outside the scope of the Court-Approved Priming Lien Categories. As example, see Exh. B, p.3 ("Exchange correspondence with A. Watychowicz and J. Wine regarding responses to claimant inquiries relating to claims process and timing" allocated to "all" properties). The Receiver has failed to show that they were incurred with respect to preservation, management or disposition of properties or the management of the claims adjudication process. *See also* arguments at Dkt. 1389, pp. 10-11

- o Fees incurred to collect fees on FHFA properties which FHFA opposes, and related fees in preparing appellate and other filings opposing FHFA on that issue. As example, see Exh. B, p.75 ("Work on motion to dismiss appeal") which the Receiver purports to allocate to the two FHFA properties, 1131 E 79th and 7024 Paxton.

- o Entries that lack sufficient detail to show that they should be paid as a priming lien, or that allocate to inappropriate properties, should not be paid as part of the Receiver's priming lien. As example, see Exh. B, p. 4 ("Exchange correspondence with A. Watychowicz regarding communication with representative of deceased claimant regarding claim" allocated to *all* properties despite involving, apparently, a single deceased claimant).

*Second,* Fees incurred to litigate Group 1 claims (Dkt. 1251, p.10) are not payable at this time through a priming lien. The Court has ruled that whether the time spent litigating the Group

7

1 claims could be paid from a priority lien would be determined as part of the claims adjudication process which only recently concluded. (Dkt. 1030, p. 14, n.7.) Examples are highlighted in YELLOW.

*Third,* the Mortgagees object to the "Distributions" category on the same grounds stated in its objections to the 17th Fee Petition (Dkt. 1346 at pp. 5-6). Examples are highlighted in ORANGE.

### III. The Receiver's Proposed Allocations Should be Referred to Magistrate Judge Kim or, in the Alternative, Mortgagees' Objections Should be Sustained

The Court previously referred the Receiver's Fee Allocation Motion to Magistrate Judge Kim for disposition. (Dkt. 1112). The Mortgagees filed a detailed response. (Dkt. 1210). Magistrate Judge Kim held hearings on February 8 and 10, 2023, overruling all of the objections. (Dkt. 1381). The Mortgagees request that the Court refer the Receiver's request that the tasks shown on his exhibits be approved as a priming lien to Magistrate Judge Kim for the same reasons that the Receiver's Fee Allocation Motion was referred to Judge Kim and to foster uniformity. Mortgagees made the same request as to the 17th Fee Petition, and this Court denied that request. Dkt. 1366, 1371. In the alternative to referral, the Mortgagees respectfully request that the Court decline to refer and instead enter an order sustaining Mortgagees' Objections for the reasons stated in their Objections to Magistrate Judge Kim's Oral Ruling on Receiver's First Fee Allocation Motion (Dkt. 1389).

### IV. The 18th Fee Application Should Be Subject To A 20% Holdback on all Fees and an Additional 20% Holdback on All Fees to be Surcharged to the Secured Properties.

Consistent with the Court's order approving the Receiver's ninth, tenth, and eleventh fee petitions (Dkt. 1031, pp. 13-14), twelfth fee petition, (Dkt. 1213, p. 9), and fee petitions thirteen through sixteen (Dkt. 1312, pp. 3-4), the Mortgagees respectfully request that the Court require any approved fees be subject to "a holdback of 20% of the fees (but not expenses) requested in the

8

applications, and an additional 20% holdback on any fees to be paid from the sales proceeds of encumbered real estate" as the Court previously held. Dkt. 1312, p.4 (Order on Petitions 13-16).

That Order was the last time the Court addressed the holdback issue in substantial detail. In the Court's order overruling all objections to the 17th Fee Petition, but maintaining at least one holdback, the Court did not offer new reasoning or state that it was making a change, but instead referred back to the reasoning of its earlier rulings, suggesting it intended to maintain the holdback status quo of 20% holdback on all approved fees and additional 20% holdback as to property surcharges. Dkt. 1366 at p.2 ("For those reasons and the ones stated in the court's orders granting the earlier fee applications, the 20% holdback continues.").

Certain Mortgagees' counsel, Messrs. Napoli and Natarelli, conducted a meet and confer with the Receiver's counsel Jodi Wine on Thursday, February 23, 2023. Ms. Wine stated it is the Receiver's position that, via Dkt. 1366, the Court imposed only one 20% holdback as to the 17th Fee Petition, and no others. Mortgagees disagree with that position for the reasons stated above and respectfully request that, if the Court approves the fees requested in the 18th Fee Application, then any approved fees should be subject to the same 20% holdback on all fees and additional 20% holdback on any fees allocated for surcharge to the property-specific accounts ordered in Dkt. 1312 as to fee petitions 13-16. In further support of this request, the Mortgagees incorporate by reference their requests for a 20% holdback contained in the Mortgagees' objections to the Receiver's ninth, tenth and eleventh fee applications (Dkts. 907, pp.10-12, 960, pp. 12-14, and 1000, pp. 11-13). The Receiver in reply generally incorporates his prior arguments on that topic (*see* Dkt. 1332 at p.15, Dkt. 1255 at pp. 13-15, Dkt. 1293 at 15) and Mortgagees do the same (*see* Dkt. 1250 at pp. 10-12).

# CONCLUSION

Consequently, the Mortgagees request that the Court deny the Receivers 18th Fee Application on the grounds raised in their objections to the Receiver's prior fee applications. If the Fees are approved, the Mortgagees request that only those Fees that are covered by the Court-Approved Priming Lien Categories can be paid as part of the Receiver's priming lien and that the Court refer the determination of issue of priority and allocation to Magistrate Judge Kim or sustain Mortgagees' Objections for the reasons detailed in Dkt. 1389 and oral arguments made on the record (*see* Dkt. 1387-1388) before Magistrate Judge Kim as to the Receiver's First Allocation Motion (Dkt. 1107). They further request that any approved fees be subject to a 20% holdback and that any payment of approved fees from property-specific accounts be subject to an additional 20% holdback.

Dated: March 1, 2023                        Respectfully submitted,

| /s/ Brett J. Natarelli | /s/ Ronald A. Damashek |
|---|---|
| Edward S. Weil (eweil@dykema.com) Michael A. Gilman (mgilman@dykema.com) Todd Gale (tgale@dykema.com) Brett J. Natarelli (bnatarelli@dykema.com) Kevin Connor (kconnor@dykema.com) Dykema Gossett PLLC 10 S. Wacker Drive, Suite 2300 Chicago, Illinois 60606 (312) 627-5675 *Counsel for Federal Home Loan Mortgage Corporation Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series* | Ronald Damashek (rdamashek@dickinsonwright.com) Dickinson Wright PLLC 55 West Monroe Street — Suite 1200 Chicago, Illinois 60603 Ph: (312) 377-7858 Fax: (312) 423-8160 *Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB14; Midland Loan Services, a Division of PNC Bank, National Association; Thorofare Asset Based Lending REIT Fund IV, LLC; and Liberty EBCP, LLC* s/ Jill L. Nicholson Jill L. Nicholson (jnicholson@foley.com) Andrew T. McClain (amcclain@foley.com) Foley & Lardner LLP 321 N. Clark St., Ste. 3000 |

| | |
|---|---|
| *2014-LC16; Wilmington Trust, National Association, as Trustee for the Registered Holders of UBS Commercial Mortgage Trust 2017-C1,Commercial Mortgage Pass-Through Certificates, Series 2017-C1; Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; Federal National Mortgage Association; U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30 Sabal TL1 LLC; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Benefit of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Registered Holders of Corevest American Finance 2017-2 Trust, Mortgage Pass-Through Certificates, Series 2017¬2; BC57, LLC; UBS AG; 1111 Crest Dr., LLC, Pakravan Living Trust, Hamid Ismail, Farsaa, Inc.; Thorofare Asset Based Lending REIT Fund IV LLC* | Chicago, IL 60654<br>Ph: (312) 832-4500<br>Fax: (312) 644-7528<br>*Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Federal National Mortgage Association; and Sabal TL1, LLC*<br><br>/s/ Timothy J. Patenode<br>Timothy J. Patenode<br>(timothy.patenode@katten.com)<br>Katten Muchin Rosenman LLP<br>525 W. Monroe Street<br>Chicago, IL 60661-3693<br>Ph: (312) 902-5200<br>Fax: (312) 902-1061<br>*Counsel for UBS AG* |
| s/Jay L. Welford<br>Jay L. Welford<br>Counsel to Liberty EBCP, LLC | s/ William J. Serritella, Jr.<br>William J. Serritella, Jr. |

11

097077.000109 4865-0526-0628.1

| | |
|---|---|
| jwelford@jaffelaw.com<br>JAFFE RAITT, HEUER & WEISS, P.C.<br>Jay L. Welford (P34471)<br>27777 Franklin Road, Suite 2500<br>Southfield, Michigan 48034<br>(248) 351-3000<br><br>s/ Mark S. Landman<br>mlandman@lcbf.com<br>Landman Corsi Ballaine & Ford P.C.<br>120 Broadway, 13th Floor<br>New York, NY 10271<br>Ph: (212) 238-4800<br>Fax: (212) 238-4848<br>*Counsel for Freddie Mac*<br><br>/s/ Thomas B. Fullerton<br>Thomas B. Fullerton (6296539)<br>Akerman LLP<br>71 S. Wacker Drive, 47th Floor<br>Chicago, IL 60606<br>(312) 634-5700<br>thomas.fullerton@akerman.com<br><br>/s/ Michael D. Napoli<br>Michael D. Napoli (TX 14803400)<br>Akerman LLP<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>(214) 720-4360<br>michael.napoli@akerman.com<br>*Counsel for Midland Loan Services, a Division of PNC Bank, National Association* | wserritella@taftlaw.com<br>Taft Stettinius & Hollister LLP<br>111 East Wacker Drive, Suite 2800<br>Chicago, IL 60601<br>(312) 527-4000<br><br><br>/s/William R. Wurm<br>William R. Wurm, #6324871<br>(William.Wurm@stinson.com)<br>Stinson, LLP<br>7700 Forsyth Blvd., Suite 1100<br>St. Louis, MO 63105<br>Phone: (314) 863-0800<br>Fax: (314) 259-3931<br>*Attorneys for BMO Harris Bank, N.A., and Midland Loan Services, a division of PNC Bank, NA, acting under authority designated by Colony American Finance Lender, LLC, assignee Wilmington Trust, N.A. as Trustee for the benefit of registered holder of Colony American Finance 2015-1* |

097077.000109 4865-0526-0628.1

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 1, 2023, I electronically filed with CM/ECF the foregoing **MORTGAGEES' RESPONSE TO RECEIVER'S EIGHTEENTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS** which sent electronic notification of the filing to all attorneys of record

                          */s/ Candace Mandel*

097077.000109 4865-0526-0628.1