UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. 18-CV-5587 |
| v. | Judge Manish S. Shah |
| EQUITYBUILD, INC., *et al.*, | Magistrate Judge Young B. Kim |
| Defendants. | |

**SEC'S RESPONSE TO INSTITUTIONAL LENDERS' OBJECTIONS
TO MAGISTRATE JUDGE KIM'S FEE ALLOCATION RULING**

For the following reasons, the Court should overrule the Institutional Lenders' objections (ECF 1389) to Magistrate Judge Kim's rulings granting the Receiver's fee allocation motion.

**A. The Lenders Seek to Re-litigate the Court's Prior Rulings**

When referring this fee dispute, Judge Lee had already made two key rulings. First, Judge Lee reaffirmed the Receiver's entitlement to payment for his work, "finding the fees and expenses reasonable and beneficial." ECF 1030 at 4 (citations omitted). Next, Judge Lee awarded the Receiver a lien, attached to the proceeds of his property sales, for two categories of expenses that benefitted the properties or their secured creditors. *Id.* at 9-10. Those two beneficial categories are fees related to "(1) the preservation, management, and liquidation of [Receivership] real estate…and (2) the implementation and management of [the] claim-priority adjudication process." *Id*. at 10-14. Thus, the only issues for Magistrate Judge Kim to decide were if the fees for which the Receiver sought priority payments: (1) properly belonged in one of those categories; and (2) were properly allocated among the right properties.

1

Rather than identifying errors in Magistrate Judge Kim's analysis, the Institutional Lenders seek to re-litigate Judge Lee's rulings. For instance, the Lenders complain the Receiver should not receive priority payments for his work on the claims process (ECF 1389 at 10-11), even though Judge Lee long ago decided the issue.[1] The Lenders likewise attack the payment of fees for addressing code violations and title-examination. *Id.* This too ignores Judge Lee's findings that work related to building upkeep and property sales warranted a Receiver's lien.

The Lenders' continued objections similarly ignore *this Court*'s finding that the Receiver's requested priority payments: (1) belonged in one of the two categories; and (2) had been properly allocated to the correct properties. *See* ECF 1366 at 2 ("The court previously rejected as 'too narrow' the objection that the requested fees do not relate to property-related activities, and continues to overrule that objection...This court is satisfied that the present application has been appropriately allocated to first-priority tasks and specific properties."). Specifically, this Court affirmed that the portion of the Receiver's Group 1 work he seeks to allocate is entitled to a Receiver's lien and priority payments. *Id.* ("The 'Group 1' issues for which the Receiver seeks payment in this application are compensable as claims administration."). No meaningful distinction exists between the claims process work this Court found worthy of allocation and the claims allocations Magistrate Judge Kim approved. Unsurprisingly, the Lenders do not and cannot articulate any valid reason why this Court's allocation findings were correct but Magistrate Judge Kim's were not.

---

[1] The Lenders apparently argue the Court cannot determine whether the Receiver's work on Group 1 of the claims process benefited the victorious claimants, and that allocation of such fees is premature. ECF 1389 at 10. But the Receiver's work resulted in his recommendation that the Group 1 investors had priority (ECF 1201 at 2-3), a recommendation consistent with this Court's priority ruling that benefited the Group 1 investors (ECF 1386).

### B. The Lenders' Allegations of Errors are Greatly Overstated

At best, the Lenders' primary complaint is that the Receiver's bills and allocation schedules, comprising tens of thousands of entries, contain errors. ECF 1389 at 12-13. While the Lenders allege a 30% error rate, that figure is wildly deceiving. Indeed, that 30% figure is based on only *twelve* alleged errors the Lenders identified out of a sample of only *40* entries selected by the Lenders (as opposed to tens of thousands of allocation entries at issue). *Id.* At the hearing, Magistrate Judge Kim similarly discussed how a sample *selected by the Lenders* contained a 16% error rate, but that the sample was not "statistically sound" such that it produced a "rich set of alleged errors." Feb. 8, 2023 Hearing Tr. at 97-100, 105. When evaluating the limited number of alleged errors against the tens of thousands of allocation entries, Magistrate Judge Kim astutely observed that the claimed errors "amount to no more than nitpicking." Feb. 10, 2023 Hearing Tr. at 136-137. Thus, Magistrate Judge Kim correctly determined that the error rate the Lenders assigned to a sample they selected could not be extrapolated to the Receiver's proposed allocations in general. *Id.* Even the Lenders agreed that such extrapolation would not be mathematically sound. *Id.* at 124, 127. Moreover, the Receiver recently confirmed that the cumulative impact of the errors was less than $6,000. ECF 1400 at 3.

Magistrate Judge Kim also was correct that because the totality of any allocation errors were far lower than the percentages alleged by the Lenders, the holdback Judge Lee imposed would ensure the Receiver does not get payment for improperly allocated fees. Feb. 8, 2023 Hearing Tr. at 105. Indeed, when originally requesting a 20% holdback, the Lenders claimed it was necessary to ensure the Receiver was only being paid for work that benefited the Receivership Estate. ECF 648 at 8-9. Judge Lee later went above-and-beyond the Lenders' request. He ordered that any Receiver's lien payments from encumbered real estate sales, the

same sales proceeds at issue in the Receiver's fee allocation motion, be subject to a *40% holdback*. ECF 1031 at 14 and n.33. Because the allocations at issue in the Lenders' objections are already subject to this 40% holdback, the holdback protects against any alleged errors, even accepting the wildly inflated 30% error rate alleged in the Lenders' present objections.

### C. The Lenders Cannot Establish Clear Error

In any event, the Lenders have failed to meet their acknowledged burden to show that Magistrate Judge Kim's ruling was "clearly erroneous or…contrary to law." ECF 1389 at 3 (citations omitted). This is especially so given the wide discretion afforded to courts when determining the amount of fees to award a receiver. *See*, *e.g.*, ECF 824 at 2 (citations omitted). Here, Magistrate Judge Kim performed a detailed review of the Receiver's allocation schedules, and determined the Receiver's allocations were reasonable and "that Mr. Duff and his team did the best that they could under the circumstances to allocate these fees." Feb. 10, 2023 Hearing Tr. at 135-136, 155-158. Magistrate Judge Kim likewise correctly found that the extreme allocation precision demanded by the Lenders does not reflect the realities of law firm billing practice and would be "ask[ing] the receiver for the impossible." *Id*. The Lenders cannot rebut these findings or otherwise meet their burden.

### D. The Lenders Are the Only Objecting Claimants

Finally, the SEC takes issue with the Lenders' suggestion that their objections "benefit all secured creditors," such as the investors, "and not just the Institutional Lenders." ECF 1389 at 2; *see also* Feb. 10, 2023 Hearing Tr. at 113 (Lenders' counsel stating: "I'm trying to be careful of professional responsibility, but we are almost advocating on behalf of all secured lenders…"). None of the secured investor-victims, including the investors represented by counsel and the Group 1 investors already found to have priority, have lodged any objection to the Receiver's fee

4

requests, entitlement to priority payments from his real estate sales proceeds, or proposed allocations. As with the other billing disputes, the *only* objecting parties are the well-financed and title insurance-protected Institutional Lenders who have objected to nearly every action the Receiver has taken. The fact that none of the other 800 claimants have objected further demonstrates the Receiver's beneficial work and the propriety of his proposed priority payments.[2]

                                      Respectfully submitted,

Dated: March 8, 2023                              /s/ Benjamin Hanauer

                                      Benjamin J. Hanauer (hanauerb@sec.gov)
                                      Timothy J. Stockwell (stockwellt@sec.gov)
                                      U.S. Securities and Exchange Commission
                                      175 West Jackson Blvd., Suite 1450
                                      Chicago, IL 60604
                                      Phone: (312) 353-7390
                                      Facsimile: (312) 353-7398

---

[2] The SEC takes no position on the specific objections lodged by Federal Housing Finance Agency. (ECF 1390).

## CERTIFICATE OF SERVICE

I hereby certify that I provided service of the foregoing Response, via ECF filing, to all counsel of record and Defendant Shaun Cohen, on March 8, 2023.

    /s/ Benjamin Hanauer
Benjamin J. Hanauer
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398

One of the Attorneys for Plaintiff