**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **Civil Action No. 18-CV-5587** |
| **v.** | **Judge Manish S. Shah** |
| **EQUITYBUILD, INC., *et al.*,** | **Magistrate Judge Young B. Kim** |
| **Defendants.** | |

**SEC'S REPLY IN SUPPORT OF RECEIVER'S EIGHTEENTH FEE APPLICATION**

The SEC supports the Receiver's Eighteenth Fee Application (ECF 1384). The SEC confirms it has reviewed the Receiver's invoices, they substantially comply with the SEC's billing guidelines, and the SEC approves of their payment. The SEC additionally incorporates its arguments supporting the Receiver's earlier fee petitions. *See* ECF 526, 606, 622, 705, 797, 803, 922, 970, 1002, 1220, 1254, 1307, 1350. Granting every previous petition, the Court has repeatedly approved the precise types of activities for which the Receiver now seeks payment. *See, e.g.*, ECF 1312, 1366. Indeed, in granting the most recent fee petition, this Court found the "Receiver's efforts have benefited and will continue to benefit the Receivership Estate." ECF 1366, at 1. Like the prior petition, the current petition addresses a period in which the Receiver's real estate maintenance and liquidation efforts have concluded, and the Receiver's activities have focused on the claims process (including distributions to creditors) and bringing actions against third parties to generate additional assets for the Estate.

As with the previous petitions, the *only* objecting parties are the Institutional Lenders who continue to object to nearly every action by the Receiver. Conversely, the more than 800

investor-claimants who were victims of the Cohens' fraud continue not to object to the Receiver being paid for his work or receiving priority payments from the proceeds of his real estate sales.

The Lenders' present objections (ECF 1394, at 4) primarily repeat their objections to the earlier fee petitions, which have been consistently overruled. *See, e.g.*, ECF 1213, 1312, 1366. Their chief objection is *not* that the Receiver's bills are unreasonable or otherwise unwarranted. Rather, the lenders renew their objections that certain of the Receiver's fees result from activities beyond those the Court determined deserve payment on a priority basis. *See* ECF 1394, at 4-8.

Like the previous petition, this petition covers a period "with the sale of the underlying properties completed and sharper focus now on pursuing third-party actions and finally distributing proceeds to claimants." ECF 1366, at 1. Granting the prior petition, the Court affirmed that the subset of the Receiver's fees he seeks to pay from his property sales proceeds falls squarely within the approved categories for the Receiver's first-priority lien. *Id.* at 1-2. And the Court continued to overrule, as "too narrow," the Lenders' objections that the Receiver's activities are beyond the approved categories. *Id.* at 2; *see also* ECF 1312, at 2-3. Specifically, the Court held the following types of activities are properly within the "claims adjudication" category warranting a Receiver's lien and priority payments:

> Managing the claims process includes giving notice to interested parties, locating and preserving records, and handling creditor inquiries. The "Group 1" issues for which the Receiver seeks payment in this application are compensable as claims administration.

ECF 1366 at 2.

Rather than seek reconsideration of that ruling, the Lenders merely object to the same types of activities the Court already approved for priority payments. *See* ECF 1394 at 5-8 (objecting to fees incurred for giving notice, locating and preserving records, addressing creditor inquiries, and distributing proceeds to prevailing creditors). Indeed, the specific activities the

Lenders complain about are virtually identical to those underpinning their prior objections, which the Court overruled in their entirety. *Compare* ECF 1394 at 5-8 *with* ECF 1346 at 4-6 (overruled at ECF 1366).

Just as the Court independently approved the Receiver's proposed allocations for the prior petition (ECF 1366 at 2), there is no need to refer the allocations to Magistrate Judge Kim. Beyond determining the Receiver's fees had "been appropriately allocated to first-priority tasks and specific properties," the Court correctly noted that its imposition of a 20% holdback would protect against any finding of improper allocations. *Id.* Magistrate Judge Kim's recent allocation rulings demonstrate the 20% holdback imposed for the prior petition is more than sufficient to guard against whatever limited errors existed in the proposed allocations. *See, e.g.*, Feb. 10, 2023 Hearing Tr. at 136-137 (observing that the limited numbers of errors identified by the Lenders, when evaluated against the tens of thousands of allocation entries at issue, "amount to no more than nitpicking."). While the Lenders demand a 40% holdback for fees paid from property sales proceeds (ECF 1394 at 8-9), they have failed to produce evidence showing *cumulative* errors (as opposed to those from a small sample *they selected*) anywhere near 20%, let alone 40%.[1]

Finally, the Court should overrule the objection that the fees allocated to specific properties must be paid from the Receiver's general account. The Court recently overruled an identical objection, finding the Lenders' approach would provide the prevailing secured

---

[1] At the allocation hearing, Magistrate Judge Kim astutely observed that the Lenders' selected sample of alleged errors, producing a 16% error rate, was not "statistically sound." Feb. 8, 2023 Hearing Tr. at 100, 105. The Lenders conceded that extrapolating their selected sample error rate to the Receiver's allocations as a whole would not be mathematically sound. Feb. 10, 2023 Hearing Tr. at 124, 127. Indeed, the Receiver recently advised that the cumulative impact of the errors was less than $6,000 (well below the 16% alleged error rate). ECF 1400 at 3.

claimants a windfall at the expense of unsecured claimants (who already face a substantially reduced recovery). ECF 1371 ("The point of allocating was to attempt to preserve the distinction between claimants with property−specific interests from other unsecured claimants, but not to create an opportunity for secured claimants to shift Receiver's fees onto the unsecured."). Moreover, the Receiver's petition reflects that his general account contains less than $1.2 million while his unpaid *approved* fees exceed $2.8 million. ECF 1384 at 25, 29.[2] Forcing the Receiver to be paid from his general account would further diminish the recovery for unsecured creditors, rapidly deplete the Receiver's account, and hamstring the Receiver's operations.[3]

Respectfully submitted,

Dated: March 8, 2023

/s/ Benjamin Hanauer

Benjamin J. Hanauer (hanauerb@sec.gov)
Timothy J. Stockwell (stockwellt@sec.gov)
U.S. Securities and Exchange Commission
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398

---

[2] The Lenders contend that the Receiver's account will grow by nearly $3 million following the settlement with Equitybuild's former auditors. ECF 1394 at 4. But the Motion to approve that settlement, and Order approving it, make clear the Receiver will immediately transfer more than $1 million of that amount to lead counsel in the action against the auditors, resulting in a net gain of less than $2 million to the Receivership. *See* ECF 1343 at 8, ECF 1359 at 2. Thus, using the Receiver's general account to pay his approved fees would nearly exhaust that account.

[3] The SEC takes no position on the specific objections lodged by Federal Housing Finance Agency. (ECF 1347).

**CERTIFICATE OF SERVICE**

I hereby certify that I provided service of the foregoing Reply, via ECF filing, to all counsel of record and Defendant Shaun Cohen, on March 8, 2023.

_/s/ Benjamin Hanauer_
Benjamin J. Hanauer
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398

One of the Attorneys for Plaintiff