UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.    18-CV-5587 |
| EQUITYBUILD, INC. EQUITYBUILD FINANCE., LLC, JEROME H. COHN, and SHAUN D. COHEN, | ) ) ) ) | Hon. Manish S. Shah  Magistrate Judge Young B. Kim |
| Defendants. | ) ) | |

**MOTION TO ADJUDICATE INTEREST IN AND TO RECOGNIZE THE SECURED CLAIM OF LMJ SALES, INC. IN THE PROCEEDS FROM THE SALES OF CAPITAL FUNDS I, LLC PROPERTIES, 7301 S. STEWART AVE. (PROPERTY 10), 7500-06 S. EGGELSTON AVE. (PROPERTY 11), AND 3030-32 E. 79TH STREET (PROPERTY 12) AND THE SECURED CLAIM OF KIRK ROAD INVESTMENT, LLC IN THE PROCEEDS FROM THE SALE OF CAPITAL FUNDS II, LLC PROPERTIES, 2909-19 EAST 78TH STREET (PROPERTY 13), 7549-59 SOUTH ESSEX AVENUE (PROPERTY 14), AND 8047-55 SOUTH MANISTEE AVENUE (PROPERTY 15)**

Claimants, Creditors, Investor-Lenders and/or Equity Investors, LMJ Sales, Inc. (hereinafter "LMJ") and Kirk Road Investments, LLC., (hereinafter "KRI"), by their attorneys, Jerome F. Crotty, Kevin P. Brown, and Rieck and Crotty P.C., move this Court to adjudicate LMJ's interest in and to find that LMJ has a secured claim against the sales proceeds from the sale of Capital Funds I, LLC properties 7301 S. Steward Ave (Property 10), 7500-06 S. Eggelston Ave. (Property 11) and 3030-32 E. 79th Street (Property 12), and to adjudicate KRI's interest in and to find that KRI has a secured claim against the sales

proceeds from the sale of Capital Funds II, LLC properties 2909-19 East 78th Street (Property 13), 7549-59 South Essex Avenue (Property 14), and 8047-55 South Manistee Avenue (Property 15), and, and in support thereof, states as follows:

**I. LMJ Has A Secured Interest In And A Secured Claim Against The Sales Proceeds From The Sale Of Capital Funds I, LLC Properties, 7301 S. Steward Ave (Property 10), 7500-06 S. Eggelston Ave. (Property 11) And 3030-32 E. 79th Street (Property 12).**

1. LMJ is an Equity Investor and Claimant (Claim No. 10-1346) in Capital Fund I, LLC ("CCF1") in the amount of $100,000.00. See Page 46 of the Receiver's Eighteenth Status Report (Fourth Quarter 2022) (01/30/2023, Dkt. No. 1379) a copy of which is attached hereto as Exhibit ("Ex.") "1" for the Courts convenience.

2. As set forth more fully below, LMJ's claim is secured by LMJ's interest (mortgage/equitable mortgage/equitable lien) in the properties held by CCF1, i.e. 7301 S. Steward Ave (Property 10), 7500-06 S. Eggelston Ave. (Property 11) and 3030-32 E. 79th Street (Property 12) and thus the proceeds of the sales of those properties.

3. LMJ has a secured interest in said properties and their sales proceed regardless of whether the Receiver Defendants executed and recorded the appropriate mortgage documents against said properties.

### A. LMJ Has A Mortgage Interest In Properties 10 Through 12 And The Proceeds From The Sale Of Said Properties Held By The Receiver.

4. On May 26, 2015, LMJ wired $100,000.00 to Equity Build, Inc. ("Receiver Defendant") as an Investor-Lender in 109 N. Laramie. See Paragraph ("Par.") 5 and Ex. A of the Affidavit of Martha Johnson attached hereto as Ex. 2.

5. Subsequent thereto the Receiver Defendant transferred said investment to 7760 S. Coles Ave., with a maturity date of June 1, 2017. See Ex. 2, Par. 6.

6. On or about October 16, 2017, LMJ was presented with a Confidential Placement Memorandum Dated October 16, 2017, for CCF1 (hereinafter "CCF1 PPM") and was asked to roll its $100,000.00 investment into such fund. See Ex. 2, Par. 7 and Ex. B thereto.

7. On or about November 9, 2017, LMJ executed a Rollover Authorization/Distribution for the $100,000.00 investment to "Roll" into CCF1. Ex. 2, Par. 8 and Ex. C thereto.

8. The CCF1 PPM provided that upon the acceptance of LMJ's $100,000.00 investment and subscription in CCF1, LMJ was to receive a note in the amount $100,000.00. Ex. 2, Par. 9 and Ex. B thereto, Pgs. 64 to 69 of the CCF1 PPM.

9. The Note and LMR's investment was to be secured by a first mortgage on 7301 S. Steward Ave (Property 10), 7500-06 S. Eggelston Ave. (Property 11) and 3030-32 E. 79th Street (Property 12) (Collectively referred to as the Buildings in the CCF1 PPM, Ex.2, Par. 10 and Ex. B thereto, Pg. 21 of the CCF1 PPM). See the description of the

security for the Notes in CCF1 PPM, Ex.2, Par. 10 and Ex. B thereto, Pgs. 21, 24, 34, and 35, which state that the Notes which were offered as part the investment were to be "secured by a first mortgage on all the Buildings"; the description of the collateral in the Note, Ex.2, Par. 10 and Ex. B thereto, Pgs. 65 and 69 of the CCF1 PPM, and a copy of the mortgage to be recorded attached as Exhibit G of the CCF1 PPM, Ex.2, Par. 10 and Ex. B thereto, Pg 83 et. seq.

10. As part of its investment in CCF 1, LMJ completed and executed the subscription documents, including the Subscription Agreement, which was executed and accepted by CCF1. Ex.2, Par. 11 and Ex. B thereto, Pgs. 52 to 64 of the CCF1 PPM.

11. Upon accepting LMJ's subscription and $100,000.00 investment, however, CCF1 did not forward LMJ an executed Note and it appears did not execute and record a Mortgage against the Properties 10 through 12 purchased by CCF1. Ex. 2, Par. 12.

12. The Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101 et. seq. (hereinafter "IMFL"), defines a mortgage as follows:

> "Mortgage" means any consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation. The term "mortgage" includes, without limitation:
>
> (a)   mortgages securing "reverse mortgage" loans as authorized by subsection (a) of Section 5 of the Illinois Banking Act [205 ILCS 5/5];
>
> (b)   mortgages securing "revolving credit" loans as authorized by subsection (c) of Section 5 of the Illinois Banking Act [205 ILCS 5/5], Section 1-6b of the Illinois Savings and Loan Act [205 ILCS 105/1-6b] and Section 46 of the Illinois Credit Union Act [205 ILCS 305/46];

4

(c) every deed conveying real estate, although an absolute conveyance in its terms, which shall have been intended only as a security in the nature of a mortgage;

(d) equitable mortgages; and

(e) instruments which would have been deemed instruments in the nature of a mortgage prior to the effective date of this amendatory Act of 1987. 735 ILCS 5/15-1207.

13. Given the definition of mortgage under the IMFL, the CCF1 PPM provided to LMJ as an Equity Investor to induce it to loan the Receiver Defendants $100,000.00 created mortgages on Properties 10 through 12 under Illinois law, whether or not an actual mortgage document was executed and recorded by the Receiver Defendants.

14. Moreover, the execution and recording of the Mortgage attached to the CCF1 PPM was not necessary in order for LMJ to have a mortgage on Properties 10 through 12.

15. The CCF1 PPM and the executed and accepted Subscription Agreement provide LMJ with an unrecorded mortgage under the IMFL since they are a "consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation."

16. Thus, LMJ's interest in CCF1 is secured by Properties 10 through 12 and, upon the sale of those properties, the proceeds of such sales by the Receiver even if the Mortgage documents were not recorded.

17. The purpose of recording a mortgage is the perfection of a party's interest in real estate against subsequent third parties obtaining an interest in such property. *U.S. Bank, N.A. v. Kennedy*, 2014 IL App (2d) 130453-U, Par. 52 (2nd Dist. 2014) ("The significance of the recordation is the perfection of the security interest in the mortgage for purposes of precedence (see *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 704, 734 N.E.2d 493, 248 Ill. Dec. 565 (2000) (first mortgage recorded is presumed to have priority; recordation is to protect and give notice to subsequent purchasers against unrecorded instruments)); it does not affect the validity of the transfer.")

18. Thus, while an unrecorded mortgage does not have priority against subsequently recorded interests and there are none here, it remains enforceable between the original parties to the mortgage. *Harms v. Sprague*, 105 Ill. 2d 215, 224 to 225 (1984).

19. Accordingly, LMJ's mortgages created on Properties 10 through 12 by the CCF1 PPM and Subscription Agreement should attach to such properties and the proceeds of sale of the same by the Receiver.

   **B. Alternatively, If This Court Finds The Investment And Mortgage Documents Provided LMJ And/Or The CCF1 PPM And Subscription Agreement Are Not Mortgages, LMJ Holds An Equitable Mortgage Against Properties 10 through 12.**

20. An equitable mortgage is a subtype of mortgages which is also created by a consensual written instrument. *Id.* § 15-1207(d); *Paliatka v. Bush*, 2018 IL App (1st) 172435, ¶ 21 (1st Dist. 2018).

21. In order to create and equitable mortgage, all that is necessary is an express written agreement in which the contracting parties indicate an intention to make a particular property the security for a debt, or which promises to convey or assign property as security for the payment of a debt. *First Illinois Nat'l Bank v. Hans*, 143 Ill. App. 3d 1033, 1036 (2nd Dist. 1986).

22. Express mortgage language is not necessary to create an equitable mortgage; only language which clearly demonstrates the parties' intention that a property be held as security for the payment of a debt. Id.

23. Thus, if the Court holds the Investment and Mortgage documents provided LMJ and the CCF1 PPM and Subscription Agreement do not create mortgages on Properties 10 through 1 2, such documents do constitute an express written agreement in which the contracting parties indicate an intention to make a particular property, i.e. Properties 10 through 12, the security for a debt, and/or which promises to convey or assign such properties as security for the payment of a debt.

24. Thus, LMJ has as an equitable mortgage on Properties 10 through 12 which should attach to the proceeds of the sale of each property.

**C. Alternatively, If This Court Finds The Investment And Mortgage Documents Provided LMJ And/Or CCF1 PPM And Subscription Agreement Are Not Mortgages, LMJ Holds An Equitable Lien Against Properties 10 through 12.**

25. Alternatively, if the Court finds that LMJ does not have either a mortgage or equitable mortgage on Properties 10 through 12, the Court should find LMJ has an equitable lien on said properties and the proceeds of their sale.

26. An equitable lien is a remedy for a unenforceable debt which considerations of right and fairness require a lien be created. *Id., Paliatka* at ¶ 30.

27. The elements of an equitable lien are (1) a debt owed by the defendant to the plaintiff and (2) the existence of a res that is related to the debt owed. Id. Unlike an equitable mortgage, an equitable lien may be found when either (1) a writing by the parties expressed their intention to make real property the security for a debt but failed to use express lien language or (2) where fairness and justice require imposing a lien even without an express agreement by the parties. Id.

28. Thus, if the Investment and Mortgage documents and the CCF1 PPM and Subscription Agreement do not create an actual mortgage or an equitable mortgage on Properties 10 through 12, such documentation does create an equitable lien against such properties and proceeds of their sale.

## II. KRI Has A Security Interest In And Secured Claim Against The Sales Proceeds From The Sale Of Capital Funds II, LLC Properties 2909-19 East 78th Street (Property 13), 7549-59 South Essex Avenue (Property 14), and 8047-55 South Manistee Avenue (Property 15).

29. KRI is an Equity Investor and Claimant (Claim No. 13-755) in Capital Fund II, LLC ("CCF2") in the amount of $250,000.00. See Page 44 of the Receiver's Eighteenth Status Report (Fourth Quarter 2022) (01/30/2023, Dkt. No. 1379) a copy of which is attached hereto as Ex 3 for the Courts convenience.

30. KRI's claim is secured by KRI's interest (mortgage/equitable mortgage/equitable lien) in the properties held by CCF2, i.e. 2909-19 East 78th Street (Property 13), 7549-59 South Essex Avenue (Property 14), and 8047-55 South Manistee Avenue (Property 15).

31. KRI has a secured interest in said properties and their sales proceed regardless of whether the Receiver Defendants executed and recorded the appropriate mortgage documents against said properties.

### A. KRI Has A Secured Interest In Properties 13 Through 15, And The Proceeds From The Sale Of Said Properties Held By The Receiver.

32. On or about November 20, 2017, KRI was presented with a Confidential Placement Memorandum Dated November 20, 2017, for CCF2 (hereinafter "CCF2 PPM") and was asked to invest $250,000.00 into such fund. See Ex. 2, Par. 16.

33. On or about December 9, 2017, KRI executed a Reinvestment Request Form to reinvest a $15,000.00 loan into CCF2. Ex. 2, Par. 17.

34. On or about December 12, 2017, wire transferred $235,000.00 to the Receiver Defendants to invest in such fund for a total of $250.00.00. Ex. 12, Par. 18.

35. The CCF2 PPM provided that upon the acceptance of KRI's $250,000.00 investment and subscription in CCF2, KRI was to receive a note in the amount $250,000.00, See Ex. 2, Par. 19 and Ex. D thereto, Pgs. 64 to 69 of the CCF1 PPM.

36. The investment was to be secured by a first mortgage on the properties purchased by CCF1, i.e. 2909-19 East 78th Street (Property 13), 7549-59 South Essex Avenue (Property 14), and 8047-55 South Manistee Avenue (Property 15) (Collectively referred to as the Buildings in the CCF2 PPM, Ex. 2, Par. 20, and Ex. D thereto, Pg. 21). See the description of the security for the Notes in CCF1 PPM, Ex. 2, Par. 20 and Ex. D thereto, Pgs. 21 and 35, which state that the Notes which were offered as part the investment were to be "secured by a first mortgage on all the Buildings"; the description of the collateral in the Note, Ex. 2, Par. 20 and Ex. D thereto, Pg. 65 and 69, and a copy of the mortgage to be recorded attached as Exhibit G of the CCF1 PPM, Ex. 2, Par. 20, and Ex. D thereto, Pg 83 et. seq.

37. As part of its investment in CCF2, LMJ completed and executed the subscription documents, including the Subscription Agreement, which was executed and accepted by CCF2. Ex. 2, Par. 21, and Ex. D thereto, Pgs. 54 to 63 of the CCF2 PPM.

38. Upon accepting KRI's subscription and $250,000.00 investment, however, CCF2 did not forward KRI an executed Note and it appears did not execute and record a Mortgage against the Properties 13 through 15 purchased by CCF 1. Ex.2, Par. 22.

39. Given the definition of mortgage under the IMFL set forth above, the investment and mortgage documents provided to KRI as an Equity Investor to induce it to loan the Receiver Defendants $250,000.00 created mortgages on Properties 13 through 15 under Illinois law, whether or not an actual mortgage document was executed and recorded by the Receiver Defendants.

40. Similarly, The CCF2 PPM created a mortgage under the IMFL securing KRI's interest in CCF2.

41. The CCF2 PPM provided that upon the acceptance of KRI's $250,000.00 investment and subscription in CCF2, KRI was to receive a note in the amount $250,000.00, secured by a mortgage on the properties purchase by CCF2.

42. As part of its investment in CCF2, KRI completed and executed the subscription documents, including the Subscription Agreement, which was executed and accepted by CCF2.

43. Upon accepting KRI's subscription and $250,000.00 investment, however, CCF2 did not forward KRI an executed Note and it appears did not execute and record a Mortgage against Properties 13 through 15 purchased by CCF2.

44. The execution and recording of the Mortgage attached to the CCF2 PPM is not necessary in order for KRI to have a mortgage on Properties 13 through 15.

45. The CCF2 PPM and the executed and accepted Subscription Agreement provide KRI with an unrecorded mortgage under the IMFL since they are a "consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation."

46. Thus, KRI's interest in CCF2 is secured by Properties 13 through 15 and the proceeds of the sale of those properties by the Receiver even if the Mortgage documents were not recorded.

47. As noted above, the purpose of recording a mortgage is the perfection of a party's interest in real estate against subsequent third parties obtaining an interest in such property. Id. *U.S. Bank, N.A. v. Kennedy*, 2014 IL App (2d) 130453-U, Par. 52 (2nd Dist. 2014); *Aames Capital Corp.*, 315 Ill. App. 3d at 704.

48. Thus, while an unrecorded mortgage does not have a priority against subsequently recorded interests, it remains enforceable between the original parties to the mortgage. Id. *Harms*, 105 Ill. 2d at 224 to 225.

49. Accordingly, KRI's mortgages created on Properties 10 through 12 by the CCF2 PPM and Subscription Agreement should attach to such properties and the proceeds of sale of the same by the Receiver.

**B. Alternatively, If This Court Finds The Investment And Mortgage Documents Provided KRI And/Or The CCF2 PPM And Subscription Agreement Are Not Mortgages, KRI Holds An Equitable Mortgage And/Or An Equitable Lien Against Properties 13 through 15.**

50. As noted above, an equitable mortgage is a subtype of mortgages which is also created by a consensual written instrument. Id. § 15-1207(d); *Paliatka*, 2018 IL App (1st) 172435, ¶ 21 (1st Dist. 2018).

51. In order to create and equitable mortgage, all that is necessary is an express written agreement in which the contracting parties indicate an intention to make a particular property the security for a debt, or which promises to convey or assign property as security for the payment of a debt. Id. *First Illinois Nat'l Bank*, 143 Ill. App. 3d at 1036.

52. Express mortgage language is not necessary to create an equitable mortgage; only language which clearly demonstrates the parties' intention that a property be held as security for the payment of a debt. Id.

53. Thus, if the Court holds the Investment and Mortgage documents provided Claimant and the CCF2 PPM and Subscription Agreement do not create mortgages on Properties 13 through 15, such documents do constitute an express written agreement in which the contracting parties indicate an intention to make a particular property, i.e. Properties 13 through 15, the security for a debt, and/or which promises to convey or assign property as security for the payment of a debt.

54. Thus, KRI has as an equitable mortgage on Properties 13 through 15 which should attach to the proceeds of the sale of each property.

**C. Alternatively, If This Court Finds The Investment And Mortgage Documents Provided KRI And/Or The CCF2 PPM And Subscription Agreement Are Not Mortgages, KRI Holds An Equitable Lien Against Properties 13 through 15.**

55. Alternatively, if the Court finds that KRI does not have either a mortgage or equitable mortgage on Properties13 through 15, the Court should find KRI has an equitable lien on the property and thus, the proceeds of sale.

56. An equitable lien is a remedy for a unenforceable debt which considerations of right and fairness require a lien be created. Id., *Paliatka* at ¶ 30.

57. The elements of an equitable lien are (1) a debt owed by the defendant to the plaintiff and (2) the existence of a res that is related to the debt owed. Id. Unlike an equitable mortgage, an equitable lien may be found when either (1) a writing by the parties expressed their intention to make real property the security for a debt but failed to use express lien language or (2) where fairness and justice require imposing a lien even without an express agreement by the parties. Id.

58. Thus, if the Investment and Mortgage documents and the CCF2 PPM and Subscription Agreement do not create mortgages or equitable mortgages on Properties 13 through 15, such documentation does create an equitable lien against such properties and thus the proceeds of the sale of the properties.

WHEREFORE, LMJ Sales, Inc. requests that the Court find that LMJ Sales, Inc has a secured claim against the proceeds of the sale of Properties 10 through 12 and Kirk Road Investment, LLC has a secured claim against the proceeds of the sale of Properties 13 through 15.

Respectfully submitted,

LMJ Sales, Inc. and Kirk Road Investments, LLC.,

By: ___/s/ Kevin P. Brown___
      One of Their Attorneys

Jerome F. Crotty, Esq.
jcrotty@rieckcrotty.com
Kevin P. Brown, Esq.
kbrown@rieckcrotty.com
Rieck and Crotty, P.C.
Attorneys for LMJ Sales, Inc. and
Kirk Road Investments, LLC
161 North Clark Street, Suite 1600
Chicago, Illinois 60603
Phone: (312) 726-4646
Fax:    (312) 726-0647

# CERTIFICATE OF SERVICE

Kevin P. Brown, an attorney, certifies that he caused the within and foregoing **Motion To Adjudicate Interest In And To Recognize The Secured Claim Of LMJ Sales, Inc. In The Proceeds From The Sales Of Capitial Funds I, LLC Properties, 7301 S. Stewart Ave. (Property 10), 7500-06 S. Eggelston Ave. (Property 11), And 3030-32 E. 79th Street (Property 12) And The Secured Claim Of Kirk Road Investment, LLC. In The Proceeds From The Sale Of Capital Funds Ii, Llc Properties 2909-19 East 78th Street (Property 13), 7549-59 South Essex Avenue (Property 14), And 8047-55 South Manistee Avenue (Property 15)** to be served upon counsel of record by electronically filing the same via the Northern District of Illinois ECF Service and e-mailing counsel to the e-mail address provided herein on or before the hour of 5:00 p.m. on the 11th day of April, 2023.

/s/ Kevin P. Brown