# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States Securities and Exchange Commission, <br><br> Plaintiff, <br><br> v. <br><br> EquityBuild, Inc., EquityBuild Finance, LLC, Jerome H. Cohen, and Shaun D. Cohen, <br><br> Defendants. | No.: 18-cv-5587 <br> Honorable Manish S. Shah <br> Magistrate Judge Young B. Kim |

## FEDERAL HOUSING FINANCE AGENCY, FANNIE MAE, AND FREDDIE MAC'S JOINT OBJECTION TO RECEIVER'S SECOND MOTION FOR APPROVAL OF FEE ALLOCATIONS FOR INTERIM PAYMENT PURSUANT TO RECEIVER'S LIEN (DKT. 1321)

The Federal Housing Finance Agency ("FHFA" or "Conservator"), as Conservator for Fannie Mae and Freddie Mac ("Enterprises"), and the Enterprises respectfully object to Kevin B. Duff's, in his capacity as receiver of Equitybuild Inc., et al. ("Mr. Duff"), Second Motion for Approval of Fee Allocations for Interim Payment Pursuant to Receiver's Lien, Dkt. 1321 ("Second Motion"), insofar as it allocates costs to the properties encumbered by Enterprise liens (1131-41 East 79th Place and 7024-32 South Paxton Avenue) ("Enterprise Properties").

In his Second Motion, Mr. Duff seeks approval for an interim payment of fees incurred during the period from October 1, 2021 through June 30, 2022, as set forth in Mr. Duff's Fourteenth, Fifteenth, and Sixteenth Fee Applications. *See* Second Motion at ¶ 3. FHFA objected to Mr. Duff's applications; the district court, in an order dated September 12, 2022, noted FHFA's objections and declined to approve a blanket payment of the Mr. Duff's requested fees, referring to this Court the allocation of fees to the specific properties. *See* Dkts. 1302, 1312. For the Enterprise Properties, Mr. Duff seeks a total of $3,454.87 related to Asset Disposition, Business Operations, and Claims Administration & Objections. *Id*., Ex. A at Rows 67, 72.

FHFA has consistently maintained that the Housing and Economic Recovery Act of 2008 ("HERA") prevents Mr. Duff from allocating fees and costs to the Enterprise Properties because doing so would dissipate the Enterprises' collateral and thereby impair FHFA's statutory powers to collect on the obligations secured by the properties and to preserve and conserve the Enterprises' assets. *See* Dkts. 1209, 1266; *see also* 12 U.S.C. §§ 4617(f), 4617(b)(2), 4617(j)(3). This Court heard FHFA's objections to Mr. Duff's first motion for allocation of fees (Dkt. 1107) ("First Motion") and overruled them. *See* Dkt. 1258. The district court affirmed that order, but on different grounds. *See* Dkt. 1327 ("Ruling"). In December 2022, FHFA appealed the Ruling to the 7th Circuit, and FHFA's appeal remains pending.

To preserve its position as to further allocations of Mr. Duff's fees and costs to Enterprise Properties, and to allow this Court an opportunity to revisit FHFA's HERA arguments, FHFA and the Enterprises respectfully object to Mr. Duff's Second Motion.

**I.    Background**

On December 22, 2021, Mr. Duff filed his First Motion to allocate certain accrued fees and costs to specific properties and to receive an interim payment from the corresponding accounts. Dkt. 1107. The First Motion covered Mr. Duff's first through thirteenth fee applications, from August 2018 to September 30, 2021. *See* Second Motion at ¶ 1. FHFA, citing 12 U.S.C. §§ 4617(f) and (j)(3), objected to those allocations because they would dissipate the Enterprises' collateral, thereby impairing the Conservator's statutory powers to collect on the obligations secured by the properties and to preserve and conserve the Enterprises' assets. Dkt. 1209.

On June 22, 2022, this Court overruled FHFA's objections and granted the First Motion. Dkt. 1258. This Court held that: (i) § 4617(f) is non-jurisdictional and FHFA therefore waived it by not raising it earlier, *id.* at 6-7, (ii) § 4617(f) cannot be asserted as a "sword" rather than a "shield," *id.* at 8-9, and (iii) § 4617(j)(3) does not apply because "[t]his is not a foreclosure case,

2

and the FHFA has not shown that the proposed allocations extinguish the liens at issue," *id.* at 9-11. FHFA timely objected to this Court's decision.

On October 17, 2022, the district court issued its Ruling on the First Motion, which affirmed this Court's order but on different grounds. Dkts. 1266, 1325, 1327. The district court held that § 4617(f) "speaks to the power of the court, which is jurisdictional and not something that is waivable." Ruling at 28. The district court then determined that "[t]he characterization of 4617(f) as a shield versus a sword is not a dispositive distinction." *Id.* at 29. Instead, the relevant question was: "Is the allocation of [Mr. Duff's] fees to these property accounts something that affects or restrains the agency's powers as conservator?" *Id.* at 30. As to this question, the district court concluded that it is not, as "it is consistent with conservatorship and preservation of assets to pay the reasonable obligations of the property or the entities" and "[b]eing a free rider is not in the public interest and is not consistent with good-faith conservatorship." *Id.* at 31.

The district court went on to consider the issue under § 4617(j)(3), which states: "No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the agency." 12 U.S.C. § 4617(j)(3). The district court held that explicit consent was not required by the statute, and [i]f the record demonstrates that FHFA consented through its actions, that can be consent. Ruling at 32. While the district court acknowledged that "the agency hasn't expressly consented to the precise allocation of fees," it determined that consent was "sufficient" to the extent FHFA "consented to receive the value of [Mr. Duff's] work." *Id.* at 33. The district court further noted that, in the alternative, "the allocation of receiver fees to accounts is not a levy, attachment, garnishment, foreclosure, sale, or involuntary lien attaching to agency property." *Id.*

3

II.  **Argument**

FHFA and the Enterprises object to Mr. Duff's Second Motion because HERA prevents Mr. Duff from allocating accrued fees and costs to the Enterprise Properties.

FHFA and the Enterprises respectfully submit that this Court should deny Mr. Duff's Second Motion for two primary reasons.[1] *First*, under § 4617(f), allocating Mr. Duff's fees to the Enterprise accounts restrains or affects FHFA's powers or functions—specifically, the powers to collect on the obligations secured by the properties and to preserve and conserve the Enterprises' assets. *See* 12 U.S.C. §§ 4617(f), 4617(b)(2). FHFA has sought to exercise those powers properly and lawfully, but regardless, numerous appellate decisions confirm that § 4617(f)'s protection would apply even if FHFA had somehow done so improperly. *Second*, under § 4617(j)(3), allocating Mr. Duff's fees to Enterprise accounts, without FHFA's explicit consent, dissipates conservatorship property interests in violation of HERA. Further, § 4617(j)(3) bars judicially-sanctioned dissipation of conservatorship property interests by means other than levy, attachment, garnishment, foreclosure, or sale.

    A.    **Section 4617(f) Bars this Court from Allocating Mr. Duff's Fees to Enterprise Accounts.**

        1.    **Under Section 4617(f), Allocating Mr. Duff's Fees to the Enterprise Accounts Restrains or Affects FHFA's Powers or Functions.**

As a preliminary matter, FHFA agrees with the district court's holding that § 4617(f) "speaks to the power of the court, which is jurisdictional and not something that is waivable." Ruling at 28. In other words, § 4617(f) poses a jurisdictional bar that cannot be waived; it can be raised at any point in the litigation. Substantively, Section 4617(f) precludes the Court from

---

[1] To the extent these arguments conflict with the district court's analysis of the First Motion, FHFA must reassert them to preserve them in relation to the allocations at issue in the Second Motion, and FHFA respectfully submits that the district court resolved the First Motion incorrectly.

4

granting Mr. Duff's requests to requisition assets in which the Conservator has an interest to pay Mr. Duff's fees and expenses.

More specifically, paying Mr. Duff's fees out of the Enterprise accounts diminishes the collateral supporting the Enterprise Loans, thereby reducing the amount FHFA can collect on them. Therefore, granting Mr. Duff's Second Motion would restrain FHFA's powers to "collect all obligations and money due" the Enterprises and to "preserve and conserve [their] assets and property." *See* 12 U.S.C. § 4617(b)(2)(B). The plain text of § 4617(f) supports the conclusion that allocating Mr. Duff's fees to Enterprise accounts restrains or affects FHFA's statutory powers. Indeed, as the district court acknowledged "Congress means what it said: No court can take action that affects or restrains the agency's exercise of its conservatorship powers." Ruling at 30.

Congress's use of "restrain" and "affect" was purposeful and important. Section 4617(f) protects the Conservator from *any* action that influences, in some way, or limits the Conservator's power to collect and preserve the Enterprises assets. Indeed, the plain text of § 4617(f)'s prohibitive clause—"no court may take any action"—is unqualified and absolute. *See Collins v. Yellin*, 141 S. Ct. 1761, 1770 (2021) (stating that HERA "prohibits courts from taking '*any* action to restrain or affect the exercise of [the] powers or functions of Agency as a conservator.'") (emphasis added). And courts across the country, including the United States Supreme Court, agree that "'any' has an expansive meaning." *United States v. Gonzales*, 520 U.S. 1, 5 (1997); *see also Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 969 (9th Cir. 2013) ("[A]ny means all" unless Congress provides otherwise); *Harris v. Garner*, 216 F.3d 970, 985 (11th Cir. 2000) (in interpreting a statute, "'no' means no"); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 219 (D.D.C. 2020) (statutory language that "[n]o court may set aside any action or decision" "strips courts of jurisdiction to … set aside" any action or decision).

5

Here, allocating and disbursing Mr. Duff's fees from the Enterprise accounts *would* "restrain" or "affect" FHFA's powers to collect all obligations and preserve the Enterprise assets: A judicial ruling that diminishes the collateral supporting obligations due the Enterprises not only restrains and affects FHFA's powers to collect the full value of those assets, it effectively negates them.

        **2.**        **Section 4617(f)'s Application Depends Only on Whether FHFA's Powers Would Be Restrained or Affected, Not on Whether the Court Agrees with How FHFA Exercises Those Powers.**

The district court, apparently concerned about the policy implications of barring Mr. Duff from diminishing the Enterprises' collateral, ruled that FHFA powers do not include protecting the Conservator's interest in the Enterprise Property accounts, going so far as to call FHFA a "free rider." Ruling at 31. But Congress resolved the policy issues by enacting § 4617(f); the district court's (and this Court's) duty is to apply HERA according to its terms, not to evaluate outcomes from a policy perspective. Congress clearly "empower[ed]" FHFA—and "at the same time . . . disempower[ed] courts"—to determine how to best exercise these sweeping powers in the face of crisis. *See Roberts v. Fed. Hous. Fin. Agency*, 889 F.3d 397, 400 (7th Cir. 2018). Regardless, FHFA is not acting as a free rider. FHFA would have welcomed—and still welcomes—a dialog with Mr. Duff on how best to manage the Enterprise Properties (now, the corresponding accounts) in light of the Conservator's statutory powers and protections, but none has materialized. In the absence of any such dialog, FHFA has every right to exercise its statutory power to "collect all obligations and money due" the Enterprises, and to "preserve and conserve [their] assets and property," and neither this Court nor the district court has jurisdiction to interfere. *See* 12 U.S.C. § 4617(b)(2)(B).

As numerous decisions confirm, the only thing that matters is whether the Conservator's powers would be restrained or affected *at all*, not whether a reviewing court believes the

6

Conservator has exercised it powers (or proposes to exercise them) in ways the court considers desirable, reasonable, proper or even lawful. For example, in *Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017), the D.C. Circuit explained that it did "not think it possible, in light of the strong language of § 4617(f)[,] to read [HERA]'s grant of 'powers' and 'authorities' to include the limitation that those powers be subject to—and hence enjoinable for non-compliance with—any and all other . . . laws." *Id.* at 605 (some internal quote marks omitted) (quoting *Nat'l Trust for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993), *vacated*, 5 F.3d 567 (D.C. Cir. 1993), *reinstated in relevant part*, 21 F.3d 469 (D.C. Cir. 1994)).

Many other decisions—including the *National Trust* case upon which the D.C. Circuit relied in *Perry Capital*—make the same point in relation to § 1821(j).[2] In *National Trust*, the D.C. Circuit held that § 1821(j) precluded an injunction halting the receiver's planned sale of a building, despite allegations that the sale would violate the National Historic Preservation Act. 995 F.2d at 239, 241. Likewise, the Third Circuit has observed that § 1821(j)'s application "does not hinge on our view of the proper exercise of otherwise-legitimate powers." *Gross v. Bell Sav. Bank PaSA*, 974 F.2d 403, 408 (3d Cir. 1992); *see also Rosa v. RTC*, 938 F.2d 383, 397-399 (3d Cir. 1991) (Section 1821(j) barred injunction despite allegation that receiver's act would violate ERISA). The Fifth Circuit agrees, having held that "even if the [receiver] improperly or unlawfully exercised an authorized power or function," it could not "conceivably [be] subject … to injunction or rescission as an exception to … § 1821(j)." *Ward v. RTC*, 996 F.2d 99, 103 (5th Cir. 1993) (rejecting plaintiff's argument that an RTC receiver should be enjoined from selling an asset to a

---

[2] Courts applying Section 4617(f) routinely look to FDIC cases interpreting Section 11(j) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(j), on which Section 4617(f) is patterned, for guidance. *See, e.g., Roberts*, 889 F.3d at 402-03; *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 895 (3d Cir. 2018); *Perry Cap.*, 864 F.3d at 605-06.

7

particular buyer because the plaintiff allegedly had proposed a better bargain). Similarly, the Eleventh Circuit has observed that "[e]ven claims seeking to enjoin the [receiver] from taking allegedly unlawful actions are subject to the jurisdictional bar of § 1821(j)." *RPM Investments, Inc. v. RTC*, 75 F.3d 618, 621 (11th Cir. 1996). Indeed, these arguments hold "regardless of [the plaintiff]'s likelihood of success on the underlying claims." *281-300 Joint Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991) (citation omitted).

"The plain statutory text draws a sharp line in the sand against litigative interference—through judicial injunctions, declaratory judgments, or other equitable relief—with FHFA's statutorily permitted actions as conservator or receiver." *Perry Capital*, 864 F.3d at 606. Indeed, in applying § 4617(f), the Eighth Circuit explained that "[p]icking among different ways of preserving and conserving assets, deciding whose interests to pursue while doing so, and determining the best way to do so are all choices that [HERA] clearly assigns to the FHFA, not the courts." *Bhatti v. Fed. Hous. Fin. Agency*, 15 F.4th 848, 855 (8th Cir. 2021) (quoting *Saxton v. Fed. Hous. Fin. Agency*, 901 F.3d 954, 960 (8th Cir. 2018) (Stras, J., concurring)). Similarly, a court applying § 1821(j) explained that because it "do[es] not have the power to … interfere with the proper disposition of [receivership or conservatorship] assets," it may not "cordon off a pool of [those] assets" to benefit a plaintiff. *Bender v. Centrust Mortg. Corp.*, 833 F. Supp. 1540, 1543 (S.D. Fl. 1992); *see also Federated Bank v. FDIC*, No. 1:12-cv-3445-SCJ, 2013 WL 12170297, at *5 (N.D. Ga. Sept. 10, 2013) (§ 1821(j) barred a "declaration subordinating the FDIC-R[eceiver]'s interest in" certain assets because that "would be equivalent to an injunction requiring [it] to make payments in a certain order.").

Hence, § 4617(f) and the case law interpreting it make clear that FHFA gets to decide how to best exercise its powers. And § 4617(f) grants FHFA a sweeping protection that prevents this Court from allocating any fees to the Enterprise Properties.

### B. Section 4617(j)(3) Also Bars this Court from Allocating Mr. Duff's Fees to Enterprise Accounts.

This Court should also deny Mr. Duff's Second Motion to the extent it allocates fees to the Enterprise Properties because allocating any fees to the Enterprise Properties would violate a second HERA provision, 12 U.S.C. § 4617(j)(3). That provision mandates that "[n]o property of [an FHFA conservatorship] shall be subject to levy, attachment, garnishment, foreclosure, or sale *without the consent* of the [Conservator], nor shall any involuntary lien attach to the property of the [conservatorship]." 12 U.S.C. § 4617(j)(3) (emphasis added). That provision precludes any legal process or mechanism from depriving the Conservator of its interest in any property, except where the Conservator expressly consents. Because the Conservator did not expressly consent to the allocations at issue in the Second Motion, Section 4617(j)(3) precludes them.

#### 1. Section 4617(j)(3) Bars *Any* Judicially-Sanctioned Dissipation of Conservatorship Property Interests.

Section 4617(j)(3) bars *any* deprivation of conservatorship property—not just those deprivations effected through attachment, garnishment, foreclosure, or sale. Courts applying the analogous FDIC provision have focused on the effect of the action, not the label, and have applied it to bar judicial actions that *are not* enumerated specifically within the statute. For example, in *Trembling Prairie Land Co. v. Verspoor*, 145 F.3d 686 (5th Cir. 1998), the Fifth Circuit analyzed "whether the petition to quiet title is essentially analogous to a foreclosure, and is a 'triggering event'" under the FDIC analog to § 4617(j)(3), 12 U.S.C. § 1825(b)(2). *Id.* at 689. The court held that it was, reasoning that "[w]hile the term 'quiet title' is not specifically mentioned in … § 1825, the end result is functionally the same as that of the actions that are specifically listed in the statute:

9

the FDIC loses the Property," while the statute "represents the express will of Congress that the [conservator or receiver] must consent to *any deprivation of property*. . . ." *Id.* at 691 (emphasis added) (citation omitted); *see also S/N-1 REO Liab. Co. v. City of Fall River*, 81 F. Supp. 2d 142, 150 (D. Mass. 1999) (equating "deprivation" with "reduction in the value of the receivership's assets" (citation omitted)).

Thus, under § 1825(b)(2)—and by extension, § 4617(j)(3)—the conservator or receiver "must consent to *any deprivation of property*," *i.e.*, any judicially imposed "reduction in the value of the [protected] assets." *S/N-1 REO*, 81 F. Supp. 2d at 150 (emphasis added) (citations omitted). Nor are *Trembling Prairie* and *S/N-1 REO* outliers. § 1825(b)(2) also prohibits the filing of a lis pendens. Even though that is not expressly mentioned in the statutory text; courts treat "the list of state law liens and attachments as inclusive rather than exhaustive." *Santa Monica Mountains Conservancy v. FDIC*, Civ. A. No. 92-1650 SSH, 1992 WL 672288, at *1 (D.D.C. Aug. 25, 1992). That is because "[i]t's hard to imagine that even if Congress could direct its full time to the drafting of a statute of this kind, it could … undertake an encyclopedic reference to every particular device to be found in the armament of every one of our American jurisdictions." *Id.* at *1 (citation omitted).

### 2. The Statutory Protection of § 4617(j)(3) Can Be Overcome Only with FHFA's Explicit Consent.

Caselaw and public policy alike confirm that "consent," here, must be affirmative and express. For example, the Ninth Circuit has squarely held that unless FHFA affirmatively consents, § 4617(j)(3) applies automatically. *See Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2018), *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136 (9th Cir. 2018). These decisions foreclose the possibility of "implied" or "implicit consent." *See* Ruling at 32. In *Berezovsky*, the court rejected the plaintiff's implicit consent argument, observing that "the

statutory language cloaks Agency property with Congressional protection unless or until the Agency *affirmatively relinquishes it*" and emphasizing that "the Agency *did not agree* to forego its property interest." 869 F.3d at 929 (emphasis added). The Ninth Circuit in *SFR* stated that the bar on foreclosure sales without FHFA's consent applies "by default." 893 F.3d at 1149. Neither decision left open the possibility that "implicit consent" could satisfy § 4617(j)(3).

This conclusion is also supported by a court analyzing § 1825(b)(2), § 4617(j)(3)'s substantively identical FDIC analogue. In *Beal Bank, SSB v. Nassau County*, 973 F. Supp. 130 (E.D.N.Y. 1997), a local taxing authority argued that the FDIC, by inaction, impliedly consented to a tax lien foreclosure on property in a bank receivership. *Id*. at 133. The court rejected the argument, finding no support for an inference that Congress intended to condition the statute's operation on implicit consent. *See id.* at 133-34. The same logic applies to the application of § 4617(j)(3).

## **CONCLUSION**

FHFA and the Enterprises object to the Second Motion to the extent its fees and costs are allocated to the Enterprise Properties, as such action is precluded by federal law. The Court should carve out the Enterprise Properties from the allocation request and deny Mr. Duff's Second Motion to the extent the fees and costs are allocated against Enterprise Properties. Alternatively, FHFA and the Enterprises respectfully request that this Court defer ruling on the disbursements sought against the Enterprise Properties until the 7th Circuit has definitively ruled on FHFA's pending appeal.

Dated:  April 14, 2023

Respectfully submitted,

/s/ Michael A.F. Johnson
Michael A.F. Johnson
ARNOLD & PORTER
    KAYE SCHOLER LLP
D.C. Bar No. 460879, admitted pro hac vice
601 Massachusetts Avenue NW
Washington, DC  20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Michael.Johnson@arnoldporter.com

Daniel E. Raymond
ARNOLD & PORTER
    KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois  60602
Telephone: (312) 583-2300
Facsimile: (312) 583-2360
Daniel.Raymond@arnoldporter.com

*Attorneys for Federal Housing Finance Agency in its capacity as Conservator for the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation*

/s/ Jill L. Nicholson
Jill L. Nicholson
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, Illinois  60654
Telephone: (312) 832-4500
Facsimile: (312) 644-7528
jnicolson@foley.com

*Attorney for Federal National Mortgage Association (in conservatorship)*

/s/ Mark Landman
Mark Landman
LANDMAN CORSI
BALLAINE & FORD P.C.
120 Broadway, 13th Floor
New York, New York  10271
Telephone: (212) 238-4800
Facsimile: (212) 238-4848
mlandman@lcbf.com

*Attorney for Federal Home Loan Mortgage Corporation (in conservatorship)*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2023, I caused the foregoing **Federal Housing Finance Agency, Fannie Mae, and Freddie Mac's Joint Objection to Receiver's Second Motion for Approval of Fee Allocations For Interim Payment Pursuant to Receiver's Lien (Dkt. 1321)** to be electronically filed with the Clerk of the Court through the Court's CM/ECF system, which sent electronic notification of such filing to all parties of record.

                                                                /s/ Daniel E. Raymond