UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) EQUITYBUILD, INC., *et al.*, ) ) Defendants. ) ) | Civil Action No. 18-CV-5587 Judge Manish S. Shah Magistrate Judge Young B. Kim |

**SEC'S OPPOSITION TO BC57's MOTION TO STAY PENDING APPEAL**

The victimized investors of the Cohens' Ponzi scheme have waited nearly five years to receive *any* compensation for their losses. After a thorough claims process featuring extensive discovery, briefing, and the Court's well-reasoned Opinion, the Group 1 investors are finally in a position to see some of their stolen money returned. By seeking a stay, BC57 follows the same playbook as its fellow Institutional Lenders, attempting to further delay, obstruct, and deprive the investors of any recovery. BC57 ignores that Judge Lee has already rejected attempts by the Institutional Lenders to stay the Receiver's efforts to compensate victims while they pursue unfounded appeals. *See* ECF 899. As with that failed stay motion, BC57 cannot show its appeal has the requisite likelihood of success or that it faces irreparable harm. Accordingly, the Court should deny BC57's motion and allow the defrauded Group 1 investors to finally be repaid.

**A. BC57 Cannot Meet its Burden Required for a Stay**

As Judge Lee noted in denying prior attempts by Institutional Lenders for a stay pending appeal, the Court considers: "(1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether a stay

would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest." ECF 899 at 7 (quoting *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997)). As the moving party, BC57 faces the "threshold burden[] to demonstrate the first two factors." *Id.* (quoting *Forty-Eight* at 1300). If BC57 cannot establish *both* of the first two factors, "the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis." *Id.* (quoting *Forty-Eight* at 1301); *see also Chao v. Current Dev. Corp.*, 2008 U.S. Dist. LEXIS 36893, at *11-12 (N.D. Ill. May 2, 2008) ("If defendants fail to make the requisite showing of likelihood of success, or irreparable harm, or both, the analysis must end there and the stay must be denied").

Because BC57 cannot meets its burden on any of the required elements, the Court should deny its request for a stay.

### B. BC57 Fails to Show that Its Appeal Will Succeed on the Merits

The Court should deny BC57's stay request, in the first instance, because BC57 cannot show the requisite likelihood of success. To warrant a stay pending appeal, "where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet his burden." *Forty-Eight Insulations*, 115 F.3d at 1301. Thus, the movant needs "to demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because [it] must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *Id.*; *see also Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006) (denying stay pending appeal; movant "must show that it has a significant probability of success on the merits."). BC57's claim that it must merely demonstrate "more than a minimal likelihood of success on appeal" (ECF 1455 at 4) is both unsupported and incorrect.

2

BC57 has failed to show its appeal will succeed on the merits. Here, the Court made two independent findings establishing the Group 1 investors have priority to be paid from the Receiver's Group 1 property sales. First, the Court found the releases BC57 claims extinguished the investors' security interests were "facially defective" such that the investors' first-in-time security interests remain in effect. ECF 1386 at 12-13. Also, the Court held BC57 failed to meet its burden to show "Equitybuild Finance had the authority to bind individual investors to Equitybuild Finance's purported mortgage releases." *Id.* at 14-27. Given these two distinct findings, in order to prevail on appeal BC57 must show not only that this Court got it wrong, but that the Court got it wrong twice. This further reduces any likelihood BC57 will succeed.

BC57's odds of success are even slimmer given the Court's wide discretion to equitably distribute the proceeds of the Receiver's property sales. *See, e.g.*, *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 327-334 (7th Cir. 2010) (affirming priority determination and receivership distribution plan, noting district court's "broad equitable power in this area" and "the deferential standard-of-review applicable to decisions of this kind."); *SEC v. Enter. Trust Co.*, 559 F.3d 649, 652 (7th Cir. 2009) ("District judges possess discretion to classify claims sensibly in receivership proceedings… The district court did not abuse that discretion when approving the receiver's proposal.") (citations omitted); *SEC v. Huber*, 702 F.3d 903, 908-09 (7th Cir. 2012) ("The cases treat the receiver's choice among allocation schemes as one within the discretion of the district court to approve or disapprove, like other aspects of the administration of a receivership.").

Even under a less deferential standard of review, BC57 cannot show that this Court's holdings were incorrect. For instance, BC57 continues to premise its argument that the releases were valid due to an alleged "scrivener's error." ECF 1455 at 7. In doing so, BC57 ignores the black-letter proposition that it bears the burden of establishing a scrivener's error by clear and

convincing evidence. *See* ECF at 1386 at 12-13 (citations omitted). Yet BC57 still cannot point to "*any evidence* from Equitybuild or Equitybuild Finance," the only parties signing the releases, demonstrating their intent vis-à-vis the releases. *Id.* (emphasis added).

Nor does BC57 offer any valid reason to reverse the Court's holdings that Equitybuild Finance lacked the authority to release the investors' mortgages or that BC57's payment to Equitybuild Finance (but not the mortgage-holding investors) released the mortgages. Indeed, in dismissing BC57's contentions on these issues, the Court undertook a thorough and detailed review of the underlying documents, BC57's expert testimony, Illinois common law, and the Illinois mortgage statutes. ECF 1386 at 14-29. Rather than proffering conflicting evidence or contrary controlling authority, BC57 merely rehashes the same arguments the Court correctly rejected and raises the same cases the Court properly distinguished. In short, nothing in BC57's motion suggests the Seventh Circuit would find error in the Court's well-reasoned Opinion.

To the extent BC57 appeals the Court's decision not to hold an evidentiary hearing, that claim lacks merit because the Court's priority determinations did not rely on any disputed facts. *See SEC v. Enter. Trust*, 559 F.3d at 653 ("Appellants say that the district court should have held an evidentiary hearing before ruling on the receiver's plan of distribution. But hearings are required only when material facts are in dispute."). BC57's stay motion does not allege the existence of any disputed facts, let alone identify any error in the Court's factual findings.

Because BC57 cannot demonstrate a significant or substantial likelihood of success on appeal, the Court should deny its stay motion on this ground alone.

### C. BC57 Cannot Demonstrate Irreparable Injury

Attempting to establish irreparable injury, the only harm BC57 alleges are "practical difficulties the parties would face … unwinding the distribution." ECF 1455 at 10. Notably,

4

even assuming such logistical challenges exist, BC57 does not explain how such difficulties would actually harm its business or operations, especially given the protection provided by its title insurance policy. *See Nken v. Holder*, 556 U.S. 418, 434-35 (2009) ("simply showing some 'possibility of irreparable injury' fails to satisfy the second [stay] factor. As the Court pointed out earlier this Term, the 'possibility' standard is too lenient.") (citations omitted).

Unable to cite a Seventh Circuit or Northern District of Illinois case holding that such administrative logistics constitutes irreparable injury, BC57 ignores the very case it argues is "particularly instructive" and is the primary case it cites to justify appellate jurisdiction. (*See* BC57 Docketing Statement, ECF 1454 at 3). Indeed, *SEC v. Wealth Management* involved an identical procedural posture: a small subset of creditors who objected to a receiver's recommended distribution plan moved to stay the distribution pending their appeal. 628 F.3d at 327-328. Both the district court and Seventh Circuit denied the stay motions, which could only be granted upon a showing of irreparable injury. *Id.* ("After filing their notice of appeal, the objectors asked the district court to stay the receiver's distribution until the resolution of the appeal. The district court denied this request. The objectors brought the stay motion to this court, and again it was denied.").

*Wealth Management* likewise observed that while unwinding an earlier distribution involving 300 investors and $4.2 million would "pose administrative hurdles," it did not find that the challenges would be so great as to justify dismissing the appeal on "equitable mootness" grounds. 628 F.3d at 332-33. Here, BC57 concedes the proposed distribution involves less money than *Wealth Management* ($3.76 million) and approximately half the number of claimants (169). *See* ECF 1455 at 8. If the more complex distribution in *Wealth Management* did not justify a stay pending appeal, the less complex one here certainly does not.

5

Consistent with *Wealth Management*, in refusing to stay a $2.3 million distribution pending appeal, *Chao* rejected claims of irreparable harm identical to those BC57 now advances:

> At the March 13, 2008 hearing, we expressed the concern that once the funds were distributed, there would be no assurance that the former participants would return the funds to the constructive trust if defendants succeed on appeal. We continue to have that concern. However, upon reflection, we are not convinced that this *possible* harm constitutes irreparable harm. "It . . . is difficult to establish irreparable injury based on prospective monetary damages alone."
>
> In addition, CFI fairly observes that we cannot presume that the former participants who receive distributions would defy a court order to refund them if defendants succeed on appeal, and the return of some or all of the money distributed is required. To the extent that any former plan participants were to choose that course, the Court would have the authority to compel return of the money. The fact that such a course of action might be difficult or time consuming does not establish that recovery of the funds would be unavailable, or that harm from a distribution later reversed on appeal would be irreparable.

*Chao*, 2008 U.S. Dist. LEXIS 36893, at *3, *18-19 (citation omitted and emphasis in original). As in *Chao*, BC57's failure to establish irreparable harm, by itself, merits denying its request for a stay. *Id.* at *19.[1]

### D. Staying the Distribution Would Compound the Harm Suffered by the Victimized Investors

Even if the Court determines that BC57 has satisfied the first two stay factors, BC57 cannot possibly demonstrate that its potential harm outweighs, let alone is significantly greater than, the harm staying the distribution would impose on the victimized investors. *See, e.g.*, *In re Beswick*, 98 B.R. 904, 906 (N.D. Ill. Apr. 13, 1989) ("The Court notes that while irreparable harm must be shown by the [movant seeking a stay], only substantial harm need be shown by

---

[1] Unlike *Wealth Management* and *Chao*, the primary "irreparable harm" cases cited by BC57 involved much larger distributions. *See, e.g.*, *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 2012 U.S. Dist. LEXIS 102940, *13-14 (S.D.N.Y. Apr. 3, 2012) ($120 to million $140 million held in escrow); *SEC v. ISC, Inc.*, 2017 U.S. Dist. LEXIS 139258, *2 (W.D. Wisc. Aug. 30, 2017) ($15.2 million distribution); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1130 (8th Cir. 1984) ($22.7 million in escrow).

other parties.").

Granting BC57's stay request means further delaying the return of funds to defrauded investors who have been waiting nearly 5 years for such relief. This would only compound the enormous harm to the Cohens' victims. *See Alexander v. Chicago Park Dist.*, 1990 U.S. Dist. LEXIS 3741, at *4-5 (N.D. Ill. Apr. 2, 1990) (Rovner, J.) (denying stay where the "only injury likely to affect [movant] is the possibility that the money will be paid to plaintiffs and will not be recoverable by [movant] should [it] obtain a reversal… To the extent that this type of injury is possible, it is greatly outweighed by the possible harm of a stay to the class members.").

At the most recent hearing, the Court heard powerful testimony from Ms. Kalisiak and Mr. Marcus about the profound harm the delay in distributions is causing them and other defrauded investors. Apr. 26, 2023 Hearing Tr. at 8:17-12:6 (Kalisiak testimony); *id.* at 39:1-40:4 (Marcus testimony). Given this compelling evidence of investor suffering, BC57's conclusory claims that a stay will not harm investors (ECF 1455 at 11-12) ring hollow. Nor can BC57 show that its harm significantly outweighs the damage to investors, especially since BC57 is protected by title insurance while the investors are not.

### E. Staying Investor Distributions Would Not Serve the Public Interest

Staying distributions to defrauded investors would not be in the public interest. In analogous circumstances, the *Wealth Management* district court explained why staying investor distributions does not serve the public interest:

> the public interest would not be served by granting the stay movants request. As the Receiver notes, the SEC brought this enforcement action under the federal securities laws to protect the public interest, and the Receiver herself was also appointed to protect the public interest. Granting a stay here, where movants have not made a showing that they are likely to prevail on appeal, would frustrate the purpose of this equity receivership.

*SEC v. Wealth Mgmt. LLC*, Case No. 09-cv-506, ECF No. 209 at 2-3 (E.D. Wisc. Feb. 3, 2010).

The same reasons why staying a distribution would not be in the public interest exist here. As part of its TRO filing at the onset of this litigation, when the SEC moved for the Receiver's appointment, the SEC explained the necessity for a receiver:

> This case calls out for the appointment of a receiver. Defendants raised more than $135 million by defrauding investors in a real estate investment scheme. *A receiver is necessary to marshal and preserve assets to allow for the maximum possible recovery for investors*. The SEC believes that *significant assets exist that could be used to* satisfy Defendants' disgorgement obligations and *fund an eventual distribution to investors*, most notably the large portfolio of Chicago real estate Defendants accumulated using investor funds. In light of their misconduct, Defendants cannot be trusted to continue to manage these properties or to liquidate them or other assets for their victims' benefit. *The timely imposition of a receiver is necessary to secure and inventory Defendants' assets to ensure the maximum recovery for the defrauded investors*.

ECF 4 at 17 (emphasis added). By preserving and liquidating assets to be distributed to the prevailing Group 1 investor-claimants, the Receiver has discharged his Court-appointed function in the public interest. That public interest would not be served by halting the Receiver's distribution efforts.

Finally, BC57's stay motion is just the latest example of the delay tactics employed by BC57 and the other Institutional Lenders throughout this case. The Court has admonished the Institutional Lenders (BC57 included) for their repeated use of objections and motions to bog down the Receiver, thereby delaying and reducing the available recovery for prevailing claimants. *See*, *e.g.*, ECF 1031 at 11-12 n.32; ECF 824 at 3. Rewarding BC57's continued attempts to delay would provide precedent for future parties seeking to disrupt a receiver's work. That would not serve the public interest.

### F. Conclusion

For the foregoing reasons, the Court should deny BC57's stay motion and allow the distribution to the victimized Group 1 investors to begin.

May 12, 2023                                              Respectfully submitted,

                                                                               /s/ Benjamin Hanauer
Benjamin J. Hanauer (hanauerb@sec.gov)
U.S. Securities and Exchange Commission
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Fax (312) 353-7398

## CERTIFICATE OF SERVICE

I hereby certify that I provided service of the foregoing Response, via ECF filing, to all counsel of record and Defendant Shaun Cohen, on May 12, 2023.

    /s/ Benjamin Hanauer
Benjamin J. Hanauer
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398

One of the Attorneys for Plaintiff