UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 18-cv-5587 ) |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, AND SHAUN D. COHEN, | ) Hon. Manish S. Shah ) ) ) ) |
| Defendants. | ) |

**OPPOSITION OF CERTAIN INDIVIDUAL INVESTORS TO
CLAIMANT BC57'S MOTION FOR STAY PENDING APPEAL**

The undersigned Group 1 Investor-Lenders, specifically Arthur and Dinah Bertrand, Pat Desantis, Girl Cat Capital West LLC, Sidney Haggins, Initium LLC / Harry Saint-Preux, Robert Jennings, Knickerbocker Investment Group LLC, Steven and Linda Lipschultz, Jill Meekcoms, Lori Moreland, Mark Mouty, Glynis Sheppard / J. Fields Living Trust, Randall Sotka / Tahiti Trust / Big Bean LLC, Louis Duane Velez, Kirk Road Investments, LLC (related parties, Leroy Johnson, Martha Johnson, LMJ Sales, Inc.), and 1839 Fund LLC (collectively, the "Certain Investor-Lenders"), by and through their undersigned counsel, oppose Claimant BC57's Motion for Stay Pending Appeal (the "Stay Motion") filed by Claimant BC57, LLC ("BC57").

**INTRODUCTION**

Now in its 6th calendar year, this Receivership is at the brink of distributing proceeds that will begin to allow the victims of the illegal scheme orchestrated by the Cohens to recover some of their losses. Rather than allow that to occur, however, BC57—whose own failures to take reasonable steps to protect itself [*see, e.g.*, Doc. 1386, pp. 27-28] resulted in it making a loan to

the Cohens that enabled them to continue their scheme—seeks to stay the distribution of those funds. In this, BC57 continues the strategy the institutional lenders have employed from the start to delay this equitable receivership. Because BC57 cannot satisfy the factors to obtain the stay it seeks, the Court should reject this latest instance of this cynical strategy and, instead, allow the investor lenders to, finally, begin to be compensated for the harms they suffered.

## ARGUMENT

### I.   THE COURT LACKS JURISDICTION TO HEAR THIS MOTION.

The Court ruled in February that the mortgages given to the individual investors in Group 1 of this Receivership, including the Certain Investor Lenders, had priority over the mortgage granted to BC57. [Doc. 1386]. Based on that ruling, on May 3, 2023, the Court entered an Order providing for the distribution of the proceeds of the Group 1 properties to the individual investors. [Doc. 1451 (the "Distribution Order")]. The next day, May 4, 2023, BC57 filed three documents in succession:

1. A Notice of Appeal, appealing the Distribution Order to the Seventh Circuit Court of Appeals. [Doc. 1453].

2. A docketing statement pursuant to Seventh Circuit Rule of Appellate Procedure 3(c)(1) asserting the appellate court's jurisdiction over this matter pursuant to 28 U.S.C. 1291 ("final judgments") and the Collateral Order Doctrine. [Doc. 1454].

3. The instant Stay Motion brought pursuant to Federal Rule of Civil Procedure 62. [Doc. 1455].

The order of these filings demonstrates that the Court lacks jurisdiction to rule on the last of these filings, the Stay Motion. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Company*, 459 U.S. 56, 58 (1982). As the Court explained in *Griggs*, Federal Rule of

2

Appellate Procedure 4(a)(4) provides only limited circumstances in which district courts can continue to entertain motions related to the appealed order. *Id*. at 59. Specifically, the terms of FRAP 4(a)(4) provide that a district court retains jurisdiction to hear motions brought pursuant to the following rules: FRCP 50(b) for a new trial; FRCP 52(b) to amend or make additional factual findings; FRCP 54 for attorney's fees; FRCP 59 to alter or amend a judgment; and FRCP 60 for relief from a judgment.

BC57's Stay Motion fits within none of these exceptions identified in FRAP 4(a)(4). BC57 brought its Stay Motion under FRCP 62 ("Stay of Proceedings to Enforce a Judgment"). Rule 62, however, is not one of the enumerated exceptions in FRAP 4(a)(4). Moreover, as BC57 contends in its docketing statement, the Distribution Order is a final order with respect to the proceeds of the Group 1 properties and ready for enforcement. [Doc. 1454 p. 2-3].

As the Seventh Circuit has explained, an additional exception to the general rule "that just one court at a time possesses jurisdiction" means that "the doctrine applies only to 'those aspects of the case involved in the appeal.'" *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995). Thus, in cases involving interlocutory appeals and the Collateral Order Doctrine, the district court retains jurisdiction over those cases during the pendency of the appeal. *Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014). However, such continuing jurisdiction is still limited:

> [T]he district court's jurisdiction in those cases is not really "concurrent" with that of the court of appeals, in the sense of covering the same issues. The retained jurisdiction allows the district court to proceed with other aspects of the case; it does not mean that the district court can continue to modify the same order that is up on interlocutory appeal. The latter situation would be at best wasteful of resources and at worst chaotic.

*Id*. This principle is directly applicable to BC57's Stay Motion.

In its Stay Motion, BC57 asks this Court to modify the very order it is appealing by staying its enforcement. Central to BC57's argument is that it's "there is a significant probability of success on the merits of BC57's appeal." [Doc. 1455, p. 4]. While, as explained below, this is not accurate, it nonetheless highlights the fact that ruling on the Stay Motion requires this Court to rule on the issues that BC57 has now placed before the appellate court, including whether the Court's Distribution Order was made in error. This means that BC57's request for a stay results in two courts simultaneously having jurisdiction over the same order in contradiction to well-established principles of Federal jurisdiction. This Court should therefore deny BC57's Motion based on lack of jurisdiction.

## II.  BC57 CANNOT SATISFY THE ELEMENTS FOR OBTAINING THE STAY IT SEEKS.

Even if this Court does have jurisdiction to consider BC57's Stay Motion, that motion still fails because BC57 has not satisfied the elements necessary to obtain the stay it seeks. As BC57 correctly notes, to obtain a stay it must show "that it has a significant probability of success on the merits; that it will face irreparable harm absent a stay; and that a stay will not injure the opposing party and will be in the public interest." [Doc. 1455, p. 3 (quoting *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006)]. Importantly, parties seeking to satisfy these factors "have threshold burdens to demonstrate the first two factors" and "[i]f the movant does not make the requisite showings on either of these two factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1987). While BC57 cites to *In re A&F Enterprises, Inc. II* and cases from outside of the Seventh Circuit in hopes of lessening its burden, the *In re A&F Enterprises* opinion relies on *In re Forty-Eight Insulations* and does nothing to change the latter's

4

clear holding regarding the import of showing both a significant probability of success on the merits and irreparable harm. *In re A&F Enters., Inc. II*, 742 F.3d at 766.[1]

As shown below and in the opposition filed by the SEC [Doc. 1470], which the Certain-Investor Lenders incorporates by reference, BC57 cannot satisfy either of the threshold factors, nor can it satisfy the remaining elements. Accordingly, the Court should deny its request for a stay.

      **A.**      **BC57's Claimed "Significant Probability of Success" Fails—Again.**

Trying to show that it is likely to succeed on the merits of its appeal, BC57 rehashes the arguments it has already presented to the Court and that the Court has already rejected, only now with a different emphasis resulting from them being presented in a different order. [*Compare* Docs. 1152 and 1217 *with* Doc. 1455]. But re-ordering rejected arguments does nothing to change their substance. Thus, the arguments previously presented in the claims process by the Certain Individual Investors remain valid and, rather than repeating them here, they are incorporated by reference. [*See* Docs. 1151, 1215]. By offering nothing new in response to these arguments and those from others, BC57's arguments once again fail for the reasons already fully considered and discussed by the Court in its Memorandum Opinion and Order. [Doc. 1386]. Thus, BC57's discussion does nothing to show that it has a significant probability of success on appeal.

While this alone is enough to justify rejecting BC57's Stay Motion, there is an additional, even more fundamental, reason why it should fail: BC57 seeks to apply the wrong standard of review. [Doc. 1455, p. 4]. In its Stay Motion, BC57 claims that "[e]ach of the issues BC57 plans to raise on appeal are legal issues, subject to *de novo* review." [*Id.*]. BC57 is wrong.

---

[1] BC57 asserts that there is "more than a minimal likelihood of success on appeal." [Doc. 1455, p. 4]. This clearly misstates the standard for a stay, which assesses not whether there is more than a minimal likelihood of success, but rather whether there is a "significant probability" of success, as even BC57 recognizes earlier in its Stay Motion. [*Id.*, p. 3].

On appeal, the Court's decision here will be reviewed for an abuse of discretion, as even cases cited by BC57 establish. This is because a district court's supervision of an equitable receivership involves "broad equitable power." *SEC v. Wealth Management LLC*, 628 F3.d 323, 333-34 (7th Cir. 2010). This means that a district court's decisions in an equitable receivership are subject to "narrow" appellate scrutiny," with decisions reviewed for an abuse of discretion. *Id.*; *see also SEC v. Enter. Trust Co.*, 559 F.3d 649, 652 (7th Cir. 2009). Though BC57 cites to *Wealth Management* to support its standing to appeal [Doc. 1455, p. 3, n.1], it fails to acknowledge that it sets forth the proper standard of review for that appeal.

Instead, in support of its flawed attempt to apply *de novo* review, BC57 cites *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 985 (7th Cir. 2010). *Envision Healthcare*, though, has no application here. In *Envision Healthcare* the Seventh Circuit reviewed a district court decision declining to hear a declaratory judgment action regarding insurance coverage under the *Wilton/Brillhart* abstention doctrine, which allows courts to abstain from deciding declaratory judgment actions even if they otherwise have jurisdiction. There is no such abstention issue here. What is more, *Envision Healthcare* actually holds that the application of the doctrine is reviewed for abuse of discretion (and decides that the district court did not abuse its discretion in abstaining). 604 F.3d at 985-87. Thus, nothing about *Envision Healthcare* supports BC57's assertion regarding the standard of review.

When the correct abuse of discretion standard is applied, BC57's chances of success on appeal dwindle even further. This is because, "in the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet his burden" and must show "a substantial showing of likelihood of success, not merely the possibility of success." *In re Forth-*

*Eight Insulations, Inc.*, 115 F.3d at 1301 (citations omitted). This makes sense because, on appeal, the movant "must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *Id.* Thus, BC57 must show that it has a "significant probability of success on the merits" of showing that the Court abused its broad equitable power. [Doc. 1455, p. 3 (citing *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006))]. BC57 simply has not and cannot make such a showing.

### B. BC57 Cannot Show That It Will Suffer Irreparable Harm.

BC57 asserts that it will suffer irreparable harm if its Stay Motion is not granted, arguing that recovering the money that is going to be distributed might be difficult in the event that its appeal is somehow successful. Notably, BC57 does not clarify how those possible difficulties would actually harm BC57's business. [Doc. 1455, pp. 8-9]. But even if it had, those difficulties still should not, on their own, satisfy this factor. Indeed, the Seventh Circuit has defined irreparable harm as one where money is inadequate to repair the harm. *Orr v. Schicker*, 953 F.3d 490, 502 (7th Cir. 2020) (in the context of an injunction, irreparable harm defined as "harm that 'cannot be repaired' and for which money compensation is inadequate" (citing *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). Yet here, BC57 is focused only on money.

BC57 also argues that if the stay is not granted and it wins its appeal, then it will be denied the benefit of the priority it claims its mortgage should have. [Doc. 1455, p. 9]. This tone-deaf argument seemingly ignores that the reverse is also true: if the Stay Motion is granted, then the investor lenders (whose mortgages the Court has already ruled actually do have priority) will continue to be denied the benefit of that priority as they continue to wait to receive the Group 1 proceeds that the Court has already ruled they should receive. Given that, as discussed above, the Court did not abuse its discretion, this means that BC57's own argument here shows why its Stay Motion should be denied.

Finally, BC57's Stay Motion should be denied because the title insurance standing behind BC57's loan to EquityBuild means it is not actually likely to suffer *any* harm, let alone an irreparable one. As has been noted previously by both the SEC [*see e.g.*, Doc. 1146, p. 10; Doc. 1216, pp. 2, 16] and the Certain Individual Investors [*see e.g.*, Doc. 1215, p. 9], BC57 has title insurance that, in addition to funding its current actions, will likely compensate it for whatever relief it does not recover here. While the Court held that BC57's insurance status was irrelevant to the validity of the releases, and therefore did not consider it in deciding the priority issues that BC57 now wants stayed while it appeals [Doc. 1386, p. 11], that status is relevant to BC57's Stay Motion. Indeed, it shows that, contrary to its current arguments, BC57 will not suffer irreparable harm if its efforts fail and the distribution of the Group 1 proceeds to the investor lenders occurs as the Court ruled it should.

       **C.**     **BC57's Claim That A Stay Will Not Injure Any Of The Parties Ignores Reality.**

While BC57's failures on the first two factors means the Court need not reach the remaining factors, if it does, BC57's arguments fare no better. As the Court was recently reminded, EquityBuild's fraud significantly impacted lots of people who relied on the money they invested with EquityBuild to support their life. [Doc. 1447 (transcript of April 26, 2023 status hearing)]. Despite this, BC57 blithely asserts "[a] stay will not injure any of the parties or claimants in this matter, including the Investor-Lenders." [Doc. 1455, p. 11]. The statements made to the Court at the April 26, 2023 hearing—to say nothing of the Court's knowledge of the realities of this Receivership—demonstrate this to be false. Indeed, it can hardly be disputed that, if a stay is entered, individuals who invested their retirement savings will continue to be without the portion of those funds that the Receiver has recovered. Similarly, as noted above, entry of a stay would effectively deny the investor lenders the priority of their mortgages—a harm that BC57 recognizes

8

when it might suffer it but ignores when it might be suffered by others. These harms show that BC57's suggestion that there would be no injuries if a stay is granted stretches credulity and shows that BC57 cannot satisfy the third factor it must satisfy to get the stay it seeks.

### D. A Stay Is Not In The Public Interest.

In assessing BC57's Stay Motion, the Court has on one side a single lender who failed to properly protect itself when it made that loan. On the other side are, at least, the SEC and the Certain Individual Investors, who represent or are the members of the public more generally. This alignment alone should be enough to show that a stay is not in the public interest. Indeed, as the district court in *Wealth Management* noted in a decision affirmed by the Seventh Circuit, where the SEC brought an enforcement action to protect the public interest, resulting in the appointment of a Receiver to protect the public interest, granting a stay, "where movants have not made a showing that they are likely to prevail on appeal, would frustrate the purpose of this equity receivership." *SEC v. Wealth Mgmt. LLC*, Case No. 09-cv-506, Doc. No. 209 at 2-3 (E.D. Wisc. Feb. 3, 2010).

That conclusion is reinforced by the fact that, with this Receivership now in its 6th calendar year, rejecting the Stay Motion means that the individual investors in Group 1 will, finally, receive the portion of their investment that the Receiver was able to recover, allowing them to move forward with their lives. Granting that stay, on the other hand, would mean that they must continue to wait, likely into a 7th calendar year, even as BC57 suffers no identified harms of any sort. Given these options, rejecting the Stay Motion is clearly the one that best serves the public interest.

## CONCLUSION

For the reasons set forth above as well as those presented by the SEC in its opposition [Doc. 1470], the Court should now reject BC57's latest attempt to delay justice and allow the long-sought distribution of the Group 1 proceeds to happen.

Dated:  May 15, 2023

**KIRK ROAD INVESTMENTS, LLC, LEROY JOHNSON, MARTHA JOHN-SON, AND LMJ SALES, INC.,**

By:  /s/ *Jerome F. Crotty*

Jerome F. Crotty
Kevin P. Brown
Rieck and Crotty, P.C.
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
312-726-4646
jcrotty@rieckcrotty.com
kbrown@rieckcrotty.com

**ARTHUR AND DINAH BERTRAND, PAT DESANTIS, GIRL CAT CAPITAL WEST LLC, SIDNEY HAGGINS, INITIUM LLC / HARRY SAINT-PREUX, ROBERT JENNINGS, KNICKERBOCKER INVESTMENT GROUP LLC, STEVEN AND LINDA LIPSCHULTZ, JILL MEEKCOMS, LORI MORELAND, MARK MOUTY, GLYNIS SHEPPARD / J. FIELDS LIVING TRUST, RANDALL SOTKA / TAHITI TRUST / BIG BEAN LLC, LOUIS DUANE VELEZ,**

By:  /s/ *Max A. Stein*
         One of their attorneys

Max A. Stein
TottisLaw
401 N. Michigan Ave., Suite 530
Chicago, IL  60611
(312) 527-1400
mstein@tottislaw.com

10

**1839 FUND LLC**

By:   /s/ *Robert J. Augenlicht*

Robert J. Augenlicht
Law Office of Robert J. Augenlicht
123 W. Madison St.
Suite 700
Chicago, IL 60602
312.526.3928
robert@augenlichtlaw.com