**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 18-cv-5587** |
| ) | |
| **v.** ) | **Hon. Manish S. Shah** |
| ) | |
| **EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,** ) ) ) | **Magistrate Judge Young B. Kim** |
| ) | |
| **Defendants.** ) | |
| ) | |

**RECEIVER'S NINETEENTH INTERIM APPLICATION AND MOTION**
**FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES**
**OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Kevin B. Duff, as the receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc.,

EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen

and Shaun Cohen, as defined in the Order Appointing Receiver entered August 17, 2018 (Dkt. 16),

as supplemented by Order entered March 14, 2019 (Dkt. 290) and Order entered February 21, 2020

(Dkt. 634) (collectively, the "Receivership Defendants"), and pursuant to the powers vested in him

by Order of this Court, respectfully submits this Nineteenth Interim Application ("Application")

for the First Quarter 2023, and moves this Court for an order approving payment of the fees and

expenses of the Receiver, the Receiver's counsel, Rachlis Duff & Peel, LLC ("RDP"), and the

Receiver's forensic IT consultant, Prometheum.  In support of his Application and Motion, the

Receiver states as follows:

1

## I.      BACKGROUND

On August 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a civil Complaint against Jerome Cohen, Shaun Cohen, EquityBuild Inc., and EquityBuild Finance LLC (collectively the "Defendants") alleging violations of federal securities laws, along with a motion for entry of an asset freeze, preliminary injunction, and other ancillary relief.  (Dkt. 1 & 3, respectively)

In their Complaint against the Defendants, the SEC alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77e(a) and (c), and Section 17(a) of the Securities Act, 15 U.S.C. §§77q(a).  (Dkt. 1)

The Complaint further alleged that the Defendants operated a Ponzi-scheme that raised at least $135 million from more than 900 investors by, among other things, making untrue statements of material fact in connection with the sale of promissory notes allegedly secured by residential real estate primarily located on the south side of Chicago.  (*Id.* ¶¶ 1-7, 17, 20-51)

On August 28, 2018, the Court entered a judgment against defendants Jerome Cohen and Shaun Cohen which, among other things, enjoined future violations of federal securities laws. (Dkt. 40)

In connection with its civil action, the SEC sought and obtained Court approval for the appointment of a Receiver, and on August 17, 2018, this Court entered an Order Appointing Receiver.  (Dkt. 16)

2

Under the Order Appointing Receiver, the Receiver was authorized to engage and employ persons and entities in his discretion to assist him in carrying out the duties and responsibilities set forth in the Order.  (*Id.*, Order Appointing Receiver, ¶ 54)

Accordingly, the Receiver retained RDP as special counsel, and, on August 20, 2018, the Court entered an Order approving RDP's rates.  (Dkt. 19)  On August 31, 2018, the Receiver retained Prometheum to access and preserve data within EquityBuild's cloud-based storage systems and provide related IT services, and, on September 6, 2018, the Court entered an order approving Prometheum's rates.  (Dkt. 56)

Pursuant to the Order Appointing Receiver, the Receiver and his retained personnel are entitled to "reasonable compensation and expense reimbursement" from the Receivership Estate, as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. (Dkt. 16, ¶ 69)

## II.     NINETEENTH INTERIM APPLICATION

Pursuant to the Billing Instructions, the Receiver provides the following information regarding this Application:

  a.  The Application covers the period from January 1, 2023 through March 31, 2023.

  b.  The names or job titles and hourly rates of all professionals for RDP as well as Prometheum's hourly rates, are attached as **Exhibit A**.

  c.  This is the Receiver's Nineteenth Interim Application.  The dates and amounts of the Receiver's prior interim fee applications, the orders and amounts allowed, and the amounts paid and unpaid as of March 31, 2023, are attached hereto as **Exhibit B**.

**III. CASE STATUS**

Pursuant to the Billing Instructions, the Receiver provides the following information regarding the status of the case, and activities performed specifically for the period covered by this Application. *See also* Receiver's Nineteenth Status Report (First Quarter 2023) for additional information. (Dkt. 1448)

a.      Cash on Hand and Funds Received and Disbursed During the Quarter

The Receiver's Standardized Fund Accounting Report ("SFAR") for the First Quarter 2023 is attached as **Exhibit C**. The SFAR sets forth the funds received and disbursed from the Receivership estate during this reporting period. As reported in the SFAR, the amount of cash on hand as of March 31, 2023 was $5,028,664.13. The information reflected in the SFAR was based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

b.      Receiver's Administration of the Case

Upon his appointment, the Receiver began making efforts to determine the nature, location, and value of all property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, choses in action, rights and other assets, together with all profits, interest, or other income attributable thereto, which the Receivership Defendants owned, possessed, retained a beneficial interest in, or controlled directly or indirectly, and to preserve and maintain those assets. In furtherance of such, the Receiver took, *inter alia*, the following actions:

i.        Identification and Preservation of Assets

There was no material work done in this category during the quarter, although certain work regarding restoration of expenses associated with various assets was performed, as discussed in the next section.

ii.        Financial Reporting and Funds Restoration

On February 28, 2023, the Receiver filed his Third Restoration Motion, seeking the Court's approval to reimburse the Receiver's Account and/or pay third party expenses out of the relevant property accounts.  (Dkt. 1393)   Two sets of objections were received, both of which related to the two properties located at 1131 E 79th Street and 7024 S Paxton.  The Receiver worked to provide counsel for Federal National Mortgage Association ("Fannie Mae") with the documentation requested in its objections, and Fannie Mae withdrew the objections. (Dkt. 1411, 1431) On March 15, 2023, the Receiver filed a reply to the objections of the Federal Housing Finance Agency ("FHFA"), which remain pending. (Dkt. 1410, 1412 1420)  The Receiver also prepared a proposed order partially granting the motion with respect to all other properties, which the Court granted on March 27, 2023 (Dkt. 1432, 1433), and the Receiver subsequently made the approved transfers and payments.

iii.        Open Litigation

During the First Quarter 2023, the Receiver and his retained counsel devoted efforts to two lawsuits prosecuting claims asserted against former EquityBuild professionals including, *inter alia*: (1) the law firm Rock Fusco & Connelly LLC ("Rock Fusco"), (2) Ioana Salajanu, a lawyer formerly at Rock Fusco, (3) the law firm Bregman, Berbert, Schwartz & Gilday, LLC and (4) lawyer Mark L. Rosenberg. These claims are for professional malpractice and aiding and abetting the Cohen's breaches of their fiduciary duties.

- In Duff *v. Rock Fusco & Connelly, LLC, Ioana Salajanu, and Berbert Bregman Schwartz & Gilday, LLC*, Case No. 20-L-8843 (Cir. Ct. Cook Cty.), the Receiver continued to address written and oral discovery issues and continued review and analysis of EquityBuild records and records produced in discovery. The Receiver is in the process of preparing an amended complaint based on facts uncovered in discovery. The Receiver has also worked to address several third-party complaints filed by the defendants.

- In *Duff v. Mark L. Rosenberg and Law Offices Of Mark L. Rosenberg*, Civil Action No. 1:21-cv-6756 (N.D. Ill.), the parties completed several joint status reports and have agreed in principle on a resolution of the Receiver's Motion for Rule 11 Sanctions, which argued that Defendants' previously-filed summary judgment motion was not well-grounded in either fact or law. In addition, in an effort to preserve the remaining insurance in this case, the parties made progress on a possible settlement framework and are working to document the settlement in a manner that eliminates any possible adverse impact on the parallel Cook County action.

During the First Quarter 2023, the Receiver and his retained counsel also devoted efforts to two lawsuits prosecuting claims asserted against former EquityBuild insiders: (1) Chief Management LLC and Ezri Namvar, and (2) Tyler DeRoo, Ronald Bol, and Trinity Inspection and Restoration. These claims are for unjust enrichment and aiding and abetting fraud and breach of fiduciary duty.

- In *Duff v. Chief Management LLC, et al.*, Case No. 1:22-cv-4335 (N.D. Ill), counsel for Mr. Namvar made a formal appearance and filed a Motion to Dismiss. The

6

Court subsequently denied that Motion and referred the parties to Magistrate Judge Fuentes to conduct a settlement conference. The Magistrate Judge held an initial scheduling conference and has scheduled a video settlement conference on May 31, 2023. Further, the Receiver sought and obtained a Clerk's Default against Chief Management and commenced preparation of a Motion for Default Final Judgment against Chief Management, which the Receiver will file during the Second Quarter 2023.

- In *Duff v. DeRoo, et al.*, Case No. 1:22-cv-4336 (N.D. Ill.), the Defendants served their respective mediation statements, the Magistrate Judge held a pre-settlement conference call to discuss the status of negotiations, the exchange of documents, and settlement offers and counteroffers, and scheduled a settlement conference with Magistrate Judge Sunil R. Harjani. The settlement conference took place on April 28, 2023. The terms of a settlement are being reduced to writing and will be reported in the next status report.

The Receiver does not seek compensation for fees or services relating to these four lawsuits as part of this fee application.

        iv.      Notice of Appointment of Receiver

During the First Quarter 2023, the Receiver provided notice of the appointment of the Receiver to certain third parties attempting to collect debts of the EquityBuild entities or from whom the Receiver subpoenaed documents.

        v.      Control of Receivership Property and Records

During the First Quarter 2023, the Receiver continued efforts to locate and preserve all EquityBuild property and records. The Receiver continues to undertake efforts to maintain,

preserve, and utilize EquityBuild's internal documents during the pendency of this matter, as well as used for document productions and investigations in the matters brought by the Receiver against the former EquityBuild professionals and insiders.

### vi. Factual Investigation

During the First Quarter 2023, the Receiver and his retained professionals continued to review and analyze the following: (i) documents and correspondence sent to or received from the EquityBuild principals, to whose email accounts the Receiver has access; (ii) bank records from EquityBuild and its affiliate entities; (iii) other EquityBuild documents that were stored on various platforms; (iv) available underlying transaction documents received to date from former Chicago-based EquityBuild counsel; (v) files produced by former EquityBuild counsel, accountants, and employees, and (vi) documents obtained pursuant to various subpoenas.

### vii. Accounts Established by Receiver for the Benefit of the Receivership Estate

The Receiver established custodial accounts at a federally insured financial institution to hold all cash equivalent Receivership property. The interest-bearing checking accounts are used by the Receiver to collect liquid assets of the estate and to pay the portfolio-related and administrative expenses.

For each property encumbered by secured debt that was sold, the Receiver also established a separate interest-bearing account for the purpose of depositing and holding funds until such time as the Court orders otherwise and for ultimate distribution, following a claims process and upon Court approval, to the creditors of the Estate, including the defrauded investors. (Dkt. 230, 311,

344 & 346)[1]  During the quarter, the Receiver was informed by bank representatives that the insurance carrier, which had previously provided the surety bond that was in place to insure all Receivership funds above FDIC limits, would not be renewing the surety bond.  As a result, the Receiver took steps to enroll all Receivership funds in IntraFi Network Deposit so that all Receivership funds remain fully insured.

During the quarter, the Receiver distributed the funds from the accounts established for the properties located at 7933 S Kingston (property 22), 8405 S Marquette (property 26), 8800 S Ada (property 28), 3723 W 68th Place (property 33), 61 E 92nd Street (property 35) and 7953 S Woodlawn Avenue (property 40), pursuant to agreements achieved with claimants and in accordance with the Court's Orders. (Dkt. 1373, 1391)[2]

c.      Creditors and Claims Against the Receivership Estate

During the First Quarter 2023, the Receiver and his retained professionals continued to improve the accuracy and completeness of the "Master Claims Exhibit," preliminarily identifying on a property-by-property basis for each of the nearly 2400 claims the following: (i) claimant name, (ii) total amount claimed, (iii) claimant category, and (iv) the amount loaned or invested in

---

[1] The net proceeds from the sale of certain properties that were unencumbered by any recorded mortgage liens were not placed into segregated accounts, but rather were deposited into the Receiver's account as ordered by the Court. (See Dkt. 346, 545)  Because claims have been raised as to those properties — which will be addressed as part of Group 3 in the claims process — the Receiver intends to establish separate accounts for such properties, to the extent not already done, and transfer monies from the Receiver's account associated with the net sales proceeds from those transactions, as adjusted for certain allocations approved by the Court (*e.g.*, Dkt. 796, 1372, 1433, 1452).  Such proceeds will only be disbursed from such separate accounts pursuant to Court order.

[2] Any allocations during the quarter to these and other settled properties are not included in the fee allocation summary (Exhibit I) or the individual property allocation reports (Group Exhibit L) submitted with this Application.  The report of specific allocations (Exhibit K) does reflect allocations to properties for which all funds have been distributed, and these properties' pro rata share of such expenses have not been allocated to any of the remaining properties.

the particular property (where it could be determined from the face of the claim form).  The Receiver has encouraged claimants to review this exhibit and bring any discrepancies to the attention of the Receiver, and the Receiver and his retained professionals have updated the exhibit where appropriate.  Two versions of the Master Claims Exhibit were submitted with the First Quarter 2023 Status Report filed on April 28, 2023—one in alphabetical order by claimant name (Dkt. 1448 at Ex. 5), and the other in property-number order (*id*. at Ex. 6).  The Receiver also worked to update and confirm the accuracy of claimants' email, address, and counsel records, both for the preparation of framing reports, and for use in the creation of email distribution lists for claimants to use in discovery and the claims process.

During the quarter, the Receiver and his counsel and staff continued to devote substantial time to the review and analysis of claimants' proof of claim forms, the supporting documents submitted with those claims, as well as EquityBuild records related to the claims against the properties, in order to be prepared to proceed with claim Groups 2 and 3. This is an ongoing process with much remaining to be completed, and the Receiver is working toward being in a position to make timely recommendations on upcoming groups of claims.  *See also* note 1, *supra.* To make the Receiver's work with respect to claims analysis and reporting more effective and efficient, the Receiver and his counsel have worked with a vendor to establish and improve a claims review platform, which will be a valuable resource to the Receivership in tracking and reporting on claims recommendations and distributions in this complex matter.

Additionally, during the quarter the Receiver prepared and submitted, at the Court's direction, a proposed distribution schedule for the proceeds from the sale of the five Group 1 properties. (Dkt .1409) After receiving opposition to the Receiver's recommendations from several

of the Group 1 claimants, the Receiver communicated with the claimants, conducted additional review and research, and in two instances amended his recommendations. (Dkt. 1423 and 1438)

At the direction of and together with Magistrate Judge Kim and other claimants, the Receiver continued working during the quarter to attempt to facilitate resolution of claims with respect to 16 disputed properties, which the Court selected for settlement discussion based on the limited number of claimants competing for the account balances. (Dkt. 1310) To date, the Receiver and claimants were able to reach agreement on six of those properties, 7933 S Kingston (property 22), 8405 S Marquette (property 26), 8800 S Ada (property 28), 3723 W 68th Place (property 33), 61 E 92nd Street (property 35) and 7953 S Woodlawn Avenue (property 40), and the Court granted a motion to adjudicate the single claim status and distribution on a seventh property, 5437 S Laflin (property 47). The Receiver prepared joint motions for the approval of distributions and prepared proposed orders approving the distributions of these property accounts during the quarter (Dkt. 1344, 1364, 1368, 1373) and distributions on these seven properties have been made. Discussions with respect to the other nine properties and potential distribution of funds are ongoing.

Additionally, during the First Quarter 2023, the Receiver and his professionals drafted communications to all claimants regarding the court proceedings and responded to approximately 149 claimant inquiries, in addition to numerous oral and other written communications with claimants and certain claimants' counsel regarding the claims process and the receivership; and engaged in various other activities relating to the claims process as reflected in the submitted invoices, such as beginning its review of issues associated with BC57, LLC's (later withdrawn) motion to stay the Group 1 distributions pending appeal.

The Receiver is continuously updating all claimants on the developments in this matter, and responding in a timely manner to the emails and voicemails from investors and others, many

if not most of which related to the claims submitted against the Estate and the status of the Court's

process for resolving those claims and distributing the Estate's assets.  To ease the burden and

provide basic information, the Receiver established a web page (*http://rdaplaw.net/receivership-*

*for-equitybuild*) for claimants and other interested parties to obtain information and certain court

filings related to the Receivership estate, which remains in place today and continues to be best

and most cost-effective mean of providing information regarding the status of this action.

> d.     Assets in Receivership Estate

All known Receivership Property is identified and described in the Master Asset List

attached hereto as **Exhibit D**.  The Master Asset List identifies 56 checking accounts in the names

of the affiliates and affiliate entities included as Receivership Defendants, reflecting a combined

balance in the Receiver's accounts as of March 31, 2023 of $5,028,664.13.  (*See also* Dkt. 258 at

21, and Dkt. 348 at 23-24, for additional information relating to these funds.)  Additionally, the

separate interest-bearing accounts established by the Receiver to hold the proceeds from sold real

estate that remain following the distributions described herein are identified on **Exhibit E**, which

collectively contained $63,184,107.26 as of March 31, 2023.

The Master Asset List does not include funds received or recovered after March 31, 2023.

Nor does it include potentially recoverable assets for which the Receiver is still evaluating the

value, potential value, and/or ownership interests.  The Receiver is in the process of evaluating

certain other types of assets that may be recoverable by the Receivership Estate.

## IV.     BILLING ADDRESSED IN THIS APPLICATION

Pursuant to the Billing Instructions, the Receiver provides the following information

regarding current billing:

a.    Total Compensation and Expenses Requested.

     i.    In connection with his duties, the Receiver respectfully requests compensation for services rendered, totaling $33,774.00 for the period of this Application.  Copies of the Receiver's invoices for January, February and March, 2023 are attached as **Exhibit F**.

     ii.    In connection with the legal services provided to the Receiver by RDP, the Receiver respectfully requests compensation for services rendered, along with reimbursement of expenses, totaling $139,579.40 for the period of this Application.  Copies of RDP's invoices for January, February and March, 2023 are attached as **Exhibit G**.

     iii.    In connection with the IT services provided to the Receiver by Prometheum, the Receiver respectfully requests compensation for services rendered, which is an expense in the amount of $825.00 for the period of this Application.  A copy of Prometheum's invoice is attached as **Exhibit H**.

b.    Source of Funds for Requested Compensation and Expenses.

The Receiver requests that the above compensation and expenses be paid pursuant to the receiver's lien that the Court established to the extent that the work performed or expenses incurred benefitted the properties or the claimants asserting an interest in those properties, as set forth in the fee allocation exhibits attached as Exhibits I-L to this Application (see Section V, *infra*).  (*See* Court's 10/26/20 Order granting Receiver's lien (Dkt. 824) and Court's Order Approving Receiver's Lien for Certain Categories of Expenses (Dkt. 1030).)  *See also discussion* in Section

V, *infra.* To the extent the fees or expenses are not property-specific, the Receiver requests that subset of the above compensation and expenses be paid from the Receiver's operating account.

      c.        <u>Nineteenth Application for Payment of Professional Fees and Expenses.</u>

This is the Receiver's Nineteenth Interim Application.

      d.        <u>Summary of Activity.</u>

A "Summary of Activity," providing the total hours billed and the amount of billing for each person who billed time during the Application period (January 1, 2023 through March 31, 2023) can be found at the end of the Receiver's invoices (Exhibit F) and RDP's invoices (Exhibit G). The average hourly billing rate reflected by RDP's invoices for the application period was $182.86.

## V.     REQUEST FOR RECEIVER'S LIEN

The Receiver again requests that the Court authorize the interim payment of certain of the amounts set forth in this fee petition pursuant to the Receiver's first-priority lien previously ordered and affirmed by the Court. (*See* Dkt. 824, 1031) Specifically, the Receiver requests authorization for the interim payment of fees for the following categories of activity: (1) the preservation, management, and liquidation of certain real estate belonging to the Receivership Estate, including working to properly account for and allocate related expenses benefitting the properties; (2) the implementation and management of an orderly summary claim-priority adjudication process, as previously ordered with respect to the Receiver's prior fee applications; and (3) efforts to distribute funds to claimants. (Dkt. 1030)

Notably, the Receiver's efforts to preserve, manage, and liquidate the real estate properties within the Estate are concluded at this point. With respect to allocations pursuant to the Receiver's lien, the primary billing categories moving forward are expected to be in the Claims and

Distribution categories.  The Receiver's activities in those areas will largely be dictated by the Receiver's claims analysis, the claims process, settlement efforts, and further directions provided to the Receiver by the Court.

The Receiver submits as **Exhibit I-L**[3] to this fee application his proposed allocations to properties in the Estate of fees incurred during the First Quarter 2023 in the Asset Disposition, Business Operations, Claims, and Distributions billing categories, which have been made in accordance with the methodology approved by the Court, and requests approval of an interim payment of the approved amount from the accounts established from the sale of the property, subject to any holdback ordered by the Court.

The Receiver's proposed allocations apply the methodology previously authorized by the Court to the invoices comprising the Receiver's and his special counsel's invoices comprising this Nineteenth Fee Application.  *See* Dkt. 824 at 5 (finding that "the Receiver's proposed methodology to allocate fees and expenses to individual properties is reasonable").  In summary, this methodology, which the Receiver first submitted with his 7th fee application, provides: (i) first, allocate by property; (ii) second, do not allocate certain billing categories; (iii) third, do not allocate third-party claims by the Receiver; and (iv) fourth, allocate all remaining fees and expenses to the properties as a percentage of their gross sales prices. (Dkt. 755 at 23-24)  The institutional lenders have acknowledged that this methodology has been approved by the Court.  (Dkt. 1188 at 2) ("On

---

[3] **Exhibit I** contains a summary by property of the specific and general allocations to each property during the quarter.  **Exhibit J** contains the general allocations which are allocated to the properties pro rata based on their gross sales prices.  **Exhibits K and L** both contain the specific allocations, grouped together in Exhibit K to show the property or properties to which each task has been allocated and a count of those properties, and individually by property in Exhibit L.

October 26, 2020, the Court awarded the Receiver a receiver's lien and approved the Receiver's methodology of allocating that lien among the Properties.")

In support of this fee application, the Receiver further incorporates by reference the arguments and legal authority offered in support of his pending Motions for Approval of Allocations of Fees to Properties for Payment Pursuant to Receiver's Lien. (Dkt. 1107, 1230, 1321)

## VI.    CONCLUSION

WHEREFORE, the Receiver respectfully requests that the Court approve the Receiver's Nineteenth Interim Fee Application and enter an Order as follows:

a.       finding the fees and expenses of the Receiver and Receiver's retained professionals, Rachlis Duff & Peel, LLC, and Prometheum, as described in Exhibits F-H, respectively, to be reasonable and necessary to the Receivership;

b.       granting the Receiver and his retained professional a first priority administrative lien against each of the real estate properties in the Receivership Estate and their sales proceeds for payment of fees and costs;

c.       approving the proposed allocation and payment methodology with respect to a Receiver's lien for all fees and expenses of the Receivership Estate as described and recommended in this fee application;

d.       approving the Receiver's payment of such fees and expenses to the Receiver and to Receiver's retained professionals from sales proceeds for each of the properties in the Receivership Estate as described and recommended in this fee application; and

e.       granting the Receiver all other relief which this Court deems just and proper.

Dated:  May 15, 2023                         Kevin B. Duff, Receiver

                                          By:    /s/     Michael Rachlis

                                          Michael Rachlis
                                          Jodi Rosen Wine
                                          Rachlis Duff & Peel, LLC
                                          542 South Dearborn Street, Suite 900
                                          Chicago, IL 60605
                                          Phone (312) 733-3950; Fax (312) 733-3952
                                          mrachlis@rdaplaw.net
                                          jwine@rdaplaw.net

17

## RECEIVER'S CERTIFICATION

1.      Pursuant to the Billing Instructions, the Receiver certifies as follows regarding the Receiver's Nineteenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals:

a.      The Receiver has read the foregoing Application and Motion;

b.      To the best of the Receiver's knowledge, information and belief formed after reasonable inquiry, the Application and Motion and all fees and expenses therein are true and accurate and comply with the Billing Instructions (with any exceptions specifically noted in this Certification, Application, and Motion);

c.      All fees contained in the Application and Motion are based on the rates listed in the Fee Schedule attached hereto as Exhibit A, and such fees are reasonable, necessary, and commensurate with the skill and experience required for the activity performed;

d.      The Application and Motion does not include in the amount for which reimbursement is sought, the amortization of the cost of any investment, equipment, or capital outlay (except to the extent any such amortization is included within the permitted allowable amounts set forth herein); and

e.      In seeking reimbursement for a service which the Receiver or the Receiver's Retained Professionals justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), reimbursement is requested only for the amount billed to the Receiver or Receiver's Retained Professionals by the third-party vendor and paid by the Receiver or Receiver's Retained Professionals to such vendor.  If such services were performed by the Receiver or Receiver's Retained Professionals, the Receiver certifies that no profit has been made on such reimbursable service.

2.      On May 9-10, 2023, the Receiver provided to Mr. Benjamin Hanauer, of the SEC, a complete draft copy of this Application and Motion, and exhibits A-H, which include the relevant billing statements in a format specified by the SEC.

Dated: May 15, 2023            /s/ Kevin B. Duff
                               Kevin B. Duff, Receiver
                               EquityBuild, Inc., et al.
                               c/o Rachlis Duff & Peel, LLC
                               542 S. Dearborn Street, Suite 900
                               Chicago, IL  60605
                               (312) 733-3390 - kduff@rdaplaw.net

18

## CERTIFICATE OF SERVICE

I hereby certify that I provided service of the foregoing Receiver's Nineteenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals, via the Court's CM/ECF system, to all counsel of record on May 15, 2023.

/s/ Michael Rachlis

Michael Rachlis
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
Fax (312) 733-3952
mrachlis@rdaplaw.net