IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYBUILD, INC., et al.,<br><br>Defendants. | Case No. 1:18-cv-5587<br><br>Hon. Manish S. Shah<br><br>Magistrate Judge Young B. Kim |

**CLAIMANT BC57'S REPLY
IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

The SEC, the Receiver, and certain Group 1 Investor-Lenders[1] (the "Investor-Lenders") (collectively, "Respondents") oppose BC57, LLC's ("BC57") Motion for Stay of the Court's May 3, 2023 order (the "Disbursement Order") pending appeal. However, Respondents fail to directly respond to the merits of BC57's arguments demonstrating that a stay is warranted. Instead, Respondents avoid and mischaracterize BC57's arguments, falsely suggest BC57's motion is an "attempt to further delay, obstruct, and deprive the investors of any recovery," and carelessly accuse BC57, ***without citing a single, actual example***, of engaging in a pattern of "delay tactics." (Dkt. 1470 at 1, 8.)

All claimants in this case, including BC57, were harmed by Defendants. BC57 respectfully disagrees with the Court's February 15, 2023 priority determination (the "Priority Order") and

---

[1] Specifically, the Group 1 Investor-Lenders who submitted a response to BC57's Motion for Stay are: Arthur and Dinah Bertrand, Pat Desantis, Girl Cat Capital West LLC, Sidney Haggins, Initium LLC / Harry Saint-Preux, Robert Jennings, Knickerbocker Investment Group LLC, Steven and Linda Lipschultz, Jill Meekcoms, Lori Moreland, Mark Mouty, Glynis Sheppard / J. Fields Living Trust, Randall Sotka / Tahiti Trust /Big Bean LLC, Louis Duane Velez, Kirk Road Investments, LLC (related parties, Leroy Johnson, Martha Johnson, LMJ Sales, Inc.), and 1839 Fund LLC. (*See* Dkt. 1473.)

corresponding Disbursement Order, and it is simply trying to protect its interests based on the specific circumstances of this case. Any suggestion that there is anything improper about BC57's Motion for Stay or its underlying appeal is meritless and should not play any legitimate role in the Court's consideration of BC57's motion.

BC57 respectfully submits that it has met its burden in seeking a stay. BC57 has a substantial likelihood of success on appeal in light of the legal errors in the Priority Order, which formed the basis of the Court's Disbursement Order. BC57 also faces irreparable harm if a stay is not entered—including that the funds to which it is entitled may be unavailable following distribution—while the Investor-Lenders face no risk in having the funds maintained safely in receivership accruing interest if a stay is entered. The public interest is also served by a stay, ensuring the accurate distribution of the proceeds of the sale of the Group 1 properties following resolution of BC57's appeal. Accordingly, BC57 respectfully requests that this Court enter a stay of its Disbursement Order pending BC57's appeal.

## ARGUMENT

**I.    The Court has jurisdiction to consider BC57's Motion for Stay.**

The Investor-Lenders raise a jurisdictional challenge to the Court's consideration of BC57's Motion for Stay. Specifically, they assert that the "filing of a notice of appeal is an event of jurisdictional significance" in that "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." (Dkt. 1473 at 2 (citing *Griggs v. Provident Consumer Discount Company*, 459 U.S. 56, 58 (1982)).) This challenge lacks merit.

This Court has jurisdiction to consider and decide BC57's Motion for Stay. "Although the filing of a notice of appeal from a trial court's judgment generally vests jurisdiction over the cause appealed in the court of appeals . . . it has long been recognized that the trial court reserves the

power to make orders appropriate to preserve the *status quo* while the appeal is pending." *Rakovich v. Wade*, 834 F.2d 673, 673-674 (7th Cir. 1987). "Thus, a notice of appeal does not deprive the district court of jurisdiction over a motion for stay of its judgment." *Id*. at 674. The Investor-Lenders' authority suggesting otherwise, *Griggs*, is specific to motions to alter or amend judgments pursuant to Federal Rule of Civil Procedure 59, *not* motions for stay, and is "no longer good law after the 1993 Amendment to Federal Rule of Appellate Procedure 4(a)(4)." *Macarthur v. United States*, No. 1:12-cr-00084-JAW, 2021 U.S. Dist. LEXIS 38781, at *12, n.2 (D. Me. Mar. 2, 2021). Accordingly, this Court continues to possess jurisdiction to enter BC57's requested stay.

## II. All of the relevant factors favor a stay of the Court's May 3, 2023 Disbursement Order.

All of the well-established factors relevant to analyzing whether a stay is warranted favor a stay of this Court's Disbursement Order. As an initial matter, BC57 meets the so-called "threshold" requirements to show a substantial likelihood of success on the merits and that it will suffer irreparable harm if the request for stay is denied, such that the Court should consider all four of the relevant factors. Similarly, the remaining two factors—that a stay will not injure the opposing parties and will be in the public interest—also favor BC57's request for a stay. Moreover, although Respondents omit as much from their respective discussions of the applicable legal standard, "a 'sliding scale' approach applies" in considering a stay pending appeal, meaning "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, *and vice versa*." *In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014) (emphasis added). Correspondingly, if the appeal "has some though not necessarily great merit," then the movant must show that the balance of equities strongly favors granting the stay. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 546-47 (7th Cir. 2007). Here, both the merits and the balance of equities strongly favor granting BC57's request for stay.

3

> **A.** **There is a significant probability of success on the merits of BC57's appeal, which presents key questions of law.**

In attempting to minimize the likelihood of success of BC57's appeal, none of the Respondents address BC57's core argument that the Court's priority decision is premised on an error of law, effectively overruling more than a century of established Illinois property law. The SEC and the Investor-Lenders cite the Court's "broad equitable power" in deciding whether a proposed plan of distribution is fair and reasonable, such that "appellate scrutiny is narrow," *see SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332-33 (7th Cir. 2010), as evidence of BC57's "slim[]" "odds of success" on appeal. (*See* Dkt. 1470 at 3; *see also* Dkt. 1473 at 5-6.) While it is true that the Court enjoys "broad equitable power" in deciding whether a proposed plan of distribution is fair and reasonable, each of the issues BC57 plans to raise on appeal are legal issues. And it is well-established that an error of law is "by definition, an abuse of discretion." *See Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Pursuant to this standard, BC57's likelihood of success on appeal is indeed "substantial." *See, e.g.*, *In re Forth-Eight Insulations*, 115 F.3d 1294, 1301 (7th Cir. 1997).

Only the SEC briefly discusses the substance of BC57's arguments on appeal. Specifically, the SEC argues that because the Court made "two distinct findings"—that the releases were "facially defective" and that BC57 failed to meet its burden to show Equitybuild Finance ("EBF") had the authority to bind individual investors to EBF's purported releases—in order to prevail on appeal BC57 "must show not only that this Court got it wrong, but that the Court got it wrong twice." (Dkt. 1470 at 3.) To this end, the SEC argues "BC57 continues to premise its argument that the releases were valid due to an alleged 'scrivener's error'" and that BC57 does not "proffer[] conflicting evidence or contrary controlling authority" to overcome the Court's holdings relating to EBF's authority. (Dkt. 1470 at 3-4.)

The SEC's description of BC57's arguments does not address the legal errors at the heart of BC57's appeal. First, BC57 contends that releases were not necessary to effectuate the legal consequence of BC57's payments to EBF in satisfaction of the Investor-Lenders' mortgage-secured debts. Instead, as a matter of Illinois law, BC57's payment to the Investor-Lenders' authorized agent, EBF, extinguished the Investor-Lenders' security interest in the underlying properties. *See, e.g., Bradley v. Lightcap*, 201 Ill. 511, 517 (1903). Accordingly, as explained in BC57's opening brief in support of its Motion, BC57 respectfully submits that the Court erred in interpreting the Illinois Mortgage Act and Illinois case law, specifically *North Shore Cmty. Bank & Tr. Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, to overrule the established principle that payment of the underlying debt extinguishes the mortgage. (*See* Dkt. 1386 at 28-29.)

Second, BC57 respectfully contends that the Court erred as a matter of law in distinguishing BC57's case law establishing the principle that payment to EBF, the Investor-Lenders' servicing agent, was effective to extinguish the Investor-Lenders' mortgages because BC57 had no duty to ensure that EBF remitted the payments to its principals. Notably, the Court distinguished *Rockford Life Ins. Co. v. Rios*, 128 Ill. App. 2d 190 (1970), as having "materially different" facts than those in this case. (Dkt. 1386 at 21.) Respondents do not address BC57's argument that *Rockford* is factually analogous given EBF's authority to accept payment on behalf of the Investor-Lenders—an undisputed fact—and that *Rockford* maintains the well-settled principle that "the default of [an authorized] agent is the responsibility of the principal." *Rockford*, 128 Ill. App. 2d at 195; *see also M&T Bank v. Mallinckrodt*, 2015 IL App (2d) 141233 ¶ 52 ("Where one of two innocent persons must suffer by reason of the fraud or wrong conduct of another, the burden must fall upon him who put it in the power of the wrongdoer to commit the

5

fraud or do the wrong."). By virtue of EBF's authority, BC57 also reasonably relied on payoff statements from EBF in issuing the payment that satisfied the Investor-Lenders' debts, thereby extinguishing their mortgage liens. None of the Respondents engage with these arguments, either.

For these reasons and those explained in its opening brief in support of its Motion to Compel, BC57 respectfully submits that it has met its "threshold burden" to establish a substantial likelihood of success on appeal.

B. **BC57 will face irreparable harm absent a stay.**

Without a stay, if BC57 is successful on appeal, it will be irreparably harmed. Seeking to avoid this fact, the Respondents inaccurately diminish BC57's irreparable harm arguments to "practical difficulties" and the notion that "recovering the money that is going to be distributed might be difficult" following a successful appeal. (Dkt. 1470 at 4; Dkt. 1473 at 7.) Respondents' attempts to reduce BC57's irreparable harm to "difficulties" misstates the zero-sum nature of the harm BC57 faces.

Without a stay, if BC57 is successful on appeal it will be irreparably harmed by the futility in recovering the already-disbursed proceeds of the Receiver's sale of the Group 1 properties. Confronted with BC57's case law identifying this concrete harm, (Dkt. 1455 at 7-10), the SEC highlights the denial of stays at "[b]oth the district court and the Seventh Circuit" in *Wealth Management*. (*See* Dkt. 1470 at 5.) Though *Wealth Management* is similar to the instant matter in that it underscores the applicability of the collateral order doctrine, the facts relating to a request for stay in that case are distinguishable in important respects.

In *Wealth Management*, the court approved the receiver's proposed plan of distribution "on a pro rata basis," meaning ***all investors would be treated equally***. 628 F.3d at 329. The claimants objecting to the proposed plan argued they should be treated as creditors, thus entitling them to

priority over other claimants. *Id*. As such, the objectors stood to recover **some** amount of their investment pursuant to either the receiver's proposed plan or their proposed plan. By contrast, BC57 stands to recover **none** of its loan, which was secured by a mortgage, pursuant to the Court's Disbursement Order as determined by the Court's Priority Order. Moreover, the orders denying the motions for stay in *Wealth Management* offer no persuasive value on the issue of irreparable harm. Indeed, the district court's opinion denying the motion for stay does not include any discussion of the harm the *Wealth Management* objectors faced, (*see SEC v. Wealth Management LLC, et al.*, 09-cv-00506, Dkt. 209) and the Seventh Circuit's single-sentence order denied the motion for stay without any analysis (*see SEC v. Wealth Management LLC, et al.*, 09-4090, Dkt. 10).

Furthermore, the SEC's attempt to emphasize the fact that "the proposed distribution" here "involves less money" and fewer claimants than *Wealth Management* does not diminish the harm BC57 will face if a distribution is made to the Investor-Lenders and the priority determination is overturned on appeal. (Dkt. 1470 at 5.) First, the decision in *Wealth Management* only involved more money and more claimants than BC57's Motion for Stay because the distribution order in that case concluded the entirety of receivership proceedings, whereas this matter concerns only a subset (those involved in Group 1) of the receivership proceedings. (*See* Dkt. 941.) Second, notwithstanding that there were more claimants involved in *Wealth Management*, BC57 still faces the very real harm that once distributed, recovery of approximately $3.76 million from more than 160 claimants[2] following a successful appeal may be futile.

The SEC tries to avoid this reality by highlighting the fact that the Court will have the authority to compel the return of the money. (*See* Dkt. 1470 at 6 (citing *Chao v. Current Dev.*

---

[2] The Receiver notes Group 1 involves "approximately 170 investors." Dkt. 1479 at 3.

7

*Corp.*, No. 03 C 1792, 2008 U.S. Dist. LEXIS 36893 (N.D. Ill. May 2, 2008)).) While this is an accurate statement of this Court's authority in the abstract, in practice, the SEC fails to respond to the reality of BC57's concern that "[a]ny number of the Investor-Lenders could spend the proceeds from the sale of the Group 1 properties" during the pendency of BC57's appeal. (Dkt. 1455 at 9.) This is a real risk and it is a concrete example of irreparable harm. This argument also highlights yet another harm BC57 faces. If the funds are dissipated, BC57 may be forced to institute collection proceedings against any number of the 160-plus claimants to secure its funds, to the extent any of those claimants are unwilling or unable to return the funds.

The Investor-Claimants argue irreparable harm cannot be "focused only on the money." (Dkt. 1473 at 7.) But courts have recognized that the type of loss BC57 faces here is sufficient to warrant a stay. For example, in *In re Quade*, 496 B.R. 520 (Bankr. N.D. Ill. 2013), the court ordered a partial stay and recognized that the movant had satisfied the "irreparable harm" prong of the motion for stay analysis, given the likelihood that the funds in question "may be quickly spent if the court fails to impose a stay." *Id*. at 529. The court also specifically addressed whether monetary harm can qualify as irreparable harm. The court explained that while "monetary harm alone, without more, is insufficient to meet the requirement of irreparable injury absent" a stay because "[m]oney is fungible," it nevertheless recognized that "[w]hile money is fungible, it may also in certain instances be irreplaceable as a matter of fact." *Id*. at 528. That is precisely the risk here.

Moreover, Respondents fail to address the irreparable harm recognized in each of the cases BC57 cited in its opening brief, informing the practice of ordering stays in similar circumstances in this circuit and across the country. *See, e.g.*, *United States SEC v. ISC, Inc.*, No. 15-cv-45-jdp, 2017 U.S. Dist. LEXIS 139258, at *19 (W.D. Wis. Aug. 30, 2017) (authorizing receiver's

distribution plan but ordering "the distribution will have to wait at least until the dispute over the APA [on appeal] is resolved, because that will affect the funds available for distribution."); *Life Ins. Co. of N. Am. v. Camm*, No. 4:02-cv-0106-DFH-WGH, 2007 U.S. Dist. LEXIS 64454, at *4 (S.D. Ind. Aug. 30, 2007) (granting a motion for stay pending appeal, finding that if the movant "prevail[ed] on appeal . . . he [was] likely to suffer irreparable harm in the absence of a stay" because another party "assert[ed] the right to use or invest the funds now as she sees fit," and "[t]here [wa]s no indication that she would be in a position to remedy the harm . . ."); *see also Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 2012 U.S. Dist. LEXIS 102940 (S.D.N.Y. Apr. 3, 2012) (recommending a stay pending appeal due to irreparable harm); *In re Wolf*, 558 B.R. 140, 144 (Bankr. E.D. Pa. 2016) (collecting district court and circuit authority from across the country "suggest[ing] that when an existing fund has been dedicated to satisfaction of competing claims, distribution of the fund before the court's determination is final and no longer subject to modification or reversal on appeal may constitute irreparable harm to the appellant.").)

The Investor-Lenders also discount BC57's explanation that if BC57 prevails and is entitled to priority, it will not receive the benefit of that priority in having to await the return of the already-distributed funds. (Dkt. 1455 at 9 (citing *Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 102940 (S.D.N.Y. Apr. 3, 2012)).) The Investor-Lenders' argument lacks merit. Not only is this a recognized "form of irreparable harm," (*Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 102940, at *17), the Investor-Lenders are not correct in suggesting that BC57's argument "ignores that the reverse is also true" (Dkt. 1473 at 7). A delay in payment—but certainty that the later payment will be in full—is not equivalent to a delay with no assurance that the funds will ever be fully recoverable from scores of individuals.

Finally, the Investor-Lenders assert that "the title insurance standing behind BC57's loan

9

to EquityBuild" means BC57 faces no harm. (Dkt. 1473 at 8.) The SEC makes a similar argument. (Dkt. 1470 at 5, 7.) A number of authorities readily demonstrate that this brazen argument is both improper and incorrect. First, the federal and Illinois rules of evidence confirm an insurance policy "is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411; Ill. R. Evid. 411. Second, evidence of collateral benefits coverage is irrelevant and prejudicial. *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998). Third and finally, if a title insurer protects its insured, it is subrogated to the rights of the insured. As such, the title insurer stands in the insured's shoes and is entitled to equal protection against the consequences of the harm which would be suffered in the absence of a stay. *See, e.g.*, *Employers Ins. v. James McHugh Constr. Co.*, 144 F.3d 1097, 1105 (7th Cir. 1998) ("Subrogation is 'the substitution of one person in the place of another with reference to a lawful claim . . . so that he who is substituted succeeds to the rights of the other in relation to the . . . claim, and its rights, remedies, or securities.[']"). Accordingly, the fact that BC57 is insured does not negate the irreparable harm at stake if the funds are distributed rather than kept securely in receivership, earning interest, until BC57's appeal is resolved.

      **C.**    **A stay will not injure any of the parties or claimants in this matter and the balance of harms weighs in BC57's favor.**

As described above, if the proceeds of the Receiver's sale of the Group 1 properties are distributed to the more than 160 Investor-Lenders, and thereafter the court of appeals reverses this Court's priority determination, BC57 faces distinct and concrete irreparable harms: BC57 will be deprived of the funds themselves, denied the benefit of its priority position by having to await the return of already-distributed funds, and, as the SEC acknowledges, may be forced to chase down those funds. By contrast, if the stay is granted, these funds will be held safely in receivership, accruing interest. There is no risk of the funds diminishing or otherwise becoming unavailable to

the Investor-Lenders. In other words, the Investor-Lenders do not face any harm.

Respondents' arguments do not alter the balance in BC57's favor. Respondents cite the delay the Investor-Lenders will face during the pendency BC57's appeal. Only the SEC cites a case to support this point, *Alexander v. Chicago Park Dist.*, No. 79 C 2242, 1990 U.S. Dist. LEXIS 3741 (N.D. Ill. Apr. 2, 1990), for the proposition that "delaying the return of funds to defrauded investors . . . would only compound the enormous harm to the Cohens' victims." (Dkt. 1470 at 7.) *Alexander* is inapplicable here. The movants for stay in *Alexander* were counsel for plaintiffs in an underlying class action suit; after plaintiffs settled the case, counsel claimed they were entitled to a portion of the settlement proceeds. *Alexander,* 1990 U.S. Dist. LEXIS 3741, at *2. After the court rejected counsel's request for $350,000 and instead ordered an award of $128,705.68, the attorneys "unilaterally elected to deduct from the settlement fund the entire $350,000 rather than the $128,705.68" the Court had awarded. *Id*. After the court entered an order to show cause why counsel should not be held in contempt for violating the court's order, counsel filed a response and motion for stay pending appeal. *Id*. at *3-4. In this context, the court rejected the motion for stay and, as to the harm argument, noted the movant's "flagrant disrespect for this Court's orders" for its belief that movants were not "in any position to complain about" the possibility that the money would be paid to plaintiffs and thus not recoverable to movants. *Id*. at *4-5. The delay resulting from the *Alexander* movant's outright theft is not at all like the delay the Investor-Lenders face in this case.

Respondents also reference recent testimony from certain individual investors for the "profound harm the delay in distributions is causing them." (Dkt. 1470 at 7; *see also* Dkt. 1473 at 8; Dkt. 1479 at 3.) But Respondents fail to offer any specific testimony demonstrating BC57's *request for stay* is harming any individual investors. To the contrary, the April 26 testimony

11

focused on issues of fairness, such as the fact that the Cohens "have continued to go scot-free" (Dkt. 1447 at 9:12-14) and concerns about the length of proceedings generally, including proceeding in tranches (*id*. at 42:10-20). To his credit, the Receiver does cite specific remarks from investors, but those remarks relate to "the 'utterly devastating' impact of the Defendants' fraud," not BC57's appeal or request for stay. (Dkt. 1479 at 2.) That the individual investors have been victimized by the Defendants is unequivocally true, but so has BC57.

All claimants in this case have been harmed by the Defendants, not just the Investor-Lenders. If a stay is entered, the funds slated for distribution will be maintained securely in interest-bearing accounts, awaiting appropriate and accurate distribution. Conversely, absent a stay, if BC57 prevails on appeal there is "no indication that the [Investor-Lenders] would be in a position to remedy the harm" if the proceeds are distributed to them and it is later determined that BC57 is entitled to them. *Life Ins Co. of N. Am.*, 2007 U.S. Dist. LEXIS 64454 at *4.

### D. A stay is in the public interest.

Both the SEC and the Investor-Lenders base their public interest argument on the generic notion that a stay would "frustrate the purpose of [an] equity receivership" to "protect the public interest," citing the *Wealth Management* district court order denying a motion for stay. (Dkt. 1470 at 7; Dkt. 1473 at 9.) As previously explained, the circumstances surrounding the stay request in *Wealth Management* are readily distinguishable. More importantly, Respondents disregard "the primary purpose of equity receiverships," which is "to promote orderly and efficient administration of the estate by the district court for **the benefit of creditors**." *United States CFTC v. Lake Shore Asset Mgmt.*, No. 07 C 3598, 2010 U.S. Dist. LEXIS 24061, at *19 (N.D. Ill. Mar. 15, 2010) (quoting *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) (emphasis added)). All creditors, including BC57, are entitled to the benefit of an accurate administration of the claims at issue in

the receivership proceedings. *See Life Ins. Co. of N. Am.*, 2007 U.S. Dist. LEXIS 64454, at *5 ("[T]he public interest points in the direction of making sure that the courts decide the case correctly."). And as noted in BC57's opening brief, the importance of accuracy is especially significant where the priority issue may be relevant to the Court's administration of the remaining assets under receivership.

The only other argument Respondents offer supposedly related to the public interest factor is the suggestion that a stay would delay the distribution. Throughout their briefing, the SEC wrongly claims that BC57 and the other institutional lenders have frustrated these receivership proceedings through "delay tactics" (Dkt. 1470 at 8), mischaracterizing BC57's vindication of its rights as "attempt[s] to further delay, obstruct, and deprive the investors of any recovery (*id.* at 1). The Receiver joins this misguided effort, asserting the "Court has recognized that a material factor contributing to the length of the case has been the manner in which the institutional lenders ***such as BC57*** have chosen to litigate this matter." (Dkt. 1479 at 3 (emphasis added).) This is inaccurate and patently unfair. The SEC's single citation to BC57's supposed "delay tactics" is to an order denying ***other*** institutional investors' motion to certify an interlocutory appeal, ***which BC57 did not join***. (*See* Dkt. 1470 at 1 (citing Dkt. 899).) Similarly, the Receiver's citation is to an order concerning the Receiver's fees, and specifically a motion to have its lien "trump[] any and all other secured liens on any particular property." (Dkt. 1473 at 3 (citing Dkt. 1030).) In short, none of the Respondents have pointed to any instance of delay caused by BC57. As with this Motion, BC57 like all parties in this litigation is unquestionably entitled to advocate for its rights, including its lien priority.

### III. A supersedeas bond is not required.

BC57 maintains that a bond is not required in this case for the reasons stated in its opening brief. (Dkt. 1455 at 13-14.) However, to the extent the Court agrees with the Receiver that a bond

13

is appropriate, BC57 is willing to post a bond to protect the funds available for distribution from the proceeds of the sale of the Group 1 properties.³ (*See id*. at 14, n.6.) In the event the Court is inclined to impose a bond requirement, BC57 respectfully requests that the Court allow BC57 14 days from the date of the Court's order to post the bond.

WHEREFORE, Claimant BC57, LLC, through its undersigned counsel, respectfully requests that this Court issue a stay, without security, of any distribution or disbursement of the proceeds from the sale of the Group 1 properties to the Investor-Lenders pending appeal. If the Court is disinclined to order a stay, BC57 further respectfully requests that the Court grant a 30 day administrative stay of its Disbursement Order to allow BC57 to seek an emergency stay from the Court of Appeals and to allow adequate time for a complete briefing schedule.⁴

Dated: May 22, 2023                                        Respectfully submitted,

/s/ Andrew R. DeVooght
Andrew R. DeVooght
Alexandra J. Schaller
LOEB & LOEB LLP
321 N. Clark St., Ste. 2300
Chicago, IL 60654
Telephone: (312) 464-3100
Facsimile: (312) 464-3111
adevooght@loeb.com
aschaller@loeb.com

---

³ As BC57 noted in its opening brief, because the funds are securely held in interest bearing accounts, the amount of any bond should be minimal. *See* Dkt. 1455 at 14, n.6 (citing Local Rule 62.1 ("The bond amount fixed hereunder is without prejudice to any party's right to seek timely judicial determination of a higher or lower amount.")). To this end, the Receiver's role in BC57's appeal would presumably be minimal given it is the Investor-Lenders who have property interests at stake in the appeal and the Receiver has not had substantial involvement in the briefing of the lien priority dispute. *See e.g.*, Dkt. 1201 at 2-3 (Receiver addressing lien priority dispute by adopting the SEC and other claimants' arguments on lien priority).

⁴ *See, e.g.*, *U.S. SEC v. A.T. Bliss & Co.*, No. 84 C 6431, 1984 U.S. Dist. LEXIS 20851, at *8 (N.D. Ill. Dec. 31, 1984) (denying stay on December 31 but entering "[a] compliance date of January 31, 1985 is set to allow adequate time for respondents to seek a stay of this order from the Court of Appeals.").

        Edward S. Weil
        Michael A. Gilman
        Todd Gale
        Brett J. Natarelli
        DYKEMA GOSSETT PLLC
        10 South Wacker Drive, Ste. 2300
        Chicago, IL 60606
        Telephone: (312) 876-1700
        Facsimile: (888) 828-6441
        eweil@dykema.com
        mgilman@dykema.com
        tgale@dykema.com
        bnatarelli@dykema.com

        *Attorneys for Claimant BC57, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, I electronically filed the foregoing REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Andrew R. DeVooght*
Andrew R. DeVooght
