UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,  )<br>)<br>)<br>)<br>Defendants.  )<br>) | Civil Action No. 18-cv-5587<br><br>Hon. Manish S. Shah<br><br>Magistrate Judge Young B. Kim |

**RECEIVER'S REPLY IN SUPPORT OF HIS NINETEENTH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS**

Certain institutional lenders (the "Objectors") and the FHFA objected to the Receiver's 19th Fee Application (Dkt. 1478), covering the First Quarter of 2023. (Dkt. 1485, 1486) As the Objectors concede, they are repeating previously overruled objections and they are "not asserting any objections which are categorically new or distinct from prior objections…." (Dkt. 1486 at 2) The SEC supports the current petition on the same grounds as prior petitions. (Dkt. 1489) As referenced in prior filings, the fees and allocations for 35 properties have been resolved and do not require the Court's attention. (*See, e.g.,* Dkt. 1424 at p.1) For the reasons set forth in the Court's previous rulings, the Receiver's and SEC's prior filings on fee applications and allocations, and those set forth herein, the Court should grant the Receiver's 19th Fee Application, including all allocations, and overrule all objections. (*E.g.,* Dkt. 541, 614, 710, 824, 1031, 1213, 1312, 1366, 1452; *see also, e.g.,* Dkt. 526, 606, 607, 622, 703, 705, 797, 800, 803, 922, 923, 970, 971, 1002, 1003, 1206, 1207, 1220, 1254, 1255, 1307, 1350, 1353, 1408, 1424)

1

The Objectors also indicate that they adopt the overruled arguments presented in their Objections to Magistrate Judge Kim's Oral Ruling and Minute Order on Receiver's First Fee Allocation Motion. (Dkt. 1486 at 3 (citing Dkt. 1389)) Correspondingly, the Receiver cites the orders of the District Court and Magistrate Judge Kim overruling those objections (Dkt. 1381, 1419, 1469, 1483) and references his responses and those of the SEC in opposition of those objections (*e.g.,* Dkt. 1230, 1275, 1400, 1407, 1416).

The Objectors continue to argue that allocated fees should be paid from the Receiver's account. But that argument fundamentally ignores the Court's many prior rulings (even coming at times at the Objectors' insistence) that revenue and expenses should be accounted for on a property by property basis. Consistent with that logic and law, the Court has repeatedly made clear that approved allocated fees should be paid from the accounts for the properties because the Court has found that those allocated fees were beneficial to the claimants and properties and the Receiver is appropriately allocating them. (*E.g.,* Dkt. 1030; *see also* Dkt. 1481 & Ex. A, 4/26/2023 Tr. at 23 ("the receiver is tracking things with sufficient accuracy to charge the secured creditors who benefited from the work")) Put differently, the current balance of the Receiver's account is not relevant to the allocation issues.[1]

---

[1] Moreover, the Objectors' argument mischaracterizes funds available for payment of the fees at issue in the Nineteenth Fee Application. (Dkt. 1486 at 3) They ignore that the Receiver has repeatedly made clear that certain funds that had been held in the Receiver's account may be the subject of claims against certain properties that were previously treated as unencumbered (and as such did not have separate property accounts established at the time of sale). (*E.g.,* Dkt. 947 at 5-6) To eliminate this continuing misconception, the Receiver has now moved funds from the Receiver's Account to accounts associated with those five properties after accounting for Court-ordered amounts that were the subject of the Receiver's expense restoration and fee allocation motions. These amounts will be available to claimants if their claims against them are deemed secured (with any disposition subject to further Court order). Following these transfers, the balance in the Receiver's account was $2,268,277.11 as of May 31, 2023.

2

In any event, the Objectors concede that they argued before that approved allocated fees should be paid from the Receiver's account and the Court has overruled that objection. (Dkt. 1486 at 3; *see also, e.g.,* Dkt. 1443 at 13 (citing Dkt. 1381 & 2/10/2021 Hearing Transcript at 137-47); *see also* Dkt. 1371 ("The point of allocating was to attempt to preserve the distinction between claimants with property−specific interests from other unsecured claimants, but not to create an opportunity for secured claimants to shift Receiver's fees onto the unsecured."); Dkt. 1481 at 9 ("[T]hey argue that the allocated fees should be paid from the Receiver's account and not from the property accounts. But this argument also simply retreads old ground. As the Objectors concede, this is a previously overruled objection.") (citations above))

### I. The Objectors Erroneously Assert that the Fees and Expenses of the 19th Fee Application Are Not within the Categories Approved by the Court.

The Objectors continue to lodge objections to fees in categories other than the Asset Disposition, Business Operations, Claims, and Distributions billing categories, not contesting the appropriateness of the fees charged, but solely on the grounds that they are not within the categories of the priming lien approved by the Court. But the allocation exhibits submitted with the fee application clearly show that the Receiver already *excluded* from allocation to the properties all of the work in the deferred billing categories (98 out of 921 tasks, which exceeds 10% of all tasks). (Dkt. 1478, Exhibits I-L)[2]

---

[2] The Objectors correctly state that, in this 19th fee application, $137,383.12 of the combined $173,353.40 fees for the Receiver and Rachlis Duff & Peel set forth in Exhibits F and G (79.2%) has been allocated to the properties. As detailed in the Receiver's most recent submission regarding claim groups (Dkt. 1488), the vast majority of claims in this receivership are against the properties (claim groups 1-9, constituting 2022 claims or 85% of the 2373 claims). Thus, allocation of 79% of the fees to the properties reflects a fair apportionment. Moreover, the unencumbered funds held in the Receiver's account will be potentially available for both unsecured claims *and* unsecured portions of secured claims, all of which will be part of a final proposed equitable distribution plan submitted to the Court for approval as the Receivership reaches its conclusion. *Id.*

3

As to the tasks the Receiver *has* allocated to properties in the 19th Fee Application, given that the Receivership is past the stage of managing and liquidating the properties, 70% of the allocated tasks relate to the claims process or distributions, which the District Court and Magistrate Judge have found on many occasions is beneficial to the Receivership Estate and its claimants. (*See, e.g.,* Dkt. 1353 at 3-4 (listing numerous statements about benefits by the Court))  Most of the remaining work allocated during the quarter related to the third restoration motion, which largely concluded during the quarter, and which is similar to work documented and presented in the 17th and 18th Fee Applications, for which the Court approved the fees and allocations and overruled the objections. (Dkt. 1393; *compare* Dkt. 1332 at 5 & Dkt. 1384 at 5; *see* Dkt. 1371, 1372, 1419, 1452)

> II. The Objectors' Color-Designated Objections Should Be Overruled.

The Receiver next addresses the objections, grouped by the Objectors as "red," "yellow," "blue," "orange" and "green."  (Dkt. 1486 at 3-8)

> A. The Court Should Overrule the Objectors' "Red" Objections, which Match a Subset of Objections to the 18th Fee Application, on the Same Bases as before.

The Objectors offer various bulleted objections in their "red" category on the sole ground that these fees "are not covered by either of the Court-Approved Priming Lien Categories."  (Dkt. 1486 at 4-6)  They concede the Court has previously overruled each of these objections on earlier fee applications.  (*Id.* at 4)  The Court should again overrule such objections for the reasons in the Court's prior rulings and the related submissions of the Receiver and the SEC.  (*E.g.,* Dkt. 1408, 1424 at pp.3-7 (and citations therein), 1452)

> B. The Court Should Overrule the Objectors' "Yellow" Objections, as relates to Group 1 claims, on the Same Bases as before.

Once again, the only objection offered for the "yellow" objections is that fees incurred "to litigate" Group 1 claims should not be paid at this time.  (Dkt. 1486 at 6)  They concede the Court

4

has previously overruled similar objections on earlier fee applications. (*Id.* at 6) The Court should again overrule such objections for the reasons set forth in the Court's prior rulings and the related submissions of the Receiver and the SEC. (*E.g.,* Dkt. 1408, 1424 at pp.7-8 (and citations therein), 1452)

    **C.    The Court Should Overrule the Objectors' "Blue" Objections as the Receiver's Work to Properly Account for and Reconcile Expenses among the Properties Benefited the Properties and Claimants and the Allocations Properly Distinguish the Properties Receiving the Benefit.**

The Objectors argue that time entries they have marked in "blue" relate to "unnecessary filings" that were the product of "fail[ing] to do proper accounting the first time…." (Dkt. 1486 at 6) This objection is baseless. Contrary to the objection, there was no previous errant accounting for such amount. To that point, apart from FHFA's typical objection to the receivership, the Objectors did not object to the Third Restoration motion when it was before the court, nor to the expenses that were allocated to the properties in that motion. And the Objectors fail to provide any basis for their objection here.

The Receiver previously explained that "[t]he Receiver's Third Restoration Motion involves efforts to ensure that expenses that are directly related to a property are covered by the individual property that was benefited, largely addressing matters of property insurance, real estate taxes, and other specific property expense items. The motion provides such expense allocations for 73 properties involving hundreds of different claimants." (Dkt. 1420 at 1) The expense allocation and reconciliation work at issue included, for example, ensuring that insurance premiums and refunds—many which were issued by the carrier, and thus paid, on a portfolio basis—were properly allocated among the properties and prorated according to when properties were sold during the policy periods. Indeed, a substantial focus of the third restoration motion involved the proper allocation of insurance premiums and refunds, which amounted to $1,667,670

5

over the period that the properties were held in the Receivership Estate. The amount of money at issue underscores the importance of the Receiver properly accounting for and allocating those amounts among the properties and the accompanying benefit to all of the properties for doing so accurately.

Moreover, there were numerous reasons why final accounting and reconciliation of certain expenses could not have occurred previously, and that it was most cost effective for the receivership to wait until the figurative dust settled on property expenses to undertake the final accounting reconciliation of expenses, commonly referred to in this receivership as restoration and reimbursement. For example, there were many trailing expenses and refunds for the properties, such as utility bills, real estate taxes, insurance refunds, and sundry other items. (Dkt. 1393, 1420) Property manager final account reconciliations always occurred sometime after properties were sold. There were a number of expense issues that arose in connection with the sales of properties, including for example resolving pre-receivership City liens, the totality and impact of which was not fully known until after the last property sold in early 2022. In fact, by waiting until all properties had been sold to finalize this work and file the Third Restoration motion, the Receiver greatly limited receivership fees and obviated the need to constantly update and revise the overall accounting and final reconciliation among the properties.[3]

The Objectors also argue "[t]he voluminous time entries over minor issues are not reasonable and should be rejected on their merits," but they do not explain the nature of the volume nor why the so-called "voluminous" time entries involve tasks that amount to "minor issues."

---

[3] While this was true, that did not limit the information provided to and available to the Objectors. To the contrary, as the Objectors know well, the Receiver and his property managers thoroughly and transparently provided property accounting and expense information to the Objectors and their counsel over several years. (*See, e.g.,* Dkt. 1420 at 9 & Ex. C)

They merely assert in a conclusory manner that the time entries are "not reasonable" and "should be rejected on their merits," but nowhere do they explain or provide a basis for these assertions.

Finally, the Objectors argue that fees relating to expense allocation and reconciliation efforts for a February 28, 2023 time entry should not be allocated "to all 76 remaining properties pro-rata' on the basis that "on its plain face, the Third Restoration Motion addresses only some and not all of the properties." (Dkt. 1486) But this is incorrect. On its face, Exhibit A to the Third Restoration Motion lists 73 properties with amounts reimbursable to or from the property. The three additional properties to share in this allocation are 3723 W 68th (property 33), 61 E 92nd (property 35), and 7953 Woodlawn (property 40), which were settled before the Receiver filed his restoration motion, and the reimbursable expenses paid by agreement and order of the Court (Dkt. 1391 at 4-5). The argument also implies, wrongly, that the Receiver did not distinguish in the allocation of fees relating to restoration efforts between those tasks that benefited all properties involved in the restoration motion and those that benefited fewer than all of those properties. For example, the Receiver allocated a February 1, 2023 time entry—"Update spreadsheet tracking property-related expenses for third restoration motion and related communications with J. Wine (5437 Laflin, 7933 Kingston, 8405 Marquette, 8800 Ada)"—that "on its plain face" involved restoration work to only the four properties to which the work related. (Dkt. 1478-1, Ex. G, at 75 of 2511, PageID #:99602. By contrast, unlike the first task on the page, which was allocated to four properties, other billing entries on the same page of the same invoice were allocated to all of the properties that were impacted by the third restoration motion, demonstrating that the Receiver did distinguish between those tasks that benefited only certain properties versus those that benefited all properties. (*Id.*) The bottom line is that the reason the time entry they flagged was

7

allocated to all 76 of these properties was because it related to work that benefited all and not a subset of them.

The Objectors also pull out of context the relative "total of all adjustments" for two properties in an effort to suggest that simply because there is a disparity in those amounts the particular tasks in the 19th Fee Application should not have been allocated equally to both of them. That argument, and the lack of analysis and context, ignores that the amount of work required to apportion expenses does not correlate to the dollar amount of the expense. It further ignores the benefit of proper accounting and reconciliation between the properties. As the Court and the SEC have previously noted, not only do their objections lack sufficient detail and merit, they amount to nitpicking. (*See, e.g.,* Dkt. 1480 at 3 (citing, 2/10/2023 Hearing Tr. at 136-37 & 4/26/2023 Hearing Tr. at 22); Dkt. 1481 at 2 n.1)

      **D.**      **The Court Should Overrule the Objectors' "Orange" Objections, as relates to the FHFA Properties, on the Same Bases as before.**

The Objectors' "orange" objections, which relate to the FHFA properties, are identical in substance to the objections they previously made under the seventh bullet of their "red" objections to the Receiver's 18th Fee Application. (*Compare* Dkt. 1486 at 7 *with* Dkt. 1394 at 7) The Court overruled all such objections in granting the application and approving the fee allocations among the properties. (Dkt. 1452; *see also* Dkt. 1424 at pp. 6-7) The Objectors' and their attorneys failed to comply with this Court's admonishments by failing to disclose the Court's prior ruling in this regard.[4] (*See, e.g.,* Dkt. 1424 at pp. 3-4; Dkt. 1031 at 11-12 n.32 ("pursuant to their attorneys'

---

[4] The Objectors' failure to adequately disclose their prior objections and the Court's rulings that overruled those objections is particularly confusing on this occasion due to the fact that they changed their color labels and presentation of this objection from the 18th Fee Application to the 19th Fee Application. That is, they changed it from a bullet point under "red" objections (in opposition to the 18th Fee Application) to a separately enumerated objection identified as "orange" (in opposition to the 19th Fee Application), and whereas their "orange" objections previously had a different meaning (in opposition to the 18th Fee Application).

duty of candor to the tribunal, see Am. Bar Assoc. Model R. 3.3(a)(2), **the Lenders must** simultaneously set forth citations to the Court's prior rulings **on each argument**") (emphasis added))

  E. **The Court Should Overrule the Objectors' "Green" Objections, Relating to Fees Allocated for Claims Process Implementation, on the Same Bases as before.**

The Objectors object to fees allocated to Groups 2 and 3 as premature. (Dkt. 1486 at 7) But they concede the Court has previously overruled such objections on earlier fee applications. (*Id.* at 8) The Court should again overrule such objections for the reasons in the Court's prior rulings and the related submissions of the Receiver and the SEC. (*E.g.,* Dkt. 1350, 1353 at pp.9-10 (and citations therein), 1366, 1371) Moreover, none of the Objectors has a claim against the Group 3 properties, and so they lack standing to make this objection, particularly since none of the Group 3 claimants has objected. (*See also* Dkt. 1424 at p.8 (similar standing argument in distribution context))

  III. **The Court Should Overrule Objections to the Receiver's Allocations Because the Receiver's Allocations Comply with the Court's Prior Orders.**

The Receiver cites the Court's prior rulings and references his reply in support of the 18th Fee Application. (Dkt. 1366, 1371, 1424 at p.9, 1452)

  IV. **The Receiver Recommends Against Any Holdback for the Reasons Previously Stated.**

The Receiver cites the Court's prior rulings and references his reply in support of the 18th Fee Application. (*E.g.,* Dkt. 1468; Dkt. 1424 at pp.10-12)

The Objectors continue to request a holdback of 20% of the fees requested in the application and an additional 20% holdback on any fees to be paid from the proceeds of the sale of the properties. (Dkt. 1486 at 8) This Court, however, has unequivocally found that "[t]he court's decision to no longer require an additional 20% holdback from the sales proceeds of

9

encumbered real estate applies to all disbursements going forward, including for fees approved by earlier orders. The flat 20% holdback is sufficient to guard against error." (Dkt. 1468) Thus, the request for an additional 20% holdback should be denied.

Moreover, as previously noted, the Receiver and his firm have provided significant rate discounts which equate to a substantial savings, which is equally applicable to the invoices submitted in connection with the 19th Fee Application. The following Table reflects the extent of this discount during the first quarter of 2023:

| Time Keeper | Value of Total Hours at Standard Rate | Value of Total Hours at Discount Rate | Value of Difference |
|---|---|---|---|
| K. Duff | 58,455.00 | 33,774.00 | 24,681.00 |
| M. Rachlis | 25,650.00 | 14,820.00 | 10,830.00 |
| E. Duff | 6,250.00 | 3,900.00 | 2,350.00 |
| A. Porter | 500.00 | 312.00 | 188.00 |
| J. Wine[5] | 105,625.00 | 43,940.00 | 61,685.00 |
| K. Pritchard | 23,075.00 | 12,922.00 | 10,153.00 |
| A. Watychowicz | 27,975.00 | 15,666.00 | 12,309.00 |
| J. Rak | 83,975.00 | 47,026.00 | 36,949.00 |
| TOTALS | $331,505.00 | $172,360.00 | $159,145.00 |

In addition, in Q1 2023, the Receiver and RDP devoted 475 hours to billing review efforts and the submission and defense of fee applications and allocations (referred to as "Billing Hours") (valued at $134,633.00, at the discounted rates), none of which is included in the submitted

---

[5] The Receiver has been voluntarily providing an additional discount to the rate for attorney Jodi Rosen Wine's time. Ms. Wine has over 30 years of commercial litigation experience. Whereas her standard hourly rate for 2023 is $625, and the rate approved by the Court for attorneys of her experience is $390, the Receiver has been further discounting her rate to $260.

10

invoices or in the table above. If the amounts sought by the invoices in the 19th Fee Application are considered in the context of the discounts and unbilled time already applied, the inequity of the holdback is laid bare. The following Table summarizes the primary discounts and unbilled time discussed above:

| Rate Discount | Billing Hours | Total Discount & Unbilled Time | Total Fees in 19th Fee Application | % Reduction Already Applied |
|---|---|---|---|---|
| $159,145.00 | $134,633.00 | $294,111.00 | $172,360.00 | 63% |

As this chart evidences, any holdback only magnifies the financial impact. It also shows that there is no windfall nor any appearance of a windfall. To add an additional 20% holdback (or the 40% holdback the Objectors continue to request) would be onerous and inequitable under the circumstances described above.

For all of these reasons, and those set forth in his replies to objections on previous fee applications (*e.g.,* Dkt. 1206, at 4-7; Dkt. 1207 at 9-11; Dkt. 1255 at 13-15; Dkt. 1353 at pp.11-13, Dkt. 1424 at pp.10-12), the Receiver respectfully recommends and requests that the Court not apply any holdback, but if one is applied, that such holdback not be greater than 20% in total for fees paid from property accounts.

**V.     The Court Should Overrule FHFA's Objection on the Same Bases as before.**

Apart from noting more recent orders continuing to stay disbursement of fees relating to the FHFA properties (Dkt. 1485 at 3), FHFA, Fannie Mae, and Freddie Mac (hereafter, "FHFA") also have objected on virtually identical grounds to their prior objections. (*See* Dkt. 1302, 1347, 1395) The Receiver cites the Court's prior rulings and references the SEC's and his reply in support of the 18th Fee Application. (Dkt. 1408, 1424 at pp.12-13, 1452)

Further, FHFA and its attorneys again failed to comply (Dkt. 1485) with this Court's admonishment about repeating overruled objections, requiring them to "do so in a summary fashion that incorporates citations (**with pinpoint cites**) to previous filings that have thoroughly laid out the objection." (Dkt. 1424 at pp.3-4 (citing Dkt. 1031 at 12-12 n.32) (emphasis added)) FHFA and its attorneys also violate in this fashion their duty of candor by failing to disclose the Court's prior rulings in this regard. (*E.g.,* Dkt. 1452, *which overruled* Dkt. 1395; *see also, e.g.,* Dkt. 1424 at pp. 3-4; Dkt. 1031 at 11-12 n.32 ("pursuant to their attorneys' duty of candor to the tribunal, see Am. Bar Assoc. Model R. 3.3(a)(2), **the Lenders must** simultaneously set forth citations to the Court's prior rulings **on each argument**") (emphasis added))

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Receiver's prior fee applications, the supporting briefs filed by the SEC and the Receiver, and in the Receiver's motion for approval to pay certain previously approved fees and costs, as well as this Court's prior rulings on fees and fee allocations, the Receiver respectfully requests that the Court exercise its discretion to:

(i) approve the Receiver's 19th Fee Application and payment of all fees and expenses described therein;

(ii) find that the Receiver has preserved, enhanced, or otherwise benefited the properties and the claimants in connection with the work performed and expenses incurred as reflected in the 19th Fee Application;

(iii) impose a first priority receiver's lien on the properties and proceeds of sale to satisfy certain receivership expenses, as set forth in Exhibits I-L to the 19th Fee Application;

(iv) Award the Receiver his fees against the offending Objectors and their attorneys for responding to objections that violate this Court's August 17, 2021 Order (Dkt. 1031 at 12 n.32); and

(v) grant such other relief as the Court deems equitable and just.

Dated: June 22, 2023            Respectfully submitted,

                                           Kevin B. Duff, Receiver

By:    /s/ Michael Rachlis
Michael Rachlis (mrachlis@rdaplaw.net)
Jodi Rosen Wine (jwine@rdaplaw.net)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950

13

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2023, I electronically filed the foregoing **Receiver's Reply in Support of His Nineteenth Interim Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals** with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system. A copy of the foregoing was served upon counsel of record via the CM/ECF system.

/s/ Michael Rachlis

Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net