# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:18-cv-5587 |
| v. | |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | Hon. Manish S. Shah |
| Defendants. | |

## OBJECTING INSTITUTIONAL LENDERS' RESPONSE TO RECEIVER'S 20TH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS

The Mortgagees identified on Exhibit A (the "Objecting Institutional Lenders") object to the Receiver's 20th Interim Fee Application and Motion for Court Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (Dkt. 1517, the "20th Fee Petition" regarding the "Fees") on the same or similar bases contained in their prior objections, which objections this Court has denied.

The Objecting Institutional Lenders highlight for the Court's attention that the Receiver's fees are increasing in recent quarters rather than decreasing. The Receiver seeks $182,547.79 for this latest 20th Fee Petition, an amount that has been increasing with each petition since the 16th Fee Petition which was for only $70,079. The 19th and 20th Fee Petitions, respectively, each seek about *double* what was sought in each of the 16th and 17th Fee Petitions, respectively, as reflected by the table below.

| Fee Petition | Amount | Dates | Source |
|---|---|---|---|
| 20th Fee Petition | $182,547.79 | Apr. 1, 2023 through June 30, 2023 | Dkt. 1517-1, Exh. I at p.8, PageID 102978 |
| 19th Fee Petition | $137,383.12 | Jan. 1, 2023 through March 31, 2023 | Dkt. 1478-1, Exh. I at p.7, PageID 99656 |
| 18th Fee Petition | $90,913.38 | Oct. 1, 2022 through Dec. 31, 2022 | Dkt. 1384-1, Exh. J. at p. 8, PageID 81741 |
| 17th Fee Petition | $87,217.78 | July 1, 2022 through Sept. 30, 2022 | Dkt. 1332, Exh. K at p.8, PageID 79091 |
| 16th Fee Petition | $70,079.63 | April 1, 2022 through June 30, 2022 | Dkt. 1293, Exh. K at p.6, PageID 71067 |

The Objecting Institutional Lenders also object generally to the Receiver's request in his 20th Fee Petition for a super-priority lien for the same reasons contained in their Response to Motion for Approval to Pay Certain Previously Approved Fees and Cost (Dkt. 961), their Objections to Magistrate Judge Kim's Oral Ruling and Minute Order on Receiver's First Fee Allocation Motion (Dkt. 1389, objecting to Dkt. 1107, *see also* line-level objections at Dkt. 1210), and their Objections to Magistrate Judge Kim's Recommendation on Receiver's Second Motion for Approval of Fee Allocations for Interim Payment Pursuant to Receiver's Lien ("Objections to RF2A") (Dkt. 1501, objecting to Dkt. 1491 Recommendation and Dkt. 1321 Motion), all such objections the Court has overruled except where the Receiver has agreed an error was made (*see, e.g.*, Dkt. 1450).

## BACKGROUND

1. The Objecting Institutional Lenders generally refer the Court to the Background section of their Response to Receiver's Fourteenth Interim Application and Motion for Court

Approval of Payment of Fees and Expenses of Receiver and Receiver's Retained Professionals (Dkt. 1250, pp. 2-6).

2. As additional background here, on August 14, 2023 the Receiver filed his 20th Fee Petition. Dkt. 1517.

3. Pursuant to the Court's Order, Dkt. 1031 at p.12, n.32, because the Objecting Institutional Lenders are reasserting prior allocation objections of the same category as they previously did, they do so below in "summary fashion that incorporates citations (with pinpoint cites) to previous filings that have laid out the objection." The Objecting Institutional Lenders are not asserting any objections which are categorically new, but some of the entries present different contexts to similar issues from prior petitions.

## I. The Objecting Institutional Lenders Assert The Same Objections To The Receiver's 20th Fee Petition As They Asserted To The Receiver's Prior Fee Applications.

The Objecting Institutional Lenders adopt and assert their objections to the Receiver's prior fee petitions (Dkts. 1486, 1394, 1346, 1305, 1210, 1188, 1181, 1039, 1000, 960, 792, 777, 648, 617, 595, 581, 509, 438) as to the Receiver's 20th Fee Petition, to preserve those objections by incorporating them by reference into this response. The Objecting Institutional Lenders also adopt the objections stated in the January 4, 2023 submission to chambers by Brett Natarelli noting the new availability of Estate funds in the operating account in sufficient amount to support most if not all of the Receiver's fee requests and the legal bases for why that would be more appropriate than a property surcharge against the segregated sales proceeds (which objections the Court rejected, but characterized as "narrow and understandable," Dkt. 1371). The Objecting Institutional Lenders also adopt the arguments presented in their Objections to Magistrate Judge Kim's Oral Ruling and Minute Order on Receiver's First Fee Allocation Motion, see Dkt. 1389,

and their Objections to the RF2A (Dkt. 1501) and Objections to RF2A (Dkt. 1501, objecting to Dkt. 1491 Recommendation and Dkt. 1321 Motion).

The Estate's general operating account has $2,285,029.56 in available funds as of June 30, 2023 (Dkt. 1516 at p.25, PageID 102677), resulting from various distributions associated with prior fee orders. The Estate's general operating account therefore has more than sufficient funding to bear the 20th Fee Petition amounts the Receiver seeks to allocate as a priming lien surcharge on the property sales proceeds totaling $182,547.79. Dkt. 1517-1, Exh. I at p.8, PageID 102978. The District Court has repeatedly overruled objections arguing that the source of funds to pay the Receiver should, in substantial part, come from the operating account estate funds rather than the segregated property accounts. Dkts. 1371, 1366, 1452, Dkt. 1481 at 9 ("[T]hey argue that the allocated fees should be paid from the Receiver's account and not from the property accounts. But this argument also simply retreads old ground. As the Objectors concede, this is a previously overruled objection.")

## II. Color-Coded Categorical Objections.

The Receiver requests that $182,547.79 of the Fees reflected on, among other exhibits, Exhibits F and G to Dkt. 1517, be paid as a first lien from the proceeds of the sales of the properties. The Receiver also attaches summaries and compilations of the same information provided with more detail in Exhibits F and G, and an allocation summary at Exhibit I, with more detail on the general and property-specific allocations at Exhibits K and L. Therefore, the line-item specific objections are presented only as to Exhibits F and G also apply to the proposed allocations. As before, the Objecting Institutional Lenders are not challenging the reasonableness of any time spent, nor that the Receiver should be compensated, rather they argue and preserve for appeal their argument that the source of funds should be the estate's general operating account as to the subjects of the objections.

4

The Objecting Institutional Lenders have color highlighted sample entries on the Receiver and his attorneys' monthly invoices (Exhibits F and G to the 20th Fee Petition) to illustrate Fees that should not prime the victorious secured creditors' liens, a copy of which is attached as Exhibit B. The bases of these specific objections are as follows:

*First,* Fees that the Objecting Institutional Lenders contend should be paid from estate operating funds rather than segregated property sale proceeds, but which objections the Court has previously overruled and where the issues are substantially the same as previously overruled objections even if arising in somewhat different contexts, are highlighted in **RED**. These include:

- o Fees marked "defer" which typically relate to the Receiver's pursuit of EquityBuild assets against third parties. These are marked red to preserve the objection for appeal if and when the Receiver purports to allocate them to a property.

- o Entries which are billed to all or substantially all properties but can only relate to one or a smaller subset of properties. As example, see PageID 102908, a 1.1 entry on 4\21\2023 to "Review claimants' submissions and correspondence" and send an internal email, billed to "set73". But most claimants did not make "submissions" in advance of the 4/26/2023 hearing, and many claimants have never participated in discovery or other processes so as to generate any "correspondence," so it is inappropriate to charge all of the properties for what must have been a more limited subset of "submissions and correspondence" reviewed. The Receiver also billed .1 to all of the properties (set73) to communicate with a single claimant.

- o Entries which are billed to all of a group even though the charge does not appear to relate to all of that group equally. As example, see PageID 102924, .4 entry on 5/3/23 to "email communications with counsel regarding confidentiality order and

5

      related email to claimant" charged to all Group 2 properties. This entry appears to relate to a particular claimant who had questions or concerns about the confidentiality order and the Receiver's correspondence with that claimant about it. That should be billed if at all to that claimant's property rather than the whole of Group 2.  Similarly, on 5/30-31 and on 6/1, 6/2, 6/5-6/7, 6/9, and 6/12-6/13 there are entries totaling 14.50 hours for "Record responses to discovery and email confirmations to claimants (Group 2)."  Presumably, those responses relate to less than all 5 Group 2 properties because very little was produced by claimants on Property 101 while production was more voluminous on other Group 2 properties, yet they were allocated equally to all.

- o  In other instances, the Receiver's fees have been allocated based solely on the number of properties involved even though the work with respect to those properties would not have been equal.  For example, on 4/23/23, JRW's 1.7 hour time entry (PageID 102909) for "review of deeds, mortgages and releases" was divided between the three properties involved even though the effect of the release is only at issue as to one of the properties, 6160 MLK.

- o  Entries which are unreasonably vague, such as "attention to claim" billed to one particular property for .8 on 6/14/2023 (PageID 102953).

- o  The Court has overruled objections similar to those above in all prior fee petitions and associated objections. *See, e.g.*, Dkt. 1353 at pp.8-9 (and citations therein); Dkt. 1181 at pp. 9-14.

    *Second,* Fees incurred to general review of claims without any apparent tie-in to adjudication efforts or even to activities presently occurring in the case should be charged to the

6

estate's operating account because no benefit to the victorious secured creditor can be shown at this time. Such entries are highlighted in **YELLOW**. Such entries are fairly voluminous, often vague, and are generally associated with properties for which the adjudication process has not even started. For example, on PageID 102912, there are two large entries, 4/27/23 for 6.8 hours, and 4/28/23 for 6 hours, to "Continue working on claims, review claims submissions for properties" with many of the addresses falling in Groups 4-8. The Objecting Institutional Lenders incorporate by reference their detailed descriptions of this objection category at Dkt. 1443 pp. 10-11; Dkt. 1389 (legal argument at pp. 1-8, specifics on this category at pp. 10-11); and Dkt. 1210 at p.14. The Court overruled these objections and broadened the "implementation and management of an orderly summary claim-priority adjudication process" priming lien category (Dkt. 1030 at p.2) to include "giving notice to interested parties, locating and preserving records, and handling creditor inquiries" and general claim review in preparation for adjudication (Dkt. 1366 at 2) in granting the Receiver's 17th Fee Petition. The Court also overruled this objection category when granting the First Fee Allocation Motion (Dkt. 1450) and has overruled all similar objections the Institutional Lenders have made since.

*Third,* Fees incurred to litigate Group 1 claims are not payable at this time through a priming lien. The Court has ruled that whether the time spent litigating the Group 1 claims could be paid from a priority lien would be determined as part of the claims adjudication process which is on appeal and thus ongoing. (Dkt. 1030, p. 14, n.7.). Such entries are highlighted in **ORANGE**. The Court has repeatedly overruled objections on this basis. *See, e.g.*, Dkt. 1504. However, in this quarter, most of the Fees expended in this regard were to oppose BC57's Motion to Stay, which was granted over the Receiver's and the claimants' objections, and should therefore not be permitted a priming lien. The relevant Group 1 claimants had independent counsel, Mr. Stein, who

opposed the stay, Dkt. 1473, rendering the legal fees incurred by the Receiver to also oppose the stay superfluous. As example, see PageID 102888, 1.7 entry regarding the opposition to the Motion to Stay on 5/15/23. The Receiver also spent time assigning distributions which were stayed and did not happen which should not be billed to the properties at this time. As example, see PageID 102879, 4\7\23 entry for .5 for an internal conference regarding "Group 1 claims" including the "proposed distribution order."

*Fourth,* the Objecting Institutional Lenders object to Fees associated with tasks the Receiver would have needed to undertake even in the absence of issues of secured priority such as preparing status reports, effectuating service, or performing accounting functions. While the Objecting Institutional Lenders do not dispute that the Receiver should be paid for this work, paying fees for such tasks out of segregated sales proceeds to the detriment of the victorious secured creditor violates the general rule that the estate's operating account should bear the expense absent special benefit to the victorious secured creditor. These entries are highlighted in **<u>BLUE</u>**. For example, on 4/27/23, PageID 102911 the Receiver's attorneys billed .7 to tasks associated regarding updating claimant contact information reference materials. No particular properties should be billed for such tasks because the Receiver would have needed to maintain an index of claimant contact information and deal with claimants regardless of whether they are secured or not, and regardless of whether secured claimants existed or not. The Court has previously overruled all such "general receivership" objections. *See* Dkt. 1481, Exh. A (Transcript of 4/26/2023 hearing at pp. 22-23); Dkt. 1481 at pp. 12-13 (Receiver summary of Court's prior ruling on similar issues but involving different fee entries). The Court also overruled similar objections made in the 17th -19th Fee Petitions (Dkts. 1366, 1452, 1504).

*Fifth,* the Objecting Institutional Lenders object to Fees related to Group 2 and Group 3 as premature because it is too early to determine if the Receiver will have conferred a benefit on the properties sufficient to obtain a priming lien until after the adjudication process plays out. These entries are highlighted in **GREEN**. As example, see PageID 102895, 3.2 entry on 6/1/23 for various activities regarding the Group 2 and Group 3 adjudications. In addition, the Receiver allocated its supplemental discovery work related to Group 2 across all 5 properties, even though there is no evidence that such work will benefit the creditor that the Court ultimately determines has the first priority lien. For example, on 6/27/23, PageID 102961-102962, a total of 22.9 hours were allocated for the Receiver's "additional discovery requests" and subpoenas that were directed to the institutional lenders and the title insurance companies that closed their loans. Such discovery has no benefit to the institutional lenders, as it is directed at investigating in order to contest their claims, and should not be allocated to their collateral unless and until the Court determines that another lien claimant has priority. Respectfully, the Receiver should not be undertaking such discovery at all, much less charging it to the properties, where the individual investors are represented by counsel (such as Capital Investors, LLC (6951 S. Merrill Fund I LLC) which asserts a $1,550,000 secured claim against the 6949 Merrill Property), and especially where the institutional lender, Thorofare Asset Based Lending REIT Fund IV, LLC, recorded a first-in-time purchase money mortgage against the property, such that there are no alleged fraudulent payoff statements or releases involved. The Court has rejected similar arguments about Group 1 Fees generally. *See, e.g.,* Dkts. 1350, 1353 at pp.9- 10 (and citations therein), 1366, 1371. The Objecting Institutional Lenders also argued for deferring allocation of Group 2 fees until after adjudication in the 19th Fee Petition (Dkt. 1486 at p.7), and the Court overruled that objection (Dkt. 1504).

**III.    The 20th Fee Application Should Be Subject To A 20% Holdback on all Fees and an Additional 20% Holdback on All Fees to be Surcharged to the Secured Properties.**

Consistent with the Court's order approving the Receiver's ninth, tenth, and eleventh fee petitions (Dkt. 1031, pp. 13-14), twelfth fee petition, (Dkt. 1213, p. 9), and fee petitions thirteen through sixteen (Dkt. 1312, pp. 3-4), and the reasons advanced in the Motion for Reconsideration, Dkt. 1471, which the Court denied, the Objecting Institutional Lenders respectfully request that the Court require any approved fees be subject to "a holdback of 20% of the fees (but not expenses) requested in the applications, and an additional 20% holdback on any fees to be paid from the sales proceeds of encumbered real estate" as the Court previously held prior to the 17th Fee Petition. Dkt. 1312, p.4 (Order on Petitions 13-16). The Court has since then rejected in favor of a 20% holdback on all fees only without an additional 20% holdback on the payment of Fees that would be paid from the property-specific accounts. Dkts. 1483, 1504, 1510, 1511. While the Court has required only a 20% holdback since the 17th Petition, see Dkt. 1468, the Objecting Institutional Lenders continue to assert that an additional holdback of 20% of Fees to be allocated against the properties' segregated sales proceeds will ensure there are sufficient untapped funds to unwind any errors. Such errors might include Objecting Institutional Lenders objections to fee petitions being sustained on final appeal at the conclusion of the Receivership, but the anticipated process of reconciling the Receiver's continued "restorations" and ongoing account maneuvers at the end of the case may also benefit from an additional holdback. The Objecting Institutional Lenders also made this argument in the 19th Fee Petition (Dkt. 1486 at p.8), and the Court rejected the argument in favor of a sole 20% holdback on all Fees (Dkt. 1504).

**CONCLUSION**

Consequently, the Objecting Institutional Lenders request that the Court deny the Receivers 20th Fee Application on the grounds raised herein and in their objections to the

Receiver's prior fee applications. If the Fees are approved, the Objecting Institutional Lenders argue that the objected-to Fees should be paid from the estate's operating funds rather than the segregated property sales proceeds. The Objecting Institutional Lenders further request that any approved fees be subject to a 20% holdback and that any payment of approved fees from property-specific accounts be subject to an additional 20% holdback, which this Court has recently repeatedly rejected.

Dated:  September 5, 2023                                                               Respectfully submitted,

| /s/ Brett J. Natarelli | /s/ Ronald A. Damashek |
|---|---|
| Edward S. Weil (eweil@dykema.com) Todd Gale (tgale@dykema.com) Brett J. Natarelli (bnatarelli@dykema.com) Kevin Connor (kconnor@dykema.com) Dykema Gossett PLLC 10 S. Wacker Drive, Suite 2300 Chicago, Illinois 60606 (312) 627-5675 *Counsel for Federal Home Loan Mortgage Corporation Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Wilmington Trust, National Association, as Trustee for the Registered Holders of UBS Commercial Mortgage Trust 2017-C1,Commercial Mortgage Pass-Through Certificates, Series 2017-C1; Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; Federal National Mortgage Association; U.S. Bank National Association, as Trustee for the registered Holders of J.P.* | Ronald Damashek (rdamashek@dickinsonwright.com) Dickinson Wright PLLC 55 West Monroe Street — Suite 1200 Chicago, Illinois 60603 Ph: (312) 377-7858 Fax: (312) 423-8160 *Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB14; Midland Loan Services, a Division of PNC Bank, National Association; Thorofare Asset Based Lending REIT Fund IV, LLC; and Liberty EBCP, LLC* <br><br> s/ Andrew T. McClain <br> Jill L. Nicholson (jnicholson@foley.com) Andrew T. McClain (amcclain@foley.com) Foley & Lardner LLP 321 N. Clark St., Ste. 3000 Chicago, IL 60654 Ph: (312) 832-4500 Fax: (312) 644-7528 *Counsel for Citibank N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase* |

| | |
|---|---|
| *Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50;U.S. Bank National Association, as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30 Sabal TL1 LLC; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Benefit of Corevest American Finance 2017-1 Trust Mortgage Pass-Through Certificates; Midland Loan Services, a Division of PNC Bank, N.A. as servicer for Wilmington Trust, N.A., as Trustee for the Registered Holders of Corevest American Finance 2017-2 Trust, Mortgage Pass-Through Certificates, Series 2017¬2; BC57, LLC; UBS AG; 1111 Crest Dr., LLC, Pakravan Living Trust, Hamid Ismail, Farsaa, Inc.; Thorofare Asset Based Lending REIT Fund IV LLC* | *Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB30; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB41; U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB50; Wilmington Trust, National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2014-LC16, Commercial Mortgage Pass-Through Certificates, Series 2014-LC16; Federal National Mortgage Association; and Sabal TL1, LLC*<br><br>/s/ Timothy J. Patenode<br>Timothy J. Patenode<br>(timothy.patenode@katten.com)<br>Katten Muchin Rosenman LLP<br>525 W. Monroe Street<br>Chicago, IL 60661-3693<br>Ph: (312) 902-5200<br>Fax: (312) 902-1061<br>*Counsel for UBS AG* |
| s/Jay L. Welford<br>Jay L. Welford<br>Counsel to Liberty EBCP, LLC<br>jwelford@jaffelaw.com<br>JAFFE RAITT, HEUER & WEISS, P.C.<br>Jay L. Welford (P34471)<br>27777 Franklin Road, Suite 2500<br>Southfield, Michigan 48034<br>(248) 351-3000<br><br>s/ Mark S. Landman<br>mlandman@lcbf.com<br>Landman Corsi Ballaine & Ford P.C. | s/ William J. Serritella, Jr.<br>William J. Serritella, Jr.<br>wserritella@taftlaw.com<br>Taft Stettinius & Hollister LLP<br>111 East Wacker Drive, Suite 2800<br>Chicago, IL 60601<br>(312) 527-4000 |

120 Broadway, 13th Floor
New York, NY 10271
Ph: (212) 238-4800
Fax: (212) 238-4848
*Counsel for Freddie Mac*

/s/ Thomas B. Fullerton
Thomas B. Fullerton (6296539)
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
(312) 634-5700
thomas.fullerton@akerman.com

/s/ Michael D. Napoli
Michael D. Napoli (TX 14803400)
Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 720-4360
michael.napoli@akerman.com
*Counsel for Midland Loan Services, a Division of PNC Bank, National Association*

/s/ Bradley S. Anderson
Bradley S. Anderson, MO #53569
1201 Walnut Street, Ste. 2900
Kansas City, MO 64106-2150
Telephone: (816) 691-3119
Facsimile: (816) 412-1000
bradley.anderson@stinson.com
*Attorneys for BMO Harris Bank, N.A., and Midland Loan Services, a division of PNC Bank, NA, acting under authority designated by Colony American Finance Lender, LLC, assignee Wilmington Trust, N.A. as Trustee for the benefit of registered holder of Colony American Finance 2015-1*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, I electronically filed with CM/ECF the foregoing **OBJECTING INSTITUTIONAL LENDERS RESPONSE TO RECEIVER'S TWENTIETH INTERIM APPLICATION AND MOTION FOR COURT APPROVAL OF PAYMENT OF FEES AND EXPENSES OF RECEIVER AND RECEIVER'S RETAINED PROFESSIONALS** which sent electronic notification of the filing to all attorneys of record

*/s/ Candace Mandel*