IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 18-cv-5587 |
| v. | ) Hon. Manish S Shah |
| EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN, | ) Mag. Judge Young B. Kim |
| Defendants. | ) |

**CLAIMANT AMARK INVESTMENT TRUST'S RESPONSE TO RECEIVER'S SUBMISSION ON GROUP 4 CLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Claimant AMark Investment Trust ("AMark") respectfully files this Response to Receiver's Submission on Group 4 Claims [Doc. # 1627] and, in support hereof, states as follows:

**I. SUMMARY OF THE RESPONSE**

1. AMark holds a first priority perfected security interest in the property located at 1102 Bingham Street, Houston, Texas 77007 (the "Bingham Property") pursuant to a Deed of Trust. The Bingham Property Deed of Trust includes a cross-collateralization provision whereby any proceeds recovered from the sale of the Bingham Property shall be used to satisfy not only AMark's investment under the Bingham Property, but also AMark's investment in the 5201-5207 W. Washington Blvd., Chicago, Illinois 60644 properties (the "Chicago Property"). The Receiver's Submission on Group 4 Claims asserts that AMark should only recover the $125,000.00 it invested as principal directly into the Bingham Property. However, because the Bingham

Property is over-secured, AMark is entitled to recover the full $125,000.00 it invested into the Bingham Property, the remaining balance on the Chicago Property in the amount of $131,000.00, and AMark's attorney's fees in the amount of $128,427.27 that it incurred **prior to** the Receivership establishment date of August 18, 2018. The Receiver's suggestion that equitable considerations should be considered for the Bingham Property fails as AMark is not similarly situated with, or of equal priority to, unsecured lenders under the Receivership. Rather, as acknowledged by the Receiver, AMark is uniquely situated because it has a first priority security interest in the over-secured Bingham Property, and it is requesting recovery of pre-receivership attorney's fees. Thus, AMark seeks recovery from the Bingham Property in the total amount of $384,427.27.

## II. BACKGROUND

### A. Facts Related to the Bingham Property

2. In this transaction, Defendant Hard Money Company, LLC d/b/a Venture Hard Money Capital, LLC ("Hard Money") pooled money together from other lenders, then acted as servicer and agent of a loan from the lenders (including AMark) to Defendant EquityBuild, Inc. d/b/a EB EquityBuild Capital, Inc. ("EB Capital"). EB Capital used the loan proceeds to acquire the Bingham Property, and in exchange, executed a promissory note to Hard Money, as servicer and agent for all lenders (including AMark), which was secured by a Deed of Trust to the Bingham Property.

3. On March 20, 2014, AMark and Hard Money mutually executed a Collateral Agency and Servicing Agreement (the "Bingham Servicing Agreement"), a true and correct copy of which is attached hereto and incorporated herein for all purposes as Exhibit "A." As a result of the resulting agent-principal relationship, Hard Money owed AMark fiduciary duties as AMark's

agent to act solely in the best interest of AMark, as well as fulfill all duties and obligations as AMark's agent and fiduciary with regard to the Bingham Property.

4. On April 1, 2014, Defendant EB Capital and Hard Money executed a promissory note (the "Bingham Promissory Note") in the amount of $1,663,053.00, a true and correct copy of which is attached hereto and incorporated herein for all purposes as Exhibit "B." As part of this transaction, AMark made a loan against the Bingham Property in the amount of $125,000.00 and never received any interest payments or other distributions on this loan.

5. The same day, April 1, 2014, EB Capital executed a deed of trust covering the Bingham Property (the "Bingham Deed of Trust") in favor of Hard Money, as servicer and agent for AMark, securing repayment of the Bingham Promissory Note. A true and correct copy of the Bingham Deed of Trust is attached hereto and incorporated herein for all purposes as Exhibit "C."

6. The Bingham Deed of Trust included the following cross-collateralization provision:

> This Deed of Trust shall secure, in addition to the [Bingham Promissory] Note, all funds hereafter advanced by Beneficiary to or for the benefit of Grantor, as contemplated by any covenant or provision herein contained or for any other purpose, and all other indebtedness, of whatever kind or character, owing or which may hereafter become owing by Grantor to Beneficiary, whether such indebtedness is evidenced by note, open account, overdraft, endorsement, surety agreement, guaranty or otherwise, it being contemplated that Grantor may hereafter become indebted to Beneficiary in further sum or sums.

B. **Facts Relevant to the Chicago Property**

7. On January 30, 2015, EB Capital and Defendant EquityBuild Finance, LLC ("EB Finance") executed a promissory note (the "Chicago Promissory Note") in the amount of $2,200,000.00, a true and correct copy of which is attached hereto and incorporated herein for all purposes as Exhibit "D." Pursuant to the terms of the Chicago Promissory Note, AMark loaned

3

the sum of $367,500.00, alongside a 2-point incentive in the amount of $7,500.00, for a total loan of $375,000.00. AMark received $161,500.00 in interest payments and a $75,000.00 principal paydown on this loan.

8. On January 30, 2015, EB Capital executed a mortgage security instrument for the Chicago Property (the "Chicago Security Instrument") in favor of EB Finance, as servicer and agent for the lenders, securing repayment of the Chicago Promissory Note. A true and correct copy of the Chicago Security Instrument is attached hereto and incorporated herein for all purposes as Exhibit "E."

9. On January 1, 2018, unknown to AMark and without consent, Defendants prepared and filed a Release Deed, signed by Shaun D. Cohen, that released AMark's Chicago Security Instrument without notice to, or consent from, AMark. A true and correct copy of the Release Deed obtained from the Cook County Recorder of Deeds is attached hereto and incorporated herein for all purposes as Exhibit "F."

10. On November 28, 2017, Defendants executed a Warranty Deed, which was signed by Jerry H. Cohen and filed on January 2, 2018, that transferred the Chicago Property to a third-party purchaser without repaying AMark its loaned funds. A true and correct copy of the Warranty Deed obtained from the Cook County Recorder of Deeds is attached hereto and incorporated herein for all purposes as Exhibit "G."

11. Because the Chicago Property was sold prior to establishment of the Receivership, it has been deemed a non-receivership property, meaning the Receiver is unable to pursue recovery of losses incurred as a result of the fraudulent sale.[1] Fortunately, however, AMark does retain a

---

[1] Separately, a group of investor-lenders brought a foreclosure action (5201 Washington Investors LLC v. EquityBuild, Inc., et al., Case No. 2022 CH 1268) on the Chicago Property, filed February 15, 2022 pursuant to the Court's Order partially lifting the stay. (Dkt. 1176) On July 14, 2023, the state court entered an order dismissing the action with

4

first priority, secured lien interest that allows it to recover losses stemming from the Chicago Property, and that is through its contractual rights under the Bingham Deed of Trust.

12. The Bingham Promissory Note and Chicago Promissory Note both matured, AMark was not repaid, and the vast majority of both notes remains outstanding.

13. As part of its efforts to preserve its investments with EquityBuild prior to establishment of the Receivership, AMark filed a lawsuit against the Defendants, expending significant time and effort to pursue its own recovery and to help other investor-lenders.

### III. ARGUMENT

14. AMark's investments in both the Bingham Property and the Chicago Property are secured by the Bingham Deed of Trust. Because AMark holds a first priority secured interest in the over-secured Bingham Property, AMark seeks recovery of the amounts lost in the Bingham and Chicago investments plus its attorney's fees incurred prior to the Receivership establishment date.

**A. AMark is Entitled to Recover the Amounts Lost from the Bingham and Chicago Investments.**

15. A district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. *Bank Midwest v. R.F. Fisher Elec. Co., LLC*, 514 F. Supp. 3d 1310, 1319–20 (D. Kan. 2021); *SEC v. Mgmt. Sols., Inc.,* No. 11-CV-01165-BSJ, 2013 WL 594738, at *2 (D. Utah Feb. 15, 2013). Such power, however, does not allow the court "to disregard the law in its entirety." *Bank Midwest*, 514 F. Supp. 3d at 1319–20 (D. Kan. 2021); *Mgmt. Sols., Inc.*, 2013 WL 594738, at *3 (D. Utah Feb. 15, 2013). It is well established that a federal court appointed receiver takes property subject to all liens, priorities or privileges existing or accruing under the

---

prejudice pursuant to 735 ILCS 5/2619 of the Illinois Code of Civil Procedure. An appeal of that ruling to the Illinois Appellate Court, Case No. 1-23-1403, is pending, but it appears unlikely that AMark will be able to recover these losses outside of the Receivership Estate.

laws of the State. *Bank Midwest*, 514 F. Supp. 3d at 1319–20 (D. Kan. 2021). Another well-established principle of receiverships is that "a receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment." *Id.* (quoting *Cates v. Musgrove Petroleum Corp., Inc.*, 190 Kan. 609, 376 P.2d 819, 821 (1962)). "To the extent that one debt is secured and another is not there is manifestly an inequality of rights between the secured and unsecured creditors, **which cannot be affected by the principal of equality of distribution**." *Id.* (citing *Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406, 412, 58 S.Ct. 612, 82 L.Ed. 926 (1938)) (emphasis added). Thus, although the Court "has broad powers to craft an equitable remedy in the distribution of receivership assets ... it cannot ignore state and federal laws." *Id.* (citing *SEC v. Mgmt. Sols., Inc.*, No. 11-CV-01165-BSJ, 2013 WL 594738, at *3). In particular, the Court "must respect contract rights, the status of secured creditors, and secured creditors' rights to their interests in collateral." *Id.*

16. Here, the Receiver argues that AMark should be limited to recover the principal balance from the Bingham investment in the amount of $125,000.00 and that the remaining balance from the Chicago investment be treated as an unsecured claim against the Estate. Dkt. No. 1627 at 10. The Receiver's notion that the Court may override a secured mortgagee's contractual rights violates the fundamental principal that a "court in equity may not do that which the law forbids." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 842 (5th Cir. 2019).

17. AMark retains a first priority secured lien interest through the Bingham Deed of Trust that allows it to recover losses stemming from the Bingham Property and Chicago Property. There is no dispute that the Bingham Deed of Trust cover's AMark's secured claim for the principal investment in the Bingham Property. However, the Receiver disputes whether AMark's

secured interest in the Bingham Property, and its proceeds, under the Bingham Deed of Trust extends to the Chicago Promissory Note and Chicago Security Instrument. Under Texas law, cross-collateralization clauses are fully enforceable. *See Robinson v. Nat'l Bank of Commerce of Dallas*, 515 S.W.2d 166, 168 (Tex. App.—Fort Worth 1974, no writ) (holding that express provisions in a deed of trust securing future advances have been consistently upheld by Texas Courts). Therefore, the Receiver's suggestion to treat AMark's claim in the Chicago Property investment as unsecured directly impairs AMark's contractual rights and effectively punishes a secured creditor.

18. Further, under the "netting rule," which the Receiver seeks to employ for Group 4 Distributions, amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. *See Donell v. Kowell*, 533 F.3d 762, 771 (9th Cir. 2008). In receivership proceedings, the net investment amount is often used to determine the allowed amount of investors' claims because it reflects the true economic loss suffered by the investors. AMark has suffered a true economic loss from its investments in the Bingham Property and Chicago Property, including additional loss as a result of the sale of the Chicago Property. As such, recovery of the "net investment" for the Bingham Property and the Chicago Property under the Bingham Deed of Trust does not result in AMark realizing a profit at the expense of other investors and lenders.

B. **AMark Seeks Recovery of Pre-Receivership Legal Fees.**

19. The Receiver argues that AMark should not be entitled to recover its pre-receivership attorney's fees. Themes that are present through all of the Receiver's arguments include disallowance of claims on post-receivership interest and fees, rejection of claims where properties are under-secured, and equitable considerations for similarly situated claims of equal

7

priority. In support of the Receiver's argument, the Receiver cites to *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154 (C.D. Cal. October 13, 2015), on numerous occasions. However, it is worth noting that the Court in *Capital Cove* stayed only the accrual of **post-receivership** interest for **unsecured** and **under-secured** creditor claims and on only default rate interest as to any and all fully secured or over-secured creditor claims. *Id.*

20. The Receiver's arguments do not apply to AMark's request to recover **pre-receivership** attorney's fees. First, AMark is not seeking recovery of any post-receivership fees or interest, but rather those incurred prior to the receivership inception date. Second, AMark's first priority, secured interest is not similarly situated, or of equal priority, to unsecured lenders under the Receivership. Third, the Bingham Property is over-secured and will still have a surplus even after paying AMark's true economic loss of principal and pre-receivership fees totaling $384,427.27. Lastly, AMark does not seek to penalize the Estate, but rather seeks only to recover actual losses incurred through its EquityBuild investments.

21. Pursuant to 11 U.S.C. § 506(b), "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." The Receiver agrees that the Bingham Property is over-secured: "the principal amount of the secured claims remaining is less than the amount available in the property account." Dkt. No. 1627 at 5-6. Additionally, AMark is entitled to recovery of its attorney's fees under the terms of both the Houston Promissory Note and the Chicago Promissory Note and under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 38.001 *et. seq.*; TEX. BUS. & COM. CODE § 24.001 *et. seq.* Therefore, AMark is entitled to recovery of its pre-receivership attorney's fees as required by law.

22. Further, as part of its efforts to preserve its investments with EquityBuild prior to the establishment of the Receivership, AMark brought a case against the Defendants in the United States District Court for the Southern District of Texas, Houston Division, styled *Anson Markwell, as Trustee for the AMark Investment Trust v. EquityBuild, Inc., et al.*, in Case No. 4:18-cv-01274, expending significant time and effort to pursue its own recovery and to help other investor-lenders. AMark notified numerous investor-lenders of EquityBuild's illicit activities prior to this SEC action, and the SEC Staff Accountant, Ann Tushaus, even cited AMark's case in supporting her argument on behalf of the SEC in appointing the Receiver. *See* Dkt. No. 5. Thus, AMark's legal fees incurred prior to this Receivership served the purpose of assisting the Estate rather than penalizing it.

23. As of March 20, 2024, the date of the Receiver's Submission on Group 4 Claims, AMark has incurred $137,738.24 in legal and collection expenses related to its loans against the Bingham Property. The vast majority of these fees were incurred prior to the SEC action against Defendants and prior to the stay on related litigation and the establishment of the Receivership. The legal and collection expenses incurred by AMark prior to the Receivership establishment date of August 18, 2018 total $128,427.27. AMark submitted copies of all relevant attorney fee invoices as part of its Receivership Proof of Claim Form, which are attached hereto and incorporated herein for all purposes as Exhibit "H."

24. The total amount in which AMark seeks to recover from the Bingham Property is calculated as follows:

| | | |
|---|---|---|
| 125,000.00 | | 1102 Bingham |
| 131,000.00 | | 5201-5207 W Washington |
| | 375,000.00 | Principal Amount of Loan |
| | (7,500.00) | 2-Point Incentive Fee |
| | (161,500.00) | Interest Received |
| | (75,000.00) | Principal Returned |
| 128,427.27 | | Pre-Receivership Legal Costs |
| 384,427.27 | | True Economic Loss |

25.     AMark seeks recovery of secured, principal amounts lost and pre-receivership legal fees incurred from its investments with EquityBuild. These principal losses and legal fees amount to $384,427.27. The Bingham Deed of Trust, Bingham Promissory Note, and Chicago Promissory Note give AMark the contractual right to recover these amounts. The underlying Receivership property is over-secured, and thus, should be used to satisfy AMark's claim. Therefore, AMark's claim request constitutes its true economic loss suffered and AMark is entitled to recover the full $384,427.27 from the proceeds of the Bingham Property.

## IV. CONCLUSION

For all of the above reasons, AMark, as a first priority secured creditor, is entitled to recover the full principal losses from the Bingham Property and Chicago Property investments. Further, because the Bingham Property is over-secured, AMark respectfully requests that the Court grant recovery of AMark's pre-receivership attorney's fees.

Dated: April 9, 2024

    Respectfully Submitted,

    /s/ Alan B. Padfield
    Alan B. Padfield
    Texas State Bar I.D. #00784712
    abp@padfieldstout.com
    Jeffrey V. Leaverton
    Texas State Bar I.D. #24078840
    jleaverton@PadfieldStout.com
    Kelsey N. Linendoll
    Texas State Bar I.D. #24120975
    klinendoll@padfieldstout.com
    PADFIELD & STOUT, L.L.P.
    420 Throckmorton Street, Suite 1210
    Fort Worth, Texas 76102
    817-338-1616 phone
    817-338-1610 fax

    *Attorneys for AMark Investment Trust*


    /s/ D. Alexander Darcy
    D. Alexander Darcy (ARDC#: 06220515)
    Darcy & Devassy PC
    444 N. Michigan Ave., Suite 3270
    Chicago, IL 60611
    (312) 784-2400 (t)
    (312) 784-2410 (f)
    adarcy@darcydevassy.com

    *Local counsel*