### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

    v.

EQUITYBUILD, INC., EQUITYBUILD
FINANCE, LLC, JEROME H. COHEN, and
SHAUN D. COHEN,

        Defendants.

No. 18 CV 5587

Judge Manish S. Shah

### MEMORANDUM OPINION AND ORDER

Jerome and Shaun Cohen ran a Ponzi scheme through their real estate investment companies, EquityBuild, Inc. and EquityBuild Finance, LLC. The SEC sued them, they consented to judgment against them, and a receiver was appointed to take over the Cohens' and the companies' assets and advise the court on how to equitably distribute them to defrauded investors. The Cohens' scheme is described in *S.E.C. v. Equitybuild, Inc.*, No. 18-cv-5587, 2023 WL 2018906, at **1–4 (N.D. Ill. Feb. 15, 2023) and *S.E.C. v. EquityBuild, Inc.*, 101 F.4th 526, 528 (7th Cir. 2024). This opinion resolves competing claims for priority on properties that were grouped together as "Group 6."

## I. Legal Standards

District courts have broad discretion in approving a plan for distributing receivership funds. *See S.E.C. v. Wealth Mgmt. LLC,* 628 F.3d 323, 332–33 (7th Cir. 2010); *see also S.E.C. v. First Choice Mgmt. Svcs. Inc.*, 743 Fed. App'x 33, 35 (7th Cir.

2018). A district court's primary job in supervising an equitable receivership is to ensure that the receiver's proposed plan of distribution is "fair and reasonable." *Wealth Mgmt.*, 628 F.3d at 332.

## II.    Facts

There are 15 properties in Group 6: 1414 &1418 East 62nd Place (Property 8), 6217-27 S Dorchester Avenue (Property 68), 2800-06 E 81st St (Property 108), 4570-52 S Indiana Avenue (Property 109), 5618-20 S Martin Luther King Drive (Property 110), 6558 S Vernon Avenue (Property 111), 7450 S Luella Avenue/2220 E 75th (Property 112), 7840-42 S Yates Avenue (Property 113), 7760 S Coles Avenue (Property 50), 1401 W 109th Place (Property 51), 6807 S Indiana Avenue (Property 53), 8000-02 S Justine Street (Property 54), 8107-09 S Ellis Avenue (Property 55), 8209 S Ellis Avenue (Property 56), 8214-16 S Ingleside Avenue (Property 57). [1771] at 7. Seventy-four claimants submitted proof-of-claim forms for these properties. *See* [1740] at 2 *and* [1800] (amended). All properties have been sold and the receiver is holding the proceeds of those sales in separate bank accounts. [1771] at 24, 30. None of the accounts hold sufficient funds to pay all the claimants in full. [1740-1] at 3–6.

The Receiver negotiated settlements of the disputes over 1414 & 1418 East 62nd Place (Property 8) and 6217-27 S Dorchester Avenue (Property 68). [1770]. Claimants had an opportunity to object to the settlements, and without any objections, I granted the Receiver's motion to approve distribution of proceeds from the sale of those two properties. [1780].

2

As part of the fraud scheme, EquityBuild gave out multiple mortgages on the same property, recording mortgages out of sequence or recording a purported release in order to present a clean chain of title to future lenders. In addition, many of the mortgages secured loans that were for more money than the recent sale price of the property, meaning the loans were not fully secured. [1] ¶¶ 38, 40.

Individuals invested in EquityBuild by contributing to a pool of funds that EquityBuild advertised would be used to invest in a particular property; in return for their investment, the individuals were promised a first-position lien on the property. [1] ¶¶ 20–24. Some of the mortgages in favor of individual investors named the lender/mortgagee as "The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC"; Exhibit A to the mortgage listed the names of the individual investors for the particular property. *See, e.g.,* [1740-1] at 21–28 (5618 S. MLK). Other mortgages named the lender/mortgagee as "[Property] Associates," which individual investors held partnership interests in. *See, e.g.,* [1740-1] at 73–82 (1401 W 109th Place). I refer generally to the lenders in these transactions as "Individual Investors."

Institutional lenders also invested in EquityBuild but usually did so as the only lender in a transaction and secured their loan with a mortgage on a group of properties.

### A.    UBS AG

UBS AG claims priority in six properties: 2800 E 81st St (Property 108), 4570 S Indiana Avenue (Property 109), 5618 S Martin Luther King Drive (Property 110),

6558 S Vernon Avenue (Property 111), 7450 S Luella Avenue (Property 112), 7840 S Yates Avenue (Property 113).[1] [1756] at 2. The Receiver and UBS AG agree that there is no investor mortgage information for the 4570 S Indiana Avenue property. *See* [1740] at 4 *and* [1756] at 6. So, UBS AG has first priority on 4570 S Indiana Avenue. This leaves five properties where priority is in dispute.

EquityBuild, Inc. owned the properties located at 6558 S Vernon Avenue and 5618 S Martin Luther King Drive and borrowed funds from Institutional Investors in exchange for promissory notes secured by mortgages on the properties. EquityBuild executed a mortgage in favor of the Individuals Investors on 6558 S Vernon Avenue on June 3, 2014. [1740-1] at 29. The mortgage did not include an "Exhibit A," but the investors were listed by name on an Exhibit A distributed by Tyler DeRoo to UBS AG. [1740-1] at 182–188. The mortgage on 6558 Vernon Avenue was recorded on August 8, 2014. [1740-1] at 29. EquityBuild executed a mortgage in favor of the Individual Investors on 5618 MLK Drive on March 6, 2015. [1740-1] at 21. The mortgage listed the mortgagee/lender as "The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC" and was recorded on April 24, 2015. [1740-1] at 21.

Three of the properties were not owned by EquityBuild. Instead, the mortgages were structured with certain investors as the owners/borrowers and with other investors as the lenders. A mortgage in favor of the Individual Investors on 7842 S.

---

[1] A seventh property that secured UBS AG's loan, 1422 E. 68th Street (Property 107), was subject to a separate settlement agreement. [1570].

Yates was executed on March 30, 2012. [1740-1] at 44. The mortgage listed the mortgagee/lender as "Nicholas D or Pamela M Rende, C/O Hard Money Company, LLC" and the borrower as Kendall Chenier. [1740-1] at 44. The mortgage was recorded on March 18, 2013, and re-recorded on December 12, 2013.[2] [1740-1] at 44. A mortgage in favor of the Individual Investors on 2800 E 81st St was executed on December 21, 2012. [1740-1] at 11–20. The mortgage listed the mortgagee/lender as "Nicholas D or Pamela M Rende, C/O Hard Money Company, LLC" and the borrower as "Kendall Chenier." [1740-1] at 36. The mortgage was recorded on July 14, 2015. [1740-1] at 10–207. A mortgage in favor of the Individual Investors on 2220 E 75th St (7450 S Luella Avenue) was executed on June 26, 2015. [1740-1] at 36. The mortgage listed the mortgagee/lender as "The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC" and the borrower as "Revital, Inc." [1740-1] at 36. The mortgage was recorded on July 14, 2015. [1740-1] at 36.

On May 12, 2017, UBS AG made a $4,100,000 loan to EquityBuild (via SSPH Portfolio 1, LLC). [1756-1]. The loan was secured by mortgages on seven properties: 2800 E 81st St, 4570 S Indiana Avenue, 5618 S Martin Luther King Drive, 6558 S Vernon Avenue, 2220 E. 75th St (7450 S Luella Avenue), 7840 S Yates Avenue, and 1422 E. 68th Street. [1756-3] at 34. UBS AG's title agent required releases on existing mortgages before issuing title policies, but no releases were ever recorded. [1756] at 4–5; [1740] at 4. After receiving payoff letters purportedly from Individual Investors

---

[2] The mortgage was initially recorded on March 18, 2013, but was missing an additional signature and re-recorded. [1740-1] at 44.

"C/O EquityBuild Finance, LLC," UBS AG issued payments via wire transfer to EquityBuild, Inc. [1740-1] at 55–64. EquityBuild Inc. executed a mortgage in favor of UBS AG on May 12, 2017. [1756-3] at 3–36. The mortgage listed the property as "7 Multi Family Buildings" with UBS AG as the mortgagee/lender and SSPH as the borrower. [1756-3] at 2. The mortgage was recorded on May 23, 2017.[3] [1756-3] at 2.

## B. Midland

Midland[4] claims priority in seven properties: 7760 S Coles Avenue (Property 50), 1401 W 109th Place (Property 51), 6807 S Indiana Avenue (Property 53), 8000 S Justine Street (Property 54), 8107 S Ellis Avenue (Property 55), 8209 S Ellis Avenue (Property 56), 8214 S Ingleside Avenue (Property 57). [1757] at 2. Midland's loans to EquityBuild were separate transactions: the loan to EB South Chicago 3, LLC was secured by the 7760 S Coles property and the loan to EB South Chicago 4, LLC was secured by the other six properties.[5] *See* [1757-1] (EB3) *and* [1757-7] (EB4). EB South Chicago 3, LLC and EB South Chicago 4, LLC are both EquityBuild entities.

EquityBuild, Inc. owned three of the properties (7760 S Coles, 8000 S Justine, 8214 S Ingleside) and borrowed funds from the Individual Investors; the loans were secured by mortgages on the properties. EquityBuild executed mortgages in favor of the Individual Investors on three of those properties between May and June of 2015.

---

[3] UBS AG assigned its interest in the mortgage to Wilmington Trust on June 22, 2017. [1756] at 2 n.3.

[4] Midland acts as a servicer for Wilmington Trust. [1757] at 2 n.2. Wilmington received its interest in the EB3 loan from Colony American Finance Lender, LLC and its interest in the EB4 loan from Corevest American Finance Lender, LLC. [1757] at 6; [1757-13]; [1757-14].

[5] The seventh property securing the loan, 310 E. 50th St (Property 42), was subject to a separate settlement. [1676].

*See* [1740-1] at 65 (mortgage on 7760 S Coles executed on June 30, 2015), 91 (mortgage on 8000 S Justine executed on May 21, 2015), 115 (mortgage on 8214 S Ingleside executed on May 15, 2015). The mortgages listed the mortgagee/lender as "The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC" and were recorded in 2016. *See* [1740-1] at 65 (mortgage on 7760 S Coles recorded on July 23, 2016), 91 (mortgage on 8000 S Justine recorded on January 21, 2016), 115 (mortgage on 8214 S Ingleside recorded on July 23, 2016).

The other four properties were not owned by EquityBuild. Instead, the mortgages were structured with certain investors as the owners/borrowers and with other investors as the lenders. EquityBuild executed mortgages in favor of the Individual Investors on those properties between 2010 and 2014. *See* [1740-1] at 73 (mortgage on 1401 W 109th executed on November 8, 2010), 83 (mortgage on 6807 S Indiana executed on July 24, 2014), 99 (mortgage on 8107 S Ellis executed on June 19, 2015), 107 (mortgage on 8209 S Ellis executed on September 5, 2014). The mortgages on the properties were recorded between 2010 and 2014. *See* [1740-1] at 73 (mortgage on 1401 W 109th recorded on December 3, 2010), 83 (mortgage on 6807 S Indiana recorded on August 20, 2014), 99 (mortgage on 8107 S Ellis recorded on July 1, 2015), 107 (mortgage on 8209 S Ellis recorded on October 21, 2014). The mortgage on the 1401 W 109th property listed the mortgagee/lender as "1401 W 109th Associates c/o Hard Money Company" and the borrower as "Lyanne Naomi Iwamoto Terada." [1740-1] at 73. The mortgage on the 6807 S Indiana property listed the mortgagee/lender as "6807 S Indiana Avenue Associates c/o Hard Money Company"

and the borrower as "CPJ Properties 3, LLC."[6] [1740-1] at 83. The mortgage on the 8107 S Ellis property listed the mortgagee/lender as "The Persons Listed on Exhibit A to the Mortgage c/o EquityBuild Finance, LLC" and the borrower as "Abundance Properties, LLC."[7] [1740-1] at 99. The mortgage on the 8209 S Ellis property listed the mortgagee/lender as "8209 S. Ellis Ave Investors C/O Hard Money Company" and the borrower as "Akshansh Properties, LLC."[8] [1740-1] at 107. The mortgage was recorded on October 21, 2014. [1740-1] at 107.

On May 26, 2017, Colony American Finance Lender, LLC made a loan for $1,491,000 to EB South Chicago 3, LLC. [1757-1]. Colony's title insurer required a release on the existing mortgage on 7760 S Coles before issuing the title policy, but no release was recorded. [1757] at 4. After receiving a payoff letter purportedly from the Individual Investors "C/O EquityBuild Finance, LLC," Colony issued a payment via wire transfer to EquityBuild Finance. [740-1] at 273; [1757-5] at 2. EquityBuild executed mortgages on properties, including 7760 S Coles, in favor of Colony on May 25, 2017. [1757-2] at 2. The mortgage listed the mortgagee/lender as "Colony American Finance Lender LLC" and the borrower as "EB South Chicago 3 LLC." [1757-2] at 2. The mortgage was recorded on June 28, 2017. [1757-2] at 2.

---

[6] Chad Johnstun signed the mortgage agreement as manager of CPJ Properties 3, LLC. [1740-1] at 87.

[7] Steve Chennappan signed the mortgage agreement as a member of Abundance Properties, LLC. [1740-1] at 103.

[8] The Receiver identifies EquityBuild as the owner and borrower for the 8209 S Ellis Property. [1740] at 6 n.7. But the mortgage agreement was signed by Basant Kumar on behalf of Akshansh Properties, LLC as borrower. [1740-1] at 108, 111.

On September 15, 2017, Corevest American Finance Lender, LLC made a loan for $2,426,250 to EB South Chicago 4, LLC. [1757-7]. The loan was secured by seven properties: 310 E. 50th St, 1401 W 109th Place, 6807 S Indiana Avenue, 8000 S Justine Street, 8107 S Ellis Avenue, 8209 S Ellis Avenue, 8214 S Ingleside Avenue. [1757-8]. After receiving payoff letters, Corevest issued payments via wire transfer to EquityBuild Finance. [1757-12].

EquityBuild executed mortgages on these properties in favor of Corevest on September 14, 2017. [1757-8] at 3–34. Those mortgages listed the mortgagee/lender as "Corevest American Finance Lender LLC" and the borrower as "EB South Chicago 4 LLC." [1757-8] at 2. The mortgages were recorded on October 5, 2017. [1757-8] at 2, 32.

## III.    Analysis

### A.    Entitlement to a Valid Release under the Illinois Mortgage Act

Both UBS AG's and Midland's mortgages were recorded after the Individual Investors' mortgages. [1756-3] at 2; [1757-2] at 2; [1757-8] at 2. Neither UBS AG nor Midland dispute that releases of the Individual Investors' mortgages on the properties were never recorded. [1767] at 1; [1768] at 1. The Receiver, Individual Investors, and the SEC say this makes the resolution of priority in this group more straightforward—without any releases in the record, I don't need to reach the issues raised in Groups 1 and 2. [1754] at 2; [1755] at 2; [1769] at 1–2. The properties in those groups involved recorded releases of the Individual Investors' mortgages, so the questions I addressed were whether those releases were facially defective and

whether EquityBuild Finance had the authority to release the Individual Investors' mortgages. *S.E.C. v. Equitybuild, Inc.*, No. 18-cv-5587, 2023 WL 2018906, at **5–12 (N.D. Ill. Feb. 15, 2023) (Group 1); *S.E.C v. Equitybuild, Inc.*, No. 18-cv-5587, 2024 WL 3069682, at **9–12 (N.D. Ill. June 20, 2024) (Group 2). Because there is no factual dispute that no such releases exist for the Group 6 properties and the Illinois Mortgage Act requires a properly executed and delivered release to extinguish a prior lien, I find that the Individual Investors' first-in-time mortgages entitle them to priority.

> The Illinois Mortgage Act provides, 765 ILCS 905/2:
>
> Every mortgagee of real property, his or her assignee of record, or other legal representative, having received full satisfaction and payment of all such sum or sums of money as are really due to him or her from the mortgagor... shall, at the request of the mortgagor,... in case such mortgage or trust deed has been recorded or registered, make, execute and deliver to the mortgagor or grantor in a deed of trust in the nature of a mortgage,... an instrument in writing executed in conformity with the provisions of this Section releasing such mortgage or deed of trust in the nature of a mortgage, which release shall be entitled to be recorded or registered and the recorder or registrar upon receipt of such a release and the payment of the recording fee therefor shall record or register the same.

Under the Act, payment alone does not automatically extinguish a pre-existing security interest. *S.E.C v. EquityBuild, Inc.*, 101 F.4th 526, 532 (7th Cir. 2024). "Without a properly executed and delivered release, the lien persists... [T]here must be payment *and* delivery of the release to extinguish a mortgage lien." *Id.* at 531–32 (emphasis in original) (citing *Fed. Nat'l Mortg. Ass'n v. Kuipers*, 314 Ill.App.3d 631, 637 (2d Dist. 2000) and *N. Shore Cmty. Bank & Tr. Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶¶ 73–76).

The Institutional Lenders argue that the Seventh Circuit's holding does not foreclose their argument. [1781] (joint sur-reply). Instead, they contend that the Illinois Mortgage Act entitles them to valid releases regardless of whether they requested formal releases. [1781] at 2. Section 2 of the Act triggers a mortgagee's obligation to release a mortgage upon payment of the debt underlying a lien, and Section 4 provides an enforcement mechanism if a mortgagee fails to release a mortgage within a month of receiving full payment. *See Equitybuild*, 101 F.4th at 531; *North Shore*, 2014 IL App (1st) 123784, ¶ 73. Section 4 of the Act provides: "Upon a finding for the party aggrieved, the court shall order the mortgagee or trustee… to make, execute and deliver the release as provided in [Section 2]." 765 ILCS 905/4. Because the Act imposes an obligation on the mortgagee to release a mortgage upon payment, the Institutional Lenders say that a release is automatic. [1781] at 1–3. The SEC and Individual Investors respond that this conflates a legal entitlement to releases (which the Receiver points out would depend on a finding of EquityBuild Finance's apparent authority to release the existing liens) with grants of release that never happened. [1765] at 2; [1766] at 2–3; [1769] at 3. But UBS AG and Midland say they were restrained from enforcing their rights outside of this receivership, so they had no available avenue to bring their requests for releases and do so now. *See* [16] at 15 (court order appointing receiver and enjoining certain actions related to receivership assets); [1781] at 4–5.

Whether the Institutional Lenders should or could have sought releases before or outside of the receivership does not change the fact that no releases existed at the

time the scheme collapsed. Neither *Rockford Life Ins. Co.*, 128 Ill.App.2d (3d Dist. 1970) nor *5201 Wash. Investors LLC*, 2024 IL App (1st) 231403-U helps the Institutional Lenders here. *Rockford* demonstrates that a court may order the release of a mortgage after payment of the underlying debt is made to an authorized agent of the mortgagee. *See EquityBuild*, 101 F.4th at 532. A court's authority to order a release does not mean releases were in fact ordered for these properties. And the analysis in *5201 Wash. Investors* depended on a different set of facts—it involved a release in the public record.[9] 2024 IL App (1st) 231403-U, ¶ 32.

The Institutional Lenders say that the Illinois Fiduciary Obligations Act protects payors like them from misapplication of payments by a fiduciary. [1757] at 12. The Fiduciary Obligations Act provides, 760 ILCS 65/2:

> A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary.

Beyond the question of whether the Act applies to the relationship between EquityBuild Finance and the Individual Investors, the Act doesn't change the fact

---

[9] In resolving the Group 2 claims, I addressed the Cook County Circuit Court's opinion in *5201 Washington Invs., LLC & Arthur Bertrand v. Equitybuild, Inc.*, No. 22-CH-1268, 2023 Ill. Cir. LEXIS 79 (Cir. Ct. of Cook Cnty. May 18, 2023). *See Equitybuild*, 2024 WL 3069682, at *10. Since then, the appellate court affirmed the trial court's decision in an unpublished order. *See 5201 Wash. Investors LLC & Arthur Bertrand v. Equitybuild, Inc.*, 2024 IL App (1st) 231403-U. The appellate court considered newly raised arguments on appeal about whether Equitybuild Finance qualified as a legal representative under Section 2 of the Act. 2024 IL App (1st) 231403-U, ¶¶ 36–38. Because there were no releases for properties in Group 6, I don't reach the issue of whether the appellate court's analysis is applicable to other properties in the receivership or whether I find its non-precedential order to be persuasive.

the no release happened. At most, the language of the provision suggests that any right or title acquired should not be invalidated because of a fiduciary's actions.

The Institutional Lenders' requests for releases now are in essence requests that I manufacture facts that did not exist in the record. The determination of which claimants have priority depends on facts present at the time the scheme collapsed—what order mortgages were recorded in, whether releases were issued by EquityBuild Finance before a second mortgage was recorded, etc. A court's authority to rewrite the record is limited, for example, in nunc pro tunc orders to correct clerical or typographical errors. *See Monroe v. Bowman*, --- F.4th ----, 2024 WL 4984106, at *1 (7th Cir. Dec. 5, 2024) ("Federal courts may issue nunc pro tunc orders to 'reflect the reality' of what has already occurred, but the court 'cannot make the record what it is not.'") (citing *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990)); *see also Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (rejecting a party's request to retroactively bestow jurisdiction on the district court because "[t]he power to correct erroneous records does not imply ability to revise the substance of what transpired or to backdate events"). A court order that effects a retroactive change can upset reliance interests and impair a party's substantive rights. *Monroe*, 2024 WL 4984106, at **1, 6. Those concerns are applicable here where an order issuing mortgage releases in favor of the Institutional Lenders would impair the Individual Investors' security interests. I decline to take that course of action.

Without any valid releases of the Individual Investors' mortgages, the Individual Investors have a first-position lien on the properties and priority over UBS

AG and Midland. *See EquityBuild*, 101 F.4th at 532. This excludes 4750 S Indiana Avenue (Property 109), where no mortgage to Individual Investors exists and UBS AG's first-in-time mortgage entitles it to priority.

### B.    Illinois Uniform Fraudulent Transfer Act

In resolving the priority disputes, I do not reach the issue of whether the Institutional Lenders' second-position liens should be voided as fraudulent conveyances under the Illinois Uniform Fraudulent Transfer Act. Under the Fraudulent Transfer Act, a transfer may be voided when a debtor made a transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor." *See* 740 ILCS 160/5(a)(1). A transfer is not voided "against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.* at 160/9(a). If the Institutional Lenders took the mortgages in good faith, then they maintain secured interests, albeit second in position, in the properties. If the Institutional Lenders were aware of facts that "would lead a reasonable, law-abiding person to inquire further," then the defense is inapplicable, and the lenders are appropriately reclassified as unsecured creditors. *See In re Sentinel Mgmt. Grp., Inc.*, 809 F.3d 958, 962–64 (7th Cir. 2016) (articulating the good-faith standard under 11 U.S.C. § 548(c)).

The Receiver filed avoidance disclosures against UBS AG and Midland identifying facts that he says the lenders were aware of and would have led a reasonable person to inquire further into the validity of the transfer of first-position security interests from the Individual Investors. [1740] at 7–20. I deferred briefing

14

on the Receiver's avoidance claims until after the priority disputes for the Group 6 properties were resolved. [1750] (status hearing on September 11, 2024). UBS AG's and Midland's motions for leave to conduct further discovery related to the avoidance claims remain pending. [1746]; [1748]. Now that priority has been resolved, the status of Group 6 claims and the motions to conduct discovery will be addressed with the parties at the next hearing.

### C. Miscellaneous Issues

#### 1. *Distribution of Proceeds*

Consistent with the Receiver's previous positions, *see* [1201] at 4–8 *and* [1571] at 11–16, the Receiver proposes that Group 6 secured claimants be limited to recovery of principal (offset by any pre-receivership distributions) and that any claims for interest, penalties, attorneys' fees, or other costs should be denied. [1740] at 22–28. The Institutional Lenders do not challenge the Receiver's net-loss distribution plan, but they assert entitlement to post-receivership interests and other costs. *See* [1756] at 6, 13–14 (UBS AG); [1757] at 8, 13–14 (Midland). I previously found it within my discretion to disallow secured claimants from recovering any interest, fees, or penalties from the estate so that the vindication of the rights of secured creditors did not come at the expense of unsecured creditors because of insufficient funds. *Equitybuild*, 2024 WL 40696892, at *6. The same equitable considerations apply here, and the Institutional Lenders do not raise any facts specific to this group or new arguments that I have not already addressed. I accept the Receiver's recommendation to limit the recovery of secured claimants to principal.

### 2. Rollover Claimants

The Receiver recommends that any claimants who rolled over their secured interest in specific properties into an equity position or an unsecured promissory note should be treated as unsecured creditors. [1740] at 28–30. UBS AG identified additional claimants who rolled over their interests in 7450 S Luella Avenue/2220 E 75th (Property 112) to other properties, [1756] at 7 n.7, and the Receiver amended his recommendation to reflect UBS AG's correction. [1769] at 4.

UBS also identified claimant Kevin Lyons as rolling over his interest in 6558 S Vernon Avenue (Property 111) to an unsecured note. [1756] at 7. The Receiver disagrees with this correction because Lyons agreed only to a partial rollover of his interest to an unsecured note. [1769] at 4. The Receiver's distribution worksheet reflects that Lyons agreed to rollover only $9,345.78 of his $25,000 loan to an unsecured promissory note in July 2017. [1740-1] at 3. I accept the Receiver's recommendation to treat Lyons's claim as a partial rollover and his calculation of distribution proceeds. Without any other objections to the classification of rollover claimants, I accept the Receiver's recommendations.

### 3. Equity Holders

The Institutional Lenders agree with the Receiver that equity holders in properties are unsecured claimants. [1756] at 6; [1757] at 8. Midland asserts that claimants who invested in properties through partnerships should be treated as equity holders with unsecured claims. [1757] at 8. These claimants include Michael and Lyanne Terada and Hui Tung Carol Lam who were partners of "1401 W 109th

Associates" that was listed as the lender on the mortgage for 1401 W 109th Place (Property 51) as well as Leroy Johnson and Edge Investments, LLC who were partners of "6807 S. Indiana Avenue Associates" that was listed as the lender on the mortgage for 6807 S Indiana Avenue (Property 52). [1740-1] at 5. A partnership's business structure doesn't necessarily bear on the question of whether a property interest held by the partnership should be classified as an equity interest. Here, the partnership agreements clearly stated that the partners agreed to form partnerships for the purpose of purchasing "a real property secured note and mortgage loan." [1769] at 20–31. I accept the Receiver's recommendation to classify these claimants as holding secured claims.

### 4.    *Michael Terada and 1401 W 109th Place*

Claimant Michael Terada was a partner of 1401 W 109th Associates (Property 51) and is married to co-claimant Lyanne Terada. [1768] at 5. Lyanne Terada sold the property to EquityBuild (via EB South Chicago 4, LLC) with Midland as the lender. [1757-15]. Midland asserts that the Teradas should have been aware of the refinancing transaction because they signed a closing statement showing the funds were being sent to EquityBuild Finance. As the Receiver points out, the acknowledgement and receipt of settlement statement was signed only by Lyanne Terada on September 14, 2017. *See* [1757-15] at 4. The Receiver recommends approval of Michael Terada's claim because Illinois does not impose liability on a person for a loan signed solely by their spouse. [1769] at 5–6 (citing *N. Shore Cmty. Bank & Tr. Co. v. Kollar*, 304 Ill.App.3d 838, 842 (1st Dist. 1999)). Midland doesn't

identify any law to the contrary or suggest other facts that would make imputing knowledge of Lyanne Terada's settlement to Michael Terrada appropriate. I accept the Receiver's recommendation.

### 5. *City of Chicago's Claims*

The City of Chicago submitted claims in three properties for water debt: 7760 Coles Avenue (Property 50), 8000 S Justine Street (Property 54), and 6558 S Vernon Avenue (Property 111). [1740] at 30. UBS AG identified an additional claim filed by the City on 5618 S Martin Luther King Drive (Property 110). [1756] at 6 n.6. The Receiver agrees with UBS AG's addition and recommends that the City's claims on all four properties be disallowed because all debts were paid at the closing of the sale on these properties. [1769] at 4. I accept the Receiver's recommendation to deny the City's claims.

### 6. *Participation in Fraudulent Scheme*

Participants in the fraudulent scheme should not receive any money from the receivership. *See S.E.C. v. Enterprise Trust Co.*, No. 08-cv-1260, 2008 WL 4534154, at *6 (N.D. Ill. Oct. 7, 2008), *aff'd*, 559 F.3d 649 (7th Cir. 2009). I have previously denied John Allred's claim because of his participation in the fraud. *See Equitybuild*, 2024 WL 3069683, at *17. Allred has not disputed the Receiver's recommendation. I accept the Receiver's recommendation and disqualify Allred's claim.

## IV.     Conclusion

The Individual Investors' mortgages have priority. This applies to all the properties in Group 6 with one exception. UBS AG has a first-position lien on the proceeds of 4750 S Indiana Avenue (Property 109).


ENTER:

Manish S. Shah
United States District Judge

Date:  December 23, 2024