**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>　　　　　Defendants. | Case No. 1:18-cv-5587<br><br>Hon. Manish S. Shah<br><br>Magistrate Judge Young B. Kim |

**MOTION TO APPROVE DISTRIBUTION OF PROCEEDS
FROM THE SALE OF PROPERTY 70 (638-40 N AVERS AVENUE)**

　　Kevin B. Duff, as receiver ("Receiver") for the Estate of Defendants EquityBuild, Inc. ("EquityBuild"), EquityBuild Finance, LLC ("EquityBuild Finance"), their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen (collectively, the "Receivership Defendants"), hereby moves for approval of a plan for the distribution of proceeds from the sale of 638-40 N Avers Avenue (the "Subject Property" or "638 Avers" or "Property 70"). In support of his motion, the Receiver states as follows:

　　**A. Procedural Background**

　　1.　In 2019, the Receiver initiated a claims process whereby, *inter alia*, he: (a) researched mortgagees of record and EquityBuild records to identify potential claimants; (b) served all known potential claimants by email and/or regular mail with notice of the bar date, procedures for submitting proofs of claim, and a link to a third-party portal to submit claims; (c) sent multiple follow-up emails reminding potential claimants of the bar date (and the extended bar date); and (d) established a webpage (http://rdaplaw.net/receivership-for-equitybuild) for

1

claimants and other interested parties which prominently displayed the claims bar date and provided copies of the claims notice, instructions, proof of claim forms, a link to the claims portal, and copies of certain court filings related to the claims process. All claimants were notified that the failure to submit a claim verification form by the bar date would be a basis for denial of that claim. (*See, e.g.,* Dkt. 241, 302, 349, 468, 548, 638, 693, 720) The Court's orders with respect to the claims process were also served upon claimants and potential claimants and posted on the Receiver's website. (*See, e.g.,* Dkt. 349, 574, 940, 941)

2. In February 2021, following briefing and hearings, the Court entered two orders establishing a process for the resolution of disputed claims. (Dkt. 940, 941)

3. With the Court's approval and over the objection of claimant Sabal TL1, LLC.[1] on October 15, 2021, the Receiver sold the property located at 638-40 N Avers Avenue (Dkt. 1008, 1015). Prior to the sale, the Court found that the Receiver gave fair, adequate, and sufficient notice to all interested parties, including all mortgagees affected by the Receiver's Twelfth Motion to Confirm the Sale of this property. (Dkt. 1015 at 2) The sale was free and clear of all mortgages and encumbrances, and the net proceeds of sale for the Subject Property were deposited into separate interest-bearing accounts held by the Receiver pursuant to court order. (Dkt. 1015 at 3) Consistent with the Court's prior rulings in this case, all mortgages, liens, claims, and encumbrances attached to the sale proceeds with the same force, validity, status, and effect, if any, as they had against the property being sold. Additional deposits and withdrawals have been made

---

[1] Claim 70-2084 was originally submitted by Federal Home Loan Mortgage Corporation. Subsequently, the Receiver was notified that Sabal TL1, LLC was the current holder of record of claim 70-2084, which objected to the Receiver's motion to confirm the sale of 638 Avers. (Dkt. 974) On December 17, 2024, Sabal filed a notice that claim 70-2084 had been assigned to Sabal Capital Operations, LLC. (Dkt. 1814) The current holder of the claim is referred to herein as "Sabal."

to and from this property account, as reported in the Receiver's quarterly status reports. (Dkt. 1164, 1243, 1280, 1328, 1379, 1448, 1516, 1535, 1589, 1652, 1722, 1771, 1837, 1876)

4. Beginning in February 2021, the Receiver filed a series of motions to approve the payment of certain previously approved fees and costs pursuant to the Receiver's lien on the properties of the Receivership Estate that had been granted by the Court. (Dkt. 947, 981, 1107, 1321) Following proceedings on the Receiver's specific fee allocations before Magistrate Judge Kim, the Court granted the Receiver's fee allocation motions over the objections of Sabal, except that the Court ordered a 20% holdback in the payment of allocated fees. (Dkt. 1469, 1511)

5. Subsequent orders approving the Receiver's quarterly fee applications also approved payment pursuant to the Receiver's lien of fees (subject to a 20% holdback) and costs over the objections Sabal and other Institutional Lenders. (Dkt. 1372, 1452, 1510, 1539, 1573, 1618, 1675, 1758, 1831, 1856) Claimants and potential claimants have received notice of these motions relating to the Receiver's lien and the Receiver's fee applications, and the foregoing motions, fee applications, and the Court's orders have been posted to the Receiver's website.

6. As of May 9, 2025, the property account established for 638 Avers held $522,657.25. Additionally, $4,145.52 in fees were allocated to Property 70 in the Receiver's pending 27th Fee Application for the First Quarter of 2025 (Dkt. 1878), and a total of $22,983.45 fees allocated to Property 70 were held back pursuant to orders granting the Receiver's Fee Applications 1-26, leaving a net balance available for distribution of $495,528.28.

**B. The Receiver Has Recommended that the Investor Lender Claimants Asserting an Interest in the Subject Property Be Found to Hold First Position Lien on the Subject Property.**

7. On October 28, 2024, the Receiver filed his Submission on Group 7 Claims, which included recommendations as to the claims asserting an interest in the Subject Property. (Dkt. 1772) As explained in that submission, with regard to the priority disputes with respect to the

3

Subject Property, the Receiver recommended, *inter alia*, that the Court find that the investor lenders be found to have priority over Sabal. (*Id.* at 8-9 and Exs. 5, 11)

8. On November 25 and December 16, 2024, Sabal filed position statements asserting that it holds first position security interests in the Subject Property, that it is entitled to priority over other claimants, that no payments received should be "netted" against Sabal's claims, and that it should be paid both contract and default interest. (Dkt. 1798 and 1808)

9. Also on November 25 and December 16, 2024, the SEC and certain of the investor lenders filed position statements requesting that the Court find that the investor lenders' liens have priority and are entitled to a distribution of the proceeds of the sale of the Subject Property. (Dkt. 1795, 1796, 1806, 1810) None of the investor lenders who asserted an interest in the Subject Property asserted an objection to the Receiver's recommendations as to the proposed distribution methodology or the amount of the recommended distributions.

10. The Court has not yet ruled on the Group 7 priority dispute.

### C. The Receiver and Sabal Have Reached an Agreement as to Distributions from the Property Account, Subject to Court Approval.

11. Settlement discussions between the Receiver and Sabal have taken place, and these parties participated in settlement conferences with Magistrate Judge Kim on May 20, 2025. Pursuant to these discussions, and with the guidance of the Magistrate Judge, they reached a negotiated agreement as to the amount of the distribution to be made to Sabal from the funds held in the property account for the Subject Property to recommend to this Court. This agreement is contingent on the Court (i) granting the instant motion, and (ii) approving the proposed distribution plan attached as Exhibit A.

12. The proposed distribution plan provides for:

(a) payment of $335,528.28 of the sale proceeds on a pro-rata basis to the Individual Investor Lenders asserting an interest in 638 Avers for the settlement of their claims, as set forth in Exhibit B. This represents a recovery of approximately 34.5% of the Receiver's maximum recommended distributions to these claimants if sufficient funds were available to pay all claims in full, which is about a 32% reduction of the 50.9% recovery that the investors would receive if 100% of the available proceeds were distributed to the investor lenders[2];

(b) payment of $160,000.00 of the sale proceeds to Sabal for the settlement of its claim with respect to 638 Avers. The distribution from the sale proceeds to Sabal is approximately 16% of the Receiver's maximum recommended distribution if sufficient funds were available to pay Sabal's claim in full;

(c) payment to the Receiver's law firm of $4,145.52 in fees allocated to Property 70 in the Receiver's pending 27th Fee Application for the First Quarter of 2025 (Dkt. 1878);

(d) payment to the Receiver's law firm of $22,983.45 for contested and uncontested fees allocated to Property 70 in Fee Applications 1-26 but heretofore held back from payment pursuant to the Court's orders; and

---

[2] Because the investor lender claimants will not receive the full amount of their maximum distribution recommended for their claims under the proposed plan for the distribution of the 638 Avers sales proceeds, these claimants may be eligible for an additional distribution from unencumbered funds of the Estate. The amount of such additional distributions, if any, will be recommended as part of the final distribution plan submitted by the Receiver in Group 10 proceedings, and subject to Court approval.

(e) transfer of the balance of any and all residual interest earned to the Receiver's account for use in the administration of the Receivership Estate and/or as otherwise ordered by the Court.

13. Contingent on the Court granting this Motion, Sabal and the Receiver (each a "Party" and collectively the "Parties") further agree as follows:

(a) this agreement resolves all disputes of any kind or nature between them with respect to the Subject Property only;

(b) no Party will appeal from or collaterally attack any rulings associated with the Subject Property; and

(c) any and all other claims, objections, or rights that might exist between the Parties regarding the Subject Property are hereby compromised and waived, provided however that Sabal will retain an unsecured claim for amounts it claims are due but not paid as part of the distributions contemplated by this Motion.

14. The foregoing agreement is a compromise of disputes and disagreements among or between the Parties. The agreement does not constitute an admission of the validity of any claim, defense, argument, or position made or taken by any Party. The Parties' agreement with respect to the Subject Property does not establish a precedent as to any other property. Upon entry of an order granting this Motion and distributions consistent with such an order, all objections as to the Receiver's lien on or fees allocated to the Subject Property will be compromised and waived. The Parties' agreement to not seek appeal from any rulings associated with the Subject Property will be a further saving of time and resources for many involved in the Receivership. Effectively, as a result of the agreement and distribution, the claims and issues between Sabal and the Receivership with respect to the Subject Property have concluded, provided however that Sabal will retain an

6

unsecured claim for amounts it claims are due but not paid as part of the distributions approved by this Court in granting this Motion. In that regard, it is further understood that nothing herein shall be construed to be a recommendation or concession from the Receiver with respect to whether or not Sabal will receive any amount, or how much, in any subsequently proposed distribution plan for unsecured funds.

### D. The Court Has the Authority to Make the Distributions Recommended by this Motion.

15. It is well-settled that the district courts have broad equitable powers and are afforded wide discretion in approving a distribution plan of receivership funds. *See, e.g., SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001); *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 652 (7th Cir. 2009) ("District judges possess discretion to classify claims sensibly in receivership proceedings."); *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992).

16. Because the Receiver is a fiduciary and officer of this Court, the Court may give some weight to the "… Receiver's judgment of the most fair and equitable method of distribution." *CFTC v. Eustace*, No. 05-2973, 2008 WL 471574, at *5 (E.D. Pa. Feb. 19, 2008) (approving receiver's pro-rata distribution plan and recognizing that the receiver does not represent a particular group of investors or claimants but rather proposes a plan that is fair to all investors).

17. Based on the facts and circumstances presented with respect to the Subject Property and the agreements described herein, the Receiver believes that the distribution plan with respect to the Subject Property as described in this motion is fair and equitable. The recommended distribution amounts represent a substantial payment of the principal amount of the loans to the investor lender claimants for the Subject Property. The Receiver has further determined that there are no other issues that he is aware of that would necessitate any further holdback from the amounts set forth above.

18. There are also additional savings of time and resources achieved based on the agreements reached between and among the Receiver and Sabal. As a result of the agreements set forth in this motion, there will be no objections that remain associated with the sale of the Subject Property or the Receiver's lien or fees allocated to the Subject Property, and Sabal's agreement to not seek appeal from any rulings associated with the Subject Property will further save time and resources for many involved in the Receivership.

### E. The Receiver Requests Authorization to Pay Fees Incurred in and after the First Quarter of 2025 from the Receiver's Account.

19. The Receiver requests that the Court authorize the payment of fees allocated to the Subject Property during and after the current quarter from the Receiver's account. Throughout the negotiations with Sabal, the Receiver endeavored to bring finality to the priority dispute in order to avoid the delay and expense of continued litigation and likely appeals (which could easily delay any distributions for eighteen months or longer) and allow a final distribution of the unencumbered assets of the Receivership Estate to proceed as expeditiously as possible.

### F. The Receiver Has Provided Reasonable and Fair Notice of this Motion.

20. Notice of this motion is being given to each of the claimants asserting a claim against the Subject Property, as well as to each of the other claimants who have submitted claims in this matter. In addition, this motion will be made publicly available to all interested and potentially interested parties by posting a copy of it to the Receivership web site.

### **Prayer for Relief**

WHEREFORE, the Receiver seeks the following relief:

a) a finding that adequate and fair notice has been provided to all interested and potentially interested parties of the claims process, the Receiver's

8

recommendations with respect to the Subject Property, the Receiver's attorneys' fees and proposed fee allocations, and the current Motion;

b) an order finding that the agreement between the Parties is fair, reasonable, and in the best interests of the Receivership Estate;

c) an order providing a full and fair opportunity for each interested party to assert its interests and any objections to the relief requested or the distribution plans attached as Exhibits A and B to this motion;

d) an order finding either that no objections were filed or a finding that the foregoing agreement is approved over any such objections;

e) a finding that the distribution schedules described herein and submitted herewith are fair and reasonable;

f) approval of the payment from the account held for the Subject Property of the Receiver's and attorneys' fees the Receiver has allocated to the Subject Property in the First Quarter of 2025 (Dkt. 1878), without holdback;

g) approval of payment from the account held for the Subject Property of the Receiver's and attorneys' fees the Receiver allocated to the Subject Property that have been heretofore held back from payment pursuant to the Court's Orders;

h) approval of payment from the Receiver's account of the Receiver's and attorneys' fees allocated to the Subject Property in the current quarter and any subsequent quarters;

i) approval of the distribution of funds as set forth in Exhibits A and B to this motion, with distributions to be made as soon as such distributions can be reasonably achieved;

j) approval to transfer to the Receiver's account the net of the remaining balances in the account held for the Subject Property after the distributions that the Court orders pursuant to this motion have been made, including any interest hereafter accruing, for use in the administration of the Receivership Estate and/or as otherwise ordered by the Court; and

k) such other relief as the Court deems fair and equitable.

Dated: June 4, 2025

Respectfully submitted,

/s/ Michael Rachlis

Michael Rachlis
Jodi Rosen Wine
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Phone (312) 733-3950
mrachlis@rdaplaw.net
jwine@rdaplaw.net

| | |
|---|---|
| **Property #** | **70** |
| Account # | 0363 |
| **PROPERTY ADDRESS** | **638-40 N Avers Avenue** |
| Balance of Receivership Account for Property 70 (as of 5/9/2025) | $ 522,657.25 |
| Distribution to Sabal Capital Operations, LLC | $ (160,000.00) |
| Distribution to Investor Lenders | $ (335,528.28) |
| Fees Allocated to Property in 27th Fee Application for First Quarter 2025 (Dkt. 1878) | $ (4,145.52) |
| Payment of Fees Held Back pursuant to Court Orders Fee applications 1-26 (Dkt. 1372, 1452, 1469, 1510, 1511, 1539, 1573, 1675, 1758, 1831, 1856) | $ (22,983.45) |
| **Total remaining in account** | **$ (0.00)** |

Exhibit A

Ex. B - Proposed Investor Lender Distributions
638-40 N Avers Avenue (Property 70)

| Claimant Name | Lender Name | Claim Number | Claimant Submissions | Amount Claimed (Invested in Property) | Secured Claim Remaining | Unsecured Claim (This Investment) | Pre-Rollover or UPN Distributions | Distributions Received on Property | Source of Distribution | Distributions Received on Property | Max Potential Dist (Proceeds of Sales) | Distributions Received on Unsecured Claim | Max Potential Dist. (Unencumbered) | Receiver's Recommendation Notes | Percentage of Total Investor-Lender Max Distributions | Proposed Distribution from Sales Proceeds (Share of $335,528.28) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernadette Chen Eleven St. Felix Street Realty | Eleven St. Felix Street Realty Corp | 70-2012 | POC | $ 100,000.00 | $ 100,000.00 | | | $ 24,055.62 | LSA | $ 24,055.62 | $ 75,944.38 | | $ - | | 7.80% | $ 26,167.39 |
| CAMA SDIRA LLC FBO Robert Guiney IRA | CAMA SDIRA LLC FBO Robert Guiney IRA | 70-1116 | POC | $ 40,579.00 | $ 40,000.00 | | $ 4,833.00 | $ 10,886.00 | POC | $ 15,719.00 | $ 24,281.00 | | $ - | The Receiver recommends disallowing $579 accrued interest added to principal amount of loan. Pre-rollover distributions is return on unsecured promissory note. | 2.49% | $ 8,366.26 |
| David R Trengove | iPlanGroup Agent for Custodian FBO David Trengove | 70-481 | POC; DIS | $ 103,098.00 | $ 102,315.00 | | $ 12,215.54 | $ 11,211.93 | POC; DIS | $ 23,427.47 | $ 78,887.53 | | $ - | The Receiver recommends disallowing $783 pro-rata share of accrued interest added to principal amount of loan. Pro-rata share of pre-rollover distributions on loan secured by 4611 Drexel. | 8.10% | $ 27,181.49 |
| Dean & Mare Atanasoski | Dean & Mare Atanasoski | 70-394 | POC; DIS | $ 100,000.00 | $ 100,000.00 | | | $ 26,888.95 | LSA | $ 26,888.95 | $ 73,111.05 | | $ - | | 7.51% | $ 25,191.14 |
| John Bloxham | John Bloxham | 70-1017 | POC | $ 50,000.00 | $ 50,000.00 | | | $ - | POC; LSA | $ - | $ 50,000.00 | | $ - | | 5.13% | $ 17,228.00 |
| Kenneth (Ken) and Maria (Tina) Jorgensen | iPlanGroup Agent for Custodian FBO Ken | 70-194 | POC; DIS | $ 146,902.00 | $ 145,786.25 | | $ 17,634.13 | $ 17,228.53 | LSA; DIS | $ 34,862.66 | $ 110,923.59 | | $ - | Pro-rata share of pre-rollover distributions on loan secured by 4611 S Drexel | 11.39% | $ 38,219.83 |
| Madison Trust Company Custodian FBO Janet Eileen Taylor | Madison Trust Company Custodian FBO Janet Eileen Taylor M1608009 | 70-2056 | POC | $ 30,775.00 | $ - | $ 30,775.00 | | $ 5,248.83 | POC | $ 5,248.83 | $ - | | $ 25,526.17 | Claimant agreed to rollover this loan to SSDF1 in June 2017 (no separate claim against SSDF1) | 0.00% | $ - |
| Mark P. Mouty | Mark P. Mouty | 70-165 | POC | $ 25,000.00 | $ 25,000.00 | | | $ 6,222.00 | POC | $ 6,222.00 | $ 18,778.00 | | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 1.93% | $ 6,470.15 |
| New Direction IRA, Inc. FBO Joel Beyer, Roth IRA | New Direction IRA, Inc. FBO Joel Beyer, IRA | 70-969 | POC | $ 85,000.00 | $ 85,000.00 | | | $ 18,180.61 | POC; LSA | $ 18,180.61 | $ 66,819.39 | | $ - | | 6.86% | $ 23,023.29 |
| Nicholas C Jenks and Joyce R Jenks JTWROS | Nicholas C Jenks and Joyce R Jenks JTWROS | 70-2032 | POC | $ 50,000.00 | $ 50,000.00 | | | $ 13,486.05 | LSA | $ 13,486.05 | $ 36,513.95 | | $ - | | 3.75% | $ 12,581.25 |
| Optima Property Solutions, LLC | Optima Property Solutions, LLC | 70-1023 | POC | $ 250,000.00 | $ - | $ 250,000.00 | | $ 39,166.67 | POC | $ 39,166.67 | $ - | | $ 210,833.33 | Claimant agreed to rollover this loan to SSDF1 in June 2017 (Claim 901-1023) | 0.00% | $ - |
| Pat DeSantis | Pat Desantis | 70-397 | POC | $ 250,000.00 | $ 250,000.00 | | | $ 71,388.89 | POC | $ 71,388.89 | $ 178,611.11 | | $ - | | 18.34% | $ 61,542.24 |
| Paul N. Wilmesmeier | Paul N. Wilmesmeier | 70-300 | POC; DIS | $ 50,000.00 | $ 50,000.00 | | | $ 13,486.05 | POC; LSA | $ 13,486.05 | $ 36,513.95 | | $ - | | 3.75% | $ 12,581.25 |
| Paul Scribner | Paul S. Scribner Revocable Trust dated, May 15, 2003 | 70-1135 | POC | $ 16,826.00 | $ 16,826.00 | | | $ 2,198.63 | LSA | $ 2,198.63 | $ 14,627.37 | | $ - | | 1.50% | $ 5,040.01 |
| Phillip G. Vander Kraats | Madison Trust Company Custodian FBO Phillip Vander Kraats M1611034 | 70-628 | POC | $ 2,000.00 | $ 2,000.00 | | | $ 211.64 | LSA | $ 211.64 | $ 1,788.36 | | $ - | | 0.18% | $ 616.20 |
| Randall Sotka | Big Bean LLC c/o Randall Sotka | 70-1207 | POC | $ 11,949.00 | $ 11,949.00 | | $ 1,086.69 | $ 1,752.52 | LSA | $ 2,839.21 | $ 9,109.79 | | $ - | Pro-rata share of pre-rollover distributions on loan secured by 7024 S Paxton | 0.94% | $ 3,138.87 |
| Richard L. Braddock | iPlanGroup Agent for Custodian FBO Richard L. Braddock IRA acct no 3301005 | 70-509 | POC; DIS | $ 50,000.00 | $ 50,000.00 | | | $ 10,999.95 | POC; LSA; DIS | $ 10,999.95 | $ 39,000.05 | | $ - | | 4.00% | $ 13,437.86 |
| Rochelle L Minchow | Madison Trust Company Custodian FBO Rochelle Minchow M1511505 | 70-2061 | POC | $ 30,000.00 | $ 30,000.00 | | | $ 8,016.67 | | $ 8,016.67 | $ 21,983.33 | | $ - | | 2.26% | $ 7,574.58 |
| Teresita M. Shelton | iPlanGroup Agent for Custodian FBO Terri Shelton IRA #3301003 | 70-330 | POC | $ 2,000.00 | $ 2,000.00 | | | $ 493.28 | LSA | $ 493.28 | $ 1,506.72 | | $ - | Transaction to roll loan to SSDF6 equity fund was subsequently voided | 0.15% | $ 519.16 |
| Thomas Walsh | iPlanGroup Agent for Custodian FBO Thomas M. Walsh IRA 3300447 | 70-738 | POC; DIS | $ 50,000.00 | $ 50,000.00 | | | $ 12,763.83 | POC; LSA | $ 12,763.83 | $ 37,236.17 | | $ - | | 3.82% | $ 12,830.09 |
| TMAKINDE, LLC | TMAKINDE, LLC | 70-372 | POC | $ 114,000.00 | $ 114,000.00 | | | $ 27,265.00 | POC; LSA | $ 27,265.00 | $ 86,735.00 | | $ - | | 8.91% | $ 29,885.41 |
| Tolu Makinde | Tolu Makinde | 70-370 | POC | $ 15,000.00 | $ 15,000.00 | | | $ 3,583.00 | POC; LSA | $ 3,583.00 | $ 11,417.00 | | $ - | | 1.17% | $ 3,933.84 |
| | | | | $ 1,573,129.00 | $ 1,289,876.25 | $ 280,775.00 | | | | $ 973,787.74 | | | $ 236,359.50 | | 100% | $ 335,528.28 |

Exhibit B