**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>EQUITYBUILD, INC., EQUITYBUILD FINANCE, LLC, JEROME H. COHEN, and SHAUN D. COHEN,<br><br>　　　　Defendants. | Case No. 1:18-cv-5587<br><br>Hon. Manish S. Shah |

**ORDER APPROVING DISTRIBUTION OF PROCEEDS FROM
THE SALE OF PROPERTY 70 (638-40 N AVERS AVENUE)**

WHEREAS, this matter came before the Court in the Group 7 Claims Resolution Process (Dkt. 941, 1638) and on the Motion filed by Kevin B. Duff, as receiver for the Estate of Defendants EquityBuild, Inc., EquityBuild Finance, LLC, their affiliates, and the affiliate entities of Defendants Jerome Cohen and Shaun Cohen ("Receiver"), for approval of an agreed plan and order for the distribution of the proceeds from the sale of 638-40 N Avers Avenue ("638 Avers," "Property 70," or the "Subject Property") (Dkt. 1888, the "Motion");

WHEREAS, in November 2019, a fire occurred at the Subject Property, which led to insurance payouts in excess of $300,000, which were deposited into a segregated, interest-bearing account held by the Receiver for the Subject Property. Subsequently, with the Court's approval and over the objection of claimant Sabal TL1, LLC. ("Sabal")[1], on October 15, 2021, the Receiver

---

[1] Claim 70-2084 was originally submitted by Federal Home Loan Mortgage Corporation. Subsequently, the Receiver was notified that Sabal TL1, LLC was the current holder of record of claim 70-2084, which objected to the Receiver's motion to confirm the sale of 638 Avers. (Dkt. 974) On December 17, 2024, Sabal filed a notice that claim 70-2084 had been assigned to Sabal

sold the Subject Property (Dkt. 1008, 1015). The net proceeds of sale in the amount of $325,151.47 were deposited into the interest-bearing account held by the Receiver. Additional deposits and withdrawals have been made to and from this property account pursuant to court orders, as reported in the Receiver's quarterly status reports, with the most recent balance of the account being $524,582.70. (Dkt. 839, 930, 985, 1017, 1077, 1164, 1243, 1280, 1328, 1379, 1448, 1516, 1535, 1589, 1652, 1722, 1771, 1837, 1876);

WHEREAS, the Court approved a claims process as to which fair and adequate notice was provided to all potentially interested persons and all were provided a full and fair opportunity to submit claims and supporting information. (*E.g.,* Dkt. 941) The Court also determined that a summary process for adjudication of allegedly competing secured claims as to those properties, addressing claims against groups of properties on a seriatim basis, was necessary, appropriate, and afforded due process to all claimants and interested persons. (*Id.*);

WHEREAS, the Court initiated the summary process for the resolution of Group 7 claims in April 2024. (Dkt. 1638, 1707) Pursuant to that process, on October 28, 2024, the Receiver filed his Submission on Group 7 Claims, which included recommendations as to the claims asserting an interest in the Subject Property. (Dkt. 1772) As further explained in that submission, the Receiver recommended that with respect to the Subject Property, the Court find that the investor lenders be found to have priority over Sabal. (*Id.* at 8-9 and Exs. 5, 11);

WHEREAS, on November 25 and December 16, 2024, Sabal filed position statements asserting that it holds first position security interests in the Subject Property, that it is entitled to

---

Capital Operations, LLC. (Dkt. 1814) The current holder of the claim is referred to herein as "Sabal."

2

priority over other claimants, that no payments received should be "netted" against Sabal's claims, and that it should be paid both contract and default interest. (Dkt. 1798 and 1808);

WHEREAS, also on November 25 and December 16, 2024, the SEC and certain of the investor lenders filed position statements requesting that the Court find that the investor lenders' liens have priority and are entitled to a distribution of the proceeds of the sale of the Subject Property. (Dkt. 1795, 1796, 1806, 1810) None of the investor lenders who asserted an interest in the Subject Property asserted an objection to the Receiver's recommendations as to the proposed distribution methodology or the amount of the recommended distributions.

WHEREAS, settlement discussions occurred between the Receiver and Sabal, which resulted in a negotiated agreement as to the amount of the distribution to be made to Sabal from the funds held in the property account for 638 Avers, in the event a motion to approve the agreed distribution was granted consistent with the relief requested;

WHEREAS, Sabal and the Receiver have agreed that the distributions and other relief approved in this Order resolve all disputes of any kind or nature between the Receiver, on the one hand, and Sabal, on the other hand, with respect to the Subject Property only, that they will not appeal from or collaterally attack any rulings associated with the Subject Property, and that any and all other claims that might exist between or among them regarding the Subject Property are compromised and waived, provided however that Sabal will retain unsecured claims for amounts it claims are due but not paid as part of the distributions granted by this Order. These agreements are a compromise of disputes and disagreements between and among Sabal and the Receiver, and do not constitute an admission of the validity of any claim, defense, argument, or position made or taken by any party. The agreements over the Subject Property will not prejudice, impair, or

waive either party's position regarding any other property, and the agreement does not establish a precedent as to any other property;

WHEREAS on June 4, 2025, the Receiver submitted the Motion with recommendations for distributions with regards to the Subject Property as set forth in Exhibits A and B to the Motion (Dkt. 1888);

WHEREAS, on June 5, 2025, the Court entered an order setting a June 17, 2025 deadline for objections to the Property 70 proposed settlement with Sabal (Dkt. 1890);

WHEREAS, the Motion, the agreed distribution plan set forth in Exhibits A and B to the Motion, and the Court's June 5, 2025 Order, were served by electronic mail upon all claimants who have asserted claims against the Subject Property and to all known individuals or entities that submitted a proof of claim in this action;

WHEREAS, no objections to the Motion were filed with the Court, and only one investor-lender claimant submitted a response expressing his disappointment with the outcome of the settlement; and

WHEREAS, on June 20, 2025, the Court entered a minute order granting the Motion, finding that (a) the proposed distribution plan is fair and reasonable, (b) continued litigation will harm all claimants' interests, and (c) the fees attributed to the property are reasonable (Dkt. 1894);

NOW, THEREFORE, the Court, having considered the Motion and the record of this receivership case and being otherwise duly advised in the premises, hereby finds and ORDERS:

1. The Motion is GRANTED.

2. The distribution plan submitted by the Receiver, including as to the amounts set forth in Exhibit 1 to this Order as to the investor lender claimants, the amounts

        agreed to by Sabal as set forth in the Motion, and the other terms of the settlement set forth in the motion are fair, reasonable, and in the best interests of the Receivership Estate and are hereby approved.

3. Adequate and fair notice has been provided to all interested and potentially interested parties (including but not limited to all lienholders in the chain of title) of the claims process for the resolution of disputed claims and determination of secured interests, the Receiver's fees and proposed fee allocations, the Receiver's Group 7 submission and recommendations, and the Motion and agreed distributions, and each interested or potentially interested party has had a full and fair opportunity to participate in the claims process and to assert its interests and any objections to the Motion and agreed distribution plan.

4. The Court accepts the Receiver's recommendations on the attached Exhibit 1, and for each of the claims set forth thereon limits claimants to recovery of principal (offset by any pre-receivership distributions) and denies any claims for interest, penalties, attorneys' fees, or other costs, and finds that the following claimants agreed to relinquish their secured interest in the Subject Property by rolling their loan in full or in part to an equity position, and will therefore be treated as unsecured creditors and their claims against the relevant Group 7 property be considered along with all other unsecured claims in Group 10:

    - Madison Trust Company Custodian FBO Janet Eileen Taylor (70-2056)
    - Optima Property Solutions, LLC (70-1023)

5. As soon as such distributions can be reasonably achieved, the Receiver shall disburse to Sabal $160,000.00 from the account held for Property 70, and the Receiver shall disburse a total of $335,528.28 to the investor lender claimants

|   |   |
|---|---|
|   | identified on Exhibit 1 in the respective amounts set forth therein, in resolution of the claims against the Subject Property. |
| 6. | The fees allocated to the Subject Property in the Receiver's 27th Fee Application for the first quarter of 2025 (Dkt. 1878) are approved. Because the Court intends that this be a final distribution, there will not be any holdbacks of professional fees or expenses associated with the Receiver's fee applications or fee allocation motions upon the distribution of proceeds to claimants. Accordingly, as soon as such distributions can be reasonably achieved, the Receiver shall disburse from the account held for the Subject Property $4,145.52 in payment of fees allocated in the Receiver's 27th Fee Application, and $22,983.45 in payment of fees previously held back pursuant to the Court's orders with respect to the Receiver's Fee Applications 1-26. (Dkt. 1372, 1452, 1469, 1510, 1511, 1539, 1573, 1675, 1758, 1831, 1856) |
| 7. | Following the distributions ordered herein, any interest hereafter accruing shall be transferred to the Receiver's account for use in the administration of the Receivership Estate and/or as otherwise ordered by the Court, and any approved fees that are allocated to the Subject Property in fee applications for the second quarter of 2025 and any subsequent quarters may be paid from the Receiver's account. |

Entered:

_Manish S. Shah_ (signature)
Manish S. Shah
United States District Court Judge

Date: July 9, 2025