1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   UNITED STATES SECURITIES AND     )  Case No. 18 C 5587
     EXCHANGE COMMISSION, et al.,     )
 4                                    )
                                      )
 5           v.                       )
                                      )
 6   EQUITYBUILD, INC.,               )
     EQUITYBUILD FINANCE, L.L.C.,     )
 7   JEROME H. COHEN, SHAUN D. COHEN, )
     and CITIBANK, N.A., as Trustee,  )  Chicago, Illinois
 8                                    )  September 10, 2025
                   Defendants.        )  11:05 o'clock a.m.
 9

10        TRANSCRIPT OF PROCEEDINGS - MOTION/STATUS HEARING
               BEFORE THE HONORABLE MANISH S. SHAH
11

12   APPEARANCES:

13   For the Government:         U.S. SECURITIES AND EXCHANGE
                                 COMMISSION
14                               BY:  MR. BENJAMIN J. HANAUER
                                 175 W. Jackson Boulevard, Suite 1450
15                               Chicago, Illinois  60604

16
     For BC57, LLC, Shatar       LOEB & LOEB, LLP
17   Capital Partners,           BY:  MR. ANDREW R. DeVOOGHT
     other Creditors and              MS. ALEXANDRA J. SCHALLER
18   insureds for                321 N. Clark Street
     Chicago Title:              Chicago, Illinois  60654
19

20   For Certain Individual      TOTTIS LAW
     Investors:                  BY:  MR. MAX A. STEIN
21                               401 N. Michigan Avenue, Suite 530
                                 Chicago, Illinois  60611
22

23   For the Receiver:           RACHLIS DUFF & PEEL, L.L.C.
                                 BY:  MR. MICHAEL RACHLIS
24                                    MS. JODI ROSEN WINE
        (by phone)                    MR. KEVIN B. DUFF
25                               542 S. Dearborn Street, Suite 900
                                 Chicago, Illinois  60605
```

1    APPEARANCES (Continued):

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    Court Reporter:              COLLEEN M. CONWAY, CSR, RMR, CRR
                                   Official Court Reporter
22                                 219 S. Dearborn Street, Room 1918
                                   Chicago, Illinois  60604
23                                 (312) 435-5594
                                   *colleen_conway@ilnd.uscourts.gov*
24
                                   * * * * *
25                     PROCEEDINGS REPORTED BY STENOTYPE
           TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

3

1    (Proceedings available by phone/heard in open court:)

2         THE CLERK:  18 CV 5587, United States Securities And

3    Exchange Commission versus EquityBuild.

4         THE COURT:  Good morning, everyone.  I think we have

5    all of your appearances on the record.  And I understand

6    Mr. Duff is appearing by phone, and others may be listening by

7    phone as well.

8         Fewer than the usual suspects in court this morning,

9    but there are a number of issues I want to run through with you

10   all.  Let me start with the receiver's most recent fee

11   application.

12        Can the SEC confirm for me that you have reviewed the

13   application and it comports with the SEC's billing guidelines?

14        MR. HANAUER:  I can, Your Honor.  Thank you.

15        THE COURT:  The application is approved over the

16   preserved objections that have been made.

17        I continue to believe that it's entirely appropriate

18   for the fees and costs to be coming out of property accounts,

19   because that's what the work was for.  And the benefits of

20   having a secured interest, which include getting paid before

21   unsecured interests, also comes with costs.  And litigating

22   secured interests comes with a cost, too.

23        This is all a reasonable and equitable way to manage

24   this receivership, which involves a limited pool of assets for

25   recovery and for claims.  The onetime 20% holdback remains an

4

1   appropriate safeguard against any mistaken or over-billing.

2          So the receiver can submit a proposed order on the fee

3   application.

4      (Receiver's counsel nods.)

5          THE COURT:  The motion to make an additional Group 7

6   distribution.  Apparently, we missed a claimant.

7          MR. RACHLIS:  Yes.

8          THE COURT:  LaDonna Wright Acklen.  We have not heard

9   anything from that claimant about asking to appear today.  I

10  don't know if the receiver has had any communication.

11         MR. RACHLIS:  We have not, Your Honor.

12         MS. ROSEN WINE:  We did send the motion to her.

13         THE COURT:  The proposal is to treat the claimant

14  proportionally with all the other claimants consistent with the

15  rulings on the group.  And, luckily, there is some interest

16  available and then some additional funds from the general

17  account, I take it, to make a distribution that is consistent

18  with the other distributions for similarly-situated claimants.

19         Does anyone present want to be heard on that Group 7

20  tagalong distribution?

21     (Counsel nod.)

22         THE COURT:  Everyone's shaking their heads no.

23         That motion is granted, and the receiver can again --

24  if you could submit a proposed order for that distribution.

25     (Receiver's counsel nods.)

1    THE COURT:  I do -- so let me ask -- I think Groups 6

2  and 7 are done, but let me confirm that with you.  And I'll

3  turn to receiver's counsel for that.

4    MR. RACHLIS:  Yes, Your Honor.  Groups 6 and 7 are

5  done.  The only group that remains outstanding is not the

6  entirety of the group.  It's the Shatar two properties from

7  Group 2.

8    THE COURT:  There were some early motions -- or

9  they're early now -- they're old motions -- for discovery on

10  the avoidance claim that were part of Groups 6 and 7.  It was

11  from U.S. Bank and UBS AG.  I think those are now resolved by

12  virtue of settlements and other dispositions.

13    So I am going to terminate those motions, dockets 1783

14  and 1746.  I'll terminate those motions as moot.

15    Group 4.  There was one property claimant that

16  couldn't be reached.  Any updates on that?

17    Are we able to close -- can we confirm that that's

18  closed now or is there still some work that needs to be done

19  there?

20    MS. ROSEN WINE:  I believe that that one is still

21  outstanding.  We did hear from one of the claimants that was in

22  Group 2 that we've been trying to reach for a very long time

23  yesterday.

24    So we're chipping away at it and, you know, finding

25  some of these claimants, but there are still a few that need to

1    be located.

2         THE COURT:  So, in that sense, I think Group 4 is not

3    quite closed closed because there's a distribution we're trying

4    to make, but we can't find that claimant.

5         Am I right about that?

6         MS. ROSEN WINE:  Right.  And at some point, I think

7    we'll probably ask the Court to deem it as -- you know, to

8    transfer it to the receiver's general account.  But --

9         THE COURT:  Well --

10        MS. ROSEN WINE:  So that's what we've got.

11        THE COURT:  -- keep trying.  I am not going to deem

12   that claim abandoned just yet.  But it may be deemed abandoned

13   if further efforts to reach that claimant are unsuccessful.

14        So then we have Group 2 and we've got Group 10,

15   eventually.  Before we get to Group 10, though, we need to

16   resolve Group 2.  It won't make sense to have a plan for Group

17   10 until we know how Group 2 gets resolved, which can be a

18   source of some frustration if Shatar is insisting on seeing the

19   appeal all the way through, which may take time for a ruling to

20   come down.

21        So one option or question is, do you think you've

22   fully exhausted the idea of compromise on Shatar's claim?  You

23   now have the benefit of oral argument.  However you want to

24   read those tea leaves might change your willingness to keep

25   talking.  But it would be a -- just speaking for myself, it

1    would be a shame if we have to hold this whole receivership

2    hostage for another year while we're waiting for a Court of

3    Appeals opinion, and I wonder if there's something else we can

4    do about that.

5          There are a few other issues to perhaps resolve before

6    we can get a plan in place for Group 10.  There's the Ventus

7    issue.  There's the Pennington case.  There's the Bauer Latoza

8    case and the Michigan Shore Apartments issues.  I want to talk

9    about those, but let me open the floor up to talk about Shatar

10   and Group 2 and see if there's anything we can -- if there is

11   anything to talk about.

12         MR. DeVOOGHT:  Yes, Your Honor.  Good morning.

13         So we just had argument last week.  I haven't had a

14   chance to circle back with Mr. Namvar and talk live.  I'm happy

15   to ask him.  I know he listened to the argument.  I'm happy to

16   ask him, Your Honor, and talk about that, and then reach out to

17   Mr. Stein and receiver's counsel after I speak with him.

18         But we have not had that discussion at this point, but

19   we definitely will.

20         THE COURT:  I guess to the extent I didn't say it

21   expressly, I'll say it now.  I urge you to do that.  It is --

22   given that others have been able to find compromise on what

23   they thought were good, valid secured claims, it still is the

24   fact that time is to no one's advantage, in my view, and there

25   ought to be a way to resolve this.

1          That said, you have your options, and I understand it.

2          MR. DeVOOGHT:  Understood.

3          THE COURT:  But I feel like everybody is, at this

4     stage of the case, very well informed about the facts, the

5     legal issues and legal risks.  And so you should re-double your

6     efforts, if I can press that request on to you, to see if

7     there's something to talk about.

8          And if you need help, you can reach out to me.  If you

9     want Judge Kim, you'll have to reach out to me so that I can

10    reach out to Judge Kim.  But we can get that done.

11         I can tell you right now that I may have some time in

12    the week of September 22nd because a trial I had scheduled has

13    just been continued.  So I have some time that week.

14         If you think talking to me might be helpful, I'll make

15    myself available.

16         MR. DeVOOGHT:  Thank you, Your Honor.

17         THE COURT:  The Ventus earnest money issue.  I see

18    that the motion has been filed.

19         Have you been in touch with counsel for Ventus?  Do we

20    know what their position is at this point?

21         MR. RACHLIS:  No.  We have not been recently in touch

22    with counsel.  We, of course, have had lots of discussions with

23    Ventus counsel a few years ago on this issue and then,

24    ultimately, based on various rulings from this court when Judge

25    Lee was presiding as well as the Appellate Court, there hasn't

1    been much since that time.

2         So we did purposely want to trigger the discussion

3    with the motion that's been filed.

4         THE COURT:  Do you even know if the same counsel is

5    representing Ventus' interests at this point?

6         MR. RACHLIS:  We do not.  We know that they've had

7    counsel on the ECF system since 2020, 2021, and so they've --

8    we assume there's been no change because there's not been any

9    addition to the ECF, or deletion, of counsel.

10        THE COURT:  No appearance on that motion is necessary.

11        Any objections to the motion to disburse the Ventus

12   earnest money should be filed by September 17th.  So a week

13   from today for any objections to that.

14        Let me see if anyone files an objection and then I'll

15   enter something to see if I need to hear a response to

16   objections or a reply in support of the motion.

17        MR. RACHLIS:  That's fine, Your Honor.

18        THE COURT:  What does the receiver think we ought to

19   do about those lingering state court cases that have been

20   stayed?

21        MR. RACHLIS:  There are three remaining issues, as

22   Your Honor knows.  One of them is probably the most complicated

23   in the Pennington matter, because it's a wrongful death suit.

24   It's been stayed, has been stayed for a while.  There are two

25   defendants in that case.  EquityBuild is one, and the property

1    manager, WPD, is the other defendant.

2         So there are some -- a little bit of complicated

3    factors also seeded with the substantive issues, as well as the

4    number of parties.

5         We were hoping -- well, we were hoping that a --

6    because there's a stay, a federal court stay that's been in

7    place, that having the -- some type of settlement conference in

8    order to get conclusion on that one would be in the best

9    interest.

10        It would be a nice -- while we're waiting for the

11   Seventh Circuit or for other resolutions, in order to bring

12   that to a close, that would help bring this entire receivership

13   to a close.  And as a result, we were thinking, because of the

14   potential complexity of the issues and whatnot, that it might

15   help to have a third party mediate that claim.

16        THE COURT:  Have you had any communication with

17   plaintiff's counsel or co-defendant's counsel?

18        MR. RACHLIS:  Not recently.  Only in conjunction with

19   the stay that had occurred.

20        Was there a recent --

21        MS. ROSEN WINE:  Nothing recent.

22        MR. RACHLIS:  Yeah.

23        MS. ROSEN WINE:  There was a submission of the claim

24   to EquityBuild's insurer, which was rejected.

25        THE COURT:  I don't know that there's much I can do at

1  this point to bring them into the fold other than ask you to

2  reach out to them now.

3          MR. RACHLIS:  We, of course, will.

4          THE COURT:  And then let me know how I can help.

5          MR. RACHLIS:  We will do that.

6          THE COURT:  But I agree that this is -- we're now at

7  the stage where we need to wrap up all of the loose ends before

8  we can get to Group 10 and have a plan.

9          So the alternative, I suppose, would be for me to say:

10 I lift the stay --

11         MR. RACHLIS:  That --

12         THE COURT:  -- and Pennington should proceed.  And

13 that can, I imagine, happen while we sort out other issues.

14 But it will still probably delay distributions because we won't

15 know now what pot of money is available if there's a potential

16 liability out there on the receivership.

17         MR. RACHLIS:  Yeah.  And that, of course -- we're not

18 suggesting that the stay be lifted, for the reasons Your Honor

19 said, as well as the costs associated with having to then

20 participate in any such litigation.

21         So we will reach out and take the temperature of that

22 litigant -- or of counsel in that litigation.

23         THE COURT:  And the other is Bauer Latoza and Michigan

24 Shore?

25         MR. RACHLIS:  Bauer Latoza, we are intending on

1    reaching out.  That is a much-less-complicated issue and

2    involves a low five-figure trade -- a creditor type of claim.

3         And we do think -- we don't know how amenable they

4    will be.  However, we do want to make that effort, but have

5    available Your Honor.  If, for some reason, there is difficulty

6    in reaching a resolution with that party in that litigation,

7    the ability to perhaps come and ask for some help from the

8    Court in that regard.

9         But we're -- because of the amounts at issue and the

10   posture of that type of claim, we think that one can get

11   resolved.

12        THE COURT:  And Michigan Shore Apartments?

13        MR. RACHLIS:  Michigan Shores is a more complicated

14   scenario as well, and that's another piece of pending

15   litigation that is stayed.  In part, they also have a -- they

16   have claims in the receivership, too.

17        And so, you know, it would be simpler if it were

18   resolved before having to go through a final distribution plan

19   and the Court make rulings as to whether or not those claims

20   are valid and whether or not they're entitled to any funds or

21   things of that nature.  And so rather than go through those

22   types of issues, our hope would be -- and, again, there are

23   lots of parties in that one, and there are some more

24   complicated set of facts, so we would hope that we would have

25   the availability of the Court to help on that one.

1      THE COURT:  Well --

2      MS. ROSEN WINE:  Your Honor, one final --

3      THE COURT:  Go ahead.

4      MS. ROSEN WINE:  A good thing about that case is that

5   there's a second defendant which is -- well, was Liberty, now

6   it's Northeast Bank, which was the bank that was involved in

7   Group 8.  So they're also a defendant in that case.

8      THE COURT:  Well, the short response is the Court is

9   available.  And I will take it upon myself to speak for

10   Magistrate Judge Kim as well.  And I will ask him to make

11   himself available if we need to spend some time with parties to

12   resolve this.

13      I suppose I am -- I'd like to be a little more hopeful

14   that the parties could work that out without the assistance of

15   someone, because the landscape is what the landscape is, and

16   parties in state court litigation that are under a stay are

17   stuck.  And if the only other option is to lift the stay and

18   litigate, they know that.  And this stay is not going to be

19   lifted until this receivership is over, likely.  So they know

20   what calculus they need to make in figuring out compromise.

21      I appreciate that there are different moving parts and

22   different parties.  And I say all of that while also

23   acknowledging that if you need help, that's what we're here

24   for, and we'll try and make that happen.

25      So, for example, Bauer Latoza, I hope you're right

1     that you can work that out, because I don't think it's a great

2     use of my or Judge Kim's time if we're talking about a

3     five-figure --

4            MR. RACHLIS:  Yes.

5            THE COURT:  -- dispute.  Now, I appreciate the

6     receiver bringing these issues to my attention, because I think

7     you're right that we have to resolve them before we can have a

8     workable plan for Group 10, and a lot of people are waiting for

9     Group 10.  And everything that's slowing us down on that front

10     is slowing the end game here.

11            So while you are hopefully talking to Shatar about

12     their issues, you can also start reaching out to the others in

13     Pennington, Bauer Latoza, and Michigan Shores, and then you'll

14     reach out to me if you need some help on that.

15            I'll find out whether anyone has an issue with the

16     Ventus earnest money.

17            But then I don't think I have anything on my plate for

18     you.  This is your opportunity to tell me if I've forgotten

19     something.

20            MR. RACHLIS:  There is nothing currently pending other

21     than the one Ventus motion that you've already identified, Your

22     Honor.  And you're aware of those items that we have

23     specifically identified in status reports and things of that

24     nature.

25            Obviously, the receiver's doing ongoing review of the

1  various unsecured claims the Court hasn't seen, and continuing

2  in its effort on asset recovery and things of that nature as we

3  get closer to a final distribution plan for Group 10.

4        THE COURT:  Well, it looks like we will be about a

5  year or more behind schedule from what I originally thought

6  when we once convened and talked about a vision, but -- and

7  that's unfortunate.  But I can't say it's because nobody's

8  working.  So that's -- that is what it is.  People are working

9  on this.  There are a lot of moving parts, but there are fewer

10 moving parts today than there were a year ago, and that's

11 because everyone is working on this.  So keep doing that.

12       Is there anything else I can help you with this

13 morning?  I'll start with the receiver.

14       MR. RACHLIS:  No, Your Honor.

15       THE COURT:  Does the SEC require anything of me?

16       MR. HANAUER:  Not right now.  Thank you, Your Honor.

17       THE COURT:  Okay.  Mr. Stein, anything on behalf of

18 your batch of clients?

19       MR. STEIN:  No, Your Honor.  Thank you.

20       THE COURT:  Mr. DeVooght, anything I can do for you?

21       MR. DeVOOGHT:  No, Your Honor.  Thank you.

22       THE COURT:  Okay.  Well, then the status of the case

23 is, please everyone else keep doing what you're doing.  I'm

24 available.  You'll let me know when and if you need me.

25       MR. RACHLIS:  Thank you, Your Honor.

1          THE COURT:  Thank you.

2          MS. SCHALLER:  Thank you.

3          MR. DUFF:  Thank you, Your Honor.

4     (Proceedings concluded at 11:26 a.m.)

5

6                    *     *     *     *     *

7

8          I certify that the foregoing is a correct

9     transcript of the record of proceedings in the above-entitled

10    matter.

11

12    */s/ Colleen M. Conway, CSR, RMR, CRR*          *10/03/2025*

13         Official Court Reporter                    Date
          United States District Court
14        Northern District of Illinois
             Eastern Division

15

16

17

18

19

20

21

22

23

24

25